MARC J. SHRAKE (SBN 219331)
  mjs@amclaw.com
ANDERSON, MCPHARLIN & CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623
Telephone: (213) 236-1691
Facsimile: (213) 622-7594

MICHAEL KEELEY
  michael.keeley@strasburger.com
*Pro Hac Vice Application Pending*
JOHN R. RIDDLE
  john.riddle@strasburger.com
*Pro Hac Vice Application Pending*
CARLA C. CRAPSTER
  carla.crapster@strasburger.com
*Pro Hac Vice Application Pending*
STRASBURGER & PRICE, LLP
901 Main Street, Suite 4400
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

Attorneys for Defendant
Atlantic Specialty Insurance Company

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS, LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | Case No. 2:16-cv-04435-PA-MRW<br><br>**DEFENDANT'S ORIGINAL ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT** |

Defendant, Atlantic Specialty Insurance Company ("Atlantic"), files its Original Answer to Plaintiff's First Amended Complaint (the "Complaint") and would respectfully show the Court as follows:

## NATURE OF CLAIM

1. Answering the first sentence of paragraph 1 of the Complaint, Atlantic admits that Plaintiffs have filed their Complaint seeking coverage under the Motion Picture/Television Producers Portfolio Insurance Policy, Policy No. MP00163-04, that Atlantic issued to NBCUniversal Media, LLC ("NBCUniversal") and others (the "Policy"), but denies that Plaintiffs have accurately characterized Atlantic as a "production insurer." Answering the second sentence of paragraph 1 of the Complaint, Atlantic admits that UCP was filming the television show "*Dig*" in Israel in the summer of 2014, admits that Hamas has been designated by the United States Secretary of State as a Foreign Terrorist Organization, and admits that Hamas fired rockets into Israel, but denies that this was the beginning of Hamas' firing of rockets into Israel, and further denies that Plaintiffs have accurately characterized the U.S. State Department's Daily Briefing on July 9, 2014, or the manner in which the United States has characterized Hamas. Answering the third sentence of paragraph 1 of the Complaint, Atlantic admits that the decision was made to move the production of *Dig* out of Israel, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained therein. Answering the fourth sentence of paragraph 1 of the Complaint, Atlantic admits that NBCUniversal submitted a claim to Atlantic for indemnification of expenses it claims were incurred in connection with postponing and moving the production of *Dig*. Further answering paragraph 1 of the Complaint, Atlantic denies the remaining allegations contained there.

2. Answering paragraph 2 of the Complaint, Atlantic admits that Section III — Extra Expense of the Policy provides potential coverage, subject to all of the terms, conditions, and limitations of the Policy, for loss an insured sustains by reason of extra expenses necessarily incurred "as a result of the interruption,

1  postponement, cancellation, relocation, curtailment or abandonment of an Insured Production," admits that the Policy does not contain an exclusion for "acts of terrorism," but denies that Plaintiffs have accurately characterized the terms of the Policy. Further answering paragraph 2 of the Complaint, Atlantic denies that Plaintiffs have accurately characterized Atlantic's position or statements concerning Plaintiffs' claim, and further denies that Plaintiffs have accurately characterized the positions of the United States regarding the Gaza Strip and Hamas. Further answering paragraph 2 of the Complaint Atlantic denies the remaining allegations contained therein.

3.  Answering paragraph 3 of the Complaint, Atlantic denies the allegations contained therein.

4.  Answering the first sentence of paragraph 4 of the Complaint, Atlantic admits that NBCUniversal is a named insured under the Policy, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained therein. Answering the second sentence of paragraph 4 of the Complaint, Atlantic admits that NBCUniversal paid a premium for the Policy, but lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning NBCUniversal's reasons for obtaining the Policy. Further answering paragraph 4 of the Complaint, Atlantic denies the remaining allegations contained therein.

