LUCIA E. COYOCA (SBN 128314)
  lec@msk.com
VALENTINE A. SHALAMITSKI (SBN 236061)
  vas@msk.com
DANIEL M. HAYES (SBN 240250)
  dmh@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone:  (310) 312-2000
Facsimile:  (310) 312-3100

Attorneys for Plaintiffs
Universal Cable Productions LLC and
Northern Entertainment Productions LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ATLANTIC SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | CASE NO. 2:16-cv-4435-PA-MRW <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR ORDER CONTINUING TRIAL DATE AND ALL DEADLINES FOR 60 DAYS** <br><br> Judge: Hon. Percy Anderson <br><br> File Date:        June 20, 2016 <br> Discovery Cutoff:  May 12, 2017 <br> Pre-Trial Conf.:   June 16, 2017 <br> Trial Date :       July 25, 2017 |

Mitchell
Silberberg &
Knupp LLP

8748324.7

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................. 1

II.     PROCEDURAL HISTORY ............................................................................. 2

III.    A CONTINUANCE IS NOT WARRANTED ................................................ 4

    A.    *Ex Parte* Relief Is Not Justified Because Atlantic Created The Current "Crisis" ....................................................................................................... 4

    B.    Atlantic Has Not Established Good Cause For A Continuance ............................. 6

        1.    Atlantic's Delay and Failure to Conduct Discovery on a Timely Basis ..... 7

            a.    Atlantic has not identified the specific documents it purportedly needs or explained why they are necessary. ............... 8

            b.    Atlantic has not made any motions to compel production or placed any disputes in front of the Magistrate Judge. .................... 9

            c.    Atlantic unilaterally cancelled all depositions and never put any back on calendar. ................................................................. 10

        2.    Atlantic's Meritless Excuses and Accusations ......................................... 10

            a.    Atlantic's Issues with Plaintiff's Privilege Log ............................ 11

            b.    Atlantic's Complaints Regarding The Pace of Plaintiffs' Document Production and the Effect on Deposition Scheduling ...................................................................................... 14

            c.    Atlantic's Complaints Regarding Deposition Scheduling are Disingenuous .................................................................................. 16

            d.    The Purported Delay in Producing Damages Documents ............ 18

            e.    Atlantic's Second Set of Requests for Production ....................... 23

            f.    Dispute over Claims of Privilege ................................................. 23

            g.    Dispute over Work Product Claim ................................................ 24

IV.    Conclusion ..................................................................................................... 25

Mitchell
Silberberg &
Knupp LLP

8748324.7

**PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR ORDER CONTINUING TRIAL DATE AND ALL DEADLINES**

# **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Chevron U.S.A., Inc. v. United States,*
  83 Fed. Cl. 195 (2008) ............................................................................................ 23

*Clauder v. Cnty. of San Bernardino,*
  2016 U.S. Dist. LEXIS 3790 (C.D. Cal. Jan. 11, 2016) .......................................... 7

*Cornwell v. Electra Cent. Credit Union,*
  439 F.3d 1018 (9th Cir. 2006) ........................................................................... 7, 10

*Cotton v. City of Eureka,*
  2010 U.S. Dist. LEXIS 65528 (N.D. Cal. June 10, 2010) .................................... 8, 9

*Dalia Rashdan (Mohamed) v. Geissberger,*
  2012 U.S. Dist. LEXIS 21595 (N.D. Cal. Feb. 17, 2012) ........................................ 8

*Fay Ave. Props., LLC v. Travelers Prop. Cas. Co. of Am.,*
  2014 U.S. Dist. LEXIS 91132 (S.D. Cal. July 3, 2014) .................................... 7, 10

*Harris v. Dillman,*
  2010 U.S. Dist. LEXIS 91791 (E.D. Cal. Sept. 2, 2010) ......................................... 7

*Johnson v. Mammoth Recreations, Inc.,*
  975 F.2d 604 (9th Cir. 1992) .................................................................................... 6

*Marine Group, LLC v. Marine Trvelift, Inc.,*
  2012 U.S. Dist. LEXIS 49064 (S.D. Cal. Apr. 6, 2012) .......................................... 6

*Mission Power Eng'g Co. v. Continental Cas. Co.,*
  883 F. Supp. 488 (C.D. Cal. 1995) ...................................................................... 4, 5

*Music Sales Corp. v. Morris,*
  1999 U.S. Dist. LEXIS 16433 (S.D.N.Y.) ............................................................. 14

### OTHER AUTHORITIES

Fed. R. Civ. Proc. 16(b)(4) ............................................................................................. 6
  Rule 16 (b) ................................................................................................................ 6
  Rule 26(f) .................................................................................................................. 2
  Rule 30 (b) (6) ............................................................................................... 3, 17, 19

Local Rule 7-19 .............................................................................................................. 6

i

Mitchell
Silberberg &
Knupp LLP

8748324.7

## I.      INTRODUCTION

Plaintiffs Universal Cable Productions LLC and Northern Entertainment Productions LLC (collectively "Plaintiffs") oppose Defendant Atlantic Specialty Insurance Company's ("Atlantic") *Ex Parte* Application for Order Continuing Trial Date and All Deadlines for 60 days ("*Ex Parte* Application").  Atlantic cannot demonstrate the requisite good cause to support a continuance being granted.  Atlantic has conjured up a purported "crisis" as to why the trial should be continued, attempting to shift responsibility for Atlantic's own dilatory conduct to Plaintiffs.  However, the facts make clear that it is Atlantic's failure to diligently proceed with discovery and prepare the case for trial that has resulted in the situation Atlantic now claims it is facing.  It is Atlantic that chose to forego taking any depositions for months, even though it has known the identity of the witnesses with the percipient knowledge as to the facts in the case since September of 2016.  It is Atlantic that kept revising its document demands as to the damages related documents it wanted Plaintiffs to produce, making Plaintiffs' document production obligations as to damages an ever moving target.  And, it is Atlantic that failed to anticipate the discovery and depositions that it would need in order to file or respond to any motions for summary judgment.  Atlantic must take responsibility for the choices that it made in defending the case.  There simply is no legitimate basis for the trial or any of the pre-trial deadlines to be continued.

In any event, there is no reason why Atlantic's request for a continuance should be decided on an emergency *ex parte* basis, rather than a regularly noticed motion for continuance.  Atlantic's failure to diligently pursue discovery or request a continuance at an earlier point is a crisis of Atlantic's own making, and does not call for the extraordinary relief requested here.

Mitchell
Silberberg &
Knupp LLP

8748324.7

1

PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR
ORDER CONTINUING TRIAL DATE AND ALL DEADLINES

## II.   PROCEDURAL HISTORY

Plaintiffs filed this insurance coverage action on June 20, 2016.  On July 7, 2016, Plaintiffs filed a First Amended Complaint.  (ECF No. 10.)  On August 5, 2016, Atlantic filed an Answer to the First Amended Complaint.  (ECF No. 14.)

