LUCIA E. COYOCA (SBN 128314)
  lec@msk.com
VALENTINE A. SHALAMITSKI (SBN 236061)
  vas@msk.com
DANIEL M. HAYES (SBN 240250)
  dmh@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Attorneys for Plaintiffs
Universal Cable Productions LLC and
Northern Entertainment Productions LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,<br><br>      Plaintiffs,<br><br>      v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,<br><br>      Defendant. | CASE NO. 2:16-cv-4435-PA-MRW<br><br>**APPENDIX OF EXHIBITS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION FOR ORDER CONTINUING TRIAL DATE AND ALL DEADLINES FOR 60 DAYS**<br><br>File Date:      June 20, 2016<br>Discovery Cutoff:  May 12, 2017<br>Pre-Trial Conf.:  June 16, 2017<br>Trial Date :     July 25, 2017 |

# PART 1

Mitchell
Silberberg &
Knupp LLP

8760186.1

# EXHIBIT 1



## MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Valentine A. Shalamitski
(310) 312-3736 Phone
(310) 231-8489 Fax
vas@msk.com

November 29, 2016

**VIA E-MAIL**

Michael Keeley, Esq.
John R. Riddle, Esq.
Carla C. Crapster, Esq.
Strasburger & Price, LLP
901 Main Street, Suite 6000
Dallas, TX 75202

Marc J. Shrake, Esq
Anderson, McPharlin & Conners LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, CA 90017-3623

**Re:**   *Universal Cable Productions LLC, et al. v. Atlantic Specialty Insurance Company*
          **CD Cal. Case No. CV16-4435 PA (MRWx)**

Dear Counsel:

This letter shall serve as our good faith attempt to informally resolve issues presented by the November 11, 2016 objections and responses of defendant Atlantic Specialty Insurance Company ("Atlantic") to the First Set of Interrogatories and First Set of Requests for Production of Documents and Things propounded by plaintiffs Universal Cable Productions LLC and Northern Entertainment Productions LLC (collectively, "Plaintiffs") on October 5, 2016.

As discussed below, Atlantic asserted multiple unfounded objections and limited its responses in ways which are not supported by the Federal Rules of Civil Procedure ("FRCP"). Moreover, as to those responses where Atlantic has indicated it will produce documents, given the vagaries (and inconsistencies) of Atlantic's responses, we cannot tell whether Atlantic is agreeing to produce *all* responsive, non-privileged documents in its possession or control. Atlantic's refusal to provide straightforward responses to discovery requests aimed at the core issues in this action is particularly troubling in light of the tight deadlines the Court set in this case—*e.g.*, the March 13, 2017 discovery cut-off and the May 23, 2017 trial. Further, the day before Atlantic's responses were due on November 4, 2016, it requested, and Plaintiffs granted, a one-week extension of time for Atlantic to respond. Contrary to Plaintiffs' expectation that Atlantic would use this additional time to provide complete and straightforward responses and to prepare responsive documents for production, Atlantic instead used the time to further delay the progress of the case by preparing meritless objections and deficient responses.



Michael Keeley, Esq.
November 29, 2016
Page 2

That said, we are looking forward to speaking with you on Friday, December 2, at 11 a.m. Pacific, to attempt to eliminate the necessity for motion practice or at least narrow the scope of the disputes if possible.

## 1.   INTERROGATORIES

**General objections**:  We would prefer not to spend time arguing over Atlantic's boilerplate "Preliminary Statement" and "General Objections" which are insufficient to withhold discovery. *See, e.g., M2 Software, Inc. v. M2 Communs., L.L.C.*, 217 F.R.D. 499, 501 (C.D. Cal. 2003) ("General Objections are not sufficient to raise any substantial, meaningful or enforceable objections to any particular discovery request.").  Please confirm Atlantic is not withholding any information based solely on its "Preliminary Statement" and "General Objections."

**Interrogatory No. 1**:  This interrogatory seeks plainly relevant information:  "IDENTIFY each individual employed by, acting as a REPRESENTATIVE of, or in any way associated with ATLANTIC, that was responsible for the decision to deny the *DIG* CLAIM."  Atlantic did not object to the interrogatory.  However, it did unilaterally rephrase the interrogatory, and improperly limited its response to persons "***employed*** by Atlantic [who] were ***involved*** in Atlantic's decision" (emphasis added).  This is unacceptable and does not provide fully responsive information.  If there are individuals who were acting as Atlantic's REPRESENTATIVE that were "responsible for the decision to deny the *DIG* CLAIM," Atlantic must identify those individuals regardless of whether they are or were "employed by Atlantic." Further, Atlantic must provide the information required by the defined term "IDENTIFY," which information is lacking from Atlantic's response.

**Interrogatory No. 2**:  This interrogatory seeks clearly relevant information:  "IDENTIFY each individual employed by, acting as a REPRESENTATIVE of, or in any way associated with ATLANTIC, that had any involvement in evaluating and considering the *DIG* CLAIM." Atlantic did not object to the interrogatory.  However, once again Atlantic improperly rephrased the interrogatory and limited its response to persons "***employed*** by Atlantic [who] had involvement in the evaluation and consideration of the *DIG* CLAIM ***prior to the denial*** of the *DIG* CLAIM" (emphasis added).  Again, this is unacceptable and not responsive to what the interrogatory seeks.  Please identify all individuals who were acting as a REPRESENTATIVE of Atlantic that were involved in evaluating and considering the *DIG* CLAIM, not limited to those individuals who are or were "employed by Atlantic," and not limited by an unspecified time period "prior to the denial."  (See further discussion as to this time period issue re Interrogatory No. 4.)  Finally, please provide the information required by the defined term "IDENTIFY," which information is lacking from Atlantic's response.

**Interrogatory No. 3**:  This interrogatory seeks information central to this action:  "State all facts which ATLANTIC considered in denying the *DIG* CLAIM."  Atlantic did not object to this interrogatory but did provide a woefully deficient response:

> "Atlantic considered all of the facts that it received from the Plaintiffs, as
> well as the facts revealed by its own investigation of the *DIG* CLAIM and
> independent research.  See also Atlantic's denial letter dated July 28,



Michael Keeley, Esq.
November 29, 2016
Page 3

2014, in which Atlantic sets forth facts that it considered in denying the *DIG* CLAIM."

Atlantic's response is evasive and incomplete and provides no specific facts whatsoever. To state the obvious, in responding to interrogatories, Atlantic must respond "fully" and "must furnish the information available to the party." FRCP 33(b)(1)(B) & (3). What are the facts that were revealed to Atlantic in its investigation of the claim? What are the facts that were revealed to Atlantic based on its independent research? What are the facts that it received from Plaintiffs that it considered in denying the claim? The information which this interrogatory seeks is known only to Atlantic, and Atlantic has no legitimate justification to withhold it. To the extent Atlantic seeks to rely at trial on any facts not specifically identified in these interrogatory responses or otherwise properly disclosed in discovery, Plaintiffs will seek to exclude such evidence at trial.

**Interrogatory No. 4**: This interrogatory requests that Atlantic: "IDENTIFY all DOCUMENTS that ATLANTIC reviewed in evaluating and considering the *DIG* CLAIM." In response, Atlantic (a) improperly limited the scope of its response to an unidentified time period prior to the denial of the *DIG* Claim based on its relevance and privilege objections, and (b) otherwise provided an evasive, incomplete, and deficient response which must be supplemented.

First, assuming Atlantic objects to providing information after "Atlantic's denial letter dated July 28, 2014," this objection is baseless. Plaintiffs are entitled to, *inter alia*, discovery "relevant to any party's claim or defense" (FRCP 26(b)(1)). Plaintiffs' First Amended Complaint ("Complaint") specifically alleged violations by Atlantic which took place after July 28, 2014. *See* Complaint, ¶ 34 ("Following Atlantic's July 28, 2014 denial of the *DIG* Claim, NBCUniversal requested on numerous occasions that Atlantic reconsider its position. Atlantic, however, repeatedly refused to change its position."), ¶ 52(G). Obviously, for example, if Atlantic failed to review any documents after Plaintiffs' reconsideration requests, that would be relevant to Plaintiffs' claim that Atlantic breached the implied covenant of good faith and fair dealing. Thus, Atlantic's unilateral limitation to an unidentified time period *prior* to the denial of the *DIG* Claim makes no sense.

Second, Atlantic's privilege objection, standing alone, is deficient and insufficient to withhold discovery. To begin with, Atlantic must, but thus far has failed to, provide a privilege log for all responsive documents which Atlantic asserts are privileged and/or protected from discovery. Also, it is axiomatic that a document which is not privileged in the first instance (*e.g.*, a news report) does not become privileged merely because it is attached to otherwise privileged attorney-client correspondence. Atlantic accordingly cannot withhold such non-privileged documents. Please confirm that it has not done so.

Moreover, to the extent Atlantic intends to assert or rely on advice or investigation of counsel as defense in this case, Plaintiffs are entitled to the information or documents regarding said advice or investigation. *See Wellpoint Health Networks v. Superior Court*, 59 Cal. App. 4th 110, 128 (1997) ("injection into the lawsuit of an issue concerning the adequacy of the investigation where the investigation was undertaken by an attorney or law firm must result in waiver of the attorney-client privilege and work product doctrine"); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992) (relying on advice of counsel in defense waives privilege); *Holmgren v.*



Michael Keeley, Esq.
November 29, 2016
Page 4

*State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (in a bad faith action, the "strategy, mental impressions and opinion of [the insurer's] agents concerning the handling of the claim are directly at issue") (alterations in original).

Here, Atlantic's discovery responses—albeit woefully deficient for the reasons discussed herein—indicate the possibility of a defense based on its lawyers' investigation of the claim and their advice. *See, e.g.*, Atlantic's Response to Interrogatory Nos. 3 & 4 (Atlantic considered and/or reviewed documents and facts "it received from the Plaintiffs" and "revealed by its own investigation of the *DIG* CLAIM and independent research"), No. 5 ("Atlantic also conducted independent research relevant to the *DIG* CLAIM"). Indeed, Atlantic's denial of coverage letter dated July 28, 2014 specifically asserted that its "decision is based on … consultation with counsel." However, Atlantic's deficient discovery responses prejudicially prevent Plaintiffs from ascertaining the scope and nature of Atlantic's defense.

<u>Third</u>, Atlantic's response is evasive and incomplete for the reasons stated above in connection with Interrogatory No. 3. To reiterate, if Atlantic reviewed any documents which are not listed in "Atlantic's denial letter dated July 28, 2014," Atlantic must identify those documents.

