1   LUCIA E. COYOCA (SBN 128314)
      lec@msk.com
2   VALENTINE A. SHALAMITSKI (SBN 236061)
      vas@msk.com
3   DANIEL M. HAYES (SBN 240250)
      dmh@msk.com
4   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
5   Los Angeles, CA 90064-1683
    Telephone:  (310) 312-2000
6   Facsimile:  (310) 312-3100

7   Attorneys for Attorneys for Plaintiffs
    Universal Cable Productions LLC and
8   Northern Entertainment Productions LLC

9                  UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                      WESTERN DIVISION

12   UNIVERSAL CABLE                    CASE NO. 2:16-cv-4435-PA-MRW
     PRODUCTIONS LLC, a Delaware
13   limited liability company, and     **APPENDIX OF EXHIBITS IN**
     NORTHERN ENTERTAINMENT             **SUPPORT OF PLAINTIFFS'**
14   PRODUCTIONS LLC, a Delaware        **OPPOSITION TO DEFENDANT'S**
     limited liability company,         **EX PARTE APPLICATION FOR**
15                                      **ORDER CONTINUING TRIAL**
               Plaintiffs,             **DATE AND ALL DEADLINES**
16                                      **FOR 60 DAYS**
          v.
17
     ATLANTIC SPECIALTY                 File Date:        June 20, 2016
18   INSURANCE COMPANY, a New           Discovery Cutoff: May 12, 2017
     York insurance company,            Pre-Trial Conf.:  June 16, 2017
19                                      Trial Date :      July 25, 2017
               Defendant.
20

21

22                        **PART 3**

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

8760192.1
                          **APPENDIX OF EXHIBITS**

# EXHIBIT 22

## Hayes, Daniel

| | |
|---|---|
| **From:** | Reed, Toni <Toni.Reed@strasburger.com> |
| **Sent:** | Monday, April 03, 2017 9:15 AM |
| **To:** | Hayes, Daniel; Coyoca, Lucia; Shalamitski, Valentine |
| **Cc:** | Keeley, Michael; Crapster, Carla |
| **Subject:** | Letter to Dan Hayes - Deposition schedule |
| **Attachments:** | Letter to Dan Hayes - Deposition Schedule.pdf |

Dan,

Please see my correspondence regarding our call of Friday, and our need to receive confirmation from you regarding the dates noticed for the next two weeks for plaintiffs' witnesses.

Best regards,
Toni Scott Reed

**Toni Scott Reed** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.4345 • Fax 214.659-4091 • Strasburger.com

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*



# Strasburger
## ATTORNEYS AT LAW

April 3, 2017

TONI SCOTT REED
(214) 651-4345
Direct Fax (214) 659-4091
Toni.Reed@strasburger.com

**<u>Via Email</u>**

Mr. Daniel M. Hayes
Mitchell Silberberg Knupp LLP
11377 W. Olympic Boulevard
Los Angeles, CA 90064

Re:   *Universal Cable Productions LLC and Northern Entertainment Productions
LLC v. Atlantic Specialty Insurance Company*; Case No. 2:16-cv-04435-PA-
MRW, pending in the United States District Court for the Central District of
California, Western Division

Dear Daniel:

I was very disappointed during our Friday afternoon call that you declined to
provide the rest of the information on the deposition dates for the plaintiffs'
witnesses that it seemed you had obtained. As you know, we have made clear in
various correspondence, since early in March, that it would be necessary to proceed
with depositions, and to complete a number of key witnesses prior to the deadline
for the filing of motions for summary judgment in this case. I refer to those prior
letters, and to the list of witnesses provided.

To follow up on those various communications, we served, last week, notices of
depositions for the following, in order to address the need to complete certain
testimony in advance of the summary judgment motion deadline:

1. Plaintiffs' corporate representative(s) – April 11;
2. Malika Adams – April 11;
3. Susan Weiss – April 12;
4. Andrea Garber – April 13;
5. Mark Binke – April 14;
6. Randi Richmond – April 17;
7. Stephen Smith – April 18;
8. Kurt Ford – April 19.

**Strasburger & Price, LLP**

901 Main Street, Suite 6000 | Dallas, Texas 75202.3794 | 214.651.4300 tel | 214.651.4330 fax | www.strasburger.com
Austin | Collin County | Dallas | Houston | San Antonio | New York, N.Y. | Washington, D.C. | Mexico City - Strasburger & Price, SC



Mr. Daniel M. Hayes
April 3, 2017
Page 2

While we need to schedule the remaining requested plaintiffs' witnesses, we are not requesting that those be completed before the summary judgment motion deadline. We would like to continue our work to schedule those, however.

I note that the deposition notices for Andrea Garber (April 13) and Stephen Smith (April 18) were served for the dates that were specifically offered for them (quickly after the dates were offered and right after I asked for those dates to be held). While you have confirmed Mr. Smith's date as of last Friday, you would not confirm the date you already offered for Ms. Garber.

Additionally, you simply would not discuss other dates for the list of witnesses either.

We have made every effort to proceed with scheduling. We have previously produced four Atlantic witnesses for full deposition testimony (you declined to proceed with one). Those witnesses were provided in February. We have not had even a single plaintiffs' witness produced to Atlantic yet.

Accordingly, and in light of the very tight schedule that exists due to the timing of the production of documents and the privilege log by plaintiffs in this case, we again request to confirm the dates for the depositions of the plaintiffs' witnesses necessary for completion prior to the summary judgment motion deadline. At this point, travel for next week must be finalized. Additionally, the importance of this issue was outline in the Motion for Continuance filed last week. Please advise.

We recently provided a set of dates to you for the various Atlantic witnesses you requested. None were accepted, and you indicated in response that you would prefer not to make so many separate trips for depositions. Accordingly, we began again in order to secure dates that were closer to one another. You indicated that is not your first choice now, and want to revisit other dates. We are working on those, after receiving your statement on Friday afternoon.

May 8 was provided as a potential date for Mr. Duffy last week. You have indicated you want an earlier date. May 8 is still available so far, and obviously we are going to need to use all dates up to and include the discovery cutoff.

Wanda Phillips is available to be presented in New York on April 20 or April 25. We would want to proceed with the deposition of Mr. McCarthy, also in New York, on a day immediately following the date on which we present Ms. Phillips.



**Strasburger**
ATTORNEYS AT LAW

Mr. Daniel M. Hayes
April 3, 2017
Page 3

A corporate representative date that is possible is April 24.

I have advised you that I have consulted with Ms. Johnson on her schedule, and that she does not have available dates in the month of April. I reiterate that here, and will continue to work with her on May dates.

While the objections regarding the deposition of Mr. Crosby stand, the dates we can propose for a deposition, subject to the objections, would be May 2, 3, or 4.

We will continue to work on dates to finalize all arrangements.

We await confirmation that the plaintiffs will provide the witnesses requested before the summary judgment deadline.

Additionally, you confirmed again on Friday that plaintiffs' counsel are working to schedule the Malika Adams and Susan Weiss depositions (although Ms. Adams is no longer an employee and Ms. Weiss was never an employee of plaintiffs), and that you have provided instructions to counsel for Atlantic not to attempt contact with those witnesses for the purpose of securing a deposition date or arranging those depositions.

Very truly yours,

Toni Scott Reed

cc:     Mr. Michael Keeley
        Ms. Carla Crapster

# EXHIBIT 23

1   LUCIA E. COYOCA (SBN 128314)
      lec@msk.com
2   VALENTINE A. SHALAMITSKI (SBN 236061)
      vas@msk.com
3   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
4   Los Angeles, CA 90064-1683
    Telephone:  (310) 312-2000
5   Facsimile:  (310) 312-3100

6   Attorneys for Plaintiffs
    Universal Cable Productions LLC and
7   Northern Entertainment Productions LLC

8

9                   UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                        WESTERN DIVISION

12   UNIVERSAL CABLE                    CASE NO. 2:16-cv-4435-PA-MRW
     PRODUCTIONS LLC, *et al.*,
13                                      The Honorable Percy Anderson
              Plaintiffs,
14                                      **PLAINTIFFS' INITIAL**
         v.                             **DISCLOSURES**
15
     ATLANTIC SPECIALTY
16   INSURANCE COMPANY,

17            Atlantic.

18

19

20

21

22

23

24

25

26

27

Mitchell      28
Silberberg &
Knupp LLP

8052719.1
                        PLAINTIFFS' INITIAL DISCLOSURES

1    Plaintiffs Universal Cable Productions LLC ("UCP") and Northern

2  Entertainment Productions LLC ("Northern Entertainment") (UCP and Northern

3  Entertainment, collectively, "Plaintiffs") hereby make the following initial

4  disclosures pursuant to the parties' agreement and Rule 26(a)(1) of the Federal

5  Rules of Civil Procedure ("FRCP").

6  **I.    Witness Disclosures—FRCP 26(a)(1)(A)(i)**

7    Plaintiffs have not yet completed their investigation of this action, and may

8  discover additional witnesses; however, excluding potential impeachment

9  witnesses, Plaintiffs currently believe the following persons are likely to have

10  discoverable information that Plaintiffs may use to support their claims:

11    1.    **Kurt Ford** – Mr. Ford has or may have discoverable information

12  regarding Plaintiffs' claims, including information concerning the delay,

13  postponement, and relocation of the *Dig* production out of Israel (the "*Dig*

14  Claim"), and the expenses and costs Plaintiffs incurred in connection therewith.

15  Mr. Ford may be contacted through the undersigned counsel of record for

16  Plaintiffs.

17    2.    **Randi Richmond** – Ms. Richmond has or may have discoverable

18  information regarding the *Dig* Claim, and the expenses and costs Plaintiffs

19  incurred in connection with the delay, postponement, and relocation of the *Dig*

20  production out of Israel.  Ms. Richmond may be contacted through the undersigned

21  counsel of record for Plaintiffs.

