MARC J. SHRAKE (SBN 219331)
  mjs@amclaw.com
ANDERSON, McPHARLIN & CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623
Telephone: (213) 236-1691
Facsimile: (213) 622-7594

MICHAEL KEELEY *(Pro Hac Vice)*
  michael.keeley@strasburger.com
TONI SCOTT REED *(Pro Hac Vice)*
  toni.reed@strasburger.com
CARLA C. CRAPSTER *(Pro Hac Vice)*
  carla.crapster@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

Attorneys for Defendant
Atlantic Specialty Insurance Company

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | CASE NO. 2:16-cv-4435-PA-MRW<br><br>**DECLARATION OF CARLA C. CRAPSTER IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**<br><br>Time:    9:30 a.m.<br>Date:    April 26, 2017<br>Judge:   Hon. Michael R. Wilner<br><br>File Date:          June 20, 2016<br>Discovery Cutoff:   May 12, 2017<br>Pre-Trial Conf.:    June 16, 2017<br>Trial Date :        July 25, 2017 |

**DECLARATION OF CARLA C. CRAPSTER**

# DECLARATION OF CARLA C. CRAPSTER

I, Carla C. Crapster, declare:

1. I am an attorney duly licensed to practice law in the State of Texas and admitted *pro hac vice* before this Court. I am a partner in the law firm of Strasburger & Price LLP, attorneys of record for the defendant Atlantic Specialty Insurance Company ("Atlantic") in the above-captioned matter. I make this declaration in support of Atlantic's opposition to the Plaintiffs' Motion To Compel Discovery. I have personal knowledge of the following facts and, if called and sworn as a witness, could and would competently testify thereto.

2. A true and correct copy of the affidavit of Pamela Johnson is attached hereto as Exhibit 30.

3. To respond to the first set of requests for production the plaintiffs served in connection with this case, Atlantic's Informational Technology department ran a search that took approximately 30 days to complete for key search terms that would bring documents relevant to the case. This search looked for documents created between July 2013 and the date the search was run: October 2016. One of the search terms was the word "war." The search resulted in approximately 36,000 documents, which Atlantic's counsel then received and carefully reviewed to identify the documents responsive to the requests for production and the documents that were privileged or protected by the work-product doctrine. This process took six attorneys several weeks to complete.

4. On March 17, 2017, I sent an e-mail at 6:08 p.m. Central Time to plaintiffs' counsel that offered to conduct the search for the word "war" between January 2010 and July 2013, if the plaintiffs would bear the cost of conducting this search and having attorneys review the documents received as a result of that search. A true and correct copy of this e-mail is attached as Exhibit 31.

2

**DECLARATION OF CARLA C. CRAPSTER IN SUPPORT OF
JOINT STIPULATION RE MOTION TO COMPEL DISCOVERY**

5. The plaintiffs never responded to the offer made in the March 17th e-mail to conduct the search at the plaintiffs' expense.

6. The plaintiffs suggested in a letter dated January 23, 2017 that it would be unreasonably burdensome to produce all the invoices that support the plaintiffs' claim of damages in this case. They also stated that if Atlantic continued to demand these invoices, they requested that Atlantic pay for all expenses associated with that production.

7. Atlantic has already produced two claim files in connection with other claims that involved political protests and rioting. Atlantic's witnesses referenced these claims in their deposition, but the plaintiffs had not previously served any requests for production that would seek documents related to these claims. Atlantic also believed that these claim files were wholly irrelevant, and the war exclusion was not a part of the coverage decision in either claim. Nonetheless, to avoid a discovery dispute Atlantic provided the claim files for both these claims.

