LUCIA E. COYOCA (SBN 128314)
  lec@msk.com
VALENTINE A. SHALAMITSKI (SBN 236061)
  vas@msk.com
DANIEL M. HAYES (SBN 240250)
  dmh@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone:  (310) 312-2000
Facsimile:  (310) 312-3100

Attorneys for Plaintiffs
Universal Cable Productions LLC and
Northern Entertainment Productions LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, *et al.*,<br><br>            Plaintiffs,<br><br>        v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>            Defendant. | CASE NO. 2:16-cv-4435-PA-MRW<br><br>**DECLARATION OF DANIEL M. HAYES IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RE: DEPOSITIONS OF RANDI RICHMOND, MARK BINKE, AND PLAINTIFFS' RULE 30(B)(6) CORPORATE DESIGNEES**<br><br>Judge:        Hon. Percy Anderson<br><br>File Date:          June 20, 2016<br>Discovery Cutoff:   June 2, 2017<br>Pre-Trial Conf.:    June 16, 2017<br>Trial Date :        July 25, 2017 |

Mitchell
Silberberg &
Knupp LLP

## DECLARATION OF DANIEL M. HAYES

I, Daniel M. Hayes, declare:

1.    I am an attorney duly licensed to practice law in the State of California and before this Court. I am, through my professional corporation, a partner in the law firm of Mitchell Silberberg & Knupp LLP, attorneys of record for Plaintiffs Universal Cable Productions LLC ("UCP") and Northern Entertainment Productions LLC ("Plaintiffs") in the above-captioned matter. I make this declaration in support of Plaintiffs' *Ex Parte* Application For Protective Order Regarding the Depositions of Randi Richmond, Mark Binke, and Plaintiffs' Rule 30(b)(6) corporate designees. Unless otherwise noted, I have personal knowledge of the following facts and, if called and sworn as a witness, could and would competently testify thereto.

2.    Attached hereto as Exhibit 1 is a true and correct copy of Plaintiffs' Responses to Atlantic's Interrogatories, Set 1, served December 30, 2016.

3.    Attached hereto as Exhibit 2 are true and correct copies of the Notices of Deposition for Randi Richmond, Mark Binke, Rule 30(b)(6) corporate designee of NEP, and Rule 30(b)(6) corporate designee of UCP. Based on a review of my firm's records, these were served on my office January 6, 2017, along with notices for six other depositions, and Atlantic did not earlier serve any deposition notices.

4.    Attached hereto as Exhibit 3 is a true and correct copy of an email chain between Lucia Coyoca to Michael Keeley, with the most recent email dated January 9, 2017.

5.    Attached hereto as Exhibit 4 is a true and correct copy of an email from Lucia Coyoca to Carla Crapster and Michael Keeley dated January 11, 2017.

6.    Attached hereto as Exhibit 5 is a true and correct copy of a letter from Carla Crapster to Lucia Coyoca dated January 13, 2017.

7.    Attached hereto as Exhibit 6 is a true and correct copy of a letter from

**HAYES DECLARATION ISO PLTFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER RE: DEPOSITIONS OF RANDI RICHMOND, MARK BINKE, AND PLAINTIFFS' RULE 30(B)(6) CORPORATE DESIGNEES**

1   Lucia Coyoca to Michael Keeley, John Riddle, and Carla Crapster dated January

2   23, 2017, without its enclosure.

3        8.      Attached hereto as Exhibit 7 is a true and correct copy of an email and

4   a follow-up email from Valentine Shalamitski to Carla Crapster, Toni Reed, and

5   Michael Keeley, dated January 31, 2017 and February 2, 2017.

6        9.      In the January 31, 2017 email attached above as Exhibit 7, Plaintiffs

7   offered Randi Richmond for deposition on February 21, 2017 and Mark Binke for

8   deposition on February 24, 2017.  As set forth in Ms. Coyoca's February 4, 2017

9   email (attached below in Exhibit 8), given the prior scheduling difficulties, I am

10   informed that NBCUniversal directed the witnesses to hold these dates in their

11   calendars for the anticipated depositions.  I am further informed that this was a

12   significant request, particularly given the packed daily schedules of Ms. Richmond

13   and Mr. Binke.

14       10.     Attached hereto as Exhibit 8 is a true and correct copy of an email

15   chain between Lucia Coyoca and Carla Crapster and Michael Keeley with the most

16   recent email dated February 6, 2017.

17       11.     On February 1, 3, and 8, 2017, my partner Lucia Coyoca and I took

18   the depositions of Peter Williams, Daniel Gutterman, and Theresa Gooley,

19   respectively.  Ms. Gooley's deposition was held in Minnesota.  To date, Atlantic

20   has not taken a single deposition in this case.

21       12.     On March 7, 2017, Plaintiffs served deposition notices for additional

22   Atlantic witnesses.  Throughout the deposition scheduling conversations and

23   communications I have had with Atlantic's counsel since March 7, I have indicated

24   to Atlantic's counsel that we would work with them on scheduling mutually

25   agreeable dates for these depositions.

26       13.     Attached hereto as Exhibit 9 is a true and correct copy of a letter from

27   Toni Reed to me dated March 10, 2017.

28

**HAYES DECLARATION ISO PLTFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER RE:
DEPOSITIONS OF RANDI RICHMOND, MARK BINKE, AND PLAINTIFFS' RULE 30(B)(6)
CORPORATE DESIGNEES**

14.    Attached hereto as Exhibit 10 is a true and correct copy of a letter from me to Toni Reed dated March 14, 2017.

15.    Attached hereto as Exhibit 11 is a true and correct copy of an email chain between me and Carla Crapster, with the most recent email dated March 17, 2017.

16.    On March 23, 2017, I participated in a phone call with Atlantic's counsel, in which we discussed, among other things, deposition scheduling.  On that call, Ms. Reed for the first time indicated that Atlantic wanted certain witnesses to be produced prior to the April 24, 2017 deadline for filing motions for summary judgment ("the MSJ deadline").  In particular, Ms. Reed demanded that Plaintiffs produce Stephen Smith, who was head of NBCUniversal's European security operations at the time of the relocation, with responsibility for security on the *Dig* production.  I asked Ms. Reed why Atlantic needed depositions before the MSJ deadline, and she indicated that she thought the witnesses have knowledge of facts that are relevant to the legal issues Atlantic intends to present in its MSJ.  I requested further explanation but Ms. Reed did not elaborate.

17.    Attached hereto as Exhibit 12 is a true and correct copy of Plaintiffs' Supplemental Responses to Atlantic's Interrogatories, Set 2.  The responses were originally served by my office March 21, 2017 and the supplemental responses were served April 12, 2017, by email.

18.    Attached hereto as Exhibit 13 is a true and correct copy of an email from Carla Crapster to me dated March 23, 2017.

19.    Attached hereto as Exhibit 14 is a true and correct copy of an email from me to Toni Reed dated March 24, 2017.

20.    Attached hereto as Exhibit 15 is a true and correct copy of a letter from Toni Reed to me dated March 27, 2017.

21.    Attached hereto as Exhibit 16 is a true and correct copy of a letter

Mitchell Silberberg & Knupp LLP

4

**HAYES DECLARATION ISO PLTFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER RE: DEPOSITIONS OF RANDI RICHMOND, MARK BINKE, AND PLAINTIFFS' RULE 30(B)(6) CORPORATE DESIGNEES**

from Carla Crapster to Plaintiffs' counsel (Lucia Coyoca, Valentine Shalamitski, and me) dated March 29, 2017, in which she enclosed nine Notices of Deposition.

22.     Attached hereto as Exhibit 17 are true and correct copies of the Amended Notices of Deposition for Randi Richmond, Mark Binke, Rule 30(b)(6) corporate designee of NEP, and Rule 30(b)(6) corporate designee of UCP, which were all served along with the letter attached as Exhibit 16.

23.     Attached hereto as Exhibit 18 is a true and correct copy of a letter from me to Toni Reed and Carla Crapster dated March 29, 2017.

24.     Attached hereto as Exhibit 19 is a true and correct copy of an email chain between me and Toni Reed, with the most recent email dated March 31, 2017.  As discussed in the emails, I offered to talk with Atlantic's counsel any time after 10:30 a.m. Pacific regarding deposition scheduling.  Atlantic's counsel never called.

25.     Attached hereto as Exhibit 20 is a true and correct copy of an April 3, 2017 letter from me to Toni Reed.  The subject matter of the parties' March 31, 2017 telephone conference is accurately summarized in my letter.

26.     On April 3, 2017, Valentine Shalamitski and I had a meet and confer telephone conference with Atlantic's counsel, Toni Reed and Carla Crapster, in which we discussed, among other things, deposition scheduling.  Ms. Reed and Ms. Crapster continued to insist in this call that Atlantic needed several depositions before the MSJ deadline, including those of Randi Richmond and Mark Binke. When I asked Atlantic's counsel what issues in the anticipated summary judgment motion Atlantic needed the witnesses to address, counsel for Atlantic would not say.  Instead, Ms. Reed repeated what she had said on March 23, that the witnesses have knowledge of facts that are relevant to the legal issues Atlantic intends to present in its MSJ.  I reminded Ms. Reed and Ms. Crapster that Local Rule 7-3 requires the parties to meet and confer about the substance of their motions prior to

Mitchell
Silberberg &
Knupp LLP

**HAYES DECLARATION ISO PLTFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER RE: DEPOSITIONS OF RANDI RICHMOND, MARK BINKE, AND PLAINTIFFS' RULE 30(B)(6) CORPORATE DESIGNEES**

1    filing.  Ms. Reed still refused to identify the grounds on which Atlantic intended to

2    move for summary judgment.  Ms. Reed insisted the dates in Atlantic's March 29,

3    2017 unilateral notices would stand, and refused to reschedule on dates the

4    witnesses were available, unless those dates were before the MSJ filing deadline.

5    This was the first time Atlantic's counsel had told me Atlantic intended to stand on

6    the dates in its unilateral notices.

7            27.    I am informed that Randi Richmond was the production executive

8    responsible for the *Dig* television show production and that Mark Binke is and was

9    the head of production overall for UCP.  Randi Richmond and Mark Binke will be

10   Plaintiffs' Rule 30(b)(6) corporate designees for Topic Nos. 15 and 45 in the

11   Amended Notices of Rule 30(b)(6) Depositions attached in Exhibit 17, above.

12           28.    During the numerous meet and confer phone conferences I have had

13   with Atlantic's counsel since March 29, 2017, I have told them that Ms. Richmond

14   and Mr. Binke have significant production responsibilities for UCP in the next few

15   weeks.  I am informed that Ms. Richmond and Mr. Binke are key production

16   executives who are extensively involved in the intense and time consuming work

17   that occurs when shooting begins on a production.  I have advised Atlantic's

18   counsel of this several times.

19           29.    I have pre-existing plans to travel to Arizona on April 14, 2017 to be

20   with family for Easter and cannot attend a deposition on that date.   Atlantic has

21   agreed to depose Andrea Garber on April 14, 2017, and Lucia Coyoca, lead partner

22   on this case, will be defending that deposition.

23           30.    On April 4, 2017 and April 5, 2017,  Valentine Shalamitski and I had

24   further conversations with Ms. Reed and Ms. Crapster regarding the deposition

25   scheduling.  During those discussions, we were able to confirm three of the eight

26   deponents Atlantic had requested prior to the MSJ deadline.  These depositions

27   have been scheduled as follows: Andrea Garber (April 14), Stephen Smith (April

28

Mitchell
Silberberg &
Knupp LLP

**HAYES DECLARATION ISO PLTFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER RE: DEPOSITIONS OF RANDI RICHMOND, MARK BINKE, AND PLAINTIFFS' RULE 30(B)(6) CORPORATE DESIGNEES**

1   18), and Susan Weiss (April 18).  However, we could not offer pre-deadline dates

2   for Randi Richmond and Mark Binke, because, as I had earlier explained, these

3   individuals oversee the production of television shows that are of critical

4   importance to the success of UCP.  I told Ms. Reed I am informed that Ms.

5   Richmond and Mr. Binke will be fully engaged by their production responsibilities

6   in connection with this show and others.  Ms. Reed continued to insist that their

7   depositions must occur before the MSJ deadline.

8       31.   Attached hereto as Exhibit 21 is a true and correct copy of an email

9   from Valentine Shalamitski to Toni Reed, Carla Crapster, and Michael Keeley sent

10   on April 4, 2017.

11       32.   On April 6, 2017, following the Court's Order on Atlantic's Amended

12   Ex Parte Application for an Order Continuing Trial Date and All Deadlines for 60

13   Days, Mr. Shalamitski and I had another telephone conversation with Ms. Reed

14   and Ms. Crapster.  In light of the Order, I again asked that Atlantic explain why it

15   needed Ms. Richmond and Mr. Binke's depositions prior to the MSJ deadline.  In

16   this conversation, Ms. Reed said they need to know the "date, facts, and grounds"

17   for UCP's decision to move the *Dig* production out of Israel.  I asked why Atlantic

18   needed said information for its MSJ and how said information was relevant to any

19   issue resolvable on a MSJ, but Ms. Reed would not elaborate further.

20       33.   Attached hereto as Exhibit 22 is a true and correct copy of an email

21   chain between me and Toni Reed, with the most recent email dated April 6, 2017.

22       34.   Attached hereto as Exhibit 23 is a true and correct copy of a letter

23   from Toni Reed to me dated April 6, 2017.

24       35.   Attached hereto as Exhibit 24 is a true and correct copy of a letter

25   from Toni Reed to me dated April 7, 2017.

26       36.   Attached hereto as Exhibit 25 is a true and correct copy of an email

27   from Valentine Shalamitski to Toni Reed, Carla Crapster, and Michael Keeley

28

**HAYES DECLARATION ISO PLTFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER RE: DEPOSITIONS OF RANDI RICHMOND, MARK BINKE, AND PLAINTIFFS' RULE 30(B)(6) CORPORATE DESIGNEES**

1    dated April 7, 2017.

2        37.    Attached hereto as Exhibit 26 is a true and correct copy of an email

3    from me to Toni Reed dated April 7, 2017.

4        38.    Attached hereto as Exhibit 27 is a true and correct copy of an email

5    from me to Toni Reed dated April 11, 2017, which followed the parties' telephone

6    conference with Magistrate Judge Michael R. Wilner the prior day.

7        39.    Attached hereto as Exhibit 28 is a true and correct copy of a letter

8    from Toni Reed to me dated April 12, 2017.

9        40.    On April 12, 2017, after I received Ms. Reed's letter attached above

10   as Exhibit 28, we had a phone conversation in which we discussed, among other

11   things, scheduling of the depositions of Randi Richmond and Mark Binke.  Ms.

12   Reed suggested that it might be possible to stipulate that the April 14, 2017 date

13   for the deposition of Mr. Binke be deemed April 19, 2017 in order to give the

14   parties more time to work out their deposition scheduling issues.  I said I thought

15   that was a good way to give the Parties more time to reach a resolution.  Ms. Reed

16   noted that she did not have client authority to make this proposal, and I asked her

17   to get back to me regarding whether Atlantic would so agree.

18       41.    On April 12, 2017, following my conversation with Ms. Reed, I

19   received the email attached hereto as Exhibit 29, from Toni Reed.  In this email,

20   Ms. Reed states, among other things, that she does "not have any ability to get

21   further authorization today for any other adjustments.  The noticed dates are Friday

22   (4/14) and Monday (4/17)."  I took this to mean that Atlantic had not given Ms.

23   Reed authority to agree that the April 14, 2017 date for the deposition of Mr. Binke

24   be deemed April 19, 2017 in order to give the parties more time to work out their

25   deposition scheduling issues.

26       42.    Attached hereto as Exhibit 30 is a true and correct copy of an email

27   from Toni Reed to me, dated April 12, 2017, at 5:06pm Pacific time.

28

Mitchell
Silberberg &
Knupp LLP

8

**HAYES DECLARATION ISO PLTFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER RE: DEPOSITIONS OF RANDI RICHMOND, MARK BINKE, AND PLAINTIFFS' RULE 30(B)(6) CORPORATE DESIGNEES**

43.     Immediately after receiving the email attached hereto as Exhibit 30, I called Ms. Reed and gave her oral notice (pursuant to L.R. 7-19) that Plaintiffs would be filing this *ex parte* application on April 12.  She confirmed that she did not have authority to agree that the deposition noticed for April 14th be deemed noticed April 19th to allow the parties time to discuss a reasonable solution.  I told her that was unfortunate because it would have given us more time to work on a solution.  This morning, I called Ms. Reed again and left her a voicemail in which I informed her that due to logistical issues we would have to file our *ex parte* application this morning.  In my voicemail, I also reiterated that Ms. Reed should call me as soon as possible if Atlantic reconsiders any of its positions.

44.     Attached hereto as Exhibit 31 is a true and correct copy of an email I sent to Toni Reed on April 12, 2017.

45.     Attached hereto as Exhibit 32 is a true and correct copy of an email exchange between me and Toni Reed on April 12, 2017, with the most recent email sent at 9:17 p.m. Pacific Time.

46.     Attached hereto as Exhibit 33 is a true and correct copy of an email exchange between me and Toni Reed on April 12, 2017, with the most recent email sent at 9:18 p.m. Pacific Time.

47.     Attached hereto as Exhibit 34 is a true and correct copy of Atlantic's July 28, 2014 denial of coverage letter, produced by Atlantic as ATL001859-1866.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 13, 2017, at Los Angeles, California.



_____
Daniel M. Hayes

Mitchell
Silberberg &
Knupp LLP

9

# EXHIBIT 1

1  LUCIA E. COYOCA (SBN 128314)
      lec@msk.com
2  VALENTINE A. SHALAMITSKI (SBN 236061)
      vas@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
4  Los Angeles, CA 90064-1683
   Telephone: (310) 312-2000
5  Facsimile: (310) 312-3100

6  Attorneys for Plaintiffs
   Universal Cable Productions LLC and
7  Northern Entertainment Productions LLC

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   WESTERN DIVISION

11

12 UNIVERSAL CABLE                     CASE NO. 2:16-cv-4435-PA-MRW
   PRODUCTIONS LLC, *et al.*,
13                                     **PLAINTIFFS' RESPONSE TO**
                                       **DEFENDANT'S FIRST SET OF**
14              Plaintiffs,            **INTERROGATORIES**

15       v.
                                       Filed:      June 20, 2016
16 ATLANTIC SPECIALTY                  Trial:      May 23, 2017
   INSURANCE COMPANY,
17
                Defendant.
18

19 PROPOUNDING PARTY:        Defendant, Atlantic Specialty Insurance Company

20                           (hereinafter, "Atlantic" or "Defendant")

21 RESPONDING PARTY:         Plaintiffs, Universal Cable Productions LLC

22                           (hereinafter, "UCP") and Northern Entertainment

23                           Productions LLC ("Northern Entertainment,"

24                           hereinafter collectively with UCP, "Plaintiffs").[1]

25 SET NUMBER:               One

26

27

   ─────────────────
   [1] Defendant served identical sets of interrogatories on each Plaintiff.  This response
28 is on behalf of both Plaintiffs.

Mitchell
Silberberg &
Knupp LLP

8478825.3
   ─────────────────────────────────────────────────────────
              PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

**EXHIBIT 1  PG.  11**

1    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure

2 ("FRCP"), Plaintiffs hereby provide this Response to Defendant's First Set of

3 Interrogatories ("Response").  Pursuant to the parties' agreement, this Response is

4 timely provided on December 30, 2016.

5

6                    **PRELIMINARY STATEMENT**

7         1.    The responses provided herein are made solely for the purposes of this

8 action.  All information provided in response to these interrogatories are subject to

9 all objections as to competence, relevance, materiality, propriety, admissibility,

10 and all other objections on any grounds that would permit or require the exclusion

11 of the information if offered into evidence, and all objections and grounds are

12 hereby expressly reserved and may be interposed at the time of any deposition,

13 during any hearing or trial, or any other proceeding in this matter.

14        2.    The following responses are based on information presently available

15 to and located by Plaintiffs and no incidental or implied admissions are intended

16 hereby.  The fact that Plaintiffs respond or object to any interrogatory is not

17 intended and shall not be construed as an admission that Plaintiffs accept or admit

18 the existence of any facts set forth in or assumed by such interrogatory, or that

19 such response or objection constitutes admissible evidence.  The fact that Plaintiffs

20 respond to all, or part, of any interrogatory is not intended to be and should not be

21 construed as a waiver by Plaintiffs of all, or any part, of any objection to any

22 interrogatory made herein.

23        3.    Plaintiffs' discovery is ongoing.  Plaintiffs reserve the right to

24 supplement, amend, alter and/or modify their responses to these interrogatories,

25 and the following objections and responses are without prejudice to Plaintiffs' right

26 to provide supplemental responses as additional information is discovered, or

27 present additional responsive information at or before any hearing or trial in this

28 matter, or any other proceeding in this matter.

Mitchell
Silberberg &
Knupp LLP

PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

**EXHIBIT 1  PG.  12**

4.      All references herein to "NBCUniversal" means and refers to NBCUniversal Media, LLC.

## **OBJECTIONS TO ATLANTIC'S DEFINITIONS OF TERMS APPLICABLE TO ALL INTERROGATORIES**

1.      Plaintiffs object to Defendant's definition of "YOU," "YOUR," "YOURSELF," and "YOURS" on the grounds that the definition:  (a) is overly broad, vague, ambiguous, unduly burdensome and harassing, and includes subject matter that is not relevant to any party's claims or defenses or proportional to the needs of the case, to the extent the definition includes separate, non-party entities and their "parents or subsidiaries, predecessors, assigns, agents, officers, directors, employees, attorneys, or other representatives acting on its behalf"; and (b) by reference to "attorneys," calls for information protected by the attorney-client privilege or work product doctrine.  Plaintiffs will respond on behalf of themselves only, and have construed the foregoing definition as not seeking information protected by the attorney-client privilege or work product doctrine.

2.      Plaintiffs object to Defendant's definition of "LOSS" as "the loss … incurred as a result of the delays in production of DIG and that YOU contend is covered by the POLICY" as inaccurate, vague, and ambiguous.  Plaintiffs have construed the foregoing definition as being those extra costs and expenses that were incurred in connection with the delay, postponement, and relocation of the *Dig* production.

The foregoing preliminary statement and objections, as applicable, are incorporated into each of the following responses.

Mitchell
Silberberg &
Knupp LLP

PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

**EXHIBIT 1  PG.  13**

1      **RESPONSES TO INTERROGATORIES**

2   **INTERROGATORY NO. 1:**

3          IDENTIFY all PERSONS involved in the decision to move the production

4   of *DIG* from Israel to Croatia, explain in detail exactly how each such person was

5   involved, and state the dates of their involvement.

6   **RESPONSE TO INTERROGATORY NO. 1:**

7          Plaintiffs object to this interrogatory to the extent it contains multiple

8   subparts within the meaning of FRCP 33(a)(1), and is burdensome and oppressive.

9   Subject to and without waiving the foregoing objections and preliminary statement,

10  Plaintiffs respond as follows:

11         The following persons were primarily involved in the decision to move the

12  production of *Dig* out of Israel in or around July 2014:

13         • Mark Binke - Executive Vice President, Production, UCP.

14         • Jeff Wachtel - Chief Content Officer, NBCUniversal Cable

15             Entertainment & President, UCP.

16         • Randi Richmond - Senior Vice President, Production, UCP.

17         • Thomas McCarthy - Senior Vice President & Chief Security Officer,

18             NBCUniversal.

19         • Stephen Smith - Head of Security, Europe International Security &

20             Crisis Management, NBCUniversal.

21         The above-referenced individuals were involved or participated in one or

22  more of the following:  (1) assessing the safety of the cast and crew of the *Dig*

23  production which had been threatened as a result of the conditions existing in Israel

24  in July 2014; (2) deciding whether the production should be moved; (3)

25  determining the feasibility of suitable alternate locations; and (4) overseeing the

26  move of the production to Croatia and also to New Mexico.

27         The above-listed individuals may only be contacted through the undersigned

28  counsel of record for Plaintiffs.

Mitchell
Silberberg &
Knupp LLP

4

**EXHIBIT 1  PG.  14**

1   **INTERROGATORY NO. 2:**

2    IDENTIFY all PERSONS involved in the decision to move the production

3   of *DIG* from Croatia to New Mexico, explain in detail exactly how each such

4   person was involved, and state the dates of their involvement.

5   **RESPONSE TO INTERROGATORY NO. 2:**

6    Plaintiffs object to this interrogatory to the extent it seeks information

7   potentially protected by the attorney-client privilege or work product doctrine.

8   Plaintiffs also object to this interrogatory to the extent it contains multiple subparts

9   within the meaning of FRCP 33(a)(1), and is burdensome and oppressive.

10  Plaintiffs also object in that it assumes facts not in evidence, e.g., that production

11  was moved *from* Croatia to New Mexico.  Plaintiffs did not move from the

12  production *from* Croatia to New Mexico.  Subject to and without waiving the

13  foregoing objections and preliminary statement, Plaintiffs respond there was no

14  one involved in the decision to move from the production *from* Croatia to New

15  Mexico, but refer Atlantic to Plaintiffs' response to Interrogatory No. 1 above, and

16  Plaintiffs' response to Interrogatory No. 15 below.

17  **INTERROGATORY NO. 3:**

18   State all facts that support YOUR position that it was necessary to move the

19  production of *DIG* from Israel to Croatia.

20  **RESPONSE TO INTERROGATORY NO. 3:**

21   Plaintiffs object to this interrogatory to the extent it seeks information

22  potentially protected by the attorney-client privilege or work product doctrine.

23  Plaintiffs also object to the extent this interrogatory asks Plaintiffs to state all facts

24  which support Plaintiffs' position.  Plaintiffs note that discovery is ongoing and

25  additional facts may subsequently be discovered which may be responsive to this

26  interrogatory.  Subject to and without waiving the foregoing objections and

27  preliminary statement, key facts which support Plaintiffs' position include the

28  following:

Mitchell
Silberberg &
Knupp LLP

PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

**EXHIBIT 1  PG.  15**

1    Plaintiffs incorporate herein by reference all facts stated in their First
2   Amended Complaint (hereafter "FAC;" ECF No. 10) regarding the conditions in
3   Israel in or about July 2014, including those identified by the United States
4   government, as detailed in response to Interrogatory No. 5 below.  Plaintiffs also
5   incorporate herein by reference all facts stated in their responses to Interrogatories
6   No. 1 and 2 above.  More specifically, the dangerous conditions in and around *Dig*
7   filming locations in Israel in July 2014 mandated that UCP move the *Dig*
8   production out of Israel to protect the safety of cast and crew.  In July 2014,
9   NBCUniversal's security personnel advised *Dig's* producers:

10          "This is to advise you that the security environment in
11          Israel currently prohibits NBCU Security from being able
12          to guarantee the safety and security of our employees,
13          production partners and associated crew and talent.

14          NBCU Security have monitored and evaluated the events
15          in Israel, Gaza and the West Bank, since inception and
16          analyzed information from multiple sources. All current
17          intelligence and activity in country points to events still
18          being in escalation phase without a predictable or
19          realistic timeframe for a reduction in hostilities. We have
20          looked at the magnitude and range, of current rocket
21          attacks (which appear to target locations to be used in
22          forthcoming filming), the escalation of civil disorder and
23          potential for a further increase in hostilities including a
24          ground campaign and acts of terrorism within Israel, all
25          of which mean there is no short term and realistic
26          likelihood for positive changes to the security landscape.

27
28

Mitchell
Silberberg &
Knupp LLP

6

**EXHIBIT 1  PG.  16**

1    As the situation is unlikely to change, this raises

2    significant concern over the level of risk facing our crew

3    and talent, and the liability over duty of care to which

4    NBCUniversal would be exposed. There are no current

5    security controls that would allow NBCU Security to

6    guarantee the safety and security of our personnel

7    planning to arrive or currently based in Israel without the

8    prospect of serious injury or loss of life. Personnel based

9    in country in relation to this production should make

10    arrangements to leave."

11  July 10, 2014 email from Stephen Smith (*e.g.*, ATL000295-299).

12    Atlantic was advised on July 11, 2014, of the unsafe conditions in the

13  locations where *Dig* was being filmed, and of the possibility of delay and potential

14  relocation of the production.  Indeed, Atlantic[2] admitted that the conditions in and

15  around the filming locations in Israel in July 2014 required moving the production

16  of *Dig* out of Israel, *e.g.*:

17    "Based on Mr. Smith's email to the production and what

18    we know about the present conflict, we believe that the

19    extra expenses that will be incurred to move the

20    production out of Israel will be due to imminent peril.

21    Rockets launched toward areas where filming is taking

22    place would no doubt reasonably constitute a 'certain,

23    immediate and impending danger of such probability and

24    severity to person or property that it would be

25

26  [2] All references herein to Atlantic include its affiliated entities, employees and agents at the pertinent time period in connection with the POLICY at issue and the *Dig* claim, including but not limited to, OneBeacon entities, Peter Williams,

27  Wanda Phillips, Pamela Johnson, Theresa Gooley, Daniel Gutterman, Bernadette Milnovich, Michael Arevalo, Lucy Lopez, Kaisa Adams, Amber Schuchart, Ryan

28  McFadden, MayAnne Aust.

Mitchell
Silberberg &
Knupp LLP

7

**EXHIBIT 1  PG.  17**

1   unreasonable or unconscionable to ignore.'  With

2   hostilities increasing, there remains a certain, immediate

3   and impending danger."

4   Atlantic's July 28, 2014 coverage position letter (ATL00094-101).

5       On July 17, 2014, SAGAFTRA stated its position regarding the *Dig*

6   production and safety concerns as follows:

7   "The safety of our members is one of our core

8   responsibilities and is of the utmost importance to the

9   Union and we believe to the company also.  Due to the

10  ongoing situation in Israel, and the continued rocket

11  attacks, the Union does not believe that the company will

12  be able to provide a safe work environment at this time,

13  nor does it appear that it will improve in the near future.

14  Accordingly, we do not see any way to adequately insure

15  the safety of our members if they were to travel and work

16  in Israel.  We would respectfully ask that the company

17  find a suitable alternative and will work with you to

18  assist in any way possible."

19  SAGAFTRA July 17, 2014 email (UCP000146).

20      Another television production and other entertainment events taking place in

21  Israel in July 2014 were also moved or postponed as a result of Hamas' terrorist

22  activities.  For example, the production of FX's drama *Tyrant*, which was set in the

23  Middle East, was relocated to Turkey for similar reasons as the relocation of the

24  *Dig* production.  Neil Young cancelled a July 17, 2014 concert in Tel Aviv due to

25  the security concerns.  And, organizers of the Jerusalem Film Festival postponed

26  opening night events for the Festival because of the security concerns.[3]

27  ――――――――――――――
    [3] *See, e.g.*, http://variety.com/2014/tv/news/usas-dig-moves-production-israel-violence-1201267003/; http://www.hollywoodreporter.com/live-feed/usas-dig-moves-israel-albuquerque-720322

28

Mitchell
Silberberg &
Knupp LLP

8

**EXHIBIT 1  PG.  18**

1  After evaluation and assessment of potential options, Croatia was selected as
2  a viable alternative to shoot the *Dig* exterior scenes because Croatia had the same
3  look and feel as Israel and could be used as a substitute for Israel, because of its
4  comparable stone color and structures to the stone color and structures in
5  Jerusalem, and public streets, buildings, and areas such as archaeological dig sites
6  that had the same look and feel as Jerusalem.

7  **INTERROGATORY NO. 4:**

8  State all facts that support YOUR position that it was necessary to move the
9  production of *DIG* from Croatia to New Mexico.

10  **RESPONSE TO INTERROGATORY NO. 4:**

11  Plaintiffs object to this interrogatory to the extent it seeks information
12  potentially protected by the attorney-client privilege or work product doctrine.
13  Plaintiffs also object to the extent this interrogatory asks Plaintiffs to state all facts
14  which support Plaintiffs' position.  Plaintiffs note that discovery is ongoing and
15  additional facts may subsequently be discovered which may be responsive to this
16  interrogatory.  Plaintiffs also object to this interrogatory in that it assumes facts not
17  in evidence, e.g., that the production was moved *from* Croatia to New Mexico.
18  Plaintiffs did not move from the production *from* Croatia to New Mexico.  Subject
19  to and without waiving the foregoing objections and preliminary statement, key
20  facts which support Plaintiffs' position include the facts referenced in Plaintiffs'
21  response to Interrogatory No. 3 above, and Plaintiffs' response to Interrogatory No.
22  15 below.

23  **INTERROGATORY NO. 5:**

24  State all facts that support YOUR position that the activity in Israel and
25  Palestine in 2014 that led YOU to move the production of *DIG* out of Israel was
26  not a war, including an undeclared or civil war.

27
28

Mitchell
Silberberg &
Knupp LLP

9

PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

**EXHIBIT 1  PG.  19**

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiffs object to this interrogatory to the extent it seeks information potentially protected by the attorney-client privilege or work product doctrine. Plaintiffs also object to the extent the interrogatory calls for a legal conclusion. Plaintiffs also object on the grounds of relevance to the extent that Atlantic uses the terms "war" and "an undeclared or civil war" in any sense other than that intended by the exclusion language in Section III.1. of the General Conditions of the Policy." Plaintiffs also object to the extent the interrogatory seeks to shift the burden from Atlantic to Plaintiffs to prove that the exclusions set forth in Section III of the General Conditions of the POLICY do not apply to this claim. It is Atlantic's burden to prove that an exclusion applies which precludes coverage for loss that is otherwise covered under the POLICY. Plaintiffs also object to the extent this interrogatory asks Plaintiffs to state all facts which support Plaintiffs' position. Plaintiffs note that discovery is ongoing and additional facts may subsequently be discovered which may be responsive to this interrogatory.

Subject to and without waiving the foregoing objections and preliminary statement, key facts which support Plaintiffs' position that the activity in and around the filming locations of *Dig* in Israel in July 2014 did not fall within the exclusion language of Section III.1. of the General Conditions of the Policy include all facts stated in Plaintiffs' FAC (ECF No. 10). Additional facts supporting Plaintiffs' position include, but are not limited to:

i.      As described by the United States government, prior to July 2014, for many years Hamas (a.k.a. Harakat al-Muqawama al-Islamiya, or the Islamic Resistance Movement) had conducted numerous anti-Israeli attacks, "including shootings, suicide bombings, and standoff mortar-and-rocket attacks against civilian and military targets."[4]

---

[4] U.S. Department of Treasury, U.S. Designates Five Charities Funding Hamas and Six Senior Hamas Leaders as Terrorist Entities (available at https://www.treasury.gov/press-center/press-releases/Pages/js672.aspx).

PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Mitchell Silberberg & Knupp LLP

**EXHIBIT 1  PG.  20**

1    ii.      According to a State Department Daily Press Briefing, on or about

2    June 12, 2014, three Israeli "teenagers were kidnapped" with "many signs that

3    point to Hamas involvement."[5]

4    iii.     On or about June 30, 2014, "the bodies of the three kidnapped

5    teenagers" were found, and there were reports "indicat[ing] that Hamas was

6    involved."[6]

7    iv.      Shortly thereafter, according to a White House Daily Press Briefing,

8    Israel began taking affirmative action to protect its security interests[7] and,

9    according to a July 9, 2014 State Department Daily Press Briefing, Hamas began

10   launching rockets from Gaza into Israel.[8]

11   v.       When questioned about the situation in Israel during a State

12   Department Daily Press Briefing, a State Department spokesperson expressed the

13   government's concerns about "the safety and security of civilians"[9] in and around

14   Israel and Jerusalem, where certain *Dig* filming was scheduled to take place.

15   vi.      On or about July 11, 2014, Susan Weiss of Aon/Albert G. Ruben

16   Insurance Services, Inc. ("Aon") and Andrea Garber of NBCU spoke by telephone

17   with Peter Williams of One Beacon Entertainment about the situation, and told him

18   that the *Dig* production was being postponed for one week, and potentially would

19

20

---

21   [5] U.S. Department of State, Daily Press Briefing, Washington, DC, June 18, 2014
     (available at http://www.state.gov/r/pa/prs/dpb/2014/06/227816.htm).

22   [6] U.S. Department of State, Daily Press Briefing, Washington, DC, June 30, 2014

23   (available at http://www.state.gov/r/pa/prs/dpb/2014/06/228570.htm).

     [7] White House Daily Press Briefing, July 8, 2014 (available at
24   https://www.whitehouse.gov/the-press-office/2014/07/08/daily-briefing-press-
     secretary-07082014).

25   [8] *Id.* and *e.g.*, U.S. Department of State, Daily Press Briefing, Washington, DC,
     July 9, 2014 (available at http://www.state.gov/r/pa/prs/dpb/2014/07/228980.htm).

26   [9] *E.g.*, U.S. Department of State, Daily Press Briefing, Washington, DC, July 8,
27   2014 (available at http://www.state.gov/r/pa/prs/dpb/2014/07/228878.htm). *See
     also* The White House, Daily Briefing by the Press Secretary, July 8, 2014 (same)
28   (available at https://www.whitehouse.gov/the-press-office/2014/07/08/daily-
     briefing-press-secretary-07082014).

Mitchell
Silberberg &
Knupp LLP

PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

**EXHIBIT 1  PG.  21**

1  need to be relocated.  During that same conversation Mr. Williams told Ms. Garber

2  and Ms. Weiss that the postponement costs were covered.

3      vii.     On or about July 16, 2014, during a State Department Daily Press

4  Briefing, the State Department spokesperson said "right now the potential we're

5  looking at is … an even greater escalation of violence" in and around Israel.[10]

6      viii.    Thus, faced with the prospect of escalated safety concerns, on or

7  about July 17, 2014, UCP decided to move the *Dig* production out of Jerusalem

8  and Israel, and advised Atlantic of the decision on that same date.

9      ix.      On July 21, 2014, the State Department issued an official Travel

10  Warning advising that "U.S. citizens consider the deferral of non-essential travel to

11  Israel and to the West Bank" and "against any travel to the Gaza Strip."[11]

12      x.       The United States government strongly condemned "the continuing

13  rocket fire into Israel and the deliberate targeting of civilians by terrorist

14  organizations in Gaza" and supported Israel's right to defense itself against these

15  terrorist acts.[12]

16      xi.      Based on established case authority, a state of war exists only where

17  the conflict in question takes place between sovereign nations or quasi-sovereign

18  entities.  *See, e.g., Pan Am. World Airways v. Aetna Casualty & Surety Co.*, 505

19  F.2d 989, 1012-17 (2nd Cir. 1974).  And, pursuant to the political question

20  doctrine, only the United States government can recognize a sovereign nation or

21  government.  *See, e.g., Oetjen v. Central Leather Co.*, 246 U.S. 297, 302 (1918).

---

22  [10]  U.S. Department of State, Daily Press Briefing, Washington, DC, June 16, 2014
23  (available at http://www.state.gov/r/pa/prs/dpb/2014/07/229360.htm).  *See also*
    The White House, Remarks by the President on Foreign POLICY, July 16, 2014
24  ("Hamas continued to fire rockets at civilians, thereby prolonging the conflict.")
    (available at https://www.whitehouse.gov/the-press-office/2014/07/16/remarks-
25  president-foreign-POLICY).

26  [11]  U.S. Department of State, Israel, The West Bank and Gaza Travel Warning,
    July 21, 2014 (available at https://web.archive.org/web/20140724171638/
27  http://travel.state.gov/content/passports/english/alertswarnings/israel-travel-
    warning.html).

28  [12]  U.S. Department of State, Daily Press Briefing, Washington, DC, July 8, 2014
    (available at http://www.state.gov/r/pa/prs/dpb/2014/07/228878.htm).

Mitchell
Silberberg &
Knupp LLP

12

PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

EXHIBIT 1  PG.  22

1    Similarly, only the United States government can designate an entity to be a

2    terrorist organization.  *See, e.g.,* U.S. Department of State, Foreign Terrorist

3    Organizations (available at http://www.state.gov/j/ct/rls/other/des/123085.htm).

4         xii.        The United States government, currently and at all relevant times, has

5    designated Hamas as a foreign terrorist organization.  The United States

6    government has never recognized Hamas as a sovereign government.[13]  Moreover,

7    the United States government does not recognize the Gaza Strip as a sovereign

8    territorial nation.[14]

9         xiii.        Atlantic admits the Gaza Strip is not a recognized sovereign nation.

10    *See* Atlantic's July 28, 2014 coverage opinion letter, p. 6.

11        xiv.        Atlantic initially admitted in July 2014 that an insured event under the

12    applicable Extra Expense coverage of the POLICY had occurred and that the extra

13    expenses incurred in connection with the initial postponement of the *Dig*

14    production through about July 17, 2014 would be covered under the POLICY, and

15    did not invoke the war exclusion.

16        xv.        Case law, including, *e.g.*, the leading case *Pan American World*

17    *Airways, Inc. v. Aetna Casualty & Surety Co.*, 368 F. Supp. 1098 (S.D.N.Y. 1973),

18    *aff'd,* 505 F.2d 989 (2nd Cir. 1974), holds that activities of terrorist groups are not

19    acts of war within the meaning of war exclusions to insurance policies.

20        xvi.        Hamas does not possess significant attributes or incidents of

21    sovereignty, and is not a qualifying "military force" within the meaning of the

22    POLICY, because, among other things, according to the United States and other

23    governments, Hamas' "military wing," the Izz al-Din al-Qassam Brigades, do not

24    engage in typical acts of warfare, and instead conducts covert anti-Israeli attacks

25    through acts of terrorism, including suicide bombings against civilian targets inside

26

27    [13]  U.S. Department of State, Foreign Terrorist Organizations (available at http://www.state.gov/j/ct/rls/other/des/123085.htm).

28    [14]  U.S. Department of State, Independent States in the World (available at http://www.state.gov/s/inr/rls/4250.htm).

1   Israel.  Moreover Hamas is not recognized as a governmental authority with the

2   requisite authority to engage in diplomatic foreign relations on behalf of the Gaza

3   Strip with sovereign nations.[15]

4   xvii.       Atlantic concedes that Hamas' actions fall outside "established norms

5   of warfare" and that "the rockets are being fired into civilian areas, which may

6   violate established norms of warfare and armed conflict under international law."

7   Atlantic's July 28, 2014 coverage opinion letter, p. 7.

8   **INTERROGATORY NO. 6:**

9   State all facts that support YOUR position that the activity in Israel and

10   Palestine in 2014 that led YOU to move the production of *DIG* out of Israel was

11   not insurrection, rebellion, revolution, usurped power, or action taken by

12   governmental authority in hindering or defending against any of these.

13   **RESPONSE TO INTERROGATORY NO. 6:**

14   Plaintiffs object to this interrogatory to the extent it seeks information

15   potentially protected by the attorney-client privilege or work product doctrine.

16   Plaintiffs also object to the extent the interrogatory calls for a legal conclusion.

17   Plaintiffs also object on the grounds of relevance to the extent that Atlantic uses

18   the terms "insurrection, rebellion, revolution, usurped power, or action taken by

19   governmental authority in hindering or defending against any of these" in any

20   sense other than that intended by the exclusion language in Section III.3. of the

21   General Conditions of the Policy.  Plaintiffs also object to the extent the

22   interrogatory seeks to shift the burden from Atlantic to Plaintiffs to prove that the

23   exclusions set forth in Section III of the General Conditions of the POLICY do not

24   apply to this claim.  Plaintiffs also object to the extent this interrogatory asks

25   Plaintiffs to state all facts which support Plaintiffs' position.  Plaintiffs note that

26

27   _____

[15]  U.S. Department of Treasury, U.S. Designates Five Charities Funding Hamas
28   and Six Senior Hamas Leaders as Terrorist Entities (available at
https://www.treasury.gov/press-center/press-releases/Pages/js672.aspx).

Mitchell
Silberberg &
Knupp LLP

**EXHIBIT 1  PG.  24**

1  discovery is ongoing and additional facts may subsequently be discovered which

2  may be responsive to this interrogatory.

3          Subject to and without waiving the foregoing objections and preliminary

4  statement, key facts which support Plaintiffs' position that the activity in and

5  around the filming locations of *Dig* in Israel in July 2014 did not fall within the

6  exclusion language of Section III.3. of the General Conditions of the Policy

7  include all facts stated in Plaintiffs' response to Interrogatory No. 5 above.

8  Additional facts supporting Plaintiffs' position include, but are not limited to:

9          i.       Hamas is a terrorist group designated as such by the United States

10  government.[16]

11          ii.      Hamas launched the mortar fire and rockets from inside Gaza against

12  Israeli cities and towns.[17]

13          iii.     Hamas deliberately targeted civilians in its firing of mortars and

14  rockets into Israel.[18]

15          iv.      Hamas' conduct in firing mortars and rockets into Israel from Gaza

16  was characterized by the U.S. State Department as being the "deliberate targeting

17  of civilians" by terrorists, and was strongly condemned by the State Department.[19]

18          v.       Hamas aims to terrorize Israel's civilian population in order to disrupt

19  the Middle East peace process.[20]

20  _____

21  [16] U.S. Department of State, Foreign Terrorist Organizations (available at
http://www.state.gov/j/ct/rls/other/des/123085.htm).

22  [17] U.S. Department of State, Israel, The West Bank and Gaza Travel Warning,
July 21, 2014 (available at https://web.archive.org/web/20140724171638/

23  http://travel.state.gov/content/passports/english/alertswarnings/israel-travel-
warning.html).

24  [18] The White House, Daily Briefing by the Press Secretary, July 8, 2014 (available

25  at https://www.whitehouse.gov/the-press-office/2014/07/08/daily-briefing-press-
secretary-07082014).

26  [19] U.S. Department of State, Daily Press Briefing, Washington, DC, July 8, 2014
(available at http://www.state.gov/r/pa/prs/dpb/2014/07/228878.htm).

27  [20] U.S. Department of Treasury, U.S. Designates Five Charities Funding Hamas and

28  Six Senior Hamas Leaders as Terrorist Entities (available at
https://www.treasury.gov/press-center/press-releases/Pages/js672.aspx).

Mitchell
Silberberg &
Knupp LLP

15

**EXHIBIT 1  PG.  25**

1        vi.    Atlantic did not contend in its July 28, 2014 coverage position letter

2   (ATL00094-101) that the claim was excluded because Hamas' conduct constituted

3   "insurrection, rebellion, revolution, usurped power, or action taken by

4   governmental authority in hindering or defending against any of these" as set forth

5   in the POLICY, General Conditions, § III.

6        vii.    Atlantic did not raise this exclusion until it filed its Answer to the

7   FAC (ECF No. 14) on August 5, 2016.  It is Atlantic's burden to prove that an

8   exclusion applies which precludes coverage for loss that is otherwise covered

9   under the POLICY.  Atlantic cannot shift its initial burden to prove that an

10   exclusion applies to Plaintiffs.

11   **INTERROGATORY NO. 7:**

12        State all facts that support YOUR position that the activity in Israel and

13   Palestine in 2014 that led YOU to move the production of *DIG* out of Israel was

14   not warlike action by a military force, including action in hindering or defending

15   against an actual or expected attack, by any government, sovereign or other

16   authority using military personnel or other agents.

17   **RESPONSE TO INTERROGATORY NO. 7:**

18        Plaintiffs object to this interrogatory to the extent it seeks information

19   potentially protected by the attorney-client privilege or work product doctrine.

20   Plaintiffs also object to the extent the interrogatory calls for a legal conclusion.

21   Plaintiffs also object on the grounds of relevance to the extent that Atlantic uses

22   the terms "warlike action by a military force, including action in hindering or

23   defending against an actual or expected attack, by any government, sovereign or

24   other authority using military personnel or other agents" in any sense other than

25   that intended by the exclusion language in Section III.2. of the General Conditions

26   of the Policy.  Plaintiffs also object to the extent the interrogatory seeks to shift the

27   burden from Atlantic to Plaintiffs to prove that the exclusions set forth in Section

28   III of the General Conditions of the POLICY do not apply to this claim.  Plaintiffs

Mitchell Silberberg & Knupp LLP

16

**EXHIBIT 1  PG.  26**

1   also object to the extent this interrogatory asks Plaintiffs to state all facts which

2   support Plaintiffs' position.  Plaintiffs note that discovery is ongoing and additional

3   facts may subsequently be discovered which may be responsive to this

4   interrogatory.

5        Subject to and without waiving the foregoing objections and preliminary

6   statement, key facts which support Plaintiffs' position that the activity in and

7   around the filming locations of *Dig* in Israel in July 2014 did not fall within the

8   exclusion language of Section III.2. of the General Conditions of the Policy,

9   include all facts stated in Plaintiffs' response to Interrogatory No. 5 above.

10   Additional facts supporting Plaintiffs' position include, but are not limited to:

11      i.    Hamas is designated as a terrorist organization by the United States

12   government.[21]

13      ii.   Hamas is not recognized as a sovereign authority or government, and

14   the Gaza Strip is not recognized as a sovereign nation.  *Id.*

15      iii.   Hamas' "military wing," the Izz al-Din al-Qassam Brigades, is not a

16   military force engaged in standard acts of warfare.  *Id.*

17      iv.   Hamas deliberately targeted Israel's civilian population.[22]

18      v.    Among other things, Hamas engages in terrorist acts by its firing of

19   mortars and rockets into Israeli homes, and large scale suicide bombings.[23]

20      vi.   Atlantic concedes that Hamas' actions fall outside "established norms

21   of warfare" and that "the rockets are being fired into civilian areas, which may

22

---

23 [21] U.S. Department of State, Foreign Terrorist Organizations (available at http://www.state.gov/j/ct/rls/other/des/123085.htm); U.S. Department of State,

24 Independent States in the World (available at http://www.state.gov/s/inr/rls/4250.htm).

25 [22] U.S. Department of State, Daily Press Briefing, Washington, DC, July 8, 2014 (available at http://www.state.gov/r/pa/prs/dpb/2014/07/228878.htm).

26 [23] U.S. Department of State, Daily Press Briefing, Washington, DC, July 8, 2014

27 (available at http://www.state.gov/r/pa/prs/dpb/2014/07/228878.htm) and U.S. Department of Treasury, U.S. Designates Five Charities Funding Hamas and Six

28 Senior Hamas Leaders as Terrorist Entities (available at https://www.treasury.gov/press-center/press-releases/Pages/js672.aspx).

Mitchell Silberberg & Knupp LLP

1   violate established norms of warfare and armed conflict under international law."

2   Atlantic's July 28, 2014 coverage opinion letter, p. 7.

3   **INTERROGATORY NO. 8:**

4       IDENTIFY all PERSONS involved in the negotiation, acquisition, or

5   purchase of the POLICY and state what each PERSON'S role was in the purchase

6   of the POLICY, including the location of each PERSON while negotiating for or

7   discussing the purchase of the POLICY.

8   **RESPONSE TO INTERROGATORY NO. 8:**

9       Plaintiffs object to this interrogatory to the extent it contains multiple

10  subparts within the meaning of FRCP 33(a)(1), and is burdensome and oppressive.

11  Subject to and without waiving the foregoing objections and preliminary statement,

12  Plaintiffs respond as follows:

13      Andrea Garber and Susan Weiss, acting on behalf of, *inter alia*,

14  NBCUniversal and UCP, as insurance brokers employed by Aon, were primarily

15  involved in the negotiation with, acquisition from, or purchase of the POLICY.

16  Their involvement was in connection with the rate, pricing, and conditions of the

17  POLICY.  At the time of the negotiation and acquisition of the POLICY, these

18  individuals were located in Universal City and Sherman Oaks, California,

19  respectively.  They may only be contacted through the undersigned counsel of

20  record for Plaintiffs.

21      The following persons, acting as agents of Atlantic, are believed to have

22  been involved in the issuance of the POLICY on Atlantic's behalf:  Peter Williams

23  who was located in Los Angeles, California at the pertinent time period, Wanda

24  Phillips, and Bernadette Milnovich, who are believed to have been located in New

25  York at the pertinent time period.

26  **INTERROGATORY NO. 9:**

27      IDENTIFY each natural person employed by or representing YOU or any of

28  YOUR affiliates, and each person employed by or representing Aon/Albert G.

Mitchell
Silberberg &
Knupp LLP

18

**EXHIBIT 1  PG.  28**

1    Ruben Insurance Services, Inc., who received a copy of the POLICY once it was

2    issued by ATLANTIC, and state the date each such copy of the POLICY was

3    received by each such person, from whom each person received it, and the location

4    from which each such copy of the POLICY was received.

5    **RESPONSE TO INTERROGATORY NO. 9:**

6        Plaintiffs object to this interrogatory to the extent it seeks information not

7    relevant to any party's claim or defense or proportional to the needs of the case,

8    contains multiple subparts within the meaning of FRCP 33(a)(1), and is unlimited

9    in time and scope, thus rendering it overbroad, burdensome, and oppressive.

10   Plaintiffs cannot reasonably be expected to identify each person who received a

11   copy of the POLICY.  Plaintiffs also object to this interrogatory to the extent it

12   seeks information as to persons employed by or representing Aon/Albert G. Ruben

13   Insurance Services, Inc.  Subject to and without waiving the foregoing objections

14   and preliminary statement, Plaintiffs respond as follows:

15        Plaintiffs believe that the following persons, acting on behalf of, *inter alia*,

16   NBCUniversal and UCP as insurance brokers employed at the time by Aon,

17   received a copy of the POLICY, at or around the time of its issuance:  Andrea

18   Garber (located in Universal City, California at the pertinent time period), who

19   may only be contacted through the undersigned counsel of record for Plaintiffs.

20   Susan Weiss and potentially other Aon employees (located in Sherman Oaks,

21   California at the pertinent time period) would also have received a copy of the

22   POLICY.  Plaintiffs believe that the above-listed persons received a copy of the

23   POLICY in California from Atlantic's agents, Wanda Phillips or Bernadette

24   Milnovich who are believed to have been located in New York at the pertinent

25   time period.

26        Kurt Ford, who was located in Universal City, California at the pertinent

27   time period, acting on behalf of NBCUniversal and UCP, received a copy of the

28

Mitchell Silberberg & Knupp LLP

19

EXHIBIT 1  PG.  29

1   POLICY, from one or more of Aon's employees identified above, at or around the

2   time of the issuance of the POLICY.

3   **INTERROGATORY NO. 10:**

4        State all the facts that YOU considered in deciding whether it was safe to

5   film *DIG* in Israel, both before filming in Israel began and after filming in Israel

6   began.

7   **RESPONSE TO INTERROGATORY NO. 10:**

8        Plaintiffs object to this interrogatory to the extent it seeks information

9   potentially protected by the attorney-client privilege or work product doctrine.

10  Plaintiffs also object to this interrogatory to the extent it contains multiple subparts

11  within the meaning of FRCP 33(a)(1), thus rendering it overbroad, burdensome,

12  and oppressive.  Plaintiffs also object to the extent it requires Plaintiffs to state all

13  facts which support Plaintiffs' position.  Plaintiffs note that discovery is ongoing

14  and additional facts may subsequently be discovered which may be responsive to

15  this interrogatory.  Subject to and without waiving the foregoing objections and

16  preliminary statement, key facts which Plaintiffs considered in deciding whether it

17  was safe to film *Dig* in Israel prior to filming going forward and after filming

18  began include the following:

19       Prior to about July 2014, the conditions in Israel were considered safe to

20  film *Dig* there.  *See, e.g.*, U.S. Department of State, Israel, The West Bank and

21  Gaza Travel Warning, February 3, 2014 (effective through about July 21, 2014)

22  (*e.g.*, "Personal safety conditions in major metropolitan areas, including Tel Aviv

23  and Haifa and their surrounding regions, are comparable to or better than those in

24  other major global cities.") (available at

25  https://web.archive.org/web/20140718040911/http://travel.state.gov/content/passp

26  orts/english/alertswarnings/israel-travel-warning.html).

27       UCP involved the NBCUniversal Security team in planning for production

28  in Israel, and conducted due diligence as to the safety of filming in Israel.  UCP

Mitchell
Silberberg &
Knupp LLP

20

**EXHIBIT 1  PG.  30**

1    and NBCUniversal Security consulted with the local production services company,

2    Keshet, local police, and the mayor of Jerusalem, among other sources, about

3    ensuring the safety of the production company while filming in Jerusalem and

4    Israel.  UCP advised Atlantic on or about December 11, 2013, that the *Dig*

5    production would take place in Israel, and informed Atlantic about the measures

6    regarding safety that it had taken, *e.g.*:

7           "The NBCU Security team is already involved in the

8           prepping of this project and they are meeting weekly with

9           the production folks that are currently on board to discuss

10          precautions and procedures that need to be taken as the

11          project develops. These discussions include people from

12          the production services company, Keshet. I have been

13          advised that the mayor of Jerusalem and the local police

14          have been contacted and are assisting in assuring the

15          safety of the production company when they are working

16          in Jerusalem."

17   ATL000405 (December 11, 2013 email from A. Garber to Atlantic

18   representatives).

19          Atlantic added *Dig* as an Insured Production under the POLICY with full

20   knowledge of the filming locations.  *See, e.g.*, ATL000437 (*Dig* Television

21   Insurance Application, describing the filming locations:  "Tel Aviv and West

22   Jerusalem in Israel and Toronto, Canada.  Production service company Keshet will

23   be used in Israel."), ATL000405 and ATL000438 (Atlantic accepting *Dig* as an

24   Insured Production).

25          After the filming of *Dig* began in Israel, the safety conditions continued to

26   be assessed, and Atlantic was promptly advised when conditions changed.

27   Plaintiffs hereby incorporate herein all facts stated in their response to

28

Mitchell
Silberberg &
Knupp LLP

21

PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

**EXHIBIT 1  PG.  31**

Interrogatory No. 3 above as to key facts which Plaintiffs considered in deciding whether it was safe to film *Dig* in Israel after Hamas' terrorist activities began.

**INTERROGATORY NO. 11:**

State the principal place of business of each of the Plaintiffs in this case.

**RESPONSE TO INTERROGATORY NO. 11:**

Subject to and without waiving the foregoing preliminary statement, Plaintiffs respond as follows:

The principal place of business of UCP and Northern Entertainment is Universal City, California.

**INTERROGATORY NO. 12:**

IDENTIFY the PERSON or PERSONS who paid a premium for the POLICY and state the location of that PERSON while paying those premiums, and state the method of payment and to whom and when such payment was made.

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiffs object to this interrogatory to the extent it seeks information not relevant to any party's claim or defense or proportional to the needs of the case, contains multiple subparts within the meaning of FRCP 33(a)(1), and is burdensome and oppressive, including by seeking certain information available to Atlantic. Subject to and without waiving the foregoing objections and preliminary statement, Plaintiffs respond as follows:

All required premiums for the POLICY were paid by NBC Studios, LLC # 1 located in Universal City, California, by the issuance of physical checks payable to "Aon/Albert G. Ruben Insurance Services, Inc." to be remitted to Atlantic or its agent. Kurt Ford, located in Universal City, California, arranged for and requested the checks, and delivered them to Andrea Garber, Aon's employee at the time, located in Universal City, California, for delivery to Atlantic.

1 **INTERROGATORY NO. 13:**

2    Please IDENTIFY all PERSONS who you believe have or might have

3 knowledge of the facts concerning the contentions and allegations in the Plaintiffs'

4 First Amended Complaint and please state in detail the facts of which you believe

5 each such PERSON is aware.  The response to this interrogatory should include the

6 knowledge of each PERSON identified in Plaintiffs' Rule 26(a)(1) Disclosures, as

7 well as the knowledge of any other PERSON with facts concerning the contentions

8 and allegations in the Plaintiff' First Amended Complaint.

9 **RESPONSE TO INTERROGATORY NO. 13:**

10    Plaintiffs object to this interrogatory to the extent it seeks information

11 potentially protected by the attorney-client privilege or work product doctrine.

12 Plaintiffs also object to the extent the interrogatory contains multiple subparts

13 within the meaning of FRCP 33(a)(1), is overly broad, unduly burdensome, and

14 harassing.  Plaintiffs also object to the extent it requests information not in

15 Plaintiffs' possession, custody or control because Plaintiffs cannot possibly know

16 all PERSONS who "might have knowledge" about the allegations in Plaintiffs'

17 First Amended Complaint, including PERSONS not employed by Plaintiffs.

18 Subject to and without waiving the foregoing objections and preliminary statement,

19 Plaintiffs respond as follows:

20    Plaintiffs incorporate herein all facts stated in Plaintiffs' Initial Disclosures,

21 Section I, dated September 16, 2016, and Plaintiffs' responses to Interrogatory

22 Nos. 1, 2, 3, 4, 5, 8, and 9 above, which provide information responsive to, *inter*

23 *alia*, this interrogatory.

24 **INTERROGATORY NO. 14:**

25    IDENTIFY all investigative services, investigators, employees, lawyers, or

26 other PERSONS used by YOU to investigate the LOSS, the CLAIM, or the facts

27 and circumstances underlying the LOSS or the CLAIM.

28

Mitchell
Silberberg &
Knupp LLP

**EXHIBIT 1  PG.  33**

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiffs object to this interrogatory to the extent it seeks information potentially protected by the attorney-client privilege or work product doctrine. Plaintiffs also object to the extent the interrogatory contains multiple subparts within the meaning of FRCP 33(a)(1), is overly broad, unduly burdensome, and harassing.  Plaintiffs also object to this interrogatory on the grounds that it is vague, ambiguous, and unintelligible.  It is more properly directed to Atlantic, as the insurer for the LOSS.  Plaintiffs suffered the LOSS, which is covered by the POLICY and duly submitted a CLAIM for the LOSS to Atlantic, who, among other things, failed to properly investigate it and refused to pay it.  Subject to and without waiving the foregoing objections and preliminary statement, and based on Plaintiffs' understanding of this interrogatory, Plaintiffs respond as follows:

Plaintiffs incorporate herein all facts stated in Plaintiffs' responses to Interrogatories No. 1, 2, 3, 4, and 5 above.  In addition, as to the amount of LOSS suffered, Randi Richmond and BJ Markus were primarily involved in compiling information regarding the extra expenses and costs incurred by Plaintiffs as a result of the relocation of the production out of Israel.  This information was produced to Atlantic on October 26, 2016.  *See* UCP000001, *et seq.*

**INTERROGATORY NO. 15:**

Explain in detail any steps you took to minimize the LOSS or to mitigate the damages claimed in this LAWSUIT, and IDENTIFY the PERSON or PERSONS taking such steps and state when those steps were taken.

**RESPONSE TO INTERROGATORY NO. 15:**

Plaintiffs object to this interrogatory to the extent it seeks information potentially protected by the attorney-client privilege or work product doctrine. Plaintiffs also object to this interrogatory on the grounds that it contains multiple subparts within the meaning of FRCP 33(a)(1), is overly broad, unduly burdensome, harassing, and is vague and ambiguous.  Plaintiffs also object to the

Mitchell
Silberberg &
Knupp LLP

24

PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

**EXHIBIT 1  PG.  34**

1  extent the interrogatory calls for a legal conclusion.  Subject to and without

2  waiving the foregoing objections and preliminary statement, Plaintiffs respond as

3  follows:

4         On or about July 11, 2014, UCP decided to postpone production of the *Dig*

5  episodes which had been scheduled to resume on July 20, 2014, due to the

6  circumstances then occurring in and around the locations for filming.  The crew

7  (and Atlantic) were advised on that same date that production was being "pushed,"

8  and that the crew services would not be required the following week.  In the

9  interim, to minimize damages, any crew that were hired from out of country

10 (Israel) were flown to their respective home locations, and the local crew in Israel

11 was reduced to minimum staffing.  Atlantic was advised and continuously apprised

12 of the situation.  *See, e.g.*, ATL000298.  While UCP would have been justified if it

13 had moved the production on or about July 11, 2014 due to safety concerns, UCP

14 initially decided to postpone the production to see if the situation would improve,

15 in an effort to minimize the extra expenses that would be incurred.

16       The situation did not improve, and thus UCP decided it would need to move

17 the production out of Israel.  Plaintiffs note that all decisions needed to be made

18 quickly and the production needed to be moved as rapidly as possible because time

19 was of the essence.  *Dig* had already been licensed to the USA Network, which had

20 already announced a fall 2014 airdate, and UCP needed to deliver the show within

21 the contracted time frame.  Once the decision was made to move the production

22 out of Israel, UCP took all reasonable steps to mitigate and/or minimize the LOSS

23 it suffered in connection with the relocation of the *Dig* production to an alternative

24 suitable location.  Given the significant time constraints to complete the

25 production, which required that the *Dig* production crew work around the clock for

26 multiple weeks, in addition to the efforts described above, UCP took the following

27 steps to minimize or mitigate the LOSS:

28

- UCP considered alternative locations for exterior filming other than Croatia, such as Malta.  Shooting in Malta would have been more expensive and more difficult, because among things, there was limited crew and there were limited locations available at the time due to Malta's popularity as a filming location.  Due to the limited availability of crew, UCP would have had to hire and bring a significant percentage of the crew to Malta to staff the production.  By contrast, in Croatia, local crew was readily available, the location was less expensive, and had sufficient infrastructure for the required filming and production of the exterior scenes.

- UCP also considered alternative locations for the filming and production of interior scenes other than New Mexico.  UCP originally had contemplated filming a remaining portion of the production in Toronto; however, when it was determined the production needed to moved, it chose to forego shooting in Toronto because it would have been a more expensive location.

- The New Mexico location was chosen due to various factors which mitigated and/or minimized the LOSS suffered as a result of the relocation of the *Dig* production, such as the 30% tax credit offered by New Mexico and competitive pricing with adequate infrastructure for filming and production.

- The *Dig* production was moved to *both* Croatia and New Mexico from Israel because neither location individually had the same attributes as Israel.  Croatia had comparable stone color and structures as Jerusalem, with public streets, buildings, and areas such as archaeological dig sites that had the same look and feel as Jerusalem. Thus, while Croatia was suitable for filming exterior scenes and shots, it did not have the requisite sound stages and other studio facilities

Mitchell
Silberberg &
Knupp LLP

26

PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

**EXHIBIT 1  PG.  36**

1    suitable for filming interior scenes.  Conversely, while New Mexico
2    had suitable studio facilities, it did not have the same look or feel as
3    Jerusalem as did Croatia.  Therefore, it was necessary to film in both
4    Croatia and New Mexico.

5    •    Under similar circumstances where an entire production was required
6        to be moved, additional production days would typically be added to
7        the schedule, which would have significantly increased costs.  UCP
8        personnel and the *Dig* production crew went above and beyond the
9        normal requirements of a television production to ensure that
10       additional days were not added, working around the clock for multiple
11       weeks to ensure that additional shooting days were not needed.
12       Relocation would have justified extending the number of shooting
13       days beyond the originally scheduled number, at a considerable
14       expense for each additional day.  UCP, however, made significant
15       efforts to adhere to the schedule.  As a result, shooting was completed
16       in the same number of days as originally scheduled, significantly
17       decreasing the ultimate amount of Plaintiffs' LOSS.

18   The persons primarily involved in connection with the above-described
19   efforts are:  Mark Binke, Randi Richmond, and Kurt Ford.

20   Atlantic's conduct in failing and refusing to pay the *Dig* claim made it
21   impossible and prevented Plaintiffs from minimizing or mitigating other damages
22   claimed in this action, including but not limited to Plaintiffs' legal fees, expenses,
23   and costs incurred and to be incurred as a result of their efforts to obtain coverage
24   under the POLICY, punitive damages, interest, and other relief.

25   **INTERROGATORY NO. 16:**

26   State all facts that support YOUR position that the activity in Israel and
27   Palestine in 2014 that led YOU to move the production of *DIG* did not relate
28   directly or indirectly from the use of any weapon of war.

Mitchell
Silberberg &
Knupp LLP

27

**EXHIBIT 1  PG.  37**

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiffs object to this interrogatory to the extent it seeks information potentially protected by the attorney-client privilege or work product doctrine. Plaintiffs also object to the extent the interrogatory calls for a legal conclusion. Plaintiffs also object on the grounds of relevance to the extent that Atlantic uses the term "the use of any weapon of war" in any sense other than that intended by the exclusion language in Section III.4. of the General Conditions of the Policy." Plaintiffs further object to this interrogatory to the extent it misstates the language of the POLICY.  Plaintiffs also object to the extent the interrogatory seeks to shift the burden from Atlantic to Plaintiffs to prove that the exclusions set forth in Section III of the General Conditions of the POLICY do not apply to this claim. Plaintiffs also object to the extent this interrogatory asks Plaintiffs to state all facts which support Plaintiffs' position.  Plaintiffs note that discovery is ongoing and additional facts may subsequently be discovered which may be responsive to this interrogatory.

Subject to and without waiving the foregoing objections and preliminary statement, key facts which support Plaintiffs' position that the activity in and around the filming locations of *Dig* in Israel in July 2014 did not fall within the exclusion language of Section III.4. of the General Conditions of the Policy include all facts stated in Plaintiffs' response to Interrogatory Nos. 5 and 7 above. Additional facts supporting Plaintiffs' position include, but are not limited to:

i.      The United States government considers Hamas' violent acts directed against Israeli citizens to be acts of terror, not war.[24]

ii.     Hamas is not a sovereign or quasi-sovereign entity.[25]

---

[24] U.S. Department of State, Israel, The West Bank and Gaza Travel Warning, July 21, 2014 (available at https://web.archive.org/web/20140724171638/ http://travel.state.gov/content/passports/english/alertswarnings/israel-travel-warning.html).

[25] U.S. Department of State, Foreign Terrorist Organizations (available at http://www.state.gov/j/ct/rls/other/des/123085.htm); U.S. Department of State,

Mitchell
Silberberg &
Knupp LLP

28

**EXHIBIT 1  PG.  38**

1   iii.  Hamas deliberately targeted rockets and mortars directed at Israel's

2 civilian population.[26]

3   iv.  Hamas was acting outside the norms of warfare when it arbitrarily

4 targeted civilian populations for the purpose of inciting terror.[27]

5   v.  Atlantic concedes that Hamas' actions fall outside "established norms

6 of warfare" and that "the rockets are being fired into civilian areas, which may

7 violate established norms of warfare and armed conflict under international law."

8 Atlantic's July 28, 2014 coverage opinion letter, p. 7.

9   vi.  No rockets or mortar fire landed on any *Dig* production location.

10 Weapons of war did not cause the LOSS sustained by Plaintiffs because the LOSS

11 was caused by the atmosphere of terror created by Hamas' random and

12 indiscriminate firing of mortars and rockets and the potential threat of other attacks

13 which could be used by Hamas, such as suicide bombers.

14   vii.  In Atlantic's July 28, 2014 coverage position letter (ATL00094-101),

15 Atlantic did not invoke a coverage exclusion based on "any weapon of war

16 including atomic fission or radioactive force" as set forth in the POLICY, General

17 Conditions, § III.  Atlantic only raised this exclusion in its Answer to the FAC

18 (ECF No. 14) filed on August 5, 2016.  It is Atlantic's burden to prove that an

19 exclusion applies which precludes coverage for loss that is otherwise covered

20 under the POLICY.  Atlantic cannot shift its initial burden to prove that an

21 exclusion applies to Plaintiffs.

22

23

24 _____
(…continued)

25 Independent States in the World (available at
http://www.state.gov/s/inr/rls/4250.htm).

26 [26] U.S. Department of State, Daily Press Briefing, Washington, DC, July 8, 2014
(available at http://www.state.gov/r/pa/prs/dpb/2014/07/228878.htm).

27 [27] U.S. Department of Treasury, U.S. Designates Five Charities Funding Hamas

28 and Six Senior Hamas Leaders as Terrorist Entities (available at
https://www.treasury.gov/press-center/press-releases/Pages/js672.aspx).

Mitchell
Silberberg &
Knupp LLP

29

**EXHIBIT 1  PG.  39**

**INTERROGATORY NO. 17:**

State all facts that support YOUR contention that ATLANTIC breached the duty of good faith and fair dealing in connection with the CLAIM.

**RESPONSE TO INTERROGATORY NO. 17:**

Plaintiffs object to this interrogatory to the extent it seeks information potentially protected by the attorney-client privilege or work product doctrine. Plaintiffs also object to the extent this interrogatory asks Plaintiffs to state all facts which support Plaintiffs' position. Plaintiffs note that discovery is ongoing and additional facts may subsequently be discovered which may be responsive to this interrogatory. Subject to and without waiving the foregoing objections and preliminary statement, key facts which support Plaintiffs' contention that Atlantic breached the duty of good faith and fair dealing in connection with the *Dig* claim include all facts alleged in Plaintiffs' FAC (ECF No. 10). Specifically, among other things:

i.     <u>Atlantic unreasonably denied benefits rightfully due</u>:  On or about July 11, 2014, NBCUniversal advised Atlantic that due to the circumstances and concomitant safety concerns for cast and crew members, production of *Dig* was being postponed. On that same date, NBCUniversal also advised Atlantic that if conditions in Israel continued to deteriorate, UCP might be compelled to move the *Dig* production out of Israel. At the time NBCUniversal informed Atlantic (through Andrea Garber and Susan Weiss) of the initial postponement, Atlantic told NBCUniversal (through its agent, Peter Williams) that the expenses associated with the postponement would be covered under the Extra Expense coverage of the POLICY. However, despite Atlantic's admission that an insured event had occurred and the initial expenses associated with the postponement of the *Dig* production would be covered, Atlantic thereafter reneged, and failed and refused to pay the losses associated with the relocation.

1    ii.    Atlantic wrongfully applied an inapplicable exclusion to deny the *Dig*
2 claim: Atlantic wrongfully claimed that the war exclusion applied, without having
3 a reasonable basis for application of the exclusion, given all of the facts and
4 circumstances of which Atlantic was aware at the time it denied the claim.  It does
5 not apply, as further detailed by the facts set forth in the FAC and in response to
6 Interrogatories No. 5 and 7, above.

7    iii.    Atlantic misrepresented the terms of the POLICY:  In its coverage
8 opinion letter dated July 28, 2014, Atlantic misrepresented the terms of the
9 POLICY to its insureds, Plaintiffs, and specifically, the statements made regarding
10 the Endorsement entitled "Coverage for Certified Acts of Terrorism; Cap on
11 Losses" in an effort to avoid its obligation to pay losses on the *Dig* claim, as
12 further detailed in the FAC, ¶¶ 35-38.

13    iv.    Atlantic failed to evaluate the *Dig* claim objectively:  Atlantic favored
14 its own financial interests above those of its insureds by basing its decision to deny
15 the *Dig* claim on, among other things, the overall financial performance of
16 Atlantic's insurance relationship with its insureds and the resulting financial
17 impact on Atlantic, rather than objectively evaluating the *Dig* claim based solely
18 on the facts and circumstances giving rise to the claim, as further detailed in the
19 FAC, ¶¶ 39-41.

20    v.    Atlantic interpreted the POLICY and law unreasonably and
21 arbitrarily:  Atlantic wrongfully attempted to justify its application of the war
22 exclusion by unreasonably and arbitrarily interpreting and ignoring applicable law,
23 the designation of Hamas as a terrorist organization by the United States
24 government, the government's refusal to recognize Hamas as a sovereign
25 government or the Gaza Strip as a sovereign state, and applicable law as to what
26 constitutes a quasi-sovereign entity, as further detailed by the facts set forth in the
27 FAC and in response to Interrogatory No. 5, above.

28

Mitchell
Silberberg &
Knupp LLP

PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

**EXHIBIT 1  PG.  41**

1     vi.      <u>Atlantic failed to investigate the *Dig* claim objectively and</u>

2  <u>thoroughly</u>:  According to Atlantic's discovery response dated December 13, 2016

3  to Plaintiffs' Interrogatory No. 15:  "Thus far, Atlantic has not located any other

4  claim in which it denied the claim in whole or in part on the basis of the WAR

5  EXCLUSION"—in the entire history of Atlantic.  Thus, Atlantic had no relevant

6  experience or expertise to consider in evaluating the claim.  Atlantic assigned

7  Daniel Gutterman and Pamela Johnson to "investigate" the *Dig* claim, but they had

8  no or little relevant expertise to analyze the facts and circumstances of the claim or

9  assess applicable law.  Despite the lack of institutional or other relevant expertise,

10  it took Atlantic (Ms. Johnson and Mr. Gutterman) only two business days to

11  purportedly investigate the *Dig* claim and deny it.  Moreover, the denial was a

12  reversal of Atlantic's admission, only days earlier, that an insured event had

13  occurred and the initial expenses associated with the postponement of the *Dig*

14  production would be covered, as noted above in subparagraph (i).

15     vii.    <u>Atlantic failed to objectively reconsider its denial of the *Dig* claim</u>:

16  Despite the quick denial of the claim, Atlantic failed to objectively reconsider its

17  position despite multiple requests that it do so, when Plaintiffs pointed out the

18  pronouncements of the United States government as to Hamas' status as a terrorist

19  organization, the government's refusal to recognize Hamas as a sovereign

20  government or the Gaza Strip as a separate sovereign state, and applicable law as

21  to what constitutes a quasi-sovereign entity, as further detailed in the facts set forth

22  in the FAC and in response to Interrogatory No. 5, above.  Further, Atlantic

23  refused to renew the POLICY, and thus it was no longer in Atlantic's interest to

24  reconsider its denial or pay any amount on the *Dig* claim.

25  **INTERROGATORY NO. 18:**

26     State whether YOU have sought insurance coverage for any losses related to

27  the CLAIM from any other insurer and whether YOU had any other insurance in

28  place during the time that *DIG* was being produced that covered losses

Mitchell
Silberberg &
Knupp LLP

**EXHIBIT 1  PG.  42**

1  RELATING to delays in production or the moving of a production from one place
2  to another.

3  **RESPONSE TO INTERROGATORY NO. 18:**

4      Subject to and without waiving the foregoing preliminary statement and
5  objections, Plaintiffs respond that there is no other insurance coverage for any
6  losses related to the CLAIM, and the POLICY at issue is the only applicable
7  POLICY that Plaintiffs are aware of at this time that provides coverage for the
8  LOSS.

9  **INTERROGATORY NO. 19:**

10      State the amount of YOUR LOSS.

11  **RESPONSE TO INTERROGATORY NO. 19:**

12      Subject to and without waiving the foregoing preliminary statement and
13  objections, Plaintiffs respond as follows:

14      At this time, Plaintiffs calculate that the amount of Plaintiffs' expenses and
15  costs incurred in connection with the delay, postponement, and relocation of the
16  *Dig* production which Atlantic was obligated to, but did not pay, is not less than
17  $7,196,117.87.  *See* UCP000001 (detailed information regarding the incurred
18  expenses and costs).

19  **INTERROGATORY NO. 20:**

20      State the amount of the damages YOU are seeking in this LAWSUIT.

21  **RESPONSE TO INTERROGATORY NO. 20:**

22      Subject to and without waiving the foregoing preliminary statement and
23  objections, Plaintiffs respond as follows:

24      At this time, the amount of Plaintiffs' expenses and costs incurred in
25  connection with the delay, postponement, and relocation of the *Dig* production
26  which Atlantic was obligated to, but did not pay, is not less than $7,196,117.87.
27  *See* UCP000001 (detailed information regarding the incurred expenses and costs).
28  In addition, Plaintiffs will also seek damages in an amount to be determined at trial

Mitchell
Silberberg &
Knupp LLP

33

**EXHIBIT 1  PG.  43**

1   for Atlantic's tortious breach of the insurance contract, including but not limited to

2   Plaintiffs' legal fees, expenses, and costs incurred and to be incurred as a result of

3   their efforts to obtain coverage under the POLICY, and punitive damages.

4          Plaintiffs will also seek pre-judgment interest on all of the above amounts to

5   the full extent permitted by law, in an amount to be determined at trial.

6

7   DATED:  December 30, 2016          LUCIA E. COYOCA
                                       VALENTINE A. SHALAMITSKI
8                                      MITCHELL SILBERBERG & KNUPP LLP

9

10                                 By:   /s/ Valentine A. Shalamitski

11                                     Valentine A. Shalamitski
                                       Attorneys for Plaintiffs
12                                     Universal Cable Productions LLC and
                                       Northern Entertainment
13                                     Productions LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

34

PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

**EXHIBIT 1  PG.  44**

1

**VERIFICATION**

2      I, Gabriela Kornzweig, am Vice President, Corporate Secretary for

3   NBCUniversal Media, LLC, and am authorized to make this verification for and on

4   behalf of Universal Cable Productions LLC, a party to this action, and I make this

5   verification for that reason.

6      I have read the foregoing **PLAINTIFFS' RESPONSE TO**

7   **DEFENDANT'S FIRST SET OF INTERROGATORIES**, and the matters

8   contained therein are true to the best of my knowledge, information and belief.

9      I declare under penalty of perjury under the laws of the United States of

10  America that the foregoing is true and correct.

11

12   Dated:  December __, 2016

13                                        GABRIELA KORNZWEIG

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8483412.1

VERIFICATION

**EXHIBIT 1  PG.  45**

## VERIFICATION

1      I, Gabriela Kornzweig, am Vice President, Corporate Secretary for

2  NBCUniversal Media, LLC, and am authorized to make this verification for and on

3  behalf of Northern Entertainment Productions LLC, a party to this action, and I

4  make this verification for that reason.

5      I have read the foregoing **PLAINTIFFS' RESPONSE TO**

6  **DEFENDANT'S FIRST SET OF INTERROGATORIES,** and the matters

7  contained therein are true to the best of my knowledge, information and belief.

8      I declare under penalty of perjury under the laws of the United States of

9  America that the foregoing is true and correct.

10

11  Dated:  December __, 2016

12                         GABRIELA KORNZWEIG

8483412.1

VERIFICATION

EXHIBIT 1   PG.   46

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

    I am employed in the County of Los Angeles, State of California, I am over the age of eighteen years and am not a party to this action; my business address is Mitchell Silberberg & Knupp LLP, 11377 West Olympic Boulevard, Los Angeles, CA 90064-1683, and my business email address is mxb@msk.com.

4

5

6

    On December 30, 2016, I served a copy of the foregoing document(s) described as **PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES** on the interested parties in this action at their last known address as set forth below by taking the action described below:

7

8

Marc J. Shrake, Esq.
ANDERSON, MCPHARLIN &
CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, CA  90017-3623
Tel:  (213) 236-1691
Fax:  (213) 622-7594
Email:  mjs@amclaw.com

*Attorneys for Defendant Atlantic Specialty Insurance Company*

9

10

11

12

13

Michael Keeley, Esq.
John R. Riddle, Esq.
Carla C. Crapster, Esq.
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, TX  75202
Tel:  (214) 651-4300
Fax:  (214) 651-4330
Email: michael.keeley@strasburger.com;
john.riddle@strasburger.com;
carla.crapster@strasburger.com

*Attorneys for Defendant Atlantic Specialty Insurance Company*

14

15

16

☑ **BY ELECTRONIC MAIL**: I served the above-mentioned document electronically before 5:00 p.m. on the parties listed at the email addresses above and, to the best of my knowledge, the transmission was complete and without error in that I did not receive an electronic notification to the contrary.

17

18

19

☑ **BY MAIL**: I placed the above-mentioned document(s) in sealed envelope(s) addressed as set forth above, and deposited each envelope in the mail at Los Angeles, California.  Each envelope was mailed with postage thereon fully prepaid.

20

21

    I declare under penalty of perjury under the laws of the United States that the above is true and correct.

22

23

    Executed on December 30, 2016, at Los Angeles, California.

24

25

_____
Monica Bowdre

26

27

28

Mitchell
Silberberg &
Knupp LLP

8502109.1

PROOF OF SERVICE

**EXHIBIT 1  PG.  47**

# EXHIBIT 2



MARC J. SHRAKE (SBN 219331)
  mjs@amclaw.com
ANDERSON, MCPHARLIN & CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623
Telephone: (213) 236-1691
Facsimile: (213) 622-7594

MICHAEL KEELEY (*Pro Hac Vice*)
  michael.keeley@strasburger.com
JOHN R. RIDDLE (*Pro Hac Vice*)
  john.riddle@strasburger.com
CARLA C. CRAPSTER (*Pro Hac Vice*)
  carla.crapster@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

Attorneys for Defendant
Atlantic Specialty Insurance Company

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company, <br><br> Defendant. | Case No. 2:16-cv-04435-PA-MRW <br><br> **NOTICE OF TAKING DEPOSITION OF RANDI RICHMOND** <br><br><br> Date:      February 1, 2017 <br> Time:      9:00 a.m. <br> Location:  707 Wilshire Blvd. <br> Suite 4000 <br> Los Angeles, CA 90017 |

/ / /

/ / /

/ / /

Sidebar (vertical): ANDERSON, McPHARLIN & CONNERS LLP — Lawyers — 707 WILSHIRE BOULEVARD, SUITE 4000 — LOS ANGELES, CALIFORNIA 90017-3623

1515571.1 05608-054

1

NOTICE OF TAKING DEPOSITION OF RANDI RICHMOND

**EXHIBIT 2  PG.  49**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

1  TO:    Plaintiffs Universal Cable Productions, LLC, and Northern Entertainment

2          Production LLC by and through their counsel of record, Lucia E. Coyoca and

3          Valentine A. Shalamitski, Esq., Mitchell Silberberg & Knupp LLP, 11377

4          West Olympic Boulevard, Los Angeles, CA 90064-1683.

5          PLEASE TAKE NOTICE that Defendant will take the deposition of Randi

6  Richmond on the 1st day of February, 2017, beginning at 9:00 a.m., and continuing

7  thereafter until completed, at the offices of Anderson, McPharlin & Conners LLP,

8  707 Wilshire Blvd., Suite 4000, Los Angeles, California 90017. The deposition will

9  be taken on oral examination pursuant to the Federal Rules of Civil Procedure

10 before a certified court reporter authorized to take deposition and will be recorded

11 stenographically and will be videotaped. Said deposition when so taken and returned

12 according to law may be used upon trial or other hearing of this cause.

13         If an interpreter is required, the undersigned must be notified in writing at

14 least five (5) days prior to the deposition date of the language spoken by the

15 deponent.

16 DATED: January 6, 2017          MARC J. SHRAKE
17                                 ANDERSON, McPHARLIN & CONNERS LLP

18                                           -and-

19
20                                 MICHAEL KEELEY *(Pro Hac Vice)*
                                   JOHN R. RIDDLE *(Pro Hac Vice)*
21                                 CARLA C. CRAPSTER *(Pro Hac Vice)*
                                   STRASBURGER & PRICE, LLP
22
23                                 By:     */s/ Michael Keeley*
                                   _____
24                                          Michael Keeley

25                                 Attorneys for Defendant ATLANTIC
26                                 SPECIALTY INSURANCE COMPANY

27

28

**EXHIBIT 2  PG.  50**

## PROOF OF SERVICE

I am employed in the County of Dallas, State of Texas.  I am over the age of eighteen years and not a party to the within action; my business address is 901 Main Street, Suite 6000, Dallas, Texas 75202.

On January 6, 2017, I served the following document(s) described as **NOTICE OF TAKING DEPOSITION OF RANDI RICHMOND** on the interested parties in this action at their last known address as set forth below by taking the action described below:

> Lucia E. Coyoca, Esq.                    Attorneys for Plaintiffs
> Valentine A. Shalamitski, Esq.
> Mitchell Silberberg & Knupp LLP
> 11377 West Olympic Boulevard
> Los Angeles, CA  90064-1683
> Telephone: (310) 312-2000
> Facsimile: (310) 312-3100
>
> Email:
> lec@msk.com
> vas@msk.com

☑      **BY ELECTRONIC MAIL**: I served the above mentioned document electronically on the parties listed at the email addresses above and, to the best of my knowledge, the transmission was complete and without error in that I did not receive an electronic notification to the contrary.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 6, 2017, at Dallas, Texas


_____
Marianna Green

**NOTICE OF TAKING DEPOSITION OF RANDI RICHMOND**

8595738.1/SP/15247/0131/010617

**EXHIBIT 2  PG.  51**



MARC J. SHRAKE (SBN 219331)
mjs@amclaw.com
ANDERSON, MCPHARLIN & CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623
Telephone: (213) 236-1691
Facsimile: (213) 622-7594

MICHAEL KEELEY *(Pro Hac Vice)*
michael.keeley@strasburger.com
JOHN R. RIDDLE *(Pro Hac Vice)*
john.riddle@strasburger.com
CARLA C. CRAPSTER *(Pro Hac Vice)*
carla.crapster@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

Attorneys for Defendant
Atlantic Specialty Insurance Company

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,<br><br>            Plaintiffs,<br><br>      vs.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,<br><br>            Defendant. | Case No. 2:16-cv-04435-PA-MRW<br><br>**NOTICE OF TAKING DEPOSITION OF MARK BINKE**<br><br><br><br>Date:       January 31, 2017<br>Time:       9:00 a.m.<br>Location:  707 Wilshire Blvd.<br>              Suite 4000<br>              Los Angeles, CA 90017 |

/ / /

/ / /

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

1515571.1 05608-054

1
**NOTICE OF TAKING DEPOSITION OF MARK BINKE**

**EXHIBIT 2  PG.  52**

/ / /

TO:    Plaintiffs Universal Cable Productions, LLC, and Northern Entertainment
        Production LLC by and through their counsel of record, Lucia E. Coyoca and
        Valentine A. Shalamitski, Esq., Mitchell Silberberg & Knupp LLP, 11377
        West Olympic Boulevard, Los Angeles, CA 90064-1683.

        PLEASE TAKE NOTICE that Defendant will take the deposition of Mark
Binke on the 31st day of January, 2017, beginning at 9:00 a.m., and continuing
thereafter until completed, at the offices of Anderson, McPharlin & Conners LLP,
707 Wilshire Blvd., Suite 4000, Los Angeles, California 90017. The deposition will
be taken on oral examination pursuant to the Federal Rules of Civil Procedure
before a certified court reporter authorized to take deposition and will be recorded
stenographically and will be videotaped. Said deposition when so taken and returned
according to law may be used upon trial or other hearing of this cause.

        If an interpreter is required, the undersigned must be notified in writing at
least five (5) days prior to the deposition date of the language spoken by the
deponent.

DATED: January 6, 2017          MARC J. SHRAKE
                                 ANDERSON, McPHARLIN & CONNERS LLP

                                          -and-

                                 MICHAEL KEELEY *(Pro Hac Vice)*
                                 JOHN R. RIDDLE *(Pro Hac Vice)*
                                 CARLA C. CRAPSTER *(Pro Hac Vice)*
                                 STRASBURGER & PRICE, LLP

                                 By:    */s/ Michael Keeley*
                                             Michael Keeley

                                 Attorneys for Defendant ATLANTIC
                                 SPECIALTY INSURANCE COMPANY

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**EXHIBIT 2  PG. 53**

## PROOF OF SERVICE

I am employed in the County of Dallas, State of Texas.  I am over the age of eighteen years and not a party to the within action; my business address is 901 Main Street, Suite 6000, Dallas, Texas 75202.

On January 6, 2017, I served the following document(s) described as **NOTICE OF TAKING DEPOSITION OF MARK BINKE** on the interested parties in this action at their last known address as set forth below by taking the action described below:

> Lucia E. Coyoca, Esq.                         Attorneys for Plaintiffs
> Valentine A. Shalamitski, Esq.
> Mitchell Silberberg & Knupp LLP
> 11377 West Olympic Boulevard
> Los Angeles, CA  90064-1683
> Telephone: (310) 312-2000
> Facsimile: (310) 312-3100
>
> Email:
> lec@msk.com
> vas@msk.com

☑      **BY ELECTRONIC MAIL**: I served the above mentioned document electronically on the parties listed at the email addresses above and, to the best of my knowledge, the transmission was complete and without error in that I did not receive an electronic notification to the contrary.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 6, 2017, at Dallas, Texas

_____
Marianna Green

3

**NOTICE OF TAKING DEPOSITION OF MARK BINKE**

**EXHIBIT 2  PG.  54**

MARC J. SHRAKE (SBN 219331)
    mjs@amclaw.com
ANDERSON, MCPHARLIN & CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623
Telephone: (213) 236-1691
Facsimile: (213) 622-7594

MICHAEL KEELEY *(Pro Hac Vice)*
    michael.keeley@strasburger.com
JOHN R. RIDDLE *(Pro Hac Vice)*
    john.riddle@strasburger.com
CARLA C. CRAPSTER *(Pro Hac Vice)*
    carla.crapster@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

Attorneys for Defendant
Atlantic Specialty Insurance Company

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,<br><br>        Plaintiffs,<br><br>    vs.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,<br><br>        Defendant. | Case No. 2:16-cv-04435-PA-MRW<br><br>**NOTICE OF TAKING DEPOSITION OF NORTHERN ENTERTAINMENT PRODUCTIONS LLC**<br><br><br>Date:       January 27, 2017<br>Time:      9:00 a.m.<br>Location:  707 Wilshire Blvd.<br>              Suite 4000<br>              Los Angeles, CA 90017 |

/ / /

/ / /

/ / /

/ / /

1515571.1 05608-054

1

**EXHIBIT 2  PG.  55**

TO:   Plaintiff Northern Entertainment Production LLC by and through their counsel of record, Lucia E. Coyoca and Valentine A. Shalamitski, Esq., Mitchell Silberberg & Knupp LLP, 11377 West Olympic Boulevard, Los Angeles, CA 90064-1683.

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendant, Atlantic Specialty Insurance Company ("Atlantic"), will take the testimony by deposition upon oral examination of Plaintiff, Northern Entertainment Productions LLC, before a certified court reporter on January 27, 2017, beginning at 9:00 a.m., at the law offices of Anderson McPharlin & Conners LLP, located at 707 Wilshire Blvd, Suite 4000, Los Angeles, CA 90017-3623. The deposition may be videotaped.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Northern Entertainment shall designate one or more officers, directors, employees, or other persons to testify on its behalf with regard to the topics listed on Exhibit A.

If an interpreter is required, the undersigned must be notified in writing at least five (5) days prior to the deposition date of the language spoken by the deponent.

**EXHIBIT 2  PG. 56**



DATED: January 6, 2017

1

2

MARC J. SHRAKE
ANDERSON, McPHARLIN & CONNERS LLP

3

-and-

4

5

6

MICHAEL KEELEY *(Pro Hac Vice)*
JOHN R. RIDDLE *(Pro Hac Vice)*
CARLA C. CRAPSTER *(Pro Hac Vice)*
STRASBURGER & PRICE, LLP

7

8

By:     */s/ Michael Keeley*
              Michael Keeley

9

10

Attorneys for Defendant ATLANTIC
SPECIALTY INSURANCE COMPANY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017–3623

3

**EXHIBIT 2  PG.  57**

## PROOF OF SERVICE

I am employed in the County of Dallas, State of Texas.  I am over the age of eighteen years and not a party to the within action; my business address is 901 Main Street, Suite 6000, Dallas, Texas 75202.

On January 6, 2017, I served the following document(s) described as **NOTICE OF TAKING DEPOSITION OF NORTHERN ENTERTAINMENT PRODUCTIONS LLC** on the interested parties in this action at their last known address as set forth below by taking the action described below:

Lucia E. Coyoca, Esq.                    Attorneys for Plaintiffs
Valentine A. Shalamitski, Esq.
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, CA  90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Email:
lec@msk.com
vas@msk.com

☑      **BY ELECTRONIC MAIL**: I served the above mentioned document electronically on the parties listed at the email addresses above and, to the best of my knowledge, the transmission was complete and without error in that I did not receive an electronic notification to the contrary.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 6, 2017, at Dallas, Texas

*Marianna Green*
_____
Marianna Green

4

**EXHIBIT 2  PG.  58**

**EXHIBIT A TO DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY OF MARYLAND'S NOTICE OF ORAL DEPOSITION OF PLAINTIFF NORTHERN ENTERTAINMENT**

## DEFINITIONS

The words "YOU," "YOUR," "YOURSELF" and "YOURS" mean the Plaintiff, Northern Entertainment Productions LLC and its parents or subsidiaries, predecessors, assigns, agents, officers, directors, employees, attorneys, or other representatives acting on its behalf.

"CLAIM" means the claim for insurance coverage that YOU made with ATLANTIC, as described in the Plaintiffs' First Amended Complaint or any subsequent or superseding pleadings in this matter.

COMPLAINT means the Plaintiffs' First Amended Complaint filed in the LAWSUIT.

"COMMUNICATE" or "COMMUNICATIONS" refers to any and every manner or means of disclosure or transfer, or exchange of information, whether orally or by document or whether face-to-face, by telephone, e-mail, mail, text messages, facsimile, telecopy, computer, personal delivery, or otherwise.

"RELATE" or "RELATING" means constituting, referring to, relating to, discussing, analyzing, comprising, embodying, recording, evidencing, effecting or containing any information which pertains to a specific subject.

"*DIG*" means the television show that NBC was producing in Israel in 2014, and later in Croatia and New Mexico.

"DOCUMENTS" refers to any original written, typewritten, handwritten, printed, recorded, or computer-generated material, as well as all tapes, disks, non-duplicate copies and transcripts thereof, now or at any time in your possession, custody or control; without limiting the generality of the following definition, but for the purposes of illustration only, "documents" includes notes, correspondence, memoranda, business records, diaries, counters, address and telephone records, photographs, tape recordings, computer disks, financial statements, checks, records, trade publications, checks, and drafts. Without limitation of the term "control" as used in the preceding sentence, a document is deemed to be in your control if you have the right to secure the document or a copy thereof, from another person or public or private entity having actual possession thereof.  If any document was, but no longer is, in your possession or subject to your control, state what disposition was made of it and why.

5

**EXHIBIT 2  PG.  59**

"IDENTIFY" or "IDENTIFICATION," when used with regard to a natural person or persons, means to state:  (a) the full name of each person; (b) each person's present or last known business and home addresses and phone numbers; (c) the name of the person's present or last known employer; and (d) if such person was affiliated at any time with any party to this litigation or with any affiliate of any party to this litigation by employment or otherwise, state the nature (including job title, if any) and dates of such affiliation. If any of the above information is not available, state any other means of identifying each such individual person.

"IDENTIFY" or "IDENTIFICATION," when used in reference to any entity other than a natural person, including, without limitation, any corporation, sole proprietorship, partnership, limited partnership, or joint venture, means to state the full name and location or present or last known address and phone number of the principal place of business of said entity to be identified.  If any of the above information is not available, state any other means of identifying each such entity.

"IDENTIFY" or "IDENTIFICATION," when used in reference to a document, means to:  (a) specify the nature of the document (e.g. letter, memorandum, telegram, invoice or some other means of identifying same); (b) identify the date, if any, appearing on the document, or if it is undated, the date on which the document was prepared; (c) describe, in general, the subject matter of the document; (d) identify the individual and/or entity to whom it pertains; (e) identify the persons who authorized, originated, wrote, signed, dictated or otherwise participated in the preparation of the document; (f) identify each person, if any, who received an original or copy of the document; and (g) identify the present or last known location and custodian of each such document.  If any such document was, but is no longer, in your possession or subject to your control, state: (i) the disposition made of the document, including the identity of the person who received the document; (ii) the reasons for the disposition; and (iii) the date thereof If any of the above information is not available, state any other means of identifying all such documents.

"LAWSUIT" refers to this case pending before Judge Anderson in the Central District of California as Cause No. 2:16-cv-04435-PA-MRW.

"LOSS" means the loss YOU contend YOU incurred as a result of the delays in production of *DIG* and that YOU contend is covered by the POLICY.

"PERSON" refers to any individual, corporation, partnership, limited partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, or other such entities.

NOTICE OF TAKING DEPOSITION OF NORTHERN ENTERTAINMENT PRODUCTIONS LLC

**EXHIBIT 2  PG.  60**

"POLICY" means Motion Picture/Television Producers Portfolio Policy No. MP00163-04, attached as Exhibit A to the Plaintiffs' Complaint.

The words "YOU," "YOUR," "YOURSELF" and "YOURS" mean the Plaintiffs, their parents or subsidiaries, predecessors, assigns, agents, officers, directors, employees, attorneys, or other representatives acting on their behalf.

Pursuant to the provisions of the Federal Rules of Civil Procedure, you are required to supplement your responses to this discovery accordingly.

## TOPICS AS TO WHICH EXAMINATION IS REQUESTED

1.     The CLAIM, including the facts supporting the CLAIM, the events giving rise to the CLAIM, and the LOSS sought by the CLAIM.

2.     The process that Northern Entertainment went through to purchase the POLICY, including the identity of the persons at NORTHERN ENTERTAINMENT involved in the purchase of the POLICY, the identity of the persons at Atlantic with whom those persons spoke regarding the purchase of the POLICY, and how Northern Entertainment received the POLICY.

3.     The circumstances surrounding the payment of premiums for the POLICY.

4.     The basis of Northern Entertainment's contention that the CLAIM is covered under the POLICY.

5.     Northern Entertainment's investigation of the facts and the transactions giving rise to the CLAIM.

6.     The documents that support or otherwise relate to the CLAIM.

7.     The notice that YOU gave to ATLANTIC regarding the CLAIM.

8.     The basis for YOUR claim of breach of the implied covenant of good faith and fair dealing.

9.     The amount that Northern Entertainment is seeking to recover for the CLAIM, including the components and calculation thereof and the specific transactions involved in the CLAIM.

10.     The amount that Northern Entertainment is seeking to recover in the LAWSUIT, including the components and calculation thereof.

NOTICE OF TAKING DEPOSITION OF NORTHERN ENTERTAINMENT PRODUCTIONS LLC

**EXHIBIT 2  PG.  61**

11.     The facts concerning the Israeli-Palestinian conflict of 2014 that led
Northern Entertainment to conclude that the conflict was not a "war, including an
undeclared or civil war."

12.     The facts concerning the Israeli-Palestinian conflict of 2014 that led
Northern Entertainment to conclude that the conflict was not "warlike action by a
military force, including action in hindering or defending against an actual or
expected attack, by any government, sovereign or other authority using military
personnel or other agents."

13.     The facts concerning the Israeli-Palestinian conflict of 2014 that led
Northern Entertainment to conclude that the conflict was not "insurrection,
rebellion, revolution, usurped power, or action taken by governmental authority in
hindering or defending against any of these."

14.     The facts concerning Northern Entertainment's position that the
activity in Israel and Palestine in 2014 that led Northern Entertainment to move the
production of *DIG* did not relate directly or indirectly from the use of any weapon
of war

15.     The decision to move filming of *DIG* out of Israel.

16.     The decision to move filming of *DIG* to Croatia.

17.     The decision to move filming of *DIG* to New Mexico.

18.     The decision that Croatia lacked the indoor facilities needed to film
*DIG* and that indoor filming must therefore take place in New Mexico.

19.     The bases of Northern Entertainment's position that moving filming
to both Croatia and New Mexico resulted directly from the Israeli-Palestinian
conflict of 2014.

20.     Correspondence and other COMMUNICATIONS between Atlantic
and YOU concerning the CLAIM.

21.     The amount of attorney's fees incurred by YOU in the LAWSUIT.

22.     The contractual or other arrangement between YOU and Mitchell
Silberberg and Knupp LLP, concerning that law firm's compensation for handling
the LAWSUIT for YOU.

23.     The documents referenced or described in YOUR Initial Disclosures
in the LAWSUIT.

NOTICE OF TAKING DEPOSITION OF NORTHERN ENTERTAINMENT PRODUCTIONS LLC

**EXHIBIT 2  PG.  62**

24.    The general nature and sources of the documents produced by YOU in the LAWSUIT.

25.    The documents produced by YOU in the LAWSUIT.

26.    Who at Northern Entertainment was responsible for identifying the documents responsive to the requests for production served in this case.

27.    The basis for YOUR withholding of documents in the LAWSUIT on the basis of privilege, protection, or exemption from discovery.

28.    The terms of the POLICY, including, but not limited to, each of the exclusions on which ATLANTIC relies and all reasons YOU contend the exclusions do not apply.

29.    YOUR prior claims history with ATLANTIC.

30.    The basis of and all facts and circumstances underlying the allegations of the COMPLAINT.

31.    The decision to film *DIG* in Israel.

32.    All facts and circumstances considered in deciding to move filming of *DIG* to Croatia and New Mexico, and knowledge of all other places that were considered as alternative locations.

33.    Why filming of *DIG* could not take place entirely in Croatia.

34.    Why filming of *DIG* could not take place entirely in New Mexico.

35.    Why the production of *DIG* could not be moved to a single country or location, as opposed to two different countries.

36.    Plaintiffs' efforts, if any, to mitigate the damages they are seeking in the LAWSUIT.

37.    Plaintiffs' discovery responses served in this LAWSUIT.

38.    The relationship between Plaintiffs and NBCUniversal Media, LLC.

39.    The relationship between Plaintiffs and MSNBC.

40.    The relationship between NBCUniversal Media, LLC and MSNBC.

41.    The relationship between Plaintiffs and NBC News.

NOTICE OF TAKING DEPOSITION OF NORTHERN ENTERTAINMENT PRODUCTIONS LLC

**EXHIBIT 2  PG.  63**

42.     Internal communications among Universal Cable Productions, LLC, Northern Entertainment Productions LLC, or NBCUniversal Media, LLC, regarding the CLAIM prior to filing the LAWSUIT.

43.     The method and process used by NBCUniversal Media, LLC to set reserves on any claims made with Atlantic.

44.     All factors considered by NBCUniversal Media, LLC in setting reserves on any claims made with Atlantic.

45.     When the decision was made to move filming of *DIG* out of Israel.

46.     The dates in which *DIG* was filmed in Croatia.

47.     The dates in which *DIG* was filmed in New Mexico.

48.     The dates on which decisions were made to move filming to New Mexico and Croatia.

49.     When the decision was made to move filming of *DIG* out of Israel, exactly who left and when did they leave?

**NOTICE OF TAKING DEPOSITION OF NORTHERN ENTERTAINMENT PRODUCTIONS LLC**

8596345.1/SP/15247/0131/010617

**EXHIBIT 2  PG.  64**



MARC J. SHRAKE (SBN 219331)
   mjs@amclaw.com
ANDERSON, MCPHARLIN & CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623
Telephone: (213) 236-1691
Facsimile: (213) 622-7594

MICHAEL KEELEY *(Pro Hac Vice)*
   michael.keeley@strasburger.com
JOHN R. RIDDLE *(Pro Hac Vice)*
   john.riddle@strasburger.com
CARLA C. CRAPSTER *(Pro Hac Vice)*
   carla.crapster@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

Attorneys for Defendant
Atlantic Specialty Insurance Company

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,<br><br>          Plaintiffs,<br><br>          vs.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,<br><br>          Defendant. | Case No. 2:16-cv-04435-PA-MRW<br><br>**NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC**<br><br><br>Date:        January 26, 2017<br>Time:        9:00 a.m.<br>Location:    707 Wilshire Blvd.<br>              Suite 4000<br>              Los Angeles, CA 90017 |

/ / /

/ / /

/ / /

ANDERSON, McPHARLIN & CONNERS LLP<br>Lawyers<br>707 Wilshire Boulevard, Suite 4000<br>Los Angeles, California 90017-3623

1515571.1 05608-054

1

**EXHIBIT 2  PG.  65**

TO: Plaintiff Universal Cable Productions LLC by and through their counsel of record, Lucia E. Coyoca and Valentine A. Shalamitski, Esq., Mitchell Silberberg & Knupp LLP, 11377 West Olympic Boulevard, Los Angeles, CA 90064-1683.

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendant, Atlantic Specialty Insurance Company ("Atlantic"), will take the testimony by deposition upon oral examination of Plaintiff, Universal Cable Productions LLC ("UCP"), before a certified court reporter on January 26, 2017, beginning at 9:00 a.m., at the law offices of Anderson McPharlin & Conners LLP, located at 707 Wilshire Blvd, Suite 4000, Los Angeles, CA 90017-3623. The deposition may be videotaped.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), UCP shall designate one or more officers, directors, employees, or other persons to testify on its behalf with regard to the topics listed on Exhibit A.

If an interpreter is required, the undersigned must be notified in writing at least five (5) days prior to the deposition date of the language spoken by the deponent.

**EXHIBIT 2 PG. 66**

DATED: January 6, 2017        MARC J. SHRAKE
                              ANDERSON, McPHARLIN & CONNERS LLP

                                        -and-

                              MICHAEL KEELEY *(Pro Hac Vice)*
                              JOHN R. RIDDLE *(Pro Hac Vice)*
                              CARLA C. CRAPSTER *(Pro Hac Vice)*
                              STRASBURGER & PRICE, LLP

                              By:    */s/ Michael Keeley*
                                     Michael Keeley

                              Attorneys for Defendant ATLANTIC
                              SPECIALTY INSURANCE COMPANY

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017–3623

3

**NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC**

EXHIBIT 2  PG.  67

## PROOF OF SERVICE

I am employed in the County of Dallas, State of Texas.  I am over the age of eighteen years and not a party to the within action; my business address is 901 Main Street, Suite 6000, Dallas, Texas 75202.

On January 6, 2017, I served the following document(s) described as **NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC** on the interested parties in this action at their last known address as set forth below by taking the action described below:

Lucia E. Coyoca, Esq.                          Attorneys for Plaintiffs
Valentine A. Shalamitski, Esq.
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, CA  90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Email:
lec@msk.com
vas@msk.com

☑      **BY ELECTRONIC MAIL**: I served the above mentioned document electronically on the parties listed at the email addresses above and, to the best of my knowledge, the transmission was complete and without error in that I did not receive an electronic notification to the contrary.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 6, 2017, at Dallas, Texas

_Marianna Green_

_____
Marianna Green

NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC

**EXHIBIT 2  PG.  68**

**EXHIBIT A TO DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY OF MARYLAND'S NOTICE OF ORAL DEPOSITION OF PLAINTIFF UCP**

## DEFINITIONS

The words "YOU," "YOUR," "YOURSELF" and "YOURS" mean the Plaintiff, Universal Cable Productions LLC and its parents or subsidiaries, predecessors, assigns, agents, officers, directors, employees, attorneys, or other representatives acting on its behalf.

"CLAIM" means the claim for insurance coverage that YOU made with ATLANTIC, as described in the Plaintiffs' First Amended Complaint or any subsequent or superseding pleadings in this matter.

COMPLAINT means the Plaintiffs' First Amended Complaint filed in the LAWSUIT.

"COMMUNICATE" or "COMMUNICATIONS" refers to any and every manner or means of disclosure or transfer, or exchange of information, whether orally or by document or whether face-to-face, by telephone, e-mail, mail, text messages, facsimile, telecopy, computer, personal delivery, or otherwise.

"RELATE" or "RELATING" means constituting, referring to, relating to, discussing, analyzing, comprising, embodying, recording, evidencing, effecting or containing any information which pertains to a specific subject.

"*DIG*" means the television show that NBC was producing in Israel in 2014, and later in Croatia and New Mexico.

"DOCUMENTS" refers to any original written, typewritten, handwritten, printed, recorded, or computer-generated material, as well as all tapes, disks, non-duplicate copies and transcripts thereof, now or at any time in your possession, custody or control; without limiting the generality of the following definition, but for the purposes of illustration only, "documents" includes notes, correspondence, memoranda, business records, diaries, counters, address and telephone records, photographs, tape recordings, computer disks, financial statements, checks, records, trade publications, checks, and drafts. Without limitation of the term "control" as used in the preceding sentence, a document is deemed to be in your control if you have the right to secure the document or a copy thereof, from another person or public or private entity having actual possession thereof. If any document was, but no longer is, in your possession or subject to your control, state what disposition was made of it and why.

5

**EXHIBIT 2  PG.  69**

"IDENTIFY" or "IDENTIFICATION," when used with regard to a natural person or persons, means to state:  (a) the full name of each person; (b) each person's present or last known business and home addresses and phone numbers; (c) the name of the person's present or last known employer; and (d) if such person was affiliated at any time with any party to this litigation or with any affiliate of any party to this litigation by employment or otherwise, state the nature (including job title, if any) and dates of such affiliation. If any of the above information is not available, state any other means of identifying each such individual person.

"IDENTIFY" or "IDENTIFICATION," when used in reference to any entity other than a natural person, including, without limitation, any corporation, sole proprietorship, partnership, limited partnership, or joint venture, means to state the full name and location or present or last known address and phone number of the principal place of business of said entity to be identified.  If any of the above information is not available, state any other means of identifying each such entity.

"IDENTIFY" or "IDENTIFICATION," when used in reference to a document, means to:  (a) specify the nature of the document (e.g. letter, memorandum, telegram, invoice or some other means of identifying same); (b) identify the date, if any, appearing on the document, or if it is undated, the date on which the document was prepared; (c) describe, in general, the subject matter of the document; (d) identify the individual and/or entity to whom it pertains; (e) identify the persons who authorized, originated, wrote, signed, dictated or otherwise participated in the preparation of the document; (f) identify each person, if any, who received an original or copy of the document; and (g) identify the present or last known location and custodian of each such document.  If any such document was, but is no longer, in your possession or subject to your control, state: (i) the disposition made of the document, including the identity of the person who received the document; (ii) the reasons for the disposition; and (iii) the date thereof If any of the above information is not available, state any other means of identifying all such documents.

"LAWSUIT" refers to this case pending before Judge Anderson in the Central District of California as Cause No. 2:16-cv-04435-PA-MRW.

"LOSS" means the loss YOU contend YOU incurred as a result of the delays in production of *DIG* and that YOU contend is covered by the POLICY.

"PERSON" refers to any individual, corporation, partnership, limited partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, or other such entities.

NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC

**EXHIBIT 2  PG.  70**

"POLICY" means Motion Picture/Television Producers Portfolio Policy No. MP00163-04, attached as Exhibit A to the Plaintiffs' Complaint.

The words "YOU," "YOUR," "YOURSELF" and "YOURS" mean the Plaintiffs, their parents or subsidiaries, predecessors, assigns, agents, officers, directors, employees, attorneys, or other representatives acting on their behalf.

Pursuant to the provisions of the Federal Rules of Civil Procedure, you are required to supplement your responses to this discovery accordingly.

## TOPICS AS TO WHICH EXAMINATION IS REQUESTED

1.     The CLAIM, including the facts supporting the CLAIM, the events giving rise to the CLAIM, and the LOSS sought by the CLAIM.

2.     The process that UCP went through to purchase the POLICY, including the identity of the persons at UCP involved in the purchase of the POLICY, the identity of the persons at Atlantic with whom those persons spoke regarding the purchase of the POLICY, and how UCP received the POLICY.

3.     The circumstances surrounding the payment of premiums for the POLICY.

4.     The basis of UCP's contention that the CLAIM is covered under the POLICY.

5.     UCP's investigation of the facts and the transactions giving rise to the CLAIM.

6.     The documents that support or otherwise relate to the CLAIM.

7.     The notice that YOU gave to ATLANTIC regarding the CLAIM.

8.     The basis for YOUR claim of breach of the implied covenant of good faith and fair dealing.

9.     The amount that UCP is seeking to recover for the CLAIM, including the components and calculation thereof and the specific transactions involved in the CLAIM.

10.     The amount that UCP is seeking to recover in the LAWSUIT, including the components and calculation thereof.

NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC

**EXHIBIT 2  PG.  71**

11.     The facts concerning the Israeli-Palestinian conflict of 2014 that led UCP to conclude that the conflict was not a "war, including an undeclared or civil war."

12.     The facts concerning the Israeli-Palestinian conflict of 2014 that led UCP to conclude that the conflict was not "warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents."

13.     The facts concerning the Israeli-Palestinian conflict of 2014 that led UCP to conclude that the conflict was not "insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these."

14.     The facts concerning UCP's position that the activity in Israel and Palestine in 2014 that led UCP to move the production of *DIG* did not relate directly or indirectly from the use of any weapon of war

15.     The decision to move filming of *DIG* out of Israel.

16.     The decision to move filming of *DIG* to Croatia.

17.     The decision to move filming of *DIG* to New Mexico.

18.     The decision that Croatia lacked the indoor facilities needed to film *DIG* and that indoor filming must therefore take place in New Mexico.

19.     The bases of UCP's position that moving filming to both Croatia and New Mexico resulted directly from the Israeli-Palestinian conflict of 2014.

20.     Correspondence and other COMMUNICATIONS between Atlantic and YOU concerning the CLAIM.

21.     The amount of attorney's fees incurred by YOU in the LAWSUIT.

22.     The contractual or other arrangement between YOU and Mitchell Silberberg and Knupp LLP, concerning that law firm's compensation for handling the LAWSUIT for YOU.

23.     The documents referenced or described in YOUR Initial Disclosures in the LAWSUIT.

NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC

**EXHIBIT 2  PG.  72**

24.     The general nature and sources of the documents produced by YOU in the LAWSUIT.

25.     The documents produced by YOU in the LAWSUIT.

26.     Who at UCP was responsible for identifying the documents responsive to the requests for production served in this case.

27.     The basis for YOUR withholding of documents in the LAWSUIT on the basis of privilege, protection, or exemption from discovery.

28.     The terms of the POLICY, including, but not limited to, each of the exclusions on which ATLANTIC relies and all reasons YOU contend the exclusions do not apply.

29.     YOUR prior claims history with ATLANTIC.

30.     The basis of and all facts and circumstances underlying the allegations of the COMPLAINT.

31.     The decision to film *DIG* in Israel.

32.     All facts and circumstances considered in deciding to move filming of *DIG* to Croatia and New Mexico, and knowledge of all other places that were considered as alternative locations.

33.     Why filming of *DIG* could not take place entirely in Croatia.

34.     Why filming of *DIG* could not take place entirely in New Mexico.

35.     Why the production of *DIG* could not be moved to a single country or location, as opposed to two different countries.

36.     Plaintiffs' efforts, if any, to mitigate the damages they are seeking in the LAWSUIT.

37.     Plaintiffs' discovery responses served in this LAWSUIT.

38.     The relationship between Plaintiffs and NBCUniversal Media, LLC.

39.     The relationship between Plaintiffs and MSNBC.

40.     The relationship between NBCUniversal Media, LLC and MSNBC.

41.     The relationship between Plaintiffs and NBC News.

**NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC**

**EXHIBIT 2  PG.  73**

42.     Internal communications among UCP, Northern Entertainment Productions LLC, or NBCUniversal Media, LLC, regarding the CLAIM prior to filing the LAWSUIT.

43.     The method and process used by NBCUniversal Media, LLC to set reserves on any claims made with Atlantic.

44.     All factors considered by NBCUniversal Media, LLC in setting reserves on any claims made with Atlantic.

45.     When the decision was made to move filming of *DIG* out of Israel.

46.     The dates in which *DIG* was filmed in Croatia.

47.     The dates in which *DIG* was filmed in New Mexico.

48.     The dates on which decisions were made to move filming to New Mexico and Croatia.

49.     When the decision was made to move filming of *DIG* out of Israel, exactly who left and when did they leave?

**NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC**
8596350.1/SP/15247/0131/010617

**EXHIBIT 2  PG.  74**

# EXHIBIT 3

| From: | Coyoca, Lucia |
|---|---|
| To: | "Keeley, Michael" |
| Cc: | Crapster, Carla; Shalamitski, Valentine |
| Subject: | RE: UCP et al. v. Atlantic Specialty -- Deposition Notices |
| Date: | Monday, January 09, 2017 2:40:26 PM |
| Attachments: | image002.gif |
| | image005.png |
| | image006.png |
| | image007.png |

Mike,

To confirm our conversation of earlier today regarding depositions (among other things), we confirmed the following dates:

1. Peter Williams -- February 1, 2017 in Los Angeles
2. Danny Gutterman -- February 3, 2017 in Los Angeles
3. Theresa Gooley – February 8, 2017 in Minneapolis/St. Paul area
4. Pamela Johnson – February 9, 2017 in Minneapolis/St. Paul area.

As requested below, we are willing to take Peter Williams and Danny Gutterman's depositions in your local counsel's office.  We are also willing to take the depositions of Gooley and Johnson in a location of your choosing in Minneapolis.  Our agreement to do so is based on your confirmation that you will take the depositions of Plaintiffs' witnesses in our offices.  Please provide the location for the Gooley/Johnson depositions by no later than January 30, 2017.  The depositions that Plaintiffs have noticed will be videotaped.

As to scheduling for the depositions that Atlantic has noticed – Corporate designees for Universal Cable Productions and Northern Entertainment, Jeff Wachtell, Mark Binke, Randi Richmond, Thomas McCarthy, Stephen Smith, Andrea Garber, Kurt Ford, and Susan Weiss, we will let you know possible available dates as soon as we have them, on dates beginning the week of February 13.  However, as we advised you during our call, neither Mr. McCarthy nor Mr. Smith resides in Los Angeles.  Mr. McCarthy is based in New York, and Mr. Smith in London.  If their depositions are to be taken, the depositions will need to proceed where they live.  Ms. Weiss is employed by Aon, not NBCUniversal; however, we will facilitate procuring available dates on which Ms. Weiss' deposition may be taken.

Thank you.
Lucia



**Lucia E. Coyoca** | **Partner, through her professional corporation**
T: 310.312.3250 | lec@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW,

**EXHIBIT 3  PG.  76**

USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Keeley, Michael [mailto:Michael.Keeley@strasburger.com]
**Sent:** Friday, December 30, 2016 3:57 PM
**To:** Coyoca, Lucia
**Cc:** Crapster, Carla
**Subject:** RE: UCP et al. v. Atlantic Specialty -- Deposition Notices

Lucia, I apologize for the delay, but with people gone for the holidays, and with certain of the witnesses' travel schedules during January and February, it has been a puzzle to put together dates so that you would not have to travel twice to Minnesota and I would not have to travel twice to California.  Here is what the witnesses can agree to:

Peter Williams:  February 1 in LA
Danny Gutterman:  February 2 or 3 in LA
Theresa Gooley:  Feburary 8, in Minnesota
Pamela Johnson:  February 9 or 10, in Minnesota

Please confirm these will work.  We will want to present our witnesses in LA at our local counsel's office.  I'll provide you a location in for Ms. Gooley and Ms. Johnson well ahead of time.  Please confirm that you do intend to videotape all four witnesses.   I am still waiting confirmation from you on your witnesses.

Thank you.


Michael Keeley
Strasburger & Price, LLP
901 Main Street, Suite 6000
Dallas, TX  75202-3794
Office: 214.651.4718
Fax: 214.659.4121
www.strasburger.com
*Admitted in Texas, Arkansas,*
*New Mexico, and New York*
**Weʼve moved! Please note our new suite number.



**From:** Coyoca, Lucia [mailto:lec@msk.com]
**Sent:** Thursday, December 15, 2016 11:45 PM
**To:** Keeley, Michael; Crapster, Carla; Riddle, John
**Cc:** Shalamitski, Valentine
**Subject:** RE: UCP et al. v. Atlantic Specialty -- Deposition Notices

Mike,
Thank you for your response. We look forward to receiving confirmed dates for the

**EXHIBIT 3  PG.  77**

witnesses we've noticed.  I'll talk to our client about your requests and get back to you.
Thanks.
Lucia



**Lucia E. Coyoca** | **Partner, through her professional corporation**
T: 310.312.3250 | lec@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Keeley, Michael [mailto:Michael.Keeley@strasburger.com]
**Sent:** Wednesday, December 14, 2016 2:23 PM
**To:** Coyoca, Lucia; Crapster, Carla; Riddle, John
**Cc:** Shalamitski, Valentine
**Subject:** RE: UCP et al. v. Atlantic Specialty -- Deposition Notices

Lucia, I believe I will be able to present the former employees for their depositions without a subpoena.  We have forwarded the  notices to the witnesses and will let you know about the dates you set, and if necessary, alternate dates.  We'll also let you know whether Ms. Gooley and Ms. Johnson will be willing to be deposed in LA.  We will want to present the witnesses being deposed at our local counsel's office, so please confirm this is agreeable.  We of course will agree that your witnesses in LA may be deposed in your offices.

As far as dates, I have had plans for almost a year to be in Louisiana on business January 17-21, returning on January 22, so January 18 and 23 are not good dates for me.  But, the remaining two weeks and most of February will work, so once I hear from the witnesses, hopefully later today or tomorrow, we'll let you know.

I know we will want a corporate representative of your client, as well as all persons involved obtaining the policy from my client, and those persons directly involved in the decisions to move the shoot.  We won't know names until we receive your discovery, but presumably you will know.  We will look to schedule these depositions for the first week or two of February, so please provide me proposed dates.  We'll provide you a list of topics for the corporate representative shortly, but it will be the submission of the claim, the allegations of the complaint (including the damage allegations) the discovery responses, the acquisition of the policy, and the decisions to move the shoot.

Your deposition notices indicate the depositions will be by video.  I assume this is true, but some lawyers include this as standard language without ever intended to videotape the depositions.  Will you please confirm they will indeed be videotaped.

**EXHIBIT 3  PG.  78**

Thank you.


Michael Keeley
Strasburger & Price, LLP
901 Main Street, Suite 6000
Dallas, TX  75202-3794
Office: 214.651.4718
Fax: 214.659.4121
www.strasburger.com
*Admitted in Texas, Arkansas,*
*New Mexico, and New York*
**We've moved! Please note our new suite number.



**From:** Coyoca, Lucia [mailto:lec@msk.com]
**Sent:** Tuesday, December 13, 2016 2:42 PM
**To:** Crapster, Carla; Riddle, John; Keeley, Michael
**Cc:** Shalamitski, Valentine
**Subject:** UCP et al. v. Atlantic Specialty -- Deposition Notices

Dear Carla, Mike and John,

Given the March 13, 2017 discovery cut-off date, we need to begin scheduling deposition dates now, so that in the event the mediation on January 6, 2017 is not successful, we can move forward without delay.  Therefore, we would like to schedule the depositions of Peter Williams, Pamela Johnson, Daniel Gutterman, and Theresa Gooley for dates in mid-to-late January.  Attached please find deposition notices for these individuals. We understand that Williams, Johnson and Gooley are former employees of One Beacon.  Please advise if Atlantic is able and willing to produce these witnesses voluntarily for deposition without the need for a subpoena to be served.  Also, please let us know if the dates provided on the attached notices are acceptable.  If they are not, please let us know alternative dates on which these depositions can proceed.  Finally, we understand that Peter Williams and Daniel Gutterman reside in Los Angeles, but that Ms. Johnson and Ms. Gooley reside in Minnesota.  Please let us know if Ms. Johnson or Ms. Gooley can be made available for deposition in Los Angeles during this time period, or whether it will be necessary to travel to Minnesota for the depositions.  If possible, we would prefer to take the depositions in Los Angeles.

We look forward to hearing from you promptly.
Thank you.
Lucia

**EXHIBIT 3  PG.  79**



**Lucia E. Coyoca** | **Partner, through her professional corporation**

T: 310.312.3250 | lec@msk.com

**Mitchell Silberberg & Knupp LLP** | **www.msk.com**

11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

**EXHIBIT 3  PG.  80**

# EXHIBIT 4

| | |
|---|---|
| **From:** | Coyoca, Lucia |
| **To:** | Crapster, Carla; Keeley, Michael (Michael.Keeley@strasburger.com) |
| **Cc:** | Shalamitski, Valentine |
| **Subject:** | UCP et al. v. Atlantic Specialty -- Possible deposition dates |
| **Date:** | Wednesday, January 11, 2017 11:17:51 AM |
| **Attachments:** | image001.gif |

Mike & Carla,

UCP/Northern Entertainment's witnesses are available to be deposed in Los Angeles as follows:

1. Randi Richmond on February 15, 2017
2. Andrea Garber on February 21, 2017
3. Mark Binke on February 24, 2017
4. Jeff Wachtel on February 28, 2017, and
5. Kurt Ford on March 2, 2017.

Do these dates work for you?  These dates are *currently* available, let me know if they are acceptable.  I'd like to confirm them as soon as possible as their schedules book up pretty quickly.

Thanks.

Lucia



**Lucia E. Coyoca** | **Partner, through her professional corporation**
T: 310.312.3250 | lec@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**EXHIBIT 4  PG.  82**

# EXHIBIT 5

# Strasburger
### ATTORNEYS AT LAW

January 13, 2017

Carla C. Crapster
(214) 651-2034
Direct Fax (214) 659-4060
Carla.Crapster@strasburger.com

**VIA E-MAIL**

Lucia E. Coyoca
Mitchell Silberberg & Knupp LLP
11377 West Olympic Blvd.
Los Angeles, California 90064-1683

RE:   *Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*; Case No. 2:16-cv-04435-PA-MRW, pending in the United States District Court for the Central District of California, Western Division

Lucia:

We received your e-mail on Wednesday with proposed dates for depositions. We appreciate the cooperation on the request to extend all remaining deadlines by two months, and are hopeful that Judge Anderson will allow it. Until then, however, as you know, we have upcoming deadlines and an overall extremely short time frame. In light of that, your proposed dates for depositions do not work. On December 14, 2016, we requested specific dates for the corporate representatives to be presented in the first week or two of February, so the requested time frame was made clear. I need your two corporate representatives either as scheduled (assuming we have your documents by then), or early in February. I need everyone else we requested on consecutive days thereafter. If we had more time, we'd be happy to work with you on schedules, but unfortunately we do not for now.

Also, we need to resolve the following issues as soon as possible:

1.      We received word from Mr. Shalamitski on Wednesday that you would be providing us with a privilege log of the documents withheld from Aon's production sometime next week. Given the short time frames in this case, we need a firm commitment from you to provide the privilege log as soon as possible—certainly no later than the close of business on Tuesday, January 17, 2017. These documents have been

**Strasburger & Price, LLP**

901 Main Street, Suite 6000  |  Dallas, Texas 75202.3794  |  214.651.4300 tel  |  214.651.4330 fax  |  www.strasburger.com
Austin  |  Collin County  |  Dallas  |  Houston  |  San Antonio  |  New York, N.Y.  |  Washington, D.C.  |  Mexico City - Strasburger & Price, SC

**EXHIBIT 5  PG.  84**



Lucia E. Coyoca
January 13, 2017
Page 2

due to us since December 16, 2016, and you informed us that you had completed your review on Monday, January 9, 2017. We expect that very few documents were withheld on the basis of the work-product doctrine or the attorney-client privilege, and it should therefore not take long to prepare a privilege log. Over a week should be sufficient time. Please let us know how many pages of documents were withheld as soon as possible, and whether you can provide a privilege log by close of business on Tuesday.

2.      Please let us know your client's position on producing documents relating to the claimed damages. On Monday, January 9, 2016, you agreed to discuss this issue again with your client and get back to us in a day or two. Please advise us as soon as possible of your position on this so that we can determine whether a motion to compel is necessary at this time.

3.      On Monday, we raised with you our concern that your production seemed very light, as we had nothing discussing your client's security investigation, the decision to postpone production, the decision to leave, or the many emails that must have been exchanged. You informed us for the first time that there were additional documents that had to be produced. We asked when you expected to produce those documents, and you said you would let us know the expected date of production in a day or two. Please let us know the number of additional documents/pages and when you intend to produce them. We'd like to see those early next week.

4.      Please provide us with dates for the depositions of Stephen Smith, Susan Weiss, and Malika Adams.

Thank you for your attention to and cooperation on these matters.

Sincerely,

Carla Crapster
CCC/mg

**EXHIBIT 5  PG.  85**

# Strasburger
### ATTORNEYS AT LAW

Lucia E. Coyoca
January 13, 2017
Page 3

cc:    Michael Keeley
        Toni Scott Reed

**EXHIBIT 5  PG.  86**

# EXHIBIT 6



**MITCHELL SILBERBERG & KNUPP LLP**
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Lucia E. Coyoca
A Professional Corporation
(310) 312-3250 Phone
(310) 231-8444 Fax
lec@msk.com

January 23, 2017

**VIA E-MAIL**

Michael Keeley, Esq.
John R. Riddle, Esq.
Carla C. Crapster, Esq.
Strasburger & Price, LLP
901 Main Street, Suite 6000
Dallas, TX 75202

Marc J. Shrake, Esq.
Anderson, McPharlin & Conners LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, CA 90017-3623

Re:  *Universal Cable Productions LLC, et al. v. Atlantic Specialty Insurance Company,*
**CD Cal. Case No. CV16-4435 PA (MRWx)**

Dear Counsel:

This responds to Ms. Crapster's January 13 and 23, 2017 letters, inquiring about certain discovery issues. I understand that my colleague, Val Shalamitski, discussed some of these issues with Ms. Crapster during phone calls on January 17 as part of preparing the Joint Stipulation and Application to Modify Case Schedule. All of the issues are also addressed below.

**Depositions**: In light of the Court's order continuing the trial date, we believe that the scheduling issues may be somewhat alleviated. However, with or without a new trial date, we would not be amenable to scheduling the depositions Atlantic has noticed during the first two weeks in February. As we remind you, UCP/NEP served four notices of deposition on December 13, 2016, for deposition dates in mid-to-late January. It took Atlantic more than two weeks to respond with alternative proposed dates, and *none* of them were in January. Instead, all of your proffered dates were in early February during the first two weeks of the month. Had you provided January deposition dates for your witnesses in a timely manner, we might have been able to provide earlier dates for UCP/NEP witnesses, but given that you did not do so, those first two weeks are now booked with depositions for four Atlantic witnesses (two of which involve travel to Minnesota). We intend to move forward with the depositions of the Atlantic witnesses on the dates that have been confirmed.

As to Atlantic's ten deposition notices of UCP/NEP's and third party witnesses, given the delay in confirming the dates we offered on January 11, 2017, we do not know if those dates remain available for the witnesses. As we advised in my January 11 email when we offered the

11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone: (310) 312-2000 Fax: (310) 312-3100 Website: www.msk.com

**EXHIBIT 6  PG.  88**



**Strasburger & Price, LLP**
January 23, 2017
Page 2

proposed dates: "These dates are *currently* available, let me know if they are acceptable. I'd
like to confirm them as soon as possible as their schedules book up pretty quickly" (italics in
original). We do know that Jeff Wachtel is no longer available on February 28, 2017, and we are
checking on alternative dates. In light of the continued trial date, we request that you reconsider
the dates that we previously offered as to Randi Richmond (February 15, 2017); Andrea Garber
(February 21, 2017), Mark Binke (February 24, 2017) and Kurt Ford (March 2, 2017). If you are
available to proceed on any of these dates, we will check if they remain available. If you are not,
we will provide alternative dates.

As to UCP/NEP's corporate designees, no single individual can possibly address the 49 topics
Atlantic identified, and many of the topics are improper. We will provide our objections and
address the designee depositions separately, but for now, please be advised that the witnesses for
whom we proposed the above dates are expected to address the majority of these topics. Thus,
Atlantic should be prepared to ask all questions at the depositions of these witnesses, whether in
their individual or designee capacity.

As to the remaining depositions:

- Your letter does not mention the deposition of Thomas McCarthy. Is Atlantic
  foregoing this deposition?
- As to Stephen Smith, please advise whether you will proceed with his deposition
  in London. Alternatively, we can look into arranging a videoconference
  deposition. Once we know what option you prefer, we will check on available
  dates.
- As to Susan Weiss, she is an Aon employee and her schedule is not in our control.
  As we previously agreed, however, we will help coordinate the scheduling of her
  deposition, and we are following up with Aon about her availability.
- As to Malika Adams, we have not received a deposition notice for her. Also, Ms.
  Adams was employed by Comcast, not Plaintiffs or NBCUniversal Media LLC.
  However, her last day with the company was last week. We will reach out to Ms.
  Adams to see if she is willing to appear at deposition without the need for a
  subpoena and get back to you.

**Aon privilege log**: Enclosed you will find the Aon privilege log.

**"Documents relating to claimed damages:"** To clarify, we understand your reference to be to
the underlying invoices for tens of thousands of entries in the detailed Excel we produced on
October 26, 2016. As we already have discussed several times, Atlantic's demand that Plaintiffs
produce each and every underlying invoice is unreasonable and unduly burdensome. And as we
previously advised, it would take several months and unacceptable normal business interruption
to comply with this request. There would be extraordinary costs incurred, particularly because as
to expenses incurred in Croatia, most of those invoices are located in Croatia. Temporary
employees would need to be hired to search files to locate such documents, which would then
need to be shipped to Los Angeles to prepare them for production. Even as to documents located

**EXHIBIT 6  PG.  89**



**Strasburger & Price, LLP**
January 23, 2017
Page 3

in California, additional temporary personnel would need to be hired to search for and prepare such documents for production.

The substantial burden and expense of collecting, reviewing and producing these invoices significantly outweighs the marginal benefits that Atlantic stands to gain. Atlantic contends it needs these invoices for the following three reasons: (1) to decipher certain abbreviations found in the production bible produced by Plaintiffs, which Atlantic's consultant claims not to understand; (2) to confirm the expenses reflected in the extra expense production bible were actually incurred; and, (3) to analyze whether the expenses were in fact extra costs to the production which would not have been incurred "but for" relocation of the production. As set forth below, these claimed benefits are either dubious or can be adequately addressed through less burdensome and cost-intensive means:

First, we find it odd that a consultant with an entertainment-related background would have so much difficulty understanding basic industry terms and abbreviations, such as the ones found in the production bible. However, to the extent Atlantic or its consultant do not understand specific abbreviations or line items from the production bible, please provide us with a list of questioned entries (including a reference to the specific line item number and the worksheet in which it appears), and we will endeavor to provide an explanation (assuming the request and the list are reasonable).

Second, as to confirming that the expenses were actually incurred, two separate governments have already done so. Both Croatia and New Mexico authorized payment of a tax credit based on the expenditures incurred in their jurisdictions. Before such tax credits are authorized, the expenses are reviewed by independent accountants and are verified as legitimately incurred. Plaintiffs are also willing to investigate whether they can produce the Croatia and New Mexico reviews of the expenses which were completed in order to determine whether the expenses qualified for production tax credits, under the tax credit programs of those two jurisdictions. We would also be happy to provide a sworn verification that the expenses reflected in the extra expense production bible are an accurate and correct record of Plaintiffs' accounting records for the production.

Third, as to determining whether these were in fact "extra" expenses, we do not understand (and you have not explained) how the individual invoices will assist in that analysis. As we have previously indicated, we believe the most efficient way for Atlantic to procure this information is to take the depositions of the production executives involved in the production. In addition, and as we suggested during our meet and confer discussion, Atlantic's consultant can select expenses in each category (a reasonable number to be agreed on) which he would like to review in more detail, in order to determine whether they are in fact "extra." Plaintiffs are willing to provide further documentation as to those test selections, so long as the parties are able to agree on a reasonable number.

To the extent that Atlantic rejects all of our above proposals and continues to insist on the production of each invoice, we believe that the onus is on Atlantic to pay for all of the expenses associated with such a production. Accordingly, please confirm that Atlantic will pay the costs associated therewith and we will send you an anticipated budget.

8559647.1

**EXHIBIT 6  PG.  90**

**msk**

Strasburger & Price, LLP
January 23, 2017
Page 4

**Document production**: Our review process is ongoing. UCP/NEP are undertaking all reasonable efforts and have a dedicated review team working diligently to complete the review. Based on our current review pace, we anticipate producing additional documents on Thursday, January 26. However, based on the volume of documents to review, we believe that Plaintiffs' rolling document productions will continue into early February. As to a privilege log for Plaintiffs' initial production, we anticipate providing that to you by Wednesday, January 25.

To the extent Atlantic is not satisfied with the pace of this production, we remind you that we served Atlantic with our document requests on October 5, 2016. We did not receive *any* responsive documents from Atlantic when its response was served and the documents were due on November 11, 2016 (inclusive of a time extension we agreed to grant). Indeed, Atlantic's purportedly full production was not completed until December 16, 2016, five weeks after the initial response and documents were due.

In turn, Atlantic chose to serve its document requests on UCP/NEP on November 17, 2016, with the response due December 27, 2016 (inclusive of a time extension), with multiple intervening holidays. Five weeks from that date is January 31, 2017, and we are well in conformance with our discovery obligations.

Very truly yours,

Lucia E. Coyoca
A Professional Corporation of
MITCHELL SILBERBERG & KNUPP LLP

Enclosure

cc:     Val Shalamitski, Esq.

**EXHIBIT 6  PG.  91**

# INTENTIONALLY LEFT BLANK

# INTENTIONALLY LEFT BLANK

# INTENTIONALLY LEFT BLANK

# INTENTIONALLY LEFT BLANK

# INTENTIONALLY LEFT BLANK

# INTENTIONALLY LEFT BLANK

# INTENTIONALLY LEFT BLANK

# EXHIBIT 7

| From: | Shalamitski, Valentine |
|---|---|
| To: | "Crapster, Carla"; "Reed, Toni"; "Keeley, Michael" |
| Cc: | Coyoca, Lucia; Hayes, Daniel |
| Subject: | RE: UCP et al. v. Atlantic |
| Date: | Thursday, February 02, 2017 6:11:59 PM |
| Attachments: | image001.gif |

Counsel—We still have not heard from you on the dates below.  Please let us know as soon as possible.

---

**From:** Shalamitski, Valentine
**Sent:** Tuesday, January 31, 2017 11:40 AM
**To:** 'Crapster, Carla'; Reed, Toni; Keeley, Michael
**Cc:** Coyoca, Lucia; Hayes, Daniel
**Subject:** UCP et al. v. Atlantic

Carla—

We are following up on deposition scheduling and UCP/NEP's document production.

With respect to the depositions noticed by Atlantic, as we indicated in our meet-and-confer letter dated January 23, 2017 and during our call last week, given Atlantic's delay in confirming the deposition dates we offered on January 11, we did not know if the witnesses remained available on the dates previously offered.  (Randi Richmond on February 15, Andrea Garber on February 21, Mark Binke on February 24, and Kurt Ford on March 2.)  We checked, and in fact availability for these witnesses has changed.  But, since you indicated you were available to take the depositions on the dates offered, we have attempted to slot witnesses into those previously offered dates.  The *currently* available dates for UCP/NEP's witnesses are as follows:

1.  Randi Richmond – February 21, 2017

2.  Mark Binke – February 24, 2017

3.  Andrea Garber – March 2, 2017

4.  Kurt Ford – March 8, 2017

5.  Jeff Wachtel – March 14, 2017

Please confirm the above dates as soon as possible.  We will also let you know dates for the other deponents as soon as practicable.

As to documents, we will be making another rolling document production this week.  We anticipate we will complete UCP/NEP's production of documents within the next two weeks, by February 14, 2017.  Given that the first deposition of a UCP/NEP witness will not be until February 21, 2017, we believe that Atlantic will have ample time to prepare for depositions.  If you disagree, please advise, and we will see if Randi Richmond is available on a later date.

**EXHIBIT 7  PG.  100**



**Valentine A. Shalamitski** | **Attorney-at-Law**

T: 310.312.3736 | vas@msk.com

**Mitchell Silberberg & Knupp LLP** | **www.msk.com**

11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**EXHIBIT 7  PG.  101**

# EXHIBIT 8

| From: | Keeley, Michael |
| --- | --- |
| To: | Coyoca, Lucia |
| Cc: | Reed, Toni; Crapster, Carla; Shalamitski, Valentine; Hayes, Daniel |
| Subject: | RE: UCP et al v. Atlantic Specialty - Entertainment Claims Handling Manual |
| Date: | Monday, February 06, 2017 8:54:19 AM |
| Attachments: | image002.png |
| | image005.png |
| | image006.png |

Lucia:

In response to your e-mail from Saturday, as indicated previously, the manual Peter Williams testified about was no longer in use when the Dig claim was submitted.   And, we have already produced the only guidelines or manuals that were in place during the period this claim was brought.   Nevertheless, our client has redoubled its efforts to see if it can locate the outdated manual.

Regarding the two privilege logs that have been produced, while the privilege log produced by the plaintiffs does list positions for the persons identified, it does not identify the employer of each person, which is particularly relevant given that there are two plaintiffs, a parent company, numerous affiliates, a broker and Comcast involved in this claim and the communications involving it. The Plaintiffs appear to be asserting privilege, regardless of the employer of the individual involved.  As a result, it is necessary for us to understand exactly who each person was working for, and we therefore ask that you update the privilege log with the specific employers of each person. As to the Aon privilege log, we believe the rules require you to identify the people listed on the log, rather than requiring us to piece together from various sources who each person is and whether they are an attorney. We reiterate our request that you update this log and provide us one that identifies the employer and title of each person and that states whether each person is an attorney.

Finally, as to the deposition scheduling, we are not willing to pin down dates and witnesses with certainty at this point while we are still waiting on additional documents. It is not clear how large the volume will continue to be, considering the time it is taking to complete the review.  Additionally, just since the last telephone call about the anticipated schedule of production, you have advised of delays and the need for more time to complete the production.  During that last call, our repeated message was that we need to have all documents and sufficient time to review those and address issues of privilege before we can proceed to deposition testimony.  We are hopeful that all documents will be produced by February 14, as you have stated. But as you also acknowledge, we are also waiting on redacted documents from Aon, and we currently have no assurances as to when these will be produced. And, it is not clear that documents that have been withheld on the basis of privilege have been properly withheld.  We are willing to be cooperative on the dates, and it is possible that some of the dates you have identified will still work. But we cannot commit to them until we are sure we will have all the documents before those dates and that we will

**EXHIBIT 8  PG.  103**

have received them far enough in advance to give us time to prepare for the depositions. It appears to us that a February 21 start date will be too early in that context.  We look forward to receiving further documents from you soon, and we will be prepared to finalize deposition dates as soon as that occurs.

Michael Keeley
Strasburger & Price, LLP
901 Main Street, Suite 6000
Dallas, TX  75202-3794
Office: 214.651.4718
Fax: 214.659.4121
www.strasburger.com
*Admitted in Texas, Arkansas,*
*New Mexico, and New York*
**We've moved! Please note our new suite number.



**From:** Coyoca, Lucia [mailto:lec@msk.com]
**Sent:** Saturday, February 04, 2017 11:18 AM
**To:** Keeley, Michael
**Cc:** Reed, Toni; Crapster, Carla; Shalamitski, Valentine; Hayes, Daniel
**Subject:** RE: UCP et al v. Atlantic Specialty - Entertainment Claims Handling Manual

Mike,
We disagree with your characterizations of Williams' deposition testimony and our request for production of the manual he testified about, but look forward to receiving your substantive response and production of the manual (and any versions thereof).

Your sudden about face as to the scheduling of depositions for UCP/NEP witnesses and your refusal to proceed on dates your colleagues previously indicated were available is unreasonable.  Moreover, you have mischaracterized the parties' discussions regarding UCP/NEP's ongoing document production.  UCP/NEP went to great lengths to reserve dates with these witnesses during a very busy production season, when they had limited availability.  Your failure to confirm dates as they are offered may very well jeopardize the parties' ability to complete discovery before the cut-off date.  We have advised the witnesses that their depositions will not be proceeding on the dates Atlantic previously confirmed or the dates UCP/NEP previously offered, but we make no guarantees as to the witnesses' future availability.

Atlantic's position is particularly untenable in light of the parties' prior attempts to

**EXHIBIT 8  PG.  104**

coordinate deposition scheduling and document production.  Specifically:

1. Atlantic did not serve any depositions notices until Friday, January 6.
   UCP/NEP promptly provided proposed dates three business days later on
   January 11.  (In contrast, UCP/NEP served deposition notices on December
   13, 2016, and Atlantic did not provide any potential dates for more than two
   weeks.)  We told you that the dates for the witnesses were *currently* then
   available, but asked that you advise us promptly if the dates were acceptable
   so that we could confirm them with the witnesses.  Rather than accepting any
   of the proffered dates, on January 13, Atlantic refused all of them, instead
   demanding dates in early February, which were already booked with the
   depositions of Atlantic's witnesses. (Atlantic also demanded that we produce
   all witnesses on consecutive dates.)

2. As early as January 12, we informed you that UCP/NEP's rolling document
   productions were anticipated to occur into February.

3. On January 23, following the Court's order continuing the pre-trial and trial
   dates, we once again asked Atlantic to consider the dates previously
   proposed, indicating that if they were acceptable to Atlantic, we would
   ascertain whether the witnesses were still available on those dates.
   Specifically, the deposition dates we proposed were:
   a. Randi Richmond – February 15, 2017
   b. Andrea Garber – February 21, 2017
   c. Mark Binke – February 24, 2017
   d. Kurt Ford – March 2, 2017

4. On January 25, the parties met and conferred regarding discovery.  During that
   conference, Atlantic **confirmed** its availability for the above dates, subject to
   all documents being produced by a date certain so that Atlantic would have
   sufficient time to prepare for the depositions. Specifically, Toni Reed asked us
   to confirm that UCP/NEP would complete its rolling productions by no later
   than February 8, one week before the first deposition of Randi Richmond on
   February 15 (if that date remained available).

5. On January 31, we advised Atlantic that the February 15 date for Randi
   Richmond was no longer available, but that her deposition could proceed on
   February 21.  We also indicated that we anticipated UCP/NEP's production of
   documents would be complete by February 14, 2017, one week prior to the
   first deposition date on February 21.  We specifically told you:  "Given that the
   first deposition of a UCP/NEP witness will not be until February 21, 2017, we
   believe that Atlantic will have ample time to prepare for depositions. If you
   disagree, please advise, and we will see if Randi Richmond is available on a
   later date."  Thus, we proposed the following overall schedule:
   a. Randi Richmond – February 21, 2017
   b. Mark Binke – February 24, 2017

**EXHIBIT 8  PG.  105**

    c. Andrea Garber – March 2, 2017

    d. Kurt Ford – March 8, 2017

    e. Jeff Wachtel – March 14, 2017

6. The February 21, February 24, and March 2 dates are the **_same_** dates Atlantic had previously indicated on January 25 were available, when Atlantic requested that we confirm that all documents would be produced no later than one week prior to the first deposition.  Moreover, throughout the process, we have repeatedly confirmed that UCP/NEP would produce documents on a rolling basis, and have done so (the last rolling production was made yesterday).

Thus, UCP/NEP are in full compliance with their discovery obligations.  Your changed position rejecting the deposition scheduling which we have been working so hard to establish is troubling to say the least.  Atlantic already has the key documents in the case and UCP/NEP has already produced over 1,000 pages of documents not including the key Extra Expense Production Claim Bible which was produced back in October.  Thus, your proffered excuse that Atlantic cannot even schedule any depositions until all documents have been produced is not credible.  If and when Atlantic does request alternative available dates for the depositions of UCP/NEP witnesses, we will attempt to ascertain them but once again caution that we may not be able to make all witnesses available within the tight discovery time-frame remaining.

With respect to UCP/NEP's privilege log, you are incorrect – the UCP/NEP log does identify the titles of all individuals listed, including whether she/he is an attorney, and all of the listed individuals are employed by NBCUniversal/UCP-related entities.  With respect to the Aon privilege log, as we previously advised, we believe Atlantic already knows who many of them are but to the extent it does not, that information could be obtained during the deposition of Susan Weiss.  Moreover, further information as to certain of these individuals (including identifying who is a lawyer) is contained in UCP/NEP's privilege log.  Each of the individuals that are listed work either for Aon or an NBCUniversal affiliated entity.  If you have questions about any specific individual, please let us know and we can look into it further.  Finally, as to the Aon documents, we will follow up with Foley & Lardner to determine if the additional documents have been produced, but we remind you that we do not represent Aon, and do not control their document production.

**image001**

**Lucia E. Coyoca** | **Partner, through her professional corporation**
T: 310.312.3250 | lec@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

**EXHIBIT 8  PG.  106**

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Keeley, Michael [mailto:Michael.Keeley@strasburger.com]
**Sent:** Friday, February 03, 2017 7:08 AM
**To:** Coyoca, Lucia; Shalamitski, Valentine; Hayes, Daniel
**Cc:** Reed, Toni; Crapster, Carla
**Subject:** UCP et al v. Atlantic Specialty - Entertainment Claims Handling Manual

Lucia, as you know, Atlantic produced two documents responsive to your clients' request  for claim manuals.  We believe what we produced is all that was in existence as of July 30, 2014.  As you know, Mr. Williams testified that he could not recall the name or title of  the document he drafted in some seven years ago in 2010, and he could also could not recall how long it was.  Only upon your insistence did he try to provide an estimate of the length or the name. While he did testify that there was "a" manual in existence when he left, he did not say it was the "same" manual, and it appears it was not.  I have since probed this issue further, and Mr. Williams has indicated that after he moved out of claims, systems were centralized and what he was referring to could have been incorporated into another document, that any manual he wrote would have been updated years ago, and that it is quite likely no copy exists but has been replaced by now.  Nevertheless, we will ask our client to be certain there are no other documents responsive to your clients' request.  On a related note, your continued editorial comments on disputed issues such as this are not helpful.

To address other pending items, we once again object to the fact that your client still has not produced all documents response to Atlantic's Request for Production.  As you know, following an agreed upon extension of your clients' deadline to produce documents, your clients were required to produce responsive documents by December 27, 2016.  It is now over one month later, and your client still has not completed production.  The most recent update we received this week indicated that you do not believe production will be completed until February 14, at the earliest.  Moreover, you have so far refused to provide a detailed privilege log, as required by the Federal Rules.  Your privilege logs, for both the Aon documents and your client's production, do not appear to specify each attorney involved (by noting each by title), and do not identify the position and employer of each of the individuals who are named.  As a result, it is not possible for Atlantic to analyze the claims of privilege you have made or to be in a position to discuss those with you.  Because we lack documents and necessary information, it is impossible for Atlantic to determine what depositions are appropriate and to fully prepare for those it believes should be taken.  Thus, at this point Atlantic is unable to confirm any of the dates you have provided.  Instead, we will  inform you of the depositions we want, and when, once your production is complete.  In the meantime, please let us know if you will voluntarily supplement the privilege logs you have provided for both your clients and  Aon.  Also, please confirm that all responsive Aon documents have been produced.  In that regard, we believe that redacted documents noted on the Aon privilege log, previously discussed, are still outstanding.  Finally, Atlantic reserves all of its rights on these issues.

Michael Keeley

**EXHIBIT 8  PG.  107**

Strasburger & Price, LLP
901 Main Street, Suite 6000
Dallas, TX  75202-3794
Office: 214.651.4718
Fax: 214.659.4121
www.strasburger.com
*Admitted in Texas, Arkansas,*
*New Mexico, and New York*
**We've moved! Please note our new suite number.



*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

**EXHIBIT 8  PG.  108**

# EXHIBIT 9

# Strasburger
### ATTORNEYS AT LAW

March 10, 2017

TONI SCOTT REED
(214) 651-4345
Direct Fax (214) 659-4091
Toni.Reed@strasburger.com

Mr. Daniel M. Hayes
Mitchell Silberberg Knupp LLP
11377 W. Olympic Boulevard
Los Angeles, CA 90064

Re:   *Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*; Case No. 2:16-cv-04435-PA-MRW, pending in the United States District Court for the Central District of California, Western Division

Dear Daniel:

This letter addresses several issues regarding the deposition notices the plaintiffs served on March 7, 2017. You have noticed all these depositions in Los Angeles. The general rule (which you have already raised in regard to NBC witnesses), however, is that witnesses are to be deposed in the place where they reside. We intend to move for a protective order if you will not agree to depose the defendant and the other persons whom you have noticed where they reside.

In particular, you have noticed the deposition of Wanda Phillips, who no longer works for Atlantic and is therefore not subject to Atlantic's control. She resides in New York, and obviously cannot be subpoenaed to Los Angeles. We will reach out to Ms. Phillips to see if we can accept a subpoena on her behalf, but she will need to be deposed in New York, unless we can persuade her to travel elsewhere.

Atlantic objects to any deposition of Dennis Crosby in this case. Mr. Crosby had no involvement with the *Dig* claim whatsoever. He has no knowledge of any information relevant to this case, and unless we can reach agreement on this issue, Atlantic intends to move for a protective order stating that Mr. Crosby should not be deposed in connection with this case.

Atlantic also objects to the deposition notice of Sean Duffy to the extent that the plaintiffs intend to depose Mr. Duffy beyond the limited scope of his knowledge of the *Dig* claim. As is clear from the documents we have produced, Mr. Duffy had a very limited role in the claim process.  A lengthy deposition of Mr. Duffy is unnecessary. We therefore propose that we discuss limiting the time for Mr. Duffy's deposition to a period of well under seven hours. Any deposition of Mr. Duffy that

**Strasburger & Price, LLP**

901 Main Street, Suite 6000 | Dallas, Texas 75202.3794 | 214.651.4300 tel | 214.651.4330 fax | www.strasburger.com
Austin | Collin County | Dallas | Houston | San Antonio | New York, N.Y. | Washington, D.C. | Mexico City - Strasburger & Price, SC

**EXHIBIT 9  PG.  110**



Mr. Daniel M. Hayes
March 10, 2017
Page 2

goes on for the maximum permitted time will be solely for purposes of harassment, given his extremely limited role in the *Dig* claim. Please let us know when we can set up a time to discuss limiting the scope of Mr. Duffy's deposition.

In regard to the notice of deposition for a corporate representative, your designated subjects are objectionable on many grounds.  You will separately receive a full set of Objections to the Notice of Deposition.

As a general point, you have chosen dates without discussing the availability of witnesses with us.  We cannot state whether any of the witnesses are available on the dates you have unilaterally selected.  Accordingly, it will be necessary to discuss scheduling, in the context of the affected persons' availability.

Finally, and in the context of discussing scheduling overall, we also need to move forward with the scheduling of the depositions that Atlantic will take. Those depositions were of course raised some time ago, although we have been waiting for Plaintiffs' full production of documents and privilege log, and resolution of discovery issues, to proceed.  We intend to take a 30(b)(6) deposition.  We also intend to depose the following individuals: Susan Weiss, Thomas McCarthy, Stephen Smith, Randi Richmond, Mark Binke, Kurt Ford, Jeff Wachtel, Andrea Garber, and Malika Adams. For purposes of scheduling, we need to know right away whether Stephen Smith will be traveling to the United States for his deposition (as you have at various times indicated he may be a designated corporate representative).  Please let us know this as soon as possible.

We look forward to resolving these issues promptly.

Very truly yours,

Toni Scott Reed

cc:    Mr. Michael Keeley
       Ms. Carla Crapster

**EXHIBIT 9  PG.  111**

# EXHIBIT 10



## MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Daniel M. Hayes
Partner
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

March 14, 2017

**BY EMAIL ONLY**

Toni Scott Reed
Strasburger & Price, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202-3794

Re:   **Universal Cable Productions, LLC, et al. v. Atlantic Specialty Insurance Company**

Dear Toni:

We received your letter regarding our recent notices for depositions of Wanda Phillips, Dennis Crosby, and Sean Duffy, and of Atlantic pursuant to Rule 30(b)(6).

First, we are willing to meet-and-confer with you to attempt to schedule all of these depositions for mutually convenient dates and locations.  In furtherance of that process, by COB on Wednesday, March 15, please provide us several available dates between March 22 and April 5 for each deposition.  Please include in that correspondence the city where you contend each deposition should be conducted.

Second, we are willing to take the deposition of Wanda Phillips at our New York office if she is unwilling to travel to Los Angeles.  Please confirm by COB on Wednesday, March 15 that you are authorized to accept service of a subpoena on her behalf.  Assuming you are, please also let us know what dates she is available between March 22 and April 5 and whether she prefers New York or Los Angeles.

Third, you cite no legal authority or legitimate grounds of any kind to support your threat to move to limit the duration and scope of the deposition of Sean Duffy and to preclude the deposition of Dennis Crosby in its entirety.  Both of these individuals were involved in internal email communications regarding the *Dig* Claim prior to the issuance of Atlantic's denial letter.  Indeed, you identified Mr. Duffy as having been "involved in evaluating and considering" and "responsible for the decision to deny" the *Dig* Claim in Atlantic's most recent responses to Plaintiffs' first set of interrogatories.  We are not aware of any authority that would support an order prospectively limiting the temporal scope or subject matter of either of these important depositions.  We will not agree to any such limitations.

If you still intend to move for protective orders in connection with the depositions of Mr. Duffy or Mr. Crosby, please: (1) send us the legal authority that supports your position(s); and (2) let us know what time today or on Wednesday you will be available to meet-and-confer regarding the same.  I am generally available either day, with the exception of 10:00 a.m. – 11:00 a.m. on Wednesday.  In the meantime, please check on the availability of these witnesses for deposition dates between March 22 and April 5.  We want to be able to move forward without any delay in

11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone:  (310) 312-2000  Fax:  (310) 312-3100  Website: WWW.MSK.COM

**EXHIBIT 10  PG.  113**

msk

Toni Scott Reed
March 14, 2017
Page 2

the event we can quickly resolve your objections informally or with the help of the Magistrate Judge.

We will address any objections to the topics in our Rule 30(b)(6) notice if and when we receive them.

Sincerely,

Daniel M. Hayes
Partner of
MITCHELL SILBERBERG & KNUPP LLP


Cc:    Michael Keeley
       Carla Crapster

**EXHIBIT 10  PG.  114**

# EXHIBIT 11

| | |
|---|---|
| **From:** | Crapster, Carla |
| **To:** | Hayes, Daniel |
| **Cc:** | Keeley, Michael; Reed, Toni; Coyoca, Lucia; Shalamitski, Valentine |
| **Subject:** | RE: UCP v. Atlantic - Deposition Dates |
| **Date:** | Friday, March 17, 2017 4:08:52 PM |
| **Attachments:** | image001.gif |

Dan,

In Toni's letter of last Friday, she referred to the fact that the depositions of the Plaintiffs' witnesses (which were requested some months ago) will need to be scheduled.  Those witnesses were requested well before the Plaintiffs sent their list of a second group of Atlantic witnesses for depositions.  Thus, those requests were made first and should be honored first.

In regard to the Plaintiff's second group for depositions, we will get you deposition dates as soon as we have them. We have been working diligently on alternative dates. We propose April 5 for the 30(b)(6) deposition, and would like for it to occur in Minnesota, where the 30(b)(6) representative resides. We will separately provide the objections regarding the scope of the 30(b)(6) notice, and reserve our rights on those.  We have continued to follow up multiple times regarding the other dates, but are not able to provide them to you yet. We will continue following up and will let you know the other dates as soon as we have them.

We have also raised with you the various issues we have with your scope of requests for depositions.  Please refer to our letter sent today on that subject as well.

On our end, our request to you of last Friday regarding dates for the Plaintiffs' witnesses made you aware that we needed to move forward with the orderly scheduling of all of those dates. We were obviously attempting to be cooperative with dates and continue to intend to do so to the extent you are willing to work with us to expedite this process.

On this issue, we note that our client has been badly prejudiced by the Plaintiffs' failure to timely complete its document production (which is still continuing even today) and to get us a timely privilege log (we understand it is not going to arrive today).  We have previously advised you that we believed we could not proceed with depositions until we had all the Plaintiffs' documents.  Additionally, our client has been hampered in being able to file a complete motion to compel documents, because we have not received your commitment that you have completed your production, nor have we received your actual, final privilege log.  At this point, production and the privilege log are both nearly three months overdue, and we believe we may not be able to wait any longer to take depositions.  Accordingly, we need to move forward  at least with the scheduling of all the depositions we originally requested (and restated last week).  So please do provide us with deposition dates for the people we referenced in our March 10 letter as soon as possible.

Sincerely,
Carla


**Carla Crapster** • Strasburger & Price, LLP

EXHIBIT 11  PG.  116

901 Main Street, Suite 6000, Dallas, TX 75202
214.651.2034 • Fax 214.659.4060 • Strasburger.com

---

**From:** Hayes, Daniel [mailto:dmh@msk.com]
**Sent:** Thursday, March 16, 2017 10:21 PM
**To:** Crapster, Carla
**Cc:** Keeley, Michael; Reed, Toni; Coyoca, Lucia; Shalamitski, Valentine
**Subject:** RE: UCP v. Atlantic - Deposition Dates

Carla,

Please provide dates between March 22 and April 5 for all of the depositions we noticed, by tomorrow.  Our notices were served on March 7, and our request for dates that work for Atlantic's witnesses has been outstanding since Tuesday.  As for the depositions Atlantic previously noticed of Plaintiffs' witnesses, prior to today you had not asked for new dates since Atlantic unilaterally took those depositions off calendar.  We will of course check availability, but the depositions we noticed will need to be scheduled first.

Dan



**Daniel M. Hayes** | **Partner, through his professional corporation**
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

---

**From:** Crapster, Carla [mailto:Carla.Crapster@strasburger.com]
**Sent:** Thursday, March 16, 2017 2:10 PM
**To:** Hayes, Daniel
**Cc:** Keeley, Michael; Reed, Toni; Coyoca, Lucia; Shalamitski, Valentine
**Subject:** UCP v. Atlantic - Deposition Dates

Dan,
We are waiting to confirm dates for the depositions you have noticed. But in the meantime, please note that the dates you have noticed for next week do not work for either our 30(b)(6) representative or Wanda Phillips. We will get back to you with dates that do work as soon as possible.

In the meantime, we remind you that we also have an outstanding request for dates that work for the depositions we intend to notice. Please provide us with the dates that will work for the individuals we listed in our letter of March 10.

**EXHIBIT 11  PG.  117**

Thank you,
Carla

**Carla Crapster** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.2034 • Fax 214.659.4060 • Strasburger.com

---

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

---

**EXHIBIT 11  PG.  118**

# EXHIBIT 12

1  LUCIA E. COYOCA (SBN 128314)
     lec@msk.com
2  VALENTINE A. SHALAMITSKI (SBN 236061)
     vas@msk.com
3  DANIEL M. HAYES (SBN 240250)
     dmh@msk.com
4  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
5  Los Angeles, CA 90064-1683
   Telephone:  (310) 312-2000
6  Facsimile:  (310) 312-3100

7  Attorneys for Plaintiffs
   Universal Cable Productions LLC and
8  Northern Entertainment Productions LLC

9               UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                   WESTERN DIVISION

12

13  UNIVERSAL CABLE              CASE NO. 2:16-cv-4435-PA-MRW
    PRODUCTIONS LLC, *et al.*,
14                               **PLAINTIFFS' SUPPLEMENTAL
                Plaintiffs,      RESPONSES TO DEFENDANT'S
15                               SECOND SET OF
         v.                      INTERROGATORIES**
16
    ATLANTIC SPECIALTY           Filed:     June 20, 2016
17  INSURANCE COMPANY,           Trial:     July 25, 2017

18              Defendant.

19  ─────────────────────────

20  PROPOUNDING PARTY:      Defendant, Atlantic Specialty Insurance Company

21                          (hereinafter, "Atlantic" or "Defendant")

22  RESPONDING PARTY:       Plaintiffs, Universal Cable Productions LLC

23                          (hereinafter, "UCP") and Northern Entertainment

24                          Productions LLC ("Northern Entertainment,"

25                          hereinafter collectively with UCP, "Plaintiffs").[1]

26  SET NUMBER:             Two

27  ─────────────────────
    [1] Defendant served identical sets of interrogatories on each Plaintiff.  This response
28  is on behalf of both Plaintiffs.

Mitchell
Silberberg &
Knupp LLP

8725209

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

**EXHIBIT 12  PG.  120**

1    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure

2    ("FRCP"), Plaintiffs hereby provide this Supplemental Responses to Defendant's

3    Second Set of Interrogatories ("Response").

4                              **PRELIMINARY STATEMENT**

5         1.    The responses provided herein are made solely for the purposes of this

6    action.  All information provided in response to these interrogatories are subject to

7    all objections as to competence, relevance, materiality, propriety, admissibility,

8    and all other objections on any grounds that would permit or require the exclusion

9    of the information if offered into evidence, and all objections and grounds are

10   hereby expressly reserved and may be interposed at the time of any deposition,

11   during any hearing or trial, or any other proceeding in this matter.

12        2.    The following responses are based on information presently available

13   to and located by Plaintiffs and no incidental or implied admissions are intended

14   hereby.  The fact that Plaintiffs respond or object to any interrogatory is not

15   intended and shall not be construed as an admission that Plaintiffs accept or admit

16   the existence of any facts set forth in or assumed by such interrogatory, or that

17   such response or objection constitutes admissible evidence.  The fact that Plaintiffs

18   respond to all, or part, of any interrogatory is not intended to be and should not be

19   construed as a waiver by Plaintiffs of all, or any part, of any objection to any

20   interrogatory made herein.

21        3.    Plaintiffs' discovery is ongoing.  Plaintiffs reserve the right to

22   supplement, amend, alter and/or modify their responses to these interrogatories,

23   and the following objections and responses are without prejudice to Plaintiffs' right

24   to provide supplemental responses as additional information is discovered, or

25   present additional responsive information at or before any hearing or trial in this

26   matter, or any other proceeding in this matter.

27

28

Mitchell
Silberberg &
Knupp LLP

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

**EXHIBIT 12  PG.  121**

## OBJECTIONS TO ATLANTIC'S DEFINITIONS OF TERMS
## APPLICABLE TO ALL INTERROGATORIES

1.      Plaintiffs object to Defendant's definition of "YOU," "YOUR," "YOURSELF," and "YOURS" on the grounds that the definition:  (a) is overly broad, vague, ambiguous, unduly burdensome and harassing, and includes subject matter that is not relevant to any party's claims or defenses or proportional to the needs of the case, to the extent the definition includes separate, non-party entities and their "parents or subsidiaries, predecessors, assigns, agents, officers, directors, employees, attorneys, or other representatives acting on its behalf"; and (b) by reference to "attorneys," calls for information protected by the attorney-client privilege or work product doctrine.  Plaintiffs will respond on behalf of themselves only, and have construed the foregoing definition as not seeking information protected by the attorney-client privilege or work product doctrine.

2.      Plaintiffs object to Defendant's definition of "IDENTIFY" and "IDENTIFICATION" on the grounds that the definition is overly broad, vague, ambiguous, unduly burdensome and harassing, and includes subject matter that is not relevant to any party's claims or defenses or proportional to the needs of the case, particularly to the extent it requires Plaintiffs to state "if such person was affiliated at any time with any party to this litigation or with any affiliate of any party to this litigation by employment or otherwise, state the nature (including job title, if any) and dates of such affiliation."

3.      Plaintiffs object to Defendant's definition of "LOSS" as "the loss … incurred as a result of the delays in production of DIG and that YOU contend is covered by the POLICY" as inaccurate, vague, and ambiguous.  Plaintiffs have construed the foregoing definition as being those extra costs and expenses that were incurred in connection with the delay, postponement, and relocation of the *Dig* production.

**EXHIBIT 12  PG.  122**

1   The foregoing preliminary statement and objections, as applicable, are

2   incorporated into each of the following responses.

3   **SUPPLEMENTAL RESPONSES TO INTERROGATORIES**

4   **INTERROGATORY NO. 21:**

5   Explain in detail how YOU calculated the LOSS, including but not limited

6   to identifying each category of items that makes up the LOSS, how much was

7   incurred for each such category, and why each category is included and why it was

8   necessary to incur each such category.

9   **RESPONSE TO INTERROGATORY NO. 21:**

10   Plaintiffs object to this interrogatory to the extent it seeks information

11   potentially protected by the attorney-client privilege or work product doctrine.

12   Plaintiffs also object to this interrogatory to the extent it contains multiple subparts

13   within the meaning of FRCP 33(a)(1), is burdensome, oppressive, vague, and

14   ambiguous, particularly in its use of the phrases "explain in detail," "category of

15   items," "why each category is included and why it was necessary to incur each

16   such category." Plaintiffs further object to this interrogatory on the grounds that

17   the parties have engaged in extensive meet-and-confers with Atlantic, including

18   specifically with respect to the subject matter of this interrogatory. Plaintiffs

19   already have produced voluminous documents to address the subject matter of this

20   interrogatory, which required a considerable expenditure of time, expense and

21   resources for Plaintiffs to locate and prepare such documents for production.

22   Subject to and without waiving the foregoing objections and preliminary

23   statement, Plaintiffs respond as follows:

24   Plaintiffs calculated the *Dig* extra expenses by isolating, from the total

25   expenses incurred to produce episodes 2-6 of the series, only those expenses and

26   costs that were caused by "the interruption, postponement, … relocation …" of the

27   *Dig* production out of Israel, due to "Imminent peril" as that term is defined in

28   Atlantic's Policy, Section III – Extra Expense, § I. Those extra expenses are set

Mitchell
Silberberg &
Knupp LLP

4

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

**EXHIBIT 12  PG.  123**

1    forth in the Excel Spreadsheet and associated Worksheets, that were produced to

2    Atlantic on October 26, 214.  Specifically, Plaintiffs provided to Atlantic detailed

3    information on an item by item basis regarding the incurred extra expenses in the

4    document labeled UCP000001.  That document had a top sheet, which provided an

5    overview and explanation of the extra expenses, and was accompanied by six

6    Excel Worksheets, containing an itemized list by category of the extra expense

7    costs that were incurred.  The itemized list of costs were organized into the

8    following categories:

9         1)    Croatia:  Extra expenses (paid in Croatia) in connection with

10               the relocation of the *Dig* production to Croatia, with multiple

11               detailed entries;

12        2)    Israel:  Extra expenses (paid in Israel) in connection with the

13               relocation of the *Dig* production to Croatia, with multiple

14               detailed entries;

15        3)    NM Prep:  Extra expenses in connection with the "prep" of the

16               *Dig* production in New Mexico, with multiple detailed entries;

17        4)    NM Wrap:  Extra expenses in connection with the "wrap" of

18               the *Dig* production in New Mexico, with multiple detailed

19               entries;

20        5)    NM All Series:  Extra expenses in connection with the

21               relocation of the *Dig* production to New Mexico, with multiple

22               detailed entries; and

23        6)    SAG SPAN:  Extra expenses in connection with cast

24               conversion to the U.S. requirements in connection with the

25               relocation of the *Dig* production to New Mexico.  The provided

26               information included detailed calculation and identification of

27               specific actors and *Dig* episodes in connection with which these

28               extra expenses were incurred.

Mitchell
Silberberg &
Knupp LLP

5

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

**EXHIBIT 12  PG.  124**

1    Plaintiffs provided Atlantic further detailed break-downs of the incurred

2    extra expenses in the document produced with bates labels UCP018022-018026.

3    This document set forth descriptions of the various categories of costs described

4    above, and the amounts that were incurred for each such category of the Croatia,

5    Israel, NM Prep, NM Wrap, and NM All Series Excel Worksheets.  These

6    "categories" of expenses were included in the extra expense calculation, and all

7    were necessarily incurred, as a result of the delay, postponement, and subsequent

8    relocation of the *Dig* production out of Israel for production to be completed in

9    New Mexico and Croatia.

10    In addition to the information provided in documents UCP000001 (Excel

11    Worksheets) and UCP018022-018026 (category descriptions of the costs),

12    Plaintiffs have also engaged in extensive meet-and-confers with Atlantic as to the

13    subject matter of this interrogatory, providing further information and producing

14    voluminous records to support the claim for extra expenses.  Furthermore,

15    Plaintiffs designated Robert Wunderlich as an expert witness in this case to testify

16    regarding, among other things, the extra expense that Plaintiffs incurred in

17    connection with the relocation of the *Dig* production.  On March 17, 2017,

18    Plaintiffs produced Mr. Wunderlich's expert report and the supporting schedules,

19    and underlying accounting data in Excel spreadsheet format to Atlantic, all of

20    which is responsive to this interrogatory.  Plaintiffs hereby refer to the information

21    set forth in Mr. Wunderlich's report and the supporting schedules and underlying

22    accounting data in the Excel spreadsheets, including the documents, data, and

23    materials listed on Schedule D of Mr. Wunderlich's report.  *See* FRCP

24    33(d).  (Plaintiffs note that Mr. Wunderlich's report and the supporting schedules

25    and underlying accounting data has been designated "Confidential – Attorney's

26    Eyes Only" under the Protective Order in place in this action.  Plaintiffs maintain

27    that designation, and do not waive it by referencing Mr. Wunderlich's report in this

28    response.)

Mitchell
Silberberg &
Knupp LLP

6

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

**EXHIBIT 12  PG.  125**

1  In addition, Atlantic has noticed a Rule 30(b)(6) deposition on, *inter alia*, the

2  loss claimed by Plaintiffs, and Plaintiffs intend to designate a witness to testify on

3  such topic.  To the extent Atlantic seeks information regarding elements of

4  Plaintiffs' damage claim not addressed in Mr. Wunderlich's report, Atlantic may

5  explore the same in the Rule 30(b)(6) deposition.

6  **INTERROGATORY NO. 22:**

7  Explain in detail all facts and circumstances considered in deciding to move

8  production of *DIG* to Croatia and New Mexico, and identify any other potential

9  locations that were considered and not selected, for exterior or interior shooting,

10  and the reasons why.

11  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 22:**

12  Plaintiffs object to this interrogatory to the extent it seeks information

13  potentially protected by the attorney-client privilege or work product doctrine.

14  Plaintiffs also object to this interrogatory to the extent it contains multiple subparts

15  within the meaning of FRCP 33(a)(1), is burdensome, oppressive, vague, and

16  ambiguous, particularly in its use of the phrases "explain in detail," "all facts and

17  circumstances considered," and "exterior or interior shooting."  Plaintiffs also

18  object to the interrogatory on the grounds that it seeks information duplicative of

19  information Plaintiffs already have provided in response to Interrogatory Nos. 3, 4,

20  and 15, and to the extent this further interrogatory seeks information not relevant to

21  any party's claim or defense or proportional to the needs of the case.

22  Subject to and without waiving the foregoing objections and preliminary

23  statement, Plaintiffs provide their supplemental response as follows:

24  Plaintiffs incorporate herein and refer Atlantic to Plaintiffs' response dated

25  December 30, 2016 to Interrogatory Nos. 3, 4, and 15 which, among other things,

26  provided information regarding certain alternative locations (Malta and Canada)

27  and the reasons for selecting Croatia and New Mexico to complete the production

28  of the series.

Mitchell
Silberberg &
Knupp LLP

7

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

**EXHIBIT 12  PG.  126**

1   Plaintiffs identify the following additional "potential locations that were

2   considered and not selected" because Croatia and New Mexico were determined to

3   be the most suitable locations at the time, based on various factors and the then

4   existing circumstances:  Greece (*e.g.*, Rhodes), Italy (*e.g.*, Lecce, Bari), Morocco

5   (*e.g.*, Rabat), Turkey (*e.g.*, Istanbul).

6   As they were considering whether to move out of Israel, the *Dig* production

7   team had to work quickly to identify alternate locations and time was of the

8   essence.  Among other things, *Dig* had been licensed to the USA Network, which

9   had already announced a fall 2014 airdate, and UCP needed to deliver within the

10   contracted time frame.  Further, if the production was not kept on schedule, UCP

11   was in danger of potentially losing *Dig* talent due to commitments to other

12   engagements.

13   Because *Dig* is set in Jerusalem and the pilot was filmed there, it was

14   essential that the alternate location have the same look and feel (*e.g.*, comparable

15   stone color and structures, public streets, buildings), in order to maintain the

16   continuity of the look established in the pilot.  Croatia, Greece, Italy, Malta,

17   Morocco, and Turkey were quickly identified as potential alternatives.

18   The *Dig* production team reviewed and assessed the potential alternatives

19   and initially determined that the best match from a creative perspective was Malta.

20   UCP accordingly attempted to make arrangements to move production to Malta,

21   but learned from local film industry representatives, as well as a local production

22   services company, that there was no room for the *Dig* production in Malta during

23   the time period required to keep *Dig* on schedule.  Among other things, four shows

24   were already shooting in Malta, which impacted the availability of nearly

25   everything needed for production, from crew to hotel rooms, and UCP could not

26   wait for availability to open up.

27   The *Dig* production team determined that the next best match from a

28   creative perspective for a lookalike location was Croatia.  UCP was able to make

Mitchell
Silberberg &
Knupp LLP

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

**EXHIBIT 12  PG.  127**

1   arrangements to move part of the production to Croatia.  But, for the reasons set

2   forth in response to Interrogatory Nos. 15 and 23, shooting in Croatia alone was

3   not a viable option.  UCP needed to move other parts of the production to New

4   Mexico for those scenes which needed to be shot on stage sets.  As a production

5   location for the shooting of the stage set scenes, New Mexico was attractive, in

6   part, because of the availability of quality crew, infrastructure, tax credits, and

7   UCP's familiarity with production in New Mexico based on prior experience.  *See

8   also* Plaintiffs' response to Interrogatory No. 15.  In addition, at the time of the

9   relocation, the scripts for the *Dig* remaining episodes had a storyline set in

10  Arizona.  New Mexico could double for Arizona to cover part of the then existing

11  storyline.  Later, the script was rewritten to be set partly in New Mexico, to avoid

12  the need to recreate elements of Arizona and make the *Dig* production even more

13  efficient.

14       Moreover, Atlantic has served a Rule 30(b)(6) deposition notice, with

15  certain categories requiring the production of a corporate designee witness to

16  testify as to the selection of Croatia and New Mexico to complete production of the

17  series.  Plaintiffs anticipate designating a witness or witnesses who will testify as

18  to the topic of this interrogatory in response to the Rule 30(b)(6) deposition notice

19  and note the information provided in such deposition will be responsive to this

20  interrogatory.

21  **INTERROGATORY NO. 23:**

22       Explain the bases for YOUR position that Croatia did not have sufficient

23  indoor facilities in which to shoot *DIG*, including listing by address and description

24  the indoor facilities located in Croatia that YOU considered in deciding whether

25  Croatia had sufficient indoor shooting facilities.

26  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 23:**

27       Plaintiffs object to this interrogatory to the extent it seeks information

28  potentially protected by the attorney-client privilege or work product doctrine.

Mitchell
Silberberg &
Knupp LLP

9

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

**EXHIBIT 12  PG.  128**

1   Plaintiffs also object to this interrogatory to the extent it contains multiple subparts

2   within the meaning of FRCP 33(a)(1), is burdensome, oppressive, vague, and

3   ambiguous, particularly in its use of the phrases "explain the bases" and "sufficient

4   indoor facilities."  Plaintiffs also object to the interrogatory on the grounds that it

5   seeks information duplicative of information Plaintiffs provided in response to

6   Interrogatory No. 15, and to the extent this further interrogatory seeks information

7   not relevant to any party's claim or defense or proportional to the needs of the

8   case.  Plaintiffs further object to this interrogatory in that it assumes facts not in

9   evidence, *e.g.*, that Croatia had the requisite sound stages and other studio facilities

10   suitable for filming interior scenes comparable to New Mexico.

11        Subject to and without waiving the foregoing objections and preliminary

12   statement, Plaintiffs provide their supplemental response as follows:

13        Plaintiffs incorporate herein and refer Atlantic to Plaintiffs' response dated

14   December 30, 2016 to Interrogatory No. 15 which, among other things, stated:

15              "The *Dig* production was moved to *both* Croatia and

16              New Mexico from Israel because neither location

17              individually had the same attributes as Israel.  Croatia

18              had comparable stone color and structures as Jerusalem,

19              with public streets, buildings, and areas such as

20              archaeological dig sites that had the same look and feel

21              as Jerusalem.  Thus, while Croatia was suitable for

22              filming exterior scenes and shots, it did not have the

23              requisite sound stages and other studio facilities suitable

24              for filming interior scenes.  Conversely, while New

25              Mexico had suitable studio facilities, it did not have the

26              same look or feel as Jerusalem as did Croatia.  Therefore,

27              it was necessary to film in both Croatia and New

28              Mexico."

Mitchell
Silberberg &
Knupp LLP

10

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

**EXHIBIT 12  PG.  129**

In addition, as stated in response to Interrogatory Nos. 15 and 22, Croatia was used for the "location" shots (*i.e.*, locales which had a similar look and feel as Jerusalem, with comparable stone color and structures, public streets, and buildings).  While Croatia was suitable for filming "location" shots, Croatia was not suitable for, and could not be used for shooting "stage" scenes, because of the lack of adequate soundstage facilities and other production infrastructure.  UCP cannot provide any addresses of "indoor facilities" to shoot *Dig* that UCP considered because, to UCP's knowledge, no facilities sufficient to meet the needs of the *Dig* production existed which could be used by UCP.  Specifically, in the areas of Croatia in which UCP was filming, there simply were no adequate facilities.  Moreover, UCP could not simply set up stage construction and production in Croatia, because, in addition to the lack of adequate soundstage facilities, Croatia lacked the necessary production infrastructure, including but not limited to adequate construction crews that would have been required to do the massive construction work of building sets from scratch, and high caliber production crew (without any language barriers) that would be available to cover the required shooting.

Moreover, Atlantic has served a Rule 30(b)(6) deposition notice, with certain categories requiring the production of a corporate designee witness to testify as to the selection of Croatia and New Mexico to complete production of the series.  Plaintiffs anticipate designating a witness or witnesses who will testify as to the topic of this interrogatory in response to the Rule 30(b)(6) deposition notice, and note the information provided in such deposition will be responsive to this interrogatory.

**INTERROGATORY NO. 24:**

IDENTIFY all persons who were working on the *DIG* production in Israel in July 2014 and state the exact dates that each person was in Israel and the dates each person left and, if the person continued work on *DIG* after leaving Israel, state

Mitchell
Silberberg &
Knupp LLP

11

**EXHIBIT 12  PG.  130**

1  where each such person went and the date the person next resumed working on

2  *DIG*.

3  **RESPONSE TO INTERROGATORY NO. 24:**

4       Plaintiffs object to this interrogatory because it seeks information not

5  relevant to any party's claim or defense or proportional to the needs of the case.

6  Plaintiffs also object to this interrogatory to the extent it contains multiple subparts

7  within the meaning of FRCP 33(a)(1), is burdensome, oppressive, vague, and

8  ambiguous, and would require expenditure of efforts and resources

9  incommensurate with the needs of the case.

10       Subject to and without waiving the foregoing objections and preliminary

11  statement, Plaintiffs respond as follows:  Plaintiffs do not believe information

12  concerning the exact dates that each person who worked on the *DIG* production

13  arrived in and left Israel in July 2014, and where each such person went after

14  he/she left Israel, and the date the person next resumed working on *Dig*, has any

15  relevance to the issues in dispute in this lawsuit.  The time and resources that

16  would be required to research and obtain this information (if it is even available)

17  would be considerable and it is unknown whether this information exists and can

18  be located in a reasonable time frame.  However, Plaintiffs are willing to meet and

19  confer as to this interrogatory to ascertain Atlantic's intent in seeking the requested

20  information, and its purported relevance to the issues in this case.

21  **INTERROGATORY NO. 25:**

22       IDENTIFY the date upon which YOU decided to move production out of

23  Israel, and IDENTIFY all DOCUMENTS that evidence the timing of and factual

24  basis for the decision.

25  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 25:**

26       Plaintiffs object to this interrogatory to the extent it seeks information

27  potentially protected by the attorney-client privilege or work product doctrine.

28  Plaintiffs also object to this interrogatory to the extent it contains multiple subparts

Mitchell Silberberg & Knupp LLP

12

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

**EXHIBIT 12  PG.  131**

1  within the meaning of FRCP 33(a)(1), is burdensome, oppressive, vague, and

2  ambiguous, particularly to the extent that Atlantic demands that Plaintiffs identify

3  "all DOCUMENTS that evidence the timing of and factual basis for the decision."

4  Plaintiffs also object to the interrogatory on the grounds that it seeks information

5  duplicative of information Plaintiffs previously provided in response to

6  Interrogatory Nos. 3 and 15.  Moreover, Plaintiffs object to the extent this

7  interrogatory seeks information not relevant to any party's claim or defense or

8  proportional to the needs of the case, particularly because Atlantic already has

9  admitted that the situation in Israel in the summer of 2014 constituted "imminent

10  peril" within the meaning of the Policy, Section III – Extra Expense, § I.  *See, e.g.*,

11  Atlantic's (Pamela Johnson) July 28, 2014 denial of coverage letter, p. 5

12  [ATL00094-101] ("Rockets launched toward areas where filming is taking place

13  would no doubt reasonably constitute a 'certain, immediate and impending danger

14  of such probability and severity to person or property that it would be unreasonable

15  or unconscionable to ignore.'  …  The question now is not whether the loss falls

16  within the insuring clause but whether the war exclusion or the terrorism coverage

17  applies.").  In addition, Atlantic's July 28, 2014 denial of coverage letter expressly

18  acknowledged that on July 17, 2014, it was informed that Plaintiffs had decided to

19  move the production.  ("On Thursday afternoon [July 17, 2014], we had another

20  telephone conversation which included Danny Gutterman and Susan Weiss. In this

21  conversation, you informed us that NBCU had decided to move the production due

22  to the ongoing hostilities which were creating dangerous conditions in Tel Aviv

23  and Jerusalem.")

24       Plaintiffs already have produced numerous documents relating to the

25  conditions in Israel in the summer of 2014 which precipitated Plaintiffs' decision

26  to move the production.  Plaintiffs refer Atlantic to such documents from which

27  Atlantic may determine additional responsive information to this interrogatory, and

28

Mitchell
Silberberg &
Knupp LLP

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

**EXHIBIT 12  PG.  132**

1    the burden of ascertaining this information from those documents is substantially

2    the same for Atlantic as it would be for Plaintiffs.

3         Subject to and without waiving the foregoing objections and preliminary

4    statement, Plaintiffs provide their supplemental response as follows:

5         Plaintiffs incorporate herein and refer Atlantic to Plaintiffs' response dated

6    December 30, 2016 to Interrogatory Nos. 3 and 15 which, among other things,

7    provided detailed information responsive to this interrogatory.

8         Plaintiffs finalized their decision to move the *Dig* production out of Israel on

9    July 16, 2014, and promptly communicated that decision to Atlantic on July 17,

10   2014.  *See, e.g.*, UCP000854 (July 17, 2014 email from Susan Weiss to Daniel

11   Gutterman, Pamela Johnson, cc:  Andrea Garber and Peter Williams).

12        Furthermore, in addition to Atlantic's admission that the situation in Israel in

13   the summer of 2014 constituted "imminent peril" within the meaning of the Policy,

14   Section III – Extra Expense, § I and the facts and documents identified in

15   Plaintiffs' response to Interrogatory Nos. 3 and 15, Plaintiffs refer Atlantic to,

16   without limitation, the multiple security advisory documents regarding the

17   situation in Israel in the summer of 2014 that Plaintiffs already have produced

18   including:  UCP000482-UCP000483, UCP000507, UCP000613-UCP000614,

19   UCP000668-UCP000669, UCP000727-UCP000728, UCP000888-UCP000890,

20   UCP000940, UCP001025, UCP0001286, UCP0001413-UCP0001414,

21   UCP0001595-UCP0001597, UCP0001975-UCP0001976, UCP0002094-

22   UCP0002098, UCP0002282-UCP0002285, UCP0002302-UCP0002305,

23   UCP0002332-UCP0002336, UCP0002459-UCP0002462, UCP0002524-

24   UCP0002529, UCP0002809-UCP0002812, UCP0003321.

25        Plaintiffs also note that discovery is ongoing and additional facts may

26   subsequently be discovered which may be responsive to this interrogatory.

27   ///

28   ///

Mitchell
Silberberg &
Knupp LLP

14

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

**EXHIBIT 12  PG.  133**

1   DATED:  April 12, 2017          LUCIA E. COYOCA
2                                   VALENTINE A. SHALAMITSKI
                                    DANIEL M. HAYES
3                                   MITCHELL SILBERBERG & KNUPP LLP

4
5                                   By:   /s/ Lucia E. Coyoca
                                          Lucia E. Coyoca
6                                         Attorneys for Plaintiffs
                                          Universal Cable Productions LLC and
7                                         Northern Entertainment
                                          Productions LLC
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

15

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

**EXHIBIT 12  PG.  134**

1    **PROOF OF SERVICE**

2    STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3            I am employed in the County of Los Angeles, State of California, I am over
     the age of eighteen years and am not a party to this action; my business address is
4    Mitchell Silberberg & Knupp LLP, 11377 West Olympic Boulevard, Los Angeles,
     CA  90064-1683.
5
             On April 12, 2017, I served a copy of the foregoing document(s) described
6    as **PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S
     SECOND SET OF INTERROGATORIES** on the interested parties in this action
7    at their last known address as set forth below by taking the action described below:

8    Marc J. Shrake, Esq.                          Michael Keeley, Esq.
     ANDERSON, MCPHARLIN &                          Toni Scott Reed
9    CONNERS LLP                                    Carla C. Crapster, Esq.
     707 Wilshire Boulevard, Suite 4000             STRASBURGER & PRICE, LLP
10   Los Angeles, CA  90017-3623                    901 Main Street, Suite 6000
     Tel:  (213) 236-1691                           Dallas, TX  75202
11   Fax:  (213) 622-7594                           Tel:  (214) 651-4300
     Email:  mjs@amclaw.com                         Fax:  (214) 651-4330
12                                                  Email: michael.keeley@strasburger.com;
     *Attorneys for Defendant Atlantic*             toni.Reed@strasburger.com;
13   *Specialty Insurance Company*                  carla.crapster@strasburger.com

14                                                  *Attorneys for Defendant Atlantic Specialty*
                                                    *Insurance Company*
15
16   ☑   **BY MAIL**:  I placed the above-mentioned document(s) in sealed
            envelope(s) addressed as set forth above, and deposited each envelope in the
17          mail at Los Angeles, California.  Each envelope was mailed with postage
            thereon fully prepaid.

18   ☑   **BY ELECTRONIC MAIL**:  I served the above-mentioned document
            electronically on the parties listed at the email addresses above and, to the
19          best of my knowledge, the transmission was complete and without error in
            that I did not receive an electronic notification to the contrary.
20
21           I declare under penalty of perjury under the laws of the United States that
     the above is true and correct.
22
             Executed on April 12, 2017, at Los Angeles, California.
23
24           _____
25                        Valentine A. Shalamitski
26
27
28

Mitchell
Silberberg &
Knupp LLP

16

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

**EXHIBIT 12  PG.  135**

# EXHIBIT 13

| | |
|---|---|
| **From:** | Crapster, Carla |
| **To:** | Hayes, Daniel |
| **Cc:** | Keeley, Michael; Reed, Toni; Coyoca, Lucia; Shalamitski, Valentine |
| **Subject:** | UCP v. Atlantic - Follow-Up to This Afternoon"s Call |
| **Date:** | Thursday, March 23, 2017 3:51:17 PM |

Dan,

As a follow-up to our phone call this afternoon, this confirms in writing your statement that a privilege log is still not ready. You will now no longer give us an estimated date of completion of the privilege log. As we stated on the call, the extreme tardiness of this log has prejudiced our client, and that prejudice increases with each passing day.

As we discussed, given the continuing delays on the privilege log and in producing documents, we have no choice but to seek a continuance from the court. We appreciate your statement that you will discuss this with your client. As we stated, we ask that you confer with your client very quickly.

We believe that a continuance of all deadlines of approximately 60 days is necessary. We intend to move for a continuance even if the motion is opposed.

We have now provided you with all the deposition dates you asked for (including for Dennis Crosby, who, as you know, we think should not be deposed at all). Those dates are:

> Sean Duffy: Week of April 3, or April 13 or 14
> Wanda Phillips: April 4 or 5, or week of April 17
> Corporate Rep: Week of April 10 (We stated on the phone that April 7 would potentially work but have now confirmed that it will not).
> Dennis Crosby: Week of April 17 (subject to our objection)

We have received one deposition date in return: Stephen Smith on April 25, which, as we explained, is not acceptable to us because it is after the summary judgment deadline. Please provide us deposition dates on the other individuals we have named by the close of business on Monday. (As we discussed, we need dates well ahead of the deadline to file motions for summary judgment.)  Otherwise, we will have no choice but to simply notice the depositions.

Thank you,
Carla

**Carla Crapster** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.2034 • Fax 214.659.4060 • Strasburger.com

---

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying*

**EXHIBIT 13  PG.  137**

*to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

**EXHIBIT 13  PG.  138**

# EXHIBIT 14

| From: | Hayes, Daniel |
|---|---|
| To: | "Toni.Reed@strasburger.com"; "Michael.Keeley@strasburger.com"; "Carla.Crapster@strasburger.com" |
| Cc: | Coyoca, Lucia; Shalamitski, Valentine |
| Subject: | UCP, et al. v. Atlantic - depositions |
| Date: | Friday, March 24, 2017 4:45:20 PM |
| Attachments: | image001.gif |

Toni,

We have confirmed with our client that Tom McCarthy is available for deposition in our New York office on Friday, April 7, 2017.  We are willing to proceed on that date provided that the deposition of Wanda Phillips is confirmed for Wednesday, April 5, 2017, also in New York City.

Andrea Garber is available for deposition on April 13 or 14, in our Los Angeles office.

Randi Richmond is available for deposition on April 27, in our Los Angeles office.

Kurt Ford is available for deposition on May 5, 2017, in our Los Angeles office.

Jeff Wachtel is available for deposition on May 12, in our Los Angeles office.

Your proposed dates for Sean Duffy, Dennis Crosby and Atlantic's corporate representative would require us to travel to Minnesota three separate times in three separate consecutive weeks.  We do not think that is reasonable, and request that you provide dates that are more closely clustered so that we can avoid unnecessary travel.  For example, we would be willing to proceed with the deposition of Sean Duffy on April 3, 2017, if you can make Atlantic's corporate designee available on April 5 and 6.  Alternatively, Duffy on April 18 if Atlantic's corporate designee is available on April 20 and 21.  Please let us know.

We would like to take the deposition of Dennis Crosby on April 20, 2017.

Please confirm the dates for Wanda Phillips, Tom McCarthy, Andrea Garber, Randi Richmond, Kurt Ford, Dennis Crosby, Jeff Wachtel, Sean Duffy, and Atlantic's corporate designee.

As to the deposition of Stephen Smith, as I said in our call, Mr. Smith can be available on April 25 in Los Angeles.  We can also offer Mr. Smith in Los Angeles on April 18.  Therefore, your complaint that we are not making Mr. Smith available prior to the summary judgment filing deadline is moot.  And recall that it was your decision to delay even the scheduling of depositions of Plaintiffs' witnesses for several months.  If April 18 or 25 do not work for some reason, we will make inquiries to see if Mr. Smith could make himself available in London on a date prior to the summary judgment motion cut-off date if you agree to a video deposition or travel to London.

We are working on obtaining dates for the deposition of Mark Binke.  We will also attempt to procure a date for Susan Weiss, but as you know, she is employed by Aon, not NBCUniversal, and we do not control the scheduling of her deposition.  As to Malika Adams, as we previously have advised, Ms. Adams is no longer employed by Comcast.  Also, it is our understanding that she no longer resides in the United States.  We will reach out to her to see if she is willing to travel to the

**EXHIBIT 14  PG.  140**

United States to be deposed, but we do not control Ms. Adams' schedule.

Please promptly provide dates on which Pamela Johnson may be deposed.  As you know, we had hoped to defer taking Ms. Johnson's deposition until after resolution of the attorney-client privilege issue as to Leon Gladstone's coverage opinion, but given Atlantic's stonewalling on the issue, it does not appear that we can wait any longer to schedule her deposition.

Dan



**Daniel M. Hayes | Partner, through his professional corporation**
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP | www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

EXHIBIT 14  PG.  141

# EXHIBIT 15



March 27, 2017

TONI SCOTT REED
(214) 651-4345
Direct Fax (214) 659-4091
Toni.Reed@strasburger.com

**<u>Via Email</u>**

Mr. Daniel M. Hayes
Mitchell Silberberg Knupp LLP
11377 W. Olympic Boulevard
Los Angeles, CA 90064

Re:     *Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*; Case No. 2:16-cv-04435-PA-MRW, pending in the United States District Court for the Central District of California, Western Division

Dear Daniel:

We are following up regarding the ongoing efforts to schedule fact witness depositions. We will certainly work with you to plan Minneapolis dates that are more closely spaced in time, so that you can make fewer trips to Minnesota for depositions. We'll follow up with the witnesses, including Ms. Johnson, and get back with you on a suggested further proposed schedule that attempts to group the dates together for travel purposes.

Concurrently, we'd like your cooperation in ensuring that Atlantic can complete a number of fact witness depositions prior to the date the summary judgment motions are due. I mentioned Mr. Smith to you as an example of a person in that category last week, when his was the only suggested date you provided. We definitely need Mr. Smith to be presented before the summary judgment motions are due. We note your April 18 date you have mentioned for Mr. Smith, and request that you please hold that date for his deposition. We also need the following to be presented at least seven (7) days before the summary judgment deadline:

a. Susan Weiss;

b. Andrea Garber (please hold the suggested April 13 and 14 dates for her as we finalize who can be available in Los Angeles together as well);

**Strasburger & Price, LLP**

901 Main Street, Suite 6000 | Dallas, Texas 75202.3794 | 214.651.4300 tel | 214.651.4330 fax | www.strasburger.com
Austin | Collin County | Dallas | Houston | San Antonio | New York, N.Y. | Washington, D.C. | Mexico City - Strasburger & Price, SC

**EXHIBIT 15  PG.  143**



Mr. Daniel M. Hayes
March 27, 2017
Page 2

    c.  Malika Adams;

    d.  Mark Binke;

    e.  Randi Richmond; and

    f.  30(b)(6) representative on Topics 1 (excluding LOSS), 4, 5, 7, 11, 12, 13, 14, 15, 20, 25, 30, 37, 38, 39, 40, 41, 42, 43, and 45.

To the extent you have lodged objections to providing the factual basis for your various contentions in this case, including with regard to the exclusions, Atlantic's position is that the designations of those topics is appropriate, and that the Plaintiffs must present a witness on their positions and contentions.

You have asked that we schedule non-employees and former employees through your firm, so we are continuing our efforts to do so.  If you are not able to or no longer take the position that you will present Ms. Weiss and Ms. Adams, we need to know that immediately, and we need to obtain their contact information from you.

As you know, we have been waiting for the completion of the production of documents and the provision of the privilege log so that we can proceed with depositions in an orderly fashion.  At this point, we are still waiting, but see no option but to also work on scheduling for depositions at the same time.  If we believe it necessary, we will issue notices for the depositions, subject of course to our pending discovery rights.  The issue of being afforded the opportunity to take the necessary fact witness depositions prior to summary judgment practice will also be mentioned as a part of the anticipated motion for continuance.

We'll look forward to your cooperation on the scheduling for these witnesses.

We renew the request to complete the scheduling for the remaining witnesses on the Atlantic list provided to you as well, although we do not require that those depositions be completed before the date summary judgment motions are due.

**EXHIBIT 15  PG.  144**



Mr. Daniel M. Hayes
March 27, 2017
Page 3

We will respond to you further regarding the later deposition dates you have proposed, but will also ask that you work with us to cluster dates for the witnesses who will appear in Los Angeles.

Very truly yours,

Toni Scott Reed

cc:    Mr. Michael Keeley
       Ms. Carla Crapster

8808348.1/SP/15247/0131/032717

**EXHIBIT 15  PG.  145**

# EXHIBIT 16



March 29, 2017

CARLA C. CRAPSTER
(214) 651-2034
Direct Fax (214) 659-4060
Carla.Crapster@strasburger.com

VIA E-MAIL AND U.S. MAIL

Lucia E. Coyoca, Esq.
Valentine A. Shalamitski, Esq.
Daniel M. Hayes, Esq.
Mitchell Silberberg & Knupp
11377 West Olympic Boulevard
Los Angeles, California 90064-1683

Re:   *Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*; No. 2:16-cv-04435-PA-MRW, pending in the United States District Court for the Central District of California, Western Division

Counselors:

Please find attached the following deposition notices:

(1)    Notice of Deposition of Malika Adams;
(2)    First Amended 30(b)(6) Notice of Deposition of Universal Cable Productions, LLC;
(3)    First Amended 30(b)(6) Notice of Deposition of Northern Entertainment Productions, LLC;
(4)    First Amended Notice of Deposition of Susan Weiss;
(5)    First Amended Notice of Deposition of Andrea Garber;
(6)    First Amended Notice of Deposition of Mark Binke;
(7)    First Amended Notice of Deposition of Randi Richmond;
(8)    First Amended Notice of Deposition of Stephen Smith; and
(9)    First Amended Notice of Deposition of Kurt Ford.

It remains our preference to schedule these depositions during mutually convenient dates if we can agree to do so well ahead of the Motion for Summary Judgment deadline, or if the court grants our Motion for Continuance. But, given that we have not been able to agree upon dates yet, and given the looming deadlines, we felt we had no choice but to formally notice the depositions. We look forward to hopefully

**Strasburger & Price, LLP**

901 Main Street, Suite 6000  |  Dallas, Texas 75202.3794  |  214.651.4300 tel  |  214.651.4330 fax  |  www.strasburger.com

Austin  |  Collin County  |  Dallas  |  Houston  |  New York  |  San Antonio  |  Washington, D.C.  |  Mexico City - Strasburger & Price, SC

**EXHIBIT 16  PG.  147**



# Strasburger
### ATTORNEYS AT LAW

Counselors
March 29, 2017
Page 2

resolving this and all remaining discovery disputes in what hopefully will be a final meet-and-confer call tomorrow.

Sincerely,

Carla C. Crapster
CCC:mg
Enclosures

cc:    Mr. Michael Keeley
       Ms. Toni Scott Reed

8817587.1/SP/15247/0131/032917

**EXHIBIT 16  PG.  148**

# EXHIBIT 17

1    MARC J. SHRAKE (SBN 219331)
        mjs@amclaw.com
2    ANDERSON, MCPHARLIN & CONNERS LLP
     707 Wilshire Boulevard, Suite 4000
3    Los Angeles, California 90017-3623
     Telephone: (213) 236-1691
4    Facsimile: (213) 622-7594

5    MICHAEL KEELEY *(Pro Hac Vice)*
        michael.keeley@strasburger.com
6    JOHN R. RIDDLE *(Pro Hac Vice)*
        john.riddle@strasburger.com
7    TONI SCOTT REED *(Pro Hac Vice)*
        toni.reed@strasburger.com
8    CARLA C. CRAPSTER *(Pro Hac Vice)*
        carla.crapster@strasburger.com
9    STRASBURGER & PRICE, LLP
     901 Main Street, Suite 6000
10   Dallas, Texas 75202
     Telephone: (214) 651-4300
11   Facsimile: (214) 651-4330

12   Attorneys for Defendant
     Atlantic Specialty Insurance Company

13

14              UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16                    WESTERN DIVISION

17

18   UNIVERSAL CABLE                    Case No. 2:16-cv-04435-PA-MRW
     PRODUCTIONS LLC, a Delaware
19   limited liability company, and     **FIRST AMENDED NOTICE OF**
     NORTHERN ENTERTAINMENT            **TAKING DEPOSITION OF**
20   PRODUCTIONS LLC, a Delaware       **RANDI RICHMOND**
     limited liability company,
21
                 Plaintiffs,
22
        vs.
23
     ATLANTIC SPECIALTY                 Date:      April 17, 2017
24   INSURANCE COMPANY, a New          Time:      9:00 a.m.
     York insurance company,           Location:  11377 W. Olympic Blvd.
25                                                 Los Angeles, CA 90064
                 Defendant.
26

27

28

                                    1
     FIRST AMENDED NOTICE OF TAKING DEPOSITION OF RANDI RICHMOND

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**EXHIBIT 17  PG.  150**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

1  TO:   Plaintiffs Universal Cable Productions, LLC, and Northern Entertainment

2        Production LLC by and through their counsel of record, Lucia E. Coyoca and

3        Valentine A. Shalamitski, Esq., Mitchell Silberberg & Knupp LLP, 11377

4        West Olympic Boulevard, Los Angeles, CA  90064-1683.

5            PLEASE TAKE NOTICE that Defendant will take the deposition of Randi

6  Richmond on the 17th day of April, 2017, beginning at 9:00 a.m., and continuing

7  thereafter until completed, at the offices of Mitchell Silberberg & Knupp LLP,

8  11377 West Olympic Boulevard, Los Angeles, CA  90064-1683. The deposition

9  will be taken on oral examination pursuant to the Federal Rules of Civil Procedure

10 before a certified court reporter authorized to take deposition and will be recorded

11 stenographically and will be videotaped. Said deposition when so taken and returned

12 according to law may be used upon trial or other hearing of this cause.

13           If an interpreter is required, the undersigned must be notified in writing at

14 least five (5) days prior to the deposition date of the language spoken by the

15 deponent.

16 DATED: March 29, 2017        MARC J. SHRAKE

17                              ANDERSON, McPHARLIN & CONNERS LLP

18                                  -and-

19

20                              MICHAEL KEELEY *(Pro Hac Vice)*
                                JOHN R. RIDDLE *(Pro Hac Vice)*
21                              TONI SCOTT REED *(Pro Hac Vice)*
                                CARLA C. CRAPSTER *(Pro Hac Vice)*
22                              STRASBURGER & PRICE, LLP

23

24                              By:   */s/ Michael Keeley*
                                      Michael Keeley
25

26                              Attorneys for Defendant ATLANTIC
                                SPECIALTY INSURANCE COMPANY
27

28

                                        2

FIRST AMENDED NOTICE OF TAKING DEPOSITION OF RANDI RICHMOND

**EXHIBIT 17  PG.  151**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

## PROOF OF SERVICE

I am employed in the County of Dallas, State of Texas.  I am over the age of eighteen years and not a party to the within action; my business address is 901 Main Street, Suite 6000, Dallas, Texas 75202.

On March 29, 2017, I served the following document(s) described as **FIRST AMENDED NOTICE OF TAKING DEPOSITION OF RANDI RICHMOND** on the interested parties in this action at their last known address as set forth below by taking the action described below:

Lucia E. Coyoca, Esq.                     Attorneys for Plaintiffs
Valentine A. Shalamitski, Esq.
Daniel M. Hayes, Esq.
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, CA  90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Email:
lec@msk.com
vas@msk.com
dmh@msk.com

**BY MAIL:**  I am "readily familiar" with Strasburger & Price, LLP's practice for collecting and processing correspondence for mailing with the United States Postal Service.  Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business.  Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Dallas, Texas, on that same day following ordinary business practices.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on March 29, 2017, at Dallas, Texas.

Marianna Green

3
**FIRST AMENDED NOTICE OF TAKING DEPOSITION OF RANDI RICHMOND**

**EXHIBIT 17  PG.  152**

MARC J. SHRAKE (SBN 219331)
   mjs@amclaw.com
ANDERSON, MCPHARLIN & CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623
Telephone: (213) 236-1691
Facsimile: (213) 622-7594

MICHAEL KEELEY *(Pro Hac Vice)*
   michael.keeley@strasburger.com
JOHN R. RIDDLE *(Pro Hac Vice)*
   john.riddle@strasburger.com
TONI SCOTT REED *(Pro Hac Vice)*
   toni.reed@strasburger.com
CARLA C. CRAPSTER *(Pro Hac Vice)*
   carla.crapster@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

Attorneys for Defendant
Atlantic Specialty Insurance Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited company, <br><br> Plaintiffs, <br><br> vs. <br><br> ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company, <br><br> Defendant. | Case No. 2:16-cv-04435-PA-MRW <br><br> **FIRST AMENDED NOTICE OF TAKING DEPOSITION OF MARK BINKE** <br><br><br><br> Date:          April 14, 2017 <br> Time:         9:00 a.m. <br> Location:    11377 W. Olympic Blvd. <br>                    Los Angeles, CA 90064 |

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

1

**EXHIBIT 17  PG.  153**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

1   TO:   Plaintiffs Universal Cable Productions, LLC, and Northern Entertainment

2         Production LLC by and through their counsel of record, Lucia E. Coyoca,

3         Valentine A. Shalamitski, and Daniel M. Hayes, Mitchell Silberberg &

4         Knupp LLP, 11377 West Olympic Boulevard, Los Angeles, CA 90064-1683.

5                PLEASE TAKE NOTICE that Defendant will take the deposition of Mark

6   Binke on the 14th day of April, 2017, beginning at 9:00 a.m., and continuing

7   thereafter until completed, at the offices of Mitchell Silberberg & Knupp LLP,

8   11377 West Olympic Boulevard, Los Angeles, CA  90064-1683. The deposition

9   will be taken on oral examination pursuant to the Federal Rules of Civil Procedure

10  before a certified court reporter authorized to take deposition and will be recorded

11  stenographically and will be videotaped. Said deposition when so taken and returned

12  according to law may be used upon trial or other hearing of this cause.

13               If an interpreter is required, the undersigned must be notified in writing at

14  least five (5) days prior to the deposition date of the language spoken by the

15  deponent.

16  DATED: March 29, 2017          MARC J. SHRAKE

17                                 ANDERSON, McPHARLIN & CONNERS LLP

18                                        -and-

19
                                   MICHAEL KEELEY *(Pro Hac Vice)*
20                                 JOHN R. RIDDLE *(Pro Hac Vice)*
21                                 TONI SCOTT REED *(Pro Hac Vice)*
                                   CARLA C. CRAPSTER *(Pro Hac Vice)*
22                                 STRASBURGER & PRICE, LLP
23
                                   By:    */s/ Michael Keeley*
24                                        Michael Keeley
25
                                   Attorneys for Defendant ATLANTIC
26                                 SPECIALTY INSURANCE COMPANY
27

28

                                           2
        FIRST AMENDED NOTICE OF TAKING DEPOSITION OF MARK BINKE

**EXHIBIT 17  PG.  154**

**PROOF OF SERVICE**

    I am employed in the County of Dallas, State of Texas.  I am over the age of eighteen years and not a party to the within action; my business address is 901 Main Street, Suite 6000, Dallas, Texas 75202.

    On March 29, 2017, I served the following document(s) described as **FIRST AMENDED NOTICE OF TAKING DEPOSITION OF MARK BINKE** on the interested parties in this action at their last known address as set forth below by taking the action described below:

| | |
|---|---|
| Lucia E. Coyoca, Esq. | Attorneys for Plaintiffs |
| Valentine A. Shalamitski, Esq. | |
| Daniel M. Hayes, Esq. | |
| Mitchell Silberberg & Knupp LLP | |
| 11377 West Olympic Boulevard | |
| Los Angeles, CA  90064-1683 | |
| Telephone: (310) 312-2000 | |
| Facsimile: (310) 312-3100 | |

Email:
lec@msk.com
vas@msk.com
dmh@msk.com

**BY MAIL:**  I am "readily familiar" with Strasburger & Price, LLP's practice for collecting and processing correspondence for mailing with the United States Postal Service.  Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business.  Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Dallas, Texas, on that same day following ordinary business practices.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on March 29, 2017, at Dallas, Texas.

_Marianna Green_
Marianna Green

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

3

FIRST AMENDED NOTICE OF TAKING DEPOSITION OF MARK BINKE

**EXHIBIT 17  PG.  155**

ANDERSON, MCPHARLIN & CONNERS LLP
Lawyers
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623

1  MARC J. SHRAKE (SBN 219331)
      mjs@amclaw.com
2  ANDERSON, MCPHARLIN & CONNERS LLP
   707 Wilshire Boulevard, Suite 4000
3  Los Angeles, California 90017-3623
   Telephone: (213) 236-1691
4  Facsimile: (213) 622-7594

5  MICHAEL KEELEY (Pro Hac Vice)
      michael.keeley@strasburger.com
6  JOHN R. RIDDLE (Pro Hac Vice)
      john.riddle@strasburger.com
7  TONI SCOTT REED (Pro Hac Vice)
      toni.reed@strasburger.com
8  CARLA C. CRAPSTER (Pro Hac Vice)
      carla.crapster@strasburger.com
9  STRASBURGER & PRICE, LLP
   901 Main Street, Suite 6000
10 Dallas, Texas 75202
   Telephone: (214) 651-4300
11 Facsimile: (214) 651-4330

12 Attorneys for Defendant
   Atlantic Specialty Insurance Company

13

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16                   WESTERN DIVISION

17

18 UNIVERSAL CABLE                 Case No. 2:16-cv-04435-PA-MRW
   PRODUCTIONS LLC, a Delaware
19 limited liability company, and    **FIRST AMENDED NOTICE OF**
   NORTHERN ENTERTAINMENT           **TAKING DEPOSITION OF**
20 PRODUCTIONS LLC, a Delaware      **NORTHERN ENTERTAINMENT**
   limited liability company,       **PRODUCTIONS LLC**

21              Plaintiffs,

22        vs.

23 ATLANTIC SPECIALTY               Date:      April 11, 2017
   INSURANCE COMPANY, a New         Time:      9:00 a.m.
24 York insurance company,          Location:  11377 W. Olympic Blvd.
                                                Los Angeles, CA 90064
25              Defendant.

26

27 / / /

28
                              1
           FIRST AMENDED NOTICE OF TAKING DEPOSITION OF
              NORTHERN ENTERTAINMENT PRODUCTIONS LLC

**EXHIBIT 17  PG.  156**

TO:   Plaintiff Northern Entertainment Production LLC by and through their counsel of record, Lucia E. Coyoca, Valentine A. Shalamitski, and Daniel M. Hayes, Mitchell Silberberg & Knupp LLP, 11377 West Olympic Boulevard, Los Angeles, CA 90064-1683.

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendant, Atlantic Specialty Insurance Company ("Atlantic"), will take the testimony by deposition upon oral examination of Plaintiff, Northern Entertainment Productions LLC, before a certified court reporter on April 11, 2017, beginning at 9:00 a.m., at the law offices of Mitchell Silberberg & Knupp LLP, 11377 West Olympic Boulevard, Los Angeles, CA 90064-1683. The deposition may be videotaped.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Northern Entertainment shall designate one or more officers, directors, employees, or other persons to testify on its behalf with regard to the topics listed on Exhibit A.

If an interpreter is required, the undersigned must be notified in writing at least five (5) days prior to the deposition date of the language spoken by the deponent.

ANDERSON, McPHARLIN & CONNERS LLP
*Lawyers*
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

FIRST AMENDED NOTICE OF TAKING DEPOSITION OF
NORTHERN ENTERTAINMENT PRODUCTIONS LLC

**EXHIBIT 17  PG.  157**



DATED:  March 29, 2017

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MARC J. SHRAKE
ANDERSON, McPHARLIN & CONNERS LLP

-and-

MICHAEL KEELEY *(Pro Hac Vice)*
JOHN R. RIDDLE *(Pro Hac Vice)*
TONI SCOTT REED *(Pro Hac Vice)*
CARLA C. CRAPSTER *(Pro Hac Vice)*
STRASBURGER & PRICE, LLP

By:      */s/ Michael Keeley*
          Michael Keeley

Attorneys for Defendant ATLANTIC
SPECIALTY INSURANCE COMPANY

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

3

**FIRST AMENDED NOTICE OF TAKING DEPOSITION OF
NORTHERN ENTERTAINMENT PRODUCTIONS LLC**

**EXHIBIT 17  PG.  158**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

1

## PROOF OF SERVICE

2       I am employed in the County of Dallas, State of Texas.  I am over the age of

3   eighteen years and not a party to the within action; my business address is 901 Main Street, Suite 6000, Dallas, Texas 75202.

4
5       On March 29, 2017, I served the following document(s) described as **FIRST AMENDED NOTICE OF TAKING DEPOSITION OF NORTHERN**

6   **ENTERTAINMENT PRODUCTIONS LLC** on the interested parties in this action at their last known address as set forth below by taking the action described

7   below:

8       Lucia E. Coyoca, Esq.                Attorneys for Plaintiffs

9       Valentine A. Shalamitski, Esq.

    Daniel M. Hayes, Esq.
10
    Mitchell Silberberg & Knupp LLP
11       11377 West Olympic Boulevard

12       Los Angeles, CA  90064-1683

    Telephone: (310) 312-2000
13       Facsimile: (310) 312-3100

14
    Email:
15       lec@msk.com

16       vas@msk.com

    dmh@msk.com
17

18   **BY MAIL:**  I am "readily familiar" with Strasburger & Price, LLP's practice for collecting and processing correspondence for mailing with the United States Postal

19   Service.  Under that practice, it would be deposited with the United States Postal

20   Service that same day in the ordinary course of business.  Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Dallas,

21   Texas, on that same day following ordinary business practices.

22       I declare under penalty of perjury under the laws of the United States of

23   America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

24   Executed on March 29, 2017, at Dallas, Texas.

25

26

27                                 Marianna Green

28                                   4

FIRST AMENDED NOTICE OF TAKING DEPOSITION OF
NORTHERN ENTERTAINMENT PRODUCTIONS LLC

**EXHIBIT 17  PG.  159**

## EXHIBIT A TO DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY OF MARYLAND'S NOTICE OF ORAL DEPOSITION OF PLAINTIFF NORTHERN ENTERTAINMENT

## DEFINITIONS

The words "YOU," "YOUR," "YOURSELF" and "YOURS" mean the Plaintiff, Northern Entertainment Productions LLC and its parents or subsidiaries, predecessors, assigns, agents, officers, directors, employees, attorneys, or other representatives acting on its behalf.

"CLAIM" means the claim for insurance coverage that YOU made with ATLANTIC, as described in the Plaintiffs' First Amended Complaint or any subsequent or superseding pleadings in this matter.

COMPLAINT means the Plaintiffs' First Amended Complaint filed in the LAWSUIT.

"COMMUNICATE" or "COMMUNICATIONS" refers to any and every manner or means of disclosure or transfer, or exchange of information, whether orally or by document or whether face-to-face, by telephone, e-mail, mail, text messages, facsimile, telecopy, computer, personal delivery, or otherwise.

"RELATE" or "RELATING" means constituting, referring to, relating to, discussing, analyzing, comprising, embodying, recording, evidencing, effecting or containing any information which pertains to a specific subject.

"*DIG*" means the television show that NBC was producing in Israel in 2014, and later in Croatia and New Mexico.

"DOCUMENTS" refers to any original written, typewritten, handwritten, printed, recorded, or computer-generated material, as well as all tapes, disks, non-duplicate copies and transcripts thereof, now or at any time in your possession, custody or control; without limiting the generality of the following definition, but for the purposes of illustration only, "documents" includes notes, correspondence, memoranda, business records, diaries, counters, address and telephone records, photographs, tape recordings, computer disks, financial statements, checks, records, trade publications, checks, and drafts. Without limitation of the term "control" as used in the preceding sentence, a document is deemed to be in your control if you have the right to secure the document or a copy thereof, from another person or public or private entity having actual possession thereof.  If any document was, but

FIRST AMENDED NOTICE OF TAKING DEPOSITION OF
NORTHERN ENTERTAINMENT PRODUCTIONS LLC

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**EXHIBIT 17  PG.  160**

no longer is, in your possession or subject to your control, state what disposition was made of it and why.

"IDENTIFY" or "IDENTIFICATION," when used with regard to a natural person or persons, means to state:  (a) the full name of each person; (b) each person's present or last known business and home addresses and phone numbers; (c) the name of the person's present or last known employer; and (d) if such person was affiliated at any time with any party to this litigation or with any affiliate of any party to this litigation by employment or otherwise, state the nature (including job title, if any) and dates of such affiliation. If any of the above information is not available, state any other means of identifying each such individual person.

"IDENTIFY" or "IDENTIFICATION," when used in reference to any entity other than a natural person, including, without limitation, any corporation, sole proprietorship, partnership, limited partnership, or joint venture, means to state the full name and location or present or last known address and phone number of the principal place of business of said entity to be identified.  If any of the above information is not available, state any other means of identifying each such entity.

"IDENTIFY" or "IDENTIFICATION," when used in reference to a document, means to:  (a) specify the nature of the document (e.g. letter, memorandum, telegram, invoice or some other means of identifying same); (b) identify the date, if any, appearing on the document, or if it is undated, the date on which the document was prepared; (c) describe, in general, the subject matter of the document; (d) identify the individual and/or entity to whom it pertains; (e) identify the persons who authorized, originated, wrote, signed, dictated or otherwise participated in the preparation of the document; (f) identify each person, if any, who received an original or copy of the document; and (g) identify the present or last known location and custodian of each such document.  If any such document was, but is no longer, in your possession or subject to your control, state:  (i) the disposition made of the document, including the identity of the person who received the document; (ii) the reasons for the disposition; and (iii) the date thereof If any of the above information is not available, state any other means of identifying all such documents.

"LAWSUIT" refers to this case pending before Judge Anderson in the Central District of California as Cause No. 2:16-cv-04435-PA-MRW.

"LOSS" means the loss YOU contend YOU incurred as a result of the delays in production of *DIG* and that YOU contend is covered by the POLICY.

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

6

**EXHIBIT 17  PG.  161**

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

1   "PERSON" refers to any individual, corporation, partnership, limited partnership, joint venture, firm, association, proprietorship, agency, board, authority,
2   commission, or other such entities.

3   "POLICY" means Motion Picture/Television Producers Portfolio Policy No.
4   MP00163-04, attached as Exhibit A to the Plaintiffs' Complaint.

5   The words "YOU," "YOUR," "YOURSELF" and "YOURS" mean the
6   Plaintiffs, their parents or subsidiaries, predecessors, assigns, agents, officers, directors, employees, attorneys, or other representatives acting on their behalf.
7

8   Pursuant to the provisions of the Federal Rules of Civil Procedure, you are required to supplement your responses to this discovery accordingly.
9

10   **TOPICS AS TO WHICH EXAMINATION IS REQUESTED**

11   1.    The CLAIM, including the facts supporting the CLAIM, the events
12   giving rise to the CLAIM, and the LOSS sought by the CLAIM.

13   2.    The process that Northern Entertainment went through to purchase the
14   POLICY, including the identity of the persons at NORTHERN ENTERTAINMENT involved in the purchase of the POLICY, the identity of the persons at Atlantic with
15   whom those persons spoke regarding the purchase of the POLICY, and how
16   Northern Entertainment received the POLICY.

17   3.    The circumstances surrounding the payment of premiums for the
18   POLICY.

19   4.    The basis of Northern Entertainment's contention that the CLAIM is
20   covered under the POLICY.

21   5.    Northern Entertainment's investigation of the facts and the transactions
22   giving rise to the CLAIM.

23   6.    The documents that support or otherwise relate to the CLAIM.

24   7.    The notice that YOU gave to ATLANTIC regarding the CLAIM.

25   8.    The basis for YOUR claim of breach of the implied covenant of good
26   faith and fair dealing.

27

28

7

FIRST AMENDED NOTICE OF TAKING DEPOSITION OF
NORTHERN ENTERTAINMENT PRODUCTIONS LLC

**EXHIBIT 17  PG.  162**

9.     The amount that Northern Entertainment is seeking to recover for the CLAIM, including the components and calculation thereof and the specific transactions involved in the CLAIM.

10.     The amount that Northern Entertainment is seeking to recover in the LAWSUIT, including the components and calculation thereof.

11.     The facts concerning the Israeli-Palestinian conflict of 2014 that led Northern Entertainment to conclude that the conflict was not a "war, including an undeclared or civil war."

12.     The facts concerning the Israeli-Palestinian conflict of 2014 that led Northern Entertainment to conclude that the conflict was not "warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents."

13.     The facts concerning the Israeli-Palestinian conflict of 2014 that led Northern Entertainment to conclude that the conflict was not "insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these."

14.     The facts concerning Northern Entertainment's position that the activity in Israel and Palestine in 2014 that led Northern Entertainment to move the production of *DIG* did not relate directly or indirectly from the use of any weapon of war

15.     The decision to move filming of *DIG* out of Israel.

16.     The decision to move filming of *DIG* to Croatia.

17.     The decision to move filming of *DIG* to New Mexico.

18.     The decision that Croatia lacked the indoor facilities needed to film *DIG* and that indoor filming must therefore take place in New Mexico.

19.     The bases of Northern Entertainment's position that moving filming to both Croatia and New Mexico resulted directly from the Israeli-Palestinian conflict of 2014.

20.     Correspondence and other COMMUNICATIONS between Atlantic and YOU concerning the CLAIM.

ANDERSON, McPHARLIN & CONNERS LLP
Lawyers
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623

8

**FIRST AMENDED NOTICE OF TAKING DEPOSITION OF
NORTHERN ENTERTAINMENT PRODUCTIONS LLC**

**EXHIBIT 17  PG.  163**

ANDERSON, McPHARLIN & CONNERS LLP
Lawyers
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

21.     The amount of attorney's fees incurred by YOU in the LAWSUIT.

22.     The contractual or other arrangement between YOU and Mitchell Silberberg and Knupp LLP, concerning that law firm's compensation for handling the LAWSUIT for YOU.

23.     The documents referenced or described in YOUR Initial Disclosures in the LAWSUIT.

24.     The general nature and sources of the documents produced by YOU in the LAWSUIT.

25.     The documents produced by YOU in the LAWSUIT.

26.     Who at Northern Entertainment was responsible for identifying the documents responsive to the requests for production served in this case.

27.     The basis for YOUR withholding of documents in the LAWSUIT on the basis of privilege, protection, or exemption from discovery.

28.     The terms of the POLICY, including, but not limited to, each of the exclusions on which ATLANTIC relies and all reasons YOU contend the exclusions do not apply.

29.     YOUR prior claims history with ATLANTIC.

30.     The basis of and all facts and circumstances underlying the allegations of the COMPLAINT.

31.     The decision to film *DIG* in Israel.

32.     All facts and circumstances considered in deciding to move filming of *DIG* to Croatia and New Mexico, and knowledge of all other places that were considered as alternative locations.

33.     Why filming of *DIG* could not take place entirely in Croatia.

34.     Why filming of *DIG* could not take place entirely in New Mexico.

35.     Why the production of *DIG* could not be moved to a single country or location, as opposed to two different countries.

36.     Plaintiffs' efforts, if any, to mitigate the damages they are seeking in the LAWSUIT.

9

**FIRST AMENDED NOTICE OF TAKING DEPOSITION OF NORTHERN ENTERTAINMENT PRODUCTIONS LLC**

EXHIBIT 17  PG.  164

37.   Plaintiffs' discovery responses served in this LAWSUIT.

38.   The relationship between Plaintiffs and NBCUniversal Media, LLC.

39.   The relationship between Plaintiffs and MSNBC.

40.   The relationship between NBCUniversal Media, LLC and MSNBC.

41.   The relationship between Plaintiffs and NBC News.

42.   Internal communications among Universal Cable Productions, LLC, Northern Entertainment Productions LLC, or NBCUniversal Media, LLC, regarding the CLAIM prior to filing the LAWSUIT.

43.   The method and process used by NBCUniversal Media, LLC to set reserves on any claims made with Atlantic.

44.   All factors considered by NBCUniversal Media, LLC in setting reserves on any claims made with Atlantic.

45.   When the decision was made to move filming of *DIG* out of Israel.

46.   The dates in which *DIG* was filmed in Croatia.

47.   The dates in which *DIG* was filmed in New Mexico.

48.   The dates on which decisions were made to move filming to New Mexico and Croatia.

49.   When the decision was made to move filming of *DIG* out of Israel, exactly who left and when did they leave?

10

**FIRST AMENDED NOTICE OF TAKING DEPOSITION OF
NORTHERN ENTERTAINMENT PRODUCTIONS LLC**

**EXHIBIT 17  PG.  165**

MARC J. SHRAKE (SBN 219331)
    mjs@amclaw.com
ANDERSON, MCPHARLIN & CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623
Telephone: (213) 236-1691
Facsimile: (213) 622-7594

MICHAEL KEELEY (*Pro Hac Vice*)
    michael.keeley@strasburger.com
JOHN R. RIDDLE (*Pro Hac Vice*)
    john.riddle@strasburger.com
TONI SCOTT REED (*Pro Hac Vice*)
    toni.reed@strasburger.com
CARLA C. CRAPSTER (*Pro Hac Vice*)
    carla.crapster@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

Attorneys for Defendant
Atlantic Specialty Insurance Company

ANDERSON, MCPHARLIN & CONNERS LLP
Lawyers
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,<br><br>Defendant. | Case No. 2:16-cv-04435-PA-MRW<br><br>**FIRST AMENDED NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC**<br><br>Date:        April 11, 2017<br>Time:        9:00 a.m.<br>Location:   11377 W. Olympic Blvd. Los Angeles, CA 90064 |

/ / /

1

FIRST AMENDED NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC

**EXHIBIT 17  PG.  166**

TO:   Plaintiff Universal Cable Productions LLC by and through their counsel of record, Lucia E. Coyoca, Valentine A. Shalamitski, and Daniel M. Hayes, Mitchell Silberberg & Knupp LLP, 11377 West Olympic Boulevard, Los Angeles, CA 90064-1683.

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendant, Atlantic Specialty Insurance Company ("Atlantic"), will take the testimony by deposition upon oral examination of Plaintiff, Universal Cable Productions LLC ("UCP"), before a certified court reporter on April 11, 2017, beginning at 9:00 a.m., at the law offices of Mitchell Silberberg & Knupp LLP, 11377 West Olympic Boulevard, Los Angeles, CA 90064-1683. The deposition may be videotaped.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), UCP shall designate one or more officers, directors, employees, or other persons to testify on its behalf with regard to the topics listed on Exhibit A.

If an interpreter is required, the undersigned must be notified in writing at least five (5) days prior to the deposition date of the language spoken by the deponent.

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

2

FIRST AMENDED NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC

**EXHIBIT 17  PG. 167**



DATED: March 29, 2017

MARC J. SHRAKE
ANDERSON, McPHARLIN & CONNERS LLP

-and-

MICHAEL KEELEY *(Pro Hac Vice)*
JOHN R. RIDDLE *(Pro Hac Vice)*
TONI SCOTT REED *(Pro Hac Vice)*
CARLA C. CRAPSTER *(Pro Hac Vice)*
STRASBURGER & PRICE, LLP

By:   */s/ Michael Keeley*
        Michael Keeley

Attorneys for Defendant ATLANTIC
SPECIALTY INSURANCE COMPANY

ANDERSON, McPHARLIN & CONNERS LLP
Lawyers
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623

3

**EXHIBIT 17  PG.  168**

**ANDERSON, McPHARLIN & CONNERS LLP**
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

1    ## PROOF OF SERVICE

2    I am employed in the County of Dallas, State of Texas.  I am over the age of
3    eighteen years and not a party to the within action; my business address is 901 Main
     Street, Suite 6000, Dallas, Texas 75202.

4    On March 29, 2017, I served the following document(s) described as **FIRST
5    AMENDED NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE
6    PRODUCTIONS LLC** on the interested parties in this action at their last known
7    address as set forth below by taking the action described below:

8    Lucia E. Coyoca, Esq.                        Attorneys for Plaintiffs
     Valentine A. Shalamitski, Esq.
9    Daniel M. Hayes, Esq.
10   Mitchell Silberberg & Knupp LLP
     11377 West Olympic Boulevard
11   Los Angeles, CA  90064-1683
12   Telephone: (310) 312-2000
     Facsimile: (310) 312-3100

13
14   Email:
     lec@msk.com
15   vas@msk.com
16   dmh@msk.com

17

18   **BY MAIL:**  I am "readily familiar" with Strasburger & Price, LLP's practice for
19   collecting and processing correspondence for mailing with the United States Postal
     Service.  Under that practice, it would be deposited with the United States Postal
20   Service that same day in the ordinary course of business.  Such envelope(s) were
21   placed for collection and mailing with postage thereon fully prepaid at Dallas,
     Texas, on that same day following ordinary business practices.

22
23   I declare under penalty of perjury under the laws of the United States of
     America that the foregoing is true and correct and that I am employed in the office
24   of a member of the bar of this Court at whose direction the service was made.
25   Executed on March 29, 2017, at Dallas, Texas.

26
27                                          _Marianna Green_
28                                          Marianna Green

                                    4
FIRST AMENDED NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC

**EXHIBIT 17  PG.  169**

**EXHIBIT A TO DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY OF MARYLAND'S NOTICE OF ORAL DEPOSITION OF PLAINTIFF UCP**

## DEFINITIONS

The words "YOU," "YOUR," "YOURSELF" and "YOURS" mean the Plaintiff, Universal Cable Productions LLC and its parents or subsidiaries, predecessors, assigns, agents, officers, directors, employees, attorneys, or other representatives acting on its behalf.

"CLAIM" means the claim for insurance coverage that YOU made with ATLANTIC, as described in the Plaintiffs' First Amended Complaint or any subsequent or superseding pleadings in this matter.

COMPLAINT means the Plaintiffs' First Amended Complaint filed in the LAWSUIT.

"COMMUNICATE" or "COMMUNICATIONS" refers to any and every manner or means of disclosure or transfer, or exchange of information, whether orally or by document or whether face-to-face, by telephone, e-mail, mail, text messages, facsimile, telecopy, computer, personal delivery, or otherwise.

"RELATE" or "RELATING" means constituting, referring to, relating to, discussing, analyzing, comprising, embodying, recording, evidencing, effecting or containing any information which pertains to a specific subject.

"*DIG*" means the television show that NBC was producing in Israel in 2014, and later in Croatia and New Mexico.

"DOCUMENTS" refers to any original written, typewritten, handwritten, printed, recorded, or computer-generated material, as well as all tapes, disks, non-duplicate copies and transcripts thereof, now or at any time in your possession, custody or control; without limiting the generality of the following definition, but for the purposes of illustration only, "documents" includes notes, correspondence, memoranda, business records, diaries, counters, address and telephone records, photographs, tape recordings, computer disks, financial statements, checks, records, trade publications, checks, and drafts. Without limitation of the term "control" as used in the preceding sentence, a document is deemed to be in your control if you have the right to secure the document or a copy thereof, from another person or public or private entity having actual possession thereof. If any document was, but

5

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**EXHIBIT 17  PG.  170**

no longer is, in your possession or subject to your control, state what disposition was made of it and why.

"IDENTIFY" or "IDENTIFICATION," when used with regard to a natural person or persons, means to state:  (a) the full name of each person; (b) each person's present or last known business and home addresses and phone numbers; (c) the name of the person's present or last known employer; and (d) if such person was affiliated at any time with any party to this litigation or with any affiliate of any party to this litigation by employment or otherwise, state the nature (including job title, if any) and dates of such affiliation. If any of the above information is not available, state any other means of identifying each such individual person.

"IDENTIFY" or "IDENTIFICATION," when used in reference to any entity other than a natural person, including, without limitation, any corporation, sole proprietorship, partnership, limited partnership, or joint venture, means to state the full name and location or present or last known address and phone number of the principal place of business of said entity to be identified.  If any of the above information is not available, state any other means of identifying each such entity.

"IDENTIFY" or "IDENTIFICATION," when used in reference to a document, means to:  (a) specify the nature of the document (e.g. letter, memorandum, telegram, invoice or some other means of identifying same); (b) identify the date, if any, appearing on the document, or if it is undated, the date on which the document was prepared; (c) describe, in general, the subject matter of the document; (d) identify the individual and/or entity to whom it pertains; (e) identify the persons who authorized, originated, wrote, signed, dictated or otherwise participated in the preparation of the document; (f) identify each person, if any, who received an original or copy of the document; and (g) identify the present or last known location and custodian of each such document.  If any such document was, but is no longer, in your possession or subject to your control, state:  (i) the disposition made of the document, including the identity of the person who received the document; (ii) the reasons for the disposition; and (iii) the date thereof If any of the above information is not available, state any other means of identifying all such documents.

"LAWSUIT" refers to this case pending before Judge Anderson in the Central District of California as Cause No. 2:16-cv-04435-PA-MRW.

"LOSS" means the loss YOU contend YOU incurred as a result of the delays in production of *DIG* and that YOU contend is covered by the POLICY.

6

FIRST AMENDED NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

EXHIBIT 17  PG.  171

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

1   "PERSON" refers to any individual, corporation, partnership, limited

2   partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, or other such entities.

3   "POLICY" means Motion Picture/Television Producers Portfolio Policy No.

4   MP00163-04, attached as Exhibit A to the Plaintiffs' Complaint.

5   The words "YOU," "YOUR," "YOURSELF" and "YOURS" mean the

6   Plaintiffs, their parents or subsidiaries, predecessors, assigns, agents, officers,

7   directors, employees, attorneys, or other representatives acting on their behalf.

8   Pursuant to the provisions of the Federal Rules of Civil Procedure, you are required to supplement your responses to this discovery accordingly.

9

10   **TOPICS AS TO WHICH EXAMINATION IS REQUESTED**

11

12   1.     The CLAIM, including the facts supporting the CLAIM, the events giving rise to the CLAIM, and the LOSS sought by the CLAIM.

13   2.     The process that UCP went through to purchase the POLICY, including

14   the identity of the persons at UCP involved in the purchase of the POLICY, the

15   identity of the persons at Atlantic with whom those persons spoke regarding the purchase of the POLICY, and how UCP received the POLICY.

16   3.     The circumstances surrounding the payment of premiums for the

17   POLICY.

18   4.     The basis of UCP's contention that the CLAIM is covered under the

19   POLICY.

20   5.     UCP's investigation of the facts and the transactions giving rise to the

21   CLAIM.

22   6.     The documents that support or otherwise relate to the CLAIM.

23   7.     The notice that YOU gave to ATLANTIC regarding the CLAIM.

24   8.     The basis for YOUR claim of breach of the implied covenant of good

25   faith and fair dealing.

26   9.     The amount that UCP is seeking to recover for the CLAIM, including

27   the components and calculation thereof and the specific transactions involved in the

28   CLAIM.

7

**FIRST AMENDED NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC**

**EXHIBIT 17  PG.  172**

10.     The amount that UCP is seeking to recover in the LAWSUIT, including the components and calculation thereof.

11.     The facts concerning the Israeli-Palestinian conflict of 2014 that led UCP to conclude that the conflict was not a "war, including an undeclared or civil war."

12.     The facts concerning the Israeli-Palestinian conflict of 2014 that led UCP to conclude that the conflict was not "warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents."

13.     The facts concerning the Israeli-Palestinian conflict of 2014 that led UCP to conclude that the conflict was not "insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these."

14.     The facts concerning UCP's position that the activity in Israel and Palestine in 2014 that led UCP to move the production of *DIG* did not relate directly or indirectly from the use of any weapon of war

15.     The decision to move filming of *DIG* out of Israel.

16.     The decision to move filming of *DIG* to Croatia.

17.     The decision to move filming of *DIG* to New Mexico.

18.     The decision that Croatia lacked the indoor facilities needed to film *DIG* and that indoor filming must therefore take place in New Mexico.

19.     The bases of UCP's position that moving filming to both Croatia and New Mexico resulted directly from the Israeli-Palestinian conflict of 2014.

20.     Correspondence and other COMMUNICATIONS between Atlantic and YOU concerning the CLAIM.

21.     The amount of attorney's fees incurred by YOU in the LAWSUIT.

22.     The contractual or other arrangement between YOU and Mitchell Silberberg and Knupp LLP, concerning that law firm's compensation for handling the LAWSUIT for YOU.

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

8

**EXHIBIT 17  PG.  173**

23. The documents referenced or described in YOUR Initial Disclosures in the LAWSUIT.

24. The general nature and sources of the documents produced by YOU in the LAWSUIT.

25. The documents produced by YOU in the LAWSUIT.

26. Who at UCP was responsible for identifying the documents responsive to the requests for production served in this case.

27. The basis for YOUR withholding of documents in the LAWSUIT on the basis of privilege, protection, or exemption from discovery.

28. The terms of the POLICY, including, but not limited to, each of the exclusions on which ATLANTIC relies and all reasons YOU contend the exclusions do not apply.

29. YOUR prior claims history with ATLANTIC.

30. The basis of and all facts and circumstances underlying the allegations of the COMPLAINT.

31. The decision to film *DIG* in Israel.

32. All facts and circumstances considered in deciding to move filming of *DIG* to Croatia and New Mexico, and knowledge of all other places that were considered as alternative locations.

33. Why filming of *DIG* could not take place entirely in Croatia.

34. Why filming of *DIG* could not take place entirely in New Mexico.

35. Why the production of *DIG* could not be moved to a single country or location, as opposed to two different countries.

36. Plaintiffs' efforts, if any, to mitigate the damages they are seeking in the LAWSUIT.

37. Plaintiffs' discovery responses served in this LAWSUIT.

38. The relationship between Plaintiffs and NBCUniversal Media, LLC.

39. The relationship between Plaintiffs and MSNBC.

9

FIRST AMENDED NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**EXHIBIT 17  PG.  174**

40.     The relationship between NBCUniversal Media, LLC and MSNBC.

41.     The relationship between Plaintiffs and NBC News.

42.     Internal communications among UCP, Northern Entertainment Productions LLC, or NBCUniversal Media, LLC, regarding the CLAIM prior to filing the LAWSUIT.

43.     The method and process used by NBCUniversal Media, LLC to set reserves on any claims made with Atlantic.

44.     All factors considered by NBCUniversal Media, LLC in setting reserves on any claims made with Atlantic.

45.     When the decision was made to move filming of *DIG* out of Israel.

46.     The dates in which *DIG* was filmed in Croatia.

47.     The dates in which *DIG* was filmed in New Mexico.

48.     The dates on which decisions were made to move filming to New Mexico and Croatia.

49.     When the decision was made to move filming of *DIG* out of Israel, exactly who left and when did they leave?

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

10

FIRST AMENDED NOTICE OF TAKING DEPOSITION OF UNIVERSAL CABLE PRODUCTIONS LLC

**EXHIBIT 17  PG.  175**

# EXHIBIT 18



**MITCHELL SILBERBERG & KNUPP LLP**
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Daniel M. Hayes
Partner
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

March 29, 2017

VIA E-MAIL ONLY

Toni Scott Reed, Esq.                    Carla C. Crapster, Esq.
Strasburger & Price, LLP                 Strasburger & Price, LLP
901 Main Street                          901 Main Street
Suite 6000                               Suite 6000
Dallas, TX 75202                         Dallas, TX 75202

**Re:    Universal Cable Productions vs. Atlantic Specialty**

Dear Toni and Carla:

We wanted to briefly memorialize where the parties stand on the six points set forth in your March 17, 2017 letter, following our meet-and-confer yesterday, March 28, and certain statements made in your letters sent today, so that there are no misunderstandings if and when these issues are presented to the Magistrate Judge.

1.  <u>Privilege Log.</u>  Yesterday, we produced Plaintiffs' supplemental privilege log and the accompanying legend of names.  (As we previously explained, we had anticipated completing the supplemental log sooner (during the week of March 13 or 20), but due to unavoidable intervening circumstances (e.g., one of the attorneys primarily working on the privilege log was ill during most of the weeks of March 13 and 20), required additional time to complete the log.)  With respect to the legend, to alleviate Atlantic's concern in connection with the use of the word "related" in the definition of "NBCUniversal" on the original log (which we still believe is proper), the description has been revised to eliminate the word "related" as follows:  "For purposes of this privilege log, the term "NBCUniversal" means and refers to NBCUniversal Media, LLC, Universal Cable Productions LLC, and all of their parent, subsidiary, or affiliated entities."

We categorically disagree with Atlantic's unsupported position, as expressed during the meet-and-confer, that if one of the participants in an otherwise privilege communication is employed by, for example, a subsidiary of NBCUniversal, that alone is sufficient to destroy the privilege as to that communication.  Atlantic's position is contrary to the plain language of California's statutory privilege, and the law which sensibly recognizes that communications between attorneys and employees of parent, subsidiary, or affiliate of a client in connection with legal representation and advice are within the scope of privilege.

Moreover, none of the cases cited in your March 17, 2017 letter are on point or stand for the proposition that all individuals involved in a communication must be employed by Plaintiffs in order for privilege to apply.  Rather, the law is to the contrary.  *See, e.g.,* Cal. Evid. Code § 952 (defining privilege to encompass clients and other persons and entities

8745538.1/46250-00001

11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone:  (310) 312-2000  Fax:  (310) 312-3100  Website: WWW.MSK.COM

**EXHIBIT 18  PG.  177**



Toni Scott Reed, Esq.
Carla C. Crapster, Esq.
March 29, 2017
Page 2

in confidential communications "to further the interest of the client" or "those to whom
disclosure is reasonably necessary for the transmission of the information or the
accomplishment of the purpose for which the lawyer is consulted"); *Zurich Am. Ins. Co.
v. Super. Ct.*, 155 Cal. App. 4th 1485, 1501 (2007) (California's statutory attorney-client
privilege is broad:  in a corporate setting, it extends to communications involving all
levels of employment, from high to middle, to low); *Ins. Co. of N. Am. v. Super. Ct.*, 108
Cal. App. 3d 758, 765, 767-70 (1980) (confidential communications among parent and
directly or indirectly wholly-owned subsidiary or affiliate entities are privileged:  "the
fact that the communications are among formally different corporate entities which are
under common ownership or control leads this court to treat such inter-related-corporate
communications in the same manner as intracorporate communications [*i.e.*,
privileged]").  If you have any additional or different authority, please provide it and we
will consider it.

We maintain that the foregoing information is sufficient to enable Atlantic to assess the
claim of privilege, without the need to "specifically identify the exact employer of each
person listed on [the] privilege log" as Atlantic requests.  However, as we said during the
call, if after reviewing the supplemental log Atlantic has questions about any particular
row, we are happy to address such issues if and when they arise.

2.  <u>Redactions.</u>  As we discussed at length, there are two components to this issue:

a.  *Redactions on the basis of privilege:*  Plaintiffs have logged redactions made on
the basis of privilege on the supplemental privilege log.  If Atlantic has further
questions about a particular redaction, please let us know and we will address
those.  You stated that you are not sure whether Atlantic logged redactions based
on privilege on its privilege log.  In your letter we received today, you state that
Atlantic logged redactions based on privilege, and provide us with three
"examples" of said entries:  "dated 11/18/14, 1/06/15, and 4/07/15."  Please
provide an amended log which lists all redactions with the corresponding bates
numbers for each of the redactions.  We cannot ascertain this information from
Atlantic's log or your explanation because among other things, there are multiple
entries on the log dated 11/18/14 and 4/07/15 and there is no entry dated 1/06/15.
We have provided bates numbers for redacted documents on Plaintiffs'
supplemental log.  Please let us know when you will provide the amended log.

b.  *Redactions on a basis other than privilege:*  In your March 17, 2017 letter, you
stated:  "We are willing to agree to log Atlantic's redactions of information that
was withheld for confidentiality reasons in exchange for your agreement to do the
same."  Yesterday, we said we are willing to agree to this reciprocal arrangement
for logging redactions made on grounds other than privilege, and that our
respective logs would be modeled on Atlantic's "Second Supplemental Privilege
Log," which you prepared, and in which you describe redactions made to the
Publicis Claim File and Middle East Claim file.  Surprisingly, you said that you

**EXHIBIT 18  PG.  178**



Toni Scott Reed, Esq.
Carla C. Crapster, Esq.
March 29, 2017
Page 3

needed to check with your client to determine whether it is still willing to agree to log the redactions it made based on grounds other than privilege. In your letter today, you state: "In my letter of March 17, 2017, the offer was made to schedule redactions based upon confidentiality on a privilege log, in exchange for Plaintiffs doing the same. You have seen an example of our method of noting such redactions in the Second Supplemental Privilege log. You indicated yesterday a willingness of the Plaintiffs to enter into such a reciprocal arrangement. I am confirming my client also agrees, and that we will provide a Third Supplemental Privilege Log to reflect the confidentiality redactions made on the documents you have already received, as soon as possible. I estimate that you will have the Third Supplemental in one week or less." Plaintiffs will reciprocally log their redactions within the same time estimate.

3.  Plaintiffs' claim that Work Product protection attached July 17, 2014. I reiterated the fact that Theresa Gooley testified, under oath, that the decision that the *Dig* Claim was going to be denied was conveyed to Plaintiffs on July 17, 2014. Gooley Depo, 184:18-25. But as I said, even if Pamela Johnson said "we're seriously considering" denial in the July 17, 2014 phone call, as you say she did, Plaintiffs anticipated litigation after that July 17 phone call, and Plaintiffs were reasonable in doing so. I asked that you (i) provide us with your position regarding why Plaintiffs were not entitled to anticipate litigation as of that moment, (ii) identify when you contend Plaintiffs' anticipation of litigation accrued, and (iii) provide any authority that supports your position(s). You did not respond to (i). With respect to (ii), you stated that Plaintiffs could not have reasonably anticipated litigation until they decided to object to Atlantic's formal written denial letter. I asked you for any exemplary legal authority that supported this proposition (not *all* legal authority, just one or two cases). You flatly refused to provide *any* legal authority. If you present this issue to the Magistrate Judge, we expect you will not cite any legal authority for your position.

4.  Damages documents. We said we would send you a letter addressing this issue yesterday. We did.

5.  Privilege claims where attorneys are "merely" "cc's." As we explained, your argument and case authority are inapposite. The presence of an attorney on the "to," "from," or "cc" line is never dispositive, but is evidence supporting the assertion of privilege. The question is whether a communication is a "confidential communication" within the meaning of California Evidence Code section 952. We pointed out that, with respect to each of the nine documents that you reference in your letter, the descriptions of those documents provided in the log further substantiated our privilege claim. You did not inquire further after we pointed that out. We do not understand your position to be that any email sent to an attorney as a cc *cannot* be privileged. If you do maintain that position, please let us know. Otherwise, as we said during the call, we are happy to meet-and-confer regarding any particular row on our privilege log that you feel it is necessary to discuss.

**EXHIBIT 18  PG.  179**



Toni Scott Reed, Esq.
Carla C. Crapster, Esq.
March 29, 2017
Page 4

6.  <u>Limiting the Deposition of Sean Duffy and Barring the Deposition of Dennis Crosby.</u>  As we stated during the call yesterday, your position here is unjustified and unsupportable. Plaintiffs do not agree to forego taking Mr. Crosby's deposition or to limit Mr. Duffy's deposition to less than what is permitted by statute.

As to both Mr. Crosby and Mr. Duffy, we are not seeking either of their depositions because they are purportedly at the "pinnacle of [Atlantic's] corporate structure," as you argue, but because they are percipient witnesses with relevant knowledge.  Indeed, the discussion in your March 17, 2017 letter proves they were directly involved in the denial of the *Dig* claim.  You indicated:  "Mr. Duffy had only fleeting involvement with the Dig claim.  As you know from the correspondence we produced, he stated in a one-sentence email that he agreed with the analysis ***in the denial letter***.  This was the extent of his involvement.  Mr. Crosby had even less involvement with the Dig claim. He was forwarded the denial letter at one point and then proceeded to forward it on to Peter Williams (who already knew of the Dig claim) and in that forwarding e-mail said only: 'FYI.'  This is the total of his involvement in the Dig claim."  (Emphasis added.)  First, that statement is incorrect.  The attachment to the email chain to which you refer indicates that the attachment was:  "Opn Ltr to Pamela Johnson."  It does not indicate it was a draft of the denial letter.  The attachment appears to reference the opinion letter authored by Leon Gladstone which Ms. Gooley testified was received by Atlantic on July 21, 2014.  Ms. Gooley's email to Mr. Duffy which begins this chain, is dated July 22, 2014, and the denial letter was not sent until July 28, 2014.  At the very least Plaintiffs are entitled to question the two witnesses as to what was attached, and are not required to take your word for it.

Based on the documents produced, it appears both of Mr. Duffy and Mr. Crosby had the opportunity to review, consider, and approve the coverage opinion from Leon Gladstone. *See* ATL001829-31 (title of the attachment:  "Opn Ltr to Pamela Johnson" received, etc. by, among others, Duffy and Crosby), ATL001832-34 (continuing email chain).  And in your discovery responses, Atlantic identified Mr. Duffy in responses to Interrogatory Nos. 1 and 2 as a person who was "responsible for the decision to deny the *Dig* Claim" and who was involved in "evaluating and considering the *Dig* Claim."  Plaintiffs are entitled to depose both of these witnesses as to the extent of their consideration of the denial, based on the presentation of the issue to them by Ms. Gooley.

Moreover, Atlantic's own insurance expert, Anthony Clark, relied on the fact that the decision to deny the Dig Claim was approved by various supervisors up the chain of command, as evidence of Atlantic's good faith investigation and claim handling.  In addition to Ms. Gooley, Mr. Duffy and Mr. Crosby were the up-the-chain Atlantic employees that would have given the referenced supervisory approval to which Mr. Clark referred.  To state the obvious, Atlantic and its insurance expert are relying on the decisions by "supervisory personnel" (including Mr. Duffy and Mr. Crosby), who in turn, appear to have relied on Mr. Gladstone's opinion in reaching their "supervisory" decision.  Perhaps they relied on more than Gladstone's opinion; Plaintiffs do not know,

**EXHIBIT 18  PG.  180**



Toni Scott Reed, Esq.
Carla C. Crapster, Esq.
March 29, 2017
Page 5

but they are entitled to discover this critical information.  Either way, even without Atlantic's expert's statements, it cannot be reasonably disputed that both Duffy and Crosby have unique personal knowledge relevant to the case, including information about the consideration of and denial of the *Dig* claim from a supervisory perspective and otherwise.

Further, even assuming for purposes of argument only that either witness is at the "apex" of Atlantic's corporate structure, Atlantic will not satisfy the requirements of an otherwise protected "apex" deposition here because Plaintiffs are not seeking to depose these witnesses "automatically" as you claim.  Rather, Plaintiffs have engaged in extensive written and document discovery, deposed and are in the process of deposing four lower-level Atlantic's employees who handled the *Dig* claim (Mr. Gutterman, Ms. Johnson, Ms. Gooley, and Mr. Williams), but are still lacking information about, for example, consideration and denial of the *Dig* claim by Atlantic's supervisory personnel.

Finally, as I said during our call, if these witnesses have no or very little pertinent information, these will be short depositions.  But we will not, under any circumstances, agree to preemptively limit the time or scope of either deposition, especially given that in all three depositions of Atlantic witnesses to date, unexpected and highly relevant documents were revealed.

I asked that you provide us with an answer today to the question whether you intend to stand on your objections to these depositions.  You said the "final decision-maker" needed to make the call, so you did not know whether you would have an answer today.  Given the need to get these depositions set and taken, if the issue is not resolved during tomorrow's meet and confer, we will bring this issue to the Magistrate Judge.

7.  <u>Deposition Scheduling.</u>  We received your letter today with notices for the depositions of Plaintiffs' witnesses.  Your unilateral setting of dates for these depositions is unacceptable, particularly in light of the numerous dates that we previously provided on which Plaintiffs witnesses may be deposed.  During the call tomorrow please be prepared to discuss deposition scheduling.  Based on your letter of today indicating your unwillingness to proceed with the depositions of Wanda Phillips and Tom McCarthy next week, we have informed Mr. McCarthy that his deposition will not be proceeding next week.  However, we simply cannot continue to proffer dates for Plaintiffs' witnesses to be deposed, and then have Atlantic fail to proceed with scheduling the depositions or unilaterally attempt to impose different dates.  You are complaining that you need a trial continuance in part because you have not deposed Plaintiffs' witnesses, and yet you stalled for months in the setting of any depositions.  You unilaterally took all of the previously offered dates off calendar in late February, and currently are refusing to confirm the deposition dates that we have offered.

Specifically, we proposed several dates on Friday, March 24, and you simply ignored the dates we offered as to the majority of the witnesses.  As to Stephen Smith, we previously

**EXHIBIT 18  PG.  181**



Toni Scott Reed, Esq.
Carla C. Crapster, Esq.
March 29, 2017
Page 6

offered April 18 for Mr. Smith to be deposed.  As you are well aware, Mr. Smith needs to travel from London, England for his deposition.  In your March 27, 2017 letter, you indicated that you want us to "hold that date for his deposition" but you did not confirm that you would take his deposition on that date until your notice today.  As to Ms. Weiss and Ms. Adams, we will be prepared to discuss those depositions tomorrow.  As to the other witnesses, in some instances, we offered dates, but you unilaterally noticed these depositions for different dates than the ones offered.  You previously asked us to keep dates reserved (or multiple dates reserved), but failed to confirm the dates on which you will be proceeding.  This is simply unacceptable.  Atlantic is seeking to depose several high level executives with limited availability.  As time passes, the dates we previously proposed for our witnesses are starting to become unavailable.

Finally, we need confirmed dates for Ms. Phillips, Mr. Duffy, Mr. Crosby and Atlantic's Rule 30 (b) (6) designee, *immediately,* so that travel plans can be arranged.  It is imperative that you be prepared to set deposition dates for these witnesses tomorrow.

The above is not intended to be a full recitation of the parties' meet-and-confer.  All rights are reserved.

As to your email concerning scheduling another meet and confer, we are not available tomorrow, March 30, 2017 at 9 a.m.  We could do the call at noon tomorrow.  Please confirm your availability.

Sincerely,

Daniel M. Hayes
Partner of
MITCHELL SILBERBERG & KNUPP LLP

DMH/mxb

EXHIBIT 18  PG.  182

# EXHIBIT 19

| From: | Hayes, Daniel |
| --- | --- |
| To: | "Reed, Toni"; Shalamitski, Valentine; Coyoca, Lucia |
| Cc: | "Keeley, Michael"; "Crapster, Carla" |
| Subject: | RE: Plaintiffs" Second Set of Discovery Responses/Deposition Objections - Meet and Confer |
| Date: | Friday, March 31, 2017 8:39:09 AM |
| Attachments: | image001.gif |
| | 3-31-2017 letter Hayes to Reed (8751673).pdf |

Toni,

We made ourselves available starting at 10:30 a.m. yesterday, and told you we could talk any time after that.  I said, if nothing else, we absolutely needed to take 30 minutes to discuss deposition scheduling.  You did not even bother to respond to my email.  And needless to say, you never called.  Instead, you filed a surprise *ex parte* application based in part, ironically, on Atlantic's purported inability to schedule depositions.

Attached is Plaintiffs' meet-and-confer letter addressing Atlantic's objections and responses to Plaintiffs' Second Sets of Requests for Production and Interrogatories, and First Set of Requests for Admissions.  Please be prepared to meet-and-confer on the issues set forth in this letter today when we speak.

Let's address deposition scheduling first when we talk at 12:00 Pacific.  Please be prepared to put names on the calendar.  We will call you.

Dan



**Daniel M. Hayes** | **Partner, through his professional corporation**
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Reed, Toni [mailto:Toni.Reed@strasburger.com]
**Sent:** Friday, March 31, 2017 6:29 AM
**To:** Hayes, Daniel; Shalamitski, Valentine; Coyoca, Lucia
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** RE: Plaintiffs' Second Set of Discovery Responses/Deposition Objections - Meet and Confer

Hi Dan,

This week has been extremely booked for me, so I did suggest the block of time I had for yesterday. Apparently, it did not work in your schedule.

EXHIBIT 19  PG.  184

I'm still available today for the suggested time (2 pm central/12 pm pacific).

Also, if we need some additional time to discuss depositions, on top of the afternoon slot, I'm available from 10:30 a.m. to 11:00 a.m. (my time) – 8:30 a.m. pacific.  To save time, you can certainly email me the substance you want to address on depositions, and we can go from there.

Looking forward to making progress, and thanks in advance,

Toni Scott Reed

**Toni Scott Reed** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.4345 • Fax 214.659-4091 • Strasburger.com

---

**From:** Hayes, Daniel [mailto:dmh@msk.com]
**Sent:** Thursday, March 30, 2017 12:01 PM
**To:** Reed, Toni; Shalamitski, Valentine; Coyoca, Lucia
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** RE: Plaintiffs' Second Set of Discovery Responses/Deposition Objections - Meet and Confer
**Importance:** High

Toni,

We are available to talk anytime today from 10:30 Pacific on.  Please let us know what works for you.  In any event, we absolutely need to talk today about deposition scheduling.  Please confirm that you can speak for at least 30 minutes on that subject at 10:30 Pacific.

Dan



**Daniel M. Hayes | Partner, through his professional corporation**
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP | www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

---

**From:** Reed, Toni [mailto:Toni.Reed@strasburger.com]
**Sent:** Thursday, March 30, 2017 9:53 AM
**To:** Hayes, Daniel; Shalamitski, Valentine; Coyoca, Lucia
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** RE: Plaintiffs' Second Set of Discovery Responses/Deposition Objections - Meet and Confer

EXHIBIT 19  PG.  185

Dan,

I have seen your indication that you are not available for the suggested time for today.  I am not able to clear my conflicts this afternoon for the time you suggested.

I am now suggesting Friday, March 31, at 2:00 central/12:00 noon Pacific.  I am available for 1.5 hours in that slot but must conclude at 3:30 my time.

Best regards,
Toni Scott Reed

**Toni Scott Reed** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.4345 • Fax 214.659-4091 • Strasburger.com

---

**From:** Reed, Toni
**Sent:** Wednesday, March 29, 2017 2:35 PM
**To:** 'Hayes, Daniel'; Shalamitski, Valentine; Coyoca, Lucia
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** RE: Plaintiffs' Second Set of Discovery Responses/Deposition Objections - Meet and Confer

Dan,

Unfortunately, I cannot start as late as 2:00 p.m. Pacific/4:00 p.m. Central time today.  I am completely booked from 3:30 Central until late into this evening.

I suggest that my requested call go forward on Thursday, March 30, to address my first-made request noted below, on the items we have previously set out, including in correspondence.  I suggest 9:00 a.m. Pacific.  Please confirm.

In regard to the logged redactions on privilege and the issue of logging other objections, I'll get a letter to you today, setting out those issues.  We will also send a response in writing on document numbers.

Regarding the discovery sets you mention below, again, please set out your specific positions/requests in a letter, so that we can discuss with our client and attend a conference with (a) knowledge of your requests; and (b) ability to respond.

On the issue of our disputes regarding the depositions for Crosby and Duffy, I mentioned yesterday that I could not guarantee that I would have a client answer today, and I do not.  I'll keep working on that.

I'll look forward to speaking tomorrow.  Please look for my separate letters.

Best regards,
Toni Scott Reed

**EXHIBIT 19  PG.  186**

**Toni Scott Reed** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.4345 • Fax 214.659-4091 • Strasburger.com

---

**From:** Hayes, Daniel [mailto:dmh@msk.com]
**Sent:** Tuesday, March 28, 2017 11:40 PM
**To:** Reed, Toni; Shalamitski, Valentine; Coyoca, Lucia
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** RE: Plaintiffs' Second Set of Discovery Responses/Deposition Objections - Meet and Confer

Toni,

As we discussed today during our call, please be prepared to address the following issues during our meet-and-confer tomorrow (Wednesday):

- Atlantic's objections and responses to Plaintiffs' Second Sets of Requests for Production and Interrogatories, and First Set of Requests for Admissions.  We will endeavor to send you a letter, as you requested, in advance of the call.  But given Atlantic's wholesale refusal to produce documents in response to most of the RFPs, there is no reason we cannot discuss the RFP responses tomorrow without a pre-call letter.
- Whether Atlantic has logged redactions based on privilege and, assuming it has not, when it will do so.
- Atlantic's objections to the individual depositions of Mr. Duffy and Mr. Crosby.  As we discussed during the call earlier today, we need an answer tomorrow (Wednesday) to the question whether Atlantic intends to stand on its objections.

Please also identify the production numbers for the emails involving Mr. Duffy and Mr. Crosby that you referenced at the bottom of Page 8 of your March 17 letter to me, in advance of our call.

We propose **2:00 p.m. Pacific** for the call.  Please let us know whether that works.

Dan



**Daniel M. Hayes** | Partner, through his professional corporation
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp** LLP | **www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY

**EXHIBIT 19  PG.  187**

REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Reed, Toni [mailto:Toni.Reed@strasburger.com]
**Sent:** Tuesday, March 28, 2017 9:16 AM
**To:** Hayes, Daniel; Shalamitski, Valentine; Coyoca, Lucia
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** Plaintiffs' Second Set of Discovery Responses/Deposition Objections - Meet and Confer

Counsel,

We need to complete a meet-and-confer on the following:

1. Plaintiffs' objections to designating a witness on specific topics, served in response to the 30(b)(6) notice to Plaintiffs (and Plaintiffs' final position on designating a witness to testify on contention topics);
2. Plaintiffs' objections and responses to second sets of written discovery (issues set out in our prior letter of March 24);
3. Atlantic's objections to the 30(b)(6) notice of deposition served on it.

We need to complete this conference on **Wednesday, March 29**. We suggest 9:00 a.m. Pacific time. If that time does not work, please name a specific time tomorrow that will work.

Best regards,
Toni Scott Reed

**Toni Scott Reed** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.4345 • Fax 214.659-4091 • Strasburger.com

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

**EXHIBIT 19  PG.  188**

# EXHIBIT 20



MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Daniel M. Hayes
Partner
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

April 3, 2017

**VIA E-MAIL**

Toni Scott Reed
Strasburger & Price, LLP
901 Main Street
Suite 6000
Dallas, TX 75202

Re:     **Universal Cable Productions LLC, et al. v. Atlantic Specialty Insurance Company**

Dear Toni:

This email confirms our meet-and-confer telephone call Friday afternoon.

1.  Notice of Withdrawal of *Ex Parte* Application.  You confirmed that you would file a notice of withdrawal of the *ex parte* application filed Thursday.  We received the same via ECF Friday afternoon.  With respect to Atlantic's *ex parte* application filed Friday afternoon, we confirmed that Plaintiffs oppose Atlantic's request for a trial continuance, and also contend that Atlantic's request for *ex parte* relief is itself inappropriate.

2.  Deposition Scheduling.

    a.  You confirmed that Atlantic has withdrawn its objections to the deposition of Sean Duffy and will produce him in Minneapolis without the time or scope restrictions you had originally demanded.  You proposed May 8, 2017 as the date of his deposition.  We asked you to provide earlier dates.  You said you needed to go back and check with Mr. Duffy.

    b.  You stated that you were not yet in a position to confirm that Atlantic would withdraw its objections to the deposition of Dennis Crosby and produce him without restriction.  You stated that you needed one more person to approve producing Mr. Crosby.  I asked that you secure that approval before we speak again on Monday at 12:00 p.m. Pacific.  You indicated that you would try, but could not guarantee you would be able to.  As I flagged for you during our call, given the case schedule, in the event we do not have your confirmation today that Mr. Crosby will be produced without restriction, we intend to bring this issue to the Magistrate Judge immediately.

    c.  We confirmed that the deposition of Stephen Smith will proceed on April 18, 2017 at MSK in Los Angeles.

8758132.1/46250-00001

11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone: (310) 312-2000 Fax: (310) 312-3100 Website: WWW.MSK.COM

**EXHIBIT 20  PG.  190**



Toni Scott Reed
April 3, 2017
Page 2

d. Since you did not have available dates for Wanda Phillips, Pamela Johnson, Atlantic's Rule 30(b)(6) designee(s), April dates for Mr. Duffy, or confirmation that Atlantic would voluntarily produce Mr. Crosby, we were unable to schedule any Atlantic witness depositions.  We were prepared to work with you on Friday to mutually schedule depositions, but that was not possible because you did not know Atlantic's witnesses' availability.  We agreed to talk again today at 12:00 p.m. Pacific regarding deposition scheduling and other issues, addressed below.  I asked that you be prepared today at 12:00 p.m., with Atlantic's witnesses' availability, so that we can schedule the remaining depositions in a fair and coordinated fashion.

e. Please note that if Atlantic is not prepared to schedule the depositions of its witnesses today in good faith, we will have no choice but to bring the matter to the Magistrate Judge immediately.  And as I noted during our call, an Atlantic proposal that would involve scheduling all of the witnesses Plaintiffs seek to depose for the last two weeks of the discovery period does not constitute good faith.  Please come prepared with **<u>all</u>** available dates – between April 10 and May 12 – for each of Atlantic's witnesses.  (You asked which depositions were most important to complete first, from Plaintiffs' perspective.  Plaintiffs would like the deposition of Wanda Phillips to proceed first and ASAP.  Please check whether Ms. Phillips is available for her deposition on **April 10** in New York City.)

Plaintiffs have been attempting to confirm the overall deposition schedule for weeks now.  On March 24, I sent you a comprehensive email which proposed dates for **ten** witnesses.  The only deposition out of that group that has been confirmed is one of ours, Stephen Smith on April 18.  We have made no progress in setting any of the others, even though Plaintiffs were ready, willing, and able to discuss a comprehensive schedule during the meet-and-confers this week.  I emphasized the importance of setting the deposition schedule in my Wednesday, March 29 letter to you.  I made myself available virtually the entire day on Thursday, March 30 to discuss deposition scheduling, but you never called.  When we finally spoke Friday, March 31, you weren't ready to have a comprehensive discussion; you only had one date for one of your witnesses, Sean Duffy.  And as I told you on Friday, that date (May 8 – four days before the discovery cutoff) was not acceptable.  It goes without saying that Atlantic cannot be heard to complain that it needs a trial continuance because it cannot take the depositions it needs early enough, while Atlantic continues to stall the process of setting depositions.

f. I understand that the dates Atlantic prefers for the depositions it wishes to take are the ones set forth in the deposition notices it recently served.  We will do our best to accommodate those dates where possible, but you will need to be flexible in our scheduling discussion on Monday, as it is not going to be possible to accommodate all of the dates Atlantic unilaterally chose in its notices.

**EXHIBIT 20  PG.  191**

 **msk**

Toni Scott Reed
April 3, 2017
Page 3

3. <u>Plaintiffs' objections to Atlantic's Rule 30(b)(6) deposition notice.</u>  We discussed five categories of topics that Plaintiffs objected to:

a. *Topics which Plaintiffs contend would require the designee to apply law to fact or render legal conclusions.*  This category is comprised of Topic Nos. 4, 8, 11, 13, 14, 28, 42, 44, and 49.  Thank you for discussing what you believed were permissible types of questions in this category.  Having considered our discussion, Plaintiffs maintain that questions which would require a percipient witness to apply law to fact or reach a legal conclusion are inappropriate.  And the impropriety of such questions is not cured by asking, for example, for the "facts that support" a legal contention.  Those types of questions require the application of law to fact.  Therefore, Plaintiffs intend to stand on the objections asserted.  We are willing to discuss this position further with you when we speak today, if you would like to.

b. *Topics relating to attorneys' fees incurred by Plaintiffs in the lawsuit and the compensation arrangement with MSK.  (Nos. 21 and 22).*  We understand that Atlantic contends it is entitled to a designee on these topics as a result of Plaintiffs' request for an award of attorneys' fees in connection with its second claim for bad faith.  We are still considering Atlantic's position.

c. *"Who at UCP was responsible for identifying the documents responsive to the requests for production served in this case."  (No. 26).*  After considering our conversation Friday afternoon, we intend to stand on our objections.  The decision whether a particular document was responsive to a request for production was made, as in most cases, by attorneys, and it is therefore not the appropriate subject of a Rule 30(b)(6) deposition.

d. *"The basis for Your withholding of documents in the Lawsuit on the basis of privilege, protection, or exemption from discovery."  (No. 27).*  As I said during our call, this topic clearly calls for a witness to engage in legal analysis.  Debates over whether a particular document is privileged can be resolved as they always are – through challenges to privilege log entries.  If the parties cannot resolve such challenges informally, we can bring them to the Magistrate Judge.  Plaintiffs intend to stand on their objections.

e. *The relationship between Plaintiffs and various other entities.  (Nos. 38-41).*  I asked what the relevance of these topics was to the lawsuit.  You said that Atlantic needed to explore the relationship between entities in order to resolve our privilege log claims.  I noted that was not a sufficient ground to require a deposition – disputes over privilege objections should be handled as set forth above.  You also asserted that Atlantic needed to explore the relationship between the parties identified in these topics because the jury might be confused by the fact that the Plaintiffs were not listed as insureds, and NBCUniversal was.  I frankly did not understand this point, and said that, in any event, it sounded like an issue that could be dealt with in pretrial submissions or stipulations.  Further,

**EXHIBIT 20  PG.  192**



**Toni Scott Reed**
April 3, 2017
Page 4

the corporate structure relating to Plaintiffs, NBCUniversal, and the fact that Plaintiffs are Named Insureds are detailed in the operative complaint.  There is no need for a Rule 30(b)(6) deposition on these topics.  Based on our discussion Friday afternoon, Plaintiffs intend to stand on their objections in connection with these topics.

4.  <u>MSJ filing date.</u>  We tentatively agreed that the parties would file their respective motions for summary judgment on April 24, but that we would confirm the same when we talk today.  Please be prepared to do so.

5.  <u>Agenda for today.</u>  In addition to the above items already discussed (resumption of deposition scheduling discussion, any remaining discussion over Plaintiffs' objections to Atlantic's Rule 30(b)(6) notice, and confirmation of MSJ filing date), we agreed to address the following today at 12:00 p.m.:

    a.  Atlantic's objections to Plaintiffs' Rule 30(b)(6) notice.

    b.  Plaintiffs' objections and responses to Atlantic's second set of interrogatories and requests for production.

    c.  Atlantic's objections and responses to Plaintiffs' second sets of interrogatories and requests for production, and first set of requests for admission.  Here, you stated that you would do your best to be in a position to meet-and-confer over all of the issues in out March 31 letter, sent at 8:39 a.m. on Friday, but could not guarantee that you would be able to discuss all issues.  I confirmed that if any issues regarding Atlantic's objections and responses to this discovery remain after our call today, we intend to bring those issues to the Magistrate Judge immediately, whether or not you assert you are prepared to discuss them.  There is simply not enough time to let discovery disputes languish, and the Magistrate Judge's informal procedure is designed, we believe, to facilitate quick resolution.  We should avail ourselves of that procedure where we cannot reach agreement informally.

I look forward to continuing our discussion today at 12:00 p.m. Pacific.

Sincerely,

Daniel M. Hayes
Partner of
MITCHELL SILBERBERG & KNUPP LLP

**EXHIBIT 20  PG.  193**

# EXHIBIT 21

| | |
|---|---|
| **From:** | Shalamitski, Valentine |
| **To:** | "Reed, Toni (Toni.Reed@strasburger.com)"; "carla.crapster@strasburger.com"; "michael.keeley@strasburger.com" |
| **Cc:** | Coyoca, Lucia; Hayes, Daniel; Beckman-Straus, Naomi |
| **Subject:** | UCP et al. v. Atlantic -- ex parte notice |
| **Date:** | Tuesday, April 04, 2017 5:03:50 PM |
| **Attachments:** | image001.gif |

Dear Counsel,

To follow up on my voicemail to Toni just now, as you know, we have met and conferred extensively as to your unilateral scheduling of the depositions of Randi Richmond, Mark Binke, Kurt Ford, and Plaintiffs' Rule 30(b)(6) corporate designee as to certain topics.  Yesterday, you have indicated that you will stand on your deposition notices and refuse to reschedule these depositions for dates that are available on these witnesses' calendars.  Thus, please be advised, pursuant to L.R. 7-19.1, that we intend to submit an ex parte application to Judge Wilner tomorrow, April 5, 2017, seeking a protective order as to these depositions.  Please advise if you intend to oppose such ex parte application.

In your consideration, please also direct your attention to Federal Rule of Civil Procedure 32(a)(5)(A), which precludes use of a deposition against a party who has received less than 14 days' notice of the deposition and promptly moves for a protective order.  Atlantic served its notice of Plaintiffs' Rule 30(b)(6) deposition on a 13-day notice.



**Valentine A. Shalamitski** | **Attorney-at-Law**
T: 310.312.3736 | vas@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**EXHIBIT 21  PG.  195**

# EXHIBIT 22

| From: | Hayes, Daniel |
| --- | --- |
| To: | "Reed, Toni"; Shalamitski, Valentine; Coyoca, Lucia |
| Cc: | "Keeley, Michael"; "Crapster, Carla" |
| Subject: | RE: UCP v. Atlantic - Discussion of Depositions pre-summary judgment |
| Date: | Thursday, April 06, 2017 4:58:55 PM |
| Attachments: | image001.gif |

Toni,

I just left you a voicemail.  As I said in my message, please let us know by no later than 3:00 p.m. Pacific/5:00 p.m. Central tomorrow, Friday, whether Atlantic will withdraw the deposition notices issued for Mark Binke and Randi Richmond.  If we do not have your confirmation that the notices have been withdrawn by that time, we intend to file our *ex parte* application for a protective order tomorrow.



**Daniel M. Hayes** | **Partner, through his professional corporation**
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Hayes, Daniel
**Sent:** Thursday, April 06, 2017 9:39 AM
**To:** 'Reed, Toni'; Shalamitski, Valentine; Coyoca, Lucia
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** RE: UCP v. Atlantic - Discussion of Depositions pre-summary judgment

Toni,

In Judge Anderson's ruling issued yesterday on Atlantic's *ex parte* application to continue the trial date, he rejected Atlantic's argument that the "[i]nability to complete fact witness depositions prior to the summary judgment deadline" was grounds for a trial continuance.  Among other things, Judge Anderson found that "Atlantic has not been diligent" and that Atlantic failed to explain how the outstanding discovery it seeks "would be relevant to the coverage issues which are likely to be raised in, or resolvable through, a motion for summary judgment."  For the latter part of his ruling, Judge Anderson cites *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995) for the rule that "interpretation of an insurance policy is a question of law."

This is precisely the point we have been making throughout our meet-and-confer calls:  The depositions that Atlantic is demanding take place prior to the MSJ filing deadline are not relevant to issues resolvable through an MSJ.  Therefore, Atlantic's refusal to agree to deposition dates after the MSJ filing deadline is unreasonable, and its departure from the local Civility and Professionalism

**EXHIBIT 22  PG.  197**

Guidelines is unjustified.  *See* USDC Central District of California Civility and Prof. Guideline No. 2 ("We will consult other counsel regarding scheduling matters in a good faith effort to avoid scheduling conflicts.").

Given the District Court's ruling, we will defer for a short time the filing of Plaintiffs' *ex parte* application for a protective order, to determine if it will be possible to reach an agreement on a comprehensive deposition plan that takes into consideration the schedules of the witnesses and counsel, as opposed to motion practice before Magistrate Judge Wilner which should be unnecessary in light of the District Court's ruling.  In the interest of initiating a productive meet-and-confer over deposition scheduling, please confirm the following ASAP, and before we talk later today:

1.    You agree to conduct the deposition of Malika Adams, in Bermuda, on April 27 or 28.
2.    The deposition dates that Atlantic unilaterally noticed on March 29 are off calendar (with the exception of the dates the parties have agreed to – Garber, Smith, and Weiss).
3.    You will be prepared to discuss additional dates for the depositions of Atlantic's Rule 30(b)(6) designee, Pamela Johnson, and Sean Duffy.

If we are unable to reach an agreement on Items 1 and 2, Plaintiffs will have no choice but to file their *ex parte* application today.  And given the District Court's ruling, if forced to file, we will seek monetary sanctions.

Please confirm Items 1-3 so that we can focus our respective energies on getting the deposition schedule set in a way that works for both sides.

Regards,

Dan



**Daniel M. Hayes | Partner, through his professional corporation**
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP | www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Reed, Toni [mailto:Toni.Reed@strasburger.com]
**Sent:** Wednesday, April 05, 2017 5:09 PM
**To:** Hayes, Daniel; Shalamitski, Valentine; Coyoca, Lucia
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** UCP v. Atlantic - Discussion of Depositions pre-summary judgment

**EXHIBIT 22  PG.  198**

Counsel,

We'd like to take up this subject again tomorrow.

We will try to suggest a time earlier than our 1:00 p.m. pacific discovery call to address depositions.

Thank you,
Toni Scott Reed

**Toni Scott Reed** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.4345 • Fax 214.659-4091 • Strasburger.com

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

**EXHIBIT 22  PG.  199**

# EXHIBIT 23

# Strasburger
### ATTORNEYS AT LAW

April 6, 2017

TONI SCOTT REED
(214) 651-4345
Direct Fax (214) 659-4091
Toni.Reed@strasburger.com

**<u>Via Email</u>**

Mr. Daniel M. Hayes
Mitchell Silberberg Knupp LLP
11377 W. Olympic Boulevard
Los Angeles, CA 90064

Re:   *Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*; Case No. 2:16-cv-04435-PA-MRW, pending in the United States District Court for the Central District of California, Western Division

Dear Daniel:

This letter is to continue the dialogue of the various meet-and-confer discussions we have undertaken on the subject of deposition dates.  We continue to hope to reach an agreement on the various scheduling issues, and to have mutual cooperation on that effort.

We appreciate the ability and mutual agreements to schedule the depositions of Andrea Garber (April 14), Stephen Smith (April 18), Susan Weiss (April 18), and Wanda Phillips (April 20).

The other items remaining from our requests (set out in the notices previously served – and under discussion) are the following:

1. Plaintiffs' corporate representative(s) – (Noticed for April 11)

   In order to work toward an agreement on this point, we will narrow the request to complete the deposition of the Plaintiffs' corporate representative(s) before the summary judgment deadline to topics 15 and 45 of the Notice of Deposition previously served.  We will agree that the remaining corporate representative topics can be taken up at a separate time (and/or through the various individuals you would have designated).

**Strasburger & Price, LLP**

901 Main Street, Suite 6000 | Dallas, Texas 75202.3794 | 214.651.4300 tel | 214.651.4330 fax | www.strasburger.com

Austin | Collin County | Dallas | Houston | San Antonio | New York, N.Y. | Washington, D.C. | Mexico City - Strasburger & Price, SC

**EXHIBIT 23  PG.  201**



Mr. Daniel M. Hayes
April 6, 2017
Page 2

[Note – to the extent any individuals you are producing before the summary judgment deadline would also be the designees on other subjects – you can note that and the deposition will be taken for that individual both as a witness and as a corporation designee].

2.  Malika Adams – (Requested April 11)

We will withdraw the current notice, and accept your offer to proceed with her deposition on April 28 in Bermuda.  We will also further consider taking this deposition by video, after our additional conversations of yesterday.

There are no remaining disputes for that notice.

3.  Mark Binke – (Noticed for April 14)

We need to proceed with the Binke deposition before the summary judgment deadline, and are certainly willing to work with you on another date before April 21, to accommodate the schedule.

4.  Randi Richmond – (Noticed for April 17)

We need to proceed with the Richmond deposition before the summary judgment deadline, and are certainly willing to work with you on another date before April 21, to accommodate the schedule.

5.  Kurt Ford – (Requested April 19).

We will accept the offered date of May 2.

There are no remaining disputes for that notice.

We are also willing to schedule Mr. Wachtel on May 12, as offered.

We are prepared to continue to discuss various dates that we have offered and will continue to gather.  We are in the process of identifying still additional dates for Mr. Duffy and the 30(b)(6) representative(s).

**EXHIBIT 23  PG.  202**



Mr. Daniel M. Hayes
April 6, 2017
Page 3

We await confirmation that the plaintiffs will provide the narrowed list of witnesses requested before the summary judgment deadline.  We look forward to resolving all outstanding matters, and to agreeing upon a final schedule.

Very truly yours,

Toni Scott Reed

cc:    Mr. Michael Keeley
       Ms. Carla Crapster

**EXHIBIT 23  PG.  203**

# EXHIBIT 24



April 7, 2017

TONI SCOTT REED
(214) 651-4345
Direct Fax (214) 659-4091
Toni.Reed@strasburger.com

**Via Email**

Mr. Daniel M. Hayes
Mitchell Silberberg Knupp LLP
11377 W. Olympic Boulevard
Los Angeles, CA 90064

Re:   *Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*; Case No. 2:16-cv-04435-PA-MRW, pending in the United States District Court for the Central District of California, Western Division

Dear Daniel:

I'm writing to continue the discussions of yesterday, by telephone and by my letter dated April 6.  Once again, this letter is to continue the dialogue of the various meet-and-confer discussions we have undertaken on the subject of the final deposition dates at issue.  We continue to hope to reach an agreement on the issues of the depositions of Mark Binke and Randi Richmond, and to have cooperation on that effort so that we can finally resolve the issues.

We appreciate the progress made yesterday on continuing to confirm various other deposition dates (among those - Andrea Garber (April 14), Stephen Smith (April 18), Susan Weiss (April 18), and Wanda Phillips (April 20)).  We have made Ms. Phillips available before the summary judgment deadline, as you requested.

The remaining items include the following:

1.  Mark Binke – (Noticed for April 14)

We continue to request the Binke deposition before the summary judgment deadline.  He is a fact witness, as well as the corporate representative for purposes of the 30(b)(6) notice, on the subjects we have requested to have addressed before the summary judgment deadline – namely Topic 15 (the decision to move filming of *DIG* out of Israel) and Topic 45 (when the decision

**Strasburger & Price, LLP**

901 Main Street, Suite 6000 | Dallas, Texas 75202.3794 | 214.651.4300 tel | 214.651.4330 fax | www.strasburger.com
Austin | Collin County | Dallas | Houston | San Antonio | New York, N.Y. | Washington, D.C. | Mexico City - Strasburger & Price, SC

**EXHIBIT 24  PG.  205**



Mr. Daniel M. Hayes
April 7, 2017
Page 2

was made to move filming of *DIG* out of Israel).

We continue to state that we are certainly willing to work with you on another date before April 21, to accommodate the schedule.  We have offered to be available for this purpose at any time and on any date up to April 21.

2.  Randi Richmond – (Noticed for April 17)

We continue to request the Richmond deposition before the summary judgment deadline.  Richmond is a fact witness, as well as the corporate representative for purposes of the 30(b)(6) notice, on the subjects we have requested to have addressed before the summary judgment deadline – namely Topic 15 and Topic 45.

We continue to state that we are certainly willing to work with you on another date before April 21, to accommodate the schedule.  We have offered to be available for this purpose at any time and on any date up to April 21.

We asked for deposition dates for these witnesses (specifically named) back on March 10 (about a month and a half before the summary judgment cutoff).  We followed up in writing on at least March 16, March 17, March 21, and March 27, all providing a month of notice prior to the needed depositions.  The Notices of Deposition were served on March 29, out of necessity.  The service letter noted our desire to work on convenient dates ahead of the summary judgment deadline (still over three weeks away) with you.

We have had a number of discussions about the key role of these witnesses, in terms of their positions and their unique knowledge of the timing of the decision to leave Israel and the decision to leave Israel (Topics 15 and 45).  These witnesses were producers of the show, and from all available documentation, Atlantic believes they were involved in the decision to leave (which form the basis for this case).  Exactly why and when the plaintiffs decided to leave Israel are critical facts for purposes of the legal disputes in this case, and are needed in summary judgment facts.  Coverage in this case turns on various issues, including but not limited to the exclusions for war, weapons of war, warlike action, and insurrection, and these witnesses are key sources of information pertinent to these issues.  These witnesses will also state the plaintiffs' official position on these issues, as you have indicated that they are designated as the 30(b)(6) witnesses on Topics 15 and 45.

**EXHIBIT 24  PG.  206**



Mr. Daniel M. Hayes
April 7, 2017
Page 3

The plaintiffs have chosen to bring the suit, and the plaintiffs have an obligation to cooperate in discovery and present the witnesses they have identified as key to the case.  In this instance, it is necessary to complete testimony of these two witnesses before the summary judgment deadline.  We provided a month and a half of lead time to plaintiffs in order for plaintiffs to provide these witnesses.

We look forward to resolving all outstanding matters.

Very truly yours,

Toni Scott Reed

cc:    Mr. Michael Keeley
        Ms. Carla Crapster

**EXHIBIT 24  PG.  207**

# EXHIBIT 25

| From: | Shalamitski, Valentine |
|---|---|
| To: | carla.crapster@strasburger.com; Reed, Toni (Toni.Reed@strasburger.com); michael.keeley@strasburger.com |
| Cc: | Coyoca, Lucia; Hayes, Daniel; Beckman-Straus, Naomi; Hobbs, Nicholas |
| Subject: | UCP et al. v. Atlantic |
| Date: | Friday, April 07, 2017 6:16:44 PM |
| Attachments: | image001.gif |
| | Second Supplemental Privilege-Redaction Log (8770734).pdf |

Counsel—

We are following up on the parties' April 4 telephonic meet-and-confer regarding Plaintiffs' responses to Atlantic's Second Set of Interrogatories and Requests for Production ("RFP").

While Plaintiffs believe their responses are sufficient and objections well-taken, to resolve or narrow the issues in dispute:

1.  Plaintiffs will provide supplemental responses to Interrogatory Nos. 21, 22, 23, and 25.  We are still working on these responses and expect to provide them early next week.

2.  Plaintiffs are working on additional information and/or confirmation with respect to RFP Nos. 49-52, 53, and 65 which should resolve or narrow the disputes with respect thereto. Plaintiffs are also working on and will provide additional information with respect to responses to RFP Nos. 57 and 67 which should resolve or narrow the disputes there.  We expect to be in a position to provide this additional information and/or supplement the corresponding responses as needed next week.

Also, please find attached Plaintiffs' Second Supplemental Privilege/Redaction Log.



**Valentine A. Shalamitski | Attorney-at-Law**
T: 310.312.3736 | vas@msk.com
**Mitchell Silberberg & Knupp LLP | www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

EXHIBIT 25  PG.  209

# EXHIBIT 26

| From: | Hayes, Daniel |
| --- | --- |
| To: | "Reed, Toni"; Shalamitski, Valentine; Coyoca, Lucia |
| Cc: | Keeley, Michael; Crapster, Carla |
| Subject: | RE: UPC v. Atlantic - Letter to Dan Hayes - Meet-and-Confer on Last Notices |
| Date: | Friday, April 07, 2017 5:56:35 PM |
| Attachments: | image001.gif |

Toni, as I stated in my voicemail to you, we received your letter and are reviewing it with our clients. As I also indicated in my voicemail, for purposes of L.R. 7-19, we intend to file our *ex parte* application on Monday, April 10.



**Daniel M. Hayes** | **Partner, through his professional corporation**

T: 310.312.3216 | dmh@msk.com

**Mitchell Silberberg & Knupp LLP** | **www.msk.com**

11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Reed, Toni [mailto:Toni.Reed@strasburger.com]
**Sent:** Friday, April 07, 2017 2:38 PM
**To:** Hayes, Daniel; Shalamitski, Valentine; Coyoca, Lucia
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** UPC v. Atlantic - Letter to Dan Hayes - Meet-and-Confer on Last Notices

Counsel:

Per your request, please see the attached confirmation.

Best regards,

Toni Scott Reed

**Toni Scott Reed** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.4345 • Fax 214.659-4091 • Strasburger.com

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

**EXHIBIT 26  PG.  211**

# EXHIBIT 27

| | |
|---|---|
| **From:** | Hayes, Daniel |
| **To:** | Toni.Reed@strasburger.com; Michael.Keeley@strasburger.com; Carla.Crapster@strasburger.com |
| **Cc:** | Coyoca, Lucia; Shalamitski, Valentine |
| **Subject:** | UCP, et al. v. Atlantic |
| **Date:** | Tuesday, April 11, 2017 6:17:21 PM |
| **Attachments:** | image001.gif |

Toni:

Magistrate Judge Wilner indicated that we should look for a solution to the parties' deposition scheduling dispute to avoid the need for motion practice on our *ex parte* application for a protective order.  To that end, we are willing to make one more attempt to work with you, if you can tell us with specificity what information Atlantic claims it needs regarding "why" UCP left Israel, in order to file its MSJ.  Based on what you say Atlantic needs, we will see if there is any reasonable solution we can discuss with you which would moot your demand to depose Mark Binke and Randi Richmond prior to the 24th.

With respect to the date upon which UCP decided to leave Israel, Plaintiffs' supplemental response to Interrogatory No. 25 will provide that information.  We believe we will be in a position to serve that response tomorrow.

Also, given the timing, please confirm that whatever your current position is regarding Atlantic's need for the depositions of Mark Binke and Randi Richmond prior to the MSJ filing deadline, the April 14 and 17 deposition dates are off calendar, so that the parties can continue to look for a resolution along the lines of Judge Wilner's suggestion.

Dan



**Daniel M. Hayes** | **Partner, through his professional corporation**
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

EXHIBIT 27  PG.  213

# EXHIBIT 28

| | |
|---|---|
| **From:** | Reed, Toni |
| **To:** | Hayes, Daniel; Coyoca, Lucia; Shalamitski, Valentine |
| **Cc:** | Keeley, Michael; Crapster, Carla |
| **Subject:** | UPC v. Atlantic - Letter to Dan Hayes - Binke and Richmond Depositions |
| **Date:** | Wednesday, April 12, 2017 11:54:33 AM |
| **Attachments:** | Letter to Dan Hayes - Binke and Richmond Depositions.pdf |

Counsel,

Please see the attached letter, in response to Dan's email of 8:17 p.m. last evening, regarding the outstanding issues of the noticed depositions.

Best regards,
Toni Scott Reed

**Toni Scott Reed** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.4345 • Fax 214.659-4091 • Strasburger.com

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

**EXHIBIT 28  PG.  215**

# Strasburger
ATTORNEYS AT LAW

April 12, 2017

TONI SCOTT REED
(214) 651-4345
Direct Fax (214) 659-4091
Toni.Reed@strasburger.com

**Via Email**

Mr. Daniel M. Hayes
Mitchell Silberberg Knupp LLP
11377 W. Olympic Boulevard
Los Angeles, CA 90064

Re:     *Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*; Case No. 2:16-cv-04435-PA-MRW, pending in the United States District Court for the Central District of California, Western Division

Dear Daniel:

I've received you email addressing the depositions of Mr. Binke and Ms. Richmond (as well as the 30(b)(6) corporate representative on the two designated subjects). These depositions have been noticed for April 14 and April 17, and we have continued to respond to your requests for conference about them.  We wrote to you last Friday to address your requests.  You stated to us on Friday and on Monday (and also mentioned to the Magistrate) that plaintiffs planned to file an ex parte application on the issues.  However, you have sought no relief.

We agree that the Magistrate discussed the fact that he thought there could be ways that the parties could address the issues, including providing the witnesses for some period of time, using technology to produce the witnesses, providing statements by lawyers, or otherwise providing the facts, but plaintiffs have not proposed any of those.  Rather, you have waited until after close of business on Tuesday to ask us to again state our position.  This is very disappointing.

Regarding your email of 8:17 p.m. (central time) last night, we continue to state that we need the testimony of the two witnesses (as fact witnesses and as corporate representative on the two designated topic).  We genuinely would like to resolve the discovery dispute, but we need to discuss the issues with our client.  In light of the Easter holiday, and the upcoming depositions, this likely would take until Monday to fully address.

**Strasburger & Price, LLP**

901 Main Street, Suite 6000 | Dallas, Texas 75202.3794 | 214.651.4300 tel | 214.651.4330 fax | www.strasburger.com
Austin | Collin County | Dallas | Houston | San Antonio | New York, N.Y. | Washington, D.C. | Mexico City - Strasburger & Price, SC

**EXHIBIT 28  PG.  216**



Mr. Daniel M. Hayes
April 12, 2017
Page 2

Regarding the Binke and Richmond depositions (and corporate representative on the two designated topics), we will agree to postpone those beyond the summary judgment filing deadline, on the condition that plaintiffs provide the following in the form of a stipulation, which will be used in connection with the motion for summary judgment:

1.   Plaintiffs agree to the authentication of the documents produced to Atlantic in the lawsuit (including the designated Aon documents we specified yesterday).

     Atlantic will do the same regarding the documents it produced.

     We assume this is no issue given the representation made by Ms. Coyoca to the Magistrate on Monday, but so far you have not confirmed this.

2.   Plaintiffs identify the date and the time of day the decision was made to move the production of *DIG* out of Israel due to the hostilities occurring, and the names of the persons involved in the decision.

3.   Plaintiffs state that the decision to move the production of *DIG* out of Israel was based, at least in part, on the facts described about the conflict that were stated in the various Max Security Intelligence Updates (as produced to Atlantic in this lawsuit) and the information communicated by Stephen Smith to representatives of NBCU (including the plaintiffs).

4.   Plaintiffs agree that the documents Atlantic decides to use in support of its motion for summary judgment (which will be those out of the list provided yesterday) may be filed publicly, and no be required to be filed under seal.

     On this point, we are, of course, willing to discuss any redactions you believe are necessary.

We suggest discussing the above today at 3:00 p.m. central/1:00 p.m. pacific.  Please let me hear from you.

We look forward to working to resolve all these outstanding matters, as set forth in the terms of this letter.

**EXHIBIT 28  PG.  217**



Mr. Daniel M. Hayes
April 12, 2017
Page 3

As the remaining time before the noticed depositions is short, we will need to
proceed to resolution very quickly on all these items.

Very truly yours,

Toni Scott Reed

cc:     Mr. Michael Keeley
        Ms. Carla Crapster

**EXHIBIT 28  PG.  218**

# EXHIBIT 29

| | |
|---|---|
| **From:** | Reed, Toni |
| **To:** | Hayes, Daniel; Coyoca, Lucia; Shalamitski, Valentine |
| **Cc:** | Keeley, Michael; Crapster, Carla |
| **Subject:** | UCP v. Atlantic - Depositions |
| **Date:** | Wednesday, April 12, 2017 3:24:57 PM |

Dan,

I thank you for the time on the telephone today in regard to my letter of April 12, addressing the depositions for Binke and Richmond. We are certainly looking for a way to resolution, which will permit us to have the necessary information ahead of the summary judgment briefing deadline. I do not have any ability to get further authorization today for any other adjustments. The noticed dates are Friday (4/14) and Monday (4/17). We will be filing the Application for Leave to File Documents Under Seal (addressing the documents you stamped as "Confidential") on Friday, if we have not reached agreement on those documents. I'm traveling and in other meetings tomorrow, beginning at 6:00 a.m. my time. Accordingly, if we can have the response on these matters from your clients tonight, that will be helpful.

Best regards,
Toni Scott Reed

**Toni Scott Reed** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.4345 • Fax 214.659-4091 • Strasburger.com

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

**EXHIBIT 29  PG.  220**

# EXHIBIT 30

| | |
|---|---|
| **From:** | Reed, Toni |
| **To:** | Hayes, Daniel; Coyoca, Lucia; Shalamitski, Valentine |
| **Cc:** | Keeley, Michael; Crapster, Carla |
| **Subject:** | UCP v. Atlantic - Travel Ahead of Friday |
| **Date:** | Wednesday, April 12, 2017 5:06:44 PM |

Dan,

Last from me this evening on depositions:  our travel arrangements for the Friday noticed depositions mean counsel will head to the airport by 11:00 a.m. central/9:00 a.m. pacific time tomorrow morning.  Please advise before then regarding the Binke deposition.

Best regards,
Toni Scott Reed

**Toni Scott Reed** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.4345 • Fax 214.659-4091 • Strasburger.com

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

**EXHIBIT 30  PG.  222**

# EXHIBIT 31

| From: | Hayes, Daniel |
|---|---|
| To: | "Reed, Toni"; Coyoca, Lucia; Shalamitski, Valentine |
| Cc: | Keeley, Michael; Crapster, Carla |
| Subject: | RE: UCP v. Atlantic - Depositions |
| Date: | Wednesday, April 12, 2017 7:06:54 PM |
| Attachments: | image001.gif |

Toni,

This email follows our two telephone conversations this afternoon.  As I told you we would during our first conversation, we have reviewed and considered the letter you sent today at 11:54 a.m., in which you identified the information that Atlantic now claims it needs prior to filing its MSJ.  We address your proposal in the order you presented it in your letter today.

1.   Plaintiffs are willing to stipulate that the documents they have produced in this case are authentic and will agree to not challenge the authenticity of the documents AON has produced, provided that Atlantic likewise stipulates that the documents it has produced are authentic and agrees to not challenge the authenticity of the documents that Plaintiffs or AON have produced.

2.   As I noted in my email to you yesterday, Plaintiffs' supplemental response to Interrogatory No. 25 will address the date upon which UCP decided to leave Israel.  You will have that supplemental response tonight.  You have made no showing whatsoever why the "time of day" the decision was made (or any of the other information you have demanded, for that matter) is relevant to an issue that is resolvable on a motion for summary judgment.  You have never asked for this detail before, and it is highly unreasonable for you to request it now, at the eleventh hour.  If you intend to stand on this portion of your demand, unfortunately, we cannot avoid our *ex parte* application to the Magistrate Judge, which we are filing this evening, as I told you during our second call this afternoon.

3.   Your request that Plaintiffs stipulate "that the decision to move the production of *DIG* out of Israel was based, at least in part, on the facts described about the conflict that were stated in the various Max Security Intelligence Updates … and the information communicated by Stephen Smith to representatives of NBCU (including the plaintiffs)" is vague, uncertain, and in any event, unnecessary.  Plaintiffs have already identified the documents that evidence the factual basis for their decision to move the production out of Israel in response to Interrogatory No. 25.  Please refer to that response.   Moreover, to the extent Atlantic feels it needs to inquire further about the "Max Security Intelligence Updates" or "information communicated by Stephen Smith," as you know, you are taking the deposition of Mr. Smith on Tuesday, April 18.

4.   As I said in our call this afternoon, your last-minute demand that Plaintiffs stipulate that Atlantic may submit dozens of documents that Plaintiffs have designated confidential "publicly" and not under seal with its MSJ, as a condition of Atlantic's proposal to resolve our deposition scheduling dispute, is a highly inappropriate attempt to use Atlantic's unilateral deposition notices as leverage on an issue that has absolutely

EXHIBIT 31  PG.  224

nothing to do with deposition scheduling.  Our office is diligently reviewing the lengthy list of documents you sent *yesterday*, and will respond in due course.  But we will not be forced into a rushed concession on such an important issue.

During our first conversation this afternoon, you proposed that the parties consider deeming the deposition of Mark Binke – which Atlantic unilaterally noticed for April 14 – to be noticed for April 19.  You said that you did not have authority to formally make this proposal, but that you were "thinking creatively."  While April 19 does not work either, I agreed that this would provide the parties additional time to try to work out an informal resolution, as Magistrate Judge Wilner asked us to do, and would present the proposal to my clients.  But during our second call later this afternoon, you confirmed what was implicit in your email below – your client has *not* given you authority to agree that the unilaterally noticed April 14 date be deemed April 19 for the purpose of facilitating further discussions, and that Atlantic is standing on its unilaterally noticed April 14 date.

As I said during our second call, this is unfortunate because now we have no choice but to file our *ex parte* application for a protective order tonight.  Please let us know ASAP if you reconsider the substantive positions you staked out in your letter and emails today.  We are willing to withdraw the *ex parte* application if the parties resolve the scheduling dispute before Atlantic's opposition is due tomorrow, but we cannot hold off filing any longer given Atlantic's refusal to stand down on the April 14 date and your indication that you are otherwise occupied and not available to discuss the deposition scheduling further tomorrow.

Regards,

Dan



**Daniel M. Hayes | Partner, through his professional corporation**
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP | www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Reed, Toni [mailto:Toni.Reed@strasburger.com]
**Sent:** Wednesday, April 12, 2017 3:25 PM
**To:** Hayes, Daniel; Coyoca, Lucia; Shalamitski, Valentine
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** UCP v. Atlantic - Depositions

Dan,

I thank you for the time on the telephone today in regard to my letter of April 12, addressing the

**EXHIBIT 31  PG.  225**

depositions for Binke and Richmond.  We are certainly looking for a way to resolution, which will permit us to have the necessary information ahead of the summary judgment briefing deadline.  I do not have any ability to get further authorization today for any other adjustments.  The noticed dates are Friday (4/14) and Monday (4/17).  We will be filing the Application for Leave to File Documents Under Seal (addressing the documents you stamped as "Confidential") on Friday, if we have not reached agreement on those documents.  I'm traveling and in other meetings tomorrow, beginning at 6:00 a.m. my time.  Accordingly, if we can have the response on these matters from your clients tonight, that will be helpful.

Best regards,
Toni Scott Reed

**Toni Scott Reed** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.4345 • Fax 214.659.4091 • Strasburger.com

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

**EXHIBIT 31  PG.  226**

# EXHIBIT 32

**Ocubillo, Melanie**

| | |
|---|---|
| **From:** | Hayes, Daniel |
| **Sent:** | Wednesday, April 12, 2017 9:18 PM |
| **To:** | 'Reed, Toni'; Coyoca, Lucia; Shalamitski, Valentine |
| **Cc:** | Keeley, Michael; Crapster, Carla |
| **Subject:** | RE: UCP v. Atlantic |

Toni,

You have known for weeks that these two deponents would not be produced on Good Friday and the Monday after Easter (dates that you unilaterally noticed), and it is disingenuous of you to suggest otherwise.  It is also disingenuous to omit from your email the reason why we deferred the filing of our *ex parte* application for a protective order – because Judge Wilner asked the parties to try to work out these issues without requiring Court involvement. We have attempted to do so in good faith.  Unfortunately, Atlantic has not.  We have engaged in extensive meet-and-confer efforts on these issues despite the fact that (i) Atlantic has still *never* explained how any of the information it seeks is relevant to an issue that is resolvable on summary judgment, and (ii) the District Court specifically rejected Atlantic's argument that it needs additional discovery before it files its MSJ, which your office has acknowledged turns on contract interpretation issues *of law*.

The record speaks for itself on these issues.  As I said in my last email to you, if Atlantic reconsiders the unreasonable positions it has asserted and we are able to resolve the deposition scheduling dispute, we will withdraw our *ex parte* application for a protective order. If it does not, it is unfortunate but we will need to have Judge Wilner resolve the dispute.

As to Atlantic's proposal regarding the authenticity of documents, as you know, I responded earlier this evening.

With respect to Ms. Garber, I am informed that a 9 a.m. start time will be inconvenient for her.  But, we will inform her that you are demanding that she appear at 9:00 a.m.  If it is not possible, we will let you know.  Otherwise, we will be prepared to start at 9 a.m.

With respect to Ms. Phillips' deposition, the deposition notice specified a 10 a.m. start time, and we will begin at 10 a.m.

Please confirm the 10 a.m. start for Stephen Smith's deposition.

All rights are reserved.

Dan

**msk**

**Daniel M. Hayes | Partner, through his professional corporation**
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP | www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**EXHIBIT 32  PG.  228**

**From:** Reed, Toni [mailto:Toni.Reed@strasburger.com]
**Sent:** Wednesday, April 12, 2017 7:13 PM
**To:** Hayes, Daniel; Coyoca, Lucia; Shalamitski, Valentine
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** UCP v. Atlantic

Dan,

Thank you for the phone call tonight.  You have advised me that plaintiffs will file an ex parte application tonight (April 12) regarding the depositions of Mark Binke and Randi Richmond (as fact witnesses and as corporate representatives on 2 topics noted), long noticed for April 14 and April 17.

You have been threatening to file such a motion now for some time, and we have continued to tell you that, unless we can agree upon other dates ahead of the summary judgment deadline (which you have refused to offer) or reach a stipulation as to certain testimony of the witnesses (as proposed today),  we must go forward with these depositions.  To now inform us less than 48 hours before the depositions, after we have been required to secure travel arrangements, with regard to depositions set on Good Friday and Easter Monday, is beyond reason.   It is Atlantic's position that the mere filing of an ex parte motion does not relieve you of your obligation to produce your witnesses on Friday and Monday.  Therefore, we intend to appear for both depositions, Friday and Monday, unless you tell us, before we get on our flights, that you will not produce the witnesses.  (Alternatively, please confirm your agreement to the proposed stipulation we provided earlier today. )

Only if you tell us you are not producing the witnesses on Friday and Monday, before the required counsel leave for the airport tomorrow by 11:00 a.m. central time (9:00 a.m. pacific), will we cancel the travel to appear for Mr. Binke's deposition and Ms. Richmond's deposition.   But, suffice it to say, we reserve all of our rights if you continue to refuse to produce these witnesses, including any and all appropriate relief for the failure to produce them.

On a related issue in regard to the Binke and Richmond depositions, Ms. Coyoca indicated to Magistrate Judge Wilner on Monday that you would stipulate to the authenticity of documents, yet you have not responded to our various requests to confirm that agreement.  Please confirm so that such a point does not require further discussions with the Magistrate.

Finally, this morning we received a last minute request to change the start time of Ms. Garber's deposition from 9 am to 10 a.m.  Because of travel obligations, we cannot start at 10 a.m.  Please present Ms. Garber to start her deposition at 9:00 a.m.  As you are aware, the court reporter and videographer will need to arrive sufficiently early, so we assume someone will be at your offices by 8:15 a.m. to let them in.  We intend to be there at that time also.

In regard to Ms. Phillips next week, she would prefer to begin at 9:00 a.m., as she will have a difficult time staying late, and needs for the deposition to be concluded at a reasonable hour.

Best Regards,
Toni Scott Reed

**EXHIBIT 32  PG.  229**

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

**EXHIBIT 32  PG.  230**

# EXHIBIT 33

**Ocubillo, Melanie**

---

| | |
|---|---|
| **From:** | Hayes, Daniel |
| **Sent:** | Wednesday, April 12, 2017 9:18 PM |
| **To:** | 'Reed, Toni'; Coyoca, Lucia; Shalamitski, Valentine |
| **Cc:** | Keeley, Michael; Crapster, Carla |
| **Subject:** | RE: UCP v. Atlantic - Depositions |

Toni, please see my prior email.  Your last comment has nothing to do with your new request for the "time of day" that UCP made the decision to move production out of Israel.  You did raise the "time of day" concept in connection with a completely different issue – Plaintiffs' assertion that they anticipated litigation after the July 17, 2014 telephone call with Pamela Johnson in which, according to Ms. Gooley, Ms. Johnson said the Dig Claim would be denied based on the war exclusion.  You did not previously request the "time of day" Plaintiffs decided to move the production out of Israel.  On the contrary, Interrogatory No. 25 asks Plaintiffs to identify the *date* upon which UCP decided to move production out of Israel.  You now have our supplemental response to Interrogatory No. 25.



**Daniel M. Hayes | Partner, through his professional corporation**
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp LLP | www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

---

**From:** Reed, Toni [mailto:Toni.Reed@strasburger.com]
**Sent:** Wednesday, April 12, 2017 7:45 PM
**To:** Hayes, Daniel; Coyoca, Lucia; Shalamitski, Valentine
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** RE: UCP v. Atlantic - Depositions

Dan,

Our emails have crossed this evening.

Please confirm in regard to mine, prior to travel time.

Thank you for the agreement in point 1 below regarding the authentication of the plaintiff/AON documents.  We had stated our position on our agreement to stipulate to authenticity of the Atlantic documents in my prior correspondence.  We acknowledge resolution by your statement to us.

The remainder of your email is under review.

Please note that the issue of time of day for the decision to move production out of Israel has been raised in the context of discovery meet-and-confers, where plaintiffs claim anticipation of litigation on July 17.  We have previously pointed out to you and discussed with you the fact that plaintiffs produced documents from early morning on July 17, and then withheld documents from later in the day.  We have raised the question regarding timing, and you can address it easily

**EXHIBIT 33  PG.  232**

as proposed.  Based upon your decisions on claim of privilege, it appears that that issue has already been reviewed and determined.

Best regards,
Toni Scott Reed

---

**From:** Hayes, Daniel [mailto:dmh@msk.com]
**Sent:** Wednesday, April 12, 2017 9:07 PM
**To:** Reed, Toni; Coyoca, Lucia; Shalamitski, Valentine
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** RE: UCP v. Atlantic - Depositions

Toni,

This email follows our two telephone conversations this afternoon.  As I told you we would during our first conversation, we have reviewed and considered the letter you sent today at 11:54 a.m., in which you identified the information that Atlantic now claims it needs prior to filing its MSJ.  We address your proposal in the order you presented it in your letter today.

1.    Plaintiffs are willing to stipulate that the documents they have produced in this case are authentic and will agree to not challenge the authenticity of the documents AON has produced, provided that Atlantic likewise stipulates that the documents it has produced are authentic and agrees to not challenge the authenticity of the documents that Plaintiffs or AON have produced.

2.    As I noted in my email to you yesterday, Plaintiffs' supplemental response to Interrogatory No. 25 will address the date upon which UCP decided to leave Israel.  You will have that supplemental response tonight.  You have made no showing whatsoever why the "time of day" the decision was made (or any of the other information you have demanded, for that matter) is relevant to an issue that is resolvable on a motion for summary judgment.  You have never asked for this detail before, and it is highly unreasonable for you to request it now, at the eleventh hour.  If you intend to stand on this portion of your demand, unfortunately, we cannot avoid our *ex parte* application to the Magistrate Judge, which we are filing this evening, as I told you during our second call this afternoon.

3.    Your request that Plaintiffs stipulate "that the decision to move the production of *DIG* out of Israel was based, at least in part, on the facts described about the conflict that were stated in the various Max Security Intelligence Updates … and the information communicated by Stephen Smith to representatives of NBCU (including the plaintiffs)" is vague, uncertain, and in any event, unnecessary.  Plaintiffs have already identified the documents that evidence the factual basis for their decision to move the production out of Israel in response to Interrogatory No. 25.  Please refer to that response.   Moreover, to the extent Atlantic feels it needs to inquire further about the "Max Security Intelligence Updates" or "information communicated by Stephen Smith," as you know, you are taking the deposition of Mr. Smith on Tuesday, April 18.

4.    As I said in our call this afternoon, your last-minute demand that Plaintiffs stipulate that Atlantic may submit dozens of documents that Plaintiffs have designated confidential "publicly" and not under seal with its MSJ, as a condition of Atlantic's proposal to resolve our deposition scheduling dispute, is a highly inappropriate attempt to use Atlantic's unilateral deposition notices as leverage on an issue that has absolutely nothing to do with deposition scheduling.  Our office is diligently reviewing the lengthy list of documents you sent *yesterday*, and will respond in due course.  But we will not be forced into a rushed concession on such an important issue.

**EXHIBIT 33  PG.  233**

During our first conversation this afternoon, you proposed that the parties consider deeming the deposition of Mark Binke – which Atlantic unilaterally noticed for April 14 – to be noticed for April 19.  You said that you did not have authority to formally make this proposal, but that you were "thinking creatively."  While April 19 does not work either, I agreed that this would provide the parties additional time to try to work out an informal resolution, as Magistrate Judge Wilner asked us to do, and would present the proposal to my clients.  But during our second call later this afternoon, you confirmed what was implicit in your email below – your client has not given you authority to agree that the unilaterally noticed April 14 date be deemed April 19 for the purpose of facilitating further discussions, and that Atlantic is standing on its unilaterally noticed April 14 date.

As I said during our second call, this is unfortunate because now we have no choice but to file our *ex parte* application for a protective order tonight.  Please let us know ASAP if you reconsider the substantive positions you staked out in your letter and emails today.  We are willing to withdraw the *ex parte* application if the parties resolve the scheduling dispute before Atlantic's opposition is due tomorrow, but we cannot hold off filing any longer given Atlantic's refusal to stand down on the April 14 date and your indication that you are otherwise occupied and not available to discuss the deposition scheduling further tomorrow.


Regards,


Dan


**msk**

**Daniel M. Hayes** | **Partner, through his professional corporation**
T: 310.312.3216 | dmh@msk.com
**Mitchell Silberberg & Knupp** **LLP** | **www.msk.com**
11377 W. Olympic Blvd., Los Angeles, CA 90064

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Reed, Toni [mailto:Toni.Reed@strasburger.com]
**Sent:** Wednesday, April 12, 2017 3:25 PM
**To:** Hayes, Daniel; Coyoca, Lucia; Shalamitski, Valentine
**Cc:** Keeley, Michael; Crapster, Carla
**Subject:** UCP v. Atlantic - Depositions

Dan,

I thank you for the time on the telephone today in regard to my letter of April 12, addressing the depositions for Binke and Richmond.  We are certainly looking for a way to resolution, which will permit us to have the necessary information ahead of the summary judgment briefing deadline.  I do not have any ability to get further authorization today for any other adjustments.  The noticed dates are Friday (4/14) and Monday (4/17).  We will be filing the Application for Leave to File Documents Under Seal (addressing the documents you stamped as "Confidential") on Friday, if we have not reached agreement on those documents.  I'm traveling and in other meetings tomorrow, beginning at 6:00 a.m. my time.  Accordingly, if we can have the response on these matters from your clients tonight, that will be helpful.

Best regards,
Toni Scott Reed

**Toni Scott Reed** • Strasburger & Price, LLP
901 Main Street, Suite 6000, Dallas, TX 75202
214.651.4345 • Fax 214.659-4091 • Strasburger.com

**EXHIBIT 33  PG.  234**

*This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.*

**EXHIBIT 33  PG.  235**

# EXHIBIT 34



A Member of OneBeacon Insurance Group

Pamela A. Johnson
Assistant Vice President
One Beacon Entertainment
601 Carlson Parkway, Suite 600
Minnetonka, MN  55305

July 28, 2014

**VIA EMAIL: Andrea.Garber@nbcuni.com**

Andrea Garber
NBC Universal Media
30 Rockefeller Plaza, 2nd Floor
New York, NY  10112

RE:    **Claim Number:**           **OBI 66746**
          **Insured:**                 **NBC Universal Media, LLC**
          **Policy Number:**         **MP00163-04**
          **Date of Loss:**           **July 10, 2014**
          **Type of Loss:**           **Extra Expense**
          **Underwriting Co.:**       **Atlantic Specialty Insurance Company**

Dear Andrea:

This letter is to memorialize the information I provided to you in our telephone conversations last week.  As I explained, we have evaluated NBCU's decision to move its production of the television series *DIG* from Israel to the United States or another country due to the imminent peril created by the escalated conflict between Israel and Hamas.  We have concluded that the extra expense associated with the move is not covered under policy number MP00163-04 because the loss is not covered due to the exclusion for war and warlike actions.  Our decision is based on information gathered about the situation in Israel, case law, and treatises.  We also consulted with counsel. A more detailed explanation of our decision is provided below.

**BACKGROUND FACTS**

On Thursday, July 10th, 2014, NBCU contacted Peter Williams, the President of OneBeacon Entertainment (OBE) and orally submitted a claim for extra expenses associated with a production delay caused by the heightened violence in that country.  At the time, the production was shooting in Tel Aviv and Jerusalem.  On Tuesday, July 7th, Hamas began firing rockets into those cities, which had not been the target of rocket attacks since 2012.  Claiming that its personnel were in "imminent peril," the producers advised that they would push production by one week.  This decision was based on reports from personnel in Tel Aviv and an email to the production dated July 10, 2014, from Stephen Smith, the head of NBCU security for Europe, stating:

Andrea Garber
July 28, 2014
Page 3

> This is to advise you that the security environment in Israel currently prohibits NBCU Security from being able to guarantee the safety and security of our employees, production partners and associated crew and talent.
>
> NBCU Security have monitored and evaluated the events in Israel, Gaza and the West Bank, since inception and analyzed information from multiple sources.  All current intelligence and activity in country points to events still being in escalation phase without a predictable or realistic timeframe for a reduction in hostilities.  We have looked at the magnitude and range, of current rocket attacks (which appear to target locations to be used in forthcoming filming), the escalation of civil disorder and potential for a further increase in hostilities including a ground campaign and acts of terrorism within Israel, all of which mean there is no short term and realistic likelihood for positive changes to the security landscape.
>
> As the situation is unlikely to change, this raises significant concern over the level of risk facing our crew and talent, and the liability over duty of care to which NBCUniversal would be exposed.  There are no current security controls that would allow NBCU Security to guarantee the safety and security of our personnel planning to arrive or currently based in Israel without the prospect of serious injury or loss of life. Personnel based in country in relation to this production should make arrangements to leave.

On Monday, July 14th, NBCU finalized its decision to push the production for one week and you communicated its decision to OBE in a telephone call with me, Danny Gutterman and NBC's broker, Susan Weiss.  In that conversation, you also mentioned that if the hostilities did not deescalate, there was a chance that NBCU would decide to move the production to another country or back to the United States.  We asked to be kept informed and we scheduled another call for Friday, July 18th.

In the meantime, the hostilities between Israel and Hamas worsened.  On Tuesday, July 15th, Hamas refused to agree to a cease-fire suggested by Egypt.  In response, Israeli President Netanyahu gave the military authorization to use "full force" against militants in Gaza stating, "Hamas chose to continue fighting and will pay the price for that decision. . . . When there is no cease-fire, our answer is fire."

According to the Washington Post, citing Israeli news reports, "by early Wednesday morning, Israel had struck at least 25 targets inside Gaza, including the home of a senior Hamas leader, Mahmoud Al Zahar.  Hamas militants fired at least 13 rockets into southern Israel, seven of which were intercepted by Israel's Iron Dome air defense system."  Israel then called up an additional 18,000 reservists and announced plans for a ground attack on Gaza.  Israel dropped leaflets into Gaza warning the population to evacuate.  On Thursday, Israel began a ground invasion into Gaza, including the use of tanks and gunboats.

ATL001860

**EXHIBIT 34  PG.  238**

Andrea Garber
July 28, 2014
Page 3

On Thursday afternoon, we had another telephone conversation which included Danny Gutterman and Susan Weiss.  In this conversation, you informed us that NBCU had decided to move the production due to the ongoing hostilities which were creating dangerous conditions in Tel Aviv and Jerusalem.  I informed you that we were seriously considering whether the exclusion for war and warlike actions would preclude coverage for the claim.  Peter Williams had informed Susan Weiss the night before that we were evaluating whether the exclusion would apply to the situation in Israel.  You and Susan Weiss both protested, asserting that the situation in Israel did not constitute a war because Hamas was a terrorist organization, not a governmental authority and that there had been no formal declaration of war.  I informed you that we were still considering the matter and we would get back to you on Monday, July 21st with our final decision.  At that time, I informed you that our final decision was to exclude the claim based on the exclusion, but as a courtesy, we would cover the expenses related to the initial push in production.

**PERTINENT POLICY PROVISIONS**

OneBeacon, through Atlantic Specialty Insurance Company, issued policy no. MP00163-04 to NBCUniversal Media, LLC, effective from January 1, 2014, to June 30, 2015.  That policy contains extra expense coverage, which includes the following pertinent provisions:

I.  **INSURING AGREEMENT**

We agree to pay to you such loss (as defined in Paragraph VII) not including loss of earnings or profit, as you sustain by reason of such extra expense you necessarily incur as a result of the interruption, postponement, cancellation, relocation, curtailment or abandonment of an Insured Production due to the following:

1.  The loss must be a direct result of an unexpected, sudden or accidental occurrence entirely beyond your control to include:

* * *

g)  Imminent peril, defined as certain, immediate and impending danger of such probability and severity to person or property that it would be unreasonable or unconscionable to ignore.

h)  Any expenses incurred to avoid a loss imminent peril are covered to the extent that they serve to avoid a loss otherwise covered.

2.  Except as provided above, this extension does not negate the applicability of the basic terms and conditions of:

a)   The Extra Expense Coverage in the event that an imminent peril results in damage to or destruction of property or facilities payable under this policy . . .

The policy's General Conditions contain the following exclusion applicable to all sections of the policy:

This policy does not insure against loss or damage caused directly or indirectly by:

1.   War, including undeclared or civil war; or

2.   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3.   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

4.   Any weapon of war including atomic fission or radioactive force, whether in time of peace or war;

* * *

8.   Any uninsured event occurring before, concurrently with or after the happening of an insured event, which directly or indirectly causes or in any way contributes to cause or increase a loss under this policy; but only with respect to that portion of any such loss caused by or contributed to by the uninsured event, unless the uninsured event would not have been a factor had such insured event never occurred.

The policy contains coverage for Certified Acts of Terrorism.  The term "certified act of terrorism" is defined as follows:

An act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:

1.   The act resulted in aggregate losses in excess of $5 million; and

ATL001862

EXHIBIT 34  PG.  240

Andrea Garber
July 28, 2014
Page 3

2.    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. . . .

## ANALYSIS

### *Imminent Peril*

Based on Mr. Smith's email to the production and what we know about the present conflict, we believe that the extra expenses that will be incurred to move the production out of Israel will be due to imminent peril.  Rockets launched toward areas where filming is taking place would no doubt reasonably constitute a "certain, immediate and impending danger of such probability and severity to person or property that it would be unreasonable or unconscionable to ignore."  With hostilities increasing, there remains a certain, immediate and impending danger.  The question now is not whether the loss falls within the insuring clause but whether the war exclusion or the terrorism coverage applies.

### *Terrorism Coverage*

The terrorism coverage should not apply because, under its terms, the act must be part of an effort to coerce or influence the United States population or government.  The acts being carried out in Israel are part of a long-term dispute between Hamas and Israel. The focus is not the United States or its policy.  Moreover, the U.S. Secretary of the Treasury has not certified the events as acts of terrorism.  Thus, we do not believe the terrorism coverage would apply.

### *War Exclusion*

The key question is whether the hostilities causing the imminent peril will be considered to be a war, or warlike action by a military force.  Case law and other treatises indicate that this would be the likely finding.  Therefore, the war exclusion should apply.

#### *War*

Subparagraph 1 of the war exclusion states that no coverage is provided for loss or damage caused directly or indirectly by "war, including undeclared . . . war."  Statutes defining "war" in various contexts, and cases that have interpreted war exclusions in insurance policies, provide assistance in determining whether the loss presented here was caused by war.

In *Wilkinson v. Equitable Life Assurance Soc.*, 2 Misc. 2d 249 (N.Y. Mun. Ct. 1956), considered whether the Korean conflict in the 1950s was a war even though it was not a declared war:

We must take the view that words are to be taken in their plain, ordinary, popular sense and that they are to be considered as they would be understood by the average man. "Contracts of insurance are to be construed according to the sense and meaning of the

ATL001863

EXHIBIT 34  PG.  241

> terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense." [Citation.]
>
> The likelihood of death by external, violent and accidental means is immeasurably increased by military service in time of war. . . . Our courts have held it to be entirely proper for an insurer to limit its liability in situations involving war risks. [Citation.]
>
> While it is true that there was no formal declaration of war by Congress, there can be no doubt that the United States was engaged in a war in Korea as an actual fact.

*Id.*, at 251.  The court cited a 1951 Attorney General opinion finding that "[t]he magnitude and actuality of the conflict in Korea, its pervading effect upon the national security and interest, together with the demands created thereby upon the nation as a whole are too apparent to need recounting. . . . They require the conclusion that the Korean hostilities constitute a war for the purpose of determining eligibility under Military Law, Section 210, for the assistance intended thereby for war veterans disabled by blindness."  *Id.* at 251-252.

Appleman on Insurance discusses exclusions for war, including the meaning of war and similar terms.  "War is 'a course of hostility' between 'states or state-like entities.'  To constitute a de facto state, a group must have 'significant attributes of sovereignty' and the application of this exclusion is fact-specific."

Black's Law Dictionary defines a "war" as a "[h]ostile conflict by means of armed forces, carried on between nations, states, or rulers, or sometimes between parties within the same nation or state."  8th ed. at 1614.  A leading dictionary of international law defines an "act of war" as a "use of force or other action by one state against another [which t]he state acted against recognizes . . . as an act of war, either by use of retaliatory force or a declaration of war."  James R. Fox, <u>Dictionary of International and Comparative Law</u>, 3d ed. (2003).  Another dictionary defines an "act of war" as "a measure of force which one party, using military instruments of power, implements against another party in an international armed conflict."  <u>The Handbook of Humanitarian Law in Armed Conflicts,</u> 49 (Dieter Fleck, ed., 1995).

Hamas has become the government of the Gaza Strip. Hamas has a military wing, the Qassam Brigades, as well as a force of police, security and intelligence personnel[1]  Our understanding is that it is Hamas's military wing that has carried out the attacks on Israel that led to NBCU's claim.  "Hamas directs the Gaza government and security forces through a self-appointed cabinet of Hamas ministers        . . ."[2]

Thus, although Gaza or Palestine is not a recognized nation, at least by most of the world, it does have some indicia of sovereignty.  It governs territory and it is this territory from which the attacks on Israel have come.  Hamas has a stated goal of destroying Israel and is using

---

[1] Zanotti, *Hamas: Background and Issues for Congress* (Congressional Research Service 2010).

[2] *Id.*, at p. 19.

ATL001864

**EXHIBIT 34  PG.   242**

Andrea Garber
July 28, 2014
Page 3

weapons in its quest.  Although the rockets are being fired into civilian areas, which may violate established norms of warfare and armed conflict under international law, this is not a situation where a single civilian, or group of civilians, is the target.  This conflict involves sophisticated military weapons fired from one territory into another country, Israel.  We believe that the only reasonable interpretation of what is occurring, and that has led to NBCU's action, is war or warlike action.

We note that NBCU affiliate company, MSNBC, has referred to the conflict as a war for the past several days. This should be considered in taking into account the insured's reasonable expectations.

### Warlike Action By A Military Force

Even if what occurred, and is occurring, would not be found to be a war, it is nevertheless a "warlike action." However, if this is the case, to be excluded under Subparagraph 2 of the exclusion, the warlike action must be by a "military force."  There is no question that one side of the conflict, the Israeli side, is a military force of a sovereign nation.  But if it is necessary that the military force must be the one firing rockets at the areas where the filming was occurring, we must determine whether Hamas is a military force.  As to this question, we believe that Hamas is a military force of a government, the government of Gaza. Even though many, including Israel and the United States, consider Hamas to be a terrorist group, it is the government of a territory that is involved in the conflict.  Hamas operates a military command in the Gaza Strip, a territory it has controlled since 2007.[3]  It operates its military force through self-appointed ministers.  *Id.*, at p. 19.  In light of the governmental structure within Gaza, the Hamas military in Gaza fits the definition of a military force.  The current structure represents a considerable evolution from the Hamas that carried out the isolated terrorist attacks in the 1990's and the first few years of the 21st century.

Thus, the only reasonable interpretation of the situation that led to NBCU's decision to postpone the *Dig* production and its ultimate decision to move the production from Israel is that the imminent peril that led to these decisions was caused by war, or warlike action by a military force.  As a result, we believe the war exclusion applies to this claim

### CONCLUSION

NBCU is a valued and respected client of OBE and we regret that we cannot be of more assistance in this situation.  Although we cannot cover the extra expense associated with the production's move to another country to complete production, based on our long relationship with NBC, we are willing to cover the expenses associated with the initial postponement as a courtesy.  Please submit the initial budget, the costs associated with the removal of personnel from Israel and an itemization of any payment made to personnel that NBCU was contractually obligated to pay from the date the decision was made to postpone production until July 17th, the date we informed you that the war exclusion would likely apply to this claim.

Pursuant to California Code of Regulations, you have the right to request a review of this matter by the California Department of Insurance. You may contact the Department at telephone number 1-800- 927-

---

[3] Zanotti, *Hamas: Background and Issues for Congress* (Congressional Research Service 2010).

4357, or you may write to the Department of Insurance, Claims Services Bureau, 300 S. Spring Street, Los Angeles, California  90013.

If you have any further questions, please don't hesitate to contact me.

Sincerely,

ATLANTIC SPECIALTY INSURANCE COMPANY

By:_____

     Pamela A. Johnson
     Assistant Vice President
     OneBeacon Entertainment

cc:    Susan Weiss (via email)
       Senior Vice President
       Aon/Albert G. Ruben Insurance Services, Inc.
       15303 Ventura Blvd., Suite 1200
       Sherman Oaks, CA  91403-5817