LUCIA E. COYOCA (SBN 128314)
   lec@msk.com
VALENTINE A. SHALAMITSKI (SBN 236061)
   vas@msk.com
DANIEL M. HAYES (SBN 240250)
   dmh@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone:  (310) 312-2000
Facsimile:  (310) 312-3100

Attorneys for Plaintiffs
Universal Cable Productions LLC and
Northern Entertainment Productions LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA -- WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>        Defendant. | CASE NO. 2:16-cv-4435-PA-MRW<br><br>The Honorable Percy Anderson<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Notice of Motion and Motion; Memorandum; Notice of Lodging Statement of Uncontroverted Facts and Conclusions of Law; Table of Contents of Evidence; Declarations of Andrea Garber, Kurt Ford, Randi Richmond, Matthew Levitt, Dennis Ross, Harold Koh, Ty Sagalow, and Lucia Coyoca; Request for Judicial Notice filed/lodged; and [Proposed] Order lodged concurrently herewith]<br><br>Date:        May 22, 2017<br>Time:        1:30 pm<br>Ctrm.:        9A, First St. Courthouse |

Plaintiffs Universal Cable Productions LLC ("UCP") and Northern Entertainment Productions LLC ("NEP") (collectively referred to herein as "Universal"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56 of the United States District Court for the Central District of California, move the Court for an order of partial summary judgment.  In support thereof, Universal states as follows:

## I.    STATEMENT OF UNCONTROVERTED FACTS

**A.    Atlantic breached the production insurance policy ("the Policy") as a matter of law, by denying coverage for the extra expenses incurred by Universal in postponing and relocating the production of the television show *Dig* out of Israel during the summer of 2014, based on inapplicable exclusions in the Policy (i.e., Exclusions 1, 2, 3, and 4 of the General Conditions, § III)**

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 1.     Defendant Atlantic Insurance Specialty Company ("Atlantic") is a OneBeacon Insurance Group company, which operates Atlantic and various OneBeacon entities. | First Amended Complaint ("FAC") ¶ 7 [attached as Ex. 18 to Declaration of Lucia Coyoca ("Coyoca Decl.")]; Defendant' Answer to First Amended Complaint ("Answer") ¶ 7 [attached as Ex. 19 to Coyoca Decl.]; Deposition of Peter Williams ("Williams Dep."), 103:2-105:3 [attached as Ex. 43 to Coyoca Decl.]; Coyoca Decl. ¶ 4, Ex. 20; Request for Judicial Notice ("RJN"), p. 4. |
| 2.     Atlantic issued its first of five production policies to NBCUniversal | Declaration of Andrea Garber ("Garber Decl.") ¶ 3; Declaration of Kurt Ford |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| Media, LLC ("NBCUniversal") effective as of January 1, 2010. | ("Ford Decl.") ¶ 3; FAC ¶17 [attached as Ex. 18 to Coyoca Decl.]; Answer ¶17 [attached as Ex. 19 to Coyoca Decl.]; Deposition of Peter Williams ("Williams Dep.") 58:14-18 [attached as Ex. 43 to Coyoca Decl.]; RJN p. 1. |
| 3.      The January 1, 2010 policy was issued after extensive negotiations. | Williams Dep. 58:14-59:20; 61:3-61:8 [attached as Ex. 43 to Coyoca Decl.]; Deposition of Susan Weiss ("Weiss Dep.") 27:15-25; 39:18-40:2; 50:7-51:2; 51:14-18; 63:17-21 [attached as Ex. 47 to Coyoca Decl.]. |
| 4.      The January 1, 2010 policy insured against certain risks commonly incurred in connection with television productions. | Garber Decl. ¶ 3; FAC ¶¶ 16, 17 [attached as Ex. 18 to Coyoca Decl.]; Answer ¶¶ 16, 17 [attached as Ex. 19 to Coyoca Decl.]. |
| 5.      The January 1, 2010 policy was renewed from year to year, until issuance of the policy at issue here, Motion Picture/Television Producers Portfolio Policy No. MP00163-04 (the "Policy"). | Garber Decl. ¶ 3; Ex. 2, p. 7-61 ("Policy"); FAC ¶¶ 16, 17 and Ex. A [attached as Ex. 18 to Coyoca Decl.]; Answer ¶16, 17 [attached as Ex. 19 to Coyoca Decl.]; Williams Dep. 74:6-12 [attached as Ex. 43 to Coyoca Decl.]; Weiss Dep. 34:2-17 [attached as Ex. 47 to Coyoca Decl.]; RJN p. 1. |
| 6.      The Policy had an eighteen month policy period, from January 1, 2014 to | Policy, Garber Decl. ¶3, Ex. 2, p. 7; Williams Dep. 74:6-20; 139:6-9 |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Mitchell
Silberberg &
Knupp LLP

