LUCIA E. COYOCA (SBN 128314)
  lec@msk.com
VALENTINE A. SHALAMITSKI (SBN 236061)
  vas@msk.com
DANIEL M. HAYES (SBN 240250)
  dmh@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone:  (310) 312-2000
Facsimile:  (310) 312-3100

Attorneys for Attorneys for Plaintiffs
Universal Cable Productions LLC and
Northern Entertainment Productions LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ATLANTIC SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | CASE NO. 2:16-cv-4435-PA-MRW <br><br> **DECLARATION OF GEORGE WALDEN IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> [Opposition Memorandum; Notice of Lodging Statement of Genuine Issues and Additional Material Facts; Statement of Genuine Issues and Additional Material Facts; Evidentiary Objections; Table of Contents of Evidence; Declarations of Matthew Levitt, Dennis Ross, Harold Koh, Ty Sagalow, and Lucia Coyoca Filed / Lodged Concurrently Herewith]] <br><br> Date:          May 22, 2017 <br> Time:          1:30 p.m. <br> Ctrm.:         9A, First St Courthouse |

Mitchell
Silberberg &
Knupp LLP

8838229.1

# DECLARATION OF GEORGE WALDEN

I, George Walden, declare:

1.      I am employed by Aon/Albert G. Ruben Insurance Services New York. My current position is Resident Managing Director.  From approximately 2007 to 2009, I served as Chief Executive Officer of Aon/Albert G. Ruben Insurance Services New York (hereinafter "Aon").

2.      I have been an insurance broker for 40 years.  I have been involved in drafting, negotiating and placing insurance policies for entertainment industry clients for 40 years, including television production policies such as the policy at issue in this matter.

3.      In 2009-2010, I served as insurance broker for NBCUniversal Media LLC ("NBCUniversal") in connection with the placement of the policy issued by defendant Atlantic Specialty Insurance Company ("Atlantic") to NBCUniversal, Policy No. MP00163-04 ("the Policy").  I have personal knowledge of the following facts and, if called and sworn as a witness, could and would competently testify thereto.

4.      I have reviewed the Declaration submitted by Mr. Peter Williams in support of Atlantic's Motion for Summary Judgment in this matter.  Therein, Mr. Williams declares in paragraph 3 that:  "While Aon agreed to accept various changes to its form, the insurance policy that Atlantic eventually issued was largely the manuscripted form provided to it by Aon."

5.      Mr.Williams' statement is not accurate.  In early Fall 2009, Aon provided an initial, draft manuscript policy form to Atlantic for review and negotiation.   Between that date and March 2010, the initial, draft policy and its terms were the subject of extensive negotiations and revisions by Atlantic and Aon. Indeed, Atlantic requested or proposed, and Aon accepted, many revisions prior to

finalization of the Policy.

6.      Moreover, to the best of my recollection, Mr. Williams' role in the negotiation and revision of the Policy was extremely limited.  To the best of my recollection, I did not negotiate any of the terms of the Policy with Mr. Williams.

7.      Instead, I communicated and negotiated with Atlantic representatives Mr. Martin Ridgers and Ms. Wanda Phillips.

8.      On December 6, 2009, I sent an email to Mr. Ridgers and Ms. Phillips, with a copy to Ms. Susan Weiss and Ms. Laura Comerford of Aon, attaching a revised summary of the terms of coverage that were then being negotiated between Aon, on behalf of NBCUniversal, and Atlantic.  A true and correct copy of that email, with attachments (and other emails in the chain), is attached hereto as Exhibit 1 (bates numbered AONNBCU0003795-3865).

9.      There are certain war exclusions (and also nuclear exclusions) contained in the draft policy attached to Exhibit 1, on page bates numbered AONNBCU0003811.  Based on my experience, I believe that the draft war and nuclear exclusions were consistent with standard language utilized in the insurance industry as to these types of provisions.  The exclusions precluded coverage for loss that is caused directly or indirectly by:

> A.      War, including undeclared or civil war; or
>
> B.      Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
>
> C.      Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.
>
> Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> D.      Any weapon of war employing atomic fission or radioactive force whether in time of peace or war

E.     Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, Ccontributed [sic] to, or aggravated by the peril or perils insured in this policy.  However, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is covered.

10.     I understand that one of the issues in this matter relates to the interpretation of the exclusion as to losses caused by "any weapon of war."

11.     The "weapon of war" exclusion is set forth in subpart 4 of section III "Exclusions Applicable to All Sections of this Policy," in the General Conditions section of the Policy.  The exclusion provides: "[T]his policy does not insure against loss or damage caused directly or indirectly by:" ". . .4. Any weapon of war including atomic fission or radioactive force, whether in time of peace or war; . . ."

12.     Subpart 4 of the Policy sets forth precisely the same language that is set forth in the December 6, 2009, draft referenced in paragraph 8 above, *except* the word "employing" has been changed to "including."

13.     I understand that Atlantic contends in this matter that this one word change means that Subpart 4 should be interpreted to have a broad meaning, excluding from coverage any loss caused by *any* "weapon of war" under any circumstance, as if the provision stated:  "any weapon of war including [but not limited to] atomic fission or radioactive force, whether in time of peace or war."

14.     This interpretation of Subpart 4 is contrary to my experience with respect to such exclusions and the negotiations between the parties regarding the Policy.

15.     As an initial matter, Atlantic's interpretation is, based on my experience, inconsistent with the interpretation given to this form of exclusion in the insurance industry.  Based on my experience, this exclusion is interpreted as applying to "weapon of war" that utilizes or involves some form of nuclear fission or radioactive force.  The exclusion is consistent with other exclusions included

**DECLARATION OF GEORGE WALDEN**

Mitchell Silberberg & Knupp LLP

8838630.2/46250-00001

1  insurance policies that exclude from coverage any loss arises from a nuclear event.

2      16.    In addition, Atlantic's interpretation is inconsistent with the

3  negotiations between Aon and Atlantic and the exchange of Policy drafts as to the

4  policy form language.

5      17.    On December 16, 2009 (at 2:07 a.m. EST), Mr. Ridgers sent an email

6  to me regarding the Policy, with a copy to Ms. Phillips (bates numbered

7  AONNBCU0004055-4089).   A true and correct copy of Mr. Ridgers' is attached

8  hereto as Exhibit 2.  In his email,  Mr. Ridgers stated:

9      ". . . I have attached [sic] the changes to the document, you should not

10      find anything that significantly changes the coverage as we have

11      discussed.  Please let NBC know we are working very hard to provide a

12      broader form.  Again I have made some formatting changes but not all

13      and I have marked in purple the reference to the conditions that I must

14      restated. [sic]"

15      On the page bates numbered AONNBCU0004067, one change that was made

16  by Mr. Ridgers appears below the Aon language as to the "weapon of war"

17  exclusion -- the following two paragraphs were added:

18

19      E. Any weapon employing atomic fission, atomic fusion or
    radioactive force; or

20      (b) Nuclear reaction or radiation, or radioactive contamination from
    any other cause.  But if nuclear reaction or radiation, or radioactive

21      contamination results in fire, we will pay for the direct loss or

22      damage caused by that Fire if the fire would be covered under this

23      policy.

24  (Formatting anomalies are as they appear in the draft.)  This is not standard Aon

25  language and was not added by Aon.  Immediately below this new language, Mr.

26  Ridgers struck out Aon's proposed exclusion 'E,' with the language as to "nuclear

27  reaction or nuclear radiation or radioactive contamination."

28      18.    On December 17, 2009, Mr. Ridgers sent an email to me, Ms. Weiss

Mitchell
Silberberg &
Knupp LLP

4

**DECLARATION OF GEORGE WALDEN**

and Ms. Phillips, a true and correct copy of which is attached hereto as Exhibit 3) (bates numbered AONNBCU0004132-4195, that states:

> George,
>
> Attached is my last version with yuor [sic] changes, [sic] I have also merged this document with your document that I have attached hereto also.

Attached to that email are two drafts of the Policy labeled (1) "Martin's Final Form Rev 1 2009 – Martin Last version and merged" and, (2) "nbc Martin's Final Form Rev 1 2009 1216 (3) – George last version."

19.     Both versions of the "weapon of war" exclusion language in the two attached drafts state:  "Any weapon of war *employing* atomic fission or radioactive force, whether in time of peace or war" (emphasis added).

20.     Later that same day on December 17, 2009, Ms. Phillips sent an email to me and to Mr. Ridgers, with copies to Ms. Weiss and Ms. Comerford of Aon.  A true and correct copy of that email is attached as Exhibit 4 (bates numbered AONNBCU0004126-4131).  Therein, Ms. Phillips states:  "[w]e are in agreement to use the form dated 12-17-2009 Martin's Final Form."

21.     I thereafter responded to Ms.Phillips and Mr. Ridgers.  I noted two edits unrelated to the war exclusions.   I then stated:  "Pls confirm and confirm prepared to bind coverage on the policy."

22.     I never discussed with Mr. Ridgers or Ms. Phillips or anyone else at Atlantic the specific language of the "weapon of war" exclusion and I never agreed to broaden its applicability.

23.     Instead, my understanding was that the language of the policy we were agreeing to bind was set forth in the negotiated document "12-17-2009 Martin's Final Form," attached in Exhibit 3 hereto.

24.     Over the course of the next few months, Mr.Ridgers, Ms. Phillips, Ms.

Mitchell
Silberberg &
Knupp LLP

5

**DECLARATION OF GEORGE WALDEN**

8838630.2/46250-00001

1   Weiss and I continued to negotiate certain policy terms, but we never discussed any

2   revisions or changes to be made to the war exclusions.  Ultimately, on or about

3   March 26, 2010, the final form of the Policy was sent to Aon, and, to the best of my

4   knowledge, Ms. Weiss of Aon sent the Policy to NBCUniversal representatives after

5   receiving it from Atlantic.  Attached as Exhibit 5 is a true and correct copy of a

6   March 26, 2010 email, with attachment, from Ms. Weiss of Aon to Kurt Ford at

7   NBC Universal, on which I was copied (bates numbered UCP032892-UCP032935).

8   To the best of my recollection, the attachment to the email is the Policy in its final

9   form, as Aon received it from Atlantic.

10       25.    In the final form of the Policy, the word "employing" that appeared in

11   the drafts as Exclusion D of the General Conditions (on page bates numbered

12   UCP032906) was changed to "including."  This is a change from the language in the

13   draft policy titled "12-17-2009 Martin's Final Form," and was not a change that I or

14   anyone else at Aon authorized.  Indeed, no one from Atlantic ever disclosed or

15   indicated that Atlantic was making the revision or was attempting to broaden the

16   scope of the "weapon of war" exclusion.

17       26.    To the extent Atlantic contends that the language in Exclusion D of the

18   General Conditions is broader or different than the language in the "12-17-2009

19   Martin's Final Form" language, such a position is inconsistent with Mr. Ridgers'

20   assurance to me on December 16, 2009 that I would not find anything in his

21   revisions "that significantly changes the coverage as we have discussed."  In

22   addition, such a position would be inconsistent with Ms. Phillips' representations to

23   me in her December 17, 2009 email in which she confirmed "We are in agreement

24   to use the form dated 12-17-09 Martin's Final Form."

25       27.    I never agreed to change the term "employing" to "including" and I

26   never agreed to expand the scope of the weapon of war exclusion.

27

28

Mitchell
Silberberg &
Knupp LLP

8838630.2/46250-00001

6
**DECLARATION OF GEORGE WALDEN**

1
2
3       I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.
4
5
    Executed May 1, 2017, at Del Ray Beach, Florida.
6
7
8                       George Walden
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# EXHIBIT 1

**To:**        George.Walden[georgerwalden@aol.com]
**From:**      George Walden
**Sent:**      Mon 12/7/2009 11:39:00 AM
**Importance:**        Normal
**Subject:**   Fw: NBC Wording-Coverage Summary/Affidavit Form
**Received:**          Mon 12/7/2009 11:39:00 AM

NBC TELEVISION PRODUCTION INSURANCE PROGRAM.doc
nbc_manuscript_Martin_2009_1204[1].doc
nbc manuscript Martin 2009 1205.doc

---

**From:** "Ridgers, Martin K." [MRidgers@ebi-ins.com]
**Sent:** 12/07/2009 12:09 AM EST
**To:** George Walden
**Cc:** "Phillips, Wanda M." <WPhillips@ebi-ins.com>
**Subject:** FW: NBC Wording-Coverage Summary/Affidavit Form

George,

I have left in red those items I did not change on your form. I have amended my form and marked these changes in yellow.

I will look at the other notes.

All the best,



A Member of the OneBeacon Insurance Group

*Martin Ridgers*, CPCU

Senior Vice President

Entertainment Brokers International

A member of the OneBeacon Insurance Group

License No. 0773887

mridgers@ebi-ins.com

Direct Tel: 310.954.3970

Tel 310.824.0111 / Fax 310.824.5733

Mobile: 310-418-4772

Visit our website at http://www.ebi-ins.com for applications, news and product information.

This e-mail and any attachments to it, is intended for the use of the individual or entity to
which it is addressed, and may contain information that is privileged, confidential and exempt
from disclosure under applicable law. If you are not the intended recipient, any dissemination,
distribution or copying of this communication is strictly prohibited. If you have received this
communication in error, please notify us immediately by telephone at (310) 824-0111 or by e-mail.

**From:** georgerwalden@aol.com [mailto:georgerwalden@aol.com]
 **Sent:** Sunday, December 06, 2009 03:37 PM
 **To:** Ridgers, Martin K.; George_Walden@ars.aon.com; Phillips, Wanda M.
 **Cc:** susan_wiess@ars.aon.com; laura_comerford@ars.aon.com
 **Subject:** Re: NBC Wording-Coverage Summary/Affidavit Form

Wanda...attached is the revised summary. Pls review.

Also attached is the Affidavit and Authorization form for cast....

think we got it all...you have issues with the form...again..we can deal with the aniimal exptra expense by endt. and we can tackle once we get thru the form.

LASTLY - will need to deal with rating schedule..that was and remains a separate document under separate cover and will be an endt to the policy.

thanks

.

Visit our website at http://www.ebi-ins.com for applications, news and product information.

Confidentiality notice: The information contained in this email message including attachments is confidential and is intended only for the use of the individual or entity named above and others who have been specifically authorized to receive it.  If you are not the intended recipient, you are hereby notified that any use, unauthorized dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please delete immediately or if any problems occur with transmission, please notify me immediately by telephone at (310) 824-0111.  Thank you.

# NBC TELEVISION PRODUCTION INSURANCE PROGRAM
# SUMMARY OF PROGRAM PROVISIONS

Proposed Term of coverage:   January 1, 2010 – February 1, 2011
Carrier:                     One Beacon America
Best's Rating:               A15
Annual Aggregate S.I.R.:     $2,100,00   (includes paid loss and adjustment expense)
Premium Rating:              $0.10/$100 (all costs/overhead chargeable directly to a production)
Policy Form:                 Manuscript specifically for NBC

---

| COVERAGE | LIMIT OF LIABILITY Each loss/each production | MAINTENANCE DEDUCTIBLE/LOSS **Deductible excess of annual aggregate SIR** |
|---|---|---|

---

**SECTION I.**

CAST                        $50,000,000                $50,000/**$25,000**
    Cast cover subject to declaration & artist completion of medical affidavit, review & approval by carrier.

    Family Bereavement          2,000,000
    Kidnap Ransom               1,000,000
    Disgrace/Violent Death      Abandonment Only

**SECTION II.**

NEGATIVE FILM               $50,000,000                $0
FAULTY EXPOSURES                                       $50,000/**$25,000**

    Operator Error              2,000,000

    Including materials, equipment, computer equipment, editing, developing, processing, accidental
    erasure including loss of media, data and software; operator error, faulty manipulation, faulty operation,
    errors in judgment and computer programming.

FILM LIBRARY STOCK          1,000,000

**SECTION III**

EXTRA EXPENSE               $10,000,000                $75,000/**$25,000**
    Covers all RISK AND ANY LOSS "outside of the control of the insured" EXCEPT as excluded

    Confiscation                1,000,000
    Strike                      1,000,000
    Animals                     1,000,000
    Travel delay                1,000,000
    Civil authority             included
    Power interruption          included

**NBC Television Production Insurance Program**

---

| COVERAGE | LIMIT OF LIABILITY | MAINTENANCE DEDUCTIBLE/LOSS |
|---|---|---|
| | Each loss/each production | **Deductible excess of annual aggregate SIR** |

**SECTION IV.**

| | | |
|---|---|---|
| PROPERTY | $10,000,000 | $10,000/**$5,000** |

Includes props, sets, wardrobes, miscellaneous equipment, production vehicles, buildings/real property used or to be used as a theatrical set

| Animals | 250,000 |
|---|---|
| Office contents | included |
| Cash/robbery-holdup | 250,000 |
| Fine Arts & Jewelry | 250,000 |

**SECTION V.**

| | | |
|---|---|---|
| THIRD PARTY PROPERTY DAMAGE | $10,000,000 | $10,000/**$5,000** |

**COVERGE EXTENSIONS APPLICAPLE TO SECTIONS I., II. & III.**

| PRINTS & ADVERTSING EXPENSE | $1,000,000 |
|---|---|
| EXPEDITING EXPENSE TO MEET AIR, DELIVERY DATE | $1,000,000 |
| PURBLIC RELATIONS EXPENSE DUE TO DISGRACE | $  250,000 |

**NOTABLE EXCLUSIONS** (note under discussion and subject to policy wording)

| WIND | U.S. Territories defined as Tier One counties during Hurricane season |
|---|---|
| | World-Wide Territories Typhoon |
| WAR | |
| TERRITORIES excluded include | |
| | U.S. Terrorist Watch list and or any country under U.S. embargo and or Trade Sanction |

**Broker:**   Aon/Albert G. Ruben Insurance Services, Inc.                    Insurance Company

                                                                            **Herein Called the Company**

**MOTION PICTURE/TELEVISION**
**PRODUCTION PORTFOLIO DECLARATIONS**                    **Policy Number:**

1.   **NAMED INSURED and MAILING ADDRESS:**

      Named Insured
      Street Address
      City, State, Zip Code

2.   **POLICY PERIOD:**
      **From 12:01 A.M. Standard Time at the address of the NAMED INSURED as stated above.**

3.   **INSURED PRODUCTION(S):   Any production of the insured**

4.   **COVERAGE:**

| Section | Coverage | Limit of Liability Each Production each Loss |
|---------|----------|----------------------------------------------|
| I. | CAST | $50,000,000. |
| II. | NEGATIVE & FAULTY STOCK | $50,000,000 |
| III. | EXTRA EXPENSE | $10,000,000 |
| IV. | PERSONAL PROPERTY | $10,000,000 |
| V. | THIRD PARTY PROPERTY DAMAGE | $10,000,000 |

5.   **DEDUCTIBLES & SELF-INSURED RETENTION:**  See Rating Schedule endorsement

6.   **DEPOSIT PREMIUM:**  See Rating Schedule endorsement

COUNTERSIGNATURE DATE:                              COUNTERSIGNATURE OF AUTHORIZED AGENT:

CONFIDENTIAL
EXHIBIT 1, PAGE 13                    AONNBCU0003800

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

7.  Insurance is provided against those perils and for the coverage under those Sections for which a specific amount or Limit of Liability is shown  in  schedules incorporated herein, subject to all terms of the policy and all forms and endorsements made a part hereof.

8.  When a deposit premium has been charged, the actual premium will be determined in  accordance with the terms of the rating schedule endorsement attached to and made a part of this policy.

9.  **FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION**:

10.  **DATE ISSUED**:

CONFIDENTIAL                    EXHIBIT 1, PAGE 14                    AONNBCU0003801

Named Insured
Motion Picture/Television Production Portfolio Policy                    Policy No.

## CONDITIONS APPLICABLE TO ALL SECTIONS

**I.    GENERAL CONDITIONS**

Throughout this Policy, "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we," "us" and "our" refer to the Company providing this insurance.

**A.    NAMED INSURED**

Named insured shall mean the first named insured as per the Declarations and any majority owned or managed subsidiaries thereof, their respective parent and affiliated companies and or any financially controlled or managed organization and or any production company or other entity formed or contracted by or on behalf of the named insured or any other organization, entity  or person(s) which the named insured has agreed to insure.

**B.    TERRITORY**

This Policy applies anywhere in the world.

**C.    MISREPRESENTATION AND FRAUD**

This Policy is void if you knowingly concealed or misrepresented any material fact or circumstance concerning this insurance, or in the case of any fraud or false swearing by you, whether before or after a loss.  If you make any false or fraudulent claim as to the amount or otherwise, this Policy is void as to that specific claim, and we have the right to terminate this Policy at that time, and any subsequent claims by you are forfeited. The term "you:" as used in this paragraph applies to your executive production management, production producers or your Risk Management Department.

**D.    ASSIGNMENT**

This Policy may not be assigned without our written consent.

**E.    ACTION AGAINST US**

No action against us may be brought unless you have complied with all of the material provisions of this Policy and the action is started within two (2) years after the date on which the loss occurred.

Nothing in this Policy gives any person or organization any right to join us as a codefendant in any action against you to determine your liability.

**F.    Access To Records And Examination Under Oath**

We or our representatives may examine and audit your books and records as they relate to this policy at any time during the policy period or while a claim is pending. If requested, you must permit us to question you and, so far as within your power, all other interested persons under oath, at such times as may be reasonably required, about any matter relating to this insurance or a claim. No such examination under oath or examination of books or documents, nor any other act by us or any of our employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which we might otherwise have with respect to any loss or claim, but all such examinations and acts shall be deemed to have been made or done without prejudice to our liability.

**MP 201 (01-05)**

**Page [ PAGE  \\*
MERGEFORMAT ]
of [ NUMPAGES  \\*
MERGEFORMAT ]**

CONFIDENTIAL                        EXHIBIT 1, PAGE 15                    AONNBCU0003802

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

**G.      OTHER INSURANCE**

If, at the time of loss or damage, any other valid insurance is available which would apply to the loss or damage in the absence of this policy, the insurance provided by this policy will be primary to any other policy held by you but excess with respect to any policy or coverage held or provided by any other party, unless otherwise agreed by you.

To the extent recovery is made from such other insurance, the deductible and or the SIR under this policy will be reduced by such recovery. In no event will the deductible/SIR under this policy be greater than that shown in this policy.  If recovery from such other insurance is greater than the deductible/SIR in this policy, then the deductible/SIR under this policy will not apply.  For losses that exceed the Deductible or SIR in this policy we will share the recovery proportionally and share the costs proportionally.

This policy does not apply to any productions that have been or are required to be declared by you under similar insurance provided by any other insurer.

**H.      SUBROGATION**

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment.  That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them.

This insurance will not be prejudiced if you have waived your right of recovery from any party or parties and we will honor any written contractual  waiver of subrogation obligation agreed to by you prior to a loss and declared to us.

**I      Duties In The Event of Loss Or Damage**

In case of a loss or damage to which this insurance may apply, you must see that the following duties are performed:

(1) Police Notification - Notify the police if a law may have been broken.

(2) Minimize Loss or Damage – Take all reasonable steps to protect the property from further damage and minimize the loss. Keep a record of your expenses in doing so for consideration in the settlement of the claim. This will not increase the limit of insurance.

(3) Notice of Loss or Damage:

    (a)      Report immediately to us or our authorized representative any loss or damage which may become a claim under this policy. Include a description of the property or loss involved.

    (b)      As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Proof of Loss - File with us, or our authorized representative, as we may require, a detailed proof of loss  signed and sworn to by you setting forth to the best of your knowledge and belief the facts of the loss and  the amount thereof. You must do this within one hundred eighty (180) days after discovery of the loss or damage.

MP 201 (01-05)

CONFIDENTIAL              EXHIBIT 1, PAGE 16                  AONNBCU0003803

Named Insured
Motion Picture/Television Production Portfolio Policy                                                   Policy No.

      (5) Cooperation

         (a)   Except at your own cost, make no voluntary payments, assume no obligations, and incur no expenses without our consent. except  in settlement of any loss within the deductible.

         (b)   Permit us to inspect the property and records proving the loss or damage.

             Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

         (c)   Immediately send us copies of any demands, summonses or legal papers received in connection with the claim or suit.

         (d)   Cooperate with us in the investigation or settlement of the claim.

**j.  Loss Payment**

    (1)   Loss or damage covered by this policy will be payable to you or your loss payee.

         We agree that any holder of a Certificate of Insurance in which such holder is evidenced as a Loss Payee issued by us or on our behalf will be considered a Loss Payee, subject to your legal liability.

    (2)   We will not pay you more than your financial interest in the covered property.

    (3)   If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

    (4)  We will pay you for covered loss or damage within thirty (30) days after we receive and accept a satisfactory sworn proof of loss, as we may require and;

    (b)  A final judgment has been entered; or

    (c)  An appraisal award has been made.

    (5)  We may adjust losses directly with the owners of lost or damaged property, if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property.  We will not pay the owners more than their financial interest in the covered property.

    (6)  We may elect to defend you against suits arising from claims of owners of property.  We will do this at our expense.

We will not be liable for any part of a loss that has been paid or made good by others.

        1.

# K.  Deductible

    (1)   When a deductible applies, the terms of this insurance, including those with respect to your duties in the event of loss or damage, apply irrespective of the application of the deductible amount.

    (2)   We may pay any part or all of a deductible amount to effect settlement of any claim and, upon notification of the action taken; you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

# L.  Premium

    (1)  The first Named Insured shown in the Declarations:

        (a)   Is responsible for the payment of all premiums; and

**MP 201 (01-05)**

CONFIDENTIAL

**EXHIBIT 1, PAGE 17**

AONNBCU0003804

Named Insured
Motion Picture/Television Production Portfolio Policy                                          Policy No.

    (b)  Will be the payee for any return premiums we pay.

(2)  We will compute all premiums for this policy in accordance with the rating schedule(s) attached to and made a part of this policy.

(3)  The premium shown in this policy is a deposit premium only unless specifically stated otherwise. At the end of the policy period we will compute the earned premium by applying the rates set forth in the rating schedule(s) to the final "Insurable Production Costs". However, the earned premium will not be less than the minimum policy premium stated on the rating schedule(s), regardless of the term of coverage.

If the earned premium is greater then the deposit premium, we will send a bill to the first Named Insured that shows the amount due and when it is payable. If the earned premium is less than the deposit premium, we will return the excess to the first Named Insured.

The first Named Insured must keep records of the "Insurable Production Costs" and other information we need for premium computation, and send us copies at such times as we may request.

**L.**      **CANCELLATION**

    (1)      The first Named Insured shown in the Declarations may cancel this policy by returning it to us or our authorized representative, stating in writing the future date it is to be cancelled. The policy period will end on that date.

