1  LUCIA E. COYOCA (SBN 128314)
       lec@msk.com
2  VALENTINE A. SHALAMITSKI (SBN 236061)
       vas@msk.com
3  DANIEL M. HAYES (SBN 240250)
       dmh@msk.com
4  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
5  Los Angeles, CA 90064-1683
   Telephone:  (310) 312-2000
6  Facsimile:  (310) 312-3100

7  Attorneys for Plaintiffs
   Universal Cable Productions LLC and
8  Northern Entertainment Productions LLC

9                  UNITED STATES DISTRICT COURT

10        CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

11

12 UNIVERSAL CABLE                    CASE NO. 2:16-cv-4435-PA-MRW
   PRODUCTIONS LLC and
13 NORTHERN ENTERTAINMENT             The Honorable Percy Anderson
   PRODUCTIONS LLC,
14                                    **PLAINTIFFS' STATEMENT OF
              Plaintiffs,             GENUINE ISSUES AND
15                                    ADDITIONAL MATERIAL FACTS
              v.                      IN OPPOSITION TO DEFENDANT'S
16                                    MOTION FOR SUMMARY
   ATLANTIC SPECIALTY                 JUDGMENT**
17 INSURANCE COMPANY,
                                      [Opposition Memorandum; Notice of
18            Defendant.              Lodging Statement of Genuine Issues and
                                      Additional Material Facts; Evidentiary
19                                    Objections; Table of Contents of
                                      Evidence; Declarations of George
20                                    Walden, Matthew Levitt, Dennis Ross,
                                      Harold Koh, Ty Sagalow, and Lucia
21                                    Coyoca filed / lodged concurrently
                                      herewith]
22
                                      Date:      May 22, 2017
23                                    Time:      1:30 pm
                                      Ctrm.:     9A, First St. Courthouse
24

25

26

27

28

8834309.4

MITCHELL
SILBERBERG

1   Plaintiffs Universal Cable Productions LLC ("UCP") and Northern

2   Entertainment Productions LLC ("NEP") (collectively referred to herein as

3   "Universal"), pursuant to Local Rule 56 of the United States District Court for the

4   Central District of California and the Court's Scheduling Order, as amended,

5   oppose Defendant Atlantic Specialty Insurance Company's ("Atlantic" or

6   "Defendant") Motion for Summary Judgment, and state as follows in response to

7   Defendant's Statement of Uncontroverted Facts.

8   Pursuant to the Court's Scheduling Order, Plaintiffs' Evidentiary Objections

9   to Defendant's Evidence in Support of Motion For Summary Judgment, further

10  detailing evidentiary objections in connection with Atlantic's purported evidence

11  supporting its allegedly uncontroverted facts, are filed concurrently herewith.

12  Universal's additional material facts (referred to as "SGI ¶ __" in the

13  accompanying opposition brief) are set forth below at ¶¶ 154 through 223,

14  following the Defendant's Allegedly Uncontroverted Facts.

15

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| 1. The Palestinian political identity emerged between 1923 and 1948. | Undisputed. |
| 2. In 1947, the United Nations intended to create two states in what are now Israel and Palestine: one Jewish and one Arab. But for reasons that are still disputed, it ultimately founded only the Jewish state: Israel. | Undisputed. |
| 3. In 1947 and 1948, there was an "Arab-Israeli war," in which Israel defeated Arab nations and declared its | Undisputed. |

Mitchell Silberberg & Knupp LLP

1

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| independence. | |
| 4.      Almost 700,000 Palestinians were driven or fled from their homes as a result of the 1947 and 1948 "Arab-Israeli war." | Undisputed, but irrelevant.  Fed. R. Evid. 402. |
| 5.      The Palestinians who remained in the West Bank and Gaza following the "Arab-Israeli war" were subject to either Egyptian, Jordanian, or Israeli rule. | **Disputed** as to the "or Israeli rule" part.  Otherwise undisputed, assuming the referenced time period is pre-1967.<br><br>Also irrelevant (Fed. R. Evid. 402), hearsay (Fed. R. Evid. 801, 802); no personal knowledge (Fed. R. Evid. 602).<br><br>• Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 2-3 (2015). Ex. 4 to Atlantic's Evid., p. 45-46.<br><br>***Controverting evidence***:  The referenced source does not support the "or Israeli rule" portion of this "fact"; the references source states:  "Palestinians remaining in Israel became Israeli citizens.  Those who were in the West Bank (including East Jerusalem) and Gaza were subject to Jordanian and Egyptian administration, respectively." |
| 6.      In June of 1967, the Six-Day War | The "…who had styled themselves as |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| occurred, in which Israel defeated the Arab states who had styled themselves as Palestinians' protectors. | Palestinians' protectors" part is irrelevant.  Fed. R. Evid. 402.  Otherwise undisputed. |
| 7.    As a result of the 1967 Six-Day War, Israel gained control over the entire area that constituted Palestine. | Undisputed, assuming the reference is to the area that constituted Palestine under the British Mandate, as the cited source indicates. |
| 8.    Israel effectively annexed East Jerusalem and the Golan Heights, leaving the West Bank and Gaza under military occupation, but not truly incorporated into Israel. | The "…but not truly incorporated into Israel" part is not supported by any of the cited sources, and argumentative.  Fed. R. Evid. 403.  Otherwise undisputed, assuming the referenced time period is about after 1967.<br>• Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 3 (2015). Ex. 4 to Atlantic's Evid., p. 46.<br>• U.S. Department of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for Israel and the Occupied Territories for 2014 52 (2015), *available at* https://www.state.gov/documents/ |

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 141.<br>• Lowenstein Aff. at 4. Ex. 1 to Atlantic's Evid., p. 5 ¶A-B. |
| 9.    There are two competing Palestinian political parties or organizations. Fatah is the largest faction of the confederated multi-party Palestinian Liberation Organization, and is currently led by Yasser Arafat's successor, Mahmoud Abbas. Hamas is a Palestinian Islamic military and socio-political movement that formed in 1987. It has maintained its primary base of political support and military command in the Gaza Strip. | **Disputed** as to the characterization of Hamas as a "political party" or anything other than a terrorist organization. Otherwise undisputed.<br>• Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 5 (2015). Ex. 4 to Atlantic's Evid., p. 48.<br>• Jim Zanotti, Cong. Research Serv., R41514, Hamas: Background and Issue for Congress 1-3 (2010). Ex. 8 to Atlantic's Evid., p. 404-06.<br>***Controverting evidence***:<br>• Defendant's own sources: "The United States, Israel, the European Union, and Canada consider Hamas a terrorist organization." Ex. 8 to Atlantic's Evid., p. 404-06.<br>• Universal's evidence (filed in |

Mitchell Silberberg & Knupp LLP

4

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | support of Universal's Motion for Partial Summary Judgment ("MSJ")):  Declaration of Dr. Matthew Levitt ("Levitt Decl.") Ex. A (Expert Report of Dr. Levitt), p. 11 [ECF No. 61-3]; Declaration of Ambassador Dennis Ross ("Ross Decl.") Ex. B (Expert Report of Amb. Ross), ¶¶ 10, 23 [ECF No. 61-4]; Declaration of Harold Koh ("Koh Decl.") Ex. C (Expert Report of Harold Koh), p. 16 [ECF No. 61-5]; Coyoca Decl. ¶¶ 5, 6, Exs. 21, 22 [ECF No. 61-10; 61-11; 61-12]; RJN pp. 1-2 [ECF No. 62]. |
| 10.    Hamas's charter, created in 1988, "commits the group to the destruction of Israel and the establishment of an Islamic state in all of historic Palestine, comprised of present-day Israel, the West Bank, and Gaza." The charter states:<br><br>        "Israel will exist and will continue to exist until Islam will obliterate it, just as it obliterated others | Undisputed. |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| before it." | |
| 11.    In the mid-1990s, the Palestinian Authority (PA) was granted limited rule (under supervening Israeli occupational authority) in the Gaza Strip and parts of the West Bank. | Undisputed, assuming the referenced "limited rule" is further subject to the Oslo Accords, as the cited source indicates.<br><br>• Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 26 (2015). Ex. 4 to Atlantic's Evid., p. 69. |
| 12.    In 2005, Israel unilaterally withdrew its military forces and all of its civilians from Gaza, leaving control to the PA. | **Disputed** to the extent "leaving control to the PA" fails to take into account the Oslo Accords, as the cited source indicates (e.g., Ex. 6 to Atlantic's Evid., p. 217:  "According to the Interim agreement on the West Bank and the Gaza Strip, Israel maintains the control of Gaza's airspace and maritime areas"); *see also* Levitt Decl. Ex. A (Expert Report of Dr. Levitt), pp. 8, 10 [ECF No. 61-3]; Ross Decl. Ex. B (Expert Report of Amb. Ross), ¶¶ 10-13, 23 [ECF No. 61-4].<br><br>Otherwise undisputed.<br><br>Objection based on hearsay (Fed. R. Evid. 801, 802), no personal knowledge |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703). |
| 13.    In 2006, Hamas was elected to a majority of the seats in the Palestinian Legislative Council (the legislative branch of the PA) and became the governing authority over Gaza. | **Disputed** as to the characterization of Hamas as a "governing authority" (which is also unsupported by the sources Atlantic cites) or anything other than a terrorist organization.<br><br>Otherwise undisputed, but irrelevant as to time, misleading (Fed. R. Evid. 402, 403), hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), not a proper subject of a judicial notice (Fed. R. Evid. 201).<br><br>• Lowenstein Aff. at 4. Ex. 1 to Atlantic's Evid., p. 5 ¶B.<br>• Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 3, 29 (2015). Ex. 4 to Atlantic's Evid., p. 46, 72.<br>• Jim Zanotti, Cong. Research Serv., R41514, Hamas: Background and Issue for Congress 3 (2010). Ex. 8 to Atlantic's Evid., p. 406.<br>• U.S. Department of State, Bureau of Democracy, Human Rights and |

Mitchell Silberberg & Knupp LLP

7

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Labor, Country Report on Human Rights Practices for Israel and the Occupied Territories for 2014 52 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 141.

*Controverting evidence*:
- Defendant's own sources: "In the 2006 Palestinian Legislative Council (PLC) elections, candidates backed by Hamas won…; however, the PLC has not functioned since 2007." Ex. 5 to Atlantic's Evid., p. 141.
- Levitt Decl. Ex. A (Expert Report of Dr. Levitt) pp. 7-29 (Hamas in the Gaza Strip is not recognized as a legitimate entity, but is a terrorist group, similarly to Boko Haram in Nigeria, al Qaeda in the Arabian Peninsula (AQAP) in Yemen, and the Islamic State (ISIL) in Syria, Iraq, Libya, and Egypt (among others)); [ECF No. 61-3]; Ross Decl. Ex. B (Expert Report of |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Amb. Ross) ¶¶ 8-24 (Hamas is an illegitimate actor) [ECF No. 61-4]; Koh Decl. Ex. C (Expert Report of Harold Koh) ¶¶ 4-17 (Hamas is not a legitimate actor) [ECF No. 61-5]; Coyoca Decl. ¶¶ 5, 6, Exs. 21, 22 [ECF No. 61-10; 61-11; 61-12]; RJN pp. 1-2 [ECF No. 62]. |
| 14.    In 2007, Hamas's armed forces in Gaza defeated forces loyal to PA President Mahmoud Abbas and consolidated control over the Gaza Strip. | **Disputed** as to the characterization of the events, "control," and Hamas as anything other than a terrorist organization.<br><br>Otherwise undisputed, but irrelevant and misleading (Fed. R. Evid. 402, 403), hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703), not a proper subject of a judicial notice (Fed. R. Evid. 201).<br><br>• U.S. Department of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for Israel and the Occupied Territories for 2014 52 (2015), *available at* https://www.state.gov/documents/ |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 141. |
| | • Lowenstein Aff. at 4. Ex. 1 to Atlantic's Evid., p. 5 ¶B. |
| | *Controverting evidence*: |
| | • Defendant's own sources: "Hamas political and military leaders in the West Bank and Gaza gained greater power, and then consolidated this power in Gaza—while losing it in the West Bank—through violent struggle with Fatah in June 2007." Ex. 4 to Atlantic's Evid., p. 75. "In 2007 Hamas staged a violent takeover of PA government installations[.]" Ex. 5 at p. 141. |
| | • "In 2007, Hamas took over the Gaza Strip by force of arms and violence when it turned its guns on its fellow Palestinians from the Fatah party[.]" Levitt Decl. Ex. A, p. 10 [ECF No. 61-3]. |
| | • Levitt Decl. Ex. A (Expert Report of Dr. Levitt) pp. 7-29 (Hamas in the Gaza Strip is not recognized as |

10

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | a legitimate entity, but is a terrorist group, similarly to Boko Haram in Nigeria, al Qaeda in the Arabian Peninsula (AQAP) in Yemen, and the Islamic State (ISIL) in Syria, Iraq, Libya, and Egypt (among others)); [ECF No. 61-3]; Ross Decl. Ex. B (Expert Report of Amb. Ross) ¶¶ 8-24 (Hamas is an illegitimate actor. "[T]he West Bank and Gaza are a 'single territorial unit.'") [ECF No. 61-4]; Koh Decl. Ex. C (Expert Report of Harold Koh) ¶¶ 4-17 (Hamas is not a legitimate actor) [ECF No. 61-5]; Coyoca Decl. ¶¶ 5, 6, Exs. 21, 22 [ECF No. 61-10; 61-11; 61-12]; RJN pp. 1-2 [ECF No. 62]. |
| 15.    Since 2007, Hamas has been the de facto ruling authority in the Gaza Strip, where it currently governs like any other government with "political, military and social welfare activities." | **Disputed**. Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703), improper legal conclusion or opinion (Fed. R. Evid. 701, 702). • Lowenstein Aff. at 4. Ex. 1 to |

Mitchell
Silberberg &
Knupp LLP

11

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Atlantic's Evid., p. 5¶C. |
| | • U.S. Department of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for Israel and the Occupied Territories for 2014 52 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 141. |
| | ***Controverting evidence***: |
| | • Defendant's own sources: "Hamas's security forces have maintained power in Gaza ever since, even after its de facto ***government publicly relinquished responsibility in June 2014 to a PA government formed with Hamas's approval***." . Ex. 4 to Atlantic's Evid., p. 72 (emphasis added). |
| | • Levitt Decl. Ex. A (Expert Report of Dr. Levitt) pp. 7-29 ("[T]he Hamas' *da'wa*—its proselytizing and social and charitable activities—model is that funds |

12

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | supporting any part of Hamas free up existing monies to support its terrorist activities[.]" Hamas in the Gaza Strip is not recognized as a legitimate entity, but is a terrorist group, similarly to Boko Haram in Nigeria, al Qaeda in the Arabian Peninsula (AQAP) in Yemen, and the Islamic State (ISIL) in Syria, Iraq, Libya, and Egypt (among others)); [ECF No. 61-3]; Ross Decl. Ex. B (Expert Report of Amb. Ross) ¶¶ 8-24 (Hamas is an illegitimate actor; it is not a legitimate political organization or government) [ECF No. 61-4]; Koh Decl. Ex. C (Expert Report of Harold Koh) ¶¶ 4-17 (Hamas is not a legitimate actor or government) [ECF No. 61-5]; Coyoca Decl. ¶¶ 5, 6, Exs. 21, 22 [ECF No. 61-10; 61-11-61-12]; RJN pp. 1-2 [ECF No. 62]. |
| 16.    In December 2008, the Israeli Defense Forces ("IDF") launched Operation Cast Lead, which began with | **Disputed** in its characterization and support.  Also irrelevant (Fed. R. Evid. 401, |

PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| an intensive aerial bombardment targeting Hamas forces and infrastructure, followed by a ground invasion on January 3, 2009. A ceasefire was entered on January 21, 2009. | 402), hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703).<br><br>• Lowenstein Aff. at P. 5. Ex. 1 to Atlantic's Evid., p. 6 ¶G.<br>• Jim Zanotti, Cong. Research Serv., R41514, Hamas: Background and Issue for Congress 3-4 (2010) Ex. 8 to Atlantic's Evid., p. 406-07.<br><br>***Controverting evidence*:**<br>• Defendant's own sources: "Operation Cast Lead … was launched by Israel in response to repeated rocket attacks by Hamas and other Palestinian militants[.]" Ex. 8 to Atlantic's Evid., p. 407. |
| 17.    In November 14, 2012, Israel declared Operation Pillar of Defense, in which the IDF struck more than 1,000 sites in the Gaza Strip. Over a hundred Gazans died and over a hundred were wounded. | **Disputed** in its characterization and support.<br><br>Also irrelevant (Fed. R. Evid. 401, 402), hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703), not a proper subject to a judicial notice (Fed. R. Evid. 201).<br><br>• Lowenstein Aff. at p. 5. Ex. 1 to |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Atlantic's Evid., p. 6 ¶H. |
| | • Human Rights Council, *Human Rights Situation in Palestine and other Occupied Arab Territories*, 18, U.N. Doc. A/HRC/29/CRP.4 (June 24, 2015). Ex. 6 to Atlantic's Evid., p. 227. |
| | • Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 9 (2015). Ex. 4 to Atlantic's Evid., p. 52. |
| | *Controverting evidence*: |
| | • Defendant's own sources: Operation Pillar of Defense— "Palestinian projectiles of greater range and variety, Israeli airstrikes, prominent role for Israel's Iron Dome anti-rocket system…. Fatalities: More than 100 Palestinians, six Israelis (four civilians)." Ex. 4 to Atlantic's Evid., p. 52. |
| | • "Hamas's security forces have maintained power in Gaza ever since, even after its de facto |

