1  MARC J. SHRAKE (SBN 219331)
    mjs@amclaw.com
2  ANDERSON, MCPHARLIN & CONNERS LLP
   707 Wilshire Boulevard, Suite 4000
3  Los Angeles, California 90017-3623
   Telephone: (213) 236-1691
4  Facsimile: (213) 622-7594

5  MICHAEL KEELEY *(Pro Hac Vice)*
    michael.keeley@strasburger.com
6  TONI SCOTT REED *(Pro Hac Vice)*
    toni.reed@strasburger.com
7  CARLA C. CRAPSTER *(Pro Hac Vice)*
    carla.crapster@strasburger.com
8  STRASBURGER & PRICE, LLP
   901 Main Street, Suite 6000
9  Dallas, Texas 75202
   Telephone: (214) 651-4300
10 Facsimile: (214) 651-4330

11 Attorneys for Defendant
   Atlantic Specialty Insurance Company
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                     WESTERN DIVISION

16

17 UNIVERSAL CABLE                    Case No. 2:16-cv-04435-PA-MRW
   PRODUCTIONS LLC, a Delaware
18 limited liability company, and     **DEFENDANT ATLANTIC**
   NORTHERN ENTERTAINMENT             **SPECIALTY INSURANCE**
19 PRODUCTIONS LLC, a Delaware        **COMPANY'S REPLY TO**
   limited liability company,         **PLAINTIFFS' OBJECTIONS TO**
20                                     **EVIDENCE**
          Plaintiffs,
21                                     *[Filed concurrently with Reply in Support of*
     vs.                              *Summary Judgment; Declaration of Carla C.*
22                                     *Crapster, Reply to Plaintiffs' Statement of*
   ATLANTIC SPECIALTY                 *Genuine Issues and Additional Material Facts,*
23 INSURANCE COMPANY, a New York      *and Atlantic's Other Rebuttal Evidence;*
   insurance company,                 *Objections to Plaintiffs' Opposition Evidence;*
24                                     *Request for Judicial Notice; and Volume of*
          Defendant.                  *Evidence]*
25

26

27

28

   ──────────────────────────────────────────────
        **ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1   **Atlantic's Separate Statement Paragraph 4:**

2        The plaintiffs object to Separate Statement Paragraph 4. The fact states "Almost

3    700,000 Palestinians were driven or fled from their homes as a result of the 1947 and

4    1948 'Arab-Israeli war.'"

5        The plaintiffs object to the fact on the grounds that it is irrelevant. Fed. R. Evid.

6    402.

7   **Atlantic's response to this objection is as follows:**

8        The fact is relevant to provide the court with a foundation of the relationship

9    between Israel and Hamas, which demonstrates that, as in the past, the hostilities built

10    and turned into a full-scale war, thus showing the full picture of the devastation of and

11    extent of this conflict, which relates to whether it was a war in the minds of the people

12    and according to the ordinary meaning of the word. (Fed. R. Evid. 401). In addition,

13    unexplained relevancy objections are not proper in the context of a motion for

14    summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-

15    BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the

16    fact that a statement may be irrelevant has no bearing upon a motion for summary

17    judgment. A [court] can award summary judgment only when there exists no genuine

18    dispute of material fact. It cannot rely on irrelevant facts; thus, relevance objections are

19    redundant."). What the plaintiffs should be doing is arguing to the Court (in their

20    briefing) why this fact does not matter. *Id.* A relevance objection with no explanation is

21    "redundant" and meaningless in the context of summary judgment. *Id.*

22   **Atlantic's Separate Statement Paragraph 5:**

23        The plaintiffs object to Separate Statement Paragraph 5. The fact states "The

24    Palestinians who remained in the West Bank and Gaza following the 'Arab-Israeli war'

25    were subject to either Egyptian, Jordanian, or Israeli rule."

26        The plaintiffs object to the fact on the grounds that it is irrelevant. Fed. R. Evid.

27    402. In addition, Plaintiff objects to the supporting statements from the article

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  authored by Jim Zanotti (Atlantic's Ex. 4) on the grounds that (1) they constitute

2  inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2)

3  there is no evidence sufficient to support a finding that Mr. Zanotti has personal

4  knowledge of the factual matter stated (Fed. R. Evid. 602).

5  **Atlantic's response to this objection is as follows:**

6      The fact is relevant to provide the court with a foundation of the relationship

7  between Israel and Hamas and the context of the history and continuing conflict

8  between the Palestinian and Israeli people, which relates to whether the summer 2014

9  conflict was a war according to its ordinary meaning, whether there was warlike action

10  by either side, and whether this conflict was an insurrection, rebellion, or revolution. R.

11  Evid. 401). In addition, unexplained relevancy objections are not proper in the context

12  of a motion for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-

13  13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13,

14  2014) ("the fact that a statement may be irrelevant has no bearing upon a motion for

15  summary judgment. A [court] can award summary judgment only when there exists no

16  genuine dispute of material fact. It cannot rely on irrelevant facts; thus, relevance

17  objections are redundant."). What the plaintiffs should be doing is arguing to the Court

18  (in their briefing) why this fact does not matter. *Id.* A relevance objection with no

19  explanation is "redundant" and meaningless in the context of summary judgment. *Id.*

20      The plaintiffs refer to the Jim Zanotti report as an "article," when in reality the

21  report is prepared for members and committees of Congress through the

22  Congressional Research Service. The Congressional Research Service (CRS) is a

23  legislative branch agency within the Library of Congress, which provides policy and

24  legal analysis to committees and members of both the House and Senate. *See* Atlantic

25  Specialty Insurance Company's Reply to Plaintiffs' Statement of Genuine Issues and

26  Additional Material Facts, and Atlantic Specialty's Other Rebuttal Evidence in Support

27

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  of Its Reply ("RSI")[1] 246; Ex. 166 to Defendant Atlantic Specialty Insurance

2  Company's Volume of Evidence in Support of its Reply in Support of its Motion for

3  Summary Judgment or, Alternatively, Partial Summary Judgment ("Atlantic's Evid.").

4  Because the report is prepared by a governmental agency under a duty to prepare these

5  reports, the report (Atlantic's Exhibit 4) falls within the Public Records hearsay

6  exception. Fed. R. Evid. 803(8); *Rothe Dev. Corp. v. United States DOD*, 499 F. Supp. 2d

7  775, 829 n.63 (W.D. Tex. 2007), *reversed on other grounds* ("all evidence before Congress is

8  admissible pursuant to" Rule 803(8)). Furthermore, Defendant maintains that Mr.

9  Zanotti, through his position and experience as a specialist in Middle Eastern Affairs at

10 the CRS, has gained personal knowledge of the factual matters stated within the report.

11 *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of

12 an entity may through the course of his employment obtain personal knowledge of a

13 fact or event, even if the event took place prior to his employment."); *see also Barthelemy*

14 *v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990) (personal knowledge and

15 competence to testify are reasonably inferred from witness's positions and the nature of

16 their participation in the matters at hand).

17 **Atlantic's Separate Statement Paragraph 6:**

18     The plaintiffs object to Separate Statement Paragraph 6. The fact states "In June

19 of 1967, the Six-Day War occurred, in which Israel defeated the Arab states who had

20 styled themselves as Palestinians' protectors."

21     The plaintiffs object to the fact on the grounds that the "…who had styled

22 themselves as Palestinian protectors" part is irrelevant. Fed. R. Evid. 402.

23 **Atlantic's response to this objection is as follows:**

24     The fact is relevant to provide the court with a foundation of the relationship

25 between Israel and Hamas, which demonstrates that, as in the past, the hostilities built

26

27

28

---

[1] Atlantic uses "RSI" to denote other rebuttal evidence it has added in support of its
reply, and "SUF" to denote the statements of uncontroverted facts it filed in support of
its motion for summary judgment.

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1   and turned into a full-scale war, thus showing the context of the history and continuing

2   conflict between the Palestinian and Israeli people, but it also demonstrates that

3   Palestinians have a long history of both fighting Israelis and feeling it necessary to

4   defend themselves from Israelis, which goes to show that this was a war according to

5   its ordinary meaning, that the conflict involved warlike action by both sides, and that

6   this conflict was an insurrection, rebellion, or revolution. (Fed. R. Evid. 401). In

7   addition, unexplained relevancy objections are not proper in the context of a motion

8   for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-

9   BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the

10  fact that a statement may be irrelevant has no bearing upon a motion for summary

11  judgment. A [court] can award summary judgment only when there exists no genuine

12  dispute of material fact. It cannot rely on irrelevant facts; thus, relevance objections are

13  redundant."). What the plaintiffs should be doing is arguing to the Court (in their

14  briefing) why this fact does not matter. *Id.* A relevance objection with no explanation is

15  "redundant" and meaningless in the context of summary judgment. *Id.*

16  **Atlantic's Separate Statement Paragraph 9:**

17         The plaintiffs object to Separate Statement Paragraph 9. The fact states "There

18  are two competing Palestinian political parties or organizations. Fatah is the largest

19  faction of the confederated multi-party Palestinian Liberation Organization, and is

20  currently led by Yasser Arafat's successor, Mahmoud Abbas. Hamas is a Palestinian

21  Islamic military and socio-political movement that formed in 1987. It has maintained its

22  primary base of political support and military command in the Gaza Strip."

23         Plaintiff objects to the supporting statements from the articles authored by Jim

24  Zanotti (Atlantic's Ex. 4 and 8) on the grounds that (1) they constitute inadmissible

25  hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no

26  evidence sufficient to support a finding that Mr. Zanotti has personal knowledge of the

27  factual matter stated (Fed. R. Evid. 602).

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**Atlantic's response to this objection is as follows:**

The plaintiffs refer to the Jim Zanotti reports as "articles," when in reality the reports are official U.S. Government reports prepared for members and committees of Congress through the Congressional Research Service. The Congressional Research Service (CRS) is a legislative branch agency within the Library of Congress, which provides policy and legal analysis to committees and members of both the U.S. House and Senate. RSI 246 (Ex. 166 to Atlantic's Evid., p. 1879). Because the reports are prepared by a U.S. governmental agency under a duty to prepare these reports, the reports (Atlantic Exhibit 4 and 8) fall within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Rothe Dev. Corp. v. United States DOD*, 499 F. Supp. 2d 775, 829 n.63 (W.D. Tex. 2007), *reversed on other grounds* ("all evidence before Congress is admissible pursuant to" Rule 803(8)). Furthermore, Defendant maintains that Mr. Zanotti, through his position and experience as a specialist in Middle Eastern Affairs at the CRS, has gained personal knowledge of the factual matters stated within the report. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the course of his employment obtain personal knowledge of a fact or event, even if the event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to testify are reasonably inferred from witness's positions and the nature of their participation in the matters at hand).

**Atlantic's Separate Statement Paragraph 12:**

The plaintiffs object to Separate Statement Paragraph 12. The fact states "In 2005, Israel unilaterally withdrew its military forces and all of its civilians from Gaza, leaving control to the PA."

The plaintiffs object to the supporting statements from the Human Rights Council Report (Atlantic Ex. 6) on the grounds that they constitute inadmissible hearsay and no exception is applicable. Fed. R. Evid. 801, 802. In addition, The

1  plaintiffs object to the supporting statements of Paragraph A of the Declaration of

2  Frank G. Lowenstein ("Lowenstein Declaration") (Atlantic's Ex. 1) on the grounds

3  that: (1) there is no evidence sufficient to support a finding that Mr. Lowenstein has

4  personal knowledge of Israel "leaving control to the Palestinian National Authority";

5  and (2) to the extent characterized expert opinion, there has been no showing that his

6  statements are based on sufficient facts or data or that they are the product of reliable

7  principles and methods. Fed. R. Evid. 702,703.

8  **Atlantic's response to this objection is as follows:**

9  As evidenced by the report attached as Exhibit No. 165 to Atlantic's Evidence,

10 the United Nations Human Rights Council passed resolution S-21/1, which authorized

11 and dispatched an independent, international commission of inquiry to investigate all

12 violations of international humanitarian law and international human rights law in the

13 Gaza Strip, in the context of the military operations that began in June 2014. The

14 President of the Council appointed three experts to the commission to prepare a report

15 for the Council. *Id.* Because the report was prepared by the Human Rights Council

16 under a duty to prepare the report, the report (Atlantic's Exhibit 6) falls within the

17 Public Records hearsay exception. Fed. R. Evid. 803(8); *Zenith Radio Corp. v. Matsushita*

18 *Elec. Indus. Co.*, 505 F. Supp. 1125, 1187 (E.D. Pa. 1980) (referring to the U.N. as a

19 "supragovernmental agency" and stating "we see treatment of the U.N. … as public

20 officers or agencies as consistent with the theory and raison d'etre of 803(8)"); *United*

21 *States v. Vidacak*, 553 F.3d 344, 351 (4th Cir. 2009) ("Courts regularly admit foreign

22 records pursuant to [803(8)].")"; *United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976)

23 (admitting a Northern Ireland constabulary firearms report under Rule 803(8)).

24 Furthermore, the experts who investigated and authored the report, obtained first-hand

25 interviews from individuals involved the war; and through their experience gained

26 personal knowledge of the factual matters stated within the report. The report's

27 Mandate and Methodology section describes in more detail the expert's personal

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

7

1    knowledge of the facts stated within the report. *Cleveland v. United States*, 546 F. Supp.

2    2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the course of his

3    employment obtain personal knowledge of a fact or event, even if the event took place

4    prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th

5    Cir. 1990) (personal knowledge and competence to testify are reasonably inferred from

6    witness's positions and the nature of their participation in the matters at hand).

7         Concerning the Declaration of Frank G. Lowenstein (Atlantic's Exhibit 1),

8    Lowenstein, through his position as Special Envoy for Israeli-Palestinian Negotiations

9    and as the United States representative to the Middle East Quartet has gained personal

10    knowledge of Israel withdrawing from the Gaza Strip and leaving control of the Strip

11    to the PA. Indeed, in July 2014 Mr. Lowenstein traveled with Secretary Kerry as part of

12    the U.S. efforts to help negotiate a ceasefire agreement between Israel and Hamas.

13    Lowenstein Decl. ¶ 8 at p. 3. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D.

14    Cal. 2008) ("An employee of an entity may through the course of his employment

15    obtain personal knowledge of a fact or event, even if the event took place prior to his

16    employment."); *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206

17    F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed from

18    a declarant's position.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D.

19    Cal. 2007). In addition, Lowenstein's declaration states that all of the facts stated within

20    the Declaration are within his personal knowledge and are true and correct, a statement

21    which plaintiffs have not attempted to rebut. Furthermore, Federal Rules of Evidence

22    702 and 703 are inapplicable because Mr. Lowenstein's declaration is offered as a fact

23    witness rather than as an expert opinion.

24   **Atlantic's Separate Statement Paragraph 13:**

25         The plaintiffs object to Separate Statement Paragraph 13. The fact states "In

26    2006, Hamas was elected to a majority of the seats in the Palestinian Legislative Council

27    (the legislative branch of the PA) and became the governing authority over Gaza."

28

ANDERSON, McPHARLIN & CONNERS LLP

LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  The plaintiffs object to the fact on the grounds that it is irrelevant. Fed. R. Evid.

2  402. In addition, the plaintiffs object to the supporting statements from the Zanotti

3  reports (Atlantic's Exs. 4 and 8) on the grounds that: (1) they constitute inadmissible

4  hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no

5  evidence sufficient to support a finding that Mr. Zanotti has personal knowledge of the

6  factual matter stated (Fed. R. Evid. 602). Furthermore, The plaintiffs object to the

7  supporting statements from the Country Report on Human Rights Practices for Israel

8  and the Occupied Territories (Atlantic's Ex. 5) on the grounds that they: (1) constitute

9  inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2)

10  there is no evidence sufficient to support a finding that the author has personal

11  knowledge of the factual matter stated (Fed. R. Evid. 602). In addition, they argue that

12  judicial notice cannot be taken of Atlantic's characterization of Hamas as "the

13  governing authority over Gaza," because it is not an indisputable fact that is generally

14  known or that can be accurately and readily determined from sources whose accuracy

15  cannot reasonably be questioned. Fed. R. Evid. 201.

16  **Atlantic's response to this objection is as follows:**

17  The fact is relevant to provide the court with context of the history of Hamas,

18  but it also has the tendency to show why Hamas is the de facto government over

19  Gaza—a fact the plaintiffs have made relevant in the suit by arguing that war can exist

20  only between quasi-sovereigns or de facto governments. (Fed. R. Evid. 401). In

21  addition, unexplained relevancy objections are not proper in the context of a motion

22  for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-

23  BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the

24  fact that a statement may be irrelevant has no bearing upon a motion for summary

25  judgment. A [court] can award summary judgment only when there exists no genuine

26  dispute of material fact. It cannot rely on irrelevant facts; thus, relevance objections are

27  redundant."). What the plaintiffs should be doing is arguing to the Court (in their

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  briefing) why this fact does not matter. *Id.* A relevance objection with no explanation is

2  "redundant" and meaningless in the context of summary judgment. *Id.*

3        The plaintiffs refer to the Jim Zanotti reports as "articles," when in reality the

4  reports are prepared for members and committees of Congress through the

5  Congressional Research Service. The Congressional Research Service (CRS) is a

6  legislative branch agency within the Library of Congress, which provides policy and

7  legal analysis to committees and members of both the House and Senate. RSI 246 (Ex.

8  166 to Atlantic's Evid., p. 1879). Because the reports are prepared by a governmental

9  agency under a duty to prepare these reports, the reports (Atlantic Exhibits 4 and 8)

10  falls within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Rothe Dev. Corp.*

11  *v. United States DOD*, 499 F. Supp. 2d 775, 829 n.63 (W.D. Tex. 2007), *reversed on other*

12  *grounds* ("all evidence before Congress is admissible pursuant to" Rule 803(8)).

13  Furthermore, Defendant maintains that Mr. Zanotti, through his position and

14  experience as a specialist in Middle Eastern Affairs at the CRS, has gained personal

15  knowledge of the factual matters stated within the report. *Cleveland v. United States*, 546

16  F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the

17  course of his employment obtain personal knowledge of a fact or event, even if the

18  event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*,

19  897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to testify are

20  reasonably inferred from witness's position and the nature of their participation in the

21  matters at hand).

22  The U.S. State Department's Country Report on Human Rights Practices for Israel and

23  the Occupied Territories (Atlantic's Exhibit 5) is admissible because it falls within a

24  hearsay exception. The United States Congress mandated the State Department to issue

25  Country Reports to provide policymakers with an accurate accounting on human rights

26  conditions in nearly 200 countries and territories worldwide. RSI 247 (Ex. 164 to

27  Atlantic's Evid., p. 1872; Ex. 174 to Atlantic's Evid., p. 1914). The reports are used by

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ANDERSON, McPHARLIN & CONNERS LLP

LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  the U.S. Legislative, Executive, and Judicial Branches as a resource for shaping policy
2  and guiding decisions, informing diplomatic engagements, and determining the
3  allocation of foreign aid and security sector assistance. *Id.* Because the report is
4  prepared by the U.S. State Department, which is under a duty to prepare these reports,
5  the report (Atlantic Exhibit 5) falls within the Public Records hearsay exception. Fed.
6  R. Evid. 803(8); *Doe I v. Liu Qi*, 349 F. Supp. 2d 1258, 1310 n. 39 (N.D. Cal. 2004)
7  ("The State Department's annual human rights reports have been held to fall within the
8  public records exception to the hearsay rule under Fed. R. Evid. 803(8), and is thus
9  admissible."); *Bowoto v. Chevron Corp.*, 557 F. Supp. 2d 1080, 1097 (N.D. Cal. 2008)
10 ("[f]ederal courts regularly rely upon [the State Department's human rights] reports as
11 evidence of a country's human rights situation."); *Bank Melli Iran v. Pahlavi*, 58 F.3d
12 1406, 1411 (9th Cir. 1995) (relying on the annual reports in granting summary judgment
13 on the issue of the fairness of Iranian courts). Furthermore, as an employee of the U.S.
14 State Department, the author has gained personal knowledge of the factual matters
15 stated within the report. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal.
16 2008) ("An employee of an entity may through the course of his employment obtain
17 personal knowledge of a fact or event, even if the event took place prior to his
18 employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990)
19 (personal knowledge and competence to testify are reasonably inferred from witness's
20 positions and the nature of their participation in the matters at hand).

21      The plaintiffs fail to support their assertion that judicial notice may not be taken
22 of the fact. Judicial notice may be taken of historical events, political events and
23 developments. Therefore, the Court may take judicial notice of the historical fact that
24 in 2006, Hamas was elected to a majority of the seats in the Palestinian Legislative
25 Council (the legislative branch of the PA) and became the governing authority over
26 Gaza. *Cactus Corner, LLC v. United States Dep't of Agric.*, 346 F. Supp. 2d 1075, 1099
27 (E.D. Cal. 2004) ("Courts will also take judicial notice of historical happenings and

28

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  events.); *Desir v. Ilchert*, 840 F.2d 723, 730 (9th Cir. 1988) (In a habeas corpus

2  proceeding brought by an asylum applicant, the court took judicial notice of political

3  developments.); *Kaczmarczyk v. INS*, 933 F.2d 588, 594 n.4 (7th Cir. 1991) ("We

4  exercise our discretion to take judicial notice of further changes in Polish politics that

5  occurred between the time of the BIA's decision and our review."); *Peters v. Del. River*

6  *Port Auth.*, 16 F.3d 1346, 1357 (3d Cir. 1994) ("While not critical to our holding, we

7  take judicial notice of newspaper accounts highlighting controversies over the DRPA's

8  toll increases, spending practices, and public announcements.").

9  **Atlantic's Separate Statement Paragraph 14:**

10      The plaintiffs object to Separate Statement Paragraph 14. The fact states "In

11  2007, Hamas's armed forces in Gaza defeated forces loyal to PA President Mahmoud

12  Abbas and consolidated control over the Gaza Strip."

13      The plaintiffs object to the fact on the grounds that it is irrelevant. Fed. R. Evid.

14  402. In addition, the plaintiffs object to the supporting statements from the Country

15  Report on Human Rights Practices for Israel and the Occupied Territories (Atlantic's

16  Ex. 5) on the grounds that they: (1) constitute inadmissible hearsay and no exception is

17  applicable (Fed. R. Evid. 801, 802); and (2) there is no evidence sufficient to support a

18  finding that the author has personal knowledge of the factual matter stated (Fed. R.

19  Evid. 602). The plaintiffs submit further objection to the supporting statements of

20  Paragraph B of the Lowenstein Declaration (Atlantic's Ex. 1) on the grounds that: (1)

21  there is no evidence sufficient to support a finding that Mr. Lowenstein has personal

22  knowledge of Hamas having "consolidated control over the Gaza Strip"; and (2) to the

23  extent characterized expert opinion, there has been no showing that his statements are

24  based on sufficient facts or data or that they are the product of reliable principles and

25  methods. Fed. R. Evid. 702, 703. In addition, they argue that judicial notice cannot be

26  taken of Atlantic's characterization of Hamas having "consolidated control over the

27  Gaza Strip," because it is not an indisputable fact that is generally known or that can be

28

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1 accurately and readily determined from sources whose accuracy cannot reasonably be

2 questioned. Fed. R. Evid. 201.

3 **Atlantic's response to this objection is as follows:**

4 The fact is relevant to the history of Hamas and demonstrates that Hamas is the

5 de facto government or quasi-sovereign authority within the Gaza Strip—a fact the

6 plaintiffs have made relevant in the suit. (Fed. R. Evid. 401). In addition, unexplained

7 relevancy objections are not proper in the context of a motion for summary judgment.

8 *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr.

9 LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement

10 may be irrelevant has no bearing upon a motion for summary judgment. A [court] can

11 award summary judgment only when there exists no genuine dispute of material fact. It

12 cannot rely on irrelevant facts; thus, relevance objections are redundant."). What the

13 plaintiffs should be doing is arguing to the Court (in their briefing) why this fact does

14 not matter. *Id.* A relevance objection with no explanation is "redundant" and

15 meaningless in the context of summary judgment. *Id.*

16 The U.S. State Department's Country Report on Human Rights Practices for

17 Israel and the Occupied Territories (Atlantic's Exhibit 5) is admissible because it falls

18 within a hearsay exception. The United States Congress mandated the State

19 Department to issue Country Reports to provide policymakers with an accurate

20 accounting on human rights conditions in nearly 200 countries and territories

21 worldwide. RSI 247 (Ex. 164 to Atlantic's Evid., p. 1872; Ex. 174 to Atlantic's Evid., p.

22 1914). The reports are used by the U.S. Legislative, Executive, and Judicial Branches as

23 a resource for shaping policy and guiding decisions, informing diplomatic engagements,

24 and determining the allocation of foreign aid and security sector assistance. *Id.* Because

25 the report is prepared by the U.S. State Department, which is under a duty to prepare

26 these reports, the report (Atlantic Exhibit 5) falls within the Public Records hearsay

27 exception. Fed. R. Evid. 803(8); *Doe I v. Liu Qi*, 349 F. Supp. 2d 1258, 1310 n. 39 (N.D.

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

13

1 | Cal. 2004) ("The State Department's annual human rights reports have been held to fall

2 | within the public records exception to the hearsay rule under Fed. R. Evid. 803(8), and

3 | is thus admissible."); *Bowoto v. Chevron Corp.*, 557 F. Supp. 2d 1080, 1097 (N.D. Cal.

4 | 2008) ("[f]ederal courts regularly rely upon [the State Department's human rights]

5 | reports as evidence of a country's human rights situation."); *Bank Melli Iran v. Pahlavi*,

6 | 58 F.3d 1406, 1411 (9th Cir. 1995) (relying on the annual reports in granting summary

7 | judgment on the issue of the fairness of Iranian courts). Furthermore, as an employee

8 | of the U.S. State Department, the author has gained personal knowledge of the factual

9 | matters stated within the report. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776

10 | (N.D. Cal. 2008) ("An employee of an entity may through the course of his

11 | employment obtain personal knowledge of a fact or event, even if the event took place

12 | prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th

13 | Cir. 1990) (personal knowledge and competence to testify are reasonably inferred from

14 | witness's positions and the nature of their participation in the matters at hand).

15 | Concerning the Declaration of Frank G. Lowenstein (Atlantic's Exhibit 1),

16 | Lowenstein, through his position as Special Envoy for Israeli-Palestinian Negotiations

17 | and as the United States representative to the Middle East Quartet has gained personal

18 | knowledge of Hamas having consolidated control over the Gaza Strip. Indeed, in July

19 | 2014 Mr. Lowenstein traveled with Secretary Kerry as part of the U.S. efforts to help

20 | negotiate a ceasefire agreement between Israel and Hamas. Lowenstein Decl. ¶ 8 at p.

21 | 3. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of

22 | an entity may through the course of his employment obtain personal knowledge of a

23 | fact or event, even if the event took place prior to his employment."); *Self-Realization*

24 | *Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000)

25 | (Personal knowledge can be inferred or presumed from declarant's position.); *see also*

26 | *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). In addition,

27 | Lowenstein's declaration states that all of the facts stated within the Declaration are

28 |

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

14

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  within his personal knowledge and are true and correct, a statement which plaintiffs
2  have not attempt to rebut. Furthermore, Federal Rules of Evidence 702 and 703 are
3  inapplicable because Mr. Lowenstein's declaration is offered as a fact witness rather
4  than as an expert opinion.

5      The plaintiffs fail to support their assertion that judicial notice may not be taken
6  of the fact. Judicial notice may be taken of historical events, political events and
7  developments. Therefore, the Court may take judicial notice of Hamas's 2007 armed
8  takeover in Gaza where Hamas defeated forces loyal to PA President Mahmoud Abbas
9  and consolidated control over the Gaza Strip. *Cactus Corner, LLC v. United States Dep't of*
10  *Agric.*, 346 F. Supp. 2d 1075, 1099 (E.D. Cal. 2004) ("Courts will also take judicial
11  notice of historical happenings and events.); *Desir v. Ilchert*, 840 F.2d 723, 730 (9th Cir.
12  1988) (In a habeas corpus proceeding brought by an asylum applicant, the court took
13  judicial notice of political developments.); *Kaczmarczyk v. INS*, 933 F.2d 588, 594 n.4
14  (7th Cir. 1991) ("We exercise our discretion to take judicial notice of further changes in
15  Polish politics that occurred between the time of the BIA's decision and our review.");
16  *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1357 (3d Cir. 1994) ("While not critical to
17  our holding, we take judicial notice of newspaper accounts highlighting controversies
18  over the DRPA's toll increases, spending practices, and public announcements.").

19  **Atlantic's Separate Statement Paragraph 15:**

20      The plaintiffs object to Separate Statement Paragraph 15. The fact states "Since
21  2007, Hamas has been the de facto ruling authority in the Gaza Strip, where it currently
22  governs like any other government with "political, military and social welfare activities."

23      The plaintiffs submit objection to the supporting statements from the Country
24  Report on Human Rights Practices for Israel and the Occupied Territories (Atlantic's
25  Ex. 5) on the grounds that they: (1) constitute inadmissible hearsay and no exception is
26  applicable (Fed. R. Evid. 801, 802); and (2) there is no evidence sufficient to support a
27  finding that the author has personal knowledge of the factual matter stated (Fed. R.

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

Evid. 602). Objection to supporting statements of Paragraph C of the Lowenstein Declaration (Atlantic's Ex. 1) on the grounds that: (1) there is no evidence sufficient to support a finding that Mr. Lowenstein has personal knowledge of Hamas being the "ruling authority in the Gaza Strip, where it currently governs"; and (2) to the extent characterized expert opinion, there has been no showing that his statements are based on sufficient facts or data or that they are the product of reliable principles and methods. Fed. R. Evid. 702, 703.

