LUCIA E. COYOCA (SBN 128314)
  lec@msk.com
VALENTINE A. SHALAMITSKI (SBN 236061)
  vas@msk.com
DANIEL M. HAYES (SBN 240250)
  dmh@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone:  (310) 312-2000
Facsimile:  (310) 312-3100

Attorneys for Plaintiffs
Universal Cable Productions LLC and
Northern Entertainment Productions LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>        Defendant. | CASE NO. 2:16-cv-4435-PA-MRW<br><br>The Honorable Percy Anderson<br><br>**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS RE: PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Reply Memorandum iso Universal's Motion for Partial Summary Judgment; Evidentiary Objections to Atlantic' s Additional Material Facts; and Response to Atlantic' s Objections to Evidence filed concurrently herewith]<br><br>Date:        May 22, 2017<br>Time:        1:30 pm<br>Ctrm.:       9A, First St. Courthouse<br><br>File Date:    June 20, 2016<br>Trial Date:   July 25, 2017 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiffs Universal Cable Productions LLC and Northern Entertainment Productions LLC (collectively "Universal"), hereby respond to Defendant Atlantic Specialty Insurance Company's ("Atlantic) Statement of Genuine Disputes of Material Facts (ECF No. 74-1), which, in turn, responded to Universal's Statement of Uncontroverted Facts ("SUF") and Conclusions of Law (ECF No. 63-1). Below, Universal:

1. Provides a succinct response to those SUF paragraphs which Atlantic disputed in Section I below (pp. 1—38); and

2. Responds to Atlantic's purported additional material facts in Section II below (pp. 38—181).  Due to Atlantic listing 181 additional purported material facts, of which 152 are entirely duplicative of Atlantic's Statement of Uncontroverted Facts filed with its Motion for Summary Judgment [ECF No. 95-6], this submission is lengthy.

In short, however, Atlantic failed to create a *genuine* dispute of any *material* fact.

**I.    PLAINTIFFS' ALLEGED UNCONTROVERTED FACTS**

**A.    Plaintiffs' Allegation: Atlantic breached the production insurance policy ("the Policy") as a matter of law, by denying coverage for the extra expenses incurred by Universal in postponing and relocating the production of the television show *Dig* out of Israel during the summer of 2014, based on inapplicable exclusions in the Policy (i.e., Exclusions 1, 2, 3, and 4 of the General Conditions, § III)**

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| 1.    Defendant Atlantic Insurance Specialty Company ("Atlantic") is a OneBeacon Insurance Group company, which operates Atlantic and various | Undisputed |

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| OneBeacon entities. | |
| 2.     Atlantic issued its first of five production policies to NBCUniversal Media, LLC ("NBCUniversal") effective as of January 1, 2010. | Undisputed |
| 3.     The January 1, 2010 policy was issued after extensive negotiations. | Undisputed |
| 4.     The January 1, 2010 policy insured against certain risks commonly incurred in connection with television productions. | Undisputed |
| 5.     The January 1, 2010 policy was renewed from year to year, until issuance of the policy at issue here, Motion Picture/Television Producers Portfolio Policy No. MP00163-04 (the "Policy"). | Undisputed |
| 6.     The Policy had an eighteen month policy period, from January 1, 2014 to June 30, 2015. | Undisputed |
| 7.     NBCUniversal Media LLC ("NBCUniversal") is the first named insured under the Policy. | Undisputed |
| 8.     UCP and NEP ("Universal") are production companies and indirect subsidiaries of NBCUniversal. | Undisputed |
| 9.     UCP and NEP are Named Insureds | Undisputed |

Mitchell Silberberg & Knupp LLP

2

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| under the Policy. | |
| 10.    The Extra Expense coverage of the Policy covers those expenses incurred in connection with interruption, postponement, or relocation of an Insured Production as a result of "imminent peril." | **Disputed in Part.** **Plaintiffs' Evidence:** Policy, Section III – Extra Expense, § I, Garber Decl. ¶ 3, Ex. 2, p. 37; Williams Dep. 74:6-12 [attached as Ex. 43 to Coyoca Decl.]. **Atlantic's Response:** Atlantic disputes this fact in part because it is incomplete. The Policy is more specific regarding what it covers and the circumstances under which such expenses are covered than the statement of fact indicates. The full language of the relevant insuring agreement provides: "We agree to pay you such loss (as defined in Paragraph VII) not including loss of earnings or profit, as you sustain by reason of such extra expense you necessarily incur as a result of the interruption, postponement, cancellation, relocation, curtailment or abandonment of an Insured Production due to the following: |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| | 1.   The loss must be a direct result of an unexpected, sudden or accidental occurrence entirely beyond your control to include: … (g) Imminent peril, defined as certain, immediate and impending danger of such probability and severity to persons or property that it would be unreasonable or unconscionable to ignore." Policy, Section III – Extra Expense § I attached as Ex. 43 to Coyoca Decl. **Objections:** Incomplete, misleading, misstates the evidence. |
| **Plaintiffs' Response:**  There is no genuine dispute of material fact.  The additional policy language Atlantic quotes does not change the import of the policy language on this matter, or that it covers the *Dig* Claim.  *See also* Universal's Reply Brief, pp. 23-25, filed concurrently herewith, and Response To Atlantic Specialty Insurance Company's Objections To Evidence Submitted By Plaintiffs In Support Of Plaintiffs' Motion For Partial Summary Judgment ("Resp. to Evid. Objections"), filed concurrently herewith. | |
| 11.   "Imminent peril" is defined in the Policy as "certain, immediate and impending danger of such probability and severity to person or property that it would | Undisputed |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell Silberberg & Knupp LLP

REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| be unreasonable or unconscionable to ignore." | |
| 12.    The Policy excludes from coverage losses caused by:<br><br>1.  War, including undeclared or civil war; or<br><br>2.  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or,<br><br>3.  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.  Such loss or damage is excluded regardless of any other cause or event contributed concurrently or in any sequence to the loss.<br><br>4.  Any weapon of war including atomic fission or radioactive force, whether in time of peace or war…. | Undisputed |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| 13.     The Policy does not expressly exclude losses caused by acts of terrorism. | **Disputed in part.** **Plaintiffs' Evidence:** Policy, Garber Decl. ¶ 3, Ex. 2, p. 7-61; Williams Dep. 74:6-12; 93:3-6; 94:4-7 [attached as Ex. 43 to Coyoca Decl.]. **Atlantic's Response:** Undisputed to the extent that the word "expressly" is used to mean there is not an exclusion in the policy that specifically mentions terrorism. But loss caused by terrorism is covered only if it comes within a coverage provision and is not otherwise excluded. Atlantic therefore objects on the ground that the statement is vague and misleading. **Objections:** Vague and misleading. |

**Plaintiffs' Response:**  There is no genuine dispute of material fact.  Atlantic's response or objections do not create a genuine dispute.  Atlantic admits there is not an exclusion in the policy that specifically mentions terrorism.  Atlantic admits that the facts and circumstances that caused the postponement and move of the *Dig* production constitute "imminent peril," and thus there was coverage unless an exclusion applied.  SUF ¶ 52, 54, 56.  Exclusions must be clear and explicit to preclude coverage.  *See also* Universal's Reply Brief, pp. 10-12, filed concurrently herewith, and Resp. to Evid. Objections.

Mitchell Silberberg & Knupp LLP

REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| 14.    Each NBCUniversal or UCP television show is added as an "Insured Production" on an individual basis. | Undisputed |
| 15.    Aon/Albert G. Ruben Insurance Services, Inc. ("Aon") is NBCUniversal's insurance broker. | Undisputed |
| 16.    On December 11, 2013, Aon submitted an application to Atlantic for *Dig* to be added to the Policy as an Insured Production. | Undisputed |
| 17.    The application disclosed that production would take place in large part in Israel. | Undisputed |
| 18.    Intermittent violence in Israel has occurred since the establishment of the State of Israel in 1948. | Undisputed |
| 19.    In recent decades, a Palestinian group known as Hamas has conducted numerous terrorist attacks against Israel, "including shootings, suicide bombings, and standoff mortar-and-rocket attacks against civilian and military targets." | **Plaintiffs' Evidence:** Coyoca Decl. ¶ 6, Ex. 22, p. 115; Levitt Decl. Ex. A, p. 21; RJN p. 3. **Atlantic's Response:** **Objections:** Lack of foundation, lack of personal knowledge, conclusory. |

**Plaintiffs' Response:**  There is no genuine dispute of material fact.  Atlantic has not provided any evidence controverting Universal's evidence.  *See also* Resp. to Evid. Objections.

Mitchell Silberberg & Knupp LLP

7

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| 20.    Hamas has been designated as a terrorist organization by the U.S. government since 1997. | Undisputed |
| 21.    In submitting *Dig* for coverage under the Policy, Andrea Garber, an Aon representative, informed Atlantic, *inter alia*, as follows:<br>•   "While in Israel, the production will be based in Tel Aviv and the majority of filming will be done in that city.  Of the total 70 day shoot, approximately 20 days will involve shooting only on the west side of Jerusalem."<br>•   "The NBCU Security team is already involved in the prepping of this project and they are meeting weekly with the production folks that are currently on board to discuss precautions and procedures that need to be taken as the project develops."<br>•   "[T]he mayor of Jerusalem and the local police have been contacted and are assisting in assuring the safety of the production company when they are working in Jerusalem." | Undisputed |

Mitchell
Silberberg &
Knupp LLP

8

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| 22.   Atlantic expressed concerns about safety and security precautions while filming in Israel. | Undisputed |
| 23.   Atlantic assessed the risks associated with production in Israel, and agreed to accept the *Dig* production as an Insured Production under the Policy. | Undisputed |
| 24.   Universal implemented additional security for the production in Israel. | Undisputed |
| 25.   In seeking to have *Dig* added as an Insured Production, Andrea Garber of Aon, told Atlantic:  "we would like to avoid any deviation from our standard policy terms if possible." | Undisputed |
| 26.   On December 12, 2013, and again on January 14, 2014, Atlantic accepted and confirmed coverage for *Dig* as an Insured Production under the Policy. | Undisputed |
| 27.   Atlantic did not change the Policy's terms, or add any new or Israel-specific exclusions or endorsements to the Policy, when it added *Dig* as an Insured Production. | Undisputed |
| 28.   Atlantic did not inform Aon, NBCUniversal, or Universal, that it intended to exclude from coverage attacks | **Disputed.** **Plaintiffs' Evidence:** Garber Decl. ¶ 14; Ford Decl. ¶ 4; |

Mitchell Silberberg & Knupp LLP

9

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| or violence by terrorist groups, such as Hamas, if UCP shot *Dig* in Israel.  Thus, the Aon and Universal representatives involved with declaring Dig as an Insured Production understood that Dig was insured against acts of terrorism in Israel, including by terrorist groups. | Gutterman Dep. Ex. 29 [attached as Ex. 24 to Coyoca Decl.]; Gutterman Dep. 295:9-297:23 [attached as Ex. 44 to Coyoca Decl.]. **Atlantic's Response:** There were no discussions one way or the other about what would or would not be covered in terms of war or terror, and there were no discussions about the war exclusions.  Deposition of Andrea Garber at pages 73-74, Ex. 147 to Crapster Decl. at 1610-1611. Deposition of Susan Weiss at pages 31-32, Ex. 148 to Crapster Decl. at 1634-1635. **Objections:** The portion stating that the plaintiffs understood that *Dig* was insured against acts of terrorism in Israel, including by terrorist groups on the grounds is impermissible extrinsic evidence. |

**Plaintiffs' Response:**  There is no genuine dispute of material fact.  Atlantic's purportedly controverting evidence does not controvert the fact that Atlantic did not inform Aon, NBCUniversal, or Universal, that it intended to exclude from coverage attacks or violence by terrorist groups, such as Hamas, if UCP shot *Dig* in Israel. Rather, it supports this fact:  Atlantic did not discuss with Aon or NBCUniversal

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| that it intended that terrorism by groups like Hamas would not be covered. *See also* Resp. to Evid. Objections. | |
| 29.    The *Dig* pilot episode commenced filming in Israel on or about June 2, 2014. | Undisputed |
| 30.    Before June 2, 2014, conditions in Israel were considered safe for filming. | Undisputed |
| 31.    Three Israeli teenagers were kidnapped on June 12, 2014. | Undisputed |
| 32.    The U.S. State Department reported there were "many signs that point[ed] to Hamas involvement" in the kidnappings. | Undisputed |
| 33.    Production of the *Dig* pilot episode was completed on June 26, 2014. | Undisputed |
| 34.    The show went on hiatus for pre-production and preparation for filming of the next five episodes, with production scheduled to resume on July 20, 2014. | Undisputed |
| 35.    On or about June 30, 2014, the bodies of the three missing teenagers were found, and it was again reported that there were signs "indicat[ing] that Hamas was involved." | Undisputed |
| 36.    After allegations were made that Hamas was responsible for the kidnappings, Hamas began firing rockets | **Disputed in part.** **Plaintiffs' Evidence:** Levitt Decl. Ex. A, p. 23; Coyoca |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| into Israel; and Israel began to take affirmative action to protect its civilian citizens and to stop Hamas' attacks. | Decl. ¶¶ 12, 32, 33, Ex. 28, pp. 175, 177, and Ex. 48, p. 482, and Ex. 49, p. 485; RJN p. 2.<br><br>**Atlantic's Response:**<br>Disputed to the extent the fact suggests that there was no rocket fire until late June. Rocket fire into Israel began in mid-June. UCP002524-2526 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (June 15, 2014 05:03 PST). Ex. 11 to Atlantic's Evid., p. 483-85; Smith Depo., at p. 215-19. Ex. 119 to Atlantic's Evid., p. 1426-27.<br><br>**Objections:** Misleading, misstates the evidence. |

**Plaintiffs' Response:**  There is no genuine dispute of material fact.  It is irrelevant whether there was some rocket fire into Israel in mid-June 2014.  It is undisputed that before June 2, 2014, when *Dig* began production, conditions in Israel were considered safe for filming.  SUF ¶¶ 29, 30.  Universal's evidence and Atlantic's evidence shows that Hamas increased its rocket fire into Israel in response to Israel's allegations about the kidnappings, in late June and early July, 2014.  *See also* Resp. to Evid. Objections.

| | |
|---|---|
| 37.    On July 8, 2014, the State Department warned about concerns as to | Undisputed |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| "the safety and security of civilians" in and around Israel and Jerusalem. | |
| 38.    Certain *Dig* filming was scheduled to take place in and around Israel and specifically Jerusalem when production resumed. | Undisputed |
| 39.    As tensions increased through-out early July, the NBCUniversal security team evaluated the situation. | Undisputed |
| 40.    On July 10, 2014, the NBCUniversal security team advised the UCP *Dig* production team:  "[T]he security environment in Israel currently prohibits NBCU Security from being able to guarantee the safety and security of our employees, production partners and associated crew and talent." | Undisputed |
| 41.    On July 11, 2014, UCP decided to postpone, for one week, production of the *Dig* episodes which had been scheduled to resume on July 20, 2014. | Undisputed |
| 42.    On July 11, 2014, UCP informed Atlantic that, due to the circumstances and safety concerns for cast and crew members, production of the show was being postponed by one week. | Undisputed |

Mitchell
Silberberg &
Knupp LLP

13

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| 43.    UCP also told Atlantic that UCP might be compelled to move the *Dig* production to another location if conditions did not improve. | Undisputed |
| 44.    On July 16, 2014, the State Department spokesperson reported:  "right now the potential we're looking at is … an even greater escalation of violence" in and around Israel. | Undisputed |
| 45.    Faced with the prospect of escalating violence, UCP decided to move the *Dig* production out of Israel. | Undisputed |
| 46.    UCP informed Atlantic of its decision to move the *Dig* production out of Israel on July 17, 2014. | Undisputed |
| 47.    The production of *Dig* was relocated to Croatia and the State of New Mexico. | Undisputed |
| 48.    UCP and NEP incurred significant expenses in connection with the initial delay in production and the subsequent relocation of the production to Croatia and New Mexico. | **Disputed in part.** **Plaintiffs' Evidence:** Richmond Decl. ¶ 10; Ford Decl. ¶ 2. **Atlantic's Response:** Disputed to the extent the plaintiffs allege "significant expenses." Atlantic does not dispute that the plaintiffs incurred some expense, but the amount is at dispute in this case, and Atlantic's |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
|  | expert on this issue has calculated a much lower figure than the plaintiffs seek. |

**Plaintiffs' Response:**  There is no genuine dispute of material fact.  Atlantic does not dispute that Plaintiffs incurred extra expenses.  Plaintiffs have moved for partial summary judgment, not for judgment in the specific amount of their extra expenses.  Whether the amount is "significant" or not (which it is, no matter how one calculates it) is irrelevant for the purposes of this motion.

| | |
|---|---|
| 49.     On July 15, 2014, Aon submitted to Atlantic a formal notice of the *Dig* claim for the extra expenses incurred in connection with the delay and subsequent relocation of the production (the "Claim"), on behalf of NBCUniversal and UCP. | Undisputed |
| 50.     Atlantic assigned an "investigator," Daniel Gutterman, and an in-house claims lawyer, Pamela Johnson, to investigate and evaluate coverage for the Claim. | **Disputed.** **Plaintiffs' Evidence:** Gutterman Dep. Ex. 30, p. 248 [attached as Ex. 33 to Coyoca Decl.]; Gutterman Dep. 89:7-89:16, 150:10-15; 304:5-19 [attached as Ex. 44 to Coyoca Decl.]; Deposition of Teresa Gooley Wolf ("Gooley Dep.") 20:20-21:1; 97:3-24 [attached as Ex. 45 to Coyoca Decl.]. **Atlantic's Response:** Ms. Johnson, although an attorney, did |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| | not act as such in evaluating the Claim, and on the grounds that this list is incomplete. Atlantic employees Theresa Gooley and Peter Williams were also involved in the evaluation of coverage for the Claim. **Objections:** Incomplete, misleading. |
| **Plaintiffs' Response:** There is no genuine dispute of material fact. Atlantic does not dispute that it assigned Daniel Gutterman and Pamela Johnson (an in-house claims lawyer) to investigate and evaluate coverage for the Claim. Exactly how many employees of Atlantic "were involved in the evaluation of the coverage of the Claim" is not material to the issues in Universal's Motion. *See also* Resp. to Evid. Objections. | |
| 51.    Atlantic provided its written coverage position denying the Claim in a July 28, 2014 letter from Ms. Johnson to Andrea Garber, on behalf of NBCUniversal. | Undisputed |
| 52.    In its denial letter, Atlantic stated, "Rockets launched [by Hamas] toward areas where filming is taking place would no doubt reasonably constitute a 'certain, immediate and impending danger of such probability and severity to person or property that it would be unreasonable or unconscionable to ignore.'… The question | Undisputed |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| now is not whether the loss falls within the insuring clause but whether the war exclusion or the terrorism coverage applies." | |
| 53.    Atlantic "concluded that the extra expense associated with the move is not covered under [the Policy] because of the exclusion for war and warlike actions." | **Disputed.** <br> **Plaintiffs' Evidence:** <br> Denial Letter, Garber Decl. ¶18, Ex. 12, p. 83. <br> **Atlantic's Response:** <br> Atlantic refers the Court to the complete Denial Letter (Garber Decl. ¶ 18, Ex. 12) for Atlantic's complete discussion of coverage, which included referencing Exclusions 3 and 4 (relating to insurrection, rebellion, revolution, etc. and weapons of war) on page 86. <br> **Objection:** Incomplete, misleading, misstates the evidence. Four war exclusions were quoted and therefore specifically included in the denial letter. Garber Decl. ¶ 18, Ex. 12, p. 86. |

**Plaintiffs' Response:**  There is no genuine dispute of material fact.  The document speaks for itself.  The fact that Atlantic's denial letter quotes the four war exclusions as a whole does not negate the fact that Atlantic expressly denied the claim solely because of the exclusions for "war and warlike actions," as Atlantic's denial letter

Mitchell
Silberberg &
Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| states.  *See also* Resp. to Evid. Objections. | |
| 54.    Atlantic's July 28, 2014 denial letter invoked Exclusions 1 and 2, the exclusions for war and warlike action, but not Exclusions Nos. 3 (insurrection, rebellion, revolution, etc.) and 4 (weapon of war). | **Disputed.** **Plaintiffs' Evidence:** Denial Letter, Garber Decl. ¶18, Ex. 12, pp. 83-90. **Atlantic's Response:** Atlantic refers the Court to the complete Denial Letter (Garber Decl. ¶ 18, Ex. 12) for Atlantic's complete discussion of coverage, which included references to Exclusions 3 and 4 (relating to insurrection, rebellion, revolution, etc. and weapons of war) on page 86. **Objections:** Incomplete, misleading, misstates the evidence. Four war exclusions were quoted and therefore specifically included in the denial letter. Garber Decl. ¶ 18, Ex. 12, p. 86. |
| **Plaintiffs' Response:**  There is no genuine dispute of material fact.  The document speaks for itself.  The fact that Atlantic's denial letter quotes the four war exclusions as a whole does not show that Atlantic invoked Exclusions 3 and 4 as reasons for denying the claim.  It did not, as Atlantic's denial letter plainly states in the SUF quoted above, ¶ 53.  *See also* Resp. to Evid. Objections. | |
| 55.    In its July 28, 2014 denial letter, Atlantic conceded "that the extra expenses | **Disputed.** **Plaintiffs' Evidence:** |

18

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| that will be incurred to move the production out of Israel will be due to imminent peril." | Denial Letter, Garber Decl. ¶18, Ex. 12, p. 87; FAC ¶ 20 [attached as Ex. 18 to Coyoca Decl.]; Answer ¶ 20 [attached as Ex. 19 to Coyoca Decl.]; Gooley Dep. 214:1-14 [attached as Ex. 45 to Coyoca Decl.].<br><br>**Atlantic's Response:**<br>Disputed on the grounds that it is incomplete. Atlantic conceded that the losses that were incurred as a result of war were due to unexpected imminent peril. Atlantic did not concede that the plaintiffs' losses were from terrorism, but if they were, which Atlantic denies, such losses were not from unexpected imminent peril. Atlantic refers the Court to the complete Denial Letter (Garber Decl. ¶ 18, Ex. 12) for Atlantic's complete discussion of coverage, which included references to Exclusions 3 and 4 (relating to insurrection, rebellion, revolution, etc. and weapons of war) on page 86.<br>**Objections:** Incomplete, misleading, misstates the evidence. Four war exclusions were quoted and  therefore |

19

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| | specifically included in the denial letter. Garber Decl. ¶ 18, Ex. 12, p. 86. |

**Plaintiffs' Response:** There is no genuine dispute of material fact. The document speaks for itself. Atlantic's position that if the losses were from imminent peril due to "war" they were covered, but if due to terrorism they were not, is nonsensical and also does not appear anywhere in the document at issue. *See also* Universal's Reply Brief, pp. 23-25, filed concurrently herewith, and Resp. to Evid. Objections.

