1

2

3                    UNITED STATES DISTRICT COURT

4                    CENTRAL DISTRICT OF CALIFORNIA
                            WESTERN DIVISION

5

6   UNIVERSAL CABLE PRODUCTIONS    )
    LLC, ET AL.,                   )
7                                  )
                                   )
8           PLAINTIFFS,            )
                                   )
9           V.                     )   CV 16-4435-PA(MRWX)
                                   )
10                                 )   LOS ANGELES, CALIFORNIA
    ATLANTIC SPECIALTY INSURANCE   )
11  CO.,                           )
                                   )   MAY 3, 2017
12                                 )   (9:17 A.M. TO 9:54 A.M.)
                                   )
13          DEFENDANT.             )
    _____)

14                              HEARING

15        BEFORE THE HONORABLE MICHAEL R. WILNER
16             UNITED STATES MAGISTRATE JUDGE

17
    APPEARANCES:          SEE NEXT PAGE
18
    COURT REPORTER:       RECORDED; COURT SMART
19
    COURTROOM DEPUTY:     VERONICA PIPER
20
                          DOROTHY BABYKIN
21                        COURTHOUSE SERVICES
                          1218 VALEBROOK PLACE
22                        GLENDORA, CALIFORNIA  91740
                          (626) 963-0566
23

24
    PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25  TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC:

 3           MITCHELL SILBERBERG & KNUPP LLP
             BY:  DANIEL MANNING HAYES
 4               ATTORNEY AT LAW
             11377 WEST OLYMPIC BOULEVARD
 5           LOS ANGELES, CALIFORNIA  90064

 6

 7   FOR THE DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY:

 8           ANDERSON MC PHARLIN & CONNERS LLP
             BY:  MARC J. SHRAKE
 9               ATTORNEY AT LAW
             707 WILSHIRE BOULEVARD
10           SUITE 4000
             LOS ANGELES, CALIFORNIA  90017
11
             STRASBURGER & PRICE LLP
12           BY:  TONI SCOTT REED
                 ATTORNEY AT LAW
13           901 MAIN STREET
             SUITE 4400
14           DALLAS, TEXAS  75202

15

16

17

18

19

20

21

22

23

24

25
```

3

1                               I N D E X
CV 16-4435-PA(MRWX)                        MAY 3, 2017
2
PROCEEDINGS:   HEARING ON MOTION TO COMPEL
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

```
1              LOS ANGELES, CALIFORNIA; MAY 3, 2017; 9:17 A.M.

2              THE CLERK:  CV 16-4435-PA(MRWX), UNIVERSAL CABLE

3    PRODUCTIONS VERSUS ATLANTIC SPECIALITY INSURANCE COMPANY.

4              COUNSEL, PLEASE STATE YOUR APPEARANCES.

5              MR. HAYES:  GOOD MORNING, YOUR HONOR.

6              DAN HAYES OF MITCHELL SILBERBERG & KNUPP ON BEHALF OF

7    THE PLAINTIFFS.

8              THE COURT:  MR. HAYES.

9              MS. REED:  GOOD MORNING, YOUR HONOR.

10             TONI SCOTT REED, STRASBURGER & PRICE, FOR DEFENDANT

11   ATLANTIC SPECIALITY INSURANCE.

12             MR. SHRAKE:  GOOD MORNING, YOUR HONOR.

13             MARC SHRAKE, ANDERSON MC PHARLIN & CONNERS, FOR

14   DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY.

15             THE COURT:  I'M SORRY.  THE NAME WAS SHRAKE?

16             MR. SHRAKE:  SHRAKE, S-H-R-A-K-E.

17             THE COURT:  ALL RIGHT.

18             GOOD MORNING TO BOTH OF YOU.

19             ALL RIGHT.  THIS MATTER IS ON FOR WHAT REMAINS OF A

20   DISCOVERY MOTION THAT WE'VE HAD SOME EXTENSIVE DISCUSSIONS OVER

21   THE LAST FEW WEEKS.  AFTER THE INITIAL MOTION WAS FILED SEVERAL

22   WEEKS AGO, THE COURT HAD A COUPLE OF EXTENDED INFORMAL

23   DISCOVERY CALLS WITH -- WITH THE LAWYERS.

24             AND I'M VERY GRATEFUL FOR THE WORK THAT YOU FOLKS

25   HAVE PUT IN.  AND IT'S MY UNDERSTANDING BASED ON YOUR
```

1   SUPPLEMENTAL FILINGS THAT MOST OF THE DISPUTES HAVE BEEN

2   RESOLVED, WORKED OUT.  I THINK I SEPARATELY ENTERED AN ORDER ON

3   ONE OF THE ISSUES TO --

4            HI.

5            IS THAT ONE OF YOUR FOLK COME IN?

6            MR. HAYES:  NOT FROM MY OFFICE, YOUR HONOR.

7            MS. REED:  NO, YOUR HONOR.

8            THE COURT:  OKAY.

9            (COURT CONFERRING IN UNRELATED MATTER.)

10           THE COURT:  ALL RIGHT.  I WAS THANKING YOU ALL FOR

11   WORKING OUT MOST OF THE MOTION.

12           THERE IS STILL AN ISSUE WITH RESPECT TO PLAINTIFF'S

13   REQUEST TO COMPEL PRODUCTION OF MATERIALS FOR WHICH THE DEFENSE

14   IS ASSERTING A PRIVILEGE.  THIS IS THE ISSUE IN WHICH ATLANTIC

15   SOUGHT AN OPINION FROM AN OUTSIDE LAWYER REGARDING THE COVERAGE

16   DISPUTE AND INFORMED THE PLAINTIFFS THAT THEY OBTAINED -- THAT

17   THE FIRM HAD OBTAINED AN OPINION AND WAS DENYING COVERAGE.  AND

18   UNIVERSAL CABLE CLAIMS THAT PRIVILEGE HAS BEEN WAIVED HERE.

19           I'M NOT SURE WHY WE'RE HERE BECAUSE I THOUGHT THIS

20   WAS GOING TO BE RESOLVED BECAUSE NOT ONLY IN THE PAPERS THAT

21   WERE ORIGINALLY SUBMITTED, THAT IS, IN THE ORIGINAL JOINT

22   SUBMISSION THERE WAS A VERY CLEAR STATEMENT FROM THE DEFENSE

23   THAT THE INSURANCE COMPANY WAS NOT GOING TO BE ASSERTING AN

24   ADVICE-OF-COUNSEL DEFENSE.

25           BUT, THEN, IN OUR PHONE CONVERSATIONS AT THE REQUEST

1    OF PLAINTIFFS I THOUGHT I GOT A PRETTY CLEAR ADMISSION OR

2    ACKNOWLEDGMENT OR STATEMENT OR CONCESSION -- USE THE NOUN OF

3    YOUR CHOICE -- THAT THE DEFENSE WASN'T EVEN GOING TO REFER TO

4    THE FACT -- THE EVENT OF OBTAINING AN OPINION FROM A LAWYER,

5    AND THAT IT WASN'T COMING IN.

6            AND I PRETTY CLEARLY RECALL YOU, MR. HAYES, SAYING

7    HOW AM I GOING TO CONFIRM THAT BECAUSE THIS IS JUST AN INFORMAL

8    CALL, JUDGE.  AM I GOING TO GET AN EMAIL, AM I GOING TO GET A

9    LETTER, SOMETHING ON A PARCHMENT SEAL WITH THE WAX AND A RING

10   AND ALL THAT.

11           AND I DON'T KNOW WHETHER YOU GOT IT OR NOT, BUT I DID

12   CERTAINLY SEE IT IN ATLANTIC'S SUPPLEMENTAL SUBMISSION.  I'LL

13   QUOTE FROM PAGE 4.  ATLANTIC DID AGREE NOT TO MENTION THE

14   OPINION AT TRIAL.

15           AND, THEN, WE GOT SOME -- WELL, MODIFIERS -- UNLESS

16   ASKED ABOUT IT.  AND THEN THERE'S SOME SORT OF DISPUTE ABOUT

17   WHAT HAPPENS IF IT ACCIDENTALLY COMES UP, WHICH SEEMS JUST

18   DISASTROUS.

19           SO, MAYBE SOMEONE CAN SORT OF TELL ME WHY THIS IS

20   STILL A LIVE ISSUE AND WHAT, IF ANYTHING, I'M EXPECTED TO DO

21   ABOUT IT.

22           MR. HAYES:  CAN I ADDRESS THAT, YOUR HONOR?

23           THE COURT:  YOU CERTAINLY CAN.

24           MR. HAYES:  THANK YOU.

25           THE COURT:  YOU CAN HAVE A SEAT.

