MARC J. SHRAKE (SBN 219331)
 mjs@amclaw.com
ANDERSON, MCPHARLIN & CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623
Telephone: (213) 236-1691
Facsimile: (213) 622-7594

MICHAEL KEELEY *(Pro Hac Vice)*
 michael.keeley@strasburger.com
TONI SCOTT REED *(Pro Hac Vice)*
 toni.reed@strasburger.com
CARLA C. CRAPSTER *(Pro Hac Vice)*
 carla.crapster@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

Attorneys for Defendant
Atlantic Specialty Insurance Company

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, *et al.*,<br><br>          Plaintiffs,<br><br>vs.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>          Defendant. | CASE NO. 2:16-cv-4435-PA-MRW<br><br>**ATLANTIC SPECIALTY INSURANCE COMPANY'S REQUEST FOR ATTORNEY'S FEES IN CONNECTION WITH PLAINTIFFS' MOTION TO COMPEL** |

## I. Background

The plaintiffs moved to compel the production of a legal coverage opinion that Atlantic Specialty Insurance Company ("Atlantic") obtained to thoroughly analyze the coverage issue that is now disputed in this lawsuit. Atlantic contended from the beginning that the opinion letter was protected by the attorney-client privilege and that it would not put the substance of it at issue in the case. Atlantic made clear to the plaintiffs on multiple occasions, including in a sworn interrogatory response, that it would not assert the advice-of-counsel defense, which Atlantic understood *would* have put the opinion at issue in the case. *See* Declaration of Carla C. Crapster filed in support of this motion and incorporated herein by reference ("Crapster Declaration"). The plaintiffs seemed not to believe Atlantic's assertion that it would not assert this defense (see Joint Stipulation (Doc. 44) at p. 19, noting that the defense was "technically in play" for trial despite having just quoted Atlantic's counsel's assertion that it would not assert this defense at trial). The plaintiffs also contended that even without the advice-of-counsel defense, Atlantic would still waive the privilege that protected the letter if it mentioned the letter at trial in any way. (Doc. 44 at p. 14-19). This position was contrary to the law, and ignored the *importance* of the attorney-client privilege. *See, e.g., Garcia v. Progressive Choice Ins. Co.*, 2012 U.S. Dist. LEXIS 105932, at *16 (S.D. Cal. 2012) ("any waiver of the attorney-client privilege is to be narrowly construed"); *S. Cal. Gas Co. v. Pub. Utils. Com*, 784 P.2d 1373, 1381 (Cal. 1990). Although Atlantic did not believe the plaintiffs' position was correct, it nonetheless stated to the Court during the telephonic hearing on April 10, 2017, that it would agree *not* to mention the coverage opinion at trial. After that hearing, Atlantic's and plaintiffs' counsel worked to create a stipulation that would memorialize the agreement not to reference the coverage opinion at trial.

At this point, Atlantic ran into a cement roadblock with the plaintiffs. The plaintiffs first took the position that they would not agree to a stipulation resolving this

1
**ATLANTIC SPECIALTY INSURANCE COMPANY'S REQUEST FOR ATTORNEY'S FEES**

issue unless the plaintiffs could reserve the right to mention the coverage opinion at trial. Crapster Declaration at ¶¶ 3-6. They stated that if they did so, the stipulation barring any mention of the coverage opinion at trial would be waived and the parties would take up this waiver-of-the-privilege dispute then. Atlantic did not initially agree to this request as it meant merely delaying the dispute. *Id.* ¶ 6. But on consideration, Atlantic nevertheless *agreed* as long as the parties could agree on what type of statements by the plaintiffs would waive the stipulation. *Id.* ¶ 10. Atlantic's concern was that the plaintiffs would attempt to imply to the jury that Atlantic had not consulted any outside authorities whatsoever regarding the coverage dispute without giving Atlantic an opportunity to set the record straight and let the jury know that it *had* consulted an attorney. *Id.* For example, Atlantic expected the plaintiffs to ask questions such as: "You did not consult an outside expert did you?" Or perhaps: "You did not consult any outside vendors did you?" This would then lead to a dispute over whether an attorney fit the definition of an "outside expert" or "vendor" or "consultant" or whatever other words the plaintiffs chose besides "attorney." Atlantic made clear that the plaintiffs *could* state that Atlantic had not consulted specific types of experts (for example, a Middle East expert), but that the plaintiffs would waive the stipulation by asking questions that implied Atlantic had consulted *no one*. *Id.* This type of language gamesmanship would allow the plaintiffs to cast Atlantic as negligent for not seeking the advice of any expert or outside authority or third-party vendor without technically waiving the stipulation, but Atlantic would be left frustrated and helpless—unable to tell the jury what really happened. There was no reason whatsoever for the plaintiffs to force Atlantic into this corner. But the plaintiffs did not agree to any of Atlantic's proposed language that would have alleviated this concern.

