LUCIA E. COYOCA (SBN 128314)
  lec@msk.com
VALENTINE A. SHALAMITSKI (SBN 236061)
  vas@msk.com
DANIEL M. HAYES (SBN 240250)
  dmh@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone:  (310) 312-2000
Facsimile:  (310) 312-3100

Attorneys for Plaintiffs
Universal Cable Productions LLC and
Northern Entertainment Productions LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | CASE NO. 2:16-cv-4435-PA-MRW<br><br>**PLAINTIFFS' MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**<br><br>Time:    9:30 a.m.<br>Date:    May 24, 2017<br>Judge:   Hon. Michael R. Wilner<br><br>File Date:           June 20, 2016<br>Discovery Cutoff:    June 2, 2017<br>Pre-Trial Conf.:     June 16, 2017<br>Trial Date :         July 25, 2017 |

8883627.3
MITCHELL
SILBERBER

**MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**

## I. Introduction

Plaintiffs Universal Cable Productions LLC and Northern Entertainment Productions LLC (collectively "Universal"), seek to compel the production of claims that have been submitted to Atlantic involving losses suffered by Atlantic insureds as a result of violence perpetrated by terrorist groups since the events of 9/11. The central issue in this case is interpretation of the war exclusions in the policy issued by defendant Atlantic Specialty Insurance Company ("Atlantic") to Universal ("the Policy"), and the import of the lack of a terrorism exclusion. To the extent Atlantic responded to other claims involving a terrorist attack differently than how Atlantic responded to the Dig claim, that differential response is potentially highly relevant to the issues in dispute here.

In the insurance industry, the distinction between terror (with the use of terrorism exclusions) and war (with the use of war exclusion) became acute and solidified after the 9/11/2001 terrorist attacks. Among other things, despite widespread references to the horrific events of 9/11 as "war," the insurance companies did *not* invoke war exclusions to deny claims. *See* ECF No. 61-1, p. 13. Universal has sought the production of documents relating to other claims involving losses suffered by Atlantic insureds as a result of violence perpetrated by terrorist groups. Atlantic has consistently complained that the search for and production of documents relating to other claims involving terrorism would take weeks, and that such a search is too onerous and burdensome to require Atlantic to undertake. However, during the past week, May 8—11, Universal took several depositions of Atlantic witnesses, including the Atlantic Rule 30(b)(6) designee as to Atlantic's efforts in this case to search for and produce responsive documents. These depositions revealed pervasive flaws in Atlantic's discovery efforts.

## II. Brief Background of the Case

This Court is familiar with the salient facts of this case. Universal is suing its former production insurer for the extra expenses incurred in July 2014 when it

moved the production of its television series out of Israel for the safety of the cast and crew, after the terrorist group Hamas started to indiscriminately launch rockets into Israel, terrorizing Israeli population. The Policy covers loss due to acts of terrorism, and does not contain a terrorism exclusion. However, Atlantic denied Universal's claim, contending that Universal's loss was excluded by four "war" exclusions in the Policy. Universal is suing Atlantic for (1) breach of insurance contract, and (2) breach of the implied covenant of good faith and fair dealing.

### III. Brief Summary of Atlantic's Deficient Responses And ESI Searches

Universal served a first set of RFPs and Interrogatories on October 5, 2016. Hayes Decl., ¶ 2. After extensive meeting and conferring, four issues remained, and Universal filed a motion to compel regarding those issues, which ultimately were resolved by the court and through stipulation. ECF Nos. 44, 69, 89.

Universal served a second set of RFPs and Interrogatories, and first set of Requests for Admission on February 2, 2017. Hayes Decl., ¶ 4. Atlantic objected to many of the discovery requests, including those directed to Atlantic's past application of terrorism or war exclusions dating back to 9/11, asserting the search would be unduly burdensome, and would take "many months." *Id.*, Exs. 3, 6, 7. Throughout the meet and confer process, Atlantic maintained that its search efforts, which involved asking individuals at Atlantic whether the war exclusions had previously been applied, were sufficient for discovery purposes in this case. *Id.*, ¶ 9, Ex. 13.

