LUCIA E. COYOCA (SBN 128314)
lec@msk.com
VALENTINE A. SHALAMITSKI (SBN 236061)
vas@msk.com
DANIEL M. HAYES (SBN 240250)
dmh@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs
Universal Cable Productions LLC and
Northern Entertainment Productions LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | CASE NO. 2:16-cv-4435-PA-MRW<br><br>**DECLARATION OF DANIEL M. HAYES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**<br><br>Time: 9:30 a.m.<br>Date: May 24, 2017<br>Judge: Hon. Michael R. Wilner<br><br>File Date: June 20, 2016<br>Discovery Cutoff: June 2, 2017<br>Pre-Trial Conf.: June 16, 2017<br>Trial Date : July 25, 2017 |

**DECLARATION OF DANIEL M. HAYES**

I, Daniel M. Hayes, declare:

1. I am an attorney duly licensed to practice law in the State of California and before this Court. I am, through my professional corporation, a partner in the law firm of Mitchell Silberberg & Knupp LLP, attorneys of record for Plaintiffs Universal Cable Productions LLC ("UCP") and Northern Entertainment Productions LLC (collectively, "Universal") in the above-captioned matter. I make this declaration in support of Plaintiffs' Motion to Compel Further Discovery Responses. Unless otherwise indicated, I have personal knowledge of the following facts and, if called and sworn as a witness, could and would competently testify thereto.

2. On October 5, 2016, Universal served its First Set of Interrogatories and First Set of Requests for Production of Documents on Defendant Atlantic Specialty Insurance Company ("Atlantic").

3. On December 16, 2016, Atlantic served its Amended Responses to First Set of Requests for Production Propounded by Plaintiffs Universal Cable Productions LLC and Northern Entertainment Productions LLC, a true and correct copy of which is attached hereto as Exhibit 1.

4. On February 2, 2017, UCP served its Second Set of Interrogatories, Second Set of Requests for Production of Documents, and First Set of Requests for Admission.

5. On March 3, 2017, Plaintiffs served a Notice of Rule 30(b)(6) Deposition of Atlantic. The deposition was noticed for March 24, 2017. Topic 53 related to Atlantic's search for and collection of documents in connection with this litigation. Atlantic did not agree to produce a designee on the originally noticed date. Instead, the parties engaged in protracted meet-and-confer discussions in an effort to set the Rule 30(b)(6) deposition, among many others. Eventually, Atlantic agreed to make its Rule 30(b)(6) designee available on May 10 in Minnesota, while

maintaining a myriad of improper objections to topics regarding, *inter alia*, Atlantic's consideration of terrorism exclusions in connection with other claims, and other claims involving Hamas, based on the purported burden associated with searching for documents beyond July 2013. Attached hereto as Exhibit 2 is a true and correct copy of Plaintiffs' Amended Notice of Rule 30(b)(6) Deposition.

6. On March 13, 2017, Atlantic served its Responses to Second Set of Interrogatories Propounded by Plaintiffs Universal Cable Productions LLC and Northern Entertainment Productions LLC, a true and correct copy of which is attached hereto as Exhibit 3.

7. Also on March 13, 2015, Atlantic served its Objections and Responses to UCP's Second Set of Requests for Production, a true and correct copy of which is attached hereto as Exhibit 4.

8. On March 31, 2017, I sent a meet-and-confer letter to Toni Reed, counsel for Atlantic, regarding, *inter alia*, Atlantic's responses to UCP's second sets of interrogatories and requests for production, referenced above. A true and correct copy of my letter is attached hereto as Exhibit 5.

9. On or about April 4, 2017, my colleague Valentine Shalamitski and I participated in a meet-and-confer phone call with Toni Reed and Carla Crapster, counsel for Atlantic, regarding, *inter alia*, Atlantic's responses to UCP's second sets of interrogatories and requests for production, referenced above. On that call, Ms. Reed and Ms. Crapster stated that they did not know what terrorism exclusions or endorsements Atlantic has had at any particular time, and that to determine the same, or identify claims in which Atlantic had considered the application of a terrorism exclusion or in which Atlantic had paid an insured on a loss caused by terrorism, Atlantic would have to perform a company-wide search of its entire database, which Ms. Crapster and Ms. Reed stated was not delineated by division and could take 30 or 60 days of machine time. I specifically asked Ms. Reed and Ms. Crapster where Atlantic would look to find a terrorism exclusion if it was

writing a policy today and it wanted to include one. Ms. Reed stated that she did not have that information, and that she would have to look into it. To my knowledge, Ms. Reed did not provide any further information after our call in response to my inquiry. I also asked why a search for the word "Hamas" dating back to 2001 could not be run. Ms. Crapster and Ms. Reed said that it did not matter what search terms Atlantic used, and while they acknowledged that the word "Hamas" was probably not widely used among the company documents, they said an electronic search using the keyword "Hamas" would take 30 days of machine time.

10. On April 18, 2017, Atlantic served its Third Amended Responses to First Set of Interrogatories Propounded by Universal, a true and correct copy of which is attached hereto as Exhibit 6.

11. On May 6, 2017, while preparing for upcoming depositions of Atlantic's witnesses, I performed a Google search for the words "Hamas" and "OneBeacon." That search returned information about two cases in which OneBeacon, and other insurance companies, sued Hamas, and other terrorist organizations, terrorists, and sponsors of terrorism.

12. Attached hereto as Exhibit 7 is a true and correct copy of the docket report in the case of *Federal Insurance, et al. v. Al Qaida, et al.* Case No. 1:03-cv-06978-GBD-SN. This docket report was retrieved at my direction on May 8, 2017.

13. Attached hereto as Exhibit 8 is a true and correct copy of the docket report in the case of *In Re: Terrorist Attached on September 11, 201,* Case No. 1:03-MD-01570. This docket was retrieved at my direction on May 8, 2017.

14. Attached hereto as Exhibit 9 is a true and correct copy of the of the First Amended Complaint in the case of *Federal Insurance Company, et al. v. Al Qaida, et al.*, Case No. 1:03-cv-06978-GBD-SN filed on March 10, 2004. This complaint was obtained at my direction from the public case files on or around May 8, 2017.

15. On May 8, 2017, at 9:18 p.m. Pacific time, I received an email from

Ms. Crapster in response to meet-and-confer communications we had regarding Universal's Notice of Rule 30(b)(6) deposition of Atlantic, a true and correct copy of which is attached hereto as Exhibit 10. In this email, Ms. Crapster describes the purported burden Atlantic faces in searching for documents, and its document search efforts to date.

16. On May 9, 2017, one day after the parties filed their final reply briefs for their cross-motions for summary judgment, and the day before the Rule 30(b)(6) deposition of Atlantic, Atlantic produced four policy forms (ATL005269-5297), consisting of an "Exclusion of Other Acts of Terrorism Committed Outside the United States" form, a Production Portfolio Policy form, an "Electronic Data Processing " form policy, and a "Commercial General Liability Coverage Form." Before this production was made, Atlantic had never informed me or any of my colleagues that it planned to produce these policy forms.

17. On May 12, 2017, I sent a meet-and-confer letter to Atlantic's counsel, a true and correct copy of which is attached hereto as Exhibit 11.

18. On May 12, 2017, I received an email from Ms. Reed in response to my letter. A true and correct copy of the email correspondence between Ms. Reed and me that followed is attached hereto as Exhibit 12, along with the follow up meet-and-confer letter that I sent on May 14, 2017.

19. On May 15, 2017, Michael Keeley, counsel for Atlantic, sent me a letter responding to my May 12, 2017 letter. A true and correct copy of Mr. Keeley's letter is attached hereto as Exhibit 13.

20. Attached hereto as Exhibit 14 is a true and correct copy of an email chain between Theresa Gooley between Pamela Johnson with the most recent email dated July 17, 2014. This was produced by Atlantic as ATL001571 – 001572 and introduced as Exhibit 31 to the Deposition of Theresa Gooley.

21. Attached hereto as Exhibit 15 is a true and correct copy of the rough transcript of the deposition of Pamela Johnson, Volume I, taken May 8, 2017.

22. Attached hereto as Exhibit 16 is a true and correct copy of excerpts from the rough transcript of the deposition of Aaron Stone, Atlantic's 30(b)(6) witness on topics 2-14, 19-47, and 50-56, taken May 10, 2017.

23. Attached hereto as Exhibit 17 is a true and correct copy of excerpts from the rough transcript of the deposition of Sean Duffy taken May 11, 2017.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed May 15, 2017, at Los Angeles, California.

*/s/ Daniel M. Hayes*
Daniel M. Hayes

# EXHIBIT 1

MARC J. SHRAKE (SBN 219331)
mjs@amclaw.com
ANDERSON, MCPHARLIN & CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623
Telephone: (213) 236-1691
Facsimile: (213) 622-7594

MICHAEL KEELEY *(Pro Hac Vice)*
michael.keeley@strasburger.com
JOHN R. RIDDLE *(Pro Hac Vice)*
john.riddle@strasburger.com
CARLA C. CRAPSTER *(Pro Hac Vice)*
carla.crapster@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

Attorneys for Defendant
Atlantic Specialty Insurance Company

RECEIVED
DEC 22 2016
MITCHELL SILBERBERG & KNUPP LLP

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,

Plaintiffs,

vs.

ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,

Defendant.

Case No. 2:16-cv-04435-PA-MRW

**DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S AMENDED RESPONSES TO FIRST SET OF REQUESTS FOR PRODUCTION PROPOUNDED BY PLAINTIFFS UNIVERSAL CABLE PRODUCTIONS LLC AND NORTHERN ENTERTAINMENT PRODUCTIONS LLC**

/ / /

/ / /

/ / /

/ / /

PROPOUNDING PARTY: Plaintiffs UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC

RESPONDING PARTY: Defendant ATLANTIC SPECIALTY INSURANCE COMPANY

SET NO.: One

Pursuant to Federal Rule of Civil Procedure 34, Defendant ATLANTIC SPECIALTY INSURANCE COMPANY ("Atlantic") submits these amended responses and objections (the "Response") to the First Set of Requests for Production propounded by Plaintiffs UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC ("Propounding Parties").

**PRELIMINARY STATEMENT**

Nothing in this Response should be construed as an admission by Atlantic with respect to the admissibility or relevance of any fact or document, or of the truth or accuracy of any characterization or statement of any kind contained in Propounding Parties' Requests for Production. Atlantic has not completed its investigation of the facts relating to this case, its discovery or its preparation for trial. All responses and objections contained herein are based only upon such information and such documents that are presently available to and specifically known by Atlantic. It is anticipated that further discovery, independent investigation, legal research and analysis may supply additional facts and add meaning to known facts, as well as new factual conclusions and legal contentions, all of which may lead to additions to, changes in and variations from the responses set forth herein. The following objections and responses are made without prejudice to Atlantic's right to produce at trial, or otherwise, evidence regarding any subsequently discovered documents. Atlantic accordingly reserves the right to modify and amend any and all responses herein as research is completed and contentions are made. Relevant responsive documents that are privileged and being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

will be included on a Supplemental Privilege Log. However, pursuant to agreement between the parties, by and through their respective counsel of record, Atlantic is not including on its privilege logs any documents created by Strasburger & Price LLP personnel or by Anderson McPharlin & Conners LLP personnel on or after June 20, 2016 (the date the plaintiffs filed suit) or any correspondence including Strasburger & Price LLP personnel or Anderson McPharlin & Conners LLP personnel that was created on or after June 20, 2016. As the parties have agreed, by and through their respective counsel of record, Atlantic does not waive any privilege or other protection that might apply to those documents by not including them on its privilege logs.

**RESPONSES TO REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

All of YOUR files, including file jackets and labels, and all other DOCUMENTS that RELATE to:

a) The POLICY;

b) The *DIG* INSURED PRODUCTION;

c) The *DIG* CLAIM (including, but not limited to, its receipt, investigation, evaluation, consideration, and denial); and

d) The WAR EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. As required by Rule 34(b)(2)(C), Atlantic states that documents responsive to this Request that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request and concern this claim, and which are not privileged, have been, or will be, produced.

Atlantic further objects to this Request to the extent that it seeks information that is outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. In particular, the definition of "WAR EXCLUSION" in the Request includes not only the particular war exclusion in the POLICY but also any similar exclusion in other policies. Documents relating to other policies or claims is not relevant to either party's claims or defenses and is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. To find all documents responsive to this Request would be extremely burdensome, and Atlantic would have to manually locate and review each policy it has issued that may contain this particular exclusion and any related claim files.

Nonetheless, to avoid a discovery dispute, Atlantic further responds as follows: Thus far, Atlantic has not located any other claim in which it denied the claim in whole or in part on the basis of the WAR EXCLUSION. As counsel for Atlantic has stated in discussions with counsel for Plaintiffs, Atlantic has reviewed more than 36,000 documents identified in a search of its document management and e-mail system. One of the search terms used in the search that returned these documents was "war." That search looked for documents and e-mails dating back to July 2013. Atlantic can now confirm that it has identified no documents suggesting that any claims were denied on the basis of the WAR EXCLUSION. Atlantic, and its Informational Technology department in particular, have represented that a broader search that would encompass

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

all e-mails and documents without any date restrictions would be nearly impossible. In lieu of searching for the WAR EXCLUSION in each and every one of the many millions of documents and e-mails that Atlantic and OneBeacon have generated over the course of their existences, Atlantic has made inquiries with its employees who oversee, and former employees who previously oversaw, the claims handling for the entertainment division of Atlantic and with employees of OneBeacon who oversee claims for all of OneBeacon's divisions. Those persons do not recall any claims that Atlantic denied on the grounds that the WAR EXCLUSION applied. Those persons also do not recall any claims in which Atlantic considered the potential applicability of the WAR EXCLUSION or any part thereof but ultimately paid the claim despite the potential applicability of the WAR EXCLUSION. Atlantic has, however, found one e-mail that an employee of Atlantic, Daniel Gutterman, sent to himself, that concerns another claim, and which quotes the various policy language, including its WAR EXCLUSION. There are no other documents suggesting that the WAR EXCLUSION was considered any further in connection with that claim. This one e-mail is being produced as Bates No. ATL000785 – ATL000788.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS that RELATE to the underwriting of the POLICY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, have been, or will be, produced.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS that RELATE to the negotiation and/or drafting of the POLICY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, have been, or will be, produced.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS that RELATE to the issuance of the POLICY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, have been, or will be, produced.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS that RELATE to the coverage of the *DIG* INSURED PRODUCTION, including but not limited to the Request, negotiation, approval, or acceptance of coverage under the POLICY or Policy No. MP00163-03.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

responsive to this Request, and which are not privileged, have been, or will be, produced.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS that constitute, memorialize, evidence, or reflect YOUR internal COMMUNICATIONS that RELATE to:

a) The POLICY;

b) The *DIG* INSURED PRODUCTION;

c) The *DIG* CLAIM (including, but not limited to, its receipt, investigation, evaluation, consideration, and denial); and

d) The WAR EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. As required by Rule 34(b)(2)(C), Atlantic states that documents responsive to this Request that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request and concern this claim, and which are not privileged, have been, or will be, produced.

Atlantic further objects to this Request to the extent that it seeks information that is outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. In particular, the definition of "WAR EXCLUSION" in the Request

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

includes not only the particular war exclusion in the POLICY but also any similar exclusion in other policies. Documents relating to other policies or claims is not relevant to either party's claims or defenses and is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. To find all documents responsive to this Request would be extremely burdensome, and Atlantic would have to manually locate and review each policy it has issued that may contain this particular exclusion and any related claim files.

Nonetheless, to avoid a discovery dispute, Atlantic further responds as follows: Thus far, Atlantic has not located any other claim in which it denied the claim in whole or in part on the basis of the WAR EXCLUSION. As counsel for Atlantic has stated in discussions with counsel for Plaintiffs, Atlantic has reviewed more than 36,000 documents identified in a search of its document management and e-mail system. One of the search terms used in the search that returned these documents was "war." That search looked for documents and e-mails dating back to July 2013. Atlantic can now confirm that it has identified no documents suggesting that any claims were denied on the basis of the WAR EXCLUSION. Atlantic, and its Informational Technology department in particular, have represented that a broader search that would encompass all e-mails and documents without any date restrictions would be nearly impossible. In lieu of searching for the WAR EXCLUSION in each and every one of the many millions of documents and e-mails that Atlantic and OneBeacon have generated over the course of their existences, Atlantic has made inquiries with its employees who oversee, and former employees who previously oversaw, the claims handling for the entertainment division of Atlantic and with employees of OneBeacon who oversee claims for all of OneBeacon's divisions. Those persons do not recall any claims that Atlantic denied on the grounds that the WAR EXCLUSION applied. Those persons

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

also do not recall any claims in which Atlantic considered the potential applicability of the WAR EXCLUSION or any part thereof but ultimately paid the claim despite the potential applicability of the WAR EXCLUSION. Atlantic has, however, found one e-mail that an employee of Atlantic, Daniel Gutterman, sent to himself, that concerns another claim, and which quotes the various policy language, including its WAR EXCLUSION. There are no other documents suggesting that the WAR EXCLUSION was considered any further in connection with that claim. This one e-mail is being produced as Bates No. ATL000785 – ATL000788.

**<u>REQUEST FOR PRODUCTION NO. 7</u>:**

All DOCUMENTS that constitute, memorialize, evidence, or reflect COMMUNICATIONS between YOU, on the one part, and ONEBEACON, on the other part, that RELATE to:

a) The POLICY;

b) The *DIG* INSURED PRODUCTION;

c) The *DIG* CLAIM (including, but not limited to, its receipt, investigation, evaluation, consideration, and denial); and

d) The WAR EXCLUSION.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 7</u>:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. As required by Rule 34(b)(2)(C), Atlantic states that documents responsive to this Request that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties'

agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request and concern this claim, and which are not privileged, have been, or will be, produced.

Atlantic further objects to this Request to the extent that it seeks information that is outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. In particular, the definition of "WAR EXCLUSION" in the Request includes not only the particular war exclusion in the POLICY but also any similar exclusion in other policies. Documents relating to other policies or claims is not relevant to either party's claims or defenses and is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. To find all documents responsive to this Request would be extremely burdensome, and Atlantic would have to manually locate and review each policy it has issued that may contain this particular exclusion and any related claim files.

Nonetheless, to avoid a discovery dispute, Atlantic further responds as follows: Thus far, Atlantic has not located any other claim in which it denied the claim in whole or in part on the basis of the WAR EXCLUSION. As counsel for Atlantic has stated in discussions with counsel for Plaintiffs, Atlantic has reviewed more than 36,000 documents identified in a search of its document management and e-mail system. One of the search terms used in the search that returned these documents was "war." That search looked for documents and e-mails dating back to July 2013. Atlantic can now confirm that it has identified no documents suggesting that any claims were denied on the basis of the WAR EXCLUSION. Atlantic, and its Informational Technology department in particular, have represented that a broader search that would encompass all e-mails and documents without any date restrictions would be nearly impossible. In

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

lieu of searching for the WAR EXCLUSION in each and every one of the many millions of documents and e-mails that Atlantic and OneBeacon have generated over the course of their existences, Atlantic has made inquiries with its employees who oversee, and former employees who previously oversaw, the claims handling for the entertainment division of Atlantic and with employees of OneBeacon who oversee claims for all of OneBeacon's divisions. Those persons do not recall any claims that Atlantic denied on the grounds that the WAR EXCLUSION applied. Those persons also do not recall any claims in which Atlantic considered the potential applicability of the WAR EXCLUSION or any part thereof but ultimately paid the claim despite the potential applicability of the WAR EXCLUSION. Atlantic has, however, found one e-mail that an employee of Atlantic, Daniel Gutterman, sent to himself, that concerns another claim, and which quotes the various policy language, including its WAR EXCLUSION. There are no other documents suggesting that the WAR EXCLUSION was considered any further in connection with that claim. This one e-mail is being produced as Bates No. ATL000785 – ATL000788.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS that constitute, memorialize, evidence, or reflect COMMUNICATIONS between YOU and/or ONEBEACON, on the one part, and any of PLAINTIFFS, NBCUNIVERSAL, or AON, on the other part, that RELATE to:

a) The POLICY;

b) The *DIG* INSURED PRODUCTION;

c) The *DIG* CLAIM (including, but not limited to, its receipt, investigation, evaluation, consideration, and denial); and

d) The WAR EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in

anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, have been, or will be, produced.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS that constitute, memorialize, evidence, or reflect COMMUNICATIONS between YOU, on the one part, and any PERSON (other than PLAINTIFFS, NBCUNIVERSAL, and AON), on the other part, that RELATE to:

a) The POLICY;

b) The *DIG* INSURED PRODUCTION;

c) The *DIG* CLAIM (including, but not limited to, its receipt, investigation, evaluation, consideration, and denial); and

d) The WAR EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. As required by Rule 34(b)(2)(C), Atlantic states that documents responsive to this Request that are

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request and concern this claim, and which are not privileged, have been, or will be, produced.

Atlantic further objects to this Request to the extent that it seeks information that is outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. In particular, the definition of "WAR EXCLUSION" in the Request includes not only the particular war exclusion in the POLICY but also any similar exclusion in other policies. Documents relating to other policies or claims is not relevant to either party's claims or defenses and is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. To find all documents responsive to this Request would be extremely burdensome, and Atlantic would have to manually locate and review each policy it has issued that may contain this particular exclusion and any related claim files.

Nonetheless, to avoid a discovery dispute, Atlantic further responds as follows: Thus far, Atlantic has not located any other claim in which it denied the claim in whole or in part on the basis of the WAR EXCLUSION. As counsel for Atlantic has stated in discussions with counsel for Plaintiffs, Atlantic has reviewed more than 36,000 documents identified in a search of its document management and e-mail system. One of the search terms used in the search that returned these documents was "war." That

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

search looked for documents and e-mails dating back to July 2013. Atlantic can now confirm that it has identified no documents suggesting that any claims were denied on the basis of the WAR EXCLUSION. Atlantic, and its Informational Technology department in particular, have represented that a broader search that would encompass all e-mails and documents without any date restrictions would be nearly impossible. In lieu of searching for the WAR EXCLUSION in each and every one of the many millions of documents and e-mails that Atlantic and OneBeacon have generated over the course of their existences, Atlantic has made inquiries with its employees who oversee, and former employees who previously oversaw, the claims handling for the entertainment division of Atlantic and with employees of OneBeacon who oversee claims for all of OneBeacon's divisions. Those persons do not recall any claims that Atlantic denied on the grounds that the WAR EXCLUSION applied. Those persons also do not recall any claims in which Atlantic considered the potential applicability of the WAR EXCLUSION or any part thereof but ultimately paid the claim despite the potential applicability of the WAR EXCLUSION. Atlantic has, however, found one e-mail that an employee of Atlantic, Daniel Gutterman, sent to himself, that concerns another claim, and which quotes the various policy language, including its WAR EXCLUSION. There are no other documents suggesting that the WAR EXCLUSION was considered any further in connection with that claim. This one e-mail is being produced as Bates No. ATL000785 – ATL000788.

**REQUEST FOR PRODUCTION NO. 10:**

To the extent not included in the preceding requests, all DOCUMENTS that RELATE to YOUR investigation, evaluation, consideration, and denial of the *DIG* CLAIM, and YOUR claims handling with respect to the *DIG* CLAIM.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, have been, or will be, produced.

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS that YOU reviewed in connection with the WAR EXCLUSION prior to YOUR denial of the *DIG* CLAIM.

(For clarity, these DOCUMENTS should be specifically labeled, segregated, and/or identified as responsive to this Request.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. As required by Rule 34(b)(2)(C), Atlantic states that documents responsive to this Request that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log. Atlantic's documents that are responsive to this Request and concern this claim, and which are not privileged, have been, or will be,

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

produced.

Atlantic further objects to this Request to the extent that it seeks information that is outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. In particular, the definition of "WAR EXCLUSION" in the Request includes not only the particular war exclusion in the POLICY but also any similar exclusion in other policies. Documents relating to other policies or claims is not relevant to either party's claims or defenses and is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. To find all documents responsive to this Request would be extremely burdensome, and Atlantic would have to manually locate and review each policy it has issued that may contain this particular exclusion and any related claim files.

