MARC J. SHRAKE (SBN 219331)
mjs@amclaw.com
ANDERSON, MCPHARLIN & CONNERS LLP
707 Wilshire Boulevard, Suite 4000
Los Angeles, California 90017-3623
Telephone: (213) 236-1691
Facsimile: (213) 622-7594

MICHAEL KEELEY *(Pro Hac Vice)*
michael.keeley@strasburger.com
TONI SCOTT REED *(Pro Hac Vice)*
toni.reed@strasburger.com
CARLA C. CRAPSTER *(Pro Hac Vice)*
carla.crapster@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

Attorneys for Defendant
Atlantic Specialty Insurance Company

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,<br><br>Defendant. | Case No. 2:16-cv-04435-PA-MRW<br><br>**DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**<br><br>Time: 9:30 a.m.<br>Date: May 24, 2017<br>Judge: Hon. Michael R. Wilner<br><br>File date: June 20, 2016<br>Discovery Cutoff: June 2, 2017<br>Pre-Trial Conf.: June 16, 2017<br>Trial Date: July 25, 2017 |

## I.  INTRODUCTION

Plaintiffs' Motion to Compel is long and rambling, touching on various earlier discovery requests, and providing only their version of the facts. But their motion boils down to a single issue: whether Atlantic can be compelled to hire an e-discovery vendor to search *all* documents Atlantic has electronically saved over the past sixteen years to locate any claims involving losses involving a Foreign Terrorist Organization, as identified by the U.S. State Department. Plaintiffs' motion should be denied because the documents sought are not reasonably accessible because of undue burden and costs. According to an estimate from an e-discovery vendor, the cost to run this absurdly broad search is over **$875,000**. Moreover, under California case law, the documents plaintiffs seek have no legal relevance. And even if they did, the request is certainly not worth the extreme expense.

## II.  BACKGROUND

The sole request in plaintiffs' motion is that Atlantic search—by hiring an e-discovery vendor—its entire "ImageNow" and CWS databases for all documents created since September 12, 2001, that contain the names of any Foreign Terrorist Organizations listed on the U.S. State Department's website (Doc 110 at p. 9). Atlantic's ImageNow database is the document management system that contains all documents Atlantic saves electronically. *See* Declaration of Joseph Topale. Atlantic's ImageNow database currently contains roughly 71,216,000 documents, which takes up more than 16 *terabytes* of data. These consist of Microsoft Word documents, PDFs, Text documents, e-mail message files, Tiff files, and various types of image files.

Atlantic's software applications use ImageNow to save all sorts of documents in "drawers," some of which do not have anything to do with claims. Of the total documents in the drawers in ImageNow, approximately 28,848,000 documents involve claims. Thus, in order to search documents created since September 12, 2001, to determine whether Atlantic had any claims involving Foreign Terrorist Organizations

1

**DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S
RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

would require Atlantic to search over 28,000,000 documents, which take up approximately 7.76 terabytes of data. A terabyte is approximately 1,024 gigabytes, but is often rounded down to 1,000 gigabytes. *Id.* at ¶ 4.

Since receiving the plaintiffs' motion, Atlantic hired an e-discovery vendor (at $285/hr) to provide an estimate of the cost to perform a search of the drawers containing claim related documents. That vendor, LDM Global, a well-known and respected e-discovery expert, informed Atlantic that it would charge $50 per gigabyte for the search. A copy of their estimate is attached to the Declaration of Carla Crapster as Exhibits A & B. Because a terabyte is approximately 1,000 gigabytes, and ImageNow has 7.76 terabytes of data, the cost of this initial search would be approximately **$388,000** (7.76 x 1,000 x 50). *Id.*

The next phase of a search by LDM Global would consist of promoting the search results to a database that could be reviewed. This would cost $150 per gigabyte. *Id.* There is no way to know how many gigabytes of data the search hits would return, but there are 61 U.S. designated Foreign Terrorist Organizations, many of which are organizations that are in the news frequently (for example, ISIL and al Qaeda). It is likely that there are news articles circulated that reference these high-profile organizations. And, of course, there will be many hits in connection with this case (which Atlantic has already searched, reviewed, and produced if appropriate, but will nonetheless be included in the search results). If there are, for example, 100 gigabytes (a conservative estimate), Atlantic will have to pay $15,000 for the process of "promoting" the search hits to a database. Then, there will be a hosting charge of $20 per gigabyte per month to store the documents for as long as the case is underway. Assuming again that there are 100 gigabytes of data returned, this will cost $2,000.00 per month, for at least the remaining two-and-a-half months of this case.

