LUCIA E. COYOCA (SBN 128314)
 lec@msk.com
VALENTINE A. SHALAMITSKI (SBN 236061)
 vas@msk.com
DANIEL M. HAYES (SBN 240250)
 dmh@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs
Universal Cable Productions LLC and
Northern Entertainment Productions LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ATLANTIC SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | CASE NO. 2:16-cv-4435-PA-MRW <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY RESPONSES** <br><br> Time: 9:30 a.m. <br> Date: May 24, 2017 <br> Judge: Hon. Michael R. Wilner <br><br> [Declarations of Valentine A. Shalamitski and Michael Kunkel filed concurrently herewith] <br><br> File Date: June 20, 2016 <br> Discovery Cutoff: June 2, 2017 <br> Pre-Trial Conf.: June 16, 2017 <br> Trial Date : July 25, 2017 |

8908100.5
MITCHELL
SILBERBER

**REPLY ISO MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**

## I. Introduction

From the outset, Atlantic has attempted to stonewall Universal's discovery of other claims concerning losses caused by terrorist violence, based on a vague and shifting burden objection. Now, in response to Universal's motion, Atlantic attempts to add credence to its objection with grossly overinflated e-discovery cost estimates.

The search Universal has requested is standard, can be conducted much more efficiently than Atlantic claims, and is targeted to identify highly relevant evidence bearing on the central issue in this case: Atlantic's understanding of the war exclusions in the Policy and the import of the lack of a terrorism exclusion. Atlantic has proven that it is either not able or not willing to conduct the search itself. Therefore, the time has come for the Court to order that the search be conducted by a third-party e-discovery vendor.

## II. Argument

### A. Atlantic's Purported Burden Is Vastly Overstated

As set forth in Universal's Motion, Atlantic has continually taken the unreasonable position that searching for the documents requested in RFP Nos. 41, 42, 43, 44, 48, and 49 regarding Atlantic's handling of claims for losses caused by terrorism, Hamas, or the Palestinian/Israel conflict, and answering the related Interrogatories (Nos. 22 and 23), would be unduly burdensome. Initially, Atlantic's argument was that it would be nearly impossible to complete the searches because Atlantic's in-house IT personnel can only run searches two gigabytes at a time, and cannot run keyword searches of the CWS database. Motion at 5-6. Atlantic's counsel repeatedly rebuffed requests that they consult an outside e-discovery vendor. *Id.*

Now, faced with Universal's motion, Atlantic relies on estimates from two e-discovery vendors to claim that the cost to run a search for documents responsive to the RFPs at issue would cost over *$875,000*. Opposition at pp. 1-3. As set forth

in the concurrently filed declaration of Michael Kunkel, Atlantic's outrageously overstated estimates are off by a factor of at least 10. This is, in part, because Atlantic's purported e-discovery vendors are in fact companies that appear to make their money by searching and *hosting* data at a per-gigabyte charge. Declaration of Michael Kunkel ("Kunkel Decl."), ¶¶ 5-6. As a result, Atlantic's inefficient and costly estimates are based on the false premise that a third-party e-discovery vendor must (i) host all the data on Atlantic's ImageNow document management system regarding claims documents and all the data in Atlantic's CWS System, which comes to several terabytes of data, and (ii) search all of that hosted data on a per-gigabyte basis. *Id.* ¶ 6; *see also* Opposition at p. 2.

What these estimates ignore is that a sophisticated e-discovery vendor can substantially mitigate the costs involved by doing two things. First, instead of hosting *all* of the data, an e-discovery vendor can index and run keyword searches of the data *before* hosting only the more limited set of search results. Kunkel Decl. ¶ 7. Second, the searches could be charged on an hourly – as opposed to per gigabyte – basis. These simple (and standard) strategies would reduce the cost of searching ImageNow to approximately $15,000, and the cost of searching CWS to approximately $10,000-$20,000. *Id.*, ¶¶ 7-8. Even assuming *arguendo* that Atlantic's estimated costs of $15,000 to "promote" search results to a hosted database, $2,000/ month to host the data for an additional 2.5 months, and $22,500 for attorney review time (Opposition at pp. 2-3) are not overstated, the total maximum estimate for the search, hosting, and review of ImageNow and CWS is $77,500. Thus, Atlantic's purported estimate of $875,000 is simply not credible.

Of course, had Atlantic agreed to negotiate with Universal regarding its search in the first instance, the costs would be even *lower*. Setec Investigations frequently images and searches data sources and databases the size of Atlantic's for litigation matters, and running a search using the key words Universal has suggested would likely cut down the data to a manageable size. Kunkel Decl. ¶ 7.

