UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-4435 PA (MRWx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Universal Cable v. Atlantic Specialty Ins. | | |

| Present: The Honorable | Michael R. Wilner | |
|---|---|---|
| Veronica Piper | | n/a |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiff / Petitioner: | | Attorneys Present for Defendant / Respondent: |
| None present | | None present |

**Proceedings:** ORDER RE: DISCOVERY MOTION

    1.    This case involves the interruption of Plaintiff's television production in Israel. Defendant Atlantic denied Plaintiff's insurance claim for that interruption. Plaintiff's civil claims in this action (breach of the insurance contract and bad faith denial of coverage) require interpretation of Defendant Atlantic's war and terrorism exclusion provisions from the governing policy. (Docket # 107 at 2.)

    2.    At issue in this motion are Plaintiff's requests for information about claims from other insureds involving those provisions. Plaintiff seeks documents for all insurance claims "in which Atlantic compensated insureds for losses caused by terrorism" for the period from 2001 to the present. (Id. at 4.) Plaintiff contends that, if Defendant paid these types of claims, "such evidence potentially could demonstrate that Atlantic acted inconsistently" in denying Plaintiff's claim. (Id.)

    3.    Defendant resists this discovery on a number of grounds. Defendant contends that materials related to other claims are irrelevant to the interpretation of its contract with Plaintiff in the current action. Additionally, the company contends that responsive materials do not exist. Defendant conducted an electronic search of its files for the period from mid-2013 through the present. It found no responsive materials for other similar claims. The insurer also asserts that, save for claims directly related to the disasters of September 11, 2001,[1] its key personnel are not aware of war- or terrorism-related claims across its network of insurance companies going back to 2010. (Docket # 113-4 at 2.)

---

[1] Plaintiff suggests that *it* brought the 9/11 claims to Defendant's attention based on its own Internet research. (Docket # 107 at 8.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-4435 PA (MRWx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Universal Cable v. Atlantic Specialty Ins. | | |

4. Finally, the parties have a fundamental disagreement about the cost and mechanics of searching Atlantic's electronic records and claims files. Defendant contends that such a search would cost nearly $900,000 and take a treacherously long time to assemble, review, and produce responsive materials. (Docket # 113 at 2-6.) By contrast, Plaintiff Universal asserts that the search can be conducted efficiently for about $77,000. (Docket # 114 at 3.)

5. The Court notes that the matter is set for trial in July 2017. The discovery cutoff in the case is June 2. Plaintiff's demand for damages is $6.9 million plus punitive damages, fees, and other costs. (Docket # 10 at 25.)

\* \* \*

6. Two key principles guide the Court's review of the motion. First, a litigant is entitled to conduct pretrial discovery regarding "any nonprivileged matter that is relevant to a party's claim or defense." Fed. R. Civ. P. 26(b)(1). Second, relevant discovery must be "proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

7. The resolution of a discovery dispute regarding the "proportionality" component of Rule 26(b)(1) typically involves the exercise of judicial discretion. SEC v. Chen, No. CV 15-7425 RGK (PLAx), 2016 WL 3598108 (C.D. Cal. 2016); Mireskandari v. Mayne, No. CV 12-3861 JGB (MRWx), 2016 WL 1165896 (C.D. Cal. 2016). Review is for abuse of discretion. Cal. Dep't of Soc. Servs. v. Leavitt, 523 F.3d 1025, 1031 (9th Cir. 2008) (denial of discovery motion "ordinarily reviewed for abuse of discretion").

8. The Court begins its analysis with real doubts about the significance of the information that Plaintiff demands from its insurer. Plaintiff points to judicial decisions that hold that extrinsic evidence such as "other claims or lawsuits involving the same policy provision in issue [ ] can be used to prove the meaning of an ambiguous policy provision." Phillips v. Clark County School Dist., 2012 WL 135705 at *5 (D. Nev. 2012). "Most courts [ ] permit discovery regarding" those similar claims and lawsuits. Id. (citing cases). This is because of a recognition that an insurer's inconsistent interpretation "could undermine the insurer's position that the language in question is clear and unambiguous." Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 106 (D.N.J. 1990).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-4435 PA (MRWx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Universal Cable v. Atlantic Specialty Ins. | | |

