KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,<br><br>                      Plaintiffs,<br><br>         v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>                      Defendant. | Case No.: 2:16-cv-4435-PA-MRW<br><br>The Honorable Percy Anderson<br>Dept. 9A<br><br>**JOINT STATUS REPORT RE DKT. 141** |

Plaintiffs Universal Cable Productions LLC and Northern Entertainment Productions LLC ("Universal" or "Plaintiffs") together with Defendant Atlantic Specialty Insurance Company ("Atlantic" or "Defendant") submit this Joint Status Report in accordance with this Court's Order dated October 3, 2019, requesting "a succinct statement of the factual and legal issues that have been remanded to this Court for resolution as well as the parties' views and proposals concerning a procedure and schedule for resolving those issues." Dkt. 141. The parties met and conferred on November 1, 2019, in advance of preparing this report.

## I.   PLAINTIFFS' STATEMENT

*Background*.  Defendant issued Plaintiffs a production insurance policy covering "imminent peril" including acts of terrorism.  Yet, when Hamas fired rockets into Israeli civilian population centers in July of 2014 – forcing Plaintiffs to relocate production of the television series *Dig* from Jerusalem to a new location outside of Israel – Defendant denied coverage for the substantial expenses Plaintiffs incurred.  At that time, Defendant relied on War Exclusions 1 and 2 in denying coverage:

> This policy does not insure against loss or damage caused directly or indirectly by:
>
>> 1. War, including undeclared or civil war; or
>> 2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;
>> ....

Dkt. 61-8, Exhibit 2 at 17 (policy attached to Declaration of Andrea Garber in Support of Plaintiffs' Motion for Partial Summary Judgment).  Plaintiffs brought suit to enforce the policy and for damages associated with Defendant's bad faith denial of coverage.  In the course of this litigation, Defendant argued two additional War Exclusions, in addition to Exclusions 1 and 2 above, precluded coverage:

> 3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

> Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
> 4. Any weapon of war including atomic fission or radioactive force, whether in time of peace or war; ….

*Id.* This Court entered summary judgment for Defendant on Exclusions 1 and 2 as well as on Plaintiffs' bad faith claim. Dkt. 128 at 13–17. This Court did not reach Exclusions 3 and 4 at that time. *Id.* at 15.

The Ninth Circuit reversed the "entry of summary judgment in favor of Atlantic on the first and second war exclusions, and direct[ed] the entry of summary judgment in favor of Universal on the first and second war exclusions." *Universal Cable Prods., LLC v. Atl. Specialty Ins. Co.*, 929 F.3d 1143, 1162 (9th Cir. 2019). The Ninth Circuit held that "the record demonstrate[d] that neither exclusion applie[d]" and that "Atlantic breached its contract by denying Universal coverage on that basis." *Id.* at 1153. In so holding, the Ninth Circuit agreed with Plaintiffs' position that "ordinary, popular meanings of these terms do not control in this context," and explained that Plaintiffs provided "unrebutted expert evidence demonstrating the customary usage of 'war' and 'warlike action by a military force' in the insurance context." *Id.* at 1154.

The Ninth Circuit remanded the consideration of Exclusions 3 and 4 to this Court and vacated the "grant of summary judgment on Universal's bad faith claim." *Id.* at 1162 & n.9. This Court then requested a statement from the parties on the issues to be decided on remand as well as the process and schedule for deciding those issues. Dkt. 141.

*Plaintiffs' Statement of Factual and Legal Issues.* The factual and legal issues remanded to this Court are as follows:

1. Whether Atlantic breached its insurance contract with Universal by asserting that Exclusions 3 and 4 preclude coverage, *see Universal Cable Prods.*, 929 F.3d at 1161–62 & n.9;

2. Whether Atlantic waived its argument that Exclusion 4 precludes coverage, *see id.* at 1162 n.9;

2

JOINT STATUS REPORT

3. Whether Atlantic breached the implied covenant of good faith and fair dealing by denying Universal's claim for coverage in bad faith, *see id.* at 1162.

Issues 1 and 2 regarding Exclusions 3 and 4 are ripe for summary judgment, and issue 3 regarding Atlantic's bad faith is ready for trial.

