UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-04435 PA (MRWx) | Date | November 30, 2019 |
|---|---|---|---|
| Title | Universal Cable Productions LLC, et al. v. Atlantic Speciality Insurance Co. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**    IN CHAMBERS

The Court has received the parties' Joint Status Report. (Dkt. No. 141.)  The Court denies defendant Atlantic Insurance Company's ("Atlantic") request for additional discovery.  Discovery closed when this Court issued its Order on the parties' Motions for Summary Judgment on June 2, 2017, at which point the Court had already extended the discovery deadline in this case by 60 days.  (See Dkt. No. 42 (extending discovery cutoff by 60 days to June 2, 2017).)  Both sides have had ample time to conduct discovery, and nothing in the Ninth Circuit's Opinion justifies the need for additional discovery.

The Court finds that War Exclusions 3 and 4 do not apply to exclude coverage for plaintiffs Universal Cable Productions LLC and Northern Entertainment Productions LLC's (collectively "Universal") under the insurance policy issued by Atlantic.  As the Ninth Circuit held, "[u]nder California law, the terms in an insurance policy are 'understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or *unless a special meaning is given to them by usage, in which case the latter must be followed*." Universal Cable Productions, LLC v. Atlantic Speciality Insurance Co., 929 F.3d 1143, 1153 (9th Cir. 2019) (emphasis in original) (citing Cal. Civ. Code § 1644).  The Ninth Circuit held this Court should apply the "special meaning of the terms [of the war exclusions as used in] the insurance context." Id.

Both Exclusion 3 and Exclusion 4 are "War Exclusions," and therefore must incorporate the specialized definition for "war."  As the Circuit found "the insurance industry has a customary usage that limits exclusions for 'war' to hostilities between de jure or de facto sovereigns." Universal Cable Productions, LLC, 929 F.3d at 1156.  "Hamas does not constitute a de jure or de facto sovereign," and therefore, "Hamas' conduct in the summer of 2014 cannot be defined as a 'war' for purposes of interpreting this policy." Id. at 1159, 1162.  Because the Ninth Circuit has said there was no war, the "War Exclusions" cannot apply to exclude coverage for Universal's loss.

In addition, Exclusion 3 applies to exclude coverage for Universal's loss due to "[i]nsurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against these."  (Dkt. No. 61-8, Exh. 2 at 17 (policy attached to Declaration of Andrea Garber in Support of Plaintiffs' Motion for Partial Summary Judgment ("Insurance Policy")).)

For insurance purposes, Exclusion 3 applies to "'(1) a violent uprising by a group or movement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-04435 PA (MRWx) | Date | November 30, 2019 |
|---|---|---|---|
| Title | Universal Cable Productions LLC, et al. v. Atlantic Speciality Insurance Co. | | |

(2) acting for the specific purpose of overthrowing the constituted government and seizing its powers.'" Holiday Inns Inc. v. Aetna Ins. Co., 571 F. Supp. 1460, 1487 (S.D.N.Y. 1983) (citing Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co., 505 F.2d 989, 1017 (2d Cir. 1974)).  Thus, in order for Exclusion 3 to apply, Atlantic must demonstrate Hamas had the intent to "overthrow the established government [of Israel] and assume at least *de facto* governmental control;" or (2) Hamas is part of a larger "group or movement" that has a cohesive purpose to overthrow the established government of Israel.  Id. at 1487-88.  Atlantic cannot show either.

     First, Atlantic cannot show that Hamas' purpose was to seize control of Israel's government.  Hamas does not seek to take over the Israeli government.  Rather, Hamas rejects the very right of Israel to exist in the first place.  Hamas' stated intent, as expressed in its founding charter published in 1988, is to destroy Israel, establish a separate Islamic fundamentalist Palestinian state, and raise "the banner of Allah over every inch of Palestine."  (Docket No. 61-1); see also Universal Cable Productions, 929 F.3d at 1148 (citing 2015 CRS Palestine Report at 33) ("Hamas is committed 'to the destruction of Israel and the establishment of an Islamic State in all of historic Palestine, comprised of present-day Israel, the West Bank, and Gaza.'"); Holiday Inns Inc., 571 F. Supp. at 1477-78 (citing various factions' stated aims as proof of intent, and finding "no faction in this 'hotel district' fighting can be identified as 'acting for the specific purpose of overthrowing the constituted government and seizing its powers.'  The Phalangists and other right-wing groups cannot be so regarded.  Their purpose was to preserve a status quo which favored their interest.").  The purpose of Hamas' attacks in July 2014 was not to unseat the Prime Minister of Israel or to take over Israeli Knesset, but rather to (1) retaliate for the Israeli allegations that Hamas was responsible for the kidnaping and murder of the three Israeli teens earlier in the summer, and (2) terrorize, injure, and kill Israel's civilian population.

     Second, Atlantic cannot establish that Hamas is part of a larger group that seeks to overthrow the Israeli government.  Hamas is part of: (1) the larger Muslim brotherhood movement, whose goal is to have all Muslims governed exclusively by Sharia law and live under the banner of Allah; and (2) the overarching Palestinian Authority, who recognize the State of Israel and thus does not seek to overthrow the government of Israel.  Hamas is therefore one of several different Palestinian factions that fundamentally disagree about how to achieve their objective to establish a state of Palestine.  This is similar to the situation in Holiday Inns Inc., where multiple groups were involved in the conflict that caused damage to the hotel.  571 F. Supp. 1489-90.  Because the various groups "would often be sharply at odds with one another . . . on the larger question of the part Lebanon should play in the modern world," the court found that there was no cohesive purpose among the groups to overthrow the government of Lebanon, and therefore that the "insurrection" exclusion did not apply.  Id.

