**FREEMAN MATHIS & GARY, LLP**
MARC J. SHRAKE (SBN 219331)
mshrake@mfglaw.com
550 South Hope Street, 22nd Floor
Los Angeles, California  90071-2627
(213) 615-7000; FAX (213) 615-7100

**CLARK HILL PLC**
MICHAEL KEELEY *(Pro Hac Vice)*
michael.keeley@clarkhillstrasburger.com
TONI SCOTT REED *(Pro Hac Vice)*
toni.reed@clarkhillstrasburger.com
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 651-4300; FAX (214) 651-4330

**MARTIN, DISIERE, JEFFERSON
 & WISDOM LLP**
CHRISTOPHER W. MARTIN *(Pro Hac Vice)*
martin@mdjwlaw.com
MELINDA R. BURKE *(Pro Hac Vice)*
burke@mdjwlaw.com
9111 Cypress Waters Blvd., Suite 250
Dallas, Texas 75019
(214) 420-5500; FAX (214) 420-5501

Attorneys for Defendant
**ATLANTIC SPECIALTY
INSURANCE COMPANY**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>vs. | CASE NO. 2:16-cv-04435-PA-MRW<br>*[Hon. Percy Anderson; Ctrm. 9A]*<br><br>**DECLARATION OF MARC J. SHRAKE IN SUPPORT OF ATLANTIC SPECIALTY'S NOTICE OF MOTION AND MOTION FOR LEAVE TO** |

Freeman Mathis
& Gary, LLP
Attorneys at Law

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company, | ) **AMEND COURT'S** |
| | ) **SCHEDULING ORDER TO** |
| | ) **ALLOW SUBSTITUTION OF** |
| | ) **EXPERT WITNESS ON** |
| Defendant. | ) **ACCOUNT OF DEATH OF JAY** |
| | ) **SHAPIRO, CPA** |
| | ) |
| | ) Hearing Date:  January 20, 2020, |
| | ) Pretrial Conference:  January 17, 2020 |
| | ) Time:  1:30 PM PST |
| | ) Place:  Courtroom 9A |
| | ) Judge:  Honorable Percy Anderson |
| | ) Trial Date:  February 18, 2020 |

I, Marc J. Shrake, declare as follows:

1.      I am an attorney authorized to practice before all California courts and before this Court and am a partner with the law firm of Freeman Mathis & Gary, LLP, attorneys for Defendant Atlantic Specialty Insurance Company.

2.      I have personal knowledge of the matters set forth in this Declaration, and if called upon to testify to them, could and would do so.

3.      I make this Declaration in conjunction with, and in support of, "Atlantic Specialty's Notice of Motion and Motion for Leave to Amend Court's Scheduling Order to Allow Substitution of Expert Witness on Account of Death of Jay Shapiro, CPA."

4.      Attached to this Declaration as Exhibit 1 is the Verified Petition of Maria Cecilia Rodrigues in the case styled *In re The Jay Jeffrey Shapiro Revocable Trust*, Case No. 17STPB09609, formerly pending in Superior Court of California, County of Los Angeles, Probate Division, Stanley Mosk Courthouse, Dept. 11

5.      Attached to this Declaration as Exhibit 2 is the Order Granting Release of Funds from The Jay Jeffrey Shapiro Revocable Trust to Petitioner, Maria Cecilia Rodrigues, *In re The Jay Jeffrey Shapiro Revocable Trust*, Case No. 17STPB09609, formerly pending in Superior Court of California, County of Los Angeles, Probate Division, Stanley Mosk Courthouse, Dept. 11.

6.      Mr. Shapiro served as a retained damages expert for ASIC.  He

Freeman Mathis
& Gary, LLP
Attorneys at Law

possessed extensive experience in the areas of accounting, finance, financial consulting, and financial auditing vis-à-vis the entertainment industry. Mr. Shapiro opined that the computation and methodology of Plaintiffs' damages expert was unreliable and subject to criticism. Mr. Shapiro also opined about the maximum amount of possible extra expenses that Plaintiffs may recover, and about additional reductions to such computation that may also apply. Finally, Mr. Shapiro opined in rebuttal to the anticipated testimony regarding Plaintiffs' extra expense claim.

7. ASIC first learned of the reasonable likelihood of the death of Jay Shapiro on or about December 9, 2019, and then confirmed Mr. Shapiro's death on December 11, 2019.

8. Following receipt of the Court's Order on December 4, 2019, ASIC began contacting witnesses to prepare for the February 18, 2020 trial date. ASIC first learned of Mr. Shapiro's death within one week of knowledge of the Court's Order, retained expert Shannon Rusnak, and communicated with opposing counsel.

9. This motion is not filed for the purpose of delay, but so that ASIC may properly contest and rebut Plaintiffs' damages testimony and evidence. Although Shannon Rusnak is still currently independently evaluating the data and relevant testimony, it is anticipated that her opinions will be generally consistent with those of Mr. Shapiro.

DATED: December 23, 2019     MARC J. SHRAKE

By:   */s/ Marc J. Shrake*
        Marc J. Shrake

# EXHIBIT 1

Electronically FILED by Superior Court of California, County of Los Angeles 10/24/2017 10:38 AM Sherri R. Carter, Executive Officer/Clerk, By T. Young, Deputy Clerk

Case 2:16-cv-04435-PA-MRW   Document 167-1   Filed 12/23/19   Page 5 of 104   Page ID
#:12077

Hearing Information: 1/4/2018 8:30 AM
Assigned for all purposes to: Green, Lesley C., Judicial Officer:Stanley Mosk Dept. - 11

AARONSON AND AARONSON
ARTHUR AARONSON, SBN 64988
16133 Ventura Boulevard, Suite 675
Encino, California 91436
Phone:  (818) 783-3858
Fax:  (818) 783-3825


Attorneys for Petitioner,
MARIA CECILIA RODRIGUES


SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| In the Matter of | ) Case No. |
|---|---|
| THE JAY JEFFREY SHAPIRO REVOCABLE TRUST | ) ) PETITION TO COMPEL TRUSTEE TO ) DISTRIBUTE PECUNIARY GIFT ) ) Hearing Date: ) Time: ) Place: ) ) |

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

Petitioner, Maria Cecilia Rodrigues, alleges:

1.    Petitioner is a beneficiary of a living trust created by Jay Jeffrey Shapiro ("Jay") called the Jay Jeffrey Shapiro Revocable Trust ("the Trust"), a true and correct copy of which Trust is attached hereto as Exhibit "1".

2.    Jay Shapiro died on July 6, 2017.

3.    The principal place of administration of the Trust is Los Angeles County, State of California.

4.    The successor Trustee of the Trust is Brian G. Shapiro ("the Trustee").

- 1 -

PETITION TO COMPEL TRUSTEE TO DISTRIBUTE PECUNIARY GIFT

AARONSON AND AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

1    5.    Article Five of the Trust governs the distribution of

2   the Trust upon Jay's death and in particular, Paragraph 5.2

3   thereof directs the Trustee as follows:

4        "5.2   Specific Cash Bequests

5
6   5.2.1  On the death of JAY, or as soon thereafter as

7   possible, the Successor Trustee shall distribute the following

8   monetary bequests:

9        5.2.1.1   $200,000.00 to the AMERICAN SOCIETY FOR THE

10  PREVENTION OF CRUELTY TO ANIMALS (ASPCA), 424 E. 92nd Street, New

11  York, N.Y. 10128, to be used for prevention of feline abuse

12  program;

13       5.2.1.2   $200,000.00 to CITY OF HOPE National Medical

14  Center, Duarte, California, for the General Purpose Fund;

15
16       5.2.1.3   $200,000.00 to the UNIVERSITY OF CALIFORNIA DAVIS,

17  School of Veterinary Medicine, Davis, CA 95616, to be used for

18  feline research;

19       5.2.1.4   $200,000.00 to the AMERICAN HEART ASSOCIATION,

20  7272 Greenville Avenue, Dallas, TX 75231;

21       5.2.1.5   $200,000.00 to THE HUMANE SOCIETY OF THE UNITED

22  STATES, 1255 23rd Street, N.W., Suite 450, Washington, DC 20037,

23  for the Sparrow Fund;

24
25       5.2.1.6   $25,000.00 to JAY's friend, REBECCA M. FERRATTI

26  ("REBECCA").  If REBECCA M. FERRATTI predeceases or fails to

27  survive JAY, then this bequest shall lapse and be added to the

28  residue of the Trust;

-2-

1    5.2.1.7   $50,000.00 to JAY's friend, MARIA C. RODRIGUES

2    ("MARIA"). If MARIA predeceases or fails to survive JAY, then

3    this bequest shall lapse and be added to the residue of the

4    Trust;"

5

6    6.   Paragraph 5.4 of the Trust provides as follows:

7    "5.4   Liquidation of Trust Remainder

8    The Successor Trustee shall, after paying JAY'S debts

9    outstanding at the time of death as set forth in ARTICLE FIVE,

10   Paragraph 5.1, and after making the specific bequests as set

11   forth in Paragraph 5.2, liquidate the rest, residue and remainder

12   of the Trust Estate."

13   7.   Petitioner has requested that the Trustee distribute

14   the $50,000 bequest to her, but the Trustee has refused to do so,

15   claiming that he will make any distributions until Jay's house is

16   sold. The Trustee has also initiated and is vigorously pursuing

17   litigation against Petitioner in order to prevent her from

18   receiving the bequest to her under the Trust and contends that he

19   has the right to offset the "damages" he claims in the Amended

20   Complaint attached hereto as Exhibit "2" against the bequest.

21   The sole purpose of the litigation is to avoid the bequest to

22   Petitioner contrary to the intent of the Trustor and to frustrate

23   the purpose and intent of paragraph 5.2.1.7 of the Trust.

24   8.   Despite the fact that three months have elapsed since

25   Jay's death, the Trustee has failed and refused to make the

26   pecuniary distribution to Petitioner, claiming that he has the

AARONSON AND AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

AARONSON AND AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

1  authority to distribute after he sells Jay's house and has the

2  right to offset his spurious claim against Petitioner against the

3  bequest from Jay to Petitioner.

4      9.    Petitioner is informed and believes, and upon such

5  information and belief alleges that the following are the names

6

7  and addresses of the beneficiaries and trustees of the Trust:

8  AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS

9  (ASPCA), 424 E. 92nd Street, New York, N.Y. 10128;

10  CITY OF HOPE National Medical Center, 1500 E. Duarte Road,

11  Duarte, California 91010;

12  UNIVERSITY OF CALIFORNIA DAVIS, School of Veterinary Medicine,

13  One Shields Avenue, Davis, CA 95616;

14  AMERICAN HEART ASSOCIATION, 7272 Greenville Avenue, Dallas, TX

15  75231;

16

17  THE HUMANE SOCIETY OF THE UNITED STATES, 1255 23rd Street, N.W.,

18  Suite 450, Washington, DC 20037;

19  REBECCA M. FERRATTI, 531A North Hollywood Way, Unit 122, Burbank,

20  CA 91505

21  MARIA C. RODRIGUES, co/ Arthur Aaronson, 16133 Ventura Blvd.,

22  Suite 675, Encino, CA 91436

23

24  JONATHAN RALPH SHAPRIO, 17606 Embassy Drive, Encino, CA 91316

25  RANDALL LANCE SHAPIRO, 59 Carmelita Avenue, Mill Valley, CA

26  94941-2047

27  DR. SAMANTHA COYLEEN SHAPIRO, 17606 Embassy Drive, Encino, CA

28  91316

-4-

1  CLAUDIA RACHELLE SHAPIRO, 59 Carmelita Avenue, Mill Valley, CA

2  94941-2047

3  ANDREW SHAPIRO, 59 Carmelita Avenue, Mill Valley, CA 94941-2047

4  BRIAN SHAPIRO, 17606 Embassy Drive, Encino, CA 91316

5

6      WHEREFORE, Petitioner requests the Court to:

7  1.   Order the Trustee to distribute the sum of $50,000 to

8  Petitioner.

9  2.   The Court to make such further Orders as it may deem proper.

10 Dated:  October 23, 2017

11

12                              AARONSON & AARONSON

13

14                              By:

15                              Arthur Aaronson,
                                Attorneys for Petitioner,
16                              Maria Cecilia Rodrigues

17

18

19

20

21

22

23

24

25

26

27

28

AARONSON AND AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

PETITION TO COMPEL TRUSTEE TO DISTRIBUTE PECUNIARY GIFT

I, MARIA CECILIA RODRIGUES, am the Petitioner in PETITION TO COMPEL TRUSTEES TO DISTRIBUTE PECUNIARY GIFTS and know the contents thereof; that the same is true of my own knowledge, except as to those matters which are therein stated on information or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct this 20th day of October, 2017.

MARIA CECILIA RODRIGUES

- 1 -

PETITION TO COMPEL TRUSTEES TO DISTRIBUTE PECUNIARY GIFTS

# EXHIBIT 1

# AMENDED DECLARATION OF TRUST

# OF THE

# JAY JEFFERY SHAPIRO REVOCABLE TRUST

## JAY JEFFERY SHAPIRO, SETTLOR

## JAY JEFFERY SHAPIRO, TRUSTEE

## DATED: FEBRUARY 28, 1997
## AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

## TABLE OF CONTENTS

**Page No.**

R E C I T A L S ........................................................ 1

ARTICLE ONE: CREATION ............................................ 2
    1.1    JAY is Initial Trustee .............................................. 2
    1.2    Name of Trust ................................................... 2
    1.3    Recitals ....................................................... 2
    1.4    Successor Trustee ............................................... 3
    1.5    Purpose and Intent .............................................. 3

ARTICLE TWO: TRUST ESTATE ....................................... 3
    2.1    Trust Estate .................................................... 3
    2.2    Assets Held Outside Trust ........................................ 4

ARTICLE THREE: PAYMENTS DURING JAY'S LIFETIME ................... 4
    3.1    Payment of Income .............................................. 4
    3.2    Payment of Principal ............................................. 4
    3.3    Withdrawal at Request of JAY ..................................... 5
    3.4    Payment To/For Others ........................................... 5
    3.5    Powers Personal to JAY .......................................... 5

ARTICLE FOUR: INCAPACITY OF JAY ................................... 5
    4.1    Incapacity Defined .............................................. 5
    4.2    Effect of Restored Capacity on Power ............................... 6
    4.3    Partial Waiver of Doctor-Patient Privilege ........................... 6
    4.4    Payment of Income to/for JAY During Incapacity ..................... 7
    4.5    Payment of Principal to/for JAY During Incapacity ................... 7
    4.6    Care of JAY's Pets During Incapacity ............................... 8
    4.7    Agent Under Advance Health Care Directive .......................... 9

ARTICLE FIVE: PAYMENTS/DISTRIBUTION UPON DEATH OF JAY ............ 9
    5.1    JAY's Expenses/Debts/Taxes ...................................... 9
    5.2    Specific Cash Bequests .......................................... 10
    5.3    Distribution for Pet Care ......................................... 11
    5.4    Liquidation of Trust Remainder .................................... 12
    5.5    Division and Distribution of Trust Remainder ........................ 12
    5.6    Ultimate Distribution of Any Remainder ............................. 13
    5.7    Termination When Share is Small ................................... 14
    5.8    No Provision for Omitted Heirs .................................... 14

