KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br>Defendant. | Case No.: 2:16-cv-4435-PA-MRW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND COURT'S SCHEDULING ORDER TO ALLOW SUBSTITUTION OF EXPERT WITNESS**<br><br>Hearing Date: January 20, 2020,<br>Pretrial Conference: January 17, 2020<br>Time: 1:30 PM PST<br>Place: Courtroom 9A<br>Judge: Honorable Percy Anderson<br>Trial Date: February 18, 2020 |

## I.      **INTRODUCTION**

Plaintiffs understand that witnesses can become unavailable for trial due to a variety of reasons outside of counsel's control. Mr. Shapiro's passing, sadly, is one such occurrence. For that reason, Plaintiffs offered Atlantic a reasonable accommodation (one that Atlantic's brief fails to mention):

> Plaintiffs are willing to allow Atlantic to substitute a new expert, provided that she adopts the opinions of Atlantic's former damages expert Mr. Shapiro without introducing new opinions or bases. Srinivasan Decl. ¶¶ 2-4. Plaintiffs' counsel even offered to review and consider agreeing to Atlantic's new expert report if it did no more than reflect her agreement with Mr. Shapiro's analysis. *Id.* ¶ 4.

Atlantic also has the option of playing Mr. Shapiro's videotaped deposition where he explained the bases for his opinion. However, as the very cases Atlantic cites demonstrate, it would be prejudicial and unfair to grant Atlantic a second bite at the apple by allowing it to issue entirely new damages opinions and analyses on the eve of trial (as opposed to having its new expert "step into the shoes" of Mr. Shapiro's prior analysis).

The reason Atlantic seeks a "do-over" is simple: When corrected to account for obvious errors, Mr. Shapiro's methodology shows that Plaintiffs' covered losses are even ***greater*** than the amount Plaintiffs are seeking. While Atlantic's new expert may adopt Mr. Shapiro's opinions, Atlantic should not be permitted to "strengthen its trial position with a new and better expert." *Fidelity Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 308 F.R.D. 649, 653 (S.D. Cal. 2015).

Atlantic's own cited cases refused to allow substitute experts to offer new opinions—as opposed to adopting a prior expert's analysis—on the eve of trial. Instead, "the substitute expert's report and testimony is usually limited to the subject matter and theories already espoused by the former expert." *Chien Van Bui v. City & Cty. of S.F.*, 2018 WL 4959056, at *2 (N.D. Cal. Jan. 31, 2018). This approach avoids the inevitable prejudice resulting from the production of a new and potentially materially different damages expert report one month and one day before trial. Fed. R. Civ. P. 16(b), 37(c).

## II.     BACKGROUND

After learning of Mr. Shapiro's passing between December 9, 2019, and December 11, 2019, Atlantic notified Plaintiffs' counsel of Mr. Shapiro's death and its desire to designate a new damages expert on December 16, 2019. Mtn. at 5-6. Plaintiffs stated that they would not oppose Atlantic substituting a new damages expert so long as she adopted Mr. Shapiro's opinions and analysis; however, they would not agree that Atlantic could introduce new expert opinions. Srinivasan Decl. ¶¶ 2-4. Plaintiffs repeated this position during further meet-and-confer efforts on December 19 and 23. *Id.* Plaintiffs' counsel also stated that they would consider permitting Atlantic's new expert to submit a one- to two-page report explaining the reasoning for her agreement with Mr. Shapiro's analysis.  Srinivasan Decl. ¶ 4. Atlantic declined.

## III.    LEGAL STANDARD

Some courts within the Ninth Circuit analyze the request to substitute a new expert after the disclosure deadline as a motion to amend the scheduling order under Federal Rule of Civil Procedure 16(b)'s good cause standard. *Fidelity Nat'l*, 308 F.R.D. at 652); *Park v. CAS Enterprises, Inc.*, 2009 WL 4057888, at *2 (S.D. Cal. Nov. 18, 2009). Others analyze such requests under Rule 37(c), which bars untimely expert disclosures unless the failure "was substantially justified or is harmless."  *See Nijjar v. Gen. Star Indent. Co.*, 2014 WL 271630, at *2 (C.D. Cal. Jan. 23, 2014). The factors under either approach are "largely coextensive." *Fidelity Nat'l*, 308 F.R.D. at 652. Atlantic's position fails under either test.

