KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,<br><br>    Plaintiffs,<br><br> v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>    Defendant. | Case No.: 2:16-cv-4435-PA-MRW<br><br>The Honorable Percy Anderson<br>Dept. 9A<br><br>**PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................4

II.  CLAIMS AND DEFENSES ................................................................4

   A.  Summary of Claims Plaintiff Has Pleaded and Plans to Pursue ......................4

   B.  The Elements Required to Establish Plaintiffs' Claims...................................4

   C.  Brief Description of the Key Evidence in Support of Each of the Claims. ......8

   D.  Summary of the Affirmative Defenses Defendant Has Pleaded and Plans to Pursue. .................................................................................................................12

   E.  Elements Required to Establish Defendant's Affirmative Defenses. .............13

   F.  Evidence Required to Establish Defendant's Affirmative Defenses. .............13

   G.  Anticipated Evidentiary Issues and Plaintiffs' Position on Those Issues. ......13

      1.  Plaintiffs' Request for Judicial Notice. ...................................................13

      2.  Plaintiffs' Anticipated Motions in Limine ..............................................14

      3.  Defendant's Pending Motion to Substitute a New Expert ..........................17

      4.  Defendant's Anticipated Motions in Limine .............................................17

   H.  Issues of Law and Plaintiffs' Position on Those Issues. ................................18

III. Bifurcation of Issues. ......................................................................18

IV.  Jury Trial. ........................................................................................18

V.   Abandonment of Issues....................................................................19

VI.  ATTORNEYS' FEES .......................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Austero v. Nat'l Cas. Co.*,
   84 Cal.App.3d 1 (1978) ..................................................................... 16

*Brandt v. Super. Ct.*,
   37 Cal.3d 813 (1985) ................................................................... 23, 24

*Cassim v. Allstate Ins. Co.*,
   33 Cal.4th 780 (2004) ..................................................................... 23

*Century Surety Co. v. Polisso*,
   139 Cal. App. 4th 922 (2006) ........................................................... 16

*DePalma v. Westland Software House*,
   225 Cal. App. 3d 1535 (1990) ..................................................... 17, 18

*Diversey Lever, Inc. v. Ecolab, Inc.*,
   191 F.3d 1350 (Fed. Cir. 1999) ....................................................... 14

*Duarte Nursery, Inc. v. United States Army Corps of Engineers*,
   2017 WL 3453206 (C.D. Cal. Aug. 11, 2017) .................................... 14

*Kaffaga v. Steinbeck*,
   2017 WL 5989039 (C.D. Cal. Aug. 25, 2017) .................................... 14

*North Oakland Med. Clinic. v. Rogers*,
   65 Cal. App. 4th 824 (1998) ............................................................. 6

*OneBeacon Ins. Co. v. T Wade Welch & Assocs.*,
   841 F.3d 669 (5th Cir. 2016) ........................................................... 12

*United Mine Workers of AM. 1974 Pension v. Pittson Co.*,
   984 F.2d 469 (D.C. Cir. 1993) ......................................................... 14

*Universal Cable Prods., LLC v. Atlantic Specialty Ins. Co.*,
   929 F.3d 1143 (9th Cir. 2019) ............................................. 10, 12, 15

**Statutes**

Cal. Civ. Code § 3287(a) ................................................................. 6

Pursuant to Civil L.R. 16-4, Plaintiffs respectfully submit the following pretrial Memorandum of Contentions of Fact and Law.  The evidence referenced below is illustrative only.  Plaintiffs reserve the right to supplement the evidence referenced below with additional evidence at trial.

## I.   INTRODUCTION

## II.   CLAIMS AND DEFENSES

### A.   Summary of Claims Plaintiff Has Pleaded and Plans to Pursue

Plaintiffs pleaded the following claims in the First Amended Complaint and plans to pursue them at trial:

Claim 1: Breach of Insurance Contract.

Claim 2: Breach of Implied Covenant of Good Faith and Fair Dealing.

### B.   The Elements Required to Establish Plaintiffs' Claims

The elements required to establish Plaintiffs' claims are listed separately for each claim, as shown below:

Claim 1:   Plaintiffs claim that Defendant breached its duty to pay them for a covered loss under an insurance policy. To establish this claim, Plaintiffs must prove all of the following:

(i)   That Plaintiffs suffered a loss, all or part of which was covered under an insurance policy with Defendant;

(ii)   that Defendant was notified of the loss as required by the policy; and

(iii)   the amount of the covered loss that Defendant failed to pay.

