KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br>        Defendant. | Case No.: 2:16-cv-4435-PA-MRW<br><br>**JOINT LIST OF WITNESS TESTIMONY SUMMARIES**<br><br>Pretrial Conference: January 17, 2020<br>Time: 1:30 PM PST<br>Place: Courtroom 9A<br>Judge: Honorable Percy Anderson<br>Trial Date: February 18, 2020 |

Pursuant to section III.A.2 of the Honorable Percy Anderson's Civil Trial Scheduling Order, Plaintiffs Universal Cable Productions and Northern Entertainment Productions LLC, together with Defendant Atlantic Specialty Insurance Company, submit the following Joint List of Witness Testimony Summaries.

**Plaintiffs' List of Witness Testimony Summaries:**

**1. Susan Weiss**

Ms. Weiss was Plaintiffs' insurance broker. Plaintiffs will call Ms. Weiss to testify regarding the negotiation, drafting, and issuance of the insurance policy, the addition of Dig as an Insured Production, premiums and self-insured retention, the submission and denial of the Dig claim, and Defendant's non-renewal of the policy. Ms. Weiss will testify that Plaintiffs informed Defendant of the security issues regarding Dig and that Defendant subsequently accepted Dig as an Insured Production under the Policy.

Plaintiffs will question Ms. Weiss for **0.5** hours. Defendant will cross-examine Ms. Weiss for **.50** hours.

**2. George Walden**

Mr. Walden represented Plaintiffs in the negotiation, drafting, and issuance of the Policy. Plaintiffs may call Mr. Walden to testify regarding exclusions present and absent from the policy.

Plaintiffs plan to question Mr. Walden for **0.25** hours. Defendant plans to cross-examine Mr. Walden for .50 hours.

**3. Kurt Ford**

Mr. Ford is Senior Vice President of Production Services for NBCUniversal. Plaintiffs may call Mr. Ford to testify regarding the negotiation, drafting, and issuance of the insurance policy, the addition of Dig as an Insured Production, policy premiums and self-insured retention, the submission and denial of the Dig claim, and Defendant's non-renewal of the policy.

Plaintiffs plan to question Mr. Ford for **0.5** hours. Defendant plans to cross-

1    examine Mr. Ford for .50 hours.

2        **4. Andrea Garber**

3        Ms. Garber is Plaintiffs' insurance broker.  Plaintiffs may present Ms. Garber to

4    testify on the addition of Dig as an Insured Production, policy premiums, and the Dig

5    claim, including the submission and denial of the Dig claim.  If called, Ms. Garber will

6    testify that she informed Defendant of the security issues regarding Dig and that

7    Plaintiffs planned to film in Israel, including in Tel Aviv and on the west side of

8    Jerusalem.  Ms. Garber will testify that Defendant subsequently accepted Dig as an

9    Insured Production under the Policy.

10       Plaintiffs plan to question Ms. Garber for **0.5** hours.  Defendant plans to cross-

11   examine Ms. Garber for .75 hours.  Plaintiffs may not call Ms. Garber depending on the

12   outcome of motions in limine and disputed jury instructions.

13       **5. Randi Richmond**

14       Ms. Richmond is Senior Vice President of Production for NBCUniversal.

15   Plaintiffs will call Ms. Richmond to testify regarding the production of Dig, and the

16   delay, postponement, and relocation of the Dig production out of Israel because of

17   Hamas attacks on civilians in the summer of 2014.  Ms. Richmond will also testify

18   regarding the Dig claim, including the extra expenses and costs Plaintiffs incurred when

19   Plaintiffs moved the Dig production out of Israel, as well as the attorney fees and costs

20   Plaintiffs have incurred because of Defendant's denial of the Dig claim.

21       Plaintiffs plan to question Ms. Richmond for **0.75** hours.  Defendant plans to

22   cross-examine Ms. Richmond for 1.0   hours.  Plaintiffs intend to call either Ms.

23   Richmond or Ms. Markus (not both) but reserve the right to call both depending on the

24   outcome of motions in limine and Defendant's pending Motion for Leave to Amend

25   Court's Scheduling Order to Allow Substitution of Expert Witness on Account of Death

26   of Jay Shapiro, CPA, Dkt. 160.

27       **6. Mark Binke**

28       Mr. Binke is Executive Vice President of Production for NBCUniversal.  He is

JOINT LIST OF WITNESS TESTIMONY SUMMARIES

7060211v1/102884

Randi Richmond's boss.  Plaintiffs may call Mr. Binke to testify on the Dig production, and the delay, postponement, and relocation of the production out of Israel.  Mr. Binke may also testify regarding the Dig claim.

Plaintiffs plan to question Mr. Binke for **0.25** hours.  Defendant plans to cross-examine Mr. Binke for 1.0 hours.  Plaintiffs may not call Mr. Binke depending on the outcome of motions in limine and disputed jury instructions.

