KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ATLANTIC SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | Case No.: 2:16-cv-4435-PA-MRW <br><br> The Honorable Percy Anderson Dept. 9A <br><br> **JOINT LIST OF DEPOSITION TESTIMONY TO BE OFFERED AT TRIAL** |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Pursuant to section III.A.10 of the Court's Civil Trial Scheduling Order, Plaintiffs Universal Cable Productions and Northern Entertainment Productions LLC, together with Defendant Atlantic Specialty Insurance Company, submit the following list of deposition designations, objections, and responses.

Below is a key code for Plaintiffs' objections to Defendant's designations:

| CODE | OBJECTION DESCRIPTION |
| --- | --- |
| A | Argumentative |
| AS | Attorney statement; no question asked |
| CC | Calls for a conclusion |
| CD | Compound |
| IO | Improperly includes attorney objection |
| IP | Improper hypothetical |
| LC | Legal Conclusion |
| LW | (Law) court decisions, statutes, regulations |
| MIL | Subject of a pending motion in limine |
| MT | Misstates prior testimony |
| NA | Calls for narrative |
| NR | Non-responsive |
| O | Overbroad |
| V | Vague |
| 26(2) | Expert testimony not disclosed in an expert report |
| 69 | Priority date, enablement written description |
| 30b6 | Outside the scope of FRCP 30(b)(6) deposition topics for which the witness is designated |
| 103 | Assumes facts not in evidence |
| 104a | Foundation |
| 106 | Completeness |

| CODE | OBJECTION DESCRIPTION |
| --- | --- |
| 402 | Relevance |
| 403 | Asked and answered, unduly prejudicial, confusing, misleading, wastes time, cumulative |
| 501 | Privileged and/or improperly seeks privileged information |
| 602 | Calls for speculation; Speculative |
| 611b | Outside the scope of direct examination |
| 611c | Leading |
| 701 | Improper opinion by lay witness |
| 702 | Improper opinion by expert |
| 703 | Improper basis for expert opinion |
| 704 | Opinion on an ultimate Issue |
| 802 | Hearsay, multiple hearsay |
| 901 | Authenticity |

7060055/015825

# PLAINTIFFS' DEPOSITION DESIGNATIONS

## DENNIS A. CROSBY (30(b)(6))—May 17, 2017

| Deposition Designation | Objection & Response |
|---|---|
| Plaintiff's Designation of Dennis A. Crosby (30)(b)(6)) 5:12-22; 6:18-25; 7:1-4; 10:16-25; 11:1-3): | |
| Page 5 | |
| 12  Q   I want you to turn to the pages marked 11 | |
| 13        and 12.    And I'd like you to read to yourself the | |
| 14        topics marked 48 and 49 and let me know when you're | |
| 15        done. | |
| 16  A   (Witness reviews document.) | |
| 17        48 and 49, correct? | |
| 18  Q   Yes. | |
| 19  A   I've read them. | |
| 20  Q   Have you been designated to testify on | |
| 21        behalf of Atlantic in response to those topics? | |
| 22  A   Yes, I have. | |
| | |
| Page 6 | Defendant's Objections: |
| 18  Q   When was the decision not to renew the | (6:18-25) Policy and |
| 19        NBC Universal policy made? | underwriting issues are not |
| 20  A   I'm unsure of the exact date, but it was | relevant; confusing; |
| 21        roughly a month before the expiration date of the | prejudicial |
| 22        NBC Universal policy. | FRE 401;403 |
| 23  Q   Who made the decision? | |
| 24  A   Peter Williams. | Plaintiff's Response: |
| 25  Q   Did you approve Peter's decision? | Relevant to bad faith |
| | |
| Page 7 | Defendant's Objections: |
| 1   A   Yes, I did. | (7:1-4) Policy and |
| 2   Q   What was Peter's decision based on? | underwriting issues are not |
| 3   A   The actuarial and underwriting work we | relevant; confusing; |

| Deposition Designation | Objection & Response |
|---|---|
| 4     did around the profitability of NBC Universal. | prejudicial<br>FRE 401;403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| <u>Page 10</u><br>16   Q   I recall from your prior testimony that<br>17     you referenced a figure in connection with the NBC<br>18     Universal account over the 2013, 2014 and 2015<br>19     period, and let me know if this is accurate. I<br>20     recall you said that over that period OneBeacon had<br>21     paid NBC Universal more in claims than it had<br>22     received from NBC Universal in premiums; is that<br>23     right?<br>24   A   Yes, it is.<br>25   Q   And the ratio that you stated was for | <u>Defendant's Objections</u>:<br>(10:16-25) Premium, loss ratios are not relevant, prejudicial, and a waste of time<br>FRE 401, 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| <u>Page 11</u><br>1     every $100 OneBeacon received in premiums, it paid<br>2     $130 in claims to NBC Universal; is that right?<br>3   A   Over time, yes, that is correct. | <u>Defendant's Objections</u>:<br>(11:1-3) Premium, loss ratios are not relevant, prejudicial, and a waste of time<br>FRE 401, 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |

7060055/015825

**DENNIS A. CROSBY—May 17, 2017**

| Deposition Designation | Objection & Response |
|---|---|
| Plaintiff's Designation of Dennis A. Crosby<br>5:3-5:6; 6:19-7:19; 11:17-12:5; 13:13-13:15; 13:17;<br>16:7-16:22; 19:1-19:5; 19:9-19:10; 20:5-20:7; 20:10;<br>20:12-20:13; 20:15; 20:17-20:24; 107:15-109:25;<br>111:7-111:11; 114:3-115:12; 116:16-119:21; 121:6-<br>121:20; 125:4-125:6; 126:25-127:22; 127:25-128:3;<br>147:7-149:8; 149:13-149:14; 149:18-149:19; 149:22-<br>151:1; 152:1-152:3; 152:5-152:8; 153:3-153:17;<br>153:24-154:4; 156:2-156:25; 163:10-165:3; 165:9-<br>168:9; 168:13-169:3; 169:6-169:7; 174:16-17+:22;<br>186:7-187:6; 199:1-200:4; 203:23-204:12; 205:16-<br>205:18; 207:4-209:10; 209:13-211:1; 213:6-214:21;<br>214:25-215:16; 217:2-220:14; 229:12-230:6; 232:20-<br>233:14; 233:16-24; 234:1-7; 234:10-13; 234:16-21;<br>234:23-235:2; 235:4-10; 235:13-14; 235:16-22;<br>235:24-236:3; 236:6-238:23 | |
| Page 5<br>3   Q   Good morning, Mr. Crosby.<br>4   A   Good morning.<br>5   Q   Please spell your name for the record.<br>6   A   Dennis, D-E-N-N-I-S, Crosby, C-R-O-S-B-<br>       Y.<br><br>Page 6<br>19   Q   Okay. Where do you work?<br>20   A   Alpharetta, Georgia.<br>21   Q   For what company?<br>22   A   OneBeacon Insurance Group.<br>23   Q   What is your title?<br>24   A   Executive vice president.<br>25   Q   Anything else to that title?<br><br>Page 7<br>1   A   No.<br>2   Q   Okay. Are you the head of a department?<br>3   A   I'm responsible for the business aspect | |

| Deposition Designation | Objection & Response |
|---|---|
| 4      of what OneBeacon does, the revenue generating<br>5      businesses.<br>6   Q   What does OneBeacon do?<br>7   A   Specialty property and casualty<br>8      insurance.<br>9   Q   What does it mean that you're responsible<br>10      for the revenue generating part of what OneBeacon<br>11      does?<br>12   A   I allocate capital, I help with strategy<br>13      for the businesses and the operational aspect of<br>14      them, including their P&Ls, profit -- their profit<br>15      and loss statements.<br>16   Q   You're one of the people responsible for<br>17      making sure that OneBeacon is a profitable<br>18      business; is that fair?<br>19   A   Yes.<br><br>Page 11<br>17      Do you have any responsibility in<br>18      connection with underwriting at OneBeacon?<br>19   A   Yes, I do.<br>20   Q   And what is your responsibility?<br>21   A   I'm responsible for strategy, P&L, profit<br>22      and loss, of the businesses that we have.<br>23   Q   And when you say "businesses that we<br>24      have," are you referring to the different divisions<br>25      within OneBeacon that write insurance for different<br><br>Page 12<br>1      industries; is that fair?<br>2   A   Yes.<br>3   Q   One such industry is the entertainment | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br>(11:17-25) Profit and loss not relevant to claim decision; prejudicial; waste of time FRE 401, 403<br><br><br>Plaintiff's Response:<br>Relevant to bad faith<br><br><br><br>Defendant's Objections:<br>(12:1-5) Profit and loss not relevant to claim decision; prejudicial; waste of time |

| Deposition Designation | Objection & Response |
|---|---|
| 4       industry?<br>5    A    Yes. | FRE 401, 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 13<br>13   Q    And does OneBeacon have any goals or<br>14         benchmarks in terms of profitability of a<br>15         particular business?<br><br>17   A    Yes. | Defendant's Objections:<br>(13:13-15, 17) Profit and loss not relevant to claim decision; prejudicial; waste of time FRE 401, 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |
| | Defendant's Objections:<br>(16:7-22) Profit and loss not relevant to claim decision; prejudicial; waste of time FRE 401, 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |
| | Defendant's Objections:<br>(19:5, 9-10,) Profit and loss not relevant to claim decision; prejudicial; waste |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | of time FRE 401, 403 |
| | Plaintiff's Response: Relevant to bad faith |
| | Defendant's Objections: (20:5-7, 10, 12-13, 15, 17-24) Profit and loss not relevant to claim decision; prejudicial; waste of time FRE 401, 403 |
| | Plaintiff's Response: Relevant to bad faith |
| Page 107<br>15  Q   Mr. Crosby, do you recognize the document<br>16        marked Exhibit 2?<br>17  A   I do.<br>18  Q   What is it?<br>19  A   It's an update on the status of OBE at<br>20        the beginning or so of February of '16.<br>21  Q   Is this a PowerPoint presentation?<br>22  A   Yes. | Defendant's Objections: (107:15-25) Profit and loss not relevant to claim decision; unfair prejudice; confuses issues; waste of time; object to exhibit 2 and 3 FRE 401, 403 |

1

22

23

24

25

26

27

28

**9**

| Deposition Designation | Objection & Response |
|---|---|
| 23  Q   And was it presented at a meeting? | <u>Plaintiff's Response</u>: |
| 24  A   Yes, it was. | Relevant to bad faith |
| 25  Q   Who attended the meeting at which it was | |
| | |
| <u>Page 108</u> | <u>Defendant's Objections</u>: |
| 1        presented? | (108:1-25) Profit and loss not |
| 2        A   Mike Miller, CEO, myself, Jeff Richardson | relevant to claim decision; unfair prejudicial; confuses |
| 3        and Joe, the leader of OBE. | issues; waste of time: object |
| 4   Q   Joe Fitzgerald? | to exhibit 2 and 3  FRE 401, |
| 5   A   Correct. | 403 |
| 6   Q   And this meeting occurred on or about | |
| 7        February 17th, 2016? | |
| 8   A   That's correct. | <u>Plaintiff's Response</u>: |
| 9   Q   Was this lawsuit discussed at that | Relevant to bad faith |
| 10       meeting? | |
| 11  A   No. | |
| 12  A   What was the purpose of the meeting? | |
| 13  A   We had become -- we had started really | |
| 14       working on the profitability of the entertainment | |
| 15       portfolio, and this was basically a recap of the | |
| 16       things that were in works and also slated to be | |
| 17       done relative to how we'd set up the plan rolling | |
| 18       into 2016. | |
| 19  Q   Was NBC Universal discussed? | |
| 20  A   It's on one of the pages.       No specific | |
| 21       account was discussed. It was informational. | |
| 22  A   Do you recall discussing NBC Universal at | |
| 23       the meeting? | |
| 24  A   No, I do not. | |
| 25  Q   Do you know which page NBC Universal or | |
| | |
| <u>Page 109</u> | <u>Defendant's Objections</u>: |
| 1        pages NBC Universal is referenced? | (109:1-25) Profit and loss not |
| 2   A   I believe I can find them.  It appears to | relevant to claim decision; |

| Deposition Designation | Objection & Response |
|---|---|
| 3     be on Page 14 of the PowerPoint.<br>4  Q  Is NBC Universal referenced on any of the<br>5     other pages?<br>6  A  Not to my knowledge.<br>7  Q  NBC Universal is referenced on the page<br>8     marked ATL6970; is that right?<br>9  A  That's correct.<br>10  Q  And the reference states: NBC Universal<br>11     - 3 year WP $4.4 million/Losses $6.0 million. Do<br>12     you see that?<br>13  A  I do.<br>14  Q  What does WP stand for?<br>15  A  Written premium.<br>16  MR. KEELEY: Dan, pardon the<br>17     interruption, you had asked for copies of the<br>18     PowerPoint showing the redactions. I've got copies<br>19     of them.<br>20  MR. HAYES: Okay. Let's introduce<br>21     Exhibit 3. This is the document I've been handed<br>22     which, according to counsel, shows the redactions<br>23     made on the PowerPoint that's been marked<br>24     Exhibit 2.<br>25     (Deposition Exhibit 3 marked.) | unfair prejudicial; confuses issues; waste of time: object to exhibit 2 and 3  FRE 401, 403<br><br><br><u>Plaintiff's Response:</u><br>Relevant to bad faith; exhibits 2 and 3 relevant to bad faith, are business records, statements by party opponent, and authentic as they were produced from Defendant's files. |
| Page 111<br>7  Q  Let me make sure I understand what this<br>8     is, Mr. Crosby. This PowerPoint is a discussion of<br>9     the OneBeacon Entertainment Group in particular; is<br>10     that right?<br>11  A  That is correct.<br><br>Page 114<br>3  Q  Okay. I want you to look at 6988. It's | <u>Defendant's Objections:</u><br>(111:7-11) Profit and loss not relevant to claim decision; unfair prejudicial; confuses issues; waste of time ;<br>FRE 401, 403<br><br><u>Plaintiff's Response:</u><br>Relevant to bad faith<br><br><u>Defendant's Objections:</u><br>(114:3-25) Profit and loss not relevant to claim decision; |

| Deposition Designation | Objection & Response |
|---|---|
| 4     titled Message to the Team. Do you see that?<br>5   A   Yes, I do.<br>6   Q   By the way, who presented this<br>7     PowerPoint?<br>8   A   Joe Fitzgerald.<br>9   Q   Was he the author, if you know?<br>10   A   Yes, he was the author.<br>11   Q   Did you take part in authoring any part<br>12     of this document?<br>13   A   I did not.<br>14   Q   Do you know if anyone else other than Joe<br>15     Fitzgerald took part in authoring any part of this<br>16     document?<br>17   A   I do not know.<br>18   Q   On Page 6988 at the top it says Message<br>19     to the Team. Directly underneath Message to the<br>20     Team, it says, Underwriting Comes First. What does<br>21     that mean to you?<br>22   A   Risk selection and pricing comes first.<br>23   Q   When you say "risk selection," what do<br>24     you mean?<br>25   A   Underwriting. | unfair prejudicial; confuses issues; waste of time ; FRE 401, 403<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 115<br>1   Q   Selecting which risks to insure?<br>2   A   Correct.<br>3   Q   Second line, Proactive instead of<br>4     Reactive, what does that mean to you?<br>5   A   Waiting for things to happen to you as<br>6     opposed to being proactive with your brokers<br>7     relative to the kind of business they send you, the<br>8     things that they send you, they need to understand<br>9     your appetite. Proactive with the market. | Defendant's Objections:<br>(115:1-12) Profit and loss not relevant to claim decision; unfair prejudicial; confuses issues; waste of time ; FRE 401, 403<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 10 Q   The brokers need to understand the<br>11       underwriter's appetite?<br>12 A   Correct.<br><br>Page 116<br>16 Q   Last line, Bottom-line over Topline -<br>17       Profitability is the Goal. What does that<br>         mean?<br>18 A   The entertainment business needed to be<br>19       in a position to make money at OneBeacon.<br>20       Historically, they had not. So the bottom<br>         line,<br>21       the amount of money we make, versus just<br>         growing<br>22       the business unprofitably.<br>23 Q   So selecting accounts that would be<br>24       profitable as opposed to just trying to grow<br>         the<br>25       gross number of accounts in the<br>         entertainment | **Defendant's Objections**:<br>(116:16-25) Profit and loss<br>not relevant to claim<br>decision; unfair prejudicial;<br>confuses issues; waste of<br>time; FRE 401, 403<br><br><br>**Plaintiff's Response**:<br>Relevant to bad faith |
|  | **Defendant's Objections**:<br>(117:1-25) Profit and loss not<br>relevant to claim decision;<br>unfair prejudicial; confuses<br>issues; waste of time; FRE<br>401, 403<br><br><br>**Plaintiff's Response**:<br>Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | Defendant's Objections: (118:1-25) Profit and loss not relevant to claim decision; unfair prejudicial; confuses issues; waste of time; FRE 401, 403 |
| | Plaintiff's Response: Relevant to bad faith |

7060055/015825

1

| Deposition Designation | Objection & Response |
|---|---|
| | <u>Defendant's Objections</u>: (119:1-21) Profit and loss not relevant to claim decision; unfair prejudicial; confuses issues; waste of time; FRE 401, 403

<u>Plaintiff's Response</u>: Relevant to bad faith

<u>Defendant's Objections</u>: (121:6-20) Profit and loss not relevant to claim decision; unfair prejudicial; confuses issues; waste of time; FRE 401, 403 |

**15**

| Deposition Designation | Objection & Response |
|---|---|
| 1 | |
| | Plaintiff's Response: Relevant to bad faith |
| 11 **Page 125** | Defendant's Objections: (125:4-6) Policy nonrenewal not relevant; prejudicial; waste of time FRE 401, 403 |
| 12 4  Q   The NBC Universal account was not 5       renewed, correct? 13 6  A   Correct. | |
| 14 | |
| 15 | Plaintiff's Response: Relevant to bad faith |
| 16 | |
| 17 **Page 126** | Defendant's Objections: (126:25) Profit and loss not relevant to claim decision; unfair prejudicial; confuses issues; waste of time; FRE 401, 403 |
| 18 25  Q   So let's go back to the page marked 6970. | |
| 19 | |
| 20 | |
| 21 | |
| 22 | Plaintiff's Response: Relevant to bad faith |
| 23 | |
| 24 **Page 127** | Defendant's Objections: (127:1-22, 25) Profit and loss not relevant to claim decision; unfair prejudicial; confuses issues; waste of time; FRE 401, 403 |
| 25 1  A   In Exhibit 3? 2  Q   Yes. And again, referring to this 26 3       reference to NBC Universal - 3 year Written        Premium 27 4       4.4 million/losses 6.0 million. Am I correct 28         in | |

| Deposition Designation | Objection & Response |
|---|---|
| 5    assuming that that means over a three-year period | |
| 6    OneBeacon received premiums from NBC Universal in | <u>Plaintiff's Response</u>: Relevant to bad faith |
| 7    the amount -- in the amount of $4.4 million, but | |
| 8    paid out on claims to NBC Universal in the amount | |
| 9    of $6 million? | |
| 10  A  That is correct. | |
| 11  Q  And the three-year period at issue is | |
| 12    what, if you know? | |
| 13  A  We talked about '13, '14, '15. | |
| 14  Q  I just want to make sure we're on the | |
| 15    same page. ██████████ | |
| 20  Q  But it also happens to be the three years | |
| 21    that the NBC Universal account was not profitable, | |
| 22    was that right? | |
| 25    Well, it also happens to be the | |
| Page 128 | <u>Defendant's Objections</u>: (128:1-3) Profit and loss not relevant to claim decision; unfair prejudicial; confuses issues; waste of time; FRE 401, 403 |
| 1    three-year period referenced on Page 6970; is that | |
| 2    correct? | |
| 3  A  Appears to be, yes. | |
| | <u>Plaintiff's Response</u>: Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| Page 147 | Defendant's Objections: |
| 7  Q  Mr. Crosby, do you recognize the document | (147:7-25) Communication |
| 8      marked Exhibit 4? | not relevant to |
| 9  A  Yes. | reasonableness of claim |
| 10 Q  What is it? | decision or any other |
| 11 A  It appears to be a notice around the Big | remaining issue. |
| 12     Dig, a notice of claim and a claim position | FRE 147, 148, 149, 150, 151, |
|        that | 152 |
| 13     was sent to me by Sean Duffy out of claims | |
|        who I | |
| 14     sent to Peter -- who I sent to Peter Williams | Plaintiff's Response: |
|        who | Relevant to bad faith |
| 15     ran entertainment at the time. | |
| 16 Q  Do you recall receiving this email? | |
| 17 A  Honestly, I do not. | |
| 18 Q  Did you read the attachment to this | |
| 19     email? | |
| 20 A  Clarify, please. | |
| 21 Q  If you look at Page ATL1829 in the header | |
| 22     of the email, there's a line that says | |
|        Attachments, | |
| 23     and then there's some text after that. Do you | |
|        see | |
| 24     that? | |
| 25 A  Again, can you clarify, please.  Is this | |
| | |
| Page 148 | Defendant's Objections: |
| 1      -- was this the attachment (indicating), to the | (148:1-25) Communication |
| 2      best of your knowledge? | not relevant to |
| 3  Q  I'm not going to testify, Mr. Crosby. If | reasonableness of claim |
| 4      you are confused about what the attachment | decision or any other |
|        -- | remaining issue. |
| 5  MR. KEELEY: Well, I think he's asking | FRE 401, 403 |
| 6      you to clarify a question. | |
| 7  BY MR. HAYES: | |
| 8  Q  If you -- if you -- if you think that the | Plaintiff's Response: |
| 9      subsequent pages of this email are actually | Relevant to bad faith |
|        the | |
| 10     attachment, just whatever you think, you | |
|        received | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 11      this email.<br>12   A   Okay, I --<br>13   Q   Do you recall what the attachment was?<br>14   A   No, I do not.<br>15   Q   Okay.  Do you recall reviewing an<br>16          attachment to this email dated 7/23/2014?<br>17   A   No, I don't.<br>18   Q   Do you have any reason to believe that<br>19          you did review the attachment to this email<br>            marked<br>20          Exhibit 4?<br>21   A   Yes.<br>22   Q   What is that answer based on?<br>23   A   I read all of my emails and their<br>24          attachments.<br>25   Q   And do you recall what this attachment to | |
| Page 149<br>1      this email said?<br>2   A   Just by perusing it right now. I don't<br>3        remember it from then.<br>4   Q   And to make sure we're on the same page,<br>5        I'm asking you if you recall what the<br>          attachment to<br>6        this email said?<br>7   A   Yes.<br>8   Q   What did it say? | Defendant's Objections:<br>(149:1-8, 13-14. 18-19. 22-25) Communication not relevant to reasonableness of claim decision or any other remaining issue.<br>FRE 401, 403 |
| 13   Q   Did it support the decision to deny the<br>14        Dig claim? | Plaintiff's Response:<br>Relevant to bad faith |
| 18   Q   Did it undermine in any way the decision<br>19   to deny the Dig claim? | |
| 22   BY MR. HAYES:<br>23   Q   Why did you send this email to Peter<br>24        Williams?<br>25   A   He was the president of the entertainment | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 150<br>1        group.<br>2  Q  Why did you send this email to Peter<br>3        Williams?<br>4  A  Because he was the president of the<br>5        entertainment group.<br>6  Q  Any other reason?<br>7  A  No.<br>8  Q  Did you discuss the subject matter of<br>9        this email with Mr. Williams?<br>10  A  No.<br>11  Q  Did you discuss the subject matter of<br>12       this email with Mr. Duffy?<br>13  A  No.<br>14  Q  Did you discuss the subject matter of<br>15       this email with anyone?<br>16  A  No.<br>17  Q  Have you ever spoken to Peter Williams<br>18       about the Dig claim?<br>19  A  I don't recall.<br>20  Q  Have you ever spoken to Sean Duffy about<br>21       the Dig claim?<br>22  A  Yes.<br>23  Q  When?<br>24  A  Don't recall.<br>25  Q  Do you recall the substance of the | Defendant's Objections:<br>(150:1-25) Communication not relevant to reasonableness of claim decision or any other remaining issue.<br>FRE 401, 403<br><br><br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 151<br>1        discussion? | Defendant's Objections:<br>(151:1) Communication not relevant to reasonableness of claim decision or any other remaining issue.<br>FRE 401, 403<br><br><br><br>Plaintiff's Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| **Page 152**<br>1  Q   Did you have any conversations with Sean<br>2       Duffy at any time regarding the Dig claim,<br>        yes or<br>3       no?<br><br>5  A   Yes.<br>6  BY MR. HAYES:<br>7  Q   How many?<br>8  A   I don't recall. | Defendant's Objections:<br>(152:1-3, 5-8)<br>Communication not relevant to reasonableness of claim decision or any other remaining issue; waste of time.<br>FRE 401, 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |
| **Page 153**<br>3  Q   Do you recall the dates of any of these<br>4       conversations?<br>5  A   I do not.<br>6  Q   Do you recall how many there were?<br>7  A   I do not.<br>8  Q   And do you recall what was discussed?<br>9  A   Notification to me about the Big Dig<br>10      claim. Sent basic information and then called me<br>11      about it.<br>12 Q   So there was a telephone call you can<br>13      recall?<br>14 A   Well, what ends up happening we basically<br>15      do some monthly claims lists that have all the<br>16      claims on them for us and it was part of the<br>17      process that we do every month.<br><br>24 Q   Okay. So what was the substance of that<br>25      conversation that you had with Duffy<br>        regarding the | Defendant's Objections:<br>(153:3-17, 24-25)<br>Communication not relevant to reasonableness of claim decision or any other remaining issue; waste of time.<br>FRE 401, 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |
| **Page 154**<br>1       Dig claim?<br>2  A   It's just an update. An update of this<br>3       was the Dig claim, here's where it is, and it's<br>4       very similar to what I see here. | Defendant's Objections:<br>(154:1-4) Communication not relevant to reasonableness of claim decision or any other remaining issue; waste of time.<br>FRE 401, 403 |

| Deposition Designation | Objection & Response |
|---|---|
| | Plaintiff's Response: Relevant to bad faith |
| Page 156<br>2 Q Do you recognize the document marked<br>3   Exhibit 5?<br>4 A It appears to be the same document as<br>5   Exhibit 4 without my forwarding, so, yes, I do<br>6   recognize this document.<br>7 Q Did you send the email at the top of<br>8   Exhibit 5 to Sean Duffy on July 23rd, 2014?<br>9 A Yes.<br>10 Q Here you say: Thanks, looks good to me.<br>11   What were you referring to?<br>12 A Claim position.<br>13 Q So is it correct that you reviewed the<br>14   decision to deny the Dig claim?<br>15 A With the correspondence that you've given<br>16   me, yes.<br>17 Q And do you recall reviewing the decision<br>18   to deny the Dig claim?<br>19 A I recall reviewing these emails around<br>20   the decision to deny the Dig claim.<br>21 A Do you recall reviewing anything else<br>22   other than the email chain marked Exhibit 5 and the<br>23   email chain marked Exhibit 4 and any attachments to<br>24   those emails?<br>25 A No, I do not. | Defendant's Objections: (156:2-25) Communication not relevant to reasonableness of claim decision or any other remaining issue; waste of time. FRE 401, 403<br><br>Plaintiff's Response: Relevant to bad faith |
| Page 163<br>10 MR. HAYES: This is going to be<br>11   Exhibit 6.<br>12   (Deposition Exhibit 6 marked.) | Defendant's Objections: (163:10-25) Communication not relevant to reasonableness of claim decision or any other remaining issue; waste of |

| Deposition Designation | Objection & Response |
|---|---|
| 13  BY MR. HAYES:<br>14  Q  Take your time, review Exhibit 6 and let<br>15     me know if you recognize it, please.<br>16  A  (Witness reviews document.)<br>17     Repeat the question again, I'm sorry.<br>18  Q  Do you recognize Exhibit 6?<br>19  A  No, I don't.<br>20  Q  I want you to look at the reference to<br>21     the attachment on Page 1923. It says: Copy of<br>22     July 2014 LL potential report (Crosby). And it<br>23     appears to be an Excel file.    Do you see that?<br>24  A  Yes, I do.<br>25  Q  Do you have any understanding as to what | time.<br>FRE 401, 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| <u>Page 164</u><br>1      that file is?<br>2   A  I got monthly claims reports from the<br>3      claim department, but certainly not in this format.<br>4      And Crosby is just because the businesses were<br>5      mine.  It's not that it was -- this wasn't sent to<br>6      me. This is not the format I'm familiar with or<br>7      the format that I've ever seen.<br>8   Q  So these Excel spreadsheet reports would<br>9      not have been sent to you; is that accurate?<br>10  A  This kind of report I've never seen<br>11     before.<br>12  Q  Well, when you say "this kind of report,"<br>13     the report that is contained in Exhibit 6 is<br>14     heavily redacted.  Do you mean you've never seen a<br>15     report heavily redacted or do you mean you've<br>16     really never seen Excel spreadsheet reports | <u>Defendant's Objections</u>:<br>(164:1-25)Communication not relevant to reasonableness of claim decision or any other remaining issue; waste of time.<br>FRE 401, 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| of the | |
| 17    type referred to in Exhibit 6? | |
| 18    A    Oh, I'm sorry, I'm just very confused | |
| 19    because this doesn't look like a redaction to me, | |
| 20    this just looks like a piecemeal, you know, Excel | |
| 21    spreadsheet that was sent. I can't tell where the | |
| 22    redaction is or where it isn't. That's why I don't | |
| 23    know what this is. | |
| 24    Q    Okay, we didn't redact this document, we | |
| 25    actually have the same difficulty that you do.  We | |
| | |
| Page 165 | Defendant's Objections: (165:1-3, 9-25) |
| 1    can't tell what's redacted and what isn't redacted, | Communication not relevant to reasonableness of claim decision or any other remaining issue; waste of time. |
| 2    but -- | FRE 401, 403 |
| 3    A    Yes. | |
| 9    Q    But the -- the information appears on | |
| 10    Pages 1929, 1930, 1931 and 1932. There's some | Plaintiff's Response: Relevant to bad faith |
| 11    information that is not redacted on those pages | |
| 12    relating to NBC. Do you see that? | |
| 13    A    Yes, I do. | |
| 14    Q    And just looking at that information, do | |
| 15    you recall receiving that kind of information on a | |
| 16    monthly basis in your monthly claim reports? | |
| 17    A    I'm just very confused by this, because | |
| 18    again, I get a monthly claim report that looks | |
| 19    nothing like this. I'm unsure as to what this is. | |
| 20    Q    What does it look like? Is it an Excel | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 21 file? | |
| 22 A I don't know what it is. | |
| 23 Q No, no. We're not on the same page. | |
| 24 A Yeah. | |
| 25 Q Is the monthly claim report that you get, | |
| | |
| Page 166 | Defendant's Objections: |
| 1 is that an Excel file? | (166:1-25) Communication |
| 2 A Yes. | not relevant to |
| 3 Q Okay. And what information is contained | reasonableness of claim |
| 4 in that report? | decision or any other |
| 5 A Basic information. | remaining issue; waste of |
| 6 Q Like the information on, for example, | time. |
| 7 Page 1932? | FRE 401, 403 |
| 8 A Yes. | |
| 9 Q Okay. And what is the purpose of these | |
| 10 monthly claims reports that you receive? | Plaintiff's Response: |
| 11 A Simple update to me from the claim | Relevant to bad faith |
| 12 department. | |
| 13 Q And why do you need these updates? | |
| 14 A To see what's happening in the businesses | |
| 15 claim-wise. | |
| 16 Q But you testified that you have no say in | |
| 17 whether or not to pay a claim, right? | |
| 18 A Correct. Yes, that's correct. | |
| 19 Q So can you be a little bit more specific | |
| 20 as to why you need to know what's going on in the | |
| 21 claim department? | |
| 22 A Based on what I see here, this is just | |
| 23 the name of the customer, the claim number, the | |
| 24 period that it happened and a brief explanation. | |
| 25 Q That's what it says. But why do you need | |
| | |
| Page 167 | Defendant's Objections: |
| 1 to know that? | (167:1-25) Communication |
| 2 A I see it for every one of the claims that | not relevant to reasonableness of claim |

| Deposition Designation | Objection & Response |
|---|---|
| 3    we have, particularly over $250,000.  Or projected<br>4    to be over $250,000.<br>5  Q  For the claims that are projected to be<br>6    over $250,000; is that right?<br>7  A  Correct.<br>8  Q  What was the claim at issue in this case,<br>9    the Dig claim projected to be?<br>10  A  I don't recall. I don't see it here.<br>11  Q  Okay. Is that information disclosed to<br>12    you or given to you at any time, the amount of the<br>13    projected claim?<br>14  A  We put reserve dollars up, yes, but just<br>15    understand, I'm not a claim person, I just look at<br>16    these reports.<br>17  Q  So if the reserve dollars were nominal,<br>18    would you receive that notice of that claim?<br>19  A  No.<br>20  Q  So you would only receive notice of a<br>21    claim if the reserve dollars were in excess of<br>22    $250,000; is that right?<br>23  A  Correct.<br>24  Q  And this Exhibit 6 is notice of a claim<br>25    that you would receive pursuant to your monthly | decision or any other remaining issue; waste of time.<br>FRE 401, 403<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 168<br>1    claims reports; is that right?<br>2  A  It looks like this, but again, in this<br>3    format, in this style, with the redacted<br>4    information, I don't know what this is.<br>5  Q  But to the extent this is a monthly claim<br>6    report, you would not have received information<br>7    about NBC unless the claim was in excess of 250,000<br>8    or at least projected to be so; is that --<br>9  A  Well -- | Defendant's Objections: (168:1-9, 13-25)<br>Communication not relevant to reasonableness of claim decision or any other remaining issue; waste of time.<br>FRE 401, 403<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 13  Q    Is that right? | |
| 14  A    I get things called LLAs for 250 and | |
| 15        more.  Large loss advisories. And that can be | |
| 16        reserve dollars, expense reserve dollars or actual | |
| 17        paid dollars.  So it could run a wide gamut. So | |
| 18        yes, I do get notice of things over $250,000. | |
| 19  BY MR. HAYES: | |
| 20  Q    But not under, right? | |
| 21  A    Correct. | |
| 22  Q    Okay. And on Exhibit 6, Page 1923, | |
| 23        there's a reference to LL Potential Report. Do you | |
| 24        have an understanding as to what LL stands for? | |
| 25  A    I'm sorry, what page are you on? | |
| | |
| Page 169 | Defendant's Objections: |
| 1   Q    1923. | (169:1-3) Communication not relevant to reasonableness of claim decision or any other remaining issue; waste of time. |
| 2   A    No, do not. | |
| 3   Q    Could that mean large loss? | |
| | FRE  401, 403 |
| 6   A    Again, I'm just trying to testify. It | |
| 7        could be. | Plaintiff's Response: |
| | Relevant to bad faith |
| | |
| | (169:6-7) Communication not relevant to reasonableness of claim decision or any other remaining issue; prejudicial; confusing; waste of time; prejudicial; object to exhibit 6. |
| | FRE, 401, 403 |
| | |
| | Plaintiff's Response: |
| | Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| Page 174<br>16   MR. HAYES: This is going to be<br>17        Exhibit 7.<br>18        (Deposition Exhibit 7 marked.)<br>19   BY MR. HAYES:<br>20   Q   Do you recognize the document marked<br>21        Exhibit 7?<br>22   A   No, I do not.<br>23   MR. HAYES: This is going to be<br>24        Exhibit 8.<br>25        (Deposition Exhibit 8 marked.) | Defendant's Objections:<br>(174:16-25)<br>Nonrenewal/profit and loss not relevant; prejudicial; waste of time.<br>FRE 401, 103<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 175<br>1   BY MR. HAYES:<br>2   Q   Do you recognize the document marked<br>3        Exhibit 8?<br>4   A   I do not recognize it, but it came to me<br>5        so I got it.<br>6   Q   I want you to look at the page marked<br>7        2514. And in the email header it says at the<br>8        bottom Attachments: EAS, in all caps. Do you see<br>9        that?<br>10   A   I'm sorry, say it again, please.<br>11   Q   So first page 2514.<br>12   A   Uh-huh.<br>13   Q   We're on Exhibit 8, right?<br>14   A   Yep.<br>15   Q   Okay. I want you to look at the header<br>16        of that email.<br>17   A   Okay.<br>18   Q   And the bottom line of the header says<br>19        Attachments. Do you see that?<br>20        Mr. Crosby, would you mind just showing<br>21        me what you're looking at so I make sure that we're<br>22        on the same page.<br>23        It's the right document. Right there | Defendant's Objections:<br>(175:1-25)<br>Nonrenewal/profit and loss not relevant; prejudicial; waste of time.<br>FRE 401, 103<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 24      (indicating). Right at the top. It says,<br>25      Attachments: EAS. Do you see that?<br><br>Page 176<br>1      Oh, yes. Okay, yep.<br>2      Do you have any idea what that attachment<br>3      is?<br>4    A   I do not.<br>5    Q   Do you know what EAS stands for?<br>6    A   No.<br>7    Q   Is says in this email that you may get a<br>8      call from Joe Addison. Do you know who<br>      Joe Addison<br>9      is?<br>10   A   I do.<br>11   Q   Who is that?<br>12   A   He's president of Aon/Ruben.<br>13   Q   Have you ever spoken to Joe before?<br>14   A   No.<br>15   Q   On any subject?<br>16   A   No.<br>17   Q   So am I correct that Mr. Addison did not<br>18      call you regarding the NBC Universal<br>      account?<br>19   A   Yes, that is correct.<br>20   Q   Did anyone else from Aon call you related<br>21      to the NBC Universal account?<br>22   A   No.<br><br>Page 186<br>7    Q   Mr. Crosby, do you recognize the document<br>8      marked Exhibit 9?<br>9    A   Yes.<br>10   Q   What is it?<br>11   A   It's a document to Peter Williams telling<br>12      him about things that I'm concerned about in his<br>13      business.<br>14   Q   Well, let's make sure we're looking at | <br><br><br>Defendant's Objections:<br>(176:1-22)<br>Nonrenewal/profit and loss<br>not relevant; prejudicial;<br>waste of time.<br>FRE 401, 403<br><br><br>Plaintiff's Response:<br>Relevant to bad faith<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br>(186:7-25) Nonrenewal<br>profitability not relevant to<br>reasonableness to claim<br>decision or any other<br>remaining issues, prejudicial;<br>confuses issues; waste of<br>time; FRE 401, 403 |

| Deposition Designation | | | Objection & Response |
|---|---|---|---|
| 15 | | the same document. The top most email is from you | Plaintiff's Response: Relevant to bad faith |
| 16 | | to Michael Larson; is that right? | |
| 17 | A | That's correct. | |
| 18 | Q | Okay. Why did you send this email to | |
| 19 | | Michael Larson? | |
| 20 | A | Because Mike is involved in everything | |
| 21 | | that I've asked to get done here. | |
| 22 | Q | And when you say everything I've asked to | |
| 23 | | get done here, you're referring to points 1, 2 and | |
| 24 | | 3 at the bottom of Page 6950 which are contained in | |
| 25 | | your email to Peter Williams; is that right? | |
| | | | |
| Page 187 | | | Defendant's Objections: |
| 1 | A | That is correct. | (187:1-6) Nonrenewal |
| 2 | Q | The first thing you asked get done is you | profitability not relevant to |
| 3 | | would like a five-year view on the NBC account, | reasonableness to claim decision or any other |
| 4 | | premium and losses, and Jennifer's view on our | remaining issues, prejudicial; confuses issues; waste of |
| 5 | | attachment point on the SIR. Do you see that? | time; FRE 401, 403 |
| 6 | A | Yes, I do. | |
| | | | Plaintiff's Response: Relevant to bad faith |
| | | | Defendant's Objections: (199:1-25) (186:7-25) Nonrenewal profitability not relevant to reasonableness to claim decision or any other remaining issues, prejudicial; confuses issues; waste of time; FRE 401, 403 |

7060055/015825

1

| Deposition Designation | Objection & Response |
|---|---|
| | Plaintiff's Response: Relevant to bad faith |
| | Defendant's Objections: (200:1-4-25) Nonrenewal profitability not relevant to reasonableness to claim decision or any other remaining issues, prejudicial; confuses issues; waste of time; FRE 401, 403 |
| | Plaintiff's Response: Relevant to bad faith |
| | Defendant's Objections: (203:23-25) Underwriting/ profitability not relevant to reasonableness to claim decision or any other remaining issues, prejudicial; |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | confuses issues; waste of time; FRE 401, 403 <br><br> Plaintiff's Response: Relevant to bad faith |
| Page 204 <br>1     okay? <br>2  A  Okay. <br>3  Q  Where did that meeting take place? <br>4  A  I'm sorry, you talking about the meeting <br>5     with Peter? <br>6  Q  Correct.  The meeting referenced in the <br>7     first sentence of the email marked Exhibit <br>      10.  It <br>8     says: Very good meeting yesterday with Peter and <br>9     his underwriting leadership. Where did that <br>10    meeting take place? <br>11  A  I would have to look at my calendar. It <br>12    was either New York or L.A., I just don't recall. <br><br>Page 205 <br>16  Q  Okay. Was it in person or over the <br>17    phone? <br>18  A  In person. | Defendant's Objections: (204:1-12) Underwriting/ profitability not relevant to reasonableness to claim decision or any other remaining issues, prejudicial; confuses issues; waste of time; FRE 401, 403 <br><br> Plaintiff's Response: Relevant to bad faith <br><br><br> Defendant's Objections: (205:16-18) Underwriting/ profitability not relevant to reasonableness to claim decision or any other remaining issues, prejudicial; confuses issues; waste of time; FRE 401, 403 <br><br><br> Plaintiff's Response: Relevant to bad faith <br><br> Defendant's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| | (207:4-25) Underwriting/ profitability not relevant to reasonableness to claim decision or any other remaining issues, prejudicial; confuses issues; waste of time; FRE 401, 403<br><br>Plaintiff's Response: Relevant to bad faith<br><br>Defendant's Objections: (208:8-25) Underwriting/ profitability not relevant to reasonableness to claim decision or any other remaining issues, prejudicial; confuses issues; waste of time; FRE 401, 403 |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| ████████████████████ | Plaintiff's Response: Relevant to bad faith |
| 13    Okay. Was the NBC Universal account a bad account, a medium account or a good account? | |
| 14   A   From an underwriting perspective, it was | |
| 15    a bad account. | |
| 16   Q   Why? | |
| 17   A   130 percent combined ratio over three | |
| 18    years. | |
| 19   Q   You qualified what you said by saying | |
| 20    "from an underwriting perspective." Was it a good | |
| 21    account from any other perspective? | |
| 22   A   Not that I can see. | |
| 23   Q   What did you mean when you said "from an | |
| 24    underwriting perspective"? | |
| 25   A   130 combined. For every dollar we took | |
| | |
| Page 209 | Defendant's Objections: (209:1-10, 13-25) Underwriting/ profitability not relevant to reasonableness to claim decision or any other remaining issues, prejudicial; confuses issues; waste of time; FRE 401, 403 |
| 1    in premium, we paid out a dollar and 30 cents -- | |
| 2    or, excuse me, $130 in claims. | |
| 3   Q   For every hundred dollars you took in -- | |
| 4   A   We paid out -- | |
| 5   Q   -- you paid out 130? | |
| 6   A   -- 130, correct. And that's on top of | |
| 7    a -- of an SIR where NBC took risk. | |
| 8   Q   So for that category, the bad accounts, | |
| 9    the strategy was to simply not renew them; is that | |
| 10    accurate? | |
| | Plaintiff's Response: Relevant to bad faith |
| 13   A   Could be many things. | |
| 14   BY MR. HAYES: | |
| 15   Q   What could? | |

| Deposition Designation | Objection & Response |
|---|---|
| 16 A  Well, again, could be nonrenewal, could<br>17      be negotiating with the broker as to what would<br>18      work in our minds. And some of those conversations<br>19      went -- went on.<br>20 Q  With respect to NBC Universal?<br>21 A  Yes.<br>22 Q  Who was involved in those conversations?<br>23      Well, let me back up.<br>24      When you said some of those conversations<br>25      went on, were you saying some conversations with | |
| **Page 210**<br>1      NBC Universal's broker went on?<br>2  A  Yes.<br>3  Q  Okay. And do you know who at the broker<br>4      had those conversations?<br>5  A  Susan Weiss.<br>6  Q  And do you know --<br>7  A  With I assume Peter.<br>8  Q  But you're not sure who on behalf of<br>9      OneBeacon was engaged in those conversations?<br>10 A  Given the size of this account and the<br>11     expectations that this company has, it would be<br>12     Peter.<br>13 Q  And do you know of any specific proposals<br>14     that Peter or OneBeacon may have made to Ms. Weiss<br>15     or anybody else for purposes of renewing the NBC<br>16     Universal Insurance Agreement?<br>17 A  No, I don't.  I'm not aware of that.<br>18 Q  Was the NBC Universal account discussed<br>19     at the meeting referenced in Exhibit 10 with Peter<br>20     and his underwriting leadership? | Defendant's Objections:<br>(210:1-25) Underwriting/<br>profitability not relevant to<br>reasonableness to claim<br>decision or any other<br>remaining issues, prejudicial;<br>confuses issues; waste of<br>time; FRE 401, 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 21  A    Yes.<br>22  Q    And what specifically was discussed?<br>23  A    It's documented right here in Exhibit 10.<br>24  Q    Anything else beyond what is in Exhibit<br>25  10? | |
| **Page 211**<br>1    A    No. | **Defendant's Objections**:<br>(211:1) Underwriting/<br>profitability not relevant to<br>reasonableness to claim<br>decision or any other<br>remaining issues, prejudicial;<br>confuses issues; waste of<br>time; FRE 401, 403<br><br>**Plaintiff's Response**:<br>Relevant to bad faith |
| **Page 213**<br>6    Q    So in the first sentence of the second<br>7          paragraph you write:    For today, I want<br>            you to know<br>8          we are not offering a renewal on NBC. Do<br>            you see<br>9          that?<br>10   A    Uh-huh.<br>11   Q    Yes?<br>12   A    Yes, I do.<br>13   Q    Does that mean that as of June 4th, 2015,<br>14         OneBeacon had made the decision not to<br>            renew the<br>15         NBC Universal account?<br>16   A    With the information I had at hand at<br>17         that time, yes, I believe that was the best<br>18         solution.<br>19   Q    That was your decision not to renew?<br>20   A    No, I just said in aggregate of talking<br>21         about this and looking at the scenarios, we | **Defendant's Objections**:<br>(213:6-25) Underwriting/<br>profitability not relevant to<br>reasonableness to claim<br>decision or any other<br>remaining issues, prejudicial;<br>confuses issues; waste of<br>time; FRE 401, 403<br><br>**Plaintiff's Response**:<br>Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| talked | |
| 22    about it, it was the best solution. | |
| 23  Q   Understood. | |
| 24    From your perspective -- | |
| 25  A   Uh-huh. | |
| | |
| Page 214 | Defendant's Objections: |
| 1  Q   -- I understood that -- I understand | (214:1-21, 25) Underwriting/ |
| 2    that's what you're saying.  But my question is, was | profitability not relevant to reasonableness to claim |
| 3    that your decision? | decision or any other |
| 4  A   It was our decision. | remaining issues, prejudicial; |
| 5  Q   Who's "our"? | confuses issues; waste of |
| 6  A   Peter and me. | time; FRE 401, 403 |
| 7  Q   To the extent you disagreed with that | |
| 8    decision, you could have overruled Peter; is that | |
| 9    correct? | Plaintiff's Response: |
| 10  A   That is correct. | Relevant to bad faith |
| 11  Q   So in terms of the ultimate decision | |
| 12    maker on whether or not to renew the NBC Universal | |
| 13    account, that's you, right? | |
| 14  A   I want Peter, the head of the -- the | |
| 15    president of the entertainment unit to make the | |
| 16    decisions he needs to make.   I can remind him | |
| 17    constantly of here are the numbers and here's what | |
| 18    they look like. | |
| 19  Q   Okay.  But ultimately, it's your | |
| 20    decision, right? | |
| 21  A   Yes. | |
| | |
| 25  Q   And do you know whether or not Peter had | |
| | |
| Page 215 | Defendant's Objections: |
| 1    made any proposals to NBC Universal as of | (215:1-16) Underwriting/ |

| Deposition Designation | Objection & Response |
|---|---|
| 2     June 4th, 2015? | profitability not relevant to reasonableness to claim decision or any other remaining issues, prejudicial; confuses issues; waste of time; FRE 401, 403 |
| 3  A  I do not know. | |
| 4  Q  When you say "this could get noisy," what | |
| 5     do you mean? | |
| 6  A  Aon, it's NBC, it's a big account. | |
| 7  Q  You say:  I will be involved with the | |
| 8     brokers affected as necessary.Which brokers were | |
| 9     you referring to? | Plaintiff's Response: Relevant to bad faith |
| 10  A  Aon. I've already -- I've already | |
| 11     talked.  Jerry here is Jerry Brown who's a -- who's | |
| 12     a principal in Aon in New York. I wasn't dealing | |
| 13     with Aon/Ruben, I was dealing with Aon corporate to | |
| 14     tell them this is coming. | |
| 15  Q  You told Jerry that this was coming? | |
| 16  A  Jerry Brown, correct. | |
| | |
| <u>Page 217</u> | <u>Defendant's Objections</u>: |
| 2  Q  You say here: It needs a 5MM SIR and a | (217:2-25) Underwriting/ profitability not relevant to reasonableness to claim decision or any other remaining issues, prejudicial; confuses issues; waste of time; FRE 401, 403 |
| 3     1.8M in premium to stand a chance of profitability. | |
| 4     What does that mean? | |
| 5  A  The SIR NBC Universal need to go from 2.1 | |
| 6     to $5 million and we needed $8 million -- $1.8 | |
| 7     million of premium on top of that. | |
| 8  Q  Per year? | |
| 9  A  Per year. | |
| 10  Q  For the relationship to be profitable | Plaintiff's Response: Relevant to bad faith |
| 11     from OneBeacon's perspective, correct? | |
| 12  A  That is correct. And we knew through | |
| 13     Peter, you know, through what the market had been | |
| 14     saying is that, you know, that the broker at | |
| 15     Aon/Ruben already had a $4 million SIR with a 1.4 | |

| Deposition Designation | Objection & Response |
|---|---|
| 16　　premium quote in hand.<br>17　　And on an account like this, regardless<br>18　　of the size, we're not in the -- we're not in the<br>19　　business of negotiating.  We'll say what we need,<br>20　　and if you like it, great; if you don't, you just<br>21　　need to find another market.<br>22　Q　What does that mean you're not in the<br>23　　business of negotiating?<br>24　A　On this kind of situation. When we're in<br>25　　a bad situation with 130 percent combined, when | |
| Page 218<br>1　　we've lost this much money, we've done the<br>2　　analysis, this is the money and the SIR attachment<br>3　　that we need to make money here. This is our<br>4　　quote. We're not going to go back and forth and<br>5　　talk about bump it 500 or take it down 200. We're<br>6　　not doing that. This is the number.<br>7　Q　You say here currently 2.1 million SIR<br>8　　and 1.8 million. Does that mean 1.8 million in<br>9　　premium?<br>10　A　Correct.<br>11　Q　Continuing: Even at our pricing, we<br>12　　think there is a 20 percent handle of using through<br>13　　the SIR. What does that mean?<br>14　A　It looks like it's a spell check.<br>15　　20 percent risk of basically some issues being<br>16　　within the SIR.   There's frequency within an SIR<br>17　　layer, and you just -- there are -- there are | Defendant's Objections:<br>(218:1-25) Underwriting/ profitability not relevant to reasonableness to claim decision or any other remaining issues, prejudicial; confuses issues; waste of time; FRE 401, 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 18    situations you've just got to be aware of because<br>19    they ultimately break through the SIR.<br>20   Q   So what this means is you assess there to<br>21    be a 20 percent risk that going forward the SIR has<br>22    pierced?<br>23   A   Yes.<br>24   Q   And that is based on analysis done by<br>25    Michael Larson; is that right? | |
| Page 219<br>1   A   Yes.<br>2   Q   And then you say here: We know the<br>3    broker has a 4 million SIR/1.4 million premium<br>4    quote in hand.    That's what you already referred<br>5    to; is that right?<br>6   A   Correct.<br>7   Q   The second paragraph here, wherein, there<br>8    are several redactions, does that relate in any way<br>9    to NBC Universal?<br>10   A   It does not.<br>11   Q   Okay. | Defendant's Objections: (219:1-25) Underwriting/ profitability not relevant to reasonableness to claim decision or any other remaining issues, prejudicial; confuses issues; waste of time; FRE 401, 403<br><br>Plaintiff's Response: Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 1 <br> ██████████████████████████████████████ | <br><br><br><br>Defendant's Objections: (220:1-14) Underwriting/ profitability not relevant to reasonableness to claim decision or any other remaining issues, prejudicial; confuses issues; waste of time; FRE 401, 403 <br><br><br> Plaintiff's Response: Relevant to bad faith |
| 20 Page 229 <br> 21   12   Q   Do you recognize the document marked <br> 22   13      Exhibit 11? <br>      14   A   Yes. <br> 23   15   Q   What is it? <br> 24   16   A   It's an email from Peter to me after he <br>      17      had been informed about the Big Dig -- Big <br> 25         Dig <br> 26   18      claim interpretation by the claim <br>         department. <br> 27   19   Q   When you say "Big Dig claim," what do you <br> 28   20      mean by that? | Defendant's Objections: (229:12-25) Not relevant to reasonableness of claim decision or remaining issues FRE 401 <br><br><br> Plaintiff's Response: Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 21 A It's what Theresa -- Theresa Gooley sent.<br>22 Production shutdown on the Dig. The Dig, sorry.<br>23 Q I'm specifically asking you what you mean<br>24 by the characterization "Big Dig claim"?<br>25 A Oh, I'm sorry. I misspoke. I meant the | |
| Page 230<br>1 Dig claim.<br>2 Q Okay.<br>3 A Not the Big Dig claim.<br>4 Q Okay. So with respect to Exhibit 11, you<br>5 recall receiving this email from Peter Williams?<br>6 A Not specifically. | Defendant's Objections:<br>(230:1-6) Not relevant to reasonableness of claim decision or remaining issues FRE 401<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 232<br>20 Q Okay. So are you certain that the<br>21 overall profitability of the NBC Universal account<br>22 was not considered in deciding whether or not to<br>23 deny the Dig claim?<br>24 A 150 percent certain.<br>25 Q How are you certain? | Defendant's Objections:<br>(232:20-25) Not relevant to reasonableness of claim decision or remaining issues FRE 401<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 233<br>1 A I'm responsible for the P&L.  My<br>2 reputation, what I do, yes, that would never, ever<br>3 happen.<br>4 Q Well, I thought you had nothing to do<br>5 with the decision to deny the Dig claim?<br>6 A I get paid for the P&L, not the claim<br>7 department. The claim department is responsible | Defendant's Objections:<br>(233:1-4, 26-24) Not relevant to reasonableness of claim decision or remaining issues FRE 401<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 8     for handling claims, that's what they do, right? I<br>9     don't exert influence or authority.   Or anyone in<br>10    the underwriting organization doesn't assert any<br>11    amount of authority over the claim department.<br>12  Q  As a matter of fact, you don't know what<br>13    was considered in deciding to deny the Dig claim;<br>14    isn't that right?<br><br>16  BY MR. HAYES:<br>17  Q  Is that right or wrong?<br><br>19  A  Is what right or wrong?<br>20  BY MR. HAYES:<br>21  Q  My statement that you do not know what<br>22    was considered in deciding whether to deny the Dig<br>23    claim?<br>24  A  You are absolutely --<br><br>Page 234<br>1  A  You're absolutely correct. Because I'm<br>2    not in the claim department and I don't control<br>3    what the claim department does.<br>4  BY MR. HAYES:<br>5  Q  Does the claim department have access to<br>6    data that would show the profitability of a<br>7    particular account?<br><br>10  A  I can't answer that.<br>11  BY MR. HAYES:<br>12  Q  Was Peter Williams involved in the<br>13    decision whether or not to deny the Dig claim? | <br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections: (234:1-7, 10-13, 16-21, 23-25) Not relevant to reasonableness of claim decision or remaining issues FRE 401<br><br><br>Plaintiff's Response: Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 16  A   We have been through this a number of<br>17      times, that the underwriting staff has absolutely<br>18      no control over whether a claim is paid or denied,<br>19      none whatsoever.<br>20   BY MR. HAYES:<br>21   Q   Was he involved in the decision?<br><br>23   A   Same comment. He's not involved in the<br>24      claim process. It's impossible for him or me to<br>25      influence the payment or not payment of a claim. | |
| **Page 235**<br>1   BY MR. HAYES:<br>2   Q   Did he in this case?<br><br>4   BY MR. HAYES:<br>5   Q   Do you know?<br>6   A   I -- I have explained to you as much as I<br>7      know as a senior leader and executive of this<br>8      company. I have nothing else to give you around<br>9      what you're asking.<br>10   Q   Because you don't know, right?<br><br>13   BY MR. HAYES:<br>14   Q   Is that right?<br><br>16   A   I'm not involved in the claim process,<br>17      nor are they in the underwriting process.<br>18   BY MR. HAYES:<br>19   Q   So you don't know whether or not<br>20      Mr. Williams exerted any influence in the decision<br>21      whether or not to deny the Dig claim; is that<br>22      correct? | Defendant's Objections:<br>(235:1-2, 4-10, 13-14, 16-22,<br>24-25) Not relevant to<br>reasonableness of claim<br>decision or remaining issues<br>FRE 401<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 24  A   Again, underwriters and claim people<br>25       don't mix. | |
| **Page 236**<br>1   BY MR. HAYES:<br>2   Q   Are you aware that they mixed in this<br>3        case? | Defendant's Objections:<br>(236:1-3, 6-25) Not relevant<br>to reasonableness of claim<br>decision or remaining issues<br>FRE 401 |
| 6   THE WITNESS: You know, now, I need a<br>7        break.<br>8   MR. KEELEY: All right.<br>9   BY MR. HAYES:<br>10  Q   No. Are you aware that they mixed in<br>11       this case? We're not off the record.<br>12  MR. KEELEY: We're going to take a break.<br>13       (Whereupon, the Witness and Mr. Keeley<br>14       and Mr. Paar leave the deposition<br>            proceeding, which<br>15       continued as follows:)<br>16  MR. HAYES: Did we go off the record?<br>17  VIDEO TECHNICIAN: No, we're on the<br>18       record.<br>19       Do you want to stay on?<br>20  MR. HAYES: No, we can go off now.<br>21  VIDEO TECHNICIAN: Off the record. The<br>22       time 4:50.<br>23  (Recess taken.)<br>24  VIDEO TECHNICIAN: Back on the record,<br>25       5:00. | Plaintiff's Response:<br>Relevant to bad faith |
| **Page 237**<br>1   THE WITNESS: Before we get started,<br>2        could I say something, please, do you<br>         mind?<br>3   MR. HAYES: Sure.<br>4   THE WITNESS: I would like to apologize<br>5        to counsel and the folks in the room. I get<br>6        emotional a little bit about my company<br>         and my own | Defendant's Objections:<br>(237:1-25) Not relevant to<br>reasonableness of claim<br>decision or remaining issues<br>FRE 401<br><br>Plaintiff's Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 7       reputation. I have been doing this a long<br>         time.<br>8       So to you I apologize.<br>9       I understand what you are trying to do.<br>10      I hope you appreciate where I'm coming<br>         from and,<br>11      you know, we can go from here, but I<br>         apologize.<br>12  MR. HAYES: Thank you.<br>13  THE WITNESS: You're welcome.<br>14  MR. HAYES: This is going to be<br>15      Exhibit 12.<br>16      (Deposition Exhibit 12 marked.)<br>17  BY MR. HAYES:<br>18      Q    Mr. Crosby, do you recognize the email<br>19      marked Exhibit 12?<br>20  A   Yes, I do.<br>21  Q   What is it?<br>22  A   It's a note from Peter back to me talking<br>23      about the three things that I wanted information<br>24      on. It looks like I've already got information<br>25      from Jennifer on a couple of things. And Peter | Relevant to bad faith |
| Page 238<br>1       just confirmed that.<br>2   Q   You say in your November 7 email dated --<br>3       or timestamped 8:42 a.m. --<br>4   A   Uh-huh.<br>5   Q   -- I am impressed I have already heard<br>6       from Jennifer.    Do you recall what you were<br>7       referring to there?<br>8   A   Jennifer was -- according to Peter,<br>9       Jennifer had already started working on 2<br>         and 3. I<br>10      believe that was stated in another exhibit or in<br>11      this exhibit. I can't recall it specifically. | Defendant's Objections:<br>(238:1-23) Not relevant to reasonableness of claim decision or remaining issues FRE 401<br><br>Plaintiff's Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 12 Q  So your -- <br> 13 A  Oh, yeah, no problem, 2 and 3 I just <br> 14     completed my own review and in prep for potential <br> 15     renewal. <br> 16     So Jennifer sent me the information on <br> 17     Nos. 2 and 3, the actuarial analysis. That's what <br> 18     that's referring to. <br> 19 Q  So you were impressed that he addressed <br> 20     -- that she addressed what you had asked them to <br> 21     address promptly, is that the -- the gist of your <br> 22     email? <br> 23 A  Correct. | |

7060055/015825

**SEAN DUFFY–May 11, 2017**

| Deposition Designation | Objection & Response |
|---|---|
| Plaintiff's Designation of Sean Duffy (6:19-23; 8:3-16; 9:9-14, 23-25; 10:1; 46:10-13, 16-17; 49:21-25; 50:1-2; 80:2-25; 81:1-6; 86:24-25; 87:1-9; 88:4-19; 89:4-15, 24-25; 90:1-2; 92:11-12, 14-16, 18-22, 24-25; 93:1-25; 94:1-4, 7, 13-15, 18; 95:12-25; 96:1-15; 98:11-14; 102:7-9, 13-25; 103:1-9; 169:22-25; 170:1-8, 12-17, 21-24; 190:19-25; 191:1-25; 192:1-6, 10-25; 193:1-9, 12-15, 19-25; 194:1-3; 198:18-25; 199:1-17; 204:24-25; 205:1-25; 206:1-25; 207:1-3, 23-25; 208:1-21, 24; 209:1-25; 210:1-9; 23-25; 211:1-24; 212:4-25; 213:1-22; 215:11-25; 216:1-9; 243:1-25; 244:1-3): | |
| Page 6<br>19   Q.   Good morning, Mr. Duffy.<br>20   A.   Good morning.<br>21   Q.   Please state and spell your first and last<br>22         name for the record.<br>23   A.   Sean, S-E-A-N, Duffy, D-U-F-F-Y. | Defendant's Counter<br>133:15-25; 134; 135; 136<br><br>Plaintiff's Response:<br>Not necessary for completeness. Counter is separate question and answer. |
| Page 8<br>3            Where do you work?<br>4    A.   OneBeacon Insurance Group.<br>5    Q.   What is your title?<br>6    A.   Senior vice-president and chief claims<br>7          officer.<br>8    Q.   How long have you worked at OneBeacon?<br>9    A.   I began in April of 2010.<br>10   Q.   And what was your title in April 2010?<br>11   A.   Same title.<br>12   Q.   Have you had any other titles since being at<br>13         OneBeacon?<br>14   A.   No.<br>15   Q.   What are your job responsibilities?<br>16   A.   I manage the claims operation. | |

| Deposition Designation | Objection & Response |
|---|---|
| **Page 9**<br>9   Q.   Do you supervise any OneBeacon employees?<br>10   A.   I do.<br>11   Q.   Who do you supervisor?<br>12   A.   The entire operation.<br>13   Q.   What operation?<br>14   A.   Claims.<br><br>23   Q.   Is it accurate to say that as far as the<br>24         claims department goes you're first in<br>25         command?<br><br>**Page 10**<br>1   A.   Yes.<br><br>**Page 46**<br>10   Q.   Is it accurate to say that the Dig claim was<br>11         the first of its kind for OneBeacon given<br>12         that it involved the implication of a war<br>13         exclusion?<br><br>16         THE WITNESS:  To the best of my<br>17   personal knowledge, yes.<br><br>**Page 49**<br>21   Q.   What is your definition of the word "unique"?<br>22   A.   A claim that presents facts that we have not<br>23         previously seen.<br>24   Q.   Okay.  Was the Dig claim in any way a<br>         unique<br>25         claim?<br><br>**Page 50**<br>1   A.   To the extent that it involved the war<br>2         exclusion, yes. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 80 | |
| 2    BY MR. HAYES: | |
| 3   Q.   Do you recognize the document marked | |
| 4       Exhibit 1? | |
| 5   A.   I do. | |
| 6   Q.   What is it? | |
| 7   A.   It is our general claims practices. | |
| 8   Q.   How long have these general claim practices | |
| 9       been in effect? | |
| 10   A.   I believe that they were put into effect in | |
| 11       perhaps September 2012.  I don't know if I | |
| 12       know the exact date. | |
| 13   Q.   And they've been in effect since September | |
| 14       2012 to the present? | |
| 15   A.   Correct. | |
| 16   Q.   And do these general claims practices apply | |
| 17       to the entertainment group? | |
| 18   A.   Yes. | |
| 19   Q.   And they've applied to the entertainment | |
| 20       group since 2012? | |
| 21   A.   Excuse me.  Yes. | |
| 22   Q.   I want you to turn -- well, before we do | |
| 23       that, who drafted these general claims | |
| 24       practices? | |
| 25   A.   Joe Schmitt. | |
| | |
| Page 81 | |
| 1   Q.   Anyone else? | |
| 2   A.   I worked with Joe on finalizing these. | |
| 3   Q.   Joe did the first draft, you revised them; is | |
| 4       that accurate? | |
| 5   A.   I would say we worked together on revisions. | |
| 6       I don't know if I separately revised them. | |
| | |
| Page 86 | |
| 24   Q.   But you're certain that OneBeacon has never | |
| 25       had a claims handling manual that applied to | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 87 | |
| 1    the entertainment group; is that your | |
| 2    testimony? | |
| 3  A.  Yes.  I am certain that I have never seen one | |
| 4    nor has anyone ever told me of the existence | |
| 5    of one. | |
| 6  Q.  So these general claims practices that we're | |
| 7    looking at as Exhibit 1, those apply to the | |
| 8    entertainment group? | |
| 9  A.  Correct. | |
| | |
| Page 88 | |
| 4  Q.  Can you please look at Exhibit 2 and tell me | |
| 5.    what it is? | |
| 6  A.  It's the core principles document that I | |
| 7    believe was published at the same time in, | |
| 8    again, if I'm remembering, September 2012 to | |
| 9    go with the general guidelines. | |
| 10  Q.  2014, the only standards, guidelines, | |
| 11    procedures, practices that applied to the | |
| 12    entertainment group were the general claims | |
| 13    practices marked as Exhibit 1 and the core | |
| 14    principles marked Exhibit 2; is that right? | |
| 15  A.  I'm just thinking. | |
| 16        There were certainly guidelines | |
| 17    regarding reporting litigation against the | |
| 18    company, reporting bad-faith claims against | |
| 19    the company, et cetera. | |
| | |
| Page 89 | |
| 4.  Q.  Okay.  Any other written policies that | |
| 5    applied in 2014 other than the claims | |
| 6    practices, Exhibit 1, the core principles, | |
| 7    Exhibit 2, and these guidelines for reporting | |
| 8    litigation or bad-faith claims to Mr. Paar | |
| 9    that you just identified? | |
| 10  A.  No. There would have been procedural manuals | |
| 11    regarding the issuance of manual checks or | |

| Deposition Designation | Objection & Response |
|---|---|
| 12      doing wire transfers or just kind of routine<br>13      operational things that aren't specific to<br>14      the actual adjustment of the claim but rather<br>15      the process you go through.<br><br>24   Q.   Core principles marked Exhibit 2, those apply<br>25         to the entertainment group today; is that<br><br>Page 90<br>1        correct?<br>2    A.   Yes.<br><br>Page 92<br>11   Q.   Tell me who has the highest authority in the<br>12        entertainment claims group. | |
| | Defendant's Objection: (92:11-12, 14-16, 18-22, 24-25) Adjuster authority level not relevant; prejudicial; waste of time; FRE 401, 403 |
| 14          THE WITNESS:  Aaron does.<br>15   BY MR. HAYES:<br>16   Q.   What is his authority?<br><br>18          THE WITNESS:  I believe it is a<br>19        million dollars, but I don't know for sure.<br>20   BY MR. HAYES:<br>21   Q.   And what does that mean, that his authority<br>22        is a million dollars?<br><br>24          THE WITNESS:   It means he can set<br>25        a reserve in the system.  The system will | Plaintiffs' Response: Relevant to bad faith |
| Page 93<br>1        only allow him to set a total incurred, which<br>2        would include loss and defense costs, of up<br>3        to a million dollars.  It means he can settle<br>4        a claim for up to a million dollars.<br>5            So we call it reserve resolution<br>6        payment authority.<br>7    BY MR. HAYES:<br>8    Q.   Can Aaron issue a check to an insured to<br>9        compensate that insured for a loss for | Defendant's Objection: (93:1-25) Adjuster authority level not relevant; prejudicial; waste of time; FRE 401, 403<br><br>Plaintiffs' Response: Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 10     $1,000,001? | |
| 11  A.  No. | |
| 12  Q.  Can he issue a check to an insured to | |
| 13     compensate for a loss for $999,000? | |
| 14  A.  As long as that is the total amount that has | |
| 15     been incurred on the file. | |
| 16  Q.  And is there anyone else in the entertainment | |
| 17     group that has higher monetary authority than | |
| 18     Aaron today? | |
| 19  A.  In the entertainment group, no. | |
| 20  Q.  Has there ever been anyone in the | |
| 21     entertainment group that's had higher than a | |
| 22     million dollars in monetary authority? | |
| 23  A.  I don't know what Theresa's authority was | |
| 24     when she left.   It's possible it was | |
| 25     $2 million at that point, but I don't recall. | |
| | |
| Page 94 | Defendant's Objection: |
| 1  Q.  Could it have been more than 2 million? | (94:1-4, 7, 13-15, 18) |
| 2  A.  No. | Adjuster authority level not |
| 3  Q.  What was Pamela Johnson's authority?  Could | relevant; prejudicial; waste |
| 4     it have been more than 2 million? | of time; FRE 401, 403 |
| | |
| 7        THE WITNESS:  No. | Plaintiffs' Response: |
| | Relevant to bad faith |
| 13  Q.  Could Pamela Johnson's authority have ever | |
| 14     been more than $2 million when she was an | |
| 15     employee of OneBeacon? | |
| | |
| 18        THE WITNESS:  No. | |
| | |
| Page 95 | Defendant's Objection: |
| 12  Q.  If Pamela Johnson wanted to pay NBC Universal | Object (95:12-25) Adjuster |
| 13     for the losses it incurred on that claim, | authority level not relevant; |
| 14     could she do it with her own authority? | prejudicial; waste of time; |
| 15  A.  That depends upon what the dollar value was. | FRE 401, 403 |
| 16  Q.  Assume $7 million. | |
| 17  A.  No. | Plaintiffs' Response: |
| | Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 18  Q.  Could she do it with Theresa Gooley's<br>19      authority?<br>20  A.  Up to Theresa's authority, which I believe<br>21      was either a million or $2 million, I don't<br>22      remember what it was.<br>23  Q.  Assume $7 million, could Pamela pay the claim<br>24      with Theresa's say-so?<br>25  A.  No. | |
| Page 96<br>1  Q.  Assume $7 million, could Pamela pay the claim<br>2      with your say-so?<br>3  A.  Yes.<br>4  Q.  Assuming $7 million, could Pamela pay the<br>5      claim with anything less than your say-so?<br>6  A.  Anything less?   I don't know if I understand<br>7      what that means.<br>8  Q.  Could she get somebody else's permission to<br>9      pay the claim other than you?<br>10  A.  Nope.      Authority is a hierarchy.<br>11  Q.  Okay. Did you approve the denial of the Dig<br>12      claim?<br>13  A.  No.<br>14  Q.  Who did?<br>15  A.  I believe Pamela did. | Defendant's Objection:<br>Object (96:1-10) Adjuster authority level not relevant; prejudicial; waste of time; FRE 401, 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |
| Page 98<br>11  Q.  Did you ever offer an opinion regarding<br>12      whether or not the Dig claim should be denied<br>13      before it was denied?<br>14  A.  No. | Defendant's Counter:<br>98:15-16<br><br>Plaintiffs' Response:<br>Not necessary for completeness. Counter is separate question and answer. |
| Page 102<br>7    Q.  Do you have an answer to the question what | |

| Deposition Designation | Objection & Response |
|---|---|
| 8     would you have done if it was your decision<br>9     to deny or pay the Dig claim?<br><br>13     THE WITNESS:  Based on the<br>14     recommendations of my staff and any counsel<br>15     they've communicated with, I would support<br>16     their decision.<br>17  BY MR. HAYES:<br>18  Q.  Did you?<br>19  A.  Did I support their decision?<br>20     I just don't have a memory of what<br>21     was going through my mind at that time.   I<br>22     believe I said, "Looks good to me," although<br>23     I don't remember the exact words in that<br>24     e-mail.<br>25  Q.  So did you approve the decision to deny or<br><br>Page 103<br>1     not?<br>2  A.  I did not.<br>3  Q.  Okay.<br>4  A.  They don't need my authority to deny a claim.<br>5  Q.  But they would have needed your authority to<br>6     approve the Dig claim, right?<br>7  A.  To pay it?<br>8  Q.  Yes.<br>9  A.  Yes.<br><br>Page 169<br>22  Q.  NBC Universal took the position that there<br>23     was coverage.  Do you understand that?<br>24  A.  I do.<br>25  Q.  Okay.  And NBC Universal took the position | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objection:<br>Object(103:5-9) not relevant; prejudicial; FRE 401, 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| Page 170 | |
| 1     that there was coverage because Hamas is not | |
| 2     a government and it's a terrorist | |
| 3     organization.  Do you understand that? | |
| 4  A.  Yes. | |
| 5  Q.  Should OneBeacon have looked for evidence to | |
| 6     support those contentions in keeping with its | |
| 7     philosophy that it looks for coverage | |
| 8     wherever it can? | |
| | |
| 12     THE WITNESS:  OneBeacon should | |
| 13     consider the arguments that an insured makes | |
| 14     in disagreeing with a coverage position. | |
| 15 BY MR. HAYES: | |
| 16  Q.  And OneBeacon should look for support for | |
| 17     those arguments, right? | |
| | |
| 21     THE WITNESS:   They should | |
| 22     investigate, not look for support.  They | |
| 23     should try to objectively investigate the | |
| 24     assertions. | |
| | |
| Page 190 | |
| 19  Q.  So, Mr. Duffy, I want you to look at Page 3 | |
| 20     of Exhibit 5. | |
| 21  A.  Uh-huh. | |
| 22  Q.  You're familiar with what interrogatories | |
| 23     are, right? | |
| 24  A.  Sure. | |
| 25  Q.  I want you to read into the record | |
| | |
| Page 191 | |
| 1     interrogatory number 1. | |
| 2  A.  "Identify each individual employed by, acting | |
| 3     as a representative, or in any way associated | |
| 4     with Atlantic that was responsible for the | |
| 5     decision to deny the Dig claim." | |
| 6  Q.  Were you responsible for the decision to deny | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 7　　　　the Dig claim? | |
| 8　　A.　No. | |
| 9　　Q.　Were you responsible for the decision to deny | |
| 10　　　the Dig claim in any way? | |
| 11　　A.　Was I personally? | |
| 12　　Q.　Yes. | |
| 13　　A.　No. | |
| 14　　Q.　Were you responsible in some other capacity? | |
| 15　　A.　As the leader of the claims organization and | |
| 16　　　I have employees, I guess. | |
| 17　　Q.　So you are responsible for the decision to | |
| 18　　　deny the Dig claim? | |
| 19　　A.　Ultimately I am responsible for the things | |
| 20　　　that occur in the claims organization. | |
| 21　　Q.　Okay.  So why didn't you approve it before it | |
| 22　　　was made? | |
| 23　　A.　So I've answered that question several times. | |
| 24　　　I'll answer it again. | |
| 25　　　　　As I said, Pamela had the authority | |
| | |
| Page 192 | |
| 1.　　　to deny this claim.  I do not get involved. | |
| 2　　　with decisions to deny claims. | |
| 3　　Q.　Ever.  Is that right? | |
| 4　　A.　Define what that means. | |
| 5　　Q.　Do you ever get involved in decisions to deny | |
| 6　　　claims? | |
| | |
| 10　　　　THE WITNESS:  People do not get my | |
| 11　　　authority to deny claims.  I may be made | |
| 12　　　aware of the claim, but the decision to deny | |
| 13　　　rests with the adjusters and the people that | |
| 14　　　work for me. | |
| 15　　BY MR. HAYES: | |
| 16　　Q.　So there aren't any circumstances wherein an | |
| 17　　　adjuster needs your authority to deny a | |
| 18　　　claim? | |
| 19　　A.　Correct. | |
| 20　　Q.　Turn to the Page marked 4. | |
| 21　　A.　(Complies.) | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 22  Q.  Please read interrogatory number 2 into the<br>23       record.<br>24  A.  "Identify each individual employed by, acting<br>25       as a representative of, or in any way<br><br>Page 193<br>1       associated with Atlantic that any involvement<br>2       in evaluating and considering the Dig claim."<br>3  Q.  Did you have any involvement in evaluating<br>4       and considering the Dig claim?<br>5  A.  I received an e-mail from Theresa Gooley<br>6       telling me about the status of their decision<br>7       to deny the claim.<br>8  Q.  Did you have any involvement in evaluating<br>9       and considering the Dig claim?<br><br>12       THE WITNESS:  I believe my e-mail<br>13       to Theresa said, "Looks good to me."<br>14  BY MR. HAYES:<br>15  Q.  So is that a yes, you did?<br><br>19  Q.  I'm not asking what your e-mail says.  I can<br>20       read your e-mail.<br>21       I want to know if you had any<br>22       involvement in evaluating and considering the<br>23       Dig claim.<br>24  A.  To the extent I received an e-mail giving me<br>25       a heads-up, I responded and said, "Looks<br>       good<br><br>Page 194<br>1       to me," yes.<br>2  Q.  And that's the extent of your involvement?<br>3  A.  Correct.<br>Page 198<br>18  Q.  Do you recognize the document marked<br>19       Exhibit 7?<br>20  A.  Only because it was shown to me by my<br>       counsel | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objection:<br>Object (198:21,24<br>reference to mediation));<br>also object  to entirety as<br>not relevant and waste of |

| Deposition Designation | Objection & Response |
|---|---|
| 21      before the mediation.<br>22   Q.   You've never seen this document before -- let<br>23        me back up.<br>24           You said, "Mediation."  Did you<br>25        mean -- did you mean deposition?<br><br>Page 199<br>1   A.   Deposition.<br>2   Q.   Okay.  Am I correct in assuming that it's<br>3        your testimony that you've never seen this<br>4        document prior to when your counsel showed it<br>5        to you in preparation for this deposition?<br>6   A.   Is it even a document?  Isn't it an Outlook<br>7        printout or something?  I don't even know<br>8        what -- what is it?  It's a meeting invite?<br>9        No, I've never seen this before.<br>10  Q.   Did you have a meeting with Theresa Gooley<br>11       and Pamela Johnson on July 17th, 2014?<br>12  A.   I have no memory of having a meeting with<br>13       them.<br>14  Q.   Do you have any memory of having any meeting<br>15       with Pamela Johnson or Theresa Gooley<br>16       regarding the Dig claim?<br>17  A.   I don't remember.<br><br>Page 204<br>24  Q.   Do you recognize the document marked<br>25        Exhibit 8?<br><br><br><br><br>Page 205<br>1   A.   Only because I saw it in preparing for my | time FRE 401, 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith; reference to mediation was error; witness corrected his statement.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections: (204:24-25) Other claims not relevant; prejudicial; waste of time; FRE 401, 403<br><br>Plaintiffs' Response: Relevant to bad faith<br><br>Defendant's Objections: (502:1-25) Other claims not |

| Deposition Designation | Objection & Response |
|---|---|
| 2      deposition. | relevant; prejudicial; waste of time; FRE 401, 403 |
| 3   Q.   Is it your testimony that prior to preparing | |
| 4      for your deposition, you had never seen this | |
| 5      document? | <u>Plaintiffs' Response</u>: |
| 6   A.   No, I just don't recall seeing it. | Relevant to bad faith |
| 7   Q.   How about Exhibit 9? Do you recognize | |
| 8      Exhibit 9? | |
| 9   A.   I don't recognize this specific document, but | |
| 10     I recognize the type of document it is. | |
| 11   Q.   What type of document is it? | |
| 12   A.   It is an Excel spreadsheet. | |
| 13   Q.   Do you have any idea why Pamela Johnson sent | |
| 14     this Excel spreadsheet to Theresa Gooley? | |
| 15   A.   Yes. | |
| 16   Q.   Why? | |
| 17   A.   Because Pamela was responsible for keeping | |
| 18     Theresa apprised of the pending claims she | |
| 19     has that are unresolved, and Theresa keeps a | |
| 20     list so that she remembers those claims, and | |
| 21     if necessary, can discuss them with people | |
| 22     who need to know. | |
| 23   Q.   Why does it say, "OBE list for Sean"? | |
| 24   A.   Because Theresa would at times sit down with | |
| 25     me and let me know what was on her radar. | |
| | |
| <u>Page 206</u> | <u>Defendant's Objections</u>: |
| 1   Q.   And if you look at Exhibit 9, there's a | (206:1-25) Other claims not relevant; prejudicial; waste of time; FRE 401, 403 |
| 2     reference to NBC and a claim number. Do you | |
| 3     see that? | |
| 4   A.   Uh-huh. | <u>Plaintiffs' Response</u>: |
| 5   Q.   Do you know what claim number that refers to? | Relevant to bad faith |
| 6   A.   No. | |
| 7   Q.   And if you go to the second Page in the, | |
| 8     "Notes," column, it says, "Production shut | |
| 9     down due to unrest in Tel Aviv and | |
| 10    Jerusalem." Do you see that? | |
| 11   A.   Yeah. | |

| Deposition Designation | Objection & Response |
|---|---|
| 12 Q. Does that suggest to you that this is in<br>13     reference to the Dig claim?<br>14 A. Without knowing if this is the correct claim<br>15     number but looking at the policy period, the<br>16     date of loss doesn't make sense to me so I<br>17     don't know.<br>18        I don't recall seeing this document<br>19     before preparing for my depo.<br>20 Q. Did Ms. Gooley on occasion give you lists of<br>21     claims to discuss?<br>22 A. At times, yes.<br>23 Q. And does this look like one of those lists?<br>24 A. It could be, yes.<br>25 Q. And did Ms. Gooley ever discuss the Dig<br>    claim | |
| **Page 207**<br>1     with you, ever?<br>2 A. Outside of these e-mails, I don't have an<br>3     independent recollection of whether she did.<br><br>23 Q. This is Exhibit 10.  Do you recognize the<br>24     document marked Exhibit 10?<br>25 A. I've not seen it before that I recall. | **Defendant's Objections:**<br>(207:1-3, 23-25) Other<br>claims not relevant;<br>prejudicial; waste of time;<br>FRE 401, 403<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith |
| **Page 208**<br>1 Q. You don't recall ever seeing this document?<br>2 A. No.<br>3 Q. Do you have any reason to believe that you<br>4     did not send and receive the e-mail as<br>5     displayed on Exhibit 10?<br>6 A. Send and receive the e-mails.<br>7        No, I have no reason to believe I<br>8     didn't.<br>9     If you look at the back or the second Page<br>10     labeled ATL 1801, it says, "Copy of Crosby<br>11     potential 500k losses, 7/14/2014, final," and<br>12     it looks like it's an Excel spreadsheet.  Do | **Defendant's Objections:**<br>(208:1-21, 24) Other claims<br>not relevant; prejudicial;<br>waste of time; FRE 401,<br>403<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 13      you see that? | |
| 14  A.  Sure. | |
| 15  Q.  Do you have any idea what that is? | |
| 16  A.  No. That may have been the business letting | |
| 17      Dennis know about claims they were looking at | |
| 18      that had a potential loss in excess of | |
| 19      $500,000. | |
| 20  Q.  Why was Theresa sending that to you, if you | |
| 21      know? | |
| | |
| 24      THE WITNESS:  I don't recall. | |
| | |
| <u>Page 209</u> | <u>Defendant's Objections</u>: |
| 1.  Q.  Okay.  The e-mail says, "For the OBE tab" – | (209:1-25) Not relevant; |
| 2      what does OBE mean? | prejudicial; waste of time; |
| 3  A.  OneBeacon Entertainment. | FRE 401, 403 |
| 4  Q.  The paragraph says, "For the OBE tab, there | |
| 5      is a new matter noticed up last Friday that | <u>Plaintiffs' Response</u>: |
| 6      involves a television show filmed in Israel. | Relevant to bad faith |
| 7      Given the turmoil in Israel, NBC discontinued | |
| 8      shooting, and it appears it will be moving | |
| 9      the shooting to another location.  NBC is | |
| 10      looking for coverage, and what I refer to | |
| 11      loosely as the war exclusion, may act to | |
| 12      limit or preclude coverage.  The applicable | |
| 13      limits are 10 million.  We are looking at it | |
| 14      more closely, including research on the | |
| 15      exclusion and its application."  Do you see | |
| 16      that? | |
| 17  A.  Yup. | |
| 18  Q.  Do you recall reading that at the time? | |
| 19  A.  No. | |
| 20  Q.  Do you have any idea why Ms. Gooley was | |
| 21      calling out the Dig claim in this e-mail to | |
| 22      you? | |
| 23  A.  Well, you would have to ask her, but it was | |
| 24      common practice for my direct reports to | |
| 25      provide me with lists of things that they | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 210</u><br>1     were watching so that I would not be<br>2     surprised, and it appears she was giving me<br>3     notice of something that she was watching.<br>4  Q.  So that you would not be surprised. Is<br>5     that --<br>6  A.  Correct.<br>7  Q.  Okay.  Any other reason?<br>8  A.  No, that's the purpose of giving me a list of<br>9     claims, so I know what's out there.<br><br>23  Q.  Do you see the document marked Exhibit 11?<br>24  A.  Uh-huh.<br>25  Q.  Do you recognize it?<br><br><u>Page 211</u><br>1.     No.<br>2  Q.  Never seen this document before?<br>3  A.  I don't recall ever seeing this document<br>4     before, but I'm not disputing I received it.<br>5  Q.  If you go to the second Page in the last<br>6     sentence, which is a parenthetical, it says,<br>7     "I am attaching the coverage analysis." Do<br>8     you see that?<br>9  A.  Yup.<br>10  Q.  Do you have an understanding of what that<br>11     coverage analysis was?<br>12  A.  No.<br>13  Q.  Did you review it?<br>14  A.  I have no idea.<br>15     Okay.  Do you know when -- withdraw that.<br>16        Do you know when Atlantic<br>17     communicated its decision to deny the Dig<br>18     claim to NBC Universal?<br>19  A.  Not specifically.  I just saw the letter,<br>20     correspondence between Pamela that seemed to<br>21     have some dates in there.<br>22  Q.  Do you know the date that that decision was<br>23     communicated via phone? | <u>Defendant's Objections</u>:<br>(210:1-9) Not relevant;<br>prejudicial; waste of time;<br>FRE 401, 403<br><br><u>Plaintiffs' Response</u>:<br>Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 24  A.  No.<br><br>Page 212<br>4  Q.  Do you recognize the document marked<br>5       Exhibit 12?<br>6  A.  No.<br>7  Q.  Never seen it before?<br>8  A.  I think I saw part of it regarding my e-mail<br>9       to Dennis.<br>10  Q.  So on July 23rd, according to this exhibit,<br>11       you e-mailed Theresa Gooley's e-mail to you<br>12       from the previous day to Dennis Crosby?<br>13  A.  Uh-huh.<br>14  Q.  Do you see that?<br>15  A.  Yeah.<br>16  Q.  Why did you do that?<br>17  A.  To give Dennis a heads-up.<br>18  Q.  Why did you need to give Dennis a heads-up?<br>19  A.  It's in the nature of my responsibilities.<br>20  Q.  What does that mean?<br>21  A.  It's in the nature of my job responsibilities<br>22       to give people a heads-up.<br>23  Q.  Is he your superior?<br>24  A.  He's not.  I've already addressed that.  He's<br>25       my peer.<br><br>Page 213<br>1  Q.  Why did you need to give him a heads-up<br>       then?<br>2  A.  Because he's the head of underwriting, and<br>3       because when claims get denied, either he or<br>4       I get calls from brokers and insureds on a<br>5       frequent basis.  I'm giving a heads-up in<br>6       case he hears about this.<br>7  Q.  Any other reason?<br>8  A.  Not that I recall.<br>9  Q.  It says, "Will update you if warranted."  Do<br>10       you see that?<br>11  A.  Yeah. | |

| Deposition Designation | Objection & Response |
|---|---|
| 12  Q.  Did you update Mr. Crosby further beyond this<br>13      e-mail?<br>14  A.  Not to my knowledge.<br>15  Q.  Did you ever have a conversation with him<br>16      about the case or the claim?<br>17  A.  Outside of this e-mail, not to my knowledge,<br>18      not since the lawsuit has been filed.<br>19  Q.  What about before the lawsuit was filed?<br>20  A.  No. I wasn't even aware this claim was<br>21      disputed.  I didn't -- until we got sued, I<br>22      wasn't even aware it was still out there.<br><br>Page 215<br>11  Q.  Do you see the document marked Exhibit 13?<br>12  A.  Uh-huh.<br>13  Q.  Have you ever seen this e-mail before?<br>14  A.  I have.<br>15  Q.  When?<br>16  A.  In preparing for my deposition.<br>17  Q.  Had you seen it before that time?<br>18  A.  Well, it says I received it and I sent an<br>19      e-mail, so I assume I did.  I don't recall<br>20      it, though, beyond being refreshed through my<br>21      deposition.<br>22  Q.  Does this e-mail refresh your recollection on<br>23      the Dig claim in any way?<br>24  A.  No.<br>25  Q.  You say here in response to Theresa, "I agree<br><br>Page 216<br>1      with the analysis."  Do you see that?<br>2  A.  Uh-huh.<br>3  Q.  What analysis do you agree with?<br>4  A.  What Theresa as cited in the e-mail.<br>5  Q.  What specifically -- what analysis do you --<br>6  A.  I don't recall, because I don't recall<br>7      sending the e-mail.<br>8  Q.  Okay.  Why did you send the e-mail? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 9   A.   I don't recall. | |
| | |
| Page 243 | Defendant's Objections: |
| 1   Q.   Mr. Duffy, do you recognize the document | (243:1-25) not relevant; |
| 2          marked Exhibit 14? | waste of time; FRE 401, |
| 3   A.   No. | 403 |
| 4   Q.   Is the document familiar to you at all? | |
| 5   A.   I've never seen a document in this format, | Plaintiffs' Response: |
| 6          no. | Relevant to bad faith |
| 7   Q.   Can you tell whether or not this is a | |
| 8          document that came from OneBeacon? | |
| 9   A.   If -- if it was produced by us in discovery, | |
| 10          it -- it appears so.  I just never printed | |
| 11          off a claim file like this.  It appears to be | |
| 12          a claim file. | |
| 13   Q.   I want you to look at the first page marked | |
| 14          4005. | |
| 15   A.   Uh-huh. | |
| 16   Q.   See where it says, "Claim Summary"? | |
| 17   A.   Uh-huh. | |
| 18   Q.   And there's a table and some information | |
| 19          under that heading? | |
| 20   A.   Uh-huh. | |
| 21   Q.   Yes? | |
| 22   A.   Yeah. | |
| 23   Q.   Is this part of the CWS file kept on a claim? | |
| 24          I assume so.  I don't know.  I just don't | |
| 25          know where this was printed from or how it | |
| | |
| Page 244 | Defendant's Objections: |
| 1          was printed.  It's got a zero TB, which is an | (244:1-3) not relevant; |
| 2          entertainment claim.  I don't know whether | waste of time; FRE 401, |
| 3          this came from CWS or someplace else. | 403 |
| | |
| | Plaintiffs' Response: |
| | Relevant to bad faith |

7060055/015825

1  **THERESA A. GOOLEY WOLF—February 8, 2017**

2

| Deposition Designation | Objection & Response |
|---|---|
| Plaintiff's Designation of Theresa A. Gooley Wolf (6:21-25; 7:1-6; 16:18-20, 23-25; 17:1-25; 18:1-25; 20:18-25; 21:1; 22:5-10; 25:10-25; 26:4-18; 29:5-22; 31:10-25; 38:5-15; 39:15-17; 40:1-5; 44:3-25; 45:1-14; 46:4-8, 19-25; 47:1-4; 48:15-25; 49:1-25; 50:1-5, 10-25; 51:1-3; 52:2-4, 6-21, 23-25; 53:1-14, 17-25; 54:1-17, 20-24; 57:9-18, 21-25; 58:1-10; 61:23-25; 62:1-20; 63:21-23; 72:5-10, 13-25; 73:1-15, 18-20; 84:22-25; 85:1-21; 87:1-13, 16-20; 93:10-25; 94:1-17; 99:20-24; 100:2-25; 101:1, 4-25; 102:1, 4-5, 7-11, 14-19, 22-25; 103:1-25; 104:1-25; 105:1-25; 106:3-25; 107:1-25; 108:1-19, 21-23; 109:2-25; 110:1-25; 111:1-25; 112:1-25; 113:1-25; 114:1-25; 115:1-25; 116:1-25; 117:1-25; 118:1-25; 119:1-17; 120:9-22; 121:1-2, 4-25; 122:1-11, 15-25; 123:1-25; 124:1-7; 125:1-8, 11-25; 126:1-25; 127:1-25; 128:1-25; 129:1-25; 130:1-25; 131:1-25; 132:1-22; 133:1-19, 23-25; 134:1-11, 14-15, 17-22, 25; 135:1-14, 20-25; 136:1-2, 5-6, 10-25; 137:1-25; 138:1-5, 8-25; 139:1-25; 140:4-5, 8-18, 21-25; 141:1-2; 142:3-6, 9-10, 12-15, 18-25; 143:1-25; 144:1-2, 6-25; 145:1-20, 23-25; 146:1-6, 10-25; 147:1-3, 8-25; 148:1-18, 21-25, 149:1-25; 150:1-25; 151:1-17, 20-25; 152:1-7, 24-25; 153:1-13; 157:8-25; 158:1-20; 163:17-25; 164:1-25; 165:1-25; 166:1-25; 167:1-3; 168:8-25; 169:1-25; 170:1-18, 22-25; 171:1-25; 172:1-19; 173:24-25; 174:1-25; 175:1-4, 14-25; 176:1-6; 178:14-19, 22-25; 179:1-5; 180:19-22, 25; 181:1-21, 24-25; 182:1-25; 183:1-22, 25; 184:1, 3-10, 14-25; 185:1-25; 186:1-6; 188:14-25; 189:1-25; 190:1-4; 192:7-15, 19-24; 193:1, 3-25; 194:3-25; 195:3-18, 21-25; 196:1-16, 19-25; 197:1-9, 12-23; 198:1-25; 199:1, 16-19, 22-25; 200:1-14, 17-22, 25; 201:1-25; 202:1, 4-18; 209:4-12, 15-25; 210:11-14, 18-20, 23-25; 211:4-9, 11-14, 18-20, 22-25; 212:1-5, 17-25; 213:4-12; 214:1-19, 22-25; 215:1-10; 216:16-23; 217:1-25; 218:1-25; 219:1-9, 13-25; 220:1, 6-9, 14-25; 221:1-3, 7-12, 14-25; 222:1-23; 223:2-18, 22-25; 224:1-9, 13-20, 24-25; 225:1-5, 9-15, | |

| Deposition Designation | Objection & Response |
|---|---|
| 19-25; 226:1-20, 25; 227:1-14, 18-25; 228:1-25; 229:1, 10-25; 230:1-17, 23-25; 231:1-15, 18-25; 232:1-8, 13-25; 233:1-17, 22-25; 234:1-17, 21-24; 235:1-7, 11-25; 236:1-3, 7-15, 19-25; 237:1; 238:7-14, 19-25; 239:1-25; 240:1, 4-13, 16-25; 241:1-25; 242:1-15, 18-25; 243:1-25; 244:1-25; 245:1-25; 246:3-25; 247:1-25; 248:3-14, 17-18; 249:2-7, 11-18, 22-25; 250:1-12, 16-25; 251:1-25, 252:1-4, 21-25; 253:1-15; 254:5-9, 13-25; 255:1-8, 20-25; 256:1-25; 257:1-8, 13-25; 260:11-25; 261:1-2, 6-25; 262:1-25; 263:1-25; 264:1-11, 14-25; 265:1-25; 266:1-3, 6-17; 276:15-25; 277:1-25; 278:1-4; 279:10-25; 280:1-25; 281:1-25; 282:1-25; 283:1-25; 284:1-25; 285:1-25; 286:1-25; 287:1-3, 6-25; 288:1-25; 289:1, 3-4, 7-25; 290:1-23; 291:9-25; 292:1-25; 293:1-25; 294:1-25; 295:1-25; 296:1-25; 297:1-2): |  |

Page 6
21  Q.  Good morning, Ms. Gooley.  Could you please
22      state your full name and address for the
23      record.
24  A.  Sure.  It's Theresa Anne, A-N-N-E, Gooley,
25      G-O-O-L-E-Y, Wolf, W-O-L-F.  And you want my

Page 7
1       home address?
2   Q.  Actually, business address is fine.
3   A.  I don't -- I can't --
4   Q.  Okay.  Who do you work for?
5   A.  I work for Travelers, and it's in St. Paul,
6       Minnesota.
7   Q.  Okay.  And why don't you give us your home

Page 16
18  Q.  Okay. I believe you indicated you joined
19      OneBeacon entertainment in November of
        2010;

**68**

| Deposition Designation | Objection & Response |
|---|---|
| 20    is that correct?<br><br>23        THE WITNESS: Yeah, I went -- yes,<br>24    I went to OneBeacon in November 2010.<br>25        MS. COYOCA: Okay.<br><br>Page 17<br>1   BY MS. COYOCA:<br>2  Q.  And what was your position when you were<br>3      first hired at OneBeacon?<br>4  A.  Again in claims. I was the vice-president of<br>5      claims, so initially I oversaw the -- the<br>6      financial institution group and what --<br>7      what -- what is called the government risk<br>8      group and then the energy group.<br>9  Q.  And how long did you handle that position<br>10     overseeing the financial institution group,<br>11     the government group and the energy group?<br>12  A.  The government group I -- I've -- my whole<br>13     tenure at -- at OneBeacon I -- I oversaw.<br>14     Energy I oversaw -- OneBeacon ultimately<br>15     moved out of the -- out of energy, and so I<br>16     oversaw that up through the time that they<br>17     moved out of the energy in -- I'm trying to<br>18     think. I can't remember the exact date. I<br>19     want to say it probably was sometime in 2013,<br>20     but I don't remember the exact date.<br>21  Q.  What about the financial institutions group?<br>22  A.  So the financial institutions group, I<br>23     oversaw that group probably for about four<br>24     years, and then it transitioned over to<br>25     somebody else within OneBeacon.<br><br>Page 18<br>1  Q.  And when you say you oversaw the financial<br>2     institution group or the energy group,<br>3     et cetera, what do you mean by the words<br>4     "oversaw"?<br>5  A.  Each of -- each of those divisions within | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 6     OneBeacon had a claim manager and so I<br>7     oversaw that claim manager.<br>8  Q.  What position, if -- if there were any<br>9     different positions other than a<br>10    vice-president of claims, did you hold while<br>11    you were employed by OneBeacon?<br>12  A.  I think my position at all times was<br>13    vice-president of claims. I think -- strike<br>14    that. My -- it is -- my position at all<br>15    times was vice-president of claims. The<br>16    groups that I oversaw changed during the<br>17    course of my tenure at OneBeacon.<br>18  Q.  Other than the three groups that you've<br>19    already mentioned, what other groups did you<br>20    oversee?<br>21  A.  I oversaw the technology group, and the<br>22    accident and health group, and the<br>23    entertainment group. I just want to make<br>24    sure I'm not missing one. And the<br>25    environmental group or excess and surplus.<br><br>Page 20<br>18  Q.  Okay. Focusing on the entertainment group --<br>19  A.  Perfect.<br>20  Q.  -- what was the -- who did you oversee at the<br>21    entertainment group?<br>22  A.  Pamela Johnson.<br>23  Q.  Okay. What was Pamela Johnson?<br>24  A.  She was the -- the claim manager, I'm not<br>25    sure if that was the exact title, but the<br><br>Page 21<br>1     claim manager of the entertainment group.<br><br>Page 22<br>5  Q.  And how long did you oversee the<br>6    entertainment group, from what period of time<br>7    until the end?<br>8  A.  I oversaw it through December of 2015. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| When<br>9     I started -- let's see, Pamela came in 2012.<br>10    I think I started probably in 2013.<br><br>Page 25<br>10  Q.  You indicated that Pamela Johnson would<br>11       assign the claim. What did you mean by that?<br>12  A.  My recollection is if -- when the claim came<br>13       in, she'd look at the claim and she'd<br>14       determine which of the claim handlers should<br>15       handle the particular claim.<br>16  Q.  What was your understanding as to how she<br>17       determined who would receive the<br>         assignment?<br>18  A.  I think there's -- there would be a number of<br>19       factors that would go into her analysis. I<br>20       think if there's an existing relationship, if<br>21       a particular claim handler handles a<br>22       particular account, we obviously want to keep<br>23       that claim with the particular account.<br>24          It could be based on complexity, it<br>25       could be based on region. It also -- could<br><br>Page 26<br>4  Q.  With respect to the complexity factor that<br>5       you referenced, what about the complex or<br>6       non-complex nature of the claim would impact<br>7       the assignment to a particular claims<br>8       handler?<br><br>9  A.  If a claim would be particularly complex, it<br>10      could go to a less -- it would -- it could go<br>11      to somebody who is less experienced, but then<br>12      Pamela would know she would have to -- she<br>13      would be working side by side with that<br>14      individual. If it -- you know, if it fit<br>15      within -- you know, if it was appropriate for<br>16      somebody who has already handled that | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 17　　　particular type of claim, she might direct it<br>18　　　to that particular individual.<br>Page 29<br>5　　　　　　So to your knowledge, how long has<br>6　　　Danny Gutterman worked for OneBeacon?<br>7　A.　I think he started sometime in 2013. I think<br>8　　　that's right. I think it would have been --<br>9　　　it was in the spring or early summer, I<br>10　　　believe, that he started.<br>11　Q.　And prior to working for OneBeacon, what did<br>12　　　Mr. Gutterman do, if you know?<br>13　A.　I don't know what his title was, but I have a<br>14　　　general -- it's a production assistant or<br>15　　　he -- he worked on different productions, and<br>16　　　my understanding is he did a handful of<br>17　　　miscellaneous jobs associated with the<br>18　　　productions.<br>19　Q.　And did Mr. Gutterman, to your knowledge,<br>20　　　have any insurance experience prior to going<br>21　　　to work for OneBeacon?<br>22　A.　I don't believe he did.<br>Page 31<br>10　Q.　This case concerns a claim regarding the<br>11　　　television show Dig. You're aware of that,<br>12　　　are you not?<br>13　A. Yes.<br>14　Q.　Okay. Prior to -- just setting to the side<br>15　　　the Dig claim, did you have any experience<br>16　　　reviewing any coverage determinations that<br>17　　　were made as to any other extra expense<br>18　　　claims?<br>19　A.　I know that I've -- I worked with Pamela on<br>20　　　other claims. I can't recall specific claims<br>21　　　at this time, though.<br>22　Q.　You can't recall any other claims relating to<br>23　　　entertainment claims or any other extra<br>24　　　expense claims?<br>25　A.　Any other extra expense claims. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 38</u><br>5  Q.  Okay. Other than the Dig claim, can you<br>6      recall any other instance while you were<br>7      working for OneBeacon where you or anyone<br>8      working for you considered the potential<br>9      applicability of the war exclusion?<br>10  A.  Not that I'm aware of.<br>11  Q.  Prior to working for OneBeacon, did you have<br>12      any circumstances pursuant to which you were<br>13      reviewing the potential applicability of the<br>14      war exclusion to a claim?<br>15  A.  No.<br><br><u>Page 39</u><br>15  Q.  Did you review the work that Ms. Johnson had<br>16      done in investigating claims?<br>17  A.  Generally, no.<br><br><u>Page 40</u><br>1  Q.  Were there any occasions that you can recall<br>2      where you would direct Ms. Johnson to go back<br>3      and do additional work in investigating a<br>4      claim?<br>5  A.  No.<br><br><u>Page 44</u><br>3  Q.  Okay. I'd like to show you a document,<br>4      Ms. Gooley, that has previously been<br>5      identified as an exhibit to Danny Gutterman's<br>6      deposition. So I'm going to go ahead and<br>7      give you that. (Hands document.)<br>8         And for the record, this document is<br>9      titled, "General Claims Practices," and it's<br>10    labeled Bates control numbers ATL000735<br>11    through 743. Could you please take a moment | |

| Deposition Designation | Objection & Response |
|---|---|
| 12     to familiarize yourself with this document? | |
| 13   A.   Yes. | |
| 14   Q.   Please let me know when you're ready for | |
| 15     questions. | |
| 16   A.   Okay. (Reviews document.) I'm done | |
| 17     reviewing the document. | |
| 18   Q.   Thank you. Are you familiar with this | |
| 19     document? | |
| 20   A.   Yes. | |
| 21   Q.   What is it? | |
| 22   A.   It's called the General Claims Practices. | |
| 23   Q.   Were you familiar with it before you just | |
| 24     read through it? | |
| 25   A.   Yes, I've seen it before. | |
| | |
| Page 45 | |
| 1   Q.   When did you see it? | |
| 2   A.   When I was at OneBeacon. | |
| 3   Q.   Was it the General Claims Practice -- | |
| 4     practices that were in effect at the time | |
| 5     that you were working for OneBeacon? | |
| 6   A.   Yes, it was. | |
| 7   Q.   Was there any entertainment-related claims | |
| 8     practices document? | |
| 9   A.   Not that we use, no. | |
| 10   Q.   Regardless of whether you used it, were you | |
| 11     aware whether or not there was an | |
| 12     entertainment-related claims practices | |
| 13     document? | |
| 14   A.   No. | |
| | |
| Page 46 | |
| 4   Q.   With respect to the fifth bullet point on | |
| 5     page 735 where it indicates, "Review and | |
| 6     assess coverage provided to the insured    by | |
| 7     applicable policies," do you see that bullet | |
| 8     point? | |
| | |
| 19   Q.   Do you see that provision? | |

| Deposition Designation | Objection & Response |
|---|---|
| 20  A.  I do. | |
| 21  Q.  And it's on page ATL000735. Do you see that? | |
| 22  A.  Yes. | |
| 23  Q.  Okay. What was your understanding of the | |
| 24        meaning of that provision? | |
| 25  A.  My understanding is that when you -- when we | |
| | |
| Page 47 | |
| 1       receive a claim, we look at the facts and | |
| 2       then we -- we analyze coverage based on the | |
| 3       facts given the existing policies in place | |
| 4       with the insured. | |
| Page 48 | |
| 15  Q.  Are there circumstances pursuant to which -- | |
| 16        and, again, focusing on a first-party | |
| 17        claim -- OneBeacon would retain the services | |
| 18        of an independent claims adjuster? | |
| 19  A.  There are occasions when OneBeacon would | |
| 20        retain an independent claim adjuster. It | |
| 21        would depend on the nature of the claim and | |
| 22        it would also depend -- I mean, there -- | |
| 23        there are a number of facts that would go | |
| 24        into whether or not they think it was prudent | |
| 25        to retain an independent adjuster. | |
| | |
| Page 49 | |
| 1       Generally, we don't do that, though. | |
| 2   Q.  Focusing again on just entertainment-related | |
| 3       claims, are there -- were there circumstances | |
| 4       pursuant to which OneBeacon would retain the | |
| 5       services of an independent adjuster in order | |
| 6       to investigate an entertainment-related | |
| 7       claim? | |
| 8   A.  There are circumstances where they might | |
| 9       retain an independent adjuster, yes. | |
| 10  Q.  And under what circumstances would | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| OneBeacon<br>11    decide to use the services of an independent<br>12    adjuster in order to investigate, again,<br>13    focusing on an independent first-party claim?<br>14  A.  There might be an occasion where we have, say<br>15    for instance, Sandy or something where<br>16    there's so -- there's such a volume of claims<br>17    that we want to make sure that we get to the<br>18    particular claim, so we may enlist an<br>19    independent adjuster.<br>20        We may enlist them to help us with<br>21    particular pieces of the investigation,<br>22    because we want to make sure that we, you<br>23    know, do a thorough investigation, but it is<br>24    also timely.<br>25        So -- so those would be<br><br>Page 50<br>1    circumstances where we may -- we may have<br>2    retained an independent adjuster.<br>3  Q.  What if the factual circumstances of the<br>4    claim involved an area that was not of common<br>5    understanding or knowledge?<br><br>10  A.  I'm trying to think of a particular type of<br>11    claim where we wouldn't have the common<br>12    understanding or knowledge. Again, we might<br>13    retain independent -- an independent adjuster<br>14    to help us with a slice of it, but, again, we<br>15    feel at least the way OneBeacon is structured<br>16    that we have -- we have the skill level and<br>17    the experience to handle claims.<br>18  Q.  You indicated in one of your prior answers<br>19    that you want to make sure that you do a<br>20    thorough investigation. What do you mean by<br>21    thorough investigation?<br>22  A.  A thorough investigation is we want to make<br>23    sure that we look at what we see as the | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 24     totality of the evidence and the information<br>25     and then reach a conclusion. So, again, it<br><br>Page 51<br>1     depends on the nature of the facts of the<br>2     claim what -- what that may or may not<br>3     entail.<br><br>Page 52<br>2  Q. When you indicated the need to do a thorough<br>3     investigation, was it -- was it important not<br>4     to rush an investigation?<br><br>6       THE WITNESS: I think that you're<br>7     always balancing facts, right? I mean,<br>8     thorough could take ten years if you want to<br>9     do that. I mean, you always have to balance<br>10    it with the timing, both whether the insured<br>11    needs an answer quickly or -- so we balance<br>12    both of those. We want to do a thorough<br>13    investigation, but we also have time<br>14    pressures to get it done in a timely fashion.<br>15 BY MS. COYOCA:<br>16  Q.  If there's a time pressure to get it done in<br>17    a certain time frame, but there is a question<br>18    about whether a claim is covered or not<br>19    covered, wouldn't a potential option be to<br>20    issue a reservation of rights on the claim,<br>21    again, speaking to a first-party claim?<br><br>23       THE WITNESS: I mean, I think<br>24    there's several options. If you're<br>25    continuing with your investigation and you<br><br>Page 53<br>1     need additional information, then you let the<br>2     insured know what -- what additional<br>3     information you need before you can reach a<br>4     coverage decision. If you feel like you've | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 5    got enough information then -- and you're in<br>6    a position to issue a coverage -- a coverage<br>7    determination, then you'd want to let the<br>8    insured know right away.<br>9  BY MS. COYOCA:<br>10  Q.  So in your view, if there was a close<br>11    question, it would not be appropriate to<br>12    accept a claim, but do it subject to a<br>13    reservation of rights and then continue to<br>14    look at the coverage issue?<br><br>17      THE WITNESS: What -- I -- I think<br>18    that -- what do you mean by accept a claim?<br>19  BY MS. COYOCA:<br>20  Q.  Accept that a claim is covered, but do -- do<br>21    so subject to a reservation of rights?<br>22  A.  When you -- yeah, I'm just trying to -- with<br>23    a first-party claim there may be -- I'm<br>24    trying to think of an occasion where we'd<br>25    accept coverage and then reserve our rights.<br><br>Page 54<br>1    There may be pieces of a particular claim<br>2    that are covered and uncovered and we'd point<br>3    that out, and maybe the entire claim is<br>4    uncovered and then we're not going to say<br>5    part of it's covered and then issue a<br>6    reservation, so...<br>7  Q.  Right. I'm actually asking about a different<br>8    circumstance.<br>9      What I'm asking about is: If there<br>10  is a close coverage question as to whether<br>11  the claim is covered or not covered, not<br>12  whether a particular exclusion applies or<br>13  does not apply, do you ever think it's<br>14  appropriate to accept the claim, but do so<br>15  subject to a reservation of rights so that<br>16  more time can be given to analyzing the<br>17  coverage? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 20         THE WITNESS: I don't think that<br>21     we would -- if there's a close call, if we<br>22     need more information to determine whether or<br>23     not it's covered or uncovered, would we<br>24     accept coverage and then reserve.<br><br>Page 57<br>9   Q.   If you could please look at page 736, that's<br>10     the second page of this Exhibit Number 15.<br>11     And I'm looking at the second bullet point<br>12     that refers to, "Determine the need for<br>13     outside vendors to assist in the<br>14     investigation." Do you see that entry?<br>15   A.   I do.<br>16   Q.   Under what circumstances do you believe it's<br>17     appropriate to retain outside vendors to<br>18     assist in the investigation of a claim?<br><br>21         THE WITNESS: Again, it really<br>22     kind of depends on what the nature of the<br>23     claim is. But I suppose if we had a claim<br>24     related to fire damage, there may be a need<br>25     for a fire expert. It would be occasions<br><br>Page 58<br>1     where we would retain somebody to assist us<br>2     with an investigation.<br>3         Whether we -- whether it's because<br>4     of the timing and the need, or if it's a<br>5     particular slice, again, within the<br>6     investigation that we feel like they would be<br>7     helpful, an accountant might be helpful in<br>8     terms of looking at the books or the<br>9     financials or certain transactions, something<br>10     like that.<br><br>Page 61<br>23   Q. When a claim is being investigated and | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 24  coverage is being assessed, do you think it's<br>25  important to go back to the underwriter?<br><br>Page 62<br>1 A. No.<br>2 Q. Why not?<br>3 A. Because when you look at coverage, the<br>4  language of the policy is clear and<br>5  unambiguous. You apply the law -- you apply<br>6  the -- the policy as it is written and you<br>7  investigate and look at the facts.<br>8 Q. What if the claim -- excuse me.<br>9   What if the language of the policy<br>10  is not clear or unambiguous, do you think if<br>11  that circumstance it's important to go back<br>12  to the underwriter?<br>13   MS. SCOTT REED: Objection; vague.<br>14   THE WITNESS: I think that, again,<br>15  you look at the language of the policy. To<br>16  the extent -- and I'm not suggesting to the<br>17  extent there's an argument that there is an<br>18  ambiguity, then you look at what the common<br>19  sense meaning of the policy is. I don't know<br>20  that I would go back to the underwriter.<br><br>Page 63<br>21 Q. And before we take a break, you left<br>22  OneBeacon in December 2015; is that<br>  correct?<br>23 A. That's correct.<br><br>Page 72<br>5 Q. With respect to the use of attorneys in the<br>6  investigation of a claim, were there any<br>7  circumstances pursuant to which, as to an<br>8  entertainment claim, a first-party<br>9  entertainment claim, the -- an outside<br>10  attorney would be necessary? | Defendant's Objections:<br>(72:5-10, 13-25) Referenced attorney and legal opinion; not relevant; privilege; FRE 401, 403, 502<br><br>Plaintiffs' Response:<br>Relevant to bad faith; mere |

| Deposition Designation | Objection & Response |
|---|---|
| 13        THE WITNESS: As we speak, I'm<br>14    having a hard time thinking when we -- when<br>15    we would necessarily need an attorney on a<br>16    particular claim.<br>17  BY MS. COYOCA:<br>18  Q.  Again, focusing just on entertainment<br>19    first-party claims, were there circumstances<br>20    pursuant to which outside counsel's coverage<br>21    opinion would be sought?<br>22  A. There may be occasions where we would ask for<br>23    a coverage opinion, yes.<br>24  Q.  What were the circumstances that would inform<br>25    the decision to retain outside counsel to | reference to attorney or legal opinion not privileged. |
| Page 73<br>1    obtain an outside counsel coverage opinion?<br>2  A.  Again, it depends on the nature -- it would<br>3    depend on the nature of the claim and the<br>4    facts, it would depend on the particular<br>5    coverage or policy question at issue. It may<br>6    depend on -- on simply on the -- the timing<br>7    or the availability when we need to turn<br>8    things around really quite quickly. So<br>9    there's really a host of facts that we'd<br>10   consider on whether or not we need -- whether<br>11   or not we would retain counsel.<br>12  Q.  If the coverage question was a close call, is<br>13   that a circumstances pursuant to which it<br>14   would be advantageous to obtain outside<br>15   coverage counsel's opinion?<br><br>18        THE WITNESS: It might be an<br>19   occasion when we'd hire -- we'd retain<br>20   outside counsel.<br><br>Page 84<br>22  Q.  I would like to direct your attention to a | Defendant's Objections:<br>(73:1-15, 18-20) Referenced attorney and legal opinion; not relevant; privilege; FRE , 401, 403, 502<br><br>Plaintiffs' Response:<br>Relevant to bad faith; mere reference to attorney or legal opinion not privileged. |

| Deposition Designation | Objection & Response |
|---|---|
| 23    new exhibit that previously has been marked,<br>24    and this is entitled, "Core Principals," and<br>25    it's labeled Bates control ATL000731 dash<br><br>Page 85<br>1    732, and it was previously marked as<br>2    Exhibit 16. (Hands document.)<br>3       And, again, just let me know when<br>4    you're ready for questions.<br>5  A.  Okay. (Reviews document.) I've finished<br>6    reviewing it.<br>7  Q.  Thank you.<br>8       Are you familiar with the<br>9    Core Principals document?<br>10  A.  Yes, I am.<br>11  Q.  What is it?<br>12  A.  It's -- it's one of the documents that<br>13    OneBeacon has that assist the claim adjuster.<br>14  Q.  Other than the document that we were just<br>15    looking at, the claims practices document,<br>16    Exhibit 15, General Claims Practices, and the<br>17    Core Principals document, are you aware of<br>18    any other claims related documents that<br>19    contain OneBeacon's policies, procedures or<br>20    recommendations for claims handling?<br>21  A.  Not specific to entertainment, no.<br><br>Page 87<br>1  Q. In item number 1 on Exhibit 16, "Focus on the<br>2    claims file," the first sentence is, "Claims<br>3    personnel should thoroughly investigate each<br>4    claim." Do you see that?<br>5  A.  I do.<br>6  Q.  What did you understand that to mean?<br>7  A.  To thoroughly investigate the claim, to --<br>8    to -- to complete a thorough investigation<br>9    before reaching a decision.<br>10  Q.  What -- what did you consider, though, to be<br>11    a thorough investigation? We talked about | |

| Deposition Designation | Objection & Response |
|---|---|
| 12   what an investigation could be. What did you<br>13   consider to be a thorough investigation?<br><br>16      THE WITNESS: It would depend on<br>17   the nature of the claim, what the facts were<br>18   and what was necessary to complete a thorough<br>19   investigation. It's necessarily fact<br>20   specific, I think.<br><br>Page 93<br>10      MS. COYOCA: I actually want to<br>11   move on to a new exhibit number, and I<br>12   believe we're on Exhibit 31. So Exhibit 31<br>13   will be an e-mail chain, and it's labeled<br>14   Bates control ATL001571 through 1572.<br>15      (Whereupon, Exhibit 31 was<br>16      marked for identification.)<br>17      THE WITNESS: (Reviews document.)<br>18   I've finished looking at it.<br>19      MS. COYOCA: Okay.<br>20   BY MS. COYOCA:<br>21   Q.   Actually, before you -- I ask you about this<br>22      document, when is the first time you heard<br>23      about the Dig claim?<br>24   A.   I think that -- I'm trying to remember if<br>25      it -- I think it was the day after Aon<br><br>Page 94<br>1      provided OneBeacon with formal notice of the<br>2      claim.<br>3   Q.   And how did you hear about it?<br>4   A.   From Pamela.<br>5   Q.   Did she call you, send you an e-mail, ask for<br>6      a meeting?<br>7   A.   I think -- I think this might have been how<br>8      she let me know about it.<br>9   Q.   Okay. And by, "This," you mean Exhibit 31,<br>10      the e-mail exchange? | |

| Deposition Designation | Objection & Response |
|---|---|
| 11  A.   Yes.<br>12  Q.   Okay. So do you recall any conversations or<br>13        communications with Ms. Johnson prior to<br>14        receipt of the e-mail exchange that's<br>15        contained in Exhibit 31?<br>16  A.   I don't recall any conversations before this<br>17        e-mail, no.<br><br>Page 99<br>20  Q.   Did you consider all claims adjusters or<br>21        handlers that were involved in claims<br>22        relating to the entertainment industry to be<br>23        of equal value -- or, excuse me, equal<br>24        quality?<br><br>Page 100<br>2          THE WITNESS: They all had their<br>3        strengths. Some had more experience than<br>4        others and so some necessarily needed more<br>5        mentoring.<br>6  BY MS. COYOCA:<br>7  Q.   At the time that -- that Danny Gutterman was<br>8        assigned to the Dig claim in 2014, how long<br>9        had Mr. Gutterman been at the company?<br>10  A.   I think he'd been there about a year, but,<br>11        again, I can't remember the exact dates.<br>12  Q.   Did you consider a one-year period of<br>13        experience to be an experienced claims<br>14        adjuster?<br>15  A.   It depends. I mean, it really depends. You<br>16        know, they may have a significant amount of<br>17        experience in a particular area, they may<br>18        have come with more experience, but, again,<br>19        it depends. In this particular case, though,<br>20        Pamela worked with Danny the entire time,<br>21        so...<br>22  Q.   Okay. But -- but separate and apart from<br>23        Ms. Johnson, I'm just asking with respect to<br>24        Mr. Gutterman, did you consider his one year | |

| Deposition Designation | Objection & Response |
|---|---|
| 25     of experience as a claims adjuster to be<br><br>Page 101<br>1     having significant experience?<br><br>4     THE WITNESS: I think it's a good<br>5     base. I mean, he can always learn more, like<br>6     everybody.<br>7   BY MS. COYOCA:<br>8  Q.  But one-year period of time adjusting claims,<br>9     you would consider to be a good base to<br>10    develop claims handling expertise?<br>11  A.  Correct. He might -- yeah.<br>12  Q.  Would you consider one year to be sufficient<br>13    to hold one's self out to be an experienced<br>14    claims adjuster?<br>15  A.  Could be.<br>16  Q.  Do you think that there is a qualitative<br>17    difference in terms of expertise if one has<br>18    been a claims handler for 20 years versus one<br>19    who has been doing it for one year?<br>20  A.  I think someone who has been doing it for<br>21    20 years is clearly seeing a lot of<br>22    variations of claims and, yeah, I mean, they<br>23    have more experience.<br>24  Q.  Who was responsible for assigning<br>25    Mr. Gutterman to the claim? Was it just<br><br>Page 102<br>1     Ms. Johnson?<br><br>4     THE WITNESS: It would have been<br>5     Mrs. -- it would have been Pamela, yes.<br><br>7  Q.  And did you have any input on that<br>8    assignment?<br>9  A.  No.<br>10  Q.  What was Mr. Gutterman's role in the<br>11    adjusting of the Dig claim? | Defendant's Counter:<br>102:10-16; 103:1-9<br><br>Plaintiffs' Response:<br>Not necessary for completeness. Counter is separate question and answer. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 14      THE WITNESS: I think Danny had a<br>15    more limited role in that. I think Pamela is<br>16    the one that truly handled the claim.<br>17  BY MS. COYOCA:<br>18  Q.  I understand that you viewed it to have been<br>19    more limited, but -- but what did he do?<br><br>22      THE WITNESS: I mean, he would<br>23    have worked with Pamela. I can't -- you<br>24    know, I can't tell you specifically.<br>25  BY MS. COYOCA:<br><br>Page 103<br>1  Q.  At any point in time that you were involved<br>2    with the claim, did you gain an understanding<br>3    of what it exactly is that Mr. Gutterman was<br>4    doing?<br>5  A.  I know that he was looking at different<br>6    outside, you know, articles, things like<br>7    that. But my primary correspondence --<br>8    communication -- my communication was with<br>9    Pamela.<br>10  Q.  Did you have any conversations with<br>11    Ms. Johnson about the work that Mr. Gutterman<br>12    was doing?<br>13  A.  I -- I don't recall.<br>14  Q.  Did you have any conversations with her<br>15    specifically about the outside sources, the<br>16    articles that Mr. Gutterman was consulting<br>17    with?<br>18  A.  No.<br>19  Q.  Did you provide any direction to Ms. Johnson<br>20    in terms of the use of Mr. Gutterman as a<br>21    resource to locate sources of information?<br>22  A.  No, I did not.<br>23  Q.  Directing your attention to the first e-mail<br>24    in the chain of Exhibit 31, which is the | |

| Deposition Designation | Objection & Response |
|---|---|
| 25　　　July 16 e-mail from Pamela Johnson to | |

Page 104

| | |
|---|---|
| 1 | Theresa Gooley, "Active War Exclusion, Are |
| 2 | you available for a short call," it indicates |
| 3 | that it was sent at 1:44 p.m. Do you see the |
| 4 | e-mail? |
| 5　A. | I do. |
| 6　Q. | Do you recall receiving the e-mail? |
| 7　A. | I do now. I mean, I wouldn't have remembered |
| 8 | an e-mail that long ago, but... |
| 9　Q. | Do you have any reason to believe that you |
| 10 | didn't receive it at or about the time it |
| 11 | indicates it was sent? |
| 12　A. | No. |
| 13　Q. | In the e-mail Ms. Johnson makes reference to |
| 14 | the fact that, "An imminent peril claim has |
| 15 | been made by NBC stemming from a production |
| 16 | that was shut down due to the rocket fire |
| 17 | into Tel Aviv and Jerusalem." Do you see |
| 18 | that? |
| 19　A. | I do. |
| 20　Q. | First of all, at that point in time did you |
| 21 | know what an imminent peril claim was? |
| 22　A. | I had heard of it, yes. |
| 23　Q. | What was your understanding of what an |
| 24 | imminent peril claim was? |
| 25　A. | Just that there was some immediate danger. |

Page 105

| | |
|---|---|
| 1　Q. | And what was your understanding as to what |
| 2 | the coverage would be? |
| 3　A. | I'd have to see the policy. |
| 4　Q. | There's a reference in the e-mail in the |
| 5 | second to the last line to the, "Israeli |
| 6 | Hamas conflict." Do you see that? |
| 7　A. | I do. |

| Deposition Designation | Objection & Response |
|---|---|
| 8  Q.  At or about this time frame in July 2014, <br> 9       what was your understanding of what Hamas was <br> 10      or is? <br> 11 A.  It's an organization or a -- in the <br> 12      Middle East in the Gaza Strip. <br> 13 Q.  And, again, just focusing back on July 16, <br> 14      did you know anything further about Hamas <br> 15      other than it was an organization in the <br> 16      Middle East in Gaza Strip? <br> 17 A.  I mean, you know, just general things that <br> 18      you hear in the news, et cetera. <br> 19 Q.  Right. That's what I'm trying to get at. <br> 20      What was your general understanding based on <br> 21      news sources of what Hamas is? <br> 22 A.  Well, just what I said, it's in the <br> 23      Middle East, I mean... <br> 24 Q.  Okay. Did you -- did you know what kind of <br> 25      activities Hamas engaged in? <br><br> Page 106 <br> 3          THE WITNESS: They -- I mean, <br> 4       yeah, generally, they engage in quite a few <br> 5       different activities. <br> 6  BY MS. COYOCA: <br> 7  Q.  What activities were you aware of as of July <br> 8       2014 that Hamas engaged in? <br> 9  A.  Just, you know, the bombing and the conflict <br> 10      back and forth within Israel. <br> 11 Q.  And what was your understanding as to what <br> 12      the conflict was with Israel? <br> 13 A.  At that time? <br> 14 Q.  Uh-huh. <br> 15 A.  Well, I think there's a whole number -- a <br> 16      whole number of issues as to what the <br> 17      conflict is, I guess. But, you know, at that <br> 18      time I just -- I understood that, you know, <br> 19      they were -- they were launching missiles <br> 20      back and forth at each other. | |

**88**

| Deposition Designation | Objection & Response |
|---|---|
| 21  Q.   Okay. So it was your understanding that the<br>22        conflict involved Hamas and Israel launching<br>23        missiles back and forth at each other; is<br>24        that correct?<br>25  A.   That's part of it. I mean, this is just an<br><br>Page 107<br>1        initial e-mail, so I wanted to have a<br>2        conversation with Pamela.<br>3   Q.   I completely understand, but --<br>4   A.   Yeah.<br>5   Q.   -- I'm just asking for your -- your baseline<br>6        level of knowledge prior to getting into the<br>7        claim, I want -- I'd like to know what --<br>8        gain your understanding of Hamas is and what<br>9        the conflict was about, so that's the reason<br>10       for the questions.<br>11             The -- the -- I'd like to focus on<br>12       the missiles going back and forth. Was it<br>13       your understanding that Israel was launching<br>14       missiles at Hamas in Gaza?<br>15  A.   That's my understanding, yes.<br>16  Q.   What was your understanding as to the reasons<br>17       why there was the conflict?<br>18  A.   You mean generally why there's a conflict<br>19       between the two or the express reasons at<br>20       this time?<br>21  Q.   Generally.<br>22  A.   Generally? I -- I mean, there's a whole host<br>23       of reasons. I mean, it goes back to, you<br>24       know, thousands of years ago. But first and<br>25       foremost, it's over the -- over the land,<br><br>Page 108<br>1        over...<br>2   Q.   And what land would that be?<br>3   A.   Well, it's Israel.<br>4   Q.   And this is not meant to be a history test, I | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 5　　　really just would like to understand your<br>6　　　base level of knowledge prior to getting into<br>7　　　the investigation of the land. What -- what<br>8　　　was the -- of the claim.<br>9　　　　　When you say there was a conflict<br>10　　　over the land and a conflict over the land of<br>11　　　Israel, what was that conflict?<br>12　A.　Well, again, you know, there's -- there's --<br>13　　　they're fighting back and forth, there's<br>14　　　Gaza, there's the west bank, I mean, there --<br>15　　　and that's my understanding of what was going<br>16　　on.<br>17　Q.　And you consider Gaza to be separate, you<br>18　　　knew that it was separate from the West<br>19　　　Bank --<br><br>21　BY MS. COYOCA:<br>22　Q.　-- at the time in July 2014 when this claim<br>23　　　first surfaced; is that right?<br><br>Page 109<br>2　　　　　THE WITNESS: Yes. I mean, the<br>3　　　West Bank is up in this part of Israel,<br>4　　　(indicating), and the Gaza Strip is down --<br>5　　　down in the lower part, (indicating), so...<br>6　　　　　MS. COYOCA: Okay. And let the<br>7　　　record reflect that the witness was using her<br>8　　　hands to distinguish that there were two<br>9　　　different areas where the two land groups<br>10　　　were located.<br>11　BY MS. COYOCA:<br>12　Q.　Is that right?<br>13　A.　That's correct.<br>14　Q.　Okay. Now, as to the -- as to your<br>15　　　understanding of the reason why this<br>16　　　particular July 2014 conflict came into<br>17　　　existence, what was your understanding as to<br>18　　　that?<br>19　A.　At this time? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 20  Q.   Uh-huh.<br>21  A.   At this time I -- I had just -- Pamela had<br>22     just let me know, so I -- I needed to talk to<br>23     her. I didn't have any particular<br>24     understanding at that time.<br>25  Q.   Got it. You responded the next day on<br><br>Page 110<br>1     July 17; is that correct?<br>2  A.   Yes.<br>3  Q.   Between your written response, the e-mail<br>4     response on July 17, and the time Ms. Johnson<br>5     sent the e-mail on July 16, did you have any<br>6     communications with her about the Dig<br>     claim?<br>7  A.   My guess is that we did.<br>8  Q.   Your guess. Do you specifically recall<br>9     having communications with her about it?<br>10  A.   I know that we talked about it.<br>11  Q.   So it's your belief that prior to the time<br>12     that you sent the July 17 e-mail, you had a<br>13     conversation with Ms. Johnson about the Dig<br>14     claim; is that correct?<br>15  A.   I -- I would -- yes, that would be my belief<br>16     based on -- based on the type of claim that<br>17     she's talking about, yes.<br>18  Q.   Okay. And do you recall specifically having<br>19     the conversation?<br>20  A.   I -- I can't recall specifically, no.<br>21  Q.   But it's your best estimate that, because of<br>22     the nature of the claim, you think it's<br>23     likely that you did have such a conversation?<br>24  A.   Yes.<br>25  Q.   Do you recall meeting with her or did you<br><br>Page 111<br>1     have a conversation by telephone, if you<br>2     recall?<br>3  A.   Again, I don't recall. Most likely, it was a | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 4     telephone call. | |
| 5  Q.  And what did Ms. Johnson tell you about the | |
| 6     claim during that call? | |
| 7  A.  Again, we would have discussed kind of | |
| 8     the -- the facts surrounding the initial -- | |
| 9     when the initial notice came in. We would | |
| 10    have talked about what she understood today. | |
| 11    We would have talked about anything that -- | |
| 12    any additional information that she had | |
| 13    gathered since the initial notice, things | |
| 14    like that, that would have been typical. | |
| 15  Q.  Okay. What do you recall specifically as to | |
| 16    the facts surrounding the claim when the | |
| 17    initial notice came in that she told you? | |
| 18  A.  I mean, the initial notice, I think the -- | |
| 19    was whether or not NBC was deciding whether | |
| 20    or not they were going to continue filming in | |
| 21    Israel. | |
| 22  Q.  Anything else? | |
| 23  A.  Well, they were -- the decision -- or they | |
| 24    were -- they were considering whether or not | |
| 25    to continue filming based on what was going | |
| | |
| Page 112 | |
| 1     on between Hamas and Israel. | |
| 2  Q.  Did she tell you specifically any facts about | |
| 3    what was going on in -- in Israel at the | |
| 4    time? | |
| 5  A.  I'm sure that she did. | |
| 6  Q.  Do you recall any of the specifics as to what | |
| 7    she told you? | |
| 8  A.  I mean, I'm sure that she -- that she would | |
| 9    have mentioned just the rocket fire, she | |
| 10    would have mentioned just the -- you know, | |
| 11    the ground troops, the bombings, you know, | |
| 12    the -- what was going on that made, you know, | |
| 13    the area unsafe, what Israel was doing, what | |
| 14    Hamas was doing. | |

| Deposition Designation | Objection & Response |
|---|---|
| 15  Q.  So during this initial phone conference or<br>16  conversation, you believe that Ms. --<br>17  Ms. Johnson talked about ground troops?<br>18  A.  I said that we probably would have talked<br>19  about what was going on. So, again, I don't<br>20  have the express recollection of exactly what<br>21  she told me two years ago, but...<br>22  Q.  Okay. Did this conversation, to the best of<br>23  your recollection, did it take place on<br>24  the -- on the 16th when you first received<br>25  the e-mail at about 1:44 p.m.?<br><br>Page 113<br>1  A.  My guess is it either would have taken place<br>2  that evening or early the next morning.<br>3  Q.  And, again, focusing specifically on<br>4  ground -- the question of ground troops, do<br>5  you have a specific recollection that<br>6  Ms. Johnson spoke to you about ground<br>troops<br>7  at the time that you had that first telephone<br>8  call?<br>9  A.  Not on the first -- I mean, I'm just -- no,<br>10  specifically, I can't remember exactly what.<br>11  Q.  What did she tell you -- I understand it may<br>12  not have been on the first conversation, but<br>13  what did she tell you about ground troops?<br>14  A.  Again, I mean, when we would have had our<br>15  conversations over the course of the claim,<br>16  she would have told me everything that she<br>17  had gained, all the information she gathered<br>18  based on her investigation.<br>19  Q.  Right. I'm focusing, though, specifically on<br>20  ground troops. What did Ms. Johnson tell<br>21  you, if anything, about ground troops?<br>22  A.  I would -- that -- that Israel is putting<br>23  together ground troops and calling, you know,<br>24  together their military arm.<br>25  Q.  And when's the first time that you can | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 114 | |

Page 114

1   recollect that Ms. Johnson spoke with you
2   about ground troops?
3   A.   Again, it would have been sometime during the
4         course of our conversations.
5   Q.   But you don't know whether or not it was at
6         this very initial stage when you first
7         received notice about the claim on July 16 or
8         at some later point --
9   A.   I don't.
10   Q.   -- is that right?
11   A.   That's correct.
12   Q.   Okay. You also said that you discussed --
13         well, I don't want to mischaracterize it.
14         You used the words rocket fire, and I was
15         asking you about that initial phone
16         conference. Do you recall specifically
17         during the initial phone conference having a
18         discussion about rocket fire?
19   A.   I know we had a discussion about it, I don't
20         know whether it was the initial call or not.
21   Q.   Okay. And do you recall did Ms. -- did
22         Ms. Johnson tell you that rockets were being
23         launched by Hamas into Israel?
24   A.   I knew that. I don't -- you know, I don't
25         know whether she told me or not, but I would

Page 115

1   guess she did, because, again, it would have
2   been part of her overall investigation.
3   Q.   Okay. And you believe that's something you
4         knew just from news sources generally?
5   A.   I'm sure, yes.
6   Q.   Okay. Now, with respect to the concept of
7         Israel firing rockets into Gaza, where did
8         you learn that information?
9   A.   I either learned it from Pamela, probably
10         both Pamela and just news, watching news.
11   Q.   Okay. What do you recall about Pamela

| Deposition Designation | Objection & Response |
|---|---|
| 12      telling you with respect to rockets being<br>13      fired from Israel into Gaza?<br>14   A.   I think she probably just -- again, it would<br>15      have been -- it would have been during the<br>16      course of the investigation. It would have<br>17      been her telling me what's going on and the<br>18      rockets firing, simply that they are firing,<br>19      I mean, that Israel is firing and that Hamas<br>20      is firing rockets as well, and this is just<br>21      one of many things that's going on between<br>22      Hamas and Israel.<br>23   Q.   What else did Ms. Johnson tell you about the<br>24      things that were going on between Hamas and<br>25      Israel? | |

**95**

| Deposition Designation | Objection & Response |
|---|---|
| Page 116 | |
| 1　A.　Well, I think she looked at all the resources<br>2　　　that she could that were available and just<br>3　　　we wanted to get an understanding of what was<br>4　　　going on in Israel in terms of, A, the -- you<br>5　　　know, the fighting between Hamas and Israel,<br>6　　　so what did that entail, did -- you know,<br>7　　　did -- it entailed launching rockets back and<br>8　　　forth, it entailed ground troops, it entailed<br>9　　　airplanes fire, things like that. Again,<br>10　　everything that she did in her investigation.<br>11　Q.　Right. But I'm focusing specifically on what<br>12　　Ms. Johnson told you about as opposed to what<br>13　　you believe Ms. Johnson did in terms of her<br>14　　investigation.<br>15　　　　So can you recall specifically what<br>16　　she told you about the Hamas/Israeli conflict<br>17　　during that first phone conversation or at<br>18　　any point when you were handling the claim?<br>19　A.　Again, I -- I can't recall the specific<br>20　　conversations, I just know she would have<br>21　　told me everything that was going on in --<br>22　　between Hamas and Israel.<br>23　Q.　And -- and do you recall, as you sit here<br>24　　today, any of the specific things that she<br>25　　told you that were going on?<br><br>Page 117<br>1　A.　Again, like I said, she would have mentioned<br>2　　all the different things that were going on<br>3　　in terms of military weapons, you know,<br>4　　tanks, ground troops, airplanes, missiles,<br>5　　things of that nature.<br>6　Q.　Anything else aside from military weapons,<br>7　　tanks, ground troops, airplanes, missiles,<br>8　　things of that nature, anything else?<br>9　A.　We would have talked about the policy, of<br>10　　course. We would have talked about anything | |

| Deposition Designation | Objection & Response |
|---|---|
| 11    that she had further gleaned -- further<br>12    understood from NBC. We would have again<br>13    talked about what -- again, the conclusion,<br>14    what -- what she had found, what research she<br>15    had done, what she had looked at.<br>16  Q.  I'm focusing specifically about the things<br>17    that she told you that were going on between<br>18    Hamas and Israel, not anything to do with the<br>19    policy or anything like that, but just the<br>20    things that were going on between Hamas and<br>21    Israel.<br>22  A.  Right. And, I apologize, but I think I<br>23    answered that already.<br>24  Q.  Okay. And I -- I'm just trying to probe your<br>25    recollection to get the best understanding<br><br>Page 118<br>1    that there wasn't anything that -- that you<br>2    have not yet testified to. So it's just the<br>3    list that you provided?<br>4  A.  That's what I -- that's what I can think of<br>5    right now.<br>6  Q.  Okay. Now, you indicated that you believe<br>7    that she told you about all the resources<br>8    that she had looked at; is that correct?<br>9  A.  That's correct.<br>10  Q.  What resources did she tell you she had<br>11    looked at?<br>12  A.  My understanding is that she looked at news<br>13    clippings, news articles, resources available<br>14    online and -- and -- yeah, those were things<br>15    that she looked at.<br>16  Q.  News clippings, articles and online articles;<br>17    is that right?<br>18  A.  Online broadcasts as well, broadcasts, and<br>19    then I think she tried also to get<br>20    multitude -- kind of multiple different<br>21    sources as well.<br>22  Q.  What are the other multiple different<br>23    resources? | |

| Deposition Designation | Objection & Response |
|---|---|
| 24  A.  Well, I think we wanted to look at what, you<br>25       know, CBS, NBC, CNN, to the extent, you<br>          know,<br><br>Page 119<br>1       the BBC, things like that.<br>2   Q.  So just so I understand, Ms. Johnson told you<br>3       that she was looking at, she, Ms. Johnson,<br>4       was looking at these various news sources,<br>5       CBS, NBC, CNN, to see what they were<br>        saying<br>6       about the conflict?<br>7   A.  She said she was doing -- yeah, doing<br>8       significant research, yes.<br>9   Q.  Did she tell you that she was doing the<br>10      research or that Danny Gutterman was doing<br>11      the research?<br>12  A.  I don't think she distinguished for me, no.<br>13  Q.  Did Ms. Johnson provide you with copies of<br>14      any of the news clippings or articles that<br>15      she had indicated she was looking at<br>16      reviewing?<br>17  A.  I don't recall.<br><br>Page 120<br>9   Q.  Did Ms. Johnson send to you links to any of<br>10      the online broadcasts that she was looking<br>11      at?<br>12  A.  She may have.<br>13  Q.  Do you recall seeing any of them?<br>14  A.  I recall seeing some online broadcasts, but I<br>15      don't recall whether or not she sent me the<br>16      links.<br>17  Q.  And what news source were the online<br>18      broadcasts from?<br>19  A.  I -- I don't remember.<br>20  Q.  Did Ms. Johnson ever tell you that she was<br>21      looking at how the U.S. government was<br>22      characterizing the conflict? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 121</u><br>1       THE WITNESS: I don't recall<br>2     having a conversation about that, no.<br><br>4  Q.  Did you ever ask Ms. Johnson, Let's look at<br>5     how the U.S. government is treating the<br>6     conflict?<br>7  A.  No, I don't think I did.<br>8  Q.  Did Ms. Johnson ever tell you that she had<br>9     looked at any U.S. government websites, such<br>10    as the Secretary of State or White House<br>11    press briefings or anything of that nature in<br>12    terms of how the U.S. government looked at<br>13    Hamas?<br>14  A.  I don't -- I don't -- I don't remember that.<br>15    I don't recall, no.<br>16  Q.  Did you ever direct Ms. Johnson to go and<br>17    investigate how the U.S. government viewed<br>18    Hamas?<br>19  A.  No.<br>20  Q.  In the e-mail that Ms. Johnson sent to you on<br>21    Wednesday, July 16, she indicates, begin<br>22    quotes, "I want to make sure that OBE takes a<br>23    position that is consistent with the rest of<br>24    OneBeacon in interpreting the exclusion for<br>25    warlike actions by a military force," close<br><br><u>Page 122</u><br>1     quotes. Do you see that?<br>2  A.  Yes.<br>3  Q.  What did you understand her to be saying to<br>4    you there?<br>5  A.  She just wants to make sure that one -- if<br>6    OneBeacon has ever taken a position with<br>7    respect to warlike action, that we know about<br>8    it and we're consistent with that position.<br>9  Q.  And did you ever make a determination as to<br>10   how OneBeacon had previously treated | |

| Deposition Designation | Objection & Response |
|---|---|
| warlike | |

11      actions by a military force?

15           THE WITNESS: What -- what we --
16      or what I would have done on this end is just
17      to check with the groups that I work with and
18      then the managers of the other groups to see
19      if they've ever had -- if they've ever had
20      occasion to deal with a war exclusion or
21      taking a position on it with respect to a
22      claim.
23   BY MS. COYOCA:
24   Q.   And did you do that?
25   A.   I did.

Page 123
1    Q.   Who did you talk to?
2    A.   My guess is I talked to the -- the different
3         managers, so I probably talked to Judy Lamble
4         and maybe Jeffrey Comisso, and then
5         probably -- and then probably the claim
6         managers also that I -- that I managed.
7    Q.   Do you know how to spell Commisso?
8    A.   I think it's C-O-M-I-S-S-O. It might be two
9         M's, but...
10   Q.   Okay. And what about Judy Lamble?
11   A.   It's L-A-M-B-L-E.
12   Q.   Now, you indicated that your guess is that
13        you talked to the different managers. Do you
14        actually specifically recall talking to
15        different managers about their experience in
16        handling war exclusion -- the war exclusion
17        in the context of other claims?
18   A.   I don't have a specific recollection, but I
19        know that I would have followed up on -- on
20        this issue.
21   Q.   So you believe that you did?
22   A.   Absolutely.
23   Q.   Did you do any review of any files or

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 24    documents in order to determine whether or<br>25    not OneBeacon had previously addressed a<br><br>Page 124<br>1    claim that potentially implicated the war<br>2    exclusion?<br>3  A.  No.<br>4  Q.  Other than speaking with the other claim<br>5    managers, is there any other specific action<br>6    that you took?<br>7  A.  No, that would have been the extent of it.<br><br>Page 125<br>1  Q.  Ms. Gooley, before we took a break for lunch<br>2    we were talking about the conversation, the<br>3    very first conversation that you had with<br>4    Ms. Johnson concerning the claim. And I<br>5    believe you indicated that that conversation<br>6    occurred after you received the e-mail chain<br>7    that's set forth in Exhibit 31; is that<br>8    right?<br><br>11  BY MS. COYOCA:<br>12  Q.  Is that correct?<br>13  A.  My recollection is that I spoke with her<br>14    after the e-mail, yes.<br>15  Q.  Okay. During that conversation, did you<br>16    discuss the potential applicability of the<br>17    war exclusion to the Dig claim?<br>18  A.  Can I refer to the e-mail --<br>19  Q.  Absolutely.<br>20  A.  -- quickly, please? I'm sure that we did<br>21    given the nature of the e-mail.<br>22  Q.  Because of the fact that Ms. Johnson<br>23    referenced the potential applicability of the<br>24    war exclusion; is that correct?<br>25  A.  Because -- because she said, "I want to make<br><br>Page 126 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1  sure OBE takes the position consistent with<br>2  the rest of OneBeacon in interpreting the<br>3  exclusion of warlike actions by a military<br>4  force," so, yes.<br>5  Q.  Okay. So do you recall actually discussing<br>6  it with Ms. Johnson during that first<br>7  conversation?<br>8  A.  I don't have a specific recollection.<br>9  Q.  Do you generally recall that you discussed<br>10  the war exclusions with Ms. Johnson in the<br>11  context of the Dig claim?<br>12  A.  Yes.<br>13  Q.  Generally, what do you recall?<br>14  A.  I think we would have discussed what she --<br>15  you know, what research she had done, what -<br>-<br>16  you know, what she -- what she had received<br>17  from NBC, we would have looked at the policy,<br>18  and given those facts we would have, you<br>19  know, discussed whether or not we thought<br>20  there was coverage based on the -- the war,<br>21  warlike exclusions in the policy.<br>22  Q.  Do you believe any of those discussions in<br>23  the context of what research had been done,<br>24  what she had received from NBC, her look at<br>25  the policy, had any of that occurred at the<br><br>Page 127<br>1  time you initially spoke to her on the 16th<br>2  or 17th?<br>3  A.  We probably would have had initial<br>4  conversations. I don't know how far along<br>5  she would have -- I mean, she -- how much<br>6  information she would have put together by<br>7  that point.<br>8  Q.  What, if anything, do you recall in terms of<br>9  the specifics as to what Ms. Johnson had for<br>10  you with respect to the claim the first time<br>11  you talked? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 12  A.  Again, I -- I can't recall the express<br>13       conversation. All I can remember is over the<br>14       course of the -- you know, over the course of<br>15       the life of the claim what we would have --<br>16       what we talked about.<br>17  Q.  Were you at all surprised by Ms. Johnson's<br>18       invocation of the potential applicability of<br>19       the war exclusion coming so shortly after the<br>20       claim having been tendered?<br>21  A.  I don't know that I would say I was<br>22       necessarily surprised. I think that -- I<br>23       think that you always look at the coverages,<br>24       and given the nature of -- you know, given<br>25       the nature of what was going on at that time,<br><br>Page 128<br>1        that necessarily would have been an issue<br>2        that we would have considered.<br>3   Q.  After you received -- or did you eventually<br>4        look at the policy in the context of this<br>5        claim?<br>6   A.  Yes.<br>7   Q.  Okay. And the policy has previously been<br>8        marked as Exhibit 1 at the Peter Williams<br>9        deposition. Can you take a look at the<br>10       policy?<br>11  A.  You want me to look at the entire policy?<br>12  Q.  No, I just want to -- want you to assure<br>13       yourself that this is indeed the policy that<br>14       you reviewed in the context of the Dig claim.<br>15  A.  (Reviews document.) Yes, this would have<br>16       been the policy.<br>17  Q.  Okay. It's for the policy period from<br>18       January 1, 2014, through June 30, 2015?<br>19  A.  Correct.<br>20  Q.  Okay. I want to direct your attention to<br>21       page ATL003083. When you -- when you<br>22       indicate that you discussed the war exclusion<br>23       or the war exclusions with Ms. Johnson, are<br>24       you referring to the exclusions that are set | |

| Deposition Designation | Objection & Response |
|---|---|
| 25     forth in section 3, exclusions applicable to | |

Page 129

| | | |
|---|---|---|
| 1 | | all sections of this policy? |
| 2 | A. | That -- that would be my recollection, but I |
| 3 | | would like to just look through the policy |
| 4 | | quickly. (Reviews document.) |
| 5 | |     Yes, that's -- I think that's |
| 6 | | correct. |
| 7 | Q. | All right. I want to -- I want to talk about |
| 8 | | section 3-1 on page 3083, "War, Including |
| 9 | | Undeclared or Civil War." Do you see that |
| 10 | | exclusion? |
| 11 | A. | Yes. Yes, I do. |
| 12 | Q. | Did you have conversations with Ms. Johnson |
| 13 | | about the potential applicability of |
| 14 | | exclusion 3 -- section 3.1? |
| 15 | A. | Yes. |
| 16 | Q. | What were your discussions? |
| 17 | A. | Again, to the best of my recollection, our |
| 18 | | discussions would have been based on what |
| 19 | | information she had, what was going on |
| 20 | | between Hamas and Israel and all the -- you |
| 21 | | know, all the facts surrounding the -- what |
| 22 | | was -- in July and early June -- or mid June, |
| 23 | | and whether or not we believed that amounted |
| 24 | | to war, including undeclared or civil war. |
| 25 | | So we would have talked about exclusion 1 |
| | | and |

Page 130

| | | |
|---|---|---|
| 1 | | along with the exclusion 2, 3 and 4 as well. |
| 2 | | Not 4, not the atomic fission, so... |
| 3 | Q. | So as to exclusion 4, you did not discuss it |
| 4 | | and you did not -- is that correct? |
| 5 | A. | I think we -- I mean, we would have looked at |
| 6 | | it, "Any weapon of war including atomic |
| 7 | | fission" -- or excuse me, we did. I was |
| 8 | | looking at the, "Atomic fission or |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 9      radioactive force," so I apologize, I<br>10     misspoke.<br>11  Q.  I want to -- I want to go through this a<br>12     little more slowly.<br>13          With respect to exclusion 1, "War,<br>14     Including Undeclared or Civil War," you<br>15     reviewed that exclusion with Ms. Johnson; is<br>16     that correct?<br>17  A.  That's correct.<br>18  Q.  And did you -- you conclude personally that<br>19     exclusion 1 applied to the Dig claim?<br>20  A.  Yes, I believe it does.<br>21  Q.  And did you make the decision that the claim<br>22     should be denied on the basis of exclusion 1?<br>23  A.  We made the decision that the claim should be<br>24     denied based on the exclusions, that was one<br>25     of them.<br><br>Page 131<br>1   Q.  Okay. When you say, "We," who is we?<br>2   A.  Pamela and I.<br>3   Q.  Anyone else?<br>4   A.  Ultimately, Sean signed off on it as well.<br>5   Q.  And by Sean do you mean Sean Duffy?<br>6   A.  Yes. Excuse me. Yes.<br>7   Q.  And did you involve Mr. Duffy in the review<br>8      of the claim?<br>9   A.  No.<br>10  Q.  Were you the one who brought it to his<br>11     attention?<br>12  A.  Yes.<br>13  Q.  When you say that he was also involved in the<br>14     decision, what was his involvement?<br>15  A.  I -- I simply flagged it for him and he had<br>16     an opportunity to agree or disagree.<br>17  Q.  Now, in terms of deciding whether or not<br>18     exclusion 1 -- I'm just going to call them 1,<br>19     2, 3, 4 as they're set forth on page 3083.<br>20     In terms of exclusion 1 and making the<br>21     decision that it applied, did you look at | |

| Deposition Designation | Objection & Response |
|---|---|

22     whether or not Hamas was a sovereign entity?
23  A.  Pamela looked at -- at Hamas and what -- how
24     Hamas was considered, in what -- in terms of,
25     you know, it being part of the government,

Page 132
1     governing the Gaza Strip, the activities it
2     was involved in, including, you know,
3     providing social services, having its own
4     military, political office, things of that
5     nature.
6  Q.  But my question to you is, specifically, did
7     you come to a conclusion that Hamas was a
8     sovereign entity?
9  A.  Hamas governs Gaza.
10  Q.  Okay. But I'm asking you for the -- the
11     label, if you -- if you put one on it, did
12     you conclude that Hamas was a sovereign
13     entity?
14  A.  We didn't put a sovereign label on it.
15  Q.  Did you conclude that it was a
16     quasi-sovereign entity?
17  A.  We concluded that it was an entity that
18     governed Gaza.
19  Q.  Was it your understanding that Hamas needed
20     to govern Gaza in order for the war exclusion
21     to apply?
22  A.  No.

Page 133
1  Q.  Why was that not necessary, in your view?
2  A.  Well, because I think when you think about
3     war, war is between -- I mean, the war is
4     between entities, it doesn't have to be
5     between Greece and France, it can be -- like
6     in this case, we had Gaza -- we had the
7     Gaza Strip and we had the action going on
8     between Hamas and Israel.
9  Q.  But in your view, is it sufficient to invoke

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 10     the war exclusion if there is a course of<br>11    hostilities between a sovereign government<br>12    and some other entity that has some<br>13    authority?<br>14  A.  It depends on the facts.<br>15  Q.  Okay. What is it about Hamas that, in your<br>16    view, made it sufficient to conclude that it<br>17    had sufficient control or governmental<br>18    authority that it was appropriate to invoke<br>19    the war exclusion?<br><br>23       THE WITNESS: Again, I mentioned<br>24    Hamas having its own, you know, holding<br>25    political office, having different branches<br><br>Page 134<br>1     that are consistent with the government, but<br>2     then you couple that with what was going on,<br>3     that invokes the war exclusion, the missiles<br>4     being exchanged between Israel and Hamas, the<br>5     ground fighting, you know, the war planes,<br>6     all those things, that is war.<br>7  BY MS. COYOCA:<br>8  Q.  Do you believe that in order for a course of<br>9    hostilities to be characterized as war, that<br>10    it is necessary for both entities to be a<br>11    sovereign government?<br><br>14       THE WITNESS: I don't believe it<br>15    is necessary.<br><br>17  Q.  Do you believe that it is necessary in order<br>18    for the war exclusion, prong 1, to be<br>19    invoked, that it is necessary for the<br>20    activities, the hostile activities between<br>21    the two forces, that they occur between a<br>22    sovereign and a quasi-sovereign government?<br><br>25       THE WITNESS: Again, it could be a | |

| Deposition Designation | Objection & Response |
|---|---|
| **Page 135**<br>1    quasi -- a sovereign or a quasi-sovereign.<br>2    But it's -- again, we're talking about war,<br>3    what the actions are between the two parties.<br>4        MS. COYOCA: Right. I'm asking<br>5    you, though, a different question.<br>6  BY MS. COYOCA:<br>7  Q.  What I'm asking you is, in your view, in<br>8    order to find that this exclusion, the term<br>9    war has been met, is it necessary that those<br>10   hostilities that you referenced, do they have<br>11   to occur between a sovereign government and<br>12   another sovereign government or a sovereign<br>13   government and a quasi-sovereign<br>     government?<br>14 A.  No.<br><br>20 BY MS. COYOCA:<br>21 Q.  Now, you indicated that part of your<br>22   conclusion that it was appropriate to invoke<br>23   the war exclusions was the type and nature of<br>24   the hostilities that were occurring, the<br>25   missiles, the war planes, the ground troops;<br><br>**Page 136**<br>1    is that correct?<br>2  A.  That's correct --<br><br>5        THE WITNESS: -- that is a<br>6    consideration.<br><br>10 Q.  Where did you learn the information or how<br>11   did you learn the information that war planes<br>12   were involved?<br>13 A.  From Pamela.<br>14 Q.  How did you learn that missiles were<br>15   involved?<br>16 A.  That would probably be from Pamela and also | |

| Deposition Designation | Objection & Response |
|---|---|
| 17    just from the news.<br>18  Q.  Any other source aside from Pamela?<br>19  A.  Pamela or the news.<br>20  Q.  In -- in approving the decision to deny the<br>21    war exclusion or not raising an objection to<br>22    it being invoked, were you relying on your<br>23    personal viewing of news reports?<br>24  A.  I relied on Pamela's research and also my<br>25    understanding and my own personal viewing of<br><br>Page 137<br>1    different news.<br>2  Q.  And what news reports did you review?<br>3  A.  I mean, every -- A, I watch the general local<br>4    news. I specifically remember watching the<br>5    NBC clip on what was going on in -- in Israel<br>6    and how it referred to it as war. And then,<br>7    you know, discussions with Pamela, of course.<br>8  Q.  Did you ask Ms. Johnson where she had<br>9    obtained the information from as to the<br>10    activities that you're characterizing as war?<br>11  A.  I -- I may or -- I don't know whether I asked<br>12    her, simply because I knew she got them on<br>13    the Internet or watched them, you know, over<br>14    the local television show.<br>15  Q.  But did you ever form an understanding as to<br>16    specifically what resources she had consulted<br>17    in order to investigate whether or not a war<br>18    was taking place?<br>19  A.  Yes, I'm sure in the course of our<br>20    discussions she detailed what she looked at<br>21    and how she reached her conclusions.<br>22  Q.  Did she memorialize any of that in writing to<br>23    you?<br>24  A.  No, we would have had an oral discussion.<br>25    Ultimately, you know, what we put in writing<br><br>Page 138 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1     was the coverage letter that was sent to NBC. | |
| 2   Q.   And with respect to her explaining to you | |
| 3      what resources she had consulted, aside from | |
| 4      news -- local news reports and Internet | |
| 5      searches, did she describe anything else? | |
| 8      THE WITNESS: She looked at more | |
| 9      than just local news reports. She looked at | |
| 10     news reports both locally, nationally and | |
| 11     internationally. I know she looked at -- you | |
| 12     know, she looked at -- just did different | |
| 13     research on -- on how -- what was going on on | |
| 14     the Internet. She also -- I'm trying to -- | |
| 15     pulled news clips, actual footage too and | |
| 16     looked at that as well. | |
| 17 BY MS. COYOCA: | |
| 18   Q.   So in terms of the news reports locally, | |
| 19      nationally and internationally, what news | |
| 20      reports did she -- what -- what sources of | |
| 21      news reports did she consult? | |
| 22   A.   To the best of my recollection, she'd be able | |
| 23      to tell you more appropriately, but I know, | |
| 24      like I mentioned, that the NBC clips. I know | |
| 25      that she looked at international. I would | |
| Page 139 | |
| 1     guess BBC, that would be -- and then, you | |
| 2     know, the -- the -- the national CNN, things | |
| 3     of that -- news reports relating to that. | |
| 4   Q.   And did she report to you that in all | |
| 5      instances, all of these news reports had | |
| 6      indicated that a war was occurring? | |
| 7   A.   I think, yeah, she concluded, based on | |
| 8      everything, that she had seen in terms of the | |
| 9      reports that there was a war. | |
| 10   Q.   I'm asking you a different question. My | |
| 11      question is -- I understand that there would | |
| 12      have been a discussion about the activities | |
| 13      that were occurring in Israel and Gaza. | |
| 14      But what I'm asking is: Did she | |

**110**

| Deposition Designation | Objection & Response |
|---|---|
| 15    report back to you that all these news<br>16    sources were referring to the activities in<br>17    Israel as being a war?<br>18  A.  To the best of my recollection, she did not<br>19    report anything to me that indicated it<br>20    wasn't a war.<br>21  Q.  Okay. My question is --<br>22  A.  I think I answered it, because it's --<br>23    there's --<br>24  Q.  Right, no, I don't think you did, okay?<br>25  A.  But I do -- I did.<br><br>Page 140<br>4    BY MS. COYOCA:<br>5  Q.  Here's the question --<br><br>8    BY MS. COYOCA:<br>9  Q.  -- did Ms. Johnson tell you that the news<br>10    sources that she was consulting were<br>11    reporting the circumstances in Israel as<br>12    being a war?<br>13  A.  She said all of the -- the news that reported<br>14    indicated it was a war.<br>15  Q.  And that all of the news sources that were<br>16    reporting on the circumstances actually used<br>17    the word -- word war, that's what Ms. Johnson<br>18    told you?<br><br>21    THE WITNESS: The testimony -- or<br>22    what you're asking me is two-and-a-half years<br>23    ago. I don't know if she said specifically<br>24    no, none of them, they said war in every one.<br>25    What I'm saying is based on everything that<br><br>Page 141<br>1    she saw, including our conversations, it<br>2    indicated that there was a war going on.<br><br>Page 142 | |

| Deposition Designation | Objection & Response |
|---|---|
| 3   Q.   In Ms. Johnson's investigation of the facts<br>4         and circumstances concerning the claim, did<br>5         she investigate whether or not Hamas was a<br>6         terrorist organization?<br><br>9         THE WITNESS: She -- she did look<br>10       at Hamas, yes.<br><br>12  Q.   But did she look to see whether or not Hamas<br>13       had been designated as a terrorist<br>14       organization by the U.S. government?<br>15  A.   I don't --<br><br>18       THE WITNESS: I don't believe she<br>19       looked at whether the U.S. government<br>20       designated Hamas as a terrorist organization.<br>21  BY MS. COYOCA:<br>22  Q.   Did you ask Ms. Johnson to consider whether<br>23       or not Hamas was a terrorist organization in<br>24       the context of reviewing the claim?<br>25  A.   No.<br><br>Page 143<br>1   Q.   To your knowledge, is there any terrorism<br>2         exclusion in this policy?<br>3   A.   I don't believe there is a terrorism<br>4         exclusion.<br>5   Q.   Did you ever ask Ms. Johnson to research and<br>6         look at the issue of whether the activities<br>7         could be characterized as being terrorist<br>8         activities as opposed to a war?<br>9   A.   No.<br>10  Q.   Did you direct anyone at OneBeacon that was<br>11       involved in the management of the claim or<br>12       the handling of the claim, to investigate<br>13       whether or not these acts in Israel<br>14       constituted terrorist acts as opposed to a<br>15       war?<br>16  A.   No.<br>17  Q.   Did you ask Ms. Johnson to look at the status | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 18    of Hamas as designated by Israel?<br>19  A.  No, I did not.<br>20  Q.  Did you ask Ms. Johnson to look at the<br>21    United Nations designation of Hamas, its<br>22    status?<br>23  A.  I didn't ask her to look at it, but she may<br>24    have looked at it.<br>25  Q.  Do you recall relying on her investigation as | |
| **Page 144**<br>1    to UN's determination as to Hamas's status as<br>2    being part of the decision?<br><br>6      THE WITNESS: Yeah, I don't recall<br>7    a conversation about what the United Nations'<br>8    designation of Hamas was.<br>9  BY MS. COYOCA:<br>10  Q.  I understand you don't recall it<br>11    specifically, but did Ms. Johnson tell you<br>12    that she had looked at the UN designation?<br>13  A.  I said she hadn't told me that.<br>14  Q.  Did you ever ask her to do so?<br>15  A.  No.<br>16  Q.  Did OneBeacon consult with outside coverage<br>17    counsel in order to gain a coverage opinion<br>18    as to the Dig claim?<br>19  A.  One -- yeah, OneBeacon did ask coverage<br>20    counsel to look at the -- look at the issue.<br>21  Q.  Who made the decision to seek an outside<br>22    coverage counsel opinion?<br>23  A.  Ultimately, I would have approved it, but<br>24    Pamela and I would have talked about it.<br>25  Q.  Who selected the counsel to be retained for | **Defendant's Objections:**<br>Object (144:16-25)<br>Reference to legal opinion;<br>privilege, relevance,<br>prejudicial; FRE 401, 402 ,<br>503<br><br>**Plaintiffs' Response:**<br>Relevant to bad faith; mere<br>reference to legal opinion<br>not privileged. |
| **Page 145**<br>1    that purpose?<br>2  A.  I would have gone with Pamela's<br>3    recommendation.<br>4  Q.  When was the decision made to consult with | **Defendant's Objections:**<br>Object (145:1-25)<br>Reference to legal opinion;<br>privilege, relevance,<br>prejudicial; FRE 401, 402 , |

**113**

| Deposition Designation | Objection & Response |
|---|---|
| 5       outside coverage counsel?<br>6   A.   I -- it would have -- I don't remember the<br>7        exact date. It was sometime I think -- it<br>8        would have been sometime the following week<br>9        that -- that the notice came in.<br>10  Q.   Was the decision made to consult with outside<br>11       counsel, was that made after the<br>12       determination was made to deny the claim<br>13       based on the war exclusions?<br>14  A.   We -- by that time we had already determined<br>15       that based on everything we knew those -- the<br>16       exclusions would apply and exclude coverage,<br>17       yes.<br>18  Q.   Did OneBeacon consider the opinion that had<br>19       been obtained from outside counsel in<br>20       deciding to deny the claim?<br><br>23          THE WITNESS: Again, before we<br>24       retained outside counsel, we believed that it<br>25       was excluded based on the war exclusions. | 503<br><br>Plaintiffs' Response:<br>Relevant to bad faith; mere reference to legal opinion not privileged. |
| Page 146<br>1        After we received the opinion, of course we<br>2        looked at it and considered that as well.<br>3   BY MS. COYOCA:<br>4   Q.   Did you raise the prospect of getting an<br>5        outside coverage opinion or did someone else<br>6        at OneBeacon?<br><br>10          THE WITNESS: Pamela and I talked<br>11       about it. I was not the one that had the<br>12       idea initially.<br>13  BY MS. COYOCA:<br>14  Q.   Do you know who had the idea initially?<br>15  A.   No, I don't. I would assume it's Pamela.<br>16  Q.   Do you know if Peter Williams made the<br>17       suggestion to Pamela Johnson to seek an<br>18       outside coverage opinion?<br>19  A.   He may have. | Defendant's Objections:<br>Object (146:1-25)<br>Reference to legal opinion; privilege, relevance, prejudicial; FRE 401, 402 , 503<br><br>Plaintiffs' Response:<br>Relevant to bad faith; mere reference to legal opinion not privileged. |

**114**

| Deposition Designation | Objection & Response |
|---|---|
| 20  Q.  Were you on any phone calls where coverage<br>21       counsel, outside coverage counsel was also on<br>22       the call concerning the Dig claim?<br>23  A.  I -- I don't -- I don't remember.<br>24  Q.  Do you know how long it took from the time of<br>25       retention of outside counsel to the time an<br><br>Page 147<br>1       opinion was rendered, how many days had<br>2       elapsed?<br>3  A.  About three, I think.<br><br>8  Q.  Going to the second prong of the war<br>9       exclusions, number 2, the one that begins,<br>10      "Warlike action by a military force," do<br>11      you -- do you see that exclusion?<br>12  A.  Yes.<br>13  Q.  Did you have specific discussions with<br>14      Ms. Johnson about prong 2?<br>15  A.  I -- I'm sure that we did, yes.<br>16  Q.  What did you discuss?<br>17  A.  We would have discussed what the -- you know,<br>18      what the investigation, what we had found out<br>19      through our factual investigation and<br>20      whether, you know, the fact that what was<br>21      going on between Hamas and Israel and --<br>22      including the -- again, the -- you know, the<br>23      hostility, the ground crews, the missiles,<br>24      airplanes, things of that nature, whether<br>25      that constituted a warlike action by a<br><br>Page 148<br>1       military force.<br>2  Q.  In -- in reviewing, in your mind, the factual<br>3       investigation that occurred, do you<br>4       differentiate between the events that were --<br>5       that were part of the investigation for the | <br><br><br><br><br><br><br><br>Defendant's Objections:<br>Object (147:1-7)<br>Reference to legal opinion;<br>privilege, relevance,<br>prejudicial; FRE 401, 402 ,<br>503<br><br>Plaintiffs' Response:<br>Relevant to bad faith; mere<br>reference to legal opinion<br>not privileged. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 6    first prong of the exclusion versus events<br>7    that occurred to investigate the second prong<br>8    of the war claim -- excuse me, the war<br>9    exclusion?<br>10  A.  I think we looking at all the -- excuse me --<br>11    all the events and took all of the<br>12    information in totality and then look at the<br>13    application of the exclusions.<br>14  Q.  Okay. When you indicated previously that<br>15    Ms. Johnson looked at news reports, was she<br>16    looking at those news reports in order to<br>17    inform her decision about the potential<br>18    applicability of prong 2, as well as prong 1?<br><br>21       THE WITNESS: When Pamela was<br>22    looking at the news reports throughout the<br>23    time period in doing her research, she wanted<br>24    to get a better understanding of what the<br>25    claim was. And based on that information,<br><br>Page 149<br>1    then we looked at the policy and the<br>2    exclusions, which would include these<br>3    exclusions.<br>4  BY MS. COYOCA:<br>5  Q.  By, "These exclusions," which ones are you<br>6    referring to?<br>7  A.  I'm referring to exclusion 1 and 2, and<br>8    potentially exclusion 4.<br>9  Q.  When the decision was made to deny the claim,<br>10    what exclusions specifically were invoked?<br>11  A.  I'd have to see the -- the denial.<br>12  Q.  Did you discuss with Ms. Johnson -- I<br>13    understand you can't recall specifics of time<br>14    frame of discussions, but did you discuss<br>15    with Ms. Johnson at any time that OneBeacon<br>16    was considering the Dig claim, whether there<br>17    was a difference between prongs 1 and<br>18    prongs 2 of the war exclusions? | |

| Deposition Designation | Objection & Response |
|---|---|
| 19  A.  I'm sure that we did discuss it, because they<br>20      are different.<br>21  Q.  In your mind, what are the differences?<br>22  A.  Well --<br>23  Q.  Well, I'm sorry, before I ask you that,<br>24      you've indicated you're sure that you<br>25      discussed it. Do you specifically recall<br><br>Page 150<br>1      discussing the differences?<br>2  A.  We went through the exclusions, which I'm<br>3      sure that we did, we would have discussed the<br>4      differences between the exclusions.<br>5  Q.  But do you have a specific recollection, as<br>6      you sit here today, of having such a<br>7      discussion about the differences?<br>8  A.  I don't, but I know that we would have had<br>9      that discussion.<br>10  Q.  What were the differences that were<br>11      discussed?<br>12  A.  Well, I don't -- I mean, I can tell you what<br>13      I think we would have discussed.<br>14  Q.  If you can't recall the specifics then, if<br>15      you think you discussed it, then, yes, please<br>16      tell me what you think you discussed as to<br>17      those differences.<br>18  A.  When you look at the second prong, it's,<br>19      "Warlike action by military force, including<br>20      action in hindering or defending against<br>21      actual or suspected attacks by a government,<br>22      sovereign or other authority using military<br>23      personnel or other agents."<br>24          Warlike action by a military force.<br>25      What was going on in Israel between Hamas<br>        and<br><br>Page 151<br>1      Israel was warlike action. Hamas is a<br>2      military force, Israel has a military force. | |

**117**

| Deposition Designation | Objection & Response |
|---|---|
| 3      At a minimum, it's an other -- Hamas is an,<br>4      "Other authority using military personnel or<br>5      agents."<br>6  Q.  Did you discuss -- when you say you think you<br>7      discussed it, do you think that you discussed<br>8      the fact that exclusion 2 was broader than<br>9      exclusion 1, narrower, the exact same in<br>10     scope?<br>11  A.  It's -- it's a different -- it's not the --<br>12     it's not the exact same exclusion, it's<br>13     warlike action by a military force. That<br>14     would suggest to me that it has even broader<br>15     implication.<br>16  Q.  You indicated you did not discuss<br>17     exclusion 3; is that correct?<br><br>20       THE WITNESS: I imagine that we<br>21     discussed it. I think we -- and I'm -- just<br>22     let me read through it, whether or not they<br>23     believed it was applicable. (Reviews<br>24     document.)<br>25       I'm sure we talked about it and we<br><br>Page 152<br>1      came -- and it wouldn't have appeared to be<br>2      applicable to the NBC claim.<br>3  BY MS. COYOCA:<br>4  Q.  Do you recall if prong 3 was invoked as being<br>5     one of the grounds for denial of the claim?<br>6  A.  Again, I'd have to look at the -- at the<br>7     actual letter that we sent out.<br><br>24  Q.  Were you involved in any -- any telephone<br>25     conferences or any conversations with<br><br>Page 153<br>1      Peter Williams as to the Dig claim?<br>2  A.  I imagine I was. | |

| Deposition Designation | Objection & Response |
|---|---|
| 3   Q.   Do you recall any specifics? | |
| 4   A.   No. | |
| 5   Q.   Why do you imagine that you would have had | |
| 6         conversations with Peter Williams about the | |
| 7         claim? | |
| 8   A.   Because it's a big claim and NBC is a big | |
| 9         account and he would want to know the status | |
| 10        of it, because I know that NBC would contact | |
| 11        Peter directly, along with Pamela, and so we | |
| 12        would want to keep him abreast of -- of | |
| 13        everything. | |
| | |
| Page 157 | |
| 8   Q.   You indicated that you also looked at the | |
| 9         policy yourself when you were determining | |
| 10        whether the legal analysis was correct. Do | |
| 11        you recall that? | |
| 12  A.   I recall looking at the policy, yes. | |
| 13  Q.   Okay. What parts did you look at? | |
| 14  A.   To the best of my recollection, I would have | |
| 15        run through the whole policy. I would have | |
| 16        liked -- I would have looked at the -- I | |
| 17        would want to -- excuse me. I would have | |
| 18        looked at the endorsements, things of that | |
| 19        nature, and then I would have looked at the | |
| 20        particular provisions that we believe were | |
| 21        applicable in terms of what was triggered and | |
| 22        what were the potentially applicable | |
| 23        conditions or exclusions. | |
| 24  Q.   As you sit here today, can you identify any | |
| 25        specific portions of the policy that you | |
| | |
| Page 158 | |
| 1         believe you reviewed when you were | |
|           checking | |
| 2         the legal analysis, looking into the legal | |
| 3         analysis? | |
| 4   A.   Again, I would have looked at, you know, at | |
| 5         the policy, the dec page, the endorsements. | |

| Deposition Designation | Objection & Response |
|---|---|
| 6    I would have looked at the applicable<br>7    coverages, the extra expense and the<br>8    applicable conditions, limitations and<br>9    exclusions. But I can't recall expressly did<br>10   I look at, you know, page 1 of 5 on gas<br>11   coverage, so...<br>12  Q.  Did you review the policy in order to<br>13     determine whether or not there was any<br>14     terrorism coverage under the policy?<br>15  A.  I reviewed the policy to try to understand<br>16     what coverage was provided.<br>17  Q.  I'm asking specifically did you review it for<br>18     purposes of trying to determine if there was<br>19     terrorism coverage under the policy?<br>20  A.  No.<br><br>Page 163<br>17      MS. COYOCA: I believe we are on<br>18    Exhibit 32. And this is an e-mail exchange<br>19    dated July 18, 2014, labeled Bates control<br>20    ATL001800 through 1801.<br>21      (Whereupon, Exhibit 32 was<br>22      marked for identification.)<br>23 BY MS. COYOCA:<br>24  Q.  Do you recall sending this e-mail to<br>25     Mr. Duffy?<br><br>Page 164<br>1  A.  I don't recall specifically sending it, but I<br>2     did send it, so...<br>3  Q.  You don't have any reason to believe you did<br>4     not send it; is that right?<br>5  A.  That's correct.<br>6  Q.  Why were you flagging this claim for<br>7     Mr. Duffy in the context of this particular<br>8     e-mail?<br>9  A.  Because I think, again, I just wanted to let<br>10    Sean know about a rather significant claim in<br>11    the event, A, that he was called by NBC or by | |

**120**

| Deposition Designation | Objection & Response |
|---|---|
| 12　　　Aon, but also that he was aware of it as the<br>13　　　chief claims officer.<br>14　Q.　Did you ever discuss the claim, after you<br>15　　　sent this e-mail, with just Mr. Duffy?<br>16　A.　I may have. I don't recall.<br>17　Q.　Would it have been your practice to go and<br>18　　　discuss a claim that was for a larger client<br>19　　　before the claim decision was actually made?<br>20　A.　It depends on the type of claim. In this --<br>21　　　in this case, again, I don't -- I don't<br>22　　　remember whether or not I actually went and<br>23　　　had an oral discussion with Sean or not.<br>24　Q.　Did Mr. Duffy ever indicate to you that he<br>25　　　agreed with the claim decision?<br><br>Page 165<br>1　A.　I believe at some point he -- he did.<br>2　Q.　When?<br>3　A.　I can't remember the exact date. It would<br>4　　　have been after we made a recommendation to<br>5　　　deny the claim.<br>6　Q.　As of July 18, had a decision been made to<br>7　　　recommend to deny the claim?<br>8　A.　I'm -- I -- I don't -- I don't know if by<br>9　　　that point we had made the decision or not.<br>10　　　I simply can't remember.<br>11　Q.　At the time that Ms. Johnson indicated to you<br>12　　　that she believed the claim should be denied,<br>13　　　recommended it, did you ask Ms. Johnson to<br>14　　　perform any other research or any other<br>15　　　analysis before you accepted her<br>16　　　recommendation?<br>17　A.　When Pamela and I had discussions about<br>18　　　whether or not to deny, whether or not the<br>19　　　claim was covered or not, I didn't ask her to<br>20　　　go out and do additional research, no.<br>21　Q.　Other than Mr. Duffy's response thanking you<br>22　　　for the e-mail that appears below on<br>23　　　Exhibit 32, did you have any further response<br>24　　　from Mr. Duffy to this particular e-mail? | |

**121**

| Deposition Designation | Objection & Response |
|---|---|
| 25   A.   I -- I can't remember. I don't know. | |

Page 166

1   Q.   Now, you indicated that you reviewed the
2        coverage opinion letter before it went out;
3        is that right?
4   A.   I reviewed the letter drafted by Pamela?
5   Q.   Yes.
6   A.   Yes, I reviewed that before it went out.
7   Q.   Did you have any changes that you wanted made
8        to the letter?
9   A.   I think I had one minor change that was
10       non-substantive.
11  Q.   What was the minor change that you recall?
12  A.   It was something in the first paragraph, but
13       I'd have to see my revisions and I don't
14       remember expressly what it was, but...
15  Q.   Did it have to do with the substance of the
16       war exclusions?
17  A.   No.
18  Q.   Do you recall what it had to do with?
19  A.   It was a non-substantive change in the first
20       paragraph. It's wording, wordsmithing.
21  Q.   But do you recall specifically what the
22       wordsmithing was about?
23  A.    No.
24  Q.   Did Ms. Johnson make the change that you had
25       suggested?

Page 167

1   A.   I don't think she did, no.
2   Q.   Do you know why she didn't?
3   A.   I think she probably just overlooked it.

Page 168

8            Ms. Gooley, do you recall receiving
9        this e-mail from Ms. Johnson on or about

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 10        July 28, 2014? | |
| 11   A.   I don't specifically recall, but it was sent | |
| 12        to me, so I'm sure I did receive it. | |
| 13   Q.   You don't have any reason to believe that you | |
| 14        didn't receive it? | |
| 15   A.   No. | |
| 16   Q.   Okay. Now, as of July 28, was the insured, | |
| 17        NBC Universal, had they already been told | |
| 18        that the claim was going to be denied on the | |
| 19        basis of the war exclusion? | |
| 20   A.   Yes, that's my understanding. | |
| 21   Q.   And how did you -- how did you learn that the | |
| 22        exclusion that Ms. Johnson was going to tell | |
| 23        NBC Universal that the exclusion had been | |
| 24        denied on the basis of the -- let's start all | |
| 25        over again. | |
|  | |
| Page 169 | |
| 1          How did you learn that Ms. Johnson | |
| 2        had told NBC Universal that the Dig claim was | |
| 3        going to be denied on the basis of the war | |
| 4        exclusion? | |
| 5   A.   I -- Pamela would have told me that she was | |
| 6        going to reach out to NBC and Aon and let | |
| 7        them know that our position was that the | |
| 8        exclusion precluded coverage. | |
| 9   Q.   Were you involved in that conversation or | |
| 10        that notice to NBC Universal and Aon that the | |
| 11        claim was going to be denied based on the war | |
| 12        exclusion? | |
| 13   A.   I don't think that I was, no. | |
| 14   Q.   Were you told before the call took place to | |
| 15        advise NBC Universal and Aon that the claim | |
| 16        was being denied? | |
| 17   A.   I'm sure that I was. | |
| 18   Q.   And is it -- do you know how the | |
| 19        communication was delivered? In other words, | |
| 20        by e-mail, telephone call, in-person meeting, | |

| Deposition Designation | Objection & Response |
|---|---|
| 21      do you know? | |
| 22   A.   I -- my understanding was via telephone. | |
| 23   Q.   And do you know when that telephone | |
| 24      conversation took place? | |
| 25   A.   I think it was the evening of the 17th. | |
| | |
| Page 170 | |
| 1   Q.   So by the evening of the 17th, the decision | |
| 2      already had been made that the claim should | |
| 3      be denied? | |
| 4   A.   Based on the -- yeah, that we believed it was | |
| 5      not covered. | |
| 6   Q.   And I believe you indicated previously that | |
| 7      you first received notice about the claim the | |
| 8      day after Aon had tendered the claim; is that | |
| 9      right? | |
| 10   A.   I think Aon tendered it to OneBeacon on | |
| 11      Tuesday, so the 15th, I believe, of July, and | |
| 12      Pamela sent me an e-mail on the 16th. So, | |
| 13      yeah, the day after. | |
| 14   Q.   Okay. So between July 15 and July 17, the | |
| 15      investigation was done, the legal analysis | |
| 16      was completed, a decision was made to deny | |
| 17      the claim on the basis of the war exclusion; | |
| 18      is that correct? | |
| | |
| 22      THE WITNESS: By the 17th we | |
| 23   believed we had enough information based on | |
| 24   our investigation to make the decision to | |
| 25   deny the claim. | |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 171</u><br>1   BY MS. COYOCA:<br>2  Q.  Do you know how long Ms. Johnson worked on<br>3      the claim before making that recommendation<br>4      to you that the claim should be denied based<br>5      on the war exclusion?<br>6  A.  I don't -- I don't, no.<br>7  Q.  Did you ever ask Ms. Johnson if she had<br>8      consulted with any experts on the<br>9      Middle Eastern region with regard to the<br>10     facts and circumstances about this claim?<br>11  A.  I never asked her that, no.<br>12  Q.  Do you know if she did consult with any<br>13     Middle East experts before making the<br>14     decision to recommend to deny the claim?<br>15  A.  She did not consult with any -- anyone from<br>16     the Middle East.<br>17  Q.  So between July 17 and the time that a denial<br>18     letter went out, what was your involvement,<br>19     if anything, in terms of the claim?<br>20  A.  So on the 17th Pamela had the conversation<br>21     with Aon and NBC. On the 18th, I believe<br>22     that is when we sent it out to coverage<br>23     counsel to get their opinion. We received<br>24     their opinion the following Monday, so that<br>25     would be 21st. Of course we looked at the | |
| <u>Page 172</u><br>1     opinion and thought about the opinion, but<br>2     based on everything, we included -- in our<br>3     analysis concluded the claim was not covered.<br>4     And then subsequently on the -- I think<br>5     Pamela communicated again with Aon and NBC,<br>6     and then we actually provided a hard copy of<br>7     the denial on the 28th, which is a Monday.<br>8  Q.  Okay. But beginning with the time frame on<br>9     the 17th when Aon and NBC Universal was told | <u>Defendant's Objections:</u><br>Object (172:8-19)<br>Reference to legal opinion;<br>privilege, relevance,<br>prejudicial; FRE 401, 402 ,<br>503<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; mere<br>reference to legal opinion<br>not privileged. |

| Deposition Designation | Objection & Response |
|---|---|
| 10    that the claim was going to be denied on that<br>11    basis, at that point in time, no opinion had<br>12    been received from outside coverage counsel;<br>13    is that correct?<br>14  A.  That's correct.<br>15  Q.  Had a decision been made by the 17th to seek<br>16    an outside coverage opinion?<br>17  A.  No. I think it was the following -- either<br>18    that later -- the following day that we<br>19    decided to send it out to coverage counsel. | |
| Page 173<br>24  Q.  And with respect to the outreach to outside<br>25    coverage counsel, were you involved in giving | Defendant's Objections:<br>Object (173:24)<br>Reference to legal opinion;<br>privilege, relevance,<br>prejudicial; FRE 401, 402 ,<br>503<br><br>Plaintiffs' Response:<br>Relevant to bad faith; mere<br>reference to outside<br>coverage counsel not<br>privileged. |
| Page 174<br>1    directions to coverage counsel as to the<br>2    issue to be addressed?<br>3  A.  Pamela would have done that.<br>4  Q.  But were you involved at all in that process?<br>5  A.  I would have been involved in the decision to<br>6    go to outside counsel.<br>7  Q.  Right. What I'm asking is in terms of asking<br>8    outside counsel to do the work, did you<br>9    provide any direction to him?<br>10  A.  No.<br>11  Q.  Did -- after the 17th, after the phone call<br>12    had taken place with Aon and NBC Universal,<br>13    did Ms. Johnson come back and report to you<br>14    as to how the call went? | Defendant's Objections:<br>Object (174:1-25)<br>Reference to legal opinion;<br>privilege, relevance,<br>prejudicial; FRE 401, 402 ,<br>503<br><br>Plaintiffs' Response:<br>Relevant to bad faith; mere<br>reference to legal opinion or<br>outside coverage counsel not<br>privileged. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 15  A.   She -- my -- I don't have an express<br>16       recollection, but she would have followed up<br>17       with me either that night or the next<br>18       morning.<br>19  Q.   Okay. What did she tell you?<br>20  A.   Again, to the best of my recollection, she<br>21       would have just told me how NBC reacted.<br>22  Q.   What did she -- what -- if you believe that<br>23       she did have that conversation with you, what<br>24       do you think she told you?<br>25  A.   I would think that she told me that NBC | |
| Page 175<br>1       disagreed with our coverage position.<br>2  Q.   Anything else?<br>3  A.   Nope. I think that was -- that's what I<br>4       recall.<br><br>14  Q.   Once the outside coverage opinion was<br>15       received on the 21st, did you ask Ms. Johnson<br>16       to go back and do any other work relating to<br>17       the investigation of the claim?<br>18  A.   No, I did not.<br>19  Q.   Did you have any discussions with her about<br>20       whether the determination was correct or<br>21       incorrect in light of the coverage opinion<br>22       that they received?<br>23  A.   We -- I -- I reviewed the coverage -- the<br>24       coverage opinion from coverage counsel along<br>25       with Pamela and then we had a discussion | Defendant's Objections:<br>Object (175:1-4, 14-25)<br>Reference to legal opinion;<br>privilege, relevance,<br>prejudicial; FRE 401, 402 ,<br>503<br><br>Plaintiffs' Response:<br>Relevant to bad faith; mere<br>reference to legal opinion<br>not privileged. |
| Page 176<br>1       based on everything, everything that Pamela<br>2       had done, all our independent research along<br>3       with we -- what coverage counsel said, and,<br>4       again, nothing changed our position with<br>5       respect to the fact that we believed the<br>6       matter was not covered. | Defendant's Objections:<br>Object (176:1-6)<br>Reference to legal opinion;<br>privilege, relevance,<br>prejudicial; FRE 401, 402 ,<br>503 |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | Plaintiffs' Response: Relevant to bad faith; mere reference to legal opinion not privileged. |
| Page 178<br>14 Q.   Were you concerned at all in terms of the<br>15      short time frame that -- in which the<br>16      analysis, the investigation, the review of<br>17      information and the legal analysis that was<br>18      performed, the short time frame in which it<br>19      was done?<br><br>22       THE WITNESS: My -- we can -- we<br>23      moved as quickly as we could on this<br>24      particular claim. I know that NBC wanted an<br>25      answer right away. Aon had pushed<br>         OneBeacon<br><br>Page 179<br>1       very hard to get an answer as soon as<br>2       possible and so that's why there's this --<br>3       why everything was turned around. We did it<br>4       to accommodate the insured, but we did do a<br>5       thorough investigation.<br><br>Page 180<br>19 Q.   Can you recall any other instances in any<br>20      entertainment claims that you reviewed while<br>21      you were at OneBeacon where a coverage<br>22      determination was made in two days?<br><br>25       THE WITNESS: I'm not aware of any<br><br>Page 181<br>1       claim.<br>2   BY MS. COYOCA:<br>3   Q.   Would you consider two days to be a<br>4        relatively expedited time frame?<br>5   A.   I would think that's, yes, fairly expedited. | Defendant's Objections: Object (181:24-25) Reference to legal opinion; privilege, relevance, prejudicial; FRE 401, 402 , 503 |

| Deposition Designation | Objection & Response |
|---|---|
| 6    Q.  Okay. Turning to Exhibit 33 and the<br>7         attachment to Exhibit 33, is this the draft<br>8         of Ms. Johnson's letter with respect to the<br>9         Dig claim that you reviewed before it was<br>10        sent out?<br>11    A.  May I have a moment to look at it, please?<br>12    Q.  Sure. Absolutely.<br>13    A.  (Reviews document.) This is the letter<br>14        Pamela sent to me.<br>15    Q.  The draft letter?<br>16    A.  Yes.<br>17    Q.  You indicated previously that you had a<br>18        suggested change as to language in the first<br>19        paragraph; is that correct?<br>20    A.  That's correct.<br>21    Q.  What change were you referring to?<br><br>24            THE WITNESS: I think it was the<br>25        second to the last sentence of the first | Plaintiffs' Response:<br>Relevant to bad faith; mere reference to legal opinion not privileged. |
| Page 182<br>1         paragraph.<br>2    BY MS. COYOCA:<br>3    Q.  And is what change specifically were you<br>4         recommending be made to the letter?<br>5    A.  I -- I'd have to see the exact change, but I<br>6         carved out, "In consultation with counsel."<br>7    Q.  You carved it out, you took it out of the<br>8         letter entirely?<br>9    A.  No, I put it in a separate sentence, but I<br>10        may have modified it. I'd have to see what I<br>11        did.<br>12    Q.  Okay.<br>13            MS. COYOCA: Let's mark as the<br>14        next exhibit, I believe we're on 34, an<br>15        e-mail exchange with -- with attachments<br>16        labeled Bates control ATL001858 through<br>                1866.<br>17            (Whereupon, Exhibit 34 was<br>18            marked for identification.) | Defendant's Objections:<br>Object (182:1-25)<br>Reference to legal opinion; privilege, relevance, prejudicial; FRE 401, 402 , 503<br><br>Plaintiffs' Response:<br>Relevant to bad faith; mere reference to legal opinion not privileged. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 19  BY MS. COYOCA: | |
| 20  Q.   Does Exhibit 34 refresh your recollection as | |
| 21        to the change that you had proposed? | |
| 22  A.   Yes. | |
| 23  Q.   What is it? | |
| 24  A.   The initial draft says, "Our decision is | |
| 25        based on information gathered about the | |
| | |
| Page 183 | Defendant's Objections: |
| 1         situation in Israel," comma, "case law," | Object (183:1-22, 25) |
| 2         comma, "treatises," comma -- or, "case law, | Reference to legal opinion; |
| 3         treatises and consultation with counsel." | privilege, relevance, |
| 4               My revision is, "Our decision is | prejudicial; FRE 401, 402 , |
| 5         based on information gathered about the | 503 |
| 6         situation in Israel," comma, "case law," | |
| 7         comma, "and treatises," period. "We also | Plaintiffs' Response: |
| 8         consulted with counsel," period. | Relevant to bad faith; mere |
| 9    Q.   Why did you propose that -- that sentence | reference to legal opinion |
| 10        with respect to consulting with counsel that | not privileged. |
| 11        that be inserted as a separate sentence? | |
| 12   A.   Because we -- I didn't want it to appear our | |
| 13        decision was made independent, "we" being | |
| 14        OneBeacon, made the decision to deny the | |
| 15        claim. We did consult with counsel, we did | |
| 16        consider it, but we made the ultimate | |
| 17        decision. | |
| 18   Q.   Do you know if that change was made in the | |
| 19        final letter? | |
| 20   A.   It wasn't. | |
| 21   Q.   Okay. And do you know why that particular | |
| 22        change was not made? | |
| | |
| 25             THE WITNESS: I don't know why. I | |
| | |
| Page 184 | Defendant's Objections: |
| 1         imagine Pamela just overlooked it. | Object (184:1, 3-10, 14-25) |
| | Reference to legal opinion; |
| 3    Q.   Were you concerned at all about the original | privilege, relevance, |
| 4         draft as it went out in the final indicating | prejudicial; FRE 401, 402 , |

| Deposition Designation | Objection & Response |
|---|---|
| 5     that the decision was based on, among other<br>6     things, consultation with counsel, were you<br>7     concerned at all about the timing of the<br>8     decision in terms of coverage counsel's<br>9     opinion not having been procured by the time<br>10     the decision had already been made?<br><br>14       THE WITNESS: Would you be good<br>15     enough to restate your question?<br>16       MS. COYOCA: Yeah, sure.<br>17 BY MS. COYOCA:<br>18 Q.   So the decision that the claim was going to<br>19     be denied was conveyed to counsel by<br>20     July 17th; is that correct?<br>21 A   It was conveyed to NBC and Aon on July<br>22     17th.<br>22 Q.   Excuse me. I'm sorry. Yes, it was conveyed<br>23     to Aon and NBC, to the insured, by July 17th,<br>24     correct?<br>25 A.   Correct. | 503<br><br>Plaintiffs' Response:<br>Relevant to bad faith; mere reference to legal opinion not privileged. |
| Page 185<br>1 Q.   And the consultation with counsel, that was<br>2     not initiated until July 18th; isn't that<br>3     correct?<br>4 A.   That's correct.<br>5 Q.   And the opinion from counsel was not procured<br>6     until July 21; is that right?<br>7 A.   Correct.<br>8 Q.   So was one of the reasons for your suggestion<br>9     as to the changed language in the letter the<br>10     fact that outside counsel's opinion had not<br>11     yet been procured by the time the decision<br>12     had been made to deny the claim?<br>13 A.   No.<br>14 Q.   Do you believe that making the statement that<br>15     the decision had been based on, amongst other<br>16     factors, consultation with counsel, do you<br>17     think that was a correct statement? | Defendant's Objections:<br>Object (185:1-25)<br>Reference to legal opinion; privilege, relevance, prejudicial; FRE 401, 402 , 503<br><br>Plaintiffs' Response:<br>Relevant to bad faith; mere reference to legal opinion not privileged. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 18  A.   I think we considered what counsel said, but<br>19        our decision, again, was independent, that's<br>20        why I broke it out.<br>21  Q.   Okay. But -- but from a timing standpoint,<br>22        is it correct to say that the decision was<br>23        based on consultation with counsel if the<br>24        decision was made prior to receiving any<br>25        input from counsel? | |
| Page 186<br>1   A.   OneBeacon made the decision to deny the claim<br>2        based on all the facts on the 17th. We<br>3        retained counsel on the 18th, had counsel<br>4        engage in a coverage analysis and then we<br>5        reviewed that. But, yes, we made the<br>6        decision prior to retaining coverage counsel. | Defendant's Objections:<br>Object (186:1-6)<br>Reference to legal opinion;<br>privilege, relevance,<br>prejudicial; FRE 401, 402 ,<br>503<br><br>Plaintiffs' Response:<br>Relevant to bad faith; mere<br>reference to legal opinion<br>not privileged. |
| Page 188<br>14  Q.   I'd like to show you the final version of the<br>15        letter. It's already been marked as<br>16        Exhibit 18. Let me know when you're ready<br>17        for questions.<br>18  A.   Okay. (Reviews document.) I'm ready.<br>19  Q.   Okay. Turning to page 5 of the letter<br>20        labeled Bates control 98, there is a heading<br>21        entitled -- under, "Analysis," entitled,<br>22        "Terrorism coverage." Do you see that?<br>23  A.   I do.<br>24  Q.   Do you agree with the statements that<br>25        Ms. Johnson is making in this paragraph? | |
| Page 189<br>1   A.   I'm -- I don't think those -- those<br>2        statements are correct in terms of the<br>3        terrorism coverage.<br>4   Q.   And why not? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 5  A.  Because I think -- I have to look at the 6       earlier OneBeacon reference, the terrorism 7       endorsement. 8  Q.  And are you specifically referring to the, 9       "Coverage for certified acts of terrorism, 10      caps on losses"? 11 A.  I'd have to see it. Yes. 12 Q.  That would be page ATL 3120. 13 A.  Yes. 14 Q.  Okay. So you said that you don't believe 15      that the statements are correct in terms of 16      the terrorism coverage. What do you think is 17      incorrect about the statements? 18 A.  Well, the -- when you look at the endorse -- 19      or the endorsement, I'm looking at, it says, 20      "Any exclusion of terrorism in this coverage 21      part or policy or attached to such covered 22      part or policy by endorsement is hereby 23      amended." The policy doesn't have a 24      terrorism exclusion, so there's nothing to 25      amend -- <br><br>Page 190 1  Q.  Okay. 2  A.  -- so it's really not applicable. 3  Q.  So it's not applicable at all? 4  A.  This endorsement isn't, no. <br><br>Page 192 7  Q.  I believe you previously testified, though, 8       that there's no terrorism exclusion in the 9       policy? 10 A.  I didn't see one, no. 11 Q.  Okay. Assuming no other exclusion is 12      applicable, that there is just an act of 13      terrorism which causes a loss under the 14      imminent peril extra expense coverage part, 15      would that claim be covered? | |

| Deposition Designation | Objection & Response |
|---|---|
| 19　　　　THE WITNESS: So independent of<br>20　　any exclusions or conditions or provisions,<br>21　　would a single act of terrorism be<br>22　　potentially covered under the imminent peril?<br>23　　　　MS. COYOCA: Yes.<br>24　　　　THE WITNESS: Yes --<br><br>Page 193<br>1　　　　THE WITNESS: -- potentially.<br><br>3　　BY MS. COYOCA:<br>4　　Q.　Is there any requirement under the policy<br>5　　that that claim be a certified act of<br>6　　terrorism as is defined under the<br>7　　endorsement, Coverage for Certified Acts of<br>8　　Terrorism, Cap on Losses?<br>9　　A.　I don't think so.<br>10　Q.　Is there any requirement under the terms of<br>11　　the policy that the act of terrorism be<br>12　　certified by the U.S. Secretary or the -- by<br>13　　the U.S. Secretary of the Treasury in order<br>14　　for it to be a covered claim?<br>15　A.　There's -- there's nothing under the -- under<br>16　　the body of the policy that says an act of<br>17　　terrorism has to be certified by the<br>18　　U.S. government.<br>19　Q.　Is the statement that Ms. Johnson made in the<br>20　　letter that begins, begin quotes, "Moreover,<br>21　　the U.S. Secretary of the Treasury has not<br>22　　certified the events as acts of terrorism,"<br>23　　period, "Thus, we do not believe that<br>24　　terrorism coverage would apply," period close<br>25　　quote; is that a correct statement?<br><br>Page 194<br>3　　　　THE WITNESS: The -- the first<br>4　　statement, "Moreover, the U.S. Secretary of<br>5　　the Treasury has not certified the events as<br>6　　acts of terrorism," is a correct statement. | |

**134**

| Deposition Designation | Objection & Response |
|---|---|
| 7    The second statement, "Thus, we do not<br>8    believe the terrorism coverage would apply,"<br>9    we -- we don't -- we believe that -- we do<br>10    not believe -- well, there is -- is that<br>11    correct that we don't believe the terrorism<br>12    coverage would apply? We believe that the<br>13    events of this claim are excluded by the war<br>14    or warlike exclusion.<br>15  BY MS. COYOCA:<br>16  Q.  But I'm asking you to please confine your<br>17    analysis just to the provision that I'm<br>18    talking about, which is the terrorism<br>19    coverage paragraph, and specifically, the<br>20    conclusion that the terrorism coverage does<br>21    not apply because of provisions of the<br>22    endorsement coverage for certified acts of<br>23    terrorism, cap on losses. Do you believe<br>24    that that's a correct statement to be making<br>25    to the insured?<br><br>Page 195<br>3       THE WITNESS: I think that there<br>4    is no terrorism -- I think that to the extent<br>5    that there's no terrorism coverage for the<br>6    facts of this claim, so with that --<br>7    consistent with that, that's -- that's true.<br>8  BY MS. COYOCA:<br>9  Q.  Well, but I'm asking specifically about the<br>10    invocation of the requirements that the act<br>11    has to be part of an effort to coerce or<br>12    influence the U.S. government and that the<br>13    U.S. Secretary of Treasury has to certify the<br>14    act as terrorism, are either of those<br>15    requirements, in order for there to be<br>16    coverage under this policy for an act of<br>17    terrorism, that's separate and apart from<br>18    what's being addressed in the endorsement?<br><br>21       THE WITNESS: I don't think so.<br>22  BY MS. COYOCA: | |

| Deposition Designation | Objection & Response |
|---|---|
| 23  Q.  When you were reviewing the letter, did you<br>24      tell Ms. Johnson that you thought that her<br>25      discussion of terrorism coverage was not | |

Page 196
1      correct?
2  A.  No.
3  Q.  Why not?
4  A.  Because my focus, when I reviewed the letter,
5      was on the war or warlike exclusions.
6  Q.  Did you read the entire letter before it went
7      out?
8  A.  I did.
9  Q.  Did you read the portion on terrorism
10      coverage?
11  A.  I'm sure I did.
12  Q.  Did you think to yourself at the time that
13      you reviewed it, That's not correct?
14  A.  No.
15  Q.  If you had focused on it, would you have
16      asked her to rewrite this paragraph?

19          THE WITNESS: If I thought it was
20      incorrect, I would have asked her to redraft
21      it, yes.
22  BY MS. COYOCA:
23  Q.  Looking to the prior page of the letter,
24      page 4, and it's labeled ATL 97, there is a
25      sentence that reads, near the end of the

Page 197
1      page, "The policy contains coverage for
2      certified acts of terrorism." Do you see
3      that?
4  A.  I see that.
5  Q.  Do you believe that the only coverage under
6      the policy is for certified acts of terrorism
7      as that term is defined in the endorsement?
8  A.  I'd have to run through the policy again.

| Deposition Designation | Objection & Response |
|---|---|
| 9       (Reviews document.)<br><br>12       THE WITNESS: So on this, though,<br>13       I mean what -- what's being cited is -- is<br>14       the endorsement and we talked about the fact<br>15       that it -- or the endorsement is not<br>16       applicable, so -- so I apologize, can you ask<br>17       me your question again?<br>18       MS. COYOCA: Right.<br>19   BY MS. COYOCA:<br>20   Q.   What I'm asking is: Do you believe that the<br>21       only coverage under the policy as to<br>22       terrorism is for certified acts of terrorism<br>23       as it's defined in that endorsement?<br><br>Page 198<br>1       THE WITNESS: Again, this is an<br>2       endorsement that modifies -- that provides<br>3       certain coverage in the event of an<br>4       exclusion, there's not -- that exclusion<br>5       doesn't exist, so I'm not sure that the<br>6       endorsement -- the endorsement is not<br>7       applicable.<br>8   BY MS. COYOCA:<br>9   Q.   So it shouldn't have been referenced in the<br>10       letter at all?<br>11   A.   Correct.<br>12   Q.   Turning to page 6 of the letter, there's a<br>13       paragraph that begins, "Appleman on<br>14       insurance"; do you see that paragraph?<br>15   A.   I do.<br>16   Q.   Can you please read that paragraph out loud?<br>17   A.   Yes. "Appleman on insurance discusses<br>18       exclusions for war, including the meaning of<br>19       war and similar terms. War is," paren, "a<br>20       course of hostility," paren, "between,"<br>21       paren, "states or state-like entities,"<br>22       period, close paren. "To constitute a<br>23       de facto state, a group must have," paren,<br>24       "significant attributes of sovereignty," | |

| Deposition Designation | Objection & Response |
|---|---|
| 25     close paren, "and the application of this<br><br>Page 199<br>1     exclusion is fact specific," double paren.<br><br>16     The question I'm asking is: Do you agree<br>17     with the sentence, "War is a course of<br>18     hostilities between states or state-like<br>19     entities"?<br><br>22     THE WITNESS: No, I don't.<br>23  BY MS. COYOCA:<br>24  Q.  Do you think that statement is incorrect?<br>25  A.  I think that's -- I think the statement is<br><br>Page 200<br>1     too limited.<br>2  Q.  Did you point that out to Ms. Johnson when<br>3     you were reviewing the letter?<br>4  A.  I don't recall that I did.<br>5  Q.  Could you please read the sentence that<br>6     begins, "Black's Law Dictionary"?<br>7  A.  "Black's Law Dictionary defines a," paren,<br>8     "war," close paren, "as," paren, "hostile<br>9     conflict by means of armed forces," comma,<br>10    "carried on between nations," comma, "states<br>11    or rulers," comma, "or sometimes between<br>12    parties within the same nation or state,"<br>13    period, close paren.<br>14  Q.  Do you believe that statement is correct?<br><br>17    THE WITNESS: Yeah, I mean, that's<br>18    correct that's -- that's how Black's Law<br>19    Dictionary defines war.<br>20  BY MS. COYOCA:<br>21  Q.  Do you believe that's the correct definition<br>22    of war?<br><br>25    THE WITNESS: I believe that's one | |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 201</u><br>1    of the definitions of war, yes.<br>2  BY MS. COYOCA:<br>3  Q.  Do you believe there are others?<br>4  A.  Yes.<br>5  Q.  Are they recited or cited in this letter?<br>6  A.  There's a -- she said, "A leading dictionary<br>7    of international law defines an act of war as<br>8    the use of force or other action by one state<br>9    against another which they acted against<br>10   recognizes as an act of war either by the use<br>11   of retaliatory force or declaration of war.<br>12   Another dictionary defines an act of war as a<br>13   measure of force which one party, using<br>14   military instruments as power, implements<br>15   against another party in an international<br>16   armed conflict."<br>17      So there's -- she cites -- recites<br>18   Appleman, Black's Law Dictionary, a<br>19   dictionary of international and comparative<br>20   law, and The Handbook of Humanitarian Law and<br>21   Armed Conflicts.<br>22  Q.  Okay. Do you believe that the definitions<br>23   which she's cited in their totality, all of<br>24   them that are contained in the letter, do you<br>25   believe that they're the correct definitions<br><br><u>Page 202</u><br>1    of the term war?<br><br>4      THE WITNESS: I believe all these<br>5    encompass what war could be.<br>6  BY MS. COYOCA:<br>7  Q.  Are there other definitions of war that you<br>8    think should have been cited here that are<br>9    not cited here?<br>10 A.  Not that I can recall right now. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 11 Q. Did you ask Ms. Johnson to delete any<br>12     references to war being hostility between<br>13     states or state-like entities?<br>14 A. No, I did not.<br>15 Q. At the time you were reviewing those words,<br>16     did you think that they were correct?<br>17 A. I think -- I thought that's one -- that is<br>18     one possible definition of war, yes.<br><br>Page 209<br>4 Q. The statement that, "Although Gaza or<br>5     Palestine is not a recognized nation at least<br>6     by most of the world, it does have some<br>7     indicia of sovereignty"; do you see that<br>8     statement?<br>9 A. I do.<br>10 Q. What are the indicia of sovereignty that are<br>11     required in order to meet the semi-state-like<br>12     entity standard?<br><br>15     THE WITNESS: Again, the things --<br>16     the items referenced in the letter, the<br>17     indicia -- indicia, excuse me, of<br>18     sovereignty, it governs the territory, it has<br>19     a military, it has a police force, it has a<br>20     security force, it also has social services,<br>21     it provides health care services, it holds<br>22     elected office, those are the indicia.<br>23 BY MS. COYOCA:<br>24 Q. Ms. Gooley, my question that I'm asking you<br>25     is: What are the indicia of sovereignty that<br><br>Page 210<br>11 Q. At the point in time that you reviewed the<br>12     coverage denial letter, did you know what<br>13     indicia were necessary in order to meet the<br>14     standard of semi-sovereignty?<br><br>18     THE WITNESS: Based on what we | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 19     cited, we believe that that is what -- that <br> 20     indicated it was indicia of sovereignty. <br><br> 23   Q.   But my question is: At the time that you <br> 24     reviewed the letter, did you actually know <br> 25     what the indicia were? <br><br> Page 211 <br> 4      THE WITNESS: Again, I'm pointing <br> 5     back to what OneBeacon is pointing to, the <br> 6     issue of sovereignty that we saw back with <br> 7     respect to Hamas, military, social services, <br> 8     police, government, health care, and it <br> 9     all -- it has indicia of sovereignty. <br><br> 11   Q.   Were the -- the indicia of sovereignty that <br> 12     are referenced in the letter, were each of <br> 13     those required in order to meet the standard <br> 14     of semi-state-like status? <br><br> 18      THE WITNESS: Again, we believe <br> 19     that what we pointed out to provides indicia <br> 20     of sovereignty. <br><br> 22   Q.   I understand that point. What I'm trying to <br> 23     get at is: In July 2014 as you were <br> 24     reviewing the letter, did you know what would <br> 25     be sufficient, what standards were <br><br> Page 212 <br> 1     sufficient? Other than what is recited in <br> 2     the letter, did you actually know based on <br> 3     legal authority or what Ms. Johnson told you <br> 4     or looking at a case, okay, this is what is <br> 5     needed in order to meet that standard? <br><br> 17   A.   Again, based on our research, based on <br> 18     everything that we found, we believe that | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 19     what Hamas has is enough to satisfy what is<br>20     an indicia of sovereignty. We wouldn't have<br>21     put it in the letter if we didn't think so.<br>22  Q.  What sources did you look at in order to<br>23     determine whether or not the factors that<br>24     were recited were sufficient to meet the<br>25     standard for semi-state-like sovereignty?<br><br>Page 213<br>4     THE WITNESS: Again, Pamela and I<br>5     had discussions about her research, about<br>6     what she looked at, and then ultimately we<br>7     reached conclusions.<br>8  BY MS. COYOCA:<br>9  Q.  Did you read any case authority?<br>10 A. Not that I recall.<br>11 Q. Did you read the Zanotti article?<br>12 A. No.<br><br>Page 214<br>1  Q.  Keeping your attention to Exhibit 18, the<br>2     July 28, 2014, letter, on the fifth page of<br>3     the letter labeled Bates control ATL0000098,<br>4     under, "Analysis," there's a section<br>5     entitled, "Imminent Peril." I'd like to ask<br>6     you a question about that. Are you there?<br>7  A.  Yes.<br>8  Q.  Great. Do you agree with Ms. Johnson's<br>9     statements made in that paragraph that the<br>10    situation in Israel constituted imminent<br>11    peril?<br>12 A.  I'm just going to read through it, but<br>13    presumably I do, because I approved the<br>14    letter. (Reviews document.) Yes.<br>15 Q.  The two grounds that I see that are invoked<br>16    in the July 28 letter is subparagraph 1 of<br>17    the war exclusions and subparagraph 2. I do<br>18    not see the third or fourth subparagraphs<br>19    invoked. Do you -- do you agree? | |

| Deposition Designation | Objection & Response |
|---|---|

```
22          THE WITNESS: We -- yeah, we -- we
23     reference the -- the first prong of the war
24     exclusion and then we reference paragraph 1
25     and paragraph 2, warlike action by a military
```

Page 215
```
1      force.
2  BY MS. COYOCA:
3  Q.  Was the third prong of the exclusion,
4      "Insurrection, revolution, rebellion,"
5      et cetera, was that referenced in the letter?
6          MS. SCOTT REED: Objection to
7      form, vague and ambiguous.
8          THE WITNESS: The third prong
9      isn't referenced.
10 BY MS. COYOCA:
```

Page 216
```
16 Q.  With respect to the fourth prong, begin
17     quotes, "Any weapon of war, including atomic
18     fission or radioactive force, whether in time
19     of peace or war," close quotes, under the
20     Analysis section of Ms. Johnson's July 28
21     letter does she invoke the fourth prong as a
22     grounds on which OneBeacon is denying the
       Dig
23     claim?
```

Page 217
```
1          THE WITNESS: It's cited -- I
2      mean, she cites it in the policy piece. But
3      in terms of the analysis, she -- analysis she
4      focuses just on the first paragraph and the
5      second paragraph of the war, what I refer to
6      as the war exclusions.
7  BY MS. COYOCA:
8  Q.  Did you speak to Ms. Johnson as to why she
9      did not address the third prong of the war
```

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 10     exclusions in the Analysis section of the<br>11     denial letter?<br>12  A.  I don't recall that conversation, no.<br>13  Q.  Did you ever tell Ms. Johnson that the third<br>14     prong should also be invoked as a grounds for<br>15     exclusion of the Dig claim?<br>16  A.  The third prong?<br>17  Q.  Yes.<br>18  A.  Or the third paragraph?<br>19  Q.  The third paragraph of the war exclusions,<br>20     subparagraph 3.<br>21  A.  No.<br>22  Q.  Was OneBeacon denying the claim on the basis<br>23     of third paragraph, subparagraph 3 of the<br>24     war exclusions?<br>25  A.  The paragraph that begins, "Insurrection,<br><br>Page 218<br>1     rebellion, revolution"?<br>2  Q.  Yes.<br>3  A.  No.<br>4  Q.  Did you ever tell Ms. Johnson that she should<br>5     address the fourth prong of the war exclusion<br>6     with respect to any weapon of war in the<br>7     Analysis section of the coverage denial<br>8     letter?<br>9  A.  We discussed the fourth prong, but I don't<br>10     recall telling her to expressly include<br>11     the -- it in the analysis of the coverage<br>12     position.<br>13  Q.  In the coverage denial letter, is OneBeacon<br>14     relying on the fourth prong, the fourth --<br>15     the subparagraph 4 of the war exclusions in<br>16     denying the Dig claim?<br>17  A.  Yes, OneBeacon would be. The fourth prong<br>18     says, "Any weapon of war," so any weapon of<br>19     war necessarily would be included in any<br>20     warlike action by a military force, war<br>21     including undeclared war, any weapon of war | |

| Deposition Designation | Objection & Response |
|---|---|
| I<br>22    think would -- would fall within that, and in<br>23    here it would -- warlike action, again,<br>24    you're using a weapon of war, so it would be<br>25    included within 1 and 2.<br><br>Page 219<br>1   Q.  Why wasn't it specifically addressed in the<br>2       Analysis section of the policy?<br>3   A.  I think part of it is because it's --<br>4       implicitly would be included, but we<br>5       highlighted two of the provisions.<br>6   Q.  Is it your practice in reviewing coverage<br>7       denial letters to not recite all of the<br>8       provisions on which the insurer is denying<br>9       coverage?<br><br>13       THE WITNESS: It is not our<br>14    practice to not -- to not cite all<br>15    exclusions, at the same time, we reference<br>16    the exclusions. When we cite we highlight<br>17    exclusions. We may not hit every possible<br>18    variation of an exclusion. But in this case,<br>19    like I mentioned, paragraph 4, "Any weapon of<br>20    war," if it's a war or warlike action, it<br>21    would include a weapon of war.<br>22  BY MS. COYOCA:<br>23   Q.  Did you ever have any discussions with<br>24       Ms. Johnson about the fact that the third and<br>25       fourth prongs of the war exclusions were not<br><br>Page 220<br>1       addressed in the coverage denial letter?<br><br>6   Q.  Do -- did you ever have any discussions with<br>7       Ms. Johnson about the fact that the third and<br>8       the fourth prongs of the war exclusions were<br>9       not addressed in the coverage denial letter? | |

| Deposition Designation | Objection & Response |
|---|---|
| 14        THE WITNESS: So, again, the --<br>15    the third paragraph I don't think is<br>16    applicable, and so necessarily we wouldn't<br>17    have included it in the letter.<br>18    The fourth paragraph is applicable,<br>19    but based on the analysis of the application<br>20    of war, including undeclared or civil war and<br>21    warlike actions by a military force, that<br>22    would include the use of any weapon of war.<br>23  BY MS. COYOCA:<br>24  Q.  Did you ever ask Ms. Johnson about the fact<br>25    that the fourth prong of the war exclusion<br><br>Page 221<br>1    was not explicitly addressed in the Analysis<br>2    section of the July 28th coverage denial<br>3    letter?<br><br>7        THE WITNESS: I -- I didn't ask --<br>8    I never asked her about whether or not the<br>9    fourth was addressed, because we cited it,<br>10   and again it was -- would be part of the<br>11   analysis, it would be necessarily included by<br>12   paragraph 1 and 2.<br><br>14  BY MS. COYOCA:<br>15  Q.  I want to show you a document that's already<br>16    previously been marked as Exhibit 19 to the<br>17    Gutterman deposition. Please let me know<br>18    when you're ready for questions.<br>19  A.  Okay. Thank you. I'll read through it.<br>20  Q.  Thanks.<br>21  A.  (Reviews document.)<br>22  Q.  Are you ready for questions?<br>23  A.  Yes.<br>24  Q.  Have you seen this letter before?<br>25  A.  Yes. | Defendant's Objections:<br>Object (221:14-25)<br>Attorney allegations and<br>arguments, relevance<br>hearsay, foundation FRE<br>401, 403, 801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith; proper<br>cross-examination; offered<br>for non-hearsay purpose;<br>foundation present;<br>statement of party opponent |

146

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 222</u><br>1  Q.  When did you see it?<br>2  A.  I would have seen it after Pamela received<br>3       it.<br>4  Q.  Did you ever discuss it with Pamela?<br>5  A.  I'm sure that we did discuss it, yes.<br>6  Q.  Do you recall any of your discussions about<br>7       the letter?<br>8  A.  I don't specifically recall the discussions.<br>9  Q.  Do you have any general recollections of your<br>10     discussions?<br>11  A.  My general recollection would be we would<br>12     have -- we would have gone through the<br>13     arguments and that Pamela would have pulled<br>14     the cases and read the case law and looked at<br>15     the arguments raised in the letter.<br>16  Q.  With respect to the second paragraph of the<br>17     letter, talking about OneBeacon's willingness<br>18     to cover expenses associated with the initial<br>19     one-week postponement; do you see that?<br>20  A.  I do.<br>21  Q.  Were you aware that OneBeacon had agreed to<br>22     cover the first one week push cost -- or<br>23     postponement costs?<br><br><u>Page 223</u><br>2        THE WITNESS: I -- I knew that<br>3     OneBeacon had agreed to offer 3 to 350 for<br>4     the first -- first week.<br>5  BY MS. COYOCA:<br>6  Q.  How did you become aware of that?<br>7  A.  Pamela would have told me.<br>8  Q.  What did she tell you about that?<br>9  A.  I just recall when it initially came in, it<br>10     came in as a postponement claim and that --<br>11     that initially, you know, to the extent that<br>12     NBC only postponed it for a week estimate and<br>13     then began -- or resumed filming, estimated | <u>Defendant's Objections:</u><br>Object (222:1-23)<br>Attorney allegations and arguments, relevance hearsay, foundation FRE 401, 403, 801, 802<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; proper cross-examination; offered for non-hearsay purpose; foundation present; statement of party opponent |

| Deposition Designation | Objection & Response |
|---|---|
| 14　　losses associated with that were between 3<br>15　　and 350.<br>16　Q.　And what did she tell you with regard to<br>17　　OneBeacon's willingness to cover 300 to<br>18　　350,000 of those costs?<br><br>22　　　　THE WITNESS: Again, I -- I think<br>23　　that it was initially based on the<br>24　　understanding that it was a postponement<br>25　　claim, that it would only be a one-week<br><br>Page 224<br>1　　postponement of shooting, and then thereafter<br>2　　when it became clear, I think OneBeacon<br>3　　simply wanted to make a concession to NBC and<br>4　　continue to offer the 3 to 350 for the claim.<br>5　BY MS. COYOCA:<br>6　Q.　Specifically, did Ms. Johnson tell you how<br>7　　OneBeacon's willingness to pay 3 to 350 for<br>8　　the initial one-week postponement, how that<br>9　　was ever conveyed to the client?<br><br>13　　　　THE WITNESS: I -- I don't<br>14　　remember or recall how that was conveyed to<br>15　　NBC.<br>16　BY MS. COYOCA:<br>17　Q.　Did you ever -- were you ever told that<br>18　　Mr. Williams had made the statement that<br>19　　OneBeacon would cover 300 to 350 of the<br>20　　initial postponement costs?<br><br>24　　　　THE WITNESS: I -- I wasn't aware<br>25　　if Peter made any statement like that.<br><br>Page 225<br>1　BY MS. COYOCA:<br>2　Q.　Was it your understanding that Ms. Johnson<br>3　　had indicated to NBC Universal and Aon that | |

**148**

| Deposition Designation | Objection & Response |
|---|---|
| 4 OneBeacon would cover 300 to 350,000 of the<br>5 initial one-week postponement costs?<br><br>9 THE WITNESS: I understand that<br>10 Pamela offered to -- to cover 300 to 350 for<br>11 the initial week postponement.<br>12 BY MS. COYOCA:<br>13 Q. When was that offer conveyed?<br>14 A. I don't remember.<br>15 Q. Why was --<br><br>19 THE WITNESS: Yes. Sorry. I -- I<br>20 said I don't remember. I just -- I don't --<br>21 I'm just referring to the letter that -- that<br>22 Pamela sent out dated July 28th and the<br>23 conclusion. She states, "Although we cannot<br>24 cover the extra expense associated with the<br>25 production move to another country to<br><br>Page 226<br>1 complete the production, based on our long<br>2 relationship with NBC, we're willing to cover<br>3 the expenses associated with the initial<br>4 postponement as a courtesy," and then she<br>5 references a budget and the costs associated<br>6 with the initial postponement.<br>7 BY MS. COYOCA:<br>8 Q. Is it your understanding that this was the<br>9 first time that there was ever any indication<br>10 by OneBeacon that it would cover the initial<br>11 one-week postponement costs?<br>12 A. I think that it -- there was an indication<br>13 before that, but I don't have a -- a specific<br>14 recollection as to when.<br>15 Q. And do you know who provided that indication<br>16 to Aon or NBC Universal?<br>17 A. I don't.<br>18 Q. On what basis did OneBeacon decide that it | |

**149**

| Deposition Designation | Objection & Response |
|---|---|
| 19      was willing to pay the one-week initial<br>20      postponement costs?<br><br>25           THE WITNESS: Again, I'm just<br><br>Page 227<br>1      going to -- I -- I don't know the earlier<br>2      conversations, but as detailed in the<br>3      July 28th letter, Pamela indicates that based<br>4      on our long relationship, we're willing to<br>5      cover the expenses associated -- associated,<br>6      excuse me, with the initial postponement as a<br>7      courtesy. So at least as of July 28th, that<br>8      was the basis, as a courtesy given the<br>9      existing relationship with NBC.<br>10   BY MS. COYOCA:<br>11   Q.   Are you aware of any other grounds as to why<br>12      OneBeacon was willing to pay the initial --<br>13      or to cover, to cover the expenses associated<br>14      with the initial postponement?<br><br>18           THE WITNESS: Again, I think<br>19      when -- when the claim initially claim to<br>20      Peter it -- he thought it would be simply a<br>21      postponement for a week and then reconvene or<br>22      resume the filming. And based on that, it's<br>23      my understanding we thought potentially 3 to<br>24      350 would be the expenses incurred by NBC to<br>25      postpone the production.<br><br>Page 228<br>1   BY MS. COYOCA:<br>2   Q.   Was it OneBeacon's position that the initial<br>3      postponement costs of 300 to 350, whatever<br>4      the original estimate was, that those were a<br>5      covered expense under extra -- under the<br>6      extra expense coverage of the policy? | |

| Deposition Designation | Objection & Response |
|---|---|
| 7   A.   I think initially when the claim first came<br>8       in, it appeared that it might be based on the<br>9       postponement. But then, clearly, by<br>10      July 28th when the letter was issued,<br>11      OneBeacon took the position that those<br>12      weren't covered, but again, as a courtesy<br>13      would -- would provide NBC with reimbursement<br>14      for those expenses it incurred during that<br>15      first week.<br>16   Q.   What do you base your understanding that<br>17      initially when the claim first came in it<br>18      appeared that it might be based on the<br>19      postponement? What do you -- what do you<br>20      base your understanding of that statement?<br>21   A.   My understanding is that when it initially<br>22      came in, that's how -- that's how it was<br>23      described by NBC.<br>24   Q.   I'm actually directing your attention to the<br>25      statement that -- that it appeared the claim<br><br>Page 229<br>1      might be covered based on the postponement.<br><br>10   Q.   You indicated previously that I asked you was<br>11      it OneBeacon's position that the initial<br>12      postponement costs of 300 to 350, whatever<br>13      the original estimate was that those were a<br>14      covered expense under extra -- under the<br>15      extra expense coverage of the policy. And<br>16      you indicated, "I think initially when the<br>17      first came" -- "when the claim first came in,<br>18      it appeared that it might be based on the<br>19      postponement, but then clearly by July 28th<br>20      when the letter was issued, OneBeacon took<br>21      the position that those weren't covered, but<br>22      again as a courtesy would -- would provide<br>23      NBC with reimbursement for those expenses it<br>24      incurred during that first week." | |

| Deposition Designation | Objection & Response |
|---|---|
| 25       And my question to you is: As that | |

Page 230

1      first portion of your response when you say,
2      "I think initially when the claim first claim
3      in, it appeared that it might be based on the
4      postponement," what did you base that
5      statement on?
6   A.   I -- I'm looking back at the letter, but I
7      also -- my recollection was that, again, it
8      was a moving -- kind of a moving target, and
9      NBC postponed it and wanted to see how -- how
10     the -- how it went forward between Israel and
11     Hamas before making -- you know, and then
12     ultimately decided that for the safety of NBC
13     they needed to pull out of -- pull out of
14     Israel.
15   Q.   If the -- if only postponement had occurred
16     and no relocation was necessary, would that
17     be a covered claim?

23      THE WITNESS: Are you asking me if
24     they just postponed it for a week and
25     continued filming after a week would that

**152**

| Deposition Designation | Objection & Response |
|---|---|
| Page 231 | |

Page 231

1  potentially be covered?
2 BY MS. COYOCA:
3 Q. Yes, I'm asking you would it be covered?

5   THE WITNESS: If they postponed it
6  for a week and continued to film -- no, the
7  war exclusion would apply.
8 BY MS. COYOCA:
9 Q. Why --
10   THE WITNESS: Exclusions, excuse
11  me, plural.
12 BY MS. COYOCA:
13 Q. Why would the -- why then did you believe
14  that the postponement costs initially
15  appeared that it would be covered?

18   THE WITNESS: Initially, when it
19  came in and as the facts were developing, it
20  was early on. And at that point the facts
21  escalated to what was war. And so the facts
22  developed over that period of time beginning
23  in June running through into August. But
24  initially when it came in, it wasn't clear if
25  the -- there would be a cease fire, if there

Page 232

1  would be just that initial hostility, so that
2  was based on our initial impression.
3 BY MS. COYOCA:
4 Q. The -- the initial impression that at some
5  point prior to whatever escalation you're
6  referring to, that it -- it wasn't clear
7  whether it was a war, when do you date that
8  period of time to?

13   THE WITNESS: What I'm saying is
14  that based on all the facts, at that point we
15  didn't -- things were continuing to develop
16  in Israel. It was escalating and when --

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 17    then when we looked at the totality of the<br>18    facts over the period of time, we reached the<br>19    conclusion that the war-related exclusions<br>20    would apply.<br>21  BY MS. COYOCA:<br>22  Q.  When you said, "What I'm saying is that based<br>23    on all the facts, at that point we didn't --<br>24    things were continuing to develop in Israel,"<br>25    what point in time were you referring to when<br><br>Page 233<br>1    you say, "At that point," in that response?<br>2  A.  When they initially were speaking with Peter.<br>3    It would have been in, like, around<br>4    July 11th. NBC itself characterized it as a<br>5    postponement claim as well.<br>6  Q.  At that point in time when the initial<br>7    discussions were had with Peter -- by the<br>8    way, at the time the discussions were had<br>9    around July 11, did -- were you aware that<br>10    those conversations were going on?<br>11  A.  No.<br>12  Q.  When did you become aware of them?<br>13  A.  I -- when Pamela reached out to me.<br>14  Q.  Okay. So during that initial period, did<br>15    OneBeacon believe that the events that were<br>16    happening in Israel at that point in time,<br>17    that they constituted a war?<br><br>22       THE WITNESS: Again, at -- at that<br>23    point we were, you know, still monitoring<br>24    what was going on and what was going on<br>25    between Israel and Hamas and so -- and<br><br>Page 234<br>1    whether there would be a cease fire, which<br>2    was shortly thereafter, I think it was<br>3    short -- there appeared there might be. We<br>4    wanted to see how the -- how it -- how it | |

| Deposition Designation | Objection & Response |
|---|---|
| 5     played out as it were in terms of what was<br>6     going on between Israel and Hamas.<br>7  BY MS. COYOCA:<br>8  Q.  I understand that you're indicating that<br>9     OneBeacon wanted to see how it played out,<br>10    but the question that I'm asking you, and it<br>11    may be that no determination was made, but<br>12    I'm asking you: Initially when the claim was<br>13    first discussed around July 11 with<br>14    Mr. Williams, did OneBeacon consider the<br>15    hostilities that were going on at that point,<br>16    did they consider those hostilities to be a<br>17    war?<br><br>21      THE WITNESS: Yeah, I -- again, I<br>22    wasn't part of those conversations, but<br>23    OneBeacon hadn't engaged in all its research<br>24    at that point either.<br><br>Page 235<br>1  BY MS. COYOCA:<br>2  Q.  But regardless of whether you were involved,<br>3    I understand you do not think you were or you<br>4    were not, did you ever subsequently learn<br>5    that at that point in time around July 11,<br>6    that OneBeacon considered the situation in<br>7    Israel to be a war?<br><br>11      THE WITNESS: I never -- there --<br>12    I don't recall anything -- or learning<br>13    anything indicating that we thought it was --<br>14    it was a war on July 11th.<br>15  BY MS. COYOCA:<br>16  Q.  Did you ever hear anything that indicated to<br>17    you that OneBeacon did not consider the<br>18    situation as it existed in Israel around<br>19    July 11, that it was not a war?<br>20  A.  I think at -- at July 11th, when we initially<br>21    found out about the claim we needed to find<br>22    out more information about everything that | |

| Deposition Designation | Objection & Response |
|---|---|
| 23      was going on and also what went on in the<br>24      subsequent events to make that determination.<br>25    Q.   Is the fact that the hostilities escalated<br><br>Page 236<br>1      after July 11, does that factor in at all in<br>2      terms of OneBeacon's conclusion that there<br>3      was a war that existed?<br><br>7        THE WITNESS: When we looked at<br>8      all the facts, we concluded there was war,<br>9      including the events subsequent to July 11th.<br>10   BY MS. COYOCA:<br>11   Q.   But I'm asking specifically about the<br>12      escalation of hostilities. Was the<br>13      escalation of hostilities one of the factors<br>14      that led OneBeacon to conclude that it was a<br>15      war?<br><br>19        THE WITNESS: Again, it was all<br>20      the facts included within that is -- yeah,<br>21      you could say the escalation, the sending of<br>22      the ground troops, the -- you know, the war<br>23      planes, the missiles launched back and forth,<br>24      the number of missiles launched back and<br>25      forth. Again, it's the totality of the<br><br>Page 237<br>1      circumstances.<br><br>Page 238<br>7        If the circumstances in Israel, as<br>8      they existed in Israel as of July 11,<br>9      whatever had transpired before had in fact<br>10      transpired, but nothing developed subsequent<br>11      after July 11, would OneBeacon still have<br>12      concluded that those factual circumstances as<br>13      they existed as of July 11, did those<br>14      constitute a war? | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br>Object (238:19-25)<br>Attorney allegations and<br>arguments, relevance<br>hearsay, foundation FRE<br>401, 403, 801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith; proper |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 19       THE WITNESS: I think on July 11th<br>20    when initially Peter had the conversation<br>21    with Andrea and Susan, I assume, perhaps at<br>22    that point we just received notice, so we<br>23    would have had to look at all the facts,<br>24    including the facts rising -- the facts<br>25    leading up to the events and the facts | cross-examination; offered for non-hearsay purpose; foundation present; statement of party opponent |
| Page 239<br>1    subsequent to the events. So I don't know<br>2    whether we would have concluded it was a war<br>3    or not or it was not a war.<br>4   BY MS. COYOCA:<br>5   Q.   Turning back to Exhibit 19, my August 13,<br>6       2014, letter to Ms. Johnson.<br>7   A.   Yes.<br>8   Q.   On the third page of the letter there is a<br>9       reference to -- in the -- in the second to<br>10      last paragraph on the page, there's a<br>11      reference to, "The U.S. Department of State<br>12      County reports on terrorism"; do you see<br>13      that?<br>14   A.   Sorry, third page, which paragraph, please?<br>15   Q.   Page 3.<br>16   A.   Yup.<br>17   Q.   Bates label 89.<br>18   A.   Yup.<br>19   Q.   Fourth paragraph down.<br>20   A.   Okay. I see that.<br>21   Q.   Did you ever review this county reports on<br>22      terrorism that had been issued by the<br>23      U.S. Department of State?<br>24   A.   I didn't personally review it, no.<br>25   Q.   Did Ms. Johnson? | Defendant's Objections:<br>Object (239:1-25)<br>Attorney allegations and arguments, relevance hearsay, foundation FRE 401, 403, 801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith; proper cross-examination; offered for non-hearsay purpose; foundation present; statement of party opponent |
| Page 240<br>1   A.   I don't -- | Defendant's Objections:<br>Object (240:1, 16-21) |

| Deposition Designation | Objection & Response |
|---|---|
| 4        THE WITNESS: I don't know whether<br>5     she did or not.<br>6  BY MS. COYOCA:<br>7  Q.  Did you ask Ms. Johnson to review it?<br>8  A.  I asked Pamela to review the arguments in the<br>9     letter, including case law, and then draft a<br>10    response.<br>11 Q.  But did you ask her to review specifically<br>12    this authority that was cited in the letter,<br>13    which is not a case --<br><br>16        THE WITNESS: I didn't -- I don't<br>17    recall asking her to look at -- from a<br>18    statement from the U.S. Department of -- or<br>19    U.S. State Department, excuse me.<br>20 BY MS. COYOCA:<br>21 Q.  Turning to page 4, in the paragraph that<br>22    begins, "Indeed, there is longstanding and<br>23    ample authority," in that paragraph there's a<br>24    reference to a U.S. Department of State<br>25    County reports -- oh, I'm sorry let me take | Attorney allegations and arguments, relevance hearsay, foundation FRE 401, 403, 801, 802<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; proper cross-examination; offered for non-hearsay purpose; foundation present; statement of party opponent |
| <u>Page 241</u><br>1     that back and try over.<br>2        There is a reference to a<br>3     publication entitled, "U.S. Department of the<br>4     Treasury Press Center from the Office of<br>5     Public Affairs," from August of 2003. Do you<br>6     see that reference?<br>7  A.  I do.<br>8  Q.  Did you review the Treasury Department<br>9     statement or article from the Office of<br>10    Public Affairs that came out in August of<br>11    2003?<br>12 A.  I did not.<br>13 Q.  Did you ask Ms. Johnson to?<br>14 A.  I didn't specifically ask her to, no.<br>15 Q.  Do you know if she did?<br>16 A.  I don't know whether she did or not. | <u>Defendant's Objections:</u><br>Object (241:1-7)<br>Attorney allegations and arguments, relevance hearsay, foundation FRE 401, 403, 801, 802<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; proper cross-examination; offered for non-hearsay purpose; foundation present; statement of party opponent |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 17 Q. On the next page, on page 5, there's a<br>18     reference to -- right before the paragraph<br>19     heading number 4, to a European council --<br>20     excuse me, "European Union Foreign Affairs<br>21     Council, Foreign Ministers Meeting Report";<br>22     do you see that?<br>23 A. I do.<br>24 Q. Did you review that European Foreign Affairs<br>25     Council Report?<br><br>Page 242<br>1 A. I did not.<br>2 Q. Did you ask Ms. Johnson to?<br>3 A. I did not specifically ask her, no.<br>4 Q. Do you know if she did?<br>5 A. I don't know.<br>6 Q. Did you review -- you personally review any<br>7     of the case authority that was cited in the<br>8     letter?<br>9 A. I did not.<br>10 Q. Did you ask Ms. Johnson to?<br>11 A. I did.<br>12 Q. And did she share with you her views after<br>13     reading those cases?<br>14 A. I'm sure that she did, yes.<br>15 Q. How are you sure? Why are you sure?<br><br>18     THE WITNESS: Because I asked her<br>19     to look at it, and she would have looked at<br>20     it and then we would have a -- we would have<br>21     had a discussion.<br>22 BY MS. COYOCA:<br>23 Q. Do you recall specifically having a<br>24     discussion about the Pan American case?<br>25 A. I don't.<br><br>Page 243<br>1 Q. Do you believe that you did?<br>2 A. I would think we did. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 3   Q.   Do you recall anything at all specifically 4         about the Pan American case? 5   A.   Other than what you cite in your letter, no, 6         not -- not right now. 7   Q.   Did you ever ask Ms. Johnson how or why it is 8         that the Pan American case did not apply to 9         this situation? 10   A.   I don't know whether I asked her that express 11         question, but when she reviewed the case law, 12         we necessarily would have a discussion 13         whether we believed it applied, whether we 14         believed it was by a new precedent, whether 15         we believed it would change our opinion as to 16         the applicability of the war exclusion. 17   Q.   And what about the Holiday Inn case, 18         Holiday Inn vs. Aetna Insurance, did you 19         review that case? 20   A.   I did not. 21   Q.   And did you ask Ms. Johnson to? 22   A.   Yes. 23   Q.   Did you discuss her analysis of the case? 24   A.   I don't have any recollection of it. But, 25         again, I would imagine that we had that | |
| Page 244 1         discussion. 2   Q.   Did you ask Ms. Johnson for her specific 3         analysis as to why Holiday Inn's was 4         inapplicable to the situation? 5   A.   I wouldn't have asked her why it was or 6         wasn't inapplicable. I would have asked her 7         to tell me what -- she read the case and 8         whether she believes that is -- what the 9         proposition of the case is, whether it -- if 10         it's contrary to our position, you know, 11         whether we need to -- to look at it again, 12         so... 13   Q.   Did you discuss the request for 14         reconsideration of the denial with anyone | Defendant's Objections: Object (244:1-25) Attorney allegations and arguments, relevance hearsay, foundation FRE 401, 403, 801, 802

Plaintiffs' Response: Relevant to bad faith; proper cross-examination; offered for non-hearsay purpose; foundation present; statement of party opponent |

**160**

| Deposition Designation | Objection & Response |
|---|---|
| 15      other than Ms. Johnson?<br>16   A.   I think it was probably Pamela and I.<br>17   Q.   Did you discuss the request for<br>18         reconsideration with Sean Duffy?<br>19   A.   I don't recall discussing it with him, no.<br>20   Q.   Did you discuss the request for<br>21         reconsideration of the denial with outside<br>22         coverage counsel?<br>23   A.   I don't recall having a discussion with<br>24         outside coverage counsel, no.<br>25   Q.   Do you know if there was a discussion with<br><br>Page 245<br>1         outside coverage counsel concerning the<br>2         request for reconsideration?<br>3    A.   I don't know whether Pamela did or did not.<br>4    Q.   Did you ever tell Ms. Johnson that she should<br>5         run the re -- request for reconsideration of<br>6         the denial letter by outside coverage<br>7         counsel?<br>8    A.   I don't -- I don't remember asking her that,<br>9         no.<br>10   Q.   Did you ever discuss the August 13, 2014,<br>11         request for reconsideration of the denial<br>12         with Peter Williams?<br>13   A.   We may have had a discussion, Peter, Pamela<br>14         and I, but again, I don't recall anything --<br>15         any specific discussion.<br>16   Q.   When you say you may have had a discussion,<br>17         what do you base that on?<br>18   A.   I -- I just don't know. I -- I can't tell<br>19         you whether we did or did not.<br>20   Q.   Separate and apart from the discussion, did<br>21         you ever have any conversations with<br>22         Mr. Williams about any of the grounds that<br>23         were cited in the reconsideration letter as<br>24         to the analysis and as it was applied to this<br>25         claim? | Defendant's Objections:<br>Object (245:1-9)<br>Reference to legal opinion, relevance, attorney client; FRE 401, 403, 502<br><br>Plaintiffs' Response:<br>Relevant to bad faith; mere reference to legal opinion or attorney-client communications not privileged. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 246 | |
| 3          THE WITNESS: Are you asking me | |
| 4          whether I had discussions with Peter just | |
| 5          about the policy language and the application | |
| 6          of it to the facts? | |
| 7   BY MS. COYOCA: | |
| 8   Q.   No, I'm -- I'm specifically asking with | |
| 9          respect to the grounds that are set forth in | |
| 10         the August 13, 2014, letter requesting that | |
| 11         OneBeacon reconsider its denial of the claim. | |
| 12         Did you ever discuss those grounds that were | |
| 13         cited in the letter with Mr. Williams? | |
| 14  A.   I don't recall. | |
| 15  Q.   Were you involved in drafting a response to | |
| 16         the August 13, 2014, letter? | |
| 17  A.   Pamela would have drafted it and I would | |
| 18         have -- would have looked at it, but I didn't | |
| 19         draft it. | |
| 20  Q.   Do you specifically recall reviewing a draft | |
| 21         of the reply? | |
| 22  A.   I don't specifically recall it, but I would | |
| 23         assume that I did. | |
| 24  Q.   How would you have received a copy of the | |
| 25         draft? Would it have been by e-mail? | |
| | |
| Page 247 | |
| 1   A.   I would guess, yes. | |
| 2   Q.   Do you recall if you proposed any revisions | |
| 3          to the reply letter? | |
| 4   A.   I don't -- I don't remember, no. | |
| 5   Q.   With respect to the discussion that is set | |
| 6          forth on page 5 of the August 13, 2014, | |
| 7          letter, under section 4, "The certified acts | |
| 8          of terrorism coverage cap endorsement does | |
| 9          not preclude coverage the claim"; do you see | |
| 10         that section? | |
| 11  A.   I do. | |
| 12  Q.   Did you discuss this section of the letter | |
| 13         specifically with Ms. Johnson? | |
| 14  A.   I don't -- I don't recall the discussion, but | |

**162**

| Deposition Designation | Objection & Response |
|---|---|
| 15     I imagine we did, because we addressed it in<br>16     the -- in the responsive letter.<br>17   Q.   Did you -- did Ms. Johnson tell you that she<br>18       thought that the analysis of the August 13<br>19       letter was incorrect and that, in fact, the<br>20       endorsement did apply?<br>21   A.   I -- I don't recall that -- given that we<br>22       subsequently withdrew it, I don't think she<br>23       would have said that the endorsement applied.<br>24   Q.   Did you ever ask her why she had originally<br>25       invoked the endorsement when it didn't apply?<br><br>Page 248<br>3       THE WITNESS: I may have. I don't<br>4     recall.<br>5   BY MS. COYOCA:<br>6   Q.   Was there any disagreement between the two of<br>7     you as to whether the certified acts of<br>8     terrorism cap on losses endorsement did or<br>9     did not apply?<br>10   A.   I don't think there was.<br>11   Q.   Did you ever gain an understanding as to why<br>12       it is that Ms. Johnson invoked the certified<br>13       acts of terrorism cap on losses endorsement<br>14       in the initial denial letter?<br><br>17       THE WITNESS: No, I don't<br>18     remember.<br><br>Page 249<br>2   BY MS. COYOCA:<br>3   Q.   Did you ever have a conversation with<br>4       Ms. Johnson as to whether an entity that had<br>5       been designated by the U.S. government as a<br>6       terrorist organization could also be<br>7       considered a semi-sovereign state?<br><br>11       THE WITNESS: I don't -- yeah, I | |

| Deposition Designation | Objection & Response |
|---|---|
| 12    don't remember ever having a discussion on<br>13    that particular issue.<br>14  BY MS. COYOCA:<br>15  Q.  Did you ever ask Ms. Johnson for legal<br>16    authority for the proposition that a<br>17    terrorist organization could also be<br>18    considered a semi-sovereign state?<br><br>22       THE WITNESS: Pamela did the<br>23    research, and based on her research and<br>24    analysis, again, we came to the conclusion<br>25    that -- that Hamas could be considered a<br><br>Page 250<br>1    quasi. And so did I expressly ask her that,<br>2    no. But based on our research, we reached<br>3    that conclusion.<br>4  BY MS. COYOCA:<br>5  Q.  I'm specifically focusing, though, on whether<br>6    you ever asked her for legal authority on<br>7    that specific proposition?<br>8  A.  No, I didn't.<br>9  Q.  Did you ever look for any legal authority for<br>10    the proposition that an entity that was a<br>11    terrorist organization could also be<br>12    considered a semi-sovereign?<br><br>16       THE WITNESS: No, I did not.<br>17       MS. COYOCA: Okay.<br>18  BY MS. COYOCA:<br>19  Q.  I want to go to a document that was<br>20    previously marked as Exhibit 20, and it's a<br>21    September 9, 2014, letter from Pamela Johnson<br>22    to Lucia Coyoca, and it's labeled Bates<br>23    control ATL000705 through 708.<br>24       And just let me know when you're<br>25    ready for questions, Ms. Johnson. Excuse me, | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 251 | |
| 1     Ms. Gooley. | |
| 2  A.  Okay. | |
| 3  Q.  Thank you. | |
| 4  A.  You're welcome. (Reviews document.) | |
| 5  Q.  Ready for questions? | |
| 6  A.  Yes. | |
| 7  Q.  Have you seen this letter before? | |
| 8  A.  Yes. | |
| 9  Q.  When did you first see it? | |
| 10  A.  I -- my guess is I -- I would have seen it | |
| 11     before it went out, so I can't tell you | |
| 12     exactly what day that was, but it would have | |
| 13     been before -- it would have been either on | |
| 14     September 9th, depending on when it went out, | |
| 15     or before that. | |
| 16  Q.  Now that you've reread the letter, do you | |
| 17     recall if you had any changes or revisions | |
| 18     for the letter? | |
| 19  A.  I don't recall any changes. | |
| 20  Q.  Did you discuss the letter with Ms. Johnson | |
| 21     before it was sent? | |
| 22  A.  I think I would have discussed it before it | |
| 23     was drafted, and then, yeah, we would have | |
| 24     had a discussion before it went out. | |
| 25  Q.  So after it was drafted you believe you had a | |
| | |
| Page 252 | |
| 1     discussion with her as well? | |
| 2  A.  I would -- yes, yes, because I would have | |
| 3     looked at it and let her know if I had | |
| 4     revisions or not. | |
| | |
| 21  Q.  So this is a letter that Ms. Johnson sent to | |
| 22     Ms. -- to myself, correct? | |
| 23  A.  Correct. | |
| 24  Q.  All right. And you pointed out that the | |
| 25     header of each of the pages appears to | |

**165**

| Deposition Designation | Objection & Response |
|---|---|
| Page 253 | |
| 1      indicate that they're all page 3, correct? | |
| 2  A.  Correct. | |
| 3  Q.  All right. So -- so looking at the Bates | |
| 4      control label numbers, 708, the last page of | |
| 5      the letter, the paragraph that begins, "You | |
| 6      seem to assert"; do you see that? | |
| 7  A.  I do. | |
| 8  Q.  Could you please read that sentence out loud? | |
| 9  A.  "You seem to assert that a government that is | |
| 10     deemed to be a terrorist organization cannot | |
| 11     have sufficient sovereignty to fall within | |
| 12     the war exclusion." | |
| 13  Q.  Okay. Focusing specifically on legal | |
| 14     authority, did you look at any legal | |
| 15     authority to support that proposition? | |
| | |
| Page 254 | |
| 5  Q.  Did you look at any legal authority for the | |
| 6     proposition that a government that is deemed | |
| 7     to be a terrorist organization can also have | |
| 8     sufficient sovereignty to fall within the war | |
| 9     exclusion? | |
| | |
| 13     THE WITNESS: I don't recall | |
| 14    looking at anything specific, but what it's | |
| 15    stating is that a terrorist organization can | |
| 16    still be -- can be a sovereignty, and then it | |
| 17    refers to North Korea and Saddam Hussein, | |
| 18    which are -- | |
| 19     MS. COYOCA: Right. | |
| 20     THE WITNESS: Yeah. | |
| 21  BY MS. COYOCA: | |
| 22  Q.  I see the words that are written there, but | |
| 23     what I'm specifically asking is: Did you | |
| 24     read any cases that stood for that | |
| 25     proposition that you just indicated? | |
| | |
| Page 255 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1   A.  I myself did not read any cases.<br>2   Q.  Did you ask Ms. Johnson to research and<br>3        provide some legal authority for the<br>4        proposition?<br>5   A.  For the proposition in the first sentence?<br>6   Q.  Yes, that a terrorist organization could also<br>7        have sufficient sovereignty to fall within<br>8        the war exclusion?<br><br>20  A.  Whether I asked her for authority --<br>21  Q.  Yes.<br>22  A.  -- as whether or not a terrorist organization<br>23       can be a sovereignty or fall within the war<br>24       exclusion?<br>25  Q.  Yes.<br><br>Page 256<br>1   A.  No.<br>2   Q.  Further on in that paragraph, beginning with<br>3        the sentence, "Further, as explained above";<br>4        do you see that?<br>5   A.  I do.<br>6   Q.  Could you read that portion of the paragraph<br>7        through to the conclusion of the paragraph?<br>8   A.  Sure. "Further, as explained above, the<br>9        Israeli government participated in the<br>10       conflicts and invaded Gaza. There is no<br>11       question that the Israeli government is<br>12       identified by the majority of the world<br>13       governments as a legitimate sovereign, not a<br>14       terrorist organization."<br>15  Q.  Is it OneBeacon's position, based on your<br>16       understanding, that in order for the war<br>17       exclusion to -- to apply, it was sufficient<br>18       for there to be only one sovereign government<br>19       involved in the hostilities?<br>20  A.  Are you talking about the prong 1 of the war<br>21       exclusion, war or --<br>22  Q.  Prong 1.<br>23  A.  War -- I mean, prong 1, I don't -- I don't |  |

**167**

| Deposition Designation | Objection & Response |
|---|---|
| 24 think one necessarily has to be -- whether<br>25 it's sufficient to just have one as a<br><br>Page 257<br>1 sovereignty?<br>2 Q. Uh-huh.<br>3 A. It could be, yes.<br>4 Q. Is it OneBeacon's position that it is<br>5 sufficient to meet the definition of war, as<br>6 used in the first prong of the exclusion, if<br>7 only one of the entities is a quasi<br>8 sovereign?<br><br>13 THE WITNESS: I think OneBeacon's<br>14 position is outlined in this letter and also<br>15 in the earlier letter as to why the<br>16 war-related exclusions apply.<br>17 MS. COYOCA: Right.<br>18 BY MS. COYOCA:<br>19 Q. I'm just trying to gain an understanding of<br>20 why there was a reference made to just the<br>21 Israeli government being involved in the<br>22 hostilities. Do you know why she used that<br>23 language as opposed to discussing that there<br>24 were two parties involved in the hostilities<br>25 in those particular sentences?<br><br>Page 260<br>11 MS. COYOCA: Exhibit 35 is an<br>12 e-mail exchange that's labeled Bates control<br>13 AONNBCU0000079.<br>14 (Whereupon, Exhibit 35 was<br>15 marked for identification.)<br>16 THE WITNESS: (Reviews document.)<br>17 BY MS. COYOCA:<br>18 Q. Let me know when you're ready for questions.<br>19 A. I'm ready.<br>20 Q. Okay. So there are three e-mails that appear<br>21 on this Exhibit 35. You are not, I don't | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br>Object (260:11-25)<br>Relevance; hearsay;<br>foundation; prejudicial; FRE<br>401, 403, 801, 803<br><br>Plaintiffs' Response:<br>Relevant to bad faith;<br>offered for non-hearsay<br>purpose; foundation present;<br>statement of party opponent;<br>discussing business record |

**168**

| Deposition Designation | Objection & Response |
|---|---|
| 22     believe, indicated as a to, from or a cc.<br>23     However, in the middle e-mail from<br>24     Susan Weiss sent Friday, October 10, to<br>25     Andrea Garber, Kurt Ford, the subject line<br><br>Page 261<br>1     reads, "Forward Theresa Gooley's contact"; do<br>2     you see that?<br><br>6        THE WITNESS: (Reviews document.)<br>7     The e-mail dated October 10th just indicates,<br>8     "FYI," that they received a call from me, and<br>9     that -- or, excuse me, that Susan received a<br>10     call from me and she -- and then I had<br>11     asked -- and I asked her to call me back.<br>12        MS. COYOCA: Right, that's the<br>13     e-mail that I'm speaking about.<br>14        THE WITNESS: Yeah, right.<br>15        MS. COYOCA: Okay.<br>16 BY MS. COYOCA:<br>17 Q.  So with respect to that e-mail, is it<br>18     correct, do you believe that you made a phone<br>19     call to Ms. Weiss on October 10?<br>20 A.  Yeah, if -- I mean, I don't recall it, but if<br>21     it's in there, yeah, I imagine that I did.<br>22 Q.  And do you know why you were calling<br>23     Ms. Weiss?<br>24 A.  I don't -- I don't specifically know. But<br>25     when I'm looking at Kurt Ford, I'm thinking<br><br>Page 262<br>1     that it probably had something to do with the<br>2     Slap claim.<br>3 Q.  So you think that this October 10th call<br>4     concerned the Slap claim, not Dig?<br>5 A.  Again, I -- I don't remember, but I thought<br>6     Kurt Ford was the director of Slap, of the<br>7     mini series Slap. | <br><br><br><br>Defendant's Objections:<br>Object (261:1-2, 6-25)<br>Relevance; hearsay;<br>foundation; prejudicial; FRE 401, 403, 801, 803<br><br>Plaintiffs' Response:<br>Relevant to bad faith;<br>offered for non-hearsay purpose; foundation present;<br>statement of party opponent;<br>discussing business record<br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br>Object (262:1-25)<br>Relevance; hearsay;<br>foundation; prejudicial; FRE 401, 403, 801, 803<br><br>Plaintiffs' Response:<br>Relevant to bad faith; |

| Deposition Designation | Objection & Response |
|---|---|
| 8  Q.  Okay.<br>9        MS. COYOCA: I want to mark as<br>10    Exhibit 36 an e-mail chain that is labeled<br>11    AONNBCU0003533 through 3534.<br>12       (Whereupon, Exhibit 36 was<br>13    marked for identification.)<br>14  BY MS. COYOCA:<br>15  Q.  Let me know when you're ready for questions.<br>16  A.  Okay. (Reviews document.) I'm done reading<br>17    it.<br>18  Q.  Okay. So I want to direct your attention to<br>19    the first e-mail in the chain, which would be<br>20    the last in the document, the one that was<br>21    sent from Susan Weiss, Monday, October 13,<br>22    2014, at 12:53 p.m., to Andrea Garber and<br>23    Kurt Ford cc'ing Deborah Kizner, subject,<br>24    "Dig claim." Do you see that?<br>25  A.  Yes. | offered for non-hearsay purpose; foundation present; statement of party opponent |
| Page 263<br>1  Q.  Okay. In that e-mail Ms. Weiss makes<br>2    reference to a phone -- a game of phone tag<br>3    that she had been playing with you and that<br>4    she had finally connected with you that<br>5    particular morning. Do you see that?<br>6  A.  I do.<br>7  Q.  Is that -- is that accurate, do you believe<br>8    you had a conversation with Ms. Weiss on<br>9    October 13?<br>10  A.  I don't recall it, but I'm sure -- I imagine<br>11    if it -- she indicates it in the e-mail, it<br>12    happened, yes.<br>13  Q.  Okay. And then beginning with the sentence,<br>14    "She apologized profusely for this claim<br>15    going sideways," could you please read that<br>16    -- the rest of that paragraph out loud?<br>17  A.  Beginning with, "She apologized," or just<br>18    after that?<br>19  Q.  Beginning with, "She apologized."<br>20  A.  "She apologized profusely for this claim | Defendant's Objections:<br>Object (263:1-25)<br>Relevance; hearsay; foundation; prejudicial; FRE 401, 403, 801, 803<br><br>Plaintiffs' Response:<br>Relevant to bad faith; offered for non-hearsay purpose; foundation present; statement of party opponent |

| Deposition Designation | Objection & Response |
|---|---|
| 21    going sideways and very much wanted to get<br>22    things back on track. I told that the<br>23    meeting with Peter was a step in the right<br>24    direction. I told her that I felt litigation<br>25    was a last resort for NBC and most probably | |
| Page 264<br>1    OBI, and she agreed. I said I felt it would<br>2    be good thing to get around a table and start<br>3    a dialog, and again she agreed. She thought<br>4    Peter would be out of the office" --<br>5  Q.  Oh, that's okay.<br>6  A.  All right.<br>7  Q.  Okay. So did you have a conversation with<br>8    Ms. Weiss on or about October 13 where you<br>9    indicated to Ms. Weiss that you wanted to get<br>10   the claim -- the claim back on track or the<br>11   relationship back on track?<br><br>14      THE WITNESS: I'm -- I don't -- I<br>15   mean, I -- I obviously had a conversation. I<br>16   mean, this is Susan's characterization of the<br>17   conversation. I do remember there were some<br>18   concerns that NBC raised, and so I imagine<br>19   that was what our discussion was about.<br>20  BY MS. COYOCA:<br>21  Q.  What concerns do you recall NBC raising?<br>22  A.  I think that NBC had some concerns with<br>23   Pamela.<br>24  Q.  And what concerns were those?<br>25  A.  I -- I think, if I recall, you know, there is | Defendant's Objections:<br>Object (264:1-11, 14-25)<br>Relevance; hearsay;<br>foundation; prejudicial; FRE<br>401, 403, 801, 803<br><br>Plaintiffs' Response:<br>Relevant to bad faith;<br>offered for non-hearsay<br>purpose; foundation present;<br>statement of party opponent |
| Page 265<br>1    a lot of strong personalities, and -- and<br>2    Pamela has a strong personality, and so I<br>3    think they may have taken offense at some<br>4    things.<br>5  Q.  Do you recall any specifics?<br>6  A.  Nothing specific, no. | Defendant's Objections:<br>Object (265:1-25)<br>Relevance; hearsay;<br>foundation; prejudicial; FRE<br>401, 403, 801, 803<br><br>Plaintiffs' Response: |

**171**

| Deposition Designation | Objection & Response |
|---|---|
| 7  Q.  Who conveyed to you that there were concerns<br>8      about Ms. Johnson?<br>9  A.  You know, I don't recall. I would -- I would<br>10     assume it was Susan and -- that's what I<br>11     would assume.<br>12 Q.  Did you apologize during the call of the<br>13     claim going sideways?<br>14 A.  I'm sure I apologized if they were offended<br>15     by the behavior of OneBeacon.<br>16 Q.  Got it. Did you indicate that you wanted to<br>17     get things back on track during the call?<br>18 A.  I'm sure that I -- yeah, I'm sure that what I<br>19     said is, you know, let's see if we can, you<br>20     know, get this thing, exactly that words,<br>21     back on track and see if we can build the<br>22     relationship again.<br>23 Q.  Okay. At that point in time, the<br>24     conversations that were going on around<br>25     October 13, did you think that one of the | Relevant to bad faith; offered for non-hearsay purpose; foundation present; statement of party opponent |
| <u>Page 266</u><br>1      ways to get the -- the relationship back on<br>2      track would be to pay some amount on the Dig<br>3      claim?<br><br>6          THE WITNESS: When I think back to<br>7      that period of time in, you know, the<br>8      relationship and the issues, I don't think my<br>9      thought was to pay something on the Dig<br>10     claim, but to do what I could on my end to<br>11     make sure that -- that we worked with NBC on<br>12     existing claims, the -- the -- you know,<br>13     sitting around the table is to actually maybe<br>14     personally sit down with NBC and discuss Dig<br>15     as well and -- but I don't think at any time<br>16     my thought to get it on track was to pay the | <u>Defendant's Objections:</u><br>Object (266:1-3, 6-17)<br>Relevance; hearsay; foundation; prejudicial; FRE 401, 403, 801, 803<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; offered for non-hearsay purpose; foundation present; statement of party opponent |

| Deposition Designation | Objection & Response |
|---|---|
| 17      Dig claim. | |
| | |
| Page 276 | Defendant's Objections: |
| 15      MS. COYOCA: I want to mark as | Object (276:15-25) |
| 16      Exhibit 37 an e-mail with Bates control | Nonrenewal, not relevant; |
| 17      ATL002459. | prejudicial  FRE 401, 402, |
| 18      (Whereupon, Exhibit 37 was | 801, 802 |
| 19      marked for identification.) | |
| 20      THE WITNESS: I've read the | Plaintiffs' Response: |
| 21      e-mail. | Relevant to bad faith; |
| 22  BY MS. COYOCA: | offered for non-hearsay |
| 23  Q.  Do you recognize this document? | purpose; statement of party |
| 24  A.  I -- I mean, I don't remember it, but it -- I | opponent |
| 25      obviously sent it to Peter. | |
| | |
| Page 277 | Defendant's Objections: |
| 1  Q.  Do you have any reason to believe that you | Object (277:1-25) |
| 2      did not send the e-mail on or about the date | Nonrenewal, not relevant; |
| 3      that's reflected, March 9? | prejudicial  FRE 401, 402, |
| 4  A.  No. | 801, 802 |
| 5  Q.  Okay. Why were you sending Mr. Williams | |
|      the | Plaintiffs' Response: |
| 6      e-mail? | Relevant to bad faith; |
| 7  A.  I -- I -- I honestly can't remember why. I | offered for non-hearsay |
| 8      was -- obviously, it must have had something | purpose; statement of party |
| 9      to do with NBC, but I don't remember why I | opponent |
| 10      was sending the e-mail. | |
| 11  Q.  Do you recall if it had anything to do with | |
| 12      the Dig claim? | |
| 13  A.  I don't. | |
| 14  Q.  Do you recall if it had anything to do with | |
| 15      efforts to streamline the claims process? | |
| 16  A.  It may have. I -- I simply don't recall. I | |
| 17      apologize. | |
| 18  Q.  I'm entitled to probe your recollection, so I | |
| 19      just want to ask a few follow-up questions. | |
| 20      Do you know if the e-mail was being | |
| 21      sent in order to discuss NBC Universal and | |
| 22      renewal of the policy? | |

**173**

| Deposition Designation | Objection & Response |
|---|---|
| 23  A.   I know it -- that was not why -- I would not<br>24        have reached out to Susan to discuss renewal<br>25        of the NBC policy.<br><br>Page 278<br>1   Q.   Okay.<br>2            MS. COYOCA: I want to mark as<br>3        Exhibit 38 an e-mail exchange that's got<br>4        Bates control label ATL002435 through 2431. | Defendant's Objections:<br>Object (278:1-4)<br>Nonrenewal, not relevant;<br>prejudicial  FRE 401, 402,<br>801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith;<br>offered for non-hearsay<br>purpose; statement of party<br>opponent |
| Page 279<br>10           So can you please turn to the e-mail<br>11       that begins on page 2436 from Susan Weiss to<br>12       Theresa Gooley, Daniel Gutterman with a cc<br>         to<br>13       Deborah Kizner on -- it's dated November 5 at<br>14       5:08 p.m.<br>15  A.   Okay.<br>16  Q.   Do you have it?<br>17  A.   Yes.<br>18  Q.   Okay. In this e-mail Ms. Weiss makes<br>19       reference to a discussion that was had the<br>20       prior -- the day before, "Yesterday"; do you<br>21       see that?<br>22  A.   Yes.<br>23  Q.   Do you recall discussing the NBC Universal<br>         TV<br>24       claims process on November 4th?<br>25  A.   I don't have a specific recollection, but if | Defendant's Objections:<br>Object (279:10-25)<br>Nonrenewal, loses, other<br>claims; not relevant,<br>prejudicial; hearsay,<br>foundation FRE 401, 403,<br>801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith;<br>offered for non-hearsay<br>purpose; foundation present;<br>statement of party opponent |
| Page 280<br>1        it's referenced in there, then I believe we | Defendant's Objections:<br>Object (280:1-25) |

**174**

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 2    had that discussion.<br>3  Q. Do you recall when the meeting actually took<br>4    place concerning the Dig claim?<br>5  A. It was the 3rd.<br>6  Q. Okay. So did you meet in person with<br>7    Ms. Weiss on NBC Universal separate and apart<br>8    from the -- the Dig larger meeting?<br>9  A. We went with her to the Dig meeting and<br>10   talked to her then and talked to her after.<br>11   I can't remember if we had a subsequent<br>12   meeting the following day.<br>13  Q. So what was the purpose in discussing the<br>14   claims process, from your perspective?<br>15  A. I think the purpose, again, is -- I think<br>16   with an insured and insurer it's like a<br>17   bordereau, you're always trying to balance<br>18   how much information you need with the<br>19   imposition it places on the client. And in<br>20   this case, I think NBC was -- was getting a<br>21   little bit upset because of a number of<br>22   questions that OneBeacon was asking, so I was<br>23   trying to get -- get together with Susan and<br>24   see if we could talk about the claims process<br>25   again and put something in place that was | Nonrenewal, loses, other claims; not relevant, prejudicial; hearsay, foundation FRE 401, 403, 801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith; offered for non-hearsay purpose; foundation present; statement of party opponent |
| Page 281<br>1   agreeable to everybody.<br>2  Q. Okay. In the -- the second page of this<br>3   e-mail, the one that's labeled 2437, there's<br>4   a paragraph that reads, "One last thing"; do<br>5   you see that?<br>6  A. I do.<br>7  Q. Can you read that paragraph out loud?<br>8  A. Yes. "One last thing, on October 10th,<br>9   Pamela advised in an e-mail, also forwarded<br>10  to you, that she would begin issuing payments<br>11  the following week on the 2012 claims that<br>12  had been audited and accepted. We have not | Defendant's Objections:<br>Object (281:1-25)<br>Nonrenewal, loses, other claims; not relevant, prejudicial; hearsay, foundation FRE 401, 403, 801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith; offered for non-hearsay purpose; foundation present; statement of party opponent |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 13     received any of those payments yet. See my<br>14     earlier e-mail sent to you today."<br>15  Q.  Do you recall discussing with Ms. Weiss in<br>16     November of 2014 that there were payments<br>17     that were still outstanding on 2012 claims<br>18     that had not yet been paid?<br>19  A.  I don't recall the specific discussion, but I<br>20     know there were -- there were outstanding<br>21     payments for the 2012 claims.<br>22  Q.  Do you know why those payments had not yet<br>23     been made?<br>24  A.  I know that it took a long time to get the<br>25     information on these particular -- on the<br><br>Page 282<br>1     particular claims. I believe they were both<br>2     Sandy and -- and the Smash claims. And so<br>3     when we had buttoned it all up, which I think<br>4     was the fall of 2014, then we were going to<br>5     start issuing payment, so --<br>6  Q.  Okay. So I just want to make sure I<br>7     understand.<br>8       When you refer to Sandy, are you<br>9     referring to claims that were made as a<br>10    result of Hurricane Sandy that occurred in<br>11    2012?<br>12  A.  Yes.<br>13  Q.  And there were production claims that were<br>14    made as a result of Hurricane Sandy; is that<br>15    correct?<br>16  A.  That's my recollection, yes.<br>17  Q.  And, ultimately, in order for there to be a<br>18    payout on those claims, that means that<br>19    NBC Universal would have had to have exceeded<br>20    its retention amount for the 2012 policy<br>21    year; is that correct?<br>22  A.  That's my understanding, yes.<br>23  Q.  You also referred to the Smash claim. What<br>24    was the Smash claim? | <br><br><br><br><br><br><br><br><br><br><br><br><br><u>Defendant's Objections:</u><br>Object (282:1-25)<br>Nonrenewal, loses, other<br>claims; not relevant,<br>prejudicial; hearsay,<br>foundation FRE 401, 403,<br>801, 802<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith;<br>offered for non-hearsay<br>purpose; foundation present;<br>statement of party opponent |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 25  A.   I think they were -- I think they were | |
| | |
| Page 283 | Defendant's Objections: |
| 1        plural. I don't -- I -- I vaguely think it | Object (283:1-25) |
| 2        may have -- may have had to do with just | Nonrenewal, loses, other |
| 3        delays in production, and I think it involved | claims; not relevant, |
| 4        one -- one of the actresses and some sickness | prejudicial; hearsay, |
| 5        as well. | foundation FRE 401, 403, |
| 6   Q.   Okay. And did one of the Smash claims have | 801, 802 |
| 7        to do with a delay in production associated | |
| 8        with a death in the family of the one of the | Plaintiffs' Response: |
| 9        actors as well? | Relevant to bad faith; |
| 10  A.   I -- I don't remember the specifics. | offered for non-hearsay |
| 11  Q.   In order for there to be -- and, I'm sorry, | purpose; foundation present; |
| 12       the Smash claims, were those also | statement of party opponent |
| 13       attributable to the 2012 policy year? | |
| 14  A.   If I recall that's -- yes, they fell in the | |
| 15       2012. | |
| 16  Q.   Okay. And, again, in order to -- for the | |
| 17       claims to be paid out on -- by OneBeacon, | |
| 18       NBC Universal would have had to have exceeded | |
| 19       it's self-insured retention for that policy | |
| 20       year; is that correct? | |
| 21  A.   That's correct. | |
| 22  Q.   Did OneBeacon pay out on any claims prior to | |
| 23       the claims that were asserted for the 2012 | |
| 24       policy year? | |
| 25  A.   I don't know. | |
| | |
| Page 284 | Defendant's Objections: |
| 1   Q.   Did you look at the totality of claims that | Object (284:1-25) |
| 2        had been asserted by NBC Universal going back | Nonrenewal, loses, other |
| 3        to the inception of the first policy as of | claims; not relevant, |
| 4        January 1, 2010, forward, in the work that | prejudicial; hearsay, |
| 5        you were doing with respect to the Dig claim? | foundation FRE 401, 403, |
| 6   A.   I wouldn't have looked at the other claims, | 801, 802 |
| 7        no. | |
| | Plaintiffs' Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 8   Q.   Did you look at whether or not OneBeacon had <br> 9     exceeded its self-insured retention? Excuse <br> 10     me. <br> 11       Would -- would you -- did you look <br> 12     at whether or not NBC Universal had exceeded <br> 13     its self-insured retention in any of the <br> 14     policy years prior to the 2013 -- I'm sorry, <br> 15     the 2014, 2015 policy? <br> 16   A.   Are you asking me just generally if I looked <br> 17     at -- <br> 18   Q.   No. In the -- in the context of the work <br> 19     that you did on Dig, did you ever look at <br> 20     whether or not NBC Universal had met or was <br> 21     close to or exceeded its self-insured <br> 22     retention for that policy year? <br> 23   A.   No. <br> 24   Q.   In Ms. Weiss's e-mail to you and to <br> 25     Danny Gutterman, she indicates that there is | Relevant to bad faith; offered for non-hearsay purpose; foundation present; statement of party opponent |
| <u>Page 285</u> <br> 1     a quarterly log that was attached to the <br> 2     e-mail. Do you see that? <br> 3   A.   Let's see. <br> 4   Q.   I'm looking at the sentence that reads, "Due <br> 5     to the transition of Andrea moving to the <br> 6     risk management side." Do you see that? <br> 7   A.   Oh, yes, yes. Oh, yes, yes, she indicates <br> 8     that she attached it for our review. <br> 9   Q.   Did you review the NBC Universal claims log <br> 10     that was attached to the e-mail? <br> 11   A.   My guess is that I did. I don't have any <br> 12     specific recollection today. <br> 13   Q.   If you look at the document number, which is <br> 14     out of order from the e-mail, that reads <br> 15     ATL002429, at the title -- the title reads, <br> 16     "2014-6/30/2015 NBCU TV claims-OneBeacon last <br> 17     updated 11/3/14"; do you see that? | <u>Defendant's Objections:</u> <br> Object (285:1-25) Nonrenewal, loses, other claims; not relevant, prejudicial; hearsay, foundation FRE 401, 403, 801, 802 <br><br> <u>Plaintiffs' Response:</u> <br> Relevant to bad faith; offered for non-hearsay purpose; foundation present; statement of party opponent |

| Deposition Designation | Objection & Response |
|---|---|
| 18  A.   I do. | |
| 19  Q.   Do you recognize this document? | |
| 20  A.   Yeah, it looks like a spreadsheet that had | |
| 21         the NBC claims. | |
| 22  Q.   Is it your understanding that this is the | |
| 23         document that was attached to the e-mail that | |
| 24         Ms. Weiss referenced? | |
| 25  A.   I don't know whether this is the document. | |
| | |
| Page 286 | Defendant's Objections: |
| 1         It -- it looks similar to the -- to the | Object (286:1-25) |
| 2         documents that -- that -- or it looks | Nonrenewal, loses, other |
| 3         similar, excuse me, to the spreadsheet that | claims; not relevant, |
| 4         outlines the existing claims, so most likely. | prejudicial; hearsay, |
| 5  Q.   In the cover e-mail that Ms. Weiss sent, in | foundation FRE 401, 403, |
| 6         the second paragraph she indicates, begin | 801, 802 |
| 7         quotes, "NBCU TV has always wanted to have | |
| 8         their claims loosely monitored by OBE. And | Plaintiffs' Response: |
| 9         early in the relationship it was agreed with | Relevant to bad faith; |
| 10        Peter and Michael Arevalo that they would | offered for non-hearsay |
| 11        only be interested in looking closely at | purpose; foundation present; |
| 12        claims that exceeded 250,000," close quotes. | statement of party opponent |
| 13        Do you see that? | |
| 14  A.   I do. | |
| 15  Q.   Who is the Peter that's referenced in the | |
| 16        e-mail? Is that Peter Williams? | |
| 17  A.   Yes. | |
| 18  Q.   Okay. And who is Michael Arevalo? | |
| 19  A.   It's Michael Arevalo, but Michael Arevalo | |
| 20        worked in the entertainment group initially. | |
| 21        I'm trying to think, his role has kind of | |
| 22        changed. I think he was a claim handler at | |
| 23        one point and then moved over to the | |
| 24        underwriting side. | |
| 25  Q.   Did you agree with Ms. Weiss's statement that | |
| | |
| Page 287 | Defendant's Objections: |
| 1         was made in that first sentence that there | Object (287:1-3, 6-25) |

**179**

| Deposition Designation | Objection & Response |
|---|---|
| 2    had been this agreement with Peter and<br>3    Michael?<br><br>6       THE WITNESS: I mean, I -- I --  I<br>7    had no personal knowledge whether there --<br>8    there was or wasn't an agreement, but I would<br>9    take her at her word.<br>10  BY MS. COYOCA:<br>11  Q.  Did you ask Peter Williams about that<br>12    statement?<br>13  A.  I don't recall asking him expressly about<br>14    that statement, no.<br>15  Q.  Were you seeking somehow to change that<br>16    process when you were discussing the claims<br>17    review process with Ms. Weiss?<br>18  A.  I think that -- yeah, I think we were --<br>19    loosely monitored, I think that we felt like<br>20    we weren't getting enough information and<br>21    enough information in a timely fashion, and<br>22    so I think we wanted -- again, we wanted to<br>23    balance the interest of NBC, but also those<br>24    of OneBeacon to get timely -- timely and<br>25    meaningful information so we can analyze the | Nonrenewal, loses, other claims; not relevant, prejudicial; hearsay, foundation FRE 401, 403, 801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith; offered for non-hearsay purpose; foundation present; statement of party opponent |
| Page 288<br>1    claims as well.<br>2  Q.  The e-mail that follows is an e-mail that<br>3    appears to be from you to Susan and Danny --<br>4    Daniel Gutterman cc'ing Deborah Kizner sent<br>5    on Friday 11/7/2014 at 12:03 a.m.; do you see<br>6    that?<br>7  A.  I do.<br>8  Q.  Did you write this e-mail?<br>9  A.  I assume so, yes.<br>10  Q.  In the e-mail, in the -- in the middle<br>11    paragraph, you indicate -- well, I'm sorry,<br>12    why don't you just read the -- the paragraph<br>13    beginning with, "As you indicated."<br>14  A.  "As you indicated, OneBeacon would like to<br>15    continue to receive specific notice of those | Defendant's Objections:<br>Object (288:1-25)<br>Nonrenewal, loses, other claims; not relevant, prejudicial; hearsay, foundation FRE 401, 403, 801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith; offered for non-hearsay purpose; foundation present; statement of party opponent |

| Deposition Designation | Objection & Response |
|---|---|
| 16     claims which are greater than 250,000 or<br>17     claims that have other indicia that warrant<br>18     specific notice. If NBC would be good enough<br>19     to continue to provide notice of these claims<br>20     directly to Danny Gutterman, and now at<br>21     Lucy Lopez, that would be great."<br>22   Q.   Okay. With respect to the reference to<br>23     claims that are greater than 250,000, was it<br>24     your intent to continue to focus on -- have<br>25     OneBeacon focus on those claims that<br>     exceeded | |
| Page 289<br>1     that amount --<br><br>3   BY MS. COYOCA:<br>4   Q.   -- as opposed to lower value claims?<br><br>7        THE WITNESS: I think my intent<br>8     is, A, I wanted -- we wanted information on<br>9     claims that were greater than 250,000, or, B,<br>10    claims that have other indicia that warrant<br>11    specific notice, so that being it may be<br>12    greater than 2, it may be less, but given the<br>13    particular facts, they should let OneBeacon<br>14    know about it.<br>15   BY MS. COYOCA:<br>16   Q.   What other indicia were you referencing that<br>17    would warrant specific notice?<br>18   A.   It really depends. I mean, I think you get<br>19    that sixth sense for something that may or<br>20    may not end up being a very significant<br>21    claim, and -- and so that's what we're<br>22    looking at. Again, you know it when you see<br>23    it.<br>24   Q.   Are you done?<br>25   A.   I am.<br><br>Page 290 | Defendant's Objections:<br>Object (289:1, 3-4, 7-25)<br>Nonrenewal, loses, other<br>claims; not relevant,<br>prejudicial; hearsay,<br>foundation FRE 401, 403,<br>801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith;<br>offered for non-hearsay<br>purpose; foundation present;<br>statement of party opponent<br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 1 Q. Okay. When you referenced -- when you used<br>2     the words, "Other indicia," to Ms. Weiss, did<br>3     you have -- had you had a conversation with<br>4     her previously about what you were referring<br>5     to?<br>6 A. I don't -- I don't recall if I had a<br>7     conversation. Again, I wanted the -- I<br>8     wanted the category to be broad in terms of<br>9     particular claims that, A, warrant, I use<br>10    other indicia, or would cause me to pause for<br>11    some reason or another. We want to know<br>12    about those and we want to know about them<br>13    right away.<br>14 Q. At some point during the policy period that<br>15    involves the Dig claim, the January 1, 2014,<br>16    through June 30, 2015, policy, did it become<br>17    apparent to you that the amount of claims was<br>18    going to exceed the self-insured retention on<br>19    the policy?<br>20 A. I -- I don't remember. I don't.<br>21 Q. Do you remember flagging that as an issue and<br>22    wanting to discuss it with Ms. Weiss?<br>23 A. I -- no, I don't remember.<br><br>Page 291<br>9      MS. COYOCA: I want to mark as<br>10   Exhibit 39 an e-mail exchange that is dated<br>11   June 1st and June 2nd, 2015, and it's got<br>12   Bates label ATL002495 through 2496.<br>13     (Whereupon, Exhibit 39 was<br>14     marked for identification.)<br>15     THE WITNESS: (Reviews document.)<br>16   I've read it.<br>17 BY MS. COYOCA:<br>18 Q. Ready for questions?<br>19 A. Yes, I am.<br>20 Q. Okay. The first e-mail in this exchange<br>21    appears to be the one from Wanda Phillips<br>22    that was sent to Peter Williams on June 1st | Object (290:1-23)<br>Nonrenewal, loses, other claims; not relevant, prejudicial; hearsay, foundation FRE 401, 403, 801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith; offered for non-hearsay purpose; foundation present; statement of party opponent<br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br>Object (291:9-25)<br>Nonrenewal, loses, other claims; not relevant, prejudicial; hearsay, foundation FRE 401, 403, 801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith; offered for non-hearsay purpose; foundation present; statement of party opponent |

| Deposition Designation | Objection & Response |
|---|---|
| 23      at 9:37 a.m.; do you see that?<br>24   A.   Yes. Yes, yes, uh-huh.<br>25   Q.   Okay. At the very end of that e-mail<br><br>Page 292<br>1        Ms. Phillips indicates, "Will Theresa be<br>2        available from claims on Tuesday, or Danny?<br>3        Who else should be in invited if anyone"; do<br>4        you see that?<br>5   A.   Yes, I do.<br>6   Q.   Mr. Williams responds and says, "Yes,<br>     Theresa<br>7        and Danny and Steve from claims." Do you<br>     see<br>8        that?<br>9   A.   I do see that.<br>10   Q.   And then Wanda Phillips' response to Peter,<br>11        and she also references Steve and Theresa.<br>12        Do you see that?<br>13   A.   I do. I do.<br>14   Q.   Okay. Are these references to Theresa<br>15        references to you, do you know?<br>16   A.   Yes, they are.<br>17   Q.   Okay. Does this refresh your recollection<br>18        that you were involved in conversations or<br>19        meetings in which renewal was discussed?<br>20   A.   This does.<br>21   Q.   Okay. What do you recall about this pre,<br>22        pre-meeting which took place before the<br>23        meeting with NBCU and Aon?<br>24   A.   I -- I -- I don't -- I actually really don't<br>25        recall anything about the pre, pre-meeting.<br><br>Page 293<br>1   Q.   Why were you invited, do you know?<br>2   A.   I think I was out there already out in L.A.,<br>3        but I -- I -- because underwriting invited us<br>4        to come, so...<br>5   Q.   Do you know why underwriting invited you | <br><br><br><u>Defendant's Objections:</u><br>Object (292:1-25)<br>Nonrenewal, loses, other<br>claims; not relevant,<br>prejudicial; hearsay,<br>foundation FRE 401, 403,<br>801, 802<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith;<br>offered for non-hearsay<br>purpose; foundation present;<br>statement of party opponent<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><u>Defendant's Objections:</u><br>Object (293:1-25)<br>Nonrenewal, loses, other<br>claims; not relevant,<br>prejudicial; hearsay,<br>foundation FRE 401, 403, |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| and<br>6     others from claims to come?<br>7  A.  I -- I don't -- I mean, I assume that Wanda<br>8     invited us in the event there were questions<br>9     about claims.<br>10  Q.  Did you attend the pre-meeting as well as the<br>11     meeting with NBCU and Aon?<br>12  A.  I don't remember a pre-meeting. If we had<br>13     one I would have been there. I vaguely<br>14     remember a meeting with Aon.<br>15  Q.  Okay. According to my reading of this e-mail<br>16     exchange, I believe there actually were three<br>17     meetings that were being discussed. There<br>18     was a meeting internally of OneBeacon folks,<br>19     and then there was going to be a meeting with<br>20     Susan Weiss of OneBeacon folks, and Susan<br>21     Weiss before the meeting with NBCU and<br>       Aon<br>22     and OneBeacon. Is that your recollection as<br>23     well?<br>24  A.  I'm not -- I guess -- I'll read through this<br>25     again. I -- I was thinking it was one -- two<br><br>Page 294<br>1     meetings, a pre-meeting and then a meeting<br>2     with Aon and NBC, but not --<br>3  Q.  Okay. Well, let's just walk through it.<br>4  A.  That's fine.<br>5  Q.  So -- so beginning with the paragraph that<br>6     says, "Basically, she is asking for a<br>7     heads-up on renewal terms"; do you see that?<br>8  A.  I do.<br>9  Q.  Okay. I'm sorry, before that, the paragraph<br>10     before that says, "Susan has requested a<br>11     pre-meeting before meeting with NBC." Do you<br>12     see that?<br>13  A.  I do, I do. Okay.<br>14  Q.  All right. And then in Mr. Williams' e-mail<br>15     he indicates, "Should we have a pre-meeting | 801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith;<br>offered for non-hearsay<br>purpose; foundation present;<br>statement of party opponent<br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br>Object (294:1-25)<br>Nonrenewal, loses, other<br>claims; not relevant,<br>prejudicial; hearsay,<br>foundation FRE 401, 403,<br>801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith;<br>offered for non-hearsay<br>purpose; foundation present;<br>statement of party opponent |

| Deposition Designation | Objection & Response |
|---|---|
| 16      to discuss their pre-meeting."<br>17   A.   Yes, okay.<br>18   Q.   And Ms. Phillips responds, "Yes, Peter, an<br>19         OBE pre-meeting is wise to have before<br>20         meeting with NBCU and Aon." Do you see<br>         that?<br>21   A.   I do, yes.<br>22   Q.   Okay. So does this refresh your recollection<br>23         that there were actually three different<br>24         meetings?<br>25   A.   It sounds like it, yes.<br><br>Page 295<br>1   Q.   All right. So what do you recall, if<br>2         anything, specifically about the first<br>3         meeting, which would have been the meeting<br>4         internal to just OneBeacon people before<br>5         meeting with Aon?<br>6   A.   I don't recall anything really with respect<br>7         to that.<br>8   Q.   Do you recall presenting any information with<br>9         respect to claims during that internal<br>10        OneBeacon meeting?<br>11   A.   I don't recall, no.<br>12   Q.   Do you know for a fact, do you recall<br>13         specifically that the meeting took place?<br>14         And I'm referring now to the internal to<br>15         OneBeacon meeting.<br>16   A.   I -- I don't remember. Peter is indicating<br>17         he'd like one. I assume one took place, but<br>18         I simply can't remember --<br>19   Q.   Okay.<br>20   A.   -- whether or not it did.<br>21   Q.   Do you recall the meeting that took place<br>22         with OneBeacon people and Aon, but not<br>23         NBC Universal?<br>24   A.   I -- I -- I vaguely remember sitting down<br>25         with Susan. | <br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br>Object (295:1-25)<br>Nonrenewal, loses, other<br>claims; not relevant,<br>prejudicial; hearsay,<br>foundation FRE 401, 403,<br>801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith;<br>offered for non-hearsay<br>purpose; foundation present;<br>statement of party opponent |

**185**

| Deposition Designation | Objection & Response |
|---|---|
| Page 296 | Defendant's Objections: |
| 1   Q.   What do you recall about that meeting? | Object (296:1-25) |
| 2   A.   Again, I don't -- I don't recall much. Maybe | Nonrenewal, loses, other |
| 3       Peter went through the terms of the renewal | claims; not relevant, |
| 4       or the quote. But, again, that's me | prejudicial; hearsay, |
| 5       guessing. I just don't remember. | foundation FRE 401, 403, |
| 6   Q.   Do you know if NBC Universal -- excuse me, if | 801, 802 |
| 7       OneBeacon renewed NBC Universal's policy | Plaintiffs' Response: |
| 8       after expiration on June 30, 2015? | Relevant to bad faith; |
| 9   A.   Yes. | offered for non-hearsay |
| 10   Q.   It was renewed? | purpose; foundation present; |
| 11   A.   No, it wasn't renewed. | statement of party opponent |
| 12   Q.   It was not renewed. | |
| 13       So when you indicate that Mr. | |
| 14       Williams would be going through terms for | |
| 15       renewal, was it your understanding as of | |
| 16       June 2nd, 2015, that OneBeacon was discussing | |
| 17       renewing the policy? | |
| 18   A.   I -- my understanding is that they were | |
| 19       discussing renewal under certain terms. | |
| 20   Q.   Is it your understanding that it was | |
| 21       NBC Universal that made the decision that it | |
| 22       no longer wanted to be insured by OneBeacon, | |
| 23       or was it OneBeacon's decision that it no | |
| 24       longer wanted to insure NBC Universal? | |
| 25   A.   I think ultimately NBC -- or, excuse me, | |
| | |
| Page 297 | Defendant's Objections: |
| 1       OneBeacon decided that it no longer wanted to | Object (297:1-2) |
| 2       continue that relationship. | Nonrenewal, loses, other |
| | claims; not relevant, |
| | prejudicial; hearsay, |
| | foundation FRE 401, 403, |
| | 801, 802 |
| | |
| | Plaintiffs' Response: |
| | Relevant to bad faith; |

| Deposition Designation | Objection & Response |
|---|---|
|  | offered for non-hearsay purpose; foundation present; statement of party opponent |

7060055/015825

**DANIEL SPENCER GUTTERMAN—February 3, 2017**

| Deposition Designation | Objection & Response |
|---|---|
| Plaintiff's Designation of Daniel Spencer Gutterman<br>8:20-25; 32:25-33:14; 35:17-36:1; 36:23-25; 37:16-38:22; 45:7-14; 64:20-65:2; 65:8-12; 65:15-16; 65:18-20; 89:7-20; 90:24-91:1; 91:20-25; 92:4-6; 92:13-23; 93:6-94:4; 94:23-95:20; 96:9-21; 97:22-98:2; 98:7-13; 107:20-24; 108:13-14; 108:18-109:5; 110:14-18; 111:17-112:19; 141:16-143:5; 143:14-21; 143:24-144:19; 144:22-23; 145:8-146:21; 147:2-21; 148:18-151:1; 151:4-152:3; 153:17-155:5; 155:14-157:7; 157:10-22; 158:1; 161:11-24; 162:3-4; 168:24-170:12; 171:12-173:23; 174:1-175:4; 175:15-176:9; 177:11-178:5; 180:2-16; 181:8-12; 181:16-17; 181:19-20; 181:25-182:3; 182:5-17; 182:21; 182:23-183:14; 184:14-17; 184:20; 185:7-22; 188:13-23; 189:17-23; 190:2-16; 190:22; 192:16-21; 193:10-12; 193:14; 193:16-194:10; 194:18-195:17; 196:18-197:4; 198:6-13; 198:16-200:6; 200:17-201:6; 201:23-206:3; 206:23-25; 207:7-23; 208:11-14; 208:18-21; 208:25-211:10; 215:12-216:2; 216:5-6; 216:23-24; 217:1; 217:3; 217:6; 217:8-16; 217:19-21; 217:23-218:2; 218:12-219:8; 220:13-16; 220:18-221:6; 221:15-224:18; 224:21; 225:10-25; 226:10-228:12; 228:14-231:15; 231:17-233:7; 233:9-235:24; 236:4-237:2; 237:17-240:22; 241:2-242:17; 242:20-25; 243:6-18; 243:21-244:12; 244:15-245:4; 246:2-9; 246:14-248:12; 248:15-20; 248:22-249:21; 249:24-250:8; 250:11-252:2; 252:6-19; 252:23-253:7; 253:11; 253:13; 253:18-23; 254:1-2; 255:3-256:13; 256:24-257:20; 258:23-259:23; 260:11-25; 261:4-8; 261:11; 261:13-262:4; 262:8-19; 263:2-22; 263:25; 264:11-21; 265:6-16; 265:18-19; 265:21-24; 266:2; 266:4-6; 266:9; 266:11-267:19; 267:21-23; 267:25-269:8; 269:12-17; 269:19; 273:10-274:23; 275:2-8; 275:11-12; 276:2-11; 276:15-277:17; 279:19-280:11; 280:15-19; 280:22-281:1; 281:4-14; 281:16-17; 281:24-282:15; 282:18; 283:1-5; 283:9-10; 283:18-284:21; 284:24-285:3; 285:5-10; 285:18-19; 285:22; | |

| Deposition Designation | Objection & Response |
|---|---|
| 285:24-286:18; 287:4-10; 287:13; 287:15-16; 288:3-294:4; 294:18-295:5; 295:9-299:4; 299:19-300:12; 300:15-16; 300:18; 300:20-24; 301:2-4; 301:16-17; 302:5-303:6; 304:7-305:3; 135:17-136:4; | |

Page 8
20 Q. Good morning, Mr. Gutterman.
21 A. Good morning.
22 Q. Please spell your full name for the
23      record.
24 A. Daniel Spencer Gutterman, D-A-N-I-E-L
25 S-P-E-N-C-E-R G-U-T-T-E-R-M-A-N.

Page 32
25 Q. Were you tasked with researching whether

Page 33
1      the conflict between Israel and Hamas at the time of 2  the claim was a war?
3 A.  I was tasked with obtaining information 4 about what was going on over there.
5 Q.  By who?
6 A.  My supervisors.
7 Q.  Who were they?
8 A.  Pamela Johnson and Peter Williams.
9 Q.  Anyone else?
10 A.  No.  Not that I can recall.
11 Q.  Was there a chain of command among the 12  three of you?
13 A.  Yes.  Pam was my -- was my direct
14      supervisor.

Page 35
17      You're a current employee of who?
18 A.  One Beacon Entertainment.
19 Q.  Are you certain that's the entity that is
20      your employer?
21 A.  Yes.
22 Q.  Okay. And how long have you been employed
23      by One Beacon Entertainment?

**189**

| Deposition Designation | Objection & Response |
|---|---|
| 24  A.   Since 2013.<br>25  Q.   Do you remember the month? | |
| Page 36<br>1    A.   I believe it was July.<br><br>23  Q.   You understand that there is an insurance<br>24  policy at issue in this case?<br>25  A.   Yes. | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 37<br>16  Q.   Do you recognize the document marked<br>17          Exhibit 1?<br>18  A.   Yes.<br>19  Q.   What is it?<br>20  A.   It is the NBCUniversal Media Motion<br>21          Picture/Television Producers Portfolio<br>          Declarations<br>22  policy.<br>23  Q.   Is this the policy that you understand at<br>24          issue in this case?<br>25  A.   Without reviewing all of it, it appears to | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 38<br>1          be.<br>2    Q.   Okay. I want you to turn to the page<br>3          marked ATL 3083.<br>4    A.   Yes.<br>5    Q.   You referred to four exclusions; correct?<br>6    A.   Yes.<br>7    Q.   Are the four exclusions that you referred<br>8          to on this page?<br>9    A.   Yes.<br>10  Q.   Where are they?<br>11  A.   The bottom right-hand side.<br>12  Q.   And those exclusions are:<br>13          "War, including undeclared or civil war."<br>14          Correct?<br>15  A.   Yes. | Defendant's Objections:<br><br><br>Plaintiff's Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 16  Q.  "Warlike action by a military force,<br>17        including action in hindering or defending<br>18        against an actual or expected attack by any<br>19        government, sovereign or other authority using<br>20        military personnel or other agents."<br>21        Correct?<br>22  A.  Yes. | |
| Page 45<br>7    Q.  Just to be clear, I'm asking: If you were<br>8        tasked with giving your best definition of what war<br>9        is, what would you say?<br>10  A.  It's really -- it's hard to define it. I<br>11        just know it when I see it. It's -- again, when<br>12        reviewing for -- when reviewing the articles and<br>13        information I found online during this time period,<br>14        it -- everything I saw was a war. | Defendant's Objections:<br><br><br><br>Plaintiff's Response: |
| Page 64<br>20  Q.  Which claims do you not discuss with your<br>21        supervisors?<br>22  A.  Noncomplex claims that don't involve any<br>23        question of liability or coverage.<br>24  Q    With respect to the DIG claim at issue in<br>25        this case, did you discuss your opinion as to | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 65<br>1        coverage with your supervisors?<br>2    A.  I don't remember a specific conversation. | Defendant's Objections: |
| 8    Q.  Was this a complex claim? And by "this" I<br>9        mean the DIG claim.<br>10  A.  Yes.<br>11  Q.  Did you discuss your coverage opinion with<br>12        respect to the DIG claim with your | Plaintiff's Response: |

**191**

| Deposition Designation | Objection & Response |
|---|---|
| supervisor? | |
| 15   THE WITNESS: I don't recall a specific<br>16        conversation. | |
| 18   Q.   Did you communicate your coverage<br>        opinion<br>19        to the insured in connection with the DIG<br>        claim?<br>20   A.   I don't believe that I did. | |
| <u>Page 89</u><br>7        Let's start<br>8        talking now about your employment at<br>         OneBeacon.<br>9        Okay?<br>10   A.   Okay.<br>11   Q.   What is your title today?<br>12   A.   Senior entertainment investigator.<br>13   Q.   What was your title when you began?<br>14   A.   The same.<br>15   Q.   Has it ever been different?<br>16   A.   No.<br>17   Q.   Do you have an understanding of what your<br>18        job duties are as senior entertainment claims<br>19        investigator?<br>20   A.   Yes. | <u>Defendant's Objections:</u><br><br><br><br><u>Plaintiff's Response:</u> |
| <u>Page 90</u><br>24   Q.   Okay. You've been a claims adjuster since<br>25        you began through the present? | <u>Defendant's Objections:</u><br><br><br><u>Plaintiff's Response:</u> |
| <u>Page 91</u><br>1    A.   Correct.<br><br>20        When you adjust a claim -- and when I say | <u>Defendant's Objections:</u> |

| Deposition Designation | Objection & Response |
|---|---|
| 21     "adjust a claim," I mean perform your duties as a<br>22     claims adjuster, and what you said was, investigate<br>23     the claim, determine coverage, if applicable, issue<br>24     payment; right? Is that consistent?<br>25  A.   Yes. | Plaintiff's Response: |
| Page 92<br>4  Q.   Okay. When you adjust a claim, do you<br>5      determine what the cause of the loss was?<br>6  A.   Yes. | Defendant's Objections: |
| 13     When you adjust a claim, do you decide<br>14     whether the loss is covered?<br>15  A.   When there's definitive coverage. Yes.<br>16     When there's coverage in question, my supervisors<br>17     get involved.<br>18  Q.   But do you render an opinion as to whether<br>19     or not the loss is covered in all cases?<br>20  A.   Well, going back to your question earlier<br>21     today when you asked whether or not I rendered an<br>22     opinion, I don't recall if I did in this one. But<br>23     typically, yes, I would render an opinion. | Plaintiff's Response: |
| Page 93<br>6  Q.   Well, I suppose -- what you're saying is,<br>7      with respect to the DIG claim, you don't remember<br>8      whether or not you communicated your coverage<br>9      opinion to anyone? Is that what you're saying?<br>10  A.   Yes. That's correct.<br>11  Q.   Okay. So you may have?<br>12  A.   I may have. Correct. | Defendant's Objections:<br><br>Plaintiff's Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 13 Q. Okay. Can you remember an instance at any | |
| 14      time during your tenure at OneBeacon in which you | |
| 15      were assigned as a claims adjuster on a claim in | |
| 16      which you did not come to an opinion as to whether | |
| 17      or not the loss at issue was covered? | |
| 18 A. I've been -- I've had claims that have | |
| 19      been reassigned to me where the coverage | |
| 20      determinations have been made prior to my decision. | |
| 21      So I wouldn't -- I wouldn't even -- I wouldn't make | |
| 22      a coverage determination in those. | |
| 23 Q. So put those to the side. | |
| 24      Any others? | |
| 25 A. So let's say it gets -- an initially | |
| | |
| Page 94 | Defendant's Objections: |
| 1      assigned claim. | |
| 2      Nothing comes in my head right now, no. | |
| 3      That doesn't mean that there weren't. But I don't | Plaintiff's Response: |
| 4      remember any. | |
| | |
| 23 Q. When they provide you -- and by "they" I | |
| 24      mean the insured -- provides you with an account of | |
| 25      what the loss is according to the insured, what do | |
| | |
| Page 95 | Defendant's Objections: |
| 1      you do with that? Do you analyze it? | |
| 2 A. Yes. | |
| 3 Q. And do you come to a determination as to | |
| 4      whether the claimed loss as set forth in that | Plaintiff's Response: |
| 5      presentation is accurate? | |
| 6 A. I would. Or if we had an outside adjuster | |

| Deposition Designation | Objection & Response |
|---|---|
| 7     that was working on it, I would be in consultation<br>8     with them or any consultants.<br>9  Q.  In which cases do you have outside<br>10     adjusters working with you?<br>11  A.  Typically with claims that involve casts<br>12     or extra expense claims that are larger, as well as<br>13     third-party property damage claims, I use -- I use<br>14     an adjuster, an outside independent adjuster, or a<br>15     few, because I -- they could be out of state, and<br>16     I'm not flying -- I'm -- it's easier to get an<br>17     adjuster, and it's more cost-effective.<br>18  Q.  What do you consider to be a claim that is<br>19     larger?<br>20  A.  Typically anything over $200,000.<br><br>Page 96<br>9  Q.  Okay. And are there particular outside<br>10     independent adjusters that you use?<br>11  A.  One in particular for -- for -- well, it<br>12     depends on the type of claim.<br>13  Q.  One in particular for what?<br>14  A.  Okay. So let's say it was for an extra<br>15     expense type of a claim.<br>16  Q.  Okay.<br>17  A.  We use someone named Graham Henderson<br>18     often.<br>19  Q.  Is he independent? Does he work for a<br>20     company?<br>21  A.  Yes. He's an independent.<br><br>Page 97<br>22  A.  Okay.<br>23  Q.  Okay. During that window of time, did<br>24     Graham Hend | Defendant's Objections:<br>(96:9-21) Referenced to independent adjuster and/or Graham Henderson not relevant; confusing; waste of time; FRE 401, 403<br><br>Plaintiff's Response:<br>Relevant to bad faith<br><br><br>Defendant's Objections:<br>(97:22-25) Referenced to independent adjuster and/or Graham Henderson not |

**195**

| Deposition Designation | Objection & Response |
|---|---|
| 25  A.   Yes. | relevant; confusing; waste of time; FRE 401, 403

Plaintiff's Response: Relevant to bad faith |
| Page 98
1   Q.   How many?
2   A.   Oh, I have no idea. Many.

7   Q.   Could it -- so maybe more than 100, maybe
8         not?
9   A.   I would say somewhere between 100 and
          150.
10  Q.   Okay.
11  A.   I'm sorry. Between -- I had it in my head
12        somewhere between 50 and 150.
          Somewhere in that
13        neighborhood. | Defendant's Objections: (98:1-2, 7-13) Referenced to independent adjuster and/or Graham Henderson not relevant; confusing; waste of time; FRE 401, 403

Plaintiff's Response: Relevant to bad faith |
| Page 107
20  Q.   Okay. And was Graham Henderson
          consulted
21        in connection with the DIG claim at the time
          the DIG
22        claim was initially made and reviewed by
          you,
23        Pamela, and Peter?
24  A.   I don't believe so. No. | Defendant's Objections: (107:20-24)Referenced to independent adjuster and/or Graham Henderson not relevant; confusing; waste of time; FRE 401, 403

Plaintiff's Response: Relevant to bad faith |
| Page 108
13  Q.   Is Graham Henderson the only outside
14        independent adjuster that OneBeacon
          consults?

18  Q.   Let's start with Entertainment. Just that
19        you know of, just your knowledge.
20  A.   Well, we use outside adjusters for auto | Defendant's Objections: (108:13-14, 18-25) Referenced to independent adjuster and/or Graham Henderson not relevant; confusing; waste of time; FRE 401, 403 |

**196**

| Deposition Designation | Objection & Response |
|---|---|
| 21      claims. We use -- I use outside adjusters, like I<br>22      said earlier, for third-party property damage<br>23      claims. I mean -- so, yeah. I mean, we certainly<br>24      use other outside adjusters.<br>25   Q.  And you've used outside adjusters as you | <u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| Page 109<br>1      just described from the beginning of your tenure at<br>2      OneBeacon until today?<br>3   A.  I mean, I don't think it was the very<br>4      first day. But eventually, yes, I started using<br>5      them. | <u>Defendant's Objections</u>:<br>(109:1-5) Referenced to independent adjuster and/or Graham Henderson not relevant; confusing; waste of time; FRE 401, 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| Page 110<br>14   Q.  Do you as a matter of practice engage<br>15      outside independent adjusters in a consulting<br>16      capacity when the claim involves an issue that<br>17      you've never dealt with?<br>18   A.  Yes | <u>Defendant's Objections</u>:<br>(110:14-18) Referenced to independent adjuster and/or Graham Henderson not relevant; confusing; waste of time; FRE 401, 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| Page 111<br>17      Do you have the time period between when<br>18      you got notice of the DIG claim as a starting point<br>19      and the September letter from OneBeacon in which<br>20      OneBeacon reaffirmed its decision to deny coverage?<br>21      Do you have that time period in mind? | <u>Defendant's Objections</u>:<br>(111:17-25)Referenced to independent adjuster and/or Graham Henderson not relevant; confusing; waste of time; FRE 401, 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 22  A.  Yes. | |
| 23  Q.  Okay. At any time during that time | |
| 24        period, did OneBeacon use an independent outside | |
| 25        adjuster in connection with the DIG claim? | |
| | |
| Page 112 | Defendant's Objections: |
| 1   A.  Would you define what is an independent | (112:1-19) Referenced to |
| 2        outside adjuster. | independent adjuster and/or |
| 3   Q.  No. We've been talking about independent | Graham Henderson not |
| 4        outside adjusters for 20        minutes. I want you to use | relevant; confusing; waste of time; FRE 401, 403 |
| 5        the same definition you've been using. | |
| 6   A.  Then using that definition, no. | |
| 7   Q.  Okay. Is there another definition of | Plaintiff's Response: |
| 8        "independent outside adjuster" that you would use | Relevant to bad faith |
| 9        which would change your answer? | |
| 10  A.  No. | |
| 11  Q.  Okay. Why not? | |
| 12  A.  Why not what? | |
| 13  Q.  Why didn't OneBeacon use an independent | |
| 14        outside adjuster in connection with the DIG claim? | |
| 15  A.  The facts of the loss that were presented | |
| 16        to us didn't necessarily warrant that. | |
| 17  Q.  Had you ever dealt with the application of | |
| 18        a war exclusion to a claim before? | |
| 19  A.  No. | |
| | |
| Page 141 | |
| 16        Other than the Boston Marathon claim that | |
| 17        you just testified about, are you aware of any other | |
| 18        claim in which OneBeacon has considered the | |
| 19        application of a terrorism exclusion to a claim? | |
| 20  A.  No. Nothing comes to mind. | |

**198**

| Deposition Designation | Objection & Response |
|---|---|
| 21  Q.  Okay. Back to the DIG claim.<br>22      You testified that OneBeacon did not<br>23      consult an outside independent insurance adjuster on<br>24      the DIG claim; correct?<br>25  A.  Correct.<br><br>Page 142<br>1   Q.  Why not?<br>2   A.  The facts of the loss didn't warrant it.<br>3   Q.  The facts of the loss didn't warrant it?<br>4   A.  Yes.<br>5   Q.  Okay. What about the question whether or<br>6      not the war exclusion applied?<br>7   A.  We eventually had a coverage review done<br>8      by an outside attorney.<br>9   Q.  Okay. Putting that to the side.<br>10      Okay?<br>11  A.  Yes.<br>12  Q.  At any point during the process, did you<br>13      suggest that OneBeacon seek the opinion of an<br>14      outside insurance adjuster who had applied the war<br>15      exclusion?<br>16  A.  No.<br>17  Q.  Why not?<br>18  A.  The facts of the loss didn't warrant it.<br>19  Q.  Okay. When you say "facts of the loss,"<br>20      what do you mean?<br>21  A.  We were initially provided by the broker<br>22      and the insured an e-mail from the head of security<br>23      from NBC in Israel. Based upon that e-mail, as well<br>24      as the conversation with the broker and the insured,<br>25      it -- as well as also doing research thereafter, | Defendant's Objections:<br>(142:1-25)<br>Object as to attorney client privilege  relevance; prejudicial; FRE 401, 403, 502<br><br><br>Plaintiff's Response:<br>Relevant to bad faith; mere reference to outside counsel not privileged. |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 143</u><br>1    there was no need for -- an independent adjuster<br>2    wouldn't have been -- I use independent adjusters to<br>3    create estimates and to talk with insureds about<br>4    their property. I don't ever use them in a<br>5    situation like this.<br><br>14  Q.  I'm just asking what you mean. Because<br>15    one of the facts of the loss, at least what I'm<br>16    understanding from you is, what caused the loss;<br>17    right? Is that right?<br>18  A.  Yes and no. I mean, there's also to<br>19    the -- I don't use independent adjusters --<br>20  Q.  Well, that's not my question.<br>21  A.   -- for coverage.<br><br>24  Q.  That's -- that's not my question. I just<br>25    want to make sure we're on the same page<br><br><u>Page 144</u><br>1    When you say "facts of the loss," does<br>2    that include whether or not the loss in this case<br>3    was caused by a war?<br>4  A.  I don't understand the question because it<br>5    doesn't relate to the first question that you asked.<br>6    I use independent adjusters -- I don't use<br>7    independent adjusters for -- I've never used an<br>8    independent adjuster for determining if war was<br>9    involved.<br>10  Q.  Well, you said before that the facts of<br>11    the loss didn't warrant it. I thought that's what | <u>Defendant's Objections</u>:<br>(143:1-5)<br>Object as to attorney client privilege  relevance; prejudicial; FRE 401, 403, 502<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith; mere reference to outside counsel not privileged.<br><br><u>Defendant's Objection</u>:<br>(143:14-21, 24-25)<br>Use of independent adjuster not relevant; prejudicial; waste of time; FRE 401, 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith<br><br><br><u>Defendant's Objections</u>:<br>(144:1-19)<br>Use of independent adjuster not relevant; prejudicial; waste of time; FRE 401, 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 12    you said; right? | |
| 13  A.  That sounds right. Yes. | |
| 14  Q.  Okay. And all I'm asking is: Since | |
| 15    OneBeacon had never considered, to your knowledge, a | |
| 16    war exclusion to -- application of a war exclusion | |
| 17    to a claim other than this Thailand case, I want to | |
| 18    know if you consider whether or not there was a war | |
| 19    that caused this loss, whether or not that's a fact. | |
| | |
| 22  THE WITNESS: This was a war. I'm not | |
| 23    really sure I understand the question. | |
| | |
| Page 145 | |
| 8  Q.  Did you feel at the time you were involved | |
| 9    in the review of the DIG claim, did you feel at any | |
| 10    time that you needed to consult anybody on the | |
| 11    question whether or not the loss was caused by a | |
| 12    war? | |
| 13  A.  My supervisors. | |
| 14  Q.  At one point you felt you needed to | |
| 15    consult your supervisors on the question whether or | |
| 16    not the loss was caused by a war? | |
| 17  A.  I didn't need to consult with them. They | |
| 18    came up with that completely independent of me. | |
| 19    I'm sorry. I think I'm lost in the | |
| 20    questioning. I'm not sure I understand it. | |
| 21  Q.  You were involved in the DIG claim; right? | |
| 22  A.  Yes. | |
| 23  Q.  You did research; right? | |
| 24  A.  Yes. | |

| Deposition Designation | Objection & Response |
|---|---|
| 25  Q.   What research did you do? | |
| | |
| Page 146 | |
| 1    A.   I had conversations with the broker, the | |
| 2          insured, reviewed the e-mail that was sent to us, | |
| 3          looked online at multiple different websites. | |
| 4    Q.   Okay. At any point during that process, | |
| 5          did you feel the need to consult with somebody else | |
| 6          on the question whether or not the loss was caused | |
| 7          by a war? | |
| 8    A.   I don't remember specific conversations. | |
| 9          But I'm sure I had conversations with Pamela and/or | |
| 10         Peter where they described -- I mean, we were all | |
| 11         discussing what had we found from our research. | |
| 12   Q.   And what had you found from your research? | |
| 13   A.   Primarily that this was a war. Everything | |
| 14         that we were seeing showed that there was missiles | |
| 15         that were being shot from Palestine into Israel; | |
| 16         that a ground offensive was a possibility and | |
| 17         eventually, I believe it occurred; that -- that | |
| 18         tanks were mobilizing. I mean, the ground -- the | |
| 19         armies were mobilizing at borders. | |
| 20   Q.   Why did it matter that there was a ground | |
| 21         offensive? | |
| | |
| Page 147 | |
| 2    Q.   Why did it matter that there was a ground | |
| 3          offensive possible? | |
| 4    A.   Well, you asked me what -- what research I | |

| Deposition Designation | Objection & Response |
|---|---|
| 5     had done. That was what we'd found.<br>6  Q.  Right. You said that this was a war, and<br>7        then you started to list the reasons why;<br>        right?<br>8  A.  Why it's a war?<br>9  Q.  Right.<br>10 A.  Oh, I was just telling you this is some of<br>11       the research we'd found.<br>12 Q.  Right. Well, what relevance does the fact<br>13       that there was a ground offensive possible<br>        have to<br>14       this determination of whether or not it's a<br>        war?<br>15 A.  All those constitute a war, to me.<br>16 Q.  All of what constitute a war to you?<br>17 A.  All those examples that I lined up after I<br>18       said this is a war.<br>19 Q.  Ground offensive; right?<br>20 A.  (No audible response.)<br>21 Q.  "Yes"?<br><br>Page 148<br>18 Q.  Okay. So based on all of that research,<br>19       in your opinion, at the time the DIG claim<br>        was made<br>20       and reviewed by OneBeacon, your opinion<br>        was the loss<br>21       was caused by a war?<br>22 A.  No. Not instantaneously.<br>23 Q.  I didn't say "instantaneously."<br>24       After you conducted the research before<br>25       OneBeacon denied the claim, at some point<br>        between<br><br>Page 149<br>1        the time you got notice of the claim and<br>        OneBeacon's<br>2        denial, your research led you to believe that<br>        the | |

| Deposition Designation | Objection & Response |
|---|---|
| 3     loss was caused by a war. | |
| 4  A.  Yes. | |
| 5  Q.  Okay. And you just identified all the | |
| 6     reasons why you came to that conclusion; right? | |
| 7  A.  Yes. | |
| 8  Q.  And can you think of any other reasons? | |
| 9  A.  No. | |
| 10  Q.  Okay. And when you came to that | |
| 11     conclusion, did you communicate it to somebody? | |
| 12  A.  I don't recall. | |
| 13  Q.  Did you tell Pamela? You don't remember | |
| 14     if you told Pamela? | |
| 15  A.  I don't recall. | |
| 16  Q.  Do you remember if you told Peter? | |
| 17  A.  I don't recall. | |
| 18  Q.  Okay. Do you remember if you discussed | |
| 19     your opinion of whether or not the loss was caused | |
| 20     by a war with Pamela or Peter? | |
| 21  A.  I don't recall a specific conversation. | |
| 22     No. | |
| 23  Q.  Okay. Did you ever consider whether or | |
| 24     not Hamas was a sovereign? | |
| 25  A.  Did I personally? | |
| | |
| Page 150 | |
| 1  Q.  Yes. In your research into whether or not | |
| 2     the loss was caused by a war. | |
| 3  A.  I don't know if I did or not. | |
| 4  Q.  Did you ever consider whether or not Hamas | |
| 5     had indicia of sovereignty in that research? | |
| 6  A.  Please define "indicia." | |
| 7  Q.  Did you ever consider whether Hamas was in | |
| 8     any way like a sovereign nation in that research? | |
| 9  A.  I did not. | |
| 10  Q.  Why not? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 11 A. My involvement in this claim was it was | |
| 12      assigned to me. But eventually this claim was | |
| 13      almost dealt with primarily by Pam- -- by Pamela. | |
| 14      And so that type of research would have been handled | |
| 15      at that point by her. | |
| 16 Q. Did you ever seek to determine in your | |
| 17      research whether or not Hamas was a terrorist | |
| 18      organization? | |
| 19 A. I don't recall. | |
| 20 Q. Did you ever seek to determine in your | |
| 21      research whether the loss at issue was caused by | |
| 22      terrorism? | |
| 23 A I don't recall. | |
| 24 Q. Did anybody at OneBeacon ever seek to | |
| 25      determine whether the loss at issue in connection | |
| | |
| Page 151 | |
| 1      with the DIG claim was caused by terrorism? | |
| | |
| 4 Q. If you know. | |
| 5 A. We eventually had a conversation with the | |
| 6      broker and the insured a few days later where they | |
| 7      said they disagreed with -- in our conversation we | |
| 8      had told them, meaning Pamela had told them, that | |
| 9      the war exclusion could potentially apply. They | |
| 10     brought up that they disagreed with it because | |
| 11     Hamas -- their -- in their opinion, Hamas was a | |

| Deposition Designation | Objection & Response |
|---|---|
| 12     sovereign state. And so at that point I'm sure<br>13     research was done by Pamela.<br>14  Q.  After that conversation did you -- did you<br>15     do any research into whether or not Hamas was a<br>16     sovereign state?<br>17  A.  I don't recall.<br>18  Q.  Did you do any research into whether or<br>19     not Hamas had things about it that were similar to a<br>20     sovereign state?<br>21  A.  I don't recall.<br>22  Q.  Did you do any research into whether or<br>23     not Hamas was a terrorist organization after this<br>24     call that you just described?<br>25  A.  Any time after this call or during this<br><br>Page 152<br>1     time period up until litigation that we're still in?<br>2  Q.  That time period.<br>3  A.  Okay. I don't recall.<br><br>Page 153<br>17  Q.  Okay. So at that time period, between the<br>18     time you received notice of the DIG claim and the<br>19     time it was denied, do you recall doing any research<br>20     into whether or not war required a dispute and<br>21     conflict between sovereign nations?<br>22  A.  I don't recall.<br>23  Q.  Do you recall doing any research into<br>24     whether or not the acts that caused the loss in this<br>25     case were terrorist acts? | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 154 | |
| 1  A.  I don't recall. | |
| 2  Q.  Do you recall doing any research into | |
| 3      whether or not Hamas was a terrorist | |
|       organization? | |
| 4  A.  I don't recall. | |
| 5  Q.  Do you recall whether or not anybody at | |
| 6      OneBeacon did any such research? | |
| 7  A.  Again, I'm sure as soon as we had that | |
| 8      conversation and they brought it up, that would have | |
| 9      been a time when we went back and started looking at | |
| 10     what they were talking about, if not before then. | |
| 11  Q.  Would have been. | |
| 12     But do you have any personal knowledge of | |
| 13     anybody at OneBeacon doing any research into whether | |
| 14     or not war requires a conflict between two | |
| 15     sovereigns? | |
| 16  A.  I don't. No. | |
| 17  Q.  Do you have any personal knowledge of | |
| 18     anybody at OneBeacon doing any research under the | |
| 19     question whether the acts that caused the loss at | |
| 20     issue in this case were acts of terrorism? | |
| 21  A.  I don't know. | |
| 22  Q.  Do you have any personal knowledge | |
| 23     regarding whether or not anybody at OneBeacon did | |
| 24     any research into the question whether or not Hamas | |
| 25     is a terrorist organization? | |
| | |
| Page 155 | |
| 1  A.  I don't know. | |
| 2  Q.  At the time of the DIG claim, what was | |
| 3     your opinion as to whether or not Hamas | |

| Deposition Designation | Objection & Response |
|---|---|
| was a | |
| 4　　terrorist organization? | |
| 5　A.　I don't know if I had one. | |
| | |
| 14　Q.　What was your role, again, in connection | |
| 15　　　with the adjusting of the DIG claim? | |
| 16　A.　It initially came to me. Pamela and I had | |
| 17　　　a conversation with the broker and the insured, | |
| 18　　　doing research online, sending that research back | |
| 19　　　and forth between Pamela and I, as well as Peter, I | |
| 20　　　believe; having another conversation thereafter. | |
| 21　　　But ultimate decisions of coverage were done by | |
| 22　　　Pamela. | |
| 23　Q.　Were you responsible for determining | |
| 24　　　coverage? | |
| 25　A.　In certain claims, yes. | |
| | |
| Page 156 | |
| 1　　　Are you asking about this particular | |
| 2　　　claim? | |
| 3　Q.　I'm asking about the DIG claim. | |
| 4　　　Were you responsible for determining | |
| 5　　　coverage? | |
| 6　A.　No. | |
| 7　Q.　Not at all? | |
| 8　A.　No. | |
| 9　Q.　I want you to think of the entire tenure | |
| 10　　　at OneBeacon, your entire tenure at OneBeacon. Put | |
| 11　　　the one -- put the DIG claim to one side. | |
| 12　　　Has there ever been another claim that | |
| 13　　　you've worked on where you were not responsible for | |
| 14　　　determining coverage? | |
| 15　A.　Yes. | |

| Deposition Designation | Objection & Response |
|---|---|
| 16  Q.  How many? | |
| 17  A.  Whenever coverage was denied, it always | |
| 18       was run by my supervisors. If there was ones where | |
| 19       coverage was in question, then that would be run by | |
| 20       my supervisors as well. I have no idea how many | |
| 21       that entails. | |
| 22  Q.  Okay. But in all circumstances you came | |
| 23       to a conclusion as to what you would do with respect | |
| 24       to the coverage question. | |
| 25  A.  Yes. | |
| | |
| Page 157 | |
| 1   Q.  Including the DIG claim. | |
| 2   A.  Yes. | |
| 3   Q.  Okay. And your recommendation in | |
| 4        connection with the DIG claim at the time it was | |
| 5        made and prior to its ultimate denial was that it | |
| 6        should be denied because it's excluded by the war | |
| 7        exclusion? | |
| | |
| 10  THE WITNESS: I had been working there for | |
| 11       around a year at that point. I completely defaulted | |
| 12       to my supervisor and Peter, who had significantly | |
| 13       more experience than I did. I don't think I ever -- | |
| 14       I certainly didn't give a recommendation. It was | |
| 15       just my own thought process, this seems like a war. | |
| 16  Q.  You expressed that opinion? | |
| 17  A.  I don't recall if I did or did not. | |

**209**

| Deposition Designation | Objection & Response |
|---|---|
| 18  Q.  Okay. Has there ever been another case in<br>19      which you did not express your opinion on coverage,<br>20      ever another claim?<br>21  A.  That I was involved in?<br>22  Q.  Yeah.<br><br>Page 158<br>1      THE WITNESS: Not that comes to mind, no.<br><br>Page 161<br>11  Q.  Well, did you help in the determination of<br>12      coverage in connection with the DIG claim?<br>13  A.  I don't remember if I had conversation --<br>14      well, yes, because we were sending each other back<br>15      and forth the articles which helped in the process<br>16      of determining if there was coverage or not.<br>17  Q.  Did you do anything else to help in the<br>18      determination of coverage?<br>19  A.  I reviewed the policy.<br>20  Q.  Did you render your opinion based on your<br>21      review of the policy?<br>22  A.  I don't recall if I did or not.<br>23  Q.  Did you do anything else other than review<br>24      the policy and circulate website links?<br><br>Page 162<br>3      THE WITNESS: I do not recall if I did or<br>4      did not.<br><br>Page 168<br>24  Q.  So let's back up.<br>25      We're talking about first-party claims in<br>Page 169<br>1      the entertainment space, specifically extra expense<br>2      claims. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 3      Okay? | |
| 4   A.   Okay. | |
| 5   Q.   Like the one at issue in the DIG claim; | |
| 6      right? | |
| 7   A.   Okay. | |
| 8   Q.   You testified that you're one of the | |
| 9      people at OneBeacon who adjusts those | |
|      claims; right? | |
| 10   A.   Yes. | |
| 11   Q.   And that's true for your entire tenure? | |
| 12   A.   Yes. | |
| 13   Q.   Okay. Who else? | |
| 14   A.   Pamela Johnson. | |
| 15   Q.   Anyone else? | |
| 16   A.   No. Not that I can think of. Up until | |
| 17      she was at OneBeacon. Once she was no longer with | |
| 18      the company, it was primarily me and Steve Baltzell, | |
| 19      or is primarily me and Steve Baltzell. | |
| 20   Q.   So if I were to define the universe of | |
| 21      people at OneBeacon who adjust first-party extra | |
| 22      expense claims in the entertainment space for the | |
| 23      time period starting when you began at OneBeacon | |
| 24      until today, that universe is you, Pamela Johnson, | |
| 25      and Steve Baltzell? | |
| | |
| Page 170 | |
| 1   A.   Correct. I've actually -- I've remembered | |
| 2      also Theresa Gooley was involved in claims that -- | |
| 3      in -- that were extra expense claims as well. And | |
| 4      Peter certainly was always there to help us. | |
| 5   Q.   What does that mean, "always there to help | |
| 6      us"? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 7   A.   He had 30 years of claims experience. So<br>8         we certainly used him as a sounding board.<br>9   Q.   So we've got you, Pamela Johnson, Steve<br>10        Baltzell, Theresa Gooley, Peter Williams.<br>11        Anybody else?<br>12   A.   Currently Aaron Stone.<br><br>Page 171<br>12   Q.   Okay. So you get a claim.<br>13   A.   Yes.<br>14   Q.   What's the first thing you do?<br>15   A.   Open up all the different attachments that<br>16        are related to it, whether that's -- again,<br>17        depending on the particular type of claim,<br>         police<br>18        reports. The first notice of loss usually is<br>19        involved, which is from a broker, which is<br>         inclu- --<br>20        which is usually filled out by the insured.<br>21        I look at any pictures that I've been<br>22        provided, I look at any spreadsheets, and<br>         then<br>23        typically either make a phone call or an e-<br>         mail to<br>24        whoever the first point of contact is.<br>25   Q.   First point of contact for the insured?<br><br>Page 172<br>1   A.   If that's the person that was the person<br>2        that brought us the claim. Yes.<br>3   Q.   Or a broker?<br>4   A.   Yes.<br>5   Q.   Anybody else you would contact first<br>6        besides the insured or a broker?<br>7   A.   If -- if there was a vendor that was the<br>8        one that was complaining about not being<br>         paid and<br>9        they had gotten -- they had been -- they had<br>10       received a certificate of insurance from one | |

| Deposition Designation | Objection & Response |
|---|---|
| of our | |
| 11      insureds, that would be who I would speak with. | |
| 12   Q.   Would you read the policy? | |
| 13   A.   Eventually. But typically I would start | |
| 14      with getting the facts of loss. | |
| 15   Q.   Okay. What would you do if you had a | |
| 16      question about the scope of coverage? | |
| 17   A.   Usually I discuss it with my supervisors | |
| 18      and then discuss it with the underwriters to see | |
| 19      what their intent was. And then depending on where | |
| 20      we go from there, discussing it with the brokers and | |
| 21      ultimately discussing it with the insureds, | |
| 22      assuming, of course, we already have facts of loss | |
| 23      and we know that there's certainly a question that | |
| 24      coverage is not -- that an exclusion could | |
| 25      potentially apply. | |
|   | |
| Page 173 | |
| 1   Q.   You said discuss with the insured. | |
| 2      What would you discuss with the insured | |
| 3      regard- -- regarding the coverage, the scope of | |
| 4      coverage? | |
| 5   A.   Oh. Typically I would discuss it with the | |
| 6      broker first. And then if they were okay with me | |
| 7      bringing up that I thought there was a potential | |
| 8      exclusion, I would bring that up to the insured. | |
| 9   Q.   But aside from bringing it up to the | |
| 10      insured, would you ask the insured what their | |
| 11      understanding of the coverage part is or | |

| Deposition Designation | Objection & Response |
|---|---|
| was? | |
| 12  A    I don't know if I would put it that way. | |
| 13       I would bring it up to the broker and say, "This is | |
| 14       our concerns." If they agreed with it, then I would | |
| 15       bring it up -- if they wanted me to, to bring it up | |
| 16       to the insured and discuss it with the insured and | |
| 17       say, "These -- this coverage is concerning to us. | |
| 18       Either speak some more to your broker or try and | |
| 19       clarify." | |
| 20  Q.   Okay. So part of the discussion with the | |
| 21       insured is, "How do you interpret -- interpret | |
| 22       coverage?" | |
| 23       Is that accurate? | |
| | |
| Page 174 | |
| 1     THE WITNESS: No. | |
| 2     BY MR. HAYES: | |
| 3  Q.   Part of the discussion with the insured | |
| 4       is, "Why do you think there's coverage?" | |
| 5       Is that accurate? | |
| 6  A.   No. | |
| 7  Q.   Okay. | |
| 8  A.   Not necessarily. I mean, again, sometimes | |
| 9       the insureds understand that there is an issue, and | |
| 10      then there's other times when the insureds just | |
| 11      don't -- don't get it. And then you say, "Okay. | |
| 12      Well, explain to me." | |
| 13      So, yes, occasionally there will be times | |
| 14      when I've brought up, "Okay. Explain to me more do | |
| 15      why you believe that there's coverage for | |

| Deposition Designation | Objection & Response |
|---|---|
| this." | |
| 16 Q.   Okay. And if it's a situation where you | |
| 17        say, "Why do you believe there is coverage for | |
| 18        this," what do you do with the information they give | |
| 19        you? | |
| 20 A.   Review the policy again to see how we | |
| 21        determine -- basically, redo everything I did the | |
| 22        first time around. Again, speak with my | |
| 23        supervisors, speak with the underwriters, and then | |
| 24        speak again with the broker. | |
| 25        We really want to find coverage. I mean, | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 175 | |
| 1  that's -- I was taught that from Peter and from | |
| 2  Pamela over and over and over again. So if we can | |
| 3  find it, we'll do so. We want people to -- we want | |
| 4  to find coverage. | |
| | |
| 15 Q. So if finding coverage is your objective | |
| 16  in every case, how do you go about achieving that | |
| 17  objective? | |
| 18 A. Look through every aspect of the policy, | |
| 19  make sure that there's no other -- other policies | |
| 20  that are out there, see if any other coverage could | |
| 21  potentially apply, see if there's any endorsements | |
| 22  that are out there that we didn't necessarily know | |
| 23  about; and, again, speaking with the underwriters. | |
| 24  Maybe there's things that we missed. | |
| 25  And when I said "word for word," I meant | |
| | |
| Page 176 | |
| 1  that colloquially. I don't know if they -- again, | |
| 2  it's been three years. But it was -- always the | |
| 3  basis was, you -- your goal is to try and find | |
| 4  coverage. | |
| 5 Q. That was from the moment you stepped in at | |
| 6  OneBeacon; right? | |
| 7 A. I mean, not the moment I stepped in. But, | |
| 8  like, within days of being there. I don't remember | |
| 9  the exact time period. | |

| Deposition Designation | Objection & Response |
|---|---|
| **Page 177** | |
| 11  Q.   Anything else that you can think of that | |
| 12        you do to try to find coverage when a claim comes | |
| 13        in? | |
| 14  A.   Well, sometimes it's just so obvious. But | |
| 15        other times it's not. I mean, again, it's really -- | |
| 16        it's -- it's trying to interpret what the policy | |
| 17        reads. And if -- if that's beneficial to the | |
| 18        insured, great. But there's times when it's not. | |
| 19  Q.   So when you say there's some times when | |
| 20        it's obvious, you mean there's some times when it's | |
| 21        obvious that there's coverage? | |
| 22  A.   Yes. | |
| 23  Q.   Those are the easy cases? | |
| 24  A.   Yes. | |
| 25  Q.   And I'm assuming you would say sometimes | |
| | |
| **Page 178** | |
| 1         it's  obvious that there's not coverage, and those | |
| 2         are, unfortunately, easy cases, too; is that | |
| 3         correct? | |
| 4   A.   I don't think I've ever had a coverage | |
| 5         denial that was obvious. | |
| | |
| **Page 180** | Defendant's Counter: |
| 2   Q.   Okay. When you work with Pamela Johnson | 180:17-25 |
| 3         on a claim, what's your understanding of the working | 181:1-7 |
| 4         relationship? Are you seeking her legal advice? | Plaintiff's Response: |
| 5   A.   I'm seeking her supervisory advice. | Not necessary for completeness. Counter is |
| 6   Q.   Are you seeking her legal advice? | separate question and answer. |
| 7   A.   I never thought of it that way. No. | 180:23 improperly includes |

| Deposition Designation | Objection & Response |
|---|---|
| 8    Q.   Okay. So in your effort to find coverage,<br>9           do you ever do any research?<br>10   A.   In what regards?<br>11   Q.   Any -- any regard. Any research that you<br>12          think might help the case for the insured.<br>13   A.   Beyond reviewing the policy?<br>14   Q.   Yes. Like Internet research, for example.<br>15   A.   Nothing is popping in my head. I don't<br>16          know.<br><br>Page 181<br>8    Q.   Okay. How about consultation with an<br>9           expert, outside expert? If you thought<br>            consultation<br>10          with an outside expert would help locate<br>            evidence or<br>11          argument that would support an insured's<br>            claim for<br>12          coverage, would you do it?<br><br>16   Q.   Would you consult an expert to help<br>17          support the insured's position?<br><br>19   THE WITNESS: Just depends on the claim.<br>20          I mean –<br><br>25   THE WITNESS: Really, that's it. It<br><br>Page 182<br>1           really just depends on the claim. That's not<br>            really<br>2           anything that's come up before.<br><br>5    Q.   So remember, we've got two categories<br>6           here. At least this is my understanding.<br>            You've<br>7           got the instances in which coverage is clear.<br>            Those<br>8           are easy. Then you've got the instances | attorney objection. |

| Deposition Designation | Objection & Response |
|---|---|
| where<br>9        there's an issue. Those are never easy because<br>10       you're always trying to find coverage.<br>11   A.   Correct.<br>12   Q.   Okay. So I'm talking about that second<br>13       group, the ones that aren't easy, where the coverage<br>14       isn't clear.<br>15       If you thought consultation with an expert<br>16       would help tip the scales in favor of coverage,<br>17       would you seek that consultation?<br><br>21   Q.   I'm just asking what you would do.<br><br>23   THE WITNESS: It was done in this claim.<br>24   BY MR. HAYES:<br>25   Q.   No. No. No. I'm just asking what you<br><br>Page 183<br>1        would do generally.<br>2    A.   I would discuss it with my supervisors.<br>3        And if they believed that that was the best course<br>4        of action, then that's where we would go.<br>5    Q.   And you said it was done in this claim.<br>6        What do you mean?<br>7    A.   We went to outside counsel to have them<br>8        review the coverage.<br>9    Q.   The DIG claim?<br>10   A.   Yes.<br>11   Q.   But you didn't go to an independent<br>12       adjuster who had considered the war exclusion in the<br>13       context of a claim; right?<br>14   A.   That's correct.<br><br>Page 184 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br>(183:5-10, 11-14)<br>Attorney client privilege;<br>note relevant; prejudicial;<br>FRE 401, 403, 502<br><br><br>Plaintiff's Response:<br>Relevant to bad faith; mere<br>reference to outside counsel<br>not privileged |

| Deposition Designation | Objection & Response |
|---|---|
| 14  Q.  Okay. So if the DIG claim happened today,<br>15       you would not seek the advice of an independent<br>16       adjuster who had dealt with a war exclusion in the<br>17       context of another claim?<br><br>20  THE WITNESS: No.<br><br>Page 185<br>7   Q.  Which category would you put the DIG claim<br>8       in? The "coverage is obvious category" or "it's<br>9       questionable" category?<br>10  A.  It was -- it was -- it was complex.<br>11  Q.  Which category is that?<br>12  A.  It was difficult.<br>13  Q.  So it's in the category of "coverage isn't<br>14       clear, so it's not an easy case"; right?<br>15  A.  I don't think that's what I said<br>16       initially. Any time we're going potentially to deny<br>17       a claim, it's always complicated.<br>18  Q.  Okay. So that's the category the DIG<br>19       claim is in?<br>20  A.  Yes.<br>21  Q.  The "always complicated" category; right?<br>22  A.  Yes.<br><br>Page 188<br>13  Q.  Okay. But to your recollection, that idea<br>14       never came up in any of the meetings, in any of the<br>15       e-mail correspondence? And by that idea I mean,<br>16       "Let's go see if we can find an insurance adjuster<br>17       in-house or outside that has dealt with the | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br>(188:13-23)<br>Use of independent adjuster not relevant; FRE 401, 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| war<br>18      exclusion." That wasn't discussed, to your<br>19      recollection?<br>20  A.  No. It was not.<br>21  Q.  And do you have any understanding as to<br>22      why it wasn't?<br>23  A.  No.<br><br>Page 189<br>17  Q.  Do you recognize the document that's been<br>18      marked Exhibit 15?<br>19  A.  Yes.<br>20  Q.  What is it?<br>21  A.  General Claims Practices.<br>22  Q.  When did you first see this document?<br>23  A.  I don't remember.<br><br>Page 190<br>2      Are these rules that apply to the<br>3      adjusting of claims at OneBeacon?<br>4  A.  I believe so. Yes.<br>5  Q.  Are these rules in effect at OneBeacon<br>6      today?<br>7  A.  I don't know.<br>8  Q.  Were these rules in effect at OneBeacon<br>9      when you started?<br>10  A.  I don't know.<br>11  Q.  Were these rules in effect at OneBeacon at<br>12      the time of the DIG claim?<br>13  A.  I don't know.<br>14  Q.  Have you ever reviewed these rules?<br>15  A.  Yes.<br>16  Q.  When?<br><br>22  THE WITNESS: I don't know.<br><br>Page 192<br>16  Q.  Okay. Do you remember whether you<br>17      reviewed it prior to the DIG claim? | |

| Deposition Designation | Objection & Response |
|---|---|
| 18  A.  I do not.<br>19  Q.  Do these rules set forth in Exhibit 15<br>20      apply to you?<br>21  A.  Yes.<br><br>Page 193<br>10  Q.  Do you have any reason to believe that the<br>11      General Claims Practices set forth in Exhibit 15 did<br>12      not apply to the DIG claim?<br><br>14  THE WITNESS: No.<br><br>16  Q.  Okay. Look at Exhibit 16.<br>17      Do you recognize that document?<br>18  A.  Yes.<br>19  Q.  What is it?<br>20  A.  Core Principles.<br>21  Q.  When was the first time you saw this<br>22      document?<br>23  A.  I don't know.<br>24  Q.  Before the DIG claim or after?<br>25  A.  I don't recall.<br><br>Page 194<br>1  Q.  Have you ever read it?<br>2  A.  Yes.<br>3  Q.  When?<br>4  A.  Right now.<br>5  Q.  You never read it before today?<br>6  A.  Yes.<br>7  Q.  When?<br>8  A.  I don't recall.<br>9  Q.  Before or after the DIG claim?<br>10  A.  I don't recall.<br><br>18  Q.  Do these Core Principles apply to you<br>19      today, referring to Exhibit 16?<br>20  A.  Yes. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 21  Q.  Did they apply to you when you started at<br>22       OneBeacon?<br>23  A.  Yes.<br>24  Q.  Did they apply to you at the time of the<br>25       DIG claim?<br><br>Page 195<br>1   A.  Yes.<br>2   Q.  Have you at all times, during your tenure<br>3       at OneBeacon, sought to follow the Core<br>        Principles<br>4       set forth in Exhibit 16?<br>5   A.  Yes.<br>6   Q.  Have you at all times, during your tenure<br>7       at OneBeacon, sought to follow the General<br>        Claims<br>8       Practices set forth in Exhibit 15?<br>9   A.  Yes.<br>10  Q.  Can you think of any circumstances under<br>11      which you would not follow any of the<br>        General Claims<br>12      Practices set forth in Exhibit 15?<br>13  A.  No.<br>14  Q.  Can you think of any circumstances under<br>15      which you would not follow any of the Core<br>16      Principles set forth in Exhibit 16?<br>17  A.  No.<br><br>Page 196<br>18  Q.  So best recollection, the day that you<br>19      first received notice of the DIG claim was<br>        July 15,<br>20      2014?<br>21  A.  Yes. It was either that or the day<br>22      before. I don't remember exactly.<br>23  Q.  Do you remember how you received notice<br>24      the first time?<br>25  A.  There was a chain of e-mails that got to | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 197 | |
| 1      me. | |
| 2   Q.   So the e-mail was the first time you | |
| 3         received notice? | |
| 4   A.   As I recollect, yes. | |
| | |
| Page 198 | |
| 6   MR. HAYES: This is going to be | |
| 7         Exhibit 17. | |
| 8         (Exhibit 17 was marked | |
| 9         for identification.) | |
| 10  MR. HAYES: This is going to be | |
| 11        Exhibit 18. | |
| 12        (Exhibit 18 was marked | |
| 13        for identification.) | |
| | |
| 16  Q.   Do you recognize the document marked | |
| 17        Exhibit 17? | |
| 18  A.   Yes. | |
| 19  Q.   What is it? | |
| 20  A.   E-mails from Pamela to the broker and the | |
| 21        insured and cc'ing myself and then an e-mail from | |
| 22        the insured to Pamela, the broker, and cc'ing myself | |
| 23        regarding coverage determination. | |
| 24  Q.   Okay. Now, I want you to look at the | |
| 25        e-mail dated July 28 at 10:56 a.m. from Pamela | |
| | |
| Page 199 | |
| 1         Johnson to Susan Weiss and others. | |
| 2         Do you see that link? | |
| 3   A.   Yes. | |
| 4   Q.   And do you see there is reference to a | |
| 5         corrected version that's attached? | |
| 6   A.   Yes. | |
| 7   Q.   And that corrected version is the | |
| 8         corrected version of a coverage determination letter | |

| Deposition Designation | Objection & Response |
|---|---|
| 9     from OneBeacon.<br>10     Is that your understanding?<br>11   A.   Looking at this, yes.<br>12   Q.   And I want you to look at Exhibit 18.<br>13     Do you recognize that document?<br>14   A.   Yes.<br>15   Q.   What is it?<br>16   A.   It's Pamela Johnson's denial letter to<br>17     Andrea Garber.<br>18   Q.   Does this appear to you to be the<br>19     attachment to the e-mail on Exhibit 17 dated<br>20     July 28, 2014, at 10:56 a.m. from Pamela Johnson?<br>21   A.   It does.<br>22   Q.   Okay. Now, in relation to this denial<br>23     letter, did your involvement in the adjustment of<br>24     the DIG claim end before or after this denial<br>25     letter?<br><br>Page 200<br>1   A.   My involvement in the claim had not ended<br>2     at that point because I think that we also received<br>3     a response back at some point later down the line,<br>4     which I then inputted to our computer system. So I<br>5     was still involved in the claim but I wasn't dealing<br>6     with it directly.<br><br>17   Q.   Do you recognize the letter marked<br>18     Exhibit 19?<br>19   A.   Yes.<br>20   Q.   What is it?<br>21   A.   It appears to be the response from the<br>22     insured to Pamela Johnson. I'm sorry. From Lucia | Defendant's Objections:<br>(200:17-19) and to exhibit 19 as it is hearsay; not authenticated; not relevant; foundation, prejudicial FRE 401, 403, 601, 801, 802<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non hearsay purpose; foundation present; admission by party opponent; exhibit is business record, self-authenticating, and a Defendant-produced document. |

| Deposition Designation | Objection & Response |
|---|---|
| 23      Coyoca of Mitchell Silberberg & Knupp to Pamela<br>24      Johnson.<br>25   Q.   Did you continue to be involved in the<br><br>Page 201<br>1      adjustment of the DIG claim after the letter marked<br>2      Exhibit 19?<br>3   A.   I believe I was the one that put it into<br>4      the system, if it's in the system. But, again, my<br>5      involvement was very limited in the claim at that<br>6      point.<br><br>23   Q.   Do you recognize the letter marked<br>24      Exhibit 20?<br>25   A.   Yes.<br><br><br><br>Page 202<br>1   Q.   What is it?<br>2   A.   It appears to be Pamela Johnson's response<br>3      to Ms. Coyoca.<br>4   Q.   Did you have any involvement in the<br>5      adjustment of the DIG claim after September 19,<br>6      2014, the date of this letter?<br>7   A.   I believe my name was still attached to<br>8      the file -- the system. But in terms of what was<br>9      occurring in the day-to-day of it or however long it<br>10      was, I did not have any involvement in that.<br>11   Q.   Okay. So the DIG claim comes in on<br>12      July 15, 2014, as far as you know; right? | Defendant's Objections:<br>Object to exhibit 19 as it is hearsay; not authenticated; not relevant; foundation, prejudicial FRE 401, 403, 601, 801, 802<br><br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non hearsay purpose; foundation present; admission by party opponent; exhibit is business record, self-authenticating, and a Defendant-produced document. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 13  A.   As far as I'm aware, yes.<br>14  Q.   And you received that claim from the<br>15       Canton system, I think you said?<br>16  A.   I don't remember exactly how I got it. I<br>17       think it came in -- there had been a process for a<br>18       long time where a -- the broker could send claims<br>19       directly to the claims department. So I think<br>20       that's what happened in this instance.<br>21  Q.   Okay. But it was sent to you?<br>22  A.   Eventually, yes.<br>23  Q.   And when you received the claim, what did<br>24       you understand your role to be in terms of adjusting<br>25       the claim?<br><br>Page 203<br>1   A.   Speaking with the insured, speaking with<br>2        the broker, reviewing the e-mail that had been sent<br>3        to them from the head of security at NBC,<br>4        investigating the claim, investigating and searching<br>5        online for what was going on over there, and help in<br>6        the determination of coverage. And if there --<br>7        yeah.<br>8   Q.   And how was it that you were going to help<br>9        in the determination of coverage? What was your<br>10       understanding at the time you received the claim?<br>11  A.   Reviewing the facts of the loss, dealing<br>12       with the research that we had done, and then<br>13       applying it to the policy.<br>14  Q.   You said "reviewing the facts of the<br>15       loss."<br>16       What were the facts of the loss in | |

| Deposition Designation | Objection & Response |
|---|---|
| 17      connection with the DIG claim? | |
| 18   A.   The e-mail that had been sent to us by the | |
| 19      head of NB- -- head of NBC security in Israel and | |
| 20      then the information that was eventually provided to | |
| 21      us by the broker and the insured. | |
| 22   Q.   Anything else? | |
| 23   A.   No. | |
| 24   Q.   What was the information provided by the | |
| 25      broker and the insured? | |
| | |
| Page 204 | |
| 1   A.   I don't remember the specific conversation. | |
| 3   Q.   Did you receive that information orally or | |
| 4      in writing? | |
| 5   A.   I believe it was orally. Well, the | |
| 6      initial e-mail with the head of security came in | |
| 7      writing from them to us. | |
| 8   Q.   Right. | |
| 9   A.   But there was a -- a conversation | |
| 10      thereafter that we had, which was an oral | |
| 11      conversation. | |
| 12   Q.   And do you remember what information was | |
| 13      provided by the broker and the insured in that | |
| 14      conversation? | |
| 15   A.   Not really, no. | |
| 16   Q.   Anything about it? | |
| 17   A.   No. | |
| 18   Q.   Okay. So you reviewed the facts of the | |
| 19      loss, and you've told me what you consider to be the | |
| 20      universe of the facts of the loss; right? | |
| 21   A.   Are we still talking about the day we | |
| 22      received it? | |
| 23   Q.   I want to know what your understanding | |

| Deposition Designation | Objection & Response |
|---|---|
| was <br> 24     at the beginning when you received the claim of what <br> 25     your role would be in adjusting the claim. <br><br> <u>Page 205</u> <br> 1     Okay? <br> 2   A.   Uh-huh. <br> 3   Q.   My understanding from your testimony was <br> 4     that when you received the claim, you understood <br> 5     your role to be, one, review the facts of the loss; <br> 6     two, review the research that you did; and, three, <br> 7     applying that research to the policy. <br> 8     That's what you understood at the time <br> 9     that you -- your role would be in adjusting the <br> 10     claim? <br> 11   A.   Well, as well as speaking with the insured <br> 12     and the broker. Yes. Sorry. I didn't realize that <br> 13     that wasn't one of the ones. <br> 14   Q.   When you received the claim, what did you <br> 15     understand would be the research that would need to <br> 16     be conducted? <br> 17   A.   Googling websites, news sites, to <br> 18     determine -- to just get a better understanding of <br> 19     what was going on over there. <br> 20   Q.   When you say "understanding of what was <br> 21     going on over there," what do you mean exactly? <br> 22   A.   I don't recall my exact headspace. But I <br> 23     don't believe I really had a very good understanding <br> 24     at that time period of what was occurring in Israel | |

| Deposition Designation | Objection & Response |
|---|---|
| 25     at that time. | |
| | |
| Page 206 | |
| 1  Q.  You mean what physically was occurring on | |
| 2      the ground? | |
| 3  A.  Yes. | |
| | |
| 23  Q.  Why did you need to know what was going on | |
| 24     to evaluate the claim? | |
| 25  A.  Research is always beneficial. | |
| | |
| Page 207 | |
| 7  Q.  So you weren't looking for anything in | |
| 8     particular? You were just looking for anything out | |
| 9     there relating to the situation in Israel as it was | |
| 10    unfolding? | |
| 11  A.  I guess that's a fair statement. Yes. | |
| 12  Q.  Were you -- were you using search terms? | |
| 13     How did you search for the information? | |
| 14  A.  I have no idea what I did then. | |
| 15  Q.  You have no idea what you did on the | |
| 16     Internet to search for information? | |
| 17  A.  At that time, no, I don't recall. | |
| 18  Q.  Did you use Google? | |
| 19  A.  I don't recall. I'm -- my main word | |
| 20     search sites are Yahoo!, Google, and Bing, and | |
| 21     barely ever Bing. So Google is my main one. | |
| 22  Q.  And did you search using keywords? | |
| 23  A.  I don't recall. | |
| | |
| Page 208 | |
| 11  Q.  Okay. So what did you mean when you said | |
| 12     "apply it to the policy"? | |
| 13  A.  Determining what, if any, coverages the | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 14      facts of the loss could apply to. | |
| 18   Q.   You applied the facts and the research to<br>19       the policy with the guiding principle that, "we,"<br>20       meaning OneBeacon, "really want to find coverage."<br>21   A.   Yes. | |
| 25   Q.   Okay. And then you also said you added | |
| Page 211<br>1   Q.   It's dated July 28, 2014; correct?<br>2   A.   Yes.<br>3   Q.   So at some point prior to July 28, 2014,<br>4       Pamela Johnson became the lead on the DIG claim;<br>5       correct?<br>6   A.   Yes. I -- just the words of the -- the<br>7       key is -- in the system itself, my name probably<br>8       said I was the adjuster. But in terms of who was<br>9       actually leading the claim, almost from the start<br>10      Pamela was leading this claim. | |
| Page 215<br>12   Q.   You said you also applied facts, research<br>13      to the policy; correct?<br>14   A.   Uh-huh.<br>15   Q.   You did that -- "yes"?<br>16   A.   Yes.<br>17   Q.   You did it before Pamela did it; is that<br>18      correct?<br>19   A.   I don't recall.<br>20   Q.   Did you form any conclusions through your<br>21      application of the facts and the research to the<br>22      policy or opinions? | |

| Deposition Designation | Objection & Response |
|---|---|
| 23   A.   I don't recall. It's been three years.<br>24         But that would be the typical claims process.<br>25   Q.   Okay. And if you had formed an opinion or<br><br>Page 216<br>1         a conclusion, you would have communicated that<br>2         opinion or conclusion to Pamela; right?<br><br>5    THE WITNESS: I don't recall in this<br>6         claim. But that would be a typical process.<br><br>23   Q.   Was it terrorism? Was terrorism the cause<br>24         of the loss?<br><br>Page 217<br>1    THE WITNESS: No.<br><br>3    Q.   Could it have been the cause of the loss?<br><br>6    THE WITNESS: No.<br><br>8    Q.   Why not?<br>9    A.   Everything that I saw, the missiles<br>10        shooting from Palestine to Israel, the missiles<br>11        shooting from Israel to Palestine, MSNBC writing,<br>12        "This is a war," everything -- I mean, tanks,<br>13        soldiers, this -- that -- that was a war. It<br>14        wasn't -- it wasn't a terrorist act.<br>15   Q.   There's no facts or evidence that would<br>16        suggest the loss was caused by terrorism?<br><br>19   THE WITNESS: When I think of terrorism, I<br>20        think of 9/11. I think of the Boston Marathon. I<br>21        think of Oklahoma City. This was not terrorism. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 23  Q.  That opinion that you've just articulated, <br> 24       you don't recall whether you ever <br>          communicated that <br> 25       to Pamela or Peter at any point prior to the | |

Page 218

1       July 28, 2014 denial letter; is that your
        testimony?
2   A.  That's correct.

12  Q.  What was Pamela's role in the adjustment
13      of the DIG claim?
14  A.  She was doing very similar things as I was
15      and also doing her research and
        investigation. And,
16      as you can see, she was also the one that
        wrote the
17      opinions and cover letters -- coverage
        letters.
18  Q.  She was responsible for making the
19      ultimate coverage decision?
20  A.  I don't know.
21  Q.  What was Peter's role?
22  A.  He was the president of OneBeacon
23      Entertainment.
24  Q.  What was his role in connection with the
25      DIG claim?

Page 219

1   A.  Providing his opinion.
2   Q.  Did he make the ultimate decision
3       regarding whether or not there was
        coverage?
4   A.  No. I don't think that would have been
5       his role.
6   Q.  Who did?
7   A.  It was Pamela. But I don't know if she
8       consulted with anyone above her as well.

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 220<br>13    THE REPORTER: Exhibit 21?<br>14    MR. HAYES: Yes.<br>15        (Exhibit 21 was marked<br>16        for identification.)<br><br>18    Q.    Do you recognize the document that's been<br>19          marked Exhibit 21?<br>20    A.    Without reading line for line, yes.<br>21    Q.    What is it?<br>22    A.    It appears to be our electronic file.<br>23    Q.    This is the electronic file that OneBeacon<br>24          opens for every new claim?<br>25    A.    Yes.<br><br>Page 221<br>1    Q.    And this is the one that pertains to the<br>2          DIG claim?<br>3    A.    It appears that way. Yes.<br>4    Q.    Was there a paper file that corresponded<br>5          with the DIG claim?<br>6    A.    Not that I can recall.<br><br>15    Q.    Mr. Gutterman, we went over what your<br>16          understanding of your role in adjusting the DIG<br>17          claim would be. I anticipate this is going to be<br>18          duplicative. But I just want to make sure we know<br>19          what you actually did in adjusting the DIG claim.<br>20          Okay?<br>21    A.    Okay.<br>22    Q.    It may be completely co-extensive with<br>23          what you've already testified to, but I just want to<br>24          make sure we have that clear understanding | Defendant's Objections:<br>See Defendant's objections to Plaintiffs' exhibit 21, incorporate herein.<br><br>Plaintiff's Response:<br>See Plaintiffs' response to Defendants' objections to exhibit 21, incorporated herein. Relevant to bad faith, admission by a party opponent, business record. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| on the | |
| 25     record. | |
| | |
| Page 222 | |
| 1     Okay? | |
| 2     My understanding is that, in connection | |
| 3     with adjusting the DIG claim, you actually reviewed | |
| 4     the facts of the loss, which included information | |
| 5     from the broker and the insured and the letter from | |
| 6     NBC security; is that correct? | |
| 7  A.  The e-mail. Yes. | |
| 8  Q.  The e-mail from security; is that correct? | |
| 9  A.  Yes. | |
| 10  Q.  You researched using Google and the | |
| 11    Internet. | |
| 12  A.  I don't remember if it was Google. But, | |
| 13    yes, it was using the Internet. | |
| 14  Q.  Okay. You talked to the insured and the | |
| 15    broker. You collected facts from them; yes? | |
| 16  A.  I believe so. I don't remember that | |
| 17    conversation. But that's what we would have -- I'm | |
| 18    sure that's what we would have done on the 15th. | |
| 19    Yes. | |
| 20  Q.  Okay. And you took the facts of the loss | |
| 21    that we just discussed, whatever facts you may have | |
| 22    learned in conversations from the -- with the | |
| 23    insured and the broker and whatever research you did | |
| 24    on the Internet, you took all that, and you applied | |
| 25    it to the policy to determine whether there was | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 223 | |
| 1      coverage. | |
| 2   A.   I don't recall if I did that specifically | |
| 3         in regards to DIG. But, again, that would be our | |
| 4         normal claims process. | |
| 5   Q.   You don't know whether or not you took the | |
| 6         facts of the loss, the research that you did, what | |
| 7         you learned from the insured, and applied it to the | |
| 8         policy to determine whether there was coverage? | |
| 9   A.   I don't specifically remember if I did | |
| 10        that. But that's exactly what I would do in every | |
| 11        single claim. | |
| 12   Q.   Do you have any reason to believe you did | |
| 13        not do that in connection with the DIG claim? | |
| 14   A.   No. | |
| 15   Q.   Did you do anything else other than what | |
| 16        I've just summarized in connection with the | |
| 17        evaluation of the DIG claim? | |
| 18   A.   I believe we had another conversation with | |
| 19        them again. But that's probably -- you're saying | |
| 20        the same thing. But I don't want to put words in | |
| 21        your mouth. I believe we had another conversation | |
| 22        with the broker and the insured a few days later or | |
| 23        a couple of days later. But that was, again, | |
| 24        fact-finding. | |
| 25   Q.   So we've got two conversations with the | |
| | |
| Page 224 | |
| 1      insured and the broker. | |
| 2   A.   Correct. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 3  Q.  Anything else that you remember actually<br>4      doing besides what I've just summarized in<br>5      connection with the evaluation of the DIG<br>        claim?<br>6  A.  Well, I would continue to put information<br>7      into the system, our CWS system, which is<br>        this.<br>8  Q.  Would you characterize that as a -- like a<br>9      clerical task, just inputting information?<br>10 A.  For this claim, I would say "yes."<br>11 Q.  Anything else that you did in connection<br>12     with the DIG claim?<br>13 A.  Nothing comes up to my mind now.<br>14 Q.  And you did all of this with the goal of<br>15     finding coverage; right? Your fact-finding,<br>        your<br>16     research, your application of the same to the<br>17     policy, all of that was done with a goal of<br>        finding<br>18     coverage; right?<br><br>21    THE WITNESS: Yes.<br><br>Page 225<br>10 Q.  Do you recognize the document marked<br>11     Exhibit 12.<br>12 A.  Yes.<br>13 Q.  What is it?<br>14 A.  An e-mail chain.<br>15 Q.  I want you to look at the page marked<br>16     ATL 1102.<br>17 A.  Okay.<br>18 Q.  Do you see the e-mail from Lucy Lopez to<br>19     OBE Claims with a cc to you and Pamela<br>        Johnson?<br>20 A.  Yes.<br>21 Q.  It's dated July 15, 2014, at 10:25 a.m.?<br>22 A.  Yes.<br>23 Q.  Is that the e-mail pursuant to which you<br>24     first became aware of the DIG claim? | |

| Deposition Designation | Objection & Response |
|---|---|
| 25  A.  It appears so. Yes. | |
| | |
| Page 226 | |
| 10  Q.  I want you to look at the page marked | |
| 11       ATL 1105 and ATL 1104. | |
| 12  A.  Okay. | |
| 13  Q.  This is an e-mail from Randi Richmond at | |
| 14       NBCUniversal to Andrea Garber with a copy to Mark | |
| 15       Binke and Kurt Ford dated July 14, 2014, at | |
| 16       12:44 p.m. | |
| 17       Do you see that? | |
| 18  A.  Yes. | |
| 19  Q.  And this e-mail was forwarded to you, | |
| 20       among other portions of the chain, on July 15, 2014, | |
| 21       at 10:25 a.m.? | |
| 22  A.  It appears that way. Yes. | |
| 23  Q.  And the e-mail from Randi Richmond to | |
| 24       Andrea Garber and others itself forwards an e-mail | |
| 25       from Stephen Smith, head of security for Europe, | |
| | |
| Page 227 | |
| 1       International Security & Crisis Management for | |
| 2       NBCUniversal International; is that correct? | |
| 3  A.  Yes. | |
| 4  Q.  Is that the e-mail from NBC Security that | |
| 5       you referred to in your prior testimony which was | |
| 6       part of the facts of the loss that you reviewed? | |
| 7  A.  Yes. | |
| 8  Q.  And did you review that e-mail from NBC | |
| 9       Security upon your receipt of the e-mail at page | |
| 10       ATL 1102? | |

**238**

| Deposition Designation | Objection & Response |
|---|---|
| 11   A.   I don't recall if I did or didn't. But<br>12         I'm sure I would have.<br>13   MR. HAYES: This is going to be<br>14         Exhibit 22.<br>15         (Exhibit 22 was marked<br>16         for identification.)<br>17   BY MR. HAYES:<br>18   Q.   Do you recognize the document marked<br>19         Exhibit 22?<br>20   A.   Yes.<br>21   Q.   What is it?<br>22   A.   An e-mail chain.<br>23   Q.   I want you to look at the e-mail on page<br>24         ATL 1392 --<br>25   A.   Okay.<br><br>Page 228<br>1    Q.   -- from Pamela Johnson to Peter Williams<br>2          and a cc to you dated July 15, 2014, at 5:58<br>           p.m.<br>3          Do you see that e-mail?<br>4    A.   Yes.<br>5    Q.   The e-mail says, "Let's do the call at<br>6          2:00" eastern "and use my conference call<br>7          number . . . "<br>8          Do you see that?<br>9    A.   Yes.<br>10   Q.   Do you understand from reviewing this<br>11         document what call that e-mail is referring<br>           to?<br>12   A.   No.<br><br>14         I want you to look down at the e-mail at<br>15         the bottom of the page, July 15, 2014, at<br>           8:48 p.m.<br>16         from Pamela Johnson.<br>17         "I suggest we have a call about this<br>18         tomorrow. Danny and I had a conversation<br>           with<br>19         Susan and Andrea today about what the | |

| Deposition Designation | Objection & Response |
|---|---|
| 20    production's plans were, but we didn't make any<br>21    representations about whether there was<br>22    coverage but we also did not alert them that<br>23    this might not be a covered claim."<br>24    Do you see that?<br>25  A.  Yes.<br><br>Page 229<br>1  Q.  Does that refresh your recollection that<br>2    the first conversation you had with NBCUniversal<br>3    about the DIG claim was on July 15, 2014?<br>4  A.  Yes.<br>5  Q.  And who was present on that call?<br>6  A.  Pamela Johnson, myself, Susan Weiss, and<br>7    Andrea Garber, based upon this e-mail.<br>8  Q.  And do you recall what was discussed?<br>9  A.  I do not, beyond what the e-mail says.<br>10  Q.  Is the e-mail an accurate representation<br>11    of what was discussed?<br>12  A.  I don't recall what was discussed. So I<br>13    will go by what the Pamela -- Pamela's e-mail says.<br>14  Q.  Do you have any reason to believe that<br>15    what Pamela says in her July 15, 2014 e-mail at<br>16    8:58 p.m. regarding that call is in any way<br>17    incorrect?<br>18  A.  No.<br>19  Q.  Did NBCUniversal mention terrorism in that<br>20    call?<br>21  A.  I don't recall.<br>22  Q.  That was the first of two calls you can<br>23    recall in which you were a party and NBCUniversal<br>24    was also a party; is that right?<br>25  A.  I believe I was involved in two calls. | |

**240**

| Deposition Designation | Objection & Response |
|---|---|
| Page 230<br>1     Yes.<br>2  Q.  Okay. And that was the first one?<br>3  A.  I believe so. Yes.<br>4  Q.  Now, if you look back at that first<br>5     reference, "Let's do the call at 2:00" eastern "and<br>6     use my conference call number," and you also look<br>7     down at the part where Pamela says, "I suggest we<br>8     have a call about this tomorrow," does that refresh<br>9     your recollection that you, Pamela Johnson, and<br>10    Peter Williams had a call about the DIG claim on<br>11    July 16, 2014?<br>12  A.  It does not.<br>13  Q.  Did you ever have a call with Peter<br>14    Williams and Pamela Johnson about the DIG claim?<br>15  A.  I don't recall.<br>16  Q.  You don't recall whether or not you ever<br>17    had a call about the DIG claim with Pamela Johnson,<br>18    Peter Williams, and yourself?<br>19  A.  That's correct. I do not recall.<br>20  Q.  Okay. Are there any documents that might<br>21    refresh your recollection on that point that you can<br>22    think of?<br>23  A.  No.<br>24  Q.  If you had a call, would you have taken<br>25    notes?<br><br>Page 231<br>1  A.  Potentially.<br>2  Q.  Would those notes have been in<br>3    handwriting? | |

**241**

| Deposition Designation | Objection & Response |
|---|---|
| 4    A.    Potentially.<br>5    Q.    And if you had taken notes, where would<br>6          they be today?<br>7    A.    I don't know.<br>8    Q.    If you had created a paper file in<br>9          connection with the DIG claim, would they<br>            be in that<br>10         file?<br>11   A.    Potentially, yes.<br>12   Q.    And if you had created a paper file in<br>13         connection with the DIG claim, that file<br>            would be at<br>14         your office here in L.A.; right?<br>15   A.    Potentially, yes.<br><br>17         Exhibit 23.<br>18         (Exhibit 23 was marked<br>19         for identification.)<br>20   BY MR. HAYES:<br>21   Q.    Do you recognize the document marked<br>22         Exhibit 23?<br>23   A.    Yes.<br>24   Q.    What is it?<br>25   A.    An e-mail chain.<br><br>Page 232<br>1    MR. HAYES: This is going to be<br>2         Exhibit 24.<br>3         (Exhibit 24 was marked<br>4         for identification.)<br>5    BY MR. HAYES:<br>6    Q.    Do you recognize the document marked<br>7         Exhibit 24?<br>8    A.    Yes.<br>9    Q.    What is it?<br>10   A.    It appears to be a -- an invitation for a<br>11        conference call.<br>12   Q.    I want you to look at Exhibits 23 and 24<br>13        together, review those documents, and tell<br>            me | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 14 whether these documents together refresh your<br>15 recollection that on July 17, 2014, you had the<br>16 second of two calls with NBCUniversal regarding the<br>17 DIG claim.<br>18 A. Yes.<br>19 Q. Do you recall anything that was discussed<br>20 on that July 17 call?<br>21 A. Not more than what was described by Susan<br>22 Weiss.<br>23 Q. I'm not sure what you mean.<br>24 A. Upon reading this, now I'm -- we -- we<br>25 must have discussed the situation in Israel.<br><br>Page 233<br>1 Q. What did you discuss?<br>2 A. I don't recall.<br>3 Q. You don't recall anything about the<br>4 conversation?<br>5 A. I believe that they were telling us that<br>6 more things were occurring in Israel and that they<br>7 were potentially going to be moving at that point.<br>8 Q. Did the -- strike that.<br>9 Do you recall anything else about that<br>10 conversation, what you said, what Pamela said, what<br>11 anybody at NBCUniversal said, anything at all?<br>12 A. No.<br>13 Q. Would it have been your practice to have<br>14 taken notes during this call?<br>15 A. Potentially, yes.<br>16 Q. And if you had taken notes, would they<br>17 have been handwritten notes?<br>18 A. Potentially, yes. Actually, I don't know.<br>19 Would it have been my practice? It could | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| have been | |
| 20    either that, or it could have been typed. | |
| 21  Q.  But if you had taken handwritten notes, | |
| 22    you would have put those in the paper file for this | |
| 23    claim, to the extent you had a paper file; right? | |
| 24  A.  If I had one, yes. | |
| 25  Q.  And if you had a paper file, it would be | |
| | |
| Page 234 | |
| 1    in your office? | |
| 2  A.  Potentially, yes. | |
| 3  Q.  Today? | |
| 4  A.  I'm sorry? | |
| 5  Q.  Today. | |
| 6  A.  Yes. | |
| 7  Q.  And if you had taken handwritten notes and | |
| 8    did not put the handwritten notes in the paper file, | |
| 9    you may have transcribed your handwritten notes into | |
| 10    electronic form and put those in the file. | |
| 11    Is that a possibility as well? | |
| 12  A.  Yes. | |
| 13  Q.  Do you remember whether or not you did | |
| 14    that on this occasion? | |
| 15  A.  Well, going back to Exhibit 21, it doesn't | |
| 16    appear that the second one that you brought up | |
| 17    occurred. No. | |
| 18  Q.  So if you had taken notes during this | |
| 19    July 17 call and thereafter transcribed your notes | |
| 20    into electronic form, if that had happened, you | |
| 21    would have put those transcribed notes into the DIG | |
| 22    claim file? | |
| 23  A.  That's very typical. That's my claims | |

| Deposition Designation | Objection & Response |
|---|---|
| 24      process. Yes. <br> 25   Q.   Which file? The electronic file or the <br><br> Page 235 <br> 1      paper file? <br> 2   A.   Both. But I don't -- there is not a paper <br> 3      file that I can find anywhere. <br> 4   Q.   Okay. So you've looked? <br> 5   A.   I've looked. Yes. <br> 6   Q.   But it would have also been in the <br> 7      electronic file -- right? -- the transcribed notes, <br> 8      had you taken them? <br> 9   A.   Potentially, yes. <br> 10   Q.   When you say "potentially," what are <br> 11      you -- if you -- I'm asking you to assume that you <br> 12      took notes and that you transcribed them. If those <br> 13      two things happened -- <br> 14   A.   Yes. They would have gone into -- yes. <br> 15   Q.   The electronic file? <br> 16   A.   (No audible response.) <br> 17   Q.   "Yes"? <br> 18   A.   Yes. <br> 19   Q.   Marked Exhibit 21? <br> 20   A.   Correct. <br> 21   Q.   And they're not; right? <br> 22   A.   It does not appear that they are now. <br> 23   MR. HAYES: This is going to be <br> 24      Exhibit 25. <br><br> Page 236 <br> 4   Q.   Do you recognize the e-mail chain marked <br> 5      Exhibit 25. <br> 6   A.   Yes. <br> 7   Q.   I want you to look at the bottom of the <br> 8      page marked AONNBCU3242. And it's an e-mail from | |

| Deposition Designation | Objection & Response |
|---|---|
| 9    you to Andrea Garber and others, including Pamela<br>10   Johnson, dated July 21, 2014, at 5:06 p.m.<br>11   Do you see that e-mail?<br>12 A. Yes.<br>13 Q. I'd like you to read the text of that<br>14   e-mail into the record.<br>15 A. "Hi Andrea and Susan -<br>16   "I hope you're both doing well.<br>17   "Are you both available tomorrow at 4pm"<br>18   Pacific time "for a conference call?<br>19   "Best Regards.<br>20   "Danny Gutterman."<br>21 Q. Does that refresh your recollection that<br>22   you had another call with NBCUniversal on July 22,<br>23   2014?<br>24 A. I don't remember that call.<br>25 Q. You don't remember having a call with<br><br>Page 237<br>1   NBCUniversal on July 22, 2014?<br>2 A. That's correct.<br><br>17 Q. You don't recall a telephone conversation<br>18   in which OneBeacon told representatives of<br>19   NBCUniversal that the DIG claim would be denied?<br>20 A. No.<br>21 Q. You weren't on one of -- that call if it<br>22   happened?<br>23 A. I'm not saying that. I could have been.<br>24   I don't recall it.<br>25 Q. Okay. Let's go back to Exhibit 12.<br><br>Page 238<br>1   So I want you to have in your mind the<br>2   telephone conversation that you had with<br>3   NBCUniversal on July 15, 2014. | |

| Deposition Designation | Objection & Response |
|---|---|
| 4     Do you have that call in mind?<br>5  A.  Okay.<br>6  Q.  That's the same day you received notice of<br>7     the claim; right?<br>8  A.  Yes.<br>9  Q.  Now I want you to look at the e-mail at<br>10    the top of the page marked 1102. It's dated<br>11    July 15, 2014, at 4:14 p.m., and it's from you to<br>12    Peter Williams.<br>13    Do you see that?<br>14  A.  On the second page?<br>15  Q.  Yeah. It's marked 1102.<br>16  A.  Yes.<br>17  Q.  Do you see that e-mail?<br>18  A.  I do.<br>19  Q.  Please read that e-mail into the record.<br>20  A.  "Hi Peter -<br>21    "Per the below, you spoke with Andrea<br>22    Garber / Susan Weiss about this.<br>23    "Any chance you happened to suggest that<br>24    they push for more than just the week, since<br>25    the crew needs to be advised at least one week<br><br>Page 239<br>1     in advance for a push and since a ground war<br>2     still might occur (per the support from CBS<br>3     News from 2 days ago.)"<br>4     And then there is a link. Would you like<br>5     me to read the link?<br>6  Q.  No.<br>7  A.  "Best regards.<br>8     "Danny Gutterman."<br>9  Q.  Can you recall whether you sent this<br>10    e-mail before or after your phone conversation with<br>11    NBCUniversal on July 15?<br>12  A.  I can't recall. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 13 Q. Why did you send this e-mail to Peter<br>14      Williams?<br>15 A. To ask him whether or not he suggested<br>16      that they push for more than just the week since the<br>17      crew needs to be advised at least one week in<br>18      advance for a push and since the ground war still<br>19      might occur.<br>20 Q. Why did you want to know that?<br>21 A. To determine whether or not the -- why<br>22      would I need to know that? When there's extra<br>23      expense claims, we always try and find out whether<br>24      or not crew is being held on or not.<br>25 Q. What does that mean, "held on"?<br><br>Page 240<br>1 A. They're still being paid without actually<br>2      doing any work. If an actress gets sick and there's<br>3      not enough time to tell the crew, then you have to<br>4      pay the crew for the next day.<br>5 Q. So I'm not clear what that means in the<br>6      context of this e-mail.<br>7      Why did you want to know if he happened to<br>8      suggest that they push for more than just the week?<br>9 A. Based upon the e-mail that -- well, let me<br>10      put this -- I don't recall writing this 'cause it<br>11      was over two years ago, two and a half years ago.<br>12      But -- and so I don't know my exact head space at<br>13      that particular time period.<br>14      But if I was to venture to say, it's based | |

| Deposition Designation | Objection & Response |
|---|---|
| 15     upon reading the e-mail from Stephen Smith, the head | |
| 16     of security Europe at NBC and -- as well as looking | |
| 17     at this video which shows -- which says that the | |
| 18     clash between Israel and the Palestines [sic] is | |
| 19     ground war -- is ground war next. | |
| 20   Q.   So at the time you wrote this e-mail, | |
| 21     July 15, 2014, at 4:14 p.m., was there a war in | |
| 22     Israel? | |
| | |
| Page 241 | |
| 2   Q.   In your opinion. | |
| 3   A.   I don't recall if I thought that there was | |
| 4     at that point or not. I think that was the only | |
| 5     video I had seen, and I don't remember what that | |
| 6     video looks like. | |
| 7   Q.   Why was it relevant that a ground war | |
| 8     still might occur? Why did you write that? | |
| 9   A.   'Cause it had to do with the escalation | |
| 10     possibility. | |
| 11   Q.   What does that mean, "because it had to do | |
| 12     with the escalation possibility"? | |
| 13   A.   It didn't appear that what was occurring | |
| 14     over there was going to deescalate, only escalate. | |
| 15     And that's also what was told to us by the head of | |
| 16     security. | |
| 17   Q.   My question is: Why did you want to know | |
| 18     if Peter had told them to push for more than a week | |
| 19     because a ground war still might occur? What's the | |
| 20     connection? | |
| 21   A.   If the -- it's a way of saving the | |

| Deposition Designation | Objection & Response |
|---|---|
| 22     production money. If they can let the crew know<br>23     early enough on, they may be able to let the crew go<br>24     so they don't have to pay for the crew for that time<br>25     period.<br><br>Page 242<br>1   Q.   I want you to go back to the e-mail marked<br>2      ATL 1105.<br>3   A.   Okay.<br>4   Q.   If you look at the very last line of<br>5      Stephen Smith's e-mail, he says, "Personnel based in<br>6      country in relation to this production should make<br>7      arrangements to leave."<br>8      Do you see that?<br>9   A.   Yes.<br>10   Q.   So he was already recommending that<br>11     personnel based in country should make arrangements<br>12     to leave.<br>13   A.   Okay.<br>14   Q.   So why -- why is it relevant that a ground<br>15     war still might occur? We've already got an e-mail<br>16     from security saying that the situation requires<br>17     personnel to leave.<br><br>20   THE WITNESS: This doesn't definitively<br>21     state whether those arrangements were made or not.<br>22     This is just a -- it's a suggestion. I mean, I was<br>23     asking Peter to find out, based upon this<br>24     conversation he had with Susan Weiss and Andrea | |

| Deposition Designation | Objection & Response |
|---|---|
| 25      Garber, was that brought up.<br><br>**Page 243**<br>6    Q.   Did you think the personnel should leave<br>7          because of the situation?<br>8    A.   I don't -- I don't recall at that<br>9          particular moment what I was thinking.<br>10   Q.   On July 15, 2014, at 4:14 p.m., when you<br>11         apparently gathered from the Internet that a ground<br>12         war might occur, did you think the personnel should<br>13         leave at that point?<br>14   A.   They had to do what was prudent<br>15         safetywise.<br>16   Q.   But wasn't NBCUniversal security on the<br>17         ground in Israel in the best position to decide what<br>18         was prudent?<br><br>21   THE WITNESS: They were -- the in- -- the<br>22         information we were receiving was from them, as well<br>23         as what we were getting from online.<br>24   BY MR. HAYES:<br>25   Q.   Was the existence or non-existence of a<br><br>**Page 244**<br>1          ground war part of the facts that you considered<br>2          when applying the policy language?<br>3    A.   Me personally?<br>4    Q.   Yes.<br>5    A.   At this particular time?<br>6    Q.   Yes.<br>7    A.   I don't -- I don't really think that I was<br>8          thinking about the policy at that point. I don't<br>9          know.<br>10   Q.   Did the existence or non-existence of a | |

| Deposition Designation | Objection & Response |
|---|---|
| 11      ground war factor into your analysis of the policy<br>12      at any time?<br><br>15   THE WITNESS: Yes.<br>16   BY MR. HAYES:<br>17   Q.   When?<br>18   A.   I don't remember the exact date.<br>19   Q.   And how did it factor into your analysis<br>20        of whether or not the loss was covered in connection<br>21        with the DIG claim?<br>22   A.   Ground war is one portion -- one aspect of<br>23        war.<br>24   Q.   The fact that a ground war was occurring,<br>25        if it was, would have been a fact that would have<br><br>Page 245<br>1        suggested the loss was not covered.<br>2        Is that accurate pursuant to what your<br>3        understanding was and opinion was at the time?<br>4    A.   It would be one of others. Yes.<br><br>Page 246<br>2    Q.   If NBCUniversal had moved the production<br>3        of DIG after a ground war started, would the extra<br>4        expenses incurred in connection with that move been<br>5        a loss that was covered or not?<br>6    A.   It still would not have been covered.<br>7    Q.   Would the fact that a ground war was<br>8        already occurring have affected the analysis?<br>9    A.   It was one portion of it.<br><br>14       Do you know NBCUniversal moved the | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| DIG<br>15    production out of Israel?<br>16  A.  No.<br>17  Q.  At the time you wrote this e-mail,<br>18    July 15, 2014, at 4:14 p.m., did you know that the<br>19    policy included the war exclusion?<br>20  A.  I don't recall.<br>21  Q.  Do you recall why you searched the<br>22    Internet to find the CBS News article copied in this<br>23    e-mail?<br>24  A.  To provide my supervisor more information<br>25    probably.<br><br>Page 247<br>1  Q.  Who was your supervisor? Peter?<br>2  A.  I'm sorry. To provide Peter, yes, my --<br>3    more information.<br>4  Q.  Did you have a conversation with Peter<br>5    about your e-mail?<br>6  A.  I don't remember.<br>7  Q.  When you say "push for more than just a<br>8    week," what does that mean? Does that mean push the<br>9    production and stay on-site? What did you mean by<br>10    "push"?<br>11  A.  I think that I just meant that they<br>12    weren't going to be working for another week.<br>13  Q.  Where would they be physically?<br>14  A.  I don't know.<br>15  Q.  What did you have in mind when you wrote<br>16    the e-mail?<br>17  A.  We always want to try and help the<br>18    insureds mitigate their losses as best as they<br>19    possibly can. And this looks like it was just me<br>20    asking Peter that he suggest it to them | |

| Deposition Designation | Objection & Response |
|---|---|
| because that<br>21    would be a way of the production saving costs.<br>22  Q.  How would delaying the production more<br>23    than a week assist in saving costs?<br>24  A.  Again, the crew would not be paid for that<br>25    week. If we told them in advance -- they need a | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 248 | |
| 1     one-week advance. If we told them in advance, we | |
| 2     wouldn't have to pay the crew for that extra week. | |
| 3  Q.  Well, what did a ground war have to do | |
| 4     with that? | |
| 5  A.  It had to do with escalation that was | |
| 6     occurring. That's -- I'm just using the words from | |
| 7     the CBS News, "is a ground war next; since a ground | |
| 8     war still might occur." | |
| 9  Q.  But how did the fact that a ground war | |
| 10    still might occur, according to this news article, | |
| 11    have anything to do with saving money on paying the | |
| 12    crew? | |
| | |
| 15   THE WITNESS: Once again, the crew would | |
| 16    not have to be paid if they were given advance | |
| 17    warning that they were not going to be working. If | |
| 18    the situation escalated, then they were going to | |
| 19    have to push anyway. So there's a cost saving | |
| 20    possibility there. | |
| | |
| 22  Q.  What did you mean when you said "ground | |
| 23    war"? | |
| 24  A.  Again, it's over two and a half years ago | |
| 25    so I don't know exactly what I meant when I wrote | |
| | |
| Page 249 | |
| 1     this e-mail. But Stephen Smith brought up "ground | |

**255**

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 2      campaign," and CBS News brought up "ground war." So<br>3      I was just utilizing, I guess, words that had been<br>4      presented to me.<br>5   Q.  But at some point during your analysis,<br>6      you determined that whether or not there was a<br>7      ground war was a relevant fact in determining<br>8      whether or not there was coverage?<br>9   A.  I don't know.<br>10  Q.  You don't know whether or not you thought<br>11      the occurrence of a ground war was a relevant fact<br>12      in determining whether there was coverage?<br>13  A.  I did not make the ultimate decision. But<br>14      if you're asking my opinion, that would have come<br>15      into play.<br>16  Q.  The occurrence of a ground war would have<br>17      come into play in the coverage determination?<br>18  A.  Yes.<br>19  Q.  How?<br>20  A.  The word "war" is right there.<br>21  Q.  So how would it have come into play?<br><br>24  THE WITNESS: The word "war" is right<br>25      there.<br><br>Page 250<br>2   Q.  What do you mean when you say "the word 'war' is right there"?<br>4   A.  "Since a ground war," is what I wrote when<br>5      CBS News wrote "war," these are . . . . . .<br>6   Q.  How would the presence of a ground war<br>7      have affected the analysis of whether or not the DIG<br>8      claim was covered? | |

**256**

| Deposition Designation | Objection & Response |
|---|---|
| 11   THE WITNESS: A ground war is one aspect<br>12       of war.<br>13  BY MR. HAYES:<br>14  Q.  So that fact would have weighed in favor<br>15      of denial of coverage; right?<br>16  A.  I don't know if it did at that specific<br>17      time. But when we did additional research, and I<br>18      saw the missiles being shot from Israel to Palestine<br>19      and from Palestine to Israel and the war planes and<br>20      the ground troops lining up and Israel calling up<br>21      50,000 guards -- 50,000 of their reservists,<br>22      that's -- ground war is only one piece of what was<br>23      many, many aspects that looked like war.<br>24  Q.  But it's a piece that suggests -- that<br>25      suggests that the loss is not covered, to you;<br><br>Page 251<br>1      right?<br>2  A.  Yes.<br>3  Q.  Okay. I want you to look at the document<br>4      marked Exhibit 22.<br>5      This is an e-mail from you to yourself<br>6      dated July 16, 2014.<br>7      Do you see that?<br>8  A.  Yes.<br>9  Q.  Can you read what it says.<br>10  A.  "Look up war exclusion. Look up war<br>11      definition."<br>12  Q.  And do you remember whether or not you had<br>13      spoken orally to Pamela Johnson or Peter Williams<br>14      before you wrote this note to yourself?<br>15  A.  I do not. | |

**257**

| Deposition Designation | Objection & Response |
|---|---|
| 16 Q. Why did you write this note to yourself?<br>17 A. 'Cause I believed it was relevant to the<br>18      claim.<br>19 Q. Did somebody instruct you to look up "war<br>20      exclusion"?<br>21 A. Not that I can recall.<br>22 Q. Did somebody instruct you to look up "war<br>23      definition"?<br>24 A. No. Not that I can recall.<br>25 Q. But you're saying that you did these<br><br>Page 252<br>1      things because you thought it was relevant to the<br>2      claim?<br><br>6 Q. Did you do these two things? Did you look<br>7      up "war exclusion"?<br>8 A. Yes.<br>9 Q. Did you look up "war definition"?<br>10 A. I don't recall.<br>11 Q. Why did you look up "war exclusion"?<br>12 A. 'Cause it was relevant to the claim.<br>13 Q. Why was it relevant to the claim?<br>14 A. 'Cause from the previous article that we<br>15      were just discussing, the word "ground war"<br>      came up,<br>16      and so it made me look at the war exclusion.<br>17 Q. So when you read the article that said<br>18      "ground war," you immediately thought the war<br>19      exclusion might apply?<br><br>23 Q. That is right?<br>24 A. No.<br>25 Q. How -- how soon after you read the article<br><br>Page 253<br>1      that said "ground war" did you start thinking | |

| Deposition Designation | Objection & Response |
|---|---|
| the<br>2        war exclusion might apply.<br>3    A.   I don't recall.<br>4    Q.   But it was sometime after you read the<br>5          article referenced on Exhibit 12, page 1102,<br>6          sometime after you read that article that you<br>7          thought the war exclusion might apply?<br><br>11   Q.   Is that right?<br><br>13   THE WITNESS: I don't recall.<br><br>18   Q.   The sequence is you read the news article<br>19          cited on the page marked 1102 of Exhibit<br>           12.<br>20   A.   Yes.<br>21   Q.   Then at some point after your reading that<br>22          article, you determine that the war exclusion<br>           might<br>23          be an issue for the DIG claim.<br><br>Page 254<br>1    THE WITNESS: It appears to be that way.<br>2          Yes.<br><br>Page 255<br>3    Q.   Okay. How did you look up "war<br>4          exclusion," if you did?<br>5    A.   In the policy.<br>6    Q.   So you went to the policy, and you read<br>7          the war exclusion.<br>8    A.   I don't recall if I did. But at some<br>9          point I would have done that, yes.<br>10   Q.   Did "look up war exclusion" mean anything<br>11          other than reading the war exclusion in the<br>           policy?<br>12   A.   Not that I can recall. No.<br>13   Q.   Did that mean research how the war<br>14          exclusion is applied? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 15 A. No. I think it just meant read what the<br>16      war exclusion in the policy means.<br>17 Q. Okay. If you go back to Exhibit 12, first<br>18      page, 1101, the last e-mail in that chain is the<br>19      part of the policy that contains the war exclusion;<br>20      right?<br>21 A. Yes.<br>22 Q. And that was e-mailed to you on July 16,<br>23      2014; right?<br>24 A. It appears that way. Yes.<br>25 Q. Do you know if that e-mail reached your<br><br>Page 256<br>1      "in" box before or after you wrote the note, "Look<br>2      up war exclusion"?<br>3 A. From looking at these time stamps, it<br>4      appears that it came afterwards.<br>5 Q. Okay. So after you received this e-mail<br>6      from Pamela Johnson with the part of the policy that<br>7      includes the war exclusion, did you go back to the<br>8      actual policy and read the war exclusion?<br>9 A. I don't recall.<br>10 Q. Did you read the entire policy at any<br>11      point during your involvement in the evaluation of<br>12      the DIG claim?<br>13 A. I don't recall.<br><br>24 Q. So does that refresh your recollection on<br>25      what portions of the policy you reviewed?<br><br>Page 257<br>1 A. Yes.<br>2 Q. And what portions of the policy did you | Defendant's Counter:<br>256:14-23<br><br>Plaintiff's Response:<br>Not necessary for completeness. Counter is separate question and answer. |

| Deposition Designation | Objection & Response |
|---|---|
| 3     review? | |
| 4  A.  Extra expense, war exclusion, the general<br>5     conditions. | |
| 6  Q.  Okay. And did you review all those<br>7     portions of the policy before or after you sent the<br>8     e-mail dated July 15, 2014, at 7:59 p.m., page 1391<br>9     of Exhibit 22? | |
| 10  A.  I'm sure I would have reviewed them before<br>11    I sent them off. | |
| 12  Q.  Okay. Did you review those parts of the<br>13    policy -- strike that.<br>14    When you say, "Please review the general<br>15    conditions as Pamela pointed out," was the war<br>16    exclusion one of those general conditions? | |
| 17  A.  I'm going to look at the policy, if that's<br>18    okay. | |
| 19  Q.  Sure. | |
| 20  A.  Yes, it is. | |
| | |
| Page 258 | |
| 23  Q.  I want you to look at the page marked<br>24    1102, the e-mail from Lucy Lopez to you on July 15,<br>25    2014, at 10:25 a.m. It says: | |
| | |
| Page 259 | |
| 1    "New claim. | |
| 2    "Danny | |
| 3    "This should be coming your way, see | |
| 4    policy attached." | |
| 5    Do you see that? | |
| 6  A.  Yes. | |
| 7  Q.  So according to that e-mail, Lucy Lopez<br>8    attached the policy to the e-mail notifying you of<br>9    the claim; agreed? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 10  A.   Correct. | |
| 11  Q.   Do you agree with that? | |
| 12  A.   I agree. | |
| 13  Q.   And do you have any reason to believe the | |
| 14       policy was not attached to that e-mail? | |
| 15  A.   I do not. | |
| 16  Q.   And that's 10:25 a.m. You forwarded that | |
| 17       e-mail to Peter Williams, based on the time stamps, | |
| 18       almost six hours later. | |
| 19       Do you see that? | |
| 20  A.   Okay. | |
| 21  Q.   Did you review the policy during that | |
| 22       six-hour period? | |
| 23  A.   I don't recall | |
| | |
| Page 260 | |
| 11  Q.   Would that have been your general | |
| 12       practice? | |
| 13  A.   Just depends. I mean, if I had the claim | |
| 14       and I had the policy, I might have. If -- if I | |
| 15       didn't -- if I had the claim and I didn't have the | |
| 16       policy, then I may not have. | |
| 17  Q.   But here you did have the policy and the | |
| 18       claim; right? It was attached to her e-mail giving | |
| 19       you notice of the claim. | |
| 20  A.   Correct. | |
| 21  Q.   So given those circumstances, would it | |
| 22       have been your practice to review the policy upon | |
| 23       receiving the claim and before talking to Peter Williams? | |
| 24       Williams? | |
| 25  A.   Potentially, yes. | |
| | |
| Page 261 | |
| 4   Q.   Do you have any reason to believe you | |

**262**

| Deposition Designation | Objection & Response |
|---|---|
| 5      didn't? <br> 6   A.   No. But I don't have any reason to <br> 7      believe I did either. <br> 8   Q.   Except your general practice? <br><br> 11   THE WITNESS: Yes. <br><br> 13   Q.   Okay. Okay. Go back to Exhibit 22, <br> 14      please. I want you to look at the page <br>      marked 1392. <br> 15      And this is your e-mail -- I'm sorry. This is the <br> 16      e-mail from Pamela Johnson to you and Peter Williams <br> 17      on the page marked 1392. And Pamela says: <br> 18      "I suggest we have a call about this <br> 19      tomorrow. Danny and I had a conversation with <br> 20      Susan and Andrea today about what the <br> 21      production's plans were, but we didn't make any <br> 22      representations about whether there was <br> 23      coverage but we also did not alert them that <br> 24      this might not be a covered claim. If this is <br> 25      going to be an issue, we need to alert them <br><br> Page 262 <br> 1      right away. Peter, when are you available <br> 2      tomorrow?" <br> 3      When Pamela says "if this is going to be <br> 4      an issue," what is she referring to? <br><br> 8   Q.   Do you have an understanding of what she <br> 9      was referring to? <br> 10   A.   I don't recall what I was thinking at that <br> 11      time when I read that e-mail. <br> 12   Q.   When she says, "We did not alert them that <br> 13      this might not be a covered claim," do you have any <br> 14      idea what she was referring to when she said | |

| Deposition Designation | Objection & Response |
|---|---|
| that? | |
| 15  A.  I don't recall that -- anything specific | |
| 16  about that. But obviously now that we're looking at | |
| 17  this claim, it obviously was probably about the war | |
| 18  exclusion. | |
| 19  Q.  Okay. Let's go back to Exhibit 22. | |
| | |
| Page 263 | |
| 2  Q.  Now let's look at "Look up war | |
| 3  definition." | |
| 4  Do you see that note? | |
| 5  A.  Yes. | |
| 6  Q.  What does that mean? | |
| 7  A.  I'm guessing I was saying to remind myself | |
| 8  to look up the war definition. | |
| 9  Q.  Did you look up the war definition? | |
| 10  A.  I don't recall if I did or did not. | |
| 11  Q.  What does that mean, "look up war | |
| 12  definition"? In the dictionary? On the Internet? | |
| 13  What does that mean? | |
| 14  A.  I don't remember what I wrote to myself. | |
| 15  Q.  Why did you want to look up the war | |
| 16  definition? | |
| 17  A.  To see how it pertained to this claim. | |
| 18  Q.  To see how the war definition affected the | |
| 19  analysis of whether or not the loss was covered? | |
| 20  A.  I -- yes. | |
| 21  Q.  And did you look up the definition of | |
| 22  "war"? | |
| | |
| 25  THE WITNESS: I don't recall. | |
| | |
| Page 264 | |
| 11  Q.  Did you ever look up the definition of | |
| 12  "terrorism"? | |

| Deposition Designation | Objection & Response |
|---|---|
| 13  A.  I don't -- I don't recall doing so. No.<br>14  Q.  Did you ever do any Google searches aimed<br>15      at determining what terrorism was or what terrorism<br>16      meant?<br>17  A.  Not that I remember.<br>18  Q.  Why not?<br>19  A.  Nothing we were seeing looked like<br>20      terrorism, and I never had a terrorism claim before.<br>21      So I don't think it came into my head.<br><br>Page 265<br>6   Q.  Rockets fired by Hamas into Israel doesn't<br>7       look like terrorism to you? Is that what you're<br>8       saying?<br>9   A.  Yes.<br>10  Q.  What is terrorism, in your mind?<br>11  A.  As I said before, I think it's -- it's<br>12      hard to define it. It's much easier to say I know<br>13      it when I see it, and that would be Oklahoma City,<br>14      Boston Marathon, what happened in Orlando.<br>15      That's -- that's terrorism.<br>16  Q.  Well, is Israel a victim of terrorism?<br><br>18  THE WITNESS: Yes. They have been the<br>19      victim of terrorism.<br><br>21  Q.  From who?<br>22  A.  People that strap on suicide bombing vests<br>23      and go into cafes and buses.<br>24  Q.  Is Hamas involved in that conduct?<br><br>Page 266<br>2   THE WITNESS: I don't know. | |

| Deposition Designation | Objection & Response |
|---|---|
| 4 Q. What about Israeli teenagers being<br>5       kidnapped by Hamas? Would that be<br>        terrorism, in<br>6       your mind?<br><br>9    THE WITNESS: I guess so.<br><br>11 Q. You say you know it when you see it,<br>12     terrorism, that is; right?<br>13 A. Yes.<br>14 Q. Okay. Do you think the U.S. Government is<br>15     in a position to know terrorism when it sees<br>       it?<br>16 A. Yes.<br>17 Q. Who is in a better position to know<br>18     terrorism when they see it, you or the U.S.<br>19     Government?<br>20 A. The U.S. Government.<br>21 Q. Who is in a better position, you or John<br>22     Kerry?<br>23 A. John Kerry.<br>24 Q. Did you ever search the Internet or search<br>25     any resource to determine what the United<br>       States<br><br>Page 267<br>1     Government's position was on the conduct<br>       in Israel<br>2     perpetrated by Hamas, whether or not that<br>       was<br>3     terrorism? Did you ever look and see what<br>       the U.S.<br>4     Government thought?<br>5 A. Yes.<br>6 Q. When?<br>7 A. I don't recall.<br>8 Q. Was it before or after OneBeacon denied<br>9     the claim on July 28, 2014?<br>10 A. After. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 11   Q.   Not before? | |
| 12   A.   Correct. | |
| 13   Q.   Okay. When you looked to see what the | |
| 14        U.S. Government thought about the conduct, what did | |
| 15        you find? | |
| 16   A.   About what? | |
| 17   Q.   Whether or not the U.S. Government thought | |
| 18        the acts perpetrated by Hamas on Israel constituted | |
| 19        terrorism? | |
| | |
| 21   THE WITNESS: You mean that specific time | |
| 22        period? I don't -- no, I did not look that up. I'm | |
| 23        sorry. | |
| | |
| 25   Q.   You said you didn't try to determine what | |
| | |
| Page 268 | |
| 1         the U.S. Government thought about Hamas's conduct | |
| 2         prior to the July 28, 2014 denial letter; is that | |
| 3         correct? | |
| 4    A.   Correct. | |
| 5    Q.   But you also said that at some point after | |
| 6         the denial letter, you did seek to determine what | |
| 7         the U.S. Government thought; right? | |
| 8    A.   I don't recall. I'm sorry. | |
| 9    Q.   You don't recall whether or not you did | |
| 10        that? | |
| 11   A.   Look that up, no, I don't recall if I did | |
| 12        or not. | |
| 13   Q.   Okay. Why didn't you seek to determine | |
| 14        what the United States Government thought of Hamas's | |
| 15        conduct prior to the July 28, 2014 denial? | |

**267**

| Deposition Designation | Objection & Response |
|---|---|
| 16  A.   I really wasn't involved in the claim that<br>17        much at that point.<br>18  Q.   The claim came to you.<br>19  A.   Yes. But as we discussed earlier, at some<br>20        point Pamela became the lead person that<br>            was running<br>21        this claim. She was the one at that particular<br>            time<br>22        period that if she was looking things up.<br>23  Q.   But at some point you were the one<br>24        searching the Internet for information<br>            pertinent to<br>25        the coverage decision; right?<br><br>Page 269<br>1  A.   When we were trading e-mails back and<br>2        forth, I don't think that that was what we<br>            were<br>3        looking for. We were just trying to get<br>4        information.<br>5  Q.   Well, that's my precise question.<br>6        Why weren't you looking for what the U.S.<br>7        Government's position was on Hamas's<br>            conduct prior<br>8        to deciding whether or not the acts that<br>            resulted in<br>9        the loss were terrorism or war?<br><br>12  THE WITNESS: I didn't. I don't know what<br>13        the answer is.<br>14  BY MR. HAYES:<br>15  Q.   Well, I know you didn't. The question is<br>16        why you didn't.<br>17        Why didn't you?<br><br>19  THE WITNESS: I didn't.<br><br>Page 273<br>10  Q.   Was it your opinion prior to July 28, | |

| Deposition Designation | Objection & Response |
|---|---|
| 11     2014, that for terrorism, loss caused by terrorism | |
| 12     to be covered by the policy, that terrorism had to | |
| 13     be a certified act of terrorism? | |
| 14  A.  I'm sorry. Could you ask it one more | |
| 15     time. | |
| 16  Q.  Was it your opinion prior to July 28, | |
| 17     2014, that for loss caused by terrorism to be | |
| 18     covered, the terrorism had to be a certified act of | |
| 19     terrorism? | |
| 20  A.  I don't recall if I did or did not think | |
| 21     that. | |
| 22  Q.  I want you to read the first line under | |
| 23     heading A on page 3120 of Exhibit 1. It starts, | |
| 24     "Any exclusion." It's the TRIA endorsement that we | |
| 25     were looking at in the policy itself, page 3120 of | |
| | |
| Page 274 | |
| 1     Exhibit 1. | |
| 2  A.  Oh. Okay. | |
| 3     Which would you like me to read? | |
| 4  Q.  Just the first sentence, "Any exclusion of | |
| 5     terrorism." | |
| 6  A.  "Any exclusion of terrorism in this | |
| 7     Coverage Part or Policy, or attached to such | |
| 8     Coverage Part or Policy by endorsement, is | |
| 9     hereby amended to the effect that such | |
| 10     exclusion does not apply to a 'certified act of | |
| 11     terrorism.'" | |
| 12  Q.  So is there an exclusion of terrorism in | |
| 13     the policy? | |
| 14  A.  It does not appear that there is. No. | |
| 15  Q.  So this TRIA endorsement that amends any | |
| 16     exclusion of terrorism in the policy doesn't matter | |

**269**

| Deposition Designation | Objection & Response |
|---|---|
| 17      because there isn't an exclusion of terrorism in the<br>18      policy.<br>19      Would you agree?<br>20   A.   I'd agree with that.<br>21   Q.   Okay. So whether or not the loss was<br>22      caused by terrorism was an important question in<br>23      determining coverage; right?<br><br>Page 275<br>2   Q.   Or was it not?<br>3   A.   It was to Pamela because she brought it up.<br>5   Q.   Okay. And what did you do, if anything,<br>6      to determine whether or not there was any evidence<br>7      to support the position that the loss at issue was<br>8      caused by terrorism?<br><br>11   THE WITNESS: I don't recall if I did<br>12      anything. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 276<br>2  Q.  I want you to look back at Exhibit 19.<br>3      Okay. And just let me know when you're<br>        there.<br>4  A.  I'm here.<br>5  Q.  Okay. When was the first time you saw<br>6      this letter?<br>7  A.  I don't recall.<br>8  Q.  Do you think you saw it -- strike that.<br>9      Did you see it at or around the time it<br>10     was received by OneBeacon?<br>11 A.  I don't remember.<br><br>15  MR. HAYES: This is going to be<br>16      Exhibit 26.<br>17      (Exhibit 26 was marked<br>18      for identification.)<br>19  BY MR. HAYES:<br>20 Q.  Take a look at the document marked 26, and<br>21     let me know if it you've ever seen it before.<br>22 A.  I have never seen this before.<br>23 Q.  Okay. I want you to look at the page<br>24     marked 3 of 4.<br>25 A.  Yes. | Defendant's Objections:<br>(276:21-25) Not relevant, foundation, waste of time FRE 401, 403, 601, 801, 802<br><br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; foundation present. |
| Page 277<br>1  Q.  And there's some -- there's some<br>2      statements attributed to Secretary Kerry, and I want<br>3      you to read the part that starts, "But Hamas" into<br>4      the record.<br>5      Do you see that?<br>6  A.  Yes.<br>7      "But Hamas is trying to" assist -- "insist<br>8      that as a reward for their terrorist behavior,<br>9      things be decided ahead of time, and we support<br>10     Israel and international community's right not | Defendant's Objections:<br>(277:1-17) Not relevant, foundation, waste of time FRE 401, 403, 601, 801, 802<br><br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; foundation present. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 11 to be extorted by terrorism."<br>12 Q. Had you seen that statement by Secretary<br>13 Kerry prior to July 28, 2014, how, if at all, would<br>14 that have affected your opinion as to whether or not<br>15 the DIG claim was covered?<br>16 A. I don't recall ever seeing that. So I<br>17 can't say how it would have affected it or not. | |
| Page 279<br>19 Q. I want you to -- so we have it clean on<br>20 the record, I want you to read that portion again,<br>21 I'll read it.<br>22 "But Hamas is trying to insist that as a<br>23 reward for their terrorist behavior, things be<br>24 decided ahead of time, and we support Israel<br>25 and international community's right not to be | Defendant's Objections:<br>(279:19-25)<br>Exhibit 26 is hearsay;<br>relevance FRE 401, 403, 801, 802<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; foundation present. |
| Page 280<br>1 extorted by terrorism."<br>2 Does that statement by Secretary Kerry<br>3 change your opinion as to whether or not the acts<br>4 perpetrated by Hamas on to Israel constituted<br>5 terrorism?<br>6 A. No.<br>7 Q. And what is your opinion?<br>8 A. This was war.<br>9 Q. So despite the fact that Secretary Kerry<br>10 characterizes the acts as terrorism, you maintain it<br>11 was war, not terrorism?<br><br>15 Q. Is that right? | Defendant's Objections:<br>(280:1-11, 15-19) hearsay;<br>relevance; foundation FRE 401, 403, 602801, 802<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; foundation present. |

| Deposition Designation | Objection & Response |
|---|---|
| 16  A.   Yes. | |
| 17  Q.   Okay. But as you said before, Secretary | |
| 18        Kerry is in a better position to assess whether or | |
| 19        not the acts are, indeed, terrorism or war; right? | |
| | |
| 22  Q.   Is that correct? | |
| 23  A.   Yes. | |
| 24  Q.   Okay. You testified that Pamela Johnson | |
| 25        thought the distinction whether the acts were | |
| | |
| Page 281 | |
| 1         terrorism or war was an important one; right? | |
| | |
| 4    THE WITNESS: Based upon that she brought | |
| 5          it up in her denial letter, yes. | |
| 6    BY MR. HAYES: | |
| 7    Q.   Okay. So going back to what you said | |
| 8          earlier, from day one you were told, "We try to find | |
| 9          coverage wherever possible"; right? | |
| 10   A.   Yes. | |
| 11   Q.   So if there was a chance that the loss at | |
| 12         issue was caused by terrorism, that's something that | |
| 13         you, in keeping with that objective, should see if | |
| 14         there's support for; right? | |
| | |
| 16   THE WITNESS: Yes. We would look for | |
| 17         everything. | |
| | |
| 24   Q.   If there was a chance that the loss at | |
| 25         issue in connection with the DIG claim was caused by | |
| | |
| Page 282 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1     terrorism, in keeping with your objective,<br>2     OneBeacon's objective to try to find coverage<br>3     wherever possible, you would look for evidence that<br>4     the loss was caused by terrorism; right?<br>5  A.  Yes.<br>6  Q.  Okay. And you also said that, on<br>7     occasion, under certain circumstances, you consult<br>8     with outside independent insurance adjusters on<br>9     occasion; right?<br>10  A.  Yes.<br>11  Q.  Okay. If you had the opportunity to<br>12     consult with the United States Government on the<br>13     issue whether the acts that caused the loss at issue<br>14     in this case constituted terrorism, would you take<br>15     that opportunity?<br><br>18  THE WITNESS: Yes.<br><br>Page 283<br>1     Should you have, at the very beginning,<br>2     when terrorism was raised by Pamela, sought the<br>3     counsel of, through your research, the United States<br>4     Government on the question whether or not the acts<br>5     at issue in this case constituted terrorism?<br>9  THE WITNESS: We did, I believe,<br>10     everything correctly for this claim.<br><br>18  BY MR. HAYES:<br>19  Q.  Do you recognize the document marked | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><u>Defendant's Objections:</u><br>(283:18-25: hearsay; relevance; foundation FRE 401, 403, 801, 802<br><br><br><br><u>Plaintiff's Response:</u><br>Relevant to bad faith; offered for non-hearsay purpose; foundation present. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 20     Exhibit 27?<br>21  A.  Yes. No. Do I recognize it, no. I've<br>22     never seen this before.<br>23  Q.  Okay. I'm going to read what it says.<br>24     "The United States strongly condemns the<br>25     kidnapping of three Israeli teenagers and calls | |
| Page 284<br>1     for their immediate release. Our thoughts and<br>2     prayers are with their families. We hope for<br>3     their quick and safe return home. We continue<br>4     to offer our full support for Israel in its<br>5     search for the missing teens, and we have<br>6     encouraged full cooperation between the Israeli<br>7     and Palestinian security services. We<br>8     understand that cooperation is ongoing.<br>9     "We are still seeking details on the<br>10    parties responsible for this despicable<br>11    terrorist act, although many indications point<br>12    to Hamas' involvement. As we gather this<br>13    information, we reiterate our position that<br>14    Hamas is a terrorist organization known for its<br>15    attacks on innocent civilians and which has<br>16    used kidnapping in the past."<br>17    Do you see that?<br>18  A.  Yes.<br>19  Q.  Does that statement from John Kerry change<br>20    your opinion as to whether the conduct that caused<br>21    the loss in this case was terrorism?<br><br>24    THE WITNESS: Actually, going back to 26,<br>25    3 of 4, when he's calling it terrorism acts, he very | Defendant's Objections:<br>(284:21, 24-25) hearsay; relevance; foundation FRE 401, 403, 601, 602, 801, 802<br><br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non hearsay purpose; foundation present. |

**275**

| Deposition Designation | Objection & Response |
|---|---|
| Page 285<br>1    well could be talking about kidnapping three Israeli<br>2    teenagers, which I do believe is an act of<br>3    terrorism. | Defendant's Objections:<br>(285:1-3, 24-25) hearsay; relevance; foundation FRE 401, 403, 602801, 802 |
| 5  Q.  Okay.<br>6  A.  It may not in any way involve what was at<br>7    that point, I believe, missile rockets and tanks and<br>8    stuff along those lines.<br>9  Q.  What about missile rockets fired on<br>10    innocent civilians? Is that terrorism?<br><br>18    Rockets fired at innocent civilians, is<br>19    that terrorism?<br><br>22  THE WITNESS: No. That's an act of war.<br><br>24  Q.  Okay. But, again, in keeping with your<br>25    objective to find coverage wherever possible, should | Plaintiff's Response:<br>Relevant to bad faith; offered for non hearsay purpose; foundation present. |
| Page 286<br>1    you have researched what John Kerry thought about<br>2    Hamas and its activities prior to denying the claim?<br>3  A.  Again, I felt like we did everything<br>4    necessary for this claim.<br>5  Q.  But this is a very specific question.<br>6    In keeping with your objective to find<br>7    coverage wherever possible, should you have<br>8    researched what Secretary Kerry thought about Hamas<br>9    and its activities prior to denying the claim?<br>10  A.  Again, I think everything we did was | Defendant's Objections:<br>(286:1-18) hearsay; relevance; foundation FRE 401, 403, 602, 801, 802<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non hearsay purpose; foundation present. |

**276**

| Deposition Designation | Objection & Response |
|---|---|
| 11      correct.<br>12   Q.   Should you have sought to determine what<br>13      Secretary Kerry thought about Hamas and its<br>14      activities prior to denying the claim?<br>15   A.   No.<br>16   Q.   Why not?<br>17   A.   The -- from the videos that we'd seen,<br>18      everything looked like a war.<br><br>Page 287<br>4.   Q.   Mr. Kerry, Secretary Kerry, thinks Hamas<br>5      is a terrorist organization known for its attacks on<br>6      civilians, innocent civilians.<br>7      Does that affect in any way your opinion<br>8      as to whether or not the acts committed by Hamas in<br>9      connection with the DIG claim constitute acts of<br>10      terrorism?<br><br>13   THE WITNESS: No.<br><br>15   Q.   It doesn't affect your opinion at all?<br>16   A.   No.<br><br>Page 288<br>3   Q.   Mr. Gutterman, I want to return to your<br>4      testimony a little bit earlier regarding what you do<br>5      at OneBeacon, what OneBeacon does in pursuit of this<br>6      objective to want to find coverage.<br>7      Okay?<br>8      I recall you testified that if an insured<br>9      mentions a fact that bears on the coverage<br>10      determination in a way that would suggest there is | Defendant's Objections:<br>(287:4-10) hearsay;<br>relevance; foundation FRE<br>401, 403, 602, 801, 802<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non hearsay purpose; foundation present. |

| Deposition Designation | Objection & Response |
|---|---|
| 11    coverage, here's some things you said OneBeacon<br>12    would do.<br>13    Redo everything you did the first time in<br>14    determining whether or not there was coverage, talk<br>15    to the insured about why they think there's<br>16    coverage, talk to underwriting about what<br>17    OneBeacon's understanding was at the time the policy<br>18    was agreed to, and do additional research on the<br>19    Internet to see whether there was support for the<br>20    insured's position.<br>21    Is that all correct?<br>22  A.  Would you read the first one again,<br>23    please.<br>24  Q.  Redo everything you did to make the<br>25    determination, the preliminary determination that<br><br>Page 289<br>1    there was no coverage.<br>2  A.  I don't know if we -- I don't think we<br>3    would redo everything that we did. But we would<br>4    certainly review every -- all the information that<br>5    we've received both before and after any new<br>6    information came to light.<br>7  Q.  Okay. So you'd talk to the insured about<br>8    why they think the information weighs in favor of<br>9    coverage?<br>10  A.  Typically, yes.<br>11  Q.  You'd talk to underwriting about what<br>12    their understanding was at the time the policy was | |

| Deposition Designation | Objection & Response |
|---|---|
| 13      put into effect? | |
| 14   A.   Yes. | |
| 15   Q.   You'd do research to see if there was any | |
| 16      support for the insured's position? | |
| 17   A.   Yes. | |
| 18   MR. HAYES: Okay. This is going to be | |
| 19      Exhibit 28. | |
| 20      (Exhibit 28 was marked | |
| 21      for identification.) | |
| 22   BY MR. HAYES: | |
| 23   Q.   Do you recognize the document marked 28? | |
| 24   A.   Yes. | |
| 25   Q.   What is it? | |
|  | |
| Page 290 | |
| 1    A.   Actually, I -- I -- I don't know. It | |
| 2      doesn't say it was from me. It appears that it was | |
| 3      from me. | |
| 4    Q.   Well, it says, "Best regards, Danny | |
| 5      Gutterman"; right? | |
| 6    A.   Correct. But in the "From" line, it | |
| 7      doesn't have my name. | |
| 8    Q.   Okay. The e-mail starts: | |
| 9      "Hi Pamela - | |
| 10      "I'm going to put the following into the | |
| 11      CWS notes, if you're okay with it." | |
| 12      What does that mean, "CWS notes"? | |
| 13   A.   That is our electronic file system. | |
| 14   Q.   That's Exhibit 21; right? | |
| 15   A.   Yes. | |
| 16   Q.   And then you say in this e-mail to Pamela: | |
| 17      "Pamela Johnson and I had a conference | |
| 18      call with Andrea Garber of NBC and Susan Weiss | |
| 19      of AON. | |
| 20      "Andrea Garber stated said the production | |
| 21      decided to move the production as the situation | |
| 22      in Israel has not improved and does not | |

| Deposition Designation | Objection & Response |
|---|---|
| appear | |
| 23    that it will. | |
| 24    "Pamela Johnson told them that we have | |
| 25    reviewed the policy and it appears that the war | |
| | |
| Page 291 | |
| 1    exclusion will potentially apply here." | |
| 2    Do you see that? | |
| 3  A.  Yes. | |
| 4  Q.  Does that refresh your recollection that | |
| 5    you had a conversation with Andrea Garber and Susan | |
| 6    Weiss in which Pamela Johnson told them that the war | |
| 7    exclusion will potentially apply here? | |
| 8  A.  That -- yes. That reminds me of that. | |
| 9  Q.  Okay. The notes go on: | |
| 10    "She told them that the production push | |
| 11    appears to be covered as it occurred before | |
| 12    Hamas's rejection of the cease fire and Israel | |
| 13    then stating that they will be going forward | |
| 14    with all force." | |
| 15    Do you see that? | |
| 16  A.  Yes. | |
| 17  Q.  Do you remember that part of the conversation? | |
| 18 | |
| 19  A.  No. | |
| 20  Q.  Then you say: | |
| 21    "Andrea and Susan stated that they did not | |
| 22    believe that Hamas can be considered a | |
| 23    government and are considered by the U.S. to be | |
| 24    a terrorist organization." | |
| 25    Do you see that? | |
| Page 292 | |
| 1  A.  Yes. | |
| 2  Q.  Do you recall Andrea and Susan saying that | |
| 3    in the phone call? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 4  A.  No. | |
| 5  Q.  Okay. Do you have any reason to believe | |
| 6      that Exhibit 28 is not a true and correct copy of | |
| 7      notes that you wrote to yourself or to Pamela | |
| 8      memorializing a phone call that you had with Andrea | |
| 9      and Susan at NBCU? | |
| 10  A.  I don't know when these were written | |
| 11      because Pamela was to longer working July 3, 2016. | |
| 12      So I don't know when these were written. | |
| 13  Q.  Do you have any reason to believe that | |
| 14      these notes do not accurately reflect the content of | |
| 15      a conversation that you and Pamela had with Andrea | |
| 16      and Susan? | |
| 17  A.  No. I have no reason. | |
| 18  Q.  Okay. Are these notes in the DIG claim | |
| 19      file marked Exhibit 21? | |
| 20  A.  It does not appear that they are. | |
| 21  Q.  Why not? | |
| 22  A.  Again, I'm not sure when this was -- were | |
| 23      taken. It doesn't say it was from me. I don't know | |
| 24      if this was a draft. I don't -- I don't know why | |
| 25      this was not put in. | |
| | |
| Page 293 | |
| 1  Q.  Did Pamela tell you to keep them out of | |
| 2      the file? | |
| 3  A.  No. Not that I recall. | |
| 4  Q.  Do you have any idea why these notes | |
| 5      aren't in the file? | |
| 6  A.  No. But, again, I don't know when they | |
| 7      came from. This says July 3, 2016, and she was no | |

| Deposition Designation | Objection & Response |
|---|---|
| 8　　　　longer with the company. | |
| 9　Q.　Okay. But you testified that reading | |
| 10　　　these notes refreshed your recollection that you | |
| 11　　　were a party to a phone call with Pamela Johnson, | |
| 12　　　Andrea Garber, and Susan Weiss; right? | |
| 13　A.　Yes. | |
| 14　Q.　Okay. Do you see here at the bottom it | |
| 15　　　says: | |
| 16　　　"Andrea and Susan stated that they do not | |
| 17　　　believe Hamas can be considered a government | |
| 18　　　and are considered by the U.S. to be a | |
| 19　　　terrorist organization"? | |
| 20　　　In keeping with OneBeacon's policy to do | |
| 21　　　what they can to find coverage, did you research | |
| 22　　　whether or not there was support for that contention | |
| 23　　　that Hamas was a terrorist organization and not a | |
| 24　　　government? | |
| 25　A.　I personally did not. | |
| | |
| Page 294 | |
| 1　Q.　Did anybody? | |
| 2　A.　I don't know. | |
| 3　Q.　Why not? | |
| 4　A.　I don't know why I did not. | |
| | |
| 18　Q.　Should somebody have researched whether, | |
| 19　　　quote, "Hamas can be considered a government," or, | |
| 20　　　quote, "considered by the U.S. to be a terrorist | |
| 21　　　organization"? Should somebody have researched | |
| 22　　　those issues after NBCU, OneBeacon's insured, | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 23      brought them up? Should somebody have researched<br>24 them to determine whether or not there was support<br>25      for those contentions?<br><br>Page 295<br>1   A.   I don't know if anyone did or not. I did<br>2         not.<br>3   Q.   Should somebody have researched that?<br>4   A.   Yes. But it doesn't change the fact that<br>5   it was a war.<br><br>9   MR. HAYES: This is going to be<br>10        Exhibit 29.<br>11        (Exhibit 29 was marked<br>12        for identification.)<br>13  BY MR. HAYES:<br>14  Q.   Do you recognize the e-mail chain marked<br>15        Exhibit 29?<br>16  A.   Yes.<br>17  Q.   What is it?<br>18  A.   It appears to be an e-mail chain.<br>19  Q.   Is this an e-mail chain that you<br>20  participated in?<br>21  A.   Yes.<br>22  Q.   I want you to look at the initiating<br>23        e-mail on page ATL 1549.<br>24  A.   Okay.<br>25  Q.   It says:<br><br>Page 296<br>1        "Hi Wanda -<br>2        "Please confirm that NBCU's 'DIG' was<br>3        declared. Also, please advise if the Israel<br>4        portion was approved. I see the Toronto part<br>5        was in ImageNow."<br>6        Do you see that?<br>7   A.   Yes. | |

| Deposition Designation | Objection & Response |
|---|---|
| 8    Q.   What did you mean by that, those three<br>9          sentences?<br>10   A.   Whether -- sorry. "Please confirm that<br>11          NBCU's DIG was declared," asking her<br>              whether or not<br>12          the production had been declared by the<br>13          production -- to the broker and the broker<br>              declared<br>14          it to us.<br>15   Q.   Okay. Why did you want to know that?<br>16   A.   If it had not been declared, there is<br>17          potential that we wouldn't have covered any<br>              claim<br>18          that came from it just because it wouldn't<br>              have been<br>19          a declared production.<br>20   Q.   Okay. Then the next sentence is, "Also,<br>21          please advise if the Israel portion was<br>              approved."<br>22          Why did you ask that question?<br>23   A.   Because the claim was about Israel.<br>24   Q.   Why did you want to know whether or not it<br>25          was approved, the Israel portion?<br><br>Page 297<br>1    A.   Just to confirm that it was.<br>2    Q.   Okay. Wanda responds:<br>3          "The production was . . . declared, and we<br>4          approved the filming in Israel with terms."<br>5          Do you see that?<br>6    A.   Yes.<br>7    Q.   And you ask:<br>8          "Thank you for the response!<br>9          "What were the terms?"<br>10         Do you see that?<br>11   A.   Yes.<br>12   Q.   And then she responds:<br>13         "We approved filming in East Jerusalem and<br>14         Tel Aviv. NBC Security team is to remain<br>15         involved and continue working with | |

| Deposition Designation | Objection & Response |
|---|---|
| production. | |
| 16     We required that production work with the local | |
| 17     production company Keshet and coordination with | |
| 18     the local police." | |
| 19     Do you see that? | |
| 20   A.   Yes. | |
| 21   Q.   What does that mean to you? | |
| 22   A.   Those were the terms that Wanda, as the | |
| 23     underwriter, agreed to with the broker. | |
| 24   Q.   How does that bear on the coverage | |
| 25     determination, if at all? | |
| | |
| Page 298 | |
| 1   A.   It didn't. | |
| 2   Q.   Why not? Why did you ask what the terms | |
| 3     were? | |
| 4   A.   Because they potentially could have | |
| 5     beared [sic] on -- on the claim. | |
| 6   Q.   But these terms did not, in your opinion? | |
| 7   A.   No. | |
| 8   Q.   Why did OneBeacon require that the | |
| 9     production work with local production company Keshet | |
| 10    in coordination with the local police? | |
| 11   A.   I don't know. I don't deal with the | |
| 12    underwriting side. | |
| 13   Q.   Why did OneBeacon require that the NBC | |
| 14    Security team remain involved? | |
| 15   A.   I don't know. I don't work with the | |
| 16    underwriting side. | |
| 17   Q.   Did you ask Wanda in connection -- | |
| 18   A.   No. | |
| 19   Q.   You did not? | |
| 20   A.   Not that I recall, no. | |
| 21   Q.   Did you have any conversations with Wanda | |
| 22    outside of the four corners of Exhibit 29? | |
| 23   A.   Not that I can recall. | |
| 24   Q.   Did you have any -- did you call her on | |

| Deposition Designation | Objection & Response |
|---|---|
| 25      the phone? | |

Page 299
1   A.   Not that I can recall.
2   Q.   Did you follow up with any other questions
3         in response to her last e-mail on Exhibit 29?
4   A.   Not that I can recall.

19  Q.   The e-mail from Wanda says that OneBeacon
20        required NBCU to coordinate with local police. It
21        also says that OneBeacon required NBC to remain
22        involved -- the NBC Security team to remain involved
23        and continue working with production.
24        Do you see that?
25  A.   Yes.

Page 300
1   Q.   Do you have any idea why OneBeacon
2         required the NBC Security team to remain involved in
3         the --
4   A.   No.
5   Q.   -- DIG production?
6   A.   I did not.
7   Q.   And you didn't seek to find out why?
8   A.   No.
9   Q.   But if the reason why was OneBeacon was
10        worried about the hostilities in the region
11        affecting the production, that would have been
12        relevant; right?

15  Q.   That would have been relevant to your
16        coverage determination; right?

| Deposition Designation | Objection & Response |
|---|---|
| 18   THE WITNESS: I'm not sure.<br><br>20   Q.   If you were trying to achieve the<br>21         OneBeacon objective of finding coverage, wouldn't<br>22         you want to know why OneBeacon required NBC Security<br>23         to remain involved and whether or not OneBeacon had<br>24         terrorism on its mind when it made that requirement?<br><br>Page 301<br>2     THE WITNESS: I don't know. That<br>3         doesn't -- that's a hypothetical that I'd never<br>4         thought about until you just asked it.<br><br>16   Q.   Okay. I want you to go back to<br>17         Exhibit 15.<br><br>Page 302<br>5         "Determine the need for outside vendors to<br>6         assist in the investigation, such as surveyors,<br>7         attorneys, engineers, accountants, fire<br>8         experts, salvor, etc., and assign<br>9         responsibility to such vendors, when<br>10        appropriate."<br>11        Who determined the need for outside<br>12        vendors?<br>13   A.   That would have been Pamela.<br>14   Q.   Okay. Did she determine whether or not an<br>15        independent adjuster who had dealt with a war<br>16        exclusion or a terrorism exclusion should be<br>17        consulted?<br>18   A.   I don't know.<br>19   Q.   Okay. Did that question ever come up, to<br>20        your knowledge?<br>21   A.   Not that I can recall. | |

**287**

| Deposition Designation | Objection & Response |
|---|---|
| 22 Q.   Okay. Look at page 7. It says:<br>23       "All claims-related communications,<br>24       written and oral, should be documented in the<br>25       claims file. This includes, but is not limited<br><br>Page 303<br>1       to, electronic communications, such as e-mail,<br>2       as well as paper communications and notes of<br>3       oral communications."<br>4       Was that procedure followed?<br>5 A.   Again, I don't know what that one that is<br>6       that you showed me earlier. But besides that, yes.<br><br>Page 304<br>7       (Exhibit 30 was marked<br>8       for identification.)<br>9 BY MR. HAYES:<br>10 Q.   Do you recognize the document marked<br>11       Exhibit 30?<br>12 A.   Yes.<br>13 Q.   Why did you say here:<br>14       "Please review the policy language for<br>15       Extra Expense. The wording for Civil Unrest<br>16       and the exclusions for it are not like other<br>17       policies . . . "?<br>18       Do you know why you said that?<br>19 A.   No.<br>20 Q.   It says at the top:<br>21       "It looks like we need to have a lot of<br>22       further discussion about this. Please call me<br>23       first thing in the morning."<br>24       Do you recall having that conversation?<br>25 A.   I do not. | |

7060055/015825

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7060055/015825

## PAMELA A. JOHNSON—May 8, 2017 (Volume 1)

| Deposition Designation | Objection & Response |
|---|---|
| Plaintiff's Designation of Pamela A. Johnson, Volume 1, May 8, 2017 (7:22-25; 8:1-3; 12:2-7; 13-7:17; 14:10-18; 19:25; 20:1-12; 21:11-25; 22:1-13; 24:18-24; 25:8-17; 26:23-25; 27:1-5, 10-12; 34:11-14; 35:11-14, 17, 19-25; 36:1-2, 10-16; 37:15-17, 19-25; 38:1-9, 12-13, 15-19, 23-25; 39:1-3, 5-15, 18-25; 40:2-3, 6-7, 12-15; 46:7-12; 48:21-25; 49:1-3, 6-16, 18-22, 25; 50:1, 3-10, 18-25; 51:1-5, 9-1, 15-16; 52:1-5, 9-13, 15-25; 53:1-4, 10-11, 16-25; 54:1-22; 55:20-25; 56:1-23; 57:1-8; 58:12-23; 59:1-8, 11-19, 21-25; 60:1-25; 61:1-7, 10-12, 14-18; 72:23-25; 73:1-12, 15-25; 90:7-25; 91:1-8, 23-25; 92:1-25; 93:1-8, 11-13, 15-22, 25; 94:13-22; 95:22-25; 96:1-8; 97:1-9, 15-25; 98:12-25; 99:1, 7-25; 100:1-6, 9, 11-22; 101:10-25; 102:12-16; 103:19-25; 104:1-2; 105:22-25; 106:1-8; 107:2-25; 108:1-2, 14-25; 109:1-25; 118:14-25; 119:1-19; 120:13-25; 121:1-3, 6-10, 25; 122:1-25; 123:1-7; 124:12-21; 129:7-17; 130:9-25; 131:1-22, 25; 132:1-3, 19-25; 133:1-25; 134:1-6, 25; 135:1-19; 136:1-16, 22-25; 137:1-25; 138:1-8; 140:5-9, 13-14, 16-22; 141:24-25; 142:1-6; 151:20-23; 152:2-6, 8-11, 15-17, 19-25; 153:1-17, 20-23, 25; 154:1-3, 6, 8-11, 14; 156:2-7; 167:1-10, 13-16, 18-25; 168:1-5; 169:15-18, 22-25; 170:3-7, 9-25; 171:1-25; 172:1-25: 173:1-25; 174:1, 6-8, 10-15, 19-25; 175:1-3; 181:6-21, 24-25; 182:2-16, 19-24; 183:1-5, 8-16, 18-22; 184:1-4, 7-15, 18-20, 22-25; 185:1-4, 8-10, 12, 20-21, 24-25; 186:1-6; 8-13, 18-25; 187:1-2, 4-6, 9, 11-22; 189:10-15, 18-20, 22-25; 190:1-8, 11-15; 191:10-14, 17-20, 22-23; 192:1-6, 8-10, 14-15; 195:5-14, 17-25; 196:1-8; 198:2-8, 14-25; 199:1-17; 200:22-25; 201:1-11, 14, 16-20; 202:6-11; 203:9-14, 23-25; 204:1-24; 205:12-24; 206:1-17, 21-22, 24-25; 207:18-21; 208:1-5, 7-10, 14-25; 209:1-16, 19-25; 210:1-12; 211:1-3, 6-14, 16-18, 21, 24-25; 212:1-4, 6-25; 213:1-25; 214:1-25; 215:1-25; 216:4-7; 217:11-22, 24-25; 218:2-8, 22-23; 219:1-2, 12-16, 24-25; 220:1-21; 221:25; 222:1-25; 223:1-9; 224:5-17; | |

| Deposition Designation | Objection & Response |
|---|---|
| 227:4-7, 11-25; 228:1-5, 7-12, 14-24; 230:4-8, 21-25; 231:15-25; 232:1-10; 236:4-16; 237:1-7; 241:9-25; 242:1-25; 243:1-13; 244:6-9, 12-16, 18-25; 245:1, 8-10, 14-18, 21-25; 246:1, 3-22; 248:25; 249:1-4, 8-19; 253:19-21, 24-25; 254:1-7; 255:14-25; 256:1, 7-13, 15-19, 25; 257:1-12, 14-25; 258:1-25; 259:1-6, 21-25; 260:1-3, 6-25; 261:1-5, 9-12, 23-25; 262:1, 4-5; 263:15-21; 264:4-25; 265:1-14, 17, 19, 22-25; 266:2-5, 8, 22-25; 267:1-8; 268:5-7, 12-22; 269:5-9, 11, 15-16, 18-19, 23-24; 270:7-21; 271:18-23; 273:6-11; 274:2-4; 275:12-17, 20-25; 276:1-2, 4-18; 277:4-5, 7-8, 14-25; 278:1-5, 11-17, 19-25; 279:1-12, 19-25; 280:1, 20-25; 281:7-11, 13-14, 21-25; 282:2-13, 19-20, 22-25; 283:1, 5-15, 23-25; 284:1-4, 9-12, 19-25; 285:1-22, 25; 286:2-17, 21-25; 287:1-10; 289:22-25; 290:1-25; 291:1-6, 24-25; 292:1-3, 24-25; 293:1-25; 294:1-2; 295:13-23; 303:11-25; 304:1-2, 6-18, 21-25; 305:1-3; 312:10-22; 313:2-10; 314:5-8, 11-15; 316:18-25; 317:1-25; 318:1; 329:23-25; 330:1-7, 18-22, 25; 331:1-3, 6-12, 24-25; 332:1-2, 6-12, 17; 334:9-25; 335:1-25; 336:6-25; 337:1-3, 6-13, 15-18, 21-25; 338:1-3, 5-23; 339:1-6, 8-10, 14-18, 20-23; 340:1-8, 12; 345:12-18, 22-23, 25; 346:4-9; 347:6-9, 13-14, 16, 22-25; 348:1-4, 6-8, 11-12, 17-20, 22, 24-25; 349:2-6, 11-14, 16-19, 22-23; 350:12-17, 19-25; 351:1-25; 352:1-12, 15-19, 21-23; 353:1-3, 5-8, 12-23, 25; 354:5-11, 14, 16-25; 355:1-5, 8-9, 13-17, 19-25; 356:1, 5-6, 8-17, 20-25; 357:2-21, 24; 358:1-5, 8-11, 13-18, 22-25; 359:2-7, 11-15, 17-25; 360:4-8, 10-15, 19-24; 361:1-7, 10-18): <br><br> Page 7 <br> 22   Q.   Good morning, Ms. Johnson. As we just <br> 23          indicated off the record, my name is <br> 24          Lucia Coyoca, and I represent the plaintiffs <br> 25          in this matter. <br><br> Page 8 <br> 1            Could you please state your full <br> 2            name and address for the record? | |

| Deposition Designation | Objection & Response |
|---|---|
| 3    A.   My name is Pamela Ann Johnson. | |

Page 12
2    Q.   Where did you go to law school?
3    A.   I went to the University of Minnesota.
4    Q.   Did you graduate?
5    A.   I did.
6    Q.   What year?
7    A.   1992.

Page 13
7    Q.   Have you ever had a license to practice law?
8    A.   I have.
9    Q.   When did you first become licensed to
10        practice law?
11   A.   In 1992.
12   Q.   In what jurisdiction?
13   A.   Texas.
14   Q.   Did you become licensed in any other state?
15   A.   I did.
16   Q.   Where else?
17   A.   Colorado and Minnesota.

Page 14
10   Q.   Do you hold any other certificates or
11        licenses?
12   A.   As I said before, I am licensed to act as a
13        claim professional.
14   Q.   What license is that?
15   A.   Well, it's the -- it's the license that you
16        get when you work for an insurance company in
17        a variety of states as an adjuster, it's a
18        property and casualty adjustment license.

Page 19
25   Q.   Did you move from Colorado to Minneapolis,

Page 20

**292**

| Deposition Designation | Objection & Response |
|---|---|
| 1     Minnesota, in 2005?<br>2  A.  I moved to St. Paul.<br>3  Q.  And did you begin working after you moved to<br>4     St. Paul?<br>5  A.  I did.<br>6  Q.  Who did you work for?<br>7  A.  Travelers Insurance Company.<br>8  Q.  How long were you with Travelers the first<br>9     time?<br>10  A.  I was with them for seven years.<br>11  Q.  So until approximately 2012?<br>12  A.  That's correct.<br><br>Page 21<br>11  Q.  When you left Travelers, where did you go to<br>12     work next?<br>13  A.  I went to work for OneBeacon, or<br>14     Atlantic Specialty.<br>15  Q.  What did you do for OneBeacon or<br>16     Atlantic Specialty?<br>17  A.  I was the claim lead for the entertainment<br>18     insurance group.<br>19  Q.  What were your responsibilities as claim lead<br>20     for the entertainment insurance group?<br>21  A.  At what period in time?<br>22  Q.  When you first began working there.<br>23  A.  When I first began working there, I was to be<br>24     the face of OBE, OneBeacon Entertainment,<br>25     interact with brokers, provide any assistance<br><br>Page 22<br>1     needed with regard to legal matters to the<br>2     underwriters and handle complex claims.<br>3  Q.  Did your responsibilities change over time?<br>4  A.  They did.<br>5  Q.  When did they change?<br>6  A.  After I had been there for about a year.<br>7  Q.  What did you do for OneBeacon | |

| Deposition Designation | Objection & Response |
|---|---|
| entertainment<br>8    after about a year?<br>9   A.  They reorganized the claim division within<br>10     OneBeacon and asked me to move into a<br>11     management role supervising specific claim<br>12     handlers working on OneBeacon<br>       entertainment<br>13     claims.<br><br>Page 24<br>18  Q.  When did you leave OneBeacon<br>       entertainment?<br>19  A.  I left OneBeacon entertainment in 2015. Is<br>20     that right? Yeah.<br>21  Q.  So you were with OneBeacon entertainment from<br>22     2012 until approximately 2015; is that<br>23     correct?<br>24  A.  Yes.<br><br>Page 25<br>9   Q.  Who was your supervisor when you first began<br>10     working for OneBeacon entertainment?<br>11  A.  Judy Lamble.<br>12  Q.  And did that supervisor change over time?<br>13  A.  Yes.<br>14  Q.  Who was the next supervisor that you had?<br>15  A.  Theresa Gooley.<br>16  Q.  Did you have any other supervisors?<br>17  A.  No.<br><br>Page 26<br>23  Q.  And you left -- why did you leave OneBeacon<br>24     entertainment in 2015?<br>25  A.  OneBeacon entertainment reorganized and they | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 27 | |
| 1      downsized, particularly in the entertainment<br>2      group, and they gave the claim lead<br>3      responsibilities to the same person who was<br>4      also acting as the claim lead and continued<br>5      to act as the claim lead for public sector. | |
| 10  Q.  Were you let go?<br>11  A.  Yes. I was given a wonderful severance<br>12      package. | |
| Page 34 | |
| 11  Q.  In your view, is it important to understand<br>12      all of the facts that potentially gave rise<br>13      to a claim?<br>14  A.  Of course. | |
| Page 35 | |
| 11  Q.  In your view, is it important to gain a<br>12      thorough understanding of the factual<br>13      circumstances that give rise to a claim<br>14      before making any coverage determination? | |
| 17        THE WITNESS: Of course. | |
| 19  Q.  When you were reviewing production policies<br>20      with Peter Williams, did you ever review the<br>21      war exclusions with him?<br>22  A.  Well, we went over the entire policy. We did<br>23      not spend any particular amount of time<br>24      talking about the war exclusion though, no.<br>25  Q.  Do you recall any specific conversations with | |
| Page 36 | |
| 1      Mr. Williams concerning the war exclusion?<br>2  A.  No. | |
| 10      MS. COYOCA: This has previously<br>11      been marked, but I assume we're going to be | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 12　　marking in seriatim fashion according to<br>13　　Mr. Keeley's indication at the last<br>14　　deposition, so I'll mark this document, the<br>15　　general claims practice, which is Bates<br>16　　labeled ATL 735 through 744, as Exhibit 1.<br><br>Page 37<br>15　　　　MS. COYOCA: Yeah, it's Exhibit 1.<br>16　　　　(Whereupon, Exhibit 1 was<br>17　　　　marked for identification.)<br>19　Q.　Ms. Johnson, have you seen this document<br>20　　before?<br>21　A.　I have.<br>22　Q.　What is it?<br>23　A.　It says, "General Claims Practices," and it<br>24　　is an explanation of claims processing and<br>25　　general claims practices.<br><br>Page 38<br>1　Q.　When did you first see this document?<br>2　A.　I believe it was provided to me when I first<br>3　　came to OneBeacon. I'm not absolutely sure,<br>4　　but I think it was.<br>5　Q.　Who provided it to you?<br>6　A.　Judy Lamble.<br>7　Q.　When you are reviewing claims, do you look at<br>8　　all potential coverages that might apply to a<br>9　　claim?<br><br>12　　　　THE WITNESS: Yes, I try to do<br>13　　that.<br><br>15　Q.　When you are reviewing a claim, do you<br>16　　consider -- just as your practice, do you<br>17　　consider the position of the insurer and the<br>18　　position of the insured and investigate both<br>19　　positions in making a coverage determination?<br>23　　　　THE WITNESS: I consider my job to | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 24    be to look for insurance coverage if it can<br>25    be found for the insured. And if there's an<br><br>Page 39<br>1    ambiguity in the policy, the tie goes to the<br>2    policyholder. My job is to find coverage if<br>3    it exists.<br>5  Q.  Could you please turn to page 2, which is<br>6    ATL 736.<br>7  A.  (Complies.)<br>8  Q.  Under 2, "Claim file documentation, paper and<br>9    electronic," do you see that reference?<br>10  A.  I do.<br>11  Q.  Were there claim files maintained for each<br>12    claim that you were involved with while you<br>13    were at OneBeacon entertainment?<br>14  A.  Yes.<br>15  Q.  What information was kept in the claims file?<br>18        THE WITNESS: Generally speaking,<br>19    you would want communications with the<br>20    insured to be in there. You would want<br>21    information provided by the insured to be in<br>22    there. A copy of the policy should be in --<br>23    in the file, notes of anyone exterior to the<br>24    company that you talked about with regard to<br>25    the claim and that sort of thing.<br><br>Page 40<br>2  Q.  Were there notes kept with respect to<br>3    internal communications regarding a claim?<br>6        THE WITNESS: I would say that<br>7    would depend on the claim file.<br>9  Q.  What would it depend on?<br>12        THE WITNESS: Well, there's no<br>13    requirement that we have to document every<br>14    internal discussion that we have and nor<br>15    would it necessarily be appropriate to do so. | |

**297**

| Deposition Designation | Objection & Response |
|---|---|
| Page 46 | |
| 7  Q.  Turning your attention back to page 2, or<br>8      736, there is a second bullet point at the<br>9      top of the page which indicates, "Determine<br>10    the need for outside vendors to insist in the<br>11    investigation." Do you see that?<br>12  A.  I do. | |
| Page 48 | |
| 21  Q.  My question, though, to you is if there was<br>22    ever an area where you retained an outside<br>23    vendor -- excuse me, if there was ever a<br>24    claim where there was an outside vendor that<br>25    you considered retaining because the | |
| Page 49 | |
| 1    circumstances of the claim involved an area<br>2    of expertise that was not within your frame<br>3    of knowledge? | |
| 6       THE WITNESS: Sure. Sometimes we<br>7    hire forensic accountants. Sometimes -- I<br>8    remember one instance in which we had to hire<br>9    an engineer. Again, when we're -- when we're<br>10   dealing with some of the intricacies of how<br>11   budgeting works in the film industry, there<br>12   are certainly people who have more experience<br>13   than I do in that area and sometimes we would<br>14   hire one of them. So there are a variety of<br>15   circumstances in which you would hire someone<br>16   from the outside. | |
| 18  Q.  Were there any limitations with respect to<br>19    your authority to be able to retain an<br>20    outside vendor with a particular area of<br>21    expertise while you were working for | |

| Deposition Designation | Objection & Response |
|---|---|
| 22      OneBeacon entertainment?<br><br>25           THE WITNESS: No, I don't think<br><br>Page 50<br>1       so.<br>3    Q.   Before you hired an outside vendor, were you<br>4          required to consult with your supervisor<br>5          about the fact that you intended to hire a<br>6          third-party vendor to assist in the<br>7          investigation of a claim?<br>8    A.   No.<br>9    Q.   Could you please turn to page 4, which is<br>10         page 738.<br><br>18   Q.   I'm referring to the second bullet point<br>19         under number 4, "Coverage Determination," the<br>20         bullet point that reads, begin quotes, "When<br>21         appropriate, the adjuster may consider<br>22         referring the claim for review by coverage<br>23         counsel or consult appropriate legal<br>24         resources, including internal claims legal<br>25         resources," close quotes? | Defendant's Objections: (50:18-25) Reference to coverage counsel; not relevant, prejudicial; RE 401, 403.<br><br>Plaintiffs' Response: Relevant to bad faith |
| Page 51<br>1    A.   Yes, I do see that.<br>2    Q.   Were there any limitations on your authority<br>3          with respect to making a decision about<br>4          obtaining a claim review by coverage<br>          counsel?<br>5    A.   No.<br><br>9    Q.   Generally, while you were at OneBeacon<br>10         entertainment, what was your practice with<br>11         respect to going to outside coverage counsel<br>12         to obtain a review?<br><br>15          THE WITNESS: There wasn't a | Defendant's Objections: (51:1-5, 9-12, 15-16) Reference to coverage counsel; not relevant, prejudicial; RE 401, 403<br><br>Plaintiffs' Response: Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 16      particular practice.<br><br>Page 52<br>1   Q.   Did you -- when you were working at<br>           OneBeacon<br>2        entertainment, did you obtain outside<br>3        coverage counsel opinions when a claim<br>4        involved an area with which you were not<br>5        familiar?<br><br>9          THE WITNESS: There were a wide<br>10       variety of circumstances in which I would<br>11       consult with outside counsel.<br>12   BY MS. COYOCA:<br>13   Q.   Was that one of them?<br><br>15          THE WITNESS: I don't know that I<br>16       would phrase it that way.<br>17   BY MS. COYOCA:<br>18   Q.   How would you phrase it?<br>19   A.   Sometimes we would have an insured who<br>20       specifically wanted us to get an outside<br>21       opinion and sometimes we would acquiesce to<br>22       that, sometimes we wouldn't. And it just<br>23       depended very much on the circumstance of<br>           the<br>24       claim.<br>25   Q.   Could you please turn back to page 3, 737.<br><br>Page 53<br>1   A.   (Complies.)<br>2   Q.   There is a reference there to an,<br>3        "Investigation Plan." Do you see that?<br>4          MS. REED: Counsel, can you direct<br><br>10          MS. COYOCA: It is the third open<br>11       bullet point, "Investigation Plan."<br><br>16   Q.   What is an investigation plan? | Defendant's Objections:<br>(52:1-5, 9-13, 15-24)<br>Reference to coverage<br>counsel; not relevant,<br>prejudicial; RE 401, 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 17  A.  That would be where the claim handler sets<br>18      forth how they plan to investigate the claim.<br>19  Q.  While you were working at OneBeacon<br>20      entertainment, with respect to the<br>21      individuals that -- the claims handlers that<br>22      you oversaw, did you have a practice of<br>23      requiring an investigation plan from each<br>24      individual?<br>25  A.  I would say that it would depend on the kind<br><br>Page 54<br>1      of claim it was. I mean, there are some<br>2      claims where the -- what you're going to do<br>3      is perfectly obvious and the fact -- and I<br>4      wouldn't necessarily require them to<br>5      articulate that in writing in a claim file,<br>6      especially if they had called me and spoken<br>7      to me about what their investigation plan<br>8      was.<br>9          So did I -- did I want them to have<br>10     an investigation plan, of course, I wanted<br>11     them to investigate the claim and they<br>12     should, you know, go where the investigation<br>13     leads them.<br>14         Did I require them to necessarily<br>15     put something in writing and put it in the<br>16     claim -- in a claim file, no, not<br>17     necessarily.<br>18  Q.  With respect to the claims file, if you had<br>19     to review case authority in order to make a<br>20     coverage determination, would the legal cases<br>21     be included in the claim file?<br>22  A.  Not necessarily. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 55 | |
| 20  Q.  For example, did you keep notes with respect | |
| 21       to the legal cases that you were looking at? | |
| 22  A.  Not necessarily. If I reviewed something in | |
| 23       Westlaw and read through the case and that | |
| 24       helped my determination, I wouldn't | |
| 25       necessarily printout the case and I wouldn't | |
| | |
| Page 56 | |
| 1        necessarily put it in the claim file. | |
| 2  Q.   What about any other legal authorities, for | |
| 3        example, if you were required to review a | |
| 4        statute or regulation would you keep any kind | |
| 5        of record of the fact that you had reviewed | |
| 6        that statute or regulation? | |
| 7  A.   Not necessarily. | |
| 8  Q.   Could you please turn to page 736, which is | |
| 9        page 2. | |
| 10  A.  (Complies.) | |
| 11  Q.  Looking at the heading number 2, "Claim File | |
| 12       Documentation, Paper and Electronic," the | |
| 13       first bullet point reads, begin quotes, | |
| 14       "Claims personnel should document the claim | |
| 15       file in such a way to provide a complete | |
| 16       understanding of activities with respect to | |
| 17       the claim," close quote. Do you see that? | |
| 18  A.  I do. | |
| 19  Q.  How did you meet that criteria with respect | |
| 20       to legal analysis that was performed in terms | |
| 21       of making a coverage determination if there | |
| 22       was not a practice of putting the information | |
| 23       into the claims file? | |
| | |
| Page 57 | |
| 1            THE WITNESS: Well, the note in | |
| 2        the claim file might read nothing more than, | |
| 3        "Conducted research into case analysis, | |
| 4        legal" -- you know, "Legal analysis of the | |
| 5        claim," something to that effect, that -- | |

| Deposition Designation | Objection & Response |
|---|---|
| 6    that fulfills that, it says that this is one<br>7    of the things that we did with regard to the<br>8    evaluation of the claim.<br><br>Page 58<br>12  Q.  Could you please turn to page 740.<br>13  A.  (Complies.)<br>14  Q.  Under the item number 6, "Reserving," there<br>15     is a first bullet point that indicates,<br>16     "Reserves should be timely established based<br>17     on exposure in light of the totality of the<br>18     circumstances presented by the individual<br>19     claim." Do you see that?<br>20  A.  I do.<br>21  Q.  Were you responsible for setting reserves<br>22     during the period of time that you were<br>23     working for OneBeacon entertainment? | <u>Defendant's Objections:</u><br>(58:12-13) Reference to reserves; not relevant, prejudicial; FRE 401, 403<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith |
| Page 59<br>1     THE WITNESS: I was in charge of<br>2    setting reserves on a claim that I personally<br>3    handled as a claim professional.<br>4  BY MS. COYOCA:<br>5  Q.  Was there a practice, best practice<br>6     established at OneBeacon entertainment as to<br>7     the timing of when a claim should first be<br>8     reserved?<br><br>11     THE WITNESS: It should reserve<br>12    within the first 30 days with regard to the<br>13    indication of whether it is a potentially<br>14    covered claim or not, and then as you gather<br>15    more information within 30 days of gathering<br>16    information that affects your determination<br>17    of the potential damages involved and<br>18    exposure on a covered claim, you should<br>19    adjust the reserve accordingly.<br><br>21  Q.  With the first part of your response you | <u>Defendant's Objections:</u><br>(59:1-8, 11-19, 21-25) Reference to reserves; not relevant, prejudicial; FRE 401, 403<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 22     indicated, begin quotes, "It should reserve<br>23     within the first 30 days with regard to the<br>24     indication of whether it is a potentially<br>25     covered claim or not." I want to understand<br><br>Page 60<br>1     your response.<br>2     Are you indicating that a reserve<br>3     should be set within the first 30 days<br>4     irrespective of whether the claim was a<br>5     covered claim?<br>6  A.   Yes, that is what I am saying. However, I'm<br>7     not saying that it should be reserved to<br>8     exposure. In other words, what the potential<br>9     damages are affiliated with the claim if it's<br>10    not a covered claim. If it's not a covered<br>11    claim, you would enter a signal reserve<br>12    indicating that it's not a covered claim.<br>13  Q.   What do you mean by a, "Signal reserve"?<br>14  A.   Well, there -- there's signal reserves that<br>15    indicate this is a covered claim, but I don't<br>16    know what the damages are yet, or there is a<br>17    signal reserve that says I don't know, I<br>18    don't think that this is a covered claim and,<br>19    therefore, I'm not entering a specific dollar<br>20    amount.<br>21       It's to give an indication to the<br>22    underwriters in the event that a claim is<br>23    coming up for renewal, with regard to what's<br>24    going on with the claim.<br>25  Q.   And final bullet point in number 6 it<br><br>Page 61<br>1     indicates, begin quotes, "Claims personnel<br>2     must obtain appropriate authority before<br>3     making reserve decisions in excess of their<br>4     authority." Do you see that?<br>5  A.   I do.<br>6  Q.   What was your authority during the period | <br><br><br><br><br>Defendant's Objections:<br>(60:1-25) Reference to<br>reserves; not relevant,<br>prejudicial; FRE 401, 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br>(61:1-7, 10-12, 14-18)<br>Reference to reserves; not<br>relevant, prejudicial; FRE<br>401, 403<br><br>Plaintiffs' Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 7      that you were working at OneBeacon? | Relevant to bad faith |
| 10          THE WITNESS: I don't remember<br>11      exactly. It was between 750 and a million, I<br>12      think. I think that's right. | |
| 14   Q.   So am I correct that anything above a million<br>15      you believe you needed to go to others in the<br>16      company in order to obtain their consent<br>17      before settling a claim in that amount?<br>18   A.   Yes. | |
| Page 72<br>23   Q.   Now, when I asked you about obtaining an<br>24      outside coverage opinion, you indicated that<br>25      you don't have any specific criteria as to | Defendant's Objections:<br>(72:23-25) Reference to<br>reserves; not relevant,<br>prejudicial; FRE 401, 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |
| Page 73<br>1      when you would go seek one out when you<br>were<br>2      working at OneBeacon entertainment, but one<br>3      circumstance might be if you were traveling a<br>4      lot and didn't have time to do research,<br>5      another circumstance would be if claims legal<br>6      did not have time; is that correct?<br>7   A.   Yes, that's correct.<br>8   Q.   Are there any other circumstances that you<br>9      can identify where you would seek outside<br>10      coverage counsel opinion with respect to a<br>11      claim while you were working at OneBeacon<br>12      entertainment?<br><br>15          THE WITNESS: I think I stated<br>16      before if when I did the research I thought<br>17      that there was conflicting opinions or<br>18      conflicting information that -- that dealt | Defendant's Objections:<br>(73:1-12, 15-25) Reference<br>to reserves; not relevant,<br>prejudicial; FRE 401, 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |

**305**

| Deposition Designation | Objection & Response |
|---|---|
| 19    with the specific language of the policy,<br>20    that might be an instance in which I would<br>21    ask for an outside opinion. I don't<br>22    specifically recall any time that that<br>23    happened when I asked for an outside opinion,<br>24    but that would be a circumstance in which I<br>25    would have.<br><br>Page 90<br>7   Q.  Ms. Johnson, when is the first time you heard<br>8      about the Dig claim?<br>9   A.  I think that it was on a telephone call<br>10     with Danny Gutterman, Andrea Garber and<br>11     Susan Weiss on July 10th, 2014.<br>12  Q.  You believe that phone call took place on<br>13     July 10, 2014?<br>14  A.  I think that's right. I could be mistaken<br>15     about the date.<br>16  Q.  And the participants in the call were<br>17     Danny Gutterman, Andrea Garber, Susan Weiss<br>18     and yourself?<br>19  A.  That's correct.<br>20  Q.  Why were you having the call?<br>21  A.  Danny called me and he said that NBC had a<br>22     claim that they wanted to discuss and could<br>23     we talk about it, you know, in other words,<br>24     could he conference me in. Or he may have<br>25     already conferenced me in, I don't remember.<br><br>Page 91<br>1       That wasn't uncommon. I mean, if<br>2    there's a -- in entertainment claims,<br>3    especially first-party claims, things are<br>4    very fast moving. You can't allow a<br>5    production to sit around and wait. If they<br>6    have something that they have that they need<br>7    an answer to, you need to get on it as<br>8    quickly as possible. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|

23   Q.   At that point in time, had a claim been
24       formally tendered to OneBeacon?
25   A.   I don't know.

Page 92

1   Q.   Was it your understanding during the course
2       of the call that the claim had previously
3       been discussed with anyone else at
       OneBeacon?
4   A.   I think that either Andrea or Susan mentioned
5       that they had talked to Peter.
6   Q.   What was discussed during the call?
7   A.   They explained that the situation -- that --
8       in Israel had become too dangerous for their
9       cast to resume filming there. They had been
10      on hiatus between the pilot and the shooting
11      of the initial season, which is not uncommon,
12      and they were supposed to start shooting
13      again and they wanted to push for a week. In
14      other words, they wanted to delay starting
15      production for a week to see whether or not
16      the situation deescalated.
17   Q.   Did they explain to you why the situation in
18      Israel had become dangerous?
19   A.   They told me that -- that Hamas was lobbing
20      rockets into Tel Aviv and Jerusalem, which
21      were the two cities in which they had
22      locations for shooting.
23   Q.   Did they say anything further with respect to
24      the situation that was creating an unsafe
25      circumstance for the production to proceed?

Page 93

1   A.   No, that's what we talked about in terms
2       of -- of safety or lack of safety, was that
3       the fact that there was increased rocket fire
4       and their security team had told them that it
5       had become unsafe.

| Deposition Designation | Objection & Response |
|---|---|
| 6  Q.  Who did the talking as between Ms. Garber or<br>7       Ms. Weiss, if there was one, that was the<br>8       predominant talker during the call?<br><br>11        THE WITNESS: I think both of them<br>12      participated, but Susan I think did most of<br>13      the talking. That's Susan Weiss, the broker.<br><br>15  Q.  What, if anything, did they say about their<br>16      conversation with Mr. Williams?<br>17  A.  I don't recall.<br>18  Q.  Did they indicate that they had spoken to<br>19      Mr. Williams about the push?<br>20  A.  Yes.<br>21  Q.  Did they indicate what Mr. Williams said in<br>22      response to their recitation of the facts?<br><br>25        THE WITNESS: Not that I recall.<br><br>Page 94<br>13  Q.  Did Ms. Garber or Ms. Weiss discuss the<br>14      amount of costs that might potentially be<br>15      incurred that would be associated with the<br>16      push?<br>17  A.  I asked them what their usual production<br>18      costs were for a week of filming just to get<br>19      sort of an estimate of -- of how much it<br>20      would cost if they had to push, and I think<br>21      they told me $350,000, which was not<br>        uncommon<br>22      for an NBC production.<br><br>Page 95<br>22  Q.  My question, though, is: Did you ask them<br>23      the question as to what the estimated cost<br>24      would be for pushing production for one<br>        week?<br>25  A.  I -- I don't remember. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Counter:<br>(96:21-25)<br><br>Plaintiffs' Response:<br>Defendant's counter is an<br>incomplete sentence and<br>responsive to a different |

| Deposition Designation | Objection & Response |
|---|---|
| | question.  Not necessary for completeness. |

Page 96
1   Q.   Did Ms. Weiss or Ms. Garber indicate what
2         would happen after one week?
3   A.   As I recall, we were talking about whether or
4         not -- this was a fast-moving situation and
5         we wanted to see whether it would deescalate.
6         So we had -- we had agreed that we would talk
7         again shortly after seeing what -- what was
8         continuing to happen.

Page 97
1         because that was our primary concern, is
2         everyone -- you know, have they left Israel,
3         are they still on the ground, if they need to
4         leave, you know, what -- what arrangements
5         have you made with regard to that.
6               And I think, because they were on
7         hiatus, that either everyone or almost
8         everyone was already gone or had not
9         returned, depending on how you look at it.

15  Q.   Is there anything else you can recall that
16        was said other than what you've told me about
17        today?
18  A.   That's what I recall as I sit here right now.
19  Q.   What was your response, if any, to the
20        description of the need for a push?
21  A.   Well, I don't think that I responded one way
22        or another. I agreed with them that given
23        the information they had, it sounded like a
24        dangerous situation and that we wanted to see
25        what was going to happen next.

Page 98
12              MS. COYOCA: Okay. I'd like to
13        mark as Exhibit 2 to this deposition a

**309**

| Deposition Designation | Objection & Response |
|---|---|
| 14     document that is a series of e-mails, and<br>15     it's labeled Bates control ATL000982<br>16     through 985. The top e-mail is from<br>17     Michael J. Arevalo to Pamela Johnson on<br>18     Tuesday, September 15, 2014.<br>19        (Whereupon, Exhibit 2 was<br>20        marked for identification.)<br>21        THE WITNESS: I'm sorry, I believe<br>22     you misspoke. I think you said September<br>23     15th. This indicates July 15th.<br>24        MS. COYOCA: You're right, I did.<br>25     Thank you for that. The record should<br><br>Page 99<br>1     reflect that the date is July 15th, 2015.<br><br>7   Q.  First of all, have you seen this document<br>8      before, Ms. Johnson?<br>9   A.  Well, I've seen the e-mail that Michael sent<br>10     to me. Yes, I mean, I have seen the<br>11     e-mail -- e-mail chain before, yes.<br>12   Q.  Okay. The first e-mail in time is at the<br>13     very bottom of the document, and that's from<br>14     Randi Richmond to Andrea Garber with a cc to<br>15     Mark Binke and Kurt Ford, and it's dated<br>16     Monday, July 14, 2014. Do you see that?<br>17   A.  I do.<br>18   Q.  And the e-mail contains part A, "Summary of<br>19     where you are in the production schedule,"<br>20     and, B, "What you have been advised of by<br>21     security regarding the imminent peril to your<br>22     operations." Do you see that?<br>23   A.  Yes.<br>24   Q.  You previously testified about a report that<br>25     had been received by security indicating that<br><br>Page 100<br>1     they were no longer able to guarantee safety | |

| Deposition Designation | Objection & Response |
|---|---|
| 2    and security of the employees in Israel; is<br>3    that right?<br>4  A.  Yes.<br>5  Q.  Is this the report that you were thinking of?<br>6  A.  Yes.<br><br>9       THE WITNESS: Yes, it is.<br><br>11  Q.  Now, this e-mail indicates that the security<br>12    report was in an e-mail sent to Mark Binke on<br>13    July 10, 2014. Do you see that? I'm on page<br>14    984 now, under paragraph B.<br>15  A.  Yes.<br>16  Q.  "What you have been advised of by security<br>17    regarding imminent peril to your operations,"<br>18    and then there's a note below that, or<br>19    sentence, "The following was an e-mail sent<br>20    to Mark Binke 7/10/14," and then a quote. Do<br>21    you see that?<br>22  A.  I do.<br><br>Page 101<br>10  Q.  The e-mail above the e-mail that we were<br>11    just discussing is from Andrea Garber to<br>12    Susan Weiss with a cc to Deborah Kizner<br>      dated<br>13    Monday, July 14, 2014, and the first sentence<br>14    reads, "Following our discussion on Friday<br>15    with Peter, below is the e-mail I received<br>16    from Randi Richmond, the production<br>      executive<br>17    on the show, outlining the situation in<br>18    Israel on our production Dig, Season 1." Do<br>19    you see that sentence?<br>20  A.  I do.<br>21  Q.  You just testified that you believed that you<br>22    spoke with Ms. Garber and Ms. Weiss after<br>      one<br>23    or both of them had already spoken with<br>24    Mr. Williams; is that correct? | |

| Deposition Designation | Objection & Response |
|---|---|
| 25  A.  That's correct. | |

Page 102
12  Q.  On page 982, the July 15, 2014, e-mail from
13       Michael Arevalo to you, "Forward: NBCU's Dig
14       Season 1 Imminent Peril Claim Notification";
15       do you see that e-mail?
16  A.  I do.

Page 103
19  Q.  As you look at Ms. Weiss's e-mail below the
20       e-mail that was forwarded to you by
21       Mr. Arevalo, is it your understanding that
22       this was the tender of the claim, notice of
23       the claim being given to OneBeacon?
24  A.  Well, this certainly is not the way you
25       usually would tender a claim. But, yes, I

Page 104
1        mean, I think that she was -- she was saying
2        that she was making us aware of the claim.

Page 105
22  Q.  Was there any requirement that claims be
23       tendered in a particular format?
24  A.  Not that I'm aware of.
25  Q.  After a claim was submitted to OneBeacon by

Page 106
1        NBCUniversal, what was the next step in terms
2        of setting up the file?
3   A.  So Lucy Lopez, who also worked as my
4        assistant, would get the -- get the relevant
5        information for the broker to be able to fill
6        in all of the screens that we need -- needed
7        to set up the claim in our claim files
8        system.

| Deposition Designation | Objection & Response |
|---|---|

Page 107

2  Q. In terms of the information that needed to be
3     set up in the claims file system other than
4     the name of the insured, the policy number,
5     the nature of the claim, the contact with the
6     broker, is there any other information that
7     needed to be inputted in?
8  A. Date of loss, insured contact, and that's all
9     that comes to mind immediately. There might
10    be other things that I'm not recalling. It's
11    been a long time.
12 Q. What was the significance of the date of
13    loss?
14 A. You had to make sure you were looking at the
15    right policy period in interpreting the
16    claim.
17 Q. Any other reason?
18 A. That's the primary reason.
19 Q. What if the loss was ongoing?
20 A. You mean if it was a continuous loss?
21 Q. Correct.
22 A. You would still want to have the date that it
23    first started to make sure that you were
24    looking at the right time period. These were
25    claims-made policies, so you wanted to make

Page 108

1     sure that the claim was made within the
2     correct policy period.

14 Q. Does reviewing this e-mail, Exhibit 2,
15    refresh your recollection that the
16    conversation took place between yourself and
17    Mr. Gutterman and Ms. Weiss and Ms. Garber at
18    some point after July 10?
19 A. That is what it appears from when they sent
20    this in, but I hadn't seen this at the time

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 21     we had our conversation, so I can't be sure<br>22     of that.<br>23  Q.  So your first notification of the claim was<br>24     actually receiving a phone call from<br>25     Mr. Gutterman, nothing else?<br><br>Page 109<br>1  A.  As I recall.<br>2  Q.  After your conversation with Ms. Weiss and<br>3     Mr. Gutterman, what did you do next?<br>4  A.  Well, I was sitting in a car outside a<br>5     restaurant, so I think I probably drove<br>6     either home or to another location.<br>7  Q.  What did you do next with the claim after you<br>8     drove home?<br>9  A.  I would assume that I began to research the<br>10    situation in Israel to see exactly what was<br>11    going on there to determine whether or not<br>12    the claim was potentially covered.<br>13  Q.  Was Mr. Gutterman automatically assigned to<br>14    entertainment-related claims? How did<br>15    Mr. Gutterman come to be involved with the<br>16    claim?<br><br>18      THE WITNESS: Danny was in charge<br>19    of all the first-party claims, in other<br>20    words, things that were brought by the<br>21    insured with regard to a production policy,<br>22    he was -- he was the person to whom they were<br>23    assigned, and then he would seek information<br>24    and guidance from me, and I worked pretty<br>25    closely with them on those kinds of claims.<br><br>Page 118<br>14  Q.  You indicated that shortly after having that<br>15    phone call with Ms. Garber and Ms. Weiss, you<br>16    believe that you began researching; is that | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Counter:<br>(119:20-25, 120:1-12)<br><br>Plaintiffs' Response:<br>Defendant's counter is |

| Deposition Designation | Objection & Response |
|---|---|
| 17      correct? | irrelevant, waste of time. |
| 18   A.   Yes. | 402, 403. Not necessary for |
| 19   Q.   What did you research? | completeness. |
| 20   A.   I wanted to know what was happening in | |
| 21      Israel. And they said that it was -- that, | |
| 22      you know, it was a dangerous situation and | |
| 23      they said that they thought it was imminent | |
| 24      peril, and so I needed to collect information | |
| 25      to see whether or not it actually did fall | |
| | |
| Page 119 | |
| 1      within the coverage grant for imminent peril | |
| 2      and whether there were any exclusions that | |
| 3      applied. | |
| 4   Q.   What did you do to research the situation in | |
| 5      Israel? | |
| 6   A.   I looked at news reports, I read articles, I | |
| 7      looked at newspaper articles and, you know, a | |
| 8      variety of -- of -- I don't know what you | |
| 9      would call them. Not academic articles, | |
| 10      because I don't think that that's what they | |
| 11      would be called, but articles or -- or white | |
| 12      papers written by, for example -- for | |
| 13      example, the CRS, the Congressional Research | |
| 14      Service that works specifically for | |
| 15      U.S. Congress. | |
| 16   Q.   Did you begin that research the same day that | |
| 17      you had the conversation with Ms. Weiss and | |
| 18      Ms. Garber? | |
| 19   A.   I think did, yes. | |
| | |
| Page 120 | |
| 13   Q.   What did you do to review the coverage? | |
| 14   A.   I looked at the policy. | |
| 15   Q.   Anything else? | |
| 16   A.   Well, the policy is what indicates what the | |
| 17      coverage is, so, no, that's what I did. I | |
| 18      looked at what the policy said. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 19 Q. Did you look at anything else, though, in<br>20    order to be able to analyze the coverage?<br>21 A. Well, I think I just told you a variety of<br>22    things that I did.<br>23 Q. Right. You indicated that in order to<br>24    investigate the factual situation in Israel<br>25    you looked at news reports, news articles,<br><br>Page 121<br>1    you read articles, newspaper articles, and<br>2    white papers, such as the Congressional<br>3    Research Service.<br><br>6       THE WITNESS: I looked at a lot of<br>7    different things. They certainly encompassed<br>8    the things that I've told you. I probably<br>9    looked at other things besides that that I<br>10   don't recall as I sit here today.<br><br>25 Q. Okay. And in order to determine whether or<br><br>Page 122<br>1    not it falls within the scope of the coverage<br>2    grant in the first instance, did you look at<br>3    anything other than the factual circumstances<br>4    versus -- excuse me, in terms of the various<br>5    articles and, et cetera, that you reviewed<br>6    and the insurance policy?<br>7 A. That's what I recall doing.<br>8 Q. Did you look at the imminent peril coverage?<br>9 A. Yes.<br>10 Q. Under the extra expense portion of the<br>11   policy?<br>12 A. That's correct.<br>13 Q. Did you come to a conclusion as to whether or<br>14   not the situation that had been described<br>15   constituted imminent peril?<br>16 A. Based on the information that I had at the<br>17   time, what -- what you always try to | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 18      determine in an imminent peril situation is<br>19      first was this unexpected.<br>20            In other words, based on the<br>21      information that the -- that the production<br>22      has before they go into the situation versus<br>23      what the situation is at the time that they<br>24      are saying that they have a claim, is the<br>25      behavior or whatever is going on, you know,<br><br>Page 123<br>1      has -- has that -- is that unexpected to the<br>2      degree that you think that keeping people<br>3      there would be unconscionable.<br>4            So that's what I was looking at,<br>5      what was the situation before we went in, and<br>6      then what was the situation at the time we<br>7      had the phone call and they decided to push.<br><br>Page 124<br>12   Q.   When did you reach your conclusion that the<br>13         situation did in fact constitute imminent<br>14         peril?<br>15   A.   Well, it didn't take me very long to reach<br>16         that conclusion. I mean, I don't think I<br>17         reached it that night. I continued to have<br>18         conversations with Danny. We both were doing<br>19         research and exchanging information with each<br>20         other with regard to what we had found. But<br>21         certainly within a few days.<br><br>Page 129<br>7      Q.   Did you -- to the best of your recollection,<br>8            did you consult any other materials in order<br>9            to determine what the situation was prior to<br>10           the time the claim arose?<br>11     A.   I know I looked at travel warnings.<br>12     Q.   Where did you get the travel warnings from? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 13　A.　I looked at the State Department's warnings <br> 14　　　that they put out with regard to warning U.S. <br> 15　　　citizens about dangerous areas of travel. <br> 16　Q.　Any other source other than U.S. State <br> 17　　　Department? <br> <br> Page 130 <br> 9　Q.　With respect to the communications you had <br> 10　　　with Danny Gutterman about his investigation <br> 11　　　of the claim, do you recall directing him to <br> 12　　　look at any particular sources of <br> 13　　　information? <br> 14　A.　As I sit here today, I don't remember. Maybe <br> 15　　　I did. <br> 16　Q.　Maybe you did, maybe you didn't, you just <br> 17　　　don't remember? <br> 18　A.　I don't recall. <br> 19　Q.　Did you and Mr. Gutterman develop an <br> 20　　　investigation plan for the claim? <br> 21　A.　Well, when you say, "Develop an investigation <br> 22　　　plan," we began an investigation, so it's not <br> 23　　　as though we sat down and said, "This is what <br> 24　　　we need to know." We already knew what we <br> 25　　　needed to know when we started to investigate | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 131 | |

Page 131

1      it, what happened prior to the time that the
2      shooting started and what happened in
3      shooting -- I mean, principal photography --
4      and what happened in between the time that
5      they -- before they got there and what was
6      happening at the time they made the claim.
7   Q.  I understand the steps that you began to take
8      to investigate the claim. What I want to
9      know is: Before the investigation began, did
10     you and Mr. Gutterman discuss an
11     investigation plan?
12  A.  Well, I think what I've already testified is
13     that I began the investigation myself that
14     night, and that I don't recall whether or not
15     I spoke with Mr. Gutterman before I started
16     doing that.
17  Q.  Did you and Mr. Gutterman develop an
18     investigation plan before beginning the
19     investigation?
20  A.  I think I've already told you.
21  Q.  Please answer my question.
22  A.  Did I sit down and --

25         THE WITNESS: Did I sit down

Page 132

1      and -- and have a conversation about him,
2      "These are the steps we need to take," no,
3      "One, two, three," no, I did not do that.

19  Q.  Do you have a general recollection of
20     speaking with Mr. Williams shortly --
21     sometime shortly after the claim arose?
22  A.  Yes.
23  Q.  What did you discuss with him?
24  A.  I don't recall specifically, except for the
25     fact that he needs to be aware of claims that

| Deposition Designation | Objection & Response |
|---|---|
| Page 133 | |

Page 133

1  come in, what we're thinking about in terms
2  of coverage, because the most important thing
3  in dealing with any production claim is
4  if -- if you even have any inkling that a
5  claim might have some kind of coverage
6  problem, you need to let the insured know
7  that up -- upfront, because you don't want
8  them to be relying upon insurance coverage as
9  they are making their creative decisions.
10 Q.  Did you discuss with Mr. Williams, during
11     that first phone call you had with him after
12     the claim first arose, that there might be a
13     coverage problem?
14 A.  Well, we had an exchange of e-mails, I
15     believe, where I related to him what had
16     happened in the phone call.
17 Q.  Other than having an exchange of e-mails, as
18     you sit here today, do you recall discussing
19     that there might not be coverage for the
20     claim?
21 A.  Sometime short -- shortly thereafter, I'm
22     sure we did.
23 Q.  Did you ever have a telephone call with him
24     to discuss it?
25 A.  I'm sorry, I just don't remember. I mean,

Page 134

1  that would be likely because, you know, the
2  protocol was if you think that there's going
3  to be something that -- that is going to
4  have -- that is potentially not covered, you
5  want to tell Peter first, and then you want
6  to tell the broker.

25 Q.  Okay. Before that next conversation with

Page 135

1  Ms. Garber and Ms. Weiss when you were

| Deposition Designation | Objection & Response |
|---|---|
| 2      investigating the claim, you've given me<br>3      certain materials that you consulted,<br>4      articles, white paper, et cetera, newspaper<br>5      articles, you've also indicated you looked at<br>6      the insurance policy. Are there any other<br>7      documents that you can recall reviewing?<br>8  A.  I looked at case law.<br>9  Q.  What case law did you look at?<br>10  A.  I looked at any case that I could find that<br>11     interpreted the war exclusion.<br>12  Q.  Do you recall the names of any of those<br>13     cases?<br>14  A.  The Pan Am case, the Holiday Inn case.<br>15  Q.  Other than Pan Am and Holiday Inn, do you<br>16     recall any other cases?<br>17  A.  I think I had also looked at -- looked at<br>18     what had been said about the -- you know, the<br>19     9/11 attack.<br><br>Page 136<br>1  Q.  What did you look at with respect to what had<br>2     been said about the 9/11 attacks?<br>3  A.  I can't tell you specifically as I sit here<br>4     today.<br>5  Q.  Did you read any cases with respect to 9/11?<br>6  A.  Perhaps. As I said, I looked at any case law<br>7     I could find that interpreted the war<br>8     exclusion.<br>9  Q.  Did you review any articles that discussed<br>10    the insurance company's response -- excuse<br>11    me, the insurance industry's response to the<br>12    9/11 attacks in terms of application or<br>13    non-application of the war exclusion?<br>14  A.  Well, I -- I don't recall if I -- if I<br>15    actually read anything about that. I just<br>16    don't remember.<br><br>22  Q.  Right. What I'm trying to find out is what<br>23    you looked at with respect to the 9/11<br>24    attacks. And I believe your testimony is you | |

| Deposition Designation | Objection & Response |
|---|---|
| 25    can't recall if you looked at case authority<br><br>Page 137<br>1    and you can't recall if you looked at<br>2    articles about the industry response; is that<br>3    correct?<br>4  A.  Well, what my testimony was is I -- when I<br>5    was looking at case law, I was looking at any<br>6    case that was available on Westlaw that<br>7    interpreted the war exclusion, because I<br>8    wanted to see how it had been interpreted in<br>9    the past, which is what I usually do in the<br>10    instance of any kind of a denial, I always<br>11    want to see if there's other -- if there's<br>12    case law out there that -- that interprets a<br>13    particular language that's contained in the<br>14    policy to make sure that my interpretation is<br>15    consistent with case law.<br>16  Q.  Right. What I'm focused on is the 9/11<br>17    attacks. You indicated that you reviewed<br>18    something with respect to the 9/11 attacks.<br>19  A.  Yes, and I don't -- I can't tell you as I sit<br>20    here today exactly what it was.<br>21  Q.  Okay. Now, prior to beginning your<br>22    investigation of the factual circumstances in<br>23    Israel, did you know what Hamas was?<br>24  A.  I knew of the existence of Hamas, yes.<br>25  Q.  What did you understand Hamas to be?<br><br>Page 138<br>1  A.  A Palestinian organization.<br>2  Q.  Anything else that you understood at the time<br>3    the claim first came in?<br>4  A.  Well, I know that Susan Weiss considered it<br>5    to be a terrorist organization, because<br>6    that's what she said. I didn't have an<br>7    opinion one way or another with regard to<br>8    that. | |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 140</u><br>5  Q.  My question to you, though, is: As of<br>6      July 15, 2014, when you were first<br>7      investigating the claim, did you know whether<br>8      or not the U.S. Government recognized the<br>9      existence of a separate state of Palestine?<br><br>13       THE WITNESS: I don't think that<br>14     they did, no.<br><br>16  Q.  Okay. But my question is of your knowledge<br>17     as of July 15, 2014.<br>18  A.  No, I think at that time that I don't think<br>19     that the U.S. was recognizing Palestine as a<br>20     separate state.<br>21  Q.  That was your understanding?<br>22  A.  Yes.<br><br><u>Page 141</u><br>24  Q.  As of July 15, 2014, before you began your<br>25     investigation, did you have an understanding<br><br><u>Page 142</u><br>1     as to whether the U.S. Government recognized<br>2     a separate state of Gaza?<br><br>5      THE WITNESS: I don't believe they<br>6     did.<br><br><br><br><br><u>Page 151</u><br>20  Q.  Before you began your investigation in July 7<br>21     of 2014, did you know that Hamas had been<br>22     designated as a terrorist organization by the<br>23  U.S. Government since 1997? | <u>Defendant's Counter:</u><br>142:8-19<br><br><u>Plaintiffs' Response:</u><br>Defendant's counter is a separate question and answer.  Witness's answer to the question in Defendant's counter is non-responsive. Not necessary for completeness. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 152<br>2      THE WITNESS: I don't know that I<br>3    knew they had given it that specific<br>4    designation, but that was not a surprise.<br>5    Frequently, Hamas was referred to, you know,<br>6    in media as a terrorist organization.<br><br>8  Q.  As part of your research, did you ever look<br>9    at the U.S. Government's designation of<br>10   Hamas's status as a terrorist organization?<br>11  A.  It was one of the things that --<br><br>15    Yes, that was one of the things that<br>16  I came across is that the U.S. designated it<br>17  as a terrorist organization.<br><br>19  Q.  How did you come across that?<br>20  A.  I don't remember where I read that. I mean,<br>21  there -- there were -- I mean, there was so<br>22  many different things that I looked at that I<br>23  can't tell you for sure. It might have been<br>24  in the -- the Zanotti white paper that I<br>25  read. It could have been in any one of a<br><br>Page 153<br>1    variety of -- of things that I looked like --<br>2    looked at, in a newspaper article, a magazine<br>3    article, I'm just not sure.<br>4  Q.  Did you ever look at any U.S. Government<br>5    websites in terms of the list of terrorist<br>6    organizations to determine whether or not<br>7    Hamas was on it?<br>8  A.  Well, I looked at the travel website. And I<br>9    can't tell you as I sit here today whether or<br>10  not on the travel website it specifically<br>11  said that Hamas was a terrorist organization<br>12  or not.<br>13  Q.  But other than U.S. Government travel | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 14     websites, did you look at any U.S. Government<br>15     website that listed all of the organizations<br>16     that the U.S. Government considered to be<br>17     terrorist organizations?<br><br>20           THE WITNESS: I don't recall<br>21     looking at a website that specifically said<br>22     that, had that particular list that you're<br>23     referring to.<br><br>25   Q.   Did you ask Danny Gutterman to look at the<br><br>Page 154<br>1     U.S. Government websites for lists of --<br>2     excuse me -- terrorist organizations to see<br>3     if Hamas was on it?<br><br>6           THE WITNESS: No, I did not.<br><br>8   Q.   Did Danny Gutterman ever tell you that he had<br>9     looked at U.S. Government websites to find<br>10     the list of designated terrorist<br>11     organizations to see if Hamas was on it?<br><br>14           THE WITNESS: Not that I recall.<br><br>Page 156<br>2   Q.   Okay. So at the time that you were<br>3     conducting your -- your investigation of the<br>4     claim, it was your understanding that Hamas<br>5     was the majority of the Palestinian<br>6     parliament; is that correct?<br>7   A.   Yes. | Defendant's Counter:<br>156:11-25; 157:1-4; 159:16-25; 160:1-25<br><br>Plaintiffs' Response:<br>Defendants' counters are different questions and answers.  Not necessary for completeness. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 167 | |

Page 167

1  Q.  In your research, did you form any
2       conclusions as to whether Fatah and Hamas did
3       form an affiliation in June of 2014?
4  A.  Well, they said that they were forming an
5       affiliation. That's the best answer I can
6       give you.
7  Q.  When you were doing your research in July of
8       2014, did you do any separate research as to
9       Hamas's status as a terrorist organization
10      according to the U.S. Government?

13          THE WITNESS: I'm not sure what
14      you mean by status. I knew that the
15      United States viewed Hamas as a terrorist
16      organization based on their charter.

18  Q.  What was your understanding as to what was in
19      Hamas's charter that made the U.S. Government
20      consider it to be a terrorist organization?
21  A.  Well, part of the charter of Hamas, as far as
22      I understand it, is that it wants the -- it
23      will never acknowledge Israel and it wants
24      the destruction of Israel.
25  Q.  Anything else?

Page 168

1  A.  Well, it wants to reclaim its homeland. It
2       claims that Israel is actually Palestinian
3       territory.
4  Q.  Anything else?
5  A.  That's all I can recall at this moment.

Page 169

15  Q.  During your investigation you came to a
16      conclusion that the U.S. considered Hamas to

| Deposition Designation | Objection & Response |
|---|---|
| 17    be a terrorist organization; is that correct?<br>18  A.  Yes.<br><br>22  Q.  Did you do any investigation or perform any<br>23      analysis with respect to the impact of that<br>24      status as a terrorist organization on the<br>25      claim itself?<br><br>Page 170<br>3      THE WITNESS: Based on what was<br>4      happening in Israel and the Gaza strip at the<br>5      time of the claim, whether or not Hamas was a<br>6      terrorist organization was not relevant to my<br>7      analysis.<br><br>9  Q.  Was there a terrorism exclusion on the<br>10     policy?<br>11  A.  Well, I'm not sure what you mean by a<br>12     terrorism exclusion. There was nothing<br>13     specifically in the policy that said acts of<br>14     terrorism are excluded.<br>15     But, certainly, the fact that there<br>16     was a war exclusion if the terrorist act also<br>17     involved warlike weapons, was part of an<br>18     insurrection, I mean, war and terrorism are<br>19     not usually exclusive, you can have the same<br>20     things happening, you can have terrorist acts<br>21     during acts of war. So I didn't see those as<br>22     mutually exclusive things.<br>23     So if -- if the terrorist attack<br>24     also involved one of the criteria that is<br>25     found in the war exclusion, then the claim<br><br>Page 171<br>1     would be excluded.<br>2     If it did not, then there's a<br>3     potential for coverage depending on the other<br>4     surrounding circumstances and whether or not<br>5     the circumstances fall within the coverage | |

| Deposition Designation | Objection & Response |
|---|---|
| 6     grant in the first place.<br>7  Q.  You said you're not sure of what I mean by a<br>8     terrorism exclusion. Have you ever reviewed<br>9     a policy that contained a terrorism<br>10    exclusion?<br>11  A.  I might have, but as I sit here today, I<br>12    wouldn't be able to tell you what the<br>13    language is. And since you haven't given me<br>14    that language, I can't analyze that.<br>15  Q.  But to the best of your recollection, did you<br>16    ever see in the NBCUniversal policy an<br>17    exclusion that was labeled terrorism<br>18    exclusion?<br>19  A.  I did not.<br>20  Q.  When you were performing your analysis as to<br>21    whether the situation in Israel was a covered<br>22    claim or not, did you take into consideration<br>23    at all one way or the other the fact that<br>24    Hamas was designated as a terrorism<br>25    organization by the U.S. Government?<br><br>Page 172<br>1  A.  I think I've already answered that question.<br>2    But, yes, I knew that that's how the U.S.<br>3    viewed it. But given the circumstances<br>4    surrounding what was happening in Israel at<br>5    the time of the claim, whether or not Hamas<br>6    was viewed as a terrorist organization by the<br>7    U.S. Government was not relevant in<br>8    determining whether or not the claim was<br>9    covered.<br>10  Q.  When you were analyzing the claim and making<br>11    a claim determination, was it important to<br>12    your analysis that you understand the meaning<br>13    of the term, "War," as it's used in the war<br>14    exclusion?<br>15  A.  Well, I mean, I think that -- yes, certainly<br>16    it is. Yes. | |

| Deposition Designation | Objection & Response |
|---|---|
| 17  Q.  Okay. Did you consider what the definition<br>18      of terrorism was when you were performing<br>19      your analysis?<br>20  A.  Whose definition of terrorism?<br>21  Q.  Any definition within the insurance industry<br>22      context.<br>23  A.  Well, I mean, I think that there are over a<br>24      hundred definitions of terrorism, depending<br>25      on who you ask. It usually means that you're<br><br>Page 173<br>1      targeting a civil population for the purpose<br>2      of coercing that population to influence or<br>3      coerce its government into changing its<br>4      position.<br>5          That's sort of a common<br>6      understanding of some of the facts -- some of<br>7      the factors that need to be included in a<br>8      definition of terrorism.<br>9          However, I don't think that that<br>10     definition necessarily applies today, and the<br>11     reason that I don't think it applies today<br>12     is, for example, in the 9/11 circumstance,<br>13     Al Qaeda was not trying to coerce the<br>14     American people into having its government<br>15     take any position whatsoever, they were just<br>16     trying to frighten people and trying to bring<br>17     down the government.<br>18         So I would not say that -- and that<br>19     was certainly considered an act of terrorism<br>20     that does not fall within the<br>21     usually-accepted definition.<br>22  Q.  As part of the usually-accepted definition,<br>23      wouldn't you also include that there has to<br>24      be the utilization of violent means in order<br>25      to try to coerce the government to change its<br><br>Page 174<br>1      position? | |

**329**

| Deposition Designation | Objection & Response |
|---|---|
| 6 THE WITNESS: Yes, violence is<br>7 usually considered to be a component of<br>8 terrorism.<br><br>10 Q. So in the context of the analysis that you<br>11 were performing in July of 2014 with respect<br>12 to the Dig claim, did you look at whether the<br>13 acts that were taking place in Israel at the<br>14 time, whether or not those could be<br>15 considered acts of terrorism?<br><br>19 THE WITNESS: That was certainly<br>20 the position that Susan Weiss took. I didn't<br>21 see what was happening in Israel to be --<br>22 whether it was defined as an act of<br>23 terrorism, it was still an act of war or<br>24 warlike actions or an insurrection,<br>25 rebellion, et cetera. It still fell within<br><br>Page 175<br>1 that definition based on the actions that<br>2 were taking place no matter what you called<br>3 it.<br><br>Page 181<br>6 Q. You indicated in your research. Did you<br>7 perform research as to what constituted an<br>8 act of terrorism in connection with your<br>9 analysis of the Dig claim?<br>10 A. I believe I did.<br>11 Q. What did you do?<br>12 A. The same things that I've already described<br>13 to you.<br>14 Q. Did you -- did you review cases that<br>15 specifically addressed the definition of<br>16 terrorism?<br>17 A. I'm sure I might have done that as a -- as a<br>18 Westlaw search. I don't recall as I sit here | |

**330**

| Deposition Designation | Objection & Response |
|---|---|
| 19    today.<br>20  Q.  Did you review cases that talked about the<br>21    intersection between terrorism and war?<br><br>24       THE WITNESS: Well, I think that<br>25    they talked about that in the Pan Am case. | |
| Page 182<br>2  Q.  Other than the Pan Am case?<br>3  A.  And I think they talked about that in the --<br>4    in the Twin Towers, the 9/11 cases as well.<br>5  Q.  When you say, "The 9/11 cases," what cases<br>6    are you referring to?<br>7  A.  I'm sorry, I don't remember their names. If<br>8    you'd like to show me a case and ask if I<br>9    looked at it, I'd be happy to tell you yes or<br>10    no.<br>11  Q.  Did you review any cases that you can<br>12    remember the specific name of in the context<br>13    of doing your research as to the Dig claim<br>14    that discussed the intersection between<br>15    terrorism and acts of war other than the<br>16    specific cases you've just referenced?<br><br>19       THE WITNESS: I may have. I don't<br>20    remember exactly what the Wilkinson case said<br>21    about that, and there may have been other<br>22    cases that I looked at. I mean, this was<br>23    quite a while ago, I don't remember every<br>24    single case I read. | Defendant's Objections:<br>(182:11-16) Assumes facts not in evidence; hearsay; foundation FRE 401, 403, 801, 802<br><br>Plaintiffs' Response:<br>Offered for non-hearsay purpose; statement of party opponent; relevant to bad faith; unclear what fact not in evidence Defendant is objecting to; general events of 9/11 subject to judicial notice; no facts assumed—proper cross-examination. |
| Page 183<br>1  Q.  As part of your analysis, did you come to any<br>2    conclusions as to whether the acts of -- that<br>3    were in controversy in the summer of 2014,<br>4    did you come to any conclusions as to whether<br>5    they were acts of terrorism? | Defendant's Objection:<br>(183:18-22) Cumulative; argumentative<br><br>Plaintiffs' Response:<br>Relevant to bad faith; not argumentative. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 8       THE WITNESS: I don't know that I<br>9     reached a specific conclusion. I mean, the<br>10    reason that I was taking a look at that was<br>11    because Susan Weiss and Andrea Garber both<br>12    continued to say that this could not -- the<br>13    war exclusion could not apply because this<br>14    was an act of terrorism. What I determined<br>15    is whether it was an act of terrorism or not,<br>16    the war exclusion still applied.<br><br>18  Q.  Do you recall, as you sit here today, if you<br>19      ever came to a conclusion as to whether the<br>20      acts in the summer of 2014 constituted acts<br>21      of terrorism?<br>22  A.  I just answered that question.<br><br>Page 184<br>1  Q.  I'm asking do you recall one way or the<br>2      other?<br>3  A.  I just answered that question.<br>4  Q.  Can you please answer the question.<br><br>7       THE WITNESS: Could you please<br>8     read back the -- my answer to the question.<br>9      (Whereupon, the requested portion<br>10     was read by the court reporter.)<br>11 BY MS. COYOCA:<br>12  Q.  I'm asking you if you specifically recall<br>13     coming to a conclusion one way or the other<br>14     as to whether the acts constituted acts of<br>15     terrorism?<br><br>18       THE WITNESS: What I recall is<br>19     that however you labeled them, the war<br>20     exclusion still applied.<br><br>22  Q.  Okay. Again, Ms. Johnson, I think I'm<br>23     entitled to an answer to my question.<br>24      Do you recall -- if the answer is | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><u>Defendant's Objections:</u><br>(184:1-4, 7-9, 22-25)<br>Cumulative; argumentative<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; not<br>argumentative. |

| Deposition Designation | Objection & Response |
|---|---|
| 25      you don't recall that's -- that's fine, | |
| Page 185 | Defendant's Objections: |
| 1      that's your answer. But I'd like to know, do | (18:1-4. 24-25) Cumulative; |
| 2      you recall if you reached a conclusion as to | argumentative |
| 3      whether these acts in the summer of 2014 | |
| 4      constituted acts of terrorism? | Plaintiffs' Response: |
| | Relevant to bad faith; not |
| 8        THE WITNESS: Ms. Coyoca, I've | argumentative. |
| 9      already given you the best answer I can to | |
| 10      your question. | |
| | |
| 12   Q.   Do you recall is a yes or no question. | |
| | |
| 20   Q.   Do you recall coming to a conclusion one way | |
| 21      or the other? | |
| | |
| 24        THE WITNESS: All I can do is tell | |
| 25      you that when I was doing my analysis, I | |
| | |
| Page 186 | Defendant's Objections: |
| 1      looked at the definitions of terrorism | (186:1-6) Cumulative; |
| 2      because Susan and Andrea were convinced that | argumentative |
| 3      if it was an act of terrorism, it could not | |
| 4      also be an act of war. And what I determined | Plaintiffs' Response: |
| 5      is regardless of whether it was an act of | Relevant to bad faith; not |
| 6      terrorism, the war exclusion still applied. | argumentative. |
| | |
| 8   Q.   In the context of coming to your conclusions | |
| 9      in the summer of 2014 that the claim was | |
| 10      excluded by the war exclusions, did you think | |
| 11      it was important to understand the status of | |
| 12      Hamas as it was viewed by the U.S. | |
| 13      Government? | |
| | |
| 18        THE WITNESS: As part of my | |
| 19      analysis, I did not specifically go out to | |
| 20      find whether or not the U.S. had defined | |
| 21      Hamas as a terrorist organization. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 22　　　　What I looked at was the activity<br>23　　between Hamas and Israel, and then I made a<br>24　　determination based on the activity between<br>25　　these two entities that this was war, a<br><br>Page 187<br>1　　warlike action or an insurrection or<br>2　　rebellion.<br><br>4　Q.　In the context of your analysis that you<br>5　　performed in the summer of 2014, did you look<br>6　　at whether Hamas was a sovereign entity?<br><br>9　　　　THE WITNESS: Yes, I did.<br><br>11　Q.　Did you come to a conclusion?<br>12　A.　My conclusion was is that they were a<br>13　　quasi-sovereign nation, and perhaps a<br>14　　sovereign nation depending on how you define<br>15　　that term.<br>16　Q.　In the summer of 2014 when you were<br>17　　performing your analysis, did you believe<br>18　　that Hamas needed to be either a sovereign or<br>19　　quasi-sovereign entity in order for the<br>20　　hostilities between Israel and Hamas to<br>21　　constitute war?<br>22　A.　Not necessarily.<br><br>Page 189<br>10　　little different. What I'm asking you is:<br>11　　In order for the acts in the summer of 2014<br>12　　to constitute war, what authority did you<br>13　　review in order to decide that Hamas's status<br>14　　as a sovereign or quasi-sovereign was not<br>15　　essential for a war to exist?<br><br>18　　　　THE WITNESS: And I think the --<br>19　　the court in the Holiday Inn case opined with | Defendant's Counter:<br>187:23-24; 188:1-7<br><br>Plaintiffs' Response:<br>Not necessary for completeness. Counter is separate question and answer. |

| Deposition Designation | Objection & Response |
|---|---|
| 20　　　　regard to that.<br><br>22　Q.　Okay. So what is -- what is your<br>23　　　　understanding of the holding of<br>24　　　　Holiday Inns?<br>25　A.　You'd have to show me the case and allow me<br><br>Page 190<br>1　　　　to review it. I'm not going to tell you what<br>2　　　　I think the holding is off the top of my<br>3　　　　head.<br>4　Q.　Well, do you believe that Holiday Inn stands<br>5　　　　for the proposition that one of the parties<br>6　　　　that's engaged in the fighting need not be a<br>7　　　　sovereign or quasi-sovereign in order for a<br>8　　　　state of war to exist?<br><br>11　　　　　THE WITNESS: As I said, if you<br>12　　　　want me to opine regarding the holdings in<br>13　　　　Holiday Inn, I'd appreciate the opportunity<br>14　　　　and the courtesy of the reviewing the case<br>15　　　　before I answer questions about it.<br><br>Page 191<br>10　Q.　When you were doing your work and your<br>11　　　　analysis in the summer of 2014, did you think<br>12　　　　that the status of the parties that were<br>13　　　　engaged in the fighting was relevant to the<br>14　　　　analysis of whether a war existed?<br><br>17　　　　　THE WITNESS: Are you -- you're<br>18　　　　talking about the legal status, what -- can<br>19　　　　you give -- can you make your question a<br>20　　　　little more precise?<br><br>22　Q.　The status as it's been designated by the<br>23　　　　U.S. Government.<br><br>Page 192 | Defendant's Counter:<br>190:17-20, 24,25; 191:1-8<br><br>Plaintiffs' Response:<br>Not necessary for completeness. Counter is separate question and answer. |

| Deposition Designation | Objection & Response |
|---|---|
| 1       THE WITNESS: I think you asked me<br>2      before, and I'll answer again, the fact that<br>3      the U.S. Government thought that Hamas was a<br>4      terrorist organization did not affect my<br>5      determination as to whether or not the war<br>6      exclusion applied.<br><br>8  Q.  Right, I understand that. You've testified<br>9      to that several times. What I'm asking you<br>10     though, was it relevant to your analysis?<br><br>14      THE WITNESS: I already testified<br>15     that I did not think it was relevant.<br><br>Page 195<br>5  Q.  Who first raised the war exclusion as between<br>6     yourself and Mr. Gutterman?<br>7  A.  I don't remember.<br>8  Q.  Between the -- what you indicated was a<br>9     Monday when you believe you may have had the<br>10    first conversation with Ms. Weiss and<br>11    Ms. Garber, and the Thursday, did you have<br>12    any conversations with Mr. Williams with<br>13    respect to potential applicability of the war<br>14    exclusion?<br><br>17      THE WITNESS: Yes.<br>18  BY MS. COYOCA:<br>19  Q.  When did you speak with him?<br>20  A.  I don't remember specifically.<br>21  Q.  Did you have more than one conversation?<br>22  A.  Again, I don't remember specifically. I<br>23    think it's probable that we had more than one<br>24    conversation.<br>25  Q.  What did you discuss?<br><br>Page 196 | <br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Counter:<br>196:9-25; 197:1-25; 198:1-5<br><br>Plaintiffs' Response:<br>Not necessary for completeness. Counter is separate question and answer sequence.  Answers in counter are speculative and lacks foundation. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 1  A.  Whether or not the war exclusion applied.<br>2  Q.  What did you tell Mr. Williams?<br>3  A.  I don't remember specifically what I told<br>4      him. I'm sure that what I was relaying is<br>5      the information we had found in our research.<br>6  Q.  Did you tell Mr. Williams that you believed<br>7      that the war exclusion applied?<br>8  A.  Yes.<br><br>Page 198<br>2  Q.  What did Mr. Williams tell you in response?<br>3  A.  He didn't disagree with the analysis that we<br>4      had made. He agreed that the war exclusion<br>5      applied.<br>6  Q.  Did he tell you what part of the war<br>7      exclusion he believed applied?<br>8  A.  I don't remember.<br><br>14  Q.  Did you have -- during that four-day period<br>15      between the Monday and the Thursday, did you<br>16      have any conversations with Ms. Gooley about<br>17      the potential application of the war<br>18      exclusion?<br>19  A.  I probably did. I mean, I would not have<br>20      been raising it with the policyholder without<br>21      talking to her about it. I -- I -- I don't<br>22      think that I would have done that without<br>23      discussing it with her, because I would want<br>24      to know whether on an enterprise basis there<br>25      has been interpretations of that particular<br><br>Page 199<br>1      exclusion in other departments.<br>2  Q.  What did Ms. Gooley tell you?<br>3  A.  With regard to what?<br>4  Q.  With respect to whether or not, on an<br>5      enterprise basis, there had been other | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 6     interpretations of the exclusion.<br>7  A.  She didn't know. She was going to look into<br>8     it.<br>9  Q.  Did she ever get back to you?<br>10  A.  Yes.<br>11  Q.  What did she tell you?<br>12  A.  She said that there had not been any other<br>13     interpretations from the information she<br>14     could gather. You have to remember what<br>15     OneBeacon existed long before Theresa or I<br>16     ever came to that organization. It's a very<br>17     old company.<br><br>Page 200<br>22  Q.  Did you tell anyone at OneBeacon that you<br>23     believed you needed to consult with an expert<br>24     on the Middle East, and specifically Hamas<br>25     and Israel, before making a claim<br>Page 201<br>1     determination?<br>2  A.  I did not.<br>3  Q.  Did you consider consulting with an<br>4     individual who would have expertise in this<br>5     area rather than coming to your own<br>6     conclusions?<br>7  A.  No.<br>8  Q.  Did you consider speaking with a military<br>9     expert in order to consult with him or her<br>10     about whether the acts that were occurring in<br>11     Israel constituted war?<br><br>14       THE WITNESS: I did not.<br><br>16  Q.  Did you consult with internal legal -- the<br>17     legal department as to whether your analysis<br>18     was correct?<br>19  A.  I don't remember if I consulted with claim<br>20     legal or not. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br>(201:16-20) Reference to legal consultation; privilege, not relevant, prejudicial; 401, 403, 501, 502, 801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith; offered for non hearsay purpose; consideration of legal consultation not privileged. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 202<br>6   Q.   Prior to the Dig claim, had you ever gone to<br>7         internal legal to consult with them with<br>8         respect to any coverage determination?<br>9   A.   Yes.<br>10  Q.   How many occasions?<br>11  A.   I don't know. At least a dozen.<br><br><br><br>Page 203<br>9            MS. COYOCA: I'd like to mark<br>10        as -- I believe we're now on Exhibit 3, an<br>11        e-mail chain that is Bates-labeled ATL<br>          000304<br>12        through 309.<br>13            (Whereupon, Exhibit 3 was<br>14            marked for identification.)<br><br>23  Q.   Ms. Johnson, have you seen this document<br>24        before?<br>25  A.   I have.<br><br>Page 204<br>1   Q.   What do you understand it to be?<br>2   A.   It looks like it's an e-mail chain of e-mails<br>3         exchanged between me, Danny Gutterman<br>          and<br>4         Peter Williams.<br>5   Q.   I want to direct your attention to the e-mail<br>6         that's on page 306. It's the e-mail from<br>7         Lucy Lopez to Daniel Gutterman and<br>8         Pamela Johnson?<br>9   A.   Yes, I see it.<br>10  Q.   It says, "New claim. Danny, this should be<br>11        coming your way. See policy attached."<br>12  A.   Yes.<br>13  Q.   The e-mail is sent as of Tuesday, July 15, | Defendant's Objections:<br>(202:6-11) Reference to<br>legal consultation; privilege,<br>not relevant, prejudicial;<br>401, 403, 501, 502, 801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith;<br>offered for non hearsay<br>purpose; fact of legal<br>consultation not privileged. |

| Deposition Designation | Objection & Response |
|---|---|
| 14     2014. Did you speak with Ms. Weiss and<br>15     Ms. Garber before the claim had been sent to<br>16     OneBeacon from Ms. Weiss?<br>17  A.  I don't know the answer to that. I was<br>18     unaware of the claim at the time that I had<br>19     that discussion with them.<br>20  Q.  Well, did you have the conversation with them<br>21     prior to you receiving this e-mail from<br>22     Ms. Lopez?<br>23  A.  I had not seen this e-mail at the time I had<br>24     the conversation with them.<br><br>Page 205<br>12  Q.  The next e-mail in the chain is from<br>13     Danny Gutterman indicating, "Hi, Peter. Per<br>14     the below, you spoke with Andrea Garber and<br>15     Susan Weiss about this. Any chance you<br>16     happen to suggest that they push for more<br>17     than just the week since the crew needs to be<br>18     advised at least one week in advance for a<br>19     push and since a ground war still might occur<br>20     per this report from CBS News two days ago."<br>21     Do you see that?<br>22  A.  I do.<br>23  Q.  Did you -- have you seen this e-mail before?<br>24  A.  Yes, I have seen it before.<br><br>Page 206<br>1     sent?<br>2  A.  I don't -- I'm not -- it doesn't look like --<br>3     well, let me see. (Reviews document.) I<br>4     can't tell if he sent this to me, if he<br>5     copied me on it. I see that the response<br>6     that Peter sent was copied to me, so it had<br>7     the e-mail chain, so I assume that I must<br>8     have looked at it at some point, yup.<br>9  Q.  Did you have a conversation with<br>10     Mr. Gutterman before the July 15, 2014, | |

| Deposition Designation | Objection & Response |
|---|---|
| 11      e-mail was sent about the potential<br>12      applicability of the war exclusion?<br>13  A.   Not that I recall.<br>14  Q.   Do you know why Mr. Gutterman was suggesting<br>15      that the production company push for more<br>16      than just a week because a ground war still<br>17      might occur?<br><br>21        THE WITNESS: I have no idea why<br>22      he was asking that.<br><br>24  Q.   Did you talk to Mr. Gutterman about the<br>25      e-mail after you saw it?<br><br>Page 207<br>18  Q.   Why would the fact that, within quotes, "A<br>19      ground war still might occur," close quotes,<br>20      be relevant to the analysis that he was<br>21      performing as of July 15?<br><br>Page 208<br>1         THE WITNESS: Well, he was<br>2      investigating the claim, and obviously one of<br>3      the things they needed -- that he needed to<br>4      think about is whether or not there was going<br>5      to be a deescalation.<br><br>7  Q.   Was Mr. Gutterman looking for ways to support<br>8      an argument that the war exclusion might<br>9      apply?<br>10  A.   Absolutely not.<br><br>14  Q.   Did you have a conversation with<br>15      Mr. Gutterman at or about the 15th telling<br>16      him to look for ways that the war exclusion<br>17      might apply?<br>18  A.   Absolutely not. | |

**341**

| Deposition Designation | Objection & Response |
|---|---|
| 19  Q.   When is the first time you recall discussing<br>20        the war exclusion with Mr. Gutterman?<br>21  A.   As I told you, I can't be specific about --<br>22        it probably happened the day after we had the<br>23        conversation with Susan and Andrea.<br>24  Q.   In the e-mail that was sent by you at<br>25        8:48 p.m., you indicate, begin quote, "I<br><br>Page 209<br>1        suggest we have a call about this tomorrow.<br>2        Danny and I had a conversation with Susan and<br>3        Andrea today about what the production's<br>4        plans were, but we didn't make any<br>5        representations about whether there was<br>6        coverage, but we also did not alert them that<br>7        this might be a covered claim." Do you see<br>8        that?<br>9   A.   Yes, I do.<br>10  Q.   Does this refresh your recollection that your<br>11        conversation with Ms. Weiss and Ms. Garber<br>12        occurred on July 15?<br>13  A.   That appears to be the case, yes.<br>14  Q.   At the time you sent this e-mail, what did<br>15        you believe potentially might make this be a<br>16        noncovered claim?<br><br>19        THE WITNESS: This -- what I said<br>20        in my e-mail does not indicate that I thought<br>21        that it might not be covered.<br>22  BY MS. COYOCA:<br>23  Q.   I'm asking you.<br>24  A.   No, what I was doing is merely relaying to<br>25        Peter what took place during the<br><br>Page 210<br>1        conversation. And as I -- as I've explained,<br>2        you know, when -- one of the things that is<br>3        most important in production claims is if you | Defendant's Counter:<br>210:13-25<br><br>Plaintiffs' Response:<br>Not necessary for completeness. Counter is separate question and answer. |

| Deposition Designation | Objection & Response |
|---|---|
| 4      think there's going to be any issue with<br>5      regard to coverage, you need to alert the<br>6      insured right away. At this point we were in<br>7      the middle of doing an investigation. It<br>8      could be that it turns out not to be covered.<br>9      I was still trying to figure out what the<br>10     status was before they even got there, so<br>11     that is the reason why this -- this e-mail<br>12     reads the way it does.<br><br><br>Page 211<br>1   Q.   What did you mean when you said that you did<br>2      not alert them that this might not be a<br>3      covered claim?<br><br>6      THE WITNESS: Well, as I<br>7      previously explained, if there is going to be<br>8      a coverage issue, you want to alert the<br>9      production as soon as you can. And so one of<br>10     the things that's always important to Peter<br>11     is to make sure we haven't made any<br>12     representations about whether there is<br>13     coverage until after we have done an<br>14     investigation.<br><br>16  Q.   What reasons, if any, did you have in mind as<br>17     to why this might not be a covered claim at<br>18     the time you wrote this e-mail --<br><br>21  Q.   -- if any?<br><br>24      THE WITNESS: I don't know that I<br>25     did have any -- have -- have any information.<br><br>Page 212<br>1      I might have. I can't tell just by reading<br>2      this e-mail where I was in my research and | |

| Deposition Designation | Objection & Response |
|---|---|
| 3      what my thought process was. I can't tell<br>4      you just by looking at that, I can't tell.<br><br>6  Q.  As of Tuesday evening, July 15, had you<br>7      looked at the war exclusion?<br>8  A.  When I wrote this e-mail?<br>9  Q.  Uh-huh.<br>10  A.  I don't know.<br>11  Q.  In Mr. William's response to you, with a cc<br>12      to Mr. Gutterman, he indicates, begin quotes,<br>13      "Why it is not a covered claim? They have<br>14      imminent peril, unless you are going to<br>15      invoke the war exclusion," close quotes.<br>16      What did you understand him to be saying in<br>17      this e-mail to you?<br>18  A.  I -- what I understood him to be saying is<br>19      that -- that he was misinterpreting what I<br>20      had said in -- in my previous e-mail. I<br>21      wasn't saying that it was not -- that it was<br>22      necessarily not a covered claim. I was just<br>23      relating to him what we had talked about in<br>24      the conversation with Susan and Andrea.<br>25  Q.  Did you write back to him and say, "You're<br><br>Page 213<br>1      misinterpreting, I'm not indicating that I<br>2      think the war exclusions apply, I haven't<br>3      come to any conclusions yet" --<br>4  A.  I don't think I did. I don't even know if we<br>5      corresponded any more that night. Let me<br>6      take a look.<br>7  Q.  Ms. Johnson, you really need to let me finish<br>8      asking the question.<br>9  A.  I'm so sorry. Please go ahead, Ms. Coyoca.<br>10  Q.  Did you write back to him and indicate that<br>11      he had misinterpreted what you were saying in<br>12      your e-mail?<br>13  A.  No. At that point we were setting up a call.<br>14  Q.  You responded back and set up the call for<br>15      2 p.m. eastern time; is that correct? | |

7060055/015825

**344**

| Deposition Designation | Objection & Response |
|---|---|
| 16  A.   That's what the e-mail says. | |
| 17  Q.   In that response e-mail you did not indicate | |
| 18        to him that he had misinterpreted your | |
| 19        e-mail; isn't that correct? | |
| 20  A.   No, I did not. | |
| 21  Q.   The next e-mail in the chain is from | |
| 22        Daniel Gutterman to you and to Mr. Williams, | |
| 23        and it indicates, begin quotes, "I've | |
| 24        attached the policy so we all have it. | |
| 25        Please review the general conditions," within | |
| | |
| Page 214 | |
| 1         parenthesis, "As Pamela pointed out," close | |
| 2         parenthesis, "As well as extra expense and | |
| 3         what it covers and includes," close quotes. | |
| 4         Do you see that? | |
| 5   A.   I do. | |
| 6   Q.   What had you pointed out to Mr. Gutterman | |
| 7         with respect to the general conditions as of | |
| 8         the time of this e-mail? | |
| 9   A.   Well, I might have pointed out the war | |
| 10        exclusion to him. That's perfectly possible. | |
| 11        Another interpretation of this that could | |
| 12        also be true is that I was just asking him to | |
| 13        review the general conditions, because you | |
| 14        can't just look at -- you can't solely look | |
| 15        at only the extra expense portion of the | |
| 16        policy and make your determination based on | |
| 17        that, you have to look at other things in the | |
| 18        policy. So as I sit here today, I don't know | |
| 19        if I was pointing out to him the war | |
| 20        exclusion or if I was just saying also take a | |
| 21        look at what can be in the general | |
| 22        conditions. | |
| 23  Q.   Is there any other specific section other | |
| 24        than the war exclusions and the general | |
| 25        conditions that you believe you might have | |
| | |
| Page 215 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1  been pointing out to Mr. Gutterman?<br>2  A.  Well, if you'd like me to review the policy,<br>3      I can take a look and see if there's<br>4      something else I think I would have been<br>5      pointing out to him.<br>6  Q.  Just from your recollection as you sit here<br>7      today, can you recall any other?<br>8  A.  Since I can't recall exactly what I was<br>9      referring to here, quite possibly it was a<br>10     war exclusion. It might have been something<br>11     else. If you want me to look at the policy<br>12     and review the general conditions, I can tell<br>13     you if there was something else.<br>14         But part of also what we were trying<br>15     to reinforce with all of the claim handlers<br>16     is you can't just look at one specific<br>17     portion of the policy, you have to look at<br>18     the policy in its entirety.<br>19 Q.  The next e-mail in the chain is from you to<br>20     Mr. Gutterman, and it appears to be<br>21     forwarding a link to a U.S. Government site<br>22     with respect to foreign travel advice. Do<br>23     you see that?<br>24 A.  No, that's the UK Government site.<br>25 Q.  Oh, I'm sorry, UK Government site.<br><br>Page 216<br>4       MS. COYOCA: I'd like to mark as<br>5       Exhibit 4 a document that is labeled,<br>6       "Internet Archive: Wayback Machine, Israel<br>7       Travel Advice-gov.uk."<br><br>Page 217<br>11 Q.  Ms. Johnson, when you attached the link to<br>12     the UK Government site, what information<br>       was<br>13     contained in the link?<br>14 A.  It was the travel restriction produced by the<br>15     UK Government. In other words, it advises | |

| Deposition Designation | Objection & Response |
|---|---|
| 16     travel with regard to different places in the<br>17     world and what the risks are that are<br>18     attendant to that.<br>19  Q.  Do you believe that what I marked as<br>20     Exhibit 4 is an accurate reflection of the UK<br>21     Israel travel advice that existed as of<br>22     July 2014?<br><br>24         THE WITNESS: It appears to be. I<br>25     have no reason to think it isn't.<br><br>Page 218<br>2  Q.  Did you subsequently have a telephone<br>3     conversation with Mr. Williams and<br>4     Mr. Gutterman on the 16th?<br>5  A.  I believe we did.<br>6  Q.  Was there anyone on the call aside from<br>7     yourself and Mr. Gutterman and Mr.<br>       Williams?<br>8  A.  Not that I recall.<br><br>22  Q.  What did you tell Mr. Williams during the<br>23     course of that conversation?<br><br>Page 219<br>1         THE WITNESS: I'm sorry, I can't<br>2     recall specifically what I told him.<br><br>12  Q.  Did you tell Mr. Williams that you believed<br>13     the war exclusion applied?<br>14  A.  I don't know if I said that specifically to<br>15     him then. I probably indicated that I<br>16     thought that it was probable.<br><br>24  Q.  Did Mr. Gutterman contribute in any way to<br>25     the conversation?<br><br>Page 220<br>1  A.  I'm sure he did. I can't tell you | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Counter:<br>(219:12-16) 219:4-11, 12-21<br><br>Plaintiffs' Response:<br>Not necessary for<br>completeness. Counter is<br>separate question and<br>answer.<br><br><br><br>Defendant's Counter:<br>(219:24-220:21) 220:22-25; |

| Deposition Designation | Objection & Response |
|---|---|
| 2       specifically what he said as I sit here<br>3       today.<br>4   Q.  Did Mr. Gutterman agree with your conclusion<br>5       that the war exclusion most likely applied?<br>6   A.  I believe so, yes.<br>7   Q.  Did Mr. Williams respond to you during that<br>8       phone conversation in any way?<br>9   A.  I'm sure he did.<br>10  Q.  Do you recall anything about what he said to<br>11      you in response?<br>12  A.  I don't recall specifically what he said in<br>13      that conversation, no.<br>14  Q.  Do you recall his position generally with<br>15      respect to the application of the war<br>16      exclusion during this time period?<br>17  A.  He thought that the war exclusion applied.<br>18  Q.  Did Mr. Williams ask you what you had done in<br>19      order to come to this conclusion?<br>20  A.  I don't know if he asked me, but I certainly<br>21      told him. | 221:1-24<br><br><u>Plaintiffs' Response:</u><br>Not necessary for completeness. Counter is separate question and answer. |
| <u>Page 221</u><br>25  Q.  I'd like to show you a document that | <u>Defendant's Counter:</u><br>(221:25-223:39) 225:19-23<br><br><u>Plaintiffs' Response:</u><br>Not necessary for completeness. Counter is a separate question and answer. |
| <u>Page 222</u><br>1       previously was marked as Exhibit 12 during a<br>2       prior deposition. For the record, this is an<br>3       e-mail chain that is -- bears Bates labels<br>4       ATL 11001 through 1105.<br>5          Ms. Johnson, I just want to ask you<br>6       a question about the top e-mail. Do you | <u>Defendant's Counter:</u><br>(221:25-223:39) 225:19-23<br><br><u>Plaintiffs' Response:</u><br>Not necessary for completeness. Counter is a separate question and |

| Deposition Designation | Objection & Response |
|---|---|
| 7     recognize this e-mail?<br>8  A.  I do.<br>9  Q.  What is it?<br>10  A.  It's an e-mail to Peter Williams and<br>11     Danny Gutterman.<br>12  Q.  Did you send it?<br>13  A.  It appears I did.<br>14  Q.  And what is the content of the e-mail?<br>15  A.  It says, "Here is an exclusion listed under<br>16     the general conditions of the policy.<br>17     Exclusions applicable to all sections of this<br>18     policy. This policy does not insure against<br>19     loss or damage caused directly or indirectly<br>20     by war, including undeclared or civil war or<br>21     warlike action by a military force, including<br>22     action in hindering or defending against an<br>23     actual or expected attack by any government,<br>24     sovereign or any other authority using<br>25     military personnel or other agents, or | answer. |
| **Page 223**<br>1     insurrection, rebellion, revolution, usurped<br>2     power or action taken by a governmental<br>3     authority in hindering or defending against<br>4     any of these. Such loss or damage is<br>5     excluded regardless of any other cause or<br>6     event that contributes concurrently or in any<br>7     sequence to the loss, any weapon of war<br>8     including atomic fission or radioactive<br>9     force, whether in a time of peace or war." | **Defendant's Counter:**<br>(221:25-223:39) 225:19-23<br><br>**Plaintiffs' Response:**<br>Not necessary for completeness. Counter is a separate question and answer. |
| **Page 224**<br>5  Q.  Okay. Did you send the e-mail before the<br>6     conference call that took place that<br>7     afternoon with Mr. Williams and<br>8     Mr. Gutterman?<br>9  A.  I think I probably did, yes.<br>10  Q.  Does that refresh your recollection that you<br>11     believe that -- that you believe that you had | |

| Deposition Designation | Objection & Response |
|---|---|
| 12    identified the war exclusion to Mr. Gutterman<br>13    prior to the conference call taking place?<br>14  A.  Well, I certainly had talked to him about the<br>15    general conditions of the policy, so my guess<br>16    is that, yes, I talked to him about the war<br>17    exclusion.<br><br>Page 227<br>4        MS. COYOCA: Okay. I'd like to<br>5    mark as the next exhibit, I believe we're on<br>6    5, an e-mail chain that bears Bates labels<br>7    ATL 001329 through 1335.<br><br>11  Q.  Ms. Johnson, do you recognize this e-mail<br>12    chain?<br>13  A.  I do.<br>14  Q.  What is it?<br>15  A.  It looks like it's an e-mail string between<br>16    Danny Gutterman, Peter Williams and myself.<br>17  Q.  I want to direct your attention to the top of<br>18    the e-mail, the one from Danny Gutterman to<br>19    Danny Gutterman. It indicates, "Look up war<br>20    exclusion, look up war definitions." Do you<br>21    see that?<br>22  A.  I do.<br>23  Q.  Did you tell Mr. Gutterman to look up the war<br>24    exclusion?<br>25  A.  I can't recall.<br><br>Page 228<br>1  Q.  Do you recall telling him to look up the war<br>2    definition?<br>3  A.  I don't recall asking him to do that, no.<br>4  Q.  Do you know why Mr. Gutterman decided to look<br>5    up the war exclusion?<br><br>7        THE WITNESS: Well, based on the<br>8    previous e-mail where I asked him to look at | |

| Deposition Designation | Objection & Response |
|---|---|

9      the general conditions, if in fact I directed
10      his attention to the war exclusion, which it
11      is likely that I did, then he probably
12      decided to take a look at it.

14   Q.   Does this refresh your recollection, seeing
15        the two documents together, that you did ask
16        Mr. Gutterman to look at the war exclusion?
17   A.   It doesn't. I mean, I don't remember
18        precisely what happened. This is certainly
19        indicia that that's what I did.
20   Q.   What about, "Look up war definition," do
21        you have any understanding as to what
22        Mr. Gutterman was going to do in order to
23        look up war definition?
24   A.   No.

Page 230
4    Q.   Did you tell Mr. Gutterman that he should
5         look up the definition of war in the
6         dictionary?
7    A.   To the best of my recollection, I did not
8         tell him that.

21        MS. COYOCA: Okay. I'd like to
22   mark as Exhibit 6 a document that bears a
23   January 31, 2017, date from Internet Archive:
24   Wayback Machine, titled, "Israel, the West
25   Bank and Gaza travel warning."

Page 231
15   Q.   Do you know what the Wayback Machine is
16        Ms. Johnson?
17   A.   Oh, yes, I use it.
18   Q.   What is it?
19   A.   It is a way of searching for information that
20        was contained in a particular website at a
21        particular period of time. The Wayback
22        Machine, however, does not capture

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| everything<br>23      that was on the -- the website at all periods<br>24      of time, it only will check in periodically<br>25      on that website. And so, you know, if you go<br><br>Page 232<br>1      to, say, April 3rd, there might not be<br>2      anything there in the Wayback Machine, but if<br>3      it checked in on April 4th, you can see what<br>4      was on April 4th.<br>5   Q.   You have used the Wayback Machine from time<br>6      to time?<br>7   A.   I have.<br>8   Q.   Have you ever found occasion for it to be<br>9      unreliable?<br>10  A.   Not so far.<br><br>Page 236<br>4          MS. COYOCA: I'd like to mark as<br>5      Exhibit 7 an e-mail dated 7/16/2014 from<br>6      Pamela Johnson to Pamela Johnson labeled<br>7      Bates control ATL 001529 to 1530.<br>8          (Whereupon, Exhibit 7 was<br>9      marked for identification.)<br>10  BY MS. COYOCA:<br>11  Q.   Ms. Johnson, do you recognize this e-mail?<br>12  A.   It appears to be an e-mail that I sent to<br>13      myself.<br>14  Q.   Okay. Do you have -- do you recall sending<br>15      yourself this e-mail?<br>16  A.   No, not specifically I don't.<br><br>Page 237<br>1   Q.   One of the links lists to Wikipedia; do you<br>2      see that?<br>3   A.   I do.<br>4   Q.   What did you search for in the Google search<br>5      engine in order to reach that Wikipedia site? | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Counter:<br>237:8-25<br><br>Plaintiffs' Response:<br>Not necessary for<br>completeness. Counter is a |

| Deposition Designation | Objection & Response |
|---|---|
| 6  A.  Well, certainly something with regard to<br>7       Hamas.<br><br>Page 241<br>9  Q.  Did you speak with Ms. Gooley about the Dig<br>10     claim before you began doing any of your<br>11     research?<br>12  A.  No.<br>13  Q.  What is your best recollection as to when you<br>14     first began speaking with Ms. Gooley about<br>15     the claim?<br>16  A.  Well, if the call to Andrea and Susan -- or<br>17     the call with Andrea and Susan took place on<br>18     the 15th, then I would have been speaking to<br>19     her probably on the 16th. I'm basing that on<br>20     the fact that -- that it looks like it was in<br>21     the evening when we had that call, and so<br>22     if Theresa had already left for the day, it's<br>23     unlikely that I would have called her at home<br>24     to discuss that.<br>25  Q.  Okay. I want to show you an exhibit that's<br><br>Page 242<br>1     previously been marked as Exhibit 31, and it<br>2     bears Bates control labels ATL 001571<br>       through<br>3     1572. Do you recognize this document?<br>4  A.  It looks like it contains an e-mail exchange<br>5     between Theresa Gooley and myself with<br>       regard<br>6     to this claim.<br>7  Q.  On the first e-mail in the chain, it appears<br>8     to be an e-mail from yourself to Ms. Gooley<br>9     on July 16 at 1:44 p.m., and it says, "Are<br>10     you available for a short call?" Do you see<br>11     that?<br>12  A.  I do.<br>13  Q.  Do you believe this is the first time that<br>14     you reached out to Ms. Gooley to discuss the | separate question and answer. |

| Deposition Designation | Objection & Response |
|---|---|
| 15     claim? | |

15     claim?
16  A.  I'm sorry, I don't have a specific
17     recollection of when I first spoke to her.
18     From -- from this, it appears that that -- it
19     might very well be the first time that I
20     talked to her about it.
21  Q.  And what leads you to that conclusion?
22  A.  The fact that I'm describing the claim.
23  Q.  The sentence after, "Theresa," reads, begin
24     quotes, "OBE is dealing with an imminent
25     peril claim for NBC stemming from a

Page 243
1     production that has shut down due to the
2     rocket fire into Tel Aviv and Jerusalem,"
3     close quotes. Does that sentence indicate to
4     you that since you're describing the claim to
5     Ms. Gooley in this e-mail, that in all
6     likelihood that's the first time you reached
7     out to her?
8  A.  Yes.
9  Q.  And then the e-mail above Ms. Gooley asked
10    you to send her the policy. Do you see that?
11  A.  Yes.
12  Q.  And did you do that?
13  A.  If she instructed me to, I'm sure I did.

Page 244
6  Q.  During the conversation that was set up in
7     response to your e-mail to her asking for the
8     call, did you review the war exclusion
9     language with her during the call?

12     THE WITNESS: I'm sure that that
13  was part of our discussion since what I was
14  looking for is whether or not there had been
15  other -- other claim groups in our enterprise
16  that had interpreted that exclusion before.

**354**

| Deposition Designation | Objection & Response |
|---|---|
| 18  Q.   Do you recall going through each of the<br>19        subparts of the exclusion with Ms. Gooley?<br>20  A.   No, I'm sorry, I -- you know, I'm not trying<br>21        to be difficult, but this happened quite a<br>22        long time ago and I cannot remember the<br>23        specifics of each conversation that I had<br>24        with each person.<br>25        So much for the mind like a steel<br><br>Page 245<br>1        trap.<br><br>8         MS. COYOCA: -- Exhibit 9, a<br>9        document from Westlaw that's labeled Bates<br>10        control ATL 001635 through 1686.<br><br>14  Q.   Ms. Johnson, do you -- do you recognize<br>15        Exhibit 9?<br>16  A.   It's an e-mail sent from Westlaw to myself.<br>17  Q.   Did you search in Westlaw for the case that's<br>18        attached to this?<br><br>21         THE WITNESS: Well, it appears<br>22        that what I did is a search for insure in the<br>23        same paragraph -- insured, insure, insuring<br>24        in the same paragraph as war or warlike in<br>25        the same paragraph as exclusion, exclude or<br><br>Page 246<br>1        excluded, the same paragraph as Israel.<br><br>3  Q.   But you believe you conducted that search; is<br>4        that right?<br>5  A.   Yes.<br>6  Q.   Did you conduct -- well, first of all, did<br>7        you read and review this Holiday Inns case at<br>8        the time that you were considering the claim?<br>9  A.   Yes, I did.<br>10  Q.   Is there a reason why this particular case | |

| Deposition Designation | Objection & Response |
|---|---|
| 11      was kept and not any of the other cases that<br>12      you reviewed?<br>13   A.   No, I'm sure that there wasn't. And there<br>14      may have been other cases that I kept that I<br>15      didn't print out. And I also conducted --<br>16      sometimes when I was doing research I would<br>17      conduct the research on my home computer<br>18      because it got better Wi-Fi than my work<br>19      computer, so it's perfectly possible that I<br>20      actually looked at this case before and then<br>21      determined that I wanted to send it to myself<br>22      through the work e-mail.<br><br>Page 249<br>1      potential analysis of a claim or the analysis<br>2      of a potential claim, how would that be<br>3      recorded in the OneBeacon entertainment<br>4      files?<br><br>8          THE WITNESS: How would my<br>9      analysis be recorded in the claim file, is<br>10      that the question?<br>11          MS. COYOCA: Your research.<br>12          THE WITNESS: Oh, I don't know<br>13      that the research necessarily would go into<br>14      the claim file. Certainly, the fact that I<br>15      had -- had done research would go in there.<br>16      But, again, you know, the fact that we've<br>17      done research doesn't mean that it has to be<br>18      put in the claim file. It depends on the<br>19      situation.<br><br>Page 253<br>19   Q.   When you were doing your analysis, did you<br>20      consider Holiday Inns to be authoritative<br>21      with respect to the definition of war?<br><br>24          THE WITNESS: I think there was<br>25      authoritative within that particular case. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Counter:<br>250:8-25; 251:8-25; 252:1-3<br><br>Plaintiffs' Response:<br>Not necessary for<br>completeness. Counter is a<br>separate question and<br>answer. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 254<br><br>1     There were other cases that had other<br>2     interpretations, and I think that the<br>3     Holiday Inn court might have been -- might<br>4     have been citing the Pan Am case when they<br>5     did their analysis, but I'd have to read<br>6     through the court -- through the case to make<br>7     sure.<br><br>Page 255<br>14  Q.  On page 7, under number 1, "War," that first<br>15     sentence reads, beginning quotes, "Having<br>16     reviewed English and American cases,"<br>       comma,<br>17     "505 F.2d at 1012-1015," comma, "the<br>       Second<br>18     Circuit concluded in Pan Am that," begin<br>19     single quotes, "war is a course of hostility<br>20     engaged in by entities that have at least<br>21     significant attributes of sovereignty," close<br>22     single quotes, close quotes.<br>23         When you did your analysis, did you<br>24     agree with that definition of war that was<br>25     set forth in Holiday Inns as quoting from<br><br>Page 256<br>1     Pan Am?<br><br>7        THE WITNESS: I certainly<br>8     recognize that's what the course was<br>9     saying that the definition of war was. They<br>10     also then go down to say that there is a<br>11     different definition of war, and then yet a<br>12     third definition of war all in that same<br>13     page.<br><br>15  Q.  What definition of war did you apply when<br>16     analyzing the claim? | |

| Deposition Designation | Objection & Response |
|---|---|
| 17  A.   I looked at each one of them. | |
| 18  Q.   In your view, what is the controlling | |
| 19       definition? | |
| | |
| 25         THE WITNESS: Well, if you let me | |

Page 257

| | |
|---|---|
| 1       take a look at my letter, I can tell you. I | |
| 2       think I cited what I thought was | |
| 3       authoritative in there, so... | |
| 4         Without looking at the letter, I | |
| 5       can't tell you specifically what I thought. | |
| 6       But you also have to keep in mind that the | |
| 7       date on this is, let's see, 1983, so before | |
| 8       the war on terror, before a variety of other | |
| 9       terroristic actions, so I'm not sure that a | |
| 10      court today would necessarily say that even | |
| 11      for insurance purposes these definitions are | |
| 12      applicable. | |
| | |
| 14  Q.   Do you know if Holiday Inns has been | |
| 15       overturned? | |
| 16  A.   It hasn't, to the best of my knowledge. | |
| 17  Q.   Do you know if Pan Am has been overturned? | |
| 18  A.   Not to the best of my knowledge. | |
| 19  Q.   I believe you've indicated you had a second | |
| 20       conversation with Ms. Garber and Ms. Weiss on | |
| 21       Thursday of the same week in which you had | |
| 22       talked? | |
| 23  A.   That's correct. | |
| 24  Q.   And based on the calendar that I looked at, | |
| 25       I'm going to represent to you that that was | |

Page 258

| | |
|---|---|
| 1       July 17. | |
| 2  A.   Okay. | |
| 3  Q.   Does that sound wrong to you in any way? | |
| 4  A.   No. It's just a couple of days after our | |

**358**

| Deposition Designation | Objection & Response |
|---|---|
| 5     first conversation and before our next<br>6     conversation was supposed to occur.<br>7  Q.  Who was on the call?<br>8  A.  Danny, myself, Susan and Andrea. I don't<br>9     think that Peter was on the call. He may<br>10    have been, but I -- I'm not sure if he was on<br>11    the call or not.<br>12  Q.  What was discussed during the call?<br>13  A.  We discussed the fact that given the fact<br>14    that the situation had not deescalated as NBC<br>15    had hoped, they had decided to move their<br>16    production.<br>17       In that conversation we also<br>18    informed them that we were looking at the<br>19    applicability of the war exclusion to the<br>20    situation. They objected to the idea that<br>21    this could be considered a war, because Hamas<br>22    is a terrorist organization and, therefore,<br>23    you could not have a war with a terrorist<br>24    organization.<br>25    And they asked when we would have a<br><br>Page 259<br>1     final decision and we gave them -- I think<br>2    that we gave them a date as quickly as we<br>3    could. I don't remember if they asked for<br>4    the date or if -- if we just told them a<br>5    date. I know that they wanted a response as<br>6    quickly as humanly possible.<br><br>21  Q.  Did you tell them that in all likelihood the<br>22    exclusion would be applied?<br>23  A.  I probably didn't go that far, because we<br>24    were still taking a look at it.<br>25  Q.  After the call did you tell Ms. Gooley that<br><br>Page 260<br>1     you had told Ms. Weiss and Ms. Garber that | |

| Deposition Designation | Objection & Response |
|---|---|
| 2     the -- you had told them that the -- in all<br>3     likelihood, the claim would be denied?<br><br>6        THE WITNESS: Well, I certainly<br>7     put them on notice that we could be denying<br>8     the claim, because that's the -- that's the<br>9     thing that's important when you're dealing<br>10    with a production is that you -- as I've<br>11    said before, you want to put them on notice<br>12    as quickly as possible if you think that<br>13    there's a possibility that a claim is going<br>14    to be denied.<br>15 BY MS. COYOCA:<br>16 Q.  But my question is: Do you recall after the<br>17     call telling Ms. Gooley that you told the<br>18     insured that in all likelihood the war<br>19     exclusion would be applied?<br>20 A.  I'm sorry I just don't remember.<br>21 Q.  Do you recall telling Ms. Gooley after the<br>22     call with Ms. Weiss and Ms. Garber that you<br>23     had told them the claim would be denied?<br>24 A.  I don't recall saying that to her, no.<br>25 Q.  During your discussion with regard to the<br><br>Page 261<br>1     potential applicability of the war exclusion,<br>2     did you respond to any of the comments that<br>3     were being made by Ms. Weiss or Ms. Garber as<br>4     to the fact that Hamas was a terrorist<br>5     organization?<br><br>9        MS. COYOCA: I'm referring to the<br>10    July 17 call.<br>11       THE WITNESS: I don't recall what<br>12    I said in response to that.<br><br>23 Q.  Right. But during that July 17 call, did<br>24     you -- do you recall responding in any way to<br>25     their characterization of the acts as being | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| **Page 262**<br>1      terrorist acts other than acts of war?<br><br>4            THE WITNESS: I'm sorry, I don't<br>5      remember.<br><br>**Page 263**<br>15   Q.   The e-mails and the initial submission of the<br>16         claim, I'll represent to you, was on Tuesday,<br>17         July 15, not on Monday. But you had<br>18         testified that you believed you had -- you<br>19         might have had conversations on Monday?<br>20   A.   It sounds like I was confusing Monday. It<br>21         was Tuesday.<br><br>**Page 264**<br>4    Q.   Okay. So from Tuesday, July 15, to Thursday,<br>5         July 17 when you told the insured that the<br>6         war exclusion potentially would apply, did<br>7         you feel that that was enough time for you to<br>8         conduct your analysis of this issue?<br>9    A.   Well, it would have to be, because they<br>10        wanted an answer.<br>11   Q.       Did you feel pressured by the insured to do<br>12        the research and get an answer out as quickly<br>13        as possible?<br>14   A.   I don't know that pressure is the correct<br>15        term. Whenever you're dealing with a<br>16        production that is going to shut down for any<br>17        reason and for any period of time, time is of<br>18        the essence to them, because time is money.<br>19        They have to be -- they have to know what --<br>20        if they're going to, you know, tell people<br>21        not the to come back to work. They have to<br>22        know exactly what the deal is. You know, and<br>23        what we always advise them is do what is<br>24        prudent even if you didn't have insurance, | |

| Deposition Designation | Objection & Response |
|---|---|
| 25     what would you do in that situation. But | |

Page 265
1       they -- you know, in spite of the fact that
2       that's what we tell them, they still want to
3       know as quickly as possible if the money is
4       going to be coming from the insurance
5       company. So, yes, they said that they wanted
6       an answer and that they wanted it very
7       quickly. I -- I'm not sure that I would say
8       I felt pressured. I would say that I knew
9       that they wanted an answer quickly.
10  Q.  Did you feel -- excuse me.
11       Did you feel you had sufficient time
12       to conduct the research and do the analysis
13       and give the insured a response in that
14       two-day period of time?

17       THE WITNESS: Yes.

19  Q.  Did you feel that your analysis was rushed?

22       THE WITNESS: I wouldn't -- I
23       wouldn't define it as rushed. I would define
24       it as working very hard for many hours over a
25       short period of time.

Page 266
2   Q.  But not withstanding the fact that you worked
3       hard for a short period of time to reach your
4       conclusion, you felt you had reached the
5       right conclusion; is that right?

8       THE WITNESS: I did.

22  A.  We discussed the conditions on the ground in
23       Israel and we discussed the war exclusion and
24       its applicability to that situation, I
25       believe, and their relocation efforts, and

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 267</u><br>1    then they wanted to know when they would get<br>2    a letter giving them their final<br>3    determination. And even though under<br>4    California law I have 40 days to produce that<br>5    to them, that would not have been appropriate<br>6    in this situation.<br>7  Q.  Anything else you can recall discussing?<br>8  A.  That's all I can recall. | |
| <u>Page 268</u><br>5  Q.  Ms. Johnson, did you have -- were there any<br>6    conversations during the phone call about<br>7    obtaining a coverage opinion?<br><br>12    THE WITNESS: Yes. Actually, it<br>13  was Susan Weiss.<br>14  BY MS. COYOCA:<br>15  Q.  What was Susan Weiss?<br>16  A.  She asked me whether or not we had obtained<br>17    an outside legal opinion.<br>18  Q.  What did you tell her?<br>19  A.  I told her no.<br>20  Q.  Did Ms. Weiss indicate to you that she had<br>21    had conversations with Peter Williams the<br>22    prior day about obtaining an outside opinion? | <u>Defendant's Objections:</u><br>(268:5-7, 12-22)<br>Reference legal opinion; not relevant; prejudicial, privilege FRE 401, 403, 501, 502<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; whether Defendant obtained outside legal opinion not privileged. |
| <u>Page 269</u><br>5    THE WITNESS: I can't recall if<br>6  she told me whether or not she had talked to<br>7  Peter about it, but she made it quite clear<br>8  to me that she thought we needed to get an<br>9  outside opinion.<br><br>11  Q.  How did you respond?<br><br>15    THE WITNESS: I don't remember | <u>Defendant's Objections:</u><br>(269:5-9, 11, 15-16, 18-19, 23-24)<br>Reference legal opinion; not relevant; prejudicial, privilege FRE 401, 403, 501, 502<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 16      what my response was.<br><br>18   Q.   Did you tell her that you disagreed that a<br>19      legal opinion was needed?<br><br>23        THE WITNESS: I'm sorry, I don't<br>24      recall.<br><br>Page 270<br>7   Q.   Did you give them a date certain by which you<br>8      would get back to the insured with the final<br>9      decision?<br>10   A.   I think that Susan asked us to get back to<br>11      them by the 21st, which I think was the<br>12      following Monday.<br>13   Q.   And did you get back to them by Monday the<br>14      21st?<br>15   A.   Well, as I recall, we couldn't get back to<br>16      them on the 21st and so we gave them<br>17      something on 22nd. I think that's right.<br>18   Q.   Why couldn't you get back to them by the<br>19      21st?<br>20   A.   I don't remember. I think that I had not<br>21      finished the letter.<br><br>Page 271<br>18   Q.   Do you recall telling them that you would get<br>19      back to them with a final decision, but that<br>20      the letter would not be forthcoming until<br>21      some period of time after that?<br>22   A.   That would make sense. I don't know if I<br>23      said that, but that would make sense.<br><br>Page 273<br>6   Q.   Ms. Johnson, do you recall when you told the<br>7      insured and Aon that Atlantic was going to<br>8      deny the claim on the basis of the war<br>9      exclusion? | whether Defendant obtained outside legal opinion not privileged. |

**364**

| Deposition Designation | Objection & Response |
|---|---|
| 10  A.   It was very shortly after the call that we<br>11         had with Susan and Andrea, within a week.<br><br>Page 274<br>2   Q.   Who was responsible for the ultimate decision<br>3         to deny the claim?<br>4   A.   Me.<br><br>Page 275<br>12  Q.   Ms. Johnson, do you see this calendar invite?<br>13  A.   I do.<br>14  Q.   Does this refresh your recollection as to<br>15         when you had a call with Ms. Gooley to<br>16         discuss the Dig claim prior to the claim --<br>17         the decision being conveyed to the insured?<br><br>20         THE WITNESS: Unfortunately, it<br>21   does not reflect -- refresh my recollection.<br>22   But given the fact that this is a calendar<br>23   invite that says that -- that she was going<br>24   to -- and that I accepted for September -- I<br>25   mean, for July 22nd, I assume that that's | |
| Page 276<br>1         when we had the call, I just don't have an<br>2         independent recollection of that.<br><br>4   Q.   Did Ms. Gooley review with you, during that<br>5         call, all of the steps you had taken leading<br>6         up to the decision?<br>7   A.   I don't know if she did or not. I don't<br>8         remember.<br>9   Q.   During the intervening period from the call<br>10         on the 17th to July 22nd, had you done<br>11         anything further with respect to the<br>12         analysis?<br>13  A.   I'm pretty sure that I continued to look at<br>14         what was happening, certainly, and because it<br>15         was what Ms. Weiss wanted, we also sought | Defendant's Objections:<br>(276:13-18)<br>Reference legal opinion; not relevant; prejudicial, privilege FRE 401, 403, 501, 502<br><br>Plaintiffs' Response:<br>Relevant to bad faith; whether Defendant obtained outside legal opinion not privileged; date Defendant contacted outside counsel not privileged. |

| Deposition Designation | Objection & Response |
|---|---|
| 16     an outside legal opinion.<br>17   Q.   And that outside legal opinion you first<br>18      sought on July 18; is that correct?<br><br>Page 277<br>4       THE WITNESS: I don't remember the<br>5      exact date that we contacted outside counsel.<br><br>7   Q.   But you received the opinion on Monday the<br>8      21st; is that right?<br><br>14       THE WITNESS: I don't recall.<br>15       MS. COYOCA: Okay. I'd like to<br>16     mark as Exhibit 11 Defendant's Exhibit 30,<br>17     Affidavit of Pamela Johnson.<br>18       (Whereupon, Exhibit 11 was<br>19       marked for identification.)<br>20   BY MS. COYOCA:<br>21   Q.   In paragraph -- excuse me. Is this an<br>22      affidavit that you signed, Ms. Johnson?<br>23   A.   It is.<br>24   Q.   And when you signed it, did you believe all<br>25      the statements that were made herein to be | Defendant's Objections:<br>(277:4-5, 7-8, 14-25)<br>Reference legal opinion; not relevant; prejudicial, privilege FRE 401, 403, 501, 502<br><br>Plaintiffs' Response:<br>Relevant to bad faith; date Defendant contacted outside counsel not privileged. |
| Page 278<br>1      true?<br>2   A.   I did.<br>3   Q.   In paragraph 7 it indicates, "I received a<br>4      coverage opinion from outside counsel on<br>5      July 21, 2014," does it not?<br><br>11       THE WITNESS: It does. I must<br>12     have looked at the date of their letter.<br><br>15             I'm going to<br>16     show the witness a client [sic] that's<br>17     already been labeled Exhibit 25.<br><br>19   Q.   Do you recognize this e-mail, Ms. Johnson? | Defendant's Objections:<br>(278:1-5, 11-12)<br>Reference legal opinion; not relevant; prejudicial, privilege FRE 401, 403, 501, 502<br><br>Plaintiffs' Response:<br>Relevant to bad faith; fact that Defendant obtained outside legal opinion not privileged. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 20   A.   I do.<br>21   Q.   Based on this exchange of e-mails between<br>22         Mr. Gutterman, Ms. Garber, Ms. Weiss and<br>23         yourself, it appears that a call was arranged<br>24         for 4:00 p.m. pacific time on July 22nd to<br>25         discuss the Dig claim; is that correct?<br><br>Page 279<br>1    A.   That's correct.<br>2    Q.   Does this refresh your recollection that that<br>3         call to convey to the insured that the claim<br>4         had been denied on the basis of the war<br>5         exclusion took place on July 22nd?<br>6    A.   That's what it appears to convey.<br>7    Q.   Do you have any reason to believe it did not<br>8         occur on the 22nd?<br>9    A.   No.<br>10   Q.   Who was on that call?<br>11   A.   Well, it looks like the participants would<br>12         have been me, Susan, Andrea and Danny.<br><br>19   Q.   How long did the call last?<br>20   A.   I don't recall.<br>21   Q.   Was it an hour long?<br>22   A.   Oh, no, it was a short call.<br>23   Q.   What was discussed?<br>24   A.   We gave them our final decision that we<br>25         thought that the war exclusion applied, they<br><br>Page 280<br>1          were unhappy.<br><br>20   Q.   Did you indicate to them that the costs of<br>21         the one-week push would be covered?<br>22   A.   I don't remember if I told them that or not.<br>23         And I believe that I told them that we had<br>24         gotten an opinion from outside counsel.<br>25   Q.   Did you tell them what the opinion conveyed? | Defendant's Objections:<br>(280:20-25)<br>Reference legal opinion; not relevant; prejudicial, privilege FRE 401, 403, 501, 502<br><br>Plaintiffs' Response:<br>Relevant to bad faith; that Defendant obtained outside |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | legal opinion not privileged; any privilege waived. |
| **Page 281**<br>7　　　THE WITNESS: I certainly -- if I<br>8　gave them any information about what outside<br>9　counsel said, it was not with any<br>10　specificity, I would not want to waive<br>11　privilege. | Defendant's Objections:<br>(281:7-11, 13-14, 21-25)<br>Reference legal opinion; not relevant; prejudicial, privilege FRE 401, 403, 501, 502 |
| 13　Q.　But did you give them any information other<br>14　than you had received a coverage opinion? | Plaintiffs' Response:<br>Relevant to bad faith; that Defendant obtained outside legal opinion not privileged; any privilege waived. |
| 21　　　THE WITNESS: I don't recall<br>22　exactly what I told them. Most likely what I<br>23　said is that we sought an outside opinion and<br>24　we felt comfortable with the decision that we<br>25　had made. | |
| **Page 282**<br>2　Q.　Did Ms. Weiss or Ms. Garber respond in any<br>3　way during the call?<br>4　A.　I know at some point in time, and I'm not<br>5　sure it was during this call, but at some<br>6　point in time Susan wanted to know what<br>7　outside counsel we had used.<br>8　Q.　Was that during the call?<br>9　A.　I -- I -- as I just said, I'm not sure if it<br>10　was during this call or if it was sometime<br>11　thereafter.<br>12　Q.　And, subsequently, you provided the name to<br>13　her; is that correct? | Defendant's Objections:<br>(282:2-13, 19-20)<br>Reference legal opinion; not relevant; prejudicial, privilege FRE 401, 403, 501, 502<br><br>Plaintiffs' Response:<br>Relevant to bad faith; that Defendant obtained outside legal opinion not privileged; any privilege waived. |
| 19　　　THE WITNESS: I don't remember<br>20　specifically. I probably did. | |
| 22　Q.　What do you recall, if anything, as to how<br>23　Ms. Weiss responded to your statement that<br>24　the claim was going to be denied or was | |

| Deposition Designation | Objection & Response |
|---|---|
| 25    denied on the basis of the war exclusion? | |

Page 283

1  A.  All I recall is that she was unhappy.

5  Q.  Did Ms. Garber give any reaction to the
6       decision during that July 22nd call?
7  A.  I don't remember.
8  Q.  Do you remember anything further about the
9       call that you have not yet told me?
10  A.  No. I mean, I wish I did. I'm not trying to
11       be difficult, it's just it was a long time
12       ago and I don't have a specific recollection
13       of what was said.
14  Q.  Do you recall discussing when a written
15       coverage opinion would be forthcoming?

23  Q.  A written coverage denial, did you tell them,
24       did you discuss with them when a written
25       coverage denial would be forthcoming from

Page 284

1       you?
2  A.  I don't know if we gave them a specific time
3       frame. I know that they wanted it as quickly
4       as possible.

9                           This has
10     previously been marked as Exhibit 65. If you
11     could just give a copy to the witness,
12     please. Thank you.

19  Q.  Ms. Johnson, do you recognize this
         document?
20  A.  I do.
21  Q.  I want to direct your attention to the center
22      e-mail on page 3240 from you to Susan Weiss
23      with a cc to Andrea Garber and Daniel
24      Gutterman. It indicates, "Andrea and Susan,

**369**

| Deposition Designation | Objection & Response |
|---|---|
| 25       Profuse apologies, but I will not be able to<br><br>Page 285<br>1       get the coverage letter to you until Monday.<br>2       Despite my best efforts, I could not complete<br>3       it today." Do you recall sending this<br>4       e-mail?<br>5   A.   I do.<br>6   Q.   Had you previously told Ms. Weiss and<br>7       Ms. Garber that you were going to get the<br>8       coverage denial letter out that week?<br>9   A.   That's certainly what it appears from this<br>10       e-mail, yes.<br>11   Q.   Did you receive -- receive Ms. Weiss's<br>12       response?<br>13   A.   I did. She said, "It's imperative that we<br>14       receive this on Monday morning. NBCU has<br>15       been asking about this on a regular basis and<br>16       we told them they'd be receiving the opinion<br>17       letter by the end of this week. Thank you,<br>18       Susan."<br>19   Q.   Did you feel that your analysis in the<br>20       coverage denial letter was being impaired by<br>21       the fact that you were being asked to<br>22       complete it in a short time frame?<br><br>25          THE WITNESS: No.<br><br>Page 286<br>2   Q.   Did you feel that you had enough time to be<br>3       able to write the coverage denial letter<br>4       given the time circumstances that were at<br>5       play?<br>6   A.   Well, clearly, I didn't get it to them by the<br>7       end of the week, which it looks like that's<br>8       what they wanted. So I can't tell you as I<br>9       sit here today why that happened. It could<br>10       have been because there was another<br>       emergent | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br>(286:21-25) Attorney client privilege; not relevant; FRE 401, 403, 501, 502<br><br>Plaintiffs' Response:<br>Relevant to bad faith; not privileged. |

| Deposition Designation | Objection & Response |
|---|---|
| 11     case that I was dealing with. I just -- I<br>12     simply don't remember, so...<br>13  Q.  But I take it you don't feel that the<br>14     analysis was in any way affected by the fact<br>15     that you were being asked to complete it in<br>16     relatively short order; is that right?<br>17  A.  No.<br><br>21  Q.  I want to show you a document that's<br>22     previously been marked as Exhibit 33.<br>23     Ms. Johnson, do you recognize the<br>24     document?<br>25  A.  I do.<br><br>Page 287<br>1  Q.  Did you send the cover e-mail that is dated<br>2     Monday, July 28, 2014?<br>3  A.  I did.<br>4  Q.  The letter is being sent -- excuse me, the<br>5     e-mail with the attachment is being sent to<br>6     Theresa Gooley and Peter Williams; is that<br>7     right?<br>8  A.  That's correct.<br>9  Q.  Who is the cc, Christopher Paar?<br>10  A.  Chris Paar is the claim legal guy.<br><br>Page 289<br>22  Q.  Did Ms. Gooley provide any input with respect<br>23     to the letter before it was sent out?<br>24  A.  I think she might have changed one phrase,<br>25     but I couldn't tell you what phrase it was.<br><br>Page 290<br>1  Q.  Okay. I'm going to show you Exhibit 34<br>2     that's previously been marked.<br>3     Does this refresh your recollection<br>4     as to whether Ms. Gooley had any suggestions<br>5     or changes? | <u>Defendant's Objections:</u><br>(287:1-10) Attorney client privilege; not relevant; FRE 401, 403, 501, 502<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; purpose; not privileged. |

| Deposition Designation | Objection & Response |
|---|---|
| 6  A.  Yes. | |
| 7  Q.  What was her change? | |
| 8  A.  It says, "Please see my edits. My only | |
| 9  revision is in the first paragraph of the | |
| 10  letter." | |
| 11 Q.  And if you turn to the first page of the | |
| 12  letter, that first paragraph, what was | |
| 13  Ms. Johnson's change? | |
| 14 A.  You mean Ms. Gooley? | |
| 15 Q.  Oh, excuse me. I apologize. Yes, | |
| 16  Ms. Gooley's change. | |
| 17 A.  Well, I'll have to compare it to the | |
| 18  previous letter to make that determination, I | |
| 19  don't know off the top of my head. | |
| 20  (Reviews document.) | |
| 21  It doesn't appear that there were | |
| 22  any changes, that I can tell. | |
| 23 Q.  Okay. In the second to last sentence of the | |
| 24  first paragraph in your draft, the sentence | |
| 25  reads, "Our decision is based on information | |
| | |
| Page 291 | |
| 1  gathered about the situation in Israel, case | |
| 2  law, treatises and consultation with | |
| 3  counsel." Do you see that? | |
| 4  A.  She added the consultation with counsel. She | |
| 5  just changed it to a different sentence that | |
| 6  said, "We also consulted with counsel." | |
| | |
| 24  MS. COYOCA: Okay. I'm going to | |
| 25  provide as the next in order a document | |
| | |
| Page 292 | |
| 1  that's labeled AONNBCU0003085 through | |
| 3093. | |
| 2  (Whereupon, Exhibit 12 was | |
| 3  marked for identification.) | |
| | |
| 24 Q.  Ms. Johnson, the first page of Exhibit 12 is | |

| Deposition Designation | Objection & Response |
|---|---|
| 25      an e-mail. Do you recognize this e-mail? | |

Page 293
1  A.  Yes.
2  Q.  Did you send it?
3  A.  I did.
4  Q.  Why did you send it?
5  A.  Because it is our obligation to send a
6        written coverage determination to our
7        policyholders.
8  Q.  So the purpose of the communication was to
9        convey the coverage determination; is that
10       correct?
11  A.  Yes.
12  Q.  In the first sentence it reads, "Attached is
13       our coverage determination describing in
14       detail why the exclusion for war or warlike
15       actions precludes coverage for the extra
16       expense associated with NBCU's decision to
17       move its production of Dig out of Israel to
18       another country." Do you see that?
19  A.  I do.
20  Q.  Why did you reference only the exclusion for
21       war or warlike actions in the cover e-mail?
22  A.  Because if the conduct fell within those two
23       portions of the exclusions, so although I
24       cite other portions of the exclusion, to give
25       them notice it's not -- you know, if it falls

Page 294
1        within the first two, I didn't feel the need
2        to explain every single one of them.

Page 295
13  Q.  Okay. Can you please point to me where in
14       the letter the discussion of application of
15       subpart 3 for insurrection rebellion
16       revolution usurp power et cetera where that
17       is specifically discussed?

| Deposition Designation | Objection & Response |
|---|---|
| 18  A.   I didn't discuss it specifically.<br>19  Q.   Can you please point to me where in the<br>20        letter the subpart 4 any weapon of war<br>21        including atomic fission or radio active<br>22        force where that is discussed?<br>23  A.   I did not discuss it.<br><br>Page 303<br>11  Q.   In -- on the top of page 3088, the third line<br>12        into that first paragraph reads, begin<br>13        quotes, "I informed you that we were<br>14        seriously considering whether the exclusion<br>15        for war and warlike actions would preclude<br>16        coverage for the claim," period, close<br>17        quotes. Do you see that?<br>18  A.   Yup.<br>19  Q.   Does that statement refresh your recollection<br>20        that you indicated during the Thursday,<br>21        July 17 call, that Atlantic was seriously<br>22        considering rejecting the claim on the basis<br>23        of the war exclusions?<br>24  A.   That's what it says.<br>25  Q.   You testified earlier today that you believed<br><br>Page 304<br>1         you indicated that there was a potential that<br>2         the war exclusions would be applied. Do you<br><br>6         THE WITNESS: I don't remember<br>7         exactly what I said, but I don't think it's<br>8         any different than what's written in the<br>9         letter. Saying that there's a potential and<br>10        saying you're seriously considering it, it's<br>11        not -- there's not a lot of difference there.<br>12  BY MS. COYOCA:<br>13  Q.   Well, you don't believe that the difference<br>14        between conveying that there is a potential<br>15        for something to happen versus serious<br>16        consideration being given to have something | |

| Deposition Designation | Objection & Response |
|---|---|
| 17     happen is a difference in degree of the act<br>18     might -- the act occurring?<br><br>21         THE WITNESS: Well, I would say<br>22     that what is written in the letter, which<br>23     would have been helpful to have seen before,<br>24     since it seems to document the conversations<br>25     a lot more thoroughly than my recollection<br><br>Page 305<br>1     three years hence, I would say that what is<br>2     in the letter is more accurate than my<br>3     recollection today.<br><br>Page 312<br>10  Q.  On page 3 of -- excuse me. On page<br>11      Bates-labeled 3090 of the letter, under,<br>12      "Analysis," there's a paragraph heading<br>13      titled, "Imminent Peril." Do you see that?<br>14  A.  I do.<br>15  Q.  In that paragraph you indicate, "Based on<br>16      Mr. Smith's e-mail to the production of what<br>17      we know about the present conflict, we<br>18      believe that the extra expenses that will be<br>19      incurred to move the production out of Israel<br>20      will be due to imminent peril." Do you see<br>21      that sentence?<br>22  A.  I do.<br><br>Page 313<br>2  Q.  You further went on to say, begin quotes,<br>3      "Rockets launched towards areas where filming<br>4      was taking place would no doubt reasonably<br>5      constitute a certain immediate and impending<br>6      danger of such probability and severity to<br>7      person or property that it would be<br>8      unreasonable or unconscionable to ignore."<br>9      Do you see that? | Defendant's Counter:<br>313:11-25; 314:1-3<br><br>Plaintiffs' Response:<br>Not necessary for completeness. Counter is separate question and answer. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 10 A. I do. | |

Page 314

| | | |
|---|---|---|
| 5 | Q. | What I'm asking you is that do you believe |
| 6 | | today, looking back on your letter of |
| 7 | | July 28, that you were mistaken in your |
| 8 | | conclusion? |
| 11 | | THE WITNESS: Which conclusion? |
| 12 | | MS. COYOCA: That imminent peril |
| 13 | | existed. |
| 14 | | THE WITNESS: No, there was |
| 15 | | imminent peril due to war. |

Page 316

| | | |
|---|---|---|
| 18 | Q. | The next heading under, "Analysis," is, |
| 19 | | "Terrorism Coverage." Do you see that? |
| 20 | A. | Yes. |
| 21 | Q. | You indicate, "The terrorism coverage should |
| 22 | | not apply, because under its terms the act |
| 23 | | must be part of an effort to coerce or |
| 24 | | influence the United States population or |
| 25 | | government." Do you see that sentence? |

Page 317

| | | |
|---|---|---|
| 1 | A. | I do. |
| 2 | Q. | What provision of the policy were you |
| 3 | | referring to in this sentence? |
| 4 | A. | I was referring to the TRIA coverage. It |
| 5 | | says, "Coverage for certified acts of |
| 6 | | terrorism." |
| 7 | Q. | So was it your belief as of July 28, 2014, |
| 8 | | that the TRIA endorsement to the policy |
| 9 | | extended afforded coverage to the insured |
| 10 | | under certain terms? |
| 11 | A. | Yes. |
| 12 | Q. | Is it your understanding that the only |
| 13 | | coverage for terrorism, acts of terrorism in |
| 14 | | the policy that is in dispute, would be for |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 15  those acts that meet the certified acts of<br>16  terrorism TRIA endorsement?<br><br>19       THE WITNESS: And it's not a<br>20  conclusion I'm willing to -- to reach. Each<br>21  claim would be considered on its face. As to<br>22  whether or not the -- the coverage for<br>23  terrorism existed in other situations, as I<br>24  sit here today, I haven't been confronted<br>25  with that situation or analyzed it, so I<br><br>Page 318<br>1       can't give you an answer.<br><br>Page 329<br>23  Q.  And in your view, is the TRIA endorsement, is<br>24       it a coverage grant?<br>25  A.  No, it's a carveout.<br><br>Page 330<br>1  Q.  Why did you invoke the TRIA endorsement in<br>2       the July 28 denial letter?<br>3  A.  Because Susan Weiss continued to say that<br>4       this was a terrorist act and terrorism was<br>5       covered, so I pointed out the coverage<br>6       for -- for terrorism referred to a certified<br>7       act of terrorism.<br><br>18  Q  Is it your position today that as of July 28,<br>19       you believed that the only coverage for<br>20       terrorism under this policy would be if the<br>21       act was a certified act of terrorism under<br>22       the terms of the TRIA endorsement?<br>23       MS. REED: Objection; vague and<br>24  ambiguous, misstates the prior testimony.<br>25       THE WITNESS: Not necessarily.<br><br>Page 331 | |

| Deposition Designation | Objection & Response |
|---|---|
| 2   Q.   Do you believe you were wrong in invoking the<br>3         TRIA endorsement in the July 28 letter?<br><br>6            THE WITNESS: I don't think I was<br>7         invoking it. I was referring to -- I was<br>8         referencing that because of Susan Weiss's<br>9         continued claim that this was an act of<br>10        terrorism, so I wanted to point her toward<br>11        the portion of the policy that refers to<br>12        terrorism and why it does not apply here.<br><br>24   Q.   Well, again, is it your position that only<br>25        certified acts of terrorism are covered under<br><br>Page 332<br>1         the terms of this NBCUniversal policy?<br>2   A.   No.<br><br>6   Q.   No, that is not your position?<br>7   A.   That is not my position.<br>8   Q.   Okay. And are acts of terrorism, just assume<br>9         it is an act of terrorism, if they fall<br>10        within the coverage grant of a provision of<br>11        the policy, are they excluded because they<br>12        are terrorism?<br><br>17            THE WITNESS: Not necessarily.<br><br>Page 334<br>9         In the coverage denial letter, the<br>10        July 28, 2014, coverage denial letter, on<br>11        page 3090 in the -- under the subheading,<br>12        "War," there is a sentence that reads, begin<br>13        quotes, "Statutes defining war in various<br>14        contexts and cases that have interpreted war<br>15        exclusions in insurance policies provide<br>16        assistance in determining whether the loss<br>17        presented here was caused by war." Do you | Defendant's Counter:<br>332:20-25; 333:1-6<br><br>Plaintiffs' Response:<br>Not necessary for completeness. Counter is separate question and answer. |

| Deposition Designation | Objection & Response |
|---|---|
| 18      see that? | |
| 19  A.  Yes. | |
| 20  Q.  What statutes were you referring to that | |
| 21      defined war? | |
| 22  A.  What am I saying? (Reviews document.) I | |
| 23      don't recall. I mean, I do refer to the 1951 | |
| 24      attorney general opinion, but that doesn't | |
| 25      rise to the level of statute. There may be | |
| | |
| Page 335 | |
| 1      other statutes that I looked at that I did | |
| 2      not specifically reference in here. | |
| 3  Q.  You just indicated in your response that | |
| 4      there may be other statutes. Can you | |
| 5      identify any statutes to which you were | |
| 6      referring in the letter? | |
| 7  A.  I meant other statutes that I looked at, | |
| 8      statutes that I looked at in the course of my | |
| 9      research. | |
| 10  Q.  I'm just confused by your reference or your | |
| 11      use of the word "other." | |
| 12  A.  I do not see a reference to a statute in the | |
| 13      letter. | |
| 14  Q.  Thank you. | |
| 15         Do you recall any statutes that you | |
| 16      reviewed that defined war when you were | |
| 17      drafting the letter? | |
| 18  A.  Well, I think I must have or I wouldn't have | |
| 19      put it in the letter. I mean, the letter | |
| 20      does not exhaustively go over everything that | |
| 21      I looked at. | |
| 22  Q.  Did you provide any annotation of the | |
| 23      statutes that you considered in the claim | |
| 24      file? | |
| 25  A.  I did not. | |
| | |
| Page 336 | |
| 6  Q.  The case that you cite on page 3090 in the | |
| 7      July 28 denial letter is Wilkinson vs. | |

**379**

| Deposition Designation | Objection & Response |
|---|---|
| 8     Equitable Life Assurance Society. Do you see<br>9     that?<br>10  A.  I do.<br>11  Q.  A case that was decided by the New York<br>12     Municipal Court in 1956. Do you see that?<br>13  A.  Uh-huh.<br>14  Q.  In that quote that you have in the letter as<br>15     to that decision, there's the statement,<br>16     begin quotes, "We must take the view that<br>17     words are to be in their plain, ordinary,<br>18     popular sense, and that they are to be<br>19     considered as they would be understood by the<br>20     average man," close quotes. Do you see that?<br>21  A.  I do.<br>22  Q.  In applying the war exclusion to the Dig<br>23     claim, were you analyzing the plain, ordinary<br>24     and popular sense of the term, "War," as it<br>25     would be understood by the average man?<br><br>Page 337<br>1  A.  Yes.<br>2  Q.  What was your understanding of the plain,<br>3     ordinary and popular sense of the term?<br><br>6       THE WITNESS: Well, I think that<br>7     most people would say that it is an exchange<br>8     of violence between two willing participants<br>9     who may or may not be states, but who are<br>10    fighting over a particular either religious<br>11    belief, portion of land, you know, trying to<br>12    assert some level of dominance over the<br>13    other.<br><br>15  Q.  When did you form that understanding as to<br>16    the plain, ordinary and popular sense of the<br>17    term, "War"?<br>18  A.  I looked at –<br><br>21       THE WITNESS: I looked at a lot of | |

| Deposition Designation | Objection & Response |
|---|---|
| 22   different places where war was defined, not<br>23   simple any in legal treatises or in<br>24   dictionaries, since that's not necessarily<br>25   indicative -- or I shouldn't say indicative. | |
| **Page 338**<br>1   It is not -- it's not the only place where<br>2   you will find what a common man might<br>3   determine. | <u>Defendant's Objections:</u><br>(338:5-23) Hypothetical; no<br>foundation, not relevant;<br>prejudicial; waste of time<br>401, 403 |
| 5  Q.  So if two individuals were engaged in a fight<br>6      over religious differences, would that be a<br>7      war?<br>8  A.  No. It has to be -- it has to involve<br>9      military force.<br>10  Q.  And where did you form the understanding that<br>11      in order to constitute war, it had to involve<br>12      military force?<br>13  A.  Well, I think in most of the -- most things<br>14      that I looked at, that was one of the<br>15      indications that it needed to be between at<br>16      least one military. I mean, if you take a<br>17      look at the war in Afghanistan, again, the<br>18      Taliban may not the have a specific organized<br>19      Army, but they certainly have a militia that<br>20      they are using against American troops and<br>21      Afghani troops there, as -- as are Al Qaeda.<br>22  Q.  How do you define a military force? What is<br>23      your understanding of the term? | <u>Plaintiffs' Response:</u><br>Relevant to bad faith; not<br>hypothetical; foundation<br>present; statement of party<br>opponent. |
| **Page 339**<br>1      THE WITNESS: I think that you<br>2   would have to -- to say that they are<br>3   individuals who are bound to work together,<br>4   that they are using -- are using some type of<br>5   weaponry, that they are working in concert in<br>6   large groups to advance a particular cause. | <u>Defendant's Objections:</u><br>(339:1-6, 3-8, 14-18, 20-23)<br>Hypothetical; no foundation,<br>not relevant; prejudicial;<br>waste of time 401, 403<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; not |

| Deposition Designation | Objection & Response |
|---|---|
| 8  Q.  And would you consider a gang such as the<br>9      Crips or the Bloods in Los Angeles to be a<br>10     military force?<br><br>14          THE WITNESS: Well, we certainly<br>15     make reference to gang wars, you know, that's<br>16     in the popular parlance for sure, but I don't<br>17     know that I would say that they are a<br>18     militia.<br><br>20  Q.  Actually, I'm asking about military force,<br>21     not necessarily a militia. Would you<br>22     consider them to be a military force?<br>23  A.  Not necessarily, no. | hypothetical; foundation present; statement of party opponent. |
| Page 340<br>1  Q.  But you indicated that in common parlance<br>2      there is a reference to gang wars; is that<br>3      correct?<br>4  A.  Sure. You hear that on the news and other<br>5      places.<br>6  Q.  Would you consider the reference to gang wars<br>7      on the news to mean that an actual war is<br>8      taking place?<br><br>12          THE WITNESS: No, not necessarily. | Defendant's Objections:<br>(340:1-8) Hypothetical; no foundation, not relevant; prejudicial; waste of time 401, 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith; not hypothetical; foundation present; statement of party opponent. |
| Page 345<br>12  Q.  At the time that you were analyzing the claim<br>13      and determining that it should be denied on<br>14      the basis of the war exclusion, did you<br>15      consider what NBCUniversal understood the<br>16      word "war" to mean at the time it entered<br>17      into its insurance policy with Atlantic in<br>18      January of 2010?<br><br>22          THE WITNESS: I do not. That's<br>23      not the standard. | |

**382**

| Deposition Designation | Objection & Response |
|---|---|
| 25  Q.  What do you think the standard is? | |
| Page 346 | |
| 4          THE WITNESS: Well, I think I<br>5          cited it, that it needs to be -- that words<br>6          need be to taken at their plain, ordinary,<br>7          popular sense and that they're -- they are<br>8          considered as they would be considered to be<br>9          understood by the average man. | |
| Page 347<br>6  Q.  So does that mean to you that the reasonable<br>7       expectation of the insured does not enter<br>8       into the analysis as to interpretation of the<br>9       word "war"? | Defendant's Objections:<br>(347:22-25) Reasonable<br>expectation standard, not<br>relevant, prejudicial; waste<br>of time FRE 401, 403 |
| 13          THE WITNESS: I think I just<br>14          answered that. | Plaintiffs' Response:<br>Relevant to bad faith |
| 16  Q.  Please answer the question. | |
| 22          THE WITNESS: The way that you<br>23          would determine what the reasonable<br>24          expectation of the insured is, and again it<br>25          has to be a reasonable interpretation, is how | |
| Page 348<br>1          that word is ordinarily defined by the common<br>2          man, unless it is a technical term. And<br>3          within the entertainment industry, war is not<br>4          a technical term. | Defendant's Objections:<br>(348:1-4) Reasonable<br>expectation standard, not<br>relevant, prejudicial; waste<br>of time FRE 401, 403 |
| 6  Q.  What about if the word has a special meaning<br>7       according to the usage that it's been given<br>8       in the insurance industry – | (17-20, 22, 24-25) Hearsay;<br>foundation; counsel's<br>statements; not relevant FRE<br>401, 403, 801, 802 |
| 11  Q.  -- does that enter into the interpretation<br>12       analysis? | Plaintiffs' Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 17  THE WITNESS: Well, I think you<br>18  can see from my letter that I cited several<br>19  different sources that talked about how the<br>20  word "war" has been interpreted.<br><br>22  Q.  Is that a yes?<br><br>24  THE WITNESS: The answer is what<br>25  it is.<br><br>Page 349<br>2  Q.  If the word has a special meaning according<br>3  to usage that it's been given in the<br>4  insurance industry, does that special meaning<br>5  usage come into play in the interpretation of<br>6  the provision in the insurance contract?<br><br>11  THE WITNESS: It is certainly<br>12  something that we would look at. That<br>13  doesn't mean that that -- that particular<br>14  definition governs all.<br><br>16  Q.  In terms of the common man understanding, is<br>17  that the common man understanding at the time<br>18  of contracting or the common man<br>19  understanding at the time a claim arises?<br><br>22  THE WITNESS: At the time of<br>23  contracting.<br><br>Page 350<br>12  Q.  Ms. Johnson, I'd like to show you another<br>13  document which we will need to mark as the<br>14  next in order. It's Bates-labeled ATL 00217<br>15  through 222.<br>16  (Whereupon, Exhibit 13 was<br>17  marked for identification.) | Relevant to bad faith; offered for non hearsay purpose; proper cross-examination; foundation present; statement of party opponent. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|

19  Q.  Ms. Johnson, do you recognize the e-mail that
20      was sent by you on September 30, 2014?
21  A.  I do.
22  Q.  And the attachment to this e-mail is a letter
23      dated December 19th; do you see that?
24  A.  I do.
25  Q.  Did you write the letter?

Page 351

1  A.  I did.
2  Q.  When you had written the letter on
3     September 19th, did you send it to -- to me?
4  A.  That was certainly my intent. I think I
5     actually did, yes.
6  Q.  Huh. Do you have -- did you go back and
7     check to see whether you had any record of
8     having sent it to anyone other than
9     Ms. Weiss?
10  A.  No. At the time this was brought to my
11     attention, it was not in a period that I
12     could review that, so I just sent it along.
13  Q.  What work did you, if any, in order to
14     develop the analysis that's set forth in this
15     letter?
16  A.  I reviewed your letter, I looked at the case
17     law that you included in your letter, I --
18     that the war was ongoing, so I continued to
19     stay apprised of what had happened, I -- I
20     kept myself apprised of what had happened
21     through August, and that the -- these
22     specific facts that are contained in the
23     third paragraph of the letter that says that,
24     "During the conflict which extended until
25     August 26th, 2014, 2,143 Palestinians and 69

Page 352

1     Israelis were killed, Israel struck 500" --
2     "5,283 targets in Gaza, Hamas fired 4,564

| Deposition Designation | Objection & Response |
|---|---|
| 3      rockets into Israel and more than 50,000<br>4      thousand buildings in Gaza were damaged or<br>5      destroyed," that's information that I<br>6      gathered after -- after the war had come to<br>7      its conclusion.<br>8  Q.  Is it your position or was it your position<br>9      in September of 2014 that the size and scope<br>10     of the hostilities was a factor in<br>11     determining whether or not something<br>12     constituted a war?<br><br>15        THE WITNESS: Well, I think that<br>16     the fact that so much damage was done<br>17     certainly supports the idea that it was a<br>18     war. It is not the only factors to be<br>19     considered, however.<br><br>21  Q.  But in your -- in your view, it was a factor<br>22     to be considered in developing an opinion<br>23     with respect to whether or not a war existed?<br><br>Page 353<br>1        THE WITNESS: It couldn't have<br>2      been, because we denied the claim before we<br>3      were aware of these facts.<br><br>5  Q.  But my question to you is: Is the size and<br>6      scope of the hostilities, in your view, a<br>7      factor to be considered in construing whether<br>8      or not something constitutes a war?<br><br>12        THE WITNESS: Well, I think the<br>13     fact that I included it in my letter back to<br>14     you was an indication that we thought that<br>15     that was something you should take into<br>16     consideration in saying that the war<br>17     exclusion did not apply.<br>18  BY MS. COYOCA:<br>19  Q.  And what is your authority for the position<br>20     that the size or scope of the hostilities is | |

| Deposition Designation | Objection & Response |
|---|---|
| 21    relevant to the analysis of whether or not a<br>22    series of hostile interactions constitutes<br>23    war?<br><br>25         THE WITNESS: Common sense.<br><br><br>Page 354<br>5  A.  There might be other relevant documents that<br>6     would state the same thing. As I sit here<br>7     today, I can't remember them.<br>8  Q.  Did you see any case analysis that the size<br>9     and scope of the hostilities is not a factor<br>10    to be considered in determining whether or<br>11    not something constitutes a war?<br><br>14         THE WITNESS: I don't recall.<br><br>16  Q.  On page 3 -- no, I'm sorry, this is also<br>17    all -- all pages are page 3.<br>18       On the Bates label ATL002220, in the<br>19    paragraph that begins subparagraph 1 of the<br>20    war exclusion, you indicate about<br>21    three-quarters of the way down, within<br>22    quotes, "Here Israel, which is indisputably a<br>23    sovereign government, invaded Gaza to protect<br>24    its people from a continuing attack from the<br>25    military arm of Hamas," close quote.<br><br>Page 355<br>1       Was it your position as of September<br>2    of 2014 that the fact that Israel was a<br>3    sovereign government was enough to bring the<br>4    hostilities into the definition of what<br>5    constitutes war –<br><br>8  Q.  -- i.e., that there was only one sovereign | |

| Deposition Designation | Objection & Response |
|---|---|
| 9      entity? | |
| 13         THE WITNESS: To tell you exactly<br>14    the reason why this was included in the<br>15    letter, I would have to see your letter to<br>16    see what -- how I was writing responsively to<br>17    what you said. | |
| 19   Q.   But separate and apart from what you were<br>20        writing in response to, I'm asking you the<br>21        question of, as you did your analysis as to<br>22        whether this was a covered claim or not a<br>23        covered claim, did you believe that it was<br>24        sufficient for purposes of meeting the war<br>25        definition however it's defined that one of | |
| Page 356<br>1        the entities is a sovereign? | Defendant's Objections:<br>(356:20-25) Whether<br>Saddam Hussein or any<br>others are terrorist is not<br>relevant; waste of time FRE<br>401, 403 |
| 5         THE WITNESS: I don't know how I<br>6    considered that. | |
| 8   Q.   Did you interpret Pan Am as meaning that only<br>9    one entity that's involved in the hostilities<br>10    needs to be a sovereign?<br>11   A.   Without reviewing the case, I can't tell you<br>12    how I interpreted it.<br>13   Q.   What about Holiday Inns, was it your<br>14    interpretation that if -- if one of the<br>15    fighting parties amongst multiple parties was<br>16    a sovereign entity, the hostilities would<br>17    then constitute war? | Plaintiffs' Response:<br>Relevant to bad faith |
| 20         THE WITNESS: Well, Ms. Coyoca,<br>21    without actually reviewing what the case<br>22    says, I can't tell you what I thought the<br>23    holding was or what the interpretation that<br>24    one should take away from the definition of<br>25    war is. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 357<br>2   Q.   On page 2222, which is the last page of the<br>3          letter, the paragraph at the very beginning<br>4          of the top page of that -- at the top of the<br>5          page, you indicate, begin quotes, "You seem<br>6          to assert that a government that is deemed to<br>7          be a terrorist organization cannot have<br>8          sufficient sovereignty to fall within the war<br>9          exclusion. That is not correct. For<br>10        example, the governments of North Korea and<br>11        Saddam Hussein era, Iraq were called<br>12        terrorists, but no one would argue that they<br>13        are not sovereign states or that the war<br>14        exclusion would not apply to conflicts<br>15        involving them," close quotes. Do you see<br>16        that?<br>17   A.   I do.<br>18   Q.   Do you know whether or not as of September of<br>19        2014, North Korea was listed as a terrorist<br>20        organization by the U.S. Government or a<br>21        state sponsor of terrorism?<br><br>24          THE WITNESS: I don't know.<br><br>Page 358<br>1   Q.   What about Saddam Hussein era, Iraq, do you<br>2          know whether or not Iraq at that point in<br>3          time was designated as a terrorist<br>4          organization or as a state sponsor of<br>5          terrorism?<br><br>8          THE WITNESS: By who?<br>9          MS. COYOCA: By the U.S.<br>10   Government.<br>11          THE WITNESS: I -- I don't know.<br><br>13   Q.   At the time that you wrote the letter in | Defendant's Objections:<br>(357:1-21) Whether Saddam Hussein or any others are terrorist is not relevant; waste of time FRE 401, 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |

**389**

| Deposition Designation | Objection & Response |
|---|---|
| 14    September of 2014, did you know the<br>15    difference between a designation as a<br>16    terrorist organization by the U.S. Government<br>17    versus a designation by the U.S. Government<br>18    as a state sponsor of terrorism?<br><br>22        THE WITNESS: I did not view the<br>23    United States designation of either country<br>24    as determinative in this particular<br>25    determination.<br><br>Page 359<br>2  Q.  Regardless of whether it's ultimately<br>3    determinative, did you consider the position<br>4    of the U.S. Government in terms of its<br>5    designation of Hamas as a terrorist<br>6    organization, did you consider that to be a<br>7    factor to be taken into consideration at all?<br><br>11        THE WITNESS: As I previously<br>12    stated, I did not think that the U.S.<br>13    designation of Hamas as a terrorist<br>14    organization was relevant to determining<br>15    whether or not the war exclusion applied.<br><br>17  Q.  Did you believe, though, that the<br>18    U.S. Government's designation of an entity as<br>19    being a terrorist organization or a state<br>20    sponsor of terrorism or simply a recognized<br>21    state with which the U.S. Government has<br>22    diplomatic relations, did you believe that<br>23    any of that analysis was relevant to<br>24    determining whether or not the conflict was a<br>25    war?<br><br>Page 360<br>4        THE WITNESS: Well, those are all<br>5    political designations based on the U.S.'s<br>6    relationship with those particular countries. | |

| Deposition Designation | Objection & Response |
|---|---|
| 7     So, no, that -- that in and of itself is not<br>8     necessarily relevant.<br><br>10  Q.  So you believe that an insurance company<br>11     should make an independent determination<br>12     separate and apart from what the<br>13     U.S. Government determines as to the status<br>14     of an entity that is potentially involved in<br>15     a claim with the war exclusion?<br><br>19        THE WITNESS: In this instance,<br>20     what I was trying to determine was what were<br>21     the actual facts of what was happening on the<br>22     ground in Israel, not whether or not the two<br>23     parties involved were terrorist<br>24     organizations.<br><br>Page 361<br>1  Q.  My question, though, to you was did -- was<br>2     that part of your analysis, whether or not<br>3     the events constituted war, when you were<br>4     analyzing what was happening on the ground,<br>5     as part of your analysis did you consider the<br>6     designation by the U.S. Government as to<br>7     these entities?<br><br>10        THE WITNESS: Well, as I<br>11     previously stated, I -- I knew that the U.S.<br>12     viewed Hamas as a terrorist organization<br>13     based on their charter. So I was aware of<br>14     that, however, that did not change my opinion<br>15     as to whether or not Hamas could be<br>16     considered quasi-sovereign or some other form<br>17     of -- of state that could potentially engage<br>18     in a war. | |

7060055/015825

1   **PAMELA A. JOHNSON—May 9, 2017 (Volume 2)**

2

| Deposition Designation | Objection & Response |
|---|---|
| Plaintiff's Designation of Pamela A. Johnson, Volume 2, May 9, 2017 (372:24-25; 373:1-11, 17-19; 374:24-25; 375:1-25; 376:1-23; 377:22-25; 378:1-25; 379:1-5; 383:1-23; 384:22-25; 385:1-25; 386:1-25; 387:1-6; 389:16-25; 390:1-18; 392:8-24; 393:4-25; 394:1-21; 395:9-25; 396:1-25; 397:1-17; 398:20-23; 400:4-11; 418:8-11; 449:4-25; 450:1-8; 451:12-25; 452:1-25; 453:1-22; 455:12-25; 456:1-8; 467:7-20; 470:4-25; 471:1-25; 472:1-3, 22-25; 473:1-12, 24-25; 474:1-25; 475:1-6, 13-25; 476:1-25; 477:1-25; 478:1-9; 480:19-25; 481:1-14; 482:11-25; 483:9-25; 484:1-25; 485:1-15, 25; 486:1-2; 489:11-25; 490:1-22; 491:1-9, 23-25; 492:1-12; 495:14-17, 21-25; 496:1-17; 499:13-25; 500:1, 24-25; 501:1-15; 504:3-25; 505:1-12; 511:17-24; 512:2-8; 513:1-4, 7-13, 15-19, 23-24; 524:6-25; 525:15-19, 22-23; 526:12-14, 18-21, 23-25; 527:1-15; 528:3-9, 13-23, 25; 529:1-3, 7-25; 530:1-10, 14-17, 19-23; 531:1-4; 550:20-25; 551:1-7, 10-13; 553:4-7, 10): <br><br> Page 372 <br> 24   Q.   Good morning, Ms. Johnson. <br> 25   A.   Good morning. <br><br> Page 373 <br> 1   Q.   Would you please state your full name for the <br> 2        record. <br> 3   A.   Pamela Ann Johnson. <br> 4   Q.   Ms. Johnson, by whom were you employed in <br> 5        July of 2014? <br> 6   A.   I was employed by OneBeacon, also known as <br> 7        Atlantic Specialty Insurance Group. <br> 8   Q.   What was your title or position at that time? <br> 9   A.   I was the claims lead for the entertainment <br> 10       group.  The internal designation is second <br> 11       vice-president. | |

| Deposition Designation | Objection & Response |
|---|---|
| 17  Q.  In the summer of 2014, how long had you been<br>18       employed by OneBeacon?<br>19  A.  I joined OneBeacon in March of 2012.<br><br>Page 374<br>24  Q.  By the summer of 2014, which claim division<br>25       or group did you oversee?<br><br>Page 375<br>1   A.  The entertainment claim group.<br>2   Q.  In the summer of 2014, did you handle<br>3        entertainment claims directly?<br>4   A.  Some, yes.<br>5   Q.  What types?<br>6   A.  Mass torts, in other words, if there was an<br>7        incident for one of our entertainment clients<br>8        that resulted in several people being<br>9        injured, more than one. I would also handle<br>10       some complex claims involving the production<br>11       policies.<br>12           For example, if a -- if a production<br>13       company or network wanted to abandon a show,<br>14       that would be something that I would<br>15       investigate and handle personally. Sometimes<br>16       there would be some kind of other complex<br>17       claims, defamation claims, that type of<br>18       thing.  If it was for a very high-profile<br>19       person, then that's something that I would<br>20       handle, a disgrace claim.<br>21  Q.  In the summer of 2014, did you supervise<br>22       others who were handling claims?<br>23  A.  I did.<br>24  Q.  How many people were reported to you at that<br>25       time?<br><br>Page 376 | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 1  A.  It was -- I think there were six.  It was six<br>2       or seven.   I don't recall exactly.<br>3  Q.  Did Danny Gutterman report to you?<br>4  A.  He did.<br>5  Q.  What was his position at that time?<br>6  A.  Danny Gutterman was a claim handler for the<br>7       OneBeacon entertainment group, and he<br>       handled<br>8       exclusive first-party claims for our<br>9       entertainment clients under production<br>10     policies.<br>11  Q.  When you refer to first-party claims, what<br>12     does that mean, please, ma'am?<br>13  A.  In other words, if it is -- if the insured,<br>14     which is, you know, a production company, a<br>15     network, et cetera, if they bring a claim<br>16     under their production policy, their<br>17     first-party coverage relating to a specific<br>18     production if it has to shut down, if a cast<br>19     member gets injured and creates a situation<br>20     in which they need to shut down, if there's<br>21     bad weather that causes the production to<br>22     shut down or damage to the set, that's the<br>23     kind of claim that he would handle.<br><br>Page 377<br>22  Q.  By the summer of 2014, how many years of<br>       work<br>23     experience did you have working directly for<br>24     an insurance company in total?<br>25  A.  Working for an insurance company, I started<br><br>Page 378<br>1      working for an insurance company in 2005, so<br>2      approximately seven years.<br>3  Q.  2005 to 2014?<br>4  A.  Oh, I'm sorry, nine years.  I'm not great at<br>5     math.<br>6  Q.  And how many years of that experience had | |

| Deposition Designation | Objection & Response |
|---|---|
| 7     handled -- had been handling entertainment<br>8     claims, please, ma'am?<br>9  A.  About seven.<br>10  Q.  Now, separate and apart from your work<br>11     history being employed directly by insurance<br>12     companies, did you have prior professional<br>13     experience that involved handling insurance<br>14     matters?<br>15  A.  Yes, I had.<br>16  Q.  What was that prior professional experience?<br>17  A.  Well, I had been in private practice for<br>18     about 13 years before going in-house for an<br>19     insurance company.    And in the course of<br>20     being in private practice, I had handled<br>21     coverage matters for insurance companies, I<br>22     had defended insureds under insurance<br>23     policies, and I had also sued insurance<br>24     companies on behalf of their policyholders.<br>25  Q.  And when you refer to, "Private practice,"<br><br>Page 379<br>1     that was in private practice as an attorney?<br>2  A.  That's correct.<br>3  Q.  Were you working for law firms during that<br>4     time?<br>5  A.  I was.<br><br>Page 383<br>1  Q.  In the summer of 2014, was there an<br>2     entertainment policy in place with<br>3     NBCUniversal?<br>4  A.  There was.<br>5  Q.  And were you familiar with that policy?<br>6  A.  I don't know that I had specifically reviewed<br>7     that particular policy.  I was certainly<br>8     familiar with their -- their previous<br>9     policies --<br>10  Q.  Do you know --<br>11  A.  -- since I had dealt with those before. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 12 Q.  Do you know about how long that NBCUniversal<br>13      had been an insured of OneBeacon?<br>14 A.  I'm told that it was since 2010.<br>15 Q.  Let me hand you what was previously marked in<br>16      the case as Defendant's Exhibit 38, please,<br>17      ma'am.<br>18 A.  Yes, I see the exhibit.<br>19 Q.  Can you identify Exhibit 38 as a true and<br>20      correct copy of the insurance policy issued<br>21      to NBCUniversal Media, LLC, for the policy<br>22      period January 1, 2014 to June 30th, 2015?<br>23 A.  Yes, it appears to be so.<br><br>Page 384<br>22 Q.  Did you have particular contacts with whom<br>23      you worked within NBCUniversal?<br>24 A.  Well, in the entertainment industry,<br>25      sometimes you work directly with the insured,<br><br>Page 385<br>1      but more often you work directly with the<br>2      broker, at least initially when a claim is<br>3      first submitted and the coverage<br>4      determination.   And in this case I had<br>5      primarily worked with Andrea Garber and<br>6      sometimes Susan Weiss on the previous<br>       claims.<br>7      Andrea Garber at that time actually worked<br>8      for Aon, and Susan Weiss was her supervisor.<br>9 Q.  And subsequent to that, did their positions<br>10     change?<br>11 A.  Well, Andrea went in-house for risk control<br>12     for NBC, and Susan Weiss remained as the<br>13     broker at Aon for NBC.<br>14 Q.  Subsequent to that development, did<br>15     Ms. Garber become your contact within<br>16     NBCUniversal and Ms. Weiss become your | |

**396**

| Deposition Designation | Objection & Response |
|---|---|
| 17    contact within Aon? | |
| 18  A.  Yes, that's correct. | |
| 19  Q.  Can you explain what the role of the broker | |
| 20    is in this type of policy? | |
| 21  A.  Well, unlike other areas of insurance, | |
| 22    the broker plays a very key role in | |
| 23    entertainment -- in entertainment insurance. | |
| 24    There are only a handful of brokers who | |
| 25    handle, I would say, 90 percent of the | |
| | |
| Page 386 | |
| 1    entertainment business in the United States. | |
| 2    And the brokers act as an advocate for their | |
| 3    insureds and they play a vital role in the | |
| 4    investigation as well. | |
| 5       So, for example, if a broker submits | |
| 6    a claim to me, I don't call the insured | |
| 7    directly, I call the broker and the broker | |
| 8    supplies information.   And if I say I need to | |
| 9    meet with the insured or talk to the insured | |
| 10    to gather information about the claim, at | |
| 11    least initially the broker will be involved | |
| 12    until at least there's a coverage | |
| 13    determination. | |
| 14       If it's determined that they -- the | |
| 15    claim is actually covered then frequently we | |
| 16    will deal specifically with the insured after | |
| 17    that unless there is some conflict between | |
| 18    what the insured thinks they should be paid | |
| 19    and what the insurer thinks they should be | |
| 20    paid, in which case the broker then gets | |
| 21    involved again. | |
| 22  Q.  And on the NBCUniversal relationship in | |
| 23    particular, were you dealing with the broker? | |
| 24  A.  Oh, yes, always. | |
| 25  Q.  When the Dig claim was submitted, did you | |
| | |
| Page 387 | |
| 1    make a point to review the insurance policy | |

**397**

| Deposition Designation | Objection & Response |
|---|---|
| 2     that was in place?<br>3  A.  Yes, I did.<br>4  Q.  And is Exhibit 38 the document that you<br>5     reviewed?<br>6  A.  Yes, it is.<br><br>Page 389<br>16  Q.  As you progressed in your review of the Dig<br>17     claim, did you determine that there were<br>18     certain parts of Exhibit 38 that were most<br>19     relevant to your work?<br>20  A.  Yes, I did.<br>21  Q.  What were those parts?<br>22  A.  The general conditions page and the extra<br>23     expense form.<br>24  Q.  How did you first learn of the existence of<br>25     the claim on the show Dig?<br><br>Page 390<br>1  A.  Danny Gutterman contacted me, and Susan Weiss<br>2     and Andrea Garber were also on the telephone,<br>3     and they discussed what was happening on the<br>4     ground in Israel.<br>5  Q.  Did Ms. Garber and Ms. Weiss share factual<br>6     information with you in that call?<br>7  A.  Well, what they told me was that they were --<br>8     that there was heavy rocket fire coming from<br>9     Gaza into Israel, and that the amount of<br>10    rocket fire that was occurring made it<br>11    dangerous for them to try to continue to film<br>12    in Tel Aviv and Jerusalem, which were their<br>13    two filming locations.<br>14  Q.  Can you recall any other information they<br>15    shared with you about the safety situation?<br>16  A.  Well, they had been informed by their head of<br>17    security that they could no longer guarantee<br>18    the safety of the casting crew. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|

Page 392

8   Q.   Now, as a representative of the insurance
9        company, do you make any suggestions about
10       production decisions?
11   A.   No, absolutely not.  That's not my job.
12        Creative decisions are left to the -- to the
13        client, to the insured.   It would be -- it
14        wouldn't be appropriate for me to be talking
15        to them about creative decisions.
16   Q.   As a part of this initial conversation, did
17        you discuss your next steps with Ms. Weiss
18        and Ms. Garber?
19   A.   Well, we all agreed that we wanted to have
20        another phone call very soon, and I think we
21        scheduled one -- I think the first call was
22        on a Tuesday, we scheduled another call for
23        Friday to see if there had been some
24        deescalation in the hostilities.

Page 393

4   Q.   Let me hand you what's been marked as
5        Exhibit 232.  Can you identify Exhibit 232 as
6        an e-mail string beginning with the earliest
7        e-mail on July 14th and running through
8        July 15th on an item that was cc'd to you?
9   A.   Yes, that is exactly what this is.  It looks
10       like this is also the first written notice
11       that -- that OneBeacon had of the claim, of
12       the Dig claim, and then there are some
13       subsequent e-mails, an e-mail from Danny to
14       Peter.
15   Q.   Let me direct your attention --
16   A.   Peter Williams.
17   Q.   -- if I can, ma'am, to the second page of
18       this exhibit.  In the middle of the page do
19       you see an e-mail from Susan Weiss dated
20       July 15th, 2014, to Michael J. Arevalo?
21   A.   I do.

| Deposition Designation | Objection & Response |
|---|---|
| 22  Q.  And is this what you're referring to as the<br>23      submission of the claim?<br>24  A.  Yes.<br>25  Q.  At some point in time during your<br>        involvement<br><br>Page 394<br>1       in the claim, did you review this?<br>2   A.  I did, yes.<br>3   Q.  Was this different information than what<br>4       Ms. Weiss or Ms. Garber had provided?<br>5   A.  Well, there was more information, because<br>6       this -- the initial e-mail that Susan sent<br>7       also included an e-mail that Andrea had<br>8       received from their security person, so it<br>9       included information that he had given them<br>10      with regard to the hostilities that were<br>11      occurring in Israel and the fact that he<br>12      didn't think that the situation was likely to<br>13      change and that that increased the level of<br>14      risk.<br>15  Q.  Do you recall receiving any other written<br>16      information about reports on safety and<br>17      security from NBCUniversal?<br>18  A.  No, not that I'm aware of.<br>19  Q.  Was this the totality of written information<br>20      that you had to begin your investigation?<br>21  A.  Yes. |  |

| Deposition Designation | Objection & Response |
|---|---|
| Page 395 | |
| 9   Q.   Let me turn back to the claim being submitted<br>10        to OneBeacon, please, ma'am.  Was an actual<br>11        assignment of the claim made?<br>12   A.   Yes, it was assigned to Danny.<br>13   Q.   And who worked directly on the handling of<br>14        the claim?<br>15   A.   Danny worked on the handling of the claim,<br>16        and I also worked on the handling of the<br>17        claim.  My supervisor, Theresa Gooley, was<br>18        kept in the loop with regard to what we were<br>19        doing in investigating the claim, and we also<br>20        discussed that with Peter Williams.<br>21   Q.   So what role did you play and what role did<br>22        Mr. Gutterman play?<br>23   A.   So we were collaborating, because there was a<br>24        very short time frame here in which to get<br>25        information to the insured.  And because it<br><br>Page 396<br>1        was a volatile situation and changing<br>2        quickly, we both were doing research on what<br>3        exactly was happening in Israel and what had<br>4        been happening in Israel and how that<br>5        situation was developing.<br>6           With regard to the coverage, we were<br>7        both evaluating the policy, I was doing the<br>8        legal research that was involved in<br>9        interpreting the -- the provisions of the<br>10       policy.<br>11   Q.   Eventually, were others at OneBeacon also<br>12        involved in the work on this claim?<br>13   A.   Well, as I said, I kept Theresa Gooley, my<br>14        supervisor, in the loop, and I think at some<br>15        point she talked to Sean Duffy about this.<br>16        Sean Duffy is the head of claim.<br>17   Q.   And why did you keep Ms. Gooley in the<br>        loop?<br>18   A.   Well, NBC is a very important client of ours.<br>19        I knew that -- that if there were going to be | |

| Deposition Designation | Objection & Response |
|---|---|
| 20      a denial of the claim, that they would<br>21      certainly want to involve her and talk to<br>22      her, because that is usual in entertainment<br>23      claims, if you deny a claim, there's going to<br>24      be escalation to your supervisor and they are<br>25      going to want to talk to them, and they would<br><br>Page 397<br>1      also be wanting to talk to Peter Williams, so<br>2      he was also kept in the loop.<br>3   Q.   And what role was Peter Williams playing in<br>4      the overall process?<br>5   A.   He was -- he was merely a sounding board.  I<br>6      mean, we want to keep him in the loop because<br>7      we know that the client is ultimately going<br>8      to be contacting him.    Peter also has<br>9      extensive experience in claims himself.  In<br>10      fact, before I held the position of claim<br>11      lead, he had -- he had held that position<br>12      before himself before he became the president<br>13      of OneBeacon entertainment. But as the<br>14      president of OneBeacon entertainment, he was<br>15      actually on the underwriting side, not on the<br>16      claims side, and he did not have the power to<br>17      actually make a coverage determination.<br><br>Page 398<br>20   Q.   Was Tuesday, July the 15th, the first time<br>21      you can recall receiving information on the<br>22      Dig claim?<br>23   A.   Yes. | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 400 | |

Page 400
4   Q.   So what steps did you actually begin to take
5        that evening?
6   A.   I started researching what was happening on
7        the ground in Israel.  That was the primary
8        focus of my -- of my research.  I don't
9        remember specifically if I looked at the
10       policy that night or if I didn't look at the
11       policy until the next day.

Page 418
8   Q.   Based upon the research that you continued to
9        do after July 15th, was there a deescalation
10       during the month of July at all?
11  A.   No, there was not.

Page 449
4   Q.   Let me hand you Exhibit 243, please, ma'am.
5            Can you identify Exhibit 243 as a
6        Westlaw printout indicating a Westlaw search
7        and an attached document?
8   A.   Yes, that's what it is.
9   Q.   Can you identify this as a portion of your
10       work product that you were conducting in the
11       course of looking at policy language and
12       terms?
13  A.   Yes, it looks like I did this search on
14       July 17th.
15  Q.   And can you read for us the initial search
16       that you have reported here?
17  A.   I'm looking for the term insured or insurance
18       or insurer in the same paragraph as war or
19       warlike in the same paragraph as exclusion or
20       exclude or excluded in the same paragraph as
21       Israel.
22  Q.   Do you recall at what point in the course of
23       your work, specifically focusing on
24       conducting research on the policy language
25       and terms, that you would have conducted this

**403**

| Deposition Designation | Objection & Response |
|---|---|
| Page 450<br>1      search?<br>2  A.  I think that -- based on the specificity of<br>3      the search, this was probably -- this was<br>4      probably one of the -- the -- well, I don't<br>5      know.  It was certainly where I was trying to<br>6      drill down to make -- to see if there was any<br>7      particular case that dealt with the Israeli<br>8      situation --<br><br>Page 451<br>12  Q.  Did you print out all of your searches and<br>13      search results?<br>14  A.  I'm sure that I didn't.  I probably printed<br>15      out -- well, I didn't necessarily print them<br>16      out, but I certainly would send -- as you see<br>17      on this first page, I sent the case to<br>18      myself.  In other words, I sent this under<br>19      the subject heading, "War exclusion," which<br>20      is the title that I put on it, and I sent<br>21      that to myself.<br>22          This particular case, the<br>23      Holiday Inn case, which is what this is, also<br>24      references a variety of different cases that<br>25      also deal with the war exclusion, and I<br><br>Page 452<br>1      looked at all the cases that it referenced as<br>2      well, and then I looked at the cases that<br>3      those cases referenced, which is the usual<br>4      way you would do legal research, and I<br>5      conducted a variety of Westlaw searches to<br>6      see if there was other information there.<br>7  Q.  Would it have been your practice at the time<br>8      to keep electronic copies of every search or<br>9      every case you looked at?<br>10  A.  No. If the information is repetitive, in<br>11      other words, something that I've read in | |

| Deposition Designation | Objection & Response |
|---|---|
| 12      another case, I probably wouldn't have<br>13      printed that case out.<br>14          If there was something new and<br>15      different that I thought was important to my<br>16      analysis, then I might print that case out,<br>17      probably I would.<br>18          But one of the things that I always<br>19      look at is how similar is the situation, the<br>20      factual situation that's set forth in the<br>21      case law to the factual situation I'm<br>22      investigating now.  Because if the factual<br>23      situation is highly different than what the<br>24      court is saying about the exclusion, might<br>25      not apply to this situation, and -- and in<br><br>Page 453<br>1      that case there's a likelihood that I<br>2      wouldn't -- I wouldn't print it out, because<br>3      it's not the same situation, the same -- the<br>4      same language would not apply.<br>5  Q.  Did you consult other sources besides case<br>6      law in your overall research about policy<br>7      language and terms?<br>8  A.  Yes.  I -- I know that I looked at Appleman<br>9      on Insurance, I looked at other -- I probably<br>10     looked at other treatises as well.  There are<br>11     a variety of insurance treatises that are<br>12     also available through Westlaw and other<br>13     sources to find out as much as I could about<br>14     this exclusion.<br>15  Q.  Did you refer to dictionary definitions or<br>16     other discussions of definitions?<br>17  A.  Yes.  I looked at dictionary definitions of<br>18     war and warlike, and probably of insurrection<br>19     and rebellion as well.<br>20  Q.  Did you consult multiple different<br>21     dictionaries in order to do that?<br>22  A.  I did. | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 455 | |
| 12  Q.  Let me hand you what's been marked as | |
| 13       Exhibit 244, please, ma'am. | |
| 14            Can you identify Exhibit 244 as an | |
| 15       e-mail that you sent to Theresa Gooley? | |
| 16  A.  Yes. | |
| 17  Q.  And what were you inquiring about in this | |
| 18       e-mail, please, ma'am? | |
| 19  A.  It says, "I want to make sure that OBE takes | |
| 20       a position that is consistent with the rest | |
| 21       of OneBeacon in interpreting the exclusion | |
| 22       for warlike actions by a military force.  I'm | |
| 23       thinking that tech or other business units | |
| 24       might also have had claims arising from the | |
| 25       Israeli/Hamas conflict. Do you have time for | |
| | |
| Page 456 | |
| 1        a quick call to discuss how to get continuity | |
| 2        among business units?" | |
| 3   Q.  Did you follow up with Ms. Gooley about this | |
| 4        request? | |
| 5   A.  I did. | |
| 6   Q.  Did you receive a response? | |
| 7   A.  She could not find any other group that had | |
| 8        interpreted this particular exclusion. | |
| | |
| Page 467 | |
| 7   Q.  By July the 16th, do you have any | |
| 8        recollection about your observation on the | |
| 9        potential applicability of the war exclusion? | |
| 10  A.  Well, at that point I was clearly considering | |
| 11       them, because I wouldn't have sent them | |
| 12       otherwise. | |
| 13  Q.  And do you recall your thought process by | |
| 14       that point in time? | |
| 15  A.  Well, at that point I had already started | |
| 16       looking at what was actually happening in | |
| 17       Israel at this time and what had led up to | |
| 18       the current conditions in Israel.  And it | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 19    appeared to me that what was happening was a<br>20    war or warlike action certainly.<br><br>Page 470<br>4    Q.   What facts had you gathered that caused you<br>5          to analyze the warlike actions provision as<br>6          you did?<br>7    A.   Does it look like a war, does it talk like a<br>8          war, does it walk like a war.  All of these<br>9          indicia were there, so this was a warlike<br>10        action.<br>11   Q.   Did you consider the provision about warlike<br>12        to be broader than war?<br>13   A.   Yes.<br>14   Q.   And why was that?<br>15   A.   Because the way that -- the definition of<br>16        war, as set forth in a variety of -- of<br>17        places, sometimes means that you have to<br>18        actually have two separate sovereigns that<br>19        are -- are attacking each other.<br>20              And, clearly, in this situation, not<br>21        everyone would recognize Hamas as a sovereign<br>22        state or as a separate entity, in spite of<br>23        the fact that the UN Assembly in 2012 had<br>24        recognized Palestine as a nonmember observer<br>25        state.  So, you know, there could be push<br><br>Page 471<br>1          back with regard to is this really a war.<br>2              It's not a declared war, but one of<br>3          the things that the case law talked about is<br>4          that it doesn't have to be a declared war.<br>5          For example, there's the Korean conflict, we<br>6          obviously talk about that as the Korean war<br>7          even though there was no declared war during<br>8          that conflict. | |

| Deposition Designation | Objection & Response |
|---|---|
| 9  Q.  Do all definitions of war require the<br>10      participation of a sovereign?<br>11  A.  No, not necessarily.  Or it could also -- it<br>12      could also mean a sovereign just on one side,<br>13      a quasi-sovereign on the other, or simply<br>14      another entity on the other side.<br>15  Q.  What facts had you gathered that affected the<br>16      way that you were interpreting Part 3 of the<br>17      war exclusions?<br>18  A.  Well, Part 3, insurrection, rebellion,<br>19      revolution, usurped power in some instances<br>20      are defined as sort of the ramping up to a<br>21      war by entities that are all contained in the<br>22      same country.  So these are sort of what --<br>23      what you're leading up to a civil war or<br>24      to a rebellion within the same country.<br>25          In other words, these are two -- the<br><br>Page 472<br>1      citizenry within the same country, one aspect<br>2      of the citizenry is rising up against the<br>3      government.<br><br>22          Can you identify Exhibit 62 as an<br>23      e-mail string which culminates in a message<br>24      from Susan Weiss to and to Mr. Gutterman<br>25      dated July the 17th, 2014?<br><br>Page 473<br>1  A.  Yes.<br>2  Q.  Did you receive this e-mail?<br>3  A.  I did.<br>4  Q.  What was Ms. Weiss reporting to you?<br>5  A.  Well, we had a meeting scheduled for the<br>6      following day.  This was on July 17th, which<br>7      was a Thursday, and we had a call already<br>8      scheduled for the 18th, and so she was<br>9      conveying that they wanted to talk to us<br>10     before the next day, that she wanted -- |  |

| Deposition Designation | Objection & Response |
|---|---|
| 11     that -- that things had transpired and they | |
| 12     wanted to talk now. | |
| | |
| 24  Q.  Let me hand you Exhibit 249, please, ma'am. | |
| 25     Can you identify Exhibit 249 as a string of | |
| | |
| Page 474 | |
| 1     e-mails culminating in a message from | |
| 2     Ms. Weiss to Ms. Garber and you and | |
| 3     Mr. Gutterman copied to Mr. Williams setting | |
| 4     up a call time? | |
| 5  A.  Yes. | |
| 6  Q.  And to the best of your recollection, is | |
| 7     4:00 p.m. pacific time on July the 17th the | |
| 8     time that you spoke with your insured and | |
| 9     broker? | |
| 10  A.  Yes. | |
| 11  Q.  What information did Ms. Weiss or Ms. Garber | |
| 12     share as part of the call? | |
| 13  A.  At that time they shared with us that they | |
| 14     had decided to move the production altogether | |
| 15     based on the fact that there had been no | |
| 16     deescalation of hostilities between Hamas and | |
| 17     Israel, and because it did not appear that | |
| 18     there was going to be a deescalation any time | |
| 19     soon. | |
| 20  Q.  Was the decision to move the production new | |
| 21     information to you? | |
| 22  A.  I don't remember specifically if Ms. Garber | |
| 23     had mentioned it in our first call, she may | |
| 24     have, that if it didn't deescalate that they | |
| 25     might think about moving the production.  I | |
| | |
| Page 475 | |
| 1     just don't remember. | |
| 2         If -- I think that I -- I wrote in | |
| 3     my coverage letter what was discussed in each | |
| 4     of those calls, so that would probably help | |

| Deposition Designation | Objection & Response |
|---|---|
| 5     me remember.  But she might have mentioned<br>6     it.<br><br>13  Q.  And did Ms. Weiss or Ms. Garber give you any<br>14     more factual detail about the reasons that<br>15     that decision was made?<br>16  A.  Again, as I said, it was because there had<br>17     been no deescalation, that things continued<br>18     to be unsafe, it didn't look like things were<br>19     going to change any time soon, so they --<br>20     they talked about where they would<br>21     potentially move the production.  And I know<br>22     they were talking about moving it perhaps to<br>23     New Mexico, perhaps to another -- perhaps<br>24     another Middle Eastern country or -- or<br>25     another -- another foreign country for sure.<br><br>Page 476<br>1  Q.  Did they share    other details with you during<br>2     that call that you can remember?<br>3  A.  Well, I know I shared with them that there<br>4     was a location scout that they shouldn't use<br>5     in New Mexico, because I had had issues with<br>6     him before in another claim.  And just that<br>7     they wanted to get it up and running as soon<br>8     as possible.  They wanted to know if the<br>9     claim was going to be covered and they asked<br>10    me specifically if it was going to be<br>11    covered.<br>12  Q.  Did you give a response?<br>13  A.  I told them that we were considering the<br>14    applicability of the war exclusion and that<br>15    we were considering it, we hadn't made a<br>16    final determination.  They wanted to know<br>17    when we were going to make the final<br>18    determination.<br>19       Susan Weiss specifically asked if we<br>20    had gotten an outside coverage determination,<br>21    I think.  I'm not sure if she did that in | |

| Deposition Designation | Objection & Response |
|---|---|
| 22     that phone call or in the following phone<br>23     call.<br>24       But neither one of them were happy<br>25     with the fact that we might apply the war<br><br>Page 477<br>1     exclusion.  This was something that<br>2     distressed them.<br>3       They continued to emphasize that<br>4     Hamas was a terrorist organization, and if it<br>5     was a terrorist organization then this was an<br>6     act of terrorism, it was not a war, nor could<br>7     it be a war, nor could it be warlike actions<br>8     or any of the rest of the portions of the war<br>9     exclusion.<br>10  Q.  As a part of that call, did you explain to<br>11     them the analysis that you had performed to<br>12     that point either in terms of the facts or<br>13     the policy language?<br>14  A.  You know, they were pretty upset, so I'm not<br>15     sure how much detail I actually went into at<br>16     that point. I mean, I think that we did talk<br>17     about the fact that, you know, this looks<br>18     like a war, there are gun boats, there are<br>19     air strikes, there are tanks, there are --<br>20     are all of these other things that are<br>21     happening, you know, they're -- they're<br>22     invading Gaza, there are, you know, thousands<br>23     of troops on the ground, and that sort of<br>24     thing.<br>25       But they just continued to emphasize<br><br>Page 478<br>1     that they thought that because Hamas was a<br>2     terrorist organization, this couldn't<br>3     possibly be a war, a warlike action or any of<br>4     the rest of the exclusion.<br>5  Q.  As of the time you had that conversation on | |

| Deposition Designation | | Objection & Response |
|---|---|---|
| 6 | July the 17th with Ms. Weiss and Ms. Garber, had OneBeacon made a final claim decision? | |
| 7 | | |
| 8 A. | No. We were still considering it, we were looking at it. | |
| 9 | | |
| | | |
| Page 480 | | |
| 19 Q. | Did Mr. Gutterman ever indicate to you that he disagreed with any of the analysis that you performed? | |
| 20 | | |
| 21 | | |
| 22 A. | No, he did agree. | |
| 23 Q. | Did Mr. Williams ever indicate to you that he disagreed with any of  the analysis you performed? | |
| 24 | | |
| 25 | | |
| | | |
| Page 481 | | |
| 1 A. | No, he also agreed. | |
| 2 Q. | Did Ms. Gooley ever indicate to you that she disagreed with any of the analysis you performed? | |
| 3 | | |
| 4 | | |
| 5 A. | No. All of us agreed that the war exclusion applied.  We did not even think this was a close call. | |
| 6 | | |
| 7 | | |
| 8 Q. | How confident did you feel in the analysis that you performed? | |
| 9 | | |
| 10 A. | I felt very confident. | |
| 11 Q. | When the decision was eventually made to deny | |
| 12 | the claim, are you the person who made the | |
| 13 | decision? | |
| 14 A. | I am. | |
| | | |
| Page 482 | | |
| 11 | Can you identify Exhibit 250 as an e-mail string which culminates in a message from you to Ms. Weiss, Ms. Garber and Mr. Gutterman setting up arrangements for a conference call on July the 22nd? | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 A. | Yes.  So this was the following Tuesday, and we were setting up a conference call. | |
| 17 | | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 18  Q.  So July the 22nd was one week since your 19       first interaction with Ms. Weiss and 20       Ms. Garber? 21  A.  That's correct. 22  Q.  Did you have an anticipated agenda to cover 23       on the July 22nd call? 24  A.  Yes.  I wanted to tell them that the claim 25       would not be covered. | |

Page 483

| | |
|---|---|
| 9   Q.  What did you cover when the call on July the 10       22nd occurred? 11  A.  Well, again, we talked about the facts that 12       we had gathered, we talked about what our 13       process was in evaluating the claim. Both 14       Susan and Andrea were not happy with the 15       decision.  And, again, at some point in time 16       Susan was asking me if we had gotten an 17       outside coverage opinion, and I don't 18       remember if it was in the previous call or if 19       it was in this call.  But -- but that was 20       something that -- that she wanted to know, in 21       other words, was I only relaying upon my own 22       judgment or had I gotten additional advice 23       from outside coverage counsel. 24  Q.  Did you discuss your analysis and the reasons 25       that you had reached your conclusions on that | |

Page 484

| | |
|---|---|
| 1       call? 2   A.  I believe so, yes. 3   Q.  Did Ms. Weiss or Ms. Garber make any specific 4       responses to you about the specifics you 5       described? 6   A.  No. They weren't happy with the decision and 7       it was not an extremely lengthy call.  You 8       know, again, they emphasized that this 9       exclusion could not apply, because Hamas is a | |

| Deposition Designation | Objection & Response |
|---|---|
| 10    terrorist organization.  So they told me, you<br>11    know, that they did not agree with my<br>12    analysis, they did not agree that the war<br>13    exclusion had any applicability in this<br>14    situation, and that this was an act of<br>15    terrorism, that an act of terrorism is what<br>16    had caused them to move the production and,<br>17    therefore, the war exclusion could not apply.<br>18  Q.  Did you discuss with them any research or<br>19    analysis that you had performed in regard to<br>20    Hamas or Hamas's actions?<br>21  A.  I did, yes.<br>22  Q.  And what did you say?<br>23  A.  I can't tell you as I sit here today exactly<br>24    what I told them, but I'm sure I explained<br>25    how I had reached this conclusion.  But as I<br><br>Page 485<br>1    said, it wasn't a very lengthy call.  Once<br>2    they heard what my decision was and told me<br>3    that they thought I was wrong and we had<br>     some<br>4    discussion, they -- you know, they ended the<br>5    call.<br>6  Q.  Did the call end with a to-do list for either<br>7    one of you?<br>8  A.  Not that I recall.<br>9  Q.  What was going to occur next?<br>10  A.  They wanted a written decision and they<br>11    wanted a written decision as soon as<br>12    possible.<br>13  Q.  And did you commit to get them a written<br>14    decision as soon as you could?<br>15  A.  I did.<br><br>25  Q.  Ms. Johnson, did you prepare a written denial<br><br>Page 486<br>1    letter for the Dig claim? | |

| Deposition Designation | Objection & Response |
|---|---|

2   A.  I did.

Page 489

11  Q.  Let me hand you what's been previously marked

12      as Defendant's Exhibit 36, please, ma'am.

13        Can you identify this as an e-mail

14      that you sent to Ms. Weiss and Ms. Garber

15      attaching a coverage determination letter?

16  A.  Yes, it is -- it is sending them our coverage

17      determination.

18  Q.  And let me also hand you what's been marked

19      as Defendant's Exhibit 37, please, ma'am.

20        Can you identify Exhibit 37 as a

21      corrected version of the coverage

22      determination letter you sent to Ms. Weiss

23      and Ms. Garber?

24  A.  Yes, it appears that I noticed that the

25      automatic page numbering did not seem to be

Page 490

1      working, so I fixed it.

2  Q.  All right.  Let me ask you to refer to the

3      attachment to this letter, please, ma'am.

4        Is this the final version that you

5      provided to the insured and its broker?

6  A.  Yes, it appears to be so.

7  Q.  Did you write this letter?

8  A.  I did.

9  Q.  And is this your analysis that you were

10     providing to your insured?

11  A.  Yes, it is.

12  Q.  Did you provide notice to the insured of all

13     parts of the war exclusion having

14     applicability to the facts of the claim?

15  A.  Yes.  I cited in the letter the portions of

16     the war exclusion that I thought had

17     potential applicability here, yes.

18  Q.  Was the discussion that you provided in the

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 19      written coverage letter consistent with the<br>20      information that you had previously shared<br>21      verbally?<br>22   A.   Yes.<br><br>Page 491<br>1   Q.   Let me hand you Exhibit 253, please, ma'am.<br>2         Can you identify Exhibit 253 as an<br>3      e-mail sent by Andrea Garber to you dated<br>4      July 31st, 2014?<br>5   A.   Yes, it's a letter from her saying that they<br>6      disagree with my analysis and my conclusions<br>7      and they will prepare a substantive response<br>8      which they expect to provide to me within the<br>9      next week.<br><br>23   Q.   Let me hand you Exhibit 254, please, ma'am.<br>24   A.   Yes.<br>25   Q.   Can you identify Exhibit 254, please?<br><br>Page 492<br>1   A.   Yes.  It is an e-mail from Bertha Garcia to<br>2      me with a cc to Tania Hoff, Andrea Garber and<br>3      Lucia Coyoca.    And it says, "Please see the<br>4      attached letter."  She is attaching a letter<br>5      signed by Ms. Coyoca dated August 13th,<br>       2014.<br>6   Q.   Was this the response that the insured<br>7      indicated that you were going to be<br>8      receiving?<br>9   A.   Yes.<br>10   Q.   What did you do in terms of additional work<br>11      or analysis after receiving the letter<br>12      attached to Exhibit 254?<br><br>Page 495<br>14   Q.   Did you prepare a letter to go back to the<br>15      insured to document your reconsideration of | |

| Deposition Designation | Objection & Response |
|---|---|
| 16    the claim? | |
| 17  A.  I did. | |
| | |
| 21  Q.  Let me hand you Exhibit 255, please, ma'am. | |
| 22        Can you identify Exhibit 255? | |
| 23  A.  Yes. | |
| 24  Q.  What is it? | |
| 25  A.  It is my supplemental coverage letter. And I | |
| | |
| Page 496 | |
| 1      was sending it to Susan Weiss telling her | |
| 2      that I intended to send it to NBC's counsel, | |
| 3      because it is my practice that if you're | |
| 4      going to deny a claim, you let the broker | |
| 5      know and certainly you -- it's good to alert | |
| 6      them as to what your arguments are so if they | |
| 7      have pushback, they can give you that | |
| 8      pushback before you send it on to the | |
| 9      insured. | |
| 10  Q.  Where did you obtain the factual information | |
| 11      that you recited in this letter in terms of | |
| 12      the conflict? | |
| 13  A.  From news organizations, certainly. It looks | |
| 14      like I cite some case law.  I cite the policy | |
| 15      again, and the Zanotti report again.  So it | |
| 16      looks like I was referring to the same types | |
| 17      of research that I had done before. | |
| | |
| Page 499 | Defendant's Objections: |
| 13  Q.  Would you please describe the involvement | (499:13-25) Other claims are |
|     you | not relevant |
| 14      had with the larger NBCUniversal relationship | FRE 401, 402 |
| 15      on claims?  Were you directly involved in | |
| 16      other large claims that were submitted on the | Plaintiffs' Response: |
| 17      various policies? | Relevant to bad faith |
| 18  A.  Yes.  As -- as I explained, after Sandy, | |
| 19      there were several productions that were | |
| 20      shutdown for a period of time, and those, you | |
| 21      know, were claims that we paid quite a bit of | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 22      money on.And then there was cast -- a<br>23      couple of cast claims that involved two<br>24      different stars on a scripted production, and<br>25      we paid a substantial amount of money on<br><br>Page 500<br>1      those claims.<br><br>24   Q.   When plaintiff's counsel conducted your<br>25      examination in this case, she showed you a<br><br>Page 501<br>1      document entitled, "General Claims<br>2      Practices."  Do you recall those?<br>3   A.   I do.<br>4   Q.   Are those requirements that are in effect?<br>5   A.   No, they're not requirements.<br>6   Q.   How do you describe them?<br>7   A.   I would say that they're guidelines.  They're<br>8      not something that -- they're not rules,<br>9      they're not hard and fast.  They're --<br>10      they're guidelines of things that claim<br>11      handlers should consider and think about with<br>12      regard to how to handle claims, but each<br>13      claim is fact specific, and therefore, you<br>14      know, there's no set of rules that you can<br>15      say that apply in absolutely every situation.<br><br>Page 504<br>3   Q.   Ms. Johnson, when did you first begin<br>4      considering application of the war exclusion?<br>5   A.   Well, I can't tell you the exact moment in<br>6      time that that occurred.It would either<br>7      have been -- it would probably be either in<br>8      the evening of the 15th or perhaps on the<br>9      16th.  I can't tell you that for sure,<br>10      though, I just don't recall.<br>11   Q.   Could you please take a look again at<br>12      Exhibit 248.  And it has Bates label | |

| Deposition Designation | Objection & Response |
|---|---|
| 13      ATL001101. | |
| 14   A.   Yes. | |
| 15   Q.   Ms. Johnson, in this e-mail you appear to be | |
| 16      sending Mr. Williams and Mr. Gutterman the -- | |
| 17      an exclusion under the general conditions of | |
| 18      the policy, that's what you testified  to | |
| 19      previously; is that correct? | |
| 20   A.   That's correct. | |
| 21   Q.   And this excerpt contains four of the war | |
| 22      exclusions; is that right? | |
| 23   A.   That's correct. | |
| 24   Q.   And this e-mail is time-stamped 12:51 a.m., | |
| 25      GMT; do you see that? | |
| | |
| Page 505 | |
| 1   A.   I do. | |
| 2   Q.   Did you consider application of the war | |
| 3      exclusions prior to the time you actually | |
| 4      sent this e-mail? | |
| 5   A.   Well, obviously I must have,  otherwise I | |
| 6      would not have sent the exclusion to -- in | |
| 7      this e-mail. | |
| 8   Q.   At the time that you sent this e-mail, had | |
| 9      you reviewed the Jim Zanotti, Congressional | |
| 10      Research Service report that's been marked as | |
| 11      Exhibit 241? | |
| 12   A.   I'm sorry, Ms. Coyoca, I just don't remember. | |
| | |
| Page 511 | |
| 17   Q.   To your knowledge, Ms. Johnson, was there any | |
| 18      filming of the television production Dig that | |
| 19      was scheduled to take place in the Gaza | |
| 20      strip? | |
| 21   A.   No, not to my knowledge. | |
| 22   Q.   To your knowledge, Ms. Johnson, was there a | |
| 23      unity government agreement entered into in | |
| 24      June of 2014 between Hamas and Fatah? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 512</u><br>2       THE WITNESS:  Well, as I<br>3    previously testified, in -- in the research<br>4    that I did I did learn that Hamas and Fatah,<br>5    who were two separate factions within the<br>6    Palestinian government, had come together to<br>7    try to form some kind of agreement between<br>8    each other in June.<br><br><u>Page 513</u><br>1  Q.  You did not spend a lot of time looking into<br>2    whether or not a unity agreement had been<br>3    entered into between Fatah and Hamas in June<br>4    of 2014; is that correct?<br><br>7       THE WITNESS:   I did not spend a<br>8    lot of time looking at that, no.I knew<br>9    that -- that tensions had -- had increased<br>10   between Israel and -- and Hamas and Fatah<br>11   based on the fact that they were forming that<br>12   agreement, but -- but -- but beyond that, I<br>13   did not look at it with any specificity.<br><br>15  Q.  During your direct examination -- or, excuse<br>16    me, during your cross-examination by Ms. Reed<br>17   this morning, you testified that you had<br>18   reviewed several articles and looked at<br>19   various types of information online by<br><br>23       THE WITNESS:  I did a lot of<br>24   online research.<br><br><u>Page 524</u><br>6  Q.  Ms. Johnson, did the article that you<br>7    reviewed that's set forth in Exhibit 236,<br>8    which is 4487 --<br>9  A.  I'm looking at the exhibit. | |

| Deposition Designation | Objection & Response |
|---|---|
| 10  Q.   -- did that article refer to the<br>11         Hamas/Israeli conflict as being a war?<br>12  A.   So this was on July 9th, two days after<br>13         Israel had started Operation Protective Edge.<br>14         (Reviews document.)  I do not see a reference<br>15         to it as being a war.<br>16  Q.   Can you please take a look at page 5 of 9 in<br>17         the article that's Bates labeled ATL004491.<br>18  A.   (Complies.)  I'm looking at that page.<br>19  Q.   Can you please read aloud the sentence that<br>20         appears right below the type in bold, "Read<br>21         more, Israel prepares for escalation amid<br>22         exchange of rocket fire"?<br>23  A.   "The military said it was seeking to retrieve<br>24         stability to the residents of southern<br>25         Israel, eliminate Hamas's capabilities and<br><br>Page 525<br>15  Q.   Well, you would agree with me, would you<br>           not,<br>16         that this indicates that the military said<br>17         that one of its goals was to destroy the<br>18         terror infrastructure?  It says that, does it<br>19         not?<br><br>22         THE WITNESS:  That's part of what<br>23         it says, certainly.<br><br>Page 526<br>12  Q.   Could you please tell me where in this<br>13         article it refers to the Israeli/Hamas<br>14         conflict as constituting a war?<br><br>18         THE WITNESS:  Well, I mean, I can<br>19         sit here and read this whole thing, but I'm<br>20         assuming that because you're asking me that,<br>21         that it does not say that it is a war.<br><br>23  Q.   Well, I -- I would just like your knowledge. | |

| Deposition Designation | Objection & Response |
|---|---|
| 24     As of July of 2014 when you were reviewing<br>25     the article, did you believe that this<br><br>Page 527<br>1     article made reference to a war?<br>2   A.   Well, I'll sit here and read the entire<br>3     article and we'll see.     This is dated the 8th<br>4     of July, 2014.  (Reviews document.)<br>5       This article states that with regard<br>6     to Israel, that, "The Army is preparing for<br>7     all possible scenarios, including an invasion<br>8     of a ground" -- "or a ground operation."<br>9       Hamas said that, "The massacre of<br>10    children is a horrendous war crime and all<br>11    Israelis have now become legitimate targets<br>12    for resistance."  So in that sense, they were<br>13    referring to it as war in that quote.<br>14       But does the article itself<br>15    characterize it as a war, no, it does not.<br><br>Page 528<br>3   Q.   Could you please take a look at Exhibit 237.<br>4     And that's the article that appears at<br>5     ATL00442.<br>6   A.   Yes, I'm looking at it.<br>7   Q.   Can you please tell me where in this article<br>8     it refers to the Israeli/Hamas conflict as<br>9     being a war?<br><br>13       THE WITNESS: (Reviews document.)<br>14    This article refers to the fact that the<br>15    state department spokesman Jen Psaki said<br>16    that, "Israel has the right to defend itself,<br>17    but that no one wants to see a ground war."<br>18    (Reviews document.)<br>19       The article that we just referred to<br>20    is dated July 15th, 2014, so the reference<br>21    that I made to war is the only use of that<br>22    word in this article that I could find in my | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 23      brief review of it at this time. | |
| 25   Q.   As of July 15, that was the date that | |
| _Page 529_ | |
| 1        NBCUniversal submitted the claim to Atlantic; | |
| 2        is that correct? | |
| 3   A.   That's correct. | |
| 7   Q.   On page 2 of 7 of that article, just slightly | |
| 8        past midway down there is a quote from the | |
| 9        Ezzedine Al-Qassam Brigades.  It begins, | |
| 10       "They will not dream." Do you see that? | |
| 11   A.   Yes. | |
| 12   Q.   Could you please read that aloud? | |
| 13   A.   It says, "They will not dream of a calm if | |
| 14       they do not stop their aggression towards our | |
| 15       people, said Ezzedine Al-Qassam" -- "said the | |
| 16       Ezzedine Al-Qassam Brigades statement, and | |
| 17       stop attempting to break our unity | |
| 18       government." | |
| 19   Q.   Actually, I'm not sure that's exactly what | |
| 20       the quote reads.  What I see the words | |
| 21       appearing as being, "They will dream of a | |
| 22       calm if they do not stop their aggression | |
| 23       towards our people," close quotes, "The | |
| 24       Ezzedine Al-Qassam Brigades statement said," | |
| 25       begin quotes, "And stop attempting to break | |
| _Page 530_ | |
| 1        our unity government," close quotes.  Is that | |
| 2        correct? | |
| 3   A.   Yes, you read it correctly. | |
| 4   Q.   There's a reference here to the unity | |
| 5        government, is there not? | |
| 6   A.   There is. | |
| 7   Q.   So does this refresh your recollection that | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 8     as of the date of this article, there was in<br>9     fact a unity government that had been agreed<br>10    to between Hamas and Fatah?<br><br>14     THE WITNESS:  That is what they<br>15   say the statement said.  The previous article<br>16   that you had me look at referred to it as a<br>17   tentative agreement.<br><br>19  Q.  Do you know one way or the other as to<br>20     whether the unity agreement had been --<br>21     excuse me, a unity government had been<br>       agreed<br>22     to between Hamas and Fatah as of<br>23     June 30, 2014?<br><br>Page 531<br>1     THE WITNESS:  I think I've already<br>2    answered that question.  Can I tell you with<br>3    absolute certainty whether they had agreed to<br>4    that, no, I cannot.<br><br>Page 550<br>20  Q.  Ms. Johnson, do you know the date of the<br>21     Israel ground incursion into Gaza?<br>22  A.  The exact date of the ground incursion I<br>23     believe was either the 16th or the 17th.  I<br>24     can't be sure, but they were -- they were<br>25     leading up to that.  They were amassing their<br><br>Page 551<br>1     troops, they were saying that they were going<br>2    to do the incursion.  And I think actually in<br>3    the last segment that we watched with<br>4    Chris Hayes it shows that they actually were<br>5    starting to invade.<br>6  Q.  Is it your position that the ground incursion<br>7     occurred on July 16? | |

| Deposition Designation | Objection & Response |
|---|---|
| 10        THE WITNESS:  I'm sorry, I don't<br>11        remember specifically. If you have something<br>12        you would like to give me to refresh my<br>13        recollection, I would be happy to look at it.<br><br>Page 553<br>4    Q.   When you were undertaking your analysis, your<br>5        coverage analysis, did you look at the ISO<br>6        wording for the warlike action exclusion that<br>7        is promulgated by ISO?<br><br>10        THE WITNESS:  I did not. | |

7060055/015825

**WANDA PHILLIPS—May 31, 2017**

| Deposition Designation | Objection & Response |
|---|---|
| Plaintiff's Designation of Wanda Phillips<br>5:9-17; 13:18-25-14:1-16; 19:16-25-20:1-23; 48:19-22; 59:7-25-61:11; 63:1-64-9; 64:15-25; 65:3-68:13; 75:5-76:18; 76:22-77:11; 77:15-25; 78:1-23; 79:4-80:5; 88:12-91:17; 97:5-98:20; 103:20-116:10; 121:9-122:2; 122:20-123:2; 123:21-130:20; 134:8-136:9; 137:16-24; 152:13-155:4; 164:6-166:1; 166:16-25; 167:21-168:14; 169:17-170-14; 173:3-175:19; 176:3-177:1; 194:12-195:25; 197:4-216:1; 219:22-223:7; 223:19-230:19; 236:12-242:9; 243:6-21; 244:4-249:5; 250:2-254:9; 256:2-10; 257:3-258:10; 269:4-25; 270:5-273:10. | |
| Page 5<br>9  Q.  Good morning, Ms. Phillips.<br>10  A.  Good morning.<br>11  Q.  As I indicated, my name is Lucia<br>12      Coyoca, and I represent the plaintiffs in this<br>13      matter. Could you please state your full name<br>14      and address for the record.<br>15  A.  My name is Wanda Lide Phillips. My<br>16      address is 56 Locust Street, Jersey City, New<br>17      Jersey, 07305. | Defendant's Objections:<br><br>Plaintiff's Response: |
| Page 13<br>18  Q.  Where did you go after 1996?<br>19  A.  Entertainment Brokers International.<br>20  Q.  How long did you work at EBI?<br>21  A.  Up until May of last year when EBI<br>22      became OneBeacon.<br>23  Q.  So until approximately May 2016?<br>24  A.  May 2016, correct. It may have been<br>25      April. The end of April, early May. | Defendant's Objections:<br><br>Plaintiff's Response: |
| Page 14<br>1  Q.  Okay. So you originally went to work | Defendant's Objections: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 2       for EBI, and at some point EBI was purchased by<br>3       OneBeacon. Is that correct?<br>4    A.   That's correct.<br>5    Q.   When you first went to work for EBI,<br>6       what was your title?<br>7    A.   I don't recall the exact title.<br>8    Q.   What did you do for the company?<br>9    A.   I was an underwriter there as well.<br>10   Q.   Again specializing in entertainment<br>11      risks?<br>12   A.   That's correct.<br>13   Q.   What was your final position with<br>14      OneBeacon before you left?<br>15   A.   Underwriting, senior underwriting<br>16      manager. | Plaintiff's Response: |
| Page 19<br>16   Q.   Now you indicated that to some degree<br>17      your business, excuse me, your job<br>18      responsibilities included development of new<br>19      business. Is that correct?<br>20   A.   That's correct.<br>21   Q.   Did you work on the NBC Universal<br>22      matter?<br>23   A.   Yes.<br>24   Q.   What was your role?<br>25   A.   I was the underwriter. | Defendant's Objections: (19:16-25) Policy negotiations, underwriting, communications with NBC regarding same not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403<br><br>Plaintiff's Response: Relevant to bad faith |
| Page 20<br>1    Q.   You were the underwriter for their<br>2       television production portfolio insurance?<br>3    A.   That's correct.<br>4    Q.   Did you have a role in any other | Defendant's Objections: (20:1-23) Policy negotiations, underwriting, communications with NBC regarding same not relevant |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 5     areas of NBC Universal's insurance?<br>6  A.   No.<br>7  Q.   How did you come to be involved in<br>8      the NBC Universal account?<br>9  A.   I was approached by one of their<br>10     brokers at Aon/Albert G. Ruben.<br>11  Q.   Who approached you?<br>12  A.   George Walden.<br>13  Q.   Approximately when did Mr. Walden<br>14     approach you?<br>15  A.   Again, I can't be 100 percent sure of<br>16     the dates but around 2009.<br>17  Q.   What did Mr. Walden talk to you about<br>18     when he first approached you about NBC<br>      Universal?<br>19  A.   The initial conversations were geared<br>20     to would we have an interest in taking a<br>      look at<br>21     their program from the standpoint of being<br>      the<br>22     underwriter or the carrier for the television<br>23     portfolio.<br><br>Page 48<br>19  Q.   Do you specifically recall that there<br>20     were multiple drafts going back and forth<br>      prior<br>21     to the time the final policy was issued?<br>22  A.   I remember seeing different drafts. | to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403<br><br>Plaintiff's Response: Relevant to bad faith<br><br><br><br><br><br><br>Defendant's Objections: (48:19-22) Policy negotiations, drafts not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Undisputed the Policy was issued subject to terms and conditions. Fed. R. Evid. 401; 403<br><br><br>Plaintiff's Response: |

**428**

| Deposition Designation | Objection & Response |
|---|---|
| | Relevant to bad faith |
| **Page 59** | **Defendant's Objections:** |
| 7  Q.  So you have indicated that television | (59:7-25) Policy negotiations, |
| 8      shows or declared productions were added to the | underwriting discussions not relevant to any of Plaintiffs' |
| 9      policy on a show by show basis. Is that correct? | claims for breach of the contract or duty of good faith |
| 10  A.  That's correct. | or damages; this testimony is |
| 11  Q.  And how did that process work? | a waste of time; causes |
| 12  A.  Each television production would have | confusion; is prejudicial. |
| 13      a separate declaration. That declaration would | Fed. R. Evid. 401; 403 |
| 14      be submitted to me to review to determine if we | |
| 15      were in agreement to provide the same coverages | **Plaintiff's Response:** |
| 16      that was in the master policy for that individual | Relevant to bad faith |
| 17      production. | |
| 18  Q.  And if a television production was | |
| 19      submitted to you, typically where would that | |
| 20      submission come from? | |
| 21  A.  The broker, Aon. | |
| 22  Q.  Okay. And if there was a production | |
| 23      that OneBeacon did not want to insure, did it | |
| 24      have that option to decline? | |
| 25  A.  Absolutely. | |
| **Page 60** | **Defendant's Objections:** |
| 1  Q.  Did OneBeacon have the option to | (60:1-25) Policy negotiations, |
| 2      decline to insure a production if it was tendered | underwriting discussions not relevant to any of Plaintiffs' |
| 3      to OneBeacon? | claims for breach of the |
| 4  A.  That's correct. I think the policy | contract or duty of good faith |
| 5      wording says productions as declared and accepted | or damages; this testimony is a waste of time; causes |
| 6      by us. | confusion; is prejudicial. |

**429**

| Deposition Designation | Objection & Response |
|---|---|
| 7  Q.  Did OneBeacon also have the<br>8       opportunity to, if it chose to, request that<br>9       there be modifications to the master policy<br>         terms<br>10      in order to accept an insured production, a<br>11      production as an insured production?<br>12  A.  So what we would do is if there was a<br>13      declaration in which we wanted to change the<br>14      terms, the terms would be changed for that<br>15      particular declaration. We wouldn't change the<br>16      master policy wording.<br>17  Q.  Got it. So, if there was a<br>18      particular production that posed whatever risks<br>19      that OneBeacon might have a concern about,<br>20      OneBeacon could ask NBC Universal to accept<br>21      different terms as to that particular production?<br>22      Is that correct?<br>23  A.  So we would explain to Aon, who would<br>24      then explain to NBC, that we are willing to<br>25      provide this coverage so it could be in the form | Fed. R. Evid. 401; 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |
| <u>Page 61</u><br>1     of a sub-limit instead of the standard limits or<br>2     we could impose endorsement wording that would<br>3     provide excluded terms or we would not insure the<br>4     production at all.<br>5  Q.  So amongst other modifications, there<br>6     could be modification to the sub-limit? Is that<br>7     correct?<br>8  A.  There could be a modification to the | <u>Defendant's Objections:</u><br>(61:1-11) Policy negotiations, underwriting discussions not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403<br><br><u>Plaintiff's Response:</u> |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 9     limit provided, meaning instead of the limit that<br>10    is on the blanket or the master policy, we would<br>11    offer less of a limit so we call it a sub-limit. | Relevant to bad faith |
| Page 63<br>1    Q.   Now again focusing on this period<br>2        prior to the inception of the policy on<br>3        January 1, 2010, do you recall any internal<br>4        discussions that you were privy to where there<br>5        was a discussion about the level of profitability<br>6        that OneBeacon hoped to obtain on the NBC<br>7        Universal policy?<br>8    A.   Well, we wouldn't have wrote it if we<br>9        didn't think so. We had conversations where we<br>10    looked at the previous losses to determine what<br>11    kind of premium we would need in order for the<br>12    account to be profitable.<br>13    Q.   When you say you looked at the<br>14        previous losses to determine premium so that you<br>15        could try to ensure that the account would be<br>16        profitable, are you talking about looking at the<br>17        previous losses based on the prior 2009 year, the<br>18        year prior to the 2010 policy incepting?<br>19    A.   That year and years back from there.<br>20    Q.   And in terms of the discussions about<br>21        how to set the premium, were you involved in<br>22        those discussions?<br>23    A.   Yes. | Defendant's Objections:<br>(63:1-25) Discussions regarding losses, Policy negotiations, underwriting, profitability, premiums not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 24 Q.  And again looking at the setting of<br>25       the premium level, was there any particular | |
| Page 64<br>1        percentage of profitability that OneBeacon was<br>2        looking to achieve in insuring NBC Universal for<br>3        its television production risks?<br>4   A.  Yes, we were looking at a minimum of<br>5        a 60 percent loss ratio, and we thought that the<br>6        60 percent would be sufficient because the<br>7        account was also written what we consider to be<br>8        net to us, which means we do not pay the broker<br>9        any commission. | Defendant's Objections:<br>(64:1-9) Discussions regarding losses, Policy negotiations, underwriting, profitability, premiums not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |
| 15 Q.  When you say a minimum of 60 percent<br>16       loss ratio, what do you mean by that?<br>17  A.  In order for the account to be<br>18       considered profitable for the expenses associated<br>19       with it, we would need to run at a loss ratio of<br>20       60 percent or less.<br>21 Q.  And if losses went higher than<br>22       60 percent, that would impact the profit return<br>23       that OneBeacon would be receiving. Isn't that<br>24       right?<br>25  A.  That's correct. | Defendant's Objection:<br>(64:15-25)<br>Policy negotiations, underwriting, profitability, premiums not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 65<br>3        MS. COYOCA: And if the court<br>4        reporter could please hand Exhibit 405 to | Defendant's Objections:<br>(65:3-25) Pricing, premiums, Policy negotiations, |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 5      Ms. Phillips.<br>6   Q.   Ms. Phillips, have you seen this<br>7      document before?<br>8   A.   I would have to read it to determine.<br>9   Q.   Please do. Please let me know when<br>10     you are ready for questions.<br>11   A.   Okay. I am finished reading.<br>12   Q.   With respect to the e-mail that<br>13     appears at the top of page 5968, the e-mail that<br>14     is dated Saturday, November 21, 2009, sent at<br>15     8:48 p.m. from George Walden to Martin Ridgers<br>16     and Wanda Phillips. Do you see that e-mail?<br>17   A.   Yes.<br>18   Q.   Did you receive this e-mail on or<br>19     about November 21, 2009?<br>20   A.   I have no reason to think I didn't.<br>21     I don't remember it.<br>22   Q.   Okay. Thank you. So you have no<br>23     reason to believe you didn't receive it at this<br>24     time. Is that right?<br>25   A.   Yes.<br><br>Page 66<br>1   Q.   Okay. With respect to item 6, Mr.<br>2     Walden indicates the target pricing for insurance<br>3     premium is 10 cents. Do you see that?<br>4   A.   Yes.<br>5   Q.   What is that in reference to, to your<br>6     understanding?<br>7   A.   That is the rate against the<br>8     1 billion that you referred to in production costs.<br>9<br>10   Q.   And the 10 cents rate, how was that<br>11     determined, to your knowledge?<br>12   A.   Well, in this e-mail from George or | underwriting, profitability not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial; additionally exhibit contains hearsay regarding statements by Mr. Walden and others on behalf Plaintiffs or its representatives.<br>Fed. R. Evid. 401; 403<br><br><br>Plaintiff's Response:<br>Relevant to bad faith; statement of party opponent; offered for non-hearsay purpose; exhibit is business record, presumed authentic because it was produced from Defendant's files, and a statement of party opponent<br><br>Defendant's Objections:<br>(66:1-25) Pricing, premiums, Policy negotiations, underwriting, profitability not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial; additionally exhibit contains hearsay regarding statements by Mr. Walden and others on behalf Plaintiffs or its |

**433**

| Deposition Designation | Objection & Response |
|---|---|
| 13    in general? | representatives. |
| 14  Q.  I am asking you in general first. | Fed. R. Evid. 401; 403 |
| 15  A.  This appears that George is saying | |
| 16    he's looking for a 10 cents rate. | |
| 17  Q.  Do you know where it came from, | Plaintiff's Response: |
| 18    though, prior to this e-mail? | Relevant to bad faith; |
| 19  A.  No. | statement of party opponent; |
| 20  Q.  Had you been involved in any | offered for non-hearsay |
| 21    discussions where the rate was discussed in terms | purpose; exhibit is business |
| 22    of the rate to be applied per $100 production | record, presumed authentic |
| 23    costs in calculating how much the premium would | because it was produced from |
| 24    be? | Defendant's files, and a |
| 25  A.  I was involved in discussions. I | statement of party opponent. |
| | |
| Page 67 | Defendant's Objections: |
| 1    don't know if they were before or after the date | (67:1-25) Pricing, premiums, |
| 2    of this e-mail, but yes, I was involved in | Policy negotiations, |
| 3    discussions. | underwriting, profitability not |
| 4  Q.  Okay. What do you recall about those | relevant to any of Plaintiffs' |
| 5    discussions? | claims for breach of the |
| 6  A.  Pretty much determining what we would | contract or duty of good faith |
| 7    need from a premium standpoint, and that premium | or damages; this testimony is |
| 8    would be based on what the terms and conditions | a waste of time; causes |
| 9    are provided, so what sort of SIR the client | confusion; is prejudicial; |
| 10    would take again to get to that 60 percent or | additionally exhibit contains |
| 11    less loss ratio. | hearsay regarding statements |
| 12  Q.  Okay. When you say determining what | by Mr. Walden and others on |
| 13    we would need from a premium standpoint and what | behalf Plaintiffs or its |
| 14    the premium would be based on, in terms of the | representatives. |
| 15    terms and conditions provided, can you please | Fed. R. Evid. 401; 403 |
| 16    explain to me how OneBeacon would determine what | |
| | Plaintiff's Response: |
| | Relevant to bad faith; |
| | statement of party opponent; |
| | offered for non-hearsay |
| | purpose; exhibit is business |
| | record, presumed authentic |

| Deposition Designation | Objection & Response |
|---|---|
| 17    would be needed from a premium standpoint? | because it was produced from Defendant's files, and is a statement of party opponent. |
| 18   A.   So we would determine the trend from | |
| 19        the past history of what the losses looked like | |
| 20        in order to determine what their present loss | |
| 21        ratio would be. We would look at where those | |
| 22        losses were driven from, meaning what sections of | |
| 23        the policy. We would then determine what sort of | |
| 24        deductibles we would need to put in place to | |
| 25        maybe reduce some of those losses. We would add | |
| **Page 68** | **Defendant's Objections:** |
| 1        a load for expenses and then determine based on | (68:1-13) Pricing, premiums, Policy negotiations, underwriting, profitability not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial; additionally exhibit contains hearsay regarding statements by Mr. Walden and others on behalf Plaintiffs or its representatives. Fed. R. Evid. 401; 403 |
| 2        all of that what sort of loss ratio would be | |
| 3        acceptable for the account to be profitable. | |
| 4    Q.   Okay. I want to make sure I | |
| 5        understand this. So when you say you are looking | |
| 6        at the trend from past history, are you referring | |
| 7        to looking at the trend of losses over the past | |
| 8        whatever period of years in order to make some | |
| 9        kind of assessment as to what the loss ratio | |
| 10        might present or be in the coming year? | |
| 11   A.   Very similar to that, so we need to | |
| 12        know what the losses were and what the premium | |
| 13        was in order to determine what the loss ratio is. | **Plaintiff's Response:** Relevant to bad faith; statement of party opponent; offered for non-hearsay purpose; exhibit is business record, presumed authentic |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | because it was produced from Defendant's files, and is a statement of party opponent. |
| Page 75 | Defendant's Objections: |
| 5  Q.  Under item 8, there is a reference to | (75:5-25) Record objections. |
| 6       tax credits. Do you see that? | Further, Policy negotiations, |
| 7  A.  Yes. | underwriting, profitability not |
| 8  Q.  Do you have an understanding of what | relevant to any of Plaintiffs' |
| 9       tax credits are? | claims for breach of the |
| 10  A.  Yes. | contract or duty of good faith |
| 11  Q.  What are they? | or damages; this testimony is |
| 12  A.  Just that they are credits that are | a waste of time; causes |
| 13      given to production companies depending on the | confusion; is prejudicial. Additionally, foundation with |
| 14      state in which they are filming and they become a | respect to policy provisions she does not recall. |
| 15      tax credit. | Fed. R. Evid. 401; 403; 602; |
| 16  Q.  So those credits are based on the | 602; hearsay 801; 802 |
| 17      dollar amounts are based on the production spend | regarding communications from Mr. Walden or others to |
| 18      of the production company in the state in which | Ms. Phillips |
| 19      the television show is being filmed? | |
| 20  A.  Yes. | Plaintiff's Response: |
| 21  Q.  Is that correct? In terms of | Relevant to bad faith; |
| 22      determining the insurable production costs under | statement of party opponent; not speculative; offered for |
| 23      the policy, are you familiar with that term, | non-hearsay purpose; |
| 24      "insurable production costs"? | foundation present. |
| 25  A.  Yes. | |
| Page 76 | Defendant's Objections: |
| | (76:1-18, 22-75) Record |
| 1  Q.  What is your understanding of what it | objections.  Further, Policy |
| 2      is? | negotiations, underwriting, |
| 3  A.  The costs in which the total | profitability not relevant to |
| 4      production costs less events that you could take | any of Plaintiffs' claims for breach of the contract or duty |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 5     out in the event of an abandonment which then<br>6     becomes your insurable production cost, those<br>7     items that could be insured.<br>8   Q.   Okay. There is also a provision in<br>9     the policy that defines what constitutes loss<br>10     under the policy. Do you recall that provision?<br>11   A.   I don't know exactly what it says,<br>12     but it is a provision in the policy, yes.<br>13   Q.   Okay. To the best of your<br>14     recollection, we will look at the policy actually<br>15     itself later, but to the best of your<br>16     recollection, in calculating the loss, is that<br>17     tied to the insurable production cost under the<br>18     policy?<br><br>22   A.   Again, I would need you to say that<br>23     again so I am clear on what you are asking me<br>24     before I answer that.<br>25   Q.   Okay. The question is just with | of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial.  Additionally, foundation with respect to policy provisions she does not recall.<br>Fed. R. Evid. 401; 403; 602; 602; hearsay 801; 802 regarding communications from Mr. Walden or others to Ms. Phillips<br><br>Plaintiff's Response:<br>Relevant to bad faith; statement of party opponent; not speculative; offered for non-hearsay purpose; foundation present. |
| Page 77<br>1     respect to calculating a loss that may occur<br>2     under the terms of the policy, part of that<br>3     calculation of the loss depends on the amount of<br>4     insurable production costs that was incurred on<br>5     the show. Is that right?<br>6   A.   That's correct.<br>7   Q.   Okay. In calculating the loss, is<br>8     the amount of any tax credit that the production<br>9     company might receive or does receive, does that<br>10     go into the equation at all in calculating loss | Defendant's Objections: (77:1-11, 15-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, there is no foundation for admission and it calls for a legal conclusion.<br>Fed. R. Evid. 401; 403; 602. |

| Deposition Designation | Objection & Response |
|---|---|
| 11      under the policy?<br><br>15   A.   It can be, but again, that depends on<br>16      how you craft the policy. So if you are insuring<br>17      that tax credit, you have to insure that amount<br>18      as part of the production costs, thereby the rate<br>19      applied to the production costs to determine the<br>20      premium would also include that tax credit.<br>21   Q.   So if it were to be included, you<br>22      would expect to see it addressed in the<br>23      calculation of the insurable production cost. Is<br>24      that right?<br>25   A.   It would be included. | <u>Plaintiff's Response</u>:<br>Relevant to bad faith; statement of party opponent; does not call for legal conclusion; foundation present. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 78 | Defendant's Objections: |
| 1  Q.  No, I'm sorry, my question to you is | (78:1-5, 9-23) Record |
| 2      you said it can be. If it is going to be, would | objections.  Further, Policy |
| 3      you see the tax credit specifically addressed in | negotiations, underwriting |
| 4      the calculation of what constitutes an insurable | not relevant to any of |
| 5      production cost? | Plaintiffs' claims for breach of the contract or duty of good faith or damages; this |
| 9  A.  Again, you can add the tax credit, | testimony is a waste of time; |
| 10     and if you were adding it, you can add it as an | causes confusion; is |
| 11     agreement that is part of your insurable costs or | prejudicial. Further, there is no foundation for admission |
| 12     if you don't charge the premium for it, then it | and it calls for a legal |
| 13     is not covered, so it can be done either way. | conclusion.  Hearsay as to |
| 14  Q.  And you have seen it done either way? | communications between |
| 15  A.  Yes. | Ridgers and Walden. |
| 16  Q.  Without looking at the policy, it is | Fed. R. Evid. 401; 403; 602; |
| 17     not a memory test but do you recall how it was | 801; 802 |
| 18     handled under the NBC Universal policy? | |
| 19  A.  I don't believe tax credit was a part | |
| 20     of it, and clearly I don't think the interest on | Plaintiff's Response: |
| 21     the state's inability of paying the tax credit, | Relevant to bad faith; |
| 22     because that is what it refers to in number 8 was | statement of party opponent; does not call for legal |
| 23     a part of it as well. | conclusion; foundation present; offered for non-hearsay purpose. |
| Page 79 | Defendant's Objections: |
| 4  Q.  Okay. I would like you to look now | (79:4-25) Record objections. |
| 5     at the next e-mail exhibit which was attached as | Further, Policy negotiations, underwriting not relevant to |
| 6     Exhibit 406, and that should be the next document | any of Plaintiffs' claims for breach of the contract or duty |
| 7     in the pile. Ms. Phillips, are you waiting for | of good faith or damages; this |
| 8     questions on the document? | testimony is a waste of time; |
| 9  A.  Yes. | causes confusion; is |
| 10  Q.  Okay. With respect to the e-mail | prejudicial. Further, there is |

| Deposition Designation | Objection & Response |
|---|---|
| 11　　　that was sent December 24, 2009 -- excuse me,<br>12　　　December 4, 2009, at 5:51 p.m. Eastern Standard<br>13　　　Time from Martin Ridgers to George Walden and<br>14　　　Wanda Phillips, did you receive this e-mail?<br>15　A.　I have no reason to think I didn't.<br>16　Q.　Okay. Thank you. What was your<br>17　　　understanding of the information that Mr.<br>18　　　Martin -- Mr. Ridgers was conveying via this<br>19　　　e-mail to Mr. Walden?<br>20　A.　In reviewing the document that you<br>21　　　just handed me, it looks like he is giving him<br>22　　　indications of limits and deductibles.<br>23　Q.　And to your recollection, had limits<br>24　　　and deductibles been discussed prior to this<br>25　　　e-mail going out? | no foundation for admission and it calls for a legal conclusion.  Hearsay as to communications between Ridgers, Walden and others. Fed. R. Evid. 401; 403; 602; 801; 802<br><br>Plaintiff's Response: Relevant to bad faith; statement of party opponent; does not call for legal conclusion; offered for non-hearsay purpose. |
| Page 80<br>1　A.　I can't recall, but I mean I would<br>2　　　think so. That is why he is giving them to<br>3　　　clarify the indication, so they had to discuss<br>4　　　the limits and deductibles and he is clarifying<br>5　　　them now. | Defendant's Objections: (80:1-5, ) Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, there is no foundation for admission and it calls for a legal conclusion.  Hearsay as to communications between Ridgers, Walden and others. Fed. R. Evid. 401; 403; 602; 801; 802.<br><br>Plaintiff's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| | Relevant to bad faith; statement of party opponent; does not call for legal conclusion; offered for non-hearsay purpose |
| Page 88 | Defendant's Objections: |
| 12  Q.  Got it. Thank you. Ms. Phillips, | (88:12-25) Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, there is no foundation for admission and it calls for a legal conclusion. |
| 13      are you aware of whether or not there is a | |
| 14      terrorism exclusion on the NBC Universal policy, | |
| 15      the one that first incepted on January 1, 2010? | |
| 16  A.  My understanding is there is no | |
| 17      terrorism exclusion. The exclusion is the | |
| 18      countries in which, going back to this, so there | |
| 19      should be an exclusion on the policy and an | |
| 20      endorsement form that is a country exclusion. | Fed. R. Evid. 401; 403; 602. |
| 21  Q.  During the negotiations of the policy | |
| 22      that preceded the January 1, 2010 policy, do you | Plaintiff's Response: |
| 23      recall if there were any discussions about having | Relevant to bad faith; statement of party opponent; does not call for legal conclusion; offered for non-hearsay purpose |
| 24      a terrorism exclusion on the policy? | |
| 25  A.  I don't recall that. | |
| | |
| Page 89 | Defendant's Objections: |
| 1  Q.  Just skip forward in time. As to | (89:1-25) Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, there is no foundation for admission |
| 2      the -- there was an NBC Universal policy issued | |
| 3      by OneBeacon for the policy period from | |
| 4      January 1, 2014 to June 30, 2015. Is that right? | |
| 5  A.  I don't remember if it was written 18 | |
| 6      months from the beginning or maybe it was | |
| 7      negotiated and then added, but yes. | |

| Deposition Designation | Objection & Response |
|---|---|
| 8   Q.   Okay. So the policy that incepted,<br>9       though, on January 1, 2014, that is the one I<br>10      want to ask you a question about. Do you have<br>11      that one in mind?<br>12   A.   Yes.<br>13   Q.   Do you know if there was a terrorism<br>14      exclusion on that policy?<br>15   A.   I don't believe there was.<br>16   Q.   Okay. Going back to the policy that<br>17      incepted as of January 1, 2010, do you know if<br>18      there was a TRIA endorsement, Terrorism Risk<br>19      Insurance Act, endorsement on the policy?<br>20   A.   So I don't know if the insured<br>21      rejected or accepted it. I do know that TRIA is<br>22      offered or granted on all policies, and it is<br>23      given unless there is a signed TRIA rejection<br>24      form where the client decides they don't want the<br>25      cover. | and it calls for a legal conclusion.<br>Fed. R. Evid. 401; 403; 602<br><br>Plaintiff's Response:<br>Relevant to bad faith; statement of party opponent; does not call for legal conclusion; offered for non-hearsay purpose |

| Deposition Designation | Objection & Response |
|---|---|
| Page 90 | Defendant's Objections: |
| 1  Q.  Okay. Can you please explain to me<br>2       what is a TRIA endorsement?<br>3  A.  Pretty much providing coverage for an<br>4       act that is certified underneath the federal<br>5       definition of TRIA, but it has to happen in the<br>6       U.S.<br>7  Q.  Okay. So I want to make sure I<br>8       understand. In order for the TRIA endorsement to<br>9       apply, there has to be a certified act of<br>10      terrorism, which is something that is defined<br>11      according to the Terrorism Risk Insurance Act, is<br>12      that correct?<br>13  A.  That's correct.<br>14  Q.  And at least as part of that<br>15      definition, the terrorist act needs to occur in<br>16      the United States, is that right?<br>17  A.  That's correct.<br>18  Q.  Okay. Is there any provision in the<br>19      TRIA endorsement which provides that the only<br>20      coverage for a terrorist act, for losses<br>21      resulting from a terrorist act, are those that<br>22      meet the definition of a certified act of<br>23      terrorism?<br>24  A.  That is my understanding.<br>25  Q.  Okay. I want to make sure we are on | (90:1-25) Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, there is no foundation for admission and it calls for a legal conclusion.<br>Fed. R. Evid. 401; 403; 602<br><br>Plaintiff's Response:<br>Relevant to bad faith; statement of party opponent; does not call for legal conclusion; offered for non-hearsay purpose; foundation present. |
| Page 91 | Defendant's Objections: |
| 1       the same page. If there is an act of terrorism<br>2       that occurs somewhere else in the world outside<br>3       the U.S. and loss results and it is an otherwise<br>4       covered claim, is there anything about TRIA that<br>5       says the only terrorism coverage you are | (91:1-17) Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, there is |

| Deposition Designation | Objection & Response |
|---|---|
| going to<br>6    have under this policy are for those acts of<br>7    terrorism which are certified acts of<br>     terrorism?<br>8  A.  In the scenario you just stated, the<br>9    act didn't happen in the U.S.<br>10  Q.  Right.<br>11  A.  So TRIA has nothing to do with that.<br>12  Q.  Thank you. Just to be clear, if the<br>13    act of terrorism doesn't occur in the United<br>14    States, it is your testimony that has nothing to<br>15    do with TRIA, the Terrorism Risk Insurance Act.<br>16    Is that correct?<br>17  A.  Right. TRIA is in the U.S. | no foundation for admission and it calls for a legal conclusion.<br>Fed. R. Evid. 401; 403; 602<br><br>Plaintiff's Response:<br>Relevant to bad faith; statement of party opponent; does not call for legal conclusion; foundation present. |
| Page 97<br>5  Q.  Okay. I would like you to look next<br>6    at what is Exhibit 408 in this stack. It is an<br>7    e-mail chain that is dated December 7, 2009 and<br>8    it has Bates label numbers AON NBCU 0003795<br>9    through 3865.<br>10    Ms. Phillips, if you could just<br>11    please take a moment to familiarize yourself with<br>12    the document, I would like to ask you some<br>13    questions about it.<br>14  A.  You want me to read this?<br>15  Q.  I just want you to take a moment to<br>16    familiarize yourself with this. You don't have<br>17    to read it from front to back.<br>18  A.  Okay.<br>19  Q.  First of all, I want to ask you about<br>20    the first e-mail in time that begins on page<br>21    3796. That is that AON NBCU number 0003796. | Defendant's Objections:<br>(97:5-25) Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial; hearsay.<br>Fed R. Evid, 401; 403; 801; 802<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent. |

| Deposition Designation | Objection & Response |
|---|---|
| 22     That is an e-mail from Mr. Walden to Martin<br>23     Ridgers, yourself, and it appears he also sent<br>24     another copy of the e-mail to himself as well,<br>25     and Susan Weiss and Laura Comerford are cc'd on | |
| Page 98<br>1     the e-mail. Do you see that?<br>2  A.  Yes.<br>3  Q.  It appears that he is actually<br>4     directing the e-mail to you, because in the first<br>5     line he says "Wanda, attached is the revised<br>6     summary. Please review."<br>7     Do you see that?<br>8  A.  Yes.<br>9  Q.  What is the attached summary that he<br>10    is referring to?<br>11  A.  It appears to be his policy form.<br>12  Q.  And prior to this summary, he<br>13    indicates this is a revised summary. Do you<br>14    believe that you had received a summary of the<br>15    policy form prior to that?<br>16  A.  It could be possible.<br>17  Q.  You have indicated it could be<br>18    possible. Do you think it is likely based on the<br>19    wording of the e-mail?<br>20  A.  I have no reason to think it wasn't. | Defendant's Objections:<br>(98:1-25) Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial; hearsay.<br>Fed R. Evid, 401; 403; 801; 802<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent. |
| Page 103<br>20  Q.  Did you review the attachments at or<br>21    about the time that they were sent?<br>22  A.  It is possible.<br>23  Q.  I understand you may not have a<br>24    specific recollection of doing so, but during | Defendant's Objections:<br>(103:20-25)Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach |

| Deposition Designation | Objection & Response |
|---|---|
| the<br>25      course of the negotiations and drafting of the | of the contract or duty of good faith or Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, there is no foundation for admission; hearsay as to communications from Walden or representatives of Plaintiffs; document is not authenticated.  Fed R. Evid. 401; 403; 801; 801; 802.<br><br>Plaintiff's Response: Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present; exhibit presumed authentic because it was produced from Defendant's files, and a statement of party opponent. |
| Page 104<br>1      policy did you routinely review the various<br>2      drafts that were being sent back and forth?<br>3   A.   Yes.<br>4   Q.   Would there be any reason that you<br>5      would have deviated from that practice that you<br>6      can recall as you sit here today?<br>7   A.   No, other than George sending e-mails<br>8      on Sundays, Saturdays, middle of the night, | Defendant's Objections: (104:1-25)Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or Record objections.  Further, Policy negotiations, underwriting not relevant to any of |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 9      early morning.<br>10  Q.  So even if you didn't review an<br>11      e-mail at or about the time that it was sent<br>12      perhaps on a weekend, would you have subsequently<br>13      reviewed it during the workweek?<br>14  A.  Yes.<br>15  Q.  Okay. I want to direct your<br>16      attention to the document that begins on page AON<br>17      NBCU 0003798, and it is what appears to be the<br>18      first attachment to the e-mail, and it reads at<br>19      the top "NBC television production insurance<br>20      program, summary of program provisions." Do you<br>21      see that?<br>22  A.  Yes.<br>23  Q.  There are various, if you look at for<br>24      example, the next page, 3799 and 3800, there is<br>25      various provisions that appear to have been | Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, there is no foundation for admission; hearsay as to communications from Walden or representatives of Plaintiffs; document is not authenticated.  Fed R. Evid, 401; 403; 801; 801; 802<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present; exhibit presumed authentic because it was produced from Defendant's files, and is a statement of party opponent. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 105</u><br>1     highlighted but we don't see the colors. Is that<br>2     right?<br>3  A.  Yes. I can't tell what color. It<br>4     looks shaded.<br>5  Q.  Right. It is shaded. For example,<br>6     wind, U.S. territories defined as tier 1 counties<br>7     during hurricane season, worldwide territories<br>8     typhoon, that is shaded language, right?<br>9  A.  Yes.<br>10  Q.  Okay. Shaded language also appears<br>11     on page 3800 with respect to the named insured<br>12     and the street address. Is that right?<br>13  A.  Yes.<br>14  Q.  Looking at this document, are you<br>15     able to tell, do you know whether this is Mr.<br>16     Walden's form with his changes or Mr. Ridgers'<br>17     form with his changes?<br>18  A.  Mr. Walden's form.<br>19  Q.  You believe this is Mr. Walden's<br>20     form?<br>21  A.  Yes.<br>22  Q.  Look at the document on page 3836 in<br>23     the same exhibit. This appears to be a different<br>24     form with respect to the same potential policy<br>25     and it has various markings throughout this | <u>Defendant's Objections</u>:<br>(105:1-25)Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, there is no foundation for admission; hearsay as to communications from Walden or representatives of Plaintiffs; document is not authenticated.  Fed R. Evid, 401; 403; 801; 801; 802<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present; exhibit presumed authentic because it was produced from Defendant's files, and a statement of party opponent. |
| <u>Page 106</u><br>1     document as well. Do you see that? For example, | <u>Defendant's Objections</u>:<br>(106:1-25)Record objections. Further, Policy negotiations, |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 2　　　let me direct your attention to page 3851.<br>3　A.　Yes.<br>4　Q.　There are various shaded sections on<br>5　　　this form. Do you see that?<br>6　A.　Yes.<br>7　Q.　Okay. Turning back to the first page<br>8　　　of this document on page 3836, do you know whose<br>9　　　form this is?<br>10　A.　No.<br>11　Q.　Could you please turn to page 3860.<br>12　A.　Yes.<br>13　Q.　At the bottom of the page, right<br>14　　　above the confidential designation, it says<br>15　　　general endorsement number 2, exclusion of war,<br>16　　　military action and terrorism, page, within<br>17　　　brackets, page of, within brackets, NUM pages,<br>18　　　close brackets. Do you see that?<br>19　A.　Yes.<br>20　Q.　Do you know what that is a reference<br>21　　　to?<br>22　A.　I don't, because that is not what is<br>23　　　on this page.<br>24　Q.　There isn't an exclusion that is on<br>25　　　this page. Is that what you are saying? | underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, there is no foundation for admission; hearsay as to communications from Walden or representatives of Plaintiffs; document is not authenticated.  Fed R. Evid, 401; 403; 801; 801; 802<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present; exhibit presumed authentic because it was produced from Defendant's files, and a statement of party opponent. |
| Page 107<br>1　A.　This page in itself doesn't refer to<br>2　　　any of that. This page refers to coverage B,<br>3　　　which is property.<br>4　Q.　Right. Do you have any understanding<br>5　　　as to why that footer is on this page?<br>6　A.　Not at all.<br>7　Q.　The footer appears also on page 3861, | Defendant's Objections:<br>(107:1-25)Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or Record objections.  Further, Policy |

| Deposition Designation | Objection & Response |
|---|---|
| 8        3862 and 3863. Do you see that?<br>9    A.   I do.<br>10   Q.   Do you have any understanding as to<br>11       again why that footer is on any of these other<br>12       pages?<br>13   A.   Again, all of those pages that you<br>14       just listed, they are all part of the same<br>15       property form.<br>16   Q.   Okay. So you don't know why that<br>17       footer is there?<br>18   A.   No.<br>19   Q.   Okay. If you look at page 3838 in<br>20       this document under conditions applicable to all<br>21       sections.<br>22   A.   Yes.<br>23   Q.   At the bottom left hand of the page<br>24       there is a number, a designation that says MP<br>25       space 201 space, within parens, 01-05, close | negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, there is no foundation for admission; hearsay as to communications from Walden or representatives of Plaintiffs; document is not authenticated.  Fed R. Evid, 401; 403; 801; 801; 802<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present; exhibit presumed authentic because it was produced from Defendant's files, and a statement of party opponent. |
| Page 108<br>1        parens. Do you see that?<br>2    A.   Yes.<br>3    Q.   Do you know what that is a reference<br>4        to?<br>5    A.   It looks like policy form motion<br>6        picture 201.<br>7    Q.   Is that a form, a OneBeacon form?<br>8    A.   We have numbers similar to that, yes.<br>9    Q.   Seeing this designation as to a<br>10       policy form that is similar to a OneBeacon policy<br>11       form reference, does that suggest to you that | Defendant's Objections:<br>(108:1-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 12      this document is Mr. Ridgers' form?<br>13   A.   It could be, but this is not the way<br>14          the form reads, so it could be. Yes. I mean<br>15          that would lead me to think that it would be.<br>16   Q.   Okay. I would like you to turn to<br>17          page 3833 in the form that you indicated you<br>18          thought was Mr. Walden's form.<br>19   A.   Okay.<br>20   Q.   There is an endorsement number 2<br>21          exclusion of war, military action and terrorism.<br>22          Do you see that?<br>23   A.   Yes.<br>24   Q.   There are three parts to this<br>25          exclusion, subpart A is for war including | good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, there is no foundation for admission; hearsay as to communications from Walden or representatives of Plaintiffs; document is not authenticated.  Fed R. Evid, 401; 403; 801; 801; 802<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present; exhibit presumed authentic because it was produced from Defendant's files, and a statement of party opponent. |
| Page 109<br>1          undeclared or civil war. Is that right?<br>2   A.   Including undeclared or civil war, yes.<br>4   Q.   Then there is a subpart B that<br>5          excludes loss or damage caused by war-like action<br>6          by a military force, and the language then goes<br>7          on from there. Is that correct?<br>8   A.   Yes.<br>9   Q.   Then part C or subpart C excludes<br>10         loss that is caused directly or indirectly by<br>11         insurrection, rebellion, revolution, usurped<br>12         power or action taken by governmental authority.<br>13         Do you see that? It goes on as well with | Defendant's Objections:<br>(109:1-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, there is |

**451**

| Deposition Designation | Objection & Response |
|---|---|
| 14    further language.<br>15  A.  Yes.<br>16  Q.  Then there is a sentence that begins<br>17    "Such loss or damage is excluded regardless of<br>18    any other cause or event." Do you see that?<br>19  A.  Yes.<br>20  Q.  Do you recall reviewing this language<br>21    at or about the time the draft was first received<br>22    by you?<br>23  A.  No.<br>24  Q.  Do you recall having any discussions<br>25    about this draft of this war, military exclusion<br><br><br><br>Page 110<br>1    at any time during the process, during the time<br>2    the policy was being negotiated?<br>3  A.  No.<br>4  Q.  Okay. Under the sentence that begins<br>5    "Such loss or damage is excluded," there is<br>6    another sentence. Do you see that?<br>7  A.  That starts with "With respect"?<br>8  Q.  Yes. "With respect to any action."<br>9  A.  Yes.<br>10  Q.  Could you read that sentence out<br>11    loud.<br>12  A.  "With respect" –<br><br>16  A.  "With respect to any action that<br>17    comes within the terms of this exclusion and<br>18    involves nuclear reaction or radiation or<br>19    radioactive contamination, this war and military<br>20    action exclusion supersedes the terms set | no foundation for admission; hearsay as to communications from Walden or representatives of Plaintiffs; document is not authenticated.  Fed R. Evid, 401; 403; 801; 801; 802<br><br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present; exhibit presumed authentic because it was produced from Defendant's files, and a statement of party opponent.<br><br>Defendant's Objections:<br>(110:1-8,)Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, there is no foundation for admission; hearsay as to communications from Walden or representatives of Plaintiffs; document is not |

| Deposition Designation | Objection & Response |
|---|---|
| forth<br>21    under conditions applicable to all sections<br>22    exclusion paragraph D," and then it starts off at<br>23    number 2.<br>24  Q.  Do you know what this sentence is a<br>25    reference to? | authenticated.  Fed R. Evid, 401; 403; 801; 801; 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present; exhibit presumed authentic because it was produced from Defendant's files, and a statement of party opponent.<br><br>Defendants Objections:<br>(110:16-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or is a waste of time; causes confusion; is prejudicial. Further, no foundation and it calls for a legal conclusion.  Hearsay as to communications from Walden or Plaintiffs' representatives.<br>FRE 401, 403, 602, 801, 802.<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present. |
| Page 111<br>1  A.  No.<br>2  Q.  Are you familiar with a subpart D to<br>3    the war and military exclusion? | Defendant's Objections:<br>(111:1-21, 23-25) Record objections.  Further, Policy negotiations, underwriting |

| Deposition Designation | Objection & Response |
|---|---|
| 4   A.   No. This again is not our form or a<br>5          form that I am familiar with, but no.<br>6   Q.   With respect to the form that you are<br>7          familiar with that OneBeacon was using in or<br>8          December 2009, January 2010, do you recall how<br>9          many parts the war exclusion has?<br>10  A.   No, I don't.<br>11  Q.   As of the time that you left the<br>12         company in April or May 2016, are you familiar<br>13         with how many subparts or parts the war exclusion<br>14         has?<br>15  A.   No.<br>16  Q.   Could you turn to page 3846. So this<br>17         language in Roman numeral 4, "Exclusions<br>18         applicable to all sections of this policy," this<br>19         has some language at least that is the same as<br>20         language that appears on page 3833. Is that<br>21         correct?<br><br>23  A.   Yes.<br>24  Q.   Okay. For example, look at subpart<br>25  A.   On page 3846, please read what subpart A | not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or is a waste of time; causes confusion; is prejudicial. Further, no foundation and it calls for a legal conclusion.  Hearsay as to communications from Walden or Plaintiffs' representatives.<br>FRE 401, 403, 602, 801, 802<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present. |
| Page 112<br>1          provides for.<br>2   A.   "War, including undeclared or a civil<br>3          war."<br>4   Q.   Okay. Look at subpart A on page<br>5          3833.<br>6   A.   "War. Including undeclared or a<br>7          civil war or."<br>8   Q.   So it is the same provision, correct?<br>9   A.   It appears to be the same, yes.<br>10  Q.   Okay, and what about B? I am going<br>11         to read it aloud, and you can look at 3833 | Defendant's Objections:<br>(112:1-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay as to |

| Deposition Designation | Objection & Response |
|---|---|
| and | communications from Walden or Plaintiffs' representatives.  FRE 401; 403; 801; 802; 602 |
| 12    tell me if you hear any difference. I'm going to | |
| 13    read from page 3846. | |
| 14  A.  Okay. | |
| 15  Q.  "Warlike action by a military force, | |
| 16    including action in hindering or defending | Plaintiff's Response: |
| 17    against an actual or expected attack, by any | Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present. |
| 18    government, sovereign or other authority using | |
| 19    military personnel or other agents; or." | |
| 20    Do you see that? | |
| 21  A.  Yes. | |
| 22  Q.  Is it the same language as appears on | |
| 23    page 3833? | |
| 24  A.  Yes. | |
| 25  Q.  I am going to read subpart C from | |
| | |
| Page 113 | Defendant's Objections: |
| 1    page 3846, and I would like you to look at page | (113:1-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay as to communications from Walden or Plaintiffs' representatives.  FRE 401; 403; 801; 802; 602 |
| 2    3833 to see if you note whether there is any | |
| 3    change or difference in the terms. | |
| 4  A.  Okay. | |
| 5  Q.  Subpart C on 3846 provides, | |
| 6    "Insurrection, rebellion, revolution, usurped | |
| 7    power or action taken by governmental authority | |
| 8    in hindering or defending against any of these." | |
| 9    Is there any change in that language | |
| 10    from page 3846 to what appears in 3833? | |
| 11  A.  No. | |
| 12  Q.  Okay. The sentence below C on page | |
| 13    3846 provides, "Such loss or damage is excluded | |
| 14    regardless of any other cause or event that | |
| 15    contributes concurrently or in any sequence to | Plaintiff's Response: |
| 16    the loss." | Relevant to bad faith; offered for non-hearsay purpose; |

| Deposition Designation | Objection & Response |
|---|---|
| 17    Do you see that?<br>18  A.  Yes.<br>19  Q.  And is there any difference between<br>20      the language that I just read from 3846 as it<br>21      appears on page 3833?<br>22  A.  No.<br>23  Q.  But then what appears below that<br>24      sentence on page 3846 is different than what<br>25      appears on page 3833, is that correct? | statement of party opponent;<br>foundation present. |
| <u>Page 114</u><br>1  A.  That's correct.<br><br>3  Q.  There is now a subpart D and an E, F,<br>4      G, H, I, J. Is that right?<br><br>7  Q.  Could you please read subpart D<br>8      aloud.<br>9      MR. KEELEY: Objection. Relevance.<br>10  A.  "Any weapon of war, imploding atomic<br>11      fission or radiation force, whether in time of<br>12      peace or war."<br>13  Q.  And that word that appears after "any<br>14      weapon of war," what is that word?<br><br>16  A.  Where are you saying again? I'm<br>17      sorry.<br>18  Q.  In capital D, "any weapon of war,"<br>19      what is that next word?<br><br>22  A.  "Employing."<br>23  Q.  Okay. So the provision reads "Any<br>24      weapon of war employing atomic fission or<br>25      radioactive force, whether at time of peace<br>      or | <u>Defendant's Objections</u>:<br>(114:1, 3-4) Record<br>objections.  Further, Policy<br>negotiations, underwriting<br>not relevant to any of<br>Plaintiffs' claims for breach<br>of the contract or duty of<br>good faith or damages; this<br>testimony is a waste of time;<br>causes confusion; is<br>prejudicial. Further, no<br>foundation, hearsay as to<br>communications from<br>Walden or Plaintiffs'<br>representatives.  FRE 401;<br>403; 801; 802; 602<br>(114:7-14, 22-25)<br>Record objections.  Further,<br>Policy negotiations,<br>underwriting not relevant to<br>any of Plaintiffs' claims for<br>breach of the contract or duty<br>of good faith or damages; this<br>testimony is a waste of time;<br>causes confusion; is<br>prejudicial. Further, no<br>foundation, hearsay as to<br>communications.  FRE 401;<br>403; 801; 802; 602 |

| Deposition Designation | Objection & Response |
|---|---|
| | <u>Plaintiffs' Responses:</u> Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present. <br><br> <u>Defendant's Objections:</u> (114:16-19) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation; hearsay.  FRE 401; 403; 801; 802; 602 <br><br> <u>Plaintiff's Response:</u> Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present. |
| <u>Page 115</u><br>1      war;" is that right?<br><br>3   A.   I can't tell if that is a semicolon<br>4         or a comma after "peace or war."<br>5   Q.   Okay, but it is not a period, is it?<br>6   A.   No.<br>7   Q.   Okay. Can you please then read the<br>8         first sentence in subpart E that begins with<br>9         "Nuclear reaction"?<br><br>11   A.   "Nuclear reaction or nuclear<br>12         radiation or radioactive contamination."<br>13         Continue? | <u>Defendant's Objections:</u> (115:1) Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications. FRE 401; 403; 801; 801; 802; 602. |

**457**

| Deposition Designation | Objection & Response |
|---|---|
| 14 Q. Continue. The whole sentence.<br>15     MR. KEELEY: Same objection.<br>16 A. "All whether controlled or<br>17     uncontrolled or whether such loss be direct or<br>18     indirect, approximated or" I can't even see<br>19     this -- "remote or be in whole or in part caused<br>20     by, C, contributed to or aggregated by perils" --<br>21     "by the peril or perils insured in this policy.<br>22     However."<br>23 Q. There is a period there, right?<br>24 A. Period.<br>25 Q. Okay. What is your understanding of | <u>Plaintiffs' Response:</u><br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present; not speculative.<br><br><u>Defendant's Objections:</u><br>(115:11-13)<br>Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present; not speculative.<br><br><u>Defendant's Objections:</u><br>(115:11-25)<br>Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. No foundation; |

| Deposition Designation | Objection & Response |
|---|---|
| | calls for legal conclusion; deponent's interpretation not relevant.  FRE 401; 403; 801; 802; 602.<br><br>Plaintiff's Response: Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present; does not call for legal conclusion. |
| Page 116<br>1      just that portion of E?<br><br>3    A.   Nuclear reaction or nuclear radiation<br>4         or radioactive contamination, so it is<br>         continuing<br>5         the description of war.<br>6    Q.   Okay. So in D, "Any weapon of war<br>7         employing atomic fission or radioactive<br>         force,<br>8         whether at time of peace or war," that is then<br>9         continued and relates to subpart E, that next<br>10        sentence in subpart E, is that correct? | Defendant's Objections: (116:3-10) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation; Deponent's interpretation not relevant. FRE 401; 403; 602.<br><br>Plaintiff's Response: Relevant to bad faith; foundation present; not speculative |
| Page 121<br>9    Q.   Okay, Ms. Phillips. I just wanted to<br>10        ask you a few questions about Exhibit 419. This<br>11        is an e-mail that is dated December 1, 2009, so | Defendant's Objections: (121:9-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach |

**459**

| Deposition Designation | Objection & Response |
|---|---|
| 12    this precedes what we were just looking at right<br>13    before the lunch break which was dated December<br>14    7. And for identification purposes, Exhibit 419<br>15    is Bates labeled AON NBCU 0004342 through 4368.<br>16    You are shown as the recipient of this e-mail<br>17    from George Walden. Do you see that?<br>18   A.   Yes. One of the recipients.<br>19   Q.   Yes. Mr. Ridgers is another. Is<br>20    that right?<br>21   A.   That's correct.<br>22   Q.   Do you recognize this e-mail?<br>23   A.   No.<br>24   Q.   Do you have any reason to believe<br>25    that you did not receive it on or about the date<br><br>Page 122<br>1    it was sent?<br>2   A.   No, I do not.<br><br>20   Q.   Okay. In the e-mail Mr. Walden<br>21    references a meeting that is going to be taking<br>22    place that day on December 1, 2009. Do you see<br>23    that?<br>24   A.   Yes.<br>25   Q.   Do you recall participating in a | of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602.<br><br>Plaintiff's Response: Relevant to bad faith; foundation present; not speculative; offered for non-hearsay purpose; statement of party opponent<br><br>Defendant's Objections: (122:1-2, 20-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602.<br><br>Plaintiff's Response: Relevant to bad faith; foundation present; not speculative; offered for non- |

| Deposition Designation | Objection & Response |
|---|---|
| | hearsay purpose; statement of party opponent |
| Page 123<br>1    meeting with Mr. Walden in early December 2009?<br>2  A.  I don't.<br><br>21  Q.  Could you please turn to page 4351,<br>22    there is Roman numeral 4 exclusions applicable to<br>23    all sections of the policy. It appears on page<br>24    4351. Do you see that?<br>25  A.  Yes. | Defendant's Objections: (123:1-2, 21-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br>Plaintiff's Response: Relevant to bad faith; foundation present; not speculative; offered for non-hearsay purpose; statement of party opponent |
| Page 124<br>1  Q.  Then the exclusions continue on to<br>2    page 4352. Do you see that?<br>3  A.  Yes.<br>4  Q.  Okay. If you turn back to the<br>5    document that we were looking at immediately<br>6    before the lunch break, which is Exhibit 408.<br>7  A.  Yes.<br>8  Q.  And specifically turning your<br>9    attention to page 3833 of 408, are you there?<br>10  A.  Yes.<br>11  Q.  Okay. In the e-mail dated | Defendant's Objections: (124:1-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602 |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 12    December 7, 2009, Exhibit 408, the attachment,<br>13    there are two attachments. One of the<br>14    attachments is a draft of the policy form from<br>15    Mr. Walden. Do you recall that before the lunch<br>16    break?<br>17  A.  Yes.<br>18  Q.  On page 3833 is the exclusion of war,<br>19    military action and terrorism in Mr. Walden's<br>20    form. Is that correct?<br>21  A.  Yes.<br>22  Q.  Okay. That exclusion has three<br>23    parts, A, B and C, and there is a Roman numeral 2<br>24    at the bottom but no text after that. Is that<br>25    correct? | Plaintiff's Response:<br>Relevant to bad faith; foundation present; not speculative; offered for non-hearsay purpose; statement of party opponent |
| Page 125<br>2  A.  That's correct.<br>3  Q.  Okay. Now if you turn to Exhibit<br>4    419, which is dated December 1, 2009, six days<br>5    before Exhibit 408, there is a version of a war<br>6    exclusion that begins on page 4351. Is that right?<br>7<br>8  A.  That's correct.<br>9  Q.  How many subparts as to the entire<br>10    section exclusions applicable to all sections of<br>11    this policy, how many subparts are there in this<br>12    draft of the exclusions? | Defendant's Objections:<br>(125:1-12, 20-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602 |
| 14  A.  In 4351?<br>15  Q.  Yes, and continuing on to 4352. | Plaintiff's Response:<br>Relevant to bad faith; foundation present; not |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 20  A.  Sorry. It appears that it starts on<br>21       4351, subsection 4A, and it goes through I.<br>22  Q.  Okay. Looking at 3833 and comparing<br>23       it against subparts 4A, B and C on page 4351 and<br>24       4352 of Exhibit 419, those appear to be<br>25       identical. Is that right? | speculative; offered for non-hearsay purpose; statement of party opponent. |
| Page 126<br>2  Q.  Please take a moment and review it<br>3       for yourself.<br><br>5  A.  Yes.<br>6  Q.  Okay. Then in this December 1, 2009<br>7       draft, that is in Exhibit 419, there are<br>8       additional exclusions beginning with D and<br>9       continuing on through I. Isn't that right?<br><br>11  A.  Yes.<br>12  Q.  But if you go to the December 7 draft<br>13       on page 3833, there is no D, E, F, G, H and I, is<br>14       there?<br><br>16  A.  No. As I said earlier, this one<br>17       looks incomplete.<br>18  Q.  Okay. So looking at page 3833,<br>19       beginning with the last sentence, and the<br>20       sentence begins "With respect to any action," can<br>21       you please read that aloud.<br><br>23  A.  "With respect" -- | Defendant's Objections:<br>(126:2-3, 5-9, 11-14, 16-21, 23) Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br><br>Plaintiff's Response:<br>Relevant to bad faith; foundation present; not speculative; offered for non-hearsay purpose; statement of party opponent |
| Page 127<br>1  A.  "With respect to any action that<br>2       comes within the terms of this exclusion and<br>3       involves nuclear reaction or radiation or<br>4       radioactive contamination, this war and | Defendant's Objections:<br>(127:1-10) Designation includes question without answer; as to 1-7, Record objections.  Further, Policy |

| Deposition Designation | Objection & Response |
|---|---|
| military<br>5       action exclusion supersedes the terms set forth<br>6       under conditions applicable to all sections 3<br>7       exclusions, paragraph D."<br>8    Q.   Okay. So what do you understand to<br>9       be the import of Mr. Walden's suggested revision<br>10      by this paragraph on page 3833?<br><br>15   Q.   And if you turn back to the<br>16      December 1st version, looking at page 4351 and<br>17      4352, Roman numeral 3 doesn't have a section D,<br>18      does it?<br><br>20   A.   No.<br>21   Q.   But section 4 does?<br><br>23   A.   Section 4 does, yes.<br>24   Q.   What is the exclusion that is set<br>25      forth in section D in Exhibit 419 in the draft | negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br>Plaintiffs' Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative.<br><br><br>Defendant's Objections:<br>(127:15-18, 20-21, 23-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 128 | Defendant's Objections: |
| 1    dated December 1, 2009? What does it provide | (128:1-2, 4-10, 12-17, 20-25) |
| 2    for? | Record objections.  Further, Policy negotiations, |
| | underwriting not relevant to |
| 4  A.  Any weapon of war, imploding atomic | any of Plaintiffs' claims for |
| 5    fission or radioactive force whether in time of | breach of the contract or duty of good faith or damages; this |
| 6    peace or war. | testimony is a waste of time; |
| 7  Q.  And I just want to make sure that we | causes confusion; is |
| 8    are on the same page. D, the word after "war," | prejudicial. Further, no foundation, hearsay |
| 9    it says "any weapon of war employing atomic | communications.   FRE 401; |
| 10    fission, not imploding," is that right? | 403; 801; 802; 602 |
| | |
| 12  A.  Employing. | Plaintiff's Response: |
| 13  Q.  Thank you. It appears to me, please | Relevant to bad faith; offered |
| 14    correct me if you disagree, that what Mr. Walden | for non-hearsay purpose; statement of party opponent; |
| 15    was suggesting with respect to the language on | not speculative; foundation present. |
| 16    page 3833 was the deletion of paragraph D. Is | |
| 17    that right? | |
| | |
| 20  A.  I don't agree with that. | |
| 21  Q.  Why do you not agree with it? | |
| 22  A.  I just look at this when you start | |
| 23    with the two and these being in the midst of, you | |
| 24    know, revisions, I just think something was | |
| 25    missing, unless this was just so the difference | |
| Page 129 | Defendant's Objections: |
| 1    in this form, the way I look at it, the 3833 is | (129:1-8, 11-21, 24-25) Record objections.  Further, |
| 2    that this form was only for exclusions of war, | Policy negotiations, |

| Deposition Designation | Objection & Response |
|---|---|
| 3　　　military action, which is a little bit different<br>4　　　than the 4351 because it says exclusions<br>5　　　applicable to all sections of the policy.<br>6　Q.　Okay. So with respect to 4351<br>7　　　through 4352, what do you consider to be the<br>8　　　exclusions that constitute the war exclusion?<br><br>11　Q.　Okay. When -- the notation in<br>12　　　Exhibit 408?<br>13　A.　Let me make sure I am looking at the<br>14　　　right one. Yes.<br>15　Q.　The notation that begins with "With<br>16　　　respect to any action," when the statement is<br>17　　　made "this war and military action exclusion<br>18　　　supersedes the terms set forth under conditions<br>19　　　applicable to all sections 3 exclusions,<br>20　　　paragraph D," what do you think that is in<br>21　　　reference to?<br><br>24　A.　I don't know. That is why I said I<br>25　　　would go back to what is in section 3 exclusions, | underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.  FRE 401; 403; 801; 802; 602<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| Page 130<br>1　　　paragraph D, to see what it was, but when we went<br>2　　　back to section 3, well, unless there is another<br>3　　　section under exclusions, I don't see a 3D.<br>4　Q.　Right. So in fact Roman numeral 3<br>5　　　under the December 1st version, it is titled<br>6　　　"Claims Administration," right?<br><br>9　Q.　Okay. And Roman numeral 4, that is<br>10　　　the section that has the title exclusions<br>11　　　applicable to all sections of this policy. Is<br>12　　　that right? | Defendant's Objections:<br>(130:1-6, 9-12. 14-17, 20)<br>Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.  FRE 401; 403; 801; 802; 602 |

| Deposition Designation | Objection & Response |
|---|---|
| 14  A.   Yes.<br>15  Q.   Isn't it possible that Mr. Walden<br>16        simply made a typo in referencing Roman numeral 3<br>17        as opposed to 4?<br><br>20  A.   I don't know. | Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| Page 134<br>8  Q.   Okay, Ms. Phillips, could you please<br>9        take a look at what has been previously marked as<br>10       Exhibit 410. It should be in the stack of<br>11       documents to your right. Just please take a<br>12       moment to familiarize yourself with this document<br>13       and let me know when you are ready for questions.<br>14  A.   I am ready.<br>15  Q.   Exhibit 410, the first e-mail in the<br>16       chain in terms of time is one that is dated<br>17       Monday, December 7, 2009 at 8:20 p.m. from George<br>18       Walden to Martin Ridgers,<br>19       GeorgeWalden@ARS.aon.com and Wanda Phillips. Do<br>20       you see that?<br>21  A.   Yes.<br>22  Q.   The subject line is re NBC wording.<br>23       Do you see that?<br>24  A.   Yes.<br>25  Q.   In the first paragraph Mr. Walden | Defendant's Objections:<br>(134:8-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| Page 135<br>1        indicates "Here are my comments."<br>2        Do you see that?<br>3  A.   Yes.<br>4  Q.   And then attached to the e-mail<br>5        appears to be another draft of the wording of the | Defendant's Objections:<br>(135:1-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of |

| Deposition Designation | Objection & Response |
|---|---|
| 6      proposed NBC policy. Is that right?<br>7    A.  Yes.<br>8    Q.  Do you recall receiving this e-mail<br>9         on or about December 7?<br>10   A.  No.<br>11   Q.  Do you have any reason to believe you<br>12        did not receive it?<br>13   A.  No.<br>14   Q.  In this draft, if you will look at<br>15        page Aon 3882, this version has in the left-hand<br>16        corner the reference to a policy form MP 201 with<br>17        (01-05). Do you see that?<br>18   A.  Yes.<br>19   Q.  All right. And in this version of<br>20        the exclusions applicable to all sections of the<br>21        policy, there is a subsection D as well as an E<br>22        through J. Is that correct?<br>23   A.  That's correct.<br>24   Q.  Okay. In the e-mail above the one<br>25        that Mr. Walden sent, you wrote him an e-mail in | good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| <u>Page 136</u><br>1      response on December 8. Do you see that?<br>2    A.  Yes.<br>3    Q.  What did you tell him or ask him?<br>4    A.  I asked a question actually.<br>5    Q.  Yes.<br>6    A.  This is not the version you want to work off of, correct?<br>7<br>8    Q.  Why did you ask him that question?<br>9    A.  I have no idea. | <u>Defendant's Objections</u>:<br>(136:1-9) Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications. FRE 401; 403; 801; 802; 602 |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | Plaintiff's Response: Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| Page 137<br>16  Q.   In terms of the final version of the<br>17        policy that was issued, do you know which form<br>18        ultimately was used for purposes of the final<br>19        policy as between Mr. Ridgers' form versus Mr.<br>20        Walden's form?<br><br>24  A.   I think it was a bit of both. | Defendant's Objections: (137:16-20, 24)Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br><br>Plaintiff's Response: Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| Page 152<br>13  Q.   Okay. Could you please take a look<br>14        at Exhibit 413. That is also in the stack to<br>15        your right. So, Ms. Phillips, did you receive<br>16        the e-mail that Mr. Ridgers apparently sent on<br>17        December 16, 2009 at approximately 2:07 Eastern | Defendant's Objections: (152:13-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; |

| Deposition Designation | Objection & Response |
|---|---|
| 18      time a.m. to George Walden? You appear as a cc.<br>19      Do you see that?<br>20  A.  Yes.<br>21  Q.  Okay. And the subject line reads<br>22      "Martin's final form, 12-15-091, in parens, 2,<br>23      close parens.doc."<br>24      Do you see that?<br>25  A.  Yes. | causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br>Plaintiff's Response: Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| Page 153<br>1  Q.  Do you recognize the reference to<br>2      Martin's final form 12-15-09, parens, 2, close<br>3      parens.doc?<br>4  A.  Do I recognize it?<br>5  Q.  Yes, is it a numbering or naming<br>6      protocol used by OneBeacon? Are you familiar?<br>7  A.  No.<br>8  Q.  Okay. What do you understand -- what<br>9      did you understand Mr. Martin to be saying to Mr.<br>10      Walden in this e-mail?<br>11  A.  He is providing him with yet another<br>12      version of the policy, and I would think that he<br>13      is giving it that name, so he knows where he is<br>14      as far as what version it is.<br>15  Q.  Okay. He calls it a final form.<br>16      Isn't that right?<br>17  A.  Um-hum.<br>18  Q.  He also indicates "David had to leave<br>19      about three-quarters through the review, I have<br>20      attached the changes to the document, you | Defendant's Objections: (153:1-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br>Plaintiff's Response: Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |

| Deposition Designation | Objection & Response |
|---|---|
| should<br>21     not find anything that significantly changes the<br>22     coverage as we have discussed."<br>23     Do you see that?<br>24  A.  Yes.<br>25  Q.  What do you understand Mr. Ridgers to | |
| Page 154<br>1     be saying to Mr. Walden in that sentence?<br>2  A.  I have added more changes. Here is a<br>3     copy of it, and we are working on it. I can't<br>4     speculate. We had a compliance guy before Mike<br>5     Pepitone, and I am trying to think of his last<br>6     name. His first name is David. I don't know if<br>7     that is who he is referring to.<br>8  Q.  Okay, but the language -- well,<br>9     strike that. The David in the first sentence,<br>10    you believe that may be referring to David in the<br>11    compliance department, correct?<br>12  A.  That's correct.<br>13  Q.  All right. Focusing on the language<br>14    that says "You should not find anything that<br>15    significantly changes the coverage as we have<br>16    discussed," what do you think that means?<br>17  A.  I think it means that he has made<br>18    some additional changes, but for the most part it<br>19    is all of the changes that they were discussing<br>20    previously.<br>21  Q.  The reference to you should not find<br>22    anything that significantly changes the coverage,<br>23    that language is conveying that Mr. Ridgers | Defendant's Objections: (154:1-25) Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br>Plaintiff's Response: Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |

| Deposition Designation | Objection & Response |
|---|---|
| had<br>24      not changed the scope of coverage in terms of the<br>25      changes that he had made, does it not? | |
| <u>Page 155</u><br>1      A.   I think it is saying I haven't made<br>2           any additional changes to what we have been<br>3           reviewing that would change the scope of the<br>4           coverage. | <u>Defendant's Objections</u>: (155:1-4) Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications. FRE 401; 403; 801; 802; 602<br><br><u>Plaintiff's Response</u>: Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| <u>Page 164</u><br>6      Q.   Exhibit 415, there is an e-mail from<br>7           George Walden on December 17, 2009 sent at 7:08<br>8      A.   m., and it is to Wanda Phillips and Martin<br>9           Ridgers with cc's to Laura Comerford and Susan<br>10          Weiss, is that correct? It's on page 3998 in the<br>11          bottom half of the page.<br>12     A.   No. This actually looks like it is<br>13          coming from Susan Weiss. | <u>Defendant's Objections</u>: (164:6-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 14   Q.   Okay. I am actually, so if you look<br>15        at page 3998, right?<br>16   A.   Okay. I am at the top. You are at<br>17        the bottom.<br>18   Q.   Right. At the bottom half of the<br>19        page.<br>20   A.   Yes.<br>21   Q.   In Mr. Walden's e-mail, he says "To<br>22        make things real easy, see the attached and note<br>23        the changes in red. This is the final version.<br>24        These changes are critical. Please review and<br>25        advise approval of the form and your ability to | communications.   FRE 401; 403; 801; 802; 602<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| <u>Page 165</u><br>1         bind coverage. I need to have an answer not<br>2         later than 1 p.m. EST today. Any and all changes<br>3         are consistent with our understanding and<br>4         previous discussions and agreements:" Do you see<br>5         that?<br>6    A.   Yes, I do.<br>7    Q.   Do you recall receiving this e-mail<br>8         from Mr. Walden on or about December 17, 2009?<br>9    A.   No, I don't.<br>10   Q.   Do you recall generally -- I'm sorry.<br>11        Do you have any reason to believe you didn't<br>12        receive this e-mail?<br>13   A.   No, I do not.<br>14   Q.   Do you recall generally during this<br>15        time frame, December 17, 2009, that Aon, Mr.<br>16        Walden was pushing for there to be a final<br>17        version of the policy so that OneBeacon | <u>Defendant's Objections</u>: (165:1-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |

| Deposition Designation | Objection & Response |
|---|---|
| 18      would<br>     bind coverage?<br>19   A.   I have no reason to think not,<br>20      looking at it.<br>21   Q.   There is a second e-mail that is sent<br>22      on the same date, December 17, 11:47,<br>     from Susan<br>23      Weiss to George Walden cc'ing Laura<br>     Comerford,<br>24      Martin Ridgers, herself, Susan Weiss, and<br>     Wanda<br>25      Phillips. Do you see that? | |
| Page 166<br>1   A.   Yes, I do.<br><br>16   Q.   It states "Please advise where we are<br>17      at with these final items. We have got to get<br>18      this to the client today. They will not wait<br>     any<br>19      longer." Do you see that?<br>20   A.   Yes.<br>21   Q.   Do you recall receiving this e-mail?<br>22   A.   No.<br>23   Q.   Do you have any reason to believe you<br>24      didn't receive it?<br>25   A.   No. | Defendant's Objections: (166:1, 16-25) Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications. FRE 401; 403; 801; 802; 602<br><br>Plaintiff's Response: Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| Page 167<br>21   Q.   Can you please look at Exhibit 416 in<br>22      the stack that is next to you. There is an<br>23      e-mail from Mr. Ridgers sent on December<br>     17, 2009 | Defendant's Objections: (167:21-25) Record objections. Further, Policy negotiations, underwriting not relevant to any of |

| Deposition Designation | Objection & Response |
|---|---|
| 24     at 7:15 p.m. Eastern Standard Time to George<br>25     Walden, Susan Weiss and Wanda Phillips. Do you | Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br>Plaintiff's Response: Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| Page 168<br>1     see that?<br>2   A.   Yes.<br>3   Q.   Again, the subject line reads<br>4     "Martin's underscore final underscore form Rev 1<br>5     underscore 2009 1217.doc." Do you see that?<br>6   A.   Yes.<br>7   Q.   In this e-mail, Mr. Ridgers indicates<br>8     that he is attaching his last version with your,<br>9     Mr. Walden's changes. Is that correct?<br>10   A.   Yes.<br>11   Q.   He then goes on to state that he has<br>12     merged the document with George's document and<br>13     that is attached. Do you see that?<br>14   A.   Yes. | Defendant's Objections: (168:1-14) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br>Plaintiff's Response: Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |

**475**

| Deposition Designation | Objection & Response |
|---|---|
| | |
| Page 169<br>17  Q.   Can you please look at page 4175.<br>18         4175 begins with Roman numeral 4, exclusions<br>19         applicable to all sections of the policy.<br>20         Sections A, B, C, D, capital E within parens,<br>21         lower case B, close parens, this appears to be<br>22         the same language as the language in the draft<br>23         that we were just reviewing in Exhibit 415, is it<br>24         not? | Defendant's Objections:<br>(169:17-24) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| Page 170<br>1  A.   It appears to be, but it is here<br>2         twice, so I don't know which one because if you<br>3         look at 4144, it looks like the same thing again.<br>4  Q.   Right, and Mr. Ridgers explains in<br>5         his e-mail that he is attaching a version with<br>6         Mr. Walden's changes and then he said he is also<br>7         attaching a merged document, right?<br>8  A.   Right.<br>9  Q.   Okay. So regardless of which version<br>10        you are looking at, the provisions Roman numeral | Defendant's Objections:<br>(170:1-12, 14) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602 |

| Deposition Designation | Objection & Response |
|---|---|
| 11      4A, B, C, D, capital E, within parens, lower case <br> 12      B, close parens, they are the same, correct? <br><br> 14   A.   They appear to be the same. | Plaintiff's Response: <br> Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| Page 173 <br> 3      MS. COYOCA: I would like to mark a <br> 4      new exhibit, Exhibit 420, an e-mail <br> 5      exchange labeled AON NBCU 0004376 through <br> 6      4379. <br> 7      (Exhibit 420, Document bearing Bates <br> 8      numbers AON NBCU 0004376 through 4379, was <br> 9      so marked for identification, as of this <br> 10      date.) <br> 11   Q.   Ms. Phillips, I want to ask you about <br> 12      the e-mail that is dated December 17, 2009 sent <br> 13      at 8:02 p.m. Eastern Standard Time from Martin <br> 14      Ridgers to George Walden with a cc to you, <br> 15      subject re Martin's underscore final underscore <br> 16      form Rev 1 underscore 2009 12-17.doc. Do you see <br> 17      that? <br> 18   A.   Yes. <br> 19   Q.   In this e-mail, Mr. Ridgers -- excuse <br> 20      me. Did you receive this e-mail on or about the <br> 21      time it was sent? <br> 22   A.   I have no idea. <br> 23   Q.   Do you have any reason to believe you <br> 24      didn't receive it? <br> 25   A.   No, I do not. | Defendant's Objections: <br> (173:3-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602 <br><br> Plaintiff's Response: <br> Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| Page 174 <br> 1   Q.   This e-mail indicates "George, the | Defendant's Objections: <br> (174:1-11, 13-17, 19-25) |

**477**

| Deposition Designation | Objection & Response |
|---|---|
| 2    merged document is the agreed form we can bind<br>3    today. Please remember it will be changed due to<br>4    formatting and numbers, punctuation, but no<br>5    coverage changes."<br>6    Do you see that?<br>7    MR. KEELEY: Objection, relevance.<br>8   A.   Yes, I see that.<br>9   Q.   In Exhibit 416, Mr. Ridgers referred<br>10    to the fact that he had merged Mr. Walden's last<br>11    version with his document, did he not?<br><br>13   A.   He did.<br>14   Q.   Do you have any reason to believe<br>15    that the merged document referred to in Exhibit<br>16    420 is not the document that is attached as<br>17    Martin's form in Exhibit 416?<br><br>19   A.   I do not.<br>20    MS. COYOCA: I want to mark as<br>21    Exhibit 421 a new exhibit labeled Bates<br>22    control AON NBCU 0004380 through 4382.<br>23    (Exhibit 421, Document bearing Bates<br>24    numbers AON NBCU 0004380 through 4382, was<br>25    so marked for identification, as of this | Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications. FRE 401; 403;<br><br>Plaintiff's Response: Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| Page 175<br>1    date.)<br>2   Q.   Ms. Phillips, directing your<br>3    attention to the e-mail that was sent<br>4    December 18, 2009 with a time stamp of 3:<br>5    p.m. from yourself to Laura Comerford, cc George<br>6    Walden and Susan Weiss. Do you see the e- | Defendant's Objections: (175:1-10, 15-17) Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| mail?<br>7   A.   Yes.<br>8   Q.   In it, you state "Thank you again for<br>9         the bind order."<br>10         Do you see that?<br><br>12   A.   Yes.<br>13   Q.   Did you send this e-mail?<br><br>15   A.   I would think so.<br>16   Q.   Do you have any reason to believe you<br>17         didn't?<br><br>19   A.   No. | testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802; 602<br><br>Plaintiffs' Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present.<br><br>Defendant's Objections:<br>(145:12-13, 19)<br>Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403; 801; 802<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent. |
| Page 176<br>3         MS. COYOCA: I want to mark as<br>4         Exhibit 422 a document with Bates control<br>5         label AON NBCU 0004383 through<br>         0004410.<br>6         (Exhibit 422, Document bearing Bates<br>7         numbers AON NBCU 0004383 through | Defendant's Objections:<br><br>(176:3-23, 25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach |

**479**

| Deposition Designation | Objection & Response |
|---|---|
| 0004410,<br>8　　was so marked for identification, as of<br>9　　this date.)<br>10　Q.　Ms. Phillips, this e-mail exchange in<br>11　　Exhibit 422 appears to begin with an e-mail dated<br>12　　Tuesday January 12, 2010 from you to Mike<br>13　　Pepitone, subject NBC. Do you see that? It is<br>14　　on page 4384.<br>15　A.　Yes.<br>16　Q.　Do you see that e-mail?<br>17　A.　Yes, I do.<br>18　Q.　Did you send the e-mail?<br>19　A.　I would imagine so.<br>20　Q.　Do you have any reason to believe you<br>21　　did not?<br>22　A.　No.<br>23　Q.　Why were you sending it?<br><br>25　A.　It looks like we were looking for the | of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403<br><br>Plaintiff's Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present. |
| Page 177<br>1　　status of policy issuance. | Defendant's Objections:<br><br>(177:1) Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications. FRE 401; 403<br><br>Plaintiff's Response:<br>Relevant to bad faith; |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| <u>Page 194</u><br>12  Q.   Could you please look at Exhibit 422.<br>13         Before we were interrupted, I was asking you<br>14         about the chain of e-mails that began with the<br>15         e-mail that you sent on Tuesday, January 12, 2010<br>16         at 11:22 a.m. We discussed the e-mail above from<br>17         Mr. Pepitone and Mr. Pepitone's response sent<br>18         also on January 12 at military time 14:47. Do<br>19         you recall that testimony?<br><br>22  A.   Yes.<br>23  Q.   You responded to Mr. Pepitone at<br>24         12:09 p.m. also on the 12th, and you asked him to<br>25         send you whatever previously had been provided to | <u>Defendant's Objections:</u><br>(194:12-19) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications.   FRE 401; 403; 801; 802<br><br>(194:22-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial.  FRE 401; 403<br><br><br><u>Plaintiff's Response:</u><br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| Page 195 | <u>Defendant's Objections:</u> |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 1      Martin. Do you see that?<br><br>3   A.   Yes.<br>4   Q.   Mr. Pepitone then responded and<br>5      provided you with "The original draft I received<br>6      from you, and from that I segmented out the<br>7      different coverage parts."<br>8      Do you see that?<br><br>10   A.   Yes.<br>11   Q.   You then forwarded that e-mail on<br>12      three days later on January 15, 2010 at 3:41 p.m.<br>13      to Ms. Weiss, Mr. Walden and Laura Comerford in<br>14      an e-mail that, as I previously indicated, dated<br>15      January 15, 2010. Do you see that?<br>16   A.   Yes.<br>17   Q.   Did you send the January 15, 2010<br>18      e-mail?<br><br>21   A.   I have no reason to think I did not.<br>22   Q.   If you look at the attachment to this<br>23      e-mail chain, it appears to be a version of an<br>24      insurance policy that is contained on pages 4385<br>25      through 4410. Do you see that? | (195:1) Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br>Defendant's Objections:<br>(195:3-8) Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial; hearsay communications. FRE 401; 403; 801; 802<br><br>Plaintiffs' Objections:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent.<br><br>Defendant's Objections:<br>(195:10-18, 21-25) Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications. FRE 401; 403; 801; 802 <br><br> Plaintiff's Response: Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |
| Page 197 <br> 4  Q.  Turning your attention back to <br> 5        Exhibit 416, are you at Exhibit 416? <br><br> 7  Q.  Could you please turn to page 4175. <br><br> 9  Q.  Looking at subpart A of the exclusion <br> 10      number 1 that is in section 3 and the document <br> 11      attached to the e-mail in Exhibit 422, I would <br> 12      like to direct your attention to number 1, it <br> 13      provides "The policy does not insure against loss <br> 14      or damage caused directly or indirectly by 'war, <br> 15      including undeclared or civil war.'" Do you see <br> 16      that? <br><br> 18  A.  Yes. <br> 19  Q.  That is the same provision, uses the <br> 20      same language as the exclusion A set forth | Defendant's Objections: <br><br> (197:4-5) <br> Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications. FRE 401; 403; 801; 802; 602 <br><br> Plaintiffs' Response: Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; not speculative; foundation present. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| on<br>21      page 4175. Is it not?<br><br>23  A.  Yes.<br>24  Q.  And do you agree with me that the<br>25      exclusion number 2 in the policy that is<br>       attached | **Defendant's Objection:**<br>(197:9-16)<br>Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications. FRE 401; 403<br><br>**Plaintiffs' Response:**<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present.<br><br>**Defendant's Objection:**<br>(197:18-21)<br>Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications. FRE 401; 403<br><br>**Plaintiffs' Response:** |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present. |
| | <u>Defendant's Objections:</u> (197:23-25) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403. |
| | <u>Plaintiffs' Response:</u> Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present. |
| <u>Page 198</u><br>1     to Exhibit 422 is the same as the language for<br>2     the warlike action exclusion in subpart B on page<br>3     4175?<br><br>5   A.  Yes.<br>6   Q.  Exclusion 3 in the policy that is<br>7     attached to Exhibit 422 begins with the same<br>8     language that is in subpart C on page 4175,<br>9     however the second sentence in exclusion 3 is in<br>10    a different position than the language on | <u>Defendant's Objections:</u> (198:1-3, 5-11, 13-23,) Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403.<br><br><u>Plaintiffs' Response:</u> Relevant to bad faith; |

| Deposition Designation | Objection & Response |
|---|---|
| page<br>11    4175. Isn't that correct?<br><br>13  A.  I have to read it.<br>14  Q.  Okay.<br>15  A.  So say what you said again just so I<br>16      am clear.<br>17  Q.  Yes. On page 4390, exclusion 3, the<br>18      first sentence of exclusion 3 which begins<br>19      "Insurrection, rebellion, revolution, et<br>        cetera,"<br>20      that first sentence which ends with "against any<br>21      of these," that sentence is the same as exclusion<br>22      C in or on page 4175. That is the first sentence<br>23      of 3 and exclusion C. Is that correct?<br><br>25  A.  That's correct. | offered for non-hearsay purpose; statement of party opponent; foundation present.<br><br>Defendant's Objection:<br>(198:25)<br>Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications. FRE 401; 403.<br><br>Plaintiff's Response:<br>Plaintiffs' Response: Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present. |
| Page 199<br>1  Q.  All right. The sentence that is the<br>2      second sentence in number 3 on page 4390 which<br>3      states "Such loss or damage is excluded<br>4      regardless of any other cause or event that<br>5      contributes concurrently or in any sequence to<br>6      the loss," that same sentence appears on page<br>7      4175. However, it is in a different position<br>8      than where it appears in or on page 4390. | Defendant's Objections:<br>(199:1-9, 17-18, 20-24)<br>Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, |

| Deposition Designation | Objection & Response |
|---|---|
| Isn't<br>9    that correct?<br><br>11  A.  That's correct.<br>12  Q.  Now, if you go to exclusion 4 on page<br>13     4390 and you look at exclusion D on page<br>      4175 of<br>14     Exhibit 416, the language between 4 and D is<br>15     different. Isn't that right?<br><br>17  A.  It reads differently.<br>18  Q.  What is the difference?<br><br>20  A.  "Any weapon of war including atomic"<br>21     where the other one said "any weapon of war<br>22     employing."<br>23  Q.  So exclusion 4 on page 4390 uses the<br>24     word "including," correct? | hearsay communications. FRE 401; 403.<br><br>Plaintiffs' Response:<br>Relevant to bad faith; offered for non-hearsay purpose; statement of party opponent; foundation present.<br><br>Defendant's Objections: (199:11-15)<br>Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403.<br><br><br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 200<br>1  A.  Yes.<br>2  Q.  And the exclusion D on page 4175 uses<br>3     the word "employing" rather than "excluding,"<br>4     correct?<br><br>6  A.  Rather than "including."<br>7  Q.  Excuse me. I want to start again.<br>8     Section D on page 4175 uses the word "employing"<br>9     rather than the word "including." Is that | Defendant's Objections: (200:1-4, 6-10, 12-16, 19-24)<br>Record objections.  Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no |

| Deposition Designation | Objection & Response |
|---|---|
| 10      correct?<br><br>12   A.   Yes.<br>13   Q.   Did you have any conversations with<br>14         anyone at Aon prior to the time Mr. Pepitone<br>15         provided this draft about that change in the<br>16         language?<br><br>19         Go ahead.<br>20   A.   No, I did not.<br>21   Q.   Did you have any conversations with<br>22         Mr. Ridgers about the change in language between<br>23         subpart D on page 4175 and the language in number<br>24         4 on page 4390? | foundation, hearsay communications.   FRE 401; 403.<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 201<br>1   A.   So to be clear, your question is did<br>2         I have any conversation with Martin Ridgers<br>3         regarding the word "employing" versus<br>4         "including"?<br>5   Q.   Right. The change that was made to<br>6         the exclusion as to a weapon of war and atomic<br>7         fission or radioactive force?<br><br>10   A.   No.<br>11   Q.   Do you believe that the change in<br>12         wording from "any weapon of war employing atomic<br>13         fission or radioactive force whether in time of<br>14         peace or war" is different or has a different<br>15         meaning than the wording of exclusion 4 in the<br>16         policy attached to Exhibit 422 that provides "any | Defendant's Objections:<br>(201:1-7, 23-25)<br>Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications. FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br>Defendant's Objection:<br>(201:10-19)<br>Record objections.  Further, Policy negotiations, |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 17   weapon of war including atomic fission or<br>18   radioactive force whether in time of peace or<br>19   war"?<br><br>23   A.   No.<br>24   Q.   You do not believe there is any<br>25       difference in meaning between the two provisions. | underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. No foundation. FRE 401; 403; 602<br><br><br>Plaintiff's Response:<br>Relevant to bad faith; not speculative. |
| Page 202<br>1       Is that correct?<br>2   A.   No.<br>3   Q.   In your view, is the meaning of<br>4       exclusion 4 an exclusion for any loss that is<br>5       caused by a weapon of war that uses or employs<br>6       atomic fission or radioactive force?<br><br>10   A.   Can you repeat your question exactly.<br>11   Q.   Yes. In your view, is the meaning of<br>12       exclusion 4 that is on page 4390 in Exhibit 422,<br>13       is this an exclusion for loss that is caused by a<br>14       weapon of war that uses or employs atomic fission<br>15       or radioactive force?<br><br>19   A.   No. My opinion would be as Martin<br>20       pointed out on the first page, there may be some<br>21       changes as far as cleaning of the wording, which<br>22       is primarily what Mike Pepitone did. I don't | Defendant's Objections:<br>(202:1-6)<br>Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications. FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br>Defendant's Objections:<br>(202:10-15, 19-25)<br>Record objections. Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or |

| Deposition Designation | Objection & Response |
|---|---|
| 23       look at this as in any way trying to change the<br>24       policy coverages.<br>25   Q.   Okay. What do you understand | duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications. FRE 401; 403; 602.<br><br>Plaintiff's Response: Relevant to bad faith; not speculative |
| <u>Page 203</u><br>1       exclusion D on page 4175 to mean? What does it<br>2       exclude?<br><br>6   A.   Any weapon of war with atomic fusion.<br>7   Q.   Okay. What do you understand<br>8       exclusion 4 on page 4390 to exclude?<br><br>10   A.   Any weapon of war with including<br>11      atomic fusion.<br>12   Q.   Ms. Phillips, Atlantic has contended<br>13      in the case, in the course of this case, that<br>14      exclusion 4 on page 4390, that that language<br>15      means that any loss that is caused by any weapon<br>16      of war without reference to atomic fission or<br>17      radioactive force is excluded under this<br>18      provision.<br>19   A.   Without any reference to radioactive<br>20      force?<br>21   Q.   Correct. Do you agree with that<br>22      position? | <u>Defendant's Objections:</u><br>(203:1-2)<br>Record objections.  Further, Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Further, no foundation, hearsay communications. FRE 401; 403; 602<br><br><u>Plaintiff's Response:</u><br>Relevant to bad faith; not speculative<br><br>(203:6-8, 10-22)<br>Record objections.  Policy negotiations, Deponent's interpretation not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | confusion; is prejudicial. FRE 401; 403; 601.<br><br>Plaintiff's Response: Relevant to bad faith; not speculative |
| Page 204<br>1  A.  I again go back to it says including<br>2      atomic fusion or and this one says employing.<br>3      Or. They both had one or the other. I don't see<br>4      that as being different. I don't see number 4 on<br>5      4390 being different than letter D on 4175. I<br>6      don't think that was the case at all.<br>7  Q.  Ms. Phillips, during the December<br>8      2009, January 2010 time period, are you aware of<br>9      any discussions between any representative from<br>10     Atlantic and any representative from Aon in which<br>11     the Atlantic representative advised the Aon<br>12     representative that the meaning of exclusion 4 on<br>13     page 4390 was different and had been changed from<br>14     the meaning that is on page 4175 set forth in<br>15     subpart D?<br><br>18  A.  I don't recall any conversations at<br>19     all regarding war. At all. What I do recall is<br>20     every time we came up with a copy of the policy,<br>21     we shared it, but we didn't talk about war at | Defendant's Objections: (204:1-15, 18-25) Record objections. Policy negotiations, Deponent's interpretation not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403; 601<br><br>Plaintiff's Response: Relevant to bad faith; not speculative |

| Deposition Designation | Objection & Response |
|---|---|
| 22     all. At least I didn't have any conversations.<br>23   Q.   And you are not aware of any such<br>24      conversations. Is that correct?<br>25   A.   No. | |
| **Page 205**<br>1   Q.   Ms. Phillips, if Atlantic intended to<br>2      change the meaning of exclusion D as it is stated<br>3      on 4175 to broaden the meaning to any weapon of<br>4      war without reference to atomic fission or<br>5      radioactive force, do you believe that you would<br>6      have had an obligation to disclose that to Aon?<br>7   A.   We --<br><br>12   A.   We would not do that. I mean we were<br>13      working with Aon to create a policy form. We<br>14      were working as partners with the form and<br>15      sharing that policy form with the client. We<br>16      wouldn't change coverage without sharing that.<br>17      That is not what we do or what I would be a part<br>18      of. That is not what was done.<br>19      Every draft for the most part was<br>20      sent to Aon for review and we worked as partners<br>21      to put the policy together.<br>22   Q.   Thank you. At some point in time<br>23      did you or were you involved with the declaration<br>24      of the television show Dig to the NBC Universal<br>25      policy issued by Atlantic? | **Defendant's Objections:**<br>(205:1-7, 12-25)<br>Record objections. Policy negotiations, Deponent's interpretation not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403; 601.<br><br><br>**Plaintiff's Response:**<br>Relevant to bad faith; not speculative |
| **Page 206** | **Defendant's Objections:** |

| Deposition Designation | Objection & Response |
|---|---|
| 1   A.   Yes.<br>2   Q.   What was your involvement in that<br>3         regard?<br>4   A.   Prior to NBC declaring Dig going<br>5         through the normal channels in which they sent us<br>6         a declaration and they tell us how many episodes<br>7         and what the cost is going to be, prior to an<br>8         official declaration, I received a telephone call<br>9         from Andrea Garber stating that this was on the<br>10        slate discussions to be produced. They weren't<br>11        100 percent sure where it was going to be filmed,<br>12        but it is likely that it would be filmed in<br>13        Jerusalem.<br>14   Q.   Do you recall approximately when you<br>15        received that call?<br>16   A.   No.<br>17   Q.   Do you believe it was sometime in<br>18        2013?<br>19   A.   It was prior to them declaring the<br>20        actual production.<br>21   Q.   Okay. Do you recall if it was<br>22        months before the production was declared to the<br>23        policy?<br>24   A.   A couple of months. Not more than<br>25        two, but I honestly don't know the exact time. I | (206:1-25)<br>Record objections.  Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 207<br>1         cannot be sure.<br>2   Q.   When Ms. Garber called you about this<br>3         potential television show that was going to be<br>4         shot in Israel, what did she tell you about | Defendant's Objections:<br>(207:1-25)<br>Record objections.  Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| the<br>5　　production, to your recollection?<br>6　A.　From what I could recall, there<br>7　　wasn't a lot of details just yet. It wasn't what<br>8　　they would call given the green light yet, which<br>9　　means to go ahead and film the production, but it<br>10　　was with creative and it was something that they<br>11　　were looking at, looking at doing.<br>12　　I remember us making a joke and<br>13　　saying we don't understand why they can't just<br>14　　film it on a desert, they all look alike, but<br>15　　from that conversation what was said is that I<br>16　　would need her to get additional details before<br>17　　we could determine, you know, what, if anything,<br>18　　we would be willing to do if there would be any<br>19　　extra exclusions, so on and so forth.<br>20　　In the meantime, what we did was we<br>21　　had in speaking with Peter Williams, the manager<br>22　　at the time for sure at that point, we involved<br>23　　our risk control team, and our risk control was<br>24　　talking with NBC's risk control and security team<br>25　　to get an idea of what was planned. | of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br>Plaintiff's Response: Relevant to bad faith |
| Page 208<br>1　Q.　Okay. You made reference to a need<br>2　　for additional details before a determination<br>3　　could be made as to adding Dig to the | Defendant's Objections: (208:1-25)<br>Record objections.  Policy negotiations, underwriting |

| Deposition Designation | Objection & Response |
|---|---|
|     policy. Is<br>4    that right?<br>5  A.  Yes.<br>6  Q.  What additional details were you<br>7    looking for specifically?<br>8  A.  Filming details. Are you going to be<br>9    there to film one episode or are you filming 15<br>10    episodes? Are you going to be there for a week<br>11    or are you going to be filming for three months?<br>12    Are you filming on a closed set or are you<br>13    filming, you know, in the middle of the street?<br>14    Have you been granted permission to do this? How<br>15    many people will be involved? We wanted to have<br>16    underwriting information particularly on the<br>17    plans for filming this production.<br>18  Q.  Ultimately, did you receive the<br>19    information that you were looking for?<br>20  A.  We did.<br>21  Q.  Was there any information that you<br>22    specifically had been looking for that NBC<br>23    Universal refused to provide?<br>24  A.  I don't recall that.<br>25  Q.  Is there any other information that | not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| <u>Page 209</u><br>1    you needed in order to make the determination<br>2    that you felt you could not ask for from NBC<br>3    Universal?<br>4  A.  No, not the case.<br>5  Q.  Now earlier you made reference to the<br>6    fact that you involved our risk control team. | <u>Defendant's Objections</u>:<br>(209:1-25)<br>Record objections. Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 7      Do you recall that? | causes confusion; is prejudicial. FRE 401; 403 |
| 8   A.  I did say our. I don't work there | |
| 9      any more. OneBeacon's risk control team at the | |
| 10     time, yes, I do. | Plaintiff's Response: |
| 11  Q.  Okay. To whom were you referring? | Relevant to bad faith |
| 12  A.  Chuck Reddington, who contracted the | |
| 13     workout to John Smith. Peter Williams also was | |
| 14     heavily involved because he had past experience | |
| 15     from the claims standpoint, with the location | |
| 16     that they were filming and NBC's security team | |
| 17     provided a lot of the information that we needed | |
| 18     as far as how the cast and crew would be secured, | |
| 19     where they would be living, so we ultimately made | |
| 20     a decision that with the current SIR on the | |
| 21     policy, if there was a terrorist attack, let's | |
| 22     just say a car bombing, something of that nature, | |
| 23     we felt that the security team in place was | |
| 24     experienced and would be able to get their team | |
| 25     out of harm's way. | |
| Page 210 | Defendant's Objections: (210:1-25) |
| 1     We made a decision that they could | Record objections. Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; |
| 2     lose a day or two of filming but the SIR that | |
| 3     they currently had in place would cover those, | |
| 4     and we were able to grant coverage. | |
| 5   Q.  And was OneBeacon able to grant | |
| 6     coverage without modifying any of the | |

7060055/015825

| Deposition Designation | | | Objection & Response |
|---|---|---|---|
| | | terms of | causes confusion; is prejudicial. FRE 401; 403 |
| 7 | | the policy? | |
| 8 | A. | That's correct. | |
| 9 | Q. | Was there a different sub-limit put | |
| 10 | | on the Dig production? | Plaintiff's Response: |
| 11 | A. | I don't recall a sub-limit provided. | Relevant to bad faith |
| 12 | Q. | Was there any exclusionary language | |
| 13 | | added to address specifically the Dig production? | |
| 14 | A. | I don't recall any exclusions being | |
| 15 | | added. | |
| 16 | Q. | Were both of those options available | |
| 17 | | to OneBeacon at the time that it made the | |
| 18 | | decision to add Dig as an insured production to | |
| 19 | | the policy? Could it have added either of those | |
| 20 | | things? | |
| 21 | A. | We could have added exclusions or | |
| 22 | | sub-limits or we could have decided not to cover | |
| 23 | | it at all. | |
| 24 | Q. | To your knowledge, what was Mr. | |
| 25 | | Reddington, Chuck Reddington's position with | |
| Page 211 | | | Defendant's Objections: (211:1-25) |
| 1 | | OneBeacon? | Record objections.  Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403 |
| 2 | A. | His position? | |
| 3 | Q. | Yes. | |
| 4 | A. | He was manager of some sort of risk | |
| 5 | | control department. | |
| 6 | Q. | Specifically what did he do with | |
| 7 | | respect to assessing the Dig potential risk? | |
| 8 | A. | My understanding is he evaluated the | |
| 9 | | information we received from the independent | |
| 10 | | contractor John Smith as well as evaluated the | |
| 11 | | information we received from NBC's | Plaintiff's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| security team. | Relevant to bad faith |
| 12  Q.   Is Mr. Reddington the individual who | |
| 13        made the decision that from the security | |
| 14        standpoint, Dig did not pose an | |
|           impediment to | |
| 15        OneBeacon insuring it? | |
| 16  A.   Mr. Reddington evaluated all of the | |
| 17        information and gave us his opinion. | |
| 18  Q.   Did Mr. Reddington make a | |
| 19        recommendation one way or the other? | |
| 20  A.   He wouldn't give a recommendation of | |
| 21        underwriting. He would pretty much just | |
|           lay out | |
| 22        the facts as they are and his opinion of the | |
|           risk | |
| 23        would be favorable or this is not a risk that | |
|           he | |
| 24        would recommend we continue with. | |
| 25  Q.   Now you indicated that he evaluated | |
| Page 212 | Defendant's Objections: |
| 1         information received from John Smith. Is | (212:1-25) |
|           that | Record objections.  Policy |
| 2         correct? | negotiations, underwriting |
| 3   A.   That's correct. | not relevant to any of |
| 4   Q.   Are who is John Smith? | Plaintiffs' claims for breach |
| 5   A.   John Smith is an independent | of the contract or duty of |
| 6         contractor who OneBeacon used for risk | good faith or damages; this |
|           control | testimony is a waste of time; |
| 7         and risk assessments as well. | causes confusion; is |
| 8   Q.   What organization is Mr. Smith with? | prejudicial. FRE 401; 403 |
| 9   A.   Media Safety. | |
| 10  Q.   What is Media Safety? | |
| 11  A.   The name of his company. | Plaintiff's Response: |
| 12  Q.   What does Media Safety do? | Relevant to bad faith |
| 13  A.   Risk assessments. | |
| 14  Q.   Does it do risk assessments in | |
| 15        situations where there is potential physical | |
| 16        violence involved? | |
| 17  A.   There can be various, so if there is | |
| 18        a festival, crowd control, security exits. It is | |

**498**

| Deposition Designation | Objection & Response |
|---|---|
| 19    for safety of cast and crew, so he will evaluate<br>20    and help with suggestions on how to make a risk<br>21    better.<br>22   Q.   When was Mr. Smith retained for this<br>23    purpose?<br>24   A.   Sometime during the discussions.<br>25   Q.   What did Mr. Smith do in order to | |
| <u>Page 213</u><br>1    assess the potential safety risks to cast and<br>2    crew?<br>3   A.   In addition to researching the areas<br>4    in which the client said they would be filming,<br>5    he had conversations with the NBC production team<br>6    as well to understand better exactly what they<br>7    would be doing. He was able to provide us with<br>8    documentation regarding the production studios in<br>9    which they would be using. So there was just<br>10    various details regarding the planning of this<br>11    production.<br>12   Q.   Did Mr. Smith ever provide any kind<br>13    of written assessment of the potential security<br>14    risks?<br>15   A.   I believe he did.<br>16   Q.   Did you receive a copy of that?<br>17   A.   I don't recall exactly. I don't<br>18    recall. The channel in which he worked was he<br>19    would send it to Chuck Reddington, so I can't say | <u>Defendant's Objections</u>: (213:1-25)<br>Record objections.  Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br><u>Plaintiff's Response</u>: Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 20      for sure if I received a copy.<br>21  Q.  But it is your best recollection that<br>22      you believe that he did prepare such a written<br>23      assessment. Is that correct?<br>24  A.  I would think he did.<br>25  Q.  And it is possible that you received | |
| Page 214<br>1      a copy at some point from Mr. Reddington?<br>2  A.  I don't recall seeing a copy from<br>3      him.<br>4  Q.  Now did Mr. Reddington ever send you<br>5      or anyone else at OneBeacon, to your knowledge,<br>6      an e-mail or a memo or a document that contained<br>7      his assessment of the potential security risks?<br>8  A.  I don't remember if he actually sent<br>9      a document. I do remember conversations with<br>10      myself and Peter and Chuck where we agreed that<br>11      we would be able to move forward after evaluating<br>12      what we thought the potential risks were.<br>13  Q.  Did you have more than one<br>14      conversation in which the issue of the security<br>15      assessment and the filming of Dig in Israel was<br>16      considered and discussed?<br>17  A.  We had more than one conversation.<br>18  Q.  During the course of those<br>19      discussions, and I am focusing on after Mr.<br>20      Reddington had taken the input from Mr. Smith and<br>21      Mr. Smith had done his research and had talked to | Defendant's Objections:<br>(214:1-25)<br>Record objections.  Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 22    whomever he talked to at NBC Universal, did<br>23    anyone from OneBeacon ever voice an opinion that<br>24    you are aware of that the production should not<br>25    be declared to the policy? | |
| Page 215<br>1  A.  No. I think we, at that point we<br>2    granted coverage that they could.<br>3  Q.  Right, but my question is before that<br>4    decision was made to grant coverage, did you hear<br>5    or did anyone ever tell you, no, I don't think we<br>6    should do this?<br>7  A.  Again, that is kind of what we were<br>8    looking into, is this something we should do, so<br>9    that is where the whole process started, so it<br>10    wasn't like they said we are going to film here<br>11    and we said okay, that is fine. We wanted<br>12    details to determine if that was acceptable.<br>13  Q.  Right, I understand, but what I am<br>14    saying is after all that assessment work was done<br>15    and all the information was in, I am trying to<br>16    determine whether or not there was any internal<br>17    disagreement, for example between yourself, Mr.<br>18    Williams, as to whether Dig should be added as an<br>19    insured production?<br>20  A.  I don't recall anything of that<br>21    nature.<br>22  Q.  To the best of your recollection, the | Defendant's Objections:<br>(215:1-25)<br>Record objections.  Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 23    consensus was that, yes, the Dig production could<br>24    be added as an insured production to the policy.<br>25    Is that correct? | |
| <u>Page 216</u><br>1   A.  We agreed to add it, yes. | <u>Defendant's Objections</u>: (216:1)<br>Record objections.  Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| <u>Page 219</u><br>22    MS. COYOCA: I would like to mark as<br>23    the next exhibit an e-mail exchange that<br>24    is labeled Bates control AON NBCU 0003622<br>25    through 3625. | <u>Defendant's Objections</u>: (219:22-25)<br>Record objections.  Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| <u>Page 220</u><br>1    (Exhibit 423, Document bearing Bates<br>2    numbers AON NBCU 0003622 through 3625, was | <u>Defendant's Objections</u>: (220:1-25)<br>Record objections.  Policy negotiations, underwriting |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 3  so marked for identification, as of this<br>4  date.)<br>5  Q.  Ms. Phillips, can I please direct<br>6  your attention to the first e-mail in time on<br>7  this chain. It is beginning on page 3624,<br>and it<br>8  is an e-mail from Andrea Garber to you<br>cc'ing<br>9  Debbie Kizner and Susan Weiss dated<br>December 3rd,<br>10  2013, sent at 2:03 p.m. Do you see that?<br>11  A.  Yes.<br>12  Q.  Do you recall receiving this e-mail?<br>13  A.  I don't recall receiving it, but I<br>14  have no reason to think I didn't.<br>15  Q.  Okay. Is it your belief that you had<br>16  a conversation with Ms. Garber before she sent<br>17  this e-mail to you?<br>18  A.  Yes, it is.<br>19  Q.  And seeing that December 3, 2013<br>20  date, does this refresh your recollection at all<br>21  as to the timing of when Ms. Garber may have<br>22  called you?<br>23  A.  No.<br>24  Q.  Do you believe that she called you<br>25  several months before she sent you this e-mail? | not relevant to any of<br>Plaintiffs' claims for breach<br>of the contract or duty of<br>good faith or damages; this<br>testimony is a waste of time;<br>causes confusion; is<br>prejudicial. FRE 401; 403<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 221<br>1  A.  I know she called before she sent it,<br>2  so, yes. It was still in preliminary stages as<br>3  she said here, but she called before to tell me<br>4  about it before she sent any information.<br>5  Q.  Okay. As I review the December 3,<br>6  2013 e-mail, I don't see any reference to there | Defendant's Objections:<br>(221:1-25)<br>Record objections.  Policy<br>negotiations, underwriting<br>not relevant to any of<br>Plaintiffs' claims for breach<br>of the contract or duty of<br>good faith or damages; this<br>testimony is a waste of time; |

| Deposition Designation | Objection & Response |
|---|---|
| 7      being a call before the e-mail being sent. Am I<br>8      missing it?<br>9   A.   It is not written in here.<br>10  Q.   Okay. You don't see it either?<br>11  A.   No.<br>12  Q.   Okay, but with respect to the timing<br>13      of it, I am just trying to focus on when you<br>14      think you first began discussing it with her. Do<br>15      you believe, for example, that Ms. Garber called<br>16      you in June of 2013?<br>17  A.   No, I think it was closer to the<br>18      fall, but I don't know exactly when she called.<br>19      I just know that it was like a heads-up. I don't<br>20      have anything yet, but I will get the information<br>21      and we will start from there. We will take it<br>22      from there.<br>23  Q.   Got it. You responded to Ms.<br>24      Garber's December 3rd e-mail that same day. Is<br>25      that correct? | causes confusion; is prejudicial. FRE 401; 403<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 222<br>1   A.   It appears so. Yes.<br>2   Q.   Do you have any reason to believe<br>3      that you did not provide this e-mail or send this<br>4      e-mail?<br>5   A.   No, I do not.<br>6   Q.   You asked her for information or an<br>7      idea of the budget and the insurable production<br>8      cost. Do you see that?<br>9   A.   Yes.<br>10  Q.   Why did you need the budget and the | Defendant's Objections:<br>(222:1-25)<br>Record objections.  Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403 |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 11      insurable production cost?<br>12   A.   To determine if we were to move<br>13        forward, what sort of limits we would be insuring<br>14        or providing coverage for.<br>15   Q.   Did Ms. Weiss -- excuse me. Did Ms.<br>16        Garber or Ms. Weiss provide you with that<br>17        information?<br>18   A.   I am sure they had to.<br>19   Q.   In fact, Ms. Garber responds and<br>20        indicates that she is going to ask for that<br>21        information and provide it to you, correct?<br>22   A.   Yes.<br>23   Q.   Then there is a subsequent e-mail<br>24        again on December 3rd indicating the gross<br>25        production budget of approximately 25 million for | <u>Plaintiff's Response:</u><br>Relevant to bad faith |
| <u>Page 223</u><br>1        the project, and that this was a preliminary<br>2        estimate, a preliminary amount for the pilot plus<br>3        five one-hour episodes. Is that correct?<br>4   A.   Yes.<br>5   Q.   And you responded to her e-mail that<br>6        same day as well, is that correct?<br>7   A.   That's correct.<br><br>19   Q.   I want to ask you about a document<br>20        previously marked as Exhibit 5, and it is an<br>21        e-mail exchange with the Bates control numbers<br>22        ATL 000794 through 796.<br>23   A.   Can you tell me what Bates control<br>24        number when you say that, what that means?<br>25   Q.   Sure. I'm sorry. It is the number | <u>Defendant's Objections:</u><br>(223:1-7)<br>Record objections.  Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith<br><br>(223:19-25)<br>Record objections.  Further Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br>Plaintiff's Response: Relevant to bad faith |
| Page 224<br>1    that is in the bottom right-hand corner that says<br>2    ATL 000794. Do you see that?<br>3  A.  Yes.<br>4  Q.  Okay. The documents that have been<br>5    produced in the case have a label on them that<br>6    there is a numbering system, and there is a<br>7    preface ATL NBCU, AON NBCU, to indicate where the<br>8    production came from.<br>9  A.  Okay. I was just curious when you<br>10   said that. I had no idea what you were talking<br>11   about.<br>12  Q.  I apologize for using jargon. Okay.<br>13   So can you please take a look at the e-mail that<br>14   Ms. Garber apparently sent to you. I'm sorry.<br>15   The e-mail that Ms. Garber sent to you on<br>16   December 3 that begins on the bottom of the page<br>17   794. That is the same e-mail that we were<br>18   looking at in the prior exhibit with the<br>19   information, the preliminary information about<br>20   Dig, correct?<br>21  A.  That's correct.<br>22  Q.  You forwarded the e-mail on to Mr.<br>23   Williams. Do you see that? | Defendant's Objections: (224:1-25) Record objections.  Further Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br>Plaintiff's Response: Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 24  A.  I did.<br>25  Q.  Why did you do so? | |
| Page 225<br>1  A.  So that we could discuss if we were<br>2  going to move forward with this, so I would need<br>3  Peter's approval before getting risk control or<br>4  anyone involved if it was something in which he<br>5  said no, this is something we absolutely could<br>6  not do, there is no need to go any further, so<br>7  this was pretty much I would like to discuss this<br>8  with you.<br>9  Q.  In the context of this e-mail, do you<br>10  recall having any discussions with Mr. Williams<br>11  about the suggestion that the Dig production was<br>12  going to be submitted as an insured production<br>13  under the policy?<br>14  A.  Well, I forwarded the bottom<br>15  information to him as well so he would have that<br>16  information as much as I had at that point to<br>17  start the discussions.<br>18  Q.  Okay. Did you then subsequently have<br>19  a conversation with Mr. Williams about the<br>20  production?<br>21  A.  I had conversation with him. I mean<br>22  I don't know if it immediately followed me saying<br>23  this to him, but I involved him pretty much as<br>24  soon as I knew of it after I got the formal | <u>Defendant's Objections</u>:<br>(225:1-25) Record objections.  Further Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 25        e-mail. | |
| Page 226<br>1    Q.   During this time period, end of 2013,<br>2          beginning of 2014, was it your practice to<br>3          contact Mr. Williams about every production that<br>4          NBC Universal was seeking to add as an insured<br>5          production to the policy?<br>6    A.   No.<br>7    Q.   Why did you choose to forward<br>8          information about this Dig potential production<br>9          to Mr. Williams?<br>10   A.   For the same reason they wanted me to<br>11         know about it, where it was filming, what was<br>12         taking place.<br>13   Q.   But if you could, please, what was<br>14         that reason, to your understanding?<br>15   A.   The primary reason is because they<br>16         were filming in Jerusalem and Tel Aviv.<br>17   Q.   And from your standpoint, were you<br>18         considering the fact that they would be filming<br>19         in Jerusalem to potentially present some<br>20         additional risk that would need to be<br>21         specifically considered by OneBeacon in making<br>22         its decision?<br>23   A.   I thought that filming in Jerusalem<br>24         and Tel Aviv could have some issues from a<br>25         terrorist standpoint, so we needed to assess it, | Defendant's Objections:<br>(226:1-25) Record objections.  Further Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 227<br>1          yes.<br>2          MS. COYOCA: I want to mark as an | Defendant's Objections:<br>(227:1-25) Record objections.  Further Policy |

| Deposition Designation | Objection & Response |
|---|---|
| 3     additional exhibit, I believe we are on<br>4     Exhibit 424, an e-mail labeled AON NBCU<br>5     0001747.<br>6     (Exhibit 424, Document bearing Bates<br>7     number AON NBCU 0001747, was so marked for<br>8     identification, as of this date.)<br>9  Q.  Ms. Phillips, this is an e-mail dated<br>10    December 13, 2013. Do you see that?<br>11  A.  Eyes are fading. Sorry.<br>12    December 13. Yes.<br>13  Q.  It is from Andrea Garber to you with<br>14    a cc to Deborah Kizner and Bernadette. Do you<br>15    see that?<br>16  A.  Yes.<br>17  Q.  In this e-mail Ms. Garber indicates<br>18    that she is confirming a discussion that had<br>19    taken place earlier in that day, December 13,<br>20    regarding coverage for Dig under the renewal<br>21    policy beginning January 1, 2014. Do you see<br>22    that?<br>23  A.  Yes.<br>24  Q.  Okay. Do you recall having<br>25    received -- excuse me. Do you recall having a | negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| <u>Page 228</u><br>1    call with Ms. Garber about the decision to add<br>2    Dig as an insured production on the 13th?<br>3  A.  I don't recall. I mean we had<br>4    conversations about it, yes.<br>5  Q.  Okay. Do you have any reason to<br>6    believe that you did not have such a call?<br>7  A.  No.<br>8  Q.  Okay. In the e-mail, Ms. Garber | <u>Defendant's Objections</u>:<br>(228:1-25) Record objections.  Further Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is |

| Deposition Designation | Objection & Response |
|---|---|
| 9       advises that "You are not inclined to charge<br>10      additional premium beyond our standard rate and<br>11      are similarly not inclined to place coverage<br>12      limits beyond our standard terms on this<br>13      production at this time."<br>14      Do you see that?<br>15  A.  Yes.<br>16  Q.  Had you discussed with Ms. Garber<br>17      that the assessment had been done and a decision<br>18      had been made that no change in terms was going<br>19      to be required?<br>20  A.  That is what this says, yes.<br>21  Q.  Okay. She also indicates "Regarding<br>22      the work in Jerusalem, you would like to be kept<br>23      apprised of what production is doing and what<br>24      ongoing precautions are being taken to ensure the<br>25      safety of cast, crew and property." | prejudicial. FRE 401; 403<br><br><br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 229<br>1       Do you see that?<br>2   A.  Yes.<br>3   Q.  What had you discussed with Ms.<br>4       Garber by this point in time with regard to<br>5       precautions being taken?<br>6   A.  I think, I can't say for sure, but<br>7       reading this, we must have at this point had an<br>8       assessment from risk control or we felt that the<br>9       information that we had gathered was sufficient,<br>10      and we were okay with moving forward. We had<br>11      conversations internally. Again, I recall | Defendant's Objections:<br>(229:1-25) Record<br>objections.  Further Policy<br>negotiations, underwriting<br>not relevant to any of<br>Plaintiffs' claims for breach<br>of the contract or duty of<br>good faith or damages; this<br>testimony is a waste of time;<br>causes confusion; is<br>prejudicial. FRE 401; 403<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 12     conversations with the idea of a suicide bomber<br>13     as one of the things that we thought could<br>14     possibly happen in Israel, and with this policy<br>15     beginning on a new term with a brand new SIR, we<br>16     felt that we were comfortable at that time with<br>17     the risk for a day or two, if in fact there was<br>18     some kind of terrorist attack.<br>19   Q.   So at this point in time,<br>20     December 13, you believed that the work of Mr.<br>21     Reddington and Mr. Smith had been completed and a<br>22     decision had been made by Atlantic to accept the<br>23     risk, correct?<br>24   A.   Yes, at that point I would have had<br>25     to have had information in order to do that, yes. | |
| Page 230<br>1   Q.   Okay. And you made reference to<br>2     conversations internally with the idea of a<br>3     suicide bomb or one of the things that could<br>4     possibly happen in Israel.<br>5   A.   When you think of the risk or the<br>6     exposures in Israel, that is what comes to mind.<br>7   Q.   Were there any other specifics that<br>8     you can recall any of those internal<br>9     discussions in terms of the types of risks?<br>10   A.   I don't want to speculate. I think<br>11     there might have also been something as far as<br>12     the weather like in February, you know, what that<br>13     could be, but again with this starting fresh, | Defendant's Objections:<br>(230:1-25) Record objections. Further Policy negotiations, underwriting not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. FRE 401; 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 14    there was at least a $2.1 million SIR that would<br>15    be in play for this production.<br>16  Q.  But anything at all in terms of<br>17     information discussed about the nature of<br>18     potential risks that you can recall?<br>19  A.  No. | |
| Page 236<br>12  Q.  Did you have any conversations or<br>13     communications with Danny Gutterman about the Dig<br>14     claim?<br>15  A.  There is something that comes to mind<br>16     with Danny, and it may have been him telling me<br>17     also that there was a claim in, but I don't<br>18     remember having conversations. I believe Danny<br>19     was going to set up a call or something of that<br>20     nature and giving me a heads-up. Something of<br>21     that nature. I don't remember a lot about it.<br>22  Q.  Was the call going to involve you?<br>23  A.  No.<br>24  Q.  Did you have any conversations with<br>25     or communications with Pamela Johnson about the | Defendant's Objections: (236:12-25)<br>Record Objections. These communications are not relevant to any remaining issues; waste of time. FRE 401; 403<br><br>Plaintiff's Response: Relevant to bad faith |
| Page 237<br>1     claim?<br>2  A.  No.<br>3  Q.  Did Pamela Johnson ever convey to you<br>4     that she wanted to know any information about the<br>5     underwriting of the policy in terms of the war<br>6     exclusions during the time frame that the Dig | Defendant's Objections: (237:1-25)<br>Record Objections. These communications are not relevant to any remaining issues; waste of time. FRE 401; 403 |

| Deposition Designation | Objection & Response |
|---|---|
| 7     claim was being tendered?<br>8   A.   No, I don't recall anything like<br>9       that.<br>10   Q.   What about Mr. Gutterman?<br>11   A.   No.<br>12   Q.   I would like to show you a document<br>13       previously marked as Exhibit 29. The first<br>14       e-mail in time appears to be an e-mail on ATL<br>15       001549 which is from Danny Gutterman on<br>16       Wednesday, July 16, 2014 at 11:50 a.m. to you.<br>17       Do you see that?<br>18   A.   I do.<br>19   Q.   He asked you to confirm that Dig had<br>20       been declared. Do you see that?<br>21   A.   I do.<br>22   Q.   And he was also asking if the Israel<br>23       portion was approved. Do you see that?<br>24   A.   I do.<br>25   Q.   Why was he asking you those questions | <u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| <u>Page 238</u><br>1       to the best of your understanding?<br>2   A.   If he was asking, I think something<br>3       may have came in and he wanted to make sure we<br>4       had coverage or that their production was<br>5       declared.<br>6   Q.   Okay. Did you respond to Mr.<br>7       Gutterman?<br>8   A.   Looking at this e-mail, I did.<br>9   Q.   You are looking at the response sent<br>10      by you on the 16th at 9:49 a.m.?<br>11   A.   Yes.<br>12   Q.   You indicated that the production Dig<br>13      was declared and that the filming in Israel had<br>14      been approved with terms. Do you see that?<br>15   A.   Yes, I do. | <u>Defendant's Objections</u>:<br>(238:1-25)<br>Record Objections. These communications are not relevant to any remaining issues; waste of time. FRE 401; 403<br><br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 16  Q.   Do you recall sending this e-mail?<br>17  A.   No.<br>18  Q.   Do you have any reason to believe you<br>19       did not?<br>20  A.   No.<br>21  Q.   The e-mail chain goes on and Mr.<br>22       Gutterman asks you about the terms. Is that<br>23       right?<br>24  A.   So, let's see. What were the terms?<br>25       Yes. | |
| Page 239<br>1  Q.   Okay. Did you advise Mr. Gutterman<br>2       what those terms were?<br>3  A.   This doesn't really advise terms. It<br>4       says we approve filming. NBC security<br>         team is to<br>5       remain involved and we require the<br>         production<br>6       work with the local production company.<br>7  Q.   Okay. There is also some additional<br>8       items about coordinating with local police<br>         and<br>9       indicating that filming on public streets and<br>10      public areas could not involve any car<br>         chases or<br>11      chase scenes, pyro, fires or fighting in a<br>         public<br>12      area. Do you see that?<br>13  A.   Yes, I do.<br>14  Q.   When you indicated that filming in<br>15      Israel was approved with terms, were you<br>         thinking<br>16      of some terms other than what is set forth in<br>         the<br>17      e-mail in Exhibit 29 that you sent?<br>18  A.   The e-mail in Exhibit 29.<br><br>21  Q.   Okay. In your response e-mail to Mr.<br>22      Gutterman that you sent at 9:49 a.m., you | Defendant's Objections:<br>(239:1-18, 21-25)<br>Record Objections.  These communications are not relevant to any remaining issues; waste of time.  FRE 401; 403<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 23    tell him "The production Dig was declared and we<br>24    approve the filming in Israel with terms." Mr.<br>25    Gutterman responded and asked you what were the | |
| <u>Page 240</u><br>1    terms. Correct?<br>2   A.  Yes.<br>3   Q.  You then sent him a response e-mail<br>4    that contains the information that is set forth<br>5    in the e-mail that you sent at 6:03 p.m. Do you<br>6    see that?<br>7   A.  Yes.<br>8   Q.  So you sent this information in<br>9    response to his request for information about the<br>10    terms. Do you see that?<br>11   A.  Yes.<br>12   Q.  Are these the terms that OneBeacon<br>13    was requiring with respect to the shooting of Dig<br>14    in Israel?<br>15   A.  It appears so.<br>16   Q.  Are there any other terms of which<br>17    you are aware?<br>18   A.  Not off the top of my head.<br>19   Q.  Did you have any conversations with<br>20    anyone internal to Atlantic or OneBeacon about<br>21    the denial of the Dig claim during the summer of<br>22    2014?<br>23   A.  I don't recall.<br>24   Q.  Did you have any conversations with<br>25    Mr. Williams about the fact that the Dig | <u>Defendant's Objections</u>:<br>(240:1-25)<br>Record Objections.  These communications are not relevant to any remaining issues; waste of time.  FRE 401; 403<br><br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |

**515**

| Deposition Designation | Objection & Response |
|---|---|
| claim | |
| Page 241 <br> 1    was being denied? <br> 2  A.  I know we talked about it. <br> 3  Q.  What were your discussions? <br> 4  A.  There were two things that come to <br> 5     mind. One was we denied it because war <br>       began, <br> 6     but there was also a portion of it in which I <br> 7     think, if I don't know for sure I guess I am <br> 8     stuck because I don't know exactly. I know <br>       bits <br> 9     and pieces, but I think there was a call that <br> 10    Peter was involved in when they first <br>       thought <br> 11    there was an issue and they were still in <br> 12    Jerusalem, and as to if they left, what <br>       would <br> 13    happen. So there was some conversation <br>       that <br> 14    Peter discussed with me on that, but I don't <br> 15    remember the exact issues. <br> 16  Q.  Okay. Well, with respect to <br> 17    conversations with him about the topic of <br>       the <br> 18    claim was denied because a war began, <br>       who told <br> 19    you that the claim was denied because a <br>       war <br> 20    began? <br> 21  A.  Those were my conversations with <br> 22    Peter, the same conversation that I'm not <br> 23    100 percent. You know, I can't recall to the <br> 24    fullest. <br> 25  Q.  Did Mr. Williams discuss with you why | Defendant's Objections: <br> (241:1-25) <br> Record Objections.  These communications are not relevant to any remaining issues; waste of time.  FRE 401; 403 <br><br><br> Plaintiff's Response: <br> Relevant to bad faith |
| Page 242 <br> 1    Atlantic considered it to be a war? <br> 2  A.  Not at that time. Later down the | Defendant's Objections: <br> (242:1-9) <br> Record Objections.  These |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 3      line I heard more about it, but at that point, <br> 4      no. <br> 5   Q.   What more did you hear about it? <br> 6   A.   I mean later, much later I heard more <br> 7      about the war and how many days it was and the <br> 8      war was going on and still going on and things of <br> 9      that nature. | communications are not relevant to any remaining issues; waste of time. FRE 401; 403 <br><br><br><br> <u>Plaintiff's Response</u>: Relevant to bad faith |
| <u>Page 243</u> <br> 6   Q.   Did you have any discussions with <br> 7      anyone at Aon with regard to the move of the <br> 8      production out of Israel? <br> 9   A.   I don't recall that. <br> 10   Q.   Did you have any conversations other <br> 11      than conversation you have already described with <br> 12      Ms. Weiss about the claim? Did you have any <br> 13      other conversations with anyone at Aon about the <br> 14      production being moved out of Israel? <br> 15   A.   No. <br> 16   Q.   Did you have any other conversations <br> 17      with anyone at Aon with regard to the claim being <br> 18      denied? <br> 19   A.   No. Information was very, at least <br> 20      from with Peter, was very sketchy, I didn't know <br> 21      a lot about it. | <u>Defendant's Objections</u>: (243:6-21) Record Objections. These communications are not relevant to any remaining issues; waste of time. FRE 401; 403 <br><br><br><br> <u>Plaintiff's Response</u>: Relevant to bad faith |
| <u>Page 244</u> <br> 4      MS. COYOCA: I would like to mark as <br> 5      Exhibit 425 a document labeled ATL 002231 <br> 6      through 2211. <br> 7      (Exhibit 425, Document bearing Bates | <u>Defendant's Objections</u>: (244:4-25) Record objections. Policy negotiation, underwriting, and addition of "Dig" not relevant; waste of time. |

| Deposition Designation | Objection & Response |
|---|---|
| 8      numbers ATL 002231 through 2211, was so<br>9      marked for identification, as of this<br>10      date.)<br>11   Q.   I would like you to look at the<br>12      e-mail that appears at the bottom of page 2231,<br>13      that begins at the bottom of 2231 on<br>14      September 25, 2014 at 6:12 p.m. It appears that<br>15      Deborah Kizner wrote you an e-mail indicating<br>16      "Hi, Wanda. Update. Please see the e-mail below<br>17      from the production and the attached revised<br>18      schedule for your reference in regards to the<br>19      declared production Dig season 1." Do you see<br>20      that?<br>21   A.   I do.<br>22   Q.   You responded to that e-mail<br>23      indicating that you didn't have any questions at<br>24      that time. Do you see that?<br>25   A.   Um-hum. | FRE 401; 403.<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| <u>Page 245</u><br>1   Q.   Then subsequently on October 10, 2014<br>2      Ms. Kizner sent you another e-mail at 5:58 p.m.<br>3      indicating, "Hi, Wanda, NBCU just advised the<br>4      production Dig season 1 has been extended for<br>5      additional episodes." Do you see that?<br>6   A.   I see that. I am trying to see what<br>7      the difference is between this one and the one | <u>Defendant's Objections</u>:<br>(245:1-25)<br>Record objections.  Policy negotiation, underwriting, and addition of "Dig" not relevant; waste of time.<br>FRE 401; 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |

**518**

| Deposition Designation | Objection & Response |
|---|---|
| 8      that we just read as well. Okay.<br>9   Q.   Does this refresh your recollection?<br>10  A.   It doesn't at all which is, no, it<br>11       doesn't.<br>12  Q.   Do you believe that you never<br>13       received this e-mail?<br>14  A.   No, I wouldn't say that.<br>15  Q.   Okay. You just don't recall it?<br>16  A.   Yes.<br>17       MS. COYOCA: I would like to mark as<br>18       Exhibit 426 a document that has Bates<br>19       label AON NBCU 2403 through 2406.<br>20       (Exhibit 426, Document bearing Bates<br>21       numbers AON NBCU 2403 through 2406, was so<br>22       marked for identification, as of this<br>23       date.)<br>24  Q.   Ms. Phillips, do you recall receiving<br>25       the top e-mail which is a continuation of the | |
| Page 246<br>1       chain that we were previously looking at in<br>2       Exhibit 425? I am specifically focused on the<br>3       e-mail from Jennifer Morris to Bernadette on<br>4       Tuesday, October 28, 2014, subject re Dig State<br>5       of the Union 9-19/additional four episodes. Did<br>6       you receive that e-mail?<br>7   A.   I would say I did. I don't recall.<br>8   Q.   Okay. There is information that is<br>9       being provided as to additional IPC, total IPC<br>10      per episode, is that right?<br>11  A.   Yes.<br>12  Q.   What is that amount?<br>13  A.   It looks like 3.5 insurable | Defendant's Objections: (246:1-25)<br>Record objections.  Policy negotiation, underwriting, and addition of "Dig" not relevant; waste of time.  FRE 401; 403<br><br><br>Plaintiff's Response: Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 14     production costs.<br>15   Q.   3.5 million?<br>16   A.   Yes.<br>17   Q.   And then the net insurable cost per<br>18     episode Ms. Morris identified as being 2.8<br>19     million. Is that correct?<br>20   A.   That's correct.<br>21   Q.   You have no reason to believe you did<br>22     not receive this e-mail, is that right?<br>23   A.   No.<br>24     MS. COYOCA: I would like to mark as<br>25     Exhibit 427 a document that has Bates | |
| Page 247<br>1     label ATL 002439 through 2444.<br>2     (Exhibit 427, Document bearing Bates<br>3     numbers ATL 002439 through 2444, was so<br>4     marked for identification, as of this<br>5     date.)<br><br>8   Q.   Ms. Phillips, have you seen this<br>9     document before?<br>10   A.   It doesn't look familiar.<br>11   Q.   Do you have any reason to believe<br>12     that you did not receive the e-mails that are<br>13     reflected as being sent to you or cc'd to you on<br>14     or about the dates that are referenced?<br>15   A.   I do not.<br>16   Q.   If you could look at the last page of<br>17     the, well, yes, the last numbered page of the<br>18     document, not the blank page, that is 2444?<br>19   A.   Yes.<br>20   Q.   What is this last page?<br>21   A.   NBC declaration.<br>22   Q.   Of what?<br>23   A.   Declaring a production.<br>24   Q.   Is it declaring the production for<br>25     the first time or is it declaring the additional | Defendant's Objections:<br>(247:1-5)<br>Record objections.  Policy negotiation, underwriting, and addition of "Dig" not relevant; waste of time. FRE 401; 403<br><br>Plaintiff's Response:<br>Relevant to bad faith<br><br>(247:8-25)<br>Record objections. Policy negotiation, application not relevant; waste of time FRE 401; 403<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| | |
| <u>Page 248</u> | <u>Defendant's Objections</u>: |
| 1　　episodes that were referenced in Exhibits 425 and | (248:1-25) |
| 2　　426? | Record objections. |
| 3　A.　When I look at it, it says Dig season | Policy negotiation, |
| 4　　1 2014 updated, so it looks like they are saying | application not relevant; |
| 5　　there are ten episodes, which doesn't go with | waste of time FRE 401; 403 |
| 6　　additional four, so I don't know if they provided | |
| 7　　a brand new declaration adding them all up, but | |
| 8　　it doesn't match the information in the e-mail. | <u>Plaintiff's Response</u>: |
| 9　Q.　Well, so the information in the | Relevant to bad faith |
| 10　　e-mail talked about four new episodes, right? | |
| 11　A.　Yes. | |
| 12　Q.　So the four new episodes would be | |
| 13　　episode 7, episode 8, episode 9, and episode 10, | |
| 14　　wouldn't it? | |
| 15　A.　That would make sense if it was four | |
| 16　　new and a total of ten. | |
| 17　Q.　Right. | |
| 18　A.　Yes. | |
| 19　Q.　And the previous application | |
| 20　　referenced a pilot plus five episodes, did it | |
| 21　　not? | |
| 22　A.　Did we look at the previous | |
| 23　　application? | |
| 24　Q.　We did. | |
| 25　A.　I don't recall that. Okay. | |
| <u>Page 249</u> | <u>Defendant's Objections</u>: |
| 1　Q.　Okay. Do you have any reason to | (249:1-5) |
| 2　　believe that the application that is reflected on | Record objections. |
| | Policy negotiation, |

| Deposition Designation | Objection & Response |
|---|---|
| 3      2444 was not submitted?<br>4   A.   No, I just think it was updated, so<br>5      it includes all ten because it shows ten. | application not relevant;<br>waste of time FRE 401; 403<br><br><br><br>Plaintiff's Response:<br>Relevant to bad faith |
| <u>Page 250</u><br>2   Q.   Then I would like you to look at this<br>3      document previously marked as Crosby<br>       Exhibit 1.<br>4   A.   No, we didn't look at this earlier.<br>5   Q.   Okay.<br>6   A.   So this would make sense. So she<br>7      sent an updated one from this one.<br>8   Q.   Do you recall receiving this e-mail?<br>9   A.   I don't recall, but I have no reason<br>10      to think I didn't.<br>11   Q.   All right. The second page of<br>12      Exhibit 1 to the Crosby deposition is the actual<br>13      application. Is that correct?<br>14   A.   That's correct.<br>15   Q.   It references under item 6, total<br>16      insurable production costs, 25 million estimated<br>17      for entire six episode order. Do you see that?<br>18   A.   Yes. I just wanted to know from when<br>19      did we receive this from the time that they first<br>20      told us about it? That is why I didn't recall<br>21      that.<br>22   Q.   So your e-mail exchanges with Ms.<br>23      Garber about the production, Dig production, were<br>24      in December.<br>25   A.   December 3rd and then the 13th I | <u>Defendant's Objections</u>:<br>(250:2-25)<br>Policy negotiation, renewals,<br>applications not relevant;<br>waste of time. FRE 401;<br>403<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |

**522**

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 251</u><br>1     think it was approved.<br>2  Q.  And also December 11.<br>3  A.  Okay.<br>4  Q.  Correct?<br>5  A.  Yes.<br>6  Q.  Okay. Based on this last exchange,<br>7     that suggests to me, I may not have shown you the<br>8     December application as well, so I want to show<br>9     you a document previously marked as Exhibit 8 to<br>10    the Garber deposition. Do you recall receiving<br>11    this e-mail?<br>12  A.  No.<br>13  Q.  Do you have any reason to believe you<br>14    did not?<br>15  A.  No.<br>16  Q.  In this e-mail Ms. Garber is<br>17    providing you with certain additional information<br>18    regarding Dig, correct?<br>19  A.  Yes.<br>20  Q.  And the application that is attached,<br>21    this application references six episodes as well.<br>22    Is that correct?<br>23  A.  Yes.<br>24  Q.  In the e-mail, cover e-mail from Ms.<br>25    Garber, she indicates -- | <u>Defendant's Objections:</u><br>(251:1-25)<br>Policy negotiation, renewals, applications not relevant; waste of time.  FRE 401; 403<br><br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| <u>Page 252</u><br>1  A.  Are we talking about Exhibit 8 or 1?<br>2  Q.  We are talking about Exhibit 8. She<br>3    indicates towards the end of the e-mail, "Since<br>4    the project is in the early stages of<br>5    preproduction now, we will need coverage | <u>Defendant's Objections:</u><br>(252:1-25)<br>Policy negotiation, renewals, applications not relevant; waste of time.  FRE 401; 403 |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| under<br>6   the current policy. The majority of exposure<br>7   will fall into the policy terms starting<br>8   1/1/2014. Please confirm coverage at your<br>9   earliest opportunity." Do you see that?<br>10  A.  I do.<br>11  Q.  Where there was a production which<br>12   was going to span two policy years, was it<br>13   required for NBC Universal to submit a new<br>14   application after a production had already been<br>15   declared as an insured production to the policy?<br>16  A.  That would depend on what they were<br>17   doing, so if they were just scouting in the old<br>18   policy term, they would be submitted under the<br>19   new policy, because that is where all of your<br>20   actual production or filming exposure would take<br>21   place.<br>22  Q.  So with reference to Ms. Garber's<br>23   e-mail on December 11, which she references the<br>24   early stages of preproduction, do you consider<br>25   scouting to be part of preproduction? | Plaintiff's Response:<br>Relevant to bad faith |
| Page 253<br>1  A.  That is preproduction, yes.<br>2  Q.  Do you have any reason to believe<br>3   that you did not receive this e-mail or this<br>4   application at or about the time it was sent?<br>5  A.  No.<br>6  Q.  Ms. Phillips, were you involved in<br>7   any conversations or meetings or | Defendant's Objections:<br>(253:1-25)<br>Policy negotiation, renewals, applications not relevant; waste of time.  FRE 401; 403 |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| communications | |
| 8     regarding the renewal of the NBC Universal policy | Plaintiff's Response: Relevant to bad faith |
| 9     that was in place from January 1, 2014 through | |
| 10     June 30, 2015? | |
| 11   A.   Yes. | |
| 12   Q.   What was your involvement? | |
| 13   A.   I was the underwriter. | |
| 14   Q.   Was there a decision made not to | |
| 15     renew the policy? | |
| 16   A.   Okay. So you mean at the end of that | |
| 17     policy term was there a decision made not to | |
| 18     renew? | |
| 19   Q.   Yes. | |
| 20   A.   Yes. | |
| 21   Q.   Who made that decision? | |
| 22   A.   Dennis Crosby. | |
| 23   Q.   What is your understanding as to the | |
| 24     reasons why the policy was not renewed? | |
| 25   A.   That there were multiple reasons, one | |
| Page 254 | Defendant's Objections: (254:1-9) Policy negotiation, renewals, applications not relevant; waste of time.  FRE 401; 403 |
| 1     being that the entertainment division within OneBeacon was being reevaluated, and the reason | |
| 2     | |
| 3     for that is to improve upon profitability, and in | |
| 4     doing that NBC was identified as one of other | |
| 5     clients that was falling in the category of not | Plaintiff's Response: Relevant to bad faith |
| 6     being profitable, and so we would need to make | |
| 7     some changes to the terms and conditions, rates, | |
| 8     et cetera, that we were currently offering to | |
| 9     NBC. | |

**525**

| Deposition Designation | Objection & Response |
|---|---|
| Page 256<br>2   Q.   When did you first advise Ms. Weiss<br>3       that that was the situation?<br>4   A.   Well, one, when they got the<br>5       nonrenewal notice, so we explained to them what<br>6       that meant just as a courtesy, this is what is<br>7       going on, this account is being looked at, and<br>8       they were very honest with us as well in letting<br>9       us know that they would be taking the account out<br>10      and shopping it to other markets. | Defendant's Objections:<br>256:2-10<br>Policy negotiation, renewals, applications not relevant; waste of time.  FRE 401; 403<br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 257<br>3   Q.   So I just want to make sure I am<br>4       clear. You believe that in March or April of<br>5       2015 that you sent a letter to Ms. Weiss<br>6       providing a notice of potential nonrenewal. Is<br>7       that correct?<br>8   A.   No. The letter doesn't go to Ms.<br>9       Weiss, it goes to the insured. It is a form<br>10      letter so it is not sent by me. It is a form<br>11      letter, but I had a conversation as to what that<br>12      letter meant or why we were sending that letter.<br>13   Q.   Okay. So you did not send the<br>14      letter. It was a form letter, but who did send<br>15      it?<br>16   A.   Whoever sends out those letters in<br>17      operations. I don't know.<br>18   Q.   To the best of your recollection,<br>19      that is a letter that went out in March or April<br>20      of 2015?<br>21   A.   Yes.<br>22   Q.   Prior to the letter going out in | Defendant's Objections:<br>(257:3-25)<br><br>Plaintiff's Response:<br>No objection listed, just line and page numbers.  Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 23    March or April 2015, did you have any <br> 24    conversations with anyone at OneBeacon or <br> 25    Atlantic about the potential for <br>       nonrenewal? | |
| <u>Page 258</u> <br> 1   A.   Prior to the letter going out, you <br> 2        said? <br> 3   Q.   Yes. <br> 4   A.   That is what made the letter go out, <br> 5        so yes, that was the reason for the letter going <br> 6        out. <br> 7   Q.   Who did you have conversations with? <br> 8   A.   I would say senior management. There <br> 9        was concerns about the profitability of this <br> 10       account. | <u>Defendant's Objections</u>: <br> (258:1-10) <br> Policy negotiation, renewals, applications not relevant; waste of time. FRE 401; 403 <br><br><br> <u>Plaintiff's Response</u>: <br> Relevant to bad faith |
| <u>Page 269</u> <br> 4        (Exhibit 428, Document bearing Bates <br> 5        numbers ATL 006989 through 7020, was so <br> 6        marked for identification, as of this <br> 7        date.) <br> 8        BY MS. COYOCA: <br> 9   Q.   Ms. Phillips, have you seen this <br> 10       document before? <br> 11   A.   I believe I have. <br> 12   Q.   When did you see it? <br> 13   A.   I believe at an underwriting meeting. <br> 14   Q.   When did the underwriting meeting <br> 15       occur? <br> 16   A.   I'm not exactly sure when in 2016. <br> 17   Q.   Okay. You previously indicated that <br> 18       there were discussions during the period in which <br> 19       the decisions were being made about nonrenewal of <br> 20       the 2014 through June 30, 2015 policy that NBC | <u>Defendant's Objections</u>: <br> 269:4-25 <br> Underwriting, non-renewal of Policy, profibility entertainment division not relevant; prejudicial; waste of time. FRE 401; 403 <br><br> <u>Plaintiff's Response</u>: <br> Relevant to bad faith |

**527**

| Deposition Designation | Objection & Response |
|---|---|
| 21  Universal account had not been profitable,<br>22  correct?<br>23  A.  I just want to be clear because you<br>24      said it a little different than I.<br>25  Q.  Okay. | |
| Page 270<br>5  Q.  During that same time period of the<br>6      nonrenewal in June 2015 or in that time frame,<br>7      were there then discussions ongoing about the<br>8      decisions to shift the focus of OneBeacon<br>9      Entertainment in terms of their business?<br>10 A.  Yes.<br>11 Q.  What shift was occurring?<br>12 A.  OneBeacon was getting out of certain<br>13     lines of business as well as looking at accounts<br>14     that may have been within the lines that they<br>15     would continue moving forward with but were not<br>16     considered to be profitable.<br>17 Q.  And to the best of your knowledge,<br>18     who made that decision to shift the business<br>19     strategy for that division?<br>20 A.  That was coming from Mr. Crosby as<br>21     well.<br>22 Q.  How did you first learn about that<br>23     shift in strategy?<br>24 A.  We were having various discussions<br>25     on, as I mentioned, different accounts that were | Defendant's Objections:<br>(270:5-25)<br>Underwriting, non-renewal of Policy, profibility entertainment division not relevant; prejudicial; waste of time.  FRE 401; 403.<br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 271<br>1      not profitable, and there was a whole segment of<br>2      business that was considered to not be<br>3      profitable, so there was some business areas | Defendant's Objections:<br>(271:1-25)<br>Underwriting, non-renewal of Policy, profibility entertainment division not |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| that | relevant; prejudicial; waste of time.  FRE 401; 403 |
| 4    OneBeacon decided they were going to pull out of | |
| 5    altogether, and then there were other accounts | |
| 6    within an area that they would continue, but take | Plaintiff's Response: Relevant to bad faith |
| 7    a look at those accounts on what could be done to | |
| 8    improve upon the loss ratios or could we improve | |
| 9    upon the loss ratio. | |
| 10   Q.   Was Exhibit 428, this power point, an | |
| 11    exhibit that was used at an underwriting meeting | |
| 12    that you attended? | |
| 13   A.   Yes. | |
| 14   Q.   Who presented the power point? | |
| 15   A.   I think it was a couple of people | |
| 16    speaking, but at this point it was Joe | |
| 17    Fitzgerald, who succeeded Peter Williams. | |
| 18   Q.   Had you put any of the information | |
| 19    together that is contained in the power point for | |
| 20    Mr. Fitzgerald or anyone else? | |
| 21   A.   No. | |
| 22   Q.   Can you turn to page 14 of the | |
| 23    document. It is page 7002. There is a reference | |
| 24    to NBC Universal three-year WP 4.4 million/losses | |
| 25    6.0. Do you see that? | |
| Page 272 | Defendant's Objections: |
| 1   A.   Yes. | (272:1-25) |
| 2   Q.   What is that a reference to? | Underwriting, non-renewal of Policy, profibility entertainment division not relevant; prejudicial; waste of time.  FRE 401; 403 |
| 3   A.   In reading it, it is saying, written | |
| 4    premium of 4.4 for three years with losses of | |
| 5    6.0. | |

**529**

| Deposition Designation | Objection & Response |
|---|---|
| 6   Q.   On page 18, number 7006, this slide<br>7         is titled "Motion Picture TV Results Below<br>8         Average." Do you see that?<br>9   A.   Yes, I do.<br>10   Q.   The very last line says "Kelly,<br>11         Wanda, Joe F. to develop plan in first<br>            quarter."<br>12         Do you see that?<br>13   A.   Yes.<br>14   Q.   What is that a reference to?<br>15   A.   Coming out with new underwriting<br>16         guidelines.<br>17   Q.   Is that something that you were asked<br>18         to do?<br>19   A.   Yes, I was.<br>20   Q.   Who asked you to do it?<br>21   A.   Joe Fitzgerald.<br>22   Q.   When did you leave OneBeacon?<br>23   A.   In April or May of 2016.<br>24   Q.   Why did you leave?<br>25   A.   Primarily for these reasons here. | <u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| <u>Page 273</u><br>1         The company was going in a different<br>            direction,<br>2         and I felt at some point that there were<br>            going to<br>3         be changes that I may not have wanted to<br>            wait<br>4         around on.<br>5   Q.   Okay, so were you asked to leave?<br>6   A.   No.<br>7   Q.   You decided to leave because there<br>8         were changes that you felt could impact<br>            your<br>9         work?<br>10   A.   That's correct. | <u>Defendant's Objections</u>:<br>(273:1-10)<br>Underwriting, non-renewal of Policy, profibility entertainment division not relevant; prejudicial; waste of time.  FRE 401; 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |

7060055/015825

**MARTIN K. RIDGERS—May 30, 2017**

| Deposition Designation | Objection & Response |
|---|---|
| Plaintiff's Designation of Martin K. Ridgers, May 30, 2017<br><br>15:3-16; 15:20-23; 16:17-23; 17:3-7; 21:9-18; 22:6-10; 23:20-24; 24:24-25:22; 26:10-27:6; 27:16-23; 35:13-21; 36:6-21; 37:17-38:11; 39:23-40:3; 41:17-23; 43:8-45:9; 47:8-12; 47:21-24; 48:2-7; 59:21-60:3; 60:11-23; 61:1-2; 73:6-10; 73:15-74:9; 75:24-76:4; 76:7-20; 76:23; 77:14-19; 77:24-78:2; 78:4; 78:6-9; 86:3-14; 86:17-19; 89:2-6; 89:9<br><br>Page 15<br>3    Q    After you were an underwriter at EBI<br>4          when you first joined in 1989, what was your<br>5          next position?<br>6    A    Pardon?<br>7    Q    Was that in 1997?<br>8    A    Yes.<br>9    Q    Did your title change at some point<br>10          after you became a partner?<br>11    A    When OneBeacon purchased us, I<br>12          became a senior vice-president.<br>13    Q    At the time that OneBeacon purchased<br>14          EBI, I believe you said in 2007, was there a<br>15          division known as OneBeacon Entertainment?<br>16    A    Yes.<br><br>20    Q    As a Senior VP for OneBeacon, what<br>21          were your responsibilities?<br>22    A    Head of underwriting and also I did<br>23          marketing.<br><br>Page 16<br>17    Q    When you were a Senior VP for<br>18          OneBeacon, were your responsibilities<br>19          primarily involved in underwriting? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 20   A   Yes.<br>21   Q   What area or industries were you<br>22       primarily involved in underwriting?<br>23   A   Entertainment, sports and leisure.<br><br>Page 17<br>3   Q   Did you have any formal training or<br>4       education in the entertainment industry?<br>5   A   I took a producer's course once some<br>6       time back in the '90s. I can't remember the<br>7       exact year. | |
| Page 21<br>9   Q   Mr. Ridgers, were you responsible or<br>10      were you involved with the production<br>11      portfolio policy that was issued to<br>12      NBCUniversal Media, LLC, that incepted as of<br>13      January 1, 2010?<br>14  A   Yes.<br>15  Q   What was your involvement?<br>16  A   I worked with George Walden and<br>17      Wanda on the underwriting information and the<br>18      writing of the policy. | Defendant's Objections<br><br>21:9-18<br>Underwriting, policy negotiation not relevant, waste of time, prejudicial. FRE 401; 403.<br><br>Plaintiffs' Response:<br>Relevant to bad faith |
| Page 22<br>6   Q   Who negotiated the terms of the<br>7       policy, the 2010 policy?<br>8   A   That would have been a combined<br>9       effort between Peter Williams, Wanda, myself<br>10      and George Walden predominantly. | Defendant's Objections<br><br>22:6-10<br>Underwriting, policy negotiation not relevant, waste of time, prejudicial. FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |
| Page 23<br>20  Q   When did you first become aware of | Defendant's Objections |

| Deposition Designation | Objection & Response |
|---|---|
| 21    the business opportunity of issuing the<br>22    production portfolio policy, television<br>23    production portfolio policy for<br>       NBCUniversal?<br>24  A  I do not recall the specific date.<br><br><br><br><br>Page 25<br>1    become the television production insurer for<br>2    NBCUniversal?<br>3  A  I do not recall the specifics of<br>4    what I was told.<br>5  Q  Generally speaking, what were you<br>6    told?<br>7  A  All I recall is George likes working<br>8    with wordings, and there was an opportunity<br>9    for us to take a look at the opportunity with<br>10   NBC.<br>11  Q  When you say "George liked working<br>12   with wordings," what do you mean?<br>13  A  He's before come with wording<br>14   changes and different ways to approach<br>     things.<br>15  Q  When you say he's come before with<br>16   wording changes and different ways to<br>     approach<br>17   things, what do you mean?<br>18  A  I've helped work with him on<br>19   different wordings for different lines of<br>20   business probably over the last 20, 30 years,<br>21   including some contingency wording, like<br>22   cancellation-event wording or<br>     nonappearance.<br><br>Page 26<br>10  Q  So on other occasions prior to the<br>11   NBCUniversal policy that was issued for the | 23:20-24<br>Underwriting, policy<br>negotiation not relevant,<br>waste of time, prejudicial.<br>FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br><br>Defendant's Objections<br><br>24:24-25:22<br>Underwriting, policy<br>negotiation not relevant,<br>waste of time, prejudicial.<br>FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections<br><br>26:10-27:6 |

| Deposition Designation | Objection & Response |
|---|---|
| 12  policy period January 1, 2010, had Mr. Walden<br>13  previously brought you wordings for insuring<br>14  risks in the entertainment area?<br>15  A  Yes.<br>16  Q  What types of risks?<br>17  A  Probably some contingency risks,<br>18  some calculation of event, nonappearance, you<br>19  know, as well as some other portfolio changes,<br>20  production portfolio to be specific.<br>21  Q  When you were speaking about event<br>22  nonappearance, are you referring to talent not<br>23  appearing at a concert or a show or something<br>24  similar?<br>25  A  Yes.<br><br>Page 27<br>1  Q  What about contingency risks?<br>2  A  Contingency involves nonappearance,<br>3  cancellation insurance, prize indemnity,<br>4  contract bonus, hole-in-one, sometimes people<br>5  would say political risk and kidnap, ransom,<br>6  depending on the department.<br><br>16  Q  What about political risk? What do<br>17  you mean by a contingency risk that would be<br>18  associated with a political risk?<br>19  A  Political risk, predominantly in<br>20  terms -- I would deal with production<br>21  companies going into countries and then being<br>22  forced to evacuate or having their negative<br>23  media taken by the government or | Underwriting, policy negotiation not relevant, waste of time, prejudicial. FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections<br><br>27:16-23<br>Underwriting, policy negotiation not relevant, waste of time, prejudicial. FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| equipment. | |
| **Page 35** | Defendant's Objections |
| 13 Q  Do you recall any other topics that | |
| 14  were being worked on between yourself and | 35:13-21 |
| 15  Mr. Walden as to the NBCUniversal policy? | Underwriting, policy |
| 16 A  I know at the time we were working | negotiation not relevant, |
| 17  on a mechanical breakdown extension under | waste of time, prejudicial. |
| 18  extra expense and coverage for being forced to | FRE 401; 403 |
| 19  leave a location due to a danger which was | Plaintiffs' Response: |
| 20  predominantly around hurricanes, and things of | Relevant to bad faith |
| 21  that nature. | |
| **Page 36** | Defendant's Objections |
| 6 Q  When you talk about coverage for | |
| 7  being forced to leave a location due to a | 36:6-21 |
| 8  danger, what do you mean by that? | Underwriting, policy |
| 9 A  That was to do with the discussions | negotiation not relevant, |
| 10  were predominantly around hurricanes as a | waste of time, prejudicial. |
| 11  number of the filming locations that were | FRE 401; 403 |
| 12  being utilized because of tax incentives, such | |
| 13  it was Georgia and Louisiana, they could be in | Plaintiffs' Response: |
| 14  a circumstance where there was no physical | Relevant to bad faith |
| 15  damage to a location but they could be | |
| 16  required to leave by the local authorities. | |
| 17 Q  So a shutdown of production as a | |
| 18  result of a threat of a hurricane and the | |
| 19  authorities requiring that the production shut | |
| 20  down for safety purposes; is that correct? | |
| 21 A  Uh-huh, yes. | |
| **Page 37** | Defendant's Objections |
| 17 Q  Do you recall having any specific | |
| 18  conversations with Mr. Walden or anyone from | 37:17-38:11 |
| | Underwriting, policy |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 19     Aon with respect to the extra expense coverage<br>20     under the NBCUniversal 2010 policy?<br>21   A   The specifics, no, I don't recall if<br>22     there are any specific conversation with any<br>23     specific time, but we did discuss, you know,<br>24     the civil authority and the potential for a<br>25     hurricane or something of that nature.<br><br>Page 38<br>1     And I do recall discussing the -- I<br>2     wanted to make sure that we weren't picked up<br>3     news crews under the policies.<br>4   Q   What do you mean by "wanted to make<br>5     sure you weren't picked up news crews"?<br>6   A   Because news crews will go into<br>7     endangered areas, that's part of what they're<br>8     trained to do, and that we were picking up the<br>9     dramas, the comedies, and the TV shows and<br>10    things and not news crews running around the<br>11    world. | negotiation not relevant, waste of time, prejudicial. FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |
| Page 39<br>23   Q   Why did you leave OneBeacon?<br>24   A   They asked me to.<br>25   Q   Do you have an understanding as to | Defendant's Objections<br>39:23-40<br>Reason for leaving not relevant; waste of time; prejudicial.  401; 403.<br><br>Plaintiffs' Response:<br>Relevant to bad faith |
| Page 40<br>1     why you were asked to leave?<br>2   A   I was just told new owners in/old<br>3     owners out. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 41</u><br>17  Q  What did Mr. Walden tell you, if<br>18  anything, as to what NBCUniversal was trying<br>19  to achieve with its new production portfolio<br>20  insurance?<br>21  A  All I recall is they wanted to put<br>22  together a program, you know, to cover them,<br>23  you know, for their television activity. | <u>Defendant's Objections</u><br>41:17-23<br>Underwriting, policy negotiation not relevant, waste of time, prejudicial. FRE 401; 403<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith |
| <u>Page 43</u><br>8  Q  But in addition to discussing the<br>9  terms in terms of the policy form itself, the<br>10  very sections of the policy, the terms and<br>11  conditions, the cast coverage, the extra<br>12  expense coverage, the property coverage, et<br>13  cetera, were there negotiations and wording<br>14  changes with respect to the policy form<br>15  itself?<br>16  A  The biggest one I remember is the<br>17  property cover. If I remember correctly, we<br>18  combined prop sets and wardrobe and<br>19  miscellaneous equipment into a single form<br>20  rather than them being two separate coverage<br>21  sections, which in a standard policy they're<br>22  two separate coverage sections, if I remember<br>23  correctly.<br>24  So that was a change. And we took<br>25  endorsements and worked at trying to<br><br><u>Page 44</u><br>1  incorporate them into the wording rather than<br>2  issuing them as separate endorsements.<br>3  Q  Anything else that you recall as | <u>Defendant's Objections</u><br>43:8-45:9<br>Underwriting, policy negotiation not relevant, waste of time, prejudicial. FRE 401; 403<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 4      being changes to the policy form?<br>5   A   Again, other than cast, some of the<br>6      cast that we discussed earlier and mechanical<br>7      breakdown, imminent peril, maybe the animal<br>8      coverage, I can't recall, no.<br>9   Q   What do you recall being discussed<br>10     with respect to imminent peril?<br>11   A   Predominantly to work through<br>12     hazardous conditions such as a hurricane or<br>13     something of that nature, they would have<br>14     coverage if they had to relocate out even if<br>15     the hurricane didn't hit.<br>16   Q   Did imminent peril -- in terms what<br>17     was being negotiated, though, did imminent<br>18     peril cover more than just hurricane risk?<br>19   A   It would cover a fire, an earthquake<br>20     where the property may be perfectly fine, but<br>21     the authorities are stopping people from<br>22     entering an area. Those were the predominant<br>23     discussions we had.<br>24   Q   Other than the discussions that were<br>25     had, was it your understanding that the<br><br>Page 45<br>1      imminent peril coverage addressed only natural<br>2      disaster risks such as hurricane, fire or<br>3      earthquake?<br>4   A   That was the understanding when we<br>5      had those discussions on that. I mean, it<br>6      could involve, I suppose, a riot that prevents<br>7      people from entering, but the discussions we<br>8      had were predominantly around natural<br>9      disasters or concerns. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 47<br>8  Q  Who provided the first draft of the<br>9      NBCUniversal production portfolio policy?<br>10  A  I believe George.<br>11  Q  What did he provide?<br>12  A  A sample wording.<br><br>21  Q  Do you recall it taking more than a<br>22      year from start to finish to negotiate and<br>23      come to final terms as to the wording of the<br>24      NBCUniversal policy? | Defendant's Objections<br><br>47:8-12<br>Underwriting, policy negotiation not relevant, waste of time, prejudicial. FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br>Defendant's Objections<br><br>47:21-24<br>Underwriting, policy negotiation not relevant, waste of time, prejudicial. FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br><br>Defendant's Objections<br><br>48:2-7<br>Underwriting, policy negotiation not relevant, waste of time, prejudicial. FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |
| Page 59<br>21  Q  With respect to the NBCUniversal<br>22      policy, do you recall specifically that the<br>23      policy issuance department was the group<br>        that | Defendant's Objections<br><br>59:21-60:3<br>Underwriting, policy negotiation, preparation of |

| Deposition Designation | Objection & Response |
|---|---|
| 24    was responsible for preparing the final<br>25    version of the policy? | policies not relevant, waste of time, prejudicial.  FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |
| Page 60<br>1   A   It would have been the policy<br>2      issuance department that would have sent out<br>3      the final version, yes.<br><br>11  Q   In the years that you worked for<br>12      OneBeacon, was there ever a circumstance where<br>13      the final wording of the policy did not<br>14      comport with the wording that had actually<br>15      been discussed with the insured or the broker?<br>16  A   I have no recollection of that occurring.<br>18  Q   In the entire time that you were at<br>19      OneBeacon, did you ever have a circumstance<br>20      where the final wording came back from the<br>21      policy issuance department and it did not<br>22      comport with the wording that was agreed to by<br>23      you with the broker or the insured? | Defendant's Objections<br><br>60:11-23<br>Underwriting, policy negotiation not relevant, waste of time, prejudicial. FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |
| Page 61<br>1   A   I have no recollection of that ever<br>2      occurring. | Defendant's Objections<br><br>61:1-2<br>Underwriting, policy negotiation not relevant, waste of time, prejudicial. FRE 401; 403<br><br>Plaintiffs' Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | Relevant to bad faith |
| Page 73<br>6   Q   If a white supremacist group in the<br>7          United States has homemade explosives that<br>8          they utilize in order to make whatever point<br>9          they're trying to make, do you consider that<br>10         group to be military personnel?<br><br>15   A   I suppose it would look the grade of<br>16         the weaponry that's being used and how much.<br>17         But, you know, a couple of homemade bombs,<br>18         probably not.<br>19   Q   You indicated another potential<br>20         factor in looking at whether a group is a<br>21         military force or not is whether or not<br>22         they're uniformed; is that correct?<br>23   A   Uniforms can be a factor but it's<br>24         not necessarily the only factor. I mean,<br>25         uniforms aren't always worn by military<br><br><br>Page 74<br>1          factions.<br>2    Q   When you indicated that some of the<br>3          factors that you would look to would be how<br>4          armed, uniformed, whether they're trying to<br>5          implement changes to their own government, the<br>6          armaments being used, what did you mean by the<br>7          term uniformed?<br>8    A   Well, whether they do have uniforms | Defendant's Objections<br>73:6-10<br>Hypotheticals not relevant;<br>FRE 601; speculation; 401;<br>403<br><br>Plaintiffs' Response:<br>Relevant to bad faith;<br>statement of party opponent;<br>not hypothetical/speculative;<br>proper cross-examination<br><br><br>Defendant's Objections<br>73:15-74:9<br>Hypotheticals not relevant;<br>lack of foundation;<br>speculation.  FRE 601, 401;<br>403<br><br>Plaintiffs' Response:<br>Relevant to bad faith;<br>foundation present; statement<br>of party opponent. |

| Deposition Designation | Objection & Response |
|---|---|
| 9    or even if they don't have uniforms. | |
| **Page 75**<br>24  Q   You also indicated that as part of<br>25      war, you would look to whether or not they're | Defendant's Objections<br><br>75:24-76:4<br>Testimony regarding interpretation of "war", 9/11 attacks not relevant; waste of time; no foundation.  FRE 401; 403; 601<br><br>Plaintiffs' Response:<br>Relevant to bad faith; foundation present; statement of party opponent. |
| **Page 76**<br>1       seeking to implement changes to their own<br>2       government. Do you recall that?<br>3   A   I do recall saying that.<br>4   Q   What do you mean by that? | |
| 7   A   Whether it's changes to the<br>8       government or changes to somebody else's or<br>9       changes to society, it could be a different<br>10      viewpoint from different operations.<br>11  Q   Were you involved in the insurance<br>12      industry at the time of the 9/11 attacks?<br>13  A   Yes.<br>14  Q   The party responsible for those<br>15      attacks has been determined to be Al Qaeda; is<br>16      that correct?<br>17  A   Correct.<br>18  Q   To your understanding, did the<br>19      insurance industry generally apply the war<br>20      exclusion to the Al Qaeda 9/11 attacks? | Defendant's Objections<br><br>76:7-20<br>This witness interpretation of "war" not relevant; waste of time.  FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 23   A   The 9/11 attacks, no. | |
| | **Defendant's Objections** |
| | 76:23<br>This witness interpretation of "war" not relevant; waste of time.  FRE 401; 403 |
| | **Plaintiffs' Response:**<br>Relevant to bad faith |
| Page 77<br>14   Q   In your experience in the insurance<br>15         industry, have you seen or are you aware of<br>16         war exclusions that require that any conflict<br>17         be between sovereigns or quasi-sovereign<br>18         entities?<br>19   A   Yes. | **Defendant's Objections**<br><br>77:14-19<br>This witness interpretation of "war" not relevant; waste of time.  FRE 401; 403 |
| 24   Q   Do you consider there to be a<br>25         difference between a terrorism exclusion<br>         and | **Plaintiffs' Response:**<br>Relevant to bad faith |
| | **Defendant's Objections**<br><br>77:24-78:2<br>This witness interpretation of "war" not relevant; waste of time.  FRE 401; 403 |
| Page 78<br>1         war exclusion?<br>2   A   Yes. | **Plaintiffs' Response:**<br>Relevant to bad faith |
| 4   Q   What's the difference? | **Defendant's Objections**<br><br>78:4<br>This witness interpretation of "war" not relevant; waste of |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 6    A    A terrorist act is usually an<br>7          individual or group of people with an<br>8          individual act of terrorism either against<br>9          some party or another. | time.  FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br>Defendant's Objections<br><br>78:6-9<br>This witness interpretation of "war" not relevant; waste of time.  FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br>Defendant's Objections<br><br>86:3-14<br>This witness interpretation of "war", and policy drafting, other policies not relevant; waste of time, FRE 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |
| Page 86<br>3    Q    Mr. Ridgers, in your experience in<br>4          the entertainment industry, have you ever had<br>5          any experience with the war exclusion?<br>6    A    Yes. I previously answered yes.<br>7    Q    Other than having policies in which<br>8          war exclusions were contained in the policies,<br>9          have you had any other more direct experience?<br>10         For example, have you ever drafted a war<br>11         exclusion?<br>12   A    Yes.<br>13   Q    Did you draft the war exclusion in<br>14         the NBCUniversal policy?<br><br>17   A    I would have been a part of drafting<br>18         that. That would have been George, Peter,<br>19         Wanda and myself. |  |
|  | Defendant's Objections<br><br>86:17-19<br>Drafting of Policy and war exclusion not relevant; |

| Deposition Designation | Objection & Response |
|---|---|
| | prejudicial; waste of time. FRE 401; 403

Plaintiffs' Response: Relevant to bad faith |
| <u>Page 89</u><br>2    So you did not intend for the<br>3    NBCUniversal war exclusion to be broader than<br>4    the wording of the war exclusions used in<br>5    OneBeacon policies at that time; is that<br>6    correct?<br><br>9   A   Yes. | <u>Defendant's Objections</u>

89:2-6
Drafting of Policy and war exclusion not relevant; prejudicial; waste of time. FRE 401; 403

Plaintiffs' Response: Relevant to bad faith

<u>Defendant's Objections</u>

89:9
Drafting of Policy and war exclusion not relevant; prejudicial; waste of time. FRE 401; 403

Plaintiffs' Response: Relevant to bad faith |

7060055/015825

**JAY J. SHAPIRO—May 23, 2017**

| Deposition Designation | Objection & Response |
|---|---|
| Plaintiff's Designation of Jay J. Shapiro<br>6:11-7:1;11:20-12:6;25:12-26:2;26:5-8;34:21-35:18;36:1-2;36:23-37:21;37:25-38:6;38:9-10;38:15-23;39:3-5;39:10-16;40:25-41:19;41:22-43:8;50:5-51:1;54:7-55:4;55:8-15;56:6-7;56:24;57:2-8;57:14-16;59:4-6;59:21-60:11;61:1-10;61:14-62:24;63:25-64:4;64:14-65:14;65:24-66:3;66:5-67:2;67:5;67:7-12;67:15-20;72:8-15;72:17-18;72:20-73:16;74:11-75:10;75:13;75:15-76:1;77:1-9;78:2-25;79:9-81:13;81:18-25;92:8-93:7;93:18-94:23;100:13-102:6;102:14-103:1;106:21-108:18;108:20-109:7;109:10-12;115:9-25;116:24-117:2;117:5-7;117:9-16;118:4-22;119:2-6;119:11-17;119:19;119:21-120:20;120:23;120:25-121:9;121:18-25;124:15-125:7;125:10-11;125:13-126:6;126:11-13;126:15-16;126:18-23;133:20-21;133:25;134:4-13;134:17-25;135:8-17;135:20-21;135:23-136:8;141:15-142:14;142:24-143:4;143:7-8;148:7-149:6;149:11-24;150:1-4;150:6-18;151:10-22;184:25-185:14 | |
| Page 6<br>11  Q.   Mr. Shapiro, can you please state your full<br>12         name and address for the record.<br>13  A.   Jay Shapiro, 11300 Olympic Boulevard,<br>14         Suite 910, L.A. 90064.<br>15  Q.   Do you have a middle initial, sir?<br>16  A.   J.<br>17  Q.   And my name is Lucia Coyoca. I introduced<br>18         myself before we went on the record. My<br>         firm, Mitchell<br>19         Silberberg & Knupp, represents the<br>         plaintiffs in this<br>20         matter, Universal Cable Productions and<br>         Northern<br>21         Entertainment Productions LLC.<br>22         Have you ever had your deposition taken | Defendant's Objections:<br><br><br>Plaintiff's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| before, | |
| 23     Mr. Shapiro? | |
| 24  A.  Yes. | |
| 25  Q.  On how many occasions? | |
| | |
| **Page 7** | Defendant's Objections: |
| 1   A.  Approximately 20. | |
| | |
| | Plaintiff's Response: |
| | |
| | |
| **Page 11** | Defendant's Objections: |
| 20  Q.  Mr. Shapiro, in response to request for | |
| 21     production No. 1, that sought the production of all | |
| 22     documents that you reviewed prior to forming any | Plaintiff's Response: |
| 23     opinions, including any documents that do or do not | |
| 24     support your opinion; in other words, any documents you | |
| 25     reviewed. | |
| | |
| **Page 12** | Defendant's Objections: |
| 1   A.  Yes. | |
| 2  Q.  You identified certain documents in your | |
| 3     report. | |
| 4     Are there any other documents that you reviewed | Plaintiff's Response: |
| 5     other than those that are identified in the schedule to | |
| 6     your report? | |
| | |
| **Page 25** | Defendant's Objections: |
| 12  Q.  Mr. Shapiro, can you please describe your | |
| 13     educational history, beginning from college forward. | |
| 14  A.  My educational history beginning with | Plaintiff's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| college? | |
| 15  Q.  Yes. | |
| 16  A.  University of Wisconsin, bachelor's degree in | |
| 17      accounting. I have a master's in business from Arizona | |
| 18      State University graduate school. | |
| 19  Q.  Any other advanced degrees? | |
| 20  A.  No. | |
| 21  Q.  You indicated you have a master's in business | |
| 22      from Arizona State University graduate school; is that | |
| 23      correct? | |
| 24  A.  Yes. | |
| 25  Q.  Your resume indicates that you have a master's | |
| | |
| Page 26 | Defendant's Objections: |
| 1      in accounting and finance. | |
| 2   A.  Yeah. My major was accounting and finance. | |
| | |
| 5   Q.  Are you a certified public accountant? | Plaintiff's Response: |
| 6   A.  I am. | |
| 7   Q.  Have you ever -- when were you first licensed? | |
| 8   A.  1977. | |
| | |
| Page 34 | Defendant's Objections: (34:21-25) |
| 21  Q.  Have you ever been disciplined or sanctioned by | The sanction referenced has not bearing on this expert's work in this case, is particularly prejudicial in light of death of witness and inability to further explain, not relevant, waste of time. FRE 401; 403. |
| 22      the California Board of Public Accountancy? | |
| 23  A.  Yes. | |
| 24  Q.  When? | |
| 25  A.  About 10 years ago. | |

**548**

| Deposition Designation | Objection & Response |
|---|---|
| | Plaintiff's Response: Relevant to credibility; witness had the opportunity to explain at deposition. |
| Page 35<br>1  Q.  Why were you sanctioned?<br>2  A.  I failed to sign up for an organization that<br>3        the requirement for such sign-up, I was<br>        unaware of.<br>4  Q.  What was the organization?<br>5  A.  Public Company Auditing Oversight Board.<br>6  Q.  Public company on the -- is it Auditing<br>7        Oversight Board?<br>8  A.  I believe so.<br>9  Q.  What organization sanctioned you?<br>10  A.  I wasn't sanctioned. The discipline I received<br>11      was a probation. All my services remain the same. And<br>12      the ruling came from the Securities and Exchange<br>13      Commission.<br>14  MS. COYOCA: I'd like to mark as Exhibit 2 an<br>15      Order Making Findings and Imposing Remedial Sanctions<br>16      Pursuant to Section 4C and 21C of the Securities<br>17      Exchange Act of 1934 and Rule 102(e) of the Commission's<br>18      Rules of Practice. | Defendant's Objections: 35:1-18 The sanction referenced has not bearing on this expert's work in this case, is particularly prejudicial in light of death of witness and inability to further explain, not relevant, waste of time. FRE 401; 403.<br><br>Plaintiff's Response: Relevant to credibility; witness had the opportunity to explain at deposition. |
| Page 36<br>1        (Shapiro Exhibit 2 was<br>2        marked for identification.)<br><br>23  Q.  Mr. Shapiro, can you please take a look at | Defendant's Objections: 36:1-2, 23-25 The sanction referenced has not bearing on this expert's work in this case, is |

| Deposition Designation | Objection & Response |
|---|---|
| 24    the document I've put in front of you.<br>25   A.   Yes. | particularly prejudicial in light of the death of this witness as he cannot explain these issues further.  FRE 401; 403.<br><br>Plaintiff's Response:<br>Relevant to credibility; witness had the opportunity to explain at deposition. |
| Page 37<br>1   Q.   Do you recognize this document?<br>2   A.   Yes.<br>3   Q.   What is it?<br>4   A.   It's an administrative proceeding with the<br>5      Securities and Exchange Commission.<br>6   Q.   Is this the disciplinary Order that you were<br>7      speaking about in your previous response?<br>8   A.   Yes.<br>9   Q.   There is an entity referenced on page 2 that's<br>10     titled Daleco Resources Corporation.<br>11     Do you see that?<br>12   A.   Yes.<br>13   Q.   What is Daleco Resources Corp.?<br>14   A.   It was an oil and gas company.<br>15   Q.   Did you render services to Daleco?<br>16   A.   I did.<br>17   Q.   What services?<br>18   A.   Auditing services.<br>19   Q.   Auditing services?<br>20   A.   Yes. I prepared an audit and opinion for their<br>21     Form 10-K for the year ending September 30, 2003.<br><br>25   Q.   On page 4 of this document, it indicates that | Defendant's Objections:<br>37:1-21, 25<br>The sanction referenced has not bearing on this expert's work in this case, is particularly prejudicial in light of the death of this witness as he cannot explain these issues further.  FRE 401; 403.<br><br>Plaintiff's Response:<br>Relevant to credibility; witness had the opportunity to explain at deposition. |
| Page 38 | Defendant's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 1    after one year from the date of the order, the firm of<br>2    Jay Shapiro could request reinstatement before the SEC;<br>3    is that correct?<br>4  A.  Yes.<br>5  Q.  Did you --<br>6  A.  No.<br><br>9    Did you seek reinstatement before the SEC?<br>10 A.  No.<br><br>15 Q.  As a result of the decision in this matter, the<br>16    Daleco matter, were you disciplined or sanctioned by the<br>17    California State Board of Accountancy?<br>18 A.  Yes.<br>19 Q.  What discipline or sanction did you receive?<br>20 A.  Two years' probation.<br>21 Q.  What were the terms of the probation?<br>22 A.  Quarterly reporting and take an ethics course.<br>23    There was no suspension of any practice privilege. | (38:1-6, 9-10, 15-23)<br>The sanction referenced has not bearing on this expert's work in this case, is particularly prejudicial in light of the death of this witness as he cannot explain these issues further.  FRE 401; 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to credibility; witness had the opportunity to explain at deposition. |
| <u>Page 39</u><br>3  Q.  What two-year period of time were you on probation?<br>4<br>5  A.  I think it was 2010 and '11.<br><br>11    this case?<br>12 A.  Yes.<br>13 Q.  When were you first engaged?<br>14 A.  March 27, 2017.<br>15 Q.  Who hired you?<br>16 A.  Ms. Crapster. | <u>Defendant's Objections</u>:<br>(39:3-5)<br>The sanction referenced has not bearing on this expert's work in this case, is particularly prejudicial in light of the death of this witness as he cannot explain these issues further.  FRE 401; 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to credibility; witness had the opportunity |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
|  | to explain at deposition. |
| Page 40<br>25   Q.   Mr. Shapiro, when Ms. Crapster contacted you on | Defendant's Objections:<br><br>Plaintiff's Response: |
| Page 41<br>1   March 27, 2017, what did she tell you about the facts of<br>2   the case?<br>3   A.   I asked questions about the case. She told me<br>4   that she represented an insurance company. There was a<br>5   claim regarding extra expenses incurred on a relocation.<br>6   And when I asked her for more details, she sent me the<br>7   Complaint.<br>8   Q.   Did she indicate to you what she meant by<br>9   "extra expenses incurred on a relocation"?<br>10   A.   No. That would be spelled out in the<br>11   Complaint.<br>12   Q.   Did you form an understanding as to what was<br>13   meant by "extra expenses incurred on a relocation"?<br>14   A.   I did.<br>15   Q.   What's your understanding?<br>16   A.   I found in the Complaint -- there was an<br>17   exhibit, the insurance policy. And Section IX pretty<br>18   well explained the computation for extra expense. And I<br>19   believe I brought a copy of my notes in that area today. | Defendant's Objections:<br><br>Plaintiff's Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 22  Q.  I want to show you a document that's previously<br>23        been marked as Williams Exhibit 1. So I don't think<br>24        it's necessary to re-mark the document.<br>25        This is a copy of the Motion Picture/Television | |
| <u>Page 42</u><br>1        Producers Portfolio policy issued by Atlantic Specialty<br>2        Insurance Company to NBCUniversal Media, LLC, Policy<br>3        No. MP00163-04, labeled Bates control ATL003073 through<br>4        3127.<br>5        Mr. Shapiro, you indicated that attached to the<br>6        Complaint was a copy of the insurance policy; is that<br>7        right?<br>8   A.  Yes.<br>9   Q.  Is this the policy that you were referring to?<br>10  A.  Yes. I believe it is.<br>11  Q.  Okay. If you'll look at Section IX, which is<br>12        on the page labeled ATL003106 --<br>13  A.  I don't have -- oh. Here it is. Yes.<br>14  Q.  -- Roman numeral IX is titled "Definition of<br>15        Loss."<br>16        Do you see that?<br>17  A.  Yes.<br>18  Q.  When you indicated that you looked at the<br>19        Definition of Loss, is this the section to which you're<br>20        referring?<br>21  A.  Yes.<br>22  Q.  The Definition of Loss references "insurable<br>23        production cost."<br>24        Do you see that term? | <u>Defendant's Objections</u>:<br><br><br><u>Plaintiff's Response</u>: |

**553**

| Deposition Designation | Objection & Response |
|---|---|
| 25  A.  Yes. | |
| | |
| Page 43 | Defendant's Objections: |
| 1  Q.  Did you review and look at the definition of | |
| 2      "insurable production cost"? | |
| 3  A.  Well, I read through the policy. I don't | |
| 4      remember particularly looking up the | Plaintiff's Response: |
| definition. | |
| 5  Q.  Did you consider the definition of "insurable | |
| 6      production cost" in rendering your opinions | |
| in this | |
| 7      matter? | |
| 8  A.  Yes. | |
| | |
| Page 50 | Defendant's Objections: |
| 5  Q.  Mr. Shapiro, you ultimately did analyze how | |
| 6      Mr. Wunderlich had calculated the extra | |
| expenses claim | |
| 7      that's been asserted in this case; is that right? | Plaintiff's Response: |
| 8  A.  I tried to. Yes. | |
| 9  Q.  When did you undertake that analysis? | |
| 10  A.  April of this year. | |
| 11  Q.  What did you do? | |
| 12  A.  I read his report. I reviewed documents. I | |
| 13      reviewed the Complaint again, including the | |
| extra | |
| 14      expense section, and I came to the | |
| conclusion that the | |
| 15      methodology employed by Mr. Wunderlich | |
| was not an | |
| 16      appropriate approach to compute extra | |
| expense. | |
| 17  Q.  You indicated that you performed this work | |
| 18      during the month of April; is that right? | |
| 19  A.  Yes. | |
| 20  Q.  How long did it take you to complete your | |
| 21      analysis? | |
| 22  A.  Oh, I don't recall. | |
| 23  Q.  Did it take more than two hours? | |

| Deposition Designation | Objection & Response |
|---|---|
| 24  A.   Yes.<br>25  Q.   Did it take more than 100 hours?<br><br>Page 51<br>1    A.   In total, I think yes. | <br><br><br>Defendant's Objections:<br><br><br><br>Plaintiff's Response: |
| Page 54<br>7    Q.   Mr. Shapiro, are you being paid for your<br>8          services as an expert in this case?<br>9    A.   Yes.<br>10   Q.   What are your -- what is your financial<br>11         arrangement with the Strasburger Price<br>            firm?<br>12   A.   Well, I receive an hourly fee.<br>13   Q.   What's your hourly rate?<br>14   A.   For consulting, 375.<br>15   Q.   Do you have a different hourly rate for<br>16         testifying?<br>17   A.   I do.<br>18   Q.   What is that?<br>19   A.   625.<br>20   Q.   Did you receive a retainer?<br>21   A.   Yes.<br>22   Q.   How much was the retainer?<br>23   A.   7,500.<br>24   Q.   Was the retainer applied against final fees or<br>25 evergreen? | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 55<br>1    A.   Final fees.<br>2    Q.   To date, how much have you been paid by the<br>3          Strasburger firm for your work in this case?<br>4    A.   About $24,000. | Defendant's Objections:<br><br><br>Plaintiff's Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 8   Q.   Are you paid directly by the Strasburger firm<br>9         or by Atlantic Specialty?<br>10   A.   I believe the Beacon firm pays me.<br>11   Q.   The Beacon firm, do you mean by that OneBeacon<br>12         Insurance?<br>13   A.   Yes.<br>14   Q.   The entity, OneBeacon Insurance?<br>15   A.   That's correct. | |
| Page 56<br>6   Q.   Did you provide Ms. Crapster or Ms. Reed a<br>7         draft of your report?<br><br>24   THE WITNESS: Yes. | Defendant's Objections:<br>(56:6-7, 24)<br>Drafts of reports not relevant; waste of time; work product; FRE 401; 403; 26(b)4B<br><br>Plaintiff's Response:<br>Relevant to credibility of conclusions; mere reference to draft not privileged. |
| Page 57<br>2   Q.   When?<br>3   A.   Late April.<br>4   Q.   Mr. Shapiro, your report is dated April 25,<br>5         2017.<br>6         ^How long prior to the date of the report,<br>7         April 25, did you provide a draft of the report to<br>8         Ms. Crapster?<br><br>14   Q.   Did you provide Ms. Crapster with more than one<br>15         draft of your report?<br>16   A.   Not that I recall. | Defendant's Objections:<br>(57:2-8, 14-16)<br>Draft reports not relevant; waste of time; work product; 401; 403; Fed. R. Civ. P. 26(b)4B<br><br>Plaintiff's Response:<br>Relevant to credibility of conclusions; mere reference to draft not privileged. |
| Page 59 | Defendant's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 4  Q.  Where did you obtain your understanding of the<br>5       facts?<br>6  A.  Mr. Wunderlich's report.<br><br>21  Q.  You indicate "production finance analyses."<br>22      Did you review any of the accounting source<br>23      books and records relating to the DIG production in<br>24      preparing your report?<br>25  A.  No, Counselor. I wasn't given that | Plaintiff's Response: |
| Page 60<br>1      opportunity.<br>2  Q.  Did you review any production cost recap<br>3      reports?<br>4  A.  Those are the production analyses I'm referring<br>5      to.<br>6  Q.  Did you refer to or did you review any budget<br>7      documents?<br>8  A.  In those documents there were budgets. Yes.<br>9  Q.  Did you refer to and examine any pattern<br>10     budgets?<br>11  A.  Yes. | Defendant's Objections:<br><br>Plaintiff's Response: |
| Page 61<br>1  Q.  But in preparing your rebuttal report, one<br>2      component of your rebuttal report addresses the amount<br>3      of costs that were incurred in producing the show in<br>4      Croatia and New Mexico; is that correct?<br>5  A.  That is correct.<br>6  Q.  What is the source information on which you<br>7      relied in order to determine what those costs were? | Defendant's Objections:<br><br>Plaintiff's Response: |

**557**

| Deposition Designation | Objection & Response |
|---|---|
| 8  A. One of those production finance documents,<br>9     whether you call it a recap. But the number appears a<br>10    dozen times.<br><br>14  Q. Okay. Another component of your analysis<br>15    relates to the budgeted or estimated costs for the<br>16    production of a certain number of episodes if it had<br>17    gone forward in Israel; is that correct?<br>18  A. Yes.<br>19  Q. And where did you receive that budgeted<br>20    estimated dollar amount from?<br>21  A. There is an e-mail that deals with that data,<br>22    refers to a budget if it would have gone forward. And<br>23    the dating appeared to be appropriate. Also I -- I was<br>24    comfortable with the TV insurance application with the<br>25    25 million, which seemed to be pretty close to the<br><br>Page 62<br>1    e-mail.<br>2  Q. When you say the "dating appeared to be<br>3    appropriate," what do you mean by that?<br>4  A. Well, it's my understanding that the move took<br>5    place on or about July 16, 2014. So if, in fact, there<br>6    were plans prior to that date, then I felt that was the<br>7    anticipated cost. Because when it comes to actual<br>8    costs, I searched and searched, but I really couldn't<br>9    find a document that showed me exactly what the actual | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br><br><br><br>Plaintiff's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 10      costs incurred and paid in Israel was. | |
| 11   Q.   In terms of actual costs incurred and paid in | |
| 12      Israel, are you referring to actual costs incurred and | |
| 13      paid in Israel that related to the DIG episodes | |
| 14      subsequent to the pilot? | |
| 15   A.   Yes. | |
| 16   Q.   Was it your understanding that any of the DIG | |
| 17      episodes, aside from the DIG pilot, that it actually -- | |
| 18      that those episodes had actually been produced in | |
| 19      Israel? | |
| 20   A.   It was my understanding that they were not | |
| 21      produced in Israel. Yet when I saw Mr. Wunderlich's | |
| 22      deposition, he kept referring to "Israel costs | |
| 23      incurred." So I was -- I'm confused about that. But I | |
| 24      just saw the deposition over the weekend. | |
|   | |
| Page 63 | Defendant's Objections: |
| 25   Q.   In terms of determining the most accurate | |
|   | |
|   | Plaintiff's Response: |
|   | |
| Page 64 | Defendant's Objections: |
| 1      budget, would it be important to you to look at the most | |
| 2      current budget shortly prior to the time a show goes | |
| 3      into production? | Plaintiff's Response: |
| 4   A.   Ideally, yes. | |
|   | |
| 14   Q.   What about the term "locked budget"? Have | |

**559**

| Deposition Designation | Objection & Response |
|---|---|
| you<br>15      ever heard the term "locked budget" in the context of<br>16      television production accounting?<br>17  A.   Absolutely.<br>18  Q.   What's a locked budget?<br>19  A.   Final.<br>20  Q.   For purposes of analyzing the estimated<br>21      production costs for the Israel episodes subsequent to<br>22      the pilot, did you review and analyze any locked<br>23      budgets?<br>24  A.   I believe there was a document on one episode<br>25      that said "locked budget" for one of the episodes.<br><br>Page 65<br>1      Episodes 2 through 6 are the episodes in question. I<br>2      believe one of those, there was a locked budget that I<br>3      saw a document on. But I did not see anything that was<br>4      2 through 6 in detail. And, therefore, I used the<br>5      number in the e-mail.<br>6  Q.   I want to make sure I understand your response.<br>7      So the budgeting that you were attempting to<br>8      look at was for Episodes 2 through 6 of DIG; is that<br>9      correct?<br>10  A.   Yes.<br>11  Q.   And it was your belief that you did not have<br>12      any locked budget that looked at Episodes 2 through 6;<br>13      is that correct? | <br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br><br><br><br>Plaintiff's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 14   A.   I didn't see a document that was in total.<br><br>24   Q.   In preparing your opinion or your analyses, did<br>25        you take into account, other than the manner which you | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 66 | Defendant's Objections: |
| 1     just described, the actual costs that were incurred for | |
| 2     Episodes 7 through 10 in calculating your view of what | Plaintiff's Response: |
| 3     the claim amount should be? | |
| 5    THE WITNESS: Yeah. I never have calculated | |
| 6     what the claim amount should be. I was preparing a | |
| 7     rebuttal report. And as part of that, I gave a maximum | |
| 8     that no number on the claim could be greater than the | |
| 9     maximum. But I did not -- I wasn't able to compute the | |
| 10    claim amount. | |
| 11 BY MS. COYOCA: | |
| 12 Q.  Okay. So in terms of your analysis, your | |
| 13     opinion was that the extra amount should not be greater | |
| 14    than 2,357,875; is that correct? | |
| 15 A.  That is correct. | |
| 16 Q.  In calculating that $2,357,875 amount, did you | |
| 17     take into account any of the actual costs that were | |
| 18     incurred in Episodes 7 through 10? | |
| 19 A.  No. | |
| 20 Q.  And in calculating that $2,357,875 amount, did | |
| 21     you take into account any budgeting information that was | |
| 22     provided with respect to the Back 4 Episodes 7 through | |
| 23     10? | |
| 24 A.  No. | |
| 25 Q.  In calculating the $2,357,875 amount, did you | |

**562**

| Deposition Designation | Objection & Response |
|---|---|
| Page 67 | Defendant's Objections: |
| 1    take into account any final locked budget information | |
| 2    for Episodes 2 through 6? | Plaintiff's Response: |
| 5   THE WITNESS: Yes. | |
| 7   Q.  Where did you obtain that information from? | |
| 8   A.  The e-mail. | |
| 9   Q.  Other than the e-mail, though, what I'm asking | |
| 10   you is: Did you look at a locked budget and rely on the | |
| 11   information in a locked budget for Episodes 2 through 6 | |
| 12   in calculating this 2,357,875 figure? | |
| 15  THE WITNESS: I was unable to find such a | |
| 16   document. | |
| 17  MS. COYOCA: I'd like to mark as Shapiro | |
| 18   Exhibit 3 a document that's entitled "Defendant Atlantic | |
| 19   Specialty Insurance Company's Rebuttal Expert Witness | |
| 20   Disclosure." | |
| Page 72 | Defendant's Objections: |
| 8   Q.  Okay. With respect to your criticism of | |
| 9   Mr. Wunderlich's approach that it was not reasonable, is | |
| 10   it your opinion that his methodology of reviewing the | Plaintiff's Response: |
| 11   costs that were incurred in relocating the production to | |
| 12   Croatia and New Mexico and extracting out those costs | |
| 13   that would have been incurred already if the production | |
| 14   stayed in Israel -- is that, in your view, an | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 15      unreasonable methodology? <br><br> 17   THE WITNESS: Well, as you describe it, no. <br> 18        But I'm not sure that's what took place. <br><br> 20   Q.   Referring back to the designation, the expert <br> 21        witness designation, there is a sentence that begins at <br> 22        the end of line 15 which reads, begin quotes: <br> 23        "Mr. Shapiro will opine about the maximum <br> 24        amount of possible extra expenses that <br> 25        plaintiffs may recover based upon verifiable | |
| Page 73 <br> 1        information produced in the case and about <br> 2        additional reductions to such computation that <br> 3        may also apply," close quotes. <br> 4        Do you see that sentence? <br> 5   A.   Yes. <br> 6   Q.        Is your opinion as to the dollar amounts as to <br> 7        the maximum amount of possible extra expenses -- is that <br> 8        amount the $2,357,875 figure that we've discussed? <br> 9   A.   Yes. <br> 10   Q.   Now, this designation indicates that that's <br> 11        based upon verifiable information produced in the case; <br> 12        is that correct? <br> 13   A.   That's what it says. Yes. <br> 14   Q.   Did you rely on verifiable information in <br> 15        coming up with your opinion? <br> 16   A.   Well, as best as the information I was given. | Defendant's Objections: <br><br> Plaintiff's Response: |
| Page 74 <br> 11   Q.   And in your report you indicated, within <br> 12        quotes: | Defendant's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 13     "I believe my method is the more<br>14     straightforward and reliable approach to<br>15     calculating the damages on this claim:<br>16     Utilizing total production costs incurred at<br>17     the new locations less expected Israeli costs<br>18     that would have been incurred without the<br>19     relocation (Incremental Costs)," close<br>       quotes.<br>20  A.  Yes.<br>21  Q.  So the question that I'm asking you is: As to<br>22     the first part of that methodology that you've opined<br>23     about, the total production costs incurred at the new<br>24     locations, what verifiable information did you rely on<br>25     in order to determine what those total production costs | Plaintiff's Response: |
| Page 75<br>1     were?<br>2  A.  Well, I saw the Cost Bible. I saw such amount<br>3     or adjust- -- the same amount with some slight<br>4     adjustment in various production analyses or production<br>5     recaps. So I felt that that was a good number for<br>6     New Mexico/Croatia.<br>7  Q.  Did -- your total production cost amount that<br>8     you utilized in your report, is it the same total<br>9     production cost amount that was utilized by<br>10    Mr. Wunderlich?<br><br>13    THE WITNESS: Essentially, yes.<br><br>15  Q.  Now, in terms of the designation and the<br>16    reference to "verifiable information | Defendant's Objections:<br><br><br>Plaintiff's Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 17    produced in the case," did you do any separate work to verify that total<br>18    production cost amount that was utilized by you in your<br>19    analysis?<br>20  A.  No.<br>21  Q.  Now, with respect to the second part of your<br>22    statement of your methodology that referenced expected<br>23    Israeli costs that would have been incurred without the<br>24    relocation, the incremental costs, where did you get<br>25    that information from? | |
| Page 76<br>1  A.  Principally the e-mail that we've discussed. | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 77<br>1    MS. COYOCA: Okay. I'm going to mark as<br>2    Exhibit 6 an e-mail exchange that is Bates-labeled<br>3    UCP004971 through 4972.<br>4    (Shapiro Exhibit 6 was<br>5    marked for identification.)<br>6  BY MS. COYOCA:<br>7  Q.  Mr. Shapiro, is this the e-mail to which you<br>8    were referring?<br>9  A.  Yes. | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 78<br>2  Q.  Okay. So that March 11, 2014 e-mail that is<br>3    providing a DIG -- it indicates, "Here are the DIG | Defendant's Objections: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 4      budgets as of 3/11/2014." | Plaintiff's Response: |
| 5      Is this the number on which you relied in order | |
| 6      to analyze the Israel budgeted estimated costs for the | |
| 7      five episodes after the pilot? | |
| 8   A.   In the 17,535,425. | |
| 9   Q.   Is that correct? | |
| 10   A.   Yes. | |
| 11   Q.   When was the pilot shot? | |
| 12   A.   I believe the pilot was shot in June, completed | |
| 13      June 26, 2014. | |
| 14   Q.   Did you analyze any budget information that was | |
| 15      provided that was subsequent to March of 2014? | |
| 16   A.   Not that I recall. | |
| 17   Q.   Would it have been impactful to your analysis | |
| 18      if there was subsequent budget information, subsequent | |
| 19      to March 11, 2014, that was different than the | |
| 20      $17,535,425 amount? | |
| 21   A.   Yes. And if I came across such number, which | |
| 22      I've subsequently seen a 17 million 707 number, I would | |
| 23      include that in my maximum computation. It would | |
| 24      change. My model would stay the same, but the resulting | |
| 25      number would change. | |
| | |
| Page 79 | Defendant's Objections: |
| 9     MS. COYOCA: Okay. I'd like to mark as | |
| 10     Exhibit 7 a document titled "'DIG' Locked Budget, | |
| 11     PATTERN: 5 Episode - (8) Days in Israel," | Plaintiff's Response: |

**567**

| Deposition Designation | Objection & Response |
|---|---|
| 12    labeled Bates<br>control UCP014836 through 14881. And it's got a date at | |
| 13    the bottom left-hand corner, "PATTERN - Locked Budget | |
| 14    Dig Srs June 8, 2014." | |
| 15    (Shapiro Exhibit 7 was | |
| 16    marked for identification.) | |
| 17  BY MS. COYOCA: | |
| 18  Q.  Mr. Shapiro, have you seen this document | |
| 19    before? | |
| 20  A.  No, I don't believe I have. | |
| 21  Q.  Was this document made available to you during | |
| 22    the course of your analyses? | |
| 23  A.  It may have. I mean, again, there were | |
| 24    voluminous documents. But I don't recall this one | |
| 25    specifically, no. | |
| | |
| <u>Page 80</u><br>1  Q.  Well, this is a document that is titled "Locked | <u>Defendant's Objections:</u> |
| 2    Budget." | |
| 3    Do you see that? | <u>Plaintiff's Response:</u> |
| 4  A.  Yes, I do. | |
| 5  Q.  And based on your prior testimony, you | |
| 6    indicated that a locked budget, to you, indicates a | |
| 7    final budget; is that correct? | |
| 8  A.  Yes. | |
| 9  Q.  And the date of this budget is June 8, 2014, in | |
| 10    the lower left-hand corner. | |
| 11    Do you see that? | |
| 12  A.  Yes. | |
| 13  Q.  So for purposes of your analysis, would not the | |
| 14    locked budget that's dated June 8, 2014, be a more | |

| Deposition Designation | Objection & Response |
|---|---|
| 15    reliable potential estimate of costs in Israel than the | |
| 16    March 11, 2014 e-mail? | |
| 17   A.   Absolutely. | |
| 18    However, this particular document is only for | |
| 19    one episode. I would need all five episodes. It says | |
| 20    "5 Episode." It means No. 5 episode, not five episodes. | |
| 21    Notice that the total is only $3 million. | |
| 22   Q.   Could you please take a look at Exhibit 6 | |
| 23    again. | |
| 24   A.   Yes. | |
| 25   Q.   Exhibit 6 references for the pattern number the | |
| | |
| Page 81 | Defendant's Objections: |
| 1    amount of $3,507,085 times 5 to come up with the | |
| 2    17,535,425 number; is that right? | |
| 3   A.   That's correct. | Plaintiff's Response: |
| 4   Q.   So with respect to the pattern locked budget | |
| 5    for 5 Episode (8) Days in Israel, could you simply not | |
| 6    multiply the 3.541498 amount times 5 as they did in the | |
| 7    March 11, 2016 e-mail? | |
| 8   A.   That would appear to be reasonable. Yes. | |
| 9    MS. COYOCA: Okay. I want to mark as Exhibit 8 | |
| 10    the Expert Report of Jay Shapiro Analysis of Economic | |
| 11    Damages: Rebuttal. | |
| 12    (Shapiro Exhibit 8 was | |
| 13    marked for identification.) | |
| | |
| 18   Q.   Mr. Shapiro, the document I've put in front of | |
| 19    you as Exhibit 8, is this the report that you | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| prepared<br>20       to rebut Mr. Wunderlich's report?<br>21   A.   Yes.<br>22   Q.   Who typed this report?<br>23   A.   I do.<br>24   Q.   You do or you did?<br>25   A.   I did.<br><br>Page 92<br>8 MS. COYOCA: I'd like to mark as the next in<br>9 order, Exhibit 9, a document that is labeled "DIG -<br>10 New Mexico Season 1 - First 5 episodes,<br>          Production Recap<br>11 Report, 2014/2015 Season 1, Period Ending:<br>          8/11/2016,"<br>12 Bates label UPC018226 through 18227.<br>13 (Shapiro Exhibit 9 was<br>14 marked for identification.)<br>15 BY MS. COYOCA:<br>16 Q. Mr. Shapiro, have you seen this document<br>17 before?<br>18 A. Yes, I have.<br>19 Q. And what do you understand this to be?<br>20 A. This is a Production Recap Report of the first<br>21 five episodes made after the move.<br>22 Q. And if you turn to page 18227, the Front 5<br>23 episodes' dollar amount that's reflected in the<br>24 right-hand column under the chart --<br>25 A. Yes.<br><br>Page 93<br>1     Q.   -- it indicates a number 21,464,745; is that<br>2            correct?<br>3     A.   That's correct.<br>4     Q.   And is that -- is this the source of<br>5            information for the document -- excuse me -<br>             - the number<br>6            that's referenced in your report on page 8?<br>7     A.   Yes. | Defendant's Objections:<br><br>Plaintiff's Response:<br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br><br>Plaintiff's Response: |

**570**

| Deposition Designation | Objection & Response |
|---|---|
| 18  Q.  Now, I believe you indicated that you believed<br>19      that the production costs associated with the pilot were<br>20      8 million; is that right?<br>21  A.  That's correct.<br>22  Q.  Where did you get that information from?<br>23  A.  It appears on multiple documents regarding the<br>24      pilot. There's actual costs incurred.<br>25  Q.  Okay. And in this production cost recap<br><br>Page 94<br>1       report, there is total cost before breakage reflected<br>2       for the pilot amount, isn't there? For the pilot, is<br>3       there not?<br>4   A.  There is a number there, yes.<br>5   Q.  And it's 11,470,620; right?<br>6   A.  Yes.<br>7   Q.  And that's obviously greater than the 8 million<br>8       that you've referenced; isn't that right?<br>9   A.  It certainly is.<br>10  Q.  Did you take that into account?<br>11  A.  No.<br>12  Q.  Did you notice that when you were doing your<br>13      analysis?<br>14  A.  I did not.<br>15  Q.  And with respect to the Back 4 episodes, which<br>16      is the information that's reflected under the Front 5<br>17      episodes entry on page 18227, there is a dollar amount<br>18      of 14,890,385; is that right?<br>19  A.  Yes. | Defendant's Objections:<br><br>Plaintiff's Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 20  Q.  And did you take that dollar amount into<br>21       account in calculating the maximum amount<br>         of loss that<br>22       would be incurred on the claim?<br>23  A.  No. It wasn't necessary. | |
| Page 100<br>13  Q.  Please turn to page 4.<br>14       Are you there?<br>15  A.  Yes.<br>16  Q.  Okay. At the bottom of the page -- we<br>17       discussed this before the lunch break. I want to go<br>18       back to this -- it indicates that -- well, first of all,<br>19       why don't you tell me: What are you trying to convey in<br>20       the paragraph that begins, "It appears the plaintiffs'<br>21       claim"?<br>22  A.  Well, I realize that my maximum number is<br>23       materially different than plaintiffs' claim. So I'm<br>24       making a reference here that it appears that the extra<br>25       expenses in that claim and the technique used which had | Defendant's Objections:<br><br><br><br>Plaintiff's Response: |
| Page 101<br>1       these extractions -- maybe that sufficient extractions<br>2       from the total amount were not made because the<br>3       remaining amount is just too high.<br>4   Q.  Okay. So with respect to your opinion that<br>5       sufficient extractions were not made, did you do a<br>6       calculation to identify what additional extractions | Defendant's Objections:<br><br><br>Plaintiff's Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 7      should have been applied but were not? | |
| 8  A.  No. | |
| 9  Q.  If you did not do such an analysis, how were | |
| 10      you able to determine that there were additional | |
| 11      extractions that should have been applied? | |
| 12  A.  Just by the magnitude of the difference. | |
| 13  Q.  And when you say "the magnitude of the | |
| 14      difference," you're referring to the difference between | |
| 15      Mr. Wunderlich's analysis of 7.1 million in extra | |
| 16      expenses versus your analysis -- | |
| 17  A.  Of 2.3. | |
| 18  Q.  Okay. Anything else? | |
| 19  A.  No. | |
| 20  Q.  Okay. Did you review the extractions that | |
| 21      Mr. Wunderlich did apply? | |
| 22  A.  Yes. | |
| 23  Q.  Did you come to any conclusions with respect to | |
| 24      those extractions? | |
| 25  A.  Those adjustments, given his technique, seemed | |
| | |
| Page 102 | Defendant's Objections: |
| 1      reasonable. | |
| 2  Q.  Why did you not review and analyze whether | |
| 3      there were specific additional extractions that should | Plaintiff's Response: |
| 4      be applied? | |
| 5  A.  I was unable to do that. I didn't have the | |
| 6      necessary documentation to do that. | |
| | |
| 14  Q.  In analyzing the Wunderlich report, did you go | |
| 15      through and analyze the Full Cost Bible that he | |
| 16      references in his report? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 17  A.  Well, I -- I read the Full Cost Bible. I<br>18       noticed the total on the bottom. I was comfortable<br>19       where he got his numbers in his report from regarding<br>20       New Mexico/Croatia.<br>21  Q.  But the point of divergence with his analysis<br>22       is that you believe that additional extractions should<br>23       have been applied?<br>24  A.  Because of the magnitude of the claim. The<br>25       claim is to be extra expense, not total spent in | |
| Page 103<br>1       New Mexico and Croatia. | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 106<br>21  Q.  Okay. And I'm trying to get at your<br>22       substantive analysis that led you to believe that there<br>23       is no way that there could have been a number greater<br>24       than 2.357.<br>25  A.  I'm also trying to explain. If the total costs | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 107<br>1       are such compared to the Israeli expected costs, and<br>2       the difference is only 2.357, then, clearly, if he<br>3       uses any numbers by categories that he has, they would<br>4       need some kind of extraction because they're just too | Defendant's Objections:<br><br><br>Plaintiff's Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 5      large. | |
| 6  Q.  Did you analyze -- with respect to categories | |
| 7      of loss, did you analyze what extractions should have | |
| 8      been made that were not with respect to prep costs for | |
| 9      Croatia? | |
| 10  A.  I was unable to do that. | |
| 11  Q.  What about wrap costs? | |
| 12  A.  I was unable to do that analysis in any of the | |
| 13      categories. | |
| 14  Q.  Okay. But I just would like it on the record. | |
| 15      Did you do that analysis with respect to | |
| 16      New Mexico prep costs? | |
| 17  A.  No. | |
| 18  Q.  Did you do the analysis with respect to | |
| 19      New Mexico wrap? | |
| 20  A.  No. | |
| 21  Q.  Did you do or perform any analysis with respect | |
| 22      to whether the additional compensation amounts were not | |
| 23      properly included? | |
| 24  A.  I did -- I didn't do any analysis, but I | |
| 25      understood those to be extra expenses. | |
| | |
| Page 108 | Defendant's Objections: |
| 1  Q  Is it your position that any of the | |
| 2      compensation extra expenses that were identified, that | |
| 3      any of those should have been extracted? | Plaintiff's Response: |
| 4  A.  No. | |
| 5  Q.  What about all series extra expenses, that | |
| 6      portion of Mr. Wunderlich's report that addressed all | |
| 7      series extra expenses? Did you perform any analysis to | |
| 8      try to determine what all series extra expenses should | |
| 9      have been extracted? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 10  A.   No. <br> 11  Q.   Now, central to your analysis is the projected <br> 12       estimate of costs that would be incurred if the <br> 13       Episodes 2 through 6 had been shot in Israel; isn't that <br> 14       correct? <br> 15  A.   Yes. <br> 16  Q.   What analysis, if any, did you perform to test <br> 17       the possible variance of the estimated projected Israel <br> 18       budgeted costs versus potential actual? <br><br> 20  THE WITNESS: I don't think I understand the <br> 21       question. <br> 22  BY MS. COYOCA: <br> 23  Q.   Well, you understand that your 3.1 or .2 number <br> 24       that you opined about as to the Israel extra -- excuse <br> 25       me -- the Israel projected cost, you understand that <br><br> Page 109 <br> 1       that is an estimated budget number; correct? <br> 2  A.   Yes. <br> 3  Q.   Okay. So my question to you is: What <br> 4       analysis, if any, did you apply in order to determine <br> 5       whether there was a variance between projected estimates <br> 6       performed by NBCUniversal versus actual numbers? <br> 7  A.   There were no – <br><br> 10       THE WITNESS: There were no actual numbers for <br> 11       Israel because the events for Episodes 2 | Defendant's Objections: <br><br><br><br> Plaintiff's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| through 6<br>12    didn't take place. | |
| Page 115<br>9  Q.  Now, going back to your report on page 7 of<br>10      your report, you indicate that it is improper to include<br>11      as extra expenses all the prep and wrap expenses<br>12      incurred in New Mexico and Croatia; is that correct?<br>13  A.  Yes.<br>14  Q.  What is the basis for that opinion?<br>15  A.  Well, certainly the New Mexico prep expenses<br>16      were included in their entirety, and the other expenses<br>17      that were included or represented to be extra expenses<br>18      seemed much too high.<br>19  Q.  And what do you base your statement that they<br>20      seemed much too high on?<br>21  A.  On the sheer difference between those numbers<br>22      and the Israeli projection.<br>23  Q.  The budgeting process that was done for the<br>24      Israel shoot, that took place over a period of several<br>25      months, did it not? | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 116<br>24  Q.  Now, did you take into account the difference<br>25      in prep costs that would be associated with shooting in | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 117 | Defendant's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 1     a new location that was done on a very expedited basis,<br>2     such as the move to Croatia or New Mexico?<br><br>5   THE WITNESS: I didn't have enough<br>6     documentation to determine what was an expedited basis<br>7     or not.<br><br>9  Q.  Okay. Do you know when the DIG production<br>10    moved out of Israel?<br>11  A.  I thought on or about July 16, 2014.<br>12  Q.  Do you know when production started up again in<br>13    Croatia?<br>14  A.  I don't recall the exact date.<br>15  Q.  And what about production in New Mexico?<br>16  A.  I don't recall the date.<br><br>Page 118<br>4  Q.  Okay. But your opinion is that the prep costs,<br>5    you thought, for Croatia were too high; correct?<br>6  A.  Yes.<br>7  Q.  And what do you base that on?<br>8  A.  Well, the actual costs may or may not be too<br>9    high. But I don't feel those numbers represent extra<br>10   expense. That's my only focus.<br>11  Q.  Okay. But when I asked you -- a little bit<br>12   ago, I asked you whether or not you thought the<br>13   production prep for Croatia was too high, and you had<br>14   indicated --<br>15  A.  Then, Counselor, I misspoke.<br>16  Q.  Okay. | Plaintiff's Response:<br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br><br><br>Plaintiff's Response: |

**578**

| Deposition Designation | Objection & Response |
|---|---|
| 17  A.   I have no information on whether the cost<br>18         itself is too high.<br>19  Q.   What about the prep cost with respect to<br>20         New Mexico? Did you perform any analysis<br>            as to whether<br>21         the prep cost for New Mexico was too high?<br>22  A.   No.<br><br>Page 119<br>2  Q.   With respect to -- with respect to the wrap<br>3         costs that are associated with Croatia, did<br>            you do any<br>4         analysis or perform any analysis as to<br>            whether or not<br>5         the wrap costs in Croatia were too high?<br>6  A.   No.<br><br>11  Q.   Do you have any challenge at all to make<br>            with<br>12         respect to the wrap costs associated with<br>            Croatia?<br>13  A.   I have no information on that.<br>14  Q.   And what about the wrap costs that are<br>15         associated with New Mexico? Did you<br>            perform any<br>16         analysis of the dollar amount of wrap costs<br>            that were<br>17         incurred in New Mexico?<br><br>19  THE WITNESS: No.<br><br>21  Q.   Now, your report on page 7 indicates that<br>            the<br>22         amounts that were incurred for prep and<br>            wrap on<br>23         Episodes 2 through 6 should not all be<br>            applied to 2<br>24         through 6; is that correct?<br>25  A.   Well, I'm trying to indicate they should not | Defendant's Objections:<br><br><br>Plaintiff's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| **Page 120** | Defendant's Objections: |
| 1     represent extra expense. | |
| 2  Q.  Okay. And why do you believe they should not | |
| 3     reflect extra expense? | Plaintiff's Response: |
| 4  A.  Because they're too high to represent something | |
| 5     that's extra. | |
| 6  Q.  Okay. I want to go back, then, to -- I'm not | |
| 7     understanding your testimony. | |
| 8     You just indicated that they're too high to | |
| 9     represent something that's extra; correct? | |
| 10  A.  That's correct. | |
| 11  Q.  Okay. What do you base your statement on that | |
| 12     they're too high to represent extra expense? | |
| 13  A.  The sheer magnitude of his total 7 million | |
| 14     versus my 2.3. | |
| 15  Q.  Anything else? | |
| 16  A.  No. | |
| 17  Q.  Did you perform any type of analysis at all | |
| 18     with respect to the prep or wrap expenses incurred in | |
| 19     New Mexico or Croatia to reach this conclusion that | |
| 20     they're too high to reflect extra expense? | |
| 23  THE WITNESS: No. | |
| **Page 121** | Defendant's Objections: |
| 1     that any amount -- I'm sorry. Begin quotes: | |
| 2     "Any amounts incurred for prep and wrap on | |
| 3     episodes 2 through 6 that were beneficial and | episodes 2 through 6 that were beneficial and  Plaintiff's Response: |
| 4     saved money on episodes 7 through 10 provided a | |
| 5     benefit to plaintiffs that reduced their | |
| 6     overall cost of filming episodes 7 through 10," | |
| 7     close quotes. | |

| Deposition Designation | Objection & Response |
|---|---|
| 8　　　Do you see that?<br>9　A.　Yes.<br><br>18　Q.　So if I understand you correctly, is it your<br>19　　　position that the prep and wrap expenses, in your view,<br>20　　　should have been amortized over the 2 through 10<br>21　　　episodes?<br>22　A.　If, in fact, they relate to the other episodes.<br>23　　　Except, you know, I don't have that kind of information.<br>24　　　I meant it just as an observation. I have no details<br>25　　　other than that. | |
| Page 124<br>15　Q.　So the prep extra expenses that are associated<br>16　　　with New Mexico that are listed as being 1,477,588, did<br>17　　　you do any analysis of that number?<br>18　A.　No.<br>19　Q.　If you turn the page, there is a listing of the<br>20　　　extra expenses that are associated with New Mexico prep;<br>21　　　is that correct?<br>22　A.　Yes.<br>23　Q.　And in the left-hand column, there is a listing<br>24　　　of account numbers.<br>25　　　Do you see that? | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 125<br>1　A.　Yes.<br>2　Q.　Did you go back -- in order to analyze any of<br>3　　　the extra New Mexico prep expenses that are listed here, | Defendant's Objections:<br><br><br>Plaintiff's Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 4    did you go back to the accounting reports that were<br>5    provided to you and search for these accounts in order<br>6    to make a determination as to what you thought was<br>7    inappropriately included?<br><br>10  THE WITNESS: I did not. I didn't find it<br>11    necessary to perform my engagement.<br><br>13  Q.  Well, but you indicated that you believe that<br>14    there were extra expenses associated with New Mexico<br>15    prep that should not have been included; is that<br>16    correct?<br>17  A.  Based on the overall magnitude of the<br>18    difference between his 7 million and my 2.3 and the fact<br>19    that New Mexico prep uniquely has no exclusions, which<br>20    essentially is saying all New Mexico prep is extra,<br>21    which seems unreasonable.<br>22  Q.  Aside from seeming unreasonable to you and<br>23    because you think the number is too high, did you do any<br>24    analysis of the financial documentation that was<br>25    provided to you in order to test your hypothesis that it | |
| Page 126<br>1    was too high?<br>2  A.  No.<br>3  Q.  Mr. Shapiro, you did have financial reports<br>4    that reflected the costs that were incurred that were | Defendant's Objections:<br><br><br>Plaintiff's Response: |

**582**

| Deposition Designation | Objection & Response |
|---|---|
| 5     entered by account number, did you not?<br>6  A.  Yes.<br><br>11    THE WITNESS: If you mean by analysis, trace it<br>12    back to each one of the account numbers, I didn't find<br>13    that necessary in the task I was given.<br><br>15  Q.  Okay. But what I'm asking is: Could you have<br>16    done it with the documentation you had been provided?<br><br>18    THE WITNESS: It would have been possible to<br>19    trace this table back to the respective account numbers,<br>20    I believe. I didn't do it. But I found no evidence<br>21    that any of the Croatian or New Mexico costs were<br>22    misstated. My only objection is they're not all extra<br>23    expense. | |
| Page 133<br>20    Did you perform any analysis of the description<br>21    of Mr. Wunderlich's review of the Full Cost Bible as to<br>22    the New Mexico all series expenses?<br><br>25    THE WITNESS: No. | Defendant's Objections:<br><br><br><br>Plaintiff's Response: |
| Page 134<br>4  Q.  Did you try to test to determine whether or not<br>5    his analysis was correct?<br>6  A.  What do you mean by "correct"? | Defendant's Objections:<br><br><br><br>Plaintiff's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 7   Q.   Well, you've indicated that your analysis you | |
| 8   did in total. You just think the total amount was too | |
| 9   large. And I'm trying to get at what the basis is for | |
| 10   that opinion. And so I'm trying to determine what it is | |
| 11   that you did with respect to each of the categories of | |
| 12   expenses as to which Mr. Wunderlich included in his | |
| 13   claim calculation. | |
| | |
| 17   THE WITNESS: It's of no value to analyze it by | |
| 18   category. | |
| 19   BY MS. COYOCA: | |
| 20   Q.   Why is it of no value to analyze it by | |
| 21   category? | |
| 22   A.   Because the loss can only be the maximum amount | |
| 23   of total cost difference. | |
| 24   Q.   Based on your chosen methodology; correct? | |
| 25   A.   That's correct. | |
| | |
| Page 135 | Defendant's Objections: |
| 8   Q.   Okay. So do you think that the most reliable | |
| 9   analysis of what truly was extra would be to review each | |
| 10   and every expense that was included in the extra expense | Plaintiff's Response: |
| 11   calculation? | |
| 12   A.   Well, that would be the most reliable. Maybe | |
| 13   not the most practical. | |
| 14   Q.   Okay. And do you believe that the most | |
| 15   reliable calculation of extra expense would not rely on | |
| 16   estimate -- estimated cost amounts as | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 17    opposed to actual<br>     cost amounts?<br><br>20  THE WITNESS: Well, in a perfect world. But<br>21     here there are no actual amounts available.<br><br>23  Q.  But there were actual amounts available for<br>24      Croatia and New Mexico; correct?<br>25  A.  Yes. | |
| Page 136<br>1  Q.  So to take the place of the estimated costs for<br>2     Israeli production, rather than using estimates, you<br>3     could have gone, in a perfect world, and done an<br>4     analysis of the actual expenses that were incurred?<br>5  A.  If I had the detail information behind each<br>6     expense and I could verify what it was for and was it,<br>7     in fact, extra from what would have been needed to<br>8     complete a TV one-hour production. | Defendant's Objections:<br><br><br><br>Plaintiff's Response: |
| Page 141<br>15  Q.  And in your analysis and coming to your<br>16      methodology, you challenge the fact that he did not look<br>17      at what originally had been projected as the costs for<br>18      production of the show if it stayed in Israel; right?<br>19  A.  I don't think he gave any consideration to what<br>20      would have happened if they stayed in Israel. Even<br>21      though the numbers were changing and | Defendant's Objections:<br><br><br><br>Plaintiff's Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| maybe not going to<br>22    be actual, but it was the best thing you had. To ignore<br>23    that, I feel, was inappropriate.<br>24    And then I'm further confused by his deposition<br>25    where he says he saw costs incurred. | |
| Page 142<br>1  Q.  Israel-incurred costs and --<br>2  A.  On several -- he makes reference to that<br>3      several times, which further confuses me.<br>4  Q.  Okay. And they're referenced in his report as<br>5      well, are they not?<br>6  A.  Well, I didn't see any reference to<br>7      Israeli-incurred.<br>8  Q.  And are you aware of -- in your analysis, when<br>9      you were going through everything, did you look at any<br>10    costs that were incurred and paid while still in Israel<br>11    that actually applied to all series?<br>12  A.  I saw no documentation on that.<br>13  Q.  You saw no documentation?<br>14  A.  No.<br><br>24  Q.  Well, if there were costs that were actually<br>25    incurred and paid in Israel but that redounded to the | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 143<br>1    benefit of the episodes that were shot in Croatia and<br>2    New Mexico, wouldn't you need to take those expenses<br>3    into account in calculating extra expense under your<br>4    methodology? | Defendant's Objections:<br><br><br>Plaintiff's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 7    THE WITNESS: Yes. If such document existed<br>8          that showed that. I saw no document that<br>          showed that.<br><br>Page 148<br>7    Q.   Okay. Mr. Shapiro, I would like to understand<br>8          the calculation that you performed in order to arrive at<br>9          your $2,357,875 number.<br>10         So looking at the methodology section of your<br>11         report on page 8, you indicate that you started with, I<br>12         believe, the Total Cost, capital T, capital C --<br>13    A.   Yes.<br>14    Q.   -- Total Cost amount of 21,297,435 and the<br>15         adjusted total costs of 21,464,745.<br>16    A.   Yes.<br>17    Q.   And that 21,464,745 number is one that you<br>18         obtained pursuant to --<br>19    A.   The document we saw this morning.<br>20    Q.   Right. The Shapiro Exhibit 9, which is<br>21         UCP018227. So could you please pull Exhibit 9 out.<br>22    A.   Yes.<br>23    Q.   Okay. And on page UCP018227, we established<br>24         that the Front 5 episodes, which is 21,464,745 -- that's<br>25         your adjusted total cost number in your report; correct?<br><br>Page 149<br>1    A.   Yes.<br>2    Q.   Now, this indicates total cost before breakage. | Defendant's Objections:<br><br><br>Plaintiff's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 3  A.  Yes.<br>4  Q.  Did you take into account any breakage<br>5      calculation?<br>6  A.  I did not.<br><br>11  Q.  Now, the next number that was important to your<br>12     analysis is the Israeli cost data; is that correct?<br>13  A.  Yes.<br>14  Q.  And you believed the most detailed Israeli cost<br>15     data was in UCP004971-4972; is that right?<br>16  A.  Yes. At the time.<br>17  Q.  Right. And that's Exhibit -- what we've marked<br>18     as Exhibit 6; correct?<br>19  A.  Yes.<br>20  Q.  Okay. I want you to pull out Exhibit 6,<br>21     please. Thank you.<br>22     So this document which bears a March 11, 2014<br>23     date is not the most immediate budget prior to<br>24     production of the pilot; is that right? | Plaintiff's Response: |
| Page 150<br>1    THE WITNESS: Well, I'm certainly willing to<br>2    recognize we saw another document this morning that<br>3    could change this number because it's a more recent<br>4    budget.<br><br>6  Q.  Okay. And if you turn to Schedule B of your report --<br>7<br>8  A.  Yes.<br>9  Q.  -- the calculation that you performed was to<br>10    subtract from the 21,464,745 number the total amount of | Defendant's Objections:<br><br><br><br>Plaintiff's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 11      the Israel costs anticipated for 2 through 6 episodes;<br>12      is that right?<br>13   A.   Well, I think you misspoke. I took the<br>14      New Mexico/Croatia number Episodes 2 through 6 and<br>15      subtracted the Israeli number. Yes.<br>16   Q.   Okay. And, again, that Israeli cost data,<br>17      17,535,425, was drawn specifically from Exhibit 6?<br>18   A.   Exhibit 6. Correct. | |
| Page 151<br>10   Q.   Okay. Now, you then deducted certain amounts<br>11      relating to tax credits; is that right?<br>12   A.   Yes.<br>13   Q.   So if you look at Schedule A, you deducted from<br>14      the $3.9 million number the amount of $1,571,445; is<br>15      that right?<br>16   A.   Yes.<br>17   Q.   And that's how you reached your $2,357,875?<br>18   A.   That's correct.<br>19   Q.   All right. So the film tax credit calculation<br>20      is set forth on another schedule. That's Schedule C;<br>21      right?<br>22   A.   That's correct. | Defendant's Objections:<br><br>Plaintiff's Response: |
| Page 184<br>25   Q.   Mr. Shapiro, we previously discussed your | Defendant's Objections:<br><br>Plaintiff's Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 185 | Defendant's Objections: |
| 1      report and specifically page 9 and your opinion that | |
| 2      there may have been production quality improvements that | Plaintiff's Response: |
| 3      could have been made to each episode that potentially | |
| 4      would reduce the claim amount; is that correct? | |
| 5   A.   Well, that would reduce the actual costs to be | |
| 6      considered as extra. And if some of those items were | |
| 7      considered extra and they resulted from a quality | |
| 8      improvement, yes. | |
| 9   Q.   Okay. So my specific question to you is: Are | |
| 10     you aware of any specific production quality | |
| 11     improvements that were made to the production of DIG | |
| 12     that were characterized as extra expenses? | |
| 13   A.   No. | |
| 14   MS. COYOCA: Okay. I have nothing further. | |

**AARON STONE—May 10, 2017**

| Deposition Designation | Objection & Response |
|---|---|
| Plaintiff's Designation of Aaron Stone, May 10, 2017<br>8:22-10:17; 11:1-12:11; 13:1-22; 14:2-20; 15:10-16:23; 17:21-25; 18:4-19:3; 26:1-27:7; 27:10-28:7; 30:3-10; 31:10-15; 31:19-32:4; 51:12-17; 51:23-24; 52:1-3; 52:7-9; 64:16-65:4; 65:9; 65:11-12; 65:14-16; 67:25-68:21; 69:1-2; 69:5-10; 69:12-21; 70:1-2; 70:4-71:4; 71:7-8; 82:2-83:6; 89:11-13; 141:4-142:21; 144:24-145:12; 158:5-19; 202:8-203:11; 204:11-208:8; 209:6-15; 209:18-25<br><br>Page 8<br>22          MR. HAYES: This is going to be<br>23      Exhibit 1.<br>24          (Whereupon, Exhibit 1 was<br>25          marked for identification.)<br><br>Page 9<br>1    BY MR. HAYES:<br>2  Q.  Mr. Stone, do you recognize the document<br>3      marked Exhibit 1?<br>4  A.  Yes, I do.<br>5  Q.  Okay. What is it?<br>6  A.  It is the deposition notice for Atlantic's<br>7      30(b)(6) witness, which is me.<br>8  Q.  I want you to turn to the page marked 4. Do<br>9      you see at the bottom of the page marked 4<br>10     there's a heading, "Topics"?<br>11  A.  Yes.<br>12  Q.  Okay. Do you recognize the topics that begin<br>13     on page 4 and continue all the way until page<br>14     12?<br>15  A.  (Reviews document.) I do.<br>16  Q.  Okay. So you've had a chance to review the<br>17     topics? | |

| Deposition Designation | Objection & Response |
|---|---|
| 18   A.   I have.<br>19   Q.   Are you Atlantic's designee for Topic 2?<br>20   A.   I am.<br>21   Q.   Are you Atlantic's designee for Topic 3?<br>22   A.   I am.<br>23   Q.   Are you Atlantic's designee for Topic 4?<br>24   A.   Yes, I am.<br>25   Q.   Are you Atlantic's designee for Topic 5?<br><br>Page 10<br>1   A.   Yes.<br>2   Q.   Are you Atlantic's designee for Topic 6?<br>3   A.   Yes.<br>4   Q.   Are you Atlantic's designee for Topic 7?<br>5   A.   Yes.<br>6   Q.   Are you Atlantic's designee for Topic 8?<br>7   A.   Yes.<br>8   Q.   Are you Atlantic's designee for Topic 9?<br>9   A.   Yes.<br>10   Q.   Are you Atlantic's designee for Topic 11?<br>11   A.   Yes.<br>12   Q.   Are you Atlantic's designee for Topic 12?<br>13   A.   Yes.<br>14   Q.   Are you Atlantic's designee for Topic 13?<br>15   A.   Yes.<br>16   Q.   Are you Atlantic's designee for Topic 14?<br>17   A.   Yes.<br><br>Page 11<br>1   Q.   Are you Atlantic's designee for Topic 19?<br>2   A.   Yes.<br>3   Q.   Are you Atlantic's designee for Topic 20?<br>4   A.   Yes.<br>5   Q.   Are you Atlantic's designee for Topic 21?<br>6   A.   Yes.<br>7   Q.   Are you Atlantic's designee for Topic 22?<br>8   A.   Yes.<br>9   Q.   Are you Atlantic's designee for Topic 23?<br>10   A.   Yes. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 11  Q.   Are you Atlantic's designee for Topic 24? | |
| 12  A.   Yes. | |
| 13  Q.   Are you Atlantic's designee for Topic 25? | |
| 14  A.   Yes. | |
| 15  Q.   Are you Atlantic's designee for Topic 26? | |
| 16  A.   Yes. | |
| 17  Q.   Are you Atlantic's designee for Topic 27? | |
| 18  A.   Yes. | |
| 19  Q.   Are you Atlantic's designee for Topic 28? | |
| 20  A.   Yes. | |
| 21  Q.   Are you Atlantic's designee for Topic 29? | |
| 22  A.   Yes. | |
| 23  Q.   Are you Atlantic's designee for Topic 30? | |
| 24  A.   Yes. | |
| 25  Q.   Are you Atlantic's designee for Topic 31? | |
|  | |
| Page 12 | |
| 1   A.   Yes. | |
| 2   Q.   Are you Atlantic's designee for Topic 32? | |
| 3   A.   Yes. | |
| 4   Q.   Are you Atlantic's designee for Topic 33? | |
| 5   A.   Yes. | |
| 6   Q.   Are you Atlantic's designee for Topic 34? | |
| 7   A.   Yes. | |
| 8   Q.   Are you Atlantic's designee for Topic 35? | |
| 9   A.   Yes. | |
| 10  Q.   Are you Atlantic's designee for Topic 36? | |
| 11  A.   Yes. | |
|  | |
| Page 13 | |
| 1   Q.   Are you the designee for Topic 37? | |
| 2   A.   Yes. | |
| 3   Q.   Are you Atlantic's designee for Topic 38? | |
| 4   A.   Yes. | |
| 5   Q.   Are you Atlantic's designee for Topic 39? | |
| 6   A.   Yes. | |
| 7   Q.   Are you Atlantic's designee for Topic 40? | |
| 8   A.   Yes. | |
| 9   Q.   Are you Atlantic's designee for Topic 41? | |

**593**

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 10   A.   Yes. | |
| 11   Q.   Are you Atlantic's designee for Topic 42? | |
| 12   A.   Yes. | |
| 13   Q.   Are you Atlantic's designee for Topic 43? | |
| 14   A.   Yes. | |
| 15   Q.   Are you Atlantic's designee for Topic 44? | |
| 16   A.   Yes. | |
| 17   Q.   Are you Atlantic's designee for Topic 45? | |
| 18   A.   Yes. | |
| 19   Q.   Are you Atlantic's designee for Topic 46? | |
| 20   A.   Yes. | |
| 21   Q.   Are you Atlantic's designee for Topic 47? | |
| 22   A.   Yes. | |
| | |
| Page 14 | |
| 2    Q.   Are you Atlantic's designee for Topic 50? | |
| 3    A.   Yes. | |
| 4    Q.   Are you Atlantic's designee for Topic 51? | |
| 5    A.   Yes. | |
| 6    Q.   Are you Atlantic's designee for Topic 52? | |
| 7    A.   Yes. | |
| 8    Q.   Are you Atlantic's designee for Topic 53? | |
| 9    A.   Yes. | |
| 10   Q.   Are you Atlantic's designee for Topic 54? | |
| 11   A.   Yes. | |
| 12   Q.   Are you Atlantic's designee for Topic 55? | |
| 13   A.   Yes. | |
| 14   Q.   Are you Atlantic's designee for Topic 56? | |
| 15   A.   Yes. | |
| 16   Q.   And, Mr. Stone, do you understand that as | |
| 17        Atlantic's designee for the topics that you | |
| 18        just identified, you are speaking on behalf | |
| 19        of Atlantic? | |
| 20   A.   Yes. | |
| | |
| Page 15 | |
| 10        MR. HAYES: This is going to be | |
| 11        Exhibit 2. | |
| 12        (Whereupon, Exhibit 2 was | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 13        marked for identification.) | |
| 14   BY MR. HAYES: | |
| 15   Q.   Mr. Stone, do you recognize the document | |
| 16        marked Exhibit 2? | |
| 17   A.   (Reviews document.) Yes, I am. | |
| 18   Q.   Yes, you do recognize it? | |
| 19   A.   Yes, I do. Sorry. | |
| 20   Q.   What is it? | |
| 21   A.   It appears to be a copy of the insurance | |
| 22        policy that Atlantic Specialty issued to | |
| 23        NBCUniversal Media for the period covering | |
| 24        January 1, 2014, to June 30th, 2015. | |
| 25   Q.   Is this the insurance policy at issue in this | |
| | |
| Page 16 | |
| 1        litigation? | |
| 2   A.   I believe so, yes. | |
| 3   Q.   I want you to turn to the page marked | |
| 4        ATL 3103. | |
| 5   A.   Okay. | |
| 6   Q.   Have you reviewed this part of the insurance | |
| 7        policy before today? | |
| 8   A.   Yes, I have. | |
| 9   Q.   And by, "This part," I mean Section 3, "Extra | |
| 10        Expense." | |
| 11   A.   Yes, I have. | |
| 12   Q.   I'd like you to read into the record | |
| 13        paragraph 1-G. | |
| 14   A.   Paragraph 1-G of Section 3, the extra expense | |
| 15        coverage grant, provides, "The loss must be a | |
| 16        direct result of an unexpected, sudden or | |
| 17        accidental occurrence entirely beyond your | |
| 18        control to include," and then subparagraph G | |
| 19        states, "Imminent peril defined as certain, | |
| 20        immediate and impending danger of such | |
| 21        probability and severity to persons or | |

| Deposition Designation | Objection & Response |
|---|---|
| 22    property that it would be unreasonable or<br>23    unconscionable to ignore."<br><br>Page 17<br>21  Q.  You understand that the policy at issue<br>22    covers losses incurred as a result of the,<br>23    quote, "Interruption, postponement,<br>24    cancellation, relocation, curtailment or<br>25    abandonment of an insured production"?<br><br>Page 18<br>4    THE WITNESS: I understand that<br>5    there's an insuring agreement that covers<br>6    certain losses that are necessarily sustained<br>7    by the insured as a result of -- of the<br>8    things that are -- are delineated and set<br>9    forth in the insuring agreement.<br>10  BY MR. HAYES:<br>11  Q.  What is an insured production under the<br>12    insuring agreement?<br>13  A.  An insured production would be a -- either --<br>14    in this case it would be a television<br>15    production that was declared to the policy to<br>16    be covered by the policy in the event that<br>17    there was a loss that triggered coverage.<br>18  Q.  Such as Dig, correct?<br>19  A.  Yes.<br>20  Q.  Do you know when Dig was declared to the<br>21    policy?<br>22  A.  I believe it was declared to the policy in<br>23    December of 2013.<br>24  Q.  And do you know when NBCUniversal decided to<br>25    move Dig from Israel to another location<br><br>Page 19<br>1    approximately?<br>2  A.  I believe they made that decision on either | |

| Deposition Designation | Objection & Response |
|---|---|
| 3      July 11th or July 12th, 2014. | |
| | |
| <u>Page 26</u> | |
| 1  Q.  Do you recognize the document marked | |
| 2      Exhibit 3? | |
| 3  A.  Exhibit 3 appears to be various portions of a | |
| 4      declarations page for what's referred to as a | |
| 5      DICE producer's portfolio policy. | |
| 6  Q.  What is a DICE producer's portfolio policy? | |
| 7  A.  DICE is an industry acronym for types of | |
| 8      television productions, including | |
| 9      documentaries, educational, commercial and | |
| 10     other related productions. | |
| 11  Q.  Is Exhibit 3 a portion of an Atlantic | |
| 12     insurance policy? | |
| 13  A.  Are you asking me as part of a specific | |
| 14     policy or is this a form that we might issue | |
| 15     in the normal course of business? | |
| 16  Q.  The latter. | |
| 17  A.  It appears that this may be an | |
| 18     Atlantic Specialty, or at least portions of | |
| 19     an Atlantic Specialty form that we might | |
| 20     issue. | |
| 21  Q.  I want you to look at the page marked | |
| 22     ATL 4099. | |
| 23  A.  (Complies.) | |
| 24  Q.  And now I want you to review -- you see | |
| 25     there's a lot of information redacted here? | |
| | |
| <u>Page 27</u> | <u>Defendant's Objection:</u> |
| 1  A.  Yes. | 27:10-28:7 |
| 2  Q.  I'd like you to review the text under | Reference to any policy other |
| 3     Section 2, "Exclusions," and let me know when | than the one in issue is not |
|       relevant,confusing, | |
| 4     you're done. | prejudicial; waste of time , |
| 5  A.  Okay. (Reviews document.) Okay, I've | authentication FRE 401, 403, |
| 6     reviewed them. | 901 |
| 7  Q.  Where does that language come from? | |
| | <u>Plaintiffs' Response:</u> |

**597**

| Deposition Designation | Objection & Response |
|---|---|
| 10          THE WITNESS: I don't know.<br>11   BY MR. HAYES:<br>12   Q.   Is that language that Atlantic uses in its<br>13          insurance policies?<br>14   A.   This is language that I have seen used in<br>15          some Atlantic policies, yes.<br>16   Q.   How long have you been an employee of<br>17          Atlantic?<br>18   A.   Three years.<br>19   Q.   And what's your position today?<br>20   A.   Currently, my title is vice-president of<br>21          claims, and I'm responsible for two of our<br>22          business units, OneBeacon government risks<br>23          and OneBeacon entertainment.<br>24   Q.   Has that been your position since you<br>25          started?<br><br>Page 28<br>1   A.   No.<br>2   Q.   What was your position when you started?<br>3   A.   When I started, my position was<br>4          vice-president of claims for OneBeacon<br>5          government risks.<br>6   Q.   Have you had any other positions?<br>7   A.   Within OneBeacon, no.<br><br>Page 30<br>3   Q.   Does Atlantic understand paragraph 2-A, 2-B<br>4          of the policy marked Exhibit 3 to have the<br>5          same meaning as paragraph 3-2 of the policy<br>6          issued to NBCUniversal marked Exhibit 2?<br>7   A.   It is the same language.<br>8   Q.   Does Atlantic understand it to have the same<br>9          meaning?<br>10   A.   Yes, it's the same language. | Relevant to bad faith; statement of party opponent; business record. Witness is Defendant's 30(b)(6) representative.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objection:<br>30:3-10<br>Reference to any policy other than the one in issue is not relevant, confusing, prejudicial; waste of time , authentication; FRE 401, 403, 901<br><br>Plaintiffs' Response:<br>Relevant to bad faith; statement of party opponent; business record. Witness is |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | Defendant's 30(b)(6) representative. |
| **Page 31** | Defendant's Objection: |
| 10  Q.  Okay. So I'll ask again. Does Atlantic | 31:10-15 |
| 11       understand paragraph 2-A, 2-C of the policy | 31:19-32:4 |
| 12       marked Exhibit 3 to have the same meaning as | Reference to any policy other than the one in issue is not |
| 13       paragraph Roman Numeral III, Arabic 3 of the | relevant, confusing, prejudicial; waste of time , |
| 14       policy issued to NBCUniversal marked | authentication FRE 401, 403, |
| 15       Exhibit 2? | 901 |
| 19  Q.  To make sure we're on the same page, I'm | Plaintiffs' Response: |
| 20       asking about Atlantic's understanding of the | Relevant to bad faith; |
| 21       meaning. | statement of party opponent; |
| 22  A.  Yes. (Reviews document.) I would say | business record. Witness is |
| 23       generally, yes. | Defendant's 30(b)(6) |
| 24  Q.  What does that mean, "Generally, yes"? | representative. |
| 25  A.  Well, the -- the language is in -- in a | |
| **Page 32** | |
| 1        different sequence, in a different place in | |
| 2        the exclusion, but I don't know that we | |
| 3        would -- we would necessarily look at it | |
| 4        differently. | |
| **Page 51** | Defendant's Objection: |
| 12  Q.  The September 11th attacks -- | 51:12-17 |
| 13  A.  Yes. | 51:23-24 |
| 14  Q.  -- were those attacks acts of war as Atlantic | Whether the 911 attacks were |
| 15       understands the word "war" under paragraph | "war"; not relevant, |
| 16       Roman Numeral III, Arabic 1 of the policy | confusion; waste of time FRE |
| 17       marked Exhibit 2? | 401, 403, |
| 23  Q.  I'm just asking for Atlantic's understanding | Plaintiffs' Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 24     of its policy language. | Relevant to bad faith; dependent on outcome of MILs. |
| <u>Page 52</u><br>1         THE WITNESS: I don't you think<br>2    that we would consider the attacks of 9/11 to<br>3    be war under our policy language.<br><br>7         THE WITNESS: I don't think that<br>8    we would consider them to be warlike under<br>9    the policy. | <u>Defendant's Objection:</u><br>52:1-3<br>52:7-9<br>Whether the 911 attacks were "war"; not relevant, confusion; waste of time FRE 401, 403<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; dependent on outcome of MILs. |
| <u>Page 64</u><br>16         My question was whether or not<br>17    Atlantic considers Hamas a terrorist<br>18    organization. Does Atlantic have a position<br>19    on that?<br>20  A.  I don't believe we have a formal position on<br>21    it, no.<br>22  Q.  Okay. Does it have an informal position?<br>23  A.  We have no reason to disagree with the<br>24    characterizations of Hamas that have been<br>25    made by the -- the U.S. Government, the<br><br><u>Page 65</u><br>1    Israeli government.<br>2  Q.  Well, as a representative and designee of<br>3    Atlantic, are you willing to say whether or<br>4    not Hamas is a terrorist organization?<br><br>9  Q.  What's Atlantic's position?<br><br>11         THE WITNESS: I guess our position<br>12    is that we don't -- | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 14      THE WITNESS: We're not in the<br>15      business of labeling or characterizing groups<br>16      such as Hamas.<br><br>Page 67<br>25  Q.  But let's go back to Exhibit 2, and I want<br><br>Page 68<br>1      you to go to page 3083.<br>2  A.  (Complies.)<br>3  Q.  And now I want you to focus on<br>4      Roman Numeral III, Arabic 3. It begins,<br>5      "Insurrection, rebellion, revolution." Do<br>6      you see that?<br>7  A.  Yes.<br>8  Q.  Does Atlantic have an understanding of what<br>9      types of activities are covered by this<br>10     exclusion, by this prong of the exclusion?<br>11  A.  Yes.<br>12  Q.  And what is Atlantic's understanding?<br>13  A.  This exclusion would cover a situation where<br>14     a group of individuals or a group seeks to<br>15     overthrow the government of another and the<br>16     action taken by that governmental authority<br>17     in responding to the actions of the group<br>18     attempting to overthrow them.<br>19  Q.  Could an insurrection, rebellion or<br>20     revolution, usurped power or action, also be<br>21     a war?<br><br>Page 69<br>1  Q.  According to Atlantic's understanding of its<br>2     policies.<br><br>5      THE WITNESS: No, I think we<br>6      would -- we would view that differently than | |

| Deposition Designation | Objection & Response |
|---|---|
| 7     a war.<br>8  BY MR. HAYES:<br>9  Q.  Could it also be warlike action, according to<br>10     Atlantic's understanding of its policy?<br><br>12     THE WITNESS: Warlike action is --<br>13     you know, is limited to action taken by a<br>14     military force, per the policy language. So<br>15     I -- I don't think that the insurrection,<br>16     rebellion, revolution would be similar to<br>17     warlike action.<br>18  BY MR. HAYES:<br>19  Q.  Could insurrection, rebellion, revolution or<br>20     usurped power or action also be warlike<br>21     action, was the question.<br><br>Page 70<br>1  Q.  According to Atlantic's understanding of its<br>2     policy terms.<br><br>4     THE WITNESS: No, I think it's --<br>5     it's different.<br>6     MR. HAYES: Okay.<br>7  BY MR. HAYES:<br>8  Q.  Were the hostilities between Israel and Hamas<br>9     in July of 2014, did those hostilities<br>10     constitute a war?<br>11  A.  It is our position that, yes, it was a war.<br>12  Q.  Did those hostilities constitute warlike<br>13     action?<br>14  A.  Yes, there may have been warlike action.<br>15  Q.  Did those hostilities constitute<br>16     insurrection, rebellion, revolution, usurped<br>17     power or action under prong 3?<br>18  A.  We did not -- we did not necessarily look at<br>19     it that way in the sense that our position<br>20     was in evaluating the claim that there was an<br>21     ongoing war and that the war exclusion or the | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 22     warlike action exclusion applied.<br>23          However, if we were wrong in that it<br>24     wasn't a war or warlike activity, it<br>25     certainly was possible that the insurrection,<br><br>Page 71<br>1     rebellion or revolution exclusion could apply<br>2     to this situation.<br>3  Q.  But as you just testified, it can't be both,<br>4     right?<br><br>7          THE WITNESS: No, they're separate<br>8     things.<br><br>Page 82<br>2  Q.  Mr. Stone, let's go back to Exhibit 2.<br>3  A.  (Complies.)<br>4  Q.  This is the NBCUniversal policy that is at<br>5     issue in the case, correct?<br>6  A.  Yes.<br>7  Q.  Does this policy contain an exclusion for<br>8     losses caused by terrorism?<br>9  A.  Other than the -- I don't believe there is an<br>10     exclusion for terrorism. I think the only<br>11     mention of terrorism in the policy, or the<br>12     only language that touches on terrorism is<br>13     the TRIA endorsement.<br>14  Q.  And the TRIA endorsement is not an exclusion<br>15     of losses caused by terrorism, correct?<br>16  A.  I believe that's correct.<br>17  Q.  Okay.<br>18          MR. HAYES: This is going to be<br>19     Exhibit 4.<br>20          (Whereupon, Exhibit 4 was<br>21          marked for identification.)<br>22  BY MR. HAYES:<br>23  Q.  Do you recognize the document marked | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 24      Exhibit 4? | |
| 25   A.   Yes. | |

Page 83
1   Q.   What is it?
2   A.   Exhibit 4 is a copy of the coverage
3         determine -- determination letter sent by
4         Atlantic Specialty to NBC.
5   Q.   Who is the author?
6   A.   The author is Pamela Johnson.

Page 89
11   Q.   So is it Atlantic's understanding that the
12         TRIA endorsement in this policy amends any
13         exclusion of terrorism and does nothing
           more?

Page 141
4    Q.   Mr. Stone, this is going to be Exhibit 5.
5          MR. HAYES: Is that right?
6          THE COURT REPORTER: (Nods head.)
7          (Whereupon, Exhibit 5 was
8          marked for identification.)
9          MR. HAYES: And this is going to
10   be Exhibit 6.
11         (Whereupon, Exhibit 6 was
12         marked for identification.)
13   BY MR. HAYES:
14   Q.   Mr. Stone, do you recognize the document
15         marked Exhibit 5?
16   A.   (Reviews document.) Yes.
17   Q.   What is it?
18   A.   The document is the General Claims
           Practices
19         that are in place for adjusting claims for
20         Atlantic Specialty.
21   Q.   How long have those General Claims

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Practices | |
| 22    set forth in Exhibit 5 been in place at | |
| 23    Atlantic? | |
| 24  A.  They were implemented in September 2012. | |
| 25  Q.  And they've been in place since September | |
| | |
| Page 142 | |
| 1    2012 to the current date? | |
| 2  A.  Correct. | |
| 3  Q.  Now I want you to look at Exhibit 6. Do you | |
| 4    recognize that document? | |
| 5  A.  (Reviews document.) Yes. | |
| 6  Q.  What is it? | |
| 7  A.  This document is the Core Principles, which | |
| 8    again applies to anyone adjusting claims for | |
| 9    Atlantic Specialty. | |
| 10  Q.  And when did these Core Principles first go | |
| 11    into effect at Atlantic? | |
| 12  A.  They were also implemented in September of | |
| 13    2012. | |
| 14  Q.  And they've been in effect since that date | |
| 15    through the present? | |
| 16  A.  Correct. | |
| 17  Q.  Both the General Claims Practices set forth | |
| 18    in Exhibit 5 and the Core Principles set | |
| 19    forth in Exhibit 6 apply to the entertainment | |
| 20    division since 2012; is that correct? | |
| 21  A.  Correct. | |
| | |
| Page 144 | Defendant's Objection: |
| 24  Q.  Does the claims manual, identified by | 144:24-145:12 |
| 25    Peter Williams in his deposition which | Discussion of a claims manual that does not exist is not relevant; assumes facts not in evidence; waste jury time FRE 401, 403 |
| | |
| | Plaintiffs' Response: |

| Deposition Designation | Objection & Response |
|---|---|
| | Relevant to bad faith. |
| **Page 145** | |
| 1      applied specifically to the entertainment | |
| 2      division, exist today? | |
| 3  A.  It does not. | |
| 4  Q.  Why not? | |
| 5  A.  It's our position that it -- it never | |
| 6      existed. | |
| 7  Q.  When you say, "Our position," you mean it's | |
| 8      Atlantic's -- | |
| 9  A.  It's Atlantic's. There is no record other | |
| 10     than Mr. Williams' deposition testimony of | |
| 11     believing that he drafted a document like | |
| 12     that that it existed. | |
| | |
| **Page 158** | |
| 5  Q.  I want you to turn to the page marked 736 of | |
| 6      Exhibit 5. | |
| 7  A.  (Complies.) | |
| 8  Q.  There's a reference in the middle of the page | |
| 9      to the CWS claim folder. What is that? | |
| 10 A.  CWS is our claim system, and I believe the | |
| 11     acronym is Claim Workstation, and it is | |
| 12     the -- the program -- I mean, it's basically | |
| 13     the electronic file, claim file. So the | |
| 14     adjusters go into CWS and input data | |
| 15     regarding the policy, the coverage, the | |
| 16     limits, if there's a deductible or a | |
| 17     self-insured retention, they put in file | |
| 18     notes, and they can append documents to the | |
| 19     claim file in CWS. | |
| | |
| **Page 202** | Defendant's Objection: |
| 8     BY MR. HAYES: | 202:8-203:11 |
| 9  Q.  Do you recognize the document marked as | Testimony involves claim |
| 10     Exhibit 11? | inventory of Gutterman and |
| 11 A.  I believe so. | is not relevant to any issue |
| 12 Q.  What is it? | and is waste of the juries' |
| 13 A.  I believe this is part of a document that | time FRE 401, 403 |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 14        Danny Gutterman maintained. | |
| 15   Q.   What does that mean, "Part of a document that | <u>Plaintiffs' Response:</u><br>Relevant to bad faith. |
| 16        Danny Gutterman maintained"? | |
| 17   A.   I believe he had a document that had notes | |
| 18        regarding his current claim inventory, and | |
| 19        this would have been a part of that | |
|           document. | |
| 20   Q.   It's your understanding that this document | |
| 21        was authored by Danny Gutterman? | |
| 22   A.   Yes. | |
| 23   Q.   How do you know? | |
| 24   A.   It looks like -- it looks like the document | |
| 25        that he -- that he created. | |
| | |
| <u>Page 203</u> | |
| 1   Q.   Have you seen the document that he | |
|          created? | |
| 2   A.   I have not seen the document that he created | |
| 3        in its entirety, no. | |
| 4   Q.   What else is in the document other than | |
| 5        what's displayed on page 733? | |
| 6   A.   It's my understanding that he had summaries | |
| 7        of other claims that he was currently working | |
| 8        on. | |
| 9   Q.   Where was this document kept marked 733? | |
| 10   A.   I believe it was kept in his -- his Outlook. | |
| 11        It was something that he e-mailed to | |
|           himself. | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| Page 204<br>11　　　　THE COURT REPORTER: Twelve.<br>12　　　　MR. HAYES: Twelve.<br>13　　　　(Whereupon, Exhibit 12 was<br>14　　　　marked for identification.)<br>15　BY MR. HAYES:<br>16　Q.　Do you recognize the document marked as<br>17　　　Exhibit 12?<br>18　A.　Yes. It's actually four documents.<br>19　Q.　What are they?<br>20　A.　The first document is, "Exclusion of other<br>21　　　acts of terrorism committed outside the<br>22　　　United States, cap on losses from certified<br>23　　　acts of terrorism," ISO form dated 2008.<br>24　　　　The second one is titled, "Exclusion<br>25　　　of certified acts of terrorism and exclusion<br><br>Page 205<br>1　　　of other acts of terrorism committed outside<br>2　　　of the United States," it's ISO form dated<br>3　　　2015.<br>4　　　　Then there is an international<br>5　　　exclusion terrorism endorsement dated<br>　　　2005,<br>6　　　and an international exclusion -- exclusion<br>7　　　terrorism dated 2010.<br>8　Q.　These are all exclusions that were available<br>9　　　to Atlantic as of 2013; is that correct?<br>10　A.　I'm sorry, could you repeat the question?<br>11　Q.　The exclusions contained in Exhibit 12,<br>　　　were<br>12　　　they all available to Atlantic as of<br>13　　　January 1st, 2013?<br>14　A.　No.<br>15　Q.　Which one was not?<br>16　A.　The second one would not. It's dated 2015.<br>17　Q.　The second one beginning on page 5271 --<br>18　A.　Correct.<br>19　Q.　-- proceeding to 5272?<br>20　A.　Correct. | Defendant's Objection:<br>204:11-208:8<br>Reference to other policy forms other than the policy at issue in this case is not relevant, prejudicial and waste the juries time; foundation,; hearsay; FRE 404, 403, 801, 802<br><br>Plaintiffs' Response:<br>Relevant to bad faith; business record; statement by party opponent; offered for non-hearsay purpose. Witness is Defendant's 30(b)(6) representative. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 21  Q.  All of the others were available as of<br>22       January 1st, 2013, correct?<br>23  A.  Yes, I believe so.<br>24       MR. HAYES: This is going to be<br>25       Exhibit 13.<br><br>Page 206<br>1       (Whereupon, Exhibit 13 was<br>2       marked for identification.)<br>3  BY MR. HAYES:<br>4  Q.  Do you recognize the document?<br>5  A.  Yes.<br>6  Q.  What is it?<br>7  A.  It is a Commercial General Liability Coverage<br>8       Form. It is an ISO form from 2012.<br>9  Q.  What is an ISO form?<br>10  A.  ISO is a company called Insurance Services<br>11       Office. They provide general forms that<br>12       carriers can use.<br>13  Q.  And this form marked Exhibit 13 was available<br>14       to Atlantic as of 2012; is that accurate?<br>15  A.  I believe so, yes.<br>16       MR. HAYES: This is going to be<br>17       Exhibit 14.<br>18       (Whereupon, Exhibit 14 was<br>19       marked for identification.)<br>20  BY MR. HAYES:<br>21  Q.  Do you recognize the document marked<br>22       Exhibit 14?<br>23  A.  Yes.<br>24  Q.  What is it?<br>25  A.  It is an Electronic Data Processing Coverage<br><br>Page 207<br>1       Insuring Agreement.<br>2  Q.  Are these terms that Atlantic has used in its<br>3       insurance policies? | |

| Deposition Designation | Objection & Response |
|---|---|
| 4   A.   Are you asking me is this a -- is this a<br>5         coverage grant we have used?<br>6   Q.   Is this a coverage grant?<br>7   A.   Yes.<br>8   Q.   Is it a coverage grant that Atlantic has used<br>9         in its insurance policies?<br>10   A.   Yes.<br>11   Q.   Beginning when, what year?<br>12   A.   I don't know.<br>13   Q.   Prior to 2013?<br>14   A.   I don't know.<br>15         MR. HAYES: This is going to be<br>16   Exhibit 15.<br>17         (Whereupon, Exhibit 15 was<br>18   marked for identification.)<br>19   BY MR. HAYES:<br>20   Q.   Do you recognize the document marked<br>21   Exhibit 15?<br>22   A.   Yes.<br>23   Q.   What is it?<br>24   A.   It is the first three pages of a production<br>25   portfolio policy.<br><br>Page 208<br>1   Q.   What is a production portfolio policy?<br>2   A.   It would be a policy primarily issued in the<br>3         entertainment group to insureds that were<br>4         engaged in television or -- or movie<br>5         productions.<br>6   Q.   And is this a policy form that Atlantic<br>7         drafted?<br>8   A.   It appears to be so, yes.<br><br>Page 209<br>6   Q.   I want you to look at the page marked 5277.<br>7   A.   (Complies.)<br>8   Q.   Look at exclusion 3-A. "Hostile or warlike<br>9         action in time of peace or war, including<br>10         action in hindering, combatting or defending | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objection:<br>209:6-15<br>209:18-25<br>Reference to policy language<br>other than that contain in the<br>policy in this case is not |

| Deposition Designation | Objection & Response |
|---|---|
| 11     against an actual impending or expected<br>12     attack," and then it goes on. Do you see<br>13     that?<br>14   A.   Yes.<br>15   Q.   Did Atlantic draft that language?<br><br>.<br>18         THE WITNESS: I don't know.<br>19   BY MR. HAYES:<br>20   Q.   Do you have any understanding as to why the<br>21     language set forth on ATL 5277 is different<br>22     from the language set forth in the war<br>23     exclusion at issue in this case in the policy<br>24     that's been marked Exhibit 2?<br>25   A.   I do not. | relevant, prejudicial and waste the juries' time; foundation; hearsay FRE 401, 403, 802, 901<br><br>Plaintiffs' Response:<br>Relevant to bad faith; business record; statement by party opponent; offered for non-hearsay purpose. Witness is Defendant's 30(b)(6) representative. |

## PETER DONALD WILLIAMS—February 1, 2017

| Deposition Designation | Objection & Response |
|---|---|
| Plaintiff's Designation of Peter Williams, February 1, 2017 , Vol. 1  - CONFIDENTIAL 7:21-8:2; 11:8-11:11; 12:4-12:11; 12:25-13:3; 13:19-13:24; 14:7-14:15; 18:22-18:24; 19:13-19:19; 21:2-21:25; 22:19-23:4; 30:13:31:22; 35:11-21; 35:23; 36:20-37:6; 37:13-37:15; 38: 8-14; 42: 12-15; 43:1-43:10; 43:12-17; 47:6-47:24; 58:14-59:20; 61:10-62:2; 64:12-65:1; 66:8-66:24; 74:6-75:7; 76:17-78:9; 78:14-79:5; 80:3-80:11; 82:18-82:22; 83:1-83:7; 93:4-6; 94:4-7; 96:5-8; 98:15-99:4; 99:21-100:13; 100:21-101:2; 101:6-101:9; 101:11; 101:13-101:18; 101:21; 101:23-102:6; 103:2-103:16; 104:2-104:7; 111:10-111:22; 139: 6-13; 139:17-140:9; 140:21-24; 141:10-141:20; 142:5-143:10; 144:13-147:3; 147:19-25; 148:21-149:4; 149:16-25; 150:12-151:18; 158:22-159:5; 159:17-160:8; 163:19-164:7; 168:14-169:4; 185:7-186:5; 187:6-25; 188:23-25; 189:4-21; 190:17-191:3; 191:24-192:7; 193:9-193:16; 193:23-194:2; 196:11-199:12; 200:10-202:8; 203:22-204:2; 204:13-24; 207:3-207:9; 208:13-21; 210:6-25; 211:3-18; 211:23-212:3; 212:7-10; 213:4-6; 218:17-219:13; 220:25-221:3; 221:16-222:12; 222:19-224:7; 225:17-226:2; 226:7-228:1; 228:11-229:4; 231:11-16; 232:17-233:2; 234:13-238:19; 242:7-12; 242:17-245:22; 245:25-246:2; 246:4-246:13; 246:23-247:4 | |

| Deposition Designation | Objection & Response |
|---|---|
| | |

| Deposition Designation | Objection & Response |
|---|---|
| | <br><br><br>Defendant's Counter: 19:1-3.<br><br>Plaintiffs' Response: Not necessary for completeness. Counter is separate question and answer.<br><br><br><br><br>Defendant's Objections: (21:2-25) Levels of authority of adjusters is not relevant, confusing, prejudicial, and a waste of time as it has no bearing on whether ASIC acted unreasonably or without proper cause or any other issue in this case.  FRE 401; 403<br><br>Plaintiffs' Response: Relevant to bad faith |

**614**

| Deposition Designation | Objection & Response |
|---|---|
| | |

| Deposition Designation | Objection & Response |
|---|---|
| | <u>Defendant's Designations:</u> (31:1-22)  Loss ratios not relevant to whether ASIC acted unreasonably or without proper cause, causes confusion, prejudicial; waste of time; FRE 401; 403.<br><br><u>Plaintiffs' Response:</u> Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | Defendant's Designations: (35:11-21, 23) Profit ratio not relevant to whether ASIC acted unreasonably or without proper cause or any other issue in case; causes confusion; prejudicial; waste of time.<br><br>Plaintiffs' Response: Relevant to bad faith<br><br><br><br>Defendant's Designations: (36:20-25)2009 claims manual not relevant; waste of time.  FRE 401; 403<br><br>Plaintiffs' Response: Relevant to bad faith<br><br><br><br>Defendant's Designations: (37:1-6)2009 claims manual not relevant; waste of time.  FRE 401; 403<br><br>Plaintiffs' Response: |

1

**617**

| Deposition Designation | Objection & Response |
|---|---|
| 1 | Relevant to bad faith |
| | **Defendant's Designations:** (38: 8-14)   Claims manual referenced not relevant; waste of time. FRE 401; 403 |
| | **Plaintiffs' Response:** Relevant to bad faith |

7060055/015825

| 1 | Deposition Designation | Objection & Response |
|---|---|---|
| | | Defendant's Objections: (47:6-24) Reference to retaining outside opinion not relevant; prejudicial; waste of time.  FRE 401; 403.<br><br>Plaintiffs' Response: Relevant to bad faith<br><br><br><br>Defendant's Objections (58:14-25)<br><br>Reference to Policy |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | negotiations not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403 <br><br> <u>Plaintiffs' Response:</u> Relevant to bad faith <br><br> <u>Defendant's Objections</u> (59:1-20) Reference to Policy negotiations not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403 <br><br> <u>Plaintiffs' Response:</u> Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 1 | |
| 2 | |
| | **Defendant's Objections** (61:10-25)<br>Premiums, negotiations for the Policy, SIR not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403<br><br>Plaintiffs' Response: Relevant to bad faith<br><br>**Defendant's Objections** (62:1-2)<br>Premiums, negotiations for the Policy, SIR not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403<br><br>Plaintiffs' Response: Relevant to bad faith |

**621**

1

| Deposition Designation | Objection & Response |
|---|---|
| | Defendant's Objections (66:8-66:24) Renewal processes for the Policy not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403 Plaintiffs' Response: Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | **Defendant's Objections** (74:6-25) Renewal process and negotiation of the Policy not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403 **Plaintiffs' Response:** Relevant to bad faith **Defendant's Objections** (75:1-7) Renewal process and negotiation of the Policy not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is |

1

7060055/015825

| 1 | Deposition Designation | Objection & Response |
|---|---|---|
| | | a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br>Defendant's Objections (76:17-25)<br>Policy negotiations, underwriting, profitability not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br>Defendant's Objections (77:7-25)<br>Policy negotiations, underwriting, profitability not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |

**624**

| Deposition Designation | Objection & Response |
|---|---|
| | Defendant's Objections (78:1-9) Policy negotiations, underwriting, profitability not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403

Plaintiffs' Response: Relevant to bad faith

Defendant's Objections (78:14-25) Losses, profitability of the account, premium not relevant to any of |

**625**

| 1 | **Deposition Designation** | **Objection & Response** |
|---|---|---|
| | | Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403

<u>Plaintiffs' Response:</u> Relevant to bad faith

<u>Defendant's Objections</u> (79:1-5) Losses, profitability of the account, premium not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403

<u>Plaintiffs' Response:</u> Relevant to bad faith

<u>Defendant's Objections</u> (80:3-80:11) Losses/profitability not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403 |

7060055/015825

| 1 | Deposition Designation | Objection & Response |
|---|---|---|
| | | Plaintiffs' Response: Relevant to bad faith |
| | | Defendant's Objections (96:5-8) Whether there terrorism exclusions increased in |

7060055/015825

| 1 | Deposition Designation | Objection & Response |
|---|---|---|
| | | insurance industry after 9/11 not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403 <br><br> Plaintiffs' Response: Relevant to bad faith <br><br><br> Defendant's Objections |

**628**

| 1 | **Deposition Designation** | **Objection & Response** |
|---|---|---|
| | | 100:2-25:  reference to other claims not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403<br><br>Plaintiffs' Response: Relevant to bad faith<br><br><br><br>Defendant's Objections (101:1-2, 6-9, 11, 13-18, 21) reference to other claims not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401;<br><br>Plaintiffs' Response: Relevant to bad faith<br><br>Defendant's Objection: 101:23-25 |

7060055/015825

| 1 | Deposition Designation | Objection & Response |
|---|---|---|
| | | reference to other claims, not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403 <br><br> <u>Plaintiffs' Response:</u> Relevant to bad faith <br><br> <u>Defendant's Objections</u> 102:1-6 reference to other claims, not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403 <br><br> <u>Plaintiffs' Response:</u> Relevant to bad faith <br><br> <u>Defendant's Objections</u> (103:2-103:16) Corporate relationship between ASIC and One Beacon <u>Defendant's Objections</u> reference to other claims, not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | damages; this testimony is a waste of time; causes confusion; is prejudicial; additionally, lack of foundation. Fed. R. Evid. 401; 403; 602. <br><br> <u>Plaintiffs' Response:</u> Relevant to bad faith; statement of party opponent; foundation present. <br><br> <u>Defendant's Objections</u> (104:2-104:7) Corporate relationship between ASIC and One Beacon <u>Defendant's Objections</u> reference to other claims, not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial; additionally, lack of foundation.Fed. R. Evid. 401; 403; 602. <br><br> <u>Plaintiffs' Response:</u> Relevant to bad faith; statement of party opponent; foundation present. |

| Deposition Designation | Objection & Response |
|---|---|
| | <u>Defendant's Objections</u><br>111:10-111:22<br>Renewal processes for Policy, losses, premium and SIR <u>Defendant's Objections</u><br>Corporate relationship between ASIC and One Beacon<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; statement of party opponent; foundation present.<br><br><u>Defendant's Objections</u><br>reference to other claims, not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial; additionally, lack of foundation.<br>Fed. R. Evid. 401; 403.<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; statement of party opponent; foundation present.<br><br><u>Defendant's Objections</u><br>(139: 6-13, 17-25)<br>Negotiations, renewal, drafting of Policy not relevant to any of |

**632**

| Deposition Designation | Objection & Response |
|---|---|
| | Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403

Plaintiffs' Response: Relevant to bad faith

Defendant's Objections 140:1-9 Negotiations, renewal, drafting of Policy not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403

Plaintiffs' Response: Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | **Defendant's Objections** (142:5-25) Discussions regarding addition of "Dig" to Policy not relevant to any of Plaintiffs' claims; "Dig" was added subject to terms and conditions of the Policy; not relevant to claim for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403 <br><br> **Plaintiffs' Response:** Relevant to bad faith <br><br><br> **Defendant's Objections** |

7060055/015825

| 1 | Deposition Designation | Objection & Response |
|---|---|---|
| | | (143:4-10) Discussions regarding addition of "Dig" to Policy not relevant to any of Plaintiffs' claims; "Dig" was added subject to terms and conditions of the Policy; not relevant to claim for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403<br><br>Plaintiffs' Response: Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| | Defendant's Objections<br>146:23-25<br>Discussion regarding addition of "Dig" to Policy not relevant to Plaintiffs' |

| Deposition Designation | Objection & Response |
|---|---|
| | claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial.<br>Fed. R. Evid. 401; 403<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith<br><br><u>Defendant's Objections</u><br>147:1-3<br>Discussion regarding addition of "Dig" to Policy not relevant to Plaintiffs' claims for breach of the contract or duty of good |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | faith or damages; this testimony is a waste of time; causes confusion; is prejudicial.<br>Fed. R. Evid. 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br>Defendant's Objection:<br>147:19-25<br>Discussion regarding application for Policy/Dig not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; undisputed that "Dig" was added to Policy, subject to all terms and conditions; this testimony is a waste of time; causes confusion; is prejudicial.<br>Fed. R. Evid. 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br><br>Defendant's Objections<br>(148:21-25)<br>Discussion regarding addition of "Dig" to Policy not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; undisputed that "Dig" was added to Policy, |

1

27

28

**638**

| Deposition Designation | Objection & Response |
|---|---|
| | subject to all terms and conditions; this testimony is a waste of time; causes confusion; is prejudicial. |
| | Fed. R. Evid. 401; 403 |
| | <u>Plaintiffs' Response:</u> Relevant to bad faith |
| | <u>Defendant's Objections</u> 149:1-4 Discussion regarding addition of "Dig" to Policy not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; undisputed that "Dig" was added to Policy, subject to all terms and conditions; this testimony is a waste of time; causes confusion; is prejudicial. |
| | Fed. R. Evid. 401; 403 |
| | <u>Plaintiffs' Response:</u> Relevant to bad faith |
| | <u>Defendant's Objection:</u> 149:16-25 Discussion regarding application for Policy/Dig not relevant to any of Plaintiffs' claims for breach of the contract or |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | duty of good faith or damages; undisputed that "Dig" was added to Policy, subject to all terms and conditions; this testimony is a waste of time; causes confusion; is prejudicial. |
| | Fed. R. Evid. 401; 403 |
| | <u>Plaintiffs' Response:</u> Relevant to bad faith |
| | <u>Defendant's Objections</u> (150:12-25) Policy negotiation, potential terms, premiums not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; undisputed that "Dig" was added to Policy, subject to all terms and conditions; this testimony is a waste of time; causes confusion; is prejudicial. |
| | Fed. R. Evid. 401; 403 |
| | <u>Plaintiffs' Response:</u> Relevant to bad faith |
| | <u>Defendant's Objections</u> (151:1-18) Policy negotiation, |

**640**

| 1 | **Deposition Designation** | **Objection & Response** |
|---|---|---|
| | | potential terms, premiums not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; undisputed that "Dig" was added to Policy, subject to all terms and conditions; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith |

**641**

| Deposition Designation | Objection & Response |
|---|---|
| | Defendant's Objections<br><br>163:19-25<br>Communications regarding potential addition of "Dig" to Policy not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; undisputed that "Dig" was added to Policy, subject to all terms and conditions; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403 |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
|  | <u>Plaintiffs' Response:</u> Relevant to bad faith <br><br> <u>Defendant's Objections</u> <br> 164:1-7 <br> Communications regarding potential addition of "Dig" to Policy not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; undisputed that "Dig" was added to Policy, subject to all terms and conditions; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403 <br><br> <u>Plaintiffs' Response:</u> Relevant to bad faith <br><br> <u>Defendant's Objections</u> <br> 168:14-169:4 <br> Discussion regarding other claims not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403 <br><br> <u>Plaintiffs' Response:</u> Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | |

7060055/015825

| Deposition Designation | Objection & Response |
| --- | --- |



7060055/015825

| Deposition Designation | Objection & Response |
|---|---|



7060055/015825

| Deposition Designation | Objection & Response |
| --- | --- |

7060055/015825

| Deposition Designation | Objection & Response |
| --- | --- |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|



7060055/015825

| Deposition Designation | Objection & Response |
|---|---|



7060055/015825

| Deposition Designation | Objection & Response |
|---|---|



7060055/015825

| Deposition Designation | Objection & Response |
|---|---|



7060055/015825

1

| Deposition Designation | Objection & Response |
|---|---|
| | |

7060055/015825

| 1 | Deposition Designation | Objection & Response |
|---|---|---|
| | | <u>Defendant's Objections</u><br>218:17-219:13<br>Reference to legal opinion not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403; 501; 502<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; |
| 28 | | |

| Deposition Designation | Objection & Response |
|---|---|
|  | reference to legal opinion not privileged. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
|  |  |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|



7060055/015825

1

Objection & Response



7060055/015825

| Deposition Designation | Objection & Response |
|---|---|



7060055/015825

1

| Deposition Designation | Objection & Response |
|---|---|



7060055/015825

| Deposition Designation | Objection & Response |
|---|---|

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | <u>Defendant's Objections</u><br>236: 9-25; 237: 1-13. Discussion regarding whether outside legal opinion obtained privileged; not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403; 501; 502<br><br><u>Plaintiffs' Response:</u><br>Relevant to bad faith; reference to legal opinion not privileged. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|



7060055/015825

| Deposition Designation | Objection & Response |
|---|---|



7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
|  | |

7060055/015825

| 1 | Deposition Designation | Objection & Response |
|---|---|---|
| | | Defendant's Objections (245:9-22) Discussion regarding deponent's understanding of Prong 1 not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | Fed. R. Evid. 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br>Defendant's Objections:<br>(245:25-246:2)<br>Discussion regarding deponent's understanding of whether hypothetical posed is "war" is not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br><br>Defendant's Objections<br>(246:23-247:4)<br>Discussion regarding deponent's understanding of whether hypothetical posed is "war" is not relevant to any of Plaintiffs' claims for breach of the contract or duty of good faith or damages; this testimony is a waste of time; causes confusion; is prejudicial. Fed. R. Evid. 401; 403 |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | Plaintiffs' Response: Relevant to bad faith |

7060055/015825

**PETER WILLIAMS (30(b)(6))—May 19, 2017**

| Deposition Designation | Objection & Response |
|---|---|
| Plaintiff's Designation of Peter Williams<br>7:20-24; 8:4-20; 9:20-3; 9:17-10:8; 11:16-18; 11:23-12:3; 12:16-24; 13:22-25; 14:10-18; 14:21-15:2; 15:13-22; 16:1-8; 16:10-24; 17:2-19:23; 20:2-8; 20:17-18; 21:3-4; 21:8-13; 22:20-22; 23:8-9; 25:22-27:2; 27:13-17; 28:3-21; 29:3-9; 29:15-21; 31:4-6; 31:10-34:16; 36:17-38:5; 47:10-51:21; 52:24-59:7; 60:5-63:18; 63:23-64:18; 65:11-25; 67:2-68:8; 68:16-70:9; 72:20-74:20; 76:17-77-4; 77:23-78:3; 80:23-81:15; 82:6-18; 92:14-20; 93:2-14; 94:9-96:5; 98:22-23; 99:9-22; 100:2-19; 105:24-106-15; 128:2-17; 129:8-12; 131:11-22; 132:2-9; 134:18-24 | |
| Page 7<br>20  Q.   Good afternoon, Mr. Williams.<br>21  A.   Good afternoon.<br>22  Q.   Please spell your name for the record.<br>23  A.   Peter Williams, P-E-T-E-R W-I-L-L-I-A-M-S.<br>24        MR. HAYES: This is Exhibit 1. | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 8<br>4  Q.   Do you recognize the document marked<br>5        Exhibit 1?<br>6  A.   Yes.<br>7  Q.   What is it?<br>8  A.   It's a lawsuit filed on behalf of<br>9        Universal Cable vs. Atlantic Specialty<br>          Insurance<br>10      Company.<br>11  Q.   It's a document filed in connection with<br>12        that lawsuit? That's your understanding?<br>13  A.   Yes.<br>14  Q.   I want you to turn to the page marked 6.<br>15  A.   Page 6?<br>16  Q.   Yeah. Page 6. | Defendant's Objections:<br>8:4-20<br>Testimony regarding underwriting, Policy negotiation, and addition of the "Dig" Production, topics 15-18 of the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial. |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 17  A.  Yes. | FRE 401; 403. |
| 18  Q.  I want you to read the paragraphs marked 19  15, 16, 17, and 18, please, to yourself and let me | |
| 20  know when you're done. | Plaintiff's Response: Relevant to bad faith |
| Page 9 | Defendant's Objections: (9:2-3) |
| 2  Q.  Just let me know when you are finished, 3  please. | Testimony regarding underwriting, Policy negotiation, and addition of the "Dig" Production, topics 15-18 of the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial. FRE 401; 403. |
| 17  Q.  Mr. Williams, have you finished reading 18  topic Nos. 15 through 18? | |
| 19  A.  Yes. | |
| 20  Q.  Are you Atlantic's designee for topic 15? | |
| 21  A.  Yes. | |
| 22  Q.  Are you Atlantic's designee for topic 16? | |
| 23  A.  Yes. | |
| 24  Q.  Are you Atlantic's designee for topic 17? | |
| 25  A.  Yes. | |
| | Plaintiffs' Response: Relevant to bad faith |
| | Defendant's Objections: (9:17-10:8)  Testimony regarding underwriting, Policy negotiation, and addition of the "Dig" Production, topics 15-18 of the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, |

| Deposition Designation | Objection & Response |
|---|---|
| | and is prejudicial. FRE 401; 403. |
| | <u>Plaintiff's Response</u>: Relevant to bad faith |
| <u>Page 10</u> | <u>Defendant's Objections</u>: |
| 1   Q.   Are you Atlantic's designee for topic 18? | |
| 2   A.   Yes. | |
| 3   Q.   Are you Atlantic's designee for any of the | <u>Plaintiff's Response</u>: |
| 4          other topics in Exhibit 1? | |
| 5   A.   I don't believe so. | |
| 6   Q.   What did you do to prepare for your | |
| 7          deposition today? | |
| 8   A.   I met with counsel yesterday. | |
| <u>Page 11</u> | <u>Defendant's Objections</u>: |
| 16   Q.   Did you review documents or not, | 11:16-18; 11:23-12:3 |
| 17          Mr. Williams? | Testimony regarding |
| 18   A.   Yes. | underwriting, Policy |
| | negotiation, and addition of |
| 23   Q.   Did any of the documents that you | the "Dig" Production, topics |
| reviewed | 15-18 of the Deposition |
| 24          refresh your recollection on the events to | Notice, are not relevant to |
| which | the issue of whether the |
| 25          they referred? | "war" exclusions apply, |
| | whether ASIC unreasonably |
| | or without proper cause, or |
| | the alleged damages, is a |
| | waste of time, confuses the |
| | issues, and is prejudicial. |
| | FRE 401; 403. |
| | <u>Plaintiff's Response</u>: Relevant to bad faith |
| <u>Page 12</u> | <u>Defendant's Objections</u>: |

| Deposition Designation | Objection & Response |
|---|---|
| 1   A.   Yes.<br>2   Q.   Which ones?<br>3   A.   The policies.<br><br>16   Q.   Mr. Williams, do you recognize the<br>17        document marked Exhibit 2?<br>18   A.   Yes.<br>19   Q.   What is it?<br>20   A.   It's a copy of the insurance policy issued<br>21        to NBCUniversal Media effective January<br>           1, 2014.<br>22   Q.   It's your understanding that this is the<br>23        policy at issue in this lawsuit?<br>24   A.   Yes. | Plaintiff's Response: |
| Page 13<br>22        So have you spoken to any person outside<br>23        the presence of your counsel in preparation<br>           for this<br>24        deposition?<br>25   A.   No. | Defendant's Objections:<br><br><br><br>Plaintiff's Response: |
| Page 14<br>10   Q.   Mr. Williams, do you have an<br>           understanding<br>11        of what underwriting is?<br>12   A.   Yes.<br>13   Q.   What is your understanding?<br>14   A.   It is the process of accepting an<br>15        insurance risk and agreeing the terms and<br>           conditions<br>16        for that risk.<br>17   Q.   And during your tenure at OneBeacon, how<br>18        did OneBeacon perform that function?<br><br>21        THE WITNESS: We had various<br>           underwriters<br>22        on staff who performed that function.<br><br>24   Q.   Was Wanda Phillips one of those | Defendant's Objections:<br>14:10-18       Testimony regarding underwriting is not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial. FRE 401; 403.<br><br>Plaintiffs' Response:<br>Relevant to bad faith<br><br>Defendant's Objections:<br>14:21-15:2   Testimony |

**673**

| Deposition Designation | Objection & Response |
|---|---|
| 25      underwriters? | regarding underwriting, Policy negotiation, and addition of the "Dig" Production, topics 15-18 of the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial. FRE 401; 403.

<u>Plaintiff's Response</u>: Relevant to bad faith |
| **Page 15**<br>1    A.    Yes.<br>2    Q.    And what did they do specifically? | <u>Defendant's Objections</u>: |
| 13    Q.    Go ahead, sir.<br>14    A.    The underwriters, in general terms, would<br>15          review the information submitted by the broker,<br>16          determine if a risk was acceptable, apply terms,<br>17          conditions, rates, agree the rates with the broker,<br>18          maybe prepare a quote if we were going to quote to<br>19          insure the risk.<br>20    Q.    And what factors would the underwriters<br>21          consider in determining whether the risk was<br>22          acceptable? | <u>Plaintiff's Response</u>: |
| **Page 16** | <u>Defendant's Objections</u>: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 1    THE WITNESS: Well, it would depend<br>2    largely on the matter being insured, whether it was<br>3    within our appetite, and then various factors that<br>4    would affect the risk in particular. It would<br>5    depend on what that risk was, where it was located,<br>6    what rates would apply, what deductibles would<br>7    apply, history of the insured. There would be<br>8    numerous factors that would be considered.<br><br>10  Q.  Why is where it was located relevant?<br>11  A.  Two factors. It could be -- a physical<br>12    location could affect whether we wanted to insure a<br>13    risk and what rate we wanted to apply. Also within<br>14    the United States, you have to file in some states<br>15    terms and conditions with each state, and they can<br>16    vary from state to state.<br>17  Q.  Are you familiar with the DIG production?<br>18  A.  Yes.<br>19  Q.  Did NBCUniversal declare the DIG<br>20    production to the policy that you have in front of<br>21    you as Exhibit 1?<br><br>24  Q.  Exhibit 2. I'm sorry.<br><br>Page 17<br>2    THE WITNESS: Yes. In general terms, the<br>3    DIG production was declared to this -- to be insured<br>4    by this policy. | 16:10-21, 24 Testimony regarding underwriting, Policy negotiation, and addition of the "Dig" Production, topics 15-18 of the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial. FRE 401; 403.<br><br><br>Plaintiff's Response:<br>Relevant to bad faith<br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br>17:2-18:19   Testimony regarding underwriting, Policy negotiation, and addition of the "Dig" Production, topics 15-18 of |

**675**

| Deposition Designation | Objection & Response |
|---|---|
| 6  Q.  And did OneBeacon evaluate the DIG<br>7       production for purposes of determining whether to<br>8       accept the risks associated with it?<br>9  A.  Yes.<br>10 Q.  And what did OneBeacon do in connection<br>11      with that evaluation?<br>12 A.  We received the initial information from<br>13      NBC that they were at that time thinking about doing<br>14      the production in Israel. We asked numerous<br>15      questions about where, how, how long, what type of<br>16      production, what was the scenario for the script,<br>17      who was in it, where it was going to be filmed, what<br>18      precautions they were taking for the safety of their<br>19      cast and crew, travel arrangements. It was an<br>20      ongoing process backwards and forwards with NBC's<br>21      representatives.<br>22 Q.  Were you involved in that process?<br>23 A.  Yes.<br>24 Q.  In what capacity?<br>25 A.  As I was the head of underwriting at<br><br>Page 18<br>1       OneBeacon at that time, I discussed the production<br>2       with Wanda Phillips, requested information,<br>3       requested her to find out additional information.<br>4       We discussed that information that was provided by<br>5       the brokers and NBC. | the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial. FRE 401; 403.<br><br>Plaintiff's Response:<br>Relevant to bad faith<br><br><br><br><br><br>Defendant's Objections:<br>18:22-19:23 Testimony regarding underwriting, Policy negotiation, and addition of the "Dig" Production, topics 15-18 of the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 6  Q.   What information did you tell Wanda to<br>7        gather?<br>8  A.   Well, specifically, I can't recall. But I<br>9        mean, the general thrust was Israel is not --<br>         it's<br>10       not difficult to insure productions in Israel,<br>11       particularly if they're in Tel Aviv. I was<br>12       concerned about the shooting in Jerusalem.<br>         So I<br>13       wanted to know or at least obtain more<br>         details of<br>14       the security in Jerusalem, what they<br>         intended to do<br>15       in Jerusalem, how long they would be<br>         filming, how<br>16       big a production it was.<br>17       In general, those were the issues.<br>18  Q.   Why were you concerned with the shooting<br>19       in Israel?<br><br>22       THE WITNESS: I wasn't concerned with<br>         the<br>23       shooting so much in Israel. Jerusalem can<br>         have<br>24       instances of violence that could have<br>         interrupted<br>25       filming. So we needed to know how much<br>         filming was | ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial. FRE 401; 403.<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| <u>Page 19</u><br>1        going to be done in Jerusalem, was it under<br>2        controlled conditions, was it every day, was<br>         it<br>3        every week, was it weeks of filming.<br><br>5  Q.   How did you know that instances of<br>6        violence in Jerusalem could interrupt<br>         filming?<br>7  A.   From my knowledge of the country, of my<br>8        knowledge of filming, and issues in the | <u>Defendant's Objections</u>:<br><br><br><u>Plaintiff's Response</u>: |

**677**

| Deposition Designation | Objection & Response |
|---|---|
| country. | |
| 9 Q. And what did that knowledge consist of? | |
| 10 A. I knew in Jerusalem that there were | |
| 11 instances of suicide bombers on buses, particularly | |
| 12 in crowded areas that would disrupt everyday life in | |
| 13 Jerusalem, and that could lead to interruption of | |
| 14 filming on the streets. I could see where maybe | |
| 15 local authorities would not want an American film | |
| 16 crew on the streets if there had been an incident | |
| 17 such as that in the area. | |
| 18 So I was generally aware Jerusalem, as | |
| 19 opposed to Tel Aviv, is a heightened security risk. | |
| 20 Q. And why did that matter to OneBeacon? | |
| 21 A. Well, if the film had been interrupted or | |
| 22 stopped from filming due to such an incident, there | |
| 23 could be coverage under the policy. | |
| | |
| Page 20 | Defendant's Objections: |
| 2 Q. So you stated that you were aware that | 20:2-18    Testimony regarding underwriting, |
| 3 there were suicide bombings on occasion? Is that | Policy negotiation, and addition of the "Dig" |
| 4 what you said? | Production, topics 15-18 of the Deposition Notice, are |
| 5 A. Yes. Terrorist activity, likely. | not relevant to the issue of whether the "war" |
| 6 Q. So you're aware of the possibility of | exclusions apply, whether ASIC unreasonably or |
| 7 terrorist activity in Jerusalem? | without proper cause, or the alleged damages, is a waste |
| 8 A. Yes. | of time, confuses the issues, and is prejudicial. FRE 401; |
| 17 Q. Do you have any other examples of | |
| 18 terrorist activity that you can recite? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | 403. |
| | **Plaintiff's Response**: Relevant to bad faith |
| <u>Page 21</u><br>3   Q.   You've given one example.<br>4         Can you give me other examples?<br><br>8         THE WITNESS: A car bomb would be another<br>9         example.<br><br>11   Q.   Any others?<br>12   A.   A bomb in general, whether it's a pipe<br>13         bomb, car bomb, suicide bomber with a vest. | <u>Defendant's Objections</u>:<br>21:3-4, 8-9, 11-13<br>Testimony regarding underwriting, Policy negotiation, and addition of the "Dig" Production, topics 15-18 of the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial. FRE 401; 403.<br><br>**Plaintiff's Response**: Relevant to bad faith |
| <u>Page 22</u><br>20   Q.   When you say "terrorist activity," under<br>21         your understanding of that word, that phrase, could<br>22         terrorist activity be committed with a rocket? | <u>Defendant's Objections</u>:<br>22:20-22<br>Record Objections—beyond scope of designation; witness opinion of terrorist activity not relevant, prejudicial, and a waste of time; 401; 403; calls for speculation.<br><br>**Plaintiff's Response**: Relevant to bad faith; not |

| Deposition Designation | Objection & Response |
|---|---|
| | beyond scope of designation. |
| Page 23<br>8     THE WITNESS: Yeah. Potentially with a<br>9     rocket, a terrorist could commit an act. | Defendant's Objections:<br>23:5-6     Record Objections—beyond scope of designation; witness opinion of terrorist activity not relevant, prejudicial, and a waste of time; 401; 403; calls for speculation.<br><br>Plaintiff's Response:<br>Relevant to bad faith<br><br>Defendant's Objection:<br>23:8-9     Testimony regarding underwriting, Policy negotiation, and addition of the "Dig" Production, topics 15-18 of the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial. FRE 401; 403.<br><br>Plaintiff's Response:<br>Relevant to bad faith |
| Page 25<br>22  Q.  I want to understand what you were<br>23     thinking at the time when the DIG<br>      production was | Defendant's Objections:<br>25:22-26:4  Testimony regarding underwriting, Policy negotiation, and |

| Deposition Designation | Objection & Response |
|---|---|
| 24        declared.<br>25        Do you understand? | addition of the "Dig" Production, topics 15-18 of the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial. FRE 401; 403.<br><br>Plaintiff's Response: Relevant to bad faith |
| Page 26<br>1    A.    Yes.<br>2    Q.    You said you were concerned with terrorist<br>3           activities in Jerusalem.<br>4           Is that your understanding?<br><br>8    Q.    Is that what you said?<br><br>11          THE WITNESS: I was concerned with the<br>12          potential of everyday life being interrupted by<br>13          terrorist activity. Yes.<br>14   BY MR. HAYES:<br>15   Q.    Okay. And terrorist activity involves<br>16          violence? Is that your understanding?<br><br>21          THE WITNESS: Yes.<br>22   BY MR. HAYES:<br>23   Q.    And why Jerusalem? Why were you concerned<br>24          about terrorist activity in Jerusalem?<br>25   A.    Because, in my opinion, it occurs most | Defendant's Objections: 26:8, 11-13, 15-16, 2, 26:23-27:2    Testimony regarding underwriting, Policy negotiation, and addition of the "Dig" Production, topics 15-18 of the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial. FRE 401; 403.<br><br>Plaintiff's Response: Relevant to bad faith |

**681**

| Deposition Designation | Objection & Response |
|---|---|
| Page 27 | Defendant's Objections: |
| 1    often in Jerusalem and not in Tel Aviv, of the two | 27:13-17    Testimony regarding underwriting, |
| 2    cities that DIG were going to visit. | Policy negotiation, and addition of the "Dig" |
| 13   Q.   Well, what was your concern? | Production, topics 15-18 of |
| 14   A.   My concern was that an incident such as a | the Deposition Notice, are |
| 15    suicide bomber on a bus would interrupt filming for | not relevant to the issue of whether the "war" |
| 16    a day of DIG. They would be prevented from filming | exclusions apply, whether ASIC unreasonably or |
| 17    on the streets of Jerusalem. | without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial. FRE 401; 403. |
| | |
| | Plaintiff's Response: |
| | Relevant to bad faith |
| | |
| Page 28 | Defendant's Objections: |
| 3   Q.   And did you discuss that concern with Aon | 28:3-29:9    Testimony |
| 4    or NBCUniversal? | regarding underwriting, |
| 5   A.   Yes. I discussed it with Wanda Phillips, | Policy negotiation, and |
| 6    and at some point I was also on the phone with | addition of the "Dig" Production, topics 15-18 of |
| 7    representatives of Aon. | the Deposition Notice, are |
| 8   Q.   In which that was discussed? | not relevant to the issue of |
| 9   A.   The security in Jerusalem, yes. | whether the "war" |
| 10   Q.   Can you tell me everything that you recall | exclusions apply, whether |
| 11    about that conversation. | ASIC unreasonably or |
| 12   A.   Well, specifically I can't recall the | without proper cause, or the |
| 13    exact words of the conversation. But the gist of | alleged damages, is a waste of time, confuses the issues, |
| 14    the conversation was exactly that: How long were | and is prejudicial. Additionally, other claims |
| 15    they going to be in Jerusalem, why were they going | are not relevant, are a waste of time, are prejudicial, |
| 16    to film in Jerusalem, what was the security | confuse the issues.  FRE |

**682**

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| in Jerusalem.<br>17<br>18 We were concerned that if an incident<br>19 occurred, that filming would be interrupted for the<br>20 day by local authorities that would prevent them<br>21 from continuing to film. | 401; 403.<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith |
| <u>Page 29</u><br>3  Q.  Have you been involved in other claims<br>4      involving terrorist activity?<br>5  A.  Yes.<br>6  Q.  What other claims?<br>7  A.  Well, there was the 9/11 incidents, were<br>8      the main ones.<br>9  Q.  Were those acts of war?<br><br>15      THE WITNESS: That's a very difficult<br>16      question to answer. At the time, the president,<br>17      President Bush, declared them as acts of war.<br>18      Ultimately, from an insurance industry perspective,<br>19      they were treated as acts of terrorism.<br><br>21  Q.  Why? | <u>Defendant's Objections</u>:<br>29:15-19, 21        The events of 9/11 are not relevant to whether ASIC acted unreasonably or without proper cause regarding the "Dig" claim, discussion and/or comparison of these events confuses the viable issues, is prejudicial, and is beyond the scope of the designation of this witness.<br><br><u>Plaintiff's Response</u>:<br>Relevant to bad faith; not beyond scope of designation. |
| <u>Page 31</u><br>4  Q.  Why, from the insurance industry<br>5      perspective, were they treated as acts of terrorism,<br>6      the 9/11 attacks --<br><br>10  Q.  -- as opposed to war?<br><br>12      THE WITNESS: Well, I mean, I don't know<br>13      politically what discussions went on. But in | <u>Defendant's Objections</u>:<br>31:4-6, 10, 12-22<br>The events of 9/11 are not relevant to whether ASIC acted unreasonably or without proper cause regarding the "Dig" claim, discussion and/or comparison of these events confuses the viable issues, is prejudicial, and is beyond |

| Deposition Designation | Objection & Response |
|---|---|
| 14    general, I think the feeling was they were still | the scope of the designation of this witness. FRE 401; 403 |
| 15    isolated attacks. They were still short in -- in | |
| 16    duration. They were committed by hijacked aircraft, | Plaintiff's Response: Relevant to bad faith; not beyond scope of designation. |
| 17    which is still a limited scope, even though it did | |
| 18    cause substantial damage and unfortunate death and | |
| 19    injury to numbers of people. | |
| 20    And so ultimately it was decided they were | |
| 21    acts of terrorism and treated as such by the | |
| 22    insurance. | |
| | |
| 24  Q.  In any of your conversations with | |
| 25    representatives of Aon or NBCUniversal in connection | |
| | |
| Page 32 | Defendant's Objections: 31:24-32:7, 32:9-10, 32:12-14, 17, 19-24 |
| 1    with the addition of DIG to the insurance policy -- | underwriting, Policy negotiation, and addition of the "Dig" Production, topics 15-18 of the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial. The terms of the Policy control.  FRE 401; 403. |
| 2    Do you have that in mind? | |
| 3  A.  Yes. | |
| 4  Q.  -- did you ever tell any of those | |
| 5    representatives that, to the extent there was | |
| 6    violence in the region, any interruption in the | |
| 7    production would not be covered? | |
| | |
| 9    THE WITNESS: No. I don't specifically | |
| 10    recall having a conversation of that nature. | |
| | |
| 12  Q.  Did you ever tell anyone at NBCUniversal | |
| 13    or Aon that, in the event of a terrorist attack, any | |
| 14    interruption in production would not be covered? | |
| | Plaintiff's Response: Relevant to bad faith. |
| 16    Assumes facts not in evidence. Lack of | |

| Deposition Designation | Objection & Response |
|---|---|
| foundation.<br>17      THE WITNESS: No.<br><br>19  Q.  Did you ever tell anyone at Aon or<br>20      NBCUniversal that in the event of a<br>          terrorist attack<br>21      and any interruption or postponement or<br>          relocation<br>22      that followed, such expenses incurred in<br>          connection<br>23      with such interruption, relocation, or<br>          postponement<br>24      would be covered?<br><br>Page 33<br>2       THE WITNESS: No. I don't recall such a<br>3       conversation.<br><br>5   Q.  Did you ever have a conversation with<br>6       NBCUniversal representatives or<br>          representatives of<br>7       Aon about what would happen in the event<br>          of a<br>8       terrorist attack?<br><br>10      Assumes facts not in evidence. Lack of<br>          foundation.<br>11      THE WITNESS: Not specifically, no, I<br>12      don't recall such a conversation.<br><br>14  Q.  What does that mean, "not specifically"?<br>15  A.  I don't recall a conversation where we<br>16      specifically spoke about what would<br>          happen in the<br>17      event of a terrorist -- terrorist activity.<br>18  Q.  Do you remember any conversations in<br>          which<br>19      you discussed whether or not there would<br>          be coverage<br>20      in the event of terrorist activity? | Defendant's Objections:<br>33:2-3, 5-6, 11-12, 14-24<br>Underwriting, Policy<br>negotiation, pre-issuance<br>discussions, and addition of<br>the "Dig" Production, topics<br>15-18 of the Deposition<br>Notice, are not relevant to<br>the issue of whether the<br>"war" exclusions apply,<br>whether ASIC unreasonably<br>or without proper cause, or<br>the alleged damages, is a<br>waste of time, confuses the<br>issues, and is prejudicial.<br>The terms of the Policy<br>control. FRE 401; 403.<br><br><br>Plaintiff's Response:<br>Relevant to bad faith |

| Deposition Designation | Objection & Response |
|---|---|
| 21  A.  With Aon? | |
| 22  Q.  Or NBCUniversal. | |
| 23  A.  Oh. No, I don't recall. | |
| 24  Q.  Why didn't you discuss that with them? | |
| | |
| Page 34 | Defendant's Objections: |
| 2        THE WITNESS: It's not excluded by the | 34:2-4, 6-7, 9 |
| 3        policy for the effects of a terrorist attack on the | Underwriting, Policy negotiation, pre-issuance |
| 4        production, which wasn't my concern. | discussions, and addition of the "Dig" Production, topics |
| | 15-18 of the Deposition |
| 6    Q.  Loss as a result of terrorist activity is | Notice, are not relevant to |
| 7        not excluded by the policy; correct? | the issue of whether the |
| 8        MS. REED: Objection. Form. Foundation. | "war" exclusions apply, |
| 9        THE WITNESS: Correct. | whether ASIC unreasonably or without proper cause, or |
| | the alleged damages, is a |
| 11   Q.  You understand that in July of 2014 | waste of time, confuses the |
| 12       NBCUniversal moved the production of DIG out of | issues, and is prejudicial. The terms of the Policy |
| 13       Israel? | control.  FRE 401; 403. |
| | |
| 16       THE WITNESS: Yes. | |
| | |
| | Plaintiff's Response: |
| | Relevant to bad faith |
| | |
| Page 36 | Defendant's Objections: |
| 17   Q.  Did anyone ask you what your understanding | 36:24-37:13 Underwriting, Policy negotiation, pre- |
| 18       of the policy was in any respect in connection with | issuance discussions, and addition of the "Dig" |
| 19       the evaluation of the DIG claim? | Production, topics 15-18 of the Deposition Notice, are |
| | not relevant to the issue of |
| 22       THE WITNESS: No. | whether the "war" |
| 23  BY MR. HAYES: | exclusions apply, whether |
| 24   Q.  You were involved in the evaluation of | ASIC unreasonably or |
| 25       whether or not to accept the DIG production as an | without proper cause, or the alleged damages, is a waste |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | of time, confuses the issues, and is prejudicial.  The terms of the Policy control.  FRE 401; 403.<br><br>Plaintiff's Response: Relevant to bad faith |
| Page 37<br>1      insured production; correct?<br>2  A.  Yes.<br>3  Q.  You made the ultimate decision to accept<br>4      it as an insured production; correct?<br>5  A.  Yes.<br>6  Q.  And OneBeacon performed a separate<br>7      underwriting evaluation in connection with the<br>8      decision whether to accept the DIG production as an<br>9      insured production; correct?<br>10  A.  Separate from what? I don't understand<br>11      the question.<br>12  Q.  Separate from the underwriting that it had<br>13      performed before that time.<br><br>15      THE WITNESS: Yes. The procedure was to<br>16      be -- each production was declared to us, and we<br>17      performed an underwriting function on each<br>18      production. Yes.<br><br>20  Q.  And pursuant to that underwriting<br>21      function, OneBeacon evaluated the risks associated<br>22      with the production? Is that accurate?<br>23  A.  Yes.<br>24  Q.  And in evaluating the risks associated<br>25      with that production, OneBeacon evaluated | Defendant's Objections: 37:15-38:5   Underwriting, Policy negotiation, pre-issuance discussions, and addition of the "Dig" Production, topics 15-18 of the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial.  The terms of the Policy control.  FRE 401; 403.<br><br>Plaintiff's Response: Relevant to bad faith |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| whether or | |
| **Page 38** | Defendant's Objections: |
| 1 not it would accept those risks? Is that accurate? | |
| 2 A. Yes. | |
| 3 Q. And if so, on what terms? Is that accurate? | Plaintiff's Response: |
| 4 accurate? | |
| 5 A. Yes. | |
| **Page 47** | Defendant's Objections: |
| 10 Q. At the time NBCUniversal declared the DIG | 47:10-13 Underwriting, Policy negotiation, pre-issuance discussions, and addition of the "Dig" Production, topics 15-18 of the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial. The terms of the Policy control. FRE 401; 403. |
| 11 production to the policy, you were aware that there | |
| 12 was a history of terrorist activity in Jerusalem; is | |
| 13 that correct? | |
| 16 THE WITNESS: Yes. | |
| 18 Q. And it was your understanding that under | |
| 19 the policy, a loss caused by terrorist activity in | |
| 20 Jerusalem would be covered; yes? | |
| 24 THE WITNESS: Yes. | |
| | Plaintiffs' Response: Relevant to bad faith; not beyond scope of designation. |
| | Defendant's Objection: 47:16, 18-20, 24 Record objections; Underwriting, Policy negotiation, pre-issuance discussions, and addition of the "Dig" Production, topics 15-18 of |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| | the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial.  The terms of the Policy control. FRE 401; 403. |
| | Plaintiff's Response: Relevant to bad faith |
| Page 48 | Defendant's Objections: |
| 2   Q.   And did NBCUniversal and Aon have that | 48:2-3, 6 |
| 3         understanding as well? | 48:8-49:4 |
| | Record objections; |
| 6         THE WITNESS: Yes. I would think so. | Underwriting, Policy negotiation, pre-issuance |
| 8   Q.   And did you ever tell NBCUniversal or Aon | discussions, and addition of the "Dig" Production, topics |
| 9         that loss caused by war would not be covered under | 15-18 of the Deposition Notice, are not relevant to |
| 10        the policy? | the issue of whether the "war" exclusions apply, |
| 11  A.   No. They're fully aware of that. | whether ASIC unreasonably or without proper cause, or |
| 12  Q.   How do you know? | the alleged damages, is a waste of time, confuses the |
| 13  A.   Well, firstly, Susan Weiss has been in the | issues, and is prejudicial. The terms of the Policy |
| 14        business for many years, firstly as a senior | control.  FRE 401; 403. |
| 15        underwriter at Chubb before going on Aon. And | |
| 16        Andrea Garber was a senior underwriter at Gee | |
| 17        Insurance Company. | |
| 18        Aon is the second, if not the biggest, | |
| 19        insurance brokers in the world. So they were | Plaintiff's Response: Relevant to bad faith |
| 20        actually aware of the terms and conditions of the | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 21    policy. | |
| 22  Q.  How do you know they were aware that loss | |
| 23    resulting from war in Israel would not be covered? | |
| 24  A.  Loss resulting from war anywhere is not | |
| 25    covered. It's a standard exclusion in every policy. | |
| | |
| Page 49 | Defendant's Objections: |
| 1  Q.  And did you discuss with Aon or | 49:7-9, 11-14, 16-21Record |
| 2    NBCUniversal at any time what specific type of | objections; Underwriting, |
| 3    violence in Israel would be considered a war under | Policy negotiation, pre-issuance discussions, and |
| 4    the policy? | addition of the "Dig" |
| | Production, topics 15-18 of |
| 7    THE WITNESS: No. | the Deposition Notice, are not relevant to the issue of |
| | whether the "war" |
| 9  Q.  Why not? | exclusions apply, whether ASIC unreasonably or |
| | without proper cause, or the |
| 11    THE WITNESS: It wasn't warranted at the | alleged damages, is a waste |
| 12    time. | of time, confuses the issues, |
| 13  BY MR. HAYES: | and is prejudicial.  The |
| 14  Q.  Why wasn't it warranted? | terms of the Policy control. |
| | FRE 401; 403. |
| 16    THE WITNESS: The war exclusion is in the | |
| 17    policy. It's a standard exclusion. We spoke about | |
| 18    the -- the risks that we were concerned about at the | Plaintiff's Response: |
| 19    time. | Relevant to bad faith |
| 20  BY MR. HAYES: | |
| 21  Q.  Which were what? | |
| | |
| Page 50 | Defendant's Objections: |
| 1  A.  Well, as I previously testified, as well | 50:1-7 |
| 2    as the usual risks associated with filming, we were | Record objections; Underwriting, Policy |

| Deposition Designation | Objection & Response |
|---|---|
| 3 concerned about Jerusalem and the safety of the cast<br>4 and crew in Jerusalem in particular, in Israel in<br>5 general.<br>6 Q. And you specifically discussed terrorist<br>7 activity; isn't that right?<br><br>10 THE WITNESS: I don't know that we<br>11 specifically discussed terrorist activity. We<br>12 discussed safety of the cast and crew in Israel, and<br>13 particularly in Israel -- in Jerusalem. And I<br>14 certainly discussed with Wanda Phillips my concern<br>15 as to why we were concerned about where they were<br>16 filming, how they were filming, how many days they<br>17 were filming in Jerusalem.<br><br>19 Q. But safety from what? I'm talking about<br>20 your communications with Aon and NBCUniversal. You<br>21 said you discussed safety and security concerns.<br>22 Safety from what?<br>23 A. Sorry. When I say "we," I mean OneBeacon.<br>24 I didn't particularly -- I was only involved, I<br>25 believe, in one, maybe two direct conversations.<br><br>Page 51<br>1 Wanda Phillips had most of the conversations or<br>2 communicated our concerns.<br>3 Q. Safety and security from what?<br>4 A. From an isolated terrorist incident.<br>5 Q. That was specifically discussed? | negotiation, pre-issuance discussions, and addition of the "Dig" Production, topics 15-18 of the Deposition Notice, are not relevant to the issue of whether the "war" exclusions apply, whether ASIC unreasonably or without proper cause, or the alleged damages, is a waste of time, confuses the issues, and is prejudicial. The terms of the Policy control. FRE 401; 403.<br><br>Plaintiff's Response:<br>Relevant to bad faith<br><br><br><br>Defendant's Objections:<br><br><br>Plaintiff's Response: |

**691**

| Deposition Designation | Objection & Response |
|---|---|
| 6   A.   Yes. | |
| 7   Q.   And what was NBCU and Aon's concern, if | |
| 8         any? | |
| | |
| 11        THE WITNESS: Well, I think they had the | |
| 12        same general concern. They -- they gave us details | |
| 13        of the security's recommendations, where they were | |
| 14        staying, and how they were traveling. So they had | |
| 15        similar concerns. | |
| 16   BY MR. HAYES: | |
| 17   Q.   Regarding terrorist activity? | |
| | |
| 20        THE WITNESS: Concerning the safety of | |
| 21        their cast and crew. Yes. | |
| | |
| <u>Page 52</u> | <u>Defendant's Objections:</u> |
| 24   Q.   You testified that they were concerned | |
| 25        about the same things you were; isn't that | |
|          right? | |
| | <u>Plaintiff's Response:</u> |
| | |
| <u>Page 53</u> | <u>Defendant's Objections:</u> |
| 3         THE WITNESS: No. I don't believe that's | |
| 4         what I said. | |
| 5         I said that I assume they were concerned | |
| 6         about what we had -- we asked our questions. They | <u>Plaintiff's Response:</u> |
| 7         gave us the answers. The answers came back to | |
| 8         satisfy our questions. So I'm assuming they had | |
| 9         similar concerns. | |
| | |
| 11   Q.   And those concerns were concerns relating | |
| 12        to loss resulting from terrorist activity; | |
|          correct? | |

| Deposition Designation | Objection & Response |
|---|---|
| 15    THE WITNESS: That was my concern. Yes. | |
| 17  Q.  And that's what you assumed their concern<br>18    went as well; right? | |
| 19  A.  Yeah. | |
| 20  Q.  And after all of these conversations with<br>21    NBCUniversal and Aon, NBCU and Aon understood that,<br>22    in the event of a terrorist attack, the loss<br>23    resulting from that terrorist attack would be<br>24    covered by the policy; correct? | |
| Page 54<br>5    THE WITNESS: There's no terror --<br>6    terror -- excuse me. There's no terror exclusion on<br>7    the policy. So I can only assume they would have<br>8    that conclusion. | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| 10  Q.  Mr. Williams, you've been designated to<br>11    testify as to the communications between Atlantic,<br>12    on the one hand, and any of plaintiffs, NBCUniversal<br>13    or Aon, on the other hand, that relate to the<br>14    addition of DIG as an insured production.<br>15    Do you understand that to be a topic that<br>16    you've been designated to testify about? | |
| 17  A.  Yes. | |
| 18  Q.  So what I would like to know is: Based on<br>19    all of the communications that Atlantic had with<br>20    NBCUniversal and Aon, did NBCUniversal and Aon<br>21    expect loss resulting from terrorist activity to be<br>22    covered under the policy? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| **Page 55** | Defendant's Objections: |
| 1     THE WITNESS: Yes. It's a reasonable | |
| 2     conclusion on the basis terror activity is not | |
| 3     excluded by the policy. | Plaintiff's Response: |
| 5   Q.   And what is the basis for that testimony? | |
| 8     THE WITNESS: Yeah. I mean, they -- we | |
| 9     never had a conversation about whether terror was | |
| 10    excluded by the policy. It's not excluded by the | |
| 11    policy. | |
| 13   Q.   What is the basis for your assumption that | |
| 14    NBCUniversal and Aon assumed that in the event of a | |
| 15    terrorist attack, the loss would be covered? | |
| 19    THE WITNESS: Yeah. I -- I don't | |
| 20    understand the question. Terror is not excluded by | |
| 21    the policy. Why would they assume otherwise? | |
| 23   Q.   They wouldn't; right? | |
| **Page 56** | Defendant's Objections: |
| 1     THE WITNESS: Well, that's my assumption. | |
| 3   Q.   It's your assumption based on the | Plaintiff's Response: |
| 4    communications between NBCUniversal and Aon and | |
| 5    OneBeacon regarding the addition of DIG to the | |
| 6    policy? | |
| 11   Q.   Based on all the questions you were asking | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 12     them about security and safety and all the responses<br>13     they were giving you back; right? | |
| 17  Q.  Isn't that right, sir? | |
| 19     THE WITNESS: Based on the questions that<br>20     we had, the answers they were giving us, the fact<br>21     the policy doesn't have a terrorist exclusion, yes.<br>22     That would be the basis of my assumption. | |
| 24  Q.  And did you tell anyone that during the<br>25     DIG claim evaluation investigation? | |
| Page 57<br>4     THE WITNESS: Not that I specifically<br>5     recall. No. | Defendant's Objections: |
| 21  Q.  Why were you involved in the claim process<br>22     at all? | Plaintiff's Response: |
| 25     THE WITNESS: I don't know what you mean | |
| Page 58<br>1     by claims process. | Defendant's Objections: |
| 3  Q.  The evaluation of the DIG claim, the<br>4     adjustment of the DIG claim. | Plaintiff's Response: |
| 8     THE WITNESS: I wasn't involved in either<br>9     of those activities. | |
| 11  Q.  Did you ever offer your opinion as to<br>12     whether or not the claim was covered? | |

**695**

| Deposition Designation | Objection & Response |
|---|---|
| 15      THE WITNESS: To who? | |
| 17   Q.   Danny Gutterman? | |
| 18   A.   No. | |
| 19   Q.   Pamela Johnson? | |
| 22      THE WITNESS: After she informed me of | |
| 23      what her conclusion was and she explained to me why | |
| 24      she reached that conclusion, I did not object to the | |
| 25      conclusion she formed. | |
| Page 59 | Defendant's Objections: |
| 2    Q.   You didn't ever offer your opinion as to | |
| 3      whether or not there was imminent peril, for | |
| 4      example? | Plaintiff's Response: |
| 7      THE WITNESS: No. | |
| Page 60 | Defendant's Objections: |
| 5    Q.   Okay. Did you ever ask Pamela or Danny | |
| 6      whether or not they would invoke the war exclusion? | |
| | Plaintiff's Response: |
| 9      THE WITNESS: Based on the way you're | |
| 10      asking that question, I -- when Pamela asked -- | |
| 11      sorry. When Pamela stated she was considering the | |
| 12      war risk exclusion, I said, "Okay. Do the research, | |
| 13      and let me know why -- why you think that would | |
| 14      apply." | |
| 16   Q.   Why were you involved in the claims | |
| 17      process, Mr. Williams? | |

| Deposition Designation | Objection & Response |
|---|---|
| 20     THE WITNESS: Well, first of all, that's<br>21     not the claims process. That's the claims manager<br>22     telling me, as president of the company, that she<br>23     may be invoking an exclusion on a major client with<br>24     a major broker. It was simply a matter of courtesy<br>25     to give me a heads-up.<br><br>Page 61<br>1     MR. HAYES: This is Exhibit 3.<br>2     (Exhibit 3 was marked<br>3     for identification.)<br><br>5  Q.  Do you recognize the document marked<br>6     Exhibit 3?<br><br>10     THE WITNESS: Yes.<br><br>12  Q.  I want you to read your e-mail dated<br>13     July 15, 2014, 7:53 p.m., into the record, please.<br><br>16     THE WITNESS: The entire thing or just<br>17     the -- or just the content?<br>18  BY MR. HAYES:<br>19  Q.  Do you see where it says why is it not<br>20     covered -- "Why is it not a covered claim . . . "?<br>21     Do you see that sentence?<br>22  A.  Yes.<br>23  Q.  Please read that sentence and the one that<br>24     follows into the record.<br><br>Page 62<br>2     THE WITNESS: "Why is it not a covered<br>3     claim they have imminent peril. Unless you are | <br><br><br><br><br><br><br><br>Defendant's Objections:<br><br><br><br>Plaintiff's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections: |

**697**

| Deposition Designation | Objection & Response |
|---|---|
| 4     going to invoke the war exclusion.<br>5     "I am available between 1 and 3 my time."<br><br>7   Q.   So you introduced the idea of invoking the<br>8       war exclusion; isn't that right?<br><br>12     THE WITNESS: No. I don't think that's<br>13     what that -- that conveys.<br><br>15   Q.   What does it convey?<br>16   A.   I think it was Pamela Johnson who said the<br>17       hostilities in Israel may reach the<br>       definition of<br>18       "war" as -- in -- or the exclusion of war.<br>19   Q.   And did you express an opinion on that<br>20       question at any time? | Plaintiff's Response: |
| Page 63<br>2   Q.   Based on your understanding of what the<br>3       insured's expectations were? | Defendant's Objections: |
| 6     THE WITNESS: No.<br><br>8   Q.   Why not?<br><br>11     THE WITNESS: Because this is a claims<br>12     process. So Pamela Johnson determines<br>       coverage<br>13     under the policy.<br><br>15   Q.   This e-mail refers to a call that you and<br>16       Daniel Gutterman and Pamela Johnson had.<br>17       Do you see that?<br>18   A.   Yes.<br><br>23   Q.   And if you had that call, why -- why? Why<br>24       did you have it? | Plaintiff's Response: |
| Page 64<br>1     THE WITNESS: So that Pamela could | Defendant's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| explain<br>2    to me how, why, what, where she was going to<br>3    investigate this claim.<br><br>5   Q.   Why did you need to know all that if it<br>6    was a claim and you were the head of underwriting?<br>7<br><br>8    THE WITNESS: Because this was a claim<br>9    which involved NBC, a major client of OneBeacon, and<br>10    Aon, a major broker in the industry.<br><br>12   Q.   Did you approve the decision to deny the<br>13    claim?<br><br>15    THE WITNESS: Well, the word "approve" is<br>16    misleading. I was told of the final decision to<br>17    deny the claim. I didn't object to the -- to the<br>18    reasons given. | Plaintiff's Response: |
| Page 65<br>11   Q.   And could you have objected to that<br>12    decision when you were told? | Defendant's Objections: |
| 15    THE WITNESS: I could have objected. It<br>16    wouldn't have changed the decision.<br><br>18   Q.   You couldn't have stopped it?<br><br>21   Q.   Is that what you're saying?<br><br>24    THE WITNESS: Correct. I couldn't have<br>25    stopped it. | Plaintiff's Response: |
| Page 67 | Defendant's Objections: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 2  Q.  Did you make the decision not to renew the<br>3       NBCUniversal account? | |
| 6       THE WITNESS: In discussion with -- with<br>7       others, yes. | Plaintiff's Response: |
| 11      THE WITNESS: Dennis Crosby and, to a<br>12      certain extent, Wanda Phillips. | |
| 14  Q.  Dennis Crosby testified that it was your<br>15      decision; is that correct? | |
| 19      THE WITNESS: Yeah. The decision -- it<br>20      was one of many decisions about policies<br>        non- -- to<br>21      be non-renewed. There was discussions<br>        with Dennis<br>22      Crosby as my superior as to why. There<br>        was<br>23      discussions with Wanda Phillips as to<br>        where we saw<br>24      the account going. And the decision was<br>        made,<br>25      "Yeah. I think we should non-renew this." | |
| <u>Page 68</u><br>2  Q.  You made the decision not to renew it, and<br>3      Dennis Crosby agreed; right? | <u>Defendant's Objections:</u> |
| 6      THE WITNESS: I don't know if it was that<br>7      black and white. It was in a discussion. We<br>        came<br>8      to the conclusion we should non-renew it. | <u>Plaintiff's Response:</u> |
| 16  Q.  Why did you decide not to renew the<br>17      policy? | |
| 19      THE WITNESS: There were several<br>        reasons.<br>20      The business practice at NBC had -- had | |

| Deposition Designation | | Objection & Response |
|---|---|---|
| 21 | changed in terms of the scope and nature of the productions | |
| 22 | they were insuring. OneBeacon Entertainment, in | |
| 23 | conjunction with discussions with Dennis Crosby, we | |
| 24 | were taking a different direction in the way the | |
| 25 | business was going to be run and the risks we were | |
| Page 69 | | Defendant's Objections: |
| 1 | going to insure. This was one of several insureds | |
| 2 | that we had decided to non-renew. | |
| | | Plaintiff's Response: |
| 4 Q. | And in determining whether or not to renew | |
| 5 | the NBCUniversal policy, did you evaluate how much | |
| 6 | in premiums OneBeacon would have to charge to recoup | |
| 7 | its prior losses in claims paid to NBCUniversal? | |
| 10 | THE WITNESS: That wasn't so much a factor | |
| 11 | in the non-renewal of Universal. That was a factor | |
| 12 | in if we decided to renew it, what terms and | |
| 13 | conditions we would want to offer NBC. | |
| 15 Q. | What was a factor? | |
| 17 | THE WITNESS: The loss ratio. | |
| 19 Q. | How much it would take in premiums to | |
| 20 | recoup the losses that OneBeacon had already paid | |
| 21 | out; right? | |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 25     THE WITNESS: It's more along the lines | |
| Page 70 | Defendant's Objections: |
| 1     what terms and conditions we would have been | |
| 2     prepared to offer NBC going forward. | |
| | Plaintiff's Response: |
| 4  Q.  And what terms and conditions were those? | |
| 7     THE WITNESS: If we had gone forward, yes, | |
| 8     we would have needed an increase in premium, and we | |
| 9     would have needed a substantial increase in the SIR. | |
| Page 72 | Defendant's Objections: |
| 20  Q.  And to recover and recoup the losses that | |
| 21     have been paid before; correct? | Plaintiff's Response: |
| Page 73 | Defendant's Objections: |
| 2  Q.  Correct? | |
| 5     THE WITNESS: No. You can't always make | Plaintiff's Response: |
| 6     up the losses that you -- that you suffered. | |
| 7     Otherwise the rate you charged the insured would be | |
| 8     ridiculous. | |
| 10  Q.  But it was something that was considered? | |
| 14     THE WITNESS: It can be considered, but | |
| 15     it's just not possible to make up losses that you've | |
| 16     incurred. | |

| Deposition Designation | Objection & Response |
|---|---|
| 18  Q.  It can be considered, and it was<br>19        considered; right?<br><br>22        THE WITNESS: I don't think we could have<br>23        charged a rate enough. So it wasn't a factor in<br>24        what we were going to do going forward if we were<br>25        going to go forward. | |
| Page 74<br>2   Q.  When did you come to the conclusion that<br>3        you couldn't have charged a rate that was high<br>4        enough to recoup those prior losses?<br><br>8        THE WITNESS: When we began to look at<br>9        the -- the loss ratio.<br><br>11  Q.  And after you considered that, you decided<br>12        not to renew the policy; right?<br><br>15        THE WITNESS: No. That completely<br>16        misstates my testimony. We decided not to renew the<br>17        policy because OneBeacon Entertainment, as a<br>18        division of OneBeacon, was moving away from insuring<br>19        studios' large corporate risks. This was just one<br>20        of many on which non-renewal terms were offered. | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 76<br>17  Q.  And I want you to go back to the exhibit<br>18        marked 1. Sorry. The exhibit marked 2.<br>19  A.  Yes. | Defendant's Objections: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 20  Q.   That's the insurance policy at issue in<br>21        this case; is that right?<br>22  A.   That's correct.<br>23  Q.   And I want you to turn to the page marked<br>24        ATL 3083.<br>25  A.   Yes. | Plaintiff's Response: |
| Page 77<br>1  Q.   And I want you to read the exclusion<br>      Roman<br>2        numeral III, Arabic 1 into the record.<br>3  A.   "War, including undeclared or civil war;<br>4        or."<br><br>23  Q.   And looking at Exhibit 2, who drafted that<br>24        language? | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 78<br>2        THE WITNESS: The original policy<br>      language<br>3        was provided by Aon. | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 80<br>23  Q.   Who wrote it down in the policy? Who<br>      was<br>24        the scrivener?<br>25  A.   Well, you don't write it down. So Aon had | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 81<br><br>1        given us a wording that they wished us to<br>      use.<br>2        During a proc- -- a long process that<br>      wording was<br>3        discussed. And eventually that wording was<br>      taken,<br>4        reformatted into the insurance policy here | Defendant's Objections:<br><br><br>Plaintiff's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| back in 2010.<br>5<br>6 Q. When you say "reformatted," what do you<br>7 mean?<br>8 A. The document that Aon gave us, I believe,<br>9 was in one page format. Once the wording was agreed<br>10 with Aon, it was reformatted into the way that<br>11 OneBeacon issued their policies.<br>12 Q. But what do you mean by "reformatted"?<br>13 Like a cut and paste into the format that OneBeacon<br>14 issues its policies?<br>15 A. Yes. | |
| Page 82<br>6 Q. And would they have literally performed a<br>7 cut-and-paste function, or would they have typed out<br>8 the language anew into the OneBeacon form?<br><br>10 THE WITNESS: That would be a<br>11 cut-and-paste.<br><br>13 Q. Okay. And that applies with respect to<br>14 Roman numeral III(1), (2), (3), and (4) on<br>15 page 3083?<br><br>17 THE WITNESS: I have every reason to think<br>18 so. Yes. | Defendant's Objections:<br><br><br>Plaintiff's Response: |
| Page 92<br>14 Q. Did OneBeacon impose any terms in addition<br>15 to the terms already in the policy applicable only<br>16 to the DIG production at any time? | Defendant's Objections:<br><br><br>Plaintiff's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 17  A.   I don't believe so. No.<br>18        MR. HAYES: This is Exhibit 5.<br>19        (Exhibit 5 was marked<br>20        for identification.) | |
| Page 93 | Defendant's Objections: |
| 2   Q.   Have you ever seen that document before,<br>3        sir?<br>4   A.   I don't believe so. | |
| 5   Q.   Wanda Phillips tells Danny Gutterman:<br>6        "We approved filming in East Jerusalem &<br>7        Tel Aviv. NBC Security team is to remain<br>8        involved and continue working with<br>         production."<br>9        Is that something that OneBeacon required?<br>10  A.   I don't know that we required it. They<br>11       told us they were going to do it. So we<br>         wouldn't<br>12       object to it.<br>13  Q.   Did you ask them to do it?<br>14  A.   They told us they were going to do it. | Plaintiff's Response: |
| Page 94 | Defendant's Objections: |
| 9   Q.   Do you recognize the document marked<br>10       Exhibit 6?<br>11  A.   Yes. | |
| 12  Q.   What is it?<br>13  A.   Yes. It's a Declaration signed by me.<br>14  Q.   Is it true?<br><br>17       THE WITNESS: To the extent of -- one<br>18       extent it is not exactly true.<br><br>20  Q.   Okay. And what extent is that?<br>21  A.   It says on the paragraph 2 I was also in<br>22       charge of approving the terms of the policy<br>         to be<br>23       issued. I -- I was one of -- one of the people<br>         who<br>24       was in charge of approving the terms of the | Plaintiff's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| policy. <br> 25   Q.   Who else was in charge? | |
| Page 95 | Defendant's Objections: |
| 1   A.   Martin Ridgers. <br> 2   Q.   Anything else that you'd like to correct? | |
| 6   Q.   I want you to read paragraph 4 into the <br> 7          record, please. | Plaintiff's Response: |
| 10          THE WITNESS: As a result of the <br> 11          manuscripted form submitted" by -- excuse me -- <br> 12          "submitted to Atlantic by Aon, and the ensuing <br> 13          discussions, Atlantic did issue Policy No. <br> 14          MP00163-00 to NBCUniversal, with a Policy <br> 15          Period of January 1, 2010, to January 1, 2011. <br> 16          That policy was renewed each year thereafter <br> 17          until Atlantic issued its final policy to <br> 18          NBCUniversal, Policy No. MP00163-04, with a <br> 19          Policy Period of January 1, 2014, to June 30, <br> 20          2015. The war exclusions found in this last <br> 21          policy in the Motion Picture/Television <br> 22          Portfolio General Conditions section, at <br> 23          pages 6 and 7, are the same exclusions as in <br> 24          the original policy issued to NBC, and are <br> 25          those requested by Aon." | |
| Page 96 | Defendant's Objections: |
| 2   Q.   And this policy with a period of <br> 3          January 1, 2014, to June 30, 2015, referenced in <br> 4          paragraph 4, that's Exhibit 2; is that right? | Plaintiff's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 5   A.   Yes. | |
| **Page 98** | Defendant's Objections: |
| 22   Q.   Do you recognize the document marked | |
| 23          Exhibit 7? | |
| | Plaintiff's Response: |
| **Page 99** | Defendant's Objections: |
| 9    Q.   There is one box around the phrase "Please | |
| 10          confirm and confirm prepared to bind | |
|              coverage." | |
| 11          Do you see that, Mr. Williams, at the top? | Plaintiff's Response: |
| 12   A.   Yes. | |
| 13   Q.   There is also a box around the sentence, | |
| 14          "We are in agreement to use the form dated | |
|              12-17-09 | |
| 15          Martin's Final Form." | |
| 16          Do you see that, Mr. Williams? | |
| 17   A.   Yes. | |
| 18   Q.   Have you ever seen the document marked | |
| 19          Exhibit 7? | |
| 20   A.   Not that I recall. | |
| 21   Q.   Do you know what the reference is to the | |
| 22          "form dated 12-17-09 Martin's Final Form" | |
|              is? | |
| **Page 100** | Defendant's Objections: |
| 2    Q.   What's your -- what do you think it means? | |
| 3    A.   Or my assumption. | |
| 5          THE WITNESS: I assume it means the | Plaintiff's Response: |
| 6          wording that Martin Ridgers and George | |
|              Walden | |
| 7          finally agreed on. And presumably it was a | |
|              version | |
| 8          dated December 17, 2009. | |
| 9          MR. HAYES: This is going to be Exhibit 8. | |
| 10          (Exhibit 8 was marked | |

| Deposition Designation | Objection & Response |
|---|---|
| 11      for identification.) | |
| | |
| 13   Q.   Do you recognize the document marked | |
| 14         Exhibit 8? | |
| 15   A.   I don't specifically recall seeing it | |
| 16         before. | |
| 17   Q.   Do you see on the first page marked AONNBC | |
| 18         4132 the sentence, "Martin's Final Form Rev 1 2009 | |
| 19         1217"? Do you see that? | |
| | |
| Page 105 | Defendant's Objections: |
| 24   Q.   Do you know who George Walden is, | |
| 25         Mr. Williams? | |
| | |
| | Plaintiff's Response: |
| | |
| | |
| Page 106 | Defendant's Objections: |
| 1    A.   Yes. | |
| 2    Q.   Who is he? | |
| 3    A.   He's a senior member of Aon/Ruben in | |
| 4         New York. | Plaintiff's Response: |
| 5    Q.   Have you ever spoken to Mr. Walden? | |
| 6    A.   Yes. | |
| 7    Q.   Have you ever spoken to Mr. Walden in | |
| 8         connection with NBCUniversal? | |
| 9    A.   Yes. | |
| 10   Q.   When? | |
| 11   A.   Oh, numerous times. | |
| 12   Q.   In connection with the negotiation of the | |
| 13         policy in 2009 and 2010? | |
| 14   A.   Yeah. I can't recall specific times. But | |
| 15         I was involved in that process. Yes. | |
| | |
| Page 128 | Defendant's Objections: |
| 2    Q.   Mr. Williams, when NBCUniversal notified | |
| 3         Atlantic that it wanted to add the DIG insured | |

| Deposition Designation | Objection & Response |
|---|---|
| 4      production to the policy at issue in this case, did<br>5      you consider whether or not Atlantic should add a<br>6      terrorism exclusion to the policy?<br>7   A.   No.<br>8   Q.   Why not?<br>9   A.   The terrorism risk on a film or<br>10     entertainment policy is not that great compared to<br>11     other perils or claims that can occur. It has to be<br>12     pretty unlucky if a terrorist actually detonates a<br>13     bomb on -- on the film set or goes after a film set.<br>14     Until events in Paris where the terrorist actually<br>15     attacked a musical -- a music venue, there hadn't<br>16     been a terrorist attack specifically against an<br>17     entertainment risk. | Plaintiff's Response: |
| <u>Page 129</u><br>8   Q.   So Atlantic was okay accepting the risk of<br>9      loss caused by terrorism; right?<br><br>12     THE WITNESS: Yes. | Defendant's Objections:<br><br><br><br>Plaintiff's Response: |
| <u>Page 131</u><br>11   Q.   Can a loss be caused by terrorism and war?<br><br>15     THE WITNESS: At the same time?<br><br>17   Q.   Yes.<br><br>19     THE WITNESS: I don't think so. | Defendant's Objections:<br><br><br><br>Plaintiff's Response: |

7060055/015825

| Deposition Designation | Objection & Response |
|---|---|
| 21  Q.  Did you consider that when NBCUniversal<br>22       proposed adding DIG to the policy? | |
| Page 132<br>2  Q.  Whether or not a loss can be caused by<br>3       terrorism and war at the same time, did you consider<br>4       that, or anyone else at OneBeacon?<br><br>8       THE WITNESS: No. I don't think we<br>9       considered that -- | Defendant's Objections:<br><br><br><br>Plaintiff's Response: |
| Page 134<br>18  Q.  Based on all of that information OneBeacon<br>19       received, OneBeacon accepted DIG as an insured<br>20       production under the policy; right?<br><br>24       THE WITNESS: Yes. | Defendant's Objections:<br><br><br>Plaintiff's Response: |

1

## **DEFENDANT'S DEPOSITION DESIGNATIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7060055/015825

1.     **MALIKA ADAMS**

| Deposition Designation | Objection & Response |
|---|---|
| Defendant's Designation of Malika Adams<br>p. 4, l. 6-p. 4, l. 17; p. 11, l. 3; p. 11, l. 25; p. 12, l. 5-p. 12, l. 5; p. 13, l. 3- p. 13, l. 25; p. 14, l. 4-p. 14, l. 21; p. 19, l. 9-p. 20, l. 11; p. 25, l. 1-p. 25, l. 7; p. 25, l. 19-p. 25, l. 21; p. 50, l. 8-p. 50, l. 10; p. 50, l. 17-p. 50, l. 24; p. 60, l. 1-p. 60, l. 6; p. 60, l. 18-p. 60, l. 23; p. 72, l. 1-p. 72, l. 2; p. 72, l. 21-p. 73, l. 5; p. 73, l. 11-p. 74, l. 3; p. 75, l. 6-p. 75, l. 8; p. 75, l. 11-p. 75, l. 20; p. 75, l. 22-p. 76, l. 6; p. 77, l. 18-p. 78, l. 4; p. 78, l. 11-p. 78, l. 19; p. 78, l. 24- p. 78, l. 25; p. 80, l. 17-p. 81, l. 4; p. 81, l. 10-p. 81, l. 17; p. 81, l. 23-p. 81, l. 23; p. 82, l. 21-p. 83, l. 6; p. 84, l. 2-p. 84, l. 11; p. 84, l. 17-p. 84, l. 22; p. 85, l. 2-p. 85, l. 5; p. 85, l. 7-p. 85, l. 19; p. 85, l. 25-p. 86, l. 17; p. 88, l. 9-p. 88, l. 22; p. 89, l. 7-p. 89, l. 25; p. 90, l. 16-p. 90, l. 18; p. 90, l. 22-p. 91, l. 6; p. 91, l. 10-p. 91, l. 12; p. 92, l. 1-p. 92, l. 12; p. 93, l. 2-p. 94, l. 8; p. 94, l. 13-p. 95, l. 1; p. 97, l. 3- p. 97, l. 17; p. 102, l. 1-p. 102, l.16 | Plaintiffs object to Defendant's designations as follows.  Where line numbers are not included with a page number, plaintiffs object to all designated testimony on the page cited. |
| Page 4<br>6 BY MS. CRAPSTER:<br>7 Q. Ms. Adams, my name is Carla Crapster. I'm<br>8 here on behalf of Atlantic Specialty. First, I just<br>9 want to confirm you can hear me okay, correctly<br>10 correct?<br>11 A. Yeah. There's a little bit of an echo, so<br>12 going to turn it down a tad, and I think that might<br>13 help. Go ahead.<br>14 Q. Does it sound any better - -<br>15 A. Yeah.<br>16 Q. -- on your end?<br>17 A. It's a little bit better. You're okay. Yeah. | Plaintiff's Objections:<br>No objection – Page 4.<br><br>Defendant's Response: |
| Page 11<br>3 And what was your title when you were first<br>4 hired at Comcast?<br>5 A. When I was first hired in 2008, I was a risk<br>6 administrator for the content and technology programs.<br>7 Q. And tell me, what exactly did that entail?<br>8 What were your responsibilities?<br>9 A. At the time I worked there in 2008, there were | Plaintiff's Objections:<br>No objection – Page 11.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 10 a number of TV networks and technology joint ventures<br>11 that Comcast either owned entirely or had a portion<br>12 thereof that did not fit the corporate programs, if you<br>13 will, so they were insured entirely separately from the<br>14 Comcast corporate insurance programs. I managed those<br>15 Insurance programs.<br>16 Q. And what do you mean by that when you say you<br>17 managed insurance programs?<br>18 A. Every little network and every technology<br>19 joint venture had an independent set of policies to<br>20 cover their needs that were very different from the<br>21 corporate needs.<br>22 Q. So would it be correct to say that it was your<br>23 job to make sure that these individual networks and<br>24 joint ventures had the insurance coverage that was<br>25 appropriate for them? | |
| Page 12<br>5 Yes. | Plaintiff's Objections:<br>No objection – Page 12.<br><br>Defendant's Response: |
| Page 13<br>3 Q. Okay. So when you started in 2008, you began<br>4 as a risk administrator for the content and technology<br>5 program. How long did you have that title?<br>6 A. I want to say until 2011.<br>7 Q. And what did your title become at that point?<br>8 A. Senior analyst.<br>9 Q. And what additional responsibilities came with<br>10 that title change?<br>11 A. At the time of the title change was the time<br>12 of the NBCUniversal merger with Comcast. So I helped<br>13 with the integration of those TV networks that I had<br>14 been looking after as they were being integrated into<br>15 the NBCUniversal family.<br>16 Q. So was the -- was -- the title change from<br>17 risk administrator to senior analyst, was that<br>18 considered a promotion? | Plaintiff's Objections:<br>No objection – Page 13.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 19 A. Yes.<br>20 Q. So did it come with more responsibility than<br>21 what you'd held previously?<br>**22 A.** Different responsibilities.<br>23 Q.Were you still responsible for ensuring that<br>24 networks or joint ventures had the coverage that was<br>25 appropriate for them?<br><br>Page 14<br>4 THE WITNESS: Not exactly. With the merger,<br>5 the need for these networks to maintain individual<br>6 and separate coverage no longer existed because<br>7 they were being integrated with the NBCUniversal<br>8 networks. So the -- like I said, the need to<br>9 maintain separate and distinct policies eventually<br>10 went away so my role -- my role changed in that<br>11 respect.<br>12 BY MS. CRAPSTER:<br>13 Q. So what did your new responsibilities entail?<br>14 A. When I became a senior analyst, I worked a<br>15 little bit more closely with the director of risk<br>16 management at the time, and I helped through the<br>17 gathering of underwriting information for some insurance<br>18 renewals<br>19 Q. And who was that director of risk management<br>20 that you worked under?<br>21 A. Her name was Kathy Coupe.<br><br>Page 19<br>9 Q. Okay. So your -- going back to your work<br>10 history, you said you joined Comcast in 2008. In 2011<br>11 you became the senior analyst in connection with the<br>12 merger of NBCU and Comcast. How long did you hold the<br>13 role of senior analyst?<br>14 A. 2000 and -- the beginning of 2014.<br>15 Q. And what happened at that point?<br>16 A. I got promoted to supervisor.<br>17 Q. So you're still at Comcast at this point?<br>18 A. Yes.<br>19 Q. And what does your new role as a supervisor<br>20 entail?<br>21 A. The group underwent some changes at the<br>22 beginning of 2014. And so individuals within the group<br>23 were realigned by line of coverage, so having<br>24 responsibilities for certain lines of coverage. The | Plaintiff's Objections:<br>No objection – Page 14.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 19.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| L25ines of coverage I became responsible for included<br><br>Page 20<br>1 global casualty, including umbrella and excess<br>2 liability, and the professional liability program, along<br>3 with a few ancillary, like railroad protective and<br>4 environmental liability.<br>5 Q. And you said that was in approximately 2014?<br>6 A. That's correct.<br>7 Q. Do you know when in 2014?<br>8 A. Beginning of the year. Whenever promotions<br>9 are announced.<br>10 Q. So probably January or February?<br>11 A. Probably | Plaintiff's Objections:<br>No objection – Page 20.<br><br>Defendant's Response: |
| Page 25<br>1  Q. Ms. Adams, you no longer work for Comcast; is<br>2 that correct?<br>3 A. That's correct.<br>4 Q. When did you leave?<br>5 A. January of this year.<br>6 Q. Of this year? Of 2017?<br>7 A. Correct.<br>19 Ms. Adams, what you did do to prepare for<br>20 today's deposition?<br>21 I spoke with NBCUniversal attorneys last week. | Plaintiff's Objections:<br>No objection – Page 25.<br><br>Defendant's Response: |
| Page 50<br>8 Are you familiar with the policy that's at<br>9 issue in this lawsuit?<br>10 A. Yes. With a -- yes.<br>17 Q. Ms. Adams, when was the last time you saw that<br>18 policy?<br>19 A. I don't remember.<br>20 Q. Okay. I'll represent to you that that policy<br>21 took effect in January of 2014.<br>22 A. Okay.<br>23 Q. Does that sound correct to you?<br>24 A. It sounds correct, yes. | Plaintiff's Objections:<br>No objection – Page 50.<br><br>Defendant's Response: |
| Page 60<br>1 Q. Ms. Adams, are you generally aware of the --<br>2 the facts of this lawsuit?<br>3 A. Yes, in general terms. | Plaintiff's Objections:<br>Calls for a legal |

| Deposition Designation | Objection & Response |
|---|---|
| 4 Q. Okay. Are you aware of the plaintiffs' <br> 5 position in the case? <br> 6. A. Not particularly, no. <br> 18 Q. Yeah. Do you understand that the plaintiffs' <br> 19 position in this case is that the loss is covered <br> 20 because it results from acts of terrorism? <br> **21 A. Yes** <br> 22 Q. Do you agree with that position? <br> 23 A. I don't really have an opinion. | conclusion; 402 – Page 60. <br><br> <u>Defendant's Response:</u> <br> The question does not seek or illicit a legal conclusion, rather it merely asks that the witness testify to facts within her personal knowledge. The witness' understanding <u>of the development of facts bearing on claim decision relevant to reasonableness of claim decision,</u> and the witness' lack of an opinion go to the credibility of the witness which is weighed by the jury and always relevant. |
| <u>Page 72</u> <br> 1 MS. CRAPSTER: And we'll mark this as <br> 2 Exhibit 240. <br> 21 Q. Ms. Adams, before we get into the email, do <br> 22 you remember the first time that you heard about the Dig <br> 23 claim that's now at issue in this lawsuit? <br> 24 A. No, I don't remember. <br> 25Q. Okay. It looks to me like this email might | <u>Plaintiff's Objections:</u> <br> No objection – Page 72. <br><br> <u>Defendant's Response:</u> |
| <u>Page 73</u> <br> 1 have been the first that you heard of it, but I didn't <br> 2 know if you had any independent memory of getting a <br> 3 phone call or anything separately. But if you'll look <br> 4 at this email for me and tell me whether you recognize <br> 11 BY MS. CRAPSTER: <br> 12 Q. So if you can just take a quick look through <br> 13 and tell me if you remember this. <br> 14 A. I don't remember particularly receiving it <br> 15 Q. Okay. But it looks -- it looks familiar to <br> 16 you? <br> 17 A. Familiar? Sure. <br> 18 Q. Okay. So do you recall whether this was <br> 19 the -- the email states, "Thanks. Looping in Malika and <br> 20 Jessica for their thoughts." So it appears to me that <br> 21 this is the first time that you were being made aware of <br> 22 the situation in Israel as it related today. <br> 23 Does that fit with your memory? <br> 24 A. I couldn't tell you. <br> 25 Q. Okay. So you're being looped in for your | <u>Plaintiff's Objections:</u> <br> No objection – Page 73. <br><br> <u>Defendant's Response:</u> |

| Deposition Designation | Objection & Response |
|---|---|
| Page 74<br>1 thoughts, you and Jessica.<br>2 First of all, who is Jessica?<br>3 A. Jessica at that point was my direct report. | Plaintiff's Objections:<br>No objection – Page 74.<br><br>Defendant's Response: |
| Page 75<br>6 Q. Okay. Let me direct you to page 354 (sic).<br>7 It's the second page of what we marked as Exhibit 240.<br>8 But there's an email from Susan Weiss to Kurt Ford.<br>11 Q. I'm sorry if I didn't say that. That's what I<br>12 meant to say, 345. It's Exhibit 2 of page 240.<br>13 A. Okay.<br>14 Q. At the very top, there's an email from Susan<br>15 Weiss to Kirk Ford, "Something on this came up few weeks<br>16 back, and Andrea was going to explore how the corporate<br>17 terrorism policy would respond. I don't know the<br>18 result. The email chain is below."<br>19 Do you know what she's referring to there,<br>20 "the corporate terrorism policy"?<br>22 THE WITNESS: No, not particularly.<br>23 BY MS. CRAPSTER:<br>24 Q. What do you mean by "not particularly"? Do<br>25 you have any idea at all what she's referring to? | Plaintiff's Objections:<br>402, 403 – 75:6-8; 75:11-20.<br><br>402, 403, 602 – 75:22-25.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. |
| Page 76<br>1 A. I could assume, but I don't think that that's<br>2 right.<br>3 Q. Well, tell me what it is that you would<br>4 assume.<br>5 A. That she thought there may be a terrorism<br>6 policy out there. Susan wouldn't know. | Plaintiff's Objections:<br>402, 403, 602 – Page 76.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. |
| Page 77<br>18 MS. CRAPSTER: Okay. We're going to mark this<br>19 as Exhibit 241. | Plaintiff's Objections:<br>402, 403 – 77:18-21. |

| Deposition Designation | Objection & Response |
|---|---|
| 20 (Thereupon, Exhibit 241 was marked for<br>21 identification.)<br>22 BY MS. CRAPSTER:<br>23 Q. So this is an email. The first -- the first<br>24 email that appears to you is a follow-up to the email we<br>25 just looked at. And it's from Kurt Ford to you and | No objection – 77:22.<br><br>402, 403, 602 – 77:23-25.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. |
| Page 78<br>1 Susan Weiss. And Mr. Ford is referring to a corporate<br>2 terrorism policy. And he asks, "Would Dig have<br>3 protection under a corporate terrorism policy for this<br>4 situation? If so, what is the deductible?"<br>11 Q. That's correct. It's the last email in time.<br>12 It's the first email that appears on the -- on the page<br>13 UPC385.<br>14 So this is an email that's directed to you.<br>15 A. Uh-huh.<br>16 Q. He was asking you about a corporate terrorism<br>17 policy. So did you have any knowledge of a corporate<br>18 terrorism policy?<br>19 A. No.<br>24 THE WITNESS: I personally did not have a<br>25 knowledge of a corporate terrorism policy in place. | Plaintiff's Objections:<br>402, 403, 602 – Page 78.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. |
| Page 80<br>17 MS. CRAPSTER: We're going to mark this as<br>18 Exhibit 242.<br>19 (Thereupon, Exhibit 242 was marked for<br>20 identification.)<br>21 THE COURT REPORTER: What were the last<br>22 digits?<br>23 THE WITNESS: I don't know. She said 242.<br>24 What were the last digits, Carla?<br>25 MS. CRAPSTER: 3254. | Plaintiff's Objections:<br>No objection – Page 80.<br><br>Defendant's Response:<br><br>Plaintiff's Objections:<br>No objection – 81:1-4. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 81<br>1 THE WITNESS: 3254.<br>2 BY MS. CRAPSTER:<br>3 Q. Do you have it?<br>4 A. Yeah.<br>10 Q. Okay. So if you'll turn to the second page of<br>11 that exhibit, it's 3255. At the bottom of that page,<br>12 Kurt Ford is sending an email to you and others stating,<br>13 "Following up on this. Would Dig have protection under<br>14 a corporate terrorism policy for this situation?"<br>15 And then you responded on Wednesday, July 2nd,<br>16 "I haven't forgotten, but I wanted to run by Sandy to<br>17 make sure I wasn't omitting anything."<br>23 THE WITNESS: Okay. | 402, 403 – 81:10-17; 81:23.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. |
| Page 82<br>21 Q. If we continue following up the email chain,<br>22 there's another email that appears above that sent from<br>23 Randi Richmond to Kurt on July 2nd. And it states, "The<br>24 other potential issue, Kurt, would be what if we had to<br>25 pull out of Israel entirely and re-up the whole show in | Plaintiff's Objections:<br>402, 403 – Page 82.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. |
| Page 83<br>1 the US? Does insurance cover that?"<br>2 And then it appears that Mr. Ford forwarded<br>3 you that email and sent another one for us to discuss.<br>4 And then you responded that same day, July 3rd, 2014.<br>5 Do you recall sending this email?<br>6 A. Not particularly, no. | Plaintiff's Objections:<br>402, 403 – Page 83.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. |
| Page 84 | |

| Deposition Designation | Objection & Response |
|---|---|
| 2 Q. Okay. So your email states, "Unfortunately, I<br>3 don't think we would have coverage for a situation in<br>4 which we voluntarily pulled out of an area because of<br>5 security concerns. In order to trigger coverage under a<br>6 production policy, we would need a policy trigger as<br>7 Susan had mentioned, and even with that, we'd have to be<br>8 cautious because there's a war exclusion on the policy."<br>9 Do you recall what made you think that the<br>10 voluntary pulling out of an area because of security<br>11 concerns would not be covered?<br>17 THE WITNESS: I don't remember.<br>18 BY MS. CRAPSTER:<br>19 Q. Do you recall what made you state that you'd<br>20 need that you would need to be cautious about<br>21 coverage because there was a war exclusion on the<br>22 policy? | Plaintiff's Objections:<br>402, 403, 602 – Page 84.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. |
| Page 85<br>2 THE WITNESS: I don't remember specifically,<br>3 no.<br>4 BY MS. CRAPSTER:<br>5 Q. Do you have any general memory?<br>7 THE WITNESS: In general terms, I -- you know,<br>8 I was being asked to kind of spot check an issue.<br>9 And it was a -- kind of a hypothetical issue that<br>10 we may be facing down the road. So I was spot<br>11 checking and that was an exclusion that came to<br>12 mind.<br>13 BY MS. CRAPSTER:<br>14 Q. Okay. But to be clear, this wasn't a<br>15 hypothetical that was being presented to you. You<br>16 understood that this was a real situation, that Dig was<br>17 being filmed in Israel and they were coming to you,<br>18 asking your opinion on whether moving Dig out of Israel<br>19 would be a covered loss, correct?<br>25 THE WITNESS: I don't remember particularly. | Plaintiff's Objections:<br>402, 403, 602 – Page 85.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. |
| Page 86<br>1 BY MS. CRAPSTER:<br>2 Q. So that wasn't -- that wasn't my question to<br>3 you. It wasn't -- my question was, You understood that<br>4 this was not a hypothetical scenario that was being<br>5 presented to you, right? You understood that there was<br>6 a real TV show that was being filmed in Israel, correct?<br>7 A. I understood that there was a real TV show | Plaintiff's Objections:<br>402, 403, 602 – Page 86.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of |

| Deposition Designation | Objection & Response |
|---|---|
| 8 being filmed in Israel. But where the scenario was<br>9 hypothetical was that at the time they asked me, "So<br>10 what if" -- "what if we decide to leave Israel?" To me,<br>11that's a hypothetical situation on which I was providing<br>12 an opinion.<br>13 Q. Okay. And your email indicates that you<br>14 had -- before sending the email, you had just discussed<br>15 this with Sandy, who you testified was Donald Aspinall,<br>16 correct?<br>17 A. Uh-huh. Yes. | claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. |
| <u>Page 88</u><br>9 Q.Okay. Ms. Adams, you've got UPC2866 in front<br>10 of you?<br>11 A.Yes, I do.<br>12 Q. Okay. And we've stamped that as 243?<br>13 A. Yes.<br>14 Q. So it looks to me like this is another email<br>15 that you sent to Randi Richmond, copying others, after<br>16 Randi had followed up with you because you hadn't copied<br>17 Randi on the previous email that we just stamped at<br>18 Exhibit 242. Does that sound correct to you?<br>19 A.I don't remember, yeah.<br>20 Q. Okay. So this is dated July 7th, 2014,<br>21 correct?<br>22 A. Yes. It looks like it. | <u>Plaintiff's Objections:</u><br>402, 403, 602 – Page 88.<br><br><u>Defendant's Response:</u><br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. |
| <u>Page 89</u><br>7 Q. Ms. Adams, I'm asking you about 2866, which<br>8 we've stamped as Exhibit 243. I'm on the first page,<br>9 and I'm looking at the email that's dated July 7th, 8:11<br>10 p.m., sent from you to Randi Richmond with cc's to<br>11 others. Are you with me?<br>12 A. Yes.<br>13 Q. Okay. Thank you. Okay. So this is dated<br>14 July 7th, 2014, correct?<br>15 A. Yes.<br>16 Q. The email that we previously looked at and we<br>17 stamped as Exhibit 242 was dated July 3rd, 2014; is that<br>18 correct?<br>19 A.Yes.<br>20 Q. Okay. So we're now four days later in time. | <u>Plaintiff's Objections:</u><br>402, 403, 602 – Page 89.<br><br><u>Defendant's Response:</u><br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. |

| Deposition Designation | Objection & Response |
|---|---|
| 21 And you are sending an email to Randi Richmond, stating<br>22 more or less what you had said in the earlier email to<br>23 Kurt Ford. Would you agree with that?<br>24 A. Generally speaking, I don't think it's exactly<br>25 the same but . | |
| Page 90<br>16 So you are reiterating the same position that<br>17 you stated four days earlier in what we marked as<br>18 Exhibit 242, correct?<br>22 THE WITNESS: Yes, generally speaking. I<br>23 don't think I used the exact same words but<br>24 generally the same intention.<br>25 BY MS. CRAPSTER: | Plaintiff's Objections:<br>402, 403, 602 – Page 90.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. |
| Page 91<br>1 Q. Okay. So four days later, it was still your<br>2 position that if there was an act of civil authority<br>3 shutting us down or if permits were pulled, then NBCU<br>4 might have some recourse, but even then you would say<br>5 that with caution because there's a war exclusion in<br>10 THE WITNESS: Yes, ·that's correct. Again, I<br>11 was answering a - - kind of a hypothetical that was<br>12 put in front of me. | Plaintiff's Objections:<br>402, 403, 602 – Page 91.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. |
| Page 92<br>1 MS. CRAPSTER: We'll mark this as Exhibit 244.<br>2 (Thereupon, Exhibit 244 was marked for<br>3 identification.)<br>4 BY MS. CRAPSTER:<br>5 Q. So, Ms. Adams, you're looking at the first<br>6 page of what we've marked as Exhibit 244. I think<br>7 there's an email kind of in the middle of the page dated<br>8 July 7th. It's sent from Randi Richmond to you. It<br>9 states, "Adding Binke, So if we pull out because | Plaintiff's Objections:<br>402, 403, 602 – Page 92.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, |

| Deposition Designation | Objection & Response |
|---|---|
| 10 security advises us to, we have no coverage."<br>11 Did I read that right?<br>12 A. I see the email, yeah.<br><br>Page 93<br>2 BY MS. CRAPSTER:<br>3 Q. So, Ms. Adams, does that appear to you to be<br>4 an email that Ms. Richmond wrote to you?<br>5 A. I have no reason to -- to believe it's not,<br>6 but I don't remember it specifically.<br>7 Q. Okay. And you -- it looks like you responded<br>8 to her. And it says, "Hi, Randi. 11 And then you went on<br>9 to reiterate the same position again, "I don't think we<br>10 can find coverage under the production policy. With<br>11 that said, if and when we have a clear idea of what we<br>12 may do, we can certainly bring it up to the carrier and<br>13 ask for a more formal opinion."<br>14 I just wanted to clarify. You're asking<br>15 your statement that you would be asking for a more<br>16 formal opinion. Had there been any conversations that<br>17 you know of with Atlantic at that point?<br>18 A.I don't remember.<br>19 Q. Okay. And then above that, Mr. Binke sends an<br>20 email to you and Randi Richmond with copies to others,<br>21 stating, "Let's discuss tomorrow. Please set a call."<br>22 Do you recall whether that telephone call that<br>23 he's asking to be set up ever did take place?<br>24 A. I don't remember.<br>25 Do you recall having any further involvements | and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge.<br><br>Plaintiff's Objections:<br>402, 403, 602 – Page 93.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. |
| Page 94<br>1 and discussions about this Dig claim and whether there<br>2 would be coverage for it other than what we've seen in<br>3 these emails?<br>4 A. I don't remember, no.<br>5 Q. Was this -- I mean, they were coming to you<br>6 with a coverage question. Was that in the normal course<br>7 and scope of your duties, to have someone come to you<br>8 with a question about coverage like this?<br>13      THE WITNESS:  And so part of my role was<br>14      advisory in nature.  So it was very common for<br>15      productions or any other people working at Comcast<br>16      or NBCUniversal who had questions about scenarios | Plaintiff's Objections:<br>402, 403, 602 – Page 94.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal |

| Deposition Designation | Objection & Response |
|---|---|
| 17    to call and say, Hey, we're thinking about doing<br>18    this.  What are the insurance implications?  Or,<br>19    you know, we -- this is -- this is<br>20    happening.  What do you think about it?  So it was<br>21    very -- it's very -- it was very typical in the<br>22    course of my day to run hundreds of what-if<br>23    scenarios and what we would have to look at and<br>24    kind of spot check the issues that we may be facing<br>25    with -- so these kind of emails, yes, would have<br><br>Page 95<br>1    been typical.<br><br>PLAINTIFFS' 106 COUNTER DESIGNATION:<br><br>Page 95<br>3· · · · Q.· ·Okay.· And what did you typically do in order<br>·4· ·to respond to a request like that?<br>·8· · · · · · ·THE WITNESS:· A lot of times it was very<br>·9· · · · general questions.· So using my general knowledge<br>10· · · · of the industry and of our programs, we would be<br>11· · · · able to answer those questions, again in general<br>12· · · · terms.· If and when there was a situation that<br>13· · · · warranted a policy review or a policy review was<br>14· · · · requested, then we would go ahead and pull the<br>15· · · · policy, but those generally didn't occur unless<br>16· · · · there was an actual claim.<br><br>END PLAINTIFFS' 106 COUNTER DESIGNATION<br><br><br><br>Page 97<br>3    MS. CRAPSTER:  So let's mark that as<br>4    Exhibit 245.<br>5    (Thereupon, Exhibit 245 was marked for<br>6  identification.)<br>7  BY MS. CRAPSTER:<br>8    Q.  So at the very top of that page that we've<br>9  just marked as Exhibit 245 -- it's UPC708.  That's from<br>10  Kurt Ford to Mark Binke.  He says, "Right before the<br>11  holiday, I spoke to Susan Weiss with Aon and Malika.<br>12  Malika didn't believe there would be coverage under the<br>13  corporate program and suggested I speak with Susan to | knowledge.<br><br><br><br><br><br>Plaintiff's Objections:<br>402, 403, 602 – 95:1.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge.<br><br><br><br><br><br>Plaintiff's Objections:<br>402, 403, 602, 802 – Page 97.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, |

| Deposition Designation | Objection & Response |
|---|---|
| 14   check if there's any coverage under our TV portfolio<br>15   policy.<br>16   Did I read that correctly?<br>17       A.  Yes.  That's what I'm seeing too.<br><br>PLAINTIFFS' 106 COUNTER DESIGNATION:<br>Page 99<br>16· · · ·Q.· ·Okay.· Were there multiple policies that you<br>17· ·considered in responding to -- in drafting the emails<br>18· ·that we marked as 242 and 243?· Are you -- is -- are you<br>19· ·analyzing coverage under multiple policies in those<br>20· ·emails?<br>21· · · · A.· ·No.<br>24· · · · · · ·THE WITNESS:· No.· As I explained before, I<br>25· · · · wasn't -- I wasn't analyzing policies.· I was spot<br><br>Page 100<br>1· · · · checking.· And when you spot check, I kind of think<br>·2· · · · about all the insurance programs that are in place.<br>·3· · · · And that's what I use to spot check an issue, but I<br>·4· · · · did not review any particular policies to answer<br>·5· · · · the hypothetical question I was asked.<br><br>END PLAINTIFFS' 106 COUNTER DESIGNATION<br><br><br>Page 102<br>1   BY MS. CRAPSTER:<br>2       Q.  Ms. Adams, I just want to go back and clarify<br>3   just a couple of things.  I've asked you about calls<br>4   that you remember on this issue.  Do you remember ever<br>5   having any conversations with anybody at Aon about the<br>6   Dig claim and whether there would be coverage for moving<br>7   the production out of Israel?<br>8       A.  No, not specifically.<br>9       Q.  And just to be clear, when you say "not<br>10   specifically," you -- you have no recollection<br>11   whatsoever; is that right?<br>12       A.  No.<br>13       Q.  Sorry.  I think you said no to my "is that<br>14   right" question.  You're saying you don't have any<br>15   recollection; is that clear?<br>16       A.   That's correct. | and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information.<br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 102.<br><br>Defendant's Response: |

## 2.   **MARK BINKE**

| Deposition Designation | Objection & Response |
|---|---|
| Defendant's Designation of Mark Binke<br>p. 10, l. 20-p. 10, l. 21; p. 11, l. 9-p. 11, l. 17; p. 12, l. 3-p. 12, l. 5; p. 14, l. 18-p. 15, l. 2; p. 17, l. 24-p. 18, l. 24; p. 25, l. 13-p. 26, l. 1; p. 26, l. 6-p. 26, l. 10; p. 26, l. 14-p. 26, l. 16; p. 26, l. 20;p. 27, l. 23-p. 27, l. 25; p. 28, l. 8-p. 28, l. 10; p. 28, l. 14-p. 28, l. 14; p. 29, l. 7-p. 29, l. 9; p. 29, l. 18-p. 30, l. 3; p. 30, l. 7-p. 30, l. 9; p. 30, l. 12-p. 30, l. 12 ; p. 31, l. 6-p. 31, l. 24; p. 32, l. 8-p. 32, l. 10; p. 32, l. 14-p. 32, l. 14; p. 32, l. 19-p. 32, l. 25; p. 33, l. 7-p. 33, l. 15; p. 33, l. 19-p. 33, l. 22; p. 34, l. 1-p. 34, l. 12; p. 34, l. 16-p. 34, l. 16; p. 42, l. 14-p. 42, l. 18; p. 42, l. 21-p. 42, l. 21; p. 43, l. 7-P 43, l. 12;p. 43, l. 25-p. 44, l. 1; p. 44, l. 5-p. 44, l. 20; P. 46, l. 23-p. 47, l. 7; p. 47, l. 11-p. 47, l. 20;p. 47, l. 23-p. 47, l 23; p. 48, l. 10-p. 48, l. 13; p. 48, l. 16-p. 48, l. 17; p. 48, l. 19-p. 48, l. 22; p. 50, l. 9-p. 50, l. 12; p. 51, l. 4-p. 51, l. 13; p. 57, l. 18-p. 57, l. 21; p. 57, l. 24-p. 57, l. 24; p. 58, l. 3-p. 58, l. 8; p. 58, l. 16-p. 58, l. 24; p. 60, l. 15-p. 60, l. 22; p. 61, l. 1-p. 61, l. 1; p. 61, l. 9-p. 62, l. 15; p. 62, l. 20-p. 63, l. 1; p. 63, l. 9-p. 63, l. 15; p. 63, l. 19-p. 63, l. 23; p. 64, l. 13-p. 64, l. 20; p. 68. l. 14-p. 68, l. 19; p. 68, l. 22-p. 68, l. 22; p. 69, l. 6- p. 69, l. 8; p. 69, l. 12-p. 69, l. 12; p. 72, l. 1-p. 72, l. 4; p. 72, l. 16-p. 72, l. 18; p. 72, l. 21-p. 72, l. 21; p. 73, l. 4-p. 73, l. 12; p. 76, l. 1-p. 76, l. 7; p. 76, l. 10-p. 77, l. 5; p. 77, l. 8-p. 77, l. 8; p. 86, l. 9-p. 86, l. 10; p. 87, l. 6-p. 87, l. 18; p. 88, l. 4-p. 88, l. 11; p. 92, l. 2-p. 92, l. 4; p. 92, l. 8-p. 92, l. 13; p. 94, l. 18-p. 94, l. 19; p. 96, l. 22-p. 97, l. 7; p. 98, l. 16-p. 99, l. 2; p. 99, l. 7-p. 99, l. 21; p. 100, l. 4-p. 100, l. 4; p. 100, l. 7-p. 100, l. 9; p. 100, l. 25-p. 101, l. 22; p. 104, l. 8-p. 104, l. 22; p. 114, l. 7-p. 114, l. 14; p. 114, l. 18-p. 115, l. 6;p. 115, l. 10-p. 115, l. 10; p. 116, l. 1-p. 116, l. 6; p. 116, l. 10-p. 117, l 5; p. 117, l. 8-p. 117, l. 8; p. 117, l. 22-p. 117, l. 25; p. 122, l. 20-p. 124, l. 7 | Plaintiffs object to Defendant's designations as follows.  Where line numbers are not included with a page number, plaintiffs object to all designated testimony on the page cited. |
| Page 10 | Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 20  Q State your name for the record.<br>21  A Mark Binke.<br><br>Page 11:<br>9  Q Okay. By whom are you employed, Mr. Binke?<br>10  A Universal Cable Productions.<br>11  Q What is your position with Universal Cable<br>12  Productions?<br>13  A Executive vice president of production.<br>14  Q What are your duties in that position?<br>15  A I guide and set the production strategy for<br>16  the studio. I oversee and manage the executives who<br>17  supervise the production of our shows. | No objection – Page 10.<br><br>Defendant's Response:<br><br>Plaintiff's Objections:<br>No objection – Page 11.<br><br>Defendant's Response: |
| Page 12<br>3  Q And how long have you had the position of<br>4  executive vice president of production with UCP?<br>5  A Over five years. | Plaintiff's Objections:<br>No objection – Page 12.<br><br>Defendant's Response: |
| Page 14<br>18  And did you have any role in connection<br>19  with a television show called DIG?<br>20  A I did.<br>21  Q What was your role?<br>22  A I'm head of production, so I assigned it to<br>23  my executive, Randi Richmond.<br>24  Q Okay. And then as that project proceeded,<br>25  then would she update you on the status of it from | Plaintiff's Objections:<br>No objection – Page 14.<br><br>Defendant's Response: |
| Page 15<br>1  time to time?<br>2  A Yes. | Plaintiff's Objections:<br>No objection – Page 15.<br><br>Defendant's Response: |
| Page 17<br>24  A So the pilot was shot in Canada and Israel.<br>25  Q Okay. | Plaintiff's Objections:<br>402, 403, MIL – Page 17.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the |

| Deposition Designation | Objection & Response |
|---|---|
| | loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 18<br>3  Q Did you have any role in the decision to do<br>4  some of the shooting in Israel?<br>5  A Can you be a little more specific.<br>6  Q Yeah. Did you -- okay. Somebody had to<br>7  decide that some of the shooting would take place in<br>8  Israel on DIG, correct?<br>9  A It's a collective decision. It's driven by<br>10  creative, by cost, by what the buyer is willing to<br>11  spend, by the scope of what we're attempting to do.<br>12  So there were a number of people involved in the<br>13  decision.<br>14  Q Okay. And were you involved in that<br>15  decision somewhat?<br>16  A Yes.<br>17  Q Okay. What was -- what was your<br>18  participation in that decision?<br>19  A To assess and oversee that the plan and the<br>20  budget were realistic. And to ensure that my<br>21  executives were doing the due diligence on the<br>22  ground to make sure that the infrastructure and the | Plaintiff's Objections:<br>402, 403, MIL – Page 18.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 23  support teams were robust enough to support a show<br>24  of that scale and scope.<br><br><br>Page 25<br>13  Q Okay. Let me ask you to take a look at<br>14  Exhibit 352. It was marked previously.<br>15  And the first Page is an email -- and I<br>16  realize you're not shown as a recipient, but what I<br>17  wanted to ask you was: There's an attachment to it<br>18  labeled "Crisis and Security Assessment April 2014."<br>19  And I just wanted to know if you remember seeing<br>20  this document.<br>21  A I don't.<br>22  Q By "this document," I'm talking about the<br>23  attachment to it.<br>24  A I don't recall.<br>25  Q Okay. Do you know who Stephen Smith is? | Plaintiff's Objections:<br>104a – 25:13-24.<br><br>402, 403, MIL – 25:13-25.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 26<br>1 A Yes.<br>6  Who is Stephen Smith? And that's with a<br>7  p-h.<br>8  A He was our security point.<br>9  Q In connection with DIG?<br>10  A Yes.<br>14  Q During the production of DIG, did you<br>15  receive reports from Stephen Smith concerning<br>20  THE WITNESS: Over the course of it, yes. | Plaintiff's Objections:<br>402, 403, MIL – Page 26.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged |

| Deposition Designation | Objection & Response |
|---|---|
| Page 27<br>23  Q All right. Mr. Binke, are you looking at<br>24   what was marked previously as Exhibit 113?<br>25   A I am. | unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>402, 403, MIL – Page 27.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 28<br>8   Q And the top one, the top email is dated<br>9   June 15, 2014, from Randi Richmond to Stephen Smith<br>10   and yourself, correct?<br>14   THE WITNESS: Yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION: | Plaintiff's Objections:<br>402, 403, MIL – 28:8-10; 28:14.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 28</u><br>15 BY MR. RIDDLE:<br>16 Q And also, one of the people it was<br>17 addressed to was Brian Brady, correct?<br>18 A That's what it says, yes.<br>19 Q With a copy to Erin Noordeloos, correct?<br>20 A Correct.<br>21 Q Okay. And then the email below is from<br>22 Stephen Smith to Randi Richmond also on June 15,<br>23 2014, correct?<br>24 A Correct.<br><u>END PLAINTIFFS' 106 COUNTER-DESIGNATION</u> | exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| <u>Page 29</u><br>7 Q Yeah. Do you have any reason to think you<br>8 did not receive this -- these emails?<br>9 A I do not.<br>18 Q And when -- when you received<br>19 communications such as this that contained reports<br>20 from Mr. Smith, did you generally make a practice of<br>21 reading those?<br>22 A Yes.<br>23 Q Okay. And did you, when you were reading<br>24 them, have any reason to doubt the accuracy of what<br>25 he was reporting to you? | <u>Plaintiff's Objections:</u><br>402, 403, MIL – Page 29.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| <u>Page 30</u><br>1 A No.<br>2 Q Did you rely on that information in<br>3 performing your job?<br>7 THE WITNESS: I'd look to Stephen to give | <u>Plaintiff's Objections:</u><br>402, 403, MIL – Page 30.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not |

| Deposition Designation | Objection & Response |
|---|---|
| 8  me guidance on how to keep our crew and cast safe.<br>9  That's what I read these for.<br>12  Exhibit 115, | substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 31<br>6  Q And he says:<br>7  "The current advise from MAX<br>8  Security, which has come in overnight<br>9  and as a result of further<br>10  deterioration of security, is to avoid<br>11  all activity in the Old City."<br>12  Do you see that?<br>13  A Yes.<br>14  Q Do you have an understanding of who --<br>15  who's being referred to by -- where it says<br>16  MAX Security?<br>17  MAX is in all caps.<br>18  A They were the local on-the-ground security<br>19  service that was ensuring the security and safety of<br>20  the crew.<br>21  Q In Israel?<br>22  A In Israel, yes.<br>23  Q Okay. And if you could take a look at<br>24  Exhibit 355. It's dated June 16. | <u>Plaintiff's Objections:</u><br>802 – 31:6-13.<br><br>402, 403, MIL – 31:6-24.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 32<br>8  Q Is that a portion of an email that<br>9  Randi Richmond sent to you and Richard Rothstein on<br>10  June 16, 2014, "Subject: DIG Issues"?<br>14  THE WITNESS: Yes.<br>19  Q Okay. And Ms. Richmond begins the email by<br>20  saying:<br>21  "Security is getting more<br>22  concerned about our presence in the<br>23  old city for Thursday night."<br>24  Correct?<br>25  A Correct. | Plaintiff's Objections:<br>402, 403, MIL – Page 32.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 33<br>7  Q Okay. And if you could take a look at<br>8  Exhibit 356.<br>9  A Okay.<br>10  Q The top email is -- is from Randi Richmond<br>11  to you on June 16, 2014, correct?<br>12  A Yes.<br>13  Q And below that is an email from<br>14  Stephen Smith to Ms. Richmond with a copy to<br>15  yourself and others, correct?<br>19  THE WITNESS: Yes.<br>20  BY MR. RIDDLE:<br>21  Q Okay. And the reference there is, "DIG,<br>22  Security Situation," correct? | Plaintiff's Objections:<br>402, 403, MIL – Page 33.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 34<br>1 THE WITNESS: Yes.<br>2 BY MR. RIDDLE:<br>3 Q In the second paragraph, it says:<br>4 "There is significant Israeli<br>5 Defense Force activity in the West<br>6 Bank and there has been an escalation<br>7 in tension across the region including<br>8 multiple arrests/detentions of Hamas<br>9 members and supporters, mortar fire an<br>10 demonstrations which have turned<br>11 violent."<br>12 Did I read that correctly?<br>16 THE WITNESS: Yes. | Plaintiff's Objections:<br>402, 403, MIL – Page 34.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 42<br>14 BY MR. RIDDLE:<br>15 Q Mr. Binke, I'm going to hand you a document<br>16 that's labeled Exhibit 407. I apologize for that<br>17 highlighting, but it's just the names.<br>18 And does this contain several emails?<br>21 THE WITNESS: Yes. | Plaintiff's Objections:<br>402, 403, MIL – Page 42.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process |

| Deposition Designation | Objection & Response |
|---|---|
| | surrounding the claim is relevant and not prejudicial. |
| | Plaintiff's Objections: |
| Page 43 | 402, 403, MIL – 43:7-12; 43:25. |
| 7  Ms. Richmond in your email? | |
| 8  A What I wrote to her was, "Given the | Defendant's Response: |
| 9  escalating conflict on the ground, need to know" | The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the |
| 10  tomorrow "morning what our insurance provides in the | loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it |
| 11  event we have to shut down for safety/security | will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is |
| 12  reasons. Who has been handling?" | conditional, and therefore not binding as to general admissibility. Objection also fails to state why |
| | exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or |
| PLAINTIFFS' 106 COUNTER-DESIGNATION: | why exhibit confuses the issue, misleads the jury, |
| Page 43 | wastes time, or is cumulative. Furthermore, high |
| 6 Could you read for us what you said to | probative value re: state of mind of all parties |
| END PLAINTIFFS' 106 COUNTER- | involved at the time of the claim. The jury is entitled |
| DESIGNATION | to know what information NBC, ASIC, and other parties had at time of the facts giving rise to |
| | Plaintiffs' claims. "MIL" not clear what objection |
| | intended; description of the facts and process |
| | surrounding the claim is relevant and not |
| | prejudicial. |
| | Plaintiff's Objections: |
| | 402, 403, MIL – Page 44. |
| Page 44 | |
| 1  you say "the escalating conflict on the ground"? | Defendant's Response: |
| 5  THE WITNESS: At that point in time, there | The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the |
| 6  were mortars and rockets being fired out of Gaza, | loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it |
| 7  so... | will not confuse the jury, waste time, and is not |
| 8  BY MR. RIDDLE: | unnecessarily cumulative. Further, F.R.E. 403 is |
| 9  Q And if you go two emails up on this | conditional, and therefore not binding as to general |
| 10  document, Exhibit 407, is that an email that you | admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged |
| 11  sent on July 7, 2014, to Kurt Ford? | unfair prejudice outweighs its probative value; or |
| 12  A Yes. | why exhibit confuses the issue, misleads the jury, |
| 13  Q And you say, "Things are escalating in the | wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties |
| 14  middle east and we have" senior team | involved at the time of the claim. The jury is entitled |
| management" -- | to know what information NBC, ASIC, and other parties had at time of the facts giving rise to |
| | Plaintiffs' claims. "MIL" not clear what objection |

| Deposition Designation | Objection & Response |
|---|---|
| 15  I'm sorry.<br>16  "Things are escalating in the middle east<br>17  and we have" senior team meeting tomorrow "am and<br>18  need to update the group. Thx."<br>19  Did I read that correctly?<br>20  A You did. | intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| <br>Page 46<br>23  BY MR. RIDDLE:<br>24  Q And if you can look at Exhibit 127.<br>25  Do you have that? | Plaintiff's Objections:<br>402, 403, MIL – Page 46.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 47<br>1  A I do.<br>2  Q Okay. The -- and this is also a series of<br>3  emails, correct?<br>4  A Yes.<br>5  Q And the top email is from Stephen Smith<br>6  dated June 30, 2014, to Ms. Richmond with a copy to<br>7  you, correct?<br>11  THE WITNESS: Yes. | Plaintiff's Objections:<br>402, 403, MIL – Page 47.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or |

| Deposition Designation | Objection & Response |
|---|---|
| 12  BY MR. RIDDLE:<br>13  Q And if you look at the third paragraph,<br>14  Mr. Smith says, "The delayed response to<br>15  this morning's attack may be an<br>16  indication that Israel is weighing a<br>17  potentially broader retaliation.<br>18  Which in turn will lead to targeting<br>19  of Israel from Gaza."<br>20  Is that what he stated?<br>23  THE WITNESS: That's what he wrote, yes. | why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| <u>Page 48</u><br>10  Q Yeah. Is this an example of a report that<br>11  you received in this -- reports you were receiving<br>12  in this time frame from Stephen Smith with his<br>13  updates on the security situation in Israel?<br>16  THE WITNESS: This is a report from<br>17  Stephen Smith's email.<br>19  Q And did you have any reason to doubt the<br>20  accuracy of what he was reporting to you at this<br>21  time?<br>22  A No. | <u>Plaintiff's Objections:</u><br>402, 403, MIL – Page 48.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| <u>Page 50</u><br>9  Q Okay. Well, let's take a look at<br>10  Exhibit 131, and if you would look at the first<br>11  email in particular.<br>12  A Yes. | <u>Plaintiff's Objections:</u><br>402, 403, MIL – Page 50.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its |

| Deposition Designation | Objection & Response |
|---|---|
| | probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 51<br>4  Q Okay. Okay. Would you read what you said<br>5  in that email?<br>6  A Yes. "Stephen, Israel hit hamas in<br>7  Gaza with several targeted strikes.<br>8  Would like to hop on the phone today<br>9  to discuss the ongoing security and<br>10  safety of our cast and crew. Want to<br>11  know what measures are being taken and<br>12  to ensure our employees are protected.<br>13  Thanks." | Plaintiff's Objections:<br>402, 403, MIL – Page 51.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 57<br>18  Q Okay. If you can take a look at<br>19  Exhibit 132, Mr. Binke. And does this document<br>20  contain an update from Stephen Smith dated July 1,<br>21  2014, that he provided to you and Ms. Richmond --<br>24  Q -- concerning security in Israel? | Plaintiff's Objections:<br>402, 403, MIL – Page 57.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind |

| Deposition Designation | Objection & Response |
|---|---|
| | of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 58<br>3  THE WITNESS: Yes.<br>4  BY MR. RIDDLE:<br>5  Q If you'd look down under the heading,<br>6  "Assessments," it's toward the bottom of the Page,<br>7  do you see that?<br>8  A Yes.<br>16  Q Would -- would you read that sentence aloud<br>17  for us.<br>18  A "Overall, the potential escalation<br>19  in hostilities in both the West Bank<br>20  and Gaza significantly increases the<br>21  possibility that Israel's Security<br>22  Cabinet could decide to launch a<br>23  scaled aerial offensive against Hamas<br>24  over the coming days." | <u>Plaintiff's Objections:</u><br>402, 403, MIL – Page 58.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 60<br>15  MS. COYOCA: 368?<br>16  MR. RIDDLE: Right.<br>17  Q Mr. Binke, is this an update on the<br>18  security situation from Mr. Binke -- I'm sorry.<br>19  Mr. Binke, is -- is this an update on the<br>20  security situation in Israel dated July 2nd, 2014,<br>21  that was provided to you and Ms. Richmond by<br>22  Stephen Smith? | <u>Plaintiff's Objections:</u><br>402, 403, MIL – Page 60.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, |

| Deposition Designation | Objection & Response |
|---|---|
| | ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 61<br>1  THE WITNESS: Yes.<br>9  Q Okay. Would you read the paragraph under<br>10  the heading, "Risk Implications" on the first Page<br>11  of Exhibit 368.<br>12  Would you read that for us.<br>13  A Sure.<br>14  "While both sides most likely want to<br>15  avoid a broad confrontation similar to<br>16  that of December 2012, the risk of<br>17  unintended escalation is now higher.<br>18  The most likely Israeli response to<br>19  the deaths of the teenagers includes<br>20  targeted killings of Hamas leaders, as<br>21  well as airstrikes on known weapon"<br>22  cache -- "caches and rocket launch<br>23  sites in Gaza. A broader Gaza war<br>24  would become more likely if Hamas and<br>25  other Gaza-based militants responded | Plaintiff's Objections:<br>402, 403, MIL – Page 61.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 62<br>1  with several dozen rockets per day<br>2  into southern Israel over a sustained<br>3  period. A broader war" could --<br>4  "would result in a much higher<br>5  likelihood of Hamas using Fajr-5<br>6  rockets, capable of reaching Tel Aviv.<br>7  It would also make it more difficult<br>8  for Palestinian Authority security<br>9  services to contain civil unrest in<br>10  the West Bank, and prevent Palestinian<br>11  civilians from protesting at the<br>12  Wall."<br>13  Q Did you attach any significance at the time | Plaintiff's Objections:<br>402, 403, MIL – Page 62.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts |

| Deposition Designation | Objection & Response |
|---|---|
| 14  to the fact that Mr. Smith referred to "a broader<br>15  Gaza war" and "a broader war" in this email?<br>20  THE WITNESS: I was reading this to see<br>21  what -- what advice Stephen Smith was providing to<br>22  ensure that the crew and the cast would be safe.<br>23  BY MR. RIDDLE:<br>24  Q Did you ever ask him why he referred to<br>25  "war" in his update? | giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 63<br>1  A No.<br>9  And you've got 373? You're looking at that<br>10  now, correct?<br>11  A Yes.<br>12  Q Okay. If you look at the -- email<br>13  that's at the top of the Page, is that one from<br>14  Ms. Richmond dated July 7, 2014, to yourself and<br>15  Malika Adams?<br>19  THE WITNESS: Yes.<br>20  BY MR. RIDDLE:<br>21  Q Do you have any -- any understanding as to<br>22  who Malika Adams is?<br>23  A Here it has a -- she worked at Comcast. | Plaintiff's Objections:<br>402, 403, MIL – Page 63.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 64<br>13  Q Okay. And then the one below that from<br>14  Ms. Adams to Ms. Richmond states in the -- that, "So<br>15  far if the only assumption is that we are<br>16  voluntarily pulling out of a certain area because of<br>17  security concerns, I don't think we would have<br>18  coverage for this."<br>19  Do you see that language? | Plaintiff's Objections:<br>402, 403, MIL – Page 64.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not |

| Deposition Designation | Objection & Response |
|---|---|
| 20  A Yes. | binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 68<br>14  Q Okay. If you can -- if we can have you<br>15  look at Exhibit 300.<br>16  And looking at the email on the top of the<br>17  first Page of the document, Mr. Binke, does this<br>18  indicate that you were copied on an email from<br>19  Malika Adams on July 7, 2014?<br>22  THE WITNESS: It does. | Plaintiff's Objections:<br>402, 403, MIL – Page 68.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 69<br>6  Q Okay. And Ms. Adams says, "Hi randi, if<br>7  it's purely" voluntary, "I don't think we can find<br>8  coverage under the production policy," correct?<br>12  THE WITNESS: That's what's written. | Plaintiff's Objections:<br>402, 403, MIL – Page 69.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or |

| Deposition Designation | Objection & Response |
|---|---|
| | why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 72<br>1  Q If we can have you look at Exhibit 375.<br>2  The email at the top of the Page is from<br>3  Randi Richmond to yourself on July 8, 2014, correct?<br>4  A Correct.<br>16  Q And the email that was forwarded to you<br>17  from Mr. Smith, the subject is, "DIG Israel," and it<br>18  begins by saying, "The latest info," correct?<br>21  THE WITNESS: Yes. | Plaintiff's Objections:<br>402, 403, MIL – Page 72.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 73<br>4  Q Would you read that first sentence for us.<br>5  A "Cross-border fire between the Israeli<br>6  Defense Forces (IDF) and Gaza-based<br>7  militants escalated during the evening<br>8  hours of July 7, as the Israeli<br>9  government reportedly instructed the<br>10  IDF to steadily intensify attacks in<br>11  the Gaza Strip to counter rocket and<br>12  mortar fire." | Plaintiff's Objections:<br>402, 403, MIL – Page 73.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or |

| Deposition Designation | Objection & Response |
|---|---|
| | why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 76<br>1  If you would -- if we can have you look at<br>2  Exhibit 382. Is that an email from Stephen Smith to<br>3  yourself and others including Ms. Richmond entitled,<br>4  "09 July Security Update"?<br>5  A Yes.<br>6  Q And there's some language that's in bold<br>7  print and underlined under, "Assessments," correct?<br>8  MS. COYOCA: Objection. The document<br>9  speaks for itself.<br>10  THE WITNESS: Yes.<br>11  BY MR. RIDDLE:<br>12  Q Would you read that language for us.<br>13  A "In this context, additional rockets<br>14  against Tel Aviv, Jerusalem, and other<br>15  major population centers in central<br>16  Israel should be expected for the<br>17  duration of July 9th. In line with<br>18  Israel's overnight response, Israel is<br>19  likely to view this morning's barrage<br>20  as a further escalation and will<br>21  likely continue to respond with more<br>22  extensive attacks against Gaza" --<br>23  "against the Gaza Strip within the<br>24  next 24 to 48 hours."<br>25  Q And then above that Mr. Smith reported, | Plaintiff's Objections:<br>402, 403, MIL – Page 76.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial |

| Deposition Designation | Objection & Response |
|---|---|
| Page 77<br>1  "Overnight, Israel reportedly struck<br>2  some 160 militant targets in the Gaza<br>3  Strip, in addition to killing a senior<br>4  Islamic Jihad leader and members of<br>5  his family," correct?<br>8  THE WITNESS: Yes. | Plaintiff's Objections:<br>402, 403, MIL – Page 77.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 86<br>9  Nevertheless. Okay. You've got 392 now?<br>10  A I do. | Plaintiff's Objections:<br>402, 403, MIL – Page 86.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and |

| Deposition Designation | Objection & Response |
|---|---|
| | not prejudicial. |
| Page 87<br>6  Q Okay. Looking down at the third email, do<br>7   you recall receiving that email from Stephen Smith<br>8   on July 10, 2014? It's the one that says 8:09 A.M.<br>9  A Yes, I do.<br>10  Q Okay. And then in the middle email, you<br>11   say, "The team will be working with you as they make<br>12   exit plans."<br>13   What do you -- what does that mean?<br>14  A It means the team on the ground would be<br>15   working with him as they made exit plans.<br>16   Q Was there a decision made by UCP at some<br>17   point to suspend production in Israel?<br>18  A Yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br>Page 87<br>20 A When you -- can you --<br>22 A -- be clear on "suspend."<br>23 Do you mean push?<br>24 Q That's -- I've seen that term used.<br>25 When you say "push," what do you mean by<br>END PLAINTIFFS' 106 COUNTER-DESIGNATION | Plaintiff's Objections:<br>402, 403, MIL – 87:6-18.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 88<br>4  Q Okay. Was there a decision made to<br>5   push product -- is that how you say it, "push<br>6   production"?<br>7  A Yes.<br>8   Q Okay. Was there a decision made to push<br>9   production in the July 2014 time frame relating to<br>10   DIG, as far as Israel was concerned? | Plaintiff's Objections:<br>402, 403, MIL – 88:4-11.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not |

| Deposition Designation | Objection & Response |
|---|---|
| 11  A There was.<br><br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br>106 counter:<br><u>Page 88</u><br><u>1 that, just so we're clear?</u><br><u>2 A It means that you are not shooting. You're</u><br><u>3 not in production shooting.</u><br><u>END PLAINTIFFS' 106 COUNTER-</u><br><u>DESIGNATION</u><br><br><br><u>PLAINTIFFS' 106 COUNTER-DESIGNATION:</u><br><u>Page 91</u><br>19 Q Now, are you saying that there was a group<br>20 decision made to push the production?<br>24 THE WITNESS: Yeah, there was a collective<br>25 discussion about the situation.<br><u>END PLAINTIFFS' 106 COUNTER-</u><br><u>DESIGNATION</u><br><br><br><br><u>Page 92</u><br>2  Q Okay. But what -- who was the -- well,<br>3  was -- who was the person or persons who made the<br>4  decision, okay, we're going to push production?<br>8  THE WITNESS: It was a recommendation made<br>9  to Jeff Wachtel advising him that we think it makes<br>10  sense to push.<br>11  BY MR. RIDDLE:<br>12  Q Who made that recommendation?<br>13  A That was me. | unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br><br><br><br><br><br><br><br><u>Plaintiff's Objections:</u><br>402, 403, MIL – Page 92.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process |

748

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page</u> 94<br>18  Q Okay. This was previously marked as<br>19   Exhibit 311. | surrounding the claim is relevant and not prejudicial.<br><br><br><u>Plaintiff's Objections:</u><br>402, 403, MIL – Page 94.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| <u>Page</u> 96<br>22   This is from Brian Brady to Kurt Ford. It<br>23   says:<br>24   "It looks like the filming is<br>25   going to be halted until things settle | <u>Plaintiff's Objections:</u><br><br>402, 403, MIL – Page 96.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative |

| Deposition Designation | Objection & Response |
|---|---|
| | value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 97<br>1  down. Tom McCarthy, the chief<br>2  security officer for the company, will<br>3  be talking to production today."<br>4  Does that jog your memory as to the date<br>5  that the decision made was -- to push production was<br>6  July 10, 2014?<br>7  A I believe it was on the 10th, yes. | Plaintiff's Objections:<br>402, 403, MIL – Page 97.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 98<br>16  Q Okay. If you can look at Exhibit 181.<br>17  Is this an update on the security situation<br>18  in Israel from Stephen Smith to you and Ms. Richmond<br>19  on July 11, 2014?<br>22  THE WITNESS: Yeah, it is.<br>23  BY MR. RIDDLE:<br>24  Q Okay. And it starts off:<br>25  "Increased reports over imminent | Plaintiff's Objections:<br>402, 403, MIL – 98:16-25.<br><br>IO – 98:20-21.<br><br>Defendant's Response:<br>IMPROPERLY INCLUDED OBJECTION REMOVED. The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, |

| Deposition Designation | Objection & Response |
|---|---|
| | F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 99 | |
| 1   ground incursion by Israeli troops," | Plaintiff's Objections: |
| 2   correct? | 402, 403, MIL – Page 99. |
| 7   THE WITNESS: Yes. | |
| 8   BY MR. RIDDLE: | Defendant's Response: |
| 9   Q And if you look about halfway down the | The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| 10   Page, do you see where it says: | |
| 11   "The IDF continues to carry out | |
| 12   air strikes on targets in the Gaza | |
| 13   Strip ..."? | |
| 14   A Yes. | |
| 15   Q And then further on it says: | |
| 16   "Following a security cabinet | |
| 17   meeting, Prime Minister Benjamin | |
| 18   Netanyahu stated that operations will | |
| 19   escalate and continue until attacks on | |
| 20   Israeli citizens come to a halt," | |
| 21   correct? | |
| | |
| Page 100 | Plaintiff's Objections: |
| 4   THE WITNESS: That's what it says. | 402, 403, MIL – Page 100. |
| 7   If you can look at Exhibit 29. Oh, | |
| 8   actually, I've got copies over here. Never mind. | Defendant's Response: |
| 9   There you go. | The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is |
| 25   Q First, let me ask you: When the -- it was | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 101<br>1  decided to push the production, was -- was that for<br>2  a set period of time?<br>3  A Yes.<br>4  Q And how long was that?<br>5  A It was a one-week push.<br>6  Q In the middle email, you see that that's<br>7  from Ms. Garber to Ms. Richmond with a copy to<br>8  yourself and Kurt Ford?<br>9  A Yes.<br>10  Q And do you see in the middle -- well, I<br>11  guess it's the second paragraph in her email, she<br>12  says:<br>13  "If there is an actual<br>14  'declaration of war' we will have an<br>15  issue with coverage under the policy<br>16  because there is a broad exclusion for<br>17  acts of war. The exclusion includes<br>18  'war-like acts' but the carrier did<br>19  not bring this up when I spoke to<br>20  them."<br>21  Do you see that?<br>22  A Yes.<br><br>Page 104 | not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>402, 403, MIL – Page 101.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 8  Q At some point did UCP make a decision to<br>9  move the production out of Israel as opposed to the<br>10  decision to have the one-week push?<br>11  A Yes.<br>12  Q Okay. And did you have any input into that<br>13  decision?<br>14  A I did.<br>15  Q Okay. Who -- who else -- who else was<br>16  involved in making that decision?<br>17  A Maya Windholz, our lawyer, was part of the<br>18  meeting. Richard Rothstein, Steve Dolcemaschio,<br>19  Eric Gray, Andrea Garber, myself.<br>20  Q Is it the same group that was involved in<br>21  the discussion about the push?<br>22  A More or less, yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br>Page 89<br>5 Q Were you -- were you involved in the<br>6 decision to push production –<br>9 Q -- in July 2014?<br>12 THE WITNESS: Yes, I was one of the people<br>13 involved.<br>14 BY MR. RIDDLE:<br>15 Q Okay. Who were the others that were<br>16 involved?<br>17 A Risk management, Richard Rothstein, legal<br>18 was there, Steve Dolcemaschio, our CFO, is what I<br>19 recall.<br>20 Q Who was the CFO at that time?<br>21 A Eric Gray.<br><br>Page 91<br>3 Q Okay. All right. Now, let me first ask:<br>4 When you say "risk management," are you -- is that a<br>5 particular person that was involved?<br>6 A Andrea Garber.<br>7 Q Okay. How about when you say "legal"? Who<br>8 are you referring to there in particular, if you<br>9 know? | Plaintiff's Objections:<br>402, 403, MIL – Page 104.<br><br>106 counter:<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 10 A Maya Windholz.<br>11 Q And is she an in-house attorney for UCP, to<br>12 your knowledge?<br>16 Q At that point in time, what did you<br>17 understand her position to be?<br>18 A She was our legal point.<br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION | |
| Page 114<br>7  Q Mr. Binke, this has been marked as<br>8  Exhibit 4- -- 409.<br>9  A Uh-huh.<br>10  Q And is this an email from Tom McCarthy to<br>11  you on July 17, 2014?<br>12  A Yes.<br>13  Q Okay. And he says, "Mark - We made the<br>14  right call. See below," correct?<br>18  THE WITNESS: Yes.<br>19  BY MR. RIDDLE:<br>20  Q Okay. And, at that time, was Tom McCarthy<br>21  the chief security officer and senior vice president<br>22  for NBCUniversal?<br>23  A That's what it says on his -- on his email.<br>24  Q Okay. You don't have any reason to think<br>25  that's not accurate, do you? | Plaintiff's Objections:<br>402, 403, MIL – Page 114.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 115<br>1  A I don't. | Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 2  Q Okay. And then down below where he says,<br>3  "See below," there's a forwarded message that says,<br>4  "Israeli" defenses "confirm in statement they have<br>5  initiated a ground operation within the Gaza Strip,"<br>6  correct?<br>10  THE WITNESS: Yes.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Page 116<br>1  Q Can -- would you take a look at<br>2  Exhibit 196.<br>3  A Okay.<br>4  Q Is that a -- is that a security update that<br>5  you received from Stephen Smith that was sent on<br>6  July 18, 2014?<br>10  THE WITNESS: Yes.<br>11  BY MR. RIDDLE:<br>12  Q Would you read the second paragraph out<br>13  loud.<br>14  A "Info from various sources; over<br>15  100 targets, including rocket<br>16  launching sites and underground<br>17  tunnels, were targeted throughout Gaza<br>18  during the overnight hours of July 17"<br>19  and "18 as more Israeli troops and<br>20  armor advanced into Gaza. Fourteen<br>21  Hamas militants were reportedly killed<br>22  in Israeli" air stri- -- "attacks, | 402, 403, MIL – Page 115.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>402, 403, MIL – Page 116.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts |

| Deposition Designation | Objection & Response |
|---|---|
| 23  while the Israeli Defense Forces (IDF)<br>24  sustained its first fatality after a<br>25  soldier was killed by light arms<br><br>Page 117<br>1  fire."<br>2  Q And then can you look at Exhibit 220.<br>3  Is that a security update that was provided<br>4  to you by Stephen Smith that he sent on July 21,<br>5  2014?<br>8  THE WITNESS: Yes. | giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>402, 403, MIL – Page 117.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 122<br>20  BY MR. RIDDLE:<br>21  Q And were -- did you have any involvement in<br>22  the decisions to resume shooting in Croatia and in<br>23  Albuquerque? | Plaintiff's Objections:<br>402, 403, MIL – 122:20-25.<br><br>IO – 122:24-25.<br><br>Defendant's Response:<br>OBJECTION REMOVED FROM DESIGNATION. The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the |

| Deposition Designation | Objection & Response |
|---|---|
| | loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 123<br>2  THE WITNESS: Yeah, we didn't resume<br>3  shooting. We began shooting.<br>4  BY MR. RIDDLE:<br>5  Q Okay. Because that -- you're saying that<br>6  because you -- you did -- you completed the pilot in<br>7  Israel, correct?<br>8  A Yes.<br>9  Q And then you shifted to filming Episodes 2<br>10  through 6, correct?<br>11  A Yes.<br>12  Q Okay. So did you -- did you have any --<br>13  any involvement in the decision to choose Croatia<br>14  and Albuquerque to film Episodes 2 through 6?<br>15  A Yes, I was involved.<br>16  Q Okay. And why were those locations chosen?<br>17  A So Albuquerque had the infrastructure and<br>18  resources to support the scope and scale of what we<br>19  established in Israel. It has great infrastructure.<br>20  We've shot there successfully in the past. They had<br>21  stages that we could build, re-create the sets we | Plaintiff's Objections:<br>402, 403, MIL – 123:1-25.<br><br>IO – 123:1.<br><br>Defendant's Response:<br>OBJECTION REMOVED FROM DESIGNATION. The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to |

| Deposition Designation | Objection & Response |
|---|---|
| 22  had already built.<br>23   Croatia, specifically, had the appropriate<br>24   stone that matched Jerusalem, and we were lucky<br>25   enough to be able to field a crew and shoot there.<br><br><br>Page 124<br>1  Q Do you -- do you recall when those<br>2  locations were chosen?<br>3  A Not exactly.<br>4  Q What's the closest you can pin it down?<br>5  A It was in July.<br>6  Q Of 2014?<br>7  A Correct. | Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br><br><br><br>Plaintiff's Objections:<br>402, 403, MIL – Page 124.<br><br>Defendant's Response:<br>OBJECTION REMOVED FROM DESIGNATION. The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

**3.     DENNIS CROSBY (30(b)(6))—May 15, 2017**

| Deposition Designation | Objection & Response |
|---|---|
| Defendant's Designation of Dennis Crosby 30 (b) (6) Deposition May 15, 2017:<br><br>p. 5, l. 3-p. 5, l. 22;<br><br><br>Page 5<br>3  Q Good afternoon, Mr. Crosby. 05:23<br>4  A Good afternoon, sir. 05:23<br>5  MR. HAYES: This is going to be 05:23<br>6  Exhibit 1. 05:23<br>7  (Deposition Exhibit 1 marked.) 05:24<br>8  BY MR. HAYES: 05:24<br>9  Q Do you recognize the document marked 05:24<br>10  Exhibit 1? 05:24<br>11  A I do not. I have never seen it. 05:24<br>12  Q I want you to turn to the pages marked 11 05:24<br>13  and 12. And I'd like you to read to yourself the 05:24<br>14  topics marked 48 and 49 and let me know when you're 05:24<br>15  done. 05:24<br>16  A (Witness reviews document.) 05:24<br>17  48 and 49, correct? 05:24<br>18  Q Yes. 05:24<br>19  A I've read them. 05:24<br>20  Q Have you been designated to testify on 05:25<br>21  behalf of Atlantic in response to those topics? 05:25<br>22  A Yes, I have. 05:25 | Plaintiff's Objections:<br>No objection<br><br>Defendant's Response: |

4.     **DENNIS CROSBY (non-30(b)(6))—May 15, 2017**

| Deposition Designation of Dennis Crosby | Objection & Response |
|---|---|
| Defendant's Designation of Dennis Crosby May 17, 2017<br><br>p. 68, 1. 3-p. 68, 1. 15; p. 155, 1. 15-p. 158, 1. 18; p. 232, 1. 20- p. 233, 1. 11; p. 233, p. 21- p. 234, p. 3. | Plaintiffs object to Defendants' designations as follows: |
| Page 68<br>3 General responsibilities of a president and CEO?<br>4 A Yes.<br>5 Q And how long did you work in that<br>6 capacity at Ace Westchester?<br>7 A Seven years.<br>8 Q So since 2003?<br>9 A Roughly 2004, yeah. So it was end of '3<br>10 into '4. I don't recall exactly it.<br>11 Q What did you do before Ace Westchester?<br>12 A I worked for St. Paul Travelers.<br>13 Q What did you do at St. Paul Travelers?<br>14 A I was the president of the middle market<br>15 insurance group. | Plaintiff's Objections:<br>No objection<br><br>Defendant's Response: |
| Page 155<br><br>15 Q Can you recall any instance in which you<br>16 discussed the Dig claim with anyone other than<br>17 outside counsel?<br>18 A No.<br>19 MR. HAYES: This is going to be<br>20 Exhibit 5.<br>21 (Deposition Exhibit 5 marked.)<br>22 MR. HAYES: This is actually a document<br>23 you delivered to me today, Mr. Keeley, and I only<br>24 have two copies.<br>25 MR. KEELEY: Let me see what it is. | Plaintiff's Objections:<br>No objection<br><br>Defendant's Response: |

| Deposition Designation of Dennis Crosby | Objection & Response |
|---|---|
| <u>Page 156</u><br>1 BY MR. HAYES:<br>2 Q Do you recognize the document marked<br>3 Exhibit 5?<br>4 A It appears to be the same document as<br>5 Exhibit 4 without my forwarding, so, yes, I do<br>6 recognize this document.<br>7 Q Did you send the email at the top of<br>8 Exhibit 5 to Sean Duffy on July 23rd, 2014?<br>9 A Yes.<br>10 Q Here you say: Thanks, looks good to me.<br>11 What were you referring to?<br>12 A Claim position.<br>13 Q So is it correct that you reviewed the<br>14 decision to deny the Dig claim?<br>15 A With the correspondence that you've given<br>16 me, yes.<br>17 Q And do you recall reviewing the decision<br>18 to deny the Dig claim?<br>19 A I recall reviewing these emails around<br>20 the decision to deny the Dig claim.<br>21 Q Do you recall reviewing anything else<br>22 other than the email chain marked Exhibit 5 and the<br>23 email chain marked Exhibit 4 and any attachments to<br>24 those emails?<br>25 A No, I do not. | |
| <u>Page 157</u><br>1 Q When an insurance claim is made at<br>2 OneBeacon, do you ever have a say in whether or not<br>3 that claim is paid?<br>4 A No, I do not.<br>5 Q You never have a say --<br>6 A Never.<br>7 Q -- is that right? | <u>Plaintiff's Objections</u>:<br>157:1-15 – 402, 403;<br>157:16-19 – IO;<br>157:20-21 – 402, 403;<br>157:22 – IO;<br>157:23-25 – 402, 403<br><br><u>Defendant's Response</u>: |

| Deposition Designation of Dennis Crosby | Objection & Response |
|---|---|
| 8 A That's correct.<br>9 Q Does anyone in the underwriting group<br>10 ever have a say on whether or not an insurance<br>11 claim is paid?<br>12 A No, they do not.<br>13 Q Are underwriters consulted on whether or<br>14 not an insurance claim should be paid at OneBeacon?<br>15 A No.<br><br>20 BY MR. HAYES:<br>21 Q Why not?<br><br>23 A No. 02:58<br>24 BY MR. HAYES:<br>25 Q Why not?<br><br><u>Page 158</u><br>1 A Sorry, more specifics.<br>2 Q Insurance claim comes in --<br>3 A Uh-huh.<br>4 Q -- are you with me? Yes?<br>5 A Yes.<br>6 Q Is the underwriting group ever consulted<br>7 by the claims group in the evaluation of whether or 0<br>8 not to pay the claim?<br><br>11 A They are not.<br>12 BY MR. HAYES:<br>13 Q Is the underwriting group ever consulted<br>14 on the meaning of the insurance policy in the<br>15 context of an insurance claim?<br><br>18 A I'm not aware that that ever happens.<br><br><u>Page 232</u> | Objections removed to "IO"<br><br>Testimony is relevant to the extent Plaintiffs' contend improper involvement of underwriters; rebuttal<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><u>Plaintiff's Objections:</u><br>158:1-8 – 402, 403;<br>158:9-10 – IO;<br>158:11-15 – 402, 403;<br>158:16-17 – IO;<br>158:18 – 402, 403<br><br><u>Defendant's Response:</u><br>"IO"s removed.<br><br>Testimony is relevant to the extent Plaintiffs' |

| Deposition Designation of Dennis Crosby | Objection & Response |
|---|---|
| 20 Q Okay. So are you certain that the<br>21 overall profitability of the NBC Universal account<br>22 was not considered in deciding whether or not to<br>23 deny the Dig claim?<br>24 A 150 percent certain.<br>25 Q How are you certain?<br><br>Page 233<br>1 A I'm responsible for the P&L. My<br>2 reputation, what I do, yes, that would never, ever<br>3 happen.<br>4 Q Well, I thought you had nothing to do<br>5 with the decision to deny the Dig claim?<br>6 A I get paid for the P&L, not the claim<br>7 department. The claim department is responsible<br>8 for handling claims, that's what they do, right? I<br>9 don't exert influence or authority. Or anyone in<br>10 the underwriting organization doesn't assert any<br>11 amount of authority over the claim department.<br><br>21 Q My statement that you do not know what<br>22 was considered in deciding whether to deny the Dig<br>23 claim?<br>24 A You are absolutely --<br><br>Page 234<br>1 A You're absolutely correct. Because I'm<br>2 not in the claim department and I don't control<br>3 what the claim department does. | contend improper involvement of underwriters; rebuttal<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>233:25 – IO<br><br>Defendant's Response:<br><br>"IO" removed. |

5.    **SEAN DUFFY**

| Deposition Designation | Objection & Response |
|---|---|
| Defendant's Designation of Sean Duffy<br>p. 8, l. 3-p. 8, l. 16; p. 9, 9-20; p. 13, 1. 25-p. 14, 1. 7; p. 18, 1. 18-p. 18, 1. 24; p. 19, 1. 13- p. 19, 1. 24; p. 20, 1. 8- p. 20, 1. 16.; p. 26, l. 12-p. 26, l. 14; p. 27, 1. 14-p. 28, 1. 23; p. 29, 1. 19-p. 29, 1. 25; p. 30, l. 22-p. 30, l. 23; p. 34, 1. 8-p. 34, 1. 22; p. 103, l. 17-p. 104, 1. 21; p. 133, l. 15-p. 136, l. 4; p. 191, l. 6-p. 192, l. 19; p. 193, l. 3-p. 194, l. 3; p. 235, l. 8-p. 235, l. 12; p. 236, 1. 9-13; p. 237, 1. 7-p. 237, 1. 9<br><br>Page 8<br>3 Where do you work? 10:00:54<br>4 A. OneBeacon Insurance Group. 10:00:55<br>5 Q. What is your title? 10:01:00<br>6 A. Senior vice-president and chief claims 10:01:01<br>7 officer. 10:01:04<br>8 Q. How long have you worked at OneBeacon? 10:01:06<br>9 A. I began in April of 2010. 10:01:08<br>10 Q. And what was your title in April 2010? 10:01:14<br>11 A. Same title. 10:01:16<br>12 Q. Have you had any other titles since being at 10:01:18<br>13 OneBeacon? 10:01:22<br>14 A. No. 10:01:23<br>15 Q. What are your job responsibilities? 10:01:23<br>16 A. I manage the claims operation. 10:01:25<br><br>Page 9<br><br>9 Q. Do you supervise any OneBeacon employees? 10:02:10<br>10 A. I do. 10:02:24<br>11 Q. Who do you supervisor? 10:02:25<br>12 A. The entire operation. 10:02:27 | Plaintiffs object to Defendants' designations as follows.  Where line numbers are not included with a page number, plaintiffs object to all designated testimony on the page cited. |

| Deposition Designation | Objection & Response |
|---|---|
| 13 Q. What operation? 10:02:29<br>14 A. Claims. 10:02:30<br>15 Q. Do you know how many employees there are in<br>16 the claims operation? 10:02:43<br>17 A. It would be approximate, given openings, 10:02:46<br>18 approximately 205. 10:02:50<br>19 Q. In what locations? 10:02:54<br>20 A. Various locations throughout the country. 10:02:56<br><br>Page 13<br><br>25 Q. Underwriting is a separate department at 10:10:55<br><br>Page 14<br><br>1 OneBeacon, correct? 10:10:57<br>2 A. Correct. 10:10:58<br>3 Q. Who is the head of underwriting? 10:10:58<br>4 A. Dennis Crosby. 10:11:00<br>5 Q. On the org chart, are you and Dennis Crosby 10:11:08<br>6 parallel to each other? 10:11:12<br>7 A. We are peers. 10:11:16<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 17<br><br>23 Q. IT and operations, Linda Fossing, does she 10:17:38<br>24 manage any employees? 10:17:41<br>25 A. She has a very large operation, yes, both in 10:17:42<br>Page 18 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1 terms of operations and IT employees. 10:17:50<br>2 Q. Can you tell me generally the 10:17:52<br>3 responsibilities of the employees that she 10:17:54<br>4 manages? 10:17:57<br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 18<br><br>18 THE WITNESS: So Linda manages the 10:18:30<br>19 process of claims intake for the company, 10:18:32<br>20 where claims are reported. She manages 10:18:34<br>21 compliance, including regulatory compliance, 10:18:41<br>22 SOX compliance with our claims activities. 10:18:48<br>23 She manages IT projects that are done by the 10:18:52<br>24 IT department on behalf of claims.<br><br>Page 19<br><br>12 A. I don't know. 10:19:24<br>13 Q. You said the process of claims intake. 10:19:28<br>14 What did you mean? 10:19:32<br>15 A. People report claims. They are then assigned 10:19:33<br>16 to the correct adjusters. 10:19:39<br>17 Q. And Linda is responsible for that process? 10:19:41<br>18 A. Correct. 10:19:44<br>19 Q. And how is the correct adjuster determined? 10:19:46<br>20 A. It depends on the line of business, the 10:19:52<br>21 business unit, and the system assists us in 10:19:54<br>22 identifying the correct location, and if 10:19:57<br>23 necessary, consulting with the business line 10:20:01 | |

| Deposition Designation | Objection & Response |
|---|---|
| 24 leads or their managers. 10:20:03 | |

Page 20

8 Q. So if the claim is on a policy written by the 10:20:27
9 entertainment unit, the system would assign 10:20:33
10 it to a claims adjuster within the 10:20:37
11 entertainment division; is that accurate? 10:20:40
12 A. The system would assist one of the intake 10:20:42
13 personnel in assigning the claim. 10:20:46
14 Q. So it's a human being who does the 10:20:48
15 assignment? 10:20:51
16 A. Correct. 10:20:51

Page 26

12 Q. Okay. So are you familiar with the Dig 10:27:26
13 claim? 10:27:29
14 A. Yes. 10:27:30

Page 27

14 Q. Okay. When a claim involves a specialized 10:28:28
15 product, how does OneBeacon determine what 10:28:30
16 adjuster to assign to the claim? 10:28:32
17 A. It varies by business unit. 10:28:34
18 Q. Let's talk about the entertainment unit. 10:28:35
19 A. So they have individuals within the unit who 10:28:37
20 are identified as handling those types of 10:28:40

| Deposition Designation | Objection & Response |
|---|---|
| 21 claims. 10:28:42<br>22 Q. When you say, "Those types of claims," what 10:28:43<br>23 do you mean? 10:28:45<br>24 A. Specialized products. 10:28:46<br>25 Q. With respect to the entertainment unit, you 10:28:49<br><br>Page 28<br>1 mean adjusters have been identified who 10:28:52<br>2 handle specialized claims arising under 10:28:54<br>3 policies written by the entertainment unit, 10:29:02<br>4 right? 10:29:04<br>5 A. Correct. 10:29:04<br>6 Q. So considering that universe of adjusters who 10:29:05<br>7 handle claims within the entertainment 10:29:10<br>8 division, how is a particular adjuster 10:29:13<br>9 assigned to work on a particular claim? 10:29:15<br>10 A. Because they've been identified as somebody 10:29:20<br>11 who would handle that claim by the leader of 10:29:23<br>12 that claims group. 10:29:27<br>13 Q. So a person within the group decides which 10:29:28<br>14 individual adjuster to assign to the claim? 10:29:32<br>15 A. Yes, usually the manager. 10:29:34<br>16 Q. And who is the manager of the entertainment 10:29:37<br>17 group in July of 2014? 10:29:41<br>18 A. Pamela Johnson. 10:29:44<br>19 Q. And who did Pamela Johnson choose as the 10:29:48<br>20 adjuster to work on the Dig claim? 10:29:51<br>21 A. I don't -- I don't recall. I don't know. 10:29:55<br>22 Danny Gutterman I assume, but I don't 10:29:57<br>23 remember. 10:30:00 | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 29<br>19 Q. Have you ever discussed the case with 10:30:58<br>20 Danny Gutterman? 10:31:01<br>21 A. No. 10:31:01<br>22 Q. Have you ever discussed this case with 10:31:03<br>23 Pamela Johnson? 10:31:05<br>24 A. Not to my recollection, other than an e-mail 10:31:06<br>25 I saw from Theresa Gooley. 10:31:09<br><br>Page 30<br>22 Q. Pamela Johnson is no longer with the company? 10:32:19<br>23 A. Correct. 10:32:23<br><br>Page 34<br>8 Q. Okay. And if the claim arises under a policy 10:35:57<br>9 written by the entertainment group, the claim 10:36:01<br>10 gets referred to the entertainment group; is 10:36:05<br>11 that correct? 10:36:07<br>12 A. Yes. 10:36:07<br>13 Q. And if this claim had come in in July of 10:36:08<br>14 2014, that referral would have been to 10:36:12<br>15 Pamela Johnson, correct? 10:36:14<br>16 A. Yes. 10:36:15<br>17 Q. Okay. Once Pamela Johnson gets that claim, 10:36:17<br>18 Pamela Johnson decides what adjuster within 10:36:22<br>19 the entertainment group to assign to the 10:36:24<br>20 claim; is that right? 10:36:27<br>21 A. Yes, and you would include her in that 10:36:28<br>22 category. Excuse me. 10:36:31 | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 103 | |
| 17 Q. Mr. Gutterman testified that at OneBeacon he 12:13:20 | |
| 18 has been taught to always look for coverage. 12:13:24 | |
| 19 Is that -- 12:13:28 | |
| 20 A. Yes. 12:13:28 | |
| 21 Q. Is that correct? 12:13:29 | |
| 22 A. That is correct. 12:13:30 | |
| 23 Q. And is that what you tell your direct reports 12:13:34 | |
| 24 to do -- 12:13:42 | |
| 25 A. Absolutely. 12:13:43 | |
| | |
| Page 104 | |
| | |
| 1 Q. -- always look for coverage? 12:13:44 | |
| 2 A. Sorry, I didn't mean to interrupt. 12:13:46 | |
| 3 Absolutely. 12:13:48 | |
| 4 Q. What does that mean, "Always look for 12:13:49 | |
| 5 coverage"? 12:13:51 | |
| 6 A. That means that the objective is not to find 12:13:51 | |
| 7 ways to deny coverage. The objective is to 12:13:55 | |
| 8 take the facts and the policy, and if 12:13:58 | |
| 9 coverage is apparent, to cover the claim. 12:14:00 | |
| 10 Q. The objective is to find ways to find 12:14:04 | |
| 11 coverage? 12:14:08 | |
| 12 A. The objective is to find ways to pay the 12:14:09 | |
| 13 claim if it is covered under the policy. 12:14:12 | |
| 14 And it's important to understand 12:14:15 | |
| 15 that over time in our industry some companies 12:14:17 | |
| 16 have taken a different approach. 12:14:21 | |
| 17 And so that mandate to my employees 12:14:22 | |

| Deposition Designation | Objection & Response |
|---|---|
| 18 is simply telling them, we write policies, we 12:14:25<br>19 care about our insureds, we accept premium, 12:14:29<br>20 and where there is coverage, you should pay 12:14:31<br>21 it. You should not find ways to deny it. 12:14:33<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 105<br><br>16 Q. And has OneBeacon ever been accused of trying 12:15:20<br>17 to find ways to deny claims? 12:15:24<br>18 A. We've certainly been accused of 12:15:27<br>19 inappropriately denying claims. 12:15:30<br>20 Q. Based on the application of exclusions, 12:15:31<br>21 right? 12:15:34<br>22 A. All kinds of different things, exclusions, 12:15:35<br>23 terms, conditions, recision. 12:15:38<br><br>Page 106<br><br>8 Q. Has a court ever found that? 12:15:55<br>9 A. Yes. 12:15:57<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br><br>Page 133<br><br>15 Q. Mr. Duffy, can you give me an overview of 13:35:29<br>16 your experience prior to your tenure at 13:35:32<br>17 OneBeacon? 13:35:38 | **Defendant's Objection to Counter p. 105-106:**<br><br>Other claims, lawsuits, findings, judgments, rulings, accusations not relevant; very prejudicial; waste of time; misleading and confusing to jury. FRE 401; 403; necessarily involves hearsay 801; 802. |

| Deposition Designation | Objection & Response |
|---|---|
| 18 A. Do you want me to -- where do you want me to<br>19 start? Go backwards in time or what would be<br>13:35:39<br>20 easiest? 13:35:42<br>21 Q. Backwards. 13:35:43<br>22 A. Okay. So, again, I joined OneBeacon in April<br>13:35:44<br>23 of 2010. 13:35:46<br>24 Prior to that, I spent three years 13:35:49<br>25 at Great American Insurance Company in 13:35:51<br><br>Page 134<br><br>1 Cincinnati, Ohio. 13:35:53<br>2 Q. Okay. How about before that? 13:35:59<br>3 A. Before that, I spent nine years at what was<br>13:36:03<br>4 originally The St. Paul Companies but became<br>13:36:05<br>5 St. Paul Travelers and then Travelers, so I 13:36:08<br>6 was there from 1998 to 2007 before I joined<br>13:36:11<br>7 Great American. 13:36:17<br>8 Q. And prior to that? 13:36:20<br>9 A. I was an associate attorney for three years<br>13:36:22<br>10 from '95 to '98. 13:36:25<br>11 Q. When did you graduate law school? 13:36:31<br>12 A. '94. 13:36:33<br>13 Q. When did you graduate college? 13:36:34<br>14 A. '89. 13:36:36<br>15 Q. Took two or three years off in between 13:36:39<br>16 college and law school? 13:36:41<br>17 A. Two years. 13:36:42<br>18 Q. Where did you go to law call? 13:36:43<br>19 A. Hamline University School of Law. 13:36:45<br>20 Q. And where did you go to work after you<br>13:36:48 | |

| Deposition Designation | Objection & Response |
|---|---|
| 21 graduated? 13:36:50<br>22 A. From law school? 13:36:52<br>23 Q. Yes. 13:36:53<br>24 A. I clerked at the Minnesota Supreme Court for 13:36:54<br>25 a year. 13:36:55<br><br>Page 135<br><br>1 Q. And then what? 13:37:01<br>2 A. We're sitting there. 13:37:03<br>3 Q. You worked at this law firm? 13:37:05<br>4 A. For three years, yup. 13:37:08<br>5 Q. What's the name of this law firm? 13:37:10<br>6 A. Meagher & Geer. 13:37:13<br>7 Q. What type of law did you practice? 13:37:14<br>8 A. Primarily environmental insurance coverage 13:37:21<br>9 litigation but also some litigation relative 13:37:25<br>10 to financial institutions, so employee 13:37:29<br>11 dishonesty, D&O, that kind of thing. 13:37:34<br>12 Q. What was your role at Travelers? 13:37:44<br>13 A. So I began in '98 as a position that's called 13:37:47<br>14 a claims attorney, which is an adjusting 13:37:52<br>15 position, so I adjusted claims. 13:37:54<br>16 Q. Did you have any other positions at 13:37:57<br>17 Travelers? 13:38:00<br>18 A. Yes. I was promoted to director of financial 13:38:00<br>19 institution claims, probably around 2000 or 13:38:03<br>20 2001, and then I became the -- I think they 13:38:10<br>21 call it second vice-president of financial 13:38:15<br>22 and professional services claims, which is 13:38:17<br>23 the position I held until I left. 13:38:19 | |

| Deposition Designation | Objection & Response |
|---|---|
| 24 Q. How about Great American Insurance Company? 13:38:23<br>25 What positions did you hold there? 13:38:26<br><br>Page 136<br><br>1 A. I had one position. I forget the term they 13:38:27<br>2 use. Divisional senior vice-president. 13:38:29<br>3 Basically I was in charge of home office 13:38:34<br>4 claims. 13:38:36<br><br>Page 191<br><br>6 Q. Were you responsible for the decision to deny 14:55:10<br>7 the Dig claim? 14:55:12<br>8 A. No. 14:55:13<br>9 Q. Were you responsible for the decision to deny 14:55:18<br>10 the Dig claim in any way? 14:55:21<br>11 A. Was I personally? 14:55:25<br>12 Q. Yes. 14:55:27<br>13 A. No. 14:55:27<br>14 Q. Were you responsible in some other capacity? 14:55:28<br>15 A. As the leader of the claims organization and 14:55:31<br>16 I have employees, I guess. 14:55:35<br>17 Q. So you are responsible for the decision to 14:55:37<br>18 deny the Dig claim? 14:55:39<br>19 A. Ultimately I am responsible for the things 14:55:43<br>20 that occur in the claims organization. 14:55:45<br>21 Q. Okay. So why didn't you approve it before it 14:55:47<br>22 was made? 14:55:50 | |

| Deposition Designation | Objection & Response |
|---|---|
| 23 A. So I've answered that question several times. 14:55:52<br>24 I'll answer it again. 14:55:55<br>25 As I said, Pamela had the authority 14:55:56<br><br>Page 192<br>1 to deny this claim. I do not get involved 14:55:59<br>2 with decisions to deny claims. 14:56:03<br>3 Q. Ever. Is that right? 14:56:04<br>4 A. Define what that means. 14:56:09<br>5 Q. Do you ever get involved in decisions to deny 14:56:11<br>6 claims? 14:56:13<br><br>9 We went through this, Dan. 14:56:16<br>10 THE WITNESS: People do not get my 14:56:17<br>11 authority to deny claims. I may be made 14:56:19<br>12 aware of the claim, but the decision to deny 14:56:21<br>13 rests with the adjusters and the people that 14:56:24<br>14 work for me. 14:56:26<br>15 BY MR. HAYES: 14:56:27<br>16 Q. So there aren't any circumstances wherein an 14:56:28<br>17 adjuster needs your authority to deny a 14:56:32<br>18 claim? 14:56:35<br>19 A. Correct. 14:56:35<br><br>Page 193<br><br>3 Q. Did you have any involvement in evaluating 14:57:00<br>4 and considering the Dig claim? 14:57:01<br>5 A. I received an e-mail from Theresa Gooley 14:57:04<br>6 telling me about the status of their decision 14:57:05 | Plaintiff's Objections:<br>192:7-9: IO<br><br>Defendant's Response:<br><br>Objection removed. |

| Deposition Designation | Objection & Response |
|---|---|
| 7 to deny the claim. 14:57:08<br>8 Q. Did you have any involvement in evaluating 14:57:10<br>9 and considering the Dig claim? 14:57:15<br><br>12 THE WITNESS: I believe my e-mail 14:57:19<br>13 to Theresa said, "Looks good to me." 14:57:20<br>14 BY MR. HAYES: 14:57:23<br>15 Q. So is that a yes, you did? 14:57:23<br><br>18 BY MR. HAYES: 14:57:29<br>19 Q. I'm not asking what your e-mail says. I can 14:57:29<br>20 read your e-mail. 14:57:33<br>21 I want to know if you had any 14:57:34<br>22 involvement in evaluating and considering the 14:57:35<br>23 Dig claim. 14:57:37<br>24 A. To the extent I received an e-mail giving me 14:57:37<br>25 a heads-up, I responded and said, "Looks good 14:57:39<br><br>Page 194<br><br>1 to me," yes. 14:57:42<br>2 Q. And that's the extent of your involvement? 14:57:42<br>3 A. Correct. 14:57:45<br><br>Page 235<br><br>8 Q. Do you know why Pamela Johnson left 15:50:15<br>9 OneBeacon? 15:50:17<br>10 A. I do. 15:50:17<br>11 Q. Why? 15:50:18<br>12 A. Because I reorganized. 15:50:18 | Plaintiff's Objections:<br>193:10-11: IO<br><br>Defendant's Response:<br>Objection removed.<br><br>Plaintiff's Objections:<br>193:16-17: IO<br><br>Defendant's Response:<br><br>Objection removed. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 236 | Plaintiff's Objections: Page 235: 402,403 |
| 9 THE WITNESS: Pamela was let go as 15:50:59<br>10 part of a reorganization. Pamela was not 15:51:01<br>11 fired for cause. Pamela was paid severance, 15:51:03<br>12 and it was not a -- not a negative parting of 15:51:04<br>13 the ways. 15:51:11<br>14 BY MR. HAYES: 15:51:11 | Defendant's Response: Testimony avoids prejudice regarding possible speculation by jury that Ms. Johnson left on unfavorable terms. It is relevant and not prejudicial to Plaintiffs. |
| Page 237 | |
| 7 Q. Theresa Gooley, was she fired? 15:51:42<br>8 A. No. Theresa was let go at the end of 2015 as 15:51:44<br>9 a part of a significant reorganization. 15:51:48 | Plaintiff's Objections: Page 236: 402,403<br><br>Defendant's Response:<br><br>Testimony avoids prejudice regarding possible speculation by jury that Ms. Gooley left on unfavorable terms. It is relevant and not prejudicial to Plaintiffs. |
|  | Plaintiff's Objections: Page 237: 402,403<br><br>Defendant's Response: Testimony avoids prejudice regarding possible speculation by jury that Ms. Johnson left on unfavorable terms. It is |

| Deposition Designation | Objection & Response |
|---|---|
|  | relevant and not prejudicial to Plaintiffs. |

6.   **KURT FORD**

| Deposition Designation | Objection & Response |
|---|---|
| p. 14, l. 25-p. 15, l. 15; p. 16, l. 12-p. 16, l. 14; p. 20, l. 16-p. 22, l. 9; p. 32, l. 20-p. 32, l. 25; p. 33, l. 23-p. 34, l. 2; p. 37, l. 21-p. 37, l. 23; p. 44, l. 18-p. 44, l. 20; p. 45, l. 17-p. 46, l. 16; p. 47, l. 10-p. 48, l. 10; p. 60, l. 9-p. 60, l. 18; p. 68, l. 2-p. 68, l. 5; p. 70, l. 2-p. 70, l. 9; p. 70, l. 15-p. 71, l. 8; p. 73, l. 9 p. 73, l. 14; p. 76, l. 15-p. 77, l. 1; p. 82, l. 7-p. 82, l. 9; p. 82, l. 14-p. 82, l. 21; p. 86, l. 17-p. 86, l. 25; p. 88, l. 14-p. 89, l. 1; p. 89, l. 8-p. 89, l. 11; p. 89, l. 14-p. 89, l. 15; p. 89, l. 20-p. 89, l. 24; p. 90, l. 6-p. 90, l. 10; p. 90, l. 25-p. 91, l. 8; p. 91, l. 12-p. 91, l. 23; p. 92, l. 1-p. 92, l. 6; p. 98, l. 25-p. 99, l. 10; p. 99, l. 19-p. 99, l. 20; p. 99, l. 22-p. 99, l. 25; p. 101, l. 16-p. 101, l. 22; p. 106, l. 22-p. 106, l. 24; p. 108, l. 3-p. 108, l. 6; p. 113, l. 21-p. 113, l. 25; p. 114, l. 4-p. 114, l. 12; p. 119, l. 7-p. 119, l. 22; p. 120, l. 8-p. 120, l. 11; p. 123, l. 14-p. 124, l. 1; p. 131, l. 18-p. 132, l. 3; p. 132, l. 7-p. 132, l. 7; p. 133, l. 21-p. 134, l. 4; p. 134, l. 14-p. 134, l. 18; p. 135, l. 12-p. 135, l. 15; p. 135, l. 18-p. 135, l. 18; p. 135, l. 22-p. 135, l. 24; p. 136, l. 8-p. 136, l. 9; p. 136, l. 13-p. 136, l. 13; p. 137, l. 14-p. 137, l. 18; p. 137, l. 22-p. 137, l. 23; p. 137, l. 25-p. 138, l. 2; p. 141, l. 7-p. 141, l. 9; p. 151, l. 9-p. 151, l. 14; p. 153, l. 3-p. 153, l. 6; p. 155, l. 23-p. 156, l. 1; p. 156, l. 5-p. 156, l. 9; p. 166, l. 1-p. 166, l. 2; p. 166, l. 7-p. 166, l. 19; p. 178, l. 23-p. 178, l. 25; p. 179, l. 3-p. 179, l. 18; p. 241, l. 4-p. 241, l. 22; p. 242, l. 1-p. 242, l. 2; p. 242, l. 4-p. 242, l. 7; p. 242, l. 11-p. 242, l. 15; p. 242, l. 17-p. 242, l. 21; p. 242, l. 24-p. 242, l. 24; p. 243, l. 1-p. 243, l. 4; p. 243, l. 6-p. 243, l. 7; p. 243, l. 9-p. 243, l. 11; p. 243, l. 14-p. 243, l. 15; p. 243, l. 17-p. 243, l. 20; p. 244, l. 3-p. 244, l. 23; p. 245, l. 2-p. 245, l. 5; p. 245, l. 10-p. 245, l. 12; p. 246, l. 10-p. 247, l. 25; p. 248, l. 3-p. 248, l. 4; p. 248, l. 6-p. 248, l. 9; p. 259, l. 19-p. 259, l. 25; p. 261, l. 12-p. 261, l. 25; p. 262, l. 5-p. 262, l. 5; p. 262, l. 23-p. 263, l. 12; p. 263, l. 21-p. 263, l. 23; p. 264, l. 3-p. 264, l. 6; p. 265, l. 8-p. 265, l. 14; p. 280, l. 17-p. 281, l. 5; p. 282, l. 3-p. 282, l. 6; p. 284, l. 19-p. 285, l. 9; p. 285, l. 21-p. 286, l. 7; p. 286, l. 11-p. 286, l. 13; p. 286, l. 16-p. 286, l. 16; p. 288, l. 6-p. 288, l. 9; p. 288, l. 11-p. 288, l. 11; p. 288, l. 14-p. 288, l. 16; p. 288, l. 20-p. 288, l. 21; p. 288, l. 23-p. 288, l. 25; p. 289, l. 3-p. 289, l. 3; p. 290, l. 25-p. 291, l. 2; p. 291, l. 7-p. 291, l. 17; p. 291, l. 21-p. 291, l. 21; p. 292, l. 14-p. 293, l. 6; p. 293, l. 17-p. 293, l. 22; p. 294, l. 3-p. 294, l. 3; p. 294, l. 5-p. 294, l. 9; p. 294, | Plaintiffs object to Defendant's designations as follows.  Where line numbers are not included with a page number, plaintiffs object to all designated testimony on the page cited. |

| Deposition Designation | Objection & Response |
|---|---|
| 1. 14-p. 294, 1. 14; p. 294, 1. 16-p. 294, 1. 20; p. 295, 1. 20-p. 296, 1. 19; p. 295, 1. 23-p. 295, 1. 24; p. 303, 1. 5-p. 303, 1. 20; p. 304, 1. 14-p. 305, 1. 2;p. 305, 1. 6-p. 305, 1. 6; p. 313, 1. 3-p. 313, 1. 6; p. 313, 1. 11-p. 313, 1. 12; p. 313, 1. 15-p. 313, 1. 18; p. 313, 1. 24-p. 314, 1. 1; p. 314, 1. 12-p. 314, 1. 15; p. 314, 1. 20-p. 314, 1. 21; p. 317, 1. 23-p. 317, 1. 24; p. 318, 1. 3-p. 318, 1. 3; p. 318, 1. 15-p. 319, 1. 4; p. 319, 1. 8-p. 319, 1. 16; p. 321, 1. 14-p. 321, 1. 23; p. 322, 1. 3-p. 322, 1. 7; p. 322, 1. 11-p. 322, 1. 16; p. 322, 1. 19-p. 322, 1. 20; p. 322, 1. 24-p. 322, 1. 25; p. 326, 1 11-p. 327, 1. 17; p. 327, 1. 20-p. 327, 1. 24; p. 328, 1. 2-p. 328, 1. 3; p. 328, 1. 9-p. 328, 1. 11; p. 328, 1. 16-p. 328, 1. 19; p. 328, 1. 22-p. 328, 1. 23; p. 332, 1. 7-p. 332, 1. 13; p. 333, 1. 1-p. 333, 1. 14; p. 333, 1 .19-p. 333, 1. 19; p. 336, 1. 4-p. 337, 1. 2; p. 337, 1. 5-p. 337, 1. 5; p. 338, 1. 1-p. 338, 1. 15; p. 338, 1. 18-p. 339, l. 6; p. 339, 1. 24-p. 340, 1. 2; p. 357, 1. 13-p. 357, 1. 17; p. 368, 1. 1-p. 368, 1. 22; p. 369, 1. 1-p. 370, 1. 4 | |
| Page 14<br><br>25 Q Would you state your full name for the | Plaintiff's Objections:<br>No objection – Page 14.<br><br>Defendant's Response: |
| Page 15<br><br>1 record, please, sir.<br>2 A Full name is Kurt Bannick Ford. | Plaintiff's Objections:<br>No objection – 15:1-2.<br><br>402, 403 – 15:3-15.<br><br>Defendant's Response: |
| Page 16<br><br>12 Would you state your current employer,<br>13 please, sir.<br>14 A NBCUniversal. | Plaintiff's Objections:<br>No objection – Page 16.<br><br>Defendant's Response: |
| Page 20<br><br>16 Q What does Universal Cable Productions do?<br>17 A Sure. They're an in-house television | Plaintiff's Objections:<br>No objection – Page 20. |

| Deposition Designation | Objection & Response |
|---|---|
| 18 production studio where they produce TV shows that<br>19 are owned and produced by NBCUniversal, Universal<br>20 Cable Productions. They're in-house production<br>21 companies.<br>22 Q What does Universal TV do?<br>23 A Same thing. I have two bosses, and they<br>24 are both executive vice presidents. One of them<br>25 oversees physical production for Universal Cable<br><br>Page 21<br><br>1 Productions and the other one oversees physical<br>2 production for Universal Television, and I support<br>3 both those divisions.<br>4 Q Can you tell me who those two bosses are,<br>5 please, sir.<br>6 A Absolutely. On Universal Cable Productions<br>7 it's Mark Binke, B-i-n-k-e.<br>8 And on the Universal Television side, it's<br>9 Gerard DiCanio. He goes by Jerry.<br>10 Q Will you spell his last name?<br>11 A Sure. Capital D-i, capital C-a-n-i-o.<br>12 Q Do I understand correctly, that as part of<br>13 your job responsibilities at NBCUniversal, you<br>14 support these two separate studios, as you've<br>15 defined them?<br>16 A Correct.<br>17 Q What are the types of services that you<br>18 provide?<br>19 A Sure. My title is senior vice president of<br>20 production services.<br>21 Production services is the department,<br>22 which I oversee, that facilitates the nuts and bolts<br>23 of producing television shows.<br>24 When we have a show that has been green-lit<br>25 to go into production -- I'm not on the creative<br><br>Page 22<br><br>1 side, we don't make those decisions -- but when a<br>2 show has been green-lit, then my team, production<br>3 services, works with all the crews that are hired to<br>4 produce that TV show.<br>5 When a show is green-lit, there's about<br>6 150, 175 freelance employees that are brought on | Defendant's Response:<br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 21.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>See 106 counter below – Page 22.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 7 board to produce that specific show. And my team<br>8 interacts with all those new hires on how to produce<br>9 a show for NBCUniversal.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><u>Page 25</u><br>22 Q As senior vice president of production<br>23 services, who is your direct boss or supervisor?<br>24 A Sure. I have a solid line to Jerry DiCanio<br>25 and I have a dotted line to Mark Binke.<br><br><u>Page 26</u><br>1 And as of just last week, there is a new<br>2 executive vice president that has been hired. I've<br>3 only shaken her hand once and had a 30-second<br>4 meeting with her, and I will have a dotted line to<br>5 her, as well. Linda -- and her last name is<br>6 Giambrone, but I do not know how to spell it. And<br>7 she is the new executive vice president of the<br>8 unscripted side of Universal Television.<br>9 Jerry DiCanio, my direct boss, used to<br>10 oversee unscripted, and they have now split scripted<br>11 and unscripted. And Linda will now oversee the<br>12 unscripted. So I will have -- I now have three<br>13 bosses, but I have not had any engagement with Linda<br>14 yet.<br>END PLAINTIFFS' 106 COUNTER-DESIGNATION.<br><br><u>Page 32</u><br><br>20 Q And do you know how many years you held the<br>21 title senior vice president?<br>22 A I'm going to say, again, eight to ten<br>23 years, to the best of my knowledge.<br>24 Q And that's your current title?<br>25 A That is my current title.<br><br><u>Page 33</u><br><br>23 Q Would it be safe to say that you have been<br>24 involved in securing insurance for productions for<br>25 more than ten years?<br><br><u>Page 34</u> | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><u>Plaintiff's Objections:</u><br>No objection – Page 32.<br><br><u>Defendant's Response:</u><br><br><br><br><br><u>Plaintiff's Objections:</u><br>No objection – Page 33.<br><br><u>Defendant's Response:</u> |

| Deposition Designation | Objection & Response |
|---|---|
| 1 A I have been involved in ensuring insurance<br>2 was in place for the last ten years, yes.<br><br><br><br>Page 37<br><br>21 Q Are you aware that there are war exclusions<br>22 in your portfolio policy?<br>23 A Yes. | Plaintiff's Objections:<br>No objection – Page 34.<br><br>Defendant's Response:<br><br><br>Plaintiff's Objections:<br>No objection – Page 37.<br><br>Defendant's Response: |
| Page 44<br><br>21 Q Are you aware that there are war exclusions<br>22 in your portfolio policy?<br>23 A Yes. | Plaintiff's Objections:<br>No objection – Page 44.<br><br>Defendant's Response: |
| Page 45<br><br>17 Q Prior to the support services you provided<br>18 for DIG, were there other occasions where you were<br>19 called upon to do research or do work to support<br>20 another show that was being produced in the Middle<br>21 East?<br>22 A I don't do research. If a show is going<br>23 into a foreign country, all the departments that I<br>24 work with would have -- our tax department would<br>25 have had -- looked into tax. Labor relations would | Plaintiff's Objections:<br>402, 403 – 45:17-25.<br><br>MIL – 45:24-25.<br><br>Defendant's Response:<br><br>"MIL" is not a proper<br>objection; background and tax<br>issue is relevant to damages<br>claimed. |
| Page 46<br><br>1 have looked into union.<br>2 And I would have -- from an insurance<br>3 standpoint, would have ensured that our corporate<br>4 liability policies would have extended into any<br>5 foreign country, general liability policies, auto<br>6 liability policies.<br>7 And I would have checked our portfolio to<br>8 make sure that there wasn't any country exclusions<br>9 that I was unaware of.<br>10 And I would have put that responsibility on<br>11 our broker, on an insurance broker.<br>12 Q And what do you mean by "insurance broker"?<br>13 A Sure. We have an insurance broker. The | Plaintiff's Objections:<br>402, 403 – Page 46.<br><br>Defendant's Response:<br><br>Background of witness is<br>relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 14 broker at the time of DIG was Aon, and they're our<br>15 insurance broker making sure we have adequate<br>16 coverage for all of the exposures we have.<br><br>Page 47<br><br>10 Can you remember how far back you started<br>11 working with Aon as a broker?<br>12 A Yes.<br>13 Q When was that?<br>14 A I started working with Aon in the fall of<br>15 2009.<br>16 Q Can you tell me how that initial phase of<br>17 that relationship occurred?<br>18 A Sure.<br>19 Our insurance policy in 2009 was with an<br>20 insurance company, and we were going through<br>21 renewals for the 2010 policy period, they were<br>22 annual policy periods.<br>23 And in 2009, the current insurance carrier<br>24 had given us their quote for the following year.<br>25 And I can't remember the specifics, but it was | <br><br><br><br><br><br>Plaintiff's Objections:<br>402, 403 – Page 47.<br><br>Defendant's Response:<br><br>Background of witness and general insurance context relevant; not prejudicial. |
| Page 48<br><br>1 enough to where I gave pause from a premium<br>2 standpoint and wondered if we should market the<br>3 program out into the insurance world.<br>4 The prior insurance company was a captive<br>5 of General Electric.<br>6 And so I spoke to GE risk manager, and we<br>7 were toying with marketing the program.<br>8 He thought that was an interesting approach<br>9 and, I got introduced to Aon through the GE risk<br>10 manager sometime in the fall of 2009. | Plaintiff's Objections:<br>402, 403 – Page 48.<br><br>Defendant's Response:<br><br>General insurance context relevant; not prejudicial. |
| Page 60<br><br>9 Q For the DIG production in particular, who<br>10 within your structure was responsible for declaring<br>11 DIG to your television portfolio policy?<br>12 A I don't recall the exact person.<br>13 Q Were you involved in that?<br>14 A No.<br>15 Q Is declaring an individual production to | Plaintiff's Objections:<br>104a – 60:9-14.<br><br>No objection – 60:15-18.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 16 the TV portfolio policy something you delegate to<br>17 some -- one of your reports?<br>18 A That is correct.<br><br><br>Page 68<br><br>2 I asked you if you were the person who<br>3 asked Ms. Weiss to submit a claim and you indicated<br>4 you were not that person; is that right?<br>5 A That is correct. | <br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 68.<br><br>Defendant's Response: |
| Page 70<br><br>2 Q Do you know how the claim process got<br>3 started, whereby notice was given to Atlantic<br>4 Specialty Insurance Company –<br><br>6 BY MS. REED:<br>7 Q -- on DIG?<br>8 A There were discussions about what was<br>9 happening, and those discussions were with Aon.<br><br><br>15 Q All right. So let's go back to the point<br>16 in time that you can remember initial discussions<br>17 about the potential need to submit a claim on DIG.<br>18 Do you recall discussions occurring<br>19 internally within NBCUniversal as a group about what<br>20 was going on in production for DIG?<br>21 A At what point?<br>22 Q At the point in time where you're<br>23 indicating there would have been discussions about<br>24 what was going on that would have been the beginning<br>25 process of whether notice of a claim needed to | IO objection removed<br><br><br>Plaintiff's Objections:<br>No objection – 70:2-4; 70:6-9;<br>70:15-25.<br><br>IO – 70:5.<br><br>Defendant's Response:<br><br>IO objection removed |
| Page 71<br><br>1 occur.<br>2 A Yes, I remember discussions.<br>3 Q Okay. What discussions -- what are the<br>4 earliest discussions you remember on that subject?<br>5 A I remember internal discussions after | Plaintiff's Objections:<br>No objection – Page 71.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 6 production received notice from NBC security that<br>7 the tensions had risen and they could no longer<br>8 protect the cast and crew's safety. | |
| <u>Page 73</u> | <u>Plaintiff's Objections:</u><br>No objection – Page 73. |
| 9 Q Who oversees security for a production if<br>10 that doesn't fall within your nuts and bolts?<br>11 A Corporate security.<br>12 Q And who is the head of that corporate<br>13 security group or program?<br>14 A Today, Tom McCarthy. | <u>Defendant's Response:</u> |
| <u>Page 76</u> | <u>Plaintiff's Objections:</u><br>No objection – Page 76. |
| 15 Q What was your understanding of the concern<br>16 for health and safety of the cast and crew?<br>17 A It was solely based on the memo from<br>18 security that they could not contain the cast and<br>19 crew's safety.<br>20 Q Were you provided with a copy of the memo<br>21 that had been provided by security?<br>22 A At some point.<br>23 Q Do you know why you were on the<br>24 distribution for that particular item?<br>25 A Because it could turn into an insurance | <u>Defendant's Response:</u> |
| <u>Page 82</u> | <u>Plaintiff's Objections:</u><br>402, 403, MIL – Page 82. |
| 7 I'm asking if you were party to discussions<br>8 where the issue of either pushing production or<br>9 ceasing production in Israel were discussed. | <u>Defendant's Response:</u><br><br>"MIL" not proper objection;<br>facts regarding decision to<br>move production relevant. |
| 14 THE WITNESS: Yes.<br>15 BY MS. REED:<br>16 Q Were you involved in multiple conversations<br>17 on those topics?<br>18 A Yes.<br>19 Q Was there a decision made to push<br>20 production at some point in time?<br>21 A Yes. | |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 86</u><br><br>17 Q When was the discussion -- when was the<br>18 decision to push production made, please, sir?<br>19 A Approximately July -- to push production,<br>20 July 16th.<br>21 No. No. No. May I -- I would like to<br>22 take that back.<br>23 Q Okay.<br>24 A That was incorrect.<br>25 Approximately July 11th. | <u>Plaintiff's Objections:</u><br>402, 403, MIL – Page 86.<br><br><u>Defendant's Response:</u><br><br>"MIL" not proper objection; facts regarding decision to move production relevant. |
| <u>Page 88</u><br><br>14 Q After the decision to push production was<br>15 made, were there additional or continuing<br>16 discussions about the conditions where filming was<br>17 anticipated?<br>18 A Yes.<br>19 Q And what were those discussions, please,<br>20 sir?<br>21 A Initial discussion from security was they<br>22 hoped that the unrest situation would resolve<br>23 itself.<br>24 Q Were there any other discussions?<br>25 A And it was a very fluid situation. We had | <u>Plaintiff's Objections:</u><br>402, 403, MIL – Page 88.<br><br><u>Defendant's Response:</u><br><br>"MIL" not proper objection; facts regarding decision to move production relevant. |
| <u>Page 89</u><br><br>1 hoped that the one-week push was all we needed.<br><br><br>8 Q How many times do you believe that you were<br>9 involved personally in discussions after the push<br>10 decision was made?<br>11 A Several.<br><br><br>14 Q Was there a reassessment every day or on an<br>15 ongoing basis about the conditions?<br><br><br>20 THE WITNESS: It was a very fluid<br>21 situation. And because it was so important to<br>22 protect the staff and the crew, yes, security was | <u>Plaintiff's Objections:</u><br>402, 403, MIL – Page 89.<br><br><u>Defendant's Response:</u><br>"MIL" not proper objection; facts regarding decision to move production relevant. |

| Deposition Designation | Objection & Response |
|---|---|
| 23 monitoring it every day. I was not privy to those 24 conversations. | |
| Page 90 | |
| 6 Q At the time that the decision to push 7 production was made, what exactly was the status of 8 ongoing work or personnel onsite in Israel? 9 A I recall we had finished filming the pilot 10 and we were about to start Episode 2. | Plaintiff's Objections: 402, 403, MIL – Page 90. Defendant's Response: "MIL" not proper objection; facts regarding decision to move production relevant to facts of claim. |
| 25 Q Were you involved in a discussion where a | |
| Page 91 | |
| 1 decision to move production out of Israel was made? 2 A Yes. 3 Q Who was involved in that discussion? 4 A The same people I mentioned earlier in that 5 attorney-client privileged conversations. 6 Q Let me go back to the decision to push 7 production, please, sir. 8 Who was involved in that decision? | Plaintiff's Objections: 402, 403, MIL – Page 91. Defendant's Response: "MIL" not proper objection; facts regarding decision to move production relevant to facts of claim. |
| 12 THE WITNESS: I know Mark Binke, Randi 13 Richmond, Andrea Garber, Susan Weiss. 14 BY MS. REED: 15 Q Those four people were involved in the 16 decision to push? 17 A It was a collective decision with -- yes. 18 Q Were you involved in the decision to push 19 the production? 20 A No. I don't make those decisions. 21 Q Were you involved in the discussion where 22 the decision was made? 23 A Yes. | |
| Page 92 | Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| | 402, 403, MIL – Page 92. |
| 1 Q Who was involved in the discussion where<br>2 the decision to push production was reached?<br>3 A I believe I said Andrea, Susan, Randi and<br>4 Mark.<br>5 Q And you were present?<br>6 A I was present at some of those discussions. | Defendant's Response:<br><br>"MIL" not proper objection; facts regarding decision to move production relevant to facts of claim. |
| Page 98 | Plaintiff's Objections:<br>402, 403, MIL – Page 98. |
| 25 Q Was the next subject matter you recall | Defendant's Response:<br><br>"MIL" not proper objection; facts regarding decision to move production relevant. |
| Page 99 | |
| 1 being discussed a decision just to pull production<br>2 out of Israel?<br>3 A That was the ultimate decision, yes, and it<br>4 wasn't that far after.<br>5 Q Were you involved in discussions that led<br>6 up to that ultimate decision?<br>7 A Yes.<br>8 Q And who were the parties that were involved<br>9 in the discussions that led up to the ultimate<br>10 decision? | Plaintiff's Objections:<br>402, 403, MIL – Page 99.<br><br>Defendant's Response:<br><br>"MIL" not proper objection; facts regarding decision to move production relevant. |
| 19 THE WITNESS: Mark Binke, Randi Richmond,<br>20 Andrea Garber, Susan Weiss, attorney. | |
| 22 Q So Ms. Garber and Ms. Weiss were parties to<br>23 the discussions where the ultimate decision to move<br>24 production out of Israel were made?<br>25 A To the best of my knowledge. | |
| Page 101 | Plaintiff's Objections:<br>402, 403, MIL – Page 101. |
| 16 Are you aware that Aon, as the insurance<br>17 broker for NBCUniversal, provided a notice of claim<br>18 to Atlantic Insurance?<br>19 A Yes. | Defendant's Response:<br><br>"MIL" not proper objection; |

| Deposition Designation | Objection & Response |
|---|---|
| 20 Q And are you the person who asked them to<br>21 take that step?<br>22 A No. | facts regarding decision to move production and pursue claim relevant to facts of claim and loss. |
| Page 106<br><br>22 Do you have any formal education or<br>23 training in regard to insurance?<br>24 A No. | Plaintiff's Objections:<br>No objection – Page 106.<br><br>Defendant's Response: |
| Page 108<br><br>3 Q And did you have a first introduction to<br>4 even working with insurance policies because of your<br>5 production responsibilities with NBCUniversal?<br>6 A Correct. | Plaintiff's Objections:<br>No objection – Page 108.<br><br>Defendant's Response: |
| Page 113<br><br>21 Q Can you help me better understand precisely<br>22 your job duties in regard to insurance, starting<br>23 with having appropriate policies in place.<br>24 What level of responsibility do you have<br>25 about that? | Plaintiff's Objections:<br>No objection – Page 113.<br><br>Defendant's Response: |
| Page 114<br><br>4 THE WITNESS: I know television needs an<br>5 entertainment portfolio policy. I look to our<br>6 brokers to know what our production activities are<br>7 and to ensure that the policy that we have in place<br>8 is adequate.<br>9 And I also interact with corporate because<br>10 television uses some corporate policies as well,<br>11 such as an errors and omissions policy, which is not<br>12 part of a portfolio. | Plaintiff's Objections:<br>No objection – Page 114.<br><br>Defendant's Response: |
| Page 119<br><br>7 Q For the DIG claim -- | Plaintiff's Objections:<br>402, 403, MIL – Page 119. |

| Deposition Designation | Objection & Response |
|---|---|
| 8 A Yes.<br>9 Q -- did you look to the corporate level for<br>10 other types of insurance policies that were in place<br>11 that could potentially provide coverage for any loss<br>12 that you believed you might have on the DIG<br>13 production?<br>14 A Yes.<br>15 Q And what policies were those?<br>16 A I don't know what policies. That was the<br>17 question. Was there anything that corporate had<br>18 that would help us in this situation?<br>19 Q All right. Who did you reach out to about<br>20 that?<br>21 A I -- I don't believe I -- did I reach -- I<br>22 know that we asked, but I don't recall who asked. | Defendant's Response:<br><br>"MIL" not proper objection; general background relevant. |
| <u>Page 120</u><br><br>7 Q For the DIG claim --<br>8 A Yes.<br>9 Q -- did you look to the corporate level for<br>10 other types of insurance policies that were in place<br>11 that could potentially provide coverage for any loss<br>12 that you believed you might have on the DIG<br>13 production?<br>14 A Yes.<br>15 Q And what policies were those?<br>16 A I don't know what policies. That was the<br>17 question. Was there anything that corporate had<br>18 that would help us in this situation?<br>19 Q All right. Who did you reach out to about<br>20 that?<br>21 A I -- I don't believe I -- did I reach -- I<br>22 know that we asked, but I don't recall who asked. | Plaintiff's Objections:<br>402, 403, MIL – Page 120.<br><br>Defendant's Response:<br><br>"MIL" not proper objection; Facts and circumstances leading to making claim relevant and not prejudicial. |
| <u>Page 123</u><br><br>14 Q And when's the earliest point when you read<br>15 the war exclusions that are in the TV portfolio<br>16 policy?<br>17 A Prep for this deposition.<br>18 Q At any time prior to preparing for this<br>19 deposition, had you read the war exclusions in any<br>20 of the TV portfolio policies?<br>21 A Not that I recall. | Plaintiff's Objections:<br>402, 403, MIL – Page 123.<br><br>Defendant's Response:<br><br>"MIL" not proper objection; Facts leading to making claim relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 22 Q Other than the DIG claim, have you ever had 23 occasion over the course of your career to need to 24 address any war exclusions in any TV portfolio 25 policies?<br><br>Page 124<br><br>1 A Not that I recall. | Plaintiff's Objections: 402, 403, MIL – Page 124.<br><br>Defendant's Response:<br><br>"MIL" not proper objection; Facts leading to making claim relevant and not prejudicial. |
| Page 131<br><br>18 Q Let me hand you what was previously marked 19 as Exhibit 38. This is defense Exhibit 38. 20 Can you identify this document as the 21 motion picture television producers portfolio policy 22 issued to NBCUniversal Media, LLC for the policy 23 period January 1, 2014 to June 30, 2015? 24 A Yes. 25 Q And is this the policy that you were | Plaintiff's Objections: No objection – Page 131.<br><br>Defendant's Response: |
| Page 132<br><br>1 involved in -- in having secured on behalf of 2 NBCUniversal for TV productions for this period of 3 time?<br><br>7 THE WITNESS: Yes. | Plaintiff's Objections: No objection – Page 132.<br><br>Defendant's Response: |
| Page 133<br><br>21 Q When the fax raised concerns about safety 22 and security on the DIG production, did you go and 23 look at the TV portfolio policy that was in place? 24 A No. 25 Q At any time during that process where you | Plaintiff's Objections: 402, 403, MIL – Page 133.<br><br>Defendant's Response:<br><br>"MIL" not proper objection; Facts and circumstances leading to making claim relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 134<br><br>1 were deciding whether to submit a claim or in the<br>2 process of submitting a claim, did you review the<br>3 television portfolio policy that was in effect?<br>4 A Not that I recall.<br><br>14 Q Can you recall, sitting here today, going<br>15 and looking at your policy language to give yourself<br>16 a frame of reference in connection with developing<br>17 whether you would or wouldn't submit a claim on DIG?<br>18 A I do not recall that. | Plaintiff's Objections:<br>402, 403, MIL – Page 134.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial. |
| Page 135<br><br>12 Q Can you tell me who was involved in the<br>13 discussion and development of the thinking about<br>14 whether the DIG facts would be submitted as an<br>15 insurance claim –<br><br>18 Q -- under the TV portfolio policy?<br><br>22 THE WITNESS: There were many people<br>23 involved throughout this DIG process. I don't<br>24 recall the specific conversations. | Plaintiff's Objections:<br>402, 403, MIL – Page 135.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial |
| Page 136<br><br>8 Q Were you party to some of those<br>9 discussions?<br><br>13 THE WITNESS: Yes.<br><br>Page 137 | Plaintiff's Objections:<br>402, 403, MIL – Page 136.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial.<br><br>Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 14 Q Well, when you were talking specifically<br>15 about what may or may not be submitted under a TV<br>16 portfolio policy, who would have been the people<br>17 that you thought were necessary to involve in that<br>18 discussion, other than yourself?<br><br><br>22 THE WITNESS: My production executive,<br>23 Mark Binke.<br>25 Q Anyone else?<br><br>Page 138<br><br>1 A The other production executive,<br>2 Randi Richmond and Andrea Garber. | 402, 403, MIL – Page 137.<br><br>Defendant's Response:<br><br>"MIL" is not a proper objection; Persons involved in and discussions leading to filing claim are relevant and not preducial.<br><br>Plaintiff's Objections:<br>402, 403, MIL – Page 138.<br><br>Defendant's Response:<br><br>"MIL" not proper objection; Knowledge of and involvement in "Dig" relevant to facts and circumstances leading to making claim relevant and not prejudicial. |
| Page 141<br><br>7 Q Have you undertaken any formal or informal<br>8 education regarding commercial insurance?<br>9 A No. | Plaintiff's Objections:<br>No objection – Page 141.<br><br>Defendant's Response: |
| Page 151<br><br>9 Who was the production team for DIG?<br>10 A Production team is a broad term. It would<br>11 have been the production executive, Randi Richmond,<br>12 Mark Binke, the production executive, B.J. Markus,<br>13 the controller, and then the folks that were hired<br>14 to physically produce the show, the crew. | Plaintiff's Objections:<br>No objection – Page 151.<br><br>Defendant's Response: |
| Page 153<br><br>3 Q Because of the nature of your work and<br>4 responsibilities, do you primarily interface with<br>5 the production team? | Plaintiff's Objections:<br>No objection – Page 153.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 6 A Yes.<br><br>Page 155<br><br>23 And for a person at your level within your<br>24 department, would you say that Ms. Richmond and<br>25 Mr. Binke would have been primary contacts that you<br><br>Page 156<br><br>1 personally would have interacted with for DIG?<br><br><br>5 THE WITNESS: Mark is my boss, dotted-line<br>6 boss. So I do interact with Mark.<br>7 And Randi, being the production executive<br>8 on the show, is a likely go-to person if there are<br>9 questions.<br><br>Page 166<br><br>1 Q Do you recall that DIG was endorsed to the<br>2 TV portfolio policy?<br><br><br>7 THE WITNESS: Yes.<br>8 BY MS. REED:<br>9 Q What was the process that you would<br>10 undertake when you had a new production that was<br>11 coming into existence in relation to the TV<br>12 portfolio policy?<br>13 A Our broker would put the carrier on notice<br>14 of a new upcoming production.<br>15 Q And how would the broker know to put the<br>16 carrier on notice?<br>17 A The communication could come from any of my<br>18 team members, could possibly come from me, and they<br>19 are on status reports as well.<br><br>Page 178<br><br>23 Q Can you remember any particular tasks or<br>24 work that you personally did that would have been<br>25 associated with the DIG production? | <br><br><br><br>Plaintiff's Objections:<br>No objection – Page 155.<br><br>Defendant's Response:<br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 156.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 166.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>See 106 counter below – Page 178.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| PLAINTIFFS' 106 COUNTER-DESIGNATION:<br>Page 179<br>1 A I do remember a task after a claim.<br>2 Q And what was that, sir?<br>END PLAINTIFFS' 106 COUNTER-DESIGNATION.<br><br><br>Page 179<br><br>3 A I wanted to have a conversation with Peter<br>4 Williams from OneBeacon on why there was discussion<br>5 about the denial of the claim.<br>6 Q Okay. And when did you want to have a<br>7 discussion with Peter Williams?<br>8 A I do not recall the exact time, but it was<br>9 after there was a denial.<br>10 Q Were you familiar with Peter Williams at<br>11 that point in time?<br>12 A I was.<br>13 Q And how long had you known him or worked<br>14 with him?<br>15 A I had heard the name Peter Williams for a<br>16 while. We had been with this company for a couple<br>17 of years. I had been introduced to Peter a time or<br>18 two before. I do not recall in what context | <br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – 179:3-9.<br><br>402, 403 – 179:10-18.<br><br>Defendant's Response: |
| Page 241<br><br>4 Q Let me hand you 294, please, sir.<br>5 Can you identify this as an email string,<br>6 beginning December 6th and running through December<br>7 10th, in which you were involved?<br>8 A Yes. Yes.<br>9 Q I want to direct your attention to the<br>10 first page, sir.<br>11 A Can I -- can I have a quick second to<br>12 review?<br>13 Q Absolutely.<br>14 A Thank you.<br>15 Okay.<br>16 Q Is this an email string in which you were<br>17 involved?<br>18 A Yes.<br>19 Q And was the overall purpose for this<br>20 providing information to Ms. Garber at Aon for the | Plaintiff's Objections:<br>No objection – Page 241.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 21 purpose of allowing her to use it to seek to endorse<br>22 the DIG production?<br><br><br>Page 242<br><br>1 THE WITNESS: Yes, that is my assumption,<br>2 uh-huh.<br><br>4 Q And is this the type of information that<br>5 you would have been used to providing to your broker<br>6 for purposes of endorsing a policy -- pardon me,<br>7 endorsing a production to your TV portfolio policy?<br><br>11 THE WITNESS: I think because this show was<br>12 going into a foreign country, rather than filming in<br>13 Los Angeles, additional questions were asked. And<br>14 so the underwriter wanted some more information<br>15 based on the show.<br><br>17 Q Is information such as a production<br>18 calendar and the number of episodes that you would<br>19 shoot, typical information that you would provide<br>20 for the purpose of requesting to endorse a<br>21 production to your portfolio policy?<br><br>24 THE WITNESS: Yes.<br><br>Page 243<br><br>1 Q Is budget information, information that you<br>2 would typically provide if your broker were<br>3 attempting to endorse a production to your portfolio<br>4 policy?<br><br>6 THE WITNESS: To the best of my knowledge,<br>7 that's part of the process in declaring, yes.<br><br>9 Q And does the string of correspondence that<br>10 you're involved on here indicate that there was a | <br><br><br>Plaintiff's Objections:<br>No objection – Page 242.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 243.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 11 $25 million budget for pilot, plus five episodes?<br><br>14 THE WITNESS: That's my understanding,<br>15 based on what's written here, yes.<br><br>17 Q Did you ever see any information to the<br>18 contrary that that was the budget information for<br>19 the pilot, plus five episodes?<br>20 A Not that I recall. | |
| Page 244<br><br>3 Q Okay. Would you look at Exhibit 38,<br>4 please, sir.<br>5 A Yes.<br>6 Yes.<br>7 Q I'm going to direct your attention to the<br>8 page that's numbered ATL 1608.<br>9 A Okay.<br>10 Q There is a Roman numeral IX, "Definition of<br>11 Loss."<br>12 Do you see that?<br>13 A I do.<br>14 Q And under that there's a lead-in that says,<br>15 "The amount of your loss will be determined based<br>16 on:" And then No. 1, "All necessary, quote,<br>17 'insurable production cost,' end quote, you incur to<br>18 complete the, quote, 'insured production,' end<br>19 quote, that exceeds the amount of, quote, 'insurable<br>20 production cost,' end quote, you would have incurred<br>21 if the covered cause of loss had not occurred."<br>22 Do you see that?<br>23 A I do. | Plaintiff's Objections:<br>No objection – Page 244.<br><br>Defendant's Response: |
| Page 245<br><br>2 Q Is it your understanding that when you<br>3 endorse a production to your portfolio policy, that<br>4 you submit, as part of that submission, an insurable<br>5 production cost? | Plaintiff's Objections:<br>402, 403, 104a – Page 245.<br><br>Defendant's Response:<br><br>Fact of budget submission<br>relevant to loss claimed. |

| Deposition Designation | Objection & Response |
|---|---|
| 10 THE WITNESS: I am familiar that we provide<br>11 budget information to the underwriter when we're<br>12 declaring a production.<br><br>Page 246<br><br>10 Q Your colleagues provided an Andrea Garber<br>11 with the budget information of $25 million for the<br>12 DIG production on December the 10th?<br>13 A I see that, yes.<br>14 Q And your understanding was that that was<br>15 submitted to Ms. Garber as part of her process that<br>16 she was undertaking to attempt to endorse this to<br>17 your TV portfolio policy?<br><br>21 THE WITNESS: That would -- that would be<br>22 my understanding.<br>23 BY MS. REED:<br>24 Q And let me hand you what's been previously<br>25 marked as Defendant's Exhibit 8, please, sir.<br><br>Page 247<br><br>1 This has been identified as a December 11th<br>2 email from Andrea Garber with an attachment that's<br>3 entitled, "Television Insurance Application."<br>4 Have you seen these pages before?<br>5 A I believe I have, yes.<br>6 Q Would you look at the third page, please,<br>7 sir.<br>8 A Yes.<br>9 Q Have you seen this document before?<br>10 A I believe I have, yes.<br>11 Q Is it your understanding that this was<br>12 submitted to Atlantic as its -- as NBCUniversal's<br>13 request to add the DIG production to the TV<br>14 portfolio policy?<br>15 A I believe that's what this is, yes.<br>16 Q Would you look at No. 6, please, sir, which<br>17 says, "Total Insurable Production Cost."<br>18 Do you see that?<br>19 A I do.<br>20 Q And it says, "$25 million estimated for<br>21 entire 6 episode order"?<br>22 A Yes, I see that. | <br><br><br><br>Plaintiff's Objections:<br>No objection – 246:10-17;<br>246:21-25.<br><br>IO – 246:18-20.<br><br>Defendant's Response:<br><br>IO will be removed.<br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – 247:1-22.<br><br>104a – 247:23-25.<br><br>Defendant's Response:<br><br>Application potentially<br>relevant, depending on MIL<br>rulings regarding Policy<br>negotiation and terms. |

| Deposition Designation | Objection & Response |
|---|---|
| 23 Q And can you confirm that that's the<br>24 information that was submitted to Atlantic about<br>25 DIG? | |
| Page 248 | Plaintiff's Objections:<br>104a – 248:3-4.<br><br>No objection – 248:6-9.<br><br>Defendant's Response:<br><br>Confirms authority of Ms. Garber to submit application and facts; relevant. |
| 3 THE WITNESS: I can confirm what's on this<br>4 document and -- yes. | |
| 6 Q And Ms. Garber had the authority to submit<br>7 this to Atlantic at this time on behalf of<br>8 NBCUniversal?<br>9 A Absolutely. | |
| Page 259 | Plaintiff's Objections:<br>402, 403, MIL – Page 259.<br><br>Defendant's Response:<br><br>"MIL" not proper objection; |
| 19 Q Let me hand you what was previously marked<br>20 as Defendant's 13, please, sir.<br>21 Can you identify this as an email string<br>22 which begins June the 15th and continues through<br>23 June the 16th in which you were involved?<br>24 A I do see that, and I would need some time<br>25 to read this. | |
| Page 261 | Plaintiff's Objections:<br>402, 403, MIL – Page 261.<br><br>Defendant's Response:<br>"MIL" not proper objection; Facts and circumstances leading to making claim relevant and not prejudicial. |
| 12 Q So when Ms. Richmond wrote to you and<br>13 Mr. Williams on June the 16th and said to you,<br>14 "Kurt," K-u-r-t, "Please advise. Should the issue<br>15 in Israel heighten to a point security advises us<br>16 not to shoot anywhere in Israel, what is our<br>17 insurance coverage?"<br>18 Do you see that?<br>19 A I do.<br>20 Q And based upon the fact that she was asking<br>21 you for that input, did you go back and study the<br>22 underlying facts to understand exactly what was<br>23 going on in and around your shooting sites and in<br>24 Israel and Gaza in general?<br>25 A I don't believe – | |
| Page 262 | Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 5 THE WITNESS: I don't believe I did.<br><br>23 Q And do you believe that it was necessary to<br>24 understand the facts on the ground in order to<br>25 undertake that task? | 402, 403, MIL – Page 262.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial. |
| Page 263<br>1 A No. Curt Williams, who works for me,<br>2 responded. It was his show. And what we do is, we<br>3 go to our broker to help us decipher coverage under<br>4 our policy.<br>5 We don't make -- I don't make any<br>6 assumptions under the policy.<br>7 Q Is it correct that you would need to take<br>8 the factual reports to your broker for your broker<br>9 to work with you to look at coverage language?<br>10 A We would always provide the information to<br>11 the broker to help us decipher if there was a claim,<br>12 of course.<br><br>21 Q So Mr. Curt Williams called upon Ms. Garber<br>22 and Ms. Weiss to review and understand and digest<br>23 the factual information for themselves? | Plaintiff's Objections:<br>402, 403, MIL – Page 263.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial. |
| Page 264<br>3 THE WITNESS: I believe the document says<br>4 Curt Williams went to Debby Kizner, who worked for<br>5 Aon and who was also part of their day-to-day back<br>6 and forth. So that was Curt's point person at Aon. | Plaintiff's Objections:<br>402, 403, MIL – Page 264.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial. |
| Page 265<br>8 BY MS. REED:<br>9 Q And it would have been their job to look at<br>10 and understand the facts so that they can then<br>11 analyze your policy language? | Plaintiff's Objections:<br>402, 403, MIL – Page 265.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 12 A Yes. If -- they would have had to have<br>13 known what was happening in order to work with the<br>14 underwriter on potential coverage.<br><br>Page 280 | "MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial.<br>Plaintiff's Objections:<br>402, 403, MIL – Page 280. |
| 17 Q Can you identify Exhibit 298 as a July 1st<br>18 email string in which you were involved?<br>19 A Yes.<br>20 Q And the bottom email, Ms. Richmond's<br>21 contacting you and saying she needs "...to discuss<br>22 insurance issue if security tells me I can not shoot<br>23 in jerusalem..." I think that means "and continuity<br>24 locale"?<br>25 A I do see that. | Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial. |
| Page 281<br><br>1 Q And then you forward to Weiss and Kizner<br>2 and ask them if they can have a quick call?<br>3 A I see that, yes.<br>4 Q Did you have that call?<br>5 A I don't recall. | Plaintiff's Objections:<br>402, 403, MIL – Page 281.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial. |
| Page 282<br><br>3 Q By July the 1st had you undertaken any<br>4 review of the factual situation to try to understand<br>5 what was going on?<br>6 A Not that I recall. | Plaintiff's Objections:<br>402, 403, MIL – Page 282.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial. |
| Page 284<br>19 Q Let me hand you what was previously marked<br>20 as Defendant's 18, please, sir.<br>21 Can you identify --<br>22 A I just had gotten to the new part. I<br>23 didn't know all that was an ongoing...<br>24 Okay. | Plaintiff's Objections:<br>402, 403, MIL – Page 284.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances |

| Deposition Designation | Objection & Response |
|---|---|
| 25 Q Can you identify this as an email string, | leading to making claim relevant and not prejudicial. |
| Page 285 | Plaintiff's Objections: 402, 403, MIL – Page 285. |
| 1 beginning June 15th and running through July 3rd, in<br>2 which you were involved?<br>3 A That's correct.<br>4 Q I want to direct your attention to the top<br>5 email, please, sir, from Malika Adams --<br>6 A Yes.<br>7 Q -- with Comcast to you.<br>8 Do you see that one?<br>9 A Yes.<br><br>21 Q Would you direct your attention, please,<br>22 sir, to the second line of Ms. Adams's paragraph to<br>23 you. It begins, "In order to trigger coverage..."<br>24 Do you see that?<br>25 A Yes. | Defendant's Response:<br><br>"MIL" not proper objection; Facts and circumstances leading to making claim relevant and not prejudicial. |
| Page 286 | Plaintiff's Objections: 402, 403, MIL – Page 286. |
| 1 Q "In order to trigger coverage under the<br>2 production policy, we would need a policy trigger,<br>3 as Susan had mentioned, and even with that, we'd<br>4 have to be cautious because there is a war exclusion<br>5 on the policy."<br>6 Do you see her statement?<br>7 A I do.<br><br>11 Q She raised with you the issue of<br>12 applicability of a war exclusion.<br>13 Do you see that?<br><br>16 THE WITNESS: I do see what she says, yes. | Defendant's Response:<br><br>"MIL" not proper objection; Facts and circumstances leading to making claim relevant and not prejudicial. |
| Page 288 | Plaintiff's Objections: 402, 403, MIL – Page 288. |
| 6 Q Based upon your interaction with Malika<br>7 Adams, was it your understanding that she does have<br>8 a background that would afford her the ability to | Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 9 understand policy language? | "MIL" not proper objection; Facts and circumstances leading to making claim relevant and not prejudicial. |
| 11 THE WITNESS: Yes. | |
| 14 So as early as July the 3rd, people within 15 your organization were raising with you the issue of 16 a war exclusion, correct? | |
| 20 THE WITNESS: It's what the document says, 21 yes. | |
| 23 Q So as of July the 3rd, did you undertake 24 some more review or analysis to further understand 25 the war exclusion? | |
| Page 289 | Plaintiff's Objections: 402, 403, MIL – Page 289. |
| 3 THE WITNESS: No. | Defendant's Response: "MIL" not proper objection; Facts and circumstances leading to making claim relevant and not prejudicial. |
| Page 290 | Plaintiff's Objections: 402, 403, MIL – Page 290. |
| 25 Q When NBCUniversal made the decision to move | Defendant's Response: "MIL" not proper objection; Facts and circumstances leading to making claim relevant and not prejudicial. |
| Page 291 1 its production out of Israel, that was a voluntary 2 corporate decision that it made, correct? | Plaintiff's Objections: 402, 403, MIL – 291:1-2; 291:7-17; 291:21. |
| 7 THE WITNESS: The company made a decision | 104a – 291:10-14. |

| Deposition Designation | Objection & Response |
|---|---|
| 8 to relocate, yes.<br>9 BY MS. REED:<br>10 Q There was no government or civil authority<br>11 that cut off your ability to have production in<br>12 Israel, correct?<br>13 A I don't know that knowledge. I don't know<br>14 that.<br>15 Q It was NBC's decision as a -- NBCUniversal<br>16 as a corporate entity that made that election to<br>17 move the production, correct?<br><br>21 THE WITNESS: That's correct. | Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial. |
| Page 292<br><br>14 BY MS. REED:<br>15 Q Let me hand you Exhibit 300, please, sir.<br>16 A Yes.<br>17 Q My question is going to be whether you can<br>18 identify that as an email string.<br>19 So go ahead and take a look, please, sir.<br>20 A Yes.<br>21 Okay.<br>22 Q Can you identify this as an email string<br>23 that runs from June 15th through July the 7th, in<br>24 which you were involved?<br>25 A Yes. | Plaintiff's Objections:<br>402, 403, MIL – Page 292.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial. |
| Page 293<br><br>1 Q I want to direct your attention, if I<br>2 could, please, sir, to the first page, second email<br>3 down from Malika Adams to Ms. Richmond and copied to<br>4 you and others.<br>5 Do you see that?<br>6 A Yes.<br><br>17 Q Well, she says, again, "If the only<br>18 assumption is that we are voluntarily pulling out of<br>19 a certain area because of security concerns, I don't<br>20 think we would have coverage for this."<br>21 That's similar to what she told you,<br>22 correct? | Plaintiff's Objections:<br>402, 403, MIL – Page 293.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial. |

**805**

| Deposition Designation | Objection & Response |
|---|---|
| Page 294 | Plaintiff's Objections: 402, 403, MIL – Page 294. |
| 3 THE WITNESS: I see that. | |
| 5 Q And she also says, "Again, I would say with 6 caution, since there is a war exclusion on the 7 policy, that may come into play." 8 That was similar to an issue that she 9 raised with you, correct? | Defendant's Response: "MIL" not proper objection; Facts and circumstances leading to making claim relevant and not prejudicial. |
| 14 THE WITNESS: I do see that, yes. | |
| 16 Q And then in the email at the top of the 17 page, she again says, "Hi Randi, if it's purely 18 voluntary, I don't think we can find coverage under 19 the production policy," doesn't she? 20 A I do see that. | |
| Page 295 | Plaintiff's Objections: 402, 403, MIL – Page 295. |
| 20 BY MS. REED: 21 Q Let me hand you Exhibit 301, please, sir. 22 Can you identify Exhibit 301 as an email 23 string, July 7 to July 8, in which you were 24 involved? 25 A Yes. And I need to read it. | Defendant's Response: "MIL" not proper objection; Facts and circumstances leading to making claim relevant and not prejudicial. |
| Page 296 | Plaintiff's Objections: 402, 403, MIL – Page 296. |
| 1 Okay. 2 Q Mr. Binke says in the middle of the page, 3 "Hi, Kurt. Hope you are having a great time, and 4 sorry to bother you on -- bother you but this is 5 timely." 6 Do you see that? 7 A I do. 8 Q Had you been on vacation for July 4th or 9 something? 10 A To the best of my knowledge, family 11 vacation. | Defendant's Response: "MIL" not proper objection; Facts and circumstances leading to making claim relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 12 Q He writes to you further, "Things are<br>13 escalating in the Middle East and we have senior<br>14 team meeting tomorrow AM and need to update the<br>15 group. Thanks."<br>16 Do you see that?<br>17 A Yes.<br>18 Q Do you know what update he was looking for<br>19 you to provide?<br><br>23 THE WITNESS: It was on how insurance might<br>24 respond. | |
| Page 303<br><br>5 Q Can you identify Exhibit 306 as an email<br>6 directed to you on July the 10th, 2014 from<br>7 Brian Brady?<br>8 A Yes.<br>9 Q Who is Brian Brady?<br>10 A He used to work at NBC security West Coast.<br>11 Q Did he have a role in connection with the<br>12 DIG production?<br>13 A I don't recall him having an active role.<br>14 Brian is based -- was based on the West Coast and<br>15 handled local issues. But Brian was part of<br>16 NBCUniversal security.<br>17 Q Is Brian the person who told you that they<br>18 were going to halt filming as of July the 10th?<br>19 A In this email, it references Brian saying<br>20 that, yes. | Plaintiff's Objections:<br>402, 403, MIL – Page 303.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial. |
| Page 304<br><br>14 BY MS. REED:<br>15 Q Can you identify this as an email string of<br>16 July the 10th, 2014 in which you were involved?<br>17 A Yes.<br>18 Q Is the email from Stephen Smith at the<br>19 bottom of the page, the email report that you<br>20 referred to in your earlier testimony today?<br>21 A Yes.<br>22 Q And is this the communication that you<br>23 particularly identified as being the one that NBC<br>24 security took the position it could no longer | Plaintiff's Objections:<br>402, 403, MIL – Page 304.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 25 guarantee safety or security?<br><br>Page 305<br>1 A Yes.<br>2 Q Was this provided to you by Mr. Binke?<br><br>6 THE WITNESS: Yes, it was. | Plaintiff's Objections:<br>402, 403, MIL – Page 305.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts and circumstances<br>leading to making claim<br>relevant and not prejudicial |
| Page 313<br>3 I have asked you in various ways to confirm<br>4 for me that Ms. Garber, in this precise writing,<br>5 does not say, "Atlantic made a claim decision," did<br>6 she?<br><br>11 THE WITNESS: I do not see those words on<br>12 this piece of paper.<br><br>15 And, also, in regard to the literal<br>16 communication that Ms. Garber has sent you, she does<br>17 not use the words, "Peter Williams said this is<br>18 covered under the policy," did she?<br><br>24 THE WITNESS: Those specific words are not<br>25 on this document, but "he agreed" was a word that | Plaintiff's Objections:<br>402, 403, MIL – Page 313.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts of claim decision and<br>communications relevant and<br>not prejudicial. |
| Page 314<br><br>1 was an acceptance of this claim.<br><br>12 You agree with me that Ms. Garber does not<br>13 include in this writing a statement that Peter<br>14 Williams said that the claim is covered under the<br>15 policy, correct?<br><br>20 THE WITNESS: Those specific words are not<br>21 on this document. | Plaintiff's Objections:<br>402, 403, MIL – Page 314.<br><br>Defendant's Response:<br><br>"MIL" not proper objection;<br>Facts of claim decision and<br>communications relevant and<br>not prejudicial. |
| Page 317<br><br>23 Q Did you ever deal with anyone directly in | Plaintiff's Objections:<br>No objection – Page 317. |

| Deposition Designation | Objection & Response |
|---|---|
| 24 the claims department at Atlantic? | Defendant's Response: |
| Page 318<br><br>3 THE WITNESS: No.<br><br>15 Q Can you identify Exhibit 309 as an email<br>16 string of July 14th that you were involved in?<br>17 A Yes.<br>18 Q Ms. Richmond is writing to you about<br>19 questions if they decided to bring DIG to<br>20 Albuquerque.<br>21 Do you see that?<br>22 A Yes.<br>23 Q Did you start looking into bringing DIG to<br>24 Albuquerque as early as July the 14th?<br>25 A She was asking me questions about bringing | Plaintiff's Objections:<br>402, 403, MIL – Page 318.<br><br>Defendant's Response:<br><br>"MIL" not a proper objection. Facts and circumstances of decision to move production relevant to claim facts and loss claimed. |
| Page 319<br><br>1 foreigners in and what information and the -- I<br>2 responded the same day, minutes later, with the<br>3 information that I would need should it become<br>4 relevant.<br><br>8 MS. REED: Let me hand you Exhibit 310,<br>9 please, sir. This is UCP 454.<br>10 Q Is this a July 14th email string in which<br>11 you were involved?<br>12 A Yes.<br>13 Q Do you see at the bottom, Ms. Richmond is<br>14 asking Andrea Garber, "What do you need from me with<br>15 regard to details to start a claim?"<br>16 A Yes. | Plaintiff's Objections:<br>402, 403, MIL – Page 319.<br><br>Defendant's Response:<br><br>"MIL" not a proper objection. Facts and circumstances of decision to move production relevant to claim facts and loss claimed. |
| Page 321<br>14 Q Ms. Richmond then asked Ms. Garber:<br>15 "Is there any risk of the<br>16 situation in Israel changing status;<br>17 i.e., declaration of war, that could<br>18 impede us getting a claim?"<br>19 Do you see that?<br>20 A I do. | Plaintiff's Objections:<br>402, 403, MIL – Page 321.<br><br>Defendant's Response:<br><br>"MIL" not a proper objection. Facts and circumstances of decision to move production |

| Deposition Designation | Objection & Response |
|---|---|
| 21 Q So she was raising, again, this same common<br>22 theme we've seen in numerous discussions now in<br>23 emails about war? | relevant to claim facts and loss claimed. |
| Page 322 | Plaintiff's Objections:<br>402, 403, MIL – Page 322. |
| 3 THE WITNESS: I see what she has written<br>4 here.<br>5 BY MS. REED:<br>6 Q And she's bringing up this concept of war<br>7 yet again in more emails, right? | Defendant's Response:<br><br>"MIL" not a proper objection. Facts and circumstances of decision to move production and pursue claim relevant to claim facts and loss claimed. |
| 11 THE WITNESS: Randi Richmond doesn't<br>12 understand insurance. It's not her forte. It's not<br>13 something she -- I want to make sure you're still<br>14 with me. She -- it's not her forte.<br>15 I think it was common there was a war<br>16 exclusion. She's just asking a reasonable question.<br><br>19 Q She's bringing up the concept of war, yet<br>20 again, in another email, right?<br><br>24 THE WITNESS: Yes. That's what she says in<br>25 this email dated July 14th. | |
| Page 326 | Plaintiff's Objections:<br>402, 403, MIL – Page 326. |
| 11 Q Let me hand you what's been previously<br>12 marked as Defendant's 30, please, sir.<br>13 A Okay.<br>14 Q Can you identify Exhibit 30 as an email<br>15 string from July 14th through July 14th in which you<br>16 were involved?<br>17 A Yes.<br>18 Q Let me direct your attention, please, sir,<br>19 toward the bottom of the page, to the message from<br>20 Andrea Garber to Randi Richmond, copied to you.<br>21 Do you see that one?<br>22 A Yes.<br>23 Q Second paragraph, "If there is an<br>24 actual, quote, 'declaration of war,'<br>25 end quote, we will have an issue with | Defendant's Response:<br><br>"MIL" not a proper objection. Facts and circumstances of decision to move production, make claim, discussion of claim relevant to claim facts and loss claimed. |
| Page 327<br>1 coverage under the policy because | Plaintiff's Objections:<br>402, 403, MIL – Page 327. |

| Deposition Designation | Objection & Response |
|---|---|
| 2 there is a broad exclusion for acts of<br>3 war. The exclusion includes, quote,<br>4 'war-like acts,' close quote, but the<br>5 carrier did not bring this up when I<br>6 spoke to them."<br>7 Do you see that?<br>8 A Yes.<br>9 Q Did you have any conversations with<br>10 Ms. Garber about that statement?<br>11 A May or may not have.<br>12 Q You don't recall today?<br>13 A I don't recall.<br>14 Q Is it accurate to say that on July 14th,<br>15 Ms. Garber is yet another person who's bringing up<br>16 the concept of war in the context of discussion of<br>17 this claim or potential claim?<br><br><br>21 BY MS. REED:<br>22 Q And does Ms. Garber bring to everyone's<br>23 attention that there is not only a war exclusion,<br>24 but also a war-like acts exclusion? | Defendant's Response:<br><br>"MIL" not a proper objection. Facts and circumstances of decision to move production, make claim, discussion of claim relevant to claim facts and loss claimed. |
| Page 328<br>2 THE WITNESS: Yes, that is what the<br>3 document says.<br><br>9 Q And Ms. Garber is raising it as an issue in<br>10 the context of this claim as of July the 14th,<br>11 right?<br><br>16 THE WITNESS: She's bringing up the<br>17 exclusion includes war-like acts, yes.<br>18 BY MS. REED:<br>19 Q And war, right?<br><br>22 THE WITNESS: Correct. That's what the<br>23 document says. | Plaintiff's Objections:<br>402, 403, MIL – Page 328.<br><br>Defendant's Response:<br><br>"MIL" not a proper objection. Facts and circumstances of decision to move production, make claim, discussion of claim relevant to claim facts and loss claimed. |
| Page 332<br>7 Q Let me hand you what was previously marked<br>8 as Defendant's 61, please, sir.<br>9 A Okay.<br>10 Q Can you identify this as an email string | Plaintiff's Objections:<br>No objection – Page 332.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 11 that begins July 14th and continues through<br>12 July 15th?<br>13 A Yes. I do see that.<br><br>Page 333<br><br>1 Let me direct your attention to the top of<br>2 the first page, if I may.<br>3 I want to look at the second email down<br>4 from Susan Weiss to Andrea Garber of July 15th.<br>5 She writes, "Andrea, just got<br>6 an email from Michael at OBI. He<br>7 confirmed receipt of my email and said<br>8 it was forwarded to the claims<br>9 department to start the process."<br>10 Do you see that?<br>11 A I do.<br>12 Q Does that refresh your recollection that<br>13 the submission of the claim to Atlantic was made on<br>14 July the 15th?<br><br><br>19 THE WITNESS: Yes.<br><br>Page 336<br><br>4 Q Let me hand you what's been previously<br>5 marked as Defendant's 35, please, sir.<br>6 A Okay.<br>7 Q Can you identify this as an email string of<br>8 July 18th, 2014, on which you were included?<br>9 A Yes.<br>10 Q At the top of the page, Joanne Quintal is<br>11 writing. Do you know who she is?<br>12 A I do not.<br>13 Q Notes that she's with Aon by her email<br>14 address; is that correct?<br>15 A That's what the document says, yes.<br>16 Q And Joanne says in her second sentence, "We<br>17 will need to understand details as property<br>18 policy" --<br>19 A I'm sorry. Now I know where you are. Say<br>20 that again, please.<br>21 Q Her second sentence reads, "We will need to<br>22 understand details as property policy also has a war | <br><br><br><br>Plaintiff's Objections:<br>No objection – Page 333.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>402, 403, MIL – Page 336.<br><br>Defendant's Response:<br><br>"MIL" not a proper objection.<br>Facts and circumstances of<br>decision to move production,<br>make claim, discussion of claim<br>relevant to claim facts and loss<br>claimed. |

| Deposition Designation | Objection & Response |
|---|---|
| 23 exclusion."<br>24 Do you see that?<br>25 A Yes. | |
| Page 337<br><br>1 Q So Ms. Quintal also raised a war exclusion<br>2 in her communication?<br><br>5 THE WITNESS: She does say that, yes. | Plaintiff's Objections:<br>402, 403, MIL – Page 337.<br><br>Defendant's Response:<br><br>"MIL" not a proper objection. Facts and circumstances of decision to move production, make claim, discussion of claim relevant to claim facts and loss claimed. |
| Page 338<br>1 BY MS. REED:<br>2 Q Let me hand you Exhibit 314, please, sir.<br>3 A Okay.<br>4 Q Can you identify this as an email string of<br>5 July 25th, 2014, on which you were copied?<br>6 A Yes.<br>7 Q I want to direct your attention to the<br>8 middle email, please, sir, that's from Andrea Garber<br>9 to B.J. Markus.<br>10 Do you see that one?<br>11 A Yes.<br>12 Q Ms. Garber is writing to B.J. about what<br>13 appears to be some sort of work on extra<br>14 expenditures.<br>15 Do you see that?<br><br>18 THE WITNESS: I see that.<br>19 BY MS. REED:<br>20 Q Let me direct your attention to the second<br>21 sentence, please, sir, that reads, "If there is any<br>22 amount that would have" --<br>23 A I'm there, yes.<br>24 Q "If there is any amount that would<br>25 have been spent on those same | Plaintiff's Objections:<br>No objection – Page 338.<br><br>Defendant's Response:<br><br>"MIL" not a proper objection. Facts and circumstances of decision to move production, make claim, discussion of claim relevant to claim facts and loss claimed. |
| Page 339<br>1 categories of cost had the production<br>2 stayed in Israel, then those amounts | Plaintiff's Objections:<br>No objection – Page 339. |

| Deposition Designation | Objection & Response |
|---|---|
| 3 need to be factored in and only the<br>4 extra expenditures go into the claim."<br>5 Do you see that?<br>6 A Yes.<br><br>24 Q Did you have any role or tasks that were<br>25 assigned to you in regard to quantifying any extra | Defendant's Response: |
| Page 340<br><br>1 expenses?<br>2 A No. | Plaintiff's Objections:<br>No objection – Page 340.<br><br>Defendant's Response: |
| Page 357<br><br>13 Thinking back over the entire relationship<br>14 with Atlantic, other than the DIG claim, can you<br>15 identify any claim that was otherwise denied in the<br>16 course of the entire relationship?<br>17 A I cannot. | Plaintiff's Objections:<br>402, 403 – Page 357.<br><br>Defendant's Response:<br>Depending on MIL rulings,<br>relevant to parties' relationship<br>and good faith of ASIC in<br>handling of NBC account. |
| Page 368<br><br>1 (Exhibit 317 was marked for<br>2 identification by the court reporter<br>3 and is attached hereto.)<br>4 BY MS. REED:<br>5 Q Let me hand you Exhibit 317, please, sir.<br>6 A Yes.<br>7 Q Can you identify this as an email string<br>8 that runs from November 26, 2013 through December<br>9 10th, 2013, in which you were involved?<br>10 A Yes.<br>11 Q Would you look at the page that is<br>12 Bates-numbered AONNBCU 244, please, sir.<br>13 A I am there.<br>14 Q Do you see the email at the top of the page<br>15 from Susan Weiss to you dated December 4?<br>16 A Yes.<br>17 Q She says, "Kurt, Thank you for<br>18 arranging the call today with Jerry<br>19 DiCanio and Mark Binke to review the<br>20 upcoming renewal terms." | Plaintiff's Objections:<br>402, 403 – Page 368.<br><br>Defendant's Response:<br><br>Depending on MIL rulings,<br>relevant to parties' relationship<br>and good faith of ASIC in<br>handling of NBC account. |

| Deposition Designation | Objection & Response |
|---|---|
| 21 Do you see that?<br>22 A I do.<br><br><br>Page 369<br>1 Q And do you recall that there would have<br>2 been a presentation made on the proposed terms for<br>3 the policy?<br>4 A Yes.<br>5 Q Would you turn back toward the front of the<br>6 exhibit, please, sir, to the numbered Page 243.<br>7 A Yes.<br>8 Q On December 5th, 2013, did Andrea Garber<br>9 write to you and to Malika Adams to report that<br>10 OneBeacon agreed to a further rate reduction to<br>11 $0.11 on the scripted TV program?<br>12 A I do see that.<br>13 Q And above that do you respond, "This is<br>14 great news"?<br>15 A Yes.<br>16 Q Were you happy to hear that particular rate<br>17 quote?<br>18 A I think I was probably happy -- happy to<br>19 know that we were staying with OneBeacon and we were<br>20 able to come to a mutual agreement.<br>21 I believe this was a one cent increase from<br>22 our prior year. So it's never good news or great<br>23 news when you have an additional cent increase, but<br>24 it was good news that the negotiations had started,<br>25 I believe, at a 25 cent rate down to 15 cent rate,<br><br>Page 370<br>1 down to an 11 cent rate. So I think we were very<br>2 pleased that we got them down to a lower rate and<br>3 happy to have, again, stayed with them, not to have<br>4 to change carriers. | <br><br><br><br>Plaintiff's Objections:<br>402, 403 – Page 369.<br><br>Defendant's Response:<br><br>Depending on MIL rulings, relevant to parties' relationship and good faith of ASIC in handling of NBC account.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>402, 403 – Page 370.<br><br>Defendant's Response:<br><br>Depending on MIL rulings, relevant to parties' relationship and good faith of ASIC in handling of NBC account. |

7.   **ANDREA GARBER**

| Deposition Designation | Objection & Response |
|---|---|
| Defendant's Designation of Andrea Garber p. 12, 1. 21-p. 13, 1. 1; p. 27. 1. 4-p. 27, 1. 18; p. 28, 1. 11-p. 28, 1. 14; p. 29, 1. 11-p. 30, 1. 15; p. 31, 1. 2-p. 31, 1. 11; p. 31, 1. 23-p. 31, 1. 25; p. 33, 1. 7-p. 33, 1. 10; p. 33, 1. 16-p. 33, 1. 24; p. 35, 1. 24-p. 36, 1. 5; p. 36, 1. 13-p. 36, 1. 15; p. 36, 1. 22-p. 36, 1. 24; p. 37, 1. 18-p. 38, 1. 2; p. 39, 1. 12-p. 39, 1. 21; p. 39, 1. 25-p. 40, 1. 6; p. 43, 1. 6-p. 43, 1. 24; p. 44, 1. 17-p. 44, 1. 25; p. 46, 1. 7-p. 46, 1. 24; p. 47, 1. 3-p. 47, 1. 8; p. 47, 1. 15-p. 48, 1. 3; p. 48, 1. 6-p. 48, 1. 18; p. 49, 1. 2-p. 50, 1. 3; p. 50, 1. 14-p. 51, 1. 3; p. 52, 1. 9-p. 52, 1. 10; p. 52, 1. 14-p. 52, 1. 22; p. 53, 1. 10-p. 53, 1. 16; p. 55, 1. 5-p. 56, 1. 20; p. 57, 1. 1-p. 57, 1. 12; p. 57, 1. 20-p. 57, 1. 25; p. 60, 1. 18-p. 61, 1. 12; p. 61, 1. 16-p. 61, 1. 19; p. 61, 1. 23-p. 63, 1. 18; p. 63, 1. 23-p. 63, 1. 25; p. 65, 1. 4-p. 65, 1. 17; p. 66, 1. 13-p. 66, 1. 20; p. 66, 1. 24-p. 66, 1. 24; p. 67, 1. 2-p. 67, 1. 6; p. 67, 1. 11-p. 67, 1. 17; p. 67, 1. 23-p. 67, 1. 25; p. 68, 1. 25-p. 69, 1. 3; p. 69, 1. 8-p. 69, 1. 9; p. 69, 1. 11-p. 69, 1. 12; p. 69, 1. 15-p. 69, 1. 15; p. 69, 1. 17-p. 70, 1. 3; p. 70, 1. 7-p. 70, 1. 7; p. 70, 1. 16-p. 70, 1. 18; p. 70, 1. 24-p. 70, 1. 24; p. 71, 1. 2-p. 71, 1. 2; p. 71, 1. 7-p. 71, 1. 7; p. 71, 1. 9-p. 71, 1. 10; p. 71, 1. 14-p. 71, 1. 14; p. 71, 1. 19-p. 71, 1. 20; p. 71, 1. 24-p. 71, 1. 24; p. 72, 1. 1-p. 72, 1. 20; p. 73, 1. 5-p. 73, 1. 16; p. 74, 1. 6-p. 74, 1. 6; p. 80, 1. 2-p. 80, 1. 18; p. 80, 1. 22-p. 81, 1. 2; p. 81, 1. 6-p. 81, 1. 7; p. 82, 1. 11-p. 82, 1. 14; p. 86, 1. 24-p. 87, 1. 7; p. 87, 1. 13-p. 87, 1. 24; p. 88, 1. 3-p. 88, 1. 8; p. 88, 1. 12-p. 88, 1. 21; p. 102, 1. 20-p. 102, 1. 23; p. 103, 1. 4-p. 103, 1. 4; p. 103, 1. 8-p. 103, 1. 10; p. 103, 1. 14-p. 103, 1. 19; p. 103, 1. 23-p. 103, 1. 24; p. 106, 1. 9-p. 106, 1. 12; p. 106, 1. 17-p. 106, | Plaintiffs object to Defendant's designations as follows: |

| Deposition Designation | Objection & Response |
|---|---|
| 1. 21; p. 107, 1. 1-p. 107, 1. 25; p. 108, 1. 7-p. 108, 1. 21; p. 108, 1. 25-p. 108, 1. 25; p. 110, 1 22-p. 111, 1. 8; p. 111, 1. 19-p. 111, 1. 21; p. 112, 1. 11-p. 112, 1. 13; p. 112, 1. 17-p. 112, 1. 21; p. 112, 1. 23-p. 112, 1. 24; p. 113, 1. 2-p. 113, 1. 5; p. 113, 1. 9-p. 113, 1. 9; p. 114, 1. 1-p. 114, 1. 20; p. 120, 1. 16-p. 120, 1. 22; p. 121, 1. 2-p. 121, 1. 20; p. 122, 1. 14-p. 122, 1. 22; p. 123, 1. 6-p. 124, 1. 4; p. 125, 1. 12-p. 125, 1. 15; p. 125, 1. 20-p. 125, 1. 25; p. 129, 1. 20-p. 131, 1. 14; p. 132, 1. 11-p. 133, 1. 2; p. 133, 1. 7-p. 134, 1. 7; p. 137, 1. 1-p. 137, 1. 16; p. 137, 1. 22-p. 138, 1. 16; p. 137, 1. 20-p. 139, 1. 9; p. 139, 1. 13-p. 139, 1. 19; p. 140, 1. 2-p. 141, 1. 3; p. 142, 1. 4-p. 142, 1. 11; p. 142, 1. 19-p. 145, 1. 2; p. 150, 1. 15-p. 150, 1. 21; p. 151, 1. 8-p. 151, 1. 11; p. 151, 1. 21-p. 152, 1. 5; p. 152, 1. 9-p. 153, 1. 14; p. 155, 1. 11-p. 155, 1. 20; p. 156, 1. 10-p. 156, 1. 14; p. 157, 1. 20-p. 158, 1. 6; p. 158, 1. 18-p. 159, 1. 5; p. 159, 1. 9-p. 159, 1. 12; p. 160, 1. 4-p. 160, 1. 7; p. 160, 1. 12-p. 160, 1. 13; p. 161, 1. 5-p. 161, 1. 7; p. 162, 1. 14-p. 162, 1. 16; p. 162, 1. 20-p. 163, 1. 1; p. 168, 1. 15-p. 168, 1. 21; p. 170, 1. 11-p. 170, 1. 13; p. 170, 1. 19-p. 171, 1. 2; p. 171, 1. 15-p. 171, 1. 20; p. 173, 1. 9-p. 173, 1. 16; p. 173, 1. 20-p. 173, 1. 23; p. 174, 1. 2-p. 174, 1. 5; p. 175, 1. 1-p. 176, 1. 7; p. 176, 1. 11-p. 176, 1. 21; p. 177, 1. 1-p. 178, 1. 21; p. 179, 1. 23-p. 181, 1. 1; p. 181, 1. 7-p. 181, 1. 22; p. 182, 1. 1-p. 182, 1. 2; p. 184, 1. 1-p. 184, 1. 8; p. 184, 1. 14-p. 184, 1. 22; p. 185, 1. 18-p. 185, 1. 23; p. 189, 1. 4-p. 189, 1. 11; p. 190, 1. 1-p. 190, 1. 7; p. 190, 1. 14-p. 190, 1. 18; p. 191, 1. 1-p. 191, 1. 3; p. 191, 1. 18-p. 191, 1. 18; p. 191, 1. 23-p. 192, 1. 4; p. 192, 1. 10-p. 192, 1. 12; p. 196, 1. 2-p. 196, 1. 7; p. 196, 1. 13-p. 196, 1. 15; p. 199, 1. 13-p. 199, 1. 16; p. 199, 1. 22-p. 200, 1. 4; p. 200, 1. 9-p. 200, 1. 13; p. 202, 1. 22-p. 203, 1. 3; p. 203, 1. 17-p. 204, 1. 3; p. 204, 1. 6- | |

| Deposition Designation | Objection & Response |
|---|---|
| p. 204, 1. 11; p. 204, 1. 17-p. 205, 1. 6; p. 205, 1. 10-p. 206, 1. 2; p. 206, 1. 6-p. 206, 1. 8; p. 206, 1. 12-p. 206, 1. 25; p. 207, 1. 13-p. 209, 1. 4; p. 209, 1. 21-p. 209, 1. 25; p. 210, 1. 5-p. 210, 1. 12; p. 210, 1. 17-p. 211, 1. 4; p. 212, 1. 6-p. 212, 1. 10; p. 212, 1. 19-p. 212, 1. 25; p. 213, 1. 5-p. 213, 1. 7; p. 217, 1. 14-p. 218, 1. 4; p. 218, 1. 8-p. 218, 1. 14; p. 218, 1. 18-p. 219, 1. 1; p. 224, 1. 16-p. 224, 1. 21; p. 224, 1. 25-p. 225, 1. 1; p. 225, 1. 10-p. 225, 1. 25; p. 226, 1. 10-p. 226, 1. 20; p. 229, 1. 22-p. 230, 1. 2; p. 230, 1. 5-p. 230, 1. 10; p. 230, 1. 14-p. 230, 1. 18; p. 239, 1. 2-p. 239, 1. 11; p. 239, 1. 17-p. 240, 1. 1; p. 242, 1. 18-p. 243, 1. 15; p. 245, 1. 2-p. 245, 1. 20; p. 247, 1. 25-p. 248, 1. 3; p. 248, 1. 7-p. 248, 1. 9; p. 248, 1. 11-p. 248, 1. 17; p. 248, 1. 22-p. 248, 1. 24; p. 251, 1. 1-p. 251, 1. 2; p. 251, 1. 7-p. 251, 1. 13; p. 251, 1. 18-p. 251, 1. 19; p. 265, 1. 17-p. 265, 1. 20; p. 265, 1. 23-p. 266, 1. 1; p. 267, 1. 23-p. 268, 1. 12; p. 268, 1. 16-p. 269, 1. 5; p. 269, 1. 9-p. 269, 1. 13; p. 273, 1. 2-p. 273, 1. 14; p. 283, 1. 17-p. 283, 1. 25; p. 284, 1. 13-p. 284, 1. 24; p. 285, 1. 6-p. 285, 1. 13; p. 286, 1. 13-p. 286, 1. 24; p. 289, 1. 1-p. 289, 1. 5; p. 289, 1. 9-p. 289, 1. 11; p. 290, 1. 13-p. 290, 1. 17; p. 290, 1. 20-p. 290, 1. 22; p. 291, 1. 1-p. 291, 1. 20; p. 300, 1. 4-p. 300, 1. 7; p. 300, 1. 15-p. 300, 1. 24; p. 304, 1. 7-p. 304, 1. 19; p. 304, 1. 25-p. 306, 1. 3; p. 306, 1. 7-p. 306, 1. 21; p. 309, 1. 15-p. 309, 1. 23; p. 310, 1. 19-p. 310, 1. 22; p. 311, 1. 1-p. 311, 1. 3; p. 311, 1. 5-p. 311, 1. 8; p. 311, 1. 12-p. 311, 1. 22; p. 311, 1. 25-p. 312, 1. 6; p. 312, 1. 9-p. 313, 1. 7; p. 333, 1. 10-p. 333, 1. 12; p. 333, 1. 15-p. 333, 1. 21; p. 333, 1. 24-p. 333, 1. 25; p. 334, 1. 5-p. 335, 1. 4; p. 335, 1. 24-p. 336, 1. 11; p. 336, 1. 18-p. 337, 1. 1; p. 337, 1. 4-p. 337, 1. 9; p. 338, 1. 19-p. 339, 1. 7; p. 364, 1. 24-p. 366, 1. 3; p. 366, 1. 21-p. 367, 1. 20; p. 368, 1. 14-p. 368, 1. 19; p. 368, 1. 22-p. 368, 1. | |

| Deposition Designation | Objection & Response |
|---|---|
| 24; p. 369, 1. 14-p. 369, 1. 17; p. 369, 1. 21-p. 369, 1. 23; p. 371, 1. 1-p. 371, 1. 15; p. 371, 1. 18-p. 371, 1. 24; p. 375, 1. 8-p. 375, 1. 10; p. 375, 1. 13-p. 375, 1. 13<br><br>Page 12<br>21 BY MR. KEELEY:<br>22 Q Good morning, Ms. Garber. My name is Mike<br>23 Keeley. We met briefly off the record but just so<br>24 you know, I represent the defendant in this lawsuit,<br>25 Atlantic Specialty Insurance Company.<br><br>Page 13<br>1 A Okay. How do you do.<br><br>Page 27<br>4 Q Did Electric Mutual Insurance Company have<br>5 any relationship to NBC?<br>6 A Yes.<br>7 Q What was the relationship?<br>8 A Electric Mutual provided the general<br>9 liability, workers comp and auto liability policies<br>10 for General Electric Corporation and NBC was a<br>11 subsidiary company.<br>12 So they provided those polices for NBC.<br><br>Page 28<br>11 Q Other than studying for the CPCU<br>12 designation, did you have any other educational<br>13 classes in connection with the insurance industry?<br>14 A No.<br><br>Page 29 | |

| Deposition Designation | Objection & Response |
|---|---|
| 11 Q So you indicated you were hired as the<br>12 Underwriting Manager.<br>13 What did that involve?<br>14 A At first, it was really a claims position<br>15 more than anything.<br>16 The relationship between Electric Mutual<br>17 and GE was a close relationship. The Risk Manager<br>18 at GE at that time was able to request that Electric<br>19 Insurance provide certain policies if he looked at<br>20 what outside company was charging one of their<br>21 subsidiaries and could that coverage fit into the<br>22 book of business that Electric Mutual provided.<br>23 Electric Mutual was not a subsidiary of GE<br>24 but they were an affiliated company. So it was a<br>25 close connection even though Electric Mutual was a<br><br>Page 30<br>1 fully -- at that point, it was a mutual company<br>2 which by definition means owned by its policy<br>3 holders. It changed structure a little bit over<br>4 time.<br>5 So the Risk Manager at GE looked at this<br>6 production policy that NBC -- which was a much<br>7 smaller company than it is today -- had and they<br>8 were going outside to an outside Insurance Company<br>9 and said, based on what I am seeing, we should be<br>10 able to take this in house. So they asked Electric<br>11 Insurance to do this, provide the policy. | |

| Deposition Designation | Objection & Response |
|---|---|
| 12 Electric Mutual didn't have any experience 13 or anybody that knew anything about production 14 insurance. So they went seeking a person and I 15 became that person.<br><br>Page 31<br>2 Q So I think before we broke, you were 3 explaining that General Electric had approached 4 Electric Mutual about producing some policy -- some 5 production polices for NBC and didn't have anyone 6 who was experienced and so they sought you out or 7 advertised for the position, I suppose, and you were 8 hired. 9 Is that essentially correct? 10 A Yes, they did advertise for the position. 11 They did not seek me out.<br><br><br>23 Q Did you have any actual production 24 experience up to that point in time? 25 A Very little, actually.<br><br><br>Page 33<br>7 Q So you mentioned that you were hired as 8 the Underwriting Manager but you primarily were 9 doing claims to begin with; is that correct? 10 A Yes.<br><br><br>16 In the beginning, they thought they needed | |

| Deposition Designation | Objection & Response |
|---|---|
| 17 a person 100 percent to work with NBC and this.<br>18 Production policy and the claims.  They<br>19 had already set up a relationship with an outside<br>20 adjusting company and my job was really just to<br>21 manage their relationship with the local NBC people<br>22 and make sure that there was a responsiveness to<br>23 when there was a production issue that would fall<br>24 under the production policy coverage.<br><br>Page 35<br>24 So do I understand correctly that<br>25 beginning in or about 1991, you would directly<br><br>Page 36<br>1 handle production claims?<br>2 A Yes.<br>3 Q And during that period of time, how<br>4 frequent were production claims?<br>5 A I would say maybe ten claims a year.<br><br><br>13 Q And during that time period, did you have<br>14 any imminent peril claims that you handled?<br>15 A No.<br><br><br>22 Q So all the claims that came in were claims<br>23 that you had determined were covered?<br>24 A Yes<br><br><br>Page 37 | |

| Deposition Designation | Objection & Response |
|---|---|
| 18 Q And from that period of time, late 1990's<br>19 to until you left in late December 2009, did your<br>20 responsibilities change?<br>21 A They did.<br>22 Q Tell me when they next changed.<br>23 A In 2000, I had a personal issue that I had<br>24 to attend to. So I left full-time employment with<br>25 at that time Electric Insurance Company and became a<br><br>Page 38<br>1 consultant to just handle the production insurance<br>2 issues with NBC.<br><br>Page 39<br>12 And at that point, you focused only on<br>13 production policy matters?<br>14 A Right.<br>15 Q And was this still in connection with<br>16 claims?<br>17 A Yes.<br>18 Q At any time up to that point in time, did<br>19 you have any underwriting responsibilities in<br>20 connection with the production policy?<br>21 A No.<br><br><br>25 Q And for how long did that continue where<br><br>Page 40<br>1 you were working as a consultant?<br>2 A Until early 2004.<br>3 Q Approximately how many claims did you<br>4 handle a year -- production policy claims between | |

| Deposition Designation | Objection & Response |
|---|---|
| 5 2000 and 2004?<br>6 A Between ten and fifteen<br><br>Page 43<br>6 Q And during that period when you were<br>7 consulting from 2000 to 2004, did you deny any<br>8 claims?<br>9 A No.<br>10 Q So what happened after 2004?<br>11 A In 2004, I resumed full-time employment<br>12 with Electric Insurance, this time -- still<br>13 continuing to be dedicated to NBC and what had then<br>14 become NBC/Universal.<br>15 Q Were you handling solely production policy<br>16 claims?<br>17 A Yes.<br>18 Q And did your responsibilities change along<br>19 the way until you left in 2009?<br>20 A No.<br>21 Were there any claims from 2004 through<br>22 2009 that you denied?<br>23 A We had one that we initially denied and we<br>24 had one that we questioned<br><br>Page 44<br>17 MR. KEELEY:<br>18 Q So on December 31, 2009, you ended your<br>19 position with Electric Insurance Company; is that<br>20 right?<br>21 A Yes.<br>22 Q And you went to work with Aon?<br>23 A Yes.<br>24 Q What is Aon?<br>25 A Aon is an insurance broker.<br><br>Page 46 | |

| Deposition Designation | Objection & Response |
|---|---|
| 7 Q Is it one of the larger insurance brokers<br>8 in the country?<br>9 A It's my understanding, yes.<br>10 Q And what type of services does it provide,<br>11 generally?<br>12 A An insurance broker facilitates purchase<br>13 of insurance for a commercial client.  That's what<br>14 they do.<br>15 Q And how did you come to work at Aon?<br>16 A When I left Electric, it was because NBC<br>17 elected not to renew the production policy through<br>18 Electric Insurance, and instead, they were going to<br>19 the open market and required a broker to do that.<br>20 Aon was selected to be that broker but<br>21 because of my longstanding relationship with the<br>22 production people on the NBC TV side, they wanted me<br>23 to remain involved, and so as part of the service,<br>24 Aon agreed to hire me as that liaison.<br><br>Page 47<br>3 Q When you say you were hired as a liaison,<br>4 tell me what you mean by that.<br>5 A I was not a broker.  I didn't have a<br>6 broker's license at that point in time and in the<br>7 fee structure, there were the fees for the services<br>8 and then there was one head count.<br><br><br>15 Q I'm sorry, but I don't understand what you<br>16 mean by when you say there were fees and then there | |

| Deposition Designation | Objection & Response |
|---|---|
| 17 was one head count.<br>18 A Well, Aon doesn't work for free.<br>19 Q Okay.<br>20 A So there is compensation for their<br>21 services and they decided how much that was, but in<br>22 addition to that, because NBC wanted me to be<br>23 involved, they agreed to hire me and charge back all<br>24 the costs for me as a person to be hired to NBC as<br>25 part of that fee agreement.<br><br>Page 48<br>1 Q So Aon would pay you but whatever they<br>2 paid you, NBC would reimburse Aon.<br>3 A Right<br><br><br>6 What exactly did you do?<br>7 A When I began in early 2010, I would get<br>8 information about new shows that were starting up,<br>9 and I would pass that information along to the<br>10 broker people at the Aon office, and I would get<br>11 documents back from them confirming coverage, and I<br>12 would make sure that the people that I was working<br>13 with at NBC had those documents.<br>14 And when there were claims, I would tell<br>15 the people at Aon that there was an event and assist<br>16 in working with the carrier to get the information<br>17 to them and facilitate any discussions that they<br>18 needed to have with the production folks. | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 49<br>2 BY MR. KEELEY:<br>3 Q You understand that you're testifying in a<br>4 lawsuit that has been filed against Atlantic<br>5 Specialty Insurance Company concerning a production<br>6 policy for the year 2014 through June 31, 2016,<br>7 correct?<br>8 A Yes.<br>9 Q And you understand that that policy dates<br>10 back to one that was first issued in 2010; is that<br>11 correct?<br>12 A Yes.<br>13 Q That first policy was actually issued by<br>14 OneBeacon Insurance Company, correct?<br>15 A I believe the carrier -- actual carrier<br>16 might have been Atlantic Specialty.<br>17 Q So it was either Atlantic Specialty or<br>18 Atlantic's parent, OneBeacon; is that correct?<br>19 A Yes, that is my understanding, yes.<br>20 Q So my question is with respect to that<br>21 very first policy, do you understand that there were<br>22 negotiations between Aon and either OneBeacon or<br>23 Atlantic over the form of the policy?<br>24 A That was my understanding at the time,<br>25 yes.<br><br>Page 50<br>1 Q And did you have any involvement in the<br>2 discussions concerning the form of the policy?<br>3 A No.<br><br><br>14 Did you have any discussions concerning<br>15 the terms of the policy before it took effect? | |

| Deposition Designation | Objection & Response |
|---|---|
| 16 A No.<br>17 Q Do you have an understanding as to who at<br>18 Aon had those discussions with Atlantic?<br>19 A Yes.<br>20 Q And who do you understand had those<br>21 discussions?<br>22 A George Walden and Susan Weiss.<br>23 Q Who is George Walden?<br>24 A He worked at the Aon office in New York<br>25 and he was the primary contact or the first person<br><br>Page 51<br>1 that was contacted with regard to this change from<br>2 Electric Insurance to an open market and broker<br>3 services<br><br>Page 52<br>9 Q Did you eventually get to know Mr. Walden<br>10 very well?<br><br><br>14 THE WITNESS: Well, enough, yes.<br>15 BY MR. KEELEY:<br>16 Q Do you know how long he had been in the<br>17 insurance industry by that time?<br>18 A I only knew a long time. I didn't know<br>19 how long.<br>20 Q And was he experienced with production<br>21 polices, to your knowledge?<br>22 A That was my understanding, yes<br><br>Page 53<br>10 Was Susan Weiss -- Susan Weiss was also an<br>11 employee of Aon; is that right?<br>12 A Yes.<br>13 Q And do you know whether she also was | |

| Deposition Designation | Objection & Response |
|---|---|
| 14 involved in negotiations over the terms of the<br>15 policy in late 2009 and early 2010?<br>16 A That was my understanding, yes<br><br>Page 55<br>5 Q So as a liaison between Aon and<br>6 NBC/Universal, what were your responsibilities<br>7 during that first year?<br>8 A To pass information back and forth and<br>9 assist when there were questions to make sure that<br>10 they got appropriately answered and to make sure<br>11 that we had an appropriate claims response from the<br>12 carrier when needed.<br>13 Q Who at NBC/Universal were you primarily<br>14 dealing with?<br>15 A It would have been Kurt Ford.<br>16 Q What was Mr. Ford's position?<br>17 A He's Senior Vice President of Production<br>18 Services.<br>19 Q What were his responsibilities, generally?<br>20 A Generally, he takes care of all of the<br>21 sort of nitty-gritty things that have to do with<br>22 production.<br>23 It's such a wide ranging role. Insurance<br>24 is one of his responsibilities, to make sure that he<br>25 understands when people have questions about<br><br>Page 56<br>1 insurance on the -- from at the production level<br>2 In 2010, did NBC have a risk manager?<br>3 A NBC, no they didn't<br>4 Q Do they, have one now?<br>5 Q And somebody else, an affiliate, acts as<br>7 the risk manager for NBC? | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 56:4-17<br>MIL, 402,403<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 8 A Comcast provides risk management services, 9 if you will, that the function is at Comcast. 10 And my current position working for 11 Comcast is to be the risk manager for NBC/Universal 12 production in particular. 13 Q So you are not currently employed by 14 NBC/Universal. 15 A No. 16 Q You are currently employed by Comcast? 17 A Yes. 18 Q And are you the Risk Manager? 19 A I am part of the Risk Management 20 Department.<br><br>Page 57 1 Did you deal with anyone else? 2 A Kurt Ford has set people that work for him 3 and I dealt with. 4 Q Who would that have been back then in 5 2010? 6 A Pat Donovan. 7 Q Who else? 8 A Vicky Aguilar. 9 Q Who else? 10 A Curt Williams. 11 Q Who else? 12 A Those were my primary contacts.<br><br><br>20 Q Who else at Aon did you typically deal 21 with? 22 A I dealt with Susan Weiss, who was my boss 23 Val Beckles was the person who also worked 24 for Susan that I would send information to, and 25 Debbie Kizner.<br><br>Page 60 | This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 18 Our plan is to start<br>19 marking defendants with Exhibit 1.<br>20 THE WITNESS: Okay.<br>21 BY MR. KEELEY:<br>22 Q So this is a couple of E-mails,<br>23 Ms. Garber, and you can see the first one in time is<br>24 dated July 16, 2010, from Val Beckles to Kurt Ford<br>25 and yourself.<br><br>Page 61<br>1 And it says,<br>2 "Hello Andrea and Kurt,<br>3 "In light the past<br>4 servicing/clearance issues we have seen<br>5 from the carrier, Susan and I had a phone<br>6 conversation with underwriter,<br>7 Wanda Phillips, yesterday . . ."<br>8 Do you see that?<br>9 A Un-huh.<br>10 Q Does this involve the timing and response<br>11 to cast medicals that you were mentioning to me or<br>12 is this something totally different?<br><br><br>16 THE WITNESS: Yes, it does.<br>17 BY MR. KEELEY:<br>18 Q Did these issues eventually get resolved<br>19 to your satisfaction?<br><br><br>23 THE WITNESS: Yes, they did.<br>24 BY MR. KEELEY:<br>25 Q And how were they resolved?<br><br>Page 62 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1 A By the addition of staff at OneBeacon.<br>2 Q So are you the person who raised the<br>3 concerns with OneBeacon?<br>4 A I think that Val Beckles and Susan were<br>5 the ones that raised the issues with OneBeacon.<br>6 Q And in order to resolve those issues,<br>7 OneBeacon hired somebody else to assist them; is<br>8 that correct?<br>9 A Yes.<br>10 Q And so to your knowledge the issues were<br>11 resolved at that point on?<br>12 A Yes.<br>13 Q Did you have any other service-related<br>14 concerns during the 2010 time period with Atlantic?<br>15 A No.<br>16 Q At what point in time did you go to work<br>17 for NBC/Universal?<br>18 A My employment with NBC/Universal began on<br>19 6/1/2014.<br>20 Q Did your responsibilities at Aon change<br>21 over time until you left and went to NBC/Universal<br>22 in June of 2014?<br>23 A Can you repeat that one more time.<br>24 Q Did your responsibilities at Aon change<br>25 over time?<br><br>Page 63<br>1 A Yes, they did.<br>2 Q Tell me when they changed and how they<br>3 changed.<br>4 A In late 2010, when we started to have<br>5 renewal discussions -- not only renewal of the<br>6 policies but the renewal of the service agreement | |

| Deposition Designation | Objection & Response |
|---|---|
| 7 were up.  So because NBC was being charged back for<br>8 my salary and benefits and all of that, Kurt didn't<br>9 understand why we needed all of these people<br>10 involved in this path to OneBeacon.<br>11 So it was at that point where Val sort of<br>12 moved over and I took on the responsibility of<br>13 dealing directly with OneBeacon with regard to<br>14 these, declaring the productions and the cast<br>15 medicals and all of that.<br>16 Q So in late 2010, your role with Atlantic<br>17 increased significantly; is that right?<br>18 A It increased, yes.<br><br><br>23 So you began having direct contact with<br>24 people at Atlantic at that point in time?<br>25 A Yes.<br><br>Page 65<br>4 Q So what was your role versus Ms. Weiss's<br>5 role with Atlantic?<br>6 A My role was really to take care of the<br>7 day-to-day flow of information that has to occur to<br>8 make sure we have appropriate coverage under the<br>9 terms of the policy, that the cast gets named, that<br>10 the cast gets approved, that the production is<br>11 declared to the policy, those sorts of day-to-day<br>12 things.<br>13 Susan oversaw that process and she became<br>14 more involved when it came to the policy's renewal<br>15 cycle.<br>16 And certainly if we had any problems or<br>17 questions, she would become involved. | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 66<br>13 Q So did your role for Aon with between NBC<br>14 and Atlantic remain basically the time until you<br>15 left in June 2014?<br>16 A Yes, it did.<br>17 Q So essentially, you were handling the<br>18 day-to-day discussions and activities that needed to<br>19 occur between NBC, on the one hand, and Atlantic<br>20 Specialty Insurance Company, on the other hand?<br><br><br>24 THE WITNESS: Essentially, yes.<br><br>Page 67<br>2 Q Who did you primarily work with at<br>3 Atlantic?<br>4 A I worked with Wanda Phillips and<br>5 Bernadette Milinovic and then I would work with the<br>6 claims people.<br><br><br>11 Did you work with Peter Williams?<br>12 A I did work with Peter Williams.<br>13 Q Was your first relationship or association<br>14 with Mr. Williams once he went to work at Aon, or<br>15 did you know him previously?<br>16 A I met him when I worked at Aon on this<br>17 account for the first time<br><br><br>23 Q Did you get along with Ms. Phillips just<br>24 fine?<br>25 A Yes. | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 68<br>25 Did you find Ms. Phillips to be<br><br>Page 69<br>3 trustworthy?<br>2 A Yes.<br>3 Q Did you find her to be reliable?<br><br><br>8 THE WITNESS: Generally, yes, she was<br>9 reliable<br><br><br>11 Q And did you find her to be knowledgeable<br>12 in the insurance industry?<br><br><br>15 THE WITNESS: Yes, I did.<br><br><br>17 Q How often did you deal with Peter<br>18 Williams?<br>19 A In the beginning in 2010, Peter Williams<br>20 was in charge of the claims at OneBeacon and so in<br>21 that first year, when we would have a time -- a time<br>22 element, time claim associated with the cast -- I<br>23 think they were all cast issues that year -- I would<br>24 deal with Peter Williams directly. After that, less<br>25 so.<br><br>Page 70<br>1 Q Based upon your dealings with<br>2 Mr. Williams, did you ever have any complaints | |

| Deposition Designation | Objection & Response |
|---|---|
| 3 concerning him<br><br>7 THE WITNESS: No.<br><br>16 Did you find Mr. Williams to be honest?<br>17 A Yes.<br>18 Q As far as you know, was he trustworthy?<br><br>24 THE WITNESS:  Yes.<br><br>Page 71<br>2 Q Did you find him to be reliable?<br><br>7 THE WITNESS: Yes.<br><br>9 Q Did you find Mr. Williams to be<br>10 knowledgeable in the insurance industry?<br><br>14 THE WITNESS: Yes, I did.<br><br>19 Q Did you have involvement in the various<br>20 policy renewal periods?<br><br>24 THE WITNESS: Yes, I did.<br><br>Page 72<br>1 BY MR. KEELEY:<br>2 QDo you recall what your involvement was<br>3 during the first renewal period in late 2010/early<br>4 2011?<br>5 A The key issue with regard to renewal was | |

| Deposition Designation | Objection & Response |
|---|---|
| 6 always the rate, so how much the policy was costing.<br>7 The policy has certain elements to it that<br>8 we always had to work through with NBC.<br>9 The policy had a large self-insured<br>10 retention attached to it, so how much was that going<br>11 change in addition to the rate.<br>12 So my involvement with the renewal was to<br>13 make sure that the claims history was up to date for<br>14 that policy period, the policy period, for the<br>15 current policy period, to talk with Susan and Val<br>16 about any coverage improvements that we might want<br>17 to ask for, and then to discuss with the NBC people,<br>18 Kurt, about what might be happening, what they might<br>19 be amenable to if there were going to be any<br>20 changes.<br><br>Page 73<br>5 BY MR. KEELEY:<br>6 Q Until the "Dig" claim was submitted by<br>7 NBC/Universal, had you ever had an experience with a<br>8 claim that involved the war exclusion?<br>9 A No.<br>10 Q Had you ever had any experience<br>11 negotiating the terms of war exclusions?<br>12 A No.<br>13 Q Until the "Dig" claim was submitted, did<br>14 you have any discussions with anyone on behalf of<br>15 Atlantic concerning the war exclusions of any of the | |

| Deposition Designation | Objection & Response |
|---|---|
| 16 polices?<br><br>Page 74<br>6 THE WITNESS: No.<br><br>Page 80<br>2 BY MR. KEELEY:<br>3 Q The court reporter has just handed you<br>4 what has been marked as deposition Exhibit 2.<br>5 Do you recognize this string of E-mails?<br>6 A I recognize the people involved and the<br>7 general nature of the E-mail.<br>8 Q So the first E-mail on the first page of<br>9 Exhibit 2 is from Susan Weiss to a number of people<br>10 and you are copied on it and it says,<br>11 "Attached are a few bullet points we<br>12 would like to discuss on our call<br>13 tomorrow."<br>14 Do you see that?<br>15 A Right.<br>16 Q And do I understand correctly that this<br>17 was a call that was going to be arranged to discuss<br>18 renewal of the policy?<br><br><br>22 THE WITNESS: From the reading of it, yes.<br>23 BY MR. KEELEY:<br>24 Q Was it typical for Aon and NBC to have<br>25 discussions going into a renewal year concerning<br><br>Page 81<br>1 what you all wanted to change in the policy for the<br>2 coming year? | |

| Deposition Designation | Objection & Response |
|---|---|
| 6 THE WITNESS: There would have been those<br>7 discussions.<br><br>Page 82<br>11 Q So Ms. Weiss is writing to three different<br>12 people at Comcast concerning the call to discuss the<br>13 renewal of the 2013 policy; is that right?<br>14 A From the reading of this, yes.<br><br>Page 86<br>24 BY MR. KEELEY:<br>25 Q Do you recognize what has been marked as<br><br>Page 87<br>1 Exhibit 3?<br>2 A Now that I am seeing it, yes, I recognize<br>3 the people in the format.<br>4 Q This is an E-mail from Ms. Weiss to<br>5 Kurt Ford copying various individuals.<br>6 And this is, again, in connection with<br>7 renewal of the 2013 policy; is that right?<br><br><br>13 THE WITNESS: I would like to read.<br>14 BY MR. KEELEY:<br>15 Q Go ahead.<br>16 A Can you restate. I have read through it.<br>17 Q So the E-mail begins,<br>18 "We had discussions in October and agreed<br>19 that we would not market the in-house TV<br>20 program at this renewal."<br>21 Do you see that?<br>22 A I do.<br>23 Q What is your understanding of what<br>24 Ms. Weiss was referring to there? | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 88<br>3 THE WITNESS: She was referring to the<br>4 fact that we would not seek quotes from other<br>5 carriers beyond OneBeacon.<br>6 BY MR. KEELEY:<br>7 Q And had you sought quotes from other<br>8 carriers in the prior renewal years?<br><br><br>12 THE WITNESS: Yes, we had.<br>13 BY MR. KEELEY:<br>14 Q But each time you decided to renew with<br>15 OneBeacon; is that correct, or with Atlantic<br>16 Specialty? Excuse me.<br>17 A Yes.<br>18 Q But this year, you decided not to seek<br>19 bids from other insurers, correct?<br>20 A Yes. As documented here, that was the<br>21 decision.<br><br>Page 102<br>20 Q Do you recall there came a point where<br>21 Wanda Phillips would have provided you and others at<br>22 Aon a copy of the 2014/15 policy for you all to<br>23 review?<br><br>Page 103<br>4 THE WITNESS: I believe she would have<br><br><br>8 Q Do you recall reviewing the proposed<br>9 2014/15 policy before recommending it to<br>10 NBC/Universal?<br><br><br>14 THE WITNESS: My review would have been to | |

| Deposition Designation | Objection & Response |
|---|---|
| 15 understand that the specific terms that we had 16 discussed during renewal would have been included. 17 BY MR. KEELEY: 18 Q So you would not have done a complete 19 policy review then<br><br><br>23 THE WITNESS: No, since the policy had 24 been in force for so long.<br><br>Page 106 9 Q So my question is, though, sitting here 10 today, do you think that it would have been a good 11 idea to have done a full policy review before 12 recommending the policy to NBC/Universal?<br><br><br>17 THE WITNESS: Now that we have a problem 18 with coverage, perhaps a more careful review of the 19 policy might have been a good idea had we known that 20 the current situation we're dealing with was going 21 to arise.<br><br>Page 107 1 BY MR. KEELEY: 2 Q Let me show you what has been marked as 3 Exhibit 6.  Please, go ahead and take your time and 4 review that. 5 Have you had a chance to review Exhibit 6? 6 A Yes. 7 Q On the second page, there is an E-mail 8 from "obe mailer" -- looks like an automatically | Plaintiff's Objections: Page 106:9-12; 106:17-21 402,403<br><br>Defendant's Response: The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |

| Deposition Designation | Objection & Response |
|---|---|
| 9 generated E-mail to Toni Peete.<br>10 It says.<br>11 "Attached to this E-mail is the<br>12 above-captioned new or renewal<br>13 policy . . ."<br>14 Do you see that?<br>15 A Yes, I do.<br>16 Q Is that the mechanism that was used by<br>17 OneBeacon, to your knowledge, to forward renewal<br>18 polices?<br>19 A This year, it was.  It had not been in the<br>20 past.<br>21 Q And the next E-mail is on the first page.<br>22 It's from Mr. Peete to yourself and Susan Weiss,<br>23 that same date, just nine minute later; is that<br>24 correct?<br>25 He says, "I just got it."<br><br>Page 108<br>7 All right.<br>8 And then the first E-mail on this exhibit<br>9 is an E-mail from yourself to Toni Peete and<br>10 Ms. Weiss.<br>11 Do you see that?<br>12 A I do.<br>13 Q And it says,<br>14 "After a very brief review, it<br>15 appears that they did take out the word<br>16 'delay' from exclusion 17 under Extra<br>17 Expense."<br>18 Do you see that?<br>19 A I do.<br>20 Q So do you recall recognizing that the word<br>21 "delay" was taken out from one of the exclusions? | Plaintiff's Objections:<br>Page 108:8-21; 108:25<br>402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts in this area are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties |

| Deposition Designation | Objection & Response |
|---|---|
| 25 THE WITNESS: Yes, I recall.<br><br>Page 110<br>18 Q Did you review any of the other exclusions<br>19 of the policy at that time?<br>20 A For the purposes of this E-mail, was<br>21 focused on that.<br>22 Q Well, whether it was for the purposes of<br>23 this E-mail or not, do you recall reviewing any of<br>24 the other exclusions of the policy at that time?<br>25 A I don't recall reviewing the other<br><br>Page 111<br>1 exclusions.<br>2 Q At the end of this E-mail, you say,<br>3 "Do we want to get together to do a full<br>4 review the policy."<br>5 So I take it you were asking Ms. Peete and<br>6 Ms. Weiss whether they wanted to get together to do<br>7 a full policy review; is that correct?<br>8 A Based on this E-mail, yes.<br><br><br>19 Q The thought of doing a full policy review<br>20 entered your mind?<br>21 A Right<br><br>Page 112<br>11 Q And do you know whether you got together<br>12 with Mr. Peete and Ms. Weiss to do a full policy<br>13 review?<br><br><br>17 THE WITNESS: I don't recall that we ever | involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 112:11-13; 112:17-21; 112:23-24<br>402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts in |

| Deposition Designation | Objection & Response |
|---|---|
| 18 got together.<br>19 BY MR. KEELEY:<br>20 Q Do you recall whether anyone did a full<br>21 policy review?<br><br><br>23 THE WITNESS:  I don't recall that we ever<br>24 did. | this area are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |
| Page 113<br>2 Q During the discussions concerning renewal<br>3 of the 2013 policy, did you have any discussions<br>4 with anyone at Atlantic concerning the war<br>5 exclusions of the policy?<br><br><br>9 THE WITNESS: No.<br><br>Page 114<br>1 BY MR. KEELEY<br>MR. KEELEY:<br>2 Q Were you involved in having the production<br>3 of "Dig" declared to the policy?<br>4 A Yes, as an employee of Aon.<br>5 Q I'm sorry?<br>6 A Yes, as an employee of Aon.<br>7 Q And you mentioned a little bit earlier<br>8 about declaring productions to the policy.<br>9 Can you explain what that means, please.<br>10 A What a new production came up and I was<br>11 advised that something new was about to start or was<br>12 going -- had a calendar to start, I would fill out a | Plaintiff's Objections:<br>Page 113:2-5; 113:9<br>402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |

| Deposition Designation | Objection & Response |
|---|---|
| 13 pretty brief form that talked about the budget, the<br>14 time period, the location, any cast members that we<br>15 knew needed to be covered right away.<br>16 And I would forward that document to Wanda<br>17 through Bernadette. The recipient was Bernadette<br>18 and ultimately to got to Wanda, and that was usually<br>19 their first notice that a new production was<br>20 starting up and would be covered under the policy.<br><br>Page 120<br>16 Q So I asked you about declaring a<br>17 production to the policy and you said you fill out a<br>18 form that has some basic information and you provide<br>19 that to Atlantic and then Atlantic would review that<br>20 information and either agree to declare it to the<br>21 policy or -- could they also refuse to declare it to<br>22 the policy?<br><br>Page 121<br>2 THE WITNESS: I believe they could decline<br>3 to underwrite at all but we never had that<br>4 experience.<br>5 BY MR. KEELEY:<br>6 Q So did you submit a form to Atlantic and<br>7 request it to declare "Dig" to the policy?<br>8 A Yes, I did.<br>9 Q And did you have any discussions with<br>10 anyone at Atlantic about declaring "Dig" to the<br>11 policy? | |

| Deposition Designation | Objection & Response |
|---|---|
| 12 A Yes, I did.<br>13 Q Who did you have those discussions with?<br>14 A With Wanda Philips and Peter Williams.<br>15 Q Do you remember how many discussions you<br>16 had with Wanda Phillips?<br>17 A My recollection is the initial phone call.<br>18 Q Was Mr. Williams also on that call or was<br>19 it just Ms. Phillips?<br>20 A Peter Williams was on the call, as well.<br><br>Page 122<br>14 Q So you had this initial telephone<br>15 discussion.<br>16 Was that before you submitted the form or<br>17 after you submitted the form?<br>18 A It was before.<br>19 Q And was the purpose of the call to let<br>20 them know that you were going to be requesting that<br>21 they declare "Dig" to the policy?<br>22 A Yes.<br><br>Page 123<br>6 Q So why did you do that here?<br>7 A Because Israel was a unique location and I<br>8 thought that we could get some additional questions<br>9 and need to provide more information with regard to<br>10 that location.<br>11 Q Why did you feel Israel was a unique<br>12 location?<br>13 A Based on what I read in the newspaper.<br>14 Q Because there is a lot of conflict over<br>15 there, right, between Hamas and Israel?<br>16 A Not necessarily between those two parts | |

| Deposition Designation | Objection & Response |
|---|---|
| 17 but, you know, what you read or hear about in our<br>18 news leads you to believe that there is issues there<br>19 that we don't have here.<br>20 Q And by "issues," you mean fighting?<br>21 A Random violence.<br>22 Q What do you mean by "random violence"?<br>23 A Unprovoked violence against people that<br>24 don't necessarily have a relationship.<br>25 I had heard in, you know, newspaper<br><br>Page 124<br>1 accounts and on radio about situations at<br>2 marketplaces and cafes and so forth, just, you know,<br>3 over the course of time, where people were injured,<br>4 not for any apparent reason. It was random.<br><br>Page 125<br>12 Q Were you aware at the time you asked<br>13 Atlantic to declare "Dig" to the policy that there<br>14 were ongoing conflicts between Israel and<br>15 Palestinians?<br><br>20 THE WITNESS: I don't study the Middle<br>21 East. So I would have had a passing knowledge based<br>22 on hearing the news that there were issues in Israel<br>23 and that there was an issue with the Palestinian<br>24 potential for a state, you know, what we see in the<br>25 news.<br><br>Page 129<br>20 Q So going back to this first telephone call | Plaintiff's Objections:<br>Page 125:12-15; 124:20-25<br>MIL, 402,403<br><br>Defendant's Response:<br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not |

| Deposition Designation | Objection & Response |
|---|---|
| 21 that you had with Ms. Phillips and Mr. Williams, did<br>22 you place the call to them?<br>23 A Yes, I did.<br>24 Q And do you recall approximately how long<br>25 that call lasted?<br><br>Page 130<br>2 Q Tell me everything you can remember being<br>3 discussed during that call.<br>4 A So I called Wanda to discuss this with her<br>5 and Peter Williams just happened to be in her<br>6 office. He is based in L.A. but he was in New York<br>7 that day.  So she put him on the phone or included<br>8 him in the call.<br>9 So I told them what I knew about what was<br>10 planned for the production and it wasn't very much<br>11 at this point, but because it was an unusual<br>12 location, I wanted to understand what their concerns<br>13 might be.<br>14 Q What did you tell them about what you<br>15 knew?<br>16 A Kind of a vague production schedule, what<br>17 kind of production it was, how many episodes it<br>18 would be, where in Israel they were going, what kind<br>19 of -- and including what kind of special precautions<br>20 we were taking, who we were working with in Israel.<br>21 Because we don't send our own people over<br>22 there -- you know, a whole crew of people over<br>23 there, we work with a local production services | binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 24 company.<br>25 So it was just that sort of basic<br><br>Page 131<br>1 framework of what was being planned at the time.<br>2 Q What did -- you said you told them what<br>3 you knew about the production and you just said you<br>4 told them about special precautions.<br>5 What did you tell them about special<br>6 precautions that were being taken?<br>7 A Our Security Department had been looking<br>8 into the situations and the locations and our<br>9 Security Department was advising the production<br>10 folks on what to expect and any -- any places where<br>11 they maybe shouldn't go or -- and at that point, it<br>12 was all very -- the plan was very vague.<br>13 So there wasn't much in the way of<br>14 specifics, but our security people were involved.<br><br>Page 132<br>11 Q So what I am trying to find out is what<br>12 you would have relayed to Mr. Williams and<br>13 Ms. Phillips.<br>14 So is that essentially what you would have<br>15 not specifics but that you had security<br>16 people involved and they were in contact with your<br>17 production folks?<br>18 A Yes, that was pretty much the gist of the<br>19 conversation with regard to that.<br>20 Q Anything else you can recall discussing | |

| Deposition Designation | Objection & Response |
|---|---|
| 21 with Ms. Phillips and Mr. Williams about security<br>22 precautions that were being taken?<br>23 A Nothing specific to security beyond that.<br>24 Q What else do you recall telling<br>25 Ms. Phillips and Mr. Williams during that call other<br><br>Page 133<br>1 than what you have testified to already?<br>2 A That is all I was there to tell the them.<br><br><br>7 Q Do you recall what Ms. Phillips had to<br>8 say?<br>9 A Wanda didn't have that much to say.<br>10 Peter was really the one to speak since he<br>11 was there and his concern was that they might need<br>12 to -- he didn't have any overall concerns about<br>13 going to Israel -- he has been there -- but he just<br>14 said well, maybe we might have to look at the extra<br>15 expense coverage and maybe increase the deductible<br>16 or something along those lines.<br>17 He was vague. He didn't know but he was<br>18 just teeing that up because we didn't have full<br>19 information at that point.<br>20 Q So you think he mentioned that you might<br>21 have to do something on the extra expense portion<br>22 and adjust some of the expense coverage?<br>23 A That was my understanding when we left<br>24 that call that that would be their concern, is just<br>25 to look at the coverage to make sure that they<br><br>Page 134 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1 didn't want to change anything.<br>2 Q So you said he said look at the extra<br>3 expense coverage and maybe increase the deductible<br>4 or something along those lines?<br>5 A Right.<br>6 Q Is that what we said?<br>7 A That is my recollection.<br><br>Page 137<br>1 (Defendants' Exhibit 7 was marked for<br>2 identification by the court reporter and<br>3 is attached hereto.)<br>4 BY MR. KEELEY:<br>5 Q Have you had a chance to review this<br>6 exhibit?<br>7 A Yes, I have.<br>8 Q Do you recognize this as an E-mail that<br>9 you sent to Kurt Ford, Randi Richmond and Curt<br>10 Williams regarding your discussions with<br>11 Ms. Phillips and Mr. Williams about declaring "Dig"<br>12 to the policy?<br>13 A Yes, I do.<br>14 Q And is this a true and accurate copy of<br>15 your E-mail?<br>16 A To the best of my knowledge, yes.<br><br><br>20 Q Anything in there that is inaccurate?<br>21 A I don't believe so.<br>22 Q Toward the bottom of the first paragraph,<br>23 you say a -- excuse me -- about halfway through, you<br>24 say,<br>25  "Although everything is subject to<br><br>Page 138 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1 providing complete information to them, 2 the underwrites are not focusing on an 3 additional premium charge but may impose a 4 sub-limit that would cap the amount the 5 production could collect if a civil 6 authority shutdown occurred." 7 Do you see that? 8 A I do. 9 Q And I think you testified that 10 Mr. Williams raised some concern about potentially 11 modifying limits; is that correct? 12 A Yes. 13 Q Do you recall whether or not a sub-limit 14 was imposed. 15 A My recollection is no sub-limit was 16 ultimately imposed. 17 (Defendants' Exhibit 8 was marked for 18 identification by the court reporter and 19 is attached hereto.) 20 BY MR. KEELEY: 21 Q Have you had a chance to read Exhibit 8? 22 A I did. 23 Q So is this an E-mail from you to 24 Bernadette Milinovic and Wanda Phillips forwarding 25 them a copy of the form you testified to earlier and<br><br>Page 139 1 providing some additional information about the 2 production "Dig"? 3 A Yes. 4 Q Does this appear to be a true and accurate 5 copy of your E-mail? 6 A Yes. 7 Q Now, this was sent on December 11; is that 8 correct? |  |

| Deposition Designation | Objection & Response |
|---|---|
| 9 A That's the date on it yes.<br><br><br>13 Q And your call, according to Exhibit 7, was<br>14 on December 6; is that right?<br>15 A Yes.<br>16 Q So the call was on Friday, the 6th, and<br>17 then the following Wednesday, you submitted the<br>18 application correct?<br>19 A Yes.<br><br>Page 140<br>2 BY MR. KEELEY:<br>3 Q And the third page of Exhibit 8,<br>4 "Television Insurance Application," that's the form<br>5 you mentioned earlier?<br>6 A Yes.<br>7 Q And in that, you are telling them a little<br>8 bit about the production, including the total<br>9 insurable production costs and then total net<br>10 insurable costs in items 6 and 7; is that right?<br>11 A Yes.<br>12 Q And were those two figures accurate, to<br>13 the best of your knowledge?<br>14 A That was the best information I had at the<br>15 time, yes.<br>16 Q Let me -- you have to go back to the first<br>17 page of Exhibit 8.<br>18 The very last paragraph, the second<br>19 sentence, would you read that aloud for me, please,<br>20 beginning with "we would."<br>21 A (Reading):<br>22 "We would like to avoid any deviation from<br>23 our standard policy terms, if possible."<br>24 Q Why did you want to avoid any deviation | |

| Deposition Designation | Objection & Response |
|---|---|
| 25 from your standard policy terms?<br><br>Page 141<br>1 A Because we understand the coverage we have<br>2 under our standard policy terms and that's the<br>3 coverage we wanted<br><br>Page 142<br>4 Q And at the very last sentence, you asked<br>5 them to, please, confirm coverage at their earliest<br>6 opportunity, correct?<br>7 A Yes.<br>8 Q So that's consistent with your prior<br>9 testimony that NBC always wanted Atlantic to declare<br>10 productions as quickly as possible, correct?<br>11 A Yes.<br><br><br>19 I beg your pardon.  The exhibit you were<br>20 just handed is Exhibit 9.<br>21 And you will see at the bottom of page 2,<br>22 along with pages 3 and 4, are the E-mails we have<br>23 already just reviewed.<br>24 Do you see that?<br>25 A Yes, I do.<br><br>Page 143<br>1 Q So the new E-mail begins about the middle<br>2 section up on page 2, an E-mail from Bernadette<br>3 Milinovic to you.<br>4 She says,<br>5 "Hi Andrea,<br>6 "Okay to declare 'Dig' season one to<br>7 the current policy."<br>8 Do you see that? | |

| Deposition Designation | Objection & Response |
|---|---|
| 9 A I do.<br>10 Q So this is the day after you submitted the<br>11 application, Bernadette was advising you on behalf<br>12 of Atlantic that they were agreeing to declare the<br>13 production of "Dig" to the policy; is that correct?<br>14 A Yes.<br>15 Q And then the E-mail above that, it's from<br>16 you to Bernadette, December 12, 2013.<br>17 You say,<br>18 "I know that we just gave<br>19 confirmation to renew the policy for next<br>20 year, but can I advise NBC that coverage<br>21 will roll over into the next policy period<br>22 with no additional terms based on the<br>23 information I provided?"<br>24 Do you see that?<br>25 A I do<br><br>Page 144<br>1 Q What did you mean by that?<br>2 A At the end of the calendar year, the 2013<br>3 policy ended.<br>4 The way these -- this policy worked is<br>5 that coverage then ended for any declared production<br>6 on that policy and we had to re-declare for the new<br>7 policy period.<br>8 Q So you were simply ensuring that coverage<br>9 would be under the 2014/15 policy?<br>10 A Right.<br>11 Q And then in the next E-mail on Exhibit 9<br>12 from yourself to Bernadette, at 1:11 p.m., you say,<br>13 "Do you think we will have further | |

| Deposition Designation | Objection & Response |
|---|---|
| 14 confirmation today?  Production is anxious<br>15 about this one."<br>16 Do you see that?<br>17 A Uh-huh.<br>18 Q Do you know what you meant or do you<br>19 recall what you meant by "production is anxious<br>20 about this one"?<br>21 A This is my way of saying I need a response<br>22 now and because people were asking me.<br>23 Like I said, they're always concerned<br>24 about all of their productions being covered as soon<br>25 as possible and because this one had aspects to it<br><br>Page 145<br>1 that other productions might not have had, people<br>2 were asking me more questions than they usually do.<br><br>Page 150<br>15 Do you recall that Atlantic did declare<br>16 the production of "Dig" to the 2014 policy, though?<br>17 A I do recall that they did declare it.<br>18 Q Do you know whether Atlantic imposed any<br>19 special terms concerning the production of "Dig"?<br>20 A I don't recall any special terms being<br>21 imposed.<br><br>Page 151<br>8 BY MR. KEELEY:<br>9 Q Have you had a chance to review<br>10 Exhibit 11?<br>11 A I have | |

| Deposition Designation | Objection & Response |
|---|---|
| 21 So what I want to focus you on is the 22 first page, the E-mail from yourself to Randi 23 Richmond and Mark Binke at 5:57 p.m. 24 And you say, 25 "I spoke today with our underwriter<br><br>Page 152<br>1 and she has advised that she will not be 2 imposing any additional premium or 3 additional coverage terms on 'Dig' in 4 Israel." 5 Is that correct<br><br>10 correct. 11 BY MR. KEELEY: 12 Q And it's correct that Atlantic did not 13 impose any additional terms, correct? 14 A That's correct, to my recollection 15 Q And the very last paragraph of this E-mail 16 says -- you say, 17 "I'd like to point out that we have a 18 good working relationship with our 19 underwriter and the goal is to keep the 20 standard terms in place." 21 Do you see that? 22 A Uh-huh. 23 Q And what did you mean by you had a good 24 working relationship with the underwriter? 25 A At the time, I didn't feel that we had<br><br>Page 153<br>1 unnecessary issues in getting coverage on an ongoing 2 basis for our cast. We had been able to work | |

| Deposition Designation | Objection & Response |
|---|---|
| 3 through medical issues. We had been able to work<br>4 through other safety issues on other productions.<br>5 There hadn't been things that we felt were<br>6 unnecessarily burdensome or restrictive.<br>7 Q And you say at the end of that first<br>8 sentence,<br>9 ". . . and the goal is to keep the<br>10 standard terms in place," correct?<br>11 A Yes.<br>12 Q And you were able to meet that goal, as<br>13 well, correct?<br>14 A Yes.<br><br>Page 155<br>11 Q Ms. Garber, you testified earlier that you<br>12 went to NBC on or about June 1, 2014, correct?<br>13 A Right.<br>14 Q Can you tell me the circumstances of your<br>15 move from Aon to NBC?<br>16 A There was an opening at NBC for a risk<br>17 management position and I applied and was chosen as<br>18 the candidate.<br>19 Q As a candidate or to fill the position?<br>20 A To fill the position.<br><br>Page 156<br>10 BY MR. KEELEY:<br>11 Q And how long did you serve in the position<br>12 as Risk Manager for NBC/Universal?<br>13 A Until 12/26/2015 when the position was<br>14 absorbed up to Comcast -- up to Comcast directly.<br><br>Page 157<br>20 Q Do you recall when you first learned about | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 156:10-14<br>MIL, 402,403<br><br>Defendant's Response:<br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury |

| Deposition Designation | Objection & Response |
|---|---|
| 21 that NBC might need to delay production of "Dig" in<br>22 Israel due to the circumstances over there?<br>23 A I really only remember being aware when I<br>24 got back from vacation in the first -- beginning of<br>25 July after the July 4 holiday.<br><br><br>Page 158<br>1 Q What do you recall learning?<br>2 A Well, by that time, there had been quite a<br>3 bit of back and forth and they were wondering what<br>4 they were going to do about resuming production in<br>5 Israel.  They were considering options at that<br>6 point.<br><br>18 Q What was your understanding as to the<br>19 reasons why production of "Dig" might be delayed?<br>20 A Well, there was hostilities going on in<br>21 the areas where they felt they needed to go. We<br>22 were on hiatus, so we didn't have anything actively<br>23 involved in terms of production activity, but the | and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br><br>Plaintiff's Objections:<br>Page 158:18-159:5; 159:9-12<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the |

| Deposition Designation | Objection & Response |
|---|---|
| 24 question to go back was an issue and some of the<br>25 cast and crew -- although we didn't send the entire<br><br>Page 159<br>1 crew, the people that we did send were hesitating.<br>2 They were concerned.<br>3 Q And when you saw there were hostilities,<br>4 what was your understanding as to the nature of the<br>5 hostilities?<br><br><br>9 THE WITNESS:  I think we were hearing --<br>10 at that time, my recollection is that there were<br>11 rockets and -- being fired into -- into Israel that<br>12 was creating issues on the street.<br><br>Page 160<br>4 BY MR. KEELEY:<br>5 Q But at some point, you came to learn that<br>6 Israel was retaliating and shooting rockets and<br>7 missiles into Palestinian territory, correct?<br><br>12 THE WITNESS:  At some point, I became<br>13 aware of that, yes. | facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 160:4-7; 160:12-13<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties |

| Deposition Designation | Objection & Response |
|---|---|
| **Page 161**<br>5 Q So once you learned about it, were you<br>6 following the news stories on a daily basis?<br>7 A Pretty much, yes | involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 161:5-7<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| **Page 162**<br>14 Q So were you being asked earlier whether or<br>15 not you felt there was coverage into the Atlantic's<br>16 policy should NBC have to delay production?<br><br>20 THE WITNESS: Certainly, the production<br>21 folks were curious about what insurance we might<br>22 have available and so they were asking. | Plaintiff's Objections:<br>Page 162:14-16; 162:20-163:1<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial |

| Deposition Designation | Objection & Response |
|---|---|
| 23 BY MR. KEELEY:<br>24 Q And what did you tell them?<br>25 A That it is very dependent on the<br><br>Page 163<br>1 circumstances. | effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 168<br>15 Q And by "early on," I am talking about when<br>16 you first came back from vacation in early July and<br>17 learned there might be a problem, did you have any<br>18 discussions with Malika Adams concerning potential<br>19 coverage?<br>20 A I think there might have been some<br>21 discussions with Malika | Plaintiff's Objections:<br>Page 168:15-21<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 170<br>11 BY MR. KEELEY:<br>12 Q So you do recall a point in time when | Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 13 Ms. Adams thought there might not be coverage?<br><br>19 THE WITNESS:  When I got back from<br>20 vacation, I had a lot of E-mails about many things,<br>21 but about this situation, too, and I believe that in<br>22 some of -- there was a back-and-forth with Malika<br>23 that I had been CC'd on. That's why they were in my<br>24 inbox and there was some speculation on her part<br>25 earlier on when the full information was not<br><br><br><br><br><br>Page 171<br>1 available and things were still developing that she<br>2 questioned coverage under the production policy<br><br>15 Q Do you recall Ms. Adams raising concern<br>16 that the war exclusions -- one or more of the war<br>17 exclusions might apply?<br>18 A I believe in one of these E-mails, she<br>19 brought up the fact there was a war exclusion on the<br>20 policy. | Page 170:11-13; 170:19-170:25<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 171:1-2; 171:15-20<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also |

| Deposition Designation | Objection & Response |
|---|---|
| | fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |
| Page 173<br>9 BY MR. KEELEY:<br>10 Q Anybody else besides Susan Weiss and<br>11 Malika Adams, who we have talked about already, is<br>12 there anybody else that you can recall expressing<br>13 doubt about there being coverage, and yes, other<br>14 than people at Atlantic.<br>15 A No, I don't recall talking to anybody else<br>16 about that or anybody else raising the issue.<br><br>20 BY MR. KEELEY:<br>21 Q Please, take a look at Exhibit 13 and once<br>22 you are done, let me know and I will ask you a<br>23 couple of questions about it. | Plaintiff's Objections:<br>Page 173:9-16; 173:20-23<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |
| Page 174<br>2 BY MR. KEELEY:<br>3 Q Having had a chance to review Exhibit 13,<br>4 do you recall the E-mails on this document?<br>5 A To the extent I am seeing them here, yes. | Plaintiff's Objections:<br>Page 174:2-5<br>MIL, 402,403<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| Page 175<br>1 BY MR. KEELEY:<br>2 Q And in the E-mail from Curt Williams to<br>3 Deborah Kizner copied to you and Ms. Weiss dated<br>4 June 16 at 8:05 a.m., in the second paragraph, he<br>5 says,<br>6 "Do we have insurance coverage for the<br>7 resulting delay or shutdown" -- actually,<br>8 let me step back.<br>9 He says,<br>10 "In the event that NBCU Security advises<br>11 that we should not shoot in an area where<br>12 we plan to, or in general anywhere in<br>13 Israel, do we have insurance coverage for<br>14 the resulting delay or shutdown?"<br>15 Do you see that?<br>16 A I do.<br>17 Q Do you recall Curt Williams asking that<br>18 question?<br>19 A Well, to the extent that I was CC'd on<br>20 this E-mail, yes. | The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims.<br><br>Plaintiff's Objections:<br>Page 175:1-25<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; |

| Deposition Designation | Objection & Response |
|---|---|
| 21 Q And in response, Ms. Weiss says, also, on 22 June 16, about an hour, fifty-five minutes later, 23 she says in an E-mail to you, 24 "How does your corporate terrorism 25 policy respond . . ."<br><br>Page 176<br>1 And she goes to say,<br>2 "I don't see coverage responding unless<br>3 permits were pulled," et cetera.<br>4 Do you see that?<br>5 A I do<br>6 Q So did you look for a terrorism policy at<br>7 that point, Ms. Garber?<br><br>11 THE WITNESS: Okay. I did not right at<br>12 that moment. This date, June 16 --<br>13 BY MR. KEELEY:<br>14 Q Yes.<br>15 A -- was a day before I left on vacation for<br>16 two and a half weeks.  This situation was something<br>17 that may plan was to look into it as soon as<br>18 possible upon my return.<br>19 Q And you were going to be gone for how<br>20 long?<br>21 A Two and a half weeks<br><br>Page 177<br>1 BY MR. KEELEY:<br>2 Q Take a look at Exhibit 14.  This is part<br>3 of the same string.  I would like you to focus on<br>4 the top E-mail.  It's an E-mail from you to Curt<br>5 Williams dated June 16.<br>6 Do you see that?<br>7 A Uh-huh.<br>8 Q You say in the middle of that, | description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br><br><br>Plaintiff's Objections: Page 176:1-7; 176:11-21 MIL, 402,403<br><br>Defendant's Response: The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections: Page 177:1-25 MIL, 402,403<br><br>Defendant's Response: The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not |

| Deposition Designation | Objection & Response |
|---|---|
| 9 "Any 'civil authority' action will be more<br>10 straightforward than we have than if we<br>11 have to prove 'imminent peril" based on a<br>12 judgment call.  I am looking into the<br>13 corporate terrorism policy to see if there<br>14 may be anything to tap into there and let<br>15 all concerned know what I find out."<br>16 Do you see that?<br>17 A Uh-huh.<br>18 Q So what do you mean when you say,<br>19 "Any 'civil authority' action will be more<br>20 straightforward than . . . 'imminent<br>21 peril' based on a judgment call"?<br>22 A There are two separate coverages in the<br>23 extra expense portion of the production policy. One<br>24 is called "civil authority," one is called "imminent<br>25 peril."<br><br>Page 178<br>1 Civil authority is very specific and easy<br>2 to say whether you have it or not.  If the civil<br>3 authority, like a city, pulls your filming permit,<br>4 that is, for no reason that you caused but they say<br>5 that it's not okay to film anymore, then that is a<br>6 civil authority shutdown and have you something that<br>7 says we had to shut down because the civil authority<br>8 told us so.<br>9 With imminent peril, it's something is<br>10 going on where it's dangerous enough that it's<br>11 unconscionable to continue.  So what is<br>12 unconscionable for one person might be okay for | substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 178:1-21<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative |

| Deposition Designation | Objection & Response |
|---|---|
| 13 another person, which is why it's always a judgment<br>14 call.  We have to understand does the situation rise<br>15 to the fact where everybody would be afraid it's<br>16 really an imminent peril and "imminent" being an<br>17 operative word there, like right now.<br>18 So they all have to do with the production<br>19 policy and the determinations in those two coverages<br>20 and what we would have to be looking at in order to<br>21 have a covered claim.<br><br><br>Page 179<br>23 BY MR. KEELEY:<br>24 Q So Exhibit 16 is a continuation of some of<br>25 the same chain | value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br><br>Plaintiff's Objections:<br>Page 179:23-25<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the |

| Deposition Designation | Objection & Response |
|---|---|
| | time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 180<br>1 The middle E-mail is from Kurt Ford to<br>2 Susan Weiss dated July 1, 2:27 p.m.<br>3 Do you see that?<br>4 A Uh-huh.<br>5 Q He says,<br>6 "So under the current policies, you<br>7 don't think there is coverage?<br>8 "If not, should I loop in Malika?"<br>9 And Ms. Weiss responds with a call to you<br>10 at 2:32 p.m., that top E-mail.<br>11 Do you see that?<br>12 A Uh-huh.<br>13 Q She says,<br>14 "If it's your security detail that is<br>15 saying it's not safe and you are choosing<br>16 to shoot in a different location, it's<br>17 looking more like a possible terrorism<br>18 cover, but I don't know how that policy<br>19 works.<br>20 "Andrea and I discussed this briefly<br>21 when it first came up and we didn't see<br>22 how the policy would respond."<br>23 Do you see that?<br>24 A Uh-huh.<br>25 Q Do you disagree with that last statement<br><br>Page 181<br>1 by Ms. Weiss?<br><br>7 THE WITNESS:  The information we had at<br>8 this point in time was based on these prior E-mails | Plaintiff's Objections:<br>Page 180:1-25<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 181:1; 181:7-22<br>MIL, 402,403<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 9 that say they just couldn't go from one place to the<br>10 other, not because of a civil authority and not<br>11 necessarily because of anything unusual.  It was<br>12 just a security recommendation.<br>13 So under those circumstances, it was<br>14 doubtful coverage would apply and those are the<br>15 things that we would have discussed in the context<br>16 of these earlier E-mails before I went on vacation.<br>17 BY MR. KEELEY:<br>18 Q So you felt like civil authority coverage<br>19 might be doubtful without involvement of the<br>20 government and that it might it might be iffy under<br>21 imminent peril coverage because of the reasons you<br>22 explained previously?<br><br>Page 182<br>1 THE WITNESS:  Right.  Especially because<br>2 time had gone by and they continued to film. | The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 182:1-2<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses |

| Deposition Designation | Objection & Response |
|---|---|
| **Page 184**<br>1 BY MR. KEELEY:<br>2 Q Exhibit 18 is, again, in the same family<br>3 of E-mails, and the very first E-mail is the one I<br>4 would like you to focus your attention on.  It's<br>5 from Malika Adams to Kurt Ford and Jessica Weiss<br>6 copied to you.<br>7 Do you see that?<br>8 A Uh-huh.<br><br>14 Q The third sentence reads,<br>15 "In order to trigger coverage under the<br>16 production policy, we would need a policy<br>17 trigger as Susan had mentioned, and even<br>18 with that, we'd have to be cautious<br>19 because there is a war exclusion on the<br>20 policy."<br>21 Did I read that correctly?<br>22 A Yes.<br><br><br>**Page 185**<br>18 Q And do you recall hearing or reading that<br>19 Malika Adams had raised concern about the possible<br>20 application of the war exclusion?<br>21 A It's clear in this E-mail that she had<br>22 those concerns.  I don't recall discussing them with<br>23 her directly. | the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 184:1-8; 184:14-22<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 185:18-23<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The |

| Deposition Designation | Objection & Response |
|---|---|
| **Page 189**<br>4 Q Do you recall that Atlantic's production<br>5 policy has multiple war exclusions?  It's not just<br>6 one war exclusion but there are a number of<br>7 war-related exclusions?<br>8 A There is a section -- my understanding is<br>9 there is a section and it's with a broad term and it<br>10 includes many parts, if that's what you are<br>11 referring to. | probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>**Plaintiff's Objections:**<br>Page 189:4-11<br>MIL, 402,403<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 190<br>1 BY MR. KEELEY:<br>2 Q So do you recall that there was an<br>3 exclusion for loss caused by war?<br>4 A My recollection is the word "war" was<br>5 definitely one of the exclusions.<br>6 Q And do you recall there was an exclusion<br>7 for war-like actions?<br><br>14 THE WITNESS:  I am pretty sure that it<br>15 says "war-like actions," as well.<br>16 BY MR. KEELEY:<br>17 Q And do you recall there was an exclusion<br>18 for loss caused by weapons of war? | Plaintiff's Objections:<br>Page 190:1-7; 190:14-18<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 191<br>1 THE WITNESS:  I don't -- at this time, I<br>2 did not have a recollection -- any consideration of<br>3 anything to do with weapons of war.<br><br>18 Q In your view, is a rocket a weapon of war?<br><br>23 THE WITNESS:  I think a rocket could be<br>24 many things and whether it's a weapon of war, it<br>25 could be used as a weapon of war, but there are many | Plaintiff's Objections:<br>Page 191:1-3; 191:18; 191:23-25<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general |

| Deposition Designation | Objection & Response |
|---|---|
| | admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 192<br>1 rockets that are not weapons of war<br>2 BY MR. KEELEY:<br>3 Q Are fighter planes in your opinion weapons<br>4 of war?<br><br>10 THE WITNESS:  Well, I know that fighter<br>11 planes are used in wars.  That's as much of a<br>12 conclusion as I could come to. | **Plaintiff's Objections:**<br>Page 192:1-4; 192:10-12<br>MIL, 402,403<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 196<br>2 BY MR. KEELEY:<br>3 Q What would it take for a Israeli fighter<br>4 jot dropping bombs on a daily basis, destroying<br>5 dozens of properties and buildings and killing | **Plaintiff's Objections:**<br>Page 196:2-7; 196:13-15<br>MIL, 402,403, 104a |

| Deposition Designation | Objection & Response |
|---|---|
| 6 hundreds of Palestinians to make that fighter jet a<br>7 weapon of war in your view?<br><br>13 THE WITNESS:  I don't know that I have the<br>14 necessary background or information to understand<br>15 the threshold that would make this a weapon of war. | **Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 199<br>13 Q In your views, is there a difference<br>14 between the exclusion for loss caused by war and the<br>15 exclusion caused by loss -- exclusion for loss<br>16 caused by war-like action?<br><br>22 THE WITNESS:  I view them as similar.<br>23 It's a fine line.  I am not an expert on the war<br>24 exclusion, particularly, and I don't have a<br>25 background about how it's been interpreted over | **Plaintiff's Objections:**<br>Page 199:13-16; 196:22-25<br>MIL, 402,403, 104a, 701<br><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the |

**875**

| Deposition Designation | Objection & Response |
|---|---|
| | time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.  This testimony is not opinion. The witness is permitted to testify to the facts and circumstances leading to a claim and the making of a claim, as they perceived them; and this testimony is relevant to the claim made and the facts of loss. |
| Page 200<br>1 time.<br>2 BY MR. KEELEY:<br>3 Q Does the war exclusion come up very often,<br>4 to your knowledge?<br><br>9 THE WITNESS:  I have been involved in<br>10 insurance for forty years and it has never come up<br>11 and others that I have spoken to in the broker<br>12 community at Aon cannot ever recall having to deal<br>13 specifically with a war exclusion issue. | **Plaintiff's Objections:**<br>Page 200:1-4; 200:8-13<br>MIL, 402,403, 104a, 701<br><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602. "MIL" not clear what objection intended; description of the facts and process |

| Deposition Designation | Objection & Response |
|---|---|
| Page 202<br>22 Q Do you recall there came a point in time<br>23 when you notified Atlantic that NBC had decided to<br>24 postpone shooting for a week.<br>25 A Yes, I recall that.<br><br>Page 203<br>1 Q So you were involved in notifying Atlantic<br>2 of a claim due to the delay in shooting?<br>3 A Yes.<br><br>17 Q You were involved in submitting NBC's<br>18 claim for loss relating to clay in production and<br>19 eventually moving out of Israel to Atlantic<br>20 specialty Insurance Company correct.<br>21 A Yes.<br>22 Q What was your involvement?<br>23 A Once the decisions was made, I would have<br>24 notified our broker that we had made that decision<br>25 and that we would be submitting a claim we needed to<br><br>Page 204<br>1 submit a claim put them on notice.<br>2 Q So who do you recall notifying?<br>3 A Susan Weiss.<br><br>6 Q And what did you do next?<br>7 A We would have discussed it on the phone<br>8 and I can't recall whether we called Peter together<br>9 or not or whether she called him.  But she would<br>10 have done that I believe that she called Peter and<br>11 that notice was given to him. | surrounding the claim is relevant and not prejudicial. This testimony is not opinion. The witness is permitted to testify to the facts and circumstances leading to a claim and the making of a claim, as they perceived them; and this testimony is relevant to the claim made and the facts of loss. |

| Deposition Designation | Objection & Response |
|---|---|
| 17 Q Tell me about the first discussion that<br>18 you can recall?<br>19 A The first discussion would have been about<br>20 the delay and the fact that it was an imminent peril<br>21 situation, our security was telling us that we<br>22 should not return.<br>23 As I recall that first conversation,<br>24 happened with Peter but Peter really wasn't the<br>25 claims person anymore.<br>So he had to get the claims<br>Page 205<br>1 people involved.<br>2 Q So there was an initial discussion that<br>3 you were involved in with Peter Williams correct?<br>4 A Yes.<br>5 Q And was Ms. Weiss on that call?<br>6 A Yes<br><br>10 Q Tell me everything you recall being<br>11 discussed in that call?<br>12 A My recollection is we told him what was<br>13 happening and his view was I will -- I'm not the<br>14 claims person any longer I will have to get them<br>15 involved.<br>16 Q Do you recall anything else being<br>17 discussed during that telephone call?<br>18 A I don't recall anything else, no<br>19 Q What is the next thing you recall<br>20 happening in furtherance of the claim being<br>21 submitted to Atlantic?<br>22 A I believe there was a written<br>23 communication between Susan and OneBeacon.  And then<br>24 it I believe there was a subsequent phone call with | |

| Deposition Designation | Objection & Response |
|---|---|
| 25 Pamela and Danny.<br><br>Page 206<br>1 Q Pamela Johnson and Danny Gutterman?<br>2 A Yes<br><br>6 Q It was just you on the telephone or it was<br>7 you and Ms. Weiss?<br>8 A It was Susan and I.<br><br>12 Q Tell me everything you recall being<br>13 discussed.<br>14 A We discussed what was happening with the<br>15 production.  It was clear that Peter had spoken and<br>16 relayed some information to Pamela and Danny and<br>17 Pamela's initial concern was how many people do we<br>18 have to get out.  And we didn't have to get out<br>19 anybody because we were on I had eight us at that<br>20 point and the issue was going back to Israel.<br>21 And because of these hostilities and our<br>22 security telling us that there was a potential for<br>23 the hostilities to die down and for everything to<br>24 gets back to normal, that we were delaying a week to<br>25 allow for the situation to neutralize<br><br>Page 207<br>13 Q All right so then written notice was<br>14 given.  And then this telephone conversation with<br>15 Pamela Johnson and Danny Guterman was after the<br>16 written notice was given?<br>17 A The initial written notice, yes. | |

| Deposition Designation | Objection & Response |
|---|---|
| 18 Q Do you recall what you or Ms. Weiss told 19 Ms. Johnson and Mr. Guterman about the hostilities? 20 A Again the focus of the call was the 21 problem with production.  If we discussed the 22 specifics of the hostilities it was this rockets 23 coming over the border.  That was the obvious 24 problem with it being too dangerous to film in the 25 streets there.  So at this point because I think the<br><br>Page 208<br>1 of Tel Aviv airport had closed briefly, you know 2 these rockets were not only hitting Jerusalem but 3 they were going a little bit further because we had 4 Always felt that we could just number Tel Aviv for 5 our filming if there was a problem we couldn't over 6 come in Jerusalem but the exact nature of the 7 hostilities and all of the details around that 8 particular thing was not the focus of the call the 9 are focus of the call was what is happening with 10 production what do they need to do what two we think 11 the costs will be. 12 Q What else do you recall being discussed 13 during that telephone conversation? 14 A That was -- you know the jest of it was 15 we're going to push a week and we are going to wait 16 and see what happens and we will keep you posted and 17 it was a day to day thing at that point based on 18 what we were hearing from security. 19 Q What do you recall happened next in | |

| Deposition Designation | Objection & Response |
|---|---|
| 20 furtherance of the claim?<br>21 A Well, it was fairly shortly after that<br>22 that the situation didn't get better and because of<br>23 production timing and needing to make a decision,<br>24 they decided in fairly short order that security was<br>25 saying there is no indication when this is going to<br><br>Page 209<br>1 get better at this point it had really gotten worse<br>2 and they decided they couldn't make plans to return<br>3 there at all they would have to make plans to finish<br>4 up somewhere else.<br><br>21 Q But what I am trying to figure out is by<br>22 that points when NBC made the decision that they had<br>23 to leave Israel and not shoot there did you still<br>24 think it was completely one sided or did you also,<br>25 understand that Israel was fighting back? | <br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 209:21-25<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 210<br>5 THE WITNESS:  Well, what I recall is that<br>6 Israeli was trying to defend themselves.  But it<br>7 involved the border area as I recall, activities at<br>8 the border between the Palestinian area and<br>Israel.<br>9 BY MR. KEELEY:<br>10 Q And so how did you understand they were<br>11 trying to defend themselves was it because they<br>12 remember fighting back?<br><br>17 THE WITNESS:  I don't really recall the<br>18 particulars of what I had heard.  There was a lot of<br>19 discussion in what I was reading about the shield<br>20 that Israel has.<br>21 BY MR. KEELEY:<br>22 Q The iron dome shield?<br>23 A Yes to deflect these rockets and that was<br>24 working that very you know that the situation was<br>25 not as bad as it could be for the people on the | Plaintiff's Objections:<br>Page 210:5-12; 210:17-25<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 211<br>1 ground within Israel.  But and then there was this<br>2 issue of the tunnels at the border and that they<br>3 were trying to stop people from coming through the<br>4 tunnels. | Plaintiff's Objections:<br>Page 211:1-4<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and |

| Deposition Designation | Objection & Response |
|---|---|
| | therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 212<br>6 Q So by the time that NBC had decided to<br>7 mover out of Israel, I would like to know is did you<br>8 understand that Israel was in fact fighting back<br>9 through the use of war plane says, and other<br>10 military weapons?<br><br>19 THE WITNESS:  I can't recall at what point<br>20 I may or may not have become aware that planes were<br>21 being used.  My understanding was that Israel was<br>22 defending themselves.<br>23 BY MR. KEELEY:<br>24 Q How did you understand they were defending<br>25 themselves? | Plaintiff's Objections:<br>Page 212:6-10; 212:19-25<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 213<br>5 THE WITNESS:  My understanding was through<br>6 the defensive mechanism of the dome and defending | Plaintiff's Objections:<br>Page 213:5-7<br>MIL, 402,403 |

| Deposition Designation | Objection & Response |
|---|---|
| 7 the border.<br><br>Page 217<br>14 Q Do you recognize Exhibit 19?<br>15 A Now that I am seeing it, yes.<br>16 Q And does this appear to be a true and<br>17 accurate copy of an E-mail from Wanda Phillips to<br>18 Ms. Weiss, yourself and Toni Peete concerning<br>19 renewal of the 2013 policy attaching a copy of loss<br>20 runs and an option for coverage for the 2014 policy?<br>21 A Yes, that's what it appears to be.<br>22 Q And you testified a little bit earlier<br>23 about the importance of loss runs, correct?<br>24 A Yes.<br>25 Q And so those are something that are<br><br>Page 218<br>1 utilized by Insurance Companies to: one, analyze<br>2 whether they want to continue writing the policy;<br>3 and number two, to appropriately price the policy;<br>4 is that correct?<br><br>8 THE WITNESS:  Yes, that they use losses.<br>9 Whether they use loss runs in particular, that's one<br>10 way of capturing the data.<br>11 BY MR. KEELEY:<br>12 Q So a loss run is simply a summary of loss<br>13 payments that the Insurance Company has made over<br>14 the life of the insurance policy; is that correct?<br><br>18 THE WITNESS:  Usually, that is what a loss | **Defendant's Response:**<br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 19 run will show.<br>20 BY MR. KEELEY:<br>21 Q So the beginning of the third page of<br>22 Exhibit 19, is this the loss run for NBC's claims<br>23 history with Atlantic beginning with the 2010 policy<br>24 up through the 2013 policy?<br>25 A This appears to be their internal document<br><br>Page 219<br>1 of what they were capturing, yes.<br><br>Page 224<br>16 Were you involved in the efforts to renew<br>17 the 2014/2015 policy?<br>18 A Yes, I was.<br>19 Q Did you apply to any other insurance<br>20 companies for policy -- for production policy for<br>21 the 2015/2016?<br><br>25 THE WITNESS:  Yes, we did go out to market<br><br>Page 225<br>1 that year.<br>10 Were you involved in the decision to go<br>11 out to market?<br>12 A Yes, I was.<br>13 Q Who else was involved in that situation?<br>14 A Susan Weiss, Debbie Kizner and Kurt Ford.<br>15 Q And by "go out to market," what you mean<br>16 is you were going to apply for coverage with other<br>17 insurance companies, correct?<br>18 A We were going to solicit bids.<br>19 Q And do you know when you started doing<br>20 that?<br>21 A That would have been sometime in the | |

| Deposition Designation | Objection & Response |
|---|---|
| 22 spring of 2015.<br>23 Q Did anyone take the lead in soliciting<br>24 bids?<br>25 A Susan would have taken the lead.<br>Page 226<br>10 Q So just to give you the background, the<br>11 claim was in 2014.<br>12 A Right.<br>13 Q And so the 2014 policy ran through<br>14 June 2015?<br>15 A Right.<br>16 Q So –<br>17 A In the spring of 2015, as the NBC person,<br>18 I would have been involved with discussions with<br>19 Susan and Kurt about what to do at renewal,<br>20 including going out to market.<br><br>Page 229<br>22 Q Now, going back to the original 2010<br>23 policy -- I know that you were not involved in the<br>24 initial discussions with Atlantic about writing that<br>25 policy, but did you come to learn that Aon submitted<br><br>Page 230<br>1 a manuscripted form to Atlantic that they wanted to<br>2 use as the starting point for any policy?<br><br>5 THE WITNESS:  That was my understanding,<br>6 yes.<br>7. BY MR. KEELEY:<br>8 Q And was it also your understanding that a<br>9 majority of that manuscripted form found its way | |

| Deposition Designation | Objection & Response |
|---|---|
| 10 into the policy that Atlantic eventually issued<br><br>14 THE WITNESS:  My understanding is that it<br>15 was largely modeled on that specimen that was<br>16 submitted, but how it differed -- you know, I never<br>17 saw the original submission to have any<br>18 understanding of how the exact comparison went.<br><br><br>Page 239<br>2 MR. KEELEY:<br>3 Q Let me have you turn back to Exhibit 20,<br>4 again, if you would, please.  The third sentence of<br>5 that first paragraph says,<br>6 "It is a manuscripted policy form that is<br>7 the property of Aon so I ask that you keep<br>8 this confidential."<br>9 And I had asked you about that earlier.<br>10 So does NBC agree that the policy that was<br>11 being utilized was, indeed, the property of Aon?<br><br><br>17 THE WITNESS:  So I don't know in terms of<br>18 ownership how that works only because the policy has<br>19 Atlantic Mutual -- Atlantic Specialty company logo.<br>20 I don't personally -- I couldn't tell you how Aon<br>21 could own something that is clearly an Insurance<br>22 Company's policy.  If It has their letterhead on it, | Plaintiff's Objections:<br>Page 239:2-11; 239:17-25<br>MIL, 402,403, 104a<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602. "MIL" not clear what objection intended; description of the |

| Deposition Designation | Objection & Response |
|---|---|
| 23 it's their paper.  So I don't know.<br>24 You know, I had heard before over time<br>25 about this property-of-Aon issue but I never<br><br><br>Page 240<br>1 understood it.  I don't understand it today. | facts and process surrounding the claim is relevant and not prejudicial.<br><br><br>Plaintiff's Objections:<br>Page 40:1<br>MIL, 402,403, 104a<br><br>Defendant's Response:<br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the |

| Deposition Designation | Objection & Response |
|---|---|
| | facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 242<br>18 BY MR. KEELEY:<br>19 Q Exhibit 22 is another document that has<br>20 been produced to us by Allianz for Fireman's Fund as<br>21 a document that was submitted to them by Ms. Weiss<br>22 in support of NBC's request for proposal for a<br>23 policy.<br>24 Are you able to tell what this document<br>25 represents? | Plaintiff's Objections:<br>Page 42:18-25<br>402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |
| Page 243<br>1 A Yes.<br>2 Q And what is that?<br>3 A This is a list of claims going back to<br>4 2005.<br>5 Q So if you look at the very top heading, it<br>6 says "Title," "Claim Type," "Total Claim Amount,"<br>7 "Deductible Paid By NBCU," "Net Claim" and<br>8 "Expenses," "Total Net Claim Expenses."<br>9 Do you see that?<br>10 A I do. | Plaintiff's Objections:<br>Page 243:1-15<br>MIL, 402,403<br><br>Defendant's Response:<br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will |

| Deposition Designation | Objection & Response |
|---|---|
| 11 Q What is your understanding of the "Total 12 Claim Amount," what that figure represents? 13 A This, the "Total Claim Amount," would be 14 the submission from the show of what the costs were 15 for the particular claim | not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |
| Page 245 2 BY MR. KEELEY: 3 Q Let me have you turn to page -- the page 4 that is numbered 15 on the bottom right through the 5 Bates labeling. 6 I direct your attention to the column that 7 begins "2014." 8 So that would be for the policy year 2014; 9 is that correct? 10 A That would be my understanding, yes. 11 Q And if you will just look through that 12 column for 2014 for a moment. I see two entries for 13 "Dig." the first one says "Dig S Season 1," extra 14 expense; is that right? 15 EXEXP"?  Does that stand for "extra 16 expense"? 17 A Yes. 18 Q And the total claim amount is $100,000; is 19 that right? 20 A Yes. | Plaintiff's Objections: Page 245:2-20 402,403 <br><br> Defendant's Response: The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |
| Page 247 25 Q So the first "Dig" one, "Dig" S1 season | Plaintiff's Objections: Page 247:25-248:3 |

| Deposition Designation | Objection & Response |
|---|---|
| | 402,403 |
| | **Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 248<br>1 one, EX, period, EXP, extra expense, that would be<br>2 the "Dig" claim that is the subject of this lawsuit,<br>3 correct?<br><br>7 THE WITNESS:  It's not clear here whether<br>8 it represents what -- if it represents the full<br>9 claim.<br><br>11 Q Well, it represents that the total claim<br>12 amount is $100,000; is that right?<br>13 A That's what this says, yes.<br>14 Q And the purpose of that indication is to<br>15 inform the Insurance Company here, Allianz, of the<br>16 amount of claims submitted over time by NBC,<br>17 correct? | Plaintiff's Objections:<br>Page 248:7-9; 248:11-17; 248:22-24<br>402,403<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative |

| Deposition Designation | Objection & Response |
|---|---|
| | value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |
| 22 THE WITNESS:  I believe this document was 23 submitted to give Allianz a broad overview of the 24 claim submitted.  It does not stand in a vacuum. | |
| Page 251 1 Q And you think that this list provides 2 simply the first part of the one-week extension? | Plaintiff's Objections: Page 251:1-2; 251:7-13; 251:18-19 402,403 |
| 7 THE WITNESS:  Based on my further 8 knowledge of claim amounts, that is what I think 9 this is. 10 BY MR. KEELEY: 11 Q And then so you, also, think that this 12 chart completely lists -- leaves off NBC's claim for 13 moving out of Israel? | Defendant's Response: The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at the time of the facts giving rise to Plaintiffs' claims. |
| 18 THE WITNESS:  I don't believe that this 19 includes the denied claim. | |
| Page 265 17 Prior to the time that the "Dig" claim was 18 formally denied by Atlantic in writing, had you 19 reviewed any of the reports that were submitted to 20 NBC by Max Security? | Plaintiff's Objections: Page 265:17-20; 265:23-25 MIL, 402,403 |
| 23 THE WITNESS:  I would only have reviewed | Defendant's Response: The witness' understanding of the facts are |

| Deposition Designation | Objection & Response |
|---|---|
| 24 the ones that were forwarded to me by Randi or Mark.<br>25 I was not forwarded any anything directly by the<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Page 266<br>1 security people. | relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 266:1<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 267</u><br>23 Q Let me read to you a sentence beginning at<br>24 the bottom of the first page of Exhibit 24 carrying<br>25 onto the second page.  It says,<br><br><br><br><br><br><br><br><br><br><br><br><br><u>Page 268</u><br>1 "Following reports of a rocked fired<br>2 from Lebanon during the night hours of<br>3 July 14, which landed in the northern<br>4 Galilee region causing no damage or<br>5 injuries, the Israeli Defense Forces<br>6 reportedly fired artillery shells toward<br>7 southern Lebanon's Batoulieh and Ras<br>8 al-Ain near the Palestinian refugee camp<br>9 of Reshidieh, located at the outskirts of<br>10 Tyre."<br>11 Do you see that?<br>12 A I do.<br><br><br>16 Q Were you aware that that type of action | ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims.<br><br>Plaintiff's Objections:<br>Page 267:23-268:12<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 268:16-25<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses |

| Deposition Designation | Objection & Response |
|---|---|
| 17 was taking place?<br>18 A No<br>19 Q Let me read to you the last sentence of<br>20 that same paragraph.  It says,<br>21 "Additionally, Israel Air Force airstrikes<br>22 have also continued during the overnight<br>23 and morning hours in Gaza, which has<br>24 reportedly resulted in the death of three<br>25 Palestinians in Khan Yunis."<br><br>Page 269<br>1 Do you see that?<br>2 A I do<br>3 Q Does that refresh your recollection that<br>4 the Israeli Air Force was striking Palestinian lands<br>5 during this period of time?<br><br>9 THE WITNESS:  This does not refresh my<br>10 memory.<br>11 BY MR. KEELEY:<br>12 Q Doesn't at all?<br>13 A No.<br><br>Page 273<br>2 Q Other than what you have -- what you have<br>3 already testified to, do you recall anything else<br>4 being discussed with Ms. Johnson and Mr. Gutterman<br>5 during that telephone conversation?<br>6 A At that point, it's possible that there<br>7 was a mention of the war exclusion and their<br>8 consideration of that<br>9 Q So do you recall that there were two<br>10 conversations two days apart with Ms. Johnson and<br>11 Mr. Gutterman?<br>12 A I do because we notified them of the push | the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 269:1-5; 269:9-13<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 13 and then we notified them of the pull out.<br>14 I know that there were two conversations.<br><br><br>Page 283<br>17 BY MR. KEELEY:<br>18 Q Do you recognize Exhibit 27 as an E-mail<br>19 from Randi Raymond to you dated July 14, 2014?<br>20 A Yes, I do.<br>21 Q And he says,<br>22 "Andrea, What do need from me with regard<br>23 to details to start a claim?"<br>24 Do you see that?<br>25 A I do<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION: | Plaintiff's Objections:<br>Page 283:17-25<br>MIL, 402,403, 104a<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 284:<br>1 Q So it doesn't sound like Mr. -- or<br>2 Ms. Richmond thought that the claim had already been<br>3 decided by that point, does it?<br><br>6 THE WITNESS: Randi is not an insurance | Plaintiff's Objections:<br>Page 284:13-24<br>MIL, 402,403, 104a |

| Deposition Designation | Objection & Response |
|---|---|
| 7 savvy person. So when she says "start a claim," I<br>8 believe she is referring to this previous E-mail<br>9 when I said I need further production information<br>10 and Mark says Rand is already working on the<br>11 requested production material. That is what I think<br>12 that she is referring to.<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br><br><br>Page 284<br>13 BY MR. KEELEY:<br>14 Q In the second sentence, she says,<br>15 "Is there any risk of a situation in<br>16 Israel changing status, i.e., declaration<br>17 of war that could impede us getting a<br>18 claim?"<br>19 Do you see that?<br>20 A I do.<br>21 Q Do you know what she meant by that? I'm<br>22 not asking you to speculate.<br>23 Do you know what she meant by that?<br>24 A No, I don't<br><br>Page 285<br>6 BY MR. KEELEY:<br>7 Q Do you recognize Exhibit 28 as an E-mail<br>8 from you to Randi Richmond dated July 14 at<br>9 9:41 am.?<br>10 A Yes.<br>11 Q And you're responding to her earlier | Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br><br><br><br><br>Plaintiff's Objections:<br>Page 285:6-13<br>MIL, 402,403, |

| Deposition Designation | Objection & Response |
|---|---|
| 12 E-mail that we just read, right?<br>13 A Yes.<br><br><br><br><br><br>Page 286<br>13 In paragraph two, can you read that for<br>14 me, please.<br>15 A Aloud?<br>16 Q Please, yeah.<br>17 A (Reading):<br>18 "If there is an actual 'declaration<br>19 of war,' we will have an issue with<br>20 coverage under the policy because there is<br>21 a broad exclusion for acts of war. The<br>22 exclusion includes 'war-like acts' but the<br>23 carrier did not bring this up when I spoke<br>24 to them." | **Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>**Plaintiff's Objections:**<br>Page 286:13-24<br>MIL, 402,403<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury |

| Deposition Designation | Objection & Response |
|---|---|
| | is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| <u>Page 289</u><br>1 BY MR. KEELEY:<br>2 Q And the potential issue is if -- if it is<br>3 determined that the conflict amounts to a war, then<br>4 there would be no coverage because of the war<br>5 exclusion?<br><br>9 THE WITNESS:  I believe if there was an<br>10 actual declaration of war, we would have a coverage<br>11 issue. | Plaintiff's Objections:<br>Page 289:1-5; 289:9-11<br>MIL, 402,403,701<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. This testimony is not opinion. The witness is permitted to testify to the facts and circumstances leading to a claim and the making of a claim, as they perceived them; and this testimony is relevant to the claim made and the facts of loss. |
| <u>Page 290</u><br>13 Q My point is in this E-mail, isn't it true<br>14 that what you were saying to Randi Richmond was that<br>15 if it was determined that the conflict between<br>16 Israel and Hamas was determined to be a war, that<br>17 there could be a problem with coverage? | Plaintiff's Objections:<br>Page 290:13-17; 290:20-22<br>MIL, 402,403,701 |

| Deposition Designation | Objection & Response |
|---|---|
| 20 THE WITNESS:  Yes, I think that if there<br>21 was actually determined to be a war, we would have a<br>22 problem with coverage.<br><br><br><br><br><br><br><br><br>Page 291<br>1 BY MR. KEELEY:<br>2 Q Exhibit 29 includes the two E-mails -- two<br>3 of the E-mails we have just got done discussing and<br>4 then at the top, there is an E-mail from Mark Binke<br>5 to you dated July 14, 2014, at 9:46 a.m.<br>6 Do you see that?<br>7 A I do.<br>8 Q And he asks you,<br>9 "What is the criteria for it to be<br>10 'war'?  Who declares it, government of<br>11 Israel?"<br>12 Do you see that?<br>13 A I do.<br>14 Q Do you remember answering Mr. Binke's<br>15 question?<br>16 A I actually don't recall answering him on | **Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. This testimony is not opinion. The witness is permitted to testify to the facts and circumstances leading to a claim and the making of a claim, as they perceived them; and this testimony is relevant to the claim made and the facts of loss.<br><br>**Plaintiff's Objections:**<br>Page 291:1-20<br>MIL, 402,403,104a<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative |

| Deposition Designation | Objection & Response |
|---|---|
| 17 this.<br>18 Q Sitting here today, do you know what the<br>19 criteria would be for it to be a war?<br>20 A I don't know with certainty, no.<br><br><br>Page 300<br>4 Q Do you remember any discussions in or<br>5 around this time, that is, July 14, 2014, with<br>6 anyone where you expressed the view that there might<br>7 not be coverage if war was declared?<br><br>15 THE WITNESS:  So based on this<br>16 back-and-forth with Randi around the declaration of<br>17 war, I have to think that back then, it was<br>18 discussed at some level<br>19 I just can't recall the specific<br>20 discussions because right around this time, there<br>21 were phone calls, and there were also internal<br>22 meetings.  Many of them started to involve our<br>23 attorneys.   So I wish I could be more specific but I<br>24 can't.<br><br>Page 304<br>7 BY MR. KEELEY:<br>8 Q Okay.  Do you recognize Exhibit 31?<br>9 A Yes, I do.<br>10 Q What is this document?<br>11 A This is the claim log that applies to the<br>12 2014 and 2015 policy period.<br>13 Q Who created this document?<br>14 A I did.<br>15 Q And what is reflected on this document? | value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 300:4-7; 300:15-24<br>MIL, 402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims.<br><br>Plaintiff's Objections:<br>Page 304:7-19; 304:25<br>402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not |

| Deposition Designation | Objection & Response |
|---|---|
| 16 There are a number of headings at the top.<br>17 "Term," that is the policy term year,<br>18 correct?<br>19 A Yes<br><br>25 Q And then over a little further "Reserve,"<br><br><br><br>Page 305<br>1 what does that reserve number indicate?<br>2 A This indicates the number that production<br>3 has estimated the claim to be but it has not been<br>4 accepted or finalized yet.<br>5 Q And what is the date of this document?<br>6 A 12/29/16.<br>7 Q And when you say the amount that<br>8 production has estimated, what do you mean by that?<br>9 It says "Reserve. "<br>10 A We use the term "reserve" up here in this<br>11 but it could easily say "estimate" because we don't<br>12 actually go through any sort of reserving process<br>13 like an Insurance Company does.<br>14 This is generated so that we can keep<br>15 track of where we are with the self-insured<br>16 retention and an information to OneBeacon of the<br>17 claims and the amounts.<br>18 Q So "reserve" generally would mean your<br>19 estimate of the value of the covered claim if it was<br>20 covered, the value of the claim?<br>21 A Yes.<br>22 Q And here for -- there is two entries for | substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims.<br><br>Plaintiff's Objections:<br>Page 305:1-25<br>402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |

| Deposition Designation | Objection & Response |
|---|---|
| 23 "Dig."  One is one-week push and one is cast family<br>24 bereavement.<br>25 With respect to one-week push, the reserve<br><br>Page 306<br>1 was set at $100,000.<br>2 So that was your assessment of the claimed<br>3 value of that?<br><br>7 THE WITNESS:  That's the amount the<br>8 production advised me the cost of that one-week<br>9 push.<br>10 BY MR. KEELEY:<br>11 Q Was $100,000?<br>12 A Approximately.<br>13 Q But you did not represent a larger amount<br>14 to Atlantic?<br>15 A Initially when we reported the one-week<br>16 push, we thought it was going to be more. By the<br>17 time we had to put it on a log, it had been further<br>18 defined and wound up to be much less.<br>19 Q So sitting here today, is it your view<br>20 that the cost of that one-week push was $100,000?<br>21 A Yes.<br><br>Page 309<br>15  Q So you now think that during that first<br>16 Pamela Johnson call, that either Ms. Johnson or<br>17 Mr. Gutterman represented to you that the one-week<br>18 push was covered?<br>19 A That was my understanding leaving that<br>20 phone call, as well.<br>21 And I'm telling you the phone calls do | Plaintiff's Objections:<br>Page 306:1-21<br>402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |

| Deposition Designation | Objection & Response |
|---|---|
| 22 blur and I know they were in very short order to<br>23 each other, but yes.<br><br>Page 310<br>19 Q So if Mr. Gutterman testified that<br>20 Ms. Johnson did not make that kind of a statement<br>21 during that telephone conversation on Tuesday, do<br>22 you think he is misremembering?<br><br><br>Page 311<br>1 BY MR. KEELEY:<br>2 Q  Or is it possible that you are<br>3 misremembering?<br><br>5 THE WITNESS:  I suppose anything is<br>6 possible.<br>7 BY MR. KEELEY:<br>8 Q So it's possible you are misremembering?<br><br>12 THE WITNESS:  Anything is possible.<br>13 BY MR. KEELEY:<br>14 Q Now, what do you recall being discussed on<br>15 that second conversation on Thursday?  You said by<br>16 this time the decision had been made to stop filming<br>17 in Israel.<br>18 So did you or Ms. Weiss inform Ms. Johnson<br>19 and Mr. Gutterman of that fact?<br>20 A Yes, that was the purpose of the call.<br>21 Q And they told you that the war exclusion<br>22 might apply?<br><br>25 THE WITNESS:  That was the conversation | Plaintiff's Objections:<br>Page 311:21-22; 311:25-312:6<br>V<br><br>Defendant's Response:<br>This portion of testimony is not vague. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 312<br>1 that the war exclusion was brought up.<br>2 BY MR. KEELEY:<br>3 Q Did they tell you that a final decision<br>4 had been made or simply that based upon their<br>5 analysis so far, it appeared to them that the war<br>6 exclusion might apply?<br><br>Page 333<br>10 Q Do you know who Teresa Gooley is?<br>11 A Yes, I do.<br>12 Q Who do you understand her to have been?<br><br>15 THE WITNESS:  When I met Teresa Gooley,<br>16 she was introduced to me as the head of the claims<br>17 department for OneBeacon.<br>18 BY MR. KEELEY:<br>19 Q And did you have a meeting with Ms. Gooley<br>20 and other representatives of Atlantic to discuss the<br>21 claim?<br><br><br>24 THE WITNESS:  There was a meeting with<br>25 Teresa Gooley and Peter Williams and others.<br><br>Page 334<br>5 Q Who do you recall was at that meeting?<br>6 A It was Peter and Danny and Teresa, Kurt<br>7 Ford, Mark Binke, Randi, myself, and I can't recall<br>8 whether Lucia and Tania were there or not.<br>9 Q What do you recall being discussed at that<br>10 meeting?<br>11 A The claim, the claim that we were | |

| Deposition Designation | Objection & Response |
|---|---|
| 12 presenting and that had been denied.<br>13 Q What, in particular, can you recall being<br>14 discussed?<br>15 A Certainly, what had happened to the<br>16 production, what had gone on, what our plans were,<br>17 what why we felt we -- we couldn't go back to<br>18 Israel.<br>19 The denial letter had already been issued,<br>20 is my understanding, because Teresa got involved<br>21 because we were seeking a higher level opinion about<br>22 the coverage.<br>23 So this was our opportunity to meet<br>24 Teresa, for her to hear what had been already told,<br>25 but it was a little further down the line. So we<br><br>Page 335<br>1 had a plan of what we were going to do and so forth.<br>2 So that was the gist of the meeting.<br>3 Q So Atlantic eventually did deny the claim<br>4 that was submitted by NBC; is that correct?<br><br><br>24 Q So Exhibit 36 is an E-mail from<br>25 Ms. Johnson to you forwarding Atlantic's or<br><br>Page 336<br>1 OneBeacon's coverage determination; is that correct?<br>2 A Yes.<br>3 Q And this was directed to you, right?<br>4 A To me and to Susan.<br>5 Q The letter is directed to you, though? | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 336:18-337:1<br>V |

| Deposition Designation | Objection & Response |
|---|---|
| 6 A Yes, it is.<br>7 Q And I take it you read it at the time you<br>8 received it.<br>9 A Yes.<br>10 Q And if you will turn to page 3 of the<br>11 letter for me.<br><br><br>18 Q And that section of the letter sets forth<br>19 various of the war exclusions.<br>20 Do you see that?<br>21 A I do.<br>22 Q Do you recognize that from the policy?<br>23 A Yes.<br>24 Q So did you understand that Ms. Johnson was<br>25 explaining to you that these exclusions were a basis<br><br>Page 337<br>1 for Atlantic to deny coverage for NBC's claim?<br><br><br>4 THE WITNESS:  It was my understanding that<br>5 this was the reason she was denying the claim, yes.<br>6 BY MR. KEELEY:<br>7 Q The exclusions that are set forth there on<br>8 page 3 of the letter.<br>9 A Yes.<br>10 Q Now, what did you<br><br>Page 338<br>19 BY MR. KEELEY:<br>20  Q So Exhibit 37 is an E-mail from<br>21 Ms. Johnson to you sending another copy of the<br>22 coverage letter in which she indicates that she<br>23 noticed that the automatic numbering -- page<br>24 numbering didn't work on the prior letter. | Defendant's Response:<br>This portion of testimony is not vague.<br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 337:9<br>V<br><br>Defendant's Response:<br>This portion of testimony is not vague. |

| Deposition Designation | Objection & Response |
|---|---|
| 25 Do you recall that?<br><br>Page 339<br>1 A I think when I saw this, I don't think<br>2 that I really had recognized the fact that the<br>3 pagination was wrong.<br>4 Q But the letter -- the second letter that<br>5 she sent with Exhibit 37 was the same as the first<br>6 letter; is that correct?<br>7 A That is my understanding, yes<br><br><br>Page 364<br>24 BY MR. KEELEY:<br>25 Q Now<br><br>Page 365<br>1 E-mail from Susan Weiss to Kurt Ford copied to<br>2 George Walden, Susan Weiss and Rafael Rivera. Now,<br>3 you are not copied on that E-mail.<br>4 Do you recall ever seeing that E-mail?<br>5 A No.<br>6 Q And so Ms. Weiss says,<br>7 "Kurt,<br>8 "I want to give you an update on the<br>9 policy review as well as where George and<br>10 I are at with the marketing of your TV<br>11 production package policy."<br>12 And the next line, she says,<br>13 "I have reviewed Elm form and<br>14 compared it to two of the broadest studio<br>15 policy forms (one of which was NBCU) as<br>16 well as with a manuscripted studio form<br>17 created by Aon/Ruben.  We believe that<br>18 this new manuscripted form should be used<br>19 as the starting point with the carriers.<br>20 It encompasses the elements found in the | <br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 364:24-365:25<br>402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims |

| Deposition Designation | Objection & Response |
|---|---|
| 21 Elm form and also includes the newer<br>22 coverages found on the master studio<br>23 forms."<br>24 Do you see all of that?<br>25 A I do.<br><br><br>Page 366<br>1 Q The first sentence, she says, "I reviewed<br>2 the Elm form," correct?<br>3 A Yes.<br><br><br>21 Is this the policy that Elm Insurance<br>22 Company had issued to NBC/Universal for the prior<br>23 year, 2009 to 2010?<br>24 A Yes, it appears to be.<br>25 Q And will you turn to the page that is 4 of | <br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 366:1-3<br>402,403<br><br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims<br><br>Plaintiff's Objections:<br>Page 366:21-25<br>402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and |

| Deposition Designation | Objection & Response |
|---|---|
| | therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims |
| **Page 367** <br> 1 18 and it's Bates numbered 924. <br> 2 AI am there. <br> 3 Q And read Section 22, to yourself, please. <br> 4 So Section 22 is the "War Risk and <br> 5 Governmental Authority Exclusion" of the Elm policy, <br> 6 correct? <br> 7 A Yes. <br> 8 Q And the third -- the second one is an <br> 9 exclusion for any weapon of war employing atomic <br> 10 fission or radioactive force whether in time of <br> 11 peace or war. <br> 12 Do you see that? <br> 13 A I do. <br> 14 Q Go back to the similar exclusion in <br> 15 Exhibit 38, the Atlantic policy. <br> 16 And instead of saying "any weapon of war <br> 17 employing any atomic fission," it says "any weapon <br> 18 of war including atomic fission." <br> 19 Do you see that difference? <br> 20 A I do. | Plaintiff's Objections: <br> Page 367:1-20 <br> MIL,402,403 <br><br> Defendant's Response: <br> The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| **Page 368** <br> 14 BY MR. KEELEY: <br> 15 Q Having been through our discussions today, | Plaintiff's Objections: <br> Page 368:14-19; 368:22-24 <br> 402,403,602 |

| Deposition Designation | Objection & Response |
|---|---|
| 16 in hindsight looking back on everything, do you feel<br>17 it was a mistake for you to not have obtained<br>18 additional insurance once "Dig" was declared to the<br>19 policy?<br><br>22 THE WITNESS:  In hindsight, it might have<br>23 been prudent to investigate if we could have<br>24 obtained additional coverage for this project. | Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. The witness is testifying to their rational based perceptions, which she is permitted to do under the FRE. |
| Page 369<br>14 BY MR. KEELEY:<br>15 Q Do you recognize Exhibit 40 as a series of<br>16 E-mails between you and Andrea Garber on July 17,<br>17 2014?<br><br>21 BY MR. KEELEY:<br>22 Q Excuse me.<br>Between you and Susan Weiss.<br>23 A Yes, I do recognize it. | Plaintiff's Objections:<br>Page 369:14-17; 369:21-23<br>402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 371<br>1 BY MR. KEELEY:<br>2 Q Let's do this.  Why don't you read the<br>3 entirety of your E-mail to Susan Weiss for me,<br>4 please.<br>5 A (Reading):<br>6 "Thanks.  Got it. Everyone was very<br>7 disappointed.  Everything got rehashed<br>8 again back to when we first declared the<br>9 production and why additional insurance<br>10 was not purchased.   They really want me to<br>11 have that follow-up call with Peter so<br>12 hopefully, we can do that in the morning."<br>13 Q Do you know what you are referring to<br>14 there when you say "and why additional insurance was<br>15 not purchased"?<br><br>18 THE WITNESS: The question certainly came<br>19 up.<br>20 BY MR. KEELEY:<br>21 Q So the question about why you did not<br>22 obtain additional insurance was raised by persons at<br>23 NBC?<br>24 A Yes. | Plaintiff's Objections:<br>Page 371:1-24<br>402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |
| Page 375<br>8 Q So you now recall that someone asked you<br>9 why you did not obtain additional insurance when<br>10 "Dig" was declared to the policy, correct?<br><br>13 THE WITNESS:  Yes. | Plaintiff's Objections:<br>Page 375:8-10; 375:13<br>402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general |

| Deposition Designation | Objection & Response |
|---|---|
| | admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |

## 8.   TERESA GOOLEY WOLF

| Deposition Designation | Objection & Response |
|---|---|
| Defendant's Designation of Teresa Gooley Wolf<br>p. 6, l. 19-p. 6, l. 24; p. 9, l. 9-p. 11, l. 11; p. 14, l. 12-p. 19, l. 6; p. 20, l. 18-p. 22, l.10; p. 22, l. 22-p. 23, l. 8; p. 23, l. 19-p. 25, l. 9; p. 38, l. 23-p. 41, l. 2; p. 44, l. 3-p. 45, l. 6; p. 68, l. 12-p. 70, l. 20; p. 93, l. 10-p. 94, l. 17; p. 103, l. 1-p. 114, l. 11; p. 116, l. 23-p. 117, l. 15; p. 118, l. 6-p. 119, l. 17; p. 126, l. 9-p. 137, l. 7; p. 147, l. 8-p. 149, l. 3; p. 149, l. 12-p. 149, l. 20; p. 150, l. 14-p. 151, l. 15; p. 152, l 14-p. 152, l. 20; p. 154, l. 3-p. 155, l. 5; p. 158, l. 21-p. 159, l. 17; p. 162, l. 3-p. 162, l. 21; p. 166, l. 1-p. 166, l. 10; p. 168, l. 16-p. 169, l. 17; p. 177, l. 6-p. 179, l. 5; p. 220, l. 18-p. 220, l. 22; p. 221, l. 14-p. 224, l. 15; p. 225, l. 2-p. 230, l. 14 | Plaintiffs object to Defendants' designations as follows.  Where line numbers are not included with a page number, plaintiffs object to all designated testimony on the page cited. |
| Page 6<br><br>19 EXAMINATION<br>20 BY MS. COYOCA:<br>21 Q. Good morning, Ms. Gooley. Could you please<br>22 state your full name and address for the<br>23 record.<br>24 A. Sure. It's Theresa Anne, A-N-N-E, Gooley | Plaintiff's Objections:<br>No objection – Page 6.<br><br>Defendant's Response: |
| Page 9<br><br>9 Could you please describe your<br>10 educational background starting from college<br>11 moving forward?<br>12 A. I graduated from the University of Minnesota,<br>13 Minneapolis, from the Carlson School of<br>14 Management with a finance degree, and then I<br>15 worked for a year, and then I went to law<br>16 school at Drake Law School in Iowa and<br>17 graduated in 1994. And then I -- let's see,<br>18 I'm trying -- yup, that's -- that is it.<br>19 Q. When did you receive your undergraduate<br>20 degree?<br>21 A. Nineteen ninety.<br>22 Q. And you indicated you worked for a year in<br>23 between undergrad and law school; is that<br>24 correct?<br>25 A. That's correct. | Plaintiff's Objections:<br>No objection – Page 9.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| Page 10 | Plaintiff's Objections: No objection – Page 10. Defendant's Response: |
| 1 Q. Where did you work? 2 A. I worked at Medtronic. 3 Q. Doing what? 4 A. More accounting-related things. 5 Q. Do you have any degrees beyond your JD from 6 Drake Law School? 7 A. No. 8 Q. No LLMs or anything like that? 9 A. No. 10 Q. Do you have any kind of certificates or 11 specializations in any particular legal area? 12 A. No. 13 Q. Have you attended any continuing legal 14 education that specifically focused on 15 insurance? 16 A. Yes. 17 Q. Can you please describe for me the nature of 18 such continuing legal education just 19 generally? 20 A. I've attended Tort Trial Insurance, they have 21 different events and I've attended those, 22 they focus primarily on first-party fidelity 23 coverage. I've, you know, just attended CLEs 24 here and there that may have addressed, like, 25 directors and officers insurance, | |
| Page 11 | Plaintiff's Objections: No objection – Page 11. Defendant's Response: |
| 1 employment-related insurance, coverage 2 insurance in general. 3 Q. Okay. With respect to continuing legal 4 education, have you taken any seminars or any 5 kind of courses with respect to best 6 practices in terms of claims handling? 7 A. We -- at OneBeacon they did -- they had -- we 8 had training for different states, so I know 9 that I did some in California and -- but like 10 best practices just consistent with what the | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 14<br><br>12 Q. And can you please describe your employment<br>13 background just generally from graduation<br>14 from law school forward?<br>15 A. So after I graduated from law school, I<br>16 clerked for the District Court here in<br>17 Minneapolis for former Judge Sean Rice, and<br>18 then former Judge Kathleen Blatz, and I also<br>19 did a rotation with -- she's a current judge,<br>20 Lancaster, Joan Lancaster, Joan Ericksen<br>21 Lancaster, it might be Joan Ericksen now.<br>22 Then I worked at the Department of<br>23 Commerce, the Minnesota Department of<br>24 Commerce for, I want to say, maybe nine<br>25 months, maybe a year, and then came over to | Plaintiff's Objections:<br>No objection – Page 14.<br><br>Defendant's Response: |
| Page 15<br><br>1 Meagher & Geer, and worked at Meagher & Geer<br>2 until I went over to what was St. Paul<br>3 Companies, and that would have been in about<br>4 2001.<br>5 And at some point, I think it was<br>6 2004, 2005, St. Paul and Travelers merged,<br>7 and so I worked for what is now Travelers<br>8 through two thousand -- November 2010, and<br>9 then went to OneBeacon in two thousand --<br>10 November 2010, and left OneBeacon in December<br>11 2015. I worked -- and I started at Travelers<br>12 again in -- excuse me, June of 2016 and am<br>13 currently at Travelers.<br>14 Q. Okay. And the work that you did for the<br>15 Minnesota Department of Commerce for<br>16 approximately nine months to one year, what<br>17 did you do while you were there?<br>18 A. I worked in the division that -- that worked<br>19 with the underground storage tanks and<br>20 environmental cleanup of -- of, you know,<br>21 underground storage-related tanks.<br>22 Q. And you worked as a lawyer? | Plaintiff's Objections:<br>No objection – Page 15.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 23 A. Yes.<br>24 Q. Your work for St. Paul Travelers the first<br>25 time that you worked for them, what did you<br><br>Page 16<br><br>1 do for St. Paul Travelers?<br>2 A. I was a claim handler.<br>3 Q. Did you have any particular area of industry<br>4 focus?<br>5 A. When I initially started, I handled directors<br>6 and officers, errors and omissions,<br>7 employment and fidelity-related matters, and<br>8 that was for about the first five years. And<br>9 then thereafter I was the managing director<br>10 for financial institutions, so focused on<br>11 claims that our financial institution<br>12 insureds had, so it could be anything from a<br>13 community bank to a U.S. Bank to a former<br>14 Lehman Brothers.<br>15 Q. And what was your last position when you left<br>16 Travelers?<br>17 A. Managing director.<br>18 Q. Okay. I believe you indicated you joined<br>19 OneBeacon entertainment in November of 2010;<br>20 is that correct?<br>21 MS. SCOTT REED: Objection to<br>22 form, misstates the witness's testimony.<br>23 THE WITNESS: Yeah, I went -- yes,<br>24 I went to OneBeacon in November 2010.<br>25 MS. COYOCA: Okay.<br><br>Page 17<br><br>1 BY MS. COYOCA:<br>2 Q. And what was your position when you were<br>3 first hired at OneBeacon?<br>4 A. Again in claims. I was the vice-president of<br>5 claims, so initially I oversaw the -- the<br>6 financial institution group and what --<br>7 what -- what is called the government risk<br>8 group and then the energy group.<br>9 Q. And how long did you handle that position<br>10 overseeing the financial institution group,<br>11 the government group and the energy group? | <br><br><br>Plaintiff's Objections:<br>No objection – 16:1-20; 16:23-25.<br><br>IO – 16:21-22.<br><br>Defendant's Response:<br>Objection deleted.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 17.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 12 A. The government group I -- I've -- my whole<br>13 tenure at -- at OneBeacon I -- I oversaw.<br>14 Energy I oversaw -- OneBeacon ultimately<br>15 moved out of the -- out of energy, and so I<br>16 oversaw that up through the time that they<br>17 moved out of the energy in -- I'm trying to<br>18 think. I can't remember the exact date. I<br>19 want to say it probably was sometime in 2013,<br>20 but I don't remember the exact date.<br>21 Q. What about the financial institutions group?<br>22 A. So the financial institutions group, I<br>23 oversaw that group probably for about four<br>24 years, and then it transitioned over to<br>25 somebody else within OneBeacon.<br><br>Page 18<br><br>1 Q. And when you say you oversaw the financial<br>2 institution group or the energy group,<br>3 et cetera, what do you mean by the words<br>4 "oversaw"?<br>5 A. Each of -- each of those divisions within<br>6 OneBeacon had a claim manager and so I<br>7 oversaw that claim manager.<br>8 Q. What position, if -- if there were any<br>9 different positions other than a<br>10 vice-president of claims, did you hold while<br>11 you were employed by OneBeacon?<br>12 A. I think my position at all times was<br>13 vice-president of claims. I think -- strike<br>14 that. My -- it is -- my position at all<br>15 times was vice-president of claims. The<br>16 groups that I oversaw changed during the<br>17 course of my tenure at OneBeacon.<br>18 Q. Other than the three groups that you've<br>19 already mentioned, what other groups did you<br>20 oversee?<br>21 A. I oversaw the technology group, and the<br>22 accident and health group, and the<br>23 entertainment group. I just want to make<br>24 sure I'm not missing one. And the<br>25 environmental group or excess and surplus.<br><br>Page 19 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 18.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 1 Q. Did you oversee more than one claims manager<br>2 when you were overseeing the technology<br>3 group?<br>4 A. Yes.<br>5 Q. How many?<br>6 A. About five or six<br><br><br>Page 20<br><br>18 Q. Okay. Focusing on the entertainment group --<br>19 A. Perfect.<br>20 Q. -- what was the -- who did you oversee at the<br>21 entertainment group?<br>22 A. Pamela Johnson.<br>23 Q. Okay. What was Pamela Johnson?<br>24 A. She was the -- the claim manager, I'm not<br>25 sure if that was the exact title, but the<br><br>Page 21<br><br>1 claim manager of the entertainment group.<br>2 Q. Was there more than one claims manager for<br>3 the entertainment group while you were<br>4 overseeing it?<br>5 A. She was the head claim person. At some point<br>6 just before I left, we had another individual<br>7 come in and was a claim manager, but not<br>8 parallel -- it wouldn't have been a parallel<br>9 position to Pamela Johnson.<br>10 Q. When you say not a parallel position, what do<br>11 you mean?<br>12 A. Pamela -- Pamela oversaw the -- the whole<br>13 entertainment group and then reported up to<br>14 me. Her oversight included all the<br>15 individual claim handlers that handled the<br>16 entertainment claims and then loosely the<br>17 other groups that handled other -- that<br>18 handled other entertainment claims.<br>19 After Pamela's departure we had --<br>20 we hired a claim manager but he did not -- he<br>21 didn't have the experience Pamela did, so he<br>22 wasn't brought in at the level Pamela was.<br>23 Q. And Pamela Johnson, when she was the claims<br>24 manager, you indicated that there were | Plaintiff's Objections:<br>No objection – Page 19.<br><br>Defendant's Response:<br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 20.<br><br>Defendant's Response:<br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 21.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 25 various claims handlers that reported to her;<br><br><br>Page 22<br><br>1 is that correct?<br>2 A. That's correct.<br>3 Q. How many?<br>4 A. I think about five or six.<br>5 Q. And how long did you oversee the<br>6 entertainment group, from what period of time<br>7 until the end?<br>8 A. I oversaw it through December of 2015. When<br>9 I started -- let's see, Pamela came in 2012.<br>10 I think I started probably in 2013.<br><br>22 Q. And who were the five or six claims handlers,<br>23 if you can recall, that Pamela oversaw in the<br>24 entertainment group?<br>25 A. Danny Gutterman, Lucy, and I apologize I<br><br>Page 23<br><br>1 can't remember Lucy's last name right now,<br>2 Elyse Reinke, Ryan, and I believe her name is<br>3 Christine, she sits out in Boston, and then<br>4 at one point also Jill, and I can't remember<br>5 Jill's last name either, sorry.<br>6 Q. Are any of these individuals that you just<br>7 identified, are any of them lawyers?<br>8 A. No, no.<br><br><br>19 Q. As the VP and over -- of claims and<br>20 overseeing, let's just focus on the<br>21 entertainment group, what did your<br>22 responsibilities entail?<br>23 A. I worked directly with Pamela. To the extent<br>24 I had questions about any claims or she had<br>25 questions, that would be something we talked<br><br>Page 24<br><br>1 about. We would talk generally about what | **Plaintiff's Objections:**<br>No objection – Page 22.<br><br>**Defendant's Response:**<br><br><br><br><br><br><br><br><br><br><br>**Plaintiff's Objections:**<br>No objection – Page 23.<br><br>**Defendant's Response:**<br><br><br><br><br><br><br><br><br><br><br>**Plaintiff's Objections:**<br>No objection – 24:1-12; 24:15- |

| Deposition Designation | Objection & Response |
|---|---|
| 2 was going on within entertainment, you know,<br>3 what we were seeing based on claim -- claim<br>4 volume, types of claims. My oversight would<br>5 include staffing, you know, appropriate<br>6 staffing, monitoring volume, assisting with<br>7 broker relationships, things like that.<br>8 Q. When an entertainment claim would come in,<br>9 would you receive notice of it?<br>10 A. No.<br>11 Q. When did you receive notice, if ever, that an<br>12 entertainment claim had been asserted?<br>13 MS. SCOTT REED: Objection;<br>14 foundation, speculation.<br>15 THE WITNESS: At OneBeacon, with<br>16 the entertainment, the claims, it depended on<br>17 when they came in in terms of the time<br>18 period, but generally the claims were<br>19 supposed to be reported up through our<br>20 central reporting and that's when the claims<br>21 were set up.<br>22 Pamela Johnson would assign the<br>23 claims. There may be occasions where Lucy<br>24 would or Lucy would get a claim and then<br>25 she'd direct it to be set up. I would find<br><br>Page 25<br><br>1 out about particular claims if Pamela was<br>2 gone or if Pamela let me know about the<br>3 particular claim.<br>4 BY MS. COYOCA:<br>5 Q. But as a matter of routine course, you did<br>6 not necessarily receive notice of each<br>7 entertainment claim that was filed with<br>8 OneBeacon; is that correct?<br>9 A. That's correct.<br><br>Page 38<br><br>23 Q. In terms of overseeing Ms. Johnson's<br>24 management of entertainment-related claims,<br>25 what specifically were your duties?<br><br>Page 39 | 25.<br><br>IO – 24:13-14.<br><br>Defendant's Response:<br>Objection deleted.<br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 25.<br><br>Defendant's Response:<br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 38.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 1 A. Again, I worked with Pamela on any<br>2 particularly large claims, any particular<br>3 claims that had significant coverage issues,<br>4 and then worked with her on staffing issues,<br>5 you know, reviewed claims, claim loads,<br>6 things of that nature.<br>7 Q. When you say you worked with her on large<br>8 claims, what specifically did that entail?<br>9 A. Well, if she had -- if we had any particular<br>10 large claims, she would flag -- flag them up<br>11 to me and we would generally have a<br>12 conversation about the particular claims, and<br>13 depending on the nature of the claim, may<br>14 have several conversations.<br>15 Q. Did you review the work that Ms. Johnson had<br>16 done in investigating claims?<br>17 A. Generally, no.<br>18 Q. Would you -- when discussing particular<br>19 claims with Ms. Johnson, would you question<br>20 her with respect to the steps that she had<br>21 taken to investigate a claim?<br>22 A. I -- I may question her to make sure that I<br>23 understood what we had done and what her<br>24 conclusions were and, you know, what she<br>25 based those conclusions on. | Plaintiff's Objections:<br>No objection – Page 39.<br><br>Defendant's Response: |
| Page 40<br><br>1 Q. Were there any occasions that you can recall<br>2 where you would direct Ms. Johnson to go back<br>3 and do additional work in investigating a<br>4 claim?<br>5 A. No.<br>6 Q. While you were overseeing Ms. Johnson's work,<br>7 did you provide any type of guidance with<br>8 respect to the steps that should be<br>9 undertaken when investigating a claim?<br>10 A. Generally, no. Pamela is an expert in the<br>11 area. To the extent we have a discussion and<br>12 we think of something that we would want to<br>13 probe further, we'd go forward with that, but<br>14 I trusted Pamela's judgment.<br>15 Q. You indicated that Ms. Johnson was an expert<br>16 in the area; is that correct?<br>17 A. Yes. | Plaintiff's Objections:<br>No objection – Page 40.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 18 Q. What did you base that conclusion on?<br>19 A. She has significant experience handling<br>20 entertainment claims. She also was a trial<br>21 lawyer, has significant trial experience.<br>22 She's very bright, very articulate, and she<br>23 knows a lot of the players in the industry.<br>24 Q. And when you say, "She knows a lot of players<br>25 in the industry," what industry are you | |
| Page 41<br><br>1 referring to?<br>2 A. Entertainment | Plaintiff's Objections:<br>No objection – Page 41.<br><br>Defendant's Response: |
| Page 44<br><br>1 entertainment industry?<br>2 A. I'm not aware, no.<br>3 Q. Okay. I'd like to show you a document,<br>4 Ms. Gooley, that has previously been<br>5 identified as an exhibit to Danny Gutterman's<br>6 deposition. So I'm going to go ahead and<br>7 give you that. (Hands document.)<br>8 And for the record, this document is<br>9 titled, "General Claims Practices," and it's<br>10 labeled Bates control numbers ATL000735<br>11 through 743. Could you please take a moment<br>12 to familiarize yourself with this document?<br>13 A. Yes.<br>14 Q. Please let me know when you're ready for<br>15 questions.<br>16 A. Okay. (Reviews document.) I'm done<br>17 reviewing the document.<br>18 Q. Thank you. Are you familiar with this<br>19 document?<br>20 A. Yes.<br>21 Q. What is it?<br>22 A. It's called the General Claims Practices.<br>23 Q. Were you familiar with it before you just<br>24 read through it?<br>25 A. Yes, I've seen it before. | Plaintiff's Objections:<br>No objection – Page 44.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| **Page 45**<br><br>1 Q. When did you see it?<br>2 A. When I was at OneBeacon.<br>3 Q. Was it the General Claims Practice --<br>4 practices that were in effect at the time<br>5 that you were working for OneBeacon?<br>6 A. Yes, it was. | Plaintiff's Objections:<br>No objection – Page 45.<br><br>Defendant's Response: |
| **Page 68**<br><br>12 BY MS. COYOCA:<br>13 Q. Ms. Gooley, was it necessary for you to be<br>14 informed as to every claim that Ms. Johnson<br>15 was going to deny before the denial was<br>16 conveyed to the client?<br>17 MS. SCOTT REED: Objection; vague,<br>18 ambiguous.<br>19 THE WITNESS: No, she -- she had<br>20 the authority to deny a claim.<br>21 BY MS. COYOCA:<br>22 Q. Were there particular parameters pursuant to<br>23 which Ms. Johnson was required to report to<br>24 you before she denied a claim?<br>25 A. We never had any express parameters. We had | Plaintiff's Objections:<br>No objection – 68:12-16; 68:19-25.<br><br>IO – 68:17-18.<br><br>Defendant's Response:<br>Objection deleted. |
| **Page 69**<br><br>1 worked together long enough, you just know<br>2 when you need to flag something up and talk<br>3 about it and when you -- you know, you can go<br>4 forward, so...<br>5 Q. When Ms. Johnson came to you to discuss a<br>6 claim and the fact that her recommendation<br>7 was going to be to deny the claim, did you<br>8 have any process that you would go through<br>9 with her in order to review the<br>10 determination?<br>11 MS. SCOTT REED: Objection; lack<br>12 of foundation. | Plaintiff's Objections:<br>No objection – 69:1-10; 69:13-25.<br><br>IO – 69:11-12.<br><br>Defendant's Response:<br>Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 13 THE WITNESS: If Pamela and I were<br>14 talking about a denial, I would always want<br>15 to see the policy first and then I'd -- you<br>16 know, and then we'd have a discussion about<br>17 the facts of the claim and everything that<br>18 she knew and, you know, she'd outline why she<br>19 felt there was or was not coverage, and then<br>20 I'd ask any questions that I may have and,<br>21 you know, it really depended on the nature of<br>22 the claim, how many -- how many questions I<br>23 may or may not have had.<br>24 BY MS. COYOCA:<br>25 Q. Were there ever circumstances pursuant to | |
| Page 70<br><br>1 which you would send Ms. Johnson back in<br>2 order to obtain additional facts or further<br>3 investigate the claim?<br>4 A. I can't recall any, no.<br>5 Q. You indicated that she'd outline the -- why<br>6 she felt there was or was not coverage. Did<br>7 you require that Ms. Johnson provide the<br>8 reasons why she felt there was or was not<br>9 coverage in writing?<br>10 MS. SCOTT REED: Objection; vague.<br>11 THE WITNESS: No, not necessarily.<br>12 Again, you know, we'd have a conversation and<br>13 I'd want -- you know, we'd talk about the<br>14 facts, I'd want to look at the policy, we'd<br>15 talk through the coverage issues, whether<br>16 there was or was not coverage, and it may be<br>17 at the end of the day when the letter -- when<br>18 we're ready to issue a letter I may want to<br>19 look at it. But, generally, that was not<br>20 common practice. | Plaintiff's Objections:<br>No objection – 70:1-9; 70:11-20.<br><br>IO – 70:10.<br><br>Defendant's Response:<br>Objection deleted. |
| Page 93<br><br>10 MS. COYOCA: I actually want to<br>11 move on to a new exhibit number, and I<br>12 believe we're on Exhibit 31. So Exhibit 31<br>13 will be an e-mail chain, and it's labeled<br>14 Bates control ATL001571 through 1572.<br>15 (Whereupon, Exhibit 31 was | Plaintiff's Objections:<br>No objection – Page 93.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 16 marked for identification.)<br>17 THE WITNESS: (Reviews document.)<br>18 I've finished looking at it.<br>19 MS. COYOCA: Okay.<br>20 BY MS. COYOCA:<br>21 Q. Actually, before you -- I ask you about this<br>22 document, when is the first time you heard<br>23 about the Dig claim?<br>24 A. I think that -- I'm trying to remember if<br>25 it -- I think it was the day after Aon<br><br><br>Page 94<br><br>1 provided OneBeacon with formal notice of the<br>2 claim.<br>3 Q. And how did you hear about it?<br>4 A. From Pamela.<br>5 Q. Did she call you, send you an e-mail, ask for<br>6 a meeting?<br>7 A. I think -- I think this might have been how<br>8 she let me know about it.<br>9 Q. Okay. And by, "This," you mean Exhibit 31,<br>10 the e-mail exchange?<br>11 A. Yes.<br>12 Q. Okay. So do you recall any conversations or<br>13 communications with Ms. Johnson prior to<br>14 receipt of the e-mail exchange that's<br>15 contained in Exhibit 31?<br>16 A. I don't recall any conversations before this<br>17 e-mail, no.<br><br>Page 103<br><br>1 Q. At any point in time that you were involved<br>2 with the claim, did you gain an understanding<br>3 of what it exactly is that Mr. Gutterman was<br>4 doing?<br>5 A. I know that he was looking at different<br>6 outside, you know, articles, things like<br>7 that. But my primary correspondence --<br>8 communication -- my communication was with<br>9 Pamela.<br>10 Q. Did you have any conversations with<br>11 Ms. Johnson about the work that Mr. Gutterman | <br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 94.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 103.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 12 was doing?<br>13 A. I -- I don't recall.<br>14 Q. Did you have any conversations with her<br>15 specifically about the outside sources, the<br>16 articles that Mr. Gutterman was consulting<br>17 with?<br>18 A. No.<br>19 Q. Did you provide any direction to Ms. Johnson<br>20 in terms of the use of Mr. Gutterman as a<br>21 resource to locate sources of information?<br>22 A. No, I did not.<br>23 Q. Directing your attention to the first e-mail<br>24 in the chain of Exhibit 31, which is the<br>25 July 16 e-mail from Pamela Johnson to<br><br>Page 104<br><br>1 Theresa Gooley, "Active War Exclusion, Are<br>2 you available for a short call," it indicates<br>3 that it was sent at 1:44 p.m. Do you see the<br>4 e-mail?<br>5 A. I do.<br>6 Q. Do you recall receiving the e-mail?<br>7 A. I do now. I mean, I wouldn't have remembered<br>8 an e-mail that long ago, but...<br>9 Q. Do you have any reason to believe that you<br>10 didn't receive it at or about the time it<br>11 indicates it was sent?<br>12 A. No.<br>13 Q. In the e-mail Ms. Johnson makes reference to<br>14 the fact that, "An imminent peril claim has<br>15 been made by NBC stemming from a production<br>16 that was shut down due to the rocket fire<br>17 into Tel Aviv and Jerusalem." Do you see<br>18 that?<br>19 A. I do.<br>20 Q. First of all, at that point in time did you<br>21 know what an imminent peril claim was?<br>22 A. I had heard of it, yes.<br>23 Q. What was your understanding of what an<br>24 imminent peril claim was?<br>25 A. Just that there was some immediate danger.<br><br>Page 105 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 104.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 1 Q. And what was your understanding as to what<br>2 the coverage would be?<br>3 A. I'd have to see the policy.<br>4 Q. There's a reference in the e-mail in the<br>5 second to the last line to the, "Israeli<br>6 Hamas conflict." Do you see that?<br>7 A. I do.<br>8 Q. At or about this time frame in July 2014,<br>9 what was your understanding of what Hamas was<br>10 or is?<br>11 A. It's an organization or a -- in the<br>12 Middle East in the Gaza Strip.<br>13 Q. And, again, just focusing back on July 16,<br>14 did you know anything further about Hamas<br>15 other than it was an organization in the<br>16 Middle East in Gaza Strip?<br>17 A. I mean, you know, just general things that<br>18 you hear in the news, et cetera.<br>19 Q. Right. That's what I'm trying to get at.<br>20 What was your general understanding based on<br>21 news sources of what Hamas is?<br>22 A. Well, just what I said, it's in the<br>23 Middle East, I mean...<br>24 Q. Okay. Did you -- did you know what kind of<br>25 activities Hamas engaged in? | Plaintiff's Objections:<br>No objection – Page 105.<br><br>Defendant's Response: |
| Page 106<br><br>1 MS. SCOTT REED: Object to form,<br>2 foundation.<br>3 THE WITNESS: They -- I mean,<br>4 yeah, generally, they engage in quite a few<br>5 different activities.<br>6 BY MS. COYOCA:<br>7 Q. What activities were you aware of as of July<br>8 2014 that Hamas engaged in?<br>9 A. Just, you know, the bombing and the conflict<br>10 back and forth within Israel.<br>11 Q. And what was your understanding as to what<br>12 the conflict was with Israel?<br>13 A. At that time?<br>14 Q. Uh-huh.<br>15 A. Well, I think there's a whole number -- a<br>16 whole number of issues as to what the<br>17 conflict is, I guess. But, you know, at that | Plaintiff's Objections:<br>IO – 106:1-2.<br><br>No objection – 106:3-25.<br><br>Defendant's Response:<br>Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 18 time I just -- I understood that, you know,<br>19 they were -- they were launching missiles<br>20 back and forth at each other.<br>21 Q. Okay. So it was your understanding that the<br>22 conflict involved Hamas and Israel launching<br>23 missiles back and forth at each other; is<br>24 that correct?<br>25 A. That's part of it. I mean, this is just an<br><br>Page 107<br><br>1 initial e-mail, so I wanted to have a<br>2 conversation with Pamela.<br>3 Q. I completely understand, but --<br>4 A. Yeah.<br>5 Q. -- I'm just asking for your -- your baseline<br>6 level of knowledge prior to getting into the<br>7 claim, I want -- I'd like to know what --<br>8 gain your understanding of Hamas is and what<br>9 the conflict was about, so that's the reason<br>10 for the questions.<br>11 The -- the -- I'd like to focus on<br>12 the missiles going back and forth. Was it<br>13 your understanding that Israel was launching<br>14 missiles at Hamas in Gaza?<br>15 A. That's my understanding, yes.<br>16 Q. What was your understanding as to the reasons<br>17 why there was the conflict?<br>18 A. You mean generally why there's a conflict<br>19 between the two or the express reasons at<br>20 this time?<br>21 Q. Generally.<br>22 A. Generally? I -- I mean, there's a whole host<br>23 of reasons. I mean, it goes back to, you<br>24 know, thousands of years ago. But first and<br>25 foremost, it's over the -- over the land,<br><br>Page 108<br><br>1 over...<br>2 Q. And what land would that be?<br>3 A. Well, it's Israel.<br>4 Q. And this is not meant to be a history test, I<br>5 really just would like to understand your<br>6 base level of knowledge prior to getting into | <br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 107.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – 108:1-19;<br>108:21-23.<br><br>IO – 108:20; 108:24-25.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 7 the investigation of the land. What -- what<br>8 was the -- of the claim.<br>9 When you say there was a conflict<br>10 over the land and a conflict over the land of<br>11 Israel, what was that conflict?<br>12 A. Well, again, you know, there's -- there's --<br>13 they're fighting back and forth, there's<br>14 Gaza, there's the west bank, I mean, there --<br>15 and that's my understanding of what was going<br>16 on.<br>17 Q. And you consider Gaza to be separate, you<br>18 knew that it was separate from the West<br>19 Bank --<br>20 MS. SCOTT REED: Objection --<br>21 BY MS. COYOCA:<br>22 Q. -- at the time in July 2014 when this claim<br>23 first surfaced; is that right?<br>24 MS. SCOTT REED: Objection to<br>25 form, foundation, misstates the witness's | Objection deleted. |
| Page 109<br><br>1 testimony.<br>2 THE WITNESS: Yes. I mean, the<br>3 West Bank is up in this part of Israel,<br>4 (indicating), and the Gaza Strip is down --<br>5 down in the lower part, (indicating), so...<br>6 MS. COYOCA: Okay. And let the<br>7 record reflect that the witness was using her<br>8 hands to distinguish that there were two<br>9 different areas where the two land groups<br>10 were located.<br>11 BY MS. COYOCA:<br>12 Q. Is that right?<br>13 A. That's correct.<br>14 Q. Okay. Now, as to the -- as to your<br>15 understanding of the reason why this<br>16 particular July 2014 conflict came into<br>17 existence, what was your understanding as to<br>18 that?<br>19 A. At this time?<br>20 Q. Uh-huh.<br>21 A. At this time I -- I had just -- Pamela had<br>22 just let me know, so I -- I needed to talk to<br>23 her. I didn't have any particular | Plaintiff's Objections:<br>IO – 109:1.<br><br>No objection – 109:2-25.<br><br>Defendant's Response:<br>Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 24 understanding at that time.<br>25 Q. Got it. You responded the next day on<br><br><br>Page 110<br><br>1 July 17; is that correct?<br>2 A. Yes.<br>3 Q. Between your written response, the e-mail<br>4 response on July 17, and the time Ms. Johnson<br>5 sent the e-mail on July 16, did you have any<br>6 communications with her about the Dig claim?<br>7 A. My guess is that we did.<br>8 Q. Your guess. Do you specifically recall<br>9 having communications with her about it?<br>10 A. I know that we talked about it.<br>11 Q. So it's your belief that prior to the time<br>12 that you sent the July 17 e-mail, you had a<br>13 conversation with Ms. Johnson about the Dig<br>14 claim; is that correct?<br>15 A. I -- I would -- yes, that would be my belief<br>16 based on -- based on the type of claim that<br>17 she's talking about, yes.<br>18 Q. Okay. And do you recall specifically having<br>19 the conversation?<br>20 A. I -- I can't recall specifically, no.<br>21 Q. But it's your best estimate that, because of<br>22 the nature of the claim, you think it's<br>23 likely that you did have such a conversation?<br>24 A. Yes.<br>25 Q. Do you recall meeting with her or did you<br><br>Page 111<br><br>1 have a conversation by telephone, if you<br>2 recall?<br>3 A. Again, I don't recall. Most likely, it was a<br>4 telephone call.<br>5 Q. And what did Ms. Johnson tell you about the<br>6 claim during that call?<br>7 A. Again, we would have discussed kind of<br>8 the -- the facts surrounding the initial --<br>9 when the initial notice came in. We would<br>10 have talked about what she understood today.<br>11 We would have talked about anything that -- | <br><br><br>Plaintiff's Objections:<br>No objection – Page 110.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 111.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 12 any additional information that she had<br>13 gathered since the initial notice, things<br>14 like that, that would have been typical.<br>15 Q. Okay. What do you recall specifically as to<br>16 the facts surrounding the claim when the<br>17 initial notice came in that she told you?<br>18 A. I mean, the initial notice, I think the --<br>19 was whether or not NBC was deciding whether<br>20 or not they were going to continue filming in<br>21 Israel.<br>22 Q. Anything else?<br>23 A. Well, they were -- the decision -- or they<br>24 were -- they were considering whether or not<br>25 to continue filming based on what was going | |
| Page 112 | Plaintiff's Objections:<br>No objection – Page 112. |
| 1 on between Hamas and Israel.<br>2 Q. Did she tell you specifically any facts about<br>3 what was going on in -- in Israel at the<br>4 time?<br>5 A. I'm sure that she did.<br>6 Q. Do you recall any of the specifics as to what<br>7 she told you?<br>8 A. I mean, I'm sure that she -- that she would<br>9 have mentioned just the rocket fire, she<br>10 would have mentioned just the -- you know,<br>11 the ground troops, the bombings, you know,<br>12 the -- what was going on that made, you know,<br>13 the area unsafe, what Israel was doing, what<br>14 Hamas was doing.<br>15 Q. So during this initial phone conference or<br>16 conversation, you believe that Ms. --<br>17 Ms. Johnson talked about ground troops?<br>18 A. I said that we probably would have talked<br>19 about what was going on. So, again, I don't<br>20 have the express recollection of exactly what<br>21 she told me two years ago, but...<br>22 Q. Okay. Did this conversation, to the best of<br>23 your recollection, did it take place on<br>24 the -- on the 16th when you first received<br>25 the e-mail at about 1:44 p.m.? | Defendant's Response: |
| Page 113 | Plaintiff's Objections:<br>No objection – Page 113. |

| Deposition Designation | Objection & Response |
|---|---|
| 1 A. My guess is it either would have taken place<br>2 that evening or early the next morning.<br>3 Q. And, again, focusing specifically on<br>4 ground -- the question of ground troops, do<br>5 you have a specific recollection that<br>6 Ms. Johnson spoke to you about ground troops<br>7 at the time that you had that first telephone<br>8 call?<br>9 A. Not on the first -- I mean, I'm just -- no,<br>10 specifically, I can't remember exactly what.<br>11 Q. What did she tell you -- I understand it may<br>12 not have been on the first conversation, but<br>13 what did she tell you about ground troops?<br>14 A. Again, I mean, when we would have had our<br>15 conversations over the course of the claim,<br>16 she would have told me everything that she<br>17 had gained, all the information she gathered<br>18 based on her investigation.<br>19 Q. Right. I'm focusing, though, specifically on<br>20 ground troops. What did Ms. Johnson tell<br>21 you, if anything, about ground troops?<br>22 A. I would -- that -- that Israel is putting<br>23 together ground troops and calling, you know,<br>24 together their military arm.<br>25 Q. And when's the first time that you can | Defendant's Response: |
| Page 114 | Plaintiff's Objections:<br>No objection – Page 114. |
| 1 recollect that Ms. Johnson spoke with you<br>2 about ground troops?<br>3 A. Again, it would have been sometime during the<br>4 course of our conversations.<br>5 Q. But you don't know whether or not it was at<br>6 this very initial stage when you first<br>7 received notice about the claim on July 16 or<br>8 at some later point --<br>9 A. I don't.<br>10 Q. -- is that right?<br>11 A. That's correct. | Defendant's Response: |
| Page 116 | Plaintiff's Objections:<br>No objection – Page 116. |
| 23 Q. And -- and do you recall, as you sit here<br>24 today, any of the specific things that she<br>25 told you that were going on? | Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| Page 117<br><br>1 A. Again, like I said, she would have mentioned<br>2 all the different things that were going on<br>3 in terms of military weapons, you know,<br>4 tanks, ground troops, airplanes, missiles,<br>5 things of that nature.<br>6 Q. Anything else aside from military weapons,<br>7 tanks, ground troops, airplanes, missiles,<br>8 things of that nature, anything else?<br>9 A. We would have talked about the policy, of<br>10 course. We would have talked about anything<br>11 that she had further gleaned -- further<br>12 understood from NBC. We would have again<br>13 talked about what -- again, the conclusion,<br>14 what -- what she had found, what research she<br>15 had done, what she had looked at. | Plaintiff's Objections:<br>No objection – Page 117.<br><br>Defendant's Response: |
| Page 118<br><br>5 right now.<br>6 Q. Okay. Now, you indicated that you believe<br>7 that she told you about all the resources<br>8 that she had looked at; is that correct?<br>9 A. That's correct.<br>10 Q. What resources did she tell you she had<br>11 looked at?<br>12 A. My understanding is that she looked at news<br>13 clippings, news articles, resources available<br>14 online and -- and -- yeah, those were things<br>15 that she looked at.<br>16 Q. News clippings, articles and online articles;<br>17 is that right?<br>18 A. Online broadcasts as well, broadcasts, and<br>19 then I think she tried also to get<br>20 multitude -- kind of multiple different<br>21 sources as well.<br>22 Q. What are the other multiple different<br>23 resources?<br>24 A. Well, I think we wanted to look at what, you<br>25 know, CBS, NBC, CNN, to the extent, you know, | Plaintiff's Objections:<br>No objection – Page 118.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| **Page 119**<br><br>1 the BBC, things like that.<br>2 Q. So just so I understand, Ms. Johnson told you<br>3 that she was looking at, she, Ms. Johnson,<br>4 was looking at these various news sources,<br>5 CBS, NBC, CNN, to see what they were saying<br>6 about the conflict?<br>7 A. She said she was doing -- yeah, doing<br>8 significant research, yes.<br>9 Q. Did she tell you that she was doing the<br>10 research or that Danny Gutterman was doing<br>11 the research?<br>12 A. I don't think she distinguished for me, no.<br>13 Q. Did Ms. Johnson provide you with copies of<br>14 any of the news clippings or articles that<br>15 she had indicated she was looking at<br>16 reviewing?<br>17 A. I don't recall. | Plaintiff's Objections:<br>No objection – Page 119.<br><br>Defendant's Response: |
| **Page 126**<br><br>9 Q. Do you generally recall that you discussed<br>10 the war exclusions with Ms. Johnson in the<br>11 context of the Dig claim?<br>12 A. Yes.<br>13 Q. Generally, what do you recall?<br>14 A. I think we would have discussed what she --<br>15 you know, what research she had done, what --<br>16 you know, what she -- what she had received<br>17 from NBC, we would have looked at the policy,<br>18 and given those facts we would have, you<br>19 know, discussed whether or not we thought<br>20 there was coverage based on the -- the war,<br>21 warlike exclusions in the policy.<br>22 Q. Do you believe any of those discussions in<br>23 the context of what research had been done,<br>24 what she had received from NBC, her look at<br>25 the policy, had any of that occurred at the | Plaintiff's Objections:<br>No objection – Page 126.<br><br>Defendant's Response: |
| **Page 127** | Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 1 time you initially spoke to her on the 16th<br>2 or 17th?<br>3 A. We probably would have had initial<br>4 conversations. I don't know how far along<br>5 she would have -- I mean, she -- how much<br>6 information she would have put together by<br>7 that point.<br>8 Q. What, if anything, do you recall in terms of<br>9 the specifics as to what Ms. Johnson had for<br>10 you with respect to the claim the first time<br>11 you talked?<br>12 A. Again, I -- I can't recall the express<br>13 conversation. All I can remember is over the<br>14 course of the -- you know, over the course of<br>15 the life of the claim what we would have --<br>16 what we talked about.<br>17 Q. Were you at all surprised by Ms. Johnson's<br>18 invocation of the potential applicability of<br>19 the war exclusion coming so shortly after the<br>20 claim having been tendered?<br>21 A. I don't know that I would say I was<br>22 necessarily surprised. I think that -- I<br>23 think that you always look at the coverages,<br>24 and given the nature of -- you know, given<br>25 the nature of what was going on at that time, | No objection – Page 127.<br><br>Defendant's Response: |
| Page 128<br><br>1 that necessarily would have been an issue<br>2 that we would have considered.<br>3 Q. After you received -- or did you eventually<br>4 look at the policy in the context of this<br>5 claim?<br>6 A. Yes.<br>7 Q. Okay. And the policy has previously been<br>8 marked as Exhibit 1 at the Peter Williams<br>9 deposition. Can you take a look at the<br>10 policy?<br>11 A. You want me to look at the entire policy?<br>12 Q. No, I just want to -- want you to assure<br>13 yourself that this is indeed the policy that<br>14 you reviewed in the context of the Dig claim.<br>15 A. (Reviews document.) Yes, this would have<br>16 been the policy. | Plaintiff's Objections:<br>No objection – Page 128.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 17 Q. Okay. It's for the policy period from 18 January 1, 2014, through June 30, 2015? 19 A. Correct. 20 Q. Okay. I want to direct your attention to 21 page ATL003083. When you -- when you 22 indicate that you discussed the war exclusion 23 or the war exclusions with Ms. Johnson, are 24 you referring to the exclusions that are set 25 forth in section 3, exclusions applicable to | |
| Page 129 | Plaintiff's Objections: No objection – Page 129. |
| 1 all sections of this policy? 2 A. That -- that would be my recollection, but I 3 would like to just look through the policy 4 quickly. (Reviews document.) 5 Yes, that's -- I think that's 6 correct. 7 Q. All right. I want to -- I want to talk about 8 section 3-1 on page 3083, "War, Including 9 Undeclared or Civil War." Do you see that 10 exclusion? 11 A. Yes. Yes, I do. 12 Q. Did you have conversations with Ms. Johnson 13 about the potential applicability of 14 exclusion 3 -- section 3.1? 15 A. Yes. 16 Q. What were your discussions? 17 A. Again, to the best of my recollection, our 18 discussions would have been based on what 19 information she had, what was going on 20 between Hamas and Israel and all the -- you 21 know, all the facts surrounding the -- what 22 was -- in July and early June -- or mid June, 23 and whether or not we believed that amounted 24 to war, including undeclared or civil war. 25 So we would have talked about exclusion 1 and | Defendant's Response: |
| Page 130 | Plaintiff's Objections: No objection – Page 130. |
| 1 along with the exclusion 2, 3 and 4 as well. 2 Not 4, not the atomic fission, so... 3 Q. So as to exclusion 4, you did not discuss it 4 and you did not -- is that correct? 5 A. I think we -- I mean, we would have looked at | Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 6 it, "Any weapon of war including atomic<br>7 fission" -- or excuse me, we did. I was<br>8 looking at the, "Atomic fission or<br>9 radioactive force," so I apologize, I<br>10 misspoke.<br>11 Q. I want to -- I want to go through this a<br>12 little more slowly.<br>13 With respect to exclusion 1, "War,<br>14 Including Undeclared or Civil War," you<br>15 reviewed that exclusion with Ms. Johnson; is<br>16 that correct?<br>17 A. That's correct.<br>18 Q. And did you -- you conclude personally that<br>19 exclusion 1 applied to the Dig claim?<br>20 A. Yes, I believe it does.<br>21 Q. And did you make the decision that the claim<br>22 should be denied on the basis of exclusion 1?<br>23 A. We made the decision that the claim should be<br>24 denied based on the exclusions, that was one<br>25 of them.<br><br>Page 131<br><br>1 Q. Okay. When you say, "We," who is we?<br>2 A. Pamela and I.<br>3 Q. Anyone else?<br>4 A. Ultimately, Sean signed off on it as well.<br>5 Q. And by Sean do you mean Sean Duffy?<br>6 A. Yes. Excuse me. Yes.<br>7 Q. And did you involve Mr. Duffy in the review<br>8 of the claim?<br>9 A. No.<br>10 Q. Were you the one who brought it to his<br>11 attention?<br>12 A. Yes.<br>13 Q. When you say that he was also involved in the<br>14 decision, what was his involvement?<br>15 A. I -- I simply flagged it for him and he had<br>16 an opportunity to agree or disagree.<br>17 Q. Now, in terms of deciding whether or not<br>18 exclusion 1 -- I'm just going to call them 1,<br>19 2, 3, 4 as they're set forth on page 3083.<br>20 In terms of exclusion 1 and making the<br>21 decision that it applied, did you look at<br>22 whether or not Hamas was a sovereign entity? | Plaintiff's Objections:<br>No objection – Page 131.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 23 A. Pamela looked at -- at Hamas and what -- how<br>24 Hamas was considered, in what -- in terms of,<br>25 you know, it being part of the government,<br><br>Page 132<br><br>1 governing the Gaza Strip, the activities it<br>2 was involved in, including, you know,<br>3 providing social services, having its own<br>4 military, political office, things of that<br>5 nature.<br>6 Q. But my question to you is, specifically, did<br>7 you come to a conclusion that Hamas was a<br>8 sovereign entity?<br>9 A. Hamas governs Gaza.<br>10 Q. Okay. But I'm asking you for the -- the<br>11 label, if you -- if you put one on it, did<br>12 you conclude that Hamas was a sovereign<br>13 entity?<br>14 A. We didn't put a sovereign label on it.<br>15 Q. Did you conclude that it was a<br>16 quasi-sovereign entity?<br>17 A. We concluded that it was an entity that<br>18 governed Gaza.<br>19 Q. Was it your understanding that Hamas needed<br>20 to govern Gaza in order for the war exclusion<br>21 to apply?<br>22 A. No.<br>23 MS. SCOTT REED: Objection to<br>24 form, misstates the witness's testimony.<br>25 BY MS. COYOCA:<br><br>Page 133<br><br>1 Q. Why was that not necessary, in your view?<br>2 A. Well, because I think when you think about<br>3 war, war is between -- I mean, the war is<br>4 between entities, it doesn't have to be<br>5 between Greece and France, it can be -- like<br>6 in this case, we had Gaza -- we had the<br>7 Gaza Strip and we had the action going on<br>8 between Hamas and Israel.<br>9 Q. But in your view, is it sufficient to invoke<br>10 the war exclusion if there is a course of<br>11 hostilities between a sovereign government | <br><br><br><br>Plaintiff's Objections:<br>No objection – 132:1-22.<br><br>IO – 132:23-25.<br><br>Defendant's Response:<br>Objection deleted.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – 133:1-19;<br>133:23-25.<br><br>IO – 133:20-22.<br><br>Defendant's Response:<br>Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 12 and some other entity that has some<br>13 authority?<br>14 A. It depends on the facts.<br>15 Q. Okay. What is it about Hamas that, in your<br>16 view, made it sufficient to conclude that it<br>17 had sufficient control or governmental<br>18 authority that it was appropriate to invoke<br>19 the war exclusion?<br>20 MS. SCOTT REED: Objection to<br>21 form, lack of foundation and misstates the<br>22 witness's prior testimony.<br>23 THE WITNESS: Again, I mentioned<br>24 Hamas having its own, you know, holding<br>25 political office, having different branches | |
| Page 134<br><br>1 that are consistent with the government, but<br>2 then you couple that with what was going on,<br>3 that invokes the war exclusion, the missiles<br>4 being exchanged between Israel and Hamas, the<br>5 ground fighting, you know, the war planes,<br>6 all those things, that is war.<br>7 BY MS. COYOCA:<br>8 Q. Do you believe that in order for a course of<br>9 hostilities to be characterized as war, that<br>10 it is necessary for both entities to be a<br>11 sovereign government?<br>12 MS. SCOTT REED: Objection to<br>13 form, legal conclusion.<br>14 THE WITNESS: I don't believe it<br>15 is necessary.<br>16 BY MS. COYOCA:<br>17 Q. Do you believe that it is necessary in order<br>18 for the war exclusion, prong 1, to be<br>19 invoked, that it is necessary for the<br>20 activities, the hostile activities between<br>21 the two forces, that they occur between a<br>22 sovereign and a quasi-sovereign government?<br>23 MS. SCOTT REED: Objection to the<br>24 extent it calls for a legal conclusion.<br>25 THE WITNESS: Again, it could be a | Plaintiff's Objections:<br>No objection – 134:1-11;<br>134:14-22; 134:25.<br><br>IO – 134:12-13; 134:23-24.<br><br>Defendant's Response:<br>Objections deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 135 | Plaintiff's Objections: No objection – 135:1-14; 135:17; 135:20-25. |
| 1 quasi -- a sovereign or a quasi-sovereign. | |
| 2 But it's -- again, we're talking about war, | IO – 135:15-16; 135:18-19. |
| 3 what the actions are between the two parties. | |
| 4 MS. COYOCA: Right. I'm asking | Defendant's Response: |
| 5 you, though, a different question. | Objections deleted. |
| 6 BY MS. COYOCA: | |
| 7 Q. What I'm asking you is, in your view, in | |
| 8 order to find that this exclusion, the term | |
| 9 war has been met, is it necessary that those | |
| 10 hostilities that you referenced, do they have | |
| 11 to occur between a sovereign government and | |
| 12 another sovereign government or a sovereign | |
| 13 government and a quasi-sovereign government? | |
| 14 A. No. | |
| 15 MS. SCOTT REED: Objection to | |
| 16 form -- | |
| 17 THE WITNESS: No. | |
| 18 MS. SCOTT REED: -- legal | |
| 19 conclusion. | |
| 20 BY MS. COYOCA: | |
| 21 Q. Now, you indicated that part of your | |
| 22 conclusion that it was appropriate to invoke | |
| 23 the war exclusions was the type and nature of | |
| 24 the hostilities that were occurring, the | |
| 25 missiles, the war planes, the ground troops; | |
| Page 136 | Plaintiff's Objections: No objection – 136:1-2; 136:5-6; 136:9-25. |
| 1 is that correct? | |
| 2 A. That's correct -- | IO – 136:3-4; 136:7-8. |
| 3 MS. SCOTT REED: Objection; | |
| 4 misstates -- | Defendant's Response: |
| 5 THE WITNESS: -- that is a | Objections deleted. |
| 6 consideration. | |
| 7 MS. SCOTT REED: Misstates the | |
| 8 full character of her prior testimony. | |
| 9 BY MS. COYOCA: | |
| 10 Q. Where did you learn the information or how | |
| 11 did you learn the information that war planes | |

| Deposition Designation | Objection & Response |
|---|---|
| 12 were involved?<br>13 A. From Pamela.<br>14 Q. How did you learn that missiles were<br>15 involved?<br>16 A. That would probably be from Pamela and also<br>17 just from the news.<br>18 Q. Any other source aside from Pamela?<br>19 A. Pamela or the news.<br>20 Q. In -- in approving the decision to deny the<br>21 war exclusion or not raising an objection to<br>22 it being invoked, were you relying on your<br>23 personal viewing of news reports?<br>24 A. I relied on Pamela's research and also my<br>25 understanding and my own personal viewing of | |
| Page 137<br><br>1 different news.<br>2 Q. And what news reports did you review?<br>3 A. I mean, every -- A, I watch the general local<br>4 news. I specifically remember watching the<br>5 NBC clip on what was going on in -- in Israel<br>6 and how it referred to it as war. And then,<br>7 you know, discussions with Pamela, of course. | Plaintiff's Objections:<br>No objection – Page 137.<br><br>Defendant's Response: |
| Page 147<br><br>8 Q. Going to the second prong of the war<br>9 exclusions, number 2, the one that begins,<br>10 "Warlike action by a military force," do<br>11 you -- do you see that exclusion?<br>12 A. Yes.<br>13 Q. Did you have specific discussions with<br>14 Ms. Johnson about prong 2?<br>15 A. I -- I'm sure that we did, yes.<br>16 Q. What did you discuss?<br>17 A. We would have discussed what the -- you know,<br>18 what the investigation, what we had found out<br>19 through our factual investigation and<br>20 whether, you know, the fact that what was<br>21 going on between Hamas and Israel and --<br>22 including the -- again, the -- you know, the<br>23 hostility, the ground crews, the missiles,<br>24 airplanes, things of that nature, whethe | Plaintiff's Objections:<br>No objection – Page 147.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| Page 148 | Plaintiff's Objections: |
| | No objection – 148:1-18; |
| 1 military force. | 148:21-25. |
| 2 Q. In -- in reviewing, in your mind, the factual | |
| 3 investigation that occurred, do you | IO – 148:19-20. |
| 4 differentiate between the events that were -- | |
| 5 that were part of the investigation for the | Defendant's Response: |
| 6 first prong of the exclusion versus events | Objection deleted. |
| 7 that occurred to investigate the second prong | |
| 8 of the war claim -- excuse me, the war | |
| 9 exclusion? | |
| 10 A. I think we looking at all the -- excuse me -- | |
| 11 all the events and took all of the | |
| 12 information in totality and then look at the | |
| 13 application of the exclusions. | |
| 14 Q. Okay. When you indicated previously that | |
| 15 Ms. Johnson looked at news reports, was she | |
| 16 looking at those news reports in order to | |
| 17 inform her decision about the potential | |
| 18 applicability of prong 2, as well as prong 1? | |
| 19 MS. SCOTT REED: Objection to | |
| 20 form, calls for speculation. | |
| 21 THE WITNESS: When Pamela was | |
| 22 looking at the news reports throughout the | |
| 23 time period in doing her research, she wanted | |
| 24 to get a better understanding of what the | |
| 25 claim was. And based on that information, | |
| Page 149 | Plaintiff's Objections: |
| | No objection – Page 149. |
| 1 then we looked at the policy and the | |
| 2 exclusions, which would include these | Defendant's Response: |
| 3 exclusions. | |
| 12 Q. Did you discuss with Ms. Johnson -- I | |
| 13 understand you can't recall specifics of time | |
| 14 frame of discussions, but did you discuss | |
| 15 with Ms. Johnson at any time that OneBeacon | |
| 16 was considering the Dig claim, whether there | |
| 17 was a difference between prongs 1 and | |
| 18 prongs 2 of the war exclusions? | |

| Deposition Designation | Objection & Response |
|---|---|
| 19 A. I'm sure that we did discuss it, because they<br>20 are different.<br><br><br>Page 150<br><br>14 Q. If you can't recall the specifics then, if<br>15 you think you discussed it, then, yes, please<br>16 tell me what you think you discussed as to<br>17 those differences.<br>18 A. When you look at the second prong, it's,<br>19 "Warlike action by military force, including<br>20 action in hindering or defending against<br>21 actual or suspected attacks by a government,<br>22 sovereign or other authority using military<br>23 personnel or other agents."<br>24 Warlike action by a military force.<br>25 What was going on in Israel between Hamas and | <br><br><br><br>Plaintiff's Objections:<br>No objection – Page 150.<br><br>Defendant's Response: |
| Page 151<br><br>1 Israel was warlike action. Hamas is a<br>2 military force, Israel has a military force.<br>3 At a minimum, it's an other -- Hamas is an,<br>4 "Other authority using military personnel or<br>5 agents."<br>6 Q. Did you discuss -- when you say you think you<br>7 discussed it, do you think that you discussed<br>8 the fact that exclusion 2 was broader than<br>9 exclusion 1, narrower, the exact same in<br>10 scope?<br>11 A. It's -- it's a different -- it's not the --<br>12 it's not the exact same exclusion, it's<br>13 warlike action by a military force. That<br>14 would suggest to me that it has even broader<br>15 implication. | Plaintiff's Objections:<br>No objection – Page 151.<br><br>Defendant's Response: |
| Page 152<br><br>14 Q. Did OneBeacon end up concluding that prong 4<br>15 applied?<br>16 A. I think, yeah, prong -- excuse me, prong 4<br>17 would apply, any weapon of war, whether in<br>18 time of peace or war. I mean, I think we --<br>19 I think missiles, ground troops, war planes, | Plaintiff's Objections:<br>402, 403, MIL – Page 152.<br><br>Defendant's Response:<br>"MIL" not clear objection;<br>ASIC's understanding and<br>development of facts is relevant<br>to reasonableness of claim |

| Deposition Designation | Objection & Response |
|---|---|
| 20 those are weapons of war. | decision, defense of "bad faith" allegation and damages sought. |
| Page 154 | Plaintiff's Objections: 602, 701, MIL – 154:3-6; 154:10-25. |
| 3  Q.  Before you approved the denial of the claim,<br>4       what did you do to assure yourself that all<br>5       facts -- all factual investigation that<br>6       needed to be done had been done?<br>7              MS. SCOTT REED:  Objection form,<br>8       lack of foundation, assumes facts not in<br>9       evidence.<br>10             THE WITNESS:  When Pamela and I<br>11      decided to go forward with the denial, I --<br>12      we -- you know, I looked at everything that<br>13      had been done, I talked to -- or I talked to<br>14      Pamela, we talked about what had been done,<br>15      we talked about what the conclusions were,<br>16      and I think, yes, a thorough investigation<br>17      was completed by Pamela.<br>18   BY MS. COYOCA:<br><br>19 Q. Did you ask to see any of the research or<br>20 analysis that she had been -- that she had<br>21 done in coming to her conclusions?<br>22 A. I know that I -- I -- I saw the NBC clip, so<br>23 I imagine that she provided that to me. I<br>24 know that I saw some of the other<br>25 information, but today I can't tell you what | IO – 154:7-9.<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. Witness testifying as to personal knowledge; is not opinion testimony.<br><br>Objection deleted. |
| Page 155 | Plaintiff's Objections: 602, 701, MIL – Page 155. |
| 1 I saw expressly.<br>2 Q. When you indicate you saw other information,<br>3 did you see other news reports?<br>4 A. It would have been news reports or articles<br>5 or things of that nature. | Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. Witness testifying as to personal knowledge; is not |

| Deposition Designation | Objection & Response |
|---|---|
| | opinion testimony. |
| Page 158 | Plaintiff's Objections: No objection – 158:21-23. |
| 21 Q. How early in the process, if at all, did you 22 involve Mr. Duffy in the -- in the claim 23 review? 24 MS. SCOTT REED: Objection; form, 25 lack of foundation, assumes facts not in | IO – 158:24-25.  Defendant's Response: Objection deleted. |
| Page 159 | Plaintiff's Objections: IO – 159:1. |
| 1 evidence. 2 THE WITNESS: Sean didn't do the 3 claim review. I just flagged him about the 4 claim so he knew about it and its existence, 5 and then I flagged him when we were at a 6 position where we were going to decline 7 coverage. 8 BY MS. COYOCA: 9 Q. When you say you flagged him, what do you 10 mean by that? 11 A. I just let him know. 12 Q. Why were you letting him know? 13 A. Because NBC is a big client, because there is 14 a possibility that NBC would call Sean or an 15 agent of NBC, and because, generally, as a 16 practice, if there's a bigger claim I like to 17 let Sean know. | No objection – 159:2-17.  Defendant's Response: Objection deleted. |
| Page 162 | Plaintiff's Objections: 802 – 162:3-5; 162:9-21. |
| 3 Q. When did Ms. Johnson tell you that she had 4 made a decision to deny the Dig claim based 5 on the war exclusion? 6 MS. SCOTT REED: Objection to 7 form, lack of foundation, assumes facts not 8 in evidence. 9 THE WITNESS: Pamela didn't tell 10 me she decided to deny the claim, we talked 11 about what her investigation was, what her | IO – 162:6-8.  Defendant's Response: 801; 807.  Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 12 conclusions were, and then we made a decision<br>13 whether or not to deny the claim.<br>14 BY MS. COYOCA:<br>15 Q. So the decision was made jointly?<br>16 A. She recommended it and I approved it.<br>17 Q. When did Ms. Johnson first recommend to you<br>18 that the claim should be denied?<br>19 A. It would have been sometime in late July,<br>20 around the 22nd, I think, sometime in that<br>21 range. | |
| Page 166<br><br>1 Q. Now, you indicated that you reviewed the<br>2 coverage opinion letter before it went out;<br>3 is that right?<br>4 A. I reviewed the letter drafted by Pamela?<br>5 Q. Yes.<br>6 A. Yes, I reviewed that before it went out.<br>7 Q. Did you have any changes that you wanted made<br>8 to the letter?<br>9 A. I think I had one minor change that was<br>10 non-substantive. | Plaintiff's Objections:<br>No objection – Page 166.<br><br>Defendant's Response: |
| Page 168<br><br>16 Q. Okay. Now, as of July 28, was the insured,<br>17 NBC Universal, had they already been told<br>18 that the claim was going to be denied on the<br>19 basis of the war exclusion?<br>20 A. Yes, that's my understanding.<br>21 Q. And how did you -- how did you learn that the<br>22 exclusion that Ms. Johnson was going to tell<br>23 NBC Universal that the exclusion had been<br>24 denied on the basis of the -- let's start all<br>25 over again. | Plaintiff's Objections:<br>No objection – Page 168.<br><br>Defendant's Response: |
| Page 169<br><br>1 How did you learn that Ms. Johnson<br>2 had told NBC Universal that the Dig claim was<br>3 going to be denied on the basis of the war<br>4 exclusion?<br>5 A. I -- Pamela would have told me that she was | Plaintiff's Objections:<br>No objection – Page 169.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 6 going to reach out to NBC and Aon and let<br>7 them know that our position was that the<br>8 exclusion precluded coverage.<br><br>Page 177<br><br>6 Q. Did you flag the claim for Mr. Duffy because<br>7 you considered the coverage call to be a<br>8 close one?<br>9 MS. SCOTT REED: Objection to<br>10 form.<br>11 THE WITNESS: No, that's not why I<br>12 flagged it for Sean.<br>13 BY MS. COYOCA:<br>14 Q. Did you believe that the coverage call to be<br>15 made on this claim, did you think it was a<br>16 close one?<br>17 A. No, I didn't.<br>18 Q. You thought it was a hundred percent clear<br>19 that the war exclusion applied?<br>20 A. I don't think anything is a hundred percent,<br>21 but given the facts, yes, I think the war<br>22 exclusions apply and preclude coverage.<br>23 Q. How confident were you in the correctness of<br>24 the decision based on a percentage, was it<br>25 95 percent, 85 percent? | Plaintiff's Objections:<br>No objection – 177:6-8;<br>177:11-25.<br><br>IO – 177:9-10.<br><br>Defendant's Response:<br>Objection deleted. |
| Page 178<br><br>1 MS. SCOTT REED: Objection to<br>2 form, vague, ambiguous, calls for<br>3 speculation.<br>4 THE WITNESS: On -- from<br>5 OneBeacon's perspective and my perspective as<br>6 well, we don't deny a claim unless we believe<br>7 it's not covered. So when I say a hundred<br>8 percent, there's always a chance someone can<br>9 disagree, but it's 99 percent that we don't<br>10 deny a claim unless we believe it's not<br>11 covered. We don't enter that decision<br>12 lightly. | Plaintiff's Objections:<br>IO – 178:1-3; 178:20-21.<br><br>No objection – 178:4-19;<br>178:22-25.<br><br>Defendant's Response:<br>Objections deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 13 BY MS. COYOCA:<br>14 Q. Were you concerned at all in terms of the<br>15 short time frame that -- in which the<br>16 analysis, the investigation, the review of<br>17 information and the legal analysis that was<br>18 performed, the short time frame in which it<br>19 was done?<br>20 MS. SCOTT REED: Objection to<br>21 form, vague, ambiguous.<br>22 THE WITNESS: My -- we can -- we<br>23 moved as quickly as we could on this<br>24 particular claim. I know that NBC wanted an<br>25 answer right away. Aon had pushed OneBeacon | |
| Page 179<br><br>1 very hard to get an answer as soon as<br>2 possible and so that's why there's this --<br>3 why everything was turned around. We did it<br>4 to accommodate the insured, but we did do a<br>5 thorough investigation. | Plaintiff's Objections:<br>No objection – Page 179.<br><br>Defendant's Response: |
| Page 220<br><br>18 The fourth paragraph is applicable,<br>19 but based on the analysis of the application<br>20 of war, including undeclared or civil war and<br>21 warlike actions by a military force, that<br>22 would include the use of any weapon of war. | Plaintiff's Objections:<br>MIL – Page 220.<br><br>Defendant's Response:<br>"MIL" not clear objection;<br>ASIC's understanding and<br>development of facts is relevant<br>to reasonableness of claim<br>decision, defense of "bad faith"<br>allegation and damages sought. |
| Page 221<br><br>14 BY MS. COYOCA:<br>15 Q. I want to show you a document that's already<br>16 previously been marked as Exhibit 19 to the<br>17 Gutterman deposition. Please let me know<br>18 when you're ready for questions.<br>19 A. Okay. Thank you. I'll read through it. | Plaintiff's Objections:<br>No objection – Page 221.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 20 Q. Thanks.<br>21 A. (Reviews document.)<br>22 Q. Are you ready for questions?<br>23 A. Yes.<br>24 Q. Have you seen this letter before?<br>25 A. Yes. | |
| Page 222<br><br>1 Q. When did you see it?<br>2 A. I would have seen it after Pamela received<br>3 it.<br>4 Q. Did you ever discuss it with Pamela?<br>5 A. I'm sure that we did discuss it, yes.<br>6 Q. Do you recall any of your discussions about<br>7 the letter?<br>8 A. I don't specifically recall the discussions.<br>9 Q. Do you have any general recollections of your<br>10 discussions?<br>11 A. My general recollection would be we would<br>12 have -- we would have gone through the<br>13 arguments and that Pamela would have pulled<br>14 the cases and read the case law and looked at<br>15 the arguments raised in the letter.<br>16 Q. With respect to the second paragraph of the<br>17 letter, talking about OneBeacon's willingness<br>18 to cover expenses associated with the initial<br>19 one-week postponement; do you see that?<br>20 A. I do.<br>21 Q. Were you aware that OneBeacon had agreed to<br>22 cover the first one week push cost -- or<br>23 postponement costs?<br>24 MS. SCOTT REED: Objection to<br>25 form, assumes facts not in evidence, | Plaintiff's Objections:<br>No objection – 222:1-23.<br><br>IO – 222:24-25.<br><br>Defendant's Response:<br>Objection deleted. |
| Page 223<br><br>1 misstates the record.<br>2 THE WITNESS: I -- I knew that<br>3 OneBeacon had agreed to offer 3 to 350 for<br>4 the first -- first week.<br>5 BY MS. COYOCA:<br>6 Q. How did you become aware of that? | Plaintiff's Objections:<br>IO – 223:1; 223:19-21.<br><br>No objection – 223:2-18;<br>223:22-25.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 7 A. Pamela would have told me.<br>8 Q. What did she tell you about that?<br>9 A. I just recall when it initially came in, it<br>10 came in as a postponement claim and that --<br>11 that initially, you know, to the extent that<br>12 NBC only postponed it for a week estimate and<br>13 then began -- or resumed filming, estimated<br>14 losses associated with that were between 3<br>15 and 350.<br>16 Q. And what did she tell you with regard to<br>17 OneBeacon's willingness to cover 300 to<br>18 350,000 of those costs?<br>19 MS. SCOTT REED: Objection to<br>20 form, assumes facts not in evidence,<br>21 misstates the record.<br>22 THE WITNESS: Again, I -- I think<br>23 that it was initially based on the<br>24 understanding that it was a postponement<br>25 claim, that it would only be a one-week | Objections deleted. |
| Page 224<br><br>1 postponement of shooting, and then thereafter<br>2 when it became clear, I think OneBeacon<br>3 simply wanted to make a concession to NBC and<br>4 continue to offer the 3 to 350 for the claim.<br>5 BY MS. COYOCA:<br>6 Q. Specifically, did Ms. Johnson tell you how<br>7 OneBeacon's willingness to pay 3 to 350 for<br>8 the initial one-week postponement, how that<br>9 was ever conveyed to the client?<br>10 MS. SCOTT REED: Objection to<br>11 form, assumes facts not in evidence,<br>12 misstates the record.<br>13 THE WITNESS: I -- I don't<br>14 remember or recall how that was conveyed to<br>15 NBC. | Plaintiff's Objections:<br>No objection – 224:1-9;<br>224:13-15.<br><br>IO – 224:10-12.<br><br>Defendant's Response:<br>Objections deleted. |
| Page 225<br><br>2 Q. Was it your understanding that Ms. Johnson<br>3 had indicated to NBC Universal and Aon that<br>4 OneBeacon would cover 300 to 350,000 of the<br>5 initial one-week postponement costs?<br>6 MS. SCOTT REED: Objection to<br>7 form, assumes facts not in evidence, | Plaintiff's Objections:<br>No objection – 225:2-5; 225:9-15; 225:19-25.<br><br>IO – 225:6-8; 225:16-18.<br><br>Defendant's Response:<br>Objections deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 8 misstates the record.<br>9 THE WITNESS: I understand that<br>10 Pamela offered to -- to cover 300 to 350 for<br>11 the initial week postponement.<br>12 BY MS. COYOCA:<br>13 Q. When was that offer conveyed?<br>14 A. I don't remember.<br>15 Q. Why was --<br>16 MS. SCOTT REED: Are you -- are<br>17 you referring to something to answer the<br>18 question?<br>19 THE WITNESS: Yes. Sorry. I -- I<br>20 said I don't remember. I just -- I don't --<br>21 I'm just referring to the letter that -- that<br>22 Pamela sent out dated July 28th and the<br>23 conclusion. She states, "Although we cannot<br>24 cover the extra expense associated with the<br>25 production move to another country to<br><br><br>Page 226<br><br>1 complete the production, based on our long<br>2 relationship with NBC, we're willing to cover<br>3 the expenses associated with the initial<br>4 postponement as a courtesy," and then she<br>5 references a budget and the costs associated<br>6 with the initial postponement.<br>7 BY MS. COYOCA:<br>8 Q. Is it your understanding that this was the<br>9 first time that there was ever any indication<br>10 by OneBeacon that it would cover the initial<br>11 one-week postponement costs?<br>12 A. I think that it -- there was an indication<br>13 before that, but I don't have a -- a specific<br>14 recollection as to when.<br>15 Q. And do you know who provided that indication<br>16 to Aon or NBC Universal?<br>17 A. I don't.<br>18 Q. On what basis did OneBeacon decide that it<br>19 was willing to pay the one-week initial<br>20 postponement costs?<br>21 MS. SCOTT REED: Objection to<br>22 form, misstates the record, assumes facts not<br>23 in evidence, vague and ambiguous, the | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – 226:1-20;<br>226:25.<br><br>IO – 226:21-24.<br><br>Defendant's Response:<br>Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 24 reference to pay.<br>25 THE WITNESS: Again, I'm just<br><br>Page 227<br><br>1 going to -- I -- I don't know the earlier<br>2 conversations, but as detailed in the<br>3 July 28th letter, Pamela indicates that based<br>4 on our long relationship, we're willing to<br>5 cover the expenses associated -- associated,<br>6 excuse me, with the initial postponement as a<br>7 courtesy. So at least as of July 28th, that<br>8 was the basis, as a courtesy given the<br>9 existing relationship with NBC.<br>10 BY MS. COYOCA:<br>11 Q. Are you aware of any other grounds as to why<br>12 OneBeacon was willing to pay the initial --<br>13 or to cover, to cover the expenses associated<br>14 with the initial postponement?<br>15 MS. SCOTT REED: Objection to<br>16 form, assumes facts not in evidence,<br>17 misstates the record.<br>18 THE WITNESS: Again, I think<br>19 when -- when the claim initially claim to<br>20 Peter it -- he thought it would be simply a<br>21 postponement for a week and then reconvene or<br>22 resume the filming. And based on that, it's<br>23 my understanding we thought potentially 3 to<br>24 350 would be the expenses incurred by NBC to<br>25 postpone the production.<br><br>Page 228<br><br>1 BY MS. COYOCA:<br>2 Q. Was it OneBeacon's position that the initial<br>3 postponement costs of 300 to 350, whatever<br>4 the original estimate was, that those were a<br>5 covered expense under extra -- under the<br>6 extra expense coverage of the policy?<br>7 A. I think initially when the claim first came<br>8 in, it appeared that it might be based on the<br>9 postponement. But then, clearly, by<br>10 July 28th when the letter was issued,<br>11 OneBeacon took the position that those<br>12 weren't covered, but again, as a courtesy | Plaintiff's Objections:<br>No objection – 227:1-14;<br>227:18-25.<br><br>IO – 227:15-17.<br><br>Defendant's Response:<br>Objection deleted.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 228.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 13 would -- would provide NBC with reimbursement<br>14 for those expenses it incurred during that<br>15 first week.<br>16 Q. What do you base your understanding that<br>17 initially when the claim first came in it<br>18 appeared that it might be based on the<br>19 postponement? What do you -- what do you<br>20 base your understanding of that statement?<br>21 A. My understanding is that when it initially<br>22 came in, that's how -- that's how it was<br>23 described by NBC.<br>24 Q. I'm actually directing your attention to the<br>25 statement that -- that it appeared the claim | |
| Page 229<br><br>1 might be covered based on the postponement.<br>2 MS. SCOTT REED: Objection to<br>3 form, asked and answered.<br>4 Do you -- do you want to go back and<br>5 read her answer --<br>6 MS. COYOCA: Yeah.<br>7 MS. SCOTT REED: -- so she knows<br>8 what you're saying?<br>9 BY MS. COYOCA:<br>10 Q. You indicated previously that I asked you was<br>11 it OneBeacon's position that the initial<br>12 postponement costs of 300 to 350, whatever<br>13 the original estimate was that those were a<br>14 covered expense under extra -- under the<br>15 extra expense coverage of the policy. And<br>16 you indicated, "I think initially when the<br>17 first came" -- "when the claim first came in,<br>18 it appeared that it might be based on the<br>19 postponement, but then clearly by July 28th<br>20 when the letter was issued, OneBeacon took<br>21 the position that those weren't covered, but<br>22 again as a courtesy would -- would provide<br>23 NBC with reimbursement for those expenses it<br>24 incurred during that first week."<br>25 And my question to you is: As that<br>TSG Reporting - Worldwide 877-702-9580<br>59 (Pages 230 to 233) | Plaintiff's Objections:<br>No objection – 229:1; 229:9-25.<br><br>IO – 229:2-8.<br><br>Defendant's Response:<br>Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 230<br><br>1 first portion of your response when you say,<br>2 "I think initially when the claim first claim<br>3 in, it appeared that it might be based on the<br>4 postponement," what did you base that<br>5 statement on?<br>6 A. I -- I'm looking back at the letter, but I<br>7 also -- my recollection was that, again, it<br>8 was a moving -- kind of a moving target, and<br>9 NBC postponed it and wanted to see how -- how<br>10 the -- how it went forward between Israel and<br>11 Hamas before making -- you know, and then<br>12 ultimately decided that for the safety of NBC<br>13 they needed to pull out of -- pull out of<br>14 Israel. | Plaintiff's Objections:<br>No objection – Page 230.<br><br>Defendant's Response: |

## 9.    DANIEL GUTTERMAN

| Deposition Designation | Objection & Response |
|---|---|
| Defendant's Designation of Daniel Gutterman<br>p. 8, l. 5-p. 8, l. 12; p. 8, l. 20-p. 8, l. 25; p. 11, l. 9-p. 11. l. 22; p. 31, l. 22-p. 34, l. 10; p. 89, l. 7-p. 91, l. 1; p. 145, l. 8-p. 149, l. 7; p. 150, l. 7-p. 150, l. 15; p. 152, l. 7-p. 152, l. 18; p. 155, l. 14-p. 155, l. 22; p. 202, l. 11-p. 203, l. 23; p. 206, l. 1-p. 206, l. 25; p. 207, l. 24-p. 209, l. 20<br><br>Page 8<br><br>5 THE REPORTER: Raise your right hand,<br>6 please.<br>7 Do you solemnly swear or affirm the<br>8 testimony you are about to give in this deposition<br>9 will be the truth, the whole truth, and nothing but<br>10 the truth?<br>11 THE WITNESS: Yes.<br>12 THE REPORTER: Thank you<br><br>20 Q. Good morning, Mr. Gutterman.<br>21 A. Good morning.<br>22 Q. Please spell your full name for the<br>23 record.<br>24 A. Daniel Spencer Gutterman, D-A-N-I-E-L<br>25 S-P-E-N-C-E-R G-U-T-T-E-R-M-A-N.<br><br>Page 11<br><br>9 Q. Okay. Mr. Gutterman, do you have a<br>10 college degree?<br>11 A. I do.<br>12 Q. And what is that degree?<br>13 A. I'm a history major with a criminal<br>14 justice certificate.<br>15 Q. And is that your most advanced degree? | Plaintiffs object to Defendant's designation of Mr. Gutterman's testimony under FRE 802 (Hearsay). Mr. Gutterman lives in Los Angeles and is an employee of Defendant. He is therefore available to testify live at trial. Plaintiffs further object to Defendants' designations as follows: |

| Deposition Designation | Objection & Response |
|---|---|
| 16 A. Yes.<br>17 Q. Is that a bachelor's of the arts?<br>18 A. Yes.<br>19 Q. And from what university?<br>20 A. University of Wisconsin, Madison.<br>21 Q. When did you graduate?<br>22 A. 1997.<br><br><br>Page 31<br><br>22 Q. So Israel was at war with Hamas at the<br>23 time period of this claim.<br>24 Is that your opinion?<br>25 A. Yes.<br><br>Page 32<br><br>1 Q. Has Israel ever been at war with Hamas<br>2 before or after that time period?<br>3 A. I don't know.<br>4 Q. When did you formulate this opinion that<br>5 Israel was at war with Hamas at the time period of<br>6 the claim at issue in this case?<br>7 A. During the claim.<br>8 Q. And what was that opinion based on?<br>9 A. Information provided by the insured,<br>10 information provided by the broker, reviewing<br>11 articles online, as well as -- yeah.<br>12 Q. Anything else?<br>13 A. No. Not that I can think of.<br>14 Q. So your opinion that Israel was at war<br>15 with Hamas during the time of the claim is based<br>on,<br>16 No. 1, information provided by the insured; No.2<br>17 information by the broker; and No. 3, articles that | <br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 31:22-34:10<br>MIL, 402, 403<br><br><br>Defendant's Response:<br>"MIL" not clear objection;<br>ASIC's understanding and<br>development of facts is<br>relevant to reasonableness<br>of claim decision, defense<br>of "bad faith" allegation<br>and damages sought. |

| Deposition Designation | Objection & Response |
|---|---|
| 18 you researched online; is that correct?<br>19 A. Correct.<br>20 Q. Is it based on anything else?<br>21 A. Not that I can think of.<br>22 Q. Okay. Did you communicate that opinion to<br>23 anyone when you formed it?<br>24 A. I don't remember.<br>25 Q. Were you tasked with researching whether<br><br>Page 33<br><br>1 the conflict between Israel and Hamas at the time of<br>2 the claim was a war?<br>3 A. I was tasked with obtaining information<br>4 about what was going on over there.<br>5 Q. By who?<br>6 A. My supervisors.<br>7 Q. Who were they?<br>8 A. Pamela Johnson and Peter Williams.<br>9 Q. Anyone else?<br>10 A. No. Not that I can recall.<br>11 Q. Was there a chain of command among the<br>12 three of you?<br>13 A. Yes. Pam was my -- was my direct<br>14 supervisor.<br>15 Q. And did Peter supervise Pam?<br>16 A. No.<br>17 Q. Did Peter supervise you?<br>18 A. Yes. He more was a mentor.<br>19 Q. Why would you characterize him as a<br>20 mentor?<br>21 A. He has decades of experience in claims,<br>22 and I learned from him.<br>23 Q. Was Pamela Johnson a mentor?<br>24 A. Yes.<br>25 Q. Why?<br><br>Page 34 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1 A. I appreciated her opinion, and she's very<br>2 educated and understands insurance very well.<br>3 Q. So you said you formed an opinion that the<br>4 conflict between Israel and Hamas at the time of the<br>5 complaint -- I'm sorry. Let me start that over.<br>6 You said you formulated an opinion that<br>7 the conflict between Israel and Hamas at the time of<br>8 the claim was a war; right?<br>9 A. As we were progressing through the claim.<br>10 Yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 47<br>**4 Q. Okay. So we've got the research that you**<br>**5 did in connection with the DIG claim that's at issue**<br>**6 in this case as one of the bases for your current**<br>**7 understanding of what "war" means; right?**<br>**8 A. One of. Yes.**<br>**9 Q. Okay. What are the others?**<br>**10 A. Being a history major, learning about**<br>**11 World War II, learning about Desert Storm. Just**<br>**12 curiosity throughout watching History Channel shows.**<br>**13 Q. Anything else?**<br>**14 A. Not -- not off the top of my head.**<br><br>Page 52<br><br>**11 Q. Prior to your involvement in the DIG**<br>**12 claim, what was your understanding of what "war"**<br>**13 meant?**<br><br>**16 THE WITNESS:** I don't know if I ever had a<br>**17** definition of what "war" was. I think it's just --<br>**18** I know it when I see it. | |

| Deposition Designation | Objection & Response |
|---|---|
| **20** Q. And how has that understanding changed<br>**21** since the DIG claim, if at all?<br>**22 A. I don't believe that it has.**<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 89<br><br>**6** All right. So let's -- we've talked about<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION<br><br>Page 89<br><br>7 your education, you r prior employment. Let's start<br>8 talking now about your employment at OneBeacon.<br>9 Okay?<br>10 A. Okay.<br>11 Q. What is your title today?<br>12 A. Senior entertainment investigator.<br>13 Q. What was your title when you began?<br>14 A. The same.<br>15 Q. Has it ever been different?<br>16 A. No.<br>17 Q. Do you have an understanding of what your<br>18 job duties are as senior entertainment claims<br>19 investigator?<br>20 A. Yes.<br>21 Q. Have those responsibilities changed at any<br>22 time from the beginning of your employment until<br>23 today?<br>24 A. Yes.<br>25 Q. When? | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 90 | |
| 1 A. Over the course of my employment. | |
| 2 Q. What do you mean by that? | |
| 3 A. A lot of it had to do with the | |
| 4 complexities of the claims as well as the type of | |
| 5 claims I was receiving. Initially it was -- it was | |
| 6 less complex claims like a camera gets broken. | |
| 7 Eventually it became claims like this or an actor | |
| 8 got sick or what- -- whatever it happens to be. And | |
| 9 then I've -- I've recently started taking on more -- | |
| 10 other types of claims as well. | |
| 11 Q. So when you say that your role has | |
| 12 changed, what you mean is it's -- | |
| 13 A. It's expanded. Sorry. | |
| 14 Q. -- it's expanded, your responsibility has | |
| 15 expanded, the complexity of the matters has | |
| 16 increased as you have gained experience. | |
| 17 Is that a fair statement? | |
| 18 A. That's a fair statement. | |
| 19 Q. But in terms of your process and what you | |
| 20 actually do today to day, has that changed since you | |
| 21 began at OneBeacon? | |
| 22 A. Well, every day is different. But the | |
| 23 general processes are very similar. Yes. | |
| 24 Q. Okay. You've been a claims adjuster since | |
| 25 you began through the present? | |
| Page 91 | |
| 1 A. Correct. | |
| Page 145 | |
| 7 BY MR. HAYES: | |
| 8 Q. Did you feel at the time you were involved | |

| Deposition Designation | Objection & Response |
|---|---|
| 9 in the review of the DIG claim, did you feel at any 10 time that you needed to consult anybody on the 11 question whether or not the loss was caused by a 12 war? 13 A. My supervisors. 14 Q. At one point you felt you needed to 15 consult your supervisors on the question whether or 16 not the loss was caused by a war? 17 A. I didn't need to consult with them. They 18 came up with that completely independent of me. 19 I'm sorry. I think I'm lost in the 20 questioning. I'm not sure I understand it. 21 Q. You were involved in the DIG claim; right? 22 A. Yes. 23 Q. You did research; right? 24 A. Yes. 25 Q. What research did you do? <br><br>Page 146<br><br>1 A. I had conversations with the broker, the 2 insured, reviewed the e-mail that was sent to us, 3 looked online at multiple different websites. 4 Q. Okay. At any point during that process, 5 did you feel the need to consult with somebody else 6 on the question whether or not the loss was caused 7 by a war? 8 A. I don't remember specific conversations. 9 But I'm sure I had conversations with Pamela and/or 10 Peter where they described -- I mean, we were all 11 discussing what had we found from our research. 12 Q. And what had you found from your research? 13 A. Primarily that this was a war. Everything 14 that we were seeing showed that there was missiles 15 that were being shot from Palestine into Israel; 16 that a ground offensive was a possibility and 17 eventually, I believe it occurred; that -- that 18 tanks were mobilizing. I mean, the ground -- the | |

| Deposition Designation | Objection & Response |
|---|---|
| 19 armies were mobilizing at borders.<br>20 Q. Why did it matter that there was a ground<br>21 offensive?<br>22 MR. KEELEY: You didn't let him finish his<br>23 answer.<br>24 Are you finished with your answer?<br>25 THE WITNESS: Yeah. I guess so.<br><br>Page 147<br><br>1 BY MR. HAYES:<br>2 Q. Why did it matter that there was a ground<br>3 offensive possible?<br>4 A. Well, you asked me what -- what research I<br>5 had done. That was what we'd found.<br>6 Q. Right. You said that this was a war, and<br>7 then you started to list the reasons why; right?<br>8 A. Why it's a war?<br>9 Q. Right.<br>10 A. Oh, I was just telling you this is some of<br>11 the research we'd found.<br>12 Q. Right. Well, what relevance does the fact<br>13 that there was a ground offensive possible have to<br>14 this determination of whether or not it's a war?<br>15 A. All those constitute a war, to me.<br>16 Q. All of what constitute a war to you?<br>17 A. All those examples that I lined up after I<br>18 said this is a war.<br>19 Q. Ground offensive; right?<br>20 A. (No audible response.)<br>21 Q. "Yes"?<br>22 A. Correct. Yes. Sorry.<br>23 Q. Tanks?<br>24 A. Yes.<br>25 Q. Missiles?<br><br>Page 148 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 148:23-149:7 |

| Deposition Designation | Objection & Response |
|---|---|
| 1 A. Strikes. Yes.<br>2 Q. What else did you say? I'm sorry?<br>3 A. Armies mobilizing at borders.<br>4 Q. Anything else?<br>5 A. No. Not off the top of my head.<br>6 Q. All of those are indicia of war; is that<br>7 accurate?<br>8 A. I believe so. Yeah.<br>9 Q. Were you considering any other indicia of<br>10 war at the time?<br>11 A. Can you actually define "indicia."<br>12 Q. Were you considering any other facts that<br>13 might indicate what was going on was a war?<br>14 A. Yes. I'm -- I believe I even saw a<br>15 website on MSNBC specifically called it a war.<br>16 Q. Anything else?<br>17 A. Not off the top of my head.<br>18 Q. Okay. So based on all of that research,<br>19 in your opinion, at the time the DIG claim was made<br>20 and reviewed by OneBeacon, your opinion was the loss<br>21 was caused by a war?<br>22 A. No. Not instantaneously.<br>23 Q. I didn't say "instantaneously."<br>24 After you conducted the research before<br>25 OneBeacon denied the claim, at some point between<br><br>Page 149<br><br>1 the time you got notice of the claim and OneBeacon's<br>2 denial, your research led you to believe that the<br>3 loss was caused by a war.<br>4 A. Yes.<br>5 Q. Okay. And you just identified all the<br>6 reasons why you came to that conclusion; right? | MIL, 402, 403<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. |

| Deposition Designation | Objection & Response |
|---|---|
| 7 A. Yes.<br><br>Page 150<br><br>7 Q. Did you ever consider whether Hamas was in<br>8 any way like a sovereign nation in that research?<br>9 A. I did not.<br>10 Q. Why not?<br>11 A. My involvement in this claim was it was<br>12 assigned to me. But eventually this claim was<br>13 almost dealt with primarily by Pam- -- by Pamela.<br>14 And so that type of research would have been handled<br>15 at that point by her.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 152<br><br>**4** Q. Is Hamas a terrorist organization?<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 152<br><br>7 THE WITNESS: Are you asking my opinion?<br>8 BY MR. HAYES:<br>9 Q. Yes.<br>10 A. They perform terrorist acts. But they<br>11 certainly also have aspects of them that are very<br>12 sovereign, as sovereign states. I know that they<br>13 govern up to 1.7 million people. They have a<br>14 welfare section. They have their own military. So<br>15 I would certainly say that they -- I actually think<br>16 that they won votes in the Parliament, I think, in<br>17 like, the mid-2000s. So I definitely feel that<br>18 they're a sovereign state, if not a government. | Plaintiff's Objections:<br>Page 152:7-18<br>MIL, 402, 403, 701<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. Testimony helps clarify the witness's testimony or a |

| Deposition Designation | Objection & Response |
|---|---|
| | fact in issue as to the defense of "bad faith" allegation. |

PLAINTIFFS' 106 COUNTER-DESIGNATION:

Page 152

**19** Q. Where did you learn that?
**20 A. Wikipedia.**

END PLAINTIFFS' 106 COUNTER-DESIGNATION

Page 155

14 Q. What was your role, again, in connection
15 with the adjusting of the DIG claim?
16 A. It initially came to me. Pamela and I had
17 a conversation with the broker and the insured,
18 doing research online, sending that research back
19 and forth between Pamela and I, as well as Peter, I
20 believe; having another conversation thereafter.
21 But ultimate decisions of coverage were done by
22 Pamela.

Page 202

11 Q. Okay. So the DIG claim comes in on
12 July 15, 2014, as far as you know; right?
13 A. As far as I'm aware, yes.
14 Q. And you received that claim from the
15 Canton system, I think you said?
16 A. I don't remember exactly how I got it. I
17 think it came in -- there had been a process for a
18 long time where a -- the broker could send claims
19 directly to the claims department. So I think
20 that's what happened in this instance.
21 Q. Okay. But it was sent to you?

| Deposition Designation | Objection & Response |
|---|---|
| 22 A. Eventually, yes.<br>23 Q. And when you received the claim, what did<br>24 you understand your role to be in terms of adjusting<br>25 the claim?<br><br>Page 203<br><br>1 A. Speaking with the insured, speaking with<br>2 the broker, reviewing the e-mail that had been sent<br>3 to them from the head of security at NBC,<br>4 investigating the claim, investigating and searching<br>5 online for what was going on over there, and help in<br>6 the determination of coverage. And if there --<br>7 yeah.<br>8 Q. And how was it that you were going to help<br>9 in the determination of coverage? What was your<br>10 understanding at the time you received the claim?<br>11 A. Reviewing the facts of the loss, dealing<br>12 with the research that we had done, and then<br>13 applying it to the policy.<br>14 Q. You said "reviewing the facts of the<br>15 loss."<br>16 What were the facts of the loss in<br>17 connection with the DIG claim?<br>18 A. The e-mail that had been sent to us by the<br>19 head of NB- -- head of NBC security in Israel and<br>20 then the information that was eventually provided to<br>21 us by the broker and the insured.<br>22 Q. Anything else?<br>23 A. No.<br><br>Page 206<br><br>1 Q. You mean what physically was occurring on<br>2 the ground?<br>3 A. Yes. | |

| Deposition Designation | Objection & Response |
|---|---|
| 4 Q. And what were you -- what kinds of things<br>5 were you looking for in your searches, in your<br>6 Google searches?<br>7 A. Just to gain knowledge of what was<br>8 occurring on the ground there.<br>9 Q. Okay. And why did it matter what was<br>10 occurring on the ground?<br>11 A. 'Cause we received a claim that involved<br>12 what was going on on the ground there.<br>13 Q. But did you have any sense of what you<br>14 would use that information for once you found it?<br>15 And by "information," I mean the information as to<br>16 what was going on on the ground in Israel.<br>17 A. To help my bosses and myself understand<br>18 more of what -- just knowledge, just plain<br>19 knowledge. We didn't -- I didn't have an under- --<br>20 what was your question? I did not know what I would<br>21 use that information for beyond just learning what<br>22 was going on.<br>23 Q. Why did you need to know what was going on<br>24 to evaluate the claim?<br>25 A. Research is always beneficial.<br><br>Page 207<br><br>24 Q. So you say that your initial understanding<br>25 of what your role would be was review the facts of<br><br>Page 208<br><br>1 the loss. We've talked about that; review research.<br>2 We've talked about that.<br>3 And then you said apply it to the policy;<br>4 right?<br>5 A. I believe so. Yes.<br>6 Q. What did you mean when you said "apply it<br>7 to the policy"? | |

| Deposition Designation | Objection & Response |
|---|---|
| 8 And by "it," you meant the facts of the<br>9 loss and the research; right?<br>10 A. Correct.<br>11 Q. Okay. So what did you mean when you said<br>12 "apply it to the policy"?<br>13 A. Determining what, if any, coverages the<br>14 facts of the loss could apply to.<br>15 Q. Again, through this lens of "we really<br>16 want to find coverage"; right?<br>17 A. I'm sorry. What's the question?<br>18 Q. You applied the facts and the research to<br>19 the policy with the guiding principle that, "we,"<br>20 meaning OneBeacon, "really want to find<br>coverage."<br>21 A. Yes.<br>22 Q. Okay. Because this was not one of those<br>23 easy cases where coverage was obvious; right?<br>24 A. Yes.<br>25 Q. Okay. And then you also said you added<br><br>Page 209<br><br>1 speaking with the insured and the broker.<br>2 Was that just another part of your<br>3 fact-gathering --<br>4 A. Yes.<br>5 Q. -- function?<br>6 A. Yes. Yes.<br>7 Q. And then you applied whatever facts you<br>8 learned from the insured and/or the broker to the<br>9 policy; is that accurate?<br>10 A. Yes.<br>11 Q. And you applied it using that same guiding<br>12 principle, "we really want to find coverage"; right?<br>13 A. Yes.<br>14 Q. Okay. All right. Now, did your<br>15 understanding of what your role was in the context | |

| Deposition Designation | Objection & Response |
|---|---|
| 16 of adjusting the DIG claim ever change at any time?<br>17 A. Yes.<br>18 Q. When did it change?<br>19 A. It is -- it basically became Pamela<br>20 Johnson's claim.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 305<br><br>**8** Q. Did you do anything to search for<br>**9** documents in connection with this case?<br>**10 A. What type of documents?**<br>**11** Q. Any documents, electronic or paper.<br>**12 A. Well, once again, once we got the claim**<br>**13 and it came in, I went on Google.**<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION | |

10.    **PAMELA JOHNSON VOL. 1—May 8, 2017**

| Deposition Designation | Objection & Response |
|---|---|
| Defendant's Designation of Pamela Johnson May 8, 2017 Vol 1. <br> p. 8, l. 1- p. 8, l. 7; p. 11, l. 12- p. 11, l. 20; p. 12, l. 2 - p. 12, l. 7; p. 13, l. 4 - p. 13, l. 17; p. 14, l. 10 - p. 14, l. 18; p. 20, l. 3 - p. 20, l. 21; p. 21, l. 3 - p. 22, l. 13; p. 24, l. 1- p. 24, l. 10; p. 24, l. 18 - p. 24, l. 24; p. 26, l. 23 - p. 26, l. 25; p. 27, l. 1- p. 27, l. 5; p. 27, l. 13- p. 27, l. 15; p. 30, l. 17 - p. 30, l. 23; p. 31, l. 11- p. 31, l. 23; p. 32, l. 23-p. 32, l. 25; p. 37, l. 16 - p. 39, l. 3; p. 91, l. 1- p. 91, l. 8; p. 77, l. 20 - p. 78, l. 5; p. 90, l. 7 - p. 91, l. 8; p. 92, l. 1- p. 93, l. 22; p. 94, l. 23- p. 95, l. 21; p. 96, l. 1- p. 96, l. 11; p. 96, l. 17-p. 96, l. 19; p. 96, l. 21-p. 97, l. 9; p. 97, l. 19-p. 99, l. 1; p. 99, l. 7-p. 100, l. 6; p. 101, l. 10-p. 101, l. 25; p. 102, l. 6-p. 102, l. 11; p. 104, l. 3- p. 104, l. 14; p. 104, l. 22-p. 104, l. 24;p. 105, l. 4-p. 105, l. 6; p. 105, l. 9-p. 105, l. 20; p. 110, l. 12-p. 111, l. 1; p. 115, l. 5-p. 116, l. 5; p. 118, l. 14-p. 120, l. 22; p. 122, l. 8-p. 123, l. 19; p. 124, l. 12-p. 124, l. 21; p. 125, l. 8-p. 125, l. 20; p. 126, l. 1-p. 131, l. 6; p. 131, l. 12-p. 132, l. 3; p. 133, l. 23-p. 136, l. 21; p. 137, l. 21-p. 138, l. 8; p. 140, l. 24-p. 141, l. 5; p. 141, l. 12-p. 141, l. 14;p. 142, l. 8-p. 142, l. 19; p. 144, l. 7-p. 144, l. 17; p. 144, l. 20-p. 144, l. 22; p. 144, l. 24-p. 145, l. 3; p. 145, l. 6-p. 145, l. 8; p. 146, l. 1-p. 146, l. 16; p. 146, l. 20-p. 147, l. 5; p. 147, l. 15-p. 148, l. 5; p. 150, l. 2-p. 151, l. 14; p. 152, l. 12-p. 152, l. 13; p. 154, l. 4-p. 154, l. 5; p. 154, l. 12-p. 154, l. 13; p. 154, l. 20-p. 154, l. 21; p. 155, l. 3-p. 155, l. 4;p. 156, l. 2-p. 156, l. 7;p. 156, l. 11-p. 157, l. 20;p. 159, l. 16-p. 159, l. 20;p. 159, l. 24-p. 161, l. 24; p. 167, l. 18- p. 168, l. 3; p.169, l. 15-p. 171, l. 6; p. 172, l. 10-p. 172, l. 16; p. 174, l. 10-p. 174, l. 15; p. 174, l. 19-p. 176, l. 5; p. 181, l. 6-p. 181, l. 13; p. 183, l. 1-p. 183, l. 16; p. 185, l. 20-p.185, l. 21; p. 185, l. 24-p. 186, l. 6; p. 186, l. 8- p. 186, l. 13; p. 186, l. 18-p. 187, l.6; p. 187, l. 9-p. 188, l. 7; p. 192, l. 17- p. 194, l. 11; p. 194, l. 21-p. 195, l. 5; p. | Plaintiffs object to Defendant's designations as follows: |

| Deposition Designation | Objection & Response |
|---|---|
| 195, 1. 8-p. 195, 1. 17;p. 195, l. 25-p. 196, l. 8; p. 196, l. 14-p. 198, l. 5; p. 198, l. 14-p. 199, l. 17;p. 199, l. 21-p. 200, l. 16; p. 201, l. 12-p. 201, l. 13; p. 212, l. 1-p. 212, l. 4; p. 212, l. 11-p. 212, l. 24; p. 213, l. 10-p. 213, l. 13;p. 213, l. 21-p. 214, l. 22; p. 215, 1. 19-p. 216, l. 7; p. 217, 1. 19-p. 218, 1. 14; p. 219, l. 4-p. 219, l. 11; p. 220, l. 7-p. 220, l. 17; p. 220, l. 22-p. 221, l. 24; p. 225, l. 19-p. 225, l. 23; p. 237, l. 8-p. 238, l. 16; p. 238, l. 21-p. 239, l. 5; p. 243, l. 9-p. 243, l. 13; p. 257, l. 19-p. 259, l. 24; p. 262, l. 7-p. 262, l. 14; p. 263, 1. 6-p. 263, 1. 10; p. 263. 1. 15-p. 265, 1. 17; p. 265, l. 19-p. 265, l. 19; p. 265, l. 22-p. 265, l. 25; p. 266, l. 2-p. 266, l. 5; p. 266, l. 8-p. 266, l. 8; p. 266, 1. 10-p. 266. 1. 16; p. 266, l. 18-p. 267, l. 6; p. 273, l. 20- p. 274, l. 23; p. 279, l. 10-p. 279, l. 10; p. 284, l. 21-p. 285, l. 18; p. 293, l. 4-p. 293, l. 7; p. 294, l. 3-p. 295, l. 9; p. 295, l. 24-p. 297, l. 23; p. 351, l. 13-p. 352, l. 19; | |

<u>Page 8</u>
1 Could you please state your full 09:19:35
2 name and address for the record? 09:19:37
3 A. My name is Pamela Ann Johnson. 09:19:39
4 Q. And your address? 09:19:40
5 A. 385 Washington Street. 09:19:42
6 Q. And that's here in Minneapolis? 09:19:44
7 A. It's in St. Paul. 09:19:46

<u>Page 11</u>
12 Q. Ms. Johnson, did you go to college? 09:22:47
13 A. I did. 09:22:53
14 Q. Where did you go? 09:22:53
15 A. I graduated from the University of 09:22:54
16 St. Thomas. 09:22:56
17 Q. What year did you graduate? 09:22:57
18 A. 1986. 09:22:58
19 Q. What was your degree in? 09:22:59
20 A. My degree was in psychology. 09:23:02

| Deposition Designation | Objection & Response |
|---|---|
| Page 12<br>2 Q. Where did you go to law school? 09:23:23<br>3 A. I went to the University of Minnesota. 09:23:24<br>4 Q. Did you graduate? 09:23:27<br>5 A. I did. 09:23:28<br>6 Q. What year? 09:23:28<br>7 A. 1992. 09:23:29<br><br>Page 13<br>4 Q. Do you have a license to practice law? 09:24:04<br>5 A. I do not currently have an active license, 09:24:06<br>6    no. 09:24:08<br>7 Q. Have you ever had a license to practice law? 09:24:12<br>8 A. I have.09:24:15<br>9 Q. When did you first become licensed to 09:24:19<br>10   practice law? 09:24:16<br>11 A. In 1992. 09:24:19<br>12 Q. In what jurisdiction? 09:24:21<br>13 A. Texas. 09:24:22<br>14 Q. Did you become licensed in any other state? 09:24:25<br>15 A. I did. 09:24:27<br>16 Q. Where else? 09:24:28<br>17 A. Colorado and Minnesota. 09:24:30<br><br>Page 14<br>10 Q. Do you hold any other certificates or 09:25:30<br>11   licenses? 09:25:31<br>12 A. As I said before, I am licensed to act as a 09:25:33<br>13   claim professional. 09:25:39<br>14 Q. What license is that? 09:25:40<br>15 A. Well, it's the -- it's the license that you 09:25:44<br>16   get when you work for an insurance company in 09:25:47<br>17   a variety of states as an adjuster, it's a 09:25:50<br>18   property and casualty adjustment license. 09:25:54 | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 20<br>3 Q. And did you begin working after you moved to 09:32:25<br>4 St. Paul? 09:32:28<br>5 A. I did. 09:32:28<br>6 Q. Who did you work for? 09:32:29<br>7 A. Travelers Insurance Company. 09:32:30<br>8 Q. How long were you with Travelers the first 09:32:32<br>9   time? 09:32:37<br>10 A. I was with them for seven years. 09:32:37<br>11 Q. So until approximately 2012? 09:32:42<br>12 A. That's correct. 09:32:45<br>13 Q. What did you do for Travelers? 09:32:46<br>14 A. I handled intellectual property claims, other 09:32:49<br>15 kinds of complex claims, business torts 09:32:54<br>16 specifically. A lot of those were in the 09:32:59<br>17 entertainment area, so I handled a lot of 09:33:02<br>18 entertainment claims. And errors and 09:33:06<br>19 omissions coverage for some technology 09:33:10<br>20 companies if it involved some aspect of 09:33:12<br>21 intellectual property or complex contracts. 09:33:15<br><br>Page 21<br>3 Q. While you were at Travelers, did you ever 09:33:35<br>4 analyze a claim where the war exclusion was 09:33:48<br>5 potentially applicable? 09:33:53<br>6 A. I did not. 09:33:54<br>7 Q. While you were at Travelers, did you ever 09:34:00<br>8 analyze a claim where the terrorism exclusion 09:34:02<br>9 was potentially applicable? 09:34:05<br>10 A. I did not. 09:34:08<br>11 Q. When you left Travelers, where did you go to 09:34:17<br>12 work next? 09:34:19<br>13 A. I went to work for OneBeacon, or 09:34:19<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION: | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 21<br><br>3 Q. While you were at Travelers, did you ever 09:33:35<br>4 analyze a claim where the war exclusion was 09:33:48<br>5 potentially applicable? 09:33:53<br>6 A. I did not. 09:33:54<br>7 Q. While you were at Travelers, did you ever 09:34:00<br>8 analyze a claim where the terrorism exclusion 09:34:02<br>9 was potentially applicable? 09:34:05<br>10 A. I did not. 09:34:08<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 22<br>1 needed with regard to legal matters to the 09:34:58<br>2 underwriters and handle complex claims. 09:35:01<br>3 Q. Did your responsibilities change over time? 09:35:06<br>4 A. They did. 09:35:08<br>5 Q. When did they change? 09:35:09<br>6 A. After I had been there for about a year. 09:35:12<br>7 Q. What did you do for OneBeacon entertainment 09:35:14<br>8 after about a year? 09:35:16<br>9 A. They reorganized the claim division within 09:35:17<br>10 OneBeacon and asked me to move into a 09:35:20<br>11 management role supervising specific claim 09:35:24<br>12 handlers working on OneBeacon entertainment 09:35:28<br>13 claims.<br><br>Page 24<br>1 Q. What was your position title when you first 09:37:49<br>2 began to work at OneBeacon entertainment? 09:37:51<br>3 A. Second vice-president. 09:37:54<br>4 Q. Did that title change over time? 09:37:57<br>5 A. No. 09:37:59<br>6 Q. Did your job responsibilities change after 09:38:02 | |

| Deposition Designation | Objection & Response |
|---|---|
| 7 you moved into the position where you were 09:38:06<br>8 supervising claims analysts? 09:38:09<br>9 A. No, I mean, that continued to be my job 09:38:15<br>10 during my tenure there. 09:38:18<br><br>18 Q. When did you leave OneBeacon entertainment?<br>09:38:34<br>19 A. I left OneBeacon entertainment in 2015. Is 09:38:35<br>20 that right? Yeah. 09:38:43<br>21 Q. So you were with OneBeacon entertainment from<br>09:38:46<br>22 2012 until approximately 2015; is that 09:38:50<br>23 correct? 09:38:53<br>24 A. Yes. 09:38:53<br><br>Page 26<br>23 Q. And you left -- why did you leave OneBeacon<br>09:41:14<br>24 entertainment in 2015? 09:41:18<br>25 A. OneBeacon entertainment reorganized and they<br>09:41:19<br><br>Page 27<br>1 downsized, particularly in the entertainment 09:41:24<br>2 group, and they gave the claim lead 09:41:27<br>3 responsibilities to the same person who was 09:41:31<br>4 also acting as the claim lead and continued 09:41:33<br>5 to act as the claim lead for public sector. 09:41:35<br><br>13Q. Where did you go to work after OneBeacon<br>09:42:00<br>14 entertainment? 09:42:03<br>15 A. I went back to Travelers. 09:42:03 | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 30 | Plaintiff's Objections: |
| | Page 30:17-23 |
| Page 31 | No Question; |
| 11 Q. Other than the one online course, did you 09:46:51 | 401,402,403 |
| 12 receive any instructions, attend any 09:46:54 | |
| 13 in-person seminars where you were given 09:46:58 | Defendant's Response: |
| 14 instructions with respect to OneBeacon's 09:47:00 | Deleted |
| 15 claims handling practices? 09:47:03 | |
| 16 A. Well, I actually taught some courses on that. 09:47:04 | |
| 17 Q. I understand, but did you personally receive 09:47:07 | |
| 18 any training in that regard? 09:47:09 | |
| 19 A. Well, we had annual meeting for OneBeacon 09:47:10 | |
| 20 entertainment, and at the annual meeting 09:47:17 | |
| 21 there were several, you know, discussions and 09:47:20 | |
| 22 trainings that you were involved and they 09:47:23 | |
| 23 involved claim. 09:47:26 | |
| | |
| PLAINTIFFS' 106 COUNTER-DESIGNATION: | |
| | |
| Page 31 | |
| | |
| 24 Q. Okay. When you say there were various 09:47:38 | |
| 25 discussions and trainings that were involved, 09:47:40 | |
| | |
| Page 32 | |
| | |
| 1 what types of trainings were involved? 09:47:43 | |
| 2 A. You know, I can't remember specifically. 09:47:47 | |
| 3 Q. You also indicated that you taught claims 09:47:51 | |
| 4 handling practices; is that correct? 09:47:54 | |
| 5 A. No. I gave instruction on it, certainly, to 09:47:56 | |
| 6 the people that I supervised. But, also, at 09:47:59 | |
| 7 the annual meeting we would give information 09:48:02 | |
| 8 to the underwriters about specific -- 09:48:06 | |

| Deposition Designation | Objection & Response |
|---|---|
| 9 specific claims that had arisen, how the 09:48:09<br>10 policy had been interpreted and things that 09:48:15<br>11 they should think about in the underwriting 09:48:17<br>12 process. 09:48:19<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 32<br>23 Q. Are you familiar with California's Fair 09:48:55<br>24 Claims Settlement Practices regulations? 09:48:59<br>25 A. Of course I am. 09:49:00 | Plaintiff's Objections:<br>Page 32:23-25<br>No Question;<br>401,402,403<br><br>Defendant's Response:<br><br>There is a question at p. 32: lines 23-24; answer at L 25. |
| Pages 37<br>16 (Whereupon, Exhibit 1 was 09:54:00<br>17 marked for identification.) 09:54:09<br>18 BY MS. COYOCA: 09:54:09<br>19 Q. Ms. Johnson, have you seen this document 09:54:10<br>20 before? 09:54:12<br>21 A. I have. 09:54:12<br>22 Q. What is it? 09:54:12<br>23 A. It says, "General Claims Practices," and it 09:54:13<br>24 is an explanation of claims processing and 09:54:17<br>25 general claims practices. 09:54:21 | |
| Page 38<br>1 Q. When did you first see this document? 09:54:26<br>2 A. I believe it was provided to me when I first 09:54:28<br>3 came to OneBeacon. I'm not absolutely sure, 09:54:32<br>4 but I think it was. 09:54:35<br>5 Q. Who provided it to you? 09:54:35<br>6 A. Judy Lamble. 09:54:37<br>7 Q. When you are reviewing claims, do you look at 09:54:39<br>8 all potential coverages that might apply to a 09:55:01<br>9 claim? 09:55:04<br>12 THE WITNESS: Yes, I try to do 09:55:11 | Plaintiff's Objections:<br>Page 38:10-11; 38:20-22<br>IO,403<br><br>Defendant's Response:<br><br>Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 13 that. 09:55:12<br>14 BY MS. COYOCA: 09:55:14<br>15 Q. When you are reviewing a claim, do you 09:55:15<br>16 consider -- just as your practice, do you 09:55:18<br>17 consider the position of the insurer and the 09:55:23<br>18 position of the insured and investigate both 09:55:25<br>19 positions in making a coverage determination? 09:55:31<br>23 THE WITNESS: I consider my job to 09:55:37<br>24 be to look for insurance coverage if it can 09:55:38<br>25 be found for the insured. And if there's an 09:55:41<br><br>Page 39<br>1 ambiguity in the policy, the tie goes to the 09:55:46<br>2 policyholder. My job is to find coverage if 09:55:50<br>3 it exists. 09:55:53<br><br>Page 91<br>1 That wasn't uncommon. I mean, if 11:08:54<br>2 there's a -- in entertainment claims, 11:08:56<br>3 especially first-party claims, things are 11:08:59<br>4 very fast moving. You can't allow a 11:09:00<br>5 production to sit around and wait. If they 11:09:03<br>6 have something that they have that they need 11:09:05<br>7 an answer to, you need to get on it as 11:09:07<br>8 quickly as possible. 11:09:10<br><br>Page 77<br>20 Q. I'd like to show you next, Ms. Johnson, a 10:53:57<br>21 document that previously was marked 10:54:01<br>22 Exhibit 16. Are you familiar with this 10:54:03<br>23 document? 10:54:16<br>24 A. I am. 10:54:17<br>25 Q. What is it? 10:54:17<br>Page 78<br>1 A. It's the core principals set forth for 10:54:18<br>2 OneBeacon claim handling. 10:54:21<br>3 Q. When did you first see it? 10:54:22 | |

| Deposition Designation | Objection & Response |
|---|---|
| 4 A. I think I saw it when I first came to the 10:54:26<br>5 company.10:54:28<br><br>Page 90<br>7 Q. Ms. Johnson, when is the first time you heard 11:07:47<br>8 about the Dig claim? 11:07:49<br>9 A. I think that it was on a telephone call 11:07:53<br>10 with Danny Gutterman, Andrea Garber and 11:07:56<br>11 Susan Weiss on July 10th, 2014. 11:08:00<br>12 Q. You believe that phone call took place on 11:08:19<br>13 July 10, 2014? 11:08:21<br>14 A. I think that's right. I could be mistaken 11:08:22<br>15 about the date. 11:08:24<br>16 Q. And the participants in the call were 11:08:25<br>17 Danny Gutterman, Andrea Garber, Susan Weiss11:08:27<br>18 and yourself? 11:08:34<br>19 A. That's correct. 11:08:34<br>20 Q. Why were you having the call? 11:08:37<br>21 A. Danny called me and he said that NBC had a 11:08:39<br>22 claim that they wanted to discuss and could 11:08:43<br>23 we talk about it, you know, in other words, 11:08:46<br>24 could he conference me in. Or he may have 11:08:50<br>25 already conferenced me in, I don't remember. 11:08:53<br><br><br><br><br><br>Page 91<br>1That wasn't uncommon. I mean, if 11:08:54<br>2 there's a -- in entertainment claims, 11:08:56 | |

| Deposition Designation | Objection & Response |
|---|---|
| 3 especially first-party claims, things are 11:08:59<br>4 very fast moving. You can't allow a 11:09:00<br>5 production to sit around and wait. If they 11:09:03<br>6 have something that they have that they need 11:09:05<br>7 an answer to, you need to get on it as 11:09:07<br>8 quickly as possible. 11:09:10<br><br>Page 92<br>1 Q. Was it your understanding during the course<br>     11:09:48<br>2 of the call that the claim had previously 11:09:56<br>3 been discussed with anyone else at OneBeacon?<br>     11:09:57<br>4 A. I think that either Andrea or Susan mentioned<br>     11:10:00<br>5 that they had talked to Peter. 11:10:06<br>6 Q. What was discussed during the call? 11:10:15<br>7 A. They explained that the situation -- that -- 11:10:30<br>8 in Israel had become too dangerous for their 11:10:38<br>9 cast to resume filming there. They had been 11:10:43<br>10 on hiatus between the pilot and the shooting 11:10:47<br>11 of the initial season, which is not uncommon, 11:10:51<br>12 and they were supposed to start shooting 11:10:54<br>13 again and they wanted to push for a week. In 11:10:57<br>14 other words, they wanted to delay starting 11:10:59<br>15 production for a week to see whether or not 11:11:01<br>16 the situation deescalated. 11:11:05<br>17 Q. Did they explain to you why the situation in<br>     11:11:08<br>18 Israel had become dangerous? 11:11:11<br>19 A. They told me that -- that Hamas was lobbing<br>     11:11:12<br>20 rockets into Tel Aviv and Jerusalem, which 11:11:20<br>21 were the two cities in which they had 11:11:24<br>22 locations for shooting. 11:11:27<br>23 Q. Did they say anything further with respect to<br>     11:11:28<br>24 the situation that was creating an unsafe 11:11:34 | |

| Deposition Designation | Objection & Response |
|---|---|
| 25 circumstance for the production to proceed? 11:11:38 | |
| | |
| Page 93 | |
| 1 A. No, that's what we talked about in terms 11:11:40 | Plaintiff's Objections: |
| 2 of -- of safety or lack of safety, was that 11:11:43 | Page 93:9-11 |
| 3 the fact that there was increased rocket fire 11:11:47 | IO,403 |
| 4 and their security team had told them that it 11:11:54 | |
| 5 had become unsafe. 11:11:58 | Defendant's Response: |
| 6 Q. Who did the talking as between Ms. Garber or 11:12:07 | |
| 7 Ms. Weiss, if there was one, that was the 11:12:10 | Objection deleted. |
| 8 predominant talker during the call? 11:12:12 | |
| | |
| 11 THE WITNESS: I think both of them 11:12:18 | |
| 12 participated, but Susan I think did most of 11:12:19 | |
| 13 the talking. That's Susan Weiss, the broker. | |
| 14 BY MS. COYOCA: 11:12:35 | |
| 15 Q. What, if anything, did they say about their 11:12:36 | |
| 16 conversation with Mr. Williams? 11:12:38 | |
| 17 A. I don't recall | |
| 18 Q. Did they indicate that they had spoken to 11:12:42 | |
| 19 Mr. Williams about the push? 11:12:44 | |
| 20 A. Yes. | |
| 21 Q. Did they indicate what Mr. Williams said in 11:12:51 | |
| 22 response to their recitation of the facts? 11:12:54 | |
| | |
| Page 94 | |
| 23 Q. It's your recollection that you asked for 11:14:04 | |
| 24 that information as to the dollar amount? 11:14:05 | |
| 25 A. I think we talked about that, yes, because we 11:14:09 | |
| | |
| | |
| Page 95 | |
| 1 were talking about who was all -- who was 11:14:12 | |
| 2 still on the ground, was everyone already 11:14:13 | |
| 3 out, was -- you know, because we wanted to 11:14:16 | |

| Deposition Designation | Objection & Response |
|---|---|
| 4 make sure people were safe, was -- you know, 11:14:20<br>5 who had they been using, in other words, were 11:14:21<br>6 they using a local camera crew. 11:14:23<br>7 In a -- in a production situation 11:14:26<br>8 there are people that you can -- you know, if 11:14:28<br>9 you're going to push you have to think about 11:14:32<br>10 that there are people who have different 11:14:34<br>11 contracts with regard to a show. Some people 11:14:36<br>12 you need to give them 24 hours notice and say 11:14:38<br>13 with 24 hours notice we don't need you 11:14:41<br>14 anymore. There are other people who have 11:14:43<br>15 contracts that you cannot stop paying them. 11:14:45<br>16 And those are all things that are 11:14:47<br>17 taken into consideration when we're 11:14:49<br>18 evaluating, not coverage for the claim, but 11:14:51<br>19 the damages associated with that claim, and 11:14:53<br>20 so that's the reason we would ask questions 11:14:56<br>21 like that. 11:14:58<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 95<br><br>22 Q. My question, though, is: Did you ask them 11:15:02<br>23 the question as to what the estimated cost 11:15:06<br>24 would be for pushing production for one week? 11:15:10<br>25 A. I -- I don't remember. 11:15:13<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 96<br>1 Q. Did Ms. Weiss or Ms. Garber indicate what 11:15:14<br>2 would happen after one week? 11:15:28<br>3 A. As I recall, we were talking about whether or | |

| Deposition Designation | Objection & Response |
|---|---|
| 11:15:29<br>4 not -- this was a fast-moving situation and 11:15:33<br>5 we wanted to see whether it would deescalate. 11:15:35<br>6 So we had -- we had agreed that we would talk 11:15:41<br>7 again shortly after seeing what -- what was 11:15:44<br>8 continuing to happen. 11:15:46<br>9 Q. Is there anything else that Ms. Garber or 11:15:50<br>10 Ms. Weiss told you during that July 10 phone 11:15:52<br>11 call? 11:15:56<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 96<br><br>12 A. I think that they told me that they already 11:15:56<br>13 had -- 11:15:58<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 96<br>21 I think what I recall is that 11:16:15<br>22 they -- that, you know, primarily what we 11:16:16<br>23 were talking about is is everybody safe. And 11:16:18<br>24 so I think what they were telling me is they 11:16:21<br>25 thought that everyone was already out, 11:16:24<br><br>Page 97<br>1 because that was our primary concern, is 11:16:25<br>2 everyone -- you know, have they left Israel, 11:16:28<br>3 are they still on the ground, if they need to 11:16:30<br>4 leave, you know, what -- what arrangements 11:16:33<br>5 have you made with regard to that. 11:16:35<br>6 And I think, because they were on 11:16:36<br>7 hiatus, that either everyone or almost 11:16:38<br>8 everyone was already gone or had not 11:16:41<br>9 returned, depending on how you look at it. 11:16:45<br><br>19 Q. What was your response, if any, to the 11:17:13 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 96:17-19<br>IO,403<br><br>Defendant's Response:<br><br>Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 20 description of the need for a push? 11:17:18<br>21 A. Well, I don't think that I responded one way<br>      11:17:23<br>22 or another. I agreed with them that given 11:17:26<br>23 the information they had, it sounded like a 11:17:29<br>24 dangerous situation and that we wanted to see<br>      11:17:31<br>25 what was going to happen next.11:17:34<br><br><u>Page 98</u><br>1 Q. Anything else? 11:17:41<br>2 A. No, other than the fact that we were going to<br>11:17:43<br>3 talk again very soon. 11:17:48<br>4 Q. All right. Did you ask Ms. Weiss or 11:17:51<br>5 Ms. Garber to provide any further 11:17:54<br>6 information? 11:17:56<br>7 A. I think they told me that they had a report 11:18:00<br>8 from their security person. I mean, we had 11:18:02<br>9 talked about that report, because it was that 11:18:07<br>10 report that said that it was -- that safety 11:18:09<br>11 could no longer be guaranteed. 11:18:15<br>12 MS. COYOCA: Okay. I'd like to 11:18:27<br>13 mark as Exhibit 2 to this deposition a 11:18:28<br>14 document that is a series of e-mails, and 11:18:32<br>15 it's labeled Bates control ATL000982 11:18:35<br>16 through 985. The top e-mail is from 11:18:40<br>17 Michael J. Arevalo to Pamela Johnson on 11:18:45<br>18 Tuesday, September 15, 2014. 11:19:11<br>19 (Whereupon, Exhibit 2 was 11:19:11<br>20 marked for identification.) 11:19:12<br>21 THE WITNESS: I'm sorry, I believe 11:19:12<br>22 you misspoke. I think you said September 11:19:14<br>23 15th. This indicates July 15th. 11:19:14<br>24 MS. COYOCA: You're right, I did. 11:19:16<br>25 Thank you for that. The record should 11:19:17<br><br><u>Page 99</u> | |

| Deposition Designation | Objection & Response |
|---|---|
| 1 reflect that the date is July 15th, 2015 11:19:18 <br><br> 7 Q. First of all, have you seen this document 11:20:42 <br> 8 before, Ms. Johnson? 11:20:45 <br> 9 A. Well, I've seen the e-mail that Michael sent 11:20:46 <br> 10 to me. Yes, I mean, I have     seen the 11:20:49 <br> 11 e-mail -- e-mail chain before, yes. 11:20:55 <br> 12 Q. Okay. The first e-mail in time is at the 11:20:57 <br> 13 very bottom of the document, and that's from 11:21:09 <br> 14 Randi Richmond to Andrea Garber with a cc to 11:21:10 <br> 15 Mark Binke and Kurt Ford, and it's dated 11:21:16 <br> 16 Monday, July 14, 2014. Do you see that? 11:21:19 <br> 17 A. I do. 11:21:23 <br> 18 Q. And the e-mail contains part A, "Summary of 11:21:23 <br> 19 where you are in the production schedule," 11:21:27 <br> 20 and, B, "What you have been advised of by 11:21:28 <br> 21 security regarding the imminent peril to your 11:21:31 <br> 22 operations." Do you see that? 11:21:35 <br> 23 A. Yes. 11:21:41 <br> 24 Q. You previously testified about a report that 11:21:41 <br> 25 had been received by security indicating that 11:21:44 <br><br> Page 100 <br> 1 they were no longer able to guarantee safety 11:21:47 <br> 2 and security of the employees in Israel; is 11:21:49 <br> 3 that right? 11:21:52 <br> 4 A. Yes. 11:21:52 <br> 5 Q. Is this the report that you were thinking of? 11:21:53 <br> 6 A. Yes. 11:21:56 <br><br> Page 101 <br> 10 Q. The e-mail above the e-mail that we were 11:23:29 <br> 11 just discussing is from Andrea Garber to 11:23:33 <br> 12 Susan Weiss with a cc to Deborah Kizner dated 11:23:35 | |

| Deposition Designation | Objection & Response |
|---|---|
| 13 Monday, July 14, 2014, and the first sentence 11:23:39 14 reads, "Following our discussion on Friday 11:23:44 15 with Peter, below is the e-mail I received 11:23:46 16 from Randi Richmond, the production executive 11:23:48 17 on the show, outlining the situation in11:23:52 18 Israel on our production Dig, Season 1." Do 11:23:53 19 you see that sentence? 11:23:57 20 A. I do. 11:23:57 21 Q. You just testified that you believed that you 11:23:58 22 spoke with Ms. Garber and Ms. Weiss after one 11:24:00 23 or both of them had already spoken with 11:24:04 24 Mr. Williams; is that correct? 11:24:06 25 A. That's correct. 11:24:08  Page 102 6 Q. To the best of your recollection, had they 11:24:26 7 spoken with Mr. Williams more than one time 11:24:30 8 prior to the conversation they had with you 11:24:32 9 and Mr. Gutterman? 11:24:34 10 A. Not that I was aware of when we were having 11:24:35 11 our conversation, no. 11:24:38  PLAINTIFFS' 106 COUNTER-DESIGNATION:  Page 103  19 Q. As you look at Ms. Weiss's e-mail below the 11:26:36 20 e-mail that was forwarded to you by 11:26:39 21 Mr. Arevalo, is it your understanding that 11:26:40 22 this was the tender of the claim, notice of 11:26:42 23 the claim being given to OneBeacon? 11:26:46 24 A. Well, this certainly is not the way you 11:26:49 25 usually would tender a claim. But, yes, I 11:26:51 | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 104<br><br>1 mean, I think that she was -- she was saying 11:26:56<br>2 that she was making us aware of the claim. 11:26:58<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 104<br>3 Q. How does the e-mail notification differ from 11:27:03<br>4 what would usually be the case in terms of 11:27:07<br>5 tender of a claim? 11:27:09<br>6 A. You usually would get an accord that would 11:27:10<br>7 have information, you know, here's what the 11:27:13<br>8 client contact is, here's -- you know, here's 11:27:16<br>9  the broker. It didn't always happen, because 11:27:19<br>10 we worked so closely with the brokers that 11:27:22<br>11 usually -- or not usually, but sometimes they 11:27:24<br>12 would simply give us a call and tell us about 11:27:28<br>13 a claim and then expect us to do the setup or 11:27:31<br>14 send us an e-mail. 11:27:34<br><br>22 Q. So typically you would receive an accord from 11:27:51<br>23 the broker or from the insured directly? 11:27:54<br>24 A. Not from the insured, from the broker. 11:27:57<br><br>Page105<br>4 Q. How were claims typically tendered to 11:28:16<br>5 OneBeacon entertainment by Aon during that 11:28:20<br>6 period of time that you were handling claims? 11:28:23<br><br>9 THE WITNESS: It would depend, I 11:28:27<br>10 think, on whether or not it was a first-party 11:28:28<br>11 or third-party claim. Certainly, the claims 11:28:30 | <br><br><br><br>Plaintiff's Objections:<br>Page 104:3-14; 104:22-24<br>MIL, 401,402,403<br>Defendant's Response:<br><br>"MIL" not clear what objection intended; description of initial claim process is relevant and not prejudicial; identifies relationship with broker for context and subsequent claim discussions; helpful to jury's understanding; no prejudice to Plaintiffs.<br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 105:4-5; 105:9-20<br>MIL, 401,402,403<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 12 that I dealt with them, it was always a first 11:28:35<br>13 party production claim, and I think that -- 11:28:38<br>14 you know, I don't know that I can speak to 11:28:42<br>15 exactly the form that they took. It wouldn't 11:28:46<br>16 surprise me if Susan called or sent an 11:28:49<br>17 e-mail, because a lot of the ones that I 11:28:52<br>18 dealt with were Sandy claims, for example, 11:28:55<br>19 and of course that was, again, a very 11:28:57<br>20 fast-moving situation.11:28:59<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 105<br><br>22 Q. Was there any requirement that claims be 11:29:00<br>23 tendered in a particular format? 11:29:04<br>24 A. Not that I'm aware of. 11:29:05<br>25 Q. After a claim was submitted to OneBeacon by 11:29:09<br><br>Page 106<br><br>1 NBCUniversal, what was the next step in terms 11:29:13<br>2 of setting up the file? 11:29:15<br>3 A. So Lucy Lopez, who also worked as my 11:29:18<br>4 assistant, would get the -- get the relevant 11:29:26<br>5 information for the broker to be able to fill 11:29:28<br>6 in all of the screens that we need -- needed 11:29:31<br>7 to set up the claim in our claim files 11:29:40<br>8 system. 11:29:42<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page110<br>12 Q. And Mr. Gutterman was officed in Los Angeles; 11:34:57<br>13 is that correct? 11:35:00 | "MIL" not clear what objection intended; description of general claim process is helpful to jury's understanding and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 14 A. He was. 11:35:01<br>15 Q. Did you meet with him on a regular basis 11:35:01<br>16 in-person? 11:35:05<br>17 A. I did. 11:35:06<br>18 Q. How regularly? 11:35:08<br>19 A. I was going out to California at least once a 11:35:09<br>20 month, sometimes more often than that. I'm 11:35:13<br>21 sure there were time periods in which I was 11:35:17<br>22 traveling for other -- you know, to other 11:35:20<br>23 jurisdictions when I wouldn't get there 11:35:23<br>24 within a month, but it was -- it was pretty 11:35:25<br>25 close to that. It was often. And we talked 11:35:27<br><br>Page 111<br>1 on the phone almost every day. 11:35:30<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page111<br><br>5 Q. Before working for OneBeacon, what was your 11:35:42<br>6 understanding of what Mr. Gutterman did? 11:35:44<br>7 A. He worked as a production assistant on a 11:35:46<br>8 reality television show. 11:35:48<br>9 Q. Did you know if he had any insurance 11:35:52<br>10 expertise or experience prior to going to 11:35:56<br>11 work for OneBeacon? 11:35:58<br>12 A. Yes, he had worked at Progressive Insurance 11:35:59<br>13 at one period of time. 11:36:04<br>14 Q. And while at Progressive did he handle 11:36:05<br>15 entertainment-related claims? 11:36:08<br>16 A. Not that I'm aware of. 11:36:09<br>17 Q. What type of claims did he handle at 11:36:13<br>18 Progressive? 11:36:16<br>19 A. I think primarily auto, but I -- I don't 11:36:16 | |

| Deposition Designation | Objection & Response |
|---|---|
| 20 remember for sure. 11:36:19<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br><br><br>Page 115<br>5 Q. What training did OneBeacon entertainment 11:40:23<br>6 provide to Mr. Gutterman when he first came 11:40:27<br>7 onboard? 11:40:29<br>8 A. When he first came onboard he spent a great 11:40:30<br>9 deal of time with both me and Peter Williams 11:40:32<br>10 going through the first-party coverages and 11:40:36<br>11 the different policies that we used so that 11:40:39<br>12 he could gain an understanding of what it was 11:40:42<br>13 that was covered and not covered under those 11:40:44<br>14 policies, generally speaking, so that we 11:40:47<br>15 would talk to him about, "Okay, so here's the 11:40:50<br>16 coverage grant, here are the exclusions that 11:40:53<br>17 apply," you know, give some examples of past 11:40:55<br>18 claims in which that information had been 11:40:58<br>19 used, and talk to him generally about 11:41:00<br>20 questions that he should ask. But as I said, 11:41:03<br>21 he worked very closely with both of us.<br>22 Q. Was there any kind of training program, 11:41:09<br>23 formal training program that OneBeacon 11:41:12<br>24 entertainment has for claims adjusters when<br>25 they're first hired? 11:41:17<br><br>Page 116<br>1 A. I'm sure that he did some online training. 11:41:18<br>2 Q. You've referenced online training a couple of 11:41:24<br>3 times now. Is that online training that's 11:41:28<br>4 provided by OneBeacon? 11:41:30 | |

| Deposition Designation | Objection & Response |
|---|---|
| 5 A. Yes. 11:41:31 | |

PLAINTIFFS' 106 COUNTER-DESIGNATION:

Page 116

6 Q. Is the online training a specific number of 11:41:38
7 hours? 11:41:41
8 A. No, it's specific courses that you have to go 11:41:43
9 through. I have no idea how long it would 11:41:46
10 take. And, of course, he also needed to get 11:41:48
11 his adjusters license. 11:41:52
12 Q. What were the specific online courses that 11:41:55
13 Mr. Gutterman needed to complete? 11:41:58
14 A. I'm sorry, I don't remember. 11:42:00
15 Q. Were there more than ten courses? 11:42:02
16 A. I don't think so, but I can't recall for 11:42:05
17 sure. 11:42:08
18 Q. Were there more than five? 11:42:09
19 A. I'm sorry, I don't recall. 11:42:11
20 Q. Do you have an estimate as to how many 11:42:12
21 courses? 11:42:14
22 A. I don't. I know that for myself it took me a 11:42:14
23 couple of days, maybe a little bit longer to 11:42:23
24 complete them all, but I don't -- I don't 11:42:26
25 remember specifically. 11:42:28

END PLAINTIFFS' 106 COUNTER-DESIGNATION

Page 118
14 Q. You indicated that shortly after having that 11:44:32
15 phone call with Ms. Garber and Ms. Weiss, you 11:44:34
16 believe that you began researching; is that 11:44:37
17 correct? 11:44:39
18 A. Yes. 11:44:39
19 Q. What did you research? 11:44:40

| Deposition Designation | Objection & Response |
|---|---|
| 20  A. I wanted to know what was happening in 11:44:42<br>21 Israel. And they said that it was -- that, 11:44:46<br>22 you know, it was a dangerous situation and 11:44:47<br>23 they said that they thought it was imminent 11:44:49<br>24 peril, and so I needed to collect information 11:44:51<br>25 to see whether or not it actually did fall 11:44:54<br><br>Page 119<br>1 within the coverage grant for imminent peril 11:44:56<br>2  and whether there were any exclusions that 11:45:02<br>3  applied. 11:45:04<br>4 Q. What did you do to research the situation in 11:45:04<br>5 Israel? 11:45:06<br>6 A. I looked at news reports, I read articles, I 11:45:13<br>7 looked at newspaper articles and, you know, a 11:45:20<br>8 variety of -- of -- I don't know what you 11:45:24<br>9 would call them. Not academic articles, 11:45:29<br>10  because I don't think that that's what they 11:45:31<br>11 would be called, but articles or -- or white 11:45:34<br>12 papers written by, for example – for 11:45:37<br>13 example, the CRS, the Congressional Research 11:45:39<br>14 Service that works specifically for 11:45:43<br>15 U.S. Congress. 11:45:45<br>16 Q. Did you begin that research the same day that 11:45:46<br>17 you had the conversation with Ms. Weiss and 11:45:49<br>18 Ms. Garber? 11:45:52<br>19 A. I think did, yes. 11:45:54<br>20 Q. Now, you indicated you were in a restaurant 11:45:55<br>21 parking lot when you first took that first 11:46:00<br>22 phone call and then you drove home; is that 11:46:02<br>23 correct? 11:46:04<br>24 A. I don't remember specifically where I went 11:46:04<br>25 after that, but I probably went home. 11:46:06 | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 120<br>1 Q. Was it an evening when you took the phone 11:46:08<br>2 call? 11:46:14<br>3 A. I don't remember the exact time. 11:46:16<br>4 Q. Did you begin your research, though, when you 11:46:17<br>5 went home or did you wait until the next day? 11:46:22<br>6 A. I think I actually started looking at stuff 11:46:27<br>7 that night. As I said, these are very 11:46:29<br>8 fast-moving claims, so you can't sit around 11:46:35<br>9 and wait. 11:46:38<br>10 Q. Now, you indicated you also had to review the 11:46:43<br>11 coverage; is that correct? 11:46:50<br>12 A. Yes. 11:46:51<br>13 Q. What did you do to review the coverage? 11:46:51<br>14 A. I looked at the policy. 11:46:54<br>15 Q. Anything else? 11:46:56<br>16 A. Well, the policy is what indicates what the 11:46:57<br>17 coverage is, so, no, that's what I did. I 11:47:05<br>18 looked at what the policy said.11:47:08<br>19 Q. Did you look at anything else, though, in 11:47:10<br>20  order to be able to analyze the coverage? 11:47:13<br>21 A. Well, I think I just told you a variety of 11:47:15<br>22 things that I did. 11:47:18<br><br>Page 122<br>8 Q. Did you look at the imminent peril coverage? 11:48:42<br>9 A. Yes. 11:48:44<br>10 Q. Under the extra expense portion of the 11:48:45<br>11 policy? 11:48:47<br>12 A. That's correct. 11:48:48<br>13 Q. Did you come to a conclusion as to whether or 11:48:49<br>14 not the situation that had been described 11:48:52<br>15 constituted imminent peril? 11:48:54<br>16 A. Based on the information that I had at the 11:48:56 | |

| Deposition Designation | Objection & Response |
|---|---|
| 17 time, what -- what you always try to 11:48:58<br>18 determine in an imminent peril situation is 11:49:00<br>19 first was this unexpected. 11:49:02<br>20 In other words, based on the 11:49:04<br>21 information that the -- that the production 11:49:06<br>22 has before they go into the situation versus 11:49:11<br>23 what the situation is at the time that they 11:49:14<br>24 are saying that they have a claim, is the 11:49:16<br>25 behavior or whatever is going on, you know, 11:49:19<br><br> Page 123<br>1 has -- has that -- is that unexpected to the 11:49:23<br>2 degree that you think that keeping people 11:49:26<br>3 there would be unconscionable. 11:49:29<br>4 So that's what I was looking at, 11:49:35<br>5 what was the situation before we went in, and 11:49:37<br>6 then what was the situation at the time we 11:49:39<br>7 had the phone call and they decided to push. 11:49:41<br>8 Q. And did you reach a conclusion as to whether 11:49:44<br>9 it was? 11:49:46<br>10 A. It appeared to me that the situation had 11:49:46<br>11 grown decidedly more dangerous. 11:49:49<br>12 Q. Did you end up concluding that, in fact, 11:49:56<br>13 there was imminent peril? 11:50:02<br>14 A. Well, it appears -- 11:50:02<br>17 THE WITNESS: It appeared to me 11:50:08<br>18 there was a war, and certainly the war was 11:50:09<br>19 creating imminent peril. 11:50:11<br><br>Page 124<br>12 Q. When did you reach your conclusion that the 11:50:49<br>13 situation did in fact constitute imminent 11:50:52<br>14 peril? 11:51:02<br>15 A. Well, it didn't take me very long to reach 11:51:02<br>16 that conclusion. I mean, I don't think I 11:51:05<br>17 reached it that night. I continued to have 11:51:07 | |

| Deposition Designation | Objection & Response |
|---|---|
| 18 conversations with Danny. We both were doing 11:51:10<br>19 research and exchanging information with each 11:51:12<br>20 other with regard to what we had found. But 11:51:14<br>21 certainly within a few days. 11:51:18<br><br>Page 125<br>8 Q. Ms. Johnson, the day that you had that first 12:07:35<br>9 phone conversation with Ms. Garber and 12:07:38<br>10 Ms. Weiss, you said you believed that you 12:07:40<br>11 went back and did some research that evening. 12:07:42<br>12 Did you do that research online? 12:07:46<br>13 A. Yes. 12:07:48<br>14 Q. Did you also look at the policy that evening? 12:07:49<br>15 A. You know, I don't remember if I -- if I 12:07:52<br>16 looked at the policy that evening or not. I 12:07:54<br>17 don't remember whether or not it was in the 12:07:59<br>18 claim file at that point and if I had access 12:08:00<br>19 to it. I certainly looked at it very shortly 12:08:03<br>20 thereafter. 12:08:07<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 125<br><br>21 Q. At the time that you had the conversation 12:08:11<br>22 with Ms. Weiss and Ms. Garber, was there a 12:08:14<br>23 claim already -- a file that had already been 12:08:18<br>24 set up? 12:08:21<br>25 A. I have no idea. 12:08:21<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 126<br>1 Q. The same day that you had the conversation 12:08:28 | |

| Deposition Designation | Objection & Response |
|---|---|
| 2 after the call was over, did you have any 12:08:31<br>3 conversations with Mr. Gutterman separate 12:08:33<br>4 from the joint call? 12:08:36<br>5 A. On that same day? 12:08:38<br>6 Q. Yeah. After the joint call with Ms. Garber 12:08:39<br>7 and Ms. Weiss. 12:08:44<br>8 A. I -- I -- I don't remember. Possibly, but I 12:08:44<br>9 just don't remember. 12:08:47<br>10 Q. When is the next time you remember speaking 12:08:49<br>11 with Mr. Gutterman about the claim? 12:08:52<br>12 A. It probably would have been the next day, but 12:08:55<br>13 I don't -- I can't tell you that for sure. 12:08:59<br>14 We spoke very often, and this was such a 12:09:01<br>15 fast-moving situation. NBC really wanted to 12:09:04<br>16 know whether or not the claim was covered and 12:09:07<br>17 what was going to happen pretty quickly, so 12:09:10<br>18 we were doing our best to be able to provide 12:09:15<br>19 them with an answer. 12:09:17<br>20 Q. Does the pace of the investigation suggest to 12:09<br>21 you that you were in frequent contact with 12:09:22<br>22 Mr. Gutterman shortly after the call? 12:09:25<br>23 A. I'm sorry, I just don't remember. 12:09:30<br>24 Q. Did you -- do you recall not speaking with 12:09:31<br>25 Mr. Gutterman about the claim? 12:09:36<br><br>Page 127<br>1 A. I don't have any recollection one way or the 12:09:37<br>2 other. 12:09:39<br>3 Q. Did you provide any guidance to Mr. Gutterman 12:09:40<br>4 as to the next steps to be taken in 12:09:44<br>5 investigating the claim? 12:09:48<br>6 A. Well, I'm sure that we discussed what we 12:09:50<br>7 needed to find out with regard to what was 12:09:53<br>8 happening. I don't remember in particular 12:09:55 | |

| Deposition Designation | Objection & Response |
|---|---|
| 9 what charge I gave him with regard to what he 12:10:00 10 should do. 12:10:03 11 Q. What did you discuss in terms of what you 12:10:10 12 needed to find out? 12:10:15 13 A. I don't recall specifically, but since it was 12:10:18 14 coverage that they were looking for under 12:10:26 15 imminent peril, which is what Susan Weiss had 12:10:28 16 said, we would have been looking at what was 12:10:31 17 the situation before they went there, what 12:10:32 18 was the situation at the time that they 12:10:36 19 submitted the claim and what had happened in 12:10:38 20 between. 12:10:41 21 Q. What, if anything, did you do to discover 12:10:48 22 what the situation had been before they went 12:10:51 23 there? 12:10:53 24 A. I think I've already answered that question. 12:10:53 25 Q. Unfortunately, you need to answer it again. 12:10:58 Page 128 1 A. I looked at a variety of newspaper articles, 12:11:03 2 videos, different websites that -- that 12:11:05 3 contained information. I read some white 12:11:10 4 papers. I read just a wide variety of things 12:11:13 5 that talked about what the situation was and 12:11:19 6 what the situation had been. 12:11:22 7 Q. So the same source material that you were 12:11:26 8 looking at to determine what was then ongoing 12:11:29 9 in Israel, you also looked at to determine 12:11:31 10 what the situation had been in Israel prior 12:11:33 11 to the commencement of the situation with 12:11:35 12 Hamas? 12:11:37 | Plaintiff's Objections: Page 128:13-14 IO,403 Defendant's Response: Objection deleted |

| Deposition Designation | Objection & Response |
|---|---|
| testimony, vague and ambiguous. 12:11:40 | |
| 15 THE WITNESS: In order to 12:11:46 | |
| 16 determine imminent peril, you have to make 12:11:46 | Plaintiff's Objections: |
| 17 sure that whatever is happening is 12:11:49 | Page 128:15-22 |
| 18 unexpected. In order to determine if 12:11:53 | MIL,402,403,NR |
| 19 something is unexpected, you have to know 12:11:55 | |
| 20 what happened before the production got there 12:11:57 | Defendant's Response: |
| 21 and what was happening at the time that they 12:11:59 | "MIL" not clear |
| 22 submitted the claim. 12:12:02 | objection; ASIC's |
| 23 BY MS. COYOCA: 12:12:05 | understanding and |
| 24 Q. My question to you, Ms. Johnson, is: Did you 12:12:05 | analysis is relevant to |
| 25 look to the same set of materials to try to 12:12:08 | reasonableness of claim |
| | decision, defense of |
| Page 129 | "bad faith" allegation |
| 1 determine what the situation was before the 12:12:11 | and damages sought; |
| 2 claim had arisen? 12:12:15 | answer is responsive to |
| 3 A. Well, some of the materials I looked --- 12:12:16 | explain what witness |
| 4 looked at was what is happening right now. 12:12:18 | reviewed; not |
| 5 And then, yes, I did an investigation of what 12:12:21 | prejudicial to Plaintiffs |
| 6 had the situation been prior to that time. 12:12:23 | but would be to |
| 7 Q. Did you -- to the best of your recollection, 12:12:34 | Defendant if not |
| 8 did you consult any other materials in order 12:12:37 | allowed to provide |
| 9 to determine what the situation was prior to 12:12:39 | understanding. |
| 10 the time the claim arose? 12:12:42 | |
| 11 A. I know I looked at travel warnings. 12:12:43 | |
| 12 Q. Where did you get the travel warnings from? 12:12:51 | Plaintiff's Objections: |
| 13 A. I looked at the State Department's warnings 12:12:53 | Page 129:3-6 |
| 14 that they put out with regard to warning U.S. 12:12:58 | NR |
| 15 citizens about dangerous areas of travel. 12:13:02 | |
| 16 Q. Any other source other than U.S. State 12:13:05 | Defendant's Response: |
| 17 Department? 12:13:08 | It is responsive; |
| 18 A. Yup, I looked at a variety of other countries 12:13:08 | provides context |
| | necessary to complete |
| | answer. |

| Deposition Designation | Objection & Response |
|---|---|
| 19 as well. We looked at the United Kingdom. I 12:13:12<br>20 think I looked at Australia, and probably a 12:13:17<br>21 few more. 12:13:23<br>22 Q. How far back in time did you look in order to 12:13:24<br>23 look at the security situation prior to the 12:13:29<br>24 time the claim arose? 12:13:32<br>25 A. Well, I was looking most specifically what 12:13:33<br><br>Page 130<br>1 had happened, you know, in just the months 12:13:36<br>2 prior, but that didn't mean I didn't do a 12:13:39<br>3 more thorough investigation of, okay, so 12:13:42<br>4 what -- what is the current situation. I 12:13:45<br>5 knew something about that, but I didn't -- 12:13:47<br>6 you know, I wanted to make sure that the 12:13:50<br>7 information I had was correct and -- and to 12:13:52<br>8 be thorough. 12:13:54<br>9 Q. With respect to the communications you had 12:13:57<br>10 with Danny Gutterman about his investigation 12:14:02<br>11 of the claim, do you recall directing him to 12:14:04<br>12 look at any particular sources of 12:14:08<br>13 information? 12:14:10<br>14 A. As I sit here today, I don't remember. Maybe 12:14:12<br>15 I did. 12:14:15<br>16 Q. Maybe you did, maybe you didn't, you just 12:14:16<br>17 don't remember? 12:14:19<br>18 A. I don't recall. 12:14:20<br>19 Q. Did you and Mr. Gutterman develop an 12:14:27<br>20 investigation plan for the claim? 12:14:31<br>21 A. Well, when you say, "Develop an investigation 12:14:34<br>22 plan," we began an investigation, so it's not 12:14:38 | |

| Deposition Designation | Objection & Response |
|---|---|
| 23 as though we sat down and said, "This is what 12:14:41<br>24 we need to know." We already knew what we 12:14:44<br>25 needed to know when we started to investigate 12:14:47 | |
| Page 131<br>1 it, what happened prior to the time that the 12:14:52<br>2 shooting started and what happened in 12:14:53<br>3 shooting -- I mean, principal photography -- 12:14:55<br>4 and what happened in between the time that 12:15:01<br>5 they -- before they got there and what was 12:15:02<br>6 happening at the time they made the claim.12:15:03 | Plaintiff's Objections:<br>Page 131:23-24<br>IO, 403<br><br>Defendant's Response:<br><br>Objection removed. |
| 12 A. Well, I think what I've already testified is 12:15:14<br>13 that I began the investigation myself that 12:15:16<br>14 night, and that I don't recall whether or not 12:15:20<br>15 I spoke with Mr. Gutterman before I started 12:15:22<br>16 doing that. 12:15:25<br>17 Q. Did you and Mr. Gutterman develop an<br>18 investigation plan before beginning the 12:15:28<br>19 investigation? 12:15:31<br>20 A. I think I've already told you. 12:15:35<br>21 Q. Please answer my question. 12:15:37<br>22 A. Did I sit down and --12:15:39<br>25 THE WITNESS: Did I sit down 12:15:43 | |
| Page 132<br>1 and -- and have a conversation about him, 12:15:44<br>2 "These are the steps we need to take," no, 12:15:46<br>3 "One, two, three," no, I did not do that. 12:15:48 | |
| Page 133<br>23 Q. Did you ever have a telephone call with him 12:18:04<br>24 to discuss it? 12:18:06<br>25 A. I'm sorry, I just don't remember. I mean, 12:18:13 | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 134 | |

Page 134
1 that would be likely because, you know, the 12:18:16
2 protocol was if you think that there's going 12:18:20
3 to be something that -- that is going to 12:18:22
4 have -- that is potentially not covered, you 12:18:24
5 want to tell Peter first, and then you want 12:18:26
6 to tell the broker. 12:18:30
7 Q. And when did you -- in relation to when the 12:18:36
8 first conversation took place with Ms. Garber 12:18:43
9 and Ms. Weiss, when did you have that 12:18:44
10 conversation with Mr. Williams to indicate 12:18:46
11 that there might not be coverage? 12:18:48
12 A. I think I've already told you I'm not sure 12:18:50
13 exactly when it took place. 12:18:53
14 Q. Was it a week later? 12:18:54
15 A. Oh, no. 12:18:55
16 Q. Was it five days later? 12:18:58
17 A. No. 12:19:00
18 Q. Was it three days later? 12:19:00
19 A. I don't think that we even waited that long. 12:19:03
20 It would have been within the next couple of 12:19:06
21 days. We spoke to Andrea and Susan, again, 12:19:10
22 within a couple of days of the first call, so 12:19:14
23 I would have talked to him in between those 12:19:22
24 times. 12:19:24
25 Q. Okay. Before that next conversation with 12:19:28

Page 135
1 Ms. Garber and Ms. Weiss when you were 12:19:31
2 investigating the claim, you've given me 12:19:35
3 certain materials that you consulted, 12:19:40
4 articles, white paper, et cetera, newspaper 12:19:45
5 articles, you've also indicated you looked at 12:19:47
6 the insurance policy. Are there any other 12:19:49
7 documents that you can recall reviewing? 12:19:52

| Deposition Designation | Objection & Response |
|---|---|
| 8 A. I looked at case law. 12:19:54 | |
| 9 Q. What case law did you look at? 12:19:56 | |
| 10 A. I looked at any case that I could find that 12:19:57 | |
| 11 interpreted the war exclusion. 12:20:01 | |
| 12 Q. Do you recall the names of any of those 12:20:06 | |
| 13 cases? 12:20:07 | |
| 14 A. The Pan Am case, the Holiday Inn case. 12:20:08 | |
| 15 Q. Other than Pan Am and Holiday Inn, do you 12:20:15 | |
| 16 recall any other cases? 12:20:19 | |
| 17 A. I think I had also looked at -- looked at 12:20:20 | |
| 18 what had been said about the -- you know, the 12:20:24 | |
| 19 9/11 attack. 12:20:25 | |
| 20 Q. What did you look at with respect to what had 12:20:30 | |
| 21 been said -- 12:20:33 | |
| 22 MS. REED: Pardon me. Are you 12:20:34 | |
| 23 finished with your answer? 12:20:36 | |
| 24 THE WITNESS: I am. 12:20:37 | |
| 25 BY MS. COYOCA: 12:20:38 | |
| | |
| Page 136 | |
| 1 Q. What did you look at with respect to what had 12:20:38 | |
| 2 been said about the 9/11 attacks? 12:20:40 | |
| 3 A. I can't tell you specifically as I sit here 12:20:42 | |
| 4 today. 12:20:44 | |
| 5 Q. Did you read any cases with respect to 9/11? 12:20:47 | |
| 6 A. Perhaps. As I said, I looked at any case law 12:20:49 | |
| 7 I could find that interpreted the war 12:20:54 | |
| 8 exclusion. 12:20:57 | |
| 9 Q. Did you review any articles that discussed 12:20:57 | |
| 10 the insurance company's response -- excuse 12:21:01 | |
| 11 me, the insurance industry's response to the 12:21:04 | |
| 12 9/11 attacks in terms of application or 12:21:06 | |
| 13 non-application of the war exclusion? 12:21:09 | |

| Deposition Designation | Objection & Response |
|---|---|
| 14 A. Well, I -- I don't recall if I -- if I 12:21:12<br>15 actually read anything about that. I just 12:21:14<br>16 don't remember. 12:21:16<br>17 Q. You said though -- 12:21:20<br>18 A. If it was included in case, law then I would 12:21:21<br>19 have seen it. But if you're saying did I 12:21:24<br>20 look at separate articles about that, I don't 12:21:26<br>21 recall whether I did or not. 12:21:29<br><br>Page 137<br>21 Q. Okay. Now, prior to beginning your 12:22:29<br>22 investigation of the factual circumstances in 12:22:42<br>23 Israel, did you know what Hamas was? 12:22:48<br>24 A. I knew of the existence of Hamas, yes. 12:22:51<br>25 Q. What did you understand Hamas to be? 12:22:54<br><br>Page 138<br>1 A. A Palestinian organization. 12:22:58<br>2 Q. Anything else that you understood at the time 12:23:02<br>3 the claim first came in? 12:23:06<br>4 A. Well, I know that Susan Weiss considered it 12:23:07<br>5 to be a terrorist organization, because 12:23:13<br>6 that's what she said. I didn't have an 12:23:16<br>7 opinion one way or another with regard to 12:23:18<br>8 that. 12:23:20<br><br>Page 140<br>24 As of July 15, 2014, did you have an 12:26:20<br>25 understanding as to whether Gaza was a 12:26:24<br><br>Page 141<br>1 separate state? 12:26:27<br>2 A. I think that that depends on who you ask. 12:26:28<br>3 Q. Okay. But what I'm asking for as of July 15, 12:26:31 | Plaintiff's Objections:<br>Page 140:24-25; 141:1-5; 141:12-14<br>MIL, 401,402,403, 701<br><br>Defendant's Response:<br><br>"MIL" not clear objection; ASIC's |

| Deposition Designation | Objection & Response |
|---|---|
| 4 2014, what was your understanding as to 12:26:35<br>5 whether Gaza was a separate state? 12:26:37<br><br>12 Based on the information that I 12:26:43<br>13 gathered, I would say that it is a separate 12:26:44<br>14 state, yes. 12:26:47<br><br>Page 142<br>8 Q. As of July 15, 2014, did you have an 12:27:53<br>9 understanding as to what the Palestinian 12:27:55<br>10 Authority was? 12:28:04<br>11 A. I'm sorry, I'm not sure what you're asking. 12:28:04<br>12 Q. I want to know the state of your knowledge, 12:28:06<br>13 if you knew as of July 15, 2014, before you 12:28:10<br>14 began your investigation, did you know what 12:28:13<br>15 the Palestinian Authority was? 12:28:14<br>16 A. Well, I certainly knew that there was a 12:28:16<br>17 Palestinian government, an elected 12:28:18<br>18 Palestinian government, and that controlled 12:28:21<br>19 the region of Gaza and had for some time. 12:28:24<br><br>Page 144<br>7 Q. As of July 15, 2014, before you began any 12:30:25<br>8 research or investigation, what was your 12:30:28<br>9 understanding of what the Palestinian 12:30:32<br>10 parliament consisted of? 12:30:35<br>11 A. I -- you know, I can't separate what I knew 12:30:36<br>12 then from what I know now. So I wish I could 12:30:39<br>13 give you better information, but I can't. 12:30:41<br>14 Q. As of July 15, 2014, what was your 12:30:46<br>15 understanding as to what the Palestinian 12:30:48<br>16 parliament controlled in terms of geographic 12:30:52<br>17 territory? 12:30:55<br><br>20 THE WITNESS: Again, hard to 12:31:02 | understanding and analysis is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought; not prejudicial to Plaintiffs but would be to Defendant if not allowed to provide understanding; not prejudicial to Plaintiffs but would be to Defendant if not allowed to provide understanding.<br><br>Plaintiff's Objections:<br>Page 142:8-19<br>MIL, 401,402,403, 701<br><br>Defendant's Response:<br><br>"MIL" not clear objection; ASIC's understanding and development of facts relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought; testimony rationally based on witness' perception and job; helpful to determining a |

| Deposition Designation | Objection & Response |
|---|---|
| 21 distinguish between what I know now and what 12:31:03<br>22 I knew then, but certainly Gaza. 12:31:05<br><br>24 Q. So it's your testimony that the Palestinian 12:31:10<br>25 parliament controlled Gaza -- 12:31:15 | fact in issue and admissible under 701; not prejudicial to Plaintiffs but would be to Defendant if not allowed to provide understanding.<br><br>Plaintiff's Objections:<br>Page 144:7-17; 144:20-22; 144:24-25<br>MIL, 401,402,403, 701<br><br>Defendant's Response:<br><br>"MIL" not clear objection; ASIC 's understanding and development of facts relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought; testimony rationally based on witness' perception and job; helpful to determining a fact in issue and admissible under 701; not prejudicial to Plaintiffs but would be to Defendant if not allowed to provide understanding. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 145<br>2 BY MS. COYOCA: 12:31:15<br>3 Q. -- is that correct? 12:31:18<br><br>6 THE WITNESS: That's what they say 12:31:23<br>7 they govern. The Israelis obviously have a 12:31:24<br>8 different point of view. 12:31:29<br><br>Page 146<br>1 Q. And in -- as of 2014, July 15, 2014, when you 12:32:15<br>2 first began investigating the claim, was it 12:32:19<br>3 your understanding that the Palestinian 12:32:25<br>4 parliament consisted of just Hamas? 12:32:27<br>5 A. No. 12:32:29<br>6 Q. What other groups were in the Palestinian 12:32:33<br>7 parliament, to the best of your 12:32:40<br>8 understanding, before you began doing any 12:32:41<br>9 investigation as of July 15, 2014? 12:32:42<br>10 A. Hamas, Fatah, the PLO maybe, maybe not, I 12:32:44<br>11 just don't know. 12:32:49<br>12 Q. So Hamas, Fatah, and perhaps the PLO was your 12:32:54<br>13 understanding as of July 2014 comprised the 12:33:03<br>14 Palestinian parliament, and the Palestinian 12:33:07<br>15 parliament controlled at least, to the best 12:33:09<br>16 of your understanding, Gaza; is that right? 12:33:11<br>20 THE WITNESS: Well, I knew that 12:33:20<br>21 there was a Palestinian parliament that was 12:33:21<br>22 made up of more than just Hamas. I knew that 12:33:25<br>23 Fatah was one of the other parties, that 12:33:29<br>24 there may have been other parties, maybe, 12:33:30<br>25 maybe not. And the only reason I -- I think 12:33:32 | Plaintiff's Objections:<br>Page 145:1-3; 145:6-8<br>MIL, 401,402,403, 701<br><br>Defendant's Response:<br><br>"MIL" not clear objection; ASIC's understanding and evaluation of facts relevant to reasonableness of claim decision, defense of "bad faith" and damages sought; testimony rationally based on witness' perception and job; helpful to determining a fact in issue and admissible under 701; not prejudicial to Plaintiffs but would be to Defendant if not allowed to provide understanding.<br><br><br>Plaintiff's Objections:<br>Page 146:1-25<br>MIL, 401,402,403, 701<br><br>Defendant's Response:<br><br>"MIL" not clear |

| Deposition Designation | Objection & Response |
|---|---|
| | objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" and damages sought; testimony rationally based on witness' perception and job; helpful to determining a fact in issue and admissible under 701; not prejudicial to Plaintiffs but would be to Defendant if not allowed to provide understanding. |
| Page 147<br>1 that they -- that they controlled at least 12:33:34<br>2 Gaza, is that I believe that the Israelis had 12:33:37<br>3 conceded that to them sometime before. I 12:33:42<br>4 just have that recollection from listening to 12:33:44<br>5 the news, so... 12:33:48<br><br>15 Q. What information did you learn that was in 12:34:20<br>16 addition to what you already knew about 12:34:23<br>17 Hamas? 12:34:25<br>18 A. Well, for example, I learned the amount of 12:34:26<br>19 social services that they provided to the 12:34:29<br>20 residents of Gaza. I learned more about the 12:34:34<br>21 number of people who lived in Gaza. In the 12:34:37<br>22 Gaza strip, I should say. And how Hamas had 12:34:41 | Plaintiff's Objections:<br>Page 147:1-5; 147:15-25<br>MIL, 401,402,403, 701<br><br>Defendant's Response:<br><br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision and "bad faith" allegation; testimony rationally based on witness' |

| Deposition Designation | Objection & Response |
|---|---|
| 23 responded to their needs. I looked at what 12:34:50<br>24 their charter was and learned more 12:34:54<br>25 information about that. 12:34:57 | perception and job; helpful to determining a fact in issue and admissible under 701. |
| Page 148<br>1 Certainly gained more information 12:34:59<br>2 about difficulties between -- more recent 12:35:00<br>3 difficulties between Israel and the 12:35:07<br>4 Palestinians, some of whom are Hamas, that 12:35:12<br>5 sort of thing. 12:35:20 | Plaintiff's Objections:<br>Page 148:1-5<br>MIL, 401,402,403, 701<br><br>Defendant's Response:<br><br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision and "bad faith" allegation; testimony rationally based on witness' perception and job; helpful to determining a fact in issue and admissible under 701. |
| Page 150<br>2 Q. And after you began your investigation, did 12:37:30<br>3 that understanding change in any way? 12:37:32<br>4 A. Well, it certainly is clear to me -- it was 12:37:37<br>5 clear to me that the Palestinian people 12:37:40<br>6 believed that -- that Gaza was -- was part of 12:37:42<br>7 Palestine and not part of Israel, and that 12:37:48<br>8 the Israelis didn't hold the same opinion, 12:37:50<br>9 but weren't necessarily trying to overtake 12:37:54 | Plaintiff's Objections:<br>Page 150:2-14<br>MIL, 401,402,403, 701<br><br>Defendant's Response:<br><br>"MIL" not clear objection; ASIC's understanding and development of facts |

**1009**

| Deposition Designation | Objection & Response |
|---|---|
| 10 Gaza on a constant level the way they were in 12:37:56<br>11 some other areas of the West Bank where they 12:37:59<br>12 were continuing to try to put in settlements 12:38:02<br>13 over the objections of the Palestinians. So 12:38:03<br>14 that's what understood. 12:38:07<br>15 Q. Okay. But after you began your investigation 12:38:09<br>16 of the claim and undertook your research with 12:38:10<br>17 respect to the situation in -- in Gaza and in 12:38:13<br>18 Israel, did your understanding as to Israel's 12:38:17<br>19 willingness to permit Gaza to be controlled 12:38:25<br>20 by Palestinians, did that change in any way? 12:38:29<br><br>23 vague and ambiguous on "permitting." 12:38:36<br>24 THE WITNESS: The Israelis would 12:38:39<br>25 never say, "Okay, Palestinian government, you 12:38:41<br><br>Page 151<br>1 can now rule Gaza." But in terms of what 12:38:48<br>2 they were doing, I mean, there had been -- 12:38:52<br>3 you know, I think there was a point in time 12:38:54<br>4 in 2008 where they also had some kind of big 12:38:56<br>5 kerfuffle over that. 12:38:59<br>6 But at specific points in time, you 12:39:01<br>7 know, that's not -- that's not the area they 12:39:05<br>8 were trying to -- to take over so completely 12:39:07<br>9 that the Palestinians did not have any place 12:39:13<br>10 to live. 12:39:17<br>11 BY MS. COYOCA: 12:39:21<br>12 Q. So in other words, they might not be 12:39:21<br>13 expressly permitting it, but it was at their 12:39:24<br>14 sufferance? 12:39:28 | isrelevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought; testimony rationally based on witness' perception and job; helpful to determining a fact in issue and admissible under 701. |

| Deposition Designation | Objection & Response |
|---|---|
| | Plaintiff's Objections: Page 152:12-13 IO, 403 |
| | Defendant's Response |
| | Objection removed. |
| | Plaintiff's Objections: Page 154:4-5; 154:12-13; 154:20-21 IO, 403 |
| | Defendant's Response: "MIL" not clear objection; ASIC's understanding and development of facts isrelevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought |
| | Objection removed. |
| Page 156<br>2 Q. Okay. So at the time that you were 12:44:55<br>3 conducting your -- your investigation of the 12:44:56<br>4 claim, it was your understanding that Hamas 12:44:58 | Plaintiff's Objections: Page 156:2-7 MIL, 401,402,403 |
| | Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 5 was the majority of the Palestinian 12:45:03<br>6 parliament; is that correct? 12:45:05<br>7 A. Yes. 12:45:06<br><br>11 Q. And how did you form that understanding? 12:45:16<br>12 A. The Congressional Research Service talked 12:45:21<br>13 about the elections that took place in 2006 12:45:24<br>14 in which Hamas was elected as the majority of 12:45:28<br>15 the parliament and said that those were free 12:45:32<br>16 and fair elections, that was their 12:45:35<br>17 designation of them, and that -- that based 12:45:37<br>18 on the things that I had read, it appeared to 12:45:42<br>19 me that they still had maintained that -- 12:45:44<br>20 that majority. 12:45:47<br>21 Although, there was -- there was 12:45:48<br>22 something that happened in 2008 where Hamas 12:45:49<br>23 and Fatah were also trying to get together, 12:45:51<br>24 and it's not clear to me that they actually 12:45:53<br>25 formed an alliance at that time, or if it was 12:45:55<br><br>Page 157<br>1 an alliance, it was very short-lived. And 12:45:58<br>2 they had also tried to form another alliance 12:46:02<br>3 just shortly before this war broke out back 12:46:05<br>4 in June, I believe. 12:46:07<br>5 Q. What about 2007, did you take a look at any 12:46:14<br>6 of the -- did you review the status of Hamas 12:46:16<br>7 in terms of its relationship with any of the 12:46:23<br>8 other Palestinian organizations as of 2007? 12:46:26<br><br>12 THE WITNESS: Well, based on what 12:46:37<br>13 I recall, in 2006 there had been the free and 12:46:38<br>14 fair elections as designated by the CRS in 12:46:42 | "MIL" not clear objection; ASIC's understanding and development of facts relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought<br><br>Plaintiff's Objections:<br>Page 156:11-20<br>MIL, 401,402,403,802;<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" and damages sought. Information relied on not hearsay; not offered to prove truth of the matter. FRE 801; 803; not prejudicial to Plaintiffs but would be to Defendant if not allowed to provide understanding. |

| Deposition Designation | Objection & Response |
|---|---|
| 15 which Hamas gained control of the Palestinian 12:46:46<br>16 parliament and that they actually took 12:46:49<br>17 control of Gaza in 2007. I don't know if 12:46:50<br>18 that was in cooperation with another part 12:46:53<br>19 of -- of other Palestinian protections or 12:46:57<br>20 not. 12:47:02 | |
| Page 159<br>16 Q. When you were conducting your investigation 12:49:21<br>17 as of July 2014, was it your understanding 12:49:23<br>18 that the Palestinian parliament was the 12:49:26<br>19 government of Gaza or whether the government 12:49:32<br>20 was Hamas? 12:49:38<br><br>24 THE WITNESS: Based on the 12:49:46<br>25 understanding that I had, Hamas was the party 12:49:47 | Plaintiff's Objections:<br>Page 159:16-20;<br>159:24-25<br>MIL, 401,402,403,701<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and analysis of facts is relevant to reasonableness of claim decision, defense of "bad faith" and damages sought; testimony rationally based on witness' perception and job; helpful to determining a fact in issue and admissible under 701. |
| Page 160<br>1 that was supplying the military and 12:49:50<br>2 governmental services was making -- was 12:49:54<br>3 communicating with other countries, and that 12:49:58<br>4 the parliament was also participating, so I 12:50:01<br>5 don't know that it was an either/or 12:50:06<br>6 situation. 12:50:07 | Plaintiff's Objections:<br>Page 160:1-25<br>MIL, 401,402,403,701<br><br>Defendant's Response:<br><br>"MIL" not clear |

| Deposition Designation | Objection & Response |
|---|---|
| 7 BY MS. COYOCA: 12:50:11<br>8 Q. When you say that Hamas was communicating 12:50:11<br>9 with other countries, what do you mean by 12:50:15<br>10 that? 12:50:17<br>11 A. Well, I know that they -- they -- they got 12:50:17<br>12 assistance from Iran, they got assistance 12:50:20<br>13 from Turkey, they got assistance from Egypt, 12:50:23<br>14 they communicated with those countries with 12:50:26<br>15 regard to what their needs of their people 12:50:29<br>16 were, and that that's -- you know, there -- 12:50:30<br>17 there really was no way for them to make 12:50:31<br>18 money on their own. 12:50:34<br>19 There was no way to actually create 12:50:36<br>20 any kind of significant economic growth, 12:50:37<br>21 because it was such a small area and it was 12:50:40<br>22 such a large population and a very high 12:50:42<br>23 unemployment rate. So, primarily, a lot of 12:50:45<br>24 their resources came from other countries 12:50:48<br>25 that they negotiated with. 12:50:50<br><br>Page 161<br>1 Q. As of July 2014 when you were doing your 12:50:51<br>2 research, was it your understanding that the 12:50:55<br>3 government of Egypt approved of and aided 12:50:59<br>4 Hamas? 12:51:09<br>5 A. Well, they were -- 12:51:10<br><br>9 THE WITNESS: I think that -- that 12:51:19<br>10 Egypt, at that particular point in time -- I 12:51:26<br>11 think that at that point in time they did 12:51:30<br>12 recognize Palestine as a separate state, 12:51:31<br>13 along with Iran, Turkey, Russia, I think 12:51:34<br>14 Iraq, several other countries. 12:51:39<br>15 As I said, in 2012, the UN had 12:51:40<br>16 already determined that Palestine was a 12:51:43<br>17 nonmember observer state, so they had already 12:51:49 | objection; ASIC understanding and analysis of facts and policy relevant to reasonableness of claim decision, defense of "bad faith" and damages sought; not prejudicial to Plaintiffs but would be to Defendant if not allowed to provide understanding.<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 161:1-25<br>MIL, 401,402,403,701<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts and policy relevant to reasonableness of claim decision, defense of "bad faith" and damages sought; not prejudicial to Plaintiffs but exclusion would be prejudicial to |

| Deposition Designation | Objection & Response |
|---|---|
| 18 designated it as a state. 12:51:52<br>19 And since Hamas was a large player 12:51:53<br>20 in the government in general, in the 12:51:55<br>21 Palestinian parliament, I would say that -- 12:52:00<br>22 that, you know, while they might not have 12:52:01<br>23 endorsed that specific organization, they 12:52:03<br>24 certainly endorsed the state itself. 12:52:05<br><br>Page 167<br>18 Q. What was your understanding as to what was in 14:10:16<br>19 Hamas's charter that made the U.S. Government 14:10:18<br>20 consider it to be a terrorist organization? 14:10:20<br>21 A. Well, part of the charter of Hamas, as far as 14:10:23<br>22 I understand it, is that it wants the – it 14:10:26<br>23 will never acknowledge Israel and it wants 14:10:29<br>24 the destruction of Israel. 14:10:31<br>25 Q. Anything else? 14:10:35<br><br>Page 168<br>1 A. Well, it wants to reclaim its homeland. It 14:10:36<br>2 claims that Israel is actually Palestinian 14:10:39<br>3 territory. 14:10:45<br><br>Page 169<br>15 Q. During your investigation you came to a 14:12:37<br>16 conclusion that the U.S. considered Hamas to 14:12:39<br>17 be a terrorist organization; is that correct? 14:12:42<br>18 A. Yes.<br>22 Q. Did you do any investigation or perform any 14:12:47<br>23 analysis with respect to the impact of that 14:12:53<br>24 status as a terrorist organization on the 14:12:58<br>25 claim itself? | Defendant. |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 170</u><br>3 THE WITNESS: Based on what was 14:13:10<br>4 happening in Israel and the Gaza strip at the 14:13:12<br>5 time of the claim, whether or not Hamas was a 14:13:16<br>6 terrorist organization was not relevant to my 14:13:18<br>7 analysis. 14:13:22<br>8 BY MS. COYOCA: 14:13:23<br>9 Q. Was there a terrorism exclusion on the 14:13:36<br>10 policy? 14:13:38<br>11 A. Well, I'm not sure what you mean by a 14:13:41<br>12 terrorism exclusion. There was nothing 14:13:44<br>13 specifically in the policy that said acts of 14:13:46<br>14 terrorism are excluded. 14:13:49<br>15 But, certainly, the fact that there 14:13:52<br>16 was a war exclusion if the terrorist act also 14:13:55<br>17 involved warlike weapons, was part of an 14:13:58<br>18 insurrection, I mean, war and terrorism are 14:14:02<br>19 not usually exclusive, you can have the same 14:14:05<br>20 things happening, you can have terrorist acts 14:14:08<br>21 during acts of war. So I didn't see those as 14:14:11<br>22 mutually exclusive things. 14:14:14<br>23 So if -- if the terrorist attack 14:14:15<br>24 also involved one of the criteria that is 14:14:17<br>25 found in the war exclusion, then the claim 14:14:19 | <u>Plaintiff's Objections:</u><br>Page 170:1-3<br>IO,403<br><br><u>Defendant's Response:</u><br> Objection deleted<br><br><br><u>Plaintiff's Objections:</u><br>Page 170:9-25<br>MIL, NR,402,403,701<br><br><u>Defendant's Response:</u><br>"MIL" not clear objection; ASIC's understanding and evaluation of facts and Policy are relevant to reasonableness of claim decision, defense of "bad faith" and damages sought; testimony rationally based on witness' perception and job; helpful to determining a fact in issue and admissible under 701; not prejudicial to Plaintiff but exclusion would be prejudicial to Defendant. |
| <u>Page 171</u><br>1 would be excluded. 14:14:21<br>2 If it did not, then there's a 14:14:22<br>3 potential for coverage depending on the other 14:14:26 | <u>Plaintiff's Objections:</u><br>Page 171:1-6<br>MIL, NR,402,403,701 |

| Deposition Designation | Objection & Response |
|---|---|
| 4 surrounding circumstances and whether or not 14:14:29<br>5 the circumstances fall within the coverage 14:14:31<br>6 grant in the first place. 14:14:33<br><br>Page 172<br>10 Q. When you were analyzing the claim and making 14:15:42<br>11 a claim determination, was it important to 14:15:47<br>12 your analysis that you understand the meaning 14:15:49<br>13 of the term, "War," as it's used in the war 14:15:51<br>14 exclusion? 14:15:54<br>15 A. Well, I mean, I think that -- yes, certainly 14:15:55<br>16 it is. Yes. 14:15:59 | Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and evaluation of facts are relevant to reasonableness of claim decision, defense of "bad faith" and damages sought; testimony rationally based on witness' perception and job; helpful to determining a fact in issue and admissible under 701. |
| Page 174<br>10 Q. So in the context of the analysis that you 14:17:35<br>11 were performing in July of 2014 with respect 14:17:38<br>12 to the Dig claim, did you look at whether the 14:17:40<br>13 acts that were taking place in Israel at the 14:17:44<br>14 time, whether or not those could be 14:17:48<br>15 considered acts of terrorism? 14:17:50<br><br>19 THE WITNESS: That was certainly 14:17:58<br>20 the position that Susan Weiss took. I didn't 14:17:59<br>21 see what was happening in Israel to be -- 14:18:03<br>22 whether it was defined as an act of 14:18:08<br>23 terrorism, it was still an act of war or 14:18:10<br>24 warlike actions or an insurrection, 14:18:13<br>25 rebellion, et cetera. It still fell within 14:18:17 | Plaintiff's Objections:<br>Page 174:19-25<br>MIL, 402,403,701<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" and damages sought; testimony rationally based on witness' perception and job responsibilities and helpful to determining a |

| Deposition Designation | Objection & Response |
|---|---|
| | fact in issue and admissible under 701. |
| <u>Page 175</u><br>1 that definition based on the actions that 14:18:19<br>2 were taking place no matter what you called 14:18:21<br>3 it. 14:18:23<br>4 BY MS. COYOCA: 14:18:23<br>5 Q. Okay. But separate and apart from whether or 14:18:23<br>6 not the acts constituted, in your view, acts 14:18:27<br>7 of war or insurrection or any of the other 14:18:29<br>8 war exclusions, I'm just trying to focus on 14:18:34<br>9 whether, as part of your analysis, you also 14:18:37<br>9 looked at the issue of whether the acts that 14:18:39<br>10 were at issue, Hamas's conduct, whether or 14:18:42<br>11 not those were acts of terrorism? 14:18:45<br>12 A. Well, I think that -- that, again, it's going 14:18:47<br>13 to depend on your definition of terrorism<br>14. well, I think that that, again it's going 14:18:49<br>15 My understanding is that the reaction of 14:18:52<br>16 Hamas and its violence towards the Israeli 14:18:56<br>17 people, when it starts shooting, you know, a 14:19:04<br>18 number of rockets into areas that it did not 14:19:06<br>19 usually attack, was based on the fact that 14:19:08<br>20 there had been -- you know, there had been 14:19:11<br>21 kidnapping of Israeli students. 14:19:14<br>22 So I don't think that the act of 14:19:17<br>23 firing these rockets was meant to persuade 14:19:21<br>24 the Israeli people not to kidnap people 14:19:24<br>25 anymore. I mean, most Israelis would already 14:19:27 | <u>Plaintiff's Objections:</u><br>Page 175:1-25<br>MIL, 402,403,701<br><br><u>Defendant's Response:</u><br>"MIL" not clear objection; ASIC 's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" and damages sought; testimony rationally based on witness' perception and job responsibilities and helpful to determining a fact in issue and admissible under 701. |
| <u>Page 176</u><br>1 have that, and it was not an act of the 14:19:31<br>2 government in kidnapping these people, so I 14:19:33<br>3 don't think that they were trying to coerce 14:19:35 | <u>Plaintiff's Objections:</u><br>Page 176:1-5<br>MIL, 402,403,701 |

| Deposition Designation | Objection & Response |
|---|---|
| 4 the Israeli people into necessarily adopting 14:19:37<br>5 a particular position. 14:19:40<br><br><u>Page 181</u><br>6 Q. You indicated in your research. Did you 14:25:30<br>7 perform research as to what constituted an 14:25:34<br>8 act of terrorism in connection with your 14:25:36<br>9 analysis of the Dig claim? 14:25:38<br>10 A. I believe I did. 14:25:39<br>11 Q. What did you do? 14:25:40<br>12 A. The same things that I've already described 14:25:41<br>13 to you. 14:25:43<br><br><u>PLAINTIFFS' 106 COUNTER-DESIGNATION:</u><br><br><u>Page 181</u><br>14 Q. Did you -- did you review cases that 14:25:45<br>15 specifically addressed the definition of 14:25:47<br>16 terrorism? 14:25:51<br>17 A. I'm sure I might have done that as a -- as a 14:25:53<br>18 Westlaw search. I don't recall as I sit here 14:25:57<br>19 today. 14:25:59<br>20 Q. Did you review cases that talked about the 14:26:02<br>21 intersection between terrorism and war? 14:26:05<br><br>24 THE WITNESS: Well, I think that 14:26:12<br>25 they talked about that in the Pan Am case. 14:26:13<br><br><u>Page 182</u><br>2 Q. Other than the Pan Am case? 14:26:16<br>3 A. And I think they talked about that in the -- 14:26:17<br>4 in the Twin Towers, the 9/11 cases as well. 14:26:21<br>5 Q. When you say, "The 9/11 cases," what cases 14:26:23<br>6 are you referring to? 14:26:26<br>7 A. I'm sorry, I don't remember their names. If 14:26:27<br>8 you'd like to show me a case and ask if I 14:26:29 | <u>Defendant's Response:</u><br><br>"MIL" not clear objection; ASIC 's understanding and evaluation of facts is relevant to reasonableness of claim decision, defense of "bad faith" and damages sought; testimony rationally based on witness' perception and job responsibilities and helpful to determining a fact in issue and admissible under 701. |

| Deposition Designation | Objection & Response |
|---|---|
| 9 looked at it, I'd be happy to tell you yes or 14:26:32<br>10 no. 14:26:35<br>11 Q. Did you review any cases that you can 14:26:38<br>12 remember the specific name of in the context 14:26:41<br>13 of doing your research as to the Dig claim 14:26:43<br>14 that discussed the intersection between 14:26:47<br>15 terrorism and acts of war other than the 14:26:53<br>16 specific cases you've just referenced? 14:26:57<br>19 THE WITNESS: I may have. I don't 14:27:01<br>20 remember exactly what the Wilkinson case said 14:27:03<br>21 about that, and there may have been other 14:27:06<br>22 cases that I looked at. I mean, this was 14:27:08<br>23 quite a while ago, I don't remember every<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 183<br>1 Q. As part of your analysis, did you come to any 14:27:17<br>2 conclusions as to whether the acts of -- that 14:27:19<br>3 were in controversy in the summer of 2014, 14:27:24<br>4 did you come to any conclusions as to whether 14:27:26<br>5 they were acts of terrorism? 14:27:28<br><br>8 THE WITNESS: I don't know that I 14:27:37<br>9 reached a specific conclusion. I mean, the 14:27:38<br>10 reason that I was taking a look at that was 14:27:41<br>11 because Susan Weiss and Andrea Garber both 14:27:43<br>12 continued to say that this could not -- the 14:27:47<br>13 war exclusion could not apply because this 14:27:49<br>14 was an act of terrorism. What I determined 14:27:51<br>15 is whether it was an act of terrorism or not, 14:27:54<br>16 the war exclusion still applied. 14:27:58 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 183:6-774:19-25<br>IO,403<br><br>Defendant's Response:<br><br>Objections removed. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 185<br>20 Q. Do you recall coming to a conclusion one way 14:30:20<br>21 or the other? 14:30:22<br>24 THE WITNESS: All I can do is tell 14:30:27<br>25 you that when I was doing my analysis, I 14:30:28<br><br>Page 186<br>1 looked at the definitions of terrorism 14:30:32<br>2 because Susan and Andrea were convinced that 14:30:34<br>3 if it was an act of terrorism, it could not 14:30:37<br>4 also be an act of war. And what I determined 14:30:39<br>5 is regardless of whether it was an act of 14:30:42<br>6 terrorism, the war exclusion still applied. 14:30:46<br><br>8 Q. In the context of coming to your conclusions 14:30:56<br>9 in the summer of 2014 that the claim was 14:31:00<br>10 excluded by the war exclusions, did you think 14:31:03<br>11 it was important to understand the status of 14:31:07<br>12 Hamas as it was viewed by the U.S. 14:31:11<br>13 Government? 14:31:13<br><br>18 THE WITNESS: As part of my 14:31:27<br>19 analysis, I did not specifically go out to 14:31:28<br>20 find whether or not the U.S. had defined 14:31:30<br>21 Hamas as a terrorist organization. 14:31:32<br>22 What I looked at was the activity 14:31:34<br>23 between Hamas and Israel, and then I made a 14:31:37<br>24 determination based on the activity between 14:31:43<br>25 these two entities that this was war, a 14:31:45<br><br>Page 187<br>1 warlike action or an insurrection or 14:31:48<br>2 rebellion. 14:31:53<br>3 BY MS. COYOCA: 14:31:54 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 187:16-25<br>MIL, 104a,402,403,701<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 4 Q. In the context of your analysis that you 14:31:54<br>5 performed in the summer of 2014, did you look 14:31:56<br>6 at whether Hamas was a sovereign entity? 14:31:58<br>9 THE WITNESS: Yes, I did. 14:32:11<br>10 BY MS. COYOCA: 14:32:12<br>11 Q. Did you come to a conclusion? 14:32:13<br>12 A. My conclusion was is that they were a 14:32:14<br>13 quasi-sovereign nation, and perhaps a 14:32:18<br>14 sovereign nation depending on how you define 14:32:21<br>15 that term. 14:32:24<br>16 Q. In the summer of 2014 when you were 14:32:35<br>17 performing your analysis, did you believe 14:32:37<br>18 that Hamas needed to be either a sovereign or 14:32:39<br>19 quasi-sovereign entity in order for the 14:32:42<br>20 hostilities between Israel and Hamas to 14:32:44<br>21 constitute war? 14:32:47<br>22 A. Not necessarily. 14:32:48<br>23 Q. Why not? 14:32:50<br>24 A. Well, we've been fighting a war in 14:32:51<br>25 Afghanistan for quite a long time against the 14:32:55<br><br><br>Page 188<br>1 Taliban. We call it a war. It's defined as 14:32:58<br>2 a war by our government and every other 14:33:01<br>3 government in the world. The Taliban do not 14:33:04<br>4 control any particular territory in 14:33:07<br>5 Afghanistan, they are not the government of 14:33:09<br>6 Afghanistan, they are not a sovereign nation, 14:33:12<br>7 and yet we still have a war. 14:33:15<br><br>Pages 192<br>17 Q. When did you first consider the possibility 14:38:13<br>18 of application of the war exclusion to the 14:38:17 | "MIL" not clear objection; ASIC 's understanding and evaluation of facts is relevant to reasonableness of claim decision, defense of "bad faith" and damages sought; testimony rationally based on witness' perception and job responsibilities and helpful to determining a fact in issue and admissible under 701;it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the requirements of FRE 602<br><br><br>Plaintiff's Objections:<br>Page 188:1-7<br>MIL, 104a,402,403,701<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC 's understanding and development of facts is relevant to reasonableness of claim decision, defense of |

**1022**

| Deposition Designation | Objection & Response |
|---|---|
| 19 claim? 14:38:19<br>20 A. It was after the first conversation that we 14:38:21<br>21 had. And I can't tell you how far after that 14:38:23<br>22 it was, but when I had the initial 14:38:29<br>23 conversation with Danny and Andrea and Susan, 14:38:33<br>24 I certainly did not have a comprehensive view 14:38:37<br>25 of what was happening in Israel. So that was 14:38:40<br><br>Page 193<br>1 not, you know, until I actually got into the 14:38:44<br>2 meat of what was happening there. That was 14:38:47<br>3 not something that was at the forefront of my 14:38:48<br>4 mind certainly. 14:38:52<br>5 Q. Did you first begin considering the 14:38:53<br>6 application of the war exclusion a week after 14:38:56<br>7 the conversation with Ms. Garber and 14:38:59<br>8 Ms. Weiss? 14:39:02<br>9 A. No. 14:39:02<br>10 Q. Was it within five days? 14:39:04<br>11 A. Well, I think we talked on a Monday and then 14:39:08<br>12 we had -- we had said we were going to talk 14:39:12<br>13 again on a Friday, but instead we talked on 14:39:15<br>14 Thursday, because the matter had escalated to 14:39:19<br>15 such a degree. 14:39:21<br>16 And what Susan had previously -- 14:39:22<br>17 Susan and Andrea had previously wanted to do 14:39:24<br>18 is, "All right, let's wait until Friday, 14:39:27<br>19 let's see if things deescalate." Well, by 14:39:29<br>20 Thursday it was already clear that things 14:39:31<br>21 were escalating rather than deescalating, and 14:39:34<br>22 so the push for just a week was probably not 14:39:36<br>23 going to be sufficient in their minds to be 14:39:39<br>24 able to bring their people back, things were 14:39:42 | "bad faith" and damages sought; testimony rationally based on witness' perception and job responsibilities and helpful to determining a fact in issue and admissible under 701; it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the requirements of FRE 602. |

| Deposition Designation | Objection & Response |
|---|---|
| 25 getting more elevated rather than 14:39:44<br><br>Page 194<br>1 deescalated. 14:39:47<br>2 Q. Within that time period of you believe the 14:39:49<br>3 conversation that took place on a Monday you 14:39:53<br>4 indicated -- 14:39:56<br>5 A. I think it was on a Monday. 14:39:56<br>6 Q. -- and the Thursday when the next 14:39:58<br>7 conversation took place with Ms. Weiss and 14:40:01<br>8 Ms. Garber, when during that four-day time 14:40:03<br>9 period did you begin considering application 14:40:06<br>10 of the war exclusion? 14:40:07<br>11 A. I can't tell you that. I don't remember. 14:40:09<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 194<br><br>12 Q. Was it the following day? 14:40:11<br>13 A. I told you I don't remember. 14:40:13<br>14 Q. I understand that you may not recall, but I'm 14:40:15<br>15 entitled to probe your recollection and see 14:40:17<br>16 if I can obtain a better answer as to your 14:40:19<br>17 best recollection of the events. 14:40:22<br>18 Was it by the next -- by -- by 14:40:25<br>19 Wednesday? 14:40:27<br>20 A. I don't recall. 14:40:31<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 194<br><br>21 Q. Do you believe that you first began analyzing 14:40:33<br>22 the war exclusion on the same day that you 14:40:36 | |

| Deposition Designation | Objection & Response |
|---|---|
| 23 had the conversation, the second conversation 14:40:38 <br> 24 with Ms. Weiss and Ms. Garber? 14:40:40 <br> 25 A. On the Thursday? 14:40:45 <br><br> Page 195 <br> 1 Q. Uh-huh. 14:40:46 <br> 2 A. No. 14:40:47 <br> 3 Q. Was it before that? 14:40:48 <br> 4 A. Yes. 14:40:49 <br> 5 Q. Who first raised the war exclusion as between 14:40:57 <br><br> PLAINTIFFS' 106 COUNTER-DESIGNATION: <br><br> Page 195 <br><br> 5 Q. Who first raised the war exclusion as between 14:40:57 <br> 6 yourself and Mr. Gutterman? 14:41:03 <br> 7 A. I don't remember. 14:41:07 <br><br> END PLAINTIFFS' 106 COUNTER-DESIGNATION <br><br> Page 195 <br><br> 8 Q. Between the -- what you indicated was a 14:41:17 <br> 9 Monday when you believe you may have had the 14:41:21 <br> 10 first conversation with Ms. Weiss and 14:41:24 <br> 11 Ms. Garber, and the Thursday, did you have 14:41:25 <br> 12 any conversations with Mr. Williams with 14:41:27 <br> 13 respect to potential applicability of the war 14:41:30 <br> 14 exclusion? 14:41:33 <br> 15 MS. REED: Objection; misstates 14:41:33 <br> 16 the witness's prior testimony. 14:41:34 <br> 17 THE WITNESS: Yes. 14:41:36 | |

| Deposition Designation | Objection & Response |
|---|---|
| PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 195<br><br>18 BY MS. COYOCA: 14:41:38<br>19 Q. When did you speak with him? 14:41:38<br>20 A. I don't remember specifically. 14:41:40<br>21 Q. Did you have more than one conversation? 14:41:44<br>22 A. Again, I don't remember specifically. I 14:41:47<br>23 think it's probable that we had more than one 14:41:50<br>24 conversation. 14:41:52<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 195<br><br>25 Q. What did you discuss? 14:41:54<br><br>Page 196<br>1 A. Whether or not the war exclusion applied. 14:41:55<br>2 Q. What did you tell Mr. Williams? 14:41:58<br>3 A. I don't remember specifically what I told 14:42:01<br>4 him. I'm sure that what I was relaying is 14:42:03<br>5 the information we had found in our research. 14:42:08<br>6 Q. Did you tell Mr. Williams that you believed 14:42:10<br>7 that the war exclusion applied? 14:42:13<br>8 A. Yes. 14:42:14<br><br>14 Q. Did you discuss with him -- well, what -- 14:42:31<br>15 what parts of the war exclusion did you -- do 14:42:34<br>16 you recall discussing with him? 14:42:36<br>17 A. I think that -- that we talked about whether 14:42:37<br>18 or not it was war, if it wasn't war, it was 14:42:41<br>19 at least warlike action, and if -- if in fact 14:42:44<br>20 that it was just an uprising within Israel, 14:42:50<br>21 it would still be considered an insurrection, 14:42:54 | |

| Deposition Designation | Objection & Response |
|---|---|
| 22 and that the weapons they were using were 14:42:59<br>23 weapons of war. 14:43:02<br>24 Q. And you recall discussing with Mr. Williams 14:43:03<br>25 that -- your position that the weapons that 14:43:06age 196 – 198<br><br>Page 197<br>1 were being used were weapons of war; is that 14:43:08<br>2 correct? 14:43:13<br>3 A. Well, tanks, air bombings, rockets, yes, I 14:43:13<br>4 consider those to be weapons of war. 14:43:18<br>5 Q. My question to you is: Did you tell that to 14:43:20<br>6 Mr. Williams during that conversation? 14:43:23<br>7 A. Well, I think that I explained to him what 14:43:25<br>8 was happening in Israel. 14:43:28<br>9 Q. My question is: Did you specifically tell 14:43:30<br>10 Mr. Williams that you believed the weapons of 14:43:32<br>11 war, including atomic fission or radioactive 14:43:36<br>12 force, exclusion applied to the Dig claim? 14:43:41<br>13 A. I don't know if we specifically -- if I said 14:43:45<br>14 that to him specifically. I know that we 14:43:47<br>15 talked about the first four categories of the 14:43:49<br>16 war exclusion. 14:43:52<br>17 Q. Do you recall specifically discussing the 14:43:58<br>18 insurrection, rebellion or revolution, third 14:44:00<br>19 prong of the war exclusion, with Mr. Williams 14:44:04<br>20 during that period between the Monday when 14:44:07<br>21 you say the conversation first occurred and 14:44:09<br>22 the Thursday when the second conversation 14:44:12<br>23 occurred with Ms. Weiss and Ms. Garber? 14:44:13<br>24 A. I probably did, because I was looking at all 14:44:16<br>25 four of those -- those prongs of the war 14:44:19 | <br><br><br><br><br>Plaintiff's Objections:<br>Page 197:1-25<br>MIL,402,403,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC 's work to evaluate and understand the facts is relevant to reasonableness of claim decision, defense of "bad faith" and damages sought.  No hearsay included. |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 198</u><br>1 exclusion, but I don't remember specifically. 14:44:21<br>2 Q. What did Mr. Williams tell you in response? 14:44:27<br>3 A. He didn't disagree with the analysis that we 14:44:30<br>4 had made. He agreed that the war exclusion 14:44:33<br>5 applied. 14:44:35<br><br>14 Q. Did you have -- during that four-day period 14:45:01<br>15 between the Monday and the Thursday, did you 14:45:03<br>16 have any conversations with Ms. Gooley about 14:45:05<br>17 the potential application of the war 14:45:07<br>18 exclusion? 14:45:08<br>19 A. I probably did. I mean, I would not have 14:45:09<br>20 been raising it with the policyholder without 14:45:12<br>21 talking to her about it. I -- I -- I don't 14:45:19<br>22 think that I would have done that without 14:45:20<br>23 discussing it with her, because I would want 14:45:22<br>24 to know whether on an enterprise basis there 14:45:24<br>25 has been interpretations of that particular 14:45:28<br><br><u>Page 199</u><br>1 exclusion in other departments. 14:45:31<br>2 Q. What did Ms. Gooley tell you? 14:45:35<br>3 A. With regard to what? 14:45:39<br>4 Q. With respect to whether or not, on an 14:45:40<br>5 enterprise basis, there had been other 14:45:44<br>6 interpretations of the exclusion. 14:45:46<br>7 A. She didn't know. She was going to look into 14:45:47<br>8 it. 14:45:50<br>9 Q. Did she ever get back to you? 14:45:50<br>10 A. Yes. 14:45:51<br>11 Q. What did she tell you? 14:45:52<br>12 A. She said that there had not been any other 14:45:53 | |

| Deposition Designation | Objection & Response |
|---|---|
| 13 interpretations from the information she 14:45:55<br>14 could gather. You have to remember what 14:45:58<br>15 OneBeacon existed long before Theresa or I 14:46:01<br>16 ever came to that organization. It's a very 14:46:04<br>17 old company. 14:46:06<br><br>21 Q. Did you have more than one conversation with 14:46:18<br>22 Ms. Gooley? 14:46:24<br>23 A. At what period of time? 14:46:24<br>24 Q. During the period from the Monday when you 14:46:25<br>25 say the first conversation took place with 14:46:27<br><br>Page 200<br>1 Ms. Weiss and Ms. Garber -- 14:46:29<br>2 A. Yes. 14:46:29<br>3 Q. -- and the Thursday when the second 14:46:31<br>4 conversation took place. 14:46:32<br>5 A. Yes. 14:46:33<br>6 Q. How many conversations? 14:46:33<br>7 A. I don't know. And I'm not sure if they were 14:46:35<br>8 necessarily -- if there was necessarily more 14:46:38<br>9 than one conversation or if it was a 14:46:40<br>10 conversation, then a series of e-mails. I 14:46:42<br>11 just can't recall. But we certainly had 14:46:44<br>12 communication. 14:46:46<br>13 Q. Did Ms. Gooley ask you what you had done in 14:46:51<br>14 order to come to your conclusions? 14:46:54<br>15 A. I don't know if she asked me. I certainly 14:46:56<br>16 told her. 14:46:59<br><br>Page 201<br><br>Page 212<br>1 I might have. I can't tell just by reading 15:01:03<br>2 this e-mail where I was in my research and 15:01:05 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 201:12-13<br>IO,403<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 3 what my thought process was. I can't tell 15:01:08<br>4 you just by looking at that, I can't tell. 15:01:12<br><br>11 Q. In Mr. William's response to you, with a cc 15:01:43<br>12 to Mr. Gutterman, he indicates, begin quotes, 15:01:49<br>13 "Why it is not a covered claim? They have 15:01:51<br>14 imminent peril, unless you are going to 15:01:54<br>15 invoke the war exclusion," close quotes. 15:01:55<br>16 What did you understand him to be saying in 15:01:59<br>17 this e-mail to you? 15:02:01<br>18 A. I -- what I understood him to be saying is 15:02:02<br>19 that -- that he was misinterpreting what I 15:02:05<br>20 had said in -- in my previous e-mail. I 15:02:07<br>21 wasn't saying that it was not -- that it was 15:02:10<br>22 necessarily not a covered claim. I was just 15:02:11<br>23 relating to him what we had talked about in 15:02:14<br>24 the conversation with Susan and Andrea. 15:02:17<br><br>Page 213<br>10 Q. Did you write back to him and indicate that 15:02:37<br>11 he had misinterpreted what you were saying in 15:02:39<br>12 your e-mail? 15:02:41<br>13 A. No. At that point we were setting up a call. 15:02:43<br><br>21 Q. The next e-mail in the chain is from 15:03:10<br>22 Daniel Gutterman to you and to Mr. Williams, 15<br><br>Page 215<br>19 Q. The next e-mail in the chain is from you to 15:05:01<br>20 Mr. Gutterman, and it appears to be 15:05:05<br>21 forwarding a link to a U.S. Government site 15:05:07<br>22 with respect to foreign travel advice. Do 15:05:11<br>23 you see that? 15:05:14 | Objection removed. |

| Deposition Designation | Objection & Response |
|---|---|
| 24 A. No, that's the UK Government site. 15:05:15<br>25 Q. Oh, I'm sorry, UK Government site. 15:05:17<br><br><u>Page 216</u><br>1 A. Yes, that's true. 15:05:20<br>2 Q. Did you send that e-mail to Mr. Gutterman? 15:05:22<br>3 A. I did. 15:05:24<br>4 MS. COYOCA: I'd like to mark as 15:05:29<br>5 Exhibit 4 a document that is labeled, 15:05:30<br>6 "Internet Archive: Wayback Machine, Israel 15:05:38<br>7 Travel Advice-gov.uk." 15:05:38<br><br><u>Page 217</u><br>19 Q. Do you believe that what I marked as 15:07:29<br>20 Exhibit 4 is an accurate reflection of the UK 15:07:31<br>21 Israel travel advice that existed as of 15:07:36<br>22 July 2014? 15:07:40<br><br>24 THE WITNESS: It appears to be. I 15:07:44<br>25 have no reason to think it isn't. 15:07:45<br><br><u>Page 218</u><br>1 BY MS. COYOCA: 15:08:02<br>2 Q. Did you subsequently have a telephone 15:08:03<br>3 conversation with Mr. Williams and 15:08:04<br>4 Mr. Gutterman on the 16th? 15:08:06<br>5 A. I believe we did. 15:08:09<br>6 Q. Was there anyone on the call aside from 15:08:14<br>7 yourself and Mr. Gutterman and Mr. Williams? 15:08:16<br>8 A. Not that I recall. 15:08:18<br>9 Q. What did you discuss? 15:08:25<br>10 A. We discussed what was happening in -- in 15:08:29<br>11 Israel and we discussed the information that 15:08:34<br>12 both Danny, and I had researched with regard 15:08:42<br>13 to what was happening there, and I think we 15:08:46<br>14 discussed the war exclusion. 15:08:51 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 217:23<br>IO,403<br><br>Defendant's Response:<br>Objection removed. |

| Deposition Designation | Objection & Response |
|---|---|
| PLAINTIFFS' 106 COUNTER-DESIGNATION: | |

Page 218

15 Q. When did the conversation take place, to the 15:08:59
16 best of your recollection, on the 16th? 15:09:04
17 A. I can't remember specifically. Based on the 15:09:07
18 e-mail string that you showed me before, it 15:09:09
19 looks like we set it up for 2 o'clock ET. I 15:09:11
20 don't know if it went forward at that 15:09:16
21 particular time or not. 15:09:17

END PLAINTIFFS' 106 COUNTER-DESIGNATION


Page 219
4 Q. Do you recall generally? 15:09:38
5 A. Well, generally, we talked about what I just 15:09:39
6 told you, what was the situation in Israel, 15:09:41
7 and the fact that the policy contains the war 15:09:45
8 exclusion, and the information that we had 15:09:47
9 found about the situation in Israel both 15:09:50
10 before NBC went there and what the current 15:09:52
11 situation was. 15:09:56


PLAINTIFFS' 106 COUNTER-DESIGNATION:

Page 219

12 Q. Did you tell Mr. Williams that you believed 15:09:58
13 the war exclusion applied? 15:10:01
14 A. I don't know if I said that specifically to 15:10:04
15 him then. I probably indicated that I 15:10:06

| Deposition Designation | Objection & Response |
|---|---|
| 16 thought that it was probable. 15:10:08<br>17 Q. Did you tell him what part of the war 15:10:13<br>18 exclusions you thought were probably going to 15:10:15<br>19 apply? 15:10:17<br>20 A. I don't recall. I don't think I would have 15:10:18<br>21 been specific. 15:10:20<br>22 Q. Did you tell Mr. Williams anything else? 15:10:23<br>23 A. I'm sorry, I just don't remember. 15:10:27<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br><br>Page 220<br>7 Q. Did Mr. Williams respond to you during that 15:10:53<br>8 phone conversation in any way? 15:10:56<br>9 A. I'm sure he did. 15:11:00<br>10 Q. Do you recall anything about what he said to 15:11:03<br>11 you in response? 15:11:08<br>12 A. I don't recall specifically what he said in 15:11:10<br>13 that conversation, no. 15:11:12<br>14 Q. Do you recall his position generally with 15:11:14<br>15 respect to the application of the war 15:11:16<br>16 exclusion during this time period? 15:11:18<br>17 A. He thought that the war exclusion applied. 15:11:19<br><br>22 Q. What did you tell him that you had done in 15:11:40<br>23 order to form this conclusion that the war 15:11:44<br>24 exclusions applied? 15:11:47<br>25 A. I think I told him about the research that we 15:11:54<br><br><br>Page 221<br>1 had been conducting, what the situation was 15:11:57<br>2 on the ground, what the basis of the 15:12:00 | <br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 220:22-25<br>MIL, 401,402,403,701<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC 's understanding and evaluation of facts is relevant to reasonableness of claim decision, defense of "bad faith" and damages sought; testimony rationally based on witness' perception and job responsibilities and helpful to determining a fact in issue and admissible under 701.<br><br><br>Plaintiff's Objections:<br>Page 221:1-25<br>MIL, 401,402,403,701 |

| Deposition Designation | Objection & Response |
|---|---|
| 3 situation was on the ground, what Israel was 15:12:02<br>4 saying with regard to Operation Protective 15:12:06<br>5 Edge, the actual activities of both the 15:12:11<br>6 Israeli Army and Hamas on the ground. 15:12:16<br>7 Q. What did you tell him with respect to what 15:12:20<br>8 Israel -- Israel was saying with regard to 15:12:23<br>9 Operation Protective Edge? 15:12:27<br>10 A. Well, I think that at this point in time -- 15:12:27<br>11 well, I can't be sure of the exact -- the 15:12:34<br>12 exact time. But at some point in time, I 15:12:37<br>13 know that they were readying their troops to 15:12:40<br>14 take tanks across the Gaza border, that they 15:12:42<br>15 had put 18,000 troops on the ground, that 15:12:46<br>16 they were conducting air strikes and there 15:12:49<br>17 was still rockets coming across in the other 15:12:52<br>18 direction, some of which were being captured 15:12:56<br>19 by Iron Dome, others which were not, and that 15:12:57<br>20 a cease fire had been proposed by Egypt, that 15:13:00<br>21 Hamas had turned it down, and that the 15:13:04<br>22 Israeli prime -- Netanyahu had said, you 15:13:07<br>23 know, when the answer -- "When they won't 15:13:11<br>24 agree to a cease fire, our response is fire." 15:13:13 | Defendant's Response:<br>"MIL" not clear objection; ASIC 's understanding and analysis of denial development is relevant to reasonableness of claim decision, defense of "bad faith" and damages sought; testimony rationally based on witness' perception and job responsibilities and helpful to determining a fact in issue and admissible under 701. |
| Page 225<br>19 Q. Ultimately, when the claim was denied, did 15:18:06<br>20 you identify all four of these exclusions as 15:18:09<br>21 being directly applicable to the claim? 15:18:12<br>22 A. I did, and I think I also identified 15:18:14<br>23 Number 8. 15:18:16<br><br>Page 237<br>8 Q. Did you ever search for any other terms when 15:43:19<br>9 you were doing your research? 15:43:30<br>10 A. Oh, I'm sure I did. As I sit here today, I 15:43:32<br>11 can't tell you what they were. But, I mean, 15:43:35 | Plaintiff's Objections:<br>Page 220:22-25<br>MIL, 402,403,802<br><br>Defendant's Response:<br>Assuming this objection is intended for page 225, not 220, "MIL" not clear objection; ASIC 's understanding and claim evaluation is relevant to reasonableness of claim |

| Deposition Designation | Objection & Response |
|---|---|
| 12 I spent many hours looking at this and doing 15:43:37<br>13 searches online. 15:43:39<br>14 Q. And the many hours took place from what time 15:43:40<br>15 period, from when to when? 15:43:45<br>16 A. From when we first talked to Susan and Andrea 15:43:47<br>17 until we talked to them again and made them 15:43:54<br>18 aware that we thought that the war exclusion 15:43:58<br>19 might apply. I continued to do research 15:44:03<br>20 after that just to see if there were changes 15:44:04<br>21 in conditions, because, as you know, it was a 15:44:08<br>22 quickly moving situation. And, you know, I 15:44:10<br>23 can't tell you specifically when I stopped 15:44:16<br>24 doing research about it, but I continued to 15:44:17<br>25 do some for quite some time. 15:44:20<br><br>Page 238<br>1 Q. Were you continuing to do research in August 15:44:22<br>2 of 2014? 15:44:25<br>3 A. Well, I kept track of what was happening with 15:44:29<br>4 regard to the hostilities between -- between 15:44:31<br>5 Hamas and the Israelis throughout the entire 15:44:40<br>6 time that the conflict was going on. I can't 15:44:44<br>7 tell you specifically that I looked at it 15:44:46<br>8 every day, but I certainly wanted to stay 15:44:48<br>9 aware of it to see whether or not there was a 15:44:53<br>10 chance that they were going to resume 15:44:55<br>11 production there. 15:44:57<br>12 Q. Do you recall doing any additional research 15:44:57<br>13 or investigation in September of 2014? 15:44:59<br>14 A. I think that by then the hostilities had 15:45:01<br>15 ceased, or pretty close in time to that, 15:45:05<br>16 because it lasted for 50, 51 days. 15:45:08 | decision, defense of "bad faith" and damages sought. Testimony does not contain hearsay. |

| Deposition Designation | Objection & Response |
|---|---|
| 21 Q. Why were you linking to an article in 15:45:17<br>22 Wikipedia with respect to Hamas? 15:45:21<br>23 A. Well, the one thing that Wikipedia is 15:45:22<br>24 particularly good for is it gives you all of 15:45:26<br>25 the cites from which they drew its 15:45:29<br><br>Page 239<br>1 information -- they drew their information. 15:45:32<br>2 And in looking at the appendix, you know, all 15:45:33<br>3 the things that they cited, there you 15:45:37<br>4 certainly can find more authoritative 15:45:40<br>5 resources to look at. 15:45:45<br><br>Page 243<br>9 Q. And then the e-mail above Ms. Gooley asked 15:51:03<br>10 you to send her the policy. Do you see that? 15:51:07<br>11 A. Yes. 15:51:08<br>12 Q. And did you do that? 15:51:09<br>13 A. If she instructed me to, I'm sure I did. 15:51:10<br><br>Page 257<br>19 Q. I believe you've indicated you had a second 16:07:30<br>20 conversation with Ms. Garber and Ms. Weiss on 16:07:36<br>21 Thursday of the same week in which you had 16:07:41<br>22 talked? 16:07:44<br>23 A. That's correct. 16:07:45<br>24 Q. And based on the calendar that I looked at, 16:07:45<br>25 I'm going to represent to you that that was 16:07:50<br><br>Page 258<br>1 July 17. 16:07:52<br>2 A. Okay. 16:07:53<br>3 Q. Does that sound wrong to you in any way? 16:07:53<br>4 A. No. It's just a couple of days after our 16:07:56 | |

| Deposition Designation | Objection & Response |
|---|---|
| 5 first conversation and before our next 16:07:59 | |
| 6 conversation was supposed to occur. 16:08:00 | |
| 7 Q. Who was on the call? 16:08:03 | |
| 8 A. Danny, myself, Susan and Andrea. I don't 16:08:05 | |
| 9 think that Peter was on the call. He may 16:08:14 | |
| 10 have been, but I -- I'm not sure if he was on 16:08:16 | |
| 11 the call or not. 16:08:19 | |
| 12 Q. What was discussed during the call? 16:08:33 | |
| 13 A. We discussed the fact that given the fact 16:08:36 | |
| 14 that the situation had not deescalated as NBC 16:08:40 | |
| 15 had hoped, they had decided to move their 16:08:46 | |
| 16 production. 16:08:49 | |
| 17 In that conversation we also 16:08:51 | |
| 18 informed them that we were looking at the 16:08:53 | |
| 19 applicability of the war exclusion to the 16:08:56 | |
| 20 situation. They objected to the idea that 16:08:59 | |
| 21 this could be considered a war, because Hamas 16:09:04 | |
| 22 is a terrorist organization and, therefore, 16:09:07 | |
| 23 you could not have a war with a terrorist 16:09:09 | |
| 24 organization. 16:09:11 | |
| 25 And they asked when we would have a 16:09:13 | |
| | |
| Page 259 | |
| 1 final decision and we gave them -- I think 16:09:17 | |
| 2 that we gave them a date as quickly as we 16:09:23 | |
| 3 could. I don't remember if they asked for 16:09:26 | |
| 4 the date or if -- if we just told them a 16:09:29 | |
| 5 date. I know that they wanted a response as 16:09:33 | |
| 6 quickly as humanly possible. 16:09:35 | |
| 7 Q. Who explained to Ms. Garber and Ms. Weiss 16:09:43 | |
| 8 that OneBeacon entertainment was looking at 16:09:46 | |
| 9 the potential applicability of the war 16:09:50 | |
| 10 exclusion? 16:09:51 | |
| 11 A. I don't recall exactly. It was probably me. 16:09:53 | |
| 12 Q. Did you identify the parts of the war 16:09:55 | |
| 13 exclusion that you thought were going to 16:09:57 | |

| Deposition Designation | Objection & Response |
|---|---|
| 14 potentially be applied? 16:10:01<br>15 A. I don't remember. 16:10:02<br>16 Q. Did you indicate to Ms. Weiss and Ms. Garber 16:10:03<br>17 that there was a significant chance of the 16:10:07<br>18 war exclusion being applied? 16:10:11<br>19 A. I think -- I think that we told them that we 16:10:13<br>20 were considering it. 16:10:16<br>21 Q. Did you tell them that in all likelihood the 16:10:16<br>22 exclusion would be applied? 16:10:19<br>23 A. I probably didn't go that far, because we 16:10:20<br>24 were still taking a look at it. 16:10:23<br><br>Page 262<br>7 Q. Was there anything else discussed during the 16:12:51<br>8 call? 16:12:53<br>9 A. Yeah, we talked about if they were going to 16:12:54<br>10 move, where they would move. They told me 16:12:57<br>11 that they were considering I think Turkey and 16:13:00<br>12 New Mexico. I warned them about a specific 16:13:06<br>13 location scout in New Mexico that they might 16:13:11<br>14 want to avoid if they decided to go there. 16:13:17<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 262<br><br>15 Q. Did you talk about potential sites for 16:13:19<br>16 relocation before or after you told them that 16:13:21<br>17 the war exclusion would be -- 16:13:24<br>18 A. I don't remember. 16:13:26<br><br>21 MS. COYOCA: Can I please finish 16:13:29<br>22 my question before you answer it and before 16:13:30<br>23 you object? | |

| Deposition Designation | Objection & Response |
|---|---|
| 25 Q. Did you tell them about the New Mexico 16:13:33<br><br>Page 263<br><br>1 concern before you told them that the war 16:13:36<br>2 exclusion potentially would apply to the 16:13:39<br>3 claim? 16:13:41<br>4 A. I'm sorry, Ms. Coyoca, I just -- I don't 16:13:42<br>5 remember. 16:13:44<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br><br>Page 263<br>6 Q. Based on the documents that we've reviewed, 16:13:49<br>7 it looks like you first began doing work on 16:13:51<br>8 the claim as of Monday July 15; is that 16:13:53<br>9 right? Or, excuse me, Monday, July 14; is 16:13:56<br>10 that right? 16:13:59<br><br>15 Q. The e-mails and the initial submission of the 16:14:04<br>16 claim, I'll represent to you, was on Tuesday, 16:14:07<br>17 July 15, not on Monday. But you had 16:14:09<br>18 testified that you believed you had -- you 16:14:11<br>19 might have had conversations on Monday? 16:14:13<br>20 A. It sounds like I was confusing Monday. It 16:14:15<br>21 was Tuesday. 16:14:17<br>22 Q. All right. So having seen the documents, you 16:14:17<br>23 can't recall a conversation taking place 16:14:21<br>24 before Tuesday the job -- July 15 when the 16:14:23<br>25 claim was submitted, do you? 16:14:28<br><br>Page 264<br>1 A. The first conversation I recall is the one 16:14:29 | |

| Deposition Designation | Objection & Response |
|---|---|
| 2 that I related to you with Danny and Andrea 16:14:31<br>3 and Susan. 16:14:33<br>4 Q. Okay. So from Tuesday, July 15, to Thursday, 16:14:35<br>5 July 17 when you told the insured that the 16:14:39<br>6 war exclusion potentially would apply, did 16:14:43<br>7 you feel that that was enough time for you to 16:14:49<br>8 conduct your analysis of this issue? 16:14:51<br>9 A. Well, it would have to be, because they 16:14:53<br>10 wanted an answer. 16:14:55<br>11 Q. Did you feel pressured by the insured to do 16:14:56<br>12 the research and get an answer out as quickly 16:14:59<br>13 as possible? 16:15:03<br>14 A. I don't know that pressure is the correct 16:15:04<br>15 term. Whenever you're dealing with a 16:15:06<br>16 production that is going to shut down for any 16:15:08<br>17 reason and for any period of time, time is of 16:15:11<br>18 the essence to them, because time is money. 16:15:13<br>19 They have to be -- they have to know what -- 16:15:16<br>20 if they're going to, you know, tell people 16:15:18<br>21 not the to come back to work. They have to 16:15:20<br>22 know exactly what the deal is. You know, and 16:15:22<br>23 what we always advise them is do what is 16:15:25<br>24 prudent even if you didn't have insurance, 16:15:28<br>25 what would you do in that situation. But 16:15:31 | |
| Page 265<br>1 they -- you know, in spite of the fact that 16:15:34<br>2 that's what we tell them, they still want to 16:15:36<br>3 know as quickly as possible if the money is 16:15:38<br>4 going to be coming from the insurance 16:15:42<br>5 company. So, yes, they said that they wanted 16:15:44<br>6 an answer and that they wanted it very 16:15:46<br>7 quickly. I -- I'm not sure that I would say 16:15:48<br>8 I felt pressured. I would say that I knew 16:15:50<br>9 that they wanted an answer quickly. 16:15:51 | Plaintiff's Objections:<br>Page 265:15-16<br>IO,403<br><br>Defendant's Response:<br>Objection removed. |

| Deposition Designation | Objection & Response |
|---|---|
| 10 Q. Did you feel -- excuse me. 16:15:53<br>11 Did you feel you had sufficient time 16:15:54<br>12 to conduct the research and do the analysis 16:15:55<br>13 and give the insured a response in that 16:15:57<br>14 two-day period of time? 16:16:00<br>17 THE WITNESS: Yes. 16:16:06<br><br>19 Q. Did you feel that your analysis was rushed? 16:16:09<br><br>22 THE WITNESS: I wouldn't -- I 16:16:19<br>23 wouldn't define it as rushed. I would define 16:16:22<br>24 it as working very hard for many hours over a 16:16:25<br>25 short period of time. 16:16:31<br><br>Page 266<br>2 Q. But not withstanding the fact that you worked 16:16:32<br>3 hard for a short period of time to reach your 16:16:36<br>4 conclusion, you felt you had reached the 16:16:38<br>5 right conclusion; is that right? 16:16:41<br><br>8 THE WITNESS: I did. 16:16:45<br><br>10 Q. Did you feel that your analysis could have 16:16:51<br>11 benefitted from spending any additional time 16:16:53<br>12 on it? 16:16:56<br><br>15 THE WITNESS: I felt comfortable 16:17:03<br>16 with the decision we made. 16:17:05<br><br>18 Q. During that July 17 phone call with 16:17:13<br>19 Ms. Garber and Ms. Weiss, was there anything 16:17:16<br>20 else that was discussed aside from the topics 16:17:18<br>21 that you've described for me? 16:17:20 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 266:13-14<br>IO,403<br><br>Defendant's Response:<br>Objection removed. |

| Deposition Designation | Objection & Response |
|---|---|
| 22 A. We discussed the conditions on the ground in 16:17:34<br>23 Israel and we discussed the war exclusion and 16:17:36<br>24 its applicability to that situation, I 16:17:50<br>25 believe, and their relocation efforts, and 16:17:51<br><br>Page 267<br>1 then they wanted to know when they would get 16:17:56<br>2 a letter giving them their final 16:17:58<br>3 determination. And even though under 16:18:00<br>4 California law I have 40 days to produce that 16:18:03<br>5 to them, that would not have been appropriate 16:18:06<br>6 in this situation. 16:18:10<br><br>Pages 273<br>20 Q. Did you have any conversations with 16:38:50<br>21 Ms. Gooley after the call on the 17th before 16:38:52<br>22 you told the insured that the claim was going 16:38:55<br>23 to be denied on the basis of the war 16:38:58<br>24 exclusion? 16:39:00<br>25 A. Before I gave them our final decision I'm 16:39:02<br><br>Page 274<br>1 sure I did. 16:39:07<br>2 Q. Who was responsible for the ultimate decision 16:39:07<br>3 to deny the claim? 16:39:10<br>4 A. Me. 16:39:11<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 274<br><br>2 Q. Who was responsible for the ultimate decision 16:39:07<br>3 to deny the claim? 16:39:10 | Plaintiff's Objections:<br>Page 274:19-23<br>602,802<br><br>Defendant's Response:<br>Testimony indicates witness has personal knowledge. |

| Deposition Designation | Objection & Response |
|---|---|
| 4 A. Me. 16:39:11<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br><u>Page 274</u><br><br>5 Q. Why did you speak to Ms. Gooley about it? 16:39:11<br>6 A. Because NBC is an important client for 16:39:14<br>7 OneBeacon entertainment, and I knew given the 16:39:21<br>8 response that I got from Andrea and Susan 16:39:27<br>9 that it was likely that they were going to 16:39:30<br>10 want to escalate this matter. And, you know, 16:39:32<br>11 the last thing you ever want with someone 16:39:33<br>12 who -- with your supervisor, is a surprise. 16:39:36<br>13 So it's always best to have them apprised as 16:39:38<br>14 to the discontent of a client, the likelihood 16:39:43<br>15 that the client will call them directly. And 16:39:46<br>16 that's why I would also keep Peter Williams 16:39:49<br>17 apprised, because he also likely was to get a 16:39:53<br>18 call. 16:39:56<br>19 Q. Did you have a call with Mr. Williams about 16:39:56<br>20 the decision before you conveyed it to the 16:39:58<br>21 insured? 16:40:01<br>22 A. Well, I'm sure we talked about it. I mean, 16:40:01<br>23 he was in agreement with the decision. 16:40:04<br><br><u>Page 279</u><br>10 Q. Who was on that call? 16:45:38<br><br><u>Page 284</u><br>21 Q. I want to direct your attention to the center 16:52:01<br>22 e-mail on page 3240 from you to Susan Weiss 16:52:10<br>23 with a cc to Andrea Garber and Daniel 16:52:15<br>24 Gutterman. It indicates, "Andrea and Susan, 16:52:18 | |

| Deposition Designation | Objection & Response |
|---|---|
| 25 Profuse apologies, but I will not be able to 16:52:23 | |

Page 285
1 get the coverage letter to you until Monday. 16:52:26
2 Despite my best efforts, I could not complete 16:52:28
3 it today." Do you recall sending this 16:52:30
4 e-mail? 16:52:32
5 A. I do. 16:52:32
6 Q. Had you previously told Ms. Weiss and 16:52:36
7 Ms. Garber that you were going to get the 16:52:38
8 coverage denial letter out that week? 16:52:40
9 A. That's certainly what it appears from this 16:52:44
10 e-mail, yes. 16:52:46
11 Q. Did you receive -- receive Ms. Weiss's 16:52:47
12 response? 16:52:53
13 A. I did. She said, "It's imperative that we 16:52:54
14 receive this on Monday morning. NBCU has 16:53:02
15 been asking about this on a regular basis and 16:53:05
16 we told them they'd be receiving the opinion 16:53:08
17 letter by the end of this week. Thank you, 16:53:10
18 Susan." 16:53:12

PLAINTIFFS' 106 COUNTER-DESIGNATION:

Page 285

19 Q. Did you feel that your analysis in the 16:53:13
20 coverage denial letter was being impaired by 16:53:20
21 the fact that you were being asked to 16:53:22
22 complete it in a short time frame? 16:53:24

25 THE WITNESS: No. 16:53:32

END PLAINTIFFS' 106 COUNTER-DESIGNATION

Pages 293
4 Q. Why did you send it? 17:15:25

| Deposition Designation | Objection & Response |
|---|---|
| 5 A. Because it is our obligation to send a 17:15:31<br>6 written coverage determination to our 17:15:34<br>7 policyholders. 17:15:36<br><br>Page 294<br>3 Q. Was Atlantic denying the claim on the basis 17:16:27<br>4 of any exclusions other than war or warlike 17:16:31<br>5 action? 17:16:36<br>6 A. Well, I refer to four different -- five 17:16:36<br>7 different aspects of the war exclusion, "War, 17:16:39<br>8 including undeclared war or civil war or 17:16:50<br>9 warlike action by a military force including 17:16:53<br>10 action in hindering or defending against an 17:16:53<br>11 actual or unexpected attack by any 17:16:56<br>12 government, sovereign or other authority 17:16:59<br>13 using military personnel or other agents or 17:17:01<br>14 insurrection, rebellion, revolution, usurped 17:17:05<br>15 power or action taken by the governmental 17:17:09<br>16 authority in hindering or defending against 17:17:12<br>17 any of these. Such loss or damage is 17:17:15<br>18 excluded regardless of any other cause or 17:17:16<br>19 event that contributes concurrently in any 17:17:18<br>20 sequence to the loss." 17:17:20<br>21 Number 4, "Any weapon of war 17:17:22<br>22 including atomic fission or radioactive 17:17:24<br>23 force, whether in time or peace of war." And 17:17:28<br>24 then there's an ellipses and you drop down to 17:17:32<br>25 8, "Any uninsured event occurring before 17:17:35<br><br>Page 295<br>1 concurrently or with or happening after -- or 17:17:37<br>2 after the happening of an insured event which 17:17:42<br>3 directly or indirectly causes or in any way 17:17:44<br>4 contributes to the cause or increase of loss 17:17:48<br>5 under this policy but only with respect to 17:17:51<br>6 that portion of any such loss caused by or 17:17:52<br>7 contributed to by the uninsured event unless 17:17:56 | <br><br><br>Plaintiff's Objections:<br>Page 294:3-25<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC 's understanding and basis for claim decision is relevant to reasonableness of decision, defense of "bad faith", and damages sought.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 295:1-9<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC 's understanding and |

| Deposition Designation | Objection & Response |
|---|---|
| 8 the uninsured event would not have been a 17:18:00<br>9 factor had the insured event never occurred. 17:18:03<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 295<br><br>10 Q. Does it say had such insured event ever 17:18:06<br>11 occurred? 17:18:10<br>12 A. Yes, sorry. 17:18:10<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 295<br><br>24 Q. Is it your position that notwithstanding the 17:18:42<br>25 fact that there is no discussion of those sub 17:18:47<br><br>Page 296<br>1 parts that you were in fact intending to 17:18:49<br>2 convey that the coverage was being denied on 17:18:51<br>3 the basis of application of subparts 3 and 4? 17:18:54<br>4 A. That it could be. 17:18:59<br>5 Q. Okay. I'm not asking if it could be I'm 17:19:00<br>6 asking were you? 17:19:03<br>7 A. Well, so when you look at -- at the war 17:19:03<br>8 exclusion so it could be war or in the 17:19:10<br>9 alternative if it's not war are if it's a war 17:19:13<br>10 like action it's covered or in the 17:19:17<br>11 alternative if you don't think it's a war 17:19:19<br>12 like action it could still be an insurrection 17:19:21<br>13 which is when one -- one -- part of the 17:19:24<br>14 population rises up against the country, so 17:19:27<br>15 in fact if you are saying Gaza is actually 17:19:31<br>16 part of Israel and is not separate and apart 17:19:34<br>17 as part of -- part of Palestine, then that 17:19:36<br>18 could be an insurrection and certainly that 17:19:42<br>19 there are weapons of war that what was used 17:19:44 | evaluation development is relevant to reasonableness of claim decision, defense of "bad faith" and damages sought.<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 295:24-25; 296:1-25<br>MIL,402,40,701,NR<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC 's understanding and analysis, and explanation for decision is relevant to reasonableness of claim decision, defense of "bad faith" and damages sought; testimony rationally based on witness' perception and job responsibilities; helpful to determining a fact in issue and admissible under 701. |

| Deposition Designation | Objection & Response |
|---|---|
| 20 were weapons of war. 17:19:47 | |
| 21 Q. Ms. Johnson my question to you is were you, 17:19:49 | |
| 22 on behalf of Atlantic, denying the claim on 17:19:54 | |
| 23 the basis of inter alia subpart 3? 17:19:58 | |
| 24 A. I was putting them on notice that any one of 17:20:04 | |
| 25 those exclusions could apply to the 17:20:07 | |
| | |
| Page 297 | Plaintiff's Objections: |
| 1 situation. 17:20:09 | Page 297:1-23 |
| 2 Q. Did you feel in writing this coverage 17:20:09 | MIL,402,40,701,NR |
| 3 determination letter that if you felt that 17:20:11 | |
| 4 subpart 3 applied as to insurrection 17:20:13 | Defendant's Response: |
| 5 rebellion that you needed to discuss it in 17:20:16 | "MIL" not clear |
| 6 the letter itself? 17:20:20 | objection; ASIC 's |
| 7 A. Not necessarily. 17:20:21 | understanding, analysis |
| 8 Q. Were you on behalf of Atlantic denying the 17:20:22 | basis for decision is |
| 9 claim on the basis of subpart 4 any weapon of 17:20:28 | relevant to |
| 10 war including atomic fission or radio active 17:20:33 | reasonableness of claim |
| 11 force? 17:20:36 | decision, defense of |
| 12 A. Well it's an exclusion -- portion of the 17:20:36 | "bad faith" and |
| 13 exclusion that could apply because there were 17:20:39 | damages sought; |
| 14 weapons of war that were used. 17:20:42 | testimony rationally |
| 15 Q. Were you on behalf of Atlantic denying the 17:20:44 | based on witness' |
| 16 claim on the basis of inter alia subpart 4? 17:20:46 | perception and job; |
| 17 A. That was one of the basis we looked at yes. 17:20:52 | helpful to determining a |
| 18 Q. Were you actually denying the claim separate 17:20:54 | fact in issue and |
| 19 and apart from whether you looked at it were 17:20:57 | admissible under 701. |
| 20 you conveying a digs had been made to deny 17:21:00 | |
| 21 the claim on the basis of subpart 4? 17:21:03 | |
| 22 A. That's why it's included in the policy 17:21:06 | |
| 23 language. 17:21:08 | |
| PLAINTIFFS' 106 COUNTER-DESIGNATION: | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 350<br>25 Q. Did you write the letter? 18:34:47<br><br>Page 351<br>1 A. I did. 18:34:48<br>2 Q. When you had written the letter on 18:34:49<br>3 September 19th, did you send it to -- to me? 18:34:53<br>4 A. That was certainly my intent. I think I 18:34:56<br>5 actually did, yes. 18:34:58<br>6 Q. Huh. Do you have -- did you go back and 18:35:01<br>7 check to see whether you had any record of 18:35:07<br>8 having sent it to anyone other than 18:35:10<br>9 Ms. Weiss? 18:35:11<br>10 A. No. At the time this was brought to my 18:35:12<br>11 attention, it was not in a period that I 18:35:15<br>12 could review that, so I just sent it along. 18:35:18<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 351<br>13 Q. What work did you, if any, in order to 18:35:40<br>14 develop the analysis that's set forth in this 18:35:43<br>15 letter? 18:35:45<br>16 A. I reviewed your letter, I looked at the case 18:35:46<br>17 law that you included in your letter, I -- 18:35:51<br>18 that the war was ongoing, so I continued to 18:35:58<br>19 stay apprised of what had happened, I -- I 18:36:02<br>20 kept myself apprised of what had happened 18:36:07<br>21 through August, and that the -- these 18:36:10<br>22 specific facts that are contained in the 18:36:15<br>23 third paragraph of the letter that says that, 18:36:20<br>24 "During the conflict which extended until 18:36:23<br>25 August 26th, 2014, 2,143 Palestinians and 69 18:36:25<br><br>Page 352<br>1 Israelis were killed, Israel struck 500" -- 18:36:34<br>2 "5,283 targets in Gaza, Hamas fired 4,564 18:36:35 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 352:13-14<br>IO,403 |

| Deposition Designation | Objection & Response |
|---|---|
| 3 rockets into Israel and more than 50,000 18:36:41<br>4 thousand buildings in Gaza were damaged or 18:36:43<br>5 destroyed," that's information that I 18:36:46<br>6 gathered after -- after the war had come to 18:36:49<br>7 its conclusion. 18:36:55<br>8 Q. Is it your position or was it your position 18:36:56<br>9 in September of 2014 that the size and scope 18:36:58<br>10 of the hostilities was a factor in 18:37:01<br>11 determining whether or not something 18:37:08<br>12 constituted a war? 18:37:10<br><br>15 THE WITNESS: Well, I think that 18:37:15<br>16 the fact that so much damage was done 18:37:16<br>17 certainly supports the idea that it was a 18:37:18<br>18 war. It is not the only factors to be 18:37:20<br>19 considered, however. 18:37:24 | Defendant's Response:<br>Objection removed. |

## 11.    PAMELA JOHNSON VOL. II—May 9, 2017

| Deposition Designation | Objection & Response |
|---|---|
| Defendant's Designation of Johnson Vol 2 May 9, 2017<br>p. 372, l. 23-p. 376, l. 10; p. 376, l. 24-p. 382, l. 8; p. 383, 1. 1-p. 383, 1. 4; p. 383, 1. 15-p. 385, 1. 5; p. 385, 1. 7-p. 432, 1. 18; p. 433, 1. 2-p. 433, 1. 5; p. 434, 1. 6-p. 435, 1. 2; p. 435, l. 13-p. 458, l. 12; p. 459, l. 9-p. 485, l. 15; p. 485, l. 25-p. 498, l. 12; p. 500, l. 24-p. 502, l. 7; p. 513, l. 15-p. 516, l. 25; p. 517, 1.22-p. 524, 1. 16; p. 545, 1. 6-p. 545. 4. 14; p. 551, 1. 14-p. 552, 1. 18; p. 567, 1. 16-p. 568, 1. 2; p. 568, 1. 12-p. 569, 1. 4<br><br>Page 372<br><br>23 BY MS. REED: 10:05:06<br>24 Q. Good morning, Ms. Johnson. 10:05:07<br>25 A. Good morning. 10:05:09<br><br>Page 373<br><br>1 Q. Would you please state your full name for the 2 record. 10:05:12<br>3 A. Pamela Ann Johnson. 10:05:13<br>4 Q. Ms. Johnson, by whom were you employed in 5 July of 2014? 10:05:17<br>6 A. I was employed by OneBeacon, also known as 7 Atlantic Specialty Insurance Group. 10:05:21<br>8 Q. What was your title or position at that time? 10:05:23<br>9 A. I was the claims lead for the entertainment 10:05:26<br>10 group. The internal designation is second 10:05:28<br>11 vice-president. 10:05:33 | Plaintiffs object to Defendant's designations as follows:<br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 373:23-25<br>104a, 802<br><br>Defendant's Response:<br><br>It is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the requirements of FRE 602; not a hearsay statement in response. |

| Deposition Designation | Objection & Response |
|---|---|
| 12 Q. In what position, what were your job duties? 10:05:35<br>13 A. At that period of time I supervised other 10:05:37<br>14 claim handlers in the OneBeacon entertainment 10:05:39<br>15 claim group. I also interacted with brokers, 10:05:43<br>16 conducted trainings, et cetera. 10:05:47<br>17 Q. In the summer of 2014, how long had you been 10:05:50<br>18 employed by OneBeacon? 10:05:55<br>19 A. I joined OneBeacon in March of 2012. 10:05:56<br>20 Q. Were you recruited to work at OneBeacon? 10:05:59<br>21 A. I was, yes. 10:06:03<br>22 Q. Can you tell me what went into that process? 10:06:04<br>23 A. Well, they were looking for someone to be the 10:06:07<br>24 entertainment claim lead. And Sean Duffy, 10:06:12<br>25 who was the head of claim, got a 10:06:15<br><br>Page 374<br><br>1 recommendation from my former supervisor, 10:06:17<br>2 Aaron Latto, and Aaron recommended me for the 10:06:21<br>3 job. Sean asked Judy Lamble, who had been 10:06:27<br>4 one of my former coworkers, to approach me 10:06:28<br>5 and see if I was interested. I came in, I 10:06:29<br>6 interviewed with a wide variety of people, 10:06:31<br>7 and they subsequently hired me. 10:06:33 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 374:1-7<br>104a, 802<br><br>Defendant's Response:<br><br>It is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the requirements of FRE 602; witness is providing |

| Deposition Designation | Objection & Response |
|---|---|
| 8 Q. What was the first position you held when you 10:06:36<br>9 took employment at OneBeacon? 10:06:38<br>10 A. I was always a second vice-president and a 10:06:39<br>11 claim lead. 10:06:42<br>12 Q. Did your job duties change over time? 10:06:42<br>13 A. Yes. When I was initially hired, I was hired 10:06:46<br>14 to handle high-profile claims or complex 10:06:49<br>15 claims and mass torts, that type of thing for 10:06:51<br>16 the entertainment group, and also to be the 10:06:54<br>17 face of OneBeacon entertainment and 10:06:56<br>18 interfacing with brokers. 10:06:59<br>19 After I had been there for about a 10:07:01<br>20 year, they reorganized the claim group and 10:07:02<br>21 asked me to become the manager of other claim 10:07:07<br>22 handlers in addition to handling some claims 10:07:09<br>23 of my own. 10:07:11<br>24 Q. By the summer of 2014, which claim division 10:07:12<br>25 or group did you oversee? 10:07:15<br><br>Page 375<br><br>1 A. The entertainment claim group. 10:07:18<br>2 Q. In the summer of 2014, did you handle 10:07:20<br>3 entertainment claims directly? 10:07:24<br>4 A. Some, yes. 10:07:25<br>5 Q. What types? 10:07:25<br>6 A. Mass torts, in other words, if there was an 10:07:28 | understanding of process as she understood it; not offered for truth of matter asserted. |

| Deposition Designation | Objection & Response |
|---|---|
| 7 incident for one of our entertainment clients 10:07:30<br>8 that resulted in several people being 10:07:33<br>9 injured, more than one. I would also handle 10:07:36<br>10 some complex claims involving the production<br>11 policies. 10:07:43<br>12 For example, if a -- if a production 10:07:44<br>13 company or network wanted to abandon a show,<br>14 that would be something that I would 10:07:50<br>15 investigate and handle personally. Sometimes 10:07:51<br>16 there would be some kind of other complex<br>17 claims, defamation claims, that type of 10:07:59<br>18 thing. If it was for a very high-profile 10:08:01<br>19 person, then that's something that I would 10:08:04<br>20 handle, a disgrace claim. 10:08:05<br>21 Q. In the summer of 2014, did you supervise<br>22 others who were handling claims? 10:08:09<br>23 A. I did. 10:08:12<br>24 Q. How many people were reported to you at that 10:08:12<br>25 time? 10:08:14<br><br><br>Page 376<br><br>1 A. It was -- I think there were six. It was six 10:08:14<br>2 or seven. I don't recall exactly. 10:08:17<br>3 Q. Did Danny Gutterman report to you? 10:08:19<br>4 A. He did. 10:08:20<br>5 Q. What was his position at that time? 10:08:21<br>6 A. Danny Gutterman was a claim handler for the 10:08:22<br>7 OneBeacon entertainment group, and he handled 10:08:25 | |

**1053**

| Deposition Designation | Objection & Response |
|---|---|
| 8 exclusive first-party claims for our 10:08:28<br>9 entertainment clients under production 10:08:32<br>10 policies. 10:08:34<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 376<br><br>11 Q. When you refer to first-party claims, what 10:08:34<br>12 does that mean, please, ma'am? 10:08:36<br>13 A. In other words, if it is -- if the insured, 10:08:38<br>14 which is, you know, a production company, a 10:08:40<br>15 network, et cetera, if they bring a claim 10:08:44<br>16 under their production policy, their 10:08:46<br>17 first-party coverage relating to a specific 10:08:48<br>18 production if it has to shut down, if a cast 10:08:52<br>19 member gets injured and creates a situation 10:08:54<br>20 in which they need to shut down, if there's 10:08:57<br>21 bad weather that causes the production to 10:09:01<br>22 shut down or damage to the set, that's the 10:09:03<br>23 kind of claim that he would handle. 10:09:05<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 376<br>24 Q. By the summer of 2014, how long had you 10:09:07<br>25 worked with Mr. Gutterman? 10:09:09<br><br>Page 377<br><br>1 A. About a year. 10:09:11<br>2 Q. Did you work with Mr. Gutterman on a 10:09:14 | |

| Deposition Designation | Objection & Response |
|---|---|
| 3 consistent basis? 10:09:16<br>4 A. I talked to him almost every day. 10:09:17<br>5 Q. Were you familiar with his background at that 10:09:19<br>6 time? 10:09:23<br>7 A. I was. 10:09:23<br>8 Q. What in particular about his background was 10:09:24<br>9 useful to his position at OneBeacon? 10:09:27<br>10 A. Well, the one thing that was very helpful 10:09:28<br>11 about Danny is that he had actually worked in 10:09:31<br>12 production himself. He had been a production 10:09:33<br>13 assistant on a few TV shows, and as a result, 10:09:36<br>14 he understood how the production world 10:09:38<br>15 worked, he understood how some of the -- the 10:09:40<br>16 contracts worked in terms of, you know, who 10:09:43<br>17 was a -- who had cast coverage on an A level, 10:09:47<br>18 B level, C level. 10:09:49<br>19 Q. Were you familiar by that time with his level 10:09:50<br>20 of experience in claims and his abilities? 10:09:53<br>21 A. Yes, I was. 10:09:54<br>22 Q. By the summer of 2014, how many years of work 10:09:55<br>23 experience did you have working directly for 10:10:04<br>24 an insurance company in total? 10:10:05<br>25 A. Working for an insurance company, I started<br><br>Page 378 | |

**1055**

| Deposition Designation | Objection & Response |
|---|---|
| 1 working for an insurance company in 2005, so 10:10:13<br>2 approximately seven years. 10:10:17<br>3 Q. 2005 to 2014? 10:10:19<br>4 A. Oh, I'm sorry, nine years. I'm not great at<br>5 math. 10:10:25<br>6 Q. And how many years of that experience had 10:10:25<br>7 handled -- had been handling entertainment 10:10:27<br>8 claims, please, ma'am? 10:10:30<br>9 A. About seven. 10:10:31<br>10 Q. Now, separate and apart from your work<br>11 history being employed directly by insurance 10:10:35<br>12 companies, did you have prior professional 10:10:39<br>13 experience that involved handling insurance<br>14 matters? 10:10:44<br>15 A. Yes, I had. 10:10:44<br>16 Q. What was that prior professional experience? 10:10:45<br>17 A. Well, I had been in private practice for 10:10:48<br>18 about 13 years before going in-house for an 10:10:51<br>19 insurance company. And in the course of 10:10:53<br>20 being in private practice, I had handled 10:10:55<br>21 coverage matters for insurance companies, I 10:10:59<br>22 had defended insureds under insurance 10:11:01<br>23 policies, and I had also sued insurance 10:11:04<br>24 companies on behalf of their policyholders. 10:11:07<br>25 Q. And when you refer to, "Private practice," 10:11:10<br><br>Page 379 | Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 1 that was in private practice as an attorney? 10:11:12<br>2 A. That's correct. 10:11:14<br>3 Q. Were you working for law firms during that 10:11:15<br>4 time? 10:11:17<br>5 A. I was. 10:11:17<br>6 Q. By 2014, turning back to your experience in 10:11:22<br>7 the insurance industry, approximately how 10:11:27<br>8 many claims had you been involved in over the 10:11:30<br>9 years either directly as a handler or as a 10:11:31<br>10 supervisor? 10:11:35<br>11 A. Oh, hundreds. 10:11:35<br>12 Q. What degrees do you hold, please, ma'am? 10:11:37<br>13 A. I have a bachelor's degree in psychology, and 10:11:40<br>14 I hold a Juris Doctor, which is the degree 10:11:44<br>15 you get when you graduate from law school. 10:11:48<br>16 Q. What year did you earn your Juris Doctor? 10:11:51<br>17 A. I graduated from law school in 1992, so my 10:11:54<br>18 Juris Doctor is 1992. 10:11:58<br>19 Q. Does your legal education help you perform 10:12:00<br>20 your duties working on insurance claims? 10:12:03<br>21 A. Certainly. 10:12:05<br>22 Q. And how is that? 10:12:05<br>23 A. Well, it informs how I conduct an analysis 10:12:06<br>24 and it helps me in my investigative skills 10:12:09<br>25 just as, you know, I would have to 10:12:12<br><br>Page 380 | Page 379:6-25<br>403<br><br>Defendant's Response:<br><br>Witness background is relevant to jury's assessment of credibility and knowledge regarding issues in dispute; not prejudicial to Plaintiffs but would be prejudicial to Defendant if not allowed. |

| Deposition Designation | Objection & Response |
|---|---|
| 1 investigate cases when I was in private 10:12:13<br>2 practice. It certainly, you know, helps to 10:12:14<br>3 have that kind of analytical mind when you're 10:12:17<br>4 both investigating and interpreting insurance 10:12:22<br>5 policies. An insurance policy is a contract, 10:12:24<br>6 and, obviously, I know about contract law. 10:12:27<br>7 Q. Do you hold any licenses? 10:12:29<br>8 A. Yes, I hold many licenses to -- to be a 10:12:30<br>9 claims adjuster. There are several states 10:12:35<br>10 that actually require that you have a 10:12:37<br>11 license, and I hold a license, an adjuster's 10:12:40<br>12 license in every jurisdiction in which it is 10:12:43<br>13 required. 10:12:46<br>14 Q. Were you involved in a claim submitted by 10:12:47<br>15 NBCUniversal to OneBeacon on the production 10:12:49<br>16 called Dig? 10:12:52<br>17 A. Yes, I was. 10:12:53<br>18 Q. What was your understanding of what Dig was? 10:12:54<br>19 A. It was a scripted television show that was 10:12:57<br>20 being shot primarily in Israel. 10:13:00<br>21 Q. What involvement did you have with the Dig 10:13:02<br>22 claim? 10:13:04<br>23 A. Danny Gutterman received the claim and it was 10:13:06<br>24 assigned to him. And my first knowledge of 10:13:09<br>25 it came when he contacted me on a phone call 10:13:12<br><br>Page 381 | Plaintiff's Objections:<br>Page 380:1-6<br>403<br><br>Defendant's Response:<br><br>The witness's background and ability are relevant to jury's assessment of credibility and knowledge regarding issues in dispute; not unfairly prejudicial to Plaintiffs, confusing, misleading or cumulative evidence.  Would be prejudicial to Defendant if now allowed. |

| Deposition Designation | Objection & Response |
|---|---|
| 1 with Andrea Garber, who was in-house at NBC, 10:13:14<br>2 and Susan Weiss, the broker at Aon for NBC, 10:13:19<br>3 when they were calling to say that they were 10:13:24<br>4 going to have to push production for a week, 10:13:26<br>5 in other words, they weren't going to go 10:13:29<br>6 forward with shooting for a week because the 10:13:30<br>7 situation on the ground in Israel had become 10:13:32<br>8 so dangerous that they thought it was a 10:13:34<br>9 danger to their personnel. 10:13:37<br>10 Q. After that call, did you play a direct role 10:13:38<br>11 in the handling of the claim? 10:13:40<br>12 A. I did. Danny and I worked collaboratively 10:13:41<br>13 together to investigate the claim and to 10:13:44<br>14 reach a coverage determination. The ultimate 10:13:46<br>15 coverage determination was made by me. 10:13:49<br>16 Q. Was this the type of complex claim that you 10:13:51<br>17 would work on directly? 10:13:54<br>18 A. Certainly in some circumstances. 10:13:55<br>19 Q. And in this circumstance, how do you describe 10:13:58<br>20 your overall role? 10:14:02<br>21 A. Well, I was supervising Danny and I was also 10:14:03<br>22 working closely with him to be able to 10:14:06<br>23 evaluate the exclusions in the policy, the 10:14:09<br>24 coverage in the policy. And then, of course, 10:14:11 | Plaintiff's Objections:<br>Page 381:24-25<br>403<br><br>Defendant's Response:<br>The witness's actions in researching and responding to the claim are relevant; not unfairly prejudicial to Plaintiffs, confusing, misleading or cumulative evidence. Would be prejudicial to Defendant if not allowed. |

| Deposition Designation | Objection & Response |
|---|---|
| 25 I conducted legal research with regard to the 10:14:13<br><br><br>Page 382<br><br>1 policy -- the policy provisions to see how 10:14:16<br>2 other courts had interpreted the language 10:14:20<br>3 and -- and that sort of thing. 10:14:22<br>4 Q. Did you also participate in investigation of 10:14:25<br>5 the facts? 10:14:28<br>6 A. Absolutely. I investigated the facts very 10:14:28<br>7 thoroughly. And Danny also participated in 10:14:32<br>8 that. 10:14:34 | Plaintiff's Objections:<br>Page 382:1-3<br>403<br><br>Defendant's Response:<br>The witness's actions in researching and responding to the claim are relevant; not unfairly prejudicial to Plaintiffs, confusing, misleading or cumulative evidence. Would be prejudicial to Defendant if not allowed. |
| Page 383<br><br>1 Q. In the summer of 2014, was there an 10:15:12<br>2 entertainment policy in place with 10:15:15<br>3 NBCUniversal? 10:15:19<br>4 A. There was. 10:15:19<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 383<br><br>5 Q. And were you familiar with that policy? 10:15:20<br>6 A. I don't know that I had specifically reviewed 10:15:21<br>7 that particular policy. I was certainly 10:15:26<br>8 familiar with their -- their previous 10:15:29 | Plaintiff's Objections:<br><br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 9 policies -- 10:15:31<br>10 Q. Do you know -- 10:15:33<br>11 A. -- since I had dealt with those before. 10:15:34<br>12 Q. Do you know about how long that NBCUniversal 10:15:37<br>13 had been an insured of OneBeacon? 10:15:39<br>14 A. I'm told that it was since 2010. 10:15:41<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 383<br><br>15 Q. Let me hand you what was previously marked in 10:15:45<br>16 the case as Defendant's Exhibit 38, please, 10:15:47<br>17 ma'am. 10:15:50<br>18 A. Yes, I see the exhibit. 10:15:56<br>19 Q. Can you identify Exhibit 38 as a true and 10:15:57<br>20 correct copy of the insurance policy issued 10:16:00<br>21 to NBCUniversal Media, LLC, for the policy 10:16:03<br>22 period January 1, 2014 to June 30th, 2015? 10:16:07<br>23 A. Yes, it appears to be so. 10:16:26<br>24 Q. By the summer of 2014, were you familiar with 10:16:28<br>25 NBCUniversal and its business? 10:16:31<br><br><br>Page 384<br><br>1 A. Yes, I was. 10:16:33<br>2 Q. And what did you know about NBCUniversal and 10:16:34 | |

| Deposition Designation | Objection & Response |
|---|---|
| 3 its business? 10:16:37<br>4 A. Well, I knew that they were a production 10:16:39<br>5 company as well as, you know, that they had 10:16:41<br>6 formed a network, and that a lot of their 10:16:46<br>7 productions were done in-house. There are 10:16:48<br>8 other networks that actually outsource a lot 10:16:50<br>9 of the productions, but NBC, especially with 10:16:53<br>10 their scripted -- their scripted television 10:16:56<br>11 shows, did those in-house. 10:17:00<br>12 Q. And directing your attention back to 10:17:02<br>13 Defendant's Exhibit 38, please, ma'am, is 10:17:06<br>14 there a general title or way that you refer 10:17:08<br>15 to this type of policy within OneBeacon? 10:17:10<br>16 A. Yes. It's a motion picture television 10:17:13<br>17 producer's portfolio. 10:17:16<br>18 Q. And was there a short -- 10:17:17<br>19 A. MPTP. 10:17:20<br>20 Q. -- shortcut name that you used for it? 10:17:21<br>21 A. Yeah, it's a production policy. 10:17:24<br>22 Q. Did you have particular contacts with whom 10:17:25<br>23 you worked within NBCUniversal? 10:17:29<br>24 A. Well, in the entertainment industry, 10:17:33<br>25 sometimes you work directly with the insured, 10:17:35<br><br>Page 385<br><br>1 but more often you work directly with the 10:17:37<br>2 broker, at least initially when a claim is 10:17:39<br>3 first submitted and the coverage 10:17:43<br>4 determination. And in this case I had 10:17:45<br>5 primarily worked with Andrea Garber and 10:17:47 | |

| Deposition Designation | Objection & Response |
|---|---|
| 7 Andrea Garber at that time actually worked 10:17:53 | |
| 8 for Aon, and Susan Weiss was her supervisor. 10:17:56 | |
| 9 Q. And subsequent to that, did their positions 10:17:59 | |
| 10 change? 10:18:02 | |
| 11 A. Well, Andrea went in-house for risk control 10:18:03 | |
| 12 for NBC, and Susan Weiss remained as the 10:18:06 | |
| 13 broker at Aon for NBC. 10:18:09 | |
| 14 Q. Subsequent to that development, did 10:18:12 | |
| 15 Ms. Garber become your contact within 10:18:14 | |
| 16 NBCUniversal and Ms. Weiss become your 10:18:17 | |
| 17 contact within Aon? 10:18:19 | |
| 18 A. Yes, that's correct. 10:18:20 | |
| 19 Q. Can you explain what the role of the broker 10:18:21 | |
| 20 is in this type of policy? 10:18:25 | |
| 21 A. Well, unlike other areas of insurance, 10:18:27 | |
| 22 the broker plays a very key role in 10:18:31 | |
| 23 entertainment -- in entertainment insurance. 10:18:34 | |
| 24 There are only a handful of brokers who 10:18:38 | |
| 25 handle, I would say, 90 percent of the 10:18:40 | |
| | |
| Page 386 | |
| | |
| 1 entertainment business in the United States. 10:18:42 | |
| 2 And the brokers act as an advocate for their 10:18:44 | |
| 3 insureds and they play a vital role in the 10:18:47 | |
| 4 investigation as well. 10:18:51 | |
| 5 So, for example, if a broker submits 10:18:52 | |
| 6 a claim to me, I don't call the insured 10:18:54 | |

1063

| Deposition Designation | Objection & Response |
|---|---|
| 7 directly, I call the broker and the broker 10:18:56<br>8 supplies information. And if I say I need to 10:18:58<br>9 meet with the insured or talk to the insured 10:19:00<br>10 to gather information about the claim, at 10:19:03<br>11 least initially the broker will be involved 10:19:06<br>12 until at least there's a coverage 10:19:09<br>13 determination. 10:19:10<br>14 If it's determined that they -- the 10:19:11<br>15 claim is actually covered then frequently we 10:19:12<br>16 will deal specifically with the insured after 10:19:15<br>17 that unless there is some conflict between 10:19:18<br>18 what the insured thinks they should be paid 10:19:20<br>19 and what the insurer thinks they should be 10:19:22<br>20 paid, in which case the broker then gets 10:19:24<br>21 involved again. 10:19:26<br>22 Q. And on the NBCUniversal relationship in 10:19:29<br>23 particular, were you dealing with the broker? 10:19:33<br>24 A. Oh, yes, always. 10:19:37<br>25 Q. When the Dig claim was submitted, did you 10:19:40<br><br>Page 387<br><br>1 make a point to review the insurance policy 10:19:43<br>2 that was in place? 10:19:45<br>3 A. Yes, I did. 10:19:47<br>4 Q. And is Exhibit 38 the document that you 10:19:49<br>5 reviewed? 10:19:52<br>6 A. Yes, it is. 10:19:53 | |

| Deposition Designation | Objection & Response |
|---|---|
| 7 Q. How did you go about your review of the 10:19:53<br>8 policy? 10:19:57<br>9 A. When I get a claim, I start at the beginning 10:19:58<br>10 of the policy. And in this case I would look 10:20:01<br>11 at -- okay, so there -- there's a list of the 10:20:03<br>12 kinds of coverage that is involved in the 10:20:06<br>13 policy, and I want to look at what the -- 10:20:08<br>14 the -- the actual limits are on the policy. 10:20:11<br>15 And then I turn to the form list. 10:20:14<br>16 The form list tells me all of the forms that 10:20:17<br>17 are contained within the policy. In this 10:20:21<br>18 particular case, I would look at the common 10:20:23<br>19 policy provisions. I would look at the 10:20:25<br>20 motion picture portfolio general conditions, 10:20:27<br>21 because those apply to all of the different 10:20:29<br>22 coverages that are contained in the policy. 10:20:31<br>23 And then I would go through the 10:20:35<br>24 different forms. In this case there are a 10:20:37<br>25 variety of different forms. There's cast 10:20:39<br><br>Page 388<br><br>1 coverage. That wouldn't apply in this case, 10:20:42<br>2 because this didn't involve injury to a cast 10:20:43<br>3 member. There's broad form disgrace. Again, 10:20:48<br>4 there was no disgrace claim, so I wouldn't 10:20:51<br>5 look at that necessarily. Negative film and 10:20:53<br>6 faulty film stock, nothing had gone wrong with the 10:20:53<br>7 film, so that's not applicable. 10:20:55<br>8 Extra expense, extra expense is what 10:20:57 | |

**1065**

| Deposition Designation | Objection & Response |
|---|---|
| 9 you pay when a production company has to shut 10:20:59<br>10 down production, so that was clearly the 10:21:02<br>11 portion of the policy that would be relevant 10:21:05<br>12 in this situation. 10:21:07<br>13 Then there are a variety of other 10:21:08<br>14 types of coverage, animal/property, 10:21:11<br>15 property/animal, third-party property damage, 10:21:13<br>16 and a variety of other kinds of coverages, 10:21:17<br>17 but extra expense was the one at play here. 10:21:20<br>18 Q. Do you begin your review broadly by looking 10:21:23<br>19 at the policy as a whole? 10:21:26<br>20 A. Yes, I do. 10:21:27<br>21 Q. And do you have a personal practice in regard 10:21:28<br>22 to how you go about looking at the policy? 10:21:29<br>23 A. Yes, I think I just described it. I look at 10:21:31<br>24 the dec page, the declarations page that 10:21:35<br>25 describes what the limits are, and then I 10:21:37<br><br>Page 389<br><br>1 looked at the form sheet. I determine what 10:21:39<br>2 the relevant forms are that need to be 10:21:42<br>3 investigated or reviewed pursuant to the -- 10:21:44<br>4 the -- what I know about the claim at that 10:21:49<br>5 time, and then I review those portions of the 10:21:51<br>6 policy. 10:21:53<br>7 Q. And why is the review of the policy as a 10:21:54<br>8 whole important? 10:21:56 | |

| Deposition Designation | Objection & Response |
|---|---|
| 9 A. Well, you have to review the policy as a 10:21:58<br>10 whole because there are different portions of 10:22:01<br>11 the policy that might apply to a claim. And 10:22:03<br>12 so if you only zero in on one small part, you 10:22:05<br>13 could be missing other -- other portions of 10:22:09<br>14 the contract that are applicable to the 10:22:12<br>15 situation. 10:22:13<br>16 Q. As you progressed in your review of the Dig 10:22:15<br>17 claim, did you determine that there were 10:22:17<br>18 certain parts of Exhibit 38 that were most 10:22:19<br>19 relevant to your work? 10:22:21<br>20 A. Yes, I did. 10:22:22<br>21 Q. What were those parts? 10:22:23<br>22 A. The general conditions page and the extra 10:22:24<br>23 expense form. 10:22:28<br>24 Q. How did you first learn of the existence of 10:22:32<br>25 the claim on the show Dig? 10:22:35<br>TSG Reporting - Worldwide 877-702-9580<br>8 (Pages 390 to 393)<br><br>Page 390<br><br>1 A. Danny Gutterman contacted me, and Susan Weiss 10:22:37<br>2 and Andrea Garber were also on the telephone, 10:22:41<br>3 and they discussed what was happening on the 10:22:44<br>4 ground in Israel. 10:22:47 | |

| Deposition Designation | Objection & Response |
|---|---|
| 5 Q. Did Ms. Garber and Ms. Weiss share factual 10:22:47<br>6 information with you in that call? 10:22:52<br>7 A. Well, what they told me was that they were -- 10:22:53<br>8 that there was heavy rocket fire coming from 10:22:58<br>9 Gaza into Israel, and that the amount of 10:23:01<br>10 rocket fire that was occurring made it 10:23:03<br>11 dangerous for them to try to continue to film 10:23:06<br>12 in Tel Aviv and Jerusalem, which were their 10:23:10<br>13 two filming locations. 10:23:13<br>14 Q. Can you recall any other information they 10:23:15<br>15 shared with you about the safety situation? 10:23:17<br>16 A. Well, they had been informed by their head of 10:23:19<br>17 security that they could no longer guarantee 10:23:22<br>18 the safety of the casting crew. 10:23:25<br>19 Q. Did you seek information from Ms. Weiss and 10:23:27<br>20 Ms. Garber in that call? 10:23:29<br>21 A. Absolutely. I mean, the first thing we 10:23:30<br>22 wanted to make sure is that everyone was 10:23:33<br>23 safe. That's the primary concern. So I 10:23:34<br>24 wanted to know, you know, who was still on 10:23:36<br>25 the ground, had they gotten them out. 10:23:38<br><br>Page 391<br><br>1 And in this particular case, they 10:23:42<br>2 were actually on hiatus, which is usual 10:23:44 | |

| Deposition Designation | Objection & Response |
|---|---|
| 3 between a pilot and primary shooting before a 10:23:46<br>4 season. And so most of the actors and the 10:23:49<br>5 crew were not located there. 10:23:52<br>6 There was, I think, some local crew 10:23:53<br>7 members that actually lived in Israel who 10:23:55<br>8 were still present, but the production was -- 10:23:57<br>9 was not trying to get them out of Israel 10:24:01<br>10 since that's where they lived. 10:24:03<br>11 Q. Did you discuss any issues about timing as 10:24:09<br>12 part of that call? 10:24:12<br>13 A. Well, one of the things that -- that -- you 10:24:12<br>14 know, in every kind of production situation 10:24:13<br>15 the insured wants to know as quickly as 10:24:15<br>16 humanly possible whether or not their claim 10:24:17<br>17 is covered, and that's understandable, 10:24:20<br>18 because they want to know whether or not 10:24:22<br>19 they're going to have insurance money to make 10:24:24<br>20 the determination about what they do next or 10:24:26<br>21 whether or not they're only relying on their 10:24:28<br>22 own funds. 10:24:31<br>23 So that's a perfectly understandable 10:24:31<br>24 need of theirs, to get a decision as quickly 10:24:35<br>25 as they possibly can. So Susan and Andrea 10:24:37<br><br>Page 392 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1 both made us aware that they -- they wanted a 10:24:41<br>2 quick answer, but we also all agreed that 10:24:43<br>3 while it was certainly prudent for them to 10:24:47<br>4 push for a week, we were hoping that there 10:24:49<br>5 would be deescalation in the hostilities and 10:24:52<br>6 that they would be able to get up and running 10:24:56<br>7 again. 10:24:58<br>8 Q. Now, as a representative of the insurance 10:24:58<br>9 company, do you make any suggestions about 10:25:01<br>10 production decisions? 10:25:03<br>11 A. No, absolutely not. That's not my job. 10:25:05<br>12 Creative decisions are left to the -- to the 10:25:07<br>13 client, to the insured. It would be -- it 10:25:09<br>14 wouldn't be appropriate for me to be talking 10:25:13<br>15 to them about creative decisions. 10:25:15<br>16 Q. As a part of this initial conversation, did 10:25:16<br>17 you discuss your next steps with Ms. Weiss 10:25:21<br>18 and Ms. Garber? 10:25:24<br>19 A. Well, we all agreed that we wanted to have 10:25:25<br>20 another phone call very soon, and I think we 10:25:28<br>21 scheduled one -- I think the first call was 10:25:30<br>22 on a Tuesday, we scheduled another call for 10:25:32<br>23 Friday to see if there had been some 10:25:34<br>24 deescalation in the hostilities. 10:25:37<br>25 10:25:41<br><br>Page 393 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1 (Whereupon, Exhibit 232 was 10:25:41<br>2 marked for identification.) 10:25:42<br>3 BY MS. REED: 10:25:42<br>4 Q. Let me hand you what's been marked as 10:25:42<br>5 Exhibit 232. Can you identify Exhibit 232 as 10:25:45<br>6 an e-mail string beginning with the earliest 10:25:56<br>7 e-mail on July 14th and running through 10:26:01<br>8 July 15th on an item that was cc'd to you? 10:26:04<br>9 A. Yes, that is exactly what this is. It looks 10:26:08<br>10 like this is also the first written notice 10:26:12<br>11 that -- that OneBeacon had of the claim, of 10:26:14<br>12 the Dig claim, and then there are some 10:26:18<br>13 subsequent e-mails, an e-mail from Danny to 10:26:20<br>14 Peter. 10:26:23<br>15 Q. Let me direct your attention -- 10:26:24<br>16 A. Peter Williams. 10:26:26<br>17 Q. -- if I can, ma'am, to the second page of 10:26:27<br>18 this exhibit. In the middle of the page do 10:26:31<br>19 you see an e-mail from Susan Weiss dated 10:26:34<br>20 July 15th, 2014, to Michael J. Arevalo? 10:26:36<br>21 A. I do. 10:26:40<br>22 Q. And is this what you're referring to as the 10:26:41<br>23 submission of the claim? 10:26:44<br>24 A. Yes. 10:26:44<br>25 Q. At some point in time during your involvement 10:26:47<br><br>Page 394<br><br>1 in the claim, did you review this? 10:26:49<br>2 A. I did, yes. 10:26:51 | Plaintiff's Objections:<br>Page 394:22-25<br>MIL, 402,403,802<br><br>Defendant's Response:<br>"MIL" not clear objection;<br>ASIC's understanding and |

| Deposition Designation | Objection & Response |
|---|---|
| 3 Q. Was this different information than what 10:26:53<br>4 Ms. Weiss or Ms. Garber had provided? 10:26:56<br>5 A. Well, there was more information, because 10:26:59<br>6 this -- the initial e-mail that Susan sent 10:27:01<br>7 also included an e-mail that Andrea had 10:27:05<br>8 received from their security person, so it 10:27:08<br>9 included information that he had given them 10:27:14<br>10 with regard to the hostilities that were 10:27:17<br>11 occurring in Israel and the fact that he 10:27:19<br>12 didn't think that the situation was likely to 10:27:23<br>13 change and that that increased the level of 10:27:26<br>14 risk. 10:27:28<br>15 Q. Do you recall receiving any other written 10:27:29<br>16 information about reports on safety and 10:27:31<br>17 security from NBCUniversal? 10:27:35<br>18 A. No, not that I'm aware of. 10:27:39<br>19 Q. Was this the totality of written information 10:27:43<br>20 that you had to begin your investigation? 10:27:46<br>21 A. Yes. 10:27:51<br>22 Q. Would you direct your attention to the final 10:27:58<br>23 e-mail, ma'am, that's on the first page, top 10:28:00<br>24 of the page. This is from Mr. Gutterman 10:28:03<br>25 directed to Peter Williams and copied to you. 10:28:05<br><br><br>Page 395<br><br>1 Do you see that? 10:28:08<br>2 A. I do. 10:28:08 | development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. Witness testifying as to personal knowledge. The witness's actions in researching and responding to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. Would be prejudicial to Defendant if not allowed. Not offered for the truth of the matter asserted. 801; 807.<br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 395:1-8<br>MIL,402,403,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and |

| Deposition Designation | Objection & Response |
| --- | --- |
| 3 Q. Mr. Gutterman makes reference to a report 10:28:09<br>4 from CBS News two days ago. Do you see that? 10:28:15<br>5 A. I do, yup. 10:28:18<br>6 Q. And at some point in your involvement in this 10:28:19<br>7 claim did you review that video? 10:28:21<br>8 A. Yes, I did. 10:28:22<br>9 Q. Let me turn back to the claim being submitted 10:28:25<br>10 to OneBeacon, please, ma'am. Was an actual 10:28:28<br>11 assignment of the claim made? 10:28:31<br>12 A. Yes, it was assigned to Danny. 10:28:33<br>13 Q. And who worked directly on the handling of 10:28:35<br>14 the claim? 10:28:38<br>15 A. Danny worked on the handling of the claim, 10:28:38<br>16 and I also worked on the handling of the 10:28:43<br>17 claim. My supervisor, Theresa Gooley, was 10:28:45<br>18 kept in the loop with regard to what we were 10:28:49<br>19 doing in investigating the claim, and we also 10:28:50<br>20 discussed that with Peter Williams. 10:28:51<br>21 Q. So what role did you play and what role did 10:28:53<br>22 Mr. Gutterman play? 10:28:55<br>23 A. So we were collaborating, because there was a 10:28:57<br>24 very short time frame here in which to get 10:28:59<br>25 information to the insured. And because it 10:29:02 | development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. Witness testifying as to personal knowledge.<br>The witness's actions in researching and responding to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 396<br><br>1 was a volatile situation and changing 10:29:06<br>2 quickly, we both were doing research on what 10:29:08<br>3 exactly was happening in Israel and what had 10:29:11<br>4 been happening in Israel and how that 10:29:13<br>5 situation was developing. 10:29:17<br>6 With regard to the coverage, we were 10:29:19<br>7 both evaluating the policy, I was doing the 10:29:21<br>8 legal research that was involved in 10:29:24<br>9 interpreting the -- the provisions of the 10:29:26<br>10 policy. 10:29:30<br>11 Q. Eventually, were others at OneBeacon also 10:29:30<br>12 involved in the work on this claim? 10:29:34<br>13 A. Well, as I said, I kept Theresa Gooley, my 10:29:35<br>14 supervisor, in the loop, and I think at some 10:29:40<br>15 point she talked to Sean Duffy about this. 10:29:42<br>16 Sean Duffy is the head of claim. 10:29:46<br>17 Q. And why did you keep Ms. Gooley in the loop? 10:29:48<br>18 A. Well, NBC is a very important client of ours. 10:29:51<br>19 I knew that -- that if there were going to be 10:29:53<br>20 a denial of the claim, that they would 10:29:55<br>21 certainly want to involve her and talk to 10:29:56<br>22 her, because that is usual in entertainment 10:29:58<br>23 claims, if you deny a claim, there's going to 10:30:00<br>24 be escalation to your supervisor and they are 10:30:03<br>25 going to want to talk to them, and they would 10:30:05 | |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 397</u><br><br>1 also be wanting to talk to Peter Williams, so 10:30:07<br>2 he was also kept in the loop. 10:30:11<br>3 Q. And what role was Peter Williams playing in 10:30:13<br>4 the overall process? 10:30:15<br>5 A. He was -- he was merely a sounding board. I 10:30:16<br>6 mean, we want to keep him in the loop because 10:30:18<br>7 we know that the client is ultimately going 10:30:21<br>8 to be contacting him. Peter also has 10:30:23<br>9 extensive experience in claims himself. In 10:30:26<br>10 fact, before I held the position of claim 10:30:29<br>11 lead, he had -- he had held that position 10:30:30<br>12 before himself before he became the president 10:30:32<br>13 of OneBeacon entertainment. But as the 10:30:35<br>14 president of OneBeacon entertainment, he was 10:30:37<br>15 actually on the underwriting side, not on the 10:30:39<br>16 claims side, and he did not have the power to 10:30:41<br>17 actually make a coverage determination. 10:30:43<br>18 Q. Did you view Mr. Williams' input and 10:30:45<br>19 experience as helpful in this process? 10:30:48<br>20 A. Absolutely. 10:30:50<br>21 Q. Was it typical at OneBeacon for so many 10:30:51<br>22 different people to be involved in the claim 10:30:54<br>23 process? 10:30:56<br>24 A. Well, I mean, it depends on the kind of claim 10:30:56 | |

| Deposition Designation | Objection & Response |
|---|---|
| 25 it is. If it's a car accident case, no, 10:30:59 | |

Page 398

1 probably not. If it's a high-profile 10:31:01
2 insured, you know, a famous celebrity or 10:31:06
3 something like that, then, yes, we would 10:31:11
4 probably contact more people just to make 10:31:13
5 them aware. Not that they are necessarily 10:31:14
6 going to have input on the claim, but they 10:31:17
7 should -- they should definitely know that 10:31:19
8 the claim exists. So it would just depend on 10:31:19
9 the circumstances of the claim. 10:31:22
10 Q. Now, you mentioned involving Ms. Gooley in 10:31:24
11 the context of a situation where a claim 10:31:26
12 might be denied. When this claim first came 10:31:29
13 in, did you anticipate that it would be 10:31:32
14 denied? 10:31:33
15 A. I had no idea if it would be denied or not. 10:31:34
16 Q. Did this claim require some level of analysis 10:31:39
17 in order to make that determination? 10:31:44
18 A. It actually -- yes, it involved extensive 10:31:46
19 analysis. 10:31:47
20 Q. Was Tuesday, July the 15th, the first time 10:31:50
21 you can recall receiving information on the 10:31:53
22 Dig claim? 10:31:55
23 A. Yes. 10:31:55
24 Q. And you have indicated the information you 10:31:56
25 personally received by telephone today; is 10:32:02

| Deposition Designation | Objection & Response |
|---|---|
| Page 399 | |
| | |
| 1 that right? 10:32:06 | |
| 2 A. That's correct. 10:32:06 | |
| 3 Q. Did you begin an investigation that same day 10:32:07 | |
| 4 that you received the information from the 10:32:10 | |
| 5 insured? 10:32:12 | |
| 6 A. Yes. Actually, it was in the evening. I 10:32:12 | |
| 7 think that the call on -- on my time took 10:32:15 | |
| 8 place later in the day, and so I started my 10:32:19 | |
| 9 investigation that evening. 10:32:23 | |
| 10 Q. What steps did you take after the phone call? 10:32:24 | |
| 11 A. Well, the first thing I wanted to do was 10:32:27 | |
| 12 review the policy. The second thing I wanted 10:32:29 | |
| 13 to do was to start gathering information, the 10:32:32 | |
| 14 actual factual investigation of the claim, in 10:32:34 | |
| 15 other words, what was actually happening in 10:32:36 | |
| 16 Israel, and if -- to determine whether or not 10:32:38 | |
| 17 what is -- was happening in Israel actually 10:32:42 | |
| 18 was deescalating or whether the situation was 10:32:46 | |
| 19 so dangerous that the production could not 10:32:49 | |
| 20 continue, and what the circumstances had been 10:32:53 | |
| 21 preceding this. 10:32:55 | |
| 22 Q. So after the call did you formulate your own 10:32:56 | |

| Deposition Designation | Objection & Response |
|---|---|
| 23 plan about how you were going to proceed? 10:32:58<br>24 A. Well, I was going to investigate the facts, I 10:33:00<br>25 was going to review the coverage, I was going 10:33:02<br><br>Page 400<br><br>1 to analyze the coverage, which could involve 10:33:03<br>2 legal research, and I was going to reach a 10:33:07<br>3 determination. 10:33:10<br>4 Q. So what steps did you actually begin to take 10:33:10<br>5 that evening? 10:33:13<br>6 A. I started researching what was happening on 10:33:14<br>7 the ground in Israel. That was the primary 10:33:17<br>8 focus of my -- of my research. I don't 10:33:22<br>9 remember specifically if I looked at the 10:33:26<br>10 policy that night or if I didn't look at the 10:33:27<br>11 policy until the next day. 10:33:30<br>12 Q. About how many hours of work did you spend in 10:33:31<br>13 researching the factual situation? 10:33:35<br>14 A. During what period of time? 10:33:38<br>15 Q. Over the, let's call it the initial period 10:33:39<br>16 that you were involved with the claim. 10:33:42<br>17 A. Well -- 10:33:44<br>18 Q. The first few days. 10:33:45<br>19 A. Yeah, the first few days I probably spent 10:33:46<br>20 over 20 hours doing research. 10:33:48<br>21 Q. And that's just looking at factual 10:33:50<br>22 information? 10:33:52<br>23 A. Yes, and looking at the policy also. 10:33:52 | |

**1078**

| Deposition Designation | Objection & Response |
|---|---|
| 24 Q. And over what period of time did you continue 10:33:54<br>25 the factual information research? 10:33:56<br><br><br>Page 401<br><br>1 A. Well, for quite a long period of time. In 10:34:00<br>2 fact, I continued to gather information until 10:34:03<br>3 after the war had ended. 10:34:05<br>4 Q. And do you recall approximately when that 10:34:07<br>5 was? 10:34:09<br>6 A. The war ended at the end of August 2014. 10:34:09<br>7 When I say, "The war," I mean the -- the war 10:34:12<br>8 between Hamas and Israel. 10:34:15<br>9 Q. On Exhibit 232 Mr. Gutterman made reference 10:34:22<br>10 to a CBS News clip on July 15th to you and to 10:34:25<br>11 Mr. Williams; do you see that? 10:34:30<br>12 A. I do. 10:34:31<br>13 Q. And you indicated earlier that you did review 10:34:32<br>14 this? 10:34:35<br>15 A. I did. 10:34:35<br>16 MS. REED: Let me ask the 10:34:36<br>17 technician if we can play the video at this 10:34:38<br>18 point in time. 10:34:40<br>19 For the record, I will designate 10:34:46<br>20 this as Exhibit 233. It's produced in the 10:34:47<br>21 case as ATL 4496. 10:34:52<br>22 (Whereupon, Exhibit 233 was<br>23 marked for identification.)<br>24 (Video started.) | Plaintiff's Objections:<br>Page 401:4-8<br>MIL,402,403,701<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's actions in researching and responding to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not opinion testimony.<br><br>Plaintiff's Objections:<br>Page 401:9-25<br>MIL,402,403,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's knowledge, |

| Deposition Designation | Objection & Response |
|---|---|
| 25 MS. REED: That's the incorrect | research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |
| Page 402 | Plaintiff's Objections: Page 402:1-25 MIL,402,403,802 |
| 1 one.<br>2 THE VIDEOGRAPHER: That's the one<br>3 named ATL00498.<br>4 MS. REED: I need 6.<br>5 THE VIDEOGRAPHER: The other one<br>6 doesn't have a number.<br>7 "BOB SCHIEFFER: And good morning 10:35:26<br>8 again. To get that news on the overnight 10:35:27<br>9 developments, we go first to Holly Williams 10:35:29<br>10 in Gaza City. Holly. 10:35:33<br>11 "HOLLY WILLIAMS: Good morning, Bob. 10:35:36<br>12 Israeli commanders clashed with Palestinian 10:35:38<br>13 militants on the coast here early this 10:35:39<br>14 morning. It's the first gun fight since this 10:35:41<br>15 escalation began, and it comes as Israel 10:35:43<br>16 considers whether to mount a ground invasion. 10:35:46<br>17 "The Israeli military says four of 10:35:49<br>18 the soldiers were lightly wounded as they 10:35:52<br>19 attacked a site used to fire long range 10:35:53<br>20 rockets in what may be the first ground 10:35:57 | Defendant's Response: "MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 21 incursion of this conflict. 10:35:59<br>22 "The militants have launched 10:36:00<br>23 hundreds of rockets into Israel over the last 10:36:02<br>24 week. They've caused some damage and 10:36:04<br>25 injuries, but so far no Israelis have been 10:36:06<br><br><br>Page 403<br><br>1 killed, and that's thanks in large part to 10:36:10<br>2 Israel's Iron Dome anti-missile defense 10:36:10<br>3 system which shoots those rockets down. 10:36:14<br>4 "Now, the Palestinians have no such 10:36:16<br>5 protection, and Israel bombarded them again 10:36:20<br>6 for a fifth night last night. One air strike 10:36:22<br>7 on the home of Gaza's police chief killed 18 10:36:25<br>8 people. 10:36:28<br>9 "The Israeli military says it's 10:36:28<br>10 targeting sites used by militants, but 10:36:31<br>11 Palestinian officials say more than 150 10:36:33<br>12 people have lost their lives, and they say 10:36:36<br>13 that includes scores of civilians. 10:36:38<br>14 "The Israeli military dropped 10:36:41<br>15 leaflets from the air in northern Gaza 10:36:43<br>16 warning residents to evacuate for their own 10:36:45<br>17 safety, and today hundreds of families have 10:36:48<br>18 fled their homes and taken refuge in school 10:36:49<br>19 buildings here in Gaza City. 10:36:53<br>20 "The Israeli military, meanwhile, 10:36:55<br>21 has called up more than 30,000 reservists and 10:36:56 | Plaintiff's Objections:<br>Page 403:1-25<br>MIL,402,403,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 22 has amassed troops on the border adding to 10:36:59<br>23 fears of a ground invasion. 10:37:02<br>24 "And despite calls for a cease fire 10:37:03<br>25 from the UN Security Council, so far both 10:37:06<br><br>Page 404<br><br>1 sides have resisted international pressure to 10:37:10<br>2 end the violence. 10:37:12<br>3 "Bob. 10:37:13<br>4 "BOB SCHIEFFER: Holly Williams. 10:37:14<br>5 Thank you so much, Holly, and be careful." 10:37:16<br>6 BY MS. REED: 10:37:20<br>7 Q. Did Mr. Gutterman indicate to you in his 10:37:21<br>8 e-mail that that was a clip from two days 10:37:23<br>9 before July the 15th? 10:37:26<br>10 A. Yes, so it would have been on July the 13th. 10:37:27<br>11 Q. Did the information in the video clip inform 10:37:32<br>12 your investigation that you had ongoing? 10:37:37<br>13 A. Yes, it did. 10:37:39<br>14 Q. Was this one of the sources that you reviewed 10:37:41<br>15 in the process of your factual investigation? 10:37:43<br>16 A. One of many. 10:37:45<br>17 Q. What factual information from the video did 10:37:47<br>18 you incorporate into your overall 10:37:51<br>19 investigation? 10:37:53<br>20 A. Well, I mean, I thought about all of the 10:37:54 | Plaintiff's Objections:<br>Page 404:1-25<br>MIL,402,403,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 21 information that was presented, the fact that 10:37:56<br>22 there were rockets that were going into 10:37:59<br>23 Israel, and the fact that the Israelis were 10:38:00<br>24 retaliating against the rocket fire by, you 10:38:04<br>25 know, conducting air strikes into Gaza that 10:38:07<br><br>Page 405<br><br>1 was causing, you know, substantial physical 10:38:11<br>2 damage, property damage, but also that was 10:38:14<br>3 killing civilians. 10:38:16<br>4 Q. Were there other factual matters contained in 10:38:18<br>5 the video that you noted as part of your 10:38:22<br>6 overall investigation? 10:38:24<br>7 A. Well, from what they were saying, it appeared 10:38:25<br>8 to be the hostilities were ongoing and that 10:38:27<br>9 they were -- you know, it was back and forth, 10:38:30<br>10 the Hamas was participating and that the 10:38:34<br>11 Israelis were also participating, and that 10:38:39<br>12 they were using, you know, a variety of 10:38:43<br>13 different kinds of weaponry with regard to 10:38:45<br>14 what was happening both in Gaza and in 10:38:50<br>15 Israel. 10:38:53<br>16 Q. Did you review other source material that 10:38:54<br>17 conveyed similar information to you at this 10:38:56<br>18 time? 10:38:59<br>19 A. Yes, I did. 10:38:59 | <br>Plaintiff's Objections:<br>Page 405:1-25<br>MIL,402,403,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 20 Q. Can you give an overview of the scope of the 10:39:01<br>21 research that you conducted on the facts? 10:39:03<br>22 A. Yes. I looked at a variety of newspaper 10:39:06<br>23 articles, both articles that were in 10:39:10<br>24 Israeli newspapers. I think I looked at 10:39:14<br>25 The Guardian, I looked at U.S. newspapers, 10:39:20<br><br>Page 406<br><br>1 The Washington Post, New York Times, 10:39:23<br>2 Wall Street Journal. 10:39:23<br>3 I looked at -- oh, I don't know. 10:39:27<br>4 You know, I looked at White papers that had 10:39:28<br>5 been presented, not -- not with regard to 10:39:31<br>6 this specific situation, but with regard to 10:39:35<br>7 Israeli tensions with Hamas. I investigated 10:39:37<br>8 Hamas itself as an organization. I looked at 10:39:42<br>9 a lot of video clips, including video clips 10:39:47<br>10 by NBC. I don't know, I -- I did a lot of 10:39:50<br>11 research. 10:39:55<br>12 Q. How did you go about conducting the searches 10:39:56<br>13 to get the information that you reviewed? 10:40:00<br>14 A. Well, I -- I looked mostly online, and then 10:40:02<br>15 from -- from the research that I did online I 10:40:05<br>16 drilled down into different things that I 10:40:08<br>17 found. In other words, I could be looking at 10:40:10<br>18 one -- one article that could reference 10:40:12<br>19 another article, and I would look at that, 10:40:14<br>20 that kind of thing. 10:40:16 | Plaintiff's Objections:<br>Page 406:4-11<br>MIL,402,403,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 21 Q. How many different sources would you estimate 10:40:17<br>22 you reviewed as part of this process? 10:40:19<br>23 A. Oh, I couldn't even begin to tell you. It 10:40:21<br>24 was a lot. More than 50. 10:40:24<br>25 Q. Sitting here today, can you recall every 10:40:29<br><br>Page 407<br><br>1 source that you reviewed? 10:40:32<br>2 A. Not a chance. 10:40:35<br>3 Q. Was it your practice at the time to make a 10:40:36<br>4 physical printout or copy of every source 10:40:40<br>5 that you referenced? 10:40:43<br>6 A. No, I'd be killing a lot of trees. 10:40:45<br>7 Q. Was it your personal practice at that time to 10:40:47<br>8 document an electronic copy of every single 10:40:52<br>9 source you looked at? 10:40:56<br>10 A. No, not necessarily. It would depend on -- 10:40:57<br>11 on how important the source was in informing 10:40:59<br>12 what I looked at. You know, I looked at a 10:41:03<br>13 lot of stuff that I might not have considered 10:41:06<br>14 relevant in the long run or I was only -- you 10:41:08<br>15 know, was just providing me with the same 10:41:11<br>16 information that another source had provided 10:41:13<br>17 me with, so I wouldn't necessarily capture 10:41:14 | |

| Deposition Designation | Objection & Response |
|---|---|
| 18 that. You know, mostly what I was trying to 10:41:17<br>19 do is -- is -- is get a factual understanding 10:41:21<br>20 of exactly what was going on there. 10:41:23<br>21 Q. Were you successful in getting a factual 10:41:25<br>22 understanding of what was going on? 10:41:28<br>23 A. I certainly thought so, yes. 10:41:30<br>24 Q. As part of this process, were you sharing 10:41:32<br>25 links to articles with Mr. Gutterman? 10:41:34<br><br>Page 408<br><br>1 A. Yes, I certainly sent him links of things to 10:41:37<br>2 look at. I certainly did not share every 10:41:40<br>3 single thing I was looking at, neither did he 10:41:42<br>4 share every single thing he was looking at. 10:41:45<br>5 He was doing a simultaneous investigation and 10:41:47<br>6 he wasn't sharing everything that he saw with 10:41:49<br>7 me either. 10:41:51<br>8 (Whereupon, Exhibit 234 was 10:41:52<br>9 marked for identification.) 10:41:53<br>10 BY MS. REED: 10:41:53<br>11 Q. Let me hand you what's been marked as 10:41:53<br>12 Defendant's Exhibit 234, please, ma'am. 10:41:56<br>13 Can you identify Exhibit 234 as an 10:41:58<br>14 e-mail string between yourself and 10:42:00<br>15 Mr. Gutterman over the course of July the 10:42:03<br>16 16th? 10:42:04<br>17 A. Yes, that's exactly what it was. 10:42:05<br>18 Q. Is this an example of the types of 10:42:07 | Plaintiff's Objections:<br>Page 408:11-25<br>MIL,402,403,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 19 information you were sharing with one 10:42:10<br>20 another? 10:42:11<br>21 A. Yes, it is. 10:42:11<br>22 Q. Let me ask you to look at the bottom e-mail 10:42:12<br>23 on the page, please, ma'am, from you to 10:42:15<br>24 Mr. Gutterman. Do you see that one? 10:42:17<br>25 A. Yes. 10:42:20<br><br><br>Page 409<br><br>1 Q. There are a number of sources identified 10:42:20<br>2 there. Can you tell us, generally speaking, 10:42:24<br>3 what those were? 10:42:28<br>4 A. Yes. They were newspaper articles primarily, 10:42:29<br>5 some from Global News organizations, some 10:42:32<br>6 from Middle East organizations, and some from 10:42:35<br>7 U.S. organizations. 10:42:37<br>8 Q. Did you actually make a review of the items 10:42:38<br>9 that are listed there? 10:42:40<br>10 A. Yes, that was my purpose in sending them to 10:42:41<br>11 him. 10:42:44<br>12 Q. Did you discuss any of these materials with 10:42:47<br>13 Mr. Gutterman? 10:42:49<br>14 A. I don't remember specifically talking about 10:42:50<br>15 each article, but we certainly discussed the 10:42:52<br>16 situation in general, yes. 10:42:55<br>17 (Whereupon, Exhibit 235 was 10:42:58 | Plaintiff's Objections:<br>Page 409:1-25<br>MIL,402,403,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 18 marked for identification.) 10:42:59<br>19 BY MS. REED: 10:42:59<br>20 Q. Let me hand you what's been marked as 10:43:06<br>21 Exhibit 235, please, ma'am, and ask you to 10:43:10<br>22 take a look at that. 10:43:12<br>23 A. (Reviews document.) 10:43:47<br>24 Q. Can you identify Exhibit 235 as the 10:44:39<br>25 Middle East Eye article that you had 10:44:42<br><br>Page 410<br><br>1 mentioned to Mr. Gutterman in your e-mail, 10:44:47<br>2 which is marked Exhibit 234? 10:44:50<br>3 A. Yes, that's what it is. 10:44:52<br>4 Q. And do you recall reading this article at the 10:44:54<br>5 time? 10:44:56<br>6 A. Yes, I do. 10:44:56<br>7 Q. Is there particular information in the 10:44:57<br>8 article that informed the overall 10:45:01<br>9 investigation that you were conducting? 10:45:03<br>10 A. I think that what was most important to me is 10:45:04<br>11 that there are a variety of quotes from each 10:45:08<br>12 side, so this is actually what the Israelis 10:45:10<br>13 are saying and actually what Hamas is saying. 10:45:17<br>14 And they are talking about the 10:45:20<br>15 number of rocket strikes, they are talking 10:45:21<br>16 about the fact that the Hamas is saying if 10:45:24<br>17 they don't stop attacking the civilian homes 10:45:27<br>18 that the hostilities are going to continue. 10:45:30<br>19 There's also a discussion of the 10:45:33 | Plaintiff's Objections:<br>Page 410:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 20 fact that for the first time since 2012 10:45:35<br>21 Tel Aviv and Jerusalem and Haifa were targets 10:45:38<br>22 for long-ranged rockets from Hamas. It says 10:45:45<br>23 that there are tanks. It's says -- so we 10:45:52<br>24 know that there are rockets, we know there 10:45:54<br>25 are air strikes, we know that there are 10:45:57<br><br>Page 411<br><br>1 tanks, from this article. 10:45:59<br>2 It looks like that there's -- 10:46:06<br>3 there's some discussion that's taking place 10:46:08<br>4 or attempts at discussion between the general 10:46:09<br>5 secretary of the Israelis -- of the Israeli 10:46:13<br>6 government and the Palestinian president, who 10:46:18<br>7 is Mahmoud Abbas, that there have been a long 10:46:22<br>8 string of attacks. 10:46:23<br>9 It's just -- it -- it -- it's 10:46:24<br>10 obvious that there is a lot of back and forth 10:46:26<br>11 and exchange of fire and hostilities, and 10:46:29<br>12 that it doesn't look as though, at least at 10:46:32<br>13 the time of this article, that -- that -- 10:46:36<br>14 that there is a good chance that it's going 10:46:41<br>15 to deescalate. 10:46:43<br>16 Q. Would you turn back to the second page of the 10:46:44<br>17 exhibit, please, ma'am. 10:46:46<br>18 A. Sure. 10:46:48<br>19 Q. Under the heavy black line, can you read the 10:46:48 | Plaintiff's Objections:<br>Page 411:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 20 first two paragraphs that appear under that? 10:46:52<br>21 A. "The armed wing of Hamas claimed that it 10:46:54<br>22 fired long-range rockets at Jerusalem, 10:46:57<br>23 Tel Aviv and Haifa on Tuesday. For the first 10:47:00<br>24 time the (Ezzedine al-) Qassam Brigades 10:47:03<br>25 strike Haifa with R160 rocket, and strike 10:47:09<br><br>Page 412<br><br>1 occupied Jerusalem with four M75 rockets, and 10:47:12<br>2 Tel Aviv with four M75 rockets, a statement 10:47:16<br>3 from" -- "by the group said. It was the 10:47:19<br>4 first time since a major 2012 conflict that 10:47:22<br>5 Gaza-based fighters had fired rockets at 10:47:25<br>6 Jerusalem. The rockets were intercepted by 10:47:29<br>7 Israel's Iron Dome defense system." 10:47:31<br>8 Q. As part of your research, did you become 10:47:34<br>9 familiar with what the armed wing of Hamas 10:47:39<br>10 was? 10:47:40<br>11 A. Yes. 10:47:41<br>12 Q. And what was that? 10:47:41<br>13 A. It's -- it's the Qassam brigades. 10:47:43<br>14 Q. And do you know what -- or did your research 10:47:45<br>15 indicate to you what role they played in this 10:47:48<br>16 overall conflict? 10:47:50<br>17 A. They were the group that was firing rockets 10:47:51<br>18 at -- at Israel, yes. 10:47:54 | <u>Plaintiff's Objections:</u><br>Page 412:1-25<br>MIL,402,403,701,802<br><br><u>Defendant's Response</u>:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 19 (Whereupon, Exhibit 236 was 10:48:05<br>20 marked for identification.) 10:48:11<br>21 BY MS. REED: 10:48:11<br>22 Q. Let me hand you what's been marked as 10:48:11<br>23 Exhibit 236, please, ma'am, and ask you to 10:48:13<br>24 review that document. 10:48:16<br>25 A. (Reviews document.) Okay. 10:48:19<br><br>Page 413<br><br>1 Q. Can you identify Exhibit 236 as a Global News 10:51:04<br>2 article that you referred to in your e-mail 10:51:09<br>3 to Mr. Gutterman in your Exhibit 234? 10:51:12<br>4 A. Yes, that's what it is. 10:51:15<br>5 Q. Do you recall reading this article at the 10:51:17<br>6 time? 10:51:19<br>7 A. Yes, I did. 10:51:19<br>8 Q. And was there factual information in this 10:51:22<br>9 article that informed your overall 10:51:25<br>10 investigation process? 10:51:26<br>11 A. So the date of the article is on July 9th, 10:51:27<br>12 which was I think two days after Israel had 10:51:29<br>13 started Operation Protective Edge, and this 10:51:34<br>14 talks further about the hostilities. 10:51:38<br>15 It talks about the fact that there 10:51:40<br>16 are air strikes on more than 200 targets in 10:51:42<br>17 Gaza and hitting more than 50 targets just 10:51:47<br>18 on -- in one day. It talks about the fact 10:51:50<br>19 that the Israeli attacks on Hamas sites in 10:51:55<br>20 Gaza killed 14 people on Wednesday, including 10:51:59 | Plaintiff's Objections:<br>Page 413:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 21 an 80-year-old woman, that Hamas had fired 10:52:01<br>22 over 160 rockets at Israel after this whole 10:52:06<br>23 thing started with the death of some Israelis 10:52:11<br>24 teenagers. 10:52:17<br>25 And there are also some photos here, 10:52:20<br><br>Page 414<br><br>1 disturbing photos of some of the damage 10:52:24<br>2 that's been done. You can see where a 10:52:26<br>3 vehicle was targeted in an Israeli air strike 10:52:32<br>4 and the significant damage that was done not 10:52:37<br>5 just to the vehicle, but also to the 10:52:39<br>6 surrounding area. It says that it killed 10:52:41<br>7 four people. It shows a rocket being fired 10:52:44<br>8 and the Iron Dome defense system trying to 10:52:51<br>9 intercept it. 10:52:56<br>10 It also talks more about the fact 10:52:57<br>11 that they were trying to target Tel Aviv, 10:52:59<br>12 Jerusalem -- and Jerusalem. It shows images 10:53:02<br>13 of tanks. It talks about how the Israeli 10:53:05<br>14 Army is also going to try to attack by sea. 10:53:09<br>15 And I assume what they mean by that is to 10:53:12<br>16 bring gun boats in to fire long-range 10:53:14<br>17 missiles. 10:53:18<br>18 It says that Hamas had amassed about 10:53:19<br>19 10,000 rockets, including longer-range 10:53:21<br>20 rockets that could reach up to Tel Aviv and 10:53:25<br>21 beyond, which was a very -- it was a long 10:53:27<br>22 distance from -- from Gaza, it was at the 10:53:31 | Plaintiff's Objections:<br>Page 414:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 23 other side of the country going down to the 10:53:33<br>24 Mediterranean Sea. 10:53:36<br>25 The military had ordered thousands 10:53:40<br><br>Page 415<br><br>1 of Israelis within the 40 kilometer radius of 10:53:43<br>2 the Gaza strip to leave or to stay indoors or 10:53:47<br>3 near shelter. 10:53:50<br>4 So it -- it's -- it's showing that 10:53:55<br>5 there is significant fire in both directions, 10:53:56<br>6 that these parties are simultaneously 10:53:59<br>7 engaging in warlike behavior. 10:54:01<br>8 (Whereupon, Exhibit 237 was 10:54:10<br>9 marked for identification.) 10:54:11<br>10 BY MS. REED: 10:54:11<br>11 Q. Let me hand you what's been marked as 10:54:11<br>12 Exhibit 237, please, ma'am. I'll ask you to 10:54:13<br>13 review the document. 10:54:17<br>14 A. (Reviews document.) Okay. 10:54:18<br>15 Q. Can you identify Exhibit 237 as a July 15th, 10:56:04<br>16 2014, Global News article, one that was 10:56:07<br>17 referenced in your e-mail to Mr. Gutterman 10:56:13<br>18 that was labeled Exhibit 234? 10:56:16<br>19 A. Yes, that's what it is. 10:56:17<br>20 Q. Do you recall reviewing this article as part 10:56:19<br>21 of your ongoing research on the facts? 10:56:23<br>22 A. I do. 10:56:28<br>23 Q. Did information in this article inform your 10:56:29<br>24 overall factual gathering investigation? 10:56:32<br>25 A. It -- it did. This -- this article actually 10:56:35 | Plaintiff's Objections:<br>Page 415:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 416:1-25 |

**1093**

| Deposition Designation | Objection & Response |
|---|---|
| Page 416 | MIL,402,403,701,802 |
| | |
| 1 came out on the first day that -- that I 10:56:37 | Defendant's Response: |
| 2 learned about NBC's claim. And, basically, 10:56:39 | "MIL" not clear objection; |
| 3 what it says is that even though Egypt had 10:56:43 | ASIC's understanding and |
| 4 been trying to negotiate a -- a cease fire, 10:56:48 | development of facts is |
| 5 that the negotiations quickly fell apart. 10:56:53 | relevant to reasonableness |
| 6 In particular, Prime Minister 10:56:56 | of claim decision, defense |
| 7 Benjamin Netanyahu, who is the prime minister 10:57:01 | of "bad faith" allegation |
| 8 of Israel said that -- that since Hamas would 10:57:04 | and damages sought. |
| 9 not agree to a truce, that Israel had no 10:57:08 | Is not opinion testimony |
| 10 choice but to respond more forcefully. And 10:57:10 | The witness's knowledge, |
| 11 his exact quote was, "Hamas chose to continue 10:57:13 | research and response to |
| 12 fighting, will pay the price for that 10:57:17 | the claim are relevant; not |
| 13 decision. When there is no cease fire, our 10:57:19 | unfairly prejudicial to |
| 14 answer is fire." 10:57:22 | Plaintiffs, not confusing, |
| 15 It said that they had amassed 10:57:23 | misleading or cumulative |
| 16 thousands of soldiers on the border between 10:57:24 | evidence.  Not offered for |
| 17 Israel and Gaza, and that entering Gaza would 10:57:27 | the truth of the matter |
| 18 likely drive up the casualties, especially 10:57:32 | asserted. 801; 807. |
| 19 because Gaza is very small, but it has a -- 10:57:36 | |
| 20 it has a populated territory of about 1.7 10:57:39 | |
| 21 million people, most of whom are actually 10:57:43 | |
| 22 under the age of 18. 10:57:46 | |
| 23 So they talked about how they want 10:57:49 | |
| 24 to continue to focus to see if they have a 10:57:51 | Plaintiff's Objections: |
| 25 cease fire, but it doesn't look like that's 10:57:54 | Page 417:1-25 |
| | MIL,402,403,701,802 |
| Page 417 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1 going to happen, and that certainly on the 10:57:58<br>2 Israeli side that they plan to continue the 10:58:00<br>3 escalation and they -- I think specifically 10:58:02<br>4 what they said is that they were going to 10:58:08<br>5 continue until the Gaza militants had -- had 10:58:10<br>6 their military capabilities greatly reduced. 10:58:15<br>7 Q. Based on your research, was there a cease 10:58:18<br>8 fire negotiated during the month of July 10:58:21<br>9 2014? 10:58:23<br>10 A. No, there wasn't. Egypt was trying to 10:58:24<br>11 negotiate the cease fire, and they 10:58:26<br>12 actually -- the Israelis, at least, actually 10:58:28<br>13 held fire for a few brief hours until Hamas 10:58:30<br>14 rejected the truce, and then things continued 10:58:34<br>15 to escalate from there. 10:58:38<br>16 Q. After the discussion with Ms. Weiss and 10:58:42<br>17 Ms. Garber, did your review of the facts ever 10:58:44<br>18 indicate that there was a hoped-for 10:58:47<br>19 deescalation? 10:58:49<br>20 A. Well, I think that -- that in the brief 10:58:51<br>21 period of -- of the -- the 14th and 15th, and 10:58:55<br>22 maybe into the 16th, they continued to have 10:58:58<br>23 talked about how they wanted to try to -- to 10:59:00<br>24 have some kind of cease fire or a mediation 10:59:04<br>25 or that kind of thing, but at the same time, 10:59:07 | Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br><br>Plaintiff's Objections:<br>Page 418:1-7; 418:12-25<br>MIL,402,403,701,802 |

| Deposition Designation | Objection & Response |
|---|---|
| Page 418<br><br>1 Israel was amassing troops and putting tanks 10:59:10<br>2 at the border and continuing with air strikes 10:59:17<br>3 after it had suspended the air strikes for a 10:59:20<br>4 short period of time, and Hamas continued to 10:59:23<br>5 lob rockets into Israel, so it did not appear 10:59:25<br>6 that a cease fire or any kind of truce was 10:59:28<br>7 going to be negotiated. 10:59:30<br>8 Q. Based upon the research that you continued to 10:59:30<br>9 do after July 15th, was there a deescalation 10:59:33<br>10 during the month of July at all? 10:59:36<br>11 A. No, there was not. 10:59:37<br>12 Q. Was it to the contrary? 10:59:39<br>13 A. Yes. Things continued to escalate. In fact, 10:59:41<br>14 there was a ground invasion of Gaza. There 10:59:44<br>15 was considerable damage. There were -- 10:59:48<br>16 although there were a few Israeli -- Israelis 10:59:50<br>17 killed, there were more than 2,000 10:59:53<br>18 Palestinians that were killed and, you know, 10:59:55<br>19 thousands more that were injured. 10:59:57<br>20 There was a great deal of property 10:59:58<br>21 damage, some in Israel, but the majority of 11:00:00<br>22 it was -- was in the Gaza strip, and that's 11:00:03<br>23 understandable, because the Israelis have 11:00:06<br>24 better weapons than the Palestinians do -- 11:00:09<br>25 Q. Let me -- 11:00:09<br><br>Page 419 | Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. Not offered for the truth of the matter asserted. 801; 807.<br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 419:1-25<br>MIL,402,403,701,802 |

| Deposition Designation | Objection & Response |
|---|---|
| 1 A. -- and far more troops. 11:00:13<br>2 (Whereupon, Exhibit 238 was 11:00:15<br>3 marked for identification.) 11:00:15<br>4 MS. REED: Pardon me. 11:00:16<br>5 BY MS. REED: 11:00:16<br>6 Q. Let me hand you Exhibit 238, please, ma'am, 11:00:16<br>7 and ask you to take a look at it. 11:00:20<br>8 A. (Reviews document.) Okay. 11:00:23<br>9 Q. Can you identify Exhibit 238 as a 11:02:22<br>10 Washington Post article, which is one of the 11:02:24<br>11 references that you made to Mr. Gutterman in 11:02:27<br>12 your e-mail that's labeled Exhibit 234? 11:02:29<br>13 A. Yes. It was dated July 16th. 11:02:33<br>14 Q. Do you recall reviewing this Washington Post 11:02:35<br>15 article as part of your investigation? 11:02:37<br>16 A. Yes, I did. 11:02:39<br>17 Q. Did the information from this article inform 11:02:40<br>18 your overall factual investigation? 11:02:44<br>19 A. Yes, it did. 11:02:47<br>20 Q. How so? 11:02:48<br>21 A. Well, again, this article also repeats the 11:02:49<br>22 same quote by Netanyahu that, "When Hamas 11:02:52<br>23 chose to continue fighting, it will pay the 11:02:57<br>24 price for that decision. When there is no 11:02:59<br>25 cease fire, our answer is fire." 11:03:01<br><br>Page 420<br><br>1 It also talks about the fact that 11:03:03 | Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 420:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; |

| Deposition Designation | Objection & Response |
|---|---|
| 2 they're amassing troops for a ground war. It 11:03:06<br>3 says that they have called up 40,000 troops 11:03:09<br>4 on the Israeli side, and that Netanyahu fired 11:03:11<br>5 his deputy defense minister for saying that 11:03:15<br>6 the cabinet wasn't moving aggressively enough 11:03:19<br>7 against Hamas, although it seems pretty 11:03:23<br>8 aggressive. 11:03:28<br>9 They also talked about the fact that 11:03:29<br>10 it didn't seem likely that there was going to 11:03:30<br>11 be a cease fire, mostly because Egypt was not 11:03:33<br>12 going to be able to broker it, because Hamas 11:03:36<br>13 didn't trust -- trust the current Egyptian 11:03:39<br>14 government at that time. 11:03:42<br>15 It talks about how the White House 11:03:50<br>16 press secretary said that it was Hamas's 11:03:53<br>17 responsibility to try to disengage, and that 11:03:56<br>18 there had been a heavy toll on the 11:04:02<br>19 Palestinians. By that time there were 1,500 11:04:05<br>20 injured and 204 killed. 11:04:08<br>21 There had also been a number -- 11:04:15<br>22 thousands of rockets they say had been fired 11:04:17<br>23 into Israel and that there were still 11:04:21<br>24 thousands more held by the -- by Hamas, and 11:04:23<br>25 that there had been a civilian, an Israeli 11:04:29<br><br>Page 421<br><br>1 civilian that was killed, but that the 11:04:34 | ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br><br><br><br><br>Plaintiff's Objections:<br>Page 421:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 2 Iron Dome missile defense system was helping. 11:04:38<br>3 In other words, it continued to show 11:04:39<br>4 that there was fire both back and forth, that 11:04:41<br>5 this was a back and forth situation. 11:04:45<br>6 Q. Do you recall that, as a part of your overall 11:04:47<br>7 investigation, you reviewed other articles or 11:04:50<br>8 news pieces that continued to inform your 11:04:53<br>9 overall fact investigation? 11:04:56<br>10 A. Yes, indeed. I looked at a lot of -- a lot 11:04:57<br>11 of news articles or, you know, even -- even 11:05:01<br>12 other information that was contained in 11:05:04<br>13 the -- on the Internet. And not just news 11:05:06<br>14 articles, but also videos and some White 11:05:08<br>15 papers, one specifically by the Congressional 11:05:13<br>16 Research Service, which -- which is -- does 11:05:19<br>17 research specifically for the U.S. Congress, 11:05:19<br>18 and a variety of other sources. 11:05:29<br>19 Q. In regard to your research on news articles 11:05:30<br>20 and publications and videos, did you continue 11:05:32<br>21 to read and review those types of materials 11:05:34<br>22 for the week following July the 15th? 11:05:40<br>23 A. I did. 11:05:42<br>24 Q. And did you continue to advance your 11:05:42<br>25 knowledge about the process and the current 11:05:44 | "MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |
| Page 422 | Plaintiff's Objections:<br>Page 422:1-25 |

| Deposition Designation | Objection & Response |
|---|---|
| 1 events? 11:05:46<br>2 A. I did. 11:05:46<br>3 (Whereupon, Exhibit 239 was 11:05:48<br>4 marked for identification.) 11:06:04<br>5 BY MS. REED: 11:06:04<br>6 Q. Let me hand you what's been marked as 11:06:04<br>7 Exhibit 239, please, ma'am. 11:06:07<br>8 Can you identify Exhibit 239 as an 11:06:08<br>9 e-mail that you sent to yourself on 11:06:11<br>10 July 16th, 2014? 11:06:13<br>11 A. Yes. 11:06:15<br>12 Q. Does this contain a reference to a website 11:06:16<br>13 about UK foreign travel advice? 11:06:21<br>14 A. Yes. 11:06:24<br>15 Q. Did you review that particular site? 11:06:24<br>16 A. I did. I wanted to see what other 11:06:27<br>17 governments and our own government was saying 11:06:30<br>18 about safety in Israel in terms of -- you 11:06:33<br>19 know, Israel is a huge tourist destination, 11:06:37<br>20 and about what they were advising people. 11:06:41<br>21 Q. Did you review multiple travel warnings? 11:06:42<br>22 A. I did. 11:06:45<br>23 Q. Do you know from which countries? 11:06:46<br>24 A. I know from -- obviously, from the UK, 11:06:47<br>25 because that's here. I know I reviewed the 11:06:50<br><br>Page 423<br><br>1 U.S. I think I reviewed one from Australia. 11:06:52<br>2 I seem to recall maybe one from a 11:06:56<br>3 Scandinavian country, but I don't recall 11:06:58<br>4 which one. So there were a variety of 11:07:01 | MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. Not offered for the truth of the matter asserted. 801; 807.<br><br><br>Plaintiff's Objections:<br>Page 423:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and |

| Deposition Designation | Objection & Response |
|---|---|
| 5 different ones. 11:07:03<br>6 Q. What was the purpose of this e-mail that you 11:07:04<br>7 sent to yourself? 11:07:06<br>8 A. It -- it's just -- it was just to keep the 11:07:07<br>9 link for myself if I wanted to reference it 11:07:11<br>10 again with regard to what the UK foreign 11:07:14<br>11 travel site was saying. 11:07:16<br>12 Q. Is this an example of notes that you might 11:07:19<br>13 make to yourself on your ongoing work? 11:07:21<br>14 A. Yes, sometimes. I might also send that to 11:07:23<br>15 myself if I were reading something and I 11:07:27<br>16 didn't have a chance to finish it so that I 11:07:29<br>17 would keep the link that way. 11:07:32<br>18 Q. What's the next entry that appears in your 11:07:33<br>19 notes to yourself? 11:07:35<br>20 A. It's a link to a Wikipedia entry on Hamas. 11:07:36<br>21 Q. Do you recall reading that Wikipedia entry on 11:07:39<br>22 Hamas? 11:07:42<br>23 A. I did. 11:07:42<br>24 Q. What use did you make of that particular 11:07:43<br>25 group of materials? 11:07:47 | development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. Is not opinion testimony The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. Not offered for the truth of the matter asserted. 801; 807. |
| Page 424<br><br>1 A. Well, I don't look to Wikipedia as being an 11:07:47<br>2 authoritative source to gather information, 11:07:51<br>3 but what is really helpful about Wikipedia 11:07:55<br>4 articles is that they cite every place that 11:07:59<br>5 they get their information. And so if you go 11:08:03 | Plaintiff's Objections:<br>Page 424:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense |

| Deposition Designation | Objection & Response |
|---|---|
| 6 to their cite list, frequently you could find 11:08:04<br>7 information that is -- that actually holds 11:08:09<br>8 the voice of authority that actually can be 11:08:11<br>9 considered reliable and review those 11:08:13<br>10 articles. 11:08:15<br>11 (Whereupon, Exhibit 240 was 11:08:17<br>12 marked for identification.) 11:08:17<br>13 BY MS. REED: 11:08:17<br>14 Q. Let me hand you what has been marked as 11:08:18<br>15 Exhibit 240 in the case, please, ma'am. 11:08:20<br>16 Can you identify Exhibit 240 as a 11:08:23<br>17 printout of the Hamas article that you 11:08:28<br>18 reviewed at or about the time of your note 11:08:30<br>19 that's contained in Exhibit 239? 11:08:33<br>20 A. Yes, this is what I looked like -- looked at. 11:08:36<br>21 Q. And do you recall any particular factual 11:08:39<br>22 information that you gained from this review, 11:08:42<br>23 overall review, that formed the basis of your 11:08:47<br>24 overall investigation? 11:08:50<br>25 A. Well, as I said, I don't rely upon this as an 11:08:52 | of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |
| Page 425<br><br>1 authoritative site, since it can be amended 11:08:56<br>2 by -- by a variety of different people and 11:08:59<br>3 sources, and so you can't -- you can't say 11:09:01<br>4 definitively that this information is 11:09:04<br>5 correct. But what I did do is go and look at 11:09:06<br>6 what their source materials were and I looked 11:09:08<br>7 at a variety of these source materials. 11:09:12 | Plaintiff's Objections:<br>Page 425:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation |

| Deposition Designation | Objection & Response |
|---|---|
| 8 Q. Did you gain information in regard to the 11:09:20<br>9 overall review of source materials you 11:09:23<br>10 referenced about the role of Hamas in 11:09:26<br>11 parliamentary elections? 11:09:33<br>12 A. Well, I think I learned from -- from -- from 11:09:35<br>13 looking at some source materials that there 11:09:37<br>14 had been an election in 2006 for the -- for 11:09:39<br>15 seats in the Palestinian parliament. And at 11:09:44<br>16 that time, Hamas had won the majority of 11:09:49<br>17 seats in 2006, and that the Congressional 11:09:51<br>18 Research Service said that it was a free and 11:09:56<br>19 fair election. 11:09:57<br>20 Q. Did you make review of the governmental role 11:09:59<br>21 that Hamas was playing overall during the 11:10:03<br>22 relevant time period? 11:10:05<br>23 A. Well, starting in 2007, Hamas was controlling 11:10:06<br>24 the Gaza territory primarily. There was, at 11:10:10<br>25 that time, Fatah, which was another -- 11:10:18 | and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. Not offered for the truth of the matter asserted. 801; 807. |
| <u>Page 426</u><br><br>1 another part of the Palestinian authority, 11:10:21<br>2 another group, you know, sort of like we have 11:10:24<br>3 Democrats and Republicans, they have Hamas, 11:10:27<br>4 they have Fatah, they were controlling the 11:10:30<br>5 West Bank, Hamas had Gaza. 11:10:33 | <u>Plaintiff's Objections:</u><br>Page 426:1-25<br>MIL,402,403,701,802<br><br><u>Defendant's Response</u>:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense |

| Deposition Designation | Objection & Response |
|---|---|
| 6 And Hamas was not just a military 11:10:34<br>7 organization. Although they had a military 11:10:37<br>8 wing, but the other thing they were trying to 11:10:39<br>9 do to -- to -- was to provide social services 11:10:42<br>10 for the 1.8 million people who lived there 11:10:44<br>11 and schools, health services when -- when 11:10:47<br>12 available, and also to negotiate with other 11:10:51<br>13 countries in order to get assistance for the 11:10:54<br>14 people who lived in the Gaza strip, because 11:10:57<br>15 they were in pretty desperate straights at 11:10:59<br>16 that point. 11:11:05<br>17 There wasn't a lot of ways to make 11:11:05<br>18 money, there wasn't -- there weren't a lot of 11:11:07<br>19 ways to get resources, because they weren't 11:11:09<br>20 allowed into Egypt, which was one of their 11:11:11<br>21 boundaries, and they weren't allowed into -- 11:11:14<br>22 into any other part of Israel, which was on 11:11:17<br>23 their other boundary. 11:11:19<br>24 So these 1.8 million people were 11:11:20<br>25 basically trapped within a very small area. 11:11:23<br><br>Page 427<br><br>1 So they got -- Hamas negotiated with Iran, 11:11:26<br>2 they negotiated with Russia, I think that 11:11:31<br>3 they also negotiated with Turkey and other 11:11:34<br>4 countries in order to get aid. 11:11:37<br>5 Q. Did part of your factual research include a 11:11:42 | of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. Not offered for the truth of the matter asserted. 801; 807.<br><br><br><br><br>Plaintiff's Objections:<br>Page 427:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness |

| Deposition Designation | Objection & Response |
|---|---|
| 6 focus on studying the military wing of Hamas 11:11:46<br>7 that you mentioned? 11:11:51<br>8 A. That's one of the things that I looked at, 11:11:52<br>9 yes. 11:11:55<br>10 Q. What information did you learn about the 11:11:55<br>11 military wing of Hamas? 11:11:56<br>12 A. Well, they had a particular name. As I said, 11:11:57<br>13 they were the -- the Al-Qassam Brigades, and 11:12:00<br>14 that they were primarily the group that was 11:12:04<br>15 launching targets at -- rockets at Israel. 11:12:07<br>16 But they were organized. They were 11:12:10<br>17 considered to be a militia or a military 11:12:12<br>18 force. And that -- yes, that's what they 11:12:19<br>19 were. 11:12:25<br>20 Q. As part of your overall review and study of 11:12:25<br>21 Hamas, did you focus on what social welfare 11:12:27<br>22 programming they were doing, as you 11:12:33<br>23 referenced? 11:12:34<br>24 A. Yes, and they were doing a considerable 11:12:34<br>25 amount. As I said, they were trying to -- to 11:12:38<br><br>Page 428<br><br>1 provide schooling for the -- the children 11:12:40<br>2 that lived in Gaza. And the majority of the 11:12:42<br>3 people who lived in Gaza were under the age 11:12:45<br>4 of 18. And they were also trying to provide 11:12:47 | of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br><br>Plaintiff's Objections:<br>Page 428:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness |

| Deposition Designation | Objection & Response |
|---|---|
| 5 health care and other kinds of social welfare 11:12:49<br>6 to the people who lived there. 11:12:57<br>7 Q. Do you recall which of the primary sources 11:12:59<br>8 supporting the Hamas article that you looked 11:13:01<br>9 at as part of your research? 11:13:04<br>10 A. Well, one was from the Congressional Research 11:13:07<br>11 Service. It was an article by a guy whose 11:13:10<br>12 last name was Zanotti. I don't remember his 11:13:16<br>13 first name off the top of my head. But that 11:13:18<br>14 was not the only source. I looked at a lot 11:13:22<br>15 of different things. 11:13:27<br>16 Q. Would it have been your practice to print 11:13:29<br>17 them all out? 11:13:31<br>18 A. No. 11:13:32<br>19 Q. Would it have been your practice to keep a 11:13:32<br>20 separate electronic copy of each one? 11:13:35<br>21 A. Not necessarily. If -- if -- I might have 11:13:36<br>22 kept an electronic copy in my -- my general 11:13:41<br>23 research file, if it was something I thought 11:13:43<br>24 I needed to refer to again. 11:13:45<br>25 But, also, a lot of what I was doing 11:13:51<br><br>Page 429<br><br>1 was simply gathering information, you know, 11:13:53<br>2 that informed my opinion, but wasn't 11:13:54<br>3 necessarily something I was going to 11:13:56 | of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br><br><br>Plaintiff's Objections:<br>Page 429:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection;<br>ASIC's understanding and |

| Deposition Designation | Objection & Response |
|---|---|
| 4 authoritatively cite again. 11:13:58<br>5 THE VIDEOGRAPHER: We have about 11:14:04<br>6 ten minutes left on the tape. 11:14:05<br>7 (Whereupon, Exhibit 241 was 11:14:08<br>8 marked for identification.) 11:14:08<br>9 BY MS. REED: 11:14:08<br>10 Q. Let me hand you what's been marked as 11:14:09<br>11 Exhibit 241, please, ma'am. 11:14:11<br>12 Can you identify Exhibit 241 as a 11:14:13<br>13 Congressional Research Service article that 11:14:19<br>14 you mentioned by Mr. Zanotti? 11:14:19<br>15 A. Yes, that's what it is. 11:14:22<br>16 Q. And is this a source of information that you 11:14:23<br>17 consulted as part of your factual research? 11:14:27<br>18 A. Yes, it was one of the things that -- that -- 11:14:29<br>19 that I looked at. This article was dated 11:14:32<br>20 December 2nd of 2010. I think I also looked 11:14:35<br>21 at some other Congressional Research Service 11:14:38<br>22 sources besides this one, but this one was 11:14:42<br>23 the most comprehensive with regard to Hamas. 11:14:46<br>24 Q. And why did you select this one? 11:14:48<br>25 A. As I said, because it was -- it was very 11:14:51<br>TSG Reporting - Worldwide 877-702-9580<br>18 (Pages 430 to 433)<br><br>Page 430<br><br>1 comprehensive in terms of the background and 11:14:54<br>2 it was specifically written to inform 11:14:57 | development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 430:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; |

| Deposition Designation | Objection & Response |
|---|---|
| 3 Congress about Hamas. 11:14:59<br>4 Q. Let me ask you to turn, please, ma'am, 11:15:04<br>5 internally in that document to what's 11:15:07<br>6 numbered page 1 in the bottom right corner. 11:15:10<br>7 A. Okay. 11:15:17<br>8 Q. Do you see there's a section called, 11:15:18<br>9 "Introduction Issues for Congress"? 11:15:20<br>10 A. Yup. 11:15:20<br>11 Q. Did you review this particular section? 11:15:21<br>12 A. I read this entire document. It took me 11:15:23<br>13 quite a while. So, yes, I'm sure I did. 11:15:28<br>14 Q. And was there factual information that you 11:15:31<br>15 took out of this that informed your -- your 11:15:33<br>16 overall investigation you were conducting 11:15:35<br>17 into the Dig claim? 11:15:38<br>18 A. Well, it certainly gave me more background on 11:15:39<br>19 Hamas, yes. 11:15:42<br>20 Q. Did you learn more regarding elections to 11:15:44<br>21 parliament? 11:15:47<br>22 A. A lot of what I've stated before is, you 11:15:49<br>23 know, that they did have free and fair 11:15:53<br>24 elections. Hamas had the highest number of 11:15:56<br>25 seats in the Palestinian parliament. Part 11:16:01<br><br>Page 431<br><br>1 of -- part of the research, not from this 11:16:06<br>2 particular article, but that I also learned 11:16:10<br>3 is that -- that Hamas and Fatah were trying 11:16:12<br>4 to -- in June of 2014, they were trying to 11:16:13<br>5 unify their parties so that they could do 11:16:16 | ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 431:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is |

| Deposition Designation | Objection & Response |
|---|---|
| 6 more, have greater power. 11:16:19<br>7 Q. Why were you researching Hamas? 11:16:23<br>8 A. Well, one of the things that -- that Andrea 11:16:26<br>9 and Susan had said, starting with our initial 11:16:29<br>10 conversation, but they followed it up in 11:16:34<br>11 subsequent conversations, was that -- was 11:16:37<br>12 that Hamas was a terrorist organization, and 11:16:38<br>13 therefore, any actions taken by Hamas needed 11:16:41<br>14 to be judged as terrorism. 11:16:44<br>15 So I did want to acquaint myself 11:16:47<br>16 with what is the history of this 11:16:52<br>17 organization, are they a terrorist 11:16:53<br>18 organization, if they are a terrorist 11:16:56<br>19 organization, is that relevant to my coverage 11:16:59<br>20 analysis, and why are they called a terrorist 11:17:01<br>21 organization. 11:17:05<br>22 Q. Did your research inform you on why they are 11:17:05<br>23 called a terrorist organization? 11:17:09<br>24 A. Well, Hamas's charter specifically says that 11:17:11<br>25 it's charter to -- to is destroy Israel and 11:17:13 | relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. Not offered for the truth of the matter asserted. 801; 807. |
| Page 432<br><br>1 the Israeli people, so the base -- the fact 11:17:17<br>2 that their charter is one of the main reasons 11:17:19<br>3 why the United States says they're a 11:17:22<br>4 terrorist organization. But they don't just 11:17:24<br>5 engage in terroristic activities, they also 11:17:26<br>6 provide infrastructure and social services 11:17:32<br>7 and a variety of other things that are 11:17:34 | Plaintiff's Objections:<br>Page 432:1-18<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness |

| Deposition Designation | Objection & Response |
|---|---|
| 8 beneficial to the people who live in Gaza. 11:17:36<br>9 Q. Would you turn back, please, ma'am, in 11:17:39<br>10 Exhibit 241 to the second page of the overall 11:17:41<br>11 document. It is not numbered, it's just 11:17:44<br>12 physically the second page. 11:17:46<br>13 A. Yes. 11:17:48<br>14 Q. Would you look at the second paragraph, 11:17:49<br>15 please, ma'am. 11:17:51<br>16 A. Yes. 11:17:52<br>17 Q. And start with the second sentence and read 11:17:53<br>18 that for the record. 11:17:55<br><br>Page 433<br><br>2 BY MS. REED: 11:18:16<br>3 Q. Ms. Johnson, may I direct you on Bates number 11:18:17<br>4 page 4320 to the second paragraph beginning 11:18:20<br>5 with the second sentence? 11:18:23 | of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br>Plaintiff's Objections:<br>Page 433:2-5<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 434<br>6 THE WITNESS: So beginning with 11:19:13<br>7 the second paragraph, second line in the 11:19:14<br>8 paragraph, it states, "The United States, 11:19:16<br>9 Israel, the European Union and Canada, 11:19:20<br>10 consider Hamas a terrorist organization 11:19:24<br>11 because of, one, its violent resistance to 11:19:26<br>12 what it deems Israeli occupation of historic 11:19:29<br>13 Palestine constituting present day Israel, 11:19:32<br>14 the West Bank and Gaza, and, two, its 11:19:35<br>15 rejection of the on and off peace process 11:19:38<br>16 involving Israel and the Palestine liberation 11:19:42<br>17 organization, the PLO, since the early 11:19:45<br>18 1900s." 11:19:48<br>19 Do you want me to continue reading? 11:19:49<br>20 MS. REED: No, that's all right. 11:19:51<br>21 BY MS. REED: 11:19:51<br>22 Q. The -- is that early 1990s? 11:19:52<br>23 A. I'm sorry, 1990s. 11:19:53<br>24 Q. And was this information that you gathered as 11:19:55<br>25 part of your ongoing research on the factual 11:19:58 | Plaintiff's Objections:<br>Page 434:6-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |
| Page 435<br><br>1 side? 11:20:01<br>2 A. Yes. As I said, I read the entire document. 11:20:0<br><br>13 Q. Ms. Johnson, can I ask you please to refer to 11:32:03<br>14 page 8, what is internally numbered as page 8 11:32:06<br>15 of Exhibit 241. 11:32:10<br>16 A. (Complies.) 11:32:15 | Plaintiff's Objections:<br>Page 435:1-2; 435:13-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. |

| Deposition Designation | Objection & Response |
|---|---|
| 17 Q. Do you see a heading in the middle of the 11:32:18<br>18 page entitled, "Gaza Militias and Security 11:32:21<br>19 Forces"? 11:32:26<br>20 A. I do. 11:32:26<br>21 Q. Did you review this as part of your overall 11:32:27<br>22 investigation of Hamas? 11:32:30<br>23 A. I did. 11:32:30<br>24 Q. Did you learn facts from this report that is 11:32:31<br>25 from 2010 about military? 11:32:33 | Is not opinion testimony The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |
| Page 436<br><br>1 A. Yes. In fact, this particular portion of the 11:32:35<br>2 report talks about the size of Hamas's 11:32:39<br>3 military wing, and it says that it has 13 to 11:32:43<br>4 14,000 police security and intelligence 11:32:48<br>5 personnel, and that they assist the Al-Qassam 11:32:52<br>6 Brigades. I mean, it goes on to give a lot 11:33:01<br>7 more detail, but one of the things I was 11:33:05<br>8 looking at is, you know, sort of what is the 11:33:07<br>9 size of the military. 11:33:09<br>10 And it says, "Leadership and most of 11:33:10<br>11 the manpower estimated at 2,500 of Hamas's 11:33:12<br>12 military wing are in Gaza and that the Hamas 11:33:15<br>13 led government in Gaza maintains a robust 11:33:18<br>14 contingent of 13 to 14,000 police security 11:33:22<br>15 and intelligence personnel." 11:33:25<br>16 Q. Was part of your overall factual research 11:33:27<br>17 trying to understand the military wing of 11:33:29 | Plaintiff's Objections:<br>Page 436:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 18 Hamas? 11:33:31<br>19 A. Yes. I was trying to get a good sense of, 11:33:31<br>20 you know, how big it was, what they were 11:33:33<br>21 engaged in, that kind of thing. 11:33:36<br>22 Q. Would you look at internal page number 22 of 11:33:37<br>23 this document, please, ma'am. 11:33:43<br>24 A. Sure. 11:33:44<br>25 Q. It's entitled, "Sources of Assistance." 11:33:45<br><br>Page 437<br><br>1 A. Right. This information in this section of 11:33:50<br>2 the Zanotti report helped inform my 11:33:52<br>3 information about how Hamas engaged in 11:33:56<br>4 negotiations with other countries to get 11:34:00<br>5 financial and military support. And it says 11:34:03<br>6 here that they got most of their support from 11:34:05<br>7 Iran, Syria and Hezbollah, which is an 11:34:12<br>8 organization within Lebanon, usually -- 11:34:15<br>9 usually considered to be a terrorist 11:34:18<br>10 organization. 11:34:19<br>11 Q. As part of your overall research on the 11:34:20<br>12 factual side of the claim, did you undertake 11:34:22<br>13 to attempt to understand the countries or the 11:34:24<br>14 financial sources that Hamas used to support 11:34:29<br>15 itself or its military? 11:34:32<br>16 A. Yes. I mean, I wanted to know, you know, 11:34:34<br>17 sort of how much power does Hamas have, what 11:34:37 | Plaintiff's Objections:<br>Page 437:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 18 does it really do. 11:34:39<br>19 Q. Let me ask you to turn back to Exhibit 239 11:34:46<br>20 please, ma'am. These were notes to yourself. 11:34:49<br>21 A. (Complies.) 11:34:54<br>22 Q. Can you tell us what the third entry on your 11:34:54<br>23 notes is? 11:34:58<br>24 A. Yes. This is the exclusion. It says, 11:35:00<br>25 "Exclusions applicable to all sections of 11:35:06<br><br><br>Page 438<br><br>1 this policy. This is contained in the 11:35:07<br>2 general conditions of the policy." And then 11:35:09<br>3 it goes on to recite the war exclusion. 11:35:12<br>4 Q. What was the reason that you included this in 11:35:14<br>5 your notes to yourself? 11:35:16<br>6 A. Well, as I was doing my factual 11:35:17<br>7 investigation, it appeared to me that what 11:35:20<br>8 was happening here was a war. That's how it 11:35:22<br>9 was being defined by the media, including 11:35:25<br>10 NBC. It's also how newspapers were talking 11:35:27<br>11 about it. It's how, in fact, the Israeli 11:35:32<br>12 government was talking about it. So I was 11:35:39<br>13 trying to determine if this -- if this 11:35:40<br>14 exclusion applied. 11:35:41<br>15 Q. When you mentioned references to war that you 11:35:44<br>16 observed, did you see those as part of your 11:35:48<br>17 ongoing factual investigation? 11:35:51 | <br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 438:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 18 A. Yes. Pretty much everyone was calling this a 11:35:52<br>19 war. 11:35:55<br>20 Q. What types of NBC or MSNBC coverage of the 11:35:55<br>21 conflict did you review? 11:35:59<br>22 A. I reviewed different clips. There was one 11:36:00<br>23 specifically that was talking about the fact 11:36:03<br>24 that there was a ground war in Gaza. That's 11:36:05<br>25 actually the heading that -- that they had on 11:36:08<br><br>Page 439<br><br>1 the program. 11:36:11<br>2 MS. REED: At this point, let me 11:36:12<br>3 note for the record Exhibit 242 will be a 11:36:14<br>4 video that is produced in the case and is 11:36:18<br>5 Bates-numbered ATL 4498. 11:36:21<br>6 (Whereupon, Exhibit 242 was 11:36:21<br>7 marked for identification.) 11:36:21<br>8 I'd like to ask the video operator 11:36:26<br>9 to please play that video for the witness. 11:36:28<br>10 "CHRIS HAYES: The military said the 11:36:28<br>11 ground operation is aimed at, quote -- 11:36:28<br>12 "After days of threatening it, today 11:36:35<br>13 the Israeli government launched a ground 11:36:37<br>14 invasion into Gaza just after 10:00 p.m. 11:36:39<br>15 local time. 11:36:42<br>16 "The Israeli military said the 11:36:43<br>17 ground operation is aimed at, quote, 'Taking 11:36:44<br>18 over targets in Gaza, operating against 11:36:44<br>19 tunnels and terror activists and 11:36:47 | Plaintiff's Objections:<br>Page 439:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter |

| Deposition Designation | Objection & Response |
|---|---|
| 20 infrastructure.' A spokesman for Hamas said, 11:36:50<br>21 quote, 'Hamas is ready for a confrontation.' 11:36:50<br>22 "Foreign journalists in Gaza have 11:36:55<br>23 reported electricity outages across Gaza City 11:36:56<br>24 and artillery fire from Israeli ground 11:36:59<br>25 troops, as well as fire from naval gun boats 11:37:01<br><br>Page 440<br><br>1 and continued air strikes. 11:37:05<br>2 "The director of a Gaza hospital 11:37:07<br>3 reported the hospital was being shelled 11:37:07<br>4 Thursday. According to AFP, the hospital had 11:37:10<br>5 14 patients, some of whom are paralyzed or in 11:37:12<br>6 a comma. 11:37:14<br>7 "The ground invasion came after a 11:37:14<br>8 five-hour humanitarian cease fire agreement 11:37:17<br>9 expired. Just as that temporary cease fire 11:37:20<br>10 ended, the Israeli military says a Hamas 11:37:22<br>11 rocket struck a city in southern Israel. 11:37:23<br>12 "Hours before the ground invasion 11:37:26<br>13 got underway, Israel says it intercepted a 11:37:28<br>14 group of Hamas fighters who were trying to 11:37:31<br>15 sneak into Israel through a tunnel under the 11:37:33<br>16 border of Gaza. 11:37:33<br>17 "Israeli military launched an air 11:37:35<br>18 strike at the mouth of the tunnel. Hamas 11:37:37<br>19 dies -- denies any of its fighters were 11:37:39<br>20 killed in the operation. 11:37:41 | asserted. 801; 807.<br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 440:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 21 "Joining me now by phone from 11:37:43<br>22 Tel Aviv is Amir Tibon. He's diplomatic 11:37:44<br>23 correspondent for Walla News in Israel. 11:37:44<br>24 "Amir, what is the reaction in 11:37:49<br>25 Israel to this latest escalation? 11:37:51<br><br>Page 441<br><br>1 "AMIR TIBON: Well, I have to say 11:37:58<br>2 that right now in Israel not many people are 11:37:58<br>3 surprised by this ground incursion into Gaza. 11:38:01<br>4 It's something that we were expecting, 11:38:04<br>5 because over the last days there were just 11:38:07<br>6 endless attacks coming here from Gaza and 11:38:09<br>7 Jerusalem with rocket launches, but also 11:38:12<br>8 attempt after attempt by Hamas militants to 11:38:15<br>9 enter Israel through these tunnels that 11:38:17<br>10 they're digging underground into the Israeli 11:38:19<br>11 side of the border in order to try to carry 11:38:21<br>12 out terrorist attacks in Israeli villages and 11:38:24<br>13 towns. 11:38:24<br>14 "And the -- the reason I think many 11:38:25<br>15 people are just saying that this was 11:38:32<br>16 expected, that it was just a matter of time 11:38:32<br>17 before our prime minister would take such 11:38:36<br>18 a -- such a decision, so not -- not anybody 11:38:37<br>19 surprised. 11:38:37<br>20 "Of course, you have people who are 11:38:41<br>21 worried, because now we have our soldiers 11:38:42<br>22 in -- inside Gaza fighting the Hamas 11:38:45<br>23 terrorists and people are worried about it, 11:38:47 | Plaintiff's Objections:<br>Page 441:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 24 but it didn't come as a big surprise to 11:38:48<br>25 anybody. 11:38:50<br><br><br>Page 442<br><br>1 "CHRIS HAYES: There is a question, 11:38:51<br>2 you're looking at live pictures of Gaza, 11:38:52<br>3 what -- what kind of effect this will have on 11:38:55<br>4 Gaza civilians. There's not a lot of places 11:38:57<br>5 to go. We've been hearing reports out of 11:38:59<br>6 Gaza, children, women, noncombatants don't 11:39:02<br>7 have many places they can go. 11:39:06<br>8 "There was leaflets by the Israeli 11:39:08<br>9 government, there were warnings even on Hamas 11:39:09<br>10 television to evacuate, but it -- it's 11:39:11<br>11 unclear how any kind of ground incursion, any 11:39:13<br>12 kind of shelling can spare the lives of 11:39:17<br>13 noncombatants. 11:39:19<br>14 "AMIR TIBON: Absolutely. This is a 11:39:23<br>15 big worry also for Israel. Because, you 11:39:24<br>16 know, the more civilians get hurt, the less 11:39:26<br>17 legitimacy Israel will have to continue the 11:39:29<br>18 operation, which is really aimed at 11:39:31<br>19 terrorists and not at civilians and it is 11:39:34<br>20 something that I know that the Israeli 11:39:36<br>21 military is also very concerned about. 11:39:38<br>22 "Right now the plan that has been 11:39:40<br>23 presented by the government and the military 11:39:42<br>24 is not to go deep into Gaza and get into the 11:39:45<br>25 city centers and fight in the allies and the 11:39:48 | Plaintiff's Objections:<br>Page 442:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 443<br><br>1 streets, but it's actually to stay more on 11:39:50<br>2 the border to really take care of the 11:39:52<br>3 conflict, which is just the craziest thing, 11:39:56<br>4 you know, because it's -- these are tunnels 11:39:58<br>5 that -- that are dug for -- deep underground 11:40:03<br>6 with a lot of expertise, a lot of money 11:40:05<br>7 poured into it only in order to carry out 11:40:09<br>8 terrorist attacks. 11:40:12<br>9 "So I think right now there's not 11:40:12<br>10 going to be any -- any kind of big move into 11:40:14<br>11 the city center, but obviously civilians are 11:40:17<br>12 suffering. I have friends who are there, 11:40:21<br>13 journalists, but also civilians, people, I 11:40:24<br>14 talk to them, I hear very sad reports coming 11:40:25<br>15 in from there, and it's definitely very 11:40:29<br>16 disturbing. 11:40:31<br>17 "CHRIS HAYES: There is also a 11:40:33<br>18 question that there was -- Avigdor Lieberman, 11:40:33<br>19 the foreign minister in the Netanyahu 11:40:35<br>20 government, had basically said that Gaza 11:40:36<br>21 needed to be reoccupied, and the Israeli 11:40:38<br>22 defense forces have stated that they -- they 11:40:42<br>23 have this, essentially, limited goal in terms 11:40:43<br>24 of the tunnels, but there's a real question 11:40:47<br>25 of what is day two, what is day three here. 11:40:49 | Plaintiff's Objections:<br>Page 443:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br><br><br>Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| Page 444<br><br>1 "What is the understanding of what 11:40:52<br>2 that looks like? 11:40:54<br>3 "AMIR TIBON: Yeah, actually, the -- 11:40:58<br>4 the statement by our Foreign Minister 11:41:00<br>5 Lieberman, which you mentioned, I think it 11:41:02<br>6 doesn't represent right now the -- the line 11:41:04<br>7 of our government. There was a big political 11:41:06<br>8 debate in the last days in Israel over our 11:41:09<br>9 Prime Minister Netanyahu, over his decision 11:41:14<br>10 to show some kind of restraint. 11:41:15<br>11 "I know it's hard, it sounds weird 11:41:17<br>12 when you see the pictures from Gaza, which 11:41:19<br>13 are terrible, you know, the families and the 11:41:21<br>14 civilians and children who were killed, and 11:41:23<br>15 it's -- and the Israelis are saying, 'No, we 11:41:26<br>16 are showing restraint,' actually, Netanyahu 11:41:28<br>17 waited for a long time while Israeli cities, 11:41:30<br>18 you know, from Tel Aviv to any other city in 11:41:34<br>19 the country were bombarded, he waited for a 11:41:36<br>20 long time before he decided to do this ground 11:41:39<br>21 operation, and he got a lot of criticism over 11:41:40<br>22 it from right wing members of his coalition, 11:41:43<br>23 including our foreign minister who said, 'No, 11:41:46 | Page 444:1-25<br>MIL,402,403,701,802<br><br><u>Defendant's Response</u>:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 24 we need to act more forcefully, more 11:41:48<br>25 decisively.' 11:41:48<br><br><br>Page 445<br><br>1 "And his attitude was, 'No, let's 11:41:51<br>2 wait, let's try to reach a cease fire.' You 11:41:54<br>3 know, just two days ago he sort of agreed to 11:41:56<br>4 enter a cease fire agreement agreement over 11:41:58<br>5 by Egypt and Hamas refused, so he was 11:42:00<br>6 criticized for it. 11:42:02<br>7 "But I think it was a smart move by 11:42:03<br>8 him, because right now it allows him to act 11:42:06<br>9 and we don't see a lot of international 11:42:08<br>10 criticism over Israel, at least not from 11:42:12<br>11 foreign government. 11:42:13<br>12 "CHRIS HAYES: Amir Tibon, thank you 11:42:14<br>13 very much. 11:42:14<br>14 "AMIR TIBON: Thank you. 11:42:17<br>15 "CHRIS HAYES: And more on Malaysian 11:42:17<br>16 Airlines Flight 17 including the 11:42:17<br>17 revelatory" -- 11:42:17<br>18 "And good morning again to get that 11:42:17<br>19 news" -- 11:42:35<br>20 BY MS. REED: 11:42:35<br>21 Q. Ms. Johnson, was that a July 17th news video 11:42:35<br>22 that you watched at or about that time? 11:42:38<br>23 A. Yes. 11:42:40<br>24 Q. And do you recall watching that? 11:42:40<br>25 A. Yes, I do. 11:42:41<br><br><br>Page 446 | <u>Plaintiff's Objections:</u><br>Page 445:1-25<br>MIL,402,403,701,802<br><br><u>Defendant's Response</u>:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br><br><br><br><br><br><br><br><br><br><u>Plaintiff's Objections:</u><br>Page 446:1-25 |

| Deposition Designation | Objection & Response |
|---|---|
| 1 Q. Was there information presented in that news 11:42:42<br>2 piece that informed your overall factual 11:42:46<br>3 investigation? 11:42:48<br>4 A. Yes, there was. 11:42:49<br>5 Q. Can you tell me what information that was? 11:42:50<br>6 A. Well, the fact that NBC itself was 11:42:52<br>7 identifying this as a ground war. The 11:42:54<br>8 description both of Chris Hayes and then the 11:42:58<br>9 other -- the Israeli journalist that he was 11:43:01<br>10 interviewing, they talked -- they both talked 11:43:04<br>11 a lot about how it seemed as though things 11:43:06<br>12 were escalating, that although Netanyahu had 11:43:09<br>13 wanted to show restraint, now that there 11:43:13<br>14 wasn't a chance of a cease fire or it didn't 11:43:16<br>15 appear that there was a chance of a cease 11:43:19<br>16 fire, that things were escalating. 11:43:21<br>17 Q. Did the label ground war that was put behind 11:43:25<br>18 the journalist inform your overall 11:43:28<br>19 investigation? 11:43:31<br>20 A. Well, the fact that NBC itself was labeling 11:43:32<br>21 it as a war, obviously was -- was something 11:43:35<br>22 that I took into consideration. But more 11:43:39<br>23 than that, it was also the fact that you 11:43:41<br>24 could see in this video that there were tanks 11:43:43<br>25 that were advancing, that they were trying to 11:43:45 | MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |
| Page 447 | Plaintiff's Objections: |

**1122**

| Deposition Designation | Objection & Response |
|---|---|
| 1 take out the tunnels that led between Gaza 11:43:47<br>2 and Israel, that basically, you know, Israel 11:43:51<br>3 was -- was saying that they wanted to 11:43:57<br>4 reoccupy Gaza, that this is clearly a 11:43:58<br>5 back-and-forth situation and that -- that 11:44:02<br>6 Israel was very, very serious about -- about 11:44:04<br>7 using all kinds of military weapons to 11:44:07<br>8 prevent -- to prevent the -- the Hamas from 11:44:11<br>9 doing further damage to Israel. 11:44:15<br>10 Q. After this report of the ground war beginning 11:44:19<br>11 on July the 17th, did you continue to monitor 11:44:23<br>12 the events that were occurring? 11:44:26<br>13 A. I did. 11:44:28<br>14 Q. Let me ask you to think forward a week from 11:44:29<br>15 the time that you began to review the factual 11:44:36<br>16 investigation and over the next approximately 11:44:39<br>17 seven days of developments. Can you describe 11:44:41<br>18 by then what sort of overall impressions you 11:44:45<br>19 had formed regarding the factual events? 11:44:49<br>20 A. Well, this looked like a war. I mean, there 11:44:52<br>21 was a lot of -- of fire back and forth. 11:44:55<br>22 There was definitely use of -- of a variety 11:44:56<br>23 of military weapons. The incursion into Gaza 11:44:59<br>24 continued to increase. The body count 11:45:03<br>25 continued to increase, less so on the Israeli 11:45:05<br><br>Page 448 | Page 447:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. Not offered for the truth of the matter asserted. 801; 807.<br><br><br>Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 1 side because -- because of the Iron Dome 11:45:09<br>2 defense system. 11:45:11<br>3 But certainly, you know, Hamas was 11:45:12<br>4 continuing to send rockets and try to 11:45:14<br>5 infiltrate Israel with a variety of different 11:45:18<br>6 military operations, few of which were 11:45:23<br>7 successful. And, I mean, it -- it had all 11:45:26<br>8 the indicia of war. 11:45:29<br>9 Q. Did you also conduct research on the policy 11:45:38<br>10 language and terms during this general time 11:45:41<br>11 frame? 11:45:43<br>12 A. I did. This was the first time that I had 11:45:43<br>13 dealt with the war exclusion, so one of the 11:45:47<br>14 things that I wanted to do was to see how 11:45:51<br>15 this exclusion had been interpreted by 11:45:54<br>16 courts. So I did research with regard to 11:45:58<br>17 what -- what did the case law say about this 11:46:02<br>18 exclusion. This is a very common exclusion 11:46:05<br>19 in -- in most insurance policies. 11:46:07<br>20 Q. And when you are referring generally to war 11:46:10<br>21 exclusion, are you referring to all the parts 11:46:14<br>22 that you included in your note to yourself 11:46:17<br>23 that was labeled Exhibit 239? 11:46:19<br>24 A. Yes. 11:46:22<br>25 11:46:25 | Page 448:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. Not offered for the truth of the matter asserted. 801; 807. |
| Page 449<br><br>1 (Whereupon, Exhibit 243 was 11:46:26<br>2 Marked for identification.) 11:46:26 | Plaintiff's Objections:<br>Page 449:1-3<br>MIL,402,403,701,802 |

| Deposition Designation | Objection & Response |
|---|---|
| 3 BY MS. REED: 11:46:26<br>4 Q. Let me hand you Exhibit 243, please, ma'am. 11:46:26<br>5 Can you identify Exhibit 243 as a 11:46:35<br>6 Westlaw printout indicating a Westlaw search 11:46:39<br>7 and an attached document? 11:46:43<br>8 A. Yes, that's what it is. 11:46:45<br>9 Q. Can you identify this as a portion of your 11:46:48<br>10 work product that you were conducting in the 11:46:50<br>11 course of looking at policy language and 11:46:54<br>12 terms? 11:46:57<br>13 A. Yes, it looks like I did this search on 11:46:57<br>14 July 17th. 11:47:00<br>15 Q. And can you read for us the initial search 11:47:03<br>16 that you have reported here? 11:47:07<br>17 A. I'm looking for the term insured or insurance 11:47:09<br>18 or insurer in the same paragraph as war or 11:47:13<br>19 warlike in the same paragraph as exclusion or 11:47:16<br>20 exclude or excluded in the same paragraph as 11:47:22<br>21 Israel. 11:47:25<br>22 Q. Do you recall at what point in the course of 11:47:26<br>23 your work, specifically focusing on 11:47:30<br>24 conducting research on the policy language 11:47:33<br>25 and terms, that you would have conducted this 11:47:35<br><br>Page 450 | Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 450:12-25 |

| Deposition Designation | Objection & Response |
|---|---|
| 1 search? 11:47:39<br>2 A. I think that -- based on the specificity of 11:47:39<br>3 the search, this was probably -- this was 11:47:42<br>4 probably one of the -- the -- well, I don't 11:47:49<br>5 know. It was certainly where I was trying to 11:47:52<br>6 drill down to make -- to see if there was any 11:47:56<br>7 particular case that dealt with the Israeli 11:47:59<br>8 situation -- 11:48:01<br>9 Q. Can you -- 11:48:02<br>10 A. -- as opposed to the war exclusion for a war 11:48:03<br>11 in someplace else in -- in the world. 11:48:09<br>12 Q. Can you describe your overall research 11:48:10<br>13 approach that you took when you were looking 11:48:14<br>14 at policy language and terms, in a general 11:48:17<br>15 fashion? 11:48:19<br>16 A. Well, I wanted to read any -- any kind of 11:48:19<br>17 case law that was going to interpret this 11:48:23<br>18 exclusion, because that's important. This 11:48:25<br>19 was a New York policyholder, so I -- I did 11:48:28<br>20 want to look at New York law. However, I 11:48:30<br>21 know also that the policy was issued in 11:48:33<br>22 California and sent to -- you know, given to 11:48:35<br>23 the client in California, so I also wanted to 11:48:40<br>24 see what California law had to -- to say 11:48:43<br>25 about it. 11:48:44<br><br>Page 451 | MIL,402,403,701,802<br><br><u>Defendant's Response</u>:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br><br><br><br><br><br><br><u>Plaintiff's Objections:</u><br>Page 451:1-11 |

| Deposition Designation | Objection & Response |
|---|---|
| 1 But what I found is that there -- there 11:48:45<br>2 is not a broad amount of case law that 11:48:47<br>3 interprets this particular exclusion. So I 11:48:50<br>4 wanted to look at as many cases as I could to 11:48:54<br>5 get a general understanding of how the -- how 11:48:57<br>6 this exclusion is interpreted by the courts. 11:49:00<br>7 Q. And did you conduct as broad an analysis as 11:49:02<br>8 you felt you were able to about how the 11:49:07<br>9 policy terms might be interpreted by 11:49:09<br>10 different courts? 11:49:12<br>11 A. Yes. 11:49:12<br>12 Q. Did you print out all of your searches and 11:49:14<br>13 search results? 11:49:18<br>14 A. I'm sure that I didn't. I probably printed 11:49:19<br>15 out -- well, I didn't necessarily print them 11:49:24<br>16 out, but I certainly would send -- as you see 11:49:27<br>17 on this first page, I sent the case to 11:49:30<br>18 myself. In other words, I sent this under 11:49:32<br>19 the subject heading, "War exclusion," which 11:49:37<br>20 is the title that I put on it, and I sent 11:49:39<br>21 that to myself. 11:49:41<br>22 This particular case, the 11:49:42<br>23 Holiday Inn case, which is what this is, also 11:49:44<br>24 references a variety of different cases that 11:49:47<br>25 also deal with the war exclusion, and I 11:49:49<br><br>Page 452<br><br>1 looked at all the cases that it referenced as 11:49:51<br>2 well, and then I looked at the cases that 11:49:54 | MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 3 those cases referenced, which is the usual 11:49:56<br>4 way you would do legal research, and I 11:49:58<br>5 conducted a variety of Westlaw searches to 11:50:00<br>6 see if there was other information there. 11:50:04<br>7 Q. Would it have been your practice at the time 11:50:06<br>8 to keep electronic copies of every search or 11:50:09<br>9 every case you looked at? 11:50:12<br>10 A. No. If the information is repetitive, in 11:50:14<br>11 other words, something that I've read in 11:50:17<br>12 another case, I probably wouldn't have 11:50:18<br>13 printed that case out. 11:50:21<br>14 If there was something new and 11:50:23<br>15 different that I thought was important to my 11:50:24<br>16 analysis, then I might print that case out, 11:50:26<br>17 probably I would. 11:50:31<br>18 But one of the things that I always 11:50:31<br>19 look at is how similar is the situation, the 11:50:35<br>20 factual situation that's set forth in the 11:50:38<br>21 case law to the factual situation I'm 11:50:40<br>22 investigating now. Because if the factual 11:50:43<br>23 situation is highly different than what the 11:50:45<br>24 court is saying about the exclusion, might 11:50:47<br>25 not apply to this situation, and -- and in 11:50:49<br><br>Page 453<br><br>1 that case there's a likelihood that I 11:50:52<br>2 wouldn't -- I wouldn't print it out, because 11:50:55<br>3 it's not the same situation, the same -- the 11:50:57<br>4 same language would not apply. 11:50:59<br>5 Q. Did you consult other sources besides case 11:51:01<br>6 law in your overall research about policy 11:51:03<br>7 language and terms? 11:51:07 | |

| Deposition Designation | Objection & Response |
|---|---|
| 8 A. Yes. I -- I know that I looked at Appleman 11:51:08<br>9 on Insurance, I looked at other -- I probably 11:51:13<br>10 looked at other treatises as well. There are 11:51:16<br>11 a variety of insurance treatises that are 11:51:19<br>12 also available through Westlaw and other 11:51:22<br>13 sources to find out as much as I could about 11:51:23<br>14 this exclusion. 11:51:25<br>15 Q. Did you refer to dictionary definitions or 11:51:31<br>16 other discussions of definitions? 11:51:34<br>17 A. Yes. I looked at dictionary definitions of 11:51:35<br>18 war and warlike, and probably of insurrection 11:51:37<br>19 and rebellion as well. 11:51:41<br>20 Q. Did you consult multiple different 11:51:43<br>21 dictionaries in order to do that? 11:51:44<br>22 A. I did. 11:51:47<br>23 Q. Can you describe any other aspects of your 11:51:56<br>24 overall research that you did as part of your 11:51:58<br>25 claim investigation? 11:52:00<br><br>Page 454<br><br>1 A. Well, it was a long time ago now, so I can't 11:52:03<br>2 remember with perfect specificity all of the 11:52:06<br>3 things that I did. But I spent hours and 11:52:09<br>4 hours at it and looked at as many sources as 11:52:12<br>5 I could. 11:52:17 | |

| Deposition Designation | Objection & Response |
|---|---|
| 6 Q. At the same time that you were conducting 11:52:31<br>7 your factual research and legal research and 11:52:33<br>8 analysis of the policy, were you also 11:52:37<br>9 communicating internally at Atlantic? 11:52:38<br>10 A. Yes. Once I determined that the war 11:52:42<br>11 exclusion might come into play, I wanted to 11:52:44<br>12 know whether or not anyone else in the 11:52:48<br>13 company had interpreted this policy in doing 11:52:51<br>14 some kind of coverage analysis, so I asked 11:52:55<br>15 Theresa Gooley to see whether or not she 11:52:58<br>16 could check on that with other -- with other 11:53:01<br>17 units. 11:53:03<br>18 OneBeacon is a pretty old company, 11:53:05<br>19 so it was probably impossible to know 11:53:07<br>20 absolutely whether or not OneBeacon had 11:53:10<br>21 considered the war exclusion in the past. 11:53:11<br>22 But given the resources that we had currently 11:53:14<br>23 available internally, I wanted to know if 11:53:16<br>24 there was anyone who had interpreted this -- 11:53:19<br>25 this particular exclusion. 11:53:22<br><br>Page 455<br><br>1 It's important when you're dealing 11:53:23<br>2 with insurance policies that you want to have 11:53:26<br>3 a consistent interpretation of policy 11:53:28<br>4 provisions across the entire company. You 11:53:33 | |

| Deposition Designation | Objection & Response |
|---|---|
| 5 don't want, you know, the technology branch 11:53:36<br>6 to interpret a policy provision that's also 11:53:38<br>7 contained in an entertainment policy 11:53:41<br>8 differently than you would in entertainment. 11:53:43<br>9 (Whereupon, Exhibit 244 was 11:53:46<br>10 marked for identification.) 11:53:46<br>11 BY MS. REED: 11:53:46<br>12 Q. Let me hand you what's been marked as 11:53:47<br>13 Exhibit 244, please, ma'am. 11:53:49<br>14 Can you identify Exhibit 244 as an 11:53:50<br>15 e-mail that you sent to Theresa Gooley? 11:53:53<br>16 A. Yes. 11:53:55<br>17 Q. And what were you inquiring about in this 11:53:56<br>18 e-mail, please, ma'am? 11:54:00<br>19 A. It says, "I want to make sure that OBE takes 11:54:01<br>20 a position that is consistent with the rest 11:54:05<br>21 of OneBeacon in interpreting the exclusion 11:54:07<br>22 for warlike actions by a military force. I'm 11:54:09<br>23 thinking that tech or other business units 11:54:12<br>24 might also have had claims arising from the 11:54:14<br>25 Israeli/Hamas conflict. Do you have time for 11:54:17<br><br>Page 456<br><br>1 a quick call to discuss how to get continuity 11:54:19<br>2 among business units?" 11:54:20<br>3 Q. Did you follow up with Ms. Gooley about this 11:54:22 | |

| Deposition Designation | Objection & Response |
|---|---|
| 4 request? 11:54:24 | |
| 5 A. I did. 11:54:25 | |
| 6 Q. Did you receive a response? 11:54:26 | |
| 7 A. She could not find any other group that had 11:54:28 | |
| 8 interpreted this particular exclusion. 11:54:31 | |
| 9 (Whereupon, Exhibit 245 was 11:54:38 | |
| 10 marked for identification.) 11:54:46 | |
| 11 BY MS. REED: 11:54:46 | |
| 12 Q. Were you continuing to have internal 11:54:46 | |
| 13 conversations and communications with 11:54:48 | |
| 14 Mr. Gutterman on the claim? 11:54:50 | |
| 15 A. Yes. 11:54:51 | |
| 16 Q. Let me hand you what's been marked as 11:54:52 | |
| 17 Exhibit 245, please, ma'am. 11:54:55 | |
| 18 Can you identify Exhibit 245 as an 11:54:57 | |
| 19 e-mail string which culminates in an e-mail 11:55:00 | |
| 20 from you to Mr. Gutterman on Tuesday, July 11:55:06 | |
| 21 the 15th? 11:55:09 | |
| 22 A. Yes, that's what it is. 11:55:10 | |
| 23 Q. Did Mr. Gutterman send you a note about 11:55:13 | |
| 24 reviewing some particular policy language? 11:55:16 | |
| 25 A. Yes, he did. 11:55:20 | |
| | |
| Page 457 | |
| | |
| 1 Q. And did you respond to him? 11:55:21 | |
| 2 A. Yes, I did. I told him that we needed to 11:55:24 | |
| 3 have further discussion -- a lot more further 11:55:30 | |
| 4 discussion about this and to call me in the 11:55:33 | |
| 5 morning. 11:55:35 | |
| 6 Q. And what did you mean by that? 11:55:35 | |

| Deposition Designation | Objection & Response |
|---|---|
| 7 A. Well, he was looking at the policy language 11:55:37 | |
| 8 for extra expense. He was specifically 11:55:38 | |
| 9 looking at the wording for civil unrest and 11:55:40 | |
| 10 the exclusion for it, and he was saying that 11:55:42 | |
| 11 this policy was different from other policies 11:55:46 | |
| 12 that he had seen. And, I mean, I wanted to 11:55:48 | |
| 13 talk to him about the claim in general based 11:55:55 | |
| 14 on the information that I was also gathering. 11:55:57 | |
| 15 Q. And do you recall having those types of 11:56:03 | |
| 16 conversations with Mr. Gutterman? 11:56:05 | |
| 17 A. Oh, we talked about this case a lot, yes. 11:56:06 | |
| 18 (Whereupon, Exhibit 246 was 11:56:14 | |
| 19 marked for identification.) 11:56:14 | |
| 20 BY MS. REED: 11:56:14 | |
| 21 Q. Let me hand you Exhibit 246, please, ma'am. 11:56:15 | |
| 22 Can you identify Exhibit 246 as an e-mail 11:56:18 | |
| 23 string which culminates in an e-mail that you 11:56:20 | |
| 24 sent to Mr. Williams and Mr. Gutterman on 11:56:23 | |
| 25 July the 15th? 11:56:27 | |
| | |
| Page 458 | |
| | |
| 1 A. Yes, this is the e-mail string that -- that 11:56:31 | |
| 2 reflects communications that we had. 11:56:38 | |
| 3 Q. And were you asking, as early as July 15th, 11:56:40 | |

| Deposition Designation | Objection & Response |
|---|---|
| 4 to have a call with Mr. Williams and 11:56:43<br>5 Mr. Gutterman to be discussing the claim? 11:56:46<br>6 A. Yes. From the e-mail string and from other 11:56:49<br>7 information I had gathered, it was apparent 11:56:53<br>8 that Peter had also talked to Andrea and 11:56:54<br>9 Susan, so I wanted to know what information 11:56:57<br>10 he had gathered from his conversation and 11:57:00<br>11 also wanted to share with him the information 11:57:03<br>12 that I was gathering. 11:57:06<br><br>Page 459<br><br>9 Q. Are you reporting to Mr. Williams about the 11:57:55<br>10 conversation you had with Ms. Weiss and 11:57:57<br>11 Ms. Garber on July the 15th in this e-mail? 11:57:59<br>12 A. Yes. 11:58:03<br>13 Q. And why do you make the comments that you do, 11:58:04<br>14 please, ma'am? 11:58:06<br>15 A. Well, I was just relating what we had the 11:58:07<br>16 call about. It says that we had a 11:58:11<br>17 conversation -- "Danny and I had a 11:58:13<br>18 conversation with Susan and Andrea today 11:58:15<br>19 about what the production's plans were," 11:58:16<br>20 because he had already referenced that -- 11:58:18<br>21 that he had talked to them about the claim, 11:58:22<br>22 "But we didn't make any representations about 11:58:24<br>23 whether there was coverage, but we also 11:58:27 | Plaintiff's Objections:<br>Page 459:9-25<br>802<br><br>Defendant's Response:<br>ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's knowledge, research and response to the claim are relevant and the testimony and the information is not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 24 didn't alert" -- "did not the alert them that 11:58:29<br>25 there" -- "that this might not be a covered 11:58:31<br><br>Page 460<br><br>1 claim. If this is going to be an issue, we 11:58:32<br>2 need to alert them right away." And then I 11:58:34<br>3 said, "Peter" -- "Peter, when are you 11:58:37<br>4 available tomorrow." 11:58:38<br>5 Q. When you sent this e-mail on July 15th, did 11:58:39<br>6 you know whether there potentially would be 11:58:42<br>7 coverage or would not be coverage? 11:58:44<br>8 A. This was right at the beginning of my 11:58:45<br>9 investigation, so I didn't know for sure. 11:58:47<br>10 You know, I -- I could see from this e-mail 11:58:49<br>11 string and the previous one that Danny was 11:58:52<br>12 looking at the -- the civil unrest portion of 11:58:54<br>13 the policy. I had certainly, at that point, 11:58:57<br>14 probably started my investigation, at least 11:59:00<br>15 initially. 11:59:03<br>16 But as I previously explained, if 11:59:03<br>17 you think that there's going to be any kind 11:59:07<br>18 of a coverage issue, you need to get that -- 11:59:09<br>19 get in touch with the production right away. 11:59:11<br>20 But at this point all I was telling 11:59:14<br>21 him is that we didn't tell them one way or 11:59:16<br>22 another whether there was coverage, because I 11:59:19<br>23 wouldn't do that without doing some kind of 11:59:21 | Plaintiff's Objections:<br>Page 460:1-4; 60:20-25<br>802<br><br>Defendant's Response:<br>ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's knowledge, research and response to the claim are relevant and the testimony and the information is not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 24 factual investigation unless the facts were 11:59:23<br>25 so patently clear that it was obvious that 11:59:25<br><br><br>Page 461<br><br>1 there was coverage. So I wanted to talk 11:59:28<br>2 through the entire situation. 11:59:31<br>3 Q. Based upon your experience in handling 11:59:33<br>4 entertainment claims, is there a certain 11:59:36<br>5 level of urgency that's typically 11:59:38<br>6 communicated to you by your insured? 11:59:40<br>7 A. They want everything and they want it right 11:59:42<br>8 now. 11:59:44<br>9 Q. And do you proceed with your investigation 11:59:44<br>10 knowing that they have a certain level of 11:59:48<br>11 urgency? 11:59:50<br>12 A. Of course I do. 11:59:51<br>13 Q. And what did you mean about your comments in 11:59:52<br>14 terms of alerting your insured as soon as you 11:59:57<br>15 could? 12:00:01<br>16 A. The one thing that is most important when you 12:00:01<br>17 handle a first-party entertainment claim is 12:00:04<br>18 that if you think that there is going to be 12:00:07<br>19 any issue with regard to coverage, you need 12:00:09<br>20 to let the production know immediately. 12:00:10<br>21 And the reason for that is, as I 12:00:12<br>22 previously explained, they want to know whose 12:00:14<br>23 money they're spending, are they going to be 12:00:16 | Plaintiff's Objections:<br>Page 461:1-2<br>802<br><br>Defendant's Response:<br>ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's knowledge, research and response to the claim are relevant and the testimony and the information is not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 24 spending the insurance company's money or are 12:00:19<br>25 they going to be spending their own money. 12:00:21<br><br><br>Page 462<br><br>1 Is this going to be something that is covered 12:00:22<br>2 or is this something they have to put in 12:00:24<br>3 their own internal budgets. So obviously 12:00:26<br>4 that's an important concern to them. 12:00:28<br>5 When we initially get a claim, you 12:00:30<br>6 know, if somebody says, "Is this covered," 12:00:32<br>7 what we always will tell them is, you know, 12:00:34<br>8 we have to do a factual investigation. 12:00:36<br>9 And I know that -- that Peter's 12:00:38<br>10 favorite thing to tell them is behave as 12:00:40<br>11 though you don't have any insurance and do 12:00:42<br>12 what is prudent in that situation, so that 12:00:45<br>13 they're not relying upon the fact that there 12:00:47<br>14 could be coverage in making their next 12:00:49<br>15 decision. 12:00:51<br>16 Q. Do you attempt to predetermine whether 12:00:52<br>17 there's going to be coverage or not before 12:00:54<br>18 you've done your full investigation? 12:00:56<br>19 A. Absolutely not. 12:00:58<br>20 Q. What is your process for analyzing coverage? 12:00:58<br>21 A. Well, I try to gather the facts that are 12:01:02<br>22 applicable to the situation, I then look at 12:01:06<br>23 the policy language and see how the facts 12:01:10<br>24 apply to the policy language, determine if 12:01:12 | |

| Deposition Designation | Objection & Response |
|---|---|
| 25 there are people that I need to interview at 12:01:14<br>Page 463<br><br>1 the insured. 12:01:17<br>2 For example, if you're dealing with 12:01:18<br>3 an abandonment claim, which means that the -- 12:01:20<br>4 the insured has abandon a production, decided 12:01:23<br>5 not to continue to film it, you want to 12:01:26<br>6 figure out, "Okay, well, what was your basis 12:01:28<br>7 for abandoning the claim." 12:01:29<br>8 So you would get together with 12:01:31<br>9 the -- the insured and talk through what 12:01:33<br>10 their thought process was with regard to 12:01:34<br>11 abandoning the claim and evaluate the fact 12:01:38<br>12 situation that applied to that, so you want 12:01:40<br>13 to be looking at a variety of different 12:01:42<br>14 facts. 12:01:44<br>15 Just like if you were handling a car 12:01:45<br>16 accident case, you would want to get medical 12:01:47<br>17 reports before you paid the claim, because 12:01:49<br>18 you want to know what has actually happened 12:01:50<br>19 to the person and have they reached their 12:01:53<br>20 healing plateau, you would want to get the 12:01:55<br>21 police report related to the car accident to 12:01:58<br>22 see who was found at fault, that sort of 12:01:59<br>23 thing. 12:02:01<br>24 Q. When you turn your attention to the policy 12:02:01<br>25 itself and you're applying the facts to the 12:02:03 | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 464<br><br>1 policy, do you look for coverage as your 12:02:05<br>2 initial step? 12:02:07<br>3 A. That is -- that is what we are supposed to 12:02:11<br>4 do. Always, the first thing that you do is 12:02:13<br>5 you see if you can find coverage. Our job is 12:02:16<br>6 to find coverage if coverage can be found. 12:02:17<br>7 (Whereupon, Exhibit 247 was 12:02:23<br>8 marked for identification.) 12:02:24<br>9 BY MS. REED: 12:02:24<br>10 Q. Let me hand you Exhibit 247, please, ma'am. 12:02:24<br>11 Can you identify Exhibit 247 as an 12:02:27<br>12 e-mail string that culminates an e-mail that 12:02:29<br>13 you sent July the 15th, 2014, to Mr. Williams 12:02:35<br>14 and Mr. Gutterman? 12:02:38<br>15 A. Yes, that's what it is. 12:02:41<br>16 Q. Why did you send this particular e-mail 12:02:45<br>17 raising the issue of the last travel warning 12:02:49<br>18 issued by the U.S.? 12:02:51<br>19 A. Because when I had dealt with extra expense 12:02:53<br>20 claims in other countries before, I want -- I 12:02:56<br>21 always -- you always want to see so what -- 12:03:00<br>22 what -- what -- what does the production know 12:03:03<br>23 before they even get to the country about 12:03:05 | Plaintiff's Objections:<br>Page 464:7-24<br>802<br><br>Defendant's Response:<br>ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's knowledge, research and response to the claim are relevant and the testimony and the information is not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 24 what the conditions are in that country. 12:03:07<br>25 Q. And does this indicate to you that you were 12:03:10<br><br>Page 465<br><br>1 already performing research and analysis on 12:03:13<br>2 July the 15th about the claim? 12:03:15<br>3 A. Yes. 12:03:17<br>4 Q. Does this indicate to you that Mr. Gutterman 12:03:18<br>5 had shared the policy with you and with 12:03:20<br>6 Mr. Williams as of July the 15th? 12:03:24<br>7 A. I don't know if he shared it with us or if it 12:03:26<br>8 was actually located in the claim file 12:03:29<br>9 already, but he was clearly forwarding it to 12:03:31<br>10 both of us at that time. 12:03:33<br>11 Q. So by July the 15th, it was at least 12:03:34<br>12 available for you to access? 12:03:37<br>13 A. Yes. 12:03:39<br>14 (Whereupon, Exhibit 248 was 12:03:49<br>15 marked for identification.) 12:03:49<br>16 BY MS. REED: 12:03:49<br>17 Q. Let me hand you Exhibit 248, please, ma'am. 12:03:50<br>18 A. Yes. 12:03:52<br>19 Q. Can you identify Exhibit 248 as an e-mail 12:03:52<br>20 string which culminates in an e-mail that you 12:03:57<br>21 sent to Mr. Williams and Mr. Gutterman on 12:04:00<br>22 July the 16th? 12:04:02<br>23 A. Yes, this is an e-mail exchange between us in 12:04:03<br>24 which I was conveying the first four 12:04:09 | Plaintiff's Objections:<br>Page 465:14-25<br>802<br><br>Defendant's Response:<br>ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's knowledge, research and response to the claim are relevant and the testimony and the information is not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 25 enumerated sections of the war exclusion 12:04:16<br><br>Page 466<br><br>1 contained in the general conditions of the 12:04:18<br>2 production policy. 12:04:21<br>3 Q. And what was the purpose of you communicating 12:04:22<br>4 this to Mr. Williams and Mr. Gutterman? 12:04:24<br>5 A. It appears that at this point in my research 12:04:27<br>6 I was thinking that this might be an 12:04:30<br>7 exclusion that we needed to evaluate. 12:04:32<br>8 Q. Did you have some discussions with 12:04:33<br>9 Mr. Williams about the war exclusions that 12:04:35<br>10 were in this policy? 12:04:37<br>11 A. Well, certainly I did, yes. 12:04:40<br>12 Q. And did he ever make any indication to you 12:04:41<br>13 that he analyzed the applications of the 12:04:46<br>14 exclusions in a different way than you were 12:04:51<br>15 communicating with him? 12:04:53<br>16 A. No. I mean, we talked through what the facts 12:04:55<br>17 were, you know, because obviously I had done 12:04:57<br>18 an extensive investigation, was continuing to 12:05:00<br>19 investigate, and Danny was doing the same 12:05:02<br>20 thing. Peter, obviously, wasn't doing that 12:05:04<br>21 same investigation. That wasn't his job. So 12:05:06 | Plaintiff's Objections:<br>Page 466:1-25<br>802<br><br>Defendant's Response:<br>ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's knowledge, research and response to the claim are relevant and the testimony and the information is not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 22 I was relaying to him the facts as we knew 12:05:11<br>23 them and talking about whether or not the war 12:05:14<br>24 exclusion would apply to the facts as we knew 12:05:16<br>25 them. But, no, he did not disagree. He 12:05:20<br><br>Page 467<br>1 agreed that the war conclusion was 12:05:22<br>2 potentially applicable. 12:05:24<br>3 Q. Did you and Mr. Gutterman and Mr. Williams 12:05:25<br>4 together have various conversations about the 12:05:29<br>5 analysis of the claim? 12:05:32<br>6 A. Yes, we did. 12:05:33<br>7 Q. By July the 16th, do you have any 12:05:44<br>8 recollection about your observation on the 12:05:46<br>9 potential applicability of the war exclusion? 12:05:50<br>10 A. Well, at that point I was clearly considering 12:05:53<br>11 them, because I wouldn't have sent them 12:05:56<br>12 otherwise. 12:05:58<br>13 Q. And do you recall your thought process by 12:05:59<br>14 that point in time? 12:06:02<br>15 A. Well, at that point I had already started 12:06:03<br>16 looking at what was actually happening in 12:06:05<br>17 Israel at this time and what had led up to 12:06:07<br>18 the current conditions in Israel. And it 12:06:12<br>19 appeared to me that what was happening was a 12:06:15<br>20 war or warlike action certainly. 12:06:18 | Plaintiff's Objections:<br>Page 467:1-2<br>802<br><br>Defendant's Response:<br>ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. The witness's knowledge, research and response to the claim are relevant and the testimony and the information is not offered for the truth of the matter asserted. 801; 807.<br><br>Plaintiff's Objections:<br>Page 467:21-25<br>MIL,402,403,701<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense |

**1142**

| Deposition Designation | Objection & Response |
|---|---|
| 21 Q. Did you look at the insurrection language and 12:06:20<br>22 the weapon of war language around this time? 12:06:23<br>23 A. I did, yes. 12:06:26<br>24 Q. Can you recall any observations that you had 12:06:27<br>25 about either one of those? 12:06:29<br><br><br>Page 468<br><br>1 A. Well, you know, as is usual, when you're -- 12:06:30<br>2 when you're evaluating a coverage provision, 12:06:35<br>3 you want to look at all of the provisions 12:06:37<br>4 that could apply. In this case, it was 12:06:39<br>5 apparent that war or warlike actions clearly 12:06:43<br>6 applied, and that if you viewed Gaza as part 12:06:47<br>7 of Israel rather than -- than, you know, as 12:06:50<br>8 the Palestinian people regarded it as part of 12:06:56<br>9 Palestine, that this could also qualify as an 12:06:59<br>10 insurrection. 12:07:04<br>11 And if you didn't think that it was 12:07:04<br>12 an insurrection or rebellion, then there were 12:07:06<br>13 still weapons of war being used. That's why 12:07:08<br>14 I included all four of those. 12:07:10<br>15 Q. Did you discuss your ongoing analysis and 12:07:12<br>16 conclusions with your supervisor 12:07:16 | of "bad faith" allegation and damages sought.<br>Is not opinion testimony. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.<br><br>Plaintiff's Objections:<br>Page 468:1-25<br>MIL,402,403,701<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation | Objection & Response |
|---|---|
| 17 Theresa Gooley? 12:07:18<br>18 A. I did. 12:07:18<br>19 Q. Did you discuss your work and your 12:07:19<br>20 conclusions with her before you communicated 12:07:22<br>21 your work and your conclusions to the insured 12:07:27<br>22 and its broker? 12:07:29<br>23 A. Oh, absolutely. 12:07:30<br>24 Q. And what did you and Ms. Gooley discuss in 12:07:31<br>25 that regard? 12:07:33<br><br>Page 469<br><br>1 A. We discussed the information that I had 12:07:34<br>2 gathered and that Danny had gathered. And we 12:07:36<br>3 discussed what I had learned from the case 12:07:41<br>4 law in interpreting this particular 12:07:44<br>5 provision, and then we discussed how the 12:07:47<br>6 facts and the case law applied to this 12:07:49<br>7 particular situation and determined that the 12:07:51<br>8 war exclusion did apply. 12:07:53<br>9 Q. When you were having these discussions with 12:07:55<br>10 Ms. Gooley, had your process advanced to the 12:07:58<br>11 point that you had at least tentative 12:08:02<br>12 conclusions that you had reached? 12:08:04<br>13 A. It looked to me at the -- well, I mean, I -- 12:08:08<br>14 I analyzed it with her, I talked to her about 12:08:10<br>15 it. But, yes, at the time that I was having 12:08:12<br>16 the discussion with her, it looked to me like 12:08:15<br>17 this -- like this policy provision probably 12:08:17 | <u>Plaintiff's Objections:</u><br>Page 469:1-8<br>MIL,402,403,701<br><br><u>Defendant's Response:</u><br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. Is not opinion testimony. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation | Objection & Response |
|---|---|
| 18 applied. 12:08:21<br>19 Q. And what facts had you gathered that caused 12:08:22<br>20 you to analyze the war, Part 1, exclusion in 12:08:24<br>21 the way that you did? 12:08:30<br>22 A. Well, I looked at definitions set forth in 12:08:30<br>23 case law. I also looked at practically what 12:08:33<br>24 was actually happening in Israel and how it 12:08:36<br>25 applied to how case law had interpreted it, 12:08:39<br><br>Page 470<br><br>1 and I also thought about how -- how 12:08:43<br>2 journalists were reporting it and how even 12:08:47<br>3 the U.S. Government uses the term war. 12:08:49<br>4 Q. What facts had you gathered that caused you 12:08:54<br>5 to analyze the warlike actions provision as 12:08:58<br>6 you did? 12:09:03<br>7 A. Does it look like a war, does it talk like a 12:09:03<br>8 war, does it walk like a war. All of these 12:09:08<br>9 indicia were there, so this was a warlike 12:09:12<br>10 action. 12:09:14<br>11 Q. Did you consider the provision about warlike 12:09:15<br>12 to be broader than war? 12:09:17<br>13 A. Yes. 12:09:19<br>14 Q. And why was that? 12:09:20<br>15 A. Because the way that -- the definition of 12:09:21<br>16 war, as set forth in a variety of -- of 12:09:26<br>17 places, sometimes means that you have to 12:09:30 | Plaintiff's Objections:<br>Page 470:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 18 actually have two separate sovereigns that 12:09:32<br>19 are -- are attacking each other. 12:09:37<br>20 And, clearly, in this situation, not 12:09:39<br>21 everyone would recognize Hamas as a sovereign 12:09:42<br>22 state or as a separate entity, in spite of 12:09:45<br>23 the fact that the UN Assembly in 2012 had 12:09:52<br>24 recognized Palestine as a nonmember observer 12:09:54<br>25 state. So, you know, there could be push 12:09:58<br><br>Page 471<br><br>1 back with regard to is this really a war. 12:10:01<br>2 It's not a declared war, but one of 12:10:03<br>3 the things that the case law talked about is 12:10:07<br>4 that it doesn't have to be a declared war. 12:10:10<br>5 For example, there's the Korean conflict, we 12:10:12<br>6 obviously talk about that as the Korean war 12:10:16<br>7 even though there was no declared war during 12:10:18<br>8 that conflict. 12:10:20<br>9 Q. Do all definitions of war require the 12:10:22<br>10 participation of a sovereign? 12:10:25<br>11 A. No, not necessarily. Or it could also -- it 12:10:26<br>12 could also mean a sovereign just on one side, 12:10:30<br>13 a quasi-sovereign on the other, or simply 12:10:33<br>14 another entity on the other side. 12:10:37<br>15 Q. What facts had you gathered that affected the 12:10:38<br>16 way that you were interpreting Part 3 of the 12:10:44 | Plaintiff's Objections:<br>Page 471:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony.<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 17 war exclusions? 12:10:46<br>18 A. Well, Part 3, insurrection, rebellion, 12:10:49<br>19 revolution, usurped power in some instances 12:10:53<br>20 are defined as sort of the ramping up to a 12:11:00<br>21 war by entities that are all contained in the 12:11:04<br>22 same country. So these are sort of what -- 12:11:07<br>23 what you're leading up to to a civil war or 12:11:10<br>24 to a rebellion within the same country. 12:11:15<br>25 In other words, these are two -- the 12:11:19<br><br>Page 472<br><br>1 citizenry within the same country, one aspect 12:11:22<br>2 of the citizenry is rising up against the 12:11:26<br>3 government. 12:11:29<br>4 Q. What factual information had you gathered 12:11:30<br>5 that informed the way that you were looking 12:11:32<br>6 at Part 4 of the war exclusion? 12:11:34<br>7 A. Well, Part 4 is pretty broad. It says if 12:11:37<br>8 you're using weapons of war, this isn't 12:11:41<br>9 covered, it says including atomic fission or 12:11:43<br>10 radioactive force. But it says, "Including," 12:11:46<br>11 it doesn't say only. 12:11:48<br>12 And in this particular case, since 12:11:50<br>13 there were air strikes, there were gun boats, 12:11:52<br>14 there were tanks, there were infantry, all of 12:11:57<br>15 those things are weapons of war, so it 12:12:02<br>16 appeared to me that -- that this exclusion -- 12:12:04 | <br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 472:1-3<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br>Plaintiff's Objections:<br>Page 472:1-21<br>MIL,402,403,104a,701,802 |

| Deposition Designation | Objection & Response |
|---|---|
| 17 that this portion of the exclusion could also 12:12:07<br>18 be brought to bear. 12:12:10<br>19 Q. Let me hand you what's been previously marked 12:12:15<br>20 as Defendant's Exhibit 62 in the case, 12:12:18<br>21 please, ma'am. 12:12:20<br>22 Can you identify Exhibit 62 as an 12:12:21<br>23 e-mail string which culminates in a message 12:12:22<br>24 from Susan Weiss to and to Mr. Gutterman 12:12:26<br>25 dated July the 17th, 2014? 12:12:28<br><br>Page 473<br><br>1 A. Yes. 12:12:29<br>2 Q. Did you receive this e-mail? 12:12:30<br>3 A. I did. 12:12:31<br>4 Q. What was Ms. Weiss reporting to you? 12:12:31<br>5 A. Well, we had a meeting scheduled for the 12:12:34<br>6 following day. This was on July 17th, which 12:12:37<br>7 was a Thursday, and we had a call already 12:12:40<br>8 scheduled for the 18th, and so she was 12:12:42<br>9 conveying that they wanted to talk to us 12:12:45<br>10 before the next day, that she wanted -- 12:12:48<br>11 that -- that things had transpired and they 12:12:50<br>12 wanted to talk now. 12:12:53<br>13 Q. And was that something you were prepared and 12:12:54<br>14 willing to do? 12:12:56<br>15 A. I'm always willing to talk to an insured any 12:12:58<br>16 time they want to talk to us, yes. 12:13:03<br>17 Q. Did she give any indication before the call 12:13:04 | Defendant's Response:<br>It is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the requirements of FRE 602; "MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 18 began about what sort of information she 12:13:07<br>19 wanted to share? 12:13:09<br>20 A. No. 12:13:10<br>21 (Whereupon, Exhibit 249 was 12:13:10<br>22 marked for identification.) 12:13:10<br>23 BY MS. REED: 12:13:18<br>24 Q. Let me hand you Exhibit 249, please, ma'am. 12:13:18<br>25 Can you identify Exhibit 249 as a string of 12:13:21<br><br><br>Page 474<br><br>1 e-mails culminating in a message from 12:13:24<br>2 Ms. Weiss to Ms. Garber and you and 12:13:27<br>3 Mr. Gutterman copied to Mr. Williams setting 12:13:32<br>4 up a call time? 12:13:37<br>5 A. Yes. 12:13:38<br>6 Q. And to the best of your recollection, is 12:13:38<br>7 4:00 p.m. pacific time on July the 17th the 12:13:41<br>8 time that you spoke with your insured and 12:13:45<br>9 broker? 12:13:47<br>10 A. Yes. 12:13:48<br>11 Q. What information did Ms. Weiss or Ms. Garber 12:13:58<br>12 share as part of the call? 12:14:01<br>13 A. At that time they shared with us that they 12:14:03<br>14 had decided to move the production altogether 12:14:05<br>15 based on the fact that there had been no 12:14:10<br>16 deescalation of hostilities between Hamas and 12:14:13<br>17 Israel, and because it did not appear that 12:14:16<br>18 there was going to be a deescalation any time 12:14:18 | |

| Deposition Designation | Objection & Response |
|---|---|
| 19 soon. 12:14:21<br>20 Q. Was the decision to move the production new 12:14:21<br>21 information to you? 12:14:24<br>22 A. I don't remember specifically if Ms. Garber 12:14:26<br>23 had mentioned it in our first call, she may 12:14:29<br>24 have, that if it didn't deescalate that they 12:14:31<br>25 might think about moving the production. I 12:14:34<br><br>Page 475<br><br>1 just don't remember. 12:14:38<br>2 If -- I think that I -- I wrote in 12:14:40<br>3 my coverage letter what was discussed in each 12:14:43<br>4 of those calls, so that would probably help 12:14:45<br>5 me remember. But she might have mentioned 12:14:48<br>6 it. 12:14:51<br>7 Q. Was the call on July 17th the first time it 12:14:51<br>8 was communicated to you that the insured had 12:14:54<br>9 made its decision that it absolutely would 12:14:56<br>10 move the production? 12:14:59<br>11 A. Yes, all we were talking about before was a 12:15:00<br>12 push. 12:15:03<br>13 Q. And did Ms. Weiss or Ms. Garber give you any 12:15:03<br>14 more factual detail about the reasons that 12:15:08<br>15 that decision was made? 12:15:10<br>16 A. Again, as I said, it was because there had 12:15:11<br>17 been no deescalation, that things continued 12:15:15 | |

| Deposition Designation | Objection & Response |
|---|---|
| 18 to be unsafe, it didn't look like things were 12:15:17<br>19 going to change any time soon, so they -- 12:15:20<br>20 they talked about where they would 12:15:23<br>21 potentially move the production. And I know 12:15:24<br>22 they were talking about moving it perhaps to 12:15:30<br>23 New Mexico, perhaps to another -- perhaps 12:15:32<br>24 another Middle Eastern country or -- or 12:15:38<br>25 another -- another foreign country for sure. 12:15:41<br><br>Page 476<br><br>1 Q. Did they share other details with you during 12:15:45<br>2 that call that you can remember? 12:15:48<br>3 A. Well, I know I shared with them that there 12:15:53<br>4 was a location scout that they shouldn't use 12:15:56<br>5 in New Mexico, because I had had issues with 12:15:59<br>6 him before in another claim. And just that 12:16:02<br>7 they wanted to get it up and running as soon 12:16:07<br>8 as possible. They wanted to know if the 12:16:10<br>9 claim was going to be covered and they asked 12:16:11<br>10 me specifically if it was going to be 12:16:13<br>11 covered. 12:16:16<br>12 Q. Did you give a response? 12:16:16<br>13 A. I told them that we were considering the 12:16:17<br>14 applicability of the war exclusion and that 12:16:19<br>15 we were considering it, we hadn't made a 12:16:23 | |

| Deposition Designation | Objection & Response |
|---|---|
| 16 final determination. They wanted to know 12:16:25 | |
| 17 when we were going to make the final 12:16:27 | |
| 18 determination. 12:16:29 | |
| 19 Susan Weiss specifically asked if we 12:16:30 | |
| 20 had gotten an outside coverage determination, 12:16:33 | |
| 21 I think. I'm not sure if she did that in 12:16:36 | |
| 22 that phone call or in the following phone 12:16:40 | |
| 23 call. 12:16:42 | |
| 24 But neither one of them were happy 12:16:42 | |
| 25 with the fact that we might apply the war 12:16:45 | |
| | |
| Page 477 | |
| | |
| 1 exclusion. This was something that 12:16:48 | |
| 2 distressed them. 12:16:50 | |
| 3 They continued to emphasize that 12:16:51 | |
| 4 Hamas was a terrorist organization, and if it 12:16:53 | |
| 5 was a terrorist organization then this was an 12:16:56 | |
| 6 act of terrorism, it was not a war, nor could 12:16:59 | |
| 7 it be a war, nor could it be warlike actions 12:17:02 | |
| 8 or any of the rest of the portions of the war 12:17:05 | |
| 9 exclusion. 12:17:08 | |
| 10 Q. As a part of that call, did you explain to 12:17:09 | |
| 11 them the analysis that you had performed to 12:17:11 | |
| 12 that point either in terms of the facts or 12:17:14 | |
| 13 the policy language? 12:17:16 | |
| 14 A. You know, they were pretty upset, so I'm not 12:17:18 | |
| 15 sure how much detail I actually went into at 12:17:22 | |
| 16 that point. I mean, I think that we did talk 12:17:24 | |

| Deposition Designation | Objection & Response |
|---|---|
| 17 about the fact that, you know, this looks 12:17:27<br>18 like a war, there are gun boats, there are 12:17:30<br>19 air strikes, there are tanks, there are -- 12:17:33<br>20 are all of these other things that are 12:17:35<br>21 happening, you know, they're -- they're 12:17:36<br>22 invading Gaza, there are, you know, thousands 12:17:37<br>23 of troops on the ground, and that sort of 12:17:40<br>24 thing. 12:17:43<br>25 But they just continued to emphasize 12:17:44<br><br><br>Page 478<br><br>1 that they thought that because Hamas was a 12:17:45<br>2 terrorist organization, this couldn't 12:17:48<br>3 possibly be a war, a warlike action or any of 12:17:50<br>4 the rest of the exclusion. 12:17:53<br>5 Q. As of the time you had that conversation on 12:17:54<br>6 July the 17th with Ms. Weiss and Ms. Garber, 12:17:57<br>7 had OneBeacon made a final claim decision? 12:18:02<br>8 A. No. We were still considering it, we were 12:18:04<br>9 looking at it. 12:18:06<br>10 Q. What did you say about a final claim 12:18:07<br>11 decision, if anything? 12:18:09<br>12 A. Well, I think that they asked for a final 12:18:10<br>13 claim decision immediately, and I think that 12:18:12<br>14 we agreed that there would be a final 12:18:17<br>15 decision -- that I would give them a final 12:18:19<br>16 decision the following week. I don't 12:18:21 | |

| Deposition Designation | Objection & Response |
|---|---|
| 17 remember exactly what day we agreed upon, but 12:18:27<br>18 very shortly thereafter. 12:18:29<br>19 Q. And was it your intent after that call to 12:18:30<br>20 continue to work through the claim to get to 12:18:33<br>21 the point of making a final claim decision? 12:18:35<br>22 A. Yes. 12:18:36<br>23 Q. What additional fact analysis or -- pardon 12:18:37<br>24 me. 12:18:37<br>25 What additional fact research, if 12:18:46<br><br>Page 479<br><br>1 any, did you do after the call on the 17th? 12:18:48<br>2 A. Well, I think I continued to do the same 12:18:50<br>3 research that I had been doing in terms of 12:18:52<br>4 what exactly had gone on, what was currently 12:18:54<br>5 going on. I was just continuing the 12:18:56<br>6 research. 12:18:59<br>7 But I also was having discussions 12:18:59<br>8 internally to say, you know, this is what -- 12:19:01<br>9 this is my decision, this is what I think 12:19:04<br>10 we're going to do, as soon as I had reached 12:19:06<br>11 the conclusion that I was pretty sure that 12:19:09<br>12 that's what was going to happen. 12:19:11<br>13 You know, that's something that I 12:19:13<br>14 would want to inform other people of, again, 12:19:14<br>15 because the first thing that usually happens 12:19:16<br>16 if you deny an entertainment claim is that 12:19:19<br>17 they don't want to talk to you anymore, they 12:19:21 | |

| Deposition Designation | Objection & Response |
|---|---|
| 18 want to talk to everyone above you. That had 12:19:23<br>19 been my experience. 12:19:25<br>20 Q. Between the time that you had the telephone 12:19:26<br>21 call on July the 17th and when you 12:19:29<br>22 communicated a final decision on behalf of 12:19:32<br>23 OneBeacon, did you discuss your process with 12:19:35<br>24 other people within OneBeacon? 12:19:39<br>25 A. Yes, I did. 12:19:42<br><br>Page 480<br><br>1 Q. And who were those people? 12:19:43<br>2 A. I'm sure I talked to Danny and Peter and 12:19:45<br>3 Theresa. I know that Theresa wanted to talk 12:19:48<br>4 to Sean, and they had planned a meeting, but 12:19:51<br>5 I don't -- I don't think that that meeting 12:19:54<br>6 actually took place. At least not with me. 12:19:56<br>7 I think that she talked to him separately. 12:19:58<br>8 Q. Did you advise the people internally of your 12:20:00<br>9 anticipated decision for the purpose of 12:20:04<br>10 getting them to weigh in on the decision as 12:20:07<br>11 well? 12:20:10<br>12 A. Well, I'm the person who makes the decision. 12:20:10<br>13 But, certainly, if other people had other 12:20:12<br>14 views about how -- what -- about my decision 12:20:14<br>15 if they viewed it differently, you know, of 12:20:18 | Plaintiff's Objections:<br>Page 480:19-25<br>802<br><br>Defendant's Response:<br>Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 16 course I would welcome their feedback. This 12:20:21<br>17 is a collaborative process. I don't make 12:20:23<br>18 this decision in a vacuum. 12:20:25<br>19 Q. Did Mr. Gutterman ever indicate to you that 12:20:26<br>20 he disagreed with any of the analysis that 12:20:28<br>21 you performed? 12:20:31<br>22 A. No, he did agree. 12:20:31<br>23 Q. Did Mr. Williams ever indicate to you that he 12:20:33<br>24 disagreed with any of the analysis you 12:20:36<br>25 performed? 12:20:38<br><br>Page 481<br><br>1 A. No, he also agreed. 12:20:39<br>2 Q. Did Ms. Gooley ever indicate to you that she 12:20:40<br>3 disagreed with any of the analysis you 12:20:44<br>4 performed? 12:20:46<br>5 A. No. All of us agreed that the war exclusion 12:20:46<br>6 applied. We did not even think this was a 12:20:49<br>7 close call. 12:20:51<br>8 Q. How confident did you feel in the analysis 12:20:52<br>9 that you performed? 12:20:54<br>10 A. I felt very confident. 12:20:54<br>11 Q. When the decision was eventually made to deny 12:20:58<br>12 the claim, are you the person who made the 12:21:01<br>13 decision? 12:21:03<br>14 A. I am. 12:21:03<br>15 Q. Do you know at about what date that final 12:21:04 | Plaintiff's Objections:<br>Page 481:1<br>802<br><br>Defendant's Response:<br>Not offered for the truth of the matter asserted. 801; 807.<br><br>Plaintiff's Objections:<br>Page 481:2-7<br>MIL,402,403,602,802,<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>It is clear from the facts that the witness has personal knowledge and therefore no preliminary |

| Deposition Designation | Objection & Response |
|---|---|
| 16 decision was made? 12:21:08<br>17 A. No, I couldn't tell you exactly. I mean, 12:21:09<br>18 obviously, I was probably pretty close to the 12:21:14<br>19 decision if I was communicating to the 12:21:17<br>20 insured that we were seriously considering 12:21:19<br>21 it, because I wanted to alert them that, you 12:21:21<br>22 know, this could be coming down the pike and 12:21:24<br>23 you should be prepared for it. But there 12:21:26<br>24 were probably other things that I wanted to 12:21:29<br>25 look at, and certainly internal dialog that I 12:21:33<br><br>Page 482<br><br>1 wanted to have before I communicated the 12:21:36<br>2 final decision to them. 12:21:38<br>3 Q. Did you have the opportunity to pursue those 12:21:39<br>4 avenues before you did communicate the final 12:21:41<br>5 decision to them? 12:21:43<br>6 A. Yes. 12:21:44<br>7 (Whereupon, Exhibit 250 was 12:21:45<br>8 marked for identification.) 12:21:45<br>9 BY MS. REED: 12:21:45<br>10 Q. Let me hand you Exhibit 250, please, ma'am. 12:21:46<br>11 Can you identify Exhibit 250 as an 12:21:57<br>12 e-mail string which culminates in a message 12:21:59<br>13 from you to Ms. Weiss, Ms. Garber and 12:22:02<br>14 Mr. Gutterman setting up arrangements for a 12:22:05 | question exists because the testimony meets the requirements of FRE 602; Witness has knowledge. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| 15 conference call on July the 22nd? 12:22:09<br>16 A. Yes. So this was the following Tuesday, and 12:22:12<br>17 we were setting up a conference call. 12:22:14<br>18 Q. So July the 22nd was one week since your 12:22:16<br>19 first interaction with Ms. Weiss and 12:22:20<br>20 Ms. Garber? 12:22:22<br>21 A. That's correct. 12:22:23<br>22 Q. Did you have an anticipated agenda to cover 12:22:27<br>23 on the July 22nd call? 12:22:29<br>24 A. Yes. I wanted to tell them that the claim 12:22:31<br>25 would not be covered. 12:22:34<br><br>Page 483<br><br>1 Q. And was that something that you would 12:22:35<br>2 communicate as part of your practice by 12:22:38<br>3 telephone rather than in a letter to begin 12:22:40<br>4 with? 12:22:42<br>5 A. Well, since -- since time is of the essence 12:22:42<br>6 with production claims, yes, we usually will 12:22:46<br>7 give an oral answer and say we're going to be 12:22:48<br>8 following up with a detailed letter. 12:22:51<br>9 Q. What did you cover when the call on July the 12:22:54<br>10 22nd occurred? 12:22:59<br>11 A. Well, again, we talked about the facts that 12:23:01<br>12 we had gathered, we talked about what our 12:23:04<br>13 process was in evaluating the claim. Both 12:23:07 | |

| Deposition Designation | Objection & Response |
|---|---|
| 14 Susan and Andrea were not happy with the 12:23:09<br>15 decision. And, again, at some point in time 12:23:12<br>16 Susan was asking me if we had gotten an 12:23:16<br>17 outside coverage opinion, and I don't 12:23:20<br>18 remember if it was in the previous call or if 12:23:21<br>19 it was in this call. But -- but that was 12:23:23<br>20 something that -- that she wanted to know, in 12:23:25<br>21 other words, was I only relaying upon my own 12:23:27<br>22 judgment or had I gotten additional advice 12:23:30<br>23 from outside coverage counsel. 12:23:34<br>24 Q. Did you discuss your analysis and the reasons 12:23:42<br>25 that you had reached your conclusions on that 12:23:49<br><br>Page 484<br><br>1 call? 12:23:51<br>2 A. I believe so, yes. 12:23:51<br>3 Q. Did Ms. Weiss or Ms. Garber make any specific 12:23:52<br>4 responses to you about the specifics you 12:23:56<br>5 described? 12:23:58<br>6 A. No. They weren't happy with the decision and 12:23:59<br>7 it was not an extremely lengthy call. You 12:24:02<br>8 know, again, they emphasized that this 12:24:07<br>9 exclusion could not apply, because Hamas is a 12:24:08<br>10 terrorist organization. So they told me, you 12:24:10<br>11 know, that they did not agree with my 12:24:13 | |

| Deposition Designation | Objection & Response |
|---|---|
| 12 analysis, they did not agree that the war 12:24:15<br>13 exclusion had any applicability in this 12:24:17<br>14 situation, and that this was an act of 12:24:20<br>15 terrorism, that an act of terrorism is what 12:24:22<br>16 had caused them to move the production and, 12:24:24<br>17 therefore, the war exclusion could not apply. 12:24:27<br>18 Q. Did you discuss with them any research or 12:24:31<br>19 analysis that you had performed in regard to 12:24:34<br>20 Hamas or Hamas's actions? 12:24:36<br>21 A. I did, yes. 12:24:38<br>22 Q. And what did you say? 12:24:39<br>23 A. I can't tell you as I sit here today exactly 12:24:40<br>24 what I told them, but I'm sure I explained 12:24:43<br>25 how I had reached this conclusion. But as I 12:24:45<br><br>Page 485<br><br>1 said, it wasn't a very lengthy call. Once 12:24:48<br>2 they heard what my decision was and told me 12:24:53<br>3 that they thought I was wrong and we had some 12:24:55<br>4 discussion, they -- you know, they ended the 12:24:58<br>5 call. 12:25:00<br>6 Q. Did the call end with a to-do list for either 12:25:00<br>7 one of you? 12:25:02<br>8 A. Not that I recall. 12:25:05<br>9 Q. What was going to occur next? 12:25:06<br>10 A. They wanted a written decision and they 12:25:08 | |

| Deposition Designation | Objection & Response |
|---|---|
| 11 wanted a written decision as soon as 12:25:10<br>12 possible. 12:25:14<br>13 Q. And did you commit to get them a written 12:25:14<br>14 decision as soon as you could? 12:25:16<br>15 A. I did. 12:25:17<br><br>25 Q. Ms. Johnson, did you prepare a written denial 12:43:19<br><br><br>Page 486<br><br>1 letter for the Dig claim? 12:43:22<br>2 A. I did. 12:43:23<br>3 Q. Did you endeavor to meet the requested timing 12:43:23<br>4 that the insured and its broker submitted to 12:43:26<br>5 you? 12:43:30<br>6 A. I did. 12:43:30<br>7 Q. Was there external circumstances that 12:43:31<br>8 prohibited you from doing that? 12:43:34<br>9 A. Yes. I don't recall exactly what was going 12:43:35<br>10 on, but there was also a fire in another 12:43:38<br>11 case, and so it took me an extra day to 12:43:40<br>12 finish the letter and get it to them. 12:43:44<br>13 (Whereupon, Exhibit 251 was 12:43:46<br>14 marked for identification.) 12:43:47<br>15 BY MS. REED: 12:43:47<br>16 Q. Let me hand you Exhibit 251, please, ma'am. 12:43:47<br>17 Did you advise the insured, "Profuse 12:43:51<br>18 apologies, but I will not be able to get the 12:43:53<br>19 coverage letter to you until Monday"? 12:43:57<br>20 A. Yes. 12:43:59<br>21 Q. And what response did you receive from 12:43:59 | |

| Deposition Designation | Objection & Response |
|---|---|
| 22 Ms. Weiss? 12:44:01<br>23 A. "It is imperative that we receive this on 12:44:02<br>24 Monday morning. NBCU has been asking about 12:44:04<br>25 this on a regular basis and we told them that 12:44:08<br><br>Page 487<br><br>1 they'd be receiving the opinion letter by the 12:44:10<br>2 end of this week." 12:44:12<br>3 Q. And did you continue to make your best 12:44:13<br>4 efforts to get that letter to them as quickly 12:44:15<br>5 as you could? 12:44:17<br>6 A. I did. 12:44:18<br>7 (Whereupon, Exhibit 252 was 12:44:24<br>8 marked for identification.) 12:44:25<br>9 BY MS. REED: 12:44:25<br>10 Q. Let me hand you Exhibit 252, please, ma'am. 12:44:25<br>11 Can you identify Exhibit 252 as an 12:44:32<br>12 e-mail from yourself to Ms. Gooley and 12:44:34<br>13 Mr. Williams copied to Christopher Paar? 12:44:37<br>14 A. Yes. 12:44:40<br>15 Q. What was the purpose of this e-mail, please, 12:44:41<br>16 ma'am? 12:44:43<br>17 A. I was sending them my letter that I had 12:44:43<br>18 planned to send to Susan Weiss, so I was 12:44:47<br>19 sending it to them to review in case they had 12:44:51<br>20 any questions or comments before I sent it on 12:44:55<br>21 to the insured. 12:44:58 | |

| Deposition Designation | Objection & Response |
|---|---|
| 22 Q. Was it part of your personal practice to seek 12:44:58<br>23 input about a denial letter from your 12:45:01<br>24 colleagues before it was sent out? 12:45:03<br>25 A. Yes, in most circumstances, and certainly 12:45:04<br><br>Page 488<br><br>1 in -- in a case like this with a client like 12:45:10<br>2 NBC. 12:45:15<br>3 Q. And thy were you seeking input from 12:45:15<br>4 Theresa Gooley? 12:45:18<br>5 A. Because she was my supervisor and I had 12:45:18<br>6 discussed this claim with her. 12:45:20<br>7 Q. And why were you seeking input from 12:45:22<br>8 Mr. Williams? 12:45:24<br>9 A. Because this was his insured as well, and he 12:45:25<br>10 would be the one who was hearing from the 12:45:27<br>11 insured after they received the letter, in 12:45:29<br>12 all likelihood. 12:45:31<br>13 Q. Did Ms. Gooley have any substantive changes 12:45:32<br>14 or comments? 12:45:36<br>15 A. She made one stylistic changes to the first 12:45:37<br>16 paragraph of the letter, and I do not think I 12:45:41<br>17 adopted the change. 12:45:43<br>18 Q. Was there a reason? 12:45:44<br>19 A. That I didn't adopt the change? 12:45:45<br>20 Q. Yes, ma'am. 12:45:47<br>21 A. Well if it's stylistic, you know, the letter 12:45:48<br>22 has to sound as though it's in my voice, 12:45:51 | |

| Deposition Designation | Objection & Response |
|---|---|
| 23 because it is my voice, so that's probably 12:45:54<br>24 why. 12:45:56<br>25 Q. Did Mr. Williams make any comments to the 12:45:56<br><br>Page 489<br><br>1 letter? 12:45:59<br>2 A. Not that I recall. 12:45:59<br>3 Q. Did Ms. Gooley indicate to you that she 12:46:01<br>4 agreed with the analysis that you were going 12:46:04<br>5 to provide to the insured? 12:46:06<br>6 A. She did. 12:46:08<br>7 Q. Did Mr. Williams indicate to you that he 12:46:08<br>8 agreed with the analysis you were going to 12:46:11<br>9 provide to the insured? 12:46:13<br>10 A. He did. 12:46:13<br>11 Q. Let me hand you what's been previously marked 12:46:27<br>12 as Defendant's Exhibit 36, please, ma'am. 12:46:29<br>13 Can you identify this as an e-mail 12:46:32<br>14 that you sent to Ms. Weiss and Ms. Garber 12:46:36<br>15 attaching a coverage determination letter? 12:46:38<br>16 A. Yes, it is -- it is sending them our coverage 12:46:40<br>17 determination. 12:46:45<br>18 Q. And let me also hand you what's been marked 12:46:45<br>19 as Defendant's Exhibit 37, please, ma'am. 12:46:48<br>20 Can you identify Exhibit 37 as a 12:46:53<br>21 corrected version of the coverage 12:46:56<br>22 determination letter you sent to Ms. Weiss 12:46:58<br>23 and Ms. Garber? 12:47:02<br>24 A. Yes, it appears that I noticed that the 12:47:02 | |

| Deposition Designation | Objection & Response |
|---|---|
| 25 automatic page numbering did not seem to be 12:47:05<br><br>Page 490<br><br>1 working, so I fixed it. 12:47:07<br>2 Q. All right. Let me ask you to refer to the 12:47:11<br>3 attachment to this letter, please, ma'am. 12:47:13<br>4 Is this the final version that you 12:47:15<br>5 provided to the insured and its broker? 12:47:16<br>6 A. Yes, it appears to be so. 12:47:19<br>7 Q. Did you write this letter? 12:47:25<br>8 A. I did. 12:47:27<br>9 Q. And is this your analysis that you were 12:47:28<br>10 providing to your insured? 12:47:32<br>11 A. Yes, it is. 12:47:34<br>12 Q. Did you provide notice to the insured of all 12:47:35<br>13 parts of the war exclusion having 12:47:41<br>14 applicability to the facts of the claim? 12:47:45<br>15 A. Yes. I cited in the letter the portions of 12:47:47<br>16 the war exclusion that I thought had 12:47:56<br>17 potential applicability here, yes. 12:47:57<br>18 Q. Was the discussion that you provided in the 12:47:59<br>19 written coverage letter consistent with the 12:48:03<br>20 information that you had previously shared 12:48:06<br>21 verbally? 12:48:07<br>22 A. Yes. 12:48:08<br>23 (Whereupon, Exhibit 253 was 12:48:22<br>24 marked for identification.) 12:48:26<br>25 BY MS. REED: 12:48:26<br><br>Page 491<br><br>1 Q. Let me hand you Exhibit 253, please, ma'am. 12:48:26 | |

| Deposition Designation | Objection & Response |
|---|---|
| 2 Can you identify Exhibit 253 as an 12:48:31 | |
| 3 e-mail sent by Andrea Garber to you dated 12:48:35 | |
| 4 July 31st, 2014? 12:48:38 | |
| 5 A. Yes, it's a letter from her saying that they 12:48:41 | |
| 6 disagree with my analysis and my conclusions 12:48:44 | |
| 7 and they will prepare a substantive response 12:48:47 | |
| 8 which they expect to provide to me within the 12:48:50 | |
| 9 next week. 12:48:52 | |
| 10 Q. Did you have any verbal conversations with 12:48:54 | |
| 11 Ms. Garber or Ms. Weiss after you sent the 12:48:57 | |
| 12 coverage determination letter? 12:49:00 | |
| 13 A. Ever? 12:49:06 | |
| 14 Q. In regard to your coverage determination 12:49:08 | |
| 15 letter. 12:49:10 | |
| 16 A. I don't recall having any conversations with 12:49:11 | |
| 17 them after I had sent the letter and after 12:49:14 | |
| 18 they sent me this e-mail. I mean, we were 12:49:17 | |
| 19 waiting for their response. 12:49:21 | |
| 20 (Whereupon, Exhibit 254 was 12:49:26 | |
| 21 marked for identification.) 12:49:28 | |
| 22 BY MS. REED: 12:49:28 | |
| 23 Q. Let me hand you Exhibit 254, please, ma'am. 12:49:28 | |
| 24 A. Yes. 12:49:34 | |
| 25 Q. Can you identify Exhibit 254, please? 12:49:35 | |
| | |
| Page 492 | |
| | |
| 1 A. Yes. It is an e-mail from Bertha Garcia to 12:49:39 | |

| Deposition Designation | Objection & Response |
|---|---|
| 2 me with a cc to Tania Hoff, Andrea Garber and 12:49:45<br>3 Lucia Coyoca. And it says, "Please see the 12:49:50<br>4 attached letter." She is attaching a letter 12:49:54<br>5 signed by Ms. Coyoca dated August 13th, 2014. 12:49:56<br>6 Q. Was this the response that the insured 12:50:02<br>7 indicated that you were going to be 12:50:06<br>8 receiving? 12:50:08<br>9 A. Yes. 12:50:08<br>10 Q. What did you do in terms of additional work 12:50:09<br>11 or analysis after receiving the letter 12:50:16<br>12 attached to Exhibit 254? 12:50:19<br>13 A. Well, it is my practice and the practice of 12:50:21<br>14 the people in the claims group that if you 12:50:25<br>15 get a letter from the insured stating that 12:50:27<br>16 they want you to reconsider your coverage 12:50:30<br>17 opinion and providing any further information 12:50:33<br>18 that they want you to consider, that you do a 12:50:36<br>19 reevaluation and consider the information 12:50:38<br>20 that they have set before you. 12:50:40<br>21 Q. Did you do a reevaluation after you received 12:50:42<br>22 the August 13th letter? 12:50:45<br>23 A. I did. I read her letter carefully and 12:50:46<br>24 looked at the case law that she cited in her 12:50:50<br>25 letter, and it did not change my -- my 12:50:53<br><br>Page 493<br><br>1 opinion. 12:51:00 | <br><br>Plaintiff's Objections:<br>Page 493:1-25 |

| Deposition Designation | Objection & Response |
|---|---|
| 2 Q. Do you recall reviewing each of the cases 12:51:01<br>3 that she cited? 12:51:03<br>4 A. I did. 12:51:04<br>5 Q. Do you believe that you had seen those cases 12:51:06<br>6 as part of your initial research that you 12:51:09<br>7 conducted into the case? 12:51:11<br>8 A. Certainly many of them were. The ones that 12:51:13<br>9 concerned the war exclusion were things that 12:51:23<br>10 I had looked at. I think that there were a 12:51:25<br>11 couple of cases that she had referred to not 12:51:28<br>12 concerning the war exclusion, but just in 12:51:40<br>13 terms of insurance contract interpretation 12:51:43<br>14 that I went back and read to make sure that I 12:51:50<br>15 was aware exactly what they said. 12:51:53<br>16 Q. Did you read the California statutes that 12:51:54<br>17 apply in regard to construction of insurance 12:51:59<br>18 contracts? 12:52:04<br>19 A. I did. 12:52:04<br>20 Q. Did you view the war exclusions as being 12:52:05<br>21 ambiguous in any way? 12:52:08<br>22 A. No. 12:52:10<br>23 Q. Did you analyze whether the language in the 12:52:10<br>24 war exclusions has been determined to be 12:52:16<br>25 ambiguous by anyone, any court? 12:52:18<br><br>Page 494<br><br>1 A. I don't recall that there's any court that 12:52:21 | MIL,402,403,701<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony. The witness's knowledge, research and response to the claim are relevant.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 494:1-3 |

| Deposition Designation | Objection & Response |
|---|---|
| 2 said that there was ambiguity, or certainly 12:52:23 3 not in this kind of context. 12:52:36 4 Q. Did you continue to analyze factual 12:52:37 5 information and research factual information 12:52:39 6 as part of your reconsideration? 12:52:41 7 A. I did, yes. 12:52:43 8 Q. Were there additional factual developments 12:52:44 9 that occurred through August the 13th? 12:52:47 10 A. Things were not going well in Israel at all. 12:52:49 11 There was continued escalation, there was a 12:52:55 12 lot of damage in Gaza, and there continued to 12:52:57 13 be a lot of civilian deaths in -- in Gaza 12:53:03 14 and the -- the fighting continued. 12:53:07 15 Q. Did it continue to be a mutual exchange of 12:53:11 16 hostility? 12:53:15 17 A. It did, yes. 12:53:16 18 Q. When you conducted your research, were the 12:53:17 19 same types of weaponry being used as you had 12:53:21 20 noted the month before? 12:53:25 21 A. Yes. 12:53:26 22 Q. Did Ms. Coyoca raise any arguments that you 12:53:36 23 had not previously analyzed as part of your 12:53:41 24 initial work on the claim? 12:53:45 25 A. Ms. Coyoca was taking the same position, that 12:54:32 | MIL,402,403,701,802<br><br>Defendant's Response: "MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. Is not opinion testimony. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. Not offered for the truth of the matter asserted. 801; 807.<br><br>Plaintiff's Objections: Page 494:4-21 MIL,402,403,701<br><br>Defendant's Response: "MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. Is not opinion testimony. The witness's knowledge, research and response to the claim are relevant; not |

**1169**

| Deposition Designation | Objection & Response |
|---|---|
| | unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 495<br><br>1 if Hamas is defined as a terrorist 12:54:36<br>2 organization, then it can't possibly be a 12:54:39<br>3 semi-sovereign nation. And I did not agree 12:54:42<br>4 with that analysis. That was something that 12:54:45<br>5 I considered. 12:54:47<br>6 And I disagreed with her analysis 12:54:48<br>7 with regard to whether or not the hostilities 12:54:50<br>8 constituted a warlike action. She said that 12:54:52<br>9 they did not. 12:54:55<br>10 And I agreed with her that the 12:54:58<br>11 certified acts of terrorism did not apply to 12:55:02<br>12 this claim, because this was not a certified 12:55:04<br>13 act of terrorism. 12:55:07<br>14 Q. Did you prepare a letter to go back to the 12:55:18<br>15 insured to document your reconsideration of 12:55:21<br>16 the claim? 12:55:24<br>17 A. I did. 12:55:25<br>18 (Whereupon, Exhibit 255 was 12:55:33<br>19 marked for identification.) 12:55:35<br>20 BY MS. REED: 12:55:35<br>21 Q. Let me hand you Exhibit 255, please, ma'am. 12:55:36<br>22 Can you identify Exhibit 255? 12:55:39<br>23 A. Yes. 12:55:43<br>24 Q. What is it? 12:55:44 | Plaintiff's Objections:<br>Page 495:10-13<br>403<br><br>Defendant's Response:<br>ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought and the witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation | Objection & Response |
|---|---|
| 25 A. It is my supplemental coverage letter. And I 12:55:46<br><br><br>Page 496<br><br>1 was sending it to Susan Weiss telling her 12:55:51<br>2 that I intended to send it to NBC's counsel, 12:55:53<br>3 because it is my practice that if you're 12:55:58<br>4 going to deny a claim, you let the broker 12:56:00<br>5 know and certainly you -- it's good to alert 12:56:02<br>6 them as to what your arguments are so if they 12:56:07<br>7 have pushback, they can give you that 12:56:11<br>8 pushback before you send it on to the 12:56:13<br>9 insured. 12:56:15<br>10 Q. Where did you obtain the factual information 12:56:28<br>11 that you recited in this letter in terms of 12:56:29<br>12 the conflict? 12:56:33<br>13 A. From news organizations, certainly. It looks 12:56:37<br>14 like I cite some case law. I cite the policy 12:56:41<br>15 again, and the Zanotti report again. So it 12:56:46<br>16 looks like I was referring to the same types 12:56:59<br>17 of research that I had done before. 12:57:01<br>18 Q. Does this indicate to you that you had also 12:57:05<br>19 updated your research including through the 12:57:08<br>20 end of the conflict on August 26th, 2014? 12:57:11<br>21 A. Yes, this indicates that -- that -- I was 12:57:21<br>22 explaining to them the amount of -- or the 12:57:26<br>23 casualties from the conflict. It says that, 12:57:32<br>24 "The conflict extended until August 26th of 12:57:35<br>25 2014," that, "2,143 Palestinians and 69 12:57:37 | Plaintiff's Objections:<br>Page 496:18-25<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 497<br><br>1 Israelis were killed," that, "Israel struck 12:57:42<br>2 5,283 targets in Gaza, Hamas fired 4,564 12:57:45<br>3 rockets into Israel, and more than 50,000 12:57:51<br>4 buildings in Gaza were damaged or destroyed." 12:57:54<br>5 Q. Did you do any research regarding the facts 12:57:58<br>6 of reconstruction or rebuilding that was 12:58:02<br>7 necessary in either territory? 12:58:05<br>8 A. Well, it was clear just from the facts that I 12:58:14<br>9 just recited there had been significant 12:58:16<br>10 damage to Gaza that was going to need 12:58:22<br>11 rebuilding. 12:58:24<br>12 Q. Did you gain an understanding about how or 12:58:24<br>13 why the conflict ended August 26th, 2014? 12:58:27<br>14 A. I believe that it ended due to a cease fire. 12:58:31<br>15 They certainly had not reached any particular 12:58:35<br>16 resolution. 12:58:37<br>17 (Whereupon, Exhibit 256 was 12:58:49<br>18 marked for identification.) 12:58:51<br>19 BY MS. REED: 12:58:51<br>20 Q. Let me hand you Exhibit 256, please, ma'am. 12:58:51<br>21 Can you identify Exhibit 256 as an 12:58:55<br>22 e-mail that you sent to Lucia Coyoca on 12:58:58<br>23 Tuesday, September the 30th, 2014? 12:59:01 | Plaintiff's Objections:<br>Page 497:1-18<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation | Objection & Response |
|---|---|
| 24 A. Yes. It looks like I was sending the letter 12:59:04<br>25 on to Lucia at that time. And it says, "Many 12:59:11<br><br>Page 498<br><br>1 apologies. I thought I sent this letter to 12:59:13<br>2 the on the 19th, I apologize if it didn't 12:59:16<br>3 reach you." 12:59:18<br>4 Q. Had you received a contact indicating that 12:59:19<br>5 she was requesting the letter? 12:59:22<br>6 A. Yes. 12:59:28<br>7 Q. After making this communication to Ms. Coyoca 12:59:28<br>8 at the end of September 2014, did you 12:59:33<br>9 continue to have any direct participation 12:59:37<br>10 with anyone associated with the insured or 12:59:40<br>11 its broker on the Dig claim? 12:59:43<br>12 A. Not that I recall. I -- they had asked 12:59:46<br><br>Page 500<br><br>24 Q. When plaintiff's counsel conducted your 13:02:23<br>25 examination in this case, she showed you a 13:02:25<br><br>Page 501<br><br>1 document entitled, "General Claims 13:02:29<br>2 Practices." Do you recall those? 13:02:32<br>3 A. I do. 13:02:33<br>4 Q. Are those requirements that are in effect? 13:02:34 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 501:16-25<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is |

**1173**

| Deposition Designation | Objection & Response |
|---|---|
| 5 A. No, they're not requirements. 13:02:38<br>6 Q. How do you describe them? 13:02:39<br>7 A. I would say that they're guidelines. They're 13:02:41<br>8 not something that -- they're not rules, 13:02:44<br>9 they're not hard and fast. They're -- 13:02:46<br>10 they're guidelines of things that claim 13:02:52<br>11 handlers should consider and think about with 13:02:54<br>12 regard to how to handle claims, but each 13:02:54<br>13 claim is fact specific, and therefore, you 13:02:56<br>14 know, there's no set of rules that you can 13:02:57<br>15 say that apply in absolutely every situation. 13:02:59<br>16 Q. In questioning by the plaintiff's counsel, 13:03:03<br>17 you discussed some general insurance theories 13:03:06<br>18 about contracts of adhesion. Do you recall 13:03:08<br>19 that? 13:03:10<br>20 A. I do. 13:03:10<br>21 Q. Were you describing the NBCUniversal 13:03:11<br>22 entertainment policy as a contract of 13:03:16<br>23 adhesion? 13:03:18<br>24 A. No, this is not a contract of adhesion. This 13:03:19<br>25 is a contract that was reached by very 13:03:22 | relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 502<br><br>1 sophisticated parties. As I said before, 13:03:25<br>2 when Ms. Coyoca was taking my deposition, 13:03:27<br>3 it's my understanding that this policy was 13:03:32<br>4 actually supplied to us by the insured and by 13:03:35 | Plaintiff's Objections:<br>Page 497:1-7<br>MIL,402,403,204a,602<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. |

| Deposition Designation | Objection & Response |
|---|---|
| 5 Aon, that this is not a document that we 13:03:37<br>6 wrote or selected, that this was their choice 13:03:40<br>7 of policy. 13:03:42 | Is not opinion testimony. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  It is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the requirements of FRE 602.<br>204a is an unknown objection. |

| Deposition Designation | Objection & Response |
|---|---|
| <br><br><br><br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 502<br><br>8 Q. When did you leave the employment of 13:03:43<br>9 OneBeacon? 13:03:45<br>10 A. May of 2015. 13:03:45<br>11 Q. Why did you leave? 13:03:50<br>12 A. They were reorganizing the claim division and 13:03:51<br>13 they were downsizing, and so my -- the duties 13:03:55<br>14 of being a claim lead for entertainment were 13:03:59<br>15 consolidated with another -- to another claim 13:04:01<br>16 lead who also headed up public sector, and so 13:04:04<br>17 I was let go and given a very good severance 13:04:09<br>18 package. 13:04:12<br>3 Q. How long did it take you from start to finish 14:15:14<br>4 to read the entire Congressional Research 14:15:17<br>5 Service report? 14:15:20<br>6 A. The Zanotti report? 14:15:20<br>7 Q. Yes. 14:15:22<br>8 A. Well, certainly more than a couple of hours. 14:15:22<br>9 Q. More than ten hours? 14:15:26 | |

| Deposition Designation | Objection & Response |
|---|---|
| 10 A. No. 14:15:28<br>11 Q. More than five hours? 14:15:30<br>12 A. Probably not, no. 14:15:32<br>13 Q. More than four hours? 14:15:33<br>14 A. I just don't know. 14:15:36<br>15 Q. So is your best estimate an amount of time in 14:15:37<br>16 between two to five hours? 14:15:42<br>17 A. Yes. 14:15:43<br>18 Q. You testified that you had pulled a Wikipedia 14:16:02<br>19 article with respect to Hamas and that you 14:16:06<br>20 looked at the citation of various authorities 14:16:11<br>21 and used that as a point of reference to gain 14:16:14<br>22 information about Hamas, the citations to the 14:16:18<br>23 various authorities that are listed in the 14:16:21<br>24 article; is that right? 14:16:23<br>25 A. That's correct. 14:16:24<br><br>Page 507<br>1 Q. Do you know who wrote the Hamas Wikipedia 14:16:24<br>2 article? 14:16:28<br>3 A. As I sit here today, I couldn't tell you, and 14:16:29<br>4 it's probably a compilation of more than one 14:16:31<br>5 person. 14:16:35<br><br>Page 508<br><br>19 Q. Okay. And this article bears a print date, 14:20:04 | Plaintiff's Objections:<br>Page 468:22-25<br>MIL,402,403,701<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation |

| Deposition Designation | Objection & Response |
|---|---|
| 20 Exhibit 240, of 1/5/2017, or it has a date at 14:20:07<br>21 the top of the page that says 1/5/2017. Did 14:20:14<br>22 the article that you reviewed in July of 2014 14:20:18<br>23 have a date of 1/5/2017 on it? 14:20:21<br>24 A. Well, I would doubt that it did. 14:20:26<br>25 Q. I would doubt it also. 14:20:28<br><br><br>Page 509<br><br>16 Q. Do you recall what version of the Wikipedia 14:21:04<br>17 article that you actually reviewed as you sit 14:21:06<br>18 here today? 14:21:09<br>19 A. I don't, no. It was whatever was available 14:21:09<br>20 on the day that I looked it up. 14:21:12<br>21 Q. And do you know -- you indicated that -- that 14:21:18<br>22 there may have been a group of individuals 14:21:23<br>23 that wrote the article. Do you know if the 14:21:25<br>24 group of individuals or the individual who 14:21:26<br>25 wrote the article, do you have any idea 14:21:28<br><br>Page 510<br><br>1 whether or not they have any type of 14:21:30<br>2 affiliation with the Palestinian cause? 14:21:31<br><br>5 THE WITNESS: I don't. But as I 14:21:38<br>6 said, I didn't rely upon the Wikipedia 14:21:39 | and damages sought.<br>Is not opinion testimony.<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

**1178**

| Deposition Designation | Objection & Response |
|---|---|
| 7 article as an authoritative source. 14:21:42<br><br>Page 511<br><br>17 Q. To your knowledge, Ms. Johnson, was there any 14:23:24<br>18 filming of the television production Dig that 14:23:27<br>19 was scheduled to take place in the Gaza 14:23:30<br>20 strip? 14:23:32<br>21 A. No, not to my knowledge. 14:23:34<br>22 Q. To your knowledge, Ms. Johnson, was there a 14:23:42<br>23 unity government agreement entered into in 14:23:45<br>24 June of 2014 between Hamas and Fatah? 14:23:50<br><br>Page 512<br><br>2 THE WITNESS: Well, as I 14:23:56<br>3 previously testified, in -- in the research 14:23:58<br>4 that I did I did learn that Hamas and Fatah, 14:24:02<br>5 who were two separate factions within the 14:24:05<br>6 Palestinian government, had come together to 14:24:11<br>7 try to form some kind of agreement between 14:24:13<br>8 each other in June. 14:24:16<br><br>Page 513<br><br>1 Q. You did not spend a lot of time looking into 14:24:48<br>2 whether or not a unity agreement had been 14:24:50<br>3 entered into between Fatah and Hamas in June 14:24:54<br>4 of 2014; is that correct? 14:24:57 | |

**1179**

| Deposition Designation | Objection & Response |
|---|---|
| 7 THE WITNESS: I did not spend a 14:25:02<br>8 lot of time looking at that, no. I knew 14:25:04<br>9 that -- that tensions had -- had increased 14:25:06<br>10 between Israel and -- and Hamas and Fatah 14:25:09<br>11 based on the fact that they were forming that 14:25:15<br>12 agreement, but -- but -- but beyond that, I 14:25:17<br>13 did not look at it with any specificity. 14:25:20<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 513<br><br>15 Q. During your direct examination -- or, excuse 14:25:32<br>16 me, during your cross-examination by Ms. Reed 14:25:34<br>17 this morning, you testified that you had 14:25:37<br>18 reviewed several articles and looked at 14:25:40<br>19 various types of information online by 14:25:45<br>20 performing Google searches; is that correct? 14:25:48<br>21 MS. REED: Objection to form, 14:25:50<br>22 misstates the prior testimony. 14:25:51<br>23 THE WITNESS: I did a lot of 14:25:53<br>24 online research. 14:25:54<br>25 BY MS. COYOCA: 14:25:55<br><br><br>Page 514<br><br>1 Q. Did you also read articles? 14:25:55<br>2 A. Yes, I read a lot of articles. 14:25:57<br>3 Q. Did you obtain at least some of those 14:25:59<br>4 articles from an online source? 14:26:01<br>5 A. Yes. 14:26:04 | |

| Deposition Designation | Objection & Response |
|---|---|
| 6 Q. Did you obtain any articles from any print, 14:26:05<br>7 paper publications? 14:26:10<br>8 A. I'm sorry, I'm not sure what you mean. 14:26:14<br>9 Q. Did you perform all of your research in terms 14:26:17<br>10 of gathering articles and information, was 14:26:20<br>11 that all performed electronically or did you 14:26:22<br>12 look to paper, print publications for 14:26:24<br>13 articles or quarterly or -- or any other kind 14:26:27<br>14 of paper information? 14:26:31<br>15 A. No, I didn't go to the library and look up 14:26:33<br>16 various articles. I -- I looked at news 14:26:36<br>17 sources that are contained online, for 14:26:39<br>18 example, the -- the article that was cited to 14:26:41<br>19 by The Washington Post, that was an article 14:26:46<br>20 that I found online. 14:26:48<br>21 Q. Okay. What about the other articles that you 14:26:49<br>22 discussed this morning with Ms. Reed, the -- 14:26:54<br>23 the articles that are -- appeared in the 14:26:59<br>24 Global News and the Middle East Eye? 14:27:02<br>25 A. No, those are articles I found online. 14:27:09<br><br>Page 515<br><br>1 Q. What did you do in order to determine whether 14:27:11<br>2 or not the sources that you reviewed were 14:27:20<br>3 reliable? 14:27:23<br>4 A. Well, as you could see from my testimony 14:27:23 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 515:4-11<br>701,802<br><br>Defendant's Response:<br>ASIC's understanding and development of facts is regarding its claim |

| Deposition Designation | Objection & Response |
|---|---|
| 5 earlier today, I looked at a variety of 14:27:26<br>6 sources. And if -- if many of the sources 14:27:30<br>7 were citing the same information and that 14:27:32<br>8 same information was also being put forth by 14:27:35<br>9 a variety of news sources, including U.S. 14:27:37<br>10 news sources, then I deemed it to be 14:27:42<br>11 reliable. 14:27:44<br>12 Q. So for your purposes, reliability was 14:27:44<br>13 determined based on whether or not there was 14:27:49<br>14 a corollary U.S. publication that contained 14:27:51<br>15 the same information? 14:27:55<br>16 A. Well -- 14:27:56<br>17 MS. REED: Objection to form, 14:27:57<br>18 misstates the prior testimony, beyond the 14:27:58<br>19 scope. 14:27:59<br>20 THE WITNESS: With regard to the 14:28:01<br>21 facts of -- as to what was actually happening 14:28:02<br>22 on the ground in Israel, if there were 14:28:04<br>23 several different news sources, for example, 14:28:07<br>24 if the Israeli newspaper is saying this is 14:28:09<br>25 what's happening, and The Washington Post is 14:28:11 | decision, is not opinion testimony. The witness's knowledge, research and response to the claim are not hearsay. They are not out of court statements. Not offered for the truth of the matter asserted. 801; 807.<br><br>Plaintiff's Objections:<br>Page 515:12-25<br>MIL,402,403,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  They are not out of court statements. Not offered for the truth of the matter asserted. 801; 807. |
| Page 516<br><br>1 saying this is what's happening, and MSNBC is 14:28:14<br>2 saying that this is what's happening, if all 14:28:18 | Plaintiff's Objections:<br>Page 516:1-25<br>MIL,402,403,802 |

| Deposition Designation | Objection & Response |
|---|---|
| 3 three are saying that the same behavior is 14:28:21<br>4 occurring, then, yes, I deemed that to be 14:28:23<br>5 reliable. 14:28:25<br>6 BY MS. COYOCA: 14:28:26<br>7 Q. What about with respect to the 14:28:26<br>8 Middle East Eye, what did you do to determine 14:28:28<br>9 whether or not that was a reliable source of 14:28:30<br>10 information? 14:28:32<br>11 MS. REED: Objection; lack of 14:28:32<br>12 foundation, assumes facts not in evidence, 14:28:33<br>13 beyond the scope. 14:28:35<br>14 THE WITNESS: I -- I think I just 14:28:37<br>15 explained how I determined the reliability of 14:28:39<br>16 the information that I got from the 14:28:43<br>17 Middle East Eye and other articles that I 14:28:44<br>18 read. I looked at what they said, I looked 14:28:46<br>19 to see whether or not the same thing was said 14:28:49<br>20 by another source and by several other 14:28:51<br>21 sources, and if they all were -- were 14:28:54<br>22 reporting the same facts as to what was 14:28:56<br>23 happening in Israel at that particular time, 14:28:58<br>24 then I determined that it was probably 14:29:00<br>25 reliable. 14:29:02<br><br>Page 517<br>22 Q. Ms. Johnson, you're -- you're a lawyer, 14:29:42<br>23 you're a very intelligent woman, obviously, 14:29:44<br>24 and I want to know if you have understanding 14:29:47<br>25 of the word bias, because I am sure that your 14:29:49 | Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br><br><br>Plaintiff's Objections:<br>Page 517:22-25<br>MIL,402,403,701<br><br>Defendant's Response:<br>"MIL" not clear objection;<br>Is not opinion testimony of the witness. The witness's |

| Deposition Designation | Objection & Response |
|---|---|
| | intelligence and understanding are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 518 | Plaintiff's Objections: |
| 1 understanding of the word bias will be 14:29:51<br>2 perfectly fine for purposes of my question. 14:29:54<br>3 MS. REED: I'm going to object, 14:29:57<br>4 argumentative and beyond the scope. 14:29:59<br>5 THE WITNESS: When I think of the 14:30:00<br>6 word bias it means that a particular person 14:30:02<br>7 or organization is viewing facts from a 14:30:05<br>8 skewed angle that represents their own 14:30:08<br>9 opinion. 14:30:10<br>10 BY MS. COYOCA: 14:30:11<br>11 Q. That's a great definition of bias. 14:30:11<br>12 So my question to you is: Did you 14:30:13<br>13 review and try to determine the potential 14:30:15<br>14 bias of any of the publications that you 14:30:19<br>15 reviewed? 14:30:23<br>16 MS. REED: Objection; lack of 14:30:24<br>17 foundation, assumes facts not in evidence, 14:30:25<br>18 beyond the scope. 14:30:27<br>19 THE WITNESS: Well, I'm not sure 14:30:32<br>20 what you mean by did I undertake any means of 14:30:33<br>21 determining the bias. I mean, there are some 14:30:36<br>22 biases that are obvious. Obviously, there 14:30:39<br>23 are other states in -- or countries in the 14:30:42<br>24 Middle East that have a pro-Palestinian 14:30:44<br>25 slant, and there are other countries that 14:30:48 | Page 518:1-25<br>MIL,402,403,701<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony other than that rationally based on the witness's perception and is helpful to clearly understanding the witness's testimony or determining a fact in issue. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

**1184**

| Deposition Designation | Objection & Response |
|---|---|
| Page 519 | Plaintiff's Objections: |
| | Page 519:1-25 |
| 1 have a pro-Israeli stance, the U.S., for 14:30:50 | MIL,402,403,701 |
| 2 example. So if I was looking at a U.S. 14:30:53 | |
| 3 source, you know, is it logical to assume 14:30:57 | Defendant's Response: |
| 4 that there could be a pro-Israeli slant to 14:30:59 | "MIL" not clear objection; |
| 5 that, yes, but I trust that the U.S. -- well, 14:31:03 | ASIC's understanding and |
| 6 at least I hope that the U.S. news 14:31:06 | development of facts is |
| 7 organizations are trying to report the facts 14:31:10 | relevant to reasonableness |
| 8 as they occur and not with any kind of 14:31:12 | of claim decision, defense |
| 9 particular political bias. 14:31:17 | of "bad faith" allegation |
| 10 BY MS. COYOCA: 14:31:19 | and damages sought. |
| 11 Q. So are you testifying that it's to the best 14:31:19 | Is not opinion testimony |
| 12 of your knowledge that any U.S. publication 14:31:22 | other than that rationally |
| 13 that reports on the Hamas/Israeli conflict 14:31:27 | based on the witness's |
| 14 would have a bias in favor of Israelis; is 14:31:32 | perception and is helpful to |
| 15 that your testimony? 14:31:35 | clearly understanding the |
| 16 MS. REED: Objection; misstates 14:31:36 | witness's testimony or |
| 17 the witness's testimony, argumentative, 14:31:37 | determining a fact in issue. |
| 18 beyond the scope of direct. 14:31:40 | The witness's knowledge, |
| 19 THE WITNESS: That's not what I 14:31:43 | research and response to |
| 20 said. I said that I would hope and trust 14:31:44 | the claim are relevant; not |
| 21 that any U.S. organization, any reliable U.S. 14:31:47 | unfairly prejudicial to |
| 22 organization and media would be giving us, 14:31:51 | Plaintiffs, not confusing, |
| 23 hopefully, an unbiassed recitation of what is 14:31:54 | misleading or cumulative |
| 24 actually happening. 14:31:59 | evidence. |
| 25 And, for example, in the -- the clip 14:32:01 | |
| Page 520 | Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 1 that we looked at from Face the Nation from 14:32:03<br>2 CBS News, you know, Holly Williams was saying 14:32:06<br>3 this is exactly what was happening and behind 14:32:12<br>4 her you could actually see what was 14:32:14<br>5 happening. So, no, I did not think that that 14:32:16<br>6 was the source that was biassed towards the 14:32:18<br>7 Israelis. 14:32:21<br>8 BY MS. COYOCA: 14:32:21<br>9 Q. What do you consider to be a reliable source? 14:32:21<br>10 MS. REED: Objection; speculation, 14:32:24<br>11 beyond the scope. 14:32:25<br>12 THE WITNESS: Well, a reliable 14:32:28<br>13 source is going to be one that has the 14:32:31<br>14 indicia of being at least fairly unbiassed, 14:32:33<br>15 for example, The Washington Post, New York 14:32:41<br>16 Times, Wall Street Journal, I would view all 14:32:44<br>17 of them to -- to be unbiassed news 14:32:46<br>18 organizations that are going to tell me what 14:32:49<br>19 is happening rather than what their opinion 14:32:51<br>20 is about what is happening. 14:32:54<br>21 I would also trust that MSNBC, CNN, 14:32:57<br>22 CBS and ABC would also be reporting on what 14:33:01<br>23 is actually happening rather than their 14:33:05<br>24 opinion about what is happening. 14:33:07<br>25 BY MS. COYOCA: 14:33:09<br><br>Page 521 | Page 520:1-25<br>MIL,402,403,701<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony other than that rationally based on the witness's perception and is helpful to clearly understanding the witness's testimony or determining a fact in issue. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation | Objection & Response |
|---|---|
| 1 Q. What about the Middle East Eye, do you 14:33:10<br>2 consider that to be a reliable source? 14:33:12<br>3 MS. REED: Objection; speculation, 14:33:17<br>4 beyond the scope. 14:33:19<br>5 THE WITNESS: I don't know 14:33:19<br>6 anything about the background of the 14:33:22<br>7 Middle East Eye, so I don't know if -- if 14:33:23<br>8 it's a reliable or unreliable news 14:33:26<br>9 organization. But as I said, I did not rely 14:33:32<br>10 upon it specifically. I looked at the 14:33:35<br>11 information that was coming from that source 14:33:37<br>12 and went to look to see whether or not it was 14:33:40<br>13 also supported by other sources that I knew 14:33:43<br>14 to be reliable. 14:33:45<br>15 BY MS. COYOCA: 14:33:47<br>16 Q. The only news article from a U.S. based 14:33:47<br>17 publication that you printed out, or at least 14:33:52<br>18 that made its way into the file, is the 14:33:54<br>19 article from The Washington Post; is that 14:33:56<br>20 right? 14:33:59<br>21 MS. REED: Objection to form, 14:33:59<br>22 misstates the evidence. 14:34:01<br>23 THE WITNESS: I think that that's 14:34:03<br>24 the cite that I used in my coverage letter. 14:34:04<br>25 That certainly is not the only U.S. news 14:34:07<br><br><br>Page 522<br><br>1 article that I read. 14:34:11<br>2 BY MS. COYOCA: 14:34:12 | Plaintiff's Objections:<br>Page 521:1-14<br>MIL,402,403,701<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony other than that rationally based on the witness's perception and is helpful to clearly understanding the witness's testimony or determining a fact in issue. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.<br><br><br><br><br>Plaintiff's Objections:<br>Page 522:1-25<br>MIL,402,403,701,802 |

| Deposition Designation | Objection & Response |
|---|---|
| 3 Q. That was not my question to you, though, 14:34:12<br>4 Ms. Johnson. 14:34:14<br>5 My question to you is: Did you put 14:34:15<br>6 into your file or the file any articles or 14:34:17<br>7 publications -- let's just start with 14:34:21<br>8 articles, any articles that were from a U.S. 14:34:24<br>9 based media organization? 14:34:27<br>10 A. Well, Ms. Coyoca, I wasn't in charge of 14:34:31<br>11 keeping the file, so I don't think that I 14:34:34<br>12 necessarily put any article into the file. I 14:34:36<br>13 can tell you that I looked at a variety of 14:34:39<br>14 articles, not just the article that was 14:34:41<br>15 cited in -- in -- by -- not just the 14:34:44<br>16 Washington Post article. 14:34:48<br>17 I looked at a variety of U.S. 14:34:49<br>18 articles and a variety of articles from other 14:34:51<br>19 places. I looked at The Guardian, I looked 14:34:54<br>20 at the Israeli newspaper, I looked at a 14:34:58<br>21 variety of different articles, not just the 14:35:00<br>22 U.S. articles. And, again, what I was 14:35:03<br>23 looking for is is what is being reported in 14:35:06<br>24 each of these sources something close to or 14:35:09<br>25 identical to what is also being cited in 14:35:13<br><br><br>Page 523<br><br>1 other sources as to what is actually 14:35:15<br>2 happening on the ground. 14:35:17<br>3 Short of going to Israel, it was 14:35:18<br>4 pretty hard for me to make the determination 14:35:20<br>5 in any other way. 14:35:23 | Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony other than that rationally based on the witness's perception and is helpful to clearly understanding the witness's testimony or determining a fact in issue. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807.<br><br><br><br><br>Plaintiff's Objections:<br>Page 523:1-25<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and |

| Deposition Designation | Objection & Response |
|---|---|
| 6 Q. So I just want to make sure I understand you 14:35:24<br>7 correctly. Is it your position that each of 14:35:27<br>8 the articles that you were reviewing for 14:35:32<br>9 purposes of your investigation, that they 14:35:35<br>10 were 100 percent in agreement with respect to 14:35:37<br>11 each of the facts that were set forth in the 14:35:40<br>12 article? 14:35:42<br>13 MS. REED: Objection; misstates 14:35:44<br>14 the witness's testimony, misleading. 14:35:45<br>15 THE WITNESS: Ms. Coyoca, you know 14:35:50<br>16 that that is not what I said. What I said is 14:35:51<br>17 I looked for commonalities between all of the 14:35:53<br>18 articles that I was reading with regard to 14:35:56<br>19 what was happening on the ground. 14:35:58<br>20 Were they all reporting that there 14:35:59<br>21 were air strikes, were they all reporting 14:36:01<br>22 that there was rocket fire, were they 14:36:03<br>23 reporting that there were gun boats, were 14:36:05<br>24 they reporting that there were tanks on the 14:36:08<br>25 ground, you know, were they reporting that 14:36:10 | development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony other than that rationally based on the witness's perception and is helpful to clearly understanding the witness's testimony or determining a fact in issue. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |
| Page 524 | |
| 1 Netanyahu was saying pretty much the same 14:36:13<br>2 thing, were they using exact quotes from 14:36:15<br>3 Israeli or Hamas officials, that sort of 14:36:18<br>4 thing. 14:36:21<br>5 BY MS. COYOCA: 14:36:28<br>6 Q. Ms. Johnson, did the article that you 14:36:28<br>7 reviewed that's set forth in Exhibit 236, 14:36:29<br>8 which is 4487 -- 14:36:33<br>9 A. I'm looking at the exhibit. 14:36:44 | Plaintiff's Objections:<br>Page 524:1-4<br>MIL,402,403,701,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation |

| Deposition Designation | Objection & Response |
|---|---|
| 10 Q. -- did that article refer to the 14:36:45<br>11 Hamas/Israeli conflict as being a war? 14:36:49<br>12 A. So this was on July 9th, two days after 14:36:58<br>13 Israel had started Operation Protective Edge. 14:37:00<br>14 (Reviews document.) I do not see a reference 14:37:47<br>15 to it as being a war. 14:37:53<br>16 Q. Can you please take a look at page 5 of 9 in 14:37:54<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br><u>Page 524</u><br><br>17 the article that's Bates labeled ATL004491. 14:37:57<br>18 A. (Complies.) I'm looking at that page. 14:38:06<br>19 Q. Can you please read aloud the sentence that 14:38:09<br>20 appears right below the type in bold, "Read 14:38:12<br>21 more, Israel prepares for escalation amid 14:38:17<br>22 exchange of rocket fire"? 14:38:19<br>23 A. "The military said it was seeking to retrieve 14:38:21<br>24 stability to the residents of southern 14:38:24<br>25 Israel, eliminate Hamas's capabilities and 14:38:26<br><br><u>Page 525</u><br><br>1 destroy terror infrastructure operating 14:38:30<br>2 against the state of Israel and its 14:38:34<br>3 civilians." 14:38:34<br><br>15 Q. Well, you would agree with me, would you not, 14:38:57<br>16 that this indicates that the military said 14:38:59 | and damages sought.<br>Is not opinion testimony other than that rationally based on the witness's perception and is helpful to clearly understanding the witness's testimony or determining a fact in issue. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

**1190**

| Deposition Designation | Objection & Response |
|---|---|
| 17 that one of its goals was to destroy the 14:39:01<br>18 terror infrastructure? It says that, does it 14:39:07<br>19 not? 14:39:10<br><br>22 THE WITNESS: That's part of what 14:39:13<br>23 it says, certainly. 14:39:14<br><br>Page 526<br><br>12 Q. Could you please tell me where in this 14:39:48<br>13 article it refers to the Israeli/Hamas 14:39:50<br>14 conflict as constituting a war? 14:39:55<br><br>18 THE WITNESS: Well, I mean, I can 14:40:09<br>19 sit here and read this whole thing, but I'm 14:40:10<br>20 assuming that because you're asking me that, 14:40:12<br>21 that it does not say that it is a war. 14:40:14<br><br>23 Q. Well, I -- I would just like your knowledge. 14:40:17<br>24 As of July of 2014 when you were reviewing 14:40:19<br>25 the article, did you believe that this 14:40:22<br><br>Page 527<br><br>1 article made reference to a war? 14:40:24<br>2 A. Well, I'll sit here and read the entire 14:40:26<br>3 article and we'll see. This is dated the 8th 14:40:29<br>4 of July, 2014. (Reviews document.) 14:40:41<br>5 This article states that with regard 14:42:58<br>6 to Israel, that, "The Army is preparing for 14:43:00<br>7 all possible scenarios, including an invasion 14:43:04<br>8 of a ground" -- "or a ground operation." 14:43:08<br>9 Hamas said that, "The massacre of 14:43:10 | |

**1191**

| Deposition Designation | Objection & Response |
|---|---|
| 10 children is a horrendous war crime and all 14:43:14<br>11 Israelis have now become legitimate targets 14:43:19<br>12 for resistance." So in that sense, they were 14:43:22<br>13 referring to it as war in that quote. 14:43:24<br>14 But does the article itself 14:43:26<br>15 characterize it as a war, no, it does not. 14:43:28<br><br>Page 528<br><br>3 Q. Could you please take a look at Exhibit 237. 14:44:25<br>4 And that's the article that appears at 14:44:31<br>5 ATL00442. 14:44:34<br>6 A. Yes, I'm looking at it. 14:44:36<br>7 Q. Can you please tell me where in this article 14:45:00<br>8 it refers to the Israeli/Hamas conflict as 14:45:02<br>9 being a war? 14:45:07<br><br>14 This article refers to the fact that the 14:46:06<br>15 state department spokesman Jen Psaki said 14:46:09<br>16 that, "Israel has the right to defend itself, 14:46:12<br>17 but that no one wants to see a ground war." 14:46:15<br>18 (Reviews document.) 14:46:15<br>19 The article that we just referred to 14:47:43<br>20 is dated July 15th, 2014, so the reference 14:47:45<br>21 that I made to war is the only use of that 14:47:48<br>22 word in this article that I could find in my 14:47:50<br>23 brief review of it at this time. 14:47:56<br><br>25 Q. As of July 15, that was the date that 14:47:59<br><br>Page 529 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1 NBCUniversal submitted the claim to Atlantic; 14:48:03<br>2 is that correct? 14:48:06<br>3 A. That's correct. 14:48:07<br><br>7 Q. On page 2 of 7 of that article, just slightly 14:48:18<br>8 past midway down there is a quote from the 14:48:25<br>9 Ezzedine Al-Qassam Brigades. It begins, 14:48:29<br>10 "They will not dream." Do you see that? 14:48:31<br>11 A. Yes. 14:48:34<br>12 Q. Could you please read that aloud? 14:48:34<br>13 A. It says, "They will not dream of a calm if 14:48:36<br>14 they do not stop their aggression towards our 14:48:40<br>15 people, said Ezzedine Al-Qassam" -- "said the 14:48:40<br>16 Ezzedine Al-Qassam Brigades statement, and 14:48:47<br>17 stop attempting to break our unity 14:48:48<br>18 government." 14:48:51<br>19 Q. Actually, I'm not sure that's exactly what 14:48:51<br>20 the quote reads. What I see the words 14:48:54<br>21 appearing as being, "They will dream of a 14:48:59<br>22 calm if they do not stop their aggression 14:49:00<br>23 towards our people," close quotes, "The 14:49:03<br>24 Ezzedine Al-Qassam Brigades statement said," 14:49:06<br>25 begin quotes, "And stop attempting to break 14:49:07<br><br>Page 530 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1 our unity government," close quotes. Is that 14:49:10<br>2 correct? 14:49:13<br>3 A. Yes, you read it correctly. 14:49:13<br>4 Q. There's a reference here to the unity 14:49:15<br>5 government, is there not? 14:49:17<br>6 A. There is. 14:49:18<br>7 Q. So does this refresh your recollection that 14:49:19<br>8 as of the date of this article, there was in 14:49:22<br>9 fact a unity government that had been agreed 14:49:24<br>10 to between Hamas and Fatah? 14:49:28<br><br>14 THE WITNESS: That is what they 14:49:36<br>15 say the statement said. The previous article 14:49:38<br>16 that you had me look at referred to it as a 14:49:40<br>17 tentative agreement. 14:49:44<br><br>19 Q. Do you know one way or the other as to 14:49:45<br>20 whether the unity agreement had been -- 14:49:48<br>21 excuse me, a unity government had been agreed 14:49:51<br>22 to between Hamas and Fatah as of 14:49:53<br>23 June 30, 2014? 14:49:57<br><br>Page 531<br><br>1 THE WITNESS: I think I've already 14:50:04<br>2 answered that question. Can I tell you with 14:50:05<br>3 absolute certainty whether they had agreed to 14:50:07<br>4 that, no, I cannot. 14:50:10<br><br>6 Q. In your direct testimony in discussing the 14:50:19 | |

| Deposition Designation | Objection & Response |
|---|---|
| 7 TRIA endorsement, you indicated that you had 14:50:21<br>8 agreed that TRIA did not apply and 14:50:27<br>9 specifically you said, begin quotes, "I 14:50:31<br>10 agreed with her that the certified acts of 14:50:34<br>11 terrorism did not apply to this claim, 14:50:36<br>12 because this was not a certified act of 14:50:38<br>13 terrorism," close quotes. Do you recall that 14:50:40<br>14 testimony? 14:50:43<br>15 A. I do. 14:50:43<br>16 Q. Who is the "her" that you were referring to? 14:50:44<br>17 A. You. 14:50:46<br>18 Q. Okay. In my August response letter, 14:50:46<br>19 August 13, 2014, response letter, did I 14:50:54<br>20 indicate to you that the TRIA endorsement did 14:50:57<br>21 not apply because the acts that were ongoing 14:51:02<br>22 in Israel did not constitute certified acts 14:51:06<br>23 of terrorism? 14:51:10<br>24 A. I don't remember exactly what you said, 14:51:11<br>25 except that you did not think that that 14:51:13<br><br>Page 532<br><br>1 endorsement applied. 14:51:16<br><br>9 Q. If you'd turn your attention to page 6 of the 14:53:27<br>10 letter, and that's ATL002031, if you look at 14:53:32<br>11 the paragraph that begins, "By citing the 14:53:40<br>12 endorsement to deny coverage, OBE 14:53:42<br>13 misinterprets the policy in three material 14:53:45<br>14 ways"; do you see that? 14:53:47 | |

| Deposition Designation | Objection & Response |
|---|---|
| 15 A. Yes. 14:53:53<br>16 Q. Is there any discussion herein that indicates 14:53:54<br>17 to you that the argument that I was asserting 14:53:59<br>18 was that the acts that were occurring in 14:54:03<br>19 Israel were not certified acts of terrorism? 14:54:10<br>20 A. You say, "Therefore, the endorsement is 14:54:38<br>21 completely inapplicable to this claim." 14:54:40<br>22 That's what I was referring when saying that 14:54:43<br>23 I agreed with you, I agree that the 14:54:45<br>24 endorsement is completely inapplicable. 14:54:47<br>25 Q. But that wasn't your testimony, is it? 14:54:50<br><br>Page 533<br><br>1 A. Well, I -- 14:54:53<br><br>4 THE WITNESS: Ms. Coyoca, I'm 14:54:56<br>5 sorry if I mischaracterized what you said in 14:54:58<br>6 your letter. What I was trying to say is 14:55:01<br>7 that both of us agreed that the terrorism 14:55:03<br>8 endorsement, the TRIA endorsement was 14:55:05<br>9 inapplicable to this claim. 14:55:08<br><br>11 Q. If it was inapplicable to the claim, then why 14:55:11<br>12 did you cite it in the original letter? 14:55:14<br>13 A. I cited it in the original letter because 14:55:17<br>14 Susan Weiss had continued to say that it was 14:55:19<br>15 terroristic act, that Hamas's conduct was a 14:55:19<br>16 terroristic act, and so I was referring to 14:55:25<br>17 the portion of the policy that referenced 14:55:26 | |

| Deposition Designation | Objection & Response |
|---|---|
| 18 terrorism. 14:55:28<br>19 Q. There is no terrorism exclusion under this 14:55:31<br>20 policy, though, is there? 14:55:34<br><br>24 THE WITNESS: There is no specific 14:55:44<br>25 exclusion in the policy that is called a 14:55:47<br><br>Page 534<br><br>1 terrorism exclusion, no.<br><br>20 Q. Ms. Johnson, my next question to you is: Is 14:56:39<br>21 it your position, was it your position in 14:56:42<br>22 July of 2014 that only certified acts of 14:56:45<br>23 terrorism are terrorism? 14:56:50<br><br>Page 535<br><br>2 THE WITNESS: No<br><br>Page 538<br><br>19 Q. So in that clip from the Face the Nation, 15:00:38<br>20 does either Mr. Schieffer or Ms. Williams 15:00:41<br>21 characterize the conflict as being a war? 15:00:44<br>22 A. They don't. 15:00:46<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION<br><br><br>Page 545<br><br>6 Q. Ms. Johnson, in that report does Mr. Hayes, 15:06:48 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 545:6-14<br>MIL,402,403,802 |

| Deposition Designation | Objection & Response |
|---|---|
| 7 Chris Hayes, characterize the Hamas/Israeli 15:06:53<br>8 conflict, use the words war in his report? 15:06:57<br>9 A. Mr. Hayes specifically has a large screen in 15:07:00<br>10 back of him that says, "Ground war," and also 15:07:03<br>11 beneath him on the screen it says, "Ground 15:07:06<br>12 war," and he uses the term, "Reoccupation," 15:07:09<br>13 which is generally a term that is used in 15:07:13<br>14 times of war. 15:07:15<br><br><br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 545<br><br>15 Q. Ms. Johnson, you did not respond to my 15:07:17<br>16 question. 15:07:24<br>17 Did Mr. Hayes use the word "war" 15:07:25<br>18 during his report -- 15:07:29<br>19 A. No. 15:07:32<br>20 Q. -- in -- with reference to the conflict that 15:07:32<br>21 was ongoing? 15:07:34<br>22 A. No, he did not use the word "war." 15:07:37<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION | Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 551<br><br>14 BY MS. COYOCA: 15:14:23<br>15 Q. What investigation did you undertake to 15:14:23<br>16 determine the meaning of the word "other 15:14:26<br>17 authority" in the second exclusion? 15:14:28<br>18 A. Well, I looked at what Hamas was doing, how 15:14:35<br>19 they were organized, whether or not they had 15:14:39<br>20 authority. I -- you know, I mean, I -- I 15:14:42<br>21 tried to make a determination about whether 15:14:48<br>22 they would qualify as an other authority. 15:14:51<br>23 Q. Ms. Johnson, that was not my question. 15:14:53<br>24 What I'm trying to find out from you 15:14:56<br>25 is: What research did you do in order to 15:14:59 | Plaintiff's Objections:<br>Page 551:14-25<br>MIL,402,403,701<br><br>Defendant's Response:<br>MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony other than that rationally based on the witness's perception and is helpful to clearly understanding the witness's testimony or determining a fact in issue. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 552<br><br>1 determine what the meaning of the phrase, 15:15:04<br>2 "Other authority," was as it's used in the 15:15:07<br>3 context of Exclusion 2? 15:15:11<br>4 A. Well -- 15:15:13<br>5 MS. REED: Lack of foundation. 15:15:13<br>6 THE WITNESS: As I previously 15:15:15<br>7 testified, I looked at case law that involved 15:15:16<br>8 or concerned the war exclusion. I cannot 15:15:20 | Plaintiff's Objections:<br>Page 552:1-18<br>MIL,402,403,701<br><br>Defendant's Response:<br>MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness |

**1199**

| Deposition Designation | Objection & Response |
|---|---|
| 9 tell you as I sit here today, without 15:15:25<br>10 reviewing all the cases again, whether there 15:15:27<br>11 was something that said specifically or 15:15:30<br>12 specifically defined what other authority 15:15:31<br>13 was. Not all of the cases that I looked at 15:15:33<br>14 had the exact same language that is contained 15:15:37<br>15 in this policy in the cases, so I -- I 15:15:40<br>16 can't -- I can't sit here today and tell you 15:15:43<br>17 definitively whether or not there was a case 15:15:45<br>18 that interpreted that. 15:15:47 | of claim decision, defense of "bad faith" allegation and damages sought.<br>Is not opinion testimony other than that rationally based on the witness's perception and is helpful to clearly understanding the witness's testimony or determining a fact in issue. The witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 567<br><br>16 Q. Ms. Johnson, over the scope of time that you 15:38:05<br>17 conducted your factual investigation relating 15:38:07<br>18 to the Dig claim, did you read articles that 15:38:09<br>19 did refer to the conflict of summer of 2014 15:38:12<br>20 as a war? 15:38:15<br>21 A. Yes, I did. 15:38:17<br>22 Q. Can you put Exhibit 237 back in front of you, 15:38:18<br>23 please, ma'am. 15:38:23<br>24 A. (Complies.) 15:38:24<br>25 Q. Let me refer you to page 4 of 4 of that 15:38:29 | Plaintiff's Objections:<br>Page 567:16-25<br>MIL,402,403,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's actions in researching and responding to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative |

| Deposition Designation | Objection & Response |
|---|---|
| | evidence.  Not offered for the truth of the matter asserted. 801; 807. |
| Page 568<br><br>1 document, please. 15:38:32<br>2 A. Yes, I see it in front of me. 15:38:35<br><br>21 into the hands of Hamas." 15:39:09<br>22 Q. Who wrote this article, please, ma'am? 15:39:11<br>23 A. The author is Heller, who reported from 15:39:15<br>24 Jerusalem, Associated Press writers 15:39:19<br>25 Ian Deitch, I think is how you pronounce that 15:39:25 | Plaintiff's Objections:<br>Page 568:1-2; 568:12-25<br>MIL,402,403,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought.<br>The witness's actions in researching and responding to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |
| Page 569<br><br>1 in Jerusalem, Ibrahim Barzak in Gaza City, 15:39:28<br>2 Mohammed -- oh, yikes -- Daraghmeh in 15:39:28<br>3 Ramallah, West Bank, and Matthew Lee in 15:39:39<br>4 Washington contributed to this report. 15:39:39 | Plaintiff's Objections:<br>Page 569:1-4<br>MIL,402,403,802<br><br>Defendant's Response:<br>"MIL" not clear objection; ASIC's understanding and development of facts is |

| Deposition Designation | Objection & Response |
|---|---|
| | relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. The witness's actions in researching and responding to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Not offered for the truth of the matter asserted. 801; 807. |

## 12.    BARBARA-ANN MARKUS-CAFFREY

| Deposition Designation | Objection & Response |
|---|---|
| Defendant's Designation of Barbara-Ann Markus-Caffrey<br>p. 8, 1. 18 - p. 8, 1. 23; p. 9, 1. 13 - p. 9, 1. 21;<br>p. 10, 1. 2 - p. 10, 1. 6; p. 10, 1. 8 - p. 10, 1. 11;<br>p. 10, 1. 13 - p. 10, 1. 13; p. 10, 1. 17 - p. 10, 1. 18;<br>p. 10, 1. 20 - p. 10, 1. 25; p. 11, 1. 2 - p. 11, 1. 3;<br>p. 11, 1. 14,  - p. 11, 1. 22; p. 11, 1. 25 - p. 12, 1. 17;<br>p. 12, 1. 19 - p. 12, 1. 20; p. 12, 1. 22 - p. 13, 1. 6;<br>p. 13, 1. 16 - p. 13, 1. 17; p. 13, 1. 20 - p. 13, 1. 25;<br>p. 15, 1. 4 - p. 15, 1. 6; p. 15, 1. 9 - p. 15, 1. 12;<br>p. 15, 1. 15 - p. 15, 1. 19; p. 15, 1. 22 - p. 16, 1. 4;<br>p. 16, 1. 7 - p. 16, 1. 10; p. 16, 1. 13 - p. 16, 1. 14;<br>p. 17, 1. 1 - p. 17, 1. 1; p. 17, 1. 12 - p. 17, 1. 14;<br>p. 17, 1. 17 - p. 17, 1. 17; p. 17, 1. 22 - p. 17, 1. 24;<br>p. 18, 1. 1 - p. 18, 1. 2; p. 18, 1. 9 - p. 18, 1. 15;<br>p. 19, 1. 10 - p. 19, 1. 13; p. 19, 1. 23 - p. 19, 1. 25;<br>p. 20, 1. 4 - p. 20, 1. 6; p. 20, 1. 9 - p. 20, 1. 9;<br>p. 21, 1. 14 - p. 20, 1. 17; p. 21, 1. 20 - p. 21, 1. 20;<br>p. 21, 1. 22 - p. 21, 1. 23; p. 21, 1. 25 - p. 22, 1. 4;<br>p. 23, 1. 4 - p. 23, 1. 13; p. 23, 1. 16 - p. 23, 1. 16;<br>p. 24, 1. 21 - p. 24, 1. 24; p. 25, 1. 2 - p. 25, 1. 5;<br>p. 25, 1. 13 - p. 25, 1. 19; p. 26, 1. 1 - p. 26, 1. 4;<br>p. 26, 1. 7 - p. 26, 1. 14; p. 26, 1. 17 - p. 26, 1. 21;<br>p. 26, 1. 24 - p. 27, 1. 4; p. 27, 1. 7 - p. 27, 1. 9;<br>p. 27, 1. 11 - p. 27, 1. 18; p. 29, 1. 5 - p. 29, 1. 8;<br>p. 29, 1. 11 - p. 29, 1. 16; p. 29, 1. 19 - p. 30, 1. 2;<br>p. 30, 1. 5 - p. 30, 1. 13; p. 30, 1. 15 - p. 30, 1. 19;<br>p. 30, 1. 21 - p. 31, 1. 6; p. 31, 1. 9 - p. 31, 1. 16;<br>p. 31, 1. 19 - p. 31, 1. 22; p. 31, 1. 25 - p. 32, 1. 6;<br>p. 32, 1. 9 - p. 32, 1. 12; p. 32, 1. 14 - p. 32, 1. 19;<br>p. 32, 1. 22 - p. 33, 1. 1; p. 33, 1. 4 - p. 33, 1. 5;<br>p. 33, 1. 23 - p. 34, 1. 3; p. 34, 1. 6 - p. 34, 1. 11;<br>p. 34, 1. 14 - p. 34, 1. 20; p. 34, 1. 23 - p. 35, 1. 5;<br>p. 35, 1. 8 - p. 35, 1. 12; p. 36, 1. 22 - p. 37, 1. 1;<br>p. 37, 1. 4 - p. 37, 1. 8; p. 37, 1. 11 - p. 37, 1. 19;<br>p. 38, 1. 8 - p. 38, 1. 12; p. 38, 1. 15 - p. 38, 1. 15;<br>p. 38, 1. 17 - p. 38, 1. 17; p. 38, 1. 19 - p. 39, 1. 1;<br>p. 39, 1. 4 - p. 39, 1. 12; p. 42, 1. 1 - p. 42, 1. 5;<br>p. 42, 1. 8 - p. 42, 1. 12; p. 42, 1. 15 - p. 42, 1. 20;<br>p. 42, 1. 23 - p. 43. 1. 3; p. 43, 1. 6 - p. 43, 1. 9;<br>p. 43, 1. 12 - p. 43, 1. 24; p. 44, 1. 2 - p. 44, 1. 2;<br>p. 44, 1. 8 - p. 44, 1. 15; p. 44, 1. 18 - p. 45, 1. 9; | Plaintiffs object to Defendants' designations as follows.  Where only a page number is cited, Plaintiffs' objections apply to all designated portions of the page cited. |

| Deposition Designation | Objection & Response |
|---|---|
| p. 45, 1. 12 - p. 45, 1. 15; p. 45, 1. 18 - p. 45, 1. 18; p. 45, 1. 22 - p. 46, 1. 18; p. 46, 1. 21 - p. 46, 1. 24; p. 47, 1. 2 - p. 47, 1. 2; p. 47, 1. 15 - p. 47, 1. 18; p. 47, 1. 21 - p. 48, 1. 1; p. 48, 1. 4 - p. 48, 1. 4; p. 48, 1. 8 - p. 48, 1. 16; p. 48, 1. 19 - p. 48, 1. 23; p. 49, 1. 1 - p. 49, 1. 5; p. 49, 1. 8 - p. 49, 1. 9; p. 49, 1. 11 - p. 49, 1. 11; p. 49, 1. 14 - p. 49, 1. 21; p. 49, 1. 24 - p. 49, 1. 24; p. 50, 1. 6 - p. 50, 1. 10; p. 50, 1. 13 - p. 50, 1. 13; p. 51, 1. 1 - p. 51, 1. 6; p. 51, 1. 9 - p. 51, 1. 19; p. 51, 1. 22 - p. 52, 1. 8; p. 52, 1. 14 - p. 52, 1. 17; p. 52, 1. 19 - p. 53, 1. 17; p. 53, 1. 20 - p. 54, 1. 1; p. 54, 1. 6 - p. 54, 1. 9; p. 54, 1. 12 - p. 54, 1. 15; p. 54, 1. 18 - p. 54, 1. 18; p. 55, 1. 6 - p. 55, 1. 8; p. 55, 1. 11 - p. 55, 1. 18; p. 55, 1. 21 - p. 56, 1. 1; p. 56, 1. 24 - p. 57, 1. 2; p. 57, 1. 5 - p. 57, 1. 13; p. 57, 1. 16 - p. 57, 1. 23; p. 58, 1. 1 - p. 58, 1. 1; p. 58, 1. 20 - p. 58, 1. 23; p. 59, 1. 1 - p. 59, 1. 4; p. 59, 1. 15 - p. 59, 1. 20; p. 59, 1. 23 - p. 60, 1. 3; p. 60, 1. 6 - p. 60, 1. 11; p. 60, 1. 14 - p. 60, 1. 18; p. 60, 1. 21 - p. 61, 1. 1; p. 61, 1. 4 - p. 61, 1. 8; p. 61, 1. 12 - p. 61, 1. 13; p. 61, 1. 21 - p. 61, 1. 21; p. 62, 1. 15 - p. 62, 1. 18; p. 62, 1. 21 - p. 62, 1. 25; p. 63, 1. 3 - p. 63, 1. 5; p. 63, 1. 8 - p. 63, 1. 25; p. 64, 1. 3 - p. 64, 1. 3; p. 64, 1. 13 - p. 64, 1. 14; p. 64, 1. 17 - p. 64, 1. 17; p. 64, 1. 19 - p. 65, 1. 10; p. 66, 1. 3 - p. 66, 1. 6; p. 66, 1. 9 - p. 66, 1. 9; p. 67, 1. 24 - p. 68, 1. 10; p. 68, 1. 13 - p. 68, 1. 17; p. 68, 1. 20 - p. 69, 1. 1; p. 69, 1. 5 - p. 69, 1. 5; p. 70, 1. 14 - p. 70, 1. 17; p. 70, 1. 20 - p. 71, 1. 7; p. 71, 1. 10 - p. 71, 1. 14; p. 71, 1. 17 - p. 71, 1. 24; p. 72, 1. 3 - p. 72, 1. 7; p. 81, 1. 12 - p. 81, 1. 14; p. 81, 1. 17 - p. 81, 1. 21; p. 81, 1. 24 - p. 81, 1. 24; p. 82, 1. 1 - p. 82, 1. 2; p. 82, 1. 5 - p. 82, 1. 8; p. 82, 1. 10 - p. 82, 1. 16; p. 82, 1. 19 - p. 82, 1. 22; p. 82, 1. 25 - p. 83, 1. 5; p. 83, 1. 9 - p. 83, 1. 15; p. 83, 1. 18 - p. 83, 1. 24; p. 84, 1. 2 - p. 84, 1. 7; p. 84, 1. 10 - p. 84, 1. 10; p. 86, 1. 1 - p. 86, 1. 5; p. 86, 1. 8 - p. 86, 1. 14; p. 86, 1. 17 - p. 86, 1. 17; p. 87, 1. 18 - p. 87, 1. 19; p. 87, 1. 22 - p. 89, 1. 6; p. 89, 1. 9 - p. 89, 1. 13; p. 89, 1. 16 - p. 89, 1. 17; p. 90, 1. 15 - p. 90, 1. 23; p. 91, 1. 1 - p. 91, 1. 9; p. 91, 1. 12 - p. 91, 1. 12; p. 95, 1. 9 - p. 95, 1. 10; p. 96, 1. 6 - p. 96, 1. 20; p. 97, 1. 16 - p. 97, 1. 25; p. 98, 1. 3 - p. 98, 1. 3; p. 98, 1. 6 - p. 98, 1. 19; p. 99, 1. 8 - p. 100, 1. 3; | |

| Deposition Designation | Objection & Response |
|---|---|
| p. 100, l. 6 - p. 100, l. 6; p. 101, l. 2 - p. 101, l. 4; p. 101, l. 7 - p. 101, l. 9; p. 101, l. 11 - p. 101, l. 25; p. 102, l. 4 - p. 102, l. 10; p. 102, l. 13 - p. 102, l. 16; p. 102, l. 19 - p. 103, l. 5; p. 103, l. 8 - p. 103, l. 15; p. 103, l. 19 - p. 103, l. 23; p. 104, l.  1 - p. 104, l. 4; p. 104, l. 7 - p. 104, l. 10; p. 104, l. 13 - p. 104, l. 18; p. 104, l. 21 - p. 104, l. 25; p. 109, l. 18 - p. 109, l. 23; p. 110, l. 13 - p. 110, l. 24; p. 111, l. 2 - p. 111, l. 6; p. 111, l. 9 - p. 111, l. 9; p. 112, l. 16 - p. 113, l. 3; p. 113, l. 6 - p. 113 ,l. 10; p. 113, l. 14 - p. 113, l. 19; p. 113, l. 21 - p. 113, l. 24; p. 114, l. 3 - p. 114, l. 8; p. 114, l. 11 - p. 114, l. 11; p. 115, l. 21 - p. 115, l. 24; p. 116, l. 2 - p. 116, l. 5; p. 116, l. 15 - p. 116, l. 16; p. 116, l. 19 - p. 117, l. 3; p. 117, l. 6 - p. 117, l. 24. | |
| Page 8<br>18 Q Would you state your name for the    record,<br>19 please.<br>20 A Barbara-Ann Markus-Caffrey.<br>21 Q And is it true that you normally go by<br>22 BJ Markus?<br>23 A Yes. | Plaintiff's Objections:<br>No objection – Page 8.<br><br>Defendant's Response: |
| Page 9<br>13 Who do you work for?<br>14 A I work for NBCUniversal.<br>15 Q Okay. And the plaintiffs in this case are<br>16 Universal Cable Production LLC and Northern<br>17 Entertainment Productions, LLC.<br>18 Are you familiar with those entities?<br>19 A Yes.<br>20 Q Okay. What does Universal Cable<br>21 Productions LLC do? | Plaintiff's Objections:<br>No objection – Page 9.<br><br>Defendant's Response: |
| Page 10<br>2 THE WITNESS: Universal Cable Productions<br>3 is in the business of making television shows.<br>4 BY MR. RIDDLE:<br>5 Q Okay. And what business is Northern<br>6 Entertainment Productions, LLC in?<br><br>Page 10<br>8 THE WITNESS: The same business.<br>9 BY MR. RIDDLE:<br>10 Q Okay. And were both of those entities | Plaintiff's Objections:<br>No objection – Page 10.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 11 involved in the production of DIG?<br><br><u>Page 10</u><br>13 THE WITNESS: Yes.<br><u>Page 10</u><br>17 What role did Universal Cable Production<br>18 have in DIG, in the production of DIG?<br><br><u>Page 10</u><br>20 THE WITNESS: Universal Cable Productions<br>21 produced DIG.<br>22 BY MR. RIDDLE:<br>23 Q Okay. And what role did Northern<br>24 Entertainment Productions have with reference to<br>25 DIG?<br><br><u>Page 11</u><br>2 THE WITNESS: Northern Entertainment<br>3 Productions also produced DIG. | Plaintiff's Objections:<br>No objection – Page 11. |
| <u>Page 11</u><br>14 BY MR. RIDDLE:<br>15 Q Yeah. In other words, you said that both<br>16 Universal Cable Productions and Northern<br>17 Entertainment Productions, they were both involved<br>18 in the production of DIG, correct?<br>19 A Yes.<br>20 Q Okay. And was there some type of division<br>21 of responsibility for the production between those<br>22 two?<br><br><u>Page 11 - 12</u><br>25 THE WITNESS: Yes. | Defendant's Response: |
| 12<br>1 BY MR. RIDDLE:<br>2 Q And what was it?<br>3 A Northern Entertainment Productions          was<br>4 responsible for the production of the shoot in<br>5 New Mexico.<br>6 Q Okay. And was Universal Cable Productions<br>7 responsible for the shoot in Israel and Croatia?<br>8 A Universal Cable Productions is the U.S.<br>9 entity that we use to produce in United States.<br>10 And, in this instance, Universal Cable | Plaintiff's Objections:<br>No objection – Page 12.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 11 Productions did a portion of the New Mexico shoot<br>12 and a portion of the Croatia shoot and a portion of<br>13 the Israel shoot.<br>14 Q Okay. And Northern Entertainment<br>15 Productions was only involved in the New Mexico part<br>16 of the shoot; is that correct?<br>17 A Yes.<br><br><br><br>Page 12<br>19 Let me back up and ask you. What is your<br>20 position with NBCUniversal?<br><br>Page 12 - 13<br>22 THE WITNESS: My title is vice president of<br>23 production finance.<br>24 BY MR. RIDDLE:<br>25 Q And how long have you worked for<br><br>13<br>1 NBCUniversal?<br>2 A Since July of 2004.<br>3 Q What are your duties in your current<br>4 position with NBCUniversal?<br>5 A My main role is to supervise the production<br>6 finance on various television shows.<br><br>Page 13<br>16 What is your educational background, if you<br>17 could just summarize that for us.<br><br>Page 13<br>20 THE WITNESS: I have a bachelor's in arts<br>21 administration.<br>22 BY MR. RIDDLE:<br>23 Q From -- from where?<br>24 A The College of Santa Fe in Santa Fe,<br>25 New Mexico.<br><br>Page 15 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 13.<br><br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 4 Q And how did you learn to do production<br>5 accounting? Is that on the job, or is it something<br>6 you learned when you were in school?<br><br>Page 15<br>9 THE WITNESS: On the job.<br>10 BY MR. RIDDLE:<br>11 Q Okay. Do you have any formal accounting<br>12 education?<br><br>Page 15<br>15 THE WITNESS: No.<br>16 BY MR. RIDDLE:<br>17 Q And what was your role with reference to<br>18 DIG? What did you do in relation to that<br>19 production?<br><br>Page 15 - 16<br>22 THE WITNESS: I was the production finance<br>23 executive assigned to the project.<br>24 BY MR. RIDDLE:<br>25 Q And what did that involve? | Plaintiff's Objections:<br>402, 403 – 15:4-6; 15:9-12;<br>15:15.<br><br>No objection – 15:16-19;<br>15:22-25.<br><br>Defendant's Response:<br><br>Background of witness relevant<br>to credibility and knowledge of<br>witness. |
| 16<br>1 A That involves overseeing all the finances<br>2 on the project.<br>3 Q Did you have people that worked under you<br>4 that helped you take care of that responsibility?<br><br>Page 16<br>7 THE WITNESS: Yes.<br>8 BY MR. RIDDLE:<br>9 Q And about how many people worked under you<br>10 on that?<br><br>Page 16<br>13 THE WITNESS: To answer that question, you<br>14 have to break it up into locations.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br>Page 16<br>16 Q Okay. And in this case there were --<br>17 actually, there were four locations because there<br>18 was a little bit done in Canada, too, correct?<br>19 A Yes. | Plaintiff's Objections:<br>No objection – Page 16.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 20 Q Okay. Let's just take the part in Israel.<br>21 How many people worked under you in<br>22 connection with -- with what you did relating to the<br>23 production in Israel?<br>END PLAINTIFFS' 106 COUNTER-DESIGNATION.<br><br>Page 17<br>1 THE WITNESS: Between seven and nine. | |
| | Plaintiff's Objections:<br>No objection – Page 17.<br><br>Defendant's Response: |
| Page 17<br>12 Q How about in -- with reference to<br>13 production in New Mexico? How many people worked<br>14 under you?<br><br>Page 17<br>17 THE WITNESS: Six people.<br><br>Page 17<br>22 Q And in how many -- how many people worked<br>23 under you with reference to the portion of the<br>24 production that took place in Croatia? | |
| Page 18<br>1 foundation.<br>2 THE WITNESS: Between six and eight. | Plaintiff's Objections:<br>No objection – Page 18. |
| Page 18<br>9 BY MR. RIDDLE:<br>10 Q Now, with reference to DIG, there was --<br>11 the pilot was filmed in Israel, correct?<br>12 A Yes.<br>13 Q And then there were -- Episodes 2 through 6<br>14 were filmed elsewhere, correct?<br>15 A Yes.<br><br>Page 19<br>10 Q So in other words, for all -- for those | Defendant's Response:<br><br><br><br><br><br><br><br><br>Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 11 five episodes, there was filming in both New Mexico<br>12 and Croatia, correct?<br>13 A Yes. | No objection – Page 19. |
| | Defendant's Response: |
| Page 19<br>23 Q Well, okay. So the pilot was done in<br>24 Israel, correct?<br>25 A Yes. | |
| Page 20<br>4 Q And then there -- then there was a decision<br>5 made to not proceed further with -- with these other<br>6 episodes in Israel, correct? | Plaintiff's Objections:<br>No objection – Page 20. |
| Page 20<br>9 THE WITNESS: Yes | Defendant's Response: |
| Page 21<br>14 Q Okay. Your understanding, then, after the<br>15 decision was made to stop production in Israel, that<br>16 the plan was to continue with production in both<br>17 Croatia and New Mexico? | |
| Page 21<br>20 THE WITNESS: Yes. | Plaintiff's Objections:<br>No objection – Page 21. |
| Page 21<br>22 Q How did you learn that the production would<br>23 not continue in Israel? | Defendant's Response: |
| Page 21 - 22<br>25 THE WITNESS: I was told by the production | |
| 22<br>1 executive assigned to the project.<br>2 BY MR. RIDDLE:<br>3 Q Who was that?<br>4 A Her name is Randi Richmond. | Plaintiff's Objections:<br>No objection – Page 22.<br><br>Defendant's Response: |
| Page 23<br>4 Q Okay. Have you ever heard the term<br>5 "production bible"?<br>6 A Yes. | Plaintiff's Objections:<br>No objection – Page 23. |

| Deposition Designation | Objection & Response |
|---|---|
| 7 Q What does it mean to you?<br>8 A It means at the end of a project, all the<br>9 costs that were incurred on that project is in one<br>10 document called -- that we refer to as a bible.<br>11 Q Okay. And so it's done, basically, as to a<br>12 specific production, such as a specific show,<br>13 correct?<br><br><u>Page 23</u><br>16 THE WITNESS: Yes.<br><br><u>Page 24</u><br>21 BY MR. RIDDLE:<br>22 Q Okay. In other words, it tracks the<br>23 expenses that were incurred in connection with the<br>24 production?<br><br><br><br><u>Page 25</u><br>2 THE WITNESS: Yes.<br>3 BY MR. RIDDLE:<br>4 Q Okay. And are those expenses assigned to<br>5 certain categories?<br><br><br><br><br><br><br><br><u>Page 25</u><br>13 THE WITNESS: I -- I think that if you're<br>14 asking like is it related to, like, a prep piece --<br>15 BY MR. RIDDLE:<br>16 Q That's a good way --<br>17 A -- a wrap piece --<br>18 Q Sure. | <u>Defendant's Response</u>:<br><br><br><br><br><br><br><br><br><br><u>Plaintiff's Objections</u>:<br>Vague – Page 24.<br><br><u>Defendant's Response</u>:<br><br>Entire line of questioning clear in context; witness understood and responded.<br><br><u>Plaintiff's Objections</u>:<br>Vague – Page 25.<br><br><u>Defendant's Response</u>:<br><br>Entire line of questioning clear in context; witness understood and responded. |

| Deposition Designation | Objection & Response |
|---|---|
| 19 A -- an all series piece, my answer | |
| | |
| Page 26 | Plaintiff's Objections: |
| 1 BY MR. RIDDLE: | No objection – Page 26. |
| 2 Q Okay. Who would be -- who's -- who's | |
| 3 involved in that decision as to which category it | |
| 4 goes into? | Defendant's Response: |
| | |
| Page 26 | |
| 7 THE WITNESS: So when we prepare a budget, | |
| 8 there is several people involved in that process, | |
| 9 and, collectively, when we do that budget, we assign | |
| 10 which category the expenditures would fall into. | |
| 11 BY MR. RIDDLE: | |
| 12 Q And then later when you actually incur the | |
| 13 expense, somebody then tries to take those expenses | |
| 14 and put them in the proper category, correct? | |
| | |
| Page 26 | |
| 17 THE WITNESS: Yes. | |
| 18 BY MR. RIDDLE: | |
| 19 Q And so is the production bible, then, | |
| 20 intended then to capture the expenses and show which | |
| 21 category they relate to? | |
| | |
| | |
| Page 26 - 27 | |
| 24 THE WITNESS: Yes. | |
| 25 BY MR. RIDDLE: | |
| | Plaintiff's Objections: |
| 27 | No objection – Page 27. |
| 1 Q So was there a production bible prepared | |
| 2 for DIG? | |
| 3 A Yes. | Defendant's Response: |
| 4 Q And did you have any involvement in that? | |
| | |
| Page 27 | |
| 11 THE WITNESS: So I had several accountants | |
| 12 work for me and with me, and we collectively | |
| 13 prepared the insurance bible. | |
| 14 BY MR. RIDDLE: | |
| 15 Q The insurance bible? | |
| 16 A I'm sorry. | |
| 17 Q The production bible? | |
| 18 A The production bible. | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 29<br>5 BY MR. RIDDLE:<br>6 Q Is there a numbering system that's<br>7 associated with the production bible that helps tell<br>8 you what category the expense was assigned to? | Plaintiff's Objections:<br>No objection – Page 29.<br><br><br>Defendant's Response: |
| Page 29<br>11 THE WITNESS: Yes.<br>12 BY MR. RIDDLE:<br>13 Q And when you're trying -- when you're<br>14 putting together the production bible, is part of<br>15 the process trying to put a particular -- or give<br>16 the correct number to a particular expense?<br><br>Page 29 – 30<br>19 THE WITNESS: The correct production<br>20 number --<br>21 BY MR. RIDDLE:<br>22 Q Yes.<br>23 A -- to a particular expense, yes.<br>24 Q Okay. And is it the people that work under<br>25 you that actually decide which number is assigned to | |
| 30<br>1 a given expense, or is that something that you<br>2 actually do? | Plaintiff's Objections:<br>No objection – Page 30.<br><br><br>Defendant's Response: |
| Page 30<br>5 THE WITNESS: The process is, when we<br>6 budget, we budget these specific categories, prep,<br>7 wrap, all series.<br>8 The accounting team in the field has those<br>9 budgets and codes based on that budget.<br>10 BY MR. RIDDLE:<br>11 Q Okay. And can you generally describe for<br>12 us the category of "prep." What type of expenses go | |

| Deposition Designation | Objection & Response |
|---|---|
| 13 into prep?<br><br>Page 30<br>15 THE WITNESS: Prep is the period before we<br>16 go to camera.<br>17 BY MR. RIDDLE:<br>18 Q And then what types of expenses typically<br>19 go into what you're calling wrap?<br><br>Page 30 – 31<br>21 THE WITNESS: In wrap, the expenses you<br>22 would see there is labor for the production office<br>23 to pack up and get out of whatever locale they're<br>24 in.<br>25 The accounting department would be doing | |
| 31<br>1 the same thing, and the crew would also be<br>2 dismantling sets and getting out of whatever locale<br>3 we were shooting in.<br>4 BY MR. RIDDLE:<br>5 Q Okay. And then what types of expenses go<br>6 into what you referred to as "all series"? | Plaintiff's Objections:<br>No objection – Page 31.<br><br>Defendant's Response: |
| Page 31<br>9 THE WITNESS: All series are expenses the<br>10 production incurs for set construction, set<br>11 dressing, travel and living, items that are not<br>12 specific to one particular episode.<br>13 BY MR. RIDDLE:<br>14 Q And are there any other categories where<br>15 expenses are placed, other than those three that you<br>16 mentioned?<br><br>Page 31<br>19 THE WITNESS: Not in this instance.<br>20 BY MR. RIDDLE:<br>21 Q You mean not with reference to the DIG<br>22 production? Is that what you mean?<br><br>Page 31 -32<br>25 THE WITNESS: Yes. | |

**1214**

| Deposition Designation | Objection & Response |
|---|---|
| 32<br>1 BY MR. RIDDLE:<br>2 Q Okay. So, in other words, what you're<br>3 saying is all the expenses relating to the<br>4 production of DIG should be able to properly be put<br>5 into one of those three categories; is that<br>6 accurate?<br><br>Page 32<br>9 THE WITNESS: Those categories, plus the<br>10 cost of actually shooting the show.<br>11 BY MR. RIDDLE:<br>12 Q What's that category referred to?<br><br>Page 32<br>14 THE WITNESS: That would be our episodic<br>15 budgets.<br>16 BY MR. RIDDLE:<br>17 Q Okay. Are the costs for the -- that relate<br>18 to the shooting -- are those reflected in the<br>19 production bible?<br><br>Page 32 – 33<br>22 THE WITNESS: Yes.<br>23 BY MR. RIDDLE:<br>24 Q Where?<br>25 A They have their own episodic code.<br><br>33<br>1 Q What do you commonly refer to that as? | Plaintiff's Objections:<br>No objection – Page 32.<br><br><br>Defendant's Response: |
| Page 33<br>4 THE WITNESS: That would be the show<br>5 number. | Plaintiff's Objections:<br>No objection – Page 33. |
| Page 33 -34<br>23 BY MR. RIDDLE:<br>24 Q Okay. And what I'm ask -- what I'm trying<br>25 to find out is: Did you do anything to try to | Defendant's Response: |
| 34<br>1 determine the extra expense that had been incurred<br>2 because the production was moved from Israel to<br>3 these two other locations? | Plaintiff's Objections:<br>No objection – Page 34.<br><br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| Page 34<br>6 THE WITNESS: Yes.<br>7 BY MR. RIDDLE:<br>8 Q Okay. What did you do?<br>9 A Myself, with the help of other people,<br>10 evaluated the incremental cost to move.<br>11 Q How did you go about doing that?<br><br>Page 34<br>14 THE WITNESS: We figured out, to the best<br>15 of our ability, what expenses were duplicative and<br>16 what were expenses that we had to re-spend based on<br>17 circumstances.<br>18 BY MR. RIDDLE:<br>19 Q When you say "duplicative," what do you<br>20 mean by that in that context?<br><br>Page 34 -35<br>23 THE WITNESS: In Israel, we built sets.<br>24 When we left Israel, we had to rebuild those sets<br>25 again in New Mexico.<br><br>35<br>1 BY MR. RIDDLE:<br>2 Q And what -- what types of records did you<br>3 look at in order to try to determine the extra<br>4 expenses that had been incurred because of the<br>5 change in location and production?<br><br>Page 35<br>8 THE WITNESS: We looked at the production<br>9 bible.<br>10 BY MR. RIDDLE:<br>11 Q Anything else?<br>12 A No.<br><br>Page 36 - 37<br>22 Q Okay. What I'm -- I'm just trying to find<br>23 out, were you given any type of guidelines to follow<br>24 in order to try to come up with the correct answer<br>25 to the question of what extra expenses were incurred<br><br><br>37 |  <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 35.<br><br><br>Defendant's Response:<br><br><br><br>Plaintiff's Objections:<br>No objection – Page 36.<br><br><br>Defendant's Response:<br><br><br>Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 1 because the location of the production was moved.<br><br>Page 37<br>4 THE WITNESS: Yes.<br>5 BY MR. RIDDLE:<br>6 Q And where did -- where did those<br>7 instructions, or guidelines, rather, where did those<br>8 guidelines come from? Where did you get those?<br><br>Page 37<br>11 THE WITNESS: They were guidelines, and it<br>12 was from our insurance representative.<br>13 BY MR. RIDDLE:<br>14 Q Okay. And are you referring to a<br>15 particular -- to a company or an individual when you<br>16 say "our insurance representative"?<br>17 A An individual.<br>18 Q Who is that?<br>19 A Andrea Garber. | No objection – Page 37.<br><br>Defendant's Response: |
| Page 38<br>8 BY MR. RIDDLE:<br>9 Q Okay. And when did you start -- well, did<br>10 there come a point when you were trying to help<br>11 determine the extra expenses that had been incurred<br>12 because of the change in location of the production? | Plaintiff's Objections:<br>No objection – Page 38.<br><br>Defendant's Response: |
| Page 38<br>15 THE WITNESS: Yes.<br><br>Page 38<br>17 Q When did that happen?<br><br>Page 38 - 39<br>19 THE WITNESS: To the best of my<br>20 recollection, that would have been August, September<br>21 of 2014.<br>22 BY MR. RIDDLE:<br>23 Q And what guidelines did Ms. Garber give you<br>24 with reference to trying to determine the amount of<br>25 extra expenses that were incurred because of the | |
| 39<br>1 change in location of the production? | Plaintiff's Objections:<br>No objection – Page 39. |

**1217**

| Deposition Designation | Objection & Response |
|---|---|
| Page 39<br>4 THE WITNESS: The instructions presented<br>5 were to take the incremental cost.<br>6 BY MR. RIDDLE:<br>7 Q What do you -- what do you mean when you<br>8 refer to "incremental cost"?<br>9 A So the cost of extra expenses we incurred<br>10 compared to what we would have spent.<br>11 Q Had it remained in Israel?<br>12 A Yes. | Defendant's Response: |
| Page 42<br>1 BY MR. RIDDLE:<br>2 Q So, basically, you've got -- let's take a<br>3 particular expense. You have to decide whether<br>4 it's -- which -- which of the major categories it<br>5 goes into, correct? | Plaintiff's Objections:<br>No objection – Page 42.<br><br>Defendant's Response: |
| Page 42<br>8 THE WITNESS: Yes.<br>9 BY MR. RIDDLE:<br>10 Q And then you would -- then you would decide<br>11 which subcategory it should go into as well,<br>12 correct? | |
| Page 42<br>15 THE WITNESS: Correct.<br>16 BY MR. RIDDLE:<br>17 Q The guidelines that you got from Ms. Garber<br>18 with reference to trying to determine the extra<br>19 expenses, were those given to you in writing or was<br>20 it something that she told you orally? | |
| Page 42 - 43<br>23 THE WITNESS: As I recall, it was a phone<br>24 conversation.<br>25 BY MR. RIDDLE: | |
| 43<br>1 Q Do you recall any communication with her<br>2 about the calculation of extra expense, other than<br>3 that phone call you just referred to? | Plaintiff's Objections:<br>No objection – 43:1-3; 43:6-9;<br>43:12.<br><br>402, 403, 104a – 43:13-24. |
| Page 43 | |

| Deposition Designation | Objection & Response |
|---|---|
| 6 THE WITNESS: No.<br>7 BY MR. RIDDLE:<br>8 Q To your knowledge, was anybody else a party<br>9 to that conversation other than the two of you?<br><br>Page 43<br>12 THE WITNESS: I don't recall.<br>13 BY MR. RIDDLE:<br>14 Q I'm going to hand you what was previously<br>15 marked as Exhibit 38. It was apparently marked in<br>16 Ms. Garber's deposition.<br>17 Have you ever seen this insurance policy<br>18 I've given you?<br>19 A No.<br>20 Q When you were attempting to determine the<br>21 amount of extra expenses that had been incurred<br>22 because of the change in production location, did<br>23 you ever refer to this insurance policy or any<br>24 language in it?<br><br>Page 44<br>2 THE WITNESS: No. | Defendant's Response:<br><br>This is key witness regarding submission of "extra expense" under Policy; who was involved, and whether witness has considered Policy is relevant, bears directly on credibility, and methodology regarding loss amount submitted.  Witness has knowledge of what was considered; no 104a preliminary determination needed.  Evidence is directly relevant to amount of loss calculated by Plaintiffs and submitted to expert Wunderlich. |
| Page 44<br>8 Q Would you flip to the page that's labeled<br>9 ATL 001605.<br>10 A Yes.<br>11 Q Okay. And would you read the title at the<br>12 top.<br>13 A "Section III - Extra Expense."<br>14 Q Okay. And is it your recollection that you<br>15 never looked at this portion of the policy?<br><br>Page 44 – 45<br>18 THE WITNESS: Correct.<br>19 BY MR. RIDDLE:<br>20 Q And if you look under Paragraph No. I, I<br>21 believe that's Roman numeral I, "Insuring<br>22 Agreement," you see that?<br>23 A Yes.<br>24 Q Okay. It says, "We agree to pay<br>25 you such loss as defined in<br><br>45<br>1 Paragraph 7, not including loss of | Plaintiff's Objections:<br>402, 403, 104a – Page 44.<br><br>Defendant's Response:<br><br>Questions and answers are relevant to issue of amount of loss submitted by Plaintiffs and whether calculation is consistent with Policy. |

| Deposition Designation | Objection & Response |
|---|---|
| 2 earnings or profit as you sustain by<br>3 reason of such extra expense you<br>4 necessarily incur as a result of the<br>5 interruption, postponement,<br>6 cancellation, relocation, curtailment<br>7 or abandonment of an insured<br>8 production due to the following."<br>9 Did I read that correctly?<br><br>Page 45<br>12 THE WITNESS: Yes.<br>13 BY MR. RIDDLE:<br>14 Q Okay. And then there are various items<br>15 that appear under that, correct?<br><br>Page 45<br>18 THE WITNESS: Yes.<br><br>Page 45 - 46<br>22 Q And, then, if you turn over to the page<br>23 that's 1608 at the bottom, it's a few pages over.<br>24 You got that?<br>25 A Yes.<br><br>46<br>1 Q Okay. And do you see where there's a<br>2 section that's labeled "Definition of Loss"?<br>3 A Yes.<br>4 Q And it says, "The amount of your<br>5 loss will be determined based on, one,<br>6 all necessary insurable production<br>7 cost you incur to complete the insured<br>8 production that exceeds the amount of<br>9 insurable production costs you would<br>10 have incurred if the covered cause of<br>11 loss had not occurred."<br>12 And then Item 2 says, "All other<br>13 necessary expenses that reduce the<br>14 amount of loss otherwise payable."<br>15 Did you ever consider that language when<br>16 you were attempting to determine the amount of extra<br>17 expenses incurred because of the change in location<br>18 of the production of DIG?<br><br>Page 46 | <br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>402, 403, 104a – Page 45.<br><br><br>Defendant's Response:<br><br>Questions and answers page 45 and 46 relevant to credibility of amount of loss submitted by Plaintiffs and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology and context in which Plaintiffs submitted loss amount now claimed in this lawsuit.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 21 THE WITNESS: Yes.<br>22 BY MR. RIDDLE:<br>23 Q So have you -- have you ever seen that<br>24 language before, then?<br><br>Page 47<br>2 THE WITNESS: No.<br><br>Page 47<br>15 Q Okay. When you were trying to determine<br>16 the amount of extra expenses incurred because of the<br>17 change in location of the production of DIG, did you<br>18 intend to follow this particular language?<br><br>Page 47 - 48<br>21 THE WITNESS: I haven't seen this language<br>22 until today.<br>23 BY MR. RIDDLE:<br>24 Q Okay. Okay. And you don't -- you don't<br>25 recall Ms. Garber ever referring you to this or<br><br>48<br>1 reading this to you, do you?<br><br>Page 48<br>4 THE WITNESS: No, I do not<br><br>Page 48<br>8 I'll hand you a copy of what was previously<br>9 marked as Exhibit 314.<br>10 And is this an exchange of emails between<br>11 you and Andrea Garber back in July of 2014?<br>12 A Yes.<br>13 Q Okay. And is -- is this -- does this -- is<br>14 this consistent with the time that you began working<br>15 on trying to determine the amount of the extra<br>16 expense back in July of 2014?<br><br>Page 48<br>19 THE WITNESS: Yes.<br>20 BY MR. RIDDLE:<br>21 Q Okay. And who was -- who -- was she the<br>22 one that asked you to try to determine the amount of<br>23 the extra expense, or was it somebody else? | 402, 403, 104a – Page 46.<br><br>Defendant's Response:<br><br>Questions and answers relevant to credibility of amount of loss submitted by Plaintiffs, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. Witness directly involved; no 104a proceeding needed.<br><br>Plaintiff's Objections:<br>402, 403, 104a – Page 47.<br><br>Defendant's Response:<br><br>Questions and answers are relevant to credibility of amount of loss submitted by Plaintiffs, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. Witness directly involved; no 104a proceeding needed.<br><br>Plaintiff's Objections:<br>402, 403, 104a – 48:1; 48:4.<br><br>No objection – 48:8-16; 48:19-20. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 49<br>1 THE WITNESS: I don't recall if it was<br>2 Andrea.<br>3 BY MR. RIDDLE:<br>4 Q Okay. Do you remember it being anybody<br>5 else?<br><br>Page 49<br>8 THE WITNESS: It could have been Randi and<br>9 Mark Binke.<br><br>Page 49<br>11 Q And they are both in production, correct?<br><br>Page 49<br>14 THE WITNESS: Yes.<br>15 BY MR. RIDDLE:<br>16 Q Okay. And just for the record, what are<br>17 their complete names?<br>18 A Randi Richmond and Mark Binke.<br>19 Q Okay. And was it your understanding that<br>20 Ms. Richmond reported to Mr. Binke back in this time<br>21 frame?<br><br>Page 49<br>24 THE WITNESS: Yes.<br><br>Page 50<br>6 Q And you say, "Andrea, just wanted to recap<br>7 our approach to the DIG and insurance claim."<br>8 Was there some type of a discussion<br>9 involving you and Ms. Garber prior to the time you<br>10 sent this email to her on July 25, 2014? | 104a – 48:21-23.<br><br>Defendant's Response:<br><br>Questions and answers are relevant to credibility of amount of loss submitted by Plaintiffs, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. Witness directly involved; no 104a proceeding needed.<br><br>Plaintiff's Objections:<br>104a – 49:1-5; 49:8-9.<br><br>No objection – 49:11; 49:14-21; 49:24.<br><br>Defendant's Response:<br><br>Questions and answers are relevant to credibility of amount of loss submitted by Plaintiffs, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, persons involved, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. Witness directly involved; no 104a proceeding needed. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 50<br>13 THE WITNESS: Yes. | Plaintiff's Objections:<br>No objection – Page 50. |
| Page 51<br>1 BY MR. RIDDLE:<br>2 Q Okay. All right. And -- so you're -- but<br>3 at least in this email you're trying to summarize<br>4 your understanding of how you're supposed to proceed<br>5 in trying to determine these -- what the extra<br>6 expenses were, correct? | Defendant's Response: |
| Page 51<br>9 THE WITNESS: Yes.<br>10 BY MR. RIDDLE:<br>11 Q Okay. Then you go on to say, "Include the<br>12 cost of the Albuquerque amort" -- a-m-o-r-t --<br>13 "currently estimated at 7 million."<br>14 What are you referring to there?<br>15 A The word "amort" is the word we use for<br>16 those expenses that include prep, wrap, and all<br>17 series.<br>18 Q But not the show number category; is that<br>19 correct?<br><br>Page 51 - 52<br>22 THE WITNESS: That is correct.<br>23 BY MR. RIDDLE:<br>24 Q Okay. And then you go on to say, "Include<br>25 any premium cost incurred for shooting in<br><br>52<br>1 Albuquerque."<br>2 What did you mean by that?<br>3 A We had Israeli cast that had to now come to<br>4 America, and there were premiums regarding them.<br>5 Q When you -- when you say "premiums," you<br>6 mean additional cost? Is that the context in which<br>7 you're using the word "premium"?<br>8 A Yes. | Plaintiff's Objections:<br>No objection – 51:1-6; 51:9-17; 51:23-25.<br><br>V – 51:18-19; 51:22.<br><br><br>Defendant's Response:<br><br>Questions and answers are relevant to credibility of amount of loss submitted by Plaintiffs, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, persons involved, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. Witness directly involved; no 104a proceeding needed. |
| Page 52<br>14 BY MR. RIDDLE:<br>15 Q And then just a few minutes later<br>16 Ms. Garber wrote back to you on that same date,<br>17 correct? | Plaintiff's Objections:<br>No objection – 52.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| **Page 52 - 53**<br>19 THE WITNESS: Yes.<br>20 BY MR. RIDDLE:<br>21 Q And she -- would you read -- she says, "Hi,<br>22 BJ." And then would you read what she wrote to you<br>23 in this email, the middle one.<br>24 A "Hi, BJ. Yes, this is what<br>25 we discussed. Just as a reminder,<br><br>53<br>1 those amort costs must be<br>2 characterized for the claim as<br>3 specific extra expenditures, such as<br>4 set builds, that would not have<br>5 otherwise been necessary, the extra<br>6 wrap, et cetera, that are necessary<br>7 due to the relocation of the remaining<br>8 five episodes. If there is any amount<br>9 that would have been spent on those<br>10 same categories of cost had the<br>11 production stayed in Israel, then<br>12 those amounts need to be factored in<br>13 and only the extra expenditures go<br>14 into the claim. Thanks, Andrea."<br>15 Q Okay. What did you understand her to be<br>16 referring to when she says -- when she mentions "the<br>17 claim"?<br><br>**Page 53 - 54**<br>20 THE WITNESS: The extra expense claim that<br>21 we have currently.<br>22 BY MR. RIDDLE:<br>23 Q Okay. And -- and, in fact, the reference<br>24 or subject line is, "DIG - Insurance Claim,"<br>25 correct?<br><br>54<br>1 A Yes.<br><br>**Page 54**<br>6 Q And then did -- did you come up with a<br>7 number that -- eventually come up with a number that<br>8 you felt represented the total amount of the extra<br>9 expenses? | <br><br><br><br><br><u>Plaintiff's Objections:</u><br>No objection – 53.<br><br><br><u>Defendant's Response:</u><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><u>Plaintiff's Objections:</u><br>No objection – 54.<br><br><u>Defendant's Response:</u> |

| Deposition Designation | Objection & Response |
|---|---|
| Page 54<br>12 THE WITNESS: Yes.<br>13 BY MR. RIDDLE:<br>14 Q And what was that number, to the best -- to<br>15 the best of your recollection?<br><br>Page 54<br>18 THE WITNESS: $7,092,000. | |
| Page 55<br>6 BY MR. RIDDLE:<br>7 Q We know you were working on it in July of<br>8 2014, correct? | Plaintiff's Objections:<br>No objection – 55.<br><br>Defendant's Response: |
| Page 55<br>11 THE WITNESS: Correct.<br>12 BY MR. RIDDLE:<br>13 Q Okay.<br>14 A I was working on it at that time.<br>15 Q Do you have a recollection as to whether<br>16 you completed your -- your -- the work you did to<br>17 come up with that approximate $7 million figure in<br>18 2014? | |
| Page 55 – 56<br>21 THE WITNESS: It was an ongoing document.<br>22 And, yes, a lot of the work would have been done in<br>23 2014. It was also carried forward into 2015.<br>24 So, again, I cannot give you a specific<br>25 date unless you have a document that would refresh | |
| 56<br>1 my memory. | Plaintiff's Objections:<br>No objection – 56:1. |
| Page 56 – 57<br>24 Q Okay. Well, in other words, the pilot was<br>25 done in Israel, right? So you had to have -- had to<br><br>57<br>1 have been certain locations prepared and they were<br>2 used for shooting, correct?<br><br>Page 57<br>5 THE WITNESS: Yes. | 104a – 56:24-25.<br><br>Defendant's Response:<br><br>Questions and answers are relevant to credibility of amount of loss, preparation of same, what was included/excluded, and whether |

| Deposition Designation | Objection & Response |
|---|---|
| 6 BY MR. RIDDLE:<br>7 Q Okay. What I'm -- what I'm trying to ask<br>8 is: If in fact the -- the shooting and the<br>9 production had remained in Israel for the Episodes 2<br>10 through 6, would there have been additional<br>11 locations in Israel that they would have had to<br>12 prepare in order to -- to do the shooting for those<br>13 Episodes 2 through 6? | calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. Witness directly involved; no 104a proceeding needed. |
| Page 57<br>16 THE WITNESS: That's a production<br>17 question --<br>18 BY MR. RIDDLE:<br>19 Q Right.<br>20 A -- and would be best answered by Randi<br>21 Richmond.<br>22 Q Okay. So do -- you don't know the answer<br>23 to it? Is that fair? | Plaintiff's Objections:<br>104a – Page 57.<br><br>Defendant's Response:<br><br>Question is relevant to what was considered or not considered in loss amount claimed; no 104a necessary as witness has knowledge of what was not considered. |
| Page 58<br>1 THE WITNESS: Correct.<br><br>Page 58<br>20 Q Okay. Okay. But do you know whether all<br>21 the prep had been done in Israel for Episodes 2<br>22 through 6 when the production was moved out of<br>23 Israel?<br><br>Page 59<br>1 THE WITNESS: Yes. My recollection is we<br>2 completed all of the prep except for one week.<br>3 But, again, Randi Richmond would confirm<br>4 that for you. | Plaintiff's Objections:<br>104a – Page 58.<br><br>Defendant's Response:<br><br>Questions and answers are relevant to credibility of amount of loss submitted by Plaintiffs, what was included/excluded, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. Witness directly |

| Deposition Designation | Objection & Response |
|---|---|
| | involved; no 104a proceeding needed. |
| Page 59<br>15 Q Well, I believe you said you -- you thought<br>16 that all the prep had been done for Episodes 2, 3,<br>17 4, 5 and 6 before the shooting left Israel except<br>18 for one week.<br>19 Is that -- is that what you remem- -- is<br>20 that what you said?<br><br>Page 59 – 60<br>23 THE WITNESS: Yes.<br>24 BY MR. RIDDLE:<br>25 Q Okay. And are -- are you saying that there<br><br>60<br>1 would have been some additional prep work done for<br>2 that -- for that additional week if it had remained<br>3 in Israel? | Plaintiff's Objections:<br>104a – Page 59.<br><br>Defendant's Response:<br><br>Questions and answers are relevant to credibility of amount of loss submitted by Plaintiffs, what was included/excluded, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. Witness directly involved; no 104a proceeding needed. |
| Page 60<br>6 THE WITNESS: Again, you'd have to check<br>7 with Randi Richmond. It's a production question.<br>8 BY MR. RIDDLE:<br>9 Q Do you recall whether you made any<br>10 allowance for that when you were coming up with your<br>11 extra expense number?<br><br>Page 60<br>14 THE WITNESS: I don't recall.<br>15 BY MR. RIDDLE:<br>16 Q And was the production bible the primary<br>17 document you used to arrive at the extra expense<br>18 number that you came up with?<br><br>Page 60 - 61<br>21 THE WITNESS: Yes.<br>22 BY MR. RIDDLE: | Plaintiff's Objections:<br>104a – 60:1-3; 60:6-11; 60:14.<br><br>No objection – 60:15-18; 60:21-25.<br><br>Defendant's Response:<br><br>Questions and answers are relevant to credibility of amount of loss submitted by Plaintiffs, reliability of same, what was included/excluded, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains |

| Deposition Designation | Objection & Response |
|---|---|
| 23 Q Did you do anything to check the accuracy<br>24 of the coding that had been done by the people that<br>25 did the coding that was reflected in the production<br><br>61<br>1 bible for DIG?<br><br>Page 61<br>4 THE WITNESS: Yes.<br>5 BY MR. RIDDLE:<br>6 Q What did you do in that regard?<br>7 A I spot-checked some of the invoices and<br>8 made sure they were coded to the correct categories. | methodology, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. Witness directly involved; no 104a proceeding needed. |
| Page 61<br>12 Q How -- about how much time did you spend on<br>13 that spot-checking? | Plaintiff's Objections:<br>No objection – Page 61. |
| Page 61<br>21 THE WITNESS: Maybe an hour. | Defendant's Response: |
| Page 62<br>15 Q After you came up with the number that you<br>16 believed represented the extra expenses due to the<br>17 change of production location, who -- who did you<br>18 provide that to? | Plaintiff's Objections:<br>No objection – Page 62. |
| Page 62<br>21 THE WITNESS: I provided it to Randi<br>22 Richmond and to Mark Binke.<br>23 BY MR. RIDDLE:<br>24 Q Okay. Did -- did you do that orally or by<br>25 email or some other written form? | Defendant's Response: |
| Page 63<br>3 THE WITNESS: I don't recall.<br>4 BY MR. RIDDLE:<br>5 Q And was that in 2015? | Plaintiff's Objections:<br>No objection – Page 63. |
| Page 63<br>8 THE WITNESS: We started working, as I<br>9 recall, on the insurance bible in 2014.<br>10 BY MR. RIDDLE:<br>11 Q You mean the production bible? You said<br>12 "insurance bible." | Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 13 A I -- I mean the insurance bible.<br>14 Q Okay. What is -- what are you referring to<br>15 there?<br>16 A The extra expense claim.<br>17 Q Ahh. Okay. Okay.<br>18 So you've got the production bible and the<br>19 insurance bible, and that's -- those are two<br>20 different things, correct?<br>21 A Yes.<br>22 Q Okay. The insurance bible, what you're<br>23 referring to is the computation of the extra expense<br>24 that you believe was -- was incurred because of the<br>25 change in location of production, correct?<br><br>Page 64<br>3 THE WITNESS: Yes.<br><br>Page 64<br>13 Q Okay. Well, the pro- -- we know the<br>14 production bible is a physical document, correct?<br><br>Page 64<br>17 THE WITNESS: Correct.<br><br>Page 64 - 65<br>19 Q Okay. When you -- when you're referring to<br>20 the "insurance bible," exactly what do you mean by<br>21 that?<br>22 A I mean the document that was prepared for<br>23 the insurance claim.<br>24 Q Okay. And what form did that take? In<br>25 other words, was it a spreadsheet, a memo, or how<br><br>65<br>1 would you describe it?<br>2 A It's a spreadsheet.<br>3 Q And who prepared that spreadsheet?<br>4 A I prepared it along with a few other<br>5 people.<br>6 Q What other people?<br>7 A My production accountant in Croatia helped<br>8 prepare it with me.<br>9 Q Who is that?<br>10 A His name is Josh Dease. | <br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 64.<br><br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 65.<br><br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 66</u><br>3 Q Okay. Okay. And then after you prepared<br>4 this spreadsheet, what -- what did you do with it?<br>5 In other words, did you send it to other people<br>6 or -- or what happened to it? | <u>Plaintiff's Objections</u>:<br>No objection – Page 66.<br><br>Defendant's Response: |
| <u>Page 66</u><br>9 THE WITNESS: I reviewed it with Randi | |
| <u>Page 67 - 68</u><br>24 Q Earlier you referred to you -- it was your<br>25 belief that the extra expenses add up to something | <u>Plaintiff's Objections</u>:<br>No objection – Page 67.<br><br>Defendant's Response: |
| 68<br>1 over seven million.<br>2 Do you remember that?<br>3 A Yes.<br>4 Q Okay. And was that number reflected in<br>5 this spreadsheet that you call the "insurance<br>6 bible"?<br>7 A Yes.<br>8 Q Okay. And did that number change somewhat<br>9 as time went on based on other facts that you<br>10 learned? | <u>Plaintiff's Objections</u>:<br>No objection – Page 68.<br><br>Defendant's Response: |
| <u>Page 68</u><br>13 THE WITNESS: Yes.<br>14 BY MR. RIDDLE:<br>15 Q Okay. And in what way did it change? In<br>16 other words, what -- or what factors caused it to<br>17 change? What new facts did you learn? | |
| <u>Page 68 - 69</u><br>20 THE WITNESS: Randi and I reviewed the<br>21 bible together; and upon our review, there were some<br>22 items in the bible that we decided were not<br>23 applicable to the extra expense.<br>24 BY MR. RIDDLE:<br>25 Q And were those taken out, then, from the | |
| 69<br>1 claim? | <u>Plaintiff's Objections</u>:<br>No objection – Page 69. |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 69</u><br>5 THE WITNESS: Yes. | <u>Defendant's Response:</u> |
| <u>Page 70</u><br>14 BY MR. RIDDLE:<br>15 Q Are you familiar with a gentleman named<br>16 Robert Wunderlich?<br>17 A Yes. | <u>Plaintiff's Objections:</u><br>No objection – Page 70.<br><br><u>Defendant's Response:</u> |
| <u>Page 70 - 71</u><br>20 Q Okay. Who is he? Who do you understand<br>21 him to be?<br>22 A My understanding of Mr. Wunderlich is he is<br>23 a forensic accountant.<br>24 Q Okay. And do you also understand that he<br>25 was retained to serve as an expert witness in this | |
| 71<br>1 case on behalf of the plaintiffs?<br>2 A Yes.<br>3 Q Okay. And did you assist Mr. Wunderlich<br>4 when he was doing -- or not assist, but did you<br>5 provide information to him when he was reviewing<br>6 records and coming up with his opinions in this<br>7 matter? | <u>Plaintiff's Objections:</u><br>No objection – Page 71.<br><br><u>Defendant's Response:</u> |
| <u>Page 71</u><br>10 THE WITNESS: I provided Mr. Wunderlich<br>11 with the insurance bible.<br>12 BY MR. RIDDLE:<br>13 Q Okay. Did you give him the production<br>14 bible, also? | |
| <u>Page 71</u><br>17 THE WITNESS: I believe we did. I don't<br>18 recall a hundred percent.<br>19 BY MR. RIDDLE:<br>20 Q Did you meet with him at any time?<br>21 A Yes.<br>22 Q Okay. And how many times did you meet with<br>23 Mr. Wunderlich?<br>24 A As I recall, two or three. | |
| <u>Page 72</u> | <u>Plaintiff's Objections:</u> |

| Deposition Designation | Objection & Response |
|---|---|
| 3 Q Was anybody else present at those meetings<br>4 other than the two of you?<br>5 A Yes.<br>6 Q Who?<br>7 A Our counsel.<br><br>Page 81<br>12 BY MR. RIDDLE:<br>13 Q Were there tax credits that were received<br>14 in connection with the shooting in Israel?<br><br>Page 81<br>17 THE WITNESS: Yes.<br>18 BY MR. RIDDLE:<br>19 Q If the production had remained in Israel,<br>20 would those tax credits have been larger than the<br>21 amount that -- that was received?<br><br>Page 81<br>24 THE WITNESS: Yes.<br><br>Page 82<br>1 Q Were there tax credits received for the<br>2 filming in New Mexico?<br><br>Page 82<br>5 THE WITNESS: Yes.<br>6 BY MR. RIDDLE:<br>7 Q Were there tax credits received for the<br>8 filming in Croatia?<br><br>Page 82<br>10 THE WITNESS: Yes.<br>11 BY MR. RIDDLE:<br>12 Q Did you ever do a comparison of the tax<br>13 credits that -- that you believed would have been<br>14 received for Episodes 2 through 6 had the shooting<br>15 remained in Israel versus the tax credits that were<br>16 received for the filming in New Mexico and Croatia?<br><br>Page 82<br>19 THE WITNESS: No.<br>20 BY MR. RIDDLE:<br>21 Q Is -- is there a reason why you did not do | No objection – Page 72.<br><br>Defendant's Response:<br><br><br><br><br>Plaintiff's Objections:<br>402, 403, 602, MIL, Vague –<br>Page 81.<br><br><br>Defendant's Response:<br><br>"MIL" is not a clear objection;<br>issue of whether tax credits<br>were considered are relevant to<br>calculation of amount of loss<br>submitted by Plaintiffs, what<br>was included/excluded, and<br>whether calculation is<br>consistent with Policy; not<br>prejudicial to Plaintiffs because<br>this line of questioning explains<br>methodology, and context in<br>which Plaintiffs submitted loss<br>amount now claimed in this<br>lawsuit.<br><br><br>Plaintiff's Objections:<br>402, 403, 602, MIL, Vague –<br>Page 82.<br><br><br>Defendant's Response:<br>"MIL" is not a clear objection;<br>issue of whether tax credits<br>were considered are relevant to<br>calculation of amount of loss<br>submitted by Plaintiffs, what<br>was included/excluded, and |

| Deposition Designation | Objection & Response |
|---|---|
| 22 that?<br><br>Page 82 - 83<br>25 THE WITNESS: Since we didn't shoot in<br><br>83<br>1 Israel Episodes 2 through 6, I wouldn't have a way<br>2 to ascertain what the tax credit value would be.<br>3 BY MR. RIDDLE:<br>4 Q How was the tax credit value determined for<br>5 the pilot that was shot there? | whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. |
| Page 83<br>9 Q What was it based on?<br>10 MR. HAYES: -- calls for speculation.<br>11 THE WITNESS: The actual spend in Israel.<br>12 BY MR. RIDDLE:<br>13 Q Was there a budget that projected the cost<br>14 of shooting episodes -- or producing Episodes 2<br>15 through 6 in Israel?<br><br>Page 83<br>18 THE WITNESS: Yes.<br>19 BY MR. RIDDLE:<br>20 Q Did you ever take that estimate in that<br>21 budget and determine that if that had been the<br>22 actual numbers, what the tax credit would have been<br>23 from Israel for being able to complete the shooting<br>24 there for those episodes? | Plaintiff's Objections:<br>402, 403, 602, MIL, Vague – 83:1-5; 83:9-12.<br><br>402, 403, MIL, Vague – 83:13-15; 83:18-24.<br><br>Defendant's Response:<br><br>"MIL" is not a clear objection; issue of whether tax credits and other expenses were considered are relevant to calculation of amount of loss submitted by Plaintiffs, what was included/excluded, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. |
| Page 84<br>2 THE WITNESS: At the time we would have<br>3 initially budgeted Israel, an initial tax credit<br>4 estimate would have been prepared.<br>5 BY MR. RIDDLE:<br>6 Q And would it have been one for the pilot<br>7 and the other five episodes after the pilot? | Plaintiff's Objections:<br>402, 403, MIL, Vague – Page 84.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| Page 84<br>10 THE WITNESS: Yes. | "MIL" is not a clear objection; issue of whether tax credits were considered are is relevant to calculation of amount of loss submitted by Plaintiffs, what was included/excluded, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. |
| Page 86<br>1 BY MR. RIDDLE:<br>2 Q The -- there was a -- are you saying there<br>3 was a budget prepared prior to the production that<br>4 had estimates of the tax credits for the shooting in<br>5 Israel? | Plaintiff's Objections:<br>402, 403, MIL – Page 86.<br><br>Defendant's Response: |
| Page 86<br>8 THE WITNESS: Yes.<br>9 BY MR. RIDDLE:<br>10 Q Okay. And we know the -- we know the -- we<br>11 -- you -- you know the -- you don't -- I'm not<br>12 saying you know it here today, but somewhere there's<br>13 records showing the actual tax credit that was paid<br>14 for the shooting of the pilot in Israel, correct?<br><br>Page 86<br>17 THE WITNESS: Yes | "MIL" is not a clear objection; issue of whether tax credits were considered is relevant to calculation of amount of loss submitted by Plaintiffs, what was included/excluded, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. |
| Page 87<br>18 Q Which company incurred the production cost<br>19 of producing the pilot in Israel? | Plaintiff's Objections:<br>402, 403, MIL – Page 87.<br><br>Defendant's Response: |
| Page 87 - 89<br>22 THE WITNESS: To my recollection, there<br>23 were two companies involved: Universal Cable | "MIL" is not clear objection; |

1234

| Deposition Designation | Objection & Response |
|---|---|
| 24 Productions and our production services company<br>25 formed a company that handled all the Israeli<br><br>88<br>1 expenses.<br>2 BY MR. RIDDLE:<br>3 Q What was the name of it?<br>4 A As I recall, it was DIG Productions I.<br>5 But, again, it's a recollection because it wasn't a<br>6 company that we owned.<br>7 Q When you say there -- there was a company<br>8 that handled all the Israeli expenses, what do you<br>9 mean by "handled all the Israeli expenses"?<br>10 A They paid all the Israeli expenses.<br>11 Q Did -- did Universal Cable Productions<br>12 reimburse that company for those expenses?<br>13 A Yes.<br>14 Q Did Northern Entertainment Productions<br>15 incur any of the production costs in Israel?<br>16 A No.<br>17 Q Which company incurred the production costs<br>18 that were incurred for the production in New Mexico?<br>19 A That would have been Universal Cable<br>20 Productions and Northern Entertainment.<br>21 Q Which company incurred the production costs<br>22 that were incurred for the production in Croatia?<br>23 A That would have been Universal Cable<br>24 Productions, and our production services company in<br>25 Croatia used their local production company.<br><br>89<br>1 Q And did Universal Cable Productions<br>2 reimburse that company for those expenses?<br>3 A Yes.<br>4 Q Does the production bible reflect which<br>5 company incurred the production costs that were<br>6 incurred in New Mexico? | Issue of which Plaintiff incurred costs is relevant to losses claimed by each.<br><br>Plaintiff's Objections:<br>402, 403, MIL – Page 88.<br><br>Defendant's Response:<br><br>"MIL" is not a clear objection; components of calculation of amount of loss submitted by Plaintiffs, what was included/excluded, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. |
| Page 89<br>9 THE WITNESS: Yes.<br>10 BY MR. RIDDLE:<br>11 Q And how -- how does -- how does it do that?<br>12 How can you tell from the production bible which of<br>13 the companies incurred a specific expense? | Plaintiff's Objections:<br>402, 403, MIL – Page 89.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| Page 89<br>16 THE WITNESS: Each production company is<br>17 assigned a company number. | "MIL" is not a clear objection; issue of reimbursements and cost components are relevant to calculation of amount of loss submitted by Plaintiffs, what was included/excluded, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. |
| Page 90<br>15 Q Did Universal Cable Productions reimburse<br>16 Northern Entertainment Productions for any of the<br>17 production costs that are listed in the production<br>18 bible?<br>19 A No.<br>20 Q Did Universal Cable Productions reimburse<br>21 Northern Entertainment Productions for any of the<br>22 production costs that are mentioned in the insurance<br>23 bible? | Plaintiff's Objections:<br>402, 403, MIL – Page 90.<br><br>Defendant's Response:<br><br>"MIL" is not clear objection; Issue of reimbursements and cost components are relevant to calculation of amount of loss submitted by Plaintiffs, what was included/excluded, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. |
| Page 91<br>1 THE WITNESS: No.<br>2 BY MR. RIDDLE:<br>3 Q Okay. And you said that there were<br>4 production costs incurred in New Mexico by both<br>5 Universal Cable Productions and Northern<br>6 Entertainment Productions, correct?<br>7 A Correct. | Plaintiff's Objections:<br>402, 403, MIL – Page 91.<br><br>Defendant's Response:<br><br>"MIL" is not clear objection; |

| Deposition Designation | Objection & Response |
|---|---|
| 8 Q And did either one of them reimburse the<br>9 other for any of those expenses, to your knowledge?<br><br>Page 91<br>12 THE WITNESS: No. | issue of reimbursements and cost components are relevant to calculation of amount of loss submitted by Plaintiffs, what was included/excluded, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. |
| Page 95<br>9 MR. RIDDLE: Ms. Markus, I'm going to hand<br>10 you what has been marked as Exhibit 342. | Plaintiff's Objection<br>No objection – Page 95.<br><br><br>Defendant's Response: |
| Page 96<br>6 BY MR. RIDDLE:<br>7 Q Can you -- do you know what this first page<br>8 of the document is?<br>9 A This email that I wrote?<br>10 Q Yes. Yes. Yes. Very simple. I mean --<br>11 A Yes.<br>12 Q Okay. What is it?<br>13 A It's an email from me saying, "Attached is<br>14 the locked DIG pattern and pilot budget."<br>15 Q Okay. And the date is June 12, 2014,<br>16 correct?<br>17 A Yes.<br>18 Q Okay. And you sent it to Mr. Binke and an<br>19 Eric Gray, G-r-a-y, and Ms. Richmond, correct?<br>20 A Yes. | Plaintiff's Objections:<br>No objection – Page 96.<br><br><br>Defendant's Response: |
| Page 97<br>16 Q Okay. And the subject is, "DIG Locked<br>17 Budgets, Amort Pattern Pilot," correct?<br>18 A Yes.<br>19 Q Okay. So what -- first of all, what are<br>20 "locked budgets" as you're using it in this email?<br>21 A The term "locked budget" means this is the<br>22 budget we will be using to base our cost reports off | Plaintiff's Objections:<br>No objection – Page 97.<br><br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 23 of.<br>24 Q It's not preliminary. It's the one that is<br>25 in effect for that project –<br><br>Page 98<br>3 Q -- is another way of saying it?<br><br>Page 98<br>6 THE WITNESS: Yes.<br>7 BY MR. RIDDLE:<br>8 Q Okay. And you're actually referencing<br>9 three different budgets; is that correct?<br>10 A Yes.<br>11 Q Okay. What is the difference between the<br>12 amort locked budget, the pattern locked budget and<br>13 the pilot locked budget?<br>14 A The pilot locked budget is the budget we<br>15 would use to cost against the pilot expenses.<br>16 The pattern budget would have been our<br>17 estimate of what the episode would cost us.<br>18 And the amort budget is a compilation of<br>19 prep, wrap, and all series expenses.<br><br>Page 99 - 100<br>8 Q And near the top of the second page, it<br>9 says, "Gross Pattern Budget."<br>10 A Yeah.<br>11 Q With the headers -- okay.<br>12 Do you have an understanding as to what<br>13 that's referring to?<br>14 A Yes.<br>15 Q What is it?<br>16 A That's our pattern budget --<br>17 Q Okay.<br>18 A -- for the series.<br>19 Q And it appears to say, "five episodes<br>20 series," and then the dollar amount listed is<br>21 $3,541,498.<br>22 Is that a per-episode amount?<br>23 A Yes.<br>24 Q Okay. Is that for Episodes 2 through 6?<br>25 A Yes.<br><br>100<br>1 Q Okay. And this was back when it was | Plaintiff's Objections:<br>No objection – Page 98.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 99.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 2 planned that the pilot and those episodes would all<br>3 be shot in Israel, correct?<br><br>Page 100<br>6 THE WITNESS: Yes. | Plaintiff's Objections:<br>No objection – Page 100.<br><br>Defendant's Response: |
| Page 101<br>2 Q Okay. If you look at the third page of<br>3 that document, do you have an understanding as to<br>4 what that is? | Plaintiff's Objections:<br>No objection – Page 101. |
| Page 101<br>7 THE WITNESS: Yes.<br>8 BY MR. RIDDLE:<br>9 Q And what is your understanding? | Defendant's Response: |
| Page 101<br>11 THE WITNESS: This document is an overview<br>12 of what the studio anticipated to spend on Season 1.<br>13 BY MR. RIDDLE:<br>14 Q In Israel?<br>15 A Correct.<br>16 Q Okay. And that's -- again, that's just for<br>17 the pilot and Episodes 2 through 6, correct?<br>18 A Yes.<br>19 Q Okay. And then if we look at "Gross<br>20 Pattern Budget," it indicates -- it's got a list or<br>21 a numerical listing of $3,541,498 times five with a<br>22 total of $17,707,490, correct?<br>23 A Yes.<br>24 Q And that was the locked budget for Episodes<br>25 2 through 6 in Israel, correct? | |
| Page 102<br>4 BY MR. RIDDLE:<br>5 Q Okay. And you see under there it's got tax<br>6 credit listed of 3,643,813?<br>7 A Yes.<br>8 Q Is that an estimate of the tax credit that<br>9 was expected if all this -- if all these episodes,<br>10 including the pilot, had been filmed in Israel? | Plaintiff's Objections:<br>MIL – 102:4-10; 102:13-16;<br>102:19-21.<br><br>No objection – 102:22-25.<br><br>Defendant's Response: |
| Page 102<br>13 THE WITNESS: Yes.<br>14 BY MR. RIDDLE: | "MIL" is unclear objection;<br>Issue of tax credit and cost<br>components are relevant to |

| Deposition Designation | Objection & Response |
|---|---|
| 15 Q Okay. Did you have any -- did you come up<br>16 with that tax credit number or did somebody else?<br><br>Page 102 - 103<br>19 THE WITNESS: As I recall, the accountant<br>20 in Israel would have come up with that estimate and<br>21 I would have reviewed her work.<br>22 BY MR. RIDDLE:<br>23 Q Okay. And farther on down it's -- it looks<br>24 like it says, "6.5 episodes," and then underneath it<br>25 it says, "Gross Pattern Budget."<br><br>103<br>1 Do you see that?<br>2 A I do.<br>3 Q In fact, actually up -- farther up, it's<br>4 got that 6.5 episodes listed -- or stated, too,<br>5 correct? | calculation of amount of loss submitted by Plaintiffs, what was included/excluded, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. |
| Page 103<br>8 THE WITNESS: Yes.<br>9 BY MR. RIDDLE:<br>10 Q Okay. And if we look down at the --<br>11 basically, it's not the bottom of the page but it's<br>12 near the bottom of what's printed on the page,<br>13 there's a statement, "6.5 episodes breaks down to<br>14 one 90-minute pilot and five one-hour episodes,"<br>15 correct?<br><br>Page 103<br>19 BY MR. RIDDLE:<br>20 Q Okay. So that's what the 6.5 episodes is<br>21 referring to, the pilot and the five subsequent<br>22 episodes, correct?<br>23 A Correct. | Plaintiff's Objections:<br>No objection – Page 103.<br><br>Defendant's Response: |
| Page 104<br>1 BY MR. RIDDLE:<br>2 Q Well, if we look at tax credit, the<br>3 reason -- of course that's a negative number as it's<br>4 reflected here, correct?<br><br>Page 104<br>7 THE WITNESS: Correct. | Plaintiff's Objections:<br>402, 403, MIL – Page 104.<br><br>Defendant's Response:<br><br>"MIL" is unclear objections; |

| Deposition Designation | Objection & Response |
|---|---|
| 8 BY MR. RIDDLE:<br>9 Q Okay. Which would lower the overall<br>10 budgeted amount, correct?<br><br>Page 104<br>13 THE WITNESS: No.<br>14 BY MR. RIDDLE:<br>15 Q No? Why not?<br>16 A The budget's the budget.<br>17 Q And this is just a potential offset against<br>18 that number, correct?<br><br>Page 104<br>21 THE WITNESS: Correct.<br>22 BY MR. RIDDLE:<br>23 Q Okay. And this shows a -- a gross pattern<br>24 budget for the -- for Episodes 2 through 5 of<br>25 $17,707,490. | Issue of budgets, cost components are relevant to calculation of amount of loss submitted by Plaintiffs, what was included/excluded, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. |
| Page 109<br>18 Q Ms. Markus, this document is labeled 344.<br>19 Have you ever seen it before?<br>20 A Yes.<br>21 Q Okay. And it's actually from Joshua Dease,<br>22 production accountant, correct?<br>23 A Yes. | Plaintiff's Objections:<br>No objection – Page 109.<br><br>Defendant's Response: |
| Page 110<br>13 Q And what is -- what is this document?<br>14 A We internally refer to this document as the<br>15 "Series Recap."<br>16 Q Okay. What does that mean?<br>17 A It means it's a financial snapshot of the<br>18 series and what we spent.<br>19 Q So would this reflect the actual spend on<br>20 Episodes 2 through 6?<br>21 A Yes.<br>22 Q Okay. And what was the total that was<br>23 actually spent on those -- on those episodes?<br>24 A 21 million – | Plaintiff's Objections:<br>No objection – Page 110.<br><br>Defendant's Response: |
| Page 111<br>2 THE WITNESS: $21,464,745.<br>3 BY MR. RIDDLE:<br>4 Q Okay. And that's in the -- in the column | Plaintiff's Objections:<br>No objection – Page 111. |

| Deposition Designation | Objection & Response |
|---|---|
| 5 that's labeled, "Total Without Pilots With Amort<br>6 Variance," correct?<br><br>Page 111<br>9 THE WITNESS: Correct.<br><br>Page 112 - 113<br>16 Q Okay. Is there any -- from this, can you<br>17 tell how much was spent in total on the productions<br>18 in New Mexico and Croatia?<br>19 A Yes.<br>20 Q How? Where do we look for that?<br>21 A That's the $21,464,000.<br>22 Q Okay. Okay. But if you go and -- if you<br>23 go back to Exhibit 342 --<br>24 A 342.<br>25 Q -- that's that thick one.<br><br>113<br>1 A Yes.<br>2 Q On the third page, that showed a gross<br>3 pattern budget totalling 17,707,490, correct?<br><br>Page 113<br>6 THE WITNESS: Correct.<br>7 BY MR. RIDDLE:<br>8 Q Okay. And that's less than -- the<br>9 difference between these two numbers is less than 4<br>10 million. Would you agree with me?<br><br>Page 113<br>14 THE WITNESS: They're two different things.<br>15 This budget, the $17 million budget, was our budget<br>16 that we estimated for Israel. This was our<br>17 estimated pattern budget, the 3541, for Israel.<br>18 This other document, the series recap, has<br>19 nothing to do with Israel.<br><br>Page 113<br>21 Q Just comparing those numbers, all I'm<br>22 asking is: It's less than a $4 million difference,<br>23 correct? Just mathematically, you would agree with<br>24 me, wouldn't you?<br><br>Page 114 | Defendant's Response:<br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 112.<br><br><br>Defendant's Response:<br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – 113:1-3; 113:6-10; 113:14-19.<br><br>402, 403 – 113:21-24.<br><br><br>Defendant's Response:<br><br>Examination of cost components, calculations are relevant to credibility of amount claimed in this lawsuit.<br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>402, 403 – Page 114. |

| Deposition Designation | Objection & Response |
|---|---|
| 3 THE WITNESS: Are you comparing the 21<br>4 million to the 17 million?<br>5 BY MR. RIDDLE:<br>6 Q Right. I'm saying mathematically, there's<br>7 less than a $4 million difference between those two<br>8 figures, correct?<br><br>Page 114<br>11 THE WITNESS: Yes. | Defendant's Response:<br><br>Issue of tax credits and cost components are relevant to calculation of amount of loss submitted by Plaintiffs, what was included/excluded, and whether calculation is consistent with Policy; not prejudicial to Plaintiffs because this line of questioning explains methodology, and context in which Plaintiffs submitted loss amount now claimed in this lawsuit. |
| Page 115<br>21 Q Okay. So from -- from this, can you tell<br>22 us how much was earned in tax -- in tax credits with<br>23 reference to the New Mexico portion of the<br>24 production? | Plaintiff's Objections:<br>402, 403, MIL – Page 115.<br><br>Defendant's Response:<br>"MIL" is not a clear objection; issue of calculation of loss is relevant to damages sought. |
| Page 116<br>2 THE WITNESS: Since this recap was<br>3 published, the final New Mexico tax credits have<br>4 come in, and this recap doesn't include that<br>5 information.<br><br>Page 116<br>15 Q Okay. Do you have a recollection as to<br>16 approximately how much the reduction was?<br><br>Page 116 - 117<br>19 THE WITNESS: As I recall -- and, again,<br>20 I'd need to look at a document -- I think it was<br>21 less than $100,000.<br>22 BY MR. RIDDLE:<br>23 Q The reduction's less than 100,000? That's<br>24 your recollection? | Plaintiff's Objections:<br>402, 403, MIL – Page 116.<br><br>Defendant's Response:<br>"MIL" is not a proper objection; calculation of loss is relevant to damage and other issues. |

| Deposition Designation | Objection & Response |
|---|---|
| 25 A That's my recollection.<br><br>117<br>1 Q Okay. And then what about for Croatia?<br>2 Was that amount later reduced or increased, to your<br>3 knowledge?<br><br>Page 117<br>6 THE WITNESS: The number currently listed<br>7 on the recap says, "Final."<br>8 BY MR. RIDDLE:<br>9 Q And the one for New Mexico does not say,<br>10 "Final," correct?<br>11 A Correct.<br>12 Q Okay. So does that suggest, then, that<br>13 that Croatia one is the actual final number to use?<br>14 Does that suggest that to you?<br>15 A Yes.<br>16 Q Okay. Do you have any reason to think it's<br>17 otherwise?<br>18 A I do not.<br>19 Q Okay. And where would we -- where would<br>20 you look to find the final number for the tax credit<br>21 for New Mexico?<br>22 A I would have to go and look at the final<br>23 application we received from the State of<br>24 New Mexico. | <u>Plaintiff's Objections</u>:<br>402, 403, MIL – Page 117.<br><br><u>Defendant's Response</u>:<br><br>"MIL" not clear objection;<br>Issue of tax credits and cost<br>components are relevant to<br>calculation of amount of loss<br>submitted by Plaintiffs, what<br>was included/excluded, and<br>whether calculation is<br>consistent with Policy; not<br>prejudicial to Plaintiffs because<br>this line of questioning explains<br>methodology, and context in<br>which Plaintiffs submitted loss<br>amount now claimed in this<br>lawsuit. |

### 13.    THOMAS McCARTHY—June 1, 2017

| Deposition Designation | Objection & Response |
|---|---|
| Defendant's Designation of Thomas McCarthy June 1, 2017<br><br>p. 10, 1. 20-p. 10, 1. 22; p. 11, 1. 7-p. 11, 1. 12; p. 11, 1.16-p. 11, 1. 17; p. 11, 1. 19-p. 11, 1. 20; p. 11, 1. 25-p. 12, 1. 1; p. 12, 1. 8-p. 12, 1. 11; p. 12, 1. 15-p. 12, 1. 20; p. 13, 1. 5-p. 13, 1. 18; p. 13, 1. 22-p. 13, 1. 24; p. 14, 1. 1-p. 14, 1. 13; p. 14, 1. 16-p. 14, 1. 19; p. 22, 1. 4-p. 22, 1. 25; p. 23, 1. 1-p. 23, 1. 2; p. 23, 1. 5-p. 23, 1. 19; p. 21, 1. 1-p. 21, 1. 1; p. 28, 1. 4-p. 29, 1. 17;p. 29, 1. 2-p. 29, 1.24;p. 30, 1. 2- p. 30, 1. 24;p. 31, 1. 2-p. 31, 1. 2;p. 32, 1. 4- p. 33, 1. 6; p. 33, 1. 9-p. 33, 1. 10;p. 36, 1. 10-p. 36, 1. 23;p. 37, 1. 1-p. 37, 1. 5;p. 37, 1. 8-p. 37, 1. 12;p. 37, 1. 15-p. 37, 1. 21; p. 37, 1. 24-p. 37, 1. 24;p. 39, 1. 3-p. 40, 1. 5;p. 40, 1. 8-p. 41, 1. 5;p. 41, 1. 8-p. 41, 1. 21;p. 41, 1. 24-p. 42, 1. 6; p. 42, 1. 9-p. 42, 1. 21;p. 43, 1. 6-p. 43, 1. 13; p. 43, 1. 22-p. 44, 1. 2;p. 44, 1. 24-p. 45, 1. 23;p. 46, 1. 21-p. 48, 1. 14;p. 48, 1. 17-p. 48, 1. 17;p. 54, 1. 17-p. 56, 1. 3; p. 56, 1. 6-p. 56, 1. 10;p. 56, 1. 12-p. 57, 1. 10;p. 57, 1. 13-p. 57, 1. 16;p. 57, 1. 19-p. 58, 1. 11;p. 58, 1. 14-p. 58, 1. 20;p. 58, 1. 23-p. 58, 1. 23;p. 60, 1. 4-p. 60, 1. 10;p. 60, 1. 13-p. 61, 1. 3;p. 61, 1. 6-p. 62, 1. 12;p. 62, 1. 15-p. 62, 1. 18;p. 62, 1. 21-p. 63, 1. 2;p. 63, 1. 5-p. 63, 1. 11;p. 63, 1. 14-p. 63, 1. 19;p. 63, 1. 22-p. 63, 1. 22;p. 66, 1. 4-p. 66, 1. 7;p. 66, 1. 10-p. 66, 1. 16; p. 67, 1. 22-p. 67, 1. 23;p. 68, 1. 1-p. 69, 1. 6;p. 69, 1. 9-p. 69, 1. 12;p. 69, 1. 20-p. 70, 1. 2;p. 70, 1. 5-p. 70, 1. 24;p. 71, 1. 2-p. 71, 1. 14;p. 72, 1. 5-p. 72, 1. 7;p. 72, 1. 10-p. 72, 1. 18;p. 72, 1. 21-p. 72, 1. 25;p. 73, 1. 2-p. 73, 1. 4;p. 73, 1. 7-p. 73, 1. 17;p. 73, 1. 20-p. 74, 1. 3;p. 74, 1. 6-p. 74, 1. 17;p. 74, 1. 22-p. 75, 1. 7;p. 75, 1. 10-p. 76, 1. 9; p. 81, 1. 1-p. 81, 1. 21;p. 81, 1. 24-p. 82, 1. 25;p. 85, 1. 3-p. 85, 1. 16;p. 85, 1. 19-p. 86, 1. 1;p. 89, 1. 13-p. 89, 1. | Plaintiffs object to Defendant's designations as follows.  Where line numbers are not included with a page number, plaintiffs object to all designated testimony on the page cited. |

18; p. 89, 1. 21-p. 90, 1. 9;p. 90, 1. 12-p. 90, 1. 16;p. 90, 1. 19-p. 90, 1. 25;p. 91, 1. 3-p. 91, 1. 10;p. 91, 1. 12-p. 91, 1. 20; p. 91, 1. 22-p. 92, 1. 7;p. 92, 1. 10-p. 92, 1. 10;p. 94, 1. 6-p. 94, 1. 9;p. 94, 1. 12-p. 94, 1. 17;p. 94, 1. 20-p. 94, 1. 20;

| | |
|---|---|
| Page 10<br>20 Q Could you state your name for the record,<br>21 please.<br>22 A Thomas McCarthy. | Plaintiff's Objections:<br>No objection – Page 10.<br><br>Defendant's Response: |
| Page 11<br>7 So let me start by asking you: By whom are<br>8 you employed?<br>9 A NBCUniversal?<br>10 Q What is your position currently with<br>11 NBCUniversal?<br>12 A The global chief security officer.<br><br>16 Q Going back to June and July of 2014, what<br>17 was your position with NBCUniversal?<br><br>19 THE WITNESS: Same title, global chief<br>20 security officer.<br><br>25 Q How long have you worked for NBCUniversal? | Plaintiff's Objections:<br>No objection – Page 11.<br><br>Defendant's Response: |
| Page 12<br>1 A Just over four years.<br><br>8 Q Okay. And then, if you could, just<br>9 Briefly, give us an employment history, if you<br>10 would, leading up to the time you joined<br>11 NBCUniversal.<br><br>15 THE WITNESS: I -- after I got out of | Plaintiff's Objections:<br>No objection – 12:1.<br><br>402, 403 – 12:8-11; 12:15-20.<br><br>Defendant's Response:<br><span style="font-size:smaller">This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the</span> |

16 college I was employed by Allergan Pharmaceutical as
17 a sales manager. And then I got a job with the U.S.
18 Secret Service as a special agent with -- for
19 26 years. And then four years ago I signed on with
20 NBCUniversal.

context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts.  The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

## Plaintiff's Objections:
No objection – 13:5-7.

402, 403 – 13:8-18; 13:22-24.

## Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative.

## Page 13
5 Q Have you ever -- do you recall a TV series
6 named DIG, D-I-G?
7 A I do.
8 Q Do you -- do you recall approximately when
9 you first heard of DIG?
10 A In terms of date?
11 Q Well, yeah. I mean, obviously, not a, you
12 know, specific day, but if -- you know, if you could
13 pin it down to a month, or even a year, you know, as
14 best you can, from your memory.
15 A I would roughly say six -- maybe three
16 months prior to it occurring in Israel.
17 Q Okay. Did -- did you have any input into

18 the decision as to whether to film DIG in Israel?

22 THE WITNESS: Yes. I looked at the
23 security assessment and I reviewed it with Stephen
24 Smith.

Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403 – Page 14.

Page 14
1 Q Okay. And, for the record, who -- who's
2 Stephen Smith?
3 A Stephen Smith is based out of our London
4 office. At that time he was head of security for
5 Europe was the title.
6 Q Did he report to you at that time?
7 A He reported to an Erin Noordeloos who
8 reported to me.
9 Q Okay. Thanks.
10 And what were -- if you can recall, what
11 were some of the security issues that came up in
12 that context, meaning deciding whether to film in
13 Israel?

16 THE WITNESS: We were looking from several
17 intelligence sources as to the escalation of -- with
18 Hamas in Israel. And we were concerned of -- of
19 that, those events.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 22.

Page 22
4 MR. RIDDLE: Okay. If you can, take a look
5 at the next exhibit, No. 458.
6 (Exhibit 458 was marked for
7 identification by the court reporter

Defendant's Response:
The witness' understanding and development of facts bearing on claim

8 and is attached hereto.)

9 BY MR. RIDDLE:

10 Q And is this an email dated July 2, 2014,

11 from Erin Noordeloos to you?

12 A Yes.

13 Q And it says, "This is the latest update

14 from Stephen re DIG," correct?

15 A Yes.

16 Q And did you understand that to mean

17 Stephen Smith?

18 A I did.

19 Q And in the -- there's a -- the first

20 italicized paragraph, do you see that there's a

21 reference to the increase in rocket attacks?

22 A In the first paragraph?

23 Q Yes, sir. The first paragraph that's

24 got -- that's in italics.

25 A Okay. Yes, sir


Page 23

1 Q Do you have an understanding as to who was

2 initiating those rocket attacks at this time?


5 THE WITNESS: Yes. I would assume it was

6 Hamas.

7 BY MR. RIDDLE:

8 Q Okay. It goes on to say:

9 "Mark and Randi would like me back

10 in Israel to manage on the ground

11 until the security situation

12 normalizes."

13 Correct?

14 A Yes, sir.

15 Q And that's a -- that's a reference to

16 Mark Binke and Randi Richmond, correct?

17 A I would assume that, yes.

18 Q Is it your understanding that they were

19 involved in production with reference to DIG?

---

decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:

402, 403, MIL – Page 23.


Defendant's Response:

The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of

21 THE WITNESS: Yes, sir.


Page 28
4 Let's take a look, if you would, at
5 Exhibit 459.
6 (Exhibit 459 was marked for
7 identification by the court reporter
8 and is attached hereto.)
9 BY MR. RIDDLE:
10 Q And is this an email from you to -- I'm
11 sorry. From Erin Noordeloos to you dated July 3,
12 2014, concerning security issues in Israel?
13 A Yes, sir.
14 Q And it says:
15 "Hi, Tom. Stephen has been in
16 contact with DIG on a regular basis
17 and advises the following."
18 Correct?
19 A Yes, sir.
20 Q And do you have -- do you believe that's a
21 reference to Stephen Smith?
22 A Yes, sir.
23 Q Would you read that first paragraph that's
24 italicized in the document. Read it out loud for
25 us.

Page 29
1 A "I have advised the DIG production
2 based on the current security
3 situation and the intel analysis we
4 have from a variety of sources that if
5 the current security situation
6 persists or deteriorates further, we
7 should not be shooting in Jerusalem.
8 I have had a call with Mark and Randi
9 and subsequently with the production
10 team in Israel to explain the

the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 28.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 29.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it

11 rationale behind the advice. I am
12 providing Randi/Mark with regular
13 updates and the decision will be
14 reviewed every 24 hours."
15 Q In this time frame, were you relying on
16 Stephen Smith to give you accurate information
17 concerning the security situation in Israel?

20 THE WITNESS: Yes, sir.
21 BY MR. RIDDLE:
22 Q To your knowledge, approximately how long
23 had Mr. Smith been affiliated with NBCUniversal back
24 in June and July of 2014?

Page 30
2 THE WITNESS: I'm not sure when he started.
3 I think it may have been a year or two prior to me
4 coming on board.
5 BY MR. RIDDLE:
6 Q Okay. What year was that, that you came on
7 board there?
8 A I came on in May of '13.
9 Q Okay. May of 2013, right?
10 A Yes, sir.
11 Q Okay. If you can take a look -- and this
12 has already been marked before so it's going to be
13 in that -- it should be in that smaller stack as
14 Exhibit 142.
15 A Yes, sir.
16 Q It looks like a part of a map at the bottom
17 of it. That's what -- okay. Do you have that?
18 A Yes, sir.
19 Q Okay. And is this an email from
20 Stephen Smith dated July 3rd, 2014, to you and Erin
21 Noordeloos?
22 A Yes.

will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 30.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim

23 Q And he's basically giving you and her an
24 update on the security situation in Israel, correct?

process is relevant and not prejudicial.

Page 31
2 THE WITNESS: Yes, sir.

Plaintiff's Objections:
402, 403, MIL – Page 31.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Page 32
4 BY MR. RIDDLE:
5 Q Okay. And can you flip to the second page,
6 please.
7 A Yes, sir.
8 Q And there's a -- there's like a box there
9 with a symbol in it. But, above that, it says:
10 "Significant increase in number of
11 mortar and rocket attacks resulting in
12 clashes in Jerusalem IDF and security
13 forces continued operations in the
14 West Bank again resulting in clashes
15 in Jerusalem."

Plaintiff's Objections:
402, 403, MIL – Page 32.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to

16 Correct?

state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

19 THE WITNESS: Yes, sir.
20 BY MR. RIDDLE:
21 Q And did that cause you concern for the
22 safety of the cast and crew in Israel?
23 A Yes, sir.
24 Q Why is that?
25 A Well, with Hamas launching rockets into

Page 33
1 Israel, there was no way that we would be able to
2 protect our personnel that were either coming back
3 or in Israel at the time.
4 Q And do you have an understanding as to
5 what -- who's being referenced there by the initials
6 IDF?

9 THE WITNESS: I would assume it's the
10 Israeli Defense Force.

Plaintiff's Objections:
402, 403, MIL – Page 33.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Page 36
10 MR. RIDDLE: Okay. If you would, take a
11 look at Exhibit 461.
12 (Exhibit 461 was marked for
13 identification by the court reporter
14 and is attached hereto.)
15 THE WITNESS: Yes, sir.
16 BY MR. RIDDLE:

Plaintiff's Objections:
402, 403, 802, MIL – Page 36.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of

17 Q The top -- the email at the top of the
18 page, is that one from Stephen Smith to you dated
19 July 6, 2014?
20 A Yes, sir.
21 Q And this is from Stephen Smith. And he
22 references having just finished a call with the ops
23 director from MAX, correct?

this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Page 37
1 THE WITNESS: Yes, sir.
2 BY MR. RIDDLE:
3 Q And then he -- do you see where further on
4 in this paragraph he references to -- he references
5 rockets?

8 THE WITNESS: Yes, sir.
9 BY MR. RIDDLE:
10 Q Is -- is it your understanding that at this
11 point in time that rockets were still being fired by
12 Hamas into Israel?

15 THE WITNESS: Yes, sir.

Plaintiff's Objections:
402, 403, 802, MIL – Page 37.


Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice

16 BY MR. RIDDLE:

17 Q And Mr. Smith goes on to state:

18 "Hamas are believed to be

19 attempting to draw Israel into a

20 conflict..."

21 Correct?

24 THE WITNESS: Yes, sir.

outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. Finally, this statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Page 39

3 MR. RIDDLE: If you could take a look at

4 Exhibit 462, please.

5 (Exhibit 462 was marked for

6 identification by the court reporter

7 and is attached hereto.)

8 THE WITNESS: Yes, sir.

9 BY MR. RIDDLE:

10 Q Okay. And this is -- is this a series of

11 emails concerning the security issues in Israel?

12 A Yes, sir.

13 Q And let's start from the bottom and work

14 our way up.

15 And by that I mean, if you look near the

16 bottom of the first page, do you see an email from

<u>Plaintiff's Objections</u>:
402, 403, MIL – 39:3-25.

802 – 39:25.

<u>Defendant's Response</u>:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why

17 Stephen Smith dated July 8, 2014, to Randi Richmond
18 and Mark Binke with a copy to yourself and
19 Ms. Noordeloos?
20 (Reporter clarification.)
21 BY MR. RIDDLE:
22 Q Yourself, meaning Mr. McCarthy.
23 A Yes, sir.
24 Q Okay. And it says:
25 "Randi, as per our last call, I

Page 40
1 have spoken to a contact in Tel Aviv
2 who believes there will be further
3 rockets targeting Tel Aviv and the
4 surrounding area overnight."
5 Correct?

8 THE WITNESS: Yes, sir.
9 BY MR. RIDDLE:
10 Q And if you could flip over to the next
11 page --
12 A Yes, sir.
13 Q -- you see that first full paragraph starts
14 out, "I am awaiting..."
15 Do you see that?
16 A Yes, sir.
17 Q Would you read that for us out loud.
18 A "I am awaiting on a further tactical
19 update and will circulate ASAP. I
20 have revived unconfirmed information
21 that Israel is readying itself for a

exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. Finally, this statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information.  "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
802 – 40:1-5; 40:8.

402, 403, MIL – 40:1-5; 40:8-25.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. Finally, jury is entitled to know what information NBC,

22 ground offensive with a further build
23 up of forces at the border. The view
24 from Israel is that with the previous
25 updates there is little appetite for

Page 41
1 any protracted conflict from all
2 sides."
3 Q In your position back in the first part of
4 July 2014, did you have any concern about the
5 possibility of Israel initiating a ground offensive?

8 THE WITNESS: Yes, sir.
9 BY MR. RIDDLE:
10 Q Why is that?
11 A Well, if they activated a ground offensive,
12 I would be concerned with the Hamas launching back
13 at Israel. And, once again, my concern was not the
14 ground offensive but the reactions of Hamas as a
15 result of that, that we would be unable to protect
16 our people.
17 Q Okay. But if -- but if, in fact, Israel
18 did initiate a ground offensive with -- was it your
19 belief at that time that that would likely result in
20 Hamas retaliating, so to speak, and firing
21 additional rockets into Israel?

24 THE WITNESS: Yes, sir. That was my
25 concern, that Hamas's reaction to anything would
      put

ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. Finally, this statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 41.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. Finally, jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Page 42

1 my people in jeopardy.
2 BY MR. RIDDLE:
3 Q And if we go up to the top of the first
4 page, is that an email that you received from
5 Stephen Smith dated July 8, 2014, with a security
6 update?

9 THE WITNESS: I believe it says, "DIG
10 update," correct.
11 BY MR. RIDDLE:
12 Q Okay.
13 And do you see where Mr. Smith makes
14 reference to the need to heed the following advice
15 and warnings?
16 A Yes, sir.
17 Q Okay. And the first item listed is:
18 "No travel within 20 kilometers of
19 the Gaza Strip at this time."
20 Correct?
21 A Yes, sir.

Page 43

6 Q Okay. Well, do you have an understanding
7 of what the Gaza Strip is?
8 A Yes, sir.
9 Q What is it? What is your understanding of
10 that?
11 A It's where Hamas is based. And it's a very
12 volatile area between -- for Israel and dealing with
13 Hamas from there.

22 BY MR. RIDDLE:
23 Q All right. Let's take a look at -- this
24 will be in the smaller stack, Exhibit 163.

**Plaintiff's Objections:**
402, 403, MIL – Page 42.

**Defendant's Response:**
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. Finally, jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

**Plaintiff's Objections:**
402, 403, MIL – Page 43.

**Defendant's Response:**
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why

25 A Okay. Yes, sir.

exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. Finally, jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Page 44
1 Q Do you have that?
2 A Yes, sir.

24 Q You see that there's a heading that says,
25 "Current Situation Overview"?

Plaintiff's Objections:
402, 403, MIL – Page 44.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Page 45
1 A Yes, sir.
2 Q And the first entry says:
3 "Reports indicate that five
4 rockets were fired from the Gaza Strip
5 toward Tel Aviv this morning, July 9."
6 Correct?
7 A Yes, sir.

Plaintiff's Objections:
402, 403, MIL – Page 45.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it

1259

| | |
|---|---|
| 8 Q And then Mr. Smith's report goes on to<br>9 state:<br>10 "Rockets fired towards central<br>11 Israel, including Jerusalem and<br>12 Tel Aviv, during the evening hours of<br>13 July 8. Long-range rockets also<br>14 impacted in Hadara, north of<br>15 Tel Aviv."<br>16 Do you see that?<br>17 A Yes, sir.<br>18 Q And then do you see where it says,<br>19 "Overnight, Israel reportedly struck some 160<br>20 militant targets in the Gaza Strip, in addition to<br>21 killing a senior Islamic Jihad leader and members of<br>22 his family"?<br>23 A Yes, sir. | will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |
| <br>Page 46<br>21 BY MR. RIDDLE:<br>22 Q In the next paragraph, do you see where it<br>23 says:<br>24 "Following the firing of numerous<br>25 rockets towards central Israel on | <u>Plaintiff's Objections</u>:<br>402, 403, MIL – Page 46.<br><br><u>Defendant's Response</u>:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br><u>Plaintiff's Objections</u>: |

| | |
|---|---|
| Page 47<br>1 July 8th, this morning's barrage<br>2 indicates that Gaza-based militants,<br>3 specifically Hamas and Islamic Jihad,<br>4 are intent on continuing such<br>5 longer-range attacks"?<br>6 A Yes, sir.<br>7 Q Do you see that?<br>8 A I do.<br>9 Q And do you also see where it says:<br>10 "In this context, additional<br>11 rockets against Tel Aviv, Jerusalem,<br>12 and other major population centers in<br>13 central Israel should be expected for<br>14 the duration of July 9."<br>15 Do you see that?<br>16 A I do.<br>17 Q And do you see where it says:<br>18 "In light of Israel's overnight<br>19 response, Israel is likely to view<br>20 this morning's barrage as a further<br>21 escalation and will likely continue to<br>22 respond with more extensive attacks<br>23 against the Gaza Strip within the next<br>24 24 to 48 hours"?<br>25 A Yes, sir. | 402, 403, MIL – Page 47.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |
| Page 48<br>1 Q And do you see where there's another<br>2 heading in this email that says, "Update from<br>3 contact based in Tel Aviv"?<br>4 A Yes, sir.<br>5 Q Do you see where it says:<br>6 "Likely escalation in Israel<br>7 response with air and missile attacks<br>8 targeting remotely operated and hidden<br>9 rocket launchers and targeted killings | Plaintiff's Objections:<br>402, 403, MIL – Page 48.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and |

10 of Hamas operatives"?
11 A Yes, sir.
12 Q And did you consider this information in
13 performing your duties for NBCUniversal back in July
14 of 2014?

17 THE WITNESS: Yes, sir.

therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Page 54
17 MR. RIDDLE: Mr. McCarthy, would you take a
18 look at Exhibit 465.
19 (Exhibit 465 was marked for
20 identification by the court reporter
21 and is attached hereto.)
22 THE WITNESS: Yes, sir.
23 BY MR. RIDDLE:
24 Q And at the top of the page, is that an
25 email from Ms. Noordeloos to you dated July 10,

Plaintiff's Objections:
402, 403, MIL – Page 54.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Page 55
1 2014?
2 A Yes, sir.
3 Q And it says:
4 "FYI, Chris pulled this together
5 for us on the attack overnight in Gaza
6 so I could see where the location was
7 vis-a-vis the hotel."
8 Correct?

Plaintiff's Objections:
402, 403, MIL – Page 55.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time,

9 A Yes, sir.

10 Q And then underneath it, is there an email

11 from Chris Biggs to Erin Noordeloos dated July 10,

12 2014?

13 A Yes, sir.

14 Q Who is Chris Biggs?

15 A He's an analyst that is used out of the

16 London office.

17 Q For what purpose?

18 A General information, to put assessments

19 together, to help coordinate assessments so we get

20 to see as much as we can to evaluate the best we

21 can.

22 Q Okay. So he works in the area of security?

23 A Yes.

24 Q That you're responsible for?

25 A Yes, sir.


Page 56

1 Q Okay. And if you look at his email to

2 Ms. Noordeloos, does it appear that he is providing

3 Reuters story?


6 THE WITNESS: Yes, sir.

7 BY MR. RIDDLE:

8 Q Okay. Did -- did you read and consider

9 this information in assessing the security situation

10 around the time of July 10, 2014?


12 THE WITNESS: Yes, sir.

13 BY MR. RIDDLE:

14 Q I'm sorry. I didn't -- I didn't hear your

15 answer.

16 A I'm sorry. I said, "Yes, sir."

17 Q Okay. All right.

18 And if you can go down -- if you look at

19 that Reuters story, go down to the fifth -- looks

20 like the fifth paragraph. It starts out with the

and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 56.


Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

21 words Shihab or Shihab, S-h-i-h-a-b.
22 Do you see that?
23 A I do.
24 Q Would you read that -- those two sentences
25 for us.

Page 57
1 A "Shihab was one of the dozens
2 of Palestinians who have been killed
3 by Israeli strikes in the last few
4 days, as violence intensifies
5 following weeks of mounting tension
6 between the two sides. Meanwhile,
7 Hamas has sent scores of rockets into
8 Israel."
9 Q All right. So here we have a reference to
10 "Israeli strikes," correct?

13 THE WITNESS: Yes, sir.
14 BY MR. RIDDLE:
15 Q And also a reference to the violence
16 intensifying, correct?

19 THE WITNESS: Yes, sir.
20 BY MR. RIDDLE:
21 Q All right. And then if you go to the
22 second page, do you see there's a sentence
23 underneath the map. It starts with the word
24 "Supposedly"?
25 A Yes, sir.

Page 58
1 Q Would you read that out loud for us, that
2 sentence.
3 A "Supposedly, there have been
4 attacks on Gaza port, rocket attacks
5 from the jets/drones and
6 supposedly/unverified gun battles
7 taking place possibly from Israeli

Plaintiff's Objections:
402, 403, MIL – Page 57.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 58.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time,

8 soldiers on boats."
9 Q With reference to the attacks on Gaza ports
10 and rocket attacks from the jets and drones, did you
11 understand that to mean attacks by Israeli forces?

14 THE WITNESS: Yes, I'm assuming that.
15 BY MR. RIDDLE:
16 Q And -- and this is -- at this point in
17 time, again, you were -- you were taking into
18 account the fact that Israel was striking back
19 because you thought that might lead to further
20 attacks by Hamas, correct?

23 THE WITNESS: Yes, sir.

Page 60
4 Q And if you go to the next page of
5 Exhibit 466.
6 A Yes, sir.
7 Q Do you see where Stephen Smith, also on
8 July 2014 -- I'm sorry. Also on July 10, 2014,
9 forwarded to you and Ms. Noordeloos a security
10 update that he had gotten from Mark Binke,
correct?
13 THE WITNESS: Yes, sir.
14 BY MR. RIDDLE:
15 Q And looking in the -- going farther down in
16 that email, you see where it says:
17 "Continued rocket fire from Gaza
18 including two targeting Tel Aviv.
19 Approaching 400 rockets fired from
20 Gaza and 800 retaliatory strikes from
21 Israel. There has been no lull or
22 cessation"?
23 A Yes, sir.
24 Q Do you see that?
25 A I do.

and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 60.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 61.

Page 61

1 Q And did you take into account this
2 information in assessing the security situation in
3 Israel on or about July 10, 2014?

6 THE WITNESS: Yes, sir.
7 BY MR. RIDDLE:
8 Q And if you'd go to the third page of
9 Exhibit 466, do you see near the top of the page
10 there are some bullet points listed?
11 A Yes, sir. It starts with, "Various
12 international..."?
13 Q I'm sorry? Say that again.
14 A It starts with, "Various international..."?
15 Q Is that the one you're looking at?
16 Q Yes, sir.
17 A Okay.
18 Q And then there's some bullet points
19 underneath that, right?
20 A Yes, sir.
21 Q And you see the first one starts out by
22 saying:
23 "Much of the analysis is pointing
24 to Israel being drawn into a ground
25 offensive"?

Page 62

1 A Yes, sir.
2 Q And then do you see that one of the bullet
3 points starts out, "Rafah border crossing..." but
4 then it continues:
5 "Most rockets continue to target
6 the southern region of Israel,
7 particularly those within the 20
8 kilometers range from the Gaza Strip.
9 An increasing amount of rockets has
10 also been fired towards cities in the
11 20 to 40 kilometer range from Gaza..."
12 Correct?

**Defendant's Response**:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

**Plaintiff's Objections**:
402, 403, MIL – Page 62.

**Defendant's Response**:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why

15 THE WITNESS: Yes, sir.
16 BY MR. RIDDLE:
17 Q And then -- and this is information that
18 was being reported by Stephen Smith, correct?

21 THE WITNESS: I would assume that here,
22 yes, sir. I believe they look like bullets from
23 Mark Binke.
24 BY MR. RIDDLE:
25 Q Well, isn't it where Mark Binke's basically

Page 63
1 repeating what Stephen Smith said, plus he posed a
2 question to Stephen Smith?

5 THE WITNESS: I would assume that these
6 bullets were provided. I'm assuming this, to
7 Mark Binke from Stephen.
8 BY MR. RIDDLE:
9 Q Okay. Mr. Binke wasn't -- he wasn't
10 responsible for providing information about what was
11 transpiring in Israel, was he?
14 THE WITNESS: No, sir.
15 BY MR. RIDDLE:
16 Q And did you consider this -- the
17 information in this email, did you consider it in
18 performing your job duties around the time of July
19 10, 2014?

22 THE WITNESS: Yes, sir.

Page 66
4 Q Okay. Okay. But just to clarify, what
5 you're saying is, you were not -- you did not
6 participate in a decision as to whether to suspend
7 production back on or about July 10, 2014, correct?

exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 63.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, 104a – Page 66.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of

10 THE WITNESS: I have no recollection of
11 that.
12 BY MR. RIDDLE:
13 Q Did you have any knowledge -- I'm sorry.
14 Did you have any involvement in a decision
15 to move the production of DIG out of Israel?
16 A No, sir.

claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602.

Page 67
22 MR. RIDDLE: Okay. Let's -- let's go,
23 then, to Exhibit 469.

Plaintiff's Objections:
402, 403, MIL – Page 67.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Page 68
1 (Exhibit 469 was marked for
2 identification by the court reporter
3 and is attached hereto.)

Plaintiff's Objections:
402, 403, MIL – Page 68.

Defendant's Response:

4 THE WITNESS: Yes, sir.
5 BY MR. RIDDLE:
6 Q And is this an email exchange between you
7 and Mr. Lon Austinberg [sic]? I'm sorry, Aust --
8 no --
9 A Augustenborg.
10 Q Augustenborg.
11 A Correct, sir.
12 Q Okay. Who was that?
13 A Lon is the station chief for the CIA based
14 out of New York, or was. He's retired now.
15 Q Okay. At this point in time he was the
16 station chief for --
17 A The CIA.
18 Q -- the CIA stationed in New York; is that
19 correct?
20 A That's correct.
21 Q And how did you know him?
22 A Through my working with the Secret Service.
23 Q Okay. And are you -- do you -- is your
24 office in New York?
25 A Yes, sir.

Page 69
1 Q And how long has that been the case?
2 A Since I came on the job four years ago.
3 Q Okay. And do you see that -- in -- in
4 Mr. Augustenborg's email to you on July 10, 2014, he
5 states that, "...likelihood of more rockets and
6 bombings are high..."?

9 THE WITNESS: Yes, sir.
10 BY MR. RIDDLE:
11 Q Did you agree with that assessment at that
12 time?

20 THE WITNESS: It was his opinion. So I was
21 taking it in, as I take in all sorts of intelligence

The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 69.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim

22 that I can gather in order to help make a best
23 decision or provide the best information.
24 BY MR. RIDDLE:
25 Q And around this time, which was the first

Page 70
1 part of July 2014, who were you providing
2 information about security assessments in Israel to?

5 THE WITNESS: We were putting as much
6 information as we could together to come up with a
7 recommendation for Mark Binke, Jeff Wachtel and that
8 crowd.
9 MR. RIDDLE: If you can take a look at
10 Exhibit 470.
11 (Exhibit 470 was marked for
12 identification by the court reporter
13 and is attached hereto.)
14 THE WITNESS: Yes, sir.
15 BY MR. RIDDLE:
16 Q All right. If you look at the -- the email
17 at the top of the page, is that from Erin Noordeloos
18 to you dated July 10, 2014?
19 A Yes, sir.
20 Q It says -- she says:
21 "This is the statement that Mark
22 requested after our conversation with
23 him."
24 Do you think she's referring to Mark Binke?

Page 71
2 THE WITNESS: I would assume that, sir.
3 BY MR. RIDDLE:
4 Q Okay. And -- and it says:
5 "As you can see, Jeff Wachtel has
6 now been advised."

process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 70.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 71.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially

7 Correct?

8 A Yes, sir.

9 Q Advised as to what?

12 THE WITNESS: Advised of the intelligence
13 that we had gathered, reference the attacks from
14 Hamas into Israel.

Page 72

5 Now, around this time, do you recall a
6 discussion with Mr. Wachtel concerning your
7 assessment of the security situation in Israel?

10 THE WITNESS: I remember having a
11 conversation with him. I guess, as we discussed,
12 it's three-and-a-half years ago, but I'm sure we --
13 I provided him the information that we have in front
14 of us here.

15 BY MR. RIDDLE:

16 Q Okay. And do you -- do you recall
17 generally what -- what you told him with that, the
18 security situation in Israel at that time?

21 THE WITNESS: I don't remember
22 specifically, but I'm sure it would have been that
23 as a result of Hamas sending rockets into Israel,
24 that I didn't feel comfortable with keeping our --
25 our employees safe in Israel.

Page 73

2 Q Do you recall whether you mentioned that
3 the Israeli response would probably lead to further
4 rocket attacks by Hamas?

outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 72.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 73.

Defendant's Response:
The witness' understanding and development of facts bearing on claim

7 THE WITNESS: Yes, sir.

8 BY MR. RIDDLE:

9 Q What did you tell him in that regard?

10 A I don't remember specifically, but it's

11 pretty much what you just said, that I was concerned

12 for our production in Israel, as it was escalating.

13 And my concern was that a random rocket could cause

14 a devastating effect to our cast and crew in Israel.

15 Q It would have been also relevant to you at

16 this time that there might very well be a ground

17 offensive launched by the Israeli forces?

20 THE WITNESS: I was aware of the ground --

21 possible ground forces moving. However, my concern

22 was not that. My concern was the reaction of Hamas

23 into Israel.

24 BY MR. RIDDLE:

25 Q And -- and part of that was that if, in

Page 74

1 fact, there was a ground offensive launched, that

2 would likely lead to further attacks by Hamas,

3 correct?

6 THE WITNESS: Yes, sir.

7 BY MR. RIDDLE:

8 Q I'm sorry -- can you repeat your answer?

9 A Oh, I'm sorry. Yes, sir.

10 Q Okay. Sorry. Thanks.

11 And, then, if you look at the second page

12 of Exhibit 470, I want to look in particular at the

13 email from Stephen Smith on July 10, 2014 to

14 Mark Binke.

15 Do you recall ever reading this email?

decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 74.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection

16 A I don't recall reading it, but I'm sure I
17 did.

22 Q Okay. There's a statement by Stephen Smith
23 that says:
24 "NBCU Security have monitored and
25 evaluated the events in Israel, Gaza

Page 75
1 and the West Bank, since inception and
2 analyzed information from multiple
3 sources."
4 Do you see that?
5 A I do.
6 Q What is -- what does he mean by -- or what
7 is meant by "NBCU Security"?
10 THE WITNESS: That would be my -- myself,
11 Stephen Smith, Erin Noordeloos, anybody that was
12 involved in the monitoring of the information we
13 were getting about the Hamas -- Hamas in Israel.
14 BY MR. RIDDLE:
15 Q Okay. And would you read the rest of that
16 paragraph after that sentence.
17 A Yes, sir.
18 "All current intelligence and
19 activity in the country points to
20 events still being in escalation phase
21 without a predictable or realistic
22 timeframe for a reduction in
23 hostilities. We have looked at the
24 magnitude and range of current rocket
25 attacks (which appear to target

Page 76
1 locations to be used in forthcoming
2 filming), the escalation of civil
3 disorder and potential for a further

---

intended; description of general claim process is relevant and not prejudicial.

<u>Plaintiff's Objections</u>:
402, 403, MIL – Page 75.

<u>Defendant's Response</u>:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

<u>Plaintiff's Objections</u>:
402, 403, MIL – Page 76.

<u>Defendant's Response</u>:
The witness' understanding and development of facts bearing on claim

**1273**

4 increase in hostilities, including a
5 ground campaign, and acts of terrorism
6 within Israel, all of which mean there
7 is no short term and realistic
8 likelihood for positive changes to the
9 security landscape."

Page 81
1 Q Okay. And then let's go to -- this is one
2 that was marked before so it should be in that -- I
3 guess both stacks are small by now, but it's in the
4 stack of -- previously marked as Exhibit 409.
5 Let me know when you find that.
6 A Yes.
7 Q Okay. At the bottom, it says, "Begin
8 forwarded message:" From: NETDESK on July 17,
9 2014.
10 Would you read what it says under the
11 address part of the email.
12 A "Israeli Defense Forces
13 Confirm in statement they have
14 initiated a ground operation within
15 the Gaza Strip."
16 Q Do you see where it says, "NETDESK"?
17 A Yes, sir.
18 Q And then the address is
19 NBCNetdesk@nbcuni.com.
20 Do you have any understanding as to what
21 NETDESK is?

24 THE WITNESS: NETDESK, I believe, is a desk

decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 81.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

| | |
|---|---|
| 25 at NBCUniversal that provides just quick updates to | |
| | **Plaintiff's Objections**: 402, 403, MIL – Page 82. |
| **Page 82** 1 personnel in the field about news. 2 BY MR. RIDDLE: 3 Q Okay. And then above that we have an email 4 from you dated July 17, 2014, to Mark Binke, 5 correct? 6 A Yes, sir. 7 Q And you say, "Mark, we made the right call. 8 See below." Correct? 9 A Yes, sir. 10 Q And you're referring to the news update 11 that says: 12 "Israeli Defense Forces have 13 initiated a ground operation within 14 the Gaza Strip." 15 Correct? 16 A Yes, sir. 17 Q All right. So when you say, "We made the 18 right call," what are you referring to? Right call 19 concerning what? 20 A The right call that, you know, if there had 21 been a -- a ground operation, my concern would be 22 the immediate and devastating response from Hamas to 23 our people in Israel. 24 And I was glad that we were -- had made the 25 call to -- to not continue there. | **Defendant's Response**: The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |
| **Page 85** 3 BY MR. RIDDLE: 4 Q Did you provide any recommendation, you or 5 your group provide a recommendation concerning your 6 assessment of security in connection with a possible | **Plaintiff's Objections**: 402, 403, MIL – Page 85.

**Defendant's Response**: The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of |

**1275**

7 decision to halt production or suspend production of
8 DIG in Israel?
9 A We advised them of the security situation
10 and how dangerous it was with Hamas being
11 unpredictable and us being unable to keep our people
12 safe. And we made that very clear to the production
13 side.
14 Q Okay. And what's -- what specific facts
15 were you relying on at the time you made that
16 recommendation?

19 THE WITNESS: We were relying on daily
20 intelligence reports of multiple rocket attacks from
21 Hamas into Israel and the escalation of that. So
22 that's basically what it was primarily based on, is
23 that we were -- could not guarantee the safety of
24 our people in Israel. And it was getting more and
25 more volatile and it was not a time to have our

Page 86
1 people in Israel for this.

---

this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 86.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Page 89

13 Q Now, when you made your recommendations
14 about the security situation in Israel and whether
15 it would be prudent to continue with filming, were
16 you -- were you considering what you had learned
17 that had already happened in the past in this time
18 frame, June, July 2014?

21 THE WITNESS: Well, so I was taking all the
22 information I could and gather it together to make a
23 very educated assessment of what was happening over
24 there. So every piece of intelligence we put
25 together to try to be fair, in terms of our

Page 90

1 assessment.
2 And we had, you know, a variety of
3 intelligence sources which were helpful to us in
4 coming to our assessment.
5 BY MR. RIDDLE:
6 Q And so you had -- you were trying -- you
7 were trying to basically make an assessment of what
8 the security risks would be in the near term going
9 forward, correct?

12 THE WITNESS: Yes, sir.
13 BY MR. RIDDLE:
14 Q And part of that was your concern that
15 Hamas would continue to fire rockets, missiles,
16 mortars, any or all of those, into Israel, correct?

Plaintiff's Objections:
402, 403, MIL – Page 89.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.

Plaintiff's Objections:
402, 403, MIL – Page 90.

Defendant's Response:
The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection

| | |
|---|---|
| 19 THE WITNESS: Yes, sir.<br>20 BY MR. RIDDLE:<br>21 Q And you were -- you were also concerned<br>22 that there might be an escalation on the part of the<br>23 Israeli forces, in terms of a ground invasion,<br>24 because it would be reasonable to assume that that<br>25 would lead to further attacks by Hamas, correct? | intended; description of general claim process is relevant and not prejudicial. |
| Page 91<br>3 THE WITNESS: Yeah. My biggest concern was<br>4 not the ground invasion but Hamas's response to that<br>5 and our people in Israel.<br>6 BY MR. RIDDLE:<br>7 Q Right. In other words, your concern was<br>8 with what Hamas would likely do if, in fact,<br>9 Israeli -- the Israelis escalated and started a<br>10 ground invasion, correct?<br><br>12 THE WITNESS: Yes, sir. My concern was<br>13 Hamas's response.<br>14 BY MR. RIDDLE:<br>15 Q Okay. And, again, you thought that the --<br>16 it was logical in your mind to assume that if, in<br>17 fact, the Israelis initiated a ground attack, that<br>18 would likely lead to Hamas continuing to fire<br>19 rockets, missiles, and perhaps mortars, into Israel,<br>20 correct?<br><br>22 THE WITNESS: Well, my concern was any type<br>23 of conflict escalation between Israel and Hamas<br>24 would result in Hamas, once again, launching rockets<br>25 into an area where our people were and I could not | Plaintiff's Objections:<br>402, 403, MIL – Page 91.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |
| Page 92 | Plaintiff's Objections: |

| | |
|---|---|
| 1 keep them safe. That was my primary goal, is to<br>2 keep them safe.<br>3 BY MR. RIDDLE:<br>4 Q Okay. And is it your understanding that in<br>5 this time frame that Hamas had launched rockets and<br>6 missiles into Israel and had shot mortars into<br>7 Israel?<br><br>10 THE WITNESS: Yes, sir. | 402, 403, MIL – Page 92.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |
| Page 94<br>6 BY MR. RIDDLE:<br>7 Q Well, I'll ask one, and that is: Would you<br>8 agree with me that rockets, missiles and mortars are<br>9 weapons?<br><br>12 THE WITNESS: Yes, I would say they're<br>13 weapons.<br>14 BY MR. RIDDLE:<br>15 Q Okay. And would you also agree that they<br>16 are weapons that have been used in warfare by<br>17 various parties?<br><br>20 THE WITNESS: I am sure they have. | Plaintiff's Objections:<br>402, 403, MIL – Page 94.<br><br>Defendant's Response:<br>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |

## 14.    RANDI RICHMOND (30(b)(6))—May 24, 2017

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| Defendant's Designation of Randi Richmond May 24, 2017 30 (b)(6)<br><br>p. 8, 1. 13-p. 8, 1. 16; p. 8, 1. 20-p. 9, 1. 8;p. 9, 1. 12-p. 10, 1. 2;p. 10, 1. 5-p. 10, 1. 6;p. 10, 1. 8-p. 10, 1. 10;p. 10, 1. 14-p. 10, 1. 14;p. 10, 1. 16-p. 10, 1. 18;p. 10, 1. 21-p. 10, 1. 21;p. 10, 1. 24-p. 11, 1. 1;p. 19, 1. 8-p. 19, 1. 10;p. 19, 1. 15-p. 19, 1. 17;p. 19, 1. 21-p. 19, 1. 23;p. 20, 1. 2-p. 20, 1. 3;p. 20, 1. 6-p. 20, 1. 11;<br><br><br>Page 8<br>13 And let me ask you in that regard: How<br>14 much in extra expenses that are included in the<br>15 insurance claim that's at issue in this lawsuit was<br>16 incurred by Universal Cable Productions LLC?<br><br>20 THE WITNESS: If you're asking to define<br><br>Page 9<br>1 production was originally scheduled to be filmed<br>2 entirely in Israel, at least as to the pilot, and<br>3 then Episodes 2 through 6, correct?<br>4 A That is correct.<br>5 Q And if, in fact, that had occurred, would<br>6 the production expenses have all been incurred by<br>7 Universal Cable Productions or a company that it was<br>8 working with in Israel?<br><br>12 THE WITNESS: Yes.<br>13 BY MR. RIDDLE:<br>14 Q Okay. And what was the name of the Israeli<br>15 company that was involved?<br>16 A The Israeli service company was Keshet<br>17 Productions. | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 18 Q Okay. And is it true that Universal Cable<br>19 Productions reimbursed that company for the<br>20 production expenses that that company incurred in<br>21 Israel in connection with the production of DIG?<br>22 A That is correct.<br>23 Q Okay. And with -- and if the production of<br>24 DIG for the pilot and Episodes 2 through 6 had all<br>25 been done in Israel, would there have been any<br><br><br>Page 10<br>1 production expense incurred by Northern<br>2 Entertainment?<br><br>5 THE WITNESS: No, Northern would have not<br>6 incurred costs.<br><br>8 Q So Northern only came into the picture<br>9 because of the relocation of the production,<br>10 correct?<br><br>14 THE WITNESS: That is correct.<br><br>16 Q Did Universal Cable Productions reimburse<br>17 Northern Entertainment for any of the production<br>18 expenses that Northern Entertainment incurred –<br><br>21 Q -- in connection with DIG?<br><br>24 THE WITNESS: I cannot clarify if it was a<br>25 reimbursement because Northern Entertainment is a<br><br>Page 11<br>1 form of subsidiary of UCP.<br><br>Page 19<br>8 Q What is the amount that Universal Cable<br>9 Productions is seeking to recover in this lawsuit, | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 10 Ms. Richmond?<br>15 THE WITNESS: To the best of my ability,<br>16 the estimate is approximately $7 million for the<br>17 extra expense.<br><br>21 Q And are you saying that Universal Cable<br>22 Productions is trying -- is seeking that -- the full<br>23 7-plus million as extra expenses?<br><br>Page 20<br>2 Q My question is as to Universal Cable<br>3 Productions only.<br><br>6 THE WITNESS: As Universal Cable<br>7 Productions' representative, yes, that is Universal<br>8 Cable Productions under the assumption that they<br>9 are -- that Northern Entertainment is included in<br>10 that 7 million because of the way the corporate<br>11 structure works. | |

15.  **RANDI RICHMOND VOL. 1 (non-30(b)(6))—May 24, 2017**

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| Defendant's Designation of Randi Richmond May 24, 2017 Vol 1<br><br>p. 19, l. 10-p. 19, 1. 19;p. 20, 1. 3-p. 20, 1. 14;p. 24, 1. 12-p. 25, 1. 2; p. 27, 1. 11-p. 28, 1. 8;p. 28, 1. 11-p. 28, 1. 11;p. 28, 1. 13-p. 28, 1. 23;p. 29, 1. 1-p. 29, 1. 8;p. 29, 1. 11-p. 29, 1. 16;p. 29, 1. 19-p. 29, 1. 25;p. 30, 1. 3-p. 30, 1. 7;p. 30, 1. 10-p. 30, 1. 16;p. 30, 1. 19-p. 30, 1. 22;p. 30, 1. 25-p. 31, 1. 14;p. 31, 1. 17-p. 31, 1. 17; p. 32, 1. 1-32, 1. 6;p. 32, 1. 15-p. 32, 1. 16;p. 32, 1. 19- p. 32. 1. 23;p. 34, 1. 1-p. 34, 1. 3;p. 34, 1. 5-p. 34, 1. 14;p. 34, 1. 24-p. 35, 1. 5;p. 36, 1. 4-p. 36, 1. 20;p. 37, 1. 22-p. 37, 1. 24;p. 38, 1. 2-p. 38, 1. 7;p. 43, 1. 17- p. 43, 1. 23;p. 44, 1. 1-p. 44, 1. 23;p. 44, 1. 1-p. 45, 1. 20;p. 46, 1. 20-p. 46, 1. 21;p. 46, 1. 24-p. 47, 1. 7;<br>p. 47, 1. 10-p. 47, 1. 18;p. 47, 1. 21 p 48, 1. 9-p. 48, 1. 12-p. 48, 1. 12;p. 48, 1. 18-p. 49, 1. 1;p. 49, 1. 4-p. 49, 1. 17;p. 49, 1. 20-p. 49, 1. 24;p. 50, 1. 2-p. 50, 1. 17;p. 51, 1. 1-p. 51, 1. 4;p. 51, 1. 7-p. 51, 1. 13;p. 51, 1. 16-p. 51, 1. 18;p. 51, 1. 21-p. 51, 1. 22; p. 51, 1. 25-p. 51, 1. 25;p. 52, 1. 6-p. 52, 1. 9;p. 52, 1. 12-p. 52, 1. 12;p. 52, 1. 16-p. 52, 1. 18;p. 52, 1. 21- p. 52, 1. 21;p. 72, 1. 18-p. 72, 1. 24;p. 73, 1. 10-p. 73, 1. 14;p. 74, 1. 2-p. 74, 1. 15;p. 74, 1. 18-p. 74, 1. 20;p. 75, 1. 6-p. 75, 1. 12;p. 75, 1. 15-p. 75, 1. 18;p. 75, 1. 21-p. 75, 1. 21;p. 76, 1. 4-p. 78, 1. 2;p. 85, 1. 1-p. 85, 1. 4;p. 85, 1. 7-p. 85, 1. 15;p. 86, 1. 16-p. 86, 1. 25;p. 87, 1. 9-p. 87, 1. 24;p. 89, 1. 7-p. 89, 1. 19;p. 90, 1. 2-p. 90, | Plaintiffs object to Defendant's designations as follows: |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 1. 18;p. 90, 1. 21-p. 90, 1. 24;p. 91, 1. 1-p. 91, 1. 7;p. 92, 1. 5-p. 92, 1. 9;p. 92, 1. 16-p. 92, 1. 19;p. 92, 1. 22 - p. 92, 1. 22;p. 93, 1. 8-p. 94, 1. 3;p. 94, 1. 8-p. 94, 1. 18;p. 94, 1. 21-p. 94, 1. 25;p. 95, 1. 3-p. 95, 1. 18;p. 95, 1. 21-p. 96, 1. 12;p. 96, 1. 20-p. 97, 1. 3;p. 97, 1. 19-p. 97, 1. 19;p. 97, 1. 25-p. 98, 1. 17;p. 98, 1. 22-p. 99, 1. 4;p. 99, 1. 7-p. 99, 1. 16;p. 100, 1. 12-p. 100, 1. 20;p. 100, 1. 24-p. 100, 1. 24;p. 103, 1. 1-p. 103, 1. 17; p. 104, 1. 22-p. 105, 1. 6;p. 105, 1. 8-p. 105, 1. 13;p. 105, 1. 17-p. 105, 1. 21;p. 105, 1. 25-p. 106, 1. 1;p. 106, 1. 3-p. 106, 1. 4;p. 109, 1. 4-p. 109, 1. 8;p. 112, 1. 2-p. 112, 1. 6;p. 112, 1. 9-p. 113, 1. 3;p. 113, 1. 6-p. 113, 1. 6;p. 114, 1. 3-p. 114, 1. 13;p. 116, 1. 5-p. 116, 1. 18;p. 116, 1. 21-p. 116, 1. 21;p. 120, 1. 16-p. 121, 1. 11;p. 121, 1. 14-p. 121, 1. 14;p. 123, 1. 12-p. 124, 1. 2; p. 124, 1. 17-p. 124, 1. 21;p. 124, 1. 24-p. 124, 1. 24; p. 125, 1. 1-p. 125, 1. 10;p. 125, 1. 13-p. 125, 1. 17; p. 125, 1. 20-p. 125, 1. 22;p. 126, 1. 2-p. 126, 1. 8;p. 126, 1. 11-p. 127, 1. 4;p. 127, 1. 7 -p. 127, 1. 7;p. 128, 1. 11-p. 129, 1. 18;p. 129, 1. 24-p. 129, 1. 25;p. 130, 1. 23-p. 132, 1. 6;p. 132, 1. 9-p. 132, 1. 9;p. 135, 1. 6-p. 135, 1. 19;p. 135, 1. 24-p. 136, 1. 14;p. 139, 1. 21-p. 140, 1. 8;p. 140, 1. 18-p. 141, 1. 11;p. 141, 1. 14-p. 141, 1. 14;p. 141, 1. 19-p. 142, 1. 2;p. 142, 1. 5-p. 142, 1. 5;p. 142, 1. 7-p. 142, 1. 13;p. 142, 1. 16-p. 142, 1. 16;p. 142, 1. 18-p. 142, 1. 22;p. 142, 1. 25-p. 142, 1. 25;p. 144, 1. 1-p. 144, 1. 6;p. 144, 1. 9-p. 144, 1. 21;p. 144, 1. 24-p. 144, 1. 24;p. 149, 1. 14-p. 149, 1. 23;p. 150, 1. 1-p. 150, 1. 5;p. 150, 1. 7-p. 150, 1. 7;p. 153, 1. 1-p. 153, 1. 16;p. 153, 1. | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 19-p. 154, 1. 10;p. 154, 1. 13-p. 154, 1. 14;p. 157, 1. 10-p. 157, 1. 21;p. 157, 1. 24-p. 157, 1. 24;p. 160, 1. 10-p. 160, 1. 22;p. 160, 1. 25-p. 161, 1. 4;p. 161, 1. 24-p. 161, 1. 25;p. 162, 1. 1.-p. 162, 1. 3;p. 162, 1. 6.-p. 162, 1. 15;p. 162, 1. 19-p. 162, 1. 23;p. 162, 1. 25-p. 162, 1. 25;p. 163, 1. 10-p. 163, 1. 11;p. 163, 1. 13-p. 163, 1. 24;p. 164, 1. 2-p. 164, 1. 8;p. 164, 1. 11-p. 164, 1. 11;p. 164, 1. 14-p. 164, 1. 23;p. 166, 1. 4-p. 166, 1. 6;p. 166, 1. 20-p. 167, 1. 25;p. 171, 1. 7-p. 171, 1. 21;p. 171, 1. 25-p. 171, 1. 25;p. 172, 1. 2-p. 172, 1. 10;p. 172, 1. 13-p. 172, 1. 14; p. 173, 1. 15-p. 173, 1. 25;p. 174, 1. 4-p. 174, 1. 8; p. 175, 1. 20-p. 175, 1. 21;p. 176, 1. 7-p. 176, 1. 8; p. 176, 1. 11-p. 176, 1. 11;p. 179, 1. 1-p. 179, 1. 8;p. 179, 1. 17-p. 180, 1. 23; p. 181, 1. 1-p. 182, 1. 9;p. 182, 1. 12-p. 182, 1. 16;p. 182, 1. 19-p. 182, 1. 19;p. 182, 1. 21-p. 182, 1. 24;p. 183, 1. 2-p. 183, 1. 5;p. 183, 1. 8 - p. 183, 1. 20;p. 183, 1. 23-p. 183, 1. 23;p. 184, 1. 10 - p. 185, 1. 4;p. 185, 1. 7-p. 185, 1. 7;p. 186, 1. 21-p. 187, 1. 2;p. 187, 1. 10-p. 187, 1. 13;p. 187, 1. 22-p. 187, 1. 24;p. 188, 1. 13-p. 188, 1. 14;p. 188, 1. 17-p. 188, 1. 22;p. 188, 1. 25-p. 189, 1. 10;p. 189, 1. 13-p. 189, 1. 21;p. 189, 1. 24-p. 190, 1. 4;p. 190, 1. 7-p. 190, 1, 12;p. 190, 1. 15-p. 190, 1. 20;p. 190, 1. 22-p. 190, 1. 22;p. 190, 1. 25-p. 191, 1. 10;p. 191, 1. 13-p. 191, 1. 14;p. 191, 1. 17-p. 191, 1. 18;p. 192, 1. 1-p. 192, 1. 3; p. 192, 1. 6-p. 193, 1. 10; p. 193, 1. 13-p. 193, 1. 19; p. 193, 1. 22-p. 194, 1. 1; p. 194, 1. 4-p. 194, 1. 7;p. 194, 1. 25-p. 195, 1. 10;p. 195, 1. 16-p. 195, 1. 24;p. 196, 1. 2-p. 196, 1. 12;p. 196, 1. 15-p. 196, 1. 25; p. 197, 1. 4-p. 197, | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 1. 7;p. 197, 1. 9-p. 197, 1. 12;p. 200, 1. 19-p. 201, 1. 14;p. 201, 1. 17-p. 202, 1. 7;p. 202, 1. 10-p. 202, 1. 19;p. 202, 1. 22-p. 203, 1. 1;p. 203, 1. 4-p. 203, 1. 10;p. 203, 1. 13-p. 203, 1. 16;p. 203, 1. 19-p. 203, 1. 24;p. 204, 1. 2-p. 204, 1. 13;p. 206, 1. 24-p. 207, 1. 1;p. 207, 1. 4-p. 207, 1. 11;p. 207, 1. 23-p. 208, 1. 9;<br><br>Page 19<br>10 Q Okay. Let me back up and ask you who you<br>11 work for?<br>12 A I work for Universal Cable Productions.<br>13 Q Do you work for Northern Entertainment<br>14 Productions?<br>15 A Yes, in that that's a subsidiary of<br>16 Universal Cable Productions.<br>17 Q Okay. Are you employed by NBCUniversal?<br>18 A That is a parent company to Universal Cable<br>19 Productions.<br><br>Page 20<br>3 What is your position with Universal Cable?<br>4 A President and senior vice president of<br>5 production.<br>6 Q What are your duties in that role?<br>7 A I oversee various productions, in terms of<br>8 financial and activities on the ground when we're<br>9 producing them. | Plaintiff's Objections:<br>Page 19:13-19<br>MIL,402,403<br><br>Defendant's Response:<br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 10 Q And what was your role on behalf of<br>11 Universal Cable Productions with<br>reference to DIG?<br>12 A At that time I was vice president of<br>13 production and the same role, overseeing the<br>14 production.<br><br>Page 24<br>12 BY MR. RIDDLE:<br>13 Q Are you familiar with a gentleman named<br>14 Stephen Smith?<br>15 A Yes, I am.<br>16 Q Who does he work for?<br>17 A I believe -- I'm not -- I can't confirm if<br>18 it's Comcast or NBCUniversal, but one of the parent<br>19 companies.<br>20 Q Okay. And did he have a role in connection<br>21 with security relating to the production of DIG?<br>22 A He did. He was the security representative<br>23 that I spoke with and emailed with.<br>24 Q Did he provide you with reports from time<br>25 to time about the status of -- relating to security<br><br>Page 25<br>1 issues in Israel?<br>2 A Yes, he did.<br><br>Page 27<br>11 Q Well, as we'll come to in -- there are a | Plaintiff's Objections:<br>Page 24:12-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 25:1-2<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 12 lot of emails that have Mark Binke's name on them,<br>13 for example.<br>14 Did you -- did you report to him or what --<br>15 well, let me ask you this. Who did he work for<br>16 during the time DIG was being produced?<br>17 MR. HAYES: Objection. Vague, lacks<br>18 foundation, calls for speculation.<br>19 THE WITNESS: Mark Binke worked for<br>20 Universal Cable Productions.<br>21 BY MR. RIDDLE:<br>22 Q Okay. And what did -- what was his<br>23 position then, during the time DIG was being<br>24 produced?<br>25 A I believe at the time he was executive vice<br><br>Page 28<br>1 president.<br>2 Q Okay. And you were a vice president,<br>3 right?<br>4 A That is correct.<br>5 Q Okay. So did you then -- was he -- well,<br>6 did you have a boss when you -- when you were<br>7 working on DIG?<br>8 A Yes, I did. | jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 11 Q And who was it?<br><br>13 THE WITNESS: Yes, I did. And that was<br>14 Mark Binke.<br>15 BY MR. RIDDLE:<br>16 Q Okay. And on DIG, the pilot was produced<br>17 in Israel, correct?<br>18 A That is correct.<br>19 Q All right. And then the next five episodes<br>20 were produced elsewhere, correct?<br>21 A That is correct.<br>22 Q And do you recall approximately when<br>23 Episode 2 was filmed?<br><br>Page 29<br>1THE WITNESS: Episode 2 was done in two<br>2 separate places. It started filming in Croatia,<br>3 approximately September 1st, and then in<br>4 Albuquerque, approximately October 2nd.<br>5 BY MR. RIDDLE:<br>6 Q And is that in year 2014?<br>7 A Correct, yes.<br>8 Q Okay. And when was Episode 3 filmed?<br><br>11 THE WITNESS: Episode 3 was filmed at the<br>12 same time. They were in conjunction with each<br>13 other.<br>14 BY MR. RIDDLE:<br>15 Q Okay. What about Episode 4? When was it | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 16 filmed?<br><br>19 THE WITNESS: Episode 4 was in conjunction<br>20 with the Croatia piece, which would have been<br>21 September 1st. And the Albuquerque piece would have<br>22 been a couple weeks after the previous episodes in<br>23 Albuquerque.<br>24 BY MR. RIDDLE:<br>25 Q And when was Episode 5 filmed?<br><br>Page 30<br>3 THE WITNESS: In conjunction with Episode<br>4 4, both in Croatia and in Albuquerque.<br>5 BY MR. RIDDLE:<br>6 Q And then how about, when was Episode 6<br>7 filmed?<br><br>10 THE WITNESS: Episode 6 was done in that<br>11 September period in Croatia and would have been the<br>12 latter part of the time in Albuquerque.<br>13 BY MR. RIDDLE:<br>14 Q So all five of those were -- portions were<br>15 filmed in both Croatia and New Mexico; is that<br>16 correct?<br><br>19 THE WITNESS: That's correct.<br>20 BY MR. RIDDLE: | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 21 Q Okay. And what was the reason that both<br>22 those locations were used for these episodes?<br><br>25 THE WITNESS: When we had to leave Israel,<br><br>Page 31<br>1 we had to match continuity of our locations and<br>2 exteriors and interior sets, a lot of what we'd<br>3 established already from the pilot.<br>4 One city alone would not have done --<br>5 achieved that because it was very difficult to match<br>6 City of Jerusalem, exterior and interior<br>7 architecture, anywhere other than Jerusalem.<br>8 So we needed to find two areas, one that<br>9 would handle the interiors and the second to match<br>10 the exteriors that are unique to that area.<br>11 BY MR. RIDDLE:<br>12 Q So were the -- the exterior -- was the<br>13 exterior part, then, primarily done in Croatia for<br>14 those episodes?<br><br>17 THE WITNESS: That is correct.<br><br>Page 32<br>1 What was New Mexico used for, in terms of<br>2 the production for DIG?<br>3 A It was used for predominantly the | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 4 interiors, stage builds, and any locations in that<br>5 area that we could -- that worked for the creative<br>6 needs of the show.<br><br>15 Q Who decided that the production would --<br>16 would be relocated in Croatia?<br><br>19 THE WITNESS: It was a group decision.<br>20 BY MR. RIDDLE:<br>21 Q And who was in the group?<br>22 A It was myself, our director, our production<br>23 designer, and our producers.<br><br>Page 34<br>1 Q Well, in your own words, then, what was<br>2 your -- what exactly was your role with reference to<br>3 DIG?<br><br>5 THE WITNESS: I oversee what their process<br>6 is in ensuring that they're being fiscally<br>7 responsible and creatively relevant to what the<br>8 project needs, in addition to any administration<br>9 and -- you know, and making sure that the corporate<br>10 needs are taken care of, as well.<br>11 BY MR. RIDDLE:<br>12 Q And you said you were a senior vice | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 13 president. That's at this point in time, correct? <br> 14 A That's correct. <br> 24 Q Okay. When -- when was the production of <br> 25 DIG completed? <br><br> Page 35 <br> 1 A The final six episodes were completed <br> 2 approximately November of 2014. <br> 3 Q Okay. <br> 4 A The entire production was approximately <br> 5 February of 2014 -- '15. Sorry. <br><br> Page 36 <br> 4 BY MR. RIDDLE: <br> 5 Q And why was Croatia chosen as a location <br> 6 for filming DIG? <br> 7 A We had to find a place that matched the <br> 8 Jerusalem stone. There is a very pale-like colored <br> 9 stone that is unique to the Mediterranean area, and <br> 10 Jerusalem, specifically, has a building mandate that <br> 11 requires that the entire city be built with that. <br> 12 It's very identifiable. <br> 13 In order to match that, we had to stay in <br> 14 certain regions that had a similar-type stone, which <br> 15 kept us into the Mediterranean, Adriatic Sea arena. <br> 16 And we looked at four or five jurisdictions that we | |

**1293**

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 17 thought might work.<br>18 And eventually it came to find that Croatia<br>19 would be the best place for the time that we had to<br>20 shoot at.<br><br>Page 37<br>22 Q When -- when the group decided to use<br>23 Croatia, did it also plan to also use New Mexico at<br>24 that point in time, or did that decision come later?<br><br>Page 38<br>2 THE WITNESS: The decision to be involved<br>3 with New Mexico was happening at the same time. My<br>4 recollection is, we thought of New Mexico as the<br>5 best anchor for aesthetic reasons and infrastructure<br>6 reasons while we were locking in the idea of<br>7 Croatia.<br><br>Page 43<br>17 Q And did you say that there was a finance<br>18 department that was also associated with DIG?<br>19 A Yes. We have a finance department that<br>20 involves estimating and all things involving the | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 21 flow of money on our shows.<br>22 Q And who was responsible for that department<br>23 in connection with DIG?<br><br>Page 44<br>1 THE WITNESS: BJ Markus was what we called<br>2 our controller on the show.<br>3 BY MR. RIDDLE:<br>4 Q Now, is there a term that you used in your<br>5 business known as a locked budget, l-o-c-k-e-d?<br>6 A Yes, there is.<br>7 Q What is that?<br>8 A Prior to actually filming, there is a lot<br>9 of movement in the budget, in terms of -- you<br>10 estimate early on and then when you finally do deals<br>11 with actors and crew members and lock in locations<br>12 and figure out what things really cost, to the best<br>13 of your ability at that time before you start<br>14 shooting, you then lock the budget with those<br>15 revised estimates.<br>16 Q Does that mean that there's initially sort<br>17 of a preliminary budget that is prepared that<br>18 precedes the locked budget?<br>19 A That is correct.<br>20 Q Okay. And who -- who are -- not | Plaintiff's Objections:<br>Page 46:20-21; 46:24-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 47:1-7; 47:10-18; 47:21-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 21 necessarily the individuals, but is -- is -- what<br>22 department is responsible for coming up with these<br>23 budget numbers?<br><br>Page 45<br>1 THE WITNESS: It's a -- it's a bit of a<br>2 tiered system. It starts with our estimating<br>3 department. And, in this case, we relied heavily on<br>4 the information from the production service company<br>5 that we used in Israel, because a lot of the numbers<br>6 were new to us, in terms of how their jurisdiction<br>7 worked and how costs worked.<br>8 It starts with them and part -- in parcel<br>9 with myself, having some intel of what our<br>10 above-the-line costs will be. And then BJ would<br>11 have a say in certain things in knowing how to<br>12 fine-tune any union rates and labor rates that need<br>13 to be adjusted.<br>14 And then our producer, Mark Winemaker,<br>15 would get involved, helping shape what he starts to<br>16 learn, in terms of, this needs to be billed, that's<br>17 going to be a location. How those costs evolve. | Plaintiff's Objections:<br>Page 48:1-3<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 18 And our local UPM and line producer as well in<br>19 Israel would have been involved in that. And it's<br>20 an information-gathering process.<br><br>Page 46<br>20 Q Which portion of the production was<br>21 Northern Entertainment Productions involved in?<br><br>24 THE WITNESS: They were the company of<br>25 record for the crew in Albuquerque, in New Mexico.<br><br>Page 47<br>1 BY MR. RIDDLE:<br>2 Q Was -- was Universal Cable Productions also<br>3 involved in the production in New Mexico?<br>4 A Yes.<br>5 Q How was -- how was -- how was the<br>6 responsibility for the production divided up between<br>7 those two?<br><br>10 THE WITNESS: Loosely. The -- anybody<br>11 hired -- a New Mexico resident, would have been<br>12 hired through Northern Entertainment. And anybody<br>13 who was not a New Mexico resident, would be hired | Plaintiff's Objections:<br>Page 6:6-9; 6:12; 6:16-18; 6:21<br>MIL,402,403<br><br>Defendant's Response:<br>NO DESIGNATED DEPOSITION TESTIMONY IN THIS PAGE RANGE<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 14 under Universal Cable Productions. That's, to the<br>15 best of my knowledge, the way it divides up.<br>16 BY MR. RIDDLE:<br>17 Q Okay. What's the reason for that<br>18 distinction?<br><br>21 THE WITNESS: I cannot say with great<br>22 confidence. It's not my area of expertise, but I<br>23 believe it has to do with the tax credit.<br>24 BY MR. RIDDLE:<br>25 Q Did Northern Entertainment -- so Northern<br><br>Page 48<br>Entertainment Productions was not involved in the<br>2 production in Israel or Croatia; is that correct?<br>3 A That is correct.<br>4 Q I'm going to hand you a document that was<br>5 previously marked as Exhibit 294.<br>6 And just, first, if you look at the top two<br>7 emails, is this relating to an estimate for the cost<br>8 of the production of the pilot, plus the -- plus<br>9 Episodes 2 through 6 of DIG?<br><br>12 THE WITNESS: Yes, I'm familiar with this.<br><br>18 THE WITNESS: That was an estimate done at | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 19 the time, which we would have -- and in combination<br>20 of slithering -- sort of shaping a budget and also<br>21 understanding what the fiscal tolerance was of the<br>22 studio and the network at the time.<br>23 BY MR. RIDDLE:<br>24 Q Were you involved in the -- well, was it a<br>25 group that basically came up with this $25 million<br><br>Page 49<br>1 estimate?<br><br>4 THE WITNESS: Typically, what happens on<br>5 any show is studio and network, at a higher-level<br>6 than myself, will decide how much money they want to<br>7 put into a show, in terms of making it<br>8 cost-effective for them, or a large tent-pole-type<br>9 production, or is it a -- to be designed as a<br>10 lower-budget show that would be seen later.<br>11 In this case, I was not involved in who<br>12 decided the 25 million, but that is the direction<br>13 that they give me in general and I see if I can fit<br>14 it into that.<br>15 BY MR. RIDDLE:<br>16 Q And this was in -- this was in the first<br>17 part of December of 2013, correct? | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 20 THE WITNESS: That is correct.<br>21 BY MR. RIDDLE:<br>22 Q Okay. And then after this, ultimately<br>23 there -- there were locked budgets prepared; is<br>24 that -- is that true?<br><br><br>Page 50<br>2 THE WITNESS: Ultimately, yes.<br>3 BY MR. RIDDLE:<br>4 Q There -- there's a -- a document that was<br>5 marked yesterday as Exhibit 342.<br>6 The court reporter is going to hand that<br>7 document -- here, I'll hand it to you.<br>8 This was marked as deposition Exhibit 342<br>9 yesterday.<br>10 A Uh-huh.<br>11 Q And the first page appears to be an email<br>12 from Ms. Markus, dated June 12, 2014, to Mr. Binke<br>13 and yourself --<br>14 A Uh-huh.<br>15 Q -- referencing locked budgets; is that<br>16 correct?<br>17 A That is correct.<br><br>Page 51<br>1 BY MR. RIDDLE:<br>2 Q Does that reflect the total budget for the<br>3 pilot and Episodes 2 through 6 in the amount of<br>4 $25,747,311? | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 7 THE WITNESS: To the best of my -- yes, it<br>8 looks as though that was the -- the target that we<br>9 aimed for in these --<br>10 BY MR. RIDDLE:<br>11 Q Okay. And that -- that includes an<br>12 estimate for the pilot and then also a separate<br>13 estimate for the following five episodes, correct?<br><br>16 Q Those are done separately?<br>17 A That is correct.<br>18 Q And the –<br><br>21 Q -- per episode budgeted amount for Episodes<br>22 2 through 6, it's $3,541,498 per episode, correct?<br><br>25 THE WITNESS: That is correct.<br><br><u>Page 52</u><br>6 Q Okay. And underneath those three -- those<br>7 numbers, is there an entry for tax credit?<br>8 A Yes, there is.<br>9 Q And that's an estimate, correct?<br><br>12 THE WITNESS: That is correct.<br><br>16 Is that assuming the pilot and then<br>17 Episodes 2 through 6 would have been filmed in<br>18 Israel? | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 21 THE WITNESS: That is correct.<br><br>Page 72<br>18 (Exhibit 352 was marked for<br>19 identification by the court reporter<br>20 and is attached hereto.)<br>21 MR. RIDDLE: This document is labeled 352.<br>22 Q And is that an email from Stephen Smith to<br>23 you dated April 16, 2014?<br>24 A That is correct.<br><br><br><br>Page 73<br>10 Q And Mr. Smith says, "I have completed a<br>11 security and crisis assessment for Israel,<br>12 concentrating on Tel Aviv and Jerusalem which you<br>13 will find attached," correct?<br>14 A That is correct. | <br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 72:18-24<br>MIL,402,403<br><br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br><br>Plaintiff's Objections:<br>Page 73:10-14<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| Page 74<br>2 BY MR. RIDDLE:<br>3 Q And underneath the email by Mr. Smith,<br>4 it -- it states, "Stephen Smith, Head of Security,<br>5 Europe, International Security & Crisis Management,"<br>6 correct?<br>7 A Yes, it does.<br>8 Q And did you understand that he was<br>9 affiliated with NBCUniversal --<br>10 MR. HAYES: Objection. Vague.<br>11 BY MR. RIDDLE:<br>12 Q -- at this time?<br>13 A Yes.<br>14 Q And why was -- why was Mr. Smith involved<br>15 in security issues with reference to DIG?<br><br>18 THE WITNESS: Best of my understanding, he<br>19 was assigned to our show from the head of security,<br>20 head of North America.<br><br>Page 75<br>6 Q If you look on -- well, he -- attached to<br>7 this email, there is a document entitled,<br>8 "NBCUniversal Season 1 DIG Israel, Crisis and<br>9 Security Assessment April 2014," correct?<br>10 A That is correct.<br>11 Q And is it your understanding that Mr. Smith<br>12 prepared this? | of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 74:2-15; 74:18-20<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 75:6-12; 75:15-18; 75:21<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 15 THE WITNESS: That is correct.<br>16 BY MR. RIDDLE:<br>17 Q And -- and did you rely on the information<br>18 that Mr. Smith provided to you in this report?<br><br>21 THE WITNESS: I did.<br><br>Page 76<br>4 You see there is a section labeled<br>5 "Security Summary"?<br>6 A Uh-huh.<br>7 Q And the first sentence says, "Terrorist<br>8 attacks by Palestinian militants have<br>9 declined considerably since 2002<br>10 though there continues to be an<br>11 underlying risk from terrorism,<br>12 especially against perceived 'soft<br>13 targets' such as public places and<br>14 public transport."<br>15 Did I read that correctly?<br>16 A That is correct.<br>17 Q And then would you need -- would you read<br>18 the -- out loud the sentence in the -- the first<br>19 sentence in the next paragraph.<br>20 A The "arbitrary," in that --<br>21 Q Yes, yes, yes.<br>22 A "Arbitrary rocket fire by militant<br>23 groups operating in Gaza occurs with<br>24 varying degrees of frequency and<br>25 intensity and mostly targets areas | to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 76:4-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| Page 77<br>1 within 25 miles from the Gaza border;<br>2 some groups, however, also possess<br>3 long-range rocket capabilities to hit<br>4 larger urban centres further afield.<br>5 Therefore, in the event of rocket<br>6 fire, personnel visiting southern<br>7 areas closer to Gaza are advised to<br>8 follow security advice and<br>9 instructions of the emergency services<br>10 and civil authorities."<br>11 Q And then on -- if you go to Page 6 of his<br>12 report --<br>13 A Uh-huh.<br>14 Q -- under -- there's a heading "Jerusalem,"<br>15 correct?<br>16 A Correct.<br>17 Q Would -- would you just read the first<br>18 sentence that's under that.<br>19 A "The security" --<br>20 THE REPORTER: A bit more slowly for me, if<br>21 you would, please.<br>22 THE WITNESS: Sure.<br>23 "The security environment remains<br>24 complex and hazardous, to varying<br>25 degrees in Jerusalem, the West Bank,<br><br>Page 78<br>1 and the Gaza Strip. Travelers to<br>2 these areas are advised" – | Plaintiff's Objections:<br>Page 77:1-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 78:1-2<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| Page 85<br>1 Q This document has been previously marked as<br>2 Exhibit 106.<br>3 And there are two emails on here and<br>4 they're dated May 22, 2014, correct?<br><br>7 THE WITNESS: That is correct.<br>8 BY MR. RIDDLE:<br>9 Q And in the -- the bottom one, that's<br>10 actually an email to you from Mr. Smith, subject,<br>11 "Security Messages," correct?<br>12 A That is correct.<br>13 Q And he references an attached security<br>14 message and update, correct?<br>15 A That is correct.<br><br>Page 86<br>16 Q And then it says, "But, the security<br>17 situation locally and across the<br>18 region can change quickly and we will<br>19 be filming in locations where the<br>20 security situation is volatile and<br>21 changeable. Events outside of Israel<br>22 can have profound effect on the threat<br>23 level at each location."<br>24 Did I read that correctly?<br>25 A That is correct. | giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 85:1-4; 85:7-15<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 86:16-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| Page 87<br>9 Q And then would you read the text that<br>10 appears that relates to Palestinian extremists --<br>11 extremists. It's the first paragraph there on the<br>12 top of the page that at the bottom is labeled<br>13 UCP001879.<br>14 A "Palestinian Extremists. Most<br>15 frequently we see extremists from the<br>16 Gaza Strip firing rockets into Israel.<br>17 These typically only hit the<br>18 southern" -- "hit in southern Israel,<br>19 but we saw in late 2012, that they do<br>20 have the capability to reach as far<br>21 as" -- "far north as Tel Aviv and<br>22 Jerusalem, but with very limited<br>23 accuracy (which resulted in a minimal<br>24 threat against life)."<br><br>Page 89<br>7 Q All right. This is a document that's<br>8 marked Exhibit 107 previously.<br>9 And the top email is one from you to<br>10 Stephen Smith dated June 14, 2014, correct?<br>11 A That is correct.<br>12 Q Below that is an email from Jay Footlik to<br>13 you, correct?<br>14 A That is correct.<br>15 Q Do you have an understanding of who he is?<br>16 A Yes, I do.<br>17 Q Who -- is he? | ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 87:9-24<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 89:7-19<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 18 A He was our political advisor while we were<br>19 shooting in Israel.<br><br>Page 90<br>2 Q And in his email to you he says, "Good<br>3 we're not in Jerusalem next week. Could be<br>4 heightened tensions and certainly heightened<br>5 security," correct?<br>6 A That is correct.<br>7 Q And then below that, in large print, it<br>8 says, "PM to Kerry: Feared abductions as a result<br>9 of Hamas entering into government."<br>10 And then it says, "Prime Minister<br>11 Benjamin Netanyahu told US Secretary<br>12 of State John Kerry on Friday that<br>13 since the announcement of a unity<br>14 government between the" -- "between<br>15 the Fatah-led PLO and Hamas in April,<br>16 'the situation on the ground has been<br>17 destructive.'"<br>18 Did I read that correctly?<br>21 THE WITNESS: Yes, you did.<br>22 BY MR. RIDDLE:<br>23 Q And did you believe this information to be<br>24 accurate when you received it?<br><br>Page 91<br>1 foundation.<br>2 THE WITNESS: Jay forwarded to me an<br>3 article -- this is an article from The Times of | ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 90:2-18; 90:21-24<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 91:1-7<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 4 Israel, which he had -- he monitored and sent it to<br>5 me.<br>6 At that point, I forwarded it on to Stephen<br>7 Smith to get Stephen Smith's advice.<br><br>Page 92<br>5 Q This document's labeled -- I'm sorry, was<br>6 previously marked as Exhibit 112.<br>7 And this is an email exchange between you<br>8 and Mr. Smith on June 15, 2014, correct?<br>9 A That is correct.<br><br>16 Q And Mr. Smith is basically, as he states,<br>17 "providing you some current information on the<br>18 situation and recommendations on security from our<br>19 sources," correct?<br><br>22 THE WITNESS: That is correct. | of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 92:5-9; 92:16-18; 92:22<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |
| Page 93<br>8 Q He's got a heading that says, "Current<br>9 Situation," correct?<br>10 A He does.<br>11 Q And then he references that there were<br>12 three Jewish Israeli youths kidnapped on June 12 of<br>13 2014, correct?<br>14 A That is correct.<br>15 Q And underneath that he's got a blurb that<br>16 says, "Following the incident, the Israeli | Plaintiff's Objections:<br>Page 93:8-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 17 Defense Forces initiated broad search 18 and rescue operations on June 13, with 19 significant troop deployments reported 20 in the Hebron area and throughout the 21 West Bank. On June 14, the number of 22 IDF soldiers taking part in the 23 operation was increased to 2,500, and 24 the Beit Guvrin area west of Hebron 25 inside Israel was declared a closed<br><br>Page 94<br>1 military zone."<br>2 Did you believe that information to be 3 accurate?<br><br>8 Q And this was marked Exhibit 113 previously.<br>9 And this is -- this is also an exchange of 10 emails between you and Stephen Smith, correct?<br>11 A That is correct.<br>12 Q And these -- these took place on -- or this<br>13 exchange took place on June 15, 2014, correct?<br>14 A Yes.<br>15 Q And according to the earlier email in this<br>16 document from Mr. Smith to you, he references a<br>17 conversation with you regarding the current security<br>18 situation in Israel, correct?<br><br>21 THE WITNESS: Yes, it does.<br>22 BY MR. RIDDLE: | Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 94:1-3; 94:8-18; 94:21-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 95:3-18; 95:21-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 23 Q And then this time frame, mid-June, 2014,<br>24 how often were you in contact with Mr. Smith about<br>25 the security situation in Israel?<br><br>Page 95<br>3 THE WITNESS: Daily.<br>4 BY MR. RIDDLE:<br>5 Q And why is that?<br>6 A As noted, the situation because of the<br>7 missing hitchhikers had heated up, and we were<br>8 shooting in Jerusalem, in particular in The Old<br>9 City.<br>10 Q And toward the bottom of the page,<br>11 Mr. Smith references that, "In the past 48 hours,<br>12 the extent of Israeli military operations in Hebron<br>13 and its environs have significantly increased,<br>14 highlighted by the deployment of over 2,500 IDF<br>15 soldiers to the area," correct?<br>16 A That is correct.<br>17 Q And did you believe this information to be<br>18 accurate when you received it?<br><br>21 THE WITNESS: Yes, I did.<br>22 BY MR. RIDDLE:<br>23 Q Then the next document I'll hand you is --<br>24 was marked previously as Exhibit 115.<br>25 And is this also a series of emails | binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br><br><br><br>Plaintiff's Objections:<br>Page 96:1-3<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| **Page 96**<br>1 exchanged between you and Stephen Smith on June 15,<br>2 2014?<br>3 A That is correct.<br>4 Q And then he says in the first -- in the top<br>5 email in the first paragraph, "The current<br>6 advise [sic] from MAX Security, which<br>7 is coming overnight and as a result of<br>8 a further deterioration of security,<br>9 is to avoid all activity in The Old<br>10 City."<br>11 Do you see that?<br>12 A Yes.<br><br>20 Q He goes on to say, "Reports indicate<br>21 that two rockets were fired from the<br>22 Gaza Strip toward Israel's southern<br>23 city of Ashkelon during the evening<br>24 hours of June 15, with both<br>25 intercepted by the Iron Dome<br><br>**Page 97**<br>1 anti-missile battery." Battery, yeah.<br>2 Do you see that language?<br>3 A Yes, I do.<br><br>19 Q This document is marked Exhibit 355.<br><br>25 Q Is that an email that you wrote to Mark | Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>**Plaintiff's Objections:**<br>Page 96:4-12; 96:20-25<br>MIL,402,403,802<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>**Plaintiff's Objections:**<br>Page 97:1-3<br>MIL,402,403<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| | its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>**Plaintiff's Objections:**<br>Page 97:19: 97:25<br>MIL,402,403<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| Page 98<br>1 Binke on June 16, 2014, concerning DIG issues?<br>2 A That is correct.<br>3 Q And would you read what -- what you said to<br>4 Mr. Binke in this email, at least, you know, the<br>5 portion that, obviously, hasn't been redacted.<br>6 A "Security is getting more concerned<br>7 about our presence in the old city for<br>8 thursday night. I will work with<br>9 production to have a b plan. In the<br>10 meantime we will plan to talk when u r<br>11 all in office today which will be<br>12 later in our day and security will<br>13 have more intel."<br>14 Q Okay. And when you say "security will have<br>15 more intel," were you anticipating additional<br>16 information from Stephen Smith at this time?<br>17 A That's correct.<br><br>22 Q This is a document that's been marked as<br>23 Exhibit 356.<br>24 And this exhibit includes various emails<br>25 between you and Mr. Smith concerning the security<br><br>Page 99<br>1 situation in Israel, correct?<br>2 A That is correct. | Plaintiff's Objections:<br>Page 98:1-17; 98:22-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 99:1-4; 99:7-16<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 3 Q And this is either in June -- on June 15 or<br>4 June 16 of 2014, correct?<br><br>7 THE WITNESS: That is correct.<br>8 BY MR. RIDDLE:<br>9 Q And on the first page, there's an email to<br>10 you from Mr. Smith, and he says, "Until the current<br>11 security situation is resolved and there is a<br>12 normalisation of events all production staff and<br>13 visitors would be advised to adhere to the following<br>14 security advice," and then he provides certain<br>15 recommendations, correct?<br>16 A That is correct.<br><br>Page 100<br>12 Q And in fact, Mr. Smith says, "There<br>13 is significant Israeli Defense Force<br>14 activity in the West Bank and there<br>15 has been an escalation and tension<br>16 across the region including multiple<br>17 arrests/detentions of Hamas members<br>18 and supporters, mortar fire and<br>19 demonstrations which have turned<br>20 violent," correct?<br><br>24 THE WITNESS: That is correct.<br><br>Page 103<br>1 Q And then this -- this document's marked as | giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 100:12-20; 100:24<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 103:1-17<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 2 Exhibit 358.<br>3 And the top email, is that one you wrote on<br>4 June 16, 2014, to Curt Williams and Kurt Ford with a<br>5 copy to Mr. Mark Binke?<br>6 A That is correct.<br>7 Q And would you read the -- the sentence that<br>8 you -- that you wrote in that email to Mr. Williams<br>9 and Mr. Ford and Mr. Binke?<br>10 A "Kurt, please advise, should the issue in<br>11 Israel heighten to a point security advises us to<br>12 not shoot anywhere in Israel, what is our insurance<br>13 coverage?"<br>14 Q Okay. And -- and why were you asking about<br>15 insurance coverage in this context?<br>16 A I was curious about what our options would<br>17 be.<br><br>Page 104<br>22 Q If you look -- look in Exhibit 38, you will<br>23 see there are numbers on the --<br>24 A Yep.<br>25 Q -- bottom right.<br><br>Page 105<br>1 If you go to the one that says<br>2 "ATL001605" and the -- the heading at the top says | misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 104:22-25<br>104a,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602.<br><br>Plaintiff's Objections:<br>Page 105:1-6; 105:8-13; 105:17-21; 105:25<br>104a,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 3 "Section 3, Extra Expense"?<br>4 A Yep.<br>5 Q Have you ever looked at this section of<br>6 this insurance policy?<br><br>8 THE WITNESS: No, I have not.<br>9 BY MR. RIDDLE:<br>10 Q So as far as insurance issues are<br>11 concerned, is that something that you rely on others<br>12 for, you know, advising you?<br>13 A Absolutely –<br>17 Q Okay. So is it -- it fair to say in<br>18 connection with DIG and a possible insurance claim,<br>19 you did not at any time look at the insurance policy<br>20 to try to determine what coverage might be<br>21 available?<br><br>25 THE WITNESS: That is -- that is not my<br><br>Page 106<br>1 expertise so, no, I would not.<br><br>3 Q You would not have looked at the policy?<br>4 A Correct. | Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602.<br><br>Plaintiff's Objections:<br>Page 106:1; 106:3-4<br>104a,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602.<br><br>Plaintiff's Objections:<br>Page 109:4-8<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| Page 109<br>4 BY MR. RIDDLE:<br>5 Q This document's labeled 360.<br>6 And is this a couple of emails between you<br>7 and Mr. Stephen Smith dated June 17, 2014?<br>8 A Yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 110<br><br>13 Q This document was previously marked as<br>14 Exhibit 119.<br>15 And this is a couple of emails that you and<br>16 Mr. Smith exchanged on June 17, 2014, correct?<br>17 A That is correct.<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 112<br>2 Q Now, if we look at Mr. Smith's report, it<br>3 appears under your email where you thanked him for<br>4 it, he ref- -- in the first paragraph he references<br>5 "Clashes between Israeli Defense Forces and<br>6 Palestinian youth," correct?<br><br>9 THE WITNESS: That is correct. | to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 112:2-6; 112:9-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 113:1-3; 113:6<br>MIL,402,403 |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 10 BY MR. RIDDLE:<br>11 Q And then in the next paragraph, he says,<br>12 "The high level of military preparedness<br>13 demonstrated by the IDF, and expanding<br>14 operations, are liable to elevate<br>15 tensions with West Bank Palestinian<br>16 residents, increasing the possibility<br>17 of civil unrest or militancy,"<br>18 correct?<br>19 A That is correct.<br>20 Q And he goes on to say, "With this in<br>21 mind, it is assessed that over the<br>22 coming days, there remains a risk that<br>23 tensions between Arab and Jewish<br>24 groups in both the West Bank and<br>25 Jerusalem will continue to elevate,<br><br>Page 113<br>1 potentially manifesting a nationally<br>2 motivated attacks, or scuffles between<br>3 rival communities," correct?<br><br>6 THE WITNESS: That is correct.<br><br>Page 114<br>3 Q Ms. Richmond, I'm going to hand you what's<br>4 marked as Exhibit 361.<br>5 And is that an exchange of emails between<br>6 you and Stephen Smith on June 18, 2014?<br>7 A That is correct.<br>8 Q And in his email to you, he says:<br>9 "Theoretically, missiles from Gaza<br>10 can reach most areas within the<br>11 country."<br>12 Correct? | Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 114:3-13<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 116:5-18; 116:21<br>MIL,402,403, 802 |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 13 A That is correct.<br><br>Page 116<br>5 Q I'm going to hand you Exhibit 363.<br>6 A Uh-huh.<br>7 Q And these are also emails between you and<br>8 Mr. Smith in June of 2014?<br>9 A Correct.<br>10 Q Okay. And on June 22 -- I'm looking at the<br>11 first page -- on June 22, 2014, he wrote you and<br>12 said, "Israel & Palestinian territories:<br>13 Two rockets fired from Gaza strip<br>14 towards Israel during the morning<br>15 hours of June 22; Israeli Air Force<br>16 fighter jets target four militant<br>17 sites in Gaza strip."<br>18 Correct?<br><br>21 THE WITNESS: Yes, it says that. | **Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>**Plaintiff's Objections:**<br>Page 120:16-25<br>MIL,402,403<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| <br>Page 120<br>16 Q And then this was a document marked as<br>17 Exhibit 125.<br>18 And is that an email you wrote to<br>19 Mr. Stephen Smith on June 30, 2014?<br>20 A That is correct.<br>21 Q And you say, "I'm hearing things are<br>22 heating up in Israel."<br>23 Correct?<br>24 A That is correct.<br>25 Q Then this was marked as Exhibit 127.<br><br>Page 121<br>1 And this includes a report from Mr. Smith<br>2 to you on security issues dated June 30, 2014,<br>3 correct?<br>4 A That's correct.<br>5 Q And in that top email, the second<br>6 paragraph, it states:<br>7 "Reports indicate that the IDF is<br>8 currently deploying reinforcements<br>9 near Hebron, while clashes have been<br>10 reported in Haloul."<br>11 Correct?<br><br>14 THE WITNESS: That is correct. | giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 121:1-11<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 123:12-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| Page 123<br>12 Q This is a document marked previously as<br>13 Exhibit 131.<br>14 And the top email is one from Mark Binke to<br>15 Stephen Smith and you on July 1, 2014, correct?<br>16 A That is correct.<br>17 Q And he says:<br>18 "Stephen, Israel hit Hamas in Gaza<br>19 with several targeted strikes, would<br>20 like to hop on the phone today to<br>21 discuss the ongoing security and<br>22 safety of our cast and crew. Want to<br>23 know what measures are being taken and<br>24 to ensure our employees are protected.<br>25 Thanks."<br><br>Page 124<br>1 Do you see that?<br>2 A I do.<br><br>17 Q This is a document that was previously<br>18 marked as Exhibit 132.<br>19 And is this an update from Mr. Stephen<br>20 Smith to you and Mr. Binke concerning the situation<br>21 in Israel at that time?<br><br>24 THE WITNESS: Yes, it is. | ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 124:1-2; 124:17-21; 124:24<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 125:1-10; 125:13-17; 125:20-22<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| <u>Page 125</u><br>1 Q Down under "Assessments," on the first<br>2 page, Mr. Smith says:<br>3 "Overall, the potential escalation<br>4 in hostilities in both the West Bank<br>5 and Gaza significantly increases the<br>6 possibility that Israel's Security<br>7 Cabinet could decide to launch a<br>8 scaled aerial offensive against Hamas<br>9 over the coming days."<br>10 Do you see that?<br><br>13 THE WITNESS: Yes, I do see that.<br>14 BY MR. RIDDLE:<br>15 Q And did you believe that to be accurate<br>16 information provided to you and Mr. Binke by<br>17 Mr. Smith?<br><br>20 THE WITNESS: I believe it to be<br>21 information Stephen Smith was sending to us and had<br>22 no reason to believe that it was not accurate.<br><br><u>Page 126</u><br>2 Q And this document's marked as Exhibit 366.<br>3 Oops. I gave you both copies. Sorry.<br>4 There you go.<br>5 And here we have an update from Mr. Smith<br>6 to you and Mr. Binke dated July 1st, 2014, and a<br>7 response from Mr. Binke thanking him for that, | jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 126:1-8; 126:1-25<br>MIL,402,403,802<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 127:1-4; 127:7<br>MIL,402,403, 802<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 8 correct?<br><br>11 THE WITNESS: That is correct.<br>12 BY MR. RIDDLE:<br>13 Q And Mr. Smith says:<br>14 "The recommendations from a<br>15 variety of sources are that travel to<br>16 Israel can continue but erring on the<br>17 side of caution I would recommend that<br>18 our cast and crew (Non-Local) do not<br>19 travel to Israel unless it is<br>20 absolutely necessary and business<br>21 imperative until the full extent of<br>22 the Israeli response is clearer. We<br>23 are not at a situation where<br>24 non-Israeli's should be leaving the<br>25 country."<br><br>Page 127<br>1 Do you see that?<br>2 A I do.<br>3 Q Did you believe that information to be<br>4 accurate?<br><br>7 THE WITNESS: Yes, I did.<br><br>Page 128<br>11 Q This was marked Exhibit 15 previously.<br>12 And on the second page, at the bottom, is<br>13 that an email from you on June 16, 2014, to<br>14 Curt Williams and Kurt Ford?<br>15 A Yes, it is.<br>16 Q And you say:<br>17 "Please -- Kurt, please advise.<br>18 Should the issue in Israel heighten to | binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 128:11-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 129:1-18; 129:24-25<br>MIL,402,403 |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 19 a point security advises us not to<br>20 shoot anywhere in Israel, what is our<br>21 insurance coverage?" Correct?<br>22 A That is correct. This is the same email<br>23 that you showed me earlier.<br>24 Q Right.<br>25 Do you recall getting a response from<br><br>Page 129<br>1 Mr. Ford to this inquiry?<br>2 A I don't recall. I'm sure I got some sort<br>3 of response, but I don't recall what it was or when<br>4 it was at this point.<br>5 Q This document was previously marked as<br>6 Exhibit 56.<br>7 And the first email on the exhibit is from<br>8 Kurt Ford to Susan Weiss, Malika Adams, Jessica<br>9 Weiss and then with a copy to several people,<br>10 including yourself, correct?<br>11 A Correct.<br>12 Q And the email underneath that is also dated<br>13 July 1st, 2014 from Susan Weiss to Mr. Ford.<br>14 And she says:<br>15 "Andrea and I discussed this<br>16 briefly when it first came up and we<br>17 didn't see how the policy would<br>18 respond," correct?<br><br>24 THE WITNESS: That is what the sentence<br>25 says. | **Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>**Plaintiff's Objections:**<br>Page 130:23-25<br>MIL,402,403<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>**Plaintiff's Objections:**<br>Page 131:1-25<br>MIL,402,403 |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| Page 130<br>23 Q This document is marked Exhibit 368. And<br>24 does this contain an update on security issues from<br>25 Stephen Smith on July 2, 2014?<br><br>Page 131<br>1 A Yes, it does.<br>2 Q And there's a category under, "Risk<br>3 Implications."<br>4 Would you -- would you read that language<br>5 for us.<br>6 A "While both sides most likely<br>7 want to avoid a broad confrontation<br>8 similar to that of December 2012, the<br>9 risk of unintended escalation is now<br>10 higher. The most likely Israeli<br>11 response to the deaths of the<br>12 teenagers includes" targeting --<br>13 "targeted killings of Hamas leaders,<br>14 as well as airstrikes on known weapons<br>15 caches and rocket launch sites in<br>16 Gaza. A broader...war would become<br>17 more likely if Hamas or other<br>18 Gaza-based militants responded with<br>19 several dozen rockets per day into<br>20 Southern Israel over a sustained<br>21 period. A broader war would result in<br>22 a much higher likelihood of Hamas<br>23 using Fajr-5 rockets, capable of<br>24 reaching Tel Aviv. It would also make<br>25 it more difficult for Palestinian | Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 132:1-6; 132:9<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 135:6-19; 135:24-25 |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| Page 132<br>1 Authority security forces to contain<br>2 civil unrest in the West Bank, and<br>3 prevent Palestinian civilians from<br>4 protesting at the Wall."<br>5 Q And did you rely on this information in<br>6 July that you received here from Mr. Smith?<br><br>9 THE WITNESS: Yes, I did.<br><br>Page 135<br>6 for itself.<br>7 He's only asking for your knowledge. We<br>8 can all --<br>9 THE WITNESS: Thank you.<br>10 MR. HAYES: -- read the email.<br>11 BY MR. RIDDLE:<br>12 Q Did you ever have any communications with<br>13 her, to your knowledge, about the issue of insurance<br>14 coverage?<br>15 MR. HAYES: Objection. Vague, lacks<br>16 foundation.<br>17 THE WITNESS: Not directly.<br>18 BY MR. RIDDLE:<br>19 Q With reference to the issue of possible<br><br>24 foundation.<br>25 THE WITNESS: Kurt Ford. | MIL,402,403, 602<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. The witness has only testified to information within their personal knowledge "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 136:1-14<br>MIL,402,403,602<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. The witness has only testified to facts within the scope of their personal knowledge. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| Page 136<br>1 A Uh-huh.<br>2 Q It says:<br>3 "Unfortunately, I don't think we<br>4 would have coverage for a situation in<br>5 which we voluntarily pulled out of an<br>6 area because of security concerns. In<br>7 order to trigger coverage under the<br>8 production policy, we would need a<br>9 policy trigger as Susan had mentioned,<br>10 and even with that, we'd have to be<br>11 cautious because there is a war<br>12 exclusion on the policy."<br>13 Do you see that?<br>14 A I do see that. | **Plaintiff's Objections:**<br>Page 139:21-25<br>MIL,402,403<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>**Plaintiff's Objections:**<br>Page 140:1-8<br>MIL,402,403<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| <u>Page 139</u><br>21 Q This document is being marked as<br>22 Exhibit 371.<br>23 And is that an email exchange between you<br>24 and Mr. Binke on July 7, 2014?<br>25 A That is correct.<br><br><u>Page 140</u><br>Q And Mr. Binke says to you:<br>2 "Given the escalating conflict on<br>3 the ground, need to know tomorrow<br>4 morning what our insurance provides in<br>5 the event we have to shut down for<br>6 safety, security reasons. Who has<br>7 been handling?" Correct?<br>8 A That is correct.<br><br>18 Q And this is marked Exhibit 372.<br>19 And the top email is from Malika Adams to<br>20 you on July 7, 2014, correct?<br>21 A That is correct.<br>22 Q And she says:<br>23 "Randi, apologies, I sent Kurt a<br>24 note on Thursday but omitted to copy<br>25 you. So far if the only assumption is<br><br><u>Page 141</u><br>1 that we are voluntarily pulling out of<br>2 a certain area because of security<br>3 concerns, I don't think we would have<br>4 coverage for this. If the government<br>5 pulls our permits, or there is an<br>6 active civil authority shutting us<br>7 down, we may have some recourse but<br>8 even that I would say with caution | claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 140:18-25<br>MIL,402,403,602<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. The witness has only testified to facts within the scope of their personal knowledge. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 141:1-11; 141:14; 141:19-25<br>MIL,402,403,602<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 9 since there is a war exclusion on the<br>10 policy that may come into play."<br>11 Correct?<br><br>14 THE WITNESS: That is correct.<br><br>19 Q This is marked as Exhibit 373.<br>20 If you look at the top email, is that from<br>21 you to Malika Adams and Mr. Binke on July 7, 2014?<br>22 A Yes.<br>23 Q And you say:<br>24 "So if we pull out because<br>25 security advises us to, we have no<br><br>Page 142<br>1 coverage?"<br>2 Correct?<br><br>5 THE WITNESS: That is correct.<br><br>7 Q And this document was previously marked as<br>8 Exhibit 300.<br>9 And in this document, the first email is<br>10 Mrs. Adams's response to -- or Ms. Adams's response<br>11 to you about your inquiry where you say, "So if we<br>12 pull out because security advises us to, we have no<br>13 coverage?" Correct?<br><br>16 THE WITNESS: Correct.<br><br>18 Q And Ms. Adams says: | giving rise to Plaintiffs' claims. The witness has only testified to facts within the scope of their personal knowledge. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 142:1-2; 142:5; 142:7-13; 142:16; 142:18-22; 142:25<br>MIL,402,403,602<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. The witness has only testified to facts within the scope of their personal knowledge. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 144:1-6; 144:9-21; 144:24<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 19 "Hi randi [sic], if it's purely"<br>20 voluntary, "I don't think we can find<br>21 coverage under the production policy."<br>22 Correct?<br><br>25 THE WITNESS: That is correct.<br><br><u>Page 144</u><br>1 BY MR. RIDDLE:<br>2 Q All right. And this document is labeled<br>3 375.<br>4 And does that include an email on --<br>5 July 2014 from Mr. Smith to you concerning the<br>6 security situation in Israel?<br><br>9 THE WITNESS: Yes, it does.<br>10 BY MR. RIDDLE:<br>11 Q And about -- I don't know -- two-thirds of<br>12 the way down, in Mr. Smith's email he says:<br>13 "Cross-border fire between the<br>14 Israeli Defense Forces (IDF) and<br>15 Gaza-based militants escalated during<br>16 the evening hours of July 7th, as the<br>17 Israeli government reportedly<br>18 instructed the IDF to steadily<br>19 intensify attacks in the Gaza strip to<br>20 counter rocket and mortar fire."<br>21 Correct?<br><br>24 THE WITNESS: That is what it says.<br><br><u>Page 149</u><br>14 BY MR. RIDDLE:<br>15 Q This is marked Exhibit 382. | its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 149:14-23<br>MIL,402,403,802<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 150:1-5: 150:7 |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 16 And is this an email from Stephen Smith to<br>17 you and others on July 9, 2014, with an update<br>18 concerning the status of security issues in Israel?<br>19 A That is correct.<br>20 Q And one of the things that Mr. Smith says<br>21 is, "Israel reportedly struck some 160 militant<br>22 targets in the Gaza strip."<br>23 Correct?<br><br>Page 150<br>1 THE WITNESS: That is correct. That's what<br>2 it says.<br>3 BY MR. RIDDLE:<br>4 Q Did you believe that to be accurate?<br>5 A Yes, I –<br><br>7 THE WITNESS: -- did.<br><br>Page 153<br>1 BY MR. RIDDLE:<br>2 Q And this was marked as 169, previously.<br>3 And it appears to be an email from<br>4 Mr. Smith to Brian Brady dated July 9, 2014.<br>5 And he says:<br>6 "Just to keep you in the loop, I<br>7 have just had a conference call with<br>8 Mark and Randi and others from NBCU<br>9 and Comcast. Erin and Tom were also<br>10 on the call." | MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 153:1-16; 153:19-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections: |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 11 Does that refresh your recollection about a<br>12 discussion with Stephen Smith and others on July 9,<br>13 2014, concerning security issues in Israel?<br>14 A One moment. Let me just read the rest of<br>15 it.<br>16 Q Sure.<br><br>19 THE WITNESS: I don't remember -- recall<br>20 the specifics of the call, but, I mean, the memo<br>21 speaks for itself as to what the general tone of it<br>22 was.<br>23 BY MR. RIDDLE:<br>24 Q Well, it says:<br>25 "In summary, the update was that<br><br>Page 154<br>1 we appear to still be in the<br>2 escalation phase with continued rocket<br>3 attacks from Gaza. Israel response<br>4 targeting Hamas leadership and<br>5 concealed rocket launchers with the<br>6 possibility of ground troops moving<br>7 in."<br>8 Do you recall that that was, in fact, was<br>9 the situation that was being reported to you back --<br>10 back in early July of 2014?<br><br>13 THE WITNESS: It may have been brought up | Page 154:1-10; 154:13-14<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 157:10-21:157:24<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 14 on the call. I don't recall one way or the other.<br><br>Page 157<br>10 BY MR. RIDDLE:<br>11 Q And this is a document labeled Exhibit 387.<br>12 Is that an email that you received from<br>13 Mark Winemaker on July 9, 2014?<br>14 A It is.<br>15 Q And in the last paragraph, he says:<br>16 "There is no doubt that the IDF<br>17 will complete their operation in Gaza<br>18 with assured victory. However, that<br>19 means many thousands of lives have<br>20 been destroyed."<br>21 Correct?<br><br>24 THE WITNESS: That is what it says. | Plaintiff's Objections:<br>Page 160:10-22; 160:25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |
| Page 160<br>10 Q This was marked as Exhibit 173.<br>11 Is that another security report from<br>12 Stephen Smith to you and Mr. Binke?<br>13 A It is a security summary, yep.<br>14 Q And it's dated July 10, 2014, correct?<br>15 A That is correct.<br>16 Q And down toward the end of the first page,<br>17 Mr. Smith reports that:<br>18 "Much of the analysis is pointing<br>19 to Israel being drawn into a ground<br>20 offensive that it does not want and<br>21 that it has no exit strategy for."<br>22 Correct?<br><br>25 THE WITNESS: That is what this says. | Plaintiff's Objections:<br>Page 161:1-4; 161:24-25<br>MIL,402,403,602<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. The witness has only testified to facts within the scope of their |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| | personal knowledge. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |
| Page 161<br>1 BY MR. RIDDLE:<br>2 Q And did you believe this report to be<br>3 accurate when you received it?<br>4 A Yes, I did.<br><br>24 Q Okay. This is marked 392.<br>25 And this contains three emails, correct?<br><br>Page 162<br>1 A It does.<br>2 Q And the one on the bottom is an update from<br>3 Mr. Smith to Mr. Binke, correct?<br><br>6 THE WITNESS: Correct.<br>7 BY MR. RIDDLE:<br>8 Q And Mr. Smith says:<br>9 "This is to advise that the<br>10 security environment in Israel<br>11 currently prohibits NBCU security from<br>12 being able to guarantee the safety and<br>13 security of our employees, production<br>14 partners and associated crew and<br>15 talent."<br><br>19 THE WITNESS: That is correct.<br>20 BY MR. RIDDLE:<br>21 Q And so you were provided with -- with the<br>22 information that Mr. Smith provided to Mr. Binke,<br>23 correct?<br><br>25 THE WITNESS: That is correct. | Plaintiff's Objections:<br>Page 162:1-3; 162:6-15; 162:19-23; 162:25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 163:10-11; 163:13-24<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| Page 163<br>10 Q And what did you ultimately tell<br>11 production?<br><br>13 THE WITNESS: At this point, July 10th, we<br>14 eventually told production that we would be going on<br>15 what we would call a hiatus or a push week. Thus,<br>16 we were able to get the North Americans out of<br>17 Israel safely. And we were going to wait it out to<br>18 see if we could return to prepping and shooting,<br>19 given some time and more recent updates as time went<br>20 on.<br>21 BY MR. RIDDLE:<br>22 Q And who made the decision to wait it out<br>23 and see if you could return to prepping and<br>24 shooting?<br><br>Page 164<br>2 THE WITNESS: My superiors with -- given<br>3 the information from Stephen Smith, would have<br>4 eventually made the judgment call.<br>5 BY MR. RIDDLE:<br>6 Q And was there a decision on the 10th of<br>7 July 2014, to basically suspend production for a<br>8 week? | ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>**Plaintiff's Objections:**<br>Page 164:2-8; 164:11; 164:14-23<br>MIL,402,403<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>**Plaintiff's Objections:**<br>Page 166:4-6; 166:20-25<br>MIL,402,403<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 11 THE WITNESS: Yes, there was.<br><br>14 Q And who were -- who were the people you<br>15 understand were involved in that decision?<br>16 A Mark Binke and his -- I suspect Jeff<br>17 Wachtel, Steve Dolcemaschio. I still can't say his<br>18 name.<br>19 And, again, as I said before, people higher<br>20 pay grade than I.<br>21 Q Okay. So were you -- you were not involved<br>22 in the decision?<br>23 A Not in the final decision.<br><br>Page 166<br>4 Q And how did you learn that that was the<br>5 decision that had been reached?<br>6 A I was informed by Mark Binke.<br><br>20 Q Ms. Richmond, I'm handing you Exhibit 393.<br>21 Have you seen that before?<br>22 A I have.<br>23 Q And what is it?<br>24 A It is email correspondence between myself<br>25 and Mark Binke regarding our options as of July 10th<br><br>Page 167 | jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 167:1-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 171:7-21; 171:25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 1 with -- options of how we're going to handle the<br>2 show moving forward.<br>3 Q And did somebody ask you to put these<br>4 alternatives together?<br>5 A Yes. My -- my boss, Mark Binke, said,<br>6 "Well, tell me what our options can be," and I laid<br>7 it out in these ways from various scenarios that I<br>8 had gathered information on.<br>9 Q And he says, "Call it dark wk, not<br>10 shutdown."<br>11 What does that mean?<br>12 A "Dark week" could also mean push week or a<br>13 hiatus. It's kind of a theater term meaning going<br>14 dark, and "shut down," meaning as opposed to we're<br>15 not continuing the show at all.<br>16 Q Okay. At this point in time when you<br>17 submitted these scenarios to Mr. Binke, had the<br>18 decision been made to suspend the filming for a<br>19 week?<br>20 A At that time, we had the information that<br>21 security could not guarantee our safety, and so we<br>22 were putting together the scenarios of hence, what<br>23 do we tell production what's our next step, and we<br>24 were working out which scenario we were going to | of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 172:2-10; 172:13-14<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 173:15-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 25 alert everyone to -- that this was our new plan.<br><br>Page 171<br>7 that. It's 181. But the -- let me give the Bates<br>8 number so we're sure. UCP001678 and 79.<br>9 Q At any rate, is that document your --<br>10 you've got there an update from Mr. Smith on the<br>11 security situation in Israel on July 11, 2014?<br>12 A That is correct.<br>13 Q And did you believe this information to be<br>14 accurate when you received it?<br>15 MR. HAYES: Objection. Vague, lacks<br>16 foundation.<br>17 THE WITNESS: Yes, I did.<br>18 (Exhibit 395 was marked for<br>19 identification by the court reporter<br>20 and is attached hereto.)<br>21 BY MR. RIDDLE:<br><br>25 A Correct, yes.<br><br>Page 172<br>2 Q And Ms. Garber says, "If there is an<br>3 actual 'declaration of war' we will<br>4 have an issue with coverage under the<br>5 policy because there is a broad<br>6 exclusion for acts of war. The<br>7 exclusion includes" war-like act --<br>8 'war-like acts' but the carrier did<br>9 not bring this up when I spoke to<br>10 them," correct? | its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 174:4-8<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 175:20-21<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 13 THE WITNESS: That is what the document<br>14 says, yes.<br><br>Page 173<br>15 Q Let me hand you Exhibit 397.<br>16 Is that an email from Potter Paige on<br>17 July 15, 2014, to you?<br>18 A Yes, it is.<br>19 Q Who -- who is Mr. Paige? Oh. I'm sorry.<br>20 Who is Paige Potter?<br>21 A She was my assistant at the time.<br>22 Q Okay. And she sent you a link to something<br>23 from NBC News, correct?<br>24 A Correct.<br>25 Q Do you recall looking at what she sent you?<br><br>Page 174<br>4 Q Okay. What I'd like to do now is have you<br>5 view that -- the video that -- that's referenced<br>6 here in the link, and then I can -- I'll ask you<br>7 something about it.<br>8 A Okay.<br><br>Page 175<br>20 (At this time, the video was played<br>21 in the deposition room.)<br><br>Page 176<br>7 Q Now, that was broadcast by NBC News.<br>8 Is that part of NBCUniversal? | of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 176:7-8; 176:11<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 179:1-8; 179:17-25<br>MIL,402,403<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 11 THE WITNESS: Yes, it is.<br><br>Page 179<br>1 Q I'll hand you what's been marked as<br>2 Exhibit 400.<br>3 Is that an email from Stephen Smith to you<br>4 and Mr. Binke on July 17, 2014?<br>5 A It is.<br>6 Q And the subject is "Ground Offensive<br>7 Started," correct?<br>8 A It is correct.<br><br>17 Q Now, this document was labeled Exhibit 196<br>18 previously.<br>19 And is that a report from Mr. Smith to you<br>20 and Mr. Binke on July 18, 2014, concerning the<br>21 status of the security issues in Israel?<br>22 A Yes, it is.<br>23 Q Now, he says, "No change to NBC's | to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 180:1-23<br>MIL,402,403<br><br>Defendant's Response<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 181:1-25<br>MIL,402,403<br><br>Defendant's Response |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| | The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>**Plaintiff's Objections:**<br>Page 182:1-9; 182:12-16; 182:19<br>MIL,402,403<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>**Plaintiff's Objections:**<br>Page 182:21-25<br>MIL,402,403, 802 |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| <u>Page 180</u><br><br>1 conflict and the threat to personnel<br>2 resulting in serious injury or loss of<br>3 life remains considerable and there<br>4 are no current security controls that<br>5 would allow NBCU Security to guarantee<br>6 the safety and security of our<br>7 personnel without the prospect of<br>8 serious injury or loss of life,"<br>9 correct?<br>10 A That is correct.<br>11 Q And he go -- and he goes on to say, "Info<br>12 from various sources; over 100<br>13 targets, including rocket launching<br>14 sites and underground tunnels, were<br>15 targeted throughout Gaza during the<br>16 overnight hours of July 17-18 as more<br>17 Israeli troops and armor advanced into<br>18 Gaza. Fourteen Hamas militants were<br>19 reportedly killed in Israeli attacks,<br>20 while the Israeli Defense Forces (IDF)<br>21 sustained its first fatality after a<br>22 soldier was killed by light arms<br>23 fire," correct?<br><br><u>Page 181</u><br>1 THE WITNESS: That is what it says, yes.<br>2 BY MR. RIDDLE:<br>3 Q And did you believe this information to be<br>4 accurate when you received it?<br>5 A Yes, I did.<br>6 Q This is a document that has been marked as<br>7 220 previously. | Defendant's Response<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 183:2-5; 183:8-20; 183:23<br>MIL,402,403, 802<br><br>Defendant's Response<br>zThe probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 8 Is that a report on security issues in<br>9 Israel dated July 21, 2014, that was sent by<br>10 Stephen Smith to you and Mr. Binke?<br>11 A That is correct.<br>12 Q If you look down about two-thirds of the<br>13 page, it says, "During the early morning hours<br>14 of July 20, the Israeli Defense Forces<br>15 (IDF) Spokesperson Unit confirmed that<br>16 the military expanded ground<br>17 operations in the Gaza Strip with<br>18 unconfirmed reports indicating that<br>19 the expansion was initiated during the<br>20 overnight hours of July 19-20.<br>21 Reports indicate that as part of the<br>22 operations, the IDF began shelling<br>23 parts of eastern Gaza City,<br>24 particularly the neighborhood of<br>25 Shujaiyya."<br><br>Page 182<br>1 Did I read that correctly?<br>2 A I am not familiar with the pronunciation of<br>3 that.<br>4 Q Close. Okay. Everything but possibly<br>5 that?<br>6 A Exactly.<br>7 Q Okay. And then did you believe this<br>8 information from Mr. Smith was accurate when you<br>9 received it?<br><br>12 THE WITNESS: Yes, I did.<br>13 BY MR. RIDDLE: | offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 184:10-14<br>MIL,402,403<br><br>Defendant's Response<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 184:15-24<br>MIL,402,403, 802<br><br>Defendant's Response<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 14 Q If you look on the second page, that first<br>15 bullet point, does that make reference to antiwar<br>16 demonstrations in Haifa on July 19?<br><br>19 THE WITNESS: That is what it says.<br><br>21 Q And then in the next bullet point, it<br>22 says -- it makes reference to right-wing activists<br>23 reportedly attempting to disrupt an antiwar<br>24 demonstration at Habima Square, correct?<br><br>Page 183<br>2 THE WITNESS: Yes, that's what it says.<br>3 BY MR. RIDDLE:<br>4 Q And in those two bullet points, is it<br>5 referring to locations in Israel?<br><br>8 THE WITNESS: I am not familiar with [sic]<br>9 Habima Square is, and Haifa is north of Tel Aviv.<br>10 BY MR. RIDDLE:<br>11 Q Okay.<br>12 A But yes, both in Israel.<br>13 Q Okay. And -- well, the -- the second<br>14 bullet point says, "Arrests were reported<br>15 in Tel Aviv during confrontations as<br>16 right-wing activists reportedly<br>17 attempted to disrupt an anti-war<br>18 demonstration at Habima Square,"<br>19 correct?<br>20 A Yeah. I wasn't sure – | unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 184:25-185:4; 185:7<br>MIL,402,403<br><br>Defendant's Response<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 23 THE WITNESS: I wasn't sure if that meant<br><br>Page 184<br>10 BY MR. RIDDLE:<br>11 Q This is Exhibit 401.<br>12 And are these emails between you and<br>13 Stephen Smith on July 21, 2014?<br>14 A That is correct.<br>15 Q And he says, "I just wanted to check if<br>16 the production has finished in Israel<br>17 and will not be going back? I<br>18 received a call from MAX who revived<br>19 an email saying the production was<br>20 cancelled and just wanted to check<br>21 what the situation is and what further<br>22 updates if any you guys will need,"<br>23 correct?<br>24 A That is correct.<br>25 Q And then you say, "Correct, Stephen. We<br><br>Page 185<br>1 informed Production Sunday." Correct?<br>2 A That is correct.<br>3 Q So that would have been -- you would have<br>4 informed them on the 20th, correct?<br><br>7 THE WITNESS: That is correct.<br><br>Page 186<br>21 BY MR. RIDDLE:<br>22 Q Okay. This is Exhibit 403.<br>23 And is this an email from BJ Markus on | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 24 July 25, 2014, to Andrea Garber with a copy to you<br>25 and Mr. Binke concerning the DIG insurance claim?<br><br>Page 187<br>1 A One moment.<br>2 Yes, it is.<br><br>10 BY MR. RIDDLE:<br>11 Q Did you do anything to help any -- to help<br>12 whoever was trying to come up with a claim, you<br>13 know, to be presented to the insurance company?<br><br>22 THE WITNESS: Okay. I was involved in --<br>23 with BJ Markus in figuring out what things would be<br>24 considered part of the claim.<br><br>Page 188<br>13 Q Right. So did you -- did you start -- did<br>14 you work with Ms. Markus on it after this email?<br><br>17 THE WITNESS: Yes, I have. I did, yes.<br>18 BY MR. RIDDLE:<br>19 Q Okay. And so what did you -- when it --<br>20 what guidance, if any, did you provide to Ms. Markus<br>21 as far as what should or should not be included in<br>22 the claim for extra expenses? | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 25 THE WITNESS: Typically, BJ and I work hand<br><br>Page 189<br>1 in hand in discussing things back and forth because<br>2 we come with a different set of expertise and<br>3 mindset. She would give me her opinion; I would<br>4 give her mine. And we worked together to figure out<br>5 what should and shouldn't be included.<br>6 BY MR. RIDDLE:<br>7 Q And when you were doing this, in your mind,<br>8 what were the parameters that were to be applied to<br>9 determine what should or should not be included in<br>10 the claim? What criteria did you use?<br><br>13 THE WITNESS: The idea was anything that we<br>14 had to do -- had to duplicate because we had already<br>15 done that in Israel was the foundation of what, in<br>16 our opinion, would have been included in the claim.<br>17 BY MR. RIDDLE:<br>18 Q And did you -- did you come up with a<br>19 number that related to the amount of extra expenses<br>20 that were to be presented to the insurance company<br>21 as part of that claim? | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 24 THE WITNESS: In concert with BJ we came up<br>25 with an estimate that she quoted on that July 25th<br><br>Page 190<br>1 email.<br>2 BY MR. RIDDLE:<br>3 Q Okay. And this says "currently estimated<br>4 at 7 million," correct?<br><br>7 THE WITNESS: That is correct.<br>8 BY MR. RIDDLE:<br>9 Q And is it your understanding that<br>10 ultimately Ms. Markus came up with a -- an exact<br>11 figure that she felt represented the amount of the<br>12 extra expense that had been incurred?<br><br>15 THE WITNESS: Yes.<br>16 BY MR. RIDDLE:<br>17 Q Okay. And did you -- did you have any<br>18 involvement in doing that calculation that resulted<br>19 in that number or was that something that Ms. Markus<br>20 was handling –<br><br>22 MR. RIDDLE: -- between the two of you?<br>25 THE WITNESS: She did -- she had -- she did | Plaintiff's Objections:<br>Page 194:25-195:10; 195:16-24<br>MIL,402,403,104a<br><br>Defendant's Response<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| Page 191<br>1 the numbers. She has access to all the exact<br>2 dollars and cents.<br>3 The philosophical side of, "Well, that<br>4 person shouldn't" and, "Well, don't forget when we<br>5 do this, we should make sure we add that," that was<br>6 my involvement.<br>7 BY MR. RIDDLE:<br>8 Q Okay. And when you worked with her on this<br>9 effort, was it -- did you do it in person or by<br>10 phone or both?<br><br>13 THE WITNESS: It would have been done in --<br>14 both in person and on the phone –<br><br>17 A -- and it happened over, you know, a<br>18 substantial amount of time.<br><br>Page 192<br>1 Q Did you ever look at any of the documents<br>2 that Ms. Markus had created in connection with the<br>3 effort to quantify the extra expenses for the claim?<br><br>6 THE WITNESS: Yes, I did.<br>7 BY MR. RIDDLE:<br>8 Q And what -- what types of documents do you<br>9 recall looking at in that regard? | substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602.<br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 196:2-3<br>MIL,402,403, 104a<br><br>Defendant's Response<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 10 A We looked at cost reports, budgets and the<br>11 bible that ultimately was put together, and we went<br>12 over that a couple of times.<br>13 Q What do you mean by "the bible that was put<br>14 together"?<br>15 A The areas that we felt were the duplicate<br>16 or the extra expense areas were pulled from the<br>17 show's bible and created into what we're calling<br>18 the -- the lawsuit bible. So that accounts for all<br>19 the costs.<br>20 And we had -- we would go through that<br>21 sometimes two or three times if there was questions<br>22 that had come up.<br>23 Q But between the two of you, she was the one<br>24 that compiled the -- what you referred to as "the<br>25 lawsuit bible"; is that -- is that correct?<br><br>Page 193<br>1 A That's correct. And she had another<br>2 associate, Josh Dease, who did the initial, if you<br>3 want to call it subtracting it from the master bible<br>4 to the lawsuit bible.<br>5 Q Okay.<br>6 A And she went through it and then she<br>7 involved me as a back check for her. | conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602.<br><br>Plaintiff's Objections:<br>Page 196:4-12; 196:15-25<br>MIL,402,403<br><br>Defendant's Response<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial.<br><br>Plaintiff's Objections:<br>Page 197:4-7; 197:9-12<br>MIL,402,403<br><br>Defendant's Response<br>The witness' understanding of the facts are relevant |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 8 Q Is there a document that's commonly<br>9 referred to as "the production bible" in your<br>10 business?<br><br>13 THE WITNESS: It's a financial term, so I'm<br>14 not sure if it is formally called "the production<br>15 bible," but it is something that finance works and<br>16 not typically production.<br>17 BY MR. RIDDLE:<br>18 Q Is that the same thing as what you're<br>19 calling "the master bible"?<br><br>22 THE WITNESS: Probably is.<br>23 BY MR. RIDDLE:<br>24 Q Okay. When -- when you say "the master<br>25 bible," what -- what is -- what type of information<br><br>Page 194<br>1 is reflected in that for a specific project?<br><br>4 THE WITNESS: Every single expense that's<br>5 been paid out is coded, journaled, put into a<br>6 computer so that you can find it at future dates,<br>7 and then also to keep track of your costs.<br><br>25 Q Well, we've got two -- two companies that | to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| <u>Page 195</u><br>1 are plaintiffs in the lawsuit.<br>2 Are you aware of that?<br>3 A You're referring to Universal Cable and<br>4 Northern Entertainment?<br>5 Q Yes.<br>6 And my question is: Of the total<br>7 seven-some-odd million that's part of the claim for<br>8 extra expenses, what's the dollar amount that -- of<br>9 those expenses that were incurred by Universal Cable<br>10 Productions?<br><br>16 THE WITNESS: I have never looked at it<br>17 from a perspective dividing the two. I would have<br>18 no clue what to --<br>19 MR. RIDDLE: Okay.<br>20 THE WITNESS: -- estimate on that.<br>21 BY MR. RIDDLE:<br>22 Q Okay. You wouldn't know how much was<br>23 supposedly incurred by Universal Cable versus<br>24 Northern Entertainment, correct?<br><br><u>Page 196</u><br>2 THE WITNESS: Correct. I would have no<br>3 idea how to divide it up.<br>4 BY MR. RIDDLE:<br>5 Q Now, which company incurred the production<br>6 cost in Israel for the -- for DIG?<br>7 A Israeli costs were done through Keshet, | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 202:16-19; 202:22-203:1<br>MIL,402,403<br><br>Defendant's Response<br><span style="font-size:smaller">The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the</span> |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 8 DIG, I believe is the name of the company. And any<br>9 American costs would have been flowing through<br>10 Universal Cable Productions.<br>11 Q And did Universal Cable reimburse the<br>12 Israeli company for -- for those costs?<br><br>15 THE WITNESS: Yes. That was the concept of<br>16 the deal.<br>17 BY MR. RIDDLE:<br>18 Q Okay. In what location did Northern<br>19 Entertainment Productions incur production expenses?<br>20 A That would be in Albuquerque, New Mexico.<br>21 Q And if the production had remained in<br>22 Israel for the pilot and Episodes 2 through 6,<br>23 would -- would those costs have been incurred either<br>24 by Universal Cable or the Israeli company that was<br>25 working with United -- I'm sorry, Universal Cable<br><br>Page 197<br>4 THE WITNESS: If the episode -- episodic<br>5 costs would have been similar to that on the pilot<br>6 in terms of labor, American versus Israeli, for the<br>7 two companies, exactly.<br><br>9 Q Okay. But they would not have been | loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of general claim process is relevant and not prejudicial. |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 10 incurred by Northern Entertainment Productions,<br>11 correct?<br>12 A That is correct.<br><br>Page 200<br>19 Q Okay. Great. Ms. Richmond, I'll hand you<br>20 what's marked as Exhibit 344.<br>21 Are you familiar with this document?<br>22 A I am.<br>23 Q What is it?<br>24 A This is a production recap report that is<br>25 published by our accountants and controller. In<br><br>Page 201<br>1 this case, through our accountant, Josh Dease, for<br>2 the DIG in New Mexico, first five episodes.<br>3 Q And are -- are these -- is this something<br>4 that's prepared after the production so that you can<br>5 see what actual costs were incurred?<br>6 A It's a document that gets published while<br>7 we're -- while we're shooting, and it continues up<br>8 until all costs are finalized.<br>9 Q And -- and on this document it -- it shows<br>10 a period ending of 8/11/2016, correct?<br>11 A That is correct.<br>12 Q And when was -- when would you say | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 13 production was concluded on the -- on Episodes 2<br>14 through 6?<br><br>17 THE WITNESS: There's various parts of<br>18 ending on that. There would have been the end of<br>19 shooting, which would have happened approximately<br>20 middle -- maybe end of October, early November.<br>21 Maybe I'm vague on that because we continued.<br>22 Then there's postproduction, then there's<br>23 wrapping up.<br>24 So the actual final date of any cost, I<br>25 could not give you an accurate date.<br><br>Page 202<br>1 BY MR. RIDDLE:<br>2 Q Was it prior to -- do you think it was<br>3 prior to August 11, 2016?<br>4 A Yes, I do.<br>5 Q Okay. So what does this production recap<br>6 report reflect as the final costs for Episodes 2<br>7 through 6 of -- of DIG?<br><br>10 THE WITNESS: This report is telling us<br>11 that the estimated final cost not including the<br>12 pilot, for just those five episodes --<br>13 BY MR. RIDDLE:<br>14 Q Right.<br>15 A -- is $21,464,745. | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 16 Q And then if -- if you go to the second page<br>17 down near the -- on the left side down near the<br>18 bottom, there -- that -- is that some information<br>19 relating to tax credits relating to the project?<br><br>22 THE WITNESS: Yes, that is tax credit<br>23 information.<br>24 BY MR. RIDDLE:<br>25 Q Is that something that would have been<br><br>Page 203<br>1 tracked by Ms. Markus's group?<br><br>4 THE WITNESS: Yes.<br>5 BY MR. RIDDLE:<br>6 Q All right. And this -- on this document,<br>7 344, it says, "From Joshua P. Dease, production<br>8 accountant.<br>9 A Uh-huh.<br>10 Q He reported to Ms. Markus, correct?<br><br>13 THE WITNESS: Yes, that's correct.<br>14 BY MR. RIDDLE:<br>15 Q And is -- is a report such as this prepared<br>16 on all projects postproduction?<br><br>19 THE WITNESS: Yes, it is.<br>20 BY MR. RIDDLE:<br>21 Q Okay.<br>22 A Well, not only post, but also during.<br>23 Q Okay. And is it important that it be | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 24 prepared accurately?<br><br>Page 204<br>2 THE WITNESS: It is important that it is<br>3 reported as accurate as they can at the time.<br>4 BY MR. RIDDLE:<br>5 Q Now, at some point was there a decision<br>6 made to leave Israel and -- and resume filming<br>7 elsewhere?<br>8 A Yes, there was.<br>9 Q Who -- who was involved in that decision?<br>10 A Again, I was not privy to the exact voices<br>11 and the final decision. They were at a higher-level<br>12 than I, but it was reported back to me from<br>13 Mark Binke that that decision had been made.<br><br>Page 206<br>24 Q Right. You weren't in the -- apparently<br>25 you weren't in the meeting where it was determined,<br><br>Page 207<br>1 correct?<br><br>4 THE WITNESS: That is correct. It was<br>5 reported back to me that we can let production,<br>6 specifically, the people in Israel, know that we're | |

| Deposition Designation of Randi Richmond | Objection & Response |
|---|---|
| 7 not coming back and so I could move the production<br>8 forward to the other ven- -- other areas.<br>9 BY MR. RIDDLE:<br>10 Q Okay. And when were you told that?<br>11 A July 16th, 2014.<br><br>23 Q Who told you that that decision had been<br>24 reached?<br>25 A Mark Binke.<br><br><u>Page 208</u><br>1 Q And why do you think it was on July 16?<br>2 A At that point, we had pulled the<br>3 North Americans out. We were on a hiatus, and we<br>4 had hoped that the situation in Israel would calm<br>5 down so we could resume.<br>6 I believe Mark got some correspondence from<br>7 Stephen Smith saying that they do not see an<br>8 opportunity for it to be calming down in Israel.<br>9 That's my recollection. | |

16. **JAY J. SHAPIRO**

| Deposition Designation | Objection & Response |
|---|---|
| Defendant's Designation of Jay J. Shapiro | Plaintiffs object to |
| p. 6, 1. 11- p. 6, 1. 14; p. 7, 1. 9 - p. 7, 1. 22; p. 7, 1. 24 | Defendants' designations |
| - 8, 1. 13;  p. 11, 1. 8 - p. 11, 1. 14; p. 11. 1. 20 - p. | as follows: |
| 11, 1. 25; p. 12, 1. 1 - p. 12, 1. 7; p. 12, 1. 19 - p. 12, 1. | |
| 24; p. 13, 1. 10 - p. 13, 1. 12; p. 13, 1. 19 - p. 13, 1. | |
| 21; p. 13, 1. 23 - p. 13. 1. 24; p. 14, 1. 2 - p. 14, 1. 3; | |
| p. 14, 1. 5 - p. 14, 1. 5; p. 14, 1. 17 - p. 15, 1. 7; p. 23, | |
| 1. 12 - p. 23, 1. 20; p. 24, 1. 9 - p. 24, 1. 14; p. 24, 1. | |
| 16 - p. 24, 1. 17; p. 25, 1. 12 - p. 25, 1. 25; p. 26, 1. 1 - | |
| p. 26, 1. 25; p. 27, 1. 1 - p. 27, 1. 3; p. 27, 1. 6 - p. 27, | |
| 1. 13; p. 27, 1. 23 - p. 28, 1. 12; p. 29, 1. 3- p. 30, 1. | |
| 11; p. 30, 1. 15 - p. 34, 1. 6; p. 39, 1. 10 - p. 39, 1. 14; | |
| p. 40, 1. 25 - p. 41, 1. 21; p. 41, 1. 22 - p. 43, 1. 25; p. | |
| 44, 1. 8 - p. 44, 1. 20; p. 45, 1. 2 - p. 45, 1. 8; p. 46, 1. | |
| 24 - p. 47, 1. 5; p. 48, 1. 5 - p. 48, 1. 9; p. 50, 1. 5 - p. | |
| 50, 1. 16; p. 50, 1. 20 - p. 52, 1. 5; p. 52, 1. 8 - p. 52, 1. | |
| 10; p. 53, 1. 6 - p. 53, 1. 15; p. 53, 1. 25 - p. 54, 1. 3; | |
| p. 59, 1. 4 - p. 63, 1. 20; p. 63, 1. 23 - p. 63, 1, 23; p. | |
| 63, 1. 25 - p. 64, 1. 5; p. 65, 1. 6 - p. 66, 1. 3; p. 66, 1. | |
| 5 - p. 66, 1. 10; p. 66, 1. 12 - p. 67, 1. 2; p. 67, 1. 5 - p. | |
| 67, 1. 5; p. 67, 1. 7 - p. 67, 1. 12; p. 67, 1. 15 - p. 67, 1. | |
| 16;  p. 68, 1. 15 - p. 69, 1. 15; p. 70, 1. 19 - p. 72, 1. 2; | |
| p. 72, 1. 8 - p. 72, 1. 15; p. 72, 1. 17 - p. 72, 1. 18; p. | |
| 72, 1. 20 - p. 75, 1. 13; p. 75, 1. 21 - p. 76, 1. 4 ; p. 76, | |
| 1. 8 - p. 77, 1. 3; p. 77, 1. 7 - p. 79, 1. 14; p. 79, 1. 18 - | |
| p. 81, 1. 11; p. 81, 1. 18 - p. 84, 1. 2; p. 84, 1. 4 - p. 84, | |
| 1. 14; p. 84, 1. 17 - p. 84, 1. 21; p. 85, 1. 6 - p. 85, 1. | |
| 16; p. 85, 1. 25 - p. 87, 1. 3; p. 87, 1. 6 - p. 87, 1. 25; | |
| p. 90, 1. 13 - p. 93, 1. 11; p. 93, 1. 14 - p. 95, 1. 5; p. | |
| 95, 1. 8 - p. 96, 1. 2; p. 96, 1. 5 - p. 96, 1. 10; p. 96, 1. | |
| 12 - p. 96, 1. 21; p. 96, 1. 24 - p. 97, 1. 3; p. 100, 1. 10 | |
| - p. 103, 1. 6; p. 103, 1. 8 - p. 105, 1. 3; p. 105, 1. 6 - | |
| p. 106, 1. 5; p. 106, 1. 8 - p. 107, 1. 10; p. 113, 1. 14 - | |
| p. 115, 1. 18; p. 117, 1. 9 - p. 117, 1. 21; p. 117, 1. 24 - | |
| p. 117, 1. 25; p. 119, 1. 21 - p. 120, 1. 5; p. 120, 1. 25 - | |

| Deposition Designation | Objection & Response |
|---|---|
| p. 122, 1. 4; p. 122, 1. 7 - p. 122, 1. 8; p. 123, 1. 20p. - 124, 1. 4; p. 125, 1. 2 - p. 125, 1. 11; p. 125, 1. 13 - p. 126, 1. 23; p. 126, 1. 25 - p. 127, 1. 7; p. 127, 1. 10 - p. 127, 1. 11; p. 127, 1. 20 - p. 128, 1. 5; p. 128, 1. 18 - p. 129, 1. 12; p. 129, 1. 15 - p. 129, 1. 19; p. 132, 1. 15 - p. 132, 1. 19; p. 132, 1. 22 - p. 132, 1. 23; p. 134, 1. 7 - p. 134, 1. 25; p. 139, 1. 13 - p.140, 1. 8; p. 140, 1. 18 - p. 141, 1. 6; p. 141, 1. 15 - p. 142, 1. 14; p. 142, 1. 24 - p. 143, 1. 8; p. 143, 1. 10 - p. 143, 1. 15; p. 143, 1. 17 - p. 143, 1. 23; p. 145, 1. 18 - p. 145, 1. 3; p. 148, 1. 7 - p. 149, 1. 24; p. 150, 1. 6 - p. 155, 1. 9; p. 155, 1. 12 - p. 155, 1. 21; p. 155, 1. 24 - p. 156, 1. 8; p. 156, 1. 11 - p. 156, 1. 13; p. 156, 1. 15 - p. 157, 1. 19; p. 157, 1. 22 - p. 157, 1. 25; p. 160, 1. 6 - p. 160, 1. 13; p. 161, 1. 6 - p. 161, 1. 18; p. 161, 1. 20 - p. 161, 1. 22; p. 180, 1. 25 - p. 181, 1. 11; p. 181, 1. 19 - p. 181, 1. 21; p. 185, 1. 15 - p. 185, 1. 16<br><br>Page 6<br>11   Q.   Mr. Shapiro, can you please state your full<br>12          name and address for the record.<br>13   A.   Jay Shapiro, 11300 Olympic Boulevard,<br>14          Suite 910, L.A. 90064.<br><br>Page 7<br>9 Q What was the subject matter of the last<br>10 deposition in the last case that you were taken?<br>11 A It was a contractual claim, a breach of<br>12 contract claim, regarding an insurance contract.<br>13 Q Were you serving as an expert witness in that<br>14 matter?<br>15 A Yes.<br>16 Q What was the name of the case?<br>17 A O'Donnell vs. Misho, M-I-S-H-O.<br>18 Q which party were you rendering expert services<br>19 on?<br>20 A O'Donnell. | |

| Deposition Designation | Objection & Response |
|---|---|
| 21 Q What was the case about, aside from breach of contract<br>22 with respect to an insurance –<br><br><br>24 THE WITNESS:  Failure to pay a premium.<br><br>Page 8<br>1 BY MS. COYOCA:<br>2 Q It was alleged that the insured had failed to<br>3 pay a premium?<br>4 A That's correct.<br>5 Q Was the insured in the matter the O'Donnell<br>6 party:<br>7 A Yes.<br>8 Q Did you write a report in that case?<br>9 A No.<br>10 Q Was the case in State Court or Federal Court?<br>11 A State Court.<br>12 Q Los Angeles Superior Court?<br>13 A Santa Barbara.<br><br>Page 11<br>8 THE WITNESS: I produced my expert report, the<br>9 engagement letter, invoices.  I believe that's it.<br>10 MS. COYOCA: Ms. Crapster, the documents that<br>11 you handed me prior to the commencement of the<br>12 deposition that are marked JS00001 through 20, are these<br>13 the documents that are being produced in response to<br>14 Plaintiffs' Request for Production of Documents today?<br><br><br>20 Q Mr. Shapiro, in response to request for<br>21 production No. 1, that sought the production of all<br>22 documents that you reviewed prior to forming any | |

| Deposition Designation | Objection & Response |
|---|---|
| 23 opinions, including any documents that do or do not<br>24 support your opinion; in other words, any documents you<br>25 reviewed.<br><br>Page 12<br>1 A Yes.<br>2 Q You identified certain documents in your<br>3 report.<br>4 Are there any other documents that you reviewed<br>5 other than those that are identified in the schedule to<br>6 your report?<br>7 A No<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>7 A No<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 12<br><br>19 Q. In Schedule A to your CV that is attached to<br>20 your expert report, you list a number of chapters that<br>21 you authored, entertainment chapters of Harcourt Brace's<br>22 COMPREHENSIVE GAAP GUIDE.<br>23 Do you recall that?<br>24 A Yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 12<br><br>25 Q. Have you produced those chapters to your | |

| Deposition Designation | Objection & Response |
|---|---|
| Page13<br><br>1 counsel?<br>2 A. No.<br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br><br>Page 13<br>10 Q What chapters did you author with respect to Harcourt<br>11 Brace's COMPREHENSIVE GAAP GUIDE?<br>12 A Entertainment accounting.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 13<br><br>13 Q. When was the COMPREHENSIVE GAAP GUIDE by<br>14 Harcourt Brace published?<br><br>16 THE WITNESS: To the best of my recollection,<br>17 eight or nine years ago<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br><br>Page 13<br><br>19 Q How many such chapters did you author?<br>20 A I believe there's three.<br>21 Q What were the three chapters about?<br><br><br>23 THE WITNESS:  Entertainment accounting costs, | |

| Deposition Designation | Objection & Response |
|---|---|
| 24 revenues, and amortization.<br><br>Page 14<br>2 Q Did you write any chapters concerning profit<br>3 participation accounting in the entertainment industry?<br><br>5 THE WITNESS: It may have been mentioned<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 14<br><br>13 Q. Have you written anything relating to the<br>14 intersection between GAAP accounting versus<br>15 entertainment industry-related accounting?<br>16 A. Not that I recall.<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 14<br><br>17 Q You indicate that you were featured in FATAL<br>18 SUBTRACTION, the decision regarding the Buchwald vs.<br>19 Paramount case.<br>20 What do you mean by that?<br>21 A I was the expert witness for Mr. Buchwald.<br>22. Q What about DECONSTRUCTING SAMMY DAVIS JR.?<br>23 A I also served as his – his estate's business<br>24 manager.<br>25 Q You served as the Estate of Sammy Davis, Jr.'s<br><br>Page 15<br>1 business manager?<br>2 A Yes | |

| Deposition Designation | Objection & Response |
|---|---|
| 3 Q How long did you hold that role?<br>4 A Oh, two to three years.<br>5 Q When did you first begin?<br>6 A It was a long time ago.  It could have been<br>7 seven, eight years ago.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 15<br><br>8 Q. Have you authored any other articles, books,<br>9 any other publications relating to accounting in the<br>10 entertainment industry?<br>11 A. No.<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION<br><br>Page 23<br>12 A Can you recall any other cases in which you<br>13 provided deposition testimony as an expert<br>witness?<br>14 A Well, over the years, like I said,<br>15 approximately 20 times.<br>16 Q Can you recall the names of any cases other<br>17 than just the number 20?<br>18 A Well, if I had my full resume, I could identify<br>19 some more.  But I understood from counsel there<br>was a<br>20 four-year window.<br><br>Page 24<br>9 Q How long have you been rendering services as an<br>10 expert witness?<br>11 A Well, it's about 50 percent of my practice.<br>12 I'd say 15 to 20 years.<br>13 Q Do you represent Plaintiffs more than<br>14 defendants? | |

| Deposition Designation | Objection & Response |
|---|---|
| 16 THE WITNESS:  In the nature of my work, yes.<br>17 My plaintiffs are often artists, writers, directors.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br><u>Page 24</u><br><br>19 Q. So you --<br>20 A. And the defendants tend to be studios.<br>21 Q. So you represent predominantly the talent side;<br>22 is that correct?<br>23 A. I do.<br><br><u>END PLAINTIFFS' 106 COUNTER-DESIGNATION</u><br><br><u>Page 25</u><br>12   Q.   Mr. Shapiro, can you please describe your<br>13         educational history, beginning from college<br>            forward.<br>14   A.   My educational history beginning with<br>            college?<br>15   Q.   Yes.<br>16   A.   University of Wisconsin, bachelor's degree in<br>17         accounting. I have a master's in business from<br>            Arizona<br>18         State University graduate school.<br>19   Q.   Any other advanced degrees?<br>20   A.   No.<br>21   Q.   You indicated you have a master's in business<br>22         from Arizona State University graduate<br>            school; is that<br>23         correct?<br>24   A.   Yes.<br>25   Q.   Your resume indicates that you have a<br>            master's | |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 26</u><br>1 in accounting and finance.<br>2 A Yeah. My major was accounting and finance.<br>5 Q Are you a certified public accountant?<br>6 A I am.<br>7 Q Have you ever -- when were you first licensed?<br>8 A 1977.<br>9 Q What did you do after you received your MS in<br>10 accounting and finance?  What was your first job?<br>11 A KPMG Peat Marwick.<br>12 Q How longer were you at Peat Marwick?<br>13 A Eight or nine years.<br>14 Q Your resume indicates 1973 to 1982; is that<br>15 correct?<br>16 A Yes.<br>17 Q Where did you go after you left Peat Marwick?<br>18 A Laventhol Horwath.<br>19 Q Did you make partner at Peat Marwick before you<br>20 left?<br>21 A No.<br>22 Q How longer were you at Laventhol?<br>23 A '82 to November 20, 1990.<br>24 Q What did you do after you left Laventhol?<br>25 A I started my own practice.<br><br><u>Page 27</u><br>1 Q Is that practice the Program Entertainment<br>2 Group?<br>3 A No. It would be Jay Shapiro CPA.<br><br><br>6 Q Did you work full time as the principal of Jay<br>7 Shapiro CPA for a period of years?<br>8 A Well, from time to time I'd have clients that<br>9 needed more full-time services.  I would take kind of<br>10 positions as their acting or temporary chief financial | |

| Deposition Designation | Objection & Response |
|---|---|
| 11 officer.<br>12 Q What is the first such client that you –<br>13 A Program Entertainment.<br><br><br>23 Q So the first such client that you remember<br>24 rendering services to as an outside chief financial<br>25 officer is the Program Entertainment Group; is that<br><br>Page 28<br>1 correct?<br>2 A That's correct.<br>3 Q What is the Program Entertainment Group?<br>4 A They were a TV syndicator.<br>5 Q Do they still exist?<br>6 A I don't believe so.<br>7. Q How long did you serve as the outside CFO for<br>8 Program Entertainment Group?<br>9 A I don't recall.<br>10. Q Your resume indicates 1990 to 1993; is that<br>11 right?<br>12 A That sounds right.  Yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 28<br><br>13 Q. Who hired you?<br>14 A. The CEO.<br>15 Q. Who is the CEO?<br>16 A. I don't recall his name.<br>17 Q. Why did you stop rendering services to the<br>18 Program Entertainment Group?<br>19 A. They didn't feel they needed the service any<br>20 further.<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION | |

| Deposition Designation | Objection & Response |
|---|---|
| **Page 29**<br>3 Q You continued having your own private practice<br>4 as well?<br>5 A I did.<br>6 Q What was the nature of the work that you did<br>7 during this period of time when you had your own<br>8 accounting firm and you were also simultaneously<br>9 rendering services to the Program Entertainment Group?<br>10 A Well, I provide a wide variety of services:<br>11 Accounting, tax, some business management, forensic<br>12 accounting.  That's about it.<br>13 Q Is there a particular area of industry that you<br>14 specialized in during this period of time?<br>15 A Well, I've always specialized in entertainment.<br>16 Q During this particular period of time, did you<br>17 predominantly represent talent?<br>18 A I had some talent.<br>19 Q What other areas in the industry did you<br>20 represent?<br>21 A I have represented corporate entertainment<br>22 entities, investment partnerships in the entertainment<br>23 industry; basically, non- individuals engaged in<br>24 entertainment.<br>25 Q Did you represent financiers?<br><br>**Page 30**<br>1 A From time to time I get work from people<br>2 financing entertainment projects.  Yes.<br>3 Q Did you predominantly specialize in television,<br>4 feature film, music industry, or any other area?<br>5 A Well, most of my clients were television and/or<br>6 film.  I did some music, but predominantly TV and film. | |

| Deposition Designation | Objection & Response |
|---|---|
| 7 Q After you stopped representing the Program<br>8 Entertainment Group, did you begin representing any<br>9 other particular client rendering services as an outside<br>10 CFO similar to what you did for the Program<br>11 Entertainment Group?<br><br><br>15 Q Do you recall ever serving in a similar<br>16 capacity to what you did for the Program Entertainment<br>17 Group –<br>18 A Yes.<br>19 Q – with respect to any other entity?<br>20 A Yes.<br>21 Q What entity is that?<br>22 A Well, again, if I had my resume, I think I have<br>23 a list of corporate entities I served in that capacity,<br>24 as indicated on my resume.<br>25 Q Is Impact Media Group another one? | |

**1371**

| Deposition Designation | Objection & Response |
|---|---|
| Page 31<br>1 A Yes.<br>2 Q Was there any entity between the Program<br>3 Entertainment Group and Impact Media Group for which you<br>4 rendered services on an outside CFO basis?<br>5 A Not that I recall.<br>6 Q What is Impact Media Group?<br>7 A They were a syndicator of television programs.<br>8 Q Do they still exist?<br>9 A No.<br>10 Q Who hired you?<br>11 A The CEO.<br>12 Q It indicates on your resume that you served as<br>13 chief executive officer.<br>14 A Yeah.  He – he left the company, and I took<br>15 his position.  I was asked by the board to take his<br>16 position.<br>17 Q Who was the CEO who hired you?<br>18 A Drew Levin.<br>19 Q Now, when you indicate that Impact Media Group<br>20 was a syndicator of television programming, did it<br>21 syndicate its own content?<br>22 A It produced and also acquired content for sale to TV 23 outlets and networks.<br>24 Q Did it predominantly sell in the U.S. or<br>26 internationally?<br><br>Page 32<br>1 A About 50/50.<br>2 Q Did it sell to any of the majors?<br>3 A Discovery Channel.<br>4 Q Any others?<br>5 A Mostly smaller.  Discovery Channel would have<br>6 been the largest.<br>7 Q Why did you leave - - or why did you stop | Plaintiff's Objections:<br>Page 31:18-25<br>402,403<br><br><br>Defendant's Response:<br><br>Background of witness is relevant; not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 8 rendering accounting or financial services to the Impact<br>9 Media Group?<br>10 A They no longer needed services; bankruptcy.<br>11 Q The Impact Media Group went bankrupt?<br>12 A They did.<br>13 Q Did you have any kind of dispute with the<br>14 Impact Media Group prior to your departure from the<br>15 company?<br>16 A No.<br>17 Q Sunrise Media Group, what did you did for<br>18 Sunrise Media Group?<br>19 A I created Sunrise Media Group, and it's wholly<br>20 owned by me.<br>21 Q What does it do?<br>22 A We're consultants to film producers to assist<br>23 them in their sale of their content to users.<br>24 Q To users or to third-party distributors?<br>25 A They would be users.<br><br>Page 33<br>1 Q I'm sorry.  Does Sunrise Media Group render<br>2 services to producers who are selling their content to<br>3 third-party distributors?<br>4 A That's correct.<br>5 Q How many employees does Sunrise Media Group<br>6 have?<br>7 A Well, one time I had six employees.<br>8 Q How many currently?<br>9 A One.<br>10 Q Anyone other than yourself?<br>11A No.<br>12 Q Does Sunrise Media Group still exist?<br>13 A Yes.<br>14 Q Does it still conduct business?<br>15 A Well, what do you mean by "conduct"?<br>16 Q Does it have any clients? | |

| Deposition Designation | Objection & Response |
|---|---|
| 17 A We've been somewhat inactive in 2016.  In '17<br>18 there has been no business.<br>19 Q Do you currently work full time?<br>20 A Yes.<br>21 Q What percentage of your current full-time work<br>22 relates to rendering expert services?<br>23 A Well, I do 50 percent forensic accounting,<br>24 That would include expert services.<br>25 Q How many cases do you currently have ongoing?<br><br>Page 34<br>1 A At this time, one.<br>2 Q Just this one?<br>3 A Yes.<br>4 Q Do you continue to hold a certified public<br>5 accountant license in the state of California?<br>6 A Yes<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 34<br><br>21 Q. Have you ever been disciplined or sanctioned by<br>22 the California Board of Public Accountancy?<br>23 A. Yes.<br>24 Q. When?<br>25 A. About 10 years ago.<br><br>Page 35<br><br>1 Q. Why were you sanctioned?<br>2 A. I failed to sign up for an organization that<br>3 the requirement for such sign-up, I was unaware of.<br>4 Q. What was the organization?<br>5 A. Public Company Auditing Oversight Board.<br>6 Q. Public company on the -- is it Auditing<br>7 Oversight Board?<br>8 A. I believe so. | **Defendant's Objection to Counter-Designation to pages 34-39**<br><br>Not relevant; highly prejudicial, particularly in light of fact this witness is deceased and cannot explain circumstances, even if relevant; waste of time; 401; 403; will also be the subject of a motion in limine. |

| Deposition Designation | Objection & Response |
|---|---|
| 9 Q. What organization sanctioned you? 10 A. I wasn't sanctioned. The discipline I received 11 was a probation. All my services remain the same. And 12 the ruling came from the Securities and Exchange 13 Commission. 14 MS. COYOCA: I'd like to mark as Exhibit 2 an 15 Order Making Findings and Imposing Remedial Sanctions 16 Pursuant to Section 4C and 21C of the Securities 17 Exchange Act of 1934 and Rule 102(e) of the Commission's 18 Rules of Practice. <br><br> Page 36 <br><br> 1 (Shapiro Exhibit 2 was 2 marked for identification.) <br><br> 23 Q. Mr. Shapiro, can you please take a look at the 24 document I've put in front of you. 25 A. Yes. <br><br> Page 37 <br><br> 1 Q. Do you recognize this document? 2 A. Yes. 3 Q. What is it? 4 A. It's an administrative proceeding with the 5 Securities and Exchange Commission. 6 Q. Is this the disciplinary Order that you were 7 speaking about in your previous response? 8 A. Yes. 9 Q. There is an entity referenced on page 2 that's 10 titled Daleco Resources Corporation. 11 Do you see that? 12 A. Yes. 13 Q. What is Daleco Resources Corp.? | |

| Deposition Designation | Objection & Response |
|---|---|
| 14 A. It was an oil and gas company.<br>15 Q. Did you render services to Daleco?<br>16 A. I did.<br>17 Q. What services?<br>18 A. Auditing services.<br>19 Q. Auditing services?<br>20 A. Yes. I prepared an audit and opinion for their<br>21 Form 10-K for the year ending September 30, 2003.<br><br>25 Q. On page 4 of this document, it indicates that<br><br>Page 38<br><br>1 after one year from the date of the order, the firm of<br>2 Jay Shapiro could request reinstatement before the SEC;<br>3 is that correct?<br>4 A. Yes.<br>5 Q. Did you --<br>6 A. No.<br><br>9 Did you seek reinstatement before the SEC?<br>10 A. No.<br><br>15 Q. As a result of the decision in this matter, the<br>16 Daleco matter, were you disciplined or sanctioned by the<br>17 California State Board of Accountancy?<br>18 A. Yes.<br>19 Q. What discipline or sanction did you receive?<br>20 A. Two years' probation.<br>21 Q. What were the terms of the probation?<br>22 A. Quarterly reporting and take an ethics course.<br>23 There was no suspension of any practice privilege.<br><br>Page 39 | |

| Deposition Designation | Objection & Response |
|---|---|
| 3 Q. What two-year period of time were you on<br>4 probation?<br>5 A. I think it was 2010 and '11.<br><br>10 Q. Have you been engaged to render services in<br>11 this case?<br>12 A. Yes.<br>13 Q. When were you first engaged?<br>14 A. March 27, 2017.<br>15 Q. Who hired you?<br>16 A. Ms. Crapster.<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION<br><br><br>Page 39<br>10 Q Have you been engaged to render services in<br>11 this case?<br>12 A Yes.<br>13 Q When were you first engaged?<br>14 A March 27, 2017.<br><br>Page 40<br>25 Q Mr. Shapiro, when Ms. Crapster contacted you<br>on<br><br>Page 41<br>1 March 27, 2017, what did she tell you about the facts of<br>2 the case?<br>3 A I asked questions about the case. She told me<br>4 that she represented an insurance company. There was a<br>5 claim regarding extra expenses incurred on are location.<br>6 And when I asked her for more details, she sent me the | |

| Deposition Designation | Objection & Response |
|---|---|
| 7 Complaint.<br>8 Q Did she indicate to you what she meant by<br>9 "extra expenses incurred on a relocation"?<br>10 A No. That would be spelled out in the<br>11 Complaint.<br>12 Q      Did you form an understanding as to what was<br>13 meant by "extra expenses incurred on a relocation"?<br>14 A I did.<br>15 Q What's your understanding?<br>16 A I found in the Complaint -- there was an<br>17 exhibit, the insurance policy. And Section IX pretty<br>18 well explained the computation for extra expense. And I<br>19 believe I brought a copy of my notes in that area today.<br>20 Q Okay. We'll get to those in a moment.<br>21 A Okay.  And that's what I learned.<br>22 Q I want to show you a document that's previously<br>23 been marked as Williams Exhibit 1. So I don't think<br>24 it's necessary to re-mark the document.<br>25 This is a copy of the Motion Picture/Television<br><br>Page 42<br>1 Producers Portfolio policy issued by Atlantic Specialty<br>2 Insurance Company to NBCUniversal Media, LLC, Policy<br>3 No. MP00163-04, labeled Bates control ATL003073 through<br>4 3127.<br>5 Mr. Shapiro, you indicated that attached to the<br>6 Complaint was a copy of the insurance policy; is that<br>7 right?<br>8 A Yes.<br>9 Q Is this the policy that you were referring to?<br>10 A Yes. I believe it is.<br>11 Q Okay. If you'll look at Section IX, which is<br>12 on the page labeled ATL003106 -- | |

| Deposition Designation | Objection & Response |
|---|---|
| 13 A I don't have -- oh. Here it is. Yes.<br>14 Q -- Roman numeral IX is titled "Definition of<br>15 Loss."<br>16 Do you see that?<br>17 A Yes.<br>18 Q When you indicated that you looked at the<br>19 Definition of Loss, is this the section to which you're<br>20 referring?<br>21 A Yes.<br>22 Q The Definition of Loss references "insurable<br>23 production cost."<br>24 Do you see that term?<br>25 A Yes.<br><br>Page 43<br>1 Q Did you review and look at the definition of<br>2 "insurable production cost"?<br>3 A Well, I read through the policy. I don't<br>4 remember particularly looking up the definition.<br>5 Q Did you consider the definition of "insurable<br>6 production cost" in rendering your opinions in this<br>7 matter?<br>8 A Yes.<br>9 Q What's your understanding of the definition of<br>10 "insurable production cost"?<br>11 A It was the amount that was in the application<br>12 for the insurance policy.<br>13 Q So your understanding of "insurable production<br>14 cost" is whatever the dollar amount was that was in the<br>15 application for the insurance policy?<br>16 A Yes.<br>17 Q Now, when you indicate the "application for the<br>18 insurance policy," are you referring to the application<br>19 for the policy that we're looking at here in Exhibit 1, | Plaintiff's Objections:<br>43:9-25<br>702,703,704,LC<br><br>Defendant's Response<br><br>Witness is qualified to describe what he considered in definition of "insurable production cost". |

| Deposition Designation | Objection & Response |
|---|---|
| 20 or are you referring to the application to have the DIG<br>21 television show added as an insured production?<br>22 A Well, I'm not sure what the document was<br>23 created – which one it had been created for.  But there<br>24 was a document that looked like an application that had<br>25 a dollar amount of $25 million.<br><br>Page 44<br>8 Q Can you please turn to page ATL003081.<br>9 A Yes.<br>10 Q At the very bottom of the page in the<br>11 right-hand column there is Item 4 that's titled<br>12 "Insurable Production Code."<br>13 Do you see that?<br>14 A Yes.<br>15 Q. This is under Section II, Capital A,<br>16 "Definitions."<br>17 A Yes.<br>18 Q This contains a specific definition of the term<br>19 "insurable production cost," does it not?<br>20 A Yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 44<br><br>21 Q. Is there a reference to a $25 million amount in<br>22 this provision?<br>23 A. No<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 45<br>2 Q Did you consider this definition of "insurable | |

| Deposition Designation | Objection & Response |
|---|---|
| 3 production cost" in calculating the loss as referenced<br>4 in section IX?<br>5 A Well, I recognize production cost to include<br>6 all the matters described here, overhead, interest, then<br>7 direct costs of production.  So I assume the two things<br>8 were the same.<br><br>Page 46<br>24 Q Okay.  When you first spoke with Ms. Crapster,<br>25 what did she ask you to do?<br><br>Page 47<br>1 A She asked me to prepare a rebuttal to<br>2 Mr. Wunderlich's report.<br>3 Q Did she provide you a copy of Mr. Wunderlich's<br>4 report?<br>5 A She did.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 47<br><br>15 Q. When you spoke with her on the telephone on<br>16 March 27, did she indicate to you that Mr. Wunderlich<br>17 had prepared a report?<br>18 A. I don't recall.<br>19 Q. During that first conversation, did you have a<br>20 copy of the rebuttal report -- excuse me -- a copy of<br>21 Mr. Wunderlich's report so that you could address what<br>22 you would be rebutting?<br>23 A. I did not.<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION | Plaintiff's Objections:<br>45:7-8<br>702,703,704,LC<br><br>Defendant's Response<br><br>Witness is qualified to describe what he considered in definition of "insurable production cost". |

**1381**

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 48</u><br>5 Q Other than telling you she wanted you to<br>6 prepare a rebuttal report, what did she ask you to do<br>7 specifically?<br>8 A I don't remember any other request other than<br>9 prepare a rebuttal report.<br><br><u>PLAINTIFFS' 106 COUNTER-DESIGNATION:</u><br><br><u>Page 48</u><br><br>19 Q. Did you, Mr. Shapiro, at some point analyze how<br>20 Mr. Wunderlich had calculated the extra expense claim<br>21 under Section III of the policy?<br>22 A. Yes.<br><br><u>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION</u><br><br><u>Page 50</u><br>5 Q Mr. Shapiro, you ultimately did analyze how<br>6  Mr. Wunderlich had calculated the extra expenses<br>            claim<br>7 that's been asserted in this case; is that right?<br>8 A I tried to. Yes.<br>9 Q When did you undertake that analysis?<br>10 A April of this year.<br>11 Q What did you do?<br>12 A I read his report. I reviewed documents. I<br>13 reviewed the Complaint again, including the extra<br>14 expense section, and I came to the conclusion that<br>            the<br>15 methodology employed by Mr. Wunderlich was<br>            not an<br>16 appropriate approach to compute extra expense. |  |

| Deposition Designation | Objection & Response |
|---|---|
| 20 Q How long did it take you to complete your<br>21 analysis?<br>22 A Oh, I don't recall.<br>23 Q Did it take more than two hours?<br>24 A Yes.<br>25 Q Did it take more than 100 hours?<br><br>Page 51<br>1 A In total, I think yes.<br>2 Q Did you have anyone assisting you in your<br>3 analysis?<br>4 A I have very – I did have an administrative<br>5 person assist me in organizing the materials.<br>6 Q Is that someone who works for you full time?<br>7 A No. Part time.<br>8 Q Who is that person?<br>9 A Maria Rodriguez.<br>10 Q What materials did Ms. Rodriguez assist you in<br>11 organizing?<br>12 A Well, there were a great deal of documents<br>13 essentially identifying what kind of information is on<br>14 the document5 so that I could see what I wanted to look<br>15 at in an organized manner.<br>16 Q Did she prepare some kind of report for you or<br>17 a document that identified the type of information that<br>18 was in each of the documents that you had been given to<br>19 review?<br>20 A No.<br>21 Q How did she identify them for you?<br>22 A Well, I guess there would have been some kind<br>23 of notes with the Bates number that this is something I | |

| Deposition Designation | Objection & Response |
|---|---|
| 24 should look at first.<br>25 Q I want to make sure I understand.<br><br>Page 52<br>1 So Ms. Rodriguez undertook the task of<br>2 reviewing the various documents and reports that you had<br>3 been provided, and she identified by notes what reports<br>4 contained what information, indicating to you what you<br>5 needed to look at?<br><br>8 THE WITNESS:  No.  I chose what to look at<br>9 first.  It was just a note on what was on the document,<br>10 what types of information.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 52<br><br>16 Q. Did she prepare a note that was one document<br>17 that identified the information on the various documents<br>18 that you had asked her to look at?<br>19 A. No. It was more of a list of Bates numbers<br>20 that these documents had this type of data on them.<br>21 Q. How long was the list?<br>22 A. It was about one page.<br>23 Q. Did you give that one-page document to<br>24 Ms. Crapster?<br>25 A. No. After I reviewed the data, I discarded the<br><br>Page 53<br><br>1 document.<br>2 Q. You threw the note away? | |

| Deposition Designation | Objection & Response |
|---|---|
| 3 A. Yes.<br>4 Q. You destroyed the note? It no longer exists?<br>5 A. It no longer exists.<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION<br><br>Page 53<br>6 Q You indicated that it took in total more than<br>7 100 hours to complete your analysis of Mr. Wunderlich's<br>8 report; is that correct?<br>9 A Well, the project itself took probably more<br>10 than 100 hours, the ending result being my report.<br>11 Q Okay.  So the entire project –<br>12 A Yes.<br>13 Q –not just the criticism of Mr. Wunderlich's<br>14 report, took more than 100 hours?<br>15 A Yes.<br><br><br>25 Q So your best estimate is that it took between<br><br>Page 54<br>1 100 and 125 hours to complete all of your work on this<br>2 project?<br>3 A Yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 54<br><br>4 Q. Other than Ms. Rodriguez, did you have anyone<br>5 else assist you in the preparation of your report?<br>6 A. No.<br>7 Q. Mr. Shapiro, are you being paid for your<br>8 services as an expert in this case? | **Defendant's Objections** |

| Deposition Designation | Objection & Response |
|---|---|
| 9 A. Yes.<br>10 Q. What are your -- what is your financial<br>11 arrangement with the Strasburger Price firm?<br>12 A. Well, I receive an hourly fee.<br>13 Q. What's your hourly rate?<br>14 A. For consulting, 375.<br>15 Q. Do you have a different hourly rate for<br>16 testifying?<br>17 A. I do.<br>18 Q. What is that?<br>19 A. 625.<br>20 Q. Did you receive a retainer?<br>21 A. Yes.<br>22 Q. How much was the retainer?<br>23 A. 7,500.<br>24 Q. Was the retainer applied against final fees or<br>25 evergreen?<br><br>Page 55<br><br>1 A. Final fees.<br>2 Q. To date, how much have you been paid by the<br>3 Strasburger firm for your work in this case?<br>4 A. About $24,000.<br><br>8 Q. Are you paid directly by the Strasburger firm<br>9 or by Atlantic Specialty?<br>10 A. I believe the Beacon firm pays me.<br>11 Q. The Beacon firm, do you mean by that OneBeacon<br>12 Insurance?<br>13 A. Yes.<br>14 Q. The entity, OneBeacon Insurance?<br>15 A. That's correct.<br><br>Page 56<br><br>6 Q. Did you provide Ms. Crapster or Ms. Reed a | **to Counter-Designations**<br><br>P. 56 and 57: exchange of draft of reports with attorneys is not relevant; 401; 403; work product; prejudicial; waste of time. |

| Deposition Designation | Objection & Response |
|---|---|
| 7 draft of your report?<br><br>24 THE WITNESS: Yes.<br><br><u>Page 57</u><br><br>Y MS. COYOCA:<br>2 Q. When?<br>3 A. Late April.<br>4 Q. Mr. Shapiro, your report is dated April 25,<br>5 2017.<br>6 ^How long prior to the date of the report,<br>7 April 25, did you provide a draft of the report to<br>8 Ms. Crapster?<br><br>14 Q. Did you provide Ms. Crapster with more than one<br>15 draft of your report?<br>16 A. Not that I recall.<br><u>END PLAINTIFFS' 106 COUNTER-DESIGNATION</u><br><br><u>Page 59</u><br><br>4 Q Where did you obtain your understanding of the<br>5 facts?<br>6 A Mr. Wunderlich's report.<br>7 Q Anyplace else?<br>8 A The Complaint, the high volume of documents I<br>9 received, again, to address my purpose of rebuttal.<br>10 That's about all the information I needed.<br>11 Q What accounting documents or records did you<br>12 review in preparing your report?<br>13 A Well, the documents I reviewed I listed in<br>14 Schedule D.<br>15 Q Right.  And we'll get to that in a moment.<br>16 But in terms of the types of documents<br>17 reviewed, generally speaking, did you – | |

| Deposition Designation | Objection & Response |
|---|---|
| 19 finance analyses.  There were some invoices, but most of<br>20 them were production finance analysis.<br>21 Q You indicate "production finance analyses."<br>22 Did you review any of the accounting source<br>23 books and records relating to the DIG production in<br>24 preparing your report?<br>25 A No Counselor.  I wasn't given that<br><br>Page 60<br>1 opportunity.<br>2 Q Did you review any production cost recap<br>3 reports?<br>4 A Those are the production analyses I'm referring<br>5 to.<br>6 Q Did you refer to or did you review any budget<br>7 documents?<br>8 A In those documents there were budgets. Yes.<br>9 Q Did you refer to and examine any pattern<br>10 budgets?<br>11 A    Yes.<br>12 Q So when you say the "production finance<br>13 analyses," do you include in that the types of documents<br>14 I'm speaking about now –<br>15 A Yes.<br>16 Q – specifically production cost recap reports,<br>17 pattern budgets?<br>18 what about locked budgets? Did you receive any<br>19 locked budgets?<br>20 A I did see some.  Yes.<br>21 Q Did you rely on any locked budgets for purposes<br>22 of your analyses?<br>23 A Well, I'm not sure what "rely" means in this<br>24 sense.  I used them to understand the facts of the<br>25 situation.<br><br>Page 61 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1 Q      But in preparing your rebuttal report, one<br>2 component of your rebuttal report addresses the<br>        amount<br>3 of costs that were incurred in producing the show in<br>4 Croatia and New Mexico; is that correct?<br>5 A That is correct.<br>6 Q What is the source information on which you<br>7 relied in order to determine what those costs were?<br>8 A One of those production finance documents,<br>9 whether you call it a recap. But the number appears<br>        a<br>10 dozen times.<br>14 Q      Okay. Another component of your analysis<br>15 relates to the budgeted or estimated costs for the<br>16 production of a certain number of episodes if it had<br>17 gone forward in Israel; is that correct?<br>18 A Yes.<br>19 Q And where did you receive that budgeted<br>20 estimated dollar amount from?<br>21 A There is an e-mail that deals with that data,<br>22 refers to a budget if it would have gone forward.<br>        And<br>23 the dating appeared to be appropriate. Also I -- I<br>        was<br>24 comfortable with the TV insurance application with<br>        the<br>25 25 million, which seemed to be pretty close to the<br><br>Page 62<br>1 e-mail.<br>2 Q When you say the "dating appeared to be<br>3 appropriate," what do you mean by that?<br>4 A Well, it's my understanding that the move took<br>5 place on or about July 16, 2014. So if, in fact, there<br>6 were plans prior to that date, then I felt that was the<br>7 anticipated cost. Because when it comes to actual<br>8 costs, I searched and searched, but I really couldn't<br>9 find a document that showed me exactly what the |  |

| Deposition Designation | Objection & Response |
|---|---|
|     actual<br>10 costs incurred and paid in Israel was.<br>11 Q In terms of actual costs incurred and paid in<br>12 Israel, are you referring to actual costs incurred and<br>13 paid in Israel that related to the DIG episodes<br>14 subsequent to the pilot?<br>15 A Yes.<br>16 Q Was it your understanding that any of the DIG<br>17 episodes, aside from the DIG pilot, that it actually --<br>18 that those episodes had actually been produced in<br>19 Israel?<br>20 A It was my understanding that they were not<br>21 produced in Israel. Yet when I saw Mr.<br>    Wunderlich's<br>22 deposition, he kept referring to "Israel costs<br>23 incurred." So I was -- I'm confused about that. But<br>    I<br>24 just saw the deposition over the weekend.<br>25 Q So you just reviewed Mr. Wunderlich's<br><br>Page 63<br>1 deposition this past weekend?<br>2 A Yes.<br>3 Q Do you recall the date of the e-mail that you<br>4 referred to that referenced the budgeted amounts for<br>5 production of the episodes subsequent to the pilot in<br>6 Israel?<br>7 A No.  But if I could see the document, obviously<br>8 the date would be indicated.  My feeling was it was<br>9 before July 16.<br>10 Q Okay.  Was the date of the e-mail in June<br>11 2014?<br>12 A I don't recall.<br>13 A April of 2014?<br>14 A I don't recall the date.<br>15 Q Okay.  Are you familiar with the budgeting<br>16 process for television production? | |

| Deposition Designation | Objection & Response |
|---|---|
| 17 A I am.<br>18 Q Do you know if budgeting is an ongoing process<br>19 that can occur up until the time a show actually goes<br>20 into production?<br><br>23 THE WITNESS:  Yes.<br><br>25 Q In terms of determining the most accurate<br><br><br>Page 64<br>1 budget, would it be important to you to look at the most<br>2 current budget shortly prior to the time a show goes<br>3 into production?<br>4 A Ideally, yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 64<br><br>5 Q. Do you have an understanding of what the term<br>6 "pattern budget" means in the context of television<br>7 production accounting?<br>8 A. I've heard the term before, but I don't know<br>9 exactly its meaning.<br>10 Q. What is your understanding of what the term<br>11 "pattern budget" means?<br>12 A. That it's a continual document where the costs<br>13 are continually updated.<br>14 Q. What about the term "locked budget"? Have you<br>15 ever heard the term "locked budget" in the context of<br>16 television production accounting?<br>17 A. Absolutely.<br>18 Q. What's a locked budget?<br>19 A. Final. | |

| Deposition Designation | Objection & Response |
|---|---|
| 20 Q. For purposes of analyzing the estimated<br>21 production costs for the Israel episodes subsequent to<br>22 the pilot, did you review and analyze any locked<br>23 budgets?<br>24 A. I believe there was a document on one episode<br>25 that said "locked budget" for one of the episodes.<br><br>Page 65<br><br>1 Episodes 2 through 6 are the episodes in question. I<br>2 believe one of those, there was a locked budget that I<br>3 saw a document on. But I did not see anything that was<br>4 2 through 6 in detail. And, therefore, I used the<br>5 number in the e-mail.<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION<br><br>Page 65<br>6 Q.     I want to make sure I understand your<br>        response.<br>7 So the budgeting that you were attempting to<br>8 look at was for Episodes 2 through 6 of DIG; is that<br>9 correct?<br>10 A Yes.<br>11 Q And it was your belief that you did not have<br>12 any locked budget that looked at Episodes 2<br>        through 6;<br>13 is that correct?<br>14 A I didn't see a document that was in total.<br>15 Q Now, did you look at any budget information for<br>16 Episodes 7 through 10, the Back 4?<br>17 A Well, in the documents there often were<br>18 references to 7 through 10.<br>19 Q But did you take those – the budgeting for | |

**1392**

| Deposition Designation | Objection & Response |
|---|---|
| 20 those episodes into account in reaching your<br>      opinion?<br>21 A The only use I made with 7 through 10 is I<br>22 noticed that those costs were considerably lower on<br>      an<br>23 episodic level than 2 through 6.<br>24 Q In preparing your opinion or your analyses, did<br>25 you take into account, other than the manner which<br>      you<br><br>Page 66<br>1 just described, the actual costs that were incurred for<br>2 Episodes 7 through 10 in calculating your view of<br>      what<br>3 the claim amount should be?<br><br><br>5 THE WITNESS: Yeah. I never have calculated<br>6 what the claim amount should be. I was preparing a<br>7 rebuttal report. And as part of that, I gave a<br>      maximum<br>8 that no number on the claim could be greater than<br>      the<br>9 maximum. But I did not -- I wasn't able to compute<br>      the<br>10 claim amount.<br><br><br>12 Q Okay. So in terms of your analysis, your<br>13 opinion was that the extra amount should not be<br>      greater<br>14 than 2,357,875; is that correct?<br>15 A     That is correct.<br>16 Q In calculating that $2,357,875 amount, did you<br>17 take into account any of the actual costs that were<br>18 incurred in Episodes 7 through 10?<br>19 A No.<br>20 Q And in calculating that $2,357,875 amount, did | |

| Deposition Designation | Objection & Response |
|---|---|
| 21 you take into account any budgeting information that was<br>22 provided with respect to the Back 4 Episodes 7 through<br>23 10?<br>24 A No.<br>25 Q In calculating the $2,357,875 amount, did you<br><br>Page 67<br>2 for Episodes 2 through 6?<br><br><br>5 THE WITNESS: Yes.<br><br><br>7 Q Where did you obtain that information from?<br>8 A The e-mail.<br>9 Q Other than the e-mail, though, what I'm asking<br>10 you is: Did you look at a locked budget and rely on the<br>11 information in a locked budget for Episodes 2 through 6<br>12 in calculating this 2,357,875 figure?<br><br><br>15 THE WITNESS: I was unable to find such a<br>16 document.<br><br><br>Page 68<br>15 Q Beginning on line 13, it indicates, begin<br>16 quotes:<br>17 "Mr. Shapiro will opine that the<br>18 computation and methodology of the plaintiffs'<br>19 designated expert on the topic of damages is<br>20 subject to criticism and is not as<br>21 mathematically reliable as Mr. Shapiro's more<br>22 straightforward approach." | |

| Deposition Designation | Objection & Response |
|---|---|
| 23 Do you see that?<br>24 A Yes.<br>25. Q Did you formulate an opinion that the<br><br><u>Page 69</u><br>1 plaintiffs' designated expert, Mr. Wunderlich – that<br>2 his damages calculation was subject to criticism?<br>3 A Well, I'm not sure what "subject tot criticism"<br>4 means.<br>5 Q Okay.<br>6 A. Could you rephrase.<br>7 Q Well, I'm using the words that your lawyer used<br>8 in the document.  So –<br>9 A I mean, I disagree with his methodology and<br>10 believe my approach to be more straightforward and, for<br>11 lack of a better description, more simplistic and<br>12 understandable.<br>13 Q Okay.  You indicated that you disagree with<br>14 Mr. Wunderlich's methodology correct?<br>15 A Yes.<br><br><u>PLAINTIFFS' 106 COUNTER-DESIGNATION:</u><br><br><u>Page 69</u><br><br>16 Q. Do you believe that Mr. Wunderlich's<br>17 methodology violates any provision of GAAP accounting?<br><br>19 THE WITNESS: I have no evidence of that.<br><br>21 Q. Do you believe that Mr. Wunderlich's analysis<br>22 violates any regulations or rules proscribed by FASB?<br><br>24 THE WITNESS: I have no evidence of that. | |

| Deposition Designation | Objection & Response |
|---|---|
| END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br><br>Page 70<br>19 Q Okay.  What about the AICPA rules, though, that<br>20 apply to forensic accounting in disputed matters? Do<br>21 you believe that Mr. Wunderlich's analysis violates any<br>22 AICPA-proscribed rules for forensic accounting?<br>23 A Well, the AICPA does have rules in that area,<br>24 and one of the rules is to use reasonable methodology,<br>25 Q Do you believe that Mr. Wunderlich's is not a<br><br>Page 71<br>1 Reasonable methodology?<br>2 A I believe the methodology is not reasonable in<br>3 regard to Mr. Wunderlich's approach.<br>4 Q What is the basis for your belief that<br>5 Mr. Wunderlich's analysis was not reasonable?<br>6 A Well, again, he refers to these incurred costs<br>7 in Israel, which I can find no evidence of any incurred<br>8 costs on Episodes 2 through 6.  So starting with that.<br>9 Then he talks about items that are duplicative<br>10 versus not duplicative.  And there doesn't seem to be<br>11 any detail analysis that I can look at on how he came up<br>12 with that determination other than now that I've been<br>13 the deposition, apparently he received information from<br>14 Mrs. Markus.<br>15 So I don't think, the methodology of just | |

| Deposition Designation | Objection & Response |
|---|---|
| 16 receiving information from another party is a reasonable<br>17 approach to computing extra expenses.<br>18 A Okay. Separate and apart, though, from the<br>19 information that Mr. Wunderlich received, do you believe<br>20 that Mr. Wunderlich's approach, in terms of reviewing<br>21 the documentation with respect to costs that were<br>22 actually incurred in Croatia and New Mexico and making a<br>23 determination as to whether they were – they would not<br>24 have been incurred but for the move to Croatia and<br>25 New Mexico, do you believe that the methodology is<br><br>Page 72<br>1 unreasonable, setting aside the issue of support for the<br>2 methodlogy?<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 72<br><br>5 THE WITNESS: Yeah. I'm not sure I understand<br>6 the question.<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br><br>Page 72<br><br>8 Q Okay. With respect to your criticism of<br>9 Mr. Wunderlich's approach that it was not<br>    reasonable, is | |

| Deposition Designation | Objection & Response |
|---|---|
| 10 it your opinion that his methodology of reviewing the<br>11 costs that were incurred in relocating the production to<br>12 Croatia and New Mexico and extracting out those costs<br>13 that would have been incurred already if the production<br>14 stayed in Israel -- is that, in your view, an<br>15 unreasonable methodology?<br><br>17 THE WITNESS: Well, as you describe it, no.<br>18 But I'm not sure that's what took place.<br><br>20 Q Referring back to the designation, the expert<br>21 witness designation, there is a sentence that begins at<br>22 the end of line 15 which reads, begin quotes:<br>23 "Mr. Shapiro will opine about the maximum<br>24 amount of possible extra expenses that<br>25 plaintiffs may recover based upon verifiable<br><br>Page 73<br>1 information produced in the case and about<br>2 additional reductions to such computation that<br>3 may also apply," close quotes.<br>4 Do you see that sentence?<br>5 A Yes.<br>6 Q Is your opinion as to the dollar amounts as to<br>7 the maximum amount of possible extra expenses -- is that<br>8 amount the $2,357,875 figure that we've discussed?<br>9 A Yes.<br>10 Q Now, this designation indicates that that's<br>11 based upon verifiable information produced in the | |

| Deposition Designation | Objection & Response |
|---|---|
| case;<br>12 is that correct?<br>13 A That's what it says. Yes.<br>14 Q Did you rely on verifiable information in<br>15 coming up with your opinion?<br>16 A Well, as best as the information I was<br>17 Q Okay. So with respect to your opinion.  I<br>18 understand that it has two components, one component of<br>19 which is the total amount of costs that were incurred in<br>20 producing the show in Croatia and New Mexico; is that<br>21 correct?<br>22 A Well, you know, I'm more focused on the extra<br>23 expense than the total cost of Croatia and New Mexico,<br>24 which may or may not be the reliable number.<br>25 I'm not really focused on that.  I'm focused on<br><br>Page 74<br>1 what amounts exceeded insurable production cost. And I<br>2 don't believe that amount can be more than the<br>3 2 million 357.<br>4 And as you can see, Counselor, there is a big<br>5 difference between Mr. Wunderlich's number and mine.  So<br>6 accordingly, I feel there's something in there that<br>7 doesn't belong.<br>8 Q Okay.  But I'm just trying to get at your<br>9 methodology in your calculation.<br>10 A Okay.<br>11 Q And in your report you indicated, within<br>12 quotes:<br>13 "I believe my method is the more<br>14 straightforward and reliable approach to<br>15 calculating the damages on this claim: | |

| Deposition Designation | Objection & Response |
|---|---|
| 16 Utilizing total production costs incurred at<br>17 the new locations less expected Israeli costs<br>18 that would have been incurred without the<br>19 relocation (Incremental Costs)," close quotes.<br>20 A Yes.<br>21 Q So the question that I'm asking you is: As to<br>22 the first part of that methodology that you've<br>       opined<br>23 about, the total production costs incurred at the<br>       new<br>24 locations, what verifiable information did you rely<br>       on<br>25 in order to determine what those total production<br>       costs<br><br>Page 75<br>1 were?<br>2 A Well, I saw the Cost Bible. I saw such amount<br>3 or adjust- -- the same amount with some slight<br>4 adjustment in various production analyses or<br>       production<br>5 recaps. So I felt that that was a good number for<br>6 New Mexico/Croatia.<br>7 Q Did -- your total production cost amount that<br>8 you utilized in your report, is it the same total<br>9 production cost amount that was utilized by<br>10 Mr. Wunderlich?<br><br><br>13 THE WITNESS: Essentially, yes.<br><br><br>21 Q Now, with respect to the second part of your<br>22 statement of your methodology that referenced<br>       expected<br>23 Israeli costs that would have been incurred without<br>       the<br>24 relocation, the incremental costs, where did you get | |

| Deposition Designation | Objection & Response |
|---|---|
| 25 that information from?<br><br><u>Page 76</u><br>1 A Principally the e-mail that we've discussed.<br>2 MS. COYOCA: I think we're on Exhibit 4.  Okay.<br>3 I want to mark as Exhibit 4 an e-mail chain that's<br>4 labeled Bates Control UCP 003732 through 003734.<br><br><br>8 Q Mr. Shapiro, when you indicated you principally<br>9 relied on an e-mail for the costs, is this the e-mail to<br>10 which you were referring?<br>11 A No.<br>12 MS. COYOCA: I'm going to mark as Exhibit 5, an<br>13 e-mail that's labeled A0NNBCU00D1748 through<br>1750.<br>14 (Shapiro Exhibit 5 was<br>15 marked for identification.)<br>16 BY MS. COYOCA:<br>17 Q Mr. Shapiro, is this the e-mail to which you're<br>18 referring?<br>19 A Not primarily.  There's another e-mail.  But<br>20 this is the Television Insurance Application that had<br>21 the 25 million on it, line 6, Insurable Production Cost,<br>22 $25 million.  So I would use this document on a<br>23 secondary basis.<br>24 I believe the document that I'm referring to is<br>25 footnoted on my schedule in my report.<br><br><u>Page 77</u><br>1 MS. COYOCA: Okay. I'm going to mark as<br>2 Exhibit 6 an e-mail exchange that is Bates-labeled<br>3 UCP004971 through 4972.<br><br><br>7 Q Mr. Shapiro, is this the e-mail to which you | <u>Plaintiff's Objections:</u><br>76:8-25<br>402,403<br><br><u>Response</u><br><br>Documents reviewed by expert are relevant. |

| Deposition Designation | Objection & Response |
|---|---|
| 8 were referring?<br>9 A Yes.<br>10 Q Now, the date of this e-mail is March 12, 2014;<br>11 is that right?<br>12 A I believe March 11.<br>13 Q Oh.  You're correct.  The first one is<br>14 March 11, 2014, from John Gaskin to Mark Winemaker and<br>15 Ryan Greig with a cc to Randi Richmond and BJ Markus; is<br>16 that right?<br>17 A That's correct.<br>18 Q And then there is a subsequent e-mail from<br>19 Ms. Richmond that's dated March 12, 2014; is that<br>20 correct?<br>21 A Yes.<br>22 Q And then another e-mail from John Gaskin to<br>23 Ms. Richmond, Mark Winemaker, and Ryan Greig –<br>24 A Yes.<br>25 Q – is that correct?<br><br>Page 78<br>1 A Yes.<br>2 Q Okay. So that March 11, 2014 e-mail that is<br>3 providing a DIG -- it indicates, "Here are the DIG<br>4 budgets as of 3/11/2014."<br>5 Is this the number on which you relied in order<br>6 to analyze the Israel budgeted estimated costs for the<br>7 five episodes after the pilot?<br>8 A In the 17,535,425.<br>9 Q Is that correct?<br>10 A Yes.<br>11 Q When was the pilot shot?<br>12 A I believe the pilot was shot in June, completed<br>13 June 26, 2014.<br>14 Q Did you analyze any budget information that was<br>15 provided that was subsequent to March of 2014? | |

| Deposition Designation | Objection & Response |
|---|---|
| 16 A    Not that I recall.<br>17 Q    Would it have been impactful to your analysis<br>18 if there was subsequent budget information, subsequent<br>19 to March 11, 2014, that was different than the<br>20 $17,535,425 amount?<br>21 A Yes. And if I came across such number, which<br>22 I've subsequently seen a 17 million 707 number, I would<br>23 include that in my maximum computation. It would<br>24 change. My model would stay the same, but the resulting<br>25 number would change.<br><br>Page 79<br>1 Q Okay.  I want to make sure I understand your<br>2 response.<br>3 If there was subsequent budgeting information<br>4 that was closer to the production pilot date, your<br>5 number might change; however, your methodology would<br>6 stay the same.<br>7 Is that correct?<br>8 A That's correct.<br>9 MS. COYOCA: Okay.  I'd like to mark as<br>10 Exhibit 7 a document titled "'DIG' Locked Budget,<br>11 PATTERN: 5 Episode – (8) Days in Israel," labeled Bates<br>12 control UCP 014836 through 14881.  And it's got a date at<br>13 the bottom left-hand corner, "PATTERN – Locked Budget<br>14 Dig Srs June 8, 2014."<br><br><br>18 Q Mr. Shapiro, have you seen this document<br>19 before?<br>20 A No, I don't believe I have. | |

| Deposition Designation | Objection & Response |
|---|---|
| 21 Q Was this document made available to you during<br>22 the course of your analyses?<br>23 A It may have. I mean, again, there were<br>24 voluminous documents. But I don't recall this one<br>25 specifically, no.<br><br><br>Page 80<br>1 Q Well, this is a document that is titled "Locked<br>2 Budget."<br>3 Do you see that?<br>4 A Yes, I do.<br>5 Q And based on your prior testimony, you<br>6 indicated that a locked budget, to you, indicates a<br>7 final budget; is that correct?<br>8 A Yes.<br>9 Q And the date of this budget is June 8, 2014, in<br>10 the lower left-hand corner.<br>11 Do you see that?<br>12 A Yes.<br>13 Q So for purposes of your analysis, would not the<br>14 locked budget that's dated June 8, 2014, be a more<br>15 reliable potential estimate of costs in Israel than the<br>16 March 11, 2014 e-mail?<br>17 A Absolutely.<br>18 However, this particular document is only for<br>19 one episode. I would need all five episodes. It says<br>20 "5 Episode." It means No. 5 episode, not five<br>    episodes.<br>21 Notice that the total is only $3 million.<br>22 Q Could you please take a look at Exhibit 6<br>23 again.<br>24 A     Yes.<br>25 Q     Exhibit 6 references for the pattern number<br>    the<br><br>Page 81<br>1 amount of $3,507,085 times 5 to come up with the | |

| Deposition Designation | Objection & Response |
|---|---|
| 2 17,535,425 number; is that right? | |
| 3 A That's correct. | |
| 4 Q So with respect to the pattern locked budget | |
| 5 for 5 Episode (8) Days in Israel, could you simply not | |
| 6 multiply the 3.541498 amount times 5 as they did in the | |
| 7 March 11, 2016 e-mail? | |
| 8 A That would appear to be reasonable. Yes. | |
| 9 MS. COYOCA: Okay. I want to mark as Exhibit 8 | |
| 10 the Expert Report of Jay Shapiro Analysis of Economic | |
| 11 Damages: Rebuttal. | |
| | |
| 18 Q Mr. Shapiro, the document I've put in front of | |
| 19 you as Exhibit 8, is this the report that you prepared | |
| 20 to rebut Mr. Wunderlich's report? | |
| 21 A Yes. | |
| 22 Q Who typed this report? | |
| 23 A I do. | |
| 24 Q You do or you did? | |
| 25 A I did. | |
| | |
| Page 82 | |
| 1 Q Did you have any assistance in typing the | |
| 2 report? | |
| 3 A Yes. | |
| 4 Q By whom? | |
| 5 A Maria Rodriguez. | |
| 6 Q Could you turn to page 3 of your report, | |
| 7 please.  In the bottom paragraph it reads, begin quotes: | |
| 8 "This report concerns episodes #2 through | |
| 9 #6 of the 'Dig' series.  Those are the only | |
| 10 episodes on which plaintiffs are seeking to | |
| 11 recover 'extra expenses' incurred as a result | |

| Deposition Designation | Objection & Response |
|---|---|
| 12 of the move out of Israel.  Plaintiffs do not<br>13 seek any extra expenses (nor could they) in<br>14 connection with the pilot because its filming<br>15 was completed before the move.  They also do<br>16 not (nor could they) seek any extra expenses in<br>17 connection with episodes #7-10 because the<br>18 decision to film these episodes was not made<br>19 until after the decision to move was already<br>20 finalized."<br>21 Do you see that?<br>22 A Yes.<br>23 Q Please explain to me why it is that under your<br>24 methodology you believe that Episodes 7-10 should have<br>25 been excluded from the calculation.<br><br>Page 83<br>1 A Well, 7 through 10 I understood to be an<br>2 afterthought: that it was never planned to do; and they<br>3 were already in Croatia and New Mexico; and that the<br>4 claim had been made on 2 through 6.  So I though if the<br>5 claim was made on 2 through 6, any information regarding<br>6 7 through 10 was not relevant<br>7 Q Could you please take a look at the policy,<br>8 which is Williams Exhibit 1.<br>9 A Yes.<br>10 Q Now, under the "Definition of Loss" that we<br>11 were looking at earlier that appears on ATL 003106 –<br>12 A Yes.<br>13 Q – that definition of "loss" – excuse me –<br>14 the calculation of the amount of loss I based on, begin<br>15 quotes: | |

| Deposition Designation | Objection & Response |
|---|---|
| 16 "All necessary 'Insurable Production Cost' 17 you incur to complete the 'Insured Production' 18 that exceeds the amount of 'Insurable 19 Production Cost' you would have incurred if the 20 covered cause of loss had not occurred." 21 semicolon, close quotes. 22 Do you see that? 23 A Yes. 24 Q So this definition of "loss" and the 25 calculation references the insurable production cost<br><br>Page 84<br>1 that would be incurred to complete the insured 2 production; is that right?<br><br><br>4 THE WITNESS: Yes 5 MS. COYOCA: 6 Q What is the insured production in this case? 7 A I think it's the six episodes totaling 8 25 million. 9 Q What is the insured production that is 10 referenced in the application for DIG? 11 A I though six episodes. 12 Q And is the – is that, in your view, a 13 limitation on the total amount of insured production 14 cost that could be recovered in this case?<br><br><br>17 THE WITNESS: Well, my understanding would be 18 25 would be the amount that I was insuring; and that 19 when it came to extra expense, it would be something 20 greater than the 25, would be my loss. 21 BY MS. COYOCA: | |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 85</u><br>6 Q Well, if you're seeking to analyze the<br>7 necessary insurable production cost that's incurred to<br>8 complete the insured production, do you believe that<br>9 it's necessary to exclude any episodes beyond Episode 6?<br>10 A Yes.<br>11 Q Why?<br>12 A. It's my understanding it would be common sense.<br>13 when you insured, you have to have a set dollar amount,<br>14 and you can't have a claim at a later date and then all<br>15 of a sudden say, "my home was worth 20 million when I<br>16 told you it was only worth 2 million the first time."<br><br>25 Q Based on your experience with production | <u>Plaintiff's Objections:</u><br>85:6-16<br>602,702,703,704,<br><br><u>Defendant's Response:</u><br><br>Witness is qualified by experience and education to render opinion. |
| <u>Page 86</u><br>1 accounting, is it your understanding that if production<br>2 adds subsequent episodes, that the insurance for the<br>3 production is limited to the number of episodes<br>4 originally estimated at the time of –<br>5 A Application?<br>6 Q Yes.<br>7 A Yes.<br>8 Q And what is that experience based on?<br>9 A Just general understanding.<br>10 Q Have you -- can you point to any specific<br>11 television program that you're aware of in y our<br>12 experience where the insurance has been limited to the<br>13 number of episodes or estimated cost in the application | <u>Plaintiff's Objections:</u><br>85:25-86:25<br>104a,402,<br>403,602,702,703,704,<br><br><u>Defendant's Response</u>:<br><br>Witness is qualified by experience and education to render opinion.  This witness is deceased and 104a proceeding not viable. |

| Deposition Designation | Objection & Response |
|---|---|
| 14 for insurance?<br>15 A No, I cannot.  Though I am aware there are<br>16 times that the policy gets amended.  Things change,<br>17 number of episodes changes, and you file some kind of<br>18 amendment to change your original understanding with the<br>19 insurance company.<br>20 Q And you're not aware, as you sit here today, of<br>21 there being any kind of amendment to the policy to add<br>22 the additional episodes to the insured production cost;<br>23 is that right?<br>24 A I am not.<br>25 Q Hypothetically, if there were such an<br><br>Page 87<br>1 amendment, would your opinion change with respect to the<br>2 methodology that you believe would need to be applied in<br>3 order to calculate the loss under Section IX, subpart 17<br><br><br>6 THE WITNESS: I don't have an opinion on that.<br>7 BY MS. COYOCA:<br>8 Q Well, under the terms of subpart 1, it does not<br>9 specifically reference the insured production to a<br>10 specific – excuse me.  Strike that.<br>11 Under subpart 1, the definition of "insurable<br>12 production cost," it does not reference any specific<br>13 dollar amount with respect to a particular ppro9duction,<br>14 does it?<br>15 A No.  It's my understanding that insurance | Plaintiff's Objections:<br>87:1-3; 87:6-25<br>104a,402,<br>403,602,702,703,704,<br><br>Defendant's Response:<br><br>Witness is qualified by experience and education to render opinion.  This witness is deceased and 104a proceeding not viable. |

| Deposition Designation | Objection & Response |
|---|---|
| 16 policies often have a group of general, common, generic<br>17 disclosures, and the cover page gives you the specifics<br>18 of the coverage.<br>19 I saw this document as such a generic<br>20 disclosure; that the definitions don't have any<br>21 particular numbers but just give the generic description<br>22 of the coverages.<br>23 Q Are you referring to – when you saw the "cover<br>24 page," are you referring to the declarations?<br>25 A Yes.<br><br>Page 90<br>13 Q IN applying your methodology, did you include<br>14 the amounts that were incurred as actual costs in<br>15 Israel, as well as the actual costs incurred in Croatia<br>16 and New Mexico for Episodes 2 through 6, in coming up<br>17 with your calculation?<br>18 A Well, as I indicated, I used the best number<br>19 for Israel I could find, which essentially is that<br>20 e-mail or an estimate similar to what's in the e-mail<br>21 using the newer budget.<br>22 Q I'm actually asking you a different question.<br>23 In terms of calculating the cost of production<br>24 for the series for purposes of your calculation of loss,<br>25 did you include the costs of production that were<br><br>Page 91<br>1 incurred that were associated with the pilot?<br>2 A No.<br>3 Q Why not?<br>4 A Because the pilot was completed in Israel as<br>5 planned.  It can generate no extra expense. | |

| Deposition Designation | Objection & Response |
|---|---|
| 6 Q But turning back to the Definition of Loss<br>7 under subpart 1 of the policy, it references "All<br>8 necessary "Insurable Production Cost." Incurred to<br>9 complete the insured production, does it not?<br>10 A Yes.<br>11 Q So in order to calculate the insurable<br>12 production cost that's associated with the insured<br>13 production, wouldn't you have to look at the pilot plus<br>14 all subsequent episodes?<br>15 A For purposes of extra expense loss, the event,<br>16 the relocation event, took place after this was fully<br>17 complete.  It has no impact on the pilot.  The pilot was<br>18 completed on June 26, and the move took place on<br>19 July 16.  I just don't see how there can be any extra<br>20 expense for the pilot when it was done.<br>21 Q No.  I'm not asking you if there was any extra<br>22 expense incurred.  I'm asking about your calculations<br>23 under your methodology.<br>24 A Under my methodology, I have taken the pilot<br>25 into account because the 25 million, less the 8 million<br><br><u>Page 93</u><br>1 Q it indicates a number 21,464,745; is that<br>2 correct?<br>3 A That's correct.<br>4 Q And is that -- is this the source of<br>5 information for the document -- excuse me -- the number<br>6 that's referenced in your report on page 8?<br>7 A Yes.<br>8 MS. COYOCA: I'd like to mark as the next in<br>9 order, Exhibit 9, a document that is labeled "DIG –<br>10 Next Mexico Season 1 – First 5 episodes, Production Recap |  |

| Deposition Designation | Objection & Response |
|---|---|
| 11 Report, 2014/2015 Season 1, Period Ending: 8/11/2016," <br><br><br> 14 THE WITNESS: I think what I said is I have <br> 15 seen this number, not just here but in multiple other <br> 16 documents. <br> 17 BY MS. COYOCA: <br> 18 Q Now, I believe you indicated that you believed <br> 19 that the production costs associated with the pilot were <br> 20 8 million; is that right? <br> 21 A That's correct. <br> 22 Q Where did you get that information from? <br> 23 A It appears on multiple documents regarding the <br> 24 pilot. There's actual costs incurred. <br> 25 Q Okay. And in this production cost recap <br><br> Page 94 <br> 1 report, there is total cost before breakage reflected <br> 2 for the pilot amount, isn't there? For the pilot, is <br> 3 there not? <br> 4 A There is a number there, yes. <br> 5 Q And it's 11,470,620; right? <br> 6 A Yes. <br> 7 Q And that's obviously greater than the 8 million <br> 8 that you've referenced; isn't that right? <br> 9 A It certainly is. <br> 10 Q Did you take that into account? <br> 11 A No. <br> 12 Q Did you notice that when you were doing your <br> 13 analysis? <br> 14 A I did not. <br> 15 Q And with respect to the Back 4 episodes, which <br> 16 is the information that's reflected under the Front 5 <br> 17 episodes entry on page 18227, there is a dollar amount <br> 18 of 14,890,385; is that right? | |

| Deposition Designation | Objection & Response |
|---|---|
| 19 A Yes.<br>20 Q And did you take that dollar amount into<br>21 account in calculating the maximum amount of loss that<br>22 would be incurred on the claim?<br>23 A No. It wasn't necessary.<br>24 Q Mr. Shapiro, referring back to Exhibit 6 –<br>25 that would be the John Gaskin e-mail.<br><br>Page 95<br>1 A Yes.<br>2 Q – you indicated you believed the $17.5 million<br>3 number, you believed, for the Episodes 2 through 6<br>4 correlated to the $8 million you anticipated pilot<br>5 dollar amount of cost; is that right?<br><br><br>8 THE WITNESS: I believe the 17 million 535<br>9 correlates to the computation for the estimated cost on<br>10 the five episodes.<br>11 BY MS. COYOCA:<br>12 Q Okay.  But you previously indicated that you<br>13 though that the $25 million insurable production cost<br>14 amount roughly correlated, I believe was your<br>15 terminology, to the 17.5 estimated cost for the<br>16 Episodes 2-6 and the $8 million cost for the Israel<br>17 pilot; is that right?<br>18 A Yeah.  And on this document it says 7 and a<br>19 half million, totaling $25,130, which correlates to the<br>20 25 million<br>21 Q Right.  So my question to you is this: Is it<br>22 your believe that, looking at the production cost recap<br>23 report that's in Exhibit 9, that the amount of insurable | |

| Deposition Designation | Objection & Response |
|---|---|
| 24 production cost would be limited to the 11.470 that was<br>25 incurred with respect to the Israel pilot and whatever<br><br>Page 96<br>1 the differential would be up to 25 million?  Is that<br>2 your position?<br><br><br>5 THE WITNES: Well, I don't know where the<br>6 11 million 470 comes from because a half-dozen other<br>7 documents say 8 million.  So I'd have to see some detail<br>8 on what makes the 11 million 470.<br>9 But I do know that the pilot is included in the<br>10 insurable production cost number.<br><br><br>12 Q Okay.  Why is the pilot included in the<br>13 insurable production cost number but not the Back 4<br>14 episodes?<br>15 A Because the application that I saw said six<br>16 episodes, $25 million.<br>17 Q Okay.  So all I'm trying to understand is:<br>18 With respect to that $25 million amount, is it your<br>19 position that $25 million amount applies just to<br>20 whatever amount of costs gets you through the pilot and<br>21 whatever number of episodes up to 25 million?<br><br><br>24 THE WITNESS: Well, I believe it covers the<br>25 pilot and five subsequent episodes.  When I saw the<br><br>Page 97 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1 pilot was 8 million, and I saw the e-mail at 17 million<br>2 for the five episodes, it seemed like that made sense.<br>3 It was 8 and 17, 25 million.<br><br>Page 100<br>10 Q Mr. Shapiro, can you please put Exhibit 8 in<br>11 front of you.  That is your report.<br>12 A Yes.<br>13 Q Please turn to page 4.<br>14 Are you there?<br>15 A Yes.<br>16 Q Okay. At the bottom of the page -- we<br>17 discussed this before the lunch break. I want to go<br>18 back to this -- it indicates that -- well, first of all,<br>19 why don't you tell me: What are you trying to convey in<br>20 the paragraph that begins, "It appears the plaintiffs'<br>21 claim"?<br>22 A Well, I realize that my maximum number is<br>23 materially different than plaintiffs' claim. So I'm<br>24 making a reference here that it appears that the extra<br>25 expenses in that claim and the technique used which had<br><br>Page 101<br>1 these extractions -- maybe that sufficient extractions<br>2 from the total amount were not made because the<br>3 remaining amount is just too high.<br>4 Q Okay. So with respect to your opinion that<br>5 sufficient extractions were not made, did you do a<br>6 calculation to identify what additional extractions<br>7 should have been applied but were not?<br>8 A No.<br>9 Q If you did not do such an analysis, how were<br>10 you able to determine that there were additional<br>11 extractions that should have been applied? | |

| Deposition Designation | Objection & Response |
|---|---|
| 12 A Just by the magnitude of the difference.<br>13 Q And when you say "the magnitude of the<br>14 difference," you're referring to the difference<br>      between<br>15 Mr. Wunderlich's analysis of 7.1 million in extra<br>16 expenses versus your analysis --<br>17 A Of 2.3.<br>18 Q Okay. Anything else?<br>19 A No.<br>20 Q Okay. Did you review the extractions that<br>21 Mr. Wunderlich did apply?<br>22 A Yes.<br>23 Q Did you come to any conclusions with respect to<br>24 those extractions?<br>25 A Those adjustments, given his technique, seemed<br><br>Page 102<br>1 reasonable.<br>2 Q Why did you not review and analyze whether<br>3 there were specific additional extractions that should<br>4 be applied?<br>5 A I was unable to do that. I didn't have the<br>6 necessary documentation to do that.<br>7 Q What documentation would you need in order to<br>8 be able to do that?<br>9 A I would have to have some kind of analytical<br>10 analysis line by line showing what the cost was,<br>      what<br>11 was in there, and what was in the Israeli's expected<br>12 cost and compare the two.  I would need much<br>      more<br>13 details.<br>14 Q In analyzing the Wunderlich report, did you go<br>15 through and analyze the Full Cost Bible that he<br>16 references in his report?<br>17 A Well, I -- I read the Full Cost Bible. I<br>18 noticed the total on the bottom. I was comfortable<br>19 where he got his numbers in his report from | |

| Deposition Designation | Objection & Response |
|---|---|
| regarding<br>20 New Mexico/Croatia.<br>21 Q But the point of divergence with his analysis<br>22 is that you believe that additional extractions should<br>23 have been applied?<br>24 A Because of the magnitude of the claim. The<br>25 claim is to be extra expense, not total spent in<br><br>Page 103<br>6 reflected that you felt should not be extra?<br><br><br>8 THE WITNESS:  I wasn't given the opportunity to<br>9 do that.<br>10 BY MS. COYOCA:<br>11 Q What do you mean you were not given the<br>12 opportunity to do it?<br>13 A Well, it would take – he had the advantage,<br>14 which I did not have, of conversations with production<br>15 personnel.  I didn't have that advantage, nor was I able<br>16 to see any kind of documentation over and above what was<br>17 presented to me.<br>18 MS. COYOCA: Okay. I'd like to mark as – I<br>19 believe we're on Exhibit 10 – the Expert Report of<br>20 Robert Wunderlich: Analysis of Economic Damages.<br>21 (Shapiro Exhibit 10 was<br>22 marked for identification.)<br>23 BY MS. COYOCA:<br>24 Q Mr. Shapiro, is this the expert report of<br>25 Mr. Wunderlich that you reviewed and that you are<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION: |  |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 103</u><br><br>11 Q. What do you mean you were not given the<br>12 opportunity to do it?<br>13 A. Well, it would take -- he had the advantage,<br>14 which I did not have, of conversations with production<br>15 personnel. I didn't have that advantage, nor was I able<br>16 to see any kind of documentation over and above what was<br>17 presented to me.<br>18 MS. COYOCA: Okay. I'd like to mark as -- I<br>19 believe we're on Exhibit 10 -- the Expert Report of<br>20 Robert Wunderlich: Analysis of Economic Damages.<br>21 (Shapiro Exhibit 10 was<br>22 marked for identification.)<br>23 BY MS. COYOCA:<br>24 Q. Mr. Shapiro, is this the expert report of<br>25 Mr. Wunderlich that you reviewed and that you are<br><br><u>Page 104</u><br><br>1 critiquing in your expert report?<br>2 A. Yes.<br>3 Q. In your -- in your expert report, which was<br>4 attached as Exhibit 8, you indicate on page 7 at the<br>5 last full paragraph on the page, begin quotes:<br>6 "It is my further opinion that based on<br>7 the information provided to me, it is not<br>8 possible - for me or anyone else - to make a<br>9 definitive determination about whether each<br>10 individual expense was incurred as a result of<br>11 the Relocation or whether it would have been<br>12 incurred had the production stayed in Israel."<br>13 Do you see that?<br>14 A. Yes. | |

| Deposition Designation | Objection & Response |
|---|---|
| 15 Q. What is the basis for that opinion?<br>16 A. Well, in the whole body of information<br>17 available, I don't think anyone can make that<br>18 determination.<br>19 Q. However, if -- you indicated that<br>20 Mr. Wunderlich had the advantage of being able to speak<br>21 to individuals at NBCUniversal who were involved in the<br>22 production; is that right?<br>23 A. Yes.<br>24 Q. So if an accountant was able to go through and<br>25 test particular expenses to determine -- and get the<br><br>Page 105<br><br>1 information as to what was incurred, would it be<br>2 possible, then, to make a determination as to whether<br>3 particular expenses were or were not extra?<br><br>6 THE WITNESS: Possibly<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 104<br>1 eritiquing in your expert report?<br>2 A Yes.<br>3 Q In your – in your expert report, which was<br>4 attached as Exhibit 8, you indicate on page 7 at the<br>5 last full paragraph on the page, begin quotes:<br>6 "it is my further opinion that based on<br>7 the information provided to me, it is not<br>8 possible – for me or anyone else – to make a<br>9 definitive determination about whether each<br>10 individual expense was incurred as a result of<br>11 the Relocation or whether it would have been | |

| Deposition Designation | Objection & Response |
|---|---|
| 12 incurred had the production stayed in Israel."<br>13 Do you see that?<br>14 A Yes.<br>15 Q What is the basis for that opinion?<br>16 A Well, in the whole body of information<br>17 available, I don't think anyone can make that<br>18 determination.<br>19 Q However, if – you indicated that<br>20 Mr. Wunderlich had the advantage of being able to speak<br>21 to individuals at NBCUniversal who were involved in the<br>22 production; is that right?<br>23 A Yes.<br>24 Q So if an accountant was able to go through and<br>25 test particular expenses to determine – and get the<br><br>Page 105<br>1 information as to what was incurred, would it be<br>2 possible, then, to make a determination as to whether<br>3 particular expenses were or were not extra?<br><br><br>6 THE WITNESS: Possibly.<br>7 BY MS. COYOCA:<br>8 Q Do you know whether or not Mr. Wunderlich did<br>9 that?<br>10 A It's my believe he did not.<br>11 Q What is that based on?<br>12 A His deposition.<br>13 Q What specifically did he testify to in his<br>14 deposition that led you to that?<br>15 A Well, it appears that most of his decisions<br>16 were based on information that he just parroted from<br>17 Mrs. Markus.<br>18 Q From BJ Markus? | |

| Deposition Designation | Objection & Response |
|---|---|
| 19 A Yes.<br>20 Q And your criticism of his restatement of<br>21 Ms. Markus's information is based on what?<br>22 A Well, I think that to come up with the<br>23 appropriate determination, he would have to do some<br>24 independent analysis, and I didn't see much evidence of<br>25 that.<br><br>Page 106<br>1 Q If you were adopting Mr. Wunderlich's<br>2 methodology – and I understand that you are not. But<br>3 assuming for purposes of this hypothetical that you are,<br>4 what additional steps do you think Mr. Wunderlich should<br>5 have done that he did not do?<br><br>8 THE WITNESS:  I wouldn't even know where to<br>9 start to speculate on that.<br>10 BY MS. COYOCA:<br>11 Q Well, your complaint is that you believe that<br>12 there is some unquantified amount of expenses that<br>13 should have been extracted that were not; is that<br>14 correct?<br>15 A Based on a $7 million claim, yes.<br>16 Q Okay.  So I'm just trying to drill down on that<br>17 analysis, that opinion that you've reached.<br>18 A Well, I reached the opinion because I can't<br>19 believe a number greater than 2.357 could, in fact, be<br>20 the claim.<br>21 Q Okay.  And I'm trying to get at your<br>22 substantive analysis that led you to believe that there | <u>Plaintiff's Objections:</u><br>106:18-20<br>MIL, 402,403<br><br><u>Defendant's Response:</u><br><br>"MIL" is not a clear objection; testimony is relevant to illustrate flaws in Wunderlich analysis. |

| Deposition Designation | Objection & Response |
|---|---|
| 23 is no way that there could have been a number greater<br>24 than 2.357.<br>25 A I'm also trying to explain.  If the total costs<br><br><u>Page 107</u><br>1 are such compared to the Israeli expected costs, and<br>2 the difference is only 2.357, then, clearly, if he<br>3 uses any numbers by categories that he has, they would<br>4 need some kind of extraction because they're just too<br>5 large.<br>6 Q Did you analyze -- with respect to categories<br>7 of loss, did you analyze what extractions should have<br>8 been made that were not with respect to prep costs for<br>9 Croatia?<br>10 A I was unable to do that.<br><br><u>Page 113</u><br>14 Q On page 7 of your report – again, this is<br>15 going back to Exhibit 8<br>16 A Yes.<br>17 Q – you indicate that – actually, I apologize.<br>18 I want you to go to page 8.<br>19 You indicate in the final sentence in the first<br>20 partial paragraph on page 8 that, begin quotes:<br>21 "It is my opinion that this process is<br>22 impossible based on the information I have<br>23 reviewed or the information he plaintiffs'<br>24 expert reviewed without any explanation from<br>25 'Dig' management.<br><br><u>Page 114</u><br>1 Do you see that?<br>2 A Yes.<br>3 Q Mr. Wunderlich, though, did receive | |

| Deposition Designation | Objection & Response |
|---|---|
| 4 explanations from DIG management, did he not?<br>5 A Well, he received information from DIG<br>6 management.  I'm not sure it's an explanation of<br>7 anything.  It looked, to me, like it's more, "this is<br>8 the number, and this is the extraction."  But I don't<br>9 think that's an explanation to anything.<br>10 Q Well, though, you don't know what specific<br>11 information Mr. Wunderlich received in response to<br>12 questions that he may have asked with respect to extra<br>13 expense items, do you?<br>14 A I do not.<br>15 Q And, in fact, on page 9 o9f Mr. Wunderlich's<br>16 report, which has been marked as Exhibit 10 –<br>17 A Yes.<br>18 Q – Mr. Wunderlich references discussions that<br>19 he had with Eric Gray, the chief financial officer of<br>20 NBCUniversal Cable Entertainment Studios and Content,<br>21 did he not?<br>22 A Yes.<br>23 Q And also on page 9 he indicates he consulted<br>24 with Randi Richmond, the senior VP of production,<br>25 NBCUniversal Cable Productions; BJ Markus,<br><br>Page 115<br>1 vice president, production finance, NBCUniversal Cable<br>2 Productions; and Eric Gray, chief financial officer,<br>3 NBCUniversal Cable Entertainment Studios and Content.<br>4 Do you know what discussions Mr. Wunderlich<br>5 had, if any, with any of these individuals as to<br>6 particular expense items that were included in the extra<br>7 expense?<br>8 A I do not. | |

| Deposition Designation | Objection & Response |
|---|---|
| 9 Q Now, going back to your report on page 7 of<br>10 your report, you indicate that it is improper to include<br>11 as extra expenses all the prep and wrap expenses<br>12 incurred in New Mexico and Croatia; is that correct?<br>13 A Yes.<br>14 Q What is the basis for that opinion?<br>15 A Well, certainly the New Mexico prep expenses<br>16 were included in their entirety, and the other expenses<br>17 that were included or represented to be extra expenses<br>18 seemed much too high.<br><br>Page 117<br>9 Q Okay. Do you know when the DIG production<br>10 moved out of Israel?<br>11 A I thought on or about July 16, 2014.<br>12 Q      Do you know when production started up again in<br>13 Croatia?<br>14 A I don't recall the exact date.<br>15 Q and what about production in New Mexico?<br>16 A I don't recall the date.<br>17 Q Would the fact that the production prep that<br>18 would need to be done in a new location on an emergency<br>19 expedited basis – would that impact your analysis in<br>20 comparing those prep costs against the prep costs for<br>21 Israel?<br><br><br>24 THE WITNESS: I'm not using prep costs, Israel.<br>25 I'm using total costs, Israel. | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 119<br>21 Q Now, your report on page 7 indicates that the<br>22 amounts that were incurred for prep and wrap on<br>23 Episodes 2 through 6 should not all be applied to 2<br>24 through 6; is that correct?<br>25 A Well, I'm trying to indicate they should not<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 120<br><br>6 Q. Okay. I want to go back, then, to -- I'm not<br>7 understanding your testimony.<br>8 You just indicated that they're too high to<br>9 represent something that's extra; correct?<br>10 A. That's correct.<br>11 Q. Okay. What do you base your statement on that<br>12 they're too high to represent extra expense?<br>13 A. The sheer magnitude of his total 7 million<br>14 versus my 2.3.<br>15 Q. Anything else?<br>16 A. No.<br>17 Q. Did you perform any type of analysis at all<br>18 with respect to the prep or wrap expenses incurred in<br>19 New Mexico or Croatia to reach this conclusion that<br>20 they're too high to reflect extra expense?<br><br>23 THE WITNESS: No.<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION<br><br>Page 120<br>25 Q Now, on page 7 of your report, you indicate<br><br>Page 121 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1 that any amount -- I'm sorry. Begin quotes:<br>2 "Any amounts incurred for prep and wrap on<br>3 episodes 2 through 6 that were beneficial and<br>4 saved money on episodes 7 through 10 provided a<br>5 benefit to plaintiffs that reduced their<br>6 overall cost of filming episodes 7 through 10,"<br>7 close quotes.<br>8 Do you see that?<br>9 A Yes.<br>10 Q What do you mean by that statement?<br>11 A Well, I notice by looking at the documents that<br>12 7 through 10, the total episode costs were 13<br>       percent<br>13 lower than 2 through 6.  And I thought one of the<br>14 reasons might be that something in total costs as<br>15 presented in the Wunderlich report, which he<br>       estimates<br>16 to be extra expense, might, in fact, have benefited<br>17 those subsequent shows.<br>18 Q So if I understand you correctly, is it your<br>19 position that the prep and wrap expenses, in your<br>       view,<br>20 should have been amortized over the 2 through 10<br>21 episodes?<br>22 A If, in fact, they relate to the other episodes.<br>23 Except, you know, I don't have that kind of<br>       information.<br>24 I meant it just as an observation. I have no details<br>25 other than that.<br><br>Page 122<br>1 Q Okay.  So if you were to assume for purposes of<br>2 this analysis that the expenses, in fact, did relate to<br>3 all 2 through 10 episodes, would it be your position<br>4 that they should be amortized over the 9 episodes?<br><br><br>7 THE WITNESS: some, yes. | |

| Deposition Designation | Objection & Response |
|---|---|
| 8 BY MS. COYOCA:<br><br>Page 123<br>20 Q I want to make sure I understand you.<br>21 Are you saying that all prep and wrap expenses<br>22 should be removed from the extra expense calculation?<br>23 A No.  Only the ones that were extra because of<br>24 the relocation to Croatia and New Mexico.<br>25 Q And, again, did you perform an analysis to<br><br>Page 124<br>1 determine which of those prep and wrap costs were, in<br>2 fact, extra?<br>3 A And, again, I didn't have the opportunity to do<br>4 that.<br><br>Page 125<br>1 A Yes.<br>2 Q Did you go back -- in order to analyze any of<br>3 the extra New Mexico prep expenses that are listed<br>　　　here,<br>4 did you go back to the accounting reports that were<br>5 provided to you and search for these accounts in<br>　　　order<br>6 to make a determination as to what you thought was<br>7 inappropriately included?<br>8 MS. CRAPSTER: Objection, Misstates facts and<br>9 assumes facts not in evidence.  Ambiguous.<br>10 THE WITNESS:  I did not.  I didn't find it<br>11 necessary to perform my engagement.<br><br><br>13 Q Well, but you indicated that you believe that<br>14 there were extra expenses associated with New<br>　　　Mexico<br>15 prep that should not have been included; is that |  |

| Deposition Designation | Objection & Response |
|---|---|
| 16 correct?<br>17 A Based on the overall magnitude of the<br>18 difference between his 7 million and my 2.3 and<br>     the fact<br>19 that New Mexico prep uniquely has no exclusions,<br>     which<br>20 essentially is saying all New Mexico prep is extra,<br>21 which seems unreasonable.<br>22 Q Aside from seeming unreasonable to you and<br>23 because you think the number is too high, did you<br>     do any<br>24 analysis of the financial documentation that was<br>25 provided to you in order to test your hypothesis<br>     that it<br><br>Page 126<br>13 Q Well, but you indicated that you believe that<br>14 there were extra expenses associated with New<br>     Mexico<br>15 prep that should not have been included; is that<br>16 correct?<br>17 A Based on the overall magnitude of the<br>18 difference between his 7 million and my 2.3 and<br>     the fact<br>19 that New Mexico prep uniquely has no exclusions,<br>     which<br>20 essentially is saying all New Mexico prep is extra,<br>21 which seems unreasonable.<br>22 Q Aside from seeming unreasonable to you and<br>23 because you think the number is too high, did you<br>     do any<br><br>25 THE WITNESS: No.<br><br>Page 127<br>1 go back and trace for purposes of determining whether | |

| Deposition Designation | Objection & Response |
|---|---|
| 2 they were accurately stated in terms of the amount, what<br>3 I'm asking you is: You could go back to the accounts in<br>4 order to analyze the dollar amounts that are included<br>5 and make a determination as to whether the amounts were<br>6 appropriate earmarked as extra or not; isn't that<br>7 correct?<br><br>10 THE WITNESS: None of the data I was provided<br>11 had that kind of detail to do that.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 127<br><br>13 Q. Well, specifically, for example, you criticized<br>14 the wardrobe amount of 56,374 in your report, did you<br>15 not?<br>16 A. Yes.<br>17 Q. And that has an account number that's 755;<br>18 isn't that right?<br>19 A. Yes.<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 127<br><br>20 Q But you didn't go back to the financial<br>21 documentation that had been produced in the case in<br>22 order to review the entries associated with 755, did<br>23 you?<br>24 MS. CRAPSTER:  Objection.  Assumes facts not in | |

**1429**

| Deposition Designation | Objection & Response |
|---|---|
| 25 evidence.<br><br>Page 128<br>1 THE WITNESS:  The only documentation provided,<br>2 of course, was the Cost Bible.  And if the Cost Bible<br>3 showed that amount and showed some postings, that<br>4 wouldn't give me enough evidence to determine it was<br>5 extra.<br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 128<br><br>7 Q. With respect to any of, though, for example,<br>8 the costs that are associated with below-the-line<br>9 costs --<br>10 A. Yes.<br>11 Q. -- did you ask the lawyers in the case for any<br>12 type of backup documentation for any of the recorded<br>13 entries in the Bible?<br>14 A. I did ask, "Is there anything else that could<br>15 give me that information?"<br>16 Q. And what was the response?<br>17 A. "This is all the documents that we have."<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 128<br><br>18 Q Did you ever review any – any invoice backup<br>19 documentation with respect to the DIG production?<br>20 A I did see some invoices in the discovery<br>21 documents I received.<br>22 Q And did you take those into account in<br>23 performing your analysis?<br>24 A Well, I noted that they were, in fact, | |

| Deposition Designation | Objection & Response |
|---|---|
| 25 purchases.  You know, my purpose wasn't to audit<br><br>Page 129<br>1 production costs.  It was to determine a reasonable<br>2 amount of the claim.<br>3 Q. Right.<br>4 But my question to you is directed towards your<br>5 opinion that, in your view, the expenses that were<br>incurred – let's just specifically focus on New Mexico<br>7 prep for now.<br>8 A Right.<br>9 Q – that those were not all extra, and you made<br>10 that conclusion, you came to that conclusion just based<br>11 on the total amount which you thought was too high.<br>12 A And –<br><br><br>15 THE WITNESS:  Also it's unreasonable that every<br>16 dollar of New Mexico prep cost would, in fact, be extra.<br>17 So I think the schedule is mistitled.  It's probably a<br>18 schedule of New Mexico prep costs, but it is not extra<br>19 expense New Mexico prep.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 130<br><br>7 Q. Well, but an underlying invoice would give you<br>8 information with respect to the cost that was incurred,<br>9 would it not?<br>10 A. Yes, it would.<br>11 Q. It would indicate who was charging the cost?<br>12 A. Yes. | |

| Deposition Designation | Objection & Response |
|---|---|
| 13 Q. And it would also indicate the date of the 14 loss, in all likelihood; correct? 15 A. Yes. 16 Q. And the dollar amount of the loss? 17 A. Yes. 18 Q. And, in fact, most of the invoices would 19 reflect a description of the -- what was being 20 purchased; isn't that correct? 21 A. In some cases, yes. <br><br> Page 131 <br><br> 6 With respect to individual invoices, in many 7 instances invoices would reflect who was charging the 8 cost, the date of the cost, the amount of the cost, and 9 a description of what was being purchased; is that 10 correct? <br><br> 13 THE WITNESS: In most cases, yes. <br><br> 18 A. A limited number. <br><br> END PLAINTIFFS' 106 COUNTER-DESIGNATION <br><br> Page 132 15 Q And further to that hope that there would be 16 more invoices, again, did you specifically say, "In 17 order to challenge that these expenses that are 18 identified as not being extra, I need to look at the 19 underlying invoice documentation? <br><br> 22 THE WITNESS: No.  I didn't feel it was 23 necessary. <br><br> PLAINTIFFS' 106 COUNTER-DESIGNATION: | |

| Deposition Designation | Objection & Response |
|---|---|
| <u>Page 132</u><br><br>25 Q. Now, if you turn to Schedule B2 of the<br><br><u>Page 133</u><br><br>1 Wunderlich report --<br>2 A. Yes.<br>3 Q. -- that lists the extra expenses that<br>4 Mr. Wunderlich claimed for New Mexico wrap; is that<br>5 right?<br>6 A. Yes.<br>7 Q. And in your opinion, not all of those expenses<br>8 should have been included in extra expense; is that<br>9 right?<br>10 A. Possibly, yes.<br>11 Q. Why is it just possibly?<br>12 A. Again, my analysis is in total. I didn't<br>13 analyze it by category.<br>14 Q. And, in fact, Mr. Wunderlich did not include<br>15 all of the wrap expenses for New Mexico in the extra<br>16 expense claim, did he?<br>17 A. No. That was refreshing.<br><br>20 Did you perform any analysis of the description<br>21 of Mr. Wunderlich's review of the Full Cost Bible as to<br>22 the New Mexico all series expenses?<br><br>25 THE WITNESS: No.<br><br><u>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION</u> | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 134<br>7 Q Well, you've indicated that your analysis you<br>8 did in total. You just think the total amount was too<br>9 large. And I'm trying to get at what the basis is for<br>10 that opinion. And so I'm trying to determine what it is<br>11 that you did with respect to each of the categories of<br>12 expenses as to which Mr. Wunderlich included in his<br>13 claim calculation.<br><br>.<br>17 THE WITNESS: It's of no value to analyze it by<br>18 category.<br>19 BY MS. COYOCA:<br>20 Q Why is it of no value to analyze it by<br>21 category?<br>22 A Because the loss can only be the maximum amount<br>23 of total cost difference.<br>24 Q Based on your chosen methodology; correct?<br>25 A     That's correct.<br><br>Page 139<br>13 Q Now, on page 8 of your report, you indicate<br>14 that, begin quotes:<br>15 "The PER does not address my methodology<br>16 of calculating damages or offer any<br>17 justification for why the extra expenses are<br>18 greater than $2,357.875 (the figure I believe<br>19 is the maximum amount recoverable)."<br>20 And then you state your opinion, begin quotes:<br>21 "In my opinion, not addressing this<br>22 mathematically reliable alternative to the<br>23 calculation of damages challenges the<br>24 credibility of the PER's analysis," close<br>25 quotes." | Plaintiff's Objections:<br>134:14-16<br>402, 403<br><br>Defendant's Response:<br><br>Attorney comment deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 140<br>1 Do you see that?<br>2 A. Yes.<br>3 Q. What did you mean by the statements that are<br>4 made in that paragraph?<br>5 A. Well, it's essentially what I've been saying.<br>6 I think that failure to consider the total costs using<br>7 the Israeli estimate is a serious weakness in the<br>8 methodology.<br><br><br>18 Q So how could M.r Wunderlich have addressed your<br>19 calculation in his report when you hadn't even submitted<br>20 it yet?<br>21 A. I think it's just a basic situation where you<br>22 look at the total cost change rather than ignore it and<br>23 go into these – these category analyses and these input<br>24 from Ms. Markus.  And, to me, this was a starting point.<br>25 So I seriously disagree with the methodology.<br><br>Page 141<br>1 Q Okay. But my question –<br>2 A Even without my report being issued before he<br>3 issued his, I think he should have thought about the<br>4 issue that total cost didn't go up that much.  How can<br>5 extra expense – I don't believe he has a full<br>6 understanding of what extra expense is.<br><br><br>15 Q And in your analysis and coming to your<br>16 methodology, you challenge the fact that he did not | |

| Deposition Designation | Objection & Response |
|---|---|
| look 17 at what originally had been projected as the costs for 18 production of the show if it stayed in Israel; right? 19 A I don't think he gave any consideration to what 20 would have happened if they stayed in Israel. Even 21 though the numbers were changing and maybe not going to 22 be actual, but it was the best thing you had. To ignore 23 that, I feel, was inappropriate. 24 And then I'm further confused by his deposition 25 where he says he saw costs incurred.<br><br>Page 142 1 Q Israel-incurred costs and -- 2 A On several -- he makes reference to that 3 several times, which further confuses me. 4 Q Okay. And they're referenced in his report as 5 well, are they not? 6 A Well, I didn't see any reference to 7 Israeli-incurred. 8 Q And are you aware of -- in your analysis, when 9 you were going through everything, did you look at any 10 costs that were incurred and paid while still in Israel 11 that actually applied to all series? 12 A I saw no documentation on that. 13 Q You saw no documentation? 14 A No.<br><br>24 Q Well, if there were costs that were actually 25 incurred and paid in Israel but that redounded to the<br><br>Page 143 | |

| Deposition Designation | Objection & Response |
|---|---|
| 1 benefit of the episodes that were shot in Croatia and<br>2 New Mexico, wouldn't you need to take those expenses<br>3 into account in calculating extra expense under your<br>4 methodology?<br>5 MS. CRAPSTER:  Same objection.  Vague and<br>6 ambiguous.<br>7 THE WITNESS: Yes. If such document existed<br>8 that showed that. I saw no document that showed that.<br><br><br>10 So looking at the methodology section of your<br>11 report on page 8, you indicate that you started with, I<br>12 believe, the Total Cost, capital T, capital C --<br>13 A. Yes.<br>14 Q  Total Cost amount of 21,297,435 and the<br>15 adjusted total costs of 21,464,745.<br><br><br>17 Q And that 21,464,745 number is one that you<br>18 obtained pursuant to --<br>19 A The document we saw this morning.<br>20 Q Right. The Shapiro Exhibit 9, which is<br>21 UCP018227. So could you please pull Exhibit 9 out.<br>22 A Yes.<br>23 Q Okay. And on page UCP018227, we established<br><br>Page 145<br>18 Q In Item No. 5, you indicate, "This amount" –<br>19 begin quotes:<br>20 "his amount does not take into account<br>21 other possible reductions that are appropriate<br>22 such as, for example, (1) the prep and wrap<br>23 expenses incurred in episodes 2 through 6 that<br>24 may have benefited the producing of episodes 7 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>145:18-25<br>104a,702,703,704,<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 25 through 10."<br><br><u>Page 146</u><br>1 Now, we've discussed that topic, is that<br>2 correct?<br>3 A Yes.<br><br><u>PLAINTIFFS' 106 COUNTER-DESIGNATION:</u><br><br><u>Page 146</u><br><br>**4** Q. Is there anything further with respect to your<br>**5** opinions about the inclusion or exclusion of prep and<br>**6** wrap expenses that you have not yet told me?<br>**7 A. No.**<br><br><u>END PLAINTIFFS' 106 COUNTER-DESIGNATION</u><br><br><u>Page 148</u><br>7 Q Okay.  Mr. Shapiro, I would like to understand<br>8 the calculation that you performed in order to arrive at<br>9 your $2,357,875 number.<br>10 So looking at the methodology section of your<br>11 report on page 8, you indicate that you started with, I<br>12 believe, the Total Cost, capital T, capital C –<br>13 A Yes.<br>14 Q – Total Cost amount of 21,297.435 and the<br>15 adjusted total costs of 21,464.745.<br>16 A Yes.<br>17 Q And that 21,464.745 number is one that you<br>18 obtained pursuant to –<br>19 A The document we saw this morning.<br>20 Q Right. The Shapiro Exhibit 9, which is | This witness is qualified by experience and education to provide opinion.  This witness is deceased and Defendant reserved its questions; a 104a proceeding is not viable. |

| Deposition Designation | Objection & Response |
|---|---|
| 21 UCP018227.  So could you please pull Exhibit 9 out.<br>22 A Yes.<br>23. Q Okay. And on page UCP018227, we established<br>24 that the Front 5 episodes, which is 21,464.745 – that's<br>25 your adjusted total cost number in your report; correct?<br><br>Page 149<br>1 A Yes.<br>2 Q Now, this indicates total cost before breakage.<br>3 A Yes.<br>4 Q Did you take into account any breakage<br>5 calculation?<br>6 A I did not.<br>7 Q Do you know what breakage is?<br>8 A It's an arrangement with the user of the<br>9 product, the broadcast entity.  It's a cost reduction<br>10 per arrangement.<br>11 Q. Now, the next number that was important to your<br>12 analysis is the Israeli cost data; is that correct?<br>13 A Yes.<br>14 Q And you believed the most detailed Israeli cost<br>15 data was in UCP004971-4972; is that right?<br>16 A Yes. At the time.<br>17 Q     Right. And that's Exhibit -- what we've marked<br>18 as Exhibit 6; correct?<br>19A Yes.<br>20Q     Okay. I want you to pull out Exhibit 6,<br>21please. Thank you.<br>22So this document which bears a March 11, 2014<br>23date is not the most immediate budget prior to<br>24production of the pilot; is that right? | |

| Deposition Designation | Objection & Response |
|---|---|
| Page 150<br>6 Q Okay. And if you turn to Schedule B of your<br>7 report --<br>8 A Yes.<br>9 Q -- the calculation that you performed was to<br>10 subtract from the 21,464,745 number the total amount of<br>11 the Israel costs anticipated for 2 through 6 episodes;<br>12 is that right?<br>13 A Well, I think you misspoke. I took the<br>14 New Mexico/Croatia number Episodes 2 through 6 and<br>15 subtracted the Israeli number. Yes.<br>16 Q Okay. And, again, that Israeli cost data,<br>17 17,535,425, was drawn specifically from Exhibit 6?<br>18 A Exhibit 6. Correct.<br>19 Q And you agree with me, do you not, that that<br>20 calculation of 17,535.425 number appears to be drawn<br>21 from the pattern amount of 3,507,085 times 5; correct?<br>22 A Yes.<br>23 Q So the sum of that subtraction that you reached<br>24 was 3,929,320; correct?<br>25 A Yes.<br><br>Page 151<br>1 Q And to you, what does that number represent?<br>2 A Incremental costs.<br>3 Q The incremental costs incurred as a result of<br>4 the relocation of the production to Croatia and<br>5 New Mexico; is that right?<br>6 A No. the Total incremental costs<br>7 New Mexico/Croatia actually incurred from what we<br>8 though we were going to incur and expected to incur in | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>151:10-25<br>MIL, 402,403<br><br>Defendant's Response:<br><br>"MIL" not a proper |

| Deposition Designation | Objection & Response |
|---|---|
| 9 Israel.<br>10 Q Okay. Now, you then deducted certain amounts<br>11 relating to tax credits; is that right?<br>12 A Yes.<br>13 Q So if you look at Schedule A, you deducted from<br>14 the $3.9 million number the amount of $1,571,445; is<br>15 that right?<br>16 A Yes.<br>17 Q And that's how you reached your $2,357,875?<br>18 A That's correct.<br>19 Q All right. So the film tax credit calculation<br>20 is set forth on another schedule. That's Schedule C;<br>21 right?<br>22 A That's correct.<br>23 Q All right.  I'm looking at Schedule C now.<br>24 That's page 13 of your report.<br>25. A Yes.<br><br><u>Page 152</u><br>1 Q The realized tax credit for the New Mexico<br>2 production, you indicated that that was from<br>      UCP004504;<br>3 is that right?<br>4 A Yes.<br>5 Q Okay.  We'll come back to that.<br>6 On the anticipated Israel tax credit, you have<br>7 2,104,000; right?<br>8 A Yes.<br>9 Q And that is derived from UCP004971; is that<br>10 right?<br>11 A which is Exhibit 6<br>12 Q So on Exhibit 6 I see on the e-mail sent by<br>13 Mr. Gaskin to Mr. Winemaker and Ryan Greig an<br>      amount<br>14 that's listed as IS Tax Cr, an amount of 3,100,000.<br>15 A Yes.<br>16 Q. So how did you calculate the 2.1 million from | objection; tax credit is relevant to damage calculation based on witness' experience and education.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><u>Plaintiff's Objections</u>:<br>152:1-25<br>MIL, 402,403<br><br><u>Defendant's Response</u>:<br><br>"MIL" not a proper objection; tax credit is relevant to damage calculation based on witness' experience and education. |

| Deposition Designation | Objection & Response |
|---|---|
| 17 that $3.1 million amount?<br>18 A. Well, some of the tax credit, the 3,100,000,<br>19 results from the pilot that was completed.  So I wanted<br>20 to remove that effect.  So I calculated the percentage<br>21 3 million 100 over the 25,130 spent and used that<br>22 percentage against the 17.535.  And I thought that was<br>23 the estimated anticipated credit for Episodes 2 through<br>24 6 if done in Israel.  Then I was comparing apples to<br>25 apples.<br><br>Page 153<br>1 Q And why didn't you use the actual Israeli tax<br>2 credit that was provided on the pilot?<br>3 A. Because it included – the pilot is not an<br>4 event of loss.  That's Episode 1.  And I'm only doing<br>5 Episodes 2 through 6 because they're the ones that are<br>6 the event of the loss.<br>7 Q Okay.  So I want to make sure I understand your<br>8 analysis here.<br>9 So if you turn to Shapiro Exhibit 9, which is<br>10 the production cost recap report –<br>11 Do you have that?<br>12 A Yeah.<br>13 Q – on page 18227 –<br>14 A Okay.<br>15 Q – there is a tax credit recap in the lower<br>16 left-hand corner; correct?<br>17 A Yes.<br>18 Q. And in it reflects the insured credit on –<br>19 excuse me – the Israel credit on the pilot as being,<br>20 under current, $1,234,699.  That's the actual tax credit | <br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>153:1-25<br>MIL, 402,403<br><br>Defendant's Response:<br><br>"MIL" not a proper objection; tax credit and calculations relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 21 applied to the pilot; correct?<br>22 A It appears to be.  Yes.<br>23 Q So, again, I want to understand why you would<br>24 not have deducted 1,234,699 from 3,100,000 in order to<br>25 determine the amount of tax credit available for<br><br>Page 154<br>1 Episodes 2-6?<br>2 A I think I already had computed the tax credit<br>3 before I realized this document had that. But your<br>4 approach would also be appropriate.<br>5 I used the ratio approach when I could have<br>6 also used the actual pilot credit and subtracting it out<br>7 of the estimate.<br>8 Q Under the calculation where you take the actual<br>9 Israeli credit on the pilot of 1,234,699k –<br>10 A Yeah.<br>11 Q – and you deduct it from the 3.1 million, you<br>12 come up with a calculation that is less than the<br>13 2.4 million that's reflected in your chart; isn't that<br>14 right?<br>15 A The 2 million 104?<br>16 Q I'm sorry.  The 2 million 104.<br>17 A Yes.  You would substitute that subtraction –<br>18 the result of that subtraction in there.<br>19 Q Which is approximately 1,866,000 – right? –<br>20 doing a rough match calculation?<br>21 A Yeah.  It would be less; therefore, causing the<br>22 additional credit to even be more valuable.<br>23 Q Now, in calculating the additional credit<br>24 realized, the economic benefit, and subtracting that<br>25 from the total amount of incremental cost –<br><br>Page 155<br>1 A. Yes.<br>2 Q – did you do any matching analysis with<br>3 respect to the tax credit versus the costs that were | Plaintiff's Objections:<br>154:1-25<br>MIL, 402,403<br><br>Defendant's Response:<br><br>"MIL" not a proper objection; tax credit and calculations relevant and not prejudicial.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 4 charged?<br>5 A No.<br>6 Q Okay.  So under matching principles, wouldn't<br>7 it be appropriate to match the amount of the credit,<br>8 i.e., the revenues, to the costs actually incurred in<br>9 applying this calculation?<br><br>12 THE WITNESS:  Well, that would be an<br>13 alternative technique.  But, quite frankly, these are<br>14 given numbers, and they don't have to be matched with<br>15 anything.  They're facts.<br>16 BY MS. COYOCA:<br>17 Q Well, but for purposes of performing a<br>18 calculation of loss based on the definition in the<br>19 policy and the insurable production cost, is it your<br>20 position that you do not need to match tax credit<br>21 revenue to the actual costs that it relates to?<br><br>24 THE WITNESS:  My only position on the tax<br>25 credit is it's an economic benefit realized by the<br><br>Page 156<br>1 relocation.  And it should be, as we previously<br>2 discussed, a mitigating circumstances in regard to the<br>3 expected expense or extra expense loss.<br>4 BY MS. COYOCA:<br>5 Q When you state that applying matching<br>6 principle of revenue to actual cost incurred, that<br>7 that's an alternative technique, why did you not employ<br>8 it here?<br><br>11 THE WITNESS: To compute the number – I'm | 155:1-25<br>MIL, 402,403<br><br>Defendant's Response:<br><br>"MIL" not a proper objection; tax credit and calculations relevant and not prejudicial.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>156:1-25<br>MIL, 402,403<br><br>Defendant's Response:<br><br>"MIL" not a proper objection; tax credit and calculations relevant and not prejudicial. |

**1444**

| Deposition Designation | Objection & Response |
|---|---|
| 12 looking for the economic benefit – the matching isn't<br>13 necessary.<br><br>15  Q Why not?<br>16 A I don't see any reason why it would have to be<br>17 done.  There are three facts presented.  You make a<br>18 calculation.  You don't have to match it with anything.<br>19 If this is the credit they received, they received it<br>20 for some reason.  It's been matched and reviewed by the<br>21 government authorities.<br>22 Q So let's get to that.<br>23 Did you actually review the tax credit<br>24 calculations that were – excuse me – the tax credit<br>25 reports that were provided by the taxing authorities in<br><br>Page 157<br>1 Croatia and New Mexico?<br>2 A That wasn't produced to me.<br>3 Q So what do you base your statement on that the<br>4 tax credits were already matched?<br>5 A Just my general understanding of how the<br>6 procedure works.<br>7 Q What is your general understanding of how the<br>8 procedure works?<br>9 A That applications are made to government<br>10 authorities.  The matching takes place at that time, and<br>11 they can choose whether to audit or review it.  And then<br>12 the credit is given.<br>13 Q And as part of that process, the actual costs<br>14 are reviewed; correct?<br>15 A Yes. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>157:1-25<br>MIL, 402,403<br><br>Defendant's Response:<br><br>"MIL" not a proper objection; tax credit and calculations relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 16 Q And the actual costs are compared against the<br>17 tax credit available, i.e., the matching occurs; is<br>     that<br>18 right?<br>19 A Yes.<br><br><br>22 THE WITNESS:  In most localities, yes.<br>23 BY MS. COYOCA:<br>24 Q and do you know if that occurred in Croatia?<br>25 A I'm not familiar with the rules in Croatia.<br><br><u>Page 160</u><br>6 Q If the – any tax credits accorded to the<br>7 insured are not provided for in the calculation of<br>8 insurable production cost, then why did you apply it<br>9 here?<br>10 A Well, it's just my understanding in dealing<br>11 with an insurance claim that the insured who has<br>12 suffered a loss can't economically benefit from<br>     such<br>13 loss.  In this case, they did.<br><br><u>PLAINTIFFS' 106 COUNTER-DESIGNATION:</u><br><br><u>Page 160</u><br><br>14 Q. But under the terms of the contract between the<br>15 parties, there's no provision for the application of the<br>16 tax credit; is that right?<br><br>19 THE WITNESS: Counselor, I'm not a lawyer, and<br>20 I'm not familiar with the insurance contract in that<br>21 respect.<br><br><u>END PLAINTIFFS' 106 COUNTER-DESIGNATION</u> | <u>Plaintiff's Objections:</u><br>160:6-13<br>MIL, 402,403<br><br><u>Defendant's Response:</u><br><br>"MIL" not a proper objection; tax credit and calculations relevant and not prejudicial. |

**1446**

| Deposition Designation | Objection & Response |
|---|---|
| Page 161<br>6 Q would – the calculation under the taxing<br>7 authorities, would their calculation be relevant to<br>    your<br>8 analysis, do you believe?<br>9 A Well, I would hope it would be the same as put<br>10 on this document.  I can't see a reason why the<br>    number<br>11 wouldn't be the same.  I can only use the data<br>    that's<br>12 available.<br>13 Q Under GAAP principles – separate and apart<br>14 from what you did, under GAAP principles do you<br>    think it<br>15 is necessary under the matching principle to match<br>16 revenue with the associated costs, i.e., that portion<br>    of<br>17 the tax credit with the associated costs attributable<br>    to<br>18 that revent under GAAP?<br><br><br>20 THE WITNESS: Well, if you had a GAAP<br>21 situation, yes, it would be appropriate to match.<br>22 BY MS. COYOCA:<br><br>Page 180<br>25 Q In approximately how many cases have you been<br><br>Page 181<br>1 retained as an expert on behalf of the plaintiff?<br>2 A Well, I have more plaintiffs.  About 70 percent<br>3 of my cases are plaintiff.<br>4 Q And what is your best estimate of the number of<br>5 times you've been retained as an expert in the 15 to<br>6 20 years you've been doing expert work?<br>7 A 40 times | Plaintiff's Objections:<br>161:6-18; 161:20-22<br>MIL, 402,403<br><br>Defendant's Response:<br><br>"MIL" not a proper objection; tax credit and calculations relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| 8 Q So 70 percent of those 40 times is your<br>9 estimate of the time that you've rendered services on<br>10 behalf of plaintiffs?<br>11 A Yes.<br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 181<br><br>12 Q. And the remaining 30 percent, I take it, would<br>13 be for defendants?<br>14 A. Would be defendants. In fact, most of my<br>15 defendants would be insurance companies.<br>16 Q. Is there a particular insurance company for<br>17 which you primarily render services?<br>18 A. No.<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION<br><br>Page 181<br>19 Q Have you previously ever rendered expert<br>20 services to OneBeacon?<br>21 A No.<br><br>Page 185<br>15 MS. CRAPSTER:  Atlantic will reserve questions<br>16 for trial. | |

17.    **STEPHEN SMITH VOL. 1—April 18, 2017**

| Deposition Designation of Stephen Smith Vol 1, April 18, 2017 |
|---|
| p. 22, l. 20-p. 22, l. 22;p. 24, l. 14-p. 24, l. 18;p. 24, l. 25-p. 25, l. 3;p. 25, l. 6-p. 25, l. 7;p. 30, l. 20-p. 30, l. 22;p. 30, l. 24-p. 30, l. 25;p. 31, l. 4-p. 31, l. 7;p. 31, l. 10-p. 31, l3;p. 31, l. 16-p. 31, l. 16;p. 32, l. 23-p. 33, l. 12;p. 36, l. 9-p. 36, l. 19;p. 37, l. 24-p. 37, l. 24;p. 38, l. 1-p. 38, l. 13;p. 39, l. 5-p. 39, l. 9;p. 40, l. 11-p. 40, l. 13;p. 40, l. 17-p. 41, l. 11;p. 41, l. 13-p. 41, l. 19;p. 44, l. 2-p. 44, l. 9;p. 45, l. 4-p. 45, l. 5;p. 45, l. 8-p. 45, l. 12;p. 49, l. 1-p. 49, l. 8;p. 49, l. 15-p. 49, l. 16;p. 56, l. 16-p. 57, l. 9;p. 57, l. 14-p. 57, l. 16;p. 63, l. 21-p. 63, l. 23;p. 64, l. 5-p. 65, l. 18;p. 68, l. 12-p. 69, l. 11;p. 72, l. 19-p. 72, l. 21;p. 72, l. 23-p. 73, l. 4;p. 78, l. 17-p. 79, l. 9;p. 80, l. 23-p. 81, l. 1;p. 82, l, 5- p. 82, l. 11;p. 82, l. 14-p. 82, l. 14;p. 83, l, 3-p. 83, l. 5;p. 83, l. 8-p. 83, l. 19;p. 83, l. 22-p. 83, l. 22;p. 84, l. 23-p. 85, l. 1;p. 85, l. 4-p. 85, l. 10;p. 85, l. 13-p. 85, l. 21;p. 86, l. 11-p. 86, l. 14;p. 86, l. 17-p. 87, l. 6;p. 87, l. 8-p. 87, l. 17;p. 87, l. 20-p. 88, l. 11;p. 93, l. 13-p. 93, l. 17;p. 93, l. 22-p. 93, l. 23;p. 94, l. 1-p. 94, l. 6;p. 94, l. 9-p. 94, l. 10;p. 96, l. 18-p. 96, l. 22;p. 96, l. 24-p. 96, l. 24;p. 97, l. 14-p. 97, l. 18;p. 97, l. 21-p. 98, l. 7; p. 99, l. 3-p. 99, l. 21;p. 100, l. 15-p. 100, l. 20;p. 100, l. 22-p. 101, l. 7;p. 102, l. 5-p. 103, l. 1;p. 103, l. 9-p. 104, l. 1;p. 104, l. 12-p. 104, l. 15;p. 104, l. 18-p. 104, l. 22;p. 104, l. 24-p. 105, l. 7;p. 106, l. 17-p. 106, l. 21;p. 106, l. 24-p. 107, l. 16;p. 107, l. 19-p. 108, l. 20;p. 120, l. 5-p. 120, l. 7;p. 120, l. 9-p. 120, l. 9;p. 121, l. 1-p. 121, l. 4;p. 121, l. 7-p. 121, l. 12;p. 121, l. 15-p. 121, l. 15;p. 122, l. 16-p. 122, l. 19;p. 122, l. 22-p. 122, l. 22;p. 129, l. 7-p. 129, l. 9;p. 132, l. 18-p. 132, l. 20;p. 132, l. 23-p. 133, l. 2;p. 133, l. 4-p. 133, l. 9;p. 133, l. 11-p. 133, l. 11;p. 139, l. 8-p. 139, l. 11;p. 139, l. 14-p. 139, l. 24;p. 140, l. 2-p. 140, l. 3;p. 140, l. 17-p. 140, l. 21;p. 140, l. 24-p. 141, l. 8;p. 141, l. 11-p. 142, l. 10;p. 142, l. 13-p. 142, l. 16;p. 142, l. 19-p. 142, l. 24;p. 163, l. 13-p. 163, l. 16;p. 163, l. 19-p. 163, l. 24;p. 164, l. 12-p. 164, l. 14;p. 164, l. 17-p. 165, l. 2;p. 165, l. 8-p. 166, l. 1;p. 166, l. 12-p. 166, l. 13;p. 166, l. 16-p. 166, l. 16;p. 170, l. 6-p. 170, l. 16;p. 170, l. 18-p. 170, l. 25;p. 171, l. 3-p. 171, l. 9;p. 171, l. 12-p. 171, l. 15;p. 176, l. 9-p. 176, l. 20;p. 177, l. 7-p. 177, l. 10;p. 177, l. 13-p. 177, l. 15;p. 177, l. 18-p. 178. l. 16;p. 179, l. 6-p. 179, l. 24;p. 180, l. 1-p. 180, l. 5;p. 180, l. 8-p. 180, l. 10;p. 180, l. 18-p. 180, l. 20;p. 180, l. 23-p. 180, l. 23;p. 181, l. 12-p. 181, l. 15;p. 181, l. 18-p. 181, l. 24;p. 182, l. 2-p. 183, l. 10;p. 184, l. 10-p. 184, l. 13;p. 184, l. 16-p. 184, l. 17;p. 203, l. 4-p. 203, l. 7;p. 203, l. 15-p. 204, l. 5;204, l. 19-p. 205, l. 10; p. 205, l. 18-p. 205, l. 23;p. 206, l. 11-p. 206, l. 15;p. 206, l. 22-p. 208. l. 5;p. 208, l. 16-p. 208, l 19;p. 208, l. 22-p. 208, l. 25;p. 210, l. 19-p. 210, l. 21;p. 210, l. 23-p. 211, l. 18;p. 211, l. 21-p. 211, l. 24;p. 212, l. 20-p. 212, l. 23;p. 213, l. 1-p. 213, l. 20;p. 215, l. 21-p. 215, l. 25;p. 216, l. 3-p. 216, l. 6;p. 216, l. 8-p. 216, l. 12;p. 216, l. 15-p. 216, l. 18;p. 216, l. 21-p. 216, l. 25;p. 217, l. 3-p. 217, l. 8;p. 217, l. 11-p. 217, l. 11;p. 218, l. 3-p. 218, l. 9;p. 218, l. 12-p. 218, l. 12;p. 219, l. 10-p. 219, l. 11;p. 219, l. 14-p. 219, l. 14;p. 220, l. 22-p. 220, l. 25;p. 221, l. 3-p. 221, l. 8;p. 222, l. 5-p. 222, l. 13;p. 223, l. 4-p. 223, l. 6;p. 223, l. 9-p. 223, l. 13;p. 223, l. 16-p. 224, l. 2;p. 224, l. 5-p. 224, l. 6;p. 224, l. 25-p. 226, l. 4;p. 226, l. 7-p. 226, l. 7;p. 226, l. 21-p. 227, l. 21;p. 227, l. 24-p. 227, l. 24;p. 229, l. 20-p. 230, l. 8;p. 230, l. 18-p. 231. l. 3;p. 238, l. 11-p. 238, l. 20;p. 239, l. 18-p. 240, l. 10;p. 242, l. 11-p. 242, l. 12;p. 242, l. 15-p. 242, l. 17;p. 243, l. 17-p. 243, l. 24;p. 244, l. 1-p. 244, l. 8;p. 245, l. 17-p. 245, l. 25;p. 246, l. 3-p. 247, l. 2;p. 247, l. 19-p. 247, l. 21;p. 247, l. 24-p. 248, l. 1;p. 249, l. 5-p. 249, l. 9;p. 249, l. 12-p. 248, |

1

1. 22;p. 249, 1. 25-p. 251, 1. 3;p. 251, 1. 6-p. 251, 1. 9;p. 252, 1. 8-p. 252, 1. 11;p. 253, 1. 23-p. 253, 1. 24;p. 254, 1. 1-p. 254, 1. 24;p. 255, 1. 2-p. 255, 1. 8;p. 255, 1. 11-p. 255, 1. 14;p. 255, 1. 18-p. 255, 1. 18;p. 257, 1. 6-p. 258. 1. 2;p. 258, 1. 22-p. 259, 1. 9; p. 262, l. 11-p. 262, l. 15;p. 262, 1. 18-p. 262, 1. 22;p. 263, 1. 2-p. 263, 1. 14;p. 264, l. 10-p. 264, l. 25;p. 265, 1. 2-p. 265, 1. 10;p. 265, 1. 13-p. 266, 1. 14;p. 266, 1. 17-p. 267, 1. 3;p. 267, l. 21-p. 268, l. 8;p. 269, 1. 2-p. 269, 1. 7;p. 269, 1. 10-p. 269, 1. 10;p. 273, l. 17-p. 274, l. 19;p. 275, 1. 5-p. 275, 1. 10;p. 278, 1. 2-p. 278, 1. 21;p. 278, 1. 24-p. 278, 1. 24;p. 279, 1. 1-p. 279, 1. 3;p. 279, 1. 6-p. 279, 1. 10;p. 279, 1. 14-p. 279, 1. 17;p. 282, 1. 5-p. 282, 1. 9;p. 282, 1. 11-p. 282, 1. 11;p. 284, 1. 4-p. 284, 1. 5;p. 284, 1. 21-p. 284, 1. 25;p. 290, 1. 22-p. 291, 1. 3;p. 291, 1. 8-p. 291, 1. 15;p. 301, l. 22-p. 302, l. 16;p. 302, 1. 19-p. 303, 1. 22;p. 304, l. 14-p. 305, l. 6;p. 305, 1. 9-p. 306, l. 7;p. 307, 1. 19-p. 307, 1. 22;p. 307, 1. 25-p. 307, 1. 25;p. 314, l. 21-p. 315, l. 16;p. 316, 1. 11-p. 316, 1. 13;p. 316, 1. 16-p. 316, 1. 21;p. 318, 1. 2-p. 318, 1. 20;p. 319, 1. 9-p. 319, 1. 18;p. 319, 1. 21-p. 319, 1. 25;p. 320, 1. 10-p. 320, 1. 19;p. 321, 1. 6-p. 322, 1. 5;p. 322, 1. 8-p. 322, 1. 14;p. 323, 1. 7-p. 323, 1. 18;p. 324, 1. 5-p. 324, 1. 8;p. 326, 1. 1-p. 326, 1. 16;p. 327, 1. 10-p. 327, 1. 24;p. 329, 1. 10-p. 330, 1. 3;p. 33o, 1. 6-p. 330, 1. 8;p. 331, 1. 7-p. 331, 1. 19;p. 331, 1. 24-p. 332, 1. 3;p. 332, 1. 6-p. 332, 1. 18;p. 333, 1. 7-p. 334, 1. 8;p. 335, 1. 3-p. 335, 1. 22;p. 336, 1. 6-p. 336, 1. 13;p. 336, 1. 23-p. 337, 1. 6;p. 337, 1. 10-p. 337, 1. 18; p. 337, 1. 21-p. 338, 1. 9;p. 338, 1. 14-p. 338, 1. 22;p. 338, 1. 25-p. 339, 1. 14;p. 339, 1. 17-p. 339, 1. 21;p. 339, 1. 24-p. 340, 1. 1;p. 341, 1. 19-p. 342, 1. 8;p. 342, 1. 13-p. 342, 1. 16;p. 342, 1. 19-p. 343, 1. 1;p. 343, 1. 4-p. 343, 1. 9;p. 343, 1. 12-p. 344, 1. 2;p. 344, 1. 5-p. 344, 1. 14;p. 344, 1. 17-p. 344, 1. 18;p. 344, 1. 24-p. 345, 1. 13;p. 345, 1. 19-p. 346, 1. 8;p. 346, 1. 13-p. 346, 1. 19;p. 346, 1. 22-p. 347, 1. 3;p. 347, 1. 6-p. 347, 1. 6;p. 347, 1. 13-p. 347, 1. 16;p. 347, 1. 20-p. 347, 1. 22;p. 348, 1. 17-p. 348, 1. 25;p. 349, 1. 3-p. 349, 1. 3;p. 350, 1. 1-p. 350, 1. 12;p. 352, 1. 22-p. 353, 1. 16;p. 357, 1. 8-p. 357, 1. 19;p. 357, 1. 22-p. 358, 1. 2;p. 364, 1. 8-p. 364, 1. 18;p. 364, 1. 21-p. 364, 1. 25;p. 365, 1. 3-p. 365, 1. 24;p. 366, 1. 2-p. 366, 1. 2;p. 368, 1. 23-p. 370, 1. 11;p. 370, 1. 14-p. 371, 1. 14;p. 371,1. 17-p. 371, 1. 20;p. 371, 1. 22-p. 373, 1. 8;p. 374, 1. 16-p. 375, 1. 1;p. 375, 1. 3-p. 375, 1. 22;p. 375, 1. 25-p. 375, 1. 25;p. 376, 1. 25-p. 377, 1. 3;p. 384, 1. 25-p. 386, 1. 17;p. 386, 1. 22-p. 386, 1. 24;p. 387, 1. 2-p. 387, 1. 13;p. 387, 1. 22-p. 387, 1. 24;p. 388, 1. 1-p. 388, 1. 6;p. 388, 1. 12-p. 388, 1. 22;p. 388, 1. 25-p. 389, 1. 5;

| Deposition Designation | Objection & Response |
|---|---|
| Defendant's Designation of Stephen Smith Vol. 1 | |
| Page 22<br>20 Q. Would you please state your full name for<br>21 the record.<br>22 A. Stephen David Smith | Plaintiffs' Objections:<br>No objection – Page 22.<br><br>Defendant's Response: |
| Page 24<br>14 Q. And what was your part in this event?<br>15 A. I was the, at the time, the head of security<br>16 for NBCUniversal.<br>17 Q. Who's your current employer?<br>18 A. NBCUniversal. 25 Q. What is your current title, please, sir? | Plaintiffs' Objections:<br>V – 24:14-16.<br><br>No objection – 24:17-18; 24:25.<br><br>Defendant's Response: |
| Page 25<br>1 A. Director international security.<br>2 Q. How long have you held that post?<br>3 A. For two years, approximately.<br>6 Q. What position did you hold before?<br>7 A. Head of security, Europe. | Plaintiffs' Objections:<br>No objection – Page 25.<br><br>Defendant's Response: |
| Page 30<br>20 Q. And can you tell me generally what you<br>21 believe your personal knowledge to be in terms of<br>22 subject matter, broad subject matter?<br>24 THE WITNESS: The security situation around<br>25 production in Israel. | Plaintiffs' Objections:<br>No objection – Page 30.<br><br>Defendant's Response: |
| Page 31<br>4 Q. Were you personally involved in monitoring<br>5 and reporting the security situation in and around<br>6 Israel? | Plaintiffs' Objections:<br>402, 403, MIL – Page 31.<br><br>Defendant's Response: |

3

**1451**

| | |
|---|---|
| 7 A. I was<br>10 Q. And specifically, were you involved in<br>11 reviewing and reporting the security situation around<br>12 Israel associated with a production that's referred<br>13 to as "Dig"?<br>16 THE WITNESS: Yes. | |
| Page 32<br>23 Q. Mr. Smith, let me go back to the time that<br>24 you were holding the title of head of security for<br>25 Europe for NBCUniversal | Plaintiffs' Objections:<br>No objection – Page 32.<br><br>Defendant's Response: |
| Page 33<br>1 What years did you hold that position,<br>2 please, sir?<br>3 A. I joined universal in 2013, and I was<br>4 promoted in 2015.<br>5 Q. What was the first position you held in<br>6 2013?<br>7 A. Head of security Europe.<br>8 Q. Did you have a physical office location in<br>9 connection with that job?<br>10 A. Yes.<br>11 Q. Where was your physical office located?<br>12 A. London | Plaintiffs' Objections:<br>No objection – Page 33.<br><br>Defendant's Response: |
| Page 36<br>9 Q. When you were head of security Europe, did<br>10 you have colleagues who were head of security for<br>11 other geographic regions of the world?<br>12 A. Yes. There were people who were in<br>13 different positions in geographical regions.<br>14 Q. Can you tell me who they were?<br>15 A. And we had Erin Noordeloos, who was director<br>16 international security. We had, at that time, Brian | Plaintiffs' Objections:<br>No objection – Page 36.<br><br>Defendant's Response: |

4

| | |
|---|---|
| 17 Brady, who was vice-presidents based out of L.A. We<br>18 have, and had, Tom McCarthy, chief security officer,<br>19 based in New York.<br><br>Page 37<br>24 Q. And what were you asked to do in Israel? | <br><br><br>Plaintiffs' Objections:<br>No objection – Page 37.<br><br>Defendant's Response: |
| Page 38<br>1 THE WITNESS: My role with the company is<br>2 security risk management. I manage risk for the<br>3 business, identify risk.<br>4 BY MS. SCOTT REED:<br>5 Q. What projects were you asked to handle in<br>6 Israel, or productions if that's a more precise way<br>7 to ask it?<br>8 A. I was asked to support the Dig production<br>9 from our security crisis management role.<br>10 Q. What is the security crisis management role?<br>11 A. To insure we can keep our personnel, our<br>12 assets, our reputation, and our content safe and<br>13 secure, and mitigate risk. | Plaintiffs' Objections:<br>No objection – Page 38.<br><br>Defendant's Response: |
| Page 39<br>5 Q. To the best of your recollection, was the<br>6 Dig production the first production where you had<br>7 needed to oversee security for something that was<br>8 being produced in and around Israel?<br>9 A. Yes.<br><br>Page 40 | Plaintiffs' Objections:<br>No objection – Page 39.<br><br>Defendant's Response:<br><br><br><br>Plaintiffs' Objections:<br>No objection – Page 40. |

| | |
|---|---|
| 11 Have you worked in connection with security<br>12 in the Middle East region on any productions?<br>13 A. No.<br>17 At the time when you were head of security<br>18 Europe, can you describe for me your job duties?<br>19 A. I was responsible for the security of<br>20 personnel, assets, events, content, and company<br>21 reputation for the United Kingdom and Europe.<br>22 Q. And can you describe for the court more<br>23 particularly what that means you would actually do as<br>24 your work?<br>25 A. I had a fairly broad agreement that would | Defendant's Response: |
| Page 41<br>1 include assessing risk to all of the categories I<br>2 previously mentioned, mitigating risk, writing<br>3 security protocols and policy, designing security<br>4 systems, producing security reports, conducting<br>5 security assessments.<br>6 Q. Anything else you can think of?<br>7 A. Identifying and mitigating risk is the<br>8 primary role, and responding to emergency and crisis<br>9 situations.<br>10 Q. Did you personally have involvement in the<br>11 decision to move the Dig production out of Israel?<br>13 THE WITNESS: I provided information to the<br>14 company regarding the security situation in Israel.<br>15 BY MS. SCOTT REED:<br>16 Q. Did you make any recommendations about what | Plaintiffs' Objections:<br>No objection – 41:1-9.<br><br>402, 403, MIL – 41:10-11; 41:13-19.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| | |
|---|---|
| 17 should happen with production based upon the<br>18 information that you provided?<br>19 A. I did. | |
| | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 44. |
| Page 44<br>2 Q. So separate and apart from the particular<br>3 wording, let me ask you as a security professional,<br>4 what recommendations did you provide in connection<br>5 with the decision to move Dig out of Israel?<br>6 A. I stated to the company that we could not<br>7 guarantee the safety of security of personnel in<br>8 Israel given the security situation, and after<br>9 assessment from multiple sources of the risk. | <u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 45. |
| Page 45<br>4 Q. Anything else that you recall independent of<br>5 looking at the papers?<br>8 THE WITNESS: I carried out an assessment of<br>9 risk before, during, and after the production,<br>10 measuring risk, from multiple sources of information,<br>11and presenting my findings to the company, to make a<br>12 decision. | <u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of |

7

| | |
|---|---|
| | the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. <br><br> Plaintiffs' Objections: <br><br> 402, 403 – Page 49. <br><br> Defendant's Response: <br> This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 49 <br> 1 Q. Did you have a prior career before <br> 2 NBCUniversal that caused you to be called upon as a <br> 3 witness? <br> 4 A. Yes. <br> 5 Q. And what was that, please, sir? <br> 6 A. I -- I've been involved in law enforcement <br> 7 and corporate security and risk management for the <br> 8 past 28 years. <br> 15 Q. Were you a police officer? <br> 16 A. Yes. | |
| | Plaintiffs' Objections: <br> No objection – Page 56. <br><br> Defendant's Response: |
| Page 56 <br> 16 Q. Will you go back to the summer of 2014, <br> 17 please, sir, when the Dig production was in Israel <br> 18 and then moving out of Israel, was there an <br> 19 international security and crisis management group or <br> 20 division then? | |

| | |
|---|---|
| 21 A. Yes.<br>22 Q. And can you tell me who made up that<br>23 division this summer of 2014?<br>24 A. Erin Noordeloos, director, international<br>25 security. | <u>Plaintiffs' Objections:</u><br>No objection – Page 57.<br><br><u>Defendant's Response:</u> |
| Page 57<br>1 Stephen Smith, head of security Europe.<br>2 Chris Biggs, security analyst, international<br>3 security.<br>4 Kathleen Mullins, PA and projects<br>5 coordinator, international security.<br>6 And, Rebecca Cameron, director, business<br>7 continuity.<br>8 No, sorry. I'm not sure, business<br>9 continuity manager, not director, sorry.<br>14 Q. Did you report to Ms. Noordeloos at that<br>15 time?<br>16 A. Yes | <u>Plaintiffs' Objections:</u><br>402, 403 – Page 63. |
| Page 63<br>21Q. Mr. Smith, are you a citizen of the United<br>22Kingdom?<br>23 A. Yes. | <u>Defendant's Response:</u><br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what |

9

| | information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |
|---|---|
| | <u>Plaintiffs' Objections:</u><br>402, 403 – 64:5-6. |
| Page 64<br>5 Q. Have you lived in the United States?<br>6 A. No.<br>7 Q. Can you please describe to me your<br>8 educational background after your primary schooling?<br>9 A. I went to -- "primary school," you mean,<br>10 junior school? Yeah --<br>11 Q. I was trying to guess what would be -- what<br>12 would be the most accurate description?<br>13 A. I went -- I went to secondary school, which<br>14 is from the ages of 11 to 17. And then I spent a<br>15 short period of time at a further education college.<br>16 Q. And what was it, please, sir? What was the<br>17 name of it?<br>18 A. AYR College.<br>19 Q. What did you study there?<br>20 A. Management.<br>21 Q. Business management or?<br>22 A. Just general management.<br>23 Q. Was that toward a potential degree program?<br>24 A. No. It was a diploma program.<br>25 Q. And did you obtain that diploma? | No objection – 64:7-25.<br><br><u>Defendant's Response:</u><br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |
| Page 65<br>1 A. No.<br>2 Q. Did you leave that school to do something<br>3 different?<br>4 A. I did.<br>5 Q. Okay. And what was that?<br>6 A. Become a police officer.<br>7 Q. All right, sir. And what formal training do | <u>Plaintiffs' Objections:</u><br>No objection – Page 65.<br><br><u>Defendant's Response:</u> |

10

| | |
|---|---|
| 8 you have in the United Kingdom to become a police<br>9 officer?<br>10 A. You have a approximately nine-month training<br>11 course, which deals with matters of law, interaction<br>12 with community, and -- yeah, mainly -- mainly dealing<br>13 with matters of law and how to apply them.<br>14 Q. All right. And after that nine-month<br>15 training program, did you undertake any other formal<br>16 education, diplomas, degree programs?<br>17 A .I am -- I have undertaken training job<br>18 related. I have not undertaken any education.<br><br>Page 68<br>12 Q. Do you hold any degrees at this point?<br>13 A. No.<br>14 Q. Any licenses or certifications?<br>15 A. No.<br>16 Q. Can you tell me your employment history,<br>17 please, sir, beginning with getting out of the police<br>18 training.<br>19 A. I was a police officer from 1989 until the<br>20 end of '99, and then I finished up in the criminal<br>21 investigation department, which is the U.K. law<br>22 enforcement investigation branch of policing.<br>23 I left the police and I -- and became the<br>24 security manager at International Conference and<br>25 Exhibition Center<br><br>Page 69<br>1 I was then a company risk manager for eight<br>2 years for a national retailer employing 35,000 people | Plaintiffs' Objections:<br>402, 403 – 68:12-15.<br><br>No objection – 68:16-25.<br><br>Defendant's Response:<br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims.<br><br>Plaintiffs' Objections:<br>No objection – Page 69.<br><br>Defendant's Response: |

| | |
|---|---|
| 3 in 800 stores.<br>4 I was then a -- for two years, I was<br>5 security manager for a financial institution.<br>6 I then had a subsequent two years as head of<br>7 security and loss prevention in the U.K. for a online<br>8 retailer.<br>9 And then I joined NBCUniversal.<br>10 Q. Was that in 2013?<br>11 A. Yes | |
| Page 72<br>19 Q. So in 2014 and up to this point in time, if<br>20 you describe what area or division within<br>21 NBCUniversal you work, what label do you use?<br>23 THE WITNESS: International security and<br>24 crisis management<br>25 | Plaintiffs' Objections:<br><br>No objection – Page 72.<br><br>Defendant's Response: |
| Page 73<br>1 BY MS. SCOTT REED:<br>2 Q. And is that a part of the global security<br>3 operations you were describing?<br>4 A. Yes | Plaintiffs' Objections:<br>No objection – Page 73.<br><br>Defendant's Response: |
| Page 78<br>17 Q. All right, sir. I was just asking you for a<br>18 list of things you've done to prepare to give your<br>19 testimony today.<br>20 A. I've reviewed documentation relating to the<br>21 production.<br>22 Q. All right. Anything else?<br>23 A. No.<br>24 Q. You met with Mr. Hayes?<br>25 A. Yes. | Plaintiffs' Objections:<br>No objection – Page 78.<br><br>Defendant's Response: |
| Page 79<br>1 Q. Did you meet with any other attorneys?<br>2 A. Yes.<br>3 Q. Who were they?<br>4 A. Ms. Hoff. | Plaintiffs' Objections:<br>No objection – Page 79.<br><br>Defendant's Response |

| | |
|---|---|
| 5 Q. Okay. Anyone else?<br>6 A. No.<br>7 Q. And how long did you meet with Mr. Hayes to<br>8 prepare?<br>9 A. About nine hours, eight or nine hours. | |
| Page 80<br>23 Q. Have you had discussions with NBCUniversal's<br>24 in-house counsel to prepare for your deposition<br>25 separate and apart from yesterday's meeting? | Plaintiffs' Objections:<br>No objection – Page 80.<br><br>Defendant's Response: |
| Page 81<br>1 A. Yes. | Plaintiffs' Objections:<br>No objection – Page 81.<br><br>Defendant's Response: |
| Page 82<br>5 Q. Do you have any education or training in the<br>6 Middle East history?<br>8 THE WITNESS: No.<br>9 BY MS. SCOTT REED:<br>10 Q. Do you have any education or training in<br>11 modern Middle East politics or development?<br>14 THE WITNESS: No. | Plaintiffs' Objections:<br>No objection – Page 82.<br><br>Defendant's Response: |
| Page 83<br>3 Q. Were you in the process -- or were you in<br>4 the -- in the habit of gathering that information<br>5before you were involved in the Dig production?<br>8 THE WITNESS: I gather and review<br>9 information everywhere NBCUniversal has operations,<br>10 so the Middle East would have come into that. I<br>11 receive intelligence on a daily basis from multiple | Plaintiffs' Objections:<br>402, 403, MIL – Page 83.<br><br>Defendant's Response:<br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice |

13

| | |
|---|---|
| 12 sources regarding the security situation,<br>13 particularly relating to terrorism throughout the<br>14 world.<br>15 BY MS. SCOTT REED:<br>16 Q. So as just part of your general corporate<br>17 responsibilities, do you maintain a certain level of<br>18 reporting to you about security across all areas<br>19 where you may have an interest for NBC?<br>22 THE WITNESS: Yes. | outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 84<br>23 Q. So part of your ongoing job responsibilities<br>24 is that you try to maintain a general awareness of<br>25 all sorts of situations anyplace NBCUniversal might | Plaintiffs' Objections:<br>402, 403, MIL – Page 84.<br><br>Defendant's Response:<br><br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 85<br>1 have operations?<br>4 THE WITNESS: Yes.<br>5 BY MS. SCOTT REED:<br>6 Q. And separate and apart from that generalized | Plaintiffs' Objections:<br>402, 403, MIL – Page 85.<br><br>Defendant's Response:<br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The |

| | |
|---|---|
| 7 information gathering that you have, do you have a<br>8 more particularized approach when it comes to a<br>9 specific production that you're going to be working<br>10 with?<br>13 THE WITNESS: Yes.<br>14 BY MS. SCOTT REED:<br>15 Q. So before you knew that you would be working<br>16 in connection with the Dig production, were you<br>17 maintaining any kind of specific focus on reviewing<br>18 security issues associated with Israel?<br>19 A. I was maintaining focus on all locations<br>20 that NBCUniversal had personnel or assets, and Israel<br>21 is one of those locations. | witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims |
| Page 86<br>11 Q. So before the Dig production had been<br>12 mentioned to you and you knew that you would be<br>13 working with it, were you maintaining any particular<br>14 focus in regard to security updates on Israel?<br>17 THE WITNESS: I receive security updates on<br>18 all locations where NBC has personnel and assets and<br>19 travelers.<br>20 BY MS. SCOTT REED:<br>21 Q. And I'm asking you particular to the<br>22 timeframe before you were working on the Dig<br>23 production, were you doing some particular work that<br>24 focused on Israel? | Plaintiffs' Objections:<br>402, 403, MIL – Page 86.<br><br>Defendant's Response:<br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims |
| Page 87<br>1 THE WITNESS: I wasn't doing particular work | Plaintiffs' Objections:<br>402, 403, MIL – Page 87.<br><br>Defendant's Response: |

15

| | |
|---|---|
| 2 focusing on Israel.<br>3 BY MS. SCOTT REED:<br>4 Q. Were you doing -- prior to the Dig<br>5 production, were you doing particular work focusing<br>6 on the Middle East?<br>8 THE WITNESS: I do general work and receive<br>9 multiple sources of information relating to locations<br>10 where NBCUniversal have personnel, productions, and<br>11 travelers, and that includes Israel and the Middle<br>12 East.<br>13 BY MS. SCOTT REED:<br>14 Q. So speaking about your -- your general<br>15 maintenance of information about Israel and the<br>16 Middle East, can you tell me the sources of the<br>17 information that you're talking about gathering?<br>20 THE WITNESS: The same organizations that I<br>21 mentioned earlier. So I have information from OSAC.<br>22 I receive information from Control Risk Group. I<br>23 receive information from, amongst others, a company<br>24 called Northcott Global Solutions. We review open<br>25 source information from media organizations. | This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 88<br>1 BY MS. SCOTT REED:<br>2 Q. Any others in your general information<br>3 gathering?<br>4 A. We receive information from the U.S. State<br>5 Department, the U.K. Foreign and Commonwealth Office,<br>6 and particularly from my own NBCU analysts prospects. | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 88.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is |

16

7 THE REPORTER: What analysts?
8 THE WITNESS: NBCU.
9 BY MS. SCOTT REED:
10 Q. And who are those NBCU analysts?
11 A. Chris Biggs.

unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 93
13 Q. So starting with my question: How was media
14 information gathered in 2014; you recall that?
15 A. Yes.
16 Q. And you told me that Mr. Biggs did that?
17 A. Yes.
22 Q. Would NBC News be a source that you would
23 expect to be consulted?

Plaintiffs' Objections:
402, 403, MIL – Page 93.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 94
1 THE WITNESS: I would.
2 BY MS. SCOTT REED:
3 Q. Again, I'm talking about 2014 when you're
4 gathering media sources, would it have been your
5 expectation that NBC News would be a media source
6 that you would refer to?
9 THE WITNESS: It would be one of the sources
10 that we would gather information from.

Plaintiffs' Objections:
402, 403, MIL – Page 94.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to

17

| | |
|---|---|
| | Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| **Page 96**<br>18 Q. All right. At this point I want to direct<br>19 your attention to the time period when the Dig<br>20 production was brought to you to participate in.<br>21 A. Yep.<br>22 Q. Do you recall that occurring?<br>24 THE WITNESS: Yes. | <u>Plaintiffs' Objections:</u><br>No objection – Page 96.<br><br><u>Defendant's Response:</u> |
| **Page 97**<br>14 Q. Is the best of your recollection that the<br>15 production Dig was bought to your attention in the<br>16 early part of 2014?<br>17 A. To the best of my recollection.<br>18 Q. What were you asked to do?<br>21 THE WITNESS: I was asked if I would provide<br>22 very generally, security support.<br>23 BY MS. SCOTT REED:<br>24 Q. Who made the request to you?<br>25 A. The request came from Erin Noordeloos, via | <u>Plaintiffs' Objections:</u><br>No objection – 97:14-17.<br><br>402, 403, MIL – 97:18; 97:21-25.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| **Page 98**<br>1 Brian Brady.<br>2 Q. And at that point was Ms. Noordeloos your<br>3 supervisor or boss?<br>4 A. Yes.<br>5 Q. And who was Mr. Brady?<br>6 A. Mr. Brady was the VP of security based in<br>7 L.A. | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 98.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice |

| | |
|---|---|
| | outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 99<br>3 Q. What did -- what did Erin communicate to you<br>4 about Dig?<br>5 A. That there was going to be a production in<br>6 Israel, there had been a request for security<br>7 support, and was I able and willing to support.<br>8 Q. And what was your response?<br>9 A. Yes.<br>10 Q. Did she ask you at that time if you had<br>11 prior experience dealing specifically with Israel?<br>12 A. No.<br>13 Q. Prior to joining NBCUniversal, in your other<br>14 corporate security jobs, did your responsibilities<br>15 involve international security?<br>16 A. Yes.<br>17 Q. In what regard?<br>18 A. In regard to providing security support<br>19 outside of the United Kingdom.<br>20 Q. In which other areas?<br>21 A. Western Europe. | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 99.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 100<br>15 And did you have any prior job experience<br>16 applying your skills in Israel?<br>17 A. No.<br>18 Q. What are the first steps you took after the<br>19 production of Dig was brought to your attention, in<br>20 terms of pursuing your work?<br>22 THE WITNESS: Gathering information from the | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 100.<br><br><u>Defendant's Response:</u><br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, |

19

| | |
|---|---|
| 23 production company in terms of location, production<br>24 premise, numbers of personnel, length of time we<br>25 would be in country, relationships with other | and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 101<br>1 production services companies, and gathering<br>2 information on the security situation specifically to<br>3 Israel and to the region in general.<br>4 BY MS. SCOTT REED:<br>5 Q. When you said gathering information from the<br>6 production company, who was that for Dig?<br>7 A. My contact was in the main Randi Richmond. | Plaintiffs' Objections:<br>402, 403, MIL – Page 101.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 102<br>5 BY MS. SCOTT REED:<br>6 Q. And what was her particular role for Dig so<br>7 far as you understood?<br>8 A. She was one of the senior production team<br>9 who had oversight and management of the production.<br>10 Q. Was she your main contact in terms of<br>11 production?<br>12 A. Yes.<br>13 Q. Were there other members of the production | Plaintiffs' Objections:<br>No objection – Page 102.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is |

14 team that over time, you also communicated with or
15 interacted with?
16 A.Yes.
17 Q.With who were they?
18 A.Mark Binkie.
19 Q.Anyone else?
20 A.Kurt Ford, Kurt.
21 Q.C-O-T-T?
22 A.No.K-U-R-T.
23 Q.Oh, Kurt, pardon me.
24 A.Yeah.
25 Q.Kurt Ford?

Page 103
1 A.Yep.
9 Q.When you were describing -- pardon me,
10 initial steps you mentioned reviewing the --
11 situation -- security situation in Israel and the
12 region, what did you do particularly for that?
13 A. I asked Chris Biggs to gather information
14 from as many sources as possible. So paid for
15 sources, governmental sources.
16 THE REPORTER: So what sources?
17 THE WITNESS: Paid for, yes.
18 THE REPORTER: Paid for?
19 THE WITNESS:Yeah.
20 Governmental sources, open source
21 intelligence and to prepare information for me so we
22 could assess the risk.
23 BY MS. SCOTT REED:
24 Q. After you made that assignment to him, did
25 he prepare a report or wrap up or a summary for you?

Page 104
1 A. He -- he supplied me with information.
12 Q.Was there information, and when I say

cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

<u>Plaintiffs' Objections:</u>
No objection – 103:1.
402, 403, MIL – 103:9-25.

<u>Defendant's Response:</u>
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

<u>Plaintiffs' Objections:</u>
402, 403, MIL – Page 104.

| | |
|---|---|
| 13 information, I'm talking about primary sources or<br>14 reports that you personally would review as opposed<br>15 to Mr. Biggs reviewing and providing to you?<br>18 THE WITNESS:Yes.<br>19 BY MS. SCOTT REED:<br>20 Q.Can you tell me in connection with the Dig<br>21 matter which primary sources you would look at,<br>22 yourself?<br>24 THE WITNESS:OSAC, the FCO, it's the<br>25 Foreign and Commonwealth Office of the United | <u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 105<br>1 Kingdom.<br>2 BY MS. SCOTT REED:<br>3 Q.Any others?<br>4 A.I also consulted personally with the<br>5 regional security officer of the state department.<br>6 Q.Where was that person located?<br>7 A.I met with him in Jerusalem. | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 105.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 106<br>17 Q. What was the result of this initial review<br>18 of the security situation in your mind? In other<br>19 words, what -- what general information or<br>20 observations did you make as a result of this initial<br>21 review? | <u>Plaintiffs' Objections:</u><br>No objection – Page 106.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its |

22

**1470**

| | |
|---|---|
| 24 THE WITNESS: We documented the security<br>25 threats from any number of sources and we also | prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| **Page 107**<br>1 documented the mitigation to those threats. We<br>2 investigated the security threats particular to each<br>3 location and took information from multiple sources<br>4 to compare and contrast.<br>5 BY MS. SCOTT REED:<br>6 Q. Did you draw conclusions as a result of that<br>7 initial review?<br>8 A. Yes.<br>9 Q. What were your conclusions?<br>10 A. That it was safe to proceed with the<br>11 production in the locations that they had proposed<br>12 with the security provision and mitigation that we<br>13 advised.<br>14 Q. After your initial reviews that you have<br>15 described, what were the next steps or work that you<br>16 engaged in in connection with Dig?<br>19 THE WITNESS: I had conversations and<br>20 communication with the production with organizations<br>21 who provide us with information on security, crisis<br>22 management, emergency response. I reviewed this and<br>23 I prepared documentation that would support the<br>24 security provision in country for the production and | <u>Plaintiffs' Objections:</u><br>No objection – Page 107.<br><br><u>Defendant's Response:</u> |

23

**1471**

| | |
|---|---|
| 25 also crisis management response.<br><br>Page 108<br>1 BY MS. SCOTT REED:<br>2Q.What is Max Security Solutions?<br>3A.They're our security vendor.<br>4Q. Did you engage Max Security Solutions to<br>5 work with NBCUniversal in connection with the Dig<br>6 production?<br>7 A.I did.<br>8 Q.What was Max Security Solutions hired to do?<br>9 A.They were hired to provide security<br>10 personnel to support the production on the ground and<br>11 they also provided security intelligence.<br>12 Q.Did they provide security intelligence in a<br>13 written form?<br>14 A.Yes.<br>15 Q.And what sort of written form did those<br>16 take?<br>17 A.Reports.<br>18 Q.Were they provided to you on a regular<br>19 basis?<br>20 A. They were | **Plaintiffs' Objections:**<br>402, 403 – Page 108.<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 120<br>5 Q. Over the course of your dealings with Max<br>6 Security Intelligence, did you find their<br>7 intelligence briefings to be reliable?<br>9 THE WITNESS:They were reliable, yes. | **Plaintiffs' Objections:**<br>402, 403 – Page 120.<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, |

24

Page 121
1 BY MS. SCOTT REED:
2 Q.In terms of facts that they would pass along
3 or report, were there instances when you noted that
4 they were not supported?
7 THE WITNESS:Not to my recollection.
8 BY MS. SCOTT REED:
9 Q.Overall dealing with the Max Security
10 Intelligence written reports that came into you, did
11 you find them to be an authoritative source of
12 information that you could rely upon?
15 THE WITNESS:I found them to be useful.

Page 122
16 Can you confirm for the court that you did
17 rely upon Max Security Intelligence reports as one of
18 the sources that you used to carry out your work for
19 NBCUniversal on Dig?
22 THE WITNESS:Yes.

Page 129
7 Q.Does it fall to someone other than you to
8 make the ultimate decision to remove personnel?
9 A.Yes.

and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403 – Page 121.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403 – Page 122.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims.

Plaintiffs' Objections:
No objection – Page 129.

Defendant's Response:

| | |
|---|---|
| Page 132<br>18  Q.Would you characterize Randi Richmond as<br>19 your primary point of contact in terms of the<br>20 production side?<br>23 THE WITNESS:Yes.<br>24 BY MS. SCOTT REED:<br>25 Q.Was Randi the person you would have most | <u>Plaintiffs' Objections:</u><br>IO – 132:21-22.<br><br><u>Defendant's Response:</u><br>REMOVED FROM DESIGNATIONS |
| Page 133<br>1 frequently interacted with between security and<br>2 production?<br>4 THE WITNESS: She was one of a number of<br>5 people I interacted with.<br>6 BY MS. SCOTT REED:<br>7 Q.Yes, sir. But in terms of either frequency<br>8 or main point of contact, would you say that was<br>9 Randi?<br>11THE WITNESS:Yes. | <u>Plaintiffs' Objections:</u><br>IO – 133:3.<br><br><u>Defendant's Response:</u><br>REMOVED FROM DESIGNATIONS |
| Page 139<br>8 Q.Were you securing security information from<br>9 those sources you've identified today specifically<br>10 for the purposes of Dig or generally on an ongoing<br>11 basis for your company?<br>14  THE  WITNESS:I  was  gathering information<br>15 pertaining to the production and in my management of<br>16 security for the company and international, so I had<br>17 multiple sources of information relating to what was<br>18 happening in Israel and to what was happening in<br>19 other places. | <u>Plaintiffs' Objections:</u><br>402, 403 – Page 139.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |

26

| | |
|---|---|
| 20 BY MS. SCOTT REED:<br>21 Q.From a particular source would you get one<br>22 security update for Israel or Middle East and another<br>23 for general other areas or would it be a single<br>24 master report, so to speak?<br><br>Page 140<br>2 THE WITNESS: Intelligence reporting comes<br>3 in various forms depending on the source.<br>17 BY MS. SCOTT REED:<br>18 Q.As all of that generalized information is<br>19 coming in, was there a particular person who was<br>20 assigned to mine through it, so to speak, and<br>21 synthesize information that was particular to Dig?<br>24 THE WITNESS: Particular to issues in<br>25 Israel, Chris Biggs is my analyst. It's his job to | |
| | Plaintiffs' Objections:<br>402, 403 – Page 140.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |
| Page 141<br>1 gather the information and make it into workable and<br>2 actionable intelligence.<br>3 BY MS. SCOTT REED:<br>4 Q. So in 2014 was it part of his job<br>5 responsibilities to go through the various incoming<br>6 information that you were receiving and to highlight<br>7 for you issues that would be pertinent to the Dig<br>8 production?<br>11THE WITNESS: Yes, he would provide me with<br>12 information from multiple sources.<br>13 BY MS. SCOTT REED:<br>14 Q. Did Mr. Biggs directly receive the Max | Plaintiffs' Objections:<br>402, 403 – Page 141.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |

27

**1475**

15 Security Intelligence written security reports?

16 A.I don't know if he received them directly or

17 I forwarded them on to him. I can't recall. He

18 certainly had sight of the Max Intelligence reports.

19 Q. Did you have Mr. Biggs review them in

20 addition to you reviewing the Max Security

21Intelligence reports?

22 A. That's his job. He's an analyst. He

23 gathers information from multiple sources and, if

24 necessary, makes recommendations to me, points out

25 consistency or inconsistency, looks at sources of

Page 142

1 information.

2 THE REPORTER: Looks at what?

3 THE WITNESS: Sources. That's the role of

4 an analyst, really.

5 BY MS. SCOTT REED:

6 Q.Yes, sir.

7 And if these Max Security Intelligence

8 reports were incoming to you via e-mail, did you make

9 an assignment to him to review them in addition to

10 you reviewing them?

13 THE WITNESS: Chris -- Chris knows what he's

14 doing, and we have a working relationship. He

15 understands how to work with me, how to review

16 information.His job is to gather information from a

19 channels.

20 He can make personal assessments or he can

21 provide raw information for somebody else to make an

**Plaintiffs' Objections:**
402, 403 – Page 142.

**Defendant's Response:**
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims.

28

| | |
|---|---|
| 22 assessment from these multiple sources.We don't<br>23 rely and wouldn't rely on one source of information<br>24 on most occasions. | |
| Page 163<br>13 Based upon your personal interaction with<br>14 Max did you find them to be having the appropriate<br>15 level of experience and expertise to do what you<br>16 needed them to do?<br>19 THE WITNESS: Which -- which part of what<br>20 they did? Providing security personnel? Providing<br>21 intelligence?<br>22 BY MS. SCOTT REED:<br>23 Q. Providing intelligence.<br>24 A. I found them to be -- yes. | <u>Plaintiffs' Objections:</u><br>402, 403 – Page 163.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |
| Page 164<br>12 Q. Were you pleased with the quality of work<br>13 they provided to you in terms of their security and<br>14 intelligence reporting?<br>17 THE WITNESS: Yes.<br>18 MS. SCOTT REED: Let me hand you<br>19 Exhibit 103, please, sir.<br>20 (Exhibit 103 was marked for identification by<br>21 the court reporter and is attached hereto.)<br>22 MS. SCOTT REED: For the record, Exhibit 103<br>23 is Bates numbered UCP2306 through 2307.<br>24 Q. Can you identify what this is, please,<br>25 Mr. Smith | <u>Plaintiffs' Objections:</u><br>402, 403 – Page 164.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |
| Page 165 | <u>Plaintiffs' Objections:</u> |

| | |
|---|---|
| 1 A. It's a -- it's a travel tracker report from<br>2 Control Risks and International SOS.<br>8 Q. What is Control Risks, International SOS?<br>9 A. Control Risks is a security and crisis<br>10 management company. International SOS is an NBC<br>11 vendor who provides travel, security, and medical<br>12 response throughout the world. They also track our<br>13 travelers as part of a travel tracker program.<br>14 Q. Can you explain to the court what a travel<br>15 tracker proactive e-mail is?<br>16 A. It's an e-mail informing myself about people<br>17 in country at the time, in the next 24 hours, and in<br>18 the coming week. This one refers to Israel.<br>19 Q. And can you identify this as a July 9th,<br>20 2014 travel tracker proactive e-mail that you<br>21 received?<br>22 A.Yes.<br>23 Q.Was this one of the sources of information<br>24 that you had incoming about security conditions in<br>25 Israel? | 402, 403 – Page 165.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |
| Page 166<br>1A.Yes.<br>12And is Exhibit 103 an example of one of the<br>13types of sources that you would rely upon?<br>16THE WITNESS: It's an example of one, yes. | <u>Plaintiffs' Objections:</u><br>402, 403 – Page 166.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is |

| | |
|---|---|
| | cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. |
| Page 170<br>6 Q.Were you engaging in ongoing monitoring of<br>7 the security situation in Israel on July the 9th?<br>8 A.Yes.<br>9 Q.Were you reviewing, among other things,<br>10 travel warnings that were being issued?<br>11 A.Yes.<br>12 Q.Were you aware that, according to sources<br>13 that were reporting, more than 200 rockets had been<br>14 fired from Gaza and targeted Israel since the IDF<br>15 launched operative -- Operation Protective Edge on<br>16 July the 8th?<br>18 THE WITNESS: I was reviewing all<br>19 information available.<br>20 BY MS. SCOTT REED:<br>21 Q.And do you recall reviewing information that<br>22 was reported from multiple sources that there had<br>23 been significant rockets fired from Gaza to target<br>24 Israel since the IDF launched Operation Protective<br>25 Edge on July 8 | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 170.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 171<br>3 THE WITNESS: I was reviewing multiple<br>4 sources of information, and any escalation, any<br>5 direct evidence, would have been part of that review.<br>6 BY MS. SCOTT REED:<br>7 Q. Did you note escalation in the activity that | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 171.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is |

| | |
|---|---|
| 8 was aimed from Gaza to Israel and out of Israel back<br>9 toward Gaza in July of 2014?<br>12 THE WITNESS: Noting and assessing<br>13 escalation and conflict is part of the risk<br>14 management and security process, not just on this<br>15 date but throughout an event of production. | unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 176<br>9 MS. SCOTT REED: Let me hand you what's been<br>10 marked as Exhibit 104, please, sir.<br>11 (Exhibit 104 was marked for identification by<br>12 the court reporter and is attached hereto.)<br>13 MR. HAYES: Thanks.<br>14 BY MS. SCOTT REED:<br>15 Q. For the record this is Bates numbered<br>16 UCP2606 through 2607.<br>17 Mr. Smith, can you identify Exhibit 104 as<br>18 an April 21st, 2014 travel tracker proactive e-mail<br>19 directed to you via -- via e-mail?<br>20 A. Yes | Plaintiffs' Objections:<br>402, 403, MIL – Page 176.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 177<br>7 Q. Over the course of all your work on Dig,<br>8 were the travel tracker proactive e-mails one of the<br>9 various sources incoming to you that you would have<br>10 reviewed<br>13 THE WITNESS: Yes.<br>14 BY MS. SCOTT REED:<br>15 Q. Did you pass these along to Mr. Biggs?<br>18 THE WITNESS: To my knowledge, he receives<br>19 them directly. | Plaintiffs' Objections:<br>402, 403, MIL – Page 177.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why |

32

20 BY MS. SCOTT REED:
21 Q.I want to ask you about the section that's
22 entitled: Travel briefing, at the bottom of the
23 page, the last sentence of the paragraph. It says
24 (as read):
25 The militant group opposes the

Page 178
1 current ceasefire between Israel and
2 the Palestinian Islamic Movement,
3 Hamas, which governs Gaza.
4 Do you see that?
5 A. Yes.
6 Q. Do you have a familiarity with Hamas?
8 THE WITNESS: I have knowledge of Hamas.
9 BY MS. SCOTT REED:
10 Q. And have you gained that knowledge as part
11 of your work providing corporate security for
12 NBCUniversal?
13 A. And other entities.
14 Q. Did you study Hamas prior to taking your job
15 at NBCUniversal for any purpose?
16 A. No

Page 179
6 Q. Do you disagree with the statement here that
7 Hamas governs Gaza?
8 A. I have -- I don't have enough knowledge to
9 say whether they do or don't. To me Hamas are a
10 terrorist organization as designated by the
11 U.S. Government.
12 Q. Well, as part of your work on Dig, did you
13 undertake any review of Hamas and its role in

exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 178.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 179.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why

33

| | |
|---|---|
| 14 government of Gaza?<br>15 A.My role does not involve looking at who<br>16 governs certain areas. That's completely outside of<br>17 my remit. My remit involves assessing --<br>18 THE REPORTER: My what; remit?<br>19 THE WITNESS: My remit, R-E-M-I-T.<br>20 My remit involves assessing risk from<br>21 multiple sources and providing mitigation. I'm not<br>22 involved in political analysis, historical analysis,<br>23 or the designation of who governs a particular<br>24 territory. | exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 180<br>1 BY MS. SCOTT REED:<br>2 Q. So sitting here today, you don't have any<br>3 background or information that would afford you the<br>4 opportunity to say whether Hamas is governing Gaza<br>5 Presently<br>8 THE WITNESS: I don't know -- I have no idea<br>9 either way whether they do or don't. They're a<br>10 terrorist organization.<br>18 Q. Do you have any background or information<br>19 regarding Hamas participating in the actual<br>20 government of Palestine in 2014?<br>23 THE WITNESS: No. | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 180.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 181<br>12 Q. So you would testify to the court that you<br>13 do not have the factual basis or expertise to provide<br>14 a conclusion to the court about whether Hamas is the | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 181.<br><br><u>Defendant's Response:</u><br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts |

15 governing authority of Gaza?

18 THE WITNESS: I don't know either way.

19 BY MS. SCOTT REED:

20 Q. Do you hold yourself out as having the 21 background or expertise to provide an opinion?

22 A. An opinion on ...

23 Q. An opinion on or a conclusion on whether

24 Hamas is the governing authority of Palestine.

Page 182

2THE WITNESS: No.

3MS. SCOTT REED: Let me hand you what's been

4 marked as Exhibit 105, please, sir.

5(Exhibit 105 was marked for identification by

6the court reporter and is attached hereto.)

7MS. SCOTT REED: For the record Bates

8 numbered UCP3562 through 3564.

9 Q. Mr. Smith, can you identify Exhibit 105 as

10 an e-mail string, the final of which is from you to

11 Ms. Richmond, dated May 1st, 2014?

12 A. Yes.

13 Q. Let me direct you, please, sir, after good 14morning, Randi, and thank you for the update, down to

15 the third paragraph, which begins: Peace talks.

16 Can you read that first sentence for the 17 record, please, sir.

18 A.(As read):

19Peace talks between Palestine 20representatives and Israel have 21stalled in recent weeks, and the new 22agreement between Fatah, the 23Palestine faction engaged in

bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:

402, 403, MIL – Page 182.

Defendant's Response:

This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

| | |
|---|---|
| 24 negotiations, and Hamas, considered<br>25 a terrorist organization by the<br>Page 183<br>1 U.S. and Israel, has decreased the<br>2 likelihood of a comprehensive peace<br>3 accord, and may also affect the<br>4 threat levels --<br>5 THE REPORTER: Wait, wait. Slow down.<br>6 THE WITNESS: Sorry.<br>7 THE REPORTER: Affect the likelihood of<br>8 a ..<br>9 THE WITNESS: And may also affect the threat<br>10 level in certain areas. | **Plaintiffs' Objections:**<br>402, 403, MIL – Page 183.<br><br>**Defendant's Response:**<br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 184<br>10 Q. Regardless of whether you wrote it or not,<br>11 at the time of this communication, May 1st, were you<br>12 familiar with a new agreement between Fatah and<br>13 Hamas?<br>16 THE WITNESS: Not that I can -- I don't know<br>17 either way | **Plaintiffs' Objections:**<br>402, 403, MIL – Page 184.<br><br>**Defendant's Response:**<br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. |

36

|  |  |
|---|---|
|  | The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 203<br>4 MS. SCOTT REED: For the record, Exhibit 107<br>5 is UCP1873 through 1876.<br>6 (Exhibit 107 was marked for identification by<br>7 the court reporter and is attached hereto.)<br>15 Q. Mr. Smith, can you identify Exhibit 107 as<br>16 an e-mail string, the final of which was directed to<br>17 you by Randi Richmond, dated June 14th, 2014?<br>18 A. Yes.<br>19 Q. Did you receive this e-mail from<br>20 Ms. Richmond?<br>21 A. The e-mail was certainly sent to me and I'm<br>22 making a presumption that I received it.<br>23 Q. Do you have any reason to doubt that you<br>24 received this?<br>25 A. No. | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 203.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 204<br>1 Q. Did Ms. Richmond forward to you information<br>2 out of a "Times of Israel" article regarding current<br>3 events in and around June the 13th, 2014?<br>4 A. I'll need some time just to review the<br>5 Paperwork.<br>19 THE WITNESS: Going from this e-mail, yes.<br>20 BY MS. SCOTT REED:<br>21 Q. And did you review the information that she<br>22 sent to you regarding abductions?<br>23 A. I wouldn't be able to say if I reviewed this | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 204.<br><br><u>Defendant's Response:</u><br>This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is |

24 information or any other information, but I looked at

25 multiple streams of information. Whether I reviewed


Page 205

1 this, I wouldn't be able to tell you. I reviewed

2 multiple streams of information and I specifically

3 remember the abduction.

4 Q.You do?

5 A.Yes.

6 Q. And what about the abduction made it stand

7 out in your mind?

8 A. The fact that three teenagers, to my

9 recollection, had been abducted and eventually

10 Murdered

18 Q.Did you keep an eye on this situation and

19 advise Ms. Richmond and others in production about

20 it?

21 A.I advised throughout the production, post,

22 during, and preproduction, from a multitude of

23 Sources


Page 206

11 Q. All right. Would you look at Exhibit 108,

12 please, sir, which for the record is the article

13 printed off of the link www.timesofisrael.com.

14 (Exhibit 108 was marked for identification by

15 the court reporter and is attached hereto.)

22 Q. Did you review security reports or

23 intelligence reports that included the information

24 about the teenagers being abducted?

cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at the time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 205.

Defendant's Response:
This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, 802, MIL – 206:11-15.

402, 403, MIL – 206:22-25.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or

38

25 A.Yes, I did.

Page 207

1 Q. And did you review security reports or media

2 reports that talked about Prime Minister Benjamin

3 Netanyahu linking that to Hamas?

4 A. The actual specifics of what the reports

5 contained, I wouldn't be able to tell you one way or

6 the other. I would have to refer to documentation.

7 Q. Would you refer, please, sir, to the middle

8 of the page of Exhibit 107, that's the e-mail string

9 under the large heading that says (as read):

10 PM to carry, feared abductions as

11 a result of Hamas entry into

12 government.

13  Do you see that headline?

14 A.Yes.

15 Q. All right. Would you read the first

16 paragraph under that, please, sir.

17 A. (As read):

18 Prime Minister Benjamin Netanyahu

19 told U.S. Secretary of State John

20 Kerry on Friday that since the

21 announcement of a unity

22 government --

23 THE REPORTER: On Friday? Slow down a

24 little bit.

25 THE WITNESS: I'm sorry.(As read):

why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 207.

Defendant's Response:
This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

39

| | |
|---|---|
| Page 208<br>1 That since the announcement of a<br>2 unity government between the Fatah<br>3 led PLO and Hamas in April, "the<br>4 situation on the ground has been<br>5 destructive."<br>16 Q. Did you look into whether the announcement<br>17 of a unity government between that Fatah led PLO and<br>18 Hamas was having an impact on security situation in<br>19 Israel?<br>22 THE WITNESS: I would receive information<br>23 from a variety of sources and I also, as discussed<br>24 previously, I employ an analyst to look at this type<br>25 of information very generally. | Plaintiffs' Objections:<br>402, 403, MIL – Page 208.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 210<br>19 Q. After this kidnapping of the teenagers<br>20 became public, did the security situation in Israel<br>21 change in any way that you observed?<br>23 THE WITNESS: The security situation did<br>24 change and I received multiple reports regarding the<br>25 changes, and -- and uptick in an unpredictable | Plaintiffs' Objections:<br>402, 403, MIL – Page 210.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not |
| Page 211 | |

1 security landscape.
2 BY MS. SCOTT REED:
3 Q. What was the uptick?
4 A. There was an increase in Israeli military
5 and police activity across the country, and there was
6 also the threat of increased terrorist activity and
7 further kidnappings.
8 Q. Committed by whom, or suspected that could
9 be committed by whom?
10 A. Well, to be quite frank either side.
11 Q. Was there -- I'm sorry.
12 A. Terrorist organizations and individuals on
13 the Israeli side, not Israeli military and police,
14 but also talking about attacks, kidnappings, and
15 revenge.
16 Q. And what about from the Palestinian side,
17 was there a reporting of an uptick of that potential
18 possibility?
21 THE WITNESS: There was an increase across
22 the country and threats of further activity was
23 obvious, and we were receiving information to that
24 effect.

Page 212
20 Q. Did you note over the weeks following
21 June 14th that there was increased activity in terms
22 of missiles and other bombing materials being
23 launched out of Gaza or Palestine and into Israel?
.

prejudicial.

<u>Plaintiffs' Objections:</u>
402, 403, MIL – Page 211.

<u>Defendant's Response:</u>
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial

<u>Plaintiffs' Objections:</u>
402, 403, MIL – Page 212.

<u>Defendant's Response:</u>
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is

Page 213
1 THE WITNESS: There was an increase
2 throughout the time the production was in Israel in
3 terms of the risk from terrorism and the risk from
4 further conflict.
5 BY MS. SCOTT REED:
6 Q. Yes, sir.
7 And specifically was there increased missile
8 fire out of Gaza or Palestine directed into Israel?
9 A. I would -- I would have to check the exact
10 dates, but throughout the production, yes, this
11 increased.
12 Q. Yes, sir.
13 And did it continue even after production
14 was moved?
15 A. Yes.
16 Q. And when I said "it," I'm referring to
17 missile fire out of Gaza or Palestine into Israel.
18 Is that what continued even after production moved
19 out of Israel?
20 A. Yes, that's my understanding.

Page 215
21 BY MS. SCOTT REED:
22 Q. Well, I don't mean one side stronger than
23 the other. I mean that both sides were participating
24 in -- is it accurate that Israel was taking offensive
25 strikes against Palestine or Gaza?

unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 213.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 215.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its

42

**1490**

prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 216
3 THE WITNESS: What time period are you
4 talking about here?
5 BY MS. SCOTT REED:
6 Q. Summer of 2014.
8 THE WITNESS: Israel certainly responded to
9 the attacks.
10 BY MS. SCOTT REED:
11 Q. And they did so by offensive action directed
12 at Palestine and/or Gaza?
15 THE WITNESS: They took offensive action.
16 BY MS. SCOTT REED:
17 Q. And did Palestine and Gaza take offensive
18 action against Israel during this same timeframe?
21 THE WITNESS: Yes, that's my understanding.
22 But it's not my area of expertise.
23 BY MS. SCOTT REED:
24 Q. Was there escalation over the period of the
25 summer of 2014?

Page 217
3 THE WITNESS: Can you be more specific?
4 Escalation in?
5 BY MS. SCOTT REED:

Plaintiffs' Objections:
402, 403, MIL – Page 216.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 217.

| | |
|---|---|
| 6 Q. Escalation of the violent activity directed<br>7 out of Israel into Gaza and/or Palestine and violent<br>8 activity out of Palestine or Gaza into Israel.<br>11 THE WITNESS: Yes. | Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 218<br>3 BY MS. SCOTT REED:<br>4 Q. Setting the context of the question, which<br>5 is the amount of time production was ongoing in<br>6 Israel, the amount of time it was stopped, and the<br>7 amount of time it took to move out of Israel, was it<br>8 your recollection that this back and forth offensive<br>9 activity continued for a matter of weeks?<br>12 THE WITNESS: Yes. | Plaintiffs' Objections:<br>402, 403, MIL – Page 218.<br><br>Defendant's Response:<br><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 219<br>10 Q. Did the activity offensive both ways<br>11 continue even after the move out of Israel? | Plaintiffs' Objections: |

| | |
|---|---|
| 14 THE WITNESS: Yes. | 402, 403, MIL – Page 219. |
| | |
| | Defendant's Response: |
| | The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 220 | |
| 22 Q. And did you continue to report on the | |
| 23 offensive activity that was going back and forth | |
| 24 between these two sides until it ended with a | |
| 25 ceasefire? | |
| | Plaintiffs' Objections: |
| | 402, 403, MIL – Page 220. |
| | |
| | Defendant's Response: |
| | The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 221 | |
| 3 THE WITNESS: I honestly couldn't tell you | |
| 4 if I stopped before there was a ceasefire | Plaintiffs' Objections: |
| 5 announcement or continued after. | 402, 403, MIL – Page 221. |
| 6 BY MS. SCOTT REED: | |
| 7 Q. Were you aware there was a ceasefire? | Defendant's Response: |

45

**1493**

| | |
|---|---|
| 8 A. I was. | The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 222<br>5 Q. Would you look at Exhibit 111, please, sir,<br>6 for the record, Bates UCP2524 through 2529.<br>7 (Exhibit 111 was marked for identification by<br>8 the court reporter and is attached hereto.)<br>9 BY MS. SCOTT REED:<br>10 Q. Can you identify this, please, sir, as a<br>11 June 15th, 2014, Max Security Analysis sent to you by<br>12 e-mail?<br>13 A. Yes. | Plaintiffs' Objections:<br>402, 403, MIL – Page 222.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 223<br>4 Q. Is this report from Max Security Analysis<br>5 something that you would have expected to receive<br>6 from them based upon these conditions on the ground?<br>.<br>9 THE WITNESS: Yes.<br>10 BY MS. SCOTT REED: | Plaintiffs' Objections:<br>402, 403, MIL – Page 223.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this |

| | |
|---|---|
| 11 Q. Is this report providing information to you<br>12 in regard to the kidnapping of the three teenagers<br>13 and the aftermath of it?<br>14 MR. HAYES: Objection, vague, lacks<br>15 foundation.<br>16 THE WITNESS: The report mentions that<br>17 particular incident.<br>18 BY MS. SCOTT REED:<br>19 Q. Yes, sir.<br>20 And does it also mention that the Israeli<br>21 Defense Forces, IDF, initiated a broad search and<br>22 rescue operation with significant troop deployments?<br>23 A. The information in front of me states that,<br>24 yes.<br>25 Q. On the second page, was there also | testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| **Page 224**<br>1 discussion about rockets being fired from the Gaza<br>2 Strip toward Israeli territory?<br>.<br>5 THE WITNESS: That's information contained<br>6 within the document.<br>25 Q. All right. And will you also put | |
| | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 224. |
| | <u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and |
| **Page 225** | |

1 Exhibit 112, newly marked, in front of you, please,
2 sir?
3 (Exhibit 112 was marked for identification by
4 the court reporter and is attached hereto.)
5 MS. SCOTT REED: For the record 112 is
6 UPC2160 through 2161.
7 Q. Can you identify Exhibit 112 as an e-mail
8 string dated June 15th between you and Ms. Randi
9 Richmond?
10 A. Yes.
11 Q. I want to refer you, please, sir, to the
12 middle e-mail, which is from you to Ms. Richmond,
13 it's stamped 7:28 a.m. Pacific Standard Time.
14 Do you see what I'm referring to?
15 A. Yes.
16 Q. And is this a report or update that you
17 provided to Ms. Richmond?
18 A. Yes.
19 Q. Will you look please, sir, under the heading
20 that says: Current situation? I'm going to ask you
21 to look at those four paragraphs next to Exhibit 111,
22 please, sir.
23 Can you verify that you have quoted
24 Exhibit 111, it's first four paragraphs, verbatim,
25 into your Exhibit 112 message?

Page 226
1 A. Yes.
2 Q. Did you rely upon the information provided
3 to you in Exhibit 111 in order to report that to your
4 client?
7 THE WITNESS: Yes.
21 Q. All right. Sir. Let me ask you to put
22 Exhibit 113 in front of you.

---

process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 225.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 226.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its

23 (Exhibit 113 was marked for identification by
24 the court reporter and is attached hereto.)
25 MS. SCOTT REED: For the record this is

prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 227.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 227
1 UCP1091 through 1092.
2 Q. Can you identify this as an e-mail string
3 between you and Ms. Richmond, dated June 15th, 2014?
4 A. Yes.
5 Q. Is this a further report and update that you
6 provided to Ms. Richmond?
7 A. Yes.
8 Q. Will you look at the last paragraph on that
9 first page, sir, please, that begins in the past
10 48 hours.
11 Do you have it?
12 A. Yes.
13 Q. All right. And will you also look at
14 Exhibit 111, the second page under the title:
15 Assessments, which also begins in the past 48 hours.
16 Do you see it?
17 A. I do.
18 Q. Have you quoted verbatim out of Exhibit 111
19 from Max Security Analysis and put that into your
20 report to Ms. Richmond of June 15th?
21 A. That forms part of the report, and it's --
24 THE WITNESS: Yes, and it's the same.

Page 229
20 Let me hand you what's been marked as
21 deposition Exhibit 114.
22 (Exhibit 114 was marked for identification by

Plaintiffs' Objections:
402, 403, MIL – Page 229.

| | |
|---|---|
| 23 the court reporter and is attached hereto.)<br>24 BY MS. SCOTT REED:<br>25 Q. Can you identify this as a June 15th Max | **Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 230<br>1 Security Intelligence report, and an e-mail from<br>2 Mr. Kenion directed to you on June 15th, 2014?<br>3 A. Yes.<br>4 Q. And for the record, Exhibit 114 is UCP2491<br>5 through 2495.<br>6 Did you receive Exhibit 114 from Mr. Kenion<br>7 and Max Security?<br>8 A. Yes.<br>18 Q. Would you look at page 2 of Exhibit 114,<br>19 please, sir, under: Assessments. The first sentence<br>20 under assessments says (as read):<br>21 While an uptick in incidents of<br>22 rocket fire from the Gaza Strip has<br>23 been recorded during the past week,<br>24 tonight's attacks represent a<br>25 notable escalation given the<br><br>Page 231<br>1 targeting of a major southern city.<br>2 Do you see that?<br>3 A. Yes. | **Plaintiffs' Objections:**<br>402, 403, MIL – Page 230.<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

50

**1498**

| | |
|---|---|
| | Plaintiffs' Objections:<br>402, 403, MIL – Page 231.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 238<br>11 MS. SCOTT REED: Let me hand you<br>12 Exhibit 117, please, sir.<br>13 (Exhibit 117 was marked for identification by<br>14 the court reporter and is attached hereto.)<br>15 MS. SCOTT REED: For the record UCP2237<br>16 through 2340.<br>17 Q. Can you identify this as a June 16th, 2014<br>18 Max Security Intelligence report sent to you via<br>19 e-mail?<br>20 A. Yes. | Plaintiffs' Objections:<br>402, 403, MIL – Page 238.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 239<br>18 Q. Would you look at the second page, please,<br>19 sir, under: Assessments. And the second sentence<br>20 that begins (as read):<br>21 As a result, the potential for | Plaintiffs' Objections:<br>402, 403, MIL – Page 239. |

| | |
|---|---|
| 22 additional rocket strikes into<br>23 Israel from Gaza-based militants<br>24 will remain elevated as Hamas is<br>25 unlikely to take significant | **Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 240<br>1 measures to prevent or may encourage<br>2 fringe groups including PIJ<br>3 militants from staging such attacks.<br>4 Do you see that?<br>5 A. Yes.<br>6 Q. And it goes on to discuss rocket launches,<br>7 particularly those toward Israeli urban centers, are<br>8 likely to be met with retaliation.<br>9 Do you see that reference?<br>10 A. Yes. | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 240.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 242<br>11 Q. Did you notice offensive activity by both<br>12 sides of this conflict occurring?<br>15 THE WITNESS: There was an increase in<br>16 activity detrimental to the security situation in<br>17 Israel. | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 242.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its |

prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at the time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 243
17 Q. Through June and July was there an uptick in
18 the number of rockets which were being fired at
19 Israel?
21 THE WITNESS: Yes.
22 BY MS. SCOTT REED:
23 Q. During June and July, was there an uptick in
24 mortars being fired at Israel?

Plaintiffs' Objections:
402, 403, MIL – Page 243.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 244
1 THE WITNESS: I'm not an expert on what type
2 of weaponry was used, whether it was rockets,
3 mortars, hand grenades, whatever, that's not my area
4 of expertise, what type of weaponry was used.
5 BY MS. SCOTT REED:
6 Q. Do you know the difference between rockets
7 and mortars?
8 A. No.

Plaintiffs' Objections:
402, 403, MIL, 104a – Page 244.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice

53

**1501**

Page 245
17 Q. Did you, in doing all this review and study
18 that you're talking about of the sources coming in,
19 gain an understanding, or form an understanding of
20 what weaponry was being fired out of Gaza or
21 Palestine and into Israel?
22 A. No. I just knew there was a variety of
23 weaponry being used.
24 Q. And is it accurate that some of the weaponry
25 was actually landing in Israel?

Page 246
3 THE WITNESS: To my knowledge.
4 BY MS. SCOTT REED:
5 Q. And tell me all the areas of Israel where
6 you were informed, based upon the research you were
7 reviewing, that weaponry landed within Israel.
8 A. I would have to consult with my notes and
9 the security document -- documentation I received at
10 the time. Weaponry was fired towards Ben Gurion
11 airports. It was fired towards Tel Aviv, and
12 multiple other locations within Israel.

outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 245.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 246.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state

54

| | |
|---|---|
| 13 Q. Were there occasions when that airport was<br>14 closed as a result of incoming fire or threatened<br>15 incoming fire?<br>16 A. Yes.<br>17 MS. SCOTT REED: Hand you Exhibit 118,<br>18 please, sir.<br>19 (Exhibit 118 was marked for identification by<br>20 the court reporter and is attached hereto.)<br>21 MS. SCOTT REED: For the record UCF1155<br>22 through 1157.<br>23 Q. Can you identify Exhibit 118 as an e-mail<br>24 string which culminates in an e-mail from you to<br>25 Paige Potter, copied to others, dated June 16th, | of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 247<br>1 2014, at 11:46 a.m.?<br>2 A. Yes.<br>19 Q. What was the purpose of sending this<br>20 June 16th, 24 (sic) report to this broader<br>21 distribution list?<br>24 THE WITNESS: The report is a security<br>25 situation update. Why these other people are on it, | Plaintiffs' Objections:<br>402, 403, MIL – Page 247.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 248<br>1 I can't recall. | |

55

**1503**

| | |
|---|---|
| | Plaintiffs' Objections:<br>402, 403, MIL – Page 248.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 249<br>5 Q. I'm looking at 118, and my question to you<br>6 was: As of this June 16th report, were you making<br>7 recommendations that were different than what was in<br>8 place up to June 16th about safety and security for<br>9 filming?<br>12 THE WITNESS: Up -- I would have to compare<br>13 it to all the other reports that I compiled. There<br>14 was a -- there was an escalation and then --<br>15 escalation in violence, deterioration in the security<br>16 situation. And -- but I would doctor to compare it<br>17 and contrast it to all the other reports as I do with<br>18 information I receive.<br>19 BY MS. SCOTT REED:<br>20 Q. Was your general or overall point to<br>21 communicate that there was a deterioration in general<br>22 security and an escalation in activity?<br>25 THE WITNESS: Yes.<br><br>Page 250 | Plaintiffs' Objections:<br>402, 403, MIL – Page 249.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| | |
|---|---|
| 1 BY MS. SCOTT REED: | |
| 2 Q. Would you look, please, sir, at the fifth | |
| 3 bullet point that begins in the past 48 hours, you're | |
| 4 reporting to your colleagues at NBCUniversal that the | Plaintiffs' Objections: |
| 5 extent of Israeli military operations in Hebron and | 402, 403, MIL – Page 250. |
| 6 its environments had significantly increased. | Defendant's Response: |
| 7 Do you see that? | The witness' understanding of the facts are relevant to |
| 8 A. Yes. | the underlying facts of loss. The probative value of this |
| 9 Q. And it was highlighted by the deployment of | testimony is not substantially outweighed by its |
| 10 over 2500 IDF soldiers to the area. | prejudicial effect, it will not confuse the jury, waste time, |
| 11 Do you see that? | and is not unnecessarily cumulative. Further, F.R.E. 403 |
| 12 A. I do. | is conditional, and therefore not binding as to general |
| 13 Q. Was this a significant uptick in military | admissibility. Objection also fails to state why exhibit is |
| 14 activity based upon your research to that point? | unfairly prejudicial; or why such alleged unfair prejudice |
| 15 A. Yes. | outweighs its probative value; or why exhibit confuses |
| 16 MS. SCOTT REED: Let me hand you | the issue, misleads the jury, wastes time, or is |
| 17 Exhibit 119, please, sir. | cumulative. Furthermore, high probative value re: state |
| 18 (Exhibit 119 was marked for identification by | of mind of all parties involved at the time of the claim. |
| 19 the court reporter and is attached hereto.) | The jury is entitled to know what information NBC, ASIC, |
| 20 MS. SCOTT REED: For the record UCP1129 | and other parties had at time of the facts giving rise to |
| 21 through 1130. | Plaintiffs' claims. "MIL" not clear what objection |
| 22 Q. Can you identify Exhibit 119 as an e-mail | intended; description of the facts and process |
| 23 string between you and Ms. Richmond, copied to | surrounding the claim is relevant and not prejudicial. |
| 24 others, dated June the 17th, 2014? | |
| 25 A. Yes. | |
| | |
| Page 251 | |
| 1 Q. Do you continue to report the higher levels | |
| 2 of activity and the intensification of action to | |
| 3 NBCUniversal in Exhibit 119? | Plaintiffs' Objections: |
| 6 THE WITNESS: I continued to report the | 402, 403, MIL – Page 251. |
| 7 security situation again gathered from a variety of | Defendant's Response: |

57

| | |
|---|---|
| 8 sources, and how it would affect our production and<br>9 the safety and security of our personnel and assets. | The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 252<br>8 So was one of your points to communicate<br>9 here the increasing level of military activity that<br>10 was occurring?<br>11 A. Yes. | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 252.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 253<br>23 MS. SCOTT REED: I'm going to hand you<br>24 Exhibit 121, please, sir. | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 253.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is |

58

Page 254
1 (Exhibit 121 was marked for identification by
2 the court reporter and is attached hereto.)
3 MS. SCOTT REED: For identification UPC --
4 pardon me, UCP2576 through 2578.
5 Q. Can you identify this that's an e-mail
6 string between you and Ms. Richmond, among others,
7 that concludes with your June 22nd e-mail and
8 Ms. Richmond's June 23rd response?
9 A. Yes.
10 Q. Would you look down under: Hi Randi, down
11 to the second paragraph where you report (as read):
12 Two rockets fired from Gaza Strip
13 towards Israel during the morning
14 hours of June 22. Israeli Air Force
15 fighter jets target four militant
16 sites in Gaza Strip.
17 Do you see that?
18 A. Yes.
19 Q. Was this information you were gathering from
20 the various sources that you were reviewing on an
21 ongoing basis?
22 A. Yes.
23 Q. Do you also report to her about Palestinians
24 being killed?

Page 255
2 THE WITNESS: It's contained within this
3 document, yes.
4 BY MS. SCOTT REED:
5 Q. And do you also report to her that these

unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 254.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 255.

| | |
|---|---|
| 6 reported incidents are amidst an ongoing military<br>7 operation that was an effort to retrieve the<br>8 kidnapped teens?<br>11 THE WITNESS: Yes.<br>12 BY MS. SCOTT REED:<br>13 Q. You say this is -- you're referring to the<br>14 military operation which is entering into tenth day.<br>18 THE WITNESS: Yes. | **Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 257<br>6 MS. SCOTT REED: Let me hand you<br>7 Exhibit 123, please, sir.<br>8 (Exhibit 123 was marked for identification by<br>9 the court reporter and is attached hereto.)<br>10 MS. SCOTT REED: UCP2205 through 2207.<br>11 Q. Can you identify Exhibit 123 as a June 24th,<br>12 2014 Max Security Intelligence report provided to you<br>13 via e-mail?<br>14 A. Yes.<br>15 Q. Under the solid line, sir, after: "Please<br>16 be advised," do you see the introductory statement<br>17 which says (as read):<br>18 Reports indicate that the Iron<br>19 Dome Missile Defense System<br>20 intercepted to rockets fired from<br>21 the Gaza Strip toward the southern<br>22 city of Ashkelon, while a third<br>23 rocket landed in an open field in<br>24 the Hof Ashkelon Regional Council on<br>25 June 24th, with no damage being | **Plaintiffs' Objections:**<br>402, 403, MIL – Page 257.<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 258<br>1 reported?<br>2 A. Yes.<br>22 Q. Would you look down under assessments, | **Plaintiffs' Objections:**<br>402, 403, MIL – Page 258. |

| | |
|---|---|
| 23 please, sir, which states (as read): | **Defendant's Response:** |
| 24 Given the recent pattern of | The witness' understanding of the facts are relevant to |
| 25 tit-for-tat exchanges between the | the underlying facts of loss. The probative value of this |
| | testimony is not substantially outweighed by its |
| | prejudicial effect, it will not confuse the jury, waste time, |
| | and is not unnecessarily cumulative. Further, F.R.E. 403 |
| | is conditional, and therefore not binding as to general |
| | admissibility. Objection also fails to state why exhibit is |
| | unfairly prejudicial; or why such alleged unfair prejudice |
| | outweighs its probative value; or why exhibit confuses |
| | the issue, misleads the jury, wastes time, or is |
| | cumulative. Furthermore, high probative value re: state |
| | of mind of all parties involved at the time of the claim. |
| | The jury is entitled to know what information NBC, ASIC, |
| **Page 259** | and other parties had at time of the facts giving rise to |
| 1 Israeli Military and Gaza-based | Plaintiffs' claims. "MIL" not clear what objection |
| 2 militants, as well as the fact that | intended; description of the facts and process |
| 3 the recent rocket fire targeted a | surrounding the claim is relevant and not prejudicial. |
| 4 major Israeli city, we assess that | |
| 5 there remains a heightened potential | **Plaintiffs' Objections:** |
| 6 for localized IAF reprisal attacks | 402, 403, MIL – Page 259. |
| 7 over the coming 24 to 48 hours. | |
| 8 Do you see that? | **Defendant's Response:** |
| 9 A. Yes. | The witness' understanding of the facts are relevant to |
| | the underlying facts of loss. The probative value of this |
| | testimony is not substantially outweighed by its |
| | prejudicial effect, it will not confuse the jury, waste time, |
| | and is not unnecessarily cumulative. Further, F.R.E. 403 |
| | is conditional, and therefore not binding as to general |
| | admissibility. Objection also fails to state why exhibit is |
| | unfairly prejudicial; or why such alleged unfair prejudice |
| | outweighs its probative value; or why exhibit confuses |
| | the issue, misleads the jury, wastes time, or is |
| | cumulative. Furthermore, high probative value re: state |
| | of mind of all parties involved at the time of the claim. |
| | The jury is entitled to know what information NBC, ASIC, |
| | and other parties had at time of the facts giving rise to |
| | Plaintiffs' claims. "MIL" not clear what objection |
| | intended; description of the facts and process |
| **Page 262** | surrounding the claim is relevant and not prejudicial. |
| 11 Q. You understand that I'm just trying to | |
| 12 understand in security talk, if one writer who's | **Plaintiffs' Objections:** |
| 13 communicating to another person in the security field | 402, 403, MIL – Page 262. |
| 14 talks about tit-for-tat exchanges, can you describe | |
| 15 for the court what that is indicating? | **Defendant's Response:** |
| 18 THE WITNESS: I -- I think tit-for-tat is a | The witness' understanding of the facts are relevant to |
| | the underlying facts of loss. The probative value of this |
| | testimony is not substantially outweighed by its |
| | prejudicial effect, it will not confuse the jury, waste time, |
| | and is not unnecessarily cumulative. Further, F.R.E. 403 |

19 term that most people would understand what that

20 means, and they'd also understand that when it's

21 referenced with exchanges one side was doing one

22 thing and the other side was responding in kind.

Page 263

2 Q. I'd like to refer you, please, sir, down to

3 the bottom this assessments paragraph, the last

4 sentence that's on that page. (As read):

5 In such a scenario there remains

6 an increased potential for an

7 escalation between Gaza militants

8 and the IDF, which could result in

9 air strikes on Hamas infrastructure

10 in Gaza, as well as an increased

11 frequency of rocket fire from the

12 Gaza Strip.

13 Do you see that reference?

14 A. Yes.

Page 264

10 Q. It's a general question. Based upon your

11 experience, expertise, background and the work you

12 were doing, by this point in June, had you developed

13 a concern that there was an increased potential for

14 escalation between Gaza militants and the IDF, which

15 could result in air strikes on Hamas infrastructure

16 in Gaza, as well as rocket fire from the Gaza Strip

17 towards Israel?

is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

<u>Plaintiffs' Objections:</u>
402, 403, MIL – Page 263.

<u>Defendant's Response:</u>
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

<u>Plaintiffs' Objections:</u>
402, 403, MIL – Page 264.

<u>Defendant's Response:</u>
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim.

62

| | |
|---|---|
| 18 A. There was a deterioration in the security<br>19 landscape and situation, and that's information would<br>20 have been contained within intelligence reports that<br>21 I received.<br>22 Q. It would have been?<br>23 A. I -- yes.<br>24 Q. Were you passing along those concerns to<br>25 your NBCUniversal colleagues?<br><br>Page 265<br>2 THE WITNESS: Throughout this production,<br>3 postproduction, during production, and preproduction,<br>4 I supplied information to a number of NBCU personnel<br>5 relating to the security situation in Israel, and the<br>6 safety and security of their personnel.<br>7 BY MS. SCOTT REED:<br>8 Q. And would your concerns about that<br>9 intensification we were just discussing have been<br>10 included in those various reports?<br>13 THE WITNESS: I would supply pertinent<br>14 information related to the deterioration of the<br><br>Page 266<br>17 Q. What's the Iron Dome Antimissile Battery<br>18 System?<br>19 A. Without trying to appear facetious, it's<br>20 kind of in the title.<br>21 Q. What does it do?<br>22 A. It stops missiles, brings missiles down.<br>23 It's an antimissile system, that's what it says.<br>24 That's how -- that's the kind of definitive<br>25 description of exactly what it is. | The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>402, 403, MIL – Page 265.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>402, 403, 802, MIL – Page 266.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general |

| | |
|---|---|
| | admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 267<br>1 It's referred to as the Iron Dome, and it's<br>2 an antimissile battery system so it brings missiles<br>3 down.<br>21 Q. The second paragraph of this report states<br>22 that (as read):<br>23 During the overnight hours of<br>24 June 28 to 29 the Israeli Air Force,<br>25 IAF, conducted air strikes against | <u>Plaintiffs' Objections:</u><br>402, 403, 802, MIL – Page 267.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 268<br>1 12 militant sites in the Gaza Strip | |

64

**1512**

| | |
|---|---|
| 2 in response to a rocket barrage<br>3 earlier on June 28th.<br>4 Do you see that?<br>5 A. I do.<br>6 Q. Was that reporting that you received on or<br>7 about June the 29th?<br>8 A. As contained within this document. | **Plaintiffs' Objections:**<br>402, 403, 802, MIL – Page 268.<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 269<br>2 BY MS. SCOTT REED:<br>3 Q. Was the assessment provided to you on<br>4 June 29th by Max Security that there was a continued<br>5 concern or potential for broader escalation between<br>6 Israel on one side and Gaza-based militants on the<br>7 other?<br>10 THE WITNESS: Yes. | **Plaintiffs' Objections:**<br>402, 403, 802, MIL – Page 269.<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, |

and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 273
17 MS. SCOTT REED: Let me hand you
18 Exhibit 126, please, sir.
19 (Exhibit 126 was marked for identification by
20 the court reporter and is attached hereto.)
21 MS. SCOTT REED: For the record, UCP2579
22 through 2582.
23 Q. Mr. Smith, can you identify Exhibit 126 as a
24 June 30th, 2014 Max Security Intelligence report
25 communicated to you via e-mail including by e-mail of

Plaintiffs' Objections:
402, 403, 802, MIL – Page 273.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 274
1 Mr. Kenion?
2 A. Yes.
3 Q. And does this report reflect the news that
4 there was a discovery of three bodies of those
5 teenagers who were kidnapped?
6 A. Yes.
7 Q. Did this raise concern for you that this

Plaintiffs' Objections:
402, 403, 802, MIL – Page 274.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily

| | |
|---|---|
| 8 would further escalate the mutual exchange of<br>9 violence that's going on?<br>10 A. It raised concerns that there would be a<br>11 further deterioration in the security and landscape<br>12 within Israel that could have a direct effect on NBCU<br>13 personnel and assets. Whether it was as a result of<br>14 exchange wasn't something that I was particularly<br>15 concerned about; whether it was an exchange.<br>16 What I was concerned about was that this was<br>17 evidence that there was going to be a further<br>18 deterioration in the security situation that could<br>19 directly affect the production.<br><br>Page 275<br>5 Q. Were you concerned about increasing rockets<br>6 being fired into Israel?<br>7 A. I was concerned about that, amongst other<br>8 things. And the general deterioration of the<br>9 security situation that would directly affect the<br>10 production of NBCU personnel and assets. | cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br><br><br>Plaintiffs' Objections:<br>402, 403, MIL – Page 275.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of |

67

**1515**

| | |
|---|---|
| | the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 278<br>2 Q. You agreed with my characterization that<br>3 there -- the pace just continued to pick up in the<br>4 deterioration.<br>5 Can you describe to me what events or facts<br>6 that you deal in that caused you to agree with that<br>7 characterization?<br>10 THE WITNESS: Yeah. To give you in very<br>11 broad terms, there were retaliations about the<br>12 abduction of the three Israeli teenagers and their<br>13 murder. There were rocket attacks.<br>14 My focus was on the increasing likelihood of<br>15 activity, particularly terrorist activity, that could<br>16 affect the production and the ability to ensure<br>17 safety and security of personnel.<br>18 BY MS. SCOTT REED:<br>19 Q. Now, are you telling the court that all<br>20 activity that was directed out of Gaza at Israel was<br>21 terrorist activity?<br>24 THE WITNESS: No. | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – 278:2-17.<br><br>402, 403, MIL, 104a – 278:18-21; 278:24.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602. |
| Page 279<br>1 BY MS. SCOTT REED:<br>2 Q. Are you an expert in what constitutes<br>3 terrorism?<br>6 THE WITNESS: No.<br>7 BY MS. SCOTT REED:<br>8 Q. And would you tell the court in this case<br>9 that all the rocket fire out of Palestine or Gaza<br>10 directed at Israel was terrorism? | <u>Plaintiffs' Objections:</u><br>402, 403, MIL, 104a – Page 279.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 |

14 THE WITNESS: No, it's not my area of
15 expertise. So I'm here to assess the risk to our
16 personnel and assets, not to describe whether
17 something is terrorist activity or not.

Page 282
5 Q. Mr. Smith, do you hold yourself out as an
6 expert in the area of characterizing exactly what the
7 nature of rocket fire or missile fire or ordinance
8 fire out of Palestine or Gaza directed into Israel
9 would be?
11 THE WITNESS: No.

Page 284
4 Q. Well, you just told me you're not an expert
5 on terrorism, correct?
21 THE WITNESS: That's exactly correct. I
22 report from multiple streams of information, and many
23 of those people have expertise, which I pass on that

is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. As to preliminary question objection, it is clear from the facts that the witness has personal knowledge and therefore no preliminary question exists because the testimony meets the 602.

Plaintiffs' Objections:
402, 403, MIL – Page 282.

Defendant's Response:
This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 284.

Defendant's Response:
This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts

24 information. I'm not pretending to be an expert on
25 terrorism or weaponry.

Page 290
22 Q. I'm referring you back, please, sir, to
23 Exhibit 126. Would you look under assessments,
24 please, sir. The second full paragraph, about a
25 third of the way down, this report to you discusses

Page 291
1 the potential for intensified response against areas
2 in Israel will be elevated.
3 Do you see that?
8 THE WITNESS: Yes.

bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 290.

Defendant's Response:
This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 291.

Defendant's Response:

| | |
|---|---|
| 9 BY MS. SCOTT REED:<br>10 Q. Was that a concern that you had at this time<br>11 period as well?<br>12 A. About the escalation and deterioration of<br>13 the security situation?<br>14 Q. Yes, sir.<br>15 A. Yes.<br><br><br><br><br><br><br><br><br><br><br>Page 301<br>22 MS. SCOTT REED: Let me hand you<br>23 Exhibit 130, please, sir.<br>24 (Exhibit 130 was marked for identification by<br>25 the court reporter and is attached hereto.) | This evidence goes to the credibility of the witness specifically the credibility of the witness' ability to understand the context and development of facts bearing on the claim, which will be weighed by the jury and is always relevant to their determination of the facts. The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br><u>Plaintiffs' Objections:</u><br>402, 403, 802, MIL – Page 301.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of |

71

**1519**

the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 302
1 MS. SCOTT REED: For the record UCP2473
2 through 2476.
3 Q. Can you identify Exhibit 130 as a July 1st,
4 2014 Max Security Intelligence report directed to you
5 via e-mail?
6 A. Yes.
7 Q. Did you receive this report as part of your
8 job in gathering information regarding security for
9 Dig?
10 A. Yes.
11 Q. Does this report include factual
12 descriptions addressing rockets fired from the Gaza
13 Strip toward Israel?
14 A. Yes. Paragraph 2, it mentions it.
15 Q. Is it a further description overall of
16 intensification of the conflict?
19 THE WITNESS: Yes.
20 BY MS. SCOTT REED:
21 Q. Upon your review of this document did you
22 continue to hold the view or concern that the
23 security situation would continue to deteriorate?
24 A. Yes.
25 MS. SCOTT REED: Let me hand you

**Plaintiffs' Objections:**
402, 403, 802, MIL – 302:1-24.

402, 403, MIL – 302:25.

**Defendant's Response:**
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 303
1 Exhibit 131, please, sir. For the record UCP1971
2 through 1972.
3 (Exhibit 131 was marked for identification by
4 the court reporter and is attached hereto.)
5 BY MS. SCOTT REED:

**Plaintiffs' Objections:**
402, 403, MIL – Page 303.

**Defendant's Response:**
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its

6 Q. Can you identify this as an e-mail string
7 between you and Ms. Randi Richmond and others
8 culminating with a July 1st, 2014 e-mail?
9 A. Yes.
10 Q. The top e-mail is the one I'd like to direct
11 your attention to, please, sir. Mr. Binkie writes to
12 you (as read):
13 Stephen, Israel hit Hamas and
14 Gaza with several targeted strikes.
15 Would like to hop on the phone today
16 to discuss the ongoing security and
17 safety of our cast and crew. Want
18 to know what measures are being
19 taken to ensure our employees are
20 protected. Thanks.
21 Do you see that?
22 A. Yes.

Page 304
14 MS. SCOTT REED: I've handed you
15 Exhibit 132, sir, which is UCP1065 through 1067.
16 (Exhibit 132 was marked for identification by
17 the court reporter and is attached hereto.)
18 BY MS. SCOTT REED:
19 Q. Do you see that?
20 A. Yes.
21 Q. Is this an e-mail that you sent to
22 Mr. Binkie and Ms. Richmond on July 1, 2004?
23 A. Yes.
24 Q. Have you changed your recommendations on
25 travel as of this communication?

Page 305
1 A. Yes.
2 Q. And how did your recommendations change?
3 A. I've advised not to travel unless it's

prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

<u>Plaintiffs' Objections:</u>
402, 403, MIL – Page 304.

<u>Defendant's Response:</u>
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

<u>Plaintiffs' Objections:</u>
402, 403, MIL – Page 305.

<u>Defendant's Response:</u>

| | |
|---|---|
| 4 absolutely necessary and business imperative.<br>5 Q. What are you waiting to learn further about<br>6 the full extent of the Israeli response?<br>9 THE WITNESS: The Israeli response in<br>10 particular?<br>11 BY MS. SCOTT REED:<br>12 Q. Yes, sir.<br>13 A. I'm -- is it contained within this document?<br>14 Q. You said -- I'm referring to your second<br>15 paragraph: Do not travel to Israel.<br>16 Do you see that?<br>17 A. Yes.<br>18 Q. And then your next phrase is (as read):<br>19 Until the full extent of the<br>20 Israeli response is clearer.<br>21 What extent of the Israeli response were you<br>22 waiting to know more about?<br>23 A. I wanted to understand how they were going<br>24 to respond in kind and if it was -- happened to be<br>25 the introduction of a ground offensive, that would | The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 306<br>1 have implications in terms of the response and an<br>2 uptick in terrorist activity, incursions into Israel<br>3 from terrorist groups.<br>4 THE REPORTER: And what into Israel?<br>5 THE WITNESS: Incursions.<br>6 THE REPORTER: Incursions?<br>7 THE WITNESS: Yes. | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 306.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, |

|  | and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
|---|---|
| Page 307<br>19 Q. Are you testifying to the court in this case<br>20 that all the actions taken by Hamas that were<br>21 directed toward Israel in the summer of 2014 were<br>22 terrorist acts?<br>25 THE WITNESS: No. | Plaintiffs' Objections:<br>402, 403, MIL – Page 307.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 314<br>21 MS. SCOTT REED: Let me hand you<br>22 Exhibit 135, please, sir.<br>23 (Exhibit 135 was marked for identification by<br>24 the court reporter and is attached hereto.)<br>25 MS. SCOTT REED: UCP2363 through 2365 -- | Plaintiffs' Objections:<br>402, 403, 802, MIL – Page 314.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to |

75

**1523**

show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 315
1 pardon me -- UCP2363 through 2367.
2 Q. Can you identify this as an e-mail Chris
3 Biggs provided to you July 2nd, 2014?
4 A. Yes.
5 Q. Was this in the nature of a compilation of
6 security information that Mr. Biggs was providing to
7 you as part of his responsibilities on Dig?
8 A. Yes, appears so from the information in
9 front of me.
10 Q. At the top in bold it says, IHS (as read):
11 Killing of Israeli abductees
12 increases pressure on Israeli
13 government to retaliate militarily
14 raising war and unrest risk.
15 Do you see that?
16 A. I do.

Plaintiffs' Objections:
402, 403, 802, MIL – Page 315.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not necessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 316
11 Q. Is it your understanding that Mr. Biggs was
12 summarizing for you information that he drew from
13 IHS, Reuters, and Al Jazeera as sources?
16 THE WITNESS: Yeah. I wouldn't say
17 summarizing. What he's done here is provided me with
18 information, and the information from IHS is not a
19 summary. And he hasn't, to my knowledge, added or
20 subtracted from this. It is information that they've
21 provided.

Plaintiffs' Objections:
402, 403, 802, MIL – Page 316.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts

76

giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

**Page 318**
2 BY MS. SCOTT REED:
3 Q. Would you look at the IHS section, please,
4 sir, under: Risk implications. Halfway through the
5 paragraph the sentence is (as read):
6 A broader Gaza war would become
7 more likely if Hamas or other
8 Gaza-based militants responded with
9 several dozen rockets per day into
10 southern Israel over a sustained
11 period.
12 Do you see that?
13 A. Yes.
14 Q. And the next sentence (as read):
15 A broader war would result in a
16 much higher likelihood of Hamas
17 using FAJR-5 rockets capable of
18 reaching Tel Aviv.
19 Do you see that sentence?
20 A. Yes.

Plaintiffs' Objections:
402, 403, 802, MIL – Page 318.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

**Page 319**
9 My question to you is: Since IHS is making
10 comments about the likelihood of a broader Gaza war,
11 did you discuss with anyone at any time the
12 likelihood of a broader Gaza war?
13 A. Are you asking me if I used those words, "a
14 broader Gaza war"? Is that -- is that what the
15 question is asking me?

Plaintiffs' Objections:
402, 403, 802, MIL – Page 319.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such

77

16 Q. The question is about this concept that IHS

17 is discussing.

18 A. Yes --

21 THE WITNESS: Yeah, I -- I thought I

22 answered that. The question before was the same

23 question. I answered it. I -- I had -- we'd have

24 discussions around the -- an escalation in the

25 conflict.

Page 320

10 MS. SCOTT REED: Let me hand you

11 Exhibit 126, please, sir, UCP3672 through 3674.

12 THE WITNESS: Thank you.

13 (Exhibit 136 was marked for identification by

14 the court reporter and is attached hereto.)

15 BY MS. SCOTT REED:

16 Q. Can you identify Exhibit 136 as an e-mail

17 string between you and Ms. Richmond and Mr. Binkie on

18 July the 2nd, 2014?

19 A. Yes.

Page 321

6 Q. All right. Down in the section that says:

7 Risk implications, do you include a discussion that

8 (as read):

9 A broader Gaza war would become

10 more likely if Hamas or other

11 Gaza-based militants responded with

alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, 802, MIL – Page 320.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, 802, MIL – Page 321.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially

12 several dozen rockets per day into
13 southern Israel over a sustained
14 period?
15 A. I -- I wouldn't use the word "discussion."
16 I've put in information that I believe has been taken
17 from the IHS report, one -- in Exhibit 135.
18 Q. All right. Sir. And is the next sentence
19 that (as read):
20 A broader war would result in a
21 much higher likelihood of Hamas
22 using FAJR-5 rockets capable of
23 reaching Tel Aviv.
24 Also something you took out of Exhibit 135,
25 specifically the IHS portion?

Page 322
1 A. Yes.
2 Q. Why did you choose to include these
3 sentences about a broader Gaza war or a broader war
4 in your discussion that you provided to Mr. Binkie
5 and Ms. Richmond?
8 THE WITNESS: The information needed to be
9 shared.
10 BY MS. SCOTT REED:
11 Q. You felt it was of a -- a character or type
12 that it was important to bring it to NBCUniversal
13 attention?
14 A. Yes.

Page 323
7 MS. SCOTT REED: Let me direct you to

outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, 802, MIL – Page 322.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

| | |
|---|---|
| 8 Exhibit 138, please, sir, UCP2219 through 2223.<br>9 (Exhibit 138 was marked for identification by<br>10 the court reporter and is attached hereto.)<br>11 BY MS. SCOTT REED:<br>12 Q. Can you identify Exhibit 138 as a July 3rd,<br>13 2014 Max Security Intelligence report provided to you<br>14 via e-mail?<br>15 A. Yes.<br>16 Q. Did you receive this report from Max<br>17 Security?<br>18 A. I have no reason to doubt that I did. | **Plaintiffs' Objections:**<br>402, 403, 802, MIL – Page 323.<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 324<br>5 Q. Upon receipt of information such as this on<br>6 July the 3rd, did you continue to conclude the<br>7 escalation was going to continue?<br>8 A. Yes. | **Plaintiffs' Objections:**<br>402, 403, MIL – Page 324.<br><br>**Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 326<br>1 MS. SCOTT REED: Let me hand you<br>2 Exhibit 140, please, sir, UCP-2099. | **Plaintiffs' Objections:** |

| | |
|---|---|
| 3 (Exhibit 140 was marked for identification by<br>4 the court reporter and is attached hereto.)<br>5 BY MS. SCOTT REED:<br>6 Q. Can you identify Exhibit 140 as an e-mail<br>7 from you to Ms. Noordeloos and Mr. Brady of July 3rd,<br>8 2014?<br>9 A. Yes.<br>10 Q. What was the purpose of this communication,<br>11 please, sir.<br>12 A. To update both Erin Noordeloos and Brian<br>13 Brady on my advice.<br>14 Q. At this point in time was Ms. Noordeloos<br>15 your boss?<br>16 A. Yes. | 402, 403, MIL – Page 326.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 327<br>10 Q. Could you read the first sentence of this<br>11 e-mail, please, sir, aloud.<br>12 A. (As read):<br>13 Hi, both. FYI, I have advised<br>14 the Dig production based on the<br>15 current --<br>16 THE REPORTER: I have advised the Dig<br>17 production based on the ...<br>18 THE WITNESS: (As read):<br>19 -- current security situation<br>20 and the intel and analysis we have<br>21 from a variety of sources that if<br>22 the current security situation<br>23 persists or deteriorates further, we<br>24 should not be shooting in Jerusalem. | Plaintiffs' Objections:<br>402, 403, MIL – Page 327.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 329<br>10 MS. SCOTT REED: I hand you Exhibit 141,<br>11 please, sir.<br>12 (Exhibit 141 was marked for identification by | Plaintiffs' Objections:<br>402, 403, 802, MIL – Page 329.<br><br>Defendant's Response: |

13 the court reporter and is attached hereto.)
14 MS. SCOTT REED: This is UCP2727 through
15 2731.
16 Q. Can you identify Exhibit 141 as a July 3rd,
17 2014 report from Max Security Intelligence forwarded
18 to you via e-mail including by e-mail of Mr. Kenion?
19 A. Yes.
20 Q. Is this one of the sources of information
21 that you would have received in carrying out your
22 work on the Dig production?
23 A. Yes.
24 Q. Did this report continue to indicate to you
25 an increase in hostilities?

Page 330
1 A. Yes.
2 Q. Did it report an uptick in the number of
3 rockets fired toward Israel?
6 BY MS. SCOTT REED:
7 Q. Can you answer?
8 A. Oh, sorry, yes.

The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, 802, MIL – Page 330.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 331
7 Q. And what information had you processed in
8 order to lead you to make the recommendation at this
9 point in time that there should not being filming in
10 Jerusalem?
11 A. The security environment in Jerusalem was
12 very, very unstable and unpredictable in nature.
13 Activity, terrorist, demonstration, is extremely
14 difficult to predict and also to secure against.
15 Many of the areas that we were going to film in
16 Jerusalem were in areas where conflicts were taking
17 place. There was demonstrations. There was people
18 being stopped. There was rocks being thrown, etc.
19 It wasn't a safe environment.
24 Q. Did you have reports that there were sirens
25 going off in Jerusalem by this time?

Page 332
1 A. Certainly around this time.
2 Q. And what would the sirens indicate from a
3 security standpoint?
6 THE WITNESS: That there's -- that was going
7 to be an incoming rocket attack and people were to
8 shelter in place or go to a place, a shelter -- a
9 place of safety, shelter.
10 MS. SCOTT REED: Let me hand you
11 Exhibit 143, please, sir.
12 (Exhibit 143 was marked for identification by

**Plaintiffs' Objections:**
402, 403, MIL – Page 331.

**Defendant's Response:**
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

**Plaintiffs' Objections:**
402, 403, MIL – Page 332.

**Defendant's Response:**
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim.

83

| | |
|---|---|
| 13 the court reporter and is attached hereto.)<br>14 MS. SCOTT REED: UCP1975 through 1976.<br>15 Q. Can you identify this as an e-mail entitled<br>16 security message from Dig on July 3rd, 2014, that's<br>17 directed to you from Penelope Kennedy?<br>18 A. Yes. | The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 333<br>7 Q. So is it your recollection that you wrote<br>8 this security message to be distributed?<br>9 A. It would appear so. It's my signature<br>10 blocks on page 2.<br>11 Q. Who would be the intended audience for this<br>12 type of security message?<br>13 A. This would be for the -- the crew.<br>14 Q. And you're warning about the deterioration<br>15 of the situation affecting Jerusalem in this, among<br>16 other things?<br>17 A. Yes.<br>18 Q. Your third bullet point states (as read):<br>19 Increase in rocket attacks on<br>20 Southern Israel emanating from Gaza.<br>21 Do you see that?<br>22 A. Yes.<br>23 Q. Was that information that you'd gathered<br>24 from your various incoming sources of intel?<br>25 A. Yes. | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 333.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 334<br>1 Q. And the forth bullet point says (as read):<br>2 General increase in security and<br>3 military activity.<br>4 Do you see that?<br>5 A. Yes.<br>6 Q. Was that information you'd gathered from the<br>7 various sources you had incoming?<br>8 A. Yes. | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 334.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general |

84

Page 335
3 MS. SCOTT REED: Let me hand you
4 Exhibit 145, please, sir.
5 (Exhibit 145 was marked for identification by
6 the court reporter and is attached hereto.)
7 MS. SCOTT REED: This is UCP3971 through 72.
8 Q. Can you identify Exhibit 145 as an e-mail
9 from you to Ms. Noordeloos and Mr. McCarthy dated
10 July 5th?
11 A. Yes.
12 Q. And a string among those parties.
13 A. Yes.
14 Q. Ms. Noordeloos writes to you (as read):
15 Hi, Stephen. Given that reports
16 suggest that even with a ceasefire
17 may not reduce hostilities, I think
18 it is prudent to see what the result
19 is from the request to law
20 enforcement.
21 Do you see that communication to you?
22 A. I do.


Page 336
6 MS. SCOTT REED: Let me show you
7 Exhibit 146, please, sir.
8 (Exhibit 146 was marked for identification by
9 the court reporter and is attached hereto.)
10 MS. SCOTT REED: UCP2149 through 2154.
11 Q. Can you identify Exhibit 146 as a July 5th,

admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 335.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, 802, MIL – Page 336.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to

85

| | |
|---|---|
| 12 2014 Max Security report sent to you via e-mail? <br> 13 A. Yes. <br> 23 Q. The first part of the text indicates <br> 24 (as read): <br> 25 Ground sources reported on | state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 337 <br> 1 July 5th that an Iron Dome <br> 2 Antimissile Battery has been <br> 3 deployed by Israel Defense Forces, <br> 4 IDF, to the Tel Aviv area. <br> 5 Do you see that? <br> 6 A. Yes. <br> 10 Q. Do you recall attempted attacks or attacks <br> 11 spreading to the Tel Aviv area at some point during <br> 12 your monitoring? <br> 13 A. Yes. <br> 14 Q. And would that have been an expansion of the <br> 15 areas that Hamas was targeting within Israel? <br> 16 A. Yes. <br> 17 Q. Were those areas farther away for Hamas to <br> 18 strike out of Gaza? <br> 21 THE WITNESS: It is my understanding, yes. <br> 22 MS. SCOTT REED: Let me hand you <br> 23 Exhibit 147, sir. <br> 24 (Exhibit 147 was marked for identification by <br> 25 the court reporter and is attached hereto.) <br><br> Page 338 | <u>Plaintiffs' Objections:</u> <br> 402, 403, 802, MIL – Page 337. <br><br> <u>Defendant's Response:</u> <br> The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. <br><br> <u>Plaintiffs' Objections:</u> |

86

**1534**

| | |
|---|---|
| 1 MS. SCOTT REED: UCP2422 through 2426.<br>2 Q. Can you identify Exhibit 147 as a July 7th,<br>3 2014 security report from Max Security Intelligence<br>4 directed to you via e-mail?<br>5 A. Yes.<br>6 Q. Did you receive this July 7th security<br>7 update?<br>8 A. I have no reason to doubt that I received<br>9 it.<br>14 Q. On the second page under the heading:<br>15 Assessments, was Max Security Intelligence continuing<br>16 to advise that there was increased potential for an<br>17 escalation in hostilities between Hamas and others in<br>18 Palestine on one side and Israelis on the other?<br>19 A. How far down is that -- sorry -- in this<br>20 assessment?<br>21 Q. Just the first half of the first paragraph<br>22 regarding assessments.<br>25 THE WITNESS: Yes.<br><br>Page 339<br>1 BY MS. SCOTT REED:<br>2 Q. In the second half of that first paragraph,<br>3 sir, there is a reference to Hamas' military wing,<br>4 the Izz Al-Din Al-Qassam brigades.<br>5 Do you see that?<br>6 A. I do.<br>7 Q. Do you know what the Izz Al-Din Al-Qassam<br>8 brigades is?<br>9 A. No.<br>10 Q. And are you familiar with Hamas' having a<br>11 military wing?<br>12 A. I -- I don't know the structure of Hamas. | 402, 403, 802, MIL – Page 338.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br><u>Plaintiffs' Objections:</u><br>402, 403, 802, MIL – 339:1-6.<br><br>402, 403, MIL – 339:7-14; 339:17-21; 339:24-25.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not |

87

13 Q. Are you familiar with any of the military
14 capabilities of Hamas' military wing?
17 THE WITNESS: No.
18 BY MS. SCOTT REED:
19 Q. As part of your work on the Dig production,
20 did you undertake any sort of study or review of
21 Hamas' military wing or its capabilities?
24 THE WITNESS: No.
25 Did you get that?

Page 340
1 No. Sorry.

being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 340.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 341
19 MS. SCOTT REED: Let me hand you
20 Exhibit 150, please, sir.
21 (Exhibit 150 was marked for identification by
22 the court reporter and is attached hereto.)
23 MS. SCOTT REED: UCP2816 through 2820.
24 Q. Can you identify Exhibit 150 as a July 7th
25 Max Security Intelligence report sent to you via

Plaintiffs' Objections:
402, 403, 802, MIL – Page 341.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information

88

1536

NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, 802, MIL – Page 342.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 342
1 e-mail?
2 A. Yes.
3 Q. Did you receive this Max Security report on
4 or about July the 7th?
5 A. Yes.
6 Q. Would you have reviewed this information on
7 receiving it from Max Security?
8 A. I have no reason to doubt that I did.
13 Q. Does part of this report indicate that
14 cross-border fire between the Israel defense forces,
15 IDF, and Gaza-based militants escalated during the
16 evening hours of July 7?
19 THE WITNESS: Yes.
20 BY MS. SCOTT REED:
21 Q. In the next paragraph did Max Security
22 report to you as part of its work for NBCUniversal
23 that on the ground dozens of rockets and mortars have
24 been fired toward Southern Israeli communities
25 bordering the Gaza Strip while numerous Israeli air

Page 343
1 strikes were reported into Gaza as well?
4 THE WITNESS: Yes.
5 BY MS. SCOTT REED:

Plaintiffs' Objections:
402, 403, 802, MIL –
343:1; 343:4-9; 343:12-16.

402, 403, MIL – 343:17-25.

Defendant's Response:

| | |
|---|---|
| 6 Q. Did this report of July 7th indicate to you<br>7 that there continued to be an intensification of the<br>8 mutual activity back and forth between Palestine or<br>9 Hamas on one side and Israel on the other?<br>12 THE WITNESS: Yes.<br>13 BY MS. SCOTT REED:<br>14 Q. And did you take this report as further<br>15 evidence that escalation was continuing?<br>16 A. Yes.<br>17 MS. SCOTT REED: Let me hand you<br>18 Exhibit 151, sir, UCP1855 through 1856.<br>19 (Exhibit 151 was marked for identification by<br>20 the court reporter and is attached hereto.)<br>21 BY MS. SCOTT REED:<br>22 Q. Can you identify Exhibit 151 as an e-mail<br>23 from you to Ms. Richmond on July the 8th, 2014?<br>24 A. Yes.<br>25 Q. As part of this report, did you either quote<br><br>Page 344<br>1 or summarize the information you'd received from Max<br>2 Security in Exhibit 150?<br>5 THE WITNESS: Yes.<br>6 BY MS. SCOTT REED:<br>7 Q. Did you quote part of it?<br>8 A. Yes.<br>9 Q. Did you summarize other parts of it?<br>10 A. Yes.<br>11 Q. Did you rely upon Exhibit 150, the July 7th<br>12 security report from Max Security, in order to<br>13 provide information in your report that's documented<br>14 as Exhibit 151?<br>17 THE WITNESS: Information from Exhibit 150 | The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br><br>Plaintiffs' Objections:<br>402, 403, MIL – Page 344.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

90

**1538**

| | |
|---|---|
| 18 is included in the information in Exhibit 151.<br>24 BY MS. SCOTT REED:<br>25 Q. In Exhibit 151, you state toward the top | Plaintiffs' Objections:<br>402, 403, MIL – 345:1-13. |
| Page 345<br>1 (as read):<br>2 Summarizing the info below, there<br>3 is significant risk of an escalation<br>4 as conditions for a ceasefire are<br>5 unlikely to be acceptable.<br>6 Do you see that?<br>7 A. Yes.<br>8 Q. Was that your conclusion as of July the 8th?<br>9 A. Yes.<br>10 Q. Did you believe that things would continue<br>11 to intensify following July the 8th based upon the<br>12 information you had gathered?<br>13 A. Yes.<br>19 MS. SCOTT REED: Let me hand you<br>20 Exhibit 152, please, sir.<br>21 (Exhibit 152 was marked for identification by<br>22 the court reporter and is attached hereto.)<br>23 MS. SCOTT REED: UCP1845 through 1849.<br>24 Q. Can you identify Exhibit 152 as a July 8th,<br>25 2014 Max Security Intelligence report sent to you via | 402, 403, 802, MIL – 345:19-25.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 346<br>1 e-mail?<br>2 A. Yes.<br>3 Q. Did you receive this on or about July the<br>4 8th?<br>5 A. That's correct.<br>6 Q. Did you review it soon after or close in<br>7 time to your receipt?<br>8 A. I have no reason to doubt that I did. | Plaintiffs' Objections:<br>402, 403, 802, MIL – Page 346.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value |

91

13 Q. Did you conclude based upon this report
14 that's labeled Exhibit 152 that there was a
15 continuing likelihood of escalation of the
16 hostilities?
17 A. Yes.
18 Q. Did this report to you that the rocket fire
19 into southern Israel was continuing?
22 THE WITNESS: The information is in the
23 document, yes.
24 BY MS. SCOTT REED:
25 Q. And at the bottom of the first page did Max

Page 347
1 Security report to you that on July 7th,
2 approximately 100 rockets and mortars were fired into
3 Israel, primarily targeting border communities?
6 THE WITNESS: Yes, that's in the document.
13 MS. SCOTT REED: Let me hand you
14 Exhibit 153, please, sir.
15 (Exhibit 153 was marked for identification by
16 the court reporter and is attached hereto.)
20 Q. Can you identify Exhibit 153 as an e-mail to
21 you from Mr. Biggs on July 8th, 2014?
22 A. Yes.

Page 348

re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, 802, MIL –
347:1-3; 347:6.

402, 403, MIL – 347:13-16; 347:20-22.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 348.

Defendant's Response:

| | |
|---|---|
| 17 Q. He notes to you a report with a time on it<br>18 (as read):<br>19 4:36 p.m., Tel Aviv Municipality<br>20 instructed by the Home Front Command<br>21 begins opening bomb shelters.<br>22 Do you see that?<br>23 A. Yes.<br>24 Q. And was that a -- evidence of a further<br>25 escalation that was occurring? | The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>402, 403, MIL – Page 349. |
| Page 349<br>3 THE WITNESS: Yes. | Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>402, 403, MIL – Page 350. |
| Page 350<br>1 BY MS. SCOTT REED:<br>2 Q. Mr. Smith, may I direct your attention back<br>3 to the UCP2813. Mr. Biggs also notes to you<br>4 something that's denominated (as read): | Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is |

93

**1541**

5 4:16 p.m., flights coming in and
6 leaving Ben Gurion Airport diverted.
7 Do you see that?
8 A. Yes.
9 Q. And was that further evidence to you of an
10 escalation?
11 A. Yes. This is information that's been picked
12 up on Twitter.

Page 352
22 MS. SCOTT REED: Let me hand you
23 Exhibit 156, please, sir, UCP2681 through 2682.
24 (Exhibit 156 was marked for identification by
25 the court reporter and is attached hereto.)

Page 353
1 BY MS. SCOTT REED:
2 Q. Can you identify Exhibit 156 as the travel
3 tracker proactive e-mail sent to you on July 8th,
4 2014?
5 A. Yes.

---

unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, 802, MIL – Page 352.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, 802, MIL – Page 353.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or

94

6 Q. And does this report air raid warnings were

7 sounding in various areas in Israel?

8 A. Yes.

9 Q. Is this further evidence of escalation to

10 you in part of your gathering information on the Dig

11 production?

12 A. Yes.

13 Q. And was Exhibit 156 an example of the type

14 of information that was coming into you as part of

15 your work in connection with the Dig production?

16 A. Yes.

Page 357

8 MS. SCOTT REED: Let me hand you

9 Exhibit 161, please, sir.

10 (Exhibit 161 was marked for identification by

11 the court reporter and is attached hereto.)

12 MS. SCOTT REED: UCP913 to 914.

13 Q. Can you identify this as an e-mail string

14 beginning with an e-mail from you of July 9th, 2014?

15 A. Yes.

16 Q. And are you reporting that additional

17 rockets against Tel Aviv, Jerusalem, and other major

18 population centers in central Israel should be

19 expected?

22 THE WITNESS: Yes.

23 BY MS. SCOTT REED:

24 Q. Is this information that you were

25 considering as part of your ongoing work on assessing

Page 358

1 security for the Dig production?

2 A. Yes.

why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 357.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 358.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is

unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 364.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Page 364
8 MS. SCOTT REED: Here's 169, please, sir,
9 UCP2324.
10 (Exhibit 169 was marked for identification by
11 the court reporter and is attached hereto.)
12 BY MS. SCOTT REED:
13 Q. Can you identify this as a July 9th, 2014
14 e-mail you sent to Brian Brady to report further
15 events and summaries?
16 A. Yes.
17 Q. And did you report that you were still in an
18 escalation phase?
21 THE WITNESS: Yes.
22 BY MS. SCOTT REED:
23 Q. Were you expecting on July 9th a continuing
24 intensification of the two-sided interactive activity
25 that was going on?

Page 365
3 THE WITNESS: I expected an escalation; an
4 escalation of the conflict and a deterioration in the
5 security situation.

Plaintiffs' Objections:
402, 403, MIL – Page 365.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses

6 MS. SCOTT REED: Let me hand you 170,
7 please, sir, UCP2372 through 2376.
8 (Exhibit 170 was marked for identification by
9 the court reporter and is attached hereto.)
10 BY MS. SCOTT REED:
11 Q. Can you identify this as a July 9th, 2014
12 Max analysis that was sent to you by e-mail?
13 A. Yes.
14 Q. What's Operation Protective Edge?
15 A. It's the name given by the Israeli Defense
16 Force to their operations in this conflict.
17 Q. And do you see the indication that Israel
18 launched Operation Protective Edge on July the 7th?
19 A. On the first line, yes.
20 Q. Yes, sir.
21 And was this information that you received
22 from the Max analysis report the type that you were
23 gathering and incorporating into your assessment of
24 security for Dig?

Page 366
2 THE WITNESS: Yes.

the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 366.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

97

| | |
|---|---|
| **Page 368**<br>23 Q. Can you identify Exhibit 174, please, sir,<br>24 as a July 10th e-mail from you to Mr. McCarthy and<br>25 Ms. Noordeloos included in a string of e-mails? | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 368.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| **Page 369**<br>1 (Exhibit 174 was marked for identification by<br>2 the court reporter and is attached hereto.)<br>3 THE WITNESS: That's correct.<br>4 BY MS. SCOTT REED:<br>5 Q. In the top third of the e-mail there's a<br>6 bold question (as read):<br>7 Stephen, what is the<br>8 recommendation with regards to<br>9 ongoing production given the state<br>10 of affairs?<br>11 Do you see that?<br>12 A. Yes.<br>13 Q. In response did you actually make a<br>14 recommendation to the production side<br>for the Dig?<br>15 A. Yes.<br>16 Q. Was that verbal or in writing or both?<br>17 A. My recollection is that it was both.<br>18 MS. SCOTT REED: Let me hand you<br>19 Exhibit 175, please, sir. | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 369.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| | |
|---|---|
| 20 (Exhibit 175 was marked for identification by<br>21 the court reporter and is attached hereto.)<br>22 BY MS. SCOTT REED:<br>23 Q. UCP4034 through 4036.<br>24 Can you identify this as an e-mail string of<br>25 July 10th, 2014 in which you were involved? | |
| Page 370<br>1 A. Yes.<br>2 Q. Erin is writing (as read):<br>3 Both Stephen and I concur that if<br>4 both the cast are unwilling to<br>5 travel and the reports from the<br>6 ground show that there is no lull or<br>7 cessation at this point, we are at a<br>8 point where we need to make a<br>9 decision. It appears they want us<br>10 to make the decision for them.<br>11 Do you know what she's referring to?<br>14 THE WITNESS: On whether they should<br>15 continue with the production in Israel at this stage.<br>16 MS. SCOTT REED: Let me hand you<br>17 Exhibit 176.<br>18 (Exhibit 176 was marked for identification by<br>19 the court reporter and is attached hereto.)<br>20 BY MS. SCOTT REED:<br>21 Q. Can you identify Exhibit 176 as a July 10th<br>22 e-mail that you sent to Ms. Noordeloos and copied<br>23 Mr. Biggs?<br>24 A. Yes.<br>25 Q. Is this wording that you were putting | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 370.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 371<br>1 together in order to document in writing what your<br>2 assessment was?<br>5 THE WITNESS: Yeah. It -- it was wording<br>6 that we were going to make in a communication to the | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 371.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is |

7 production heads.
8 MS. SCOTT REED: And let me show you
9 Exhibit 177, sir.
10 (Exhibit 177 was marked for identification by
11 the court reporter and is attached hereto.)
12 BY MS. SCOTT REED:
13 Q. Is this the actual written form that went to
14 Mr. Binkie as part of production?
17 THE WITNESS: Yes.
18 BY MS. SCOTT REED:
19 Q. And is this the final recommendation that
20 you made in connection with security at this time?
22 THE WITNESS: This was my recommendation
23 then. There were other recommendations over a period
24 of time on whether to return, whether the security
25 situation had changed, whether there had been a

Page 372
1 cessation, an escalation. But on this particular
2 day, this was my advice to the production.
3 BY MS. SCOTT REED:
4 Q. In the first full paragraph, it's stated
5 (as read):
6 This is to advise you that the
7 security environment in Israel
8 currently prohibits NBCU security
9 from being able to guarantee the
10 safety and security of our
11 employees, production partners, and
12 associated crew and talent.
13 Is that your recommendation, so to speak?
14 A. Yes.
15 Q. This is the way you stated the conclusion?
16 A. Yes.
17 Q. And what does this mean?
18 A. It means given the situation, the

unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 372.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

100

**1548**

| | |
|---|---|
| 19 analysis -- pardon me -- the analysis of all of the<br>20 information, the continued escalation, the likelihood<br>21 of further detrimental security activity, whether in<br>22 the form of terrorist attacks, whether in the form of<br>23 rocket attacks, that the security environment was not<br>24 acceptable for us to continue with that production in<br>25 those locations at this particular time.<br><br>Page 373<br>1 Q. And was that throughout Israel as opposed to<br>2 your recommendation earlier, which had been<br>3 Jerusalem?<br>4 A. Yes.<br>5 Q. So at this point you have broadened your<br>6 assessment to say security cannot be guaranteed<br>7 across Israel?<br>8 A. Yes. | |
| | <u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 373.<br><br><u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probable value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br><u>Plaintiffs' Objections:</u><br>402, 403, MIL – Page 374. |
| Page 374<br>16 Q. Did you continue to gauge the security<br>17 situation even after you provided your assessment on<br>18 July the 10th?<br>19 A. Yes.<br>20 Q. Did you continue to provide analysis or<br>21 assessment on whether hostilities were ramping up or<br>22 not?<br>23 A. I did. | <u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probable value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. |

| | |
|---|---|
| 24 Q. And what sort of conclusions did you reach<br>25 after July 10th about whether hostilities were | The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>402, 403, MIL – Page 375. |
| Page 375<br>1 ramping up?<br>3 THE WITNESS: Hostilities were ramping up.<br>4 There was no cessation. At that time there was no<br>5 long-term prospect of a ceasefire, and the security<br>6 situation hadn't changed enough for the production to<br>7 continue, in my opinion.<br>8 MS. SCOTT REED: Let me hand you<br>9 Exhibit 179, please, sir.<br>10 (Exhibit 179 was marked for identification by<br>11 the court reporter and is attached hereto.)<br>12 BY MS. SCOTT REED:<br>13 Q. Can you identify 179 as a July 11th, 2014<br>14 Max Security Intelligence report that you received<br>15 via e-mail?<br>16 A. Yes.<br>17 Q. Does this contain information that you were<br>18 gathering as part of your process of assessing<br>19 security for the Dig production?<br>20 A. Yes.<br>21 Q. Did this continue to inform your assessment<br>22 that you had on an ongoing basis after July the 10th?<br>25 THE WITNESS: Yes. | Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 376 | Plaintiffs' Objections:<br>402, 403, MIL – Page 376.<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this |

| | |
|---|---|
| 25 Q. Did you ever change your assessment that you | testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>402, 403, MIL – Page 377. |
| Page 377<br>1 issued on July 10th to say that you could guarantee<br>2 safety for actual production?<br>3 A. No, not -- that's not my recollection, no. | Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>402, 403, MIL – Page 384. |
| Page 384<br>25 Q. Can you identify Exhibit 192 as a July 16th, | Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses |

103

Page 385
1 2014 e-mail from you to Mr. Binkie copied to
2 Ms. Richmond?
3 (Exhibit 192 was marked for identification by
4 the court reporter and is attached hereto.)
5 THE WITNESS: Yes, I can.
6 BY MS. SCOTT REED:
7 Q. And is this a communication that you were
8 asked to provide to the production side?
9 A. I'm -- I'm not sure if I was asked to
10 provide a further statement or I just provided it of
11 my own volition.
12 Q. And in this you're communicating that the
13 current attempts to broker a ceasefire have stalled.
14 Do you see that?
15 A. Yes.
16 Q. And was that significant to your assessment
17 on your ongoing review of safety and security for
18 Dig?
19 A. Yes.
20 Q. Why was that, sir?
21 A. Because it meant that there was no cessation
22 in the violence. There was no long-term or even

the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

<u>Plaintiffs' Objections:</u>
402, 403, MIL – Page 385.

<u>Defendant's Response:</u>
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

104

| | |
|---|---|
| 23 short-term/medium-term prospect that the security<br>24 situation would -- would change to allow the safe and<br>25 secure protection of our assets. | **Plaintiffs' Objections:**<br>402, 403, MIL – Page 386. |
| | **Defendant's Response:** |
| **Page 386**<br>1 Q. You report here that (as read):<br>2 During the period of Israeli<br>3 acceptance, it is estimated that<br>4 47 rockets were fired from Gaza<br>5 toward Israel.<br>6 Do you see that?<br>7 A. Yes.<br>8 Q. And did that inform the assessment that you<br>9 were providing at this point?<br>10 A. That was part of the assessment, yes --<br>11 Q. So as of -- pardon me.<br>12 A. Yes, sorry.<br>13 Q. As of July the 16th, 2014 were you still<br>14 providing a security assessment that you could not<br>15 guarantee the safety and security of personnel for<br>16 production in Israel?<br>17 A. Yes. | The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| 22 Q. Is your overall feeling that after your<br>23 recommendation on July 10th, things were either at a<br>24 sustained level or increasing in hostility? | **Plaintiffs' Objections:**<br>402, 403, MIL – 387:2-8.<br><br>402, 403, 802, MIL – 387:9-13; 387:22-24. |
| **Page 387**<br>2 THE WITNESS: My -- my assessment was that<br>3 there was no cessation of violence and the situation<br>4 had not improved.<br>5 BY MS. SCOTT REED:<br>6 Q. Did you predict that there was or assess<br>7 that there was not a likelihood of cessation either?<br>8 A. Yes. | **Defendant's Response:**<br>The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value |

9 Q. Can you identify Exhibit 193 as a July 16th,

10 2014 security alert that you received via e-mail?

11 (Exhibit 193 was marked for identification by

12 the court reporter and is attached hereto.)

13 THE WITNESS: Yes, I can.

22 BY MS. SCOTT REED:

23 Q. You're reporting in this that -- or pardon

24 me -- Max Security is stating in this that (as read):

Page 388

1 call-up of an additional

2 8,000 reservists, bringing the total

3 number of troops called up to

4 50,000.

5 Do you see that?

6 A. I do.

12 BY MS. SCOTT REED:

13 Q. Did that information affect the assessment

14 that you were providing on an ongoing basis about

15 safety and security for Dig?

16 A. That would have formed part of my assessment

17 and how I came to the conclusions; that and other

18 information sources.

19 BY MS. SCOTT REED:

20 Q. And did that fact continue to cause you to

21 conclude that you could not assure safety or security

22 for production in Israel?

25 THE WITNESS: That was a -- a number of

Page 389

1 factors that were taken into conversation.

2 BY MS. SCOTT REED:

---

re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, 802, MIL – 388:1-6.

402, 403, MIL – 388:12-22; 388:25.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss and the amount of the loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. This statement is not being offered for the truth of the matter asserted, therefore, it is by definition not hearsay. The statement is not offered for the purpose of demonstrating the truthfulness of any assertion, it is only being offered to show information available to the witness and/or the subsequent actions of the witness after possessing said information. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.

Plaintiffs' Objections:
402, 403, MIL – Page 389.

Defendant's Response:
The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time,

| | |
|---|---|
| 3 Q. Yes, sir.<br>4 And was that one of them?<br>5 A. Yes. | and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

107

## 18.   STEPHEN SMITH VOL. 2

| Deposition Designation | Objection & Response |
|---|---|
| Defendant's Designation of Stephen Smith Vol. 2<br>p. 410, 1. 12 - p. 410, 1.13; p. 410, 1.17 - p. 411, 1. 3;<br>p. 411, 1.25 - p. 412, 1. 8; p. 412, 1. 14  - p. 412, 1. 19;<br>p. 412, 1. 24 - p. 413, 1. 3; p. 413, 1. 5 - p. 413, 1. 16;<br>p. 413, 1. 18 - p. 413, 1.24; p. 414, 1. 2 - p. 414, 1. 2;<br>p. 415, 1. 8 - p. 415, 1. 10; p. 415, 1. 12 - p. 415, 1. 22;<br>p. 415, 1. 25 - p. 416, 1. 23; p. 416, 1. 25 - p. 417, 1. 3;<br>p. 417, 1. 5 - p. 417, 1. 12; p. 417, 1. 14 - p. 417, 1. 14;<br>p. 438, 1. 15 - p. 439, 1. 4; p. 439, 1. 7 - p. 439, 1. 12;<br>p. 439, 1. 16 - p. 440, 1. 4; p. 440, 1. 8 - p. 440, 1. 11;<br>p. 440, 1. 13 - p. 440, 1. 13; p. 441, 1. 18 - p. 442, 1. 8;<br>p. 442, 1. 12 - p. 442, 1. 12; p. 442, 1. 14 - p. 442, 1.16;<br>p. 442, 1. 20 - p. 442, 1. 24; p. 443, 1. 3 - p. 443, 1. 12;<br>p. 443, 1. 15 - p. 443, 1. 21; p. 443, 1. 24 - p. 444, 1. 4;<br>p. 444, 1. 7 - p. 444, 1. 14; p. 444, 1. 18 - p. 444, 1. 23;<br>p. 445, 1. 2 - p. 445, 1. 15; p. 445, 1. 18 - p. 445, 1. 23;<br>p. 446, 1. 1 - p. 446, 1. 4; p. 446, 1. 7 - p. 446, 1. 7. | Plaintiffs object to Defendants' designations as follows: |
| Page 410<br>12Q What was the purpose of providing<br>13 Exhibit 192 to Mr. Binke and Ms. Richmond?<br><br><br>Page 410<br>17 THE WITNESS: This was a statement of<br>18 information that I had gathered around the security<br>19 situation in Israel at the time to make them aware<br>20 of what was happening and what we were advising.<br>21 BY MS. REED:<br>22 Q Did you understand what use this statement<br>23 would -- further use this statement would be put<br>24 to?<br>25 A Yes, I did. | Plaintiffs' Objections:<br>410:12-13 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of |

| Deposition Designation | Objection & Response |
|---|---|
| | the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>410:17-25 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 411<br>1 Q What was that?<br>2 A It was to inform the weight of business to<br>3 enable them to make a decision. | Plaintiffs' Objections:<br>411:1-3 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high |
| Page 411<br>25 Q What recommendations did you make, please,<br><br>Page 412<br>1 sir?<br>2 A My recommendation was that it was not<br>3 safe, and we could not guarantee the safety or the<br>4 security of NBCU personnel or assets at that time.<br>5 Q And at what time are you discussing?<br>6 A I'm discussing the time through June and<br>7 into July, and I presented information on July the | |

| Deposition Designation | Objection & Response |
|---|---|
| 8 10th. | probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| | Plaintiffs' Objections: 411:25 – 402, 403, MIL |
| | Defendant's Response: The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 412<br>14 Q So between July 10th and July 16th, did<br>15 you adjust your recommendation in any way to NBC<br>16 Universal?<br>17 A No, my recommendation was that it was<br>18 still not safe or secure and we could not guarantee<br>19 the safety of our employees and assets. | Plaintiffs' Objections: 412:1-8 – 402, 403, MIL |
| Page 412<br>24 BY MS. REED:<br>25 Q I asked you to put Exhibit 177 in front of | Defendant's Response: The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore |

| Deposition Designation | Objection & Response |
|---|---|
|  | not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. <br><br> Plaintiffs' Objections: <br> 412:14-19 – 402, 403, MIL <br><br> Defendant's Response: <br> The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. <br><br> Plaintiffs' Objections: <br> 412:24-25 – 402, 403, MIL <br><br> Defendant's Response: <br> The witness' understanding of the facts |

| Deposition Designation | Objection & Response |
|---|---|
| | are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 413<br>1 you as well, sir. Is Exhibit 177 the documentation<br>2 that reflects the position that you had taken as of<br>3 July the 10th, 2014, to NBC Universal? | Plaintiffs' Objections:<br>413:1-3 – 402, 403, MIL |
| Page 413<br>5 THE WITNESS: Yes.<br>6 BY MS. REED:<br>7 Q And was the written information you<br>8 provided in Exhibit 177 based upon your entire<br>9 assessment of all the information that had been<br>10 received to that point?<br>11 A It was based upon a continuous assessment<br>12 pre-production, during, and at this moment in time.<br>13 Q Yes, sir. And on July 10th when you made<br>14 this recommendation, was that a culmination based<br>15 upon the entire assessment you had made up until<br>16 July the 10th? | Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 413<br>18 THE WITNESS: Yes.<br>19 BY MS. REED:<br>20 Q All right. And turning back to<br>21 Exhibit 192, your statement on July 16th, was this | |

| Deposition Designation | Objection & Response |
|---|---|
| 22 recommendation and statement a culmination of all<br>23 the information that you had reviewed and assessed<br>24 up until July the 16th? | Plaintiffs' Objections:<br>413:5-16 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>413:18-24 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what |

| Deposition Designation | Objection & Response |
|---|---|
| | information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 414<br>2 THE WITNESS: Yes. | Plaintiffs' Objections:<br>414:2 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 415<br>8 Was July the 10th the date that you concluded you<br>9 could not guarantee safety or security for the DIG<br>10 production in Israel as a whole? | Plaintiffs' Objections:<br>415:8-10 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such |
| Page 415<br>12 THE WITNESS: Yes.<br>13 BY MS. REED:<br>14 Q Had you formed that assessment prior to<br>15 July the 10th, please, sir?<br>16 A On or around July the 10th. It was a<br>17 continuous assessment of -- | |

| Deposition Designation | Objection & Response |
|---|---|
| 18 Q Yes.<br>19 A -- for the security situation.<br>20 Q And was July the 10th the date that you<br>21 actually articulated that assessment to the<br>22 production side at NBC Universal?<br><br>Page 415<br>25 THE WITNESS: It was the date I provided | alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>415:12-22 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>415:25 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed |

| Deposition Designation | Objection & Response |
|---|---|
| | by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 416<br>1 the statement of the information that I had been<br>2 conveyed throughout this process.<br>3 (Defendant's Exhibit 194 was marked for<br>4 identification by the Certified Shorthand Reporter;<br>5 a copy of which is attached hereto.)<br>6 BY MS. REED:<br>7 Q Let me hand you Exhibit 194, please, sir.<br>8 Can you identify that as July 17, 2004, e-mail from<br>9 you to Mr. Binke?<br>10 A Yes.<br>11 Q Will you look under assessment, please,<br>12 the last sentence. Will you read that for the<br>13 record. Begins "at this time."<br>14 A "At this time there has been no<br>15 deescalation in the conflict and the threat to<br>16 personnel resulting in serious injury or loss of<br>17 life remains, and there are no current security<br>18 controls that would allow NBCU Security to<br>19 guarantee the safety and security of our personnel<br>20 without the prospect of serious injury or loss of<br>21 life."<br>22 Q Is that the assessment or conclusion that<br>23 you had reached by July the 17th, please, sir? | Plaintiffs' Objections:<br>416:1-23 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| | Plaintiffs' Objections:<br>416:25 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 416<br>25 THE WITNESS: Yes. | |
| Page 417<br>1 BY MS. REED:<br>2 Q What was the purpose in you communicating<br>3 this particular written assessment to Mr. Binke? | Plaintiffs' Objections:<br>417:1-3 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other |
| Page 417<br>5 THE WITNESS: This was an update of<br>6 information gathered regarding the security<br>7 Situation in Israel and our ability to protect our<br>8 assets, personnel, and reputation.<br>9 BY MS. REED:<br>10 Q Did this reflect any change in your<br>11 assessment since your July 10th written statement<br>12 on this subject? | |
| Page 417<br>14 THE WITNESS: No. | |

| Deposition Designation | Objection & Response |
|---|---|
| | parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| | Plaintiffs' Objections: 417:5-12 – 402, 403, MIL |
| | Defendant's Response: The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| | Plaintiffs' Objections: 416:14 – 402, 403, MIL |
| | Defendant's Response: The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its |

| Deposition Designation | Objection & Response |
|---|---|
| | probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| | Plaintiffs' Objections:<br>435:15-25 – 402, 403, MIL |
| Page 438<br>15 (Defendant's Exhibit 222 was marked for<br>16 identification by the Certified Shorthand Reporter;<br>17 a copy of which is attached hereto.)<br>18 BY MS. REED:<br>19 Q Let me hand you Exhibit 222, sir. Can you<br>20 please identify this as a July 28, 2014, e-mail you<br>21 sent to Mr. Binke and Ms. Richmond entitled Israel<br>22 Update?<br>23 A Yes.<br>24 Q Would you look under the bold heading<br>25 Security Update to the second paragraph, sir, which<br><br>Page 439<br>1 says, "No change to NBC security position." Do you<br>2 see that?<br>3 A Yes.<br>4 Q What were you communicating here? | Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 439<br>7 THE WITNESS: Exactly as it states here.<br>8 There was no change in our security position in<br>9 being able to safeguard the safety.<br>10 BY MS. REED:<br>11 Q Was that consistent with your<br>12 communications of July 10th and July 17th?<br><br>Page 439 | Plaintiffs' Objections:<br>439:1-4 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not |

| Deposition Designation | Objection & Response |
|---|---|
| 16 THE WITNESS: Yes.<br>17 (Defendant's Exhibit 223 was marked for<br>18 identification by the Certified Shorthand Reporter;<br>19 a copy of which is attached hereto.)<br>20 BY MS. REED:<br>21 Q Can you identify Exhibit 223 as the<br>22 July 29th, 2014, e-mail from you to Mr. Binke and<br>23 Ms. Richmond entitled Israel Update 29 July?<br>24 A Yes.<br>25 Q At the very bottom, sir, do you see the | confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>439:7-12 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>439:16-25 – 402, 403, MIL |

| Deposition Designation | Objection & Response |
|---|---|
| | Defendant's Response: The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 440 1 statement, "No change to NBCU Security Advice"? 2 A Yes. 3 Q Was that your assessment of the security 4 situation as of July the 29th?  Page 440 8 THE WITNESS: Yes. 9 BY MS. REED: 10 Q Is that consistent with the reports that 11 you had provided July 10th and July 17th?  Page 440 13 THE WITNESS: Yes. | Plaintiffs' Objections: 440:1-4 – 402, 403, MIL  Defendant's Response: The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of |

| Deposition Designation | Objection & Response |
|---|---|
| | the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>440:8-11 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>440:13 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high |

| Deposition Designation | Objection & Response |
|---|---|
| | probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 441<br>18 (Defendant's Exhibit 224 was marked for<br>19 identification by the Certified Shorthand Reporter;<br>20 a copy of which is attached hereto.)<br>21 BY MS. REED:<br>22 Q Can you identify Exhibit 224, please, sir,<br>23 as an August 5th, 2014, e-mail you sent to<br>24 Mr. Binke entitled Israel Security Update?<br>25 A Yes. | Plaintiffs' Objections:<br>441:18-25 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 442<br>1 Q And in the second line down in bold you<br>2 state, "No change to NBCU security advice"; do you<br>3 see that?<br>4 A Yes.<br>5 Q Is it accurate that between July 10th and<br>6 August 5th you did not change your assessment in<br>7 regard to safety and security in Israel for<br>8 production?<br><br>Page 442 | Plaintiffs' Objections:<br>442:1-8 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore |

| Deposition Designation | Objection & Response |
|---|---|
| 12 THE WITNESS: Yes.<br><br>Page 442<br>14 Q Were you continuing to receive information<br>15 and assess the safety and security situation in<br>16 Israel?<br><br><br><br>Page 442<br>20 THE WITNESS: Yes.<br>21 BY MS. REED:<br>22 Q What was the purpose of you communicating<br>23 the factual information in Exhibit 224 to Mr. Binke<br>24 on August 5th? | not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>442:12 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>442:14-16 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts |

| Deposition Designation | Objection & Response |
|---|---|
| | are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. <br><br> Plaintiffs' Objections: <br> 442:20-24 – 402, 403, MIL <br><br> Defendant's Response: <br> The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 443<br>3 THE WITNESS: To address the current<br>4 security situation in Israel.<br>5 (Defendant's Exhibit 225 was marked for<br>6 identification by the Certified Shorthand Reporter;<br>7 a copy of which is attached hereto.)<br>8 BY MS. REED:<br>9 Q Can you identify Exhibit 225 as an<br>10 August 8, 2014, e-mail from you to Mr. Binke<br>11 entitled Israel Security Update?<br>12 A Yes<br><br>Page 443<br>15 THE WITNESS: Yes.<br>16 BY MS. REED:<br>17 Q It begins, "Mark, FYI," bold, "no change<br>18 to NBCU security advice"; do you see that?<br>19 A Yes.<br>20 Q Why were you providing that report to<br>21 Mr. Binke on August 8th, 2014?<br>Page 443<br>24 THE WITNESS: To advise of the security<br>25 situation in Israel. | Plaintiffs' Objections:<br>443:3-12 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections:<br>443:15-21 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what |

| Deposition Designation | Objection & Response |
|---|---|
| | information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| | <u>Plaintiffs' Objections:</u><br>443:24-25 – 402, 403, MIL |
| | <u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| | <u>Plaintiffs' Objections:</u><br>442:1-4 – 402, 403, MIL |
| | <u>Defendant's Response:</u><br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such |

| Deposition Designation | Objection & Response |
|---|---|
| | alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| | Plaintiffs' Objections: 442:7-14 – 402, 403, MIL |
| | Defendant's Response: The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 444<br>1 BY MS. REED:<br>2 Q Was it your understanding that that was an<br>3 ongoing part of your job responsibilities as of<br>4 August the 8th, 2014? | Plaintiffs' Objections: 444:18-23 – 402, 403, MIL |
| | Defendant's Response: The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed |

| Deposition Designation | Objection & Response |
|---|---|
| Page 444<br>7 THE WITNESS: My job responsibilities<br>8 include assessing the security situation anywhere<br>9 we had interest or people wanted to know my advice<br>10 and opinion.<br>11 BY MS. REED:<br>12 Q All right. Sir, was Mr. Binke continuing<br>13 to seek your advice and opinion as of August 8th,<br>14 2014?<br><br>Page 444<br>18 THE WITNESS: On August the 8th, 2014,<br>19 yes.<br>20 BY MS. REED:<br>21 Q Was there any change in your assessment of<br>22 the safety and security situation between July 10th<br>23 and August 8th, 2014? | by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 445<br>2 THE WITNESS: No.<br>3 (Defendant's Exhibit 231 was marked for<br>4 identification by the Certified Shorthand Reporter;<br>5 a copy of which is attached hereto.)<br>6 BY MS. REED:<br>7 Q Can you identify Exhibit 231 as an<br>8 August 19, 2014, e-mail from you to Mr. Binke<br>9 entitled Israel Update?<br>10 A Yes.<br>11 Q Your cover e-mail says, "Mark, FYI, no<br>12 change to NBCU security advice"; do you see that?<br>13 A Yes.<br>14 Q What was the purpose for you communicating<br>15 that to Mr. Binke on August 19, 2014?<br><br>Page 445<br>18 THE WITNESS: To make him aware of the<br>19 advice of NBC security.<br>20 BY MS. REED:<br>21 Q Were you continuing to gather information<br>22 and assess the safety and security situation as of<br>23 August 19th, 2014? | Plaintiffs' Objections:<br>445:2–15 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial.<br><br>Plaintiffs' Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| | 445:18-23 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| Page 446<br>1 THE WITNESS: Yes.<br>2 BY MS. REED:<br>3 Q Was there any change to your advice to NBC<br>4 Universal as of August 19, 2014.<br><br>Page 446<br>7 THE WITNESS: No. | Plaintiffs' Objections:<br>446:1-4 – 402, 403, MIL<br><br>Defendant's Response:<br>The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise |

| Deposition Designation | Objection & Response |
|---|---|
| | to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |
| | Plaintiffs' Objections: 446:7 – 402, 403, MIL |
| | Defendant's Response: The witness' understanding of the facts are relevant to the underlying facts of loss. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. Further, F.R.E. 403 is conditional, and therefore not binding as to general admissibility. Objection also fails to state why exhibit is unfairly prejudicial; or why such alleged unfair prejudice outweighs its probative value; or why exhibit confuses the issue, misleads the jury, wastes time, or is cumulative. Furthermore, high probative value re: state of mind of all parties involved at the time of the claim. The jury is entitled to know what information NBC, ASIC, and other parties had at time of the facts giving rise to Plaintiffs' claims. "MIL" not clear what objection intended; description of the facts and process surrounding the claim is relevant and not prejudicial. |

19.   **SUSAN WEISS**

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| p. 15, l. 2 - p. 15, l. 4; p. 24, l. 17 -p. 24, l. 25; p. 27, 1. 15 - p. 27, 1. 21; p. 28, 1. 11 - p. 28, 1. 20; p. 29, 1. 1 - p. 29, 1. 9; p. 29, 1. 16 - p. 30, 1. 3; p. 30, 1. 10 - p. 30, 1. 15; p. 31, 1. 10 - p. 32, 1. 8; p. 32, 1. 12 - p. 32, 1. 12; p. 32, 1. 17 -p. 33, 1. 2; p. 33, 1. 15 - p. 33, 1. 15; p. 34, 1. 2 - p. 34, 1. 24; p. 35, 1. 1 - p. 35, 1. 4; p. 50, 1. 3 - p. 50, 1. 18; p. 50, 1. 22 - p. 51, 1. 2; p. 56, 1. 9 - p. 56, 1. 24; p. 57, 1. 3 - p. 57, 1. 4; p. 57, 1. 23 - p. 57, 1. 24; p. 58, 1. 2 - p. 58, 1. 2; p. 62, 1. 22 - p. 62, 1. 25; p. 63, 1. 16 - p. 63, 1. 24; p. 64, 1. 3 - p. 64, 1, 23; p. 68, 1. 20 - p. 68, 1. 25; p. 71, 1 6 - p. 71, 1. 10; p. 74, 1. 18 - p. 74, 1. 21; p. 74, 1. 25 - p. 74, 1. 25; p. 85, 1. 12 - p. 85, 1. 17; p. 89, 1. 19 - p. 90, 1. 2; p. 90, 1. 5 - p. 90, 1. 11; p. 91, 1. 19 - p. 92, 1. 14; p. 91, 1. 20 - p. 93, 1. 15; p. 102, 1. 10 - p. 102, 1. 12; p. 102, 1. 15 - p. 103, 1. 13; p. 103, 1. 20 - p. 104, 1. 1; p. 104, 1. 12 - p. 104, 1. 15; p. 105, 1. 10 - p. 105, 1. 13; p. 107, 1. 7 - p. 107, 1. 23; p. 108, 1. 13 - p. 109, 1. 4; p. 110, 1. 6 - p. 110, 1. 10; p. 112, 1. 14 - p. 112, 1. 17; p. 115, 1. 2 - p. 115, 1. 5; p. 115, 1. 8 - p. 115, 1. 9; p. 115, 1. 11 - p. 115, 1. 17; p. 115, 1. 20 -p. 115, 1. 23; p. 116, 1. 1 - p. 116, 1. 5; p. 116, 1. 8 - p. 116, 1. 17; p. 117, 1. 5 - p. 117, 1. 20; p. 118, 1. 1 - p. 118, 1. 2; p. 119, 1. 2 - p. 119, 1. 6; p. 119, 1. 15 -p. 120, 1. 1; p. 120, 1. 13 - p. 120, 1. 18; p. 120, 1. 23 - p. 121, 1. 2; p. 121, 1. 8 - p. 121, 1. 8; p. 121, 1. 16 - p. 121, 1. 18; p. 121, 1. 23 - p. 122, 1. 2; p. 122, 1. 5 - p. 122, 1. 11; p. 122, 1. 17 - p. 122, 1. 22; p. 123, 1. 8 -p. 124, 1. 5; p. 124, 1. 11 - p. 125, 1. 3; p. 126, 1. 3 - p. 126, 1. 19; p. 127, 1. 5 - p. 127, 1. 18; p. 127, 1.21 -p. 128, 1. 1; p. 128, 1. 5 - p. 128, 1. 13; p. 128, 1. 21 -p. 128, 1. 22; p. 128, 1. 25 - p. 129, 1. 6; p. 129, 1. 11 -p. 129, 1. 12; p. 132, 1. 10 - p. 133, 1. 3; p. 133, 1. 6 -p. 133, 1. 16; p. 133, 1. 19 - p. 134, 1. 2; p. 134, 1. 8 -p. 134, 1. 14; p. 134, 1. 19 - p. 134, 1. 19; p. 135, 1. 23 - p. | Plaintiffs object to Defendant's designations as follows: |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 136, 1. 2; p. 136, 1. 5 - p. 136, 1. 5; p. 139, 1. 11 - p. 139, 1. 13; p. 139, 1. 19 - p. 139, 1. 23; p. 140, 1. 3 - p. 140, 1. 3; p. 140, 1. 10 - p. 140, 1. 13;p. 140, 1. 16 - p. 140, 1. 16; p. 146, 1. 9 - p. 146, 1. 10; p. 146, 1. 15 - p. 146, 1. 15; p. 146, 1. 17 - p. 146, 1. 19; p. 146, 1. 22 - p. 146, 1. 23; p. 146, 1. 25 - p. 147, 1. 4; p. 147, 1. 7 - p. 147, 1. 11; p. 147, 1. 14 - p. 147, 1. 14; p. 147, 1. 23 - p. 148, 1. 3; p. 148, 1. 9 - p. 148, 1. 9; p. 148, 1. 25 - p. 149, 1. 1; p. 149, 1. 10 - p. 150, 1. 18; p. 151, 1. 1 - p. 151, 1. 16; p. 152, 1. 15 - p. 153, 1. 13; p. 153, 1. 17 - p. 154, 1. 18; p. 156, 1. 1 - p. 156, 1. 10; p. 156, 1. 15 - p. 156, 1, 22; p. 157, 1. 10 - p. 157, 1. 16; p. 157, 1. 20 - p. 158, 1. 13; p. 159, 1. 2 - p. 159, 1. 14; p. 159, 1. 25 - p. 160, 1. 1; p. 160, 1. 8 - p. 161, 1. 4; p. 161, 1. 24 - p. 162, 1. 9; p. 162, 1. 14 - p. 163, 1. 6; p. 163, 1. 20 - p. 163, 1. 23; p. 165, 1. 13 - p. 165, 1. 25; p. 166, 1. 3 - p. 166, 1. 3; p. 166, 1. 5 - p. 166, 1. 8; p. 168, 1, 1 - p. 168, 1. 4; p. 169, 1. 13 - p. 169, 1. 21; p. 169, 1. 24 - p. 170, 1. 6; p. 170, 1. 11 - p. 171, 1. 20; p. 173, 1. 1 - p. 173, 1. 4; p. 173, 1. 7 - p. 173, 1. 9; p. 174, 1. 7 - p. 174, 1. 20; p. 175, 1. 2 - p. 175, 1. 19; p. 176, 1. 1 - p. 176, 1. 17; p. 177, 1. 3 - p. 177, 1. 15; p. 177, 1. 19 - p. 178, 1. 4; p. 184, 1. 3 - p. 185, 1. 7; p. 185, 1. 24 - p. 186, 1. 1; p. 186, 1. 5 - p. 186, 1. 5; p. 191, 1. 11 - p. 192, 1. 6;p. 197, 1. 9 - p. 197, 1. 15; p. 197, 1. 25 - p. 198, 1. 11; p. 198, 1. 25 - p. 199, 1. 12; p. 199, 1. 25 - p. 200, 1. 2; p. 200, 1. 5 - p. 200, 1. 8; p. 200, 1. 14 - p. 201, 1. 5; p. 201, 1. 14 - p. 201, 1. 19; p. 201, 1. 24 - p. 202, 1. 3; p. 202, 1. 8 - p. 202, 1. 21; p. 203, 1. 10 - p. 203, 1. 19; p. 206, 1. 3 - p. 207, 1. 12; p. 207, 1. 16 - p. 207, 1. 21; p. 207, 1. 25 - p. 208, 1. 3; p. 208, 1. 6 - p. 208, 1. 15; p. 208, 1. 25 - p. 209, 1. 4; p. 209, 1. 9 -p. 209, 1. 14; p. 210, 1. 4 - p. 210, 1. 20; p. 210, 1. 24 - p. 210, 1. 24; p. 213, 1. 3 - p. 213, 1. 14; p. 219, 1. 16 - p. 220, 1. 1; p. 220, 1. 16 - p. 220, 1. 21; p. 221, 1. 1 -p. 221, 1. 5; p. 221. 1. 10 - p. 221. 1. 10; p. 221, 1. 18 -p. 221, | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 1. 19; p. 221, 1. 25 - p. 221, 1. 25; p. 223, 1. 3 -p. 223, 1.4; p. 223, 1. 9 - p. 223, 1. 9; p. 226, 1. 12 - p. 226, 1. 17; p. 232, 1. 18 - p. 232, 1. 25; p. 233, 1. 2 p. 233, 1. 2 <br><br>Page 15 <br>2 BY MR. KEELEY: <br>3 Q State your name for the record, please. <br>4 A Susan Mindy Weiss. <br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION: <br><br>Page 24 <br><br>16 Q Have you remained employed with Aon since <br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION <br><br><br>Page 24 <br>16 Q Have you remained employed with Aon since <br>17 1997? <br>18 A Yes. <br>19 Q All right. What positions have you held <br>20 with Aon during that time? <br>21 A I was an account executive. I was an <br>22 assistant vice president. I was a senior vice <br>23 president. <br>24 And now I'm still an officer of the <br>25 company, but I am the national contingency <br>     director. <br><br>Page 27 <br><br>15 So you're aware that Aon was involved in <br>16 negotiating a motion picture TV policy between <br>17 Atlantic Insurance Company and NBCUniversal? <br>18 A Yes. <br>19 Q Did you have any involvement in the |  |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 20 discussions about that policy?<br>21 A Yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 27<br><br>22 Q What was your involvement, generally?<br>23 A I worked with individuals within the<br>24 company and with the carrier to negotiate terms and<br>25 conditions for a policy with Atlantic Mutual.<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br><br>Page 28<br>11 Q Who at GE contacted someone else at Aon?<br>12 A Rafael Rivera at GE.<br>13 Q And who did he contact at Aon?<br>14 A George Walden.<br>15 Q Who is Rafael Rivera?<br>16 A He was or might still be a risk manager at<br>17 GE.<br>18 Q And who is George Walden?<br>19 A He is a managing director of the Albert G.<br>20 Ruben office in New York.<br><br>Page 29<br>1 MR. KEELEY: Let me show you what has<br>2 previously been marked as Exhibit 39.<br>3 Ask you to take a look at that and tell me<br>4 if you've ever seen it before.<br>5 Do you recognize that as a series of emails<br>6 that you wrote, first to Kurt Ford at NBCUniversal,<br>7 and then the second one also to Kurt Ford at<br>8 NBCUniversal. | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 9 A Yes.<br><br>16 Q All right. Take a look at the first page<br>17 of Exhibit 39 for me under the paragraph that has<br>18 the heading, "Policy Form."<br>19 Do you see that?<br>20 A Yes.<br>21 Q You say, "I reviewed the Elm form<br>22 and compared it to two of the broadest<br>23 studio policy forms (one of which was<br>24 NBCU) as well as with a new<br>25 manuscripted studio form created by<br><br>Page 30<br>1 Aon/Ruben."<br>2 Do you see that?<br>3 A Yes.<br><br>Page 30<br>10 Q Do you recall that in connection with the<br>11 discussions with Atlantic over obtaining a policy<br>12 form for NBC, that Aon provided Atlantic with a form<br>13 to be used as a starting place for the policy?<br>14 A I actually don't recall, but it -- it<br>15 appears to be so.<br><br>Page 31<br>10 Q Do you recall any discussions with anyone<br>11 at Atlantic about the imminent peril provision of<br>12 the policy?<br>13 And time period-wise, this would be before<br>14 the DIG claim was submitted by NBCUniversal.<br>15 A No.<br>16 Q Before the DIG claim arose, do you recall<br>17 any discussions with Atlantic about the war<br>18 exclusions of the policy?<br>19 A No. | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 20 Q Do you know whether there -- anyone on<br>21 behalf of Aon had discussions with Atlantic about<br>22 the war exclusions of the policy before the DIG<br>23 claim arose?<br>24 A No.<br>25 Q Before the DIG claim arose, do you know<br><br>Page 32<br>1 whether anyone, on behalf of Aon, had discussions<br>2 with anyone at Atlantic about whether loss caused by<br>3 terrorism would be covered by the Atlantic policy?<br>4 A No.<br>5 Q Do you know whether the war exclusions for<br>6 the policy that Atlantic issued to NBC originated<br>7 with the language that Aon submitted to Atlantic for<br>8 consideration?<br><br>Page 32<br>12 THE WITNESS: I'm not sure.<br><br>Page 32<br>17 Q Before the DIG claim arose, had you ever<br>18 had any involvement in discussions over the war<br>19 exclusion or war-related exclusions of an insurance<br>20 policy?<br>21 A No.<br>22 Q Had you ever been involved in a claim in<br>23 which the war exclusion arose?<br>24 A No.<br>25 Q Based upon your experience, is it rare for | Plaintiff's Objections:<br>Page 32:17-25<br>402,403,V<br><br>Defendant's Response:<br>The witness's knowledge and experience prior to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Question is clear. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| <u>Page 33</u><br>1 the war or war-related exclusions to arise in the<br>2 context of a claim?<br><u>Page 33</u><br>15 THE WITNESS: I think it's very rare.<br><br><u>Page 34</u><br>2 Q Eventually, Atlantic issued a policy to<br>3 NBCUniversal, correct?<br>4 A Yes.<br>5 Q And that was for the 2010-2011 policy year?<br>6 A Yes.<br>7 Q And it was renewed from 2011 to 2012,<br>8 correct?<br>9 A Yes.<br>10 Q And then from 2012 to 2013, correct?<br>11 A Yes.<br>12 Q And then from 2013 to 2014?<br>13 A Yes.<br>14 Q And then for the 2014 policy year, it was<br>15 actually renewed for an 18-month period; is that<br>16 correct?<br>17 A Yes.<br>18 Q And then after that policy expired,<br>19 2014-2015, Aon assisted NBC in taking the policy to<br>20 the market; is that right?<br>21 A We marketed the program.<br>22 Q All right. And do you recall what<br>23 insurance companies you marketed it to?<br>24 A Yes.<br><br><u>Page 35</u><br>1 BY MR. KEELEY:<br>2 Q Which companies?<br>3 A Fireman's Fund, which is now Allianz, and<br>4 Reel Media. | <u>Plaintiff's Objections</u>:<br>Page 33:1-2<br>402,403,V<br><br><u>Defendant's Response</u>:<br>The witness's knowledge and experience prior to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Question is clear. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| Page 50<br>3 BY MR. KEELEY:<br>4 Q Ms. Weiss, have you had a chance to review<br>5 Exhibit 42?<br>6 A Yes.<br>7 Q Do you recognize this as a true and<br>8 accurate copy of an email from Martin Ridgers to<br>9 yourself and George Walden dated September 16th,<br>10 2009?<br>11 A Yes.<br>12 Q In the next-to-last paragraph of the<br>13 letter, Mr. Ridgers says, "I believe all of our hard<br>14 work will provide NBC with a unique policy."<br>15 Do you see that?<br>16 A Yes.<br>17 Q Do you agree that the policy that was<br>18 eventually issued to NBC was unique?<br><br>Page 50<br>22 THE WITNESS: Yes.<br>23 BY MR. KEELEY:<br>24 Q Why do you think the policy was unique?<br>25 A Aon worked very long and hard with<br><br>Page 51<br>1 OneBeacon to create a form that met with the<br>2 client's needs and was broader than most.<br><br>Page 56<br>9 Q All right. Ms. Weiss, do you recognize<br>10 Exhibit 44 as a true and accurate copy of an email<br>11 from yourself to Wanda Phillips dated January 17,<br>12 2010?<br>13 A Yes.<br>14 Q In that email you say, "George and I have a<br>15 big meeting this Tuesday with the NBCU TV execs to | Plaintiff's Objections: |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 16 discuss the program."<br>17 My question for you isn't so much about<br>18 whether you recall what was discussed at that big<br>19 meeting, but does this exemplify the types of<br>20 meetings and discussions that were held during the<br>21 course of negotiations for the Atlantic policy?<br>22 That is, they were meeting -- there were<br>23 numerous meetings along the way between people to<br>24 discuss wording of the policy?<br><br>Page 57<br>3 THE WITNESS: It was one type of<br>4 discussion.<br><br>Page 57<br>23 Q And you discussed negotiations concerning<br>24 wording of the policy, I assume.<br><br>Page 58<br>2 THE WITNESS: Yes.<br><br>Page 62<br>22 Q Have you had a chance to review 47?<br>23 A Briefly.<br>24 Q Do you recognize Exhibit 47?<br>25 A Yes.<br><br>Page 63<br>16 BY MR. KEELEY:<br>17 Q So do I understand correctly that different<br>18 drafts of the policy would go back and forth between<br>19 Aon and Atlantic with one or the other making<br>20 redline changes to the policy?<br>21 A Yes.<br>22 Q Okay. And this is simply an example of one<br>23 of those drafts? | Page 56:17-24<br>CD,V<br><br><u>Defendant's Response</u>:<br>Question is clear and unambiguous; not compound, and answer is definitive. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 24 A Yes.<br><br>Page 64<br>3 Q Do you recognize -- well, first of all,<br>4 Exhibit 47 is a part of the policy or a part of the<br>5 draft policy that was being discussed between Aon<br>6 and Atlantic, correct? It's not the entirety of the<br>7 policy.<br>8 A Correct.<br>9 Q It's the "General Conditions" section,<br>10 correct?<br>11 A Yes.<br>12 Q And do you recognize these General<br>13 Conditions as those that were on the manuscripted<br>14 form that Aon first provided to Atlantic as a form<br>15 for the policy that would be discussed?<br>16 A No.<br>17 Q Do you have any idea where these General<br>18 Conditions came from?<br>19 A No.<br>20 Q They could have come from that manuscripted<br>21 policy, but you just don't know one way or the<br>22 other; is that accurate?<br>23 A Yes.<br><br>Page 68<br>20 Q Let me show you what's previously been<br>21 marked Exhibit 2.<br>22 Oh, I'm sorry. Exhibit 2 is a true and<br>23 accurate copy of two emails from yourself to others<br>24 concerning the renewal of the 2013 policy?<br>25 A Yes.<br><br>Page 71<br>6 Q The second bullet point says, "OneBeacon<br>7 has been providing great service and responding in a<br>8 timely manner."<br>9 Is that correct? | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 10 A Yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 71<br><br>11 Q So OneBeacon had been providing great<br>12 service to Aon and to NBC; is that accurate?<br>13 A No.<br>14 Q So you disagree with the statement in<br>15 Exhibit 2 that OneBeacon had been providing great<br>16 service?<br>17 A No.<br>18 Q You don't disagree with that?<br>19 A No.<br>20 Q So you think they were providing great<br>21 service?<br>22 A On some policies, not all.<br>23 Q Okay. Which policies were they not<br>24 providing great service on?<br>25 A The TV program had some problems with<br><br>Page 72<br><br>1 underwriting.<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 74<br>18 Q At that point in time, how would you<br>19 characterize the job that OneBeacon had been doing<br>20 for Aon and NBC? Was it a good job? A poor job? A<br>21 really good job?<br><br>Page 74 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 74:18-21<br>402,403,V<br><br>Defendant's Response:<br>The witness's knowledge and experience are relevant; the testimony is not unfairly prejudicial to Plaintiffs, not confusing, |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 25 THE WITNESS: It was an okay job.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br><u>Page 75</u><br><br>2 Q You don't think they were doing a good job?<br><br>4 THE WITNESS: No.<br><br><u>END PLAINTIFFS' 106 COUNTER-DESIGNATION</u><br><br><u>Page 85</u><br>12 Q Okay. Generally, what was your involvement<br>13 in the claims process when NBC would submit a claim<br>14 to Atlantic for coverage under the TV policy?<br>15 A Not much.<br>16 Q Did you have oversight over the process?<br>17 A No.<br><br><u>Page 89</u><br>19 Q Do you recognize Exhibit 53 as a true and<br>20 accurate copy of a series of emails from you to<br>21 Wanda Phillips, Peter Williams, Andrea Garber and<br>22 Deborah Kizner on June 7, 2014?<br>23 A Yes.<br>24 Q And you were notifying them that a<br>25 production designer on the show DIG had suffered a<br><br><u>Page 90</u><br>1 heart attack; is that right?<br>2 A Yes.<br><br><u>Page 90</u> | misleading or cumulative evidence.  Question is clear.<br><br>.<br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 89:19-25<br>402,403<br><br><u>Defendant's Response</u>:<br>The testimony is not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence and demonstrates the witness's involvement in the claim process under the policy.<br><br><br>Plaintiff's Objections:<br>Page 90:1-2; 90:5-11 |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 5 BY MR. KEELEY:<br>6 Q Do you remember that claim?<br>7 A Yes.<br>8 Q Do you remember there was some question as<br>9 to whether it was or was not covered under the<br>10 policy?<br>11 A Somewhat.<br><br>Page 91<br>19 Q Do you recognize Exhibit 54 as a true and<br>20 accurate copy of a series of emails involving<br>21 yourself and others pertaining to the heart attack<br>22 by the production designer on the show DIG?<br>23 A Yes.<br>24 Q I direct your attention to the email at<br>25 Page 184 from Kurt Ford to Mark Binke dated June 7, | 402,403,<br><br>Defendant's Response:<br>The testimony is not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence and demonstrates the witness's involvement in the claim process under the policy. |
| Page 92<br>1 2014.<br>2 Do you see that?<br>3 A Yes.<br>4 Q He says, "Susan has reviewed our policy and<br>5 has spoken directly to the underwriter."<br>6 Do you see that?<br>7 A Yes.<br>8 Q And is that accurate? Did you speak<br>9 directly to the underwriter about the claim?<br>10 A I don't recall.<br>11 Q He says, "Bottom line is it's a gray area<br>12 on whether or not this is covered."<br>13 Do you see that?<br>14 A Yes.<br>15 Q Do you agree with that statement?<br>16 MS. COYOCA: Objection. Vague and<br>17 ambiguous.<br>18 THE WITNESS: I don't recall.<br>19 BY MR. KEELEY: | Plaintiff's Objections:<br>Page 92:16-17<br>IO<br><br>Defendant's Response:<br>Objection deleted.<br><br>Plaintiff's Objections:<br>Page 92:20-24<br>802<br><br>Defendant's Response:<br>Not offered for the truth of the matter asserted. 801. 807.<br><br>Plaintiff's Objections:<br>Page 92:25-93:4<br>402,403 |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 20 Q He goes on to say, "Good news is that the 21 underwriter is trying to work with us and find 22 wiggle room in the language for this to be covered." 23 Do you see that? 24 A Yes. 25 Q Did you tell Mr. Binke that the underwriter | Defendant's Response: The testimony is not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence and demonstrates the witness's involvement in the claim process under the policy. |
| Page 93 1 was trying to work with you and trying to find 2 wiggle room in the language in order to cover the 3 policy? 4 A No. 5 Q Do you know where he would have gotten that 6 statement from? 7 A Kurt Ford. 8 Q Okay. 9 A I told Kurt Ford that, not Mr. Binke that. 10 Q I'm sorry. You told Mr. Ford that, 11 correct? 12 A Yes. 13 Q Okay. And you believed that to be true at 14 the time you told him? 15 A Yes. | Plaintiff's Objections: Page 93:5-9 802,602  Defendant's Response: Witness has personal knowledge; not a statement 801; 807.  Plaintiff's Objections: Page 93:10-15 402,403  Defendant's Response: The witness's knowledge, and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 102 10 BY MR. KEELEY: | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 11 Q What is your understanding of NBC's DIG<br>12 claim?<br><br>Page 102<br>15 THE WITNESS: NBC was filming a production<br>16 in Israel. They'd filmed the pilot episode. They<br>17 were on hiatus. They were getting ready to start<br>18 back up and tensions in Israel with Hamas became so<br>19 great that they had to push the production back to<br>20 wait until tensions died down.<br>21 And when they still didn't, they ended up<br>22 having to move and relocate the production<br>23 elsewhere.<br>24 BY MR. KEELEY:<br>25 Q How did you first learn that NBC would have<br><br>Page 103<br>1 to push production by a week because of the tensions<br>2 between Israel and Hamas?<br>3 A With a phone call.<br>4 Q From whom?<br>5 A Andrea Garber.<br>6 Q And what did Ms. Garber tell you?<br>7 A She advised that they were getting ready to<br>8 start back up and tensions were building with Hamas<br>9 and they didn't feel it was safe to continue at that<br>10 point based on advice from their security detail.<br>11 Q Do you know when that telephone call<br>12 occurred?<br>13 A I believe it was around July 11.<br><br>Page 103<br>20 Q Other than Ms. Garber telling you they were<br>21 getting ready to start back up filming and that<br>22 tensions were building up with Hamas, what else do | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 23 you recall her telling you?<br>24 A That they wanted to -- they were -- they<br>25 were considering pushing the production out about a<br><br>Page 104<br>1 week and were hoping that things would die down.<br><br>Page 104<br>12 Q Do you recall what you said to her in<br>13 response?<br>14 A I said, "Let's call Peter Williams and get<br>15 his thoughts on this."<br><br>Page 105<br>10 Q Did you and she, then, call Peter Williams?<br>11 A Yes.<br>12 Q That same day?<br>13 A Yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 105<br><br>19 Q Okay. And so sitting here today, you<br>20 cannot recall any details that Ms. Garber told you<br>21 about the tensions that were building up between<br>22 Hamas and Israel, only that tensions were building<br>23 up?<br>24 A Yes<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 107<br>6 Q Tell me everything you can recall telling<br>7 Mr. Williams during that call.<br>8 A I recall us discussing that production had | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 9 been on hiatus, that they were getting ready to<br>10 start up and that things had heated up with Hamas<br>11 and that production did not feel it was safe, at<br>12 that point in time, to start shooting again.<br>13 That the security detail had advised things<br>14 may ease up in about a week and that was what<br>15 production was thinking of doing.<br>16 Q They were thinking of doing what?<br>17 A Pushing for a week.<br>18 Q Okay. When you say "pushing for a week,"<br>19 that means delaying the shooting?<br>20 A Correct.<br>21 Q Delaying the startup of the shooting for a<br>22 week?<br>23 A Yes.<br><br>Page 108<br>13 Sitting here today, do you recall providing<br>14 Mr. Williams any details of the buildup of tensions<br>15 between Hamas and Israel?<br>16 A I don't recall if I did or if Andrea did,<br>17 but a certain amount of details would have been<br>18 provided.<br>19 Q When you say, "would have been provided,"<br>20 are you meaning to say you think that they would<br>21 have but you're not sure or you have a recollection<br>22 sitting here today that details were provided?<br>23 A Details were provided, some details. I<br>24 just don't recall exactly what they were.<br>25 Q Okay. So you -- you can recall during the<br><br>Page 109<br>1 call either you or Ms. Garber provided Mr. Williams<br>2 some detail about the buildup of tensions; you just<br>3 don't recall what those details were?<br>4 A Yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION: | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| Page 109<br><br>5 Q Do you recall any of the details that were<br>6 provided to Mr. Williams?<br>7 A No.<br><br>23 A I remember us discussing what had<br>24 transpired; and, at that point, discussing the<br>25 imminent peril section of the policy; and that it<br><br>Page 110<br><br>1 appeared that was where the coverage would lie.<br>2 And by the end of the conversation, no<br>3 concerns had been raised, and we all walked away<br>4 believing that would be where the coverage would<br>5 lie.<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION<br><br>Page 110<br>6 Q Now, was it your understanding that by<br>7 making that call to Mr. Williams, you were<br>8 satisfying NBC's obligation to submit a formal claim<br>9 to Atlantic in connection with DIG?<br>10 A No.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 110<br><br>11 Q It was basically a heads-up and an<br>12 opportunity for you to sort of pick Peter's brain<br>13 and determine whether his sense, at that preliminary<br>14 stage, was that there might or might not be | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 15 coverage; is that correct?<br><br>18 THE WITNESS: The call was for the purpose<br>19 of finding out where OneBeacon's position would be<br>20 based on the scenarios that had occurred up to date.<br><br>22 Q But were you expecting Mr. Williams to<br>23 provide you a definitive claims decision in that<br>24 telephone call or simply provide you his preliminary<br>25 observations?<br><br>Page 111<br><br>1 A I was looking for his opinion on coverage<br>2 based on his role in the company and his past claims<br>3 experience.<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br><br>Page 112<br>14 Q All right. And, in fact, you did -- you<br>15 being Aon and NBC -- submit a formal claim the<br>16 following Tuesday, correct?<br>17 A Yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 112<br><br>18 Q And from that point on, you began dealing<br>19 with people in the claims department as opposed to<br>20 Mr. Williams, correct?<br>21 A No.<br>22 Q You primarily dealt with Pamela Johnson and | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 23 Danny Gutterman as opposed to Mr. Williams; isn't<br>24 that correct?<br>25 A Yes.<br><br>Page 113<br><br>1 Q And that's because Atlantic had not made a<br>2 formal claims decision yet; isn't that accurate?<br><br>12 Q Well, I don't want to put words in your<br>13 mouth, so tell me what you mean by the "no" part of<br>14 that.<br>15 A There is the very formal part of submitting<br>16 a claim which involves submitting things in writing<br>17 and getting written responses back.<br>18 But due to the unusual nature of claims and<br>19 in the entertainment industry, it is very common to<br>20 call a carrier up and speak with an expert that<br>21 knows what they're talking about and understands the<br>22 coverages and ask for their opinion on whether or<br>23 not a certain situation would be covered.<br>24 And it's exactly what we did in this case.<br>25 We had a production that was very concerned about<br><br>Page 114<br><br>1 what to do. They had to push, and they wanted to<br>2 make sure their carrier was behind them while they<br>3 were taking the best precautions necessary to care<br>4 for their person and property on this account -- on<br>5 this risk.<br>6 And we called Peter Williams with the sole<br>7 intent of getting his opinion on whether or not<br>8 there was coverage.<br>9 We hung up the phone knowing that Peter was | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 10 on the same page as we were and that production<br>11 was -- that by pushing the production for a week, we<br>12 would have a covered claim under the imminent peril<br>13 section of the policy<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION | |
| Page 115<br>2 BY MR. KEELEY:<br>3 Q At the time you telephoned Mr. Williams,<br>4 were you aware that there was fighting back and<br>5 forth between Hamas and Israel?<br><br>Page 115<br>8 THE WITNESS: I vaguely remember hearing<br>9 some reports, yes.<br><br>Page 115<br>11 Q Were you aware that Israel was using<br>12 fighter jets to attack property in the Gaza Strip?<br>13 A No.<br>14 Q Were you aware that Israel was firing<br>15 rockets and missiles from gun boats into the<br>16 Gaza Strip?<br>17 A No – | Plaintiff's Objections:<br>Page 115:2-5; 115:8-9;115:11-17<br>MIL,103,602,402,403<br><br>Defendant's Response:<br>"MIL" not proper objection; Facts and circumstances leading to making claim relevant and not prejudicial; establishment of witness's knowledge or lack thereof is proper and the witness's knowledge touching issues surrounding the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 115<br>20 BY MR. KEELEY:<br>21 Q Were you aware that Israel had called up<br>22 thousands of troops for a possible ground invasion<br>23 of the Gaza Strip? | Plaintiff's Objections:<br>Page 115:20-23<br>MIL,103,602,402,403<br><br>Defendant's Response: |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| | "MIL" not proper objection; Facts and circumstances leading to making claim relevant and not prejudicial; establishment of witness's knowledge or lack thereof is proper and the witness's knowledge touching issues surrounding the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 116<br>1 THE WITNESS: No.<br>2 BY MR. KEELEY:<br>3 Q Were you aware that at or about the time of<br>4 your call to Mr. Williams, there had been fighting<br>5 between Israeli soldiers and Hamas militants? | Plaintiff's Objections:<br>Page 116:1-4<br>103,602402,403<br><br>Defendant's Response:<br>"MIL" not proper objection; Facts and circumstances leading to making claim relevant and not prejudicial; establishment of witness's knowledge or lack thereof is proper and the witness's knowledge touching issues surrounding the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 116 | Plaintiff's Objections: |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 8 THE WITNESS: No.<br>9 BY MR. KEELEY:<br>10 Q And because you were not aware of all those<br>11 points, you certainly could not have informed<br>12 Mr. Williams on your telephone call with him about<br>13 those points; is that correct?<br>14 A No.<br>15 Q It is correct, you mean. Yes, it's<br>16 correct?<br>17 A On those points, yes. | Page 116:8-17<br>103,602402,403<br><br>Defendant's Response:<br>"MIL" not proper objection; Facts and circumstances leading to making claim relevant and not prejudicial; establishment of witness's knowledge or lack thereof is proper and the witness's knowledge touching issues surrounding the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 117<br>5 BY MR. KEELEY:<br>6 Q You're aware the policy has a war<br>7 exclusion, right?<br>8 A Yes.<br>9 Q And you're aware that the policy excludes<br>10 coverage for loss relating to war-like action,<br>11 correct?<br>12 A Yes.<br>13 Q And you're aware that the policy has an<br>14 exclusion for weapons of war, correct?<br>15 A Yes.<br>16 Q And if you're going -- if you were going to<br>17 inform Mr. Williams of the facts you thought he<br>18 needed to opine on coverage, would you not also need<br>19 to tell him all facts he would need to know in order<br>20 to determine whether an exclusion applied? | Plaintiff's Objections:<br>Page 117:5-20<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not proper objection; the witness's knowledge, research and response to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| Page 118<br>1 THE WITNESS: I would advise him of the<br>2 facts that I was aware of.<br><br>Page 119<br>2 Q So you would agree with me, would you not,<br>3 that if you -- when you called Mr. Williams asking<br>4 him for his views on coverage, you should have told<br>5 him all the facts he needed to know to determine<br>6 whether any of the exclusions of the policy applied?<br><br>Page 119<br>15 THE WITNESS: I am under obligation to<br>16 advise him of any information I am aware of at the<br>17 time of that call.<br>18 You rattled off a list of things that<br>19 Israel had done. I was not aware of those things.<br>20 The issue at hand was Hamas. Hamas had<br>21 been terrorizing the areas that we were going to be<br>22 moving into, and we did not feel it was safe with<br>23 that sort of activity taking place, and we pushed<br>24 production a week.<br>25 Peter Williams was advised of the facts<br><br>Page 120<br>1 that we were aware of.<br><br>Page 120<br>13 Q Were you aware that Hamas and Fatah had<br>14 formed a unity government a couple of months<br>15 earlier?<br>16 A I don't recall.<br>17 Q Are you aware that Israel was very upset<br>18 that Hamas and Fatah had formed a unity government? | Plaintiff's Objections:<br>Page 120:13-18<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not proper objection; the witness's knowledge and experience prior to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| Page 120<br>23 THE WITNESS: I don't recall.<br>24 BY MR. KEELEY:<br>25 Q Did you inform Mr. Williams during that<br>Page 121<br>1 call that Israel was upset that Fatah and Hamas had<br>2 formed a unity government? | Plaintiff's Objections:<br>Page 120:23-121:2<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not proper objection; the witness's knowledge and experience prior to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 121<br>8 THE WITNESS: I don't recall. | Plaintiff's Objections:<br>Page 121:8<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not proper objection; the witness's knowledge and experience prior to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 121<br>16 Q Are you aware that by the time of your<br>17 call, Israel had declared Operation Protective Edge<br>18 to be in effect? | Plaintiff's Objections:<br>Page 121:16-18; 121:23-122:2<br>MIL,402,403 |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| Page 121<br>23 THE WITNESS: I don't recall.<br>24 BY MR. KEELEY:<br>25 Q Did you inform Mr. Williams on that call<br><br>Page 122<br>1 that Israel had declared the start of Operation<br>2 Protective Edge?<br><br>Page 122<br>5 THE WITNESS: I don't recall.<br>6 MR. KEELEY: Let me show you what has been<br>7 marked Exhibit 38, and it's previously been<br>8 identified as the 2014-2015 policy issued by<br>9 Atlantic to NBCUniversal.<br>10 Do you recognize it as such?<br>11 THE WITNESS: Yes –<br><br>Page 122<br>17 I think you said "Yes," but now that you've<br>18 had an opportunity to review the document, do you<br>19 recognize Exhibit 38 as the 2014-2015 Motion Picture<br>20 Television Producers Portfolio policy issued by<br>21 Atlantic to NBCUniversal?<br>22 A Yes.<br><br>Page 123<br>8 Q So, to the best of your recollection, prior<br>9 to July 11, you did not know that NBC was concerned<br>10 about the buildup of tensions between Hamas and<br>11 Israel and how they might potentially affect the<br>12 production of DIG?<br>13 A I actually do remember a short while before<br>14 that having some discussions on things might be<br>15 getting a little heated --<br>16 Q Who did you -- | Defendant's Response:<br>"MIL" not proper objection; the witness's knowledge and experience prior to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 17 A -- with the -- it was with the client, I<br>18 believe.<br>19 Q Kurt Ford?<br>20 A Perhaps.<br>21 Q Tell me what you can recall about those<br>22 discussions.<br>23 A They had reached out and asked if -- they<br>24 said production was getting a little concerned with<br>25 some of the mounting tension and -- God, I'm trying<br><br>Page 124<br>1 to remember exactly what it was.<br>2 They -- they thought that they might want<br>3 to rearrange the schedule, I think. I can't be<br>4 100 percent certain, but they had asked if we<br>5 thought this might be a covered type of claim.<br><br>Page 124<br>11 Q All right. And what did you say when you<br>12 asked -- were asked whether you thought it might be<br>13 a claim that would be covered under the policy?<br>14 A Well, we discussed imminent peril. We<br>15 discussed civil authority. And at that point in<br>16 time, I didn't believe there was a trigger under<br>17 this policy for coverage.<br>18 Q Why did you not think there was a trigger<br>19 for coverage for civil authority?<br>20 A Because there wasn't anyone that I would<br>21 deem a civil authority saying, "This is way too<br>22 dangerous. We're going to pull your permits, and<br>23 you can't go there."<br>24 Q Why did you think that it was doubtful<br>25 there would be coverage for imminent peril?<br><br>Page 125<br>1 A Because at that point, they couldn't | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 124:11-125:3<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not proper objection; the witness's knowledge and experience regarding the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 2 definitively say it was so dangerous that it would<br>3 be unconscionable to continue.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br><u>Page 125</u><br><br>4 Q Does it have to be unconscionable to<br>5 continue for there to be coverage for imminent<br>6 peril?<br><br>12 THE WITNESS: I believe there is some<br>13 language in the policy that stated the damage to<br>14 person or property needs to be so great that it<br>15 would be unconscionable to continue, but I would<br>16 have to check the policy language.<br>17 BY MR. KEELEY:<br>18 Q When's the last time you reviewed the<br>19 policy?<br>20 A I don't recall.<br><br><u>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION</u><br><br><br><u>Page 126</u><br>3 Q All right. You've got the policy in front<br>4 of you, Exhibit 38. The extra expense, imminent<br>5 peril provision is at page ATL 001605.<br>6 A "...unreasonable or unconscionable to<br>7 ignore."<br>8 Q Where are you reading from?<br>9 A I am reading from Section 1(g).<br>10 Q So Insuring Agreement, 1, is the general<br>11 extra expense insuring agreement.<br>12 And then it has multiple subinsurance<br>13 agreements under A through H; is that correct?<br>14 A Yes. | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 15 Q And F is the insuring provision for civil<br>16 authority that you've testified to previously?<br>17 A Yes.<br>18 Q And G is for imminent peril, correct?<br>19 A Yes.<br><br>Page 127<br>5 Q All right. So G is for imminent peril.<br>6 And it says, "Imminent peril, defined as<br>7 uncertain, immediate and impending<br>8 danger of such probability and<br>9 severity to persons or property that<br>10 it would be unreasonable or<br>11 unconscionable to ignore," correct?<br>12 A Yes.<br>13 Q Consistent with what you were saying?<br>14 A Yes.<br>15 Q And so early on, you didn't have the view<br>16 that the tensions had grown so great that it would<br>17 be unreasonable or unconscionable to ignore them,<br>18 correct?<br><br>Page 127<br>21 THE WITNESS: Yes.<br>22 BY MR. KEELEY:<br>23 Q Okay. But by the time of the July 11th<br>24 phone call, your view had changed and you felt as<br>25 though it would be unreasonable or unconscionable to<br><br>Page 128<br>1 ignore the threat?<br><br>Page 128<br>5 THE WITNESS: Yes.<br>6 BY MR. KEELEY:<br>7 Q Okay. And tell me what it is about the<br>8 tensions that had changed that led you to form a | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 9 different view about them.<br>10 A If I remember correctly, I believe<br>11 Israel -- Hamas had started lobbing mortars at<br>12 innocent civilians in areas that they were going to<br>13 be filming near.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 128<br><br>14 Q When you formed your view, did you give any<br>15 consideration to the war exclusions of the policy?<br>16 A No.<br>17 Q Why not?<br>18 A Because I didn't see it as being war.<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION<br><br><br>Page 128<br>21 Did you even consider the exclusions, the<br>22 war exclusions?<br><br>Page 128<br>25 THE WITNESS: No.<br><br>Page 129<br>1 BY MR. KEELEY:<br>2 Q Why not?<br>3 A Because it wasn't war.<br>4 Q What does it take to have a war that would<br>5 be excluded from coverage under the policy, in your<br>6 view?<br><br>Page 129<br>11 THE WITNESS: In my opinion, a war is<br>12 something that occurs between two countries. | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 129<br><br>14 Q How long have you held that view?<br>15 A As long as I can remember.<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION | |
| Page 132<br>10 Q Would you turn to Page 1585 of the policy,<br>11 Exhibit 38, for me, please.<br>12 We've been talking about Exclusion 1, "War,<br>13 including undeclared or civil war." That's the<br>14 first exclusion under Section III.<br>15 Do you see that?<br>16 A Yes.<br>17 Q The second exclusion is a little bit<br>18 different.<br>19 Will you read that aloud, please.<br>20 A "Warlike action by a military force,<br>21 including action in hindering or<br>22 defending against an actual or<br>23 expected attack, by any government,<br>24 sovereign or other authority using<br>25 military personnel or other agents; | Plaintiff's Objections:<br>Page 132:10-25<br>MIL,402,403,701<br><br>Defendant's Response:<br>"MIL" not proper objection; testimony is not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. No opinion testimony. |
| Page 133<br>1 or...."<br>2 Q Is it your view that that exclusion applies<br>3 to exclude coverage for NBC's claim? | Plaintiff's Objections:<br>Page 133:1-3; 133:6-16; 133:19-25<br>MIL,402,403,701 |
| Page 133<br>6 THE WITNESS: No.<br>7 BY MR. KEELEY:<br>8 Q Why not? | Defendant's Response:<br>"MIL" not proper objection; testimony is not unfairly prejudicial to |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 9 A Because I don't think Hamas qualifies under<br>10 that definition.<br>11 Q So to qualify under the definition, they<br>12 have to be a government, a sovereign, or an other<br>13 authority, correct?<br>14 A Yes.<br>15 Q What is your understanding of the meaning<br>16 of "or other authority"?<br><br>Page 133<br>19 THE WITNESS: I would view "other<br>20 authority" as -- I guess I would tie that to<br>21 something relating to a government or a sovereign<br>22 authority, something that truly was verified and<br>23 vouched for with regards to its status.<br>24 BY MR. KEELEY:<br>25 Q So are you aware that Hamas won a majority | Plaintiffs, not confusing, misleading or cumulative evidence.  Is not opinion testimony other than that rationally based on the witness's perception and is helpful to clearly understanding the witness's testimony or determining a fact in issue. |
| Page 134<br>1 of the parliamentary seats in the Palestinian<br>2 government prior to the DIG claim?<br><br>Page 134<br>8 Q Are you aware of that?<br>9 A Yes.<br>10 Q You are aware of that?<br>11 A Yes.<br>12 Q Okay. And are you aware that Hamas had<br>13 been governing the people in the Gaza Strip for<br>14 years prior to the DIG claim?<br><br>Page 134<br>19 THE WITNESS: No. | Plaintiff's Objections:<br>Page 134:1-2; 134:8-14; 134:19<br>MIL,402,403,701<br><br>Defendant's Response:<br>"MIL" not proper objection; testimony is not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.  Is not opinion testimony other than that rationally based on the witness's perception and is helpful to clearly understanding the witness's testimony or determining a fact in issue |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| Page 135<br>23 Q Even if they were the -- even if they were<br>24 the governing authority over the Palestinians in the<br>25 Gaza Strip, that would not change your view on | Plaintiff's Objections:<br>Page 135:23-25<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not proper<br>objection; the witness's<br>knowledge and experience<br>prior to the claim are<br>relevant; not unfairly<br>prejudicial to Plaintiffs, not<br>confusing, misleading or<br>cumulative evidence. |
| Page 136<br>1 whether or not they were authority for purposes of<br>2 Exclusion 2, war-like action?<br><br>Page 136<br>5 THE WITNESS: No. | Plaintiff's Objections:<br>Page 136:1-2; 136:5<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not proper<br>objection; the witness's<br>knowledge and experience<br>prior to the claim are<br>relevant; not unfairly<br>prejudicial to Plaintiffs, not<br>confusing, misleading or<br>cumulative evidence. |
| PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 136<br><br>7 Q Why not? | Defendant's Objections:<br>Page 136:7; 136: 10-11<br>701 |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 10 THE WITNESS: Because I view Hamas as a<br>11 terrorist organization.<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION<br><br>Page 139<br>11 Q And have you since learned that in addition<br>12 to Hamas firing rockets and missiles at Israel, that<br>13 Israel retaliated against Hamas with their military?<br><br>Page 139<br>19 THE WITNESS: Yes.<br>20 BY MR. KEELEY:<br>21 Q And are you aware that that -- as a result<br>22 of military strikes by Israel, thousands of<br>23 Palestinians in the Gaza Strip were killed?<br><br><br>Page 140<br>3 THE WITNESS: Yes.<br><br>Page 140<br>10 BY MR. KEELEY:<br>11 Q Are you aware that there was a ground<br>12 invasion by Israel's military into Palestinian<br>13 territories, including the Gaza Strip?<br><br>Page 140<br>16 THE WITNESS: Yes.<br><br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 140<br>25 Q In light of your knowledge of Israel's | Plaintiffs' Response:<br><br><br><br><br>Plaintiff's Objections:<br>Page 139:11-13; 139:19-23<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not proper<br>objection; the witness's<br>knowledge and experience<br>prior to the claim are<br>relevant; not unfairly<br>prejudicial to Plaintiffs, not<br>confusing, misleading or<br>cumulative evidence.<br><br>Plaintiff's Objections:<br>Page 140:3; 140:10-13;<br>140:16<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not proper<br>objection; the witness's<br>knowledge and experience<br>prior to the claim are<br>relevant; not unfairly<br>prejudicial to Plaintiffs, not<br>confusing, misleading or<br>cumulative evidence.<br><br>Defendant's Objections:<br>Page 140:25-141:4; 141:7;<br>141:9; 141:12-15; 141:17- |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| <u>Page 141</u> | 22; 142:4; 142:6-12<br>701 |
| 1 military actions against Hamas, would you not agree<br>2 with me that Israel's conduct against Hamas<br>3 constituted military action -- or, excuse me,<br>4 constituted war-like action? | Plaintiffs' Response: |
| 7 THE WITNESS: No. | |
| 9 Q Why not? | |
| 12 THE WITNESS: Because in my mind, a war<br>13 needs to be between two countries. Hamas does not<br>14 fit into that category.<br>15 I view Hamas as a terrorist group. | |
| 17 Q But Exclusion 1 is for war. Exclusion 2 is<br>18 for war-like action by a military force.<br>19 So my question to you is: Would you not<br>20 agree with me that Israel's actions against Hamas<br>21 during that 50-day time period constituted war-like<br>22 action by a military force? | |
| <u>Page 142</u> | |
| 4 THE WITNESS: In this instance, no. | |
| 6 Q What do you mean, "in this instance"?<br>7 A You're relaying this back to the DIG claim.<br>8 And the instance that triggered the coverage under<br>9 this policy with which this war exclusion is in<br>10 discussion has to do with Hamas lobbing explosive<br>11 things into Israel and killing innocent civilians.<br>12 That's what triggered their concern | |
| <u>END PLAINTIFFS' 106 COUNTER-</u><br><u>DESIGNATION</u> | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| Page 146<br>9 Would you not agree with me that Israel was<br>10 using weapons of war?<br><br>Page 146<br>15 THE WITNESS: I don't know.<br><br>Page 146<br>17 Q Would you agree that a fighter jet being<br>18 used to drop bombs on a territory is a weapon of<br>19 war?<br><br>Page 146<br>22 THE WITNESS: I'm not an expert on this. I<br>23 wouldn't know. | Plaintiff's Objections:<br>Page 146:9-10; 146:15;<br>146:17-19; 146:22-23<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not proper<br>objection; the witness's<br>knowledge and experience<br>prior to the claim are<br>relevant; not unfairly<br>prejudicial to Plaintiffs, not<br>confusing, misleading or<br>cumulative evidence. |
| Page 146<br>25 Q And I'm just asking you in your view as<br><br>Page 147<br>1 someone involved in the insurance industry for over<br>2 35 years, would you not agree that a fighter jet<br>3 dropping bombs on a territory, trying to kill people<br>4 and destroy property, is a weapon of war?<br><br>Page 147<br>7 THE WITNESS: I don't know.<br>8 BY MR. KEELEY:<br>9 Q How about a tank firing missiles at other<br>10 persons trying to kill them and destroy property?<br>11 Would you not agree that tank is a weapon of war? | Plaintiff's Objections:<br>Page 146:25-147:4; 147:7-<br>11; 147:14<br>MIL,402,403,103<br><br>Defendant's Response:<br>"MIL" not proper<br>objection; the witness's<br>knowledge and experience<br>prior to the claim are<br>relevant; not unfairly<br>prejudicial to Plaintiffs, not<br>confusing, misleading or<br>cumulative evidence. |
| Page 147<br>14 THE WITNESS: I don't know.<br><br>Page 147<br>23 Q But in my question to you, I'm saying: | Plaintiff's Objections:<br>Page 147:23-148:3; 148:9<br>MIL,402,403,103<br><br>Defendant's Response: |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 24 Assume for me, if you will, that Israel employed 25 fighter jets with the purpose of -- of injuring or<br><br>Page 148<br>1 killing Palestinians and destroying their property.<br>2 Under those circumstances, would you not<br>3 agree that those fighter jets were weapons of war? | "MIL" not proper objection; the witness's knowledge and experience prior to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 148<br>9 THE WITNESS: Maybe. | Plaintiff's Objections: Page 148:25-149:1 402,403 |
| Page 148<br>25 And we will stipulate<br>Page 149<br>1 that Ms. Weiss is a member of the Jewish faith. | Defendant's Response: Testimony is not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 149<br>10 Q Have you had a chance to review Exhibit 13,<br>11 Ms. Weiss?<br>12 A Yes.<br>13 Q Do you recognize that as a true and<br>14 accurate copy of a series of emails between yourself<br>15 and others at NBC and Aon concerning the increase in<br>16 intentions between Israel and Hamas in around<br>17 June 16th, 2014?<br>18 A Yes.<br>19 Q In the email that begins on the bottom of<br>20 the first page of Exhibit 13, it is an email from<br>21 Curt Williams to Debbie Kizner, cc'd to you.<br>22 And among other things, he asked whether or | Plaintiff's Objections: Page 149:10-25 MIL,402,403<br><br>Defendant's Response: "MIL" not proper objection; the witness's knowledge and experience prior to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 23 not we have insurance coverage for the delay or a<br>24 shutdown.<br>25 Do you see that?<br><br>Page 150<br>1 A Yes.<br>2 Q And in response, you emailed Ms. Garber on<br>3 June 16th at 10:00 A.M.<br>4 Do you see that email?<br>5 A Yes.<br>6 Q And at the end of the email you say, "I<br>7 don't see coverage responding, unless permits were<br>8 pulled, etc."<br>9 Do you see that?<br>10 A Yes.<br>11 Q And the pulling of permits, I assume,<br>12 refers to the civil authority cover we reviewed<br>13 previously in the policy.<br>14 Is that correct?<br>15 A Yes.<br>16 Q Now, you don't mention anything about<br>17 imminent peril there, correct?<br>18 A No.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 150<br><br>19 Q Why is that?<br>20 A I don't recall.<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 151<br>1 Q Ms. Weiss, do you recognize Exhibit 55 as<br>2 containing some of the same emails from 13? And<br>3 then there were a couple of more recent ones | Plaintiff's Objections:<br>Page 150:1-18<br>MIL,402,403<br><br>Defendant's Response:<br>"MIL" not proper<br>objection; the witness's<br>knowledge and experience<br>prior to the claim are<br>relevant; not unfairly<br>prejudicial to Plaintiffs, not<br>confusing, misleading or<br>cumulative evidence.<br><br><br><br><br>Plaintiff's Objections:<br>Page 151:1-16<br>MIL,402,403 |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 4 including one from Kurt Ford to you at the top of 55<br>5 dated July 1, 2:27.<br>6 Do you see that?<br>7 A Yes.<br>8 Q And in it he says to you, "So, under the<br>9 current portfolio, you don't think there is<br>10 coverage? If not, should I loop in Malika?"<br>11 Do you see that?<br>12 A Yes.<br>13 Q And Malika is Malika Adams, I take it.<br>14 A Yes.<br>15 Q And was she eventually looped in?<br>16 A Yes.<br><br>Page 152<br>15 Q Let me show you what's previously been<br>16 marked Exhibit 16 and ask if you recognize that as a<br>17 series of emails between you and others at Aon and<br>18 NBC during the period July 1 dating back to the<br>19 earlier emails of June 15th.<br>20 Is that a true and accurate copy of the<br>21 emails?<br>22 A Yes.<br>23 Q Okay. The very -- you'll see the middle<br>24 email on Exhibit 16 is the one we just looked at on<br>25 Exhibit 55. It's the email from Kurt Ford asking | Defendant's Response:<br>"MIL" not proper objection; the witness's knowledge and experience prior to the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 153<br>1 whether you should loop in Malika Adams, correct?<br>2 A Yes.<br>3 Q And then you respond by saying, "If it's<br>4 your security detail that's saying it's not safe and<br>5 you're choosing to shoot in a different location,<br>6 this is looking more like a possible terrorism<br>7 coverage."<br>8 Do you see that?<br>9 A Yes. | Plaintiff's Objections:<br>Page 153:10-13; 153:17-25<br>402,403<br><br>Defendant's Response:<br>The witness's knowledge and experience regarding the claim and policy exclusions are relevant; not unfairly prejudicial to |

**1618**

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 10 Q So in your view, it looked more like<br>11 coverage would be, if at all, under a terrorism<br>12 policy as opposed to the policy issued by Atlantic;<br>13 is that accurate?<br><br>Page 153<br>17 THE WITNESS: Not necessarily.<br>18 BY MR. KEELEY:<br>19 Q Is that not what you're saying there?<br>20 A I'm saying terrorism cover not necessarily<br>21 terrorism policy.<br>22 Q I beg your pardon.<br>23 A Yeah.<br>24 Q Comcast had a property policy that included<br>25 terrorism coverage; is that correct?<br><br>Page 154<br>1 A Yes.<br>2 Q And is that what you were thinking about<br>3 here?<br>4 A I don't recall which -- terrorism under<br>5 which policy I was referring to here.<br>6 I think I might have been making a general<br>7 statement. I'm not sure.<br>8 Q You say, "But I don't know how that policy<br>9 works."<br>10 So you were referring to a policy other<br>11 than the Atlantic policy?<br>12 A Most probably, yes.<br>13 Q Okay. So essentially what you were saying<br>14 is it looked like if there was coverage, it would be<br>15 under the terrorism cover of the Comcast property<br>16 policy; is that correct?<br>17 A I think that was very loose speculation on<br>18 my part.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION: | Plaintiffs, not confusing, misleading or cumulative evidence.<br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 154:1-18<br>402,403<br><br>Defendant's Response:<br>The witness's knowledge and experience regarding the claim and policy exclusions are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| <u>Page 154</u><br><br>19 Q Speculation because you didn't know how the<br>20 other policy operated?<br>21 A Correct<br><br><u>END PLAINTIFFS' 106 COUNTER-DESIGNATION</u><br><br><u>Page 156</u><br>1 Q Okay. I'm going to show you what's<br>2 previously been marked Exhibit 18.<br>3 Okay. I'd like to direct your attention to<br>4 the very first email on Exhibit 18. It's from<br>5 Malika Adams to Kurt Ford.<br>6 Do you see that email?<br>7 A Yes.<br>8 Q And she says, "In order to trigger coverage<br>9 under the production policy" --<br>10 That's the Atlantic policy, correct? | |
| <u>Page 156</u><br>15 THE WITNESS: I believe so.<br>16 BY MR. KEELEY:<br>17 Q -- "We would need a policy trigger as Susan<br>18 has mentioned. And even with that, we'd have to be<br>19 cautious because there is a war exclusion on the<br>20 policy."<br>21 Do you see that?<br>22 A Yes. | Plaintiff's Objections:<br>Page 156:15-22<br>MIL,402,403<br><br><u>Defendant's Response:</u><br>The witness's knowledge and experience regarding the claim and policy exclusions are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| <u>PLAINTIFFS' 106 COUNTER-DESIGNATION:</u> | <u>Defendant's Objection:</u><br>156:23-25; 157:3-5 |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| Page 156 | 602, 701 |
| 23 Q Does that refresh your memory that<br>24 Ms. Adams was concerned that the war exclusion might<br>25 apply to DIG's claim? | Plaintiffs' Response: |
| Page 157 | |
| 3 THE WITNESS: I don't know that she truly<br>4 had a concern. I think she was just pointing out<br>5 all the facts. | |
| END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION | |
| Page 157<br>1 MS. COYOCA: Objection. Vague and<br>2 ambiguous.<br>3 THE WITNESS: I don't know that she truly<br>4 had a concern. I think she was just pointing out<br>5 all the facts.<br>6 (Exhibit 57 was marked for<br>7 identification by the court reporter<br>8 and is attached hereto.)<br>9 THE REPORTER: That is Exhibit 57.<br>10 BY MR. KEELEY:<br>11 Q Do you recognize Exhibit 57 as an email<br>12 from yourself to Andrea Garber -- a couple of emails<br>13 back and forth between yourselves -- and which is<br>14 attached an article on the conflict between Israel<br>15 and the Palestinians?<br>16 A Yes. | |
| Page 157<br>20 Did you periodically do research on the<br>21 conflict that was taking place between Israel and | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 22 Hamas?<br>23 A Yes.<br>24 Q And is this an example of one of the<br>25 articles you would have reviewed?<br><br>Page 158<br>1 A No.<br>2 Q No?<br>3 A I get notices from Variety, and they come<br>4 in regularly.<br>5 Q Okay.<br>6 A So it will just pop into my email. And if<br>7 I see something that involves one of my clients'<br>8 shows, I will forward it on.<br>9 Q Okay. And is that what happened here with<br>10 Exhibit 57, this email --<br>11 A Yes.<br>12 Q -- was sent to you that way?<br>13 A Yes.<br><br>Page 159<br>2 BY MR. KEELEY:<br>3 Q And if you look at the actual news article<br>4 from Variety, the third page, it says,<br>5 "Tensions are running high across<br>6 Israel as the worst fighting in years<br>7 between Israelis and Palestinians<br>8 shows no signs of abating, and<br>9 relentless rocket fire from Gaza has<br>10 sent citizens of every major city,<br>11 including Tel Aviv and Jerusalem,<br>12 routinely running for cover."<br>13 Do you see that?<br>14 A Yes, yes.<br><br>Page 159<br>25 Q What were you doing to try to determine | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| Page 160<br>1 whether there was coverage under the policy for the<br><br>Page 160<br>8 THE WITNESS: I think, as with any claim,<br>9 it would be a matter of reviewing policy language,<br>10 it would be speaking with carriers, it would be<br>11 gathering facts from the insured like we did in this<br>12 scenario.<br>13 BY MR. KEELEY:<br>14 Q And I take it you did review the policy<br>15 language, correct? You've testified to that<br>16 already?<br>17 A Yes.<br>18 Q Okay. And you spoke with Atlantic. You've<br>19 testified to that, in part?<br>20 A Yes.<br>21 Q And you say, "it would be gathering facts."<br>22 Other than speaking with the insured, did<br>23 you do anything else to determine what the facts<br>24 were concerning the increase in tensions between<br>25 Israel and Hamas?<br><br>Page 161<br>1 A I believe I did some individual research<br>2 online to look up information about Hamas.<br>3 Q Do you know what sources you went to?<br>4 A I don't.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 161<br><br>7 Q    So I think it goes without saying<br>18 that based upon your research, you formed an opinion<br>19 that there was no coverage -- that there was<br>20 coverage under the imminent peril provision of the | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Defendant's Objections:<br>161:17-23<br>V<br><br>Plaintiffs' Response: |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 21 policy for the DIG claim.<br>22 Is that accurate?<br>23 A Yes.<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION<br><br>Page 161<br>24 Q Okay. So you say you sought out an opinion<br>25 from others after the claim had been denied.<br><br>Page 162<br>1 Did you seek out an opinion from anybody<br>2 else before the DIG claim was denied?<br>3 A No, not that I recall.<br>4 Q Did you call George Walden to ask him his<br>5 opinion?<br>6 A I don't recall.<br>7 Q Do you think it would have been necessary<br>8 to call him to assist you in forming an opinion?<br>9 A No.<br><br>Page 162<br>14 Q So you didn't feel the need to reach out to<br>15 any colleagues?<br>16 A Not at this point, no.<br>17 Q Did you reach out to Rafael Rivera to get<br>18 his input?<br>19 A Not that I recall.<br>20 Q Did you hire any third-party vendors to<br>21 assist you in analyzing the facts to help you form<br>22 an opinion on whether there was coverage?<br>23 A No.<br>24 Q You didn't feel that was necessary?<br>25 A No. | <br><br><br><br><br><br>Plaintiff's Objections:<br>Page 161:24-162:9<br>402,403<br><br>Defendant's Response:<br>The witness's knowledge<br>and experience regarding<br>the claim and policy<br>exclusions are relevant; not<br>unfairly prejudicial to<br>Plaintiffs, not confusing,<br>misleading or cumulative<br>evidence.<br><br>Plaintiff's Objections:<br>Page 162:14-25<br>402,403<br><br>Defendant's Response:<br>The witness's knowledge<br>and experience regarding<br>the claim and policy<br>exclusions are relevant; not<br>unfairly prejudicial to<br>Plaintiffs, not confusing,<br>misleading or cumulative<br>evidence. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| Page 163<br>1 Q How -- how did you expect to learn the<br>2 facts necessary to determine whether there was<br>3 coverage without hiring a third party to assist you<br>4 in determining the facts?<br>5 A The language within the policy spoke for<br>6 itself.<br><br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 163<br>7 Q What about the facts? I mean, you needed<br>8 to know the facts. Where were you getting the facts<br>9 from?<br>10 A We had write-ups from the security detail<br>11 that were surrounding the production. And it truly<br>12 was felt that this was putting production in harm's<br>13 way to continue.<br>14 Q And you felt there was imminent peril under<br>15 the policy?<br>16 A Yes.<br>17 Q And you didn't feel like any of the war<br>18 exclusions applied?<br>19 A No.<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION<br><br><br>Page 163<br>20 Q Did you didn't feel like it was necessary<br>21 to go to any third-party vendor or expert to assist | Plaintiff's Objections:<br>Page 163:1-6<br>402,403<br><br>Defendant's Response:<br>The witness's knowledge and experience regarding the claim and policy exclusions are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 163:20-23<br>402,403 |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 22 you in reaching your opinion?<br>23 A No.<br><br><br><br><br><br><br><br>Page 165<br>13 BY MR. KEELEY:<br>14 Q Do you recognize Exhibit 60 as a series of<br>15 emails including one that you sent to Michael<br>16 Arevalo at Atlantic providing formal written notice<br>17 of the DIG claim?<br>18 A Yes.<br>19 Q And is this exhibit a true and accurate<br>20 copy of your communications with Mr. Arevalo and the<br>21 surrounding emails accompanying it?<br>22 A Yes.<br>23 Q So the first official written notification<br>24 you gave to Atlantic was on Tuesday, July 15th; is<br>25 that correct?<br>Page 166<br>3 THE WITNESS: Yes.<br><br>Page 166<br>5 Q The first written notification that you<br>6 provided to Atlantic of the DIG claim was on<br>7 July 15th, 2014; is that correct?<br>8 A Yes.<br><br>Page 168<br>1 Q And we previously established you spoke to<br>2 Mr. Williams on Friday the 11th -- 12th -- Friday,<br>3 the 11th, correct? | Defendant's Response<br>The witness's knowledge and experience regarding the claim and policy exclusions are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 4 A Yes.<br><br>Page 169<br>13 Q So sitting here today, the first call you<br>14 remember having with Pamela Johnson and<br>15 Danny Gutterman was one in which you informed them<br>16 that NBC had made the decision to pull out of<br>17 Israel?<br>18 A Yes.<br>19 Q Do you recall what time of day that call<br>20 took place?<br>21 A I believe it was later in the afternoon.<br><br>Page 169<br>24 Q What do you recall as the purpose of that<br>25 telephone call?<br><br><br>Page 170<br>1 A I had run into Peter Williams the evening<br>2 before at some sort of industry event. And he took<br>3 me aside and said, "Things are -- things are looking<br>4 like -- I need to give you a heads-up. It's looking<br>5 like this is going to -- the war exclusion is going<br>6 to be invoked."<br><br>Page 170<br>11 Q Do you recall anything else he said to you?<br>12 A No. It was a quick, brief discussion. And<br>13 he, I felt, was giving me a courtesy heads-up that<br>14 they were going to invoke the war exclusion.<br>15 Q Do you recall him telling you anything else<br>16 other than, "It's looking like we're going to invoke<br>17 the war exclusion"?<br>18 A It was a brief conversation. I -- I do<br>19 remember saying something to him about I strongly | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 20 disagree, and that if OneBeacon was going to take<br>21 that position, they better have some expert<br>22 opinions.<br>23 And he said, "I have requested an opinion<br>24 letter from legal counsel."<br>25 And that was the gist of the conversation.<br><br>Page 171<br>1 Q Are you certain he said, "I have requested<br>2 an opinion" as opposed to, "I will request an<br>3 opinion"?<br>4 A No, I can't be certain.<br>5 Q Okay.<br>6 A One of the two.<br>7 Q And before he said that, your comment to<br>8 him was, "I strongly disagree. And if OneBeacon is<br>9 going to take that position, they better have an<br>10 expert opinion"?<br>11 A Yes, something to that effect.<br>12 Q Do you know whether you said, "They better<br>13 have a legal opinion"?<br>14 A I do not recall.<br>15 Q You could have. You just don't know one<br>16 way or the other?<br>17 A I don't recall.<br>18 Q What else do you recall discussing with<br>19 Mr. Williams that evening, if anything?<br>20 A I don't recall anything else.<br><br>Page 173<br>1 Q How did you learn that it was looking like<br>2 they were going to pull out?<br>3 I assume you spoke with somebody at NBC.<br>4 A Yes.<br><br>Page 173<br>7 Q Who were you having your conversations with<br>8 at NBC primarily? | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 9 A Andrea Garber.<br><br>Page 174<br>7 Q So the next day, you and Ms. Garber decided<br>8 to call Ms. Johnson and Mr. Gutterman; is that<br>9 right?<br>10 A Yes.<br>11 Q And is that because you had learned that<br>12 NBC had made the decision to pull out of Israel, no<br>13 longer shoot DIG there?<br>14 A Yes.<br>15 Q And so you sent an email to Ms. Johnson and<br>16 Mr. Gutterman to schedule a call, correct?<br>17 A Yes.<br>18 Q And the call was scheduled for that<br>19 Thursday at 4:00 P.M.; is that correct?<br>20 A Yes.<br><br>Page 175<br>2 Q Do you recall anything that was said during<br>3 the call?<br>4 A I don't recall specifics.<br>5 Q What do you generally recall being<br>6 discussed?<br>7 A How the claim was transpiring and that<br>8 production was looking to shut down and relocate.<br>9 Q Did you explain why NBC had decided to move<br>10 out of Israel as opposed to postponing production?<br>11 A Yes.<br>12 Q What did you tell them was the reason?<br>13 A I recall that we discussed that Hamas had<br>14 been lobbing mortars and rockets into Israel and<br>15 there was severe risk of people being injured, and<br>16 it didn't look like the situation was going to<br>17 improve.<br>18 Q Did you tell them anything else?<br>19 A I don't recall. | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| Page 176<br>1 Q Do you recall anything that Mr. Gutterman<br>2 said on that call?<br>3 A I don't recall.<br>4 Q Do you recall anything that Pamela Johnson<br>5 said on that call?<br>6 A Yes.<br>7 Q What do you recall Ms. Johnson saying?<br>8 A We -- we touched on the fact that they may<br>9 be looking to invoke the war exclusion. It was<br>10 looking as though they were going to.<br>11 Q Okay. Do you recall exactly what she told<br>12 you?<br>13 A I do not.<br>14 Q But sitting here today, your impression is<br>15 she explained to you that it was looking as though<br>16 Atlantic would invoke the war exclusion?<br>17 A Yes.<br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 176<br><br>18 Q She didn't say, "We have decided to."<br>19 Instead it was, "It looks like we may invoke the war<br>20 exclusion"?<br>21 A I don't recall the exact words, but when a<br>22 carrier talks to you about exclusions, it's a good<br>23 sign that they're going to invoke an exclusion.<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br><br>Page 177<br>3 So to the best of your recollection,<br>4 sitting here today, did she say, "We're denying the<br>5 claim because of the war exclusion" or, "It's | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 6 looking like the war exclusion might apply"?<br>7 A She did not definitively say, "The<br>8 exclusion will apply."<br>9 Q Did you mention to her that you had spoken<br>10 with Peter the evening before and suggested that a<br>11 coverage -- or that an opinion should be sought?<br>12 A I don't recall.<br>13 Q If Ms. Johnson were to testify that you<br>14 raised that, you could not dispute her testimony<br>15 then?<br><br>Page 177<br>19 THE WITNESS: No.<br>20 BY MR. KEELEY:<br>21 Q Do you recall anything else being said<br>22 during that call by Ms. Johnson?<br>23 A I don't.<br>24 Q Do you recall any timetable being discussed<br>25 for Ms. Johnson getting back to you with a<br><br>Page 178<br>1 definitive coverage opinion?<br>2 A Yes. She -- she gave us some -- I don't<br>3 recall the exact date, but she did give us a time<br>4 frame that she would get back to us.<br><br>Page 184<br>3 BY MR. KEELEY:<br>4 Q I'm going to show you what's previously<br>5 been marked Exhibit 40.<br>6 Do you recognize Exhibit 40 as a series of<br>7 emails between you and Susan -- between you and<br>8 Andrea Garber on July 17th?<br>9 A Yes.<br>10 Q And I'd like to direct your attention to<br>11 the middle email on the first page of Exhibit 40.<br>12 And actually right before that, you sent her an<br>13 email sending her a copy of the notification that | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 184:3-25<br>402,403<br><br>Defendant's Response:<br>The witness's knowledge<br>and experience regarding<br>the claim are relevant; not<br>unfairly prejudicial to<br>Plaintiffs, not confusing,<br>misleading or cumulative<br>evidence. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 14 you had sent to OneBeacon, correct?<br>15 A Uh-huh.<br>16 Q And you asked her, "How did the calls go,"<br>17 correct?<br>18 A Yes.<br>19 Q What calls were you referring to?<br>20 A I can't say for certain, but I would<br>21 believe they were calls with production and Kurt<br>22 Ford.<br>23 Q And you were just curious how the calls<br>24 went?<br>25 A Yes. | |
| <u>Page 185</u><br>1 Q And in response, she says, "Thanks. Got<br>2 it. Everyone was disappointed. Everything got<br>3 rehashed back to when we first declared the<br>4 production and why additional insurance was not<br>5 purchased."<br>6 Do you see that?<br>7 A Yes. | Plaintiff's Objections:<br>Page 185:1-7<br>402,403<br><br><u>Defendant's Response</u>:<br>The witness's knowledge and experience regarding the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| <u>Page 185</u><br>24 Q Okay. And in her email, Ms. Garber tells<br>25 you that she was questioned about why additional<br><br><u>Page 186</u><br>1 insurance was not purchased, correct?<br><br><u>Page 186</u><br>5 THE WITNESS: Yes. | Plaintiff's Objections:<br>Page 185:24-186:1; 185:5<br>402,403<br><br><u>Defendant's Response</u>:<br>The witness's knowledge and experience regarding the claim are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

**1632**

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 186<br><br>16 Q Who is Curtis Ingram?<br>17 A Curtis Ingram is an employee at Aon that<br>18 specializes in terrorism-type coverage.<br>19 Q Do you recall contacting Mr. Ingram to see<br>20 if there was a corporate terrorism policy that might<br>21 provide some coverage for the DIG claim?<br>22 A Vaguely.<br>23 Q And did you do that because you were<br>24 concerned that there was not coverage under<br>25 Atlantic's policy for the DIG claim?<br><br>Page 187<br><br>1 A No.<br>2 Q You were confident that there was coverage<br>3 under the Atlantic policy?<br>4 A Yes.<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 191<br>11 Let me show you what has been marked as<br>12 Exhibit 35.<br>13 I'm going to direct your attention to the<br>14 first email in that exhibit.<br>15 Do you recall that there was a<br>16 conversation -- well, first of all, who is<br>17 Joanne Quintal?<br>18 A She is an Aon employee that handles the<br>19 Comcast corporate property policy.<br>20 Q Okay. And had you looked into whether or<br>21 not there could be coverage for NBC's claim under | Plaintiff's Objections:<br>Page 191:11-25<br>402,403<br><br>Defendant's Response:<br>The witness's knowledge and experience regarding the claim and policy exclusions are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 22 that Comcast property policy?<br>23 A Yes.<br>24 Q And was there a call shortly after this<br>25 email went out to discuss potential coverage under<br><br>Page 192<br>1 that policy?<br>2 A Yes.<br>3 Q And was concern raised that there would not<br>4 be coverage because of the application of a war<br>5 exclusion?<br>6 A Under the property policy, yes.<br><br><br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 192<br>7 Q Well, if there was concern about the war<br>8 exclusion of the property policy applying, why<br>9 wouldn't there also be concern about the war<br>10 exclusion of the Atlantic production policy<br>11 applying?<br><br>14 THE WITNESS: Each policy has to be<br>15 reviewed independently.<br>16 BY MR. KEELEY:<br>17 Q So you think the war exclusions under the<br>18 property policy were broader than the war exclusions<br>19 under the Atlantic production policy?<br>22 THE WITNESS: No. I don't believe the war<br>23 exclusion came into play in this situation with the<br>24 DIG claim under either policy. | evidence.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 192:1-6<br>402,403<br><br>Defendant's Response:<br>The witness's knowledge and experience regarding the claim and policy exclusions are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| <u>Page 193</u><br><br>11 Q I asked you, "And was there concern raised<br>12 that there would not be coverage because of the<br>13 application of the war exclusion?" And you said,<br>14 "Under the property policy, yes."<br>15 Are you changing your testimony?<br><br>19 THE WITNESS: I think the discussion of the<br>20 war exclusion under the property policy was just<br>21 something that was thrown out, but the issue we were<br>22 exploring was the terrorism coverage within the<br>23 property policy.<br>24 So, yes, I am changing my testimony upon<br>25 further reflection.<br><br><u>Page 194</u><br><br>2 Q So you now think that concern was not<br>3 raised that the war exclusion of the property policy<br>4 would apply?<br>5 A Yes<br><br><u>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION</u><br><br><u>Page 197</u><br>9 Q So the call with Danny Gutterman and Pamela<br>10 Johnson was on Thursday, July 17th.<br>11 And do you recall having a follow-up<br>12 conversation with them the following Tuesday in<br>13 which they informed you that they were denying<br>14 coverage?<br>15 A Yes.<br><br><u>Page 197</u><br>25 Q Tell me everything you can recall being | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| <u>Page 198</u><br>1 discussed.<br>2 A That they were going to be sending out a<br>3 coverage opinion -- or the declination letter for<br>4 the coverage, and that's really all I remember.<br>5 Q Do you remember them telling you that they<br>6 had concluded that there was no coverage because of<br>7 the war exclusions?<br>8 A Yes.<br>9 Q And do you remember them telling you that<br>10 they had, in fact, obtained a coverage opinion?<br>11 A Yes.<br><br><u>Page 198</u><br>25 Q Can you recall anything else being<br><br><u>Page 199</u><br>1 discussed during that call?<br>2 A No.<br>3 Q Did they give you any time frame for when<br>4 they would get you a written coverage letter?<br>5 A I believe they did, but I couldn't say for<br>6 sure.<br>7 Q In your view, was it important that that<br>8 coverage letter be received as soon as possible?<br>9 A Yes.<br>10 Q Why?<br>11 A Because the client needs to know where the<br><u>PLAINTIFFS' 106 COUNTER-DESIGNATION:</u><br><br>12 Q Did you or Ms. Garber ask who they had<br>13 obtained that coverage opinion from?<br>14 A Yes.<br>15 Q Was that you or Ms. Garber?<br>16 A I had asked that.<br>17 Q Why? | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 18 A Because I wanted to know that they had<br>19 obtained -- that they'd done their homework on -- on<br>20 the actual subject of whether the war exclusion<br>21 would apply or not.<br>22 I -- I didn't have great faith that their<br>23 claims people really knew enough to invoke the war<br>24 exclusion.<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION<br><br>Page 199<br>25 Q So you submitted the claim in writing on<br><br><br>Page 200<br>1 Tuesday, and the following Tuesday they informed you<br>2 that they were denying the claim.<br><br>Page 200<br>5 BY MR. KEELEY:<br>6 Q So, in light of that, is it your view that<br>7 Atlantic provided a coverage determination within a<br>8 reasonable period of time or did they take too long?<br><br>Page 200<br>14 THE WITNESS: They had already advised me<br>15 on I believe it was the 17th that they were going to<br>16 invoke the war exclusion.<br>17 I would have -- I would have expected the<br>18 letter to have come at that time, if they had<br>19 already decided that the war exclusion was going to<br>20 apply.<br>21 BY MR. KEELEY: | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 22 Q Are you changing your testimony from<br>23 earlier in the day as to what Ms. Johnson told you<br>24 on Thursday the 17th?<br>25 Previously you testified that she told you<br><br>Page 201<br>1 the war exclusion might apply, but you acknowledged<br>2 that she did not tell you for certain that they were<br>3 denying the claim on the basis of the war exclusion.<br>4 So are you changing your testimony?<br>5 A No.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 201<br><br>6 Q Okay. So she did not inform you that<br>7 Atlantic was denying the claim on Thursday,<br>8 July 17th, correct?<br><br>12 THE WITNESS: It was implied that they<br>13 were<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br><br><br>Page 201<br>14 BY MR. KEELEY:<br>15 Q It was implied because she told you that<br>16 they might apply the war exclusion.<br>17 So, from that, you concluded that they<br>18 would apply the war exclusion?<br>19 A Yes.<br><br>Page 201 | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 24 But my question is: Do you think they took<br>25 too long from the time you submitted the claim in<br><br>Page 202<br>1 writing on Tuesday the 15th to the time they advised<br>2 you orally in that telephone conversation on the<br>3 22nd that they were denying the claim?<br><br>Page 202<br>8 THE WITNESS: I think a claim such as this<br>9 requires immediate notification. And I -- if they<br>10 already knew they were going down that path of<br>11 declining the claim due to the war exclusion, I<br>12 would have thought it might have come sooner.<br>13 BY MR. KEELEY:<br>14 Q Did you express to them in the beginning<br>15 that there was some urgency in getting a coverage<br>16 decision?<br>17 A Yes.<br>18 Q When did you express that? Was that on the<br>19 original call?<br>20 A That was probably expressed to them on<br>21 numerous occasions.<br><br>Page 203<br>10 Q So your best recollection today is from the<br>11 beginning, you informed Ms. Johnson and<br>12 Mr. Gutterman that there was some urgency in<br>13 reaching a claims decision?<br>14 A Yes.<br>15 Q And you made it clear to them that you<br>16 needed Atlantic to make a decision as soon as<br>17 possible so that NBC would know their view on<br>18 coverage?<br>19 A Yes.<br><br>Page 206<br>3 Q Either you prepared it or you had someone | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 206:3-25 |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 4 go back and obtain the information to put into the<br>5 document?<br>6 A Yes.<br>7 Q And would you have reviewed it before<br>8 providing it to Allianz?<br>9 A Yes.<br>10 Q And so do I understand correctly on the<br>11 first page of Exhibit 22, for instance, you've<br>12 listed all the claims that NBC had submitted for<br>13 coverage during the year 2005?<br>14 A Yes.<br>15 Q And so that would have totaled $1,424,978;<br>16 is that correct?<br>17 A Gross claims, yes.<br>18 Q And then for 2006, there's a list beginning<br>19 with teachers and ending with Las Vegas. And the<br>20 total claim amount was two point two six three<br>21 million five hundred seventy-three dollars, correct?<br>22 A Yes.<br>23 Q So if you turn to the page Bates labeled 15<br>24 for the policy year 2014, you've listed the claims<br>25 and the value of the claims NBC submitted during<br>the | 402,403<br><br>Defendant's Response:<br>The witness's knowledge<br>and experience are<br>relevant; not unfairly<br>prejudicial to Plaintiffs, not<br>confusing, misleading or<br>cumulative evidence. |
| Page 207<br>1 2014 policy year, correct?<br>2 A Yes.<br>3 Q All right. And there's two entries for<br>4 DIG. The first one is the extra expense entry; is<br>5 that correct?<br>6 A Yes.<br>7 Q And it's in the amount of $100,000; is that<br>8 right?<br>9 A Yes.<br>10 Q Now, when Atlantic asked you the value of<br>11 that claim, did you not tell them it was 250- to<br>12 $300,000? | Plaintiff's Objections:<br>Page 207:1-4; 207:16-21;<br>207:25<br>402,403<br><br>Defendant's Response:<br>The witness's knowledge<br>and experience regarding<br>the claim and loss<br>estimates are relevant; not<br>unfairly prejudicial to<br>Plaintiffs, not confusing,<br>misleading or cumulative<br>evidence. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| Page 207<br>16 THE WITNESS: I didn't state a specific<br>17 amount.<br>18 BY MR. KEELEY:<br>19 Q Were you on the telephone when Andrea<br>20 Garber told them that NBC was estimating it at<br>21 250,000 to $300,000?<br><br>Page 207<br>25 THE WITNESS: I was on the call.<br><br>Page 208<br>1 BY MR. KEELEY:<br>2 Q When she told them it was approximately<br>3 250- to $300,000? | |
| Page 208<br>6 THE WITNESS: I didn't recall the amount.<br>7 She gave them the range.<br>8 BY MR. KEELEY:<br>9 Q You recall it was over $100,000?<br>10 A Yes.<br>11 Q So in this loss run that you submitted to<br>12 Allianz, you've indicated the claim amount is only<br>13 $100,000.<br>14 Do you see that?<br>15 A Yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 208<br><br>16 Q Do you know why there's a discrepancy<br>17 between what Ms. Garber indicated to Atlantic and<br>18 what you provided on this loss run?<br>19 A If a claim is open, they may insert a<br>20 placeholder amount if they're not sure what the<br>21 claim could be. | Plaintiff's Objections:<br>Page 208:6-15<br>402,403<br><br>Defendant's Response:<br>The witness's knowledge and experience regarding the claim and loss estimates are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| END PLAINTIFFS' 106 COUNTER-DESIGNATION<br><br>Page 208<br>25 Q Do you know what NBC's loss is as a result<br><br>Page 209<br>1 of that one-week push?<br>2 A I -- I have a vague recollection.<br>3 Q What is your recollection?<br>4 A Between 250- and 350,000.<br><br>Page 209<br>9 Q Did you inform them about the remainder of<br>10 the claim? That is, seeking coverage for pulling<br>11 out of Israel altogether?<br>12 A Yes.<br>13 Q How did you do that?<br>14 A I had conversations.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page209<br><br>15 Q And who did you have those conversations<br>16 with?<br>17 A Mark Idelson for Reel Media.<br>18 And I don't recall who I spoke with at<br>19 Allianz.<br>20 Q And what did you tell Mark Idelson at<br>21 Reel Media about the DIG claim?<br>22 A I advised him that there was a claim that<br>23 was being disputed.<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| Page 210<br>4 Q Why didn't you include it on the loss run,<br>5 Exhibit 22?<br>6 A The loss runs are for open, existing claims<br>7 that have been accepted by the carrier. That did<br>8 not fall into that category.<br>9 Q Did not fall into what category?<br>10 A OneBeacon had already denied the claim.<br>11 Q So this didn't include denied claims. It<br>12 only included claims that had been submitted and<br>13 paid or claims that had been submitted and not<br>14 denied?<br>15 A Yes.<br>16 Q Wouldn't it be important for a carrier to<br>17 know that there is a claim that had been submitted<br>18 and denied but that NBC was contesting coverage --<br>19 A Yes.<br>20 Q -- or contesting the denial?<br><br>Page 210<br>24 THE WITNESS: Yes. | Plaintiff's Objections:<br>Page 210:4-20; 210:21<br>402,403<br><br>Defendant's Response:<br>The witness's knowledge and experience regarding the claim and loss estimates are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 213<br>3 Q And you don't include open claims on the<br>4 loss runs?<br>5 A You do include open claims --<br>6 Q Excuse me. You include only paid or open<br>7 claims on the loss runs?<br>8 A Yes.<br>9 Q But the one-week push was no longer open<br>10 and you included it?<br>11 A In my mind, it was still open.<br>12 Q Even though, in their denial letter,<br>13 Atlantic had denied coverage for that one-week push?<br>14 A Yes. | Plaintiff's Objections:<br>Page 213:3-14<br>402,403<br><br>Defendant's Response:<br>The witness's knowledge and experience regarding the claim and loss estimates are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| Page 219<br>16 Q Would you look at Page 121 of the<br>17 Reel Media policy, Exhibit 23.<br>18 That page contains an endorsement<br>19 pertaining to the exclusion for war; is that<br>20 correct?<br>21 A I'm still reading it.<br>22 Yes.<br>23 Q So Endorsement No. 2 at Page 121 modifies<br>24 the exclusions we just looked at, at Page 98,<br>25 correct?<br><br>Page 220<br>1 A Yes -- | Plaintiff's Objections:<br>Page 219:16-220:1<br>402,403<br><br>Defendant's Response:<br>The witness's knowledge and experience regarding the claim and policy exclusions are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 220<br>16 BY MR. KEELEY:<br>17 Q So my question was: Endorsement No. 2 at<br>18 Page 121 modifies the exclusions we just looked at<br>19 at Page 98, correct? And you said, "Yes."<br>20 So my next question is: How does it modify<br>21 those exclusions? | Plaintiff's Objections:<br>Page 220:16-21<br>402,403<br><br>Defendant's Response:<br>The witness's knowledge and experience regarding the claim and policy exclusions are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 221<br>1 THE WITNESS: It appears to be different in2 a number of ways.<br>3 BY MR. KEELEY:<br>4 Q One way is it takes out the weapon of war<br>5 exclusion; is that correct?<br><br>Page 221<br>10 THE WITNESS: Yes. | Plaintiff's Objections:<br>Page 221:1-5; 221:10<br>402,403<br><br>Defendant's Response:<br>The witness's knowledge and experience regarding the claim and policy |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| | exclusions are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 221<br>18 Q Deleting that exclusion would benefit<br>19 NBCUniversal, not Reel Media, correct? | Plaintiff's Objections:<br>Page 221:18-19; 221:25<br>402,403 |
| Page 221<br>25 THE WITNESS: Yes. | Defendant's Response:<br>The witness's knowledge and experience regarding the claim and policy exclusions are relevant; not unfairly prejudicial to Plaintiffs, not confusing, misleading or cumulative evidence. |
| Page 223<br>3 Q But you would agree with me, would you not,<br>4 that deleting it benefitted NBCUniversal?<br>Page 223<br>9 THE WITNESS: Yes.<br><br>PLAINTIFFS' 106 COUNTER-DESIGNATION:<br><br>Page 224<br><br>17 Q Why were you explaining to Theresa Gooley<br>18 and Mr. Gutterman the claims process over the past<br>19 four years?<br>20 A At this point in time, I had asked that<br>21 Pamela -- Pamela Johnson be removed from the claim<br>22 process. She gave ultimate oversight to the claims | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 23 for NBCU, and I felt that she wasn't experienced in<br>24 entertainment-type claims enough to be making<br>25 certain opinions and decisions.<br><br>Page 225<br><br>1 And the DIG claim, the way it was handled,<br>2 I think, the level of frustration got to a point<br>3 where had I asked that she be removed.<br><br>10 Q So what -- what concerns did you have about<br>11 Pamela Johnson?<br>12 A Her background was not entertainment<br>13 claims.<br>14 Q Anything else?<br>15 A I had sat in a few meetings with her and<br>16 the client, and I got a sense from her that<br>17 everything was cut and dry, black and white, and<br>18 that snap decisions were made without having all the<br>19 facts.<br>20 Q Okay. Anything else?<br>21 A I think that's pretty big. That was<br>22 sufficient.<br>23 Q Okay. Did you have any concerns about<br>24 Danny Gutterman?<br>25 A Quite honestly, I was never wowed by him.<br><br>Page 226<br><br>1 I never thought he knew exactly what he should know<br>2 to be in the position he was in, but you have to<br>3 start somewhere. So we would utilize him as the<br>4 carrier had requested<br><br>END PLAINTIFFS' 106 COUNTER-<br>DESIGNATION | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| <u>Page 226</u><br>12 Q Any complaints about your experiences with<br>13 Peter Williams?<br>14 A No.<br>15 Q Any complaints about your experiences with<br>16 Wanda Phillips?<br>17 A No.<br><br><u>PLAINTIFFS' 106 COUNTER-DESIGNATION:</u><br><br><u>Page 232</u><br><br>16 You recall that in March 2015 you marketed<br>17 the program to Reel Media and to Allianz, correct?<br><br><u>END PLAINTIFFS' 106 COUNTER-DESIGNATION</u><br><br><u>Page 232</u><br>18 A Yes.<br>19 Q All right. You mentioned that you also<br>20 wanted to have discussions with Atlantic about<br>21 possibly renewing the policy.<br>22 Is that right?<br>23 A I said something to that effect.<br>24 Q Did -- were you hopeful that Atlantic would<br>25 renew the policy?<br><br><u>Page 233</u><br>2 THE WITNESS: Yes.<br><br><u>PLAINTIFFS' 106 COUNTER-DESIGNATION:</u><br><br><u>Page 233</u><br><br>20 Q But what was your preference at the time? | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>Page 232:18-232:25; 233:2<br>402,403<br><br><u>Defendant's Response:</u><br>The witness's knowledge<br>and experience regarding<br>the claim and policy are<br>relevant; not unfairly<br>prejudicial to Plaintiffs, not<br>confusing, misleading or<br>cumulative evidence. |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 23 THE WITNESS: I had an obligation to<br>24 explore all options on my client's behalf. I wasn't<br>25 making any decisions at that point.<br><br>Page 234<br><br>6 Q At some point, did you make<br>7 recommendations?<br>8 A I had no choice.<br>9 Q So my earlier question was: What was your<br>10 preference as to whether you should keep -- NBC<br>11 should keep the current policy with Atlantic or move<br>12 it to a new carrier?<br>13 A I didn't have a preference at that time<br>14 when we first started marketing it. I was exploring<br>15 all my options.<br>16 Q Did you develop a presence over time -- a<br>17 preference over time?<br><br>19 THE WITNESS: Yes.<br>:<br>21 Q And when did you develop that preference?<br>22 A Three weeks before renewal when I was told<br>23 they were nonrenewing the policy.<br>24 Q Who told you that?<br>25 A Wanda Phillips.<br><br>Page 235<br><br>1 Q Was that in a telephone conversation or in<br>2 person?<br>3 A I believe it was a telephone conversation.<br>4 Q How long did that call last?<br>5 A It was a very brief conversation.<br>6 Q Did she call you or did you call her?<br>7 A I had been calling her all day to find out<br>8 the results of her meeting with upper management. | |

| Deposition Designation of Susan Weiss | Objection & Response |
|---|---|
| 9 They were going to present the NBCU proposal that<br>10 they wanted to show us for the renewal.<br>11 And she called me at the end of the day to<br>12 tell me they were not going to be able to.<br>13 Q Tell me everything you recall Ms. Phillips<br>14 telling you in that call.<br>15 A She was very upset. It came as a huge<br>16 surprise to her that upper management wanted to<br>17 nonrenew this account along with five other accounts<br>18 that were very large that -- that had poor loss<br>19 experience.<br><br>Page 236<br><br>8 Q Did she tell you why the decision had been<br>9 made not to renew NBC and the other five large<br>10 accounts?<br><br>13 THE WITNESS: They said it had to do with<br>14 loss experience.<br><br>16 Q What else do you recall her telling you?<br>17 A That she was embarrassed of what the<br>18 company had done, that she was disgusted with the<br>19 position they took, and she would speak to me later.<br>20 We were supposed to have dinner that<br>21 evening.<br><br>END PLAINTIFFS' 106 COUNTER-DESIGNATION | |

DATED:  January 3, 2020                    SUSMAN GODFREY L.L.P.

                                           */s/ Catriona Lavery*
                                           KALPANA SRINIVASAN (237460)
                                           ksrinivasan@susmangodfrey.com
                                           AMANDA K. BONN (270891)
                                           abonn@susmangodfrey.com
                                           CATRIONA LAVERY (310546)
                                           clavery@susmangodfrey.com
                                           SUSMAN GODFREY L.L.P.
                                           1900 Avenue of the Stars, Suite 1400
                                           Los Angeles, CA 90067-6029
                                           Tel: (310) 789-3100
                                           Fax: (310) 789-3150

                                           JACOB W. BUCHDAHL (*pro hac vice*)
                                           jbuchdahl@susmangodfrey.com
                                           SUSMAN GODFREY L.L.P.
                                           1301 Avenue of the Americas, 32nd Floor
                                           New York, NY 10019-6023
                                           Tel: (212) 336-8330
                                           Fax: (212) 336-8340

                                           *Attorneys for Plaintiffs*

                                           */s/ Melinda R. Burke*
                                           MARC J. SHRAKE
                                           FREEMAN MATHIS & GARY, LLP
                                           550 South Hope Street, Suite 2200
                                           Los Angeles, CA 90071-2631
                                           Tel: (213) 615-7039
                                           -and-
                                           MICHAEL KEELEY (*pro hac vice*)
                                           JOHN R. RIDDLE (*pro hac vice*)
                                           TONI SCOTT REED (*pro hac vice*)
                                           CLARK HILL STRASBURGER PLC
                                           901 Main Street, Suite 6000
                                           Dallas, TX 75202
                                           Tel: (214) 651-4718

7060055/015825

MELINDA R. BURKE (*pro hac vice*)
MARTIN DISIERE JEFFERSON AND
WISDOM LLP
9111 Cypress Waters Boulevard, Suite 250
Dallas, TX 75019
Tel: (214) 420-5500
Fax: (214) 420-5501
burke@mdjwlaw.com

*Attorneys for Defendant*

## Attestation Regarding Signatures

I, Catriona Lavery, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By: */s/ Catriona Lavery*
Catriona Lavery

1

## CERTIFICATE OF SERVICE

2

I certify that on January 4, 2020, I filed the foregoing with the Clerk of the United States

3

4

District Court for the Central District of California by using the Court's CM/ECF system, which

5

will send notifications of such filing to all counsel of record.

6

7

*/s/ Catriona Lavery*
Catriona Lavery

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7060055/015825

**1652**