MARC J. SHRAKE (SBN 219331)
mshrake@fmglaw.com
FREEMAN MATHIS & GARY, LLP
550 South Hope Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 615-7019
Facsimile: (213) 615-7000

CHRISTOPHER W. MARTIN *(Pro Hac Vice)*
martin@mdjwlaw.com
MELINDA R. BURKE *(Pro Hac Vice)*
burke@mdjwlaw.com
WILLIAM E. McMICHAEL *(Pro Hac Vice)*
mcmichael@mdiwlaw.com
MARTIN, DISIERE, JEFFERSON
& WISDOM LLP
9111 Cypress Waters Blvd., Suite 250
Dallas, Texas 75019
Telephone: (214) 420-5500
Facsimile: (214) 420-5501

Attorneys for Defendant
Atlantic Specialty Insurance Company

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,

Plaintiffs,

vs.

ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,

Defendant.

CASE NO. 2:16-cv-4435-PA-MRW

**DEFENDANT ATLANTIC SPECIALTY'S MOTION IN LIMINE NO. 2 REGARDING EXTRINSIC INFORMATION**

**PLAINTIFFS' OPPOSITION**

**DEFENDANT'S REPLY**

**DECLARATION OF MARC J. SHRAKE**

Hearing Date: February 10, 2020
Time: 1:30 p.m.
Pretrial Conference: January 17, 2020
Time: 1:30 PM PST
Place: Courtroom 9A
Judge: Honorable Percy Anderson
Trial: February 18, 2020

Plaintiffs indicate they wish to introduce evidence and advance arguments concerning the drafting, negotiation, underwriting, pricing, and other circumstances of the placement and renewal of the Policy at issue, which is a Motion

Picture/Television Producers Portfolio Policy, Policy No. MP00163-04, policy period January 11, 2014, to June 30, 2015 ("Policy").

None of this is relevant to issues to be tried.

References, evidence, or argument concerning such topics would confuse the jury, unduly prejudice ASIC, and contradict California law.

**SPECIFIC MATTER AT ISSUE**

Alleged ambiguity in the wording of the Policy or earlier policies, including without limitation the following:

- That the Policy terms and conditions should be construed against ASIC.
- So-called "expectations" or beliefs of Plaintiffs or any insured concerning the Policy or earlier policies.
- The negotiation or discussion of policy terms other than the actual, written terms of the Policy.
- Alleged mistake, fraud, or misrepresentation in drafting Part 4 of the War Risk Exclusion (concerning weapons of war).
- ASIC's Underwriting guidelines.
- References to the Policy premium.
- References to the renewal or non-renewal of the Policy and the related communications.
- Whether ASIC made or lost money on Plaintiffs' account or any other claims of ASIC's entertainment division (or any other division).
- Loss ratios of ASIC on Plaintiffs' account or any other of its books of business or divisions, including the entertainment division;
- Any testimony of George Walden or any other witness not identified in Plaintiffs' Disclosures.

**Counsel for ASIC has discussed these matters with counsel for Plaintiffs, and counsel for Plaintiffs has indicated that these matters will be mentioned or displayed in the presence of the jury before they are admitted in evidence. *See* Declaration of Marc J. Shrake.**

**<u>SPECIFIC PREJUDICE TO ASIC IF THIS MOTION IS NOT GRANTED</u>**

ASIC has requested additional proceedings on the breach of contract issues in this case, specifically whether war risk exclusion #3 or #4, or both, bar coverage for Plaintiffs' Extra Expense claim under the Policy. If such proceedings are permitted, the cases that construe insurance policy language against the insurer are not analogous to the circumstances of the formation of the Policy in this case. Here, there is no finding of ambiguity. Even if there were, the Policy should be construed against Plaintiffs, because the Policy form was provided by Plaintiffs' broker, and the terms were negotiated. Plaintiffs had at least as much bargaining power as ASIC. It would therefore unduly prejudice ASIC to construe the Policy against it based on case law that does not apply to this case. Additionally, the Federal Rules have clear requirements on pleading mistake or fraud, and Plaintiffs have not even attempted to meet them.

If additional proceedings on the contract issues are not permitted, there is no need to go back and construe the Policy, and therefore no need for evidence about its formation or the motivations of ASIC in entering the contract; the breach of contract case will have already been decided. It would therefore prejudice ASIC by confusing the jury on the issues to be decided if it were to be presented with irrelevant evidence about ASIC's status, business, and motivations for entering into an insurance contract or the questions about the formation of the contract, or with an unfounded suggestion of mistake or fraud.

