CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

UNIVERSAL CABLE PRODUCTIONS        )
LLC, a Delaware limited            )
liability company; and             )
NORTHERN ENTERTAINMENT             )
PRODUCTIONS LLC, a Delaware        )
limited liability company,         )
                                   )
            Plaintiffs,            )
                                   ) Case No.
      vs.                          ) 2:16-cv-04435-PA-MRW
                                   )
ATLANTIC SPECIALTY INSURANCE       )
COMPANY, a New York insurance)
company,                           )
                                   )
            Defendant.             )
                                   )

CONFIDENTIAL - ATTORNEYS' EYES ONLY
DEPOSITION OF ROBERT WUNDERLICH, PH.D.
Los Angeles, California
Monday, May 15, 2017
Volume I

Reported by:
LORI SCINTA, RPR
CSR No. 4811
Job No. 2615838

Veritext Legal Solutions
800-567-8658   973-410-4040

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 2

```
            UNITED STATES DISTRICT COURT
           CENTRAL DISTRICT OF CALIFORNIA
                  WESTERN DIVISION

  UNIVERSAL CABLE PRODUCTIONS )
  LLC, a Delaware limited     )
  liability company; and      )
  NORTHERN ENTERTAINMENT      )
  PRODUCTIONS LLC, a Delaware )
  limited liability company,  )
                              )
           Plaintiffs,         )
      vs.                      ) Case No.
                              ) 2:16-cv-04435-PA-MRW
  ATLANTIC SPECIALTY INSURANCE )
  COMPANY, a New York insurance)
  company,                     )
                              )
           Defendant.          )
  _____)

         CONFIDENTIAL - ATTORNEYS' EYES ONLY
     Deposition of ROBERT WUNDERLICH, PH.D.,
  Volume I, taken on behalf of Defendant, at
  11377 West Olympic Boulevard, Suite 800, Los Angeles,
  California, beginning at 10:07 A.M. and ending at
  7:06 P.M. on Monday, May 15, 2017, before LORI SCINTA,
  RPR, Certified Shorthand Reporter No. 4811.
```

Page 3

APPEARANCES:

For Plaintiffs:
 MITCHELL SILBERBERG & KNUPP LLP
 BY: DANIEL M. HAYES
 Attorney at Law
 11377 West Olympic Boulevard
 6th Floor
 Los Angeles, California 90064
 310.312.3250
 Email: dmh@msk.com

For Defendant:
 STRASBURGER & PRICE, LLP
 BY: TONI SCOTT REED
 Attorney at Law
 901 Main Street
 Suite 6000
 Dallas, Texas 75202-3794
 214.651.4718
 Email: toni.reed@strasburger.com

Page 4

INDEX

EXAMINATION

WITNESS
ROBERT WUNDERLICH, PH.D.
 Volume I
                                    BY MS. REED    11

EXHIBITS

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 257 | Notice duces tecum | 12 |
| Exhibit 258 | Deponent's expert report dated March 17, 2017 | 155 |
| Exhibit 259 | Document entitled, "Summary of Claim for Extra Expenses" | 197 |
| Exhibit 260 | Document entitled, "Extra Expenses - New Mexico Prep" | 197 |
| Exhibit 261 | Document entitled, "Extra Expenses - New Mexico Wrap" | 198 |

Page 5

INDEX (Continued):

EXHIBITS

| NUMBER | | PAGE |
|---|---|---|
| Exhibit 262 | Document entitled, "Extra Expenses - New Mexico All Series" | 198 |
| Exhibit 263 | Document entitled, "Extra Expenses - New Mexico Compensation" | 198 |
| Exhibit 264 | Document entitled, "Summary of Extra Expenses - Croatia" | 199 |
| Exhibit 265 | Document entitled, "Extra Expenses - Croatia Prep, Wrap & All Series and Extra Compensation" | 199 |
| Exhibit 266 | Document entitled, "Croatia Shoot Expenses" | 199 |
| Exhibit 267 | Document entitled, "Croatia - Daily Shoot Budget" | 200 |

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 46

1  in that regard?
2     A    That we did speak about and I did have
3  accounting documents relating to expenses within those
4  three categories, prep, wrap, and all series, where
5  particular expenses were not duplicative because they
6  had not been -- yet been incurred in Israel.
7          And in the prep category, there were none of
8  those that were identified.
9          In the wrap and all series category, there were
10 expenses that were identified as being nonduplicative,
11 and these were expenses that were identified by
12 Ms. Markus.
13    Q    And my question to you, sir, is:  What
14 specifically did Ms. Markus tell you that you relied
15 upon as your assumption that there were no duplications?
16    A    It would be the accounting documents that we
17 talked about and that were provided to me that would
18 show a variety of exclusions, a variety of line-item
19 expenses that should be removed because they did not
20 reflect duplicative expenses.
21    Q    So were you relying on Ms. Markus's description
22 to you that there was no overlap?
23         MR. HAYES:  Objection.  Vague, lacks
24 foundation.
25         THE WITNESS:  I think it's a fair statement

