KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | Case No.: 2:16-cv-4435-PA-MRW<br><br>The Honorable Percy Anderson<br>Dept. 9A<br><br>**JOINT MOTION IN LIMINE NO. 1: PLAINTFFS' MOTION TO BAR EVIDENCE AND ARGUMENT ABOUT THE COURT'S FIRST SUMMARY JUDGMENT ORDER**<br><br>Hearing Date: February 10, 2020,<br>Time: 1:30 p.m.<br>Pretrial Conference: January 17, 2020<br>Place: Courtroom 9A<br>Trial Date: February 18, 2020 |

**PLAINTIFFS' MOTION IN LIMINE NO. 1:**

## I.   INTRODUCTION

Plaintiffs Universal Cable Productions LLC and Northern Entertainment Productions LLC ("Plaintiffs") move to preclude Defendant Atlantic Specialty Insurance Co. ("Atlantic" or "Defendant") from introducing or in any way referencing this Court's summary judgment order dated October 6, 2017.  *See* Dkt. 128 (the "Order" or the "First Summary Judgment Order").[1]

The Order entered summary judgment in favor of Atlantic on Exclusion 1 for "war" and Exclusion 2 for "warlike action by a military force." *Id.* In doing so, it concluded that (1) there was no evidence that the parties had a "technical" definition of these terms "in mind" when they negotiated the Policy and (2) therefore, "plain and ordinary" meaning applied. *Id.* at 7, 9-10. On July 12, 2019, the Ninth Circuit reversed the Order, directing summary judgment for Plaintiffs on Exclusions 1 and 2 and vacating the Court's entry of summary judgment on bad faith. *Universal Cable Prods., LLC v. Atl. Specialty Ins. Co.*, 929 F.3d 1143, 1162 (9th Cir. 2019). Specifically, the Ninth Circuit held that:

- Under California law, "parties are presumed to contract pursuant to fixed and established usage and custom of the trade or industry";

- There was "unrebutted expert evidence demonstrating the customary usage" of these terms "in the insurance context," including "Atlantic's own denial letter"; and

- It was therefore error to hold "that the war exclusions should be understood in their ordinary and plain sense, instead of applying the special meaning of the terms in the insurance context."

*Id.* at 1151, 1154-55 (quotation marks and citations omitted).

Atlantic intends to introduce or reference this Court's First Summary Judgment Order at trial. Presumably, Atlantic intends to argue that its own denial of coverage was reasonable because the Court itself agreed that the claim was properly denied.

---

[1] At today's Pretrial Conference held January 17, 2020, this Court indicated that Defendant would not be permitted to introduce or reference the Court's First Summary Judgment Order.  Plaintiffs file this motion out of an abundance of caution and to preserve the record.

1

1    Any such evidence or argument is wholly improper. It would risk turning this case

2    into a trial about the reasonableness of this Court's now-overturned decision, as opposed

3    to the reasonableness of Defendant's conduct at the time it denied coverage. And once

4    Defendant introduced evidence about this Court's ruling, Plaintiffs would be forced to

5    introduce evidence that the ruling was reversed on appeal. The jury will effectively be led

6    to believe that it is this Court that is on trial, and that any ruling in favor of Plaintiffs would

7    somehow impugn the very judge overseeing the proceedings. Such evidence is highly

8    prejudicial and Plaintiffs effectively have no recourse. The Federal Rules of Evidence

9    themselves provide that the judge may not testify as a witness, precisely for this reason.

10   Fed. R. Evid. 605.

11   Compared to this danger of unfair prejudice, the Order is of little to no relevance to

12   Plaintiffs' bad faith claim. The Order primarily analyzed Exclusions 1 and 2 through the

13   lens of "plain and ordinary" meaning. But Atlantic itself did not rely on this interpretation

14   at the time it denied the claim; instead, it **conceded** that both exclusions required

15   sovereignty. Under California law, "it is essential that no hindsight test be applied," and

16   that the insurer's action is "measured as of the time it was confronted with a factual

17   situation to which it was called upon to respond." *Austero v. Nat'l Cas. Co.*, 84 Cal. App.

18   3d 1, 32 (1978), *overruled on other grounds by Egan v. Mut. of Omaha Ins. Co.*, 24 Cal.

19   3d 809, 820 (1979). To the extent that the Order concluded Hamas constitutes a de facto

20   sovereign, Defendant also did not have the benefit of that Order at the time it denied

21   coverage. And the Ninth Circuit recognized that such a ruling violates the political question

22   doctrine, citing a Supreme Court case that was nearly 100 years old when Defendant denied

23   the *Dig* claim. *Universal Cable Prods.*, 929 F.3d at 1158 (citing *Oetjen v. Cent. Leather*

24   *Co.*, 246 U.S. 297, 302 (1918)).

