# Exhibit 12

Confidential

Page 1

1

2          C O N F I D E N T I A L

3   IN THE UNITED STATES DISTRICT COURT
    FOR THE CENTRAL DISTRICT OF CALIFORNIA
4   WESTERN DIVISION
    ---------------------------------------
5
    UNIVERSAL CABLE PRODUCTIONS, LLC,
6   a Delaware limited liability company,
    and NORTHERN ENTERTAINMENT
7   PRODUCTIONS, LLC, a Delaware limited
    liability company,
8
                          Plaintiffs,
9
            -against-                    Case No.
10                                       2:16-cv-
    ATLANTIC SPECIALTY INSURANCE         4435-PA-MRW
11  COMPANY, a New York insurance
    company,
12
                          Defendant.
13
    ---------------------------------------
14          C O N F I D E N T I A L
15             May 31, 2017
16    Videotaped deposition of WANDA PHILLIPS
17
18
19  Reported by:
    Joseph R. Danyo
20
21  Job No. 123996
22
23
24
25

Confidential

Page 74

1   suffered under the policy? I am now moving                   12:01
2   forward in time. There were losses incurred
3   under the policy that were associated with
4   Hurricane Sandy, isn't that correct?
5       A. Because Hurricane Sandy was not, if
6   you look at the wording, when it happened versus   12:02
7   what we were excluding and the territories where
8   they had the losses was not one of the excluded
9   territories.
10      Q. Got it. Now Mr. Walden indicates in
11  item 7, "Let's keep it simple." Did you have an     12:02
12  understanding of why he wanted to try to keep it
13  simple?
14      A. I can't say what he was saying there,
15  but just knowing Mr. Walden's personality, it
16  just kind of goes with him.                          12:02
17      Q. Okay. What do you mean by that?
18      A. That is why Mr. Walden came with his
19  own policy form. He kind of has a thought
20  process that if the carrier has too many words in
21  their policy, it is difficult to understand it,      12:03
22  so again going back to his let's keep it simple.
23      Q. Okay. Is it fair to say that Mr.
24  Walden was focused on trying to keep the wording
25  of the policy as clear and simple as possible to

Page 75

1   ensure there wouldn't be any problems in the         12:03
2   future over wording?
3       A. I think Mr. Walden was trying to
4   persuade us to use his policy wording.
5       Q. Under item 8, there is a reference to
6   tax credits. Do you see that?                         12:04
7       A. Yes.
8       Q. Do you have an understanding of what
9   tax credits are?
10      A. Yes.
11      Q. What are they?                                 12:04
12      A. Just that they are credits that are
13  given to production companies depending on the
14  state in which they are filming and they become a
15  tax credit.
16      Q. So those credits are based on the              12:04
17  dollar amounts are based on the production spend
18  of the production company in the state in which
19  the television show is being filmed?
20      A. Yes.
21      Q. Is that correct? In terms of                   12:04
22  determining the insurable production costs under
23  the policy, are you familiar with that term,
24  "insurable production costs"?
25      A. Yes.

Page 76

1       Q. What is your understanding of what it         12:04
2   is?
3       A. The costs in which the total
4   production costs less events that you could take
5   out in the event of an abandonment which then
6   becomes your insurable production cost, those        12:05
7   items that could be insured.
8       Q. Okay. There is also a provision in
9   the policy that defines what constitutes loss
10  under the policy. Do you recall that provision?
11      A. I don't know exactly what it says,             12:05
12  but it is a provision in the policy, yes.
13      Q. Okay. To the best of your
14  recollection, we will look at the policy actually
15  itself later, but to the best of your
16  recollection, in calculating the loss, is that       12:05
17  tied to the insurable production cost under the
18  policy?
19          MR. KEELEY: Objection. Calls for a
20      legal conclusion, calls for improper
21      opinion testimony.                                12:05
22      A. Again, I would need you to say that
23  again so I am clear on what you are asking me
24  before I answer that.
25      Q. Okay. The question is just with

