# Exhibit 23



# Bayside Reporting Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, ET AL., ) ) ) PLAINTIFFS, ) ) VS. ) ) ATLANTIC SPECIALTY ) INSURANCE COMPANY, ) ) DEFENDANT. ) | CASE NO.: 2:16-cv-4435-PA-MRW |

**CONFIDENTIAL**

**EXHIBITS BOUND SEPARATELY**

VOLUME I

DEPOSITION OF PETER DONALD WILLIAMS

WEDNESDAY, FEBRUARY 1, 2017

REPORTED BY: INGRID SUÁREZ EGNATUK
CSR NO. 3098

3820 DEL AMO BOULEVARD
SUITE 222
TORRANCE, CALIFORNIA 90503

(888) 229-9897
FAX (310) 214-1405
WWW.BAYSIDEDEPO.COM

CONFIDENTIAL

1      UNITED STATES DISTRICT COURT
2      CENTRAL DISTRICT OF CALIFORNIA
3      WESTERN DIVISION
4
5  UNIVERSAL CABLE         )  CASE NO. 2:16-cv-4435-PA-MRW
   PRODUCTIONS LLC, et al.,)
6                          )
        Plaintiffs,         )
7                          )
        vs.                 )
8                          )
   ATLANTIC SPECIALTY       )      CONFIDENTIAL
9  INSURANCE COMPANY,       )
                            )
10       Defendant.          )
                            )
11
12
13
14          VOLUME I (Pages 1 - 260)
15      DEPOSITION OF PETER DONALD WILLIAMS
16          Wednesday, February 1, 2017
17
18
19
20
21
22
23  Reported by:  Ingrid Suárez Egnatuk
24               CSR No. 3098
25

BAYSIDE REPORTING COMPANY  (888) 229-9897
www.baysidedepo.com

1

Page 2

```
 1
 2      Videotaped Deposition of PETER DONALD
 3   WILLIAMS, VOLUME I, taken on behalf of
 4   Plaintiffs Universal Cable Productions LLC
 5   and Northern Entertainment Productions LLC,
 6   at 707 Wilshire Boulevard, Suite 4000,
 7   Los Angeles, California 90017, commencing at
 8   9:58 a.m., Wednesday, February 1, 2017,
 9   before Ingrid Suarez Egnatuk, CSR No. 3098.
10
11   APPEARANCES:
12      FOR PLAINTIFFS UNIVERSAL CABLE PRODUCTIONS
        LLC AND NORTHERN ENTERTAINMENT PRODUCTIONS
13      LLC:
14         MITCHELL SILBERBERG & KNUPP LLP
           BY:  LUCIA E. COYOCA, ESQ.
15         11377 West Olympic Boulevard
           Los Angeles, California 90064-1683
16         (310) 312-2000
           lec@msk.com
17
        FOR DEFENDANT:
18
           STRASBURGER & PRICE. LLP
19         BY:  MICHAEL KEELEY, ESQ.
           901 Main Street
20         Suite 6000
           Dallas, Texas 75202-3794
21         (214) 651-4718
           michael.keeley@strasburger.com
22
           ANDERSON, McPHARLIN & CONNERS, LLP
23         (Not present at deposition)
           707 Wilshire Boulevard
24         Suite 4000
           Los Angeles, California 90017-3623
25         (213) 688-0080
```

