KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>        Defendant. | Case No.: 2:16-cv-4435-PA-MRW<br><br>The Honorable Percy Anderson<br><br>**JOINT MOTION IN LIMINE NO. 3: PLAINTIFFS' MOTION TO BAR EVIDENCE OR ARGUMENT THAT DEFENDANT'S DENIAL WAS REASONABLE BECAUSE OF ISRAEL'S CONDUCT DIRECTED TOWARD GAZA**<br><br>Hearing Date: February 10, 2020,<br>Time: 1:30 p.m.<br>Pretrial Conference: January 17, 2020<br>Place: Courtroom 9A<br>Trial Date: February 18, 2020 |

**PLAINTIFFS' MOTION IN LIMINE NO. 3:**

## I.  INTRODUCTION

Plaintiffs respectfully request that Defendant Atlantic Specialty Insurance Co. ("Atlantic" or "Defendant") be prohibited from arguing that its denial of coverage was reasonable because (1) Israel is a sovereign nation that retaliated against Hamas in Gaza or (2) Israel's "invasion" of Gaza, which post-dated Plaintiffs' decision to relocate, was reasonably construed as a "war" or "warlike action by a military force."

The Ninth Circuit held that under California law, "Policy exclusions are unenforceable to the extent that they conflict with section 530 [of the California Insurance Code] and the efficient proximate cause doctrine." *Universal Cable Prods., LLC v. Atl. Specialty Ins. Co.*, 929 F.3d 1143, 1161 (9th Cir. 2019) (quoting *Julian v. Hartford Underwriters Ins. Co.*, 35 Cal.4th 747, 754 (2005)). "The California Supreme Court has held that the 'efficient proximate' cause is the 'predominant, or most important cause of a loss.'" *Id.* (quoting *Julian*, 35 Cal.4th at 747). "Thus, "the fact that an excluded risk contributed to the loss would not preclude coverage if such a risk was a remote cause of the loss.'" *Id.* (*Julian*, 35 Cal.4th at 747). Accordingly, the Ninth Circuit held: "[E]ven if Israel countered Hamas' attacks," those actions were not "the proximate cause of Universal's losses in moving the production of *Dig*." *Id.* Instead, "Universal's decision to relocate production ***was a result of Hamas firing rockets into Israel (where filming was occurring), and not a result of Israel's retaliatory conduct***." *Id.* (emphasis added). Moreover, the Ninth Circuit found that Atlantic itself recognized that Hamas' conduct, not Israel's, caused Plaintiffs' loss:

> [R]eliance on Israel's indirect contribution to continued hostilities from Hamas was not supported by any evidence in the record. Atlantic's letter denying coverage noted that Universal had to relocate because of 'heightened violence in [Israel]' due to Hamas 'firing rockets into those cities [Tel Aviv and Jerusalem]' where filming was likely to occur. . . . Atlantic provides no evidence that Israeli retaliation was the predominant cause of Universal's loss.

*Id.* (alteration in original).

Nevertheless, based on its deposition designations, exhibit list, and witness list, it

appears that Defendant intends to introduce evidence and argument suggesting the opposite. In particular, it appears Defendant intends to introduce evidence and argument that Israel, a sovereign, launched a "ground war" into Gaza after Plaintiffs decided to relocate—a conflict that was subsequently referred to in the media as a "50-Day War."

Any minimal probative value, if any, of such evidence is substantially outweighed by the danger of unfair prejudice and confusing the issues. The "genuine dispute" defense to a bad faith claim may involve "legal" as well as "factual disputes." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 348 (2001). The Ninth Circuit has recognized that (1) there was no factual dispute that Hamas's rocket fire into Israel caused the relocation and (2) established California law for nearly a decade prior to the claim barred consideration of indirect causes (such as Israel indirectly contributing to Hamas's escalation of violence). *Universal Cable Prods., LLC*, 929 F.3d at 1161 (quoting *Julian*, 35 Cal.4th at 754). In short, the Ninth Circuit's opinion makes clear that there was no good faith factual or legal dispute permitting denial-of-coverage based on Israel's sovereignty.

Atlantic remains free to argue at trial that it reasonably, but erroneously, concluded that Hamas was a sovereign based on the facts available to it. But given the Ninth Circuit's order, it would be substantially more prejudicial than probative to permit Atlantic to suggest to the jury that it reasonably denied coverage because (1) Israel indirectly contributed to Hamas' escalation of violence or (2) Israel's actions in Gaza, which largely occurred after *Dig* relocated, precluded coverage. Any such evidence or argument is irrelevant under Federal Rule of Evidence 401 and any minimal probative value is substantially outweighed by the danger of unfair prejudice or confusing the issues under Federal Rule of Evidence 403.

///

///

///

## II.   ARGUMENT

### A.   The Ninth Circuit Held There Was No Genuine Factual Dispute that Hamas' Rocket Fire Toward Israel Caused the Relocation.

