KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ATLANTIC SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | Case No.: 2:16-cv-4435-PA-MRW <br><br> The Honorable Percy Anderson <br><br> **JOINT MOTION IN LIMINE NO. 2: PLAINTIFFS' MOTION TO PRECLUDE DEFENDANT FROM CONTRADICTING ITS DENIAL-OF-COVERAGE LETTER** <br><br> Hearing Date: February 10, 2020, <br> Time: 1:30 p.m. <br> Pretrial Conference: January 17, 2020 <br> Place: Courtroom 9A <br> Trial Date: February 18, 2020 |

**PLAINTIFFS' MOTION IN LIMINE NO. 2:**

## I.   INTRODUCTION

Plaintiffs move to preclude Defendant from introducing evidence or argument suggesting that it acted in "good faith" or that there was a "genuine issue" regarding coverage based on evidence that is contrary to Defendant's own letter denying coverage. This includes:

- Evidence concerning Exclusion 3 ("insurrection") and Exclusion 4 ("weapons of war including atomic fission");

- Evidence concerning any purported "plain and ordinary meaning" of Exclusion 1 for "war" and Exclusion 2 for "warlike action by a military force" (including expert evidence, news articles, and videos); and

- Any expert opinions concerning Hamas's alleged "sovereignty."

Defendant's July 28, 2014, letter denying coverage did not cite Exclusions 3 and 4; conceded that the insurance industry's meaning of Exclusions 1 and 2 require sovereignty; and failed to cite any expert opinion supporting the notion that Hamas is a sovereign.

This trial should be short, streamlined, and focused on two questions: (1) the amount of Plaintiffs' damages and (2) whether the bases Defendant provided for denying coverage and the investigation preceding it were made in good faith. Under black-letter, California law, evidence that Defendant failed to cite in its letter denying coverage cannot serve as the basis for applying the "genuine dispute" doctrine as a defense to bad faith. *Century Surety Co. v. Polisso*, 139 Cal. App. 4th 922, 951 (2006), *as modified on denial of reh'g* (June 16, 2006). Such evidence is therefore irrelevant under Federal Rule of Evidence 402.

But Defendant's exhibit list, deposition designations, and proposed jury instructions indicate that they intend to introduce extensive, irrelevant, and prejudicial evidence concerning issues and theories it did not rely on at the time it denied coverage. Such evidence is not only irrelevant, but any minimal probative value it may have is substantially outweighed by the danger of unfair prejudice, confusing the issues, and wasting time under Federal Rule of Evidence 403. Defendant apparently wants to convert a simple, 3-day trial into a complicated 3-week trial on ancillary issues by: (1) putting at issue two exclusions

1

on which it never relied to deny coverage; (2) introducing extensive evidence about an alleged "plain and ordinary meaning" that does not apply as a matter of law and that Defendant itself did not rely on at the time; and (3) interjecting expert opinions about Hamas's supposed "sovereignty" which are contrary to the Ninth Circuit's order and which Defendant never solicited before denying coverage.

The Court should preclude such evidence under California case law, Federal Rule of Evidence 402, and Federal Rule of Evidence 403.

## II.  ARGUMENT

### A.  Defendant Cannot Show a "Genuine Dispute" By Raising Grounds Outside Its Denial-of-Coverage Letter.

"Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall":

> [P]rovide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge. Where an insurer's denial of a first party claim, in whole or in part, is based on a specific statute, applicable law or policy provision, condition or exclusion, the written denial shall include reference thereto and provide an explanation of the application of the statute, applicable law or provision, condition, or exclusion to the claim.

10 Cal. Code Regs. § 2695.7(b)(1).

Bad faith requires a showing that Defendant's "reason for withholding the benefits" due under the Policy "was unreasonable or without proper cause." *Century Surety Co.*, 139 Cal. App. at 951. "In evaluating the evidence to see if there was any unreasonable conduct … it is essential that no hindsight test be applied"; instead, reasonableness "must be measured as of the time [defendant] was confronted with a factual situation to which it was called upon to respond." *Austero v. Nat'l Cas. Co.*, 84 Cal. App. 3d 1, 33 (1978), *disapprv'd on other grounds by Egan v. Mut. of Omaha Ins. Co.*, 24 Cal.3d 809, 824 n.7 (1979). "To defeat the element of unreasonable denial of benefits," an insurer may invoke the "genuine dispute doctrine." *Century Surety Co.*, 139 Cal. App. 4th at 951. "That doctrine holds that an insurer does not act in bad faith when it mistakenly withholds policy benefits, if the mistake is reasonable or is based on a legitimate dispute as to the insurer's liability." *Id.*

015825\7088597

However, "the reasonableness of the insurer's actions and decision to deny benefits" is evaluated "as of the time they were made rather than with the benefit of hindsight." *Id.*

Therefore, an insurer may not defend against a bad faith claim based on grounds outside of its denial-of-coverage letter. In *Century Surety Co.*, the insurer argued that "it was reasonable for it to deny coverage based on policy language providing that the coverage of the glass ceased" after installation. *Id.* at 953. However, in denying coverage, the insurer "relied solely on policy language excluding damage caused by flooding and damages associated with defective materials or faulty workmanship," which "grounds were stated in [the insurer's] letter to the Polissos denying coverage . . . ." *Id.* The insurer later asserted for the first time in opposition to a motion for summary adjudication that "the glass had been installed when it was damaged and therefore was no longer covered." *Id.*

