MARC J. SHRAKE (SBN 219331)
mshrake@fmglaw.com
WAYNE H. HAMMACK (SBN 202709)
whammack@fmglaw.com
FREEMAN MATHIS & GARY, LLP
550 South Hope Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 615-7019
Facsimile: (213) 615-7000

CHRISTOPHER W. MARTIN (*Pro Hac Vice*)
martin@mdjwlaw.com
MELINDA R. BURKE (*Pro Hac Vice*)
burke@mdjwlaw.com
WILLIAM E. McMICHAEL (*Pro Hac Vice*)
mcmichael@mdiwlaw.com
MARTIN, DISIERE, JEFFERSON
& WISDOM LLP
9111 Cypress Waters Blvd., Suite 250
Dallas, Texas 75019
Telephone: (214) 420-5500
Facsimile: (214) 420-5501

Attorneys for Defendant
Atlantic Specialty Insurance Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,<br><br>Defendant. | CASE NO. 2:16-cv-4435-PA-MRW<br><br>**WRITTEN PROFFER OF EXPERT OPINION OF ASIC'S INSURANCE CLAIMS EXPERT ANTHONY CLARK**<br><br>Hearing Date:    TBD<br><br>File Date: 6/20/2016<br>Pre-Trial Conference: 1/17/2020<br>Trial Date:   2/18/2020 |

///

///

///

///

Freeman Mathis
& Gary, LLP
Attorneys at Law

## Written Proffer of Expert Opinions of ASIC's Insurance Claims Handling Expert Anthony Clark

Plaintiffs allege that ASIC breached the implied covenant of good faith and fair dealing in failing to properly investigate Plaintiffs' *Dig* claim and in denying coverage of Plaintiffs' *Dig* claim under the Policy. Anthony Clark was engaged by ASIC to evaluate these claims and the Expert Witness Report and Rebuttal Expert Witness Report of Ty R. Sagalow, who concluded that ASIC violated industry customs and practices in its claims process and handling of the claim at issue. Mr. Clark prepared an Expert Report and a Rebuttal Expert Report. The Clark Expert Report was incorporated by reference in ASIC's Expert Witness Disclosure as Exhibit D. [ASIC Expert Witness Disclosure, p. 7]. The Clark Rebuttal Expert Report was incorporated by reference in ASIC's Rebuttal Expert Witness Disclosure as Exhibit C. [ASIC Rebuttal Expert Witness Disclosure, p. 8].

Mr. Clark's opinions are set forth in the Disclosure and Rebuttal Disclosure and are provided in this Proffer. Mr. Clark was deposed by Plaintiffs but was not asked about each opinion set forth in his reports. Moreover, ASIC reserved its questions of Mr. Clark until the time of trial.

ASIC now files this Proffer of the opinions of Mr. Clark as follows:

A. **Opinion and Citation to Expert Witness Disclosure:** ASIC properly conducted a thorough and timely investigation into the circumstances surrounding the extra expense claim as presented by Plaintiffs and made a reasonable determination under the terms and conditions of the applicable policy of insurance that the war exclusions applied. [ASIC Expert Witness Disclosure, pp. 6-7; ASIC Rebuttal Expert Witness Disclosure, p. 8].

    1. **Relevance of Opinion:** Mr. Clark's opinion directly rebuts Plaintiffs' claims of bad faith in the investigation and denial of the *Dig* claim and responds to the criticisms raised by Plaintiffs' expert witness, Mr. Sagalow.

Freeman Mathis
& Gary, LLP
Attorneys at Law

2. **Bases for Opinion:** Mr. Clark's opinion is based on over 40 years of experience as a property insurance adjuster, supervisor, claims officer, and property insurance consultant as summarized on pages 1 and 2 of his Expert Report and his review of the materials identified in his Expert Report on page 3.

 a. The actions and activity leading up to the various circumstances that came into focus in early July 2014 between Israel and Hamas in the Gaza Strip, as documented through many sources and news reports, were documented in the claim file materials, specifically those sources identified on page 5 of his Expert Report.

 b. The insured notified ASIC by telephone call on July 11, 2014 that, due to the outbreak of hostilities, they believed that the imminent peril portion of the extra expense coverage could be applicable and they would delay the resumption of filming of the production of *Dig* for one week.

