# EXHIBIT B

MARC J. SHRAKE (SBN 219331)
mshrake@fmglaw.com
FREEMAN MATHIS & GARY, LLP
550 South Hope Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 615-7019
Facsimile: (213) 615-7000

CHRISTOPHER W. MARTIN *(Pro Hac Vice)*
martin@mdjwlaw.com
MELINDA R. BURKE *(Pro Hac Vice)*
burke@mdjwlaw.com
WILLIAM E. McMICHAEL *(Pro Hac Vice)*
mcmichael@mdiwlaw.com
MARTIN, DISIERE, JEFFERSON
& WISDOM LLP
9111 Cypress Waters Blvd., Suite 250
Dallas, Texas 75019
Telephone: (214) 420-5500
Facsimile: (214) 420-5501

Attorneys for Defendant
Atlantic Specialty Insurance Company

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br> vs. <br><br> ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company, <br><br> Defendant. | CASE NO. 2:16-cv-4435-PA-MRW <br><br> **DEFENDANT ATLANTIC SPECIALTY'S SUPPLEMENTAL EXPERT DESIGNATION OF SHANNON RUSNAK; EXPERT REPORT** <br><br> Honorable Percy Anderson <br> Courtroom 9A <br><br> Pretrial Conference: January 31, 2020, 1:30 P.M. <br> Trial: February 18, 2020 |

At the Pretrial Conference on January 17, 2020, the Court granted Atlantic Specialty Insurance Company's Motion For Leave to Amend Court's Scheduling Order [Dkt. #160] to designate Shannon Rusnak as damages expert following the unfortunate death of Jay Shapiro.

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, Atlantic Specialty Insurance Company ("ASIC") hereby designates and discloses Ms. Rusnak as an expert witness whom ASIC will call to testify at trial and any other hearing or proceedings in this case.

    Shannon Rusnak

    Senior Vice President

    Forensic Accounting

    J.S. Held LLC

    796 Awalau Rd., Haiku, HI 96708

    110 Cypress Station Dr., Houston, TX 77090

    Office/Mobile 713-705-8771

Ms. Rusnak is a designated expert witness to testify regarding Plaintiffs' claim for potential "extra expenses" and other loss claimed under the Policy in issue, and in rebuttal to Plaintiffs' fact and expert witnesses regarding these matters. A copy of Ms. Rusnak's CV is attached as Exhibit 1 to her Report ("Rusnak Report"), which is attached hereto as Exhibit A. The Rusnak Report is incorporated in this Designation, the same as if set forth herein. Without limitation, it is anticipated that Ms. Rusnak will testify regarding the computation and methodology of Plaintiff's Expert, Robert Wunderlich, reductions to Mr. Wunderlich's computations, the maximum amount of potential extra expenses purportedly incurred by Plaintiffs in connection with the postponement, delay, and relocation of the *Dig* production out of Israel, as more fully set forth in the Rusnak Report, in rebuttal to Mr. Wunderlich. Ms. Rusnak's analysis included the review of the insurance policy in effect during the period in question, various budgets, actual cost recaps, communications, depositions, reports and cost ledgers, all as more fully set forth in the Rusnak Report.

**Opinions**

Ms. Rusnak has the following opinions:

*Background*

The *Dig* production started as a six-episode television series set to be filmed predominantly in Israel beginning on or about June 1, 2014. 3 (A "Snow Shoot" was filmed in Canada prior to June.) The pilot episode was completed on or about June 26, 2014 wherein a scheduled hiatus took place for preproduction and preparation of the following episodes. Filming was scheduled to begin July 20, 2014. (See First Amended Complaint p. 13, No. 21.)

Due to concerns with the safety and security of cast and crew members regarding events taking place in Israel, Plaintiff Universal Cable Productions, LLC ("UCP") made the decision to postpone the July 20 filming for a week. Subsequently, on July 16, 2016, faced with news of escalating violence in Israel, UCP made the decision to move the *Dig* production out of Israel and ultimately to Croatia and New Mexico. (See First Amended Complaint p. 15, Nos. 25 and 27).