5.  Answering paragraph 5 of the Complaint, Atlantic denies the allegations contained therein.

## THE PARTIES

**A.   Plaintiffs**

6.  Answering the first sentence of paragraph 6 of the Complaint, Atlantic admits that Plaintiffs are Delaware limited liability companies that conduct business in California and elsewhere, but lacks knowledge or information

1 sufficient to form a belief about the truth of the remaining allegations contained therein. Answering the second sentence of paragraph 6 of the Complaint, Atlantic admits that NBCUniversal is listed as a named insured in Item 1 of the Declarations Page of the Policy, but denies that any other entities are listed in Item 1 of the Declarations of the Policy as implied by Plaintiffs. Answering the third sentence of paragraph 6 of the Complaint, Atlantic lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein. Answering the fourth sentence of paragraph 6 of the Complaint, Atlantic admits that Plaintiffs have accurately quoted the first paragraph of Section I.A. of the Motion Picture Television Portfolio General Conditions section of the Policy with the addition of the term "[sic]."

**B.** **Defendant**

7. Answering the first sentence of paragraph 7 of the Complaint, Atlantic admits the allegations contained therein. Answering the second sentence of paragraph 7 of the Complaint, Atlantic admits that it is an insurance company that is an indirect wholly-owned subsidiary of OneBeacon Insurance Group, Ltd. ("OB"), that OB is a publicly-traded company domiciled in Bermuda, but otherwise denies that Plaintiffs have accurately characterized Atlantic or its relationship with OB. Answering the third sentence of Paragraph 7 of the Complaint, Atlantic admits that it has issued insurance policies to entities involved in the entertainment industry, admits that it has issued insurance policies throughout the United States, including California and the Central District of California, but denies that Plaintiffs have otherwise accurately characterized Atlantic's business. Answering the fourth sentence of paragraph 7 of the Complaint, Atlantic admits that it conducted underwriting before issuing the Policy, admits that OneBeacon Entertainment LLC ("OBE") is an indirect wholly-owned subsidiary of OB, but denies that the Policy was administered by OBE.

Further answering paragraph 7 of the Complaint, Atlantic denies the remaining allegations contained therein.

8. Answering paragraph 8 of the Complaint, Atlantic denies the allegations contained therein.

## JURISDICTION AND VENUE

### Allegations regarding citizenship of UCP and Northern Entertainment

9. Answering paragraph 9 of the Complaint, Atlantic admits that Plaintiffs have filed their Complaint as a diversity lawsuit, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained therein.

### Plaintiff UCP

10. Answering paragraph 10 of the Complaint, Atlantic lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

11. Answering paragraph 11 of the Complaint, Atlantic lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

### Plaintiff Northern Entertainment

12. Answering paragraph 12 of the Complaint, Atlantic lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

13. Answering paragraph 13 of the Complaint, Atlantic admits it is a citizen of New York and Minnesota, admits that the amount in controversy in this lawsuit exceeds the sum of $75,000, exclusive of interest and costs, but lacks knowledge of information sufficient to form a belief about the truth of the remaining allegations contained therein.

## THE INSURANCE POLICY AND THE INSURED *DIG* PRODUCTION

14. Answering paragraph 14 of the Complaint, Atlantic lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

15. Answering paragraph 15 of the Complaint, Atlantic lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

16. Answering paragraph 16 of the Complaint, Atlantic admits that it issued the Policy to NBCUniversal for the policy period from January 1, 2014 (not January 11, 2014), to June 30, 2015, admits that NBCUniversal paid a premium for the Policy, and admits that the Policy includes various coverages including Section I ― Cast Coverage, Section II ― Negative Film and Faulty Stock, and Section III ― Extra Expense, as well as other coverages, terms, conditions, and limitations, but denies that Plaintiffs have accurately characterized the terms of the Policy. Further answering paragraph 16 of the Complaint, Atlantic denies the remaining allegations contained therein.

17. Answering paragraph 17 of the Complaint, Atlantic admits the allegations contained therein, except that each of the policies were effective from January 1, not January 11.

18. Answering paragraph 18 of the Complaint, Atlantic admits that Section III ― Extra Expense, is relevant to Plaintiffs' claim, but denies that it is the only relevant section of the Policy, and denies that Plaintiffs have accurately characterized the terms of Section III ― Extra Expense.