On August 8, 2016, the Court issued an Order re: Scheduling Meeting of Counsel and setting the Scheduling Conference for September 19, 2016.  (ECF No. 22.)  On September 5, 2016, after extensive conferencing regarding discovery planning and the sequencing of this litigation, the parties filed a Joint Rule 26(f) Report, with a joint proposed schedule.  (ECF No. 23.)  On September 15, 2016, the Court issued its Scheduling Order, setting the following dates:

Discovery Cut-off:  March 13, 2017

Motion Cut-off:  March 20, 2017

Final Pretrial Conference:  April 21, 2017, at 1:30 p.m.

Jury Trial:  May 23, 2017, at 9:00 a.m.

(ECF No. 28.)

Plaintiffs promptly began serving written discovery, serving interrogatories and requests for production of documents less than three weeks later on October 5, 2016.  Shalamitski Decl., ¶ 3.  Atlantic, on the other hand, delayed, and did not serve any written discovery for another month (and more than two months after the Court issued its Scheduling Order), finally serving initial requests on November 17, 2016.  *Id.*, ¶ 5.

In January 2016, Atlantic approached Plaintiffs and requested that they stipulate to continue the trial and all corresponding pre-trial dates.  *Id.* Decl., ¶ 21.  Plaintiffs agreed.  On January 18, 2017, the parties filed a Joint Stipulation Re: Pre-Trial and Trial Dates, with both sides stipulating to a sixty day continuance of the trial and all pretrial dates.  (ECF No. 33.)  On January 19, 2017, the Court granted this request, setting the following new dates:

Discovery Cut-off:  May 12, 2017

Mitchell
Silberberg &
Knupp LLP

8748324.7

2

**PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR
ORDER CONTINUING TRIAL DATE AND ALL DEADLINES**

1  Motion Cut-off: May 22, 2017

2  Final Pretrial Conference: June 16, 2017, at 1:30 p.m.

3  Jury Trial: July 25, 2017, at 9 a.m.

4  (ECF No. 34)

5  Since entry of the revised Scheduling Order on January 19, 2017, the parties

6  have engaged in extensive document and other written discovery. *See generally*

7  Hayes Decl., Shalamitski Decl.  Disputes have arisen and the parties have engaged

8  in lengthy and time consuming conferences regarding the first sets of written

9  discovery.  Hayes Decl.*,* ¶ 2.  Atlantic served an additional set of document

10  requests and interrogatories.  Shalamitski Decl., ¶¶ 7, 8.  Plaintiffs have served an

11  additional set of interrogatories, two additional sets of document requests, and two

12  sets of requests for admission.  *Id.,* ¶ 6, 9.  Both parties also exchanged additional

13  privilege logs.  *Id.,* ¶ 14 , 15.   The parties have designated experts and exchanged

14  initial expert reports.  (Rebuttal reports are due on April 7, 2017.)  *Id.,* ¶ 11.  The

15  parties' written discovery efforts and the disputes that have arisen are detailed in

16  the relevant sections below.

17  Deposition discovery has been more one-sided.  Both parties have noticed

18  depositions.  *Id.,* ¶ 20-29.  Plaintiffs noticed the depositions of eight witnesses,

19  three of which have been taken.[1]  *Id.,* ¶ 20, 26-28.   By contrast, while Atlantic

20  claims it wants to depose ten witnesses associated with Plaintiffs,[2] it has not taken a

21  single deposition, despite numerous possible deposition dates being offered by

22  Plaintiffs.  *Id.,* ¶ 22-29.  In January and late February, Plaintiffs offered several

23  dates for the depositions of these witnesses.  *Id.,* ¶ 22, 23. This was no small task,

24  _____

25  [1] Plaintiffs have sought to depose Peter Williams, Theresa Gooley, Daniel
Gutterman, Pamela Johnson, Wanda Phillips, Dennis Crosby and Sean Duffy, and

26  a Rule 30 (b) (6) corporate designee deposition on various topics.

27  [2] Atlantic seeks to depose:  Andrea Garber, Kurt Ford, Susan Weiss, Randi
Richmond, Mark Binke, Stephen Smith, Thomas McCarthy, Jeff Wachtel, Malika

28  Adams, and a Rule 30 (b) (6) corporate designee witness on various topics.

Mitchell
Silberberg &
Knupp LLP

8748324.7

3

**PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR
ORDER CONTINUING TRIAL DATE AND ALL DEADLINES**

1  particularly given the packed daily schedules of the production executives that

2  Atlantic sought to depose during a very busy production season.  Atlantic never

3  confirmed the dates, and after the trial continuance was granted, on February 3,

4  2017, unilaterally removed all of these depositions from the calendar.  *Id.,* Ex. 27 .

5  Atlantic refused to even discuss deposition scheduling until after Plaintiffs

6  had produced all documents.  *Id.*  Atlantic's position was both unreasonable and

7  unwarranted.  Atlantic has had the key documents that it needed in order to take

8  full and complete depositions of these witnesses since at least February 24, 2017

9  (if not sooner, see discussion of Plaintiffs' document production efforts below in

10  section III.B.2.b).  Atlantic has ignored repeated requests from Plaintiffs to solidify

11  deposition dates for the witnesses with limited schedule availability.  *See id.*, ¶ 23.

12  Moreover, despite being aware for months about the issues about which it

13  now complains, Atlantic has not proceeded with any discovery motions, whether

14  formal or informal, to compel the discovery that Atlantic alleges is necessary

15  before any depositions of Plaintiffs' witnesses may proceed.  Now, at the eleventh

16  hour, having delayed in conducting discovery and failed to bring its purported

17  discovery disputes to the Court, Atlantic filed this *Ex Parte* Application requesting

18  an extension of all dates by another two months.  (ECF No. 37.) (Hereinafter, "*Ex*

19  *Parte* App.).  For the reasons set forth below, Plaintiffs oppose the request.

20  **III.   A CONTINUANCE IS NOT WARRANTED**

21  **A.   *Ex Parte* Relief Is Not Justified Because Atlantic Created The**

22  **Current "Crisis"**

23  As noted in Judge Anderson's Standing Combined Civil Trial Scheduling

24  Order, "Ex Parte Applications are entertained ***solely for extraordinary relief***."

25  Combined Civil Trial Scheduling Order § I.D ("Standing Order") (emphasis

26  added).  "Ex parte motions are rarely justified." *Mission Power Eng'g Co. v.*

27  *Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).  To be entitled to

28  such relief, the moving party must show that (1) its "cause will be irreparably

Mitchell
Silberberg &
Knupp LLP

8748324.7

4

**PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR
ORDER CONTINUING TRIAL DATE AND ALL DEADLINES**

1   prejudiced if the underlying motion is heard according to regular noticed motion

2   procedures," and (2) "the moving party is *without fault* in creating the crisis that

3   requires ex parte relief, or that the crisis occurred as a result of excusable neglect."

4   *Id.* (Emphasis added.)  Here, Atlantic cannot satisfy either of these requirements.

5       First, Atlantic has not shown that irreparable harm will occur if this motion

6   is heard on a regularly noticed basis.  Atlantic could and should have filed a

7   properly noticed motion requesting a continuance of the trial date and the

8   discovery cutoff.  If such a motion were filed today, it would be heard May 1,

9   2017, before the discovery cutoff of May 12, 2017.