<u>Fourth</u>, Atlantic's response states: "In addition, the non-privileged documents that Atlantic reviewed in considering and denying the *DIG* CLAIM are being produced in response to Plaintiffs' request for production of documents." To the extent Atlantic intends to use the FRCP 33(d) procedure by identifying documents in lieu of responding to the interrogatory, this response is inadequate because Atlantic has not yet produced all responsive documents or a privilege log. Had Atlantic produced all responsive documents and the privilege log, the response would still not be adequate. Rather, to comply with FRCP 33(d), Atlantic must specifically identify the documents, which it failed to do. *See* FRCP 33(d)(1).

For the foregoing reasons, Atlantic must supplement its response.

**Interrogatory No. 5**: This interrogatory request that Atlantic: "Identify all steps taken by ATLANTIC to investigate the *DIG* CLAIM." For the reasons discussed above in connection with Interrogatory No. 4, Atlantic's response is also deficient as to Interrogatory No. 5 and must be supplemented.

**Interrogatory Nos. 6-14**: These are straightforward contention interrogatories, seeking the information on which Atlantic intends to rely to support the affirmative defenses Atlantic asserted in its Answer to the Complaint (Nos. 6-13), and the information on which Atlantic relied in denying coverage (No. 14). These interrogatories seek factual information fundamentally relevant to the issues in dispute in the case. In response, Atlantic interposed no specific objections, and instead provided woefully deficient responses. Specifically, Atlantic responded to all nine interrogatories with circular statements which are evasive and provide no facts. For example, Interrogatory No. 6 asked:

> "State all facts which support ATLANTIC'S position that Exclusion of the
> General Conditions section of the POLICY, which excludes coverage for



Michael Keeley, Esq.
November 29, 2016
Page 5

> loss caused directly or indirectly by "war, including undeclared or civil
> war" applies to the *DIG* CLAIM."

Atlantic's response, in full, stated:

> "The events that took place in Israel and Palestine in and around July
> 2014, when *DIG* was being filmed in Israel constitute war, including
> undeclared or civil war, and the Plaintiffs' claimed loss was caused
> directly or indirectly by such war."

This response provides no specific factual information whatsoever. Atlantic's responses are not made in good faith. Plaintiffs are entitled to know the basis for Atlantic's contention that the events which took place in Israel and Palestine in and around July 2014 constituted a war, and that the loss purportedly was caused by a war. Atlantic must accordingly supplement its responses to each Interrogatory Nos. 6-14 "separately and fully." FRCP 33(b)(1)(B). *See also Cable & Comput. Tech. v. Lockheed Saunders*, 175 F.R.D. 646, 650-52 (C.D. Cal. 1997) (granting motion to compel "factual" contention interrogatories "to state all facts" upon which various pleading allegations are based).

**Interrogatory Nos. 15 & 16**: These interrogatories seek limited information regarding Atlantic's consideration of prior claims involving the war exclusion. Plaintiffs carefully tailored these interrogatories by specifying that Atlantic need ***not*** "identify[] the insured or the specific facts of the claims." Nevertheless, Atlantic asserted boilerplate relevance objections. Atlantic's refusal to provide any responsive information is unsupportable. The requested information is relevant to at least three issues which overlap and permeate the entire case.

First, to the extent Atlantic's prior denials and/or payout on claims in connection with the war exclusion (*i.e.*, the information sought by Interrogatory Nos. 15 & 16) occurred under circumstances involving a terrorist group (*see* Complaint, ¶ 1), that information is relevant to Atlantic's interpretation of the policy and the war exclusion. *See Owens-Brockway Glass Container v. Seaboard Sur. Co.*, 1992 U.S. Dist. LEXIS 10337, at *8-9 (E.D. Cal. May 27, 1992) ("similar insurance claims asserted by other insureds against defendants may be relevant to the interpretation of the insurance policy language of this case").

Second, regardless of whether the prior claims implicating the war exclusion involved a terrorist group, the requested information is relevant to the sufficiency and adequacy of Atlantic's evaluation and consideration of the *DIG* Claim, and Plaintiffs' claim that Atlantic breached the implied covenant of good faith and fair dealing. *See* Complaint, ¶ 52 (listing Atlantic's "unreasonable, arbitrary, and/or bad faith conduct"). For example, if Atlantic has not "previously denied a claim based in whole or in part on the WAR EXCLUSION" (Interrogatory No. 15), but decided to deny the *DIG* Claim in a manner and time-frame not commensurate with the consideration of an otherwise novel claim or exclusion, that would be relevant to Plaintiffs' bad faith claim, as alleged in paragraph 52 of the Complaint and otherwise. Conversely, the information would also be relevant if Atlantic had many such prior claims, in which event its familiarity with the war exclusion would be relevant to Atlantic's bad faith conduct in, *inter alia*, misrepresenting plainly inapplicable policy terms—*i.e.*, the endorsement titled "Coverage for



Michael Keeley, Esq.
November 29, 2016
Page 6

Certified Acts of Terrorism; Cap on Losses"—in connection with the war exclusion, as also alleged in paragraph 52 of the Complaint. *See also* Complaint, ¶¶ 35-38.

<u>Third</u>, the requested information is relevant to Atlantic's initial determination that the *DIG* Claim was covered under the policy, which determination Atlantic later retracted based on the war exclusion. *See* Complaint, ¶ 3, 30-31, 39-41. As yet another example, information about any "claim as to which ATLANTIC considered the potential applicability of the WAR EXCLUSION. . .but ultimately paid out on the claim. . ." (Interrogatory No. 16) is relevant to Plaintiffs' bad faith claim. Here, Atlantic initially determined that the *DIG* claim was covered, but later reneged on that determination. To the extent Atlantic previously considered the potential applicability of the war exclusion, and paid out on any claims, such evidence would bear not just on the interpretation of the exclusion, but also the egregiousness of Atlantic's conduct in this particular situation.

**Interrogatory No. 17**: This interrogatory asks: "State all facts which ATLANTIC considered in deciding not to renew the POLICY." In response, Atlantic objected on the ground of relevance, and refused to provide any information. Atlantic's position is without merit. Atlantic's non-renewal of the policy is relevant to the issues alleged in the Complaint. Plaintiffs specifically alleged Atlantic made the decision not to renew the Policy once it became clear Atlantic would have to pay out on the Policy in an amount that would exceed premiums, which meant that it was no longer in Atlantic's financial interest to pay *any* amount on the *DIG* claim. *See, e.g.*, Complaint, ¶¶ 5, 39-41. Facts which bear on the reasons why Atlantic decided not to renew the Policy are directly relevant to that claim.

**2.     REQUESTS FOR PRODUCTION OF DOCUMENTS ("REQUESTS")**

        **A.     Production of documents and privilege log**: Lucia Coyoca emailed you on November 15, 2016, because Atlantic had failed to produce any documents or a privilege log on November 11, 2016, when Atlantic responded to Plaintiffs' requests. She also pointed out that Atlantic had not indicated when such production or a privilege log would be forthcoming, and noted that no further extension of time had been sought. Carla Crapster responded on November 17, 2016 indicating as follows:

> "Regarding the production of documents, we are preparing to send you responsive documents tomorrow. We will prepare a privilege log and send it to you as soon as possible. We are still waiting to receive a number of documents from our client. We will produce those as soon as we receive them (which we have been told will be in the next couple of days) and have had a chance to review them. We do not yet know how voluminous the document production we receive from our client will be, so it is difficult to predict how long it will take to review all the documents. We will provide you with a time estimate as soon as we have the documents."

On Friday, November 18, we received a partial production from you. Tellingly, in the cover letter accompanying the production you indicated that "Today, we received a voluminous set of documents from our client…. Our IT department is still inputting those documents into a



Michael Keeley, Esq.
November 29, 2016
Page 7

database, so we have not had a chance to begin reviewing them yet, and do not yet have a time frame for how long that process will take." Again, you did not tell us when your production would be complete nor did you commit to a date certain by which Atlantic's privilege log would be produced. Moreover, you did not provide any explanation as to why the documents and privilege log were not produced at the time the responses were served.

Despite Ms. Coyoca's follow up emails to you on November 22 and 28, Atlantic's sole response to date is that it is "hopeful" that "an estimated completion date" is not "more than two weeks" away. However, again, you did not address when a privilege log would be produced or provide any explanation as to why all responsive documents were not timely produced on November 11. Given the tight time deadlines in this case, Atlantic's conduct is simply unacceptable. Plaintiffs are entitled to know when Atlantic's full production will be complete and when its privilege log will be produced. Given the continued vagaries of Atlantic's response, we anticipate filing a motion to compel the full production and a privilege log, unless dates are immediately provided so that Plaintiffs can assess the full extent of the prejudice that has been caused by Atlantic's delayed production.

     **B.**    **General objections**: As with the interrogatories, please confirm that Atlantic is not withholding any documents based solely on its "Preliminary Statement" and "General Objections."

     **C.**    **Objections based on assertion of privilege**: Atlantic objected on the basis of the attorney-client privilege and/or work product doctrine in response to all Requests, except for Nos. 19, 20, 22, 23, 25-30. As detailed above in connection with Interrogatory No. 4, these objections, standing alone, are deficient and insufficient to preclude all discovery. Further, Atlantic must, but thus far has failed to, provide a privilege log for all responsive documents which Atlantic asserts are privileged and/or protected from discovery (*i.e.*, in response to Requests Nos. 1-18, 21, 24, 31, 32).

     **D.**    **"Burdensome" objections**: Atlantic objected to Request Nos. 20, 22, and 23 on the ground of burden. Plaintiffs carefully tailored their Requests, and do not believe Atlantic's burden objections are valid. Furthermore, Atlantic failed to provide any support for its objections, other than generic statements: "It would be a heavy burden" (No. 20), "would be burdensome and require an extensive search" (No. 22), "extremely burdensome," "manually locate and review" (No. 23). Plaintiffs are amenable to discussing any claimed burden to minimize it, as practicable and possible, but Atlantic must first provide adequate information as to any claimed burden. *See A. Farber & Ptnrs., Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("general or boilerplate objections such as 'overly burdensome and harassing' are improper – especially when a party fails to submit any evidentiary declarations supporting such objections"). If Atlantic cannot adequately support its burden objections, it must produce the responsive documents.

     **E.**    **Objections based on the definition of "WAR EXCLUSION:"**  In response to Request Nos. 1, 6, 7, 9, 11, and 13, Atlantic objected to the definition of "War Exclusion" on the grounds that (a) the definition includes "similar exclusion in other policies" and therefore seeks



Michael Keeley, Esq.
November 29, 2016
Page 8

irrelevant information, and (b) it is not clear to Atlantic what Plaintiffs mean by "documents that 'RELATE' to the WAR EXCLUSION." Neither ground has merit.