22    3.    **BJ Markus** – Ms. Markus has or may have discoverable information

23  regarding the *Dig* Claim, and the expenses and costs Plaintiffs incurred in

24  connection with the delay, postponement, and relocation of the *Dig* production out

25  of Israel.  Ms. Markus may be contacted through the undersigned counsel of record

26  for Plaintiffs.

27    4.    **Mark Binke** – Mr. Binke has or may have discoverable information

28  regarding the *Dig* Claim and the expenses and costs Plaintiffs incurred in

Mitchell
Silberberg &
Knupp LLP

8052719.1

1

1  connection with the delay, postponement, and relocation of the *Dig* production out

2  of Israel.  Mr. Binke may be contacted through the undersigned counsel of record

3  for Plaintiffs.

4      5.    **Curt Williams** – Mr. Williams has or may have discoverable

5  information regarding the *Dig* Claim and the expenses and costs Plaintiffs incurred

6  in connection with the delay, postponement, and relocation of the *Dig* production

7  out of Israel.  Mr. Williams may be contacted through the undersigned counsel of

8  record for Plaintiffs.

9      6.    **Stephen Smith** – Mr. Smith has or may have discoverable

10  information regarding the security conditions of the *Dig* production during the

11  summer of 2014, and the delay, postponement, and relocation of the *Dig*

12  production out of Israel.  Mr. Smith may be contacted through the undersigned

13  counsel of record for Plaintiffs.

14      7.    **Andrea Garber** – Ms. Garber has or may have discoverable

15  information regarding the insurance policy at issue, *i.e.*, the Motion

16  Picture/Television Producers Portfolio Policy No. MP00163-04 (the "Policy")

17  issued by Atlantic Specialty Insurance Company ("Atlantic"), the claims made

18  thereunder including the *Dig* Claim, and the addition of *Dig* as an insured

19  production.  Ms. Garber has or may also have discoverable information regarding

20  prior policies issued by Atlantic.  Ms. Garber may be contacted through the

21  undersigned counsel of record for Plaintiffs.

22      8.    **Susan Weiss** – Ms. Weiss has or may have discoverable information

23  regarding the Policy and/or prior policies issued by Atlantic and claims thereunder,

24  including the *Dig* Claim.  Ms. Weiss may be contacted through the undersigned

25  counsel of record for Plaintiffs.

26      9.    **Peter Williams** – Plaintiffs believe Mr. Williams is or was Atlantic's

27  agent, and an agent, employee, or representative of OneBeacon Insurance Group,

28  Ltd. and/or OneBeacon Entertainment LLC.  Plaintiffs believe Mr. Williams has or

Mitchell
Silberberg &
Knupp LLP

8052719.1

2

1   may have discoverable information regarding Atlantic's coverage determination

2   and its denial of the *Dig* Claim, and Atlantic's handling and the impact of other

3   claims made by Plaintiffs under the Policy.

4       10.   **Pamela Johnson** – Plaintiffs believe Ms. Johnson is or was Atlantic's

5   agent, and an agent, employee, or representative of OneBeacon Insurance Group,

6   Ltd. and/or OneBeacon Entertainment LLC.  Plaintiffs believe Ms. Johnson has or

7   may have discoverable information regarding Atlantic's coverage determination

8   and its denial of the *Dig* Claim, and Atlantic's handling and the impact of other

9   claims made by Plaintiffs under the Policy.

10       11.   **Theresa Gooley** – Plaintiffs believe Ms. Gooley is or was Atlantic's

11   agent, and an agent, employee, or representative of OneBeacon Insurance Group,

12   Ltd. and/or OneBeacon Entertainment LLC.  Plaintiffs believe Ms. Gooley has or

13   may have discoverable information regarding Atlantic's coverage determination

14   and its denial of the *Dig* Claim, and Atlantic's handling and the impact of other

15   claims made by Plaintiffs under the Policy.

16       12.   **Daniel Gutterman** – Plaintiffs believe Mr. Gutterman is or was

17   Atlantic's agent, and an agent, employee, or representative of OneBeacon

18   Insurance Group, Ltd. and/or OneBeacon Entertainment LLC.  Plaintiffs believe

19   Mr. Gutterman has or may have discoverable information regarding Atlantic's

20   coverage determination and its denial of the *Dig* Claim, and Atlantic's handling

21   and the impact of other claims made by Plaintiffs under the Policy.

22

23   **II.   Document Disclosures—FRCP 26(a)(1)(A)(ii)**

24       Plaintiffs have not completed their investigation of this action, and therefore

25   may discover additional documents and/or tangible things.  The categories of

26   documents that are currently known in Plaintiffs' possession, custody, or control

27   which Plaintiffs may use to support their claims (other than solely for

28   impeachment), include:

1.     Atlantic Specialty Motion Picture/Television Producers Portfolio Policy No. MP00163-04, and related documents.

2.     Prior policies issued by Atlantic Specialty to NBCUniversal Media LLC including, *e.g.*, Policy Nos. MP00163-03, MP00163-02, MP00163-01, MP00163-00, and related documents.

3.     Claims-related documents and correspondence, including with Atlantic and/or its agents/representatives, relating to the *Dig* Claim, other claims under the Policy, and/or prior policies issued by Atlantic.

4.     Documents relating to the payments made to purchase the Policy, and/or prior policies issued by Atlantic.

5.     Documents, including publicly-available U.S. government documents as cited in the First Amended Complaint, regarding Hamas, the Gaza Strip, and the events during the summer of 2014 and/or prior to that time.

6.     Documents regarding the expenses and costs incurred by Plaintiffs relating to the *Dig* Claim and satisfaction of the self-insured retention under the Policy.

7.     Documents regarding the expenses and costs incurred and to-be-incurred by Plaintiff in connection with enforcing coverage of the *Dig* Claim under the Policy.

## III.   Computation of Damages—FRCP 26(a)(1)(A)(iii)

At this time, Plaintiffs estimate their damages in an amount not less than $6.9 million in expenses and costs incurred in connection with the delay, postponement, and relocation of the *Dig* production. These expenses and costs fall squarely within the definition of the Extra Expense coverage under the Policy which Atlantic was obligated to, but did not pay.

Plaintiffs will make the documents on which its damages computation is based available for inspection and copying as provided for under FRCP 34.

1    Plaintiffs also claim damages to be determined at trial for Atlantic's tortuous

2  breach of an insurance contract, including but not limited to Plaintiffs' legal fees,

3  expenses, and costs incurred as a result of their efforts to obtain coverage under the

4  Policy, punitive damages, and other relief as provided by law.

5    Plaintiffs also seek pre-judgment and other interest on all of the above

6  amounts to the full extent permitted by law, in an amount to be determined at trial.

7

8  **IV.    Insurance—FRCP 26(a)(1)(A)(iv)**

9    Not applicable.

10

11    Plaintiffs reserve the right to supplement these disclosures should discovery

12  or other investigation reveal witnesses and/or other information relevant to their

13  claims in this action.

14

15  DATED:  September 16, 2016        LUCIA E. COYOCA
                                      VALENTINE A. SHALAMITSKI
16                                    MITCHELL SILBERBERG & KNUPP LLP

17

18                                    By: /s/ Lucia E. Coyoca
                                          Lucia E. Coyoca
19                                        Attorneys for Plaintiffs
                                          Universal Cable Productions LLC and
20                                        Northern Entertainment
                                          Productions LLC
21

22

23

24

25

26

27

Mitchell      28
Silberberg &
Knupp LLP

8052719.1

## **PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California, I am over the age of eighteen years and am not a party to this action; my business address is Mitchell Silberberg & Knupp LLP, 11377 West Olympic Boulevard, Los Angeles, CA 90064-1683, and my business email address is bag@msk.com.

     On September 16, 2016, I served a copy of the foregoing document(s) described as **PLAINTIFFS' INITIAL DISCLOSURES** on the interested parties in this action at their last known address as set forth below by taking the action described below:

Marc J. Shrake, Esq.
Anderson, McPharlin & Conners LLP
707 Wilshire Boulevard
Suite 4000
Los Angeles, CA 90017-3623

Telephone:  (213) 236-1691
Facsimile:  (213) 622-7594

Email:  mjs@amclaw.com

Michael Keeley, Esq.
John R. Riddle, Esq.
Carla C. Crapster, Esq.
Strasburger & Price, LLP
901 Main Street
Suite 4400
Dallas, TX 75202

Telephone:  (214) 651-4300
Facsimile:  (214) 651-4330

Email:
michael.keeley@strasburger.com
john.riddle@strasburger.com
carla.crapster@strasburger.com

☑  **BY PLACING FOR COLLECTION AND MAILING:** I placed the above-mentioned document(s) in sealed envelope(s) addressed as set forth above, and placed the envelope(s) for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at 11377 West Olympic Boulevard, Los Angeles, California 90064-1683 in the ordinary course of business.

☑  **BY ELECTRONIC MAIL**: I served the above-mentioned document electronically on the parties listed at the email addresses above and, to the best of my knowledge, the transmission was complete and without error in that I did not receive an electronic notification to the contrary.

     I declare under penalty of perjury under the laws of the United States that the above is true and correct.

     Executed on September 16, 2016, at Los Angeles, California.

_____
Bertha A. García

PLAINTIFFS' INITIAL DISCLOSURES

Mitchell
Silberberg &
Knupp LLP

8052719.1

# EXHIBIT 24

| From: | Hayes, Daniel |
|---|---|
| To: | "Reed, Toni"; Coyoca, Lucia; Shalamitski, Valentine |
| Cc: | Keeley, Michael; Crapster, Carla |
| Subject: | RE: UCP v Atlantic - Additional Discovery Issues |
| Date: | Friday, February 24, 2017 4:38:10 PM |
| Attachments: | image001.gif |

Toni,

This email follows our telephone conference this afternoon. I am encouraged by how we ended the call. But, as we discussed on the call, I feel I must correct the written record.