8. Atlantic produced on March 16, 2017, a document that summarized all the claims that Atlantic had paid to the plaintiffs' parent, NBCUniversal Media, LLC ("NBCU") over the course of the relationship between Atlantic and NBCU. Atlantic provided this document to appease the plaintiffs' request for all documents showing the "profitability" of the relationship that the plaintiffs had requested. Atlantic did not believe it needed to produce this information, however, as it contained confidential information (including Atlantic's settlement valuation of this case, which was redacted), and was irrelevant to this dispute. Moreover, the plaintiffs obviously already know how much they received in payments from Atlantic over the course of the parties' relationship, and how much they paid in premiums.

9. Atlantic asked the plaintiffs to present their discovery issues to the

3

**DECLARATION OF CARLA C. CRAPSTER IN SUPPORT OF**
**JOINT STIPULATION RE MOTION TO COMPEL DISCOVERY**

Court along with Atlantic's own disputes that the parties have been unable to resolve through extensive meet-and-confers. Atlantic believed that the plaintiffs were delaying in doing so by improperly contending that *more* meet-and-confers on Atlantic's issues were necessary, which Atlantic disagreed with. Atlantic therefore requested that all the parties' issues be presented together, since both were ripe to be presented to the magistrate, and it would streamline the process for the Court. The plaintiffs would not agree. Atlantic still intends to use the Court's informal procedure for its own issues.

10. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 3, 2017, at Dallas, Texas.

Carla C. Crapster

4
**DECLARATION OF CARLA C. CRAPSTER IN SUPPORT OF
JOINT STIPULATION RE MOTION TO COMPEL DISCOVERY**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liabilitkeey company,<br><br>    Plaintiffs,<br><br>    vs.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,<br><br>    Defendant. | Case No. 2:16-cv-04435-PA-MRW<br><br>**JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY**<br><br>Time:   9:30 a.m.<br>Date:   April 26, 2017<br>Judge:  Hon. Michael R. Wilner<br><br>File Date:          June 20, 2016<br>Discovery Cutoff:   May 12, 2017<br>Pre-Trial Conf.:    June 16, 2017<br>Trial Date :        July 25, 2017 |

# DEFENDANT'S EXHIBIT 30
# Affidavit of Pamela Johnson

## AFFIDAVIT OF PAMELA JOHNSON

STATE OF MINNESOTA § 
§ 
COUNTY OF RAMSEY §

Before me, the undersigned notary public in and for the State of Minnesota, on this day personally appeared Pamela Johnson, known to me to be the person whose name is subscribed hereto, and who after being duly sworn by me, did upon her oath state as follows:

1. My name is Pamela Johnson. I am over twenty-one years of age, have never been convicted of a felony or crime of moral turpitude, and am otherwise competent to make this affidavit.

2. I was previously the Assistant Vice President of Entertainment Claims for Atlantic Specialty Insurance Company ("Atlantic"). I was working for Atlantic during 2014, when a claim was submitted by NBCUniversal Media, LLC ("NBCU"), arising out of a television show called *Dig* that NBCU was filing in Israel (the "Claim").

3. In my capacity as the Assistant Vice President of Entertainment Claims for Atlantic, I was involved in handling the Claim. It was submitted in writing by a notice dated July 15, 2014. NBCU made a claim, under the insurance policy Atlantic had issued, for extra expenses allegedly incurred as the result of moving the filming of *Dig* out of Israel due to the Israeli-Palestinian conflict that occurred during the summer of 2014.

4. As a part of my communications with NBCU's representatives (Susan Garber and Andrea Weiss), those representatives were pressuring Atlantic to reach a coverage decision very quickly in connection with the *Dig* claim. I conducted research and analysis of the claim, and I, on behalf of Atlantic, had serious concerns that coverage did not apply because of various exclusions relating to war that were a part of the policy.

5. In order to be responsive to the urgency that NBCU expressed, I conveyed those concerns that the exclusions applied, on behalf of Atlantic, to the NBCU representatives in a telephone call on July 17, 2014. My report was made in order to communicate with NBCU as soon as I had developed concerns about the application of the exclusions. The position I stated was based upon my conclusions that I reached as a result of my research and analysis of the claim. I did not state a final coverage position for Atlantic, as that would be communicated separately and in writing. The NBCU representatives were disappointed to receive my report and disagreed with it.