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| June 30, 2015. | [attached as Ex. 43 to Coyoca Decl.]. |
| 7.    NBCUniversal Media LLC ("NBCUniversal") is the first named insured under the Policy. | Policy, Garber Decl. ¶3, Ex. 2, p. 7; Williams Dep. 74:6-12 [attached as Ex. 43 to Coyoca Decl.]. |
| 8.    UCP and NEP ("Universal") are production companies and indirect subsidiaries of NBCUniversal. | Ford Decl. ¶ 2. |
| 9.    UCP and NEP are Named Insureds under the Policy. | Garber Decl. ¶1; Policy, Garber Decl. ¶3, Ex. 2, pp. 7-61; Williams Dep. 74:6-12 [attached as Ex. 43 to Coyoca Decl.]. |
| 10.    The Extra Expense coverage of the Policy covers those expenses incurred in connection with interruption, postponement, or relocation of an Insured Production as a result of "imminent peril." | Policy, Section III – Extra Expense, § I, Garber Decl. ¶ 3, Ex. 2, p. 37; Williams Dep. 74:6-12 [attached as Ex. 43 to Coyoca Decl.]. |
| 11.    "Imminent peril" is defined in the Policy as "certain, immediate and impending danger of such probability and severity to person or property that it would be unreasonable or unconscionable to ignore." | Policy, Section III – Extra Expense, § I Garber Decl. ¶ 3, Ex. 2, p. 37; Williams Dep. 74:6-12 [attached as Ex. 43 to Coyoca Decl.]. |
| 12.    The Policy excludes from coverage losses caused by:<br>    1.  War, including undeclared or civil war; or<br>    2.  Warlike action by a military | Policy, General Conditions § III.1-4, Garber Decl. ¶ 3, Ex. 2, p. 17; Williams Dep. 74:6-12 [attached as Ex. 43 to Coyoca Decl.]. |

Mitchell Silberberg & Knupp LLP

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or,<br><br>3.  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.  Such loss or damage is excluded regardless of any other cause or event contributed concurrently or in any sequence to the loss.<br><br>4.  Any weapon of war including atomic fission or radioactive force, whether in time of peace or war…. | |
| 13.    The Policy does not expressly exclude losses caused by acts of terrorism. | Policy, Garber Decl. ¶ 3, Ex. 2, p. 7-61; Williams Dep. 74:6-12; 93:3-6; 94:4-7 [attached as Ex. 43 to Coyoca Decl.]. |
| 14.    Each NBCUniversal or UCP television show is added as an "Insured Production" on an individual basis. | Policy, General Conditions, Section II.A.(5), Garber Decl. ¶ 3, Ex. 2, pp. 7-61; Williams Dep. 74:6-12; 141:18-20 [attached as Ex. 43 to Coyoca Decl.]. Garber Decl. ¶ 5. |
| 15.    Aon/Albert G. Ruben Insurance Services, Inc. ("Aon") is NBCUniversal's insurance broker. | Garber Decl. ¶ 2; Policy, Garber ¶ 3, Ex. 2, p. 7; Williams Dep. 74:6-12 [attached as Ex. 43 to Coyoca Decl.]; Ford Decl. ¶ 3. |
| 16.    On December 11, 2013, Aon | Garber Decl. ¶¶ 7, 8, Ex. 4, pp. 65-66, |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| submitted an application to Atlantic for *Dig* to be added to the Policy as an Insured Production. | and Ex. 5, p. 67; Ford Decl. ¶ 3. |
| 17.    The application disclosed that production would take place in large part in Israel. | Garber Decl. ¶ 8, Ex. 5, p. 67. |
| 18.    Intermittent violence in Israel has occurred since the establishment of the State of Israel in 1948. | Declaration of Matthew Levitt ("Levitt Decl.") Ex. A (Expert Report of Dr. Matthew Levitt), pp. 7, 9. |
| 19.    In recent decades, a Palestinian group known as Hamas has conducted numerous terrorist attacks against Israel, "including shootings, suicide bombings, and standoff mortar-and-rocket attacks against civilian and military targets." | Coyoca Decl. ¶ 6, Ex. 22, p. 115; Levitt Decl. Ex. A, p. 21; RJN p. 3. |
| 20.    Hamas has been designated as a terrorist organization by the U.S. government since 1997. | Levitt Decl. Ex. A, p. 11; Declaration of Ambassador Dennis Ross ("Ross Decl.") Ex. B (Export Report of Amb. Dennis Ross), ¶¶ 10, 23; Declaration of Harold Koh ("Koh Decl.") Ex. C (Expert Report of Harold Koh), p. 16; Coyoca Decl. ¶¶ 5, 6, Exs. 21, 22; RJN pp.1-2. |
| 21.    In submitting *Dig* for coverage under the Policy, Andrea Garber, an Aon representative, informed Atlantic, *inter alia*, as follows: | Garber Decl. ¶ 9, Ex. 6, pp. 68-69. |