    (2)      We may cancel this policy by written notice to the first Named Insured at least:

      (a)   Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

      (b)   one hundred twenty (120) days before the effective date of cancellation if we cancel for any other reason.

    (3)      We will mail or deliver our notice by certified mail to the first Named Insured's last mailing address known to us.

    (4)      Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    (5)      If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

    (6)      If notice is mailed, proof of mailing will be sufficient proof of notice.

**M.**      **ABANDONMENT**

    There can be no abandonment of any property to us without our written consent.

**N.**      **STOP DATE LOSS**

    If as a result of delay in completing the original shooting schedule of an insured production you incur a loss in order to honor the termination date contained in a performance contract between you and any other person and/or their respective loan out company, such loss (hereinafter referred to as a stop date loss) would not be covered by the provisions of this policy, but this policy will, nonetheless, participate in a stop date loss to the extent that the need to incur such loss is directly related to a loss insured under the terms of this policy.  The extent of our participation in a stop date loss will be governed by the proper consideration of the following factors:

    1.      If the need to incur the stop date loss is solely and directly the result of an insured loss, the stop date loss will be recoverable in full.

**MP 201 (01-05)**

CONFIDENTIAL                    EXHIBIT 1, PAGE 18                    AONNBCU0003805

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

2.   If the need to incur the stop date loss arises in part by reason of an insured loss and also arises in part by reason of an uninsured occurrence so that it can reasonably be said that each contributed to the incidence of the stop date loss, then the extent that each so contributed will be determined and an apportionment of the stop date loss will be made.

3.   If the need to incur the stop date loss is in no way connected with an insured loss, no part of the stop date loss will be recoverable.

4.   Coverage afforded by this paragraph is subject to the proviso that the performance contract term was sufficiently longer than your original scheduled time for completion of the insured production so as to allow a reasonable margin of safety to cover possible delays in completing the insured production. It is agreed that 10 consecutive days is a reasonable margin of safety for features and 3 consecutive days is a reasonable margin of safety for all other productions.

**O.   APPRAISAL**

If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal. Each party will select a competent, independent appraiser and notify the other of the appraiser's identity within twenty (20) days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within fifteen (15) days, you or we can ask a judge of a court of record in the state of your residence to select an umpire. The appraisers will then submit a written report of an agreement to us and the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable period of time, they will submit their difference to the umpire. Written agreement signed by any two of these three will set the amount of the loss. The party selecting that appraiser will pay each appraiser. Other expenses of the appraisers and the compensation of the umpire will be paid equally by you and us.

**P.   POLICY CHANGES**

No changes may be made to this policy except by mutual agreement in writing.

**Q.   CONFORMITY TO STATE LAW**

When any policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply, unless the provision of this policy is broader.

**R.   DUE DILIGENCE CLAUSE**

You shall use due diligence and do and concur in doing all things reasonably practicable to avoid or diminish any loss or any circumstance likely to give rise to a loss or claim insured under this Policy. This policy will indemnify you for your additional incurred expenses and/or increased costs incurred by you to avoid or diminish any such loss or claim, subject to any deductible/SIR provision stated herein, provided however, that in no circumstance will our maximum liability under this policy be greater than the increased costs and/or additional incurred expenses, or in any event exceed the limits of liability of this policy.

**S.   INADVERTENT ERROR CLAUSE**

You will not be prejudiced by any unintentional or inadvertent omission, error or incorrect description of the property, persons, animals or exposures insured hereunder.

**T.   INSPECTION & SURVEYS**

(1)   We have the right to:
       (a)   Make inspections and surveys at any time;
       (b)   Give you reports on the conditions we find; and

MP 201 (01-05)

CONFIDENTIAL          EXHIBIT 1, PAGE 19          AONNBCU0003806

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

(c)     Recommend changes.

(2)     We are not obligated to make any inspections, surveys, reports or recommendations, and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety recommendations. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

(a)     Are safe or healthful; or

(b)     Comply with laws, regulations, codes or standards.

(3)     Paragraphs (1) and (2) of this Condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.


**U       Recoveries**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.


**V.     INSURANCE NOT TO BENEFIT OTHERS**

No person or organization, other than you, having custody of the property and to be paid for services shall benefit from this insurance. This restriction does not apply to a person or organization, other than a common carrier, who is working or providing services for you. behalf under the terms of a contract.


**W.     PROPERTY OF OTHERS**

In the event of loss or damage to property of others (insured hereunder) held by you for which claim is made upon us, the right to adjust such loss or damage with the owner or owners of such property is reserved to us and receipt of payment by such owner or owners  in satisfaction thereof shall be in full satisfaction of any claim by you for which such payment has been made. If legal proceedings are taken to enforce a claim against you as respects any such loss or damage, we shall, at our expense, conduct and control the defense of such legal proceeding on behalf of and in your name. No action of ours in such regard will increase our liability under this policy.
.


**X.     EXCHANGE RATE**

It is understood and agreed that the exchange rate for each declared production, for which claims are adjusted in currencies other than U.S. dollars, will be:

a.      The exchange rate as of the date of loss  Or;

b.      The exchange rate as of the date of entry of final judgment or date of execution of any settlement agreement of any claim, for all third party claimsor;

c.      The rate as paid by you to purchase foreign funds.


The rate of exchange applied to a loss shall be the rate as paid by you and agreed by us to purchase the foreign funds in settlement of a loss.


**MP 201 (01-05)**

CONFIDENTIAL          EXHIBIT 1, PAGE 20          AONNBCU0003807

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

We reserve the right, for claims that we settle directly with third parties to this policy, to adjust the claims at the prevailing exchange rate or the exchange rate used to actually purchase the foreign funds in settlement of a loss.

**II.     SPECIAL CONDITIONS**

**A.     DEFINITIONS**

**a.**   "Earthquake" means:

(1)   Any earth movement, such as an earthquake, landslide, mine subsidence, or earth sinking, rising or shifting; and

(2)   Volcanic eruption, meaning the eruption, explosion or effusion of a volcano;

provided that all earth movements or volcanic eruptions that occur within any seventy-two (72) hour period will constitute a single earth movement or volcanic eruption.

**b.**   "Flood" means flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not.

**c.**   "Insurable  Production Costs" means all costs incurred by you and chargeable directly to an insured production or series of productions except:

(1)   Administrative costs not directly related to an "Insured Production";

(2)   Any cost you did not incur as a cost directly related to the "Insured Production"; and

(3)   Any other costs specifically stated not to be "Insurable Production Costs" in an endorsement to this policy.

**MP 201 (01-05)**

CONFIDENTIAL            EXHIBIT 1, PAGE 21            AONNBCU0003808

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

**d.**   "Insured Production" means a production or series of productions that has been declared to us..

**e.**   "Mobile Equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

(1)   Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

(2)   Vehicles that travel on crawler treads;

(3)   Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted equipment, or maintained primarily for purposes other than the transportation of persons or cargo.

However, "Mobile Equipment" does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

**f.**   "Principal Photography" means the continuous period of time from the start date of pre-production and the continuing period of time from the starting date of photography to the finishing date actually required by you to produce, photograph or tape the production or series of productions. to the completion date you actually require to photograph or tape an "Insured Production".

**B.**   **ABANDONMENT**

Should a covered loss result in an abandonment, during the term of coverage, under any section of this policy, we have the right to require that you surrender all owned or licensed rights, title(s) and interest(s) in all documents, underlying works, copyrights and all related material of the insured production, except as relates to any sequel, prequel and their attendant merchandise.  We will reimburse you for the cost you incurred for the rights.

**D.**   **REFPORTING REQUIREMENTS**

You must declare to us on a declaration and information form acceptable to us, the particulars of each and every production or series of productions undertaken by you during the term of this policy. If Cast Insurance is to be provided you will report to us each covered person to be insured   prior to or within thirty (30) days of commencement of principal photography.

**E.**   **HIATUS COVERAGE**

1.   With respect to episodic television, coverage is continuous from the pilot through season one and between seasons for continuing television series insured hereunder, hereinafter referred to as Hiatus Coverage, subject to all other terms and conditions of this policy.

2.   Hiatus Coverage means the period of time from the end of coverage for the pilot or an episodic television season until the reinstatement of coverage for the first or subsequent season.

3.   The limits of liability, deductibles and terms that were in effect for the preceding pilot or season will apply during the hiatus period.

4.   Hiatus Coverage will abate upon declaration of the first or subsequent season, or immediately on the date when this policy is cancelled and or non-renewed by either you or us..

5.   Hiatus Coverage applies solely to Cast Coverage, Property and Third Party Property Damage.

6.      .

**MP 201 (01-05)**

CONFIDENTIAL           EXHIBIT 1, PAGE 22           AONNBCU0003809

Named Insured
Motion Picture/Television Production Portfolio Policy                                      Policy No.

**F**      **DELIVERY DATE EXPEDITING COSTS**

With respect to all productions insured hereunder, subject to all other terms and conditions, the definition of loss with respect to Cast Coverage, Negative Film, Faulty Stock and Extra Expense is extended to include any extra expenses you necessarily incur to meet an air date or delivery date of an insured production subject to a sub limit of liability of $1,000,000

**G.**      **PRINTS & ADVERTISING COSTS**

With respect to all productions insured hereunder, subject to all other terms and conditions, the definition of loss with respect to Cast Coverage, Negative Film, Faulty Stock and Extra Expense is extended to include the costs incurred for prints and advertising as have been rendered entirely valueless, solely in the event of an abandonment of an insured production, subject to a sub limit of liability of $1,000,000

**H**.      **Public Relations Costs**

With respect to all productions insured hereunder, subject to all other terms and conditions, the definition of loss with respect to Disgrace under Cast Insurance is extended to include the costs to hire a public relations firm, law firm or crisis management firm for the specific purpose to minimize potential harm to you arising from a situation or occurrence involving the disgrace of an insured cast member, subject to a sub-limit of liability of $250,000.

**I.**      **Annual Aggregate Deductible**

This policy is subject to "Insured Production" deductibles as listed herein and Annual Aggregate deductible for the policy term of $2,100,000 subject to the following:

1.   All adjusted claim amounts that you incur over the deductible amounts stated herein will accrue to the Annual Aggregate Deductible(s) Cap(s).
2.   At such time as the "Insured Production" or Annual Aggregate Deductible(s) has been exhausted, the deductible shown on the Declarations Page or within the policy will drop down to Maintenance Deductibles stated herein for each adjusted claim and for all subsequently adjusted claims for that "Insured Production" or annual period of declared productions.
3.   Any amount paid by you we have determined is covered by this policy

The Annual Aggregate Deductible will not include any claims under all sections of this policy except any Delivery date expediting costs, prints and advertising costs or public relations costs.

**I.**      **TERM OF COVERAGE**

1.   Cast Coverage commences up to 180 days prior to the start of principal photography or on the date the covered person is contracted to work for you on an insured production, and expires on the date on which a protection print or duplicate copy of an insured production or the pilot and series has been completed and physically removed from the premises where the original negative or tape is located, or until coverage on an insured production is terminated by you, whichever occurs first.

2.   All other coverage commences up to 180 days prior to the start of principal photography and expires on the date on which a protection print or duplicate copy of an insured production or

Named Insured
Motion Picture/Television Production Portfolio Policy                           Policy No.

> pilot and series has been completed and physically removed from the premises where the original negative or tape is located, or until coverage on an insured production is terminated by you, whichever occurs first.

3.   We cover an unlimited number of weeks of principal photography

## III.   CLAIMS ADMINISTRATION

The assigned independent adjuster is as follows:

Hyperion Claim Specialists LLC ("Hyperion")
550 S. Hope Street, Suite 1625
Los Angeles, CA  90071-2650
Phone:  213 347-0250
Fax:  213 347-0266

## IV.   EXCLUSIONS APPLICABLE TO ALL SECTIONS OF THIS POLICY

This Policy does not insure against loss or damage caused directly or indirectly by:

**A.**   War, including undeclared or civil war; or

**B.**   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**C.**   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**D.**   Any weapon of war employing atomic fission or radioactive force, whether in time of peace or war;

**E.**   Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by,  contributed to, or aggravated by the peril or perils insured in this policy.  However, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is covered;

**F.**   Risks of contraband or illegal transportation of trade;

**G.**   Dishonest or criminal acts by you or your employees;

**H.**   Any uninsured event occurring before, concurrently with or after the happening of an insured event, which directly or indirectly causes or in any way contributes to cause or increase a loss under this policy; but only with respect to that portion of any such loss caused by or contributed to by the uninsured event, unless the uninsured event would not have been a factor had such insured event never occurred.

MP 201 (01-05)

Page [ PAGE \*
MERGEFORMAT ]
of [ NUMPAGES \*
MERGEFORMAT ]

Named Insured
Motion Picture/Television Production Portfolio Policy                                  Policy No.

I.      "Stop Date Loss", as described in Special Condition d., except as otherwise provided in Special Condition

J       Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.


**I.**     Coverage does not apply under any section of this policy to any intentional loss or damaged by you or at your direction.

including such loss or damage arising out of or caused by any pre-arranged crash or the performance of any extra hazardous stunt. Hazardous stunt is as defined under a guild or motion picture/television union agreement. However this exclusion does not apply to loss or damage that is not planned or intended by you; and this exclusion does not apply to damage, destruction or threat thereof to software, media, data or similar computer media by you or anyone else breaching your network safeguards, firewalls and similar computer or computer network security to protect such software or computer media.

**MP 201 (01-05)**

Page [ PAGE  \*
MERGEFORMAT ]
of [ NUMPAGES  \*
MERGEFORMAT ]

EXHIBIT 1, PAGE 25                    AONNBCU0003812

Named Insured
Motion Picture/Television Production Portfolio Policy                          Policy No.

# SECTION I. CAST COVERAGE

CONFIDENTIAL          EXHIBIT 1, PAGE 26          AONNBCU0003813

Named Insured
Motion Picture/Television Production Portfolio Policy                                  Policy No.

**A.**     We agree to pay to you such loss (as defined in Paragraph III) as you directly and solely sustain by reason of any **Covered Person** as defined, being necessarily prevented by their death, injury, or sickness,, occurring during the term of coverage afforded by this Section, from commencing, continuing or completing their respective duties or performance(s) in an insured production including:

   1.     Death, serious injury or life threatening illness or accident of an **Immediate Family Member**,          r which first manifests itself during the term of coverage
   2.     **Kidnapping or unlawful detention** of a covered person
          3.     . "Violent Death" or "disgrace" of a Covered Person as to force the necessary abandonment of the "Insured Production"..

          except as  listed in the Exclusions.

          .

**Medical Examination & Accident Coverage**

   (

   b (2)     Sickness Coverage for the Covered Person will become effective on the date the medical examination or AFFIDAVIT AND ASUTORIZATION  is completed, subject to our receipt and approval of the medical questionnaire and certificate.

   Based on the medical information submitted to us, we have the right to make any reservation, exception or restriction regarding the insurability of the Covered Person within 36 working hours of receipt of the medical exam.  We will not pay for loss caused by or resulting from any such reservation, exception or restriction.

   If a Covered Person becomes sick or disabled before the medical exam AND OR AUTOROIZATION AND AFFIDAVIT has been completed  we will cover the sickness or disability subject SUCH to you showing that sickness or disability would not of been discovered during the medical exam OR UPON REIVEW OF GTHR AFFIDAVIT AND AUTHORIAZAYTON AND  and that they Covered Person had no prior knowledge.

**II.**

   For Feature Films the following **Covered Person(s)** must be examined by a duly qualified physician designated or approved by us, (veterinarian with respect to animals), who will submit to us a Medical Certificate & Affidavit signed by the examinee and physician (not applicable to animals prior to the date the Covered Person's assigned duties or role in the "Insured Production" are scheduled to commence. The physician must complete and submit to us a medical questionnaire and certificate, on forms approved by us and signed by the Covered Person.

**A.**     :

   1.     The Director(s);

   2.     Seven (7) covered persons with the greatest exposure to the production as determined by the Risk Management Department. If Risk Management has made a determination of the top seven (7) artists and it is discovered that the determination was incorrect, we will not deny a claim or penalize you for such incorrect determination.

**B.**     All other insured productions require an Affidavit & Authorization,  in connection with all covered persons .

**C.**     For all other productions **Covered Persons**

SECTION I.  CAST
CONFIDENTIAL
EXHIBIT 1, PAGE 27                          AONNBCU0003814

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

1.  Accident Only coverage commences automatically on each covered person on the date the covered person is contracted to work for you or the date you declare the covered person for coverage and or in accordance with Term of Coverage;

2.  Full coverage commences on the date the medical examination is performed and or the Affadvit & Authorization has been signed and dated by the covered person;

3.  If a **Covered Person** becomes disabled or sick resulting in a loss under this policy and such disability or sickness occurs prior to completion in its entirety of the Medical examination and or the signing and dating of the Affadvit & Authroization and the disability or sickness is due to a condition that would not have been disclosed during such examination , this policy will cover such claim;

4.  If the doctors we provide are not available to you for the completion of a medical examination, we grant you permission to use any licensed medical doctor available, EXCEPT for the covered person's personal physician;

5.  Our failure to respond to a Medical Certificate & Affidavit and or Affadavit & Authorization within 2 business days of our receipt, will result in full coverage without restriction.

D.

V.       Accident and Kidnap Coverage is effective on the date you have contracted with the Covered Person to perform in the "Insured Production".

VI.      "Disgrace" & "Violent Death" is effective ON THE DATE WHEN YOU HAVE CONTRACTED WITH THE COVERED PERSON IN THE INSURED PRODUCTION. SUCH COVERAGE AS IS AFFORDED HEREUNDER AND ONLY WITH RESPECT TO REALITY PROGRAMMING IS SUBJECT TO YOUR HAVING PERFORMED ANY AND ALL APPLICABLE BACKGROUND CHECKS AND RESEARCH ON ANY COVERED PERSON.

VII.     Immediate Family coverage IS EFFECTIVE ON THE DATE YOU HAVE CONTRACTED WITH THE COVERED PERSON TO PERFORM IN THE INSURED PRODUCTION.

VIII.    **"Essential Element" is effective when the Covered Person is declared and approved by us**. NOT NECESAARY

E.     For All Covered Persons

1.  It is understood that our right of approval shall be based on the medical examination, if applicable, and/or case history;

2.  Should we for any reason make any reservation, exception or restriction with respect to the insurability of any covered person(s), the provisions of Paragraph I Insuring Agreement, are inapplicable to the extent that the condition(s) referred to in the reservation, exception, or restriction directly or indirectly results in a loss.

.

c.   Term of Coverage
1.  (1) Cast Coverage commences up to 180 days prior to the start of principal photography or on the date the covered person is contracted to work for you on an insured production, and expires on the date on which a protection print or duplicate copy of an insured production or the pilot and series has been completed and physically removed from the premises where the original negative or tape is located, or until coverage on an insured production is terminated by you, whichever occurs first. Term of Coverage is extend to include as defined in this policy HiatusTerm o

Named Insured
Motion Picture/Television Production Portfolio Policy                                                    Policy No.

Term of Coverage, as used in this Coverage, means the period beginning with the effective date shown in the Declarations, and continuing until the expiration date of this policy or completion of "Principal Photography", whichever occurs first.

(2)   Subject to the Medical Examination Condition  and or Affidavit & Authorization below, Term of Coverage also includes the Pre-Production period of Cast Coverage.

(a)   The Pre-Production period for Covered Persons who are "Guest Artists" in episodic television begins thirty (30) days before the start of "Principal Photography" or videotaping of the "Insured Production".

(b)   The Pre-Production period for other Covered Persons begins sixty (180) days before the start of "Principal Photography" .

(3)   You may, provided we are given prior notice:

(a)   Declare a starting date of "Principal Photography" at any time within the term of the policy; and

(b)   Continue Cast Coverage for up to sixty 18 months after completion of "Principal Photography"  or to include hiatus periods or the delivery and storage of protective material in a storage vault which ever occurs first.

## II.   ADDITIONAL EXCLUSIONS

For the purposes of this Coverage, the following exclusions apply in addition to the exclusions described in Part V. of the Policy Conditions - Exclusions Applicable To All Coverages of This Policy.

We will not pay for loss caused by or resulting from any of the following:

a.   Sickness on a Covered Person unless accepted by us and or as may be provided under II Medical EXAMINATION.

b.   Any Covered Person taking part in any hazardous stunt(s AS DEFINED UNDER ANY APPLICABLE GUILD AND OR UNION CONTRACT without our written consent;

c.   Any Covered Person taking part in flying other than as a passenger;

**II.**   The inability of any female to continue her performance because of medical conditions or complications related solely to pregnancy, however, this exclusion will not apply for covered persons who were unaware of their pregnancy WHEN THEY WERE DECLARED TO THIS POLICY OR IF A medical examination was not required**;**

a.   Any Covered Person over seventy four years of age unless the person is specifically named in an endorsement attached to this policy;

b.   Any reservation, exception or restriction we have imposed on a Covered Person, as described in the Medical Examination Condition below, regardless of when the event causing loss occurs.

c.   Ransom HERUNDER UNLESS  payment is authorized, APPROVED AND MONITORED by the police OR OTHER CIVIL authority

d.   Behavior, action or inaction of a covered person that is consistent with the known public or private persona or behavior of the covered person which gives rise to "disgrace" of the "covered person".

## III.   LIMITS OF INSURANCE

The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the Declarations for Cast Coverage.

Ransom payment will not exceed $1,000,000 Sublimit.

## IV.   DEDUCTIBLE OR SELF INSURED RETENTION

We will not pay for loss in any one occurrence until the amount of the adjusted loss before applying the applicable limits of insurance exceeds the deductible or self insured retention amount shown in the Declarations for Cast Coverage. We will then pay the amount of the adjusted loss in excess of the deductible or self insured retention, up to the applicable limit of insurance.

## III.   DEFINITION OF LOSS


CONFIDENTIAL
EXHIBIT 1, PAGE 29

Named Insured
Motion Picture/Television Production Portfolio Policy                    Policy No.

Loss, as used in this Section, shall mean any extra expenditure (as defined in CONDITIONS APPLICABLE TO ALL SECTIONS, II. SPECIAL CONDITIONS. A. INSURABLE PRODUCTION COST), you incur and/or have committed to in completing an Insured Production over and above the expenditure which, but for the happening of any one or more of the occurrences specified in SECTION I. INSURING AGREEMENT would have been incurred in completing the Insured Production.

In the event that the happening of one or more of the occurrences specified in SECTION I. INSURING AGREEMENT reasonably and practically prevents the completion of an Insured Production irrespective of any completion, delivery or or air date , you will have the right to abandon the production and claim under this Section for such actual expenditures you incur in an Insured Production or, have committed to , as have been rendered entirely valueless solely and directly by reason of the happening of one or more of the occurrences specified in SECTION I, INSURING AGREEMENT, subject to the SPECIAL CONDITIONS of this policy.

## V. METHOD OF VALUATION  DEFINTION OF LOSS

a.  The amount of your loss will be determined based on:

(1)  All necessary "Insurable Production Cost" you incur to complete the insured production that exceeds the amount of "Insurable Production Cost" you would have incurred if the covered cause of loss had not occurred; and

(2)  All other necessary expenses that reduce the amount of loss otherwise payable.

However, your loss will not include loss of earnings of profit.

b.  We will reduce the amount of your loss to the extent:

(1)  You can resume "Principal Photography" and discontinue incurring extra "Insurable Production Cost"; or

(2)

.

c.  If you abandon an "Insured Production" that has been made substantially valueless solely because one or more covered causes of loss reasonably, practically and necessarily prevents you from completing " the isnured productionv", irrespective of any completion or delivery date requirements for the "Insured Production", we will pay as loss the total "Insurable Production Cost" you have incurred or which has been commited for the "Insured Production".

# VI.  Duties In The Event of Loss

The following is added to Policy Condition I.f. - Duties In The Event of Loss Or Damage:

(1)  You must report immediately to us or our authorized representative any fact or circumstance which may prevent a Covered Person from commencing, continuing or completing an assigned duty or role in an "Insured Production" and which may result in a claim under this policy.

(2)  You must immediately secure and file with us or our authorized representative the certification of a duly licensed physician. The certification must include a complete description of the injury, sickness or death and the prognosis.

(3)  You must make every effort to preserve our rights, including enforcing any contractual conditions or terms applicable to the Covered Person, to:

(a)  Have any Covered Person examined by a medical doctor of our choice; and

(b)  Have continuing access to the medical records of any Covered Person.

b.  **Medical Examination & Accident Coverage**

# VII. ADDITIONAL DEFINITION

For the purposes of this Coverage, the following definition applies in addition to the definitions described in Part IV. of the Policy Conditions - Definitions Applicable To All Coverages of This Policy:

"Guest Artist" means a Covered Person appearing in or contracted to appear in episodic television for less than three (3) consecutive episodes or less than fifty percent (50%) of a series of productions.

"Immediate Family Member" means the mother, father, sister, brother, spouse, life partner, child, stepparents, stepchildren, stepbrother, stepsister, mother-in-law, father-in-law, sister-in-law, brother-in-law, daughter-in-law, son-in-law or "significant others" OR DOMESTIC PARTNER, grandparent or grandchild of the Covered Person.

Covered Person" shall mean: A Covered Person declared  TO us PRIOR TO OR CONCUrrent WITH THE START OF PRICNPAL PHOTOGTAPHY AND IN ACCORDANCE WITH SPECIAL Conditions  "D" reporting requirements of this policy.

"Violent Death" means the  Covered Person died at the hands of another person and that the  Covered Person was involved in a crime. The showing of the Insured Production would degrade the insured and would anger the public

**Disgrace** means any criminal act or alleged criminal act, or any offense against public taste or decency, committed by a covered person,  beyond their usual or expected behavior, or any situation or occurrence directly involving a covered person which degrades or brings that person into disrepute or provokes insult or shock to the community or reflects unfavorable upon the named insured or insured production.

**Kidnapping and or unlawful detention** means the involuntary taking and holding of a **Covered Person(s)** FOR ANY REASON BY OTHERS WITOUT SUCH PERSONS VOLUNTARY CONSENT

B.        "Essential element is defined as a  **Covered Person(s) necessary for the purpose of completion and delivery of an insured production and accepted by us and or**  as required by a financial and/or distribution agreement with respect to an Insured Production.

.