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | government publicly relinquished responsibility in June 2014 to a PA government formed with Hamas's approval." . Ex. 4 to Atlantic's Evid., p. 72. |
| 18.   In June 2014, Hamas reached an agreement with Fatah, the other powerful political group in Gaza, to establish a "consensus" or "unity" PA government. | **Disputed** in its characterization and support, and to the extent it characterizes Hamas as a "political group" or anything other than a terrorist organization. Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703), not a proper subject to a judicial notice (Fed. R. Evid. 201). <br>• Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 1 (2015). Ex. 4 to Atlantic's Evid., p. 44. <br>• Lowenstein Aff. at p. 5. Ex. 1 to Atlantic's Evid., p. 6 ¶E. <br>• UCP03562 E-mail from Stephen Smith, Head of Security, Europe, NBCU, to Randi Richmond, Vice President, Production, Universal |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Cable Productions LLC ("UCP") (May 01, 2014, 03:15 PST) (referencing the "new agreement" between Fatah and Hamas). Ex. 117 to Atlantic's Evid., p. 1381.<br><br>• UCP002524 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (June 15, 2014 05:03 PST) (discussing unity government). Ex. 11 to Atlantic's Evid., p. 483-86.<br><br>• UCP001873 E-mail from Randi Richmond, Vice President, Production UCP to Stephen Smith, Head of Security, Europe, NBCU (June 14, 2015 05:16 PST) (quoting news article discussing the unity government). Ex. 118 to Atlantic's Evid., p. 1386-88.<br><br>***Controverting evidence:***<br><br>• Defendant's own sources: "[A] new PA government was formed in June 2014 as a result of an agreement between Fatah (the faction that has traditionally dominated the PA) and Hamas. |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Although Hamas agreed to the government's formation, no Hamas members serve as government ministers[.]"  Ex. 4 to Atlantic's Evid., p. 44. |
| | • Levitt Decl. Ex. A (Expert Report of Dr. Levitt) pp. 7-29 (Hamas in the Gaza Strip is not recognized as a legitimate entity, but is a terrorist group, similarly to Boko Haram in Nigeria, al Qaeda in the Arabian Peninsula (AQAP) in Yemen, and the Islamic State (ISIL) in Syria, Iraq, Libya, and Egypt (among others)); [ECF No. 61-3]; Ross Decl. Ex. B (Expert Report of Amb. Ross) ¶¶ 8-24 (Hamas is an illegitimate actor) [ECF No. 61-4]; Koh Decl. Ex. C (Expert Report of Harold Koh) ¶¶ 4-17 (Hamas is not a legitimate actor) [ECF No. 61-5]; Coyoca Decl. ¶¶ 5, 6, Exs. 21, 22 [ECF No. 61-10; 61-11; 61-12]; RJN pp. 1-2 [ECF No. 62]. |
| 19.   The United States does not engage with Hamas or any of its members, but | **Disputed** in its characterization and support, and to the extent it characterizes |

Mitchell Silberberg & Knupp LLP

PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| determined that it was able to engage with the Government of National Consensus agreed to between Hamas and Fatah. Israel did not like the agreement to form a unity government because it considers Hamas a terrorist organization that it will not engage with. | Hamas as anything other than a terrorist organization. Also irrelevant (Fed. R. Evid. 402), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703). <br> • Lowenstein Aff. at p. 5. Ex. 1 to Atlantic's Evid., p. 6 ¶E. <br> • UCP03562 E-mail from Stephen Smith, Head of Security, Europe, NBCU, to Randi Richmond, Vice President, Production, UCP (May 01, 2014, 03:15 PST) (referencing the "new agreement" between Fatah and Hamas). Ex. 117 to Atlantic's Evid., p. 1381-82. <br> ***Controverting evidence:*** <br> • Defendant's sources provide no support for the "Israel did not like the agreement to form a unity government" statement. <br> • Defendant's own sources: "Hamas's security forces have maintained power in Gaza ever since, even after its de facto government publicly relinquished |

19

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | responsibility in June 2014 to a PA government formed with Hamas's approval." . Ex. 4 to Atlantic's Evid., p. 72. |
| | • Defendant's own sources: "[A] new PA government was formed in June 2014 as a result of an agreement between Fatah (the faction that has traditionally dominated the PA) and Hamas. Although Hamas agreed to the government's formation, no Hamas members serve as government ministers[.]" Ex. 4 to Atlantic's Evid., p. 44. |
| | • Ross Decl. Ex. B (Expert Report of Amb. Ross) ¶ 10 ("since designating Hamas a Foreign Terrorist Organization in the 1990's, it has been the policy of every American administration not to engage in meetings or dialogue with officials of Hamas, let alone any formal diplomatic relations") [ECF No. 61-4]; Levitt Decl. Ex. A (Expert Report of Dr. Levitt) |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | pp. 10-11 ("Hamas in the Gaza Strip is not recognized as a legitimate government by the United Nations, other multilateral organizations, or the vast majority of countries around the world, including the United States.  Most countries around the world do not engage in formal diplomatic relations with Hamas.") [ECF No. 61-3]. |
| 20.    The PA is organized like a state—complete with democratic mechanisms; security forces; and executive, legislative, and judicial organs of governance. The executive branch has both a president and a prime minister-led cabinet, the Palestinian Legislative Council (PLC) is its legislature, and the judicial branch has separate high courts to decide substantive disputes and to settle controversies, as well as a High Judicial Council. | **Disputed** in its characterization and support, and to the extent it purports to characterize Hamas as anything other than a terrorist organization.  Also irrelevant (Fed. R. Evid. 402) hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), not a proper subject to a judicial notice (Fed. R. Evid. 201).  • Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 26 (2015). Ex. 4 to Atlantic's Evid., p. 69.  ***Controverting evidence*:** |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | • Defendant's own sources:  The PA is "not a state[.]"  Ex. 4 to Atlantic's Evid., p. 69. <br><br> • Defendant's own sources:  "[T]he PLC has not functioned since 2007."  Ex. 5 to Atlantic's Evid., p. 141. |
| 21.   The Hamas government in Gaza employs civil service employees in various ministries, including health and education. | **Disputed**. <br><br> Also no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703). <br><br> • Lowenstein Aff. at p. 4-5. Ex. 1 to Atlantic's Evid., p. 5-6 ¶C. <br><br> ***Controverting evidence*:** <br><br> • Defendant's own sources: "Hamas's security forces have maintained power in Gaza ever since, even after its de facto government publicly relinquished responsibility in June 2014 to a PA government formed with Hamas's approval." . Ex. 4 to Atlantic's Evid., p. 72. <br><br> • Levitt Decl. Ex. A (Expert Report of Dr. Levitt) pp. 17, 20 ("Militancy and terrorism is |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | central to the Hamas leadership in the Gaza Strip.  In May 2014, Gaza's Finance Ministry indicated that Hamas' security services include approximately 25,000 employees, "and most of them belong to the Qassam Brigades," the group's elite terrorist wing. According to one account, two-thirds of Hamas policemen were serving as police officers by day and Qassam Brigade operatives by night as early as 2010."  "Inside the Palestinian territories, the battery of mosques, schools, orphanages, medical clinics, sports leagues, and summer camps are integral components of an overarching apparatus Hamas created and manipulated to incite, recruit, and provide logistical and operational support for weapons smuggling, reconnaissance, and suicide bombings."); [ECF No. 61-3]; Ross Decl. Ex. B (Expert Report of Amb. Ross) ¶¶ 8-24 |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | (Hamas is an illegitimate actor; it is not a legitimate political organization or government) [ECF No. 61-4]; Koh Decl. Ex. C (Expert Report of Harold Koh) ¶¶ 4-17 (Hamas is not a legitimate actor or government) [ECF No. 61-5]; Coyoca Decl. ¶¶ 5, 6, Exs. 21, 22 [ECF No. 61-10; 61-11; 61-12]; RJN pp. 1-2 [ECF No. 62]. |
| 22.    Hamas runs an ad hoc judicial system. | **Disputed** as improperly supported and to the extent it purports to characterize Hamas as anything other than a terrorist organization.<br><br>Also no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703).<br>• Lowenstein Aff. at p. 5. Ex. 1 to Atlantic's Evid., p. 6 ¶C.<br>***Controverting evidence*:**<br>• *See* evidence cited in response to ¶¶ 19 and 21 above. |
| 23.    Hamas collects revenue from the people of Gaza in various ways, including licensing fees and taxes, and it receives assistance from foreign | **Disputed** as improperly supported and to the extent it purports to characterize Hamas as anything other than a terrorist organization. |

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| governments. | Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703). |

- Lowenstein Aff. at p. 4. Ex. 1 to Atlantic's Evid., p. 5 ¶C.
- Jim Zanotti, Cong. Research Serv., R41514, Hamas: Background and Issue for Congress 19 (2010). Ex. 8 to Atlantic's Evid., p. 422.

*Controverting evidence*:

- *See* evidence cited in response to ¶¶ 19 and 21 above, and, *e.g.*, Levitt Decl. Ex. A (Expert Report of Dr. Levitt) p. 29 ("Hamas uses its position in Gaza to further its expressly militant and terrorist objectives.  Hamas remains an internationally recognized terrorist group and is so designated (in whole or in part) by the United States, European Union, Canada Australia, Israel and more. [Hamas is] … no more a legitimate entity than other terrorist groups that control

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | territory they took over by force, including Boko Haram in Nigeria, al Qaeda in the Arabian Peninsula (AQAP) in Yemen, and the Islamic State (ISIL) in Syria, Iraq, Libya, and Egypt (among others).") [ECF No. 61-3]. |
| 24.  Hamas has a military force, known as the lzz ad-Din al-Qassam Brigades ("Qassam Brigades"). The Qassam Brigades were under Hamas command in the summer of 2014. | **Disputed**. Also no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703). <br>• Lowenstein Aff. at. p. 5. Ex. 1 to Atlantic's Evid., p. 6 ¶D. <br>***Controverting evidence:*** <br>• Levitt Decl. Ex. A (Expert Report of Dr. Levitt) p. 9 ("Hamas' military wing, the Izz al-Din al-Qassam Brigades, continued to engage in terrorist activities.") [ECF No. 61-3]. <br>• *Weiss v. Arab Bank, PLC*, 2007 U.S. Dist. LEXIS 94029, at *14-20 (E.D.N.Y. Dec. 21, 2007) (Hamas is a terrorist group and cannot constitute a "military force of any origin"). |

| | DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|---|
| 25. | The United Nations recognizes Palestine as a non-member state. | **Disputed** in its characterization relating to the U.S. position.  Also irrelevant and misleading.  Fed. R. Evid. 401, 402, 403.<br><br>• Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 10-11 (2015) (citing U.N. G.A. Res. 67/19 in which the U.N. recognized Palestine as a non-member state). Ex. 4 to Atlantic's Evid., p. 53-54.<br>• G.A. Res. 67/19, at 2, U.N. Doc. A/RES/67/19 (Nov. 29, 2012). Ex. 7 to Atlantic's Evid., p. 395-98.<br><br>***Controverting evidence*:**<br>• Rebuttal Declaration of Ambassador Dennis Ross ("Rebuttal Ross Decl.") Ex. B (Expert Rebuttal Report of Amb. Ross) ¶¶ 10-11 (U.S. "strongly resisted the PLO's effort to gain UN Security Council support for Palestine to become a member of the United Nations and its efforts to be recognized at least as a non- |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | member state of the United Nations."). |
| 26.    The plaintiffs are indirect subsidiaries of NBCUniversal Media, LLC ("NBCU"). | Undisputed. |
| 27.    The plaintiffs were filming the television show called *Dig* in Israel in June 2014. | Undisputed. |
| 28.    Stephen Smith, as head of security Europe for NBCU, was in charge of providing security for NBC News and MSNBC. He was also in charge of providing security advice to the plaintiffs regarding the filming of *Dig* in Israel. | Misrepresents the testimony (Mr. Smith testified that in 2014, his position was Head of security, Europe, his role was security risk management, and he provided security support for, among other things, the *Dig* production), but otherwise undisputed as reflected in the testimony.<br>• Smith Depo., at p. 31-32, 38-41, 73-74. Ex. 119 To Atlantic's Evid., p. 1395, 1397, 1403-04. |
| 29.    In early 2014, there was very little recent history of Hamas rocket fire into Israel, and NBCU's security team thought it "highly unlikely" that there would be any threats of rocket fire into Israel. | **Disputed** because the "[i]n early 2014, there was very little recent history of Hamas rocket fire into Israel" part is vague and unsupported, and the remainder is mischaracterized.<br>• UCP003562 E-mail from Stephen Smith, Head of Security, Europe, |

| | DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|---|
| | | NBCU to Randi Richmond, Vice President, Production, UCP (May 01, 2014 03:15 PST). Ex. 117 to Atlantic's Evid., p. 1381-82. |
| | | • UCP001877 (and attachment) E-mail from Stephen Smith, Head of Security, Europe, NBCU to Stephen Smith, Head of Security, Europe, NBCU (May 22, 2014 09:09 PST). Ex. 144 to Atlantic's Evid., p. 1588-98. |
| | | ***Controverting evidence***:  What the cited evidence provides is that, among other things, as of May 2014, "Terrorism is a concern.  Threats come from several sources, including; Palestinian extremists. Most frequently we see extremists from the Gaza Strip firing rockets into Israel. These typically only hit in southern Israel, but we saw in late 2012, that they do have the capability to reach as far north as Tel Aviv and Jerusalem, but with very limited accuracy (which resulted in a minimal threat against life)," etc. and that "It is highly unlikely that we will be affected |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | by any of this activity."  Ex. 144 to Atlantic's Evid., pp. 1589-90. |
| 30.     Stephen Smith concluded as part of his security review prior to the production of *Dig*, that it was safe to proceed with the production in the proposed locations in Israel. | Undisputed. |
| 31.     NBCU hired Max Security to provide security for the production of *Dig* while in Israel. Randi Richmond, a UCP producer, described Max Security as the "go to for bigger needs" to provide security for Dig in Israel. | Undisputed. |
| 32.     NBCU hired Max Security to prepare detailed reports on the daily security situation in Israel. | Mischaracterizes the testimony (Max Security was not providing reports on daily basis:  Smith Depo. at p. 108), but otherwise undisputed as reflected in the testimony.<br>• Smith Depo., at p. 108-12.  Ex. 119 To Atlantic's Evid., p. 1411-12. |
| 33.     Stephen Smith regularly received the Max Security Reports detailing security conditions and hostilities pertaining to Israel and surrounding areas, throughout the time he was | Mischaracterizes the testimony (Max Security was providing reports on regular basis, i.e., "it wasn't hourly or daily. Whenever there was information to report, they would report it."  Smith |

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| providing security advice to the plaintiffs regarding *Dig*. | Depo. at p. 108), but otherwise undisputed as reflected in the testimony.<br><br>• Smith Depo., at p. 122. Ex. 119 to Atlantic's Evid., p. 1415. |
| 34.    Stephen Smith received, reviewed, and relied upon Max Security Reports in carrying out his work in assessing the security situation for the production of *Dig*. | Undisputed that Mr. Smith received and reviewed the Max Security Reports he was sent. **Disputed** as to the balance, including based on mischaracterization of testimony and relevancy (Fed. R. Evid. 402) to the extent said reports were issued after Universal decided to move the *Dig* production.<br><br>• Smith Depo., at p. 122.  Ex. 119 to Atlantic's Evid., p. 1415.<br><br>***Controverting evidence***:  What Mr. Smith testified is that he relied on certain Max Security Intelligence reports as one of the sources that he used to carry out his work for NBCUniversal on Dig (p. 122) and that the "contents of … report[]s is neither written nor controlled by me.  I'm interested in what it's actually telling me about specific events, not their interpretation" (pp. 178-89). |
| 35.    Tension between Hamas and Israel first began to escalate on June 12, 2014, | Undisputed. |

Mitchell
Silberberg &
Knupp LLP

31

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| when three Israeli teenagers were kidnapped. | |
| 36.    Three Israeli teenagers were killed on approximately June 12, 2014, reportedly by Hamas militants. | Undisputed. |
| 37.    Israel, in response to the kidnapping of the Israeli teenagers, launched an extensive search and arrest operation. | Undisputed. |
| 38.    After the kidnapping of the three Israeli teenagers, which caused Israel to deploy soldiers into Palestinian territory, NBCU's security team opined that there was a risk for a "broader escalation of hostilities." | Mischaracterizes the evidence (the referenced document, Ex. 12, is by Max Security, not NBCU's security team), but otherwise undisputed as reflected in evidence.<br>• UCP002524-2526 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (June 15, 2014 05:03 PST). Ex. 11 to Atlantic's Evid., p. 483-85. |
| 39.    NBCU's security team advised that Israeli measures "may alter the status quo, increasing the potential for related retaliatory attacks on military operations." | Mischaracterizes and misquotes the evidence (the referenced document, Ex. 12, stating that "the Israeli measures against Hamas or other militant-group personnel, may alter the prevailing [omitted by Atlantic] status quo, |

PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | increasing the potential for related retaliatory attacks or military operations" is by Max Security, not NBCU's security team), but otherwise undisputed as reflected in evidence.<br><br>• UCP002337-2338 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (June 16, 2014 11:20 PST). Ex. 12 to Atlantic's Evid., p. 490-91. |
| 40. Smith, as head of security sent an e-mail on June 15, 2014, summing up the building tension and Israel's steps responding to the death of the teenagers. | Mischaracterizes the evidence (the referenced document, Ex. 125, provides, among other things, information about "the current security situation is Israel" and that the "current advise from MAX security, which has come in overnight and as a result of a further deterioration of security, is to avoid all activity in the Old City"), but otherwise undisputed as reflected in evidence.<br><br>• UCP000349 E-mail from Stephen Smith, Head of Security, Europe, NBCU to Randi Richmond, Vice President, Production, UCP (June 15, 2014 09:36 PST). Ex. 125 to |

PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Atlantic's Evid., p. 1501. |
| 41.     NBCU's June 15, 2014 security e-mail stated: "In the past 48 hours, the extent of Israeli military operations in Hebron and its environs have significantly increased, highlighted by the deployment of over 2,500 IDF soldiers to the area. While at this time operations remain limited to searches and intelligence gathering, Israeli military build ups, deployment of Iron Dome missile batteries, and limited activation of military reserves, suggest that the IDF is prepared for broader altercations, including armed confrontations with militants, civil unrest in Palestinian urban centers, or a more significant military offensive." | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. |
| 42.     On July 2, 2014, Israelis abducted and killed Palestinian teenager Muhammad Abu Khdeir, burning him alive, in what appeared to be an act of revenge for the murdered Israeli teenagers. | The "in what appeared to be an act of revenge for the murdered Israeli teenagers" part is unsupported by evidence, speculative and argumentative. Fed. R. Evid. 602.  The balance is undisputed.<br>• UCP002422 E-mail from Max Security Intelligence to Stephen |

Mitchell Silberberg & Knupp LLP

34

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Smith, Head of Security, Europe, NBCU, (July 07, 2014 01:57 PST). Ex. 17 to Atlantic's Evid., p. 600. |
| | • U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 55 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 144. |
| 43.    An employee of NBCU's security team, Chris Biggs, sent an analysis of the situation on July 2, 2014, and stated three times that there was a serious risk of "war" occurring soon. He used the word "war" three times in this e-mail. | Mischaracterizes the evidence (the referenced document, Ex. 79, does not refer to "serious risk" and the references to "war" is by a third party, IHS, not Mr. Biggs (*see* Ex. 119 to Atlantic's Evid., p. 1449)), but otherwise undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom.  Also, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402); improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602).  • UCP002618 Email from Chris |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Biggs, Security & Intelligence Analyst, NBCU International, to Stephen Smith, Head of Security, Europe, NBCU (July 02, 2014 10:00 PST). Ex. 79 to Atlantic's Evid., p. 1046. |
| 44.    In the July 2, 2014 e-mail, Chris Biggs wrote: "Killing of Israeli abductees increases pressure on Israeli government to retaliate militarily, raising war and unrest risks." "A broader Gaza war would become more likely if Hamas or other Gaza-based militants responded with several dozen rockets per day into southern Israel over a sustained period. A broader war would result in a much higher likelihood of Hamas using Fajr-5 rockets, capable of reaching Tel Aviv." | Mischaracterizes the evidence (the referenced quotations are by a third party, IHS, not Mr. Biggs (*see* Ex. 119 to Atlantic's Evid., p. 1449)), but otherwise undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. Also, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402); improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602). • UCP002618 Email from Chris Biggs, Security & Intelligence Analyst, NBCU International, to Stephen Smith, Head of Security, Europe, NBCU (July 02, 2014 10:00 PST). Ex. 79 to Atlantic's Evid., p. 1046. |
| 45.    Later on July 2, 2014, NBCU's | **Disputed**. |

Mitchell
Silberberg &
Knupp LLP

36

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| head of security for Europe, Smith, adopted Biggs' words in the above-quoted e-mail as his own, sending them in an e-mail to UCP producers. | Also, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402); improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602).<br><br>• UCP001037 E-mail from Stephen Smith, Head of Security, Europe, NBCU, to Mark Binke, Executive Vice President, Production, UCP (July 02, 2014 02:21 PST). Ex. 142 to Atlantic's Evid., p. 1578.<br><br>***Controverting evidence***: Atlantic's "fact" is contrary to the evidence: (1) only one of the "above-quoted" two quotes from Ex. 79 is in Ex. 142; (2) the referenced quotes are by a third party, IHS, not Mr. Biggs or Mr. Smith (*see* Ex. 119 to Atlantic's Evid., p. 1449); and (3) Mr. Smith testified (Ex. 119 at 321:16-17) that he did not adopt Mr. Biggs' or IHS' words, but that "I've put in information that I believe has been taken from the HIS report, one -- in Exhibit 135." |
| 46.    Smith shared the above information regarding the risks of a | **Disputed**.<br><br>Also, in the context of this case and |

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| broader Gaza war with the production team because he believed it was information that needed to be shared. | policy at issue, irrelevant (Fed. R. Evid. 402); improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602).<br><br>• Smith Depo., at p. 320-22. Ex. 119 to Atlantic's Evid., p. 1450-51.<br>• UCP001037 E-mail from Stephen Smith, Head of Security, Europe, NBCU, to Mark Binke, Executive Vice President, Production, UCP (July 02, 2014 02:21 PST). Ex. 142 to Atlantic's Evid., p. 1578.<br><br>***Controverting evidence***: *See* controverting evidence and explanation above in response to ¶¶ 44, 45. |
| 47.     During the summer of 2014, Israel was taking offensive strikes against Palestine or Gaza, and Palestine and Gaza took offensive action against Israel, and there was a continuing escalation of that activity. | **Disputed** because of mischaracterization of testimony.<br>     Also no personal knowledge (Fed. R. Evid. 602), improper lay opinion (Fed. R. Evid. 701).<br><br>• Smith Depo., at p. 215-19. Ex. 119 To Atlantic's Evid., p. 1426-27.<br><br>***Controverting evidence***:  What Mr. Smith testified to is that Israel and |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Palestine and/or Gaza "took offensive action" but that is "not [his] area of expertise." Ex. 119 To Atlantic's Evid., p. 1426 |
| 48. There was an escalation and uptick of activity that was aimed from Gaza to Israel and out of Israel back toward Gaza during July 2014. | Undisputed. |
| 49. Beginning in mid-June 2014, and continuing throughout July and August, Palestinians launched rockets into Israel. | **Disputed**, including as to characterization. Undisputed that Hamas indiscriminately launched rockets into Israel during June-July 2014. The sources cited by Atlantic do not support rocket launching in August 2014.<br>• Lowenstein Aff. at p. 6. Ex. 1 to Atlantic's Evid., p. 7 ¶I-L.<br>• Smith Depo., at p. 170-71, 212-13, 342-43. Ex. 119 to Atlantic's Evid., p. 1419, 1425, 1456.<br>• UCP003591-92 E-mail from Penelope Kennedy, Production Supervisor, NBCU to Randi Richmond, Vice President, Production, UCP (July 03, 2014 23:22 PST) ("Increase in rocket attacks on southern Israel |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | emanating from Gaza; general increase in security and military activity…; danger facing Israel is from missile or rocket attacks, which at present are largely confined to areas in south Israel, closest to Gaza). Ex. 126 to Atlantic's Evid., p. 1503-04.<br><br>• UCP002149-54 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 05, 2014 03:16 PST) (Max Security report regarding rocket fire and Israel's retaliatory airstrikes). Ex. 18 to Atlantic's Evid., p. 606-11.<br><br>• UCP000485 E-mail from Erin Noordeloos, Director of International Security and Crisis Mgmt., NBCU, to Mark Binke, Executive Vice President, Production, UCP (July 08, 2014 09:23 PST) (noting rockets over Tel Aviv on July 8 and sirens warning of them). Ex. 127 to Atlantic's Evid., p. 1506. |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | • UCP002181-2188 Israel Dig Update, Security in Confidence: NBCU Int'l. Security Briefing (NBCU, New York, N.Y.) July 01, 2014 (discussing rocket attacks and retaliatory airstrikes). Ex. 19 to Atlantic's Evid., p. 613-20. |
| | • UCP002683-2684 E-mail from Country Risk Forecast and Travel Security Online to Stephen Smith, Head of Security, Europe, NBCU (July 09, 2014, 05:16 PST) (Raising security risk rating for Israel from low to medium; deployment of long-range rockets against cities is main factor behind increased rating). Ex. 20 to Atlantic's Evid., p. 622-23. |
| | • UCP002468-2470 E-mail from Chris Biggs, Security & Intelligence Analyst, International Security, NBCU, to Erin Noordeloos, Director of International Security and Crisis Mgmt., NBCU, and to Stephen Smith, Head of Security, Europe, |

Mitchell Silberberg & Knupp LLP

41

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | NBCU (July 10, 2014 02:40 PST) (noting increase rocket attacks from Palestine seemed to be an attempt to draw Israel into a ground invasion into Gaza). Ex. 128 to Atlantic's Evid., p. 1508-10. |
| | • UCP003798-3804 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 10, 2014 07:32 PST) (noting dozens of rockets fired into Israel from Palestine and retaliatory airstrikes by the Israeli Air Force). Ex. 21 to Atlantic's Evid., p. 625-31. |
| | • UCP002288-2292 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 11, 2014 02:06 PST) ("548 rockets have been fired into Israel since start of Operations Protective Edge; 118 have been intercepted by iron Dome"). Ex. 22 to Atlantic's Evid., p. 633-37. |

Mitchell
Silberberg &
Knupp LLP

42

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | • UCP002514-2517 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 12, 2014 03:33 PST) (referencing a "barrage of rockets" and retaliatory airstrikes). Ex. 23 to Atlantic's Evid., p. 639-41. |
| | • UCP002712-2716 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, NBCU (July 14, 2014 12:30 PST) (referencing missile attacks). Ex. 24 to Atlantic's Evid., p. 644-48. |
| | • UCP002809-2812 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 15, 2014 12:39 PST)  (referencing rocket and missile fire and retaliatory strikes and possibility of a ground offensive). Ex. 25 to Atlantic's Evid., p. 650-53. |
| | • UCP002332-2336 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| | DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|---|
| 3 | | Europe, NBCU (July 16, 2014 12:53 PST) (referencing rocket fire from Gaza and retaliatory strikes and increasing possibility of ground invasion by Israel). Ex. 26 to Atlantic's Evid., p. 655-59. |
| | | • UCP002282-2285 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 16, 2014 12:40 PST) (discussing rocket strikes from Gaza and retaliatory strikes by Israel and increasing likelihood of a "ground campaign" by Israel). Ex. 10 to Atlantic's Evid., p. 478-81. |
| | | • UCP000940 E-mail from Stephen Smith, Head of Security, Europe, NBCU to Mark Binke, Executive Vice President, Production, UCP (July 10, 2014 8:09). Ex. 129 to Atlantic's Evid., p. 1512. |
| | | ***Controverting evidence***: Levitt Decl. Ex. A (Expert Report of Dr. Levitt) p. 22-26 (Hamas' terrorist activities during the summer 2014 conflict and its |

Mitchell
Silberberg &
Knupp LLP

44

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| | DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|---|
| | | indiscriminate launching of rockets lacking ) [ECF No. 61-3]. |
| | 50.   In particular, the Palestinians were firing "anti-craft missiles," "long-range missiles," "rockets," and "mortars." | **Disputed**, including as to characterization.  Undisputed that Hamas indiscriminately launched rockets into Israel during June-July 2014.

Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production, lacks foundation (Fed. R. Evid. 602), improper opinion (Fed. R. Evid. 701, 702, 703).

- Lowenstein Aff. at p. 7. Ex. 1 to Atlantic's Evid., p. 8 ¶R.
- UCP000664-665 *Israel Dig Update*, Security in Confidence: NBCU International Security Briefing (NBCU, New York, N.Y.), July 09, 2014 (referencing anti-aircraft missiles, long-range missiles, and rockets). Ex. 114 to Atlantic's Evid., p. 1370-71
- UCP000661 *Israel Dig Update*, Security in Confidence: NBCU International Security Briefing (NBCU, New York, N.Y.), July |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | 09, 2014  (referencing Palestinian mortar fire). Ex. 114 to Atlantic's Evid., p. 1367. <br><br> • UCP002507 E-mail from Chris Biggs, Security & Intelligence Analyst, NBCU International, to Stephen Smith, Head of Security, Europe, NBCU (July 11, 2014 03:58 PST)  ("Two IDF soldiers were injured by a mortar round fired by Gaza militants …"). Ex. 27 to Atlantic's Evid., p. 661. <br><br> • UCP002710 E-mail from Stephen Smith, Head of Security, Europe, NBCU to Randi Richmond, Vice President, Production, UCP (July 08, 2014 12:41 PST)  ("Israeli government reportedly instructed the IDF to steadily intensify attacks in the Gaza Strip to counter rocket and mortar fire"). Ex. 130 to Atlantic's Evid., p. 1514. <br><br> ***Controverting evidence***:  Levitt Decl. Ex. A (Expert Report of Dr. Levitt) p. 22-26 (Hamas' indiscriminate launching |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | of rockets: "Hamas admittedly launched rocket and mortar barrages towards populated areas, though the group often defended its actions by claiming to have been targeting Israeli military forces. Nevertheless, most of the projectiles fired by Hamas were rockets or mortars that lacked guidance systems and thus could not have been directed at specific military objectives.  All the rockets used by Hamas were unguided projectiles, and not even well-trained militants have the accuracy to hit a specific target with mortar rounds.") [ECF No. 61-3]. |
| 51.    In response to the Palestinians' launching of rockets, Israel deployed its Air Force to retaliate with airstrikes on a regular basis that persisted until the war ended on August 26, 2014. | **Disputed**.<br><br>    Also, in the context of this case and policy at issue, improper legal conclusion or opinion (Fed. R. Evid. 701, 702), lacks foundation (Fed. R. Evid. 602), irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production, no personal knowledge, improper opinion (Fed. R. Evid. 701, 702, 703), hearsay (Fed. R. Evid. 801, 802), lacks foundation (Fed. R. Evid. |

47

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | 602). |
| | • Lowenstein Aff. at p. 8. Ex. 1 to Atlantic's Evid., p. 9 ¶T. |
| | • UCP002149-54 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 05, 2014 03:16 PST) (Max Security report regarding rocket fire and Israel's retaliatory airstrikes). Ex. 18 to Atlantic's Evid., p. 606-09. |
| | • U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 1 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 90. |
| | • This document is self-authenticating under Rule 902(5). |
| | • Human Rights Council, *Human Rights Situation in Palestine and other Occupied Arab Territories*, 18, U.N. Doc. A/HRC/29/CRP.4 (June 24, 2015). Ex. 6 to |

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Atlantic's Evid., p. 227. |
| | • This document is self-authenticating under Rule 902(5). |
| | • UCP002524 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (June 15, 2014 05:03 PST). Ex. 11 to Atlantic's Evid., p. 483. |
| | • UCP002337 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (June 16, 2014 11:20 PST). Ex. 12 to Atlantic's Evid., p. 490. |
| | • UCP002704 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, NBCU (June 29, 2014 11:01 PST). Ex. 28 to Atlantic's Evid., p. 665. |
| | • UCP002790 E-mail (and attachment thereto) from Chris Biggs, Security & Intelligence Analyst, International Security, NBCU to Stephen Smith, Head of Security, Europe, NBCU (July 01, 2014 02:12 PST). Ex. 131 to Atlantic's Evid., p. 1517. |

Mitchell Silberberg & Knupp LLP

49

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | ***Controverting evidence***:  Levitt Decl. Ex. A (Expert Report of Dr. Levitt) p. 23 ("In June 2014, Hamas responded to the allegations by Israeli Prime Minister Netanyahu that the group kidnapped Israeli teenagers by launching an onslaught of indiscriminate rocket and mortar attacks into Israel.") [ECF No. 61-3]; Coyoca Decl. ¶¶ 12, 32, 33, Ex. 28, pp. 175, 177, and Ex. 48, p. 482, and Ex. 49, p. 485 (Israel began to take affirmative action to protect its civilian citizens and to stop Hamas' attacks) [ECF No. 61-10; 61-11; 61-12]; RJN p. 2 [ECF No. 62]. |
| 52.     The Max Security Reports noted a pattern of "tit-for-tat exchanges between the Israeli military and Gaza based militants." | Undisputed that the documents speak for themselves; not as to any conclusion, etc. therefrom.        Also improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802), irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. |
| 53.     By July 1, 2014, NBCU's security | Undisputed that the document speaks |

Mitchell
Silberberg &
Knupp LLP

50

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| team no longer viewed Israel as safe, as it had just a few months earlier—it began advising no travel to Israel. | for itself; not as to any conclusion, etc. therefrom. |
| 54.    In an e-mail dated July 2, 2014, Smith, NBCU's head of security who was sending regular updates to the production team about the dangers stated: "The primary danger facing Israel is from missile or rocket attack." | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. |
| 55.    In a July 8th e-mail from Stephen Smith to Randi Richmond, Smith stated: "Summarizing the info below, there is a significant risk of an escalation as conditions for a ceasefire are unlikely to be acceptable." "Cross-border fire between the Israeli Defense Forces (IDF) and Gaza-based militants escalated during the evening hours of July 7, as the Israeli Government reportedly instructed the IDF to steadily intensify attacks in the Gaza Strip to counter rocket and mortar fire." "As a consequence of the increasing rate and range of Palestinian rocket and mortar fire, along with Israel's reported | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. |

Mitchell
Silberberg &
Knupp LLP

51

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| decision to intensify retaliatory airstrikes, that there is an increased threat of rocket attacks against Israel towns and cities located at a greater distance from Gaza." | |
| 56.    On July 8, 2014, Israel launched Operation Protective Edge. | Undisputed. |
| 57.    On July 9, 2014, Smith sent an e-mail that contained a detailed timeline of the events of that day:<br><br>• Gaza death toll between 25-35, with at least 300 injured<br>• Iron Dome defense system deployed near Jerusalem, following large amounts of long range missiles fired from Gaza<br>• Public bomb shelters opened in Tel Aviv and Jerusalem<br>• Hamas claims responsibility for firing of four rockets on Jerusalem, four on Tel Aviv, twelve on Ashdod and one on Haifa<br>• Five rockets fired toward Tel Aviv, four intercepted successfully, one landed in the sea, | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| no injuries. Rockets aimed at Ben Gurion Airport.<br>• Rocket fired towards Jerusalem hit a residents building in Jerusalem, no injuries reported.<br>• Due to rocket attacks, U.S. Embassy in Tel Aviv to operate in minimal staffing<br>• The European hospital in Gaza has been hit by Israel fighter jets, casualties reported<br>• Rocket landed in Hadera area, city between Tel Aviv and Haifa, 60 miles from Gaza<br>• Gunmen from Hamas landed on the shore near Zikim adjacent to the Gaza border, where a kibbutz and a military base are located. Four gunmen were killed. | |
| 58.   Hamas and Israel carried out seaborne attacks against each other in July and August of 2014. | Undisputed that the documents speak for themselves; not as to any conclusion, etc. therefrom.<br>    Also lacks foundation (Fed. R. Evid. 602), irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* |