**Atlantic's response to this objection is as follows:**

The U.S. State Department's Country Report on Human Rights Practices for Israel and the Occupied Territories (Atlantic's Exhibit 5) is admissible because it falls within a hearsay exception. The United States Congress mandated the State Department to issue Country Reports to provide policymakers with an accurate accounting on human rights conditions in nearly 200 countries and territories worldwide. RSI 247 (Ex. 164 to Atlantic's Evid., p. 1872; Ex. 174 to Atlantic's Evid., p. 1914). The reports are used by the U.S. Legislative, Executive, and Judicial Branches as a resource for shaping policy and guiding decisions, informing diplomatic engagements, and determining the allocation of foreign aid and security sector assistance. *Id.* Because the report is prepared by the U.S. State Department, which is under a duty to prepare these reports, the report (Atlantic Exhibit 5) falls within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Doe I v. Liu Qi*, 349 F. Supp. 2d 1258, 1310 n. 39 (N.D. Cal. 2004) ("The State Department's annual human rights reports have been held to fall within the public records exception to the hearsay rule under Fed. R. Evid. 803(8), and is thus admissible."); *Bowoto v. Chevron Corp.*, 557 F. Supp. 2d 1080, 1097 (N.D. Cal. 2008) ("[f]ederal courts regularly rely upon [the State Department's human rights] reports as evidence of a country's human rights situation."); *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1411 (9th Cir. 1995) (relying on the annual reports in granting summary judgment on the issue of the fairness of Iranian courts). Furthermore, as an employee

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  of the U.S. State Department, the author has gained personal knowledge of the factual

2  matters stated within the report. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776

3  (N.D. Cal. 2008) ("An employee of an entity may through the course of his

4  employment obtain personal knowledge of a fact or event, even if the event took place

5  prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th

6  Cir. 1990) (personal knowledge and competence to testify are reasonably inferred from

7  witness's positions and the nature of their participation in the matters at hand).

8      Concerning the Declaration of Frank G. Lowenstein (Atlantic's Exhibit 1),

9  Lowenstein, through his position as Special Envoy for Israeli-Palestinian Negotiations

10  and as the United States representative to the Middle East Quartet has gained personal

11  knowledge of Hamas being the ruling authority in the Gaza Strip, where it currently

12  governs. Indeed, in July 2014 Mr. Lowenstein traveled with Secretary Kerry as part of

13  the U.S. efforts to help negotiate a ceasefire agreement between Israel and Hamas.

14  Lowenstein Decl. ¶ 8 at p. 3. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D.

15  Cal. 2008) ("An employee of an entity may through the course of his employment

16  obtain personal knowledge of a fact or event, even if the event took place prior to his

17  employment."); *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206

18  F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed from

19  declarant's position.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D.

20  Cal. 2007). In addition, Lowenstein's declaration states that all of the facts stated within

21  the Declaration are within his personal knowledge and are true and correct, a statement

22  which plaintiffs have not attempted to rebut. Furthermore, Federal Rules of Evidence

23  702 and 703 are inapplicable because Mr. Lowenstein's declaration is offered as a fact

24  witness rather than as an expert opinion.

25  **Atlantic's Separate Statement Paragraph 16:**

26      The plaintiffs object to Separate Statement Paragraph 16. The fact states "In

27  December 2008, the Israeli Defense Forces ("IDF") launched Operation Cast Lead,

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  which began with an intensive aerial bombardment targeting Hamas forces and

2  infrastructure, followed by a ground invasion on January 3, 2009. A ceasefire was

3  entered on January 21, 2009."

4         The plaintiffs object to the fact on the grounds that it is irrelevant. Fed. R. Evid.

5  402. The plaintiffs further submit objection to the supporting statements from the

6  Zanotti Article (Atlantic's Ex. 8) on the grounds that: (1) they constitute inadmissible

7  hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no

8  evidence sufficient to support a finding that Mr. Zanotti has personal knowledge of the

9  factual matter stated (Fed. R. Evid. 602). Objection to supporting statements of

10 Paragraph G of the Lowenstein Declaration (Atlantic's Ex. 1) on the grounds that: (1)

11 there is no evidence sufficient to support a finding that Mr. Lowenstein has personal

12 knowledge of the factual statements made therein; and (2) to the extent characterized

13 expert opinion, there has been no showing that his statements are based on sufficient

14 facts or data or that they are the product of reliable principles and methods. Fed. R.

15 Evid. 702, 703.

16 **Atlantic's response to this objection is as follows:**

17        The fact is relevant to not only provide the court a foundation of the

18 relationship between Israel and Hamas, which demonstrates that, as in the past, the

19 hostilities built and turned into a full-scale war, thus showing the context of the

20 previous war between Hamas and Israel and the continuing conflict between the two

21 groups, but it also has the tendency to show part of why Hamas continues to seek to

22 destroy Israel. (Fed. R. Evid. 401). In addition, unexplained relevancy objections are

23 not proper in the context of a motion for summary judgment. *McAllister v. Krengel*

24 *Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31

25 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant has no

26 bearing upon a motion for summary judgment. A [court] can award summary judgment

27 only when there exists no genuine dispute of material fact. It cannot rely on irrelevant

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

28

1  facts; thus, relevance objections are redundant.""). What the plaintiffs should be doing is

2  arguing to the Court (in their briefing) why this fact does not matter. *Id.* A relevance

3  objection with no explanation is "redundant" and meaningless in the context of

4  summary judgment. *Id.*

5      The plaintiffs refer to the Jim Zanotti report as an "article," when in reality the

6  report is prepared for members and committees of Congress through the

7  Congressional Research Service. The Congressional Research Service (CRS) is a

8  legislative branch agency within the Library of Congress, which provides policy and

9  legal analysis to committees and members of both the House and Senate. RSI 246 (Ex.

10  166 to Atlantic's Evid., p. 1879). Because the report is prepared by a governmental

11  agency under a duty to prepare these reports, the report (Atlantic's Exhibit 8) falls

12  within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Rothe Dev. Corp. v.*

13  *United States DOD*, 499 F. Supp. 2d 775, 829 n.63 (W.D. Tex. 2007), *reversed on other*

14  *grounds* ("all evidence before Congress is admissible pursuant to" Rule 803(8)).

15  Furthermore, Defendant maintains that Mr. Zanotti, through his position and

16  experience as a specialist in Middle Eastern Affairs at the CRS, has gained personal

17  knowledge of the factual matters stated within the report. *Cleveland v. United States*, 546

18  F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the

19  course of his employment obtain personal knowledge of a fact or event, even if the

20  event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*,

21  897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to testify are

22  reasonably inferred from witness's positions and the nature of their participation in the

23  matters at hand).

24      Concerning the Declaration of Frank G. Lowenstein (Atlantic's Exhibit 1),

25  Lowenstein, through his position as Special Envoy for Israeli-Palestinian Negotiations

26  and as the United States representative to the Middle East Quartet has gained personal

27  knowledge of Israel's Operation Cast Lead. Indeed, in July 2014 Mr. Lowenstein

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1   traveled with Secretary Kerry as part of the U.S. efforts to help negotiate a ceasefire

2   agreement between Israel and Hamas. Lowenstein Decl. ¶ 8 at p. 3. *Cleveland v. United*

3   *States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may

4   through the course of his employment obtain personal knowledge of a fact or event,

5   even if the event took place prior to his employment."); *Self-Realization Fellowship Church*

6   *v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal

7   knowledge can be inferred or presumed from declarant's position.); *see also Edwards v.*

8   *Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007).  In addition, Lowenstein's

9   declaration states that all of the facts stated within the Declaration are within his

10  personal knowledge and are true and correct, a statement which plaintiffs have not

11  attempted to rebut. Furthermore, Federal Rules of Evidence 702 and 703 are

12  inapplicable because Mr. Lowenstein's declaration is offered as a fact witness rather

13  than as an expert opinion.

14  **Atlantic's Separate Statement Paragraph 17:**

15      The plaintiffs object to Separate Statement Paragraph 17. The fact states "In

16  November 14, 2012, Israel declared Operation Pillar of Defense, in which the IDF

17  struck more than 1,000 sites in the Gaza Strip. Over a hundred Gazans died and over a

18  hundred were wounded."

19      The plaintiffs object to the fact on the grounds that it is irrelevant. Fed. R. Evid.

20  402. The plaintiffs further submit objection to the supporting statements from the

21  Zanotti Article (Atlantic's Ex. 4) on the grounds that: (1) they constitute inadmissible

22  hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no

23  evidence sufficient to support a finding that Mr. Zanotti has personal knowledge of the

24  factual matter stated (Fed. R. Evid. 602). Objection to the supporting statements from

25  the Country Report on Human Rights Practices for Israel and the Occupied Territories

26  (Atlantic's Ex. 5) on the grounds that they: (1) constitute inadmissible hearsay and no

27  exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no evidence sufficient

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  to support a finding that the author has personal knowledge of the factual matter stated

2  (Fed. R. Evid. 602). Objection to supporting statements of Paragraph H of the

3  Lowenstein Declaration (Atlantic's Ex. 1) on the grounds that: (1) there is no evidence

4  sufficient to support a finding that Mr. Lowenstein has personal knowledge that the

5  "IDF struck more than 1,000 sites in the Gaza Strip and hundreds of Gazans died or

6  were wounded during this operation"; and (2) to the extent characterized expert

7  opinion, there has been no showing that his statements are based on sufficient facts or

8  data or that they are the product of reliable principles and methods. Fed. R. Evid. 702,

9  703. In addition, they argue that judicial notice cannot be taken of these statistics

10  because they are not indisputable facts that are generally known or that can be

11  accurately and readily determined from sources whose accuracy cannot reasonably be

12  questioned. Fed. R. Evid. 201.

13  **Atlantic's response to this objection is as follows:**

14       The fact is relevant to not only provide the court with a foundation of the

15  relationship between Israel and Hamas, which demonstrates that, as in the past, the

16  hostilities built and turned into a full-scale war, thus showing the context of the

17  previous war between Hamas and Israel and the continuing conflict between the two

18  groups, but it also has the tendency to show part of why Hamas continues to seek to

19  destroy Israel. (Fed. R. Evid. 401). In addition, unexplained relevancy objections are

20  not proper in the context of a motion for summary judgment. *McAllister v. Krengel*

21  *Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31

22  (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant has no

23  bearing upon a motion for summary judgment. A [court] can award summary judgment

24  only when there exists no genuine dispute of material fact. It cannot rely on irrelevant

25  facts; thus, relevance objections are redundant."). What the plaintiffs should be doing is

26  arguing to the Court (in their briefing) why this fact does not matter. *Id.* A relevance

27

28

ANDERSON, McPHARLIN & CONNERS LLP

LAWYERS

707 WILSHIRE BOULEVARD, SUITE 4000

LOS ANGELES, CALIFORNIA 90017-3623

TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  objection with no explanation is "redundant" and meaningless in the context of

2  summary judgment. *Id.*

3      The plaintiffs refer to the Jim Zanotti report as an "article," when in reality the

4  report is prepared for members and committees of Congress through the

5  Congressional Research Service. The Congressional Research Service (CRS) is a

6  legislative branch agency within the Library of Congress, which provides policy and

7  legal analysis to committees and members of both the House and Senate. RSI 246 (Ex.

8  166 to Atlantic's Evid., p. 1879). Because the report is prepared by a governmental

9  agency under a duty to prepare these reports, the report (Atlantic's Exhibit 4) falls

10 within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Rothe Dev. Corp. v.*

11 *United States DOD*, 499 F. Supp. 2d 775, 829 n.63 (W.D. Tex. 2007), *reversed on other*

12 *grounds* ("all evidence before Congress is admissible pursuant to" Rule 803(8)).

13 Furthermore, Defendant maintains that Mr. Zanotti, through his position and

14 experience as a specialist in Middle Eastern Affairs at the CRS, has gained personal

15 knowledge of the factual matters stated within the report. *Cleveland v. United States*, 546

16 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the

17 course of his employment obtain personal knowledge of a fact or event, even if the

18 event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*,

19 897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to testify are

20 reasonably inferred from witness's positions and the nature of their participation in the

21 matters at hand).

22      The U.S. State Department's Country Report on Human Rights Practices for

23 Israel and the Occupied Territories (Atlantic's Exhibit 5) is admissible because it falls

24 within a hearsay exception. The United States Congress mandated the State

25 Department to issue Country Reports to provide policymakers with an accurate

26 accounting on human rights conditions in nearly 200 countries and territories

27 worldwide. RSI 247 (Ex. 164 to Atlantic's Evid., p. 1872; Ex. 174 to Atlantic's Evid., p.

28

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1914). The reports are used by the U.S. Legislative, Executive, and Judicial Branches as a resource for shaping policy and guiding decisions, informing diplomatic engagements, and determining the allocation of foreign aid and security sector assistance. *Id.* Because the report is prepared by the U.S. State Department, which is under a duty to prepare these reports, the report (Atlantic Exhibit 5) falls within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Doe I v. Liu Qi*, 349 F. Supp. 2d 1258, 1310 n. 39 (N.D. Cal. 2004) ("The State Department's annual human rights reports have been held to fall within the public records exception to the hearsay rule under Fed. R. Evid. 803(8), and is thus admissible."); *Bowoto v. Chevron Corp.*, 557 F. Supp. 2d 1080, 1097 (N.D. Cal. 2008) ("[f]ederal courts regularly rely upon [the State Department's human rights] reports as evidence of a country's human rights situation."); *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1411 (9th Cir. 1995) (relying on the annual reports in granting summary judgment on the issue of the fairness of Iranian courts). Furthermore, as an employee of the U.S. State Department, the author has gained personal knowledge of the factual matters stated within the report. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the course of his employment obtain personal knowledge of a fact or event, even if the event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to testify are reasonably inferred from witness's positions and the nature of their participation in the matters at hand).

Concerning the Declaration of Frank G. Lowenstein (Atlantic's Exhibit 1), Lowenstein, through his position as Special Envoy for Israeli-Palestinian Negotiations and as the United States representative to the Middle East Quartet has gained personal knowledge of the fact that the IDF struck more than 1,000 sites in the Gaza Strip and hundreds of Gazans died or were wounded during Operation Pillar of Defense. Indeed, in July 2014 Mr. Lowenstein traveled with Secretary Kerry as part of the U.S. efforts to help negotiate a ceasefire agreement between Israel and Hamas. Lowenstein Decl. ¶ 8

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

at p. 3. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the course of his employment obtain personal knowledge of a fact or event, even if the event took place prior to his employment."); *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed from declarant's position.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). In addition, Lowenstein's declaration states that all of the facts stated within the Declaration are within his personal knowledge and are true and correct, a statement which plaintiffs have not attempted to rebut. Furthermore, Federal Rules of Evidence 702 and 703 are inapplicable because Mr. Lowenstein's declaration is offered as a fact witness rather than as an expert opinion.

The plaintiffs fail to support their assertion that judicial notice may not be taken of the fact. Judicial notice may be taken of historical events, political events and developments. Therefore, the Court may take judicial notice of the military statistics of Israel's 2012 Operation Pillar of Defense military campaign against Hamas. *Cactus Corner, LLC v. United States Dep't of Agric.*, 346 F. Supp. 2d 1075, 1099 (E.D. Cal. 2004) ("Courts will also take judicial notice of historical happenings and events.); *Desir v. Ilchert*, 840 F.2d 723, 730 (9th Cir. 1988) (In a habeas corpus proceeding brought by an asylum applicant, the court took judicial notice of political developments.); *Kaczmarczyk v. INS*, 933 F.2d 588, 594 n.4 (7th Cir. 1991) ("We exercise our discretion to take judicial notice of further changes in Polish politics that occurred between the time of the BIA's decision and our review."); *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1357 (3d Cir. 1994) ("While not critical to our holding, we take judicial notice of newspaper accounts highlighting controversies over the DRPA's toll increases, spending practices, and public announcements.").

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**Atlantic's Separate Statement Paragraph 18:**

The plaintiffs object to Separate Statement Paragraph 18. The fact states "In June 2014, Hamas reached an agreement with Fatah, the other powerful political group in Gaza, to establish a "consensus" or "unity" PA government."

The plaintiffs submit objection to the supporting statements from the Zanotti Article (Atlantic's Ex. 4) on the grounds that: (1) they constitute inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no evidence sufficient to support a finding that Mr. Zanotti has personal knowledge of the factual matter stated (Fed. R. Evid. 602). Objection to supporting statements of Paragraph E of the Lowenstein Declaration (Atlantic's Ex. 1) on the grounds that there has been no showing that the "Government of National Consensus" characterization is based on sufficient facts or data or that it is the product of reliable principles and methods. Fed. R. Evid. 702. Objection to the supporting statements of the May 1, 2014 email from Stephen Smith (Atlantic's Ex. 117) on the grounds that there is no evidence sufficient to support a finding that Mr. Smith had personal knowledge of the purported "new agreement" referenced in the email. Fed. R. Evid. 602. Objection to the supporting statements of the June 15, 2014 email from Max Security (Atlantic's Ex. 11) on the grounds that: (1) they constitute inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no evidence sufficient to support a finding as to the identity of the author or that he/she has personal knowledge of the factual matter stated (Fed. R. Evid. 602). Objection to the supporting statements of the June 14, 2014 email from Randi Richmond (Atlantic's Ex. 118) on the grounds that they constitute inadmissible double hearsay (Benjamin Netanyahu's alleged statements, and a newspaper's characterization of the same). Fed. R. Evid. 801, 802. In addition, they argue that judicial notice cannot be taken of Atlantic's characterizations of Hamas as a "political group" or of any "'consensus' or 'unity' PA government" because they are not indisputable facts that are generally known or that can be accurately and readily

1    determined from sources whose accuracy cannot reasonably be questioned. Fed. R.

2    Evid. 201.

3    **Atlantic's response to this objection is as follows:**

4         The plaintiffs refer to the Jim Zanotti report as an "article," when in reality the

5    report is prepared for members and committees of Congress through the

6    Congressional Research Service. The Congressional Research Service (CRS) is a

7    legislative branch agency within the Library of Congress, which provides policy and

8    legal analysis to committees and members of both the House and Senate. RSI 246 (Ex.

9    166 to Atlantic's Evid., p. 1879). Because the report is prepared by a governmental

10   agency under a duty to prepare these reports, the report (Atlantic's Exhibit 4) falls

11   within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Rothe Dev. Corp. v.*

12   *United States DOD*, 499 F. Supp. 2d 775, 829 n.63 (W.D. Tex. 2007), *reversed on other*

13   *grounds* ("all evidence before Congress is admissible pursuant to" Rule 803(8)).

14   Furthermore, Defendant maintains that Mr. Zanotti, through his position and

15   experience as a specialist in Middle Eastern Affairs at the CRS, has gained personal

16   knowledge of the factual matters stated within the report. *Cleveland v. United States*, 546

17   F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the

18   course of his employment obtain personal knowledge of a fact or event, even if the

19   event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*,

20   897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to testify are

21   reasonably inferred from witness's positions and the nature of their participation in the

22   matters at hand).

23        Concerning the Declaration of Frank G. Lowenstein (Atlantic's Exhibit 1),

24   Lowenstein, through his position as Special Envoy for Israeli-Palestinian Negotiations

25   and as the United States representative to the Middle East Quartet has gained personal

26   knowledge of the facts stated within. Indeed, in July 2014 Mr. Lowenstein traveled with

27   Secretary Kerry as part of the U.S. efforts to help negotiate a ceasefire agreement

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

26

between Israel and Hamas. Lowenstein Decl. ¶ 8 at p. 3. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the course of his employment obtain personal knowledge of a fact or event, even if the event took place prior to his employment."); *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed from declarant's position.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). In addition, Lowenstein's declaration states that all of the facts stated within the Declaration are within his personal knowledge and are true and correct, a statement which plaintiffs have not attempted to rebut. Furthermore, Federal Rules of Evidence 702 and 703 are inapplicable because Mr. Lowenstein's declaration is offered as a fact witness rather than as an expert opinion.

The May 1, 2014 e-mail from Stephen Smith (Atlantic's Exhibit 117) is an internal e-mail between plaintiffs' personnel, produced from plaintiffs. *Anand v. BP West Coast Products LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent."). In addition, Mr. Smith has gained personal knowledge regarding the region as well as security risks pertinent to Israel through his position as head of security for Europe as well as from his subordinates who research the topics. RSI 251 (Ex. 160 to Atlantic's Evid. p. 1753-55). *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed from an employee's position within a company.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). Furthermore, the plaintiffs relied on Mr. Smith's personal knowledge to keep them informed of security risks. Atlantic's Statement of Uncontroverted Fact ("SUF") 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04), RSI 250 (Ex. 119 to Atlantic's Evid., p. 1397), 251 (Ex. 160 to Atlantic's Evid. p. 1753-

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

27

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

55), Randi Richmond Decl. (Doc. 61-9) ¶¶ 7-9. To question Mr. Smith's knowledge now but not while *relying* on it is disingenuous.

The June 15, 2014 e-mail from Max Security (Atlantic's Exhibit 11) is not hearsay. Max Security Intelligence provides intelligence and risk analysis to assess, prepare for, and mitigate threats before they become a problem. RSI 248 (Ex. 168 to Atlantic's Evid., p. 1884; Ex. 169 to Atlantic's Evid., p. 1886-88). The plaintiffs hired Max Security Intelligence to provide security for the production of *Dig* while in Israel. SUF 31 (Ex. 119 to Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's Evid., p. 1285). Max Security Intelligence was also hired to provide reports to the plaintiffs regarding the security for the production of *Dig* in Israel. *Id.* Therefore, Max Security was an agent of the plaintiffs when it prepared those reports and sent e-mails relating to the security situation. As an agent, its e-mail to the plaintiffs concerning security—which was the basis of the employment relationship—is not hearsay because it is an opposing party's statement. Fed. R. Evid. 801(d)(2)(D); *MGM Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006) (an independent contractor—a designer—was the agent of a litigant for purposes of Rule 801(d)(2)(D) because the contractor was included in e-mails to the litigant's design "team" and the litigant directed the contractor to perform certain work). Alternatively, the statements are not hearsay because the plaintiffs relied on the information within the Max Security reports in assessing security concerns associated with filming in Israel and therefore believed it to be true. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04); 31 (Ex. 119 to Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's Evid., p. 1285), 33 (Ex. 95 to Atlantic's Evid., p. 1173-75; Ex. 119 to Atlantic's Evid., p. 1415; Ex. 108 to Atlantic's Evid., p. 1268-1270; Ex. 96 to Atlantic's Evid., p. 1178-1180; Ex. 18 to Atlantic's Evid., p. 606-09; Ex. 17 to Atlantic's Evid., p. 600-02; Ex. 97

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE

to Atlantic's Evid., p. 1184-86; Ex. 98 to Atlantic's Evid., p. 1190-92; Ex. 99 to Atlantic's Evid., p. 1196-97; Ex. 100 to Atlantic's Evid., p. 1201-04; Ex. 21 to Atlantic's Evid., p. 625-31; Ex. 109 to Atlantic's Evid., p. 1274-76; Ex. 22 to Atlantic's Evid., p. 633-35; Ex. 32 to Atlantic's Evid., p. 686-88; Ex. 23 to Atlantic's Evid., p. 639-41; Ex. 110 to Atlantic's Evid., p. 1280; Ex. 24 to Atlantic's Evid., p. 644-47; Ex. 101 to Atlantic's Evid., p. 1207-10; Ex. 25 to Atlantic's Evid., p. 650-52; Ex. 10 to Atlantic's Evid., p. 478-80; Ex. 102 to Atlantic's Evid., p. 1213-15; Ex. 26 to Atlantic's Evid., p. 655-57), 34 (Ex. 119 to Atlantic's Evid., p. 1415), RSI 250 (Ex. 119 to Atlantic's Evid., p. 1397), 251 (Ex. 160 to Atlantic's Evid. p. 1753-55), Randi Richmond Decl. (Doc. 61-9) ¶¶ 7-9. Fed. R. Evid. 801(d)(2)(B); *Sea-Land Serv. v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (a "party may adopt a written statement if the party uses the statement or takes action in compliance [with] the statement."). In addition, the e-mail is an internal e-mail between Plaintiff's head of security and plaintiffs' security team (agent), produced from plaintiffs. *Anand v. BP West Coast Products LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent."). Furthermore, the author of the Max Security report is presumed to have personal knowledge concerning the security risks and concerns in the region as it was part of his job description to have knowledge of precisely these events. SUF 31 (Ex. 119 to Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's Evid., p. 1285). *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed from an employee's position within a company.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007).

The June 14, 2014 e-mail from Randi Richmond (Atlantic's Exhibit 118) is not hearsay. The plaintiffs' representatives/employees copied, into her e-mail, the

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1   statements from the newspaper article referenced in the e-mail for the purpose of

2   detailing heightened tensions and security and the effect it may have on filming in

3   certain areas of Israel. By copying the article into the e-mail and relying on its

4   information, the author of the e-mail, who is a representative of the plaintiffs,

5   manifested or adopted the statement and made clear that she believed it to be true. The

6   e-mail is therefore not hearsay because it is an opposing party's statement. Fed. R.

7   Evid. 801(d)(2)(B); *Sea-Land Serv. v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002)

8   (a "party may adopt a written statement if the party uses the statement or takes action

9   in compliance [with] the statement.").

10      The plaintiffs fail to support their assertion that judicial notice may not be taken

11   of the fact. Judicial notice may be taken of historical events, political events and

12   developments. Therefore, the Court may take judicial notice of the historical fact that

13   in June 2014, Hamas reached an agreement with Fatah to establish a "consensus" or

14   "unity" PA government. *Cactus Corner, LLC v. United States Dep't of Agric.*, 346 F. Supp.

15   2d 1075, 1099 (E.D. Cal. 2004) ("Courts will also take judicial notice of historical

16   happenings and events.); *Desir v. Ilchert*, 840 F.2d 723, 730 (9th Cir. 1988) (in a habeas

17   corpus proceeding brought by an asylum applicant, the court took judicial notice of

18   political developments.); *Kaczmarczyk v. INS*, 933 F.2d 588, 594 n.4 (7th Cir. 1991)

19   ("We exercise our discretion to take judicial notice of further changes in Polish politics

20   that occurred between the time of the BIA's decision and our review."); *Peters v. Del.*

21   *River Port Auth.*, 16 F.3d 1346, 1357 (3d Cir. 1994) ("While not critical to our holding,

22   we take judicial notice of newspaper accounts highlighting controversies over the

23   DRPA's toll increases, spending practices, and public announcements.").

24   **Atlantic's Separate Statement Paragraph 19:**

25      The plaintiffs object to Separate Statement Paragraph 19. The fact states "The

26   United States does not engage with Hamas or any of its members, but determined that

27   it was able to engage with the Government of National Consensus agreed to between

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

28

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1   Hamas and Fatah. Israel did not like the agreement to form a unity government

2   because it considers Hamas a terrorist organization that it will not engage with."

3          Objection to supporting statements of Paragraph E of the Lowenstein

4   Declaration (Atlantic's Ex. 1) on the grounds that there has been no showing that the

5   "Government of National Consensus" characterization is based on sufficient facts or

6   data or that it is the product of reliable principles and methods. Fed. R. Evid. 702.

7   Objection to the supporting statements of the May 1, 2014 email from Stephen Smith

8   (Atlantic's Ex. 117) on the grounds that there is no evidence sufficient to support a

9   finding that Mr. Smith had personal knowledge of the purported "new agreement"

10  referenced in the email. Fed. R. Evid. 602.

11  **Atlantic's response to this objection is as follows:**

12         Federal Rule of Evidence 702 is inapplicable where Mr. Lowenstein's declaration

13  (Atlantic's Exhibit 1) is offered as a fact witness rather than as an expert opinion.

14         The May 1, 2014 e-mail from Stephen Smith (Atlantic's Exhibit 117) is an

15  internal e-mail between plaintiffs' personnel, produced from plaintiffs. *Anand v. BP*

16  *West Coast Products LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents

17  produced in response to discovery requests are admissible on a motion for summary

18  judgment since they are self-authenticating and constitute the admissions of a party

19  opponent."). In addition, Mr. Smith has gained personal knowledge regarding the

20  region as well as security risks pertinent to Israel through his position as head of

21  security for Europe as well as from his subordinates who research the topics. RSI 251

22  (Ex. 160 to Atlantic's Evid. p. 1753-55). *Self-Realization Fellowship Church v. Ananda*

23  *Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can

24  be inferred or presumed from an employee's position within a company.); *see also*

25  *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). Furthermore, the

26  plaintiffs relied on Mr. Smith's personal knowledge to keep the plaintiffs informed of

27  security risks. Randi Richmond Decl. (Doc. 61-9) ¶¶ 7-9, SUF 28 (Ex. 119 to Atlantic's

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

Evid., p. 1395, 1397, 1403-04), RSI 250 (Ex. 119 to Atlantic's Evid., p. 1397), 251 (Ex. 160 to Atlantic's Evid. p. 1753-55). To question Mr. Smith's knowledge now but not while *relying* on it is disingenuous.

**Atlantic's Separate Statement Paragraph 20:**

The plaintiffs object to Separate Statement Paragraph 20. The fact states "The PA is organized like a state—complete with democratic mechanisms; security forces; and executive, legislative, and judicial organs of governance. The executive branch has both a president and a prime minister-led cabinet, the Palestinian Legislative Council (PLC) is its legislature, and the judicial branch has separate high courts to decide substantive disputes and to settle controversies, as well as a High Judicial Council."

Objection to the fact on the grounds that it is irrelevant. Fed. R. Evid. 402. Objection to the supporting statements from the Zanotti Article (Atlantic's Ex. 4) on the grounds that: (1) they constitute inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no evidence sufficient to support a finding that Mr. Zanotti has personal knowledge of the factual matter stated (Fed. R. Evid. 602). In addition, they argue that judicial notice cannot be taken of any of Atlantic's self-serving characterizations of the "PA," because they are not indisputable facts that are generally known or that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201.