| | |
|---|---|
| 56.    On July 16, 2014, the then President of OneBeacon Entertainment (a division of Atlantic), Peter Williams, wrote that "they [Universal] have immanent [sic] peril." | **Disputed.**<br>**Plaintiffs' Evidence:**<br>Williams Depo Ex. 11, p. 253 [attached as Ex. 34 to Coyoca Decl.]; Williams Dep. 23:2-23; 30:13-21; 220:25-222:12; 227:11-22 [attached as Ex. 43 to Coyoca Decl.].<br>**Atlantic's Response:**<br>The excerpt is incomplete and therefore misleading. Mr. Williams' full e-mail stated:<br>"Why is it not a covered claim they have immanent [sic] peril. Unless you are going to invoke the war exclusion. I am available between 1 and 3 my time."<br>**Objections:** Incomplete and misleading. |

**Plaintiffs' Response:** There is no genuine dispute of material fact. The document

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| speaks for itself.  The additional language in Mr. Williams' email does not contradict the stated fact or Atlantic's President's belief that there was "imminent peril." *See also* Resp. to Evid. Objections. | |
| 57.    Atlantic's denial letter and its subsequent September 19, 2014 response letter cited authorities holding that "war" requires hostilities between sovereign or quasi-sovereigns, and argued that there was a war here because Hamas is a quasi-sovereign. | Undisputed |
| 58.    The claims supervisor that oversaw Pamela Johnson and Daniel Gutterman's work, Theresa Gooley, testified that the word "war" has multiple meanings. | Undisputed |
| 59.    Mr. Williams testified that hostilities must be broad and widespread to constitute war. | Undisputed |
| 60.    Atlantic's claims investigator, Daniel Gutterman, testified that it is hard to define what war is but that "I just know it when I see it." | Undisputed |
| 61.    Atlantic's September 19, 2014 denial letter described the size and scope of the conflict between Hamas and Israel in the summer of 2014. | Undisputed |
| 62.    The insurance industry did not | **Disputed in part.** |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| exclude 9/11 losses based on application of any war exclusions | **Plaintiffs' Evidence:** Declaration of Ty R. Sagalow ("Sagalow Decl.), Ex. D ("Expert Report of Ty R. Sagalow"), ¶ 72; Williams Dep. 101:6-21 [attached as Ex. 43 to Coyoca Decl.]. **Atlantic's Response:** Williams did not state that the insurance industry as a whole did not exclude 9/11 losses based on war exclusions. Williams Dep. 101:6-21 [attached as Ex. 43 to Coyoca Decl.]. **Objections:** Lack of foundation, lack of personal knowledge, conclusory, speculation, improper parol or extrinsic evidence. |

**Plaintiffs' Response:**  There is no genuine dispute of material fact.  Atlantic does not dispute that Mr. Williams' testimony supports the fact in part.  Atlantic submitted a declaration from Mr. Williams further supporting this fact.  *See* Declaration of Peter Williams ¶ 3 (ECF No. 74-9) (the insurance industry did not apply war exclusions to the 9/11 losses).  And, the fact is supported in full by Mr. Sagalow's expert report.  *See also* Resp. to Evid. Objections.

| | |
|---|---|
| 63.    After 9/11, the insurance industry standard was for policies to have *both* a terrorism exclusion and a war exclusion, or at a minimum to address with specificity | **Disputed in part.** **Plaintiffs' Evidence:** Sagalow Decl. Ex. D, ¶ 49-55; Williams Dep. 96:5-8 - 96:5-8 |

Mitchell Silberberg & Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| whether "terrorism" is covered by the policy. | [attached as Ex. 43 to Coyoca Decl.]. **Atlantic's Response:** Williams agreed only with the statement that after 9/11, there was "a growth of exclusions for terrorism being applied in insurance policies by the insurance industry." Williams Dep. 96:5-8 [attached as Ex. 43 to Coyoca Decl.]. **Objections:** Lack of foundation, lack of personal knowledge, conclusory, speculation, improper legal conclusion, improper parol or extrinsic evidence. |

**Plaintiffs' Response:**  There is no genuine dispute of material fact.  Atlantic does not dispute that Mr. Williams' testimony supports the fact in part.  The fact is supported in full by Mr. Sagalow's expert report.  *See also* Resp. to Evid. Objections.

| | |
|---|---|
| 64.    Atlantic knows how to draft a terrorism exclusion. | Undisputed |
| 65.    In the insurance industry, war and terrorism are two separate concepts.  "[A]n underwriter cannot merge the two concepts and say that 'an act of terrorism' can be also an 'act of war.'" | **Disputed.** **Plaintiffs' Evidence:** Sagalow Decl. Ex. D, ¶ 56. **Atlantic's Response:** **Objections:** Lack of foundation, lack of personal knowledge, conclusory, speculation, improper legal conclusion, |

Mitchell Silberberg & Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
|  | improper parol or extrinsic evidence. |

**Plaintiffs' Response:** There is no genuine dispute of material fact. Atlantic has not provided any evidence controverting Universal's evidence. *See also* Resp. to Evid. Objections.

| | |
|---|---|
| 66.    After the events of 9/11, insureds reasonably expect that terrorism and war are two separate risks, which will be underwritten and evaluated by an insurance company separately. | **Disputed.**<br>**Plaintiffs' Evidence:** Sagalow Decl. Ex. D, ¶ 56.<br>**Atlantic's Response:**<br>**Objections:** Lack of foundation, lack of personal knowledge, conclusory, speculative, improper parol or extrinsic evidence. |

**Plaintiffs' Response:** There is no genuine dispute of material fact. Atlantic has not provided any evidence controverting Universal's evidence. *See also* Resp. to Evid. Objections.

| | |
|---|---|
| 67.    The U.S. government has never recognized Hamas as either a sovereign or quasi-sovereign. | **Disputed in part.**<br>**Plaintiffs' Evidence:**<br>Levitt Decl. Ex. A, pp. 18, 28; Ross Decl. Ex. B, ¶¶ 10, 23; Koh Decl. Ex. C, p. 16; Coyoca Decl. ¶ 7, Ex. 23; RJN p. 1.<br>**Atlantic's Response:**<br>Atlantic disputes that the U.S. Government has never recognized Hamas as a quasi-sovereign on the grounds that it implies the U.S. might |

Mitchell Silberberg & Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| | do so. Plaintiffs offer no evidence that the U.S. ever recognizes any entity as a "quasi-sovereign." **Objections:** Lack of foundation, lack of personal knowledge, conclusory, misleading. |
| **Plaintiff's Response:** There is no genuine dispute of material fact.  Atlantic's purported dispute is a legal argument.  Atlantic does not dispute the fact itself, and Atlantic has not provided any evidence controverting Universal's evidence. *See also* Resp. to Evid. Objections. | |
| 68.    Atlantic's September 19, 2014 response letter states that Gaza "is not a recognized nation, at least by most of the world," and that Israel is a "legitimate sovereign." | Undisputed |
| 69.    The U.S. government does not recognize Gaza as a sovereign territorial nation. | Undisputed |
| 70.    The U.S. government considers Hamas to be a Palestinian non-state actor. | **Disputed.** **Plaintiffs' Evidence:** Ross Decl. Ex. B, ¶ 9. **Atlantic's Response:** **Objections:** Lack of foundation, lack of personal knowledge, conclusory. |
| **Plaintiffs' Response:** There is no genuine dispute of material fact.  Atlantic has not provided any evidence controverting Universal's evidence. *See also* Resp. to Evid. | |

Mitchell
Silberberg &
Knupp LLP

25

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| Objections. | |
| 71.    The U.S. government has not considered adding Hamas to the list of state sponsors of terrorism at any point since 1987. | **Disputed.** **Plaintiffs' Evidence:** Ross Decl. Ex. B, ¶ 10. **Atlantic's Response:** **Objection:** Lack of foundation, lack of personal knowledge, conclusory, speculative. |
| **Plaintiffs' Response:**  There is no genuine dispute of material fact.  Atlantic has not provided any evidence controverting Universal's evidence.  *See also* Resp. to Evid. Objections. | |
| 72.    "[S]ince designating Hamas a Foreign Terrorist Organization in the 1990's, it has been the policy of every American administration not to engage in meetings or dialogue with officials of Hamas, let alone any formal diplomatic relations[,]" because of Hamas' use of violence and terrorism and rejectionist position with regard to Israel's right to exist. | **Disputed.** **Plaintiffs' Evidence:** Ross Decl. Ex. B, ¶ 23. **Atlantic's Response:** **Objections:** Lack of foundation, lack of personal knowledge, conclusory, speculative. |
| **Plaintiffs' Response:**  There is no genuine dispute of material fact.  Atlantic has not provided any evidence controverting Universal's evidence.  *See also* Resp. to Evid. Objections. | |
| 73.    "U.S. Policy will not recognize Gaza as a sovereign or quasi-sovereign territory. | **Disputed.** **Plaintiffs' Evidence:** |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| And it will not recognize Hamas as being a legitimate authority in Gaza." | Ross Decl. Ex. B, p. 10.<br>**Atlantic's Response:**<br>**Objections:** Lack of foundation, lack of personal knowledge, conclusory, speculation and unfounded prediction. |
| **Plaintiffs' Response:** There is no genuine dispute of material fact. Atlantic has not provided any evidence controverting Universal's evidence. *See also* Resp. to Evid. Objections. | |
| 74.    Hamas did not seize control of Gaza from Israel; instead, in 2005 Israel voluntarily withdrew from Gaza, subject to the Oslo agreements. | Undisputed |
| 75.    Hamas does not control the borders, ports, or airspace of Gaza. | **Disputed in part.**<br>**Plaintiffs' Evidence:**<br>Ross Decl. Ex. B, ¶ 21; Levitt Decl. Ex. A, p. 10, 28.<br>**Atlantic's Response:**<br>Atlantic does not agree that Hamas does not control the borders of Gaza. Rebuttal Declaration of Frank Lowenstein, ¶ 10; attached as Ex.155 at p. 1721. U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 88 (2015), available at |

Mitchell
Silberberg &
Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| | https://www.state.gov/documents/organization/236814.pdf, Exhibit 5 to Atlantic's Evid., p. 177. **Objections:** Lack of foundation, lack of personal knowledge, conclusory. |

**Plaintiffs' Response:**  There is no genuine dispute of material fact.  Atlantic's evidence does not directly contradict Universal's evidence that Israel and Egypt control Gaza's borders.  *See* Universal's Evidence re: Atlantic's Additional Material Fact ¶ 275.  *See also* The Israeli-Palestinian Interim Agreement, e.g., Art. XII, Annex I, Art. XIII.  *See also* Resp. to Evid. Objections.

| 76.    The United States refuses to recognize Hamas as anything other than a terrorist group, and does not engage in any meetings or dialogue with Hamas. | **Disputed in part.** **Plaintiffs' Evidence:** Ross Decl. Ex. B, ¶¶ 10, 20, 23. **Atlantic's Response:** Disputed to the extent that Atlantic does not concede that the U.S. would ever recognize any entity or group as a quasi-sovereign, as the plaintiffs have no support for this assertion and Atlantic has discovered no evidence that would support such an assertion. **Objections:** Lack of foundation, lack of personal knowledge, misleading, speculative, conclusory. |

**Plaintiff's Response:**  There is no genuine dispute of material fact.  Atlantic's response is nothing more than argument.  Atlantic has not provided any evidence

Mitchell Silberberg & Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| controverting Universal's evidence. *See also* Resp. to Evid. Objections. | |
| 77.   The European Union, Canada Australia, Israel, and other countries designate Hamas as a terrorist group. | Undisputed |
| 78.   Hamas is part of:  (i) the larger Muslim Brotherhood movement, whose goal is to have all Muslims governed exclusively by Sharia law and live under the banner of Allah; and, (ii) the overarching Palestinian Authority, who recognized the State of Israel and thus does not seek to overthrow the government of Israel. | **Disputed in part.** **Plaintiffs' Evidence:** Levitt Decl. Ex. A, p. 8, 11; Ross Decl. Ex. B, ¶¶ 9, 11, 13, 15. **Atlantic's Response:** Atlantic does not dispute that Hamas is associated with the Muslim Brotherhood whose goal is to have all Muslims governed by Sharia law and live under the banner of Allah. Atlantic does not dispute that Hamas is "part of" the Palestinian Authority in that it was elected to control the Palestinian Legislative Council in 2006, which is part of the PA. Atlantic does dispute that Hamas does not seek to overthrow the government of Israel and that its connection with the PA suggests it does not have that intent. Levitt's report makes explicitly clear that while the PA did recognize the State of Israel, Hamas *did not*. Levitt Decl. Ex. |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| | A, p. 8 ("While the Palestinian Authority recognized the State of Israel (and vice versa) as part of the Oslo process, radical rejectionist groups like Palestinian Islamic Jihad (PIJ) and Harakat al-Muqaawama al-Islamiya, more commonly known as Hamas, did not."). |
| **Plaintiff's Response:**  There is no genuine dispute of material fact.  Atlantic merely makes legal argument in connection with this fact, which is not disputed.  Atlantic has not provided any evidence controverting Universal's evidence.  *See also* Resp. to Evid. Objections. | |
| 79.    Hamas is one of several different Palestinian factions that fundamentally disagree about how to achieve their objective to establish a state of Palestine. | Undisputed |
| 80.    Hamas' founding charter published in 1988 advocates the establishment of a separate Islamic fundamentalist Palestinian state, the destruction of the state of Israel, and the raising of "the banner of Allah over every inch of Palestine." | Undisputed |
| 81.    Hamas rejects the right of Israel to exist. | Undisputed |
| 82.    The purpose of Hamas' rocket attacks in July 2014 was to (i) retaliate for | **Disputed.** **Plaintiffs' Evidence:** |

Mitchell
Silberberg &
Knupp LLP

30

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| the Israeli allegations that Hamas was responsible for the kidnapping/murder of the three Israeli teens earlier in the summer, and (ii) spread terror among the civilian population of Israel. | Levitt Decl. Ex. A, pp. 23-25. **Atlantic's Response:** The support (footnote 95) for Levitt's statement that the purpose of the rocket attacks was retaliation for the allegation of kidnapping Israeli teenagers is an entire book with no pinpoint cite. Atlantic cannot confirm this allegation. Levitt's support (footnote 100) for the statement regarding the purpose of spreading terror is a brief U.N. report that summarizes detailed findings of the U.N. Human Rights Council. The actual detailed report, attached as Ex. 6 to Atlantic's Evidence, states only that the commission "cannot exclude the possibility" that Hamas's intent was to spread terror because many of its rockets did not have targeting capabilities. Ex. 6 to Atlantic's Evidence at p. 238. **Objections:** Lack of foundation, misleading, misstates the evidence, lack of personal knowledge, conclusory. |

31

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| **Plaintiffs' Response:** There is no genuine dispute of material fact. Atlantic has not provided any evidence controverting Universal's evidence, expert opinion, or the underlying support for it. *See also* Resp. to Evid. Objections. | |
| 83.   Theresa Gooley (Atlantic's senior claims supervisor) testified that "the third [exclusion] I don't think is applicable." | Undisputed. |
| 84.   Immediately following Exclusion 4 in the Policy is another exclusion (number 5) for "Nuclear reaction or radiation, or radioactive contamination from any other cause." | Undisputed. |
| 85.   Mr. Williams, testified that Exclusion 4 did not apply to the claim because it required atomic or radioactive involvement. | **Disputed in part.** **Plaintiffs' Evidence:** Williams Dep. 23:2-23; 30:13-21; 252:7-22 [attached as Ex. 43 to Coyoca Decl.]. **Atlantic's Response:** Atlantic does not deny that Mr. Williams made this misstatement. But it is a misstatement made after a full day of testimony when he was so tired he was misreading the exclusion and thought it was the more typical exclusion based on weapons of war, as opposed to the one drafted by Aon. Declaration of Peter Williams, attached as Ex. 157 to Crapster Decl. |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| | at pp. 1725-1727. |

**Plaintiffs' Response:** There is no genuine dispute of material fact. Atlantic's introduction of a sham declaration is insufficient to generate a material issue of fact. *See* Universal's Reply Brief, p. 20, filed concurrently herewith; *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony"); *Foster v. Arcata Assocs.*, 772 F.2d 1453, 1462 (9th Cir. 1985) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

| | |
|---|---|
| 86.   Andrea Garber, formerly of Aon, testified that in order for Exclusion 4 to apply, "it has to be a weapon of war involving atomic fission." | **Plaintiffs' Evidence:** Garber Decl. ¶ 2; Deposition of Andrea Garber, 358:22-359:20 [attached as Ex. 46 to Coyoca Decl.]. **Atlantic's Response: Objections:** Improper parol or extrinsic evidence. |

**Plaintiffs' Response:** There is no genuine dispute of material fact. Atlantic has not provided any evidence controverting Universal's evidence. *See also* Resp. to Evid. Objections.

| | |
|---|---|
| 87.   Atlantic has acknowledged that Hamas' actions may violate norms of warfare, stating, "the rockets are being fired into civilian areas, which may violate established norms of warfare and armed conflict under international law." | **Disputed. Plaintiffs' Evidence:** Denial Letter, Garber Decl. ¶ 18, Ex. 12, p. 89. **Atlantic's Response: Objections:** Incomplete and |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| | misleading. This was in the context of an explanation and discussion of facts associated with war. The letter does not suggest in any way that the fighting at issue was anything other than war. |

**Plaintiffs' Response:** There is no genuine dispute of material fact. The document speaks for itself. Atlantic's response is an objection to an implication or legal conclusion that could be drawn from this fact, not to the fact itself. Atlantic has not provided any evidence controverting Universal's evidence. *See also* Resp. to Evid. Objections.

| | |
|---|---|
| 88.    Hamas' indiscriminate firings of rockets that lack directional controls to ensure they are hitting military (and not civilian) targets constitute acts of terrorism and are not for any military advantage. | **Disputed.**<br>**Plaintiffs' Evidence:**<br>Levitt Decl. Ex. A, pp. 24, 29; Koh Decl. Ex. C, pp. 14-15, 17.<br>**Atlantic's Response:**<br>Levitt's support for this statement (footnote 100 of Levitt's Declaration) is a brief U.N. report that summarizes detailed findings of the U.N. Human Rights Council. The actual detailed report, attached as Ex. 6 to Atlantic's Evidence, states only that the commission "cannot exclude the possibility" that Hamas's intent was to spread terror because many of its |

Mitchell
Silberberg &
Knupp LLP

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| | rockets did not have targeting capabilities. UNR at p. 29. This is obviously a far cry from stating definitively that this *was* Hamas's intent. Koh's sole support for this statement is the Levitt's Declaration, and therefore suffers from the same flaw. **Objections:** Lack of foundation, assumes facts not in evidence, misleading, conclusory, speculative. The conclusion that Hamas's actions constituted acts of terror and were not for military advantage is also a legal question presented to this court on which the plaintiffs' experts (Levitt and Koh) may not opine. |

**Plaintiffs' Response:**  There is no genuine dispute of material fact.  Atlantic has not provided any evidence controverting Universal's evidence, expert opinion, or the underlying support for it.  *See also* Resp. to Evid. Objections.

    **B.**    **Plaintiffs' Allegation:  Second Affirmative Defense, labeled "Exclusion 1, General Conditions" ("War, including undeclared or civil war") lacks merit and fails as a matter of law.**

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|

Mitchell
Silberberg &
Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| [89.] Universal incorporates herein uncontroverted facts set forth in paragraphs 1 through 77, *supra*. | **Plaintiffs' Evidence:** Universal incorporates herein evidence supporting uncontroverted facts set forth in paragraphs 1 through 77, *supra*. **Atlantic's Response:** Atlantic incorporates herein its responses to the facts set forth in paragraphs 1 through 77. |

**C.     Plaintiffs' Allegation:  Third Affirmative Defense, labeled "Exclusion 2, General Conditions" ("Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents") lacks merit and fails as a matter of law.**

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| [90.] Universal incorporates herein uncontroverted facts set forth in paragraphs 1 through 77, *supra*. | Universal incorporates herein evidence supporting uncontroverted facts set forth in paragraphs 1 through 77, *supra*. **Atlantic's Response:** Atlantic incorporates herein its responses to the facts set forth in paragraphs 11 through 77. |

**D.     Plaintiffs' Allegation:  Fourth Affirmative Defense, labeled "Exclusion 3, General Conditions" ("Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.  Such loss or damage is excluded regardless of**

36

Mitchell
Silberberg &
Knupp LLP

1 | any other cause or event that contributes concurrently or in any sequence to
2 | the loss.") lacks merit and fails as a matter of law.

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| [91.] Universal incorporates herein uncontroverted facts set forth in paragraphs 1 through 56, and 78 through 83, *supra*. | Universal incorporates herein evidence supporting uncontroverted facts set forth in paragraphs 1 through 56, and 78 through 83, *supra*.<br><br>**Atlantic's Response:**<br>Atlantic incorporates herein its responses to the facts set forth in paragraphs 1 through 56 and 78 through 83. |

13 |     E.    Plaintiffs' Allegation:  Fifth Affirmative Defense, labeled
14 | "Exclusion 4, General Conditions" ("Any weapon of war including atomic
15 | fission or radioactive force, whether in time of peace or war") lacks merit and
16 | fails as a matter of law.