```
 1              MS. REED:  THANK YOU, SIR.

 2              MR. HAYES:  YOUR HONOR, YOUR SUMMARY IS CORRECT.  AT

 3    THE HEARING WE DISCUSSED THE ISSUE OF ATLANTIC PRESENTING THIS

 4    ARGUMENT TO THE JURY.  THERE WAS SOME DISCUSSION THAT

 5    CHEESEBURGER THAT WAS INVOLVED AND WHETHER OR NOT MS. JOHNSON

 6    WOULD MENTION THE FACT THAT SHE HAD EATEN A CHEESEBURGER BEFORE

 7    SHE MADE THE DECISION TO DENY THE CLAIM.

 8              THE COURT:  YEAH, MY FOLKSY KIND OF "MATLOCK" -- WAS

 9    "MATLOCK" AN NBC SHOW?

10              MR. HAYES:  I DO NOT KNOW.

11              THE COURT:  I THINK IT WAS.  WASN'T IT -- "MURDER SHE

12    WROTE" WAS CBS.  I THINK "MATLOCK" WAS AN NBC SHOW.

13              OKAY.  ALL RIGHT.  COUNTRY LAWYER.  GOT IT.

14    CHEESEBURGER -- JUST DON'T SAY YOU HAD A CHEESEBURGER.  AND WE

15    DON'T HAVE TO DO DISCOVERY ABOUT THE CHEESEBURGER.

16              MR. HAYES:  BUT THAT REALLY IDENTIFIED THE NUB OF

17    THIS ARGUMENT.

18              THERE'S BEEN THIS SIDE SHOW I WOULD CALL IT ABOUT THE

19    ADVICE-OF-COUNSEL DEFENSE.  WE'RE NOT ASSERTING THE

20    ADVICE-OF-COUNSEL DEFENSE ATLANTIC SAYS.  THE ADVICE-OF-COUNSEL

21    DEFENSE SAYS, IF WE WERE WRONG, IT'S OKAY BECAUSE WE RELIED ON

22    THE ADVICE OF OUR COUNSEL.  WE TAKE THEM AT THEIR WORD THAT

23    THEY'RE NOT GOING TO ASSERT THAT DEFENSE.

24              BUT WHAT THEY'VE CLEARLY SAID IN THEIR PAPERS IS THEY

25    ARE GOING TO SEEK TO PLANT INFERENCES IN THE MINDS OF THE JURY.
```

1    AND THE INFERENCE THAT THEY ARE GOING TO SEEK TO PLANT IN THE

2    MINDS OF THE JURY IS AS FOLLOWS:  WE OBTAINED A COVERAGE

3    OPINION.  AND THAT COVERAGE OPINION REACHED THE SAME CONCLUSION

4    WE DID.

5            AND FOR THE JURY, WHAT THE JURY IS GOING TO THINK IS,

6    OKAY.  A THIRD-PARTY LAWYER LOOKED AT THIS AND THEY CAME TO THE

7    SAME POSITION THAT ATLANTIC CAME TO.

8            AND IN THE CONTEXT OF A BAD-FAITH CLAIM THAT'S

9    POWERFUL EVIDENCE BECAUSE IT INTRODUCES THIS IDEA THAT THE

10   DECISION WAS REASONABLE, THERE WAS A REASONABLE DISPUTE ABOUT

11   INTERPRETATION SOUGHT AND SO FORTH.

12           I DON'T THINK IT'S OPEN TO DISCUSSION THAT IF THAT

13   INFERENCE IS PLANTED IN THE JURY, WE CANNOT DISPUTE IT UNLESS

14   WE SEE THE COVERAGE OPINION ITSELF TO DETERMINE WHETHER OR NOT

15   IT'S THE SAME.

16           THAT'S WHERE WE CAME TO THIS POINT WHERE YOUR HONOR,

17   I THOUGHT, OFFERED A PRAGMATIC SOLUTION.  AND THAT IS PREVENT

18   ATLANTIC FROM MENTIONING IT OR BRINGING IT UP AT TRIAL --

19   WHETHER IT'S THE ADVICE-OF-COUNSEL DEFENSE OR SOME OTHER

20   ARGUMENT THAT THEY'RE GOING TO MAKE TO THE JURY.

21           THE DAY AFTER THAT CONFERENCE, THE FIRST OF OUR

22   CONFERENCES, I PREPARED A PROPOSED ORDER.  AND THE PROPOSED

23   ORDER SAID IN A NUTSHELL ATLANTIC SHALL NOT MENTION OR

24   INTRODUCE EVIDENCE OR LEGAL ARGUMENT REGARDING THE COVERAGE

25   OPINION OR THE LEGAL ADVICE OF LEON GLADSTONE.  I SUBMITTED

1   THAT ON THE TUESDAY AFTER OUR CONFERENCE.

2              THE RESPONSE WAS, OKAY, WE WON'T MENTION IT, BUT YOU

3   CAN'T DO -- AND THEN THERE WERE THREE DIFFERENT PERMUTATIONS OF

4   WHAT PLAINTIFFS COULDN'T DO.

5              FIRST, IT WAS PLAINTIFFS COULDN'T TALK ABOUT THE FACT

6   THAT ATLANTIC DIDN'T GET AN EXPERT OPINION.

7              THAT'S COMPLETELY SEPARATE.  ONE OF OUR POSITIONS IN

8   THE CONTEXT OF THE BAD FAITH CLAIM IS ATLANTIC SHOULD HAVE --

9   SHOULD HAVE REACHED OUT TO AN INDEPENDENT INSURANCE ADJUSTER

10  WHO HAS DEALT WITH THE WAR EXCLUSION IN THE PAST BECAUSE

11  ATLANTIC DIDN'T HAVE EXPERIENCE WITH IT.

12             ONE OF OUR OTHER ARGUMENTS IS THAT ATLANTIC SHOULD

13  HAVE CONSULTED AN EXPERT; FOR EXAMPLE, ON MIDDLE EAST HISTORY.

14  THEY DIDN'T DO THAT EITHER.  THEY HAVE A POLICY WHICH SETS

15  FORTH IN THE POLICY THAT IN CERTAIN CASES THE INSURANCE CARRIER

16  SHOULD CONSIDER CONSULTING OUTSIDE EXPERTS OR INDEPENDENT

17  INSURANCE ADJUSTERS.

18             SO, MY PROPOSED ORDER THAT ATLANTIC BE BARRED FROM

19  MENTIONING OR INTRODUCING THIS EVIDENCE AT TRIAL TURNED INTO A

20  DISCUSSION OF WHAT PLAINTIFFS COULD NOT DO.  AND THERE WERE --

21  THERE WERE, LIKE I SAID, AT LEAST TWO OR THREE DIFFERENT

22  PERMUTATIONS OF WHAT THE PLAINTIFFS COULDN'T DO AT TRIAL.

23             MY POSITION IS THAT THIS IS A DISCOVERY MATTER.  I'M

24  PREPARED TO ARGUE REGARDING SO CAL -- ON THE BASIS OF SO CAL

25  GAS THAT THE PRIVILEGE IN THIS CASE HAS BEEN WAIVED BASED ON

1   THEIR STATEMENTS IN THEIR EXPERT REPORT, DEPOSITION TESTIMONY,

2   AND IN THEIR VARIED PAPERS IN FRONT OF THIS COURT.

3         BUT IF THE ROAD THAT WE WANT TO GO DOWN IS OBVIATING

4   THE NEED FOR THAT OPINION, WE NEED THAT TODAY BECAUSE PAMELA

5   JOHNSON IS BEING DEPOSED ON THE 8TH.

6         AND IF WE DELAY THAT TO TRIAL, WE'RE GOING TO BE --

7   WE'RE NOT GOING TO KNOW WHAT THE COVERAGE OPINION SAYS, AND

8   ATLANTIC WILL STILL HAVE THE OPPORTUNITY TO SOW THE INFERENCES

9   THAT THEY'VE CLEARLY DESCRIBED IN THEIR MOTION.

10         ON THE OTHER HAND, TRYING TO ANTICIPATE WITH

11   PRECISION THE EXACT ARGUMENTS THAT THE PLAINTIFFS ARE GOING TO

12   MAKE AT TRIAL, THAT'S JUST NOT SOMETHING THAT WE CAN DO AT THIS

13   POINT.