After extensive meet-and-confers on this issue, the plaintiffs finally backtracked and decided that they would *not* need to reserve the right to mention the coverage opinion at trial and would agree that the stipulation barred both parties from any such

ATLANTIC SPECIALTY INSURANCE COMPANY'S REQUEST FOR ATTORNEY'S FEES

mention. *Id.* ¶ 11. But this offer had a catch. The plaintiffs' counsel stated that they would agree that neither party would mention the coverage opinion at trial, but only if Atlantic would agree that the plaintiffs could argue—if a witness accidentally mentioned the opinion—that the jury should infer from Atlantic's invocation of the attorney-client privilege that the coverage opinion is harmful to Atlantic's position. *Id.* Atlantic could not agree as that argument would have been contrary to the law. *Id.* ¶ 12. As Atlantic argued to the court in its Supplemental Brief (Doc. 68) on the plaintiffs' motion to compel, there is case law holding that it is improper to draw an adverse inference from reliance on the attorney-client privilege. *See, e.g,, Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 226 (2d Cir. 1999) (holding it was improper to impose a sanction of an adverse inference for the decision not to disclose legal advice because "[t]he law affording the attorney-client privilege was designed to encourage Nabisco to opt in favor of seeking legal advice"); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) (citing Nabisco with approval).

 Atlantic could not agree to let the plaintiffs make this improper argument. As a result, the parties were at an impasse and the plaintiffs persisted in their request for the Court to rule on the waiver issue.

## II. Atlantic is Entitled to Fees Incurred After April 10; There Is No Justification for the Plaintiffs' Positions Taken After That Date

 Atlantic obviously incurred significant fees in drafting its response to the plaintiffs' motion to compel and in making the initial argument on it. But Atlantic is not seeking those fees here. Instead, it seeks only the fees that it incurred after April 10, 2017, the date of the telephonic hearing in which Atlantic agreed not to mention the coverage opinion, which put the parties inches away from resolution of this dispute. From that point, as discussed above, the plaintiffs went on to insist that they should be able to reserve the right to mention the coverage opinion at trial and that they should be able to make the improper legal argument to the jury that the decision not to

3

**ATLANTIC SPECIALTY INSURANCE COMPANY'S REQUEST FOR ATTORNEY'S FEES**

produce the coverage opinion merited an adverse inference regarding its contents. Atlantic spent significant time on these frivolous disputes, and none of the plaintiffs' positions taken after that point were "substantially justified," which, as the Court knows, is the only way the plaintiffs can avoid paying Atlantic's attorney's fees under Rule 37(a)(5) ("If the motion is denied, the court … *must*, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees … [unless] the motion was substantially justified or other circumstances make an award of expenses unjust.") (emphasis added). "The burden is on the losing party to affirmatively demonstrate that its discovery conduct was substantially justified." *Am. Gen. Life Ins. Co. v. Futrell*, No. 2:12-cv-00053-GMN-NJK, 2012 U.S. Dist. LEXIS 148471, *1 (D. Nev. Oct. 16, 2012). "A request for discovery is 'substantially justified' under Rule 37 if reasonable people could differ on the matter in dispute." *Blair v. CBE Grp., Inc.*, No. 13cv134-MMA (WVG), 2014 U.S. Dist. LEXIS 131228, at *4 (S.D. Cal. Sep. 16, 2014).