However, during recent depositions, Universal received different information. On May 8, Universal took the deposition of Pamela Johnson, Atlantic's Vice President who primarily investigated Universal's claim before it was denied. *Id.*, ¶ 21 and Ex. 15. On May 10, Universal took the deposition of Aaron Stone, Atlantic's 30(b)(6) designee on, among others, Topics Nos. 54 and 55 regarding Atlantic's search for and collection of documents. *Id.* ¶ 22 and Ex. 16. On May 11, Universal took the deposition of Sean Duffy, Atlantic's Senior

Vice President & Chief Claims Officer. *Id.* ¶ 23 and Ex. 17. Testimony at each of these depositions revealed that Atlantic's production and search for responsive documents has been woefully inadequate, as outlined below.

### IV. Atlantic Improperly Withheld Critical Documents Relating To Past Claims Involving Terrorism, Terrorists, And Terrorism Exclusions

#### A. Universal's Requests are Relevant and Critical to Its Claims

Interrogatory 22 asks Atlantic to: "IDENTIFY each instance (including, without limitation, in the context of litigation) since January 1, 2001, in which ATLANTIC [] has characterized Hamas as a terrorist organization or taken the position that certain acts by Hamas constitute acts of terrorism," and RFP No. 48 asks for documents relating to any such instance. Interrogatory 23 asks Atlantic to: "IDENTIFY all insurance claims since January 1, 2001, … that relate to (1) Hamas, or (2) any conflict between Israel and Hamas and/or Palestinians, on the other hand." RFPs Nos. 41, 42, 43, 44, 48, and 49 are all targeted at documents relating to, *inter alia,* instances in which Atlantic compensated insureds for losses caused by terrorism, for the period January 1, 2001, to the present.

Universal is entitled to know how Atlantic has handled claims involving losses suffered as a result of violence perpetrated by terrorist groups against Atlantic insureds in the past. If another of Atlantic's insureds submitted a claim for a loss it suffered because of a terrorist attack, and Atlantic honored the claim rather than denying it on the basis of the war exclusion, such evidence potentially could demonstrate that Atlantic acted inconsistently in its denial of the Dig claim than its treatment of other insureds. *See Young v. Liberty Mut. Ins. Co.*, 1999 U.S. Dist. LEXIS 6987, at *15-16 (D. Conn. Feb. 16, 1999) ("To facilitate a full understanding of the meaning of an insurance policy's terms, many courts have allowed discovery of … other insureds' claims.") (citations omitted) (emphasis added). Atlantic's own claims supervisor, Pamela Johnson, recognized the importance of such consistency, noting that they wanted to make sure the

entertainment division "takes a position consistent with the rest of OneBeacon in interpreting the exclusion for warlike action by a military force. I was thinking that Tech or other business units might also have claims arising from the Israeli/Hamas conflict." Hayes Decl., Ex. 14.

Undoubtedly, Atlantic will argue that other claims involving other terrorist groups are factually different than the Dig claim and the Hamas/Israel hostilities in the summer of 2014. However, Universal should have the opportunity to review such other claims and make a determination for itself as to whether those other claims in fact are truly different than the Dig claim.

There are a myriad of examples of terrorist activities over the years since 9/11 that potentially could have resulted in a claim being made to Atlantic. For example, if the Nigerian terrorist group Boko Haram waged a series of ongoing attacks in the city of Abuja, Nigeria, resulting in the destruction of a warehouse of goods owned by an Atlantic insured, and Atlantic covered the claim notwithstanding a war exclusion in the policy, that would be relevant to the issues in dispute here. Similarly, if the Filipino terrorist group Abu Sayyaf ended up damaging a business operation owned by an Atlantic insured during the bombings and hostilities in Davao City in the Philippines, and Atlantic paid out on the claim notwithstanding a war exclusion in that insured's policy, that decision would be relevant to the issues in dispute here. Indeed, there well could be another terrorist attack involving Hamas that resulted in a claim being made by an Atlantic insured and paid by Atlantic, notwithstanding a war exclusion in the policy.