Nonetheless, to avoid a discovery dispute, Atlantic further responds as follows: Thus far, Atlantic has not located any other claim in which it denied the claim in whole or in part on the basis of the WAR EXCLUSION. As counsel for Atlantic has stated in discussions with counsel for Plaintiffs, Atlantic has reviewed more than 36,000 documents identified in a search of its document management and e-mail system. One of the search terms used in the search that returned these documents was "war." That search looked for documents and e-mails dating back to July 2013. Atlantic can now confirm that it has identified no documents suggesting that any claims were denied on the basis of the WAR EXCLUSION. Atlantic, and its Informational Technology department in particular, have represented that a broader search that would encompass all e-mails and documents without any date restrictions would be nearly impossible. In lieu of searching for the WAR EXCLUSION in each and every one of the many millions of documents and e-mails that Atlantic and OneBeacon have generated over the course of their existences, Atlantic has made inquiries with its employees who

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

oversee, and former employees who previously oversaw, the claims handling for the entertainment division of Atlantic and with employees of OneBeacon who oversee claims for all of OneBeacon's divisions. Those persons do not recall any claims that Atlantic denied on the grounds that the WAR EXCLUSION applied. Those persons also do not recall any claims in which Atlantic considered the potential applicability of the WAR EXCLUSION or any part thereof but ultimately paid the claim despite the potential applicability of the WAR EXCLUSION. Atlantic has, however, found one e-mail that an employee of Atlantic, Daniel Gutterman, sent to himself, that concerns another claim, and which quotes the various policy language, including its WAR EXCLUSION. There are no other documents suggesting that the WAR EXCLUSION was considered any further in connection with that claim. This one e-mail is being produced as Bates No. ATL000785 – ATL000788.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS RELATING to the WAR EXCLUSION that YOU relied on in denying the *DIG* CLAIM.

(For clarity, these DOCUMENTS should be specifically labeled, segregated, and/or identified as responsive to this Request.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties'

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, have been, or will be, produced.

**<u>REQUEST FOR PRODUCTION NO. 13</u>:**

Any DOCUMENTS that YOU reviewed in connection with the WAR EXCLUSION after YOU denied the *DIG* CLAIM.

(For clarity, these DOCUMENTS should be specifically labeled, segregated, and/or identified as responsive to this Request.)

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 13</u>:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. As required by Rule 34(b)(2)(C), Atlantic states that documents responsive to this Request that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request and concern this claim, and which are not privileged, have been, or will be, produced.

Atlantic further objects to this Request to the extent that it seeks information that is outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. In particular, the definition of "WAR EXCLUSION" in the Request includes not only the particular war exclusion in the POLICY but also any similar

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

exclusion in other policies. Documents relating to other policies or claims is not relevant to either party's claims or defenses and is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. To find all documents responsive to this Request would be extremely burdensome, and Atlantic would have to manually locate and review each policy it has issued that may contain this particular exclusion and any related claim files.

Nonetheless, to avoid a discovery dispute, Atlantic further responds as follows: Thus far, Atlantic has not located any other claim in which it denied the claim in whole or in part on the basis of the WAR EXCLUSION. As counsel for Atlantic has stated in discussions with counsel for Plaintiffs, Atlantic has reviewed more than 36,000 documents identified in a search of its document management and e-mail system. One of the search terms used in the search that returned these documents was "war." That search looked for documents and e-mails dating back to July 2013. Atlantic can now confirm that it has identified no documents suggesting that any claims were denied on the basis of the WAR EXCLUSION. Atlantic, and its Informational Technology department in particular, have represented that a broader search that would encompass all e-mails and documents without any date restrictions would be nearly impossible. In lieu of searching for the WAR EXCLUSION in each and every one of the many millions of documents and e-mails that Atlantic and OneBeacon have generated over the course of their existences, Atlantic has made inquiries with its employees who oversee, and former employees who previously oversaw, the claims handling for the entertainment division of Atlantic and with employees of OneBeacon who oversee claims for all of OneBeacon's divisions. Those persons do not recall any claims that Atlantic denied on the grounds that the WAR EXCLUSION applied. Those persons also do not recall any claims in which Atlantic considered the potential applicability of

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

1515571.1 05608-054

20

ATLANTIC SPECIALTY INSURANCE COMPANY'S AMENDED RESPONSES
TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

EXHIBIT 1, PAGE 25

the WAR EXCLUSION or any part thereof but ultimately paid the claim despite the potential applicability of the WAR EXCLUSION. Atlantic has, however, found one e-mail that an employee of Atlantic, Daniel Gutterman, sent to himself, that concerns another claim, and which quotes the various policy language, including its WAR EXCLUSION. There are no other documents suggesting that the WAR EXCLUSION was considered any further in connection with that claim. This one e-mail is being produced as Bates No. ATL000785 – ATL000788.

**REQUEST FOR PRODUCTION NO. 14:**

All of YOUR files, including file jackets and labels, and all other DOCUMENTS that RELATE to PLAINTIFFS' claim that YOU breached YOUR coverage obligations in connection with the POLICY and/or the *DIG* CLAIM.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, have been, or will be, produced.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS that constitute, memorialize, evidence, or reflect YOUR

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

internal COMMUNICATIONS that RELATE to PLAINTIFFS' claim that YOU breached YOUR coverage obligations in connection with the POLICY and/or the *DIG* CLAIM.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 15</u>:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, have been, or will be, produced.

**<u>REQUEST FOR PRODUCTION NO. 16</u>:**

All DOCUMENTS that constitute, memorialize, evidence, or reflect COMMUNICATIONS between YOU, on the one part, and ONEBEACON, on the other part, that RELATE to PLAINTIFFS' claim that YOU breached YOUR coverage obligations in connection with the POLICY and/or the *DIG* CLAIM.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 16</u>:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, have been, or will be, produced.

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS that constitute, memorialize, evidence, or reflect COMMUNICATIONS between YOU and/or ONEBEACON, on the one part, and any of PLAINTIFFS, NBCUNIVERSAL, or AON, on the other part, that RELATE to PLAINTIFFS' claim that YOU breached YOUR coverage obligations in connection with the POLICY and/or the *DIG* CLAIM.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, have been, or will be, produced.

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS that constitute, memorialize, evidence, or reflect COMMUNICATIONS between YOU, on the one part, and any PERSON (other than PLAINTIFFS, NBCUNIVERSAL, and AON), on the other part, that RELATE to PLAINTIFFS' claim that YOU breached YOUR coverage obligations in connection with the POLICY and/or the *DIG* CLAIM.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, have been, or will be, produced.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS that RELATE to the amount of any reserve that YOU considered or established in connection with the POLICY and/or the *DIG* CLAIM.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:** Atlantic objects to this Request on the grounds that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure, because they are not relevant to either party's claims or defenses. The amount of reserve set has no relation to either the contract-interpretation issue that this case presents or the issue of whether Atlantic investigated or handled the claim at issue properly.

Atlantic also objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents responsive to this Request that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, will not be produced because they are not relevant to either party's claims or defenses and are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

**REQUEST FOR PRODUCTION NO. 20:**

All agreements, registrations, filings, correspondence, memoranda, and all other DOCUMENTS that RELATE to ONEBEACON or any other PERSON acting as YOUR agent, representative, administrator, or broker in connection with the POLICY or the *DIG* CLAIM.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:** Atlantic objects to this Request on the grounds that it seeks documents that are outside the scope of discovery

permitted under Rule 26 of the Federal Rules of Civil Procedure. The documents sought are not relevant to either party's claims or defenses and are not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Nonetheless, to avoid a discovery dispute, Atlantic further responds as follows: The persons who were involved in the underwriting of the Policy or the handling of the *DIG* CLAIM were Atlantic employees, regardless of whether their communications to Plaintiffs or its representatives, including Plaintiffs' broker, contained the name OneBeacon on those communications. It is not Atlantic's intent to disavow such communications, which were sent on behalf of Atlantic.

**REQUEST FOR PRODUCTION NO. 21:**

All claims handling manuals, guidelines, policy statements, instructions, and other DOCUMENTS from January 1, 2010 through the present that RELATE to YOUR procedures in assessing, handling, or addressing insured's claims pursuant to commercial insurance products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties'

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, have been, or will be, produced, including a document entitled "CORE PRINCIPLES" and a document entitled "GENERAL CLAIMS PRACTICES."

**REQUEST FOR PRODUCTION NO. 22:**

DOCUMENTS sufficient to identify any claims of loss from January 1, 2001 to the present under any policy YOU or ONEBEACON issued and/or underwrote in which YOU or ONEBEACON considered, assessed, or addressed the WAR EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. As required by Rule 34(b)(2)(C), Atlantic states that documents responsive to this Request that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request and concern this claim, and which are not privileged, have been, or will be, produced.

Atlantic further objects to this Request to the extent that it seeks information that is outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. In particular, the definition of "WAR EXCLUSION" in the Request

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

includes not only the particular war exclusion in the POLICY but also any similar exclusion in other policies. Documents relating to other policies or claims is not relevant to either party's claims or defenses and is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. To find all documents responsive to this Request would be extremely burdensome, and Atlantic would have to manually locate and review each policy it has issued that may contain this particular exclusion and any related claim files.

Nonetheless, to avoid a discovery dispute, Atlantic further responds as follows: Thus far, Atlantic has not located any other claim in which it denied the claim in whole or in part on the basis of the WAR EXCLUSION. As counsel for Atlantic has stated in discussions with counsel for Plaintiffs, Atlantic has reviewed more than 36,000 documents identified in a search of its document management and e-mail system. One of the search terms used in the search that returned these documents was "war." That search looked for documents and e-mails dating back to July 2013. Atlantic can now confirm that it has identified no documents suggesting that any claims were denied on the basis of the WAR EXCLUSION. Atlantic, and its Informational Technology department in particular, have represented that a broader search that would encompass all e-mails and documents without any date restrictions would be nearly impossible. In lieu of searching for the WAR EXCLUSION in each and every one of the many millions of documents and e-mails that Atlantic and OneBeacon have generated over the course of their existences, Atlantic has made inquiries with its employees who oversee, and former employees who previously oversaw, the claims handling for the entertainment division of Atlantic and with employees of OneBeacon who oversee claims for all of OneBeacon's divisions. Those persons do not recall any claims that Atlantic denied on the grounds that the WAR EXCLUSION applied. Those persons

also do not recall any claims in which Atlantic considered the potential applicability of the WAR EXCLUSION or any part thereof but ultimately paid the claim despite the potential applicability of the WAR EXCLUSION. Atlantic has, however, found one e-mail that an employee of Atlantic, Daniel Gutterman, sent to himself, that concerns another claim, and which quotes the various policy language, including its WAR EXCLUSION. There are no other documents suggesting that the WAR EXCLUSION was considered any further in connection with that claim. This one e-mail is being produced as Bates No. ATL000785 – ATL000788.

**REQUEST FOR PRODUCTION NO. 23:**

A copy of each form policy YOU or ONEBEACON issued and/or underwrote from January 1, 2001 to the present with the WAR EXCLUSION, and any changes to the WAR EXCLUSION language.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Atlantic objects to this Request to the extent that it seeks information that is outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. Documents relating to other policies is not relevant to either party's claims or defenses and is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. To find all documents responsive to this Request would be extremely burdensome, and Atlantic would have to manually locate and review each policy it has issued that may contain this particular exclusion. Moreover, the policies that Atlantic has provided to any other insureds are wholly irrelevant to the meaning of the language in the policy that governs the relationship between the parties to this lawsuit. Atlantic further objects on the grounds that the Request is not reasonably limited in time. Atlantic is declining to produce responsive documents on the basis of these objections.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

Nonetheless, to avoid a discovery dispute, Atlantic further responds as follows: Atlantic is not currently aware of any indication that it changed the WAR EXCLUSION over time. It is continuing to discuss with its underwriters whether any such change has ever been implemented. As counsel for the parties have agreed, Atlantic will provide information on any changes to the WAR EXCLUSION that have ever been implemented in lieu of providing numerous policies that merely have the same WAR EXCLUSION that appears in the POLICY.

**REQUEST FOR PRODUCTION NO. 24:**

All claims handling manuals, guidelines, policy statements, instructions, and other DOCUMENTS (and any changes thereto) from January 1, 2001 through the present that RELATE to YOUR procedures in assessing, handling, or addressing the WAR EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. Atlantic further objects on the grounds that the Request is not reasonably limited in time. However, Atlantic responds that it has not located any documents responsive to this Request. But see the documents produced in response to Request No. 21.

**REQUEST FOR PRODUCTION NO. 25:**

Any financial statements, profit and loss statements, balance sheets, financial projections, or similar DOCUMENTS RELATING to YOUR profit/loss under the POLICY and under each of the earlier policies YOU issued to NBCUNIVERSAL (Policy Nos. MP00163-03; MP00163-02; MP00163-01; and Policy No. MP00163-00).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses. Atlantic also objects to this Request because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure. Atlantic is withholding documents on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS that RELATE to YOUR decision not to renew the POLICY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs).

Atlantic further objects to this Request because it seeks documents that are not relevant to either party's claims or defenses and are thus outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure for this additional reason.

However, the non-privileged documents responsive to this Request will be produced.

**REQUEST FOR PRODUCTION NO. 27:**

All DOCUMENTS that constitute, memorialize, evidence, or reflect YOUR

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

1515571.1 05608-054

31

ATLANTIC SPECIALTY INSURANCE COMPANY'S AMENDED RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

EXHIBIT 1, PAGE 36

internal COMMUNICATIONS that RELATE to YOUR decision not to renew the POLICY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs).

Atlantic further objects to this Request because it seeks documents that are not relevant to either party's claims or defenses and are thus outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure for this additional reason.

However, the non-privileged documents responsive to this Request will be produced.

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS that constitute, memorialize, evidence, or reflect COMMUNICATIONS between YOU, on the one part, and ONEBEACON, on the other part, that RELATE to YOUR decision not to renew the POLICY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs).

Atlantic further objects to this Request because it seeks documents that are not relevant to either party's claims or defenses and are thus outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure for this additional reason.

However, the non-privileged documents responsive to this Request will be produced.

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS that constitute, memorialize, evidence, or reflect COMMUNICATIONS between YOU and/or ONEBEACON, on the one part, and any of PLAINTIFFS, NBCUNIVERSAL, or AON, on the other part, that RELATE to YOUR decision not to renew the POLICY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:** Atlantic objects to this Request because it seeks documents that are not relevant to either party's claims or defenses and are thus outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure for this additional reason.

However, the non-privileged documents responsive to this Request will be produced.

**REQUEST FOR PRODUCTION NO. 30:**

All DOCUMENTS that constitute, memorialize, evidence, or reflect

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

COMMUNICATIONS between YOU, on the one part, and any PERSON (other than PLAINTIFFS, NBCUNIVERSAL, and AON), on the other part, that RELATE to YOUR decision not to renew the POLICY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, have been, or will be, produced.

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS supporting, contradicting, or otherwise RELATING to the allegation in YOUR ANSWER (¶ 29) that YOU "den[y] that [the *DIG* CLAIM] was properly tendered and submitted."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, have been, or will be, produced.

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS supporting, contradicting, or otherwise RELATING to each of the affirmative defenses YOU alleged in YOUR ANSWER to the COMPLAINT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:** Atlantic objects to this Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Privileged documents are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure.

As required by Rule 34(b)(2)(C), Atlantic states that responsive documents that are protected from disclosure by the attorney-client privilege or work-product doctrine, or that were prepared in anticipation of litigation or for trial, are being withheld from production. Privileged documents relating to this claim that are being withheld are listed on the Privilege Log previously provided to Plaintiffs' counsel or will be included on a Supplemental Privilege Log (except for those documents covered by the parties' agreement described on pages 2-3 of this Response that certain categories of documents need not be included on Atlantic's privilege logs). Atlantic's documents that are responsive to this Request, and which are not privileged, have been, or will be, produced.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS identified in YOUR initial disclosures pursuant to Fed. R. Civ. P. Rule 26(a)(1) served on September 16, 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:** These documents have been or will be produced.

DATED: December 16, 2016

MARC J. SHRAKE
ANDERSON, McPHARLIN & CONNERS LLP

-and-

MICHAEL KEELEY *(Pro Hac Vice)*
JOHN R. RIDDLE *(Pro Hac Vice)*
CARLA C. CRAPSTER *(Pro Hac Vice)*
STRASBURGER & PRICE, LLP

By: */s/ Michael Keeley*
Michael Keeley
Attorneys for Defendant ATLANTIC SPECIALTY INSURANCE COMPANY

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

1515571.1 05608-054

36

ATLANTIC SPECIALTY INSURANCE COMPANY'S AMENDED RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

EXHIBIT 1, PAGE 41

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**PROOF OF SERVICE**

I am employed in the County of Dallas, State of Texas. I am over the age of eighteen years and not a party to the within action; my business address is 901 Main Street, Suite 6000, Dallas, Texas 75202.

On December 16, 2016, I served the following document(s) described as **DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S AMENDED RESPONSES TO FIRST SET OF REQUESTS FOR PRODUCTION PROPOUNDED BY PLAINTIFFS UNIVERSAL CABLE PRODUCTIONS LLC AND NORTHERN ENTERTAINMENT PRODUCTIONS LLC** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Lucia E. Coyoca, Esq.
Valentine A. Shalamitski, Esq.
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs

**BY MAIL:** I am "readily familiar" with Strasburger & Price, LLP's practice for collecting and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Dallas, Texas, on that same day following ordinary business practices.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on December 16, 2016, at Dallas, Texas.

Marianna Green

# EXHIBIT 2

LUCIA E. COYOCA (SBN 128314)
lec@msk.com
VALENTINE A. SHALAMITSKI (SBN 236061)
vas@msk.com
DANIEL M. HAYES (SBN 240250)
dmh@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs
Universal Cable Productions LLC and
Northern Entertainment Productions LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,<br><br>Defendant. | CASE NO. 2:16-cv-4435-PA-MRW<br><br>**PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC'S AMENDED NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY**<br><br>Date: May 10 and 12, 2017<br>Time: 10:00 a.m.<br>Location: Meagher & Greer, PLLP<br>33 South Sixth Street<br>Suite 4400<br>Minneapolis, MN 55402 |

Mitchell Silberberg & Knupp LLP
8826126.3

**PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC'S AMENDED NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY**

EXHIBIT 2, PAGE 43

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff Universal Cable Productions LLC, by and through its counsel of record, will take the deposition of Defendant Atlantic Specialty Insurance Company ("Atlantic"), on the topics set forth in Exhibit A hereto. The deposition shall commence at 10:00 a.m. on May 10 and 12, 2017, and shall take place at the law offices of Meagher & Greer, PLLP, located at 33 South Sixth Street, Suite 400, Minneapolis, Minnesota 55402.

Atlantic must designate one or more of its officers, directors, managing agents or other persons who are most qualified, knowledgeable, and competent to testify on its behalf as to all matters known or reasonably available to Atlantic with respect to each of the topics set forth in Exhibit A.

The testimony will be taken upon oral examination, under oath, before a notary public or such other officer authorized to administer oaths. The deposition will be recorded stenographically, and by videotape and audiotape (and may be recorded by real time transcription). The deposition shall continue day to day until completed.

DATED: May 5, 2017

LUCIA E. COYOCA
VALENTINE A. SHALAMITSKI
DANIEL M. HAYES
MITCHELL SILBERBERG & KNUPP LLP

By: ______________________
Daniel M. Hayes
Attorneys for Plaintiffs
Universal Cable Productions LLC and Northern Entertainment Productions LLC

**EXHIBIT A**

**DEFINITIONS**

1. "ATLANTIC," "YOU," and "YOUR" mean Defendant Atlantic Specialty Insurance Company, its predecessors and successors in interest, its present and former directors, officers, agents, representatives, employees, attorneys, accountants, and all other PERSON(S) acting or purporting to act on its behalf, and specifically includes (but is not limited to) ONEBEACON.

2. "ONEBEACON" means OneBeacon Insurance Group LLC and OneBeacon Insurance Group, Ltd., their divisions or businesses known by any other trade names (*e.g.*, OneBeacon Entertainment), and their respective predecessors and successors in interest, their present and former directors, officers, agents, representatives, employees, attorneys, accountants, and all other PERSON(S) acting or purporting to act on their behalf.

3. "COMPLAINT" means the First Amended Complaint PLAINTIFFS filed in the above-entitled action (ECF No. 10).

4. "ANSWER" means the Answer to the COMPLAINT YOU filed in the above-entitled action (ECF No. 14).

5. "PLAINTIFFS" means Plaintiffs Universal Cable Productions LLC and Northern Entertainment Productions LLC.

6. "NBCUNIVERSAL" means NBCUniversal Media, LLC.

7. "AON" means Aon/Albert G. Ruben Insurance Services, Inc., NBCUNIVERSAL'S insurance broker.

8. "POLICY" means Motion Picture/Television Producers Portfolio Policy No. MP00163-04, attached as Exhibit A to the COMPLAINT.

9. "*DIG* INSURED PRODUCTION" means the television show at issue in the COMPLAINT (*see, e.g.*, COMPLAINT, ¶ 1) that was approved and/or

Mitchell Silberberg & Knupp LLP
8826126.3

2

PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC'S NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY

EXHIBIT 2, PAGE 45

accepted as an Insured Production under the POLICY and Policy No. MP00163-03 (*see, e.g.,* ANSWER, ¶ 21).

10. "*DIG* CLAIM" means the extra expense claim at issue in the COMPLAINT (*see, e.g.,* COMPLAINT, ¶ 29).

11. "WAR EXCLUSION" means any of the exclusions set forth in the General Conditions, Section III(1)-(4) of the POLICY, or any similar exclusion language in other versions of insurance policies issued and/or underwritten by YOU or ONEBEACON.

12. "COMMUNICATIONS" means all written, oral, telephonic, electronic, e-mail, or other inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, letters, notes, memoranda, telegrams, or interviews, and all documents evidencing and/or reflecting such communications.

13. "DOCUMENT(S)" means all "writings and recordings" as defined in Rule 1001 of the Federal Rules of Evidence, and includes but is not limited to the original, or a duplicate (as those terms are defined in Rule 1001) of any and all tangible things and documents, whether handwritten, typed, printed, or otherwise visually reproduced, including but not limited to letters, cables, wires, memoranda, inter-office and intra-office communications, reports, notes, e-mail messages, minutes, video recordings, audio recordings, other recordings, drawings, blueprints, sketches, charts, photographs, maps, printouts, books, records, any data not available in hard copy but contained in a computer drive or on a computer diskette, and any non-identical copies and drafts of the foregoing, in YOUR possession, custody, or control.

14. "PERSON(S)" means any natural person, firm, association, organization, partnership, business, trust, corporation, company, public or governmental agency or enterprise, or any other entity of any kind.

Mitchell Silberberg & Knupp LLP
8826126.3

3

PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC'S NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY

EXHIBIT 2, PAGE 46

15. "RELATE" or "RELATING" mean relating to, regarding, discussing, describing, identifying, mentioning, referring, evidencing, supporting, negating, constituting, or containing information about.

16. "COVERAGE FOR CERTIFIED ACTS OF TERRORISM ENDORSEMENT" means the "Coverage for Certified Acts of Terrorism; Cap on Losses" endorsement to the POLICY, No. IL 09 50 11 02, attached hereto as Exhibit B.

17. "PUBLICIS CLAIM" means the insurance claim involving rioting in Thailand identified by Daniel Gutterman during his February 3, 2017 deposition (*see, e.g.,* deposition transcript pages 120-136), and evidenced by Exhibit 14 to Mr. Gutterman's deposition and the documents labeled ATL004005-ATL004097 produced by ATLANTIC on February 23, 2017.

18. "MIDDLE EAST CLAIM" means the insurance claim involving a commercial that was going to be filmed in the Middle East but was cancelled or otherwise affected due to violence in the region, identified by Theresa Gooley during her February 8, 2017 deposition (*see, e.g.,* deposition transcript pages 32-38).