The above cost does not include the expense of Atlantic's counsel then reviewing the documents that are pulled from this search for responsiveness,

2

**DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S
RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

confidentiality, work product, and privilege. Atlantic expects that there would be a *bare minimum* of 100 hours of review time needed before producing documents to the plaintiffs, and most likely multiples of 100 hours. Assuming Atlantic uses younger associates at $225 per hour, Atlantic will incur at least $22,500 in legal fees. In total, using very conservative numbers, this search will cost approximately **$402,000**, assuming the number of hits is a miniscule fraction of the documents searched.

Plaintiffs also ask Atlantic to have its CWS system searched. That system is the database in which claims personnel keep their notes pertaining to claims. The separate cost to search Atlantic's CWS system will also be prohibitively expensive. Atlantic's CWS system contains approximately 102 gigabytes of data. Declaration of Joseph Topale. But, as the plaintiffs are aware, Atlantic does not have the capability to run keyword searches in CWS. Therefore, a tool to search CWS will first have to be built. Forensic Pursuit has estimated that the cost to build a search tool and search the CWS system would be approximately **$474,000**. *See* Ex. B to Declaration of Carla Crapster.

In short, the cost to conduct the search the plaintiffs request at the twelfth hour is approximately **$876,000**. And, all of this to satisfy the plaintiffs' curiosity about whether Atlantic has ever handled another claim that involved a Foreign Terrorist Organization. The plaintiffs themselves acknowledge that the factual circumstances of any other incident involving a terrorist organization will be substantially different from and thus irrelevant to the facts of this dispute. Doc. 110 at p. 4. But, they insist, NBCUniversal should "have the opportunity to review such other claims and make a determination for itself as to whether those other claims in fact are truly different than the Dig claim." *Id.* There could be no clearer indication that the plaintiffs are on a classic fishing expedition. The case law holds exactly that, and makes clear that the plaintiffs' request for an **$875,000** search is improper.[1]

---

[1] Plaintiffs' motion does not request Atlantic to perform a search of its ImageNow and CWS systems because, as Atlantic has explained ad nauseam, it would take

3

**DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S
RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

## III. ARGUMENT AND AUTHORITIES

### A. Plaintiffs' Terrorism Argument Is a Red Herring

Plaintiffs argue that Hamas is a terrorist organization and, therefore, it can never be involved in a war. First, their argument ignores the United States Supreme Court's holding in two separate cases that the country's conflict with Al Qaeda, another terrorist organization, following the 9/11 attacks constituted a war. *Hamdan v. Rumsfeld*, 548 U.S. 557, 594 (2006); *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004). Second, plaintiffs' argument overlooks the fundamentals of all insurance policies; that is, in order for there to be coverage, the facts of the insured's loss must fit within an insuring agreement of the policy, and it must not fall within an exclusion. Here, regardless of the characterization of Hamas—whether it is a terrorist organization or a traveling circus, plaintiffs' decision to leave Israel because of its actions can be covered only if the facts fit within the Imminent Peril Insuring Agreement of the Policy, not simply because of the label placed upon Hamas. And, even if the facts fall within the Imminent Peril Insuring Agreement, there can be no coverage if one of the four incredibly broad war-related exclusions of the Policy apply.

### B. Case Law Holds that Other Insureds' Claim Files are Irrelevant

Only last year, the U.S. District Court for the Southern District of California denied a motion to compel discovery of other insured's claims files because they were irrelevant. *San Diego Unified Port Dist. v. Underwriters at Lloyd's*, No. 15-cv-00022-WQH-JLB, 2016 U.S. Dist. LEXIS 117299 (S.D. Cal. May 26, 2016). As to bad faith, the court noted that plaintiff had not pleaded a "pattern and practice with respect to claims handling." *Id.* at *2-3. The court was also unpersuaded by the insured's argument that broad discovery might "unearth a discernable pattern of unfair claims handling practices," and called the plaintiffs' request "tantamount to a fishing

---

Atlantic months to simply search the e-mails of its 620 employees who have worked in claims since 2001. *See* Declaration of Joseph Topale, ¶ 7.