1  And to the extent the initial searches returned too many "hits," an experienced e-
2  discovery vendor like Setec could use additional terms to further refine the search,
3  further reducing the cost. *Id.*
4      Atlantic's claim that its searches must have been reasonable because it has
5  produced 6,988 pages of documents is frivolous. Opposition at p. 7. A large
6  portion of what Atlantic has produced are publicly available news reports and other
7  public documents, not internal emails or files. Declaration of Valentine
8  Shalamitski ("Shalamitski Decl."), ¶ 2.  In response to RFP Nos. 41, 42, 43, 44,
9  48, and 49, Atlantic refused to produce *any* responsive documents; instead, in
10 response to RFP Nos. 41, 42, 43, and 44, Atlantic "object[ed] to having to conduct
11 … a search and therefore [could] not state for certain whether it is withholding any
12 documents responsive to" these RFPs, and in response to RFP Nos. 48 and 49,
13 Atlantic stated that, "Based on [its inadequate review and inquiries], Atlantic
14 represents that it is not aware of any documents responsive to" these RFPs. *Id.*,
15 ¶ 3.

16     **B.**    **Atlantic's Treatment Of Other Claims Arising Out Of Terrorist**
17              **Activities Is Relevant And Discoverable**

18     As explained in Universal's Motion, Atlantic's treatment of other claims
19 involving terrorism is relevant to interpretation of the Policy terms, and clearly
20 discoverable. Motion at 4. *See Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135
21 F.R.D. 101, 106-07 (D.N.J. Aug. 31, 1990) (holding that "materials relating to the
22 manner in which these defendants have handled the claims of other insureds with
23 identical policy language" "is relevant for purposes of discovery since it may show
24 that identical language has been afforded various interpretations by the insurer"
25 and ordering discovery of the same); *Phillips v. Clark County Sch. Dist.*, 2012 U.S.
26 Dist. LEXIS 5309, *14 (D. Nev. Jan. 18, 2012) ("Most courts also permit
27 discovery regarding other lawsuits and claims involving the identical policy
28 provisions" as "extrinsic evidence potentially relevant to the interpretation of an

Mitchell
Silberberg &
Knupp LLP

8908100.5

3

**REPLY ISO MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**

ambiguous insurance policy provision"); *Young v. Liberty Mut. Ins. Co.*, 1999 U.S. Dist. LEXIS 6987, at *15-16 (D. Conn. Feb. 16, 1999) (affirming magistrate judge's order to produce claim files, and noting that "[t]o facilitate a full understanding of the meaning of an insurance policy's terms, many courts have allowed discovery of … other insureds' claims") (citations omitted); *Owens-Brockway Glass Container, Inc. v. Seaboard Surety Co.*, 1992 U.S. Dist. LEXIS 10337 (E.D. Cal., May 27, 1992) (ordering production of "earliest and latest" ten files for type of claim at issue, as relevant to understanding of policy language, and whether the policy language was susceptible of meaning urged by insured).

### C. Atlantic Has Forfeited The Right To Conduct These Critical Searches On Its Own

As stated in the Motion, recent depositions have revealed serious deficiencies in Atlantic's search for and production of documents in this case. During the Rule 30(b)(6) deposition of Atlantic on, among other issues, its search for documents in connection with this litigation, Atlantic's designee (Aaron Stone) revealed for the first time that Atlantic had not searched the documents of Sean Duffy or Dennis Crosby – two important witnesses that Atlantic initially attempted to prevent from being deposed altogether. Then, the day before Mr. Crosby's May 17, 2017 deposition, Atlantic produced highly relevant and redacted documents that Universal had never seen, including an email chain between Mr. Crosby and Mr. Duffy which would not have been picked up by Atlantic's previous searches of the other individuals involved in the underwriting and handling of the *Dig* Claim. Shalamitski Decl., ¶ 4. Atlantic sandbagged Universal again by producing more highly relevant and heavily redacted documents for the first time at a break in Mr. Crosby's deposition. These documents belie Atlantic's continued characterization of Mr. Duffy and Mr. Crosby as "tangential" to this litigation, which has been, at bottom, merely an excuse to avoid highly relevant discovery.

Given Atlantic's track record and the fast-approaching trial date, the Court

should appoint Setec, an experienced e-discovery vendor, to run the requested searches of Atlantic's documents to ensure that the searches are done quickly, efficiently, and in conformance with Atlantic's obligations under the Federal Rules of Civil Procedure.

### III. Conclusion

For all of the foregoing reasons and those set forth in its Motion, Universal respectfully requests that the Court grant its Motion for Further Discovery Responses.

Respectfully submitted,

DATED: MAY 22, 2017          MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Daniel M. Hayes
    Daniel M. Hayes
    Attorneys for Plaintiffs
    Universal Cable Productions LLC and
    Northern Entertainment Productions LLC