9.      However, the relevance of this information seems particularly limited. At issue in this case is the legal question of whether the policy's provisions are, in Plaintiff's words in its opposition to the pending summary judgment motion, "capable of more than one reasonable construction." (Docket # 85 at 24 (citing cases).) A court's determination of the reasonableness of a party's interpretation of a contract would seem to be minimally affected by that party's <u>subjective</u> analysis. Moreover, Plaintiff makes no argument that the Atlantic had an alternative interpretation of the contract in mind (based on other past experience with war / terror claims) <u>when it entered into the policy</u>. That's the typical basis for invoking the need to obtain parol evidence regarding a contract. <u>Bullard v. Wastequip Manufacturing LLC</u>, No. CV 14-1309 MMM (SSx), 2015 WL 12766467 at *24 (C.D. Cal. 2015) ("Where the terms of a contract are clear and unambiguous, the parol evidence rule prevents a party from using extrinsic evidence to contradict the terms of the contract."); <u>In re Transact, Inc.</u>, No. SA CV 13-1312 MWF, 2014 WL 3888230 at *15-16 (C.D. Cal. 2014) ("parol evidence relating to [ ] interpretation" of ambiguous contract should be considered to determine "the intent of the parties"). The Court is struck by the minimal probative value that proof of the company's potentially inconsistent positions would have in the district court's evaluation of the present dispute.

10.     But all of this presupposes that responsive information even exists in Defendant's files – or that it demonstrates any inconsistency on the company's part. Plaintiff contends that "it is entirely possible (indeed likely) that there are relevant claim files in Atlantic's system pertaining to claims for losses by terrorist activities." (Docket # 107 at 8.) That speculation appears to be based on (a) Universal's claim in the present case and (b) large payments more than 15 years ago surrounding the 9/11 terror attacks. Weighed against that are the unrefuted statements of Defendant's senior claims staff that there have been none during a significant portion of the intervening period of time.

11.     So, assuming (without deciding) that information from Atlantic's unrelated claim files could possibly be relevant to a disputed issue in the case, the Court concludes that the Rule 26 proportionality analysis militates against compelling Defendant to search for and produce these materials. The Court accepts that: the case is of significant value (Factor 2); Defendant has exclusive access to its own claim files (Factor 3); and there is no meaningful mismatch in the relative resources of the parties in conducting discovery (Factor 4).

12.     However, the Court has minimal information from which it can conclude that information about Atlantic's interpretation of past claims (if any exist) will be important in resolving any key issue in the case (Factors 1, 5). Rather, notwithstanding the lengthy, numbered list of reasons that Mr. Shalamitski recited at the hearing, discovery centered on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-4435 PA (MRWx) | Date | May 25, 2017 |
|---|---|---|---|
| Title | Universal Cable v. Atlantic Specialty Ins. | | |

Atlantic's subjective history in handling war/terror claims likely is decidedly tangential to the district court's evaluation of the current policy issue. The information may be of only limited persuasive value in evaluating what the exclusions mean or whether Defendant properly invoked them here.

13. Additionally, the financial burden – whether imposed on one party, the other, or shared in some way – is obviously considerable, regardless of which calculation the Court finds persuasive (Factor 6). Plaintiff demands that Atlantic (a major insurer) search its sizeable databases across numerous subsidiaries and divisions for a period of nearly two decades. The cost of undertaking such a search – even with top-level data management resources – will certainly be eye-watering. And, given the nature of insurance company decision-making, the claim files will inevitably contain privileged material that Defendant's attorneys would be entitled to review and withhold from production. The costs will clearly be high. The benefits, however, are minimal, and may end up being nonexistent. This is a crucial component of the proportionality analysis; it firmly tilts against Universal.

14. Another facet of the burden analysis that the parties didn't touch on is time. Plaintiff did not serve this discovery request until February 2017, and brought the matter for hearing – after receiving expedited relief from Judge Wilner – at the end of May. The discovery cutoff is days away. There is no conceivable way that, assuming that the Court ordered compliance with the document requests, Defendant could conclude its search and produce responsive materials in a timely manner. See Judge Anderson's Scheduling Order entered September 2016 (Docket # 28 at 1) (discovery cutoff "is the last date to complete discovery, including [ ] the resolution of any discovery motions before the magistrate judge"). In evaluating the proportionality of the discovery request, the Court is cognizant that Plaintiff "backloaded" its massive document demand to the end of the discovery period. That is an additional factor against ordering extensive, eve-of-trial discovery of minimally probative material.

15. The Court therefore exercises its discretion to DENY the motion to compel. The Court concludes that Plaintiff's document demands are not proportional to the needs of the case under Rule 26.

16. The Court further concludes that an award of expenses is not warranted. Fed. R. Civ. P. 37(a)(5) (court must not order payment if motion was "substantially justified" or if "other circumstances make an award of expenses unjust").