*Plaintiffs' Response to Defendant's Statement of Factual and Legal Issues.* Defendant lists nine legal issues and 40 factual issues to be decided by this Court, all of which appear to be sub-questions of the issues Plaintiffs identify above. Plaintiffs do not interpret this Court's order, Dkt. 141, as soliciting or requiring an exhaustive statement of disputed facts. Plaintiffs submit that summary judgment briefing is the appropriate vehicle for identifying and litigating the sub-questions necessary to this Court's decision on the issues Plaintiffs have identified.

*Summary Judgment.* The parties previously cross-moved for summary judgment on Exclusions 3 and 4. Dkts. 57, 61. Plaintiffs propose supplemental briefing analyzing any impact of the Ninth Circuit's ruling on prior briefing, Defendant's waiver of its arguments as to Exclusion 4, and materials that were not yet available when the parties previously cross-moved for summary judgment, namely the May 9, 2017, deposition of Defendant's claims adjuster Pamela Johnson and the May 19, 2017, deposition of Defendant's Vice President and Rule 30(b)(6) designee Peter Williams. This Court's consideration of argument and analysis regarding the Johnson and Williams depositions would be consistent with the Ninth Circuit's reasoning for remanding Exclusion 3 and for denying Defendant's Motion to Strike and for Sanctions, *see Universal Cable Prods.*, 929 F.3d at 1161–62 ("As Universal stated at oral argument – and confirmed by the parties' briefing on the motion to strike – this question implicates potential factual disputes that the district court has yet to consider. We thus remand…."); *id.* at 1162 ("[T]he [Johnson and Williams] depositions were not scheduled by the parties until after briefing on the summary judgment motion was completed. Universal, thus, did not have an opportunity to supplement the record before this appeal was taken because the district court did not rule on the third war exclusion.").

3

Defendant asserts that it will raise evidentiary objections to Plaintiffs' summary judgment evidence, as it did during prior summary judgment briefing. Plaintiffs similarly anticipate renewing its evidentiary objections to Defendant's summary judgment evidence.

Plaintiffs' bad faith claim is trial-ready. Nonetheless, Plaintiffs understand that Defendant intends to renew its request for summary judgment as to bad faith. Plaintiffs will oppose. The Ninth Circuit held that "triable issues of fact remain with regard to Universal's claim that Atlantic acted in bad faith in denying its claim." *Id.* While the Ninth Circuit recognized "the possibility that how the district court decides the third and fourth exclusions may affect its ultimate decision of Universal's bad faith claim," *id.* at 1162 n.10, the Ninth Circuit nonetheless held that there are triable issues of fact as to whether Atlantic acted in bad faith. That holding is law of the case. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("[A] court is generally precluded from reconsidering an issue that has already been decided by … a higher court in the identical case." (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)).

*Expert Reports*. Defendant proposes a complete second bite at the apple in seeking to designate additional experts and to supplement its existing expert reports. This should be rejected. Although Defendant claims that additional expert designations and reports regarding Plaintiffs' bad faith claim and the customary or special meanings or usage of Exclusions 3 and 4 are warranted in light of the Ninth Circuit opinion and remand, that is not the case. Atlantic was on notice of these issues well in advance of Universal's appeal – from the discovery and expert work in this case. Furthermore, the Ninth Circuit's holding that "triable issues of fact remain with regard to Universal's claim that Atlantic acted in bad faith in denying its claim" is now law of the case. *See Universal Cable Prods.*, 929 F.3d at 1162.

The Ninth Circuit opinion does not justify new expert work because it did not modify existing California law, as Atlantic argues. Indeed, the Ninth Circuit lacks the authority to modify California law. *See Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) (explaining that "[t]he task of a federal court in a diversity action is to approximate state

law as closely as possible" and that "a federal court is not free to reject a state judicial rule of law merely because it has not received the sanction of the state's highest court, but it must ascertain from all available data what the state law is and apply it" (internal quotations omitted)). The Ninth Circuit instead interpreted existing California law as to the meaning of the policy language and as to bad faith – law that Plaintiffs advanced in this litigation well before the appeal. *See, e.g.*, *Universal Cable Prods.*, 929 F.3d at 1151–54 (citing and applying California law predating this Court's summary judgment order).