     Exclusion 4 applies to exclude coverage for Universal's loss due to "[a]ny weapon of war including atomic fission or radioactive force, whether in time of peace or war."  (Insurance Policy.)  Because Exclusion 4 applies to "weapons of war," it again must incorporate the specialized definition of "war" as interpreted by the Ninth Circuit.  Because there was no war, Hamas cannot be said to have used "weapons of war."  Instead, Hamas used weapons of terror.  Id.  ("[B]ecause we hold that Hamas does not constitute a de jure or a de facto sovereign, the policy covers Hamas' hostilities as acts of terrorism

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-04435 PA (MRWx) | Date | November 30, 2019 |
|---|---|---|---|
| Title | Universal Cable Productions LLC, et al. v. Atlantic Speciality Insurance Co. | | |

creating imminent peril.").[1]

     Because the Court finds that War Exclusions 3 and 4 do not apply to preclude coverage, the Court denies the parties' requests for supplemental briefing on whether War Exclusions 3 and 4 preclude coverage as moot.

     Finally, the Court finds that the issues of damages and Atlantic's bad faith are ready for trial, and denies Defendant's request for another round of summary judgment motions as to bad faith. See Universal Cable Productions, LLC, 929 F.3d at 1162 ("triable issues of fact remain with regard to Universal's claim that Atlantic acted in bad faith in denying its claim").  Bad faith has been part of Universal's claim since the beginning, and Atlantic could have briefed this issue during the first round of summary judgment briefing.

     Dates set by the Court in this action are listed in the "Schedule of Trial and Pretrial Dates" attached to this order.  The dates set by the Court are firm dates.  Absent extraordinary circumstances, which must satisfy the requirements of Federal Rule of Civil Procedure 16(b) and be brought to the Court's attention in a timely manner, the Court will not modify these dates.

     The parties estimated in its earlier 26(f) Report that trial will consume between 6 and 8 trial days.  It is the Court's practice to impose limits on the length of civil trials.  Based on the Court's current understanding of the remaining issues in this action, the parties are highly unlikely to have as much time to try this case as they appear to anticipate.

     Pursuant to the agreement of the parties, the Court again refers the parties to private mediation. (Dkt. No. 24.)  The parties have fourteen (14) days to select a mediator who has no conflicts and is otherwise available to act as the settlement officer in this matter.  If the parties are unable to agree on a mediator, each side shall submit to the Court the name of a mediator who agrees to act as the settlement officer.  The Court will then randomly select the settlement officer.

     IT IS SO ORDERED.

---

[1]     The Court also notes that at his deposition, Peter Williams, a Claims Manager for OneBeacon Entertainment who was "in charge of overseeing the claims made by the policies issued by OneBeacon" stated Exclusion 4 did not apply to exclude coverage for Universal's loss because Exclusion 4 mean that "there had to be some kind of nuclear involvement."  (See Dkt. No. 61, Exh. 43, Dep. Tr. of P. Williams, 252:10-23 ("Q: So in your view, Prong 4 means that there had to be some kind of nuclear involvement? A: Well, atomic or radioactive, yes . . . . Q: Okay.  So in your view, as of July 16, you did not believe that Prong 4 applied; is that right? A: Yes.") Universal is bound by these factual statements made during deposition testimony.  Therefore, the Court finds this is an additional reason to hold that Exclusion 4 does not apply to exclude coverage for Universal's loss.

Schedule of Trial and Pretrial Dates

| | |
|---|---|
| **CASE NO.:** | **CV 16-04435** |

| | |
|---|---|
| **PARTIES:** | **Universal Cable Productions LLC, et al.**<br>-v-<br>**Atlantic Specialty Insurance Co.** |
| **COMPLAINT FILED:** | 06/20/16 |

| | |
|---|---|
| **TRIAL TYPE:** | **Jury** |

| | |
|---|---|
| SETTLEMENT CHOICE: | |
| Court/Magistrate | |
| Court's Mediation Panel | |
| Private Dispute Resolution | X |
| Judicial Settlement Panel | |

| DATE | MATTER |
|---|---|
| **02/18/20** | Jury Trial at 9:00 a.m. |
| **02/13/20** | File Final Trial Exhibit Stipulation |
| **02/10/20** | Hearing on Motions in Limine at 1:30 p.m.<br>Hearing on Disputed Jury Instructions at 1:30 p.m. |
| **01/17/20** | Final Pretrial Conference at 1:30 p.m.<br>Motions in Limine to be Filed<br>Proposed Voir Dire Questions & Agreed-to Statement of Case |
| **01/03/20** | Lodge Pretrial Conference Order & Pretrial Exhibit Stipulation<br>File Contentions of Fact & Law<br>Exhibit & Witness Lists<br>File Joint Status Report Regarding Settlement<br>File Agreed Upon Set of Instructions & Verdict Forms<br>File Joint Statement Regarding Disputed Instructions, Verdicts, etc. |
| **12/23/19** | Last Date to Conduct Settlement Conference |