ARTICLE SIX: REVOCATION AND AMENDMENT ......................... 14
    6.1    Revocation During JAY'S Lifetime ................................. 14

## TABLE OF CONTENTS

**Page No.**

| | | |
|---|---|---|
| 6.2 | Amendment During JAY's Lifetime | 14 |
| 6.3 | Revocation/Amendment Upon Incapacity/Death of JAY | 14 |
| 6.4 | Power to Revoke/Amend Personal to JAY | 15 |
| 6.5 | Trustee's Power to Retain Assets on Revocation | 15 |
| 6.6 | Trustee's Consent to Amendments | 15 |

ARTICLE SEVEN: COURT JURISDICTION .......................................... 16

ARTICLE EIGHT: TRUSTEE'S POWERS .......................................... 16
| | | |
|---|---|---|
| 8.1 | Broad Investment Power Under Prudent Investor Rule | 16 |
| 8.2 | Power to Employ Agents/Compensate Agents | 18 |
| 8.3 | Authority to Pay Health Care/Property Agent | 18 |
| 8.4 | Power to Employ Investment Counsel | 19 |
| 8.5 | Trustee Need Not Review Investments | 19 |
| 8.6 | Power to Retain Property | 19 |
| 8.7 | Power to Lease Property | 19 |
| 8.8 | Power to Retain or Purchase Unproductive Property | 20 |
| 8.9 | Power To Sell, Exchange, Repair With Notice | 20 |
| 8.10 | Transfer of Personal Property to Beneficiaries | 21 |
| 8.11 | Power to Monitor and Inspect Property | 21 |
| 8.12 | Power to Refuse Contaminated Property | 21 |
| 8.13 | Power to Prevent/Remedy Contamination | 22 |
| 8.14 | Abandonment of Property | 22 |
| 8.15 | Power to Purchase Bonds at Premium | 22 |
| 8.16 | Power to Purchase Bonds at Discount | 22 |
| 8.17 | Power to Manage Securities | 22 |
| 8.18 | Power to Hold Securities in Nominee's Name | 23 |
| 8.19 | Business Interests | 23 |
| 8.20 | Power to Lend | 25 |
| 8.21 | Power to Loan, Sell or Buy from Trust Personally | 26 |
| 8.22 | Power to Borrow | 26 |
| 8.23 | Power to Purchase from Probate Estate | 26 |
| 8.24 | Power to Adjust for Tax Consequences | 26 |
| 8.25 | Equitable Proration of Taxes | 27 |
| 8.26 | Power to Initiate/Defend Litigation and To Compromise | 28 |
| 8.27 | Power to Insure | 28 |
| 8.28 | Broad Powers of Distribution | 28 |
| 8.29 | Power to Withhold Payment if Conflicting Claims | 29 |
| 8.30 | Release of Powers | 29 |
| 8.31 | Deferral of Distribution of Trust Assets | 29 |

**TABLE OF CONTENTS**

ARTICLE NINE: PRINCIPAL AND INCOME .................................... 30

ARTICLE TEN : PROVISIONS REGARDING TRUSTEE(S) ......................... 30
    10.1   Trustee May Resign ............................................... 30
    10.2   Successor Trustee's Powers and Duties ............................... 30
    10.3   Trustee is Replaced in Emergency ................................... 31
    10.4   Trustee's Bond ................................................... 31
    10.5   Trustee's Acts ................................................... 32
    10.6   Successor Trustee's Liability ........................................ 32
    10.7   Accounting by Trustee ............................................. 32
    10.8   Successor Trustee's Compensation ................................... 34
    10.9   Reimbursement of Expenses ........................................ 35

ARTICLE ELEVEN: ADMINISTRATIVE PROVISIONS ........................... 36
    11.1   Powers Personal to JAY ........................................... 36
    11.2   Additions to Trust Authorized ...................................... 36
    11.3   All Beneficiaries To Survive JAY by Thirty (30) Days .................... 37
    11.4   Notice to Trustee of Events Affecting Interests ........................ 37
    11.5   Notice Required Under Probate Code §16061.7 ........................ 37
    11.6   Provisions Regarding Trust Distribution .............................. 37
    11.7   Payments to Beneficiary Under Disability ............................. 38
    11.8   Claims of Creditors .............................................. 38
    11.9   Spendthrift Clause ............................................... 38
    11.10  Gender and Number .............................................. 38
    11.11  Headings ....................................................... 38
    11.12  Articles/Paragraphs .............................................. 39
    11.13  Statutes, Codes, and Regulations .................................... 39
    11.14  Internal Revenue Code ............................................ 39
    11.15  "Trust"/"Trust Estate"/ "Trust Assets" ............................... 39
    11.16  "Trustees" and "Successor Trustees" ................................. 39
    11.17  "Shall" and "May" ............................................... 40
    11.18  Charitable Organization ........................................... 40
    11.19  Choice of Law Clause ............................................. 40
    11.20  Severability Clause ............................................... 40
    11.21  Disclaimers .................................................... 40
    11.22  No-Contest Clause ............................................... 41
    11.23  Perpetuities Savings Clause ........................................ 42

ARTICLE TWELVE: EXECUTION ........................................... 43
    12.1   Execution of Declaration .......................................... 43
    13.2   Notarization .................................................... 44

# TABLE OF CONTENTS

Page No.

ATTACHMENT 1 - **RESIGNATION OF TRUSTEE** .............................45

SCHEDULE "A"     TRANSFER OF ASSETS TO THE TRUST
SCHEDULE "B"     NON-TRUST ASSETS

## AMENDED DECLARATION OF TRUST

### OF

## THE JAY JEFFERY SHAPIRO REVOCABLE TRUST

### R E C I T A L S

A. On February 28, 1997, the Settlor and the Trustee executed a Declaration of Trust creating THE JAY JEFFERY SHAPIRO REVOCABLE TRUST ("the Trust").

B. Said Declaration of Trust remains in full force and effect.

C. Pursuant to the provisions of Paragraph "2.3" of ARTICLE II of said Trust, Settlor has reserved the power to amend the Trust.

D. Settlor desires to amend and restate the terms of THE JAY JEFFERY SHAPIRO REVOCABLE Trust, in its entirety as hereinafter provided.

NOW, THEREFORE, the Trust is hereby amended in its entirety to read as follows:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

## ARTICLE ONE: CREATION

1.1     JAY is Initial Trustee

JAY JEFFERY SHAPIRO, (called the Settlor, the Trustee, or "JAY", depending

on the context) declares that he has set aside and holds in trust the property described in Schedule

"A" attached to this instrument.

1.2     Name of Trust

1.2.1   The original trust created may be referred to as THE JAY JEFFERY

SHAPIRO REVOCABLE TRUST, established on February 28, 1997 ("the Trust"). The Trust

may also be referred to as THE JAY JEFFERY SHAPIRO REVOCABLE TRUST, DOT:

2/28/1997.

1.2.2   JAY declares that, as of the date of this trust, he is a citizen of the United

States of America.

1.3     Recitals

1.3.1   JAY resides in the City of Los Angeles, County of Los Angeles, State of

California.

1.3.2   JAY is an unmarried man, and has been since 1999.

1.3.3   JAY was previously married to CAROLE LEVITZKY SHAPIRO and

MELANIE GRAPER, but those marriages ended in divorce.

1.3.4   JAY has no children either living or deceased.

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

1.4     Successor Trustee

If JAY resigns, becomes incapacitated, dies, or for any reason fails to qualify or

ceases to act as Trustee, JAY's brother, BRIAN G. SHAPIRO ("BRIAN"), shall act as Successor

Trustee. If BRIAN shall for any reason fail to qualify or cease to act as Successor Trustee, then

JAY's brother, ANDREW E. SHAPIRO ("ANDREW"), shall act as Successor Trustee. If both

BRIAN and ANDREW shall for any reason fail to qualify or cease to act as Successor Trustee,

then JAY's sister-in-law, JULIE L. SHAPIRO ("JULIE"), shall act as Successor Trustee.

1.5     Purpose and Intent

In establishing the Trust, it is JAY's purpose and intent that the Trust and its

assets be used primarily for the benefit of JAY, during his lifetime, and that the interests of the

other beneficiaries are secondary. In administering the Trust, the Trustee (and any Successor

Trustee) shall be guided accordingly.


**ARTICLE TWO: TRUST ESTATE**

2.1     Trust Estate

2.1.1    All property subject to this instrument from time to time, including the

property listed in SCHEDULE "A", is referred to as the "Trust Estate" and shall be held,

administered, and distributed according to this instrument.

2.1.2    JAY declares that all property described in SCHEDULE "A" was, before

its transfer, the separate property of JAY, and shall retain its character as such.

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

2.2     Assets Held Outside Trust

SCHEDULE "B" contains a listing of assets, title to which is held outside of the

Trust.  All property described in SCHEDULE "B" is the separate property of JAY.  The

provisions of this Trust instrument do not pertain to those assets. JAY's Agent for Property

Management may exercise control over those assets during JAY's lifetime and any period of

incapacity, in accordance with the terms of said Power of Attorney for Property Management.

## ARTICLE THREE: PAYMENTS DURING JAY'S LIFETIME

3.1     Payment of Income

The Trustee shall pay to or apply for the benefit of JAY all net income of the

Trust Estate in quarter-annual or, at JAY's option, more frequent installments, as long as JAY

shall live.

3.2     Payment of Principal

If the Trustee considers the net income of the Trust Estate insufficient to provide

for JAY's proper health, education, support, maintenance, comfort, and welfare, in accordance

with the standard of living JAY enjoys at that time, the Trustee shall pay to or apply for JAY's

benefit as much of the principal of the Trust, up to and including the whole of the Trust, as is

necessary for these purposes, in the Trustee's discretion, without taking into consideration funds

and assets available to JAY from other sources.

3.3     Withdrawal at Request of JAY

In addition, the Trustee shall pay to JAY as much of the principal of the Trust as

JAY shall direct.

3.4     Payment To/For Others

At any time while JAY has capacity, JAY may direct the Trustee in writing to

withdraw or pay single sums or periodic payments out of the Trust Estate to any other person or

organization of JAY's choosing.

3.5     Powers Personal to JAY

Except as provided in ARTICLE FOUR, JAY's power hereunder is personal and

may not be exercised by any other person.

## ARTICLE FOUR: INCAPACITY OF JAY

4.1     Incapacity Defined

JAY's incapacity shall be deemed to exist when his incapacity has been declared

by a court of competent jurisdiction, or upon presentation, to the then acting Successor Trustee

under ARTICLE ONE, Paragraph "1.4" of a certificate executed by two (2) licensed physicians,

unrelated to JAY, which opinion of such physicians states that JAY is physically or mentally

incapable of managing JAY's financial affairs. The effective date of such incapacity shall be the

date of the order or decree adjudicating the incapacity, or the date of the certificate of the two

licensed physicians described above, whichever first occurs. A certified copy of the order or

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

decree declaring JAY's incapacity or appointing a conservator, or the certificate of the physicians

described above, shall be attached to the original of this instrument (and photocopies thereof

shall be attached to photocopies of this instrument) and if this instrument is filed or recorded

among public records, then such order, decree or certificate shall also be similarly filed or

recorded if permitted by applicable law.

    4.2    Effect of Restored Capacity on Power

    JAY will be deemed, under this instrument, to have regained capacity if there is a

finding to that effect by a court of competent jurisdiction or when any conservatorship has been

judicially terminated or upon presentation to the then acting Successor Trustee of a certificate

executed by two (2) licensed physicians, unrelated to JAY, which states the opinion of such

physicians that JAY is physically and mentally capable of managing his own financial affairs. A

certified copy of the order or decree declaring JAY's capacity or judicially terminating the

conservatorship or the certificate of the physicians described above shall be attached to the

original of this instrument (and photocopies thereof shall be attached to photocopies of this

instrument) and if this instrument is filed or recorded among public records, then such order,

decree or certificate shall also be similarly filed or recorded if permitted by applicable law.

    4.3    Partial Waiver of Doctor-Patient Privilege

    4.3.1    JAY hereby waives voluntarily any physician-patient privilege or

psychiatrist-patient privilege that may exist in JAY's favor with respect to any issue of his

capacity and he authorizes physicians to examine him and disclose his physical or mental condition in order to determine his incapacity or capacity, for purposes of this instrument.

4.3.2  To that end, JAY has executed a **Grant of Authority to Health Care Agent and Authorization under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and California Law for Release of Health Information**, the original of which is attached to JAY's Advanced Health Care Directive (AHCD) as Exhibit "A". A photocopy of said Grant of Authority document shall have the same effect as the original and may be used in connection with the determination of JAY's incapacity or restoration of capacity under this instrument.

## 4.4    Payment of Income to/for JAY During Incapacity

During any period of JAY's incapacity, the Successor Trustee shall pay to or apply for the benefit of JAY as much of the net income of the Trust Estate in quarter-annual or more frequent installments as may be necessary or desirable, in the Trustee's discretion, for JAY's proper health, education, support, maintenance, comfort, and welfare, in accordance with the standard of living JAY enjoys at that time, and shall accumulate and add to principal any undistributed net income.

## 4.5    Payment of Principal to/for JAY During Incapacity

During any period of JAY's incapacity, if the Successor Trustee considers the net income of the Trust Estate insufficient to provide for JAY's proper health, education, support, maintenance, comfort, and welfare, in accordance with the accustomed standard of living JAY

enjoys at that time, the Successor Trustee shall pay to or apply for JAY's benefit as much of the principal of the Trust, up to and including the whole of the Trust, as is necessary in the Successor Trustee's discretion for these purposes, without taking into consideration funds and assets available to JAY from other sources.

### 4.6 Care of JAY's Pets During Incapacity

4.6.1 At the time of JAY's incapacity if JAY is unable to take care of his black domestic short-hair cat and/or any other household pet or pets ("PET(s)"), said PET(s) shall be placed in the care of a caretaker for the duration of JAY's incapacity.

4.6.2 MARIA is designated as the caretaker for any PET(s) belonging to JAY at the time of his incapacity. MARIA shall care for the PET(s) in JAY's home or in her own home if the Successor Trustee so determines. If MARIA is unable or unwilling to care for JAY's PET(s) for the duration of JAY's incapacity, the Successor Trustee shall place the PET(s) with a private, non-institutional caretaker of the Successor Trustee's choice.

4.6.3 The Successor Trustee shall pay from the Trust Estate to the caretaker for caretaking services of the PET(s), the sum of $250.00 each month during JAY's incapacity.

4.6.2 In addition to the monthly payment for caretaking, the Successor Trustee shall pay all other costs associated with caring for the PET(s), ie: food, grooming, supplies, and veterinary expenses.

/ / /

/ / /

### 4.7    Agent Under Advance Health Care Directive

If at any time during JAY's incapacity an Agent is acting for him under any

Advance Health Care Directive in making decisions regarding his personal or health care. the

Successor Trustee shall consult with said Agent regarding all economic/financial matters related

to JAY's personal or health care. If there is disagreement between the Successor Trustee and the

Agent on any such matter, the decision of the Agent shall be controlling, in which case, the

Successor Trustee shall be relieved of any responsibility therefor, but shall cooperate with said

Agent and continue to account for the disbursement of Trust Assets in connection therewith.