## IV.    ARGUMENT

Atlantic has not shown good cause or substantial justification for the relief it seeks: permission to designate a substitute damages expert with no caveats that her report be limited to the opinions, scope, or methodology of her predecessor and to produce her new report just one month and one day before trial.

Atlantic remains free to play Mr. Shapiro's deposition testimony at trial. While Atlantic elected not to question Mr. Shapiro during his deposition, under questioning

2

by Plaintiffs' counsel, Mr. Shapiro explained his opinions and the basis for them. *See* Srinivasan Decl. Ex. 3 (Shapiro Dep.). Moreover, Plaintiffs have agreed that Atlantic may retain a new damages expert, so long as she adopts Mr. Shapiro's opinions and analysis rather than springing new expert opinions on the eve of trial. Permitting Atlantic to produce entirely new expert opinions on the eve of trial would substantially prejudice Plaintiffs and effectively grant Atlantic an impermissible chance to attempt to bolster Mr. Shapiro's flawed damages opinions.

### A.   Atlantic's Own Authorities Support Limiting Any New Damages Expert to Mr. Shapiro's Opinions and Analysis.

Atlantic does not cite a single case allowing the relief it seeks. In every case cited in its motion where the court permitted the designation of a substitute expert, the court did so with significant limitations. Such limitations include (1) requiring the new expert's report to be "substantially similar" to the previous expert's report or (2) mandating that the new expert use the "same general methodology" as the prior expert and that there be no "meaningful changes" from the prior expert's analysis. *See In Re Northrop Grumman Corp. ERISA Litig.*, 2016 WL 6826171, at *4 (C.D. Cal. Apr. 7, 2016); *Lincoln Nat. Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, 2010 WL 3892860, at *3-4 (N.D. Ind. Sept. 30, 2010).

The case Atlantic analyzes in the most depth supports Plaintiffs' position. Mtn. at 8-9. Although the court in *Northrop Grumman* permitted substitution of a new expert after the deadline, it imposed significant limitations that Atlantic ignores. *Northrop Grumman*, 2016 WL 6826171, at *4. Specifically, the court held that the new expert (1) must offer opinions that are "substantially similar" to those of the prior expert and (2) "may not testify in any manner that is contrary to or inconsistent with" the prior expert's report:

> [T]he Court agrees that the purpose of allowing substitution of an expert is to put the movant in the same position it would have been in but for the need to change experts; it is not an opportunity to designate a better expert. Thus, to minimize the risk of prejudice to Defendants, the Court will limit

Witz's testimony to the subject matter covered in Kampner's report, and Witz may not testify in any manner that is contrary to or inconsistent with Kampner's report. In other words, Witz's opinions must be substantial similar to Kampner's opinions for the Court to allow his testimony.

*Id.* (citations and quotations omitted).[1] The court tentatively excluded portions of the new expert's report that exceeded the scope of the prior expert's report. *Id.*

The *Lincoln* decision, also cited by Atlantic, imposed similar limitations. Mtn. at 10 There, the court mandated that "the new damages expert will only be permitted to testify about the same subject matter as the prior expert ***without making any meaningful changes***." *Lincoln*, 2010 WL 3892860, at *1. That is because "courts generally limit the scope of the testimony that may be given by the substitute expert. The introduction of a substitute expert does not ipso facto permit the party requesting the substitution to escape from the concessions or admissions of the previous expert." *Id.* at *2 (quotations and alterations omitted). In *Lincoln*, the court recognized "***the inevitable prejudice that would result if entirely new damages theories were introduced a mere six months from trial***," and held that the substitute expert must employ the "***same general methodology***" as the original expert. *Id.* at *3-4.