*See* CACI 2300 Breach of Contractual Duty to Pay a Covered Claim— Essential Factual Elements.

Plaintiffs also contend that their covered claim was liquidated such that they are entitled to mandatory prejudgment interest at California's statutory rate. Plaintiffs are entitled to have the jury decide whether the claim was liquidated.

4

To prove the covered claim was liquidate, Plaintiffs must establish that the covered claim was certain, or capable of being made certain by calculation, as of the date that Plaintiffs request pre-judgment interest begins to run.

*See* Cal. Civ. Code § 3287(a) ("A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day . . . ."); *North Oakland Med. Clinic. v. Rogers*, 65 Cal. App. 4th 824 (1998) (indicating "jury" could "determine[] whether the damages were liquidated or unliquidated" for purposes of awarding "interest under section 3287").

Claim 2:   Plaintiffs claim that Defendant breached the implied covenant of good faith and fair dealing ("bad faith"). Plaintiffs may establish bad faith by establishing either that (1) Defendant breached the obligation of good faith and fair dealing by failing to pay benefits due under the insurance policy ("Theory 1") or (2) Defendant acted unreasonably by failing to conduct a proper investigation of Plaintiffs' claim ("Theory 2"). Under either theory, Plaintiffs claim that Defendant acted with malice, oppression, or fraud giving rise to punitive damages.

Under Theory 1, Plaintiffs must prove all of the following:

> (i)    That Plaintiffs suffered a loss covered under an insurance policy with Defendant;
>
> (ii)   That Defendant was notified of the loss;
>
> (iii)  That Defendant unreasonably failed to pay Policy benefits;
>
> (iv)   That Plaintiffs were harmed;

5

(v)     That Defendant's failure to pay Policy benefits was a substantial factor in causing Plaintiffs' harm; and

(vi)    The amount of damages caused by Defendant.

To act or fail to act "unreasonably" means that the insurer had no proper cause for its conduct. In determining whether Defendant acted unreasonably, the jury should consider only the information that Defendant knew or reasonably should have known at the time when it failed to pay Policy benefits.

*See* CACI 2331 Breach of the Implied Obligation of Good Faith and Fair Dealing—Failure or Delay in Payment (First Party)—Essential Factual Elements; CACI 2350 Damages for Bad Faith.

Under <u>Theory 2</u>, Plaintiffs must prove all of the following:

(i)     That Plaintiffs suffered a loss under an insurance policy issued by Defendant;

(ii)    That Plaintiffs properly presented a claim to Defendant to be compensated for the loss;

(iii)   That Defendant failed to conduct a full, fair, prompt, and thorough investigation of all of the bases of Plaintiffs' claim;

(iv)    That Plaintiffs were harmed;

(v)     That Defendant's failure to properly investigate the claim was a substantial factor in causing Plaintiffs' harm; and

(vi)    The amount of damages caused by Defendant.

When investigating Plaintiffs' claim, Defendant had a duty to diligently search for an consider evidence that supported coverage of the claimed loss.

*See* CACI 2331 Breach of the Implied Obligation of Good Faith and Fair Dealing—Failure or Delay in Payment (First Party)—Essential Factual Elements; CACI 2350 Damages for Bad Faith.

To prove that Defendant's conduct justifies an award of punitive damages, Plaintiffs must prove that Atlantic engaged in that conduct with malice, oppression, or fraud. To do this, Plaintiffs must prove one of the following by clear and convincing evidence:

> (i)    That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Atlantic, who acted on behalf of Atlantic; or
>
> (ii)    That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Atlantic; or
>
> (iii)    That one or more officers, directors, or managing agents of Atlantic knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Atlantic acted with intent to cause injury or that Atlantic's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that Atlantic's conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing disregard of their rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Atlantic intentionally misrepresented or concealed a material fact and did so intending to harm Plaintiffs.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decisionmaking such that his or her decisions ultimately determine corporate policy.

*See* CACI 3945 Punitive Damages—Entity Defendant—Trial Not Bifurcated.