**7. Stephen Smith**

Mr. Smith was Head of Security for NBCUniversal at the time of the Dig production.   Plaintiffs may call Mr. Smith to testify regarding security conditions affecting the Dig production, including Hamas' violence directed at civilians in the summer of 2014.   Mr. Smith's testimony would also cover the resulting delay, postponement, and relocation of the Dig production out of Israel.

If called, Plaintiffs plan to question Mr. Smith for **0.2** hours.  Defendant plans to cross-examine Mr. Smith for 1.0  hours.  Plaintiffs are unlikely to call Mr. Smith but reserve the right to call him depending on the outcome of motions in limine.

**8. Barbara-Ann "BJ" Markus**

Ms. Markus is Vice President of Production Finance for NBCUniversal and managed the finances of the Dig production.  Plaintiffs will call Ms. Markus to testify regarding the Dig production, including the extra expenses and costs incurred as a result of the relocation of the production out of Israel following Hamas' attacks on civilian population centers in the summer of 2014.  Ms. Markus will also testify regarding the attorney fees and costs Plaintiffs have incurred because of Defendant's denial of the Dig claim.

Plaintiffs plan to question Ms. Markus for **0.75** hours.  Defendant plans to cross-examine Ms. Markus for **1.0** hours.  Plaintiffs intend to call either Ms. Richmond or Ms. Markus (not both) but reserve the right to call both depending on the outcome of motions in limine and Defendant's pending Motion for Leave to Amend Court's Scheduling Order to Allow Substitution of Expert Witness on Account of Death of Jay

Shapiro, CPA, Dkt. 160.

**9. Lucia Coyoca**

Ms. Coyoca is Plaintiffs' former counsel in this litigation. Plaintiffs may call Ms. Coyoca to testify regarding the attorney fees and costs Plaintiffs incurred in this litigation because of Defendant's denial of the Dig claim.

Plaintiffs plan to examine Ms. Coyoca for **0.25** hours. Defendant plans to cross-examine Ms. Coyoca for 1.0 hours.

**10. Pamela Johnson**

Ms. Johnson was Daniel Gutterman's supervisor at OneBeacon. Plaintiffs plan to present deposition testimony of Ms. Johnson or, if she appears at trial, to question her live. Ms. Johnson's testimony will cover Atlantic's investigation, coverage determination, denial of the Dig claim, including what Defendant considered at the time of denial. Plaintiffs may further question Ms. Johnson regarding policy profitability and non-renewal of the Policy.

Plaintiffs will question Ms. Johnson for **0.5** hours. Defendants will cross-examine Ms. Johnson for 2.0 hours.

**11. Daniel Gutterman**

Daniel Gutterman was the claims adjuster assigned to the Dig claim. Plaintiffs plan to present deposition testimony of Mr. Gutterman or, if he appears at trial, to question him live. Plaintiffs believe that Mr. Gutterman resides in the Los Angeles area and is a current employee of OneBeacon and, therefore, anticipate questioning him live. Mr. Gutterman's testimony will cover Atlantic's investigation, coverage determination, and denial of the Dig claim, including what Defendant considered at the time of denial.

Plaintiffs will question Mr. Gutterman for **0.5** hours. Defendants will cross-examine Mr. Gutterman for 1.0 hours.

**12. Peter Williams**

Mr. Williams is a former President of OneBeacon. Plaintiffs may present deposition testimony of Mr. Williams or, if he appears at trial, will question him live.

1   Plaintiffs may call Mr. Williams to testify regarding Atlantic's investigation of the Dig

2   claim, coverage determination, and denial of the Dig claim.  Plaintiffs may further

3   question Mr. Williams regarding policy profitability and non-renewal of the Policy.

4       Plaintiffs plan to question Mr. Williams for **0.2** hours.  Defendants will cross-

5   examine Mr. Williams for 1.0 hours. Plaintiffs may not call Mr. Williams depending on

6   the outcome of motions in limine.

7   **13. Teresa Gooley Wolf**

8       Ms. Gooley Wolf was Vice President of Claims for OneBeacon.  She was Ms.

9   Johnson's supervisor.  Plaintiffs may call Ms. Gooley Wolf to testify regarding

10  Atlantic's coverage determination and denial of the Dig claim, including what

11  Defendant considered at the time of denial.  Plaintiffs plan to present deposition

12  testimony of Ms. Gooley Wolf or, if she appears at trial, will question her live.

13      Plaintiffs plan to question Ms. Gooley Wolf for **0.2** hours.  Defendants will cross-

14  examine Ms. Gooley Wolf for 1.50 hours.  Plaintiffs may not present testimony from

15  Ms. Gooley Wolf depending on the outcome of motions in limine.

16  **14. Sean Duffy**

17      Mr. Duffy was Chief Claims Officer for OneBeacon.  Plaintiffs may present

18  deposition testimony from Mr. Duffy, or if he appears at trial, will question him live.

19  Mr. Duffy's testimony would cover Atlantic's investigation, coverage determination,

20  and denial of the Dig claim, including what Defendant considered at the time of denial.

21  Plaintiffs may further question Mr. Duffy regarding the Policy's profitability and non-

22  renewal.