**<u>ASIC'S CONTENTIONS OF POINTS AND AUTHORITIES</u>**

Plaintiffs have indicated they wish to introduce evidence and advance arguments concerning the drafting, negotiation, underwriting, pricing, renewal/non-

renewal, and other circumstances of the placement of the Policy at issue in the case, a Motion Picture/Television Producers Portfolio Policy, Policy No. MP00163-04, policy period January 11, 2014, to June 30, 2015 ("Policy"), as well loss ratios.

References, evidence, or argument concerning these topics would confuse the jury, unduly prejudice ASIC, and contradict California law.

Such references or evidence would be relevant only if the breach of contract case were still at issue, and only then if the Court found an ambiguity in the terms and conditions of the Policy and decided to allow extrinsic evidence to resolve it.

Even if the Court were to consider the evidence at issue, the Policy was exhaustively negotiated and the language is the wording of Plaintiffs, who are highly sophisticated insureds. The language of the Policy originated with Plaintiffs. In fact, Plaintiffs and their broker, Aon -- also highly sophisticated -- claim *ownership* of the Policy language: "CONFIDENTIAL PROPERTY OF AON." Therefore, if the Court allowed extrinsic evidence, the Policy would be construed against Plaintiffs. *Fireman's Fund Ins. Co. v. Fibreboard Cop.*, 182 Cal. App. 3d 462, 470 (Cal. Ct. App. 1986); *see also Powell v. Cent. Cal. Fed. Sav. & Loan Assn.*, 59 Cal. App. 3d 540, 550-51 (Cal. Ct. App. 1976) (lender not entitled to have its loan agreement construed against the bank because it was sophisticated and the contract at issue was not one of adhesion—one offered on a take-it-or-leave-it basis).

California Civil Code § 1654 states, "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Here, that party is Plaintiffs' side.

Plaintiffs should also be barred from referencing any possible mistake or fraud in connection with the placement of the Policy. While Plaintiffs have argued the Policy does not reflect their true intent, Plaintiffs have never alleged mistake or fraud and have not even tried to meet the Rule 9 requirements to plead with particularity. *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1243

Freeman Mathis & Gary, LLP
Attorneys at Law

(Cal. Ct. App. 2013) ("Mistake must be pleaded with some particularity so that there is a clear recitation of facts showing how, when and why the mistake occurred."). *See, e.g.*, Fed R. Civ. Proc. 9.

Additionally, a party's subjective intent is not relevant. *Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954, 965 (2010); *see also Netlist*, 2015 U.S. Dist. LEXIS 29325 at *12 (citing *Winet v. Price*, 4 Cal. App. 4th 1159, 1165-67 (1992) (testimony that is offered purely to establish one party's unexpressed subjective understanding of a term's meaning is inadmissible for purposes of contract interpretation)); *Atlas Assur. Co. v. McCombs Corp.*, 146 Cal. App. 3d 135, 144 (1983) ("An ambiguity cannot be based on a strained and grammatically incorrect reading of the policy's terms."); *Korn v. State Farm Ins. Co.*, 2013 U.S. Dist. LEXIS 117297, *8 (E.D. Cal. Aug. 16, 2013).

Under California law, "receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and he [or she] cannot thereafter complain that he [or she] did not read it or know its terms. It is a duty of the insured to read his [or her] policy." *Hadland v. NN Inv'rs Life Ins. Co.*, 24 Cal. App. 4th 1578, 1586 (1994) (quoting *Aetna Cas. & Surety Co. v. Richmond*, 76 Cal. App. 3d 645, 652 (1977). "A reasonable person will read the coverage provisions of an insurance policy to ascertain the scope of what is covered." *Id.*

The matters at issue in this Motion in Limine have nothing to do with the issues being tried. ASIC respectfully requests that the Court enter an Order barring any reference, evidence, or argument concerning them.