Page 47

1  that it's the specific items that should be excluded
2  because they did not involve duplicative expenses.  I
3  think it's a fair statement that I was relying on
4  Ms. Markus for that.
5  BY MS. REED:
6     Q    Because it is accurate, isn't it, sir, that you
7  did not, yourself, make an accounting analysis of what
8  was expended in Israel for prep against your
9  calculations that you made and included as extra
10 expenses?
11         MR. HAYES:  Objection.  Vague, lacks
12 foundation.
13         THE WITNESS:  Well, I have to differ with the
14 characterization of your question because my calculation
15 is not based on a subtraction of expenses in Israel
16 versus expenses incurred someplace else.
17         My analysis is based on the compilation of
18 expenses in a category -- in categories which were
19 duplicative categories.  The categories of prep, wrap,
20 and all series.
21         And so what I was doing was compiling the
22 expenses that were incurred in Croatia and New Mexico in
23 those categories.  Those were the categories that I
24 understood, based on my discussions, to be duplicative
25 categories.  And in certain instances, not one hundred

Page 48

1  percent of them were duplicative because the
2  corresponding expenses had not yet been incurred in
3  Israel.  But I was not doing a line-item-by-line-item
4  comparison and the subtraction.
5  BY MS. REED:
6     Q    In the answer you just gave me, let me have you
7  focus on prep, please, sir.
8          You said that you had an understanding that
9  they were duplicative.
10         Is it correct that your understanding was based
11 upon what Ms. Markus told you?
12         MR. HAYES:  Objection.  Vague, lacks
13 foundation.
14         THE WITNESS:  Yes.  I think that there were no
15 exceptions that should be removed as based on
16 information I received from Ms. Markus.
17 BY MS. REED:
18    Q    And my earlier question to you was not focused
19 on subtraction at all.  It was focused on actual
20 expenditures.  So let me restate that question.
21         Is it correct that you did not make any
22 analysis of the amounts expended in Israel for prep by
23 individual items and compare that to what you included
24 for prep as duplicative in your analysis?
25         MR. HAYES:  Objection.  Vague, lacks

Page 49

1  foundation.
2          THE WITNESS:  Well, by subtraction I was
3  referring to something similar as in your question,
4  compare.
5          I did not do a line-item-by-line-item
6  comparison.
7  BY MS. REED:
8     Q    Have you told me everything you can recall that
9  you discussed directly with Ms. Markus on the subject of
10 prep?
11         MR. HAYES:  Objection.  Vague, lacks
12 foundation.
13         THE WITNESS:  Let me just think for a moment.
14 I mean, in general, yes, we spoke about prep
15 occurring in Israel.  We spoke about the necessity of
16 prep in Croatia and New Mexico.  We spoke about the
17 general category of what prep expenses means.
18         We spoke about how I would be able to identify
19 prep expenses from the ledgers, the particular codes
20 that identify something as a prep expense.  I mean,
21 those are the things that I remember.
22 BY MS. REED:
23    Q    What's the code for prep?
24    A    It's in my report.  It's not in my memory.
25    Q    I wondered if that number stuck with you.  It

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 74

1  savings, for the filming of Episodes 2 through 6.
2  BY MS. REED:
3    Q   Now, Mr. Wunderlich, my question to you was:
4  Did you analyze the definition of "Extra Expense" under
5  the policy?
6    A   I read it, yes.
7    Q   All right. Did you form an understanding about
8  its mathematical significance?
9        MR. HAYES: Objection. Vague, lacks
10 foundation.
11       THE WITNESS: Based on my lay understanding, I
12 think what I did is consistent with it.
13 BY MS. REED:
14   Q   So let me have you assume a situation where DIG
15 was not completed in Israel. It was moved to an
16 alternative location and the alternative location cost
17 half of what NBCUniversal expected to spend in Israel.
18       Under that circumstance, are you opining to the
19 court that there would be extra expense?
20       MR. HAYES: Objection. Vague, lacks
21 foundation, incomplete hypothetical.
22       THE WITNESS: Actually, I think that's a good
23 example because, let's say, the production was completed
24 in someplace like Bakersfield. Probably would be
25 cheaper to film in Bakersfield, but it would not be the