25   The Order, which was issued in 2017, is of little relevance to whether Defendant

26   acted in good faith in denying the *Dig* claim three years earlier in 2014. Any minimal

27   probative value the overturned-Order may have, is substantially outweighed by the danger

28   of unfair prejudice under Federal Rule of Evidence 403.

## II.   **ARGUMENT**

### A.   **The Order Should be Excluded under FRE 402 and 403.**

#### 1.   **The Order Has Minimal Probative Value, If Any.**

Under Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible."  The Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  The Order's analysis of Exclusion 1 for "war" and Exclusion 2 for "warlike action by a military force" is not relevant to Plaintiffs' bad faith claim.

The Order applied the plain and ordinary meaning of the policy language, which it concluded did not require sovereignty. *See* Dkt. 128 at 7. The Ninth Circuit reversed that decision, holding that (1) it was undisputed that the special meaning in the insurance industry requires sovereignty; and (2) under California law, any such special meaning is presumed to apply. *Universal Cable Prods., LLC*, 929 F.3d at 1155. Moreover, this was not the definition that Atlantic applied at the time of denial. *Id.* ("… Atlantic's denial letters noted that '[w]ar is a course of hostility between states or state-like entities,' and '[t]o constitute a de facto state, a group must have significant attributes of sovereignty.'").

Under California law, in evaluating the evidence to see if there was any "bad faith" conduct by the insurer, "it is essential that no hindsight test be applied," and that the insurer's action is "measured as of the time it was confronted with a factual situation to which it was called upon to respond."  *Austero*, 84 Cal. App. at 32. California insurance regulations require that "[u]pon receiving proof of a claim, every insurer . . . shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part." 10 Cal. Code Regs. § 2695.7(b). "Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall":

> [P]rovide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge. Where an insurer's denial of a first party claim, in whole or in part, is based on a specific statute, applicable law or policy provision, condition or exclusion, the written denial shall include reference thereto and provide an explanation of the application

3

of the statute, applicable law or provision, condition, or exclusion to the claim. *Id.* § 2695.7(b)(1).

Bad faith requires a showing that Defendant's "reason for withholding the benefits" due under the Policy "was unreasonable or without proper cause." *Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 949 (2006), *as modified on denial of reh'g* (June 16, 2006). "To defeat the element of unreasonable denial of benefits," an insurer may invoke the "genuine dispute doctrine." *Id.* "That doctrine holds that an insurer does not act in bad faith when it mistakenly withholds policy benefits, if the mistake is reasonable or is based on a legitimate dispute as to the insurer's liability." *Id.* However, "the reasonableness of the insurer's actions and decision to deny benefits" is evaluated "as of the time they were made rather than with the benefit of hindsight." *Id.*

The California Court of Appeal has held that an insurer may not defend against a bad faith claim based on grounds outside of its denial-of-coverage letter. In *Century Surety Co.*, the insurer argued that "it was reasonable for it to deny coverage based on policy language providing that the coverage of the glass ceased" after installation. *Id.* at 953. However, in denying coverage, the insurer "relied solely on policy language excluding damage caused by flooding and damages associated with defective materials or faulty workmanship," which "grounds were stated in [the insurer's] letter to the Polissos denying coverage . . . ." *Id.* However, the insurer later asserted for the first time in opposition to a motion for summary adjudication that "the glass had been installed when it was damaged and therefore was no longer covered." *Id.*

The Court of Appeal recognized that "the denial of an insurance claim on one ground, absent clear and convincing evidence to suggest otherwise, does not impliedly waive grounds not stated in the denial letter." *Id.* at 953 n.17. "This principle is applied in insurance coverage cases, which are based on contract law, on the theory that the insurer's failure to state a reason should not serve to create coverage for losses not covered in the policy in the absence of an intention to relinquish known rights." *Id.* However, the Court held that this reasoning was ***inapplicable*** in the context of a bad faith claim:

4

1
2
3
4
5

> Assuming Century could have relied on this ground and that it would have become a genuine dispute, in fact no such dispute occurred. The question here is not a coverage question but whether Century acted in bad faith when it failed to pay under the policy. As stated, the reasonableness of the insurer's decision to deny benefits must be evaluated as of the time the decision was made. ***Since Century did not cite permanent installation as a ground for denial of coverage when the claim was tendered, it was never the subject of a genuine dispute between the parties***.

6

*Id.* at 953 (emphasis added).