Page 77

1   respect to calculating a loss that may occur        12:06
2   under the terms of the policy, part of that
3   calculation of the loss depends on the amount of
4   insurable production costs that was incurred on
5   the show. Is that right?
6       A. That's correct.                               12:06
7       Q. Okay. In calculating the loss, is
8   the amount of any tax credit that the production
9   company might receive or does receive, does that
10  go into the equation at all in calculating loss
11  under the policy?                                    12:06
12          MR. KEELEY: Objection, foundation,
13      calls for improper opinion testimony.
14      Calls for a legal conclusion.
15      A. It can be, but again, that depends on
16  how you craft the policy. So if you are insuring    12:06
17  that tax credit, you have to insure that amount
18  as part of the production costs, thereby the rate
19  applied to the production costs to determine the
20  premium would also include that tax credit.
21      Q. So if it were to be included, you             12:07
22  would expect to see it addressed in the
23  calculation of the insurable production cost. Is
24  that right?
25      A. It would be included.

Confidential

Page 78

1    Q.  No, I'm sorry, my question to you is        12:07
2    you said it can be.  If it is going to be, would
3    you see the tax credit specifically addressed in
4    the calculation of what constitutes an insurable
5    production cost?
6        MR. KEELEY:  Objection, vague,              12:07
7    ambiguous, lack of foundation.  Calls for
8    improper opinion testimony.
9        A.  Again, you can add the tax credit,
10   and if you were adding it, you can add it as an
11   agreement that is part of your insurable costs or   12:07
12   if you don't charge the premium for it, then it
13   is not covered, so it can be done either way.
14       Q.  And you have seen it done either way?
15       A.  Yes.
16       Q.  Without looking at the policy, it is    12:08
17   not a memory test but do you recall how it was
18   handled under the NBC Universal policy?
19       A.  I don't believe tax credit was a part
20   of it, and clearly I don't think the interest on
21   the state's inability of paying the tax credit,    12:08
22   because that is what it refers to in number 8 was
23   a part of it as well.
24       Q.  Thank you.  As of the November 21
25   e-mail, had you received a copy of Mr. Walden's

Page 79

1    form that he was proposing?                    12:09
2        A.  I can't say for sure, but I would
3    think so.
4        Q.  Okay.  I would like you to look now
5    at the next e-mail exhibit which was attached as
6    Exhibit 406, and that should be the next document   12:09
7    in the pile.  Ms. Phillips, are you waiting for
8    questions on the document?
9        A.  Yes.
10       Q.  Okay.  With respect to the e-mail
11   that was sent December 24, 2009 -- excuse me,   12:10
12   December 4, 2009, at 5:51 p.m. Eastern Standard
13   Time from Martin Ridgers to George Walden and
14   Wanda Phillips, did you receive this e-mail?
15       A.  I have no reason to think I didn't.
16       Q.  Okay.  Thank you.  What was your       12:10
17   understanding of the information that Mr.
18   Martin -- Mr. Ridgers was conveying via this
19   e-mail to Mr. Walden?
20       A.  In reviewing the document that you
21   just handed me, it looks like he is giving him   12:11
22   indications of limits and deductibles.
23       Q.  And to your recollection, had limits
24   and deductibles been discussed prior to this
25   e-mail going out?

Page 80

1        A.  I can't recall, but I mean I would     12:11
2    think so.  That is why he is giving them to
3    clarify the indication, so they had to discuss
4    the limits and deductibles and he is clarifying
5    them now.
6        Q.  Okay.  There are deductibles that are   12:11
7    listed under the column indicating deductible of
8    various amounts.  For example, on cast, it says
9    50,000.  On property, it says 10,000.  Do you see
10   that?
11       A.  Yes.                                     12:12
12       Q.  There was also, though, an aggregate
13   deductible that applied or self-insured retention
14   that applied overall on the policy.  Isn't that
15   right?
16       A.  That's correct.                          12:12
17       Q.  So how did the individual deductible
18   with respect to the covered loss, how did that
19   work vis-ï¿½-vis the aggregate self-insured
20   retention?
21       A.  An example would be there is a claim     12:12
22   for cast, and just to keep it simple, the cast
23   claim is 100,000.  There is a deductible of
24   50,000, so only the remaining 50,000 would be
25   contributed to the SIR.