Page 3

```
 1   APPEARANCES:
 2      (Continued)
 3      THE VIDEOGRAPHER:
 4         VERBATIM VIDEO
           BY:  ESROM JAYASINGHE
 5         9725 Gladbeck Avenue
           Northridge, California 91324
 6         (800) 520-8273
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1                    I N D E X
 2
     Witness:   PETER DONALD WILLIAMS
 3
     Examination                                   Page
 4
     By Ms. Coyoca                                    7
 5
     AFTERNOON SESSION                               98
 6
 7
 8
     Exhibit      Description                      Page
 9
     1    Motion Picture/Television Producers       69
10        Portfolio Declarations
          ATL003073 through ATL003127
11
     2    E-mail chain ending 1028-2013 to         105
12        Peter D. Williams from Wanda Phillips
          ATL000745 through ATL000748
13
     3    E-mail chain ending 11-15-2013 to        112
14        Andrea Garber, Susan Weiss, Toni
          Peete; attachment
15        ATL000780 through ATL000784
          ATL000752 through ATL000763
16
     4    E-mail chain ending December 11,         134
17        2013, to Wanda Phillips and Toni
          Peete from Peter D. Williams
18        AONNBCU0000666 through AONNBCU0000670
19   5    E-mail chain ending 12-3-2013 to         140
          Peter D. Williams from Wanda Phillips
20        ATL000794 through ATL000796
21   6    E-mail chain ending December 12,         148
          2013, to Bernadette Milinovic from
22        Andrea Garber
          AONNBCU0001478 through AONNBCU0001483
23        AONNBCU0001568
24
25
```

Page 5

```
 1                    I N D E X
                       (Continued)
 2
 3   Exhibit      Description                      Page
 4   7    E-mail chain ending June 7, 2014,        164
          to Andrea Garber from Susan Weiss
 5        AONNBCU0000188 through AONNBCU0000189
 6   8    E-mail chain ending June 13, 2014,       174
          to Wanda Phillips and Peter Williams
 7        from Susan Weiss
          AONNBCU0000141 through AONNBCU0000144
 8
 9   9    E-mail chain ending July 10, 2014,       181
          to Susan Weiss and Peter Williams
10        from Wanda Phillips
          AONNBCU0000145 through AONNBCU0000150
11
     10   E-mail chain ending July 15, 2014,       210
12        to Susan Weiss from Michael Arevalo
          AONNBCU0000128 through AONNBCU0000130
13
     11   E-mail chain ending 7-16-2014 to         221
14        Pamela Johnson and Peter Williams
          from Daniel Gutterman; attachment
15        ATL001132 through ATL001192
16   12   E-mail chain ending 7-16-2014 to         242
          Peter Williams and Daniel Gutterman
17        from Pamela Johnson
          ATL001101 through ATL001105
18
19   UNANSWERED QUESTIONS:
20   Page 195, Line 3
21
22   INFORMATION REQUESTED:
23      (None)
24
25
```

| Universal Cable, LLC v. | Peter Donald Williams - Vol. I |
|---|---|
| Atlantic Specialty Insurance Company | February 1, 2017 |

**10:12-10:14**   Page 18

1  Q. And did Axis Insurance Adjusters have one
2  main insurance client or a variety of clients?
3  A. A variety of clients.
4  Q. And did you primarily handle production
5  portfolio policies, or was there any area or type of
6  policy that you worked in with respect to Axis
7  Insurance Adjusters?
8  A. Primarily production portfolio policies or
9  contingency policies for the music industry.
10  Q. Have you done any completion bond work?
11  A. Yes.
12  Q. So Hyperion Insurance, did you specialize
13  in the entertainment industry with respect to claims
14  handling during your work with Hyperion?
15  A. Yes.
16  Q. Did Hyperion work for one or a small group
17  or many different insurance companies?
18  A. Well, it's a relatively small group
19  compared to the insurance world. But, yes,
20  numerous -- any insurance company who was in -- who
21  was in that business.
22  Q. Now, you said in 2009 you went to work for
23  OneBeacon; is that correct?
24  A. Yes.
25  Q. So what was your first position with

**10:14-10:16**   Page 19

1  OneBeacon?
2  A. Claims manager for OneBeacon
3  Entertainment.
4  Q. When in 2009 did you go to work for
5  OneBeacon Entertainment, approximately?
6  A. May, I believe.
7  Q. Who hired you?
8  A. Well, the local president was a guy -- was
9  a man called Jack Cave. But, I mean, I guess my
10  hiring was approved by the claims people in
11  Minnesota. But Jack Cave was the man who reached
12  out to me.
13  Q. What were your responsibilities when you
14  worked as a claims manager for OneBeacon
15  Entertainment?
16  A. I was in charge of overseeing the claims
17  made by the policies issued by OneBeacon
18  Entertainment and for negotiating and settling the
19  claims that were within my authority.
20  Q. Did you personally handle the adjustment
21  of claims, or did you have people working for you
22  who were assigned to particular claims?
23  A. Primarily we had independent adjusters
24  assigned. One or two claims I handled personally.
25  Q. And those independent adjusters, were they