The Ninth Circuit held that there was not "any evidence in the record" suggesting that "Israel's indirect contribution to continued hostilities from Hamas" caused *Dig* to relocate. *Universal Cable Prods., LLC*, 929 F.3d at 1161. To the contrary, the Ninth Circuit noted that "Atlantic's letter denying coverage noted that Universal had to relocate because of 'heightened violence in [Israel]' due to Hamas 'firing rockets in those cities [Tel Aviv and Jerusalem] where filming was likely to occur." *Id.* Indeed, Defendant's July 28, 2014, letter denying coverage stated:

- The *Dig* production "was shooting in Tel Aviv and Jerusalem";
- "Hamas began firing rockets into those cities"; and
- "Rockets launched toward areas where filming is taking place would no doubt reasonably constitute" imminent peril under the Policy.

Ex. 1 at 5. It would be contrary to the Ninth Circuit's order, which is now law of the case, to permit Defendant to introduce evidence or argument at trial suggesting there was a genuine ***factual dispute***, showing good faith, that Israel's conduct directed toward Gaza caused the relocation. *See, e.g.*, *United States v. Jingles*, 702 F.3d 494, 499-50 (9th Cir. 2012) (holding law of the case applies where "the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition'").

### B.   The Ninth Circuit Held That California Supreme Court Precedent Precluded Reliance on Israel's Conduct.

Moreover, the Ninth Circuit's decision explains the long-existing "efficient proximate cause" doctrine, citing binding, California Supreme Court precedent. "The California Supreme Court has held that the 'efficient proximate' cause is the 'predominant, or most important cause of a loss.'" *Universal Cable Prods., LLC*, 929 F.3d at 1161 (quoting *Julian*, 35 Cal.4th at 747). "Thus, 'the fact that an excluded risk contributed to the loss would not preclude coverage if such a risk was a remote cause of the loss.'" *Id.*

1   (quoting *Julian*, 35 Cal.4th at 747. As a result, the Ninth Circuit held that "even if Israel
2   countered Hamas' attacks," those actions were not "the proximate cause of Universal's
3   losses in moving the production of *Dig*." *Id.*

4   There is no genuine issue based on conflicting California case law concerning the
5   efficient proximate cause doctrine. To the contrary, on appeal, Atlantic relegated its
6   discussion of the "efficient proximate cause" doctrine to a single footnote in which it (1)
7   cited *Julian*, 35 Cal.4th at 754 and (2) stated that it "does not disagree with this legal
8   principle . . . ." Ex. 8 at 37 n.6. The Ninth Circuit's decision does not note any conflicting
9   case law calling into question whether the "efficient proximate cause" doctrine would
10  apply to this case. Instead, the Ninth Circuit cited the California Supreme Court's decision
11  in *Julian*—which was issued nearly a decade before Defendant denied the *Dig* claim.

12  **C.    Israel's Conduct in Gaza Is Irrelevant and Any Minimal Value Is
13        Outweighed by the Danger of Unfair Prejudice.**

14  The Ninth Circuit's decision on appeal leaves no room for Atlantic to argue it acted
15  in good faith by relying on Israel's conduct in Gaza (most of which occurred *after* Plaintiffs
16  decided to relocate *Dig*). As set forth above, there is no genuine factual or legal dispute
17  permitting Atlantic to claim "good faith" in denying coverage based on Israel's conduct in
18  Gaza (as opposed to Hamas' conduct in Israel).

19  Moreover, Defendant concedes that (1) the first date of Plaintiffs' loss was July 11,
20  2014, when they decided to postpone filming; (2) Plaintiffs decided to relocate on July 16,
21  2014; and (3) it was primarily after that on July 17, 2014, and continuing through the end
22  of August, that Israel took retaliatory action directed toward Gaza. Ex. 9 (Statement of
23  Genuine Issues) at 12, 78, 79. Against this backdrop, it would be substantially more
24  prejudicial than probative and risk confusing the issues under Federal Rule of Evidence
25  403 to permit Atlantic to introduce evidence or argument at trial showing video footage,
26  news articles, or other evidence concerning Israel's conduct in Gaza—most of which post-
27  dated Plaintiffs' decision to relocate.
28  //

Such evidence risks misleading the jury into believing it can find good faith based on there existing (1) a genuine factual dispute as to the proximate cause of Plaintiffs' loss or (2) a debate under California law as to the "efficient proximate cause" doctrine. Both lines of reasoning are contrary to and barred by the Ninth Circuit's decision on appeal.

It would be especially prejudicial to permit Atlantic to introduce evidence or argument that Israel's conduct following July 17 in Gaza was referred to as a "ground war" or the "50-day war." Such evidence is not only contrary to the Ninth Circuit's holding, but it would also (1) violate the maxim that the insurer's reasonableness must be evaluated as of the time it denied coverage and (2) mislead the jury into thinking that Atlantic could reasonably deny coverage due to the relocation *from Israel* based on subsequent events *in Gaza*. *Austero v. Nat'l Cas. Co.*, 84 Cal. App. 3d 1, 33 (1978), *disapproved on other grounds by Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 824 n.7 (1979) ("In evaluating the evidence to see if there was any unreasonable conduct . . . it is essential that no hindsight test be applied"; instead, reasonableness "must be measured as of the time [defendant] was confronted with a factual situation to which it was called upon to respond."). Because there is clearly no factual dispute that Hamas's rocket fire caused *Dig*'s relocation, the introduction of such evidence could only have the effect of suggesting to the jury—erroneously—that there was some question under California law whether an indirect cause like Israel's conduct could preclude coverage under the Policy. The jury cannot decide the state of the law (as opposed to the facts). And the Ninth Circuit's decision brooks no debate that California law on the "efficient proximate cause" doctrine was clear.