The court recognized that "the denial of an insurance claim on one ground, absent clear and convincing evidence to suggest otherwise, does not impliedly waive grounds not stated in the denial letter." *Id.* at 953 n.17. "This principle is applied in insurance coverage cases" because "the insurer's failure to state a reason should not serve to create coverage for losses not covered in the policy in the absence of an intention to relinquish known rights." *Id.* However, the court held that this reasoning was ***inapplicable*** in the context of a ***bad faith claim***:

> Assuming Century could have relied on this ground and that it would have become a genuine dispute, in fact no such dispute occurred. The question here is not a coverage question but whether Century acted in bad faith when it failed to pay under the policy. As stated, the reasonableness of the insurer's decision to deny benefits must be evaluated as of the time the decision was made. ***Since Century did not cite permanent installation as a ground for denial of coverage when the claim was tendered, it was never the subject of a genuine dispute between the parties***.

*Id.* at 953 (emphasis added). Here, Defendant provided its letter denying coverage and explaining the bases therefore on July 28, 2014. Ex. 1. As set forth below, Defendant cannot introduce evidence or argument at trial suggesting that there was a "genuine dispute" based on issues or reasoning that it failed to raise in its July 28, 2014 letter.

### B.    Any Evidence Concerning Exclusions 3 and 4 Should Be Excluded.

015825\7088597

1       *First*, Defendant's letter denying coverage failed to rely on Exclusion 3 for

2 "insurrection" or Exclusion 4 for "warlike action by a military force." As such, the Court

3 should bar any evidence or argument concerning Exclusions 3 and 4 at trial under Federal

4 Rules of Evidence 402 and 403.

5       At most, the letter quoted from the entirety of the "War Exclusions" (*i.e.*, Nos. 1-4)

6 in a section of the letter titled "Pertinent Policy Provisions." *Id.* at 3-4. However, nowhere

7 in the letter did Defendant state that it was relying on either Exclusion 3 or Exclusion 4 as

8 a basis for denying coverage. To the contrary, in the "Analysis" section of its letter,

9 Defendant stated: "The key question is whether the hostilities causing the imminent peril

10 will be considered to be a war, or 'warlike action by a military force.'" *Id.* at 5. The

11 Analysis section then proceeded to explain why, in Defendant's view, Exclusions 1 and 2

12 barred coverage, while saying nothing (1) explaining that Exclusions 3 or 4 may also bar

13 coverage or (2) analyzing how Exclusion 3 or Exclusion 4 applied to the facts of this claim.

14 Defendant's mere "reference" to Exclusions 3 and 4 does not suffice under California law,

15 as Defendant failed to "provide an explanation of the application of the . . . exclusion[s] to

16 the claim." 10 Cal. Code Regs. § 2695.7(b)(1).

17       Thus, Exclusion 3 and 4 are irrelevant under Federal Rule of Evidence 402 to the

18 question whether Defendant breached the implied covenant of good faith and fair dealing

19 in denying coverage. Defendant denied coverage based on Exclusions 1 and 2—not

20 Exclusions 3 and 4. While the omission of Exclusions 3 and 4 from the letter may not have

21 waived them as defenses to ***coverage***, coverage has already been decided as a matter of

22 law. *Century Surety Co.*, 139 Cal. App. 4th at 953 n.17. Such evidence has no bearing on

23 whether Defendant acted in bad faith. *Id.* at 953.

24       Moreover, evidence regarding such exclusions would confuse the issues and waste

25 time at trial and thus should be excluded under Federal Rule of Evidence 403. For instance,

26 during the drafting and negotiation history of Exclusion 4, the parties agreed to "Martin's

27 Final Form" which stated "weapons of war ***employing*** atomic fission." Dkt. 81 at ¶ 157,

28 193, 195; Ex. 2 at 98:22-104:14. After Plaintiffs' broker and Defendant agreed to that form,

Defendant subsequently ***changed*** the language to state "weapons of war ***including*** atomic fission" without ever notifying Plaintiffs. Ex. 2 at 110:5-115:13. Defendant subsequently relied on the word "including" in this litigation to suggest that Exclusion 4 had a broader meaning. *See, e.g.*, Dkt. 57 at 20.

Should Defendant be permitted to argue it acted in good faith based on Exclusion 4, Plaintiffs would need to introduce additional testimony and documentary evidence from the drafting history to show that Defendant secretly changed the wording of Exclusion 4 behind Plaintiffs' backs. They would also be entitled to extensive jury instructions making it clear Atlantic should have known that (1) it could not benefit from its fraud on Plaintiffs during the Policy's negotiation and (2) any ambiguity in Exclusion 4 would have been resolved against Atlantic as the drafter. *See, e.g.*, CACI 306 Unformalized Agreement; CACI 313 Modification; CACI 320 Interpretation—Construction Against Drafter; CACI 330 Affirmative Defense—Unilateral Mistake of Fact; CACI 335 Affirmative Defense—Fraud. The interjection of such issues unnecessarily complicates the trial and risks confusing the issues and wasting time. These dangerous substantially outweigh any theoretical probative value that Exclusions 3 and 4 may have (in fact, they have none).