 c. Within a very short period of time later, due to the ongoing conflict, the production was ultimately moved to Croatia and New Mexico.

 d. The insured sought extra expense coverage in connection with its position that the imminent peril condition would apply.

 e. ASIC quickly began to review the facts in the context of the several war exclusions contained in the policy, which are set out on page 6 of his Expert Report.

 f. The custom and practice of the insurance industry is that, unless a term is specifically defined in a policy, the term is to be viewed as it is commonly used or ordinarily understood.

 g. ASIC's claim file materials indicate that ASIC noted some points and some research that appeared to be important to understanding the reasonable application of the terms and conditions of policy at

Freeman Mathis
& Gary, LLP
Attorneys at Law

-3-
WRITTEN PROFFER OF EXPERT OPINION OF ASIC'S INSURANCE CLAIMS HANDLING EXPERT
ANTHONY CLARK
16294682.1   11775-83955

issue.

h.   ASIC's claim file materials document that Hamas directed its military force to engage in rocket attacks on Israel in June and July 2014.

i.   ASIC's claim file materials document that Israel engaged in not only air strikes directed to the Gaza Strip but also a ground invasion into the Gaza Strip.

j.   ASIC's claim file materials document that this ongoing action between Hamas and Israel continued for a period of time until late August when the Israelis withdrew from Gaza.

k.  ASIC's claim file materials document that, during the conflict 2143 Palestinians and 69 Israelis were killed, Israel struck 5283 targets in Gaza,  Hamas fired 4564 rockets into Israel, and more than 50,000 buildings in Gaza were damaged or destroyed.

l.   ASIC's claim file materials document that Hamas is the de facto governing entity in the Gaza Strip and is known to have a military force at its disposal.

m.   ASIC's claim file materials document that the action between Hamas and Israeli forces was clearly warlike.

n.   ASIC's claim file materials document that a majority of the reputable news and media outlets clearly labeled this activity as a "war," including affiliates of the insured, MSNBC, and NBC News.

o.   ASIC concluded that the common understanding and ordinary meaning given to the activities that caused the move of the *Dig* production and any extra expense to be incurred by the insured was clearly a "war."

p.   ASIC concluded that war occurred between a "government,

Freeman Mathis
& Gary, LLP
Attorneys at Law

-4-

sovereign" (Israel) and an "other authority" (Hamas), the controlling entity in the Gaza Strip.

q.  Both sides used military forces as well as "weapons of war," namely rockets, war planes, and tanks.

r. In its process of research and analysis of the facts, ASIC followed a reasonable approach to its analysis and ultimate conclusion.

s.  ASIC communicated to the insured that Hamas' designation as a terrorist organization did not change the fact the events leading up to and precipitating the moving of the filming were not terrorist attacks but rather an outbreak and continuation of ongoing hostilities that amounted to a war or warlike actions.

t.  ASIC's research, which appears to be comprehensive, given the time involved, led to one conclusion: that this was a war.

3. **Statements Relied Upon:**

   a. Deposition Testimony of Daniel Gutterman, with exhibits

   b. Deposition Testimony of Theresa Gooley, with exhibits

   c. Deposition Testimony of Peter Williams, with exhibits

   d. Deposition Testimony of Andrea Garber, with exhibits

   e. Deposition Testimony of Susan Weiss, with exhibits

   f. Deposition Testimony of Pamela Johnson, with exhibits

4. **Documents Relied Upon:**

   a. See Exhibit "A" for a complete list of documents relied upon by Mr. Clark, which are also set forth in the Clark Reports.

B. **Opinion and Citation to Expert Witness Disclosure:** ASIC acted as a reasonable insurer by staying in communication with its insured during the investigation stage of the claim and by providing updates on its analysis on coverage. [ASIC Expert Witness Disclosure, p. 7; ASIC Rebuttal Expert Witness Disclosure, p. 8].

Freeman Mathis
& Gary, LLP
Attorneys at Law

1. **Relevance of Opinion:** Mr. Clark's opinion directly rebuts Plaintiffs' claims of bad faith in the investigation and denial of the *Dig* claim and responds to the criticisms raised by Plaintiffs' expert witness, Mr. Sagalow.