Preparations in New Mexico began the week of July 28 and subsequently preparations began in Croatia. Filming began in Croatia during September that lasted for thirteen days. (See ATL002211) Filming of episodes 2 through 6 in New Mexico occurred October 2 through November 12, 2014. (See UCP004797). On or about October 10, 2014, the *Dig* production was extended another four episodes to include episodes 7 through 10, or the "back four" episodes. (See ATL002231-33).

Filming in New Mexico for the back four episodes began five days after filming completed on 2 through 6, or November 17, 2014 and shooting was complete December 10, 2014. Six days of filming in Croatia was scheduled thereafter. (See UCP004504 and ATL002211).

For multi-episodic productions, Amort and Pattern budget and costing is standard. Amort, or amortized costs, are those costs that are typically not variable per episode and the costs are allocated across all episodes. The Pattern costs are typically those costs that vary with the number of episodes produced and are costs booked directly to each episode account.

The claim presented by Mr. Wunderlich consists primarily of the amortized costs in New Mexico and Croatia. Thus, it is important to understand the various amortized cost accounts at issue:

1. Amortized costs in Israel applicable to episodes 1 through 6:

    A. Prep – 1095 – expenses necessary to open production at a location

    B. All Series/Amort – 1096 – costs such as set construction, set dressing, travel and living (See Deposition of Barbara-Ann Marcus-Caffrey P. 31, lines 9 through 12).

    C. Hiatus – 1097 – break between pilot and filming for prep

    D. Wrap – 1098 – expenses necessary to close production at a location

2. Amortized costs in New Mexico applicable to episodes 2 through 6

    A. Prep – 1085

    B. All Series/Amort – 1086 (also includes total Croatia Part 1 costs)

    C. Wrap – 1088

3. Amortized costs in New Mexico applicable to episodes 7 through 10

    A. All Series/Amort – 1091 (also includes total Croatia Part 2 costs)

Episodes 7 through 10 do not include Prep or Wrap expenses; this is addressed further herein.

*Summary of Opinions*

Mr. Wunderlich submitted a claim totaling $7,112,01111 based on a ledger of costs, or the "Full Cost Bible", consisting primarily of the purported amortizable costs to shoot episodes 2 through 6 in New Mexico and Croatia. Mr. Wunderlich effectively totals the amortizable costs (prep, all series and wrap expenses) of $8,956,558 and through the direction of Plaintiffs' representatives, deducts costs of $1,951,155 as non-extra (or non-duplicative) expense to those already incurred in Israel. Included in the deduction is $873,321 which is meant to reflect normal shooting, or episodic, costs in Croatia; however, the calculation by which Mr. Wunderlich arrives at this amount is flawed (discussed below). Mr. Wunderlich then adds back $106,608 in potential

Freeman Mathis & Gary, LLP
Attorneys at Law

extra expenses incurred in Israel. No critical analysis of "but for" the relocation was made by Mr. Wunderlich. He assumed that expenses were duplicated and therefore extra without testing the overall reasonableness of his method. (See Deposition of Barbara-Ann Markus-Caffrey P.31, lines 9 through 12; Wunderlich's May 11, 2017 report, P. 2; See Summary Schedule in Rusnak Report).

Ms. Rusnak is of the opinion that the potential extra expenses are $3,446,417, as follows (See Summary Schedule in Rusnak Report):

| Description | Amount |
| --- | --- |
| Potential Extra Expenses 2 through 6 | $ 6,899,094 |
| Less Additional Tax Credit/Rebate Savings | (1,637,756) |
| Less New Mexico Amortization | (1,814,922) |
| Total | $ 3,446,417 |

The amounts in the table above are based upon:

1. Potential extra expenses of $6,899,094 related to the production of episodes 2 through 6. The potential extra expenses were calculated based upon a comparison of actual expenditures for the episodes in question for locations in Israel, Croatia and New Mexico compared to the budgeted expenditures for the same episodes in Israel.