19. Answering paragraph 19 of the Complaint, Atlantic admits that Plaintiffs have accurately quoted the Insuring Agreement of Section III ― Extra Expense, with the addition of the term "[Atlantic]," but denies that this is the only relevant provision of the Policy, and further denies that Plaintiffs have accurately

characterized the terms of the Policy.

20. Answering paragraph 20 of the Complaint, Atlantic admits that in the letter from Pamela A. Johnson to Andrea Garber dated July 28, 2014, Ms. Johnson stated: "Based on Mr. Smith's email to the production and what we know about the present conflict, we believe that the extra expenses that will be incurred to move the production out of Israel will be due to imminent peril," but denies that Plaintiffs have accurately characterized such letter or Atlantic's position in connection with this matter. Further answering paragraph 20 of the Complaint, Atlantic admits that there is no express coverage provision in the Policy for terrorism, and that the Policy does not define the term "terrorism," but denies that Plaintiffs have accurately characterized the terms of the Policy. Further answering paragraph 20 of the Complaint, Atlantic denies the remaining allegations contained therein.

21. Answering paragraph 21 of the Complaint, Atlantic admits that *Dig* was approved for potential coverage under an earlier policy on or about December 12, 2013 (not in or about January 2014), and that the production of *Dig* also was accepted as a production for potential coverage under the Policy. Further answering paragraph 21 of the Complaint, Atlantic lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained therein.

## EVENTS LEADING UP TO THE CLAIM

22. Answering the first, second, and third sentences of paragraph 22 of the Complaint, Atlantic admits the allegations contained therein. Answering the fourth sentence of paragraph 22 of the Complaint, Atlantic admits that Hamas is not listed on the Bureau of Intelligence and Research Fact Sheet cited at footnote 6 of the Complaint as an Independent State in the World, but denies that Plaintiffs have accurately alleged the way in which the United States Government

1 characterizes the Gaza Strip.

2  23.  Answering the first sentence of paragraph 23 of the Complaint, Atlantic admits that three Israeli teenagers, one of whom was an American citizen, were kidnapped on June 12, 2014, and that Hamas later admitted to kidnapping the teenagers, but denies that Plaintiffs have accurately characterized the U.S. Department of State Daily Press Briefing cited in footnote 7 of the Complaint. Answering the second sentence of Paragraph 23 of the Complaint, Atlantic admits that bodies of the kidnapped teenagers were found on or about June 30, 2014, and that there were reports indicating that Hamas was involved, but denies that Plaintiffs have accurately recited statements made by the spokesperson for the U.S. Department of State in her Daily Press Briefing on June 30, 2014, as implied by citing to such briefing in footnote 8 of the Complaint. Answering the third sentence of paragraph 23 of the Complaint, Atlantic denies that Plaintiffs have accurately characterized the referenced Daily Press Briefings.

 24.  Answering the first sentence of paragraph 24 of the Complaint, Atlantic admits that in the referenced State Department's Daily Press Briefing, the State Department's representative voiced concern about the "safety and security of civilians," but denies that those concerns were limited to Israel and Jerusalem, where certain *Dig* filming was allegedly scheduled to take place. Further answering paragraph 24 of the Complaint, Atlantic lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained therein.

 25.  Answering paragraph 25 of the Complaint, Atlantic admits that NBCUniversal advised it, but not OBE, that the show was being postponed and that it might be moved to another location.

 26.  Answering the first sentence of paragraph 26 of the Complaint, Atlantic lacks knowledge or information sufficient to form a belief about the truth

of the allegations contained therein. Answering the second sentence of paragraph 26 of the Complaint, Atlantic denies the allegations contained therein.

27.   Answering the first sentence of paragraph 27 of the Complaint, Atlantic admits that in the State Department Daily Press Briefing dated July 16, 2014, the State Department's spokesperson said that "right now the potential we are looking at is, of course, an even greater escalation of violence," but denies that such statement was limited to "in and around Israel," and further denies that Plaintiffs have accurately characterized the briefing. Answering the second sentence of paragraph 27 of the Complaint, Atlantic admits that UCP moved the *Dig* production out of Jerusalem and Israel, and that it advised Atlantic, but not OBE, of its intention to do so, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained therein. Answering footnote 13, cited at paragraph 27 of the Complaint, Atlantic admits the allegations contained therein. Further answering paragraph 27 of the Complaint, Atlantic lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained therein.