10      Second, Atlantic has failed to show that it is "without fault in creating the

11  crisis."  Atlantic contends any delay in the filing of a motion to continue

12  purportedly was caused by Plaintiffs, who did not notify Atlantic that they would

13  oppose a continuance until March 28.  *Ex Parte* App., p. 1.  However, the timeline

14  established by the communications between counsel from March 17, 2017 to

15  March 28, 2017 disproves that contention.  Counsel for the parties were in near

16  daily communication throughout March discussing issues relating to deposition

17  scheduling, discovery responses and other case related issues.  Atlantic did not

18  raise the prospect of a continuance with Plaintiffs until March 17, 2017, despite

19  being well aware of many of the discovery issues and the various impending

20  deadlines and timelines since the January 19, 2017 Scheduling Order re-setting the

21  trial and pre-trial dates.  Hayes Decl., Ex. 8.

22      Moreover, on March 17, Atlantic did *not* ask Plaintiffs to stipulate to a

23  continuance; instead, it indicated that it "may" seek a trial continuance.  *Id.*  On

24  March 23, 2017, counsel again discussed the possibility of moving the pre-trial

25  deadlines and the trial during a meet and confer conference call, and Atlantic's

26  counsel requested that Plaintiffs' counsel discuss the possibility with their clients.

27

28

Mitchell
Silberberg &
Knupp LLP

8748324.7

**PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR
ORDER CONTINUING TRIAL DATE AND ALL DEADLINES**

1   *Id.,* ¶ 14.  In the next meet and confer phone call, on March 28, 2017, Plaintiffs'

2   counsel advised Atlantic that it would *not* agree to a continuance.[3]  *Id.,*  Ex. 17.

3       In short, if the issues truly were as compelling and the potential harm as

4   irreparable as Atlantic now contends, it should have timely proceeded with a

5   noticed motion for continuance earlier,  when it purportedly first became aware of

6   the need for a continuance.  Thus, this "crisis" is entirely of Atlantic's own

7   making, and does not warrant ex parte relief.

8       **B.   Atlantic Has Not Established Good Cause For A Continuance**

9       The Court's scheduling order under Federal Rule of Civil Procedure 16 (b)

10  "may be modified only for good cause and with the judge's consent."  Fed. R. Civ.

11  Proc. 16(b)(4).  *See also* Standing Order § I.E.3 (even a *stipulation* to extend time

12  to continue any pretrial or trial date must set forth the "specific reasons supporting

13  good cause for granting the extension.").

14      Here, the parties already agreed once to stipulate to a continuance, which the

15  Court granted.  There is no need to further delay resolution of this matter.  The

16  district court may modify the pretrial schedule "if it cannot reasonably be met

17  despite the diligence of the party seeking the extension," ***but*** "if that party was ***not***

18  ***diligent***, the inquiry should end."  *Johnson v. Mammoth Recreations, Inc.*, 975

19  F.2d 604, 609 (9th Cir. 1992) (emphasis added).[4]

20  _____

[3] Indeed, Atlantic violated Local Rule 7-19 in filing its *ex parte* application without

21  first advising Plaintiffs as to the fact that it would be filed, when it would be filed, and the basis for filing the *ex parte*.  Plaintiffs pointed out the violation to

22  Atlantic's counsel and requested that they withdraw the application.  Atlantic agreed to do so but told Plaintiffs it would re-file its application once technical

23  compliance with the rule had been met, and refiled less than three hours later.

[4] Tellingly, the only case Atlantic cites is one in which the motion for a

24  continuance was unopposed, and the third-party defendant seeking the continuance had been added to the case late in the discovery period.  *Marine Group, LLC v.*

25  *Marine Trvelift, Inc.*, 2012 U.S. Dist. LEXIS 49064, *10 (S.D. Cal. Apr. 6, 2012). As a result, without a continuance, and by *no fault of its own*, the third-party

26  defendant would have only had three to four months to complete all discovery.  *Id.* at *11.  Thus, the Court granted the continuance, but only provided an additional

27  two months, for a total of five to six months of discovery.  *Id.* at *12.  Here, the operative Scheduling Order provides for *nine* months of discovery.  (ECF No. 34).

28

Mitchell
Silberberg &
Knupp LLP

8748324.7

**PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR
ORDER CONTINUING TRIAL DATE AND ALL DEADLINES**

1    The fact that some discovery may not be completed before dispositive

2  motions must be filed is not, in itself, a reason that should disrupt a Court's ability

3  to control discover and advance its docket.  "[I]n many cases discovery must close

4  before a district court can consider dispositive motions with all evidence in hand.

5  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006).

6    Failure to timely bring discovery disputes before the Court or Magistrate

7  Judge, or to timely schedule and take depositions, does not constitute diligence and

8  is not good cause for a continuance.  "Unresolved discovery disputes, especially

9  discovery disputes that have not been subject to meet and confer sessions, and have

10  not been brought to the Court's attention, cannot be the basis of the good cause

11  needed to continue the pending Case Management dates."  *Fay Ave. Props., LLC v.*

12  *Travelers Prop. Cas. Co. of Am.*, 2014 U.S. Dist. LEXIS 91132, *9 (S.D. Cal. July

13  3, 2014).  *See also Harris v. Dillman*, 2010 U.S. Dist. LEXIS 91791, *6-7 (E.D.

14  Cal. Sept. 2, 2010) ("Plaintiff fails to explain why he did not timely litigate this

15  referenced discovery dispute before the Magistrate Judge as required by the

16  scheduling order and the [Local Rules]. The district court is not required to

17  consider a discovery matter which Plaintiff 'failed to [timely] prosecute . . . before

18  the magistrate judge … .'") (internal citations omitted).

19    This is particularly true when the moving party is "at least as culpable for

20  causing delay as [the non-moving party]" and fails to show the evidence needed is

21  not obtainable through other means within the deadlines established in the

22  Scheduling Order.  *Clauder v. Cnty. of San Bernardino*, 2016 U.S. Dist. LEXIS

23  3790, *10 (C.D. Cal. Jan. 11, 2016).

24    1.    <u>Atlantic's Delay and Failure to Conduct Discovery on a Timely Basis</u>

25    Atlantic has not and cannot demonstrate that it has diligently pursued

26  discovery and preparation of the case for trial.  Instead, its delay and dilatory

27  behavior is what has caused the purported need for a continuance.  Moreover,

28  Atlantic has not brought any of its complaints about discovery before the

Mitchell
Silberberg &
Knupp LLP

8748324.7

1   Magistrate Judge, and has unilaterally cancelled depositions and delayed in

2   confirming rescheduled deposition dates.  Therefore, Atlantic has not demonstrated

3   good cause for a continuance to be issued.  *See Dalia Rashdan (Mohamed) v.*

4   *Geissberger*, 2012 U.S. Dist. LEXIS 21595, **7-10 (N.D. Cal. Feb. 17, 2012) .