Plaintiffs sensibly defined "WAR EXCLUSION" to mean "any of the exclusions set forth in the General Conditions, Section III(1)-(4) of the POLICY, or any similar exclusion language in other versions of insurance policies issued and/or underwritten by YOU or ONEBEACON." Documents with "similar exclusion language" are relevant to, *inter alia*, Atlantic's interpretation of the policy at issue and Atlantic's denial of the *DIG* Claim. *See, e.g., Owens-Brockway Glass Container*, 1992 U.S. Dist. LEXIS 10337, at *6 ("the drafting history of an insurance policy as evidence of the intent of the drafter" is discoverable). Further, as one example only, Atlantic may have previously paid out on claims under the policies which used "similar exclusion language." If it did so, the information as to that claim would be relevant to the issue of the propriety of Atlantic's denial of the *DIG* Claim, as noted above in connection with Interrogatory Nos. 15 & 16. *And see id.*, at *8-9 ("similar insurance claims asserted by other insureds against defendants" are discoverable).

Atlantic's claim that it does not understand what Plaintiffs mean by "documents that 'RELATE' to the WAR EXCLUSION" is specious and belied by Atlantic's own responses. For example, while Atlantic objected to the use of the term "RELATE" in connection with subpart d) of Request No. 1, Atlantic objected to no other subpart using the same term. There is nothing "unclear" about the defined term "RELATE." Rather, Atlantic's objection that it "does not understand" the term is selective and improper. As another example, Atlantic had no problems understanding and responding to Request Nos. 8 and 12, which use the same terms and phrasing to which Atlantic selectively objected in response to Request Nos. 1, 6, 7, 9, 11, and 13.

## F.     Additional improper objections and refusal to produce

**Request Nos. 10 & 13**: Atlantic objected to these Requests on the ground that "information subsequent to the denial of the *DIG* CLAIM" is irrelevant. As detailed above in connection with Interrogatory No. 4, Atlantic is wrong. To provide another obvious example, documents created on or after the date of denial may refer to or describe Atlantic's conduct prior to the denial, and those documents are relevant and responsive to Request No. 10. And, whether Atlantic reviewed documents after its denial of the *DIG* Claim (*i.e.*, documents sought in Request No. 13) in response to repeated requests for reconsideration or otherwise, is relevant to the bad faith claim.

Further, in response to Request No. 10, Atlantic improperly rephrased it as "seeking documents relating to Atlantic's evaluation and consideration of the *DIG* CLAIM leading up to the denial of the *DIG* CLAIM." That is not what the Request asks. Atlantic's repeated unilateral rephrasing of discovery requests is improper. Atlantic must supplement its response and produce all responsive documents.

**Request No. 14**: This Request seeks: "All of YOUR files, including file jackets and labels, and all other DOCUMENTS that RELATE to PLAINTIFFS' claim that YOU breached YOUR coverage obligations in connection with the POLICY and/or the *DIG* CLAIM." In response, Atlantic interposed an 18 line run-on objection, including objections as to relevance and



Michael Keeley, Esq.
November 29, 2016
Page 9

privilege, but then stated: "However, see the documents that Atlantic is producing in response to other Requests."

Based on this response, it is impossible to tell what Atlantic is objecting to, what Atlantic is withholding, and what has or will be produced in response to "other Requests" which may also be responsive to Request No. 14. Accordingly, please produce *all* responsive documents and the privilege log, identify what documents are responsive to Request No. 14 in the already produced or to be produced documents, and if Atlantic is withholding additional responsive documents in response to Request No. 14, identify the grounds for its withholding of the documents. Without the privilege log and more specification as to what Atlantic is producing or withholding, Plaintiffs cannot assess whether Atlantic has fully complied with this request.

**Request Nos. 15, 16, 18**: These Requests seek Atlantic's internal communications (No. 15), communications with OneBeacon (No. 16), and any person other than Plaintiffs, NBCUniversal, and AON (No. 18) "that RELATE to PLAINTIFFS' claim that YOU breached YOUR coverage obligations in connection with the POLICY and/or the *DIG* CLAIM." In response, Atlantic objected, asserting *inter alia*, privilege, but did not state that it will produce all responsive non-privileged documents (as, for example, Atlantic stated in response to Request No. 17 seeking the same type of communications with Plaintiffs, NBCUniversal, or AON). Is Atlantic withholding all responsive documents on the basis of privilege, or are there certain responsive non-privileged documents that Atlantic will produce? All responsive non-privileged documents should be produced, and Atlantic's responses supplemented. And, once again, to the extent Atlantic is withholding documents based on privilege or some other ground, Plaintiffs need the privilege log to assess the privilege claim.

**Request No. 19**: This Request seeks: "All DOCUMENTS that RELATE to the amount of any reserve that YOU considered or established in connection with the POLICY and/or the *DIG* CLAIM." In response, Atlantic refused to produce any documents, claiming that none are relevant. Atlantic is wrong. The amount of reserve is relevant to at least two issues in this action.

First, it is relevant to Atlantic's initial determination—later retracted—that the *DIG* claim is covered under the policy as Plaintiffs alleged in the Complaint, ¶¶ 3, 30-31, 39-41. The amount of reserve, or its absence, before or after Atlantic's initial determination is accordingly relevant to Atlantic's subsequent reversal of its position and denial of coverage.

Second, the amount of reserve is relevant to Atlantic's bad faith denial of coverage, and its ulterior motives for the denial, as Plaintiffs also specifically alleged in the Complaint, ¶¶ 5, 39-41. *See, e.g., Lipton v. Superior Court*, 48 Cal. App. 4th 1599, 1614 (1996) (in a bad faith action against an insurer, reserve information can have "relevance to the question of whether … the insurer had conducted a proper investigation or given reasonable consideration to all of the factors involved in a specific case" and "on any number of issues which commonly are presented in bad faith actions"). Because the requested documents are relevant to the issues squarely alleged in the Complaint, and Atlantic did not object except on relevance grounds, Atlantic must produce all responsive documents.



**Request No. 20**:  This Request seeks:  "All agreements, registrations, filings, correspondence, memoranda, and all other DOCUMENTS that RELATE to ONEBEACON or any other PERSON acting as YOUR agent, representative, administrator, or broker in connection with the POLICY or the *DIG* CLAIM."

This Request was necessitated by Atlantic's ambiguous allegations and denials in connection with OneBeacon's role as Atlantic's agent.  *Compare* Complaint, ¶ 8 ("On information and belief, at all relevant times mentioned herein as pertinent to the wrongful acts alleged herein, OBE and OB were the agents of Atlantic and were acting within the course and scope of such agency."), *with* Answer, ¶ 8 ("Answering paragraph 8 of the Complaint, Atlantic denies the allegations contained therein."); *and compare* Complaint, ¶ 25 *with* Answer, ¶ 25, *and* Complaint, ¶ 29 *with* Answer, ¶ 29.

Thus, contrary to Atlantic's unsupported objection, Request No. 20 seeks relevant documents which must be produced in order to clear up that ambiguity.  However, Plaintiffs are amenable to discussing alternatives to document production, such as a stipulation that OneBeacon was Atlantic's agent, representative, administrator, or broker in connection with the policy and the *DIG* Claim.

**Request No. 21**:  This Request seeks:  "All claims handling manuals, guidelines, policy statements, instructions, and other DOCUMENTS from January 1, 2010 through the present that RELATE to YOUR procedures in assessing, handling, or addressing insured's claims pursuant to commercial insurance products."  In response, Atlantic refused to produce any documents, based on the grounds of (a) unreasonable time frame, (b) relevance because this "particular dispute involves only one particular type of 'insurance product':  a Motion Picture/Television Producers Portfolio," and (c) the Request not being "clear" as to what is meant by "documents that 'RELATE' to Atlantic's procedures in assessing, handling, or addressing insured's claims."  These grounds are insufficient to justify withholding discovery.

First, the "Policy [at issue] was a renewal of policies which NBCUniversal obtained from Atlantic in prior years (and for which NBCUniversal paid millions of dollars in premiums)," starting in 2010 (Complaint, ¶ 17), *DIG* was added as an insured production first to Policy No. MP00163-03 (effective from January 1, 2013, to January 1, 2014) and thereafter to the policy at issue effective from January 1, 2014, and the *DIG* Claim arose in 2014 (*see id.* ¶¶ 15, 22).  Thus, the time frame of 2010, spanning the parties' several years of relationship and the *DIG* Claim, is reasonable.

Second, Atlantic's relevance objection because this "particular dispute involves only one particular type of 'insurance product':  a Motion Picture/Television Producers Portfolio" policy is evasive.  Are there claims handling manuals, guidelines, policy statements, and instructions *specific* to a Motion Picture/Television Producers Portfolio policy?  If yes, Atlantic must produce them.  Conversely, if there are *no* claims handling manuals, guidelines, policy statements, and instructions *specific* to a Motion Picture/Television Producers Portfolio policy, Plaintiffs seek production of whatever manuals, guidelines, policy statements, and instructions apply to claims asserted pursuant to such policies.  There is no doubt these policies and manuals are relevant to Plaintiffs' bad faith claim, either because they may specify a process which makes it difficult for



the insured to secure coverage or alternatively, they may demonstrate that Atlantic did not comply with its own claims handling practices.

<u>Third</u>, Atlantic's objection that it is "not clear" what is meant by "documents that 'RELATE' to Atlantic's procedures in assessing, handling, or addressing insured's claims" is specious. However, to clarify, "other DOCUMENTS" that "RELATE to YOUR procedures in assessing, handling, or addressing insured's claims pursuant to commercial insurance products" means documents similar or equivalent to, though perhaps not named or referred to that exact way, the "handling manuals, guidelines, policy statements, and instructions."

**Request No. 22**: This Request seeks: "DOCUMENTS sufficient to identify any claims of loss from January 1, 2001 to the present under any policy YOU or ONEBEACON issued and/or underwrote in which YOU or ONEBEACON considered, assessed, or addressed the WAR EXCLUSION." In response, Atlantic refused to produce any documents, arguing relevance. Atlantic's objection is not well-taken. As detailed above in connection with Interrogatory Nos. 15 & 16, the requested information is relevant.

**Request No. 23**: This Request seeks: "A copy of each form policy YOU or ONEBEACON issued and/or underwrote from January 1, 2001 to the present with the WAR EXCLUSION, and any changes to the WAR EXCLUSION language." In response, Atlantic refused to produce any documents, arguing overbroad time period and relevance. These objections also fail.