Yesterday, as we were reaching the end of our discussion of the deficiencies in Atlantic's discovery responses, you announced that you and Carla had to end the call in five minutes. As a result, I wrapped up the discussion of the issues set forth in my January 30 email, and addressed the four additional categories of information that your office requested that we provide to assist Atlantic in its evaluation of Plaintiffs' extra expense claim. (I specifically address this issue further, below.) Since you had to end the call, you suggested that we reconvene today to finish discussing the points you raised in your February 17 email to me (all of which I addressed in writing in my email to you on February 21). I said that was fine. You said you were unavailable in the morning. I suggested 2:00 p.m. Pacific. You said that would work.

Then Carla stated – for the first time – that the discussion would not be limited to the issues set forth in your February 17 email, and that you were in the middle of preparing a letter that would address additional issues you perceive exist with Plaintiffs' discovery responses/document production. At that point, I stated that in that case, we should not have a call Friday (today), and that we should wait to have our call until (1) you finish and send me your letter, and (2) we have a reasonable opportunity to review it and consider whatever issues you raise. I reminded you that you took three weeks to respond to my January 30 email. Then at the conclusion of the call, I explicitly confirmed again that we would not be having a call Friday (today), and we would wait to schedule a call until after we have a reasonable opportunity to consider all of your issues, including whatever issues you ultimately raise in your letter (which we still do not have), including with our client if necessary. You did not object, and that is how we left it. Nevertheless, you did call me this afternoon, and we did continue our discussion. I told you that I would follow up with an email. Here is where we stand.

With respect to the issues raised in your February 17 email. First, I will address the four additional categories of information that your office requested that we provide to assist Atlantic in its evaluation of Plaintiffs' extra expense claim.

On January 25, 2017, our offices conferred regarding Plaintiffs' production of financial information related to the extra expenses incurred in moving the Dig Production. Plaintiffs had already produced the Extra Expense production bible (on October 26, 2016), which as you know contains an enormous amount of detailed financial data supporting Plaintiffs' damages claim, and our position was (and is) that it contains sufficient data to enable Atlantic and its damages expert to evaluate Plaintiffs' extra expense claim. But we agreed to consider your requests for additional information, and during the January 25 call, you requested that we provide the following:

1. Documentation showing the tax credits provided by the Croatia and New Mexico taxing authorities and the accounting reports or documents submitted to the taxing authorities to substantiate the credits;

2. Documents showing a further breakdown of the extra expenses (as currently reflected in the Extra Expense production bible) by categories or synopsis, whether in Excel form or some type of a narrative;

3. A list of abbreviations used in the Extra Expense production bible; and

4. Documents provided to Plaintiffs' damages expert and relied upon by the expert to support Plaintiffs' damages calculation.

As we discussed during our call today, since January 25, Plaintiffs have produced substantially more financial information and documents, including the document you requested in Category 3 (which was produced last Friday, on February 17, 2017). As discussed in our call yesterday and during our call today, in the spirit of good faith and cooperation, we have also undertaken to collect the documents you requested in Categories 1 and 2. Those documents are attached to this email in an FTP link. We can also confirm that we are willing to provide you with the documents described in Category 4, and assume that you will provide us with any and all documents relied upon by your damages expert. (You stated yesterday – and again in your email below – that you did not expect your damages expert to rely on anything other than Plaintiffs' documents, so your agreement to our request for reciprocity would seem to require little thought on your part. Please confirm your position.)

We did discuss Category 2, what you are incorrectly calling the "backup category." I have spoken to both Lucia and Val, and they expressly confirmed that what you requested in the January 25 call between our offices is what I stated in my February 21 email to you (and have restated again above). Further, among other things, the discussion on January 25 was focused on the Extra Expense production bible, Atlantic's purported difficulty in "reading" it, and Atlantic's request for a further breakdown of the extra expenses (as currently reflected in the Extra Expense production bible) as Category 2. As noted, we incurred time and expense in creating the document, because you requested it. As far as the "various reports" you claim you requested, when you raised that issue at the end of our call yesterday, I did not say I "would have to think about that some more," I said that – based on my understanding of the January 25 call – you were mischaracterizing what you originally requested on January 25. I re-confirmed that understanding today with my colleagues.

In any event, while you still have not clearly explained what additional information you are now seeking, this issue is probably moot. On February 17, we produced documents labeled UCP004076-UCP018002, which contain, among other information, numerous budgets and cost reports related to the Dig Production. I noted this today during our call. My impression is that you have not finished your review of those productions. When you do, you may find you are satisfied that Atlantic has more than enough information to evaluate Plaintiffs' extra expense claim.

This email, and the documents delivered with it, should resolve and conclude our discussion of Categories 1-4, the information that you requested we provide to help Atlantic evaluate Plaintiffs' extra expense claim. Of course, after you have reviewed it, please let us know if you have any

questions.

The remainder of the points raised in your February 17 email were addressed by me, in writing, on February 21. We also discussed them today, during our call.

- As we discussed, we are not aware of any authority which supports your request that Mr. Smith be made available in the United States so that you may depose him as a percipient witness. As we discussed today, what may be "pragmatic" for you or us is not "pragmatic" for Mr. Smith. Today I asked whether you would be willing to conduct the deposition by videoconference. You declined. As we told you before, and as we discussed today, Plaintiffs may designate Mr. Smith as a Rule 30(b)(6) witness to testify as to those Rule 30(b)(6) topics which relate to security issues. We have not made that determination yet. If we decide to do so, then we will make Mr. Smith available in the United States. So if you want to take Mr. Smith's deposition as a percipient witness now, before Plaintiffs decide whether he will be designated to testify as to Rule 30(b)(6) security topics, then his deposition will need to go forward in London. Please let us know. (As I noted on the phone today, we are willing to check with Mr. Smith to see whether he plans to travel to Los Angeles in the near future, for independent reasons. We will let you know.)

- We sent you a revised Aon privilege log on February 21. Today you asked whether all of the attorneys have been identified on the log. They have been. Referencing Carla's email last night, you also said you wanted to discuss the dates on which both sides contend anticipation of litigation accrued. I told you we would consider that issue and we are willing to discuss it.

- As for the additional Aon documents, as we stated we would, we followed up with Foley & Lardner again this week, and it is our understanding that these additional Aon documents will be produced on Tuesday, February 28. To address your question this afternoon, we understand that to be the date the documents will be produced to you. Again, as we have noted numerous times, we do not represent Aon, and do not control their document production.

- As I said during our call today, with respect to your objection to Plaintiffs' privilege log, the ball is in your court on this issue. See my February 21 email. Our position is that our privilege log is sufficient under the Rules, because all of the individuals listed therein are employed by NBCUniversal/UCP-related entities. Thus, Atlantic knows that each individual listed on the privilege log is an employee of a Plaintiff or a parent, subsidiary, affiliated, or related entity to a Plaintiff. That should be sufficient information for you to be able to assess the privilege claim and evaluate whether the identified document is privileged. You have not responded to our request that you provide us case authority for the proposition that you are entitled to additional detail identifying the specific entity each individual is employed by. If you have such authority, please provide it and we will consider it. On our side, as I said during our call, while we maintain our current log is sufficient, we will consider whether there is any additional color we can add to our general description of the

relationship to the Plaintiffs, in the spirit of cooperation.

- With respect to the status of our updates to the Plaintiffs' privilege log to account for recent document productions, we will confer internally on when we expect that update to be completed, and let you know. As we discussed, I expect to be in a better position to estimate next week.

- Finally, with respect to Plaintiffs' document production, as you know, we made a rolling production on February 17. We are delivering the documents via the FTP link at the bottom of this email, today. In addition, we intend to make another rolling production today, which we expect will complete the production of all non-damages related documents which we agreed to produce that are responsive to Plaintiffs' First Set of Requests for Production of Documents. (If we are not able to make this production tonight, it will go out Monday.) And notwithstanding the fact that we have already produced an enormous amount of financial information – including the four categories that Atlantic specifically requested – we are continuing to explore what more can be produced.

We have not had the opportunity to review the email that Carla sent last night, in detail. We will and will respond separately.

As I noted this afternoon, we need an answer to the question I posed at the very end of our call yesterday. That is, we are proceeding on the basis that Atlantic has withdrawn its position that Plaintiffs have "waived" the right to depose Pamela Johnson, and that you will commit to work with us in the future to schedule her deposition for a mutually convenient date. If that is not your position, you need to advise us immediately, because we will need to schedule a call with Magistrate Judge Wilner. I was surprised last night when you said you "did not have authority" to confirm this point, particularly because up until that point in the call, you repeatedly claimed that we could get the information we have sought through interrogatories through Pamela Johnson, and that you did not know what Pamela Johnson was going to say at her deposition. And, to reiterate what you said at Ms. Gooley's February 8 deposition, when you decided you did not want to continue with Atlantic's questions the next day, February 9, after Ms. Coyoca had passed the baton:

MS. COYOCA: It was my understanding that we were going to go the next day, tomorrow.

MS. SCOTT REED: I don't know about that understanding. We said that the witness would be available for some extra time. She's advised she can't do it tonight. And you have advised that you're not going to go forward with Pamela Johnson's deposition.

MS. COYOCA: That's correct, not at this time.

**MS. SCOTT REED: So our suggestion is that those be reset together.**

MS. COYOCA: Okay ... .

Gooley Depo, 300:8-21.

Please give me a straight "yes" or "no" answer to the following question: Is Atlantic asserting that Plaintiffs have "waived" the right to depose Pamela Johnson? If the answer to that question is yes, or if you continue to refuse to commit to a position one way or the other, we will bring this issue to the attention of Magistrate Judge Wilner next week. Moreover, to the extent Atlantic contends Plaintiffs have purportedly waived the right to take Ms. Johnson's deposition (a frivolous position), then it follows that Atlantic has waived its right to take the depositions of Randi Richmond, Mark Binke, Andrea Garber and Kurt Ford, which are the depositions that Atlantic unilaterally took off calendar, after Plaintiffs went to great lengths to schedule dates for these individuals during one of the busiest times of the year for television production.