6. The NBCU representatives then asked whether Atlantic had already obtained an outside legal coverage opinion on the claim, and inquired whether there would be an opinion obtained. The first mention of a legal opinion came from NBCU's representatives.

7. I shared the comments from NBCU internally at Atlantic, and Atlantic reached the decision that it would take that additional step to seek a coverage opinion, separate from the analysis I had performed. I received a coverage opinion from outside counsel on July 21, 2014.

8. Atlantic felt confident in its position, based upon my analysis, that the war exclusions applied. Atlantic did not obtain the coverage opinion because it was unsure of

its analysis but instead to be as thorough as possible by satisfying NBCU's request that it obtain the coverage opinion.

9. I discussed the claim again by telephone with NBCU's representatives on July 22, 2014, where I stated the conclusion of Atlantic that the war exclusions barred coverage for the claim. I provided the actual denial of the claim by letter dated July 28, 2014, to NBCU. I described in that letter the prior discussions that had occurred about potential application of the war exclusions.

10. After Atlantic provided the July 28, 2014 letter to NBCU, representatives of NBCU demanded to know who Atlantic had hired to provide a legal opinion on the *Dig* claim. I provided that factual answer.

11. I was the employee at Atlantic who directly contacted attorneys Leon Gladstone and Gene Weisberg and asked them to prepare a coverage opinion on whether coverage applied to the *Dig* claim. All of the communications between Atlantic and Mr. Weisberg and Mr. Gladstone were confidential communications between Atlantic and its outside counsel made in confidence and were carried out by a means that did not disclose the information to a third person who was not present to further the interest of Atlantic in the consultation. In response to Atlantic's request, Mr. Gladstone and Mr. Weisberg provided confidential legal advice in regards to the issue that Atlantic had raised. All of Atlantic's communications with Mr. Gladstone and Mr. Weisberg or their employees that concerned the *Dig* claim were made for the purpose of seeking and obtaining legal advice or otherwise concerned that legal advice.

12. I have read this affidavit and certify that it is true and correct and within my own personal knowledge.

*Pamela Johnson* (signature)

Pamela Johnson

Sworn and subscribed to before me on this the 3rd day of April, 2017.

LANA L WOOD
Notary Public
Minnesota
My Commission Expires January 31, 2020

January 31, 2020
My Commission expires

*Lana Wood* (signature)
Notary Public in and for the
State of Minnesota

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liabilitkeey company,<br><br>    Plaintiffs,<br><br>    vs.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,<br><br>    Defendant. | Case No. 2:16-cv-04435-PA-MRW<br><br>**JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY**<br><br>Time:   9:30 a.m.<br>Date:   April 26, 2017<br>Judge:  Hon. Michael R. Wilner<br><br>File Date:         June 20, 2016<br>Discovery Cutoff:  May 12, 2017<br>Pre-Trial Conf.:    June 16, 2017<br>Trial Date :       July 25, 2017 |

# DEFENDANT'S EXHIBIT 31
# Email re Plaintiff's Outstanding Discovery Issues

| | |
|---|---|
| **From:** | Crapster, Carla |
| **Sent:** | Friday, March 17, 2017 6:08 PM |
| **To:** | Hayes, Daniel |
| **Cc:** | Coyoca, Lucia; Shalamitski, Valentine; Keeley, Michael; Reed, Toni |
| **Subject:** | RE: UCP v. Atlantic - Plaintiffs' Outstanding Discovery Issues |

Dan,

We *do* still want to present both our issues to the magistrate together. See the last two sentences of my e-mail below. And we see no reason why they cannot both be ready next week. We are sending a letter to you today providing you with our legal authority for the positions on which you have asked for our legal authority. But please note that you raised many of these requests in your letter that we received Tuesday night. We have taken a *very* reasonable amount of time to prepare a response letter (less than three days).