Mitchell Silberberg & Knupp LLP

5

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| • "While in Israel, the production will be based in Tel Aviv and the majority of filming will be done in that city.  Of the total 70 day shoot, approximately 20 days will involve shooting only on the west side of Jerusalem."<br><br>• "The NBCU Security team is already involved in the prepping of this project and they are meeting weekly with the production folks that are currently on board to discuss precautions and procedures that need to be taken as the project develops."<br><br>• "[T]he mayor of Jerusalem and the local police have been contacted and are assisting in assuring the safety of the production company when they are working in Jerusalem." | |
| 22.    Atlantic expressed concerns about safety and security precautions while filming in Israel. | Garber Decl. ¶¶ 7, 10, Ex. 4, pp. 65-66 and Ex. 8, p. 74; RJN p. 1. |
| 23.    Atlantic assessed the risks associated with production in Israel, and | Garber Decl. ¶¶ 9, 10, Ex. 6, pp. 68-69, and Ex. 7, pp. 70-73; Ex. 29 to |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Mitchell
Silberberg &
Knupp LLP

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| agreed to accept the *Dig* production as an Insured Production under the Policy. | Deposition of Daniel Gutterman ("Gutterman Dep.") [attached as Ex. 24 to Coyoca Decl.]; Williams Dep. 142:11-23; 144:13-147:3 [attached as Ex. 43 to Coyoca Decl.]; Gutterman Dep. 295:9-297:23 [attached as Ex. 44 to Coyoca Decl.]. |
| 24.   Universal implemented additional security for the production in Israel. | Garber Decl. ¶¶ 9, 10, 12, Ex. 6, pp. 68-69, and Ex. 7, pp. 70-73, and Ex. 9, pp. 77-78; Richmond Decl. ¶¶ 3, 6-8, Ex. 13, pp. 4-14, and Exs. 16-18; Gutterman Dep. Ex. 29 [attached as Ex. 24 to Coyoca Decl.]; Gutterman Dep. 295:9-297:23 [attached as Ex. 44 to Coyoca Decl.]. |
| 25.   In seeking to have *Dig* added as an Insured Production, Andrea Garber of Aon, told Atlantic:  "we would like to avoid any deviation from our standard policy terms if possible." | Garber Decl. ¶ 9, Ex. 6, pp. 68-69. |
| 26.   On December 12, 2013, and again on January 14, 2014, Atlantic accepted and confirmed coverage for *Dig* as an Insured Production under the Policy. | Garber Decl. ¶¶ 11-14, Ex. 6, pp. 68-70 and Ex. 7, p. 70, and Ex. 8, p. 74, and Ex. 11, p. 82; Williams Dep. 159:17-25 [attached as Ex. 43 to Coyoca Decl.]. |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Mitchell
Silberberg &
Knupp LLP

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 27.    Atlantic did not change the Policy's terms, or add any new or Israel-specific exclusions or endorsements to the Policy, when it added *Dig* as an Insured Production. | Garber Decl. ¶ 14; Gutterman Dep. Ex. 29 [attached as Ex. 24 to Coyoca Decl.]; Gutterman Dep. 295:9-297:23 [attached as Ex. 44 to Coyoca Decl.]; Williams Dep. 150:20-160:24; 163:3-164:7 [attached as Ex. 43 to Coyoca Decl.]; Ford Decl. ¶ 3, Ex. 1. |
| 28.    Atlantic did not inform Aon, NBCUniversal, or Universal, that it intended to exclude from coverage attacks or violence by terrorist groups, such as Hamas, if UCP shot *Dig* in Israel.  Thus, the Aon and Universal representatives involved with declaring Dig as an Insured Production understood that Dig was insured against acts of terrorism in Israel, including by terrorist groups. | Garber Decl. ¶ 14; Ford Decl. ¶ 4; Gutterman Dep. Ex. 29 [attached as Ex. 24 to Coyoca Decl.]; Gutterman Dep. 295:9-297:23 [attached as Ex. 44 to Coyoca Decl.]. |
| 29.    The *Dig* pilot episode commenced filming in Israel on or about June 2, 2014. | Richmond Decl. ¶ 4 and Ex 14, p. 15; FAC ¶ 1 [attached as Ex. 18 to Coyoca Decl.]; Answer ¶ 1 [attached as Ex. 19 to Coyoca Decl.]; RJN p. 1. |
| 30.    Before June 2, 2014, conditions in Israel were considered safe for filming. | Richmond Decl. ¶ 3, Ex. 13, pp. 4-14; Coyoca Decl. ¶ 9, Ex. 25; RJN p. 3. |
| 31.    Three Israeli teenagers were kidnapped on June 12, 2014. | Levitt Decl. Ex. A, p. 22; Coyoca Decl. ¶ 10, Ex. 26, p. 155; RJN p. 2. |