## VIII   COVERAGE EXTENSION

In the event of:

(i)    The death of a declared "Essential Element" during the period of pre-production or principal photography; or

(ii)   The injury or illness of an "Essential Element" during the period of principal photography, whose injury or illness necessarily prevents the declared artist from performing services and completing the insured production. The injury or illness must incapacitate the "Essential Element" for a period of more than [ FORMTEXT ] days;

it shall be considered reasonable, practical, and necessary for you to abandon the Insured Production during principal photography and make claim under this Section for such costs (defined in Section I. Cast, VI. Definition of Loss, Paragraph b).

d.    Pursuant to Paragraph c. (ii) above, we shall have the option to delay your abandonment of the insured production for up to [ FORMTEXT ] days after the occurrence of the injury or onset of the injury or illness if in our good faith business judgment the artist is likely to recover from such injury or illness to resume his/her assigned role or position within [ FORMTEXT ] days.

(i)    In the event our decision to exercise our option to delay your abandonment of the insured production for up to [ FORMTEXT ] days after the occurrence of an injury or onset of an illness of the declared "Essential Element" causes you to incur a loss in excess of the amount stated in Section I. Cast, Paragraph II, Limit of Liability,

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

then such limit of liability shall automatically be increased to include the costs necessarily incurred in excess of the Limit of Liability caused solely and directly by the warranties below.

**Warranties**

Prior to payment of the "Essential Element" loss covered by this endorsement, you warrant that you will comply with the following:

A.  Upon our written request, within five (5) business days following the "Essential Element" loss you and one of our representatives shall meet to determine the viability of the options to complete the insured production, including the possibility of replacing the "Essential Element". You will do all things possible to complete the Insured Production, where possible with the remaining cast and crew, including maintaining or replacing financing to complete the insured production. "Essential Element" replacement will be a person of similar standing within the motion picture industry who is acceptable to the independent financiers or distributors.

B.  You will work with us in good faith and do all things possible to replace the "Essential Element" and upon our request, provide us your authority to negotiate on your behalf with any other party to assist in the replacement of an "Essential Element" or financing.

C.  You will at our option enable us to maintain or replace any financing to complete the insured production.

Any breach of the above warranties will relieve us of any claim that would be payable under this endorsement.

Named Insured
Motion Picture/Television Production Portfolio Policy                                      Policy No.

## SECTION II. NEGATIVE FILM & FAULTY STOCK

**I.    INSURING AGREEMENT**

   **A.**    We agree to pay you such loss (defined in Paragraph IV) as you directly and solely sustain as a result of loss of, damage to or destruction of videotape stock, raw film stock, recorded videotape, exposed motion picture film (developed or undeveloped), inter-positives, positives, work prints, cutting copies, fine grain prints, sound tracks, tapes, transparencies, cells, art work (used to create animation or other images), source materials, software, data, media and related material used to generate computer or other images, and or any similar material or property, caused by an insured peril (defined in Paragraph II) when such property is your property or the property of others for which you are legally liable and, while such property is used or to be used in connection with an insured production.

**II.    PERILS INSURED**

   This coverage insures:

   1.       All risks of direct physical loss or damage;

      2. Faulty materials, faulty equipment, faulty computer equipment, faulty editing, faulty developing or faulty processing; and including accidental erasure, magnetic, or x-ray injury, disturbance or erasure of film, electronic recordings or video tape and loss of media, data, or software.

   .     3. Operator error including faulty manipulation or faulty operation, of camera, lighting, sound, electrical, editing, computer or any other equipment; technician's error(s) of judgment; and errors in machine or computer programming or instructions to any machine or computer

**III.    LIMITS OF INSURANCE**

   The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the Declarations for Negative Film coverage.

   Operator Error is subject to a $2,000,000 Sub-limit

**IV. DEDUCTIBLE**

   We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable limits of insurance exceeds the deductible amount shown in the Declarations for Negative Film Coverage. We will then pay the amount of the adjusted loss or damage in excess of the deductible, up to the applicable limit of insurance.

**III.    PROPERTY EXCLUDED**

   This coverage does not insure cut-outs, unused footage or library stock.

**IV.    DEFINITION OF LOSS**

   **A.**    Loss, except for loss to videotape stock, raw film stock or blank media, means only such extra expenditure you incur to re-photograph, re-tape, recreate or reprogram in substantially the same manner that portion of an insured production over and above the expenditure, which but for the happening of any one or more of the occurrences specified in Paragraph I, would have been incurred in completing that portion of said production.  However, loss arising from delay in completion of any insured production(s) is not recoverable under the terms of this Coverage except such loss arising from delay that is both unavoidable and which occurs during the period of time necessary to re-photograph, re-tape, recreate or reprogram that portion of the film, tape or software which is the subject of a loss claimed under the terms of this Coverage.  Extra

SECTION II. A.  NEGATIVE FILM
CONFIDENTIAL

EXHIBIT 1, PAGE 33                    AONNBCU0003820

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

expenditure refers to the costs defined in GENERAL CONDITIONS II. Special Conditions "A", Definition of Insurable Production Cost.

**B.**     Loss to videotape stock, raw film stock or blank media applies only to the actual cost to replace the lost or damaged videotape stock, raw film stock or blank media with stock of like kind and quality.

**C.**     In the event that the happening of one or more of the occurrences specified in Paragraph I., reasonably and practically prevents the completion of an insured production irrespective of any completion, air or delivery date, you have the right to abandon production and claim under this coverage for such actual expenditures you incur and have committed to, as have been rendered entirely valueless solely and directly by reason of the happening of one or more of the occurrences specified in Paragraph I., subject to the SPECIAL CONDITIONS of this policy.

## V.     EXCLUSIONS

This coverage does not insure against loss caused by or resulting from:

**A.**     Exposure to light, deterioration, atmospheric dampness or changes in temperature;

**B.**     The use of incorrect raw film stock or videotape or media/software;

**C.**     Delay, loss of use, loss of market, interruption of business, or any other consequential loss due to loss of or damage to videotape stock, raw film stock or blank media;

**D.**     Unexplained or mysterious disappearance or shortage found upon taking of inventory.

**E.**     Use of film, videotape, cameras, lenses or photographic tape or sound equipment that  has not been fully tested by you or on your behalf, and found to be in sound operating condition prior to the commencement of the filming of an "Insured Production" or series of productions.

## VI.     CONDITIONS

You will ensure that artwork, drawings, software and related material (hereinafter referred to as "source material") used to generate computer images and animation cells are retained until a protection print has been completed or expiration of this coverage, whichever comes first.

You will safeguard and maintain all source material(s) that have been photographed, or used as intended in the production process. Damage to such source material will not be considered a loss hereunder, except to the extent that other covered property is damaged and you have complied with the above.

## VII.     DEFINITIONS

**A.**     COMPUTER PROGRAMS means data, and source code used to direct the computer equipment, including diagrams or other records which can be used to reproduce programs.

**B.**     DATA includes and is not limited to facts, concepts, source code, programming records or instructions which are converted to a form usable in your electronic data processing operations, computer programs or electronically controlled equipment.

**C.**     MEDIA includes electronic data processing recording or storage media on which Data are recorded or stored such as software, films, tapes, discs or cells.

**D.**     SOFTWARE means any combination of DATA, MEDIA or COMPUTER PROGRAMS

**E.**     Computer EQUIPMENT means your programmable electronic equipment that is used to store, retrieve or process software. It includes but is not limited to any component parts and associated peripheral

CONFIDENTIAL

Page [ PAGE ] of [ NUMPAGES ]

EXHIBIT 1, PAGE 34

AONNBCU0003821

equipment or hardware that provides communication including input and output functions, printing and data transmission. Computer equipment does not include software.
.

## LIBRARY STOCK EXTENSION

1.  The following is added to Paragraph I.a. Covered Property:

    Covered Property, as used in this Coverage, includes the following:

    Your original cut negative film of completed or released productions, duplicate negatives, completed video tapes or other media which is considered library stock to you.

2.  Paragraph I.b. Property Not Covered is amended to remove subparagraph (3) Library stock.

3.  Part III. Limits of Insurance is replaced by the following:

    a.  The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the Declarations for the applicable Coverage(s).

    b.  Subject to the above limit of insurance applicable to any one occurrence, the most we will pay for loss or damage to library stock in any one occurrence is $1,000,000.

    c.  Subject to the above limits of insurance applicable to any one occurrence and library stock, $1,000,000 is the most we pay for loss or damage to any one production.

4.  The following is added to Part IV. Deductible:

    With respect to library stock, the deductible amount is the same as the deductible amount shown in the Declarations or otherwise applicable.

5.  The following is added to Part V. Method of Valuation:

    The amount of your library stock loss will be determined based on the actual cost to repurchase from an outside source, reprint or copy in whole or in part the affected portions of the library stock, whether or not the reprint or copy is made from an original or a copy of the lost or damaged library stock.

CONFIDENTIAL
EXHIBIT 1, PAGE 35                    AONNBCU0003822

## SECTION III. COVERAGE A.  EXTRA EXPENSE

**I.**      **INSURING AGREEMENT**

        **A.**     We agree to pay to you such loss (as defined in Paragraph VII.), not including loss of earnings or profit, as you sustain by reason of such extra expense you necessarily incur as a result of the interruption, postponement or cancellation of an Insured Production when such interruption, postponement or cancellation is the sole and direct consequence of:

1.     A sudden and accidental occurrence entirely beyond your control or a Covered Person Control;

       2.        confiscation and/or detainment of equipment, material or personnel by order of any government or civil authority;

       3.        travel delay as a result of adverse weather conditions to Covered Persons or necessary property

       4.        Interruption or loss of utilities (electrical, steam, gas or any other power source) required to continue or complete an insured production;

       5.        Strikes by any party, union, guild or labor group for which you are not a signatory or directly involved in negotiations;

       6.        Verifiable breakdown or malfunction of property used or to be used in connection with an insured production.

       7.        interruption, postponement or cancellation of an insured  production as a direct result of the action of a civil authority that revokes your permission to use or prohibits access to property or facilities used or to be used in connection with an Insured Production.

       7.        a Crisis Event meaning all of the following elements have occurred:

            1. The Crisis Event results in a life-threatening physical injury or accidental death to any member of the insured production;
            2. The Crisis Event occurs at a filming location of the insured production (meaning a location where cast or crew is assembled to shoot any scheduled work);
            3. The Crisis Event is witnessed by members of the Insured Production;
            4. The Crisis Event results in the immediate suspension of production of the Insured Production

## III. LIMITS OF INSURANCE

The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the Declarations for Extra Expense coverage, except the following:

Strike is subject to a $1,000,000 any one occurrence

Confiscation is subject to a $1,000,000 any one occurrence

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

## IV. DEDUCTIBLE

We will not pay for loss in any one occurrence until the amount of the adjusted loss before applying the applicable limits of insurance exceeds the deductible amount shown in the Declarations for Extra Expense Coverage. We will then pay the amount of the adjusted loss in excess of the deductible, up to the applicable limit of insurance.

## II. WARRANTIES

You warrant that:

**A.** All necessary arrangements and contractual agreements for the Insured Production, including, but not limited to, permits, visa(s) and licenses, have been obtained and/or executed by you, prior to any "loss" covered hereunder.

**B.** You have disclosed to us any arrangements, contractual conditions, physical conditions or other facts that could affect the Insured Production.

**C.** Prior to the inception of coverage hereunder, you warrant having no knowledge of any matter, fact or circumstance, actual or threatened, that increases or could increase the possibility of a "loss" under this Policy.

Failure to fulfill any warranty above will release us from all obligations under this Policy, to the extent that a "loss" is suffered or increased by that failure.

## IV  Property Not Covered

Covered Property does not include Negative film, video tape, tapes, cels, transparencies, positives, sound tracks, art work, software, programs or any other form of media.

## III. EXCLUSIONS

This coverage does not cover "loss" caused by, resulting from, or arising out of:

**A.** The failure of any person(s) in connection with the Insured Production to commence, continue or complete their respective duties or performances for any reason; or

**B.** Any financial cause of "loss', including but not limited to:

i.   Any deficient or inadequate response, support or withdrawal of support, including insufficient attendance or interest prior to attendance;

ii.   Withdrawal of funds, inadequate or insufficient finances, however caused;

iii.   Any financial failure of any venture, company, entity or person;

iv.   Any failure to maintain adequate receipts, sales or profits, including any failure to provide bond(s) or financial security;

v.   Any variation in the rate of exchange, including devaluation, rate of interest or stability of any currency;

vi.   Any financial default, insolvency, debt or failure to pay necessary expense to any person, firm or corporation.

**C.** Any actual adverse weather at the location of any insured production except when:

1.  The action of a civil authority prevents access to or closes down facilities or locations due to conditions that threaten the safety of cast, crew and or property and or;

**D.** your failure or inability to complete or obtain any contractual agreements, permits or licenses of any kind;

**E.** your failure or inability to properly comply with, or the violation of, any requirement or any procedure necessary for the issuance and continuance of any permit or authorization; or your failure to properly process or complete any applications or required documents;

Named Insured
Motion Picture/Television Production Portfolio Policy                                          Policy No.

**F.** the refusal or revocation of any permit or authorization due to a violation of any existing civil or criminal law or codes;

**G.** Any Governmental body or Civil Authority refusing entry or exit to a country, or refusing any entry or exit visas; or

**H.** Any Governmental body or Civil Authority preventing the commencement or completion of an insured production, except when;

    i. The Governmental body or Civil Authority withdraws your properly issued and executed permit(s) due to safety concerns or physical loss or damage at the location required for the Insured Production; or

    ii. The Governmental body or Civil Authority has prevented access to any facility(ies) or location(s) required to commence or continue the Insured Production;

**I.** Any concern or fear of an occurrence which may affect the commencement or the continuation of the Insured Production, unless a Civil Authority closes down the Insured Production due to conditions that threaten the safety of those working on the Insured Production;

**J.** Any concern or belief that the commencement or continuation of Insured Production is inappropriate.

**K.** Violation of any Law or Statute, or any actual dishonest, fraudulent, criminal or malicious act committed by you, your agents, representatives and or contractors including any judicial injunction or action for injunctive relief;

**L.** Breach of contract by any party whether their contractual relationship be with you or otherwise where such loss is consequent upon or contributed to by any cause within your control or any other such party which includes the failure of any individual or entity contracted, hired or employed to willingly perform the duties for which that person or entity has been hired with respect to the Insured Production.

**M.** Wear and tear; any quality in the property that causes it to damage or destroy itself; hidden or latent defect; gradual deterioration; depreciation; mechanical breakdown or electrical breakdown; insects; vermin, or rodents; corrosion, rust, dampness, cold or heat.

    This exclusion does not apply to verifiable breakdown or malfunction of property. that was properly tested and shown to be in working order.

**N.** Processing or work upon the property.

    But if processing or work upon the property results in fire or explosion, this exclusion does not apply to direct loss or damage caused by that fire or explosion, if the fire or explosion would be covered under this Coverage.

**O.** Unexplained or mysterious disappearance or shortage found upon taking of inventory.

**P.** Rain, ice, sleet, snow or hail, whether driven by wind or not, to property stored in the open.

    This exclusion does not apply to property that was built or designed to be stored in the open.

**Q.** Intentional acts committed by you or at your direction.

**R.** Delay, loss of use (including loss of use of animals), loss of market, interruption of business, or any other consequential loss.

**S.** Any other loss that may be covered by some other section of this policy.

**III.     DEFINITION OF LOSS**

    **A.** Loss, as used in this Section, means any extra expenditure (as defined in CONDITIONS APPLICABLE TO ALL SECTIONS, II. SPECIAL CONDITIONS. A. INSURABLE PRODUCTION COST), incurred and or committed by you in completing an Insured Production over and above the expenditure which, but for the happening of any one or more of the occurrences specified in Paragraph I would have been incurred in completing the Insured Production.

    **B.** In the event that the happening of one or more of the occurrences specified in Paragraph I. reasonably and practically prevents the completion of an Insured Production irrespective of any completion or delivery date requirements, you shall have the right to abandon the production and claim under this Section for such actual expenditures you incurred and or committed in an Insured Production and as have been rendered

entirely valueless solely and directly by reason of the happening of one or more of the occurrences specified in Paragraph I., subject to the SPECIAL CONDITIONS of this policy.

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

## SECTION III. COVERAGE B.  PROPERTY

**I.      INSURING AGREEMENT**

     **A.**     We agree to pay to you or on your behalf the value of any property, including loss of use, owned by you or which is the property of others and for which you are legally liable and which is lost, damaged or destroyed, caused by the Perils Insured against, while such property is used or to be used by you in connection with an Insured Production including but not limited to :

          1.     Scenery, costumes, theatrical props and related equipment;

          2.     Cameras, camera equipment, sound and lighting equipment, portable electrical equipment, mechanical effects equipment, grip equipment and mobile equipment;

          3.     Office equipment, furniture, fixtures and tenants improvements and betterments;

          4.     Vehicles rented or picture vehicles you own

          5.     Money & Currency

Property Not Covered

Covered Property does not include:

(1)  Personal Property that is covered under any other Coverage of this policy;

(2)  Animals ;

(3)  Growing plants except as part of a set;

(4)  Accounts; bills; currency, numismatic properties or money; food stamps; notes; securities; stamps; deeds; evidences of debt; letters of credit; credit cards; passports; transportation, admission or other tickets;

     unless specifically added to this policy;

(5)  Buildings or their improvements and betterments, except

(6)  Aircraft unless used as part of a set as a non-functional craft during filming or taping;

(7)  Watercraft valued over $250,000 while waterborne, unless used or intended to be used as part of a set and moored to a pier, dock, wharf or similar fixed structure;

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

(10) "Land Vehicles" or "Mobile Equipment" while involved in racing, chase scenes, or stunts, unless specifically added to this policy or as outlined herein;

(11) "Land Vehicles" you own, unless specifically added by an endorsement to this policy or that are picture vehicles owned by you while used or intended to be used on-camera in an "Insured Production";

(12) Negative film, video tape, tapes, cels, transparencies, positives, sound tracks, art work, software, programs or any other form of media;

(13) Furs, fur garments and garments trimmed with fur except as added to this policy;

(14) Jewelry, costume jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals;

(15) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

## III. LIMITS OF INSURANCE

a.   The most we will pay for loss or damage in any one occurrence is the Limit of Insurance shown in the Declarations for Property.

b.   Subject to a. above, $250,000____ is the most we will pay for loss or damage (except loss of use) to the following types of property:

(1) Furs, fur garments and garments trimmed with fur;

(2) Jewelry, costume jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals; and

(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

(4) animals

This limit applies to any one occurrence, regardless of the types or number of articles that are lost or damaged in that occurrence.

## IV. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable limits of insurance exceeds the deductible amount shown in the Declarations. We will then pay the amount of the adjusted loss or damage in excess of the deductible, up to the applicable limit of insurance.

## II.   PERILS INSURED

This Coverage Section insures against all risks of direct physical loss or damage to the property covered from any external cause, except as hereinafter excluded.

## III.   PERILS NOT INSURED

This Coverage does not insure against loss or damage caused by or resulting from:

**A.**   wear and tear; hidden or latent defect; gradual deterioration; depreciation; insects; vermin or rodents; corrosion, rust, dampness, cold or heat however this exclusion does not apply to verifiable breakdown or malfunction to covered property;

**B.**   any work process, experimentation, repairing, restoration,  conversion, or partial conversion, retouching, painting, cleaning or any other form of process performed or undertaken by you or on your behalf or at your direction, unless accidental fire or explosion ensues and then only for the loss or damage caused by such ensuing fire or explosion.;

**C.**   unexplained or mysterious disappearance, or shortage found upon taking of inventory;

GENERAL ENDORSEMENT NO. 1
NAMED INSURED                                Page [ PAGE ] of [ NUMPAGES ]

CONFIDENTIAL               EXHIBIT 1, PAGE 41               AONNBCU0003828

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

**D.**    rain, sleet, snow or hail, whether driven by wind or not, to property stored in the open. This exclusion does not apply to property that was built or designed to be stored in the open;

**E.**    damage to or destruction of property caused intentionally by you or at your direction;

**F.**    loss, destruction or damage caused by or resulting from delay, loss of market, interruption of business or other consequential loss extending beyond direct physical loss or damage;

**A.**    With respect to animals:

    1.    any activity other than those performed in connection with an Insured Production;

    2.    any cosmetic alteration that has not been approved by a qualified veterinarian;

    3.    willful misconduct or misuse;

    4.    quarantine, unless as a result of a peril not otherwise excluded.

    5.    Intentional slaughter of the animal, either voluntary or by act of or at the direction of any local authority; this exclusion shall not apply when an animal is sick and the Veterinarian recommendation is to slaughter the covered animal.

    6.    confiscation or nationalization of the animal for any reason whatsoever

    7.    any sickness as described in the Certificate of Health

## IV.    PROPERTY NOT COVERED

This Coverage does not insure:

**A.**    growing plants unless used as part of a theatrical set

**B.**    accounts; bills; currency, numismatic properties or money; notes; securities; stamps; deeds; evidences of debt; letters of credit; credit cards; passports; railroad, airline or other tickets;

**C.**    buildings unless used as part of a theatrical set.

**D.**    aircraft used for any purpose other than as part of a theatrical set in which it is used strictly as a non-functional craft (i.e. not moving under its own power at any time during filming or taping);

**E.**    watercraft valued over $500,000 unless waterborne and moored to a pier, dock, wharf or similar fixed structure and used or intended to be used as part of a theatrical set;

**F.**    vehicles you own, rent or hire that are used for any purpose other than in connection with an Insured Production;

**G.**    film, tape, recording or recording storage medium of any type unless used as a prop on a theatrical set;

**H.**    jewelry, watches, watch movements, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals

**I.**    Fine art with a value in excess of $250,000 and used or to be used or intended to be used as part of a theatrical set.

GENERAL ENDORSEMENT NO. 1
NAMED INSURED                                    Page [ PAGE ] of [ NUMPAGES ]

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

## V.   VALUATION

The basis of determining the value of the property insured hereunder, except with respect to vehicles, will be as follows:

A.   Your property will be valued at the full cost of repair or replacement, without deduction for depreciation or betterment, if repaired or replaced with due diligence and dispatch and in no event unless repair or replacement is completed within one year from the date of loss.  .  If not repaired or replaced, the property will be valued at its actual cash value at the time and the place of loss.

B.   Property of others will be valued in accordance with a written contract and in the absence of a written contract at common or fair market value or as you are obligated to pay by common law.

C.   Vehicles will be valued at actual cash value as of the date and location of loss or in accord with a written contract.

## VI.   MONEY & CURRENCY

A.   Coverage is extended for loss or destruction of money and currency subject to a sub-limit of liability of $250,000 any one loss arising out of:

1.   fire;

2.   burglary (defined as a loss, which results from forcible entry to or exit from premises, safes or locked property);

3.   armed robbery (defined as the forcible taking of money at gunpoint or by similar threat);

4.   no coverage attaches hereunder in any circumstances other than as noted above.

B.   Coverage is provided at the following locations while:

1.   in locked safes and vaults secured on your premises and/or locations used as temporary production offices and/or in hotel safes;

2.   in the custody of your approved agents in the course of and while performing their duties as agents;

3.   on your business premises during the normal hours of business.

C.   You warrant that you and your agents will secure money and currency overnight in safes whenever available at locations other than your business premises. Failure to adhere to this warranty will relieve us from all obligations under this coverage to the extent that a loss is suffered or increased by that failure.

D.   No loss attaches hereunder for loss of money and currency arising out of mysterious or unexplained disappearance, or for shortage disclosed upon taking of inventory.

## SECTION III. COVERAGE C.  THIRD PARTY PROPERTY DAMAGE

## I.   INSURING AGREEMENT

GENERAL ENDORSEMENT NO. 1
NAMED INSURED                              Page [ PAGE ] of [ NUMPAGES ]

CONFIDENTIAL              EXHIBIT 1, PAGE 43              AONNBCU0003830

We agree to pay on your behalf all sums which you become legally obligated to pay as damages because of injury to or destruction of property of others, including loss of use, occurring during the term of coverage while such property is in your care, custody or control and is used or to be used in connection with an insured production.

## II.   EXCLUSIONS

This coverage does not apply to liability for:

**E.**     injury to or destruction of property caused intentionally by you or at your direction;

**F.**     physical damage to motor vehicles, trailers, aircraft or watercraft

**G.**     injury to or destruction of property covered under Section III. Coverage B;

**H.**     damage to or destruction of property resulting from your failure to provide reasonable and proper care of property ;

**I.**     injury to or destruction of premises (including buildings) rented to or leased by you that are used for any purpose other than in connection with an insured production.

## III.   DEFINITION OF INSURED

The word "Insured" means:

The Named Insured as stated on the Declarations page and any employee (or other person under the Named Insured's direct control), partner, officer, or director thereof (referred to as "you" or "your"), but only with respect to any act or failure to act on the part of such parties while acting within the scope of their duties as such.

## IV.   DEFENSE, SUPPLEMENTARY PAYMENT

With respect to such insurance as is afforded by this Coverage and Section III Coverage B, Personal Property, we will:

**A.**     defend any suit against you alleging such damage(s) which are payable under the terms of this Coverage, even if any of the allegations of the suit are groundless, false or fraudulent;

**B.**     pay in addition to the applicable limit of liability:

   1.     all expenses incurred by us, all costs taxed against you in any such suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before we have paid or tendered or deposited in court that part of the judgment which does not exceed the limit of our liability thereon;

   2.     premiums on appeal bonds required in such suit, premiums on bonds to release attachments for the amount not in excess of the applicable limit of liability of this Coverage, but without any obligation to apply for or furnish any such bonds;

   1.     all reasonable expenses, other than loss of earnings, you incur at our request.

**C.**     In the event of a claim which triggers coverage under this Coverage and under Section III Coverage B Personal Property, we agree that the lesser of the 2 applicable deductibles will apply

CONFIDENTIAL                    EXHIBIT 1, PAGE 44                    AONNBCU0003831

Named Insured
Motion Picture/Television Production Portfolio Policy                    Policy No.

GENERAL ENDORSEMENT NO. 1
NAMED INSURED

CONFIDENTIAL          EXHIBIT 1, PAGE 45          AONNBCU0003832

## ENDORSEMENT NO. 2

## EXCLUSION OF WAR, MILITARY ACTION AND TERRORISM

This endorsement modifies insurance provided under all Coverage Sections of this policy.

I.       **WAR AND MILITARY ACTION EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by the following:

**A.**       War, including undeclared or civil war; or

**B.**       Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**C.**       Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

With respect to any action that comes within the terms of this exclusion and involves nuclear reaction or radiation, or radioactive contamination, this War And Military Action Exclusion supersedes the terms set forth under CONDITIONS APPLICABLE TO ALL SECTIONS, III. EXCLUSIONS, Paragraph D.

**II.**

CONFIDENTIAL                    EXHIBIT 1, PAGE 46                    AONNBCU0003833

Named Insured
Motion Picture/Television Production Portfolio Policy                                        Policy No.