Mitchell Silberberg & Knupp LLP

53

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | production. |
| 59.    Chris Biggs of NBCU wrote the following e-mail to Smith on July 10, 2014: "Hamas' military wing … sent a seaborne unit to attack an Israeli position in Ashkalon, southern Israel; and fired rockets against Tel Aviv's Ben Gurion Airport and Jerusalem," while Israel "authorized the Israeli Defense Forces (IDF) to call up to 40,000 reservists, and conducted hundreds of air raids on Gaza." | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom.    Also irrelevant (Fed. R. Evid. 402); improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| 60.    On July 10, 2014, Stephen Smith wrote in an e-mail to Mark Binke, the Executive Vice President of Production for UCP that he could no longer guarantee the safety and security of the crew. | Undisputed. |
| 61.    In an e-mail from Chris Biggs to Erin Noordeloos and Stephen Smith, Biggs stated: "Israeli ground operation in Gaza increasingly likely, risking unintended escalation involving Syria and Hizbullah."    "Hamas's military wing, the Ezz Eddine al-Qassam Brigades, yesterday (8 July) | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| sent a seaborne unit to attack an Israeli position in Askhalon, southern Israel; and fire rockets against Tel Aviv's Ben Gurion Airport and against Jerusalem . . . ." <br><br> "For its part, Israel on yesterday authorized the Israeli Defense Forces (IDF) to call up to 40,000 reservists, and conducted hundreds of air raids on Gaza." | |
| 62.     As of July 10, 2014, it had become clear, including to plaintiffs, that Israel was planning a ground invasion. | **Disputed**, including because of mischaracterization of evidence (the referenced documents support the fact that a ground invasion was likely or possible, not knowledge of planning). <br><br> Also irrelevant (Fed. R. Evid. 402), improper opinion (Fed. R. Evid. 701) lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).\ <br><br> • UCP002468-70 E-mail from Chris Biggs, Security & Intelligence Analyst, NBCU International, to Erin Noordeloos, Director of International Security and Crisis Management, NBCU, and to Stephen Smith, Head of Security, |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Europe, NBCU (July 10, 2014 02:40 PST) ("ground operation in Gaza increasingly likely"). Ex. 128 to Atlantic's Evid., p. 1508-10. |
| | • UCP001851 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 11, 2014 12:26 PST) (July 11 Max Security Report quoting Netanyahu stating Israel was considering ground invasion). Ex. 32 to Atlantic's Evid., p. 686. |
| | • UCP002712 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 14, 2014 12:30 PST) ("Israeli Cabinet's authorization of 42,000 reservists to be called up further suggests the possibility of a ground invasion over the coming days."). Ex. 24 to Atlantic's Evid., p. 644. |
| 63.    In an e-mail from Smith dated July 10, 2014, Smith recommended that personnel leave Israel, and stated: "We | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. |

PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| have looked at the magnitude and range, of current rocket attacks (which appear to target locations to be used in forthcoming filming)." | |
| 64.   The lawyer for one of the cast members of Dig also used the word war to describe the events of 2014. | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. Also, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| 65.   The lawyer wrote an e-mail to several NBCU employees, stating: "We can't imagine the production will continue in a war zone under continuing air raid sirens." After receiving no response, he wrote: "Not the sort of e-mails I expected to be met with silence. Can you guys please let us know what is going on? Would you send your child into a war zone?" | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. Also, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| 66.   The lawyer later wrote that waiting for a decision was "nerve- | Undisputed that the document speaks for itself; not as to any conclusion, etc. |

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| wracking for the individuals who could literally be on the front lines;" and that "the area," referring to Israel and Palestine, "is quite literally a war zone." | therefrom.<br><br>Also, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| 67.  The plaintiffs had finished filming the pilot episode of *Dig* on June 26, 2014, and were on a scheduled hiatus until July 19, 2014. | Undisputed. |
| 68.  On July 11, given the escalation of the fighting, the plaintiffs decided to temporarily postpone the production that was scheduled to resume on July 19, 2014. | **Disputed** that the production was scheduled to resume on July 19 (it was July 20), 2014 as reflected in the referenced evidence (and *see* ¶ 67 above).  Otherwise undisputed. |
| 69.  Hamas launched an unmanned aerial vehicle believed to possibly be carrying explosives at Israel on July 14, 2014. | **Disputed** including because it is unsupported by the referenced sources.<br><br>Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703).<br>• Lowenstein Aff. at p. 6. Ex. 1 to Atlantic's Evid., p. 7 ¶M.<br>• Human Rights Council, *Human Rights Situation in Palestine and* |

Mitchell Silberberg & Knupp LLP

PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | *other Occupied Arab Territories*, 18, U.N. Doc. A/HRC/29/CRP.4 (June 24, 2015). Ex. 6 to Atlantic's Evid., p. 227. |
| 70.    Between July 8 and July 17, 2014, fighting between Israel and Hamas engaged in consistent and ongoing fighting, with Hamas primarily firing rockets and missiles into Israel, and Israel responding with airstrikes. | **Disputed** as to characterization and incomprehensible as phrased. <br><br> Also no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703). <br><br> • Lowenstein Aff. at p. 6-7.  Ex. 1 to Atlantic's Evid., p. 7-8 ¶K-N. <br> • UCP000888 E-mail from Stephen Smith, Head of Security, Europe, NBCU to Randi Richmond, Vice President, Production, UCP (July 09, 2014 06:16 PST). Ex. 133 to Atlantic's Evid., p. 1532. <br><br> ***Controverting evidence***:  *see* response to ¶¶ 50, 51 above. |
| 71.    Because of the magnitude and range of rocket attacks, the plaintiffs decided to abandon filming in Israel altogether on July 16, 2014. | **Disputed**, including as to characterization and as phrased. <br><br> • UCP000993 E-mail from Stephen Smith, Head of Security, Europe, NBCU, to Mark Binke, Executive Vice President, Production, UCP (July 10, 2014 07:52 PST). Ex. |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | 138 to Atlantic's Evid., p. 1551. |
| | • UCP000940 E-mail from Stephen Smith, Head of Security, Europe, NBCU to Mark Binke, Executive Vice President, Production, UCP (July 10, 2014 8:09). Ex. 129 to Atlantic's Evid., p. 1512. |
| | • UCP001286 E-mail from Stephen Smith, Head of Security, Europe, NBCU to Mark Binke, Executive Vice President, Production, UCP (July 16, 2014 12:16). Ex. 121 to Atlantic's Evid., p. 1474. |
| | • UCP000736 E-mail from Stephen Smith, Head of Security, Europe, NBCU to Mark Binke, Executive Vice President, Production, UCP (July 17, 2014 6:47). Ex. 111 to Atlantic's Evid., p. 1285. |
| | • Plaintiffs' Supplemental Response to Interrogatory No. 25. Ex. 40 to Atlantic's Evid., p. 745-47. |
| | ***Controverting evidence***:  Plaintiffs' Supplemental Response to Interrogatory No. 25. Ex. 40 to Atlantic's Evid., p. 745-47 ("Plaintiffs finalized their |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | decision to move the *Dig* production out of Israel on July 16, 2014, and promptly communicated that decision to Atlantic on July 17, 2014."); First Amended Complaint ¶ 1, Ex. 14 to Atlantic's Evid., p. 500 ("For the safety of cast and crew, UCP decided initially to postpone, and subsequently move the *Dig* production out of Israel."). |
| 72.    Filming of *Dig* was completed partly in New Mexico and partly in Croatia. | Undisputed. |
| 73.    On July 17, Israel's ground forces invaded Gaza. | Undisputed, other than characterization of events as "invasion," offensive, etc., as to which the documents speak for themselves; not as to any conclusion, etc. therefrom. |
| 74.    The IDF ground invasion involved thousands of IDF troops, including infantry, armored and engineering corps, artillery and intelligence forces, combined with aerial and naval support and accompanied by tanks and helicopter gunships. | **Disputed** as to characterization and as phrased, and unsupported by anything other than the Lowenstein Decl.  Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703), irrelevant, (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal |

Mitchell Silberberg & Knupp LLP

61

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | decided to move the *Dig* production.<br><br>• Lowenstein Aff. at p. 7. Ex. 1 to Atlantic's Evid., p. 8 ¶O.<br>• U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 59 (2015), available at https://www.state.gov/documents/ organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 148.<br>• Human Rights Council, *Human Rights Situation in Palestine and other Occupied Arab Territories*, 3, U.N. Doc. A/HRC/29/CRP.4 (June 24, 2015). Ex. 6 to Atlantic's Evid., p. 212.<br><br>***Controverting evidence***:  Plaintiffs' Supplemental Response to Interrogatory No. 25. Ex. 40 to Atlantic's Evid., p. 745-47 ("Plaintiffs finalized their decision to move the *Dig* production out of Israel on July 16, 2014, and promptly communicated that decision to Atlantic on July 17, 2014."); *and see* response to ¶ 73 above re "On July 17, Israel's |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | ground forces invaded Gaza." |
| 75.     Early in the morning of July 18, 2014, NBCU's head of security, Stephen Smith, sent an e-mail to Mark Binke with a "quick summary of events." It stated, in part: "Over 100 targets, including rocket launching sites and underground tunnels, were targeted throughout Gaza during the overnight hours of July 17-18 as more Israeli troops and armor advanced into Gaza. Fourteen Hamas militants were reportedly killed in Israeli attacks, while the Israel Defense Forces (IDF) sustained its first fatality after a soldier was killed by light arms fire.<br><br>Rockets meanwhile continued to be fired into southern Israeli towns within a 40 km range of the Gaza Strip since the beginning of Israel's ground offensive.<br><br>At this time there has been no de-escalation in the conflict and the threat to personnel resulting in serious injury or loss of life remains considerable… | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom.<br><br>Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| The Israeli military said it would be calling up an additional 18,000 reservists to support ongoing operations in the Gaza Strip.<br><br>The launch of Israel's ground campaign underscores the likelihood that IDF operations will continue to escalate in both scope and size over the coming hours and days.<br><br>Although P.M. Natanjahu [sic] has stated that Israel's objective on the ground is to neutralize Hamas tunnels, we assess that Israel's ground campaign is likely to additionally target other militant infrastructure, especially rocket launching sites in Gaza periphery and the extensive underground networks that support them.<br><br>No realistic timeframe for any reduction in hostilities can be established at present." | |
| 76.    As the fighting continued, Israel | Undisputed that the documents speak |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| conducted more and more airstrikes and attacked with tanks and soldiers on the ground. | for themselves; not as to any conclusion, etc. therefrom.    Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. |
| 77.    By August 1st, NBCU's security team reported that "1,460 Palestinians, mostly civilians, have died in the conflict…sixty-three Israelis, mostly soldiers, have died." | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom.    Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. |
| 78.    Although there were several attempts to broker a ceasefire while Israel's Operation Protective Edge was in effect (July 8 through August 26), all were unsuccessful and any ceasefires they could agree to were short-lived. | **Disputed** because the cited sources only reference the time period of July 11 through August 1, 2014.  Otherwise undisputed that the documents speak for themselves; not as to any conclusion, etc. therefrom.    Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | production. |
| | • UCP003777 E-mail from Chris Biggs, Security & Intelligence Analyst, NBCU International to Stephen Smith, Head of Security, Europe, NBCU (Aug. 01, 2014 02:34 PST)  (E-mail referencing a brief ceasefire). Ex. 34 to Atlantic's Evid., p. 695. |
| | • UCP002288-2292 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 11, 2014 02:06 PST)  (E-mail stating "Palestinian Authority President said his efforts to mediate ceasefire had failed and an Israeli ground operation into Gaza Strip would commence soon"). Ex. 22 to Atlantic's Evid., p. 633-37. |
| | • UCP003612 E-mail from Stephen Smith, Head of Security, Europe, NBCU, to Mark Binke, Executive Vice President, Production, UCP (July 17, 2014 01:29 PST)  (E-mail from NBCU's head of |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | security noting that a brief humanitarian ceasefire requested by the United Nations was in effect). Ex. 35 to Atlantic's Evid., p. 697. |
| 79.    On August 26, 2014, both sides agreed to an indefinite ceasefire, drawing the war to a close. | **Disputed**. Also hearsay (Fed. R. Evid. 801, 802), not a proper subject to a judicial notice (Fed. R. Evid. 201), impermissible legal conclusion, improper opinion (Fed. R. Evid. 701, 702), irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production.<br>• U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014 1, 59 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 90, 148.<br>• Human Rights Council, *Human Rights Situation in Palestine and other Occupied Arab Territories*, 18, U.N. Doc. A/HRC/29/CRP.4 |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | (June 24, 2015). Ex. 6 to Atlantic's Evid., p. 227.<br>• U.N. Office for the Coordination of Humanitarian Affairs, Fragmented Lives Humanitarian Overview 2014, 5-6 (2015), https://www.ochaopt.org/documents/annual_humanitarian_overview_2014_english_final.pdf. Ex. 36 to Atlantic's Evid., p. 703-04.<br>***Controverting evidence***: Defendant's own sources: "cease-fire ended Operation Protective Edge" not "war." Ex. 5 to Atlantic's Evid., p. 90, 148. |
| 80.    Israel continued Operation Protective Edge from July 8 to August 26, 2014, nearly 50 days. | Undisputed that the cited documents speak for themselves; not as to any conclusion, etc. therefrom.<br>Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. |
| 81.    During July 8 to August 26, 2014, Hamas and other militant groups fired 4,465 rockets and mortar shells into Israel, while the Israeli government conducted 5,242 airstrikes within Gaza | Undisputed that the cited documents speak for themselves; not as to any conclusion, etc. therefrom.<br>Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts |

Mitchell Silberberg & Knupp LLP

PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| and a 20-day military ground operation in Gaza. | after Universal decided to move the *Dig* production. |
| 82.    The 50 days of intense fighting left both Israel and Palestine ravaged—but Palestine was hit particularly hard due to Israel's access to much more high-powered weaponry (primarily fighter jets and tanks) and its possession of what is known as the Iron Dome: a missile-defense system that intercepts rockets and missiles before they land in Israel. | **Disputed**, including as to mischaracterization of evidence (the referenced documents relate to events over the period of less than 14 days).     Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production.     • UCP002054 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 20, 2014 01:43 PST). Ex. 37 to Atlantic's Evid., p. 724.     • UCP002136 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 21, 2014 07:00 PST). Ex. 38 to Atlantic's Evid., p. 730. |
| 83.    Palestinian fatalities totaled approximately 2,220, at least half of whom were civilians. | **Disputed**, including as to mischaracterization of evidence (neither of the cited documents support the facts as stated).  Also irrelevant (Fed. R. Evid. |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. |
| | • U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 1 (2015), *available at* https://www.state.gov/documents/ organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 90. |
| | • Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 9 (2015). Ex. 4 to Atlantic's Evid., p. 52. |
| 84.    Approximately 11,000 Palestinians were wounded. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. • U.N. Office for the Coordination of Humanitarian Affairs, Fragmented Lives Humanitarian |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Overview 2014, 5-6 (2015), https://www.ochaopt.org/documents/annual_humanitarian_overview_2014_english_final.pdf.  Ex. 36 to Atlantic's Evid., p. 703-04. |
| 85.    The Israeli Defense Force lost 67 soldiers, and 6 Israeli citizens and one citizen of Thailand were killed. | Undisputed that the cited documents speak for themselves; not as to any conclusion, etc. therefrom.

Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production.