**Atlantic's response to this objection is as follows:**

The fact is relevant to not only provide the court with context of the history of the Palestinian Authority (PA) and Hamas, but it also helps to demonstrate the PA's and Hamas's sovereign, quasi-sovereign, or de facto government status—a fact the plaintiffs have made relevant in the suit. (Fed. R. Evid. 401). In addition, unexplained relevancy objections are not proper in the context of a motion for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  may be irrelevant has no bearing upon a motion for summary judgment. A [court] can

2  award summary judgment only when there exists no genuine dispute of material fact. It

3  cannot rely on irrelevant facts; thus, relevance objections are redundant."). What the

4  plaintiffs should be doing is arguing to the Court (in their briefing) why this fact does

5  not matter. *Id.* A relevance objection with no explanation is "redundant" and

6  meaningless in the context of summary judgment. *Id.*

7        The plaintiffs refer to the Jim Zanotti report as an "article," when in reality the

8  report is prepared for members and committees of Congress through the

9  Congressional Research Service. The Congressional Research Service (CRS) is a

10 legislative branch agency within the Library of Congress, which provides policy and

11 legal analysis to committees and members of both the House and Senate. RSI 246 (Ex.

12 166 to Atlantic's Evid., p. 1879). Because the report is prepared by a governmental

13 agency under a duty to prepare these reports, the report (Atlantic's Exhibit 4) falls

14 within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Rothe Dev. Corp. v.*

15 *United States DOD*, 499 F. Supp. 2d 775, 829 n.63 (W.D. Tex. 2007), *reversed on other*

16 *grounds* ("all evidence before Congress is admissible pursuant to" Rule 803(8)).

17 Furthermore, Defendant maintains that Mr. Zanotti, through his position and

18 experience as a specialist in Middle Eastern Affairs at the CRS, has gained personal

19 knowledge of the factual matters stated within the report. *Cleveland v. United States*, 546

20 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the

21 course of his employment obtain personal knowledge of a fact or event, even if the

22 event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*,

23 897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to testify are

24 reasonably inferred from witness's positions and the nature of their participation in the

25 matters at hand).

26        The plaintiffs fail to support their assertion that judicial notice may not be taken

27 of the fact. Judicial notice may be taken of political events and developments.

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE

1  Therefore, the Court may take judicial notice of the PA's political bodies and functions.

2  *Gafoor v. INS*, 231 F.3d 645, 656 (9th Cir. 2000) (the Ninth Circuit has held it

3  appropriate to take judicial notice of political and military events); *Desir v. Ilchert*, 840

4  F.2d 723, 730 (9th Cir. 1988) (in a habeas corpus proceeding brought by an asylum

5  applicant, the court took judicial notice of political developments.); *Kaczmarczyk v. INS*,

6  933 F.2d 588, 594 n.4 (7th Cir. 1991) ("We exercise our discretion to take judicial

7  notice of further changes in Polish politics that occurred between the time of the BIA's

8  decision and our review."); *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1357 (3d Cir.

9  1994) ("While not critical to our holding, we take judicial notice of newspaper accounts

10 highlighting controversies over the DRPA's toll increases, spending practices, and

11 public announcements.").

12 **Atlantic's Separate Statement Paragraph 21:**

13      The plaintiffs object to Separate Statement Paragraph 21. The fact states "The

14 Hamas government in Gaza employs civil service employees in various ministries,

15 including health and education."

16      Objection to supporting statements of Paragraph C of the Lowenstein

17 Declaration (Atlantic's Ex. 1) on the grounds that: (1) there is no evidence sufficient to

18 support a finding that Mr. Lowenstein has personal knowledge of the facts set forth

19 therein; and (2) to the extent characterized expert opinion, there has been no showing

20 that his statements are based on sufficient facts or data or that they are the product of

21 reliable principles and methods. Fed. R. Evid. 702, 703.

22 **Atlantic's response to this objection is as follows:**

23      Concerning the Declaration of Frank G. Lowenstein (Atlantic's Exhibit 1),

24 Lowenstein, through his position as Special Envoy for Israeli-Palestinian Negotiations

25 and as the United States representative to the Middle East Quartet has gained personal

26 knowledge of Hamas's government within the Gaza Strip. Indeed, in July 2014 Mr.

27 Lowenstein traveled with Secretary Kerry as part of the U.S. efforts to help negotiate a

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1   ceasefire agreement between Israel and Hamas. Lowenstein Decl. ¶ 8 at p. 3. *Cleveland v.*
2   *United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity
3   may through the course of his employment obtain personal knowledge of a fact or
4   event, even if the event took place prior to his employment."); *Self-Realization Fellowship*
5   *Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (personal
6   knowledge can be inferred or presumed from declarant's position.); *see also Edwards v.*
7   *Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). In addition, Lowenstein's
8   declaration states that all of the facts stated within the Declaration are within his
9   personal knowledge and are true and correct, a statement which plaintiffs have not
10  attempted to rebut. Furthermore, Federal Rules of Evidence 702 and 703 are
11  inapplicable because Mr. Lowenstein's declaration is offered as a fact witness rather
12  than as an expert opinion.

13  **Atlantic's Separate Statement Paragraph 22:**

14      The plaintiffs object to Separate Statement Paragraph 22. The fact states "Hamas
15  runs an ad hoc judicial system."

16      Objection to supporting statements of Paragraph C of the Lowenstein
17  Declaration (Atlantic's Ex. 1) on the grounds that: (1) there is no evidence sufficient to
18  support a finding that Mr. Lowenstein has personal knowledge of that Hamas "runs an
19  ad hoc judicial system"; and (2) to the extent characterized expert opinion, there has
20  been no showing that his statements are based on sufficient facts or data or that they
21  are the product of reliable principles and methods. Fed. R. Evid. 702, 703.

22  **Atlantic's response to this objection is as follows:**

23      Concerning the Declaration of Frank G. Lowenstein (Atlantic's Exhibit 1),
24  Lowenstein, through his position as Special Envoy for Israeli-Palestinian Negotiations
25  and as the United States representative to the Middle East Quartet has gained personal
26  knowledge of Hamas's government within the Gaza Strip. Indeed, in July 2014 Mr.
27  Lowenstein traveled with Secretary Kerry as part of the U.S. efforts to help negotiate a
28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ceasefire agreement between Israel and Hamas. Lowenstein Decl. ¶ 8 at p. 3. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the course of his employment obtain personal knowledge of a fact or event, even if the event took place prior to his employment."); *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed from declarant's position.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). In addition, Lowenstein's declaration states that all of the facts stated within the Declaration are within his personal knowledge and are true and correct, a statement which plaintiffs have not attempted to rebut. Furthermore, Federal Rules of Evidence 702 and 703 are inapplicable because Mr. Lowenstein's declaration is offered as a fact witness rather than as an expert opinion.

**Atlantic's Separate Statement Paragraph 23:**

The plaintiffs object to Separate Statement Paragraph 23. The fact states "Hamas collects revenue from the people of Gaza in various ways, including licensing fees and taxes, and it receives assistance from foreign governments."

Objection to the supporting statements from the Zanotti Article (Atlantic's Ex. 8) on the grounds that: (1) they constitute inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no evidence sufficient to support a finding that Mr. Zanotti has personal knowledge of the factual matter stated (Fed. R. Evid. 602). Objection to supporting statements of Paragraph C of the Lowenstein Declaration (Atlantic's Ex. 1) on the grounds that: (1) there is no evidence sufficient to support a finding that Mr. Lowenstein has personal knowledge of the facts set forth therein; and (2) to the extent characterized expert opinion, there has been no showing that his statements are based on sufficient facts or data or that they are the product of reliable principles and methods. Fed. R. Evid. 702, 703.

**Atlantic's response to this objection is as follows:**

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1    The plaintiffs refer to the Jim Zanotti report as an "article," when in reality the

2    report is prepared for members and committees of Congress through the

3    Congressional Research Service. The Congressional Research Service (CRS) is a

4    legislative branch agency within the Library of Congress, which provides policy and

5    legal analysis to committees and members of both the House and Senate. RSI 246 (Ex.

6    166 to Atlantic's Evid., p. 1879). Because the report is prepared by a governmental

7    agency under a duty to prepare these reports, the report (Atlantic's Exhibit 8) falls

8    within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Rothe Dev. Corp. v.*

9    *United States DOD*, 499 F. Supp. 2d 775, 829 n.63 (W.D. Tex. 2007), *reversed on other*

10   *grounds* ("all evidence before Congress is admissible pursuant to" Rule 803(8)).

11   Furthermore, Defendant maintains that Mr. Zanotti, through his position and

12   experience as a specialist in Middle Eastern Affairs at the CRS, has gained personal

13   knowledge of the factual matters stated within the report. *Cleveland v. United States*, 546

14   F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the

15   course of his employment obtain personal knowledge of a fact or event, even if the

16   event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*,

17   897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to testify are

18   reasonably inferred from witness's positions and the nature of their participation in the

19   matters at hand).

20   Concerning the Declaration of Frank G. Lowenstein (Atlantic's Exhibit 1),

21   Lowenstein, through his position as Special Envoy for Israeli-Palestinian Negotiations

22   and as the United States representative to the Middle East Quartet has gained personal

23   knowledge of the Hamas' government within the Gaza Strip. Indeed, in July 2014 Mr.

24   Lowenstein traveled with Secretary Kerry as part of the U.S. efforts to help negotiate a

25   ceasefire agreement between Israel and Hamas. Lowenstein Decl. ¶ 8 at p. 3. *Cleveland*

26   *v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity

27   may through the course of his employment obtain personal knowledge of a fact or

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE

1  event, even if the event took place prior to his employment."); *Self-Realization Fellowship*

2  *Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal

3  knowledge can be inferred or presumed from declarant's position.); *see also Edwards v.*

4  *Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). In addition, Lowenstein's

5  declaration states that all of the facts stated within the Declaration are within his

6  personal knowledge and are true and correct, a statement which plaintiffs have not

7  attempted to rebut. Furthermore, Federal Rules of Evidence 702 and 703 are

8  inapplicable because Mr. Lowenstein's declaration is offered as a fact witness rather

9  than as an expert opinion.

10  **Atlantic's Separate Statement Paragraph 24:**

11      The plaintiffs object to Separate Statement Paragraph 24. The fact states "Hamas

12  has a military force, known as the Izz ad-Din al-Qassam Brigades ("Qassam Brigades").

13  The Qassam Brigades were under Hamas command in the summer of 2014."

14      Objection to supporting statements of Paragraph D of the Lowenstein

15  Declaration (Atlantic's Ex. 1) on the grounds that: (1) there is no evidence sufficient to

16  support a finding that Mr. Lowenstein has personal knowledge of the facts set forth

17  therein; and (2) to the extent it is expert opinion, there has been no showing that his

18  "military force" characterization is based on sufficient facts or data or that it is the

19  product of reliable principles and methods. Fed. R. Evid. 702, 703.

20  **Atlantic's response to this objection is as follows:**

21      Concerning the Declaration of Frank G. Lowenstein (Atlantic's Exhibit 1),

22  Lowenstein, through his position as Special Envoy for Israeli-Palestinian Negotiations

23  and as the United States representative to the Middle East Quartet has gained personal

24  knowledge of Hamas's military force. Indeed, in July 2014 Mr. Lowenstein traveled

25  with Secretary Kerry as part of the U.S. efforts to help negotiate a ceasefire agreement

26  between Israel and Hamas. Lowenstein Decl. ¶ 8 at p. 3. *Cleveland v. United States*, 546 F.

27  Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the course

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

of his employment obtain personal knowledge of a fact or event, even if the event took place prior to his employment."); *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed from declarant's position.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). In addition, Lowenstein's declaration states that all of the facts stated within the Declaration are within his personal knowledge and are true and correct, a statement which plaintiffs have not attempted to rebut. Furthermore, Federal Rules of Evidence 702 and 703 are inapplicable because Mr. Lowenstein's declaration is offered as a fact witness rather than as an expert opinion.

**Atlantic's Separate Statement Paragraph 25:**

The plaintiffs object to Separate Statement Paragraph 25. The fact states "The United Nations recognizes Palestine as a non-member state."

Objection to the supporting statements from the Zanotti Article (Atlantic's Ex. 4) on the grounds that: (1) they constitute inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no evidence sufficient to support a finding that Mr. Zanotti has personal knowledge of the factual matter stated (Fed. R. Evid. 602). In addition, they argue that judicial notice cannot be taken of any of Atlantic's characterization of the United Nations' position because it is not an indisputable fact that is generally known or that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201.

**Atlantic's response to this objection is as follows:**

The plaintiffs refer to the Jim Zanotti report as an "article," when in reality the report is prepared for members and committees of Congress through the Congressional Research Service. The Congressional Research Service (CRS) is a legislative branch agency within the Library of Congress, which provides policy and legal analysis to committees and members of both the House and Senate. RSI 246 (Ex.

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

166 to Atlantic's Evid., p. 1879). Because the report is prepared by a governmental agency under a duty to prepare these reports, the report (Atlantic's Exhibit 4) falls within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Rothe Dev. Corp. v. United States DOD*, 499 F. Supp. 2d 775, 829 n.63 (W.D. Tex. 2007), *reversed on other grounds* ("all evidence before Congress is admissible pursuant to" Rule 803(8)). Furthermore, Defendant maintains that Mr. Zanotti, through his position and experience as a specialist in Middle Eastern Affairs at the CRS, has gained personal knowledge of the factual matters stated within the report. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the course of his employment obtain personal knowledge of a fact or event, even if the event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to testify are reasonably inferred from witness's positions and the nature of their participation in the matters at hand).

The plaintiffs fail to support their assertion that judicial notice may not be taken of the fact. Judicial notice may be taken of political events and developments. Therefore, the Court may take judicial notice of the United Nations' recognition of Palestine as a non-member state. Further, the United Nations General Assembly resolution 67/19, which recognizes Palestine as a non-member state, is an accurate source, considering the source is *the* document that memorializes the United Nations' recognition of Palestine. Atlantic's Ex. 7 at p. 395-98. *Gafoor v. INS*, 231 F.3d 645, 656 (9th Cir. 2000) (the Ninth Circuit has held it appropriate to take judicial notice of political and military events); *Desir v. Ilchert*, 840 F.2d 723, 730 (9th Cir. 1988) (In a habeas corpus proceeding brought by an asylum applicant, the court took judicial notice of political developments.); *Kaczmarczyk v. INS*, 933 F.2d 588, 594 n.4 (7th Cir. 1991) ("We exercise our discretion to take judicial notice of further changes in Polish politics that occurred between the time of the BIA's decision and our review."); *Peters v.*

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

*Del. River Port Auth.*, 16 F.3d 1346, 1357 (3d Cir. 1994) ("While not critical to our holding, we take judicial notice of newspaper accounts highlighting controversies over the DRPA's toll increases, spending practices, and public announcements.").

**Atlantic's Separate Statement Paragraph 34:**

The plaintiffs objection to Separate Statement Paragraph 34. The fact states "Stephen Smith received, reviewed, and relied upon Max Security Reports in carrying out his work in assessing the security situation for the production of *Dig*.

The plaintiffs dispute as to the balance, including based on mischaracterization of testimony and relevancy (Fed. R. Evid. 402) to the extent said reports were issued after Universal decided to move the *Dig* production.

**Atlantic's response to this objection is as follows:**

The reports that were issued after Universal decided to move the *Dig* production are relevant because to recover under the relevant insuring agreement, the plaintiffs must establish that they were in "imminent peril." To be in imminent peril one must *expect* danger; the concept is inherently forward-looking. Fed. R. Evid. 401. To argue that nothing occurring after they made the decision to leave misunderstands the imminent peril insuring agreement. Once peril has occurred, it is no longer imminent. Thus, if all that matters is what already occurred up to the time they decided to leave, than plaintiffs did not leave because of peril that was imminent, but instead because of peril that occurred. But, that is not what is covered by the policy. In addition, unexplained relevancy objections are not proper in the context of a motion for summary judgment. In addition, unexplained relevancy objections are not proper in the context of a motion for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant has no bearing upon a motion for summary judgment. A [court] can award summary judgment only when there exists no genuine dispute of material fact. It cannot rely on irrelevant facts; thus,

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1   relevance objections are redundant."). What the plaintiffs should be doing is arguing to

2   the Court (in their briefing) why this fact does not matter. *Id.* A relevance objection

3   with no explanation is "redundant" and meaningless in the context of summary

4   judgment. *Id.*

5   **Atlantic's Separate Statement Paragraphs 43-46:**

6         The plaintiffs object to Separate Statement Paragraphs 43-46. The facts relate to

7   e-mails from the plaintiffs' employees describing the growing escalation between Israel

8   and Hamas's militaries and the employee's use of the word "war" to describe the

9   hostilities.

10        Here, Atlantic merely contends that certain statements were made. To the extent

11  Atlantic were to contend that the supporting evidence establishes the content of the

12  statements (which Atlantic does not), such evidence would be objectionable on the

13  grounds that it: (1) is irrelevant (Fed. R. Evid. 402); (2) is an improper lay opinion (Fed.

14  R. Evid. 701); and (3) lacks foundation (Fed. R. Evid. 602).

15  **Atlantic's response to this objection is as follows:**

16        Defendant is offering Atlantic's Exhibits 79 and 142 to prove that plaintiffs'

17  employees used the word "war" to describe the 2014 conflict between Israel and

18  Hamas. The exhibits are offered to show that these statements were made, which

19  supports that the word "war," in ordinary parlance, applies to the summer 2014

20  conflict. However, if the statements were offered for their content, the exhibits would

21  still be admissible.

22        The fact is relevant because it helps prove that the common meaning of the

23  word "war" was used to describe the 2014 conflict between Israel and Hamas, which

24  goes to whether the ordinary meaning of "war" encompassed the 2014 conflict. (Fed.

25  R. Evid. 401). In addition, unexplained relevancy objections are not proper in the

26  context of a motion for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*,

27  No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir.

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  Aug. 13, 2014) ("the fact that a statement may be irrelevant has no bearing upon a
2  motion for summary judgment. A [court] can award summary judgment only when
3  there exists no genuine dispute of material fact. It cannot rely on irrelevant facts; thus,
4  relevance objections are redundant."). What the plaintiffs should be doing is arguing to
5  the Court (in their briefing) why this fact does not matter. *Id.* A relevance objection
6  with no explanation is "redundant" and meaningless in the context of summary
7  judgment. *Id.*

8      Federal Rule of Evidence 701 is inapplicable because the plaintiffs' statements
9  contained within the e-mails are not conclusions but rather observances and a
10  demonstration of the plaintiffs' state of mind. To the extent the comment is a
11  conclusion, it was rationally based on the e-mail author's perception of the events
12  occurring while under a duty to report security concerns to the plaintiffs. The contents
13  in the exhibits concerning the use of the word "war" are helpful in determining the fact
14  in issue concerning the common meaning of the term; and the e-mails and attachments
15  are not based on the e-mail authors' scientific or specialized knowledge.  Therefore, the
16  e-mails and attachments are not improper lay opinion under Federal Rule of Evidence
17  701.

18  The exhibits are internal e-mails between plaintiffs' head of security and security
19  personnel, produced from plaintiffs. *Anand v. BP West Coast Products LLC*, 484 F. Supp.
20  2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents produced in response to discovery
21  requests are admissible on a motion for summary judgment since they are self-
22  authenticating and constitute the admissions of a party opponent."). In addition, Mr.
23  Smith and the security personnel have gained personal knowledge regarding the region
24  as well as security risks pertinent to Israel through their positions as well as from their
25  subordinates who were in Israel observing the hostilities or researching the topics.
26  Considering the plaintiffs asserted the reason they left Israel was due to the threat and
27  fear of missiles—based on the advice of their security personnel—it may be inferred
28

ANDERSON, McPHARLIN & CONNERS LLP

LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

43

1  that their security personnel had personal knowledge concerning the risk of the

2  hostilities between Israel and Hamas escalating. SUF 104 (Ex. 41 to Atlantic's Evid., p.

3  754). *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322,

4  1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed from an

5  employee's position within a company.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d

6  1197, 1201 (C.D. Cal. 2007). Furthermore, the plaintiffs relied on Mr. Smith's personal

7  knowledge to keep them informed of security risks. SUF 28 (Ex. 119 to Atlantic's

8  Evid., p. 1395, 1397, 1403-04), RSI 250 (Ex. 119 to Atlantic's Evid., p. 1397), 251 (Ex.

9  160 to Atlantic's Evid. p. 1753-55), Randi Richmond Decl. (Doc. 61-9) ¶¶ 7-9. To

10 question Mr. Smith's knowledge now but not while *relying* on it is disingenuous.

11 **Atlantic's Separate Statement Paragraph 47:**

12 The plaintiffs object to Separate Statement Paragraph 47. The fact states

13 "During the summer of 2014, Israel was taking offensive strikes against Palestine or

14 Gaza, and Palestine and Gaza took offensive action against Israel, and there was a

15 continuing escalation of that activity."

16 Objection to the supporting testimony from the deposition of Stephen Smith

17 ("Smith Deposition") (Atlantic's Ex. 119) on the grounds that: (1) there is no evidence

18 sufficient to support a finding that Mr. Smith has personal knowledge of the nature of

19 the activity at issue as "offensive strikes" or "offensive action," or that Palestine and

20 Gaza "took offensive action against Israel" (Fed. R. Evid. 602); (2) any arguable

21 adoption by Mr. Smith of Atlantic's counsel's vague characterizations would constitute

22 improper and inadmissible lay opinion (Fed. R. Evid. 701).

23 **Atlantic's response to this objection is as follows:**

24 Stephen Smith is the plaintiffs' Head of Security for Europe. SUF 28 (Ex. 119 to

25 Atlantic's Evid., p. 1395, 1397, 1403-04). Mr. Smith would send e-mails to the plaintiffs

26 advising them of any security concerns within Israel. SUF 39 (Ex. 12 to Atlantic's

27 Evid., p. 490-91; Ex. 145 to Atlantic's Evid., p. 1600), 40 (Ex. 125 to Atlantic's Evid., p.

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1501), 45 (Ex. 142 to Atlantic's Evid., p. 1578), 54 (Ex. 137 to Atlantic's Evid., p. 1548), 55 (Ex. 132 to Atlantic's Evid., p. 1529), 60 (Ex. 129 to Atlantic's Evid., p. 1512); 63 (Ex. 138 to Atlantic's Evid., p. 1551), 75 (Ex. 136 to Atlantic's Evid., p. 1546). Mr. Smith has gained personal knowledge regarding the region as well as security risks pertinent to Israel through his position as well as from his subordinates who were in Israel observing the hostilities or researching the topics. RSI 251 (Ex. 160 to Atlantic's Evid. p. 1753-55). Considering the plaintiffs' asserted the reason they left Israel was due to the threat and fear of missiles—based on the advice of their security personnel—it may be inferred that their Head of Security had personal knowledge concerning Israel and Hamas's offensive strikes against one another and the risk of the hostilities between Israel and Hamas escalating. SUF 104 (Ex. 41 to Atlantic's Evid., p. 754). *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed from an employee's position within a company.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). Furthermore, the plaintiffs relied on Mr. Smith's personal knowledge to keep them informed of security risks. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04), RSI 250 (Ex. 119 to Atlantic's Evid., p. 1397), 251 (Ex. 160 to Atlantic's Evid. p. 1753-55), Declaration of Randi Richmond, (Document 61-9) at ¶¶ 7-9. To question Mr. Smith's knowledge now but not while *relying* on it is disingenuous.

The plaintiffs attempt to characterize Mr. Smith's testimony as that of Defendant's counsel, which is obviously false. Mr. Smith gave the deposition, not the Defendant. If Mr. Smith agreed with counsel's statements, he adopted them as his own.

**Atlantic's Separate Statement Paragraph 50:**

The plaintiffs object to Separate Statement Paragraph 50. The fact states "In particular, the Palestinians were firing 'anti-craft missiles,' 'long-range missiles,' 'rockets,' and 'mortars'."

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  Objection to the supporting statements of Paragraph R of the Lowenstein

2  Declaration (Atlantic's Ex. 1) on the grounds that: (1) there is no evidence sufficient to

3  support a finding that Mr. Lowenstein has personal knowledge of the factual

4  statements made therein; and (2) to the extent characterized expert opinion, there has

5  been no showing that his statements are based on sufficient facts or data or that they

6  are the product of reliable principles and methods. Fed. R. Evid. 702, 703. In addition,

7  Atlantic's supporting evidence is objectionable on the grounds that it: (1) is irrelevant

8  (Fed. R. Evid. 402); (2) is an improper lay opinion (Fed. R. Evid. 701); and (3) lacks

9  foundation (Fed. R. Evid. 602).

10  **Atlantic's response to this objection is as follows:**

11  Concerning the Declaration of Frank G. Lowenstein (Atlantic's Exhibit 1),

12  Lowenstein, through his position as Special Envoy for Israeli-Palestinian Negotiations

13  and as the United States representative to the Middle East Quartet has gained personal

14  knowledge of the weapons used during the Gaza war. Indeed, in July 2014 Mr.

15  Lowenstein traveled with Secretary Kerry as part of the U.S. efforts to help negotiate a

16  ceasefire agreement between Israel and Hamas. Lowenstein Decl. ¶ 8 at p. 3. *Cleveland v.*

17  *United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity

18  may through the course of his employment obtain personal knowledge of a fact or

19  event, even if the event took place prior to his employment."); *Self-Realization Fellowship*

20  *Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal

21  knowledge can be inferred or presumed from declarant's position.); *see also Edwards v.*

22  *Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). In addition, Lowenstein's

23  declaration states that all of the facts stated within the Declaration are within his

24  personal knowledge and are true and correct, a statement which plaintiffs have not

25  attempted to rebut. Furthermore, Federal Rules of Evidence 702 and 703 are

26  inapplicable because Mr. Lowenstein's declaration is offered as a fact witness rather

27  than as an expert opinion.

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

46

1       Concerning the e-mails and e-mail attachments (Atlantic Exhibits 27, 114, 130),
2 describing the weapons used in the war, are all relevant because the e-mails have a
3 tendency to show that all four of the Policy's war-related coverage exclusions apply. In
4 addition, to recover under the relevant insuring agreement, the plaintiffs must establish
5 that they were in "imminent peril." To be in imminent peril one must *expect* danger; the
6 concept is inherently forward-looking. This fact undermines the plaintiffs' argument
7 that what occurred after they decided to leave Israel is irrelevant. What occurred after
8 they left illuminates whether they actually *were* in imminent peril when they decided to
9 leave. To argue that nothing occurring after they made the decision to leave
10 misunderstands the imminent peril insuring agreement.  Once peril has occurred, it is
11 no longer imminent. Thus, if all that matters is what already occurred up to the time
12 they decided to leave, than plaintiffs did not leave because of peril that was imminent,
13 but instead because of peril that occurred.  But, that is not what is covered by the
14 policy. In addition, unexplained relevancy objections are not proper in the context of a
15 motion for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-
16 1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014)
17 ("the fact that a statement may be irrelevant has no bearing upon a motion for
18 summary judgment. A [court] can award summary judgment only when there exists no
19 genuine dispute of material fact. It cannot rely on irrelevant facts; thus, relevance
20 objections are redundant."). What the plaintiffs should be doing is arguing to the Court
21 (in their briefing) why this fact does not matter. *Id.* A relevance objection with no
22 explanation is "redundant" and meaningless in the context of summary judgment. *Id.*
23       Federal Rule of Evidence 701 is inapplicable because the plaintiffs' statements
24 contained within the e-mails are not conclusions but rather observances and a
25 demonstration of the plaintiffs' state of mind. To the extent the comment is a
26 conclusion, it was rationally based on the e-mail author's perception of the events
27 occurring while under a duty to report security concerns to the plaintiffs. The contents
28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1   in the exhibits concerning the types of missiles is helpful in determining the fact in

2   issue concerning the coverage exclusions; and the e-mails and attachments are not

3   based on the e-mail authors' scientific or specialized knowledge.  Therefore, the e-mails

4   and attachments are not improper lay opinion under Federal Rule of Evidence 701.

5       Furthermore, the exhibits are internal e-mails between plaintiffs' head of security

6   and security personnel, produced from plaintiffs. *Anand v. BP West Coast Products LLC*,

7   484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents produced in response

8   to discovery requests are admissible on a motion for summary judgment since they are

9   self-authenticating and constitute the admissions of a party opponent."). In addition,

10  Mr. Smith and the security personnel have gained personal knowledge regarding the

11  region as well as security risks pertinent to Israel through their positions as well as from

12  their subordinates who were in Israel observing the hostilities or researching the topics.

13  RSI 251 (Ex. 160 to Atlantic's Evid. p. 1753-55). Considering the plaintiffs' asserted the

14  reason they left Israel was due to the threat and fear of missiles—based on the advice

15  of their security personnel—it may be inferred that their security personnel had

16  personal knowledge concerning the types of missiles and weapons fired towards Israel.

17  SUF 104 (Ex. 41 to Atlantic's Evid., p. 754). *Self-Realization Fellowship Church v. Ananda*

18  *Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can

19  be inferred or presumed from an employee's position within a company.); *see also*

20  *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). Furthermore, the

21  plaintiffs relied on Mr. Smith's personal knowledge to keep them informed of security

22  risks. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04), RSI 250 (Ex. 119 to

23  Atlantic's Evid., p. 1397), 251 (Ex. 160 to Atlantic's Evid. p. 1753-55), Richmond Decl.

24  ¶¶ 7-9. To question Mr. Smith's knowledge now but not while *relying* on it is

25  disingenuous.