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| [92.] Universal incorporates herein uncontroverted facts set forth in paragraphs 1 through 56, and 84 through 88, *supra*. | Universal incorporates herein evidence supporting uncontroverted facts set forth in paragraphs 1 through 56, and 84 through 88, *supra*.<br><br>**Atlantic's Response:**<br>Atlantic incorporates herein its responses to the facts set forth in paragraphs 1 through 56 and 84 through 88. |

Mitchell
Silberberg &
Knupp LLP

27
28

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

**F.     Plaintiffs' Allegation:  Exclusions 1, 2, 3, and 4 in the Policy must be interpreted based on their technical and special meaning established by longstanding case authority, international law, and industry custom and practice**

| PLAINTIFFS' ALLEGED UNCONTROVERTED FACT: | ATLANTIC'S RESPONSE: |
|---|---|
| [93.] Universal incorporates herein uncontroverted facts set forth in paragraphs 10 through 12, *supra*. | Universal incorporates herein evidence supporting uncontroverted facts set forth in paragraphs 10 through 12, *supra*. **Atlantic's Response:** Atlantic incorporates herein its responses to the facts set forth in paragraphs 10 through 12. |

## II.   ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACTS

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| 94.     The Palestinian political identity emerged between 1923 and 1948. | Undisputed. |
| 95.     In 1947, the United Nations intended to create two states in what are now Israel and Palestine: one Jewish and one Arab. But for reasons that are still disputed, it ultimately founded only the Jewish state: Israel. | Undisputed. |
| 96.     In 1947 and 1948, there was an "Arab-Israeli war," in which Israel defeated Arab nations and declared its | Undisputed. |

Mitchell
Silberberg &
Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| independence. | |
| 97.    Almost 700,000 Palestinians were driven or fled from their homes as a result of the 1947 and 1948 "Arab-Israeli war." | Undisputed, but irrelevant.  Fed. R. Evid. 402. |
| 98.    The Palestinians who remained in the West Bank and Gaza following the "Arab-Israeli war" were subject to either Egyptian, Jordanian, or Israeli rule. | **Disputed** as to the "or Israeli rule" part. Otherwise undisputed, assuming the referenced time period is pre-1967. Also irrelevant (Fed. R. Evid. 402), hearsay (Fed. R. Evid. 801, 802); no personal knowledge (Fed. R. Evid. 602). <br> •    Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 2-3 (2015). Ex. 4 to Atlantic's Evid., p. 45-46. <br> ***Controverting evidence***:  The referenced source does not support the "or Israeli rule" portion of this "fact"; the references source states:  "Palestinians remaining in Israel became Israeli citizens.  Those who were in the West Bank (including East Jerusalem) and Gaza were subject to Jordanian and Egyptian administration, respectively." |
| 99.    In June of 1967, the Six-Day | The "…who had styled themselves as |

REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| War occurred, in which Israel defeated the Arab states who had styled themselves as Palestinians' protectors. | Palestinians' protectors" part is irrelevant. Fed. R. Evid. 402. Otherwise undisputed. |
| 100.   As a result of the 1967 Six-Day War, Israel gained control over the entire area that constituted Palestine. | Undisputed, assuming the reference is to the area that constituted Palestine under the British Mandate, as the cited source indicates. |
| 101.   Israel effectively annexed East Jerusalem and the Golan Heights, leaving the West Bank and Gaza under military occupation, but not truly incorporated into Israel. | The "…but not truly incorporated into Israel" part is not supported by any of the cited sources, and argumentative.  Fed. R. Evid. 403. Otherwise undisputed, assuming the referenced time period is about after 1967. <br>• Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 3 (2015). Ex. 4 to Atlantic's Evid., p. 46. <br>• U.S. Department of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for Israel and the Occupied Territories for 2014 52 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Atlantic's Evid., p. 141. <br> • Lowenstein Aff. at 4. Ex. 1 to Atlantic's Evid., p. 5 ¶A-B. |
| 102.   There are two competing Palestinian political parties or organizations. Fatah is the largest faction of the confederated multi-party Palestinian Liberation Organization, and is currently led by Yasser Arafat's successor, Mahmoud Abbas. Hamas is a Palestinian Islamic military and socio-political movement that formed in 1987. It has maintained its primary base of political support and military command in the Gaza Strip. | **Disputed** as to the characterization of Hamas as a "political party" or anything other than a terrorist organization. Otherwise undisputed. <br> • Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 5 (2015). Ex. 4 to Atlantic's Evid., p. 48. <br> • Jim Zanotti, Cong. Research Serv., R41514, Hamas: Background and Issue for Congress 1-3 (2010). Ex. 8 to Atlantic's Evid., p. 404-06. <br> *Controverting evidence*: <br> • Defendant's own sources:  "The United States, Israel, the European Union, and Canada consider Hamas a terrorist organization."  Ex. 8 to Atlantic's Evid., p. 404-06. <br> • Universal's evidence (filed in support of Universal's Motion for Partial Summary Judgment ("MSJ")):  Declaration of Dr. |

Mitchell Silberberg & Knupp LLP

41

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Matthew Levitt ("Levitt Decl.") Ex. A (Expert Report of Dr. Levitt), p. 11 [ECF No. 61-3]; Declaration of Ambassador Dennis Ross ("Ross Decl.") Ex. B (Expert Report of Amb. Ross), ¶¶ 10, 23 [ECF No. 61-4]; Declaration of Harold Koh ("Koh Decl.") Ex. C (Expert Report of Harold Koh), p. 16 [ECF No. 61-5]; Coyoca Decl. ¶¶ 5, 6, Exs. 21, 22 [ECF No. 61-10; 61-11; 61-12]; RJN pp. 1-2 [ECF No. 62]. |
| 103.   Hamas's charter, created in 1988, "commits the group to the destruction of Israel and the establishment of an Islamic state in all of historic Palestine, comprised of present-day Israel, the West Bank, and Gaza." The charter states: "Israel will exist and will continue to exist until Islam will obliterate it, just as it obliterated others before it." | Undisputed. |
| 104.   In the mid-1990s, the Palestinian Authority (PA) was granted limited rule (under supervening Israeli occupational authority) in the Gaza | Undisputed, assuming the referenced "limited rule" is further subject to the Oslo Accords, as the cited source indicates. <br> •     Jim Zanotti, Cong. Research Serv., |

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
| --- | --- |
| Strip and parts of the West Bank. | RL34074, The Palestinians: Background and U.S. Relations 26 (2015). Ex. 4 to Atlantic's Evid., p. 69. |
| 105.   In 2005, Israel unilaterally withdrew its military forces and all of its civilians from Gaza, leaving control to the PA. | **Disputed** to the extent "leaving control to the PA" fails to take into account the Oslo Accords, as the cited source indicates (e.g., Ex. 6 to Atlantic's Evid., p. 217: "According to the Interim agreement on the West Bank and the Gaza Strip, Israel maintains the control of Gaza's airspace and maritime areas"); *see also* Levitt Decl. Ex. A (Expert Report of Dr. Levitt), pp. 8, 10 [ECF No. 61-3]; Ross Decl. Ex. B (Expert Report of Amb. Ross), ¶¶ 10-13, 23 [ECF No. 61-4]. Otherwise undisputed. Objection based on hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703). |
| 106.   In 2006, Hamas was elected to a majority of the seats in the Palestinian Legislative Council (the legislative branch of the PA) and became the governing authority over Gaza. | **Disputed** as to the characterization of Hamas as a "governing authority" (which is also unsupported by the sources Atlantic cites) or anything other than a terrorist organization. |

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Otherwise undisputed, but irrelevant as to time, misleading (Fed. R. Evid. 402, 403), hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), not a proper subject of a judicial notice (Fed. R. Evid. 201). <br>• Lowenstein Aff. at 4. Ex. 1 to Atlantic's Evid., p. 5 ¶B. <br>• Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 3, 29 (2015). Ex. 4 to Atlantic's Evid., p. 46, 72. <br>• Jim Zanotti, Cong. Research Serv., R41514, Hamas: Background and Issue for Congress 3 (2010). Ex. 8 to Atlantic's Evid., p. 406. <br>• U.S. Department of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for Israel and the Occupied Territories for 2014 52 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 141. |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | *Controverting evidence*:<br><br>• Defendant's own sources: "In the 2006 Palestinian Legislative Council (PLC) elections, candidates backed by Hamas won…; however, the PLC has not functioned since 2007." Ex. 5 to Atlantic's Evid., p. 141.<br><br>• Levitt Decl. Ex. A (Expert Report of Dr. Levitt) pp. 7-29 (Hamas in the Gaza Strip is not recognized as a legitimate entity, but is a terrorist group, similarly to Boko Haram in Nigeria, al Qaeda in the Arabian Peninsula (AQAP) in Yemen, and the Islamic State (ISIL) in Syria, Iraq, Libya, and Egypt (among others)); [ECF No. 61-3]; Ross Decl. Ex. B (Expert Report of Amb. Ross) ¶¶ 8-24 (Hamas is an illegitimate actor) [ECF No. 61-4]; Koh Decl. Ex. C (Expert Report of Harold Koh) ¶¶ 4-17 (Hamas is not a legitimate actor) [ECF No. 61-5]; Coyoca Decl. ¶¶ 5, 6, Exs. 21, 22 [ECF No. 61-10; 61-11; 61-12]; |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | RJN pp. 1-2 [ECF No. 62]. |
| 107.   In 2007, Hamas's armed forces in Gaza defeated forces loyal to PA President Mahmoud Abbas and consolidated control over the Gaza Strip. | **Disputed** as to the characterization of the events, "control," and Hamas as anything other than a terrorist organization. Otherwise undisputed, but irrelevant and misleading (Fed. R. Evid. 402, 403), hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703), not a proper subject of a judicial notice (Fed. R. Evid. 201). <br> • U.S. Department of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for Israel and the Occupied Territories for 2014 52 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 141. <br> • Lowenstein Aff. at 4. Ex. 1 to Atlantic's Evid., p. 5 ¶B. <br> ***Controverting evidence***: <br> • Defendant's own sources:  "Hamas political and military leaders in the West Bank and Gaza gained greater |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | power, and then consolidated this power in Gaza—while losing it in the West Bank—through violent struggle with Fatah in June 2007." Ex. 4 to Atlantic's Evid., p. 75. "In 2007 Hamas staged a violent takeover of PA government installations[.]" Ex. 5 at p. 141. |
| | • "In 2007, Hamas took over the Gaza Strip by force of arms and violence when it turned its guns on its fellow Palestinians from the Fatah party[.]" Levitt Decl. Ex. A, p. 10 [ECF No. 61-3]. |
| | • Levitt Decl. Ex. A (Expert Report of Dr. Levitt) pp. 7-29 (Hamas in the Gaza Strip is not recognized as a legitimate entity, but is a terrorist group, similarly to Boko Haram in Nigeria, al Qaeda in the Arabian Peninsula (AQAP) in Yemen, and the Islamic State (ISIL) in Syria, Iraq, Libya, and Egypt (among others)); [ECF No. 61-3]; Ross Decl. Ex. B (Expert Report of Amb. Ross) ¶¶ 8-24 (Hamas is an |

Mitchell
Silberberg &
Knupp LLP

47

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | illegitimate actor.  "[T]he West Bank and Gaza are a 'single territorial unit.'") [ECF No. 61-4]; Koh Decl. Ex. C (Expert Report of Harold Koh) ¶¶ 4-17 (Hamas is not a legitimate actor) [ECF No. 61-5]; Coyoca Decl. ¶¶ 5, 6, Exs. 21, 22 [ECF No. 61-10; 61-11; 61-12]; RJN pp. 1-2 [ECF No. 62]. |
| 108.   Since 2007, Hamas has been the de facto ruling authority in the Gaza Strip, where it currently governs like any other government with "political, military and social welfare activities." | **Disputed**. Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703), improper legal conclusion or opinion (Fed. R. Evid. 701, 702). <ul><li>Lowenstein Aff. at 4. Ex. 1 to Atlantic's Evid., p. 5¶C.</li><li>U.S. Department of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for Israel and the Occupied Territories for 2014 52 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 141.</li></ul> |

REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
|  | *Controverting evidence*:<br><br>• Defendant's own sources: "Hamas's security forces have maintained power in Gaza ever since, even after its de facto government publicly relinquished responsibility in June 2014 to a PA government formed with Hamas's approval."  Ex. 4 to Atlantic's Evid., p. 72.<br><br>• Levitt Decl. Ex. A (Expert Report of Dr. Levitt) pp. 7-29 ("[T]he Hamas' *da'wa*—its proselytizing and social and charitable activities—model is that funds supporting any part of Hamas free up existing monies to support its terrorist activities[.]"  Hamas in the Gaza Strip is not recognized as a legitimate entity, but is a terrorist group, similarly to Boko Haram in Nigeria, al Qaeda in the Arabian Peninsula (AQAP) in Yemen, and the Islamic State (ISIL) in Syria, Iraq, Libya, and Egypt (among others)); [ECF No. 61-3]; Ross |

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
| --- | --- |
| | Decl. Ex. B (Expert Report of Amb. Ross) ¶¶ 8-24 (Hamas is an illegitimate actor; it is not a legitimate political organization or government) [ECF No. 61-4]; Koh Decl. Ex. C (Expert Report of Harold Koh) ¶¶ 4-17 (Hamas is not a legitimate actor or government) [ECF No. 61-5]; Coyoca Decl. ¶¶ 5, 6, Exs. 21, 22 [ECF No. 61-10; 61-11-61-12]; RJN pp. 1-2 [ECF No. 62]. |
| 109.   Official reports by the Congressional Research Service and the U.S. State Department refer to Hamas's control over Gaza and call it Gaza's de facto government. | **Disputed** as improperly supported and to the extent it purports to characterize Hamas as anything other than a terrorist organization. Also hearsay (Fed. R. Evid. 801, 802), not a proper subject to a judicial notice (Fed. R. Evid. 201), impermissible legal conclusion, improper opinion (Fed. R. Evid. 701, 702), irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. •   U.S. Department of State, Bureau of Democracy, Human Rights and |

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Labor, Country Report on Human Rights Practices for Israel and the Occupied Territories for 2014, 52, 56, 88, 91, 114 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 141, 145, 177, 180, 203. |
| | • Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 29, 35 (2015). Ex. 4 to Atlantic's Evid., p. 72, 78. |
| | • Jim Zanotti, Cong. Research Serv., R41514, Hamas: Background and Issue for Congress 17, 18 (2010). Ex. 8 to Atlantic's Evid., p. 420, 421. |
| | *Controverting evidence*: Defendant's own sources: |
| | • "[Hamas's] de facto government publicly relinquished responsibility in June 2014 to a PA government formed with Hamas's approval." Ex. 4 to Atlantic's Evid., p. 72. |
| | • "Hamas's agreement to the |

51

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | formation of a new PA government for Gaza and parts of the West Bank in June 2014, which, as mentioned above, resulted in the nominal dissolution of a Hamas-led de facto government that had administered Gaza since June 2007." *Id.* p. 77.<br><br>• "Fatah and Hamas signed a reconciliation agreement in April [2014] and PA President Abbas subsequently formed an interim government of independent technocrats ..." Ex. 5 to Atlantic's Evidence, p. 203.<br><br>• "Reference to the government in Gaza as the "Hamas regime" does not mean that all or even most of the people employed in ministries, civil service positions, and even security forces are necessarily members of Hamas or even Hamas sympathizers.  Hamas partisans are, however, intermingled throughout." Moreover, this statement is from a 2010 report, before Hamas agreed in 2014 to the formation of a new |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Palestinian Authority government for Gaza. Ex. 8 to Atlantic's Evid., p. 422. |
| 110.   In December 2008, the Israeli Defense Forces ("IDF") launched Operation Cast Lead, which began with an intensive aerial bombardment targeting Hamas forces and infrastructure, followed by a ground invasion on January 3, 2009. A ceasefire was entered on January 21, 2009. | **Disputed** in its characterization and support.<br>Also irrelevant (Fed. R. Evid. 401, 402), hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703).<br>• Lowenstein Aff. at P. 5. Ex. 1 to Atlantic's Evid., p. 6 ¶G.<br>• Jim Zanotti, Cong. Research Serv., R41514, Hamas: Background and Issue for Congress 3-4 (2010) Ex. 8 to Atlantic's Evid., p. 406-07.<br>*Controverting evidence*:<br>• Defendant's own sources: "Operation Cast Lead … was launched by Israel in response to repeated rocket attacks by Hamas and other Palestinian militants[.]" Ex. 8 to Atlantic's Evid., p. 407. |
| 111.   In November 14, 2012, Israel declared Operation Pillar of Defense, in which the IDF struck more than 1,000 | **Disputed** in its characterization and support.<br>Also irrelevant (Fed. R. Evid. 401, 402), |

REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| sites in the Gaza Strip. Over a hundred Gazans died and over a hundred were wounded. | hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703), not a proper subject to a judicial notice (Fed. R. Evid. 201). <br>• Lowenstein Aff. at p. 5. Ex. 1 to Atlantic's Evid., p. 6 ¶H. <br>• Human Rights Council, *Human Rights Situation in Palestine and other Occupied Arab Territories*, 18, U.N. Doc. A/HRC/29/CRP.4 (June 24, 2015). Ex. 6 to Atlantic's Evid., p. 227. <br>• Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 9 (2015). Ex. 4 to Atlantic's Evid., p. 52. <br>***Controverting evidence***: <br>• Defendant's own sources: Operation Pillar of Defense— "Palestinian projectiles of greater range and variety, Israeli airstrikes, prominent role for Israel's Iron Dome anti-rocket system.… Fatalities: More than 100 |

54

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Palestinians, six Israelis (four civilians)." Ex. 4 to Atlantic's Evid., p. 52.<br><br>• "Hamas's security forces have maintained power in Gaza ever since, even after its de facto government publicly relinquished responsibility in June 2014 to a PA government formed with Hamas's approval."  . Ex. 4 to Atlantic's Evid., p. 72. |
| 112.  In June 2014, Hamas reached an agreement with Fatah, the other powerful political group in Gaza, to establish a "consensus" or "unity" PA government. | **Disputed** in its characterization and support, and to the extent it characterizes Hamas as a "political group" or anything other than a terrorist organization. Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703), not a proper subject to a judicial notice (Fed. R. Evid. 201).<br><br>• Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 1 (2015). Ex. 4 to Atlantic's Evid., p. 44.<br><br>• Lowenstein Aff. at p. 5. Ex. 1 to |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Atlantic's Evid., p. 6 ¶E. |
| | • UCP03562 E-mail from Stephen Smith, Head of Security, Europe, NBCU, to Randi Richmond, Vice President, Production, Universal Cable Productions LLC ("UCP") (May 01, 2014, 03:15 PST) (referencing the "new agreement" between Fatah and Hamas). Ex. 117 to Atlantic's Evid., p. 1381. |
| | • UCP002524 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU  (June 15, 2014 05:03 PST) (discussing unity government). Ex. 11 to Atlantic's Evid., p. 483-86. |
| | • UCP001873 E-mail from Randi Richmond, Vice President, Production UCP to Stephen Smith, Head of Security, Europe, NBCU (June 14, 2015 05:16 PST) (quoting news article discussing the unity government). Ex. 118 to Atlantic's Evid., p. 1386-88. |
| | ***Controverting evidence***: |
| | • Defendant's own sources:  "[A] |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | new PA government was formed in June 2014 as a result of an agreement between Fatah (the faction that has traditionally dominated the PA) and Hamas. Although Hamas agreed to the government's formation, no Hamas members serve as government ministers[.]" Ex. 4 to Atlantic's Evid., p. 44. |
| | • Levitt Decl. Ex. A (Expert Report of Dr. Levitt) pp. 7-29 (Hamas in the Gaza Strip is not recognized as a legitimate entity, but is a terrorist group, similarly to Boko Haram in Nigeria, al Qaeda in the Arabian Peninsula (AQAP) in Yemen, and the Islamic State (ISIL) in Syria, Iraq, Libya, and Egypt (among others)); [ECF No. 61-3]; Ross Decl. Ex. B (Expert Report of Amb. Ross) ¶¶ 8-24 (Hamas is an illegitimate actor) [ECF No. 61-4]; Koh Decl. Ex. C (Expert Report of Harold Koh) ¶¶ 4-17 (Hamas is not a legitimate actor) [ECF No. 61-5]; |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Coyoca Decl. ¶¶ 5, 6, Exs. 21, 22 [ECF No. 61-10; 61-11; 61-12]; RJN pp. 1-2 [ECF No. 62]. |
| 113.   The United States does not engage with Hamas or any of its members, but determined that it was able to engage with the Government of National Consensus agreed to between Hamas and Fatah. Israel did not like the agreement to form a unity government because it considers Hamas a terrorist organization that it will not engage with. | **Disputed** in its characterization and support, and to the extent it characterizes Hamas as anything other than a terrorist organization. Also irrelevant (Fed. R. Evid. 402), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703). <br> • Lowenstein Aff. at p. 5. Ex. 1 to Atlantic's Evid., p. 6 ¶E. <br> • UCP03562 E-mail from Stephen Smith, Head of Security, Europe, NBCU, to Randi Richmond, Vice President, Production, UCP (May 01, 2014, 03:15 PST)  (referencing the "new agreement" between Fatah and Hamas). Ex. 117 to Atlantic's Evid., p. 1381-82. <br> *Controverting evidence*: <br> • Defendant's sources provide no support for the "Israel did not like the agreement to form a unity government" statement. |

58

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | • Defendant's own sources: "Hamas's security forces have maintained power in Gaza ever since, even after its de facto government publicly relinquished responsibility in June 2014 to a PA government formed with Hamas's approval."  Ex. 4 to Atlantic's Evid., p. 72.<br><br>• Defendant's own sources:  "[A] new PA government was formed in June 2014 as a result of an agreement between Fatah (the faction that has traditionally dominated the PA) and Hamas. Although Hamas agreed to the government's formation, no Hamas members serve as government ministers[.]"  Ex. 4 to Atlantic's Evid., p. 44.<br><br>• Ross Decl. Ex. B (Expert Report of Amb. Ross) ¶ 10 ("since designating Hamas a Foreign Terrorist Organization in the 1990's, it has been the policy of every American administration not |

Mitchell
Silberberg &
Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | to engage in meetings or dialogue with officials of Hamas, let alone any formal diplomatic relations") [ECF No. 61-4]; Levitt Decl. Ex. A (Expert Report of Dr. Levitt) pp. 10-11 ("Hamas in the Gaza Strip is not recognized as a legitimate government by the United Nations, other multilateral organizations, or the vast majority of countries around the world, including the United States. Most countries around the world do not engage in formal diplomatic relations with Hamas.") [ECF No. 61-3]. |
| 114.   The PA is organized like a state—complete with democratic mechanisms; security forces; and executive, legislative, and judicial organs of governance. The executive branch has both a president and a prime minister-led cabinet, the Palestinian Legislative Council (PLC) is its legislature, and the judicial branch has separate high courts to decide substantive disputes and to settle | **Disputed** in its characterization and support, and to the extent it purports to characterize Hamas as anything other than a terrorist organization. Also irrelevant (Fed. R. Evid. 402) hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), not a proper subject to a judicial notice (Fed. R. Evid. 201).  •   Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: |

Mitchell
Silberberg &
Knupp LLP

REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| controversies, as well as a High Judicial Council. | Background and U.S. Relations 26 (2015). Ex. 4 to Atlantic's Evid., p. 69.<br><br>*Controverting evidence*:<br>• Defendant's own sources:  The PA is "not a state[.]"  Ex. 4 to Atlantic's Evid., p. 69.<br>• Defendant's own sources:  "[T]he PLC has not functioned since 2007."  Ex. 5 to Atlantic's Evid., p. 141. |
| 115.   The Hamas government in Gaza employs civil service employees in various ministries, including health and education. | **Disputed**.<br>Also no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703).<br>• Lowenstein Aff. at p. 4-5. Ex. 1 to Atlantic's Evid., p. 5-6 ¶C.<br>*Controverting evidence*:<br>• Defendant's own sources: "Hamas's security forces have maintained power in Gaza ever since, even after its de facto government publicly relinquished responsibility in June 2014 to a PA government formed with Hamas's approval." Ex. 4 to Atlantic's |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Evid., p. 72.<br><br>• Levitt Decl. Ex. A (Expert Report of Dr. Levitt) pp. 17, 20 ("Militancy and terrorism is central to the Hamas leadership in the Gaza Strip. In May 2014, Gaza's Finance Ministry indicated that Hamas' security services include approximately 25,000 employees, "and most of them belong to the Qassam Brigades," the group's elite terrorist wing.  According to one account, two-thirds of Hamas policemen were serving as police officers by day and Qassam Brigade operatives by night as early as 2010."  "Inside the Palestinian territories, the battery of mosques, schools, orphanages, medical clinics, sports leagues, and summer camps are integral components of an overarching apparatus Hamas created and manipulated to incite, recruit, and provide logistical and operational support for weapons smuggling, reconnaissance, and |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | suicide bombings."); [ECF No. 61-3]; Ross Decl. Ex. B (Expert Report of Amb. Ross) ¶¶ 8-24 (Hamas is an illegitimate actor; it is not a legitimate political organization or government) [ECF No. 61-4]; Koh Decl. Ex. C (Expert Report of Harold Koh) ¶¶ 4-17 (Hamas is not a legitimate actor or government) [ECF No. 61-5]; Coyoca Decl. ¶¶ 5, 6, Exs. 21, 22 [ECF No. 61-10; 61-11; 61-12]; RJN pp. 1-2 [ECF No. 62]. |
| 116. Hamas runs an ad hoc judicial system. | **Disputed** as improperly supported and to the extent it purports to characterize Hamas as anything other than a terrorist organization. Also no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703). <br>• Lowenstein Aff. at p. 5. Ex. 1 to Atlantic's Evid., p. 6 ¶C. <br>***Controverting evidence***: <br>• *See* evidence cited in response to ¶¶ 113 and 115 above. |
| 117. Hamas collects revenue from the | **Disputed** as improperly supported and to |