14         AND I WOULD SUBMIT THAT IF ATLANTIC FEELS THAT THAT

15   ORDER -- IF THE COURT WERE TO ENTER AN ORDER BARRING THEM FROM

16   USING THE OPINION AT TRIAL, IF ATLANTIC WERE TO FEEL THAT THAT

17   ORDER SHOULD BE MODIFIED AT TRIAL BASED ON SOMETHING THAT NONE

18   OF US CAN ANTICIPATE HAPPENS, THEN, THE APPROPRIATE TIME TO

19   BRING THAT UP IS AT TRIAL.

20         BUT FOR OUR PURPOSES RIGHT NOW WE KNOW THE ARGUMENTS

21   THAT THEY'RE MAKING.  WE KNOW THE REASON THAT THEY'VE CONTINUED

22   AND CONTINUED TO BRING UP THIS COVERAGE OPINION, AND IT'S

23   CLEARLY STATED IN THEIR BRIEF.

24         (PAUSE IN PROCEEDINGS.)

25         MR. HAYES:  "NONE OF THESE STATEMENTS GO BEYOND

1            RECITING THE FACT THAT ATLANTIC" --

2            THE COURT:  NO, NO.  IF YOU'RE READING SOMETHING,

3    YOU'VE GOT TO TELL ME WHERE YOU ARE.

4            MR. HAYES:  SURE.

5            I'M AT PAGE 3 --

6            THE COURT:   YEAH?

7            MR. HAYES:  -- OF MY SUPPLEMENTAL -- OF OUR

8    SUPPLEMENTAL BRIEF --

9            THE COURT:  YOUR BRIEF.  OH, OKAY.

10           MR. HAYES:  -- AND IT'S LINE 3 THROUGH 8.

11           THE COURT:  I THOUGHT YOU WERE GOING TO READ FROM

12   THEIRS.

13           MR. HAYES:  I COULD IF YOU'D LIKE.  I CITED THEIR

14   JOINT STIP SO I COULD READ FROM THEIRS -- THAT'S MORE

15   APPROPRIATE.  LET ME GO TO THEIRS.

16           PAGE 25 OF THE JOINT STIPULATION, LINES 1 THROUGH 4.

17           THE COURT:  PAGE 25.  GOT IT.

18           MR. HAYES:  "IN SHORT, NONE OF THESE STATEMENTS

19               GO BEYOND RECITING THE FACT THAT ATLANTIC OBTAINED

20               THE OPINION, CAREFULLY CONSIDERED IT AND, THEN, AS

21               IS OBVIOUS FROM THE FACT THAT ATLANTIC WENT ON TO

22               DENY COVERAGE, DID NOT SEE ANYTHING IN THE OPINION

23               THAT CAUSED ATLANTIC TO BELIEVE THAT THE WAR

24               EXCLUSIONS DID NOT APPLY."

25               IMMEDIATELY BEFORE THAT IN CHARACTERIZING MS.

12

1   GOOLEY'S TESTIMONY -- THIS IS 24, LINES 24 TO 25.

2          THE COURT:  YEAH, I MEAN -- I MEAN, THE LADY GETS

3   ASKED A QUESTION BY YOUR SIDE.  DID YOU GET AN OPINION.  SHE

4   SAYS YES TRUTHFULLY.  YOU DON'T DELVE INTO THE MERITS OF THE

5   OPINION, BUT THEN YOU ASKED HER TO CHANGE HER MIND.  AND SHE

6   SAYS NO.

7          I MEAN, THAT'S NOT REALLY CONVINCING THAT THEY'RE

8   ASSERTING --

9          MR. HAYES:  WELL --

10          THE COURT:  -- THEY'RE ASSERTING ANYTHING HERE.  COME

11   ON.

12          MR. HAYES:  -- THE TESTIMONY WAS THE OPINION WAS

13   CONSISTENT WITH EVERYTHING ELSE --

14          THE COURT:  YEAH.

15          MR. HAYES:  -- AND SUPPORTED OUR POSITION.

16          AFTER THAT TESTIMONY, MS. REED AND I AND OTHERS AT

17   HER OFFICE HAVE HAD HOURS OF CONVERSATION ABOUT THIS ISSUE.

18   SUBSEQUENT TO THOSE CONVERSATIONS, SUBSEQUENT TO THE CLEAR

19   STATEMENTS BY OUR OFFICE THAT WE WERE ASSERTING THIS WAS A

20   WAIVER, THEY PUT IT IN THEIR EXPERT REPORT.  SUBSEQUENT TO THE

21   EXPERT REPORT THEY PUT IT IN THEIR BRIEF.

22          SO -- AND BY THE WAY, SO CAL GAS TOTALLY

23   DISTINGUISHABLE.  AND SO CAL -- IF YOU'D LIKE, YOUR HONOR, I

24   COULD ADDRESS THAT.  IF NOT, I WON'T.

25          THE COURT:  NO, I'VE GOT YOUR PAPERS.  I'VE READ YOUR

13

1  PAPERS.

2          MR. HAYES:  OKAY.  OKAY.

3          THE COURT:  OKAY.

4          MR. HAYES:  SO, JUST TO SUM UP.  I'M SORRY.

5          THE COURT:  YES.

6          MR. HAYES:  WE REMAIN WILLING TO DO WHAT WE DISCUSSED

7  AT THAT FIRST TELEPHONE CONFERENCE.  IF WE HAVE -- IF WE HAVE

8  AN ORDER, IT DOESN'T HAVE TO HAVE ANY WAX ON IT.  BUT IF WE

9  HAVE AN ORDER THAT SAYS ATLANTIC CANNOT MENTION OR INTRODUCE

10  EVIDENCE OR ARGUMENT OF THE OPINION AT TRIAL FOR PURPOSES OF

11  DISCOVERY AND SEEKING THIS OPINION, WE'RE OKAY.

12          THE PROBLEM BECAME WHEN WE PAST THAT AND TRIED TO

13  ANTICIPATE EVERY SINGLE QUESTION OR LEGAL ARGUMENT OR

14  CIRCUMSTANCE THAT MIGHT HAPPEN AT TRIAL, FROM THE PLAINTIFF'S

15  PERSPECTIVE, HOW DO WE -- HOW DO WE ACCOUNT FOR ALL OF THAT

16  RIGHT NOW.  AND I JUST DON'T THINK WE CAN, YOUR HONOR.

17          AND I DON'T THINK ATLANTIC IS PREJUDICED BY THE FACT

18  THAT IF AT TRIAL FOR SOME REASON, WHICH I CAN'T COME UP WITH

19  RIGHT NOW STANDING HERE, WE DECIDE TO ELICIT THE TESTIMONY FROM

20  A WITNESS, I AN UNCLEAR AS TO WHY THAT ISSUE CANNOT BE

21  ADDRESSED BEFORE JUDGE ANDERSON AT TRIAL.

22          THE COURT:  YEAH.  IT LOOKS LIKE REQUEST FOR A

23  MISTRIAL OR A REQUEST TO DISBAR A LAWYER OR SOMETHING LIKE

24  THAT.  YEAH.  YOU KNOW, IF YOU TAKE UP A FEDERAL ORDER LIKE

25  THAT EXCLUDING CERTAIN EVIDENCE AND YOU DELIBERATELY DO

14

1   SOMETHING, I GOT IT.

2            ALL RIGHT.

3            MR. HAYES:  I WAS NOT SUGGESTING THAT WE WOULD

4   DISOBEY AN ORDER.

5            THE COURT:  YEAH.

6            MR. HAYES:  THE PROBLEM WAS THAT WHEN WE GOT TO THE

7   POINT OF DISCUSSING THE PROPOSED ORDER THAT I HAD PROPOSED, THE

8   DISCUSSION WAS, WELL, WHAT IF YOU ASK A WITNESS LIKE MR.

9   GUTTERMAN WHY DIDN'T YOU CONSULT AN EXPERT.  THE RESPONSE WAS

10  MR. GUTTERMAN SHOULD BE ABLE TO SAY WE DID CONSULT AN EXPERT,

11  MR. GLADSTONE, AND IT DIDN'T CHANGE OUR OPINION.