Here, reasonable people could not differ on the issues over which Atlantic and the plaintiffs continued to argue after the telephonic hearing on April 10, 2017: whether the plaintiffs should be able to backtrack and reserve the right to mention the coverage opinion at trial and moot the parties' (and the Court's) efforts to reach resolution on this issue *now*, and whether the plaintiffs should be able to argue to the jury that Atlantic's invoking the attorney-client privilege merited an adverse inference about the coverage opinion's contents. Argument over these issues was a waste of Atlantic's, and the Court's, time and resources.

### III. Atlantic Seeks Reasonable Fees under the Lodestar Method

Courts generally use the "lodestar" approach to calculate the proper fee amounts for fees owed under Rule 37. *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, No. C-06-03359-JF-(RS), 2009 U.S. Dist. LEXIS 107777, *3-4 (N.D. Cal. Oct. 29, 2009). This

4

ATLANTIC SPECIALTY INSURANCE COMPANY'S REQUEST FOR ATTORNEY'S FEES

requires multiplying "the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Chloe SAS v. Sawabeh Info. Servs. Co.*, No. CV-11-04147-MM-(MANx), 2015 U.S. Dist. LEXIS 186838, *15 (C.D. Cal. June 22, 2015). Here, the hourly rates for Atlantic's attorneys who incurred fees in connection with this dispute are: $315 for Toni Scott Reed, and $295 for Carla Crapster. (Atlantic also incurred fees by Michael Keeley in connection with these issues, whose rate is $350 per hour, but Atlantic is not seeking Mr. Keeley's fees in this motion.) These rates are significantly less than what is considered reasonable in California. *Tchoboian v. FedEx Office & Print Servs.*, No. SA CV10-01008 JAK (MLGx), 2014 U.S. Dist. LEXIS 184376, *26 (C.D. Cal. Mar. 25, 2014) (noting that in Los Angeles hourly rates between $485 and $750 are common and that $375 was a reasonable hourly rate for an attorney with 10 years of experience). Ms. Reed's and Ms. Crapster's respective experience is outlined in Exhibits 8 and 9 to Ms. Crapster's Declaration filed herewith.

As outlined in more detail in Ms. Crapster's Declaration, Atlantic has used very conservative estimates for the amount of time spent on this waiver-of-privilege dispute since April 10, 2017. Atlantic estimates that Ms. Crapster spent 5.1 hours on this issue since April 10, 2017, and that Ms. Reed has spent 11.5 hours on this issue since April 10, 2017. Ms. Crapster's Declaration filed in support of this motion sets forth the detail of the fees incurred since April 10, 2017 in connection with the waiver-of-privilege dispute. In total, Atlantic is seeking only $5,127 in fees, which it believes is substantially less than the amounts actually incurred in connection with the continuing discussions regarding this privilege dispute and a possible stipulation to resolve it. The very small amount of hours expensed on these issues is self-evidently reasonable.

5
**ATLANTIC SPECIALTY INSURANCE COMPANY'S REQUEST FOR ATTORNEY'S FEES**

| | | |
|---|---|---|
| 1 | DATED: May 15, 2017 | MARC J. SHRAKE |
| 2 | | ANDERSON, McPHARLIN & CONNERS LLP |
| 3 | | -and- |
| 4 | | MICHAEL KEELEY *(Pro Hac Vice)* |
| 5 | | TONI SCOTT REED *(Pro Hac Vice)* |
| 6 | | CARLA C. CRAPSTER *(Pro Hac Vice)* |
| | | STRASBURGER & PRICE, LLP |

By:  /s/ *Michael Keeley*
      Michael Keeley

Attorneys for Defendant ATLANTIC SPECIALTY INSURANCE COMPANY

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

6
8951420.1/SP/15247/0131/051517
ATLANTIC SPECIALTY INSURANCE COMPANY'S REQUEST FOR ATTORNEY'S FEES