To the extent Atlantic has covered claims involving attacks by terrorist groups which have inflicted damage on other Atlantic insureds, Universal is entitled to know the facts and circumstances of those claims. It is also possible that Atlantic could have invoked a terrorism exclusion in response to claims such as the ones described herein, but not the war exclusion, which would also be relevant here.

### B. Atlantic's Purported Burden Is Illusory, and Its Searches Have Been Inadequate

In its response to RFP 48, Atlantic claimed an electronic search for documents that would allow it to respond to these interrogatories and RFPs would "take many months to run" and that it was "not aware" of any responsive documents. Specifically, stated:

> Atlantic has conducted inquiries of the Vice President of Claims of OneBeacon Entertainment, the Chief Claims Officer for all of OneBeacon Insurance Group, the Senior Vice President of Claims for Atlantic, and the Chief Claims Counsel of OneBeacon's Insurance Group's Claims Legal Group to determine whether they could recall any instances in which ATLANTIC or ONEBEACON characterized Hamas as a terrorist organization or took the position that certain acts by Hamas constitute acts of terrorism. None of those persons could recall any such instances.

Hayes Decl. Ex. 4 (note and emphasis in original). Universal's Request 41 sought the production of: "All DOCUMENTS that RELATE to a decision by ATLANTIC or ONEBEACON to deny coverage under any of its insurance policies, based on the application of policy terms that exclude loss caused by terrorism, for the time period January 1, 2001 to the present." Atlantic responded with a lengthy description of its purported burden in searching for documents responsive to the Request, and again refused to produce responsive documents.[1]

Indeed, through the meet and confer process, Atlantic's counsel has insisted that to search its internal document system ("Image Now") or its claims database ("CWS") would take an impossibly long time. Hayes Decl., ¶ 9 and Exs. 3, 4, 15. Atlantic's counsel has also resisted all requests by Universal that it engage a discovery vendor to carry out the searches. At the 30(b)(6) deposition, Universal

---

[1] It claimed the only way to respond would be "to manually review each of its claim files created over the last sixteen years to determine whether the claim was denied on the grounds that a terrorism exclusion applied" or alternatively, to "search *all* documents in its database for the word 'terror,' which would "take many months to run, not including the time it would take a human to review the documents returned as responsive." Hayes Decl. Ex. 4 (responses to RFPs Set 2).

asked Atlantic's corporate designee about the search performed as to the CWS database and Image Now. To Universal's great surprise, he testified that Atlantic had not searched CWS at all.

### 1. Atlantic Failure to Search CWS

Atlantic maintains a claim system database, "CWS," that is an electronic file about each claim, including file notes. This database has been in use since 2002. Stone Depo., p. 150:8-20. According to Stone, CWS does not have a built in search functionality, so to search it, Atlantic's IT personnel would have to create a program to do so, which would take between one to two weeks. *Id.* pp. 150:24-151:12. Atlantic did not look into or research whether a third party electronic discovery vendor could devise a way to image and search CWS. *Id.* pp. 151:21-152:6. Thus, Atlantic has not searched CWS directly for any claims, including claims arising out of actions by a terrorist organization. *Id.*, pp. 152:18-20.

Atlantic's counsel claims that because documents "appended" or "attached" to CWS are in the Image Now document system, and Image Now was searched, and therefore any search of CWS is unnecessary. Hayes Decl. Ex. 13 (May 15 letter), Stone Depo. pp. 153:12-19. But Atlantic did not use the Image Now search results to review any related file notes entered in CWS, nor has it addressed that not all CWS entries necessarily have documents appended to them. *Id.*, pp. 150:8-150:16. Indeed, Atlantic's 30(b)(6) witness testified more accurately, when asked "Has CWS been searched in connection with this case," "At this point it has not." *Id.* pp. 151:18-20.