**TOPICS**

1. The *DIG* CLAIM.

2. ATLANTIC'S (1) investigation, evaluation, processing, review, and assessment of, and the legal and fact-based research pertaining to, the *DIG* CLAIM and the facts and transactions giving rise to it, and resolution of the *DIG* CLAIM; and (2) documentation of, and record-keeping in connection with, such investigation, evaluation, processing, review, research, assessment, and resolution.

3. All *DIG* CLAIM files, electronic or paper, including their creation and maintenance, and all past and present custodians, locations, and contents.

4. ATLANTIC'S decision to deny the *DIG* CLAIM.

4

Mitchell Silberberg & Knupp LLP
8826126.3

PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC'S NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY

EXHIBIT 2, PAGE 47

5. The facts, DOCUMENTS, and any other information that ATLANTIC reviewed in evaluating and considering the *DIG* CLAIM.

6. The facts, DOCUMENTS, and any other information that support or otherwise RELATE to ATLANTIC'S contention that the *DIG* CLAIM is not covered under the POLICY.

7. The facts, DOCUMENTS, and any other information that support or otherwise RELATE to ATLANTIC'S contention that the WAR EXCLUSION applies to exclude from coverage the loss that forms the basis of the *DIG* CLAIM.

8. The facts, DOCUMENTS, and any other information that support or otherwise RELATE to ATLANTIC'S contention that it complied with the implied covenant of good faith and fair dealing in its handling of the *DIG* CLAIM.

9. The basis of and all facts and circumstances underlying ATLANTIC'S denial of the allegations of the COMPLAINT, and ATLANTIC'S affirmative defenses in its ANSWER.

10. Any coverage opinion that ATLANTIC procured from outside legal counsel in connection with the *DIG* CLAIM, including (without limitation) any opinions provided by Leon Gladstone or Gene Weisberg.

11. The July 28, 2014 letter from Pamela A. Johnson attached hereto as Exhibit C, including (without limitation) the drafting and content thereof, and any research or investigation conducted prior to its preparation.

12. ATLANTIC'S decision to characterize the COVERAGE FOR CERTIFIED ACTS OF TERRORISM ENDORSEMENT as "terrorism coverage" which "should not apply," on Page 5 of the July 28, 2014 letter from Pamela A. Johnson attached hereto as Exhibit C.

13. The September 19, 2014 letter from Pamela A. Johnson attached hereto as Exhibit D, including (without limitation) the drafting and content thereof, and any research or investigation conducted prior to its preparation.

Mitchell Silberberg & Knupp LLP
8826126.3

5

PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC'S NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY

EXHIBIT 2, PAGE 48

14. The POLICY and its terms, including (without limitation) the meaning and scope of its coverage clauses, exclusions (including, without limitation, the WAR EXCLUSION and all other exclusions identified in ATLANTIC'S ANSWER), and endorsements (including, without limitation, the COVERAGE FOR CERTIFIED ACTS OF TERRORISM ENDORSEMENT).

15. ATLANTIC'S underwriting of the POLICY, including (without limitation) the risk assessment, premium calculation, and drafting of the POLICY.

16. The negotiation of the terms of the POLICY or any other insurance policy issued by ATLANTIC to any of PLAINTIFFS or NBCUNIVERSAL.

17. COMMUNICATIONS between ATLANTIC, on the one hand, and any of PLAINTIFFS, NBCUNIVERSAL, or AON, on the other hand, that RELATE to the addition of *Dig* as an insured production, or the request that *Dig* be added as an insured production.

18. ATLANTIC'S consideration of the request to add the *DIG* INSURED PRODUCTION as an insured production under the POLICY and ATLANTIC'S decision to approve the *DIG* INSURED PRODUCTION as an insured production under the POLICY, including, without limitation, any risk assessment or consideration of the security conditions in Israel.

19. The WAR EXCLUSION, including (without limitation) its origin, drafting history, any revisions, interpretation, and application in connection with other insurance claims.

20. ATLANTIC insurance policy forms that contain the WAR EXCLUSION, issued at any time during the time period January 1, 2001 to the present.

21. ATLANTIC'S internal policies, procedures, standards, guidelines, and instructions that apply or have applied to ATLANTIC'S decision as to whether to

Mitchell Silberberg & Knupp LLP
8826126.3

6

PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC'S NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY

EXHIBIT 2, PAGE 49

include or exclude the WAR EXCLUSION in or from its insurance policy forms, for the time period January 1, 2001 to the present.

22. ATLANTIC'S denial of coverage under any of its insurance policies, based on the application of the WAR EXCLUSION, for the time period January 1, 2001 to the present.

23. ATLANTIC'S consideration of the WAR EXCLUSION in connection with a claim under any of its insurance policies, for the time period January 1, 2001 to the present.

24. Any form of insurance policy issued by ATLANTIC, during the time period January 1, 2001 to the present, that contained a WAR EXCLUSION with terms that are different in any way from the terms of the WAR EXCLUSION contained in the POLICY.

25. COMMUNICATIONS between ATLANTIC, on the one hand, and any other PERSON, on the other hand, that RELATE to:

a. the POLICY;

b. the *DIG* INSURED PRODUCTION;

c. the *DIG* CLAIM; or

d. the WAR EXCLUSION.

26. COMMUNICATIONS between ATLANTIC, on the one hand, and any of PLAINTIFFS, NBCUNIVERSAL, or AON, on the other hand, that RELATE to:

a. the POLICY;

b. the *DIG* INSURED PRODUCTION;

c. the *DIG* CLAIM; or

d. the WAR EXCLUSION.

Mitchell Silberberg & Knupp LLP

8826126.3

7

PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC'S NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY

EXHIBIT 2, PAGE 50

27. All internal COMMUNICATIONS between or among ATLANTIC personnel, for the time period July 10, 2014 through and including September 20, 2014, that RELATE to:

a. the POLICY;

b. the *DIG* INSURED PRODUCTION;

c. the *DIG* CLAIM; or

d. the WAR EXCLUSION.

28. All COMMUNICATIONS between ATLANTIC, on the one hand, and any of its reinsurers, on the other hand, that RELATE to the *DIG* INSURED PRODUCTION or the *DIG* CLAIM, including, without limitation, ATLANTIC'S assessment of the *DIG* CLAIM and ATLANTIC'S and its reinsurers' exposure in connection with it.

29. ATLANTIC'S internal policies, procedures, standards, guidelines, and instructions applicable to (1) the investigation, evaluation, processing, review, and assessment of, and the legal and fact-based research pertaining to, claims made pursuant to its insurance policies, and the resolution of and decision to pay or deny such claims (including, without limitation, those contained in Deposition Exhibit 15 (entitled "General Claims Practices"), Deposition Exhibit 16 (entitled "Core Principles"), and the manual pertaining to entertainment claims identified by Peter Williams at Pages 36-42 of the transcript of his deposition); and (2) the documentation of, and record-keeping in connection with, such investigation, evaluation, processing, review, research, assessment, and resolution and decision.

30. ATLANTIC'S internal policies, procedures, standards, guidelines, and instructions applicable to the procurement of opinions from outside legal counsel (including (without limitation) on the issue of whether or not a loss is covered) in connection with the investigation, evaluation, processing, review, research, assessment, and resolution of insurance claims, including (without limitation) the

circumstances under which such opinions are or are not sought and the timing of seeking such opinions in relation to the receipt of an insurance claim and the resolution of the same.

31. ATLANTIC'S internal policies, procedures, standards, guidelines, and instructions applicable to the procurement of opinions from outside experts or independent adjusters in connection with the investigation, evaluation, processing, review, research, assessment, and resolution of insurance claims, including (without limitation) the circumstances under which such opinions are or are not sought and the timing of seeking such opinions in relation to the receipt of an insurance claim and the resolution of the same.

32. ATLANTIC'S file management and record-keeping systems (electronic and paper) for information and DOCUMENTS RELATING to insurance claims (including, without limitation, information and DOCUMENTS RELATING to the investigation, evaluation, processing, review, and assessment of, and the legal and fact-based research pertaining to, claims made pursuant to ATLANTIC'S insurance policies, and the resolution of and decision to pay or deny such claims), and the internal policies, procedures, standards, guidelines, and instructions that govern the same.

33. ATLANTIC'S internal policies, procedures, standards, guidelines, and instructions applicable to the creation, maintenance, and contents of files pertaining to claims made pursuant to its insurance policies (including, without limitation, those contained in Deposition Exhibit 15 (entitled "General Claims Practices"), Deposition Exhibit 16 (entitled "Core Principles"), and the manual pertaining to entertainment claims identified by Peter Williams at Pages 36-42 of the transcript of his deposition).

34. The manual pertaining to entertainment claims identified by Peter Williams at Pages 36-42 of the transcript of his deposition, including, without

Mitchell Silberberg & Knupp LLP
8826126.3

9

PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC'S NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY

EXHIBIT 2, PAGE 52

limitation, its drafting, where it is currently maintained, where it has ever previously been maintained, its past and present custodians, and, to the extent it no longer exists, why it does not exist (including, without limitation, whether it has been lost or destroyed).

35. ATLANTIC'S internal policies, procedures, standards, guidelines, and instructions applicable to (1) the investigation, evaluation, processing, review, and assessment of, and the legal and fact-based research pertaining to, claims made pursuant to its insurance policies that implicate a WAR EXCLUSION, and the resolution of and decision to pay or deny such claims; and (2) the documentation of, and record-keeping in connection with, such investigation, evaluation, processing, review, research, assessment, and resolution and decision.

36. ATLANTIC'S endorsement forms that RELATE to terrorism, used in any of ATLANTIC'S insurance policies at any time from January 1, 2001 to the present.

37. ATLANTIC insurance policy forms that contain an exclusion for loss caused by terrorism, issued at any time during the time period January 1, 2001 to the present.

38. ATLANTIC'S internal policies, procedures, standards, guidelines, and instructions that apply to the decision whether to include or exclude terms that exclude loss caused by terrorism, for the time period January 1, 2001 to the present.

39. ATLANTIC'S denial of coverage under any of its insurance policies, based on the application of policy terms that exclude loss caused by terrorism, for the time period January 1, 2001 to the present.

40. ATLANTIC'S consideration of policy terms that exclude loss caused by terrorism in connection with a claim under any of its insurance policies, for the time period January 1, 2001 to the present.

Mitchell Silberberg & Knupp LLP
8826126.3

10

PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC'S NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY

EXHIBIT 2, PAGE 53

41. ATLANTIC'S endorsement forms that RELATE to the "Terrorism Risk Insurance Act of 2002," including, without limitation, the COVERAGE FOR CERTIFIED ACTS OF TERRORISM ENDORSEMENT.

42. Instances (including, without limitation, in the context of litigation) since January 1, 2001, in which ATLANTIC has characterized Hamas as a terrorist organization or taken the position that certain acts by Hamas constitute acts of terrorism.

43. Insurance claims involving (1) Hamas, or (2) any conflict between Israel, on the one hand, and Hamas, Fatah, and/or Palestinians, on the other hand, since January 1, 2001, made pursuant to any ATLANTIC insurance policy.

44. The PUBLICIS CLAIM.

45. ATLANTIC'S (1) investigation, evaluation, processing, review, and assessment of, and the legal and fact-based research pertaining to, the PUBLICIS CLAIM and the facts and transactions giving rise to it, and the resolution of and decision on the PUBLICIS CLAIM; and (2) documentation of, and record-keeping in connection with, such investigation, evaluation, processing, review, research, assessment, and resolution and decision.

46. The MIDDLE EAST CLAIM.

47. ATLANTIC'S (1) investigation, evaluation, processing, review, and assessment of, and the legal and fact-based research pertaining to, the MIDDLE EAST CLAIM and the facts and transactions giving rise to it, and the resolution of and decision on the MIDDLE EAST CLAIM; and (2) documentation of, and record-keeping in connection with, such investigation, evaluation, processing, review, research, assessment, and resolution and decision.

48. ATLANTIC'S decision not to renew the POLICY.

Mitchell Silberberg & Knupp LLP
8826126.3

11

PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC'S NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY

EXHIBIT 2, PAGE 54

49. ATLANTIC'S purported decision to "significantly curtail issuance of policies involving major movie and television productions" in 2015, as set forth in ATLANTIC'S second amended response to Interrogatory No. 17.

50. The relationship between ATLANTIC and ONEBEACON.

51. Any reserve that ATLANTIC considered or established in connection with the POLICY or the *DIG* CLAIM, including (without limitation) the method and process used by ATLANTIC to set such reserve, and all factors considered. (For purposes of this topic, the term "reserve" means and refers to those estimates of loss as to potential liability for claims that ATLANTIC is required to or does maintain pursuant to California Insurance Code §925.3, or any other statute, code, rule, or regulation addressing reserve requirements.)

52. The profits ATLANTIC realized and the losses ATLANTIC incurred with respect to the POLICY, and any financial statements, profit and loss statements, balance sheets, financial projections, or similar DOCUMENTS relating to the same.

53. ATLANTIC'S gross revenue, total expenses, and net profit, for every year since January 1, 2012.

54. ATLANTIC'S preservation, search for and collection, and production of DOCUMENTS in connection with this litigation, including (without limitation) DOCUMENTS which may RELATE to the POLICY, the *DIG* INSURED PRODUCTION, the *DIG* CLAIM, the WAR EXCLUSION, or any party's claims or defenses, and the current location and general description of all such DOCUMENTS.

55. ATLANTIC'S efforts, in connection with this litigation, to preserve, search for, locate, or recover DOCUMENTS that RELATE to the WAR EXCLUSION included in the POLICY or any other ATLANTIC insurance policy.

56. ATLANTIC'S discovery responses in this litigation.

Mitchell Silberberg & Knupp LLP
8826126.3

12

PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC'S NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY

EXHIBIT 2, PAGE 55

# EXHIBIT B

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COVERAGE FOR CERTIFIED ACTS OF TERRORISM; CAP ON LOSSES

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYEE THEFT AND FORGERY POLICY
FARM COVERAGE PART
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY
KIDNAP/RANSOM AND EXTORTION COVERAGE FORM
KIDNAP/RANSOM AND EXTORTION POLICY
STANDARD PROPERTY POLICY

**A. Amendment**

Any exclusion of terrorism in this Coverage Part or Policy, or attached to such Coverage Part or Policy by endorsement, is hereby amended to the effect that such exclusion does not apply to a "certified act of terrorism".

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:

1. The act resulted in aggregate losses in excess of $5 million; and
2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Further, the aforementioned exclusion does not apply to an act which meets the criteria set forth in Paragraph 2. of the definition of "certified act of terrorism", when such act resulted in aggregate losses of $5 million or less.

**B. Cap On Certified Terrorism Losses**

With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**C. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

 © ISO Properties, Inc., 2002

# EXHIBIT C

EXHIBIT 2, PAGE 58


A Member of OneBeacon Insurance Group

Pamela A. Johnson
Assistant Vice President
One Beacon Entertainment
601 Carlson Parkway, Suite 600
Minnetonka, MN 55305

July 28, 2014

VIA EMAIL: Andrea.Garber@nbcuni.com

Andrea Garber
NBC Universal Media
30 Rockefeller Plaza, 2nd Floor
New York, NY 10112

| RE: | | |
|---|---|---|
| | **Claim Number:** | **OBI 66746** |
| | **Insured:** | **NBC Universal Media, LLC** |
| | **Policy Number:** | **MP00163-04** |
| | **Date of Loss:** | **July 10, 2014** |
| | **Type of Loss:** | **Extra Expense** |
| | **Underwriting Co.:** | **Atlantic Specialty Insurance Company** |

Dear Andrea:

This letter is to memorialize the information I provided to you in our telephone conversations last week. As I explained, we have evaluated NBCU's decision to move its production of the television series *DIG* from Israel to the United States or another country due to the imminent peril created by the escalated conflict between Israel and Hamas. We have concluded that the extra expense associated with the move is not covered under policy number MP00163-04 because of the exclusion for war and warlike actions. Our decision is based on information gathered about the situation in Israel, case law, treatises and consultation with counsel. A more detailed explanation of our decision is provided below:

**BACKGROUND FACTS**

On Thursday, July 10th, 2014, NBCU contacted Peter Williams, the President of OneBeacon Entertainment (OBE) and orally submitted a claim for extra expenses associated with a production delay caused by the heightened violence in that country. At the time, the production was shooting in Tel Aviv and Jerusalem. On Tuesday, July 7th, Hamas began firing rockets into those cities, which had not been the target of rocket attacks since 2012. Claiming that its personnel were in "imminent peril," the producers advised that they would push production by one week. This decision was based on reports from personnel in Tel Aviv and an email to the production dated July 10, 2014, from Stephen Smith, the head of NBCU security for Europe, stating:

> This is to advise you that the security environment in Israel currently prohibits NBCU Security from being able to guarantee the safety and security of our employees, production partners and associated crew and talent.
>
> NBCU Security have monitored and evaluated the events in Israel, Gaza and the West Bank, since inception and analyzed information from multiple sources. All current intelligence and activity in country points to events still being in escalation phase without a predictable or realistic timeframe for a reduction in hostilities. We have looked at the magnitude and range, of current rocket attacks (which appear to target locations to be used in forthcoming filming), the escalation of civil disorder and potential for a further increase in hostilities including a ground campaign and acts of terrorism within Israel, all of which mean there is no short term and realistic likelihood for positive changes to the security landscape.
>
> As the situation is unlikely to change, this raises significant concern over the level of risk facing our crew and talent, and the liability over duty of care to which NBCUniversal would be exposed. There are no current security controls that would allow NBCU Security to guarantee the safety and security of our personnel planning to arrive or currently based in Israel without the prospect of serious injury or loss of life. Personnel based in country in relation to this production should make arrangements to leave.

On Monday, July 14th, NBCU finalized its decision to push the production for one week and you communicated its decision to OBE in a telephone call with me, Danny Gutterman and NBC's broker, Susan Weiss. In that conversation, you also mentioned that if the hostilities did not deescalate, there was a chance that NBCU would decide to move the production to another country or back to the United States. We asked to be kept informed and we scheduled another call for Friday, July 18th.

In the meantime, the hostilities between Israel and Hamas worsened. On Tuesday, July 15th, Hamas refused to agree to a cease-fire suggested by Egypt. In response, Israeli President Netanyahu gave the military authorization to use "full force" against militants in Gaza stating, "Hamas chose to continue fighting and will pay the price for that decision. . . . When there is no cease-fire, our answer is fire."

According to the Washington Post, citing Israeli news reports, "by early Wednesday morning, Israel had struck at least 25 targets inside Gaza, including the home of a senior Hamas leader, Mahmoud Al Zahar. Hamas militants fired at least 13 rockets into southern Israel, seven of which were intercepted by Israel's Iron Dome air defense system." Israel then called up an additional 18,000 reservists and announced plans for a ground attack on Gaza. Israel dropped leaflets into Gaza warning the population to evacuate. On Thursday, Israel began a ground invasion into Gaza, including the use of tanks and gunboats.

On Thursday afternoon, we had another telephone conversation which included Danny Gutterman and Susan Weiss. In this conversation, you informed us that NBCU had decided to move the production due to the ongoing hostilities which were creating dangerous conditions in Tel Aviv and Jerusalem. I informed you that we were seriously considering whether the exclusion for war and warlike actions would preclude coverage for the claim. Peter Williams had informed Susan Weiss the night before that we were evaluating whether the exclusion would apply to the situation in Israel. You and Susan Weiss both protested, asserting that the situation in Israel did not constitute a war because Hamas was a terrorist organization, not a governmental authority and that there had been no formal declaration of war. I informed you that we were still considering the matter and we would get back to you on Monday, July 21st with our final decision. At that time, I informed you that our final decision was to exclude the claim based on the exclusion, but as a courtesy, we would cover the expenses related to the initial push in production.

PERTINENT POLICY PROVISIONS

OneBeacon, through Atlantic Specialty Insurance Company, issued policy no. MP00163-04 to NBCUniversal Media, LLC, effective from January 1, 2014, to June 30, 2015. That policy contains extra expense coverage, which includes the following pertinent provisions:

I. INSURING AGREEMENT

We agree to pay to you such loss (as defined in Paragraph VII) not including loss of earnings or profit, as you sustain by reason of such extra expense you necessarily incur as a result of the interruption, postponement, cancellation, relocation, curtailment or abandonment of an Insured Production due to the following:

1. The loss must be a direct result of an unexpected, sudden or accidental occurrence entirely beyond your control to include:

* * *

g) Imminent peril, defined as certain, immediate and impending danger of such probability and severity to person or property that it would be unreasonable or unconscionable to ignore.

h) Any expenses incurred to avoid a loss imminent peril are covered to the extent that they serve to avoid a loss otherwise covered.

2. Except as provided above, this extension does not negate the applicability of the basic terms and conditions of:

ATL000096

a) The Extra Expense Coverage in the event that an imminent peril results in damage to or destruction of property or facilities payable under this policy . . .

The policy's General Conditions contain the following exclusion applicable to all sections of the policy:

> This policy does not insure against loss or damage caused directly or indirectly by:
>
> 1. War, including undeclared or civil war; or
>
> 2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
>
> 3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> 4. Any weapon of war including atomic fission or radioactive force, whether in time of peace or war;
>
> * * *
>
> 8. Any uninsured event occurring before, concurrently with or after the happening of an insured event, which directly or indirectly causes or in any way contributes to cause or increase a loss under this policy; but only with respect to that portion of any such loss caused by or contributed to by the uninsured event, unless the uninsured event would not have been a factor had such insured event never occurred.

The policy contains coverage for Certified Acts of Terrorism. The term "certified act of terrorism" is defined as follows:

> An act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:
>
> 1. The act resulted in aggregate losses in excess of $5 million; and

ATL000097



2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. . . .

**ANALYSIS**

*Imminent Peril*

Based on Mr. Smith's email to the production and what we know about the present conflict, we believe that the extra expenses that will be incurred to move the production out of Israel will be due to imminent peril. Rockets launched toward areas where filming is taking place would no doubt reasonably constitute a "certain, immediate and impending danger of such probability and severity to person or property that it would be unreasonable or unconscionable to ignore." With hostilities increasing, there remains a certain, immediate and impending danger. The question now is not whether the loss falls within the insuring clause but whether the war exclusion or the terrorism coverage applies.

*Terrorism Coverage*

The terrorism coverage should not apply because, under its terms, the act must be part of an effort to coerce or influence the United States population or government. The acts being carried out in Israel are part of a long-term dispute between Hamas and Israel. The focus is not the United States or its policy. Moreover, the U.S. Secretary of the Treasury has not certified the events as acts of terrorism. Thus, we do not believe the terrorism coverage would apply.

*War Exclusion*

The key question is whether the hostilities causing the imminent peril will be considered to be a war, or warlike action by a military force. Case law and other treatises indicate that this would be the likely finding. Therefore, the war exclusion should apply.

*War*

Subparagraph 1 of the war exclusion states that no coverage is provided for loss or damage caused directly or indirectly by "war, including undeclared . . . war." Statutes defining "war" in various contexts, and cases that have interpreted war exclusions in insurance policies, provide assistance in determining whether the loss presented here was caused by war.

In *Wilkinson v. Equitable Life Assurance Soc.*, 2 Misc. 2d 249 (N.Y. Mun. Ct. 1956), considered whether the Korean conflict in the 1950s was a war even though it was not a declared war:

> We must take the view that words are to be taken in their plain, ordinary, popular sense and that they are to be considered as they would be understood by the average man. "Contracts of insurance are to be construed according to the sense and meaning of the

ATL000098

> terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense." [Citation.]
>
> The likelihood of death by external, violent and accidental means is immeasurably increased by military service in time of war. . . . Our courts have held it to be entirely proper for an insurer to limit its liability in situations involving war risks. [Citation.]
>
> While it is true that there was no formal declaration of war by Congress, there can be no doubt that the United States was engaged in a war in Korea as an actual fact.

*Id.*, at 251. The court cited a 1951 Attorney General opinion finding that "[t]he magnitude and actuality of the conflict in Korea, its pervading effect upon the national security and interest, together with the demands created thereby upon the nation as a whole are too apparent to need recounting. . . . They require the conclusion that the Korean hostilities constitute a war for the purpose of determining eligibility under Military Law, Section 210, for the assistance intended thereby for war veterans disabled by blindness." *Id.* at 251-252.