4

**DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S
RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623

expedition for irrelevant coverage determinations and policy interpretations involving other insureds under other factual circumstances." *Id.* The court concluded that because policy interpretation would not be "informed by discovery concerning other insured's claims," the discovery sought was "irrelevant and disproportionate to the needs of this case." *Id.* at *5.

*San Diego Unified Port* is directly on point in its discussion of relevance to policy interpretation and bad faith. As to bad faith, just like the insured in *San Diego Unified Port*, the plaintiffs here have pleaded bad faith only in connection with *this claim*. Their complaint says nothing about a pattern or practice of claims handling generally. Doc. 10 at pp. 22-25. The way that Atlantic has handled other claims has *no* relevance as to whether Atlantic was thorough and reasonable in its handling of *this* claim. If Atlantic paid another claim involving totally different circumstances (and every other claim will involve completely different circumstances—if Atlantic had another claim involving the 50-Day War, it would have been recent enough to appear in Atlantic's searches), can have no bearing on the contract interpretation issue of whether *this* event was a war (or warlike action or insurrection, rebellion, or revolution, or involved weapons of war) and whether Atlantic's position in this case is reasonable.

Other cases are in accord. In *J&M Associates v. National Union Fire Insurance Co*, No. 06-cv-0903-W (JMA), 2008 U.S. Dist. LEXIS 16855 (S.D. Cal. 2008), the court held that discovery of other insured's claims files were relevant to claims of bad faith only because the insured argued that the insurer had "adopted a policy of denying" the types of claims at issue. *Id.* at *12. But the court held that only discovery on claim files involving exactly the same type of policy at issue in their case would be relevant. *Id.* at *12-14. (Here, Atlantic has *fifteen* divisions besides Entertainment, but the plaintiffs do not limit their request to the type of policy at issue here or even to the entertainment division. Declaration of Aaron Stone.) The court denied even that discovery, however, because it would be burdensome and oppressive. *Id.* at 17.

5
**DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S
RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

In *Collins v. JC Penney Life Insurance Co.*, No. 02cv0674-L(LAB), 2003 U.S. Dist. LEXIS 8455 (S.D. Cal. May 6, 2003), the insured "speculated" that her requested discovery of other claim files would reveal failures to disclose information to other insureds, supporting her claim of bad faith and relating to "policy interpretation, relevant to her breach of contract claim." *Id.* at *14. Bu that was irrelevant: "It is unclear how [the dispute over an exclusion] would be advanced by discovery of any other insured's claim file, even if a claim under the same policy provision also had been denied." *Id.* at 17. As to bad faith, the court noted that JC Penney had no way to electronically identify responsive claims files, and that there was a large volume of documents that would need to be reviewed. *Id.* at 17-20. JC Penney had processed 4,872 claims per year since 1997 (six years before the case was decided). *Id.* at *19. Here, Atlantic has claims notes in its CWS system (and documents related to those claims in ImageNow) for over **400,000** claims. *See* Declaration of Joseph Topale at ¶ 5. Here, even more than in *JC Penney*, the burden of this search is substantial.

The plaintiffs have cited this Court to only one non-binding case for the proposition that other insureds' claims files are relevant. *Young v. Liberty Mut. Ins. Co.*, 1999 U.S. Dist. LEXIS 6987, *15-16 (D. Conn. Feb. 16, 1999). *Young* merely included a statement that other insured's claims are discoverable. This non-binding case cannot outweigh the actually on-point California case law discussed above.