The Ninth Circuit held that "the special meaning of the [policy] terms in the insurance context" apply rather than their "ordinary and plain" meaning. *Id.* at 1153. Plaintiffs advanced this argument in this Court. *See, e.g.*, Memorandum of Points and Authorities in Support of Universal's Motion for Partial Summary Judgment, Dkt. 61-1 at 21 ("Courts have … interpreted Exclusion 3 ('insurrection, rebellion, revolution, etc.') in a technical sense and ascribed to it a special meaning in the insurance context."); Corrected Memorandum of Points and Authorities in Opposition to Atlantic's Motion for Summary Judgment, Dkt. 85 at 5 ("Contrary to Atlantic's argument, the War Exclusions should not be interpreted based solely on the 'ordinary and popular' meanings of the words used because the words used have a well-established special and technical meaning." (citing Cal. Civ. Code §1644)), and 23 (arguing that Atlantic is not entitled to summary judgment on bad faith and quoting the California Supreme Court). Even before summary judgment briefing, in March of 2017, Plaintiffs served the expert report of Ty Sagalow, which provided his opinion that Atlantic's decision to apply the War Exclusions, including Exclusions 3 and 4, was inconsistent with industry custom and practice. Atlantic had ample opportunity to respond to this report, and it did so. It served the rebuttal report of Anthony Clark in April of 2017 in response to Mr. Sagalow's analysis. At that same time, it disclosed Peter Williams as a potential expert witness for trial, stating that Mr. Williams would opine on the industry custom and practice in the application of war exclusions. Defendant could have had Mr. Williams prepare a report of his opinions but evidently opted

1  not to do so.  Similarly, Defendant could have asked Mr. Clark to respond to Mr. Sagalow's
2  report in a more fulsome fashion.

3       As to bad faith, the Ninth Circuit in no way changed California law and accordingly
4  there is no reason for additional expert reports on this issue.  The Ninth Circuit's vacatur
5  was the direct result of its reversal as to Exclusions 1 and 2.  *See Universal Cable Prods.*,
6  929 F.3d at 1162 ("Because we reverse the district court's entry of judgment in favor of
7  Atlantic and conclude that Atlantic breached its contract, and because triable issues of fact
8  remain with regard to Universal's claim that Atlantic acted in bad faith in denying its claim,
9  we vacate the district court's judgment on Universal's bad faith claim and remand for
10 further proceedings consistent with our opinion.").  Moreover, both Plaintiffs and
11 Defendant previously served expert reports analyzing Plaintiffs' bad faith claim.  Plaintiffs
12 served the expert report of Mr. Sagalow and Defendant served the expert report of Mr.
13 Clark.  Both Mr. Sagalow and Mr. Clark submitted rebuttal reports responding to each
14 other's opinions.  Each analyzed Atlantic's claims handling process and whether it
15 complied with industry customs and practice.  Defendant also disclosed Mr. Williams as a
16 potential expert witness for trial and specified that he may testify as to whether Atlantic
17 acted within the standard custom and practice for claims handling, policy interpretation,
18 and investigation with respect to certain aspects of Plaintiffs' claim for coverage.  As with
19 Exclusions 3 and 4, Atlantic could have asked Mr. Clark to prepare his reports differently,
20 or asked Mr. Williams to prepare a report, or designated additional experts at that time.  It
21 chose not to avail itself of these options.

22      Additional expert designations and supplemental reports are particularly
23 unwarranted on the bad faith claim because, as explained above, the Ninth Circuit held that
24 there are "triable issues of fact" as to Atlantic's bad faith denial of Plaintiffs' request for
25 coverage, *id.*, and that holding is law of the case, *see Alexander*, 106 F.3d at 876.
26 Therefore, additional expert work as to bad faith is especially unwarranted.

27      Defendant should not be allowed to rewrite its expert reports or submit new expert
28 reports to address issues that Plaintiffs raised well before this case went on appeal.  To do

6970699v1/015825

so would be prejudicial to Universal and unnecessarily delay the resolution of this case. The time for rebuttal expert disclosures and reports passed before this Court's summary judgment order and likewise before Plaintiffs' appeal of that order.

*Proposed Schedule*.  Plaintiffs propose the following supplemental briefing schedule to address any impact of the Ninth Circuit's ruling on prior briefing, Defendant's waiver of its arguments as to Exclusion 4, and any evidence that was not yet available when the parties previously cross-moved for summary judgment:

- Supplemental Briefs in Support of Motions for Summary Judgment due December 6, 2019.  Maximum of five pages.
- Supplemental Reply Briefs in Support of Motions for Summary Judgment due December 20, 2019.  Maximum of three pages.
- Hearing date/time: Monday, January 6, 2020 at 1:30 p.m.

Plaintiffs propose scheduling a Pretrial Conference in February 2020.