## ARTICLE FIVE: PAYMENTS/DISTRIBUTION UPON DEATH OF JAY

### 5.1    JAY's Expenses/Debts/Taxes

5.1.1    On JAY's death, the Successor Trustee shall pay out of the Trust Estate

any and all of JAY's debts outstanding at the time of his death and not barred by the Statute of

Limitations, the Statute of Frauds, or any other provision of law; death and estate taxes due upon

JAY's death, if any; the last-illness, funeral and burial expenses of JAY; and attorneys' fees and

other costs incurred in administering this Trust.

5.1.2    Allocation of payments for death or estate taxes, if any, shall be made in

accordance with ARTICLE EIGHT.

5.1.3    The Trustee may advance fees and costs to the Executor or Administrator

of JAY's Probate Estate, if any, if the Trust is the beneficiary thereof.

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

5.2    Specific Cash Bequests

5.2.1    On the death of JAY, or as soon thereafter as possible, the Successor

Trustee shall distribute the following monetary bequests:

5.2.1.1    $200,000.00 to the AMERICAN SOCIETY FOR THE

PREVENTION OF CRUELTY TO ANIMALS (ASPCA), 424 E. 92nd Street, New York, NY

10128, to be used for prevention of feline abuse program;

5.2.1.2    $200,000.00 to CITY OF HOPE National Medical Center,

Duarte, California, for the General Purpose Fund;

5.2.1.3    $200,000.00 to the UNIVERSITY OF CALIFORNIA

DAVIS, School of Veterinary Medicine, Davis, CA 95616, to be used for Feline Research;

5.2.1.4    $200,000.00 to the AMERICAN HEART ASSOCIATION,

7272 Greenville Avenue, Dallas, TX 75231;

5.2.1.5    $200,000.00 to THE HUMANE SOCIETY OF THE

UNITED STATES, 1255 23rd Street, NW, Suite 450, Washington, DC 20037, for the Sparrow

Fund;

5.2.1.6    $25,000.00 to JAY's friend, REBECCA M. FERRATTI

("REBECCA"). If REBECCA M. FERRATTI predeceases or fails to survive JAY, then this

bequest shall lapse and be added to the residue of the Trust;

/ / /

/ / /

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

5.2.1.7     $50,000.00 to JAY's friend, MARIA C. RODRIGUES

("MARIA"). If MARIA predeceases or fails to survive JAY, then this bequest shall lapse and be

added to the residue of the Trust; and

5.2.2     Said monetary bequests shall not bear interest from the date of JAY's

death until distributed.

5.3.     Distributions for Pet Care

The Successor Trustee shall set aside $25,000.00 for the proper care of JAY's

black domestic short-hair cat and/or any other household pet or pets ("PET(s)") in the possession

of JAY at JAY's death. The proper care shall include feeding, spending time with, exercising,

and taking the PET(s) for veterinary and personal care when deemed necessary by the caretaker.

5.3.1     The PET(s) shall be placed in the care of a caretaker on the death of JAY,

conditioned upon the caretaker agreeing to take care of JAY's PET(s) in his or her home until the

last pet of JAY dies.

5.3.2     JAY's friend, MARIA, shall be the first named caretaker. If MARIA is

unable or unwilling, or declines to take care of JAY's PET(s) in her home, or if MARIA

predeceases or fails to survive JAY, the Successor Trustee shall place JAY's PET(s) with a

private, non-institutional caretaker ("Private Person") of the Successor Trustee's choice.

5.3.3     The Successor Trustee shall pay to the caretaker for caretaking services of

JAY's PET(s), the sum of $250.00 each month from the funds set aside for pet care until the

death of the last pet to die.

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

5.3.4    In addition to the monthly gift to the caretaker, the Successor Trustee shall

pay all other costs associated with caring for the PET(s), ie: food, grooming, supplies, and

veterinary expenses.

5.3.5    If JAY has no PET(s) living at the time of his death, the monthly gift to

the caretaker shall lapse.

5.3.6    Provided MARIA is the caretaker of the PET(s) when the last pet dies,

then $5,000.00 from the pet care funds, or the entire remainder of the pet care funds, whichever

is less, shall be distributed to MARIA. Any pet care funds remaining over $5,000.00, or all the

remaining pet care funds if MARIA is not the caretaker for JAY's PET(s) at the time the last pet

dies, shall be distributed according to Paragraph "5.5", below.

5.4    Liquidation of Trust Remainder

The Successor Trustee shall, after paying JAY's debts outstanding at the time of

death as set forth in ARTICLE FIVE, Paragraph "5.1," and after making the specific bequests as

set forth in Paragraph "5.2,", liquidate the rest, residue and remainder of the Trust Estate.

5.5    Division and Distribution of Trust Remainder

The Successor Trustee, after liquidating the Trust Estate as set forth in Paragraph

"5.4," above, shall divide and distribute the Trust Estate, including undistributed and/or accrued

income (Trust remainder), to JAY's nieces and nephews, as follows:

5.5.1    Twenty-Five percent (25%) to JONATHAN RALPH SHAPIRO

("JONATHAN"), free of trust.

5.5.2    Twenty-Five percent (25%) to RANDALL LANCE SHAPIRO

("RANDALL"), free of trust.

5.5.3    Twenty-Five percent (25%) to DR. SAMANTHA COYLEEN SHAPIRO

("SAMANTHA"), free of trust.

5.5.4    Twenty-Five percent (25%) to CLAUDIA RACHELLE SHAPIRO

("CLAUDIA"), free of trust.

5.5.5    If JONATHAN, RANDALL, SAMANTHA, or CLAUDIA fails to survive

JAY, his or her share shall be distributed in equal shares to the survivors of JONATHAN,

RANDALL, SAMANTHA, and CLAUDIA.

5.6     Ultimate Distribution of Any Remainder

If, at any time before full distribution of the Trust Estate, JAY and all of the

beneficiaries as set forth above, are deceased and no other disposition of the property is directed

by this instrument, then the remaining portion of the Trust shall then be distributed as follows:

5.6.1    Fifty percent (50%) to the AMERICAN SOCIETY FOR THE

PREVENTION OF CRUELTY TO ANIMALS (ASPCA); and

5.6.2    Fifty percent (50%) to MARIA C. RODRIGUES, or if MARIA C.

RODRIGUES predeceases or fails to survive JAY, then this gift shall lapse, and the Trust shall

be distributed 100% to the ASPCA.

/ / /

/ / /

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

### 5.7    Termination When Share is Small

If the trust held for any beneficiary has a total value at the end of any calendar

year of less than Ten Thousand Dollars ($10,000.00), the Successor Trustee, in the Successor

Trustee's discretion, may distribute the entire Trust Estate to said beneficiary, free of trust.

### 5.8    No Provision for Omitted Heirs

Except as otherwise provided for in this Trust, JAY has intentionally and with full

knowledge omitted to provide for his heirs and any person who may, in the future become JAY's

heir, through marriage or otherwise.


## ARTICLE SIX: REVOCATION AND AMENDMENT

### 6.1    Revocation During JAY'S Lifetime

During JAY's lifetime, the Trust may be revoked in whole or in part, by a written

instrument signed by JAY and delivered to the Trustee.  On revocation, the Trustee shall

promptly deliver all of the trust assets to JAY.

### 6.2    Amendment During JAY's Lifetime

JAY may at any time during his lifetime amend any of the terms of this Trust by

an instrument in writing signed by JAY and delivered to the Trustee.

### 6.3    Revocation/Amendment Upon Incapacity/Death of JAY

Upon JAY's incapacity or death, the Trust may not be revoked or amended.

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

6.4    Power to Revoke/Amend Personal to JAY

JAY's power to revoke or amend the Trust shall be personal to him and may not

be exercised by anyone else.

6.5    Trustee's Power to Retain Assets on Revocation

If this instrument is revoked with respect to all or a major portion of the assets

subject to thereto, the Trustee shall be entitled to retain sufficient assets reasonably necessary to

secure payment of expenses and liabilities the Trustee has lawfully incurred in administering the

Trust, including Trustee's fees that have been earned, unless JAY indemnifies the Trustee against

such loss or expense.

6.6    Trustee's Consent to Amendments

No amendment shall substantially increase the duties or liabilities of the Trustee

or change the Trustee's compensation without the Trustee's consent, nor shall the Trustee be

obligated to act under such an amendment unless the Trustee accepts it.  If a Trustee is removed

as a result of refusal to accept an amendment, JAY shall pay to the Trustee any sums due and

shall indemnify the Trustee against any liability the Trustee has lawfully incurred in

administering the Trust.

/ / /

/ / /

/ / /

/ / /

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

## ARTICLE SEVEN: COURT JURISDICTION

California Probate Code §§17200-17210, or any successor or substitute provisions

of said Code authorizing optional Probate Court jurisdiction over living trusts are hereby made

expressly applicable to any trust created hereunder.

## ARTICLE EIGHT: TRUSTEE'S POWERS

To carry out the purposes of this Trust, or any trust created under this instrument,

and subject to any limitations stated elsewhere in this instrument, the Trustee is vested with the

powers listed below as well as any powers conferred by law, without necessity of application to

any court. Except as may be specifically set forth in this instrument, the enumeration of certain

powers in this instrument shall not limit the Trustee's powers. The Trustee shall have all the

rights, powers, and privileges that an absolute owner of the same property would have, subject to

the Trustee's fiduciary obligations and to any limitations stated elsewhere in this instrument.

8.1 Broad Investment Power Under Prudent Investor Rule

8.1.1 To invest and reinvest trust funds in every kind of property (real, personal,

or mixed) and every kind of investment, specifically including, but not limited to, corporate

obligations of every kind; preferred or common stocks; shares of investment trusts, investment

companies, and mutual funds; life insurance policies; notes, real estate, bonds, debentures,

mortgages, deeds of trusts, mortgage participations, market funds and index funds appropriate

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

under the then-prevailing circumstances, specifically including, but not limited to, the factors set

out in Probate Code section 16047(c), as follows:

      (a)    ~~General economic conditions;~~

      (b)    The possible effect of inflation or deflation;

      (c)    The expected tax consequences of investment decisions or
strategies;

      (d)    The role that each investment or course of action plays within the
overall trust portfolio;

      (e)    The expected total return from income and the appreciation
of capital;

      (f)    Other resources of the beneficiaries known to the Trustee as
determined from information provided by the beneficiaries;

      (g)    Needs for liquidity, regularity of income, and preservation
or appreciation of capital; and

      (h)    An asset's special relationship or special value, if any, to
the purposes of the trust or to one or more of the
beneficiaries.

      8.1.2   In so doing, Trustee shall exercise care, skill, and caution to attain JAY's

goals under this Trust. Trustee shall consider individual investments as part of an overall

investment strategy having risk and return objectives reasonably suited to the purposes of the

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

Trust. Trustee's investments may include stock in an entity, or a common trust fund which is administered by the person serving as Trustee, or a stock in any entity owned by the person serving as Trustee.

### 8.2 Power to Employ Agents/Compensate Agents

To employ any custodian, attorney, accountant, corporate fiduciary, or any other agent or agents to assist the Trustee in the administration of the Trust and to rely on the advice given by these agents. Reasonable compensation for all services performed by these agents shall be paid from either the income or principal of the Trust Estate as the Trustee, in the Trustee's discretion, shall determine, and shall not decrease the compensation to which the Trustee is entitled.

### 8.3 Authority to Pay Health Care/Property Agent

To pay reasonable compensation to any Agent acting under a valid Durable Power of Attorney for Property Management or Advance Directive for Health Care Directive executed by JAY, and to reimburse said Agent(s) for costs and expenses reasonably incurred in carrying out his/her duties in connection therewith, in accordance with the provisions of said Power(s) of Attorney. It is JAY's desire that the Successor Trustee interpret this provision liberally in favor of the Agent(s) and act promptly upon any such request for payment or reimbursement by the Agent(s).

/ / /

/ / /

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

### 8.4    Power to Employ Investment Counsel

8.4.1    To retain professional investment counsel of his/her choice, regarding investments held by the Trust. If investment counsel is retained, the Trustee need not abide by counsel's decision and shall not be held liable or otherwise surcharged for losses directly attributable to investments made on the investment counsel's advice.

8.4.2    While the Trustee retains investment counsel, the Trustee shall not be required to conduct reviews of Trust investments, and the Trustee shall not be required to take action on Trust investments unless the Trustee receives written instructions from the investment counsel.

### 8.5    Trustee Need Not Review Investments

The Trustee shall have no responsibility to review the performance of investment counsel from time to time, unless the Trustee is apprized of facts clearly indicating that counsel is not performing competently.

### 8.6    Power to Retain Property

To continue to hold any property that the Trustee receives or acquires under the Trust for as long as the Trustee considers advisable.

### 8.7    Power to Lease Property

To lease Trust property for terms within or beyond the term of the Trust for any purpose, including exploration for and removal of gas, oil, and other minerals; and to enter into community oil leases, pooling, and unitization agreements.

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

8.8    Power to Retain or Purchase Unproductive Property

To retain, purchase, or otherwise acquire unproductive property under the Trust,

as long as the Trustee deems advisable.

8.9    Power To Sell, Exchange, Repair With Notice

8.9.1    To manage, control, grant options on, sell (for cash or for deferred

payments), convey, exchange, partition, divide, improve, and repair Trust property.

8.9.2    However, the Successor Trustee shall give thirty (30) days written notice

of any intent to sell, exchange or substantially repair any property belonging to the Trust Estate,

in the following manner:

> (a)    if JAY is alive but not incapacitated - to JAY;
>
> (b)    if JAY is alive but incapacitated - to the next named Successor Trustee;
>
> (c)    if JAY is deceased, to any named beneficiary under the Trust;
>
> (d)    if any said notice recipient is a minor or incapacitated, the notice shall be delivered to the guardian, agent, or conservator of his or her person; and
>
> (e)    if any notice beneficiary is deceased, then the Successor Trustee shall give notice to that person's legal representative, if any; otherwise said obligation to give notice shall lapse.

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

8.9.3 "Substantial" shall mean any item valued at, or repair costing more than Ten Thousand Dollars ($10,000.00). Notice need not be given for emergency repairs. Said notice shall set forth the price and other terms of the proposed sale, exchange, or repair.

8.9.4 If any said beneficiary objects, the Successor Trustee shall petition the Court for instructions. Failure to object in writing within fifteen (15) days shall be deemed consent. In the event that any beneficiary is incapacitated, the authority to object shall lapse.

8.10   Transfer of Personal Property to Beneficiaries

To transfer custody and possession (but not title) for storage and safekeeping of any such tangible personal property to the person(s) named herein to the person(s), if any, named in this instrument as the recipient of such property at JAY's death.

8.11   Power to Monitor and Inspect Property

To periodically inspect and review, or require the inspection and review, of any and all property held in the Trust, for the purpose of determining compliance with any law, rule or regulation affecting such property, with all expenses of such inspection, review and monitoring to be paid from the income and principal of the Trust.

8.12   Power to Refuse Contaminated Property

To refuse to accept as a part of the Trust Estate, in the Trustee's sole discretion, any property that is determined to be contaminated.