Likewise, in *Morel*, also cited by Atlantic, Mtn. at 8, 10, the court restricted the scope of a substitute expert's testimony to the same subject matter as the prior expert's and said that there would be no prejudice "[a]s long as there is ***no meaningful change*** in testimony." *Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 21-22 (D.P.R. 2009) (internal quotation omitted). The court further provided that, "[i]f after the deposition is taken plaintiffs find new material is being covered, they can file the appropriate motions requesting exclusion" of material "beyond the original scope" of the prior expert's report. *Id.* at 21.

Finally, in *Park*, the court allowed the substitution of an expert where the moving party made the "concession that his new expert" would "rely solely on" the expert report

---

[1] Emphases are added unless otherwise noted.

and rebuttal report of his prior expert.  *Park v. CAS Enterprises, Inc.*, 2009 WL 4057888, at \*3 (S.D. Cal. Nov. 19, 2009) (cited in Mtn. at 7).[2]

Atlantic's own authorities fail to support its requested approach.

### B.   Atlantic's Proposed "Re-Do" of Its Damages Analysis Is Prejudicial.

Whether applying Federal Rule of Civil Procedure 16(b) or 37(c), the Court must consider either the prejudice or harm Plaintiffs will experience because of Atlantic's requested relief.  *See Fidelity Nat'l*, 308 F.R.D. at 652.  Atlantic has two options for presenting expert analysis on damages at trial.

*First*, Atlantic may play portions of Mr. Shapiro's deposition. Fed. R. Civ. P. 32(a)(4)("A party may use for any purpose the deposition of a witness, whether or not a party, fi the court finds . . . that the witness is dead . . . ."). While Atlantic chose not to question Mr. Shapiro during his deposition, Mr. Shapiro explained his opinions and the bases for them under questioning by Plaintiffs' counsel. *See* Srinivasan Decl. Ex. 3.

*Second*, Plaintiffs are willing to work with Atlantic to allow it to present a new damages expert in-person, so long as that expert is limited to the opinions, methodology, and analysis espoused by Mr. Shapiro. What Atlantic is not entitled to do, however, is revamp its damages analysis on the eve of trial.

#### 1.   Disclosing New Expert Opinions So Late is Per Se Prejudicial.

Atlantic proposes serving Ms. Rusnak's expert report the day of the Final Pre-Trial Conference, which is one month and one day before trial. Mtn. at 10.

Such belated disclosure of entirely new expert opinions is per se prejudicial. Atlantic's own cited authorities found prejudice from even earlier expert disclosures. In *Fidelity National*, the court held that allowing substitution "on the eve of the pretrial conference would be extremely prejudicial, particularly because it would require

---

[2] Atlantic also cites *Brooks v. Cty. of San Joaquin*, 2012 WL 5928416 (E.D. Cal. Nov. 26, 2012). Mtn. at 8. But in *Brooks*, the party opposing the substitution of a new expert witness argued that the testimony was irrelevant and cumulative and did not oppose the substitution on the same grounds at issue here. *Brooks*, 2012 WL 5928416, at \*1.

5

1   counsel to devote time to expert issues which should be spent preparing for trial." *Id.* at

2   655. In *Lincoln*, the court recognized "the ***inevitable prejudice*** that would result if

3   entirely new damages theories were introduced a mere ***six months*** from trial." *Lincoln*,

4   2010 WL 3892860, at *3-4. Permitting late disclosure may require "postponement of

5   trial," which "would prejudice [Plaintiffs] by delaying final resolution of the dispute, as

6   well as burden the court." *Nijjar*, 2014 WL 271630, at *3. This is precisely why any

7   new expert must be limited to the original expert's opinions. *Chien Van Bui*, 2018 WL

8   4959056, at *2 (holding substitution "at this late date of new opinions" would

9   "prejudice the plaintiffs" and limiting expert to "the subject matter and theories

10  espoused" by original expert).