## C.    <u>Brief Description of the Key Evidence in Support of Each of the Claims.</u>

Claim 1 (Breach of Insurance Contract): Elements (i) ("That Plaintiff suffered a loss, all or part of which was covered under an insurance policy with Defendant") and (ii) ("that Defendant was notified of the loss as required by the policy") have already been decided in Plaintiffs' favor by the Ninth Circuit and this Court and are therefore law of the case, requiring no further proof at trial.[1]

---

[1] *See Universal Cable Prods., LLC v. Atlantic Specialty Ins. Co.*, 929 F.3d 1143 (9th Cir. 2019) (holding that "the "efficient proximate cause of the relocation was Hamas' rocket fire from Gaza into Israel," and that "Atlantic breached its contract by denying Universal coverage" based on "the first two war exclusions," and "direct[ing] the entry of summary judgment in favor of Universal on the first and second war

1

2    For element (iii) ("the amount of the covered loss that Defendant failed

3    to pay"), Plaintiffs will rely on (1) the testimony of their damages expert

4    Robert W. Wunderlich, Ph.D.; (2) the testimony of either Randi

5    Richmond or BJ Markus (Plaintiffs' employees with knowledge of

6    Plaintiffs' extra expenses); and (3) documents reflecting their covered

7    losses including the Full Cost Bible for the *Dig* production, potentially

8    invoices or other ledgers evidencing such costs, and the Policy language

9    regarding the "Insuring Agreement" for "Extra Expense," the definition

10   of "Loss," and the definition of "Insurable Production Cost. Plaintiffs

11   may also rely on videotaped deposition testimony from Atlantic's

12   former damages expert, Jay Shapiro.

13

14   <u>Claim 2 (Breach of Implied Covenant of Good Faith and Fair Dealing)</u>:

15   With respect to Theory 1 of bad faith, element (i) ("That Plaintiffs

16   suffered a loss covered under an insurance policy with Defendant") and

17   element (ii) ("That Defendant was notified of the loss) have been

18   decided in Plaintiffs' favor by the Ninth Circuit and this Court, those

19   decisions are law of the case, and these elements require no further proof

20   at trial.

21

22   Similarly, with respect to Theory 2 of bad faith, element (i) ("That

23   Plaintiffs suffered a loss under an insurance Policy issued by

24   Defendant") and (ii) ("That Plaintiffs properly presented a claim to

25   Defendant to be compensated for the loss") have been decided in

26

27

28   exclusions"); Dkt. 157 (Nov. 30, 2019 Order) (holding "War Exclusions 3 and 4 do not apply to preclude coverage" and that the issues remaining for trial are "damages and Atlantic's bad faith").

9

Plaintiffs' favor by the Ninth Circuit and this Court, those decisions are law of the case, and these elements require no further proof at trial.

To prove the remaining elements of their claim that Defendant breached the implied covenant of good faith and fair dealing and did so with malice, oppression, or fraud, Plaintiffs intend to rely primarily on the following evidence: (1) the testimony of Plaintiffs' insurance industry expert Ty Sagalow; (2) the testimony of Defendant's employees (current or former) with knowledge of the Policy and the handling of the *Dig* claim, including Teresa Gooley, Daniel Gutterman, Pamela Johnson, Peter Williams, and Dennis Crosby; (3) the testimony of either Randi Richmond or BJ Markus (Plaintiffs' employees with knowledge of the *Dig* claim); (4) the testimony of Susan Weiss, Plaintiffs' insurance broker with knowledge of the Policy and the *Dig* claim.

Plaintiffs also intend to rely on documentary evidence regarding Defendant's handling of the *Dig* claim including (1) documents showing a terrorism exclusion was deleted from the draft Policy and that Atlantic knowingly decided not to add a terrorism exclusion or charge extra premiums when adding *Dig* to the Policy; (2) e-mails regarding Atlantic's handling of the *Dig* claim; (3) Atlantic's claim file for the *Dig* claim; (4) Atlantic's policies and manuals regarding claims handling; and (5) Atlantic's letters explaining the bases for its denial of coverage of the *Dig* claim.

Plaintiffs also intend to request that the Court take judicial notice of the factual and legal conclusions reflected in the Ninth Circuit's decision and this Court's subsequent November 30, 2019 order, which make clear (1) the meaning of the "War Exclusions" and (2) the reasons why

none of the War Exclusions applies (including, but not limited to, the fact that the special meaning of such Exclusions governs, that Exclusions 1 and 2 require actions by a sovereign, and that Hamas is not a sovereign). *See Universal Cable Prods., LLC v. Atlantic Specialty Ins. Co.*, 929 F.3d 1143 (9th Cir. 2019), Dkt. 157 (Nov. 30, 2019 Order).