23      Plaintiffs plan to question Mr. Duffy for **0.2** hours.  Defendants will cross-

24  examine Mr. Duffy for .50 hours.  Plaintiffs are unlikely to present the testimony of Mr.

25  Duffy but may do so depending on the outcome of motions in limine.

26  **15. Dennis Crosby**

27      Mr. Crosby was an Executive Vice President at OneBeacon. Plaintiffs will

28  present deposition testimony from Mr. Crosby or, if he appears at trial, question him

1  live.  Mr. Crosby's testimony will cover Defendant's analysis of the profitability of the

2  Policy, its entertainment division, and Defendant's non-renewal of the Policy.

3      Plaintiffs plan to question Mr. Crosby for **0.2** hours.  Defendants will cross-

4  examine Mr. Crosby for .20 hours.

5  **16. Martin Ridgers**

6      Mr. Ridgers was Senior VP at OneBeacon with oversight for underwriting.

7  Plaintiffs may question Mr. Ridgers regarding the meaning of the Policy.

8      Plaintiffs plan to question Mr. Ridgers for **0.2** hours.  Defendants will cross-

9  examine Mr. Ridgers for 1.0 hours.  Plaintiffs are unlikely to call Mr. Ridgers but may

10  do so depending on the outcome of motions in limine.

11  **17. Wanda Phillips**

12      Ms. Phillips was Senior Underwriting Manager at OneBeacon.  Plaintiffs may

13  present deposition testimony from Ms. Phillips or, if she appears at trial, question her

14  live.  Ms. Phillips' testimony will cover the Policy, including the negotiation and

15  drafting of the Policy and Defendant's decision to accept Dig as an Insured Production.

16      Plaintiffs plan to question Ms. Phillips for **0.2** hours.  Defendant will cross-

17  examine Ms. Phillips for 1.0 hours.  Plaintiffs are unlikely to call Ms. Phillips, but may

18  do so depending on the outcome of motions and limine and disputed jury instructions.

19  **18. Prof. Harold Hongju Koh**

20      Mr. Koh is Plaintiffs' expert on international law.  Plaintiffs may examine Mr.

21  Koh regarding how Hamas' actions directed towards Israel during the summer of 2014

22  were terrorist acts rather than acts of "war" when considered in the context of

23  international law and conflicts.  Mr. Koh may further provide rebuttal testimony to

24  Atlantic's expert opinions regarding the foregoing and related issues.

25      Plaintiffs plan to question Mr. Koh for **0.5** hours.  Defendant plans to cross-

26  examine Mr. Koh for 1.50 hours.  Plaintiffs are unlikely to call Mr. Koh but reserve the

27  right to depending on the outcome of motions in limine.

28  **19. Dr. Matthew Levitt**

JOINT LIST OF WITNESS TESTIMONY SUMMARIES

7060211v1/102884

Mr. Levitt is Plaintiffs' expert on the Israeli-Palestinian conflict, the Gaza Strip, Hamas, its violence and purpose of its attacks, Hamas' actions directed towards Israel during the summer of 2014, and Operation Protective Edge.  Plaintiffs may examine Mr. Levitt on these issues as well as in rebuttal to Atlantic's expert opinions regarding the foregoing and related issues.

Plaintiffs plan to question Mr. Levitt for **0.5** hours.  Defendant plans to cross-examine Mr. Levitt for 1.50 hours.  Plaintiffs are unlikely to call Mr. Levitt but reserve the right to depending on the outcome of motions in limine.

**20. Dennis Ambassador Ross**

Ambassador Ross is Plaintiff's expert on United States foreign policy regarding Israel, the Middle East region, state and non-state actors and other sub-state entities, the foreign policy import of the government determinations about statehood, non-state status, and terrorist entities, and potential import of this case in connection therewith. Plaintiffs may examine Ambassador Ross regarding these issues as well as in rebuttal to Atlantic's experts regarding the foregoing and related issues.

Plaintiffs plan to question Ambassador Ross for **0.5** hours.  Defendant plans to cross-examine Ambassador Ross for 1.50 hours.  Plaintiffs are unlikely to call Ambassador Ross but reserve the right to depending on the outcome of motions in limine.

**21. Ty R. Sagalow**

Plaintiffs will call Mr. Sagalow to provide expert testimony regarding Defendant's bad faith denial of the dig claim.  Mr. Sagalow will testify regarding insurance industry custom and practice, including insurance industry custom and practice as it relates to war exclusions, terrorism coverage and exclusions, the underwriting and drafting of insurance policies, including the war exclusions and terrorism exclusion, and claims handling and investigation.  Mr. Sagalow will also provide rebuttal testimony of Defendant's expert opinions regarding the foregoing and related issues.

JOINT LIST OF WITNESS TESTIMONY SUMMARIES

Plaintiffs will question Mr. Sagalow for **0.75** hours. Defendant will cross-examine Mr. Sagalow for 1.50 hours. Plaintiffs may be able to spend less time questioning Mr. Sagalow depending on the outcome of motions in limine.