# PLAINTIFFS' OPPOSITION

## I. INTRODUCTION

Defendant's motion in limine is noteworthy for what it discloses: Defendant fully intends put before the jury issues already decided by this Court and the Ninth Circuit as a matter of law. Plaintiffs are not interested in relitigating before the jury issues of contract interpretation and construction because those issues have been decided already. The Ninth Circuit and this Court have ruled that Plaintiffs are entitled to coverage under the Policy as a matter of law. *Universal Cable Prods., LLC v. Atl. Specialty Ins. Co.*, 929 F.3d 1143, 1153, 1162 (9th Cir. 2019); Dkt. 157 at 1. As to that portion of its motion, Defendant's request is moot as it would not be proper for any party to present evidence related to how to construe terms that already have been construed as a matter of law.

However, Plaintiffs are entitled to present evidence to the jury that bears on the actual subject of this trial: bad faith and damages. Specifically, the "drafting, negotiation, underwriting, pricing, renewal/nonrenewal, and other circumstances of the placement of the Policy," Def.'s Mtn. at 4, are relevant to Defendant's understanding and notice of the Policy's meaning, which is relevant to whether Defendant denied the claim in bad faith. Defendant's financial condition, including loss ratios, nonrenewal of Plaintiffs' Policy, and whether Defendant made or lost money on Plaintiffs' or other client's accounts, are probative of bad faith and punitive damages because they are relevant to Defendant's motive. Defendant's financial documents are further relevant to punitive damages because the jury is entitled to decide the amount of damages that would deter Defendants from denying claims in this manner in the future.[1]

---

[1] Plaintiffs object to the number of motions in limine Defendant served on Plaintiffs. Defendant served Plaintiffs with nine motions in limine on January 6, 2010, many with multiple unrelated subarguments, despite Plaintiffs having told Defendant both in writing and orally that this number was excessive. After the Court's order, Dkt. 186, Defendant withdrew some of its motions.

Freeman Mathis & Gary, LLP
Attorneys at Law

## II. PLAINTIFFS' ARGUMENT

### A. Defendant's motion regarding construction of the contract is moot because no party should be presenting evidence on this already decided issue.

By their motion in limine above, Defendant makes clear it intends to try whether war exclusions 3 and 4 preclude coverage. This Court's order granted summary judgment to Plaintiffs on these issues in no uncertain terms, and Defendant cannot revisit them. *See* Dkt. 157. The Court's January 10 Order explicitly warned that motions in limine should not be disguised motions for reconsideration. Dkt. 186 at 2.

Defendant's motion makes obvious that Defendant wants to present evidence to the jury that the policy should be construed against Plaintiffs. This is contrary to the law of the case. Neither should be presenting any evidence about how to construe the contract. ***The Ninth Circuit held that neither Defendant nor Plaintiffs are entitled to a presumption in favor of their respective interpretations of the Policy.*** *Universal Cable Prods*, 929 F.3d at 1153 ("[W]e decline to apply contra proferentem in favor of Universal's interpretation. We also decline to apply contra proferentem in favor of Atlantic."). That holding is law of the case. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("[A] court is generally precluded from reconsidering an issue that has already been decided by … a higher court in the identical case." (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)).

### B. The Drafting, Negotiation, Underwriting, Pricing, Renewal or Nonrenewal, and Other Circumstances of the Placement of the Policy are Relevant to Bad Faith and Damages

The "drafting, negotiation, underwriting, pricing, renewal/nonrenewal, and other circumstances of the placement of the Policy," Def.'s Mtn. at 4, are probative of the parties "actual or constructive notice of the customary usage" of the war exclusions, *see Universal Cable Prods.*, 929 F.3d at 1154 ("If any party is not engaged in the trade, the party offering customary usage must show the parties had actual or constructive notice of the customary usage."). The Ninth Circuit held that Universal

"is not in the insurance trade" and proceeded to hold that Plaintiffs met their burden of demonstrating that the "parties had actual or constructive notice of the customary usage" of war exclusions 1 and 2. In so holding, ***the Ninth Circuit cited the very kind of evidence Defendant seeks to exclude***. *See id.* (discussing, for example, "the December 2013 emails about the policy's coverage in Israel").