Page 75

1  same show.
2        And so I do not think NBC could have filmed the
3  show in Bakersfield from the very beginning.
4        I'm picking on Bakersfield. I'm trying to pick
5  some place that would be cheaper to film. But
6  NBCUniversal would be aware that there would be cheaper
7  locations. That's not what they wanted to do for DIG.
8  For their creative decisions, which I'm not going to
9  offer an opinion on, but for their decision making, they
10 did decide to film in Israel. This was a production
11 that was insured with people knowing that it was going
12 to be filmed in Israel.
13       And so if it had been moved to Bakersfield and
14 if it had been cheaper in Bakersfield, I don't think
15 that would be a fair offset.
16       That is why I looked at the extra expenses, in
17 terms of the duplicative categories. And that is why I
18 did my analysis the way that I did.
19 BY MS. REED:
20   Q   So your financial analysis that you have
21 performed relies upon your determination that extra
22 doesn't mean something mathematical?
23       MR. HAYES: Objection. Vague, lacks
24 foundation, ambiguous.
25       THE WITNESS: It does mean something extra.

Page 76

1  It's the extra expenses for those categories of
2  duplicative services.
3  BY MS. REED:
4    Q   Now, my question to you was: Is your analysis
5  in this case about extra expenses depending -- dependent
6  upon your position that "extra," as used in the policy,
7  does not have a mathematical implication?
8        MR. HAYES: Objection. Vague, lacks
9  foundation, ambiguous.
10       THE WITNESS: I did use math. I don't really
11 understand your question.
12       I certainly used math and I calculated the
13 extra expenses in the categories that I laid out.
14 BY MS. REED:
15   Q   And extra, to you, has no requirements that
16 there be deductions for savings?
17       MR. HAYES: Objection. Vague, lacks
18 foundation.
19       THE WITNESS: In this instance, because the
20 show was intended to be filmed in Israel, Universal had
21 picked Israel as its location, that television shows are
22 not fungible, that Universal is a sophisticated party
23 that would have known that there were potentially
24 cheaper places to film, and, yet, they had selected
25 Israel anyway.

Page 77

1        I don't think that that is the relevant way of
2  looking at the extra expenses. And I felt that the way
3  to look at extra expenses would be to look at what had
4  to be redone.
5  BY MS. REED:
6    Q   Now --
7    A   That there was variety of services, the three
8  categories we've spoken about, prep, wrap, and all
9  series. Those services were performed in Israel and
10 expenses associated with those things were incurred in
11 Israel, and then those things had to be redone someplace
12 else.
13       If the production had stayed in Israel, that
14 second or third time expenses in those categories were
15 incurred would not have happened, and that is what I
16 have compiled as the extra expenses.
17   Q   What accounting principle are you relying on
18 for the interpretation of extra expenses that you're
19 applying?
20       MR. HAYES: Objection. Vague, lacks
21 foundation.
22       THE WITNESS: This is a -- it's compiling the
23 incremental expenses associated with prep, wrap, and all
24 series.
25 BY MS. REED:

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 366

I, ROBERT WUNDERLICH, PH.D., do hereby declare under penalty of perjury that I have read the foregoing transcript; that I have made any corrections as appear noted, in ink, initialed by me, or attached hereto; that my testimony as contained herein, as corrected, is true and correct.

EXECUTED this _____ day of _____, 20___, at _____, _____.
 (City)          (State)

_____
ROBERT WUNDERLICH, PH.D.
Volume I

Page 367

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated:

_Lori Scinta_
LORI SCINTA, RPR
CSR No. 4811

Page 368

Veritext Legal Solutions
290 W. Mt. Pleasant Ave. - Suite 2260
Livingston, New Jersey 07039
Toll Free: 800-567-8658  Fax: 973-629-1287

May 19, 2017

To: DANIEL M. HAYES, ESQ.

Case Name: Universal Cable v. Atlantic Specialty

Veritext Reference Number: 2615828

Witness: Robert Wunderlich, Ph.D.    Deposition Date: 5/15/2017

Dear Sir/Madam:

Enclosed is the original transcript with signature page and errata sheet. Please have the witness read and sign the enclosed transcript per the instructions at the deposition.

Should you need any assistance, please contact our office.

Sincerely,
Production Department

Encl.
Cc: TONI SCOTT REED

Page 369

CASE NAME: Universal Cable v. Atlantic Specialty
ASSIGNMENT NO.: 2615828
ASSIGNMENT DATE: 5/15/2017

INSTRUCTIONS FOR READING/CORRECTING YOUR DEPOSITION

To assist you in making corrections to your deposition testimony, please follow the directions below. If additional pages are necessary, please furnish them and attach the pages to the back of the errata sheet.

This is the final version of your deposition transcript.

Please read it carefully. If you find any errors or changes you wish to make, insert the corrections on the errata sheet beside the page and line numbers.

Do NOT make any changes directly on the transcript.

Do NOT change any of the questions.

After completing your review, please sign the last page of the errata sheet, above the designated "Signature" line.