7
8
9
10
11
12
13
14
15

Thus, the Order's conclusion that the "plain and ordinary meaning" of Exclusions 1-2 does not require sovereignty is irrelevant. That is not the definition Atlantic applied at the time. Instead, its July 28, 2014, letter denying coverage conceded that (1) "War is a course of hostility between states or state-like entities" and (2) "warlike action by a military force" means the "military force of a sovereign nation." Ex. 1 at 6-7. Atlantic did not argue at the time that this definition of sovereignty did not apply under California law, or that the "plain and ordinary" meaning of these exclusions did not require sovereignty. Thus, the Order's contrary conclusion three years later—which has since been reversed—is irrelevant to the question whether Atlantic acted in good faith when it denied coverage.

16
17
18
19
20
21
22
23
24
25
26
27

The Order held in the alternative that Hamas constituted a de facto sovereign. *See* Dkt. 128 at 14. That finding, too, is of minimal probative value. The Court of Appeal reversed that conclusion based, among other things, on the political question doctrine. It did so by relying on a Supreme Court case that was nearly 100 years old when Defendant denied coverage and that held: "Who is the sovereign, de jure or de facto, of a territory is not a judicial, but is a political question, the determination of which by the legislative and executive departments of any government conclusively binds the judges." *Universal*, 929 F.3d at 1158-59 (quoting *Oetjen*, 246 U.S. at 302). The Ninth Circuit also relied on its own precedent that even "in the insurance context," the "Constitution commits to the executive branch alone the authority to recognize, and to withdraw recognition from, foreign regimes." *Id.* at 1159 (quoting *Mingtai Fire & Marine Ins. Co., Ltd. v. United Parcel Serv.*, 177 F.3d 1142, 1145 (9th Cir. 1999)). The Order's contrary conclusion therefore has no

28

probative value—including because Defendant was not and could not have relied on it when denying coverage.

## 2.    The Order Would be Highly and Unfairly Prejudicial.

Any minimal probative value the Order may have, if any, is substantially outweighed by the danger of confusing the issues and unfairly prejudicing the jury under Federal Rule of Evidence 403. "The influence of the trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling." *Quercia v. United States*, 289 U.S. 466, 470 (1933) (internal quotations omitted).  Juries likely assume that a judge has "both authority and expertise with regard to determining the true course of events and to making credibility determinations." *United States v. Sine*, 493 F.3d 1021, 1024 (9th Cir. 2007).

Because of the preeminence of the presiding judge in the eyes of the jury, admitting the Order would be highly prejudicial and would turn the proceedings into a mini-trial on the presiding judge. As the Fourth Circuit explained:

> [T]he admission of a judicial opinion as substantive evidence presents obvious dangers. The most significant possible problem posed by the admission of a judicial opinion is that the jury might be confused as to the proper weight to give such evidence. It is possible that a jury might be confused into believing that the opinion's findings are somehow binding in the case at bar. Put most extremely, ***the jury might assume that the opinion is entitled to as much weight as the trial court's instructions since both emanate from courts***.

*Johnson v. Colt Indus. Operating Corp.*, 797 F.2d 1530, 1534 (10th Cir. 1986) (emphasis added) (holding that admission of court opinion as evidence of appellant's knowledge of accident similar to appellee's was error).

Federal Rule of Evidence 605, which absolutely bars a "presiding judge" from "testify[ing] as a witness at trial," provides analogous reasoning for why the Order would be inherently prejudicial.  As the Advisory Committee Notes explain, practical questions of fairness loom so large that the Committee concluded that the best approach was to bar presiding judges from testifying altogether:

015825\7088589

> Who rules on objections? Who compels him to answer? Can he rule impartially on the weight and admissibility of his own testimony? Can he be impeached or cross-examined effectively? Can he, in a jury trial, avoid conferring his seal of approval on one side in the eyes of the jury?

Fed. R. Evid. 605, advisory committee notes.  The notes further explain the prejudice the opposing party would experience upon objecting to the judge's testimony and then "continuing the trial before a judge likely to feel that his integrity had been attacked by the objector."  *Id.*  Here, it would be highly prejudicial for Plaintiffs to have to challenge the prior findings of the judge presiding over trial.

Similarly, courts frequently exclude prior verdicts from similar or related cases under Rule 403 because "admission of a prior verdict creates the possibility that the jury will defer to the earlier result" instead of reaching its own conclusion.  *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1010 (9th Cir. 2007) (holding that exclusion of verdict reached in similar action brought by different plaintiff did not violate Rule 403), *aff'd* 553 U.S. 591 (2008).  There is a high risk that a jury will "give a prior verdict … more weight than it warrants."  *Ormco Corp. v. Align Tech., Inc.*, 2009 WL 10668458, at *2 (C.D. Cal. May 12, 2009) (quoting *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975)) (excluding prior verdict against different defendant).