Page 81

1        Q.  Got it.  Thank you.  With respect to,   12:12
2    I want to look at page 3792 of Exhibit 406.  So
3    at the bottom right-hand corner of the page there
4    should be some numbering.
5        A.  Yes.
6        Q.  At the top of the page of 3792 it       12:12
7    says general changes.  Do you see that?
8        A.  That is what that says there?  Yes.
9        Q.  What is your understanding of the
10   general changes that are being discussed that are
11   listed underneath this provision?                12:13
12       A.  The limits and coverages here are
13   actually new coverages that were added.  New to
14   OneBeacon.
15       Q.  So, for example, P&A, the P&A spent
16   or the prints and advertising spent, that was     12:13
17   something that was a new coverage for the
18   OneBeacon policy.  Is that correct?
19       A.  That's correct.
20       Q.  And to your knowledge, were the
21   various new coverages for print and advertising,  12:13
22   public relations and expediting coverage, were
23   those all accepted by OneBeacon?
24       A.  I have no reason to think not.  I
25   believe they were.

Confidential

Page 302

C E R T I F I C A T I O N

    I, Joseph R. Danyo, a Shorthand
Reporter and Notary Public, within and for the
State of New York, do hereby certify:
       That I reported the proceedings in
the within entitled matter, and that the within
transcript is a true record of such proceedings.
    I further certify that I am not
related, by blood or marriage, to any of the
parties in this matter and that I am in no way
interested in the outcome of this matter.
      IN WITNESS WHEREOF, I have hereunto
set my hand this 1st day of June, 2017.

_____

JOSEPH R. DANYO

---

Page 303

I N D E X

| Witness | Page |
|---|---|
| WANDA PHILLIPS | 5 |

E X H I B I T S

| No. | | Page |
|---|---|---|
| Exhibit 419 | Document bearing Bates numbers AON NBCU 0004342 through 4368 | 120 |
| Exhibit 420 | Document bearing Bates numbers AON NBCU 0004376 through 4379 | 173 |
| Exhibit 421 | Document bearing Bates numbers AON NBCU 0004380 through 4382 | 174 |
| Exhibit 422 | Document bearing Bates numbers AON NBCU 0004383 through 0004410 | 176 |
| Exhibit 423 | Document bearing Bates numbers AON NBCU 0003622 through 3625 | 219 |
| Exhibit 424 | Document bearing Bates number AON NBCU 0001747 | 227 |
| Exhibit 425 | Document bearing Bates numbers ATL 002231 through 2211 | 244 |
| Exhibit 426 | Document bearing Bates numbers AON NBCU 2403 through 2406 | 245 |
| Exhibit 427 | Document bearing Bates numbers ATL 002439 through 2444 | 247 |
| Exhibit 428 | Document bearing Bates numbers ATL 006989 through 7020 | 269 |
| Exhibit 500 | Defendant's  e-mails | 279 |

~oOo~

---

Page 304

ERRATA SHEET
Case Name:
Deposition Date:
Deponent:
Pg.  No. Now Reads    Should Read  Reason

___ ___ _____    _____    _____
___ ___ _____    _____    _____
___ ___ _____    _____    _____
___ ___ _____    _____    _____
___ ___ _____    _____    _____
___ ___ _____    _____    _____
___ ___ _____    _____    _____
___ ___ _____    _____    _____
___ ___ _____    _____    _____
___ ___ _____    _____    _____
___ ___ _____    _____    _____
___ ___ _____    _____    _____
___ ___ _____    _____    _____

_____

Signature of Deponent

SUBSCRIBED AND SWORN BEFORE ME
THIS ____ DAY OF _____, 2017.
_____
(Notary Public)  MY COMMISSION EXPIRES:_____