**10:16-10:17**   Page 20

1  independent from OneBeacon?
2  A. Yes.
3  Q. Who did you use?
4  A. Hyperion was one. Crawford & Company was
5  another. They were the main -- main people.
6  Q. Did you ever use the services of any
7  insurance adjusters that worked for OneBeacon in
8  Minnesota to handle the entertainment claims?
9  A. You mean independent?
10  Q. No. I mean were there any insurance
11  adjusters, claims adjusters, that worked for
12  OneBeacon in Minnesota that were assigned to handle
13  and review and investigate, adjust, claims that were
14  with OneBeacon Entertainment?
15  A. Not in Minnesota. The OneBeacon claims
16  handling for the smaller claims, like auto claims,
17  small liability claims, was based in Denver.
18  Q. And those were handled by adjusters from
19  OneBeacon?
20  A. Yes.
21  Q. And were they overseen by you?
22  A. Yes. If they were within my authority.
23  Q. Now, you indicated that you would handle
24  claims and adjust claims and perhaps settle claims
25  that were within your authority; is that correct?

**10:17-10:18**   Page 21

1  A. Yes.
2  Q. So in that period in May, 2009, when you
3  initially began working for the company, what was
4  your level of authority?
5  A. I can't specifically recall.
6  Approximately $50 million, I believe.
7  Q. So you could make a decision to settle a
8  claim so long as it was below the amount of
9  $50 million on your own authority; is that correct?
10  A. Correct. I should explain, that was
11  the -- in the beginning you don't get any authority,
12  and then they increase it. So it was increased in
13  incremental amounts, probably 10 initially, 25, and
14  then subsequently higher.
15  Q. So when you first began working for
16  OneBeacon in May of 2009, what was your level of
17  authority?
18  A. That would have been low, as it always is
19  when you're new to a company, maybe 5 or 10 million.
20  Q. And subsequently it increased; is that
21  correct?
22  A. Correct.
23  Q. Until it rose to the level of 50 million?
24  A. I think so. Yes. Not that we had any
25  claims of that level.

06:22                                                             Page 258

1  remaining depositions concerning timing and the
2  other terms.
3      MS. COYOCA: Agreed.
4      MR. KEELEY: Okay. And I think I
5  mentioned earlier, but just to confirm, we do
6  obviously want copies of everything.
7      And just, again, we will mark the entire
8  deposition transcript as "Confidential."
9      MS. COYOCA: Okay. So stipulated.
10  Thank you.
11      THE VIDEOGRAPHER: Close the record.
12  This concludes this session of the
13  deposition and Media 4. Off record at 1822.
14
15      (At 6:22 p.m. the deposition of PETER
16      DONALD WILLIAMS was adjourned.)

Page 259

8      I declare under penalty of perjury that
9  the foregoing testimony is true and correct.
10
11      Executed at                    ,
12  this       day of                  ,
13  20    .
14
15
16
17          PETER DONALD WILLIAMS

Page 260

1  STATE OF CALIFORNIA   )
                         )
2  COUNTY OF LOS ANGELES )
3
4      I, Ingrid Suárez Egnatuk, CSR No. 3098, a
5  Certified Shorthand Reporter in and for the State of
6  California, do hereby certify:
7      That the foregoing deposition of PETER
8  DONALD WILLIAMS, VOLUME I, was taken before me at
9  the time and place therein set forth, at which time
10  the witness was put under oath by me;
11      That the testimony of the witness and all
12  objections made at the time of the examination were
13  recorded stenographically by me and were thereafter
14  transcribed under my direction;
15      That the foregoing is a true record of the
16  testimony and of all objections made at the time of
17  the examination.
18
19      In witness whereof, I have subscribed my
20  name this 6th day of February, 2017.
21
22
23              Certified Shorthand Reporter
24                       No. 3098
25

Confidential