## III.   CONCLUSION

The necessary implication of the Ninth Circuit's ruling is that Israel's conduct in Gaza cannot reasonably have served as the basis for denying coverage. Any evidence or argument to the contrary violates the law of the case doctrine. *Jingles*, 702 F.3d at 499-50. Defendant remains free to argue at trial that there was a genuine factual dispute over whether Hamas was a de facto sovereign. But the Ninth Circuit's decision leaves no room for argument that Israel's conduct in Gaza demonstrates a genuine dispute.

1

2

**ATLANTIC SPECIALTY INSURANCE COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 3**

3      Plaintiffs' conflation of the genuine dispute doctrine with a misapplication of "law

4  of the case" contradicts both the record evidence and the law and, therefore, Plaintiffs'

5  Motion *in Limine* No. 3 should be denied.

6  **A.      Plaintiffs' Motion *in Limine* No. 3 seeks to bar record evidence that provides a**

7  **full explanation of the bases for the 2014 claim denial.**

8      Plaintiffs contend that Atlantic Specialty Insurance Company ("ASIC"), in

9  defending the reasonableness of its July 2014 claim decision, should be barred from

10  arguing the actual reasons it concluded, in July 2014, that the *Dig* production was first

11  pushed out by a week and then, a week later, relocated altogether.  Plaintiffs make this

12  contention simply because the Ninth Circuit took a different view on the causation point

13  five years later, in July *2019*.

14      However, even if ASIC's decision in 2014 were wrong, California's genuine

15  dispute doctrine allows ASIC to present the entirety of its belief and thinking at that time

16  as well as any truthful basis to support the reasonableness of its coverage determination:

17                [A]n insurer's denial of or delay in paying benefits gives rise to tort damages

18            only if the insured shows the denial or delay was reasonable. . . .  As a close

19            corollary of that principle, it has been said that "an insurer denying or

20            delaying the payment of policy benefits due to the existence of a genuine

21            dispute with its insured as to the existence of coverage liability or the

22            amount of the insured's coverage claim is not liable in bad faith even though

23            it might be liable in breach of contract."

24  *Wilson v. 21st Century Ins. Co.,* 42 Cal. 4th 713, 723 (2007) (citations omitted).

25      The genuine dispute that existed in July 2014 was not affected by a different

26  conclusion reached five years later by the Ninth Circuit.  Indeed, Plaintiffs themselves

27  admit, "'In evaluating the evidence to see if there was any reasonable conduct . . . it is

28

6

essential that no hindsight test be applied'; . . . .").  *See* Motion *in Limine* No. 3, at p. 5, ll. 12-14.

"Law of the case" based on the Ninth Circuit's 2019 decision has nothing to do with this case.  "Under the law of the case doctrine, an appellate court's determination of a legal issue 'must be following in all subsequent proceedings in the same case.'" *Chitkin v. Lincoln Nat'l Ins. Co.,* 879 F. Supp. 841, 849 (S.D. Cal. 1985) (emphasis added).  First, the trial issues of the rationale for ASIC's decision made in 2014 and the reasonableness of that rationale are fact issues, not legal issues.  Second, ASIC's 2014 decision was not subsequent to the Ninth Circuit's 2019 causation decision; the Ninth Circuit's decision did not exist in 2014 for ASIC to consider.

On these bases alone, Plaintiffs' Motion *in Limine* No. 3 should be denied.

**B.**     **Plaintiffs' Motion *in Limine* No. 3 ignores the Ninth Circuit's express recognition of the possibility that ASIC's claim denial was both correct and reasonable.**

The Ninth Circuit's decision in 2019 addressed only part of ASIC's claim denial (the applicability of Exclusion #1 and Exclusion #2 of the policy's "war risk exclusion").

The Ninth Circuit expressly left open the possibility that ASIC's denial of coverage was and is the only correct (and, therefore, reasonable) outcome of Plaintiffs' claim, based on either Exclusion #3 or Exclusion #4 of the war risk exclusion.  *Universal Cable Prods.,* 929 F.3d at 1162 n.10 ("We, of course, leave open the possibility that how the district court decides the third and fourth exclusions may affect its ultimate decision of Universal's bad faith claim.").

Accordingly, nothing in the Ninth Circuit's opinion would support restricting fact evidence of ASIC's bases for its claim decision.  For this reason, Plaintiffs' Motion *in Limine* No. 3 should be denied.

**C.     Plaintiffs' Motion in Limine No. 3 relies entirely on the Ninth Circuit's misinterpretation of ASIC's claim denial letter.**

Plaintiffs' motion relies entirely on the limited portion of the Ninth Circuit's July 2019 decision that states that Israel's counterattack against Hamas was not "the proximate cause of Universal's losses in moving the production of *Dig*. . . .   Universal's decision to relocate was a result of Hamas firing rockets into Israel (where filming was occurring) and not a result of Israel's retaliatory conduct."   *Universal Cable Prods., LLC v. Atlantic Specialty Ins. Co.,* 929 F.3d 1143, 1161 (9th Cir. 2019).