## C.  <u>Evidence Concerning a Different "Plain and Ordinary Meaning" Not Requiring Sovereignty Should Be Excluded.</u>

*Second*, in explaining why Exclusions 1 and 2 applied, Defendant's letter ***conceded*** that in the insurance industry, both exclusions require actions by sovereign nations. The Ninth Circuit recognized that "Atlantic's own denial letter stated that 'Appelman on Insurance discusses exclusions for war, including the meaning of war and similar terms. 'War is … between 'states or state-like entities.'" *Universal Cable Prods., LLC v. Atlantic Specialty Ins. Co.*, 929 F.3d 1143, 1154 (9th Cir. 2019). Similarly, Defendant acknowledged that Exclusion 2 was limited to "warlike action" by a "***military force of a sovereign nation***." Ex. 1 at 7 (emphasis added). The letter then argued, erroneously that (1) "Hamas is a military force of a government, the government of Gaza" and (2) alternatively, Israel's sovereignty sufficed to trigger Exclusion 2. *Id.*

1    Here, as in *Century Surety Co.*, Defendant cannot argue that there was a "genuine

2    dispute" about whether Exclusions 1 and 2 required sovereignty by attempting to invoke

3    an alternate "plain and ordinary" meaning that it failed to articulate at the time. *Century*

4    *Surety Co.*, 191 Cal. App. 3d at 953 ("Since Century did not cite permanent installation as

5    a ground for denial of coverage when the claim was tendered, it was never the subject of a

6    genuine dispute between the parties."). To show that it acted in good faith at trial,

7    Defendant must show it had a reasonable basis for concluding that Hamas was a sovereign

8    rather than a terrorist organization and that it held that view in good faith. Defendant's

9    letter denying coverage, for instance, cited a Congressional Research Service report as the

10   basis for its conclusion that Hamas is a sovereign. Ex. 1 at 7-8 ns. 1-3. Defendant is free to

11   explain as much to the jury and attempt to persuade the jury that it relied on that report in

12   good faith, even if it was mistaken.

13   Instead, Defendant has made clear that it intends to interject evidence suggesting

14   that (1) the "plain and ordinary" meaning of Exclusions 1 and 2 does not require

15   sovereignty and (2) anyone reading news articles and watching videos of what was

16   happening at the time would have colloquially understood what was happening was a

17   "war." For instance, one of Defendant's experts, Mr. Clark, intends to opine that "[b]ased

18   on [his] experience in the handling, review, and denial of claims," Defendant "properly

19   conducted a thorough and timely investigation" and "made a reasonable determination"

20   concerning Plaintiffs' claim. Ex. 3. But Mr. Clark expressly based his opinion on what he

21   deemed to be "the common understanding and ordinary meaning" of "war" and "warlike

22   action." *Id.* at 7. Mr. Clark conceded as much in his deposition, testifying that he applied

23   "the basic definition of armed conflict – between two entities":

24          Q.     Do the two entities need to have indicia of sovereignty?

25          A.     No.

26          Q.     They don't?

27          A.     No, I don't think so.

28          Q.     Does Hamas have indicia of sovereignty?

6

A.      I don't believe they do, no.

Ex. 4 at 49:13-21. Similarly, a second of Defendant's experts, Professor de Frankopan, intends to opine that "[t]he prolonged and intense fighting between Hamas and Israel from June – August 2014 constituted a 'war' or 'war like activities' . . . as understood un common language." Ex. 5 at 2. A third expert Mr. Lowenstein intends to opine that "under common understanding or usage of the terms this conflict was a war" and "certainly included numerous warlike actions . . . ." Ex. 6 at 1. A fourth expert Professor Quigley intends to opine that "the 2014 Gaza-Israel hostilities constituted a war as that term is used in international law and in ordinary parlance." Ex. 7 at 1.

Permitting evidence about a colloquial meaning of "war" or "warlike" that is untethered to the definition of sovereignty would be substantially more prejudicial than probative under Federal Rule of Evidence 403. The Ninth Circuit has held that any such colloquial definition does not apply as a matter of law. Nor did Defendant rely on any such definition as a basis for denying coverage. Allowing Defendant to nevertheless present expert testimony, as well as news articles and video showing bombs or colloquially using the word "war," is likely to confuse the issues, leading the jury to believe that (1) any such evidence would bar coverage (when the Ninth Circuit held otherwise) or (2) Defendant's conduct could be justified based on evidence that it did not rely upon at the time (it cannot).

## D.      After-the-Fact Experts on Hamas's "Sovereignty" Should Be Barred.

*Finally*, Defendant did not seek the advice of any outside experts before deciding to deny coverage of Plaintiffs' claim. Defendant's conclusion that Hamas was a sovereign, as explained in its letter, was based entirely on a single Congressional Research Service report. Ex. 1 at 6-7 & n.1-3. Yet Defendant intends to introduce the expert opinion of Professor Quigley that (1) "Hamas is part of the government of the State of Palestine" and (2) "Hamas is at the very least a de facto administration governing territory." Ex. 7 at 2.

To have acted in good faith, an insurer "cannot deny the claim without fully investigating the grounds for its denial." *Wilson v. 21st Cent. Ins. Co.*, 42 Cal.4th 713, 720 (2007). In *Wilson*, the claims examiner denied coverage of the insured's injury allegedly

7

sustained in an accident by finding that it was likely due to a pre-existing "degenerative disc disease." *Id.* The California Supreme Court found that bad faith could be shown where (1) there was no "medical report or opinion on the basis of which the claims examiner" could have reached that conclusion and (2) there was no evidence the "claims examiner had sufficient medical expertise to make such a diagnosis himself." *Id.* at 725. "To the extent it had good faith doubts, the insurer would have been within its rights to investigate the basis for Wilson's claim by asking" questions of the insured's doctor, "hav[ing] a physician review all the submitted medical records and offer an opinion, or, if necessary, ***having its insured examined by other physicians (as it later did)***." *Id.* (emphasis added). The insurer, however, failed to do so.