2. **Bases for Opinion:** Mr. Clark's opinion is based on over 40 years of experience as a property insurance adjuster, supervisor, claims officer, and property insurance consultant as summarized on pages 1 and 2 of his Expert Report and his review of the materials identified in his Expert Report on page 3.

   a. On July 11, 2014, after hostilities escalated and a security report seemed to indicate that the production could not be protected, ASIC was provided verbal notice by telephone call to Peter Williams that a claim would be filed.

   b. On July 15, 2014, ASIC received written submission of the claim, which included a security notice from July 10, 2014 reporting conditions as of that date.

   c. At the time of the written notice of the claim and on several occasions until a final and detailed, written coverage determination was communicated to the insured, it was made clear through the insured's broker that the insured wanted a determination of coverage as soon as possible; time was of the essence and that was impressed on ASIC.

   d. In response to this request, ASIC began its own investigation of the circumstances surrounding the hostilities as well as reviewing all the materials as supplied by the insured on an expedited basis as requested.

   e. ASIC reviewed reliable and authoritative sources, thoroughly investigated the circumstances as reported, and considered

Freeman Mathis
& Gary, LLP
Attorneys at Law

pertinent data in order to produce a substantiated coverage position quickly as the insured had requested.

f. ASIC continued to monitor the ongoing hostilities between Hamas and Israel.

g. ASIC analyzed the information and stayed in contact with its insured and its broker, communicating its belief, based upon its analysis, that the war exclusions appeared to apply to these facts.

h. ASIC conducted its own independent analysis and reached a coverage decision, and this decision was made in reliance on various news articles and up-to-date reports as the hostilities were unfolding.

i. ASIC communicated its final conclusion in writing that the war exclusions in the policy would be applicable.

j. ASIC continued to stay in communication with the insured and its broker, including telephone calls on July 15, July 17, and July 22.

k. ASIC file materials indicate that ASIC provided updates on its ongoing process and its analysis that the war exclusions may apply here in the calls of July 17 and July 22.

l. ASIC file materials indicate that Pamela Johnson involved her supervisor in the claim review process.

m. ASIC file materials indicate that the ultimate decision of ASIC was approved by additional supervisory personnel with ASIC.

3. **Statements Relied Upon:**

a. Deposition Testimony of Daniel Gutterman, with exhibits

b. Deposition Testimony of Theresa Gooley, with exhibits

c. Deposition Testimony of Peter Williams, with exhibits

d. Deposition Testimony of Andrea Garber, with exhibits

e. Deposition Testimony of Susan Weiss, with exhibits

Freeman Mathis
& Gary, LLP
Attorneys at Law

f.  Deposition Testimony of Pamela Johnson, with exhibits

4.  **Documents Relied Upon:**

a.  See Exhibit "A" for a complete list of documents relied upon by Mr. Clark, which are also set forth in the Clark Reports.

C.  **Opinion and Citation to Expert Witness Disclosure:**  ASIC provided the insured with a clear and detailed explanation of the denial in an expedited manner as requested by the insured, responded in a complete and timely manner to a request for reconsideration, and continued to communicate in an effort to reach a negotiated resolution.  [ASIC Expert Witness Disclosure, p. 7; ASIC Rebuttal Expert Witness Disclosure, p. 8].

1.  **Relevance of Opinion:** Mr. Clark's opinion directly rebuts Plaintiffs' claims of bad faith in the investigation and denial of the *Dig* claim and responds to the criticisms raised by Plaintiffs' expert witness, Mr. Sagalow.

2.  **Bases for Opinion:** Mr. Clark's opinion is based on over 40 years of experience as a property insurance adjuster, supervisor, claims officer, and property insurance consultant as summarized on pages 1 and 2 of his Expert Report and his review of the materials identified in his Expert Report on page 3.

a.  After ASIC arrived at its final conclusion, it provided NBCUniveral Media LLC with a letter on July 18, 2014, which explained its reasoning in denying the claim.

b.  The letter laid out all the facts as ASIC came to understand them and explained the results of its investigation and the reasoning for the application of the exclusion and, thus, the denial of the claim.

c.  The denial was made in an expeditious and timely manner as the insured had requested and provided a reasonable and complete explanation for the conclusion.