2. A reduction for additional tax credit/rebate savings realized as a result of the move in the amount of $1,637,756.

3. A reduction for New Mexico amortization costs which should have been allocated to episodes 7 through 10 in the amount of $1,814,922.

4. Any insurance policy deductible which may further reduce the calculation.

*Claim Methodology*

1. According to the insurance policy in effect during the period in question, the Definition of Loss under Section III – Extra Expense is as follows:

"The amount of your loss will be determined based on:

All necessary "Insurable Production Cost" you incur to complete the "Insured Production" that exceeds the amount of "Insurable Production Cost" you would have incurred if the covered cause of loss had not occurred;

All other necessary expenses that reduce the amount of loss otherwise payable…"

2. Mr. Wunderlich has claimed 100% of the New Mexico Prep account 1085 expenses in the amount of $1,477,588 as being duplicative of $921,795 in Israeli Prep account 1095 expenses allocated to episodes 2 through 6. (See Schedule 1 Rusnak Report ($1,198,334 / 6.5 X 5)). As noted, Mr. Wunderlich's amount of potential extra expense is 160% of the original Israeli amount. Actual costs in Israeli Prep account 1095 were $213,624 under budget due at least in part to the early termination of filming in Israel, which further inflates Mr. Wunderlich's overstatement of potential extra expenses. (See Schedule 1a ($1,411,958 - $1,198,334) in Rusnak Report).

Mr. Wunderlich made no effort to determine what Prep (or Wrap) expenses had been incurred in Israel or whether all anticipated expenses had been incurred in Israel for Prep (or Wrap) had the production been completed there. (See Deposition of Robert Wunderlich, P. 225, line 17).

3. Mr. Wunderlich has claimed 87.59% of the New Mexico Wrap account 1088 expenses in the amount of $819,239. At the direction of Plaintiff's representative, he excluded $116,038 as potential extra expenses: "And, again, I am relying on Ms. Markus for looking at the line-item detail and identifying for me the nonduplicative expenses." (See Deposition of Robert Wunderlich, P. 166, line 19 through P. 169, line 18).

Israeli Wrap account 1098 expenses attributable to episodes 2 through 6 total $271,175, or $548,064 less than the duplicative, or potential extra, expenses claimed by Mr. Wunderlich. (See Schedule 1 ($352,528 / 6.5 X 5) in the Rusnak Report). Actual costs in Israeli Wrap account 1098 were $113,307 under budget due at least in part to early termination of filming in Israel, which further inflates Mr. Wunderlich's overstatement of potential extra expenses. (See Schedule 1d in Rusnak Report).

As with all categories, and contrary to the policy language, Mr. Wunderlich did no comparison of alleged New Mexico/Croatia extra expenses with the alleged duplicated Israeli expenses to find out why his duplicates were so far in excess of original expenditures:

> "Q Did you personally make any type of comparison of the wrap expenses that were actually incurred in Israel in comparison to the wrap expenses that you included in your Exhibit 261?
>
> THE WITNESS: No. And that wasn't the intent of my compilation. My compilation was to identify the expenses in duplicative categories of expenses, entire categories. That wouldn't have been necessary if the production had completed in Israel."

Deposition of Robert Wunderlich, P. 225, line 24 through P. 225, line 9.

4. Mr. Wunderlich claimed $2,855,046 in potential extra, or duplicated, expenses related to New Mexico Amort/All Series account 1086. At the direction of Plaintiff's representative, Mr. Wunderlich excluded costs totaling $828,021 from total costs of $3,683,077 to arrive at his claim amount. Account 1086 New Mexico Cost total of $3,683,077 - $2,855,056. UCP018225 and B3 of Wunderlich's March 17, 2017 report. Israeli Amort/All Series account 1096 included costs totaling $1,863,207 attributable to episodes 2 through 6, or $991,839 less than claimed by Mr. Wunderlich. Actual costs in Israeli Amort/All Series account 1096 were $938,179 under budget due at least in part to early termination of filming in Israel, which further inflates Mr.