28.   Answering the first sentence of paragraph 28 of the Complaint, Atlantic admits that Plaintiffs incurred expenses as a result of relocating the production of *Dig*, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained therein. Answering the second sentence of paragraph 28 of the Complaint, Atlantic denies the allegations contained therein.

**ATLANTIC WRONGFULLY DENIES THE EXTRA EXPENSE CLAIM**

29.   Answering the first sentence of paragraph 29 of the Complaint, Atlantic admits that Plaintiffs, through NBCUniversal, submitted a claim for their expenses to Atlantic, but not through OBE, and denies that such claim was properly tendered and submitted and further denies that such claim is covered

under the terms of the Policy. Answering the second sentence of paragraph 29 of the Complaint, Atlantic admits that in an e-mail dated July 15, 2014, from Susan Weiss, Senior Vice President Aon/Albert G. Ruben Insurance Services, Inc., to Michael J. Arevalo, Ms. Weiss notified Atlantic, not OBE, through Mr. Arevalo that the production of *Dig* had been postponed by one week and provided him other information, including an e-mail from Andrea Garber of NBCUniversal, but denies the remaining allegations contained therein. Answering the third sentence of paragraph 29 of the Complaint, Atlantic admits that it acknowledged receipt of the *Dig* claim, but denies such acknowledgment was through NBE. Further answering paragraph 29 of the Complaint, Atlantic denies the remaining allegations contained therein.

A.     **Defendant Atlantic Relies On Inapplicable Exclusions**

30.     Answering the first sentence of paragraph 30 of the Complaint, Atlantic admits that Pamela Johnson wrote to Andrea Garber of NBCUniversal by letter dated July 28, 2014, concerning the claim, and in that letter informed her that the claim was not covered under the Policy. Further answering paragraph 30 of the Complaint, Atlantic denies the remaining allegations contained therein.

31.     Answering paragraph 31 of the Complaint, Atlantic admits that in her letter to Andrea Garber dated July 28, 2014, Pamela Johnson informed NBCUniversal that the claim was not covered under the Policy, and admits that she indicated Atlantic was willing to cover the expenses associated with the initial postponement as a courtesy, but denies the remaining allegations contained therein.

32.     Answering the first sentence of paragraph 32 of the Complaint, Atlantic admits that the Motion Picture Television Portfolio General Conditions section of the Policy contains a number of exclusions providing that the Policy does not insure against loss or damage caused directly or indirectly by "[w]ar, . . .," "[w]arlike action . . .," "any weapon of war . . .," and other exclusions that are

1  applicable to Plaintiffs' claim. Answering the second and third sentences of paragraph 32 of the Complaint, Atlantic denies the allegations contained herein. Answering the fourth sentence of paragraph 32 of the Complaint, Atlantic admits that the U.S. Department of State has not listed Hamas as an Independent State in the World in its Bureau of Intelligence and Research Fact Sheet, and that it has recognized Hamas as a Foreign Terrorist Organization, but denies that Plaintiffs have accurately alleged the way in which the United States Government characterizes Hamas and the Gaza Strip. Answering the fifth sentence of paragraph 32 of the Complaint, Atlantic admits that the United States Government has characterized Hamas as a Foreign Terrorist Organization, but denies the remaining allegations contained therein.

33. Answering paragraph 33 of the Complaint, Atlantic admits that there is no "terrorism exclusion" in the Policy and that the term "terrorism" is not defined by the Policy, but denies the remaining allegations contained therein.

34. Answering paragraph 34 of the Complaint, Atlantic admits that it denied coverage for Plaintiffs' claim, admits that NBCUniversal requested Atlantic to reconsider its decision to deny coverage, and admits that it has consistently taken the position that there is no coverage for the claim and, therefore, has not paid the claim. Further answering paragraph 34 of the Complaint, Atlantic denies the remaining allegations contained therein.