5   *See also Cotton v. City of Eureka,* 2010 U.S. Dist. LEXIS 65528 (N.D. Cal. June

6   10, 2010) (denying motion to extend discovery cut-off where defendant waited to

7   the eleventh hour to seek to enforce subpoenas to obtain allegedly significant

8   documents).

9         *Dalia Rashdan* is instructive on this point.  In *Dalia Rashdan*, the court

10   denied a motion for continuance when the moving party did not specifically

11   identify the documents sought, or explain why they were necessary to proceed with

12   depositions that had been cancelled.  The moving party had also failed to diligently

13   prepare and file motions to compel to resolve the issues about which it was

14   complaining.  Moreover, the moving party's prior attorney "repeatedly delayed the

15   depositions—and then after the depositions finally were scheduled—unilaterally

16   cancelled them only days before they were to begin." *Dalia Rashdan*, 2012 U.S.

17   Dist. LEXIS 21595, at *10.

18         That is precisely the situation which has occurred here.

19               a.      **Atlantic has not identified the specific documents it**
                         **purportedly needs or explained why they are**
20                       **necessary.**

21         Atlantic does not identify specific documents it needs, or how they would

22   support any dispositive motion.  Moreover, Atlantic names certain witnesses it

23   claims it needs to depose before the dispositive motion deadline, but does not

24   explain specifically why these depositions are needed for any dispositive motion it

25   plans to file, or how these witnesses' anticipated testimony would be used in the

26   anticipated motion.  *See Dalia Rashdan*, 2012 U.S. Dist. LEXIS 21595, at *10

27   (denying motion for continuance when moving party did not specify what

28   documents were needed or why certain depositions were required).

Mitchell
Silberberg &
Knupp LLP

8748324.7

8

1

        **b.**    **Atlantic has not made any motions to compel production or placed any disputes in front of the Magistrate Judge.**

2

3       Atlantic's lack of diligence has been apparent from the outset.  Initially,

4 Atlantic delayed over two months in serving discovery on Plaintiffs.  The Court

5 issued its Scheduling Order September 15, 2016.  (ECF No. 28.)  Yet, Atlantic did

6 not serve any discovery until November 17, 2016, over two months after discovery

7 opened.  Shalamitski Decl., ¶ 5.

8       When trial and the pre-trial deadlines were continued in January, Atlantic

9 knew of the deadlines in this matter, planned to file dispositive motions, and knew

10 that discovery would need to be significantly underway with any material disputes

11 resolved before it filed its motions.  (ECF No. 33).   It was aware of the need to

12 "careful[lly] review all documents produced" as of January.  *Id.*  If Atlantic truly

13 needed evidence for its dispositive motions, it could (or should) have timely

14 brought its discovery disputes before the Magistrate Judge so they could be

15 resolved prior to the dispositive motion cutoff.  *Cotton v. City of Eureka,* 2010 U.S.

16 Dist. LEXIS 65528.

17       Atlantic sent its first meet and confer letter to Plaintiffs January 13, 2017.

18 where it raised issues regarding Plaintiffs' privilege log and ongoing production of

19 documents, requested Plaintiffs' position on producing documents relating to

20 claimed damages, and requested deposition dates for witnesses Stephen Smith,

21 Susan Weiss, and Malika Adams.  Over the next two months, the parties discussed

22 these issues in meet and confer conferences and in numerous emails and letters.

23 *See* Hayes Decl., Shalamitski Decl.   Atlantic was still saying it would identify

24 additional meet and confer issues about perceived deficiencies in Plaintiffs'

25 responses and productions in late February.  Hayes Decl., Ex. 2.  If Atlantic truly

26 needed any of these issues resolved for its discovery and its dispositive motions, it

27 would have timely brought these disputes to the attention of the Court.

28

**c.   Atlantic unilaterally cancelled all depositions and never put any back on calendar.**

Atlantic's complaint that it cannot complete key depositions before the dispositive motion deadline is a problem particularly of its own making.  Many of these depositions were previously scheduled or Plaintiffs had offered dates months ago, but Atlantic unilaterally took the depositions off calendar.  *See* § III.B.2.c, below.  Failure to complete depositions before the discovery cutoff does not demonstrate diligence.  *Fay Ave. Props.*, 2014 U.S. Dist. LEXIS 91132 at *5.  *See also Cornwell*, 439 F.3d at 1027 (9th Cir. 2006) (affirming denial of continuance where the moving party did not diligently pursue deposition that "might have revealed highly probative evidence" prior to discovery cut-off).

Atlantic has delayed and stalled depositions without good reason.  As noted above, Atlantic has had the key documents needed for depositions since at least February 24, 2017.  Shalamitski Decl., ¶ 16.  And even assuming for the sake of argument that Atlantic believed it needed additional documents, it could have still proceeded with depositions under a reservation of rights.

Plaintiffs, on the other hand, did not let Atlantic's failure to produce all responsive documents prior to depositions stop it from taking three depositions of Atlantic witnesses, and moving forward with attempts to schedule the others.  *Id.*, ¶¶ 26-28.  Plaintiffs noticed the depositions and took them, simply confirming on the record that Atlantic had not produced documents that they should have produced before the depositions, and has filed with the Magistrate Judge a motion to compel production of documents.  *Id.*

**2.   Atlantic's Meritless Excuses and Accusations**

None of the excuses and accusations offered up by Atlantic as to why it needs a trial continuance has any merit.  Atlantic is in the position it is in because it delayed and failed to conduct discovery on a timely basis.  Nonetheless, Plaintiffs

Mitchell
Silberberg &
Knupp LLP

8748324.7

10

**PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR
ORDER CONTINUING TRIAL DATE AND ALL DEADLINES**

1  will briefly address each of Atlantic's meritless accusations about Plaintiffs'

2  supposed discovery delays below.[5]

### a.   Atlantic's Issues with Plaintiff's Privilege Log

3
4  Atlantic argues that (i) the Supp. Log was provided late, and (ii) there are

substantive issues Atlantic would like to raise regarding the Supp. Log. *Ex Parte*

5  App., pp. 6-10.  Neither of Atlantic's arguments support trial continuance.

6  ### (i)   Timing of the Supp. Log

7  Atlantic's claim that the Supp. Log was "three months late"—counting the

8  time from the due date of the responses to requests for production—is

9  disingenuous at best.  As an initial matter, Atlantic failed to note that it produced

10  its original log (containing 12 entries) more than two weeks after serving responses

11  to Plaintiffs' requests for production, and a larger supplemental log more than a

12  month after.  *See* Shalamitski Decl., ¶ 14.[6]

13  With respect to the time required to produced Plaintiffs' Supp. Log, Atlantic

14  fails to acknowledge the uneven burden that made Plaintiffs' effort to log

15  privileged communications particularly labor intensive and time-consuming.

16  While Atlantic only had to log documents relating to a limited investigation and

17  denial of an insurance claim that took place over a period of a few *weeks*, Plaintiffs

18  had to log privileged communications relating to an international (Canada, Israel,

19  Croatia, U.S.) production of a major television series which occurred over a period

20  of more than a *year*.  *See generally* First Amended Complaint (ECF No. 10).