The time period is sensible, is tied to the 9/11/2001 Trade Center terrorist attack, after which Atlantic may have made pertinent changes to the war exclusion language in its "form policies," which are likely kept in some sort of a depository, thus further diminishing the "overbreadth" objection. Further, the requested documents are relevant. As just one example, if at any point in time Atlantic's war exclusion was phrased in a manner which listed or referred to terrorist acts as those excluded by the war exclusion, then Atlantic's subsequent changes to the language, resulting in the policy at issue in this case, would show Atlantic's intent to provide coverage for claims involving terrorist acts, such as the *DIG* Claim. *See also Owens-Brockway Glass Container*, 1992 U.S. Dist. LEXIS 10337, at *6 ("the drafting history of an insurance policy" is discoverable). In fact, shortly after Atlantic received the *DIG* Claim, Atlantic's own claims investigator, Daniel Gutterman, wrote as follows regarding the policy at issue: "Hi Pamela [Johnson]-Please review the policy language for Extra Expense. The wording for Civil Unrest and the exclusions for it are not like other policies where Civil Unrest has its own coverage section." ATL000295. Therefore, Request Nos. 23 seeks relevant documents.

**Request No. 25**: This Request seeks: "Any financial statements, profit and loss statements, balance sheets, financial projections, or similar DOCUMENTS RELATING to YOUR profit/loss under the POLICY and under each of the earlier policies YOU issued to NBCUNIVERSAL (Policy Nos. MP0163-03; MP0163-02; MP00163-01; and Policy No. MP00163-00)." In response, Atlantic objected asserting the documents were "trade secrets or [contained] similar confidential and/or proprietary information" and relevance grounds. These objections are without merit. The Court entered a protective order in this case, dispensing with the first objections. And, the requested information is clearly relevant to Atlantic's bad faith denial of



coverage and its ulterior motives for the denial as specifically alleged in the Complaint, ¶¶ 5, 17, 39-41.

**Request Nos. 26, 27, 28, 29, 30**: These Requests seek documents in connection with Atlantic's "decision not to renew the POLICY." In response to each of these Requests, Atlantic objected, including, among others, a meritless relevance objection. As discussed above in connection with Interrogatory No. 17 and Request No. 25, Atlantic's decision not to renew is relevant to the issues in dispute in this case, and as specifically alleged in the Complaint, *e.g.*, ¶¶ 5, 17, 39-41.

Plaintiffs reserve all rights with respect to relief they may seek in connection with Atlantic's deficient discovery responses.

Very truly yours,

Valentine A. Shalamitski for
MITCHELL SILBERBERG & KNUPP LLP

# EXHIBIT 2

| From: | Hayes, Daniel |
|---|---|
| To: | "Reed, Toni"; Coyoca, Lucia; Shalamitski, Valentine |
| Cc: | Keeley, Michael; Crapster, Carla |
| Subject: | RE: UCP v Atlantic - Additional Discovery Issues |
| Date: | Friday, February 24, 2017 4:38:10 PM |
| Attachments: | image001.gif |

Toni,

This email follows our telephone conference this afternoon. I am encouraged by how we ended the call. But, as we discussed on the call, I feel I must correct the written record.

Yesterday, as we were reaching the end of our discussion of the deficiencies in Atlantic's discovery responses, you announced that you and Carla had to end the call in five minutes. As a result, I wrapped up the discussion of the issues set forth in my January 30 email, and addressed the four additional categories of information that your office requested that we provide to assist Atlantic in its evaluation of Plaintiffs' extra expense claim. (I specifically address this issue further, below.) Since you had to end the call, you suggested that we reconvene today to finish discussing the points you raised in your February 17 email to me (all of which I addressed in writing in my email to you on February 21). I said that was fine. You said you were unavailable in the morning. I suggested 2:00 p.m. Pacific. You said that would work.

Then Carla stated – for the first time – that the discussion would not be limited to the issues set forth in your February 17 email, and that you were in the middle of preparing a letter that would address additional issues you perceive exist with Plaintiffs' discovery responses/document production. At that point, I stated that in that case, we should not have a call Friday (today), and that we should wait to have our call until (1) you finish and send me your letter, and (2) we have a reasonable opportunity to review it and consider whatever issues you raise. I reminded you that you took three weeks to respond to my January 30 email. Then at the conclusion of the call, I explicitly confirmed again that we would not be having a call Friday (today), and we would wait to schedule a call until after we have a reasonable opportunity to consider all of your issues, including whatever issues you ultimately raise in your letter (which we still do not have), including with our client if necessary. You did not object, and that is how we left it. Nevertheless, you did call me this afternoon, and we did continue our discussion. I told you that I would follow up with an email. Here is where we stand.

With respect to the issues raised in your February 17 email. First, I will address the four additional categories of information that your office requested that we provide to assist Atlantic in its evaluation of Plaintiffs' extra expense claim.

On January 25, 2017, our offices conferred regarding Plaintiffs' production of financial information related to the extra expenses incurred in moving the Dig Production. Plaintiffs had already produced the Extra Expense production bible (on October 26, 2016), which as you know contains an enormous amount of detailed financial data supporting Plaintiffs' damages claim, and our position was (and is) that it contains sufficient data to enable Atlantic and its damages expert to evaluate Plaintiffs' extra expense claim. But we agreed to consider your requests for additional information, and during the January 25 call, you requested that we provide the following:

1. Documentation showing the tax credits provided by the Croatia and New Mexico taxing authorities and the accounting reports or documents submitted to the taxing authorities to substantiate the credits;

2. Documents showing a further breakdown of the extra expenses (as currently reflected in the Extra Expense production bible) by categories or synopsis, whether in Excel form or some type of a narrative;

3. A list of abbreviations used in the Extra Expense production bible; and

4. Documents provided to Plaintiffs' damages expert and relied upon by the expert to support Plaintiffs' damages calculation.

As we discussed during our call today, since January 25, Plaintiffs have produced substantially more financial information and documents, including the document you requested in Category 3 (which was produced last Friday, on February 17, 2017). As discussed in our call yesterday and during our call today, in the spirit of good faith and cooperation, we have also undertaken to collect the documents you requested in Categories 1 and 2. Those documents are attached to this email in an FTP link. We can also confirm that we are willing to provide you with the documents described in Category 4, and assume that you will provide us with any and all documents relied upon by your damages expert. (You stated yesterday – and again in your email below – that you did not expect your damages expert to rely on anything other than Plaintiffs' documents, so your agreement to our request for reciprocity would seem to require little thought on your part. Please confirm your position.)

We did discuss Category 2, what you are incorrectly calling the "backup category." I have spoken to both Lucia and Val, and they expressly confirmed that what you requested in the January 25 call between our offices is what I stated in my February 21 email to you (and have restated again above). Further, among other things, the discussion on January 25 was focused on the Extra Expense production bible, Atlantic's purported difficulty in "reading" it, and Atlantic's request for a further breakdown of the extra expenses (as currently reflected in the Extra Expense production bible) as Category 2. As noted, we incurred time and expense in creating the document, because you requested it. As far as the "various reports" you claim you requested, when you raised that issue at the end of our call yesterday, I did not say I "would have to think about that some more," I said that – based on my understanding of the January 25 call – you were mischaracterizing what you originally requested on January 25. I re-confirmed that understanding today with my colleagues.

In any event, while you still have not clearly explained what additional information you are now seeking, this issue is probably moot. On February 17, we produced documents labeled UCP004076-UCP018002, which contain, among other information, numerous budgets and cost reports related to the Dig Production. I noted this today during our call. My impression is that you have not finished your review of those productions. When you do, you may find you are satisfied that Atlantic has more than enough information to evaluate Plaintiffs' extra expense claim.

This email, and the documents delivered with it, should resolve and conclude our discussion of Categories 1-4, the information that you requested we provide to help Atlantic evaluate Plaintiffs' extra expense claim. Of course, after you have reviewed it, please let us know if you have any

questions.

The remainder of the points raised in your February 17 email were addressed by me, in writing, on February 21.  We also discussed them today, during our call.

- As we discussed, we are not aware of any authority which supports your request that Mr. Smith be made available in the United States so that you may depose him as a percipient witness.  As we discussed today, what may be "pragmatic" for you or us is not "pragmatic" for Mr. Smith.  Today I asked whether you would be willing to conduct the deposition by videoconference.  You declined.  As we told you before, and as we discussed today, Plaintiffs may designate Mr. Smith as a Rule 30(b)(6) witness to testify as to those Rule 30(b)(6) topics which relate to security issues.  We have not made that determination yet.  If we decide to do so, then we will make Mr. Smith available in the United States.  So if you want to take Mr. Smith's deposition as a percipient witness now, before Plaintiffs decide whether he will be designated to testify as to Rule 30(b)(6) security topics, then his deposition will need to go forward in London.  Please let us know.  (As I noted on the phone today, we are willing to check with Mr. Smith to see whether he plans to travel to Los Angeles in the near future, for independent reasons.  We will let you know.)

- We sent you a revised Aon privilege log on February 21.  Today you asked whether all of the attorneys have been identified on the log.  They have been.  Referencing Carla's email last night, you also said you wanted to discuss the dates on which both sides contend anticipation of litigation accrued.  I told you we would consider that issue and we are willing to discuss it.

- As for the additional Aon documents, as we stated we would, we followed up with Foley & Lardner again this week, and it is our understanding that these additional Aon documents will be produced on Tuesday, February 28.  To address your question this afternoon, we understand that to be the date the documents will be produced to you.  Again, as we have noted numerous times, we do not represent Aon, and do not control their document production.

- As I said during our call today, with respect to your objection to Plaintiffs' privilege log, the ball is in your court on this issue.  See my February 21 email.  Our position is that our privilege log is sufficient under the Rules, because all of the individuals listed therein are employed by NBCUniversal/UCP-related entities.  Thus, Atlantic knows that each individual listed on the privilege log is an employee of a Plaintiff or a parent, subsidiary, affiliated, or related entity to a Plaintiff.  That should be sufficient information for you to be able to assess the privilege claim and evaluate whether the identified document is privileged.  You have not responded to our request that you provide us case authority for the proposition that you are entitled to additional detail identifying the specific entity each individual is employed by.  If you have such authority, please provide it and we will consider it.  On our side, as I said during our call, while we maintain our current log is sufficient, we will consider whether there is any additional color we can add to our general description of the

relationship to the Plaintiffs, in the spirit of cooperation.

- With respect to the status of our updates to the Plaintiffs' privilege log to account for recent document productions, we will confer internally on when we expect that update to be completed, and let you know.  As we discussed, I expect to be in a better position to estimate next week.

- Finally, with respect to Plaintiffs' document production, as you know, we made a rolling production on February 17.  We are delivering the documents via the FTP link at the bottom of this email, today.  In addition, we intend to make another rolling production today, which we expect will complete the production of all non-damages related documents which we agreed to produce that are responsive to Plaintiffs' First Set of Requests for Production of Documents.  (If we are not able to make this production tonight, it will go out Monday.)  And notwithstanding the fact that we have already produced an enormous amount of financial information – including the four categories that Atlantic specifically requested – we are continuing to explore what more can be produced.