Please let me know.

I look forward to speaking with you both again on Friday, March 3. Please confirm the time you would like to speak, I am generally free in the morning.

The FTP link is below. I will send the password by separate email.

Dan

***

Click the following link to download your file(s).

Click to Retrieve File(s)

UCP007.zip

If the above link is not clickable, copy and paste the following URL into your browser.

https://www.sendthisfile.com/ResiHQiHGYuWq80UvFnr6LQc

Note: These files will expire in 14 days from the time this email was generated.



**Daniel M. Hayes | Partner, through his professional corporation**
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP | www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Reed, Toni [mailto:Toni.Reed@strasburger.com]
**Sent:** Friday, February 24, 2017 6:57 AM
**To:** Hayes, Daniel; Coyoca, Lucia; Shalamitski, Valentine
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** RE: UCP v Atlantic - Additional Discovery Issues

Dan,

Respectfully, we cannot agree with your characterization of the discussion last evening. We began a call at 4:00 p.m. central time yesterday. We did not complete the full agenda. I very specifically asked to continue our conference today, because we had not concluded it last night.

As of 6:15 central time last night, we had not concluded the meet and confer on discovery matters that was scheduled to address (1) the Atlantic list issues discussed with Plaintiffs' counsel, but still pending, since the meet and confer of January 25, 2017, and (2) your email of January 30, 2017. At your request, we addressed all your issues first. We had begun, but not concluded, the discussion on the Atlantic points still outstanding from January 25, 2017.

Your email of February 21, 2017 was the initial response to the Atlantic list of items that date to the January 25, 2017 conference. I reminded you of the outstanding items, for which we were due responses from Plaintiffs, in my written list sent last Friday, February 17. Your email of February 21 provided the first actual discussion on substances of those items. Accordingly, Atlantic has been waiting for that period of time to have resolution on those issues. We need to complete the meet and confer on those responses.

We began the very last portion of the call last evening with a discussion of an effort to resolve the disputes regarding the production of records by Plaintiffs in regard to damages sought in the case. You had restated and reworded my categories from the January 25 call in your email of February 21, and we discussed on the call that we are not on the same page regarding the requests. I explained again the matters covered in the January 25 call (since you were not on that call). I explained the tax document category. We have had no response on that. I explained the backup category initial discussion. In particular, we discussed the fact that the point covered in the January 25 call was a category dealing with existing documents (either in an Excel form or in any narrative form) that covered the various reports we anticipated must have been provided up the NBCUniversal chain regarding the budget (adjusted) versus the original budget, and what all the extra costs and categories were. This was an item discussed in lieu of receiving every individual invoice as backup for the damage number. You advised that *you would have to think about that some more, and that we could discuss again today*. You also advised that Plaintiffs had created a document they were offering, and we expressed our interest in it as well. We discussed the category of documents regarding how Plaintiffs will show that expenses were reasonable and necessary, including those that have been or will be provided to a damages expert. We explained what we were expecting to have. We have no response from Plaintiffs on that yet. You attempted to demand reciprocity on this point, and we explained that the source documents on damages will be all NBCUniversal documents. We did not have any resolution on what Plaintiffs are agreeing to produce. Certainly this is a point we expected to resolve in a call today or have clarity about today.

In regard to my still-pending list, sent in reminder form last Friday, we have not yet covered at all the following items in the meet and confer: (1) timing for completion of the Plaintiffs' production and the specifics outstanding; (2) Mr. Smith deposition location and the Plaintiffs' position on the pragmatic point raised; (3) privilege log for Aon documents where Plaintiffs have asserted claims of privilege and withheld documents; (4) Plaintiffs' redaction of Aon documents and the status of production; (5) completion of privilege log for Plaintiffs' documents, including designation of employers; (6) update of privilege log for Plaintiffs' documents, in light of recent rolling productions, including addressing the many redacted documents.  We were expecting reports and resolution on all, but we simply did not reach those.

Toward the end of our call, we offered to run through a list of outstanding points, and we also noted that those would include items relating to your email and offshoots from your email.  Rather than trying to have you jot those down, we offered to send, and then sent, those in the email last night.  With respect to matters you have not discussed with your client yet, we are happy to begin a discussion with you, so that you have clarity on what to cover with your client.  If there are items in last night's communication (specifically in the offshoot category) that you need time to address, certainly we will appreciate that fact.  However, we have many items pending since January 25, and we want to have those concluded (just as you have so strongly argued to conclude the points in your January 30 email).

Finally, with regard to your statement that your January 30 email was not addressed until yesterday, we will direct you again (as we did in last evening's call) to the following, all of which were addressed on a rolling basis since receipt of your January 30 email, leading up to the February 20 Second Amended Responses and correspondence:

1. Response on reserves and production (February 2);
2. Response on Plaintiffs' argument that there has been any waiver of attorney/client privilege (February 6);
3. Numerous discussions regarding claims manuals searches (emails over the course of February);
4. Numerous discussions on claim files (emails over the course of February);
5. Production of the Atlantic witnesses for depositions.

To be very complete, Atlantic also followed up with a complete supplementation of the Interrogatory responses, served at the beginning of this week.

Dan, we are looking forward to smoothly progressing through a very detailed discovery process with you.  Please plan to pick up where we left off last evening on the outstanding January 25 items.  If there is a reason, not stated last night, that you cannot speak at the scheduled time today, please advise, and we will be happy to talk on Monday.

Finally, the subject of a letter on the Plaintiffs' full discovery responses, which we can now begin to address since we believe that we may have many of the Plaintiffs' documents (again a point to confirm with you), is an entirely different point.  We noted that would be provided separately.

Before we reach that issue, there are many outstanding items, as outlined here.

Best regards,
Toni Scott Reed

**Toni Scott Reed** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.4345 • Fax 214.659-4091 • Strasburger.com

---

**From:** Hayes, Daniel [mailto:dmh@msk.com]
**Sent:** Friday, February 24, 2017 12:16 AM
**To:** Crapster, Carla; Coyoca, Lucia; Shalamitski, Valentine
**Cc:** Keeley, Michael; Reed, Toni
**Subject:** RE: UCP v Atlantic - Additional Discovery Issues

Carla, at the end of our call today, when you said that you were still in the process of putting together a letter identifying all of the issues you wanted to discuss regarding Plaintiffs' discovery responses, we agreed that: (1) you would send me the letter when it was done, (2) we would have a reasonable opportunity to review it and consider whatever issues you raise, and (3) we would then schedule a mutually acceptable date and time for a call. We specifically confirmed that we would not be having a call tomorrow, because you had not finished the letter. Let's not do this piecemeal. As we discussed, please send us a letter identifying all of your concerns. After we have a chance to review that letter, we will be happy to have a call to discuss it. We afforded your office this courtesy. (I sent our email identifying the deficiencies in Atlantic's discovery responses on January 30. Your office did not respond until February 20, and we did not have our meet-and-confer call until today.)

Dan



**Daniel M. Hayes** | Partner, through his professional corporation
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP** | www.msk.com
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

---

**From:** Crapster, Carla [mailto:Carla.Crapster@strasburger.com]
**Sent:** Thursday, February 23, 2017 6:50 PM
**To:** Coyoca, Lucia; Shalamitski, Valentine; Hayes, Daniel
**Cc:** Keeley, Michael; Reed, Toni
**Subject:** UCP v Atlantic - Additional Discovery Issues

Dan,

We are in the process of drafting a letter raising several issues regarding your discovery responses, now that we have received most of the documents and are wrapping up review of the documents produced. We have, however, already identified the following issues that we would like to address with you:

1.      The AON privilege log includes entries dated July 17, 2014 (AONNBCU0003663 and AONNBCU0003666) that are being withheld on the grounds of Work Product and Settlement/Mediation Discussions. We do not understand the basis for such assertions on July 17, 2014. What anticipation of litigation or discussion of mediation or settlement of the claim existed on that date? Please explain the basis for your assertion of privilege on this date, particularly with these two individuals.  What work product was created?

2.      Our review of the documents has made clear to us that your responses to Interrogatory No. 18 and Requests for Production 10, 11, and 12 are not complete. There are references in the documents you have produced to a "corporate terrorism policy," but your responses to discovery do not address this.  Interrogatory No. 18 asks: "State whether YOU have sought insurance coverage for any losses related to the CLAIM from any other insurer and whether YOU had any other insurance in place during the time that DIG was being produced that covered losses RELATING to delays in production or the moving of a production from one place to another." In response, you stated: "Subject to and without waiving the foregoing preliminary statement and objections, Plaintiffs respond that there is no other insurance coverage for any losses related to the CLAIM, and the POLICY at issue is the only applicable POLICY that Plaintiffs are aware of at this time that provides coverage for the LOSS." This does not directly answer the question. You do not state whether you have *sought* insurance coverage under any other policy for the CLAIM. Please answer the question directly posed in the interrogatory. Your responses to Requests for Production Nos. 10, 11, and 12, which all relate to whether "YOU" sought insurance under any other policies, are similarly deficient. You state in response to those RFPs that "Atlantic's Policy is the only applicable policy that provides coverage for this claim." But this does not directly address whether there are any documents responsive to those RFPs.  Please produce the corporate terrorism policies and any related documents we have requested.

3.      Many of the documents you have produced to date are redacted, and we have no indication from you what the basis for these redactions are. We would like to see a privilege log identifying all redactions made. We are willing to reciprocate and provide an updated privilege log that identifies the basis for our redactions.

4.      Aside from the redaction issue, we assume that you will be producing an updated

privilege log soon, given the large volume of documents produced and the very small number of documents identified on your privilege log to date. And Valentine mentioned on our call today that you are still working on a privilege log. Please let us know when we can expect to receive the updated privilege log from you.

We look forward to discussing the points from our email of last Friday, along with these issues with you tomorrow at 2 p.m. Pacific Time.