In response to each of the items you listed below:

1. Discovery of the Coverage Opinion

We have explained to you our position that the case law you *have* presented does not support the proposition for which you are citing it. You have cited cases that stand for the general proposition that when the advice of counsel is put "at issue" in a case – for example, in a malpractice lawsuit in which the issue is whether an attorney provided sound legal advice – the attorney-client privilege is waived. What you have *not* provided is a case suggesting that a lawyer's advice is put "at issue" when there is a mere mention of the fact that advice of counsel was obtained. This seems to be your client's position, and we have seen no case law that supports this at all. We explained why the cases you cited earlier were clearly distinguishable. That is the reason for our continued follow-up on this issue: you have provided us with no case law that actually supports your position. Here is our remaining question that we need resolved before we are prepared to appear before the magistrate: Do you have any case law supporting your position that a coverage opinion is put "at issue" when its existence is merely mentioned? Additionally, what are the precise waiver facts upon which you are relying for your position to compel?

2. Atlantic's Responses to Interrogatory 3-14

It appears we do have genuine disagreement on this point. You have not identified how the responses provided fail to answer the interrogatory posed – they do so in as much detail as can be provided.

3. The Sufficiency of Atlantic's Search

You note that you cannot be ready to move forward with our issues next week because you will need time to present "any proposed solutions" with your client. But you contend that all your issues are ready to appear before the magistrate despite proposing in your e-mail sent at 10:21 p.m. last night a new solution on this key issue: suggesting that Atlantic expand its search to January 1, 2010. We obviously have not had time to discuss this proposed solution with our client. Based on the time it took to run the last search and review the documents we received in response to that search, we see no way that this search and the follow-up review does not take 30-45 days. Such a search will obviously be extremely expensive and completely unnecessary, given that we have inquired of the people who have worked in Atlantic Entertainment's claim department since 2010, and OneBeacon's chief claims officer who has held that role since April 2010, whether they recall any claims involving the war exclusion – a memorable issue – and they have all said no. You have told us that Atlantic should bear the cost of any search for invoices because such a search is unreasonable in your view. We are taking the same position on any further computer search and the resulting review by attorneys of the documents received from that search. We do not believe you have any reasonable basis to force us to go through this expensive process yet again. Moreover, you are incorrect in stating that our search had a "one-year look-back." Our search began in July 2013 and went through the date of the search, which was late last year. It covered more than three years, and the plaintiffs are obviously every bit as interested in claims involving the war exclusion after July 2014 as they are in claims arising before that date.

Exhibit 31

Regarding your suggestion that we unqualifiedly admit to RFAs 34 and 35 before the thirty-day time frame we have to consider this issue, we can only respond that if you needed our response to these RFAs as a matter of urgency, they should have been included in the first set of RFAs. As you are surely aware, however, RFAs 34 and 35 are nearly identical to RFA 28. Please see our response to that RFA.

In short, we need time to confer with our client on your new proposed solution. But we expect the response to be that it will take significant time and resources. Please let us know your position on whether you would like us to conduct the search and review of the search results at the plaintiffs' expense.

4. Financial Documents

The documents are not "readily available." It will certainly take time to gather these documents. We understand the plaintiffs' relevancy argument to be that Atlantic was incentivized to deny the Dig claim because the account was already unprofitable. We obviously do not agree with this argument. But to the extent you intend to make that argument, you already have all the information needed to prove that the account was unprofitable. We have provided you with the loss runs, and in any event NBC is already aware of how much it received in payments from Atlantic and how much it paid in premiums. Atlantic's own internal calculations on this point and its decision on how much to charge in premiums are confidential and proprietary information that have no relevance and can add nothing to the argument NBC intends to make. You have not explained to us why you need the additional information beyond what you already have, and we need an explanation on that issue before we are prepared to go before the magistrate.

Sincerely,
Carla

**Carla Crapster** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.2034 • Fax 214.659.4060 • Strasburger.com