Mitchell Silberberg & Knupp LLP

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 32.     The U.S. State Department reported there were "many signs that point[ed] to Hamas involvement" in the kidnappings. | Coyoca Decl. ¶ 10, Ex. 26, p. 156; RJN p. 2. |
| 33.     Production of the *Dig* pilot episode was completed on June 26, 2014. | Richmond Decl. ¶ 4, Ex. 14, p. 15. |
| 34.     The show went on hiatus for pre-production and preparation for filming of the next five episodes, with production scheduled to resume on July 20, 2014. | Richmond Decl. ¶ 5,  Ex. 14, p. 15. |
| 35.     On or about June 30, 2014, the bodies of the three missing teenagers were found, and it was again reported that there were signs "indicat[ing] that Hamas was involved." | FAC ¶ 23 [attached as Ex. 18 to Coyoca Decl.]; Answer ¶23 [attached as Ex. 19 to Coyoca Decl.]; Coyoca Decl. ¶ 11, Ex. 27, p. 161; RJN p. 2. |
| 36.     After allegations were made that Hamas was responsible for the kidnappings, Hamas began firing rockets into Israel; and Israel began to take affirmative action to protect its civilian citizens and to stop Hamas' attacks. | Levitt Decl. Ex. A, p. 23; Coyoca Decl. ¶¶ 12, 32, 33, Ex. 28, pp. 175, 177, and Ex. 48, p. 482, and Ex. 49, p. 485; RJN p. 2. |
| 37.     On July 8, 2014, the State Department warned about concerns as to "the safety and security of civilians" in and around Israel and Jerusalem. | Coyoca Decl. ¶¶ 13, 14, 32, Ex. 29, pp. 187, and Ex. 30, p. 206, and Ex. 48 p. 482; RJN p. 2. |
| 38.     Certain *Dig* filming was scheduled | Garber Decl. ¶¶  8, 9, Ex. 5, p. 67, and |

9

Mitchell Silberberg & Knupp LLP

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| to take place in and around Israel and specifically Jerusalem when production resumed. | Ex. 6, p. 68. |
| 39.    As tensions increased through-out early July, the NBCUniversal security team evaluated the situation. | Richmond Decl. ¶¶ 6-8, Exs. 15-17, p. 20-27. |
| 40.    On July 10, 2014, the NBCUniversal security team advised the UCP *Dig* production team:  "[T]he security environment in Israel currently prohibits NBCU Security from being able to guarantee the safety and security of our employees, production partners and associated crew and talent." | Richmond Decl. ¶ 8 and Ex. 17, p. 21. |
| 41.    On July 11, 2014, UCP decided to postpone, for one week, production of the *Dig* episodes which had been scheduled to resume on July 20, 2014. | Richmond Decl. ¶ 9; Williams Dep. Ex. 10, p. 231 [attached as Ex. 31 to Coyoca Decl.]; Williams Dep. 189:12-190:16 [attached as Ex. 43 to Coyoca Decl.]. |
| 42.    On July 11, 2014, UCP informed Atlantic that, due to the circumstances and safety concerns for cast and crew members, production of the show was being postponed by one week. | Garber Decl. ¶ 16; Weiss Dep. 105:7-107:22 [attached as Ex 47 to Coyoca Decl.]; Williams Dep. 185:7-186:12; 189:12-15. |
| 43.    UCP also told Atlantic that UCP might be compelled to move the *Dig* production to another location if | Garber Decl. ¶ 16. |

Mitchell Silberberg & Knupp LLP

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
| --- | --- |
| conditions did not improve. | |
| 44.    On July 16, 2014, the State Department spokesperson reported: "right now the potential we're looking at is … an even greater escalation of violence" in and around Israel. | Coyoca Decl. ¶16, Ex. 32, p. 234; RJN p. 2. |
| 45.    Faced with the prospect of escalating violence, UCP decided to move the *Dig* production out of Israel. | Richmond Decl. ¶ 9; *see also* Coyoca Decl. ¶ 33, Ex. 49, p. 485; RJN p. 3. |
| 46.    UCP informed Atlantic of its decision to move the *Dig* production out of Israel on July 17, 2014. | Garber Decl. ¶ 17; Weiss Dep. 168:5-22 [attached as Ex. 47 to Coyoca Decl.]. |
| 47.    The production of *Dig* was relocated to Croatia and the State of New Mexico. | Richmond Decl. ¶ 10. |
| 48.    UCP and NEP incurred significant expenses in connection with the initial delay in production and the subsequent relocation of the production to Croatia and New Mexico. | Richmond Decl. ¶ 10; Ford Decl. ¶ 2. |
| 49.    On July 15, 2014, Aon submitted to Atlantic a formal notice of the *Dig* claim for the extra expenses incurred in connection with the delay and subsequent relocation of the production (the "Claim"), on behalf of | Gutterman Dep. Ex. 30, p. 247 [attached as Ex. 33 to Coyoca Decl.]; Gutterman Dep. 304:5-19 [attached as Ex. 44 to Coyoca Decl.]. |