**ENDORSEMENT NO. 3**
**HURRICANE EXCLUSION**


It is hereby understood and agreed that all Coverage Sections specifically exclude any claims caused by or contributed to by a named windostorm in a tier one county as defined below occurring during or from from June 1st through November 30th of each respective year unless endorsed hereon.


All other terms and conditions remain unchanged.


THIS ENDORSEMENT NEEDS TO BE AMENDED TO APPLY ONLY TO TIER ONE DEFINED COUNTIES.

CONFIDENTIAL          EXHIBIT 1, PAGE 47          AONNBCU0003834

Named Insured
Motion Picture/Television Production Portfolio Policy                                            Policy No.

GENERAL ENDORSEMENT NO. 4
TRIA                                              Page [ PAGE ] of [ NUMPAGES ]

**Broker:**  Aon/Albert G. Ruben Insurance Services, Inc.          Insurance Company
10080 Wilshire Boulevard, 7th Floor
Los Angeles, CA  90024

**Herein Called the Company**

**MOTION PICTURE/TELEVISION**
**PRODUCTION PORTFOLIO DECLARATIONS**          **Policy Number:**

1.  **NAMED INSURED and MAILING ADDRESS:**

Named Insured
Street Address
City, State, Zip Code

2.  **POLICY PERIOD:**
**From 12:01 A.M. Standard Time at the address of the NAMED INSURED as stated above.**

3.  **INSURED PRODUCTION(S):    Any production of the insured**

4.  **COVERAGE:**

| Section | Coverage | Limit of Liability |
|---------|----------|--------------------|
| I. | CAST | $50,000,000 EACH OCCURRENCE Sections I, II, III & IV. |
| II. | NEGATIVE & FAULTY STOCK | |
| III. | EXTRA EXPENSE | |
| IV. | PERSONAL PROPERTY | |

5.  **DEDUCTIBLES & SELF-INSURED RETENTION:**  See Rating Schedule endorsement

6.  **DEPOSIT PREMIUM:**  See Rating Schedule endorsement

COUNTERSIGNATURE DATE:                    COUNTERSIGNATURE OF AUTHORIZED AGENT:

CONFIDENTIAL          EXHIBIT 1, PAGE 49

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

7.   Insurance is provided against those perils and for the coverage under those Sections for which a specific amount or Limit of Liability is shown   in   schedules incorporated herein, subject to all terms of the policy and all forms and endorsements made a part hereof.

8.   When a deposit premium has been charged, the actual premium will be determined in  accordance with the terms of the rating schedule endorsement attached to and made a part of this policy.

9.   **FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION**:

10.  **DATE ISSUED**:

CONFIDENTIAL

EXHIBIT 1, PAGE 50

AONNBCU0003837

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

**CONDITIONS APPLICABLE TO ALL SECTIONS**

**I.     GENERAL CONDITIONS**

Throughout this Policy, "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we," "us" and "our" refer to the Company providing this insurance.

**A.     NAMED INSURED**

Named insured shall mean the first named insured as per the Declarations and any majority owned or managed subsidiaries thereof, their respective parent and affiliated companies and or any financially controlled or managed organization and or any production company or other entity formed or contracted by or on behalf of the named insured or any other organization, entity  or person(s) which the named insured has agreed to insure.

**B.     TERRITORY**

This Policy applies anywhere in the world.

**C.     MISREPRESENTATION AND FRAUD**

This Policy is void if you knowingly concealed or misrepresented any material fact or circumstance concerning this insurance, or in the case of any fraud or false swearing by you, whether before or after a loss.  If you make any false or fraudulent claim as to the amount or otherwise, this Policy is void as to that specific claim, and we have the right to terminate this Policy at that time, and any subsequent claims by you are forfeited. The term "you:" as used in this paragraph applies your executives management, production producers or the Risk Management Department.

**D.     ASSIGNMENT**

This Policy may not be assigned without our written consent.

**E.      ACTION AGAINST US**

No action against us may be brought unless you have complied with all of the material provisions of this Policy and the action is started within two (2) years after the date on which the loss occurred.

Nothing in this Policy gives any person or organization any right to join us as a codefendant in any action against you to determine your liability.

**F.     Access To Records And Examination Under Oath**

We or our representatives may examine and audit your books and records as they relate to this policy at any time during the policy period or while a claim is pending.

If requested, you must permit us to question you and, so far as within your power, all other interested persons under oath, at such times as may be reasonably required, about any matter relating to this insurance or a claim.

No such examination under oath or examination of books or documents, nor any other act by us or any of our employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which we might otherwise have with respect to any loss or claim, but all such examinations and acts shall be deemed to have been made or done without prejudice to our liability.

**MP 201 (01-05)**

CONFIDENTIAL                    EXHIBIT 1, PAGE 51                    AONNBCU0003838

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

**G.**    **OTHER INSURANCE**

If, at the time of loss or damage, any other valid insurance is available which would apply to the loss or damage in the absence of this policy, the insurance provided by this policy will be primary to any other policy held by you but excess with respect to any policy or coverage held or provided by any other party, unless otherwise agreed by you.

To the extent recovery is made from such other insurance, the deductible and or the SIR under this policy will be reduced by such recovery. In no event will the deductible/SIR under this policy be greater than that shown in this policy.  If recovery from such other insurance is greater than the deductible/SIR in this policy, then the deductible/SIR under this policy will not apply.  For losses that exceed the Deductible or SIR in this policy we will share the recovery proportionally and share the costs proportionally.

This policy does not apply to any productions that have been or are required to be declared by you under similar insurance provided by any other insurer.

**H.**    **SUBROGATION**

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them.

This insurance will not be prejudiced if you have waived your right of recovery from any party or parties and we will honor any written contractual  waiver of subrogation obligation agreed to by you prior to a loss and declared to us.

**I Duties In The Event of Loss Or Damage**

In case of a loss or damage to which this insurance may apply, you must see that the following duties are performed:

(1)    Police Notification - Notify the police if a law may have been broken.

(2)    Minimize Loss or Damage – Take all reasonable steps to protect the property from further damage and minimize the loss. Keep a record of your expenses in doing so for consideration in the settlement of the claim. This will not increase the limit of insurance.

(3)    Notice of Loss or Damage

   (a)    Report immediately to us or our authorized representative any loss or damage which may become a claim under this policy. Include a description of the property or loss involved.

   (b)    As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4)  Proof of Loss - File with us, or our authorized representative, a detailed proof of loss signed and sworn to by you setting forth to the best of your knowledge and belief the facts of the loss and the amount thereof. You must do this within one hundred eighty (180) days after discovery of the loss or damage.

(5)    Cooperation

   (a)    Except at your own cost, make no voluntary payments, assume no obligations, and incur no expenses without our consent.  You may make payments within the deductible we will not follow your settlement of a claim except at our choosing and in accordance with this policy.

   (b)    Permit us to inspect the property and records proving the loss or damage.

MP 201 (01-05)                                                             Page [ PAGE  \*
                                                                          MERGEFORMAT ]
                                                                          of [ NUMPAGES  \*
                                                                          MERGEFORMAT ]

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(c)    Immediately send us copies of any demands, summonses or legal papers received in connection with the claim or suit.

(d)    Cooperate with us in the investigation or settlement of the claim.

**j.  Loss Payment**

(1)    Loss or damage covered by this policy will be payable to you or your loss payee.

We agree that any holder of a Certificate of Insurance in which such holder is evidenced as a Loss Payee issued by us or on our behalf will be considered a Loss Payee, subject to your legal liability.

(2)    We will not pay you more than your financial interest in the covered property.

(3)    If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

(4)    We will pay you for covered loss or damage within thirty (30) days after we receive and accept a satisfactory sworn proof of loss, if you have complied with all the terms of this policy and:

(a)    We have reached agreement with you on the amount of loss;

(b)    A final judgment has been entered; or

(c)    An appraisal award has been made.

(5)    We may adjust losses directly with the owners of lost or damaged property, if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property.  We will not pay the owners more than their financial interest in the covered property.

(6)    We may elect to defend you against suits arising from claims of owners of property.  We will do this at our expense.

We will not be liable for any part of a loss that has been paid or made good by others.

1.

## K.   Deductible

(1)    When a deductible applies, the terms of this insurance, including those with respect to your duties in the event of loss or damage, apply irrespective of the application of the deductible amount.

(2)    We may pay any part or all of a deductible amount to effect settlement of any claim and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

## L.   Premium

(1)  The first Named Insured shown in the Declarations:

(a)    Is responsible for the payment of all premiums; and

(b)    Will be the payee for any return premiums we pay.

(2)  We will compute all premiums for this policy in accordance with the rating schedule(s) attached to and made a part of this policy.

(3)  The premium shown in this policy is a deposit premium only unless specifically stated otherwise. At the end of the policy period we will compute the earned premium by applying the rates set forth in the rating schedule(s) to the final "Insurable Production Costs". However, the earned premium will not be less than the minimum policy premium stated on the rating schedule(s), regardless of the term of coverage.

If the earned premium is greater than the deposit premium, we will send a bill to the first Named Insured that shows the amount due and when it is payable. If the earned premium is less than the deposit premium, we will return the excess to the first Named Insured.

**MP 201 (01-05)**

**Page [ PAGE  \*
MERGEFORMAT ]
of [ NUMPAGES  \*
MERGEFORMAT ]**

CONFIDENTIAL                    EXHIBIT 1, PAGE 53                    AONNBCU0003840

The first Named Insured must keep records of the "Insurable Production Costs" and other information we need for premium computation, and send us copies at such times as we may request.

**L.      CANCELLATION**

(1)      The first Named Insured shown in the Declarations may cancel this policy by returning it to us or our authorized representative, stating in writing the future date it is to be cancelled. The policy period will end on that date.

(2)      We may cancel this policy by written notice to the first Named Insured at least:

    (a)  Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

    (b)  Thirty (120) days before the effective date of cancellation if we cancel for any other reason.

(3)      We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

(4)      Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

(5)      If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

(6)      If notice is mailed, proof of mailing will be sufficient proof of notice.

**M.      ABANDONMENT**

There can be no abandonment of any property to us without our written consent.

**N.      STOP DATE LOSS**

If as a result of delay in completing the original shooting schedule of an insured production you incur a loss in order to honor the termination date contained in a performance contract between you and any other person and/or their respective loan out company, such loss (hereinafter referred to as a stop date loss) would not be covered by the provisions of this policy, but this policy will, nonetheless, participate in a stop date loss to the extent that the need to incur such loss is directly related to a loss insured under the terms of this policy.  The extent of our participation in a stop date loss will be governed by the proper consideration of the following factors:

1.      If the need to incur the stop date loss is solely and directly the result of an insured loss, the stop date loss will be recoverable in full.

2.      If the need to incur the stop date loss arises in part by reason of an insured loss and also arises in part by reason of an uninsured occurrence so that it can reasonably be said that each contributed to the incidence of the stop date loss, then the extent that each so contributed will be determined and an apportionment of the stop date loss will be made.

3.      If the need to incur the stop date loss is in no way connected with an insured loss, no part of the stop date loss will be recoverable.

4.      Coverage afforded by this paragraph is subject to the proviso that the performance contract term was sufficiently longer than your original scheduled time for completion of the insured production so as to allow a reasonable margin of safety to cover possible delays in completing the insured production. It is agreed that 10 consecutive days is a reasonable margin of safety for features and 3 consecutive days is a reasonable margin of safety for all other productions.

**MP 201 (01-05)**

Named Insured
Motion Picture/Television Production Portfolio Policy                                      Policy No.

**O.     APPRAISAL**

If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal.  Each party will select a competent, independent appraiser and notify the other of the appraiser's identity within twenty (20) days of receipt of the written demand.  The two appraisers will then select a competent, impartial umpire.  If the two appraisers are unable to agree upon an umpire within fifteen (15) days, you or we can ask a judge of a court of record in the state of your residence to select an umpire.  The appraisers will then submit a written report of an agreement to us and the amount agreed upon will be the amount of the loss.  If the appraisers fail to agree within a reasonable period of time, they will submit their difference to the umpire.  Written agreement signed by any two of these three will set the amount of the loss.  The party selecting that appraiser will pay each appraiser.  Other expenses of the appraisers and the compensation of the umpire will be paid equally by you and us.

**P.     POLICY CHANGES**

No changes may be made to this policy except by mutual agreement in writing.

**Q.     CONFORMITY TO STATE LAW**

When any policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply, unless the provision of this policy is broader.

**R.     DUE DILIGENCE CLAUSE**

You shall use due diligence and do and concur in doing all things reasonably practicable to avoid or diminish any loss or any circumstance likely to give rise to a loss or claim insured under this Policy.  This policy will indemnify you for your additional incurred expenses and/or increased costs incurred by you to avoid or diminish any such loss or claim, subject to any deductible/SIR provision stated herein, provided however, that in no circumstance will our maximum liability under this policy be greater than the increased costs and/or additional incurred expenses, or in any event exceed the limits of liability of this policy.

**S.     INADVERTENT ERROR CLAUSE**

You will not be prejudiced by any unintentional or inadvertent omission, error or incorrect description of the property, persons, animals or exposures insured hereunder.

**T.     INSPECTION & SURVEYS**

(1)     We have the right to:
    (a)     Make inspections and surveys at any time;
    (b)     Give you reports on the conditions we find; and
    (c)     Recommend changes.
(2)     We are not obligated to make any inspections, surveys, reports or recommendations, and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety recommendations. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
    (a)     Are safe or healthful; or
    (b)     Comply with laws, regulations, codes or standards.
(3)     Paragraphs (1) and (2) of this Condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**U     Recoveries**
MP 201 (01-05)

CONFIDENTIAL                    EXHIBIT 1, PAGE 55                    AONNBCU0003842

Named Insured
Motion Picture/Television Production Portfolio Policy                                                    Policy No.

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**U.     INSURANCE NOT TO BENEFIT OTHERS**

No person or organization, other than you, having custody of the property and to be paid for services shall benefit from this insurance. This restriction does not apply to a person or organization, other than a common carrier, who is working on your behalf under the terms of a contract.

**W.     PROPERTY OF OTHERS**

In the event of loss or damage to property of others (insured hereunder) held by you for which claim is made upon us the right to adjust such loss or damage with the owner or owners of such property is reserved to us and receipt of payment by such owner or owners  in satisfaction thereof shall be in full satisfaction of any claim by you for which such payment has been made. If legal proceedings are taken to enforce a claim against you as respects any such loss or damage, we shall, at our expense, conduct and control the defense of such legal proceeding on behalf of and in your name. No action of ours in such regard will increase our liability under this policy.

**X.     EXCHANGE RATE**

The rate of exchange applied to a loss shall be the rate as paid by you and agreed by us to purchase the foreign funds.

We reserve the right, for claims that we settle directly with third parties to this policy, to adjust the claims at the prevailing exchange rate or the exchange rate used to actually purchase the foreign funds.

**II.     SPECIAL CONDITIONS**

**A.     DEFINITIONS**

**a.**   "Earthquake" means:

(1)   Any earth movement, such as an earthquake, landslide, mine subsidence, or earth sinking, rising or shifting; and

(2)   Volcanic eruption, meaning the eruption, explosion or effusion of a volcano;

provided that all earth movements or volcanic eruptions that occur within any seventy-two (72) hour period will constitute a single earth movement or volcanic eruption.

**b.**   "Flood" means flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not.

**c.**   "Insurable Production Costs" means all costs incurred by you during the policy period except:

(1)   Administrative costs not directly related to an "Insured Production";

(2)   Any cost you did not incur as a cost directly related to the "Insured Production"; and

(3)   Any other costs specifically stated not to be "Insurable Production Costs" in an endorsement to this policy.

**MP 201 (01-05)**

CONFIDENTIAL                    EXHIBIT 1, PAGE 56                    AONNBCU0003843

Named Insured
Motion Picture/Television Production Portfolio Policy                                      Policy No.

    **d.**   "Insured Production" means a production or event that has been declared to us.

    **e.**   "Mobile Equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

        (1)   Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

        (2)   Vehicles that travel on crawler treads;

        (3)   Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted equipment, or maintained primarily for purposes other than the transportation of persons or cargo.

        However, "Mobile Equipment" does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

    **f.**   "Principal Photography" means the continuous period of time from the start date to the completion date you actually require to photograph or tape an "Insured Production", including any necessary wraptime.

**B.**     **ABANDONMENT**

    Should a covered loss result in an abandonment, during the term of coverage, under any section of this policy, we have the right to require that you surrender all owned or licensed rights, title(s) and interest(s) in all documents, underlying works, copyrights and all related material of the insured production, except as relates to any sequel, prequel and their attendant merchandise.  We will reimburse you for the cost you incurred for the rights.

**D.**     **REFPORTING REQUIREMENTS**

    You must declare to us on a declaration and information form acceptable to us, the particulars of each and every production or series of productions undertaken by you during the term of this policy. If Cast Insurance is to be provided you will report to us each covered person to be insured   prior to or within thirty (30) days of commencement of principal photography.

**E.**     **HIATUS COVERAGE**

    1.    With respect to episodic television, coverage is continuous from the pilot through season one and between seasons for continuing television series insured hereunder, hereinafter referred to as Hiatus Coverage, subject to all other terms and conditions of this policy.

    2.    Hiatus Coverage means the period of time from the end of coverage for the pilot or an episodic television season until the commencement of pre-production, series or subsequent season.

    3.    The limits of liability, deductibles and terms that were in effect for the preceding pilot or season will apply during the hiatus period.

    4.    Hiatus Coverage applies solely to Cast Coverage, Property and Third Party Property Damage.

    5.    Hiatus coverage will seize immediately when cancelled or non renewed by you or us.

**F**     **DELIVERY DATE EXPEDITING COSTS**

    With respect to all productions insured hereunder, subject to all other terms and conditions, the definition of loss with respect to Cast Coverage, Negative Film, Faulty Stock and Extra Expense is extended to

**MP 201 (01-05)**

Named Insured
Motion Picture/Television Production Portfolio Policy                                          Policy No.

include any extra expenses you necessarily incur to meet an air date or delivery date of an insured production subject to a sub limit of liability of $1,000,000

**G.     PRINTS & ADVERTISING COSTS**

With respect to all productions insured hereunder, subject to all other terms and conditions, the definition of loss with respect to Cast Coverage, Negative Film, Faulty Stock and Extra Expense is extended to include the costs incurred for prints and advertising as have been rendered entirely valueless, solely in the event of an abandonment of an insured production, subject to a sub limit of liability of $1,000,000

**H.     Public Relations Costs**

With respect to all productions insured hereunder, subject to all other terms and conditions, the definition of loss with respect to Disgrace under Cast Insurance is extended to include the costs to hire a public relations firm, law firm or crisis management firm for the specific purpose to minimize potential harm to you arising from a situation or occurrence involving the disgrace of an insured cast member, subject to a sub-limit of liability of $250,000.

**I.     Annual Aggregate Deductible**

This policy is subject to "Insured Production" deductibles as listed herein and Annual Aggregate deductible for the policy term of $2,100,000 subject to the following:

1.  All adjusted claim amounts that you incur over the deductible amounts stated herein will accrue to the Annual Aggregate Deductible(s) Cap(s).
2.  At such time as the "Insured Production" or Annual Aggregate Deductible(s) has been exhausted, the deductible shown on the Declarations Page or within the policy will drop down to Maintenance Deductibles stated herein for each adjusted claim and for all subsequently adjusted claims for that "Insured Production" or annual period of declared productions.
3.  Any amount paid by you we have determined it is covered by this policy

The Annual Aggregate Deductible will not include any claims under the following sections of this policy; Delivery Date Expediting Costs, Prints and Advertising Costs or Public Relations Costs.

**III.     CLAIMS ADMINISTRATION**

The assigned independent adjuster is as follows:

Hyperion Claim Specialists LLC ("Hyperion")
550 S. Hope Street, Suite 1625
Los Angeles, CA  90071-2650
Phone:  213 347-0250
Fax:  213 347-0266

Entertainment Brokers International / OneBeacon Insurance Company Claims Department
10940 Wilshire Boulevard, 17th Floor
Los Angeles, CA 90024

Phone: 310-954-----
Email;

**MP 201 (01-05)**                                              **Page [ PAGE \*
MERGEFORMAT ]
of [ NUMPAGES  \*
MERGEFORMAT ]**

Named Insured
Motion Picture/Television Production Portfolio Policy                                                     Policy No.

**IV.     EXCLUSIONS APPLICABLE TO ALL SECTIONS OF THIS POLICY**

This Policy does not insure against loss or damage caused directly or indirectly by:

**A.**     War, including undeclared or civil war; or

**B.**     Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**C.**     Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**D.**     Any weapon of war employing atomic fission or radioactive force, whether in time of peace or war;

**E.**     Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by,  C contributed to, or aggravated by the peril or perils insured in this policy.  However, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is covered;

**F.**     Risks of contraband or illegal transportation of trade;

**G.**     Violation of any Law or Statute, or any actual dishonest, fraudulent, criminal or malicious act committed by you, your employees, your agents, representatives and or contractors including any judicial injunction or action for injunctive relief;

**H.**     Any uninsured event occurring before, concurrently with or after the happening of an insured event, which directly or indirectly causes or in any way contributes to cause or increase a loss under this policy; but only with respect to that portion of any such loss caused by or contributed to by the uninsured event, unless the uninsured event would not have been a factor had such insured event never occurred.

I.     "Stop Date Loss", as described in Special Condition d., except as otherwise provided in Special Condition

J     Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**MP 201 (01-05)**

CONFIDENTIAL                     EXHIBIT 1, PAGE 59                     AONNBCU0003846

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

CONFIDENTIAL                 EXHIBIT 1, PAGE 60                 AONNBCU0003847

# SECTION I. CAST COVERAGE

MP 201 (01-05)

Page [ PAGE \*
MERGEFORMAT ]
of [ NUMPAGES \*
MERGEFORMAT ]

CONFIDENTIAL                    EXHIBIT 1, PAGE 61                    AONNBCU0003848

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

## I.   COVERAGE

We will pay the actual and necessary loss you sustain by reason of a Covered Person being prevented from commencing, continuing or completing an assigned duty or role in an "Insured Production". The loss must be caused by or result from a Covered Cause of Loss during the Term of Coverage.

a.   Covered Person, as used in this Coverage, means a up to 7 most "important covered person" accepted by us for Cast Coverage and specifically named in an endorsement attached to this policy. All other persons necessary for you to complete the "Insured Production".

b.   Covered Causes of Loss

1.      Accidental injury, sickness or death, to a Covered Person;

2.      Kidnap of a Covered Person;

3.      Death, Severe Injury, Catastrophic Injury, life threatening illness of an "Immediate Family Member".

A Severe Injury is a life-threatening injury that requires the individual to be hospitalized in an Intensive Care Unit for no less than three days.

A Catastrophic Injury is the loss of at least one limb or eye.

4. "Violent Death" or "disgrace" of an Important Covered Person as to force the necessary abandonment of the "Insured Production"..

except those causes of loss listed in the Exclusions.

c.   Term of Coverage

(1)     Term of Coverage, as used in this Coverage, means the period beginning with the effective date shown in the Declarations, and continuing until the earliest of the following dates:

(a)   The date of delivery required under the completion guarantee agreement with the distributor(s);

(b)   The date your completion guarantor is released from further obligations to you;

(c)   Eighteen (18) months after completion of "Principal Photography";

(d)   The date on which a protection print or duplicate tape has been completed and physically removed from the premises where the original negative or tape is located;

(e)   The date your interest in the property ceases; or

(f)   The date on which cancellation or termination of coverage under this policy for the "Insured Production" becomes effective.

The expiration date of this policy or declaration will be extended, if necessary, until the earliest of these dates. We may charge additional premium for this extension.

(2) Subject to the Medical Examination Condition below, Term of Coverage also includes the Pre-Production period of Cast Coverage.

(a)   The Pre-Production period for Covered Persons who are "Guest Artists" in episodic television begins 30 days before the start of "Principal Photography" or videotaping of the "Insured Production".

(b)   The Pre-Production period for other Covered Persons begins sixty (180) days before the start of "Principal Photography".

(3)   You may, provided we are given prior notice:

(a)   Declare a starting date of "Principal Photography" at any time within the term of the policy; and

(b)   Continue Cast Coverage for up to 18 months after completion of "Principal Photography" or to include hiatus periods or the delivery and storage of protective material in a storage vault which ever occurs first.

## II.   ADDITIONAL EXCLUSIONS

For the purposes of this Coverage, the following exclusions apply in addition to the exclusions described in Part V. of the Policy Conditions - Exclusions Applicable To All Coverages of This Policy.

We will not pay for loss caused by or resulting from any of the following:

CONFIDENTIAL

EXHIBIT 1, PAGE 62                          AONNBCU0003849

Named Insured
Motion Picture/Television Production Portfolio Policy                                Policy No.

a.  Sickness on a Covered Person unless accepted by us and or as may be provided under II Medical EXAMINATION.

b.  Any Covered Person taking part in any hazardous stunt(s) (As defined in by the entertainment Guilds or Unions) without our written consent;

c.  Any Covered Person taking part in flying other than as a passenger;

d.  The inability of any female to continue her performance because of pregnancy or conditions pertaining to pregnancy that was not aware of her pregnancy when they were declared to this policy or a medical examination was not required;

e.  Any Covered Person over seventy four years of age unless the person is specifically named in an endorsement attached to this policy;

f.  Any reservation, exception or restriction we have imposed on a Covered Person, as described in the Medical Examination Condition below, regardless of when the event causing loss occurs.

g.  Ransom hereunder unless  payment is authorized, approved and monitored by the police or other civil authority

h.  Behavior, action or inaction of a covered person that is consistent with the known public or private persona or behavior of the covered person which gives rise to "disgrace" of the "covered person".

## III. LIMITS OF INSURANCE

The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the Declarations for Cast Coverage.

Ransom payment will not exceed $1,000,000 Sublimit.

## IV. DEDUCTIBLE OR SELF INSURED RETENTION

We will not pay for loss in any one occurrence until the amount of the adjusted loss before applying the applicable limits of insurance exceeds the deductible or self insured retention amount shown in the Declarations for Cast Coverage. We will then pay the amount of the adjusted loss in excess of the deductible or self insured retention, up to the applicable limit of insurance.

## V. METHOD OF VALUATION

a.  The amount of your loss will be determined based on:

  (1)  All necessary "Insurable Production Cost" you incur to complete Insured Production that exceeds the amount of "Insurable Production Cost" you would have incurred if the covered cause of loss had not occurred; and

  (2)  All other necessary expenses that reduce the amount of loss otherwise payable.