- U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 1 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 90.
- Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 9 (2015) (listing slightly different numbers of Israeli deaths—71 as opposed to 74). Ex. 4 to Atlantic's |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Evid., p. 52. |
| 86.    Hostilities during Operation Protective Edge internally displaced approximately 520,000 persons in Gaza, and approximately 10,000 Israelis. | Undisputed that the cited documents speak for themselves; not as to any conclusion, etc. therefrom.<br><br>Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production.<br><br>• U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 1, 96 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 90, 185.<br>• Human Rights Council, *Human Rights Situation in Palestine and other Occupied Arab Territories*, 18, U.N. Doc. A/HRC/29/CRP.4 (June 24, 2015). Ex. 6 to Atlantic's Evid., p. 227.<br>• U.N. Office for the Coordination of Humanitarian Affairs, Fragmented Lives Humanitarian Overview 2014, 10 (2015), |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | https://www.ochaopt.org/documents/annual_humanitarian_overview_2014_english_final.pdf. Ex. 36 to Atlantic's Evid., p. 708. |
| 87.    The damage to infrastructure was also severe during the 50 days of fighting. During Operation Protective Edge, Israeli armed forces destroyed electrical, water, and other public infrastructure. | Undisputed that the cited documents speak for themselves; not as to any conclusion, etc. therefrom. Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. <br>• U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 99 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 188. <br>• Human Rights Council, *Human Rights Situation in Palestine and other Occupied Arab Territories*, 18, U.N. Doc. A/HRC/29/CRP.4 (June 24, 2015). Ex. 6 to Atlantic's Evid., p. 227. |
| 88.    Estimates of the cost to repair the | Undisputed that the cited document |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| damage to infrastructure ranged from 15.6 billion to as high as 31.2 billion Israeli new shekels ($4-$8 billion). | speaks for itself; not as to any conclusion, etc. therefrom. <br><br> Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. <br><br> • U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 99 (2015), *available at* https://www.state.gov/documents/ organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 188. |
| 89.   In late 2009, Aon/Albert G. Ruben Insurance Services, Inc. ("Aon"), the purported leading global provider of risk management, insurance and reinsurance services, contacted Atlantic to see if it was interested in underwriting many of NBCU's risks. | **Disputed** as to characterization of evidence (which states, among other things, "We [Aon] have already approached Chubb, One Beacon, Fireman's Fund, Houston Casualty & Berkley"), otherwise undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. <br><br> • AONNBCU000916 E-mail from Susan Weiss, Vice President, AON/Albert G. Ruben Insurance Services, Inc., to Kurt Ford, Senior |

74

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Vice President, Production Services, NBCU (Nov. 24, 2009 20:00 PST). Ex. 42 to Atlantic's Evid., p. 761. |
| 90.    AON touts itself as "the leading global provider of risk management, insurance and reinsurance brokerage." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization. |
| 91.    The "starting point" for the terms of the policy was a manuscripted policy submitted to Atlantic for consideration by AON, which had been retained to represent NBCU and the plaintiffs in obtaining a new insurance policy. | **Disputed** as to characterization.<br>• AONNBCU000916 E-mail from Susan Weiss, Vice President, AON/Albert G. Ruben Insurance Services, Inc., to Kurt Ford, Senior Vice President, Production Services, NBCU (Nov. 24, 2009 20:00 PST). Ex. 42 to Atlantic's Evid., p. 761.<br>***Controverting evidence***:  Ex. 42 to Atlantic's Evid., p. 761 (Aon was representing NBCU and its subsidiaries, not necessarily "the plaintiffs" specifically); *and see* additional material facts below, ¶¶ 157-172 (the war exclusions in the "starting point" form are standard per the insurance industry custom and practice). |
| 92.    Following extensive negotiations | Undisputed that "The January 1, 2010 |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| concerning various terms of the Policy, Atlantic agreed to issue the Policy to NBCU in 2010. | policy was issued after extensive negotiations" based on other evidence (*see* Universal's SUF ¶ 3 [ECF No. 63]), but the source cited by Atlantic does not provide support for its statement.<br>• First Amended Compl. ¶ 17. Ex. 14 to Atlantic's Evid., p. 509-10. |
| 93.    The parties continued to renew coverage after that first policy. | Undisputed (the policy at issue was a renewal of policies which NBCUniversal obtained from Atlantic since Policy No. MP00163-00 (effective from January 1, 2010, to January 1, 2011)). |
| 94.    The Policy currently at issue in this case is Policy No. MP00163-04, which was effective from January 1, 2014 through June 30, 2015. | Undisputed. |
| 95.    The relevant insuring agreement in the Policy states: "We agree to pay you such loss (as defined in Paragraph VII) not including loss of earnings or profit, as you sustain by reason of such extra expense you necessarily incur as a result of the interruption, postponement, cancellation, relocation, curtailment or abandonment of an Insured Production due to the | Undisputed. |

Mitchell Silberberg & Knupp LLP

76

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| following:<br><br>1.　The loss must be a direct result of an unexpected, sudden or accidental occurrence entirely beyond your control to include:<br><br>…<br><br>(g) Imminent peril, defined as certain, immediate and impending danger of such probability and severity to persons or property that it would be unreasonable or unconscionable to ignore." | |
| 96.　The Policy also includes exclusions "applicable to all sections of this policy." The exclusions relevant here are:<br><br>"This policy does not insure against loss or damage caused directly or indirectly by:<br><br>(1) War, including undeclared or civil war; or<br><br>(2)Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or | **Disputed**.  The policy does not contain "; or" at the end of part (3). Rather, part (3) ends with a period. Further, part (4) ends with a semicolon, not a period, leading to Exclusion 5 which relates to Exclusion 4, as follows:<br><br>"This policy does not insure against loss or damage caused directly or indirectly by:<br><br>(1) War, including undeclared or civil war; or<br><br>(2)Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss; or<br><br>(4) Any weapon of war including atomic fission or radioactive force, whether in time of peace or war[.]" | other authority using military personnel or other agents; or<br><br>(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.<br><br>(4) Any weapon of war including atomic fission or radioactive force, whether in time of peace or war;<br><br>(5) Nuclear reaction or radiation, or radioactive contamination from any other cause.  But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the direct loss or damage caused by that fire if the fire would be covered under this policy."<br><br>• Atlantic Policy No. MP00163-04 at p.6 of 7. Ex. 44 to Atlantic's Evid., p. 778. |
| 97.    As soon as it became clear that NBCU was considering moving the filming of *Dig* out of Israel, there was a | Undisputed that the cited documents speak for themselves; not as to Atlantic's characterization or any conclusion, etc. |

Mitchell Silberberg & Knupp LLP

PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| flurry of e-mails over whether there would be insurance coverage for the move. | therefrom. |
| 98.    NBCU employees consulted Malika Adams, an employee of Comcast, which now owns NBCU, for her opinion on whether coverage would apply. Ms. Adams wrote that NBCU would "have to be cautious because there is a war exclusion on the policy." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom.<br><br>Also irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602).<br><br>• UCP000870 E-mail from Malika Adams, CPCU, Supervisor, Risk Management, Comcast Corporation, to Kurt Ford, Senior Vice President, Production Services, NBCU (July 03, 2014 10:58 PST). Ex. 140 to Atlantic's Evid., p. 1560. |
| 99.    In another follow up e-mail on the same issue, Ms. Adams wrote again to Randi Richmond, an employee of the Plaintiffs in the case: "[W]e may have some recourse but even that I would say with caution since there is a war exclusion on the policy that may come | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom.<br><br>Also irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. |

Mitchell Silberberg & Knupp LLP

PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| into play." | 602). |
| | • UCP000422 E-mail from Malika Adams, CPCU, Supervisor, Risk Management, Comcast Corporated, to Randi Richmond, Vice President, Production, UCP (July 07, 2014 20:11 PST). Ex. 141 to Atlantic's Evid., p. 1569. |
| 100.   NBCU's own employee, Andrea Garber, wrote an e-mail noting that the exclusion for acts of war was "broad." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom.<br><br>Also irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602).<br><br>• UCP000442 E-mail from Andrea Garber, Senior Director, Risk Management, to Mark Binke, Executive Vice President, Production, UCP and Randi Richmond, Vice President, Production, UCP (July 14, 2014 10:03 PST). Ex. 113 to Atlantic's Evid., p. 1361. |
| 101.   The plaintiffs submitted a claim | Undisputed that: "On July 15, 2014, |

PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| for coverage of "extra expenses" in moving the production of Dig out of Israel on July 15, 2014 | Aon submitted to Atlantic a formal notice of the *Dig* claim for the extra expenses incurred in connection with the delay and subsequent relocation of the production [], on behalf of NBCUniversal and UCP."  Universal's SUF ¶ 49 [ECF No. 63].<br><br>• First Amended Compl. at ¶ 29. Ex. 14 to Atlantic's Evid., p. 514. |
| 102.   In 2015, NBCU began shopping around for a new carrier, and Aon, on its behalf, submitted the actual Policy to other insurers, explaining: "It is a manuscripted policy that is the property of Aon . . . . They are looking to keep this same form at renewal." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom.  *See also* response to ¶ 91 above. |
| 103.   The policy that Susan Weiss of Aon sent to other insurers was marked in bold on each and every page as follows: CONFIDENTIAL PROPERTY OF AON." | Undisputed as to the policy sent to Allianz based on the cited sources; not as to Atlantic's characterization or any conclusion, etc. therefrom.  *See also* response to ¶ 91 above.<br><br>• E-mail (and attachment thereto) from Susan Weiss, Vice President, AON/Albert G. Ruben Insurance Services, Inc., to Wendy Diaz, Allianz Global Risk U.S. |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Insurance Company (Mar. 23, 2015 16:39 PST). Ex. 112 to Atlantic's Evid., p. 1287-1359. |
| 104.   In response to an interrogatory that asked the Plaintiffs to explain why they contended their loss did not result from "weapons of war," they stated that the loss was not caused by the weapons of war but instead "by the atmosphere of terror created by Hamas' random and indiscriminate firing of mortars and rockets and the potential threat of other attacks which could be used by Hamas, such as suicide bombers." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom.  *See also* Universal's MSJ, pp. 22-25 [ECF No. 61-1] and the opposition brief filed concurrently herewith, pp. 19-21. |
| 105.   The populace at large (including news outlets) referred to the fighting between Israel and Hamas as a "war." For example, NBC News titled a news article *Gaza cease-fire holds between Hamas and Israel after 50-day war*. | **Disputed**. The "populace at large" reference is unsupported and, in the context of this case and policy at issue, this purported fact is irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br>• ATL005260 *Gaza cease-fire holds between Hamas and Israel after 50-day war*, NBC News, Aug. 27, 2014, |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | http://www.nbcnews.com/storyline/middle-east-unrest/gaza-cease-fire-holds-between-hamas-israel-after-50-day-n189821. Ex. 45 to Atlantic's Evid., p. 824. |

*Controverting evidence*:

- Declaration of Ty R. Sagalow ("Sagalow Decl."), Ex. D (Expert Report of Sagalow), ¶¶ 83-90 (detailing insurance industry custom and practice, *e.g.*, ¶ 89: "even though the same word (e.g., 'war') may have another colloquial meaning, when the insurer is considering coverage pursuant to the terms of an insurance policy, the custom and practice is for the insurer to use the insurance industry meaning of such words used in the policy, not their colloquial meaning or the broad use such words may have in the press or by politicians.") [ECF No. 61-6].

- Rebuttal Declaration of Ty R. Sagalow ("Rebuttal Sagalow

Mitchell
Silberberg &
Knupp LLP

83

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Decl."), Ex. A (Rebuttal Expert Report of Sagalow), ¶¶ 58-90 (detailing insurance industry custom and practice interpretation of the policies, as opposed to colloquial or "ordinary" meaning of words). |
| | • Rebuttal Declaration of Dr. Matthew Levitt ("Rebuttal Dr. Levitt Decl."), Ex. D (Rebuttal Expert Report of Dr. Levitt), ¶ 15 (American or Israeli official authorities do not use the term "war" to refer to the Hamas/Israel conflict in 2014. Moreover, the New York Times chronology of the conflict counts it as lasting 29 days, and does not call it a "50 day war."). |
| | • There is a legion of news reports that do not describe the Hamas/Israel conflict in the summer 2014 as a "50 day war" or any "war." *E.g., IDF announces major operation in Gaza as rocket fire escalates in south*, The |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Jerusalem Post, July 7, 2014 ("Barrage of Gaza rockets fired at southern Israel as IDF prepares for escalation; Iron Dome intercepts 12 projectiles; sirens sound in Ashdod, Ashkelon, Beit Shemesh and Rehovot."), Declaration of Lucia Coyoca in support of Opposition to Defendant's Motion for Summary Judgment ("Opp. Coyoca Decl."), Ex. 76, Request for Judicial Notice ("RJN") in support of Opposition to Defendant's Motion for Summary Judgment, Ex. 76; *Gaza's marvels of engineering; Hamas gunmen can live in tunnels for weeks*, The Financial Post, August 9, 2014 (Hamas' tunnels "lead 'from mosque to mosque; mosque to house; house to hospital; kindergarten to house ... Lest there be any doubt about the tunnels' purpose, the IDF found weapons, army uniforms and motorcycles, along with chloroform and |

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | handcuffs - a macabre 'kidnapping kit.'"), Opp. Coyoca Decl. Ex. 75, RJN, Ex. 75; *Take Away Their Guns -- Then We'll Talk*, Foreign Policy, August 28, 2014 ("For more than 50 days this summer, Israeli population centers were terrorized by rockets, mortars, cross-border infiltration into Israel by sea, and repeated attempts by Hamas and the other terrorist factions to murder and kidnap Israelis through the use of tunnels."), Opp. Coyoca Decl. Ex. 74; RJN, Ex. 74.<br>• *Holiday Inns Inc. v. Aetna Ins. Co.*, 571 F. Supp. 1460, 1464 (S.D.N.Y. 1983) ("In commercial litigation arising out of insurance policies, words and phrases are construed 'for insurance purposes' – a context quite different from those of politics or journalism."). |
| 106.   NBC News titled an article *How technology is intensifying Gaza War between Israel and Hamas*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in |

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| | • ATL00004726-004729 Alastair Jamieson, *How technology is intensifying Gaza War between Israel and Hamas*, NBC News, July 30, 2014, http://www.nbcnews.com/storyline/middle-east-unrest/how-technology-intensifying-gaza-war-between-israel-hamas-n158536. Ex. 46 to Atlantic's Evid., p. 826-29. |
| | ***Controverting evidence***: |
| | • Sagalow Decl., Ex. D (Expert Report of Sagalow), ¶¶ 83-90 (detailing insurance industry custom and practice, *e.g.*, ¶ 89: "even though the same word (e.g., 'war') may have another colloquial meaning, when the insurer is considering coverage pursuant to the terms of an |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | insurance policy, the custom and practice is for the insurer to use the insurance industry meaning of such words used in the policy, not their colloquial meaning or the broad use such words may have in the press or by politicians.") [ECF No. 61-6]. |
| | • Rebuttal Sagalow Decl., Ex. A (Rebuttal Expert Report of Sagalow), ¶¶ 58-90 (detailing insurance industry custom and practice interpretation of the policies, as opposed to colloquial or "ordinary" meaning of words). |
| | • Rebuttal Dr. Levitt Decl., Ex. D (Rebuttal Expert Report of Dr. Levitt), ¶ 15 (American or Israeli official authorities do not use the term "war" to refer to the Hamas/Israel conflict in 2014. Moreover, the New York Times chronology of the conflict counts it as lasting 29 days, and does not call it a "50 day war."). |
| | • There is a legion of news reports |

Mitchell Silberberg & Knupp LLP

88

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | that do not describe the Hamas/Israel conflict in the summer 2014 as a "50 day war" or any "war."  *E.g.*, *IDF announces major operation in Gaza as rocket fire escalates in south*, The Jerusalem Post, July 7, 2014 ("Barrage of Gaza rockets fired at southern Israel as IDF prepares for escalation; Iron Dome intercepts 12 projectiles; sirens sound in Ashdod, Ashkelon, Beit Shemesh and Rehovot."), Opp. Coyoca Decl., Ex. 76, RJN, Ex. 76; *Gaza's marvels of engineering; Hamas gunmen can live in tunnels for weeks*, The Financial Post, August 9, 2014 (Hamas' tunnels "lead 'from mosque to mosque; mosque to house; house to hospital; kindergarten to house ... Lest there be any doubt about the tunnels' purpose, the IDF found weapons, army uniforms and motorcycles, along with chloroform and handcuffs - a macabre 'kidnapping |

Mitchell Silberberg & Knupp LLP

89

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | kit.'"), Opp. Coyoca Decl. Ex. 75, RJN, Ex. 75; *Take Away Their Guns -- Then We'll Talk*, Foreign Policy, August 28, 2014 ("For more than 50 days this summer, Israeli population centers were terrorized by rockets, mortars, cross-border infiltration into Israel by sea, and repeated attempts by Hamas and the other terrorist factions to murder and kidnap Israelis through the use of tunnels."), Opp. Coyoca Decl. Ex. 74; RJN, Ex. 74.<br>• *Holiday Inns*, 571 F. Supp. at 1464 ("In commercial litigation arising out of insurance policies, words and phrases are construed 'for insurance purposes' – a context quite different from those of politics or journalism."). |
| 107.   NBC News titled an article *Israel and Hamas* exchange *missile fire as Gaza War looms*, in which it stated: "Israelis ran for cover late on Tuesday as air-raid sirens sounded in the business | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), |

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| capital Tel Aviv and the holy city of Jerusalem, both of which were hit in the Gaza war of November 2012." | improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br><br> • ATL004732 *Israel and Hamas exchange missile fire as Gaza War looms*, NBC News, July 8, 2014, http://www.nbcnews.com/news/world/israel-hamas-exchange-missile-fire-gaza-war-looms-n151111  Ex. 47 to Atlantic's Evid., p. 831. <br><br> ***Controverting evidence***:  *see* evidence cited in response to ¶ 106. |
| 108.   NBC News titled an article *Public support for Israel shifting amid Gaza War, Britain warns*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br><br> • ATL004736-004738 Cassandra Vinograd, *Public support for Israel shifting amid Gaza War, Britain warns*, NBC News, July 30, 2014, |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | http://www.nbcnews.com/storyline/middle-east-unrest/public-support-israel-shifting-amid-gaza-war-britain-warns-n168366. Ex. 48 to Atlantic's Evid., p. 833-35. ***Controverting evidence***: *see* evidence cited in response to ¶ 106. |
| 109.   NBC News titled an article *Gaza death toll nears 1,500 as 72-hour truce with Israel begins*, in which it states: "The death toll now surpasses the about 1,400 Palestinians killed during the Gaza war of 2008-2009." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br>• ATL004741 *Gaza death toll nears 1,500 as 72-hour truce with Israel begins*, NBC News, Aug. 01, 2014, http://www.nbcnews.com/storyline/middle-east-unrest/gaza-death-toll-nears-1-500-72-hour-truce-israel-n170236. Ex. 49 to Atlantic's Evid., p. 837. <br>***Controverting evidence***: *see* evidence cited in response to ¶ 106. |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| 110.   MSNBC titled an article *Scenes of war and heartbreak as Israel-Hamas conflict intensifies*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br>• ATL004588-004597 Benjamin Landy & Maria Lokke, *Scenes of war and heartbreak as Israel-Hams conflict intensifies*, MSNBC, July 18, 2014, http://www.msnbc.com/msnbc/scenes-war-and-heartbreak-israel-hamas-conflict-intensifies. Ex. 50 to Atlantic's Evid., p. 839-48. <br>***Controverting evidence***:  *see* evidence cited in response to ¶ 106. |
| 111.   MSNBC titled an article *In Israel and Palestine, children imagine a world without war*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | 602), hearsay (Fed. R. Evid. 801, 802). <br>• ATL004598-004602 Donna Stefano, *In Israel and Palestine, children imagine a world without war*, MSNBC, July 06, 2014, http://www.msnbc.com/msnbc/israel-and-palestine-children-imagine-world-without-war. Ex. 51 to Atlantic's Evid., p. 850-54. <br>**Controverting evidence**: *see* evidence cited in response to ¶ 106. |
| 112.   MSNBC and NBC News are affiliated with NBCU.  The same security personnel who provided security for *Dig*, including Smith, provided security for the NBC News bureau in Israel. | **Disputed** as to Atlantic's characterization of Mr. Smith's testimony (Mr. Smith testified that in 2014, he provided security support for, among other things, the *Dig* production and that he provided support to the NBC news bureau based in Israel and exchanged information regarding the security situation in Israel at some point), but otherwise undisputed as reflected in the testimony. <br>• Smith Depo., at p. 73-75.  Ex. 119 To Atlantic's Evid., p. 1403-04. |
| 113.   The Wall Street Journal titled an article *Israel, Hamas set out demands on* | Undisputed that the cited document speaks for itself; not as to any |