26  **Atlantic's Separate Statement Paragraph 51:**

27

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1    The plaintiffs object to Separate Statement Paragraph 51. The fact states "In

2    response to the Palestinians' launching of rockets, Israel deployed its Air Force to

3    retaliate with airstrikes on a regular basis that persisted until the war ended on August

4    26, 2014."

5    Objection to the fact on the grounds that it is irrelevant. Fed. R. Evid. 402.

6    Objection to the supporting statements of Paragraph R of the Lowenstein Declaration

7    (Atlantic's Ex. 1) on the grounds that: (1) there is no evidence sufficient to support a

8    finding that Mr. Lowenstein has personal knowledge of the factual statements made

9    therein; and (2) to the extent characterized expert opinion, there has been no showing

10   that his statements are based on sufficient facts or data or that they are the product of

11   reliable principles and methods. Fed. R. Evid. 702, 703. Objection to the supporting

12   statements from Human Rights Situation in Palestine and other Occupied Arab

13   Territories (Atlantic's Ex. 6) on the grounds that they: (1) constitute inadmissible

14   hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no

15   evidence sufficient to support a finding that the author has personal knowledge of the

16   factual matter stated (Fed. R. Evid. 602).

17   **Atlantic's response to this objection is as follows:**

18   The fact is relevant because it helps prove that there was a war between Israel

19   and Hamas, or that there was warlike action, that weapons of war were used, and that

20   there was an insurrection, rebellion, or revolution, and thus that coverage exclusions in

21   the Policy apply. (Fed. R. Evid. 401). In addition, to recover under the relevant insuring

22   agreement, the plaintiffs must establish that they were in "imminent peril." To be in

23   imminent peril one must *expect* danger; the concept is inherently forward-looking. This

24   fact undermines the plaintiffs' argument that what occurred after they decided to leave

25   Israel is irrelevant. What occurred after they left illuminates whether they actually *were*

26   in imminent peril when they decided to leave. To argue that nothing occurring after

27   they made the decision to leave misunderstands the imminent peril insuring agreement.

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

49

1    Once peril has occurred, it is no longer imminent.  Thus, if all that matters is what

2    already occurred up to the time they decided to leave, than plaintiffs did not leave

3    because of peril that was imminent, but instead because of peril that occurred.  But,

4    that is not what is covered by the policy. In addition, unexplained relevancy objections

5    are not proper in the context of a motion for summary judgment. *McAllister v. Krengel*

6    *Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31

7    (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant has no

8    bearing upon a motion for summary judgment. A [court] can award summary judgment

9    only when there exists no genuine dispute of material fact. It cannot rely on irrelevant

10   facts; thus, relevance objections are redundant."). What the plaintiffs should be doing is

11   arguing to the Court (in their briefing) why this fact does not matter. *Id.* A relevance

12   objection with no explanation is "redundant" and meaningless in the context of

13   summary judgment. *Id.*

14        Concerning the Declaration of Frank G. Lowenstein (Atlantic's Exhibit 1),

15   Lowenstein, through his position as Special Envoy for Israeli-Palestinian Negotiations

16   and as the United States representative to the Middle East Quartet has gained personal

17   knowledge of the fighting between Israel and Hamas. Indeed, in July 2014 Mr.

18   Lowenstein traveled with Secretary Kerry as part of the U.S. efforts to help negotiate a

19   ceasefire agreement between Israel and Hamas. Lowenstein Decl. ¶ 8 at p. 3. *Cleveland v.*

20   *United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity

21   may through the course of his employment obtain personal knowledge of a fact or

22   event, even if the event took place prior to his employment."); *Self-Realization Fellowship*

23   *Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal

24   knowledge can be inferred or presumed from declarant's position.); *see also Edwards v.*

25   *Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). In addition, Lowenstein's

26   declaration states that all of the facts stated within the Declaration are within his

27   personal knowledge and are true and correct, a statement which plaintiffs have not

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1   attempted to rebut. Furthermore, Federal Rules of Evidence 702 and 703 are

2   inapplicable because Mr. Lowenstein's declaration is offered as a fact witness rather

3   than as an expert opinion.

4           As evidenced by the report attached as Exhibit No. 165 to Atlantic's Evidence,

5   the United Nations Human Rights Council passed resolution S-21/1, which authorized

6   and dispatched an independent, international commission of inquiry to investigate all

7   violations of international humanitarian law and international human rights law in the

8   Gaza Strip, in the context of the military operations that began in June 2014. The

9   President of the Council appointed three experts to the commission to prepare a report

10  for the Council. *Id.* Because the report was prepared by the Human Rights Council

11  under a duty to prepare the report, the report (Atlantic's Exhibit 6) falls within the

12  public records hearsay exception. Fed. R. Evid. 803(8); *Zenith Radio Corp. v. Matsushita*

13  *Elec. Indus. Co.*, 505 F. Supp. 1125, 1187 (E.D. Pa. 1980) (referring to the U.N. as a

14  "supragovernmental agency" and stating "we see treatment of the U.N. … as public

15  officers or agencies as consistent with the theory and raison d'etre of 803(8)"); *United*

16  *States v. Vidacak*, 553 F.3d 344, 351 (4th Cir. 2009) ("Courts regularly admit foreign

17  records pursuant to [803(8)]."); *United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976)

18  (admitting a Northern Ireland constabulary firearms report under Rule 803(8)).

19  Furthermore, the experts who investigated and authored the report, obtained first-hand

20  interviews from individuals involved the war; and through their experience gained

21  personal knowledge of the factual matters stated within the report. The report's

22  Mandate and Methodology section describes in more detail the expert's personal

23  knowledge of the facts stated within the report. *Cleveland v. United States*, 546 F. Supp.

24  2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the course of his

25  employment obtain personal knowledge of a fact or event, even if the event took place

26  prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th

27

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  Cir. 1990) (personal knowledge and competence to testify are reasonably inferred from

2  witness's positions and the nature of their participation in the matters at hand).

3  **Atlantic's Separate Statement Paragraph 52:**

4      The plaintiffs object to Separate Statement Paragraph 52. The fact states "The

5  Max Security Reports noted a pattern of 'tit-for-tat exchanges between the Israeli

6  military and Gaza based militants'."

7      Here, Atlantic merely contends that certain statements were "noted" in emails

8  from "Max Security Intelligence." To the extent Atlantic were to contend that the

9  supporting evidence establishes the content of the statements (which Atlantic does

10 not), such evidence would be objectionable on the grounds that it: (1) is irrelevant (Fed.

11 R. Evid. 402); (2) is an improper lay opinion (Fed. R. Evid. 701); (3) lacks foundation

12 (Fed. R. Evid. 602); and (4) constitutes inadmissible hearsay and no exception is

13 applicable (Fed. R. Evid. 801, 802).

14 **Atlantic's response to this objection is as follows:**

15     The fact is relevant because it has the tendency to prove that war or warlike

16 action occurred during the 2014 conflict between Israel and Hamas and thus that

17 exclusions in the Policy apply. (Fed. R. Evid. 401). In addition, to recover under the

18 relevant insuring agreement, the plaintiffs must establish that they were in "imminent

19 peril." To be in imminent peril one must *expect* danger; the concept is inherently

20 forward-looking. This fact undermines the plaintiffs' argument that what occurred after

21 they decided to leave Israel is irrelevant. What occurred after they left illuminates

22 whether they actually *were* in imminent peril when they decided to leave. To argue that

23 nothing occurring after they made the decision to leave misunderstands the imminent

24 peril insuring agreement.  Once peril has occurred, it is no longer imminent.  Thus, if

25 all that matters is what already occurred up to the time they decided to leave, than

26 plaintiffs did not leave because of peril that was imminent, but instead because of peril

27 that occurred.  But, that is not what is covered by the policy. In addition, unexplained

28

1  relevancy objections are not proper in the context of a motion for summary judgment.

2  *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr.

3  LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement

4  may be irrelevant has no bearing upon a motion for summary judgment. A [court] can

5  award summary judgment only when there exists no genuine dispute of material fact. It

6  cannot rely on irrelevant facts; thus, relevance objections are redundant."). What the

7  plaintiffs should be doing is arguing to the Court (in their briefing) why this fact does

8  not matter. *Id.* A relevance objection with no explanation is "redundant" and

9  meaningless in the context of summary judgment. *Id.*

10     Federal Rule of Evidence 701 is inapplicable because the plaintiffs' statements

11  contained within the e-mails are not conclusions but rather observances and a

12  demonstration of the state of mind of the author of the e-mail. To the extent the

13  comment is a conclusion, it was rationally based on the e-mail author's perception of

14  the events occurring while under a duty to report security concerns to the plaintiffs.

15  The contents in the exhibits concerning the reference to "tit-for-tat" exchanges among

16  both Israel and Hamas militaries is helpful in determining whether Hamas's rocket fire

17  increased as a result of Israel's attacks, which is relevant to whether the plaintiffs' loss

18  results from Israel's warlike actions. The e-mails are not based on the e-mail authors'

19  scientific or specialized knowledge.   Therefore, the e-mails and attachments are not

20  improper lay opinion under Federal Rule of Evidence 701.

21     In addition, the e-mail is an internal e-mail between Plaintiff's head of security

22  and plaintiffs' security team (agent), produced from plaintiffs. *Anand v. BP West Coast*

23  *Products LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents produced

24  in response to discovery requests are admissible on a motion for summary judgment

25  since they are self-authenticating and constitute the admissions of a party opponent.").

26  Furthermore, the author of the Max Security report is presumed to have personal

27  knowledge concerning the security risks and concerns in the region—considering this

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1   was the purpose of the agency relationship and Max Security's specialty. SUF 31 (Ex.

2   119 to Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to

3   Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's

4   Evid., p. 1285), RSI 248 (Ex. 168 to Atlantic's Evid., p. 1884; Ex. 169 to Atlantic's

5   Evid., p. 1886-88). *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,

6   206 F.3d 1322, 1330 (9th Cir. 2000) (personal knowledge can be inferred or presumed

7   from an employee's position within a company.); *see also Edwards v. Toys "R" Us*, 527 F.

8   Supp. 2d 1197, 1201 (C.D. Cal. 2007).

9   **Atlantic's Separate Statement Paragraph 58:**

10       The plaintiffs object to Separate Statement Paragraph 58. The fact states "Hamas

11   and Israel carried out seaborne attacks against each other in July and August of 2014."

12       The plaintiffs object to the fact on the grounds that it is irrelevant. Fed. R. Evid.

13   402.

14   **Atlantic's response to this objection is as follows:**

15       The fact is relevant because it helps prove that there was a war between Israel

16   and Hamas, that there was warlike action, that weapons of war were used, and that

17   there was an insurrection, rebellion, or revolution, and thus that coverage exclusions in

18   the Policy apply. (Fed. R. Evid. 401). In addition, to recover under the relevant insuring

19   agreement, the plaintiffs must establish that they were in "imminent peril." To be in

20   imminent peril one must *expect* danger; the concept is inherently forward-looking. This

21   fact undermines the plaintiffs' argument that what occurred after they decided to leave

22   Israel is irrelevant. What occurred after they left illuminates whether they actually *were*

23   in imminent peril when they decided to leave. To argue that nothing occurring after

24   they made the decision to leave misunderstands the imminent peril insuring agreement.

25   Once peril has occurred, it is no longer imminent.  Thus, if all that matters is what

26   already occurred up to the time they decided to leave, than plaintiffs did not leave

27   because of peril that was imminent, but instead because of peril that occurred.  But,

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  that is not what is covered by the policy. In addition, unexplained relevancy objections

2  are not proper in the context of a motion for summary judgment. *McAllister v. Krengel*

3  *Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31

4  (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant has no

5  bearing upon a motion for summary judgment. A [court] can award summary judgment

6  only when there exists no genuine dispute of material fact. It cannot rely on irrelevant

7  facts; thus, relevance objections are redundant."). What the plaintiffs should be doing is

8  arguing to the Court (in their briefing) why this fact does not matter. *Id.* A relevance

9  objection with no explanation is "redundant" and meaningless in the context of

10  summary judgment. *Id.*

11  **Atlantic's Separate Statement Paragraph 59:**

12  The plaintiffs object to Separate Statement Paragraph 59. The fact states "Chris

13  Biggs of NBCU wrote the following e-mail to Smith on July 10, 2014: "Hamas' military

14  wing … sent a seaborne unit to attack an Israeli position in Ashkalon, southern Israel;

15  and fired rockets against Tel Aviv's Ben Gurion Airport and Jerusalem," while Israel

16  "authorized the Israeli Defense Forces (IDF) to call up to 40,000 reservists, and

17  conducted hundreds of air raids on Gaza."

18  Here, Atlantic merely contends that certain statements were made. To the extent

19  Atlantic were to contend that the supporting evidence establishes the content of the

20  statements (which Atlantic does not), such evidence would be objectionable on the

21  grounds that it: (1) is irrelevant (Fed. R. Evid. 402); (2) is an improper lay opinion (Fed.

22  R. Evid. 701); (3) lacks foundation, given that Atlantic has not established that Mr.

23  Biggs authored the text of the email, especially in light of Mr. Smith's deposition

24  testimony regarding Mr. Biggs' practice of copying and pasting information from third-

25  party sources (*see* Atlantic Ex. 119: Smith Depo, 315:2-316:21; 321:15-17) (Fed. R. Evid.

26  602); and (4) constitutes inadmissible hearsay and no exception is applicable for the

27

28

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  same reason – Atlantic has not established that Mr. Biggs' is the original declarant (Fed.

2  R. Evid. 801, 802).

3  **Atlantic's response to this objection is as follows:**

4        Defendant is offering Atlantic's Exhibits 128 to prove that plaintiffs' employees

5  referenced Hamas's seaborne attach against Israel as well as Israel's call up of 40,000

6  reservists and that Israel conducted air raids on Gaza.

7        The fact is relevant because it has the tendency to prove that both Israel and

8  Hamas conducted warlike actions against each other, that a war occurred, and that

9  weapons of war were used, and thus that coverage exclusions in the Policy apply. (Fed.

10  R. Evid. 401). In addition, unexplained relevancy objections are not proper in the

11  context of a motion for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*,

12  No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir.

13  Aug. 13, 2014) ("the fact that a statement may be irrelevant has no bearing upon a

14  motion for summary judgment. A [court] can award summary judgment only when

15  there exists no genuine dispute of material fact. It cannot rely on irrelevant facts; thus,

16  relevance objections are redundant."). What the plaintiffs should be doing is arguing to

17  the Court (in their briefing) why this fact does not matter. *Id.* A relevance objection

18  with no explanation is "redundant" and meaningless in the context of summary

19  judgment. *Id.*

20        Federal Rule of Evidence 701 is inapplicable because the plaintiffs' statements

21  contained within the e-mails are not conclusions but rather observances and a

22  demonstration of the author's state of mind. To the extent the comment is a

23  conclusion, it was rationally based on the e-mail author's perception of the events

24  occurring while under a duty to report security concerns to the plaintiffs. SUF 28 (Ex.

25  119 to Atlantic's Evid., p. 1395, 1397, 1403-04), RSI 250 (Ex. 119 to Atlantic's Evid., p.

26  1397), 251 (Ex. 160 to Atlantic's Evid. p. 1753-55). The contents in the exhibit

27  concerning Israel and Hamas's military actions is helpful in determining whether the

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1   policy exclusions applied; and the e-mails are not based on the e-mail author's scientific

2   or specialized knowledge.  Therefore, the e-mails and attachments are not improper lay

3   opinion under Federal Rule of Evidence 701.

4       The exhibit, an e-mail from Chris Biggs is not hearsay. The plaintiffs'

5   representative/employee copied the statements from within a news article into the e-

6   mail for the purpose of detailing heightened tensions and security and the effect it may

7   have on filming in certain areas of Israel. By copying the article into the e-mail and

8   relying on its information, Mr. Biggs, a representative of NBCU who was working for

9   the plaintiffs at the time (RSI 251 (Ex. 160 to Atlantic's Evid. p. 1753-55)), manifested

10  or adopted the statement and made clear that he believed it to be true, which means the

11  e-mail is not hearsay but is instead an opposing party's statement. Fed. R. Evid.

12  801(d)(2)(B); *Sea-Land Serv. v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (a

13  "party may adopt a written statement if the party uses the statement or takes action in

14  compliance [with] the statement.").

15  The exhibit is an internal e-mail between plaintiffs' head of security and Chris Biggs, a

16  security and intelligence analyst, produced from plaintiffs. *Anand v. BP West Coast

17  Products LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents produced

18  in response to discovery requests are admissible on a motion for summary judgment

19  since they are self-authenticating and constitute the admissions of a party opponent.").

20  In addition, Mr. Biggs and the head of security have gained personal knowledge

21  regarding the region as well as security risks pertinent to Israel through their positions

22  as well as from observing the hostilities or researching the topics. SUF 28 (Ex. 119 to

23  Atlantic's Evid., p. 1395, 1397, 1403-04), RSI 250 (Ex. 119 to Atlantic's Evid., p. 1397),

24  251 (Ex. 160 to Atlantic's Evid. p. 1753-55). Considering the plaintiffs asserted that

25  they left Israel due to the threat and fear of missiles—based on the advice of their

26  security personnel—it may be inferred that their security personnel had personal

27  knowledge concerning the risk of the hostilities between Israel and Hamas. Randi

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

Richmond Decl. (Doc. 61-9) ¶¶ 7-9, SUF 104 (Ex. 41 to Atlantic's Evid., p. 754). *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed from an employee's position within a company.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). Furthermore, the plaintiffs relied on the security personnel's personal knowledge to keep them informed of security risks. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04), RSI 250 (Ex. 119 to Atlantic's Evid., p. 1397), 251 (Ex. 160 to Atlantic's Evid. p. 1753-55), Randi Richmond Decl. (Doc. 61-9) ¶¶ 7-9. To question Mr. Biggs' knowledge now but not while *relying* on it is disingenuous. SUF 43 (Ex. 79 to Atlantic's Evid., p. 1046), 44 (Ex. 79 to Atlantic's Evid., p. 1046), 45 (Ex. 142 to Atlantic's Evid., p. 1578) (showing that Mr. Biggs e-mailed Mr. Smith with security information, which Mr. Smith then adopted by sending the same information to an employee of the plaintiffs), RSI 251 (Ex. 160 to Atlantic's Evid. p. 1753-55) (demonstrating Mr. Biggs' role).

**Atlantic's Separate Statement Paragraph 62:**

The plaintiffs object to Separate Statement Paragraph 62. The fact states "As of July 10, 2014, it had become clear, including to plaintiffs, that Israel was planning a ground invasion."

Here, the supporting statements in all of the emails are objectionable on the grounds that they are: (1) is irrelevant (Fed. R. Evid. 402); (2) improper lay opinion (Fed. R. Evid. 701); and (3) lack foundation (Fed. R. Evid. 602). The supporting statements in the email from Mr. Biggs specifically lack foundation given that Atlantic has not established that Mr. Biggs authored the text of the email, especially in light of Mr. Smith's deposition testimony regarding Mr. Biggs' practice of copying and pasting information from third-party sources. *See* Atlantic Ex. 119: Smith Depo, 315:2-316:21; 321:15-17; Fed. R. Evid. 602. These statements constitute inadmissible hearsay and no exception is applicable for the same reason – Atlantic has not established that Mr.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  Biggs' is the original declarant. Fed. R. Evid. 801, 802. The supporting statements in

2  the emails from third-party Max Security Intelligence also constitute inadmissible

3  hearsay and no exception is applicable (Fed. R. Evid. 801, 802).

4  **Atlantic's response to this objection is as follows:**

5       The e-mails and e-mail attachments (Atlantic Exhibits 24, 32, 128), describing

6  how it had become clear that Israel was planning a ground invasion, have the tendency

7  to show that a war or warlike action occurred, that weapons of war were used, and that

8  there was an insurrection, rebellion, or revolution. In addition, unexplained relevancy

9  objections are not proper in the context of a motion for summary judgment. *McAllister*

10  *v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at

11  *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant

12  has no bearing upon a motion for summary judgment. A [court] can award summary

13  judgment only when there exists no genuine dispute of material fact. It cannot rely on

14  irrelevant facts; thus, relevance objections are redundant."). What the plaintiffs should

15  be doing is arguing to the Court (in their briefing) why this fact does not matter. *Id.* A

16  relevance objection with no explanation is "redundant" and meaningless in the context

17  of summary judgment. *Id.*

18       Federal Rule of Evidence 701 is inapplicable because the plaintiffs' statements

19  contained within the e-mails are not conclusions but rather observances and

20  demonstrate plaintiffs' state of mind. To the extent the comment is a conclusion, it was

21  rationally based on the e-mail author's perception of the events occurring while under a

22  duty to report security concerns to the plaintiffs. The contents in the exhibits

23  concerning the potential ground invasion are helpful in determining whether the four

24  war-related coverage exclusions apply; and the e-mails and attachments are not based

25  on the e-mail author's scientific or specialized knowledge.  Therefore, the e-mails and

26  attachments are not improper lay opinion under Federal Rule of Evidence 701.

27

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ANDERSON, McPHARLIN & CONNERS LLP

LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1    Furthermore, the exhibits are internal e-mails between plaintiffs' head of security

2  and security personnel, produced from plaintiffs. *Anand v. BP West Coast Products LLC*,

3  484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents produced in response

4  to discovery requests are admissible on a motion for summary judgment since they are

5  self-authenticating and constitute the admissions of a party opponent."). In addition,

6  Mr. Smith and the security personnel have gained personal knowledge regarding the

7  region as well as security risks pertinent to Israel through their positions as well as from

8  their subordinates who were in Israel observing the hostilities or researching the topics.

9  Considering the plaintiffs' asserted the reason they left Israel was due to the threat and

10  fear of missiles—based on the advice of their security personnel—it may be inferred

11  that their security personnel had personal knowledge concerning that Israel was

12  planning a ground invasion which could escalate the hostilities further. Randi

13  Richmond Decl. (Doc. 61-9) ¶¶ 7-9, SUF 104 (Ex. 41 to Atlantic's Evid., p. 754). *Self-

14  Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th

15  Cir. 2000) (Personal knowledge can be inferred or presumed from an employee's

16  position within a company.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201

17  (C.D. Cal. 2007). Furthermore, the plaintiffs relied on Mr. Smith's personal knowledge

18  to keep them informed of security risks. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395,

19  1397, 1403-04), RSI 250 (Ex. 119 to Atlantic's Evid., p. 1397), 251 (Ex. 160 to

20  Atlantic's Evid. p. 1753-55), Randi Richmond Decl. (Doc. 61-9) ¶¶ 7-9. To question

21  Mr. Smith's knowledge now but not while *relying* on it is disingenuous.

22  The e-mails from Max Security (Atlantic's Exhibits 24 and 32) are not hearsay. Max

23  Security Intelligence provides intelligence and risk analysis to assess, prepare for, and

24  mitigate threats before they become a problem. RSI 248 (Ex. 168 to Atlantic's Evid., p.

25  1884; Ex. 169 to Atlantic's Evid., p. 1886-88). Plaintiffs hired Max Security Intelligence

26  to provide security for the production of *Dig* while in Israel. SUF 31 (Ex. 119 to

27  Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to

28

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1   Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's

2   Evid., p. 1285). Max Security Intelligence was also hired to provide reports to the

3   plaintiffs regarding the security for the production of *Dig* in Israel. *Id.* Therefore, Max

4   Security was an agent of the plaintiffs when it prepared those reports and sent e-mails

5   relating to the security situation. As an agent, its e-mail to the plaintiffs concerning

6   security—which was the basis of the employment relationship—is not hearsay because

7   it is an opposing party's statement. Fed. R. Evid. 801(d)(2)(D); *MGM Studios, Inc. v.*

8   *Grokster, Ltd.*, 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006) (an independent contractor—a

9   designer—was the agent of a litigant for purposes of Rule 801(d)(2)(D) because the

10  contractor was included in e-mails to the litigant's design "team" and the litigant

11  directed the contractor to perform certain work). Alternatively, the statements are not

12  hearsay because the plaintiffs relied on the information within the Max Security reports

13  in assessing security concerns associated with filming in Israel and therefore believed it

14  to be true. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04); 31 (Ex. 119 to

15  Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to

16  Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's

17  Evid., p. 1285), 33 (Ex. 95 to Atlantic's Evid., p. 1173-75; Ex. 119 to Atlantic's Evid., p.

18  1415; Ex. 108 to Atlantic's Evid., p. 1268-1270; Ex. 96 to Atlantic's Evid., p. 1178-

19  1180; Ex. 18 to Atlantic's Evid., p. 606-09; Ex. 17 to Atlantic's Evid., p. 600-02; Ex. 97

20  to Atlantic's Evid., p. 1184-86; Ex. 98 to Atlantic's Evid., p. 1190-92; Ex. 99 to

21  Atlantic's Evid., p. 1196-97; Ex. 100 to Atlantic's Evid., p. 1201-04; Ex. 21 to Atlantic's

22  Evid., p. 625-31; Ex. 109 to Atlantic's Evid., p. 1274-76; Ex. 22 to Atlantic's Evid., p.

23  633-35; Ex. 32 to Atlantic's Evid., p. 686-88; Ex. 23 to Atlantic's Evid., p. 639-41; Ex.

24  110 to Atlantic's Evid., p. 1280; Ex. 24 to Atlantic's Evid., p. 644-47; Ex. 101 to

25  Atlantic's Evid., p. 1207-10; Ex. 25 to Atlantic's Evid., p. 650-52; Ex. 10 to Atlantic's

26  Evid., p. 478-80; Ex. 102 to Atlantic's Evid., p. 1213-15; Ex. 26 to Atlantic's Evid., p.

27  655-57), 34 (Ex. 119 to Atlantic's Evid., p. 1415), RSI 250 (Ex. 119 to Atlantic's Evid.,

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1    p. 1397), 251 (Ex. 160 to Atlantic's Evid. p. 1753-55), Richmond Decl. (Doc. 61-9) ¶¶

2    7-9. Fed. R. Evid. 801(d)(2)(B); *Sea-Land Serv. v. Lozen Int'l, LLC*, 285 F.3d 808, 821

3    (9th Cir. 2002) (a "party may adopt a written statement if the party uses the statement

4    or takes action in compliance [with] the statement.").

5         In addition, the e-mail is an internal e-mail between Plaintiff's head of security

6    and plaintiffs' security team (agent), produced from plaintiffs. *Anand v. BP West Coast*

7    *Products LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents produced

8    in response to discovery requests are admissible on a motion for summary judgment

9    since they are self-authenticating and constitute the admissions of a party opponent.").

10        The author of the Max Security report is presumed to have personal knowledge

11   concerning the security risks and concerns in the region—considering this was the

12   purpose of the agency relationship and Max Security's specialty. SUF 31 (Ex. 119 to

13   Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to

14   Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's

15   Evid., p. 1285), RSI 248 (Ex. 168 to Atlantic's Evid., p. 1884; Ex. 169 to Atlantic's

16   Evid., p. 1886-88). *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,

17   206 F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed

18   from an employee's position within a company.); *see also Edwards v. Toys "R" Us*, 527 F.

19   Supp. 2d 1197, 1201 (C.D. Cal. 2007).

20        The July 10, 2014 e-mail from Chris Biggs (Atlantic's Exhibit 118) is not hearsay.

21   Mr. Biggs, who was providing security advice to Dig, through his superior Mr. Smith,

22   (RSI 251 (Ex. 160 to Atlantic's Evid. p. 1753-55)), copied the statements from within

23   the article into the e-mail for the purpose of detailing heightened tensions and security

24   and the effect it might have on filming in certain areas of Israel. By copying the article

25   into the e-mail and relying on its information, Mr. Biggs adopted the statement as his

26   own and made clear that he believed it to be true. Therefore, the e-mail is not hearsay

27   because it is an opposing party' statement. Fed. R. Evid. 801(d)(2)(B); *Sea-Land Serv. v.*

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

*Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (a "party may adopt a written statement if the party uses the statement or takes action in compliance [with] the statement.").

**Atlantic's Separate Statement Paragraph 64:**

The plaintiffs object to Separate Statement Paragraph 64. The fact states "The lawyer for one of the cast members of *Dig* also used the word war to describe the events of 2014."

Here, Atlantic merely contends that certain statements were made by a third-party. To the extent Atlantic were to contend that the supporting evidence establishes the content of the statements (which Atlantic does not), such evidence would be objectionable on the grounds that it: (1) is irrelevant (Fed. R. Evid. 402); (2) is an improper lay opinion (Fed. R. Evid. 701); (3) lacks foundation (Fed. R. Evid. 602); and (4) constitutes inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802).

**Atlantic's response to this objection is as follows:**

Defendant is offering Atlantic's Exhibits 143 to prove that the word "war" was used to describe the 2014 conflict between Israel and Hamas, thus showing the plain and ordinary use of the term to apply to the hostilities between Israel and Hamas. The exhibits are offered to show that these statements were made. However, if the statements were offered for their content, the exhibit would still be admissible.

The fact is relevant because it has the tendency to prove that in common parlance, the word "war" was used to describe the 2014 conflict between Israel and Hamas. (Fed. R. Evid. 401). In addition, unexplained relevancy objections are not proper in the context of a motion for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant has no bearing upon a motion for summary judgment. A [court] can award summary judgment only

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  when there exists no genuine dispute of material fact. It cannot rely on irrelevant facts;

2  thus, relevance objections are redundant."). What the plaintiffs should be doing is

3  arguing to the Court (in their briefing) why this fact does not matter. *Id.* A relevance

4  objection with no explanation is "redundant" and meaningless in the context of

5  summary judgment. *Id.*

6        Federal Rule of Evidence 701 is inapplicable because the lawyer's statements

7  contained within the e-mails are not conclusions but rather observances and a

8  demonstration of his state of mind at the time. To the extent the comment is a

9  conclusion, it was rationally based on the lawyer's perception of the events occurring in

10  the Gaza Strip during summer 2014. The contents in the exhibits concerning the use of

11  the word "war"  is helpful in determining the fact in issue concerning the common

12  meaning of the term; and the e-mails and attachments are not based on the e-mail

13  authors' scientific or specialized knowledge.  Therefore, the e-mails and attachments

14  are not improper lay opinions under Federal Rule of Evidence 701.