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| people of Gaza in various ways, including licensing fees and taxes, and it receives assistance from foreign governments. | the extent it purports to characterize Hamas as anything other than a terrorist organization.<br><br>Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703).<br><br>• Lowenstein Aff. at p. 4. Ex. 1 to Atlantic's Evid., p. 5 ¶C.<br><br>• Jim Zanotti, Cong. Research Serv., R41514, Hamas: Background and Issue for Congress 19 (2010). Ex. 8 to Atlantic's Evid., p. 422.<br><br>***Controverting evidence***:<br><br>• *See* evidence cited in response to ¶¶ 113 and 115 above, and, *e.g.*, Levitt Decl. Ex. A (Expert Report of Dr. Levitt) p. 29 ("Hamas uses its position in Gaza to further its expressly militant and terrorist objectives.  Hamas remains an internationally recognized terrorist group and is so designated (in whole or in part) by the United States, European Union, Canada Australia, Israel and more.  [Hamas |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | is] … no more a legitimate entity than other terrorist groups that control territory they took over by force, including Boko Haram in Nigeria, al Qaeda in the Arabian Peninsula (AQAP) in Yemen, and the Islamic State (ISIL) in Syria, Iraq, Libya, and Egypt (among others).") [ECF No. 61-3]. |
| 118.  Hamas has a military force, known as the lzz ad-Din al-Qassam Brigades ("Qassam Brigades"). The Qassam Brigades were under Hamas command in the summer of 2014. | **Disputed.** Also no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703). <br> • Lowenstein Aff. at p. 5. Ex. 1 to Atlantic's Evid., p. 6 ¶D. <br> ***Controverting evidence***: <br> • Levitt Decl. Ex. A (Expert Report of Dr. Levitt) p. 9 ("Hamas' military wing, the Izz al-Din *al-*Qassam Brigades, continued to engage in terrorist activities.") [ECF No. 61-3]. <br> • *Weiss v. Arab Bank, PLC*, 2007 U.S. Dist. LEXIS 94029, at *14-20 (E.D.N.Y. Dec. 21, 2007) (Hamas is a terrorist group and cannot |

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | constitute a "military force of any origin"). |
| 119.  The United Nations recognizes Palestine as a non-member state. | **Disputed** in its characterization relating to the U.S. position.  Also irrelevant and misleading.  Fed. R. Evid. 401, 402, 403.<br>• Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 10-11 (2015) (citing U.N. G.A. Res. 67/19 in which the U.N. recognized Palestine as a non-member state). Ex. 4 to Atlantic's Evid., p. 53-54.<br>• G.A. Res. 67/19, at 2, U.N. Doc. A/RES/67/19 (Nov. 29, 2012). Ex. 7 to Atlantic's Evid., p. 395-98.<br>***Controverting evidence***:<br>• Rebuttal Declaration of Ambassador Dennis Ross ("Rebuttal Ross Decl.") Ex. B (Expert Rebuttal Report of Amb. Ross) ¶¶ 10-11 (U.S. "strongly resisted the PLO's effort to gain UN Security Council support for Palestine to become a member of the United Nations and its efforts to be recognized at least as a non- |

Mitchell
Silberberg &
Knupp LLP

66

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | member state of the United Nations.") [ECF No. 77-4]. |
| 120.   The plaintiffs are indirect subsidiaries of NBCUniversal Media, LLC ("NBCU"). | Undisputed. |
| 121.   The plaintiffs were filming the television show called *Dig* in Israel in June 2014. | Undisputed. |
| 122.   Stephen Smith, as head of security Europe for NBCU, was in charge of providing security for NBC News and MSNBC. He was also in charge of providing security advice to the plaintiffs regarding the filming of *Dig* in Israel. | Misrepresents the testimony (Mr. Smith testified that in 2014, his position was Head of security, Europe, his role was security risk management, and he provided security support for, among other things, the *Dig* production), but otherwise undisputed as reflected in the testimony.<br>•   Smith Depo., at p. 31-32, 38-41, 73-74.  Ex. 119 To Atlantic's Evid., p. 1395, 1397, 1403-04. |
| 123.   In early 2014, although there was a history of Hamas rocket fire into Israel, NBCU's security team thought it "highly unlikely" that there would be any threats of rocket fire into Israel. | **Disputed**, mischaracterizes the cited evidence.<br>•   UCP003562 E-mail from Stephen Smith, Head of Security, Europe, NBCU to Randi Richmond, Vice President, Production, UCP (May 01, 2014 03:15 PST). Ex. 117 to Atlantic's Evid., p. 1381-82. |

Mitchell
Silberberg &
Knupp LLP

67

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | • UCP001877 (and attachment) E-mail from Stephen Smith, Head of Security, Europe, NBCU to Stephen Smith, Head of Security, Europe, NBCU (May 22, 2014 09:09 PST). Ex. 144 to Atlantic's Evid., p. 1588-98. |
| | ***Controverting evidence***:  What the cited evidence provides is that, among other things, as of May 2014, "Terrorism is a concern.  Threats come from several sources, including; Palestinian extremists.  Most frequently we see extremists from the Gaza Strip firing rockets into Israel.  These typically only hit in southern Israel, but we saw in late 2012, that they do have the capability to reach as far north as Tel Aviv and Jerusalem, but with very limited accuracy (which resulted in a minimal threat against life)," etc. and that "It is highly unlikely that we will be affected by any of this activity."  Ex. 144 to Atlantic's Evid., pp. 1589-90.  Atlantic SUF ¶ 29 in support of its Motion for Summary Judgment [ECF No. 95-6] cites the same evidence and says "[i]n |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | early 2014, there was very little recent history of Hamas rocket fire into Israel." |
| 124.   Rocket fire into Israel is normal, as the plaintiffs acknowledged in a report prepared assessing whether it would be safe to film in Israel. | Undisputed that the cited evidence notes that rocket fire into Israel was a risk as of April 2014.  **Disputed** as to all characterizations.  Irrelevant (Fed. R. Evid. 402, 403) to the extent the cited evidence refers to areas in Israel where there was no planned *Dig* production activity.<br>•  UCP002227-2237 E-mail (and attachments thereto) from Stephen Smith, Head of Security, Europe, NBCUniversal, to Randi Richmond, Vice President, Production, UCP/NBCUniversal (April 16, 2014 05:56 PST). Ex. 150 to Atlantic's Evid., p. 1647-1657.<br>***Controverting evidence***:  What the cited evidence provides is that among other things, as of April 2014, NBCUniversal security noted: "[a]rbitrary rocket fire by militant groups operating in Gaza occurs with varying degrees of frequency and intensity and mostly targets areas within 25 miles (40km) of the Gaza border; some |

Mitchell
Silberberg &
Knupp LLP

69

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | groups, however, also possess long-range rocket capabilities to hit larger urban centres further afield," "[t]here is a threat of rockets being fired into Israeli territory from the Gaza Strip, Egypt and along the border areas with Lebanon and Syria," and there is "persistent risk of rocket fire in areas along the Israel-Gaza border" but that the security risk rating for Israel was "Low Security Risk."  Ex. 150 to Atlantic's Evid., pp. 1651-53. |
| 125.   Plaintiffs knew when they went to Israel that Hamas might fire rockets into Israel while they were there. | Undisputed that the cited evidence notes that rocket fire into Israel by Hamas was a risk as of April 2014.  **Disputed** as all characterization.  Irrelevant (Fed. R. Evid. 402, 403) to the extent the cited evidence refers to areas in Israel where there was no planned *Dig* production activity. |
| | • UCP002227-2237 E-mail (and attachments thereto) from Stephen Smith, Head of Security, Europe, NBCUniversal, to Randi Richmond, Vice President, Production, UCP/NBCUniversal (April 16, 2014 05:56 PST). Ex. 150 to Atlantic's Evid., p. 1647-1657. |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | ***Controverting evidence***:  What the cited evidence provides is that among other things, as of April 2014, NBCUniversal security noted: "[a]rbitrary rocket fire by militant groups operating in Gaza occurs with varying degrees of frequency and intensity and mostly targets areas within 25 miles (40km) of the Gaza border; some groups, however, also possess long-range rocket capabilities to hit larger urban centres further afield," "[t]here is a threat of rockets being fired into Israeli territory from the Gaza Strip, Egypt and along the border areas with Lebanon and Syria," and there is "persistent risk of rocket fire in areas along the Israel-Gaza border" but that the security risk rating for Israel was "Low Security Risk."  Ex. 150 to Atlantic's Evid., pp. 1651-53. |
| 126.   Hamas had a history of intermittently firing rockets into Israel, and the plaintiffs were well aware of this before they decided to film there. | Undisputed that intermittent violence in Israel has occurred since the establishment of the State of Israel in 1948 (*see* SUF ¶ 18) and that Hamas has intermittently and indiscriminately fired rockets into Israel, but disputed that the cited evidence reflects that "the plaintiffs were well |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | aware of this before they decided to film there." |
| | • UCP003687 E-mail from Stephen Smith, Head of Security, Europe, NBCUniversal, to Randi Richmond, Vice President, Production, UCP/NBCUniversal (May 13, 2014 09:33 PST). Ex. 151 to Atlantic's Evid., p. 1659. |
| | • UCP002227 E-mail from Stephen Smith, Head of Security, Europe, NBCUniversal, to Randi Richmond, Vice President, Production, UCP/NBCUniversal (April 16, 2014 05:56 PST). Ex. 150 to Atlantic's Evid., p. 1647-1657. |
| | ***Controverting facts***:  Universal decided to film in Israel at least as of December 11, 2013, when it submitted an application to add *Dig* to the Policy and informed Atlantic it would be filming in part in Israel.  SUF ¶¶ 16, 17, 21.  Atlantic' cited evidence is from April and May, 2014. |
| 127.   In an e-mail dated May 13, 2014, Stephen Smith, the head of security for Europe for NBCU, stated in an e-mail | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| to Randi Richmond (a producer for UCP), that there was "a recurring risk of terrorism" in Israel. | |
| 128.   Stephen Smith also warned, in a report prepared in April 2014, that there was a risk of rocket attacks, and that there had been approximately 760 firebomb attacks on Israel between January and November 2013. | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom.  The cited evidence does not support that Stephen Smith prepared the report.<br>• UCP002227-2237 E-mail (and attachments thereto) from Stephen Smith, Head of Security, Europe, NBCUniversal, to Randi Richmond, Vice President, Production, UCP/NBCUniversal (April 16, 2014 05:56 PST). Ex. 150 to Atlantic's Evid., p. 1647-1657. |
| 129.   Stephen Smith concluded as part of his security review prior to the production of *Dig*, that it was safe to proceed with the production in the proposed locations in Israel. | Undisputed. |
| 130.   NBCU hired Max Security to provide security for the production of *Dig* while in Israel. Randi Richmond, a UCP producer, described Max Security as the "go to for bigger needs" to | Undisputed. |

REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

Mitchell
Silberberg &
Knupp LLP

| | ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|---|
| | provide security for Dig in Israel. | |
| | 131.   NBCU hired Max Security to prepare detailed reports on the daily security situation in Israel. | Mischaracterizes the testimony (Max Security was not providing reports on daily basis:  Smith Depo. at p. 108), but otherwise undisputed as reflected in the testimony.<br>•   Smith Depo., at p. 108-12.  Ex. 119 to Atlantic's Evid., p. 1411-12. |
| | 132.   Stephen Smith regularly received the Max Security Reports detailing security conditions and hostilities pertaining to Israel and surrounding areas, throughout the time he was providing security advice to the plaintiffs regarding *Dig*, and he advised plaintiffs about the security situation in Israel based on those reports. | Mischaracterizes the testimony (Max Security was providing reports on regular basis, i.e., "it wasn't hourly or daily. Whenever there was information to report, they would report it."  Smith Depo. at p. 108).  Undisputed that Mr. Smith received and reviewed the Max Security Reports he was sent.  **Disputed** as to the balance, including based on mischaracterization of testimony and relevancy (Fed. R. Evid. 402) to the extent said reports were issued after Universal decided to move the *Dig* production.<br>•   Smith Depo., at p. 122. Ex. 119 to Atlantic's Evid., p. 1415.<br>***Controverting Evidence***:  Mr. Smith testified that he relied on certain Max Security Intelligence reports as one of the |

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | sources that he used to carry out his work for NBCUniversal on Dig (p. 122) and that the "contents of … report[]s is neither written nor controlled by me.  I'm interested in what it's actually telling me about specific events, not their interpretation" (pp. 178-89). |
| 133.   Stephen Smith received, reviewed, and relied upon Max Security Reports in carrying out his work in assessing the security situation for the production of *Dig*. | Undisputed that Mr. Smith received and reviewed the Max Security Reports he was sent.  **Disputed** as to the balance, including based on mischaracterization of testimony and relevancy (Fed. R. Evid. 402) to the extent said reports were issued after Universal decided to move the *Dig* production. <br>•   Smith Depo., at p. 122.  Ex. 119 to Atlantic's Evid., p. 1415. <br>***Controverting evidence***:  What Mr. Smith testified is that he relied on certain Max Security Intelligence reports as one of the sources that he used to carry out his work for NBCUniversal on Dig (p. 122) and that the "contents of … report[]s is neither written nor controlled by me.  I'm interested in what it's actually telling me about specific events, not their |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
|  | interpretation" (pp. 178-89). |
| 134.   Tension between Hamas and Israel began to escalate on June 12, 2014, when three Israeli teenagers were kidnapped. | Undisputed. |
| 135.   Three Israeli teenagers were killed on approximately June 12, 2014, reportedly by Hamas militants. | Undisputed. |
| 136.   Israel, in response to the kidnapping of the Israeli teenagers, launched an extensive search and arrest operation. | Undisputed. |
| 137.   After the kidnapping of the three Israeli teenagers, which caused Israel to deploy soldiers into Palestinian territory, NBCU's security team opined that there was a risk for a "broader escalation of hostilities." | Mischaracterizes the evidence (the referenced document, Ex. 12, is by Max Security, not NBCU's security team), but otherwise undisputed as reflected in evidence.<br><br>•   UCP002524-2526 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (June 15, 2014 05:03 PST). Ex. 11 to Atlantic's Evid., p. 483-85. |
| 138.   NBCU's security team advised that Israeli measures "may alter the status quo, increasing the potential for | Mischaracterizes and misquotes the evidence (the referenced document, Ex. 12, stating that "the Israeli measures |

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| related retaliatory attacks on military operations." | against Hamas or other militant-group personnel, may alter the prevailing [omitted by Atlantic] status quo, increasing the potential for related retaliatory attacks or military operations" is by Max Security, not NBCU's security team), but otherwise undisputed as reflected in evidence.<br><br>• UCP002337-2338 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (June 16, 2014 11:20 PST). Ex. 12 to Atlantic's Evid., p. 490-91. |
| 139.   Smith, as head of security sent an e-mail on June 15, 2014, summing up the building tension and Israel's steps responding to the death of the teenagers. | Mischaracterizes the evidence (the referenced document, Ex. 125, provides, among other things, information about "the current security situation is Israel" and that the "current advise from MAX security, which has come in overnight and as a result of a further deterioration of security, is to avoid all activity in the Old City"), but otherwise undisputed as reflected in evidence.<br><br>• UCP000349 E-mail from Stephen Smith, Head of Security, Europe, |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | NBCU to Randi Richmond, Vice President, Production, UCP (June 15, 2014 09:36 PST). Ex. 125 to Atlantic's Evid., p. 1501. |
| 140.   NBCU's June 15, 2014 security e-mail stated: "In the past 48 hours, the extent of Israeli military operations in Hebron and its environs have significantly increased, highlighted by the deployment of over 2,500 IDF soldiers to the area. While at this time operations remain limited to searches and intelligence gathering, Israeli military build ups, deployment of Iron Dome missile batteries, and limited activation of military reserves, suggest that the IDF is prepared for broader altercations, including armed confrontations with militants, civil unrest in Palestinian urban centers, or a more significant military offensive." | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. |
| 141.   On July 2, 2014, Israelis abducted and killed Palestinian teenager Muhammad Abu Khdeir, burning him alive, in what appeared to be an act of revenge for the murdered | The "in what appeared to be an act of revenge for the murdered Israeli teenagers" part is unsupported by evidence, speculative and argumentative. Fed. R. Evid. 602.  The balance is |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| Israeli teenagers. | undisputed. <br> • UCP002422 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU, (July 07, 2014 01:57 PST). Ex. 17 to Atlantic's Evid., p. 600. <br> • U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 55 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 144. |
| 142. An employee of NBCU's security team, Chris Biggs, sent an analysis of the situation on July 2, 2014, and stated three times that there was a serious risk of "war" occurring soon. He used the word "war" three times in this e-mail. | Mischaracterizes the evidence (the referenced document, Ex. 79, does not refer to "serious risk" and the references to "war" is by a third party, IHS, not Mr. Biggs (*see* Ex. 119 to Atlantic's Evid., p. 1449)), but otherwise undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. <br> Also, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402); improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602). |

Mitchell Silberberg & Knupp LLP

REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | • UCP002618 Email from Chris Biggs, Security & Intelligence Analyst, NBCU International, to Stephen Smith, Head of Security, Europe, NBCU (July 02, 2014 10:00 PST). Ex. 79 to Atlantic's Evid., p. 1046. |
| 143.  In the July 2, 2014 e-mail, Chris Biggs wrote: "Killing of Israeli abductees increases pressure on Israeli government to retaliate militarily, raising war and unrest risks." "A broader Gaza war would become more likely if Hamas or other Gaza-based militants responded with several dozen rockets per day into southern Israel over a sustained period. A broader war would result in a much higher likelihood of Hamas using Fajr-5 rockets, capable of reaching Tel Aviv." | Mischaracterizes the evidence (the referenced quotations are by a third party, IHS, not Mr. Biggs (*see* Ex. 119 to Atlantic's Evid., p. 1449)), but otherwise undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. Also, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402); improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602). • UCP002618 Email from Chris Biggs, Security & Intelligence Analyst, NBCU International, to Stephen Smith, Head of Security, Europe, NBCU (July 02, 2014 10:00 PST). Ex. 79 to Atlantic's Evid., p. 1046. |
| 144.  Later on July 2, 2014, NBCU's | **Disputed**. |

Mitchell
Silberberg &
Knupp LLP

80

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| head of security for Europe, Smith, adopted Biggs' words in the above-quoted e-mail as his own, sending them in an e-mail to UCP producers. | Also, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402); improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602). <br>• UCP001037 E-mail from Stephen Smith, Head of Security, Europe, NBCU, to Mark Binke, Executive Vice President, Production, UCP (July 02, 2014 02:21 PST). Ex. 142 to Atlantic's Evid., p. 1578. <br>***Controverting evidence***: Atlantic's "fact" is contrary to the evidence:  (1) only one of the "above-quoted" two quotes from Ex. 79 is in Ex. 142; (2) the referenced quotes are by a third party, IHS, not Mr. Biggs or Mr. Smith (*see* Ex. 119 to Atlantic's Evid., p. 1449); and (3) Mr. Smith testified (Ex. 119 at 321:16-17) that he did not adopt Mr. Biggs' or IHS' words, but that "I've put in information that I believe has been taken from the HIS report, one -- in Exhibit 135." |
| 145.   Smith shared the above information regarding the risks of a broader Gaza war with the production team because he believed it was | **Disputed**. <br>Also, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402); improper lay opinion (Fed. R. Evid. 701), |

81

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| information that needed to be shared. | lacks foundation (Fed. R. Evid. 602). <br><br> • Smith Depo., at p. 320-22. Ex. 119 to Atlantic's Evid., p. 1450-51. <br><br> • UCP001037 E-mail from Stephen Smith, Head of Security, Europe, NBCU, to Mark Binke, Executive Vice President, Production, UCP (July 02, 2014 02:21 PST). Ex. 142 to Atlantic's Evid., p. 1578. <br><br> ***Controverting evidence***: *See* controverting evidence and explanation above in response to ¶¶ 143, 144. |
| 146.   During the summer of 2014, Israel was carrying out offensive strikes against Hamas in Gaza, and Hamas took offensive action against Israel, and there was a continuing escalation of that activity. | **Disputed** because of mischaracterization of testimony.  Undisputed that during the summer of 2014, Israel's Operation Protective Edge was targeted specifically at Hamas in Gaza, and that Hamas was indiscriminately launching rockets into Israel. <br><br> Irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the Dig production. <br><br> Also no personal knowledge (Fed. R. Evid. 602), improper lay opinion (Fed. R. Evid. 701). |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | • Smith Depo., at p. 215-19. Ex. 119 to Atlantic's Evid., p. 1426-27. ***Controverting evidence***: What Mr. Smith testified to is that Israel and Palestine and/or Gaza "took offensive action" but that is "not [his] area of expertise." Ex. 119 to Atlantic's Evid., p. 1426 |
| 147.   There was an escalation and uptick of activity that was aimed from Gaza to Israel and out of Israel back toward Gaza during July 2014. | Undisputed. |
| 148.   Beginning in mid-June 2014, and continuing throughout July and August, Palestinians launched rockets into Israel. | **Disputed**, including as to characterization. Undisputed that Hamas indiscriminately launched rockets into Israel during June-July 2014. The sources cited by Atlantic do not support rocket launching in August 2014.<br>• Lowenstein Aff. at p. 6. Ex. 1 to Atlantic's Evid., p. 7 ¶I-L.<br>• Smith Depo., at p. 170-71, 212-13, 342-43. Ex. 119 to Atlantic's Evid., p. 1419, 1425, 1456.<br>• UCP003591-92 E-mail from Penelope Kennedy, Production Supervisor, NBCU to Randi Richmond, Vice President, |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Production, UCP (July 03, 2014 23:22 PST) ("Increase in rocket attacks on southern Israel emanating from Gaza; general increase in security and military activity…; danger facing Israel is from missile or rocket attacks, which at present are largely confined to areas in south Israel, closest to Gaza). Ex. 126 to Atlantic's Evid., p. 1503-04. <br> • UCP002149-54 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 05, 2014 03:16 PST) (Max Security report regarding rocket fire and Israel's retaliatory airstrikes). Ex. 18 to Atlantic's Evid., p. 606-11. <br> • UCP000485 E-mail from Erin Noordeloos, Director of International Security and Crisis Mgmt., NBCU, to Mark Binke, Executive Vice President, Production, UCP (July 08, 2014 09:23 PST) (noting rockets over Tel |