12           THE COURT:  WELL, IF YOU OPEN THAT DOOR, YOU MAY NOT

13  LIKE WHAT'S ON THE OTHER SIDE.

14           ALL RIGHT.  LET ME -- LET ME HEAR FROM MS. REED ON

15  THIS.

16           MS. REED:  THANK YOU, YOUR HONOR.

17           I THINK THE COURT IS FOCUSED ON SOME OF THE REASONS

18  THAT WE'RE BACKLOGGED AT THIS POINT.

19           WHEN WE WERE DISCUSSING WHETHER THIS COULD BE A

20  STIPULATION FOR TRIAL, I USED THE COURT'S MODEL AND WENT

21  FOLKSY.  AND I SAID, WHAT'S GOOD FOR THE GOOSE IS GOOD FOR THE

22  GANDER.  IF THE ISSUE IS OUT OF THE CASE, THEN, IT HAS TO BE

23  OUT OF CASE ON BOTH SIDES.

24           THIS IS MORE IN THE NATURE OF A LIMINE POINT.  WHAT

25  WE'RE HERE TO ARGUE BEFORE THE COURT TODAY IS A LEGAL ISSUE OF

15

1    WAIVER.  AND THE ARGUMENT ON THAT WE WOULD PRESENT, YOUR HONOR,

2    IS THAT PLAINTIFFS HAVE NOT BROUGHT FORWARD IN THEIR PAPERS OR

3    IN THEIR ARGUMENTS OR EVIDENCE THE THREE-PRONG TEST THAT THE

4    NINTH CIRCUIT ACTUALLY APPLIES ABOUT WAIVER.

5            THIS IS SET OUT VERY CLEARLY IN THE AMLANI CASE,

6    NINTH CIRCUIT 1999, THAT'S BEEN CITED BY BOTH PARTIES.

7            THE COURT:  WELL, I -- OKAY.

8            I MEAN, I DON'T -- I'VE READ YOUR PAPERS.  I GOT IT.

9    I MEAN -- I MEAN, YOU KNOW YOU DUCK ALL OF THIS BY JUST TURNING

10   OVER THE OPINION.  I MEAN, YOU DON'T -- YOU HAVE A RIGHT TO

11   ASSERT PRIVILEGE.  BUT IT MAY NOT NECESSARILY BE IN YOUR

12   CLIENT'S INTEREST TO DO THAT IF YOU'VE GOT A GOOD OPINION AND A

13   GOOD DEFENSE.  BUT YOU'VE THOUGHT ABOUT THAT.

14           MS. REED:  AND, YOUR HONOR, THE PLAINTIFFS ARE

15   SEEKING NOT ONLY THAT OPINION BUT EVERY COMMUNICATION WITH THAT

16   LAW FIRM OVER THE ENTIRE CLAIM.

17           OUR ARGUMENT HAS BEEN ALWAYS THERE'S NO WAIVER.  WE

18   DIDN'T ASSERT AN AFFIRMATIVE CLAIM.  WE DIDN'T PUT THE CONTENTS

19   OF THE OPINION AT ISSUE.  AND THERE IS NO DEFENSE.

20           THE COURT:  YOU INTEND TO PRESENT EVIDENCE --

21           OKAY.  AND I THINK -- I THINK REALLY WHAT I'M GETTING

22   TO BASED ON THE AETNA CASE, BASED ON -- THERE WAS A SUPREME

23   COURT CASE AFTER THAT -- WAS IT ROCKWELL? -- STATE SUPREME --

24           MS. REED:  YES, SIR.

25           THE COURT:  YEAH.  OKAY.

1          I MEAN, THERE'S A DIFFERENCE BETWEEN THE ADVICE YOU

2     GOT FROM THE LAWYER AND THE ACT OF ASKING FOR ADVICE FROM THE

3     LAWYER AS I UNDERSTAND IT.  OKAY.

4          IF YOU INTEND NOT TO ASSERT ANYTHING ABOUT THE ADVICE

5     RECEIVED FROM THE LAWYER, I THINK -- I DON'T KNOW IF THERE'S

6     BEEN ANY KIND OF WAIVER AT ALL.

7          IF ATLANTIC INTENDS TO MAKE NO PRESENTATION, NO

8     ASSERTION -- OTHER THAN -- OTHER THAN TELLING -- I MEAN, YOU

9     CERTAINLY TOLD THE FOLKS IN REALTIME WE TALKED TO A LAWYER.

10    BUT IN THE DEFENSE OF THIS ACTION YOU DON'T INTEND TO PUT THE

11    ADVICE OF THAT LAWYER IN PLAY, I THINK YOU'RE FINE.  I THINK

12    THAT'S THE CLEAR HOLDING OF AETNA.

13         WHATEVER THE ADVICE WAS, WHATEVER IMPACT IT HAD ON

14    YOU FOLKS, IS IRRELEVANT TO THE ACTION -- IF YOU DENY THIS

15    BASED ON OTHER THINGS -- AND THAT'S ALL YOU WANT TO PRESENT TO

16    THE JURY, AND YOU DON'T WANT TO PRESENT THE COMFORT YOU GOT

17    FROM THE LAWYER, THAT'S FINE.

18         BUT TO THE EXTENT YOU WANT TO PUT IN THE FACT THAT

19    YOU TOOK THE ACT OF ASKING A LAWYER WE ARE A REASONABLE

20    INSURANCE COMPANY.  WE TOOK THE STEP OF ASKING, THAT IS A

21    PROBLEM POTENTIALLY.  OKAY.  AND YOU --

22         AND I'M NOT -- I'M NOT QUITE SURE I GET FROM YOUR

23    CAGEY LANGUAGE WHAT YOU'RE DOING.  ARE YOU GOING TO BE SAYING,

24    WELL, WE TOOK THE STEP BECAUSE WE'RE REASONABLE GOOD-FAITH

25    INSURERS, BUT WHO CARES WHAT THE -- WHAT THE RESPONSE WAS.

1        OR ARE YOU SAYING NOTHING ABOUT TALKING TO LAWYERS

2   COMES IN FROM OUR SIDE AT ALL?

3        MS. REED:  WELL, YOUR HONOR, I GUESS I HAVE TO DRAW

4   THE LINE HERE BETWEEN WHAT WE'VE ANSWERED IN DISCOVERY AND THEN

5   WHAT WE OFFERED AS AN ACCOMMODATION TO TRY TO REACH AGREEMENT

6   WITHOUT HAVING THE COURT RULE ON WAIVER.  WE DON'T BELIEVE

7   THERE'S WAIVER.

8        THE COURT:  WELL, YOU DON'T HAVE -- YOU DON'T HAVE AN

9   AGREEMENT THERE.  AND, SO --

10       MS. REED:  I UNDERSTAND.

11       THE COURT:  OKAY.

12       MS. REED:  SO, FOR PURPOSES OF ANSWERING DISCOVERY --

13       THE COURT:  YES.

14       MS. REED:  -- THE WAY THAT THESE ISSUES HAVE COME OUT

15  ARE, NUMBER ONE, THE PLAINTIFFS THAT HAVE BEEN ASKING CURRENT

16  AND FORMER EMPLOYEES OF ATLANTIC WHAT DID YOU DO.  GIVE ME THE

17  TIMELINE.  WHAT HAPPENED.  GIVE ME EVERY STEP.  THEY'VE

18  ANSWERED THE QUESTIONS.

19       SO, THAT'S THE FIRST WAY IT'S COME OUT.

20       THE SECOND WAY IT'S COME OUT IS --

21       THE COURT:  OH, I KNOW -- I KNOW IT'S COME OUT IN

22  DISCOVERY.

23       MS. REED:  YES, SIR.

24       THE COURT:  I AM FOCUSED ON YOUR TRIAL.  AND THAT IS

25  A RULE 26 ISSUE.  OKAY.

1        IF YOU ARE PUTTING INTO -- AS AN ISSUE IN DISPUTE, IF

2   YOU ARE INTENDING TO PRESENT EVIDENCE IN SUPPORT OF YOUR

3   DEFENSE THAT WE TOOK THE STEP OF ASKING A LAWYER FOR ADVICE,

4   THEN, I MAY HAVE A RULE 26 ISSUE HERE.

5        IF YOU'RE TELLING ME, JUDGE, WE'RE NOT GOING TO PUT