### 2. Atlantic's Search of "Image Now" Was Limited And Search Was Done By In House IT Personnel.

With regard to Atlantic's documents saved in its document system, "Image Now," Mr. Stone testified that Atlantic's in house IT personnel used a search tool called "power grip" which can search only 2 gigabytes of data at a time. Stone Depo., p. 152:22-153:1. According to Stone, the search, was limited to the time

frame from July 2013 to the date of search, and took 14 days of machine time. *Id*. This is significant because Atlantic's purported burden is based entirely on the amount of time it takes its internal IT department to complete searches of its document system, Image Now, using a program written in house and searching only 2 gigabytes of data at a time. Hayes Decl. Ex. 10. Stone testified he did not know whether Atlantic explored through any discovery vendor whether "Image Now" could be searched more efficiently with dedicated search tools. Stone Depo., p. 153:2-11.

### 3. Universal's Internet Searches and Atlantic's Own Witnesses Reveal The Inadequacy of Atlantic's Searches.

While preparing for the depositions last week, Universal's counsel ran a basic Internet search and quickly identified two lawsuits filed by One Beacon and other insurers against Hamas and other terrorist organizations, *Federal Insurance, et al v. Al Qaida, et al*, Case No. 1:03cv6978 (S.D.N.Y, filed Sept. 10, 2003), and *In re: Terrorist Attacks on September 11, 2001*, Case No. 1:03-MD-01570 (S.D.N.Y., filed December 10, 2003), involving claims paid out for losses due to attacks by these terrorist organizations. Hayes Decl., ¶ 11. This highlights the inadequacies of Atlantic's searches, revealing that it is entirely possible (indeed, likely), that there are relevant claim files in Atlantic's system pertaining to claims for losses caused by terrorist activities.[2]

---

[2] As a further example of Atlantic's search failures, Atlantic has repeatedly argued that it would be too burdensome for Atlantic to search for form policies or exclusions, requested in RFPs Nos. 23, 36, and 38 because they purportedly are scattered throughout several different divisions of the company. Hayes Decl. ¶__, and Exs. 1 and 4. However, directly contradicting these representations, Atlantic's Rule 30(b)(6) witness testified there is a single department at Atlantic, the "Enterprise Underwriting" group, which "oversees forms that cross over various business units and in general forms that all business units may use." Stone Depo. pp. 198:5-13. Indeed, one day after Summary Judgment briefing was completed, Atlantic suddenly, and without notice, produced certain policy forms containing war and terrorism exclusions. Hayes Decl. ¶ 16.

7
**MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**
8883627.3

### C. Universal's Requested Time Frame Is Relevant and Reasonable.

As a result of its refusal to engage an outside ediscovery vendor to image and run targeted searches in these critical repositories of documents and information, Atlantic has arbitrarily and unilaterally decided to limit its search for responsive documents to July 2013 forward, despite Universal's request for a look-back to January 1, 2001. This date was chosen for a specific reason – the way the insurance industry addressed terrorism changed significantly in the aftermath of September 11. Moreover, given that Atlantic's witnesses have testified that *Dig* was a unique claim, a more expansive time period is appropriate in order to capture all potentially responsive documents regarding other prior relevant claims. Atlantic's failure to identify *any* documents or information regarding the two cases OneBeacon filed against Hamas asserting subrogation rights cases brings into stark relief the inappropriateness of limiting the search to July 2013 forward.

### D. Because Atlantic Cannot Complete the Searches Itself, Use of A Discovery Vendor Is Warranted.

Case law is clear that Atlantic's searches, completed by its IT department or relying on the memories of a few individuals, are insufficient. "The parameters of a litigation hold cannot be left solely in the hands of an IT professional." *Montoya v. Orange County Sheriff's Dep't*, 2013 U.S. Dist. LEXIS 180682, *27-29 (C.D. Cal. Oct. 15, 2013). Rather, attorneys and clients "must work together to ensure that both understand how and where electronic documents, records, and emails are maintained and to determine how best to locate, review, and produce responsive documents. Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search." *Qualcomm Inc. v. Broadcom Corp.*, 2008 U.S. Dist. LEXIS 911, *29-31 (S.D. Cal. Jan. 7, 2008), *vacated in part on other grounds*, 2008 U.S. Dist. LEXIS 16897 (S.D. Cal. Mar. 5, 2008). In *Qualcomm,* a party agreed to produce documents and answered interrogatories, but in fact failed to produce over 46,000 documents due to a failure