Appleman on Insurance discusses exclusions for war, including the meaning of war and similar terms. "War is 'a course of hostility' between 'states or state-like entities.' To constitute a de facto state, a group must have 'significant attributes of sovereignty' and the application of this exclusion is fact-specific."

Black's Law Dictionary defines a "war" as a "[h]ostile conflict by means of armed forces, carried on between nations, states, or rulers, or sometimes between parties within the same nation or state." 8th ed. at 1614. A leading dictionary of international law defines an "act of war" as a "use of force or other action by one state against another [which t]he state acted against recognizes . . . as an act of war, either by use of retaliatory force or a declaration of war." James R. Fox, Dictionary of International and Comparative Law, 3d ed. (2003). Another dictionary defines an "act of war" as "a measure of force which one party, using military instruments of power, implements against another party in an international armed conflict." The Handbook of Humanitarian Law in Armed Conflicts, 49 (Dieter Fleck, ed., 1995).

Hamas has become the government of the Gaza Strip. Hamas has a military wing, the Qassam Brigades, as well as a force of police, security and intelligence personnel[1] Our understanding is that it is Hamas's military wing that has carried out the attacks on Israel that led to NBCU's claim. "Hamas directs the Gaza government and security forces through a self-appointed cabinet of Hamas ministers . . ."[2]

Thus, although Gaza or Palestine is not a recognized nation, at least by most of the world, it does have some indicia of sovereignty. It governs territory and it is this territory from which the attacks on Israel have come. Hamas has a stated goal of destroying Israel and is using

[1] Zanotti, *Hamas: Background and Issues for Congress* (Congressional Research Service 2010).

[2] *Id.*, at p. 19.

ATL000099

weapons in its quest. Although the rockets are being fired into civilian areas, which may violate established norms of warfare and armed conflict under international law, this is not a situation where a single civilian, or group of civilians, is the target. This conflict involves sophisticated military weapons fired from one territory into another country, Israel. We believe that the only reasonable interpretation of what is occurring, and that has led to NBCU's action, is war or warlike action.

We note that NBCU affiliate company, MSNBC, has referred to the conflict as a war for the past several days. This should be considered in taking into account the insured's reasonable expectations.

*Warlike Action By A Military Force*

Even if what occurred, and is occurring, would not be found to be a war, it is nevertheless a "warlike action." However, if this is the case, to be excluded under Subparagraph 2 of the exclusion, the warlike action must be by a "military force." There is no question that one side of the conflict, the Israeli side, is a military force of a sovereign nation. But if it is necessary that the military force must be the one firing rockets at the areas where the filming was occurring, we must determine whether Hamas is a military force. As to this question, we believe that Hamas is a military force of a government, the government of Gaza. Even though many, including Israel and the United States, consider Hamas to be a terrorist group, it is the government of a territory that is involved in the conflict. Hamas operates a military command in the Gaza Strip, a territory it has controlled since 2007.[3] It operates its military force through self-appointed ministers. *Id.*, at p. 19. In light of the governmental structure within Gaza, the Hamas military in Gaza fits the definition of a military force. The current structure represents a considerable evolution from the Hamas that carried out the isolated terrorist attacks in the 1990's and the first few years of the 21st century.

Thus, the only reasonable interpretation of the situation that led to NBCU's decision to postpone the *Dig* production and its ultimate decision to move the production from Israel is that the imminent peril that led to these decisions was caused by war, or warlike action by a military force. As a result, we believe the war exclusion applies to this claim

<u>CONCLUSION</u>

NBCU is a valued and respected client of OBE and we regret that we cannot be of more assistance in this situation. Although we cannot cover the extra expense associated with the production's move to another country to complete production, based on our long relationship with NBC, we are willing to cover the expenses associated with the initial postponement as a courtesy. Please submit the initial budget, the costs associated with the removal of personnel from Israel and an itemization of any payment made to personnel that NBCU was contractually obligated to pay from the date the decision was made to postpone production until July 17th, the date we informed you that the war exclusion would likely apply to this claim.

Pursuant to California Code of Regulations, you have the right to request a review of this matter by the California Department of Insurance. You may contact the Department at telephone number 1-800- 927-

---

[3] Zanotti, *Hamas: Background and Issues for Congress* (Congressional Research Service 2010).

4357, or you may write to the Department of Insurance, Claims Services Bureau, 300 S. Spring Street, Los Angeles, California 90013.

If you have any further questions, please don't hesitate to contact me.

Sincerely,

ATLANTIC SPECIALTY INSURANCE COMPANY

By:_________/s/____________________

Pamela A. Johnson
Assistant Vice President
OneBeacon Entertainment

cc: Susan Weiss (via email)
Senior Vice President
Aon/Albert G. Ruben Insurance Services, Inc.
15303 Ventura Blvd., Suite 1200
Sherman Oaks, CA 91403-5817

ATL000101

# EXHIBIT D



A Member of OneBeacon Insurance Group

Pamela A. Johnson
Assistant Vice President
One Beacon Entertainment
601 Carlson Parkway, Suite 600
Minnetonka, MN 55305

September 19, 2014

VIA EMAIL: lec@msk.com

Lucia E. Coyoca, Esq.
Mitchell Silberberg & Knupp LLP
11377 West Olympic Blvd.
Los Angeles, California 90064-1683

| Re: | Claim Number: | OBI66746 |
|---|---|---|
| | Insured: | NBCUniversal Media, LLC |
| | Policy Number: | MP00163-04 |
| | Underwriting Co.: | Atlantic Specialty Ins. Co. |

Dear Ms. Coyoca:

I'm writing in response to your August 13, 2014, letter, in which you asked Atlantic Specialty Insurance Company to reconsider the coverage position set forth in our July 28, 2014, letter to Andrea Garber of NBCUniversal Media ("NBCU"). We have carefully considered the points that you raised in your letter. Having done so, we must respectfully advise you that it remains our conclusion that the insurance policy does not insure the claim.

Please refer to our July 28 letter in which we have summarized the facts of the claim, as we understand them.

During the conflict which extended until August 26, 2014, 2,143 Palestinians and 69 Israelis, were killed, Israel struck 5,283 targets in Gaza, Hamas fired 4,564 rockets into Israel and more than 50,000 buildings in Gaza were damaged or destroyed.[1]

We are familiar with the case law and other references that you cited in your letter. Based on that and other information, we cannot agree with your position that the policy's war exclusion

---

[1] This information was gathered from the Canadian Broadcasting Company, The Guardian, The Economist, The BBC World News, The Times of Israel, as well as other sources.

ATL000705

does not apply. We also do not agree that there is any "lack of precision" in that language. The war exclusion states:

> This policy does not insure against loss or damage caused directly or indirectly by:
>
> 1. War, including undeclared or civil war; or
>
> 2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
>
> 3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> 4. Any weapon of war including atomic fission or radioactive force, whether in time of peace or war;
>
> * * *
>
> 8. Any uninsured event occurring before, concurrently with or after the happening of an insured event, which directly or indirectly causes or in any way contributes to cause or increase a loss under this policy; but only with respect to that portion of any such loss caused by or contributed to by the uninsured event, unless the uninsured event would not have been a factor had such insured event never occurred.

Subparagraph 1 of the war exclusion states that no coverage is provided for loss or damage caused directly or indirectly by "war, including undeclared . . . war." Statutes defining "war" in various contexts, and cases that have interpreted war exclusions in insurance policies, demonstrate that the loss presented here was caused by war. This language makes it explicit that the war need not be a declared war. By referring to "warlike action" in addition to "war," the clear intent is for the exclusion to be broad enough to encompass war, conflicts that look like war and specifically actions to defend against an actual or expected attack. Here, Israel, which is indisputably a sovereign government, invaded Gaza to protect its people from a continuing attack from the military arm of Hamas. Regardless of whether Hamas is defined as a terrorist organization, Israel's actions and the resulting escalation fall squarely within the exclusion. The initiating barrage of rocket fire and the subsequent Israeli invasion constitute "warlike acts" as defined by the policy. This is consistent with how cases have interpreted war exclusions, as discussed in our July 28 letter.

In *Wilkinson v. Equitable Life Assurance Soc.*, 2 Misc. 2d 249 (N.Y. Mun. Ct. 1956), discussed in our letter, the court considered whether the Korean conflict in the 1950s was a war, even though it was not a declared war, and discussed Pennsylvania cases determining whether accidental death benefits were owed when an insured was killed in Korea:

> To hold that under the provisions of this policy the Korean war is not war in the face of 128,000 American casualties is so unrealistic and legalistic as to be utterly unjustifiable, and we cannot shut our eyes to what everyone knows, that there has been, and was when the insured was killed, actually and in reality a war in Korea in which the United States has been seriously engaged. It is clear that nothing in the question of insurance involved herein suggests that the word "war" is used in its technical or legal sense. It is clear that the plain, ordinary and generally accepted meaning of the word "war" is war in fact. It is clear that there was war in fact in Korea when the insured was killed and that he was killed in "time of war".

*Id.*, at 252, citing *Beley v. Pennsylvania Mut. Life Ins. Co.*, 373 Pa. 231 (1953).

Similarly, as the casualty and damage numbers discussed above show, the Israel/Gaza conflict clearly was a war. With thousands of casualties, thousands of rockets fired, and more than 60,000 buildings damaged or destroyed in about two months of combat, the only realistic conclusion is that this was a war. No doubt this is why NBCU affiliate company, MSNBC, has referred to the conflict as a war, demonstrating its understanding that the conflict was a war.

In *Pan American World Airways, Inc. v. Aetna Casualty & Surety Co.*, 505 F.2d 989 (2d Cir. N.Y. 1974), which you cite in your letter, the district court found that damage from an airplane hijacking was not caused by war, and the Court of Appeals affirmed. Among the key reasons for this decision was that the Popular Front for the Liberation of Palestine ("PFLP"), who was responsible for the hijacking, was not a "state or state-like entity." It controlled no territory and was neither a de facto nor actual government. It had no significant attributes of sovereignty. The PFLP was not accorded the rights of a government. Thus, the court held that the hijacking was a criminal act, rather than a warlike one with military overtones, carried out by a radical political group, not a sovereign government.

Unlike the PFLP in *Pan Am*, since 2007 Hamas has been the government of the Gaza Strip. As previously noted, Hamas has a military wing, the Qassam Brigades, as well as a force of police, security, and intelligence personnel.[2] Our understanding is that it is Hamas's military wing that carried out the attacks on Israel that led to NBCU's claim. "Hamas directs the Gaza government and security forces through a self-appointed cabinet of Hamas ministers . . ."[3]

Unlike the PFLP in *Pan Am*, although Gaza or Palestine is not a recognized nation, at least by most of the world, it does have some indicia of sovereignty. Military weapons were fired from Hamas-governed territory into another country, Israel. Even though many, including Israel and the United States, consider Hamas to be a terrorist group, it is the government of a territory that is involved in the conflict. The Hamas military in Gaza fits the definition of a military force.

---

[2] Zanotti, *Hamas: Background and Issues for Congress* (Congressional Research Service 2010), which you cited in your letter.

[3] *Id.*, at p. 19.

You seem to assert that a government that is deemed to be a terrorist organization cannot have sufficient sovereignty to fall within the war exclusion. That is not correct. For example, the governments of North Korea and Saddam Hussein era Iraq were called terrorists, but no one would argue that they are not sovereign states or that the war exclusion would not apply to conflicts involving them. Further, as explained above, the Israeli government participated in the conflict and invaded Gaza. There is no question that the Israeli government is identified by the majority of world governments as a legitimate sovereign, not a terrorist organization.

The only reasonable interpretation of the situation that led to the production's extraction from Israel is that it was caused by war, or warlike action by a military force. As a result, the war exclusion applies.

We note that you cited California law regarding interpreting the policy. Because the policy was issued in New York, it is likely that New York law will apply. Nevertheless, both states construe contracts to give effect to the parties' mutual intentions at the time of contracting. The interpretation discussed in this and our earlier letter does that.

Regarding the Coverage For Certified Acts Of Terrorism endorsement, you are correct that it does not apply. Therefore, this endorsement does not provide a basis for granting any coverage for the claim.

For these reasons, and as explained in our July 28 letter, no coverage can be provided for the claim. As you suggested, we are willing to meet with NBCU to further discuss this matter, if NBCU thinks it would be helpful.

This letter is not intended to be exhaustive. Atlantic Specialty continues to reserve the right to rely on all appropriate facts, law, and policy provisions in connection with this matter. No rights are waived.

Sincerely,

ATLANTIC SPECIALTY INSURANCE COMPANY

By:_________/s/______________________

Pamela A. Johnson
Assistant Vice President
OneBeacon Entertainment

cc: Susan Weiss (via email)
Senior Vice President
Aon/Albert G. Ruben Insurance Services, Inc.
15303 Ventura Blvd., Suite 1200
Sherman Oaks, CA 91403-5817

ATL000708

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California, I am over the age of eighteen years and am not a party to this action; my business address is Mitchell Silberberg & Knupp LLP, 11377 West Olympic Boulevard, Los Angeles, CA 90064-1683, and my business email address is m1b@msk.com.

On May 5, 2017, I served a copy of the foregoing document(s) described as amended **PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC'S AMENDED NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY** on the interested parties in this action at their last known address as set forth below by taking the action described below:

Marc J. Shrake, Esq.
ANDERSON, MCPHARLIN & CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, CA 90017-3623
Tel: (213) 236-1691
Fax: (213) 622-7594
Email: mjs@amclaw.com

*Attorneys for Defendant Atlantic Specialty Insurance Company*

☑ **BY PERSONAL DELIVERY**: I placed the above-mentioned document(s) in sealed envelope(s), and caused personal delivery by [Name of Person] of the document(s) listed above to the person(s) at the address(es) set forth above.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on May 5, 2017, at Los Angeles, California.

Mark Betti
Mark Betti

Mitchell Silberberg & Knupp LLP

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California, I am over the age of eighteen years and am not a party to this action; my business address is Mitchell Silberberg & Knupp LLP, 11377 West Olympic Boulevard, Los Angeles, CA 90064-1683, and my business email address is m1b@msk.com.

On May 5, 2017, I served a copy of the foregoing document(s) described as amended **PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC'S AMENDED NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY** on the interested parties in this action at their last known address as set forth below by taking the action described below:

Michael Keeley, Esq.
Toni Scott Reed
Carla C. Crapster, Esq.
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, TX 75202
Tel: (214) 651-4300
Fax: (214) 651-4330
Email: michael.keeley@strasburger.com; toni.Reed@strasburger.com; carla.crapster@strasburger.com

*Attorneys for Defendant Atlantic Specialty Insurance Company*

☑ **BY ELECTRONIC MAIL**: I served the above-mentioned document electronically before 5:00 p.m. on the parties listed at the email addresses above and, to the best of my knowledge, the transmission was complete and without error in that I did not receive an electronic notification to the contrary.

☑ **BY MAIL**: I placed the above-mentioned document(s) in sealed envelope(s) addressed as set forth above, and deposited each envelope in the mail at Los Angeles, California. Each envelope was mailed with postage thereon fully prepaid.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on May 5, 2017, at Los Angeles, California.

Mark Betti

Mark Betti

# EXHIBIT 3

MARC J. SHRAKE (SBN 219331)
mjs@amclaw.com
ANDERSON, MCPHARLIN & CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623
Telephone: (213) 236-1691
Facsimile: (213) 622-7594

MICHAEL KEELEY *(Pro Hac Vice)*
michael.keeley@strasburger.com
JOHN R. RIDDLE *(Pro Hac Vice)*
john.riddle@strasburger.com
TONI SCOTT REED *(Pro Hac Vice)*
toni.reed@strasburger.com
CARLA C. CRAPSTER *(Pro Hac Vice)*
carla.crapster@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

Attorneys for Defendant
Atlantic Specialty Insurance Company

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,

Plaintiffs,

vs.

ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,

Defendant.

Case No. 2:16-cv-04435-PA-MRW

**DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S RESPONSES TO SECOND SET OF INTERROGATORIES PROPOUNDED BY PLAINTIFFS UNIVERSAL CABLE PRODUCTIONS LLC AND NORTHERN ENTERTAINMENT PRODUCTIONS LLC**

/ / /

/ / /

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

/ / /

PROPOUNDING PARTY: Plaintiffs UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC

RESPONDING PARTY: Defendant ATLANTIC SPECIALTY INSURANCE COMPANY

SET NO.: Two

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant ATLANTIC SPECIALTY INSURANCE COMPANY ("Atlantic") hereby submits these amended objections and responses to the First Set of Interrogatories propounded by Plaintiffs UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC ("Propounding Parties").

**PRELIMINARY STATEMENT**

Nothing in this response should be construed as an admission by Atlantic with respect to the admissibility or relevance of any fact, or of the truth or accuracy of any characterization or statement of any kind, contained in Propounding Parties' Interrogatories. Atlantic has not completed its investigation of the facts relating to this case, its discovery or its preparation for trial. All responses and objections contained herein are based only upon information that is presently available to and specifically known by Atlantic. It is anticipated that further discovery, independent investigation, legal research and analysis may supply additional facts and add meaning to known facts, as well as new factual conclusions and legal contentions, all of which may lead to additions to, changes in and variations from the responses set forth herein. The following objections and responses are made without prejudice to Atlantic's right to produce at trial, or otherwise, evidence regarding any subsequently discovered information. Atlantic accordingly reserves the right to

modify and amend any and all responses herein as research is completed and contentions are made.

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO.18:** IDENTIFY each PERSON involved in the decision to approve the *DIG* INSURED PRODUCTION as an insured production under the POLICY.

**RESPONSE TO INTERROGATORY NO. 18** The following persons were involved in the decision to approve the *DIG* INSURED PRODUCTION as an insured production under the POLICY:

a. Ms. Wanda Phillips, formerly the Underwriting Manager for OneBeacon Entertainment. Ms. Phillips is currently an underwriter with Allianz Global Corporate & Specialty. Her current business address is believed to be 1 Chase Manhattan Plaza #37, New York, NY 10005. Her current phone number and e-mail address are not known.

b. Ms. Bernadette Milinovic, an administrative assistant in the underwriting department of OneBeacon Entertainment. Ms. Milinovic's current business address is 77 Water Street New York, NY 10005. Her current e-mail address is bmilinovic@onebeacon.com. Her current phone number is 212-440-6581.

**INTERROGATORY NO.19:** IDENTIFY all COMMUNICATIONS between ATLANTIC or ONEBEACON, on the one hand, and any other PERSON (including, without limitation, any of PLAINTIFFS, NBCUNIVERSAL, or AON), on the other hand, that RELATE to the POLICY, the *DIG* INSURED PRODUCTION, the *DIG* CLAIM, or the WAR EXCLUSION.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**RESPONSE TO INTERROGATORY NO. 19** Atlantic objects to this interrogatory to the extent that it seeks information that is protected from disclosure by the attorney-client privilege and/or work-product doctrine and/or was prepared in anticipation of litigation or for trial. Such information is outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. Atlantic further objects to this interrogatory on the grounds that it is overly broad and would be unduly burdensome for Atlantic to answer, as it would be a very long and detailed list to set forth every communication (whether verbal, written, and/or electronic) on all the subject matter stated in the interrogatory. As the Plaintiffs are aware as a result of Atlantic's large production of documents in this case, there are many communications between Atlantic and third parties (including AON and various affiliates of NBC Universal Media, LLC) regarding the POLICY, *DIG*, and the *DIG* CLAIM. Atlantic further responds that it has produced all COMMUNICATIONS responsive to this request that are not privileged or otherwise protected (with one caveat discussed below), and Atlantic therefore refers to and incorporates by referenced, as if fully set forth herein, the documents it has produced in this case, as the response to this interrogatory may be determined by examining those documents, and the burden of ascertaining such response is substantially the same for the Plaintiffs as it would be for Atlantic.

With respect to the portion of the Interrogatory that seeks any COMMUNICATIONS between Atlantic and any other PERSON regarding the WAR EXCLUSION, which is defined broadly enough to encompass any exclusion relating to war in any policy Atlantic has ever issued, Atlantic objects on the grounds that the Interrogatory seeks information that is outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. Documents relating to other policies or claims are not relevant to either party's

claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. To find all COMMUNICATIONS regarding any reference to war responsive to this Interrogatory would be extremely burdensome. Atlantic would have to conduct an electronic search of every single document and e-mail created since January 1, 2001 (more than sixteen years ago), for the word "war." This is many, many millions of documents that would need to be searched. Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Each one of these divisions generates many millions of documents and e-mails every year. According to Atlantic's Information Technology Department, because there are so many millions of documents created in Atlantic's and OneBeacon's documents in the past sixteen years, this search would take many months to run, not including the time it would take a human to review the documents returned as responsive.

Nonetheless, to avoid a discovery dispute, Atlantic further responds as follows: Thus far, excluding the documents relating to the *DIG* CLAIM, Atlantic has not located any correspondence between Atlantic and any third party relating to any WAR EXCLUSION. As counsel for Atlantic has stated in various discussions with counsel for Plaintiffs, Atlantic has reviewed more than 36,000 documents identified in a search of its document management and e-mail system. One of the search terms used in the search that returned these documents was "war." That search looked for documents and e-mails dating back to July 2013. Atlantic, and its Informational Technology department in particular, have represented that a broader search that

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

would encompass all e-mails and documents without any date restrictions would be nearly impossible. In lieu of searching for the WAR EXCLUSION in each and every one of the many millions of documents and e-mails that Atlantic and OneBeacon have generated over the course of their existences, Atlantic has made inquiries with its employees who oversee, and former employees who previously oversaw, the claims handling for the entertainment division of Atlantic and with employees of OneBeacon who oversee claims for all of OneBeacon's divisions. Those persons also do not recall any claims in which Atlantic considered the potential applicability of the WAR EXCLUSION or any part thereof. Theresa Gooley has also testified in her deposition regarding her discussions with departments other than entertainment, which testimony is incorporated by reference. Atlantic has, however, found one e-mail that an employee of Atlantic, Daniel Gutterman, sent to himself, that concerns another claim, and which quotes the various policy language, including its WAR EXCLUSION. There are no other documents suggesting that the WAR EXCLUSION was considered any further in connection with that claim. This one e-mail has been produced as Bates No. ATL000785 – ATL000788. Additionally, the claim file and other materials for such claim have been produced.

Verbal communications occurred on many dates, and many of those are referenced in the written documents produced herein. Atlantic again incorporates by reference such documents produced in discovery. Atlantic also incorporates by reference the testimony of witnesses in the case, in which verbal communications have been identified.

**INTERROGATORY NO. 20:** Does ATLANTIC contend it relied on the advice of its lawyer(s) in denying the *DIG* CLAIM?

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**<u>RESPONSE TO INTERROGATORY NO. 20</u>:** Atlantic objects to this interrogatory on the grounds same is vague and ambiguous. As counsel for Atlantic has explained, as a factual matter, to counsel for the Plaintiffs, Atlantic obtained a coverage opinion prepared by Leon Gladstone and Gene Weisberg of Gladstone Weisberg ALC, dated July 21, 2014, prior to the issuance of Atlantic's letter denying the *DIG* CLAIM. This coverage opinion was obtained after a telephone discussion with the insured and its broker on July 17, 2014, regarding the potential application of the war exclusion language, and the position taken in response by the insured. Atlantic reviewed the coverage opinion after obtaining it. Atlantic has not, however, asserted the advice-of-counsel defense in this case, and it does not intend to. Atlantic refers to and incorporates by reference its pleadings on file in regard to its legal theories and defenses.

**<u>INTERROGATORY NO. 21</u>:** If the answer to the previous Interrogatory is anything other than an unqualified "no," state all facts and IDENTIFY all DOCUMENTS that support ATLANTIC'S response to Interrogatory No. 20, and IDENTIFY all PERSONS that have knowledge of such facts or DOCUMENTS.