The plaintiffs' other case law is inapposite. First, they rely on *Montoya v. Orange County Sheriff's Department*, No. SACV 11-1922 JGB, 2013 U.S. Dist. LEXIS 180682, *27-29 (C.D. Cal. Oct. 15, 2013) for the point that a *litigation hold* cannot be left solely in the hands of an IT professional. The plaintiffs' requested relief has nothing to do with a litigation hold, nor has any aspect of this case been left "solely in the hands of an IT professional." They next cite *Qualcomm Inc. v. Broadcom Corp.*, No. 05cv1958-B, 2008 U.S. Dist. LEXIS 911, *29-31 (S.D. Cal. Jan. 7, 2008), which did not involve a motion to compel but a motion for sanctions after it was revealed that the defendant

in the case (and its attorneys) had intentionally withheld documents that they knew were responsive because they were harmful to their position. *Id.* at *7-23. Nothing remotely similar has happened here. *Qualcomm* therefore has nothing to do with their request to force Atlantic to run a company-wide, sixteen-year search when the documents Atlantic would be searching for would have no relevance and would be extremely burdensome and expensive to locate, review, and produce. Plaintiffs finally cite *Logtale, Ltd. v. IKOR, Inc.*, No. C-11-05452 CW (DMR), 2013 U.S. Dist. LEXIS 107727, *10 (N.D. Cal. July 31, 2013), a case in which the defendant conceded that there were "gaps in the production" and produced only "121 e-mails, 109 of which were communications with Plaintiff." *Id.* at *5, 8. The defendant also produced "only three pages in response to a request seeking all documents relating to IKOR's communications with BeefTech, LLC, a company run by three of IKOR's principals." *Id.* at *5. Unlike in *Logtale*, there are no gaps in the production here. And to date, Atlantic has produced 6,988 pages worth of documents—a far cry from 121 e-mails or *three* pages. But even in *Logtale*, the court gave the defendant another chance to fix its approach before bringing in an e-discovery vendor. *Id.* That case provides no support for forcing Atlantic to incur the expense of hiring an e-discovery vendor when Atlantic is clearly capable of properly handling appropriate discovery requests.

In short, this case involves a dispute that *Montoya*, *Qualcomm*, and *Logtale* did not: a plaintiff attempting to force a defendant to incur the ***near-seven-figure*** expense of hiring an e-discovery vendor to search *all* Atlantic's documents created over the last sixteen years, across all its business lines, for irrelevant information.

**C.     The Plaintiffs Must Bear the Expense if They Insist on the Search**

Although Atlantic has no doubt that any information discovered in this search will be irrelevant and inadmissible, it has nothing to hide, and as it has told plaintiffs (*See* Declaration of Carla Crapster), and does not object to the plaintiffs running this search at their own expense, as long as Atlantic's attorneys have an opportunity to

7

review the documents the search turns up to protect confidential and privileged information. There is support for requiring the party requesting such a broad search to pay the bill for it. Cost-shifting is "appropriate when the discovery sought 'imposes an "undue burden or expense" on the responding party.'" *Lifetouch Nat'l Sch. Studios, Inc. v. Moss-Williams*, No. C10-05297 RMW (HRL), 2013 U.S. Dist. LEXIS 148360, at *10 (N.D. Cal. Oct. 15, 2013) (quoting *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316-17 (S.D.N.Y. 2003)). "The burden or expense of discovery is 'undue' when it 'outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.'" *Id.* (quoting Fed. R. Civ. Proc. 26). The main factors courts consider in deciding whether to fee-shift are whether the request is narrowly tailored, the cost of the request, and whether the information is available by some other source. Here, the cost is astronomical, and the plaintiffs' request is not remotely narrowly tailored. It spans a sixteen-year period, and is not limited to any particular type of policy or even a particular line of business. And the plaintiffs ignore that they already *have* the results of Atlantic's three-and-a-half-year search for documents dating back to July 2013 (conducted at the end of 2016), and Atlantic's inquiries of key employees and former employees who worked at Atlantic beginning in 2010. *See* Declaration of Aaron Stone ¶ 6. As to whether the information is available from some other source, the plaintiffs have themselves confirmed that it is. They have conducted internet searches for cases involving Atlantic and Hamas and found one result. Atlantic, of course, did not rely on the internet in conducting its own internal searches and inquiries, but now that the plaintiffs have identified a 2003 case involving Atlantic and Hamas to Atlantic's attention, they have made evident that they can find what they seek with a "basic

8

**DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S**
**RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

Internet search" (Doc. 110 at 7) rather than through a lengthy discovery process that carries an almost seven-figure price tag.[2]