## II.   **DEFENDANT'S STATEMENT**

### A.   *Background*

Plaintiffs seek insurance coverage for "extra expenses" incurred to move the filming of a television show out of Israel to New Mexico and Croatia. But, the impetus for the move was the prolonged and deadly fighting between Israelis and Palestinians, and the policy at issue excludes coverage for loss resulting directly from: 1) war; 2) war-like action; 3) weapons of war; and 4) insurrection, rebellion or revolution (the "Four Exclusions").[1] John Kerry, Hilary Clinton, and even Plaintiffs' affiliate, NBC, as well as just about everyone in the world except for Plaintiffs, recognized that the extended conflict, which lasted for fifty days and involved battles using fighter jets, tanks, numerous types of missiles and rockets, military drones, gunboats, and a ground invasion, was a war. In a well-reasoned opinion, this Court agreed with Defendant that Plaintiffs' losses were not covered because the conflict was indeed a war, or at least warlike action. Unpredictably,

---

[1] Contrary to Plaintiffs' contention, Defendant denied coverage from the beginning on the basis of all four exclusions, not just the first two.

the Ninth Circuit disagreed, and applied a so-called industry standard even though there is no evidence in the record that: 1) Defendant had actual or constructive knowledge of any such industry standard at the time the policy was issued to Plaintiffs; and 2) Plaintiffs are not in the insurance industry—both requirements the Ninth Circuit held were required for imposition of such a standard.

Nevertheless, summary judgment remains appropriate for Defendant because one or both of the remaining two exclusions, weapons of war and insurrection/rebellion/revolution, apply. Further, as this Court previously ruled, even if Defendant incorrectly denied coverage on the basis of the war and warlike exclusions, there was, at the very least, a reasonable argument that "the Claim fell within the first and second War Exclusions." And, Defendant also had a reasonable basis to deny coverage on the remaining two exclusions, thereby precluding coverage and "bad faith" liability, as a matter of law.

At the time the parties filed cross-motions for summary judgment in May 2017, Defendant believed, based upon California law and the summary judgment record, that the plain and ordinary meaning of the Four Exclusions should be applied.  And, based upon this Court's decision granting Defendant's motion, it is clear this Court agreed with Defendant's construction of California law.  Plaintiffs have not, and cannot, establish the two requirements the Ninth Circuit ruled "cabin" the issue of customary usage.[2]  As such, the plain and ordinary meaning of the remaining two exclusions governs.  But, if this Court intends to entertain evidence of a so-called customary meaning on the remaining two exclusions, Defendant requests leave to augment or designate additional experts, if necessary, to further demonstrate there is no applicable industry standard or special

---

[2] The Ninth Circuit held that a party asking the court to apply customary usage must be "engaged in the insurance trade," which Plaintiffs are not, and that if any party is not, "the party offering customary usage must show the parties had actual or constructive notice of the customary usage," which there is no evidence of in the summary judgment record.  *Universal Cable Productions v. Atlantic Specialty Insurance Co.*, 929 F. 3d 1143, 1153-1154 (9th Cir. 2019).

6970699v1/015825

meaning, so that Defendant is not prejudiced by the Ninth Circuit's ruling, which is diametrically opposed to the law in California and the standard correctly applied by this Court.

**B.      *Statement of Legal and Factual Issues***

      **1.      <u>Legal Issues to be Decided</u>**

1.      Whether there is coverage under the policy for Plaintiffs' alleged losses.

2.      The amount of any loss, if any, incurred by the Plaintiffs that is covered by the policy.

3.      Whether Defendant acted in "bad faith" by denying the Plaintiffs' claims.

4.      Whether the "Insurrection/Rebellion" exclusion applies to exclude coverage for Plaintiffs' loss:

Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

The Ninth Circuit specially remanded this issue to the district court for decision. *Id.* at 1162.

5.      Whether the "Weapons of War" exclusion applies to exclude coverage for Plaintiffs' loss:

Any weapon of war included atomic fission or radioactive force, whether in time of peace or war.

The Ninth Circuit specifically indicated that it left this issue to the district court to determine whether it is "a live issue and, if so, to decide its applicability in the first instance." *Id.*, n. 9.

6.      Whether Plaintiffs have judicially admitted the facts necessary to apply the Insurrection/Rebellion Exclusion.

JOINT STATUS REPORT

6970699v1/015825

7.   Whether Plaintiffs have judicially admitted that Hamas rejects the very right of Israel to exist.

8.   Whether Plaintiffs have judicially admitted that Hamas' stated intent, as expressed in its Founding Charter, published in 1988, is to destroy Israel, establish a separate Islamic fundamentalist Palestinian state, and raise "the banner of Allah over every inch of Palestine."