/ / /

/ / /

### 8.13    Power to Prevent/Remedy Contamination

To prevent, abate or remedy any actual or threatened contamination of Trust

property, at the expense of the Trust, in order to comply with any environmental law.

### 8.14    Abandonment of Property

To abandon any property or interest in property belonging to the Trust when, in

the Trustee's discretion, the abandonment is in the best interest of the Trust and its beneficiaries.

### 8.15    Power to Purchase Bonds at Premium

To purchase bonds and pay such premiums in connection with the purchase, as the

Trustee, in it sole discretion, considers advisable.

### 8.16    Power to Purchase Bonds at Discount

To purchase bonds at a discount as the Trustee, in the Trustee's discretion,

considers advisable.

### 8.17    Power to Manage Securities

To have all the rights, powers, and privileges of an owner of the securities held in

the Trust, including, but not limited to, the powers to vote, give proxies, and pay assessments; to

participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations,

mergers and liquidations and, incident to such participation, to deposit securities with and

transfer title to any protective or other committee on any terms as the Trustee considers

advisable; and to exercise or sell stock subscription or conversion rights.

8.18    Power to Hold Securities in Nominee's Name

To hold securities or other property in the Trustee's name as Trustee of the Trust, in the Trustee's own name or in its nominee's name, or to hold securities unregistered in such condition that ownership will pass by delivery.

8.19        Business Interests

8.19.1  To operate in partnership or corporate form any business enterprise and retain any partnership interest and all shares of the capital stock of any closely held businesses in which the Settlor has an interest.

8.19.2  To exercise his/her powers as partners and vote this stock to elect as managers of these partnerships and as directors and officers of these corporations the persons actively participating in the management of the business of any such partnership or corporation from time to time.

8.19.3  The Trustee may, in the Trustee's discretion, continue to hold and operate, sell, or liquidate, at the risk of the Trust Estate, any business or investment activity in whatever form (including a sole proprietorship, general or limited partnership interest, trust, corporation (including a closely held corporation), or other entity) that the Trustee receives or acquires under this Trust. The Trustee may, in the Trustee's discretion, do all things that the Trustee considers advisable in connection with this business or investment activity, including the following:

(a)      Incorporate or make other changes in the form of the organization of the business or investment activity;

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

      (b)    Lend or contribute other trust funds to the business or investment

activity;

      (c)    Serve as an officer or director of any corporation;

      (d)    Consent to the retention of all or any portion of the distributable

share of net income of the business or investment activity to meet the business's reasonable

needs;

      (e)    Rely on the written statement of the managing partner or other

chief executive of the business or investment activity, setting forth the reasons for withholding

distributable net income;

      (f)    Dissolve, liquidate, sell, or otherwise dispose of the business or

investment activity or any interest in it;

      (g)    Without independent investigation, accept as correct and rely on

financial or other statements rendered by an accountant, an officer, or a principal of the business,

for any business or investment activity or any interest in it; and

      (h)    For accounting and reporting purposes, regard the business or

investment activity as an entity separate from the trust and account for money and property

received from and paid to the business or investment activity.

      8.19.4  The Trustee shall perform all acts and employ all personnel that the

Trustee may, in the Trustee's discretion, consider necessary or desirable for the management and

operation of any business interest held in the Trust Estate, without liability for any loss resulting

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

from the acts or omissions of any of the employees, provided that the act or omission is not that of the Trustee acting in the capacity of an employee, that the Trustee uses reasonable care in selecting and supervising the employees and that the Trustee did not fail to mitigate the loss or correct the negligence after having notice of it. The Trustee may pay the employees from the Trust Estate compensation that the Trustee considers to be reasonable.

8.19.5 The Trustee shall incur no liability for misconduct, mismanagement, or negligence on the part of any employee of a business, any employee or partner of a partnership, or any employee, officer, or director of a corporation in which Trust funds are invested. The Trustee shall be held harmless against and be indemnified out of the Trust Estate for any claims, liability, losses, or damages chargeable against the Trustee arising out of or connected with the Trustee's possession, management, or ownership as Trustee of any interest in a business, provided that the Trustee shall not be indemnified for [his/her] own acts or omissions while acting in the capacity of an employee, officer, or director, that the Trustee has used reasonable care in selecting and supervising the employees, officers, or directors, and that the Trustee did not fail to mitigate the loss or correct the negligence after having notice of it.

8.20    Power to Lend

To lend money to any person, including the probate estate of JAY, provided that any such loan shall be adequately secured and shall bear a reasonable rate of interest.

/ / /

/ / /

### 8.21    Power to Loan, Sell or Buy from Trust Personally

To loan or advance the Trustee's own funds to the Trust for any trust purpose,

with interest at current rates; to receive security for such loans in the form of a mortgage, pledge,

deed of trust or other encumbrance of any asset(s) of the Trust; to purchase assets of the Trust at

their fair market value, as determined by an independent appraisal of those assets; and to sell

property to the Trust at a price not in excess of its fair market value, as determined by an

independent appraisal.

### 8.22    Power to Borrow

To borrow money for any Trust purpose, and to encumber Trust property by

mortgage, deed of trust, pledge, or otherwise for the debts of the Trust or the joint debts of the

Trust and a co-owner of the property in which the Trust has an interest, or for JAY's debts; and

to guarantee JAY's debts.

### 8.23    Power to Purchase from Probate Estate

To purchase property from the Probate Estate of JAY at its fair market value as

determined by the Trustee, in the Trustee's discretion.

### 8.24    Power to Adjust for Tax Consequences

To take any action and to make any election, in the Trustee's discretion, to

minimize the tax liabilities of the Trust and its beneficiary(ies). The Trustee shall have the

power to make adjustments in the rights of any beneficiaries, or between the income and

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

principal accounts, to compensate for the consequences of any tax election that the Trustee

believes has had the effect, directly or indirectly, of preferring one beneficiary or group of

beneficiaries over others, taking into consideration the purpose and intent of JAY set forth in

ARTICLE ONE, Paragraph "1.5," above.

8.25 Equitable Proration of Taxes

8.25.1 The Successor Trustee shall pay, unless JAY's Will directs otherwise, all

estate and death taxes payable at JAY's death, attributable to JAY's death, from the Trust Estate

and charge to, or recover from, on a pro rata basis, the persons or entities (i.e., trusts), entitled to

benefit under this Trust, under JAY's Will, by contract, or operation of law at JAY's death.

8.25.2 The term "death taxes" shall include all estate and inheritance taxes,

generation-skipping transfer taxes, Internal Revenue Code §2032A recapture taxes, taxes on

excess retirement accumulations under Internal Revenue Code §4941A(d), and interest and

penalties thereon.

8.25.3 To the extent that the Trust is charged with or assessed any death taxes

relating to any asset passing to any person(s) outside the Trust, the Trustee shall recover said

tax(es) from said person(s). It is the intent of JAY that any estate or other death taxes be

apportioned among the person(s) or entity(ies) receiving said assets in proportion to their value at

the date used to determine such tax.

/ / /

/ / /

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

8.26    Power to Initiate/Defend Litigation and To Compromise

8.26.1  To initiate or defend, at the expense of the Trust, any litigation relating to

JAY, the Trust or any property of the Trust Estate that the Trustee considers advisable, and to

compromise or otherwise adjust any claims or litigation against or in favor of the Trust.

8.26.2  The Trustee's powers under this paragraph shall apply during the term of

and after distribution of Trust Assets. The Trustee shall have no obligations or duties, however,

for any litigation or claims occurring after distribution of Trust Assets, unless the Trustee is

adequately indemnified by the distributees for any loss connected with these matters.

8.27    Power to Insure

To carry insurance of the kinds and in the amounts the Trustee considers advisable

to protect JAY, the Trust Estate and/or the Trustee personally against any hazard, at the expense

of the Trust.

8.28    Broad Powers of Distribution

To partition, allot, and distribute the Trust Estate, on any division or partial or

final distribution of the Trust Estate, in undivided interests or in kind, or partly in money and

partly in kind, at valuations determined by the Successor Trustee, and to sell such property as the

Successor Trustee may deem necessary to make division or distribution. In making any division

or partial or final distribution of the Trust Estate, the Successor Trustee shall be under no

obligation to make a prorata division, or to distribute the same assets to beneficiaries similarly

situated. The Successor Trustee may, in the Successor Trustee's discretion, make a nonprorata

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

division between trusts or shares and nonprorata distributions to such beneficiaries if respective

assets allocated to separate trusts or shares or distributed to the beneficiaries, have equivalent or

proportionate fair market value and income tax bases.

### 8.29 Power to Withhold Payment if Conflicting Claims

To withhold from distribution, in the Successor Trustee's discretion, at the time

for distribution of any property in the Trust, without the payment of interest on all or any part of

the property, if the Successor Trustee determines, in the Successor Trustee's discretion, that the

property may be subject to conflicting claims, tax deficiencies, or liabilities, whether contingent

or otherwise.

### 8.30 Release of Powers

To release or to restrict the scope of any power that the Trustee may hold in

connection with the Trust, whether this power is expressly granted in this instrument or implied

by law. The Trustee shall exercise this power in a written instrument specifying the powers to be

released or restricted and the nature of any such restriction. Any such released or restricted

power shall pass to and be exercised by the next designated Successor Trustee.

### 8.31 Deferral of Distribution of Trust Assets

8.31.1 In the Successor Trustee's discretion, to defer any required distribution or

division until six (6) months after JAY's death.

8.31.2 Should the Successor Trustee defer distribution or division of the Trust

Assets, the deferred distribution shall be made as if it had taken place at the time prescribed in

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

this instrument in the absence of this paragraph, and all rights given to the beneficiaries of those

Trust Assets under other provisions of this instrument shall be deemed to have accrued and

vested as of that prescribed time.

## ARTICLE NINE: PRINCIPAL AND INCOME

Except as otherwise specifically provided in this instrument, the determination of all

matters with respect to what is principal and income of the Trust Estate and the apportionment

and allocation of receipts and expenses between these accounts shall be governed by the

provisions of the California Revised Uniform Principal and Income Act from time to time

existing. The Successor Trustee, in the Successor Trustee's discretion, shall determine any

matter not provided for either in this instrument or in the California Revised Uniform Principal

and Income Act.

## ARTICLE TEN: PROVISIONS REGARDING TRUSTEE(S)

### 10.1    Trustee May Resign

Any Trustee may resign at any time. The next designated Successor Trustee

named in ARTICLE ONE, Paragraph "1.4," above, shall then become Trustee.

### 10.2    Successor Trustee's Powers and Duties

All rights, powers, duties, and discretion conferred on the original Trustee shall

vest in any Successor Trustee.

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

10.3    Trustee is Replaced in Emergency

10.3.1  If an acting Trustee cannot administer the Trust because of physical or
mental incapacity, or otherwise cannot act, during any period of incapacity, the next designated
Successor Trustee named in ARTICLE ONE, Paragraph "1.4," above, shall act as Trustee,
having all rights and powers granted to the Trustee by this instrument.  Physical or mental
incapacity shall be conclusively established if two (2) doctors, unrelated to said Trustee and
authorized to practice medicine in the State of California, issue written certificates to that effect.

10.3.2  In the absence of these certificates, the Successor Trustee, or any then-
living named beneficiary, may petition the court having jurisdiction over this Trust to remove the
acting Trustee and replace the then acting Trustee with the next designated Successor Trustee.
The person who so petitions the court shall incur no liability to any (other) beneficiary of the
Trust or to the then-acting Trustee as a result of this petition, provided the petition is filed in
good faith and in the reasonable belief that the then-acting Trustee is physically or mentally
incapacitated or otherwise cannot act.

10.4    Trustee's Bond

No bond shall be required of the designated Successor Trustees.  Otherwise, any
other Successor Trustee shall be bonded.

/ / /

/ / /

/ / /

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

10.5    Trustee's Acts

10.5.1 No Trustee named in this instrument shall be liable to any beneficiary or to any heir of JAY's for the Trustee's acts or failure to act, except for willful misconduct or gross negligence.

10.5.2 Further, the Successor Trustee shall not be liable to the beneficiaries for any decrease in value of Trust Assets by reason of the Successor Trustee's compliance with environmental laws, including reporting obligations.

10.6    Successor Trustee's Liability

A Successor Trustee shall be liable only for his/her own acts and defaults. No Successor Trustee shall be liable for any act, omission, or default of a predecessor Trustee. Unless requested in writing within ninety (90) days of appointment by an adult beneficiary of the Trust, no Successor Trustee shall have any duty to investigate or review any action of a predecessor Trustee. The Successor Trustee may accept the accounting records of the predecessor Trustee showing assets on hand without further investigation and without incurring any liability to any person claiming or having an interest in the Trust.

10.7    Accounting by Trustee

10.7.1 While JAY is not incapacitated, the Trustee shall account only to JAY, and JAY's written approval shall be final and conclusive for transactions disclosed in the account concerning all beneficiaries of the Trust, including unborn, unascertained, and contingent beneficiaries.

10.7.2 If JAY is incapacitated, the Successor Trustee shall deliver a written accounting to the next designated Successor Trustee regarding the transactions of the Trust, from time to time but not less frequently than ninety (90) days after any prior accounting.

10.7.3 After JAY's death, the Successor Trustee shall render an accounting to any named beneficiary under the Trust.

10.7.4 If there is a trust established hereunder that is being administered for the benefit of a person under the age of eighteen (18), the Successor Trustee shall render an accounting to said person and his/her guardian.

10.7.5 If any person entitled to receive an accounting is a minor or incapacitated, the accounting shall be delivered to the guardian, agent or conservator of his or her person.

10.7.6 If any notice to whom an accounting is owed is deceased, then the Successor Trustee shall account to that person's issue, if any; otherwise the obligation to account to that person shall lapse.

10.7.7 An accounting shall also be rendered by any Trustee or the Trustee's representative within ninety (90) days after his or her resignation, death, disability, or removal by a court of competent jurisdiction.

10.7.8 Accounting shall be made by delivering a written accounting to the person entitled thereto.

10.7.9 Any person to whom an accounting is owed shall within ninety (90) days after receipt of the Trustee's account deliver any written objections to the accounting to the

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

Successor Trustee. If the Successor Trustee and said objecting person(s) are not able to reach

agreement, then the unresolved objections shall be submitted by the Successor Trustee to the

court for determination.

10.7.10      If no objections are received by the Successor Trustee within said

ninety (90) day period, or if the Successor Trustee and objecting person(s) have reached

agreement, or upon the court's rendering its determination, the accounting shall be final and

conclusive for transactions disclosed in the accounting concerning all beneficiaries of the Trust,

including unborn, unascertained, and contingent beneficiaries, except for the Trustee's

intentional wrongdoing or fraud.

10.7.11      Except as required above, any reports and/or accounts otherwise

required by the California Probate Code are hereby waived to the fullest extent of the law.

10.8      Successor Trustee's Compensation

10.8.1 The Successor Trustee shall be entitled to pay himself/herself reasonable

compensation from time to time without prior Court Order.

10.8.2 However, prior to making said payment, with respect to services rendered

for the benefit of JAY, the Successor Trustee shall give thirty (30) days written notice of the

intent to do so. Said notice shall set forth the period covered, nature of services rendered, time

spent, and amount of proposed compensation.