11       Atlantic's claim that, because Mr. Shapiro is unavailable, it now has "no material

12  means to challenge Plaintiffs' damages claim" is mistaken. Mtn. at 6. *First*, Atlantic

13  remains free to rely on Mr. Shapiro's videotaped deposition. *Fidelity Nat'l*, 308 F.R.D.

14  at 653 ("[T]his Court rejects NU's assertion that it will be prejudiced if it proceeds to

15  trial without being able to proffer live testimony from Mr. Felton, as it is free to rely on

16  and submit his deposition testimony given his unavailability to testify personally.").

17  *Second*, Plaintiffs are willing to permit Atlantic to bring a new expert live to trial, so

18  long as she is limited to the opinions, methodology, and analysis previously advanced

19  by Dr. Shapiro. This approach would permit Atlantic to "rebut Plaintiffs' expert's

20  testimony," Mtn. at 6, without prejudicing Plaintiffs with a new damages analysis on

21  the eve of trial.

22              **2.      Atlantic Improperly Seeks to Strengthen Its Trial Position.**

23       Given the above, the likely reason for Atlantic's refusal to be bound by Mr.

24  Shapiro's opinions is that it wishes to abandon Mr. Shapiro's flawed analysis. The

25  reason is simple: Mr. Shapiro's own methodology would support even greater covered

26  losses under the Policy than Plaintiffs seek to recover.

27       Under the Policy, Atlantic agreed to pay "such loss . . . as you sustain by reason

28  of such extra expense you necessarily incur as a result of the interruption, postponement,

cancellation, relocation, curtailment, or abandonment of an Insured Production due to . . . [i]mminent peril . . . ." Srinivasan Decl. Ex. 1 at 13 (ATL003103).  The "amount of your loss will be determined based on . . . [a]ll necessary 'Insurable Production Cost' you incur to complete the 'Insured Production' that exceeds the amount of 'Insurable Production Cost' you would have incurred if the covered cause of the loss had not been incurred." *Id.* at 16 (ATL003106). In turn, "'Insurable Production Cost' includes: all costs . . . chargeable directly to an 'Insured Production' or series of productions." *Id.* at 9 (ATL003081).

Plaintiffs' expert calculated these amounts to be approximately **$7.1 million**, which included (1) duplicated expenses that Plaintiffs were forced to spend in New Mexico and Croatia on episodes 2-6 after having already incurred such expenses in Israel and (2) additional compensation required by the Screen Actors Guild in the United States that would not have been required in Israel. While Mr. Shapiro purported to dispute this number, his own methodology would actually yield a greater damages figure.

a.   Mr. Shapiro Miscalculated Plaintiffs' Incremental Costs.

According to Mr. Shapiro, the correct method for determining the maximum extra expenses to which Plaintiffs may be entitled is to (1) "identif[y] the TOTAL costs to produce these episodes" 2-6 (*i.e.*, the "Actual Costs") and (2) "then subtract[] from that total the amount Plaintiffs expected to spend when they planned to produce the entirety of these five episodes in Israel" (*i.e.*, the "Budgeted Costs"), as shown below:

| | |
|---|---|
| Costs Actually Incurred (eps. 2-6) | $ 21,464,745 (a) |
| Israeli Cost Data (eps. 2-6) | ($17,535,425) ( b) |
| | $  3,929,320 |

Srinivasan Decl. Ex. 2 (Shapiro Report) at 6 & Schedule B. Thus, according to Mr. Shapiro, Plaintiffs' extra expenses could not have exceeded approximately $3.9 million.

Mr. Shapiro relied on a document produced by Plaintiffs bearing the Bates label

7

1   UCP018226-27 to arrive at the "Costs Actually Incurred" figure in this equation. *Id.* at
2   Schedule B. But the document Mr. Shapiro cited is limited on its face to costs incurred
3   in New Mexico and Croatia, stating "[t]his recap is for New Mexico and Croatia
4   portions of the series only." Srinivasan Decl. Ex. 4 (New Mexico Recap Report). That
5   document therefore omits over $4.3 million Plaintiffs already spent in Israel prior to the
6   relocation and that was attributable to episodes 2-6. *Id.* Ex. 5 (Israel Recap Report).