To prove their damages resulting from Defendant's bad faith, Plaintiffs intend to rely on the testimony of (1) Plaintiffs' damages expert Robert W. Wunderlich, Ph.D.; (2) the testimony of either Randi Richmond or BJ Markus (Plaintiffs' employees); and (3) Plaintiffs' former counsel Lucia Coyoca regarding Plaintiffs' attorneys' fees and costs. Plaintiffs also intend to rely on documents evidencing Plaintiffs' attorneys' fees and costs, including redacted invoices and fee agreement(s).

Plaintiffs also intend to rely on the following additional evidence demonstrating that Defendant's conduct justifies an award of punitive damages: (1) evidence regarding Defendant's pattern or practice of denying valid claims in bad faith, including the decision in *OneBeacon Ins. Co. v. T Wade Welch & Assocs.*, 841 F.3d 669 (5th Cir. 2016); (2) evidence regarding Defendant's financial condition, including annual reports; (3) evidence regarding Defendant's financial motive for denying the *Dig* claim, including documents produced by Atlantic showing that it exited this line of insurance underwriting because it was unprofitable and because "Profitability is the Goal!"

Plaintiffs reserve the right to present additional evidence included on their exhibit list, deposition designations, and witness lists, to rebut any evidence presented by Defendant or based on the outcome of the Court's rulings on motions in limine or any other pre-trial matter.

**D.**   <u>**Summary of the Affirmative Defenses Defendant Has Pleaded and Plans to Pursue.**</u>

Defendant has indicated it plans to pursue the below affirmative defenses at trial. Plaintiffs disagree that Defendant may do so.

    a.    Fourth Affirmative Defense (Exclusion 3, General Conditions): Defendant intends to argue that Plaintiffs' claim is excluded by the third "War Exclusion" for "[i]nsurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these . . . ."

    b.    Fifth Affirmative Defense (Exclusion 4, General Conditions): Defendant intends to argue that Plaintiffs' claim is excluded by the fourth "War Exclusion" for "[a]ny weapon of war including atomic fission or radioactive force, whether in time of peace or war."

The defenses based on Exclusions 3-4 were decided adversely by this Court on remand from the Ninth Circuit. Dkt. 157. That ruling is law of the case. By failing to raise the affirmative defense of failure to mitigate in opposition to Plaintiffs' motion for summary judgment as to liability, Defendant abandoned or waived the defense.[2]

---

[2] *See, e.g.*, *Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1352 (Fed. Cir. 1999) (noting failure to raise affirmative defense in opposition to a "motion for partial summary judgment on the issue of liability" consetituted "an abandonment of the defense"); *United Mine Workers of AM. 1974 Pension v. Pittson Co.*, 984 F.2d 469, 478 (D.C. Cir. 1993) ("As a general rule, though, the failure to raise an affirmative defense in opposition to a motion for summary judgment constitutes an abandonment of the defense."); *Kaffaga v. Steinbeck*, 2017 WL 5989039, at *2 (C.D. Cal. Aug. 25, 2017) ("Affirmative defenses not raised in opposition to a motion for partial

12

**E.**    **Elements Required to Establish Defendant's Affirmative Defenses.**

For the reasons discussed in Part I.D above, there are no elements that can establish Defendant's affirmative defenses, which have been either (1) decided adversely to Defendant by the Ninth Circuit and this Court or (2) abandoned by Defendant when it failed to raise such affirmative defenses in opposition to Plaintiffs' motion for summary judgment on liability.

**F.**    **Evidence Required to Establish Defendant's Affirmative Defenses.**

For the reasons discussed in Part I.D above, there is no evidence that can establish Defendant's affirmative defenses, which have been either (1) decided adversely to Defendant by the Ninth Circuit and this Court or (2) abandoned by Defendant when it failed to raise such affirmative defenses in opposition to Plaintiffs' motion for summary judgment on liability.

Plaintiffs intend to rely on the Ninth Circuit's order and this Court's decision on remand to defeat and rebut Defendant's affirmative defenses. To the extent Defendant is permitted to present a defense of failure to mitigate at trial, Plaintiffs will rely on the same evidence of their damages discussed above—as well as the testimnony of Randi Smith, BJ Markus, and Robert Wunderlich—to demonstrate that Plaintiffs did not fail to mitigate their damages.