**22. Robert Wunderlich, Ph.D.**

Plaintiffs will call Dr. Wunderlich to provide expert testimony regarding Plaintiffs' damages, including Plaintiffs' claim for the extra expenses incurred because of the relocation of the Dig production out of Israel following Hamas' attacks on civilian populations. Dr. Wunderlich's testimony will cover the claim's calculation and substantiation, as well as related accounting standards. Dr. Wunderlich will provide expert testimony in rebuttal to Atlantic's expert opinions regarding Plaintiffs' extra expense claim and related issues.

Plaintiffs will examine Dr. Wunderlich for **0.5** hours. Defendant will cross-examine Dr. Wunderlich for 1.50 hours. Plaintiffs may be able to spend less time questioning Dr. Wunderlich depending on the outcome of motions in limine and Defendant's pending Motion for Leave to Amend Court's Scheduling Order to Allow Substitution of Expert Witness on Account of Death of Jay Shapiro, CPA, Dkt. 160.

**23. Jay Shapiro**

Plaintiffs may present deposition testimony of Mr. Shapiro to rebut Atlantic's arguments regarding Plaintiffs' damages, depending on the outcome of Defendant's pending Motion for Leave to Amend Court's Scheduling Order to Allow Substitution of Expert Witness on Account of Death of Jay Shapiro, CPA, Dkt. 160.

Plaintiffs will present **0.25** hours of testimony from Mr. Shapiro. Defendants will present 1.50 hours of testimony from Mr. Shapiro. Plaintiffs may be able to spend less time presenting Mr. Shapiro's deposition testimony depending on the outcome of motions in limine.

**Defendants' List of Witness Testimony Summaries:**

Defendant's Witness Summaries:

* **Peter Williams (may call if necessary)**

    o Peter Williams was the head of underwriting at OneBeacon when the Plaintiffs' production was insured. Williams worked with Wanda Phillips to gather information about the production and the possible risks associated with insuring a production in Israel. Williams also participated in the discussions with Dennis Crosby and Wanda Phillips to not renew the Plaintiffs' policy with OneBeacon. Williams communicated with Plaintiffs' representatives during the claim process and may testify regarding same.

    o If necessary, Williams may testify about the policy underwritten by OneBeacon and the underwriting process and negotiations that took place prior to the policy being issued. He will discuss the terms of the policy and the exclusions within the policy. Williams will also testify as a non-retained expert on the insurance industry as it applies to the entertainment industry.

    o Defendant plans to question this witness for 1.50 hours.  Plaintiffs will cross-examine this witness for .75 hours.

* **Martin Ridgers (may call if necessary)**

    o Martin Ridgers was a Senior Vice President for OneBeacon and served as head of underwriting, primarily underwriting in the entertainment, sports,

9

and leisure areas. He, along with Peter Williams, Wanda Phillips, and

George Walden negotiated the terms of the policy on behalf of OneBeacon

in their discussions with Susan Weiss and others at Aon. If necessary,

Ridgers may testify to the steps and process of drafting policies generally

and the policy specific to this claim.

o Defendant plans to question this witness for 1.0 hours.  Plaintiffs will

cross-examine this witness for .50 hours.

* <u>**Wanda Phillips**</u> **(may call if necessary)**

o Wanda Phillips was the underwriter for the Plaintiffs' television

production portfolio insurance policy. Phillips was a participant in the

conversations prior to the extension of coverage with the Plaintiffs.

o She may discuss the needs of the Plaintiffs that OneBeacon addressed

before extending coverage. She will discuss the policy form that was

generated for the Plaintiffs and how the underwriting process with the

Plaintiffs was negotiated. Phillips will also discuss the nature of the

relationship OneBeacon had with Aon Entertainment, the policy brokers,

and the common practices at OneBeacon when underwriting entertainment

policies.

JOINT LIST OF WITNESS TESTIMONY SUMMARIES

7060211v1/102884

o   Defendant plans to question this witness for 1.0 hours.  Plaintiffs will cross-examine this witness for .50 hours.

o

**Pamela Johnson**

o   Pamela Johnson was the claims lead for OneBeacon's entertainment insurance group.  Her duties were to interact with brokers and provide assistance needed with matters associated with the claims her group handled. Johnson took the lead regarding the investigation and claim decision at issue. Johnson will testify regarding the claim investigation, including the extent of information received from Plaintiffs, ASIC's research, study, and communications with Plaintiffs' and their representatives regarding the claim.  She will testify regarding the timeline of the adjustment of the claim. Johnson will specifically testify about the materials she and ASIC relied upon when she determined that the war exclusions applied to preclude coverage.

o   Johnson will testify that the information understood by ASIC regarding the conflict supported the conclusion that one or more of the war exclusions applied to preclude coverage. Johnson will testify that her analysis was thorough, she believed it was reasonable, and she relied on numerous media reports, documents from the United States and Foreign Governments, and controlling legal authority to determine that the war

JOINT LIST OF WITNESS TESTIMONY SUMMARIES

7060211v1/102884

exclusions in the Plaintiffs' policy were triggered. She will testify about the context of the coverage decision, including her discussions with her supervisors, the research of her team, and her communications with the Plaintiffs' and their representatives.