The December 2013 emails include Plaintiffs' request, through its broker Aon, that *Dig* be added as an Insured Production under the Policy and Defendant's subsequent approval. *See, e.g.*, Bonn Decl. Ex. 19 (PX GARBER 9 - AONNBCU0001494). Correspondence from this time shows that Defendant considered the relevant security risks and nonetheless decided to add *Dig* as an Insured Production. For example:

- "… I had a discussion with our production package (cast insurance) insurer, OneBeacon, regarding issues they may have with the project entitled 'Dig', potentially working in Israel. Their key concern is the civil authority shut-down risk and their key geographic concern is Jerusalem. Although everything is subject to providing complete information to them, the underwriters are not focusing on an additional premium charge but may impose a sub-limit that would cap the amount the production could collect if a civil authority shut-down occurred." Bonn Decl. Ex. 20 (PX FORD 294) at UCP_003150 (12/6/13 email from Andrea Garber of Aon to Kurt Ford, Randi Richmond, and Curt Williams of NBCUniversal). Defendant did not object to this exhibit. Dkt. 172 at 112.
- "Attached is the application/declaration for Season 1 of a new straight-to-series production entitled 'Dig'…. The NBCU Security team is already involved in the prepping of this project and they are meeting weekly with the production folks that are currently on board to discuss precautions and procedures that need to be to ken as the project develops…. I have been

advised that the mayor of Jerusalem and the local police have been contacted and are assisting in assuring the safety of the production company when they are working in Jerusalem." Bonn Decl. Ex. 19 (PX GARBER 9) at AONNBCU0001495-96 (12/11/13 email from Andrea Garber of Aon to Bernadette Milinovic and Wanda Phillips of OneBeacon). Defendant did not object to this exhibit. Dkt. 172 at 41.

- "I spoke today with our underwriter and she has advised that she will not be imposing any additional premium or additional coverage terms on 'Dig' relating to the work in Israel. The primary reason for this is our insurer's confidence in the safety and security measures that will be taken during the production. Our underwriter did stress that Jerusalem is a fluctuating environment and that she would like periodic updates on production's activities leading up to and during principal photography." Bonn Decl. Ex. 21 (PX GARBER 11) at AONNBCU0001558 (12/13/13 email from Andrea Garber of Aon to Randi Richmond and Mark Binke of NBCUniversal). Defendant did not object to this exhibit. Dkt. 172 at 43.
- "You advised that you are not inclined to charge additional premium beyond our standard rate and are similarly not inclined to place coverage limits beyond our standard terms on this production at this time. Regarding the work in Jerusalem, you would like to be kept advised of what production is doing and what ongoing precautions are being taken to insure the safety of cast, crew and property. You do not have heightened concerns about the production working in Tel Aviv." Bonn Decl. Ex. 22 (PX PHILLIPS 424) at AONNBCU0001747 (12/13/13 email from Andrea Garber of Aon to Wanda Phillips of OneBeacon).

The "drafting, negotiation, underwriting, pricing, renewal/nonrenewal, and other circumstances of the placement of the Policy," Def.'s Mtn. at 4, are all relevant

Freeman Mathis & Gary, LLP
Attorneys at Law

to Plaintiffs' bad faith claim and damages under California law. Such documents are relevant to the parties' "actual or constructive notice of the customary usage" of the war exclusions, as discussed above. *See Universal Cable Prods.*, 929 F.3d at 1154. The reasonable expectations of the parties ***at the time of contracting***, including those that "the breaching party should have known," are also relevant to Plaintiffs' damages. *Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 469 (2007) (explaining that recoverable damages "are those that could fairly and reasonably be seen as arising naturally from a breach. This includes those that should have been reasonably contemplated or foreseen in light of all of the known facts or facts that the breaching party should have known, at the time of contracting." (Citation omitted) (discussing Cal. Civ. Code § 3300)); *cf. Universal Cable Prods.*, 929 F.3d at 1154 (discussing Universal's reasonable expectations).

In *Archdale*, the California Court of Appeals explained that an insurer can be liable in excess of its policy limits if the insurer has breached implied covenant of good faith and fair dealing if those damages were a reasonably foreseeable result of its breach. *Archdale*, 154 Cal. App. 4th at 469-70 (discussing failure to accept settlement offer within policy limits in third-party insurance dispute). Therefore, Defendant is liable for the damages "which, in the ordinary course of things, would be likely to result" from its breach of the Policy if Plaintiffs succeed on their bad faith claim. Cal. Civ. Code § 3300. The reasonable expectation of the parties at the time of contracting is relevant to determining what "would be likely to result" from Defendant's breach. *Id.* This includes the negotiation and drafting process, Defendant's underwriting of the Policy and related guidelines, the premium Defendant charged for the Policy, and Defendant's decision to renew or not renew the Policy. All of these facts are probative of what Defendant "reasonably contemplated or fore[saw] in light of all of the known facts or facts [Defendant] should have known[] at the time of contracting." *Archdale*, 154 Cal. App. 4th at 469.