To present to the jury the Court's prior Order, to which the jury may well defer, would undermine Plaintiffs' right to have appealed that Order in the first place.  Having prevailed on appeal, Plaintiffs should not now have to relitigate that Order before the jury.  To do so would be an end-run around the appeals process.  Because the Order's highly prejudicial nature substantially outweighs its probative value, the Court should exclude the Order and any reference thereto under Rules 402 and 403.

## B.    The First Summary Judgment Order Would Constitute Impermissible Judicial Testimony.

"The presiding judge may not testify as a witness at the trial."  Fed. R. Evid. 605. The rule is a mandatory one — it does not leave "the matter to the discretion of the judge."

*Id.*, advisory committee notes.  Rule 605 does not apply solely to the judge who takes the witness stand:

> During a trial, a judge, although he or she neither is called to testify as a witness nor voluntarily takes the stand, may nevertheless assume the role of a witness.  Such behavior by a judge is at variance with the policy expressed in the presiding-judge-as-witness prohibition and should be treated analogously to a direct violation of Rule 605.

3 Weinstein's Federal Evidence § 605.07[1] (2019). In *United States v. Blanchard*, 542 F.3d 1133, 1151 (7th Cir. 2008), the Seventh Circuit held that the introduction at trial of the judge's comments at an earlier hearing was erroneous under both Rule 605 and 403 and was not harmless error. In so holding, the court noted "[t]he potentially overpowering influence of the trial judge on the jury" and noted the importance of judges "avoid[ing] the appearance of partiality to either side." *Id.* at 1151, 1154 (internal quotation omitted). Allowing admission of or reference to the Order would violate Rule 605.

## III.  **CONCLUSION**

Plaintiffs respectfully request that the Court exclude the First Summary Judgment Order and any references thereto. To allow otherwise would result in unfair prejudice to Plaintiffs, and this is particularly true given the Order's minimal relevance (if any) to Defendant's good faith (or bad faith) in denying coverage three years earlier.  Permitting Defendants to introduce or reference the Order would further violate the prohibition on testimony of presiding judges.

///
///
///
///
///
///
///

8

1   **<u>ATLANTIC SPECIALTY INSURANCE COMPANY'S OPPOSITION TO</u>**

2   **<u>PLAINTIFFS' MOTION *IN LIMINE* NO. 1</u>**

3   Plaintiffs moved to preclude the Defendant Atlantic Specialty Insurance Company

4   ("ASIC") from introducing or in any way referencing this Court's summary judgment order

5   dated October 6, 2017 on relevance and prejudice grounds. *See* Dkt. 128 ("Order" or "First

6   Summary Judgment Order"); Fed. R. Evid. 401, 402, 403, 605. Specifically, Plaintiffs

7   move to exclude:

8   - The Court's approval of ASIC's interpretation of the War Exclusions in granting

9     summary judgment in favor of ASIC on the breach of contract claim.

10  - The relevance and admissibility of the Court's approval of ASIC's interpretation

11    of the War Exclusions for purposes of the remaining bad faith claim.

12  - The admission of the Court's approval of ASIC interpretation of the War

13    Exclusions to show the reasonableness of ASIC's conclusion based upon the

14    conclusion of a neutral body applying the governing law at the time of the

15    decision and after conducting a plain reading of the terms of the policy.

16  However, evidence of a fact-finder's prior ratification of ASIC's interpretation of

17  the War Exclusions is highly probative of ASIC good faith handling of Plaintiffs' insurance

18  claim. Exclusion of such argument and evidence at trial would preclude the best evidence

19  of the existence of a genuine dispute at the time ASIC denied coverage. Therefore, the

20  Court should deny Plaintiffs' Motion in Limine regarding this point.

21  If the Court excludes evidence of its prior ruling on the War Exclusion, ASIC will

22  be prejudiced by the jury's inability to consider the best evidence of the objective

23  reasonableness of ASIC's good faith claims handling. Furthermore, exclusion of the prior

24  ruling deprives ASIC of any ability to overcome the inevitable prejudice that will result

25  from evidence of (or jury instruction on) the Ninth Circuit's opinion or holding. If the jury

26  learns, whether explicitly or implicitly, of the Ninth Circuit's holdings, then ASIC must be

27  allowed to explain that another Court looked at the same issues and reached a different

28  result. To allow otherwise is fundamentally unfair and will incur substantial prejudice to

9

1   ASIC without any ability to recover.

2   ## ARGUMENT AND AUTHORITY

3   This is an insurance bad faith case. To date, all evidence in this case indicates that

4   ASIC investigated the claim, considered the results of that investigation, and issued a

5   coverage opinion pursuant to Plaintiffs demands. In order to prove bad faith, Plaintiffs must

6   prove that ASIC's denial of its insurance claim was unreasonable.