But the Ninth Circuit misreads ASIC's July 28, 2014, claim denial letter and overlooks record evidence.  The Ninth Circuit explains its conclusion as follows:

> Here, the record demonstrates that the efficient proximate cause for the ***relocation*** was <u>Hamas' rocket fire from Gaza into Israel</u>.  The district court's reliance on Israel's indirect contribution to continued hostilities from Hamas was not supported by any evidence in the record.  Atlantic's letter denying coverage noted that Universal had to ***relocate*** because of "heightened violence in [Israel]" due to <u>Hamas "firing rockets into those cities</u> [Tel Aviv and Jerusalem]" where filming was likely to occur.  More importantly, the district court did not consider what the predominant cause of *Dig*'s ***relocation*** actually was, and Atlantic provides no evidence that Israeli retaliation was the predominant cause of Universal's losses.

*Universal Cable Prods.,* 929 F.3d at 1161 (emphasis added).

However, where the Ninth Circuit reads ASIC's denial letter to say "relocate," the letter actually says "***production delay***" and "***push production by one week***."[1]

---

[1] Even if law of the case were at all relevant here, which it is not, an exception would preclude its application.  As stated by the Ninth Circuit in the case cited by Plaintiffs, "We may decline to apply the decision of a previous panel of our court as the law of the case if '(1) the decision is clearly erroneous and its enforcement would work a manifest injustice . . . .'" *United States v. Jingles,* 702 F.3d 494, 502-03 (9th Cir. 2012), *cited in* Motion *in Limine* No. 3 at p. 3, ll. 18-20.  The manifest injustice here would be to cut off

In fact, the referenced part of the denial letter makes a clear distinction between, on the one hand, the reasons Plaintiffs <u>delayed production by a week</u> on July 10, 2014 (which included rockets being fired into Tel Aviv and Jerusalem) and, on the other hand, the reasons Plaintiffs later <u>relocated the production</u> (which included events in Gaza and Israel's invasion of Gaza).

The Ninth Circuit construed only the following part of ASIC's denial letter:

> On <u>Thursday, July 10th, 2014</u>, NBCU contacted Peter Williams, the President of OneBeacon Entertainment (OBE) and orally submitted a claim for extra expenses associated with a ***production delay*** caused by the heightened violence in that country.  <u>At the time</u>, the production was shooting in <u>Tel Aviv and Jerusalem</u>.  On <u>Tuesday, July 7th</u>, Hamas began firing rockets <u>into those cities</u>, which had not been the target of rocket attacks since 2012.  Claiming that its personnel were in 'imminent peril,' <u>the producers advised that they would **push production by one week**</u>.

*See* Exh. 1 to Motion *in Limine* No. 3, 2014-07-28 Letter from Ms. Johnson to Ms. Garber (emphasis added).

The Ninth Circuit overlooked (and Plaintiffs would have this Court overlook, *see, e.g.,* Motion at 3, ll. 9-15) two important things:  (a) the portion of the denial letter relied upon by the Ninth Circuit relates only to a telephone call on July 10, 2014, to discuss why, as of <u>that</u> time, there was a "production delay" and why Plaintiffs decided to "push production by one week," and (b) in the very next portion of the same letter, ASIC recites at length the <u>different, additional</u> facts and circumstances that were discussed on a July 17, 2014 telephone call explaining the cause of Plaintiffs' decision, which was reached <u>after</u> the July 10 telephone call, to actually <u>relocate</u> the production altogether.  *See* Exh. 1.

And, contrary to the Ninth Circuit's statements on which Plaintiffs' Motion *in Limine* No. 3 is based, this evidence of ASIC's reasoning was, in fact, in the summary

---

entirely ASIC's ability to explain and defend, with facts, its coverage decision *at the time it was made in 2014,* which is the issue in this case.

judgment record.  That subsequent portion of the letter includes the following analysis by ASIC regarding Plaintiffs' decision to relocate:

- "Claiming that its personnel were in 'imminent peril,' the producers advised that they would push production by one week.  This decision was based on reports from personnel in Tel Aviv and an email to the production [team] dated July 10, 2014, from Stephen Smith, the head of NBCU security for Europe, stating:

  \*   \*   \*

  NBCU Security have monitored and evaluated the events in Israel, Gaza and the West Bank, since inception and analyzed information from multiple sources.  All current intelligence and activity in country points to events still being in escalation phase without a predictable or realistic timeframe for a reduction in hostilities.  We have looked at the magnitude and range, of current rocket attacks (which appear to target locations to be used in forthcoming filming), the escalation of civil disorder and potential for a further increase in hostilities including a ground campaign and acts of terrorism within Israel, all of which mean there is no short term and realistic likelihood for positive changes to the security landscape."

  \*   \*   \*

- "On Monday, July 14th, NBCU finalized its decision to push the production for one week . . . ."

- "In that conversation, you also mentioned that if the hostilities did not deescalate, there was a chance that NBCU would decide to move the production to another country or back to the United States. . . ."