Here, Defendant failed to consult any outside expert on international law or the Middle East in order to justify its denial of coverage. Instead, Defendant's claims' examiner Ms. Johnson read a single Congressional Research Service report and indicated she believed Hamas was a sovereign. Ex. 1 at 6-7 & n.1-3. Defendant is free to argue to the jury at trial that Ms. Johnson did so reasonably and in good faith. But it cannot attempt to bolster her opinions using after-the-fact expert evidence that she failed to seek at the time. California law is clear that "no hindsight test be applied" and that reasonableness "must be measured as of the time [defendant] was confronted with a factual situation to which it was called upon to respond." *Austero*, 84 Cal. App. 3d at 33.

## III.   **CONCLUSION**

The defense against Plaintiffs' bad faith claim at trial must be based on Defendant's actual reasoning at the time it denied coverage (*i.e.*, that Defendant believed, in good faith, Hamas was a sovereign). Evidence that Defendant did not rely on at the time it denied coverage—including evidence concerning Exclusions 3-4, expert and fact evidence about the "common understanding" of "war" and "warlike," and expert opinions that Hamas was a sovereign—are irrelevant under Federal Rule of Evidence 401 and will confuse the issues, waste time, and be unfairly prejudicial under Federal Rule of Evidence 403.

015825\7088597

1
2

## ATLANTIC SPECIALTY INSURANCE COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 2

3      Plaintiffs seek to preclude the Defendant Atlantic Specialty Insurance Co. ("ASIC")
4  "from introducing evidence or argument suggesting that it acted in 'good faith' or that there
5  was a 'genuine issue' regarding coverage" based on evidence Plaintiffs feel contradicts
6  ASIC's denial of coverage letter. Specifically, Plaintiffs seek to exclude the following:

7      • "Evidence concerning Exclusion 3…and Exclusion 4"
8      • "Evidence concerning any purported 'plain and ordinary meaning' of Exclusion
9        1 for 'war' and Exclusion 2 for 'warlike action by a military force' (including
10       expert evidence, news articles, and videos)"
11     • "Any expert opinions concerning Hamas' alleged sovereignty"

12     While an insurer may not rely upon policy provisions it failed to raise in a coverage
13  denial to defend against a bad faith claim, insurers may defend bad faith claims with facts,
14  law, or other information relied upon during the claim decision process. *See* Couch on
15  Insurance 3d. § 204:43 ("Bad faith generally requires an inquiry into the circumstances
16  underlying the insurer's denial of policy benefits, and, as such, is generally left as a question
17  for the jury…") Indeed, no California court has interpreted *Century* in the manner Plaintiffs
18  do, nor allowed policyholders the relief Plaintiffs seek in their motion. *See Century Sur.*
19  *Co. v. Polisso*, 139 Cal. App. 4th 922, 951 (2006), *as modified on denial of reh'g* (June 16,
20  2006).  Therefore, the Court must deny Plaintiffs' motion and allow ASIC to introduce all
21  evidence of good faith.

22     If Plaintiffs prevail on this motion, ASIC will be denied the ability to demonstrate
23  the reasonableness of its conduct to the jury. While courts have found ASIC's interpretation
24  of the Policy to be incorrect, ASIC must have full and fair opportunity to put-on evidence
25  of its state of mind, and the bases therefor, in order to defend against Plaintiffs' bad faith
26  claims. *See* Couch on Insurance 3d. § 204:43. To do otherwise will improperly prejudice
27  ASIC's position by denying jurors opportunity to consider full reasoning underlying
28  ASIC's claims decision, or whether such claims decisions were reasonable.

015825\7088597

1

## ARGUMENT AND AUTHORITY

2

### A.  ASIC May Offer Good Faith Evidence *vis-à-vis* Exclusion 3 and 4.

3

4

5

Plaintiffs' own testimony belies its argument that "nowhere in the letter did Defendant state that it was relying on either Exclusions 3 and 4 as a basis for denying coverage." Andrea Garber, the NBC recipient of the denial letter, testified:

6

Q.  And that section of the letter sets forth various of the war exclusion**s**.

7

Do you see that?

8

A.  I do.

9

Q.  Do you recognize that from the policy?

10

A.  Yes.

11

Q.  So did you understand that Ms. Johnson was explaining to you that these

12

exclusions were a basis for Atlantic to deny coverage for NBC's claim?

13

A.  It was my understanding that this was the reason she was denying the claim,

14

yes.

15

Q.  The exclusions that are set forth there on page 3 of the letter.

16

A.  Yes.

17

18

*See* Deposition of Andrea Garber, p. 336, ¶ 18 – p. 337, ¶¶ 1, 4 – 9 (objection omitted) (referencing Garber Depo Exhibit 36 at UCP 000378).[1]

19

20

The author of the above-referenced denial letter, Pamela Johnson, ratified Plaintiffs' understanding of ASIC's reliance on these exclusions in her deposition:

21

Q.  Ultimately, when the claim was denied, did you identify all four of these

22

exclusions as being directly applicable to the claim?