Freeman Mathis
& Gary, LLP
Attorneys at Law

-8-

d.  The denial documented the prior verbal discussions of the matter.

e.  On August 13, 2014, Mitchell Silberberg & Knupp LLP responded to the denial letter and requested a reconsideration of the denial.

f.  After receiving the letter, ASIC proceeded to give careful consideration to the points raised in the letter.

g.  After this consideration, ASIC still felt that it had reached the proper conclusion in denying the claim.

h.  On September 19, 2014, ASIC responded to the request for reconsideration with a letter that set forth the position that it remained its conclusion that the insurance policy did not insure the claim.

i.  ASIC provided a complete and timely response to each of the points raised in the response letter.

3.  **Statements Relied Upon:**

a.  Deposition Testimony of Daniel Gutterman, with exhibits

b.  Deposition Testimony of Theresa Gooley, with exhibits

c.  Deposition Testimony of Peter Williams, with exhibits

d.  Deposition Testimony of Andrea Garber, with exhibits

e.  Deposition Testimony of Susan Weiss, with exhibits

f.  Deposition Testimony of Pamela Johnson, with exhibits

4.  **Documents Relied Upon:**

a.  See Exhibit "A" for a complete list of documents relied upon by Mr. Clark, which are also set forth in the Clark Reports.

D.  **Opinion and Citation to Expert Witness Disclosure:**  There are no facts demonstrating a lack of good faith or failure on the part of ASIC to act in a reasonable fashion. [ASIC Expert Witness Disclosure, p. 7; ASIC Rebuttal Expert Witness Disclosure, p. 8]

Freeman Mathis
& Gary, LLP
Attorneys at Law

1. **Relevance of Opinion:** Mr. Clark's opinion directly rebuts Plaintiffs' claims of bad faith in the investigation and denial of the *Dig* claim and responds to the criticisms raised by Plaintiffs' expert witness, Mr. Sagalow.

2. **Bases for Opinion:** Mr. Clark's opinion is based on over 40 years of experience as a property insurance adjuster, supervisor, claims officer, and property insurance consultant as summarized on pages 1 and 2 of his Expert Report and his review of the materials identified in his Expert Report on page 3.

   a. Based on all of the activity undertaken by ASIC in response to the claim as presented and the requests for coverage determination indicate, ASIC acted in compliance with all reasonable insurance industry claim standards.

   b. ASIC fully and timely communicated the results of its investigation and its conclusion to the insured.

   c. Upon request for reconsideration, ASIC gave serious consideration to the request and responded to it promptly and completely, restating all of its reasoning for the continued denial of the claim.

   d. Even after there was disagreement regarding the application of the war exclusions, ASIC continued to make efforts to resolve the claim.

   e. ASIC met in person with the insured and counsel in November 2014, continuing its efforts to discuss the claim and the exclusions.

   f. Even though not obligated to do so, as a show of good faith, ASIC made a settlement offer in an effort to resolve the disputed claim.

Freeman Mathis
& Gary, LLP
Attorneys at Law

-10-
WRITTEN PROFFER OF EXPERT OPINION OF ASIC'S INSURANCE CLAIMS HANDLING EXPERT
ANTHONY CLARK

16294682.1   11775-83955

g.  ASIC reviewed this claim in the context of a long-standing relationship with the insured, where ASIC had reviewed and paid many other claims.

h.  This was not a single or isolated incident whereby a single claim was submitted on this policy and not paid.

i.  ASIC demonstrated in the ongoing relationship with the insured that it certainly would pay covered claims.

j.  ASIC was willing to make very significant payments to the insureds in the past, exceeding $4 million in a prior single policy period.

k.  ASIC was not willing to pay this claim only because it, in good faith, had concluded the claim was excluded under the policy.

l.  ASIC took all steps that a reasonable insurer and claim handler would take to determine the pertinent facts and circumstances surrounding this claim.

m. ASIC relied upon reputable and trustworthy sources for background information and real-time reporting regarding the hostilities that ultimately caused the insured to make the decision to move the production out of Israel.

n.  By expediting its thorough investigation as requested by the insured, ASIC acted in a manner that reflected best practices as recognized in the insurance industry.

o.   ASIC made its coverage determination based on the circumstances surrounding this individual claim and the applicable terms and conditions of the policy.

p.  ASIC communicated fully and clearly with the insured over the course of the claim's existence.