Wunderlich's overstatement of potential extra expenses. (See Schedule 1b to Rusnak Report).

Again, no critical analysis was done by Mr. Wunderlich to compare overall costs in a "but for" scenario to the actual scenario, or to review the costs in Israel compared to the alleged duplicated New Mexico expenses.

5. Mr. Wunderlich set forth $174,397 in extra compensation expenses for New Mexico as a result of extra SAG compensation requirements and higher negotiated compensation resulting from the longer time span of production. Documentation supporting the reason for the extra compensation and whether this was attributable to the relocation or additional episodes could not be located. In his testimony, when asked about the extra compensation costs, Mr. Wunderlich testified that they related primarily to the extra SAG compensation and made no mention of the higher negotiated compensation. Yet the increased negotiated compensation makes up $103,465 plus associated SAG and Taxes of $25,072, or, by far, most of this claim category. Deposition of Robert Wunderlich, P. 259, lines 10 through 25 and B4-R of Wunderlich's May 11, 2017 report.

6. The Croatia expenses include Prep, Wrap, All-Series and Episode/Pattern expenses. Mr. Wunderlich took the total expenses of $2,643,457 (document UCP018225) and at the direction of Plaintiff's representative, deducted purported "non duplicated" expenses totaling $133,773 to arrive at a net amount of $2,509,684. He then added back potential extra expenses totaling $92,741 for pay in Israel for extra Croatia shooting units and extra compensation for added travel days due to relocation to Croatia. No comparison was made by Mr. Wunderlich regarding potential travel that would have been required from Israel or the potential savings that may have been realized from traveling to and from New Mexico compared to and from Israel. (See Deposition of Robert Wunderlich, P. 69, lines 1 through 11 and P. 70, line 12 through P. 72, line 15 and P. 108, line 14 through P. 109, line 4).

Freeman Mathis
& Gary, LLP
Attorneys at Law

In order to account for the shooting/filming costs included in the Croatia expenses, Mr. Wunderlich attempted to exclude these using a budgeted amount trended to actual, or an amount of $873,321. However, the budgeted amount used by him was understated, thereby understating the deduct and overstating the potential extra expenses. In reviewing the detail to the daily shoot budget used by Mr. Wunderlich (document UCP018222), Ms. Rusnak noted several line items where significant costs would be accrued as "Subject to Day Out of Days" and -$0- dollars budgeted for these line items. These line items include Actor/Performer, Stunts, Extra Talent and Special Effects.

The net claimed Croatia expenses of $1,729,104 (or $2,509,684 plus $92,741 less $873,321) are inflated using a flawed methodology.

7. Push expenses were claimed by Mr. Wunderlich for the potential extra expenses incurred in Israel during the one-week period when production was on hold. These expenses total $56,627. Of the claimed amount, $31,716 reflected the Israeli crew which was based on a four-week period of pay divided by four weeks. Mr. Wunderlich made no attempt to break out the payroll by week or inquire about the reason for continued payroll. (See Deposition of Robert Wunderlich, P. 337, line 19 through P. 338, line 24 and P. 343, line 11 through P. 346, line 18). According to a July 14, 2014 email from Randi Richmond, "3 weeks Hiatus – we will have some savings on the last hiatus week as that really has been the push week where we were able to get a bunch of folks off the clock." (See document UCP001480-81). Thus, Mr. Wunderlich's methodology of taking the total expenses and dividing by the number of weeks would appear to overstate the claim. Based upon the detail provided Ms. Rusnak was unable to determine the periods of pay but she notes that $13,053 of the claimed $31,716 amount was not booked to the Hiatus account but instead was booked to the Prep, Wrap and All Series accounts. Therefore, at the very least, $13,053 should not be considered Push expenses. The remaining expenses reflect Crew expenses during the Hiatus for compensation paid in Canadian dollars and for

Freeman Mathis & Gary, LLP
Attorneys at Law

compensation paid in U.S. dollars; these amounts total $24,912 and the source of this information was Plaintiff's representative. Deposition of Robert Wunderlich Ph.D., P. 349, lines 3 through 8.