**B.     Defendant Atlantic Misrepresents the Terms of the Policy**

35. Answering the first sentence of paragraph 35 of the Complaint, Atlantic denies the allegations contained therein. Answering the second sentence of paragraph 35 of the Complaint, Atlantic admits that, in her letter to Andrea Garber dated July 28, 2014, Pamela Johnson stated that the "terrorism coverage should not apply," but denies that Plaintiffs have accurately quoted or characterized the terms of Ms. Johnson's letter. Further answering paragraph 35 of the Complaint, Atlantic

1 denies the remaining allegations contained therein.

2 36. Answering paragraph 36 of the Complaint, Atlantic admits that Ms. Johnson's comment that the "terrorism coverage should not apply" was based, in part, on the Endorsement to the Policy entitled Coverage for Certified Acts of Terrorism; Cap on Losses, but denies that Atlantic's denial of coverage was based only upon such Endorsement. Answering the second sentence of paragraph 36 of the Complaint, Atlantic admits that Plaintiffs have accurately quoted a part of such Endorsement with italics added. Answering the third sentence of paragraph 36 of the Complaint, Atlantic admits that such Endorsement is inapplicable to Plaintiffs' claim because there is no exclusion in the Policy for terrorism.

37. Answering paragraph 37 of the Complaint, Atlantic admits that, as Ms. Johnson explained in her letter to Andrea Garber dated July 28, 2014, there is no terrorism coverage for Plaintiffs' losses, admits that Plaintiffs have quoted a part, but not all, of an Endorsement to the Policy, and admits that it is clear that such Endorsement is inapplicable to Plaintiffs' claim. Further answering paragraph 37 of the Complaint, Atlantic denies the remaining allegations contained therein.

38. Answering paragraph 38 of the Complaint, Atlantic denies the allegations contained therein.

**C.     Defendant Atlantic Places Its Interest Over Those of Its Insureds**

39. Answering paragraph 39 of the Complaint, Atlantic denies the allegations contained therein.

40. Answering the first sentence of paragraph 40 of the Complaint, Atlantic lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein. Answering the second sentence of paragraph 40 of the Complaint, Atlantic denies the allegations contained therein.

41. Answering paragraph 41 of the Complaint, Atlantic denies the allegations contained therein.

# FIRST CLAIM

## (Breach of Insurance Contract)

42. Answering paragraph 42 of the Complaint, Atlantic incorporates herein by reference paragraphs 1 through 41 above as though specifically set forth herein.

43. Answering paragraph 43 of the Complaint, Atlantic admits that the policy period of the Policy is from January 1, 2014, to June 30, 2015, and that the required premium for the Policy was paid, but denies the remaining allegations contained therein.

44. Answering paragraph 44 of the Complaint, Atlantic denies the allegations contained therein.

45. Answering paragraph 45 of the Complaint, Atlantic denies the allegations contained therein.

46. Answering paragraph 46 of the Complaint, Atlantic denies the allegations contained therein.

47. Answering paragraph 47 of the Complaint, Atlantic denies the allegations contained therein.

# SECOND CLAIM

## (Breach of Implied Covenant of Good Faith and Fair Dealing)

48. Answering paragraph 48 of the Complaint, Atlantic incorporates herein by reference paragraphs 1 through 47 above as though specifically set forth herein.

49. Answering paragraph 49 of the Complaint, Atlantic denies the allegations contained therein.

50. Answering paragraph 50 of the Complaint, Atlantic denies the allegations contained therein.

51. Answering paragraph 51 of the Complaint, Atlantic denies the allegations contained therein.

52. Answering paragraph 52 of the Complaint, Atlantic denies the allegations contained therein.

53. Answering paragraph 53 of the Complaint, Atlantic denies the allegations contained therein.

54. Answering paragraph 54 of the Complaint, Atlantic denies the allegations contained therein.

55. Answering paragraph 55 of the Complaint, Atlantic denies the allegations contained therein.

## PRAYER

56. Answering the Wherefore clause of the Complaint, Atlantic admits that Plaintiffs have sought the relief requested therein, but denies that Plaintiffs are entitled to any such relief.