21  The following data amply illustrates this point:

22

| | **Atlantic** | **Plaintiffs** |
|---|---|---|
| Time period at issue: | July 11—July 28, 2014 | November 2013—February, |

23

24

25  [5] Atlantic improperly attempts to use this *Ex Parte* Application as a vehicle for litigating the merits of the parties' discovery disputes.  Instead, Atlantic should bring any such disputes to Magistrate Judge Wilner.

26

27  [6] Thus, due to, among other things, voluminous nature of document review and production in this case, *both* sides produced their respective logs *after* serving responses to requests for production.

28

Mitchell
Silberberg &
Knupp LLP

8748324.7

11

**PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR
ORDER CONTINUING TRIAL DATE AND ALL DEADLINES**

|  | | |
|---|---|---|
|  | (notice, investigation, and denial of Plaintiffs' insurance claim) | 2015 (preparation, filming, and production of *Dig* in Canada and Israel, with a subsequent move to Croatia and the U.S.) |
| Number of individuals listed on the log: | 42 | 139 |
| Number of documents collected for potential review: | Unknown | Hundreds of thousands. *See* Shalamitski Decl., ¶ 12. |
| Document review team: | Unknown | 12 attorneys. *Id*. |
| Documents produced: | 4,548 pages | 32,749 pages (produced on rolling basis, starting in October 2016) |

Atlantic also failed to include in its *Ex Parte* papers the detailed legend of names Plaintiffs provided to accompany their Supp. Log, which further illustrates the disparate time and burden it took to complete the parties' respective logs. *See* Shalamitski Decl., Ex. 26 (Plaintiffs' legend). (Atlantic did not produce any legend for its privilege log. *Id.,* ¶ 14.) As can be gleaned just by briefly reviewing Plaintiffs' legend for the Supp. Log, the international production of *Dig* involved complex legal issues and numerous lawyers (*e.g.*, in connection with immigration, multiple contracts, Guild, security, postponement, and relocation of the production issues). The Supp. Log accordingly required substantial time and effort to complete; much more than what was involved in the creation of a log for Atlantic's privileged communications.

Atlantic argues that "only" after it decided on March 24 to bring the matter to the attention of the Magistrate Judge, Plaintiffs "amazingly" produced the Supp.

Log. on March 28.  *Ex Parte* Appl., pp. 6-7.  This is nonsense.  Plaintiffs kept
Atlantic apprised of their progress with the supplemental log as the review process
unfolded.  *Id.*, pp. 7-8.  And, as Plaintiffs told Atlantic in response to its portion of
the proposed submission to the Magistrate Judge (which Atlantic never submitted):
"Plaintiffs had anticipated completing the supplemental log sooner (during the
week of March 13 or 20), but due to unavoidable intervening circumstances (e.g.,
one of the attorneys primarily working on the privilege log was ill during most of
the weeks of March 13 and 20), required additional time to complete the log.  It is,
however, nearly complete, and Plaintiffs will have produced their supplemental
privilege log by tomorrow, March 28, 2017."  Plaintiffs produced the Supp. Log on
March 28, 2017.

**(ii)    Atlantic's "Substantive" Issues with the Supp. Log**

Atlantic makes several conclusory statements such as "[i]t is clear from [the]
log that many documents are being withheld improperly," without providing any
factual support.  *Ex Parte* App., pp. 8-10.  Obviously, Plaintiffs disagree, but none
of Atlantic's arguments can be resolved on the merits on this *Ex Parte* Application.
What is clear, however, is that they should be resolved by the Magistrate Judge,
and do not warrant trial continuance.  To briefly address the privilege issues,
Atlantic claims it has problems with:  (a) certain descriptions of the entries on the
Supp. Log; (b) the privilege status of correspondence that was not directly sent to,
received from, or copied to a lawyer; (c) the privileged status of correspondence
"on which an attorney was merely carbon copied;" and (d) redactions.  *Ex Parte*
App., pp. 8-9.

Atlantic fails to disclose to the Court that the parties have extensively met
and conferred regarding these issues for the better part of March (and before), and
already have held multiple lengthy phone conferences and exchanged extensive
written correspondence on these issues.  *See, e.g.*, Hayes Decl., Ex. 17 (Plaintiffs'
March 29 meet-and-confer letter, responding to Atlantic's March 17 meet-and-

Mitchell
Silberberg &
Knupp LLP

8748324.7

13

**PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR
ORDER CONTINUING TRIAL DATE AND ALL DEADLINES**

confer letter, and memorializing the parties' lengthy March 28 conference: addressing—at length—Atlantic's issues in connection with descriptions of log entries, redactions and privilege claims where attorneys are "merely" copied).

Further, Atlantic's challenge of privilege claims for communications which were not directly sent to, received from, or copied to a lawyer is baseless. The law is clear, particularly in the context of corporate communications (as is the case here), that a lawyer need *not* be directly included in a communication for it to be privileged. Rather, for example, a communication reflecting or discussing legal advice is privileged even if it does not directly involve an attorney as a sender or recipient. *See, e.g., Music Sales Corp. v. Morris*, 1999 U.S. Dist. LEXIS 16433, at *17 (S.D.N.Y.) ("Accordingly, the distribution [among non-attorneys] within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege.") (citing *Upjohn Co. v. United States*, 449 U.S. 383, 391-92 (1981)).

Thus, Atlantic's conclusory arguments are not only without merit, but as important, these issues have already been the subject of an extensive meet-and-confer. Tellingly, Atlantic has not filed a motion as to such communications. Moreover, Atlantic fails to show these issues could not have been resolved under the present case schedule. To the extent Atlantic claims the timing is tight, that is Atlantic's own fault. Atlantic could have, but did not, bring these matters to the attention of the Magistrate Judge earlier, but concedes the parties have been meeting and conferring "over the course of approximately the last 30 days." *Ex Parte* App., pp. 7, 16. Atlantic's own delay in seeking relief is not a reason, let alone a sufficient reason, to seek trial continuance.

**b.** **Atlantic's Complaints Regarding The Pace of Plaintiffs' Document Production and the Effect on Deposition Scheduling**

Atlantic's complaints regarding the pace of Plaintiffs' document production are similarly unavailing. To the extent Atlantic is displeased with the length of time it has taken Plaintiffs to produce the documents requested, it has only itself to

Mitchell
Silberberg &
Knupp LLP

8748324.7

14

PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR
ORDER CONTINUING TRIAL DATE AND ALL DEADLINES

1 blame.  Atlantic delayed *for two months* after the opening of discovery before

2 serving any document requests.  And, rather than serving requests that were

3 narrowly tailored to the discrete issue in dispute in this case (e.g., the applicability

4 of the "war exclusions" and the relocation of the production), Atlantic served more

5 than one hundred requests that sought the production of documents relating to

6 virtually ***every*** aspect of the Dig production.  Shalamitski Decl. ¶ 5, 7.