We have not had the opportunity to review the email that Carla sent last night, in detail.  We will and will respond separately.

As I noted this afternoon, we need an answer to the question I posed at the very end of our call yesterday.  That is, we are proceeding on the basis that Atlantic has withdrawn its position that Plaintiffs have "waived" the right to depose Pamela Johnson, and that you will commit to work with us in the future to schedule her deposition for a mutually convenient date.  If that is not your position, you need to advise us immediately, because we will need to schedule a call with Magistrate Judge Wilner.  I was surprised last night when you said you "did not have authority" to confirm this point, particularly because up until that point in the call, you repeatedly claimed that we could get the information we have sought through interrogatories through Pamela Johnson, and that you did not know what Pamela Johnson was going to say at her deposition.  And, to reiterate what you said at Ms. Gooley's February 8 deposition, when you decided you did not want to continue with Atlantic's questions the next day, February 9, after Ms. Coyoca had passed the baton:

> MS. COYOCA: It was my understanding that we were going to go the next day, tomorrow.

> MS. SCOTT REED: I don't know about that understanding. We said that the witness would be available for some extra time. She's advised she can't do it tonight. And you have advised that you're not going to go forward with Pamela Johnson's deposition.

> MS. COYOCA: That's correct, not at this time.

> **MS. SCOTT REED: So our suggestion is that those be reset together.**

> MS. COYOCA: Okay … .

Gooley Depo, 300:8-21.

Please give me a straight "yes" or "no" answer to the following question: Is Atlantic asserting that Plaintiffs have "waived" the right to depose Pamela Johnson?  If the answer to that question is yes, or if you continue to refuse to commit to a position one way or the other, we will bring this issue to the attention of Magistrate Judge Wilner next week.  Moreover, to the extent Atlantic contends Plaintiffs have purportedly waived the right to take Ms. Johnson's deposition (a frivolous position), then it follows that Atlantic has waived its right to take the depositions of Randi Richmond, Mark Binke, Andrea Garber and Kurt Ford, which are the depositions that Atlantic unilaterally took off calendar, after Plaintiffs went to great lengths to schedule dates for these individuals during one of the busiest times of the year for television production.

Please let me know.

I look forward to speaking with you both again on Friday, March 3.  Please confirm the time you would like to speak, I am generally free in the morning.

The FTP link is below.  I will send the password by separate email.

Dan

\*\*\*

Click the following link to download your file(s).

Click to Retrieve File(s)

UCP007.zip

If the above link is not clickable, copy and paste the following URL into your browser.

https://www.sendthisfile.com/ResiHQiHGYuWq80UvFnr6LQc

Note: These files will expire in 14 days from the time this email was generated.



**Daniel M. Hayes** | **Partner, through his professional corporation**
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Reed, Toni [mailto:Toni.Reed@strasburger.com]
**Sent:** Friday, February 24, 2017 6:57 AM
**To:** Hayes, Daniel; Coyoca, Lucia; Shalamitski, Valentine
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** RE: UCP v Atlantic - Additional Discovery Issues

Dan,

Respectfully, we cannot agree with your characterization of the discussion last evening. We began a call at 4:00 p.m. central time yesterday. We did not complete the full agenda. I very specifically asked to continue our conference today, because we had not concluded it last night.

As of 6:15 central time last night, we had not concluded the meet and confer on discovery matters that was scheduled to address (1) the Atlantic list issues discussed with Plaintiffs' counsel, but still pending, since the meet and confer of January 25, 2017, and (2) your email of January 30, 2017. At your request, we addressed all your issues first. We had begun, but not concluded, the discussion on the Atlantic points still outstanding from January 25, 2017.

Your email of February 21, 2017 was the initial response to the Atlantic list of items that date to the January 25, 2017 conference. I reminded you of the outstanding items, for which we were due responses from Plaintiffs, in my written list sent last Friday, February 17. Your email of February 21 provided the first actual discussion on substances of those items. Accordingly, Atlantic has been waiting for that period of time to have resolution on those issues. We need to complete the meet and confer on those responses.

We began the very last portion of the call last evening with a discussion of an effort to resolve the disputes regarding the production of records by Plaintiffs in regard to damages sought in the case. You had restated and reworded my categories from the January 25 call in your email of February 21, and we discussed on the call that we are not on the same page regarding the requests. I explained again the matters covered in the January 25 call (since you were not on that call). I explained the tax document category. We have had no response on that. I explained the backup category initial discussion. In particular, we discussed the fact that the point covered in the January 25 call was a category dealing with existing documents (either in an Excel form or in any narrative form) that covered the various reports we anticipated must have been provided up the NBCUniversal chain regarding the budget (adjusted) versus the original budget, and what all the extra costs and categories were. This was an item discussed in lieu of receiving every individual invoice as backup for the damage number. You advised that *you would have to think about that some more, and that we could discuss again today*. You also advised that Plaintiffs had created a document they were offering, and we expressed our interest in it as well. We discussed the category of documents regarding how Plaintiffs will show that expenses were reasonable and necessary, including those that have been or will be provided to a damages expert. We explained what we were expecting to have. We have no response from Plaintiffs on that yet. You attempted to demand reciprocity on this point, and we explained that the source documents on damages will be all NBCUniversal documents. We did not have any resolution on what Plaintiffs are agreeing to produce. Certainly this is a point we expected to resolve in a call today or have clarity about today.

In regard to my still-pending list, sent in reminder form last Friday, we have not yet covered at all the following items in the meet and confer: (1) timing for completion of the Plaintiffs' production and the specifics outstanding; (2) Mr. Smith deposition location and the Plaintiffs' position on the pragmatic point raised; (3) privilege log for Aon documents where Plaintiffs have asserted claims of privilege and withheld documents; (4) Plaintiffs' redaction of Aon documents and the status of production; (5) completion of privilege log for Plaintiffs' documents, including designation of employers; (6) update of privilege log for Plaintiffs' documents, in light of recent rolling productions, including addressing the many redacted documents. We were expecting reports and resolution on all, but we simply did not reach those.

Toward the end of our call, we offered to run through a list of outstanding points, and we also noted that those would include items relating to your email and offshoots from your email. Rather than trying to have you jot those down, we offered to send, and then sent, those in the email last night. With respect to matters you have not discussed with your client yet, we are happy to begin a discussion with you, so that you have clarity on what to cover with your client. If there are items in last night's communication (specifically in the offshoot category) that you need time to address, certainly we will appreciate that fact. However, we have many items pending since January 25, and we want to have those concluded (just as you have so strongly argued to conclude the points in your January 30 email).

Finally, with regard to your statement that your January 30 email was not addressed until yesterday, we will direct you again (as we did in last evening's call) to the following, all of which were addressed on a rolling basis since receipt of your January 30 email, leading up to the February 20 Second Amended Responses and correspondence:

1.  Response on reserves and production (February 2);
2.  Response on Plaintiffs' argument that there has been any waiver of attorney/client privilege (February 6);
3.  Numerous discussions regarding claims manuals searches (emails over the course of February);
4.  Numerous discussions on claim files (emails over the course of February);
5.  Production of the Atlantic witnesses for depositions.

To be very complete, Atlantic also followed up with a complete supplementation of the Interrogatory responses, served at the beginning of this week.

Dan, we are looking forward to smoothly progressing through a very detailed discovery process with you. Please plan to pick up where we left off last evening on the outstanding January 25 items. If there is a reason, not stated last night, that you cannot speak at the scheduled time today, please advise, and we will be happy to talk on Monday.

Finally, the subject of a letter on the Plaintiffs' full discovery responses, which we can now begin to address since we believe that we may have many of the Plaintiffs' documents (again a point to confirm with you), is an entirely different point. We noted that would be provided separately.

Before we reach that issue, there are many outstanding items, as outlined here.

Best regards,
Toni Scott Reed

**Toni Scott Reed** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.4345 • Fax 214.659-4091 • Strasburger.com

---

**From:** Hayes, Daniel [mailto:dmh@msk.com]
**Sent:** Friday, February 24, 2017 12:16 AM
**To:** Crapster, Carla; Coyoca, Lucia; Shalamitski, Valentine
**Cc:** Keeley, Michael; Reed, Toni
**Subject:** RE: UCP v Atlantic - Additional Discovery Issues

Carla, at the end of our call today, when you said that you were still in the process of putting together a letter identifying all of the issues you wanted to discuss regarding Plaintiffs' discovery responses, we agreed that: (1) you would send me the letter when it was done, (2) we would have a reasonable opportunity to review it and consider whatever issues you raise, and (3) we would then schedule a mutually acceptable date and time for a call.  We specifically confirmed that we would not be having a call tomorrow, because you had not finished the letter.  Let's not do this piecemeal. As we discussed, please send us a letter identifying all of your concerns.  After we have a chance to review that letter, we will be happy to have a call to discuss it.  We afforded your office this courtesy.  (I sent our email identifying the deficiencies in Atlantic's discovery responses on January 30.  Your office did not respond until February 20, and we did not have our meet-and-confer call until today.)

Dan



**Daniel M. Hayes** | Partner, through his professional corporation
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

---

**From:** Crapster, Carla [mailto:Carla.Crapster@strasburger.com]
**Sent:** Thursday, February 23, 2017 6:50 PM
**To:** Coyoca, Lucia; Shalamitski, Valentine; Hayes, Daniel
**Cc:** Keeley, Michael; Reed, Toni
**Subject:** UCP v Atlantic - Additional Discovery Issues

Dan,

We are in the process of drafting a letter raising several issues regarding your discovery responses, now that we have received most of the documents and are wrapping up review of the documents produced. We have, however, already identified the following issues that we would like to address with you:

1.     The AON privilege log includes entries dated July 17, 2014 (AONNBCU0003663 and AONNBCU0003666) that are being withheld on the grounds of Work Product and Settlement/Mediation Discussions. We do not understand the basis for such assertions on July 17, 2014. What anticipation of litigation or discussion of mediation or settlement of the claim existed on that date? Please explain the basis for your assertion of privilege on this date, particularly with these two individuals.  What work product was created?