Carla

---

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

---

# EXHIBIT 25



**MITCHELL SILBERBERG & KNUPP LLP**
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Daniel M. Hayes
Partner
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

March 28, 2017

**VIA E-MAIL ONLY [TONI.REED@STRASBURGER.COM]**

Toni Scott Reed
Strasburger & Price, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202-3794

Re:     <u>Universal Cable Productions LLC, et al. v. Atlantic Specialty Insurance Company</u>

Dear Toni:

Over the past five months, Plaintiffs have provided an abundant amount of financial information supporting their damage claim. Notwithstanding that voluminous production, during the ongoing meet and confer process, you have continued to request additional documents, and your position is constantly shifting as to what it is that you contend Atlantic needs in order to analyze Plaintiffs' damage claim. Moreover, you persist in requesting documents that already have been produced, and it appears you have not taken the time to analyze what already has been produced. Indeed, today, you again asked for documents that, as I had told you previously, were already produced on February 17, 2017. This letter summarizes our substantial efforts to provide you and your client with all of the information you might need to evaluate Plaintiffs' damage claim – and much more – and sets forth what additional efforts we will make. Upon completion of those additional efforts, the matter of Plaintiffs' financial document production will be closed.

**I.     Brief History**

On October 26, 2016, Plaintiffs produced the Extra Expense production bible which, as you know, contains an enormous amount of detailed financial data supporting Plaintiffs' extra expense claim. Following that production, Atlantic requested the underlying invoices for tens of thousands of entries in the production bible. As we explained in our January 23, 2017 letter, producing every single invoice is unreasonable (because, *inter alia*, it is wholly unnecessary) and would be unduly burdensome. That said, in the same letter, we told you that to the extent you continued to demand back up invoices, "we believe that the onus is on Atlantic to pay for all of the expenses associated with such a production" and asked that you "please confirm that Atlantic will pay the costs associated therewith and we will send you an anticipated budget." **You never responded to this request.**

Instead, during a meet-and-confer call on January 25, 2017, your office requested other information to help it evaluate Plaintiffs' claim. Specifically, Atlantic requested four additional categories of information:

8741929.1/46250-00001

11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone: (310) 312-2000  Fax: (310) 312-3100  Website: WWW.MSK.COM



Toni Scott Reed
March 28, 2017
Page 2

1.  Documentation showing the tax credits provided by the Croatia and New Mexico taxing
    authorities and the accounting reports or documents submitted to the taxing authorities to
    substantiate the credits;

2.  Documents showing a further breakdown of the extra expenses (as reflected in the Extra
    Expense production bible) by categories or synopsis, whether in Excel form or some type
    of a narrative;

3.  A list of abbreviations used in the Extra Expense production bible; and

4.  Documents provided to Plaintiffs' damages expert and relied upon by the expert to
    support Plaintiffs' damages calculation.

Plaintiffs produced the documents in Categories 1-3 on (or in some cases, before) February 25,
2017.  As we discussed today, the documents in Category 4 have been produced as well, all prior
to the delivery of Robert Wunderlich's expert report on March 17, 2017.

On February 23, 2017, you requested a new vague category of financial documents, which you
later would describe in a March 10, 2017 letter to me, as follows:  "Existing Documents (in
either Excel or narrative form) that discuss the differences between the initial budget for DIG
and the final incurred total costs and expenses for the DIG series, including but not limited to
those that discuss why there were differences in total costs and what made up the differences."
The next day, February 24, 2017, I noted in our telephone call that Plaintiffs produced
documents labeled UCP004076-UCP018002 on February 17, 2017 which contain, among other
information, numerous budgets and cost reports related to the *Dig* Production.  I asked that you
review the document production and let me know whether those documents satisfied your new
request.  I followed our conversation with an email that same date, confirming what I had told
you.

On March 6, 2017, in another telephone conversation, without any prompting from me, you said
that you did *not* want to have to review thousands of invoices, and then made your new request
for documents that show the variance between budgeted and actual costs *again*, without
confirming whether you had actually reviewed our production as I previously requested.

On March 10, 2017, you reversed your position on the "invoice" issue from a few days earlier.
In an effort to justify your new request for documents that show the variance between budgeted
and actual costs, you made the following assertion:  "Plaintiffs have lodged objections to
producing all invoices that are the backup for the damages claimed in the case."

On March 14, 2017, I responded to your March 10 letter, to set the record straight, and told you,
in pertinent part, the following information:

First, I told you that I had checked our February 17, 2014 production and confirmed that we did
indeed produce documents that show the variance between budgeted and actual costs, with
explanation, on that date.



Toni Scott Reed
March 28, 2017
Page 3

Second, I explained that your assertion that "Plaintiffs have lodged objections to producing all invoices that are the backup for the damages claimed in the case" was inaccurate, incomplete, and that it mischaracterized the history of our meet-and-confer on this issue (summarized above). I explained, once again, that we had told you repeatedly that the search for and retrieval of each and every invoice would be an expensive and burdensome process, but that to the extent you continued to demand back up invoices, we asked you confirm that Atlantic would pay the costs associated with collecting the invoices.  Again, **you never responded to our offer.**

With respect to your request for documents that show the variance between budgeted and actual costs, despite the numerous exchanges on this issue summarized above, you *again* raised your request in your March 17, 2017 letter, and asked for the Bates number of a specific document that we thought met your description.  We gave that to you today when we spoke – UCP015288-15309.  We told you that document was merely exemplary, and there were many more like it in our February 17 production.  Of course, it is your burden to analyze the documents that have been produced, and we are not required to do your work for you.

## II.     Final Efforts To Resolve Any Remaining Disputes Over The Production Of Financial Information

We stand by our objection that there is no reason Atlantic would need the underlying cost backup documentation.  The extensive and substantial financial data that Plaintiffs have already produced, together with Mr. Wunderlich's report, is more than enough for Atlantic to evaluate Plaintiffs' damage claim.  Nonetheless, and even though you have never responded to our offer to search for documents at Atlantic's expense, in order to put an end to the "invoice" debate, we have continued to try to find alternative reasonable ways to accommodate as much of your requests for additional documents as possible, and have located two sources of at least a substantial portion of the same:

1.  We collected certain information stored in an electronic database maintained by a third-party vendor called "Optimis."  The documents that we were able to collect consist of invoices and other backup documentation that were coded to the New Mexico and Croatia portions of the *Dig* production.  To be clear: this is a subset of the backup – it is not each and every invoice that was submitted in connection with the New Mexico and Croatia portions of the *Dig* production.  Archived hard copies – which may be more complete – are kept in storage and are not reasonably accessible.  Moreover, the information does not relate solely to extra expenses, because to cull those documents out from the entire database would be, as we have previously advised, too time consuming and burdensome to undertake if Atlantic is not going to pay for it.  (This is particularly true in light of the fact that Atlantic does not even need these invoices to evaluate the extra expenses.)

    We are preparing these documents for production to Atlantic tomorrow.

2.  We are (and have been) in contact with the Croatian production company involved in the Croatia portion of the *Dig* production – who we do not control – and have requested they search for and collect any *Dig* related invoices and other cost backup they have in their



Toni Scott Reed
March 28, 2017
Page 4

possession that is reasonably accessible, **at Plaintiffs' cost**, and deliver that documentation to us.  When we receive that documentation, we will review it and produce it to Atlantic as quickly as possible (subject, of course, to our identification of any that must be withheld on the basis of an objection).

\*\*\*

None of the documents we intend to produce in the above two categories are necessary to resolve Plaintiffs' damage claim, considering the substantial detailed financial reports and other data Plaintiffs have already produced.  On the contrary, we are producing these two additional categories of documents to eliminate the need to discuss Plaintiffs' production of financial documents any further.  After a limited production today (containing mostly duplicative information), the only documents that remain to be produced in response to the First Set of Requests for Production are the two categories of financial documents, described above.  If you think you require additional information concerning the documents Plaintiffs have produced, you are free to explore the same in your depositions.

We now consider the issue of Plaintiffs' production of financial information closed.

Regards,

Daniel M. Hayes
Partner of
MITCHELL SILBERBERG & KNUPP LLP

# EXHIBIT 26

*Universal Cable Productions LLC, et al. v. Atlantic Specialty Insurance Company*