Mitchell
Silberberg &
Knupp LLP

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| NBCUniversal and UCP. | |
| 50.    Atlantic assigned an "investigator," Daniel Gutterman, and an in-house claims lawyer, Pamela Johnson, to investigate and evaluate coverage for the Claim. | Gutterman Dep. Ex. 30, p. 248 [attached as Ex. 33 to Coyoca Decl.]; Gutterman Dep. 89:7-89:16, 150:10-15; 304:5-19 [attached as Ex. 44 to Coyoca Decl.]; Deposition of Teresa Gooley Wolf ("Gooley Dep.") 20:20-21:1; 97:3-24 [attached as Ex. 45 to Coyoca Decl.]. |
| 51.    Atlantic provided its written coverage position denying the Claim in a July 28, 2014 letter from Ms. Johnson to Andrea Garber, on behalf of NBCUniversal. | Garber Decl. ¶18, Ex. 12, 83-90 ("Denial Letter"). |
| 52.    In its denial letter, Atlantic stated, "Rockets launched [by Hamas] toward areas where filming is taking place would no doubt reasonably constitute a 'certain, immediate and impending danger of such probability and severity to person or property that it would be unreasonable or unconscionable to ignore.'… The question now is not whether the loss falls within the insuring clause but whether the war exclusion or the terrorism coverage applies." | Denial Letter, Garber Decl. ¶18, Ex. 12, p. 87. |
| 53.    Atlantic "concluded that the extra | Denial Letter, Garber Decl. ¶18, Ex. 12, |

Mitchell
Silberberg &
Knupp LLP

12

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| expense associated with the move is not covered under [the Policy] because of the exclusion for war and warlike actions." | p. 83. |
| 54.    Atlantic's July 28, 2014 denial letter invoked Exclusions 1 and 2, the exclusions for war and warlike action, but not Exclusions Nos. 3 (insurrection, rebellion, revolution, etc.) and 4 (weapon of war). | Denial Letter, Garber Decl. ¶18, Ex. 12, pp. 83-90. |
| 55.    In its July 28, 2014 denial letter, Atlantic conceded "that the extra expenses that will be incurred to move the production out of Israel will be due to imminent peril." | Denial Letter, Garber Decl. ¶18, Ex. 12, p. 87; FAC ¶ 20 [attached as Ex. 18 to Coyoca Decl.]; Answer ¶ 20 [attached as Ex. 19 to Coyoca Decl.]; Gooley Dep. 214:1-14 [attached as Ex. 45 to Coyoca Decl.]. |
| 56.    On July 16, 2014, the then President of OneBeacon Entertainment (a division of Atlantic), Peter Williams, wrote that "they [Universal] have immanent [sic] peril." | Williams Depo Ex. 11, p. 253 [attached as Ex. 34 to Coyoca Decl.]; Williams Dep. 23:2-23; 30:13-21; 220:25-222:12; 227:11-22 [attached as Ex. 43 to Coyoca Decl.]. |
| 57.    Atlantic's denial letter and its subsequent September 19, 2014 response letter cited authorities holding that "war" requires hostilities between sovereign or quasi-sovereigns, and argued that there was a war here because Hamas is a | Denial Letter, Garber Decl. ¶18, Ex. 12, p. 88; Gutterman Dep. Ex. 20 ("Response Letter"), pp. 260-61 [attached as Ex. 35 to Coyoca Decl.]; Coyoca Decl. ¶ 19. |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| quasi-sovereign. | |
| 58.    The claims supervisor that oversaw Pamela Johnson and Daniel Gutterman's work, Theresa Gooley, testified that the word "war" has multiple meanings. | Gooley Dep. 18:14-15; 20:20-21:1; 200:5-201:4 [attached as Ex. 45 to Coyoca Decl.]. |
| 59.    Mr. Williams testified that hostilities must be broad and widespread to constitute war. | Williams Dep. 245:7-12 [attached as Ex. 43 to Coyoca Decl.]. |
| 60.    Atlantic's claims investigator, Daniel Gutterman, testified that it is hard to define what war is but that "I just know it when I see it." | Gutterman Dep. 45:7-11 [attached as Ex. 44 to Coyoca Decl.]. |
| 61.    Atlantic's September 19, 2014 denial letter described the size and scope of the conflict between Hamas and Israel in the summer of 2014. | Response Letter, Coyoca Decl. Ex. 35, pp. 258, 260; Coyoca Decl. ¶ 19. |
| 62.    The insurance industry did not exclude 9/11 losses based on application of any war exclusions | Declaration of Ty R. Sagalow ("Sagalow Decl.), Ex. D ("Expert Report of  Ty R. Sagalow"), ¶ 72; Williams Dep. 101:6-21 [attached as Ex. 43 to Coyoca Decl.]. |
| 63.    After 9/11, the insurance industry standard was for policies to have *both* a terrorism exclusion and a war exclusion, or at a minimum to address with specificity whether "terrorism" is | Sagalow Decl. Ex. D, ¶ 49-55; Williams Dep. 96:5-8 - 96:5-8 [attached as Ex. 43 to Coyoca Decl.]. |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Mitchell
Silberberg &
Knupp LLP