  However, your loss will not include loss of earnings of profit.

b.  We will reduce the amount of your loss to the extent:

  (1)  You can resume the Insured Production and discontinue incurring extra "Insurable Production Cost"; or

  (2)  You do not resume the Insured Production as quickly as possible.

  We will pay based on the length of time it would have taken to resume the Insured Production as soon as possible.

c.  If you abandon an "Insured Production" that has been made substantially valueless solely because one or more covered causes of loss reasonably, practically and necessarily prevents you from completing the Insured Production, irrespective of any completion or delivery date requirements for the "Insured Production", we will pay as loss the total "Insurable Production Cost" you have incurred for the "Insured Production".

## VI. ADDITIONAL CONDITIONS

For the purposes of this Coverage, the following Conditions apply in addition to the Policy Conditions.

a.  **Additional Duties In The Event of Loss Or Damage**

  The following is added to Policy Condition I.f. - Duties In The Event of Loss Or Damage:

  (1)  You must report immediately to us or our authorized representative any fact or circumstance which may prevent a Covered Person from commencing, continuing or completing an assigned duty or role in an "Insured Production" and which may result in a claim under this policy.

CONFIDENTIAL

AONNBCU0003850

EXHIBIT 1, PAGE 63

(2) You must immediately secure and file with us or our authorized representative the certification of a duly licensed physician. The certification must include a complete description of the injury, sickness or death and the prognosis.

(3) You must make every effort to preserve our rights, including enforcing any contractual conditions or terms applicable to the Covered Person, to:

    (a) Have any Covered Person examined by a medical doctor of our choice; and

    (b) Have continuing access to the medical records of any Covered Person.

**WARRANTY**

It is warranted that your failure to comply with any of these conditions will prejudice us and will release us from any claim that involves such failure.

b. **Medical Examination, Accident Coverage, Immediate Family, Essential Element, Violent Death & Disgrace**

(1) Each Covered Person, other than a "Guest Artist" in episodic television, must be examined by a duly licensed physician, designated or approved by us or submit a medical affidavit not more than thirty (30) days prior to the date the Covered Person's assigned duties or role in the "Insured Production" are scheduled to commence.

For Feature Films the following **Covered Person(s)** must be examined by a duly qualified physician designated or approved by us, (veterinarian with respect to animals), who will submit to us a Medical Certificate & Affidavit signed by the examinee and physician (not applicable to animals prior to the date the Covered Person's assigned duties or role in the "Insured Production" are scheduled to commence. The physician must complete and submit to us a medical questionnaire and certificate, on forms approved by us and signed by the Covered Person.

    1.    The Director(s);

    2.    Seven (7) covered persons with the greatest exposure to the production as determined by the Risk Management Department. If Risk Management has made a determination of the top seven (7) artists and it is discovered that the determination was incorrect, we will not deny a claim or penalize you for such incorrect determination.

The physician must complete and submit to us a medical questionnaire and certificate, on forms approved by us and signed by the Covered Person.
If the doctors we provide are not available to you for the completion of a medical examination, we grant you permission to use any licensed medical doctor available, except for the covered person's personal physician;

(2) Sickness Coverage for the Covered Person will become effective on the date the medical examination or medical affidavit is completed, subject to our receipt and approval of the medical questionnaire and certificate.

Based on the medical information submitted to us, we have the right to make any reservation, exception or restriction regarding the insurability of the Covered Person within 36 working hours of receipt of the medical exam. We will not pay for loss caused by or resulting from any such reservation, exception or restriction.

If a Covered Person becomes sick or disabled before the medical exam has been completed we will cover the sickness or disability subject to you showing that the sickness or disability would not of been discovered during the medical exam or outlined in the medical affidavit and that they Covered Person had no prior knowledge.
Our failure to respond to a Medical Certificate & Affidavit and or Affidavit & Authorization within 3 business days of our receipt will result in full coverage without restriction.

(3) Accident and Kidnap Coverage is effective on the date you have contracted with the Covered Person to perform in the "Insured Production".

(4) "Disgrace" & "Violent Death" is effective when the Covered Person is declared to us and we have reviewed the back ground checks and research performed by you and approved the Covered Person

(5) "Immediate Family" is effective on the date you have contracted with the Covered Person to perform in the "Insured Production".

(6) "Essential Element" is effective when the Covered Person is declared and approved by us.

## VII. ADDITIONAL DEFINITION

For the purposes of this Coverage, the following definition applies in addition to the definitions described in Part IV. of the Policy Conditions - Definitions Applicable To All Coverages of This Policy:

"Guest Artist" means a Covered Person appearing in or contracted to appear in episodic television for less than three (3) consecutive episodes or less than fifty percent (50%) of a series of productions.

"Immediate Family Member" means the mother, father, sister, brother, spouse, life partner, child, stepparents, stepchildren, stepbrother, stepsister, mother-in-law, father-in-law, sister-in-law, brother-in-law, daughter-in-law, son-in-law or "significant others" who reside together, grandparent or grandchild of the Covered Person.

"Important Covered Person" shall mean: A Covered Person declared and accepted by us.

"Violent Death" means the Essential Covered Person died at the hands of another person and that the Essential Covered Person was involved in a crime. The showing of the Insured Production would degrade the insured and would anger the public

"Disgrace" means that the actions or behavior of the Essential Covered Person was of such a nature and beyond their usual or expected behavior as to render them to the public is such; disgrace, poor decency or disrepute that provokes insult or shock to the community that would reflect very unfavorable on the insured.

"Essential Element" is defined a declared artist(s) for the purpose of completion and delivery of the Insured Production as an essential element and accepted by us.

## VIII   COVERAGE EXTENSION

In the event of:

(i) The death of a declared "Essential Element" during the period of pre-production or principal photography; or

(ii) The injury or illness of an "Essential Element" during the period of principal photography, whose injury or illness necessarily prevents the declared artist from performing services and completing the insured production. The injury or illness must incapacitate the "Essential Element" for a period of more than [ FORMTEXT ] days;

it shall be considered reasonable, practical, and necessary for you to abandon the Insured Production during principal photography and make claim under this Section for such costs (defined in Section I. Cast, VI. Definition of Loss, Paragraph b).

d.   Pursuant to Paragraph c. (ii) above, we shall have the option to delay your abandonment of the insured production for up to [ FORMTEXT ] days after the occurrence of the injury or onset of the injury or illness if in our good faith business judgment the artist is likely to recover from such injury or illness to resume his/her assigned role or position within [ FORMTEXT ] days.

(i) In the event our decision to exercise our option to delay your abandonment of the insured production for up to [ FORMTEXT ] days after the occurrence of an injury or onset of an illness of the declared "Essential Element" causes you to incur a loss in excess of the amount stated in Section I. Cast, Paragraph II, Limit of Liability, then such limit of liability shall automatically be increased to include the costs necessarily incurred in excess of the Limit of Liability caused solely and directly by the warranties below.

**Warranties**

Prior to payment of the "Essential Element" loss covered by this endorsement, you warrant that you will comply with the following:

A.   Upon our written request, within five (5) business days following the "Essential Element" loss you and one of our representatives shall meet to determine the viability of the options to complete the insured production, including the possibility of replacing the "Essential Element". You will do all things possible to complete the Insured Production, where possible with the remaining cast and crew, including maintaining or replacing financing to complete the

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

insured production. "Essential Element" replacement will be a person of similar standing within the motion picture industry who is acceptable to independent financiers or distributors.

B.   You will work with us in good faith and do all things possible to replace the "Essential Element" and upon our request, provide us your authority to negotiate on your behalf with any other party to assist in the replacement of an "Essential Element" or financing.

C.   You will at our option enable us to maintain or replace any financing to complete the insured production.

Any breach of the above warranties will relieve us of any claim that would be payable under this endorsement.

CONFIDENTIAL
EXHIBIT 1, PAGE 66                          AONNBCU0003853

Named Insured
Motion Picture/Television Production Portfolio Policy                                          Policy No.

## SECTION II. NEGATIVE FILM & FAULTY STOCK

**I.     INSURING AGREEMENT**

    **A.**    We agree to pay you such loss (defined in Paragraph IV) as you directly and solely sustain as a result of loss of, damage to or destruction of videotape stock, raw film stock, recorded videotape, exposed motion picture film (developed or undeveloped), inter-positives, positives, work prints, cutting copies, fine grain prints, sound tracks, tapes, transparencies, cells, art work (used to create animation or other images), source materials, software, data, media and related material used to generate computer or other images, and or any similar material or property, caused by an insured peril (defined in Paragraph II) when such property is your property or the property of others for which you are legally liable and, while such property is used or to be used in connection with an insured production.

**II.     PERILS INSURED**

This coverage insures:

    1.    All risks of direct physical loss or damage;

    2. Faulty materials, faulty equipment, faulty computer equipment, faulty editing, faulty developing or faulty processing; and including accidental erasure, magnetic, or x-ray injury, disturbance or erasure of film, electronic recordings or video tape and loss of media, data, or software.

    .    3. Operator error including faulty manipulation or faulty operation, of camera, lighting, sound, electrical, editing, computer or any other equipment;  technician's error(s) of judgment; and errors in machine or computer programming or instructions to any machine or computer

**III.  LIMITS OF INSURANCE**

The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the Declarations for Negative Film coverage.

Operator Error is subject to a $2,000,000 Sub-limit

**IV. DEDUCTIBLE**

We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable limits of insurance exceeds the deductible amount shown in the Declarations for Negative Film Coverage. We will then pay the amount of the adjusted loss or damage in excess of the deductible, up to the applicable limit of insurance.

**III.**

**Term of Coverage**

Term of Coverage, as used in this Coverage, means the period beginning sixty (60) days before the date shown in the Declarations as the start of "Principal Photography", and continuing until the earliest of the following dates:

(1)  The date of delivery required under the completion guarantee agreement with the distributor(s);

(2)  The date your completion guarantor is released from further obligations to you;

(3)  Eighteen (18) months after completion of "Principal Photography";

(4)  The date on which a protection print or duplicate tape has been completed and physically removed from the premises where the original negative or tape is located;

(5)  The date your interest in the property ceases; or

(6)  The date on which cancellation or termination of coverage under this policy for the "Insured Production" becomes effective.

CONFIDENTIAL



Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

The expiration date of this policy will be extended, if necessary, until the earliest of these dates. We may charge additional premium for this extension.

## IV.    PROPERTY EXCLUDED

This coverage does not insure cut-outs, unused footage or library stock.

## V.    DEFINITION OF LOSS

A.    Loss, except for loss to videotape stock, raw film stock or blank media, means only such extra expenditure you incur to re-photograph, re-tape, recreate or reprogram in substantially the same manner that portion of an insured production over and above the expenditure, which but for the happening of any one or more of the occurrences specified in Paragraph I., would have been incurred in completing that portion of said production.  However, loss arising from delay in completion of any insured production(s) is not recoverable under the terms of this Coverage except such loss arising from delay that is both unavoidable and which occurs during the period of time necessary to re-photograph, re-tape, recreate or reprogram that portion of the film, tape or software which is the subject of a loss claimed under the terms of this Coverage.  Extra expenditure refers to the costs defined in GENERAL CONDITIONS II. Special Conditions "A", Definition of Insurable Production Cost.

B.    Loss to videotape stock, raw film stock or blank media applies only to the actual cost to replace the lost or damaged videotape stock, raw film stock or blank media with stock of like kind and quality.

C.    In the event that the happening of one or more of the occurrences specified in Paragraph I., reasonably and practically prevents the completion of an insured production irrespective of any completion, air or delivery date, you have the right to abandon production and claim under this coverage for such actual expenditures you incur and have committed to, as have been rendered entirely valueless solely and directly by reason of the happening of one or more of the occurrences specified in Paragraph I., subject to the SPECIAL CONDITIONS of this policy.

## VI.    EXCLUSIONS

This coverage does not insure against loss caused by or resulting from:

A.    Exposure to light, deterioration, atmospheric dampness or changes in temperature;

B.    The use of incorrect raw film stock or videotape or media/software;

C.    Delay, loss of use, loss of market, interruption of business, or any other consequential loss due to loss of or damage to videotape stock, raw film stock or blank media;

D.    Unexplained or mysterious disappearance or shortage found upon taking of inventory.

E.    Use of film, videotape, cameras, lenses or photographic tape or sound equipment that  has not been fully tested by you or on your behalf, and found to be in sound operating condition prior to the commencement of the filming of an "Insured Production" or series of productions.

## VII.    CONDITIONS

You will ensure that artwork, drawings, software and related material (hereinafter referred to as "source material") used to generate computer images and animation cells are retained until a protection print has been completed or expiration of this coverage, whichever comes first.

You will safeguard and maintain all source material(s) that have been photographed, or used as intended in the production process. Damage to such source material will not be considered a loss hereunder, except to the extent that other covered property is damaged and you have complied with the above.

SECTION II. A.  NEGATIVE FILM
CONFIDENTIAL
Page [ PAGE ] of [ NUMPAGES ]

EXHIBIT 1, PAGE 68
AONNBCU0003855

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

**VIII.    DEFINITIONS**

**A.**    COMPUTER PROGRAMS means data, and source code used to direct the computer equipment, including diagrams or other records which can be used to reproduce programs.

**B.**    DATA includes and is not limited to facts, concepts, source code, programming records or instructions which are converted to a form usable in your electronic data processing operations, computer programs or electronically controlled equipment.

**C.**    MEDIA includes electronic data processing recording or storage media on which Data are recorded or stored such as software, films, tapes, discs or cells.

**D.**    SOFTWARE means any combination of DATA, MEDIA or COMPUTER PROGRAMS

**E.**    Computer EQUIPMENT means your programmable electronic equipment that is used to store, retrieve or process software. It includes but is not limited to any component parts and associated peripheral equipment or hardware that provides communication including input and output functions, printing and data transmission. Computer equipment does not include software.

## LIBRARY STOCK EXTENSION

1.  The following is added to Paragraph I.a. Covered Property:

    Covered Property, as used in this Coverage, includes the following:

    Your original cut negative film of completed or released productions, duplicate negatives, completed video tapes or other media which is considered library stock to you.

2.  Paragraph I.b. Property Not Covered is amended to remove subparagraph (3) Library stock.

3.  Part III. Limits of Insurance is replaced by the following:

    a.  The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the Declarations for the applicable Coverage(s).

    b.  Subject to the above limit of insurance applicable to any one occurrence, the most we will pay for loss or damage to library stock in any one occurrence is $1,000,000.

    c.  Subject to the above limits of insurance applicable to any one occurrence and library stock, $1,000,000 is the most we pay for loss or damage to any one production.

4.  The following is added to Part IV. Deductible:

    With respect to library stock, the deductible amount is the same as the deductible amount shown in the Declarations or otherwise applicable.

5.  The following is added to Part V. Method of Valuation:

    The amount of your library stock loss will be determined based on the actual cost to repurchase from an outside source, reprint or copy in whole or in part the affected portions of the library stock, whether or not the reprint or copy is made from an original or a copy of the lost or damaged library stock.

## SECTION III. COVERAGE A.  EXTRA EXPENSE

I.     **INSURING AGREEMENT**

    **A.**    We agree to pay to you such loss (as defined in Paragraph VII.), not including loss of earnings or profit, as you sustain by reason of such extra expense you necessarily incur as a result of the interruption, postponement or cancellation of an Insured Production when such interruption, postponement or cancellation is the sole and direct consequence of:

1.    A sudden and accidental occurrence entirely beyond your control;

    2.    confiscation and/or detainment of equipment, material or personal property by order of any government or civil authority;

    3.    travel delay as a result of adverse weather conditions to  necessary property

    4.    Interruption or loss of utilities (electrical, steam, gas or any other power source) required to continue or complete an insured production;

    5.    Strikes by any party, union, guild or labor group for which you are not a signatory or directly involved in negotiations;

    6.    Verifiable breakdown, short circuit, electrical injury, disturbance or malfunction to Covered Personal Property, not including vehicles.  Subject to props; created, constructed, designed or maintained by you must be tested and verified to be in working order under the conditions you will be using them.

    7.    interruption, postponement or cancellation of an insured  production as a direct result of the action of a civil authority that revokes your permission to use or prohibits access to property or facilities used or to be used in connection with an Insured Production.

    7.    a Crisis Event meaning all of the following elements have occurred:

        1.  The Crisis Event results in a life-threatening physical injury or accidental death to any member of the insured production;
        2. The Crisis Event occurs at a filming location of the insured production (meaning a location where cast or crew is assembled to shoot any scheduled work);
        3. The Crisis Event is witnessed by members of the Insured Production;
        4. The Crisis Event results in the immediate suspension of production of the Insured Production

## II. LIMITS OF INSURANCE

The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the Declarations for Extra Expense coverage, except the following:

Strike is subject to a $1,000,000 any one occurrence

Confiscation is subject to a $1,000,000 any one occurrence

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

## III. DEDUCTIBLE

We will not pay for loss in any one occurrence until the amount of the adjusted loss before applying the applicable limits of insurance exceeds the deductible amount shown in the Declarations for Extra Expense Coverage. We will then pay the amount of the adjusted loss in excess of the deductible, up to the applicable limit of insurance.

## II. WARRANTIES

You warrant that:

**A.** All necessary arrangements and contractual agreements for the Insured Production, including, but not limited to, permits, visa(s) and licenses, have been obtained and/or executed by you, prior to any "loss" covered hereunder.

**B.** You have disclosed to us any arrangements, contractual conditions, physical conditions or other facts that could affect the Insured Production.

**C.** Prior to the inception of coverage hereunder, you warrant having no knowledge of any matter, fact or circumstance, actual or threatened, that increases or could increase the possibility of a "loss" under this Policy.

Failure to fulfill any warranty above will release us from all obligations under this Policy, to the extent that a "loss" is suffered or increased by that failure.

## IV  Property Not Covered

Covered Property does not include Negative film, video tape, tapes, cels, transparencies, positives, sound tracks, art work, software, programs or any other form of media.

## III. EXCLUSIONS

This coverage does not cover "loss" caused by, resulting from, or arising out of:

A. The failure of any person(s) in connection with the Insured Production to commence, continue or complete their respective duties or performances for any reason; or

B. Any financial cause of "loss', including but not limited to:

    i. Any deficient or inadequate response, support or withdrawal of support, including insufficient attendance or interest prior to attendance;

    ii. Withdrawal of funds, inadequate or insufficient finances, however caused;

    iii. Any financial failure of any venture, company, entity or person;

    iv. Any failure to maintain adequate receipts, sales or profits, including any failure to provide bond(s) or financial security;

    v. Any variation in the rate of exchange, including devaluation, rate of interest or stability of any currency;

    vi. Any financial default, insolvency, debt or failure to pay necessary expense to any person, firm or corporation.

C. Any actual adverse weather at the location of any insured production except when:

    1. The action of a civil authority prevents access to or closes down facilities or locations due to conditions that threaten the safety of cast, crew and or property and or;

D. your failure or inability to complete or obtain any contractual agreements, permits or licenses of any kind;

E. your failure or inability to properly comply with, or the violation of, any requirement or any procedure necessary for the issuance and continuance of any permit or authorization; or your failure to properly process or complete any applications or required documents;

F.   the refusal or revocation of any permit or authorization due to a violation of any existing civil or criminal law  or codes;

G.   Any Governmental body or Civil Authority preventing the commencement or completion of an insured production, due to a breach of the terms of  the permit or any civil or criminal violation by you;

H.   Any concern or fear of an occurrence which may affect the commencement or the continuation of the Insured Production, unless a Civil Authority closes down the Insured Production due to conditions that threaten the safety of the cast and crew working on the Insured Production;

I.    Any concern or belief that the commencement or continuation of Insured Production is inappropriate.

J.    Breach of contract by any party whether their contractual relationship be with you or otherwise where such loss is consequent upon or contributed to by any cause within your control or any other such party which includes the failure of any individual or entity contracted, hired or employed to willingly perform the duties for which that person or entity has been hired with respect to the Insured Production.

K.    Wear and tear; any quality in the property that causes it to damage or destroy itself; hidden or latent defect; gradual deterioration; depreciation; mechanical breakdown or electrical breakdown; insects; vermin, or rodents; corrosion, rust, dampness, cold or heat.
This exclusion does not apply to verifiable breakdown, short circuit, electrical injury, disturbance or malfunction to Covered Personal Property, not including vehicles.  Subject to props; created, constructed, designed or maintained by you must be tested and verified to be in working order under the conditions you will be using them.

L.    Processing or work upon the property.
But if processing or work upon the property results in fire or explosion, this exclusion does not apply to direct loss or damage caused by that fire or explosion, if the fire or explosion would be covered under this Coverage.

M.   Unexplained or mysterious disappearance or shortage found upon taking of inventory.

N.    Rain, ice, sleet, snow or hail, whether driven by wind or not, to property stored in the open.
This exclusion does not apply to property that was built or designed to be stored in the open.

O.    Intentional acts committed by you or at your direction.
This exclusion does not apply to damage, destruction or threat thereof to software or computer media by an external person or an internal employee breaching your authority and safeguards to protect such software or computer media.

P.    Delay, loss of use (including loss of use of animals), loss of market, interruption of business, or any other consequential loss.

Q.    Any other loss that may be covered by some other section of this policy.

R.    Any weather condition that is a photographic weather condition;

S.    The quality or content of the "Insured Production".

T.    Strike by any organization for which you are a signatory or negotiate with or is a major entertainment union or guild;

U.    Strike by an union or guild that was occurring prior to the commencement of principle photography of any insured production

## III.   DEFINITION OF LOSS

A.    Loss, as used in this Section, means any extra expenditure (as defined in CONDITIONS APPLICABLE TO ALL SECTIONS, II. SPECIAL CONDITIONS. A. INSURABLE PRODUCTION COST), incurred and or committed by you in completing an Insured Production over and above the expenditure which, but for the happening of any one or more of the occurrences specified in Paragraph I would have been incurred in completing the Insured Production.

B.    In the event that the happening of one or more of the occurrences specified in Paragraph I. reasonably and practically prevents the completion of an Insured Production irrespective of any completion or delivery date requirements, you shall have the right to abandon the production and claim under this Section for such actual expenditures you incurred and or committed in an Insured Production and as have been rendered entirely valueless solely and directly by reason of the happening of one or more of the occurrences specified in Paragraph I., subject to the SPECIAL CONDITIONS of this policy.

**SECTION III. COVERAGE B.  PROPERTY**

**I.       INSURING AGREEMENT**

**A.**     We agree to pay to you or on your behalf the value of any property, not including loss of use, owned by you or which is the property of others and for which you are legally liable and which is lost, damaged or destroyed, caused by the Perils Insured against, while such property is used or to be used by you in connection with an Insured Production including :

1.       Scenery, costumes, theatrical props and related equipment;

2.       Cameras, camera equipment, sound and lighting equipment, portable electrical equipment, mechanical effects equipment, grip equipment and mobile equipment;

3.       Office equipment, furniture, fixtures and tenants improvements and betterments;

4.       Vehicles rented or picture vehicles you own

5.       Money & Currency

Property Not Covered

Covered Property does not include:

(1)  Personal Property that is covered under any other Coverage of this policy;

(2)  Animals;

(3)  Growing plants except as part of a set;

(4)  Accounts; bills; currency, numismatic properties or money; food stamps; notes; securities; stamps; deeds; evidences of debt; letters of credit; credit cards; passports; transportation, admission or other tickets; unless specifically added to this policy;

(5)  Buildings or their improvements and betterments, except as part of a set;

(6)  Aircraft unless used as part of a set as a non-functional craft during filming or taping;

(7)  Watercraft valued over $500,000 while waterborne, unless used or intended to be used as part of a set and moored to a pier, dock, wharf or similar fixed structure;

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

(10) "Land Vehicles" or "Mobile Equipment" while involved in racing, chase scenes, or stunts, unless specifically added to this policy or as outlined herein;

(11) "Land Vehicles" you own, unless specifically added by an endorsement to this policy or that are picture vehicles owned by you while used or intended to be used on-camera in an "Insured Production";

(12) Negative film, video tape, tapes, cels, transparencies, positives, sound tracks, art work, software, programs or any other form of media;

(13) Furs, fur garments and garments trimmed with fur except as added to this policy;

(14) Jewelry, costume jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals except as provided in the policy;

(15) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac except as provided in the policy.

## III.  LIMITS OF INSURANCE

a.   The most we will pay for loss or damage in any one occurrence is the Limit of Insurance shown in the Declarations for Props, Sets & Wardrobe coverage.

b.   Subject to a. above, $____ is the most we will pay for loss or damage to the following types of property:

(1) Furs, fur garments and garments trimmed with fur;

(2) Jewelry, costume jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals; and

(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

This limit applies to any one occurrence, regardless of the types or number of articles that are lost or damaged in that occurrence.

## IV.  DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable limits of insurance exceeds the deductible amount shown in the Declarations. We will then pay the amount of the adjusted loss or damage in excess of the deductible, up to the applicable limit of insurance.

## II.      PERILS INSURED

This Coverage Section insures against all risks of direct physical loss or damage to the property covered from any external cause, except as hereinafter excluded.

## III.     PERILS NOT INSURED

This Coverage does not insure against loss or damage caused by or resulting from:

**A.**     wear and tear; hidden or latent defect; gradual deterioration; depreciation; insects; vermin or rodents; corrosion, rust, dampness, cold or heat however this exclusion does not apply to verifiable breakdown or malfunction to covered property;

This exclusion does not apply to verifiable breakdown, short circuit, electrical injury, disturbance or malfunction to Covered Personal Property, not including vehicles.  Subject to that props; created, constructed, designed or maintained by you must be tested and verified to be in working order under the conditions you will be using them.

**B.**     any work process, experimentation, repairing, restoration,  conversion, or partial conversion, retouching, painting, cleaning or any other form of process performed or undertaken by you or on your behalf or at your direction, unless accidental fire or explosion ensues and then only for the loss or damage caused by

Named Insured
Motion Picture/Television Production Portfolio Policy                          Policy No.

such ensuing fire or explosion.;

**C.**     unexplained or mysterious disappearance, or shortage found upon taking of inventory;

**D.**     rain, sleet, snow or hail, whether driven by wind or not, to property stored in the open. This exclusion does not apply to property that was built or designed to be stored in the open;

**E.**     damage to or destruction of property caused intentionally by you or at your direction;

**F.**     loss, destruction or damage caused by or resulting from delay, loss of market, interruption of business or other consequential loss extending beyond direct physical loss or damage;

**G.**     Delay, loss of use, loss of market, interruption of business, or any other consequential loss.
**H.**

## IV.    VALUATION

The basis of determining the value of the property insured hereunder, except with respect to vehicles, will be as follows:

**A.**     Your property will be valued at the full cost of repair or replacement, without deduction for depreciation or betterment, if repaired or replaced with due diligence and dispatch and in no event unless repair or replacement is completed within one year from the date of loss.  .  If not repaired or replaced, the property will be valued at its actual cash value at the time and the place of loss.