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| *Gaza*, in which it stated: "Politically, the war offered Hamas a chance to burnish its anti-Israel credentials and bolster its flagging stature among Gazans and Muslims elsewhere in the Arab world…" | conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br><br> • ATL005261-005267 Nicholas Casey, Joshua Mitnick & Nicholas Casey, *Israel, Hamas set out demands on Gaza*, The Wall Street Journal, Oct. 23, 2014, https://www.wsj.com/articles/israel-pulls-forces-from-gaza-as-cease-fire-begins-1407231543. Ex. 54 to Atlantic's Evid., p. 860-66. <br><br> ***Controverting evidence***: <br><br> • Sagalow Decl., Ex. D (Expert Report of Sagalow), ¶¶ 83-90 (detailing insurance industry custom and practice, *e.g.*, ¶ 89: "even though the same word (e.g., 'war') may have another colloquial meaning, when the insurer is considering coverage pursuant to the terms of an insurance policy, the custom and |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | practice is for the insurer to use the insurance industry meaning of such words used in the policy, not their colloquial meaning or the broad use such words may have in the press or by politicians.") [ECF No. 61-6].<br><br>• Rebuttal Sagalow Decl., Ex. A (Rebuttal Expert Report of Sagalow), ¶¶ 58-90 (detailing insurance industry custom and practice interpretation of the policies, as opposed to colloquial or "ordinary" meaning of words).<br><br>• Rebuttal Dr. Levitt Decl., Ex. D (Rebuttal Expert Report of Dr. Levitt), ¶ 15 (American or Israeli official authorities do not use the term "war" to refer to the Hamas/Israel conflict in 2014. Moreover, the New York Times chronology of the conflict counts it as lasting 29 days, and does not call it a "50 day war.").<br><br>• There is a legion of news reports that do not describe the |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Hamas/Israel conflict in the summer 2014 as a "50 day war" or any "war." *E.g., IDF announces major operation in Gaza as rocket fire escalates in south*, The Jerusalem Post, July 7, 2014 ("Barrage of Gaza rockets fired at southern Israel as IDF prepares for escalation; Iron Dome intercepts 12 projectiles; sirens sound in Ashdod, Ashkelon, Beit Shemesh and Rehovot."), Opp. Coyoca Decl., Ex. 76, RJN, Ex. 76; *Gaza's marvels of engineering; Hamas gunmen can live in tunnels for weeks*, The Financial Post, August 9, 2014 (Hamas' tunnels "lead 'from mosque to mosque; mosque to house; house to hospital; kindergarten to house ... Lest there be any doubt about the tunnels' purpose, the IDF found weapons, army uniforms and motorcycles, along with chloroform and handcuffs - a macabre 'kidnapping kit.'"), Opp. Coyoca Decl. Ex. 75, |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
|  | RJN, Ex. 75; *Take Away Their Guns -- Then We'll Talk*, Foreign Policy, August 28, 2014 ("For more than 50 days this summer, Israeli population centers were terrorized by rockets, mortars, cross-border infiltration into Israel by sea, and repeated attempts by Hamas and the other terrorist factions to murder and kidnap Israelis through the use of tunnels."), Opp. Coyoca Decl. Ex. 74; RJN, Ex. 74. |
|  | • *Holiday Inns*, 571 F. Supp. at 1464 ("In commercial litigation arising out of insurance policies, words and phrases are construed 'for insurance purposes' – a context quite different from those of politics or journalism."). |
| 114.   The New York Times titled an article *Israel clears troops in airstrike near school in 2014 Gaza War*, which stated: "The case was one of seven investigations into possible military | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. |

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| misconduct during the 50-day war between Israel and Gaza's rocket firing militant groups…" | 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br>• ATL004603-004605 Isabel Kershner, *Israel clears troops in airstrike near school in 2014 Gaza War*, N.Y. Times, Aug. 24, 2016, https://www.nytimes.com/2016/08/25/world/middleeast/israel-gaza-war.html?_r=0. Ex. 55 to Atlantic's Evid., p. 868-70. <br>**Controverting evidence**: *see* evidence cited in response to ¶ 113. |
| 115.   Time Magazine titled an article *Israel seeks to gain advantage by reversing course in Gaza*, in which the article stated: <br>"The war continues and there is no victor, but Israel is gradually pulling most of its troops out of the Gaza Strip in a sign that in the course of a weekend, it decided to take a completely different tack in its war with Hamas." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br>• ATL004771-004774 Ilene Prusher, *Israel seeks to gain advantage by reversing course in Gaza*, Time Magazine, Aug. 03, 2014, http://time.com/3076594/israel- |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | gaza-cease-fire-hamas-netanyahu/. Ex. 56 to Atlantic's Evid., p. 872-75.<br><br>***Controverting evidence***:  *see* evidence cited in response to ¶ 113. |
| 116.   The Washington Post titled an article *Here's what really happened in the Gaza* war *(according to the Israelis).* | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004776-004779 William Booth, *Here's what really happened in the Gaza war (according to the Israelis)*, The Washington Post, Sept. 03, 2014, https://www.washingtonpost.com/news/worldviews/wp/2014/09/03/heres-what-really-happened-in-the-gaza-war-according-to-the-israelis/?utm_term=.18ba9ee8a00. Ex. 57 to Atlantic's Evid., p. 877-80.<br><br>***Controverting evidence***:  *see* |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | evidence cited in response to ¶ 113. |
| 117.   CNN titled an article *Gaza War: The terrifying truth*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br>• ATL004606-004610 Aaron D. Miller, *Gaza war: The terrifying truth*, CNN, Aug. 03, 2014, http://www.cnn.com/2014/08/01/opinion/miller-gaza-hamas-israel-cease-fire-obstacles/. Ex. 58 to Atlantic's Evid., p. 882-86.<br>***Controverting evidence***: *see* evidence cited in response to ¶ 113. |
| 118.   U.S. News and World Report titled an article *Israel clears forces in several deadly 2014 Gaza war cases*, in which it stated: "The Israeli military on Wednesday cleared its forces of wrongdoing in three deadly incidents that took place during the 2014 Gaza war—including an airstrike that killed 15 | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| members of a single family." | • ATL004611-004630 Josef Federman, *Israel clears forces in several deadly 2014 Gaza war cases*, U.S. News and World Report, Associated Press, Aug. 24, 2016, https://www.usnews.com/news/world/articles/2016-08-24/israel-clears-forces-in-several-deadly-2014-gaza-war-cases. Ex. 59 to Atlantic's Evid., p. 888-907.<br><br>***Controverting evidence***:  *see* evidence cited in response to ¶ 113. |
| 119.   The Independent titled an article *Israel-Gaza conflict: 50-day war by numbers*, which stated: "As discussions for a long-term truce between Israel and Hamas continue in Cairo, Gaza is picking up the pieces of a 50-day war that left more than 2,200 people dead." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004755-004758 Lizzie Dearden, *Israel-Gaza conflict: 50-day war by numbers*, The Independent, Aug. 27, 2014, http://www.independent.co.uk/ne |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | ws/world/middle-east/israel-gaza-conflict-50-day-war-by-numbers-9693310.html. Ex. 60 to Atlantic's Evid., p. 909-12. **Controverting evidence**: *see* evidence cited in response to ¶ 113. |
| 120.   The Los Angeles Times titled an article *Israel and Hamas may have committed* war *crimes in Gaza, U.N. report says*, in which it states: "A long-awaited report by a United Nations special investigative panel concluded that both Israel and the Palestinian militant group Hamas may have been guilty of war crimes during last summer's Gaza war." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br>• ATL004631-004634 Batsheva Sobelman, *Israel and Hamas may have committed war crimes in Gaza, U.N. report says*, The Los Angeles Times, June 22, 2015, http://www.latimes.com/world/middleeast/la-fg-un-report-gaza-war-20150622-story.html. Ex. 61 to Atlantic's Evid., p. 914-17. <br>**Controverting evidence**: *see* evidence cited in response to ¶ 113. |
| 121.   BBC News titled an article *Israeli* | Undisputed that the cited document |

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| *2014 Gaza war actions lawful, report says*. | speaks for itself; not as to any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004635-004647 *Israeli 2014 Gaza war actions lawful, report says*, BBC News, June 14, 2015, http://www.bbc.com/news/world-middle-east-33128955. Ex. 62 to Atlantic's Evid., p. 919-31.<br><br>***Controverting evidence***: *see* evidence cited in response to ¶ 113. |
| 122.   The Haaretz News titled an article After *seven weeks of Gaza War, Hamas 1, Israel 0*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004648-004651 Amir Oren, *After seven weeks of Gaza War, Hamas 1, Israel 0*, Haaretz News, |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Aug. 26, 2014, http://www.haaretz.com/israel-news/.premium-1.612437. Ex. 63 to Atlantic's Evid., p. 933-36. *Controverting evidence*: *see* evidence cited in response to ¶ 113. |
| 123. The Atlantic titled an article *The one place where Israel and Hamas are communicating*, in which it stated: "Even for a war that has played out in the bravado of hashtag campaigns…" | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br>• ATL004748-004754 Debra Kamin, *The one place where Israel and Hamas are communicating*, The Atlantic, Aug. 05, 2014, https://www.theatlantic.com/international/archive/2014/08/the-one-place-where-israel-and-hamas-are-communicating/375589/. Ex. 64 to Atlantic's Evid., p. 938-44.<br>*Controverting evidence*: *see* evidence cited in response to ¶ 113. |

| | DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|---|
| | 124.   USA Today titled an article *13,000 families in Gaza still displaced two years* after *war with Israel*, which stated:<br><br>"Their house was destroyed during the 50-day war with Israel…" | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004652-004654 Abeer Ayyoub, *13,000 families in Gaza still displaced two years after war with Israel*, USA Today, Aug. 10, 2016, https://www.usatoday.com/story/news/world/2016/08/10/gaza-city-families-displaced-war-israel/88002220/. Ex. 65 to Atlantic's Evid., p. 946-48.<br><br>***Controverting evidence***: *see* evidence cited in response to ¶ 113. |
| | 125.   The Chicago Tribune titled an article *Children suffer and die in Gaza. Who Notices?*, in which its states:<br>"Even the lives of "privileged" families—those whose houses weren't damaged or destroyed in the recent war | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. |

Mitchell Silberberg & Knupp LLP

106

PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| and who have some money to pay inflated prices and middlemen—are affected." | 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004655-004657 Najla Shawa, *Children suffer and die in Gaza. Who Notices?*, The Chicago Tribune, Jan. 29, 2015, http://www.chicagotribune.com/news/opinion/commentary/ct-deaths-babies-gaza-war-palestians-perspec-0129-20150128-story.html. Ex. 66 to Atlantic's Evid., p. 950-52.<br><br>**Controverting evidence**:  *see* evidence cited in response to ¶ 113. |
| 126.   The Chicago Sun Times titled an article Decimated *Hamas makes ludicrous claims*, in which it states: "More than 2,100 Palestinians died in the 50-day war against Israel…" | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004658 Sarahtr, *Decimated Hamas makes ludicrous claims*, The Chicago Sun Times, Sept. 05, 2014, |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | http://chicago.suntimes.com/politics/decimated-hamas-makes-ludicrous-claims/. Ex. 67 to Atlantic's Evid., p. 954. **Controverting evidence**: *see* evidence cited in response to ¶ 113. |
| 127.   The Denver Post titled an article *Israel and Hamas reach an uneasy cease-fire in 50-day Gaza war*, in which it stated: "Hamas declared victory, even though it has little to show for a 50-day war that killed more than 2,100 Palestinians…" | Undisputed that the cited document speaks for itself; not as any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br>• ATL004659-004661 The Associated Press, *Israel and Hamas reach an uneasy cease-fire in 50-day Gaza war*, The Denver Post, Aug. 26, 2014, http://www.denverpost.com/2014/08/26/israel-and-hamas-reach-an-uneasy-cease-fire-in-50-day-gaza-war/. Ex. 68 to Atlantic's Evid., p. 956-58. <br>**Controverting evidence**: *see* evidence cited in response to ¶ 113. |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| 128.   The Dallas Morning News titled an article *Gaza* cease-*fire reached after 50-day war that killed 2,200 and settled little.* | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br><br> • ATL004662-004665 *Gaza cease-fire reached after 50-day war that killed 2,200 and settled little*, Dallas Morning News, Aug. 2014, https://www.dallasnews.com/news/news/2014/08/26/gaza-cease-fire-reached-after-50-day-war-that-killed-2200-and-settled-little. Ex. 69 to Atlantic's Evid., p. 960-63. <br><br> ***Controverting evidence***:  *see* evidence cited in response to ¶ 113. |
| 129.   Newsday titled an article *Israeli, Palestinian leaders air differences at United* Nations, in which it stated: "Gaza is controlled by Hamas, a Palestinian political faction that has differed sharply with the wishes of Abbas' administration of the [PA] and | **Disputed**, in the context of this case and policy at issue, as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br><br> • ATL004666-004668 Zachary R. |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| has, indeed, launched rockets into Israel, most notably during a 50-day war with Israel in 2014." | Dowdy, *Israeli, Palestinian leaders air differences at United Nations*, Newsday, Sept. 22, 2016, http://www.newsday.com/news/world/at-un-israeli-and-palestinian-leaders-air-differences-1.12354379.  Ex. 70 to Atlantic's Evid., p. 965-67.<br><br>***Controverting evidence***:  *see* evidence cited in response to ¶¶ 14, 15, 113. |
| 130.   The Houston Chronical titled an article Israeli *house strikes killed mostly civilians*, in which it stated: "They were among at least 844 Palestinians killed as a result of airstrikes on Gaza homes during Israel's summer war with the Islamic militant group, Hamas." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004669-004673 Fares Akram, Mohammed Daraghmeh & Karin Laub, *Israeli house strikes killed mostly civilians*, The Houston Chronicle, Feb. 13, 2015, http://www.houstonchronicle.com/news/nation- |

Mitchell Silberberg & Knupp LLP

110

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | world/world/article/Israeli-house-strikes-killed-mostly-civilians-6080436.php. Ex. 71 to Atlantic's Evid., p. 969-73. **Controverting evidence**: *see* evidence cited in response to ¶ 113. |
| 131.   The Guardian titled an article *Gaza ceasefire: Israel and Palestinians agree to halt weeks of fighting*, in which it stated: "The war in Gaza ended on Tuesday after Israel and the Palestinians agreed to halt fighting indefinitely…" | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br> • ATL004674-004677 Hazem Balousha & Harriet Sherwood, *Gaza ceasefire: Israel and Palestinians agree to halt weeks of fighting*, The Guardian, Aug. 27, 2014, https://www.theguardian.com/world/2014/aug/26/gaza-ceasefire-israel-palestinians-halt-fighting. Ex. 72 to Atlantic's Evid., p. 975-78. **Controverting evidence**: *see* |

Mitchell Silberberg & Knupp LLP

111

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | evidence cited in response to ¶ 113. |
| 132.   The Times of India titled an article *Israel-Gaza conflict: 50-day war by numbers*, in which it stated: "As discussion for a long-term truce between Israel and Hamas continue in Cairo, Gaza is picking up the pieces of a 50-day war that left more than 2,200 people dead." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br>• ATL004763-004769 Lizzie Dearden, *Israel Conflict: 50-day war by numbers*, The Times of India, Aug. 27, 2014, http://timesofindia.indiatimes.com/world/middle-east/Israel-Gaza-conflict-50-day-war-by-numbers/articleshow/41000781.cms.  Ex. 73 to Atlantic's Evid., p. 980-86.<br>***Controverting evidence***:  *see* evidence cited in response to ¶ 113. |
| 133.   The Sydney Morning Herald titled an article *Why Israel lost the war in Gaza*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), |