15        The exhibit is not excluded by hearsay, because the statement is offered not for

16  the truth of the matter asserted but merely to show that the statement was made. In

17  addition, a demonstration of personal knowledge is not required when the statement is

18  not offered for the truth of the matter asserted. Alternatively, the statement

19  demonstrates that as of the date of the e-mail, the declarant believed the use of the

20  word "war" was appropriate. Therefore, the statement falls within the state of mind

21  hearsay exception. Fed. R. Evid. 803(3).

22  **Atlantic's Separate Statement Paragraph 65:**

23        The plaintiffs object to Separate Statement Paragraph 65. The fact states "The

24  lawyer wrote an e-mail to several NBCU employees, stating:  "We can't imagine the

25  production will continue in a war zone under continuing air raid sirens."   After

26  receiving no response, he wrote:  "Not the sort of e-mails I expected to be met with

27

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  silence. Can you guys please let us know what is going on? Would you send your child

2  into a war zone?"

3       Here, Atlantic merely contends that certain statements were made by a third-

4  party. To the extent Atlantic were to contend that the supporting evidence establishes

5  the content of the statements (which Atlantic does not), such evidence would be

6  objectionable on the grounds that it: (1) is irrelevant (Fed. R. Evid. 402); (2) is an

7  improper lay opinion (Fed. R. Evid. 701); (3) lacks foundation (Fed. R. Evid. 602); and

8  (4) constitutes inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801,

9  802).

10  **Atlantic's response to this objection is as follows:**

11       Defendant is offering Atlantic's Exhibits 143 to prove that the word "war" was

12  used to describe the 2014 conflict between Israel and Hamas. The exhibits are offered

13  to show that these statements were made. However, if the statements were offered for

14  their content, the exhibit would still be admissible.

15       The fact is relevant because it has the tendency to prove that in the common

16  parlance, the word "war" was used to describe the 2014 conflict between Israel and

17  Hamas. (Fed. R. Evid. 401). In addition, unexplained relevancy objections are not

18  proper in the context of a motion for summary judgment. *McAllister v. Krengel Spamer &*

19  *Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P.

20  9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant has no bearing

21  upon a motion for summary judgment. A [court] can award summary judgment only

22  when there exists no genuine dispute of material fact. It cannot rely on irrelevant facts;

23  thus, relevance objections are redundant."). What the plaintiffs should be doing is

24  arguing to the Court (in their briefing) why this fact does not matter. *Id.* A relevance

25  objection with no explanation is "redundant" and meaningless in the context of

26  summary judgment. *Id.*

27

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  Federal Rule of Evidence 701 is inapplicable because the lawyer's statements

2  contained within the e-mails are not conclusions but rather observances and a

3  demonstration of his state of mind at the time. To the extent the comment is a

4  conclusion, it was rationally based on the lawyer's perception of the events occurring in

5  the Gaza Strip during summer 2014. The contents in the exhibits concerning the use of

6  the word "war"  is helpful in determining the fact in issue concerning the common

7  meaning of the term; and the e-mails and attachments are not based on the e-mail

8  authors' scientific or specialized knowledge.  Therefore, the e-mails and attachments

9  are not improper lay opinion under Federal Rule of Evidence 701.

10  The exhibit is not excluded by hearsay, because the statement is offered not for

11  the truth of the matter asserted but merely because the statement was made. In

12  addition, a demonstration of personal knowledge is not required when the statement is

13  not offered for the truth of the matter asserted. Alternatively, the statement

14  demonstrates that as of the date of the e-mail, the declarant believed the use of the

15  word "war" was appropriate. Therefore, the statement falls within the state of mind

16  hearsay exception. Fed. R. Evid. 803(3).

17  **Atlantic's Separate Statement Paragraph 66:**

18  The plaintiffs object to Separate Statement Paragraph 66. The fact states "The

19  lawyer later wrote that waiting for a decision was "nerve-wracking for the individuals

20  who could literally be on the front lines;" and that "the area," referring to Israel and

21  Palestine, "is quite literally a war zone."

22  Here, Atlantic merely contends that certain statements were made by a third-

23  party. To the extent Atlantic were to contend that the supporting evidence establishes

24  the content of the statements (which Atlantic does not), such evidence would be

25  objectionable on the grounds that it: (1) is irrelevant (Fed. R. Evid. 402); (2) is an

26  improper lay opinion (Fed. R. Evid. 701); (3) lacks foundation (Fed. R. Evid. 602); and

27

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

66

1  (4) constitutes inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801,

2  802).

3  **Atlantic's response to this objection is as follows:**

4      Defendant is offering Atlantic's Exhibits 143 to prove that the word "war" was

5  used to describe the 2014 conflict between Israel and Hamas. The exhibits are offered

6  to show that these statements were made. However, if the statements were offered for

7  their content, the exhibit would still be admissible.

8      The fact is relevant because it has the tendency to prove that in the common

9  parlance, the word "war" was used to describe the 2014 conflict between Israel and

10  Hamas. (Fed. R. Evid. 401). In addition, unexplained relevancy objections are not

11  proper in the context of a motion for summary judgment. *McAllister v. Krengel Spamer &*

12  *Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P.

13  9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant has no bearing

14  upon a motion for summary judgment. A [court] can award summary judgment only

15  when there exists no genuine dispute of material fact. It cannot rely on irrelevant facts;

16  thus, relevance objections are redundant."). What the plaintiffs should be doing is

17  arguing to the Court (in their briefing) why this fact does not matter. *Id.* A relevance

18  objection with no explanation is "redundant" and meaningless in the context of

19  summary judgment. *Id.*

20      Federal Rule of Evidence 701 is inapplicable because the lawyer's statements

21  contained within the e-mails are not conclusions but rather observances and a

22  demonstration of his state of mind at the time. To the extent the comment is a

23  conclusion, it was rationally based on the lawyer's perception of the events occurring in

24  the Gaza Strip during summer 2014. The contents in the exhibits concerning the use of

25  the word "war"  is helpful in determining the fact in issue concerning the common

26  meaning of the term; and the e-mails and attachments are not based on the e-mail

27

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1   authors' scientific or specialized knowledge.  Therefore, the e-mails and attachments

2   are not improper lay opinion under Federal Rule of Evidence 701.

3          The exhibit is not excluded by hearsay, because the statement is offered not for

4   the truth of the matter asserted but merely because the statement was made. In

5   addition, a demonstration of personal knowledge is not required when the statement is

6   not offered for the truth of the matter asserted. Alternatively, the statement

7   demonstrates that as of the date of the e-mail, the declarant believed the use of the

8   word "war" was appropriate. Therefore, the statement falls within the state of mind

9   hearsay exception. Fed. R. Evid. 803(3).

10  **Atlantic's Separate Statement Paragraph 69:**

11         The plaintiffs object to Separate Statement Paragraph 69. The fact states "Hamas

12  launched an unmanned aerial vehicle believed to possibly be carrying explosives at

13  Israel on July 14, 2014."

14         Objection to the supporting statements from Human Rights Situation in

15  Palestine and other Occupied Arab Territories (Atlantic's Ex. 6) on the grounds that

16  they: (1) constitute inadmissible hearsay and no exception is applicable (Fed. R. Evid.

17  801, 802); and (2) there is no evidence sufficient to support a finding that the author

18  has personal knowledge of the factual matter stated (Fed. R. Evid. 602). Objection to

19  supporting statements of Paragraph M of the Lowenstein Declaration (Atlantic's Ex. 1)

20  on the grounds that: (1) there is no evidence sufficient to support a finding that Mr.

21  Lowenstein has personal knowledge that Hamas "launched an Unmanned Aerial

22  Vehicle believed to possibly be carrying explosives at Israel on July 14th"; and (2) to the

23  extent characterized expert opinion, there has been no showing that his statements are

24  based on sufficient facts or data or that they are the product of reliable principles and

25  methods. Fed. R. Evid. 702, 703.

26

27

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**Atlantic's response to this objection is as follows:**

As evidenced by the report attached as Exhibit No. 165 to Atlantic's Evidence, the United Nations Human Rights Council passed resolution S-21/1, which authorized and dispatched an independent, international commission of inquiry to investigate all violations of international humanitarian law and international human rights law in the Gaza Strip, in the context of the military operations that began in June 2014. The President of the Council appointed three experts to the commission to prepare a report for the Council. *Id.* Because the report was prepared by the Human Rights Council under a duty to prepare the report, the report (Atlantic's Exhibit 6) falls within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1187 (E.D. Pa. 1980) (referring to the U.N. as a "supragovernmental agency" and stating "we see treatment of the U.N. … as public officers or agencies as consistent with the theory and raison d'etre of 803(8)"); *United States v. Vidacak*, 553 F.3d 344, 351 (4th Cir. 2009) ("Courts regularly admit foreign records pursuant to [803(8)]."); *United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976) (admitting a Northern Ireland constabulary firearms report under Rule 803(8)). Furthermore, the experts who investigated and authored the report, obtained first-hand interviews from individuals involved the war; and through their experience gained personal knowledge of the factual matters stated within the report. The report's Mandate and Methodology section describes in more detail the expert's personal knowledge of the facts stated within the report. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the course of his employment obtain personal knowledge of a fact or event, even if the event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to testify are reasonably inferred from witness's positions and the nature of their participation in the matters at hand).

1    Concerning the Declaration of Frank G. Lowenstein (Atlantic's Exhibit 1),

2    Lowenstein, through his position as Special Envoy for Israeli-Palestinian Negotiations

3    and as the United States representative to the Middle East Quartet has gained personal

4    knowledge of the fighting between Israel and Hamas. Indeed, in July 2014 Mr.

5    Lowenstein traveled with Secretary Kerry as part of the U.S. efforts to help negotiate a

6    ceasefire agreement between Israel and Hamas. Lowenstein Decl. ¶ 8 at p. 3. *Cleveland v.*

7    *United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity

8    may through the course of his employment obtain personal knowledge of a fact or

9    event, even if the event took place prior to his employment."); *Self-Realization Fellowship*

10   *Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal

11   knowledge can be inferred or presumed from declarant's position.); *see also Edwards v.*

12   *Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007).  In addition, Lowenstein's

13   declaration states that all of the facts stated within the Declaration are within his

14   personal knowledge and are true and correct, a statement which plaintiffs have not

15   attempted to rebut. Furthermore, Federal Rules of Evidence 702 and 703 are

16   inapplicable because Mr. Lowenstein's declaration is offered as a fact witness rather

17   than as an expert opinion.

18   **Atlantic's Separate Statement Paragraph 70:**

19   The plaintiffs object to Separate Statement Paragraph 70. The fact states

20   "Between July 8 and July 17, 2014, fighting between Israel and Hamas engaged in

21   consistent and ongoing fighting, with Hamas primarily firing rockets and missiles into

22   Israel, and Israel responding with airstrikes."

23   Objection to the supporting statements in the July 9, 2014 email from Stephen

24   Smith (Atlantic's Ex. 133) on the grounds that there is no evidence sufficient to

25   support a finding that Mr. Smith had personal knowledge of any of the factual matter

26   referenced in the email, and the text of the email itself shows that the information was

27   not within his personal knowledge (*e.g.*, "Reports indicate … ."). Fed. R. Evid. 602.

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  Indeed, Atlantic has not even established that Mr. Smith authored the text of the email,

2  especially in light of Mr. Smith's deposition testimony regarding his and his colleague's

3  practice of copying and pasting information from third-party sources. *See* Atlantic Ex.

4  119: Smith Depo, 315:2-316:21; 321:15-17. Objection to supporting statements of

5  Paragraphs K-N of the Lowenstein Declaration (Atlantic's Ex. 1) on the grounds that:

6  (1) there is no evidence sufficient to support a finding that Mr. Lowenstein has

7  personal knowledge of the facts set forth therein; and (2) to the extent characterized

8  expert opinion, there has been no showing that his statements are based on sufficient

9  facts or data or that they are the product of reliable principles and methods. Fed. R.

10  Evid. 702, 703.

11  **Atlantic's response to this objection is as follows:**

12      The July 9, 2014 e-mail from Stephen Smith (Atlantic's Exhibit 133) is an

13  internal e-mail between plaintiffs' personnel, produced from plaintiffs. *Anand v. BP*

14  *West Coast Products LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents

15  produced in response to discovery requests are admissible on a motion for summary

16  judgment since they are self-authenticating and constitute the admissions of a party

17  opponent."). In addition, Mr. Smith has gained personal knowledge regarding the

18  region as well as security risks pertinent to Israel through his position as head of

19  security for Europe as well as from his subordinates who research the topics. RSI 251

20  (Ex. 160 to Atlantic's Evid. p. 1753-55). *Self-Realization Fellowship Church v. Ananda*

21  *Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (personal knowledge can

22  be inferred or presumed from an employee's position within a company.); *see also*

23  *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). Furthermore, the

24  plaintiffs relied on Mr. Smith's personal knowledge to keep them informed of security

25  risks. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04), RSI 250 (Ex. 119 to

26  Atlantic's Evid., p. 1397), 251 (Ex. 160 to Atlantic's Evid. p. 1753-55), Richmond Decl.

27

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  (Doc. 61-9) ¶¶ 7-9. To question Mr. Smith's knowledge now but not while *relying* on it

2  is disingenuous.

3      The e-mail does not indicate that the Plaintiff copied and pasted information

4  from another source into the e-mail. However, if the plaintiffs'

5  representative/employee, Mr. Smith,  did in fact "paste" the statements from an article

6  into the e-mail it was for the purpose of detailing the continuing hostilities surrounding

7  the Israeli and Hamas fighting and the impact it would have on filming in Israel. By

8  pasting the article into the e-mail and relying on its information, the author of the e-

9  mail adopted the statement and made clear that he believed it to be true. The e-mail is

10  therefore not hearsay because it is an opposing party's statement. Fed. R. Evid.

11  801(d)(2)(B); *Sea-Land Serv. v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (a

12  "party may adopt a written statement if the party uses the statement or takes action in

13  compliance [with] the statement.").

14      Concerning the Declaration of Frank G. Lowenstein (Atlantic's Exhibit 1),

15  Lowenstein, through his position as Special Envoy for Israeli-Palestinian Negotiations

16  and as the United States representative to the Middle East Quartet has gained personal

17  knowledge of the fighting between Israel and Hamas during the summer of 2014.

18  Indeed, in July 2014 Mr. Lowenstein traveled with Secretary Kerry as part of the U.S.

19  efforts to help negotiate a ceasefire agreement between Israel and Hamas. Lowenstein

20  Declaration ¶ 8 at p. 3. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal.

21  2008) ("An employee of an entity may through the course of his employment obtain

22  personal knowledge of a fact or event, even if the event took place prior to his

23  employment."); *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206

24  F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed from

25  a declarant's position.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D.

26  Cal. 2007). In addition, Lowenstein's declaration states that all of the facts stated within

27  the Declaration are within his personal knowledge and are true and correct, a statement

28

ANDERSON, MCPHARLIN & CONNERS LLP

LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  which plaintiffs have not attempted to rebut. Furthermore, Federal Rules of Evidence

2  702 and 703 are inapplicable because Mr. Lowenstein's declaration is offered as the

3  declaration of a fact witness rather than an expert opinion.

4  **Atlantic's Separate Statement Paragraph 74:**

5  The plaintiffs object to Separate Statement Paragraph 74. The fact states "The

6  IDF ground invasion involved thousands of IDF troops, including infantry, armored

7  and engineering corps, artillery and intelligence forces, combined with aerial and naval

8  support and accompanied by tanks and helicopter gunships."

9  Objection to the supporting statements from the Country Report on Human

10  Rights Practices for Israel and the Occupied Territories (Atlantic's Ex. 5) on the

11  grounds that they: (1) constitute inadmissible hearsay and no exception is applicable

12  (Fed. R. Evid. 801, 802); and (2) there is no evidence sufficient to support a finding that

13  the author has personal knowledge of the factual matter stated (Fed. R. Evid. 602).

14  Objection to the supporting statements from Human Rights Situation in Palestine and

15  other Occupied Arab Territories (Atlantic's Ex. 6) on the grounds that they: (1)

16  constitute inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802);

17  and (2) there is no evidence sufficient to support a finding that the author has personal

18  knowledge of the factual matter stated (Fed. R. Evid. 602). Objection to supporting

19  statements of Paragraph O of the Lowenstein Declaration (Atlantic's Ex. 1) on the

20  grounds that: (1) there is no evidence sufficient to support a finding that Mr.

21  Lowenstein has personal knowledge of the facts set forth therein; and (2) to the extent

22  characterized expert opinion, there has been no showing that his statements are based

23  on sufficient facts or data or that they are the product of reliable principles and

24  methods. Fed. R. Evid. 702, 703.

25  **Atlantic's response to this objection is as follows:**

26  The plaintiffs' memorandum expounding their evidentiary objections does not

27  recite a relevance objection but their objections in Atlantic's Statement of Facts does

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  include a relevancy objection. To recover under the relevant insuring agreement, the

2  plaintiffs must establish that they were in "imminent peril." To be in imminent peril

3  one must *expect* danger; the concept is inherently forward-looking. This fact undermines

4  the plaintiffs' argument that what occurred after they decided to leave Israel is

5  irrelevant. What occurred after they left illuminates whether they actually *were* in

6  imminent peril when they decided to leave. To argue that nothing occurring after they

7  made the decision to leave misunderstands the imminent peril insuring agreement.

8  Once peril has occurred, it is no longer imminent.  Thus, if all that matters is what

9  already occurred up to the time they decided to leave, than plaintiffs did not leave

10 because of peril that was imminent, but instead because of peril that occurred.  But,

11 that is not what is covered by the policy.

12      The U.S. State Department's Country Report on Human Rights Practices for

13 Israel and the Occupied Territories (Atlantic's Exhibit 5) is admissible because it falls

14 within a hearsay exception. The United States Congress mandated the State

15 Department to issue Country Reports to provide policymakers with an accurate

16 accounting on human rights conditions in nearly 200 countries and territories

17 worldwide. RSI 247 (Ex. 164 to Atlantic's Evid., p. 1872; Ex. 174 to Atlantic's Evid., p.

18 1914). The reports are used by the U.S. Legislative, Executive, and Judicial Branches as

19 a resource for shaping policy and guiding decisions, informing diplomatic engagements,

20 and determining the allocation of foreign aid and security sector assistance. *Id.* Because

21 the report is prepared by the U.S. State Department, which is under a duty to prepare

22 these reports, the report (Atlantic Exhibit 5) falls within the Public Records hearsay

23 exception. Fed. R. Evid. 803(8); *Doe I v. Liu Qi*, 349 F. Supp. 2d 1258, 1310 n. 39 (N.D.

24 Cal. 2004) ("The State Department's annual human rights reports have been held to fall

25 within the public records exception to the hearsay rule under Fed. R. Evid. 803(8), and

26 is thus admissible."); *Bowoto v. Chevron Corp.*, 557 F. Supp. 2d 1080, 1097 (N.D. Cal.

27 2008) ("[f]ederal courts regularly rely upon [the State Department's human rights]

28

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

reports as evidence of a country's human rights situation.'"); *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1411 (9th Cir. 1995) (relying on the annual reports in granting summary judgment on the issue of the fairness of Iranian courts).   Furthermore, as an employee of the U.S. State Department, the author has gained personal knowledge of the factual matters stated within the report. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the course of his employment obtain personal knowledge of a fact or event, even if the event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to testify are reasonably inferred from witness's positions and the nature of their participation in the matters at hand).

As evidenced by the report attached as Exhibit No. 165 to Atlantic's Evidence, the United Nations Human Rights Council passed resolution S-21/1, which authorized and dispatched an independent, international commission of inquiry to investigate all violations of international humanitarian law and international human rights law in the Gaza Strip, in the context of the military operations that began in June 2014. The President of the Council appointed three experts to the commission to prepare a report for the Council. *Id.* Because the report was prepared by the Human Rights Council under a duty to prepare the report, the report (Atlantic's Exhibit 6) falls within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1187 (E.D. Pa. 1980) (referring to the U.N. as a "supragovernmental agency" and stating "we see treatment of the U.N. … as public officers or agencies as consistent with the theory and raison d'etre of 803(8)"); *United States v. Vidacak*, 553 F.3d 344, 351 (4th Cir. 2009) ("Courts regularly admit foreign records pursuant to [803(8)]."); *United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976) (admitting a Northern Ireland constabulary firearms report under Rule 803(8)). Furthermore, the experts who investigated and authored the report, obtained first-hand interviews from individuals involved the war; and through their experience gained

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  personal knowledge of the factual matters stated within the report. The report's
2  Mandate and Methodology section describes in more detail the expert's personal
3  knowledge of the facts stated within the report. Atlantic's Ex. 6 at p. 212-14. *Cleveland v.*
4  *United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity
5  may through the course of his employment obtain personal knowledge of a fact or
6  event, even if the event took place prior to his employment."); *see also Barthelemy v. Air*
7  *Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to
8  testify are reasonably inferred from witness's positions and the nature of their
9  participation in the matters at hand).

10      Concerning the Declaration of Frank G. Lowenstein (Atlantic's Exhibit 1),
11  Lowenstein, through his position as Special Envoy for Israeli-Palestinian Negotiations
12  and as the United States representative to the Middle East Quartet has gained personal
13  knowledge of the fighting between Israel and Hamas during the summer of 2014.
14  Indeed, in July 2014 Mr. Lowenstein traveled with Secretary Kerry as part of the U.S.
15  efforts to help negotiate a ceasefire agreement between Israel and Hamas. Lowenstein
16  Decl. ¶ 8 at p. 3. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008)
17  ("An employee of an entity may through the course of his employment obtain personal
18  knowledge of a fact or event, even if the event took place prior to his employment.");
19  *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330
20  (9th Cir. 2000) (Personal knowledge can be inferred or presumed from a declarant's
21  position.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007).
22  In addition, Lowenstein's declaration states that all of the facts stated within the
23  Declaration are within his personal knowledge and are true and correct, a statement
24  which plaintiffs have not attempted to rebut. Furthermore, Federal Rules of Evidence
25  702 and 703 are inapplicable because Mr. Lowenstein's declaration is offered as a fact
26  witness rather than as an expert opinion.

27
28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

**Atlantic's Separate Statement Paragraph 75:**

The plaintiffs object to Separate Statement Paragraph 75. The fact states "Early in the morning of July 18, 2014, NBCU's head of security, Stephen Smith, sent an e-mail to Mark Binke with a "quick summary of events." It stated, in part: "Over 100 targets, including rocket launching sites and underground tunnels, were targeted throughout Gaza during the overnight hours of July 17-18 as more Israeli troops and armor advanced into Gaza. Fourteen Hamas militants were reportedly killed in Israeli attacks, while the Israel Defense Forces (IDF) sustained its first fatality after a soldier was killed by light arms fire.  Rockets meanwhile continued to be fired into southern Israeli towns within a 40 km range of the Gaza Strip since the beginning of Israel's ground offensive.   At this time there has been no de-escalation in the conflict and the threat to personnel resulting in serious injury or loss of life remains considerable.  The Israeli military said it would be calling up an additional 18,000 reservists to support ongoing operations in the Gaza Strip.   The launch of Israel's ground campaign underscores the likelihood that IDF operations will continue to escalate in both scope and size over the coming hours and days.  Although P.M. Natanjahu [sic] has stated that Israel's objective on the ground is to neutralize Hamas tunnels, we assess that Israel's ground campaign is likely to additionally target other militant infrastructure, especially rocket launching sites in Gaza periphery and the extensive underground networks that support them.  No realistic timeframe for any reduction in hostilities can be established at present."

The plaintiffs object to the fact on the grounds that it is irrelevant. Fed. R. Evid. 402.

**Atlantic's response to this objection is as follows:**

The fact is relevant because it helps prove the extent and severity of the fighting, which demonstrates that there was a war between Israel and Hamas, or that there was warlike action, that weapons of war were used, and that there was an insurrection,

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  rebellion, or revolution. (Fed. R. Evid. 401). In addition, to recover under the relevant

2  insuring agreement, the plaintiffs must establish that they were in "imminent peril." To

3  be in imminent peril one must *expect* danger; the concept is inherently forward-looking.

4  This fact undermines the plaintiffs' argument that what occurred after they decided to

5  leave Israel is irrelevant. What occurred after they left illuminates whether they actually

6  *were* in imminent peril when they decided to leave. To argue that nothing occurring

7  after they made the decision to leave misunderstands the imminent peril insuring

8  agreement.  Once peril has occurred, it is no longer imminent.  Thus, if all that matters

9  is what already occurred up to the time they decided to leave, than plaintiffs did not

10  leave because of peril that was imminent, but instead because of peril that occurred.

11  But, that is not what is covered by the policy. In addition, unexplained relevancy

12  objections are not proper in the context of a motion for summary judgment. *McAllister*

13  *v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at

14  *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant

15  has no bearing upon a motion for summary judgment. A [court] can award summary

16  judgment only when there exists no genuine dispute of material fact. It cannot rely on

17  irrelevant facts; thus, relevance objections are redundant."). What the plaintiffs should

18  be doing is arguing to the Court (in their briefing) why this fact does not matter. *Id.* A

19  relevance objection with no explanation is "redundant" and meaningless in the context

20  of summary judgment. *Id.*

21  **Atlantic's Separate Statement Paragraph 76:**

22      The plaintiffs object to Separate Statement Paragraph 76. The fact states "As the

23  fighting continued, Israel conducted more and more airstrikes and attacked with tanks

24  and soldiers on the ground."

25      Objection to the supporting statements in the August 1, 2014 email from Chris

26  Biggs (Atlantic's Ex. 33) on the grounds that there is no evidence sufficient to support

27  a finding that Mr. Biggs had personal knowledge of any of the matter referenced in the

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

email, or that Mr. Biggs even authored the text of the email given Mr. Smith's deposition testimony regarding Mr. Biggs' practice of copying and pasting information from third-party sources. *See* Atlantic Ex. 119: Smith Depo, 315:2-316:21; Fed. R. Evid. 602. Objection to the supporting statements from the Country Report on Human Rights Practices for Israel and the Occupied Territories (Atlantic's Ex. 5) on the grounds that they: (1) constitute inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no evidence sufficient to support a finding that the author has personal knowledge of the factual matter stated (Fed. R. Evid. 602). Objection to the supporting statements from Human Rights Situation in Palestine and other Occupied Arab Territories (Atlantic's Ex. 6) on the grounds that they: (1) constitute inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no evidence sufficient to support a finding that the author has personal knowledge of the factual matter stated (Fed. R. Evid. 602).

**Atlantic's response to this objection is as follows:**

To recover under the relevant insuring agreement, the plaintiffs must establish that they were in "imminent peril." To be in imminent peril one must *expect* danger; the concept is inherently forward-looking. This fact undermines the plaintiffs' argument that what occurred after they decided to leave Israel is irrelevant. What occurred after they left illuminates whether they actually *were* in imminent peril when they decided to leave. To argue that nothing occurring after they made the decision to leave misunderstands the imminent peril insuring agreement. Once peril has occurred, it is no longer imminent. Thus, if all that matters is what already occurred up to the time they decided to leave, than plaintiffs did not leave because of peril that was imminent, but instead because of peril that occurred. But, that is not what is covered by the policy.

The August 1, 2014 email from Chris Biggs (Atlantic's Ex. 33) is an internal e-mail between plaintiffs' personnel, produced from plaintiffs. *Anand v. BP West Coast Products*

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

*LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent."). In addition, Mr. Biggs has gained personal knowledge regarding the region as well as security risks pertinent to Israel through his position as security and intelligence analyst. RSI 251 (Ex. 160 to Atlantic's Evid. p. 1753-55). *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed from an employee's position within a company.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). Furthermore, the plaintiffs relied on Mr. Biggs' personal knowledge to keep them informed of security risks. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04), RSI 251 (Ex. 160 to Atlantic's Evid. p. 1753-55), Randi Richmond Decl. (Doc. 61-9) ¶¶ 7-9. To question Mr. Biggs' knowledge now but not while *relying* on it is disingenuous. SUF 43 (Ex. 79 to Atlantic's Evid., p. 1046), 44 (Ex. 79 to Atlantic's Evid., p. 1046), 45 (Ex. 142 to Atlantic's Evid., p. 1578) (showing that Mr. Biggs e-mailed Mr. Smith with security information, which Mr. Smith then adopted by sending the same information to an employee of the plaintiffs), RSI 251 (Ex. 160 to Atlantic's Evid. p. 1753-55) (demonstrating Mr. Biggs' role).

The e-mail does not indicate that the plaintiffs copied and pasted information from another source into the e-mail. However, if Mr. Biggs, did in fact "copy" the statements from an article into the e-mail it was for the purpose of detailing the continuing hostilities surrounding the Israeli and Hamas fighting and the impact it would have on filming in Israel. By pasting the article into the e-mail and relying on its information, he manifested or adopted the statement and demonstrated that he believed it to be true. Therefore, the e-mail is not hearsay but is an opposing party's statement. Fed. R. Evid. 801(d)(2)(B); *Sea-Land Serv. v. Lozen Int'l, LLC*, 285 F.3d 808,

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

821 (9th Cir. 2002) (a "party may adopt a written statement if the party uses the statement or takes action in compliance [with] the statement.").