Mitchell Silberberg & Knupp LLP

84

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Aviv on July 8 and sirens warning of them). Ex. 127 to Atlantic's Evid., p. 1506. |
| | • UCP002181-2188 Israel Dig Update, Security in Confidence: NBCU Int'l. Security Briefing (NBCU, New York, N.Y.) July 01, 2014 (discussing rocket attacks and retaliatory airstrikes). Ex. 19 to Atlantic's Evid., p. 613-20. |
| | • UCP002683-2684 E-mail from Country Risk Forecast and Travel Security Online to Stephen Smith, Head of Security, Europe, NBCU (July 09, 2014, 05:16 PST) (Raising security risk rating for Israel from low to medium; deployment of long-range rockets against cities is main factor behind increased rating). Ex. 20 to Atlantic's Evid., p. 622-23. |
| | • UCP002468-2470 E-mail from Chris Biggs, Security & Intelligence Analyst, International Security, NBCU, to Erin Noordeloos, Director of International Security |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | and Crisis Mgmt., NBCU, and to Stephen Smith, Head of Security, Europe, NBCU (July 10, 2014 02:40 PST) (noting increase rocket attacks from Palestine seemed to be an attempt to draw Israel into a ground invasion into Gaza). Ex. 128 to Atlantic's Evid., p. 1508-10.<br>• UCP003798-3804 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 10, 2014 07:32 PST) (noting dozens of rockets fired into Israel from Palestine and retaliatory airstrikes by the Israeli Air Force). Ex. 21 to Atlantic's Evid., p. 625-31.<br>• UCP002288-2292 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 11, 2014 02:06 PST) ("548 rockets have been fired into Israel since start of Operations Protective Edge; 118 have been intercepted by iron Dome"). Ex. 22 to Atlantic's Evid., p. 633-37. |

Mitchell
Silberberg &
Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | • UCP002514-2517 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 12, 2014 03:33 PST) (referencing a "barrage of rockets" and retaliatory airstrikes). Ex. 23 to Atlantic's Evid., p. 639-41.<br><br>• UCP002712-2716 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, NBCU (July 14, 2014 12:30 PST) (referencing missile attacks). Ex. 24 to Atlantic's Evid., p. 644-48.<br><br>• UCP002809-2812 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 15, 2014 12:39 PST) (referencing rocket and missile fire and retaliatory strikes and possibility of a ground offensive). Ex. 25 to Atlantic's Evid., p. 650-53.<br><br>• UCP002332-2336 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 16, 2014 12:53 PST) |

Mitchell
Silberberg &
Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | (referencing rocket fire from Gaza and retaliatory strikes and increasing possibility of ground invasion by Israel). Ex. 26 to Atlantic's Evid., p. 655-59.<br>• UCP002282-2285 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 16, 2014 12:40 PST) (discussing rocket strikes from Gaza and retaliatory strikes by Israel and increasing likelihood of a "ground campaign" by Israel). Ex. 10 to Atlantic's Evid., p. 478-81.<br>• UCP000940 E-mail from Stephen Smith, Head of Security, Europe, NBCU to Mark Binke, Executive Vice President, Production, UCP (July 10, 2014 8:09). Ex. 129 to Atlantic's Evid., p. 1512.<br>***Controverting evidence***:  Levitt Decl. Ex. A (Expert Report of Dr. Levitt) p. 22-26 (Hamas' terrorist activities during the summer 2014 conflict and its indiscriminate launching of rockets into Israel) [ECF No. 61-3]. |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| 149.   In particular, the Palestinians were firing "anti-craft missiles," "long-range missiles," "rockets," and "mortars." | **Disputed**, including as to characterization. Undisputed that Hamas indiscriminately launched rockets into Israel during June-July 2014.<br><br>Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production, lacks foundation (Fed. R. Evid. 602), improper opinion (Fed. R. Evid. 701, 702, 703).<br><br>• Lowenstein Aff. at p. 7. Ex. 1 to Atlantic's Evid., p. 8 ¶R.<br><br>• UCP000664-665 *Israel Dig Update*, Security in Confidence: NBCU International Security Briefing (NBCU, New York, N.Y.), July 09, 2014 (referencing anti-aircraft missiles, long-range missiles, and rockets). Ex. 114 to Atlantic's Evid., p. 1370-71<br><br>• UCP000661 *Israel Dig Update*, Security in Confidence: NBCU International Security Briefing (NBCU, New York, N.Y.), July 09, 2014  (referencing Palestinian mortar fire). Ex. 114 to Atlantic's |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Evid., p. 1367. |
| | • UCP002507 E-mail from Chris Biggs, Security & Intelligence Analyst, NBCU International, to Stephen Smith, Head of Security, Europe, NBCU (July 11, 2014 03:58 PST) ("Two IDF soldiers were injured by a mortar round fired by Gaza militants …"). Ex. 27 to Atlantic's Evid., p. 661. |
| | • UCP002710 E-mail from Stephen Smith, Head of Security, Europe, NBCU to Randi Richmond, Vice President, Production, UCP (July 08, 2014 12:41 PST) ("Israeli government reportedly instructed the IDF to steadily intensify attacks in the Gaza Strip to counter rocket and mortar fire"). Ex. 130 to Atlantic's Evid., p. 1514. |
| | *Controverting evidence*: Levitt Decl. Ex. A (Expert Report of Dr. Levitt) p. 22-26 (Hamas' indiscriminate launching of rockets: "Hamas admittedly launched rocket and mortar barrages towards populated areas, though the group often |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | defended its actions by claiming to have been targeting Israeli military forces. Nevertheless, most of the projectiles fired by Hamas were rockets or mortars that lacked guidance systems and thus could not have been directed at specific military objectives. All the rockets used by Hamas were unguided projectiles, and not even well-trained militants have the accuracy to hit a specific target with mortar rounds.") [ECF No. 61-3]. |
| 150.   In response to the Palestinians' launching of rockets, Israel deployed its Air Force to retaliate with airstrikes on a regular basis that persisted until the war ended on August 26, 2014. | **Disputed**. Also, in the context of this case and policy at issue, improper legal conclusion or opinion (Fed. R. Evid. 701, 702), lacks foundation (Fed. R. Evid. 602), irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production, no personal knowledge, improper opinion (Fed. R. Evid. 701, 702, 703), hearsay (Fed. R. Evid. 801, 802), lacks foundation (Fed. R. Evid. 602). • Lowenstein Aff. at p. 8. Ex. 1 to Atlantic's Evid., p. 9 ¶T. • UCP002149-54 E-mail from Max |

Mitchell
Silberberg &
Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 05, 2014 03:16 PST) (Max Security report regarding rocket fire and Israel's retaliatory airstrikes). Ex. 18 to Atlantic's Evid., p. 606-09.<br>• U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 1 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 90.<br>• This document is self-authenticating under Rule 902(5).<br>• Human Rights Council, *Human Rights Situation in Palestine and other Occupied Arab Territories*, 18, U.N. Doc. A/HRC/29/CRP.4 (June 24, 2015). Ex. 6 to Atlantic's Evid., p. 227.<br>• This document is self-authenticating under Rule 902(5).<br>• UCP002524 E-mail from Max |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (June 15, 2014 05:03 PST). Ex. 11 to Atlantic's Evid., p. 483. <br> • UCP002337 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (June 16, 2014 11:20 PST). Ex. 12 to Atlantic's Evid., p. 490. <br> • UCP002704 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, NBCU (June 29, 2014 11:01 PST). Ex. 28 to Atlantic's Evid., p. 665. <br> • UCP002790 E-mail (and attachment thereto) from Chris Biggs, Security & Intelligence Analyst, International Security, NBCU to Stephen Smith, Head of Security, Europe, NBCU (July 01, 2014 02:12 PST). Ex. 131 to Atlantic's Evid., p. 1517. <br> ***Controverting evidence***:  Levitt Decl. Ex. A (Expert Report of Dr. Levitt) p. 23 ("In June 2014, Hamas responded to the allegations by Israeli Prime Minister |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Netanyahu that the group kidnapped Israeli teenagers by launching an onslaught of indiscriminate rocket and mortar attacks into Israel.") [ECF No. 61-3]; Coyoca Decl. ¶¶ 12, 32, 33, Ex. 28, pp. 175, 177, and Ex. 48, p. 482, and Ex. 49, p. 485 (Israel began to take affirmative action to protect its civilian citizens and to stop Hamas' attacks) [ECF No. 61-10; 61-11; 61-12]; RJN p. 2 [ECF No. 62]. |
| 151.   The Max Security Reports noted a pattern of "tit-for-tat exchanges between the Israeli military and Gaza based militants." | Undisputed that the documents speak for themselves; not as to any conclusion, etc. therefrom. Also improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802), irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. |
| 152.   By July 1, 2014, NBCU's security team no longer viewed Israel as safe, as it had just a few months earlier—it began advising no travel to Israel. | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. |
| 153.   In an e-mail dated July 2, 2014, | Undisputed that the document speaks for |

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| Smith, NBCU's head of security who was sending regular updates to the production team about the dangers stated: "The primary danger facing Israel is from missile or rocket attack." | itself; not as to any conclusion, etc. therefrom. |
| 154.   In a July 8th e-mail from Stephen Smith to Randi Richmond, Smith stated: "Summarizing the info below, there is a significant risk of an escalation as conditions for a ceasefire are unlikely to be acceptable." <br><br> "Cross-border fire between the Israeli Defense Forces (IDF) and Gaza-based militants escalated during the evening hours of July 7, as the Israeli Government reportedly instructed the IDF to steadily intensify attacks in the Gaza Strip to counter rocket and mortar fire." <br> "As a consequence of the increasing rate and range of Palestinian rocket and mortar fire, along with Israel's reported decision to intensify retaliatory airstrikes, that there is an increased threat of rocket attacks against Israel | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| towns and cities located at a greater distance from Gaza." | |
| 155.   On July 8, 2014, Israel launched Operation Protective Edge. | Undisputed. |
| 156.   On July 9, 2014, Smith sent an e-mail to the plaintiffs' representatives that contained a detailed timeline of the events of that day:<br>• Gaza death toll between 25-35, with at least 300 injured<br>• Iron Dome defense system deployed near Jerusalem, following large amounts of long range missiles fired from Gaza<br>• Public bomb shelters opened in Tel Aviv and Jerusalem<br>• Hamas claims responsibility for firing of four rockets on Jerusalem, four on Tel Aviv, twelve on Ashdod and one on Haifa<br>• Five rockets fired toward Tel Aviv, four intercepted successfully, one landed in the sea, no injuries. Rockets aimed at Ben Gurion Airport. | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. |

Mitchell Silberberg & Knupp LLP

96

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| • Rocket fired towards Jerusalem hit a residents building in Jerusalem, no injuries reported.<br>• Due to rocket attacks, U.S. Embassy in Tel Aviv to operate in minimal staffing<br>• The European hospital in Gaza has been hit by Israel fighter jets, casualties reported<br>• Rocket landed in Hadera area, city between Tel Aviv and Haifa, 60 miles from Gaza<br>• Gunmen from Hamas landed on the shore near Zikim adjacent to the Gaza border, where a kibbutz and a military base are located. Four gunmen were killed. | |
| 157.  Hamas and Israel carried out seaborne attacks against each other in July and August of 2014. | Undisputed that the documents speak for themselves; not as to any conclusion, etc. therefrom.<br>Also lacks foundation (Fed. R. Evid. 602), irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. |
| 158.  Chris Biggs of NBCU wrote the | Undisputed that the document speaks for |

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| following e-mail to Smith on July 10, 2014: "Hamas' military wing … sent a seaborne unit to attack an Israeli position in Ashkalon, southern Israel; and fired rockets against Tel Aviv's Ben Gurion Airport and Jerusalem," while Israel "authorized the Israeli Defense Forces (IDF) to call up to 40,000 reservists, and conducted hundreds of air raids on Gaza." | itself; not as to any conclusion, etc. therefrom. Also irrelevant (Fed. R. Evid. 402); improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| 159.   On July 10, 2014, Stephen Smith wrote in an e-mail to Mark Binke, the Executive Vice President of Production for UCP that he could no longer guarantee the safety and security of the crew. | Undisputed. |
| 160.   In an e-mail from Chris Biggs to Erin Noordeloos and Stephen Smith, Biggs stated: "Israeli ground operation in Gaza increasingly likely, risking unintended escalation involving Syria and Hizbullah." "Hamas's military wing, the Ezz Eddine al-Qassam Brigades, yesterday (8 July) sent a seaborne unit to attack | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. |

Mitchell Silberberg & Knupp LLP

REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| an Israeli position in Askhalon, southern Israel; and fire rockets against Tel Aviv's Ben Gurion Airport and against Jerusalem . . . ." "For its part, Israel on yesterday authorized the Israeli Defense Forces (IDF) to call up to 40,000 reservists, and conducted hundreds of air raids on Gaza." | |
| 161.   As of July 10, 2014, it had become clear, including to plaintiffs, that Israel was planning a ground invasion. | **Disputed**, including because of mischaracterization of evidence (the referenced documents support the fact that a ground invasion was likely or possible, not knowledge of planning). Also irrelevant (Fed. R. Evid. 402), improper opinion (Fed. R. Evid. 701) lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).\ <br>• UCP002468-70 E-mail from Chris Biggs, Security & Intelligence Analyst, NBCU International, to Erin Noordeloos, Director of International Security and Crisis Management, NBCU, and to Stephen Smith, Head of Security, Europe, NBCU (July 10, 2014 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | 02:40 PST) ("ground operation in Gaza increasingly likely"). Ex. 128 to Atlantic's Evid., p. 1508-10.<br>• UCP001851 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 11, 2014 12:26 PST) (July 11 Max Security Report quoting Netanyahu stating Israel was considering ground invasion). Ex. 32 to Atlantic's Evid., p. 686.<br>• UCP002712 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 14, 2014 12:30 PST) ("Israeli Cabinet's authorization of 42,000 reservists to be called up further suggests the possibility of a ground invasion over the coming days."). Ex. 24 to Atlantic's Evid., p. 644. |
| 162.   In an e-mail from Smith dated July 10, 2014, Smith recommended that personnel leave Israel, and stated: "We have looked at the magnitude and range, of current rocket attacks (which | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom. |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| appear to target locations to be used in forthcoming filming)." | |
| 163.   The lawyer for one of the cast members of Dig also used the word war to describe the events of 2014. | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom.<br><br>Also, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| 164.   The lawyer wrote an e-mail to several NBCU employees, stating:<br><br>"We can't imagine the production will continue in a war zone under continuing air raid sirens."<br><br>After receiving no response, he wrote:<br><br>"Not the sort of e-mails I expected to be met with silence. Can you guys please let us know what is going on? Would you send your child into a war zone?" | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom.<br><br>Also, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| 165.   The lawyer later wrote that waiting for a decision was "nerve- | Undisputed that the document speaks for itself; not as to any conclusion, etc. |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| wracking for the individuals who could literally be on the front lines;" and that "the area," referring to Israel and Palestine, "is quite literally a war zone." | therefrom. Also, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| 166.   The plaintiffs had finished filming the pilot episode of *Dig* on June 26, 2014, and were on a scheduled hiatus until July 19, 2014. | Undisputed. |
| 167.   On July 11, given the escalation of the fighting, the plaintiffs decided to temporarily postpone the production that was scheduled to resume on July 19, 2014. | **Disputed** that the production was scheduled to resume on July 19 (it was July 20), 2014 as reflected in the referenced evidence (and *see* ¶ 166 above).  Otherwise undisputed. |
| 168.   Hamas launched an unmanned aerial vehicle believed to possibly be carrying explosives at Israel on July 14, 2014. | **Disputed** including because it is unsupported by the referenced sources. Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703). <br>• Lowenstein Aff. at p. 6. Ex. 1 to Atlantic's Evid., p. 7 ¶M. <br>• Human Rights Council, *Human Rights Situation in Palestine and other Occupied Arab Territories*, |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | 18, U.N. Doc. A/HRC/29/CRP.4 (June 24, 2015). Ex. 6 to Atlantic's Evid., p. 227. |
| 169.   Between July 8 and July 17, 2014, Israel and Hamas engaged in consistent and ongoing fighting, with Hamas primarily firing rockets and missiles into Israel, and Israel responding with airstrikes by fighter jets. | **Disputed** as to characterization and vague as phrased.  Undisputed that Hamas was indiscriminately firing rockets from Gaza into Israel at the time, and the Israeli Army conducted a counter-terrorism operation in *Gaza*. Also no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703). <br>• Lowenstein Aff. at p. 6-7.  Ex. 1 to Atlantic's Evid., p. 7-8 ¶K-N. <br>• UCP000888 E-mail from Stephen Smith, Head of Security, Europe, NBCU to Randi Richmond, Vice President, Production, UCP (July 09, 2014 06:16 PST). Ex. 133 to Atlantic's Evid., p. 1532. <br>***Controverting evidence***:  *see* response to ¶¶ 149, 150 above. |
| 170.   According to the plaintiffs, because of the magnitude and range of rocket attacks, they decided to abandon filming in Israel altogether on July 16, | **Disputed**, including as to characterization and as phrased. <br>• UCP000993 E-mail from Stephen Smith, Head of Security, Europe, |

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| 2014. | NBCU, to Mark Binke, Executive Vice President, Production, UCP (July 10, 2014 07:52 PST). Ex. 138 to Atlantic's Evid., p. 1551. |
| | • UCP000940 E-mail from Stephen Smith, Head of Security, Europe, NBCU to Mark Binke, Executive Vice President, Production, UCP (July 10, 2014 8:09). Ex. 129 to Atlantic's Evid., p. 1512. |
| | • UCP001286 E-mail from Stephen Smith, Head of Security, Europe, NBCU to Mark Binke, Executive Vice President, Production, UCP (July 16, 2014 12:16). Ex. 121 to Atlantic's Evid., p. 1474. |
| | • UCP000736 E-mail from Stephen Smith, Head of Security, Europe, NBCU to Mark Binke, Executive Vice President, Production, UCP (July 17, 2014 6:47). Ex. 111 to Atlantic's Evid., p. 1285. |
| | • Plaintiffs' Supplemental Response to Interrogatory No. 25. Ex. 40 to Atlantic's Evid., p. 745-47. |
| | ***Controverting evidence***: Plaintiffs' |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Supplemental Response to Interrogatory No. 25. Ex. 40 to Atlantic's Evid., p. 745-47 ("Plaintiffs finalized their decision to move the *Dig* production out of Israel on July 16, 2014, and promptly communicated that decision to Atlantic on July 17, 2014."); First Amended Complaint ¶ 1, Ex. 14 to Atlantic's Evid., p. 500 ("For the safety of cast and crew, UCP decided initially to postpone, and subsequently move the *Dig* production out of Israel."). |
| 171.   Filming of *Dig* was completed partly in New Mexico and partly in Croatia. | Undisputed. |
| 172.   On July 17, Israel's ground forces invaded Gaza. | Undisputed, other than characterization of events as "invasion," offensive, etc., as to which the documents speak for themselves; not as to any conclusion, etc. therefrom. |
| 173.   The IDF ground invasion involved thousands of IDF troops, including infantry, armored and engineering corps, artillery and intelligence forces, combined with aerial and naval support and | **Disputed** as to characterization and as phrased, and unsupported by anything other than the Lowenstein Decl. Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| accompanied by tanks and helicopter gunships. | 702, 703), irrelevant, (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. <br>• Lowenstein Aff. at p. 7. Ex. 1 to Atlantic's Evid., p. 8 ¶O. <br>• U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 59 (2015), available at https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 148. <br>• Human Rights Council, *Human Rights Situation in Palestine and other Occupied Arab Territories*, 3, U.N. Doc. A/HRC/29/CRP.4 (June 24, 2015). Ex. 6 to Atlantic's Evid., p. 212. <br>***Controverting evidence***:  Plaintiffs' Supplemental Response to Interrogatory No. 25. Ex. 40 to Atlantic's Evid., p. 745-47 ("Plaintiffs finalized their decision to move the *Dig* production out of Israel on July 16, 2014, and promptly |

Mitchell
Silberg &
Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | communicated that decision to Atlantic on July 17, 2014."); *and see* response to ¶ 172 above re: "On July 17, Israel's ground forces invaded Gaza." |
| 174.   Early in the morning of July 18, 2014, NBCU's head of security, Stephen Smith, sent an e-mail to Mark Binke with a "quick summary of events." It stated, in part:<br><br>"Over 100 targets, including rocket launching sites and underground tunnels, were targeted throughout Gaza during the overnight hours of July 17-18 as more Israeli troops and armor advanced into Gaza. Fourteen Hamas militants were reportedly killed in Israeli attacks, while the Israel Defense Forces (IDF) sustained its first fatality after a soldier was killed by light arms fire.<br><br>Rockets meanwhile continued to be fired into southern Israeli towns within a 40 km range of the Gaza Strip since the beginning of Israel's ground | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom.<br>Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| offensive. At this time there has been no de-escalation in the conflict and the threat to personnel resulting in serious injury or loss of life remains considerable... The Israeli military said it would be calling up an additional 18,000 reservists to support ongoing operations in the Gaza Strip. The launch of Israel's ground campaign underscores the likelihood that IDF operations will continue to escalate in both scope and size over the coming hours and days. Although P.M. Natanjahu [sic] has stated that Israel's objective on the ground is to neutralize Hamas tunnels, we assess that Israel's ground campaign is likely to additionally target other militant infrastructure, especially rocket launching sites in Gaza periphery and the extensive | |