6   THAT INTO DISPUTE.  WE'RE NOT GOING TO PRESENT EVIDENCE EITHER

7   THAT WE ASKED OR THAT WE GOT A RESPONSE, THEN, THINGS -- THEN,

8   THE THINGS BECOME IRRELEVANT, AND DISCOVERY IS NOT PERMITTED.

9        MS. REED:  I UNDERSTAND, YOUR HONOR.

10       AND HERE'S WHERE THE THING GETS TURNED ON ITS HEAD.

11  AFTER THE CONFERENCES WITH THE COURT, WE HAD SAID TO THE COURT

12  WE WOULD BE WILLING AS AN ACCOMMODATION TO TRY TO REACH

13  AGREEMENT ON THIS TO SAY WE WON'T BRING IT UP.

14       BUT, THEN, WE SAID TO THE PLAINTIFF, YOU HAVE TO HAVE

15  THE SAME AGREEMENT YOU WON'T BRING IT UP.

16       THE PLAINTIFF IS GOING TO PUT ON THE CASE FIRST.  AND

17  THE PLAINTIFF IS GOING TO BRING OUT THE EVIDENCE.  THEY MAY BE

18  QUESTIONING THE ATLANTIC WITNESSES IN ITS CASE IN CHIEF. AND IT

19  MAY SAY, FOR EXAMPLE TO MR. GUTTERMAN, WHY DIDN'T YOU GO

20  CONSULT AN EXPERT.  AT WHICH POINT HE'LL ANSWER LIKE HE DID IN

21  HIS DEPOSITION AND SAY, WHAT WE DID WE GOT A COVERAGE OPINION.

22       AND THEN THE ISSUE IS IN THE CASE.  IT IS IN FROM A

23  FACTUAL STANDPOINT, BUT IT WAS BROUGHT UP BY THE PLAINTIFFS.

24       SO, WHAT WE ATTEMPTED TO DO, YOUR HONOR, WAS CUT

25  THROUGH THAT TO GET TO THE IN LIMINE POINT IN ESSENCE AND SAY,

19

1   WE WILL NOT BRING IT UP ON BEHALF OF ATLANTIC BUT THE

2   PLAINTIFFS CAN'T BRING IT UP EITHER.  IF THE PLAINTIFFS OPEN

3   THE DOOR ON THIS, THEN, WE HAVE NO CHOICE BUT TO ANSWER THE

4   QUESTIONS HONESTLY AND TO EXPLAIN THE PROCESS OF WHAT HAPPENED.

5          HERE'S THE WAIVER POINT THOUGH.  WE'VE NEVER BEEN

6   RELYING ON THE CONTENT OF THE OPINION ITSELF.  AND THAT'S

7   WHAT'S REQUIRED TO GET UNDER THAT NINTH CIRCUIT --

8          THE COURT:  NO, NO.  OKAY.  I'M NOT GOING TO HAVE

9   THAT DISCUSSION BECAUSE I STILL DIDN'T GET A STRAIGHT ANSWER TO

10  MY QUESTION.  BUT, I MEAN, IF YOU SAY -- IF YOU FOLKS ARE GOING

11  TO PUT UP THAT WE ASKED A LAWYER AND WE GOT SOME ADVICE, BUT

12  WE'RE NOT GOING TO TELL YOU WHAT IT IS, BUT BASED ON THAT

13  ADVICE -- OR, FINALLY, AFTER GETTING THAT ADVICE WE CONTINUE TO

14  DENY THE CLAIM.  IT'S PRETTY OBVIOUS WHAT THAT ADVICE WAS.

15  IT'S PRETTY --

16          I UNDERSTAND YOU GOT AN ISSUE ABOUT WHAT THEIR CASE

17  IS.  AND THAT'S VERY MUCH IN ISSUE AT TRIAL.  BUT MY QUESTION

18  WAS FOR YOU IN YOUR DEFENSE OF THIS MATTER DO YOU INTEND TO PUT

19  ON EVIDENCE THAT YOUR PEOPLE CONSULT- -- TOOK THE ACT OF

20  CONSULTING WITH A LAWYER?

21          MS. REED:  IT WILL DEPEND ON WHAT THE PLAINTIFF DOES

22  IN THE CASE.  THAT'S THE BEST I CAN SAY AT THIS POINT.

23          THE COURT:  NO.  NO --

24          MS. REED:  WE HAD OFFERED TO NOT IF THE ISSUE IS JUST

25  OUT OF THE CASE.  BUT MY POINT TO MR. HAYES WAS AS WE WERE

1    TRYING TO CRAFT LANGUAGE, IF THEY BRING UP QUESTIONS THAT CAUSE

2    US TO ANSWER, THEN, WE HAVE TO ANSWER.

3              THE COURT:  THEN --

4              MS. REED:  WE'RE WILLING TO TAKE IT OUT.

5              THE COURT:  THEN, THEY'RE ENTITLED TO DISCOVERY ON

6    IT.

7              MS. REED:  I GUESS THEN WE GET TO THE WAIVER POINT,

8    YOUR HONOR.  AND WE'D BE ARGUING.  WE'RE NOT RELYING ON THE

9    CONTENT.  AND WE HAVE NEVER SAID THAT THE CONTENT OF THAT

10   OPINION GOVERNED ANY DECISION.  IN FACT, WHAT MS. GOOLEY

11   TESTIFIED AND WHAT MS. JOHNSON HAVE TESTIFIED IS THAT THERE WAS

12   AN INDEPENDENT ANALYSIS AND A DECISION MADE.  THERE WAS A

13   HEADS UP GIVEN TO THE INSURED, THIS IS THE WAY WE'RE GOING.

14   THE INSURER --

15             THE COURT:  YOU ARE -- YOU ARE CAUSING REAL PROBLEMS

16   TO YOUR CASE HERE.  THAT IS A -- I'M NOT ASKING YOU WHAT'S

17   GOING TO HAPPEN AT TRIAL.  I CAN'T -- I'M NOT ASKING YOU WHAT

18   THE WEATHER IS GOING TO BE ON THE MORNING OF TRIAL.  I'M NOT

19   GOING TO ASK YOU WHAT COLOR SUIT HE'S GOING TO WEAR, WHICH

20   MIGHT THEN AFFECT WHAT COLOR YOU WEAR BECAUSE YOU DO OR DON'T

21   WANT TO WEAR THE SAME SUIT.  I MEAN, I KNOW THOSE TRIAL ISSUES.

22             I AM ASKING YOU AS THIS CASE BECOMES NARROWER AND AS

23   WE LEARN WHAT IS AND IS NOT AT ISSUE, YOU HAVE ASSERTED

24   DEFENSES TO LIABILITY.  AND YOU HAVE A THEORY OF THE CASE IN

25   RESPONSE TO THE CLAIMS.

1          AND MY QUESTION IS, IN YOUR CASE DO YOU INTEND TO PUT

2    ON EVIDENCE SEPARATE AND APART FROM WHAT THEY DO THAT YOU ASKED

3    A LAWYER FOR COVERAGE ADVICE HERE?

4          MS. REED:  WE WILL NOT, YOUR HONOR.

5          THE COURT:  OKAY.

6          MS. REED:  CONSISTENT WITH WHAT WE SAID TO THE COURT

7    BEFORE --

8          THE COURT:  STOP TALKING.

9          MS. REED: -- TO REACH AN AGREEMENT --

10         THE COURT:  STOP TALKING.

11         (LAUGHTER.)

12         THE COURT:  STOP TALKING.  YOU'RE TALKING YOUR WAY --

13   YOU'RE TALKING YOUR WAY OUT OF THIS.

14         OKAY.  IF YOU'RE TELLING ME THAT YOU DO NOT INTEND TO

15   MAKE THIS AN ISSUE THAT'S PART OF YOUR CASE, THEN, IT'S NOT

16   RELEVANT, AND THEY ARE NOT ENTITLED TO DISCOVERY UNDER RULE 26.

17   OKAY.

18         NOW, BASED ON YOUR LITIGATION POSITION, WHICH SEEMS

19   SENSIBLE, I THINK YOU STAND IN A VERY GOOD POSITION WITH THE

20   DISTRICT JUDGE IN ASKING FOR SIGNIFICANT RESTRICTIONS ON WHAT