1 to search relevant repositories of documents and its attorneys accepting "the
2 unsubstantiated assurances of an important client that its search was sufficient" and
3 "ignor[ing] the warning signs that the document search and production were
4 inadequate." *Id.* at *44-45. The court imposed sanctions. *Id.*

5       Thus, as it has become clear that Atlantic is unable to perform an adequate
6 search itself, Universal respectfully requests that the Court order Atlantic to engage
7 an independent outside e-discovery vendor to image and search both Atlantic's
8 document system "Image Now," and its CWS database from September 12, 2001,
9 using as search terms the names of the Foreign Terrorist Organizations identified
10 by the U.S. State Department.[3] This will avoid retrieving any policy with a
11 terrorism exclusion (as the search term "terrorism" might), and should limit the
12 responses to claims involving terrorist organizations, *See, e.g. Logtale, Ltd. v.*
13 *IKOR, Inc.*, 2013 U.S. Dist. LEXIS 107727, *10 (N.D. Cal. July 31, 2013) (if there
14 are "continuing problems with their document productions, the court will order
15 [the party] to retain the services of an e-discovery vendor").

16 **V.**  **Atlantic Failed to Search Two Critical Document Repositories**

17       This Court set May 15, 2017 as the deadline for motions to compel further
18 discovery. ECF No. 72. During the depositions conducted on May 10 and 11,
19 Universal learned that Atlantic failed to search emails of the two supervising
20 executives directly involved with the *Dig* Claim: (1) Sean Duffy, Atlantic's Senior
21 Vice President & Chief Claims Officer; and (2) Dennis Crosby, Atlantic's
22 Executive Vice President. Hayes Decl., Ex. 11, pp. 3-4, Ex. 13, p. 2, 4.[4] Atlantic's
23 failure has prejudiced Universal. Universal deposed Mr. Duffy on May 11 without
24 being able to question him about his emails. Universal will be further prejudiced if

---

[3] Located at: https://www.state.gov/j/ct/rls/other/des/123085.htm

[4] *See* Ex. 17, Deposition of Aaron Stone (Atlantic's 30(b)(6) designee on, among others, Topics Nos. 54 and 55 regarding Atlantic's search for and collection of documents), p. 149:3-12 (Mr. Duffy's and Mr. Crosby's emails were not searched).

1  Atlantic delays in producing Mr. Crosby's emails, who is scheduled to be deposed
2  on May 17, 2017.
3        Atlantic's failure is inexcusable.  Atlantic identified Mr. Duffy as one of
4  four individuals involved in evaluating and considering the Dig Claim, and one of
5  five responsible for Atlantic's decision to deny the *Dig* Claim, in response to
6  Universal's Interrogatories No. 1 and 2 (*see* Hayes Decl., Ex. 5).  Mr. Duffy
7  testified his emails were preserved as a result of this litigation (*see* Ex. 18, Duffy
8  Dep. p. 220:23-221:25).  Moreover, Mr. Crosby was involved with the *Dig* Claim
9  based on the documents produced to date, and, indeed, Mr. Crosby was just
10 designated as Atlantic's 30(b)(6) designee for Topics Nos. 48 and 49 (Atlantic's
11 decision not to renew Universal's policy and curtail entertainment business) (*see*
12 Ex. 12).
13       Only after Universal's meet-and-confer did Atlantic agree on May 15 (the
14 day this Motion is due) to "run a search … in Mr. Duffy's and Mr. Crosby's e-
15 mails dating back to July 2013, and provide [Universal] the results of that search as
16 quickly as possible." Hayes Decl., Ex. 14, p. 2.  It remains to be seen if Atlantic
17 will comply with its representations.  Universal reserves all rights pending
18 Atlantic's belated document production of Mr. Crosby and Mr. Duffy's emails.

                                    Respectfully submitted,

DATED: MAY 16, 2017        MITCHELL SILBERBERG & KNUPP LLP

                                    By:  /s/ Daniel M. Hayes
                                        Daniel M. Hayes
                                        Attorneys for Plaintiffs
                                        Universal Cable Productions LLC and
                                        Northern Entertainment Productions LLC