**<u>RESPONSE TO INTERROGATORY NO. 21</u>:** Atlantic objects to this Interrogatory because it is vague and ambiguous, and to the extent that it seeks information or information about documents protected from disclosure by the attorney-client privilege and/or work-produce doctrine and/or was prepared in anticipation of litigation or for trial. Such information is outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. Subject to and without waiving these objections, the facts that support Atlantic's answer are set forth in response to Interrogatory No. 20 and the Defendant's pleadings on file.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

Atlantic is not aware of any DOCUMENTS that "support" its statements made in response to Interrogatory No. 20, other than pleadings filed by Atlantic, which set forth its legal defenses relief upon in this case. Such a document is a public filing, which is incorporated by reference, to which access can be made by persons interest in such a record. Finally, this subject has been discussed in writing in correspondence between the counsel in the case.

**INTERROGATORY NO. 22:** IDENTIFY each instance (including, without limitation, in the context of litigation) since January 1, 2001, in which ATLANTIC or ONEBEACON has characterized Hamas as a terrorist organization or taken the position that certain acts by Hamas constitute acts of terrorism. (For purposes of this Interrogatory, "IDENTIFY" means describe the characterization or the position taken, and the circumstances under which the characterization was made or the position taken. If applicable, "IDENTIFY" also means state the name of the parties and case number of the litigation in which the characterization was made or the position taken, and describe the pleading or other filing in which the characterization was made or the position taken.)

**RESPONSE TO INTERROGATORY NO. 22:** Atlantic objects to this Interrogatory on the grounds that it seeks information that is outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks information that is not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. To

definitively confirm whether any instances referenced in the Interrogatory have ever occurred, Atlantic would have to conduct an electronic search of every single document and e-mail created since January 1, 2001 (more than sixteen years ago), for the word "Hamas." This is many, many millions of documents that would need to be searched. Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Each one of these divisions generates many millions of documents and e-mails every year. According to Atlantic's Information Technology Department, because there are so many millions of documents created in Atlantic's and OneBeacon's documents in the past sixteen years, this search would take many months to run, not including the time it would take a human to review the documents returned as responsive.

Subject to and without waiving these objections, in lieu of conducting the nearly impossible search that the Plaintiffs have requested, Atlantic has conducted inquiries of the Vice President of Claims of OneBeacon Entertainment, the Chief Claims Officer for all of OneBeacon Insurance Group, the Senior Vice President of Claims for Atlantic, and the Chief Claims Counsel of OneBeacon Insurance Group's Claims Legal Group to determine whether they could recall any instances in which ATLANTIC or ONEBEACON characterized Hamas as a terrorist organization or took the position that certain acts by Hamas constitute acts of terrorism. None of those persons could recall any such instances. [NOTE: STILL NEED TO CONFIRM THIS FACT.] Moreover, as counsel for Atlantic has stated in discussions with counsel for Plaintiffs, Atlantic has reviewed more than 36,000 documents identified in a search of its document management and e-mail system. One of the search terms used in the search that returned these documents was "Hamas." That search looked for documents and e-mails dating back to July 2013. Atlantic can confirm based on its review of those 36,000 documents that it found

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

none in which Atlantic or OneBeacon had characterized Hamas as a terrorist organization or taken the position that acts by Hamas constitute acts of terrorism. Based on this review and its inquiries, Atlantic represents that it is not aware of any instance in which ATLANTIC or ONEBEACON has characterized Hamas as a terrorist organization or taken the position that certain acts by Hamas constitute acts of terrorism.

With respect to discussions of Hamas in the context of this claim, Atlantic refers to the letters to the insured that mention Hamas.

**INTERROGATORY NO. 23:** IDENTIFY all insurance claims since January 1, 2001, made pursuant to any ATLANTIC or ONEBEACON insurance policy, that RELATE to (1) Hamas, or (2) any conflict between Israel, on the one hand, and Hamas and/or Palestinians, on the other hand. (For purposes of this Interrogatory, "IDENTIFY" means state the date of the claim, describe the type of policy and loss at issue, state the policy number, and describe the outcome of the claim (*i.e.*, accepted and paid or denied).)

**RESPONSE TO INTERROGATORY NO. 23:** Atlantic objects to this Interrogatory on the grounds that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Interrogatory seeks information that is not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. To

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

definitively confirm that there neither Atlantic nor OneBeacon has ever handled another claim involving Israel and Palestine, Atlantic would have to conduct an electronic search of every single document and e-mail created since January 1, 2001 (more than sixteen years ago), for the words "Palestine" and "Israel." This is many, many millions of documents that would need to be searched. Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Each one of these divisions generates many millions of documents and e-mails every year. According to Atlantic's Information Technology Department, because there are so many millions of documents created in Atlantic's and OneBeacon's documents in the past sixteen years, this search would take many months to run, not including the time it would take a human to review the documents returned as responsive.

Subject to and without waiving these objections, other than the claim at issue in this lawsuit, of which the Plaintiffs are already aware, in lieu of conducting the nearly impossible search that the Plaintiffs have requested, Atlantic has made inquiries with its employees who oversee, and former employees who previously oversaw, the claims handling for the entertainment division of Atlantic and with employees of OneBeacon who oversee claims for all of OneBeacon's divisions. None of those persons recall any claims, other than the DIG CLAIM involving a conflict between Palestine and Israel.

Moreover, as counsel for Atlantic has stated in discussions with counsel for Plaintiffs, Atlantic has reviewed more than 36,000 documents identified in a search of its document management and e-mail system. Some of the search terms used in the search that returned these documents were "Hamas," and "Israel." That search looked for documents and e-mails dating back to July 2013. Atlantic can confirm

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

based on its review of those 36,000 documents that it found none suggesting that Atlantic or OneBeacon have ever handled any other claims involving Hamas or a conflict between Israel and Palestine.

Based on its review of the 36,000 documents and its inquiries, Atlantic represents that it is not aware of any insurance claims since January 1, 2001, made pursuant to any ATLANTIC or ONEBEACON insurance policy, that RELATE to (1) Hamas, or (2) any conflict between Israel, on the one hand, and Hamas and/or Palestinians, on the other hand.

**INTERROGATORY NO. 24:** IDENTIFY each PERSON that has knowledge of any fact or DOCUMENT that supports any denial or affirmative defense set forth in ATLANTIC'S ANSWER (including, without limitation, any fact or DOCUMENT that supports ATLANTIC'S contention that the *DIG* CLAIM is not covered by the POLICY or that ATLANTIC complied with the implied covenant of good faith and fair dealing in its handling of the *DIG* CLAIM).

**RESPONSE TO INTERROGATORY NO. 24:** Atlantic objects to this interrogatory to the extent that it seeks information that is protected from disclosure by work-product doctrine and/or was prepared in anticipation of litigation or for trial. Such information is outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. Atlantic further objects to this Interrogatory on the grounds that it is overly broad an unduly burdensome, and appears to be an attempt to avoid the limit of 25 interrogatories imposed by Federal Rule of Civil Procedure 33(a)(1), given that it asks for persons with knowledge of multiple facts, and multiple DOCUMENTS, and multiple affirmative defenses. Moreover, it would be truly impossible for Atlantic to respond fully to this Interrogatory. Atlantic has

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

identified, in response to earlier interrogatories, many dozens of news articles and videos and scholarly articles and publications that Atlantic contends support its position in this case. Atlantic has no way of knowing who might have any knowledge whatsoever of all such documents. This case involves facts and articles that are available to the public at large, and Atlantic has no way of identifying all persons who have familiarity with those facts and articles, nor would any such information be relevant to this lawsuit. Subject to and without waiving these objections, Atlantic directs the Plaintiffs to its responses to Interrogatories No. 1 and 2 for a list of Atlantic employees who were involved in the consideration and analysis of the claim at issue in this lawsuit and who were responsible for the decision to deny the claim, and further directs the plaintiffs to the following Atlantic employee who has knowledge of Atlantic's position in this case:

a. Mr. Aaron Stone, the current Vice President of Claims for OneBeacon Entertainment. Mr. Stone's current business address is 605 Highway 169 North, Suite 800, Plymouth, MN 55441. Mr. Stone's current phone number is 952-852-0829. Mr. Stone's current e-mail address is astone@onebeacon.com.

**The persons identified above may only be contacted through counsel of record for Atlantic.**

**INTERROGATORY NO. 25:** Unless your response to each request for admission served with these interrogatories is an unqualified admission, for each response that is not an unqualified admission: state the number of the request; state all facts and IDENTIFY all DOCUMENTS that support ATLANTIC'S response; and IDENTIFY all persons that have knowledge of such facts or DOCUMENTS.

**<u>RESPONSE TO INTERROGATORY NO. 25</u>:** Atlantic objects to this Interrogatory on the grounds that it is far too broad and unduly burdensome, and appears to be an attempt to avoid the limit of 25 interrogatories imposed by Federal Rule of Civil Procedure 33(a)(1). Atlantic refuses to answer this Interrogatory on those grounds.

DATED: March 13, 2017

MARC J. SHRAKE
ANDERSON, McPHARLIN & CONNERS LLP

-and-

MICHAEL KEELEY *(Pro Hac Vice)*
JOHN R. RIDDLE *(Pro Hac Vice)*
TONI SCOTT REED *(Pro Hac Vice)*
CARLA C. CRAPSTER *(Pro Hac Vice)*
STRASBURGER & PRICE, LLP

By: */s/ Michael Keeley*
Michael Keeley
Attorneys for Defendant ATLANTIC SPECIALTY INSURANCE COMPANY

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**VERIFICATION**

I, Aaron Stone , declare and state as follows:

I have read the **DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S RESPONSES TO SECOND SET OF INTERROGATORIES PROPOUNDED BY PLAINTIFFS UNIVERSAL CABLE PRODUCTIONS LLC AND NORTHERN ENTERTAINMENT PRODUCTIONS LLC** ("Responses") and I am familiar with its contents thereof. I am Vice President of Claims of Atlantic Specialty Insurance Company ("Atlantic Specialty"), and am authorized to make this verification on behalf of Atlantic Specialty.

These Responses are limited by the records and information in existence, presently collected and thus far discovered in the course of preparation of these Responses. Based thereon, I am informed and believe that the matters stated in these Responses as to Atlantic Specialty are true and on that ground certify under penalty of perjury under the laws of the United States of America that the same are true and correct.

Executed this 13th day of March, 2017, at Plymouth, Minnesota.

Aaron Stone

Notary Public

HANNAH MEGAN OLSON
NOTARY PUBLIC
MINNESOTA
My Commission Expires
January 31, 2020

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

## PROOF OF SERVICE

I am employed in the County of Dallas, State of Texas. I am over the age of eighteen years and not a party to the within action; my business address is 901 Main Street, Suite 6000, Dallas, Texas 75202.

On March 13, 2017, I served the following document(s) described as **DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S RESPONSES TO SECOND SET OF INTERROGATORIES PROPOUNDED BY PLAINTIFFS UNIVERSAL CABLE PRODUCTIONS LLC AND NORTHERN ENTERTAINMENT PRODUCTIONS LLC** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Lucia E. Coyoca, Esq.
Valentine A. Shalamitski, Esq.
Daniel M. Hayes, Esq.
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs

**BY MAIL:** I am "readily familiar" with Strasburger & Price, LLP's practice for collecting and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Dallas, Texas, on that same day following ordinary business practices.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on March 13, 2017, at Dallas, Texas.

Marianna Green

16
ATLANTIC SPECIALTY INSURANCE COMPANY'S RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

EXHIBIT 3, PAGE 89

# EXHIBIT 4

MARC J. SHRAKE (SBN 219331)
mjs@amclaw.com
ANDERSON, MCPHARLIN & CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623
Telephone: (213) 236-1691
Facsimile: (213) 622-7594

MICHAEL KEELEY *(Pro Hac Vice)*
michael.keeley@strasburger.com
JOHN R. RIDDLE *(Pro Hac Vice)*
john.riddle@strasburger.com
TONI SCOTT REED *(Pro Hac Vice)*
toni.reed@strasburger.com
CARLA C. CRAPSTER *(Pro Hac Vice)*
carla.crapster@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

Attorneys for Defendant
Atlantic Specialty Insurance Company

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,

Plaintiffs,

vs.

ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,

Defendant.

Case No. 2:16-cv-04435-PA-MRW

**DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC'S SECOND SET OF REQUESTS FOR PRODUCTION**

/ / /

1

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 90

/ / /

/ / /

PROPOUNDING PARTY: Plaintiffs UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC

RESPONDING PARTY: Defendant ATLANTIC SPECIALTY INSURANCE COMPANY

SET NO.: Two

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant ATLANTIC SPECIALTY INSURANCE COMPANY ("Atlantic") hereby submits these OBJECTIONS AND RESPONSES TO THE SECOND SET OF REQUESTS FOR PRODUCTION PROPOUNDED BY PLAINTIFF UNIVERSAL CABLE PRODUCTIONS LLC ("Propounding Party").

**PRELIMINARY STATEMENT**

Nothing in this response should be construed as an admission by Atlantic with respect to the admissibility or relevance of any fact, or of the truth or accuracy of any characterization or statement of any kind, contained in Propounding Parties' Interrogatories. Atlantic has not completed its investigation of the facts relating to this case, its discovery or its preparation for trial. All responses and objections contained herein are based only upon information that is presently available to and specifically known by Atlantic. It is anticipated that further discovery, independent investigation, legal research and analysis may supply additional facts and add meaning to known facts, as well as new factual conclusions and legal contentions, all of which may lead to additions to, changes in and variations from the responses set forth herein. The following objections and responses are made without prejudice to Atlantic's right to produce at trial, or otherwise, evidence regarding any subsequently discovered

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

information. Atlantic accordingly reserves the right to modify and amend any and all responses herein as research is completed and contentions are made.

**RESPONSES TO REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS that RELATE to ATLANTIC'S or ONEBEACON'S standards for the investigation, processing, review, and/or assessment of insurance claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses because of the unreasonable time frame (the request contains no time frame whatsoever) and because it seeks documents relating to the handling of all commercial insurance products. This particular dispute involves only one particular type of "insurance product": a Motion Picture/Television Producers Portfolio. Atlantic also objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity. It is not clear what Propounding Party means by all documents that "RELATE" to Atlantic's procedures in assessing, handling, or addressing insured's claims. Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

Atlantic has already produced the documents that governed the handling of the claim that is the subject of this litigation. Atlantic is declining to produce any further responsive documents on the basis of these objections.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

3

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 92

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS that RELATE to ATLANTIC'S or ONEBEACON'S standards for the investigation, processing, review, and/or assessment of insurance claims that implicate a WAR EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:** Atlantic objects to this Request because it is vague and to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses. Atlantic further objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity. It is not clear what the Propounding Party means by all documents that "RELATE" to Atlantic's or OneBeacon's standards for the investigation, processing, review, and/or assessment of insurance claims that implicate a WAR EXCLUSION. Atlantic further objects on the grounds that the Request is not reasonably limited in time. Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

Subject to and without waiving these objections, Atlantic represents that it has no documents specifically relating to the standards for the investigation, processing, review, and/or assessment of insurance claims that implicate a WAR EXCLUSION. Finally, Atlantic states that it has already produced those documents governing claims handling.

**REQUEST FOR PRODUCTION NO. 36:**

An exemplar of each ATLANTIC or ONEBEACON endorsement form that RELATES to terrorism, used in any of ATLANTIC'S or ONEBEACON'S insurance

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

policies at any time from January 1, 2001 to the present, and all prior drafts of said exemplars.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Whether there is coverage under the POLICY issued by Atlantic to the Plaintiffs depends solely on the terms of that POLICY. Other policy forms relating to terrorism are not relevant to coverage. Moreover, the dispute between the parties is whether certain war and war-related exclusions apply, and the resolution of this issue is in no way impacted by whether there is coverage for terrorism in other policy forms. Further, an effort to locate all documents responsive to this Request would be extremely burdensome, in that Atlantic would have to manually review each policy it has issued for any endorsements related to terrorism. Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Neither company has an automated system that would allow it to search for such policy forms. As a result, it would literally require employees in each division to manually search for such policy forms. This would take many months to do. Atlantic's only way of narrowing down its search is to electronically search *all* documents in its database for the word "terror." But according to Atlantic's Informational Technology Department, conducting this electronic search itself would take many months. Atlantic would have to conduct an electronic search of every single document and e-mail created since January 1, 2001 (more than sixteen years ago), for

5

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 94

the word "terror." This is many, many millions of documents that would need to be searched because, as noted above, Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Each one of these divisions generates many millions of documents and e-mails every year. According to Atlantic's Information Technology Department, because there are so many millions of documents created in Atlantic's and OneBeacon's documents in the past sixteen years, this search would take many months to run, not including the time it would take a human to review the documents returned as responsive, which in and of itself would likely take many months.

Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

Atlantic is declining to produce responsive documents on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS that RELATE to the drafting or revising of any ATLANTIC or ONEBEACON endorsement form that RELATES to terrorism, used in any of ATLANTIC'S or ONEBEACON'S insurance policies at any time from January 1, 2001 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

6

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 95

stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Whether there is coverage under the POLICY issued by Atlantic to the Plaintiffs depends solely on the terms of that POLICY. Other policy forms or endorsements relating to terrorism are not relevant to coverage. Moreover, the dispute between the parties is whether certain war and war-related exclusions apply, and the resolution of this issue is in no way impacted by the language of other endorsements addressing terrorism. Further, an effort to locate all documents responsive to this Request would be extremely burdensome, in that Atlantic would have to manually review each policy it has issued for any endorsements related to terrorism and find the documents "RELATED" to drafting or revising those policies. Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Neither company has an automated system that would allow it to search for either the endorsements themselves or the documents "RELATING" to drafting or revising them. As a result, it would literally require employees in each division to manually search for endorsements and the documents related to drafting or revising them. This would take many months to do. Atlantic's only way of narrowing down its search is to electronically search *all* documents in its database for the word "terror." But according to Atlantic's Informational Technology Department, conducting this electronic search itself would take many months. Atlantic would have to conduct an electronic search of every single document and e-mail created since January 1, 2001 (more than sixteen years ago), for the word "terror." This is many, many millions of documents that would need to be searched because, as noted above, Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Each one of these divisions generates many millions of documents and e-mails every year. According to Atlantic's

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

7

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 96

Information Technology Department, because there are so many millions of documents created in Atlantic's and OneBeacon's documents in the past sixteen years, this search would take many months to run, not including the time it would take a human to review the documents returned as responsive, which in and of itself would likely take many months.

Atlantic further objects on the grounds that the Request is not reasonably limited in time. Atlantic further objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity. It is not clear what the Propounding Party means by all documents that "RELATE" to the drafting and revising of any endorsements related to terrorism. Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

Atlantic is declining to produce responsive documents on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 38:**

An exemplar of each ATLANTIC or ONEBEACON insurance policy form that contains an exclusion from coverage for loss caused by terrorism, issued at any time during the time period January 1, 2001 to the present, and all prior drafts of said policy forms.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

8

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 97

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Whether there is coverage under the POLICY issued by Atlantic to the Plaintiffs depends solely on the terms of that POLICY. Other policy forms relating to terrorism are not relevant to coverage. Moreover, the dispute between the parties is whether certain war and war-related exclusions apply, and the resolution of this issue is in no way impacted by terrorism exclusions in other policy forms. Further, an effort to locate all documents responsive to this Request would be extremely burdensome, in that Atlantic would have to manually review each policy it has issued for any exclusions related to terrorism. Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Neither company has an automated system that would allow it to search for specific exclusion in various policy forms. As a result, it would literally require employees in each division to manually search all policies for any terrorism exclusion. This would take many months to do. Atlantic's only way of narrowing down its search is to electronically search *all* documents in its database for the word "terror." But according to Atlantic's Informational Technology Department, conducting this electronic search itself would take many months. Atlantic would have to conduct an electronic search of every single document and e-mail created since January 1, 2001 (more than sixteen years ago), for the word "terror." This is many, many millions of documents that would need to be searched because, as noted above, Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Each one of these divisions generates many millions of documents and e-mails every year. According to Atlantic's Information Technology Department, because there are so many millions of documents created in Atlantic's and OneBeacon's documents in the past sixteen years, this search would take many months

9

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 98

to run, not including the time it would take a human to review the documents returned as responsive, which in and of itself would likely take many months.

Atlantic further objects on the grounds that the Request is not reasonably limited in time.

Atlantic is declining to produce responsive documents on the basis of these objections.

**<u>REQUEST FOR PRODUCTION NO. 39</u>:**

All DOCUMENTS that RELATE to the drafting or revising of any exclusion of loss caused by terrorism from coverage under any of ATLANTIC'S or ONEBEACON'S insurance policy forms issued at any time from January 1, 2001 to the present.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 39</u>:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Whether there is coverage under the POLICY issued by Atlantic to the Plaintiffs depends solely on the terms of that POLICY. Other policy forms relating to terrorism are not relevant to coverage. Moreover, the dispute between the parties is whether certain war and war-related exclusions apply, and the resolution of this issue is in no way impacted by the language of other exclusions addressing terrorism, let alone the documents related to the drafting or revising of such exclusions.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

10

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 99

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

Further, an effort to locate all documents responsive to this Request would be extremely burdensome, in that Atlantic would have to manually review each policy it has issued for any exclusions related to terrorism and find the documents "RELATED" to drafting or revising those policies. Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Neither company has an automated system that would allow it to search for either terrorism exclusions themselves or the documents "RELATING" to drafting or revising them. As a result, it would literally require employees in each division to manually search for all exclusions relating to terrorism and the documents related to drafting or revising them. This would take many months to do. Atlantic's only way of narrowing down its search is to electronically search *all* documents in its database for the word "terror." But according to Atlantic's Informational Technology Department, conducting this electronic search itself would take many months. Atlantic would have to conduct an electronic search of every single document and e-mail created since January 1, 2001 (more than sixteen years ago), for the word "terror." This is many, many millions of documents that would need to be searched because, as noted above, Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Each one of these divisions generates many millions of documents and e-mails every year. According to Atlantic's Information Technology Department, because there are so many millions of documents created in Atlantic's and OneBeacon's documents in the past sixteen years, this search would take many months to run, not including the time it would take a human to review the documents returned as responsive, which in and of itself would likely take many months.

Atlantic further objects on the grounds that the Request is not reasonably limited in time. Atlantic further objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity. It is not clear what the Propounding

11

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 100

Party means by all documents that "RELATE" to the drafting and revising of any exclusion of loss caused by terrorism. Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

Atlantic is declining to produce responsive documents on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 40:**

All DOCUMENTS that RELATE to a decision by ATLANTIC or ONEBEACON to include or exclude terms in an insurance policy that would exclude loss caused by terrorism from coverage, for the time period January 1, 2001 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Whether there is coverage under the POLICY issued by Atlantic to the Plaintiffs depends solely on the terms of that POLICY. Whether Atlantic or OneBeacon have included terrorism exclusions in other policies is not relevant to coverage. Moreover, the dispute between the parties is whether certain war and war-related exclusions apply, and the resolution of this issue is in no way impacted by the language of other exclusions in other policies addressing terrorism. Further, an effort to

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

locate all documents responsive to this Request would be extremely burdensome, in that Atlantic would have to manually review each policy it has issued for any exclusions related to terrorism and find the documents "RELATED" to the decision of whether to include such an exclusion in the relevant policy. Moreover, Atlantic would have to review every policy *without* a terrorism exclusion and search for whether there are any documents relating to a decision *not* to include such an exclusion. Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Neither company has an automated system that would allow it to search *every single policy* one of them has issued over the last 16 years (after locating all such policies, which are not stored together) and search for any documents "RELATING" to a decision of whether to include a terrorism exclusion or not. As a result, it would literally require employees in each division to manually search every single underwriting file created over the last 16 years. This would undoubtedly take many *many* months to do. Atlantic further objects on the grounds that the Request is not reasonably limited in time. Atlantic further objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity. It is not clear what the Propounding Party means by all documents that "RELATE" to the decision to include or not include a terrorism exclusion. Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

Atlantic is declining to produce responsive documents on the basis of these objections.