### D.     The Search for Duffy's and Crosby's E-mails

Although not included within the relief sought, plaintiffs also complain that Atlantic did not search for e-mails by Sean Duffy and Dennis Crosby. Briefly, Atlantic ran an extensive search in its ImageNow document-management system dating back to July 2013, and for the e-mails of the individuals involved in the underwriting of the policy and the handling of the *Dig* claim. Atlantic felt it was unnecessary to search any other employees' e-mails. Sean Duffy is the Senior Vice President & Chief Claims Officer of OneBeacon Insurance Group. He had only a very tangential involvement with the *Dig* claim. Atlantic listed him as someone responsible for Atlantic's decision to deny the claim because, as the plaintiffs know in light of the documents Atlantic has produced, Mr. Duffy agreed with the denial of the *Dig* claim. But his involvement was limited to reviewing one e-mail and an attached letter and forwarding it to Dennis Crosby. There was thus no reason to search his e-mails. As to Dennis Crosby, his involvement is even more tangential. He was sent the one e-mail about the *Dig* claim by Mr. Duffy to ensure he knew about the anticipated denial of coverage, but he had

---

[2] Atlantic is exploring whether it has any documents related to the 2003 lawsuit. As it informed the plaintiffs, no one at Atlantic knew of this case. *See* Letter Dated May 15, 2017 (Doc.108-3, p. 1621-24). That case was a subrogation suit that was part of a sale of its business to Armour Group Holdings Ltd. in 2014. The employee at Atlantic who was monitoring this case was John Murphy, who retired after the sale to Armour, and therefore had no need to mention this case to his successor. *See* Declaration of Aaron Stone at ¶ 5. Once the sale was finalized, Atlantic forwarded all electronic files considering the claim to Armour, and it delivered all paper files to it. Thus, the fact that no such files were found as a result of Atlantic's earlier searches is not surprising. Nor is the fact that no one currently at OneBeacon that has been asked knew of any cases involving Hamas. Moreover, it is noteworthy that Hamas was one of dozens of defendants in that case and defaulted early on, and the case therefore has virtually nothing to do with Hamas. *See* Declaration of Aaron Stone at ¶ 7.

no involvement in or knowledge of the handling of the claim. The plaintiffs deposed him presumably because he had some knowledge of the decision not to renew NBCU's policy, which Atlantic has always contended is irrelevant. Despite Atlantic's firm belief that it is a waste of time and money, it nonetheless agreed to search Mr. Duffy's and Mr. Crosby's e-mails. *See* Declaration of Aaron Stone at ¶¶ 8 & 9.

## IV. CONCLUSION

In short, the relief the plaintiffs seek is truly absurd. They want Atlantic to run a search of its entire document-management system over a sixteen-year period and build a tool to search a currently unsearchable database, the costs of which are approximately $875,000, all so the plaintiffs can learn about the entirely irrelevant issue of how Atlantic has possibly handled other claims involving terrorist organizations. Based on Atlantic's inquiries of current and former employees whose knowledge dates to 2010, there are no such claims in the recent past. But to be *sure* and to go back *sixteen years*, the plaintiffs demand that Atlantic incur almost $1 million to retain an outside expert and untold attorney time to review the results of that search. Respectfully, Atlantic requests that the Court deny the plaintiffs' motion or, alternatively, require them to pay the cost of such a search—both the amounts incurred by an outside vendor and by Atlantic's counsel to review the documents discovered, because the requested documents are not reasonably accessible because of undue burden and cost. Atlantic also requests this Court order plaintiffs to reimburse Atlantic for the attorneys' fees it incurred in responding to this motion.

DATED: May 19, 2017

        MICHAEL KEELEY *(Pro Hac Vice)*
        TONI SCOTT REED *(Pro Hac Vice)*
        CARLA C. CRAPSTER *(Pro Hac Vice)*
        STRASBURGER & PRICE, LLP
        By:   /s/ Michael Keeley
              Michael Keeley
        Attorneys for Defendant Atlantic Specialty Insurance Co.

10
**DEFENDANT ATLANTIC SPECIALTY INSURANCE COMPANY'S
RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**