9.   Whether Defendant's objections to Plaintiffs' summary judgment evidence, including, but not limited to, the Affidavit and any other testimony of Ty Sagalow, should be granted.

**2.   Fact Issues to be Decided[3]**

1.   Whether Plaintiffs' incurred a loss as a direct result of an event covered by the policy.

2.   Whether a special meaning has been given to the Insurrection/Rebellion Exclusion.

3.   Whether a special meaning has been given to the Weapons of War Exclusion.

4.   Whether Plaintiffs are engaged in the insurance trade.

5.   Whether Plaintiffs or Defendant had "actual or constructive notice" of any so-called customary usage pertaining to the Insurrection/Rebellion Exclusion.

6.   Whether Plaintiffs or Defendant had "actual or constructive notice" of any so-called customary usage pertaining to the Weapons of War Exclusion.

---

[3] This Court's Order dated October 3, 2019, required the parties to apprise the Court of the "factual and legal issues" that have been remanded, and thus Defendant includes this statement of fact issues in this Joint Status Report.

JOINT STATUS REPORT

6970699v1/015825

7.   Whether either Plaintiffs or Defendant knew of or had reason to know of any purported customary usage concerning the Insurrection/Rebellion Exclusion.

8.   Whether either Plaintiffs or Defendant knew of or had reason to know of any purported customary usage concerning the Weapons of War Exclusion.

9.   Whether the Plaintiffs had reason to know that the meaning attached to the Insurrection/Rebellion Exclusion by Defendant was inconsistent with any purported customary usage.

10.   Whether the Plaintiffs had reason to know that the meaning attached to the Weapons of War Exclusion by Defendant was inconsistent with any purported customary usage.

11.   Whether Defendant had reason to know that the meaning attached to the Insurrection/Rebellion Exclusion by Plaintiffs was inconsistent with the purported customary usage.

12.   Whether Defendant had reason to know that the meaning attached to the Weapons of War Exclusion by Plaintiffs was inconsistent with the purported customary usage.

13.   Whether Plaintiffs are sophisticated parties that frequently engage in business related to the insurance trade.

14.   Whether Plaintiffs intended any purported special meaning should be applied to the Insurrection/Rebellion Exclusion.

15.   Whether Plaintiffs intended any purported special meaning should be applied to the Weapons of War Exclusion.

16.   Whether Defendant intended that any purported special meaning apply to the Insurrection/Rebellion Exclusion.

17.   Whether Defendant intended that any purported special meaning apply to the Weapons of War Exclusion.

JOINT STATUS REPORT

18. Whether the actions by Hamas during the relevant time period constitute an insurrection, rebellion, revolution, usurped power, or action taken by a governmental authority in hindering or defending against any such actions.

19. Whether the actions of Israel during the relevant time period constitute action by a government authority in hindering or defending against an insurrection, rebellion, revolution, or usurped power.

20. The identity of the weapons used by Hamas during the relevant time period.

21. Whether the weapons used by Hamas constitute weapons of war.

22. Whether Hamas is committed to the destruction of Israel.

23. Whether Hamas is committed to the establishment of an Islamic state in all of historic Palestine, comprised of Israel, the West Bank, and Gaza.

24. Whether Plaintiffs failed to take all reasonable steps to minimize their loss, or to keep a record of their expenses in doing so.

25. Whether, and to what extent, other valid insurance is available which is applicable to Plaintiffs' loss.

26. Whether Plaintiffs had knowledge of any matter, fact or circumstance, actual or threatened, that increased or could have increased the possibility of a loss under the Policy.

27. Whether, and to what extent, the Plaintiffs' could have reasonably foreseen the losses they incurred, to the extent such losses were not fortuitous, to the extent such losses were known or expected, to the extent such losses were substantially certain to follow, and to the extent such losses were not, to a substantial extent, beyond the control of Plaintiffs'.

JOINT STATUS REPORT

6970699v1/015825

28. Whether, and to what extent, Plaintiffs' could have reasonably foreseen the losses they incurred, to the extent such losses were not fortuitous, to the extent such losses were known or expected, to the extent such losses were substantially certain to follow, and to the extent such losses were not, to a substantial extent, beyond the control of Plaintiffs.