10.8.3 Notice shall be given as follows:

(a)      if JAY is alive and not incapacitated, to JAY;

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

        (b)    if JAY is alive but incapacitated, to the next named Successor Trustee;

        (c)    if JAY is deceased, to any named beneficiary of the Trust;

        (d)    if any said notice beneficiary is incapacitated, the notice shall be delivered to the agent or conservator of his or her person; and

        (e)    if any person to whom notice is owed is deceased, then the Successor Trustee shall give notice to that person's issue, if any; otherwise said obligation to give notice shall lapse.

10.8.4 Unless written objection shall be received by Successor Trustee from any person entitled to receive notice within said thirty (30)-day period, the Successor Trustee may proceed with payment, and the right to object shall be deemed waived. If objection is made by any person entitled to receive notice, any unresolved disagreement shall be submitted to the court for determination, which shall be binding on the Trustee and all beneficiaries.

10.9    Reimbursement of Expenses

In any event, the Successor Trustee shall be entitled to reimburse himself/herself for any expenses of the Trust that he/she has paid.

/ / /

/ / /

/ / /

/ / /

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

## ARTICLE ELEVEN : ADMINISTRATIVE PROVISIONS

11.1   Powers Personal to JAY

Unless otherwise provided in this instrument, any power or right retained by JAY is personal to JAY and said power may not be exercised on his behalf by any Agent under an Advance Health Care Directive, any Agent under Durable Power of Attorney for Property Management, any Conservator of his person or estate, nor by any other individual or entity.

11.2   Additions to Trust Authorized

11.2.1  Other property acceptable to the Trustee may be added to the Trust by any person, by the Will or Codicil of JAY, by the proceeds of any life insurance, or otherwise.

11.2.2  Unless otherwise specified in this instrument or in any instrument of transfer, any addition to any trust that has been subdivided into multiple trusts shall augment proportionately the trusts into which such trust has been divided.

11.2.3  Any addition to a Trust that at such time has been wholly distributed shall be distributed to the beneficiary of such Trust or, if a beneficiary shall not be living, to the beneficiary's then-living issue, on the principle of representation.  Any addition to a Trust that at such time has been partially distributed shall augment proportionately the distributed and undistributed portions of such Trust.  Any addition to a Trust over which a power of appointment has been exercised shall be held in a separate Trust or distributed as if the power had not been exercised, unless the instrument exercising that power specifies the manner in which a subsequent addition to the Trust shall be distributed.

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

11.3 All Beneficiaries To Survive JAY by Thirty (30) Days

Except as otherwise specifically provided in this instrument, if any beneficiary named herein fails to survive JAY for thirty (30) days, for all purposes of the Trust, the person shall be considered to have predeceased JAY.

11.4 Notice to Trustee of Events Affecting Interests

Unless the Trustee shall have received actual notice of the occurrence of an event affecting the beneficial interests of the Trust, the Trustee shall not be liable to any beneficiary of the Trust for distribution made as though the event had not occurred.

11.5 Notice Required Under Probate Code §16061.7

The Successor Trustee shall give all notices required by law, including that which is required by California Probate Code §16061.7. This trust and any trust established hereunder, will become irrevocable on the occurrence of either the following events, whichever first occurs:

11.5.1 JAY's incapacity, as defined in ARTICLE FOUR, or

11.5.2 JAY's death.

11.6 Provisions Regarding Trust Distribution

11.6.1 Any direction regarding the distribution from the Trust shall refer to the Trust as constituted on the date of the distribution, and the direction shall not affect previous distributions from the Trust.

11.6.2 If at the time any trust is established, the time fixed for a distribution of the principal has passed, the distribution shall be made upon the establishment of that trust.

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

### 11.7    Payments to Beneficiary Under Disability

Payments to any beneficiary who is under any disability may be made for the beneficiary's account to the beneficiary's Conservator, Agent under a Durable Power of Attorney, or Trustee of any trust established for the benefit of said beneficiary.

### 11.8    Claims of Creditors

The Trustee shall not be personally liable to any creditor or to any other person for making distributions from any trust under the terms of this instrument if the Trustee has no notice of any such claim of said creditor.

### 11.9    Spendthrift Clause

No interest in the principal or income of the Trust shall be anticipated, assigned, encumbered, or subjected to creditor's claim or legal process before actual receipt by the beneficiary.

### 11.10   Gender and Number

In this instrument, in all matters of interpretation, whenever necessary to give effect to any provision of this instrument, the masculine shall include the feminine and neuter and vice versa, the singular shall include the plural and the plural shall include the singular.

### 11.11   Headings

The headings, titles, and subtitles are inserted solely for convenient reference and shall be ignored in any construction of this instrument.

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

### 11.12 Articles/Paragraphs

Whenever this document refers to a provision contained in a specific article or

paragraph, the reference shall be to that article or paragraph of this instrument.

### 11.13 Statutes, Codes, and Regulations

All references to specific statutes, codes, or regulations shall include any

successors.

### 11.14 Internal Revenue Code

As used in this instrument, the term "Internal Revenue Code" shall refer to the

Internal Revenue Code of 1986, as amended from time to time, and to any successor statute to it.

### 11.15 "Trust"/"Trust Estate"/ "Trust Assets"

The term the "Trust", "the Trust", "Trust Estate", and "Trust Assets" shall, unless

otherwise specifically indicated otherwise, be interpreted to refer to any trust created under this

instrument whenever such interpretation is necessary to carry out the provisions of this

instrument.

### 11.16 "Trustees" and "Successor Trustees"

11.16.1 All references to the term "Trustee", unless other meaning is

specifically indicated, shall refer to the individual(s), including JAY, serving from time to time,

as a trustee, under this instrument.

11.16.2 The term "Successor Trustee" shall refer to the individual, other

than JAY, serving from time to time, as Trustee under this instrument.

### 11.17 "Shall" and "May"

The use of the word "shall" indicates a mandatory direction, while the use of the word "may" indicates a permissive, but not mandatory, grant of authority.

### 11.18 Charitable Organization

As used in this instrument, the term "charitable organization" shall mean any organization or trust, contributions to which are deductible under Internal Revenue Code sections 501(c)(3), 2055,and 2522 at the time any distributions shall be made to the organization or Trust under this instrument.

### 11.19 Choice of Law Clause

The validity of the Trust and the construction of its beneficial provisions shall be governed by the laws of the State of California in force from time to time. This paragraph shall apply regardless of any change of residence of the Trustee or any beneficiary, or the appointment or substitution of a Trustee residing or doing business in another state.

### 11.20 Severability Clause

If any provision of the Trust instrument is invalid or unenforceable, the remaining provisions shall nevertheless be carried into effect.

### 11.21 Disclaimers

Any beneficiary shall have the right to disclaim all or any part of any interest in property to which he or she may be entitled under this instrument. Except as otherwise provided herein, any interest so disclaimed shall be distributed as if the beneficiary predeceased JAY. No

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

other interest of the beneficiary shall be affected by the disclaimer, unless that interest also shall be disclaimed.

11.22  No-Contest Clause

The right of a beneficiary under this instrument to take any interest given to him or her by this instrument shall be void, and any gift or other interest in the trust property to which the beneficiary would otherwise have been entitled shall pass as if he or she had predeceased the Settlor if said beneficiary, singularly or in combination with any other person or persons, performs any of the following acts:

(a)  Without probable cause (as defined by California Probate Code §21311(b)) files a direct contest (as defined by California Probate Code §21310(b)) that alleges the invalidity of this instrument or any of its terms.  California Probate Code §21310(b) provides that a direct contest includes:

(i)  Forgery;

(ii)  Lack of due execution;

(iii)  Lack of capacity;

(iv)  Menace, duress, fraud, or undue influence;

(v)  Revocation pursuant to the terms of this instrument or applicable law; or

/ / /

/ / /

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

(vi)    Disqualification of a beneficiary who is a "disqualified

person" as described in California Probate Code Section

21350 or applicable successor statute.

(b)    Without probable cause (as defined by California Probate Code

§21311(b)) files a direct contest (as defined by California Probate Code §21310(b)) that alleges

the invalidity of any other instrument, or anyone or more of the terms of such other instrument,

which is in existence on the date this instrument is executed, such as a Will, Declaration of Trust,

contract, agreement (including any trust agreement), a beneficiary designation which the named

beneficiary is in conformity with said asset listed on any asset schedule incorporated by reference

to this Trust, or other document executed by the Settlor constituting part of an integrated estate

plan or executed by another for the benefit of the Settlor;

(c)    Files any creditor's claim or prosecutes any action against the Trust for any

debt alleged to be owed by the Settlor;

(d)    Files any pleading (as defined by California Probate Code §21310(d))

challenging any transfer of property on the grounds that it was not the transferor's property at the

time of the transfer. This provision shall not include in the definition of "any pleading" a

responsive pleading that seeks to defend the beneficiary's interest in property from attack.

11.23   Perpetuities Savings Clause

Unless sooner terminated in accordance with other provisions of this instrument,

all trusts created under this instrument shall terminate 21 years after JAY's death. The principal

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

and undistributed income of a terminated Trust shall be distributed to the then income

beneficiaries of that Trust in the same proportion that the beneficiaries are entitled to receive

income when the Trust terminates. If, at the time of such termination, the rights to income are

not fixed by the terms of the Trust, distribution under this clause shall be made, by right of

representation, to the persons who are entitled or authorized, in the Trustee's discretion, to

receive trust payments.

## ARTICLE TWELVE: EXECUTION

### 12.1    Execution of Declaration

IN WITNESS WHEREOF, I hereto execute this Amended Declaration of Trust at

Torrance, California, May 25, 2017.

JAY JEFFERY SHAPIRO
Settlor

By my signature below, I confirm continuing acceptance of my appointment as

Trustee of The Jay Jeffery Shapiro Revocable Trust, pursuant to the foregoing, and agree to carry

out the terms of the Trust, as amended.

JAY JEFFERY SHAPIRO
Trustee

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

Approved as to Form:

CONOVER & GREBE, LLP

By _____

Sibylle Grebe
Attorney for Settlor

### 13.2    Notarization

STATE OF CALIFORNIA          )
COUNTY OF LOS ANGELES        )

On May 25, 2017, before me, Jean M. Propoggia, Notary Public, personally appeared JAY JEFFERY SHAPIRO, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

JEAN M. PROPOGGIA
COMM. # 2150811
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES MAY 23, 2020

DECLARATION OF TRUST OF
THE JAY JEFFERY SHAPIRO REVOCABLE TRUST U/A/D FEBRUARY 28, 1997
AS AMENDED IN ITS ENTIRETY: MAY 25, 2017

## **ATTACHMENT 1 - RESIGNATION OF TRUSTEE**

I, JAY JEFFERY SHAPIRO, original Trustee of the JAY JEFFERY SHAPIRO
REVOCABLE TRUST, dated February 28, 1997, as amended, do hereby resign as Trustee.

This resignation is effective _____.

Date:_____

_____
JAY JEFFERY SHAPIRO, Settlor

STATE OF CALIFORNIA )
COUNTY OF _____ )

On _____, before me, _____, Notary Public,
personally appeared JAY JEFFERY SHAPIRO, who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

Notary Public

SCHEDULE A
TRANSFER OF ASSETS TO

THE JAY JEFFERY SHAPIRO REVOCABLE TRUST
DATE OF TRUST: FEBRUARY 28, 1997
AS AMENDED ON MAY 25, 2017 ("THE TRUST")

JAY JEFFERY SHAPIRO, as Settlor, hereby confirms the transfer and/or grants to himself as Trustee of the Trust, as may be amended from time to time, for the benefit of the Trust, all of his property, as follows:

I.      **REAL PROPERTY**

      A.      **Residence**

            2468 Nalin Drive
            Los Angeles, CA 90077

            Assessor's Parcel No:
            4378-28-28

II.     **INVESTMENT ACCOUNT - SECURITIES/STOCKS**

| | | |
|---|---|---|
| 1. | Name of Institution:<br>Address:<br><br>Account Type:<br>Account No.: | D.A. Davidson<br>16130 Ventura Blvd., Suite 460<br>Encino, CA 91436<br>Investment Account<br>XXXX5700 |
| 2. | Name of Institution:<br>Address:<br><br>Account Type:<br>Account No.: | UnionBanc Investment Services<br>P.O. Box 513100<br>Los Angeles, CA 90051-1100<br>Investment Account<br>XXX-XX9593 |
| 3. | Name of Institution:<br>Address:<br>Account Type:<br>Account No.: | E-Trade Securities<br>P.O. Box 484, Jersey City, NJ 07303<br>Investment Account<br>jay-1967 |
| 4. | Name of Institution:<br>Address:<br><br><br><br>Account Type: | Diamond A. Investors, LP<br>c/o Panoptic Fund Administration, LLC<br>11835 W. Olympic Blvd., Suite 625E<br>Los Angeles, CA 90064<br>Limited Partnership Interest |

**THE JAY JEFFERY SHAPIRO REVOCABLE TRUST**
**DATED FEBRUARY 28, 1997**
**SCHEDULE A**

5.  Name of Institution: Fidelity Investments
    Address: P.O. Box 770001, Cincinnati, OH 45277-0003
    Account Type: Investment Account
    Account No.: XXXXX2839

6.  Name of Institution: Union Bank
    Address: 16633 Ventura Blvd., Encino, CA 91436
    Account Type: Money Market Account
    Account No.: XXXXXX1303

III.  **RETIREMENT FUNDS/ACCOUNTS**

A.  **Roth IRA**

    Name of Participant: Jay J. Shapiro
    Name of Institution: D.A. Davidson
    Address of Institution: 16130 Ventura Blvd., Suite 460
                            Encino, CA 91436
    Account Number: XXXX2730
    Primary Beneficiary: Successor Trustee of The Jay Jeffery
                         Shapiro Revocable Trust, dated 2/28/1997

B.  **Roth IRA**

    Name of Participant: Jay J. Shapiro
    Name of Institution: Wells Fargo Advisors
    Address of Institution: 2829 Townsgate Road, Suite 200
                            Westlake Village, CA 91361
    Account Number: XXXX-8719
    Primary Beneficiary: Successor Trustee of The Jay Jeffery
                         Shapiro Revocable Trust, dated 2/28/1997

IV.  **PERSONAL PROPERTY**

A.  All of Settlor's furniture, furnishings, china, silverware, pictures, jewelry, books, painting and works of art, collection of tangible personal property, safe deposit boxes, clothing, fishing equipment, sporting equipment, any other equipment, automobiles and other motor vehicles, and other tangible personal property wherever located.

B.  All other personal property, tangible or intangible, wherever situated, standing in Settlor's name, including, but not limited to: money and other cash items such as checks and drafts, accounts in financial institutions, cash deposits and money market funds or accounts whether in a financial institution or otherwise and including a brokerage cash account, stocks and bonds, business and partnership interests, insurance policies and proceeds, and promissory notes.

### THE JAY JEFFERY SHAPIRO REVOCABLE TRUST
DATED FEBRUARY 28, 1997
#### SCHEDULE A

C.      It is the Settlor's intention to hold all of his property, real and personal (except for non-trust assets specifically set forth in Schedule B) in his name designating himself as Trustee under the Trust above referenced; however, any of the assets listed in Schedule A may be held in the individual name of the Settlor without reference to the Trust.