7       Mr. Shapiro testified that he was simply unaware of "any incurred costs on
8   Episodes 2 through 6" in Israel and was "confused" by the fact that Plaintiffs' damages
9   expert (correctly) contended such expenses had been incurred. *Id.* Ex. 3 (Shapiro Dep)
10  at 71:4-8, 141:24-142:14. However, Mr. Shapiro confirmed that "if there were costs that
11  were actually incurred and paid in Israel but that redounded to the benefit of the episodes
12  that were shot in Croatia and New Mexico," he would "need to take those expenses into
13  account in calculating extra expense under [his] methodology" if "such documents
14  existed that showed that . . . ." *Id.* at 142:24-143:8.

15      Adding the over $4.3 million spent in Israel to the "Costs Actually Incurred"
16  number Mr. Shapiro mistakenly used would yield a maximum extra expense claim of
17  ***over $8.2 million***—which is even greater than the approximately $7.1 million in extra
18  expenses that Plaintiffs' expert calculated.

19              b.   <u>Mr. Shapiro Improperly Deducted Tax Benefits in
20                   Contravention of California Law and the Policy.</u>

21      Mr. Shapiro compounded his error by stating that his erroneous starting place of
22  a damages figure should be further reduced because Plaintiffs received more favorable
23  tax credits in New Mexico and Croatia than they would have received had they
24  completed filming in Israel. Ex. 2 at Schedule A. But this deduction is barred by black-
25  letter, California law and the Policy language itself.

26      The California Court of Appeal has made clear that "evidence of tax benefits
27  which a plaintiff may have received" should not "be considered in determining
28  compensatory damages for the defendant's breach of [a] contract" and such tax benefit

1   "evidence is irrelevant." *DePalma v. Westland Software House*, 225 Cal. App. 3d 1534,

2   1537 (1990). As the court explained:

> There are several grounds for our conclusion tax consequences should not
> be considered as a mitigating factor in compensatory damage calculations
> in breach of contract cases. Those grounds are: (A) the federal "tax benefit
> rule" cancels out most windfalls to plaintiffs; (B) estimating tax
> consequences is not useful because it is speculative, time consuming, and
> confusing; (C) public policy is better served by having defendants pay the
> full amount of the damages they have caused by breaching their contracts.

7   *Id.* at 1540-41.

8       Not only is deducting tax benefits barred by California law, it is also not

9   permitted under the language of the Policy itself. The Policy provides that "'Insurable

10  Production Cost'" includes "all costs . . . chargeable directly to an 'Insured Production'

11  or series of productions." Srinivasan Decl. Ex. 1 at 9 (ATL003081). The definition of

12  "Insurable Production Cost" then includes three specific carve-outs for costs that "shall

13  not be included in 'Insurable Production Cost,'" none of which carves out amounts

14  offset by tax credits. *Id.* at 10 (ATL003082) (section 4(a)-(c)). Apart from those three

15  carve-outs, the only other costs excluded from "Insurable Production Cost" are those

16  "specifically stated not to be 'Insurable Production Costs' in an endorsement to this

17  Policy." *Id.* (section 4(d)). There is no endorsement language permitting Atlantic to use

18  tax credits as an offset against Insurable Production Costs.

19              c.    Mr. Shapiro Improperly Deducted Insurable Production
                      Costs in Contravention of the Policy.

20      Finally, Mr. Shapiro opined that Plaintiffs' claim for "prep and wrap on episodes

21  2 through 6 that were beneficial and saved money on episodes 7 through 10 provided a

22  benefit to Plaintiffs" that "reduces the overall loss as a result of the relocation." *Id.* Ex.