**G.**    **Anticipated Evidentiary Issues and Plaintiffs' Position on Those Issues.**

Plaintiffs identify the following evidentiary issues that the Court will likely be required to decide, and briefly state their position on such issues.

**1.**    **Plaintiffs' Request for Judicial Notice.**

---

summary judgment as to liability are deemed abandoned."); *Duarte Nursery, Inc. v. United States Army Corps of Engineers*, 2017 WL 3453206, at *3 (C.D. Cal. Aug. 11, 2017) (holding "unasserted affirmative defenses [are] waived, once omitted from a summary judgment on liability" as "[t]o hold otherwise would keep the court and parties in 'limbo' and allow unargued affirmative defenses to lie dormant, waiting to unravel the court's prior dispositive liability decisions").

To the extent that Defendants do not stipulate to the findings of fact included in the Ninth Circuit's decision on appeal, Plaintiffs anticipate requesting that the Court take judicial notice of those facts and instruct the jury on them. The Ninth Circuit issued a series of findings on appeal demonstrating that (1) the exclusions for "war" and "warlike action by a military force" only apply to sovereign or quasi-soveregn entities; (2) Hamas is not a sovereign or quasi-sovereign entity; (3) the efficient proximate cause of Plaintiffs' loss was Hamas' rocket fire into Israel and not Israel's actions directed toward Gaza; (4) Plaintiffs' sustained a covered loss; (5) Defendant breached the Policy by denying coverage based on the exclusions for "war" and "warlike action by a military force." *Universal Cable Prods., LLC v. Atlantic Specialty Ins. Co.*, 929 F.3d 1143, 1162 (9th Cir. 2019). The specific factual findings made by the Ninth Circuit, as well as its conclusions of law, must be explained to the jury in order to provide the jury with the proper context for deciding whether Atlantic acted in bad faith in denying Plaintiffs' claim.

## 2.   <u>Plaintiffs' Anticipated Motions in Limine</u>

Per the Court's standing order, Plaintiffs anticipate filing four motions in limine.

### a.   <u>Plaintiffs' Motion in Limine No. 1</u>

*First*, Plaintiffs intend to move to bar Defendant from re-litigating issues that have already been determined by this Court and the Ninth Circuit. The Ninth Circuit concluded that Defendant breached the Policy in denying coverage for Plaintiffs' *Dig* claim under Exclusions 1 and 2. On remand, this Court concluded that neither Exclusion 3 nor Exclusion 4 applies. Yet Defendant intends to confuse the jury by relitigating issues on liability, including (1) attempting to present evidence of the Court's previous summary judgment order, which was reversed on appeal; (2) introducing expert evidence suggesting Hamas is a sovereign or quasi-sovereign (despite the Ninth Circuit's contrary ruling; and (3) introducing evidence about the so-called "plain and ordinary meaning" of the exclusions, notwithstanding the Ninth Circuit's directive that under California law, the special meaning applies. Plaintiffs

will move to bar Defendant from doing so, as this evidence is irrelevant, substantially more prejudicial than probative, and likely to confuse the jury and waste time.

b.    Plaintiffs' Motion in Limine No. 2

*Second*, Plaintiffs intend to move to bar Defendant from introducing evidence as to bad faith that it did not actually consider at the time it denied coverage or that did not serve as the basis for denying coverage under the Policy. When Defendant denied coverage, it did so based on (1) Exclusions 1 and 2 and (2) the special meaning of those exclusions requiring sovereignty. Defendant merely argued, incorrectly, that Hamas was a sovereign. Defendant cannot use the benefit of hindsight to suggest that it had a good faith belief that Exclusions 3-4 apply to bar coverage when it did not rely on those exclusions at the time. Nor can Defendant rely on the supposed plain and ordinary meaning of "war" and "warlike action," when (1) it admitted that the special meaning required sovereignty in its denial-of-coverage letters and (2) as a matter of law, plain and ordinary meaning does not apply. *Austero v. Nat'l Cas. Co.*, 84 Cal.App.3d 1, 32 (1978) ("In evaluating the evidence to see if there was any 'bad faith' conduct by the insurer, it is essential that no hindsight is applied. The insurance company's action is measured as of the time it was confronted with the factual situation to which it was called to respond."); *Century Surety Co. v. Polisso*, 139 Cal. App. 4th 922 (2006) (refusing to find "genuine issue" defeating bad faith claim where (1) the insurer "did not cite permanent installation as a ground for denial of coverage when the claim was tendered, it was never the subject of a genuine dispute between the parties" and (2) "as a matter of law, the permanent installation exclusion is inapplicable").