o   Defendant plans to question this witness for 2.50 hours.  Plaintiffs will cross-examine this witness for 1.0 hour.

o

**Daniel Gutterman**

o   Daniel Gutterman was a claims handler at OneBeacon and worked directly with Pamala Johnson to investigate the Plaintiffs' claim. He had past experience in the insurance industry and some prior experience in the entertainment industry. Gutterman will testify about the research conducted on the nature of the conflict and the region. He will discuss the numerous media and governmental resources he reviewed to understand the details of the conflict, and that he relied on these sources to assist with the coverage analysis. Gutterman will also testify about the timeline and process of the insurance group from the day the Plaintiffs' claim was first submitted till the end of the process.

o   Defendant plans to question this witness for 1.50 hours.  Plaintiffs will cross-examine this witness for .50 hours.

o

\* **<u>Sean Duffy</u> (may call if necessary)**

  o Sean Duffy was a Senior Vice President and Chief Claims Officer at OneBeacon Insurance Group and has been in that position since April 2010. Duffy supervised the claims operation, including Pamela Johnson. Duffy may testify that while he supervised the claims operation, the decision on coverage for the Dig claim was left to Johnson and that is true for all of the adjusters in the claims department. Additionally, Duffy may testify to the general claims handling practices that OneBeacon used in its daily operations and the objective provided to claim personnel.

  o Defendant plans to question this witness for .50 hours.  Plaintiffs will cross-examine this witness for .50 hours.

  o

**<u>Theresa Gooley Wolf</u>**

  o Theresa Gooley Wolf was the Vice President of Claims at OneBeacon, overseeing between five and six claims managers, including Pamela Johnson. Wolf worked with Johnson directly and had many discussions with Johnson about the claim investigation, the research Johnson had conducted, the facts and materials reviewed, and war exclusions.  Wolf will also testify she concluded that the claim decision was proper and reasonable based on the facts and circumstances of the claim and applicable Policy provisions.

13

JOINT LIST OF WITNESS TESTIMONY SUMMARIES

7060211v1/102884

o Gooley will also testify about the communications between herself, Johnson, Peter Williams, and Plaintiff, and/or Plaintiffs' representatives regarding the decision to deny the claim and the basis for the decision. Additionally, Wolf was involved in the discussions to not renew the Plaintiffs' policy with OneBeacon and may testify to the context and proceedings involved in that decision, if necessary.

o Defendant plans to question this witness for 2.0 hours. Plaintiffs will cross-examine this witness for .50 hours.

o

**Aaron Stone**

o Aaron Stone is a Vice President of ASIC and is the 30(b)(6) designated witness for ASIC regarding the claim investigation, decision, and related issues. Stone is knowledgeable of the terms of ASIC policy, and the facts surrounding the Plaintiffs' claim, including the basis for the decision to deny the claim. Stone will testify about ASIC's understanding of the specific terms of the policy, their interpretation of the exclusions in that policy, investigation and the application of those terms in the final coverage decision.

14

o   Stone will testify regarding the specific prongs of the war exclusion. Stone will also testify about the claims practices of ASIC for claim handling.

o   Defendant plans to question this witness for 2.50 hours.  Plaintiffs will cross-examine this witness for .50 hours.

o

**Stephen Smith**

o   Stephen Smith was the Head of security Europe for the Plaintiffs' company, he was tasked with supporting the Plaintiffs' production to ensure that personnel, assets, reputation, and other content are secured, and their risk is mitigated. Smith is knowledgeable of the security concerns the Plaintiffs' production faced while in Israel during the conflict. Randi Richmond was Smith's primary point of contact with the Plaintiffs' production. Smith assessed the nature of the conflict while it was ongoing and provided his recommendations to the Plaintiffs, advising them that the security team could not guarantee the safety of the personnel in Israel during the conflict.

o   Smith will also discuss the daily intelligence updates he received during the production regarding the security situation in the region. He will explain that he relies on several sources when making his assessment of security risks a production may encounter, including reports from Northcott Global Solutions, OSAC, Max Security Intelligence, and

JOINT LIST OF WITNESS TESTIMONY SUMMARIES

7060211v1/102884

Control Risk Group. Smith also will testify that he reviews open source information from media organizations, including NBC News, reports and bulletins from Foreign and U.S. Governments.

o   Defendant plans to question this witness for 1.50 hours.  Plaintiffs will cross-examine this witness for 0 hours (otherwise accounted for on Plaintiffs' chart).

o

**Tom McCarthy**

o   Tom McCarthy is the Global Chief Security Officer for NBCUniversal and held this same position in June and July of 2014. McCarthy may discuss the information known to him and provided to him in June and July of 2014 regarding the conflict between Israel and Hamas and how he applied that information when determining if the security of the production could be secured. McCarthy did not participate in the decision to move the production from Israel but he will testify that he communicated with numerous sources, including Lon Austinberg, a former station chief for the CIA and generated various security assessments in order to put together a recommendation for Mark Binke and Jeff Wachtel. McCarthy may testify that the information he reviewed established that there was very low likelihood for a reduction in violence in the region.