The drafting of the policy is particularly relevant to these issues. Plaintiffs

intend to show that the parties bargained for the Policy to provide coverage in the event of terrorist incidents such as Hamas' attacks on Israel in 2014. The give and take of the drafting and negotiation process are highly probative of the parties' respective understandings of and, accordingly, "notice of the customary usage" of the war exclusions, including that they did not bar coverage for terrorist acts.

Defendant also complains that Plaintiffs have not plead fraud with particularity per Federal Rule of Civil Procedure 9(b). This argument comes years too late. Defendants chose to answer Plaintiffs' Amended Complaint rather than moving to dismiss. *See* Dkt. 14.

**C. Defendant's Finances – including Loss Ratios, Nonrenewal of Plaintiffs' Policy, and Whether Defendant Made or Lost Money on Plaintiffs' or Other Client's Accounts – are Probative of Bad Faith and Punitive Damages**

An insurer's financial condition is relevant to its motive for denying an insured's claim. *Hangarter v. Paul Revere Life Ins. Co.*, 236 F. Supp. 2d 1069, 1095 (N.D. Cal. 2002), *aff'd in part, rev'd in part on other grounds sub nom. Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998 (9th Cir. 2004) ("Defendants' financial condition and claims handling practices were relevant to their motive for terminating claims like Plaintiff's. …. [S]uch evidence is not to be excluded on the basis of prejudice when the information is relevant to liability." (Applying California law)). Defendant's motive for denying the *Dig* claim is relevant to Plaintiffs' bad faith and punitive damages claims. That Defendant lost money on Plaintiffs' policy and other entertainment polices and accordingly decided to shrink its entertainment business and not renew Plaintiffs' policy provide insight into Defendant's state of mind. A jury could infer that (1) Defendant was less motivated to be fair to a client it was not worried about retaining and (2) Defendant was motivated to stop the bleeding in its entertainment division.

A defendant's motivation for breaching a contract is particularly relevant to punitive damages. *See Taylor v. Superior Court*, 24 Cal. 3d 890, 895 (1979) (calling

Freeman Mathis & Gary, LLP
Attorneys at Law

"the demand for evil motive" the "central spirit of the exemplary damage statute"). For example, "a conscious and callous disregard of public safety in order to maximize corporate profits" can support a punitive damages award. *Grimshaw v. Ford Motor Co.*, 119 Cal. App. 3d 757, 819 (Ct. App. 1981), *disapproved of on other grounds by Kim v. Toyota Motor Corp.*, 6 Cal. 5th 21, 424 P.3d 290 (2018). Defendant's financial condition is further relevant to the appropriate amount punitive damages. *See Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 960 (2006*), as modified on denial of reh'g* (June 16, 2006); *Mike Davidov Co. v. Issod*, 78 Cal. App. 4th 597, 607 (2000).

Defendant's conduct in drafting the Policy is similarly relevant to punitive damages. A jury could find Defendant's subsequent denial of the *Dig* claim and later litigation position regarding the war exclusions reprehensible given that the parties bargained for the very coverage Plaintiffs seek and have now won as a matter of law.

## **III. CONCLUSION**

Defendant's motion should be denied in its entirety. It presents no valid reason to relitigate issues already decided by this Court and the Ninth Circuit. The litany of topics Defendant seeks to exclude in this motion are directly relevant to Defendant's bad faith denial of the *Dig* claim and the punitive damages Defendant owes as a result.[2]

[2] Defendant also objects to "[a]ny testimony of George Walden or any other witness not identified on Plaintiffs' initial disclosures." Def.'s Mtn at 3. It is unclear how this statement fits into Defendant's other arguments combined into this motion in limine. As such, Plaintiffs object to both the overall number of motions in limine Defendant served and further object to Defendant's attempt to shoehorn yet an additional issue into this motion.