7   Several years later, this Honorable Court re-visited ASIC's coverage decision in

8   light of the Policy and other information known at the time, and found such decision was

9   correct. The Honorable Court originally held as follows:

10   > Applying the word's ordinary and popular sense, the Court has little
11   > trouble concluding that the events occurring in Israel and Gaza in the
12   > summer of 2014 constituted war.

13   (Dkt. 128 at p. 8)

14   > Clearly, then, the ordinary meaning of "war" applies to the summer
15   > 2014 conflict, as it arose between two adversaries or opposing forces
16   > and it reflected a high degree of hostility.

17   (Dkt. 128 at p. 8)

18   > For the reasons discussed in the previous section, the meaning that a
19   > layperson would give to "war" is not ambiguous and encompass the
20   > summer 2014 conflict, and so the Court must apply that meaning.

21   (Dkt. 128 at p. 9)

22   > Thus, even if often described as a terrorist organization, Hamas has
23   > sufficient characteristics of a sovereign entity that it can wage "war"
24   > within the meaning of the Policy.

25   (Dkt. 128 at p. 13)

26   > In sum, the Policy at issue in this case is not ambiguous, and the Court
27   > cannot consider anything other than the plain meaning of its words.
28   > However, even under a more restrictive interpretation of "war"

10

suggested by Plaintiffs, the expenses incurred as a result of the summer 2014 conflict fall within the Policy's first War Exclusion.   Atlantic therefore properly denied coverage for the Claim.

(Dkt. 128 at p. 13)

The second War Exclusion applies to loss caused by "[w]arlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents."

(Dkt. 128 at p. 13)

A lay reading of the first two War Exclusions suggests that the second War Exclusion is broader than the first.   Whatever meaning is ascribed to "war," the term "warlike actions" contemplates additional events not falling within that meaning.

(Dkt. 128 at p. 14)

Because Hamas, a sufficiently sovereign entity, took warlike action using military force, the second War Exclusion applies.

(Dkt. 128 at p. 14)

Regardless, Israel is indisputably a sovereign state, and its actions directly or indirectly contributed to the situation that caused postponement and relocation of the Dig production.   It is not disputed that Israel took action to counter Hamas's attacks.   Thus, Israel, too, took warlike action using military force, and for this additional reason, the second War Exclusion applies.   Indeed, the clear language of the second War Exclusion requires warlike action only by one side, and so application of the Exclusion does not depend on Hamas's status.

(Dkt. 128 at p. 15)

While the Ninth Circuit later disagreed with the Honorable Court's conclusions as to coverage, reasonable minds can differ. Such disagreement does not mean the Honorable

11

Court acted in bad faith (i.e. unreasonably) in reaching its decision.

ASIC understands why Plaintiffs' object – evidence of the Honorable Court's ruling would be virtually dispositive of their bad faith claim. However, the mere fact that evidence is harmful to a case does not make it inadmissible. To act as though the Honorable Court never issued its ruling would be to deny ASIC of the most probative evidence in support of its defense against Plaintiffs' bad faith claims.

Evidence of a trial court's after-the-fact ruling in favor of an insurance carrier on coverage is highly probative of an insurance carrier's good faith decision. For example, in *Morris*, a trial court granted summary judgment in favor of an insurance company on the issue of coverage. *Morris v. Paul Revere Life Ins. Co.,* 109 Cal. App. 4th 966, 972 (2003). While that case was on appeal, the California Supreme Court issued an opinion in another case that effectively reversed the trial court's prior summary judgment ruling. *Id.* Therefore, the case was remanded to resolve the remaining bad faith claim. *Id.*

The trial court subsequently entered summary judgment in favor of the insurer on the issue of bad faith. *Id.* at 972-73. The Court reasoned, in part, as follows:

> Moreover, we must also reject the suggestion in *Filippo Industries* that any court opinion issued after the insurance company made its initial decision to deny coverage could not be considered in determining whether the decision was reasonable….*the fact that a court had interpreted that law in the same manner as did the insurer, **whether before or after**, is certainly probative of the reasonableness, if not necessarily the ultimate correctness, of its position*.

*Id.* at 976 (emphasis added).

Such holding is analogous to the paradigm fact finders use to evaluate malicious prosecution claims. Indeed, the reasonableness standard in an insurance bad faith case is analogous to "probable cause" standard in a malicious prosecution claim. *See Wilson v. 21st Century Ins. Co.,* 42 Cal.4th 713, 720 (2007), as modified (Dec. 19, 2007).