- "In the meantime, the hostilities between Israel and Hamas worsened."

10

- "On <u>Tuesday, July 15th</u>, Hamas <u>refused to agree to a cease-fire</u> suggested by Egypt."

- "<u>In response,</u> <u>Israeli President Netanyahu</u> gave the <u>military authorization</u> to use <u>'full force'</u> <u>against militants</u> <u>in Gaza</u> stating, 'Hamas chose to continue fighting and will pay the price for that decision. . . . When there is no cease-fire, <u>our answer is fire</u>.'"

- "According to the Washington Post, citing Israeli news reports, 'by <u>early Wednesday morning [July 16, 2014]</u>, <u>Israel had struck at least 25 targets inside Gaza</u>, including the home of a senior Hamas leader, Mahmoud Al Zahar.'"

- "'Hamas militants fired at least 13 rockets into southern Israel, seven of which were intercepted by Israel's Iron Dome air defense system.'"

- "Israel then called up an additional 18,000 reservists and announced plans for a <u>ground attack on Gaza</u>."

- "Israel dropped leaflets <u>into Gaza</u> warning the population to evacuate."

- "On Thursday, Israel began <u>a ground invasion into Gaza</u>, <u>including</u> the <u>use of tanks and gunboats</u>."

- "On Thursday afternoon [<u>July 17, 2014</u>], we had another telephone conversation . . . ."

- "<u>In this conversation</u>, you informed us that NBCU had decided to move the production <u>due to the ongoing hostilities</u> which were creating dangerous conditions in Tel Aviv and Jerusalem."

- "I informed you that we were seriously considering whether the exclusion for war and warlike actions would preclude coverage for the claim.  Peter Williams had informed Susan Weiss the night before that we were evaluating whether the exclusion would apply to the situation in Israel."

11

1    •   "The key question is whether the hostilities causing the imminent peril

2        will be considered to be a war, or warlike action by military force.

3        Case law and other treatises indicate that this would be the likely

4        finding.  Therefore, the war exclusion should apply."

5    *See* Exh. 1 to Motion *in Limine* No. 3, 2014-07-28 Letter from Ms. Johnson to Ms.

6    Garber (emphasis added).

7        In addition, Stephen Smith, the NBCU security head, has already testified that he

8    considered Israel's decision to launch Operation Protective Edge as a factor in assessing

9    the escalation risk (*see* Exh. 1, Smith Dep. at 170-71); that the escalation was a key

10   component of his security assessment (*see* Exhs. 1-2, Smith Dep. at 171, 264-65); that the

11   back and forth, including cross-border fire on July 7, 2014, between Hamas and Israel

12   and numerous air strikes in Gaza increased the risk to the production (*see* Exhs. 2-3,

13   Smith Dep. at 262, 341-43); that the conflict was two-sided (*see* Exh. 4, Smith Dep. at

14   364-65); and, that Israel's decision to call up troops for a ground invasion into Gaza was

15   a factor in assessing escalation risk (*see* Exh. 5, Smith Dep. at 387-89).[2]

16       Notwithstanding this clear state of the record, Plaintiffs are contending that ASIC

17   should not be able to argue that among its reasons for denying coverage were (1) Israel's

18   contribution to Hamas' escalation of violence, or (2) the actions of Israel, a recognized

19   sovereign, in Gaza.  *See* Motion *in Limine* No. 3, at p. 2, ll. 19-22.  More specifically,

20   Plaintiffs take issue with ASIC's "inten[tion]s to introduce evidence and argument that

21   Israel, a sovereign, launched a 'ground war' into Gaza after Plaintiffs decided to relocate-

22   -a conflict that was subsequently referred to in the media as a '50-day war.'"  *See* Motion

23   *in Limine* No. 3, at p. 2, ll. 3-5.  However, as is plainly stated in ASIC's denial letter on

24   July 28, 2014, that same ground war -- which Plaintiffs admit was the beginning of the

25

26

27   _____

28   [2] True and correct copies of the cited excerpts from the transcript of Mr. Smith's
     deposition testimony are attached as Exhibits 1, 2, 3, 4, and 5 to the Declaration of Marc
     J. Shrake submitted with this Opposition.

"50-day war" -- began before Plaintiffs advised ASIC it was relocating the production. *See* Exh. 1 to Motion *in Limine* No. 3.

Accordingly, the Court should deny Plaintiffs' request to prohibit ASIC from arguing that Israel's escalation of the violence or Israel's actions in Gaza, including but not limited to the "ground invasion into Gaza" (to start the "50-day war") referenced in ASIC's denial letter, caused Plaintiffs to relocate the *Dig* production, regardless of how the Ninth Circuit read ASIC's denial letter five years later.

For all these reasons,  ASIC respectfully asks the Court to deny Plaintiffs' Motion *in Limine* No. 3.