23

A.  I did...

24

…

25

26

27

28

---

[1] True and correct copies of the cited excerpts from the transcripts of all referenced deposition testimony are attached as Exhibits to the Declaration of Marc J. Shrake submitted with this Opposition.

1    Q.    Ms. Johnson my question to you is were you, on behalf of Atlantic, denying
2    the claim on the basis of inter alia subpart 3?

3    A.    I was putting them on notice that any one of those exclusions could apply to
4    the situation.

5    …

6    Q.    Were you on behalf of Atlantic denying the claim on the basis of inter alia
7    subpart 4?

8    A.    That was one of the basis we looked at yes.

*See* Deposition of Pamela Johnson at p.225, ¶¶ 19 – 23; p. 296, ¶ 21 – p. 297, ¶ 1; p. 297,
¶¶ 15 – 23.

All parties' understandings follow the language of the denial letter itself. Unlike in
*Century*, ASIC's denial letter identified myriad events that it believed evidenced why the
Policy did not cover Plaintiffs' claim, and then stated Exclusions 3 and 4 "as a ground for
denial of coverage when the claim was tendered." *See Century*, 139 Cal. App. 4th at 953;
*see also* Deposition of Andrea Garber, p. 336, ¶ 18 – p. 337, ¶¶ 1, 4 – 9 (objections omitted).
Indeed, ASIC's denial letter cited all relevant portions of Policy that exclude coverage,
including:

3. Insurrection, rebellion, revolution, usurped power, or action taken by
governmental authority in hindering or defending against any of these. Such loss or
damage is excluded regardless of any other cause or event that contributes
concurrently or in any sequence to the loss.

4. Any weapon of war including atomic fission or radioactive force, whether in time
of peace or war.."

In other words, ASIC coverage denial letter identified the factual basis for Plaintiffs'
claims, cited the relevant policy exclusion, and discussed how these facts and policy
exclusions led it to believe there was no coverage. While the Court ultimately ruled these
exclusions do not preclude coverage for Plaintiffs' claims, it is factually incorrect to say
that ASIC failed to include these exclusions in its denial letter. Therefore, California law

11

1    does not preclude ASIC from introducing evidence of good faith reliance on Exclusions 3
2    and 4 as a basis for denying coverage.

3         Furthermore, ASIC did not draft this letter in a vacuum. Rather, ASIC engaged in
4    protracted discussions with a sophisticated insured (and its broker) before issuing its denial
5    of coverage letter, and then discussed the matter with Plaintiffs after issuing the denial
6    letter.  As a result, public policy concerns regarding unequal knowledge or bargaining
7    power do not exist here. In fact, there is evidence to suggest that cause of Plaintiffs'
8    frustration is not alleged acts or omissions from ASIC, but its own demands for immediate
9    coverage decisions.

10        Consider the testimony of Plaintiffs' witness, Susan Weiss:

11   Q.    In your view, was it important that a coverage letter be received as soon as
12         possible?

13   A.    Yes.

14   Q.    Why?

15   A.     Because the client needs to know where the carrier stands...

16   …

17   A.    I think a claim such as this requires immediate notification. And I – if they
18         already knew they were going down that path or declining the claim due to
19         the war exclusion, I would have thought it might come sooner.

20   Q.    Did you express to them in the beginning that there was some urgency in
21         getting a coverage decision?

22   A.    Yes.

23   Q.    When did you express that? Was that on the original call?

24   A.    That was probably expressed to them on numerous occasions.

25   …

26   Q.    So your best recollection today is from the beginning, you informed Ms.
27         Johnson and Mr. Gutterman that there was some urgency in reaching a claims
28         decision?

12

1    A.    Yes.

2    Q.    And you made it clear to them that you needed Atlantic to make a decision as

3          soon as possible so that NBC would know their view on coverage?

4    A.    Yes.

5 *See* Deposition of Susan Weiss at p. 199, ¶ 7 – 12; p.201, ¶ 24-25; p. 202, ¶¶ 1 – 3, 8 –

6 21; p.203, ¶ 10 – 19.

7          Plaintiffs demanded a quick answer. *Id*. Yet Plaintiffs now complain the demanded

8 answer is inadequate, or somehow prejudiced them despite prior contrary admissions. *See*

9 Deposition of Andrea Garber, p. 336, ¶ 18 – p. 337, ¶¶ 1, 4 – 9. Plaintiffs do not have the

10 luxury of demanding immediacy, admitting Exclusions 3 and 4 to be bases for ASIC's

11 denial, and then changing their position on the eve of trial. The Court should deny

12 Plaintiffs' motion.

13   **B.    ASIC May Offer Evidence of its Interpretation of Policy Terms.**

14          Plaintiffs' second limine point is a purely legal argument as to interpretation of

15 policy language, not an argument as to what information the jury should consider when

16 evaluating ASIC's conduct. Plaintiffs seek to exclude ASIC's understanding of "'the

17 common understanding and ordinary meaning'" of "'war'" and "'warlike action'" on

18 prejudice grounds because "[t]he Ninth Circuit has held that any such colloquial definition

19 does not apply as a matter of law." However, the reasonableness of an insurer's decisions

20 and actions must be evaluated as of the time they were made, not in light of subsequent

21 events that may provide evidence of the insurer's errors. *See*, *e.g.*, *Chateau Chamberay*

22 *Homeowners Ass'n v. Associated Int'l. Ins. Co.,* 90 Cal. App. 4th 335, 347 (2001).