WRITTEN PROFFER OF EXPERT OPINION OF ASIC'S INSURANCE CLAIMS HANDLING EXPERT
ANTHONY CLARK

Freeman Mathis
& Gary, LLP
Attorneys at Law

16294682.1   11775-83955

q.  No facts demonstrate a lack of good faith or failure on the part of ASIC to act in a reasonable fashion.

3.  **Statements Relied Upon:**

a.  Deposition Testimony of Daniel Gutterman, with exhibits

b.  Deposition Testimony of Theresa Gooley, with exhibits

c.  Deposition Testimony of Peter Williams, with exhibits

d.  Deposition Testimony of Andrea Garber, with exhibits

e.  Deposition Testimony of Susan Weiss, with exhibits

f.  Deposition Testimony of Pamela Johnson, with exhibits

4.  **Documents Relied Upon:**

a.  See Exhibit "A" for a complete list of documents relied upon by Mr. Clark, which are also set forth in the Clark Reports.

E.  **General Opinion and Citation to Expert Witness Disclosure:**  Mr. Clark may testify in rebuttal to Plaintiffs' designated expert, Ty R. Sagalow, as set forth in his Rebuttal Expert Report and may testify in rebuttal to Mr. Sagalow on those general subjects and related matters, including industry custom and standards for the insurance industry, the claim process and review of policy language, the role of the claim personnel, the relationship with the insured/broker, and more particular responses to the individual points and arguments that Mr. Sagalow asserts in his report, the substance of which is contained in his Rebuttal Expert Report.  [ASIC Rebuttal Expert Witness Disclosure, p. 8]

1.  **Relevance of Opinion:** Mr. Clark's opinion directly rebuts Plaintiffs' claims of bad faith in the investigation and denial of the *Dig* claim and responds to the criticisms raised by Plaintiffs' expert witness, Mr. Sagalow.

2.  **Specific Opinions and Bases for Opinions:** Mr. Clark's opinions are based on over 40 years of experience as a property insurance adjuster, supervisor, claims officer, and property insurance consultant as

WRITTEN PROFFER OF EXPERT OPINION OF ASIC'S INSURANCE CLAIMS HANDLING EXPERT
ANTHONY CLARK

Freeman Mathis
& Gary, LLP
Attorneys at Law

16294682.1   11775-83955

summarized on pages 1 and 2 of his Expert Report and his review of the materials identified in his Expert Report on page 3 and in his Rebuttal Report on page 1.

a. ASIC timely conducted a timely and proper investigation surrounding the events as they related to the claim presented by the Plaintiffs.

b. ASIC made a reasonable determination that the war exclusions applied and therefore no payment could be made to the insured.

c. Mr. Sagalow's statement that "custom and practice in the insurance industry" has resulted in a "number of standards" is overly broad, and the application of these so-called "standards" cannot be used to determine whether an insurer acted in a timely, proper, or reasonable manner with respect to an individual claim.

d. Each individual claim speaks for itself, and depending on the facts and circumstances surrounding a claim, a determination of coverage must be made taking into account the specific terms and conditions of the applicable policy.

e. Mr. Sagalow's opinions in Paragraphs 36-44 of his Report regarding the application of the war exclusions involve legal considerations.

f. Mr. Sagalow's arguments regarding the application of the war exclusions are based on the belief that the terms of the exclusions are ambiguous, but there never has been a claim that there was an ambiguity in the war exclusions in this case.

g. The standard to apply, understand, and construe the language of the war exclusions is the plain and ordinary meaning of the words in the exclusions.