The claim set forth by Mr. Wunderlich was primarily based upon the "Full Cost Bible" for amortized costs in New Mexico and Croatia. Most of the deductions to the "Full Cost Bible" amounts were made at the direction of Plaintiff's representative. The sole deduction made by Mr. Wunderlich, or the $873,321 amount discussed above, was flawed. The additions to the "Full Cost Bible" made by Mr. Wunderlich for compensation and travel lacked sufficient relevant data and critical analysis. Mr. Wunderlich's calculation of potential extra expenses are overstated and he did no critical analysis to ensure his reliance on assumptions, or the direction of others, resulted in an analysis that was reasonable.

*Calculation Methodology*

1. As required in the insurance policy definition, above, Ms. Rusnak compared the insured cost to complete the production to the costs that would have been required to complete the production had the delay and relocation not occurred. Ms. Rusnak also looked at the necessary expenses incurred which otherwise reduce the loss payable. All Schedules supporting Ms. Rusnak's opinions can be found in Exhibit 3 to this report.

2. As noted on the attached Schedule 1, Ms. Rusnak started with Episode 2 through 6 New Mexico and Croatia costs in the amount of $21,351,171. This amount is $53,736 greater than the "Full Cost Bible" used by Mr. Wunderlich.

3. Because certain Amort costs which had been incurred in Israel would apply to episodes 2 through 6 had the production not relocated, Ms. Rusnak next added to the New Mexico and Croatia costs an amount of $3,255,413. (Schedule 1 Rusnak Report) for Amortized Israeli costs. The total actual Israeli costs of $4,232,037 were allocated between 6.5 episodes (the pilot, a 90-minute episode, and five 60-minute episodes). Based upon Ms. Rusnak's review of cost statements, it appears that the

Freeman Mathis
& Gary, LLP
Attorneys at Law

amortizable costs had not yet been allocated to the pilot and the entire amount was not attributable solely to episodes 2 through 6. (Doc. UCP006123 and UCP019028-035).

4. Potential Episode 2 through 6 actual costs total $24,606,584.

5. From the actual costs, Ms. Rusnak deducted the "But For" or budgeted costs for episodes 2 through 6 in the amount of $17,707,490. (See Schedule 1 Rusnak Report). The budget is based upon the Locked Pattern Budget established for Israeli production. There was limited data with which to trend the budget to actual and Ms. Rusnak noted instances where actual costs were exceeding budget potentially as a result of events in Israel prior to the decision to delay production. Additionally, Ms. Markus testified regarding the effort that goes into the budgets to ascertain accuracy. Thus, it is reasonable to consider the budgeted amount as a valid projection in the "But For" scenario.  Rule 30 (b) (6) Deposition of Barbara-Ann Markus-Caffrey P.11, line 15 through P. 12, line 25.

6. Ms. Rusnak reduced the potential extra expenses by the additional tax credit/rebate savings in the amount of $1,637,756.34.  The savings/rebate was based upon the savings realized from the Croatia and New Mexico tax credits/rebates over and above the net savings (projected less the tax credits/rebates received) which would have been realized in Israel. Ms. Rusnak notes that Mr. Wunderlich included potential extra expenses for the audit of the tax credits/rebates in New Mexico and Croatia.