57. Further answering the allegations of the Complaint, Atlantic denies all other allegations contained therein not specifically admitted above.

## DEMAND FOR JURY TRIAL

58. Answering the unnumbered paragraph making a demand for trial by jury, Atlantic admits that Plaintiffs have requested a jury of all triable issues, but denies that Plaintiffs are entitled to a jury and denies that Plaintiffs are entitled to any relief requested in the Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense
### (Failure to State a Claim)

59. Plaintiffs' Second Claim for alleged breach of the implied covenant of good faith and fair dealing fails to state a claim upon which relief can be granted.

## Second Affirmative Defense
### (Exclusion 1, General Conditions)

60. Exclusion 1 of the General Conditions section of the Policy provides that the Policy does not insure against loss or damage caused directly or indirectly by:

> 1. War, including undeclared or civil war;

61. Plaintiffs' claims are barred by Exclusion 1 of the General Conditions section of the Policy.

## Third Affirmative Defense
### (Exclusion 2, General Conditions)

62. Exclusion 2 of the General Conditions section of the Policy provides that the Policy does not insure against loss or damage caused directly or indirectly by:

> 2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents.

63. Plaintiffs' claims are barred by Exclusion 2 of the General Conditions section of the Policy.

## Fourth Affirmative Defense
### (Exclusion 3, General Conditions)

64. Exclusion 3 of the General Conditions section of the Policy provides that the Policy does not insure against loss or damage caused directly or indirectly by:

> 3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. Such loss or damage is

excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

65. Plaintiffs' claims are barred by Exclusion 3 of the General Conditions section of the Policy.

## Fifth Affirmative Defense
### (Exclusion 4, General Conditions)

66. Exclusion 4 of the General Conditions section of the Policy provides that the Policy does not insure against loss or damage caused directly or indirectly by:

> 4. Any weapon of war including atomic fission or radioactive force, whether in time of peace or war.

67. Plaintiffs' claims are barred by Exclusion 4 of the General Conditions section of the Policy.

## Sixth Affirmative Defense
### (Failure to Mitigate)

68. General Condition I(2) of the Policy provides that the insureds are required to:

> Minimize Loss or Damage – Take all reasonable steps to protect the property from further damage and minimize the loss. Keep a record of your expenses in doing so for consideration in the settlement of the claim. This will not increase the limit of insurance.

69. To the extent Plaintiffs failed to take all reasonable steps to minimize their loss, or to keep a record of their expenses in doing so, their claims are barred from coverage by General Condition I(2) of the Policy, and by the common law.

**Seventh Affirmative Defense**

**(Other Insurance)**

70. General Condition G of the Policy provides:

> If at the time of loss or damage, any other valid insurance is available which would apply to the loss or damage in the absence of this policy, the insurance provided by this policy will be primary to any other policy held by you, but excess with respect to any policy or coverage held or provided by any other party, unless otherwise agreed by you.
>
> This policy does not apply to any production that has been declared by you under similar insurance provided by any other insurer.

71. To the extent other valid insurance is available which is applicable to Plaintiffs' loss, the Policy provides only excess insurance with respect to any such policy or coverage held or provided by any other party, unless otherwise agreed by Plaintiffs. Further, to the extent that production of *Dig* was declared under a similar insurance policy provided by another insurer, the Plaintiffs' loss is not covered by the Policy.

**Eighth Affirmative Defense**

**(Warranty C)**

72. Section V. Warranties, Section III — Extra Expense, provides, in pertinent part, as follows:

> You warrant that:
>
> . . . .
>
> C. Prior to the inception of coverage hereunder, you warrant having no knowledge of any matter, fact or circumstance, actual or threatened, that

1489146.1

17

**DEFENDANT'S ORIGINAL ANSWER**

increases or could increase the possibility of a "loss" under this Policy.

Failure to fulfill any warranty above will release us from all obligations under this Policy, to the extent that a "loss" is suffered or increased by that failure.