7       The contrast in document production efforts between Plaintiffs and Atlantic

8 is telling.  Despite the burden of the production, and the complete

9 disproportionality of the production demands to the needs of the case, Plaintiffs

10 reviewed hundreds of thousands of documents and produced more than 3,310

11 documents for a total page count of 32,749.  *Id.*  By contrast, Atlantic has produced

12 approximately 614 documents, constituting only 4,548 pages.  *Id.*, ¶ 13.

13       Moreover, Plaintiffs had substantially completed production of the key

14 documents that relate to the coverage issues in dispute by February 24, 2017.  *Id.*, ¶

15 16.  Since that time, Plaintiffs have continued to produce documents on a rolling

16 basis that are responsive to a single issue – accounting records reflecting the extra

17 expenses Plaintiffs incurred in the relocation of the production.  *Id.*  Plaintiffs have

18 continued to produce accounting records relating to the extra expenses because

19 Atlantic's demands for such documents are constantly changing.  No matter what

20 Plaintiffs produce in the way of financial damages documents, Atlantic demands

21 more.  The production of damages related financial documents have been the

22 subject of ongoing disputes between the parties for the past several months.  *See,*

23 *infra* III.B.2.d.

24       Significantly, none of these accounting records and documents are relevant

25 to the issues which will be decided in the motions for summary judgment.  The

26 accounting records and financial documents relate solely to Plaintiffs damages'

27 claim.  Moreover, the majority of the witnesses that Atlantic seeks to depose have

28 no testimony to offer concerning those financial documents and accounting

1  records.  Atlantic could and should have proceeded with the depositions of those

2  witnesses who had no dealings with or knowledge about the financial costs

3  incurred with respect to the relocation of the production, such as Andrea Garber,

4  Kurt Ford, Malika Adams, and Susan Weiss (all of whom dealt with the insurance

5  related aspects of the dispute, not Plaintiffs' damages claim arising out of the

6  relocation), or Stephen Smith and Tom McCarthy (who assessed the deteriorating

7  security situation in Israel in the summer of 2014).  Atlantic did not do so; instead,

8  it deferred taking any depositions whatsoever.  That was Atlantic's choice.  It

9  cannot avoid the ramifications of that choice by seeking to continue the trial now,

10  based on its refusal to proceed with depositions at an earlier point in the case, when

11  it clearly could have done so.

12  **c.  Atlantic's Complaints Regarding Deposition Scheduling are Disingenuous**

13  Atlantic claims it needs to take the depositions of ten witnesses who are

14  associated with Plaintiffs.  To date, however, Atlantic has failed to take a single

15  deposition even though the case has been pending since June 2016.  Shalamitski

16  Decl., ¶ 29.  The witnesses Atlantic seeks to depose range in responsibilities from

17  production executives who were involved in the Dig production, to security

18  personnel who assessed the security risks in Israel, to Plaintiffs' risk management

19  personnel (and their broker) who were involved in the administration of the policy

20  and submission of the Dig claim.  *Id*., ¶ 23.  On January 11, 2017 and continuing

21  throughout the month, Plaintiffs offered multiples dates on which many of these

22  witnesses could be deposed.  *Id.* ¶¶ 22, 23.

23  Plaintiffs went to great lengths to arrange for the scheduling of these

24  depositions, which were set to take place during a very busy production season

25  when witnesses had limited availability.  Pressing business had to give way and

26  calendars rearranged to accommodate the deposition scheduling.  As Atlantic did

27  not confirm any of the dates Plaintiffs had offered, and witnesses' schedules

28  changed, Plaintiffs continued to contact Atlantic throughout the following weeks

regarding possible dates for the depositions, repeatedly asking Atlantic to confirm dates. *Id.*  Thus, Plaintiffs were surprised to receive an email from Atlantic on February 3, 2017, unilaterally refusing to schedule any of those depositions. Shalamitski Decl., Ex. 27.  When Atlantic took the depositions off calendar, Plaintiffs cautioned Atlantic that subsequent scheduling would be difficult, and alternative dates might not be available during Atlantic's chosen time frame.  *Id.* Notwithstanding the admonition, Atlantic flatly refused to proceed with the depositions.  *Id.* ¶ 23.  It did not seek to reschedule these depositions until after Plaintiffs told Atlantic that it wanted to take the depositions of three additional Atlantic witnesses.  *Id.,* and Hayes Decl., Ex. 11.  Despite the prior scheduling problems, Plaintiffs once again acted in good faith and secured dates for several of these witnesses (including dates for high level executives who have limited availability) on short term notice, providing these new dates on March 24, 2017. *Id.*, Ex. 11.

However, rather than confirming any of these depositions, on March 29, 2017, Atlantic served deposition notices for nine witnesses (seven individuals and two Rule 30(b)(6) depositions), unilaterally scheduling the depositions for dates within the next two weeks, even though Plaintiffs already had provided multiple alternative dates that worked for the deponents' schedules.  Shalamitski Decl., ¶ 24.  Atlantic's proffered excuse for the unilateral scheduling of the depositions was that it wanted to take these depositions one week before the cut-off date for summary judgment motions to be filed, which is April 24, 2017.  Hayes Decl., Ex. 13.  Atlantic has been well aware of the cut-off date for several months, and has had multiple opportunities to take these depositions.

Moreover, when Atlantic indicated for the first time in late March that it purportedly needed to depose these witnesses prior to the filing of its motion for summary judgment, Plaintiffs asked Atlantic to explain the relevance of any

Mitchell
Silberberg &
Knupp LLP

8748324.7

17

**PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR**
**ORDER CONTINUING TRIAL DATE AND ALL DEADLINES**

1    potential testimony these witnesses could offer as to the issues likely to be raised in

2    the summary judgment motions.  Atlantic simply did not respond.  *Id.*

3         To the extent Atlantic has a scheduling problem fitting the witnesses in prior

4    to the cut-off date, that is a problem which Atlantic created by refusing to proceed

5    with the depositions over the past several months.  In light of the substantial efforts

6    that Plaintiffs have made over the past several months to make these witnesses

7    available, and Atlantic's refusal to schedule the depositions, Atlantic's claim that a

8    trial continuance is necessary because it could not depose the witnesses prior to the

9    motion cut-off date should be given no credence.

10                     **d.      The Purported Delay in Producing Damages
                               Documents**

11        Atlantic's self-serving characterization of Plaintiffs' production of financial

12   documents is incomplete and misleading.  As set forth below, Plaintiffs have gone

13   to great lengths to promptly address each of Atlantic's numerous requests for

14   financial information.  To the extent Atlantic feels it is running out of time, it has

15   only its own lack of diligence to blame.  And, as explained below, Atlantic's

16   superficial argument that "[i]t is simply not humanly possible for Atlantic's

17   damages expert to review 13,000 pages of new documents received [March 29,

18   2017] before next Friday" is a red herring.