2.     Our review of the documents has made clear to us that your responses to Interrogatory No. 18 and Requests for Production 10, 11, and 12 are not complete. There are references in the documents you have produced to a "corporate terrorism policy," but your responses to discovery do not address this.  Interrogatory No. 18 asks: "State whether YOU have sought insurance coverage for any losses related to the CLAIM from any other insurer and whether YOU had any other insurance in place during the time that DIG was being produced that covered losses RELATING to delays in production or the moving of a production from one place to another." In response, you stated: "Subject to and without waiving the foregoing preliminary statement and objections, Plaintiffs respond that there is no other insurance coverage for any losses related to the CLAIM, and the POLICY at issue is the only applicable POLICY that Plaintiffs are aware of at this time that provides coverage for the LOSS." This does not directly answer the question. You do not state whether you have *sought* insurance coverage under any other policy for the CLAIM. Please answer the question directly posed in the interrogatory. Your responses to Requests for Production Nos. 10, 11, and 12, which all relate to whether "YOU" sought insurance under any other policies, are similarly deficient. You state in response to those RFPs that "Atlantic's Policy is the only applicable policy that provides coverage for this claim." But this does not directly address whether there are any documents responsive to those RFPs.  Please produce the corporate terrorism policies and any related documents we have requested.

3.     Many of the documents you have produced to date are redacted, and we have no indication from you what the basis for these redactions are. We would like to see a privilege log identifying all redactions made. We are willing to reciprocate and provide an updated privilege log that identifies the basis for our redactions.

4.     Aside from the redaction issue, we assume that you will be producing an updated

privilege log soon, given the large volume of documents produced and the very small number of documents identified on your privilege log to date. And Valentine mentioned on our call today that you are still working on a privilege log. Please let us know when we can expect to receive the updated privilege log from you.

We look forward to discussing the points from our email of last Friday, along with these issues with you tomorrow at 2 p.m. Pacific Time.

Carla

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

# EXHIBIT 3



**MITCHELL SILBERBERG & KNUPP LLP**
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Daniel M. Hayes
Partner
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

March 14, 2017

**BY EMAIL ONLY**

Toni Scott Reed
Strasburger & Price, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202-3794

Re:   **Universal Cable Productions, LLC, et al. v. Atlantic Specialty Insurance Company**

Dear Toni:

We received your letter regarding our recent notices for depositions of Wanda Phillips, Dennis Crosby, and Sean Duffy, and of Atlantic pursuant to Rule 30(b)(6).

First, we are willing to meet-and-confer with you to attempt to schedule all of these depositions for mutually convenient dates and locations. In furtherance of that process, by COB on Wednesday, March 15, please provide us several available dates between March 22 and April 5 for each deposition. Please include in that correspondence the city where you contend each deposition should be conducted.

Second, we are willing to take the deposition of Wanda Phillips at our New York office if she is unwilling to travel to Los Angeles. Please confirm by COB on Wednesday, March 15 that you are authorized to accept service of a subpoena on her behalf. Assuming you are, please also let us know what dates she is available between March 22 and April 5 and whether she prefers New York or Los Angeles.

Third, you cite no legal authority or legitimate grounds of any kind to support your threat to move to limit the duration and scope of the deposition of Sean Duffy and to preclude the deposition of Dennis Crosby in its entirety. Both of these individuals were involved in internal email communications regarding the *Dig* Claim prior to the issuance of Atlantic's denial letter. Indeed, you identified Mr. Duffy as having been "involved in evaluating and considering" and "responsible for the decision to deny" the *Dig* Claim in Atlantic's most recent responses to Plaintiffs' first set of interrogatories. We are not aware of any authority that would support an order prospectively limiting the temporal scope or subject matter of either of these important depositions. We will not agree to any such limitations.

If you still intend to move for protective orders in connection with the depositions of Mr. Duffy or Mr. Crosby, please: (1) send us the legal authority that supports your position(s); and (2) let us know what time today or on Wednesday you will be available to meet-and-confer regarding the same. I am generally available either day, with the exception of 10:00 a.m. – 11:00 a.m. on Wednesday. In the meantime, please check on the availability of these witnesses for deposition dates between March 22 and April 5. We want to be able to move forward without any delay in



Toni Scott Reed
March 14, 2017
Page 2

the event we can quickly resolve your objections informally or with the help of the Magistrate Judge.

We will address any objections to the topics in our Rule 30(b)(6) notice if and when we receive them.

Sincerely,

Daniel M. Hayes
Partner of
MITCHELL SILBERBERG & KNUPP LLP


Cc:    Michael Keeley
       Carla Crapster

# EXHIBIT 4



**MITCHELL SILBERBERG & KNUPP LLP**
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Daniel M. Hayes
Partner
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

March 14, 2017

**BY EMAIL ONLY**

Toni Scott Reed
Strasburger & Price, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202-3794

Re:   **Universal Cable Productions, LLC, et al. v. Atlantic Specialty Insurance Company**

Dear Toni:

As you know, last week, we requested that Atlantic agree to participate in a telephone conference with Magistrate Judge Wilner to discuss four unresolved issues concerning Atlantic's discovery responses, prior to motion practice.  In your March 10, 2017 letter (which I received at 8:00 p.m. on Friday), you indicate that you will agree to our request "as long as all issues for both sides are addressed at the same time and as part of the same submission and arguments."  This strategic attempt to tie the issues that Atlantic claims it has with Plaintiffs' privilege log and document production to the four issues concerning Atlantic's discovery responses is not appropriate, and would lead to unwarranted and unacceptable delay in resolving Plaintiffs' issues.

As summarized in my email to you on Friday afternoon, after substantial meet-and-confer efforts over the course of three months, the parties are at an impasse on the four issues concerning Atlantic's discovery responses.  In contrast, none of the issues you have identified concerning Plaintiffs' privilege log or document production – some of which you raised for the first time in your March 10 letter – are ripe for presentation to the Magistrate Judge.

### 1. Privilege Log

Plaintiffs' privilege log currently states:  "For purposes of this privilege log, the term "NBCUniversal" means and refers to NBCUniversal Media, LLC, Universal Cable Productions LLC, and all of their parent, subsidiary, affiliated, or related entities."  You state that "Plaintiffs have declined to provide the name of the specific company for whom each individual on the privilege log works.  You have not stated that they work only for the Plaintiffs specifically.  You have declined to provide the specific employers."  You then state that "it appears court action is required."

As you know, your summary of this issue is incomplete.  As I noted in our February 24 telephone call:

- Numerous times, we have asked you to provide legal authority for your contention that Plaintiffs' statement (quoted above) does not comply with the rule that parties describe privileged material "in a manner that, without revealing information itself privileged or

11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone: (310) 312-2000  Fax: (310) 312-3100  Website: www.msk.com



Toni Scott Reed
March 14, 2017
Page 2

protected, will enable other parties to assess the claim," and that each specific employer of each person on the privilege log must be identified. Despite our requests, you have not done so. To the extent you file a motion to compel on this issue, we assume your papers will not cite any legal authority.

- Notwithstanding your refusal to provide legal authority, I stated that I would confer with our client to determine whether we can modify the above-quoted statement in our privilege log to satisfy your concern regarding the word "related." When our supplemental privilege log is complete and we have identified the universe of parties to privileged communications, I intend to do so, and if we feel it is appropriate to revise our language, we will do so.

We estimate we will complete our privilege log by Monday, March 20. In the meantime, we again request that you provide legal authority for Atlantic's position.

## 2. Redactions

You state that Atlantic intends "to move to compel the production of substantive material that has been redacted for confidentiality" and that you "believe from the context" that many of the redactions "were not made based on privilege but on confidentiality." As we told you during our telephone call on March 6:

- Atlantic does not appear to have logged any of the substantial redactions it applied to its document production on its privilege log. Assuming Atlantic agrees to do so, we will log the redactions we made to Plaintiffs' document production on Plaintiffs' supplemental privilege log, which we anticipate will be complete by Monday, March 20. Please confirm that Atlantic agrees to this reciprocity.

- Contrary to your implication, the majority of the redactions on documents produced by Plaintiffs are based on privilege. This will be evident when Atlantic reviews Plaintiffs' supplemental privilege log. (In fact, the email from Randi Richmond that you discuss and quote from in your letter, UCP000487, was redacted based on privilege grounds.)

After you receive our privilege log, we will discuss any redactions that are not logged (and thus not based on privilege) that you wish to discuss, along with the redactions that Atlantic has made to its documents on grounds other than privilege. (As we have discussed, Atlantic has redacted a substantial amount of material from its documents, including, as examples only, the *Dig* and "Publicis" claim files, and the insurance policies associated with the "Publicis" and "Middle East" claims.)

## 3. Work Product/Date of Anticipation of Litigation

Here, you state: "We do not agree with Plaintiffs' position that the Work Product doctrine is applicable effective July 17, and intend to move to compel all documents dated July 17, 2014, and dates thereafter, withheld on the basis of work product."



Toni Scott Reed
March 14, 2017
Page 3

Theresa Gooley testified that Atlantic's decision to deny the *Dig* Claim was conveyed to Plaintiffs on July 17, 2014. *See, e.g.,* Gooley Depo, 184:18-25. As I stated during our March 6 telephone call, after the July 17, 2014 conversation, Plaintiffs anticipated litigation would ensue. When I asked you to state your position regarding whether the July 17, 2014 conversation triggered anticipation of litigation, you refused to respond. For the first time, in your March 10 letter, you state: "For purposes of advising you of the basis for the motion to compel, Atlantic's position is that the earliest there could have been anticipation of litigation was after the written denial of the claim and Plaintiffs' statement of disagreement to it."

We do not consider this statement (which does not even clarify the date on which Atlantic contends Plaintiffs' anticipation of litigation accrued) to satisfy Atlantic's meet-and-confer obligation. Please explain why, especially in light of Ms. Gooley's testimony, you feel Atlantic has a basis to challenge Plaintiffs' position that they anticipated litigation as of July 17, and provide us with any case law authority you have that would support such a challenge. After we receive this from you, we will consider whether we think further telephonic meet-and-confer efforts would be fruitful.

### 4. Documents Supporting Damages

As an initial matter, you concede in you March 10 letter that this issue (and the remainder, discussed below) are "subject to further discussion." Therefore, there is no dispute that they are not ripe for presentation to the Magistrate Judge.

Plaintiffs' production of documents that support its damages has been substantial, and we have already engaged in considerable efforts to search for and collect specific categories that you have requested to aid Atlantic in its evaluation of Plaintiffs' claim. For example, on January 25, 2017, you demanded the following four categories of documents:

1. Documentation showing the tax credits provided by the Croatia and New Mexico taxing authorities and the accounting reports or documents submitted to the taxing authorities to substantiate the credits;

2. Documents showing a further breakdown of the extra expenses (as currently reflected in the Extra Expense production bible) by categories or synopsis, whether in Excel form or some type of a narrative;

3. A list of abbreviations used in the Extra Expense production bible; and

4. Documents provided to Plaintiffs' damages expert and relied upon by the expert to support Plaintiffs' damages calculation.