Case No. 2:16-cv-04435-PA-MRW

Legend to Supplemental Privilege Log

| Name: | Title: |
|---|---|
| Abayomi, Olayemi | Esq.<br>Counsel, Legal Affairs, NBCUniversal |
| Abele, Joseph | Director, Production, NBCUniversal |
| Adams, Malika | Sr. Mgr. Global Casualty & Professional Risks, Comcast |
| Aguilar, Vicki | VP Production Services, NBCUniversal |
| Arana, Luis | Business Affairs, NBCUniversal |
| Araujo, Charlie | Corporate Security Director, NBCUniversal |
| Aronson, Robyn | Esq.<br>Sr. Production Counsel, NBCUniversal |
| Bako, Stanka | Production Accountant, Croatia, Embassy Films |
| Barrero, Nestor | Esq.<br>VP Employment Law, NBCUniversal |
| Batsell, Carter | Esq.<br>VP Business Affairs, NBCUniversal |
| Beller, Dorit | Esq.<br>Immigration Attorney, DIG, engaged services for DIG Production |
| Benasuly, Liat | Producer, DIG, engaged services for DIG Production |
| Berardi, Rosanna | Esq.<br><br>Managing Partner, Berardi Immigration Law, engaged services for DIG Production |
| Berman, Gail | Exec. Producer, DIG, engaged services for DIG Production |
| Binke, Mark | EVP, Production, NBCUniversal |
| Brady, Brian | VP Corporate Security, NBCUniversal |
| Burkins, Trevor | Communications Associate, NBCUniversal |
| Caceros, Nidia | VP Communications, NBCUniversal |
| Caprielian, Stephanie | VP, Labor Relations, NBCUniversal |
| Caraballo, Irene | Executive Assistant, NBCUniversal |
| Carlson, Aimee | VP Development, NBCUniversal |
| Carnessale, Juliana | Esq.<br>SVP Business Affairs, NBCUniversal |
| Cheeks, George | Esq.<br>EVP of Business Operations, NBCUniversal |
| Cleaver, Debbie | Production Accountant, NBCUniversal |
| Cohen, David | Esq.<br>EVP, Comcast |
| Crow, Bryan | Director, Development, Universal Cable Productions |
| Daar, Henry | EVP, AON |
| Dalusong, Brenda | Legal Coordinator, NBCUniversal |
| De Jesus, Danielle | Director, Current Programming, NBCUniversal |
| Dease, Joshua P. | Assistant Controller, NBCUniversal/Universal Cable Productions |
| DeLima, Brad | VP Casting, NBCUniversal |
| Diller, Steven | Producer, General Manager, Embassy Films |
| Djebro, Violeta | Consultant, Deloitte |
| Dolcemaschio, Steve | President of Comcast Entertainment Studios, NBCUniversal |
| Doliane, Tippy | HR Manager, NBCUniversal |
| Dominitz, Jennifer | Esq.<br>SVP Content & Production Risk, Legal, NBCUniversal |
| Donovan, Pat | VP, NBCUniversal |
| Doyle, Dana | Director TV Production, NBCUniversal |
| Dunleavy, Catherine | EVP and CFO Cable Entertainment, NBCUniversal |
| Fenske, Kate | SVP, Development, NBCUniversal |
| Footlik, Jay | Immigration Liaison, DIG, President/CEO, Global Policy Initiatives, engaged services for DIG Production |
| Ford, Kurt B | SVP Production Services, NBCUniversal |
| Freeman, Gidon | VP Government & Regulatory Affairs, NBCUniversal |
| Fung, Stacy | VP Current Programming, NBCUniversal |
| Garber, Andrea | Sr. Director, Risk Management, NBCUniversal |
| Garriga, Larissa | Esq.<br>Senior Counsel, Employment Law, NBCUniversal |
| Gersten, Amy | Page Program, NBCUniversal |
| Glover, Thomas A | VP FP&A and Production Finance, NBCUniversal |
| Gomez, Rafael C | Esq.<br>VP Business Affairs, NBCUniversal |

*Universal Cable Productions LLC, et al. v. Atlantic Specialty Insurance Company*

Case No. 2:16-cv-04435-PA-MRW

Legend to Supplemental Privilege Log

| Name: | Title: |
|---|---|
| Gorham, Keith | Esq.<br>SVP Labor Relations, NBCUniversal |
| Gray, Debbie | Admin. Assistant, NBCUniversal |
| Gray, Eric | CFO, NBCUniversal |
| Grieg, Ryan | Production Manager, DIG, engaged services for DIG Production |
| Grist, Yvonne | VISA Services Coordinator, Berardi Immigration Law, engaged services for DIG Production |
| Guarino, Jordanna | Office of President & Chief Content Officer, NBCUniversal |
| Hallock, Whitney | Development & Current Programming Coordinator, NBCUniversal |
| Hammer, Adrian | Manager, Tax Services, Deloitte Croatia |
| Hammer, Bonnie | Chairman, NBCUniversal |
| Hampson, Chris | Director of International News, NBCUniversal |
| Harris, Kimberley | Esq.<br>EVP, General Counsel, NBCUniversal |
| Hayde, Theresa | Health Services, NBCUniversal |
| Hoff, Tania | Esq.<br>VP Litigation, NBCUniversal |
| Hwang, Kimberly | Development Asst., Page, NBCUniversal |
| Ifkovic, Sonja | Director, Tax Department, Deloitte |
| Jabari, Lawahez | Producer, NBCUniversal |
| Kasdan, Sheldon | Esq.<br>VP and Sr. Legal Counsel, NBCUniversal |
| Kemble, Garrett | Manager of Programming; Director, Development, NBCUniversal |
| Kennedy, Penelope | Production Supervisor, NBCUniversal |
| Kizner, Deborah | Account Executive, AON |
| Kujundzic, Milena | AON (Croatia) |
| Lackman, Barbara | Esq.<br>VP Employment Law, NBCUniversal |
| Lichtman, James | Esq.<br>EVP General Counsel, NBCUniversal |
| Lynem, Lori | Esq.<br>VP Business Affairs, NBCUniversal |
| Maas, Rick | VP Production Services Lighting Operations, NBCUniversal |
| MacLellan, Kevin | Chairman, NBCUniversal International |
| Mancia, Marilu | Executive Assistant, NBCUniversal |
| Marin, Tatjana | AON (Croatia) |
| Markus, BJ | VP, Production Finance, NBCUniversal |
| Matthys, Philip | Esq.<br>SVP, Business Affairs, NBCUniversal |
| McCarthy, Tom | Global Chief Security Officer/SVP, NBCUniversal |
| McCumber, Chris | President, USA Network, NBCUniversal |
| Miller,Stephan | Immigration Liaison, DIG, Keshet TV |
| Milutin, Erika | Executive Producer & Partner, Embassy Films Croatia |
| Molloy, Jordana | Executive Assistant, Client Solutions, NBCUniversal |
| Mong, Adrienne | Director of International News, NBCUniversal |
| Mu, Bryan | VP, Research and Analytics, NBCUniversal |
| Mullins, Catherine | Personal Assistant and Projects Coordinator, NBCUniversal |
| Navon, Adi | Travel Coordinator, DIG, Keshet TV |
| Nesbitt, Jennifer | Executive Administrative Assistant, NBCUniversal |
| Nisan, Askar | Head of Bookkeeping DIG Israel, Keshet TV |
| Noordeloos, Erin | Director Of International Security and Crisis Mgmt., NBCUniversal |
| O'Driscoll, Lucy | Global Indirect Tax Advisory Manager, NBCUniversal |
| O'Leary, Brian | Esq.<br>Senior VP & Tax Counsel, NBCUniversal |
| Olmstead, Dawn | EVP, Development, NBCUniversal |
| O'Neill, Steven | EVP, Scripted Casting, NBCUniversal |
| Palotay, Marc | Esq.<br>President and General Tax Counsel, NBCUniversal |
| Patton, Brian | VP, Security, NBCUniversal |
| Paul, David | Esq.<br>VP, Head of Legal Affairs, NBCUniversal/Universal Cable Productions |
| Potter, Paige | Administrative Assistant, NBCUniversal |
| Rand, Ellen | VP, Current Programming, NBCUniversal |

*Universal Cable Productions LLC, et al. v. Atlantic Specialty Insurance Company*

Case No. 2:16-cv-04435-PA-MRW

Legend to Supplemental Privilege Log

| Name: | Title: |
|---|---|
| Rauch, Melissa A | VP, Business Development & Asset Management, NBCUniversal |
| Richmond, Randi | SVP Production, NBCUniversal |
| Rivas, Eduardo | Esq. <br> Sr. Counsel Legal Affairs, NBCUniversal |
| Roberts, Beth | Esq. <br> EVP, Business Operations, NBCUniversal |
| Roberts, Randi | VP Compliance, NBCUniversal |
| Rodine, Denise | Executive Director, Human Resources, NBCUniversal |
| Rothstein, Richard M | EVP Current Programming, NBCUniversal |
| Schmidt, Helena | Senior Manager, Deloitte Croatia |
| Schneider, Alicen | SVP, Music Creative, NBCUniversal |
| Scher, Margo | VP, Aon |
| Selinger, Meryle | Production Accountant, NBCUniversal |
| Sharood, Claire | Manager, Original Programming, NBCUniversal |
| Shields, Cory | EVP, Communications, NBCUniversal |
| Simanello, Judy | Manager, Post Production, NBCUniversal |
| Simon, Sharon | Recruiter, NBCUniversal |
| Sluchan, Michael | VP, Original Scripted Programming, NBCUniversal |
| Smith, Hilary | SVP Corporate Communications, NBCUniversal |
| Smith, John | VP, New Programming, NBCUniversal |
| Smith, Stephen | Director of International Security, NBCUniversal |
| Smotkin, Rick | SVP of Government Affairs, Comcast |
| St.Pierre, Tracy | VP, Communications, NBCUniversal |
| Stevenson, Barbie | VP Human Resources, NBCUniversal |
| Tancak, Lynn | Publicity Intern, NBCUniversal |
| Tofield, Geoff | Director, New Partnership, NBCUniversal |
| Valtier, Jonathan | Director, Corporate Sourcing, NBCUniversal |
| Vorkapic, Petra | Consultant, Deloitte, Croatia |
| Vukusic, Daniela | Senior Consultant, Deloitte, Croatia |
| Wachtel, Jeff | Chief Content Officer, NBCUniversal; President, Universal Cable Productions |
| Wallace, John | President of Operations, NBCUniversal |
| Weiss, Susan | SVP, AON |
| Williams, Curt | VP Production Services, NBCUniversal |
| Williams, Curtis | Assistant Production, NBCUniversal |
| Williamson, Shanda | Communications Associate, NBCUniversal |
| Windholz, Maya | Esq. <br> SVP and Chief Counsel, NBCUniversal |
| Winemaker, Mark | Co-executive Producer, DIG, engaged services for DIG Production |
| Winnie, Richard | VP, Post Production, NBCUniversal |
| Wray, Michael | Producer, DIG, engaged services for DIG Production |
| Yass, Warren | Coordinator to EVP Production, Universal Cable Production |
| Zulj, Ivan | Global Client Network Manager, AON |
| For purposes of this privilege log, the term "NBCUniversal" means and refers to NBCUniversal Media, LLC, Universal Cable Productions LLC, and all of their parent, subsidiary, and affiliated entities. All persons not otherwise identified as employed by NBCUniversal acted as an agent or consultant or was specially employed by NBCUniversal in connection with DIG. | |

# EXHIBIT 27

| From: | Keeley, Michael |
|---|---|
| To: | Coyoca, Lucia |
| Cc: | Reed, Toni; Crapster, Carla; Shalamitski, Valentine; Hayes, Daniel |
| Subject: | RE: UCP et al v. Atlantic Specialty - Entertainment Claims Handling Manual |
| Date: | Monday, February 06, 2017 8:54:19 AM |
| Attachments: | image002.png |
| | image005.png |
| | image006.png |

Lucia:

In response to your e-mail from Saturday, as indicated previously, the manual Peter Williams testified about was no longer in use when the Dig claim was submitted.  And, we have already produced the only guidelines or manuals that were in place during the period this claim was brought.   Nevertheless, our client has redoubled its efforts to see if it can locate the outdated manual.