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| covered by the policy. | |
| 64. Atlantic knows how to draft a terrorism exclusion. | Coyoca Decl. ¶ 20, Ex. 36; RJN p. 5. |
| 65. In the insurance industry, war and terrorism are two separate concepts. "[A]n underwriter cannot merge the two concepts and say that 'an act of terrorism' can be also an 'act of war.'" | Sagalow Decl. Ex. D, ¶ 56. |
| 66. After the events of 9/11, insureds reasonably expect that terrorism and war are two separate risks, which will be underwritten and evaluated by an insurance company separately. | Sagalow Decl. Ex. D, ¶ 56. |
| 67. The U.S. government has never recognized Hamas as either a sovereign or quasi-sovereign. | Levitt Decl. Ex. A, pp. 18, 28; Ross Decl. Ex. B, ¶¶ 10, 23; Koh Decl. Ex. C, p. 16; Coyoca Decl. ¶ 7, Ex. 23; RJN p. 1. |
| 68. Atlantic's September 19, 2014 response letter states that Gaza "is not a recognized nation, at least by most of the world," and that Israel is a "legitimate sovereign." | Response Letter, Coyoca Decl. ¶ 19, Ex. 35, pp. 260-61. |
| 69. The U.S. government does not recognize Gaza as a sovereign territorial nation. | Coyoca Decl. ¶ 7, Ex. 23; Ross Decl. Ex. B, ¶ 20; Levitt Decl. Ex. A, p. 28. |
| 70. The U.S. government considers | Ross Decl. Ex. B, ¶ 9. |

15

Mitchell Silberberg & Knupp LLP

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| Hamas to be a Palestinian non-state actor. | |
| 71.    The U.S. government has not considered adding Hamas to the list of state sponsors of terrorism at any point since 1987. | Ross Decl. Ex. B, ¶ 10. |
| 72.    "[S]ince designating Hamas a Foreign Terrorist Organization in the 1990's, it has been the policy of every American administration not to engage in meetings or dialogue with officials of Hamas, let alone any formal diplomatic relations[,]" because of Hamas' use of violence and terrorism and rejectionist position with regard to Israel's right to exist. | Ross Decl. Ex. B, ¶ 23. |
| 73.    "U.S. Policy will not recognize Gaza as a sovereign or quasi-sovereign territory.  And it will not recognize Hamas as being a legitimate authority in Gaza." | Ross Decl. Ex. B, p. 10. |
| 74.    Hamas did not seize control of Gaza from Israel; instead, in 2005 Israel voluntarily withdrew from Gaza, subject to the Oslo agreements. | Levitt Decl. Ex. A, pp. 8, 10 n.24; Ross Decl. Ex. B, ¶¶ 10, 12, 20. |
| 75.    Hamas does not control the | Ross Decl. Ex. B, ¶ 21; Levitt Decl. Ex. |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Mitchell
Silberberg &
Knupp LLP

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| borders, ports, or airspace of Gaza. | A, p. 10, 28. |
| 76.     The United States refuses to recognize Hamas as anything other than a terrorist group, and does not engage in any meetings or dialogue with Hamas. | Ross Decl. Ex. B, ¶¶ 10, 20, 23. |
| 77.     The European Union, Canada Australia, Israel, and other countries designate Hamas as a terrorist group. | Levitt Decl. Ex. A, p. 29. |
| 78.     Hamas is part of:  (i) the larger Muslim Brotherhood movement, whose goal is to have all Muslims governed exclusively by Sharia law and live under the banner of Allah; and, (ii) the overarching Palestinian Authority, who recognized the State of Israel and thus does not seek to overthrow the government of Israel. | Levitt Decl. Ex. A, p. 8, 11; Ross Decl. Ex. B, ¶¶ 9, 11, 13, 15. |
| 79.     Hamas is one of several different Palestinian factions that fundamentally disagree about how to achieve their objective to establish a state of Palestine. | Ross Decl. Ex. B, ¶¶ 9, 11, 15-19; Levitt Decl. Ex. A, pp. 10, 20. |
| 80.     Hamas' founding charter published in 1988 advocates the establishment of a separate Islamic fundamentalist Palestinian state, the destruction of the state of Israel, and the | Coyoca Decl. ¶ 43, Ex. 50, p. 490; Ross Decl. Ex. B, ¶ 9; Levitt Decl. Ex. A, p. 11 n.31; RJN p. 6. |

Mitchell
Silberberg &
Knupp LLP

17

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| raising of "the banner of Allah over every inch of Palestine." | |
| 81.     Hamas rejects the right of Israel to exist. | Ross Decl. Ex. B, ¶ 11; Levitt Decl. Ex. A, pp. 11-12. |
| 82.     The purpose of Hamas' rocket attacks in July 2014 was to (i) retaliate for the Israeli allegations that Hamas was responsible for the kidnapping/murder of the three Israeli teens earlier in the summer, and (ii) spread terror among the civilian population of Israel. | Levitt Decl. Ex. A, pp. 23-25. |
| 83.     Theresa Gooley (Atlantic's senior claims supervisor) testified that "the third [exclusion] I don't think is applicable." | Gooley Dep. 18:14-15; 151:16-152:2; 217:22-218:3; 220:6-9; 220:14-17 [attached as Ex. 45 to Coyoca Decl.]. |
| 84.     Immediately following Exclusion 4 in the Policy is another exclusion (number 5) for "Nuclear reaction or radiation, or radioactive contamination from any other cause." | Policy, General Conditions, § III.5, Garber Decl. ¶ 3, Ex. 2, pp. 17-18; Williams Dep. 74:6-12 [attached as Ex. 43 to Coyoca Decl.]. |
| 85.     Mr. Williams, testified that Exclusion 4 did not apply to the claim because it required atomic or radioactive involvement. | Williams Dep. 23:2-23; 30:13-21; 252:7-22 [attached as Ex. 43 to Coyoca Decl.]. |
| 86.     Andrea Garber, formerly of Aon, testified that in order for Exclusion 4 to | Garber Decl. ¶ 2; Deposition of Andrea Garber, 358:22-359:20 [attached as Ex. |