**B.**     Property of others will be valued in accordance with a written contract and in the absence of a written contract at common or fair market value or as you are obligated to pay by common law.

**C.**     Vehicles will be valued at actual cash value as of the date and location of loss or in accord with a written contract.

## V.    MONEY & CURRENCY EXTENSION

**A.**     Coverage is extended for loss or destruction of money and currency subject to a sub-limit of liability of $250,000 any one loss arising out of:

1.     fire;

2.     burglary (defined as a loss, which results from forcible entry to or exit from premises, safes or locked property);

3.     armed robbery (defined as the forcible taking of money at gunpoint or by similar threat);

4.     no coverage attaches hereunder in any circumstances other than as noted above.

**B.**     Coverage is provided at the following locations while:

1.     in locked safes and vaults secured on your premises and/or locations used as temporary production offices and/or in hotel safes;

2.     in the custody of your approved agents in the course of and while performing their duties as

CONFIDENTIAL     **EXHIBIT 1, PAGE 75**     AONNBCU0003862

agents;

3.          on your business premises during the normal hours of business.

C.          You warrant that you and your agents will secure money and currency overnight in safes whenever available at locations other than your business premises. Failure to adhere to this warranty will relieve us from all obligations under this coverage to the extent that a loss is suffered or increased by that failure.

D.          No loss attaches hereunder for loss of money and currency arising out of mysterious or unexplained disappearance, or for shortage disclosed upon taking of inventory.

Named Insured
Motion Picture/Television Production Portfolio Policy                    Policy No.

**ENDORSEMENT NO. 3**
**HURRICANE EXCLUSION**


It is hereby understood and agreed that all Coverage Sections specifically exclude any claims caused by or contributed to by a named windostorm in a tier one county as defined below occurring during or from from June 1st through November 30th of each respective year unless endorsed hereon.

　　　　To be discussed

All other terms and conditions remain unchanged.


　　　　THIS ENDORSEMENT NEEDS TO BE AMENDED TO APPLY ONLY TO TIER ONE DEFINED COUNTIES.


GENERAL ENDORSEMENT NO. 3
HURRICANE EXCLUSION

CONFIDENTIAL                    EXHIBIT 1, PAGE 77                    AONNBCU0003864

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

GENERAL ENDORSEMENT NO. 4
TRIA

CONFIDENTIAL

EXHIBIT 1, PAGE 78

AONNBCU0003865

# EXHIBIT 2

| From: | George Walden [George_Walden@ars.aon.com] |
|---|---|
| Sent: | 12/16/2009 3:56:00 AM |
| To: | George Walden [georgerwalden@aol.com] |
| Subject: | Fw: Martin's_Final_Form_12-15-091 (2).doc |
| Attachments: | image001.jpg; Martin's_Final_Form_12-15-091 (2).doc |

**From:** "Ridgers, Martin K." [MRidgers@ebi-ins.com]
**Sent:** 12/16/2009 02:07 AM EST
**To:** George Walden
**Cc:** "Phillips, Wanda M." <WPhillips@ebi-ins.com>; "Ridgers, Martin K." <MRidgers@ebi-ins.com>
**Subject:** Martin's_Final_Form_12-15-091 (2).doc

George,

David had to leave about 3/4 through the review, I have atached the changes to the document, you should not find anything that significantly changes the coverage as we have discussed.  Please let NBC know we are working very hard to provide a broader form. Again I have made some formatting changes but not all and I have marked in purple the reference to the conditions that I must restate.

Please call me with any questions I will try to be up early tomorrow.

Yours truly,



A Member of the OneBeacon Insurance Group

*Martin Ridgers*, CPCU

Senior Vice President

Entertainment Brokers International

A member of the OneBeacon Insurance Group

License No. 0773887

mridgers@ebi-ins.com

Direct Tel: 310.954.3970

Tel 310.824.0111 / Fax 310.824.5733

Mobile: 310-418-4772

Visit our website at http://www.ebi-ins.com for applications, news and product information.

This e-mail and any attachments to it, is intended for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (310) 824-0111 or by e-mail.

```
Visit our website at http://www.ebi-ins.com for applications, news and product
information.
```

Confidentiality notice: The information contained in this email message including attachments is confidential and is intended only for the use of the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, you are hereby notified that any use, unauthorized dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please delete immediately or if any problems occur with transmission, please notify me immediately by telephone at (310) 824-0111. Thank you.

**Broker:**   Aon/Albert G. Ruben Insurance Services, Inc.            Insurance Company
          10080 Wilshire Boulevard, 7th Floor
          Los Angeles, CA  90024
                                                                **Herein Called the Company**

**MOTION PICTURE/TELEVISION**
**PRODUCTION PORTFOLIO DECLARATIONS**                          **Policy Number:**

1.   **NAMED INSURED and MAILING ADDRESS:**

      Named Insured
      Street Address
      City, State, Zip Code

2.   **POLICY PERIOD:**
      **From 12:01 A.M. Standard Time at the address of the NAMED INSURED as stated above.**

3.   **INSURED PRODUCTION(S):    Any production of the insured**

4.   **COVERAGE:**

| Section | Coverage | Limit of Liability |
|---------|----------|--------------------|
| I. | CAST | $50,000,000 |
| II. | NEGATIVE & FAULTY STOCK | $50,000,000 |
| III. | EXTRA EXPENSE | $10,000,000 |
| IV. | PERSONAL PROPERTY | $10,000,000 |
| V. | THIRD PARTY PROPERTY DAMAGE | $10,000,000 |
| VI. | Other Covers: | |

5.   **DEDUCTIBLES & SELF-INSURED RETENTION:**  See Rating Schedule endorsement

6.   **DEPOSIT PREMIUM:**  See Rating Schedule endorsement

COUNTERSIGNATURE DATE:                              COUNTERSIGNATURE OF AUTHORIZED AGENT:

CONFIDENTIAL                    EXHIBIT 2, PAGE 81                    AONNBCU0004057

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

7.      Insurance is provided against those perils and for the coverage under those Sections for which a specific amount or Limit of
        Liability is shown  in  schedules incorporated herein, subject to all terms of the policy and all forms and endorsements
        made a part hereof.

8.      When a deposit premium has been charged, the actual premium will be determined in  accordance with the terms of
        the rating schedule endorsement attached to and made a part of this policy.

9.      **FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:**

10.     **DATE ISSUED**:

DECLARATIONS                        Page [ PAGE ] of [ NUMPAGES ]

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

### CONDITIONS APPLICABLE TO ALL SECTIONS

**I.    GENERAL CONDITIONS**

Throughout this Policy, "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we," "us" and "our" refer to the Company providing this insurance.

**A.    NAMED INSURED**

Named insured shall mean the first named insured as per the Declarations and any majority owned or managed subsidiaries thereof, their respective parent and affiliated companies with 51% ownership and or any or financially controlled or managed organization. and or any  A production company or other entity formed by the insured or contracted by the insured as a joint venture or on behalf of the named insured or any other organization, entity or person(s) which the named insured has agreed to insure.

**B.    TERRITORY**

This Policy applies anywhere in the world.

**C.    MISREPRESENTATION AND FRAUD**

This Policy is void if you knowingly concealed or misrepresented any material fact or circumstance concerning this insurance, or in the case of any fraud or false swearing by you, whether before or after a loss.  If you make any false or fraudulent claim as to the amount or otherwise, this Policy is void as to that specific claim, and we have the right to terminate this Policy at that time, and any subsequent claims by you are forfeited. The term "you:" as used in this paragraph applies your executive production management or the Risk Management Department.

**D.    ASSIGNMENT**

This Policy may not be assigned without our written consent.

**E.     ACTION AGAINST US**

No action against us may be brought unless you have complied with all of the material provisions of this Policy and the action is started within two (2) years after the date on which the loss occurred.

Nothing in this Policy gives any person or organization any right to join us as a codefendant in any action against you to determine your liability.

**F.    Access To Records And Examination Under Oath**

We or our representatives may examine and audit your books and records as they relate to this policy at any time during the policy period or while a claim is pending.

If requested, you must permit us to question you and, so far as within your power, all other interested persons under oath, at such times as may be reasonably required, about any matter relating to this insurance or a claim.

No such examination under oath or examination of books or documents, nor any other act by us or any of our employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which we might otherwise have with respect to any loss or claim, but all such examinations and acts shall be deemed to have been made or done without prejudice to our liability.

CONFIDENTIAL              EXHIBIT 2, PAGE 83              AONNBCU0004059

Named Insured
Motion Picture/Television Production Portfolio Policy                    Policy No.

**G.    OTHER INSURANCE**

If, at the time of loss or damage, any other valid insurance is available which would apply to the loss or damage in the absence of this policy, the insurance provided by this policy will be primary to any other policy held by you but excess with respect to any policy or coverage held or provided by any other party, unless otherwise agreed by you.

~~To the extent recovery is made from such other insurance, the deductible and or the SIR under this policy will be reduced by such recovery. In no event will the deductible/SIR under this policy be greater than that shown in this policy.   If recovery from such other insurance is greater than the deductible/SIR in this policy, then the deductible/SIR under this policy will not apply.~~

~~To the extent there is a recovery from other insurance when the loss exceeds the Deductible or SIR we will share the recovery and costs proportionally.~~

This policy does not apply to any productions that have been or are required to be declared by you under similar insurance provided by any other insurer.

**H.    SUBROGATION**

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them.

This insurance will not be prejudiced if you have waived your right of recovery from any party or parties in a lease for premises or rental agreement for property ~~and  W~~ we will honor any written contractual  waiver of subrogation obligation agreed to by you prior to a loss.

**I** **Duties In The Event of Loss Or Damage**

In case of a loss or damage to which this insurance may apply, you must see that the following duties are performed:

(1)    Police Notification - Notify the police if a law may have been broken.

(2)    Minimize Loss or Damage – Take all reasonable steps to protect the property from further damage and minimize the loss. Keep a record of your expenses in doing so for consideration in the settlement of the claim. This will not increase the limit of insurance.

(3)    Notice of Loss or Damage

    (a)    Report immediately to us or our authorized representative any loss or damage which may become a claim under this policy. Include a description of the property or loss involved.

    (b)    As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4)  Proof of Loss - File with us, or our authorized representative, a detailed proof of loss signed and sworn to by you setting forth to the best of your knowledge and belief the facts of the loss and the amount thereof. You must do this within one hundred eighty (180) days as requested by us or required by law after discovery of the loss or damage ~~as requested by us or required by law.~~

(5)    Cooperation

    (a)    Except at your own cost, make no voluntary payments, assume no obligations, and incur no expenses without our consent.  Except in settlement of a covered claim ~~less~~ where the amount of the claim is not disputed ~~under this policy.~~

SECTION I.  CAST                          Page [ PAGE ] of [ NUMPAGES ]

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

      (b)    Permit us to inspect the property and records proving the loss or damage.

            Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

      (c)    Immediately send us copies of any demands, summonses or legal papers received in connection with the claim or suit.

      (d)    Cooperate with us in the investigation or settlement of the claim.

**j.  Loss Payment**

  (1)    Loss or damage covered by this policy will be payable to you or your loss payee.

        We agree that any holder of a Certificate of Insurance in which such holder is evidenced as a Loss Payee issued by us or on our behalf will be considered a Loss Payee, subject to your legal liability.

  (2)    We will not pay you more than your financial interest in the covered property.

  (3)    If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

  (4)    We will pay you for covered loss or damage within thirty (30) days after we receive and accept a satisfactory sworn proof of loss <u>as we have required or as required by law</u>, if you have complied with all the terms of this policy and: ~~As we may require or as legally required.~~

      (a)    We have reached agreement with you on the amount of loss; <u>or</u>

      (b)    A final judgment has been entered; or

      (c)    An appraisal award has been made.

  (5)    We may adjust losses directly with the owners of lost or damaged property, if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property.  We will not pay the owners more than their financial interest in the covered property.

  (6)    We may elect to defend you against suits arising from claims of owners of property.  We will do this at our expense.

We will not be liable for any part of a loss that has been paid or made good by others.


**K.  Deductible**

  (1)    When a deductible applies, the terms of this insurance, including those with respect to your duties in the event of loss or damage, apply irrespective of the application of the deductible amount.

  (2)    We may pay any part or all of a deductible amount to effect settlement of any claim and, upon notification of the action taken you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**L.  Premium**

  (1)  The first Named Insured shown in the Declarations:

      (a)  Is responsible for the payment of all premiums; and

      (b)  Will be the payee for any return premiums we pay.

  (2)  We will compute all premiums for this policy in accordance with the rating schedule(s) attached to and made a part of this policy.

  (3)  The premium shown in this policy is a deposit premium only unless specifically stated otherwise. At the end of the policy period we will compute the earned premium by applying the rates set forth in the rating schedule(s) to the final "Insurable Production Cost". However, the earned premium will not be less than the minimum policy premium stated on the rating schedule(s), regardless of the term of coverage.

     If the earned premium is greater then the deposit premium, we will send a bill to the first Named Insured that shows the amount due and when it is payable. If the earned premium is less than the deposit premium, we will return the excess to the first Named Insured.

CONFIDENTIAL                    EXHIBIT 2, PAGE 85                    AONNBCU0004061

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

The first Named Insured must keep records of the "Insurable Production Costs" and other information we need for premium computation, and send us copies at such times as we may request.

**L.     CANCELLATION**

(1)     The first Named Insured shown in the Declarations may cancel this policy by returning it to us or our authorized representative, stating in writing the future date it is to be cancelled. The policy period will end on that date.

(2)     We may cancel this policy by written notice to the first Named Insured at least:

   (a)  Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (b)  One hundred and twenty (120) days before the effective date of cancellation if we cancel for any other reason.

(3)     We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

(4)     Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

(5)     If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

(6)     If notice is mailed, proof of mailing will be sufficient proof of notice.

**M.     ABANDONMENT**

There can be no abandonment of any property to us without our written consent.

**N.     STOP DATE LOSS**

If as a result of delay in completing the original shooting schedule of an insured production you incur a loss in order to honor the termination date contained in a performance contract between you and any other person and/or their respective loan out company, such loss (hereinafter referred to as a stop date loss) would not be covered by the provisions of this policy, but this policy will, nonetheless, participate in a stop date loss to the extent that the need to incur such loss is directly related to a loss insured under the terms of this policy.  The extent of our participation in a stop date loss will be governed by the proper consideration of the following factors:

1.      If the need to incur the stop date loss is solely and directly the result of an insured loss, the stop date loss will be recoverable in full.

2.      If the need to incur the stop date loss arises in part by reason of an insured loss and also arises in part by reason of an uninsured occurrence so that it can reasonably be said that each contributed to the incidence of the stop date loss, then the extent that each so contributed will be determined and an apportionment of the stop date loss will be made.

3.      If the need to incur the stop date loss is in no way connected with an insured loss, no part of the stop date loss will be recoverable.

4.      Coverage afforded by this paragraph is subject to the proviso that the performance contract term was sufficiently longer than your original scheduled time for completion of the insured production so as to allow a reasonable margin of safety to cover possible delays in completing the insured production. It is agreed that 10 consecutive days is a reasonable margin of safety for features and 3 consecutive days is a reasonable margin of safety for all other productions.

CONFIDENTIAL                     EXHIBIT 2, PAGE 86                     AONNBCU0004062

Named Insured
Motion Picture/Television Production Portfolio Policy                                            Policy No.

**O.      APPRAISAL**

If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal. Each party will select a competent, independent appraiser and notify the other of the appraiser's identity within twenty (20) days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within fifteen (15) days, you or we can ask a judge of a court of record in the state of your residence to select an umpire. The appraisers will then submit a written report of an agreement to us and the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable period of time, they will submit their difference to the umpire. Written agreement signed by any two of these three will set the amount of the loss. The party selecting that appraiser will pay each appraiser. Other expenses of the appraisers and the compensation of the umpire will be paid equally by you and us.

**P.      POLICY CHANGES**

No changes may be made to this policy except by mutual agreement in writing.

**Q.      CONFORMITY TO STATE LAW**

When any policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply, unless the provision of this policy is broader.

**R.      DUE DILIGENCE CLAUSE**

You shall use due diligence and do and concur in doing all things reasonably practicable to avoid or diminish any loss or any circumstance likely to give rise to a loss or claim insured under this policy. This policy extends to indemnify you for any additional expenses necessarily incurred by you to avoid or diminish such loss or claim, subject to any deductible provisions of this policy. This indemnification will not increase the limit of insurance, and we will not pay more for any loss than the amount that would have been payable had you not incurred the additional expenses.

~~You shall use due diligence and do and concur in doing all things reasonably practicable to avoid or diminish any loss or any circumstance likely to give rise to a loss or claim insured under this Policy. This policy will indemnify you for your additional incurred expenses and/or increased costs incurred by you to avoid or diminish any such loss or claim, subject to any deductible/SIR provision stated herein, provided however, that in no circumstance will our maximum liability under this policy be greater than the increased costs and/or additional incurred expenses, or in any event exceed the limits of liability of this policy.~~

**S.      INADVERTENT ERROR CLAUSE**

You will not be prejudiced by any unintentional or inadvertent omission, error or incorrect description of the property, persons, animals or exposures insured hereunder.

**T.      INSPECTION & SURVEYS**

(1)      We have the right to:
     (a)      Make inspections and surveys at any time;
     (b)      Give you reports on the conditions we find; and
     (c)      Recommend changes.

(2)      We are not obligated to make any inspections, surveys, reports or recommendations, and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety recommendations. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
     (a)      Are safe or healthful; or
     (b)      Comply with laws, regulations, codes or standards.

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

(3)     Paragraphs (1) and (2) of this Condition apply not only to us, but also to any rating, advisory, rate
service or similar organization which makes insurance inspections, surveys, reports or
recommendations.

____

**U   Recoveries**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your
option, the property will be returned to you. You must then return to us the amount we paid to you for the property.
We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

To the extent recovery is made from such other insurance, the deductible and or the SIR under this policy
will be reduced by such recovery. In no event will the deductible/SIR under this policy be greater than that
shown in this policy.   If recovery from such other insurance is greater than the deductible/SIR in this
policy, then the deductible/SIR under this policy will not apply.

To the extent there is a recovery from other insurance when the loss exceeds the Deductible or SIR we will
share the recovery and costs proportionally.

**V.     INSURANCE NOT TO BENEFIT OTHERS**

No person or organization, other than you, having custody of the property and to be paid for
services shall benefit from this insurance. This restriction does not apply to a person or
organization, other than a common carrier, which is working or providing services on your behalf.

**W.     PROPERTY OF OTHERS**

In the event of loss or damage to property of others (insured hereunder) held by you for which claim is made upon us the
right to adjust such loss or damage with the owner or owners of such property is reserved to us and receipt of payment
by such owner or owners  in satisfaction thereof shall be in full satisfaction of any claim by you for which such
payment has been made. If legal proceedings are taken to enforce a claim against you as respects any such loss or
damage, we shall, at our expense, conduct and control the defense of such legal proceeding on behalf of and in your
name. No action of ours in such regard will increase our liability under this policy.

**X.     EXCHANGE RATE**

The rate of exchange applied to a loss shall be the rate as paid by you to purchase the foreign funds.

We reserve the right, for claims that we settle directly with third parties to this policy, to adjust the claims
at the prevailing exchange rate or the exchange rate used to actually purchase the foreign funds.

**II.     SPECIAL CONDITIONS**

**A.     DEFINITIONS**

a.    "Continuity" means costs incurred to match or maintain the Environment of the "Insured Production" during     ◄─ [ **Formatted:** Bullets and Numbering ]
"Principal Photography".
The Environment includes weather, climate, natural lighting or seasonal changes in which you are filming the "Insured
Production".

CONFIDENTIAL          **EXHIBIT 2, PAGE 88**          AONNBCU0004064

Named Insured
Motion Picture/Television Production Portfolio Policy                    Policy No.

a.b.  "Earthquake" means:

> (1)  Any earth movement, such as an earthquake, landslide, mine subsidence, or earth sinking, rising or shifting; and
>
> (2)  Volcanic eruption, meaning the eruption, explosion or effusion of a volcano;
>
> provided that all earth movements or volcanic eruptions that occur within any seventy-two (72) hour period will constitute a single earth movement or volcanic eruption.

b.c.  "Flood" means, flood waters, surface water, waves, tide or tidal water, overflow or rupture of a dam, levy, dike or other surface containment structure, storm surge, the rising, overflowing or breaking of boundaries of natural or manmade bodies of water, or the spray from any of the foregoing, all whether driven by wind or not.

c.d.  "Insurable Production Cost" includes:

All costs, including overhead, chargeable directly to an "Insured Production" or series of productions, including any amount of other coverage than you declare at the time you declare an "Insured Production" or series of productions. However, the following costs shall not be included in "Insurable Production Cost":

> (a)  Royalties Term Deals for Executive Producer(s), Package Fee & Publicity, residuals, premiums paid for this insurance, interest on loans, and personal and real property taxes;
>
> (b)  Story, scenario, music rights, and sound rights, except with respect to television series, specials and pilots; and
>
> (c)  "Continuity", except when a period of suspension due to covered loss or damage exceeds ninety (90) days.
>
> (d)  Any other costs specifically stated not to be "Insurable Production Costs" in an endorsement to this policy.
>
> Nevertheless, you have the option to include these excluded costs at the time you declare an "Insured Production" or series of productions. In that case, such costs will be included in the "Insurable Production Cost"; and

(2)  The amount of any loss or damage paid under this policy. This provision does not apply where premium is based on an episodic charge.

d.e.  "Insured Production" means a production or series of productions that has been declared to us.

e.f.  "Mobile Equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

> (1)  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
>
> (2)  Vehicles that travel on crawler treads;
>
> (3)  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted equipment, or maintained primarily for purposes other than the transportation of persons or cargo.
>
> However, "Mobile Equipment" does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

f.g.  "Principal Photography" means the continuous period of time from the start date to the completion date you actually require to photograph or tape an "Insured Production", including any necessary wrap time or reshoots.

**B.      ABANDONMENT**

Should a covered loss result in an abandonment, during the term of coverage, under any section of this policy, we have the right to require that you surrender all owned or licensed rights, title(s) and interest(s) in all documents, underlying works, copyrights and all related material of the insured production, except as relates to any sequel, prequel and their attendant merchandise.  We will reimburse you for the cost you incurred for the rights.

**D.      REFPORTING REQUIREMENTS**

CONFIDENTIAL                    EXHIBIT 2, PAGE 89                    AONNBCU0004065

Named Insured
Motion Picture/Television Production Portfolio Policy                    Policy No.

You must declare to us on a declaration and information form acceptable to us, the particulars of each and every production or series of productions undertaken by you during the term of this policy. If Cast Insurance is to be provided you will report to us each Covered Person to be insured ~~prior to or~~ within thirty (30) days of the commencement of "principal photography".

E.   **HIATUS COVERAGE**

1.   With respect to episodic television, coverage is continuous from the pilot through season one and between seasons for continuing television series insured hereunder, hereinafter referred to as Hiatus Coverage, subject to all other terms and conditions of this policy.

2.   Hiatus Coverage means the period of time from the end of coverage for the pilot or an episodic television season until the commencement of pre-production, for the series following the pilot or subsequent season.

3.   The limits of liability, deductibles and terms that were in effect for the preceding pilot or season will apply during the hiatus period.

4.   Hiatus Coverage applies solely to Cast Coverage, Property and Third Party Property Damage.

5.   Hiatus coverage will cease immediately when this policy is cancelled or non renewed by you or us or 180 days after the start of  Hiatus which ever occurs first.

F   **DELIVERY DATE EXPEDITING COSTS**

With respect to all productions insured hereunder, subject to all other terms and conditions, the definition of loss with respect to Cast Coverage, Negative Film, Faulty Stock and Extra Expense is extended to include the necessary production ~~any~~ extra expenses you necessarily incur to meet an air date or delivery date of an insured production subject to a sub limit of liability of $1,000,000

G.   **PRINTS & ADVERTISING COSTS**

With respect to all productions insured hereunder, subject to all other terms and conditions, the definition of loss with respect to Cast Coverage, Negative Film, Faulty Stock and Extra Expense is extended to include the costs incurred for prints and advertising as have been rendered entirely valueless, solely in the event of an abandonment of an insured production, subject to a sub limit of liability of $1,000,000

H.   **Public Relations Costs**

With respect to all productions insured hereunder, subject to all other terms and conditions, the definition of loss with respect to "Disgrace" and or "Violent Death" under Cast Insurance is extended to include the costs to hire a third party public relations firm, law firm or crisis management firm for the specific purpose to minimize potential harm to you arising from a situation or occurrence involving the Disgrace or Violent Death of an insured cast member, subject to a sub-limit of liability of $250,000.

I.   **Annual Aggregate Deductible**

This policy is subject to "Insured Production" deductibles as listed herein and Annual Aggregate deductible for the policy term of $2,100,000 subject to the following:

1.   All adjusted claim amounts approved by us that you incur over the deductible amounts stated herein will accrue to the Annual Aggregate Deductible. ~~(s) Cap(s).~~

CONFIDENTIAL                    EXHIBIT 2, PAGE 90                    AONNBCU0004066

Named Insured
Motion Picture/Television Production Portfolio Policy                              Policy No.

2.  At such time as the "Insured Production" or Annual Aggregate Deductible(s) has been exhausted, the deductible shown on the Declarations Page or within the policy will drop down to Maintenance Deductible(s) stated herein for each adjusted claim and for all subsequently adjusted claims for that "Insured Production" or annual period of declared productions.

3. Any amount paid by you we have determined it is covered by this policy

> **Formatted:** Bullets and Numbering

The Annual Aggregate Deductible will not include any claims for the following; Delivery Date Expediting Costs, Prints and Advertising Costs or Public Relations Costs.  After the Annual Aggregate Deductible a Maintenance Deductible will apply per occurrence of $100,000

### III.   CLAIMS ADMINISTRATION

The assigned independent adjuster for claims within the Annual Aggregate Deductible if required is as follows:

Hyperion Claim Specialists LLC ("Hyperion")
550 S. Hope Street, Suite 1625
Los Angeles, CA  90071-2650
Phone:  213 347-0250
Fax:  213 347-0266

Entertainment Brokers International / OneBeacon Insurance Company Claims Department
10940 Wilshire Boulevard, 17th Floor
Los Angeles, CA 90024

Phone: 310-954-3960
Email; pwilliams@ebi-ins.com

### IV.   EXCLUSIONS APPLICABLE TO ALL SECTIONS OF THIS POLICY

This Policy does not insure against loss or damage caused directly or indirectly by:

A.   War, including undeclared or civil war; or

B.   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

C.   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

D.   Any weapon of war employing atomic fission or radioactive force, whether in time of peace or war;

E  Any weapon employing atomic fission, atomic fusion or radioactive force; or

> **Formatted:** Font: (Default) Times New Roman, 10 pt, Complex Script Font: Times New Roman

(b)  Nuclear reaction or radiation, or radioactive contamination from any other cause. But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the direct loss or damage caused by that fire if the fire would be covered under this policy.