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br><br> • ATL004678-004679 David Rothkopf, *Why Israel lost the war in Gaza*, The Sydney Morning Herald, Aug. 11, 2014, http://www.smh.com.au/comment/ why-israel-lost-the-war-in-gaza- 20140808-101ruh.html. Ex. 74 to Atlantic's Evid., p. 988-89. <br><br> ***Controverting evidence***:  *see* evidence cited in response to ¶ 113. |
| 134.   The China Daily titled an article *In photos: Gaza healing from war after ceasefire*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br><br> • ATL004680-004699 In photos: Gaza healing from war after ceasefire, China Daily, Aug. 28, 2014, http://www.chinadaily.com.cn/wor |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | ld/2014-08/28/content_18500736.htm. Ex. 75 to Atlantic's Evid., p. 991-1010. <br><br> ***Controverting evidence***:  *see* evidence cited in response to ¶ 113. |
| 135.   The Daily Mail titled an article *Inside* bombed-*out Gaza: One week on from end of 50-day war and the true scale of devastation is revealed.* | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br> • ATL004700-004714 James Rush, *Inside bombed-out Gaza: One week on from end of 50-day war and the true scale of devastation is revealed*, The Daily Mail, Sept. 02 2014, http://www.dailymail.co.uk/news/article-2740643/Inside-bombed-Gaza-One-week-end-50-day-war-true-scale-devastation-revealed.html. Ex. 76 to Atlantic's Evid., p. 1012-26. |

Mitchell Silberberg & Knupp LLP

114

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | *Controverting evidence*:  see evidence cited in response to ¶ 113. |
| 136.   Salon titled an article *74% of Gaza homes destroyed by Israel in summer 2014 war have not been rebuilt, as violent repression escalates*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br>• ATL004715-004724 Ben Norton, *74% of Gaza homes destroyed by Israel in summer 2014 war have not been rebuilt, as violent repression escalates*, Salon, Feb. 09, 2016, http://www.salon.com/2016/02/09/74_of_gaza_homes_destroyed_by_israel_in_summer_2014_war_have_not_been_rebuilt_as_violent_repression_escalates/. Ex. 77 to Atlantic's Evid., p. 1028-37. <br>*Controverting evidence*:  see evidence cited in response to ¶ 113. |
| 137.   CBS News titled an article *Rocket fired from Gaza hits southern Israel,* | Undisputed that the cited document speaks for itself; not as to any |

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| *military says*, which stated: "Israel fought a 50-day war this summer with Hamas, the Palestinian militant group that controls Gaza." | conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL005256-005259 *Rocket fired from Gaza hits southern Israel, military says*, CBS News, Dec. 19, 2014, http://www.cbsnews.com/news/rocket-fired-from-gaza-hits-southern-israel-military-says/. Ex. 78 to Atlantic's Evid., p. 1039-42.<br><br>***Controverting evidence***:  *see* evidence cited in response to ¶ 113. |
| 138.   The Max security reports that NBCU received and relied upon in deciding to leave Israel also note that in Israel, while the 2014 conflict was underway, there were anti-war protests. | **Disputed**, and mischaracterizes evidence.<br><br>Also improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802), and irrelevant (Fed. R. Evid. 402, 403), particularly to the extent Atlantic relies on sources after Universal made the decision to move the *Dig* production.<br><br>• UCP002496 E-mail from Max |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 26, 2014 09:54 PST). Ex. 80 to Atlantic's Evid., p. 1052. ***Controverting evidence***: Mr. Smith testified that he relied on certain Max Security Intelligence reports as one of the sources that he used to carry out his work for NBCUniversal on Dig (Ex. 119 to Atlantic's Evid., p. 122) and that the "contents of … report[]s is neither written nor controlled by me. I'm interested in what it's actually telling me about specific events, not their interpretation" (pp. 178-89). *See also* response to ¶ 34 above. |
| 139.   An NBCU employee in the security department sent an e-mail on July 10, 2014, discussing Hizbullah's "war" with Israel and Syria. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. The referenced document about a conflict in 1996 was largely written by a third party, IHS, and not by an NBCU employee. Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | Evid. 602).<br><br>• UCP002468 E-mail from Chris Biggs, Security & Intelligence Analyst, NBCU International, to Erin Noordeloos, Director of International Security and Crisis Management, NBCU,  and Stephen Smith, Head of Security, Europe, NBCU (July 10, 2014 02:40 PST). Ex. 128 to Atlantic's Evid., p. 1508. |
| 140.   Hizbullah (also spelled Hezbollah) is designated by the United States Government as a foreign terrorist organization. | Undisputed. |
| 141.   Former Secretary of State John Kerry described the conflicts in Gaza as "war" in three public speeches and in one television appearance. | Undisputed that the cited documents speak for themselves; not as to any conclusion, etc. therefrom.<br><br>Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>*Universal's evidence*:<br><br>• Rebuttal Declaration of |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
|  | Ambassador Dennis Ross ("Rebuttal Ross Decl.") Ex. B (Rebuttal Expert Report of Amb. Ross), p. 10 ("Any short hand colloquial references by the Secretary of State to 'war' does not convert the hostilities into something different than what U.S. foreign policy already has recognized to be terrorism.").<br><br>• Sagalow Decl., Ex. D (Expert Report of Sagalow), ¶¶ 83-90 (detailing insurance industry custom and practice, *e.g.*, ¶ 89: "even though the same word (e.g., 'war') may have another colloquial meaning, when the insurer is considering coverage pursuant to the terms of an insurance policy, the custom and practice is for the insurer to use the insurance industry meaning of such words used in the policy, not their colloquial meaning or the broad use such words may have in the press or by politicians.") [ECF |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | No. 61-6].
• *Holiday Inns*, 571 F. Supp. at 1464 ("In commercial litigation arising out of insurance policies, words and phrases are construed 'for insurance purposes' – a context quite different from those of politics or journalism."). |
| 142.   The Australian Minister of Foreign Affairs, Julie Bishop, stated in 2014: "The actions of *militants* in Gaza, who are firing rockets indiscriminately into Israel, are inexcusable and must be condemned." (emphasis added). | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.
Further, in the context of this case and policy at issue, the "militants" reference is irrelevant (Fed. R. Evid. 401, 402, 403). *Weiss v. Arab Bank, PLC*, 2007 U.S. Dist. LEXIS 94029, at *14-20 (E.D.N.Y. Dec. 21, 2007) (Hamas is a terrorist group and cannot constitute a "military force of any origin"). |
| 143.   Hillary Clinton stated in an interview quoted in *The Atlantic* dated August 10, 2014, in response to a question of whether Israel had done enough to prevent the recent deaths of children and other innocent people, that "it's impossible to know what happens in | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.
Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. |

Mitchell Silberberg & Knupp LLP

PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| the fog of war." | Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br><br> *See also* Universal's evidence in response to ¶ 141 above. |
| 144.   Minnesota Congressman Keith Ellison was quoted as stating, in regard to the 50-Day War, that "There is no military solution to this conflict. The status quo brings only continued pain, suffering and war." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. <br><br> Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br><br> *See also* Universal's evidence in response to ¶ 141 above. |
| 145.   In discussing July 2014 airstrikes on Gaza by Israel, Nabil Abu Rudeineh, an Israeli Presidential spokesman, called the airstrikes a "declaration of war on Palestinians and the Israeli authority alone will bear the consequences. . . . Palestinians have the right to defend themselves by all legitimate means." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. <br><br> Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br><br> *See also* Universal's evidence in response to ¶ 141 above. |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| 146.   Israeli representative David Yitshak Roet stated, during the 7,222nd Meeting of the United Nations Security Council, on July 22, 2014: "Hamas is determined to wage war." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.<br><br>Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>*See also* Universal's evidence in response to ¶ 141 above. |
| 147.   Hamas made clear in statements published on the Qassam Brigades' website that its operations against Israel were "part of the response campaign against the occupation assault on the Gaza Strip, and the continued targeting of Palestinian civilians and their installations in the West Bank." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom. |
| 148.   The Qassam Brigades, Hamas's military wing, stated on their website on August 20, 2014, the  purpose of its fighting during the 50-day war: "The occupiers, and the entire world, should comprehend the truth about what our people are demanding. All we seek is | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom.<br><br>**Disputed** as to Atlantic's characterization, which is also irrelevant (Fed. R. Evid. 402), improper lay |

PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS

Mitchell Silberberg & Knupp LLP

| | DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|---|
| | for the occupation to leave us alone and stop controlling our food, the milk of our children and our fuel. However, the occupiers insist on keeping us on a leash, suffocating us or allowing us to breathe when they will and only as much as they will. The occupiers will not be allowed to continue to do so after this day, God-willing." | opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| | 149.   The Qassam Brigades have stated on their website that one of their goals is to: "Liberate Palestinians and the land usurped by the Zionist occupation forces and settlers." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom. |
| | 150.   The Max Security reports the Plaintiffs were receiving recognize "the Hamas Government." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom.<br><br>Further, the cite document is by a third party, and in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>*See also* Universal's evidence in |

Mitchell Silberberg & Knupp LLP

123

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| | response to ¶ 15 above. |
| 151.   In an *Israel Dig Update* prepared by the plaintiffs' security team, NBCU recognized the "Hamas-governed Gaza Strip." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom.  Further, a colloquial description dating to 2012 in the context of this case and policy at issue, is irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| 152.   The United States Congressional Research Service has referred to the Qassam Brigades as Hamas's "militia." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 401, 402, 403).  *Weiss v. Arab Bank, PLC*, 2007 U.S. Dist. LEXIS 94029, at *14-20 (E.D.N.Y. Dec. 21, 2007) (Hamas is a terrorist group and cannot constitute a "military force of any origin").  Also improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| DEFENDANT'S ALLEGEDLY UNCONTROVERTED FACT | DISPUTED / UNDISPUTED DEFENDANT'S ALLEGED EVIDENCE AND CONTROVERTING EVIDENCE |
|---|---|
| 153.   The Plaintiffs' representatives used the word "militants" and "military" to refer to the Hamas forces. | Undisputed that the cited documents speak for themselves; not as to any conclusion, etc. therefrom.<br><br>Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 401, 402, 403).  *Weiss v. Arab Bank, PLC*, 2007 U.S. Dist. LEXIS 94029, at *14-20 (E.D.N.Y. Dec. 21, 2007) (Hamas is a terrorist group and cannot constitute a "military force of any origin").  Also improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |

## UNIVERSAL'S ADDITIONAL MATERIAL FACT AND SUPPORTING EVIDENCE

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
| 154.   Atlantic issued its first of five production policies to NBCUniversal Media, LLC ("NBCUniversal") effective as of January 1, 2010. | Declaration of Andrea Garber in Support of Universal's Motion for Summary Judgment ¶ 3 [ECF No. 61-8] ("Garber Decl."); Declaration of Kurt Ford in Support of Universal's Motion for Summary Judgment, ¶ 3 [ECF No. 61-7] ("Ford Decl."); FAC ¶17 [attached as Ex. 18 to Declaration of Lucia Coyoca in |

125

Mitchell Silberberg & Knupp LLP

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
|  | Support of Universal's Motion for Summary Judgment [ECF No. 61-10 - 61-12] ("Coyoca Decl.")]; Answer ¶17 [attached as Ex. 19 to Coyoca Decl.]; Deposition of Peter Williams ("Williams Dep.") 58:14-18 [attached as Ex. 43 to Coyoca Decl.]; Universal's Request for Judicial Notice in Support of Motion for Summary Judgment, p. 1 [ECF No. 62] ("RJN"). |
| 155.   Aon/Albert G. Ruben Insurance Services, Inc. ("Aon"), NBCUniversal's insurance broker, negotiated the placement of the policy with Atlantic. | Garber Decl. ¶ 2; Policy, Garber ¶ 3, Ex. 2, p. 7; Williams Dep. 74:6-12 [attached as Ex. 43 to Coyoca Decl.]; Ford Decl. ¶ 3; Declaration of George Walden ("Walden Decl.") ¶¶ 1, 3. |
| 156.   Aon provided an initial draft policy form to Atlantic in fall 2009. | Walden Decl. ¶ 5. |
| 157.   The policy draft exchanged between the parties on December 6, 2009, had exclusions for:  A.   War, including undeclared or civil war; or  B.   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military | Walden Decl., ¶¶  8, 9, Ex. 1, p. 24. |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| | UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|---|
| | personnel or other agents; or | |
| | C.    Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. | |
| | Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. | |
| | D.    Any weapon of war employing atomic fission or radioactive force whether in time of peace or war; | |
| | E.  Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, C[sic] contributed to, or aggravated by the peril or perils insured in this policy. However, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is covered; | |
| 158.   On behalf of NBCUniversal Media LLC ("NBCUniversal"), George Walden of Aon negotiated the policy terms with Atlantic underwriters Martin Ridgers and Wanda Phillips, over the course of several months in late 2009 and early 2010. | | Walden Decl. ¶¶ 3-24, Exs. 1-5. |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
| 159.   Atlantic made revisions and changes to the policy form provided by Aon, as tracked in the several drafts exchanged between the parties in December, 2009. | Walden Decl. ¶ 8, 9, 17-20, Exs. 1-4. Declaration of Lucia Coyoca re: Opposition to Atlantic's Motion for Summary Judgment ("Second Coyoca Decl."), ¶¶  2, 3, Exs. 51, 52. |
| 160.   On December 16, 2009 Martin Ridgers sent George Walden an email regarding the drafting of the Policy, stating:<br><br>. . . I have attached [sic] the changes to the document, you should not find anything that significantly changes the coverage as we have discussed.  Please let NBC know we are working very hard to provide a broader form.  Again I have made some formatting changes but not all and I have marked in purple the reference to the conditions that I must restated. [sic] | Walden Decl. ¶ 17, Ex. 2, p. 79. |
| 161.   In the policy draft attached to the above email, showing Mr. Ridger's changes, one of the changes appears in the "War Exclusions" section, below the Aon draft exclusion for loss caused by a "weapon of war."  Underlines in the draft show that the following language was added, and the crossed-out language from the earlier draft removed: | Walden Decl. ¶ 17; Ex. 2, pp. 91-92. |

Mitchell Silberberg & Knupp LLP

128

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| | UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|---|
| | E Any weapon employing atomic fission, atomic fusion or radioactive force; or

 (b) Nuclear reaction or radiation, or radioactive contamination from any other cause.  But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the direct loss or damage caused by that Fire if the fire would be covered under this policy.

~~E.  Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, C[sic] contributed to, or aggravated by the peril or perils insured in this policy. However, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is covered;~~

(Formatting anomalies are as they appear in the draft.) | |
| 162.   On December 16, Mr. Ridgers wrote to Mr. Walden regarding the Policy draft:

I believe unless there are some major problems this will not be changed significantly as we have already | Second Coyoca Decl. ¶ 2, Ex. 52. |

Mitchell Silberberg & Knupp LLP

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
| reviewed the wording overall.<br><br>The present wording is not properly formatted and we may have to amend some of the punctuation when we move items around and but [sic] there is intended to be no wording changes. | |
| 163.   On December 17, 2009, Wanda Phillips of Atlantic sent an email to George Walden of Aon and Martin Ridgers of Atlantic, stating:  "[w]e are in agreement to use the form dated 12-17-2009 Martin's Final Form." | Walden Decl. ¶ 20, Ex. 4, p. 178. |
| 164.   In a response to Wanda Phillip's December 17, 2009 email on the same day, Atlantic confirmed that it agreed to bind the Policy based on the language agreed to in "Martin's Final Form." | Walden Decl. ¶ 21, Ex. 4, p. 178. |
| 165.   The war exclusions in the document 12-17-2009 Martin's Final Form excluded coverage for loss or damage caused directly or indirectly by:<br><br>A.   War, including undeclared or civil war; or<br><br>B.   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military | Walden Decl. ¶¶ 18, 19, Ex. 3, p. 125-26, *see also* p. 157. |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| | UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|---|
| | personnel or other agents; or | |
| | C.   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. | |
| | Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. | |
| | D.   Any weapon of war employing atomic fission or radioactive force, whether in time of peace or war; | |
| | E.   Any weapon of war employing atomic fission or radioactive force; or | |
| | (b) Nuclear reaction or radiation, or radioactive contamination from any other cause.  But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the direct loss or damage caused by that fire if the fire would be covered under this policy. | |
| | (Formatting anomalies in original.) | |
| | 166.   None of the terms used in the "war exclusions" above are defined in the Policy. | Policy, Garber Decl. ¶ 3, Ex. 2, p. 17; Williams Dep. 74:6-12 [attached as Ex. 43 to Coyoca Decl.]. |
| | 167.   Aon (on behalf of NBCUniversal) and Atlantic continued after December 17, 2009 to negotiate other policy terms and provisions, but they did not make any other revisions or changes to the | Walden Decl. ¶ 24. |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
| War Exclusions. | |
| 168.   On or about March 26, 2010, Atlantic sent Aon a final, formatted version of the policy. | Walden Decl. ¶ 24, Ex. 5 |
| 169.   In that final, formatted version of the policy, the word "employing" in the "weapon of war" section was changed to "including." | Walden Decl. ¶ 24, Ex. 5, p. 199. |
| 170.   Atlantic *never* disclosed to Aon or NBCUniversal that it had changed the language of the War Exclusions to something different than what was agreed to in December, 2009, and certainly not anything broader. | Walden Decl. ¶¶ 25, 27. |
| 171.   The Policy, in its final form, excludes from coverage losses caused by:<br><br>1.  War, including undeclared or civil war; or<br><br>2.  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or,<br><br>3.  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.  Such | Policy, General Conditions § III.1-4, Garber Decl. ¶ 3, Ex. 2, p. 17; Williams Dep. 74:6-12 [attached as Ex. 43 to Coyoca Decl.]. |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| | UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|---|
| | loss or damage is excluded regardless of any other cause or event contributed concurrently or in any sequence to the loss.<br><br>4.  Any weapon of war including atomic fission or radioactive force, whether in time of peace or war….<br><br>None of the words used in the war exclusions are specifically defined in the policy. | |
| | 172.   Insurance Services Office, Inc. (ISO) form number CG 00 02 04 13 and form number CA 00 20 03 10 both have exclusions for:<br><br>**(1)** War, including undeclared or civil war;<br><br>**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or<br><br>**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. | Second Coyoca Decl., ¶¶ 4, 5, Ex. 53. |
| | 173.   ISO form number CA 00 20 03 10 also has a Nuclear Hazard exclusion for:<br><br>(1) The explosion of any weapon | 2nd Coyoca Decl., ¶ 5, Ex. 54 ((CA 00 20 03 10), p. (11). |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| | UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|---|
| | employing atomic fission or fusion; or<br><br>(2) Nuclear reaction or radiation, or radioactive contamination, however caused. | |
| | 174.   ISO is an insurance industry organization that collects statistical data, promulgates rating information, and develops standard policy forms that are widely used in the insurance industry. | Rebuttal Expert Witness Report of Ty R. Sagalow, Ex. A to Declaration of Ty R. Sagalow re: Opposition to Atlantic's Motion for Summary Judgment ("Second Sagalow Decl."), p. 25 n.49. |
| | 175.   Another Atlantic entertainment production policy, issued to a third party, has an exclusion for:<br><br>(2) (a) War, including undeclared or civil  war;<br><br>   (b) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or<br><br>   (c) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.<br><br>(3) (a) Any weapon employing atomic fission, atomic fusion or radioactive force; or<br><br>   (b) Nuclear reaction or radiation, or radioactive contamination from any | Second Coyoca Decl., ¶ 6, Ex 55. |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
| other cause. But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the direct loss or damage. | |
| 176.   Atlantic knows how to draft a terrorism exclusion. | Coyoca Decl. ¶ 20, Ex. 36; RJN p. 5. |
| 177.   Atlantic's claims investigator, Daniel Gutterman, testified that it is hard to define what war is but that "I just know it when I see it." | Gutterman Dep. 45:7-11 [attached as Ex. 44 to Coyoca Decl.]. |
| 178.   Hamas has been designated as a terrorist organization by the U.S. government since 1997. | Declaration of Dr. Matthew Levitt ("Levitt Decl.), Ex. A, p. 11 [ECF No. 61-3]; Declaration of Ambassador Dennis Ross ("Ross Decl.") Ex. B, ¶¶ 10, 23 [ECF No. 61-4]; Declaration of Harold Koh [ECF No. 61-5]("Koh Decl.") Ex. C (Expert Report of Harold Koh), p. 16; Coyoca Decl. ¶¶ 5, 6, Exs. 21, 22; RJN pp.1-2. |
| 179.   U.S. Presidents, including President Nixon and President Reagan, have spoken about the country's "War on Drugs." | Coyoca Decl. ¶ 7, 8, Ex. 56, 57. |
| 180.   U.S. President Lyndon B. Johnson declared a "War on Poverty" in his 1964 State of the Union Address. | Second Coyoca Decl. ¶ 9, Ex. 58. |
| 181.   Media outlets including Fox News and the New York Times have reported on the "War on Christmas," including reports that then-president-elect Donald | Second Coyoca Decl., ¶¶ 11-13, Exs. 60, 61, 62. |