The U.S. State Department's Country Report on Human Rights Practices for Israel and the Occupied Territories (Atlantic's Exhibit 5) is admissible because it falls within a hearsay exception. The United States Congress mandated the State Department to issue Country Reports to provide policymakers with an accurate accounting on human rights conditions in nearly 200 countries and territories worldwide. RSI 247 (Ex. 164 to Atlantic's Evid., p. 1872; Ex. 174 to Atlantic's Evid., p. 1914). The reports are used by the U.S. Legislative, Executive, and Judicial Branches as a resource for shaping policy and guiding decisions, informing diplomatic engagements, and determining the allocation of foreign aid and security sector assistance. *Id.* Because the report is prepared by the U.S. State Department, which is under a duty to prepare these reports, the report (Atlantic Exhibit 5) falls within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Doe I v. Liu Qi*, 349 F. Supp. 2d 1258, 1310 n. 39 (N.D. Cal. 2004) ("The State Department's annual human rights reports have been held to fall within the public records exception to the hearsay rule under Fed. R. Evid. 803(8), and is thus admissible."); *Bowoto v. Chevron Corp.*, 557 F. Supp. 2d 1080, 1097 (N.D. Cal. 2008) ("[f]ederal courts regularly rely upon [the State Department's human rights] reports as evidence of a country's human rights situation."); *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1411 (9th Cir. 1995) (relying on the annual reports in granting summary judgment on the issue of the fairness of Iranian courts). Furthermore, as an employee of the U.S. State Department, the author has gained personal knowledge of the factual matters stated within the report. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the course of his employment obtain personal knowledge of a fact or event, even if the event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE

1    Cir. 1990) (personal knowledge and competence to testify are reasonably inferred from

2    witness's positions and the nature of their participation in the matters at hand).

3          As evidenced by the report attached as Exhibit No. 165 to Atlantic's Evidence,

4    the United Nations Human Rights Council passed resolution S-21/1, which authorized

5    and dispatched an independent, international commission of inquiry to investigate all

6    violations of international humanitarian law and international human rights law in the

7    Gaza Strip, in the context of the military operations that began in June 2014. The

8    President of the Council appointed three experts to the commission to prepare a report

9    for the Council. *Id.* Because the report was prepared by the Human Rights Council

10   under a duty to prepare the report, the report (Atlantic's Exhibit 6) falls within the

11   Public Records hearsay exception. Fed. R. Evid. 803(8); *Zenith Radio Corp. v. Matsushita*

12   *Elec. Indus. Co.*, 505 F. Supp. 1125, 1187 (E.D. Pa. 1980) (referring to the U.N. as a

13   "supragovernmental agency" and stating "we see treatment of the U.N. … as public

14   officers or agencies as consistent with the theory and raison d'etre of 803(8)"); *United*

15   *States v. Vidacak*, 553 F.3d 344, 351 (4th Cir. 2009) ("Courts regularly admit foreign

16   records pursuant to [803(8)]."); *United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976)

17   (admitting a Northern Ireland constabulary firearms report under Rule 803(8)).

18   Furthermore, the experts who investigated and authored the report, obtained first-hand

19   interviews from individuals involved the war; and through their experience gained

20   personal knowledge of the factual matters stated within the report. The report's

21   Mandate and Methodology section describes in more detail the expert's personal

22   knowledge of the facts stated within the report. Atlantic's Ex. 36 at p. 702. *Cleveland v.*

23   *United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity

24   may through the course of his employment obtain personal knowledge of a fact or

25   event, even if the event took place prior to his employment."); *see also Barthelemy v. Air*

26   *Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to

27

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  testify are reasonably inferred from witness's positions and the nature of their

2  participation in the matters at hand).

3  **Atlantic's Separate Statement Paragraph 77:**

4      The plaintiffs object to Separate Statement Paragraph 77. The fact states "By

5  August 1st, NBCU's security team reported that "1,460 Palestinians, mostly civilians,

6  have died in the conflict…sixty-three Israelis, mostly soldiers, have died."

7      The plaintiffs object to the fact on the grounds that it is irrelevant. Fed. R. Evid.

8  402.

9  **Atlantic's response to this objection is as follows:**

10      The fact is relevant to provide the court with context of the magnitude of the

11  conflict and hostilities that occurred in 2014 between Israel and Hamas and it has the

12  tendency to show that the hostilities continued for a significant number of days,

13  demonstrating that it was not a singular terrorist attack but rather a war (or warlike

14  action). (Fed. R. Evid. 401). In addition, to recover under the relevant insuring

15  agreement, the plaintiffs must establish that they were in "imminent peril." To be in

16  imminent peril one must *expect* danger; the concept is inherently forward-looking. This

17  fact undermines the plaintiffs' argument that what occurred after they decided to leave

18  Israel is irrelevant. What occurred after they left illuminates whether they actually *were*

19  in imminent peril when they decided to leave. To argue that nothing occurring after

20  they made the decision to leave misunderstands the imminent peril insuring agreement.

21  Once peril has occurred, it is no longer imminent.  Thus, if all that matters is what

22  already occurred up to the time they decided to leave, than plaintiffs did not leave

23  because of peril that was imminent, but instead because of peril that occurred.  But,

24  that is not what is covered by the policy. In addition, unexplained relevancy objections

25  are not proper in the context of a motion for summary judgment. *McAllister v. Krengel*

26  *Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31

27  (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant has no

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

28

1  bearing upon a motion for summary judgment. A [court] can award summary judgment

2  only when there exists no genuine dispute of material fact. It cannot rely on irrelevant

3  facts; thus, relevance objections are redundant."). What the plaintiffs should be doing is

4  arguing to the Court (in their briefing) why this fact does not matter. *Id.* A relevance

5  objection with no explanation is "redundant" and meaningless in the context of

6  summary judgment. *Id.*

7  **Atlantic's Separate Statement Paragraph 78:**

8      The plaintiffs object to Separate Statement Paragraph 78. The fact states

9  "Although there were several attempts to broker a ceasefire while Israel's Operation

10  Protective Edge was in effect (July 8 through August 26), all were unsuccessful and any

11  ceasefires they could agree to were short-lived."

12      Objection to the supporting statements of the July 11, 2014 email from Max

13  Security (Atlantic's Ex. 22) on the grounds that: (1) they constitute inadmissible hearsay

14  and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no evidence

15  sufficient to support a finding as to the identity of the author or that he/she has

16  personal knowledge of the factual matter stated (Fed. R. Evid. 602). Objection to the

17  supporting statements in the July 17, 2014 email from Stephen Smith (Atlantic's Ex. 35)

18  and the August 1, 2014 email from Chris Biggs (Atlantic's Ex. 34) on the grounds that

19  there is no evidence sufficient to support a finding that the authors of these emails had

20  personal knowledge of any of the factual matters referenced in them, or that Mr. Biggs

21  and Mr. Smith even authored the text of their respective emails, especially in light of

22  Mr. Smith's deposition testimony regarding his and his colleague's practice of copying

23  and pasting information from third-party sources. *See* Atlantic Ex. 119: Smith Depo,

24  315:2-316:21; 321:15-17.

25  **Atlantic's response to this objection is as follows:**

26      The plaintiffs' memorandum expounding their evidentiary objections does not

27  recite a relevance objection but their objections in Atlantic's Statement of Facts does

28

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  include a relevancy objection. To recover under the relevant insuring agreement, the

2  plaintiffs must establish that they were in "imminent peril." To be in imminent peril

3  one must *expect* danger; the concept is inherently forward-looking. This fact undermines

4  the plaintiffs' argument that what occurred after they decided to leave Israel is

5  irrelevant. What occurred after they left illuminates whether they actually *were* in

6  imminent peril when they decided to leave. To argue that nothing occurring after they

7  made the decision to leave misunderstands the imminent peril insuring agreement.

8  Once peril has occurred, it is no longer imminent.  Thus, if all that matters is what

9  already occurred up to the time they decided to leave, than plaintiffs did not leave

10  because of peril that was imminent, but instead because of peril that occurred.  But,

11  that is not what is covered by the policy.

12  The July 11, 2014 e-mail from Max Security (Atlantic's Exhibit 22) is not hearsay. Max

13  Security Intelligence provides intelligence and risk analysis to assess, prepare for, and

14  mitigate threats before they become a problem. RSI 248 (Ex. 168 to Atlantic's Evid., p.

15  1884; Ex. 169 to Atlantic's Evid., p. 1886-88). The plaintiffs hired Max Security

16  Intelligence to provide security for the production of *Dig* while in Israel. SUF 31 (Ex.

17  119 to Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to

18  Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's

19  Evid., p. 1285), 33 (Ex. 95 to Atlantic's Evid., p. 1173-75; Ex. 119 to Atlantic's Evid., p.

20  1415; Ex. 108 to Atlantic's Evid., p. 1268-1270; Ex. 96 to Atlantic's Evid., p. 1178-

21  1180; Ex. 18 to Atlantic's Evid., p. 606-09; Ex. 17 to Atlantic's Evid., p. 600-02; Ex. 97

22  to Atlantic's Evid., p. 1184-86; Ex. 98 to Atlantic's Evid., p. 1190-92; Ex. 99 to

23  Atlantic's Evid., p. 1196-97; Ex. 100 to Atlantic's Evid., p. 1201-04; Ex. 21 to Atlantic's

24  Evid., p. 625-31; Ex. 109 to Atlantic's Evid., p. 1274-76; Ex. 22 to Atlantic's Evid., p.

25  633-35; Ex. 32 to Atlantic's Evid., p. 686-88; Ex. 23 to Atlantic's Evid., p. 639-41; Ex.

26  110 to Atlantic's Evid., p. 1280; Ex. 24 to Atlantic's Evid., p. 644-47; Ex. 101 to

27  Atlantic's Evid., p. 1207-10; Ex. 25 to Atlantic's Evid., p. 650-52; Ex. 10 to Atlantic's

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

Evid., p. 478-80; Ex. 102 to Atlantic's Evid., p. 1213-15; Ex. 26 to Atlantic's Evid., p. 655-57), 34 (Ex. 119 to Atlantic's Evid., p. 1415). Max Security Intelligence was also hired to provide reports to the plaintiffs regarding the security for the production of *Dig* in Israel. *Id.* Therefore, Max Security was an agent of the plaintiffs when it prepared those reports and sent e-mails relating to the security situation. As an agent, its e-mail to the plaintiffs concerning security—which was the basis of the employment relationship—is not hearsay because it is an opposing party's statement. Fed. R. Evid. 801(d)(2)(D); *MGM Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006) (an independent contractor—a designer—was the agent of a litigant for purposes of Rule 801(d)(2)(D) because the contractor was included in e-mails to the litigant's design "team" and the litigant directed the contractor to perform certain work). Alternatively, the statements are not hearsay because the plaintiffs relied on the information within the Max Security reports in assessing security concerns associated with filming in Israel and therefore believed it to be true. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04); 31 (Ex. 119 to Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's Evid., p. 1285), 33 (Ex. 95 to Atlantic's Evid., p. 1173-75; Ex. 119 to Atlantic's Evid., p. 1415; Ex. 108 to Atlantic's Evid., p. 1268-1270; Ex. 96 to Atlantic's Evid., p. 1178-1180; Ex. 18 to Atlantic's Evid., p. 606-09; Ex. 17 to Atlantic's Evid., p. 600-02; Ex. 97 to Atlantic's Evid., p. 1184-86; Ex. 98 to Atlantic's Evid., p. 1190-92; Ex. 99 to Atlantic's Evid., p. 1196-97; Ex. 100 to Atlantic's Evid., p. 1201-04; Ex. 21 to Atlantic's Evid., p. 625-31; Ex. 109 to Atlantic's Evid., p. 1274-76; Ex. 22 to Atlantic's Evid., p. 633-35; Ex. 32 to Atlantic's Evid., p. 686-88; Ex. 23 to Atlantic's Evid., p. 639-41; Ex. 110 to Atlantic's Evid., p. 1280; Ex. 24 to Atlantic's Evid., p. 644-47; Ex. 101 to Atlantic's Evid., p. 1207-10; Ex. 25 to Atlantic's Evid., p. 650-52; Ex. 10 to Atlantic's Evid., p. 478-80; Ex. 102 to Atlantic's Evid., p. 1213-15; Ex. 26 to Atlantic's Evid., p. 655-57), 34 (Ex. 119 to Atlantic's Evid.,

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  p. 1415), RSI 250 (Ex. 119 to Atlantic's Evid., p. 1397), 251 (Ex. 160 to Atlantic's Evid.

2  p. 1753-55), Richmond Decl. (Doc. 61-9) ¶¶ 7-9. Fed. R. Evid. 801(d)(2)(B); *Sea-Land*

3  *Serv. v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (a "party may adopt a written

4  statement if the party uses the statement or takes action in compliance [with] the

5  statement."). In addition, the e-mail is an internal e-mail between Plaintiff's head of

6  security and plaintiffs' security team (agent), produced from plaintiffs. *Anand v. BP West*

7  *Coast Products LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents

8  produced in response to discovery requests are admissible on a motion for summary

9  judgment since they are self-authenticating and constitute the admissions of a party

10  opponent.").

11      The author of the Max Security report is presumed to have personal knowledge

12  concerning the security risks and concerns in the region—considering this was the

13  purpose of the agency relationship and Max Security's specialty. SUF 31 (Ex. 119 to

14  Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to

15  Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's

16  Evid., p. 1285), RSI 248 (Ex. 168 to Atlantic's Evid., p. 1884; Ex. 169 to Atlantic's

17  Evid., p. 1886-88). *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,

18  206 F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed

19  from an employee's position within a company.); *see also Edwards v. Toys "R" Us*, 527 F.

20  Supp. 2d 1197, 1201 (C.D. Cal. 2007).

21      The July 17, 2014 e-mail and the August 1, 2014 e-mail (Atlantic's Exhibit 35,

22  34) are not hearsay. There is nothing from either of the e-mails that indicates that the

23  plaintiffs copied and pasted information from another source into either of the e-mails.

24  However, if the author  did in fact "paste" the statements from an article into the e-

25  mail it was for the purpose of detailing the continuing hostilities surrounding the Israeli

26  and Hamas fighting and the failed attempts at a cease-fire as well as the impact it would

27  have on filming in Israel. By pasting the article into the e-mail and relying on its

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  information, the author adopted the statement and made clear that he believed it to be

2  true. Therefore, the e-mails are not hearsay but are an opposing party's statement. Fed.

3  R. Evid. 801(d)(2)(B); *Sea-Land Serv. v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir.

4  2002) (a "party may adopt a written statement if the party uses the statement or takes

5  action in compliance [with] the statement.").

6      The exhibits are internal e-mails between plaintiffs' head of security and security

7  personnel, produced from plaintiffs. *Anand v. BP West Coast Products LLC*, 484 F. Supp.

8  2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents produced in response to discovery

9  requests are admissible on a motion for summary judgment since they are self-

10  authenticating and constitute the admissions of a party opponent."). As to personal

11  knowledge, Mr. Smith and the security personnel have gained personal knowledge

12  regarding the region as well as security risks pertinent to Israel through their positions

13  as well as from their subordinates who were in Israel observing the hostilities or

14  researching the topics. RSI 251 (Ex. 160 to Atlantic's Evid. at p. 1753-55). Considering

15  the plaintiffs' asserted the reason they left Israel was due to the threat and fear of

16  missiles—based on the advice of their security personnel—it may be inferred that their

17  security personnel had personal knowledge concerning the risk of the hostilities

18  between Israel and Hamas escalating. SUF 104 (Ex. 41 to Atlantic's Evid., p. 754),

19  Declaration of Randi Richmond, (Document 61-9) at ¶¶ 7-9. *Self-Realization Fellowship*

20  *Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal

21  knowledge can be inferred or presumed from an employee's position within a

22  company.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007).

23  Furthermore, the plaintiffs relied on Mr. Smith's personal knowledge to keep them

24  informed of security risks. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04),

25  RSI 250 (Ex. 119 to Atlantic's Evid., p. 1397), 251 (Ex. 160 to Atlantic's Evid. p. 1753-

26  55),  Declaration of Randi Richmond, (Document 61-9) at ¶¶ 7-9. To question Mr.

27  Smith's knowledge now but not while *relying* on it is disingenuous.

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

**Atlantic's Separate Statement Paragraph 79:**

The plaintiffs object to Separate Statement Paragraph 79. The fact states "On August 26, 2014, both sides agreed to an indefinite ceasefire, drawing the war to a close."

Objection to the supporting statements from the Country Report on Human Rights Practices for Israel and the Occupied Territories (Atlantic's Ex. 5) on the grounds that they: (1) constitute inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no evidence sufficient to support a finding that the author has personal knowledge of the factual matter stated (Fed. R. Evid. 602). Objection to the supporting statements from Human Rights Situation in Palestine and other Occupied Arab Territories (Atlantic's Ex. 6) on the grounds that they: (1) constitute inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no evidence sufficient to support a finding that the author has personal knowledge of the factual matter stated (Fed. R. Evid. 602). Objection to the supporting statements from Fragmented Lives Humanitarian Overview (Atlantic's Ex. 36) on the grounds that they: (1) constitute inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802); and (2) there is no evidence sufficient to support a finding that the author has personal knowledge of the factual matter stated (Fed. R. Evid. 602). In addition, they argue that judicial notice cannot be taken of Atlantic's self-serving characterization of the conflict as a "war," because it was not a war, and it goes without saying that it therefore is not an indisputable fact that is generally known or that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201.

**Atlantic's response to this objection is as follows:**

The plaintiffs' memorandum expounding their evidentiary objections does not recite a relevance objection, but their objections in Atlantic's Statement of Facts does include a relevancy objection. To recover under the relevant insuring agreement, the

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1   plaintiffs must establish that they were in "imminent peril." To be in imminent peril

2   one must *expect* danger; the concept is inherently forward-looking. This fact undermines

3   the plaintiffs' argument that what occurred after they decided to leave Israel is

4   irrelevant. What occurred after they left illuminates whether they actually *were* in

5   imminent peril when they decided to leave. To argue that nothing occurring after they

6   made the decision to leave misunderstands the imminent peril insuring agreement.

7   Once peril has occurred, it is no longer imminent.  Thus, if all that matters is what

8   already occurred up to the time they decided to leave, than plaintiffs did not leave

9   because of peril that was imminent, but instead because of peril that occurred.  But,

10   that is not what is covered by the policy.

11       The U.S. State Department's Country Report on Human Rights Practices for

12   Israel and the Occupied Territories (Atlantic's Exhibit 5) is admissible because it falls

13   within a hearsay exception. The United States Congress mandated the State

14   Department to issue Country Reports to provide policymakers with an accurate

15   accounting on human rights conditions in nearly 200 countries and territories

16   worldwide. RSI 247 (Ex. 164 to Atlantic's Evid., p. 1872; Ex. 174 to Atlantic's Evid., p.

17   1914). The reports are used by the U.S. Legislative, Executive, and Judicial Branches as

18   a resource for shaping policy and guiding decisions, informing diplomatic engagements,

19   and determining the allocation of foreign aid and security sector assistance. *Id.* Because

20   the report is prepared by the U.S. State Department, which is under a duty to prepare

21   these reports, the report (Atlantic Exhibit 5) falls within the Public Records hearsay

22   exception. Fed. R. Evid. 803(8); *Doe I v. Liu Qi*, 349 F. Supp. 2d 1258, 1310 n. 39 (N.D.

23   Cal. 2004) ("The State Department's annual human rights reports have been held to fall

24   within the public records exception to the hearsay rule under Fed. R. Evid. 803(8), and

25   is thus admissible."); *Bowoto v. Chevron Corp.*, 557 F. Supp. 2d 1080, 1097 (N.D. Cal.

26   2008) ("[f]ederal courts regularly rely upon [the State Department's human rights]

27   reports as evidence of a country's human rights situation."); *Bank Melli Iran v. Pahlavi*,

28

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

58 F.3d 1406, 1411 (9th Cir. 1995) (relying on the annual reports in granting summary judgment on the issue of the fairness of Iranian courts).  Furthermore, as an employee of the U.S. State Department, the author has gained personal knowledge of the factual matters stated within the report. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the course of his employment obtain personal knowledge of a fact or event, even if the event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to testify are reasonably inferred from witness's positions and the nature of their participation in the matters at hand).

As evidenced by the report attached as Exhibit No. 165 to Atlantic's Evidence, the United Nations Human Rights Council passed resolution S-21/1, which authorized and dispatched an independent, international commission of inquiry to investigate all violations of international humanitarian law and international human rights law in the Gaza Strip, in the context of the military operations that began in June 2014. The President of the Council appointed three experts to the commission to prepare a report for the Council. *Id.* Because the report was prepared by the Human Rights Council under a duty to prepare the report, the report (Atlantic's Exhibit 6) falls within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1187 (E.D. Pa. 1980) (referring to the U.N. as a "supragovernmental agency" and stating "we see treatment of the U.N. … as public officers or agencies as consistent with the theory and raison d'etre of 803(8)"); *United States v. Vidacak*, 553 F.3d 344, 351 (4th Cir. 2009) ("Courts regularly admit foreign records pursuant to [803(8)]."); *United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976) (admitting a Northern Ireland constabulary firearms report under Rule 803(8)). Furthermore, the experts who investigated and authored the report, obtained first-hand interviews from individuals involved the war; and through their experience gained personal knowledge of the factual matters stated within the report. The report's

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE

Mandate and Methodology section describes in more detail the expert's personal knowledge of the facts stated within the report. Atlantic's Ex. 6 at p. 212-14. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the course of his employment obtain personal knowledge of a fact or event, even if the event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to testify are reasonably inferred from witness's positions and the nature of their participation in the matters at hand).

The United Nations Office for the Coordination of Humanitarian Affairs (OCHA) is part of the U.N. Secretariat mandated for bringing together humanitarian actors to ensure a coherent response to emergencies, policy development and humanitarian advocacy. OCHA offices collect and analyze information to provide an overview of protracted and acute emergencies. OCHA is responsible for consolidating and publishing information across the spectrum of humanitarian responses. RSI 252 (Ex. 172 to Atlantic's Evid. p. 1905-07).  Because the report was prepared by OCHA under a duty to prepare a report for local and international actors to use in policy and operational decisions, the report (Atlantic's Exhibit 36) falls within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1187 (E.D. Pa. 1980) (referring to the U.N. as a "supragovernmental agency" and stating "we see treatment of the U.N. and OECD as public officers or agencies as consistent with the theory and raison d'etre of 803(8)"); *United States v. Vidacak*, 553 F.3d 344, 351 (4th Cir. 2009) ("[c]ourts regularly admit foreign records pursuant to this exception."); *United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976) (Northern Ireland constabulary firearms report).  Furthermore, the authors collected data and cross-checked it from multiple sources including other U.N. agencies, international NGOs, Palestinian and Israeli NGOs and government sources in preparing the report. Atlantic's Ex. 36 at p. 702. The authors through their

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

92

experience gained personal knowledge of the factual matters stated within the report. *Cleveland v. United States*, 546 F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the course of his employment obtain personal knowledge of a fact or event, even if the event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to testify are reasonably inferred from witness's positions and the nature of their participation in the matters at hand).

The Defendant concedes that the Court may not take judicial notice that the 2014 conflict between Israel and Hamas was a "war," considering that is one of the key legal disputes in this lawsuit.  But the Court may take judicial of historical events and political events and developments. Therefore, the Court may take judicial notice of the historical fact that Israel and Hamas reached an indefinite ceasefire on August 26, 2014. *Cactus Corner, LLC v. United States Dep't of Agric.*, 346 F. Supp. 2d 1075, 1099 (E.D. Cal. 2004) ("Courts will also take judicial notice of historical happenings and events.); *Desir v. Ilchert*, 840 F.2d 723, 730 (9th Cir. 1988) (In a habeas corpus proceeding brought by an asylum applicant, the court took judicial notice of political developments.); *Kaczmarczyk v. INS*, 933 F.2d 588, 594 n.4 (7th Cir. 1991) ("We exercise our discretion to take judicial notice of further changes in Polish politics that occurred between the time of the BIA's decision and our review."); *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1357 (3d Cir. 1994) ("While not critical to our holding, we take judicial notice of newspaper accounts highlighting controversies over the DRPA's toll increases, spending practices, and public announcements.").

**Atlantic's Separate Statement Paragraph 80:**

The plaintiffs object to Separate Statement Paragraph 80. The fact states "Israel continued Operation Protective Edge from July 8 to August 26, 2014, nearly 50 days."

The plaintiffs object to the fact on the grounds that it is irrelevant. Fed. R. Evid. 402.

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

**Atlantic's response to this objection is as follows:**

The fact is relevant to provide the court with context of the magnitude of the conflict and hostilities that occurred in 2014 between Israel and Hamas and it has the tendency to show that the hostilities continued for a significant number of days and was not a singular terrorist attack but rather a war (or warlike action, or an insurrection, rebellion, or revolution). (Fed. R. Evid. 401). In addition, to recover under the relevant insuring agreement, the plaintiffs must establish that they were in "imminent peril." To be in imminent peril one must *expect* danger; the concept is inherently forward-looking. This fact undermines the plaintiffs' argument that what occurred after they decided to leave Israel is irrelevant. What occurred after they left illuminates whether they actually *were* in imminent peril when they decided to leave. To argue that nothing occurring after they made the decision to leave misunderstands the imminent peril insuring agreement.  Once peril has occurred, it is no longer imminent.  Thus, if all that matters is what already occurred up to the time they decided to leave, than plaintiffs did not leave because of peril that was imminent, but instead because of peril that occurred. But, that is not what is covered by the policy. In addition, unexplained relevancy objections are not proper in the context of a motion for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant has no bearing upon a motion for summary judgment. A [court] can award summary judgment only when there exists no genuine dispute of material fact. It cannot rely on irrelevant facts; thus, relevance objections are redundant."). What the plaintiffs should be doing is arguing to the Court (in their briefing) why this fact does not matter. *Id.* A relevance objection with no explanation is "redundant" and meaningless in the context of summary judgment. *Id.*

**Atlantic's Separate Statement Paragraph 81:**

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1    The plaintiffs object to Separate Statement Paragraph 81. The fact states
2 "During July 8 to August 26, 2014, Hamas and other militant groups fired 4,465
3 rockets and mortar shells into Israel, while the Israeli government conducted 5,242
4 airstrikes within Gaza and a 20-day military ground operation in Gaza."

5    The plaintiffs object to the fact on the grounds that it is irrelevant. Fed. R. Evid.
6 402.

7 **Atlantic's response to this objection is as follows:**

8    The fact is relevant to provide the court with context of the magnitude of the
9 conflict and hostilities that occurred in 2014 between Israel and Hamas and it has the
10 tendency to show that the hostilities continued for a significant number of days and
11 was not a singular terrorist attack but rather a war (or warlike action, and that involved
12 weapons of war). (Fed. R. Evid. 401). In addition, to recover under the relevant
13 insuring agreement, the plaintiffs must establish that they were in "imminent peril." To
14 be in imminent peril one must *expect* danger; the concept is inherently forward-looking.
15 This fact undermines the plaintiffs' argument that what occurred after they decided to
16 leave Israel is irrelevant. What occurred after they left illuminates whether they actually
17 *were* in imminent peril when they decided to leave. In addition, unexplained relevancy
18 objections are not proper in the context of a motion for summary judgment. *McAllister*
19 *v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at
20 *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant
21 has no bearing upon a motion for summary judgment. A [court] can award summary
22 judgment only when there exists no genuine dispute of material fact. It cannot rely on
23 irrelevant facts; thus, relevance objections are redundant."). What the plaintiffs should
24 be doing is arguing to the Court (in their briefing) why this fact does not matter. *Id.* A
25 relevance objection with no explanation is "redundant" and meaningless in the context
26 of summary judgment. *Id.*

27

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1   **Atlantic's Separate Statement Paragraph 82:**

2       The plaintiffs object to Separate Statement Paragraph 82. The fact states "The

3   50 days of intense fighting left both Israel and Palestine ravaged—but Palestine was hit

4   particularly hard due to Israel's access to much more high-powered weaponry

5   (primarily fighter jets and tanks) and its possession of what is known as the Iron Dome:

6   a missile-defense system that intercepts rockets and missiles before they land in Israel."

7       Objection to the supporting statements of the July 20, 2014 and July 21, 2014

8   emails from Max Security (Atlantic's Exs. 37 and 38) on the grounds that: (1) they

9   constitute inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802);

10  and (2) there is no evidence sufficient to support a finding as to the identity of the

11  author or that he/she has personal knowledge of the factual matter stated (Fed. R.

12  Evid. 602).

13  **Atlantic's response to this objection is as follows:**

14      The plaintiffs' memorandum expounding their evidentiary objections does not

15  recite a relevance objection, but their objections in Atlantic's Statement of Facts does

16  include a relevancy objection. To recover under the relevant insuring agreement, the

17  plaintiffs must establish that they were in "imminent peril." To be in imminent peril

18  one must *expect* danger; the concept is inherently forward-looking. This fact undermines

19  the plaintiffs' argument that what occurred after they decided to leave Israel is

20  irrelevant. What occurred after they left illuminates whether they actually *were* in

21  imminent peril when they decided to leave. To argue that nothing occurring after they

22  made the decision to leave misunderstands the imminent peril insuring agreement.

23  Once peril has occurred, it is no longer imminent. Thus, if all that matters is what

24  already occurred up to the time they decided to leave, than plaintiffs did not leave

25  because of peril that was imminent, but instead because of peril that occurred. But,

26  that is not what is covered by the policy.