108

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| underground networks that support them.<br><br>No realistic timeframe for any reduction in hostilities can be established at present." | |
| 175.   As the fighting continued, Israel conducted more and more airstrikes and attacked with tanks and soldiers on the ground. | Undisputed that the documents speak for themselves; not as to any conclusion, etc. therefrom.<br>Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. |
| 176.   By August 1st, NBCU's security team reported that "1,460 Palestinians, mostly civilians, have died in the conflict…sixty-three Israelis, mostly soldiers, have died." | Undisputed that the document speaks for itself; not as to any conclusion, etc. therefrom.<br>Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. |
| 177.   Although there were several attempts to broker a ceasefire while Israel's Operation Protective Edge was in effect (July 8 through August 26), all | **Disputed** because the cited sources only reference the time period of July 11 through August 1, 2014.  Otherwise undisputed that the documents speak for |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| were unsuccessful and any ceasefires they could agree to were short-lived. | themselves; not as to any conclusion, etc. therefrom.<br><br>Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production.<br><br>• UCP003777 E-mail from Chris Biggs, Security & Intelligence Analyst, NBCU International to Stephen Smith, Head of Security, Europe, NBCU (Aug. 01, 2014 02:34 PST)  (E-mail referencing a brief ceasefire). Ex. 34 to Atlantic's Evid., p. 695.<br><br>• UCP002288-2292 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 11, 2014 02:06 PST) (E-mail stating "Palestinian Authority President said his efforts to mediate ceasefire had failed and an Israeli ground operation into Gaza Strip would commence soon"). Ex. 22 to Atlantic's Evid., |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | p. 633-37.<br>• UCP003612 E-mail from Stephen Smith, Head of Security, Europe, NBCU, to Mark Binke, Executive Vice President, Production, UCP (July 17, 2014 01:29 PST)  (E-mail from NBCU's head of security noting that a brief humanitarian ceasefire requested by the United Nations was in effect). Ex. 35 to Atlantic's Evid., p. 697. |
| 178.   On August 26, 2014, both sides agreed to an indefinite ceasefire, drawing the war to a close. | **Disputed**.<br>Also hearsay (Fed. R. Evid. 801, 802), not a proper subject to a judicial notice (Fed. R. Evid. 201), impermissible legal conclusion, improper opinion (Fed. R. Evid. 701, 702), irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production.<br>• U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014 1, 59 (2015), *available at* https://www.state.gov/documents/or |

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | ganization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 90, 148. |
| | • Human Rights Council, *Human Rights Situation in Palestine and other Occupied Arab Territories*, 18, U.N. Doc. A/HRC/29/CRP.4 (June 24, 2015). Ex. 6 to Atlantic's Evid., p. 227. |
| | • U.N. Office for the Coordination of Humanitarian Affairs, Fragmented Lives Humanitarian Overview 2014, 5-6 (2015), https://www.ochaopt.org/documents/annual_humanitarian_overview_2014_english_final.pdf.  Ex. 36 to Atlantic's Evid., p. 703-04. |
| | ***Controverting evidence***:  Defendant's own sources:  "cease-fire ended Operation Protective Edge" not "war."  Ex. 5 to Atlantic's Evid., p. 90, 148. |
| 179.   Israel continued Operation Protective Edge from July 8 to August 26, 2014, nearly 50 days. | Undisputed that the cited documents speak for themselves; not as to any conclusion, etc. therefrom.<br>Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* |

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | production. |
| 180.   During July 8 to August 26, 2014, Hamas and other militant groups fired 4,465 rockets and mortar shells into Israel, while the Israeli government conducted 5,242 airstrikes within Gaza and a 20-day military ground operation in Gaza. | Undisputed that the cited documents speak for themselves; not as to any conclusion, etc. therefrom. Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. |
| 181.   The 50 days of intense fighting left both Israel and Palestine ravaged— but Palestine was hit particularly hard due to Israel's access to much more high-powered weaponry (primarily fighter jets and tanks) and its possession of what is known as the Iron Dome: a missile-defense system that intercepts rockets and missiles before they land in Israel. | **Disputed**, including as to mischaracterization of evidence (the referenced documents relate to events over the period of less than 14 days). Also hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602), irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production. <br>• UCP002054 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 20, 2014 01:43 PST). Ex. 37 to Atlantic's Evid., p. 724. <br>• UCP002136 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | NBCU (July 21, 2014 07:00 PST). Ex. 38 to Atlantic's Evid., p. 730. |
| 182.   Palestinian fatalities totaled approximately 2,220, at least half of whom were civilians. | **Disputed**, including as to mischaracterization of evidence (neither of the cited documents support the facts as stated).  Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production.<br>•   U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 1 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 90.<br>•   Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 9 (2015). Ex. 4 to Atlantic's Evid., p. 52. |
| 183.   Approximately 11,000 Palestinians were wounded. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.<br>Also irrelevant (Fed. R. Evid. 402, 403) to |

Mitchell
Silberberg &
Knupp LLP

114

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | the extent Atlantic relies on facts after Universal decided to move the *Dig* production.<br><br>• U.N. Office for the Coordination of Humanitarian Affairs, Fragmented Lives Humanitarian Overview 2014, 5-6 (2015), https://www.ochaopt.org/documents/annual_humanitarian_overview_2014_english_final.pdf.  Ex. 36 to Atlantic's Evid., p. 703-04. |
| 184.   The Israeli Defense Force lost 67 soldiers, and 6 Israeli citizens and one citizen of Thailand were killed. | Undisputed that the cited documents speak for themselves; not as to any conclusion, etc. therefrom.<br>Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production.<br><br>• U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 1 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 90. |

Mitchell
Silberberg &
Knupp LLP

115

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
| --- | --- |
| | • Jim Zanotti, Cong. Research Serv., RL34074, The Palestinians: Background and U.S. Relations 9 (2015) (listing slightly different numbers of Israeli deaths—71 as opposed to 74). Ex. 4 to Atlantic's Evid., p. 52. |
| 185. Hostilities during Operation Protective Edge internally displaced approximately 520,000 persons in Gaza, and approximately 10,000 Israelis. | Undisputed that the cited documents speak for themselves; not as to any conclusion, etc. therefrom.<br><br>Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production.<br><br>• U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 1, 96 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 90, 185.<br><br>• Human Rights Council, *Human Rights Situation in Palestine and other Occupied Arab Territories*, 18, U.N. Doc. A/HRC/29/CRP.4 |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | (June 24, 2015). Ex. 6 to Atlantic's Evid., p. 227.<br>• U.N. Office for the Coordination of Humanitarian Affairs, Fragmented Lives Humanitarian Overview 2014, 10 (2015), https://www.ochaopt.org/documents/annual_humanitarian_overview_2014_english_final.pdf. Ex. 36 to Atlantic's Evid., p. 708. |
| 186.   The damage to infrastructure was also severe during the 50 days of fighting. During Operation Protective Edge, Israeli armed forces destroyed electrical, water, and other public infrastructure. | Undisputed that the cited documents speak for themselves; not as to any conclusion, etc. therefrom.<br>Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production.<br>• U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 99 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 188.<br>• Human Rights Council, *Human* |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | *Rights Situation in Palestine and other Occupied Arab Territories*, 18, U.N. Doc. A/HRC/29/CRP.4 (June 24, 2015). Ex. 6 to Atlantic's Evid., p. 227. |
| 187.   Estimates of the cost to repair the damage to infrastructure ranged from 15.6 billion to as high as 31.2 billion Israeli new shekels ($4-$8 billion). | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.<br><br>Also irrelevant (Fed. R. Evid. 402, 403) to the extent Atlantic relies on facts after Universal decided to move the *Dig* production.<br><br>• U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, Country Report on Human Rights Practices for 2014, 99 (2015), *available at* https://www.state.gov/documents/organization/236814.pdf. Ex. 5 to Atlantic's Evid., p. 188. |
| 188.   In late 2009, Aon/Albert G. Ruben Insurance Services, Inc. ("Aon"), the purported leading global provider of risk management, insurance and reinsurance services, contacted Atlantic to see if it was interested in | **Disputed** as to characterization of evidence (which states, among other things, "We [Aon] have already approached Chubb, One Beacon, Fireman's Fund, Houston Casualty & Berkley"), otherwise undisputed that the |

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| underwriting many of NBCU's risks. | cited document speaks for itself; not as to any conclusion, etc. therefrom.<br><br>• AONNBCU000916 E-mail from Susan Weiss, Vice President, AON/Albert G. Ruben Insurance Services, Inc., to Kurt Ford, Senior Vice President, Production Services, NBCU (Nov. 24, 2009 20:00 PST). Ex. 42 to Atlantic's Evid., p. 761. |
| 189.   AON touts itself as "the leading global provider of risk management, insurance and reinsurance brokerage." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization. |
| 190.   The "starting point" for the terms of the policy was a manuscripted policy prepared by Aon and submitted to Atlantic for consideration by AON, which had been retained to represent NBCU and the plaintiffs in obtaining a new insurance policy. | **Disputed** as to characterization.<br><br>• AONNBCU000916 E-mail from Susan Weiss, Vice President, AON/Albert G. Ruben Insurance Services, Inc., to Kurt Ford, Senior Vice President, Production Services, NBCU (Nov. 24, 2009 20:00 PST). Ex. 42 to Atlantic's Evid., p. 761.<br><br>***Controverting evidence***: Ex. 42 to Atlantic's Evid., p. 761 (Aon was representing NBCU and its subsidiaries, not necessarily "the plaintiffs" |

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | specifically); *and see* Universal's Additional Material Facts re: Atlantic's Motion for Summary Judgment [ECF No. 81] ¶¶ 157-172 (the war exclusions in the "starting point" form are standard per the insurance industry custom and practice). |
| 191.  The Plaintiffs had to actually "declare" or "add" Dig to the policy, which they did in December 2013. | Undisputed that each NBCUniversal or UCP television show is added as an "Insured Production" on an individual basis, and that on December 12, 2013, and again on January 14, 2014, Atlantic accepted and confirmed coverage for *Dig* as an Insured Production under the Policy. *See* SUF ¶¶ 14, 16, 26. |
| 192.  Andrea Garber, who was hired by NBCUniversal in June 2014 to serve in its risk management department, was the Aon employee who was involved in declaring Dig to the Policy. | Undisputed that Ms. Garber submitted a form to Atlantic and requested that it declare *Dig* to the Policy.  The cited testimony does not support the rest of this "fact," including to the extent it implies that Ms. Garber was the only Aon employee involved in declaring *Dig* to the Policy.<br>•   Garber Depo., at p. 121.  Ex. 147 to Atlantic's Evid., p. 1613. |
| 193.  Ms. Garber knew that Israel was a "unique" location, based upon what | Undisputed that the deposition testimony speaks for itself; not as to any conclusion, |

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| she had read in the newspapers, and realize that there could be random violence, such as at marketplaces and cafes. | etc. therefrom. |
| 194.   Ms. Garber, only had a "passing knowledge" of the Middle East from the limited information she had learned from the news, and she had not been in touch with plaintiffs' security team. | **Disputed**, mischaracterizes the evidence. Irrelevant (Fed. R. Evid. 402, 403). <br>• Garber Depo., at p. 125. Ex. 147 to Atlantic's Evid., p. 1616. <br>***Controverting evidence:*** Ms. Garber testified:  "I don't study the Middle East. So I would have had a passing knowledge based on hearing the news that there were issues in Israel and that there was an issue with the Palestinian potential for a state …"  Garber Depo., at p. 125, Ex. 147 to Atlantic's Evid., p. 1616. <br>*See also* Garber Decl., Ex. 6, p. 68 [ECF 61-8]:  Ms. Garber wrote to Bernadette Milinovic of Atlantic, "[t]he NBCU Security team is already involved in the prepping of this project…". |
| 195.   Ms. Garber was not even aware of the occasional rocket fire into Israel, and instead, thought the risk was "more on the street issues" from random acts of violence. | **Disputed**, mischaracterizes the testimony. Irrelevant (Fed. R. Evid. 402, 403). <br>• Garber Depo., at p. 126-27. Ex. 147 to Atlantic's Evid., p. 1617-1618. <br>***Controverting evidence:*** Ms. Garber |

Mitchell Silberberg & Knupp LLP

REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

| **ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT:** | **SUPPORTING EVIDENCE:** |
|---|---|
|  | testified that she "was not acutely aware that there was missile fire." |
| 196.   Ms. Garber made no effort to discuss the possible deletion of the war exclusions from the Policy, or adding additional insurance. | **Disputed**, mischaracterizes the testimony. <br> • Garber Depo., at p. 134, 371-372. Ex. 147 to Atlantic's Evid., p. 1619, 1622-1623. <br> ***Controverting evidence***:  Ms. Garber's testimony was that she discussed with Peter Williams of Atlantic whether any additional coverage was needed, and "he just said well, maybe we might have to look at the extra expense coverage and maybe increase the deductible or something along those lines," and "I don't recall him saying anything about changing the terms of the coverage."  Garber Depo., at p. 133, 134, Ex. 147 to Atlantic's Evid., p. 1619. <br> • Ms. Garber's other testimony cited by Atlantic does not support this fact, as it discusses whether the issue of additional insurance was raised at the time of a meeting after Atlantic had denied the *Dig* claim. Garber Depo., at p. 134, 371-372. Ex. 147 to Atlantic's Evid., p. 1619, |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | 1622-1623.<br><br>• When Ms. Garber applied to have *Dig* added as an Insured Production, she specifically raised with Atlantic the issue of whether an additional premium or coverage terms were needed, and Wanda Phillips of Atlantic advised that Atlantic would not be imposing any additional premium or additional coverage terms. Garber Decl. ¶ 10, Exs. 6, 7, 8. |
| 197.   After the coverage issue arose, Andrea Garber was asked by representatives of plaintiffs whether she had discussed the war exclusions and that there was a call in which '[e]verything got rehashed again back to when we first declared the production and why additional insurance was not purchased." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  Mischaracterizes the evidence: the cited email does not mention the war exclusions.<br><br>• UCP000367 E-mail from Susan Weiss to Andrea Garber (July 17, 2014 18:40 PST). Ex. 149 to Atlantic's Evid., p. 1644-1645. |
| 198.   Ms. Garber denied in her deposition that she was later criticized for not obtaining additional insurance, she was later asked about it, but admitted she was asked about it. | Incomprehensible as phrased.  Ms. Garber testified: "[w]hen the question was asked, we had a very reasonable answer.  I didn't feel criticized when the question was asked why we didn't purchase additional |

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | insurance."  Garber Depo., at p. 372.  Ex. 147 to Atlantic's Evid., p. 1623. |
| 199.   Garber had no discussions with Atlantic concerning the war exclusions in the Policy until the Dig claim was submitted. | Undisputed that the testimony speaks for itself.  Irrelevant (Fed. R. Evid. 402, 403). <br>• Garber Depo., at p. 73-74. Ex. 147 to Atlantic's Evid., p. 1610-1611. |
| 200.   Susan Weiss, a representative of NBCU's insurance broker (Aon) who was involved in negotiations of the policy, testified that she recalled no discussions with Atlantic about the war exclusions before the Dig claim arose. | Undisputed that the testimony speaks for itself.  Irrelevant (Fed. R. Evid. 402, 403). <br>• Deposition of Susan Weiss ("Weiss Depo."), at p. 31-32. Ex. 148 to Atlantic's Evid., p. 1634-1635. |
| 201.   Following extensive negotiations concerning various terms of the Policy, Atlantic agreed to issue the Policy to NBCU in 2010. | Undisputed that "The January 1, 2010 policy was issued after extensive negotiations" based on other evidence (*see* Universal's SUF ¶ 3 [ECF No. 63]), but the source cited by Atlantic does not provide support for its statement. <br>• First Amended Compl. ¶ 17. Ex. 14 to Atlantic's Evid., p. 509-10. |
| 202.   The issued policy was the result of "extensive negotiations" between Aon and Atlantic. | Undisputed (the January 1, 2010 policy). |
| 203.   There were no negotiations over the war exclusions, and thus they resulted from the form submitted by | **Disputed**. <br>• Garber Depo., at p. 73-74.  Ex. 147 to Atlantic's Evid., p. 1610-1611. |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| Aon. | •   Weiss Depo., at p. 31-32. Ex. 148 to Atlantic's Evid., p. 1634-1635.<br><br>***Controverting evidence***:  Declaration of George Walden, ¶¶ 9-27, Exs. 1-5 [ECF 77, 77-1, 77-2].  *See also* Universal's Statement of Genuine Issues and Additional Material Facts in Opposition to Atlantic's MSJ, ¶¶ 157-175 [ECF No. 81]. |
| 204.   Susan Weiss stated that the Policy "was a form that was created for a specific client addressing a specific client's needs." | Misleading and incomplete.<br><br>•   Weiss Depo., at p. 39-40. Ex. 148 to Atlantic's Evid., p. 1636-1637.<br><br>***Controverting Evidence:***  Ms. Weiss also testified that the policy "was a form that was created as a result of significant negotiations between NBCUniversal and Atlantic."  Weiss Depo., at p. 39. Ex. 148 to Atlantic's Evid., p. 1636.<br><br>•   The "war exclusions" in the policy originated from standard industry exclusions, and to the extent they differ from the standard industry exclusions, Atlantic introduced the differences.  *See* Universal's Statement of Genuine Issues and Additional Material Facts in Opposition to Atlantic's MSJ, ¶¶ |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | 157-175 [ECF No. 81]. |
| 205.   Susan Weiss has admitted that the Policy is the property of Aon and NBCU and should not be *[sic]* sued by Atlantic as it is proprietary to Aon and NBCU. | **Disputed** as to characterization of testimony.  Irrelevant (Fed. R. Evid. 402, 403).<br>•     Weiss Depo., at p. 40. Ex. 148 to Atlantic's Evid., p. 1637.<br>***Controverting Evidence:***  Ms. Weiss testified that she had written in a letter that the policy was "property of Aon" but explained that this is "common language that we might say…because it's a negotiation that took place on behalf of our client."  Weiss Depo., at p. 40. Ex. 148 to Atlantic's Evid., p. 1637.<br>•     The "war exclusions" in the policy originated from standard industry exclusions, and to the extent they differ from the standard industry exclusions, Atlantic introduced the differences.  *See* Universal's Statement of Genuine Issues and Additional Material Facts in Opposition to Atlantic's MSJ, ¶¶ 157-175 [ECF No. 81]. |
| 206.   The parties continued to renew coverage after that first policy. | Undisputed (the policy at issue was a renewal of policies which NBCUniversal |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | obtained from Atlantic since Policy No. MP00163-00 (effective from January 1, 2010, to January 1, 2011)). |
| 207.   The Policy currently at issue in this case is Policy No. MP00163-04, which was effective from January 1, 2014 through June 30, 2015. | Undisputed. |
| 208.   The relevant insuring agreement in the Policy states: "We agree to pay you such loss (as defined in Paragraph VII) not including loss of earnings or profit, as you sustain by reason of such extra expense you necessarily incur as a result of the interruption, postponement, cancellation, relocation, curtailment or abandonment of an Insured Production due to the following: 1.      The loss must be a direct result of an unexpected, sudden or accidental occurrence entirely beyond your control to include: … (g) Imminent peril, defined as certain, immediate and impending danger of such probability and severity to persons | Undisputed. |

127

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| or property that it would be unreasonable or unconscionable to ignore." | |
| 209.   The Policy also includes exclusions "applicable to all sections of this policy." The exclusions relevant here are: "This policy does not insure against loss or damage caused directly or indirectly by: (1) War, including undeclared or civil war; or (2)Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss; or | **Disputed**.  The policy does not contain "; or" at the end of part (3).  Rather, part (3) ends with a period.  Further, part (4) ends with a semicolon, not a period, leading to Exclusion 5 which relates to Exclusion 4, as follows: "This policy does not insure against loss or damage caused directly or indirectly by: (1) War, including undeclared or civil war; or (2)Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| (4) Any weapon of war including atomic fission or radioactive force, whether in time of peace or war[.]" | loss. (4) Any weapon of war including atomic fission or radioactive force, whether in time of peace or war; (5) Nuclear reaction or radiation, or radioactive contamination from any other cause. But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the direct loss or damage caused by that fire if the fire would be covered under this policy." <br><br>• Atlantic Policy No. MP00163-04 at p. 6 of 7. Ex. 44 to Atlantic's Evid., p. 778. |
| 210.  Atlantic paid Plaintiffs over $2,032,875 in "imminent peril" losses it incurred from the filming of various television shows affected by superstorm Sandy in 2012. | **Disputed,** mischaracterizes the evidence. Irrelevant (Fed. R. Evid. 402). <br><br>• Declaration of Aaron Stone, ¶ 4, attached as Ex. 156 to Atlantic's Evid. at p. 1724. <br><br>***Controverting evidence:*** Atlantic's purported evidence states "Atlantic paid to *NBCU…*" (emphasis added). |
| 211.   As soon as it became clear that NBCU was considering moving the filming of *Dig* out of Israel, there was a flurry of e-mails over whether there | Undisputed that the cited documents speak for themselves; not as to Atlantic's characterization or any conclusion, etc. therefrom. |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| would be insurance coverage for the move. | |
| 212.   NBCU employees consulted Malika Adams, an employee of Comcast, which now owns NBCU, for her opinion on whether coverage would apply. Ms. Adams wrote that NBCU would "have to be cautious because there is a war exclusion on the policy." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom. Also irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602). <br>• UCP000870 E-mail from Malika Adams, CPCU, Supervisor, Risk Management, Comcast Corporation, to Kurt Ford, Senior Vice President, Production Services, NBCU (July 03, 2014 10:58 PST). Ex. 140 to Atlantic's Evid., p. 1560. |
| 213.   In another follow up e-mail on the same issue, Ms. Adams wrote again to Randi Richmond, an employee of the Plaintiffs in the case: "[W]e may have some recourse but even that I would say with caution since there is a war exclusion on the policy that may come into play." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom. Also irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602). <br>• UCP000422 E-mail from Malika Adams, CPCU, Supervisor, Risk Management, Comcast Corporated, |

Mitchell Silberberg & Knupp LLP

REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | to Randi Richmond, Vice President, Production, UCP (July 07, 2014 20:11 PST). Ex. 141 to Atlantic's Evid., p. 1569. |
| 214.   NBCU's own employee, Andrea Garber, wrote an e-mail noting that the exclusion for acts of war was "broad." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom. Also irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602). <br>• UCP000442 E-mail from Andrea Garber, Senior Director, Risk Management, to Mark Binke, Executive Vice President, Production, UCP and Randi Richmond, Vice President, Production, UCP (July 14, 2014 10:03 PST). Ex. 113 to Atlantic's Evid., p. 1361. |
| 215.   The plaintiffs submitted a claim for coverage of "extra expenses" in moving the production of *Dig* out of Israel on July 15, 2014 | Undisputed that:  "On July 15, 2014, Aon submitted to Atlantic a formal notice of the *Dig* claim for the extra expenses incurred in connection with the delay and subsequent relocation of the production [], on behalf of NBCUniversal and UCP." |