21   THE PLAINTIFFS CAN AND CAN'T INQUIRE ABOUT WITH RESPECT TO THIS

22   POLICY.  AND YOU'RE GOING TO NEED SOME GUIDANCE FROM THE TRIAL

23   COURT AS WELL.  AND YOU'RE GOING TO HAVE TO PREPARE WITNESSES

24   ABOUT WHAT THEY CAN AND CAN'T SAY.  I MEAN, THAT'S TRIAL

25   PREPARATION IN A CASE LIKE THIS.

1              BUT, YOU KNOW, PLAINTIFFS ARE GOING TO HAVE TO THINK

2    REALLY HARD ABOUT WHAT THEY'RE DOING HERE.  YOU SORT OF BOXED

3    THE INSURER INTO A CORNER.  YOU'VE TAKEN SOME STUFF OFF THE

4    TABLE.  THEY'RE NOT GOING TO BE ABLE TO GET UP AND WAIVE AROUND

5    PIECES OF SUPER SECRET PAPER AND SEALED YELLOW ENVELOPES.  THIS

6    IS THE OPINION FROM THE LAWYER.  AND BASED ON THIS WE DID

7    CERTAIN THINGS.  BUT WE'RE NOT GOING TO TELL YOU.

8              BUT I THINK THAT CREATES ALL KINDS OF PROBLEMS FOR

9    PLAINTIFF ABOUT OTHER THINGS OR HOW SOME OF THESE QUESTIONS ARE

10   FRAMED.  I MEAN, YOU MAY HAVE TO SAY, OTHER THAN ASKING THE

11   LAWYERS, DID YOU CONSULT ANY OTHER EXPERTS.  YOU MAY BE GIVING

12   THEM SOME OF THEIR DEFENSE BECAUSE THE INFERENCE MAY BE THAT

13   THEY DID TALK TO LAWYERS WITHOUT THEM SAYING IT.  I THINK

14   YOU'VE GOT ALL KINDS OF PROBLEMS ON THIS ISSUE.

15             MR. HAYES:  WOULD YOU LIKE ME TO ADDRESS THAT, YOUR

16   HONOR?

17             THE COURT:   NOT PARTICULARLY.  I HAVE THE DISCOVERY

18   ISSUE HERE.

19             MR. HAYES:  OKAY.

20             THE COURT:  AND I THINK THE CONFINES OF IT -- YOU

21   WANT TO KNOW WHAT'S IN THAT OPINION.  I DON'T THINK THEY'VE

22   WAIVED IT AT ALL.  I THINK MERELY SAYING WE TALKED TO A LAWYER

23   IS INSUFFICIENT TO WAIVE.  YOU ASKING PEOPLE -- AND THEN THE

24   INVOCATION OF THE PRIVILEGE CLEARLY ISN'T A WAIVER.  AND YOU

25   HAVE A VERY CLEAR -- A VERY CLEAR CONCESSION THAT I HAD SEVERAL

1    WEEKS AGO AND THAT I HAVE AGAIN IN THEIR PAPERS AND I HAVE HERE

2    AGAIN IN THE COURT FROM MS. REED THAT ATLANTIC WILL NOT MENTION

3    SEEKING OR OBTAINING ADVICE FROM THE LAWYER.

4            CORRECT?

5            MS. REED:  CORRECT.

6            THE COURT:  THE ACTION OF GOING OUT TO ASK FOR IT,

7    AND THEN THE ACT AND THE COMPANY'S RELIANCE AFTER HAVING

8    OBTAINED WHATEVER THIS ADVICE WAS.

9            I THINK IT'S JUST OUT OF THE CASE.  I DON'T THINK YOU

10   GET DISCOVERY ABOUT IT.  I THINK IF YOU INJECT IT BACK IN, YOU

11   MAY HAVE SOME SIGNIFICANT ISSUES.  BUT I THINK THIS IS -- THIS

12   IS A TRIAL ISSUE, AND THIS IS A TOUGH ONE.

13           OKAY.  BUT FOR THE LIMITED ISSUE THAT'S TEED UP IN

14   FRONT OF ME, I CERTAINLY HAVE NO BASIS TO FIND A WAIVER.  I

15   THINK THAT NOW THAT THE COMPANY HAS CLARIFIED ITS POSITION --

16   EXCUSE ME, THE DEFENSE HAS CLARIFIED ITS POSITION, I THINK IT

17   FALLS WELL WITHIN THE PARAMETERS OF THE -- OH, I HAD IT JUST IN

18   FRONT OF ME -- WHAT WERE THE CASES I CITED? -- OH, AETNA AND

19   ROCKWELL.

20           MS. REED:  ROCKWELL.

21           THE COURT:  YEAH.  I THINK THAT'S -- I THINK THAT'S

22   PRETTY BASIC.

23           OKAY.  ANYTHING ELSE?

24           MS. REED:  THANK YOU, JUDGE.

25           MR. HAYES:  JUST A -- JUST A PRACTICAL OR A

24

1   PROCEDURAL ISSUE.

2           THE COURT:  YEAH.

3           MR. HAYES:  IS THERE GOING TO BE AN ORDER OR --

4           THE COURT:  OH, YEAH.

5           MR. HAYES:  OKAY.

6           THE COURT:  YEP.

7           NOW, AM I OBLIGED UNDER RULE 37 TO DO SOMETHING WITH

8   RESPECT TO EXPENSES?  I ALWAYS HATE IT WHEN LAWYERS CALL IT

9   SANCTIONS BECAUSE IT -- RULE 37(A)(5) DOESN'T SAY ANYTHING

10  ABOUT SANCTIONS.

11          BUT 37(A)(5)(B) SAYS:

12          "THAT IF THE MOTION IS DENIED, THE COURT MUST

13          AFTER GIVING AN OPPORTUNITY TO BE HEARD

14          REQUIRE THE MOVANT OR THE ATTORNEY OR BOTH TO

15          PAY REASONABLE EXPENSES INCURRED IN OPPOSING

16          THE MOTION, INCLUDING ATTORNEY'S FEES."

17          I MUST NOT DO THAT IF THE MOTION WAS SUBSTANTIALLY

18  JUSTIFIED, OR THERE ARE OTHER CIRCUMSTANCES THAT MAKE AN AWARD

19  OF EXPENSES UNJUST.

20          SO, I THINK I AM OBLIGED TO AT LEAST HEAR FROM THE

21  PARTIES OR TAKE A SUBMISSION FROM THE PARTIES WITH RESPECT TO

22  FEES.  AND THIS WOULD BE ATLANTIC'S REQUEST FOR FEES.

23          ALTHOUGH CERTAINLY THE ISSUE THAT GOT TEED UP HERE IS

24  CONSIDERABLY NARROWED FROM THE ORIGINAL DISCOVERY DISPUTE,

25  WHICH GOT AMICABLY DISPOSED OF.

1          IT BECOMES MOOT, MS. REED, IF THE FIRM DOES NOT --

2     EXCUSE ME, IF ATLANTIC DOES NOT WISH TO RECOVER, OR IF YOU

3     DON'T THINK YOU CAN SATISFY EITHER THE -- OR YOU DON'T THINK

4     THAT THE PLAINTIFFS CAN ESTABLISH EITHER THE UNJUST

5     CIRCUMSTANCES OR SUBSTANTIAL JUSTIFICATION COMPONENTS.

6          I'M NOT GOING TO PUT YOU ON THE SPOT AND ASK YOU TO

7     MAKE A DECISION RIGHT NOW.  BUT I THINK WHAT I'M ENVISIONING IS

8     MY ORDER WILL GIVE YOU FOLKS A WEEK OR SO TO DECIDE WHETHER YOU

9     INTEND TO SEEK FEES.  I WON'T EVER ORDER FEES IF A PARTY

10    DOESN'T ASK.  BUT I THINK I'M OBLIGED TO ASK WHETHER YOU WANT

11    IT.  AND, THEN, OF COURSE, I WILL GIVE PLAINTIFFS AN

12    OPPORTUNITY TO RESPOND, EITHER TO THE 37(A)(5) ISSUE OR THE

13    AMOUNT THAT IS ITSELF SOUGHT.  BUT I THINK I'M OBLIGED TO DO

14    THAT.