13

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 102

**REQUEST FOR PRODUCTION NO. 41:**

All DOCUMENTS that RELATE to a decision by ATLANTIC or ONEBEACON to deny coverage under any of its insurance policies, based on the application of policy terms that exclude loss caused by terrorism, for the time period January 1, 2001 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Atlantic does not allege that Plaintiffs' claims are not covered because of a terrorism exclusion, or because the acts at issue constitute terrorism. Therefore, the requested documents are not relevant to any issue in this lawsuit. Further, an effort to locate all documents responsive to this Request would be extremely burdensome, in that Atlantic would have to manually review each of its claim files created over the last sixteen years to determine whether the claim was denied on the grounds that a terrorism exclusion applied. Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Neither company has an automated system that would allow it to search its claim files for whether a claim was denied on the grounds of a terrorism exclusion. As a result, it would literally require employees in each division to manually search through each claim file created over the last 16 years. This would take many months to do. Atlantic's only way of narrowing down its search is to electronically

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

search *all* documents in its database for the word "terror." But according to Atlantic's Informational Technology Department, conducting this electronic search itself would take many months. Atlantic would have to conduct an electronic search of every single document and e-mail created since January 1, 2001 (more than sixteen years ago), for the word "terror." This is many, many millions of documents that would need to be searched because, as noted above, Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Each one of these divisions generates many millions of documents and e-mails every year. According to Atlantic's Information Technology Department, because there are so many millions of documents created in Atlantic's and OneBeacon's documents in the past sixteen years, this search would take many months to run, not including the time it would take a human to review the documents returned as responsive, which in and of itself would likely take many months.

Atlantic further objects on the grounds that the Request is not reasonably limited in time. Atlantic further objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity. It is not clear what the Propounding Party means by all documents that "RELATE" to the decision to deny on the basis of a terrorism exclusion. Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

For Atlantic to even confirm whether it has any documents responsive to this Request would be burdensome and require an extensive search. Atlantic objects to having to conduct such a search and therefore cannot state for certain whether it is withholding any documents responsive to this Request.

15

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 104

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**<u>REQUEST FOR PRODUCTION NO. 42</u>:**

All DOCUMENTS that RELATE to the consideration by ATLANTIC or ONEBEACON of policy terms that exclude loss caused by terrorism, in connection with a claim under any of its insurance policies, for the time period January 1, 2001 to the present.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 42</u>:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Atlantic does not allege that Plaintiffs' claims are not covered because of a terrorism exclusion, or because the acts at issue constitute terrorism. Therefore, the requested documents are not relevant to any issue in this lawsuit. Further, an effort to locate all documents responsive to this Request would be extremely burdensome, in that Atlantic would have to manually review each of its claim files created over the last sixteen years to determine whether Atlantic or OneBeacon considered whether to deny the claim on the grounds that a terrorism exclusion applied. Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Neither company has an automated system that would allow it to search its claim files for whether a terrorism exclusion was considered in the claim analysis. As a result, it would literally require employees in each division to manually search through each claim file created over the

16

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 105

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

last 16 years. This would take many months to do. Atlantic's only way of narrowing down its search is to electronically search *all* documents in its database for the word "terror." But according to Atlantic's Informational Technology Department, conducting this electronic search itself would take many months. Atlantic would have to conduct an electronic search of every single document and e-mail created since January 1, 2001 (more than sixteen years ago), for the word "terror." This is many, many millions of documents that would need to be searched because, as noted above, Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Each one of these divisions generates many millions of documents and e-mails every year. According to Atlantic's Information Technology Department, because there are so many millions of documents created in Atlantic's and OneBeacon's documents in the past sixteen years, this search would take many months to run, not including the time it would take a human to review the documents returned as responsive, which in and of itself would likely take many months.

Atlantic further objects on the grounds that the Request is not reasonably limited in time. Atlantic further objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity. It is not clear what the Propounding Party means by all documents that "RELATE" to consideration of any terrorism exclusion in connection with a claim. Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

For Atlantic to even confirm whether it has any documents responsive to this Request would be burdensome and require an extensive search. Atlantic objects to having to conduct such a search and therefore cannot state for certain whether it is withholding

17

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 106

any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS that RELATE to any instance in which ATLANTIC or ONEBEACON compensated its insured for a loss caused by terrorism, in connection with a claim under any of its insurance policies, for the time period January 1, 2001 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Atlantic does not allege that Plaintiffs' claims are not covered because of a terrorism exclusion, or because the acts at issue constitute terrorism. Therefore, the requested documents are not relevant to any issue in this lawsuit. Further, an effort to locate all documents responsive to this Request would be extremely burdensome, in that Atlantic would have to manually review each of its claim files created over the last sixteen years to determine whether the claim involved terrorism and was paid. Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Neither company has an automated system that would allow it to search its claim files for whether a claim involved terrorism or whether a claim was paid. As a result, it would literally require employees in each division to manually search through each claim file created over the last 16 years. This would take many months to do. Atlantic's only way of narrowing

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

18

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 107

down its search is to electronically search *all* documents in its database for the word "terror." But according to Atlantic's Informational Technology Department, conducting this electronic search itself would take many months. Atlantic would have to conduct an electronic search of every single document and e-mail created since January 1, 2001 (more than sixteen years ago), for the word "terror." This is many, many millions of documents that would need to be searched because, as noted above, Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Each one of these divisions generates many millions of documents and e-mails every year. According to Atlantic's Information Technology Department, because there are so many millions of documents created in Atlantic's and OneBeacon's documents in the past sixteen years, this search would take many months to run, not including the time it would take a human to review the documents returned as responsive, which in and of itself would likely take many months.

Atlantic further objects on the grounds that the Request is not reasonably limited in time. Atlantic further objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity. It is not clear what the Propounding Party means by all documents that "RELATE" to any claim paid that involved terrorism. Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

19
ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION
EXHIBIT 4, PAGE 108

For Atlantic to even confirm whether it has any documents responsive to this Request would be burdensome and require an extensive search. Atlantic objects to having to conduct such a search and therefore cannot state for certain whether it is withholding any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS that RELATE to any instance in which ATLANTIC or ONEBEACON determined that a loss caused by terrorism was a covered loss, in connection with a claim under any of its insurance policies, for the time period January 1, 2001 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Atlantic does not allege that Plaintiffs' claims are not covered because of a terrorism exclusion, or because the acts at issue constitute terrorism. Therefore, the requested documents are not relevant to any issue in this lawsuit. Further, an effort to locate all documents responsive to this Request would be extremely burdensome, in that Atlantic would have to manually review each of its claim files created over the last sixteen years to determine whether the claim involved terrorism and was paid. Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Neither company

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

20

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 109

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

has an automated system that would allow it to search its claim files for whether a claim involved terrorism or whether a claim was paid. As a result, it would literally require employees in each division to manually search through each claim file created over the last 16 years. This would take many months to do. Atlantic's only way of narrowing down its search is to electronically search *all* documents in its database for the word "terror." But according to Atlantic's Informational Technology Department, conducting this electronic search itself would take many months. Atlantic would have to conduct an electronic search of every single document and e-mail created since January 1, 2001 (more than sixteen years ago), for the word "terror." This is many, many millions of documents that would need to be searched because, as noted above, Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Each one of these divisions generates many millions of documents and e-mails every year. According to Atlantic's Information Technology Department, because there are so many millions of documents created in Atlantic's and OneBeacon's documents in the past sixteen years, this search would take many months to run, not including the time it would take a human to review the documents returned as responsive, which in and of itself would likely take many months.

Atlantic further objects on the grounds that the Request is not reasonably limited in time. Atlantic further objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity. It is not clear what the Propounding Party means by all documents that "RELATE" to any instance in which Atlantic determined that a claim involving terrorism was covered. Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

21

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 110

For Atlantic to even confirm whether it has any documents responsive to this Request would be burdensome and require an extensive search. Atlantic objects to having to conduct such a search and therefore cannot state for certain whether it is withholding any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 45:**

All of ATLANTIC'S and ONEBEACON'S files (electronic and hard copy), including file jackets and labels, and all other DOCUMENTS that RELATE to any insurance claim involving a loss caused by terrorism, for the time period January 1, 2001 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO.45:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Atlantic does not allege that Plaintiffs' claims are not covered because the acts at issue constitute terrorism. Therefore, the requested documents are not relevant to any issue in this lawsuit. Further, an effort to locate all documents responsive to this Request would be extremely burdensome, in that Atlantic would have to manually review each of its claim files created over the last sixteen years to determine whether the claim involved terrorism. Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

22

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 111

insurance. Neither company has an automated system that would allow it to search its claim files for whether a claim involved terrorism. As a result, it would literally require employees in each division to manually search through each claim file created over the last 16 years. This would take many months to do. Atlantic's only way of narrowing down its search is to electronically search *all* documents in its database for the word "terror." But according to Atlantic's Informational Technology Department, conducting this electronic search itself would take many months. Atlantic would have to conduct an electronic search of every single document and e-mail created since January 1, 2001 (more than sixteen years ago), for the word "terror." This is many, many millions of documents that would need to be searched because, as noted above, Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Each one of these divisions generates many millions of documents and e-mails every year. According to Atlantic's Information Technology Department, because there are so many millions of documents created in Atlantic's and OneBeacon's documents in the past sixteen years, this search would take many months to run, not including the time it would take a human to review the documents returned as responsive, which in and of itself would likely take many months.

Atlantic further objects on the grounds that the Request is not reasonably limited in time. Atlantic further objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity. It is not clear what the Propounding Party means by all documents that "RELATE" to any insurance claim involving a loss caused by terrorism. Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

23
ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION
EXHIBIT 4, PAGE 112

For Atlantic to even confirm whether it has any documents responsive to this Request would be burdensome and require an extensive search. Atlantic objects to having to conduct such a search and therefore cannot state for certain whether it is withholding any documents responsive to this Request.

**<u>REQUEST FOR PRODUCTION NO. 46</u>:**

All ATLANTIC and ONEBEACON endorsement forms that RELATE to the "Terrorism Risk Insurance Act of 2002," including, without limitation, all versions of the COVERAGE FOR CERTIFIED ACTS OF TERRORISM ENDORSEMENT, for the time period January 1, 2001 to the present.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 46</u>:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Atlantic does not allege that Plaintiffs' claims are not covered because the acts at issue constitute terrorism. Atlantic's position in this case is not tied to the Terrorism Risk Insurance Act of 2002 or the endorsement for certified acts of terrorism. Therefore, the requested documents are not relevant to any issue in this lawsuit. To find all documents responsive to this Request would be extremely burdensome, in that Atlantic would have to manually review each and every policy issued over the last sixteen years and look for endorsement forms relating to the Terrorism Risk Insurance Act of 2002. Atlantic's only way of narrowing down its

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

24

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 113

search is to electronically search *all* documents in its database for the word "terror." But according to Atlantic's Informational Technology Department, conducting this electronic search itself would take many months. Atlantic would have to conduct an electronic search of every single document and e-mail created since January 1, 2001 (more than sixteen years ago), for the word "terror." This is many, many millions of documents that would need to be searched because, as noted above, Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Each one of these divisions generates many millions of documents and e-mails every year. According to Atlantic's Information Technology Department, because there are so many millions of documents created in Atlantic's and OneBeacon's documents in the past sixteen years, this search would take many months to run, not including the time it would take a human to review the documents returned as responsive, which in and of itself would likely take many months.

Atlantic further objects on the grounds that the Request is not reasonably limited in time. Atlantic further objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity. It is not clear what the Propounding Party means by all documents that "RELATE" to the "Terrorism Risk Insurance Act of 2002." Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

Atlantic is declining to produce responsive documents on the basis of these objections.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS that RELATE to ATLANTIC'S decision to characterize the COVERAGE FOR CERTIFIED ACTS OF TERRORISM ENDORSEMENT as "terrorism coverage" which "should not apply," on Page 5 of the July 28, 2014 letter from Pamela A. Johnson attached hereto as Exhibit B.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:** Atlantic objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine. Subject to and without waiving these objections, Atlantic directs the Plaintiffs to the documents identified in response to Interrogatory No. 5, which Atlantic will produce to the extent not privileged or protected by the work-product doctrine or prepared in anticipation of litigation.

**REQUEST FOR PRODUCTION NO. 48:**

All DOCUMENTS that RELATE to any instance (including, without limitation, in the context of litigation) since January 1, 2001, in which ATLANTIC or ONEBEACON has characterized Hamas as a terrorist organization or taken the position that certain acts by Hamas constitute acts of terrorism.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:** Atlantic objects to this Request on the grounds that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

26

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 115

its likely benefit, if any. To definitively confirm that there are no documents responsive to this request, Atlantic would have to conduct an electronic search of every single document and e-mail created since January 1, 2001 (more than sixteen years ago), for the word "Hamas." This is many, many millions of documents that would need to be searched. Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Each one of these divisions generates many millions of documents and e-mails every year. According to Atlantic's Information Technology Department, because there are so many millions of documents created in Atlantic's and OneBeacon's documents in the past sixteen years, this search would take many months to run, not including the time it would take a human to review the documents returned as responsive.

Subject to and without waiving these objections, in lieu of conducting the nearly impossible search that the Plaintiffs have requested, Atlantic has conducted inquiries of the Vice President of Claims of OneBeacon Entertainment, the Chief Claims Officer for all of OneBeacon Insurance Group, the Senior Vice President of Claims for Atlantic, and the Chief Claims Counsel of OneBeacon Insurance Group's Claims Legal Group to determine whether they could recall any instances in which ATLANTIC or ONEBEACON characterized Hamas as a terrorist organization or took the position that certain acts by Hamas constitute acts of terrorism. None of those persons could recall any such instances. [NOTE: STILL NEED TO CONFIRM THIS FACT.] Moreover, as counsel for Atlantic has stated in discussions with counsel for Plaintiffs, Atlantic has reviewed more than 36,000 documents identified in a search of its document management and e-mail system. One of the search terms used in the search that returned these documents was "Hamas." That search looked for documents and e-mails dating back to July 2013. Atlantic can confirm based on its review of those 36,000 documents that it found none in which Atlantic or OneBeacon had characterized Hamas

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

27

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 116

as a terrorist organization or taken the position that acts by Hamas constitute acts of terrorism. Based on this review and its inquiries, Atlantic represents that it is not aware of any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 49:**

All DOCUMENTS that RELATE to any insurance claim involving (1) Hamas, or (2) any conflict between Israel, on the one hand, and Hamas and/or Palestinians, on the other hand, since January 1, 2001, made pursuant to any ATLANTIC or ONEBEACON insurance policy.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:** Atlantic objects to this Request on the grounds that that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. To definitively confirm that there are no documents responsive to this request, Atlantic would have to conduct an electronic search of every single document and e-mail created since January 1, 2001 (more than sixteen years ago), for the words "Palestine" and "Israel." This is many, many millions of documents that would need to be searched. Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Each one of these divisions generates many millions of documents and e-mails every year. According to Atlantic's Information Technology Department, because there are so many millions of documents created in Atlantic's and OneBeacon's

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

documents in the past sixteen years, this search would take many months to run, not including the time it would take a human to review the documents returned as responsive.

Subject to and without waiving these objections, other than the documents relating to the claim at issue in this lawsuit, which Atlantic has already produced or objected to producing or logged as privileged or protected on its privilege log, in lieu of conducting the nearly impossible search that the Plaintiffs have requested, Atlantic has made inquiries with its employees who oversee, and former employees who previously oversaw, the claims handling for the entertainment division of Atlantic and with employees of OneBeacon who oversee claims for all of OneBeacon's divisions. None of those persons recall any claims, other than the *DIG* CLAIM involving a conflict between Palestine and Israel.

Moreover, as counsel for Atlantic has stated in discussions with counsel for Plaintiffs, Atlantic has reviewed more than 36,000 documents identified in a search of its document management and e-mail system. Some of the search terms used in the search that returned these documents were "Hamas," and "Israel." That search looked for documents and e-mails dating back to July 2013. Atlantic can confirm based on its review of those 36,000 documents that it found none suggesting that Atlantic or OneBeacon have ever handled any other claims involving Hamas or a conflict between Israel and Palestine.

Based on its review of the 36,000 documents and its inquiries, Atlantic represents that it is not aware of any documents responsive to this request.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

29
ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 118

**REQUEST FOR PRODUCTION NO. 50:**

All DOCUMENTS that ATLANTIC identified or referenced in response to any Interrogatory in this case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:** Atlantic objects to this Request to the extent that it seeks documents protected from discovery by attorney-client privilege or work-product doctrine, or which were prepared in anticipation of litigation or for trial. Atlantic will produce any non-protected and non-privileged documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 51:**

All of ATLANTIC'S and ONEBEACON'S files (electronic and hard copy), including file jackets and labels, and all other DOCUMENTS that RELATE to any insurance claim in which a WAR EXCLUSION was considered, assessed, or addressed, for the time period January 1, 2001 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Any other claims in which a "WAR EXCLUSION," was considered, assessed, or addressed, would relate solely to other insureds and other insurance policies. Such claims and policies are wholly irrelevant to the meaning of the language in the policy that governs the relationship between the parties to this lawsuit.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

30

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 119

Atlantic further objects on the grounds that the Request is not reasonably limited in time. Atlantic further objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity. It is not clear what the Propounding Party means by all documents that "RELATE" to any insurance claim in which a WAR EXCLUSION was considered, assessed, or addressed. Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

For Atlantic to even confirm whether it has any documents responsive to this Request would be burdensome and require an extensive search. Atlantic objects to having to conduct such a search and therefore cannot state for certain whether it is withholding any documents responsive to this Request.

Nonetheless, to avoid a discovery dispute, Atlantic further responds as follows: As counsel for Atlantic has stated in discussions with counsel for Plaintiffs, Atlantic has reviewed more than 36,000 documents identified in a search of its document management and e-mail system. One of the search terms used in the search that returned these documents was "war." That search looked for documents and e-mails dating back to July 2013. Atlantic, and its Informational Technology department in particular, have represented that a broader search that would encompass all e-mails and documents without any date restrictions would be nearly impossible. In lieu of searching for the WAR EXCLUSION in each and every one of the many millions of documents and e-mails that Atlantic and OneBeacon have generated over the course of their existences, Atlantic has made inquiries with its employees who oversee, and former employees who previously oversaw, the claims handling for the entertainment

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

31

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 120

division of Atlantic and with employees of OneBeacon who oversee claims for all of OneBeacon's divisions. Those persons also do not recall any claims in which Atlantic considered the potential applicability of the WAR EXCLUSION. Atlantic has, however, found one e-mail that an employee of Atlantic, Daniel Gutterman, sent to himself, that concerns another claim, and which quotes the various policy language, including its WAR EXCLUSION. There are no other documents suggesting that the WAR EXCLUSION was considered any further in connection with that claim. This one e mail is being produced as Bates No. ATL000785 – ATL000788.

**REQUEST FOR PRODUCTION NO. 52:**

All of ATLANTIC'S and ONEBEACON'S files (electronic and hard copy), including file jackets and labels, and all other DOCUMENTS that RELATE to any insurance claim involving a loss caused by violence occurring outside of the United States, for the time period January 1, 2001 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Any other claims involving losses caused by violence occurring outside the United States would relate solely to other insureds and other insurance policies. Such claims and policies are wholly irrelevant to the meaning of the language in the policy that governs the relationship between the parties to this lawsuit.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

32

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 121

Atlantic further objects on the grounds that the Request is not reasonably limited in time. Atlantic further objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity. It is not clear what the Propounding Party means by all documents that "RELATE" to any insurance claim involving a loss caused by violence occurring outside of the United States. Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

Further, an effort to locate all documents responsive to this Request would be extremely burdensome, in that Atlantic would have to manually review each of its claim files created over the last sixteen years to determine whether the claim involved "violence." Atlantic, and its parent OneBeacon, have 15 separate divisions, each of which issues policies covering multiple types of insurance. Neither company has an automated system that would allow it to search its claim files for whether the claim involved the broad concept of "violence." As a result, it would literally require employees in each division to manually search through each claim file created over the last 16 years. This would take many months to do. Atlantic objects to having to conduct such a search and therefore cannot state for certain whether it is withholding any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 53:**

All of ATLANTIC'S and ONEBEACON'S files (electronic and hard copy), including file jackets and labels, and all other DOCUMENTS that RELATE to the PUBLISIS CLAIM.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

33

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 122

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:** Atlantic objects to this Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Any other claims and policies other than those at issue in this lawsuit are wholly irrelevant to the meaning of the language in the policy that governs the relationship between the parties to this lawsuit. Atlantic further objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity. It is not clear what the Propounding Party means by all documents that "RELATE" to the PUBLISIS CLAIM. Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

Nonetheless, to avoid a discovery dispute, Atlantic has already produced the claim file for the "PUBLISIS CLAIM."

**REQUEST FOR PRODUCTION NO. 54:**

All of ATLANTIC'S and ONEBEACON'S files (electronic and hard copy), including file jackets and labels, and all other DOCUMENTS that RELATE to the MIDDLE EAST CLAIM.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:** Atlantic objects to this

34

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 123

Request to the extent that it seeks documents that are outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. The Request seeks documents that are not relevant to either party's claims or defenses, and the request is not proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which greatly outweighs its likely benefit, if any. Any other claims and policies other than those at issue in this lawsuit are wholly irrelevant to the meaning of the language in the policy that governs the relationship between the parties to this lawsuit. Atlantic further objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity. It is not clear what the Propounding Party means by all documents that "RELATE" to the MIDDLE EAST CLAIM. Atlantic further objects to this Request to the extent it seeks documents protected from discovery by the attorney-client privilege and the work-product doctrine, and because it seeks documents that contain trade secrets or similar confidential and/or proprietary information protected from disclosure.

Nonetheless, to avoid a discovery dispute, Atlantic will produce the claim file for the "MIDDLE EAST CLAIM."

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

35

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 124

DATED: March 13, 2017

MARC J. SHRAKE
ANDERSON, McPHARLIN & CONNERS LLP

-and-

MICHAEL KEELEY *(Pro Hac Vice)*
JOHN R. RIDDLE *(Pro Hac Vice)*
TONI SCOTT REED *(Pro Hac Vice)*
CARLA C. CRAPSTER *(Pro Hac Vice)*
STRASBURGER & PRICE, LLP

By: */s/ Michael Keeley*
Michael Keeley
Attorneys for Defendant ATLANTIC SPECIALTY INSURANCE COMPANY

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

36

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 125

**PROOF OF SERVICE**

I am employed in the County of Dallas, State of Texas. I am over the age of eighteen years and not a party to the within action; my business address is 901 Main Street, Suite 6000, Dallas, Texas 75202.

On March 13, 2017, I served the following document(s) described as **DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Lucia E. Coyoca, Esq.
Valentine A. Shalamitski, Esq.
Daniel M. Hayes, Esq.
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs

**BY MAIL:** I am "readily familiar" with Strasburger & Price, LLP's practice for collecting and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Dallas, Texas, on that same day following ordinary business practices.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on March 13, 2017, at Dallas, Texas.

Marianna Green

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

37

ATLANTIC SPECIALTY INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF UNIVERSAL CABLE PRODUCTION LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

EXHIBIT 4, PAGE 126

# EXHIBIT 5

msk
MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Daniel M. Hayes
Partner
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

March 31, 2017

**VIA E-MAIL ONLY**

Toni Reed, Esq.
Strasburger & Price, LLP
901 Main Street, Suite 6000
Dallas, TX 75202

**Re:** ***Universal Cable Productions LLC, et al. v. Atlantic Specialty Insurance Company***
**CD Cal. Case No. CV16-4435 PA (MRWx)**

Dear Counsel:

This letter shall serve as our good faith attempt to informally resolve issues presented by the March 13, 2017 objections and responses of defendant Atlantic Specialty Insurance Company ("Atlantic") to the Second Set of Requests for Production ("RFP"), Second Set of Interrogatories ("Interrogatories"), and First Set of Requests for Admission ("RFA") propounded by plaintiffs Universal Cable Productions LLC and Northern Entertainment Productions LLC (collectively, "Plaintiffs") on February 10, 2017.

As a general overview, Atlantic refused to produce any documents in response to most of the RFPs, with the exception of a few requests that ask for specific documents or files identified by Plaintiffs through information learned in depositions of Atlantic's witnesses in this matter. This is highly improper, given that the other requests are directly relevant to central issues in the case.

In response to the Interrogatories, Atlantic has either objected and improperly refused to provide any response, or provided confusing and evasive answers. None of Atlantic's responses are sufficient.