29. Whether Plaintiffs loss arose out of a concern or fear of an occurrence which may affect the commencement of the continuation of the Insured Production, except the action of a civil authority that prevents access to, exit from (ingress or egress) or closes down the location and or facilities due to condition that threaten the safety of case, crew or property.

30. Whether, and to what extent, Plaintiffs' loss is caused by, results directly from, or arises out of an imminent peril or physical damage to property, facilities or locations necessary to the insured production.

31. Whether, and to what extent, Plaintiffs' loss was caused by, resulted from, or arose out of a concern or belief that the commandment or continuation of the Insured Production was inappropriate.

32. Whether, and to what extent, Plaintiffs' loss was caused by, resulted from or arose out of a consequential loss.

33. Whether Defendant acted reasonably in denying the Plaintiffs' claims.

34. Whether Defendant acted reasonably, or with proper cause, in denying the Plaintiffs' claims on the basis of the War Exclusion.

35. Whether Defendant acted reasonably, or with proper cause, in denying the Plaintiffs' claims on the basis of the Warlike Action Exclusion.

36. Whether Defendant acted reasonably, or with proper cause, in denying the Plaintiffs' claims on the basis of the Insurrection/Rebellion Exclusion.

JOINT STATUS REPORT

6970699v1/015825

37. Whether Defendant acted reasonably, or with proper cause, in denying the Plaintiffs' claims on the basis of the Weapons of War Exclusion.

38. All facts necessary to determine whether the Insurrection/Rebellion Exclusion applies.

39. All facts necessary to determine whether the Weapons of War Exclusion applies.

40. All facts necessary to determine whether Defendant acted in bad faith as alleged by Plaintiffs.

## C.   *Defendant's Proposed Procedure and Schedule*

### 1.   <u>Defendant's Proposed Additional Discovery</u>

The Ninth Circuit's decision recognized that the requirement to apply customary usage "is cabined by a few requirements." *Universal Cable Productions v. Atlantic Specialty Ins.*, 929 F.3d 1143, 1153 (9th Cir. 2019). First, "a party asking a court to apply customary usage would be engaged in the relevant trade—here, the insurance trade." *Id.* at 1153. Second, if "any party is not engaged in the trade, the party offering customary usage must show the parties had actual or constructive notice of the customary usage." *Id.* at 1154. As the Ninth Circuit recognized, Plaintiffs are not in the insurance trade. *Id.* Further, there is no evidence in the summary judgment record that Defendant knew or had reason to know of any so-called customary usage of the war and warlike action exclusions.[4]  More importantly, for current purposes, there is no evidence in the summary judgment record that Defendant knew or had reason to know of any so-called customary usage of the two remaining exclusions. Therefore, it would be improper under the Ninth Circuit's decision, and more importantly California law, to even consider whether there exists any such customary usage, much less apply it here.  Indeed, even the United States Supreme Court has recognized that this country has been at war with terrorist groups far less organized than Hamas. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 594 (2006); *Hamdi v. Rumsfeld*, 542

---

[4] Defendant continues to deny any such customary usage ever existed with respect to any of the Four Exclusions.

U.S. 507, 533 (2004); *see also In re September 11 Litigation*, 751 F. 3d 86, 89 (2d Cir. 2014).  But, as noted above, if this Court is inclined to consider applying a so-called special meaning to the two remaining exclusions, Defendant requests leave to augment or designate additional experts, if necessary, to further demonstrate there is no applicable industry standard or special meaning, so that Defendant is not prejudiced by the Ninth Circuit's ruling.

Plaintiffs' opposition to this request is not well-founded.  While Defendant agrees that the Ninth Circuit has no authority to modify California law, the Ninth Circuit's decision went well beyond existing California law.  Moreover, while the decision recognized two requirements for imposing customary meaning, it ignored the fact that Plaintiffs failed to prove those requirements.