Dated: May 25, 2017

JAY JEFFERY SHAPIRO
Settlor

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
COUNTY OF LOS ANGELES        )

On May 25, 2017, before me, Jean M. Propoggia, Notary Public, personally appeared JAY JEFFERY SHAPIRO, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Jean M. Propoggia
Notary Public

JEAN M. PROPOGGIA
COMM. # 2150811
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES MAY 23, 2020

## SCHEDULE B
## NON-TRUST ASSETS

### THE JAY JEFFERY SHAPIRO REVOCABLE TRUST
### DATE OF TRUST: FEBRUARY 28, 1997
### AS AMENDED ON MAY 25, 2017 ("THE TRUST")

I.      **ANNUITIES**

A.  Owner:                         Jay J. Shapiro CPA PC Pension Plan
    Annuitant:                     Jay Jeffery Shapiro
    Name of Institution:           Jackson National Life Insurance Company
    Address of Institution:        P.O. Box 24068
                                   Lansing, MI 48909-4068
    Contract Number:               XXXXXX3141
    Type:                          Corp-Pension/Profit Sharing
    Primary Beneficiary:           25% to Jonathan Ralph Shapiro; 25% to
                                   Randall Lance Shapiro; 25% to Dr. Samantha
                                   Coyleen Shapiro; and 25% to Claudia
                                   Rachelle Shapiro; or if any named beneficiary
                                   fails to survive Jay Jeffery Shapiro, his or her
                                   share to the surviving named beneficiaries in
                                   equal shares
    Contingent Beneficiary:        Successor Trustee of The Jay Jeffery Shapiro
                                   Revocable Trust, dated 2/28/1997


B.  Owner:                         Jay J. Shapiro CPA PC Pension Plan
    Annuitant:                     Jay Jeffery Shapiro
    Name of Institution:           Prudential
    Address of Institution:        1964 Westwood Blvd., Suite 430
                                   Los Angeles, CA 90025
    Contract Number:               XXXX3204
    Type:                          Qualified Retirement Plan
    Primary Beneficiary:           25% to Jonathan Ralph Shapiro; 25% to
                                   Randall Lance Shapiro; 25% to Dr. Samantha
                                   Coyleen Shapiro; and 25% to Claudia
                                   Rachelle Shapiro; or if any named beneficiary
                                   fails to survive Jay Jeffery Shapiro, his or her
                                   share to the surviving named beneficiaries in
                                   equal shares
    Contingent Beneficiary:        Successor Trustee of The Jay Jeffery Shapiro
                                   Revocable Trust, dated 2/28/1997

### THE JAY JEFFERY SHAPIRO REVOCABLE TRUST
### DATED: FEBRUARY 28, 1997
### SCHEDULE B

C.  Owner:                    Jay J. Shapiro
    Annuitant:                Jay Jeffery Shapiro
    Name of Institution:      Fidelity Investments
    Address of Institution:   P.O. Box 770001, Cincinnati, OH 45277-0003
    Contract Number:          XXXXX1672
    Type:                     Deferred Annuity
    Primary Beneficiary:      25% to Jonathan Ralph Shapiro; 25% to
                              Randall Lance Shapiro; 25% to Dr. Samantha
                              Coyleen Shapiro; and 25% to Claudia
                              Rachelle Shapiro; or if any named beneficiary
                              fails to survive Jay Jeffery Shapiro, his or her
                              share to the surviving named beneficiaries in
                              equal shares
    Contingent Beneficiary:   Successor Trustee of The Jay Jeffery Shapiro
                              Revocable Trust, dated 2/28/1997

**EXHIBIT 2**

JEFFREY A. SLOTT, ESQ. (SBN 103807)
LAW OFFICES OF JEFFREY A. SLOTT
A Professional Corporation
15760 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone: (818) 995-1955
Facsimile: (818) 995-0955

Attorneys for Plaintiff,
BRIAN G. SHAPIRO, Trustee

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| BRIAN G. SHAPIRO, Trustee of the Jay Jefferey Shapiro Revocable Trust,<br><br>                Plaintiff,<br><br>vs.<br><br>MARIA CECELIA RODRIGUES, an individual; and DOES 1 to 10, inclusive,<br><br>                Defendants. | ) CASE NO: BC 672928<br>) (Unlimited Jurisdiction)<br>)<br>) [Honorable Michael Stern, Dept. "62"]<br>)<br>) Complaint Filed: August 18, 2017<br>)<br>)<br>) **FIRST AMENDED COMPLAINT FOR:**<br>)<br>)   **1. Damages for Breach of**<br>)      **Tenancy Agreement and**<br>)      **Violation of Thirty Day**<br>)      **Notice to Quit;**<br>)   **2. Fraudulent Promises and**<br>         **Concealment;**<br>      **3. Conversion;**<br>      **4. Trespass to Realty;**<br>      **5. Trespass to Chattel;**<br>      **6. Breach of Implied Oral**<br>         **Agreement;**<br>      **7. Breach of Implied Covenant**<br>         **of Good Faith and Fair**<br>         **Dealing;**<br>      **8. Breach of Fiduciary Duty.**<br><br>      Trial Date:   NONE<br>      Discovery Cutoff:<br>      Law/Motion Cutoff: |

- 1 -

PLAINTIFF, Brian G. Shapiro, Trustee of the Jay Jeffery Shapiro Revocable Trust dated February 28, 1997, as modified on May 25, 2017("Trustee"), hereby complains and alleges against Defendants, and each of them, pursuant to this First Amended Complaint ("FAC"), as follows:

## Parties and Common Allegations

1.  At all times herein mentioned, Plaintiff, Brian G. Shapiro, was and now is a resident of the County of Los Angeles, State of California, and has been so domiciled for at least the past 40 years.  Plaintiff is the Trustee of the Jay Jeffery Shapiro Revocable Trust dated February 28, 1997, as amended in its entirety on May 25, 2017 ("the Trust").  At all times herein mentioned, the Trustor of the Trust was Jay Jeffery Shapiro ("Decedent") who became deceased on July 9, 2017.  At all times herein mentioned, Plaintiff was the brother of Decedent with whom Plaintiff had a close personal relationship.  At the time of his death, Decedent was proximately 67 years old.

2.  At all times herein mentioned, Defendant Maria Cecelia Rodrigues and DOES 1 through 10, inclusive, and each of them, were and now are an individuals, who at the time this action was filed, were residents of the County of Los Angeles, State of California, and had been so domiciled for at least the past 5 years (collectively "Rodrigues").

/ / /

/ / /

- 2 -

3.   At all times herein mentioned, Rodrigues was the
concubine of Decedent until his death, for proximately the last 5
years of his life.  For proximately 5 years prior to the death of
Decedent, Rodrigues cohabitated with Decedent at that certain
premises commonly known as 2468 Nailin Drive, Los Angeles,
California 90077 (the "Property").  At all times herein
mentioned, the Property was owned by Plaintiff and prior to the
death of Decedent, was controlled by Decedent by virtue of his
role as Trustee of the Trust prior to his death.

4.   At all times herein mentioned, Plaintiff was and now is
unaware of the true names and capacities, whether individual,
corporate, associate or otherwise, of Defendants and DOES 1
through 10, inclusive, and each of them, and therefore sues said
Defendants by such fictitious names.  Plaintiff will seek leave
of Court to amend this FAC accordingly when the true names and
capacities of Defendants have been ascertained.

5.   At all times herein mentioned, Defendants, and each of
them, were and now are the agents, employees, joint venturers,
partners, shareholders, officers, directors, co-conspirators, and
co-tortfeasors and alter egos of each of the other Defendants
named herein and in doing the things hereinafter alleged, were
acting within their individual capacities, in their corporate
capacities and within the course and scope of their authority as
such agents, employees, joint venturers, partners, shareholders,

- 3 -

1   officers, directors, co-conspirators, co-tortfeasors and alter

2   egos.

3       6.   On or about December 31, 2015, Defendants, and each of

4   them, entered into a written agreement with Plaintiff dated

5   December 19, 2015 and entitled Memorandum of Understanding.  A

6   true and correct copy of the aforesaid Memorandum of

7   Understanding dated December 19, 2015 is attached hereto as

8   Exhibit "1" and is incorporated herein by this reference.

9

10      7.   At all times herein mentioned, Defendants, and each of

11  them, never provided any assistance to Decedent regarding pet

12  care, household maintenance, or household management tasks, nor

13  did Defendants invest any personal time performing any such tasks

14  while residing at the Property.

15

16      8.   On or about July 12, 2017, six (6) days after the death

17  of Decedent, Plaintiff met with Rodrigues at the Property ("the

18  Meeting").  During the Meeting, Plaintiff explained to Rodrigues

19  that he is now the Trustee and owner of the Property, that he

20  expected the full cooperation of Rodrigues in allowing Plaintiff

21  to enter the Property from time to time to inventory and take

22  possession of Decedent's personal property, family heirlooms, and

23  certain assets located at the Property which belong to the Trust.

24  The Trustee further discussed with Rodrigues on that date that

25  she was named in the Trust under a sub-Trust provision to serve

26  as sub-Trustee of that certain Trust asset known as Sammy the

27  Cat.  The Trustee then explained to Rodrigues that she would be

28  - 4 -

charged with caring for Sammy the Cat under the strict terms of the Trust, that she would receive a monthly stipend for doing so and that the sub-Trust had a budget of $25,000.00.  There and then, Rodrigues accepted such role and agreed to abide by the terms of the Trust in regard thereto.

9.   At the Meeting, Rodrigues promised the Trustee that she would grant the Trustee regular and unrestricted access to the Property, that she would cooperate with the Trustee fully in regard to the Trustee's desire to inventory and take possession of Trust assets and assets of the Decedent, and that she would not interfere with the Trustee's duties under the Trust.  At that time, Rodrigues also represented to the Trustee that she did not know how to access, utilize or maintain the alarm system at the Property, but she assured the Trustee that she would keep the Property and Sammy the Cat safe and secure.

10.   On or about July 15, 2017, the Trustee drove to the Property and noticed that the garage door was wide open.  The Trustee telephoned Rodrigues on her cellular telephone and upon doing so, determined that Rodrigues was not at the Property.  The Trustee notified Rodrigues that the garage door had been left open, and that it was his intention to enter the home for purposes of securing it and to retrieve a family heirloom.  In response, Rodrigues lied to the Trustee, telling the Trustee that she had closed the garage door.  The Trustee then attempted to enter the home through the front door and determined that

- 5 -

1  Rodrigues, without the Trustee's knowledge or consent, had

2  changed the locks on the doors to the Property.  When the Trustee

3  confronted Rodrigues concerning this matter by immediately

4  calling her again on her cellular telephone, she admitted that

5  she had changed the locks, claiming that she did so for the

6  safety of her and Sammy the Cat.  The Trustee then entered the

7  open garage and determined that the door from the garage to the

8  home was unlocked, thereby making the home completely accessible

9

10 to anyone who wished to enter it, including potential burglars,

11 trespassers and the like.  However, when the Trustee entered the

12 home through the garage door, the Property alarm sounded.  Upon

13 bringing this matter to the attention of Rodrigues, she then

14 confessed that she had lied and that she knew the alarm code.

15 She thereupon provided the alarm code to the Trustee.

16

17    11.   When Rodrigues returned to the Property on

18 July 15, 2017, she again met with the Trustee. At this meeting

19 at the Property (the "Second Meeting"), Rodrigues apologized for

20 her prior falsehoods, for changing the locks at the Property and

21 for leaving the garage door open.  She then promised the Trustee

22 that she would not undertake such conduct again, that she would

23 not interfere with the Trustee's duties under the Trust, and

24 that she would cooperate with the Trustee fully in connection

25 with his efforts to comply with the Trust terms.  At that time,

26

27 the Trustee notified Rodrigues that it was the intention of the

28 Trustee to list the Property for sale immediately, and that the

- 6 -

1  Trustee expected her full cooperation in regard thereto.
2  Rodrigues agreed to cooperate. Rodrigues initially cooperated
3  by allowing a realtor solicited by the Trustee to inspect the
4  Property on July 16, 2017.

5      12.  On July 15, 2017, at the Second Meeting and on July 16,
6  2017, during the realtor's inspection, Rodrigues was informed
7  that the Trustee intended to list the Property for sale quickly,
8  that Rodrigues was expected to vacate the premises as soon as
9
10 practical and that she would be expected to cooperate fully with
11 the Trustee and the realtor to get the Property listed and allow
12 open houses, showings, etc. On both dates, Rodrigues verbally
13 and unconditionally so agreed to cooperate.

14     13.  Despite her numerous promises and reassurances to the
15 Trustee, Rodrigues failed and refused to cooperate with the
16 Trustee after July 16, 2017. From July 17, 2017 and continuing
17
18 thereafter until August 27, 2017, Defendant Rodrigues failed and
19 refused to voluntarily vacate the Property despite the Trustee's
20 request that she do so by August 17, 2017. On or about July 18,
21 2017, Defendant Rodrigues was served with a 30-Day Notice to Quit
22 with regard to the Property. Pursuant to the terms of the
23 aforesaid Notice to Quit, Defendant Rodrigues was required to
24 vacate the Property by midnight on August 17, 2017. Defendant
25 Rodrigues refused to vacate the Property until August 27, 2017,
26
27 and then only after the Trustee was required to file an Unlawful
28 Detainer lawsuit against her.

- 7 -

14. Between July 16, 2017 and August 27, 2017, Defendant Rodrigues remained in sole possession of the Property, denied access to the Property to the Trustee, refused to allow the Trustee to enter the premises, and refused to allow the Trustee to inventory or retrieve personal belongings owned by the Trust and/or Decedent, including family heirlooms. Rodrigues also refused to transfer the utilities at the Property to her name and refused to allow anyone access to the Property, including Plaintiff's realtor and any prospective buyers. Consistent with her obstreperous and uncooperative behavior, Defendant Rodrigues changed the door locks at the Property at least one more time between July 16, 2017 and August 27, 2017 after agreeing not to do so.

15. The Complaint in this case was filed on August 18, 2017. Between August 18, 2017 and August 25, 2017, Defendant Rodrigues evaded Service of Process of the Summons and Complaint in this case, in violation of California law.

16. From August 27, 2017 and continuing through the present, Defendant Rodrigues has failed and refused to allow Plaintiff to verify that Sammy the Cat is alive, that Sammy the Cat is being cared for properly under the terms of the Trust, the address where Sammy the Cat is being housed, and access to the veterinary medical records relating to Sammy the Cat.

/ / /

/ / /

- 8 -

**FIRST CAUSE OF ACTION**

**(Damages for Breach of Tenancy Agreement and Violation**

**of Thirty Day Notice to Quit as Against All Defendants)**

17. Plaintiff refers to the allegations set forth in Paragraphs 1 through 16 above and incorporates same herein by this reference.

18. On or about December 31, 2015, Defendants, and each of them, entered into the written agreement attached hereto as Exhibit "1" with Plaintiff by and through Plaintiff's predecessor, the Decedent who was then acting as Trustee of the Trust, pursuant to which Defendants, and each of them, agreed to pay rent at the Property in the sum of $1,500.00 per month from and after December 31, 2015 for as long as said Defendants continued to occupy the Property. In accordance with the terms of Exhibit "1" the aforesaid written agreement, Defendants, and each of them, agreed to vacate the Property upon 72 hours notice and thereupon to remove all of said Defendant's personal belongings from the Property.