23  2 at 7. Once again, this approach is barred by the Policy. The Policy covers losses "as

24  you sustain by reason of such extra expenses you necessarily incur as a result of the

25  interruption, postponement, cancellation, relocation, curtailment, or abandonment of an

26  Insured Production . . . ." *Id.* Ex. 1 at 13 (ATL003103). Plaintiffs were required to spend

27  these amounts to film episodes 2-6 of *Dig* in New Mexico and Croatia and would not

28  have needed to do so but for the relocation. Mr. Shapiro cited nothing in the Policy

permitting him to offset otherwise covered extra expenses simply because they also benefited other episodes Plaintiffs later decided to film (in addition to episodes 2-6).

Thus, applying Mr. Shapiro's own methodology to the correct spending figures—and eliminating the improper offsets that violate California law and the Policy itself—would indicate Plaintiffs incurred **greater covered losses** under the Policy than their own expert calculated. It is not surprising that Atlantic wants its new expert to be able to come up with an entirely new analysis, untethered from Mr. Shapiro's approach.

But Atlantic's own authorities make clear that a party seeking to replace an unavailable expert witness for trial should not be permitted to "strengthen its trial position with a new and better expert." *Fidelity National*, 308 F.R.D. at 653. As the Court in *Fidelity National* explained:

> NU rejected FNF's offer to stipulate to a substitute expert whose testimony would be limited to Mr. Felton's remaining opinion and conclusions. NU's rejection of this proposed stipulation—a reasonable compromise—suggests that NU may in fact be hoping to strengthen its trial position with a new and better expert . . . . this Court will not reward NU's dilatory conduct and allow it to gain a tactical advantage by designating . . . not a true substitute for Mr. Felton, but a better one.

*Id.* (quotations omitted). Even in *Northrop Grumman*, which Atlantic relies on most heavily, the court cautioned that substitution was "not an opportunity to designate a better expert" and ordered that the new expert may "not testify in any manner that is contrary to or inconsistent with" the prior expert's analysis. *Northrop Grumman*, 2016 WL 6826171, at *4.

## V.   **CONCLUSION**

Plaintiffs respectfully submit that Atlantic's motion should be denied. Atlantic is free to play Mr. Shapiro's videotaped deposition at trial. And while Plaintiffs are willing to permit a new expert to testify in person at trial, that expert should be bound by Mr. Shapiro's opinions and deposition testimony. Any substitute expert should be required to issue a supplemental report, not to exceed two pages, adopting Mr. Shapiro's opinions by 5:00 p.m. on January 17, 2020. And Plaintiffs should have the option of deposing such expert immediately.

10

DATED:      December 30, 2019          SUSMAN GODFREY L.L.P.

                                       */s/ Kalpana Srinivasan*
                                       KALPANA SRINIVASAN (237460)
                                       ksrinivasan@susmangodfrey.com
                                       AMANDA K. BONN (270891)
                                       abonn@susmangodfrey.com
                                       CATRIONA LAVERY (310546)
                                       clavery@susmangodfrey.com
                                       SUSMAN GODFREY L.L.P.
                                       1900 Avenue of the Stars, Suite 1400
                                       Los Angeles, CA 90067-6029
                                       Tel: (310) 789-3100
                                       Fax: (310) 789-3150

                                       JACOB W. BUCHDAHL
                                       (*pro hac vice*)
                                       jbuchdahl@susmangodfrey.com
                                       SUSMAN GODFREY L.L.P.
                                       1301 Avenue of the Americas,
                                       32nd Floor
                                       New York, NY 10019-6023
                                       Tel: (212) 336-8330
                                       Fax: (212) 336-8340

                                       *Attorneys for Plaintiffs*

015825\7052657.v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

     I certify that on December 26, 2019, I filed the foregoing with the Clerk of the United States District Court for the Central District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

                               */s/ Kalpana Srinivasan*
                               Kalpana Srinivasan

PLTS.' OPP. TO DEF.'S MTN. FOR LEAVE TO AMEND SCHEDULING ORDER

015825\7052657.v1