c.    Plaintiffs' Motion in Limine No. 3

*Third*, the Court should not permit any evidence or argument concerning the fact that Plaintiffs are part of a larger corporate group including Comcast. Such evidence is irrelevant and allowing introduction of it would be substantially more prejudicial than probative.

d.    Plaintiffs' Motion in Limine No. 4

15

*Fourth*, Plaintiffs intend to move to bar any evidence or argument concerning any purported tax benefits that Plaintiffs received for filming in New Mexico and Croatia. The California Court of Appeal has made clear that "evidence of tax benefits which a plaintiff may have received" should not "be considered in determining compensatory damages for the defendant's breach of [a] contract" and such tax benefit "evidence is irrelevant." *DePalma v. Westland Software House*, 225 Cal. App. 3d 1535, 1536 (1990). As the court explained:

> There are several grounds for our conclusion tax consequences should not be considered as a mitigating factor in compensatory damage calculations in breach of contract cases. Those grounds are: (A) the federal "tax benefit rule" cancels out most windfalls to plaintiffs; (B) estimating tax consequences is not useful because it is speculative, time consuming, and confusing; (C) public policy is better served by having defendants pay the full amount of the damages they have caused by breaching their contracts.

*Id.* at 1540-41.

Moreover, offsetting covered losses by claimed tax benefits is not permitted under the Policy. Under the Policy, Atlantic agreed to pay "such loss . . . as you sustain by reason of such extra expense you necessarily incur as a result of the interruption, postponement, cancellation, relocation, curtailment, or abandonment of an Insured Production due to . . . [i]mminent peril . . . ." Policy at 13 (ATL003103). The "amount of your loss will be determined based on . . . [a]ll necessary 'Insurable Production Cost' you incur to complete the 'Insured Production' that exceeds the amount of 'Insurable Production Cost' you would have incurred if the covered cause of the loss had not been incurred." *Id.* at 16 (ATL003106). In turn, "'Insurable Production Cost' includes: all costs . . . chargeable directly to an 'Insured Production' or series of productions." *Id.* at 9 (ATL003081). The definition of "Insurable Production Cost" then includes three specific carve-outs for costs that "shall not be included in 'Insurable Production Cost,'" none of which carves out amounts offset by tax credits. *Id.* at 10 (ATL003082) (section 4(a)-(c)). Apart from those three carve-outs, the only other costs excluded from "Insurable Production Cost" are those "specifically stated not to be 'Insurable Production Costs' in an endorsement to this

16

Policy." *Id.* (section 4(d)). There is no endorsement language permitting Atlantic to use tax credits as an offset against Insurable Production Costs.

### 3. Defendant's Pending Motion to Substitute a New Expert

Defendant's damages expert Mr. Shapiro, sadly, passed away and Defendant has sought to substitute a new damages expert. While Plaintiffs offered to permit Defendant to have a new expert adopt Mr. Shapiro's analysis, Defendant instead wished its new expert to disclose new opinions and analyses on the eve of trial. As a result, Plaintiffs have opposed Defendant's motion.

### 4. Defendant's Anticipated Motions in Limine

During meet-and-confer efforts, Defendant has indicated it intended to file over 30 motions in limine. This would, of course, violate the Court's standing order which limits motions in limine to four. Plaintiffs currently do not know which motions Defendant actually intends to raise.

Defendant's proposed motions, on the whole, sought to relitigate issues of liability that have already been determined by the Ninth Circuit and by this Court on remand. This is wholly improper. It has already been decided as a matter of law that (1) Exclusions 1-4 do not apply and (2) Defendant breached the Policy in denying Plaintiffs' *Dig* claim. Defendant's proposals would turn this trial into a circus, confusing the jury into believing that issues of liability as to its breach of the Policy are still undecided. The Ninth Circuit's decision and this Court's order on remand are law of the case and cannot be disturbed at trial.

Defendant has also indicated it intends to file *Daubert* motions as to Plaintiffs' insurance industry expert, Ty Sagalow, and its damages expert Robert Wunderlich. Plaintiffs intend to oppose these motions. *First*, the Ninth Circuit has already accepted testimony from Plaintiffs' insurance industry expert, Mr. Sagalow. Mr. Sagalow is a qualified expert who provides relevant opinions about Defendant's bad-faith conduct in adjusting Plaintiffs' *Dig* claim, among others. *Second*, Mr. Wunderlich's damages opinions are proper and not subject to exclusion. Even Defendant's own former damages expert, Mr. Shapiro, admitted in deposition that

Mr. Wunderlich's methodology was not unreasonable and Mr. Shapiro's own method (when applied to the correct underlying data) supports an even higher damages figure.