JOINT LIST OF WITNESS TESTIMONY SUMMARIES

7060211v1/102884

o Defendant plans to question this witness for 1.0 hours. Plaintiffs will cross-examine this witness for 0 hours (otherwise accounted for on Plaintiffs' chart).

o

**Randi Richmond**

o Randi Richmond is the Senior Vice President of Production with Universal Cable Productions; she oversees television shows in their production phase. She oversaw the production of Dig and can testify to the security decisions made for the Dig production team. Richmond may also discuss the expenses involved in the production and the extra expenses incurred after moving the production of Dig. She may also discuss the expenses that are included and excluded from the Plaintiffs' claim for damages and the payments made by the Plaintiffs' to outside vendors in connection with the expenses incurred to relocate production.

o Defendant plans to question this witness for 1.50 hours. Plaintiffs will cross-examine this witness for 0 hours (otherwise accounted for on Plaintiffs' chart).

o

**Mark Binke**

o Mark Binke is the Executive Vice President of Production with Universal Cable Productions, he oversees and manages the executives that supervise

17

7060211v1/102884

the production of Universal Cable's shows. Binke supervised and managed the production of Dig and he was involved in the decision to ultimately move the production of Dig from Israel. He was informed by Jeff Wachtel, the president of Universal Cable Production, that the decision to move production had been made.

o Binke may testify about the reports from Stephen Smith concerning the significant security issues in Israel as the conflict was unfolding and Smith's assessment of the security risk that was developing in the region. He may also discuss his recommendation to Jeff Wachtel advising him to push production. Binke was also involved in the decision to move production from Israel to Croatia and Albuquerque and may testify regarding same.

o Defendant plans to question this witness for 1.0 hours. Plaintiffs will cross-examine this witness for 0 hours (otherwise accounted for on Plaintiffs' chart).

o

* __Malika Adams__ **(may call if necessary)**
   o Malika Adams was a senior analyst with Comcast, her primary responsibility was ensuring that networks or joint ventures had the proper insurance coverage as they were being integrated with the NBCUniversal networks and she assisted in gathering underwriting information for some

insurance renewals. Adams may testify to the coverage needs that the Plaintiffs' production required at the time. Additionally, Adams may testify about communications she had with Randi Richmond and others wherein she advised them that she did not believe there was coverage for moving the production under the policy due to the war exclusion.

- o Defendant plans to question this witness for 1.0 hours. Plaintiffs will cross-examine this witness for 0 hours (otherwise accounted for on Plaintiffs' chart).

- o

* **Andrea Garber (may call if necessary)**
  - o Andrea Garber acted as a liaison between Aon and NBCUniversal and was responsible for communicating information between NBCUniversal and their insurers to make sure that there was an appropriate claims response from the carrier when it was needed. Her primary contact with NBCUniversal was with Kurt Ford a Senior Vice President of Production Services. She worked directly with Susan Weiss and Val Beckles at Aon and she worked with Wanda Phillips at ASIC.
  - o If needed, Garber may testify about the process ASIC and Aon used to negotiate the policy in this case. She may also testify regarding her correspondence with NBC representatives and ASIC regarding the declaration of the Dig production to the policy. Additionally, Garber may

JOINT LIST OF WITNESS TESTIMONY SUMMARIES

testify that she did not speak with anyone at ASIC regarding coverage for imminent peril prior to the Dig claim, that she and Adams investigated whether coverage might be available after Adams raised concerns regarding the war exclusion, and damage calculation methodology.

- o Defendant plans to question this witness for 1.50 hours. Plaintiffs will cross-examine this witness for 0 hours (otherwise accounted for on Plaintiffs' chart).

- o

**\* <u>Susan Weiss</u> (may call if necessary)**

- o Susan Weiss has worked at Aon since 1997 and has acted a Senior Vice President, Officer of the company, and National Contingency Director, while with Aon. Weiss was involved in the negotiation of the production policy between NBCUniversal and ASIC.

- o Weiss may testify regarding   NBCUniversal's concerns regarding mounting tension in Israel and whether coverage would exist for the production and her conversation with NBC in June 2014 that there was not coverage. She may also testify to the concerns raised by Adams regarding coverage under the policy because of the war exclusion and that she did not seek an opinion from others regarding coverage until after the claim was denied because the language of the policy spoke for itself. Additionally, Weiss was involved in the circumstances surrounding the

JOINT LIST OF WITNESS TESTIMONY SUMMARIES

7060211v1/102884

non-renewal of the NBC policy and may testify to those circumstances, if necessary.

o   Defendant plans to question this witness for 1.0 hours. Plaintiffs will cross-examine this witness for 0 hours (otherwise accounted for on Plaintiffs' chart).

o

**\* <u>Kurt Ford</u>**

o   Kurt Ford is a Senior Vice President of Production Services at NBCUniversal, he oversees the production services department which facilitates producing television shows. He was responsible for obtaining adequate coverage for all exposures for the production of Dig and he was involved in the discussions regarding pushing the production of Dig and ceasing production in Israel. Ford may also testify about the concerns from Comcast and others in his organization that the war exclusion may preclude coverage for the decision to move production. He may also testify about the communications between the Plaintiffs and ASIC after the coverage decision was made.