## ASIC'S REPLY

California applies an objective test to evaluate the question of whether the insurer's claim decision was "unreasonable" when the insurer alleges a genuine dispute as to coverage. Evidence concerning ASIC's subjective state of mind is irrelevant and, therefore, inadmissible. Moreover, Plaintiffs' acknowledgment that they plan to induce the jury to make improper inferences of bad faith based on unrelated evidence necessitates excluding the evidence on prejudice grounds.

Parol evidence is not admissible because the policy language at issue is not ambiguous. Even if it were admissible, interpretation of the policy is the province of the court and such evidence may not be admitted in a jury trial.

### I. Plaintiffs' argument that extrinsic evidence may be admitted to demonstrate the "reasonable expectations" of the parties fails.

Plaintiffs' contention that extrinsic evidence may be admitted to demonstrate the reasonable expectations of the parties with respect to <u>damages</u> is an improper attempt to get in the backdoor what they cannot prove through their damages expert. Plaintiffs need to prove their damages as an element of their claim, including the definition of "loss" under the Policy. The parties' reasonable expectations regarding damages or anything else regarding the Policy are irrelevant, because the Policy is not ambiguous.

### II. Plaintiffs' argument that extrinsic evidence may be admitted to demonstrate ASIC's "motive" also fails.

Subjective factors, such as knowledge, intent, motive, or state of mind, are irrelevant in the context of a coverage dispute in which the only issue is whether the insurers' application of the policy to facts was reasonable, even if wrong. "The genuine dispute doctrine holds that an insurer does not act in bad faith when it mistakenly withholds policy benefits, if the mistake is reasonable or is based on a legitimate dispute as to the insurer's liability." *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1110 (N.D. Ca. 2006) (internal quotations and citation omitted).

Citing California law, *Bernstein* explained that when the genuine dispute doctrine applies, subjective factors are irrelevant:

> When applicable, [the genuine dispute] doctrine can be used by a carrier to make its subjective state of mind, e.g., the motives and the actual understandings of its adjusters, irrelevant. This follows because the standard for determining whether a dispute is "genuine" under this doctrine is entirely objective. Disposition turns on whether the insurer can establish that, at the time it disputed the claim, and given what it knew or should have known, a carrier, reasoning objectively, could rationally have taken the positions on the issues that the defendant took. Could rational minds, working objectively, come to competing conclusions about whether the disputed claims were payable under the policy? Did the carrier take one of the positions that was rationally accessible by objective reasoning? If the answers to these questions are "yes," and if the genuine dispute doctrine applies, the "subjective intent" of the carriers' decision-makers becomes irrelevant.

*Id*. (citations omitted); *see also Worth Bargain Outlet v. AMCO Ins. Co*., No. 09CV839 DMS, 2010 WL 2898264, at *8 (S.D. Cal. Jul. 21, 2010) (quoting *Bernstein* as follows: "[T]he standard for determining whether a dispute is 'genuine' under this doctrine is entirely objective."); *CalFarms Ins. Co. v. Krusiewicz*, 131 Cal. App. 4th 273, 287 (2005) ("If the conduct of the insurer in denying coverage was objectively reasonable, its subjective intent is irrelevant." (citation omitted)).

The genuine dispute doctrine applies here, and evidence of ASIC's knowledge, intent, or motive in denying the claim is irrelevant and inadmissible.

**III. Plaintiffs fail to demonstrate that financial information is admissible.**

Financial information concerning a party -- including evidence of a party's relative wealth or a party's financial difficulties -- is deemed to be inherently prejudicial. Evidence concerning a party's financial condition has the power to

Freeman Mathis & Gary, LLP
Attorneys at Law

distort a jury's evaluation of other evidence. Therefore, parties seeking to admit such evidence must prove that an exception to the rule applies; otherwise such evidence is presumed to be inadmissible. Because Plaintiffs do not provide a legitimate basis for admitting the evidence, it must be excluded unless or until a jury finds by clear and convincing evidence that ASIC is guilty of fraud, oppression, or malice. *See* California Civil Code § 3295(d) ("The court shall, on application of any defendant, preclude the admission of evidence of that defendant's profits or financial condition until after the trier of fact returns a verdict for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud[.]")