It is common knowledge there can be no claim for malicious prosecution if there was probable cause for the prosecutor to bring the original cause of action. *Id*. at 812. As

such, "[t]he probable cause element...requires an objective judicial determination of the 'reasonableness' of the...prior lawsuit." *Sangster v. Paetkau,* 68 Cal. App. 4th 151, 164 (1998) (emphasis added). If there is evidence of a verdict in favor of the prosecutor in the underlying case, such verdict establishes probable cause as a matter of law, regardless of whether the verdict is later overturned. *Wilson v. Parker, Covert & Chidester,* 28 Cal. 4th 811, 817 (2002). Accordingly, evaluating a carrier's reasonableness in a bad faith claim may rest on a trial court's ruling on the underlying breach of contract claim.

In this case, the Honorable Court reached the same conclusion that ASIC did when it evaluated the Policy and other evidence in this case. Introduction of such facts is not a hindsight consideration of information ASIC did not have at the time it made its coverage decision. *See Austero v. Nat'l Cas. Co.*, 84 Cal. App. 3d 1, 32 (1978)*, overruled on other grounds by Egan v. Mut. Of Ohama Ins. Co.*, 24 Cal. 3d 809, 820 (1979). Rather, it is a *prima facie* evidence that ASIC's considerations and decisions were reasonable in light of the information and law it had at the time it denied coverage. *Morris* 109 Cal. App. 4th at 972. Such evidence is highly probative as a matter of law and, therefore, should be admitted in this case. *Id*.

Additionally, Plaintiffs have indicated their intention to inform the jury of the Ninth Circuit's ruling and opinion. Regardless of whether this occurs via evidence or jury instruction, introducing such information into the trial opens the door to allow ASIC to explain the context of the Ninth Circuit's ruling and opinion. Denying ASIC the opportunity to explain the prior findings of The Honorable Court would work an unfair prejudice to ASIC by hiding the full truth from the jury.

To the extent Plaintiffs fear undue prejudice from having the Honorable Court testify at trial, ASIC does not propose that the Court should testify. Fed. R. Evid. 605. Nor has ASIC listed the Honorable Court as a witness. Rather, ASIC suggests that the Court's opinion vis-à-vis Plaintiffs' breach of contract claim **should be read *verbatim* to the jury.** This should eliminate Plaintffs' concerns regarding any undue prejudice that might arise from opinions regarding ultimate issues entering the case.

ASIC does not plan to do anything more than to tell the jury of the text of Court's ruling vis-à-vis Plaintiffs' breach of contract claims (e.g. "A court found that…"). ASIC would not presume to bring the Honorable Court into the fray. However, the fact that an impartial fact-finder agreed with ASIC's prior claims decision is a highly probative that the jury should consider in evaluating the reasonableness of ASIC's actions. The text of the Court's ruling is the best evidence of what a fair and impartial individual would say about ASIC's reasonableness.

For all these reasons, ASIC respectfully asks the Court to deny Plaintiffs' Motion *in Limine* No. 1.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

1   **PLAINTIFFS' REPLY IN SUPPORT OF MOTION IN LIMINE NO. 4**

2   **I.   INTRODUCTION**

3         As the Court indicated during today's Pre-Trial Conference, Defendant should not

4   be permitted to introduce or reference this Court's First Summary Judgment Order.

5   Admitting the Order or its contents as evidence would constitute improper testimony of the

6   presiding judge.  Fed. R. Evid. 605.  The Order is also substantially more prejudicial than

7   probative.  Fed. R. Evid. 403.

8   **II.   ARGUMENT**

9         **A.   Plaintiffs Do Not Intend to Introduce the Ninth Circuit's Opinion.**

10        Defendant complains that it will be unfairly prejudiced if the jury learns, directly or

11  indirectly, of the Ninth Circuit's holdings and that this Court's First Summary Judgment

12  Order should be admissible as a result. Plaintiffs do not intend to introduce or reference the

13  Ninth Circuit's decision. Rather, Plaintiff has requested a jury instruction that would

14  instruct the jury on judicially-noticed facts based on the Ninth Circuit's holdings (without,

15  of course, referencing the Ninth Circuit or its order). As the Court indicated today, the

16  appropriate way to handle the Ninth Circuit's order is through jury instructions—not by

17  allowing the parties to debate the merits of this Court's First Summary Judgment Order or

18  the Ninth Circuit's subsequent reversal before the jury.