///

////

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

1    **PLAINTIFFS' REPLY IN SUPPORT OF MOTION IN LIMINE NO. 3:**

2    **I.    INTRODUCTION**

3        Defendant's opposition is remarkable. It does not dispute that California's "efficient

4    proximate cause" doctrine was clearly-established, meaning there was no objectively

5    reasonable legal argument to the contrary. Nor does it dispute that the Ninth Circuit held

6    there was "no evidence" that Hamas's rocket fire, rather than Israel's conduct, was the

7    "efficient proximate cause" of Plaintiffs' loss. Instead, Defendant uses three tactics to avoid

8    the necessary implication of the Ninth Circuit's decision—that Defendant cannot rely on

9    Israel's conduct toward Gaza as supporting its "genuine issue" defense.

10       *First*, Defendant argues that the Ninth Circuit's findings are not law of the case

11   because (1) law of the case only applies to legal rulings and not their factual underpinnings

12   and (2) this is not a "subsequent" proceeding under the doctrine. To the contrary, the Ninth

13   Circuit has held that its decisions on "a factual or legal issue must be followed in all

14   subsequent proceedings in the same case in the trial court . . . ." *Pit River Home & Agr.*

15   *Co-op Ass'n v. United States*, 30 F.3d 1088, 1096 (9th Cir. 1994).

16       *Second*, Defendant invites this Court to ***overrule the Ninth Circuit*** because the Ninth

17   Circuit "misread[]" its denial letter and "overlook[ed]" summary judgment evidence. Of

18   course, that is precisely what the law of the case doctrine prohibits. This court is "bound to

19   follow" the decision of the Ninth Circuit. *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir.

20   2000). In any event, the Ninth Circuit did no such thing. Contrary to Defendant's assertion,

21   its own denial letter indeed recognized that Plaintiffs' decision "to move the production

22   out of Israel" was caused by "[r]ockets launched toward areas where filming is taking

23   place…." Bonn Decl. Ex. 1 at 5.

24       *Third*, Defendant suggests that Israel's conduct is relevant to its good faith defense

25   because it was "a factor" that contributed to escalating Hamas's rocket fire. *Supra* at 8-9.

26   But the legal test Defendant was required to consider in assessing coverage was not

27   whether an excluded cause was "a factor" in causing a loss—but rather whether it was the

28   "predominant, or most important cause" of the loss. *Universal Cable Prods., LLC v. Atl.*

*Specialty Ins. Co.*, 929 F.3d 1143, 1161 (9th Cir. 2019) (emphasis added).The Ninth Circuit held "Atlantic provides **no evidence** that Israeli retaliation was the predominant cause of Universal's loss." *Id.* (emphasis added).

The Ninth Circuit's decision is law of the case. It does not recognize any split of authority on whether an excluded cause must be the "predominant" cause of a loss. And it precludes Defendant from arguing there was evidence that Israel's conduct was the "predominant" cause (as opposed to merely "a factor," as Defendant now argues). As Defendant's opposition effectively concedes, this Court would need to overrule the Ninth Circuit in order to permit such evidence at trial. That is simply not permitted.

## II.   ARGUMENT

### A.   On Remand, the Ninth Circuit's Decision is Law of the Case on Factual and Legal Issues It Decided Explicitly or by Necessary Implication.

As an initial matter, Defendant cites a thirty-plus-year-old district court decision for the proposition that the law of the case doctrine applies only to the "appellate court's determination of a legal issue." *Supra* at 7 (citing *Chitkin v. Lincoln Nat'l Ins. Co.*, 879 F. Supp. 841, 849 (S.D. Cal. 1985)). But the Ninth Circuit has made clear that the law of the case doctrine applies to both factual and legal issues that have been decided on appeal:

> The "law of the case" rule ordinarily precludes a court from re-examining an issue previously decided by the same court, or a higher appellate court, in the same case. A decision on *a factual or legal issue* must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court . . . .

*Pit River Home*, 30 F.3d at 1096 (quotation marks and citation omitted) (emphasis added).

Defendant then argues that law of the case does not apply here because it denied coverage in 2014, but the Ninth Circuit decision issued in 2019. *Supra* at 7. That is of no moment. Under the law of the case doctrine, the Ninth Circuit's "decision on a factual or legal issue must be followed in all subsequent proceedings in the same case in the trial court . . . ." *Pit River Home*, 30 F.3d at 1096. The trial in this case is a "subsequent proceeding" in "the same case in the trial court" and the law of the case doctrine applies. *Id.*

7088596v1/015825

Defendant does not actually dispute that the Ninth Circuit explicitly found the following:

- "Universal's decision to relocate production was a result of Hamas firing rockets into Israel (where filming was occurring), and not a result of Israel's retaliatory conduct";

- "The California Supreme Court has held that the 'efficient proximate' cause is the 'predominant, or most important cause of a loss'";

- "[R]eliance on Israel's indirect contribution to continued hostilities from Hamas was not supported by any evidence in the record. Atlantic provides *no evidence* that Israeli retaliation was the predominant cause of Universal's loss";

*Universal Cable Prods.,* 929 F.3d at 1161. Instead, Defendant remarkably devotes its opposition brief to arguing that the Ninth Circuit got it wrong and this Court should overrule the Court of Appeal.

## B.   The Ninth Circuit's Decision Precludes Good Faith Based on a Legal Dispute Over the "Efficient Proximate Cause" Doctrine.