23          All parties agree that the relevant Ninth Circuit opinion was not law at the time ASIC

24 made its coverage decision. *See Universal Cable Prods., LLC v. Atlantic Specialty Ins. Co.*,

25 929 F.3d 1143, 1154 (9th Cir. 2019). As such, ASIC could not have relied upon this holding

26 when evaluating Plaintiffs' claim. However, it is clear from all evidence, testimony, and

27 briefing in this case that ASIC based its claim decision upon the plain, ordinary meaning

28 of various policy terms. Indeed, various ASIC employees testified that they considered the

13

plain, ordinary meaning of policy terms in lieu of controlling authority, and consulted numerous sources to determine whether the relevant exclusions applied to Plaintiffs' claim, (e.g. dictionaries, government reports, other public information, communications with the insured, news publications, Plaintiff-affiliate company news broadcasts). *See* ASIC's Third Amended Response to Plaintiffs' First Set of Interrogatories. Therefore, a jury must consider all other information ASIC relied upon to make such determination in order to determine whether ASIC acted in good faith. *See* Couch on Insurance 3d. § 204:43.

While the Ninth Circuit ruled ASIC's claims decision was incorrect, ASIC must be allowed to introduce evidence as to whether such incorrect decision was reasonable at the time it made such decision. Therefore, ASIC must be allowed to put on evidence of how it interpreted policy terms, regardless of whether such interpretation complies with the new ruling from the Ninth Circuit. Any prejudice to Plaintiffs results only from a proper an understanding of ASIC's mindset at the time it made its claims decision. *Chateau Chamberay Homeowners Assn.*, 90 Cal. App. 4th at 347; Fed. R. Evid. 403.

## C.  ASIC May Offer Evidence of Belief in Hamas' Sovereignty.

Plaintiffs have no basis to exclude expert testimony regarding Hamas' sovereignty, or to claim that "Defendants' conclusion that Hamas was a sovereign…was based entirely on a single Congressional Research Report." All the parties know what information and sources ASIC consulted prior to making its claims decision. *See* ASIC's Third Amended Response to Plaintiffs' First Set of Interrogatories. These documents include, but are not limited to, documents regarding Hamas, its origins, its history, its sovereignty, and its role both in the Gaza Strip and with respect to the State of Israel. *Id.*

The Ninth Circuit found Hamas not to constitute a sovereign for the purposes of insurance coverage. *See*, *gen.*, *Universal Cable Prods., LLC*, 929 F.3d at 1143. However, denying ASIC expert testimony supporting the reasonability of the basis for its claims decision would be to deny the jury the full picture of ASIC's mindset at the time it denied the claim. Indeed, as Couch on Insurance states:

14

**Section 204.42. Need for Expert Testimony.** The underlying insurance issues in most bad-faith cases tend to be fairly complex, as might be expected in a circumstance where there must be strong disagreement between the two sides…[Therefore], there is little denying that expert testimony may serve the cause of both sides in a bad-faith action. Accordingly, . . . it is widely held that expert testimony on pertinent issues is admissible . . . when offered by an appropriately qualified expert.

*See* Couch on Insurance 3d. § 204:42.

There is no question that the issue of Hamas' indicia of sovereignty is a pertinent issue underlying ASIC's denial of Plaintiffs' claim. It relates to whether ASIC's interpretation of the War Exclusions was reasonable. Therefore, it is beneficial to all parties in this bad faith action to allow introduction of expert testimony on this topic. Accordingly, the Court should deny Plaintiffs' Motion *in Limine* No. 2.

///
///
///
///
///
///
///
///
///
///
///
///
///
///

15

015825\7088597

1

### PLAINTIFFS' REPLY IN SUPPORT OF MOTION IN LIMINE NO. 2

2

## I.    INTRODUCTION

3

Defendant concedes that, under California law, "an insurer may not rely upon policy

4

provisions it failed to raise in a coverage denial to defend against a bad faith claim." *Supra*

5

at 9.  Defendant's argument that it should be permitted to use bases it secretly relied upon

6

but did not explain to the insured flies in the face this authority.  "Where an insurer's denial

7

of a first party claim, in whole or in part, is based on a specific … exclusion, the written

8

denial shall include reference thereto and ***provide an explanation of the application*** of the

9

… exclusion to the claim."  10 Cal. Code Regs. § 2695.7(b)(1).  Defendant's denial letter

10

failed to provide Plaintiffs an explanation as to why war exclusions 3 or 4, or the plain

11

meaning of any war exclusion divorced from the sovereignty requirement, justified its

12

denial of coverage. Bonn Decl. Ex. 1 at 5-7.  Defendant also did not cite any expert opinion

13

supporting the idea that Hamas is a sovereign nation.[2]  *See id.*

14

Evidence that Defendant did not rely on in is denial letter cannot serve as the basis

15

for a "genuine dispute" analysis in support of Defendant's alleged good faith. *Century*

16

*Surety Co. v. Polisso*, 139 Cal. App. 4th 922, 951 (2006), *as modified on denial of reh'g*

17

(June 16, 2006).  Evidence contrary to what Defendant stated to be its reasons for denying

18

coverage is therefore irrelevant.  Fed. R. Evid. 402.  Moreover, the reasonableness of

19

Defendant's decision to deny coverage must not be analyzed with the benefit of

20

"hindsight."  *Austero v. Nat'l Cas. Co.*, 84 Cal. App. 3d 1, 33 (1978), *disapprv'd on other*

21

*grounds by Egan v. Mut. of Omaha Ins. Co.*, 24 Cal.3d 809, 824 n.7 (1979).