Freeman Mathis & Gary, LLP
Attorneys at Law

-13-

h. Acts might be considered terrorism when looked at in isolation, but when all of the acts are considered as a whole, the acts certainly can constitute war or warlike actions.

i. Here, the conflict between Israel and Hamas constituted a war and warlike acts.

j. In matters such as this, where the policy language is clear, it should be construed according to plain and ordinary meaning of the words in the policy, not viewed consistent with the reasonable expectations of a reasonable insured.

k. While ASIC agreed to cover the filming of the production in Israel where Hamas has committed terroristic acts, that does not mean that all losses involving Hamas will be covered; instead, the loss must fit within a coverage provision.

l. Mr. Sagalow overlooks the fact the conflict was so extensive that it was a war.

m. Terrorism does not last over an extended period of time, such as what occurred here.

n. Industry custom and practice does not require insurers to take positions consistent with the U.S. Government when it comes to the identity of terrorist organizations, but even if that were the case, taking the position that the conflict between Israel and Hamas was a war is not inconsistent with the views of the U.S. Government.

o. ASIC did act in compliance with fair claim practices and standards.

p. ASIC did not apply the war exclusion within two days of written notice on July 15; on July 17, the insured was told that the war exclusions might apply; this early notification by ASIC allowed the insured to provide ASIC with materials for its consideration prior

Freeman Mathis
& Gary, LLP
Attorneys at Law

WRITTEN PROFFER OF EXPERT OPINION OF ASIC'S INSURANCE CLAIMS HANDLING EXPERT
ANTHONY CLARK

16294682.1   11775-83955

to definitive denial; industry custom and practice is that a claim is affirmatively denied when written communication is provided; written communication to the insured occurred on July 28; Mr. Sagalow's characterization of the investigation is disingenuous when the insureds were pressing ASIC for an immediate coverage decision.

q. ASIC did investigate the nature of Hamas; the characterization of Hamas as a terrorist organization by the U.S. Government does not qualify every military or hostile act as solely an act of terrorism; ASIC investigated the circumstances surrounding the occurrences and developed a characterization, based on the specific facts; ASIC discussed this analysis and conclusion in its claim correspondence; the investigation conducted by ASIC led to the conclusion that the events causing the relocation of the production were not an isolated act of intimidation against a civilian population; ASIC investigated the facts surrounding Hamas; Hamas was found to be the governing body of Gaza; Hamas was found to maintain a military force; Hamas was found to use weapons of war (rockets); ASIC investigated the circumstances over the entire period of hostilities between Hamas and Israel; ASIC reasonably determined that the facts and circumstances allowed for the application of the war exclusions.

r. It was not necessary for ASIC to retain an outside expert on the Middle East to analyze the facts; it is unclear what an outside expert would have added to the analysis of circumstances surrounding the hostilities that caused the insured to move the production.

s. The coverage decision was communicated to the insured on July 28 after the initial discussion of the possible application of the war

WRITTEN PROFFER OF EXPERT OPINION OF ASIC'S INSURANCE CLAIMS HANDLING EXPERT
ANTHONY CLARK

Freeman Mathis & Gary, LLP
Attorneys at Law

16294682.1   11775-83955

exclusions with the insured on July 17 to get their reaction/response/input, and subsequent review of the claim.

t.  The policy wording at issue is not a standard ASIC form; Aon presented a manuscripted form to ASIC on behalf of the insured with the request that it be used; war exclusions were a part of the form that was presented and were clearly acceptable to the insured and its knowledgeable broker; Aon provided ASIC with a form that included the war exclusions and stated that its form had to be used; there were no discussions or negotiations regarding the war exclusions; Aon informed other insurers that the policy was a "manuscripted form that is the property of Aon;" Aon wanted the exclusions included in the policy and considered the exclusions to be its own; the insured and Aon did not make any specific requests to change the policy wording or eliminate the war exclusions when *Dig* was presented to ASIC; Aon and the insured were willing to accept the risk that, in the event that the war exclusions applied, including the use of weapons of war, war, and warlike action, no coverage would be available; "war exclusions" are standard within the insurance industry, and knowledgeable brokers and insureds would understand the consequences of including them in the policy; without any claim of ambiguity in the exclusion, the intent of the underwriter would not need to be considered as extrinsic evidence and would be improper to consider; custom and practice in the insurance industry is for the claim department to do the investigation into the claim; any consultation with the underwriter is not considered as a normal practice; nevertheless, Ms. Johnson did consult with Mr. Williams, the chief underwriter for the Entertainment Division and the person

16294682.1   11775-83955

Freeman Mathis & Gary, LLP
Attorneys at Law

in charge of approving the policy wording when Aon first brought the policy to ASIC in 2010 and changes along the way.

u. ASIC's claim process was reasonable and complied with the requirements of California law.