7. Ms. Rusnak further reduced the potential extra expenses by the amortized New Mexico expenses which should have been allocated to episodes 7 through 10. (Schedule 3 to Rusnak Report). As noted above, there were no Prep or Wrap expenses allocated episodes 7 through 10 and very limited Amort/All Series expenses were allocated to these episodes. As noted on Schedule 3, episode 2 through 6 amortized costs for New Mexico totaled $1,046,691 per episode; whereas, amortized costs for episode 7 through 10 totaled only $229,977 per episode. By redistributing all the costs evenly across episodes 2 through 10, Ms. Rusnak arrives at an amount of $683,707

per episode, or $3,418,534 for episodes 2 through 6. The $3,418,534 amount resulted in a $1,814,922 overstatement and reduction to the potential extra expenses.

8. Ms. Rusnak's calculation results in potential extra expenses of $3,446,417 (See Summary Schedule Rusnak Report), or $3,665,594 less than as presented by Mr. Wunderlich.

**The Facts and Data Considered by Ms. Rusnak**

The facts and data considered by Ms. Rusnak are fully set forth in the Rusnak Report and Exhibits 2 and 3 to that Report, which is attached hereto and incorporated herein as Exhibit A. Documents reviewed and considered include, but are not limited to, detailed ledgers, cost reports, production recap reports, budgets, and other financial data provided by Plaintiffs, the deposition and reports of Plaintiffs' expert Wunderlich, fact witness depositions including that of BJ Markus, certain exhibits to the deposition of Wanda Phillips, the Policy, Plaintiffs' Amended Pleading, the report of Mr. Shapiro, and Mr. Shapiro's deposition.

**Exhibits That Will Be Used to Support or Summarize Ms. Rusnak's Opinions**

Exhibits that will be used to support or summarize Ms. Rusnak's opinions, including at trial, are those identified in the Rusnak Report as having been reviewed by her and on which she will rely, including schedules attached to the Rusnak Report and documents reviewed (Exhibits 2 and 3 to Rusnak Report) or excerpts therein.

**Ms. Rusnak's Qualifications, Including a List of Publications Authored in the Previous 10 Years**

Ms. Rusnak's qualifications are set forth in the Rusnak Report, as are her Publications. A copy of her CV is attached to the Rusnak Report, which is incorporated herein by reference as Exhibit 1. In summary, Ms. Rusnak has been providing forensic accounting services for over 35 years. She has performed thousands of assignments involving measurement of damages, including costs stemming from breach of contract, and have been qualified as an expert in both state and federal court.

Ms. Rusnak is a member of the American Institute of Certified Public Accountants ("AICPA"). As required by the AICPA (Litigation Services and Applicable Professional Standards; Code of Professional Conduct),

**List of All Other Cases In Which, During the Previous 4 Years, Ms. Rusnak Has Testified as an Expert at Trial or By Deposition**

A list of all other cases in which, during the previous 4 years, Ms. Rusnak has testified as an expert at trial or by deposition is included in the Rusnak Report, which is incorporated herein by reference as Exhibit 1.

**Statement of the Compensation to Be Paid For the Study and Testimony in This Case**

Ms. Rusnak's fees on this assignment are based upon hourly rates for her and other accountants working under her supervision. J.S. Held, L.L.C. is being paid $355 per hour for Ms. Rusnak's time and the rates for other accountants working under her supervision are $190 for Senior Consultants to $170 for Consultants.

DATED: January 17, 2020

MARC J. SHRAKE
FREEMAN MATHIS & GARY, LLP
-and-
CHRISTOPHER W. MARTIN *(Pro Hac Vice)*
MELINDA R. BURKE *(Pro Hac Vice)*
WILLIAM E. McMICHAEL *(Pro Hac Vice)*
MARTIN, DISIERE, JEFFERSON
& WISDOM LLP

By: */s/ Christopher W. Martin*
Attorneys for Defendant ATLANTIC SPECIALTY INSURANCE COMPANY