73. To the extent that, prior to inception of the Policy, Plaintiffs had knowledge of any matter, fact or circumstance, actual or threatened, that increased or could have increased the possibility of a loss under the Policy, their claims are barred by their breach of Warranty C of the Policy.

## Ninth Affirmative Defense
### (Fortuity Doctrine)

74. To the extent that Plaintiffs' could have reasonably foreseen the losses they incurred, to the extent such losses were not fortuitous, to the extent such losses were known or expected, to the extent such losses were substantially certain to follow, and to the extent such losses were not, to a substantial extent, beyond the control of Plaintiffs, Plaintiffs' claims are barred by the fortuity doctrine.

## Tenth Affirmative Defense
### (Uninsurable Claim)

75. To the extent that Plaintiffs' could have reasonably foreseen the losses they incurred, to the extent such losses were not fortuitous, to the extent such losses were known or expected, to the extent such losses were substantially certain to follow, and to the extent such losses were not, to a substantial extent, beyond the control of Plaintiffs, Plaintiffs' claims are uninsurable and barred by public policy.

## Eleventh Affirmative Defense
### (Exclusion 8, Section III — Extra Expense)

76. Exclusion 8 of Section III — Extra Expense of the Policy, provides that the Policy does not cover loss caused by, resulting from, or arising out of:

1489146.1
18
DEFENDANT'S ORIGINAL ANSWER

> Any concern or fear of an occurrence which may affect the commencement of [sic] the continuation of the Insured Production, except the action of a civil authority that prevents access to, exit from (ingress or egress) or closes down the location and or facilities due to condition that threaten the safety of case, crew or property.

77. To the extent Plaintiffs' loss resulted from or arose out of a concern or fear of an occurrence as set forth above, its loss is excluded by Exclusion 8, Section III ― Extra Expense, of the Policy.

## Twelfth Affirmative Defense
### (Exclusion 9, Section III ― Extra Expense)

78. Exclusion 9 of Section III ― Extra Expense of the Policy, provides that the Policy does not cover loss caused by, resulting from, or arising out of:

> An imminent peril or physical damage to property, facilities, or locations necessary to the insured production.

79. To the extent Plaintiffs' loss is caused by, results directly from, or arises out of an imminent peril or physical damage to property, facilities or locations necessary to the insured production, its claims are barred by Exclusion 9, Section III ― Extra Expense, of the Policy.

## Thirteenth Affirmative Defense
### (Exclusion 10, Section III ― Extra Expense)

80. Exclusion 10 of Section III ― Extra Expense of the Policy, provides that the Policy does not cover loss caused by, resulting from, or arising out of:

> Any concern or belief that the commencement or continuation of Insured Production is inappropriate.

81. To the extent Plaintiffs' loss was caused by, resulted from, or arose out of a concern or belief that the commencement or continuation of the Insured

Production was inappropriate, its loss is excluded by Exclusion 10, Section III ― Extra Expense, of the Policy.

## Fourteenth Affirmative Defense

### (Exclusion 17, Section III ― Extra Expense)

82. Exclusion 17 of Section III ― Extra Expense of the Policy, provides that the Policy does not cover loss caused by, resulting from, or arising out of:

> Loss of use (including loss of use of animals), loss of market, interruption of business, or any other consequential loss.

83. To the extent Plaintiffs' loss was caused by, resulted from or arose out of a consequential loss, its claims are excluded by Exclusion 17, Section III ― Extra Expense, of the Policy.

## Fifteenth Affirmative Defense

### (Violation of Constitution)

84. Plaintiffs' claim for exemplary and punitive damages violates the Constitution of the United States of America and the applicable State Constitution or Constitutions.

DATED: August 5, 2016

MARC J. SHRAKE
ANDERSON, MCPHARLIN & CONNERS LLP

-and-

MICHAEL KEELEY
*Pro Hac Vice Application Pending*
JOHN R. RIDDLE
*Pro Hac Vice Application Pending*
CARLA C. CRAPSTER
*Pro Hac Vice Application Pending*
STRASBURGER & PRICE, LLP

By: */s/ Marc J. Shrake*
Marc J. Shrake
Attorneys for Defendant
Atlantic Specialty Insurance Company