19                        **(i)      Brief History and Background**

20        Prior to Atlantic serving any written discovery, on **October 26, 2016**,

21   Plaintiffs produced to Atlantic a detailed Excel spreadsheet containing tens of

22   thousands of rows of financial data evidencing individual extra expenses that were

23   incurred as a result of the relocation of the *Dig* production from Israel to New

24   Mexico and Croatia.  Shalamitski Decl., ¶ 4.  The parties have referred to this

25   document as the "Extra Expense bible" (hereinafter, the "Expense Bible").  Upon

26   reviewing the Expense Bible, if Atlantic felt it needed to better understand the

27   basis for or details of Plaintiffs' substantial but straightforward damage claim, it

28   could have explored its questions in the usual manner – through individual and

Mitchell
Silberberg &
Knupp LLP

8748324.7

18

**PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR
ORDER CONTINUING TRIAL DATE AND ALL DEADLINES**

Rule 30(b)(6) depositions.  In their **September 16, 2016** initial disclosures Plaintiffs identified persons with knowledge regarding, *inter alia*, "the expenses and costs Plaintiffs incurred in connection with the delay, postponement, and relocation of the *Dig* production out of Israel." *Id.*, Ex. 23.  Even though it has known the identities of those witnesses and has had the Expense Bible for six months, Atlantic has not taken any depositions regarding Plaintiffs' extra expenses.

Instead, Atlantic chose to seek additional documents it claimed it needed to evaluate Plaintiffs' damage claim.  Atlantic began by requesting *every invoice* associated with each of the tens of thousands of individual extra expenses listed in the Expense Bible.  As Plaintiffs explained in a **January 23, 2017** letter (and several times before), Atlantic's request for every single invoice was unreasonable because it was wholly unnecessary for purposes of the damages analysis and would take months and unacceptable business interruption in order to comply.  Shalamitski Decl., Ex. 28.  However, in the same letter, Plaintiffs told Atlantic that if it truly required all backup invoices, "we believe that the onus is on Atlantic to pay for all of the expenses associated with such a production" and asked Atlantic to "please confirm that Atlantic will pay the costs associated therewith and we will send you an anticipated budget." *Id.*

Atlantic never responded to this offer, because Atlantic's request for *every invoice* was never based on any genuine need for information; it was simply a lever designed to place as much burden as possible on Plaintiffs, which Atlantic could then use to justify a series of additional requests for "other options to have sufficient backup."  Crapster Decl., Ex. 5 (ECF 39-1.)  On January 25, 2017, ignoring Plaintiffs' proposal, Atlantic requested four categories of information it said it needed to evaluate Plaintiffs' claim:

> 1. Documentation showing the tax credits provided by the Croatia and New Mexico taxing authorities and the accounting reports or

1    documents submitted to the taxing authorities to substantiate the

2    credits;

3    2. Documents showing a further breakdown of the extra expenses (as

4    reflected in the Expense Bible) by categories or synopsis, whether in

5    Excel form or some type of a narrative;

6    3. A list of abbreviations used in the Expense Bible; and

7    4. Documents provided to Plaintiffs' damages expert and relied upon by

8    the expert to support Plaintiffs' damages calculation.

9        Plaintiffs diligently complied with each of Atlantic's requests.  Plaintiffs

10   produced the documents in Categories 1-3 on (and in some cases, before) February

11   25, 2017.  With respect to Category 4, as is common in any civil case, Plaintiffs

12   worked with their expert to identify the documents he needed to prepare his report

13   on the extra expense claim (Category 4).  To the extent those documents had not

14   already been produced (many had), Plaintiffs produced them to Atlantic on a

15   rolling basis as they were identified, prior to the March 17, 2017 delivery of

16   Plaintiffs' expert reports.  Shalamitski Decl., ¶ 12.

17       On February 23, 2017, Atlantic used its disingenuous "all invoices" request

18   to set the stage for another ask: documents that show the variance between

19   budgeted and actual costs of production.  The next day, February 24, 2017,

20   Plaintiffs informed Atlantic that, while Atlantic had not clearly articulated what

21   additional information it was looking for, Plaintiffs had already produced

22   numerous budgets and cost reports related to the *Dig* production (on February 17,

23   2017).  Plaintiffs further noted that when Atlantic finishes its review of Plaintiffs'

24   production, it may conclude that it has the documents it needs in this regard.

25   Hayes Decl., Ex. 2.  But Atlantic persisted, apparently without reviewing

26   Plaintiffs' document production, asking for these documents again on March 10,

27   2017, and prefacing its request with the assertion that "Plaintiffs have lodged

28   objections to producing all invoices that are the backup for the damages claimed in

Mitchell
Silberberg &
Knupp LLP

8748324.7

20

**PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR
ORDER CONTINUING TRIAL DATE AND ALL DEADLINES**

1  the case." Crapster Decl., Ex. 5 (ECF 39-1.)  Therefore, on March 14, 2017,

2  Plaintiffs confirmed to Atlantic that they did indeed produce documents that show

3  the variance between budgeted and actual costs, with explanation, on February 17,

4  2017.  Hayes Decl., Ex. 4.  (Plaintiffs ultimately provided Atlantic with the Bates

5  number of an exemplary document.)

6        Notwithstanding Plaintiffs voluminous productions, Atlantic would not drop

7  the backup documentation issue.  Therefore, and even though Atlantic never

8  responded to Plaintiffs' offer to search for invoice documents at Atlantic's

9  expense, Plaintiffs continued to try to find alternative reasonable ways to

10  accommodate as much of Atlantic's request for backup documentation as possible.

11  Accordingly, on March 28, 2017, Plaintiffs told Atlantic that it would produce a

12  subset of backup documentation regarding the New Mexico and Croatia portions of

13  the *Dig* production.[7] *Id.*, Ex. 15 (03/28 D. Hayes Letter).  Plaintiffs produced the

14  New Mexico portions on March 29, 2017 (the "nearly 13,000" pages Atlantic

15  decries).  Shalamitski ¶ 18.  Plaintiffs are still waiting to receive the Croatia

16  portion from a Croatian production company that Plaintiffs do not control, which is

17  why Plaintiffs could not produce them sooner.[8]  *Id.*

18/19        **(ii)   Atlantic Has Failed To Explain Why Backup Documentation Is Necessary For Its Expert Report**

20        In its *ex parte* application, Atlantic argues that it "is not humanly possible …

21  to review 13,000 pages of new documents" without saying what those documents

22

23  [7] As Plaintiffs' March 28, 2017 letter explains, this is not each and every invoice that was submitted in connection with the New Mexico and Croatia portions of the Dig production, and the information does not relate solely to extra expenses. Hayes Decl., Ex.15.

25  [8] In the January 23, 2017 letter discussed above, Plaintiffs specifically alerted Atlantic to the fact that collecting every invoice would be time-consuming and burdensome in part because most of the invoices associated with Croatia expenses "are located in Croatia."  As already noted, Plaintiffs asked Atlantic if it would pay to have all of the backup documentation collected, but Atlantic did not respond. Shalamitski Decl.*,* Ex. 28.

28

Mitchell
Silberberg &
Knupp LLP
8748324.7

**PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR ORDER CONTINUING TRIAL DATE AND ALL DEADLINES**

consist of and without revealing any of the foregoing history or background. *Ex Parte* App., p. 16. Atlantic avoided explaining what these documents actually are because Atlantic would have then had to explain ***why*** its expert needs to review them.