We complied with these requests. In your letter, you demand two additional categories of financial documents:

First, you request: "Existing Documents (in either Excel or narrative form) that discuss the differences between the initial budget for DIG and the final incurred total costs and expenses for



Toni Scott Reed
March 14, 2017
Page 4

the DIG series, including but not limited to those that discuss why there were differences in total
costs and what made up the differences." On March 6, I told you that while you had not clearly
articulated what exactly you were looking for, it sounded like the documents we already
produced on February 17. Having received you March 10 letter, I checked our February 17
production yesterday and we did produce documents that show the variance between budgeted
and actual costs, with explanation, on February 17.

During our call, when I asked if you had reviewed our February 17 production, you would not
answer me directly. I assume that after you review the February 17 production you will have no
need to address this issue further, and unless we hear from you, we will consider it resolved.

Second, you request: "Documents that establish the reasonable and necessary extra expenses
incurred, including those provided to the expert witnesses who will testify." We already
addressed the latter part of this sentence on February 24. As I said in my email on that date:
"We can also confirm that we are willing to provide you with the documents described in
Category 4 [quoted above], and assume that you will provide us with any and all documents
relied upon by your damages expert. (… Please confirm your position.)" You never responded
to my request for confirmation. We are still waiting for your response, but in the meantime, our
position has not changed.

As far as other "[d]ocuments that establish the reasonable and necessary extra expenses
incurred," we have already produced an extensive amount of support. Please explain what, if
anything, you contend Plaintiffs must still produce.

Finally, your prefatory statement that "Plaintiffs have lodged objections to producing all
invoices" is incomplete and mischaracterizes the history of our meet-and-confer on this issue
(perhaps in an attempt to justify the latest in a long line of burdensome requests for financial
information, repeated above). You neglect to mention that, on January 23, 2017, we told you
that to the extent you continued to demand invoices, "we believe that the onus is on Atlantic to
pay for all of the expenses associated with such a production" and asked that you "please
confirm that Atlantic will pay the costs associated therewith and we will send you an anticipated
budget." You never responded to this request. You also neglect to mention that, in our call on
March 6, you said that you didn't want to have to review thousands of invoices.

### 5. Documents Withheld on the Basis of Privilege

Here, you state: "We also intend to move to compel documents withheld on the basis of
privilege in light of our understanding that you are withholding more than truly privileged
information. Our position is that the privilege cannot protect facts, only legal advice and
communications made for the purpose of obtaining legal advice."

We are aware of no authority for the proposition that a party cannot withhold a privileged
document if it contains facts. Atlantic certainly has not followed any such rule in the course of
its production. For example, is it Atlantic's contention that the coverage opinion it procured in
connection with the *Dig* Claim did not contain any "facts"? If it did contain "facts," why hasn't
Atlantic produced a redacted copy that discloses such facts?



Toni Scott Reed
March 14, 2017
Page 5

As you acknowledge, we have not completed our meet-and-confer regarding this issue and the parties' mutual obligations in connection with the same. We are happy to discuss it further. And as with Atlantic's other issues, if you have legal authority supporting your position, please provide it.

### 6. Privilege Claims Concerning Communications Involving Attorneys

You state that "[t]here are a number of documents identified on the AON privilege log that assert the attorney-client privilege for e-mails on which an attorney was merely CC'ed. We do not believe the privilege applies to these emails, and intend to move to compel them." This is the first time you have raised this issue, and you have not identified which privilege log entries you intend to challenge. Our position is that an otherwise confidential communication does not lose its privileged status merely because the attorney appears in the "cc" field of an email as opposed to the "to" or "from" field. On the contrary, the fact that an attorney is copied is evidence supporting the assertion of privilege. *See, e.g., Chevron U.S.A., Inc. v. United States*, 83 Fed. Cl. 195, 205 (2008) ("since [the email] was copied to Mary Egger, it could be construed to request legal advice and is subject to the attorney-client privilege … ."). If you have any legal authority to the contrary, please share it with us. And, if you have specific entries you would like to discuss, please let us know.

### 7. Privilege Claims Concerning Communications Involving AON

You state: "We intend to move to compel the production of all e-mails withheld on the basis of privilege that included a representative of AON in the e-mail. It is Atlantic's position that this inclusion of a third party on the communication waives the privilege." This is the first time you have raised this issue as well. As you must know, the privilege is not lost by disclosure to third persons who are present to further the interest of the client or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the attorney is consulted. *See* Cal. Evid. Code § 952. Communications including AON fit within this category. If you disagree, please provide the specific basis and legal authority that you feel supports your position. After you provide the same, we will consider it and let you know if we think a telephone call would be fruitful.

***

Returning to the four unresolved issues concerning Atlantic's discovery responses, last week I asked you to confirm by COB yesterday that you would be willing to participate in a telephone conference with Magistrate Judge Wilner regarding those four issues. You did not. Instead, you responded with your March 10 letter identifying purported issues with Plaintiffs' document production and privilege log and attempted to condition your participation in the telephone conference on an agreement to address all of those issues (some of which were raised for the first time in your March 10 letter) during the same call. As explained above, none of the issues identified in your March 10 letter are ripe for presentation to the Magistrate Judge, and we cannot delay presenting Plaintiffs' issues to the Magistrate Judge until after the requisite meet-and-confer process on yours is concluded. Of course, once that process is concluded, we are happy to participate in an informal telephone conference with the Magistrate Judge, to the extent



Toni Scott Reed
March 14, 2017
Page 6

any issues remain.  But we are not willing to artificially tie all of our respective issues together, or otherwise delay resolution of the four issues we identified any further.

Therefore, please confirm by 12:00 p.m. Pacific time tomorrow, Wednesday, that you are willing to participate in a telephone conference with Magistrate Judge Wilner regarding only the four unresolved issues concerning Atlantic's discovery responses.  If you so confirm, we will then immediately send you the proposed neutral background and summary of each issue.  We can simultaneously exchange position pieces at 12:00 p.m. Pacific on Thursday and send the joint email to the Magistrate Judge immediately thereafter (*see* my March 10 email to you, regarding the specifics of our proposed procedure).  We can then use the rest of the day Thursday to hopefully coordinate with the clerk on a date for the telephone conference (ideally this Friday or early next week).

If you do not unconditionally agree, by 12:00 p.m. on Wednesday, to participate in a telephone conference with Magistrate Judge Wilner regarding only the four unresolved issues concerning Atlantic's discovery responses, we will proceed with our discovery motion.

Sincerely,

Daniel M. Hayes
Partner of
Mitchell Silberberg & Knupp LLP


Cc:    Michael Keeley
       Carla Crapster

# EXHIBIT 5

| From: | Crapster, Carla |
|---|---|
| To: | Hayes, Daniel; Coyoca, Lucia; Shalamitski, Valentine |
| Cc: | Keeley, Michael; Reed, Toni |
| Subject: | UCP v. Atlantic - Response to Last Night"s Letter |
| Date: | Wednesday, March 15, 2017 11:56:52 AM |

Dan,

We have reviewed your letter sent last night. We do not  agree with the position that none of our issues are ready to be presented to the magistrate. And as to your statements about the urgency of your client's issues, our issues are every bit as urgent– more so given that we are still waiting on a privilege log from you, which you now say will not come until next Monday. And as you know, we believe further meet-and-confers are necessary on your issues, as well.

In short, we do not agree to go to the magistrate judge with only your four issues this week.

Mike and Toni are both traveling today, and we have not had a chance to put together a substantive response that fully responds to all the issues you raised in your letter we received at 8:38 p.m. last night. We will get that to you as soon as possible. In the meantime, we propose one last telephonic meet-and-confer on Monday of next week, in which we in which we make every effort to reach final decision on all issues (yours and ours) so that they are all ready to go before the magistrate. Please let us know if you will agree, and if so, what time works best for you.

Carla

**Carla Crapster** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.2034 • Fax 214.659.4060 • Strasburger.com

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

# EXHIBIT 6

| | |
|---|---|
| **From:** | Hayes, Daniel |
| **To:** | "Crapster, Carla"; Coyoca, Lucia; Shalamitski, Valentine |
| **Cc:** | Keeley, Michael; Reed, Toni |
| **Subject:** | RE: UCP v. Atlantic - Response to Last Night"s Letter |
| **Date:** | Wednesday, March 15, 2017 6:03:14 PM |
| **Attachments:** | image001.gif |

Carla,

First, we are at an impasse on the four issues identified in my March 9 email to you, which have been discussed over and over for more than three months.   Your stated belief that "further meet-and-confers are necessary" with respect to these four issues is wholly without basis.  In addition to our extensive written correspondence, we have already discussed these issues for hours, and we see no need to discuss them any further unless Atlantic has changed its position with respect to any of the four issues.  Nevertheless, we are willing to have one final meet and confer on these four issues tomorrow (Thursday) at 12:00 p.m. Pacific.   If we cannot conclusively resolve the four issues during our call tomorrow, and if you will not agree to participate in a telephone conference with the Magistrate Judge *now* on our four issues, we intend to proceed with a discovery motion on these issues on Monday.

Second, I addressed all of the issues set forth in your March 10 letter in my March 14 letter.  As set forth in my letter, you need to provide us with more information (including, for example, legal authority for your various positions), and we need time to consider the same with our clients, before we can have a meaningful telephonic meet-and-confer.  We will not be in a position to do so on Monday.  That is precisely why your attempt to tie our clients' respective issues together was inappropriate.   After I receive your substantive written response to my March 14 letter, we can discuss whether a telephone conference would be fruitful, and if so, when to conduct it.

Please recall, it took over three weeks for you to respond to my January 30 email, which was the second written meet-and-confer correspondence to you covering Plaintiffs' four issues.  As I said in my correspondence yesterday, unlike Atlantic, we are willing to participate in an informal telephone conference with Magistrate Judge Wilner regarding Atlantic's purported issues with Plaintiffs' document production and privilege log, if and when we complete the meet-and-confer process on those issues, and to the extent any issues remain after such process has finished. But we will not be forced to meet-and-confer regarding Atlantic's issues (some of which are brand new as of March 10) on a rushed and unreasonable schedule simply because you would like to present them to the Magistrate Judge at the same time we present our issues.

We are also waiting for your response to my March 14 correspondence regarding our deposition notices.  We need to start scheduling the depositions we noticed, for dates between March 22 and April 5.  Please respond to my March 14 letter on that issue, and let us know your witnesses' availability.

Thank you.