Regarding the two privilege logs that have been produced, while the privilege log produced by the plaintiffs does list positions for the persons identified, it does not identify the employer of each person, which is particularly relevant given that there are two plaintiffs, a parent company, numerous affiliates, a broker and Comcast involved in this claim and the communications involving it. The Plaintiffs appear to be asserting privilege, regardless of the employer of the individual involved.  As a result, it is necessary for us to understand exactly who each person was working for, and we therefore ask that you update the privilege log with the specific employers of each person. As to the Aon privilege log, we believe the rules require you to identify the people listed on the log, rather than requiring us to piece together from various sources who each person is and whether they are an attorney. We reiterate our request that you update this log and provide us one that identifies the employer and title of each person and that states whether each person is an attorney.

Finally, as to the deposition scheduling, we are not willing to pin down dates and witnesses with certainty at this point while we are still waiting on additional documents. It is not clear how large the volume will continue to be, considering the time it is taking to complete the review.  Additionally, just since the last telephone call about the anticipated schedule of production, you have advised of delays and the need for more time to complete the production.  During that last call, our repeated message was that we need to have all documents and sufficient time to review those and address issues of privilege before we can proceed to deposition testimony.  We are hopeful that all documents will be produced by February 14, as you have stated. But as you also acknowledge, we are also waiting on redacted documents from Aon, and we currently have no assurances as to when these will be produced. And, it is not clear that documents that have been withheld on the basis of privilege have been properly withheld.  We are willing to be cooperative on the dates, and it is possible that some of the dates you have identified will still work. But we cannot commit to them until we are sure we will have all the documents before those dates and that we will

have received them far enough in advance to give us time to prepare for the depositions. It appears to us that a February 21 start date will be too early in that context.  We look forward to receiving further documents from you soon, and we will be prepared to finalize deposition dates as soon as that occurs.

Michael Keeley
Strasburger & Price, LLP
901 Main Street, Suite 6000
Dallas, TX  75202-3794
Office: 214.651.4718
Fax: 214.659.4121
www.strasburger.com
*Admitted in Texas, Arkansas,*
*New Mexico, and New York*
**We've moved! Please note our new suite number.



**From:** Coyoca, Lucia [mailto:lec@msk.com]
**Sent:** Saturday, February 04, 2017 11:18 AM
**To:** Keeley, Michael
**Cc:** Reed, Toni; Crapster, Carla; Shalamitski, Valentine; Hayes, Daniel
**Subject:** RE: UCP et al v. Atlantic Specialty - Entertainment Claims Handling Manual

Mike,
We disagree with your characterizations of Williams' deposition testimony and our request for production of the manual he testified about, but look forward to receiving your substantive response and production of the manual (and any versions thereof).

Your sudden about face as to the scheduling of depositions for UCP/NEP witnesses and your refusal to proceed on dates your colleagues previously indicated were available is unreasonable.  Moreover, you have mischaracterized the parties' discussions regarding UCP/NEP's ongoing document production.  UCP/NEP went to great lengths to reserve dates with these witnesses during a very busy production season, when they had limited availability.  Your failure to confirm dates as they are offered may very well jeopardize the parties' ability to complete discovery before the cut-off date.  We have advised the witnesses that their depositions will not be proceeding on the dates Atlantic previously confirmed or the dates UCP/NEP previously offered, but we make no guarantees as to the witnesses' future availability.

Atlantic's position is particularly untenable in light of the parties' prior attempts to

coordinate deposition scheduling and document production.  Specifically:

1. Atlantic did not serve any depositions notices until Friday, January 6. UCP/NEP promptly provided proposed dates three business days later on January 11.  (In contrast, UCP/NEP served deposition notices on December 13, 2016, and Atlantic did not provide any potential dates for more than two weeks.)  We told you that the dates for the witnesses were *currently* then available, but asked that you advise us promptly if the dates were acceptable so that we could confirm them with the witnesses.  Rather than accepting any of the proffered dates, on January 13, Atlantic refused all of them, instead demanding dates in early February, which were already booked with the depositions of Atlantic's witnesses. (Atlantic also demanded that we produce all witnesses on consecutive dates.)

2. As early as January 12, we informed you that UCP/NEP's rolling document productions were anticipated to occur into February.

3. On January 23, following the Court's order continuing the pre-trial and trial dates, we once again asked Atlantic to consider the dates previously proposed, indicating that if they were acceptable to Atlantic, we would ascertain whether the witnesses were still available on those dates. Specifically, the deposition dates we proposed were:
   a. Randi Richmond – February 15, 2017
   b. Andrea Garber – February 21, 2017
   c. Mark Binke – February 24, 2017
   d. Kurt Ford – March 2, 2017

4. On January 25, the parties met and conferred regarding discovery.  During that conference, Atlantic **confirmed** its availability for the above dates, subject to all documents being produced by a date certain so that Atlantic would have sufficient time to prepare for the depositions. Specifically, Toni Reed asked us to confirm that UCP/NEP would complete its rolling productions by no later than February 8, one week before the first deposition of Randi Richmond on February 15 (if that date remained available).

5. On January 31, we advised Atlantic that the February 15 date for Randi Richmond was no longer available, but that her deposition could proceed on February 21.  We also indicated that we anticipated UCP/NEP's production of documents would be complete by February 14, 2017, one week prior to the first deposition date on February 21.  We specifically told you:  "Given that the first deposition of a UCP/NEP witness will not be until February 21, 2017, we believe that Atlantic will have ample time to prepare for depositions. If you disagree, please advise, and we will see if Randi Richmond is available on a later date."  Thus, we proposed the following overall schedule:
   a. Randi Richmond – February 21, 2017
   b. Mark Binke – February 24, 2017

   c.   Andrea Garber – March 2, 2017
   d.   Kurt Ford – March 8, 2017
   e.   Jeff Wachtel – March 14, 2017

6.   The February 21, February 24, and March 2 dates are the *same* dates Atlantic
     had previously indicated on January 25 were available, when Atlantic
     requested that we confirm that all documents would be produced no later than
     one week prior to the first deposition.  Moreover, throughout the process, we
     have repeatedly confirmed that UCP/NEP would produce documents on a
     rolling basis, and have done so (the last rolling production was made
     yesterday).

Thus, UCP/NEP are in full compliance with their discovery obligations.  Your changed
position rejecting the deposition scheduling which we have been working so hard to
establish is troubling to say the least.  Atlantic already has the key documents in the
case and UCP/NEP has already produced over 1,000 pages of documents not
including the key Extra Expense Production Claim Bible which was produced back in
October.  Thus, your proffered excuse that Atlantic cannot even schedule any
depositions until all documents have been produced is not credible.  If and when
Atlantic does request alternative available dates for the depositions of UCP/NEP
witnesses, we will attempt to ascertain them but once again caution that we may not
be able to make all witnesses available within the tight discovery time-frame
remaining.

With respect to UCP/NEP's privilege log, you are incorrect – the UCP/NEP log does
identify the titles of all individuals listed, including whether she/he is an attorney, and
all of the listed individuals are employed by NBCUniversal/UCP-related entities.  With
respect to the Aon privilege log, as we previously advised, we believe Atlantic
already knows who many of them are but to the extent it does not, that information
could be obtained during the deposition of Susan Weiss.  Moreover, further
information as to certain of these individuals (including identifying who is a lawyer) is
contained in UCP/NEP's privilege log.  Each of the individuals that are listed work
either for Aon or an NBCUniversal affiliated entity.  If you have questions about any
specific individual, please let us know and we can look into it further.  Finally, as to
the Aon documents, we will follow up with Foley & Lardner to determine if the
additional documents have been produced, but we remind you that we do not
represent Aon, and do not control their document production.

image001

**Lucia E. Coyoca | Partner, through her professional corporation**
T: 310.312.3250 | lec@msk.com
**Mitchell Silberberg & Knupp LLP | www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Keeley, Michael [mailto:Michael.Keeley@strasburger.com]
**Sent:** Friday, February 03, 2017 7:08 AM
**To:** Coyoca, Lucia; Shalamitski, Valentine; Hayes, Daniel
**Cc:** Reed, Toni; Crapster, Carla
**Subject:** UCP et al v. Atlantic Specialty - Entertainment Claims Handling Manual

Lucia, as you know, Atlantic produced two documents responsive to your clients' request for claim manuals. We believe what we produced is all that was in existence as of July 30, 2014. As you know, Mr. Williams testified that he could not recall the name or title of the document he drafted in some seven years ago in 2010, and he could also could not recall how long it was. Only upon your insistence did he try to provide an estimate of the length or the name. While he did testify that there was "a" manual in existence when he left, he did not say it was the "same" manual, and it appears it was not. I have since probed this issue further, and Mr. Williams has indicated that after he moved out of claims, systems were centralized and what he was referring to could have been incorporated into another document, that any manual he wrote would have been updated years ago, and that it is quite likely no copy exists but has been replaced by now. Nevertheless, we will ask our client to be certain there are no other documents responsive to your clients' request. On a related note, your continued editorial comments on disputed issues such as this are not helpful.