Mitchell Silberberg & Knupp LLP

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
| --- | --- |
| apply, "it has to be a weapon of war involving atomic fission." | 46 to Coyoca Decl.]. |
| 87.    Atlantic has acknowledged that Hamas' actions may violate norms of warfare, stating, "the rockets are being fired into civilian areas, which may violate established norms of warfare and armed conflict under international law." | Denial Letter, Garber Decl. ¶ 18, Ex. 12, p. 89. |
| 88.    Hamas' indiscriminate firings of rockets that lack directional controls to ensure they are hitting military (and not civilian) targets constitute acts of terrorism and are not for any military advantage. | Levitt Decl. Ex. A, pp. 24, 29; Koh Decl. Ex. C, pp. 14-15, 17. |

**B.    Second Affirmative Defense, labeled "Exclusion 1, General Conditions" ("War, including undeclared or civil war") lacks merit and fails as a matter of law**

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
| --- | --- |
| Universal incorporates herein uncontroverted facts set forth in paragraphs 1 through 77, *supra*. | Universal incorporates herein evidence supporting uncontroverted facts set forth in paragraphs 1 through 77, *supra*. |

**C.    Third Affirmative Defense, labeled "Exclusion 2, General Conditions" ("Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any**

Mitchell
Silberberg &
Knupp LLP

19

1  government, sovereign or other authority using military personnel or other
2  agents") lacks merit and fails as a matter of law

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
| --- | --- |
| Universal incorporates herein uncontroverted facts set forth in paragraphs 1 through 77, *supra*. | Universal incorporates herein evidence supporting uncontroverted facts set forth in paragraphs 1 through 77, *supra*. |

**D.     Fourth Affirmative Defense, labeled "Exclusion 3, General Conditions" ("Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.") lacks merit and fails as a matter of law**

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
| --- | --- |
| Universal incorporates herein uncontroverted facts set forth in paragraphs 1 through 56, and 78 through 83, *supra*. | Universal incorporates herein evidence supporting uncontroverted facts set forth in paragraphs 1 through 56, and 78 through 83, *supra*. |

**E.     Fifth Affirmative Defense, labeled "Exclusion 4, General Conditions" ("Any weapon of war including atomic fission or radioactive force, whether in time of peace or war") lacks merit and fails as a matter of law**

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
| --- | --- |
| Universal incorporates herein uncontroverted facts set forth in paragraphs 1 through 56, and 84 through 88, *supra*. | Universal incorporates herein evidence supporting uncontroverted facts set forth in paragraphs 1 through 56, and 84 through 88, *supra*. |

Mitchell
Silberberg &
Knupp LLP

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**F.     Exclusions 1, 2, 3, and 4 in the Policy must be interpreted based on their technical and special meaning established by longstanding case authority, international law, and industry custom and practice**

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| Universal incorporates herein uncontroverted facts set forth in paragraphs 10 through 12, *supra*. | Universal incorporates herein evidence supporting uncontroverted facts set forth in paragraphs 10 through 12, *supra*. |

## II.     CONCLUSIONS OF LAW

| CONCLUSION OF LAW | SUPPORT |
|---|---|
| 1.     It is Universal's (the insured's) initial burden to show that the event causing the loss falls within the scope of coverage of the policy. | *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 406 (1989). |
| 2.     The burden then shifts to Atlantic (the insurer) to prove that the Claim is excluded from coverage by the War Exclusions. | *Garvey*, 48 Cal. 3d at 406. |
| 3.     Under California law, an exclusion in an insurance policy precludes coverage only if it is "expressly and unambiguously excluded," using "conspicuous, plain, and clear" language. | *State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal. 3d 193, 200-02 (1973); *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 639 (2003). |
| 4.     Under California law, "insurance coverage is 'interpreted broadly so as to afford the greatest possible protection to the insured,. . . [whereas] exclusionary clauses are interpreted narrowly against | *MacKinnon*, 31 Cal. 4th at 639 (citation omitted); *HS Servs.*, 109 F.3d 642, 645 (9th Cir. 1997) (applying California law: "Exclusionary clauses are strictly construed."). |

| CONCLUSION OF LAW | SUPPORT |
|---|---|
| the insurer.'" | |
| 5.     Under California law, when there are other exclusion clauses potentially available to the insurer that are directly applicable to certain types of occurrences, but the insurer does not use them to clearly exclude such occurrences, "this gives rise to the inference that the parties intended not to so limit coverage." | *Fireman's Fund Ins. Co. v. Atl. Richfield Co.*, 94 Cal. App. 4th 842, 852 (2001). |
| 6.     Under California law, where there are two reasonable interpretations of an exclusion, the court "must resolve the ambiguity in favor of the insured, consistent with the insured's reasonable expectations." | *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 473 (2004); *Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th 758, 763 (2001) (reversing grant of summary judgment to defendant insurance company because the insured would reasonably expect coverage for the claim purportedly excluded). |
| 7.     In order to show that an exclusion precludes coverage, the insurer must prove that "its interpretation is the ***only*** reasonable interpretation." | *MacKinnon*, 31 Cal. 4th at 655 (emphasis in original); *Holiday Inns Inc. v. Aetna Ins. Co.*, 571 F. Supp. 1460, 1464 (S.D.N.Y. 1983) ("To avoid coverage, 'it is not sufficient for the [insurers] … to offer a reasonable interpretation under which the loss is excluded; the [insurers] must |