SECTION I. CAST                      Page [ PAGE ] of [ NUMPAGES ]

Named Insured
Motion Picture/Television Production Portfolio Policy                    Policy No.

~~Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled,~~
~~and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by,   C~~
~~contributed to, or aggravated by the peril or perils insured in this policy.  However, subject to the foregoing~~
~~and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or~~
~~radioactive contamination is covered;~~

**F.**     Risks of contraband or illegal transportation of trade;

**G.**     Violation of any Law or Statute, or any actual dishonest, fraudulent, criminal or malicious act committed by you, your employees, including any judicial injunction or action for injunctive relief;

**H.**     Any uninsured event occurring before, concurrently with or after the happening of an insured event, which directly or indirectly causes or in any way contributes to cause or increase a loss under this policy; but only with respect to that portion of any such loss caused by or contributed to by the uninsured event, unless the uninsured event would not have been a factor had such insured event never occurred.

**I.**      "Stop Date Loss", as described in Special Conditions, except as otherwise provided in Special Conditions

> Formatted: Highlight

> Formatted: Highlight

SECTION I.  CAST                          Page [ PAGE ] of [ NUMPAGES ]

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

# Section I. Cast Coverage

**I.   COVERAGE**

We will pay the actual and necessary loss you sustain by reason of a Covered Person being prevented from commencing, continuing or completing an assigned duty or role in an "Insured Production". The loss must be caused by or result from a Covered Cause of Loss during the Term of Coverage.

a.   Covered Causes of Loss

1.   Accidental injury, sickness or death, to a Covered Person;

2.   Kidnap of a Covered Person;

3.   Death, Severe Injury, Catastrophic Injury, life threatening illness of an "Immediate Family Member" that manifests itself during the term a Covered Person is insured hereunder.

4. "Violent Death" or "disgrace" of a Covered Person declared and accepted by us, as to force the necessary abandonment of the "Insured Production".

except those causes of loss listed in the Exclusions.

b.   Term of Coverage

(1)    Term of Coverage, as used in this Coverage, means the period beginning with the effective date shown in the Declarations or the start date of principal photography whichever occurs first, and continuing until the earliest of the following dates:

(a)  The date of delivery required under the completion guarantee agreement with the distributor(s).

(b)  The date your completion guarantor is released from further obligations to you;

(c)  Eighteen (18) months after completion of "Principal Photography";

(d)  The date on which a protection print or duplicate tape has been completed and physically removed from the premises where the original negative or tape is located;

(e) The date on which cancellation or termination of coverage under this policy for the "Insured Production" becomes effective.

The expiration date of this policy or declaration will be extended, if necessary, from the earliest of these dates. We may charge additional premium for this extension.

(2) Subject to the Medical Examination Condition below, Term of Coverage also includes the Pre-Production period of Cast Coverage.

(a)  The Pre-Production period for Covered Persons who are "Guest Artists" in episodic television begins sixty 60 days before the start of "Principal Photography" or videotaping of the "Insured Production".

(b)  The Pre-Production period for other Covered Persons begins one hundred and eighty (180) days before the start of "Principal Photography".

(3)  You may, provided we are given prior notice:

(a)  Declare a starting date of "Principal Photography" at any time within the term of this policy;

**II.   ADDITIONAL EXCLUSIONS**

For the purposes of this Coverage, the following exclusions apply in addition to the exclusions described in Part V. of the Policy Conditions - Exclusions Applicable To All Coverages of This Policy.

We will not pay for loss caused by or resulting from any of the following:

a.   Sickness on a Covered Person unless accepted by us and or as may be provided under IV b Medical EXAMINATION.

b.   Any Covered Person taking part in any hazardous stunt(s) (As defined by the entertainment Guilds or Unions) without our written consent;

c.   Any Covered Person taking part in flying other than as a passenger;

d.   The inability of any female to continue her performance because of pregnancy or conditions pertaining to pregnancy.  This exclusion will not apply if you can prove that the female was not aware of the pregnancy when

CONFIDENTIAL                    EXHIBIT 2, PAGE 93                    AONNBCU0004069

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

they accepted the position with you or when they completed the medical certificate or when the  medical examination was performed;

e.   Any Covered Person over seventy four years of age unless the person is specifically named in an endorsement attached to this policy;

f.   Any reservation, exception or restriction we have imposed on a Covered Person, as described in the Medical Examination Condition below, regardless of when the event causing loss occurs.

g.   Ransom payments hereunder unless  payment is authorized, approved and monitored by the police or other civil authority

h.   Behavior, action or inaction of a covered person that is consistent with the known public or private persona or behavior of the covered person which gives rise to "disgrace" of the "covered person".

## III.  LIMITS OF INSURANCE

The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the Declarations for Cast Coverage.

Ransom payment will not exceed $1,000,000 Sublimit.

<u>Family Death… is subject to 7 days of coverage.</u>

## IV.  DEDUCTIBLE OR SELF INSURED RETENTION

We will not pay for loss in any one occurrence until the amount of the adjusted loss before applying the applicable limits of insurance exceeds the deductible or self insured retention amount shown in the Declarations for Cast Coverage. We will then pay the amount of the adjusted loss in excess of the deductible or self insured retention, up to the applicable limit of insurance.

## V.  DEFINITION OF LOSS

a.   The amount of your loss will be determined based on:

(1)  All necessary "Insurable Production Cost" you incur to complete the "Insured Production" that exceeds the amount of "Insurable Production Cost" you would have incurred if the covered cause of loss had not occurred; and

(2)  All other necessary expenses that reduce the amount of loss otherwise payable.

However, your loss will not include loss of earnings of profit.

c.   If you abandon an "Insured Production" that has been made substantially valueless solely because one or more covered causes of loss reasonably, practically and necessarily prevents you from completing the "Insured Production", irrespective of any completion or delivery date requirements for the "Insured Production", we will pay as loss the total "Insurable Production Cost" you have incurred for the "Insured Production".

## VI.  ADDITIONAL CONDITIONS

For the purposes of this Coverage, the following Conditions apply in addition to the Policy Conditions.

a.   **Additional Duties In The Event of Loss Or Damage**

The following is added to Policy Condition I.f. - Duties In The Event of Loss Or Damage:

(1)  You must report immediately to us or our authorized representative any fact or circumstance which may prevent a Covered Person from commencing, continuing or completing an assigned duty or role in an "Insured Production" and which may result in a claim under this policy.

(2)  You must immediately secure and file with us or our authorized representative the certification of a duly licensed physician. The certification must include a complete description of the injury, sickness or death and the prognosis.

(3)  You must make every effort to preserve our rights, including enforcing any contractual conditions or terms applicable to the Covered Person, to:

(a)  Have any Covered Person examined by a medical doctor of our choice; and

(b)  Have continuing access to the medical records of any Covered Person.

SECTION I.  CAST                     Page [ PAGE ] of [ NUMPAGES ]

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

It is your responsibility to comply with these conditions and your inability to provide the above may result in your not proving your claim hereunder.

b.   **Medical Examination, Accident Coverage, Immediate Family, Essential Element, Violent Death & Disgrace**

(1)   Any production except Feature Films each Covered Person, other than a "Guest Artist" in episodic television, must be examined by a duly licensed physician, designated or approved by us or submit a medical affidavit not more than sixty (60) days prior to the date the Covered Person's assigned duties or role in the "Insured Production" are scheduled to commence or as accepted by us.

For Feature Films the following **Covered Person(s)** must be examined by a duly qualified physician designated or approved by us, (veterinarian with respect to animals), who will submit to us a Medical Certificate or Affidavit signed by the examinee and physician (not applicable to animals prior to the date the Covered Person's assigned duties or role in the "Insured Production" are scheduled to commence. The physician must complete and submit to us a Medical Certificate or Affidavit, on forms approved by us and signed by the Covered Person.

a.   The Director(s);
b.   Seven (7) covered persons with the greatest exposure to the production as determined by the Risk Management Department. If Risk Management has made a determination of the top seven (7) artists and it is discovered that the determination was incorrect, we will not deny a claim or penalize you for such incorrect determination.

The physician must complete and submit to us a medical questionnaire and certificate, on forms approved by us and signed by the Covered Person.

If the doctors we provide are not available to you for the completion of a medical examination, we grant you permission to use any licensed medical doctor available, except for the Covered Person's personal physician;

(2)   Sickness Coverage for the Covered Person will become effective on the date the medical examination, Medical Certificate or Affidavit authorization is completed, subject to our receipt and approval of the medical exam, Medical Certificate & Affidavit.

Based on the medical information submitted to us, we have the right to make any reservation, exception or restriction regarding the insurability of the Covered Person within 36 working hours of receipt of the medical exam.  We will not pay for loss caused by or resulting from any such reservation, exception or restriction.

If a Covered Person becomes sick or disabled before the medical exam or Medical Affidavit has been completed we will cover the sickness or disability subject to you showing that the sickness or disability would not have been discovered or disclosed during the medical exam or outlined in the Medical Affidavit and that the Covered Person had no prior knowledge.

Our failure to respond to a Medical Certificate & Affidavit and or Affidavit & Authorization within 36 working hours of our receipt will result in full coverage without restriction.

(3)   Accident and Kidnap Coverage is effective on the date you have contracted with the Covered Person to perform in the "Insured Production".

(4)   "Disgrace" & "Violent Death" is effective when the Covered Person is declared by you for this coverage and is approved by us.

(5)   "Immediate Family" is effective on the date you have contracted with the Covered Person to perform in the "Insured Production".

(6)   **"Essential Element"** is effective when the Covered Person is declared and approved by us.

We will also review our own case history and public records to determine the coverage on any Covered Person.

**VII.**          **ADDITIONAL DEFINITION**

CONFIDENTIAL                 **EXHIBIT 2, PAGE 95**                 AONNBCU0004071

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

For the purposes of this Coverage, the following definition applies in addition to the definitions described in Part IV. of the Policy Conditions - Definitions Applicable To All Coverages of This Policy:

"Covered Person" means a person declared and accepted by us, except as outlined herein.

"Guest Artist" means a Covered Person appearing in or contracted to appear in episodic television for less than three (3) consecutive episodes or less than fifty percent (50%) of a series of productions.

"Immediate Family Member" means the mother, father, sister, brother, spouse, life partner, child, stepparents, stepchildren, stepbrother, stepsister, mother-in-law, father-in-law, sister-in-law, brother-in-law, daughter-in-law, son-in-law or "significant others" who reside together, grandparent or grandchild of the Covered Person.

"Violent Death" means the Covered Person died at the hands of another person and that the Covered Person was involved in a crime. The showing of the "Insured Production" would degrade the insured and would anger the public

"Disgrace" means any criminal act or alleged criminal act, or any offense against public taste or decency, committed by a covered person, beyond their usual or expected behavior, that degrades or brings that Covered Person into disrepute or provokes insult or shock to the community that reflects unfavorable upon the named insured or insured production that renders the "Insured Production" commercially unviable.

"Essential Element" is defined AS a declared artist(s) for the purpose of completion and delivery of the "Insured Production" as an "Essential Element" and accepted by us.

VIII   COVERAGE EXTENSION
In the event of:
   (i)   The death of a declared "Essential Element" during the period of pre-production or principal photography; or
   (ii)  The injury or illness of an "Essential Element" during the period of principal photography, whose injury or illness necessarily prevents the declared artist from performing services and completing the insured production. The injury or illness must incapacitate the "Essential Element" for a period of more than [ FORMTEXT ] days;

   it shall be considered reasonable, practical, and necessary for you to abandon the Insured Production during principal photography and make claim under this Section for such costs defined in Section I. Cast, VI. Definition of Cost, Paragraph D.

d.   Pursuant to Paragraph c. (ii) above, we shall have the option to delay your abandonment of the insured production for up to [ FORMTEXT ] days after the occurrence of the injury or onset of the injury or illness if in our good faith business judgment the artist is likely to recover from such injury or illness to resume his/her assigned role or position within [ FORMTEXT ] days.

   (i)   In the event our decision to exercise our option to delay your abandonment of the insured production for up to [ FORMTEXT ] days after the occurrence of an injury or onset of an illness of the declared "Essential Element" causes you to incur a loss in excess of the amount stated in Section I. Cast, Paragraph IX. Limit of Liability, then such limit of liability shall automatically be increased to include the costs necessarily incurred in excess of the Limit of Liability caused solely and directly by the warranties below.

**Duties in the event of a loss**
Prior to payment of the "Essential Element" loss covered, you will comply with the following:
   A.   Upon our written request, within five (5) business days following the "Essential Element" loss you and one of our representatives shall meet to determine the viability of the options to complete the insured production, including the possibility of replacing the "Essential Element". You will do all things possible to complete the Insured Production, where possible with the remaining cast and crew, including maintaining or replacing financing to complete the insured production. "Essential Element" replacement will be a person of similar standing within the motion picture industry who is acceptable to independent financiers or distributors.

SECTION I. CAST                        Page [ PAGE ] of [ NUMPAGES ]

Named Insured

Motion Picture/Television Production Portfolio Policy                                    Policy No.

B.   You will work with us in good faith and do all things possible to replace the "Essential Element" and upon our request, provide us your authority to negotiate on your behalf with any other party to assist in the replacement of an "Essential Element" or financing.

C.   You will at our option enable us to maintain or replace any financing to complete the insured production.

Any breach of the above warranties will relieve us of any claim that would be payable hereunder.

SECTION I.  CAST                                    Page [ PAGE ] of [ NUMPAGES ]

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

## SECTION II. NEGATIVE FILM & FAULTY STOCK

**I.     INSURING AGREEMENT**

    **A.**    We agree to pay you such loss (defined in Paragraph IV) as you directly and solely sustain as a result of loss of, damage to or destruction of videotape stock, raw film stock, recorded videotape, exposed motion picture film (developed or undeveloped), inter-positives, positives, work prints, cutting copies, fine grain prints, sound tracks, tapes, transparencies, cells, art work (used to create animation or other images), source materials, software, data, media and related material used to generate computer or other images, and or any similar material or property, caused by an insured peril (defined in Paragraph II) when such property is your property or the property of others for which you are legally liable and, while such property is used or to be used in connection with an insured production.

**II.    PERILS INSURED**

This coverage insures:

1.    All risks of direct physical loss or damage;

2. Faulty materials, faulty equipment, faulty computer equipment, faulty editing, faulty developing or fault processing; and including accidental erasure, magnetic, or x-ray injury, disturbance or erasure of film, electronic recordings or video tape and loss of media, data, or software;

3. Operator error including faulty manipulation or faulty operation, of camera, lighting, sound, electrical, editing, computer or any other equipment; technician's error(s) of judgment; and errors in machine or computer programming or instructions to any machine or computer.

**III.   LIMITS OF INSURANCE**

The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the Declarations for Negative Film coverage.

Operator Error is subject to a $2,000,000 Sub-limit

**IV. DEDUCTIBLE**

We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable limits of insurance exceeds the deductible amount shown in the Declarations for Negative Film Coverage. We will then pay the amount of the adjusted loss or damage in excess of the deductible, up to the applicable limit of insurance.

**III.**

**Term of Coverage**

Term of Coverage, as used in this Coverage, means the period beginning one hundred eighty (180) days before the date shown in the Declarations as the start of "Principal Photography" or the start date of principal photography which ever occurs first , and continuing until the earliest of the following dates:

(1)  The date of delivery required under the completion guarantee agreement with the distributor(s);

(2)  The date your completion guarantor is released from further obligations to you;

(3)  Eighteen (18) months after completion of "Principal Photography";

(4)  The date on which a protection print or duplicate tape has been completed and physically removed from the premises where the original negative or tape is located;

(5)  The date your interest in the property ceases; or

(6)  The date on which cancellation or termination of coverage under this policy for the "Insured Production" becomes effective.

CONFIDENTIAL                **EXHIBIT 2, PAGE 98**                AONNBCU0004074

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

The expiration date of this policy will be extended, if necessary, until the earliest of these dates. We may charge additional premium for this extension.

**IV.    PROPERTY EXCLUDED**

This coverage does not insure cut-outs, unused footage or library stock.

**V.    DEFINITION OF LOSS**

a.   The amount of your loss will be determined based on the following:

(1)  With respect to videotape stock, raw film stock and blank media, the actual cost to replace these items with property of like kind and quality.

(2)  With respect to other Covered Property, all necessary "Insurable Production Cost" you incur to "Restore" the "Insured Production" that exceeds the amount of "Insurable Production Cost" you would have incurred if no physical loss or damage had occurred.

(3)  All other necessary expenses that reduce the amount of loss otherwise payable.

b.   Your loss will not include:

(1)  Loss of earnings or profit; or

(2)  "Insurable Production Cost" incurred due to delay in completing an "Insured Production".

But we will pay for "Insurable Production Cost" incurred:

(a)  As the direct result of unavoidable delay that occurs during the period necessary to "Restore" the affected portions of the "Insured Production"; and

(b)  As the result of a covered "Stop Date Loss", as described in Part III.d. of the Policy Conditions.

d.   If you abandon an "Insured Production" that has been made substantially valueless solely because one or more covered causes of loss reasonably, practically and necessarily prevents you from completing "Principal Photography", irrespective of any completion or delivery date requirements for the "Insured Production", we will pay as loss the total "Insurable Production Cost" you have incurred for the "Insured Production".

A.Loss, except for loss to videotape stock, raw film stock or blank media, means only such extra expenditure you incur to re-photograph, re-tape, recreate or reprogram in substantially the same manner that portion of an of an insured production over and above the expenditure, which but for the happening of any one or more of the occurrences specified in Paragraph I., would have been incurred in completing that portion of said production. However, loss arising from delay in completion of any insured production(s) is not recoverable under the terms of this Coverage except such loss arising from delay that is both unavoidable and which occurs during the period of time necessary to re-photograph, re-tape, recreate or reprogram that portion of of the film, tape or software which is the subject of a loss claimed under the terms of this Coverage.  Extra expenditure refers to the costs defined in GENERAL CONDITIONS II. Special Conditions "A", Definition Definition of Insurable Production Cost.

B.Loss to videotape stock, raw film stock or blank media applies only to the actual cost to replace the lost or damaged videotape stock, raw film stock or blank media with stock of like kind and quality.

C.In the event that the happening of one or more of the occurrences specified in Paragraph I., reasonably and practically prevents the completion of an insured production irrespective of any completion, air or delivery date, you have the right to abandon production and claim under this coverage for such actual expenditures expenditures you incur and have committed to, as have been rendered entirely valueless solely and directly directly by reason of the happening of one or more of the occurrences specified in Paragraph I., subject to the SPECIAL CONDITIONS of this policy.

**VI.    EXCLUSIONS**

This coverage does not insure against loss caused by or resulting from:

SECTION II. A.  NEGATIVE FILM                    Page [ PAGE ] of [ NUMPAGES ]

Named Insured
Motion Picture/Television Production Portfolio Policy                    Policy No.

**A.** Exposure to light, deterioration, atmospheric dampness or changes in temperature;

**B.** The use of incorrect raw film stock or videotape or media/software;

**C.** Delay, loss of use, loss of market, interruption of business, or any other consequential loss due to loss of or damage to videotape stock, raw film stock or blank media;

**D.** Unexplained or mysterious disappearance or shortage found upon taking of inventory of video tape stock, raw film or blank media.

**E.** Use of film, videotape, cameras, lenses or photographic tape or sound equipment that has not been fully tested by you or on your behalf, and found to be in sound operating condition prior to the commencement of the filming of an "Insured Production" or series of productions.

## VII.   CONDITIONS

You will ensure that artwork, drawings, software and related material (hereinafter referred to as "source material") used to generate computer images and animation cells are retained until a protection print has been completed or expiration of this coverage, whichever comes first.

You will safeguard and maintain all source material(s) that have been photographed, or used as intended in the production process. Damage to such source material will not be considered a loss hereunder, except to the extent that other covered property is damaged and you have complied with the above.

## VIII.   DEFINITIONS

**A.** COMPUTER PROGRAMS means data, and source code used to direct the computer equipment, including diagrams or other records which can be used to reproduce programs.

**B.** DATA includes and is not limited to facts, concepts, source code, programming records or instructions which are converted to a form usable in your electronic data processing operations, computer programs or electronically controlled equipment.

**C.** MEDIA includes electronic data processing recording or storage media on which Data are recorded or stored such as software, films, tapes, discs or cells.

**D.** SOFTWARE means any combination of DATA, MEDIA or COMPUTER PROGRAMS

**E.** Computer EQUIPMENT means your programmable electronic equipment that is used to store, retrieve or process software. It includes but is not limited to any component parts and associated peripheral equipment or hardware that provides communication including input and output functions, printing and data transmission. Computer equipment does not include software.
.

# LIBRARY STOCK EXTENSION

1. The following is added to ▓▓▓▓▓▓▓ Covered Property:    | Formatted: Highlight |

   Covered Property, as used in this Coverage, includes the following:

   Your original cut negative film of completed or released productions, duplicate negatives, completed video tapes or other media which is considered library stock to you.

2. Paragraph I.b. Property Not Covered is amended to remove subparagraph (3) Library stock.

3. Part III. Limits of Insurance is replaced by the following:

   a. The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the Declarations for the applicable Coverage(s).

SECTION II. A.  NEGATIVE FILM               Page [ PAGE ] of [ NUMPAGES ]

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

b.   Subject to the above limit of insurance applicable to any one occurrence, the most we will pay for loss or damage to library stock in any one occurrence is $1,000,000.

c.   Subject to the above limits of insurance applicable to any one occurrence and library stock, $1,000,000 is the most we pay for loss or damage to any one production.

4.   The following is added to Part IV. Deductible:

With respect to library stock, the deductible amount is the same as the deductible amount shown in the Declarations or otherwise applicable.

5.   The following is added to Part V. Method of Valuation:

The amount of your library stock loss will be determined based on the actual cost to repurchase from an outside source, reprint or copy in whole or in part the affected portions of the library stock, whether or not the reprint or copy is made from an original or a copy of the lost or damaged library stock.

SECTION II. A.  NEGATIVE FILM                    Page [ PAGE ] of [ NUMPAGES ]

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

**SECTION III. COVERAGE A.  EXTRA EXPENSE**

**I.     INSURING AGREEMENT**

We agree to pay to you such loss ~~(as defined in Paragraph VIII)~~, not including loss of earnings or profit, as you sustain by reason of such extra expense you necessarily incur as a result of the interruption, postponement, cancellation, relocation, curtailment or abandonment of an Insured Production due to the following:.

The loss must be a direct result of an UNEXPECTED, sudden or accidental occurrence entirely beyond your control to include:

a. confiscation and/or detainment of equipment, material or personal property by order of any government or civil authority;

b. Shipping or transit of necessary and required property ~~travel delay as a result of~~ caused by adverse weather conditions; ~~to  necessary property~~

c.     Interruption or loss of utilities (electrical, steam, gas or any other power source) required to continue or complete an insured production;

1.     Strikes by any party, union, guild or labor group for which you are not a signatory or directly involved in negotiations;

2.     Verifiable breakdown, short circuit, electrical injury, disturbance or malfunction to Covered Personal Property or vehicles.  Subject to props; created, constructed, designed or maintained by you must be tested and verified to be in working order under the conditions you will be using them.

3.     interruption, postponement or cancellation of an insured  production as a direct result of the action of a civil authority that revokes your permission to use or prohibits access to property or facilities used or to be used in connection with an Insured Production.

7.     Imminent peril, defined as certain, immediate and impending danger of such probability and severity to persons or property that it would be unreasonable or unconscionable to ignore.

a.     Any expenses incurred to avoid a loss resulting from imminent peril are covered to the extent that they serve to avoid a loss otherwise covered.

b.     Except as provided above, this extension does not negate the applicability of the basic terms and conditions of:

I.     the Extra Expense Coverage in the event that an imminent peril results in damage to or destruction of property or facilities payable under this policy; or

II.     the Cast Coverage in the event that an imminent peril results in death, injury or sickness of a covered person, in which case a separate claim will result from the consequential loss as described above.

~~a Crisis Event meaning all of the following elements have occurred:~~

~~1.   The Crisis Event results in a life-threatening physical injury or accidental death to any member of the insured production;~~
~~2.  The Crisis Event occurs at a filming location of the insured  production (meaning a location where cast or crew is assembled to shoot any scheduled work);~~
~~3.  The Crisis Event is witnessed by members of the Insured Production;~~
~~4.  The Crisis Event results in the immediate suspension of production of the Insured Production~~

except as hereinafter excluded; and in compliance with the terms and conditions of the policy..

> **Formatted:** Font: (Default) Times New Roman, 10 pt, Complex Script Font: Times New Roman

> **Formatted:** Bullets and Numbering

**II.  LIMITS OF INSURANCE**

The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the Declarations for Extra Expense coverage, except the following:

Strike is subject to a $1,000,000 any one occurrence

SECTION III. A.  EXTRA EXPENSE                Page [ PAGE ] of [ NUMPAGES ]

Named Insured
Motion Picture/Television Production Portfolio Policy                                   Policy No.

Confiscation is subject to a $1,000,000 any one occurrence

~~Travel Delay~~Shipping & Transit Coverage is subject to a $1,000,000 any one occurrence

Vehicle mechanical break down is subject to a $1,000,000 sublimit any one occurrence

## III. DEDUCTIBLE

We will not pay for loss in any one occurrence until the amount of the adjusted loss before applying the applicable limits of insurance exceeds the deductible amount shown in the Declarations for Extra Expense Coverage. We will then pay the amount of the adjusted loss in excess of the deductible, up to the applicable limit of insurance.

### III.    Term of Coverage

Term of Coverage, as used in this Coverage, means the period beginning one hundred eighty (180) days before the date shown in the Declarations as the start of "Principal Photography" or the start date of principal photography which ever occurs first , and continuing until the earliest of the following dates:

(1) The date of delivery required under the completion guarantee agreement with the distributor(s);

(2) The date your completion guarantor is released from further obligations to you;

(3) Eighteen (18) months after completion of "Principal Photography";

(4) The date on which a protection print or duplicate tape has been completed and physically removed from the premises where the original negative or tape is located;

(5) The date your interest in the property ceases; or

(6) The date on which cancellation or termination of coverage under this policy for the "Insured Production" becomes effective.