Mitchell Silberberg & Knupp LLP

135

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
| Trump had weighed in on the "war." | |
| 182.   Interpreters of international humanitarian law, including the states that are parties to the Geneva Convention, may broadly apply the term "armed conflict" and invoke broad application of traditional international law rules of jus ad bellum (the law that governs when a state may go to war) and *jus et bello* (the law regarding the conduct of war, particularly the treatment of civilians and other noncombatants) to terrorist acts in order to ensure that terrorists cannot escape legal responsibility under *international humanitarian law*. | Rebuttal Expert Report of Prof. Harold Hongju Koh, Ex. C to Declaration of Prof. Harold Hongju Koh re: Universal's Opposition to Atlantic's Motion for Summary Judgment ("Second Koh Decl."), ¶ 6. |
| 183.   Atlantic's denial letter and its subsequent September 19, 2014 response letter cited authorities holding that "war" requires hostilities between sovereign or quasi-sovereigns, and argued that there was a war here because Hamas is a quasi-sovereign. | Denial Letter, Garber Decl. ¶18, Ex. 12, p. 88; Gutterman Dep. Ex. 20 ("Response Letter"), pp. 260-61 [attached as Ex. 35 to Coyoca Decl.]; Coyoca Decl. ¶ 19. |
| 184.   The insurance industry did not exclude 9/11 losses based on application of any war exclusions, recognizing that they were terrorist acts. | Declaration of Ty R. Sagalow, Ex. D ("Expert Report of Ty R. Sagalow"), ¶ 72 [ECF No. 61-6]; Williams Dep. 101:6-21 [attached as Ex. 43 to Coyoca |

136

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
|  | Decl.]; Second Coyoca Decl. ¶ 14-16, Exs. 63-65. |
| 185.   Israeli's military responses to the rockets fired by Hamas took place in Gaza. | Atlantic's SUF Nos. 47, 48, 51; Dr. Matthew Levitt Expert Rebuttal Report, Exhibit D to Declaration of Matthew Levitt re: Opposition to Atlantic's Motion for Summary Judgment ("Second Levitt Decl."), p. 8.; Coyoca Decl. Ex. 29, p. 188. |
| 186.   *Dig* filming was scheduled to take place in and around Israel, and specifically Jerusalem, when production resumed.  There was no plan to film in Gaza. | Garber Decl. ¶¶ 8, 9, Ex. 5, p. 67, and Ex. 6, p. 68. |
| 187.   Hamas' indiscriminate firings of rockets into Israel lack directional controls to ensure they are hitting military (and not civilian) targets and are not for any military advantage. | Levitt Decl. Ex. A, pp. 24, 29; Koh Decl. Ex. C, pp. 14-15, 17. |
| 188.   The 1948 Arab-Israeli war was fought between Israel and a coalition of Arab nations – Egypt, Transjordan (Jordan), Iraq, Syria, and Lebanon. | Atlantic's SUF No. 3; Levitt Decl. Ex. A, p. 7; Second Coyoca Decl. ¶ 16, Ex. 65 (encyclopedia brittanica on Arab-Israeli war. |
| 189.   "Insurgency" is defined as "an organized effort by a group of armed rebels to overthrow the civilian government of a State, and to install | Second Koh Decl. Ex. C, ¶ 3; Expert Rebuttal Report of Ambassador Dennis Ross, attached as Ex. B to Declaration of Ambassador Dennis Ross re: Universal's |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
| itself instead as the legitimate successor government of the State." | Opposition to Atlantic's Motion for Summary Judgment, ¶ 21. |
| 190. Hamas' founding charter states: "Israel will exist and will continue to exist until Islam will obliterate it, just as it obliterated others before it." | Coyoca Decl. ¶ 43, Ex. 50, p. 489. |
| 191. Hamas' rocket attacks in July 2014 were not to unseat the Prime Minister of Israel or take over the Israeli Knesset, but to retaliate for the Israeli allegations that Hamas was responsible for the kidnapping and murder of the three Israeli teens earlier in the summer, and terrorize Israel's civilian population. | Levitt Decl. Ex. A, pp. 23-25. |
| 192. Atlantic's own senior claims supervisor charged with overseeing the Dig Claim testified that Exclusion 3 did not apply, stating: "the third [exclusion] I don't think is applicable, and so necessarily we wouldn't have included it in the letter." | Gooley Dep. 18:14-15; 151:16-152:2; 217:22-218:3; 220:6-9; 220:14-17 [attached as Ex. 45 to Coyoca Decl.]. |
| 193. Aon and Atlantic never discussed changing the specific language of the "weapon of war" exclusion from how it was stated in "12-17-2009 Martin's Final Form," specifically, "Any weapon of war employing atomic fission or radioactive | Walden Decl. ¶ 19 – 23, 25-27, Ex. 3 at Ex. 3, p. 125-26, *see also* p. 157. |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
| force, whether in time of peace or war" and never agreed to broaden its applicability or to change the word "employing" to "including." | |
| 194.   George Walden, who negotiated the Policy on NBCUniversal's behalf, understood that the language of the Policy the parties were agreeing to bind was as set forth in "12-17-2009 Martin's Final Form." | Walden Decl. ¶ 23. |
| 195.   No one from Atlantic ever disclosed or indicated to Aon that Atlantic was revising the weapon of war exclusion to change "employing" to "including" or that Atlantic was attempting to broaden the scope of the "weapon of war" exclusion. | Walden Decl. ¶ 25. |
| 196.   For an insurer to change language in a policy form after prior language has already been agreed to by the parties, and to intend that change to substantively change the terms of coverage, is an unacceptable practice under industry standards and tantamount to fraud on the insured. | Second Sagalow Decl., Ex. A, ¶ 74-76. |
| 197.   It is an insurance industry standard that "the meaning and application of | Second Sagalow Decl., Ex. A, ¶ 76. |

139

Mitchell Silberberg & Knupp LLP

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
| insurance provisions at the time of a claim must be consistent with the course of dealings between the insured and the carrier's underwriter who underwrote the particular policy." | |
| 198.   Immediately following Exclusion 4 in the Policy is another exclusion (number 5) for "Nuclear reaction or radiation, or radioactive contamination from any other cause." | Policy, General Conditions, § III.5, Garber Decl. ¶ 3, Ex. 2, pp. 17-18; Williams Dep. 74:6-12 [attached as Ex. 43 to Coyoca Decl.]. |
| 199.   Hamas' indiscriminate firings of rockets that lack directional controls to ensure they are hitting military (and not civilian) targets constitute acts of terrorism and are not for any military advantage. | Levitt Decl. Ex. A, pp. 24, 29; Koh Decl. Ex. C, pp. 14-15, 17. |
| 200.   Teresa Gooley, Atlantic's senior claims supervisor testified that Exclusion 3 did *not* apply. | Gooley Dep. 18:14-15; 151:16-152:2; 217:22-218:3; 220:6-9; 220:14-17 [attached as Ex. 45 to Coyoca Decl.]. |
| 201.   Peter Williams was the President and Chief Underwriting Officer of the Entertainment Division of Atlantic at the time the Motion Picture/Television Producers Portfolio insurance policy was issued.  He was "in charge of approving the terms of the policy to be issued." | Declaration of Peter Williams in Support of Atlantic's Motion for Summary Judgment, ¶ 2 [ECF No. 58-2]. |
| 202.   Mr. Williams testified that | Williams Dep. 23:2-23; 30:13-21; 252:7- |

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
| Exclusion 4 did not apply because no weapons employing atomic fission or radioactive force were used. | 22 [attached as Ex. 43 to Coyoca Decl.]. |
| 203.   Atlantic had not previously considered application of a war exclusion in its history, before the *Dig* Claim. | Stipulation re: Joint Discovery [attached as Ex. 66 to Second Coyoca Decl]; Deposition of Teresa Gooley ("Gooley Dep.") 38:5-10 [attached as Ex. 67 to Second Coyoca Decl.]. |
| 204.   Atlantic took only two days to decide the *Dig* claim. | Gooley Dep. 39:15-17, 40:1-5, 169:5-8, 170:14-25, 184:17-25 [attached as Ex. 67 to Second Coyoca Decl.]. |
| 205.   Teresa Gooley, the supervising claims examiner for the *Dig* Claim, could not recall any other Atlantic claim where a coverage determination was made in two days – a 'fairly expedited' time frame. | Gooley Depo 180:19-25, 181:1-5 [attached as Ex. 67 to Second Coyoca Decl.]. |
| 206.   Ms. Gooley testified that while Atlantic always wants to do a thorough investigation, there is always a "balancing of facts and time" and "whether the insured needs an answer quickly," resulting in "time pressure." | Gooley Depo 52:2-14  [attached as Ex. 67 to Second Coyoca Decl.]. |
| 207.   Ms. Gooley testified that Atlantic "moved as quickly as we could on this particular claim" knowing that the Insured wanted an answer right away, | Gooley Depo 178:22-25, 179:1-2 [attached as Ex. 67 to Second Coyoca Decl.]. |

Mitchell
Silberberg &
Knupp LLP

PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
| and that "Aon had pushed OneBeacon [Atlantic] very hard to get an answer as soon as possible…" | |
| 208.   Atlantic's actual investigation was limited to reviewing information about the situation in Israel on the internet, doing Google searches, and reviewing one legal case. | Second Coyoca Decl. ¶¶ 20-23, Exs. 69-72 ; Gooley Dep. 103:1-22 [attached as Ex. 67 to Coyoca Decl.]; Gutterman Depo. 205:3-207:11 [Ex. 69 to Coyoca Decl.]. |
| 209.   In its denial letter,  Atlantic stated that terrorism coverage did not apply, quoting an endorsement to the Policy involving the Terrorism Risk Insurance Act of 2002 ("TRIA"), stating that for that coverage to be triggered the terrorist act "must be part of an effort to coerce or influence the United States population or government" and "the U.S. Secretary of the Treasury must certify the event as acts of terrorism," so there was no coverage. | Denial Letter, Garber Decl. ¶18, Ex. 12. |
| 210.   In fact, there was no terrorism exclusion, and terrorism was covered under the Policy. | Williams Dep. 93:3-6, 94:4-7; 144:21-145:13 [attached as Ex. 43 to Coyoca Decl.]; Gooley Dep. 188:14-190:4; 197:20-198:11 [attached as Ex. 67 to Second Coyoca Decl.]. |
| 211.   Atlantic's September 19, 2014 response letter confirming denial of the | Response Letter, Coyoca Decl. ¶ 19, Ex. 35. |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
| claim, Atlantic conceded that the TRIA endorsement did not apply and acknowledged that there was no terrorism exclusion in the policy. | |
| 212.   Teresa Gooley testified that the "Terrorism coverage" portion of the denial letter was not correct and should not have been referenced in the denial letter. | Gooley Dep. 188:14-190:4; 197:20-198:11 [Attached as Ex. 67 to Second Coyoca Decl.] |
| 213.   Atlantic did not reevaluate whether the hostilities in Israel constituted terrorism rather than war, and reevaluate the Claim in light of the fact that the Policy did *not* exclude coverage for acts of terrorism. | Sagalow Decl. Ex. D, ¶ 128. Gooley Dep. 253:9-256:1 [Attached as Ex. 67 to Second Coyoca Decl.]. |
| 214.   Atlantic failed to investigate or take into consideration the longstanding designation by the U.S. government of Hamas' status as a terrorist organization, or evaluate the ramifications of taking a position as to Hamas' status that was not in accord with that of the U.S. government. | Gutterman Dep. 267:14-268:23 [Attached as Ex. 68 to Second Coyoca Decl.] ; Gooley Dep. 142:3-25 [Attached as Ex. 67 to Second Coyoca Decl.]; Sagalow Decl. Ex. D, ¶ 73; Levitt Decl. Ex. A, p. 11; Declaration of Ambassador Dennis Ross ("Ross Decl.") Ex. B (Export Report of Amb. Dennis Ross), ¶¶ 10, 23; Declaration of Harold Koh ("Koh Decl.") Ex. C (Expert Report of Harold Koh), p. 16; Coyoca Decl. ¶¶ 5, 6, Exs. 21, 22; RJN pp.1-2. |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
| 215. Atlantic did not review whether the attacks by Hamas were terrorism. | Gooley Dep. 103:1-22 [attached as Ex. 67 to Second Coyoca Decl.]; Gutterman Depo  264:11-17 [attached as Ex. 68 to Second Coyoca Decl.]. |
| 216. Atlantic's own General Claim Practices guidelines state a claims examiner must "determine the need for outside vendors to assist in the investigation." | Coyoca Decl. Ex. 73. |
| 217. Atlantic determined it did not need an outside vendor to assist in its investigation/claims analysis. | Gooley Dep. 50:3-17; 171:7-15 [attached as Ex. 67 to Second Coyoca Decl.]; Gutterman Dep. 302:4-21 [attached as Ex. 68 to Second Coyoca Decl.]. |
| 218. Atlantic did not consult with any experts on the Middle East region when deciding whether to cover the Claim. | Gooley Dep. 171:7-16 [attached as Ex. 67 to Second Coyoca Decl.]. |
| 219. Atlantic's claims department did not have experience with applying the war exclusion to productions in Middle East. | Gooley Dep. 38:5-15; 105:8-109:24 [attached as Ex. 67 to Second Coyoca Decl.]; Gutterman Dep: 77: 8-78:20; 80:18-81:2; 112:17-; 205:3-207:11 [attached as Ex. 68 to Second Coyoca Decl.]. |
| 220. The claims examiners at Atlantic did not ask the underwriter about "standard terms" (e.g. no terrorism exclusion) and various risk management security measures considered when the | Gutterman Depo 298:13-25, 299:1 [attached as Ex. 68 to Second Coyoca Decl.]; Gooley Dep. 61:23-62:20; 275:9-12 [attached as Ex. 67 to Second Coyoca Decl.]. |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| UNIVERSAL'S ADDITIONAL MATERIAL FACT | EVIDENCE |
|---|---|
| Policy was underwritten. | |
| 221.   Atlantic's claims examiner testified that when there is a question about the scope of coverage, "Usually I discuss it with my supervisors, and then discuss it with the underwriters to see what their intent was." | Gutterman Depo 172:15-19, 174:16-23 [attached as Ex. 68 to Second Coyoca Decl.]. |
| 222.   Industry custom and practice is to obtain clarification from the underwriter when the insurance company is considering denying coverage based on an exclusion limiting coverage. | Sagalow Decl., Ex. D ¶ 111(m); Second Sagalow Decl., Ex. A, ¶ 52. |
| 223.   Neither the US Government nor Israel officially characterized the 2014 conflict with Hamas as a war. | Second Levitt Decl., Ex. D, ¶ 15. |

Respectfully submitted,

DATED:  MAY 1, 2017                    MITCHELL SILBERBERG & KNUPP LLP


By:  /s/ Lucia E. Coyoca
                Lucia E. Coyoca
                Attorneys for Plaintiffs
                Universal Cable Productions LLC and
                Northern Entertainment Productions LLC

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND ADDITIONAL MATERIAL FACTS**