27

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

The July 20, 2014 and July 21, 2014 e-mails from Max Security (Atlantic's Exhibits 37 and 38) are not hearsay. Max Security Intelligence provides intelligence and risk analysis to assess, prepare for, and mitigate threats before they become a problem. RSI 248 (Ex. 168 to Atlantic's Evid., p. 1884; Ex. 169 to Atlantic's Evid., p. 1886-88). The plaintiffs hired Max Security Intelligence to provide security for the production of *Dig* while in Israel. SUF 31 (Ex. 119 to Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's Evid., p. 1285), 33 (Ex. 95 to Atlantic's Evid., p. 1173-75; Ex. 119 to Atlantic's Evid., p. 1415; Ex. 108 to Atlantic's Evid., p. 1268-1270; Ex. 96 to Atlantic's Evid., p. 1178-1180; Ex. 18 to Atlantic's Evid., p. 606-09; Ex. 17 to Atlantic's Evid., p. 600-02; Ex. 97 to Atlantic's Evid., p. 1184-86; Ex. 98 to Atlantic's Evid., p. 1190-92; Ex. 99 to Atlantic's Evid., p. 1196-97; Ex. 100 to Atlantic's Evid., p. 1201-04; Ex. 21 to Atlantic's Evid., p. 625-31; Ex. 109 to Atlantic's Evid., p. 1274-76; Ex. 22 to Atlantic's Evid., p. 633-35; Ex. 32 to Atlantic's Evid., p. 686-88; Ex. 23 to Atlantic's Evid., p. 639-41; Ex. 110 to Atlantic's Evid., p. 1280; Ex. 24 to Atlantic's Evid., p. 644-47; Ex. 101 to Atlantic's Evid., p. 1207-10; Ex. 25 to Atlantic's Evid., p. 650-52; Ex. 10 to Atlantic's Evid., p. 478-80; Ex. 102 to Atlantic's Evid., p. 1213-15; Ex. 26 to Atlantic's Evid., p. 655-57), 34 (Ex. 119 to Atlantic's Evid., p. 1415). Max Security Intelligence was also hired to provide reports to the plaintiffs regarding the security for the production of *Dig* in Israel. *Id.* Therefore, Max Security was an agent of the plaintiffs when it prepared those reports and sent e-mails relating to the security situation. As an agent, its e-mail to the plaintiffs concerning security—which was the basis of the employment relationship—is not hearsay because it is an opposing party's statement. Fed. R. Evid. 801(d)(2)(D); *MGM Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006) (an independent contractor—a designer—was the agent of a litigant for purposes of Rule 801(d)(2)(D) because the contractor was included in e-mails to the litigant's design "team" and the litigant directed the contractor to perform certain

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

work). Alternatively, the statements are not hearsay because the plaintiffs relied on the information within the Max Security reports in assessing security concerns associated with filming in Israel and therefore believed it to be true. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04); 31 (Ex. 119 to Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's Evid., p. 1285), 33 (Ex. 95 to Atlantic's Evid., p. 1173-75; Ex. 119 to Atlantic's Evid., p. 1415; Ex. 108 to Atlantic's Evid., p. 1268-1270; Ex. 96 to Atlantic's Evid., p. 1178-1180; Ex. 18 to Atlantic's Evid., p. 606-09; Ex. 17 to Atlantic's Evid., p. 600-02; Ex. 97 to Atlantic's Evid., p. 1184-86; Ex. 98 to Atlantic's Evid., p. 1190-92; Ex. 99 to Atlantic's Evid., p. 1196-97; Ex. 100 to Atlantic's Evid., p. 1201-04; Ex. 21 to Atlantic's Evid., p. 625-31; Ex. 109 to Atlantic's Evid., p. 1274-76; Ex. 22 to Atlantic's Evid., p. 633-35; Ex. 32 to Atlantic's Evid., p. 686-88; Ex. 23 to Atlantic's Evid., p. 639-41; Ex. 110 to Atlantic's Evid., p. 1280; Ex. 24 to Atlantic's Evid., p. 644-47; Ex. 101 to Atlantic's Evid., p. 1207-10; Ex. 25 to Atlantic's Evid., p. 650-52; Ex. 10 to Atlantic's Evid., p. 478-80; Ex. 102 to Atlantic's Evid., p. 1213-15; Ex. 26 to Atlantic's Evid., p. 655-57), 34 (Ex. 119 to Atlantic's Evid., p. 1415), RSI 250 (Ex. 119 to Atlantic's Evid., p. 1397), 251 (Ex. 160 to Atlantic's Evid. p. 1753-55), Richmond Decl. (Doc. 61-9) ¶ 7-9. Fed. R. Evid. 801(d)(2)(B); *Sea-Land Serv. v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (a "party may adopt a written statement if the party uses the statement or takes action in compliance [with] the statement."). In addition, the e-mail is an internal e-mail between plaintiff's head of security and Max Security (NBCU's agent), and was produced by the plaintiffs. *Anand v. BP West Coast Products LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent.").

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  The author of the Max Security report is presumed to have personal knowledge
2  concerning the security risks and concerns in the region—considering this was the
3  purpose of the agency relationship and Max Security's specialty. SUF 31 (Ex. 119 to
4  Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to
5  Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's
6  Evid., p. 1285), RSI 248 (Ex. 168 to Atlantic's Evid., p. 1884; Ex. 169 to Atlantic's
7  Evid., p. 1886-88). *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,
8  206 F.3d 1322, 1330 (9th Cir. 2000) (personal knowledge can be inferred or presumed
9  from an employee's position within a company.); *see also Edwards v. Toys "R" Us*, 527 F.
10  Supp. 2d 1197, 1201 (C.D. Cal. 2007).

**Atlantic's Separate Statement Paragraphs 83-88:**

12  The plaintiffs object to Separate Statement Paragraphs 83-88. The facts relate to
13  the injuries, fatalities, and damage caused from the fighting between Israel and Hamas
14  in 2014.

15  The plaintiffs object to the facts on the grounds that it is irrelevant. Fed. R.
16  Evid. 402.

**Atlantic's response to this objection is as follows:**

18  The fact is relevant to provide the court with context of the magnitude of the
19  conflict and hostilities that occurred in 2014 between Israel and Hamas and it has the
20  tendency to show that the hostilities continued for a significant number of days, which
21  demonstrates that it was a war (or warlike action or insurrection) and not a singular
22  terrorist attack. (Fed. R. Evid. 401). To the extent the Court feels only those casualties
23  that occurred before July 16, 2014 are relevant (which Atlantic strongly disagrees with),
24  the death toll in Gaza on July 16, 2014 was 212 and more than 1,280 Gazans were
25  wounded since the beginning of Operation Protective Edge on July 8, 2014. RSI 253
26  (Ex. 26 to Atlantic's Evid., pp. 655-59; Ex. 171 to Atlantic's Evid, pp. 1899).

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1   To recover under the relevant insuring agreement, the plaintiffs must establish

2   that they were in "imminent peril." To be in imminent peril one must *expect* danger; the

3   concept is inherently forward-looking. This fact undermines the plaintiffs' argument

4   that what occurred after they decided to leave Israel is irrelevant. What occurred after

5   they left illuminates whether they actually *were* in imminent peril when they decided to

6   leave. In addition, unexplained relevancy objections are not proper in the context of a

7   motion for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-

8   1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014)

9   ("the fact that a statement may be irrelevant has no bearing upon a motion for

10  summary judgment. A [court] can award summary judgment only when there exists no

11  genuine dispute of material fact. It cannot rely on irrelevant facts; thus, relevance

12  objections are redundant."). What the plaintiffs should be doing is arguing to the Court

13  (in their briefing) why this fact does not matter. *Id.* A relevance objection with no

14  explanation is "redundant" and meaningless in the context of summary judgment. *Id.*

15  **Atlantic's Separate Statement Paragraphs 98-100:**

16  The plaintiffs object to Separate Statement Paragraphs 98-100. The facts relate

17  to the plaintiffs communications with Malika Adams for her opinion on whether

18  coverage would apply and her response that the exclusion for acts of war was "broad."

19  Here, Atlantic merely contends that certain statements were made. To the extent

20  Atlantic were to contend that the supporting evidence establishes the content of the

21  statements (which Atlantic does not), such evidence would be objectionable on the

22  grounds that it: (1) is irrelevant (Fed. R. Evid. 402); (2) is an improper lay opinion (Fed.

23  R. Evid. 701); and (3) lacks foundation (Fed. R. Evid. 602).

24  **Atlantic's response to this objection is as follows:**

25  Defendant is offering Atlantic's Exhibits 113, 140 and 141 to prove that The

26  plaintiffs' employee referred to the acts of war exclusion as "broad," and that she

27  referred to the possibility that the war exclusion may apply. The fact is relevant because

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  it has the tendency to prove that the plaintiffs' own employee believed that the war

2  exclusion may apply, therefore showing that the Defendants were reasonable in

3  denying coverage. (Fed. R. Evid. 401). In addition, unexplained relevancy objections are

4  not proper in the context of a motion for summary judgment. *McAllister v. Krengel*

5  *Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31

6  (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant has no

7  bearing upon a motion for summary judgment. A [court] can award summary judgment

8  only when there exists no genuine dispute of material fact. It cannot rely on irrelevant

9  facts; thus, relevance objections are redundant."). What the plaintiffs should be doing is

10 arguing to the Court (in their briefing) why this fact does not matter. *Id.* A relevance

11 objection with no explanation is "redundant" and meaningless in the context of

12 summary judgment. *Id.*

13      Federal Rule of Evidence 701 is inapplicable because the plaintiffs' statements

14 contained within the e-mails are not conclusions but rather observances and

15 demonstrate the declarant's state of mind. To the extent the comment is a conclusion,

16 it was rationally based on the declarant's perception of the conflict between Israel and

17 Hamas and its impact on coverage. The contents in the exhibits concerning the use of

18 the word "broad" is helpful in determining whether the Defendant acted in bad faith in

19 denying coverage; and the e-mails and attachments are not based on the e-mail author's

20 scientific or specialized knowledge.  Therefore, the e-mails and attachments are not

21 improper lay opinion under Federal Rule of Evidence 701.

22      The exhibits are internal e-mails between plaintiffs' personnel, produced from

23 plaintiffs. *Anand v. BP West Coast Products LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D.

24 Cal. 2007) ("documents produced in response to discovery requests are admissible on a

25 motion for summary judgment since they are self-authenticating and constitute the

26 admissions of a party opponent."). In addition, Ms. Adams has personal knowledge

27 concerning the applicability of the coverage exclusions through her position at

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  Comcast. *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d

2  1322, 1330 (9th Cir. 2000) (personal knowledge can be inferred or presumed from an

3  employee's position within a company.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d

4  1197, 1201 (C.D. Cal. 2007).

5  **Atlantic's Separate Statement Paragraph 105:**

6  The plaintiffs object to Separate Statement Paragraph 105. The fact states "The

7  populace at large (including news outlets) referred to the fighting between Israel and

8  Hamas as a "war." For example, NBC News titled a news article *Gaza cease-fire holds*

9  *between Hamas and Israel after 50-day war*."

10  Here, Atlantic merely contends that the "populace at large" referred to the

11  fighting between Israel and Hamas as a "war." As a threshold matter, this is not a

12  "fact" at all, and is not established by Atlantic's evidence. In any event, to the extent

13  Atlantic were to contend that the supporting evidence establishes that the fighting

14  constituted a "war" (which Atlantic does not), such evidence would be objectionable

15  on the grounds that it: (1) is irrelevant (Fed. R. Evid. 402); (2) is an improper lay

16  opinion (Fed. R. Evid. 701); (3) lacks foundation (Fed. R. Evid. 602); and (4)

17  constitutes inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801, 802).

18  **Atlantic's response to this objection is as follows:**

19  Defendant is offering Atlantic's Exhibit 45 to prove that the word "war" was

20  used to describe the 2014 conflict between Israel and Hamas. The exhibits are offered

21  to show that these statements were made. However, if the statements were offered for

22  their content, the exhibits would still be admissible.

23  The fact is relevant because it has the tendency to prove that the common

24  meaning of the word "war" encompasses the 2014 conflict. (Fed. R. Evid. 401). In

25  addition, unexplained relevancy objections are not proper in the context of a motion

26  for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-

27  BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the

28  

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1 fact that a statement may be irrelevant has no bearing upon a motion for summary

2 judgment. A [court] can award summary judgment only when there exists no genuine

3 dispute of material fact. It cannot rely on irrelevant facts; thus, relevance objections are

4 redundant."). What the plaintiffs should be doing is arguing to the Court (in their

5 briefing) why this fact does not matter. *Id.* A relevance objection with no explanation is

6 "redundant" and meaningless in the context of summary judgment. *Id.*

7 Federal Rule of Evidence 701 is inapplicable because the author's statements

8 contained within the article are not conclusions but rather observances and a

9 demonstration of the author's state of mind. To the extent the comment is a

10 conclusion, it was rationally based on the author's perception of the events occurring in

11 the Gaza Strip during summer 2014. The contents in the exhibit concerning the use of

12 the word "war" are helpful in determining the common meaning of the term; and the

13 article is not based on the authors' scientific or specialized knowledge.  Therefore, the

14 e-mails and attachments are not improper lay opinion under Federal Rule of Evidence

15 701.

16 The exhibit is not excluded by hearsay, because the statement is offered not for

17 the truth of the matter asserted but merely to show that the statement was made. In

18 addition, a demonstration of personal knowledge is not required when the statement is

19 not offered for the truth of the matter asserted.

20 **Atlantic's Separate Statement Paragraphs 106-111, 113-137:**

21 The plaintiffs object to Separate Statement Paragraphs 106-111, 113-137. The

22 facts relate to the media's use of the word "war" to describe the 2014 conflict between

23 Israel and Hamas.

24 Here, Atlantic merely contends that various news publications were "titled" as

25 set forth in the respective paragraphs. To the extent Atlantic were to contend that the

26 supporting evidence establishes the content of such titles (which Atlantic does not),

27 such evidence would be objectionable on the grounds that it: (1) is irrelevant (Fed. R.

28

1  Evid. 402); (2) is an improper lay opinion (Fed. R. Evid. 701); (3) lacks foundation

2  (Fed. R. Evid. 602); and (4) constitutes inadmissible hearsay and no exception is

3  applicable (Fed. R. Evid. 801, 802).

4  **Atlantic's response to this objection is as follows:**

5        Defendant is offering Atlantic's Exhibits 46-51, 54-78 to prove that the word

6  "war" was used to describe the 2014 conflict between Israel and Hamas. The exhibits

7  are offered to show that these statements were made. However, if the statements were

8  offered for their content, the exhibits would still be admissible.

9        The fact is relevant because it has the tendency to prove that the word "war"

10 was used to describe the 2014 conflict between Israel and Hamas, which demonstrates

11 that the ordinary meaning of war encompasses this conflict. (Fed. R. Evid. 401). In

12 addition, unexplained relevancy objections are not proper in the context of a motion

13 for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-

14 BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the

15 fact that a statement may be irrelevant has no bearing upon a motion for summary

16 judgment. A [court] can award summary judgment only when there exists no genuine

17 dispute of material fact. It cannot rely on irrelevant facts; thus, relevance objections are

18 redundant."). What the plaintiffs should be doing is arguing to the Court (in their

19 briefing) why this fact does not matter. *Id.* A relevance objection with no explanation is

20 "redundant" and meaningless in the context of summary judgment. *Id.*

21       Federal Rule of Evidence 701 is inapplicable because the author's statements

22 contained within the articles are not conclusions but rather observances. To the extent

23 the comment is a conclusion, it was rationally based on the author's perception of the

24 events occurring in the Gaza Strip during summer 2014. The contents in the exhibits

25 concerning the use of the word "war" are helpful in determining the common meaning

26 of the term; and the articles are not based on the authors' scientific or specialized

27

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  knowledge.  Therefore, the articles are not improper lay opinion under Federal Rule of

2  Evidence 701.

3        The exhibit is not excluded by hearsay, because the statements are offered not

4  for the truth of the matter asserted but merely to show that the statements were made.

5  In addition, a demonstration of personal knowledge is not required when the statement

6  is not offered for the truth of the matter asserted.

7  **Atlantic's Separate Statement Paragraph 138:**

8        The plaintiffs object to Separate Statement Paragraph 138. The fact states "The

9  Max Security reports that NBCU received and relied upon in deciding to leave Israel

10 also note that in Israel, while the 2014 conflict was underway, there were anti-war

11 protests."

12       Here, Atlantic merely contends that certain statements were "note[d]" in emails

13 from "Max Security Intelligence." To the extent Atlantic were to contend that the

14 supporting evidence establishes the content of the statements (which Atlantic does

15 not), such evidence would be objectionable on the grounds that it: (1) is irrelevant (Fed.

16 R. Evid. 402); (2) is an improper lay opinion (Fed. R. Evid. 701); (3) lacks foundation

17 (Fed. R. Evid. 602); and (4) constitutes inadmissible hearsay and no exception is

18 applicable (Fed. R. Evid. 801, 802).

19 **Atlantic's response to this objection is as follows:**

20       Defendant is offering Atlantic's Exhibit 80 to prove that the Max Security

21 reports referenced anti-war protests occurred in Israel during the summer of 2014. The

22 exhibits are offered to show that these statements were made. However, if the

23 statements were offered for their content, the exhibits would still be admissible.

24       The fact is relevant because it has the tendency to prove that the word "war"

25 was used to describe the 2014 conflict between Israel and Hamas, which demonstrates

26 that the ordinary meaning of the war encompasses this conflict. (Fed. R. Evid. 401). In

27 addition, to recover under the relevant insuring agreement, the plaintiffs must establish

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  that they were in "imminent peril." To be in imminent peril one must *expect* danger; the

2  concept is inherently forward-looking. This fact undermines the plaintiffs' argument

3  that what occurred after they decided to leave Israel is irrelevant. What occurred after

4  they left illuminates whether they actually *were* in imminent peril when they decided to

5  leave. To argue that nothing occurring after they made the decision to leave

6  misunderstands the imminent peril insuring agreement.  Once peril has occurred, it is

7  no longer imminent.  Thus, if all that matters is what already occurred up to the time

8  they decided to leave, than plaintiffs did not leave because of peril that was imminent,

9  but instead because of peril that occurred.  But, that is not what is covered by the

10  policy. In addition, unexplained relevancy objections are not proper in the context of a

11  motion for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-

12  1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014)

13  ("the fact that a statement may be irrelevant has no bearing upon a motion for

14  summary judgment. A [court] can award summary judgment only when there exists no

15  genuine dispute of material fact. It cannot rely on irrelevant facts; thus, relevance

16  objections are redundant."). What the plaintiffs should be doing is arguing to the Court

17  (in their briefing) why this fact does not matter. *Id.* A relevance objection with no

18  explanation is "redundant" and meaningless in the context of summary judgment. *Id.*

19  Federal Rule of Evidence 701 is inapplicable because the plaintiffs' statements

20  contained within the e-mails are not conclusions but rather observances and

21  demonstrations of the declarant's state of mind. To the extent the comment is a

22  conclusion, it was rationally based on the perception of the events occurring while the

23  declarant was under a duty to report security concerns to the plaintiffs. SUF 28 (Ex.

24  119 to Atlantic's Evid., p. 1395, 1397, 1403-04); 31 (Ex. 119 to Atlantic's Evid., p.

25  1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to Atlantic's Evid., p. 1474),

26  32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's Evid., p. 1285), 33 (Ex. 95

27  to Atlantic's Evid., p. 1173-75; Ex. 119 to Atlantic's Evid., p. 1415; Ex. 108 to

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  Atlantic's Evid., p. 1268-1270; Ex. 96 to Atlantic's Evid., p. 1178-1180; Ex. 18 to
2  Atlantic's Evid., p. 606-09; Ex. 17 to Atlantic's Evid., p. 600-02; Ex. 97 to Atlantic's
3  Evid., p. 1184-86; Ex. 98 to Atlantic's Evid., p. 1190-92; Ex. 99 to Atlantic's Evid., p.
4  1196-97; Ex. 100 to Atlantic's Evid., p. 1201-04; Ex. 21 to Atlantic's Evid., p. 625-31;
5  Ex. 109 to Atlantic's Evid., p. 1274-76; Ex. 22 to Atlantic's Evid., p. 633-35; Ex. 32 to
6  Atlantic's Evid., p. 686-88; Ex. 23 to Atlantic's Evid., p. 639-41; Ex. 110 to Atlantic's
7  Evid., p. 1280; Ex. 24 to Atlantic's Evid., p. 644-47; Ex. 101 to Atlantic's Evid., p.
8  1207-10; Ex. 25 to Atlantic's Evid., p. 650-52; Ex. 10 to Atlantic's Evid., p. 478-80; Ex.
9  102 to Atlantic's Evid., p. 1213-15; Ex. 26 to Atlantic's Evid., p. 655-57), 34 (Ex. 119 to
10  Atlantic's Evid., p. 1415), RSI 248 (Ex. 168 to Atlantic's Evid., p. 1884; Ex. 169 to
11  Atlantic's Evid., p. 1886-88), 250 (Ex. 119 to Atlantic's Evid. at p. 1397), 251 (Ex. 160
12  to Atlantic's Evid. p. 1753-55). The contents in the exhibits (the use of the word "anti-
13  war") are helpful in determining the common meaning of the term "war;" and the
14  e-mail is not based on the e-mail author's scientific or specialized knowledge.
15  Therefore, the e-mails and attachments are not improper lay opinion under Federal
16  Rule of Evidence 701.
17  The e-mail from Max Security (Atlantic's Exhibit 80) is not hearsay. Max Security
18  Intelligence provides intelligence and risk analysis to assess, prepare for, and mitigate
19  threats before they become a problem. RSI 248 (Ex. 168 to Atlantic's Evid., p. 1884;
20  Ex. 169 to Atlantic's Evid., p. 1886-88). The plaintiffs hired Max Security Intelligence
21  to provide security for the production of *Dig* while in Israel. SUF 31 (Ex. 119 to
22  Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to
23  Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's
24  Evid., p. 1285), 33 (Ex. 95 to Atlantic's Evid., p. 1173-75; Ex. 119 to Atlantic's Evid., p.
25  1415; Ex. 108 to Atlantic's Evid., p. 1268-1270; Ex. 96 to Atlantic's Evid., p. 1178-
26  1180; Ex. 18 to Atlantic's Evid., p. 606-09; Ex. 17 to Atlantic's Evid., p. 600-02; Ex. 97
27  to Atlantic's Evid., p. 1184-86; Ex. 98 to Atlantic's Evid., p. 1190-92; Ex. 99 to
28

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

Atlantic's Evid., p. 1196-97; Ex. 100 to Atlantic's Evid., p. 1201-04; Ex. 21 to Atlantic's Evid., p. 625-31; Ex. 109 to Atlantic's Evid., p. 1274-76; Ex. 22 to Atlantic's Evid., p. 633-35; Ex. 32 to Atlantic's Evid., p. 686-88; Ex. 23 to Atlantic's Evid., p. 639-41; Ex. 110 to Atlantic's Evid., p. 1280; Ex. 24 to Atlantic's Evid., p. 644-47; Ex. 101 to Atlantic's Evid., p. 1207-10; Ex. 25 to Atlantic's Evid., p. 650-52; Ex. 10 to Atlantic's Evid., p. 478-80; Ex. 102 to Atlantic's Evid., p. 1213-15; Ex. 26 to Atlantic's Evid., p. 655-57, 34 (Ex. 119 to Atlantic's Evid., p. 1415). Max Security Intelligence was also hired to provide reports to the plaintiffs regarding the security for the production of *Dig* in Israel. *Id.* Therefore, Max Security was an agent of the plaintiffs when it prepared those reports and sent e-mails relating to the security situation. As an agent, its e-mail to the plaintiffs concerning security—which was the basis of the employment relationship—is not hearsay because it is an opposing party's statement. Fed. R. Evid. 801(d)(2)(D); *MGM Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006) (an independent contractor—a designer—was the agent of a litigant for purposes of Rule 801(d)(2)(D) because the contractor was included in e-mails to the litigant's design "team" and the litigant directed the contractor to perform certain work). Alternatively, the statements are not hearsay because the plaintiffs relied on the information within the Max Security reports in assessing security concerns associated with filming in Israel and therefore believed it to be true. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04); 31 (Ex. 119 to Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's Evid., p. 1285), 33 (Ex. 95 to Atlantic's Evid., p. 1173-75; Ex. 119 to Atlantic's Evid., p. 1415; Ex. 108 to Atlantic's Evid., p. 1268-1270; Ex. 96 to Atlantic's Evid., p. 1178-1180; Ex. 18 to Atlantic's Evid., p. 606-09; Ex. 17 to Atlantic's Evid., p. 600-02; Ex. 97 to Atlantic's Evid., p. 1184-86; Ex. 98 to Atlantic's Evid., p. 1190-92; Ex. 99 to Atlantic's Evid., p. 1196-97; Ex. 100 to Atlantic's Evid., p. 1201-04; Ex. 21 to Atlantic's Evid., p. 625-31; Ex. 109 to Atlantic's

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

108

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

Evid., p. 1274-76; Ex. 22 to Atlantic's Evid., p. 633-35; Ex. 32 to Atlantic's Evid., p. 686-88; Ex. 23 to Atlantic's Evid., p. 639-41; Ex. 110 to Atlantic's Evid., p. 1280; Ex. 24 to Atlantic's Evid., p. 644-47; Ex. 101 to Atlantic's Evid., p. 1207-10; Ex. 25 to Atlantic's Evid., p. 650-52; Ex. 10 to Atlantic's Evid., p. 478-80; Ex. 102 to Atlantic's Evid., p. 1213-15; Ex. 26 to Atlantic's Evid., p. 655-57), 34 (Ex. 119 to Atlantic's Evid., p. 1415), RSI 250 (Ex. 119 to Atlantic's Evid. p. 1397), 251 (Ex. 160 to Atlantic's Evid. p. 1753-55), Richmond Decl. (Doc. 61-9) ¶ 7-9. Fed. R. Evid. 801(d)(2)(B); *Sea-Land Serv. v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (a "party may adopt a written statement if the party uses the statement or takes action in compliance [with] the statement."). In addition, the e-mail is an internal e-mail between plaintiffs' head of security and plaintiffs' hired security team (its agent), produced from plaintiffs. *Anand v. BP West Coast Products LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent."). Furthermore, the author of the Max Security report is presumed to have personal knowledge concerning the security risks and concerns in the region—considering this was the purpose of the agency relationship and Max Security's specialty. SUF 31 (Ex. 119 to Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's Evid., p. 1285), RSI 248 (Ex. 168 to Atlantic's Evid., p. 1884; Ex. 169 to Atlantic's Evid., p. 1886-88). *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal knowledge can be inferred or presumed from an employee's position within a company.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007).

**Atlantic's Separate Statement Paragraph 139:**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1   The plaintiffs object to Separate Statement Paragraph 139. The fact states "An

2   NBCU employee in the security department sent an e-mail on July 10, 2014, discussing

3   Hizbullah's "war" with Israel and Syria."

4   Here, Atlantic merely contends that certain statements were made. To the extent

5   Atlantic were to contend that the supporting evidence establishes the content of the

6   statements (which Atlantic does not), such evidence would be objectionable on the

7   grounds that it: (1) is irrelevant (Fed. R. Evid. 402); (2) is an improper lay opinion (Fed.

8   R. Evid. 701); and (3) lacks foundation (Fed. R. Evid. 602).

9   **Atlantic's response to this objection is as follows:**

10   Defendant is offering Atlantic's Exhibit 128 to prove that an employee of the

11   plaintiffs' parent company, Chris Biggs, (who was involved in providing security for

12   *Dig, see* RSI 251 (Ex. 160 to Atlantic's Evid. p. 1753-55)), referred to a previous conflict

13   between Israel and a terrorist organization as a "war." The exhibit is offered to show

14   that these statements were made. However, if the statements were offered for their

15   content, the exhibits would still be admissible.

16   The fact is relevant because it has the tendency to prove that the word "war"

17   was used in referring to a conflict between Israel and a terrorist organization which

18   demonstrates that the ordinary meaning of war encompasses conflicts involving

19   terrorist groups. (Fed. R. Evid. 401). In addition, unexplained relevancy objections are

20   not proper in the context of a motion for summary judgment. *McAllister v. Krengel*

21   *Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31

22   (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant has no

23   bearing upon a motion for summary judgment. A [court] can award summary judgment

24   only when there exists no genuine dispute of material fact. It cannot rely on irrelevant

25   facts; thus, relevance objections are redundant."). What the plaintiffs should be doing is

26   arguing to the Court (in their briefing) why this fact does not matter. *Id.* A relevance

27

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  objection with no explanation is "redundant" and meaningless in the context of

2  summary judgment. *Id.*

3      Federal Rule of Evidence 701 is inapplicable because the statements contained

4  within the e-mails are not conclusions but rather observances and a demonstration of

5  the declarant's state of mind. To the extent the comment is a conclusion, it was

6  rationally based on his perception of the events occurring while he were under a duty

7  to report security concerns to the plaintiffs. The contents in the exhibits concerning the

8  reference to "war" when referring to the conflict between Israel and a terrorist

9  organization is helpful in determining whether the four war-related exclusions apply

10  here; and the e-mails are not based on the e-mail author's scientific or specialized

11  knowledge.  Therefore, the e-mails and attachments are not improper lay opinion under

12  Federal Rule of Evidence 701.

13  The July 10, 2014 email from Chris Biggs (Atlantic's Ex. 128) is an internal e-mail

14  between plaintiffs' personnel, produced from plaintiffs. *Anand v. BP West Coast Products*

15  *LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents produced in

16  response to discovery requests are admissible on a motion for summary judgment since

17  they are self-authenticating and constitute the admissions of a party opponent."). In

18  addition, Mr. Biggs has gained personal knowledge regarding the region as well as

19  security risks pertinent to Israel through his position as security and intelligence analyst.

20  RSI 251 (Ex. 160 to Atlantic's Evid. p. 1753-55). *Self-Realization Fellowship Church v.*

21  *Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal

22  knowledge can be inferred or presumed from an employee's position within a

23  company.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007).