Mitchell
Silberberg &
Knupp LLP

131

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Universal's SUF ¶ 49 [ECF No. 63].<br>• First Amended Compl. at ¶ 29. Ex. 14 to Atlantic's Evid., p. 514. |
| 216.   Atlantic did state in its letter denying coverage that it believed that Plaintiffs were in imminent peril and that the issue was whether the war exclusion applied. | Undisputed that the cited document speaks for itself and that it stated, among other things:  "The question now is not whether the loss falls within the insuring clause but whether the war exclusion" 1 (war) or exclusion 2 (warlike action) applied. |
| 217.   In 2015, NBCU began shopping around for a new carrier, and Aon, on its behalf, submitted the actual Policy to other insurers, explaining: "It is a manuscripted policy that is the property of Aon . . . . They are looking to keep this same form at renewal." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom.  *See also* response to ¶ 190 above. |
| 218.   The policy that Susan Weiss of Aon sent to other insurers was marked in bold on each and every page as follows: CONFIDENTIAL PROPERTY OF AON." | Undisputed as to the policy sent to Allianz based on the cited sources; not as to Atlantic's characterization or any conclusion, etc. therefrom.  *See also* response to ¶ 190 above.<br>• E-mail (and attachment thereto) from Susan Weiss, Vice President, AON/Albert G. Ruben Insurance Services, Inc., to Wendy Diaz, Allianz Global Risk U.S. Insurance |

Mitchell
Silberberg &
Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Company (Mar. 23, 2015 16:39 PST). Ex. 112 to Atlantic's Evid., p. 1287-1359. |
| 219.   In response to an interrogatory that asked the Plaintiffs to explain why they contended their loss did not result from "weapons of war," they stated that the loss was not caused by the weapons of war but instead "by the atmosphere of terror created by Hamas' random and indiscriminate firing of mortars and rockets and the potential threat of other attacks which could be used by Hamas, such as suicide bombers." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom.  *See also* Universal's MSJ, pp. 22-25 [ECF No. 61-1] and Universal's Opposition to Atlantic's MSJ pp. 19-21 [ECF No. 80]. |
| 220.   The populace at large around the world, including news outlets, politicians, and world leaders, referred to the fighting between Israel and Hamas as a "war." For example, NBC News titled a news article *Gaza cease-fire holds between Hamas and Israel after 50-day war*. | **Disputed**. The "populace at large" reference is unsupported and, in the context of this case and policy at issue, this purported fact is irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br>• ATL005260 *Gaza cease-fire holds between Hamas and Israel after 50-day war*, NBC News, Aug. 27, |

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | 2014, http://www.nbcnews.com/storyline/ middle-east-unrest/gaza-cease-fire-holds-between-hamas-israel-after-50-day-n189821. Ex. 45 to Atlantic's Evid., p. 824. *Controverting evidence*: <br>• Declaration of Ty R. Sagalow ("Sagalow Decl."), Ex. D (Expert Report of Sagalow), ¶¶ 83-90 (detailing insurance industry custom and practice, *e.g.*, ¶ 89: "even though the same word (e.g., 'war') may have another colloquial meaning, when the insurer is considering coverage pursuant to the terms of an insurance policy, the custom and practice is for the insurer to use the insurance industry meaning of such words used in the policy, not their colloquial meaning or the broad use such words may have in the press or by politicians.") [ECF No. 61-6]. <br>• Rebuttal Declaration of Ty R. Sagalow ("Rebuttal Sagalow |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Decl."), Ex. A (Rebuttal Expert Report of Sagalow), ¶¶ 58-90 (detailing insurance industry custom and practice interpretation of the policies, as opposed to colloquial or "ordinary" meaning of words) [ECF No. 77-5].<br><br>• Rebuttal Declaration of Dr. Matthew Levitt ("Rebuttal Dr. Levitt Decl."), Ex. D (Rebuttal Expert Report of Dr. Levitt), ¶ 15 (American or Israeli official authorities do not use the term "war" to refer to the Hamas/Israel conflict in 2014.  Moreover, the New York Times chronology of the conflict counts it as lasting 29 days, and does not call it a "50 day war.") [ECF No. 77-3].<br><br>• There is a legion of news reports that do not describe the Hamas/Israel conflict in the summer 2014 as a "50 day war" or any "war."  *E.g., IDF announces major operation in Gaza as rocket fire escalates in south*, The Jerusalem |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Post, July 7, 2014 ("Barrage of Gaza rockets fired at southern Israel as IDF prepares for escalation; Iron Dome intercepts 12 projectiles; sirens sound in Ashdod, Ashkelon, Beit Shemesh and Rehovot."), Declaration of Lucia Coyoca in support of Opposition to Defendant's Motion for Summary Judgment ("Opp. Coyoca Decl."), Ex. 76, Request for Judicial Notice ("RJN") in support of Opposition to Defendant's Motion for Summary Judgment, Ex. 76; *Gaza's marvels of engineering; Hamas gunmen can live in tunnels for weeks*, The Financial Post, August 9, 2014 (Hamas' tunnels "lead 'from mosque to mosque; mosque to house; house to hospital; kindergarten to house ... Lest there be any doubt about the tunnels' purpose, the IDF found weapons, army uniforms and motorcycles, along with chloroform and handcuffs - a macabre 'kidnapping |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
|  | kit.'"), Opp. Coyoca Decl. Ex. 75, RJN, Ex. 75; *Take Away Their Guns -- Then We'll Talk*, Foreign Policy, August 28, 2014 ("For more than 50 days this summer, Israeli population centers were terrorized by rockets, mortars, cross-border infiltration into Israel by sea, and repeated attempts by Hamas and the other terrorist factions to murder and kidnap Israelis through the use of tunnels."), Opp. Coyoca Decl. Ex. 74; RJN, Ex. 74.<br><br>• *Holiday Inns Inc. v. Aetna Ins. Co.*, 571 F. Supp. 1460, 1464 (S.D.N.Y. 1983) ("In commercial litigation arising out of insurance policies, words and phrases are construed 'for insurance purposes' – a context quite different from those of politics or journalism."). |
| 221.   NBC News titled an article *How technology is intensifying Gaza War between Israel and Hamas*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. |

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| | • ATL00004726-004729 Alastair Jamieson, *How technology is intensifying Gaza War between Israel and Hamas*, NBC News, July 30, 2014, http://www.nbcnews.com/storyline/ middle-east-unrest/how-technology-intensifying-gaza-war-between-israel-hamas-n158536. Ex. 46 to Atlantic's Evid., p. 826-29. |
| | ***Controverting evidence***: |
| | • Sagalow Decl., Ex. D (Expert Report of Sagalow), ¶¶ 83-90 (detailing insurance industry custom and practice, *e.g.*, ¶ 89: "even though the same word (e.g., 'war') may have another colloquial meaning, when the insurer is considering coverage pursuant to the terms of an insurance policy, the custom and practice is for the insurer to use the insurance industry meaning of such words used in the |

138

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | policy, not their colloquial meaning or the broad use such words may have in the press or by politicians.") [ECF No. 61-6]. <br><br> • Rebuttal Sagalow Decl., Ex. A (Rebuttal Expert Report of Sagalow), ¶¶ 58-90 (detailing insurance industry custom and practice interpretation of the policies, as opposed to colloquial or "ordinary" meaning of words) [ECF No. 77-5]. <br><br> • Rebuttal Dr. Levitt Decl., Ex. D (Rebuttal Expert Report of Dr. Levitt), ¶ 15 (American or Israeli official authorities do not use the term "war" to refer to the Hamas/Israel conflict in 2014. Moreover, the New York Times chronology of the conflict counts it as lasting 29 days, and does not call it a "50 day war.") [ECF No. 77-3]. <br><br> • There is a legion of news reports that do not describe the Hamas/Israel conflict in the summer 2014 as a "50 day war" or any |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | "war."  *E.g.*, *IDF announces major operation in Gaza as rocket fire escalates in south*, The Jerusalem Post, July 7, 2014 ("Barrage of Gaza rockets fired at southern Israel as IDF prepares for escalation; Iron Dome intercepts 12 projectiles; sirens sound in Ashdod, Ashkelon, Beit Shemesh and Rehovot."), Opp. Coyoca Decl., Ex. 76, RJN, Ex. 76; *Gaza's marvels of engineering; Hamas gunmen can live in tunnels for weeks*, The Financial Post, August 9, 2014 (Hamas' tunnels "lead 'from mosque to mosque; mosque to house; house to hospital; kindergarten to house ... Lest there be any doubt about the tunnels' purpose, the IDF found weapons, army uniforms and motorcycles, along with chloroform and handcuffs - a macabre 'kidnapping kit.'"), Opp. Coyoca Decl. Ex. 75, RJN, Ex. 75; *Take Away Their Guns -- Then We'll Talk*, Foreign Policy, August 28, 2014 ("For more |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | than 50 days this summer, Israeli population centers were terrorized by rockets, mortars, cross-border infiltration into Israel by sea, and repeated attempts by Hamas and the other terrorist factions to murder and kidnap Israelis through the use of tunnels."), Opp. Coyoca Decl. Ex. 74; RJN, Ex. 74.<br>• *Holiday Inns*, 571 F. Supp. at 1464 ("In commercial litigation arising out of insurance policies, words and phrases are construed 'for insurance purposes' – a context quite different from those of politics or journalism."). |
| 222.   NBC News titled an article *Israel and Hamas exchange missile fire as Gaza War looms*, in which it stated:<br><br>"Israelis ran for cover late on Tuesday as air-raid sirens sounded in the business capital Tel Aviv and the holy city of Jerusalem, both of which were hit in the Gaza war of November 2012." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br>• ATL004732 *Israel and Hamas exchange missile fire as Gaza War* |

Mitchell Silberberg & Knupp LLP

141

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | *looms*, NBC News, July 8, 2014, http://www.nbcnews.com/news/world/israel-hamas-exchange-missile-fire-gaza-war-looms-n151111  Ex. 47 to Atlantic's Evid., p. 831. **Controverting evidence**: *see* evidence cited in response to ¶ 221. |
| 223.   NBC News titled an article *Public support for Israel shifting amid Gaza War, Britain warns*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br>• ATL004736-004738 Cassandra Vinograd, *Public support for Israel shifting amid Gaza War, Britain warns*, NBC News, July 30, 2014, http://www.nbcnews.com/storyline/middle-east-unrest/public-support-israel-shifting-amid-gaza-war-britain-warns-n168366. Ex. 48 to Atlantic's Evid., p. 833-35. **Controverting evidence**: *see* evidence cited in response to ¶ 221. |

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| 224.   NBC News titled an article *Gaza death toll nears 1,500 as 72-hour truce with Israel begins*, in which it states:<br><br>"The death toll now surpasses the about 1,400 Palestinians killed during the Gaza war of 2008-2009." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004741 *Gaza death toll nears 1,500 as 72-hour truce with Israel begins*, NBC News, Aug. 01, 2014, http://www.nbcnews.com/storyline/ middle-east-unrest/gaza-death-toll-nears-1-500-72-hour-truce-israel-n170236. Ex. 49 to Atlantic's Evid., p. 837.<br><br>***Controverting evidence***:  *see* evidence cited in response to ¶ 221. |
| 225.   MSNBC titled an article *Scenes of war and heartbreak as Israel-Hamas conflict intensifies*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | • ATL004588-004597 Benjamin Landy & Maria Lokke, *Scenes of war and heartbreak as Israel-Hams conflict intensifies*, MSNBC, July 18, 2014, http://www.msnbc.com/msnbc/scenes-war-and-heartbreak-israel-hamas-conflict-intensifies. Ex. 50 to Atlantic's Evid., p. 839-48. ***Controverting evidence***:  *see* evidence cited in response to ¶ 221. |
| 226.   MSNBC titled an article *In Israel and Palestine, children imagine a world without war.* | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). • ATL004598-004602 Donna Stefano, *In Israel and Palestine, children imagine a world without war*, MSNBC, July 06, 2014, http://www.msnbc.com/msnbc/israel-and-palestine-children-imagine-world-without-war. Ex. 51 to |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Atlantic's Evid., p. 850-54. ***Controverting evidence***: *see* evidence cited in response to ¶ 221. |
| 227.   MSNBC and NBC News are affiliated with NBCU.  The same security personnel who provided security for *Dig*, including Smith, provided security for the NBC News bureau in Israel. | **Disputed** as to Atlantic's characterization of Mr. Smith's testimony (Mr. Smith testified that in 2014, he provided security support for, among other things, the *Dig* production and that he provided support to the NBC news bureau based in Israel and exchanged information regarding the security situation in Israel at some point), but otherwise undisputed as reflected in the testimony. <br> • Smith Depo., at p. 73-75.  Ex. 119 To Atlantic's Evid., p. 1403-04. |
| 228.   The Wall Street Journal titled an article *Israel, Hamas set out demands on Gaza*, in which it stated: <br><br> "Politically, the war offered Hamas a chance to burnish its anti-Israel credentials and bolster its flagging stature among Gazans and Muslims elsewhere in the Arab world…" | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br> • ATL005261-005267 Nicholas Casey, Joshua Mitnick & Nicholas Casey, *Israel, Hamas set out* |

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
| --- | --- |
| | *demands on Gaza*, The Wall Street Journal, Oct. 23, 2014, https://www.wsj.com/articles/israel-pulls-forces-from-gaza-as-cease-fire-begins-1407231543. Ex. 54 to Atlantic's Evid., p. 860-66. |

*Controverting evidence*:
- Sagalow Decl., Ex. D (Expert Report of Sagalow), ¶¶ 83-90 (detailing insurance industry custom and practice, *e.g.*, ¶ 89: "even though the same word (e.g., 'war') may have another colloquial meaning, when the insurer is considering coverage pursuant to the terms of an insurance policy, the custom and practice is for the insurer to use the insurance industry meaning of such words used in the policy, not their colloquial meaning or the broad use such words may have in the press or by politicians.") [ECF No. 61-6].
- Rebuttal Sagalow Decl., Ex. A (Rebuttal Expert Report of Sagalow), ¶¶ 58-90 (detailing

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | insurance industry custom and practice interpretation of the policies, as opposed to colloquial or "ordinary" meaning of words) [ECF No. 77-5]. |
| | • Rebuttal Dr. Levitt Decl., Ex. D (Rebuttal Expert Report of Dr. Levitt), ¶ 15 (American or Israeli official authorities do not use the term "war" to refer to the Hamas/Israel conflict in 2014. Moreover, the New York Times chronology of the conflict counts it as lasting 29 days, and does not call it a "50 day war.") [ECF No. 77-3]. |
| | • There is a legion of news reports that do not describe the Hamas/Israel conflict in the summer 2014 as a "50 day war" or any "war." *E.g.*, *IDF announces major operation in Gaza as rocket fire escalates in south*, The Jerusalem Post, July 7, 2014 ("Barrage of Gaza rockets fired at southern Israel as IDF prepares for escalation; Iron Dome intercepts 12 projectiles; |

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | sirens sound in Ashdod, Ashkelon, Beit Shemesh and Rehovot."), Opp. Coyoca Decl., Ex. 76, RJN, Ex. 76; *Gaza's marvels of engineering; Hamas gunmen can live in tunnels for weeks*, The Financial Post, August 9, 2014 (Hamas' tunnels "lead 'from mosque to mosque; mosque to house; house to hospital; kindergarten to house ... Lest there be any doubt about the tunnels' purpose, the IDF found weapons, army uniforms and motorcycles, along with chloroform and handcuffs - a macabre 'kidnapping kit.'"), Opp. Coyoca Decl. Ex. 75, RJN, Ex. 75; *Take Away Their Guns -- Then We'll Talk*, Foreign Policy, August 28, 2014 ("For more than 50 days this summer, Israeli population centers were terrorized by rockets, mortars, cross-border infiltration into Israel by sea, and repeated attempts by Hamas and the other terrorist factions to murder and kidnap Israelis through the use |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | of tunnels."), Opp. Coyoca Decl. Ex. 74; RJN, Ex. 74. |
| | • *Holiday Inns*, 571 F. Supp. at 1464 ("In commercial litigation arising out of insurance policies, words and phrases are construed 'for insurance purposes' – a context quite different from those of politics or journalism."). |
| 229.   The New York Times titled an article *Israel clears troops in airstrike near school in 2014 Gaza War*, which stated:<br><br>"The case was one of seven investigations into possible military misconduct during the 50-day war between Israel and Gaza's rocket firing militant groups…" | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004603-004605 Isabel Kershner, *Israel clears troops in airstrike near school in 2014 Gaza War*, N.Y. Times, Aug. 24, 2016, https://www.nytimes.com/2016/08/25/world/middleeast/israel-gaza-war.html?_r=0. Ex. 55 to Atlantic's Evid., p. 868-70.<br><br>***Controverting evidence***:  *see* evidence |

Mitchell Silberberg & Knupp LLP

149

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | cited in response to ¶ 228. |
| 230.   Time Magazine titled an article *Israel seeks to gain advantage by reversing course in Gaza*, in which the article stated:<br><br>"The war continues and there is no victor, but Israel is gradually pulling most of its troops out of the Gaza Strip in a sign that in the course of a weekend, it decided to take a completely different tack in its war with Hamas." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004771-004774 Ilene Prusher, *Israel seeks to gain advantage by reversing course in Gaza*, Time Magazine, Aug. 03, 2014, http://time.com/3076594/israel-gaza-cease-fire-hamas-netanyahu/. Ex. 56 to Atlantic's Evid., p. 872-75.<br><br>**Controverting evidence**: *see* evidence cited in response to ¶ 228. |
| 231.   The Washington Post titled an article *Here's what really happened in the Gaza war (according to the Israelis)*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | 802). |
| | • ATL004776-004779 William Booth, *Here's what really happened in the Gaza war (according to the Israelis)*, The Washington Post, Sept. 03, 2014, https://www.washingtonpost.com/news/worldviews/wp/2014/09/03/heres-what-really-happened-in-the-gaza-war-according-to-the-israelis/?utm_term=.18ba9ee8a00. Ex. 57 to Atlantic's Evid., p. 877-80. |
| | ***Controverting evidence***:  *see* evidence cited in response to ¶ 228. |
| 232.   CNN titled an article *Gaza War: The terrifying truth*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| | • ATL004606-004610 Aaron D. Miller, *Gaza war: The terrifying truth*, CNN, Aug. 03, 2014, |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | http://www.cnn.com/2014/08/01/opinion/miller-gaza-hamas-israel-cease-fire-obstacles/. Ex. 58 to Atlantic's Evid., p. 882-86. **Controverting evidence**: *see* evidence cited in response to ¶ 228. |
| 233.   U.S. News and World Report titled an article *Israel clears forces in several deadly 2014 Gaza war cases*, in which it stated: "The Israeli military on Wednesday cleared its forces of wrongdoing in three deadly incidents that took place during the 2014 Gaza war—including an airstrike that killed 15 members of a single family." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br>•   ATL004611-004630 Josef Federman, *Israel clears forces in several deadly 2014 Gaza war cases*, U.S. News and World Report, Associated Press, Aug. 24, 2016, https://www.usnews.com/news/world/articles/2016-08-24/israel-clears-forces-in-several-deadly-2014-gaza-war-cases. Ex. 59 to Atlantic's Evid., p. 888-907. <br>**Controverting evidence**: *see* evidence |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | cited in response to ¶ 228. |
| 234.   The Independent titled an article *Israel-Gaza conflict: 50-day war by numbers*, which stated:<br><br>"As discussions for a long-term truce between Israel and Hamas continue in Cairo, Gaza is picking up the pieces of a 50-day war that left more than 2,200 people dead." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>•   ATL004755-004758 Lizzie Dearden, *Israel-Gaza conflict: 50-day war by numbers*, The Independent, Aug. 27, 2014, http://www.independent.co.uk/news/world/middle-east/israel-gaza-conflict-50-day-war-by-numbers-9693310.html. Ex. 60 to Atlantic's Evid., p. 909-12.<br><br>***Controverting evidence***:  *see* evidence cited in response to ¶ 228. |
| 235.   The Los Angeles Times titled an article *Israel and Hamas may have committed war crimes in Gaza*, U.N. *report says*, in which it states:<br><br>"A long-awaited report by a United | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| Nations special investigative panel concluded that both Israel and the Palestinian militant group Hamas may have been guilty of war crimes during last summer's Gaza war." | Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br>• ATL004631-004634 Batsheva Sobelman, *Israel and Hamas may have committed war crimes in Gaza, U.N. report says*, The Los Angeles Times, June 22, 2015, http://www.latimes.com/world/middleeast/la-fg-un-report-gaza-war-20150622-story.html. Ex. 61 to Atlantic's Evid., p. 914-17.<br>***Controverting evidence***:  *see* evidence cited in response to ¶ 228. |
| 236.   BBC News titled an article *Israeli 2014 Gaza war actions lawful, report says*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br>• ATL004635-004647 *Israeli 2014 Gaza war actions lawful, report says*, BBC News, June 14, 2015, http://www.bbc.com/news/world-middle-east-33128955. Ex. 62 to |

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Atlantic's Evid., p. 919-31. ***Controverting evidence***: *see* evidence cited in response to ¶ 228. |
| 237.   The Haaretz News titled an article *After seven weeks of Gaza War, Hamas 1, Israel 0.* | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br>•   ATL004648-004651 Amir Oren, *After seven weeks of Gaza War, Hamas 1, Israel 0*, Haaretz News, Aug. 26, 2014, http://www.haaretz.com/israel-news/.premium-1.612437. Ex. 63 to Atlantic's Evid., p. 933-36. <br>***Controverting evidence***:  *see* evidence cited in response to ¶ 228. |
| 238.   The Atlantic titled an article *The one place where Israel and Hamas are communicating*, in which it stated: <br><br>"Even for a war that has played out in the bravado of hashtag campaigns…" | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. |

Mitchell Silberberg & Knupp LLP

155

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004748-004754 Debra Kamin, *The one place where Israel and Hamas are communicating*, The Atlantic, Aug. 05, 2014, https://www.theatlantic.com/international/archive/2014/08/the-one-place-where-israel-and-hamas-are-communicating/375589/. Ex. 64 to Atlantic's Evid., p. 938-44.<br><br>***Controverting evidence***: *see* evidence cited in response to ¶ 228. |
| 239.   USA Today titled an article *13,000 families in Gaza still displaced two years after war with Israel*, which stated:<br><br>"Their house was destroyed during the 50-day war with Israel…" | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004652-004654 Abeer Ayyoub, *13,000 families in Gaza still displaced two years after war with Israel*, USA Today, Aug. 10, 2016, |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | https://www.usatoday.com/story/news/world/2016/08/10/gaza-city-families-displaced-war-israel/88002220/. Ex. 65 to Atlantic's Evid., p. 946-48. ***Controverting evidence***: *see* evidence cited in response to ¶ 228. |
| 240.   The Chicago Tribune titled an article *Children suffer and die in Gaza. Who Notices?*, in which its states: "Even the lives of "privileged" families—those whose houses weren't damaged or destroyed in the recent war and who have some money to pay inflated prices and middlemen—are affected." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br>•   ATL004655-004657 Najla Shawa, *Children suffer and die in Gaza. Who Notices?*, The Chicago Tribune, Jan. 29, 2015, http://www.chicagotribune.com/news/opinion/commentary/ct-deaths-babies-gaza-war-palestinians-perspec-0129-20150128-story.html. Ex. 66 to Atlantic's Evid., p. 950-52. ***Controverting evidence***: *see* evidence |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | cited in response to ¶ 228. |
| 241.   The Chicago Sun Times titled an article *Decimated Hamas makes ludicrous claims*, in which it states:<br><br>"More than 2,100 Palestinians died in the 50-day war against Israel…" | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br>• ATL004658 Sarahtr, *Decimated Hamas makes ludicrous claims*, The Chicago Sun Times, Sept. 05, 2014, http://chicago.suntimes.com/politics /decimated-hamas-makes-ludicrous-claims/. Ex. 67 to Atlantic's Evid., p. 954.<br>***Controverting evidence***: *see* evidence cited in response to ¶ 228. |
| 242.   The Denver Post titled an article *Israel and Hamas reach an uneasy cease-fire in 50-day Gaza war*, in which it stated:<br><br>"Hamas declared victory, even though it has little to show for a 50-day war that killed more than 2,100 | Undisputed that the cited document speaks for itself; not as any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |

Mitchell
Silberberg &
Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| Palestinians…" | • ATL004659-004661 The Associated Press, *Israel and Hamas reach an uneasy cease-fire in 50-day Gaza war*, The Denver Post, Aug. 26, 2014, http://www.denverpost.com/2014/08/26/israel-and-hamas-reach-an-uneasy-cease-fire-in-50-day-gaza-war/. Ex. 68 to Atlantic's Evid., p. 956-58.<br><br>***Controverting evidence***:  *see* evidence cited in response to ¶ 228. |
| 243.   The Dallas Morning News titled an article *Gaza cease-fire reached after 50-day war that killed 2,200 and settled little*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004662-004665 *Gaza cease-fire reached after 50-day war that killed 2,200 and settled little*, Dallas Morning News, Aug. 2014, https://www.dallasnews.com/news/news/2014/08/26/gaza-cease-fire- |

Mitchell Silberberg & Knupp LLP

159

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | reached-after-50-day-war-that-killed-2200-and-settled-little. Ex. 69 to Atlantic's Evid., p. 960-63. **Controverting evidence**: *see* evidence cited in response to ¶ 228. |
| 244. Newsday titled an article *Israeli, Palestinian leaders air differences at United Nations*, in which it stated: "Gaza is controlled by Hamas, a Palestinian political faction that has differed sharply with the wishes of Abbas' administration of the [PA] and has, indeed, launched rockets into Israel, most notably during a 50-day war with Israel in 2014." | **Disputed**, in the context of this case and policy at issue, as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). • ATL004666-004668 Zachary R. Dowdy, *Israeli, Palestinian leaders air differences at United Nations*, Newsday, Sept. 22, 2016, http://www.newsday.com/news/world/at-un-israeli-and-palestinian-leaders-air-differences-1.12354379. Ex. 70 to Atlantic's Evid., p. 965-67. **Controverting evidence**: *see* evidence cited in response to ¶¶ 107, 108, 228. |
| 245. The Houston Chronical titled an article *Israeli house strikes killed mostly civilians*, in which it stated: "They were among at least 844 | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. |

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| Palestinians killed as a result of airstrikes on Gaza homes during Israel's summer war with the Islamic militant group, Hamas." | R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004669-004673 Fares Akram, Mohammed Daraghmeh & Karin Laub, *Israeli house strikes killed mostly civilians*, The Houston Chronicle, Feb. 13, 2015, http://www.houstonchronicle.com/news/nation-world/world/article/Israeli-house-strikes-killed-mostly-civilians-6080436.php. Ex. 71 to Atlantic's Evid., p. 969-73.<br><br>***Controverting evidence***:  *see* evidence cited in response to ¶ 228. |
| 246.   The Guardian titled an article *Gaza ceasefire: Israel and Palestinians agree to halt weeks of fighting*, in which it stated:<br><br>"The war in Gaza ended on Tuesday after Israel and the Palestinians agreed to halt fighting indefinitely…" | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802).<br><br>• ATL004674-004677 Hazem Balousha & Harriet Sherwood, |

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
|  | *Gaza ceasefire: Israel and Palestinians agree to halt weeks of fighting*, The Guardian, Aug. 27, 2014, https://www.theguardian.com/world/2014/aug/26/gaza-ceasefire-israel-palestinians-halt-fighting. Ex. 72 to Atlantic's Evid., p. 975-78. **Controverting evidence**: *see* evidence cited in response to ¶ 228. |
| 247.   The Times of India titled an article *Israel-Gaza conflict: 50-day war by numbers*, in which it stated: "As discussion for a long-term truce between Israel and Hamas continue in Cairo, Gaza is picking up the pieces of a 50-day war that left more than 2,200 people dead." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <ul><li>ATL004763-004769 Lizzie Dearden, *Israel Conflict: 50-day war by numbers*, The Times of India, Aug. 27, 2014, http://timesofindia.indiatimes.com/world/middle-east/Israel-Gaza-conflict-50-day-war-by-numbers/articleshow/41000781.cms</li></ul> |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Ex. 73 to Atlantic's Evid., p. 980-86. **Controverting evidence**: *see* evidence cited in response to ¶ 228. |
| 248.   The Sydney Morning Herald titled an article *Why Israel lost the war in Gaza*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br>• ATL004678-004679 David Rothkopf, *Why Israel lost the war in Gaza*, The Sydney Morning Herald, Aug. 11, 2014, http://www.smh.com.au/comment/why-israel-lost-the-war-in-gaza-20140808-101ruh.html. Ex. 74 to Atlantic's Evid., p. 988-89. <br>**Controverting evidence**: *see* evidence cited in response to ¶ 228. |
| 249.   The China Daily titled an article *In photos: Gaza healing from war after ceasefire*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. |

| **ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT:** | **SUPPORTING EVIDENCE:** |
|---|---|
| | R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| | •    ATL004680-004699 In photos: Gaza healing from war after ceasefire, China Daily, Aug. 28, 2014, http://www.chinadaily.com.cn/world/2014-08/28/content_18500736.htm. Ex. 75 to Atlantic's Evid., p. 991-1010. |
| | ***Controverting evidence***:  *see* evidence cited in response to ¶ 228. |
| 250.  The Daily Mail titled an article *Inside bombed-out Gaza: One week on from end of 50-day war and the true scale of devastation is revealed*. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| | •    ATL004700-004714 James Rush, *Inside bombed-out Gaza: One week on from end of 50-day war and the true scale of devastation is* |

Mitchell Silberberg & Knupp LLP

164

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | *revealed*, The Daily Mail, Sept. 02 2014, http://www.dailymail.co.uk/news/article-2740643/Inside-bombed-Gaza-One-week-end-50-day-war-true-scale-devastation-revealed.html. Ex. 76 to Atlantic's Evid., p. 1012-26. **Controverting evidence**: *see* evidence cited in response to ¶ 228. |
| 251.   Salon titled an article *74% of Gaza homes destroyed by Israel in summer 2014 war have not been rebuilt, as violent repression escalates.* | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br>•   ATL004715-004724 Ben Norton, *74% of Gaza homes destroyed by Israel in summer 2014 war have not been rebuilt, as violent repression escalates*, Salon, Feb. 09, 2016, http://www.salon.com/2016/02/09/74_of_gaza_homes_destroyed_by_israel_in_summer_2014_war_have_not_been_rebuilt_as_violent_repressi |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
|  | on_escalates/. Ex. 77 to Atlantic's Evid., p. 1028-37. **Controverting evidence**: *see* evidence cited in response to ¶ 228. |
| 252.   CBS News titled an article *Rocket fired from Gaza hits southern Israel, military says*, which stated: "Israel fought a 50-day war this summer with Hamas, the Palestinian militant group that controls Gaza." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  **Disputed** in the context of this case and policy at issue as irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br>• ATL005256-005259 *Rocket fired from Gaza hits southern Israel, military says*, CBS News, Dec. 19, 2014, http://www.cbsnews.com/news/rocket-fired-from-gaza-hits-southern-israel-military-says/. Ex. 78 to Atlantic's Evid., p. 1039-42. **Controverting evidence**: *see* evidence cited in response to ¶ 228. |
| 253.   The Max security reports that NBCU received and relied upon in deciding to leave Israel also note that in Israel, while the 2014 conflict was | **Disputed**, and mischaracterizes evidence. Also improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802), |

Mitchell
Silberberg &
Knupp LLP

166

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| underway, there were anti-war protests. | and irrelevant (Fed. R. Evid. 402, 403), particularly to the extent Atlantic relies on sources after Universal made the decision to move the *Dig* production. <br><br> • UCP002496 E-mail from Max Security Intelligence to Stephen Smith, Head of Security, Europe, NBCU (July 26, 2014 09:54 PST). Ex. 80 to Atlantic's Evid., p. 1052. <br><br> ***Controverting evidence***:  Mr. Smith testified that he relied on certain Max Security Intelligence reports as one of the sources that he used to carry out his work for NBCUniversal on Dig (Ex. 119 to Atlantic's Evid., p. 122) and that the "contents of … report[]s is neither written nor controlled by me.  I'm interested in what it's actually telling me about specific events, not their interpretation" (pp. 178-89).  *See also* response to ¶ 133 above. |
| 254.   An NBCU employee in the security department sent an e-mail on July 10, 2014, discussing Hizbullah's "war" with Israel and Syria. | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom.  The referenced document about a conflict in 1996 was largely written by a third party, IHS, and not by an NBCU employee. |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602). <br> • UCP002468 E-mail from Chris Biggs, Security & Intelligence Analyst, NBCU International, to Erin Noordeloos, Director of International Security and Crisis Management, NBCU,  and Stephen Smith, Head of Security, Europe, NBCU (July 10, 2014 02:40 PST). Ex. 128 to Atlantic's Evid., p. 1508. |
| 255.   Hizbullah (also spelled Hezbollah) is designated by the United States Government as a foreign terrorist organization. | Undisputed. |
| 256.   Former Secretary of State John Kerry described the conflicts in Gaza as "war" in three public speeches and in one television appearance. | Undisputed that the cited documents speak for themselves; not as to any conclusion, etc. therefrom. <br> Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |

Mitchell Silberberg & Knupp LLP

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Universal's evidence:<br><br>• Rebuttal Declaration of Ambassador Dennis Ross ("Rebuttal Ross Decl.") Ex. B (Rebuttal Expert Report of Amb. Ross), p. 10 ("Any short hand colloquial references by the Secretary of State to 'war' does not convert the hostilities into something different than what U.S. foreign policy already has recognized to be terrorism.") [ECF No. 77-4].<br><br>• Sagalow Decl., Ex. D (Expert Report of Sagalow), ¶¶ 83-90 (detailing insurance industry custom and practice, *e.g.*, ¶ 89: "even though the same word (e.g., 'war') may have another colloquial meaning, when the insurer is considering coverage pursuant to the terms of an insurance policy, the custom and practice is for the insurer to use the insurance industry meaning of such words used in the policy, not their colloquial meaning |

169

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | or the broad use such words may have in the press or by politicians.") [ECF No. 61-6]. |
| | • *Holiday Inns*, 571 F. Supp. at 1464 ("In commercial litigation arising out of insurance policies, words and phrases are construed 'for insurance purposes' – a context quite different from those of politics or journalism."). |
| 257.   The Australian Minister of Foreign Affairs, Julie Bishop, stated in 2014: "The actions of *militants* in Gaza, who are firing rockets indiscriminately into Israel, are inexcusable and must be condemned." (emphasis added). | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. Further, in the context of this case and policy at issue, the "militants" reference is irrelevant (Fed. R. Evid. 401, 402, 403). *Weiss v. Arab Bank, PLC*, 2007 U.S. Dist. LEXIS 94029, at *14-20 (E.D.N.Y. Dec. 21, 2007) (Hamas is a terrorist group and cannot constitute a "military force of any origin"). |
| 258.   Hillary Clinton stated in an interview quoted in *The Atlantic* dated August 10, 2014, in response to a question of whether Israel had done enough to prevent the recent deaths of | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| **ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT:** | **SUPPORTING EVIDENCE:** |
|---|---|
| children and other innocent people, that "it's impossible to know what happens in the fog of war." | 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). *See also* Universal's evidence in response to ¶ 256 above. |
| 259.   Minnesota Congressman Keith Ellison was quoted as stating, in regard to the 50-Day War, that "There is no military solution to this conflict. The status quo brings only continued pain, suffering and war." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). *See also* Universal's evidence in response to ¶ 256 above. |
| 260.   In discussing July 2014 airstrikes on Gaza by Israel, Nabil Abu Rudeineh, an Israeli Presidential spokesman, called the airstrikes a "declaration of war on Palestinians and the Israeli authority alone will bear the consequences. . . . Palestinians have the right to defend themselves by all legitimate means." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). *See also* Universal's evidence in response to ¶ 256 above. |
| 261.   Israeli representative David | Undisputed that the cited document speaks |

Mitchell Silberberg & Knupp LLP

171

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| Yitshak Roet stated, during the 7,222nd Meeting of the United Nations Security Council, on July 22, 2014: "Hamas is determined to wage war." | for itself; not as to any conclusion, etc. therefrom. <br><br> Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br><br> *See also* Universal's evidence in response to ¶ 256 above. |
| 262.   President George Bush, speaking to a joint session of Congress stated: " <br><br> On September the 11th, enemies of freedom committed an act of war against our country. Americans have known wars — but for the past 136 years, they have been wars on foreign soil, except for one Sunday in 1941. Americans have known the casualties of war — but not at the center of a great city on a peaceful morning. Americans have known surprise attacks — but never before on thousands of civilians. All of this was brought upon us in a single day — and night fell on a different world, a world where freedom | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. <br><br> Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). <br><br> • George W. Bush, U.S. President, Address to the Joint Session of the 107th Congress (Sept. 20, 2001) at p. 66, 68. available at George W. Bush, U.S. President, Address to the Joint Session of the 107th Congress (Sept. 20, 2001) at p. 66, 68. available at https://georgewbush-whitehouse.archives.gov/infocus/bu |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| itself is under attack." | shrecord/documents/Selected_Speeches_George_W_Bush.pdf.  Ex. 152 to Atlantic's Evid., pp. 1676, 1678. <br>• These documents are self-authenticating under Rule 902(5). <br>• This fact is the subject of a request for judicial notice. <br>*Controverting evidence*: <br>• Rebuttal Declaration of Amb. Ross, Ex. B, p. 10 ("Any short hand colloquial references by the Secretary of State to 'war' does not convert the hostilities into something different than what U.S. foreign policy already has recognized to be terrorism.") [ECF No. 77-4]. <br>• Sagalow Decl., Ex. D (Expert Report of Sagalow), ¶¶ 83-90 (detailing insurance industry custom and practice, *e.g.*, ¶ 89:  "even though the same word (e.g., 'war') may have another colloquial meaning, when the insurer is considering coverage pursuant to |

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | the terms of an insurance policy, the custom and practice is for the insurer to use the insurance industry meaning of such words used in the policy, not their colloquial meaning or the broad use such words may have in the press or by politicians.") [ECF No. 61-6].<br><br>• *Holiday Inns*, 571 F. Supp. at 1464 ("In commercial litigation arising out of insurance policies, words and phrases are construed 'for insurance purposes' – a context quite different from those of politics or journalism."). |
| 263. Plaintiffs concede that to establish the application of Exclusion 3, "Atlantic must prove [only] that Hamas had the intent to 'overthrow the established government [of Israel] and assume at least de facto governmental control." | **Disputed**, mischaracterizes legal brief.<br><br>• Plaintiffs' Memo, at p. 21<br>***Controverting Evidence***: Plaintiffs' Memo states, in part: "Atlantic must prove: (1) Hamas had the intent to "overthrow the established government [of Israel] and assume at least de facto governmental control;" or, (2) Hamas is part of a larger "group or movement" that has a cohesive purpose to overthrow the established government of Israel. *Holiday* |

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
|  | *Inns*, 571 F. Supp. at 1487-88; *Pan Am*, 505 F.2d at 1017-19."  Memo at p. 21; *see also* Universal's Reply Brief, pp. 18-19. |
| 264.   Plaintiffs maintain "Hamas rejects the very right of Israel to exist. Hamas's stated intent, as expressed in its founding charter published in 1988, is to destroy Israel, establish a separate Islamic fundamentalist Palestinian state, and raise 'the banner of Allah over every inch of Palestine." | Undisputed that the cited document speaks for itself. |
| 265.   Hamas made clear in statements published on the Qassam Brigades' website that its operations against Israel were "part of the response campaign against the occupation assault on the Gaza Strip, and the continued targeting of Palestinian civilians and their installations in the West Bank." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom. |
| 266.   The Qassam Brigades, Hamas's military wing, stated on their website on August 20, 2014, the  purpose of its fighting during the 50-day war:<br><br>"The occupiers, and the entire world, | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom.<br>**Disputed** as to Atlantic's characterization, which is also irrelevant (Fed. R. Evid. |

Mitchell Silberberg & Knupp LLP

175

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| should comprehend the truth about what our people are demanding. All we seek is for the occupation to leave us alone and stop controlling our food, the milk of our children and our fuel. However, the occupiers insist on keeping us on a leash, suffocating us or allowing us to breathe when they will and only as much as they will. The occupiers will not be allowed to continue to do so after this day, God-willing." | 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| 267.  The Qassam Brigades have stated on their website that one of their goals is to: "Liberate Palestinians and the land usurped by the Zionist occupation forces and settlers." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom. |
| 268.  The Max Security reports the Plaintiffs were receiving recognize "the Hamas Government." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom.<br><br>Further, the cite document is by a third party, and in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. |

Mitchell Silberberg & Knupp LLP

176

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
|  | 602), hearsay (Fed. R. Evid. 801, 802). *See also* Universal's evidence in response to ¶ 108 above. |
| 269.   In an Israel Dig Update prepared by the plaintiffs' security team, NBCU recognized the "Hamas-governed Gaza Strip." | Undisputed that the cited document speaks for itself; not as to Atlantic's characterization or any conclusion, etc. therefrom. Further, a colloquial description dating to 2012 in the context of this case and policy at issue, is irrelevant (Fed. R. Evid. 402), improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| 270.   The United States Congressional Research Service has referred to the Qassam Brigades as Hamas's "militia." | Undisputed that the cited document speaks for itself; not as to any conclusion, etc. therefrom. Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 401, 402, 403).  *Weiss v. Arab Bank, PLC*, 2007 U.S. Dist. LEXIS 94029, at *14-20 (E.D.N.Y. Dec. 21, 2007) (Hamas is a terrorist group and cannot constitute a "military force of any origin").  Also improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| 271.   Israel considers Hamas a terrorist organization. | Undisputed. |
| 272.   The Plaintiffs' representatives used the word "militants" and "military" to refer to the Hamas forces. | Undisputed that the cited documents speak for themselves; not as to any conclusion, etc. therefrom.<br><br>Further, in the context of this case and policy at issue, irrelevant (Fed. R. Evid. 401, 402, 403).  *Weiss v. Arab Bank, PLC*, 2007 U.S. Dist. LEXIS 94029, at *14-20 (E.D.N.Y. Dec. 21, 2007) (Hamas is a terrorist group and cannot constitute a "military force of any origin").  Also improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801, 802). |
| 273.   While Hamas has all the vestiges of a quasi-government and a quasi-sovereign, Al-Qaeda is much less formalized. | **Disputed**.<br><br>Improper conclusion (Fed. R. Evid. 701, 702), hearsay (Fed. R. Evid. 801, 802), no personal knowledge (Fed. R. Evid. 602).<br><br>• Carla E. Humud, Cong. Research Serv., R43756, Al Qaeda and U.S. Policy: Middle East and Africa (2016). Exhibit 153 to Atlantic's Evid., p. 1685.<br><br>• This document is self-authenticating under Federal Rule of Evidence |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | 902(5). *Controverting Evidence:* Atlantic's cited evidence for this "fact" is a report about Al-Qaeda that does not mention or perform any comparison to Hamas. Hamas does not have "all the vestiges of a quasi-government and a quasi-sovereign." *See* SUF ¶¶ 67-77. *See also* Levitt Decl. Ex. A (Expert Report of Dr. Levitt) pp. 7-29 (Hamas in the Gaza Strip is not recognized as a legitimate entity, but is a terrorist group, similarly to Boko Haram in Nigeria, al Qaeda in the Arabian Peninsula (AQAP) in Yemen, and the Islamic State (ISIL) in Syria, Iraq, Libya, and Egypt (among others)); [ECF No. 61-3]. |
| 274.   Terrorism is a relatively narrow risk because attacks of terror are "small, isolated" events. | **Disputed**. Improper expert opinion (Fed. R. Evid. 702, 703). <ul><li>Peter Williams Deposition ("Williams Depo."), at p. 145:6-13. Exhibit 154 to Atlantic's Evid., p. 1713.</li></ul> *Controverting evidence*: <ul><li>Sagalow Decl. ¶ 72 (noting the size</li></ul> |

Mitchell Silberberg & Knupp LLP

REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | and scope of the 9/11 terrorist attacks and opining that the size and scope of an attack is not what defines it) [ECF No. 61-6]; <br> • Coyoca Decl., Ex. 42, pp. 349-355 (WSJ, *Timeline: Terror Attacks Linked to Islamists Since 9/11*) (the 9/11 attacks resulted in 2,996 deaths, a 2004 terrorist attack in North Ossetia took place over three days; a 2008 attack in Mumbai occurred in multiple locations; and providing facts about other large terrorist attacks) [ECF No. 61-12]; Request for Judicial Notice, p. 6 [ECF No. 62]. |
| 275.   Hamas controls the Gaza Strip's borders. | **Disputed.**  In the context of this case, improper lay opinion (Fed. R. Evid. 701), lacks foundation (Fed. R. Evid. 602), improper expert opinion (Fed. R. Evid. 702, 703). <br> • Lowenstein Declaration at ¶10. Exhibit 155 to Atlantic's Evid., p. 1721. <br> • U.S. Dep't of State, Bureau of Democracy, Human Rights and |

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell
Silberberg &
Knupp LLP

| ATLANTIC'S ADDITIONAL ALLEGED MATERIAL FACT: | SUPPORTING EVIDENCE: |
|---|---|
| | Labor, Country Report on Human Rights Practices for 2014, 88 (2015), available at https://www.state.gov/documents/organization/236814.pdf. Exhibit 5 to Atlantic's Evid., p. 177.<br>• This document is self-authenticating under Federal Rule of Evidence 902(5).<br><br>***Controverting evidence***:<br>• Levitt Decl. Ex. A, p. 10 (Hamas does not control the Gaza Strip ground, air or sea borders, citing The Israeli-Palestinian Interim Agreement, e.g., Art. XII, Annex I, Art. XIII), p. 28 (same) [ECF No. 61-3];<br>• Ross Decl. Ex. B, ¶ 21 (Israel and Egypt "border Gaza and control access into and out of it") [ECF No. 61-4]. |

DATED:  May 8, 2017          MITCHELL SILBERBERG & KNUPP LLP

By: /S/Lucia E. Coyoca
    Lucia E. Coyoca, Attorneys for Plaintiffs
    Universal Cable Productions LLC and
    Northern Entertainment Productions LLC

181

**REPLY TO ATLANTIC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

Mitchell Silberberg & Knupp LLP