15          BUT GIVE THAT SOME THOUGHT.  AND YOU CAN HAVE A

16    MEANINGFUL DISCUSSION ON THAT, RECOGNIZING -- AM I CORRECT? --

17    THERE'S ANOTHER DISCOVERY MOTION TEED UP COMING DOWN THE ROAD?

18          MR. HAYES:  NOT YET, YOUR HONOR.

19          WE -- MAY I SPEAK?

20          MS. REED:  I'LL JUST SAY, YOUR HONOR. WE'RE

21    CONFERRING TODAY ON THE SCOPE OF 30(B)(6) CORPORATE

22    REPRESENTATIVE NOTICES.

23          THE COURT:  YEAH, I THOUGHT -- BUT I THOUGHT THERE

24    WAS SOME -- IS THAT WHAT I JUST ISSUED A SCHEDULING ORDER ON?

25          MS. REED:  OH, YOUR HONOR, WE RESOLVED THOSE ISSUES.

1           THE COURT:  OH DID WE?

2           MS. REED:  WITHOUT FURTHER BRIEFING.

3           THE COURT:  OH, HAPPY -- HAPPY DAY.

4           MS. REED:  YES, SIR.

5           BUT THE NEXT ISSUE UP THAT WE'VE GOT TO TALK ABOUT

6    TODAY WILL RELATE TO THE SCOPE OF THE 30(B)(6) NOTICES THAT

7    EACH PARTY HAS SERVED ON THE OTHER.  WE HAVE SUBSTANTIAL

8    OBJECTIONS THAT HAVE BEEN ASSERTED.  I ANTICIPATE BASED UPON

9    DISCUSSIONS WITH MR. HAYES THAT IF WE'RE NOT ABLE TO REACH FULL

10   AGREEMENT ON THOSE, WE'LL BE SUBMITTING THEM THROUGH THE EMAIL

11   PROCESS AS QUICKLY AS WE CAN.

12           THE COURT:  WHY?

13           I'M SORRY.  WHAT DID I ISSUE A SCHEDULING ORDER ON?

14           MS. REED:  YOU ISSUED A SCHEDULING ORDER ON AN EMAIL

15   SUBMISSION THAT ATLANTIC MADE THAT HAD TO DO WITH COMPELLING

16   THE PLAINTIFFS TO PRODUCE THE REST OF THEIR DAMAGE DOCUMENTS.

17           THE COURT:  RIGHT.

18           MS. REED:  PROTECTION ON A PARTICULAR DEPOSITION THAT

19   WE'RE GOING TO PRODUCE THE WITNESS ON.  SOME PARTICULAR ENTRIES

20   ON THE AON PRIVILEGE LOG.  AND A FOURTH ISSUE THAT IS JUST NOT

21   OCCURRING TO ME AT THE MOMENT -- ANTICIPATION OF LITIGATION,

22   YOUR HONOR.  WE'VE RESOLVED THOSE ISSUES WITH COUNSEL.

23           THE COURT:  OKAY.

24           AND --

25           (PAUSE IN PROCEEDINGS.)

1           MR. HAYES:  MAY I BE HEARD BRIEFLY, YOUR HONOR?

2           THE COURT:  SURE.

3           MR. HAYES:  THE EMAIL SUBMISSION WAS A PROPOSED

4  SCHEDULE FOR RESOLVING ANY OTHER REMAINING DISCOVERY DISPUTES.

5  THERE'S OTHER DISCOVERY OUTSTANDING THAT HAS NOT BEEN RESOLVED.

6  WE INTEND TO CONTINUE TO MEET AND CONFER IN AN ATTEMPT TO

7  RESOLVE THEM.  BUT TO THE EXTENT WE CAN'T, THE SCHEDULE NOW

8  SAYS THAT MOTIONS WILL BE FILED BY MAY 15TH.  AND THERE'S A

9  FOLLOWING SCHEDULE --

10          THE COURT:  YES.

11          MR. HAYES:  -- FOR OPPOSITIONS AND REPLIES.

12          THE COURT:  OKAY.

13          SO, YEAH -- I MEAN, YOU CAN DO THAT.  I MEAN, IF YOU

14  WANT TO GET ME ON THE PHONE BEFORE THAT -- I MEAN, I HAVE

15  LIMITED AVAILABILITY, AND I JUST DON'T GO RUNNING TO THE PHONES

16  EVERY TIME YOU ALL CALL.  YOU SORT OF ARE LOSING THAT

17  PRIVILEGE.

18          AND IF YOU'VE GOT A LEGITIMATE DISPUTE YOU HAVEN'T

19  BEEN ABLE TO WORK OUT, I MEAN, JUST FILE YOUR PAPERS.  THAT WAS

20  MY INTENT HERE.

21          MS. REED:  AND, YOUR HONOR, THE ISSUE IS STRICTLY

22  TIMING.  THE PARTIES HAVE BEEN WORKING VERY HARD TO GET --

23          THE COURT:  I KNOW.

24          MS. REED:  -- TO GET AN INORDINATE NUMBER OF

25  DEPOSITIONS SCHEDULED BETWEEN NOW AND JUNE THE 2ND.

1          THE COURT:  YEAH.

2          MS. REED:  AND WE'VE BEEN WORKING TOGETHER TO TRY TO

3   NARROW THE SCOPES OF OBJECTIONS ABOUT 30(B)(6) CORPORATE

4   REPRESENTATIVES.

5          THE COURT:  OKAY.

6          MS. REED:  BUT IT'S AN ISSUE OF POTENTIALLY HAVING TO

7   SEEK PROTECTION AND, THEREFORE, NOT -- AHEAD OF TIME AND NOT

8   COMING TO A DEPOSITION STRICTLY ASSERTING OBJECTIONS THAT

9   HAVEN'T BEEN RESOLVED.

10         THE COURT:  WELL, IT'S AN INTERESTING CASE.  AND

11  DON'T MISCONSTRUE ANY OF MY COMMENTS.  THE LAWYERS HERE ARE

12  GREAT.  YOU KNOW, EVERYTHING IS BEING DONE IN A FIRST-CLASS

13  MOTION.

14          BUT FIGURE IT OUT AND DON'T EXPECT TOO MANY

15  SHORT-CUTS.  YOU ARE AMONG THE SEVERAL HUNDRED, THOUSAND -- I

16  DON'T KNOW HOW MANY CASES I HAVE ASSIGNED TO ME.  AND NOT

17  ALWAYS -- NOT ALWAYS EASY TO GET THE SHORT-CUT.

18         OKAY.

19         YES, SIR?

20         MR. HAYES:  MAY I BE HEARD ON THE EXPENSES ISSUE VERY

21  BRIEFLY -- UNLESS YOU PREFER TO WAIT FOR THE BRIEFING.

22         THE COURT:  WHAT DO YOU MEAN BY BRIEFLY?

23         MR. HAYES:  TWO MINUTES.

24         THE COURT:  OKAY.

25         I MEAN, IF YOU'RE GOING TO TELL ME YOU'RE

1   SUBSTANTIALLY JUSTIFIED OR THAT THE CIRCUMSTANCES ARE UNJUST,

2   I'M STILL GOING TO SOLICIT THEIR POSITION ON THIS.  BECAUSE --

3           MR. HAYES:  I --

4           THE COURT: -- BECAUSE THAT'S AN ISSUE I HAVE TO

5   DECIDE.  AND I DON'T THINK I CAN DECIDE IT SITTING HERE.

6           MR. HAYES:  THAT'S FAIR ENOUGH.

7           I JUST WANTED TO -- I WANTED TO RECITE THE HISTORY OF

8   THIS.

9           THE COURT:  OH.

10          MR. HAYES:  BECAUSE I ACTUALLY THINK THAT WAS MY

11  POSITION THAT THIS IS A RULE 26 ISSUE.  AND THE PROPOSED ORDER

12  THAT I DRAFTED I THINK WAS VERY, VERY SIMILAR TO THE RESULT

13  TODAY.

14          SO -- BUT I CAN -- I CAN --

15          THE COURT:  WELL, IT MAY BE -- AND IT MAY BE THAT