Finally, with respect to a number of RFAs, Atlantic improperly refused to admit or deny, or provided only qualified admissions.

Atlantic's stonewalling is particularly troubling in light of the impending depositions and close of discovery in this case, which *you* have attempted to use as a basis for a trial continuance. We are looking forward to speaking with you today to attempt to eliminate the necessity for motion practice with respect to this discovery. If we are unable to, we will present them to the Magistrate Judge next week.

11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone: (310) 312-2000 Fax: (310) 312-3100 Website: WWW.MSK.COM

## 1. INTERROGATORIES

**Preliminary Statement**: We would prefer not to spend time arguing over Atlantic's boilerplate "Preliminary Statement," which is insufficient to withhold discovery. Please confirm Atlantic is not withholding any information based on its "Preliminary Statement."

**No. 19.** This interrogatory requests that Atlantic identify any communications between it or OneBeacon, and any other person, that relate to the Policy, the *DIG* Insured Production, the *DIG* Claim, or the War Exclusion. First, Atlantic's response incorporating by reference all of the documents produced by Atlantic in this case, without any attempt to particularly identify them, is improper. The fact that it would be a long list is not a proper objection. Plaintiffs are entitled to a clear answer to this interrogatory. Further, Atlantic objects to the definition of "War Exclusion," which includes similar exclusions in other policies. As we have previously addressed, documents with "similar exclusion language" are relevant to, *inter alia*, Atlantic's interpretation of the policy at issue and Atlantic's denial of the *DIG* Claim. *See, e.g., Owens-Brockway Glass Container v. Seaboard Sur. Co.*, 1992 U.S. Dist. LEXIS 10337, at *6 (E.D. Cal. May 27, 1992) ("the drafting history of an insurance policy as evidence of the intent of the drafter" is discoverable). It is also clear that other claims are relevant. *Id.* at *8-9 ("similar insurance claims asserted by other insureds against defendants" are discoverable).

As discussed in Plaintiffs' pending discovery motion, Atlantic's one-year look back to July 2013 in its search for documents is inadequate.

**Nos. 20, 21.** Interrogatory 20 asks a simple question: "Does ATLANTIC contend it relied on the advice of its lawyer(s) in denying the *DIG* Claim?" Interrogatory No. 21 follows up on this question, seeking the identity of facts and documents that support the response to Interrogatory No. 20. Atlantic's responses are evasive, and do not answer whether Atlantic contends it relied on the advice of counsel in denying the *DIG* Claim.

**Nos. 22, 23.** Interrogatory 22 asks Atlantic to identify any instance in which Atlantic or OneBeacon has characterized Hamas as a terrorist organization or taken the position that certain acts by Hamas constitute acts of terrorism. Interrogatory 23 asks Atlantic to identify any insurance claims made under an Atlantic or OneBeacon policy that relate to Hamas or any conflict between Israel and Hamas/Palestine. Atlantic's relevancy objection is meritless. As noted above, how Atlantic and OneBeacon have handled similar claims or characterized Hamas and its actions are clearly relevant to Plaintiffs' claims, both for breach of contract and bad faith. As we have discussed multiple times, Atlantic's search for documents dating back only to July 2013 is not adequate. Plaintiffs are entitled to a full response, without qualifications, after a diligent and thorough search has been completed.

**Nos. 24 and 25.** These interrogatories seek identification of individuals who are percipient witnesses and documents that could serve as evidence in the case. Of course, Plaintiffs are entitled to know the identity of persons that have knowledge of facts that Atlantic contends support its affirmative defenses.

**2. Requests for Production of Documents**

**Preliminary Statement:** As with the Interrogatories, please confirm that Atlantic is not withholding any documents based on its "Preliminary Statement."

**No. 34.** This RFP seeks documents that relate to standards for investigation, processing, review, and/or assessment of insurance claims. Atlantic has "declin[ed] to produce any further documents" on the ground that it has produced a subset of documents that may be covered by the RFP. This is improper, as the request is clearly relevant to Plaintiffs' bad faith claim, and Atlantic may not unilaterally limit its response.

**No. 35.** This RFP seeks documents that relate to standards for investigation, processing, review, and/or assessment of insurance claims that implicate a war exclusion. We are not certain from Atlantic's response whether it has completed a full search for responsive documents. Is Atlantic prepared to provide an unqualified answer that it has searched for and produced any relevant documents?

**Nos. 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 52.** These RFPs request documents related to terrorism exclusions, endorsements, and/or coverage for terrorism or other losses caused by violence outside the United States in Atlantic or OneBeacon insurance policies and policy forms. Atlantic objected to these requests on the basis of relevance, stating that "the dispute between the parties is whether certain war or war-related exclusions apply, and the resolution of this issue is in no way impacted by the language of other exclusions addressing terrorism." Atlantic's objection is in bad faith. As you well know, whether Hamas' activities in June and July 2014 constitute terrorism is a central question bearing on the first claim for breach of contract. Moreover, when interpreting the language of an insurance policy, courts look to the policy as a whole, and also to policy language available to the insurer that was *not* included in the policy, in order to determine the parties' intent. *See Fireman's Fund Insurance Co. v. Atlantic Richfield Co.*, 94 Cal. App. 4th 842, 852 (2001); *Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th 758, 764 (2001) ("we cannot read into the policy what [insurer] omitted"). Atlantic's history and usage of terrorism endorsements is also relevant to Plaintiffs' bad faith claim, as Atlantic initially, and misleadingly, relied on the terrorism (TRIA) endorsement in the policy at issue in denying the *Dig* claim (but later reversed this position).

For RFP Nos. 36-40, and 46, Atlantic is "declining to produce responsive documents," whereas for RFPs 41-45 and 52 Atlantic states that "to even confirm whether it has any documents responsive to this Request" would be burdensome and require an extensive search, and then objects to conducting such a search (on the ground it is too burdensome). Further, Atlantic says it cannot state "for certain" whether it is withholding any documents responsive to these requests. Whether Atlantic is "declining to produce" responsive documents, or objecting to searching and therefore not able to confirm whether any responsive documents exist, this blanket objection to producing *any* documents that are clearly relevant to a central issue in the case is unacceptable. We are willing to meet and confer with you to address and potentially alleviate Atlantic's burden concerns. As to Atlantic's objection on the ground that documents may contain trade secrets, as we have said before, this objection is frivolous given that Plaintiffs are not competitors of Atlantic and there is a protective order in place in this matter.

**Nos. 48, 49, 51.** These RFPs request documents related to any instance in which Atlantic or OneBeacon has characterized Hamas as a terrorist organization or taken the position that certain acts by Hamas constitute acts of terrorism (RFP 48), documents related to any insurance claim to either Atlantic or OneBeacon involving Hamas or any Israel/Palestinian conflict (RFP 49), and documents that relate to any insurance claim to either Atlantic or OneBeacon, in which a War Exclusion was considered, assessed, or addressed (RFP 51). As discussed above in relation to the interrogatories seeking similar information, these are relevant both to the breach of contract and bad faith claims, the parties' understanding of the meaning of the war exclusions and the effect of the lack of any express terrorism exclusion in the Policy. Atlantic's undue burden objection is insufficient for the reasons detailed in the pending motion to compel. Finally, Atlantic's qualified response that it is "not aware of any documents responsive to this request" (or, in the case of RFP 51, has found only one responsive document) is insufficient in light of the inadequacies of the search.

**3. Requests for Admission**

**Preliminary Statement:** As with the Interrogatories and RFPs, please confirm that Atlantic is not withholding any responses based on its "Preliminary Statement."

**Nos. 1, 2.** These RFAs attempt to narrow the range of issues for trial, by requesting formal admissions on matters that, based on Atlantic's denial letter and other documents, are not in dispute. Atlantic states it is unable to admit or deny because certain requested documents and depositions are outstanding. This position is meritless. The relevant facts and evidence necessary to answer these admissions are known to Atlantic and have been for years. It is improper to refuse to admit or deny a request for admission when the answering party has or could readily obtain, after reasonable inquiry, sufficient information to do so. In fact, the court may *order* matters admitted in such a situation. *Asea, Inc. v. Southern Pacific Transp. Co.*, 669 F.2d 1242, 1425 (9th Cir. 1981).

**Nos. 17, 18.** These RFAs request admissions that loss caused by terrorism falls within the insurance coverage grant of the policy (RFA 17), and the Policy does not include terms or endorsements that expressly exclude loss caused by terrorism (RFA 18). Atlantic's qualified admissions are inappropriate. We remind Atlantic here that, for example, Peter Williams testified that Atlantic was willing to cover terrorism in the case of the *DIG* Policy, and the Policy, on its face, does not include terms or endorsements that exclude loss caused by terrorism.

**No. 19.** This RFA requests that Atlantic admit it has included terms or endorsements that expressly exclude loss caused by terrorism in other policies. Atlantic's objection on the ground of relevance is inappropriate. As discussed above, the *absence* of an exclusion available to an insurer (*e.g.*, one which it has used in other policies) is relevant to interpretation of the insurance policy. Because Atlantic can determine the answer by reference to readily available information, Atlantic must either admit or deny this RFA, or the Court may order it admitted. *See Asea*, *supra*.

**No. 20.** This RFA requests that Atlantic admit the Coverage for Certified Acts of Terrorism Endorsement does not limit the insurance coverage provided by the Policy. Atlantic objected on

the grounds that it is vague and ambiguous, and calls for an abstract opinion or conclusion and not an admission of fact. These objections are without merit. This is a straightforward request regarding a fact about the policy, and should either be admitted or denied.

**Nos. 26, 27, 28.** These RFAs ask Atlantic to admit that: it had never considered the application of a War Exclusion prior to the *Dig* Claim (No. 26); with the exception of the *Dig* Claim, Atlantic has never denied a claim based on a War Exclusion (No. 27); and with the exception of the *Dig* Claim, Atlantic has never considered the application of a War Exclusion to a claim (No. 28). The issues addressed by these RFAs are relevant as discussed in the discovery motion initiated on Monday, and as set forth therein, admissions here would narrow the issues that have to be tried. Atlantic's responses to other discovery requests confirm that Atlantic is in a position to provide the requested admissions.

**Nos. 29, 30, 31.** Atlantic objects to these RFAs, regarding written guidelines or instructions regarding claims that implicate a War Exclusion, on the ground that they are vague and ambiguous, and therefore "denied as worded." These objections have no merit. Please be prepared to explain Atlantic's objections when we speak.

* * *

We look forward to discussing these issues with you during the meet-and-confer today (Friday).

Plaintiffs reserve all rights with respect to relief they may seek in connection with Atlantic's deficient discovery responses.

Sincerely,

Daniel M. Hayes
Partner of
MITCHELL SILBERBERG & KNUPP LLP

cc: Michael Keeley, Esq., Carla C. Crapster, Esq.

# EXHIBIT 6

MARC J. SHRAKE (SBN 219331)
mjs@amclaw.com
ANDERSON, MCPHARLIN & CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623
Telephone: (213) 236-1691
Facsimile: (213) 622-7594

MICHAEL KEELEY *(Pro Hac Vice)*
michael.keeley@strasburger.com
TONI SCOTT REED *(Pro Hac Vice)*
toni.reed@strasburger.com
CARLA C. CRAPSTER *(Pro Hac Vice)*
carla.crapster@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

Attorneys for Defendant
Atlantic Specialty Insurance Company

RECEIVED
APR 21 2017
MITCHELL SILBERBERG & KNUPP LLP

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,

Plaintiffs,

vs.

ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,

Defendant.

Case No. 2:16-cv-04435-PA-MRW

**DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S THIRD AMENDED RESPONSES TO FIRST SET OF INTERROGATORIES PROPOUNDED BY PLAINTIFFS UNIVERSAL CABLE PRODUCTIONS LLC AND NORTHERN ENTERTAINMENT PRODUCTIONS LLC**

/ / /

/ / /

/ / /

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

PROPOUNDING PARTY: Plaintiffs UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC

RESPONDING PARTY: Defendant ATLANTIC SPECIALTY INSURANCE COMPANY

SET NO.: One

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant ATLANTIC SPECIALTY INSURANCE COMPANY ("Atlantic") hereby submits these amended objections and responses to the First Set of Interrogatories propounded by Plaintiffs UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC ("Propounding Parties").

**PRELIMINARY STATEMENT**

Nothing in this response should be construed as an admission by Atlantic with respect to the admissibility or relevance of any fact, or of the truth or accuracy of any characterization or statement of any kind, contained in Propounding Parties' Interrogatories. Atlantic has not completed its investigation of the facts relating to this case, its discovery or its preparation for trial. All responses and objections contained herein are based only upon information that is presently available to and specifically known by Atlantic. It is anticipated that further discovery, independent investigation, legal research and analysis may supply additional facts and add meaning to known facts, as well as new factual conclusions and legal contentions, all of which may lead to additions to, changes in and variations from the responses set forth herein. The following objections and responses are made without prejudice to Atlantic's right to produce at trial, or otherwise, evidence regarding any subsequently discovered information. Atlantic accordingly reserves the right to modify and amend any and all responses herein as research is completed and contentions are made.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

IDENTIFY each individual employed by, acting as a REPRESENTATIVE of, or in any way associated with ATLANTIC, that was responsible for the decision to deny the *DIG* CLAIM.

**RESPONSE TO INTERROGATORY NO. 1:** The following persons were responsible for Atlantic's decision to deny the *DIG* CLAIM, all of whom were employed by Atlantic when the decision was reached:

a. Pamela Johnson, former Assistant Vice President of Entertainment Claims for Atlantic. Ms. Johnson is a Second Vice President at The Travelers Companies, Inc. Ms. Johnson's current business address is 385 Washington Street, St. Paul Minnesota, 55102. Her current phone number is 651-310-5861. Her current e-mail address is pajohnso@travelers.com.

b. Theresa Gooley, former Vice President of Claims for Atlantic. Ms. Gooley is currently employed with The Travelers Companies, Inc. Ms. Gooley's current business address is 385 Washington Street, St. Paul Minnesota, 55102. Her current phone number is 651-310-2100. Her current e-mail address is tgooleyw@travelers.com.

c. Peter Williams, former President of the Entertainment Division for Atlantic. Mr. Williams is a Global Products Leader with Allianz Global and Corporate Specialty. His current business address is 2350 West Empire Avenue Suite 200, Burbank California 91504. His current phone number is 310-910-4026. His current e-mail address is peter.williams@ffic.com.

d. Sean Duffy, Senior Vice President & Chief Claims Officer of OneBeacon Insurance Group. Mr. Duffy's business address is 605 Highway 169, Suite 800 Plymouth MN 5544. His current phone number is (952) 852-2469. His e-mail address is sduffy@onebeacon.com.

**The persons listed above may only be contacted through counsel of record**

**for Atlantic.**

**<u>INTERROGATORY NO. 2</u>:**

IDENTIFY each individual employed by, acting as a REPRESENTATIVE of, or in any way associated with ATLANTIC, that had any involvement in evaluating and considering the *DIG* CLAIM.

**<u>RESPONSE TO INTERROGATORY NO. 2</u>:** The following persons had involvement in the evaluation and consideration of the *DIG* CLAIM, all of whom were employed by Atlantic at such time:

a. Pamela Johnson, former Assistant Vice President of Entertainment Claims for Atlantic. Ms. Johnson is a Second Vice President at The Travelers Companies, Inc. Ms. Johnson's current business address is 385 Washington Street, St. Paul Minnesota, 55102. Her current phone number is 651-310-5861. Her current e-mail address is pajohnso@travelers.com.

b. Theresa Gooley, former Vice President of Claims for Atlantic. Ms. Gooley is currently employed with The Travelers Companies, Inc. Ms. Gooley's current business address is 385 Washington Street, St. Paul Minnesota, 55102. Her current phone number is 651-310-2100. Her current e-mail address is tgooleyw@travelers.com.

c. Peter Williams, former President of the Entertainment Division for Atlantic. Mr. Williams is a Global Products Leader with Allianz Global and Corporate Specialty. His current business address is 2350 West Empire Avenue Suite 200, Burbank California 91504. His current phone number is 310-910-4026. His current e-mail address is peter.williams@ffic.com.

d. Daniel Gutterman, Senior Entertainment Claims Investigator for Atlantic, which is his current position. Mr. Gutterman's phone number is (781) 332-8550. Mr. Gutterman's address is 1100 Glendon Avenue, Suite 900, Los Angeles, CA 90024. Mr. Gutterman's e-mail address is <u>dgutterman@onebeacon.com</u>.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

e. Sean Duffy, Senior Vice President & Chief Claims Officer of OneBeacon Insurance Group. Mr. Duffy's business address is 605 Highway 169, Suite 800 Plymouth MN 5544. His current phone number is (952) 852-2469. His e-mail address is sduffy@onebeacon.com.

In addition, while not conceding that he had "involvement in evaluating and considering the *DIG* CLAIM," Leon Gladstone, a partner with Gladstone Weinberg ALC, provided a coverage opinion to Atlantic on or about July 21, 2014. Mr. Gladstone's phone number is 800-215-7237. His address is 300 Corporate Pointe, Suite 400, Culver City, CA 90230. His e-mail address is lgladstone@gladstonemichel.com. All correspondence between Atlantic and Mr. Gladstone or his law firm are protected from the attorney-client privilege.

**The persons listed above may only be contacted through counsel of record for Atlantic.**

**INTERROGATORY NO. 3:**

State all facts which ATLANTIC considered in denying the *DIG* CLAIM.

**RESPONSE TO INTERROGATORY NO. 3:** Atlantic considered, in denying the *DIG* CLAIM, all of the facts and information that it received from the Plaintiffs, as well as the facts revealed by its own investigation of the *DIG* CLAIM and independent research. Regarding its investigation, Atlantic refers to and incorporates specific claim-related documents produced in this case, which reflect facts considered, which are bates numbered ATL001458 – ATL001463 (reference to foreign travel advice); ATL001199 – ATL001204 (reference to U.S. travel warning); ATL001529 (reference to foreign travel advice and Hamas article); ATL001562 – ATL001563 (reference to news stories specified in links stated); ATL000502 (reference to news article); ATL000294 (reference to reporting on events and specific links to news stories); ATL001828 (reference to reporting on facts and developments and mentions of *DIG*); ATL00385 - ATL00392 (references to facts); ATL001877 (references to articles); ATL002171 – ATL002175 and ATL002172 – ATL002175 (references to facts). Atlantic also refers

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

to, relies upon, and incorporates herein the testimony of Peter Williams, Danny Gutterman, and Theresa Gooley, each of whom testified to what they relied upon in considering the *DIG* CLAIM. Additionally, in further answer to this interrogatory, Atlantic considered the following facts:

a. The facts set forth in the December 2, 2010 Congressional Research Service Report entitled "Hamas: Background and Issues for Congress," which was authored by Jim Zanotti, who is identified as an Analyst in Middle Eastern Affairs. Representatives of Atlantic, including at least Pamela Johnson, reviewed that report. Ms. Johnson, who is no longer employed by Atlantic, was prepared to testify more specifically as to what she had relied upon in this report before her deposition was unilaterally cancelled by the Plaintiffs. Among other things, Atlantic believes Ms. Johnson, on behalf of Atlantic, relied upon the entirety of the report, including but not limited to, the fact that Hamas was identified in that Report as a religious and political organization and the Report's statement that, since June 2007, Hamas has had control over the Gaza Strip, that Hamas governs the Gaza strip, and that Hamas has a "military wing." Atlantic also relied on the timeline included in this Report, which sets forth a long history of the key dates in Hamas's history and its many conflicts with Israel, several of which are referred to as wars.

b. The statement by Israeli President Benjamin Netanyahu, as reported in the news, that Israel would use "full force" against militants in Gaza.

c. The statement by Israeli President Benjamin Netanyahu, as reported in the news, that "Hamas chose to continue fighting and will pay the price for that decision … When there is no cease-fire, our answer is fire."

d. A report by the Washington Post stating that: Israel had struck at least 25 targets inside Gaza, including the home of a senior Hamas leader Mahmoud Al Zahar; Hamas militants had fired at least 13 rockets into southern Israel; Israel's "Iron Dome," an air-defense system that exists to deflect weapons fired from Palestine,

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

was deflecting fire from Gaza; Israel had announced plans for a ground attack on Gaza; Israel dropped leaflets into Gaza warning the population to evacuate; Israel had invaded Gaza with tanks and gunboats.

e. Several sources, in particular, Black's Law Dictionary, The Dictionary of International and Comparative Law, and the Handbook of Humanitarian Law in Armed Conflicts, that define "war" as including any hostile conflict by means of armed forces between nations, states, or rulers, or even between two "parties." Atlantic quoted these definitions on page 6 of its July 28, 2014 denial letter to Andrea Garber.

f. Hamas was the governing authority over the Gaza Strip in July 2014 and had a military wing known as the Qassam Brigades, as well as a police force, a security force, and intelligence personnel.

g. In several news articles published in July 2014 by MSNBC and in television reports that appeared on the news channel MSNBC (which is an affiliate of NBC Universal), the Israeli-Palestinian "conflict" in 2014 was referred to as a "war."

h. Reported events and details of actions that occurred during June and July 2014, as reported in various news sources, including but not limited to CBS news videos and MSNBC videos, articles, and features, including direct clashes of armed forces from opposing sides of the war, gunfights, firing of long-range rockets, rocket attacks into Tel Aviv, Jerusalem, and/or Southern Israel, planning for a ground incursion, a ground campaign, war planes, gunboats, mutual exchange of air strikes, rejection of a proposed cease fire, and injuries and deaths in Israel, Palestine, Gaza City, and/or the Gaza Strip, and comments from Israel regarding its intentions.

i. Hamas militants stated on al-Aqsa TV that Hamas was firing rockets in response to "Israeli aggression against Palestinians in the West Bank, Jerusalem and Gaza." According to news reports, the statement was issued in the name of the Qassam Brigades and laid out four conditions for a ceasefire: ending all action in

Jerusalem and the West Bank, ending the fire on and siege of Gaza, releasing all the prisoners who were re-arrested in the Israeli operation launched on June 12, 2014, after the disappearance of three Israeli settlers and the ceasing of "meddling" in the Palestinian Unity government.

j. Moussa Abu Marzouk, a top Hamas official, stated, as reported in a news article: "There should be a new equation so that we will not have a war on Gaza every two years."

k. The word "militants" is used to describe Hamas forces in various news articles (identified in response to Interrogatory No. 4 below) and the Congressional Reports identified in subparts (a) and (b) of this response to Interrogatory No. 3.

l. Hamas spokesman Sami Abu Zuhri stated, as reported in a news article: "There will be no truce without an end to the war that the Occupation (Israel) began, a lifting of the blockade and a halt to all violations and killings in Gaza and the West Bank."

m. Facts learned through research of Hamas and Palestine, and Hamas's ongoing conflicts and prior wars with Israel, including operations, official positions held, and capabilities, which research included review of the primary sources discussing Hamas and Palestine, as listed in "Hamas," appearing in Wikipedia (http://en.wikipedia.org/wiki/Hamas) as it existed on July 16, 2014, with its references to primary source materials, the specifics of which Pamela Johnson may be able to identify, as well as a review of multiple news reports referring to the war between Israel and Palestine/Hamas, including print reports as well as news reports by MSNBC and CBS.

Additionally, other employees of Atlantic, including at least Pamela Johnson, conducted other internet research into Hamas and its relationship with Israel, and events occurring during the summer of 2014, the details of which are not currently known to Atlantic.

Atlantic reserves the right to supplement this Response, as discovery is ongoing, and as

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

individual witnesses who are deposed in this case may provide additional information not yet known to Atlantic.

**INTERROGATORY NO. 4:**

IDENTIFY all DOCUMENTS that ATLANTIC reviewed in evaluating and considering the *DIG* CLAIM.

**RESPONSE TO INTERROGATORY NO. 4:** Atlantic objects to this interrogatory to the extent that it seeks information that is protected from disclosure by the attorney-client privilege or work-product doctrine or was prepared in anticipation of litigation or for trial. Such information is outside the scope of discovery permitted under Rule 26 of the Federal Rules of Civil Procedure. Such information will not be included in Atlantic's answer to this interrogatory.