## 2. <u>Additional Summary Judgment Briefing</u>

Defendant agrees that supplemental summary judgment briefing is appropriate. But, Defendant opposes any briefing on Plaintiffs' so-called "waiver" argument pertaining to Exclusion 4, because this issue was not previously raised in any pleading or briefing by Plaintiffs, and as such it would prejudice Defendant as no discovery was conducted on this issue, and it was not raised by the Ninth Circuit, as Plaintiffs suggest. Defendant also opposes Plaintiffs supplementing the record with the May 9, 2017, deposition of Pamela Johnson or the May 19, 2017, deposition of Peter Williams. As justification, Plaintiffs claim these two depositions were not scheduled by the parties until after summary judgment briefing was submitted.  But, Plaintiffs had a full twelve months to conduct discovery ahead of the May 12, 2017, discovery deadline.  Further, there is nothing in the Ninth Circuit's opinion justifying submission of additional deposition testimony after the dipositive motions deadline.  Were this Court to permit the submission of such untimely testimony, Defendant would be prejudiced unless it was permitted to similarly supplement the summary judgment record.  In short, there is no basis now to allow such untimely evidence. Plaintiffs' position that they did not have an opportunity to supplement the record before the appeal was taken because this Court did not rule on the third war exclusion is

6970699v1/015825

simply wrong and nonsensical. Both the third and fourth war exclusions were before this Court by way of summary judgment. Had Plaintiffs wanted to submit any further deposition testimony, then those depositions should have been taken prior to the summary judgment deadline.

Finally, contrary to Plaintiffs' position, the Ninth Circuit's ruling specifically left the question of bad faith open for this Court to decide in connection with the two remaining exclusions, and there is nothing precluding the Court from deciding the issue of bad faith in the context of all four exclusions as well as the other existing summary judgment evidence. The diametrically opposed analysis of this Court and the Ninth Circuit illustrate that this case presents significant and complex questions of law and fact, compelling the conclusion that Defendant did not act in "bad faith" as a matter of law. Thus, the issue of bad faith should be resolved on summary judgment, contrary to Plaintiff's assertion that there are fact issues "ready for trial."  Moreover, this Court went to great lengths to prudently analyze the core issues regarding the first two "war exclusions."  The remaining two exclusions warrant this same careful analysis and, to the extent the Ninth Circuit's opinion alters the legal framework through which this Court may decide the remaining issues, Defendant requests an opportunity to potentially augment certain evidence, as set forth herein.

### D.   *Atlantic's Proposal Concerning a Procedure and Schedule for Resolving Legal and Factual Issues*

1.   Defendant proposes that, in light of the Ninth Circuit's opinion modifying and/or clarifying the law in California at the time the district court granted Defendant's Motion for Summary Judgment, the parties be allowed ninety days to supplement expert reports and  designate additional expert witnesses concerning the above legal issues, including Plaintiffs' "bad faith" allegations and whether there is any customary or special meaning or usage concerning the Insurrection/Rebellion and

6970699v1/015825

the Weapons of War Exclusions. Defendant proposes that the parties then have thirty days to designate rebuttal experts.

2.     Defendant proposes the parties have thirty days following the designation of experts to depose such experts.

3.     Defendant proposes the parties have thirty days after the deadline to depose expert witnesses to supplement the previously filed motions for summary judgment to address (a) the Insurrection/Rebellion and the Weapons of War Exclusions, and (b) the issue of bad faith, but not permit any argument on waiver or the addition of the depositions of Pamela Johnson or Peter Williams.  Defendant further proposes that the party opposing such motions shall have twenty days to respond thereto, and that reply briefs shall be submitted within fifteen days.

The remaining issues in this case can be decided by summary judgment. Therefore, any trial, including trial submissions and a pretrial conference, should be set, if at all, at a time to allow this Court to rule upon the remaining legal issues by summary judgment.

DATED:     November 15, 2019          SUSMAN GODFREY L.L.P.

*/s/ Kalpana Srinivasan*

KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JOINT STATUS REPORT

6970699v1/015825

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*


*/s/ Michael Keeley*
MARC J. SHRAKE
FREEMAN MATHIS & GARY, LLP
550 South Hope Street, Suite 2200
Los Angeles, CA 90071-2631
Tel: (213) 615-7039
-and-
MICHAEL KEELEY (*pro hac vice*)
JOHN R. RIDDLE (*pro hac vice*)
TONI SCOTT REED (*pro hac vice*)
CLARK HILL STRASBURGER PLC
901 Main Street
Suite 6000
Dallas, TX 75202
Tel: (214) 651-4718

*Attorneys for Defendant*


## Attestation Regarding Signatures

I, Kalpana Srinivasan, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By: */s/ Kalpana Srinivasan*

JOINT STATUS REPORT

6970699v1/015825

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I certify that on November 15, 2019, I filed the foregoing with the Clerk of the United States District Court for the Central District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

By: */s/ Kalpana Srinivasan*

6970699v1/015825