19. From or about December 31, 2015, and continuing through the present, Defendants, and each of them, failed and refused and continued to fail and refuse to pay rent to the Trust in any amount, despite demand therefor by Decedent and Plaintiff verbally and in writing on numerous occasions after December 31, 2015.

/ / /

20.   Decedent and Plaintiff have performed all promises,
covenants and obligations required of them and the Trust under
the terms of the aforesaid written agreement, except for those
terms of which have been waived or excused by Defendants and each
of them.

21.   As a direct and proximate result of the aforesaid
breach of written agreement by Defendants and each of them, as
heretofore alleged, Plaintiff has suffered consequential and
compensatory damages in the form of unpaid rent in the proximate
sum of $27,600.00, the exact amount of which will be established
at Trial according to proof.  The exact amount of past due rent
is unknown to Plaintiff at this time.  Plaintiff will seek leave
of Court to amend this this FAC accordingly when the exact nature
and extent of all such damages has been ascertained.

22.   As a further direct and proximate result of
Defendant's refusal to vacate the Property on or before August
27, 2017, Plaintiff has sustained damages equal to the reasonable
rental value of the Property from and after July 18, 2017 in the
proximate sum of $8,500.00 per month.  The exact amount of
Plaintiff's damages resulting from said Defendant's conduct in
refusing to vacate the Property is unknown to Plaintiff at this
time.   Plaintiff will seek leave of Court to amend this FAC
accordingly when the exact nature and extent of all such damages
has been ascertained.

/ / /

- 10 -

23.   As a further direct and proximate result of the aforesaid breach of written agreement, Plaintiff has suffered Property damage to the Property and to contents of the Property, including furniture, fixtures, structures and appurtenances all in a certain but presently unascertainable sum.   Plaintiff will seek leave of Court to amend this FAC accordingly when the exact nature and extent of all such damages has been ascertained.

24.   As a further direct and proximate result of the aforesaid breach of written agreement, and Defendant's refusal to vacate the premises, Plaintiff has sustained compensatory and consequential damages based upon said Defendant's failure and refusal to permit Plaintiff and his realtor to enter the Property, by failing and refusing to permit Plaintiff and his realtor to list the Property for sale, and by said Defendant's failure and refusal to cooperate with Plaintiff and his realtor in connection with their intentions and efforts to sell the Property, all to Plaintiff's damage in a certain but presently unascertained sum.   Plaintiff will seek leave of Court to amend this FAC accordingly when the exact nature and extent of all such damages has been ascertained.

25.   As a further direct and proximate result of the breach of written agreement and refusal to vacate the Property, Plaintiff has sustained damages for utility expenses at the Property, including gas, electric, water and other such utilities all to Plaintiff's damage in a certain but presently

- 11 -

1  unascertained sum. Plaintiff will seek leave of Court to amend
2  this FAC accordingly when the exact nature and extent of all such
3  damages has been ascertained.

4  26. At all times herein mentioned, Defendants are named in
5  the Trust as a beneficiary designated to receive a distribution
6  from the Trust in the sum of $50,000.00. Plaintiff hereby seeks
7  an Order to setoff any and all of Plaintiff's damages to which
8  Plaintiff is entitled herein as against Defendant's beneficial
9  interest in the Trust.
10

11              **SECOND CAUSE OF ACTION**

12          **(Conversion As Against All Defendants)**

13  27. Plaintiff refers to the allegations set forth in
14  Paragraphs 1 through 16 above and incorporates same herein by
15  this reference.

16  28. At all times herein mentioned, all of Decedent's money
17  and personal belongings were and now are assets of the Trust and
18  therefore owned by Plaintiff. Included in such assets were and
19  now are Decedent's gold necklace, Decedent's heirloom diamond
20  ring from his father, Decedent's household belongings, furniture,
21  and fixtures, Decedent's bank accounts, cash and all items in his
22  personal safe located at the Property (collectively "the Personal
23  Property"). Included in the items of Personal Property are a
24  blue bedspread handmade by Decedent's mother, kitchen appliances,
25  including a coffeemaker, and other items of personally, the
26  specific identity of which Plaintiff has not yet ascertained.
27
28

Plaintiff will seek leave of Court to amend this FAC accordingly when the exact identification and description of all such items has been ascertained.

29.   From or about July 10, 2017 and continuing through the present, Plaintiff has had and continues to have the sole and exclusive right to immediate possession of the Personal Property which Defendants, and each of them, continue to hold, possess and deny Plaintiff access to, all to the exclusion of Plaintiff. Such conduct on the part of Defendants, and each of them, constitutes conversion of the Personal Property by Defendants, and each of them.

30.   On several occasions since July 10, 2017, Plaintiff has demanded of Defendants, and each of them, that they release and deliver to Plaintiff all of the Personal Property. Notwithstanding said demand by Plaintiff, Defendants, and each of them, continue to possess, hold and control the Personal Property to the exclusion of Plaintiff.

31.   As a direct and proximate result of the aforesaid conversion of the Personal Property by Defendants, and each of them, Plaintiff has been damaged in a certain but presently unascertained sum in excess of $50,000.00, including sums expended by Plaintiff in pursuit of recovery of the Personal Property, loss of use of the Personal Property and the value of the Personal Property.

/ / /

32.   The aforesaid conduct by said Defendants, and each of them, was willful, intentional, malicious, fraudulent and was undertaken in conscious disregard for the rights of Plaintiff with the sole and exclusive purpose of causing damage to Plaintiff in retaliation for Plaintiff's request that said Defendants vacate the Property in a timely manner.  Plaintiff is therefore entitled to and hereby seeks an award of exemplary and punitive damages in a sum to be determined according to proof.

33.   At all times herein mentioned, Defendants are named in the Trust as a beneficiary designated to receive a distribution from the Trust in the sum of $50,000.00.  Plaintiff hereby seeks an Order to setoff any and all Plaintiff's damages to which Plaintiff is entitled herein as against Defendant's beneficial interest in the Trust.

### THIRD CAUSE OF ACTION.

#### (Fraud As Against All Defendants)

34.   Plaintiff refers to the allegations set forth in Paragraphs 1 through 16 and 28 above and incorporates same herein by this reference.

35.   From on or about July 12, 2017 and continuing thereafter through the present, Defendants, and each of them, and in particular, Defendant Rodrigues, made promises and representations on her own behalf to Plaintiff pursuant to which said Defendants promised Plaintiff that in exchange for said Defendants continuing to reside at the Property, said Defendants,

- 14 -

1   and each of them, would cooperate with Plaintiff and Plaintiff's
2   realtor in connection with Plaintiff's intention and desire to
3   sell the Property.  In accordance with said promises and
4   representations, Defendants, and each of them, and in particular,
5   Defendant Rodrigues, told Plaintiff on July 12, 2017, July 15,
6   2017 and July 16, 2017 that Plaintiff and his realtor could list
7   the Property for sale, that Plaintiff and his realtor would have
8
9   virtually unlimited access to the Property to show the Property
10  to prospective buyers, to prepare the Property for sale, to
11  inventory the Personal Property and to inspect the Property from
12  time to time.

13      36.  At all times herein mentioned, Plaintiff was justified
14  in relying upon and did so rely upon the aforesaid promises and
15  representations of Defendants, and each of them, all to
16  Plaintiff's detriment.  Plaintiff was justified in detrimentally
17  relying upon such promises and representations due to the manner
18  in which they were personally conveyed to Plaintiff on July 12,
19
20  2017, July 15, 2017 and July 16, 2017.  At the time said promises
21  and representations were conveyed to Plaintiff by Defendants, and
22  each of them, Plaintiff had no reason to disbelieve Defendants,
23  and each of them, because at that time Plaintiff had no knowledge
24  of the incredible lack of integrity, history of litigation and
25  malicious intentions of Defendants, and each of them, including
26  Defendant Rodrigues.
27

28  / / /

- 15 -

37.  From on or about July 18, 2017, and continuing thereafter on numerous occasions, Plaintiff requested of Defendants, and each of them, that Defendants relinquish possession of, release, turn over and deliver to Plaintiff the Personal Property.  Since that date, Defendants, and each of them, have denied having possession of the Personal Property and have falsely concealed the fact that said Defendants, and each of them, do in fact have possession thereof.  The concealment of such material information from Plaintiff constitutes fraud and deceit on the part of said Defendants, and each of them.

38.  At all times herein mentioned, Defendants, and each of them, through Defendant Rodrigues, made the aforesaid promises and representations with no intention of performing them.  From on or about July 16, 2017 and continuing thereafter through August 27, 2017, Defendants, and each of them, including Defendant Rodrigues, changed the locks at the Property several times, refused to permit Plaintiff and Plaintiff's realtor to enter the Property, refused to permit Plaintiff to recover the Personal Property and refused to cooperate with Plaintiff and Plaintiff's realtor in connection with listing the Property for sale, all while Defendants, and each of them, refused to vacate the Property and insisted upon living there indefinitely and without paying rent.

/ / /

/ / /

- 16 -

39.   From on or about July 17, 2017, and continuing thereafter, Defendants, and each of them, including and specifically Defendant Rodrigues, have represented that Sammy the Cat is alive and is healthy.  In accordance with said representations, Defendants, and each of them, have reassured Plaintiff in writing that Sammy the Cat is being cared for by one or more veterinarians.  Plaintiff is informed and believes and based thereon alleges that the aforesaid representations by said Defendants, and each of them, with regard to Sammy the Cat are false.

40.   The true facts are that Sammy the Cat is either deceased or is not being cared for by Defendants.  Rather, Defendants have and are caring for a black cat by the name of Giovanni which Defendants, and each of them, are using as an imposter for Sammy the Cat.  Plaintiff is informed and believes and thereupon alleges that Giovanni has been the subject of veterinary care for which said Defendants, and each of them, have submitted reimbursement claims to Plaintiff and which Plaintiff has paid in part.

41.   As a direct and proximate result of the aforesaid fraudulent promises, misrepresentations and fraudulent concealments by said Defendants, and each of them, with no intention of performing said promises or disclosing said concealments to Plaintiff, Plaintiff has been damaged in a sum in excess of $50,000.00.

42.   Said Defendants, and each of them, in making the aforesaid false promises without the intent to perform, by concealing and suppressing the aforesaid material information and by misrepresenting the status and whereabouts of Sammy the Cat through the aforesaid fraudulent scheme, have acted fraudulently, deceitfully, willfully, wantonly and in conscious disregard for the rights of Plaintiff.  Such conduct on the part of Defendants, and each of them, was and is outrageous and despicable.   The aforesaid conduct by Defendants, and each of them, was undertaken with oppression, fraud and malice, in retaliation for Plaintiff's request that Defendants vacate the Property in a timely manner. Plaintiff is therefore entitled to and hereby requests an award of exemplary and punitive damages in a sum to be determined according to proof.

43.   At all times herein mentioned, Defendants are named in the Trust as a beneficiary designated to receive a distribution from the Trust in the sum of $50,000.00.  Plaintiff hereby seeks an Order to setoff any and all Plaintiff's damages to which Plaintiff is entitled herein as against Defendant's beneficial interest in the Trust.

### FOURTH CAUSE OF ACTION

**(Trespass To Realty as Against All Defendants)**

44.   Plaintiff refers to the allegations set forth in Paragraphs 1 through 16 above and incorporates same herein by this reference.

- 18 -

45.   From on or about July 18, 2017 through August 27, 2017, Defendants, and each of them, continued to occupy the Property, continued to enter and store her personal belongings at the Property, and continued to deny Plaintiff access to the Property. Plaintiff is informed and believes and thereon alleges that after August 27, 2017, Defendants, and each of them, entered the Property without the knowledge or consent of Plaintiff for various purposes, including the retrieval of personal belongings, to retrieve mail, and for other purposes unknown to Plaintiff at this time.   The aforesaid conduct on the part of Defendants, and each of them, constitutes a trespass on the land owned by Plaintiff.

46.   As a direct and proximate result of the aforesaid trespass to realty by Defendants, and each of them, Plaintiff has suffered damages in a certain, but presently unascertained sum in excess of $50,000.00.   Plaintiff will seek leave of Court to amend this FAC accordingly when the exact nature and extent of all such damages has been ascertained.

47.   The aforesaid conduct on the part of Defendants, and each of them, was and is intentional, wanton, reckless, wrongful, malicious and oppressive, and was undertaken in conscious disregard for the rights of Plaintiff.   Plaintiff is therefore entitled to and hereby seeks an award of exemplary and punitive damages in a sum to be determined according to proof.

/ / /

48. At all times herein mentioned, Defendants are named in the Trust as a beneficiary designated to receive a distribution from the Trust in the sum of $50,000.00. Plaintiff hereby seeks an Order to setoff any and all Plaintiff's damages to which Plaintiff is entitled herein as against Defendant's beneficial interest in the Trust.

## FIFTH CAUSE OF ACTION

### (Trespass To Chattel As Against All Defendants)

49. Plaintiff refers to the allegations set forth in Paragraphs 1 through 16 and 38 above and incorporates same herein by this reference.

50. In taking possession of the Personal Property, Defendants, and each of them, caused interference with Plaintiff's sole and exclusive right to the use and possession of the Personal Property, thus constituting a trespass to Plaintiff's chattel, all to Plaintiff's damage as hereinafter alleged.

51. As a direct and proximate result of the aforesaid interference with Plaintiff's sole and exclusive possessory rights in and to the Personal Property, Plaintiff has been damaged in a certain, but presently unascertained sum. Plaintiff will seek leave of Court to amend this FAC accordingly when the exact nature and extent of all such damages has been ascertained.

52. At all times herein mentioned, Defendants are named in

- 20 -

1   the Trust as a beneficiary designated to receive a distribution

2   from the Trust in the sum of $50,000.00.  Plaintiff hereby seeks

3   an Order to setoff any and all Plaintiff's damages to which

4   Plaintiff is entitled herein as against Defendant's beneficial

5   interest in the Trust.

6                          **SIXTH CAUSE OF ACTION**

7   **(Breach of Implied Oral Agreement As Against All Defendants)**

8       53.   Plaintiff refers to the allegations set forth in

9

10  Paragraphs 1 through 16 above and incorporates same herein by

11  this reference.

12      54.   On or about July 16, 2017, and on several occasions

13  thereafter, orally and thereafter confirmed in writing,

14  Defendants, and each of them, including Defendant Rodrigues,

15  agreed to keep possession of Sammy the Cat with the understanding

16  and agreement that said Defendants would care for Sammy the Cat,

17  provide a home, living arrangements, food, shelter and a

18
    livelihood for Sammy the Cat for as long as he remains alive,
19
20  would make reasonable best efforts to keep Sammy the Cat alive,

21  would take Sammy the Cat for veterinary care as and when

22  reasonably required or needed, and would otherwise serve as the

23  caretaker for Sammy the Cat and keep him safe, all in accordance

24  and in compliance with the terms of the Trust.  Implied in the

25  aforesaid oral agreement was the obligation of Defendants, and

26
    each of them, to keep the Trustee regularly advised as to the
27
28  status of Sammy the Cat's existence and well being, living

                              - 21 -

arrangements, and medical care, including the specific address where Sammy the Cat lives, so that his survival, care, well being and maintenance can be verified by the Trustee from time to time.