### H.     Issues of Law and Plaintiffs' Position on Those Issues.

The remaining issues for trial are issues of fact for the jury to decide: (1) the amount of damages and (2) whether Defendant acted in bad faith.

Based on the parties' competing jury instructions, Plaintiffs believe the Court will be required to decide whether Defendant is permitted to relitigate defenses to liability—defenses that were either rejected on summary judgment or that Defendant failed to raise on summary judgment—at trial. Plaintiffs' position is that Defendant may not do so. The Ninth Circuit's decision and this Court's order on remand setting the case for trial are law of the case. To the extent Defendant failed to raise an affirmative defense in opposition to Plaintiffs' motion for summary judgment on liability, it is abandoned. *See supra* n.2.

### III.    BIFURCATION OF ISSUES.

No party has requested bifurcation of any issues.

### IV.    JURY TRIAL.

The following issues are triable to the jury as a matter of right and a timely demand for jury has been made:

**Claim 1 (Breach of Insurance Contract):**

1.     The amount of the covered loss that Defendant failed to pay (Claim 1);

2.     Whether the covered loss was a liquidated claim, meaning certain or capable of being made certain by calculation, such that prejudgment interest is mandatory.

**Claim 2 (Breach of Implied Covenant of Good Faith and Fair Dealing):**

Theory 1 (Failure to Pay Policy Benefits):

1.      Whether Defendant unreasonably failed to pay Policy benefits;

2.      Whether Plaintiffs were harmed;

3.      Whether Defendant's unreasonable failure to pay Policy benefits was a substantial factor in causing Plaintiffs' harm; and

4.      The amount of Plaintiffs' damages (including attorneys' fees and costs to prove breach of the Policy, and prejudgment interest)

Theory 2 (Failure to Properly Investigate Claim):

1.      Whether Defendant failed to conduct a full, fair, prompt, and thorough investigation of all of the bases of Plaintiffs' claim;

2.      Whether Plaintiffs were harmed;

3.      Whether Defendant's failure to properly investigate the claim was a substantial factor in causing Plaintiffs' harm; and

4.      The amount of Plaintiffs' damages (including attorneys' fees and costs to prove breach of the Policy, and prejudgment interest)

Punitive Damages

1.      Whether Defendant engaged in the conduct above with malice, oppression or fraud;

2.      Whether the conduct constituting malice, oppression, or fraud was committed by, authorized by, or adopted and approved after the fact by one or more officers, directors, or managing agents of Defendant, who acted on behalf of Defendant; and

3.      The amount of punitive damages.

## V.      ABANDONMENT OF ISSUES

Defendant has abandoned the following affirmative defenses by failing to raise them in opposition to Plaintiffs' motion for partial summary judgment on liability that Defendant breached the Policy. *See supra* n. 2.

a. Second Affirmative Defense (Exclusion 1, General Conditions), based on the Policy exclusion for "[w]ar, including undeclared or civil war."

b. Third Affirmative Defense (Exclusion 2, General Conditions), based on the Policy exclusion for "[w]arlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents."

c. Fourth Affirmative Defense (Exclusion 3, General Conditions), based on the Policy exclusion for "[i]nsurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these . . . ."

c. Fifth Affirmative Defense (Exclusion 4, General Conditions), based on the Policy exclusion for "[a]ny weapon of war including atomic fission or radioactive force, whether in time of peace or war."

d. Sixth Affirmative Defense (Failure to Mitigate), based on General Condition I(2) of the Policy, states: "Take all reasonable steps to protect the property from further damage and minimize the loss. Keep a record of your expenses in doing so for consideration in the settlement of the claim. This will not increase the limit of insurance."

e. Seventh Affirmative Defense (Other Insurance), based on the assertion that "the Policy provides only excess insurance" and "the Plaintiffs' loss is not covered by the Policy."

f.   Eighth Affirmative Defense (Warranty C), based on the assertion that Plaintiffs' "claims are barred by their breach of Warranty C of the Policy."

g.   Ninth Affirmative Defense (Fortuity Doctrine), based on the assertion that "Plaintiffs' claims are barred by the fortuity doctrine."