o   Defendant plans to question this witness for 1.50 hours. Plaintiffs will cross-examine this witness for 0 hours (otherwise accounted for on Plaintiffs' chart).

o

21

7060211v1/102884

\* **Dennis Crosby (may call if necessary)**

  o Dennis Crosby is an Executive Vice President for OneBeacon Insurance Group.

  o Crosby may testify regarding the decision to not renew the policy. Crosby will testify that the overall profitability of the NBCUniversal account was not considered in deciding whether or not to deny the Dig claim.

  o Defendant plans to question this witness for .50 hours. Plaintiff will cross-examine this witness for .75 hours.

  o

**B.J. Markus**

  o B.J. Markus is a Vice President of Production Finance with NBCUniversal and she oversaw the finances on the Dig production. She is expected to testify about the budget allocated for production of Dig, the expenses incurred after production was moved, and her involvement in determining the extra expense that was incurred because of the move from Israel. Markus may also discuss the instructions she was given by Garber to determine extra expense by calculating incremental costs compared to what would have been spent if the production had remained in Israel. Additionally, Garber is able to testify about the tax credits received by the Plaintiffs for producing Dig in Israel.

JOINT LIST OF WITNESS TESTIMONY SUMMARIES

7060211v1/102884

1
2
3
4

o   Defendant plans to question this witness for 1.50 hours. Plaintiffs will cross-examine this witness for 0 hours (otherwise accounted for on Plaintiffs' chart).

5
6

o

**Professor John Quigley**

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

o   Professor John Quigley is a law professor and expert on international law and is an expert in the nature of "war," statehood, state actors and sovereignty, as well as, an expert in Israeli-Palestinian relations. Quigley's will testify that the 50-day conflict between Israel and Hamas was a war, that it was waged with weapons of war, and that it constituted war-like actions and defense against war-like action. Based on his extensive knowledge of the parties in the region, he will testify that Hamas is part of the government of the State of Palestine and the hostilities constituted a war between the two states. Further, that the hostilities involved territory under belligerent occupation, and that Hamas is at the very least a de facto administration governing territory. He will testify the actions taken by the military forces of the two sides that constituted warlike actions and defense against the same.  He will testify in rebuttal to Plaintiffs' experts.

25
26

o   Defendant plans to question this witness for 2.0 hours.  Plaintiffs will cross-examine this witness for .75 hours.

27
28

o

JOINT LIST OF WITNESS TESTIMONY SUMMARIES

7060211v1/102884

**Dr. Ingrid Detter de Frankopan**

- o  Dr. Ingrid Detter de Frankopan is a barrister, professor of international law, and is an expert in the law of war and armed conflict, retained by ASIC. Dr. Frankopan will testify that based on the duration and intensity of the fighting, number of casualties, and other specifics of the conflict, it is her opinion that the conflict was a war. Specifically, Frankopan will testify that the violence involved in the conflict was both intense and sustained and showed all the essential elements to qualify as a war situation. Further, the use of uniformed soldiers answering to hierarchical commands, the use of heavy weapons such as air-strikes, artillery, and rockets, as well as, the conditions of required level of intensity and length of sustained attacks were fulfilled for the conflict to be classified as a war rather than mere sporadic attacks or incursions.  Will also testify in rebuttal to Plaintiffs' experts.

- o  Defendant plans to question this witness for 1.50 hours. Plaintiffs will cross-examine this witness for .50 hours.

- o

**Frank Lowenstein**

- o  Frank Lowenstein is a retained expert for ASIC and the former Special Envoy for Israeli-Palestinian Negotiations with the U.S. Department of State. Lowenstein will testify that the conflict at issue in this case was a

war, constituted war like actions by a military force, involved weapons of war, and/or was also an insurrection, rebellion, or usurpation of power. Based on the scale of the devastation and the mobilization on both sides, it is Lowenstein's opinion that the conflict clearly constituted a war as the term is commonly used and understood in the 21st Century. Lowenstein will also testify that he and his colleagues at the State Department frequently referred to the conflict at issue in this case as a war while it was taking place. Will also testify in rebuttal to Plaintiffs' experts

o Additionally, Lowenstein will testify that Hamas would at minimum qualify as a semi-sovereign state given the authority that it holds in Gaza and the organizations exercise of the traditional attributes of sovereignty in Gaze including collecting taxes, operating the boarders, employing thousands of civil service employees and keeping its own military and security forces.

o Defendant plans to question this witness for 2.0 hours.  Plaintiffs will cross-examine this witness for .75 hours.

o

**Anthony Clark**

o Anthony Clark is a retained expert for ASIC and a principal with Clark Insurance Arbitration & Consulting, LLC, with over 40 years of experience as a property insurance adjuster, supervisor, and claims officer.