Plaintiffs' citations stand for the proposition that financial information becomes admissible only <u>after</u> a finding of punitive damages. *Century Surety Co. v. Polisso*, 139 Cal. App. 4th 922, 961 (2006) (holding that evidence of the insurer's financial condition was properly admitted "in the second phase of trial" after a finding of punitive damages and citing to California Civil Code § 3295); *Mike Davidov Co. v. Issod*, 78 Cal. App. 4th 597, 609 (2000) ("We see no problem with a trial court, in its discretion, ordering a defendant to produce evidence of his or her financial condition following a determination of the defendant's liability for punitive damages . . . If anything, this method serves the purpose behind section 3295, to wit, to protect against premature disclosure of the defendant's financial condition.").

Federal courts in this circuit exclude financial information under California Civil Code § 3295(d) and routinely bifurcate damages and liability issues at trial to avoid unfair prejudice. For example, this Court in *Sturm v. Davlyn Investments, Inc.*, No. CV 12–7305–DMG (AGRx), 2013 WL 8604661, at *6 (C.D. Cal. Nov. 6, 2013), granted a motion *in limine* to exclude evidence of financial condition and cited California Civil Code § 3295(d) in support of its decision. "Evidence of Defendants' financial condition is irrelevant to liability for punitive damages and would be unfairly prejudicial at the liability phase." *Id.*

"Courts within the Ninth Circuit often have bifurcated liability from damages

Freeman Mathis & Gary, LLP
Attorneys at Law

and Rule 42(b) gives courts the authority to separate trials into liability and damages phases." *E.E.O.C. v. Kovacevich "5" Farms*, No. 1:06-cv-00165 OWW TAG, 2006 WL 2687000, at *1 (E.D. Ca. September 19, 2006) (citations omitted). In *Chavarria v. Management & Training Corp.*, No. 16-cv-00617-H-RBB, 2018 WL 9538773, at *2 (S.D. Ca. Jan. 22, 2018), the court granted a motion in limine "to bifurcate the trial and prohibit evidence of or reference to Defendant's financial condition until any punitive damages phase."

The other cases cited by Plaintiffs do not support their position. *Taylor v. Superior Ct.*, 24 Cal. 3d 890 (1979) merely held that punitive damages may be appropriate for drunk driving and has no applicability here.

*Hangarter v. Paul Revere Life Ins. Co.*, 236 F. Supp. 2d 1069 (N.D. Cal. 2002), *aff'd in part, rev'd in part on other grounds sub nom. Hangarter v. Provident Life & Acc. Ins. Co*, 373 F. 3d 998 (9th Cir. 2004) held that the genuine dispute doctrine did not apply, which is why extrinsic evidence was allowed to be admitted in that case. *Id*. at 1086.

Admitting evidence of ASIC's financial information – including its wealth or financial difficulties – would inject prejudicial information that cannot be cured with a limiting instruction.

ASIC respectfully requests the Court grant its Motion in Limine No. 2.

DATED: January 17, 2020

MARC J. SHRAKE
FREEMAN MATHIS & GARY, LLP
-and-
CHRISTOPHER W. MARTIN *(Pro Hac Vice)*
MELINDA R. BURKE *(Pro Hac Vice)*
WILLIAM E. McMICHAEL *(Pro Hac Vice)*
MARTIN, DISIERE, JEFFERSON & WISDOM LLP

By: /s/ Christopher W. Martin
Attorneys for Defendant ATLANTIC SPECIALTY INSURANCE COMPANY

**DECLARATION OF MARC J. SHRAKE**

I, Marc J. Shrake, declare as follows:

1. I am an attorney authorized to practice before all California courts and before this Court and am a partner with the law firm of Freeman Mathis & Gary, LLP, attorneys for Defendant Atlantic Specialty Insurance Company.

2. I have personal knowledge of the matters set forth in this Declaration, and if called upon to testify to them, could and would do so.

3. I make this Declaration in conjunction with, and in support of, Atlantic Specialty's Motion in Limine No. 2.

4. Counsel for ASIC has discussed the matters raising Motion in Limine No. 2 with counsel for Plaintiffs, and counsel for Plaintiffs has indicated that these matters will be mentioned or displayed in the presence of the jury before they are admitted in evidence.

I declare under penalty of perjury of the laws of the United States of America and the laws of the State of California that the foregoing is true and correct and that this declaration is executed this 17th day of January 2020 at Los Angeles, California.

DATED: January 17, 2019 MARC J. SHRAKE

By: */s/ Marc J. Shrake*
Marc J. Shrake

Freeman Mathis & Gary, LLP
Attorneys at Law