19        **B.   *Morris* is Inapplicable**

20        Defendant relies on *Morris v. Paul Revere Life Insurance Co*., 109 Cal. App. 4th

21  966 (2003), for the proposition that a trial court's after-the-fact ruling in favor of an

22  insurance carrier on coverage is highly probative of an insurance carrier's good faith

23  decision, even if that ruling was subsequently overturned. But *Morris* is distinguishable for

24  several reasons.

25        *First*, the *Morris* case was decided on summary judgment case and made clear that

26  it addressed a "pure question of law" when it came to bad faith. *Id.* at 969, 973. Absolutely

27  nothing in *Morris* suggests that it would be appropriate to introduce a trial court's since-

28  overturned decision to the ***jury*** in a bad faith trial.

15

*Second*, the *Morris* case addressed whether an insurer acted in bad faith when there had been an intervening change in the law. The court explained that an intervening California Supreme Court case – one that took the legal position opposite to that the insurer had relied on to deny coverage – expressly noted that there was a split of authority on an unsettled legal issue. *Id.* at 970-71, 974. Here, the Ninth Circuit's opinion did not change the state of the law, or suggest there was any split in authority on the questions presented in this matter. Instead, the Ninth Circuit held that existing California law—namely Civil Code section 1644—required applying the insurance industry's undisputed special meaning of "war" and "warlike action," rather than any alternate plain and ordinary meaning. *See, e.g., Universal Cable Prods.*, 929 F.3d at 1151-54 (citing and applying existing California law). The Ninth Circuit also could not have changed the state of the law because, unlike the California Supreme Court decision at issue in *Morris*, it lacks the authority to modify California law. *See Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) (explaining that "[t]he task of a federal court in a diversity action is to approximate state law as closely as possible" and that "a federal court is not free to reject a state judicial rule of law merely because it has not received the sanction of the state's highest court, but it must ascertain from all available data what the state law is and apply it" (internal quotations omitted)).

*Third*, the analysis in *Morris* is premised on the fact that the insurer denied coverage based on the same reasoning as the eventually overturned trial court. Here, Atlantic did not deny coverage for the same reasons that this Court initially granted summary judgment in Atlantic's favor. The Court's First Summary Judgment Order analyzed coverage under the plain and ordinary meaning of war exclusion 1 and 2; Atlantic's denial letter in contrast analyzed their customary usage and concluded that Hamas was sufficiently sovereign to preclude coverage. *See* Bonn Decl. Ex. 1 at 5-7. In its defense against Plaintiffs' bad faith claim, Atlantic is limited to the bases for denial as explained in that letter. *See Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 953 (2006), *as modified on denial of reh'g* (June 16, 2006). The First Summary Judgment Order's probative value is therefore not

16

comparable to the overturned order in *Morris*.  The passage from *Morris* block quoted in Defendant's brief proves this point: "[T]he fact that a court had **interpreted that law in the same manner as did the insurer**, whether before or after [denial of coverage], is certainly probative of the reasonableness … of the decision." *Id.* at 976 (emphasis added).  Thus, key to the analysis is that the insurer's reasoning directly mirrored the overturned trial court decision.  That is not the case here.

*Fourth*, nothing *Filippo Industries*, discussed in *Morris*, suggests it would be proper to inform a jury that a court had previously agreed with either side's position, let alone to read an overturned court order verbatim to the jury.  If anything, the case urges caution in weighing the probative value of an overturned decision:

> We certainly have great faith in the sagacity and reasonableness of trial judges, but we decline to impute infallibility to any court, trial or appellate. There is no guarantee that a judge might not be faced with a complicated summary judgment motion on his/her first day in a civil assignment. …. How many wise judges have a placard strategically placed reminding them 'Don't say anything stupid today'? Mistakes happen….

*Filippo Indus., Inc. v. Sun Ins. Co. of New York*, 74 Cal. App. 4th 1429, 1441–42 (1999), *as modified* (Oct. 20, 1999).

### C.   Malicious Prosecution Claims are not Analogous.

Defendant analogizes this case to a claim for malicious prosecution, stating that if there is a "verdict in favor of the prosecutor in the underlying case, such verdict establishes probable cause as a matter of law, regardless of whether the verdict is later overturned." *Supra* at 14. That analogy plainly does not hold here for several reasons.

*First*, if the malicious prosecution standard were truly analogous, as Defendant suggests above, the Ninth Circuit would have been compelled to decide bad faith as a matter of law in Defendant's favor simply by virtue of this Court's original summary judgment order. Instead, the Ninth Circuit held that there were triable issues of fact as to bad faith and remanded for trial. *Universal Cable Prods., LLC v. Atl. Specialty Ins. Co.*, 929 F.3d 1143, 1162 (9th Cir. 2019).