Defendant cannot show good faith by suggesting it had a reasonable, but ultimately erroneous, view of California's law on causation. The Ninth Circuit recognized that the "California Supreme Court has held that the 'efficient proximate' cause is the 'predominant, or most important cause of a loss,'" citing a California Supreme Court decision from 2005. *Id.* (quoting *Julian v. Hartford Underwriters Inc. Co.*, 35 Cal.4th 747, 754 (2005)).

The "reasonableness of the legal argument advanced by" an insurance company "presents a pure question of law" for the Court, rather than a jury, to decide. *Morris v. Paul Revere Life Ins. Co.*, 109 Cal. App. 4th 966, 973 (2003). For instance, an insurance company may be found to have acted in good faith based on a reasonable, but erroneous, legal argument where there is a "split of opinion among the Courts of Appeal" that the California Supreme Court had yet to resolve. *Id.* at 970, 975. That argument does not apply here. As the Ninth Circuit recognized, the "efficient proximate cause" doctrine was clearly articulated by the California Supreme Court no later than 2005.

16

1   Defendant's opposition says absolutely nothing about this issue. It cites zero legal

2   authority that would have permitted it to deny coverage based on, at best, an "indirect"

3   contribution to Plaintiffs' loss (*i.e.*, Israel's actions)—as opposed to the "predominate"

4   cause (*i.e.*, Hamas's rocket fire). Instead, Defendant's opposition is silent about the

5   "efficient proximate cause" doctrine altogether, effectively conceding that the California

6   Supreme Court's decision in *Julian* settled the legal issue for good.

7   The law on the "efficient proximate cause" doctrine was clear and Defendant cites

8   no authority suggesting that it had a good faith, but erroneous, legal argument to the

9   contrary.

10   ### C.   The Ninth Circuit's Decision Precludes Good Faith Based on a Factual Dispute Whether Israel Was the "Predominant Cause" of the Loss.

11

12   As a result, Israel's conduct could only possibly be relevant to Defendant's good

13   faith defense if there were facts on which Defendant could have believed, in good faith if

14   erroneously, that Israel's conduct was the "predominant cause" of Plaintiffs' loss. But the

15   Ninth Circuit's decision forecloses that argument as a matter of law, as it held: "Atlantic

16   provides *no evidence* that Israeli retaliation was the predominant cause of Universal's

17   loss." *Universal Cable Prods.*, 929 F.3d at 1161 (emphasis added).

18   Defendant, remarkably, asks this Court to *overrule the Ninth Circuit* based on the

19   *summary judgment record*. Indeed, Defendant says the Ninth Circuit "misread[] ASIC's

20   July 28, 2014 claim denial letter" and "overlook[ed] record evidence." *Supra* at 8. However

21   much Defendant might wish it, this Court cannot overrule the Ninth Circuit's evaluation

22   of the summary judgment evidence absent an intervening change in law. *See, e.g., Day v.*

23   *Apoliona*, 496 F.3d 1027, 1031 (9th Cir. 2007) (noting there are limited "circumstances in

24   which a district court . . . can disregard circuit precedent because of intervening Supreme

25   Court authority" but "this is simply not one of those instances"); *Yong*, 208 F.3d at 1119

26   n.2 ("[O]nce a federal circuit court issues a decision, the district courts within that circuit

27   are bound to follow it . . . ."). And Defendant's suggestion that the Ninth Circuit

28

"misread[]" its denial letter and "overlook[ed]" summary judgment evidence is, in any event, mistaken.

The Ninth Circuit did not "misread" Defendant's letter as acknowledging Hamas's rocket fire was the predominant cause of Plaintiffs' relocation. Indeed, the Ninth Circuit quoted the portion of Atlantic's letter "stat[ing] that '[r]ockets launched toward areas where filming is taking place would no doubt reasonably constitute' a covered imminent peril." *Universal Cable Prods.*, 929 F.3d at 1150. In the section of its opinion addressing the "efficient proximate cause" doctrine, the Ninth Circuit reiterated that "Atlantic's letter denying coverage noted that Universal had to relocate because of 'heightened violence in [Israel]' due to Hamas 'firing rockets into those cities [Tel Aviv and Jerusalem]' where filming was likely to occur." *Id.* at 1161. Defendant suggests that its denial letter only stated that Hamas's rocket fire caused the delay of production and not the relocation. *Supra* at 8-9. Not true. Defendant's denial letter read as follows:

### III. <u>ANALYSIS</u>

#### *Imminent Peril*

> Based on Mr. Smith's email to the production and what we know about the present conflict, we believe that the extra expenses that will be incurred ***to move the production out of Israel*** will be due to imminent peril. ***Rockets launched toward areas where filming is taking place would no doubt reasonably constitute*** a 'certain, immediate and impending danger of such probability and severity to person or property that it would be unreasonable or unconscionable to ignore.' With hostilities increasing, there remains a certain, immediate and impending danger. The question is not whether the loss falls within the insuring clause but whether the war exclusion or the terrorism coverage applies.

Bonn Decl. Ex. 1 (emphasis added). Defendant's letter thus expressly conceded that "[r]ockets launched toward areas where filming is taking place"—*i.e.*, from Gaza toward Israel—caused Plaintiffs to "move the production out of Israel." The Ninth Circuit did not "misread" the denial letter at all; instead, Defendant mischaracterizes it.