22

## II.    ARGUMENT

23

### A.    Defendant Cannot Rely on Reasoning not Disclosed in its Denial Letter.

24

Under California law, an insurer may not defend against a bad faith claim based on

25

reasoning not disclosed in its denial letter. *Century*, 139 Cal. App. 4th at 951 ("Since

26

---

27
28

[2] At the January 17, 2020, Pretrial Conference, Defendant represented that it would no longer be calling its experts Professor de Frankopan, Mr. Lowenstein, or Mr. Quigley. Plaintiffs include these arguments out of an abundance of caution and to preserve the record.

015825\7088597

Century did not cite permanent installation as a ground for denial of coverage when the claim was tendered, it was never the subject of a genuine dispute between the parties."). California law requires insurers to explain their reasons for denial, not merely quote them. 10 Cal. Code Regs. § 2695.7(b)(1).  "Where an insurer's denial of a first party claim, in whole or in part, is based on a specific … exclusion, the written denial shall include reference thereto ***and provide an explanation of the application of the … exclusion to the claim***." (emphasis added)).  California does not want insurers to be able to come up with new explanations after the fact, and requiring such explanation serves to keep insurers honest and accountable.

## B.   The Denial Letter Fails to Explain How Exclusions 3 and 4 Apply.

Defendant's assertion that the denial letter included exclusions 3 and 4 as grounds for denial of coverage is wrong. *Supra* at 11. To the contrary, Defendant's contention that the denial letter "discussed how [the] facts and policy exclusions led it to believe there was no coverage" is simply untrue as to exclusions 3 and 4.  *Id.* The letter does not analyze exclusions 3 or 4 whatsoever. This is obvious because neither exclusion 3 nor exclusion 4 appear anywhere in the letter's entire "Analysis" section. Bonn Decl. Ex. 1 at 5-7.

Because the letter clearly does not "explain the application" of Exclusions 3 and 4 to the Policy, Defendant tellingly resorts to relying on deposition testimony instead. But Defendant's cited deposition testimony fails to support its argument.

Defendant cites the testimony of Andrea Garber, Plaintiffs' employee and a former employee of Plaintiffs' broker, as agreeing that the denial letter relied on Exclusions 3 and 4 in denying coverage. *Supra* at 10-11. But the questioning at issue did not ask about Exclusions 3 and 4 in particular, or whether the denial letter "provide[d] an explanation of the application" of those specific exclusions "to the claim." 10 Cal. Code Regs. § 2695.7(b)(1). Instead, Defendant simply pointed to "[t]he exclusions that are set forth there on page 3 of the letter" and asked whether Ms. Garber understood that Ms. Johnson was "explaining to you that these exclusions were a basis for Atlantic to deny coverage for NBC's claim . . . ." Shrake Decl. Ex. 1 at 1-2. Ms. Garber answered "[t]his was the reason

015825\7088597

1    she was denying the claim, yes." *Id.* at 2. Nothing in this vague testimony suggests that
2    Ms. Garber believed Atlantic had "provide[d] an explanation of the application" of
3    Exclusions 3 and 4 to the claim. The letter plainly does not do so. Instead, the fair import
4    of Ms. Garber's testimony is that exclusions that appeared on Page 3—the "war" and
5    "warlike action" exclusions—were the basis for denying coverage.

6         The testimony of Defendant's employee Pamela Johnson, on the other hand, is the
7    very reason California law requires insurers to document and explain the reason for their
8    denial. Ms. Johnson's after-the-fact testimony stating that she did indeed consider all four
9    war exclusions to apply despite never mentioning exclusions 3 and 4 in the entire Analysis
10   section of her denial letter is self-serving. Bonn Decl. Ex. 1 at 5-7. Unsubstantiated
11   testimony that a claims adjuster secretly considered additional exclusions should not be
12   sufficient to open the door to undisclosed bases for denial. And the Court can read the
13   denial letter for itself—it plainly does not satisfy California's requirement of "provid[ing]
14   an explanation of the application" of Exclusions 3 and 4 to the claim.

15        In a final effort to avoid the fact that the denial letter plainly fails to explain the
16   application of Exclusions 3 and 4, Defendant blames Plaintiffs for requesting a prompt
17   coverage decision. But Defendant fails to explain how Plaintiffs' request for a coverage
18   decision excuses it from disclosing and explaining all grounds for denying coverage in its
19   letter. It is always the insurer's responsibility to conduct a proper investigation and explain
20   the reasons for its denial. *Cf.* 10 Cal. Code Regs. § 2695.7(b)(1). California courts have
21   made clear that an insurance company will not be barred from relying on ***coverage*** defenses
22   that it mistakenly omits from a denial letter. *Century Surety Co.*, 139 Cal. App. 4th at 953
23   n.17. But it is black-letter law that grounds omitted from a denial letter cannot be used to
24   defend against bad faith: "The question here is not a coverage question but whether Century
25   acted in bad faith . . . . Since Century did not cite permanent installation as a ground for
26   denial of coverage when the claim was tendered, it was never the subject of a genuine
27   dispute between the parties." *Id.* at 953.