v. ASIC explained why the TRIA endorsement did not provide coverage, which it does not; ASIC acknowledged that the TRIA endorsement was not a terrorism exclusion and stated that it did not provide coverage under the circumstances of this matter; ASIC was simply trying to "cover all the bases" just in case the insured thought that the TRIA endorsement might provide coverage, which it does not; ASIC confirmed in writing that the endorsement did not apply.

w. There is no documentary support for the opinion that there was not sufficient supervision of the handling of this claim; there was involvement of supervisors, showing that the seriousness of the consideration that ASIC gave to this claim.

x. Given that there has been no claim of ambiguity in the war exclusions, no alternative interpretation could have been put forth; the exclusions at issue speak for themselves and are clear in the common understanding; application of the facts at hand is certainly a reasonable course of action; ASIC wrote to the insured to further respond to the request for reconsideration; ASIC looked at the arguments made by the insured; ASIC continued to communicate with the insured about their areas of disagreement; there was an in-person meeting later in the process where the discussions continued; this conduct showed good faith in the claims handling process.

WRITTEN PROFFER OF EXPERT OPINION OF ASIC'S INSURANCE CLAIMS HANDLING EXPERT
ANTHONY CLARK

16294682.1   11775-83955

Freeman Mathis & Gary, LLP
Attorneys at Law

y.  The designation of Hamas as a terrorist organization by the U.S. Government is a result of political decisions in the exercise of U.S. foreign policy; that designation is not a determinant in the fact that the hostilities between Hamas and Israel, which caused the production to relocate, would still reasonably be concluded to fall within the conditions as noted in the war exclusions; ASIC's decision did not rest solely upon the conclusion that Hamas was a quasi-sovereign; the plain and ordinary meaning of the term "war" does not require Hamas to have been a sovereign or quasi-sovereign; coverage was also denied on the basis that the conflict constituted warlike action and involved the use of weapons of war and, if nothing else, it amounted to a rebellion or an insurrection; none of these exclusions require a finding that Hamas was a sovereign or quasi-sovereign.

z.  ASIC complied with all appropriate standards in the industry; the directives referenced by Mr. Sagalow in section IX of his report may be presented as practices that would result in good claims handling or investigative techniques; however, the directive that the facts and the details that arise in the investigation of the individual claim govern the activity of the adjuster and the prompt communication with the insured always temper the guidelines; the only standard applying to all companies is the insurance regulations and requirements as promulgated by the individual state jurisdiction.

aa. Mr. Sagalow's opinions regarding the application of the above-referenced standards are not objective and are colored to find any incidence that he considers unreasonable as failure on behalf of ASIC.

WRITTEN PROFFER OF EXPERT OPINION OF ASIC'S INSURANCE CLAIMS HANDLING EXPERT
ANTHONY CLARK

Freeman Mathis
& Gary, LLP
Attorneys at Law

16294682.1   11775-83955

bb. ASIC conducted a full, fair, and prompt investigation of the claim; ASIC acted promptly; ASIC considered numerous sources and references for information regarding the activities that were leading to the claim; ASIC analyzed that information expeditiously at the request of the insured; any reasonable reviewer of the facts would consider these activities--two parties, Israel (a "sovereign nation") and Hamas (an "other authority"), using rockets, war planes, ground troops, and tanks--to be activities that fall within the description of the war exclusions under the policy; ASIC did not act too quickly; rather, ASIC promptly informed the insured and its broker of the possible application of the exclusions and presented them with the opportunity to supply information for ASIC's consideration.

cc. Aon presented policy wording for the policy at issue to ASIC on behalf of the insured with the request that it be accepted; Aon was involved in the negotiations of the policy; Aon and the insured knew the wording of the policy as well as ASIC; Aon later continued to refer to the policy as a "manuscripted form" and its property; this policy was presented by a sophisticated broker for a sophisticated insured that understood the risks in light of the policy wording; under these circumstances, ASIC was under no obligation to enumerate all benefits, coverages, and limitations that may apply to the claim; there is nothing to indicate that ASIC acted improperly in this regard.

dd. ASIC did not misrepresent any facts or policy provisions; ASIC did not fail to bring to the policyholder's attention facts or policy provisions it relied upon in denying coverage; the denial letters to the insured enumerated and explained the reasoning behind the