In fact, Atlantic's expert does not need to review them. The issue at hand is not whether the expenses were incurred; it is whether the expenses were ***extra*** expenses. Thus, Plaintiffs' expert did not need to review *every invoice* to prepare his report, because the extra expenses incurred in moving the production of *Dig* from Israel to New Mexico and Croatia are substantiated by the extensive and substantial accounting data that Plaintiffs had already produced. This accounting data, together with the identification of Plaintiffs' witnesses who can answer deposition questions about, *inter alia*, the standard and systematic way Plaintiffs' production expenses are approved, paid, and recorded, amply supports the claim. In any event, Atlantic knew that Plaintiffs planned to designate an expert witness on damages based on Plaintiffs' January 17, 2017 expert witness designation, but Atlantic chose not to designate a damages expert of their own to, for example, challenge whether the expenses claimed were in fact paid. Atlantic is now limited to rebutting Plaintiffs' report.

Of course, Atlantic does not truly contend that the substantiation of individual extra expenses using invoices or other backup documentation is necessary. If it did, Atlantic would have paid to have the backup documentation collected from archives in response to Plaintiffs' **January 23, 2017** offer.[9] Shalamitski Decl., Ex. 28 (1/23 C. Coyoca Ltr)

---

[9] It is also important to note that Atlantic could have, but did not, propose a more targeted approach that is more narrowly tailored to address its perceived need for more time to prepare an expert rebuttal report on damages issues as opposed to wholesale continuance of trial, which is unwarranted.

**PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR
ORDER CONTINUING TRIAL DATE AND ALL DEADLINES**

e.     **Atlantic's Second Set of Requests for Production**

Atlantic argues it has not yet received documents in response to its Second Set of Requests for Production ("RFP, Set 2"), and that purportedly warrants trial continuance because Atlantic "needs to see these documents in order to prepare a motion for summary judgment that is as thorough as possible and to take thorough depositions." *Ex Parte* App., p. 16.  There are three problems with this argument.

First, any purported timing issue was created by Atlantic's own delay in seeking discovery.  Atlantic did not bother to serve RFP, Set 2 until February 15, 2017, and Atlantic's requests in RFP, Set 2 sought documents that Atlantic could have requested many months ago when it served its first set of requests on November 17, 2016.  Shalamitski Decl., ¶ 5.  There is no explanation for Atlantic's delay in serving its RFP, Set 2, and any purported delay in Atlantic receiving documents is thus of its own making.

Second, as Plaintiffs advised Atlantic, they are in the process of preparing the documents they agreed to produce in response to Atlantic's RFP, Set 2.  *See Ex Parte* App., p. 16.  Plaintiffs anticipate this production will be minimal, and will be completed in the next two weeks.  Hayes Decl., Ex. 17.

Third, Atlantic does not identify even *one* example of a document it requested in its RFP, Set 2, that Atlantic *might* need for its summary judgment motion.

f.     **Dispute over Claims of Privilege**

Atlantic argues that its disagreement with Plaintiffs' claims of attorney-client privilege warrants trial continuance.  *Ex Parte* App., pp. 16-17.  This issue is addressed above in section III.B.2.a(ii), but to the extent Atlantic contends that communications not directly involving attorneys or where attorneys are "merely" copied are not privileged, Atlantic's position is simply wrong.  It is contrary to express law on the issue.  *See, e.g., Chevron U.S.A., Inc. v. United States*, 83 Fed. Cl. 195, 205 (2008) ("since [the email] was copied to Mary Egger [an attorney], it

1    could be construed to request legal advice and is subject to the attorney-client

2    privilege….").[10]

3          Also, any delay in resolving this issue is of Atlantic's own making.  As

4    Atlantic concedes, the parties have been conferring regarding this issue "over the

5    course of approximately the last 30 days."  *Ex Parte* App., p. 16.  The challenged

6    entries are listed in the log Atlantic received on January 26, 2017.  Shalamitski

7    Decl., ¶ 15.  Atlantic does not explain why a period of more than two months was

8    not sufficient for Atlantic to bring this legal issue to the Magistrate Judge for

9    resolution.

### g.    Dispute over Work Product Claim

10         Related to the above issue as to disagreements regarding claims of privilege,

11   Atlantic contends that its dispute with Plaintiffs about whether certain

12   communications are protected from disclosure by the work product doctrine

13   warrants a trial continuance.  *Ex Parte* App., pp. 16-17.  Again, Atlantic is wrong.

14   The dispute about assertion of the work product doctrine to protect certain

15   communications relates to timing – i.e., when Plaintiffs first reasonably anticipated

16   litigation.  Plaintiffs contend that they first reasonably anticipated litigation on July

17   17, 2014 when they first became aware that Atlantic disputed coverage for the *Dig*

18   claim.  Atlantic's position is that litigation could not reasonably have been

19   anticipated until mid-September 2014, which is when Plaintiffs' counsel responded

20   to Atlantic's July 28, 2014 denial of coverage letter, challenging Atlantic's

21   position.  *See* Hayes Decl., Ex. 22.

22         Atlantic's position is baseless on its face, and Plaintiffs have repeatedly

23   asked Atlantic for ***any*** legal authority that supported its position that work product

24   protection did not attach until nearly six weeks after Plaintiffs' first became aware

25   that Atlantic was going to deny the claim.  Atlantic, however, flatly refused to

26

27   _____

28   [10] Plaintiffs have explained in detail their position to Atlantic multiple times, in
     writing and orally, with reference to case authority.  Hayes Decl, Ex. 22.

Mitchell
Silberberg &
Knupp LLP

8748324.7

24

PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR
ORDER CONTINUING TRIAL DATE AND ALL DEADLINES

1   provide even a single case supporting its position.  Hayes Decl., Ex. 22, p. 3.

2   Moreover, Atlantic has known about Plaintiffs' position for over one month.  But,

3   as with all other discovery issues raised in Atlantic's *Ex Parte* Application,

4   Atlantic has delayed in having the issues resolved.  In short, a trial continuance is

5   not warranted because Atlantic's position is contrary to the law, and because of

6   Atlantic's lack of diligence in seeking resolution at an earlier point.

7   **IV.    CONCLUSION**

8          For the reasons set forth above, Plaintiffs respectfully request that the Court

9   deny Atlantic's *Ex Parte* Application.

10

11  Respectfully submitted,

12

13  DATED:  April 3, 2017              LUCIA E. COYOCA
                                       VALENTINE A. SHALAMITSKI
14                                     MITCHELL SILBERBERG & KNUPP LLP

15

16                              By:  */s/ Lucia E. Coyoca*
                                     Lucia E. Coyoca
17                                   Attorneys for Plaintiffs
                                     Universal Cable Productions LLC and
18                                   Northern Entertainment
19                                   Productions LLC

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

8748324.7

**PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION FOR
ORDER CONTINUING TRIAL DATE AND ALL DEADLINES**