Dan



**Daniel M. Hayes | Partner, through his professional corporation**

T: 310.312.3216 | dmh@msk.com

**Mitchell Silberberg & Knupp LLP | www.msk.com**

11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Crapster, Carla [mailto:Carla.Crapster@strasburger.com]
**Sent:** Wednesday, March 15, 2017 11:57 AM
**To:** Hayes, Daniel; Coyoca, Lucia; Shalamitski, Valentine
**Cc:** Keeley, Michael; Reed, Toni
**Subject:** UCP v. Atlantic - Response to Last Night's Letter

Dan,

We have reviewed your letter sent last night. We do not agree with the position that none of our issues are ready to be presented to the magistrate. And as to your statements about the urgency of your client's issues, our issues are every bit as urgent— more so given that we are still waiting on a privilege log from you, which you now say will not come until next Monday. And as you know, we believe further meet-and-confers are necessary on your issues, as well.

In short, we do not agree to go to the magistrate judge with only your four issues this week.

Mike and Toni are both traveling today, and we have not had a chance to put together a substantive response that fully responds to all the issues you raised in your letter we received at 8:38 p.m. last night. We will get that to you as soon as possible. In the meantime, we propose one last telephonic meet-and-confer on Monday of next week, in which we in which we make every effort to reach final decision on all issues (yours and ours) so that they are all ready to go before the magistrate. Please let us know if you will agree, and if so, what time works best for you.

Carla

**Carla Crapster** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.2034 • Fax 214.659.4060 • Strasburger.com

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

# EXHIBIT 7

| | |
|---|---|
| **From:** | Crapster, Carla |
| **To:** | Hayes, Daniel |
| **Cc:** | Coyoca, Lucia; Shalamitski, Valentine; Keeley, Michael; Reed, Toni |
| **Subject:** | UCP v. Atlantic - Plaintiffs" Outstanding Discovery Issues |
| **Date:** | Thursday, March 16, 2017 11:19:09 AM |
| **Attachments:** | Loss Runs - ATL004138 - ATL004172.pdf |

Dan,

As you'll recall, Toni is out of town until tomorrow, and so a call for us at noon Pacific time today
does not work. But we are hoping that the below e-mail can resolve our outstanding questions
regarding the four issues you wish to take to the magistrate.

Here is what we need from you to feel that we are ready to proceed to the magistrate on your four
issues:

Regarding the discovery of the Gladstone coverage opinion, we need you to confirm that you do not
have any other case law that you have not provided to us yet that you contend supports your
position. If you confirm this, we will be ready to proceed to the magistrate.

Regarding the sufficiency of Atlantic's responses to Plaintiffs' Interrogatory Nos. 3-14, we assume
that as you stated in your e-mail of March 10, 2017, that your only issue with those interrogatory
responses is that they have incorporated by reference documents and testimony. Assuming this is
the case, we are ready to proceed to the magistrate on this issue.

Regarding the sufficiency of Atlantic's search for documents confirming that Atlantic has ever denied
a claim on the basis of a war exclusion or considered the applicability of a war exclusion, please
confirm that it is your client's position that Atlantic must run an electronic search for documents
and e-mails generated by all of Atlantic and OneBeacon's branches of coverage dating back to
January 1, 2001. Please further confirm that it is your position that the search we have run dating
back to July 2013 and the inquiries we have conducted outside of this search is inadequate.
Assuming this is the case, we are ready to proceed to the magistrate on this issue.

Finally, regarding Atlantic's agreement to produce financial documents, we are producing with this
e-mail the document that we offered to produce earlier, that summarizes the cost of all claims that
Atlantic paid over the course of its relationship with NBC Universal. We have redacted from this
document only the amount of the reserve for open claims, including the *Dig* claim, as this document
reflects the reserve that was set after the lawsuit had already been filed and Atlantic was preparing
for mediation. This is a confidential number regarding Atlantic's settlement valuation of this case,
and is also protected by the work-product doctrine. The only other numbers we have redacted are
the totals that would allow the Plaintiffs to work backwards and do the math to calculate the
amount of the reserve set for open claims, including the *Dig* claim. Please confirm that it is your
client's position that this document does not provide the information that the Plaintiffs are seeking
and that you intend to move to compel us to produce all financial statements, profit and loss
statements, balance sheets, financial projections, or similar documents relating to Atlantic's
profit/loss under the policy at issue in this case and the earlier policies Atlantic issued to NBC.
Assuming you confirm this, we believe this issue is ready to proceed to the magistrate.

We do agree generally to use the informal procedure that Judge Wilner outlines on his website. Once you have confirmed the above issues, please send us the e-mail with the Plaintiffs' position briefly outlined in a few lines, as Judge Wilner requests, and send it to us for inclusion of Atlantic's positions. We cannot promise to have our inclusion of Atlantic's positions to you by the end of this week, but we expect that your issues can be raised before the magistrate sometime next week (as can ours).

Regarding our issues, we are working on a substantive response to your March 14th letter and will have that to you as soon as possible. As we've said before, we obviously need our issues raised before the magistrate as urgently as you need yours raised, and we expect that our letter will resolve many of the issues and questions you have raised regarding our discovery objections. We therefore would like to present both our issues and your issues to the magistrate together next week. We expect the magistrate will appreciate this type of efficiency from the parties.

Thank you,
Carla

**Carla Crapster** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.2034 • Fax 214.659.4060 • Strasburger.com

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

# EXHIBIT 8

| From: | Crapster, Carla |
|---|---|
| To: | Hayes, Daniel |
| Cc: | Keeley, Michael; Reed, Toni; Coyoca, Lucia; Shalamitski, Valentine |
| Subject: | RE: UCP v. Atlantic - Deposition Dates |
| Date: | Friday, March 17, 2017 4:08:52 PM |
| Attachments: | image001.gif |

Dan,

In Toni's letter of last Friday, she referred to the fact that the depositions of the Plaintiffs' witnesses (which were requested some months ago) will need to be scheduled. Those witnesses were requested well before the Plaintiffs sent their list of a second group of Atlantic witnesses for depositions. Thus, those requests were made first and should be honored first.

In regard to the Plaintiff's second group for depositions, we will get you deposition dates as soon as we have them. We have been working diligently on alternative dates. We propose April 5 for the 30(b)(6) deposition, and would like for it to occur in Minnesota, where the 30(b)(6) representative resides. We will separately provide the objections regarding the scope of the 30(b)(6) notice, and reserve our rights on those. We have continued to follow up multiple times regarding the other dates, but are not able to provide them to you yet. We will continue following up and will let you know the other dates as soon as we have them.

We have also raised with you the various issues we have with your scope of requests for depositions. Please refer to our letter sent today on that subject as well.

On our end, our request to you of last Friday regarding dates for the Plaintiffs' witnesses made you aware that we needed to move forward with the orderly scheduling of all of those dates. We were obviously attempting to be cooperative with dates and continue to intend to do so to the extent you are willing to work with us to expedite this process.

On this issue, we note that our client has been badly prejudiced by the Plaintiffs' failure to timely complete its document production (which is still continuing even today) and to get us a timely privilege log (we understand it is not going to arrive today). We have previously advised you that we believed we could not proceed with depositions until we had all the Plaintiffs' documents. Additionally, our client has been hampered in being able to file a complete motion to compel documents, because we have not received your commitment that you have completed your production, nor have we received your actual, final privilege log. At this point, production and the privilege log are both nearly three months overdue, and we believe we may not be able to wait any longer to take depositions. Accordingly, we need to move forward at least with the scheduling of all the depositions we originally requested (and restated last week). So please do provide us with deposition dates for the people we referenced in our March 10 letter as soon as possible.

Sincerely,
Carla

**Carla Crapster** • Strasburger & Price, LLP

901 Main Street, Suite 6000, Dallas, TX 75202
214.651.2034 • Fax 214.659.4060 • Strasburger.com

**From:** Hayes, Daniel [mailto:dmh@msk.com]
**Sent:** Thursday, March 16, 2017 10:21 PM
**To:** Crapster, Carla
**Cc:** Keeley, Michael; Reed, Toni; Coyoca, Lucia; Shalamitski, Valentine
**Subject:** RE: UCP v. Atlantic - Deposition Dates

Carla,

Please provide dates between March 22 and April 5 for all of the depositions we noticed, by
tomorrow.  Our notices were served on March 7, and our request for dates that work for Atlantic's
witnesses has been outstanding since Tuesday.  As for the depositions Atlantic previously noticed of
Plaintiffs' witnesses, prior to today you had not asked for new dates since Atlantic unilaterally took
those depositions off calendar.  We will of course check availability, but the depositions we noticed
will need to be scheduled first.

Dan



**Daniel M. Hayes** | **Partner, through his professional corporation**
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE
DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND
CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW,
USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY
REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Crapster, Carla [mailto:Carla.Crapster@strasburger.com]
**Sent:** Thursday, March 16, 2017 2:10 PM
**To:** Hayes, Daniel
**Cc:** Keeley, Michael; Reed, Toni; Coyoca, Lucia; Shalamitski, Valentine
**Subject:** UCP v. Atlantic - Deposition Dates

Dan,
We are waiting to confirm dates for the depositions you have noticed. But in the meantime, please
note that the dates you have noticed for next week do not work for either our 30(b)(6)
representative or Wanda Phillips. We will get back to you with dates that do work as soon as
possible.

In the meantime, we remind you that we also have an outstanding request for dates that work for
the depositions we intend to notice. Please provide us with the dates that will work for the
individuals we listed in our letter of March 10.

Thank you,

Carla

**Carla Crapster** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.2034 • Fax 214.659.4060 • Strasburger.com

---

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

---

# EXHIBIT 9

| From: | Hayes, Daniel |
|---|---|
| To: | "Reed, Toni"; Coyoca, Lucia; Shalamitski, Valentine |
| Cc: | Crapster, Carla; Keeley, Michael |
| Subject: | RE: UCP, et al v. Atlantic Specialty - Letter of March 17 |
| Date: | Monday, March 20, 2017 7:56:24 AM |
| Attachments: | image001.gif |

Toni,

We are considering your letter with our clients.  We will substantively respond as soon as we can, but given the amount of new argument and other material, we will not be in a position to respond today.  I will let you know as soon as we have completed our internal discussions and are ready to discuss these issues.

Dan



**Daniel M. Hayes | Partner, through his professional corporation**
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP | www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Reed, Toni [mailto:Toni.Reed@strasburger.com]
**Sent:** Friday, March 17, 2017 4:08 PM
**To:** Hayes, Daniel; Coyoca, Lucia; Shalamitski, Valentine
**Cc:** Crapster, Carla; Keeley, Michael
**Subject:** UCP, et al v. Atlantic Specialty - Letter of March 17

Dan,

Please see the correspondence attached.

Best regards,
Toni Scott Reed

**Toni Scott Reed** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.4345 • Fax 214.659.4091 • Strasburger.com

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*