To address other pending items, we once again object to the fact that your client still has not produced all documents response to Atlantic's Request for Production. As you know, following an agreed upon extension of your clients' deadline to produce documents, your clients were required to produce responsive documents by December 27, 2016. It is now over one month later, and your client still has not completed production. The most recent update we received this week indicated that you do not believe production will be completed until February 14, at the earliest. Moreover, you have so far refused to provide a detailed privilege log, as required by the Federal Rules. Your privilege logs, for both the Aon documents and your client's production, do not appear to specify each attorney involved (by noting each by title), and do not identify the position and employer of each of the individuals who are named. As a result, it is not possible for Atlantic to analyze the claims of privilege you have made or to be in a position to discuss those with you. Because we lack documents and necessary information, it is impossible for Atlantic to determine what depositions are appropriate and to fully prepare for those it believes should be taken. Thus, at this point Atlantic is unable to confirm any of the dates you have provided. Instead, we will inform you of the depositions we want, and when, once your production is complete. In the meantime, please let us know if you will voluntarily supplement the privilege logs you have provided for both your clients and Aon. Also, please confirm that all responsive Aon documents have been produced. In that regard, we believe that redacted documents noted on the Aon privilege log, previously discussed, are still outstanding. Finally, Atlantic reserves all of its rights on these issues.

Michael Keeley

Strasburger & Price, LLP
901 Main Street, Suite 6000
Dallas, TX  75202-3794
Office: 214.651.4718
Fax: 214.659.4121
www.strasburger.com
*Admitted in Texas, Arkansas,*
*New Mexico, and New York*
**We've moved! Please note our new new suite number.



*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

# EXHIBIT 28



**MITCHELL SILBERBERG & KNUPP LLP**
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Lucia E. Coyoca
A Professional Corporation
(310) 312-3250 Phone
(310) 231-8444 Fax
lec@msk.com

January 23, 2017

**VIA E-MAIL**

Michael Keeley, Esq.
John R. Riddle, Esq.
Carla C. Crapster, Esq.
Strasburger & Price, LLP
901 Main Street, Suite 6000
Dallas, TX  75202

Marc J. Shrake, Esq.
Anderson, McPharlin & Conners LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, CA  90017-3623

Re:     *Universal Cable Productions LLC, et al. v. Atlantic Specialty Insurance Company*,
          <u>CD Cal. Case No. CV16-4435 PA (MRWx)</u>

Dear Counsel:

This responds to Ms. Crapster's January 13 and 23, 2017 letters, inquiring about certain
discovery issues.  I understand that my colleague, Val Shalamitski, discussed some of these
issues with Ms. Crapster during phone calls on January 17 as part of preparing the Joint
Stipulation and Application to Modify Case Schedule.  All of the issues are also addressed
below.

**Depositions**:  In light of the Court's order continuing the trial date, we believe that the
scheduling issues may be somewhat alleviated.  However, with or without a new trial date, we
would not be amenable to scheduling the depositions Atlantic has noticed during the first two
weeks in February.  As we remind you, UCP/NEP served four notices of deposition on
December 13, 2016, for deposition dates in mid-to-late January.  It took Atlantic more than two
weeks to respond with alternative proposed dates, and *none* of them were in January.  Instead, all
of your proffered dates were in early February during the first two weeks of the month.  Had you
provided January deposition dates for your witnesses in a timely manner, we might have been
able to provide earlier dates for UCP/NEP witnesses, but given that you did not do so, those first
two weeks are now booked with depositions for four Atlantic witnesses (two of which involve
travel to Minnesota).  We intend to move forward with the depositions of the Atlantic witnesses
on the dates that have been confirmed.

As to Atlantic's ten deposition notices of UCP/NEP's and third party witnesses, given the delay
in confirming the dates we offered on January 11, 2017, we do not know if those dates remain
available for the witnesses.  As we advised in my January 11 email when we offered the

8559647.1

11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone: (310) 312-2000  Fax: (310) 312-3100  Website: WWW.MSK.COM



Strasburger & Price, LLP
January 23, 2017
Page 2

proposed dates: "These dates are *currently* available, let me know if they are acceptable. I'd like to confirm them as soon as possible as their schedules book up pretty quickly" (italics in original). We do know that Jeff Wachtel is no longer available on February 28, 2017, and we are checking on alternative dates. In light of the continued trial date, we request that you reconsider the dates that we previously offered as to Randi Richmond (February 15, 2017); Andrea Garber (February 21, 2017), Mark Binke (February 24, 2017) and Kurt Ford (March 2, 2017). If you are available to proceed on any of these dates, we will check if they remain available. If you are not, we will provide alternative dates.

As to UCP/NEP's corporate designees, no single individual can possibly address the 49 topics Atlantic identified, and many of the topics are improper. We will provide our objections and address the designee depositions separately, but for now, please be advised that the witnesses for whom we proposed the above dates are expected to address the majority of these topics. Thus, Atlantic should be prepared to ask all questions at the depositions of these witnesses, whether in their individual or designee capacity.

As to the remaining depositions:

- Your letter does not mention the deposition of Thomas McCarthy. Is Atlantic foregoing this deposition?
- As to Stephen Smith, please advise whether you will proceed with his deposition in London. Alternatively, we can look into arranging a videoconference deposition. Once we know what option you prefer, we will check on available dates.
- As to Susan Weiss, she is an Aon employee and her schedule is not in our control. As we previously agreed, however, we will help coordinate the scheduling of her deposition, and we are following up with Aon about her availability.
- As to Malika Adams, we have not received a deposition notice for her. Also, Ms. Adams was employed by Comcast, not Plaintiffs or NBCUniversal Media LLC. However, her last day with the company was last week. We will reach out to Ms. Adams to see if she is willing to appear at deposition without the need for a subpoena and get back to you.

**Aon privilege log**: Enclosed you will find the Aon privilege log.

**"Documents relating to claimed damages:"** To clarify, we understand your reference to be to the underlying invoices for tens of thousands of entries in the detailed Excel we produced on October 26, 2016. As we already have discussed several times, Atlantic's demand that Plaintiffs produce each and every underlying invoice is unreasonable and unduly burdensome. And as we previously advised, it would take several months and unacceptable normal business interruption to comply with this request. There would be extraordinary costs incurred, particularly because as to expenses incurred in Croatia, most of those invoices are located in Croatia. Temporary employees would need to be hired to search files to locate such documents, which would then need to be shipped to Los Angeles to prepare them for production. Even as to documents located



Strasburger & Price, LLP
January 23, 2017
Page 3

in California, additional temporary personnel would need to be hired to search for and prepare such documents for production.

The substantial burden and expense of collecting, reviewing and producing these invoices significantly outweighs the marginal benefits that Atlantic stands to gain. Atlantic contends it needs these invoices for the following three reasons: (1) to decipher certain abbreviations found in the production bible produced by Plaintiffs, which Atlantic's consultant claims not to understand; (2) to confirm the expenses reflected in the extra expense production bible were actually incurred; and, (3) to analyze whether the expenses were in fact extra costs to the production which would not have been incurred "but for" relocation of the production. As set forth below, these claimed benefits are either dubious or can be adequately addressed through less burdensome and cost-intensive means:

First, we find it odd that a consultant with an entertainment-related background would have so much difficulty understanding basic industry terms and abbreviations, such as the ones found in the production bible. However, to the extent Atlantic or its consultant do not understand specific abbreviations or line items from the production bible, please provide us with a list of questioned entries (including a reference to the specific line item number and the worksheet in which it appears), and we will endeavor to provide an explanation (assuming the request and the list are reasonable).

Second, as to confirming that the expenses were actually incurred, two separate governments have already done so. Both Croatia and New Mexico authorized payment of a tax credit based on the expenditures incurred in their jurisdictions. Before such tax credits are authorized, the expenses are reviewed by independent accountants and are verified as legitimately incurred. Plaintiffs are also willing to investigate whether they can produce the Croatia and New Mexico reviews of the expenses which were completed in order to determine whether the expenses qualified for production tax credits, under the tax credit programs of those two jurisdictions. We would also be happy to provide a sworn verification that the expenses reflected in the extra expense production bible are an accurate and correct record of Plaintiffs' accounting records for the production.

Third, as to determining whether these were in fact "extra" expenses, we do not understand (and you have not explained) how the individual invoices will assist in that analysis. As we have previously indicated, we believe the most efficient way for Atlantic to procure this information is to take the depositions of the production executives involved in the production. In addition, and as we suggested during our meet and confer discussion, Atlantic's consultant can select expenses in each category (a reasonable number to be agreed on) which he would like to review in more detail, in order to determine whether they are in fact "extra." Plaintiffs are willing to provide further documentation as to those test selections, so long as the parties are able to agree on a reasonable number.

To the extent that Atlantic rejects all of our above proposals and continues to insist on the production of each invoice, we believe that the onus is on Atlantic to pay for all of the expenses associated with such a production. Accordingly, please confirm that Atlantic will pay the costs associated therewith and we will send you an anticipated budget.

msk

Strasburger & Price, LLP
January 23, 2017
Page 4

**Document production**:  Our review process is ongoing.  UCP/NEP are undertaking all reasonable efforts and have a dedicated review team working diligently to complete the review. Based on our current review pace, we anticipate producing additional documents on Thursday, January 26.  However, based on the volume of documents to review, we believe that Plaintiffs' rolling document productions will continue into early February.  As to a privilege log for Plaintiffs' initial production, we anticipate providing that to you by Wednesday, January 25.

To the extent Atlantic is not satisfied with the pace of this production, we remind you that we served Atlantic with our document requests on October 5, 2016.  We did not receive *any* responsive documents from Atlantic when its response was served and the documents were due on November 11, 2016 (inclusive of a time extension we agreed to grant).  Indeed, Atlantic's purportedly full production was not completed until December 16, 2016, five weeks after the initial response and documents were due.

In turn, Atlantic chose to serve its document requests on UCP/NEP on November 17, 2016, with the response due December 27, 2016 (inclusive of a time extension), with multiple intervening holidays.  Five weeks from that date is January 31, 2017, and we are well in conformance with our discovery obligations.

Very truly yours,

Lucia E. Coyoca
A Professional Corporation of
MITCHELL SILBERBERG & KNUPP LLP

Enclosure

cc:     Val Shalamitski, Esq.