Mitchell
Silberberg &
Knupp LLP

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

| CONCLUSION OF LAW | SUPPORT |
|---|---|
| | demonstrate that an interpretation favoring them is the only reasonable reading.") (quoting *Pan Am. World Airways v. Aetna Cas. & Surety Co.*, 505 F.2d 989, 1012 (2nd Cir. 1974) ("*Pan Am*")). |
| 8.      Exclusions 1 and 2 require conflict between sovereign or quasi-sovereign entities. | *Pan Am*, 505 F.2d at 1012; *Holiday Inns*, 571 F. Supp. at 1464-65; *Ennar Latex v. Atlantic Mut. Ins. Co.*, 1995 U.S. Dist. LEXIS 7386, at *12-16 (S.D.N.Y. May 30, 1995); *Weiss v. Arab Bank, PLC*, 2007 U.S. Dist. LEXIS 94029, at *14-20 (E.D.N.Y. Dec. 21, 2007). |
| 9.      The political question doctrine mandates deference to the U.S. government's determination that Hamas is not a sovereign or quasi-sovereign. | *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918); *Ennar Latex*, 1995 U.S. Dist. LEXIS 7386, at *14 ("It is not for this Court to recognize a de facto [*i.e.*, quasi] government; rather, that is the role of the executive branch."). |
| 10.      To qualify as a quasi-sovereign, an entity must have significant attributes of sovereignty.  The main attributes of sovereignty are:  (1) control as the government of meaningful territory; (2) the right to control borders; (3) formal recognition by other sovereigns; and, (4) | *Holiday Inns*, 571 F. Supp. at 1499-1500; *Ungar v. PLO*, 402 F.3d 274, 283 (1st Cir. 2005); *Restatement (Third) of Foreign Relations Law of the United States* § 201 (1987). |

Mitchell
Silberberg &
Knupp LLP

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

| CONCLUSION OF LAW | SUPPORT |
|---|---|
| sovereign or diplomatic immunity. | |
| 11.    Hamas lacks the requisite attributes of sovereignty or quasi-sovereignty as a matter of law. | *Pan Am*, 505 F.2d at 1012; *Holiday Inns*, 571 F. Supp. at 1499-1500; *Ungar*, 402 F.3d at 283, 291-92; *United States v. Damra*, 621 F.3d 474, 486 (6th Cir. 2010); *Restatement (Third) of Foreign Relations Law of the United States* § 201 (1987); *Knox v. PLO*, 306 F. Supp. 2d 424, 430-31 (S.D.N.Y. 2004); *United States v. PLO*, 695 F. Supp. 1456, 1459 (S.D.N.Y. 1988). |
| 12.    Exclusion 3 requires that:  (1) there was an identifiable "group or movement" that ha[d] the requisite intent to overthrow the established government and assume at least *de facto* governmental control;" or, (2) the group is part of a larger "group or movement" that has a cohesive purpose to overthrow the established government. | *Holiday Inns*, 571 F. Supp. at 1487-88; *Pan Am,* 505 F.2d at 1017-19. |
| 13.    Under the Policy, read as a whole and in light of California insurance policy principles of construction, Exclusion 4 applies only if the loss at issue is caused by a "weapon of war including [meaning, employing] atomic | *MacKinnon*, 31 Cal. 4th at 648, 650; *Safeco*, 26 Cal. 4th at 763-64; *Jacober*, 10 Cal. 3d at 202-03; *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1032 (9th Cir. 2008); *State Farm Mut. Auto. Ins. Co. v. Mrozek*, 29 Cal. |

Mitchell Silberberg & Knupp LLP

| CONCLUSION OF LAW | SUPPORT |
|---|---|
| fission or radioactive force...." | App. 3d 113, 117 (1972); *Anderson v. State Farm Mut. Auto. Ins.*, 270 Cal. App. 2d 346, 349 (1969); *accord Shell Oil Co. v. Nat'l Union Fire Ins. Co.*, 44 Cal. App. 4th 1633, 1641-42 (1996). |

Respectfully submitted,

DATED:  APRIL 24, 2017          MITCHELL SILBERBERG & KNUPP LLP


By:  /s/ Lucia E. Coyoca
     Lucia E. Coyoca
     Attorneys for Plaintiffs
     Universal Cable Productions LLC and
     Northern Entertainment Productions LLC

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**