The expiration date of this policy will be extended, if necessary, until the earliest of these dates. We may charge additional premium for this extension.

## II. WARRANTIES

You warrant that:

**A.**  All necessary arrangements and contractual agreements for the Insured Production, including, but not limited to, permits, visa(s) and licenses, have been obtained and/or executed by you, prior to any "loss" covered hereunder.

**B.**  You have disclosed to us any arrangements, contractual conditions, physical conditions or other facts that could affect the Insured Production.

**C.**  Prior to the inception of coverage hereunder, you warrant having no knowledge  of any matter, fact or circumstance, actual or threatened, that increases or could increase the possibility of a "loss" under this Policy.

Failure to fulfill any warranty above will release us from all obligations under this Policy, to the extent that a "loss" is suffered or increased by that failure.

## IV  Property Not Covered

Covered Property does not include Negative film, video tape, tapes, animation cells, transparencies, positives, sound tracks, art work, software, programs or any other form of media.

## III. EXCLUSIONS

This coverage does not cover "loss" caused by, resulting from, or arising out of:

A.  The failure of any person(s) in connection with the Insured Production to commence, continue or complete their respective duties or performances for any reason; or

B.  Any financial cause of "loss', including but not limited to:

SECTION III. A.  EXTRA EXPENSE                    Page [ PAGE ] of [ NUMPAGES ]

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

    i.   Any deficient or inadequate response, support or withdrawal of support, including insufficient attendance or interest prior to attendance;

    ii.  Withdrawal of funds, inadequate or insufficient finances, however caused;

    iii.  Any financial failure of any venture, company, entity or person;

    iv.  Any failure to maintain adequate receipts, sales or profits, including any failure to provide bond(s) or financial security;

    v.  Any variation in the rate of exchange, including devaluation, rate of interest or stability of any currency;

    vi.  Any financial default, insolvency, debt or failure to pay necessary expense to any person, firm or corporation.

C.  Any actual adverse weather at the location of any insured production except when:

    ~~i.~~ The action of a civil authority prevents access to or closes down or prevents exit from the facilities or

    locations due to conditions that threaten the safety of cast, crew and or

-    property creating an imminent peril~~and~~ or;

    Causes physical damage to the necessary property or facilities required in the "Insured Production"; or

D.  your failure or inability to complete or  obtain any contractual agreements, permits or licenses of any kind;

E.  your failure or inability to properly comply with, or the violation of, any requirement or any procedure necessary for the issuance and continuance of any permit or authorization; or Your failure to properly process or complete any applications or required documents;

F.  the refusal or revocation of any permit or authorization due to a violation of any existing civil or criminal law  or codes;

G.  Any Governmental body or Civil Authority preventing the commencement or completion of an insured production, due to a breach of the terms of  the permit or any civil or criminal violation by you;

H.  Any concern or fear of an occurrence which may affect the commencement or the continuation of the Insured Production, unless a Civil Authority closes down the Insured Production due to conditions that threaten the safety of the cast and crew working on the Insured Production;

I.  Any concern or belief that the commencement or continuation of Insured Production is inappropriate.

J.  Breach of contract by any party whether their contractual relationship be with you or otherwise where such loss is consequent upon or contributed to by any cause within your control or any other such party which includes the failure of any individual or entity contracted, hired or employed to willingly perform the duties for which that person or entity has been hired with respect to the Insured Production.

K.  Wear and tear; any quality in the property that causes it to damage or destroy itself; hidden or latent defect; gradual deterioration; depreciation; mechanical breakdown or electrical breakdown; insects; vermin, or rodents; corrosion, rust, dampness, cold or heat.  This exclusion does not apply to Verifiable breakdown, short circuit, electrical injury, disturbance or malfunction to Covered Personal Property or vehicles.  Subject to props; created, constructed, designed or maintained by you must be tested and verified to be in working order under the conditions you will be using them.

L.  Processing or work upon the property.
But if processing or work upon the property results in fire or explosion, this exclusion does not apply to direct loss or damage caused by that fire or explosion, if the fire or explosion would be covered under this Coverage.

M.  Unexplained or mysterious disappearance or shortage found upon taking of inventory.

N.  Rain, ice, sleet, snow or hail, whether driven by wind or not, to property stored in the open.
This exclusion does not apply to property that was built or designed to be stored in the open.

O.  Intentional acts committed by you or at your direction.
This exclusion does not apply to damage, destruction or threat thereof to software or computer media by an external person or an internal employee breaching your authority and safeguards to protect such software or computer media.

P.  Delay, loss of use (including loss of use of animals), loss of market, interruption of business, or any other consequential loss.

Q.  Any other loss that may be covered by some other section of this policy.

Named Insured
Motion Picture/Television Production Portfolio Policy                                      Policy No.

R.   Any weather condition that is a photographic weather condition;
S.   The quality or content of the "Insured Production".
T.   Strike by any organization for which you are a signatory or negotiate with or is a major entertainment union or guild;
U.   Strike by an union or guild that was occurring prior to the commencement of "principle photography" of an "Insured Production"


## III.   DEFINITION OF LOSS

A..The amount of your loss will be determined based on:


(1)  All necessary "Insurable Production Cost" you incur to complete the "Insured Production" that exceeds the amount of "Insurable Production Cost" you would have incurred if the covered cause of loss had not occurred; and

(2)  All other necessary expenses that reduce the amount of loss otherwise payable.


However, your loss will not include loss of earnings of profit.

B . If you abandon an "Insured Production" that has been made substantially valueless solely because one or more  covered causes of loss reasonably, practically and necessarily prevents you from completing the "Insured Production", irrespective of any completion or delivery date requirements for the "Insured Production", we will pay as loss the total "Insurable Production Cost" you have incurred for the "Insured Production".

CONFIDENTIAL                    EXHIBIT 2, PAGE 105                    AONNBCU0004081

Named Insured
Motion Picture/Television Production Portfolio Policy                                    Policy No.

**SECTION III. COVERAGE B.  PROPERTY**

**I.      INSURING AGREEMENT**

A.      We agree to pay to you or on your behalf the value of any property, not including loss of use, owned by you or which is the property of others and for which you are legally liable and which is lost, damaged or destroyed, caused by the Perils Insured against, while such property is used or to be used by you in connection with an Insured Production including :

1.      Scenery, costumes, theatrical props and related equipment;

2.      Cameras, camera equipment, sound and lighting equipment, portable electrical equipment, mechanical effects equipment, grip equipment and mobile equipment;

3.      Office equipment, furniture, fixtures and tenants improvements and betterments;

4.      Vehicles rented, hired or picture vehicles you own

5.      Money & Currency

Property Not Covered

Covered Property does not include:

(1)  Personal Property that is covered under any other Coverage of this policy;

(2)  Animals;

(3)  Growing plants except as part of a set;

(4)  Accounts; bills; ~~currency;~~ numismatic properties ~~or money~~; food stamps; notes; securities; stamps; deeds; evidences of debt; letters of credit; credit cards; passports; transportation, admission or other tickets; unless specifically added to this policy;

(5)  Buildings or their improvements and betterments, except as part of a set;

(6)  Aircraft unless used as part of a set as a non-functional craft during filming or taping;

(7)  Watercraft valued over $250,000 while waterborne, unless used or intended to be used as part of a set and moored to a pier, dock, wharf or similar fixed structure;

**NAS MP 204 (01-05)**                                                         Page [ PAGE  \*
                                                                                MERGEFORMAT ]
                                                                                of [ NUMPAGES  \*
                                                                                MERGEFORMAT ]

Named Insured
Motion Picture/Television Production Portfolio Policy                                   Policy No.

(10) "Land Vehicles" or "Mobile Equipment" while involved in racing, chase scenes, or stunts, unless specifically added to this policy or as outlined herein;

(11) "Land Vehicles" you own, unless specifically added by an endorsement to this policy or that are picture vehicles owned by you while used or intended to be used on-camera in an "Insured Production";

(12) Negative film, video tape, tapes, cels, transparencies, positives, sound tracks, art work, software, programs or any other form of media;

(13) Furs, fur garments and garments trimmed with fur except as added to this policy;

(14) Jewelry, costume jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals except as provided in the policy;

(15) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac except as provided in the policy.

**Term of Coverage**

Term of Coverage, as used in this Coverage, means the period beginning one hundred eighty (180) days before the date shown in the Declarations as the start of "Principal Photography" or the start date of principal phtography which ever occurs first , and continuing until the earliest of the following dates:

(1) The date of delivery required under the completion guarantee agreement with the distributor(s);

(2) The date your completion guarantor is released from further obligations to you;

(3) Eighteen (18) months after completion of "Principal Photography";

(4) The date on which a protection print or duplicate tape has been completed and physically removed from the premises where the original negative or tape is located;

(5) The date your interest in the property ceases; or

(6) The date on which cancellation or termination of coverage under this policy for the "Insured Production" becomes effective.

The expiration date of this policy will be extended, if necessary, until the earliest of these dates. We may charge additional premium for this extension.

**III. LIMITS OF INSURANCE**

a.   The most we will pay for loss or damage in any one occurrence is the Limit of Insurance shown in the Declarations for Property.

b.   Subject to a. above, $250,000 is the most we will pay for loss or damage to the following types of property:

(1) Furs, fur garments and garments trimmed with fur;

(2) Jewelry, costume jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals; and

(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

This limit applies to any one occurrence, regardless of the types or number of articles that are lost or damaged in that occurrence.

**IV. DEDUCTIBLE**

We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable limits of insurance exceeds the deductible amount shown in the Declarations. We will then pay the amount of the adjusted loss or damage in excess of the deductible, up to the applicable limit of insurance.

**II.      PERILS INSURED**

**NAS MP 204 (01-05)**

Page [ PAGE \*
MERGEFORMAT ]
of [ NUMPAGES \*
MERGEFORMAT ]

Named Insured
Motion Picture/Television Production Portfolio Policy                                           Policy No.

This Coverage Section insures against all risks of direct physical loss or damage to the property covered from any external cause, except as hereinafter excluded.

**III.**    **ADDITIONAL EXCLUSIONS~~PERILS NOT INSURED~~**

This Coverage does not insure against loss or damage caused by or resulting from:

~~V.~~    Wear and tear, any quality in the property that causes it to damage or destroy itself; hidden or latent defect; gradual deterioration; depreciation; mechanical breakdown or electrical breakdown; insects; vermin, or rodents; corrosion, rust, dampness, cold or heat.  This exclusion does not apply to Verifiable breakdown, short circuit, electrical injury, disturbance or malfunction to Covered Personal Property or vehicles.  Subject to props; created, constructed, designed or maintained by you must be tested and verified to be in working order under the conditions you will be using them.

~~A.wear and tear; hidden or latent defect; gradual deterioration; depreciation; insects; vermin or rodents; corrosion, rust, dampness, cold or heat however this exclusion does not apply to verifiable breakdown or malfunction to covered property;~~

~~This exclusion does not apply to verifiable breakdown, short circuit, electrical injury, disturbance or malfunction to Covered Personal Property.~~

~~B.~~A.    any work process, experimentation, repairing, restoration,  conversion, or partial conversion, retouching, painting, cleaning or any other form of process performed or undertaken by you or on your behalf or at your direction, unless accidental fire or explosion ensues and then only for the loss or damage caused by such ensuing fire or explosion.;

~~C.~~B.    unexplained or mysterious disappearance, or shortage found upon taking of inventory;

~~D.~~C.    rain, sleet, snow or hail, whether driven by wind or not, to property stored in the open. This exclusion does not apply to property that was built or designed to be stored in the open;

~~E.~~D.    damage to or destruction of property caused intentionally by you or at your direction;

~~F.~~E.    loss, destruction or damage caused by or resulting from delay, loss of market, interruption of business or other consequential loss extending beyond direct physical loss or damage;

~~G.~~F.    Delay, loss of use, loss of market, interruption of business, or any other consequential loss.

**IV.**    **VALUATION**

The basis of determining the value of the property insured hereunder, except with respect to vehicles, will be as follows:

A.    Your property will be valued at the full cost of repair or replacement, without deduction for depreciation or betterment, if repaired or replaced with due diligence and dispatch and in no event unless repair or replacement is completed within one year from the date of loss.  .  If not repaired or replaced, the property will be valued at its actual cash value at the time and the place of loss.

B.    Property of others will be valued in accordance with a written contract and in the absence of a written contract at common or fair market value or as you are obligated to pay by common law.

**NAS MP 204 (01-05)**                                                  Page [ PAGE  \*
                                                              MERGEFORMAT ]
                                                              of [ NUMPAGES  \*
                                                              MERGEFORMAT ]

Named Insured
Motion Picture/Television Production Portfolio Policy                               Policy No.

C.       Vehicles will be valued at actual cash value as of the date and location of loss or in accord with a written contract.


V.       **MONEY & CURRENCY EXTENSION**

A.       Coverage is extended for loss or destruction of money and currency subject to a sub-limit of liability of $250,000 any one loss arising out of:

1.       fire;

2.       burglary (defined as a loss, which results from forcible entry to or exit from premises, safes or locked property);

3.       armed robbery (defined as the forcible taking of money at gunpoint or by similar threat);

4.no coverage attaches hereunder in any circumstances other than as noted above.                    ◄    | **Formatted:** Bullets and Numbering |

B.       Coverage is provided at the following locations while:

1.       in locked safes and vaults secured on your premises and/or locations used as temporary production offices and/or in hotel safes;

2.       in the custody of your approved agents in the course of and while performing their duties as agents;

3.       on your business premises during the normal hours of business.

C.       You warrant that you and your agents will secure money and currency overnight in safes whenever available at locations other than your business premises. Failure to adhere to this warranty will relieve us from all obligations under this coverage to the extent that a loss is suffered or increased by that failure.

D.       No loss attaches hereunder for loss of money and currency arising out of mysterious or unexplained disappearance, or for shortage disclosed upon taking of inventory.

NAS MP 204 (01-05)                                                        **Page [ PAGE \*
MERGEFORMAT ]
of [ NUMPAGES \*
MERGEFORMAT ]**

Named Insured
Motion Picture/Television Production Portfolio Policy                                         Policy No.

### SECTION IV, COVERAGE C. THIRD PARTY PROPERTY DAMAGE

**IV.  COVERAGE**

We will pay those sums that the Insured becomes legally obligated to pay as damages because of direct physical loss of or damage, including loss of use, to Covered Property, caused by accident and arising out of any Covered Cause of Loss during the Term of Coverage. We will have the right and duty to defend the Insured against any "Suit" seeking those damages. However, we will have no duty to defend the Insured against any "Suit" seeking damages for direct physical loss or damage to which this insurance does not apply.  We may, at our discretion, investigate and settle any claim or "Suit" that may result. But:

(1)  The amount we will pay for damages is limited, as described in Part III. -Limits of Insurance; and

(2)  Our right and duty to defend ends when we have used up the Limit of Insurance in the payment of judgments and settlements.

a.  Covered Property, as used in this Coverage, means tangible property of others in an Insured's care, custody or control that is used or intended to be used in connection with an "Insured Production".

b.  Property Not Covered

Covered Property does not include:

(1)  Personal property rented to or leased by an Insured, except for loss of use of such property that is covered for direct physical damage under Section III, Coverage B. Property of this policy;

(2)  Buildings and premises rented to or leased by an Insured for any use or purpose other than filming or taping in connection with an "Insured Production";

(3)  Any property that is involved in a hazardous activity or stunt, unless approved by us in writing;

(4)  Animals;

(5)  Negative film, video tape, tapes, cels, transparencies, positives, sound tracks, art work, software, programs or any other form of media; and

(6)  Motor vehicles, trailers, aircraft or watercraft, except for loss of use of such property that is covered for direct physical damage under Section II, Coverage A. Props, Sets & Wardrobe or Section II, Coverage D. Miscellaneous Equipment of this policy.

c.  Covered Causes of Loss

Covered Causes of Loss means risks of direct physical loss or damage to Covered Property except those causes of loss listed in the Exclusions.

d.  Additional Coverage

**Supplementary Payments**

We will pay, with respect to any claim we investigate or settle, or any "Suit" against an Insured we defend:

(1)  All expenses we incur.

(2)  The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

(3)  All reasonable expenses, other than loss of earnings, incurred by the Insured at our request.

(4)  All costs taxed against the Insured in the "Suit".

(5)  Prejudgment interest awarded against the Insured on that part of the judgment we pay. If we make an offer to pay our Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

(6)  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

GENERAL ENDORSEMENT NO. 2
EXCLUSION OF WAR, MILITARY ACTION & TERRORISMPage [ PAGE ] of [ NUMPAGES ]

CONFIDENTIAL                    EXHIBIT 2, PAGE 110                    AONNBCU0004086

Named Insured

Motion Picture/Television Production Portfolio Policy                                    Policy No.

e. Coverage Extension

**Who Is An Insured**

Throughout this Coverage, the word "Insured" includes you and each of the following:

(1) If you are a partnership or joint venture, your members and partners, but only with respect to the conduct of your business.

(2) If you are a limited liability company, your members, but only with respect to the conduct of your business. Your managers are Insureds, but only with respect to their duties as your managers.

(3) If you are an organization other than a partnership, joint venture or limited liability company, your executive officers and directors, but only with respect to their duties as your officers or directors.

(4) If you are a trust, your trustees, but only with respect to their duties as trustees.

(5) Your "Employees", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

(6) Your "Volunteer Workers" or any other person under your direct control, but only while performing duties related to the conduct of your business.

f. Term of Coverage

Term of Coverage, as used in this Coverage, means the period beginning one hundred eighty (180) days before the date shown in the Declarations as the start of "Principal Photography" or the start date of principal photography which ever occurs first , and continuing until the earliest of the following dates:

(1) The date of delivery required under the completion guarantee agreement with the distributor(s);

(2) The date your completion guarantor is released from further obligations to you;

(3) Eighteen (18) months after completion of "Principal Photography";

(4) The date on which a protection print or duplicate tape of an "Insured Production" has been completed and physically removed from the premises where the original negative or tape is located;

(5) The date your interest in the property ceases; or

(6) The date on which cancellation or termination of coverage under this policy for the "Insured Production" becomes effective.

The expiration date of this policy will be extended, if necessary, until the earliest of these dates. We may charge additional premium for this extension.

**V. ADDITIONAL EXCLUSIONS**

For the purposes of this Coverage, the following exclusions apply in addition to the exclusions described in Part V. of the Policy Conditions - Exclusions Applicable To All Coverages of This Policy.

We will not pay for loss or damage caused by or resulting from any of the following:

a. Intentional acts committed by or at the direction of any Insured.

b. The failure of an Insured to provide reasonable care for Covered Property.

**VI. LIMITS OF INSURANCE**

The most we will pay in damages as the result of any one accident is the Limit of Insurance shown in the Declarations for Third Party Property Damage coverage.

**VII. DEDUCTIBLE**

Our obligation to pay damages applies only to the amount of damages in excess of the deductible amount shown in the Declarations for Third Party Property Damage Coverage. The deductible amount applies to all damages as the result of any one accident, regardless of the number of persons or organizations who sustain damages because of that accident.

This deductible does not apply to a loss of use claim for property that is covered for direct physical loss or damage under any other Coverage of this policy subject to the applicable deductible under the other coverage is exhausted.

**VIII. AMENDED CONDITIONS**

a. The following General Policy Condition does not apply to this Coverage:

GENERAL ENDORSEMENT NO. 2

EXCLUSION OF WAR, MILITARY ACTION & TERRORISM Page [ PAGE ] of [ NUMPAGES ]

Named Insured
Motion Picture/Television Production Portfolio Policy                                  Policy No.

Condition III.4. – Stop Date Loss

Loss Condition I. g. – Loss Payment is replaced by the following:

(1) If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

(2) We will not be liable for any part of a loss that has been paid or made good by others.

## IX.  ADDITIONAL CONDITION

For the purposes of this Coverage, the following Condition applies in addition to the Policy Conditions.

**Legal Action Against Us**

The following is added to Policy Condition II.2. – Legal Action Against Us

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured; but we will not be liable for damages that are not payable under the terms of this Coverage or that are in excess of the Limit of Insurance.  An agreed settlement means a settlement and release of liability signed by us, the Insured, and the claimant or the claimant's legal representative.

## X.  ADDITIONAL DEFINITIONS

For the purposes of this Coverage, the following definitions apply in addition to the definitions described in Part IV. of the Policy Conditions - Definitions Applicable To All Coverages of This Policy:

a.  "Employee" includes a "Leased Worker" and a "Temporary Worker".

b.  "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased Worker" does not include a "Temporary Worker".

c.  "Suit" means a civil proceeding in which damages to which this insurance applies are alleged.  "Suit" includes:

(1) An arbitration proceeding in which damages are claimed and to which the Insured must submit or does submit with our consent; or

(2) Any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured submits with our consent.

d.  "Temporary Worker" means a person who is furnished to you to substitute for a permanent "Employee" on leave or to meet seasonal or short-term workload conditions.

e.  "Volunteer Worker" means a person who is not your "Employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

CONFIDENTIAL                    **EXHIBIT 2, PAGE 112**                    AONNBCU0004088

Named Insured
Motion Picture/Television Production Portfolio Policy                    Policy No.

**ENDORSEMENT NO.**
**HURRICANE, TORNADO COUNTRY EXCLUSION AND STRP SHOW RESTRICTION**

All Coverage Sections specifically exclude any claims caused by or contributed to by a named windstorm in the following territories during the terms indicated unless endorsed hereon:

Dates                                                                Territory
**1st of June through the 30th November                    Virginia, Washington DC, Georgia, North & South Carolina, Florida, Alabama, Arkansas, Louisiana, Texas within 250 miles of the coast**

**1st of January through the 30th June                     Hawaii, Indonesia,  Australia, Asia, New Zealand, Philippines,, Korea and other Asia countries and all countries that suffer from a Tornado season.**

All Coverage Sections specifically exclude any claims in the following territories unless endorsed hereon:

That is under trade or economic embargoes imposed by the laws or regulations of the United States of America. That has a Travel Warning as listed on travel.state.gov or is a terrorist concern or for any other reason.

The only Coverage Sections applicable to Strip Shows are; Section ____Property and Section ___ Third Party Property Damage only.

All other terms and conditions remain unchanged.

GENERAL ENDORSEMENT NO. 4
TRIA                              Page [ PAGE ] of [ NUMPAGES ]

# EXHIBIT 3

| From: | George Walden [George_Walden@ars.aon.com] |
|---|---|
| Sent: | 12/17/2009 4:19:00 PM |
| To: | George Walden [georgerwalden@aol.com] |
| Subject: | Fw: Martin's_Final_Form Rev 1_2009 1217.doc |
| Attachments: | image001.jpg; nbc Martin's_Final_Form Rev 1_2009 1216 (3).doc; Martin's_Final_Form Rev 1_2009 1217.doc |

---

**From:** "Ridgers, Martin K." [MRidgers@ebi-ins.com]
**Sent:** 12/17/2009 07:15 PM EST
**To:** George Walden; Susan Weiss; "Phillips, Wanda M." <WPhillips@ebi-ins.com>
**Cc:** "Ridgers, Martin K." <MRidgers@ebi-ins.com>
**Subject:** Martin's_Final_Form Rev 1_2009 1217.doc

George,

Attached is my last version with yuor changes, I have also merged this document with your document that I have attached hereto also.  Please review my document as that is what I need to use for the next step.  If you see anything wrong please let me know and I will correct.  I wish to use this as I have corrected some other errors I found in the wording, once yuo approve I can then have the formatting changed.

Martin's Final Form Rev 1 2009 1217 - Martin Last version and merged

nbc Martin's Final Form Rev 1 2009 1216 (3) - George last version

Yours truly,



A Member of the OneBeacon Insurance Group

*Martin Ridgers*, CPCU

Senior Vice President

Entertainment Brokers International

A member of the OneBeacon Insurance Group

License No. 0773887

mridgers@ebi-ins.com

Direct Tel: 310.954.3970

Tel 310.824.0111 / Fax 310.824.5733

Mobile: 310-418-4772

Visit our website at http://www.ebi-ins.com for applications, news and product information.

This e-mail and any attachments to it, is intended for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (310) 824-0111 or by e-mail.

Visit our website at http://www.ebi-ins.com for applications, news and product information.

Confidentiality notice: The information contained in this email message including attachments is confidential and is intended only for the use of the individual or entity named above and others who have been specifically authorized to receive it.  If you are not the intended recipient, you are hereby notified that any use, unauthorized dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please delete immediately or if any problems occur with transmission, please notify me immediately by telephone at (310) 824-0111.  Thank you.

**Broker:**   Aon/Albert G. Ruben Insurance Services, Inc.
10080 Wilshire Boulevard, 7th Floor
Los Angeles, CA  90024

Insurance Company

**Herein Called the Company**

**MOTION PICTURE/TELEVISION
PRODUCTION PORTFOLIO DECLARATIONS**

**Policy Number:**

1.   **NAMED INSURED and MAILING ADDRESS:**

    Named Insured
    Street Address
    City, State, Zip Code

2.   **POLICY PERIOD:**
    **From 12:01 A.M. Standard Time at the address of the NAMED INSURED as stated above.**

3.   **INSURED PRODUCTION(S):**   **Any production of the insured**

4.   **COVERAGE:**

| Section | Coverage | Limit of Liability |
|---------|----------|--------------------|
| I. | CAST | $50,000,000 |
| II. | NEGATIVE & FAULTY STOCK | $50,000,000 |
| III. | EXTRA EXPENSE | $10,000,000 |
| IV. | PERSONAL PROPERTY | $10,000,000 |
| V. | THIRD PARTY PROPERTY DAMAGE | $10,000,000 |
| VI. | Other Covers: | |

5.   **DEDUCTIBLES & SELF-INSURED RETENTION:**  See Rating Schedule endorsement

6.   **DEPOSIT PREMIUM:**  See Rating Schedule endorsement

COUNTERSIGNATURE DATE:

COUNTERSIGNATURE OF AUTHORIZED AGENT:

DECLARATIONS           Page [ PAGE ] of [ NUMPAGES ]

| Named Insured | |
| Motion Picture/Television Production Portfolio Policy | Policy No. |

7. Insurance is provided against those perils and for the coverage under those Sections for which a specific amount or Limit of Liability is shown  in  schedules incorporated herein, subject to all terms of the policy and all forms and endorsements made a part hereof.

8. When a deposit premium has been charged, the actual premium will be determined in  accordance with the terms of the rating schedule endorsement attached to and made a part of this policy.

9. **FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION**:

10. **DATE ISSUED**:

DECLARATIONS                    Page [ PAGE ] of [ NUMPAGES ]