24  Furthermore, the plaintiffs relied on Mr. Biggs' personal knowledge to keep them

25  informed of security risks. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04),

26  RSI 250 (Ex. 119 to Atlantic's Evid., p. 1397), 251 (Ex. 160 to Atlantic's Evid. p. 1753-

27  55), Richmond Decl. (Doc. 61-9) ¶¶ 7-9. To question Mr. Biggs' knowledge now but

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

111

1    not while *relying* on it is disingenuous. SUF 43 (Ex. 79 to Atlantic's Evid., p. 1046), 44

2    (Ex. 79 to Atlantic's Evid., p. 1046), 45 (Ex. 142 to Atlantic's Evid., p. 1578) (showing

3    that Mr. Biggs e-mailed Mr. Smith with security information, which Mr. Smith then

4    adopted by sending the same information to an employee of the plaintiffs), 251 (Ex.

5    160 to Atlantic's Evid. p. 1753-55) (demonstrating Mr. Biggs' role).

6    **Atlantic's Separate Statement Paragraphs 141, 143-46, 148, 150:**

7        The plaintiffs object to Separate Statement Paragraphs 141, 143-46, 148, 150.

8    The facts relate to politicians from numerous countries and plaintiffs'

9    employees/agents referring to the 2014 conflict between Israel and Hamas as a "war."

10       Here, Atlantic merely contends that certain statements were made by third-

11   parties. To the extent Atlantic were to contend that the supporting evidence establishes

12   the content of the statements (which Atlantic does not), such evidence would be

13   objectionable on the grounds that it: (1) is irrelevant (Fed. R. Evid. 402); (2) is an

14   improper lay opinion (Fed. R. Evid. 701); (3) lacks foundation (Fed. R. Evid. 602); and

15   (4) constitutes inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801,

16   802).

17   **Atlantic's response to this objection is as follows:**

18       Defendant is offering Atlantic's Exhibits 82-84, 86-89, 93, 10 to prove that the

19   word "war" was used to describe the 2014 conflict between Israel and Hamas. The

20   exhibits are offered to show that these statements were made and thus demonstrate the

21   common everyday usage of the term war and that this common meaning encompasses

22   the 2014 conflict. However, if the statements were offered for their content, the

23   exhibits would still be admissible.

24       The fact is relevant because it has the tendency to prove that the word "war"

25   was used to describe the 2014 conflict between Israel and Hamas, which demonstrates

26   that the ordinary meaning of war encompasses this conflict. (Fed. R. Evid. 401). In

27   addition, unexplained relevancy objections are not proper in the context of a motion

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE

1  for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-

2  BlPaku, 2014 Bankr. LEXIS 3452, at \*31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the

3  fact that a statement may be irrelevant has no bearing upon a motion for summary

4  judgment. A [court] can award summary judgment only when there exists no genuine

5  dispute of material fact. It cannot rely on irrelevant facts; thus, relevance objections are

6  redundant."). What the plaintiffs should be doing is arguing to the Court (in their

7  briefing) why this fact does not matter. *Id.* A relevance objection with no explanation is

8  "redundant" and meaningless in the context of summary judgment. *Id.*

9      Federal Rule of Evidence 701 is inapplicable because the authors' statements

10  contained within the articles and speeches are not conclusions but rather observances.

11  To the extent the comments are conclusions, they were rationally based on the author's

12  or speaker's perception of the events occurring in the Gaza Strip during summer 2014.

13  The contents in the exhibits (the use of the word "war") are helpful in determining the

14  common meaning of the term "war"; and the statements are not based on the authors'

15  or speakers' scientific or specialized knowledge.  Therefore, the statements are not

16  improper lay opinion under Federal Rule of Evidence 701.

17      The exhibit is not excluded by hearsay, because the statements are offered not

18  for the truth of the matter asserted but merely to show that the statements were made.

19  In addition, a demonstration of personal knowledge is not required when the statement

20  is not offered for the truth the matter asserted. Alternatively, the statement

21  demonstrates that as of the date of the e-mail, the declarants believed the use of the

22  word "war" was appropriate at the time they made the statement. Therefore, the

23  statements fall within the state of mind hearsay exception. Fed. R. Evid. 803(3).

24  **Atlantic's Separate Statement Paragraph 142:**

25      The plaintiffs object to Separate Statement Paragraph 142. The fact states "The

26  Australian Minister of Foreign Affairs, Julie Bishop, stated in 2014: "The actions of

27

28

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  militants in Gaza, who are firing rockets indiscriminately into Israel, are inexcusable

2  and must be condemned." (emphasis added)."

3       Here, Atlantic merely contends that certain statements were made by third-

4  parties. To the extent Atlantic were to contend that the supporting evidence establishes

5  the content of the statement that Hamas' actions in Gaza were those of "militants"

6  (which Atlantic does not), such evidence would be objectionable on the ground that it

7  is irrelevant (Fed. R. Evid. 402).

8  **Atlantic's response to this objection is as follows:**

9       Defendant is offering Atlantic's Exhibits 85 to prove that the word "war" was

10  used to describe the 2014 conflict between Israel and Hamas, which demonstrates that

11  the ordinary meaning of war encompasses this conflict. The exhibit is offered to show

12  that the statements were made. However, if the statements were offered for their

13  content, the exhibit would still be admissible.

14       The fact is relevant because it has the tendency to prove that the word "war"

15  was used to describe the 2014 conflict between Israel and Hamas. (Fed. R. Evid. 401),

16  which demonstrates that the ordinary meaning of war encompasses this conflict. In

17  addition, unexplained relevancy objections are not proper in the context of a motion

18  for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-

19  BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the

20  fact that a statement may be irrelevant has no bearing upon a motion for summary

21  judgment. A [court] can award summary judgment only when there exists no genuine

22  dispute of material fact. It cannot rely on irrelevant facts; thus, relevance objections are

23  redundant."). What the plaintiffs should be doing is arguing to the Court (in their

24  briefing) why this fact does not matter. *Id.* A relevance objection with no explanation is

25  "redundant" and meaningless in the context of summary judgment. *Id.*

26  **Atlantic's Separate Statement Paragraph 151:**

27

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1    The plaintiffs object to Separate Statement Paragraph 151. The fact states "In an

2    *Israel Dig Update* prepared by the plaintiffs' security team, NBCU recognized the

3    "Hamas-governed Gaza Strip."

4    Here, Atlantic merely contends that certain statements were made. To the extent

5    Atlantic were to contend that the supporting evidence establishes the content of the

6    statements (which Atlantic does not), such evidence would be objectionable on the

7    grounds that it: (1) is irrelevant (Fed. R. Evid. 402); (2) is an improper lay opinion (Fed.

8    R. Evid. 701); (3) lacks foundation, given that Atlantic has not established that Mr.

9    Smith authored the text of the email, especially in light of Mr. Smith's deposition

10   testimony regarding his and Mr. Biggs' practice of copying and pasting information

11   from third-party sources (*see* Atlantic Ex. 119: Smith Depo, 315:2-316:21; 321:15-17)

12   (Fed. R. Evid. 602); and (4) constitutes inadmissible hearsay and no exception is

13   applicable for the same reason – Atlantic has not established that Mr. Smith is the

14   original declarant (Fed. R. Evid. 801, 802).

15   **Atlantic's response to this objection is as follows:**

16   Defendant is offering Atlantic's Exhibits 114 to prove that plaintiffs'

17   representatives referred to the Gaza Strip as the "Hamas-governed Gaza Strip." The

18   exhibit is offered to show that the statement was made. However, if the statement was

19   offered for its content, the exhibit would still be admissible.

20   The fact is relevant because it has the tendency to prove that Hamas was the de

21   facto authority within the Gaza Strip—a fact the plaintiffs made relevant in the suit.

22   (Fed. R. Evid. 401). In addition, unexplained relevancy objections are not proper in the

23   context of a motion for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*,

24   No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir.

25   Aug. 13, 2014) ("the fact that a statement may be irrelevant has no bearing upon a

26   motion for summary judgment. A [court] can award summary judgment only when

27   there exists no genuine dispute of material fact. It cannot rely on irrelevant facts; thus,

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1   relevance objections are redundant."). What the plaintiffs should be doing is arguing to

2   the Court (in their briefing) why this fact does not matter. *Id.* A relevance objection

3   with no explanation is "redundant" and meaningless in the context of summary

4   judgment. *Id.*

5        Federal Rule of Evidence 701 is inapplicable because the plaintiffs' statements

6   contained within the e-mails are not conclusions but rather observances and

7   demonstrate plaintiffs' state of mind. To the extent the comment is a conclusion, it was

8   rationally based on the employee's perception of the events occurring while he was

9   under a duty to report security concerns to the plaintiffs. SUF 28 (Ex. 119 to Atlantic's

10  Evid., p. 1395, 1397, 1403-04), RSI 250 (Ex. 119 to Atlantic's Evid., p. 1397), 251 (Ex.

11  160 to Atlantic's Evid. p. 1753-55), Richmond Decl. (Doc. 61-9) ¶¶ 7-9. The contents

12  in the exhibits concerning the use of the phrase "Hamas-governed Gaza Strip" is

13  helpful in determining Hamas's status as the de facto authority within the Gaza Strip,

14  which the plaintiffs have made relevant in this case; and the e-mail is not based on the

15  e-mail author's scientific or specialized knowledge.  Therefore, the e-mail is not

16  improper lay opinion under Federal Rule of Evidence 701.

17       The e-mail from Stephen Smith (Atlantic's Exhibit 114) is an internal e-mail

18  between plaintiffs' personnel, produced from plaintiffs. *Anand v. BP West Coast Products*

19  *LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents produced in

20  response to discovery requests are admissible on a motion for summary judgment since

21  they are self-authenticating and constitute the admissions of a party opponent."). In

22  addition, Mr. Smith has gained personal knowledge regarding the region as well as

23  security risks pertinent to Israel through his position as Head of Security. *Self-Realization*

24  *Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000)

25  (Personal knowledge can be inferred or presumed from an employee's position within a

26  company.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007).

27  Furthermore, the plaintiffs relied on Mr. Smith's personal knowledge to keep them

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1  informed of security risks. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04),

2  RSI 250 (Ex. 119 to Atlantic's Evid., p. 1397), Randi Richmond Decl. (Doc. 61-9) ¶¶ 7-

3  9. To question Mr. Smith's knowledge now but not while *relying* on it is disingenuous.

4         The e-mail does not indicate that the Plaintiff copied and pasted information

5  from    another    source    into    the    e-mail.    However,    if    the    plaintiffs'

6  representative/employee, Mr. Smith,[2] did in fact "paste" the statements from an article

7  into the e-mail it was for the purpose of detailing the continuing hostilities surrounding

8  the Israeli and Hamas fighting and the impact it would have on filming in Israel. By

9  pasting the article into the e-mail and relying on its information, Smith adopted the

10 statement and made clear that he believed it to be true. Therefore, the e-mail is not

11 hearsay, but is an opposing party's statement. Fed. R. Evid. 801(d)(2)(B); *Sea-Land Serv.*

12 *v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (a "party may adopt a written

13 statement if the party uses the statement or takes action in compliance [with] the

14 statement.").

15 **Atlantic's Separate Statement Paragraph 152:**

16        The plaintiffs object to Separate Statement Paragraph 152. The fact states "The

17 United States Congressional Research Service has referred to the Qassam Brigades as

18 Hamas's 'militia'."

19        Here, Atlantic merely contends that certain statements were made by a third-

20 party. To the extent Atlantic were to contend that the supporting evidence establishes

21 the content of the statements (which Atlantic does not), such evidence would be

22 objectionable on the grounds that it: (1) is irrelevant (Fed. R. Evid. 402); (2) is an

23 improper lay opinion (Fed. R. Evid. 701); (3) lacks foundation (Fed. R. Evid. 602); and

24 (4) constitutes inadmissible hearsay and no exception is applicable (Fed. R. Evid. 801,

25 802).

26
27 [2] Smith was the head of security for NBCUniversal and was charged with providing security to *Dig*. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04), RSI 250
28 (Ex. 119 to Atlantic's Evid., p. 1397).

**Atlantic's response to this objection is as follows:**

Defendant is offering Atlantic's Exhibits 4 to prove that Congressional Research Service has referred to the Qassam Brigades as Hamas's "militia." The exhibit is offered to show that the statements were made. However, if the statements were offered for their content, the exhibit would still be admissible.

The fact is relevant because it has the tendency to prove that Hamas has a military and is therefore capable of committing warlike actions as well as entering into a war with Israel. (Fed. R. Evid. 401). In addition, unexplained relevancy objections are not proper in the context of a motion for summary judgment. *McAllister v. Krengel Spamer & Vance, LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant has no bearing upon a motion for summary judgment. A [court] can award summary judgment only when there exists no genuine dispute of material fact. It cannot rely on irrelevant facts; thus, relevance objections are redundant."). What the plaintiffs should be doing is arguing to the Court (in their briefing) why this fact does not matter. *Id.* A relevance objection with no explanation is "redundant" and meaningless in the context of summary judgment. *Id.*

Federal Rule of Evidence 701 is inapplicable because the author's statements contained within the report are not conclusions but rather observances and demonstrate plaintiffs' state of mind. To the extent the comment is a conclusion, it was rationally based on the author's perception of the events occurring while he was under a duty to report. RSI 246 (Ex. 166 to Atlantic's Evid., p. 1879). The contents of the exhibit is helpful in determining whether Hamas had a military, which relates to whether warlike actions or war occurred, whether weapons of war were used, and whether an insurrection or rebellion occurred; and the report is not based on the authors' scientific or specialized knowledge.  Therefore, the e-mail is not improper lay opinion under Federal Rule of Evidence 701.

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  The plaintiffs refer to the Jim Zanotti report as an "article," when in reality the

2  report is prepared for members and committees of Congress through the

3  Congressional Research Service. The Congressional Research Service (CRS) is a

4  legislative branch agency within the Library of Congress, which provides policy and

5  legal analysis to committees and members of both the House and Senate. RSI 246 (Ex.

6  166 to Atlantic's Evid., p. 1879). Because the report is prepared by a governmental

7  agency under a duty to prepare these reports, the report (Atlantic's Exhibit 4) falls

8  within the Public Records hearsay exception. Fed. R. Evid. 803(8); *Rothe Dev. Corp. v.*

9  *United States DOD*, 499 F. Supp. 2d 775, 829 n.63 (W.D. Tex. 2007), *reversed on other*

10  *grounds* ("all evidence before Congress is admissible pursuant to" Rule 803(8)).

11  Furthermore, Defendant maintains that Mr. Zanotti, through his position and

12  experience as a specialist in Middle Eastern Affairs at the CRS, has gained personal

13  knowledge of the factual matters stated within the report. *Cleveland v. United States*, 546

14  F. Supp. 2d 732, 776 (N.D. Cal. 2008) ("An employee of an entity may through the

15  course of his employment obtain personal knowledge of a fact or event, even if the

16  event took place prior to his employment."); *see also Barthelemy v. Air Lines Pilots Ass'n*,

17  897 F.2d 999 (9th Cir. 1990) (personal knowledge and competence to testify are

18  reasonably inferred from witness's positions and the nature of their participation in the

19  matters at hand).

20  **Atlantic's Separate Statement Paragraph 153:**

21  The plaintiffs object to Separate Statement Paragraph 153. The fact states "The

22  plaintiffs' representatives used the word "militants" and "military" to refer to the

23  Hamas forces."

24  Here, Atlantic merely contends that certain statements were made in emails from

25  "Max Security Intelligence." To the extent Atlantic were to contend that the supporting

26  evidence establishes the content of the statements (which Atlantic does not), such

27  evidence would be objectionable on the grounds that it: (1) is irrelevant (Fed. R. Evid.

28

1  402); (2) is an improper lay opinion (Fed. R. Evid. 701); (3) lacks foundation (Fed. R.

2  Evid. 602); and (4) constitutes inadmissible hearsay and no exception is applicable –

3  notwithstanding Atlantic's totally unsupported reference to the declarant(s) as

4  "Plaintiffs' representatives" (Fed. R. Evid. 801, 802).

5  **Atlantic's response to this objection is as follows:**

6          Defendant is offering Atlantic's Exhibits 11, 12, 13, 115, and 116, to prove that

7  plaintiffs' representatives used the word "militants" and "military" to refer to the

8  Hamas forces. The exhibit is offered to show that the statements were made. However,

9  if the statements were offered for their content, the exhibit would still be admissible.

10         The fact is relevant because it has the tendency to prove that Hamas has a

11  military and is capable of committing warlike actions as well as entering into a war with

12  Israel. (Fed. R. Evid. 401). In addition, unexplained relevancy objections are not proper

13  in the context of a motion for summary judgment. *McAllister v. Krengel Spamer & Vance,*

14  *LLC*, No. CC-13-1578-BlPaku, 2014 Bankr. LEXIS 3452, at *31-31 (U.S. B.A.P. 9th

15  Cir. Aug. 13, 2014) ("the fact that a statement may be irrelevant has no bearing upon a

16  motion for summary judgment. A [court] can award summary judgment only when

17  there exists no genuine dispute of material fact. It cannot rely on irrelevant facts; thus,

18  relevance objections are redundant."). What the plaintiffs should be doing is arguing to

19  the Court (in their briefing) why this fact does not matter. *Id.* A relevance objection

20  with no explanation is "redundant" and meaningless in the context of summary

21  judgment. *Id.*

22  Federal Rule of Evidence 701 is inapplicable because the plaintiffs' statements

23  contained within the e-mails are not conclusions but rather observances and

24  demonstrations of the authors' state of mind. To the extent the comment is a

25  conclusion, it was rationally based on the authors' perception of the events occurring

26  while under a duty to report security concerns to the plaintiffs. SUF 31 (Ex. 119 to

27  Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

1  Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's

2  Evid., p. 1285), 33 (Ex. 95 to Atlantic's Evid., p. 1173-75; Ex. 119 to Atlantic's Evid., p.

3  1415; Ex. 108 to Atlantic's Evid., p. 1268-1270; Ex. 96 to Atlantic's Evid., p. 1178-

4  1180; Ex. 18 to Atlantic's Evid., p. 606-09; Ex. 17 to Atlantic's Evid., p. 600-02; Ex. 97

5  to Atlantic's Evid., p. 1184-86; Ex. 98 to Atlantic's Evid., p. 1190-92; Ex. 99 to

6  Atlantic's Evid., p. 1196-97; Ex. 100 to Atlantic's Evid., p. 1201-04; Ex. 21 to Atlantic's

7  Evid., p. 625-31; Ex. 109 to Atlantic's Evid., p. 1274-76; Ex. 22 to Atlantic's Evid., p.

8  633-35; Ex. 32 to Atlantic's Evid., p. 686-88; Ex. 23 to Atlantic's Evid., p. 639-41; Ex.

9  110 to Atlantic's Evid., p. 1280; Ex. 24 to Atlantic's Evid., p. 644-47; Ex. 101 to

10  Atlantic's Evid., p. 1207-10; Ex. 25 to Atlantic's Evid., p. 650-52; Ex. 10 to Atlantic's

11  Evid., p. 478-80; Ex. 102 to Atlantic's Evid., p. 1213-15; Ex. 26 to Atlantic's Evid., p.

12  655-57), 34 (Ex. 119 to Atlantic's Evid., p. 1415), RSI 248 (Ex. 168 to Atlantic's Evid.,

13  p. 1884; Ex. 169 to Atlantic's Evid., p. 1886-88), 251 (Ex. 160 to Atlantic's Evid., p.

14  1753-55). The contents in the exhibits concerning the use of the phrases "militants"

15  and "military" is helpful in determining the fact in issue concerning Hamas's capability

16  of committing warlike actions as well as entering into a war with Israel; and the e-mails

17  are not based on the e-mail authors' scientific or specialized knowledge.  Therefore, the

18  statements are not improper lay opinions under Federal Rule of Evidence 701.

19  The e-mails from Stephen Smith are internal e-mails between plaintiffs' personnel or

20  agents and were produced by the plaintiffs. *Anand v. BP West Coast Products LLC*, 484 F.

21  Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("documents produced in response to

22  discovery requests are admissible on a motion for summary judgment since they are

23  self-authenticating and constitute the admissions of a party opponent."). In addition,

24  Mr. Smith has gained personal knowledge regarding the region as well as security risks

25  pertinent to Israel through his position as Head of Security. *Self-Realization Fellowship*

26  *Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (Personal

27  knowledge can be inferred or presumed from an employee's position within a

28

1  company.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007).

2  Furthermore, the plaintiffs relied on Mr. Smith's personal knowledge to keep them

3  informed of security risks. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04);

4  31 (Ex. 119 to Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex.

5  121 to Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to

6  Atlantic's Evid., p. 1285), 33 (Ex. 95 to Atlantic's Evid., p. 1173-75; Ex. 119 to

7  Atlantic's Evid., p. 1415; Ex. 108 to Atlantic's Evid., p. 1268-1270; Ex. 96 to Atlantic's

8  Evid., p. 1178-1180; Ex. 18 to Atlantic's Evid., p. 606-09; Ex. 17 to Atlantic's Evid., p.

9  600-02; Ex. 97 to Atlantic's Evid., p. 1184-86; Ex. 98 to Atlantic's Evid., p. 1190-92;

10  Ex. 99 to Atlantic's Evid., p. 1196-97; Ex. 100 to Atlantic's Evid., p. 1201-04; Ex. 21 to

11  Atlantic's Evid., p. 625-31; Ex. 109 to Atlantic's Evid., p. 1274-76; Ex. 22 to Atlantic's

12  Evid., p. 633-35; Ex. 32 to Atlantic's Evid., p. 686-88; Ex. 23 to Atlantic's Evid., p.

13  639-41; Ex. 110 to Atlantic's Evid., p. 1280; Ex. 24 to Atlantic's Evid., p. 644-47; Ex.

14  101 to Atlantic's Evid., p. 1207-10; Ex. 25 to Atlantic's Evid., p. 650-52; Ex. 10 to

15  Atlantic's Evid., p. 478-80; Ex. 102 to Atlantic's Evid., p. 1213-15; Ex. 26 to Atlantic's

16  Evid., p. 655-57), 34 (Ex. 119 to Atlantic's Evid., p. 1415), RSI 250 (Ex. 119 to

17  Atlantic's Evid., p. 1397), 251 (Ex. 160 to Atlantic's Evid., p. 1753-55), Randi

18  Richmond Decl. (Doc. 61-9) ¶¶ 7-9. To question Mr. Smith's knowledge now but not

19  while *relying* on it is disingenuous.

20  The e-mails from Max Security are not hearsay. Max Security Intelligence provides

21  intelligence and risk analysis to assess, prepare for, and mitigate threats before they

22  become a problem. RSI 248 (Ex. 168 to Atlantic's Evid., p. 1884; Ex. 169 to Atlantic's

23  Evid., p. 1886-88). Plaintiffs hired Max Security Intelligence to provide security for the

24  production of *Dig* while in Israel. SUF 31 (Ex. 119 to Atlantic's Evid., p. 1411-12; Ex.

25  120 to Atlantic's Evid., p. 1471-72; Ex. 121 to Atlantic's Evid., p. 1474), 32 (Ex. 16 to

26  Atlantic's Evid., p. 584; Ex. 111 to Atlantic's Evid., p. 1285), 33 (Ex. 95 to Atlantic's

27  Evid., p. 1173-75; Ex. 119 to Atlantic's Evid., p. 1415; Ex. 108 to Atlantic's Evid., p.

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1268-1270; Ex. 96 to Atlantic's Evid., p. 1178-1180; Ex. 18 to Atlantic's Evid., p. 606-09; Ex. 17 to Atlantic's Evid., p. 600-02; Ex. 97 to Atlantic's Evid., p. 1184-86; Ex. 98 to Atlantic's Evid., p. 1190-92; Ex. 99 to Atlantic's Evid., p. 1196-97; Ex. 100 to Atlantic's Evid., p. 1201-04; Ex. 21 to Atlantic's Evid., p. 625-31; Ex. 109 to Atlantic's Evid., p. 1274-76; Ex. 22 to Atlantic's Evid., p. 633-35; Ex. 32 to Atlantic's Evid., p. 686-88; Ex. 23 to Atlantic's Evid., p. 639-41; Ex. 110 to Atlantic's Evid., p. 1280; Ex. 24 to Atlantic's Evid., p. 644-47; Ex. 101 to Atlantic's Evid., p. 1207-10; Ex. 25 to Atlantic's Evid., p. 650-52; Ex. 10 to Atlantic's Evid., p. 478-80; Ex. 102 to Atlantic's Evid., p. 1213-15; Ex. 26 to Atlantic's Evid., p. 655-57), 34 (Ex. 119 to Atlantic's Evid., p. 1415). Max Security Intelligence was also hired to provide reports to the plaintiffs regarding the security for the production of *Dig* in Israel. *Id.* Therefore, Max Security was an agent of the plaintiffs when it prepared those reports and sent e-mails relating to the security situation. As an agent, its e-mail to the plaintiffs concerning security—which was the basis of the employment relationship—is not hearsay because it is an opposing party's statement. Fed. R. Evid. 801(d)(2)(D); *MGM Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006) (an independent contractor—a designer—was the agent of a litigant for purposes of Rule 801(d)(2)(D) because the contractor was included in e-mails to the litigant's design "team" and the litigant directed the contractor to perform certain work). Alternatively, the statements are not hearsay because the plaintiffs relied on the information within the Max Security reports in assessing security concerns associated with filming in Israel and therefore believed it to be true. SUF 28 (Ex. 119 to Atlantic's Evid., p. 1395, 1397, 1403-04); 31 (Ex. 119 to Atlantic's Evid., p. 1411-12; Ex. 120 to Atlantic's Evid., p. 1471-72; Ex. 121 to Atlantic's Evid., p. 1474), 32 (Ex. 16 to Atlantic's Evid., p. 584; Ex. 111 to Atlantic's Evid., p. 1285), 33 (Ex. 95 to Atlantic's Evid., p. 1173-75; Ex. 119 to Atlantic's Evid., p. 1415; Ex. 108 to Atlantic's Evid., p. 1268-1270; Ex. 96 to Atlantic's Evid., p. 1178-1180; Ex. 18 to Atlantic's Evid., p. 606-09; Ex. 17 to Atlantic's Evid., p. 600-02; Ex. 97

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE

1  to Atlantic's Evid., p. 1184-86; Ex. 98 to Atlantic's Evid., p. 1190-92; Ex. 99 to

2  Atlantic's Evid., p. 1196-97; Ex. 100 to Atlantic's Evid., p. 1201-04; Ex. 21 to Atlantic's

3  Evid., p. 625-31; Ex. 109 to Atlantic's Evid., p. 1274-76; Ex. 22 to Atlantic's Evid., p.

4  633-35; Ex. 32 to Atlantic's Evid., p. 686-88; Ex. 23 to Atlantic's Evid., p. 639-41; Ex.

5  110 to Atlantic's Evid., p. 1280; Ex. 24 to Atlantic's Evid., p. 644-47; Ex. 101 to

6  Atlantic's Evid., p. 1207-10; Ex. 25 to Atlantic's Evid., p. 650-52; Ex. 10 to Atlantic's

7  Evid., p. 478-80; Ex. 102 to Atlantic's Evid., p. 1213-15; Ex. 26 to Atlantic's Evid., p.

8  655-57), 34 (Ex. 119 to Atlantic's Evid., p. 1415), RSI 250 (Ex. 119 to Atlantic's Evid.,

9  p. 1397),  251 (Ex. 160 to Atlantic's Evid. p. 1753-55), Randi Richmond Decl. (Doc.

10  61-9) ¶¶ 7-9. Fed. R. Evid. 801(d)(2)(B); *Sea-Land Serv. v. Lozen Int'l, LLC*, 285 F.3d 808,

11  821 (9th Cir. 2002) (a "party may adopt a written statement if the party uses the

12  statement or takes action in compliance [with] the statement."). In addition, the e-mail

13  is an internal e-mail between the plaintiff's head of security and Max Security, which

14  was hired to provide security reports to the plaintiffs, and was produced by the

15  plaintiffs. *Anand v. BP West Coast Products LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D.

16  Cal. 2007) ("documents produced in response to discovery requests are admissible on a

17  motion for summary judgment since they are self-authenticating and constitute the

18  admissions of a party opponent."). Furthermore, the author of the Max Security report

19  is presumed to have personal knowledge concerning the security risks and concerns in

20  the region—considering this was the purpose of the agency relationship and Max

21  Security's specialty. SUF 31 (Ex. 119 to Atlantic's Evid., p. 1411-12; Ex. 120 to

22  Atlantic's Evid., p. 1471-72; Ex. 121 to Atlantic's Evid., p. 1474), 32 (Ex. 16 to

23  Atlantic's Evid., p. 584; Ex. 111 to Atlantic's Evid., p. 1285), RSI 248 (Ex. 168 to

24  Atlantic's Evid., p. 1884; Ex. 169 to Atlantic's Evid., p. 1886-88). *Self-Realization*

25  *Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000)

26

27

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**

1    (Personal knowledge can be inferred or presumed from an employee's position within

2    a company.); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal.

3    2007).

4

5    DATED:  MAY 8, 2017                    MARC J. SHRAKE, ESQ.
                                            ANDERSON, MCPHARLIN & CONNERS
6                                           LLP

7                                           MICHAEL KEELEY, ESQ.
                                            CARLA C. CRAPSTER, ESQ.
8                                           STRASBURGER & PRICE, LLP

9

10                                          By:   */s/ Michael Keeley*
                                                  Michael Keeley
11                                                Attorneys for Defendant
                                                  Atlantic Specialty Insurance Company
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

**ATLANTIC'S REPLY TO PLAINTIFFS' OBJECTIONS TO EVIDENCE**