16  YOU'RE SUBSTANTIALLY JUSTIFIED.  AND IT MAY BE THAT THERE'S

17  SOMETHING UNJUST.  AND IT MAY BE THAT THEY WERE FLIP-FLOPPING

18  AND WOULDN'T GIVE IT TO YOU.  IT MAY BE THAT YOU WERE

19  OVERREACHING.  I DON'T KNOW.  I DON'T KNOW.  AND I'M NOT GOING

20  TO GIVE YOU A SHOOT-FROM-THE-HIP ANSWER ON THIS BECAUSE -- YOU

21  KNOW, I DON'T THINK -- I DON'T THINK THAT'S RIGHT.  AND IF YOU

22  WANT TO TALK TO BE ABOUT DOCUMENTS THAT YOU PREPARED BUT DIDN'T

23  FILE WITH THE COURT, BUT YOU WANT ME TO KNOW ABOUT THEM, IT

24  DOESN'T -- YOU KNOW, WHATEVER YOUR NEGOTIATING PROPOSALS WERE,

25  YOU KNOW, I'LL LOOK AT IT.  BUT I'M NOT -- I'M NOT GOING TO SIT

30

1  HERE AND TAKE COURT TIME ON THAT.

2        MR. HAYES:  NO, NO, I UNDERSTAND.  I JUST WANTED YOU

3  TO --

4        THE COURT:  SO -- OKAY.

5        THAT'S WHY I'M NOT TRYING TO SHUT YOU DOWN.  BUT I'M

6  TRYING TO DO IT IN AN ORDERLY WAY.

7        MR. HAYES:  UNDERSTOOD.

8        THE COURT:  OR JUST WORK WITH THEM SO YOU DON'T HAVE

9  TO GO THROUGH THIS -- OR GIVE THEM A THOUSAND BUCKS AND SEE

10  WHAT HAPPENS.

11       MR. HAYES:  UNDERSTOOD.

12       THANK YOU.

13       THE COURT:  THAT ACTUALLY -- THAT ACTUALLY HAPPENS SO

14  MANY TIMES THAT THERE'S AN ACCOMMODATION TO RESOLVE THE ISSUE

15  OR  -- OR IF SOMEONE TAKES A HARD LINE, IT SOMETIMES COMES BACK

16  TO BITE THEM LATER.  AND IF THERE'S GOING TO BE MORE MOTION

17  PRACTICE COMING --

18       MR. HAYES:  WELL, I GUESS I -- COULD I JUST -- 30

19  SECONDS.

20       THE COURT:  30 SECONDS.

21       MR. HAYES:  I GUESS -- I GUESS WHAT I'LL --

22       THE COURT:  BECAUSE I'M ALSO ON CRIMINAL -- I'M ALSO

23  ON CRIMINAL DOCUMENT DUTY TODAY.  AND I HAVE AN FBI AGENT

24  SITTING IN MY OFFICE.

25       MR. HAYES:  THE ONLY THING I'LL SAY IS I DO -- I DO

1   DISPUTE THE CHARACTERIZATION AS THE MOTION BEING DENIED.

2   BECAUSE AT THE TIME THE MOTION WAS FILED -- AND WE ARE -- WE

3   CAN ARGUE THIS IN THE PAPERS -- THE ISSUE WAS IN THE CASE.  I

4   EXPLICITLY ASKED WHETHER IT WAS IN THE CASE, AND I GOT ANSWERS

5   THAT VERY CLEARLY COMMUNICATED TO ME THAT WE WERE NOT SECURE

6   THAT THIS ISSUE COULD NOT BE PRESENTED TO THE JURY.

7           SO, I THINK THAT THE ISSUE NOT BEING IN THE CASE WAS

8   SOMETHING THAT DEVELOPED TODAY.

9           SO, THERE ARE CASES IN WHICH -- AND WE CAN PRESENT

10  THEM -- A RESOLUTION INVOLVES PRETTY MUCH EXACTLY WHAT YOUR

11  HONOR IS DOING.

12          SO, I WOULD JUST IN TERMS OF PROCEDURALLY, I DON'T

13  THINK IT'S ACCURATE TO CHARACTERIZE THE RESULT AS A DENIAL

14  TRIGGERING 37.  BUT WE CAN ADDRESS THAT IN THE PAPERS IF YOU

15  WOULD PREFER THAT.

16          THE COURT:  YOU CAN SPEND AS MUCH TIME ON IT.  YOU

17  CAN HAVE AS MANY PEOPLE IN YOUR OFFICE ON IT.  YOU CAN SPEND AS

18  MUCH TIME ON IT.  YOU CAN MAKE THEM GO THROUGH THAT EXERCISE AS

19  WELL.

20          AND BY THE WAY AT THE END I'M NOT GOING TO -- LET'S

21  SAY THERE IS A FEE ORDER AND A FEE SHIFT, IT'S NOT AUTOMATIC.

22  IT'S ME DECIDING WHAT IS REASONABLE, THAT IS ME SITTING IN

23  EQUITY.  AND I MAY WELL HAVE A PROBLEM.  AND I MAY -- THIS MAY

24  WELL TAKE 20, 30 LAWYER HOURS AND END UP IN A NO BILL.

25          SO, THAT'S WHY BOTH OF YOU NEED TO MAKE SOME

1  DECISION.

2          BUT THIS IS -- BUT THIS IS INTENDED TO BE A DETERRENT

3  TO BRINGING SORT OF RUN-OF-THE-MILL AND EASILY RESOLVABLE

4  DISCOVERY DISPUTES INTO A FEDERAL COURT.  OKAY.  THIS IS

5  SUPPOSED TO BE SELF-REGULATING.

6          AND THIS IS NOT THE KIND OF ACTION THAT I SOMETIMES

7  SEE OF A HACK LAWYER DOING SOMETHING AGAINST THE BIG FIRM, OR

8  THE BIG FIRM CRUSHING DOWN SOME HACK LAWYER OR, YOU KNOW,

9  SOMEBODY JUST NOT SHOWING UP FOR DEPOSITIONS WHERE IT'S CLEAR

10  THAT I NEED TO COME IN AND TAKE ACTION TO REGULATE AND POLICE

11  DISCOVERY.  THIS IS FIRST CLASS LAWYERS DOING FIRST CLASS WORK

12  BUT STILL NOT ABLE TO REACH SOME FUNDAMENTAL DECISIONS ABOUT

13  WHAT THIS CASE LOOKS LIKE AS WE GET TO TRIAL.

14          AND, SO, THAT'S WHY I THINK RULE 37 HAS DIFFERENT

15  IMPORT HERE ON THE ISSUES THAT I HAVE HERE.  AND, YOU KNOW, I

16  COULD JUST CLEARLY PASS ON THIS ISSUE AND NOT HAVE TO SPEND

17  MORE OF MY TIME READING YOUR FANTASTIC PAPERS ON A DERIVATIVE

18  ISSUE.  SO, I STRONGLY ENCOURAGE YOU TO HAVE A DISCUSSION, TALK

19  TO CLIENTS, AND FIGURE OUT WHETHER THIS IS EVEN SOMETHING YOU

20  WANT TO PURSUE.

21          BUT I THINK -- I THINK I'M OBLIGED IS THE WAY THE LAW

22  READS RIGHT NOW, AND WE'LL SEE WHERE IT GOES.

23          MR. HAYES:  THANK YOU, YOUR HONOR.

24          THE COURT:  NICE JOB BY ALL OF YOU.

25          THANK YOU.

1                    MS. REED:  THANK YOU, YOUR HONOR.

2                    THE CLERK:  COURT IS ADJOURNED.

3                    (PROCEEDINGS CONCLUDED 9:54 A.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

34

1

2                        C E R T I F I C A T E

3

4

5          I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
     FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE
6    ABOVE-ENTITLED MATTER.

7

8    /S/ DOROTHY BABYKIN                       5/6/17
     _____       _____
9    FEDERALLY CERTIFIED TRANSCRIBER           DATED
     DOROTHY BABYKIN
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25