With this understanding, Atlantic responds as follows: Atlantic reviewed all documents it received from Plaintiffs, as well as the documents it located and/or generated by its investigation of the *DIG* Claim and research. Regarding its investigation, Atlantic refers to and incorporates specific claim-related documents produced in this case, which reflect specific documents reviewed, which are bates numbered ATL001458 – ATL001463 (reference to foreign travel advice); ATL001199 – ATL001204 (reference to U.S. travel warning); ATL001529 (reference to foreign travel advice and Hamas article); ATL001562 – ATL001563 (reference to news stories specified in links stated); ATL000502 (reference to news article); ATL000294 (reference to reporting on events and specific links to news stories); ATL001828 (reference to reporting on facts and developments and mentions of *DIG*); ATL00385 - ATL00392 (references to facts/sources); ATL001877 (references to articles); ATL002171 – ATL002175 and ATL002172 – ATL002175 (references to facts/sources). Atlantic also refers to, relies upon, and incorporates herein the testimony of Peter Williams, Danny Gutterman, and Theresa Gooley, each of whom testified to what they relied upon in considering the *DIG* CLAIM. Further, Atlantic states that it reviewed the following documents in evaluating and considering the *DIG*

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

CLAIM:

a. E-mail sent by Stephen Smith, head of NBC security for Europe, dated July 10, 2014, regarding NBCU Security's decision to move the filming of *Dig* out of Israel.

b. A news article published by the Washington Post, dated July 10, 2014, by Griff Witte and William Booth, entitled "As cease-fire with Hamas fails to take shape, Netanyahu says, 'Our answer is fire.'" This article is available at: https://www.washingtonpost.com/world/israel-accepts-truce-plan-hamas-balks/2014/07/15/04373008-0bf5-11e4-8c9a-923ecc0c7d23_story.html?utm_term=.e99302eb1314.

c. A news article published by MSNBC dated July 18, 2014, by Benjamin Landy and Maria Lokke, entitled "Scenes of war and heartbreak as Israeli ground forces invade Gaza." This article is available at: http://www.msnbc.com/msnbc/scenes-war-and-heartbreak-israel-hamas-conflict-intensifies.

d. A news article published by MSNBC dated July 18, 2014, by David Taintor, entitled "Obama points to rebels in downed Malaysian jet." This article is available at: http://www.msnbc.com/msnbc/obama-american-dead-malaysia-airlines-crash.

e. A news article published by MSNBC dated July 16, 2014, by Donna Stefano, entitled "In Israel and Palestine, children imagine a world without war." This article is available at: http://www.msnbc.com/msnbc/israel-and-palestine-children-imagine-world-without-war.

f. A news article published by the Times of Israel by Adiv Sterman, dated July 16, 2014, entitled "Ground incursion in Gaza said 'very likely.'" This article is available at: http://www.timesofisrael.com/idf-ground-incursion-in-gaza-very-likely/.

g. A collection of "LiveBlogs" published by the Times of Israel on July 7, 2014, by Itamar Sharon, Marissa Newman, and Ilan Ben Zion, entitled "Israel launches

'Protective Edge' counteroffensive on Gaza, Jewish suspects reenact teen's murder." This collection is available at: http://www.timesofisrael.com/as-israel-grapples-with-homegrown-killers-violence-continues/#!.

h. A news article published by Middle East Eye dated July 8, 2014, entitled "Hamas claims responsibility for rockets fired at Jerusalem, Tel Aviv and Haifa." This article is available at: http://www.middleeasteye.net/news/israels-army-prepared-ground-assault-gaza-official-275282816.

i. A news article published by the Global News, dated July 9, 2014, entitled "UPDATE: Israel hits key Hamas targets in Gaza offensive." This article is available at: http://globalnews.ca/news/1438089/israel-strikes-hamas-targets-in-gaza-to-stop-rocket-fire/.

j. A news article published by the Global News, dated July 15, 2014, entitled "Israel: Hamas to pay price for its 'no' to truce." This article is available at: http://globalnews.ca/news/1451058/israel-hamas-to-pay-price-for-its-no-to-truce/.

k. The news article entitled "LIVE UPDATES: Operation Protective Edge, Day 7," published by Haaretz on July 15, 2014. The article is available at: http://www.haaretz.com/israel-news/1.604898#!.

l. The December 2, 2010 Congressional Research Service Report entitled "Hamas: Background and Issues for Congress," and authored by Jim Zanotti.

m. Black's Law Dictionary, as discussed in the response to Interrogatory No. 3,

n. The Dictionary of International and Comparative Law, as discussed in the response to Interrogatory No. 3.

o. The Handbook of Humanitarian Law in Armed Conflicts, as discussed in response to Interrogatory No. 3.

p. The travel warning issued by the United States on February 3, 2014, regarding travel to Israel.

q. The United Kingdom's website regarding travel to Israel, available at:

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

https://www.gov.uk/foreign-travel-advice/israel, as it existed on July 15, 2014.

r. The news clips (videos) available at the following websites:

i. http://www.msnbc.com/the-last-word/watch/mh17-mystery-and-war-in-gaza-308247107963;

ii. http://www.msnbc.com/melissa-harris-perry/watch/what-it-means-to-live-in-a-war-zone-309370947801;

iii. http://www.msnbc.com/all-in-with-chris-hayes/watch/day-breaks-in-gaza-following-invasion-307348035939;

iv. http://www.msnbc.com/all-in-with-chris-hayes/watch/ground-war-in-gaza-307290179722;

v. www.cbsnews.com/videos/new-clashes-between-israel-palestinians-is-ground-war-next/.

s. Primary sources discussing Hamas and Palestine, as listed in "Hamas," appearing in Wikipedia (http://en.wikipedia.org/wiki/Hamas), as it existed on July 16, 2014, with its reference to sources.

t. Articles and sources located through internet research, the titles or names of which were not specifically recorded in written form.

In addition, as counsel for Atlantic has explained to counsel for the Plaintiffs, Atlantic obtained a coverage opinion prepared by Leon Gladstone and Gene Weisberg of Gladstone Weisberg ALC, dated July 21, 2014, prior to the issuance of Atlantic's formal notice of denial of the *DIG* CLAIM. Such coverage opinion was obtained after a telephone discussion with the insured and its broker regarding the potential application of the war exclusion language. By referencing that document in response to this Interrogatory, Atlantic does not waive its contention that the opinion is a privileged attorney-client communication that is exempt from discovery. Atlantic is not identifying such document in support of a reliance on the advice of counsel defense - a defense Atlantic has not asserted and is not asserting herein.

Additionally, other employees of Atlantic, including at least Pamela Johnson,

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

conducted other internet research into Hamas and its relationship with Israel, and events occurring during the summer of 2014, the documentation of which is not currently known to Atlantic.

Atlantic reserves the right to supplement this Response, as discovery is ongoing, and as individual witnesses who are deposed in this case may provide additional information not yet known to Atlantic.

**INTERROGATORY NO. 5:**

Identify all steps taken by ATLANTIC to investigate the *DIG* CLAIM.

**RESPONSE TO INTERROGATORY NO. 5:** Atlantic's investigation of the *DIG* CLAIM consisted of researching the hostilities between Israel and Palestine that were occurring during July 2014 and the time leading up to that period, as well as the time period through the end of the conflict, the parties involved and details of the facts involved during 2014, and the history of the hostilities between Israel and Palestine that spans back many decades. Atlantic also evaluated all of the facts and information provided by Plaintiffs. With regard to some specifics of its investigation undertaken, which are reflected in written documentation, Atlantic refers to and incorporates specific claim-related documents produced in this case, which reflect items and/or steps in the investigation, which are bates numbered ATL001458 – ATL001463 (reference to foreign travel advice); ATL001199 – ATL001204 (reference to U.S. travel warning); ATL001529 (reference to foreign travel advice and Hamas article); ATL001562 – ATL001563 (reference to news stories specified in links stated); ATL000502 (reference to news article); ATL000294 (reference to reporting on events and specific links to news stories); ATL001828 (reference to reporting on facts and developments and mentions of *DIG*); ATL00385 - ATL00392 (references to facts); ATL001877 (references to articles); ATL002171 – ATL002175 and ATL002172 – ATL002175 (references to facts). Atlantic also refers to, relies upon, and incorporates herein the testimony of Peter Williams, Danny Gutterman, and Theresa Gooley, each of whom

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

testified to their roles and involvements in the investigation and/or consideration of the *DIG* CLAIM.

Additionally, in further answer to this interrogatory, Atlantic also incorporates herein by reference its responses to interrogatories Nos. 3 and 4 above. Further, Atlantic considered the following facts and documents in investigating the *DIG* CLAIM:

a. The facts set forth in the December 2, 2010 Congressional Research Service Report entitled "Hamas: Background and Issues for Congress," which was authored by Jim Zanotti, who is identified as an Analyst in Middle Eastern Affairs. Atlantic will not recite each and every fact within that Congressional Report. But in particular, Atlantic noted that Hamas was identified in that Report as a religious and political organization and the Report's statement that, since June 2007, Hamas has had control over the Gaza Strip and that Hamas has a "military wing." Atlantic also considered the timeline included in this Report, which sets forth a long history of the key dates in Hamas's history and its many conflicts with Israel, several of which are referred to as wars.

b. The statement by Israeli President Benjamin Netanyahu, as reported in the news, that Israel would use "full force" against militants in Gaza.

c. The statement by Israeli President Benjamin Netanyahu, as reported in the news, that "Hamas chose to continue fighting and will pay the price for that decision … When there is no cease-fire, our answer is fire."

d. A report by the Washington Post stating that: Israel had struck at least 25 targets inside Gaza, including the home of a senior Hamas leader Mahmoud Al Zahar; Hamas militants had fired at least 13 rockets into southern Israel; Israel's "Iron Dome," an air-defense system that exists to deflect weapons fired from Palestine, was deflecting fire from Gaza; Israel had announced plans for a ground attack on Gaza; Israel dropped leaflets into Gaza warning the population to evacuate; Israel had invaded Gaza

with tanks and gunboats.

e. Several sources, in particular, Black's Law Dictionary, The Dictionary of International and Comparative Law, and the Handbook of Humanitarian Law in Armed Conflicts, define "war" as including any hostile conflict by means of armed forces between nations, states, or rulers, or even between two "parties." Atlantic quoted these definitions on page 6 of its July 28, 2014 denial letter to Andrea Garber.

f. Hamas was the governing authority over the Gaza Strip in July 2014 and had a military wing known as the Qassam Brigades, as well as a police force, a security force, and intelligence personnel.

g. In several news articles published in July 2014 by MSNBC and in television reports that appeared on the news channel MSNBC (which is an affiliate of NBC Universal), the Israeli-Palestinian "conflict" in 2014 was referred to as a "war."

h. Reported events and details of actions that occurred during June and July 2014, as reported in various news sources, including but not limited to CBS news videos and MSNBC videos, articles, and features, including direct clashes of armed forces from opposing sides of the war, gunfights, firing of long-range rockets, rocket attacks into Tel Aviv, Jerusalem, and/or Southern Israel, planning for a ground incursion, a ground campaign, war planes, gunboats, mutual exchange of air strikes, rejection of a proposed cease fire, and injuries and deaths in Israel, Palestine, Gaza City, and/or the Gaza Strip, and comments from Israel regarding its intentions.

i. Hamas militants stated on al-Aqsa TV that Hamas was firing rockets in response to "Israeli aggression against Palestinians in the West Bank, Jerusalem and Gaza." According to news reports, the statement was issued in the name of the Qassam Brigades and laid out four conditions for a

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

ceasefire: ending all action in Jerusalem and the West Bank, ending the fire on and siege of Gaza, releasing all the prisoners who were re-arrested in the Israeli operation launched on June 12, 2014, after the disappearance of three Israeli settlers and the ceasing of "meddling" in the Palestinian Unity government.

j. Moussa Abu Marzouk, a top Hamas official, stated, as reported in a news article: "There should be a new equation so that we will not have a war on Gaza every two years."

k. The word "militants" is used to describe Hamas forces in various news articles (identified in response to Interrogatory No. 4 below) and the Congressional Reports identified in subparts (a) and (b) of this response to Interrogatory No. 3.

l. Hamas spokesman Sami Abu Zuhri stated, as reported in a news article: "There will be no truce without an end to the war that the Occupation (Israel) began, a lifting of the blockade and a halt to all violations and killings in Gaza and the West Bank."

Atlantic also reviewed the following documents in investigating the *DIG* CLAIM:

a. E-mail sent by Stephen Smith, head of NBC security for Europe, dated July 10, 2014, regarding NBCU Security's decision to move the filming of *Dig* out of Israel.

b. A news article published by the Washington Post, dated July 10, 2014, by Griff Witte and William Booth, entitled "As cease-fire with Hamas fails to take shape, Netanyahu says, 'Our answer is fire.'" This article is available at: https://www.washingtonpost.com/world/israel-accepts-truce-plan-hamas-balks/2014/07/15/04373008-0bf5-11e4-8c9a-923ecc0c7d23_story.html?utm_term=.e99302eb1314.

c. A news article published by MSNBC dated July 18, 2014, by Benjamin Landy and Maria Lokke, entitled "Scenes of war and heartbreak as Israeli

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

ground forces invade Gaza." This article is available at: http://www.msnbc.com/msnbc/scenes-war-and-heartbreak-israel-hamas-conflict-intensifies.

d. A news article published by MSNBC dated July 18, 2014, by David Taintor, entitled "Obama points to rebels in downed Malaysian jet." This article is available at: http://www.msnbc.com/msnbc/obama-american-dead-malaysia-airlines-crash.

e. A news article published by MSNBC dated July 16, 2014, by Donna Stefano, entitled "In Israel and Palestine, children imagine a world without war." This article is available at: http://www.msnbc.com/msnbc/israel-and-palestine-children-imagine-world-without-war.

f. A news article published by the Times of Israel by Adiv Sterman, dated July 16, 2014, entitled "Ground incursion in Gaza said 'very likely.'" This article is available at: http://www.timesofisrael.com/idf-ground-incursion-in-gaza-very-likely/.

g. A collection of "LiveBlogs" published by the Times of Israel on July 7, 2014, by Itamar Sharon, Marissa Newman, and Ilan Ben Zion, entitled "Israel launches 'Protective Edge' counteroffensive on Gaza, Jewish suspects reenact teen's murder." This collection is available at: http://www.timesofisrael.com/as-israel-grapples-with-homegrown-killers-violence-continues/#!.

h. A news article published by Middle East Eye dated July 8, 2014, entitled "Hamas claims responsibility for rockets fired at Jerusalem, Tel Aviv and Haifa." This article is available at: http://www.middleeasteye.net/news/israels-army-prepared-ground-assault-gaza-official-275282816.

i. A news article published by the Global News, dated July 9, 2014, entitled

"UPDATE: Israel hits key Hamas targets in Gaza offensive." This article is available at: http://globalnews.ca/news/1438089/israel-strikes-hamas-targets-in-gaza-to-stop-rocket-fire/.

j. A news article published by the Global News, dated July 15, 2014, entitled "Israel: Hamas to pay price for its 'no' to truce." This article is available at: http://globalnews.ca/news/1451058/israel-hamas-to-pay-price-for-its-no-to-truce/.

k. The news article entitled "LIVE UPDATES: Operation Protective Edge, Day 7," published by Haaretz on July 15, 2014. The article is available at: http://www.haaretz.com/israel-news/1.604898#!.

l. The December 2, 2010 Congressional Research Service Report entitled "Hamas: Background and Issues for Congress," and authored by Jim Zanotti.

m. Black's Law Dictionary, as discussed above.

n. The Dictionary of International and Comparative Law, as discussed above.

o. The Handbook of Humanitarian Law in Armed Conflicts, as discussed above.

p. The travel warning issued by the United States on February 3, 2014, regarding travel to Israel.

q. The United Kingdom's website regarding travel to Israel, available at: https://www.gov.uk/foreign-travel-advice/israel, as it existed on July 15, 2014.

r. Primary sources discussing Hamas, as listed in "Hamas," appearing in Wikipedia (http://en.wikipedia.org/wiki/Hamas), as it existed on July 16, 2014.

s. Articles and sources located through internet research, the titles or names of which were not specifically recorded in written form.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

t. The news clips (videos) available at the following websites:

i. http://www.msnbc.com/the-last-word/watch/mh17-mystery-and-war-in-gaza-308247107963;

ii. http://www.msnbc.com/melissa-harris-perry/watch/what-it-means-to-live-in-a-war-zone-309370947801;

iii. http://www.msnbc.com/all-in-with-chris-hayes/watch/day-breaks-in-gaza-following-invasion-307348035939;

iv. http://www.msnbc.com/all-in-with-chris-hayes/watch/ground-war-in-gaza-307290179722;

v. www.cbsnews.com/videos/new-clashes-between-israel-palestinians-is-ground-war-next/.

Atlantic also considered all of the information and updates provided by representatives of NBC Universal, including Stephen Smith, Andrea Garber, and Susan Weiss regarding the status of the filming in Israel and the conditions noted by security personnel and/or representatives for the Plaintiffs, as well as the events occurring in Israel.

Atlantic reserves the right to supplement this Response, as discovery is ongoing, and as individual witnesses who are deposed in this case may provide additional information not yet known to Atlantic.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

**INTERROGATORY NO. 6:**

State all facts which support ATLANTIC'S position that Exclusion 1 of the General Conditions section of the POLICY, which excludes coverage for loss caused directly or indirectly by "war, including undeclared or civil war" applies to the *DIG* CLAIM.

**RESPONSE TO INTERROGATORY NO. 6:** Atlantic contends that the exclusion quoted above in Interrogatory No. 6 applies based on the facts recited in response to interrogatories Nos. 3-5 and the facts contained in the documents cited therein, and

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

incorporates those responses herein by reference. Atlantic further states that it contends that the exclusion quoted above in Interrogatory No. 6 applies based on the following facts and the information contained in and statements made in the following documents:

a. The facts set forth in the December 2, 2010 Congressional Research Service Report entitled "Hamas: Background and Issues for Congress," which was authored by Jim Zanotti, who is identified as an Analyst in Middle Eastern Affairs. Atlantic will not recite each and every fact within that Congressional Report. But in particular, Atlantic noted that Hamas was identified in that Report as a religious and political organization and the Report's statement that, since June 2007, Hamas has had control over the Gaza Strip and that Hamas has a "military wing." Atlantic also considered the timeline included in this Report, which sets forth a long history of the key dates in Hamas's history and its many conflicts with Israel, several of which are referred to as wars.

b. The facts set forth in the January 31, 2014 Congressional Research Service Report entitled "The Palestinians: Background and U.S. Relations," which was authored by Jim Zanotti, who is identified as an Analyst in Middle Eastern Affairs. Atlantic will not recite each and every fact within that Congressional Report. But in particular, Atlantic considered the following facts: the report seemed to distinguish between "armed conflicts" and "terrorism"; 130 of the 193 U.N. member states have formally recognized the state of Palestine; on November 29, 2012, the U.N. General Assembly adopted Resolution 67/19 by a vote of 138 to 9 (with 41 abstentions), which recognized Palestine as a "non-member state," (whereas it was previously an "entity"); in the fall of 2011, the Palestinians obtained membership in the U.N. Educational, Scientific and Cultural Organization (UNESCO); the claim by the Palestinians that Israel

is directing even more force and violence against them than Palestine is directing at Israel; Hamas has entered into a position of responsibility and political power since 2007; that the Palestinian Authority, which rules the Gaza Strip and parts of the West Bank, is, though not a state, organized like one—complete with democratic mechanisms, security forces, and executive, legislative, and judicial organs of governance; the Palestinian Authority's legislative branch is the Palestinian Legislative Council (PLC); Hamas won the January 2006 PLC elections; ultimately, Hamas forcibly took control over Gaza in June 2007.

c. The statement by Israeli President Benjamin Netanyahu, as reported in the news, that Israel would use "full force" against militants in Gaza.

d. The statement by Israeli President Benjamin Netanyahu, as reported in the news, that "Hamas chose to continue fighting and will pay the price for that decision … When there is no cease-fire, our answer is fire."

e. A report by the Washington Post stating that: Israel had struck at least 25 targets inside Gaza, including the home of a senior Hamas leader Mahmoud Al Zahar; Hamas militants had fired at least 13 rockets into southern Israel; Israel's "Iron Dome," an air-defense system that exists to deflect weapons fired from Palestine, was deflecting fire from Gaza; Israel had announced plans for a ground attack on Gaza; Israel dropped leaflets into Gaza warning the population to evacuate; Israel had invaded Gaza with tanks and gunboats.

f. Several sources, in particular, Black's Law Dictionary, The Dictionary of International and Comparative Law, and the Handbook of Humanitarian Law in Armed Conflicts, define "war" as including any hostile conflict by means of armed forces between nations, states, or rulers, or even between two "parties." Atlantic quoted these definitions on page 6 of its July 28, 2014 denial letter to Andrea Garber.

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

g. Hamas was the governing authority over the Gaza Strip in July 2014 and had a military wing known as the Qassam Brigades, as well as a police force, a security force, and intelligence personnel.

h. In several news articles published in July 2014 by MSNBC and in television reports that appeared on the news channel MSNBC (which is an affiliate of NBC Universal), the Israeli-Palestinian "conflict" in 2014 was referred to as a "war."

i. Reported events and details of actions that occurred during June and July 2014, as reported in various news sources, including but not limited to CBS news videos and MSNBC videos, articles, and features, including direct clashes of armed forces from opposing sides of the war, gunfights, firing of long-range rockets, rocket attacks into Tel Aviv, Jerusalem, and/or Southern Israel, planning for a ground incursion, a ground campaign, war planes, gunboats, mutual exchange of air strikes, rejection of a proposed cease fire, and injuries and deaths in Israel, Palestine, Gaza City, and/or the Gaza Strip, and comments from Israel regarding its intentions.

j. Hamas militants stated on al-Aqsa TV that Hamas was firing rockets in response to "Israeli aggression against Palestinians in the West Bank, Jerusalem and Gaza." According to news reports, the statement was issued in the name of the Qassam Brigades and laid out four conditions for a ceasefire: ending all action in Jerusalem and the West Bank, ending the fire on and siege of Gaza, releasing all the prisoners who were re-arrested in the Israeli operation launched on June 12, 2014, after the disappearance of three Israeli settlers and the ceasing of "meddling" in the Palestinian Unity government.

k. Moussa Abu Marzouk, a top Hamas official, stated, as reported in a news article: "There should be a new equation so that we will not have a war

on Gaza every two years."

l. The word "militants" is used to describe Hamas forces in various news articles (identified in response to Interrogatory No. 4 below) and the Congressional Reports identified in subparts (a) and (b) of this response to Interrogatory No. 3.

m. Hamas spokesman Sami Abu Zuhri stated, as reported in a news article: "There will be no truce without an end to the war that the Occupation (Israel) began, a lifting of the blockade and a halt to all violations and killings in Gaza and the West Bank."

n. E-mail sent by Stephen Smith, head of NBC security for Europe, dated July 10, 2014, regarding NBCU Security's decision to move the filming of *Dig* out of Israel.

o. A news article published by the Washington Post, dated July 10, 2014, by Griff Witte and William Booth, entitled "As cease-fire with Hamas fails to take shape, Netanyahu says, 'Our answer is fire.'" This article is available at: https://www.washingtonpost.com/world/israel-accepts-truce-plan-hamas-balks/2014/07/15/04373008-0bf5-11e4-8c9a-923ecc0c7d23_story.html?utm_term=.e99302eb1314.

p. A news article published by MSNBC dated July 18, 2014, by Benjamin Landy and Maria Lokke, entitled "Scenes of war and heartbreak as Israeli ground forces invade Gaza." This article is available at: http://www.msnbc.com/msnbc/scenes-war-and-heartbreak-israel-hamas-conflict-intensifies.

q. A news article published by MSNBC dated July 18, 2014, by David Taintor, entitled "Obama points to rebels in downed Malaysian jet." This article is available at: http://www.msnbc.com/msnbc/obama-american-dead-malaysia-airlines-crash.

r. A news article published by MSNBC dated July 16, 2014, by Donna

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623