55.   From on about August 27, 2017 and continuing thereafter through the present, Defendants, and each of them, breached the aforesaid implied oral agreement by failing and refusing to provide the Trustee with the address where Sammy the Cat resides and any other description of his whereabouts, existence and survival.

56.   As a direct and proximate result of Defendants' breach of the aforesaid implied oral agreement as heretofore alleged, Plaintiff hereby seeks rescission of the aforesaid oral agreement and an order requiring Defendants, and each of them, to turn over and deliver Sammy the Cat to the Trustee forthwith. Plaintiff is entitled to and hereby seeks a Temporary Restraining Order, Preliminary Injunction preventing Defendants, and each of them, from relocating, ignoring or otherwise refusing to comply with Defendants' obligations under the Trust to care for Sammy the Cat pending delivery of him to the Trustee and for a Mandatory Injunction compelling said Defendants to turn over and deliver Sammy the Cat to the Trustee.

/ / /

/ / /

/ / /

/ / /

### SEVENTH CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and

### Fair Dealing as Against All Defendants)

57. Plaintiff refers to the allegations set forth in Paragraphs 1 through 16, 28, 29, 30, 34 through 40, 45, 54 and 55 above and incorporates same herein by this reference.

58. At all times herein mentioned, there existed an implied covenant of good faith and fair dealing as among Plaintiff and Defendants, and each of them, with regard to the obligations of Defendants under the terms of the Trust, the obligations of Defendants, and each of them, under the terms of the agreement attached hereto as Exhibit "1", the obligations of Defendants, and each of them, while in possession of the Property and the Personal Property, and the obligations of Defendants, and each of them, under the aforesaid implied contract relating to Sammy the Cat. In accordance with said implied covenant of good faith and fair dealing, Defendants, and each of them, were under a duty to act in good faith and with fair dealings, in an honest manner ensuring to the best of their ability that Plaintiff would receive the benefit of the aforesaid agreements and Defendants' performance of their obligations as heretofore alleged.

59. From on or about July 17, 2017, and continuing thereafter on numerous occasions, the specific dates of which are presently unknown to Plaintiff, Defendants, and each of them, breached the aforesaid implied covenant of good faith and fair

1  dealing by frustrating the benefits that Plaintiff was to receive
2  pursuant to the aforesaid agreements and performance of which
3  said Defendants were obligated. Specifically, Defendants, and
4  each of them, breached the aforesaid covenant of good faith and
5  fair dealing by failing to cooperate with the Trustee in
6  connection with the Property, by failing to vacate the Property
7  in a timely manner, by failing to pay rent at the Property, by
8
9  converting the Personal Property, by defrauding Plaintiff as
10  heretofore alleged, and by breaching Defendants' implied contract
11  with Plaintiff astoherefor alleged.

12      60.  As a direct and proximate result of the aforesaid
13  breach of the implied covenant of good faith and fair dealing by
14  said Defendants, and each of them, Plaintiff has sustained
15  damages in a certain, but presently unascertained sum.  Plaintiff
16  will seek leave of Court to amend this FAC accordingly when the
17
18  exact nature and extent of all such damages has been ascertained.

19      61.  The aforesaid conduct of said Defendants, and each of
20  them, was intentional, wanton, willful, fraudulent, deceitful and
21  malicious, and was undertaken in conscious disregard for the
22  rights of Plaintiff.  Such conduct was, by even by the lowest
23  standards, outrageous and despicable.  Plaintiff is therefore
24  entitled to and hereby seeks an award of exemplary and punitive
25  damages in a sum to be determined according to proof.
26
27  / / /
28  / / /

- 24 -

62.   At all times herein mentioned, Defendants are named in the Trust as a beneficiary designated to receive a distribution from the Trust in the sum of $50,000.00.  Plaintiff hereby seeks an Order to setoff any and all Plaintiff's damages to which Plaintiff is entitled herein as against Defendant's beneficial interest in the Trust.

### EIGHTH CAUSE OF ACTION

**(Breach of Fiduciary Duty as Against All Defendants)**

63.   Plaintiff refers to the allegations set forth in Paragraphs 1 through 16, 28, 29, 30, 34 through 40, 45, 54 and 55 above and incorporates same herein by this reference.

64.   At all times herein mentioned, Defendants, and each of them, by virtue of their role as a sub-Trustee under the Trust owed and continue to owe Plaintiff a fiduciary duty which said duty includes the requirement that said Defendants, and each of them, exercise the highest degree of care, honesty and loyalty in connection with their obligations to ensure the survival, health, maintenance and care, including medical care, of Sammy the Cat.

65.   From on or about August 27, 2017 and continuing through the present, Defendants, and each of them, have failed and refused, and continue to fail and refuse, to meet and perform their express and implied obligations under the Trust and their oral agreement with Plaintiff heretofore alleged.  From July 17, 2017 and continuing through the present, Defendants, and each of them, have further breached their fiduciary duties to Plaintiff

by failing and refusing to cooperate with Plaintiff in connection with the Property, by converting the Personal Property, by defrauding Plaintiff as heretofore alleged, and by refusing to vacate the Property in a timely manner.

66. As a direct and proximate result of the aforesaid breaches of fiduciary duties by Defendants, and each of them, Plaintiff has suffered general damages in a certain, but presently unascertained sum. Plaintiff will seek leave of Court to amend this FAC accordingly when the exact nature and extent of all such damages has been ascertained.

67. As a further direct and proximate result of the aforesaid breaches of fiduciary duties by Defendants, and each of them, Plaintiff has suffered special damages for the out-of-pocket expenses incurred by Plaintiff associated with Plaintiff's attempts to enforce the terms of the Trust and Defendants'' obligations thereunder, all in a certain by presently unascertained sum. Plaintiff will seek leave of Court to amend this FAC accordingly when the exact nature and extent of all such damages has been ascertained.

68. At all times herein mentioned, Defendants are named in the Trust as a beneficiary designated to receive a distribution from the Trust in the sum of $50,000.00. Plaintiff hereby seeks an Order to setoff any and all Plaintiff's damages to which Plaintiff is entitled herein as against Defendant's beneficial interest in the Trust.

WHEREFORE, Plaintiff prays for Judgment against Defendants, and each of them, as follows:

**FIRST CAUSE OF ACTION**

1.    For consequential and compensatory damages according to proof;

2.    For specific performance and/or partial rescission of some of or all of the terms of the contract;

3.    For an Order to setoff any and all of Plaintiff's damages to which Plaintiff is entitled as against Defendant's beneficial interest in the Trust;

4.    For prejudgment interest according to proof;

5.    For costs of suit incurred herein; and

6.    For such other and further relief as the Court may deem just and proper.

**SECOND CAUSE OF ACTION**

1.    For general damages according to proof;

2.    For special damages for out-of-pocket expenses incurred in pursuit of the converted Property, including reasonable attorney's fees;

3.    For an Order to setoff any and all of Plaintiff's damages to which Plaintiff is entitled as against Defendant's beneficial interest in the Trust;

4.    For prejudgment interest according to proof;

5.    For punitive and exemplary damages according to proof;

6.    For costs of suit incurred herein; and

7.    For such other and further relief as the Court may deem just and proper.

## THIRD CAUSE OF ACTION

1.    For general damages according to proof;

2.    For special damages for out-of-pocket expenses associated with Plaintiff's obligations to protect and secure Trust property as a result of Defendants' conduct;

3.    For punitive and exemplary damages according to proof;

4.    For an Order to setoff any and all of Plaintiff's damages to which Plaintiff is entitled as against Defendant's beneficial interest in the Trust;

5.    For prejudgment interest according to proof;

6.    For costs of suit incurred herein; and

7.    For such other and further relief as the Court may deem just and proper.

## FOURTH CAUSE OF ACTION

1.    For damages according to proof;

2.    For injunctive relief to prevent further occurrences of trespass by Defendants;

3.    For an Order to setoff any and all of Plaintiff's damages to which Plaintiff is entitled as against Defendant's beneficial interest in the Trust;

4.    For prejudgment interest according to proof;

5.    For costs of suit incurred herein; and

6. For such other and further relief as the Court may deem just and proper.

## FIFTH CAUSE OF ACTION

1. For damages according to proof;

2. For an Order compelling Defendants to return the chattel to Plaintiff;

3. For an Order to setoff any and all of Plaintiff's damages to which Plaintiff is entitled as against Defendant's beneficial interest in the Trust;

4. For prejudgment interest according to proof;

5. For costs of suit incurred herein; and

6. For such other and further relief as the Court may deem just and proper.

## SIXTH CAUSE OF ACTION

1. For consequential and compensatory damages according to proof;

2. For specific performance and/or partial rescission of some of or all of the terms of the contract;

3. For an Order to setoff any and all of Plaintiff's damages to which Plaintiff is entitled as against Defendant's beneficial interest in the Trust;

4. For prejudgment interest according to proof;

5. For costs of suit incurred herein; and

6. For such other and further relief as the Court may deem just and proper.

- 29 -

**SEVENTH CAUSE OF ACTION**

1. For consequential and compensatory damages according to proof;

2. For an Order to setoff any and all of Plaintiff's damages to which Plaintiff is entitled as against Defendant's beneficial interest in the Trust;

3. For prejudgment interest according to proof;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court may deem just and proper; and

**EIGHTH CAUSE OF ACTION**

1. For general damages according to proof;

2. For special damages for out-of-pocket expenses incurred in protection of Trust assets as the result of Defendants' conduct;

3. For an Order to setoff any and all of Plaintiff's damages to which Plaintiff is entitled as against Defendant's beneficial interest in the Trust;

4. For prejudgment interest according to proof;

5. For punitive and exemplary damages according to proof;

/ / /

/ / /

/ / /

/ / /

/ / /

- 30 -

6.    For costs of suit incurred herein; and

7.    For such other and further relief as the Court may deem just and proper.

DATED:  October 13, 2017        LAW OFFICES OF JEFFREY A. SLOTT
                                A Professional Corporation


                                By:_____
                                   JEFFREY A. SLOTT, ESQ.
                                   Attorneys for Plaintiff,
                                   BRIAN G. SHAPIRO, Trustee

- 31 -

## MEMORANDUM OF UNDERSTANDING
### December 19, 2015

I, Maria Cecilia Rodrigues ("CR") hereby agree and fully acknowledge that I am and have always been a temporary resident at 2468 Nalin Dr., Los Angeles, California 90077 ("Property") solely owned by Jay Shapiro, a Single Man("JS") and that:

1. CR has no ownership in the Property or any personal property therein except for items specifically listed on Exhibit A "Rodrigues Personal Property" attached hereto.

2. JS has made NO promise, express or implied, with regard to any future ownership of Property or any relationship with or between CR and JS which would change CR present status of Single Woman residing in Property on an "AT WILL" basis.

3. CR has a rent obligation of $1,500.00 per month during her use of Property which can be fully relieved by JS in exchange for CR personal time invested in assistance regarding pet care, household maintenance, and household management tasks to be so designated by JS.

4. Either party to this agreement may terminate such, without cause, upon 72 hours notice. Termination will result in full removal of personal property on Exhibit A only at CR sole cost within the notice period.

Maria Cecilia Rodrigues _____          12/31/15
                                                          Date:

ACCEPTED:
Jay Shapiro _____                      1/1/16
                                                          Date:

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place. My business address is 15760 Ventura Boulevard, Suite 1600, Encino, California 91436. On October 16, 2017, I served the documents described as **SUMMONS ON FIRST AMENDED COMPLAINT AND FIRST AMENDED COMPLAINT**, on the interested parties in this action listed on the attached Service List.

**[ X ]   BY MAIL:** I deposited the sealed envelope with the United States Postal Service with the postage fully prepaid. I placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

**[ ]   BY FACSIMILE:** I transmitted by facsimile machine, to the fax number(s) indicated below, a true and correct copy of the document(s) described above. The foregoing document was served by facsimile and the transmission was confirmed in writing as completed and without error.

**[ ]   OVERNIGHT FEDERAL EXPRESS DELIVERY:** I enclosed the document(s) in an envelope provided by Federal Express and addressed it to the person(s) at the address(es) below. I placed the envelope for collection and overnight delivery in a Federal Express drop box.

**[ ]   BY MESSENGER SERVICE:** I served the documents by placing them in an envelope or package addressed to the person(s) at the address(s) listed below and provided them to a professional messenger service for delivery.

**DECLARATION OF MESSENGER**

**[ ]   BY PERSONAL DELIVERY**: I personally delivered the envelope or package received from the declarant above to the person(s) at the address(es) listed below. For a Party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine (9) in the morning and five (5) in the evening. For a Party, delivery was made to the Party or by leaving the documents at the Party's residence or place of business with some person not younger than 18 years of age between the hours of eight (8) in the morning and six (6) in the evening. At the time of delivery, I was over 18 years of age. I am not a party to the above-reference legal proceeding. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: _____

_____    _____
   Name of Declarant                Signature

**[X]**   (State)  I declare, under penalty of perjury under the laws of the State of California, that the above is true and correct.

**[ ]**   (Federal)  I declare that I am employed in the office of a member of the bar of this court in whose direction the service was made.

    Executed on October 16, 2017, at Encino, California.

                                   _____
                                   Jeffrey A. Slott, Esq.

**SERVICE LIST**

Art Aaronson, Esq.
Aaronson & Aaronson
16133 Ventura Blvd., Suite 675
Encino, CA 91436

# EXHIBIT 2

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

## Probate Division
### Stanley Mosk Dept. - 11,

**17STPB09609**

**In re: The Jay Jeffrey Shapiro Revocable Trust**

**March 8, 2018**
**8:30 AM**

Honorable Barbara R. Johnson, Judge

| | |
|---|---|
| Laura Rowland, Judicial Assistant | Lisa Ridley (#5886), Court Reporter |
| Betzaida Mendez, Court Services Assistant | Charles W Gee, Deputy Sheriff |

**NATURE OF PROCEEDINGS:** Petition - Trust/Pursuant Prob Code Sec 17200 (Initial) filed on October 24, 2017 by Maria Cecilia Rodrigues.

The following parties are present for the aforementioned proceeding:

No appearances.

The matter is called for hearing.

The Court finds that sufficient evidence has been provided to grant the matter on calendar this date based upon the reading of the moving papers and consideration of all presented evidence.

The Court finds that no objections have been filed, therefore they are deemed waived.

The Petition - Trust/Pursuant Prob Code Sec 17200 (Initial) filed on 10/24/2017 by Petitioner Maria Cecilia Rodrigues is granted.

The Court orders the Trustee to distribute the sum of $50,000.00 to Petitioner.

Arthur Aaronson is ordered to prepare the Order After Hearing.

## CLERK'S CERTIFICATE OF MAILING/
## NOTICE OF ENTRY OF ORDER

I, SHERRI R. CARTER, Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Entry of the above minute order of March 8, 2018 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States Mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

| | |
|---|---|
| Dated: March 8, 2018 | By:   /s/ Laura Rowland |
| | Laura Rowland, Deputy Clerk |