h.   Tenth Affirmative Defense (Uninsurable Claim), based on the assertion that "Plaintiffs' claims are uninsurable and barred by public policy."

i.   Eleventh Affirmative Defense (Exclusion 8, Section III—Extra Expense), based on the Policy exclusion for "[a]ny concern or fear of an occurrence which may affect the commencement of [sic] the continuation of the Insured Production, except the action of a civil authority that prevents access to, exit from (ingress or egress) or closes down the location and or facilities due to conditions that threaten the safety of cast, crew or property."

j.   Twelfth Affirmative Defense (Exclusion 9, Section III—Extra Expense), based on the Policy exclusion for "[a]n imminent peril or physical damage to property, facilities, or locations necessary to the insured production."

k.   Thirteenth Affirmative Defense (Exclusion 10, Section III—Extra Expense), based on the Policy exclusion for "[a]ny concern or belief that the commencement or continuation of Insured Production is inappropriate."

l.   Fourteenth Affirmative Defense (Exclusion 17, Section III—Extra Expense), based on the Policy exclusion for "[l]oss of use (including loss of use of animals), loss of

market, interruption of business, or any other consequential loss."

## VI.   ATTORNEYS' FEES

Should Plaintiffs prevail before the jury on Claim 2 (Breach of the Implied Covenant of Good Faith and Fair Dealing), they will be entitled to seek from the jury as compensatory damages "the cost of attorney fees to recover the insurance policy benefits." CACI 2350 Damages for Bad Faith. "When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorney's fees are an economic loss—damages—proximately caused by the tort." *Brandt v. Super. Ct.*, 37 Cal.3d 813, 817 (1985). "Since the attorney's fees are recoverable as damages, the determination of the recoverable fees must be made by the trier of fact unless the parties stipulate otherwise." *Id.* at 819. Attorneys' fees incurred in connection with "issues jointly related to both the tort and contract should be apportioned, with some hours assigned to the contract and some to the tort." *Cassim v. Allstate Ins. Co.*, 33 Cal.4th 780, 812 (2004). Plaintiffs are entitled to recover not only hourly attorneys' fees incurred, but also contingent fees. *Id.*

Plaintiffs have incurred over $2.9 million in hourly attorneys' fees and expenses paid to prior counsel, a substantial portion of which was incurred to prove Plaintiffs' entitlement to coverage under the Policy. Indeed, both Plaintiffs' claim for breach of contract and claim for breach of the implied covenant of good faith and fair dealing turned heavily on the interpretation of the War Exclusions.

On January 22, 2018, Plaintiffs hired Susman Godfrey L.L.P. on a hybrid fixed fee/contingency fee to pursue Plaintiffs' appeal and any subsequent litigation int eh district court. Susman Godfrey charged a "fee of $120,000" and is also entitled to "receive thirty percent (30%) of the gross sum recovered by settlement, judgment, or otherwise," where "gross sum recovered" means "all money or things of value . . . including any attorney's fees awarded by the court or arbitrators), without deducting any costs or expenses of litigation . . . ."

22

Plaintiffs will prove the amount of such fees at trial through (1) the production of invoices and other documents evidencing such fees; (2) the testimony of fact witnesses including prior counsel Lucia Coyoca, Randi Richmond or BJ Markus (Plaintiffs' employees with knowledge of Plaintiffs' damages); and/or (3) the testimony of Plaintiffs' damages expert Robert R. Wunderlich, Ph.D.

Plaintiffs conservatively anticipate that by the time trial in this matter is complete, approximately 25% of Susman Godfrey's time will have been spent proving Plaintiffs' bad faith claim, while the remaining 75% will have been spent in connection with Plaintifs' conract claim. Plaintiffs therefore expect that at the close of trial, over $3 million of Susman Godfrey's conteingency fee on the Gross Sum Recovered would be collectible as *Brandt* fees.[3]

DATED: January 3, 2020_____          SUSMAN GODFREY L.L.P.

*/s/ Kalpana Srinivasan*_____
KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

---

[3] This number is calculated as follows. Recoverable Contingency Fee = 25% x ((30% x (Covered Losses + Prejudgment Interest + Hourly Attorneys' Fees)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I certify that on January 3, 2020, I filed the foregoing with the Clerk of the United States District Court for the Central District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ Kalpana Srinivasan*
Kalpana Srinivasan