7060211v1/102884

Clark will testify that ASIC properly conducted a thorough and timely investigation into the circumstances surrounding the Plaintiffs' claim and made a reasonable determination under the terms and conditions of the applicable policy of insurance that the war exclusions applied. Based on this analysis Clark will testify that there are no facts demonstrating a lack of good faith or failure on the part of Atlantic to act in a reasonable fashion.

o   Additionally, Clark will testify that the coverage was precluded by applicable exclusions in the policy and that this determination was made solely from the specific circumstances as they were made known to, investigated by, and considered by ASIC. Further, nothing in the claim file or in any other actions of ASIC indicates that any other extraneous motives affected the ultimate claim decision. Will also testify in rebuttal to Plaintiffs' experts.

o   Defendant plans to question this witness for 1.50 hours. Plaintiffs will cross-examine this witness for .75 hours.

o

**Jay Shapiro**

o   Jay Shapiro, deceased, was a rebuttal expert witness for ASIC and the founder of Jay Shapiro CPA, a professional services firm that provides consulting regarding financial and accounting issues with a specialization in entertainment and media matters. Shapiro was engaged to evaluate the

7060211v1/102884

Plaintiffs' extra expense claim and the Plaintiff Expert Report of Robert Wunderlich. He has testified in deposition on cross-examination that methods used to calculate the expenses incurred by the Plaintiffs to relocate production are flawed and not sufficient to make a definitive determination about whether each individual expense was incurred as a result of relocation or whether it would have been incurred had the production stayed in Israel. Notably, Defendant reserved its questions of Shapiro until the time of trial. As a result, his opinions and the basis for them are not fully developed in his deposition testimony. His testify reflects that Specifically, Plaintiffs' Damages claim may not include sufficient extractions from the total amount of expenses incurred to reach the number of "extra expenses" that would not have been incurred had the production of Dig stayed in Israel, which causes the damages calculation to be higher than it should be. He was of the opinion that Plaintiffs' expert Wunderlich's methodology was flawed.

o Further, it was Shapiro's opinion that a possible claim for extra expenses in this matter should not exceed $2,357,875. Shapiro's analysis is based on documents he reviewed including detailed ledgers, cost reposts, production recap reports, budgets, and other financial data regarding the New Mexico and Croatia production of "Dig" and the Plaintiffs' First Amended Complaint.

JOINT LIST OF WITNESS TESTIMONY SUMMARIES

- Defendant plans to question this witness for 2.0 hours. Plaintiffs will cross-examine this witness for .75 hours.

-

**Shannon Rusnak**

- Shannon Rusnak is a Senior Vice President, Forensic Accounting, J.S. Held LLC.   Defendant's have sought leave to designation her as a substitute expert witness and its motion is pending. If leave to designate is granted, she will prepare a report, give a deposition, and testify regarding Plaintiffs' damage claim and Wunderlich's methodology. She has or will review the financial data considered by Wunderlich and Shapiro. Will also testify in rebuttal to Plaintiffs' experts.

- Defendant plans to question this witness for 2.50 hours. Plaintiffs will cross-examine this witness for 1 hour.

**Defendant objects to Plaintiff calling George Walden or Lucia Coyoca because neither were timely disclosed; Coyoca was not designated as an expert or fact witness.  All designations and descriptions herein are subject to the parties' motions in limine.**

DATED:      January 3, 2020            SUSMAN GODFREY L.L.P.

                                       _/s/ [Draft]_____
                                       KALPANA SRINIVASAN (237460)
                                       ksrinivasan@susmangodfrey.com

28

7060211v1/102884

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JACOB W. BUCHDAHL
(*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas,
32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

/s/ Melinda Burke
MARC J. SHRAKE
FREEMAN MATHIS & GARY,
LLP
550 South Hope Street, Suite 2200
Los Angeles, CA 90071-2631
Tel: (213) 615-7039 -and- MICHAEL
KEELEY (pro hac vice) JOHN R.
RIDDLE (pro hac vice) TONI SCOTT
REED (pro hac vice) CLARK HILL
STRASBURGER
PLC
901 Main Street, Suite 6000
Dallas, TX 75202
Tel: (214) 651-4718
MELINDA R. BURKE (pro hac vice)
MARTIN DISIERE JEFFERSON
AND WISDOM LLP

29

9111 Cypress Waters Boulevard, Suite 250
Dallas, TX 75019
Tel: (214) 420-5500
Fax: (214) 420-5501
burke@mdjwlaw.com
Attorneys for Defendant

Attestation Regarding Signatures

I, Kalpana Srinivasan, attest that all signatories listed, and on whose behalf
the filing is submitted, concur in the filing's content and have authorized the filing.

/s/ Kalpana Srinivasan
Kalpana Srinivasan

JOINT LIST OF WITNESS TESTIMONY SUMMARIES

7060211v1/102884

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I certify that on January 3, 2020, I filed the foregoing with the Clerk of the United States District Court for the Central District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ Kalpana Srinivasan*
Kalpana Srinivasan

31

JOINT LIST OF WITNESS TESTIMONY SUMMARIES

7060211v1/102884