17

*Second*, malicious prosecution cases involve a purely "objective" standard of reasonableness that is decided by the Court as a matter of law. *Supra* at 13.[2] A jury in a malicious prosecution case might be necessary to resolve underlying "evidentiary disputes," for instance concerning "the information and facts known to the defendant when it brought the prior action . . . ." *Leonardini v. Shell Oil Co.*, 216 Cal. App. 3d 547, 569 (1989). However, whether the defendant's action was "objectively reasonable" is a "determination [that] is always to be made by the court and not by the jury." *Id.* Thus, even in the malicious prosecution context, a court's since-overturned ruling would not be made fodder for the jury at trial—instead, it is something that the Court would consider in deciding objective reasonableness.

*Third*, unlike in malicious prosecution cases, California law requires that an insurer's reasonableness be evaluated based on the grounds articulated in its letter denying coverage. *Century Sur. Co.*, 139 Cal. App. 4th at 953. In the insurance bad faith context, "it is essential that no hindsight test be applied," and that the insurer's action is "measured as of the time it was confronted with a factual situation to which it was called upon to respond." *Austero v. Nat'l Cas. Co.*, 84 Cal. App. 3d 1, 32 (1978), *overruled on other grounds by Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 820 (1979). Defendant has no answer for this case law.

Defendant's analogy to malicious prosecution cases fails.

### D.   Defendant's "This Court" v. "A Court" Approach Makes no Difference.

Defendant cannot cure prejudice by omitting reference to *this* Court and instead telling the jury that "an impartial fact-finder agreed with ASIC's prior claims decision." *Supra* at 14.  Case law makes clear that introducing the opinions of other courts, even if not of the same court where the jury sits, carry great risk of undue prejudice. As the Ninth Circuit has explained, even introducing the statements of another judge "created far too

---

[2] In insurance bad faith cases, however, "an insurer's subjective bad intentions" may "be considered in the evaluation of the objective reasonableness of the insurer's actions." *Bosetti v. United States Life Ins. Co.*, 175 Cal. App. 4th 1208, 1238-39 (2009).

great a danger of unfair prejudice[e]." *United States v. Sine*, 493 F.3d 1021, 1024 (9th Cir. 2007). Even if the jury is not told that the presiding judge is the drafter of the Order, the prohibitions of Rule 605 still apply. The Advisory Committee's reasons for enacting Rule 605 do not wholly vanish if the identity of the speaker is kept from the jury. For example, the fear that a judge may not be able to "rule impartially on the weight and admissibility of his own testimony," "rule on objections," or allow for effective cross examination, still apply. Fed. R. Evid. 605, advisory committee notes.

## E. Fairness Dictates that the First Summary Judgment Order be Excluded.

Defendant argues that it would be unfair for the Court not to allow Defendant to present the First Summary Judgment Order, which it calls its "best evidence," at trial. The Order is not Defendant's "best evidence." It is of minimal probative value because its analysis is completely different from that reflected in Defendant's denial letter. Furthermore, Defendant cites no support for the suggestion a document should be admitted simply because it is a party's favorite piece of evidence.

At the same time, the Order would be unduly prejudicial to Plaintiffs for the reasons explained above. It would be particularly unfair to allow the jury to hear of the Order where Plaintiffs successfully litigated an appeal of that order. To allow otherwise would deny the party successful on appeal its right to a true do-over on remand. Defendant's opposition does not address this argument.

## III. CONCLUSION

Plaintiffs respectfully request that this court not allow defendant to introduce or reference this court's first summary judgment order.

DATED:     January 17, 2020                SUSMAN GODFREY L.L.P.


                                          */s/ Amanda Bonn*
                                          KALPANA SRINIVASAN (237460)
                                          ksrinivasan@susmangodfrey.com
                                          AMANDA K. BONN (270891)
                                          abonn@susmangodfrey.com
                                          CATRIONA LAVERY (310546)

19

clavery@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

DATED: January 17, 2020          MARC J. SHRAKE
                                 FREEMAN MATHIS & GARY, LLP

                                          -and-

                                 CHRISTOPHER W. MARTIN
                                 (*Pro Hac Vice*)
                                 MELINDA R. BURKE (Pro Hac Vice)
                                 MARTIN, DISIERE, JEFFERSON
                                 & WISDOM LLP

                                  */s/ Christopher W. Martin*

                                 *Attorneys for Defendant ATLANTIC*
                                 *SPECIALTY INSURANCE COMPANY*

## Attestation Regarding Signatures

I, Amanda Bonn, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By: */s/ Amanda Bonn*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I certify that on January 17, 2020, I filed the foregoing with the Clerk of the United States District Court for the Central District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

By: */s/ Amanda Bonn*

015825\7088589