*Second*, Defendant suggests that the Ninth Circuit "overlooked" evidence in the summary judgment record that "Israel's decision to launch Operation Protective Edge" and engagement with Hamas "in Gaza" was "***a factor***" in Plaintiffs' assessment of risk. *Supra*

at 12 (emphasis added). But, as the Ninth Circuit recognized, the relevant legal question was not whether Israel's conduct was "a factor" in the relocation—but rather whether it was the "'predominant, or most important cause of [the] loss.'" *Universal Cable Prods.*, 929 F.3d at 1161 (quoting *Julian*, 35 Cal.4th at 747). As to the latter question—the one Atlantic was required to consider based on clearly-established California law—the Ninth Circuit held that "Atlantic provides ***no evidence*** that Israeli retaliation was the ***predominant cause*** of Universal's loss." *Id.* (emphasis added). Instead, the Ninth Circuit recognized that the "evidence indicates that, at the least, Universal's decision to relocate production was a result of Hamas firing rockets into Israel (where filming was occurring), and not a result of Israel's retaliatory conduct."

*Finally*, Defendant argues that its denial letter cited Israel's conduct as a reason for denying coverage. That much is a given. But this trial is no longer about coverage—it is about whether Defendant's denial-of-coverage was in ***good faith***. The Ninth Circuit's decision simply leaves no room for Defendant to argue that there was either (1) a good-faith legal dispute as to whether the excluded cause must be the "predominant cause" of the loss or (2) any evidence on which Atlantic could have believed in good faith (if erroneously) that Israel's conduct was the "predominant cause" (as opposed to merely "a factor" in causing) Plaintiffs' loss. Permitting Defendant to raise either argument at trial would contradict the Ninth Circuit's decision and, thus, violate the law of the case doctrine.[3]

### D.   Evidence of Israel's Conduct in Gaza During 50-Days After Plaintiffs Relocated Is Substantially More Prejudicial Than Probative.

Moreover, permitting Defendant to introduce evidence or argument about Israel's alleged "ground war" in Gaza—which has been referred to colloquially in the news media as the "50-Day War"—would be substantially more prejudicial than probative. As discussed above, such evidence is irrelevant to the "efficient proximate cause" of Plaintiffs'

---

[3] Defendant argues such evidence is relevant to Exclusions 3 and 4. This Court disposed of such exclusions as a matter of law and they cannot be relitigated at trial either.

relocation and to any good faith defense. Such evidence could only lead the jury to make improper inferences, such as (1) that after-the-fact evidence in Gaza is relevant to an earlier decision to relocate or denial-of-coverage; (2) that Israel's conduct could reasonably have been construed as causing Plaintiffs' loss (contrary to the Ninth Circuit's holding that Atlantic cited "no evidence" to that effect); or (3) that the colloquial use of the term "war," untethered to the special meaning based on sovereignty, matters. There are, in short, no permissible inferences that the jury could draw from after-the-fact conduct by Israel in Gaza—only impermissible, and thus prejudicial, ones.

## III.   **CONCLUSION**

The Ninth Circuit's decision was clear: California law only permits an exclusion to apply where it is the "predominant" cause of the loss, and there was "no evidence" that Israel's conduct was the "predominant" cause of Plaintiffs' loss. That decision forecloses any argument that there was a good faith legal dispute over the "efficient proximate cause" doctrine, or a good faith factual dispute as to what caused Plaintiffs' loss. And however much Defendant may wish for this Court or the jury to overrule the Ninth Circuit's decision, the law of the case doctrine does not permit such a result. As such, Plaintiffs respectfully request that the Court grant their motion.


DATED:      January 17, 2020                SUSMAN GODFREY L.L.P.

                                            */s/ Amanda Bonn*
                                            KALPANA SRINIVASAN (237460)
                                            ksrinivasan@susmangodfrey.com
                                            AMANDA K. BONN (270891)
                                            abonn@susmangodfrey.com
                                            CATRIONA LAVERY (310546)
                                            clavery@susmangodfrey.com
                                            SUSMAN GODFREY L.L.P.
                                            1900 Avenue of the Stars, Suite 1400
                                            Los Angeles, CA 90067-6029
                                            Tel: (310) 789-3100
                                            Fax: (310) 789-3150

7088596v1/015825

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

DATED:  January 17, 2020          MARC J. SHRAKE
                                  FREEMAN MATHIS & GARY, LLP

                                          -and-

                                  CHRISTOPHER W. MARTIN (Pro Hac Vice)
                                  MELINDA R. BURKE (Pro Hac Vice)
                                  MARTIN, DISIERE, JEFFERSON & WISDOM LLP


                                  *s/ Christopher W. Martin*
                                  Attorneys for Defendant ATLANTIC SPECIALTY INSURANCE COMPANY

### ATTESTATION REGARDING SIGNATURES

I, Amanda Bonn, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By: */s/ Amanda Bonn*

7088596v1/015825

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I certify that on January 17, 2020, I filed the foregoing with the Clerk of the United States District Court for the Central District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

By: */s/ Amanda Bonn*

7088596v1/015825