28   ///

18

### E.   The Denial Letter Concedes the Sovereignty Definition, Rather than an Alternate Meaning, Applies.

Defendant does not seriously contest that its denial letter adopted the definition of sovereignty, nor could it do so. Instead, Defendant merely argues that its employees testified that they relied on other definitions, including other dictionary definitions, after the fact in the course of this litigation. Defendant does not actually cite any such deposition testimony. But even if it existed, it is irrelevant to bad faith as a matter of law—Defendant fails to dispute that the denial letter itself adopted the sovereignty definition of both "war" and "warlike action by a military force" and failed to rely on any alternate, plain and ordinary, definition divorced from the concept of sovereignty.

Defendant argues that it could not have known the special meaning, rather than plain and ordinary meaning, would apply because the Ninth Circuit decision in this case had not issued when it denied coverage. *Supra* at 13. This argument is of no moment for at least two reasons. *First*, as discussed above, Defendant's own denial-of-coverage letter *conceded* that the definition of "war" and "warlike action by a military force" required sovereignty (or at least quasi-sovereignty). In other words, Defendant *actually applied* the special meaning at the time, not any plain and ordinary meaning. *Second*, the Ninth Circuit did not change the law, as Defendant suggests. *Supra* at 13. The Ninth Circuit lacks the authority to modify California law. *See Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) (holding "a federal court is not free to reject a state judicial rule of law"). The Ninth Circuit instead recognized that (1) it was undisputed that there was a special meaning of "war" and "warlike action by a military force" as requiring sovereignty (as n Defendant's own denial letter admitted) and (2) under black-letter, California law, any such undisputed special meaning must apply rather than plain and ordinary meaning. *See Universal Cable Prods.*, 929 F.3d at 1151–54 (citing and applying California law predating Defendant's denial of coverage letter).

Defendant's arguments about plain and ordinary meaning may not have been waived with respect to the issue of coverage. But California law is clear that Defendant may not deviate from its denial letter when it comes to bad faith. Defendant fails to dispute that the

19

denial letter adopted the "sovereignty" definition of "war" and "warlike action by a military force." Thus, to defend against bad faith at trial, Defendant is free to demonstrate that it reasonably believed Hamas could qualify as a sovereign. What it may not do is adopt a different definition that its denial letter failed to cite as a basis for denying coverage.

### F.      Defendant Should not be Permitted to Present Expert Evidence that Hamas is A Sovereign.

At the January 17, 2020, Pretrial Conference, Defendant represented that it would no longer be calling its experts Professor de Frankopan, Mr. Lowenstein, or Mr. Quigley. Plaintiffs include these arguments out of an abundance of caution and to preserve the record.

Defendant's denial letter does not cite any expert analysis suggesting that Hamas is a sovereign or quasi-sovereign. As such, Defendant should not be allowed to present expert testimony it never considered at the time of denial.

## III.   CONCLUSION

Because Defendant did not disclose exclusions 3 or 4 as the reason for its denial of coverage, Defendant should not be permitted to argue that those exclusions were the subject of a genuine dispute between the parties. Defendant further should be precluded from arguing the "plain and ordinary" meaning of the exclusions because its denial letter applied their specialized meanings in the insurance context. Defendant also did not cite any expert analysis on Hamas's alleged sovereignty and therefore should not be permitted to present expert testimony it did not consider at the time of denial. Such evidence is irrelevant and would only serve to confuse the issues, waste time, and result in unfair prejudice to Plaintiffs. Fed. R. Evid. 401, 403.

015825\7088597

DATED: January 17, 2020                      SUSMAN GODFREY L.L.P.

                                             */s/ Amanda Bonn*
                                             KALPANA SRINIVASAN (237460)
                                             ksrinivasan@susmangodfrey.com
                                             AMANDA K. BONN (270891)
                                             abonn@susmangodfrey.com
                                             CATRIONA LAVERY (310546)
                                             clavery@susmangodfrey.com
                                             SUSMAN GODFREY L.L.P.
                                             1900 Avenue of the Stars, Suite 1400
                                             Los Angeles, CA 90067-6029
                                             Tel: (310) 789-3100
                                             Fax: (310) 789-3150

                                             JACOB W. BUCHDAHL (*pro hac vice*)
                                             jbuchdahl@susmangodfrey.com
                                             SUSMAN GODFREY L.L.P.
                                             1301 Avenue of the Americas, 32nd Floor
                                             New York, NY 10019-6023
                                             Tel: (212) 336-8330
                                             Fax: (212) 336-8340

                                             *Attorneys for Plaintiffs*

DATED:  January 17, 2020                     MARC J. SHRAKE
                                             FREEMAN MATHIS & GARY, LLP

                                                          -and-

                                             CHRISTOPHER W. MARTIN (Pro Hac Vice)
                                             MELINDA R. BURKE (Pro Hac Vice)
                                             MARTIN, DISIERE, JEFFERSON & WISDOM LLP

                                             */s/ Christopher W. Martin*
                                             Attorneys for Defendant ATLANTIC SPECIALTY INSURANCE COMPANY

21

015825\7088597

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTESTATION REGARDING SIGNATURES**

I, Amanda Bonn, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By: */s/ Amanda Bonn*

**CERTIFICATE OF SERVICE**

I certify that on January 17, 2020January 18, 2020, I filed the foregoing with the Clerk of the United States District Court for the Central District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

By: */s/ Amanda Bonn*

22