16294682.1   11775-83955

Freeman Mathis
& Gary, LLP
Attorneys at Law

application of the exclusion; all aspects of the war exclusions were specifically set out and quoted to the insured; the enumeration of those clauses would alert the sophisticated insured and their knowledgeable broker that all sections of the exclusion apply.

ee. ASIC did consider the policyholder's interest with equal regard; ASIC was reasonable in taking the position that the facts surrounding the acts of Hamas and the response by Israel would commonly be understood to be acts of war; the war exclusions did not solely pertain to the acts of a sovereign nation and Hamas as a terrorist organization but to an "other authority," which can certainly commit acts of war or warlike acts or use of weapons of war as enumerated in the policy.

ff. Outside expertise was not needed to determine coverage; the war exclusions are clear on their face; it is abundantly clear that the circumstances of this case amounted to war; the input of Mr. Williams, an experienced and knowledgeable underwriter, was sought.

gg. The contention that the underwriter in this matter played a critical role in the issue of the dispute is unfounded; a sophisticated broker presented the coverage to ASIC for a sophisticated insured which understood the possible risks in conducting a production in the Middle East; the policy was presented to ASIC with the inclusion of the various parts of the war exclusions; Aon and its sophisticated insured never sought to have the war exclusions removed or abrogated for this individual production; to the contrary, they agreed upon the very war exclusions at issue and asked ASIC to issue a coverage form with those exclusions stated in it and continued to request renewal policies with the same language; the

Freeman Mathis
& Gary, LLP
Attorneys at Law

16294682.1   11775-83955

wording of the exclusions was clear and unambiguous; Aon has claimed the language as its own; the claim department would have had no reason to seek out any opinion from their own underwriter because the war exclusions are not ambiguous and because the policy was negotiated by Aon as its manuscripted policy; Mr. Williams, the chief underwriter of the Entertainment Division, was consulted.

3. **Statements Relied Upon:**

    a. Deposition Testimony of Daniel Gutterman, with exhibits

    b. Deposition Testimony of Theresa Gooley, with exhibits

    c. Deposition Testimony of Peter Williams, with exhibits

    d. Deposition Testimony of Andrea Garber, with exhibits

    e. Deposition Testimony of Susan Weiss, with exhibits

    f. Deposition Testimony of Pamela Johnson, with exhibits

4. **Documents Relied Upon:**

    a. See Exhibit "A" for a complete list of documents relied upon by Mr. Clark, which are also set forth in the Clark Reports.

**Mr. Clark's curriculum vitae is submitted with this proffer as Exhibit "B."**

**Mr. Clark's Expert Report is submitted with this proffer as Exhibit "C."**

**Mr. Clark's Rebuttal Expert Report is submitted with this proffer as Exhibit "D."**

**ASIC's Expert Witness Disclosure is submitted with this proffer as Exhibit "E."**

**ASIC's Rebuttal Expert Witness Disclosure is submitted with this proffer as Exhibit "F."**

**Copies of non-electronic documents are being obtained.**

///

///

WRITTEN PROFFER OF EXPERT OPINION OF ASIC'S INSURANCE CLAIMS HANDLING EXPERT
ANTHONY CLARK

Freeman Mathis
& Gary, LLP
Attorneys at Law

16294682.1   11775-83955

1  DATED:  January 23, 2020        By:  /s/ Christopher W. Martin

2                                  MARC J. SHRAKE
3                                  FREEMAN MATHIS & GARY, LLP

4                                          -and-

5                                  CHRISTOPHER W. MARTIN *(Pro Hac Vice)*
                                   MELINDA R. BURKE *(Pro Hac Vice)*
6                                  WILLIAM E. McMICHAEL *(Pro Hac Vice)*
                                   MARTIN, DISIERE, JEFFERSON
7                                  & WISDOM LLP

8                                  Attorneys for Defendant ATLANTIC
                                   SPECIALTY INSURANCE COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WRITTEN PROFFER OF EXPERT OPINION OF ASIC'S INSURANCE CLAIMS HANDLING EXPERT
ANTHONY CLARK

16294682.1   11775-83955

Freeman Mathis
& Gary, LLP
Attorneys at Law