1  MARC J. SHRAKE (SBN 219331)
   mshrake@fmglaw.com
2  WAYNE H. HAMMACK (SBN 202709)
   whammack@fmglaw.com
3  FREEMAN MATHIS & GARY, LLP
   550 South Hope Street, Suite 2200
4  Los Angeles, California 90071
   Telephone: (213) 615-7019
5  Facsimile: (213) 615-7000

6  CHRISTOPHER W. MARTIN (*Pro Hac Vice*)
   martin@mdjwlaw.com
7  MELINDA R. BURKE (*Pro Hac Vice*)
   burke@mdjwlaw.com
8  WILLIAM E. McMICHAEL (*Pro Hac Vice*)
   mcmichael@mdiwlaw.com
9  MARTIN, DISIERE, JEFFERSON
   & WISDOM LLP
10 9111 Cypress Waters Blvd., Suite 250
   Dallas, Texas 75019
11 Telephone: (214) 420-5500
   Facsimile: (214) 420-5501

12
   Attorneys for Defendant
13 Atlantic Specialty Insurance Company

14

15  **UNITED STATES DISTRICT COURT**

16  **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| 17  UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company, | ) CASE NO. 2:16-cv-4435-PA-MRW |
| | ) **WRITTEN PROFFER OF** |
| 18 | ) **EXPERT OPINIONS OF ASIC'S** |
| | ) **LAW OF WAR EXPERT DR.** |
| 19 | ) **INGRID DETTER DE** |
| | ) **FRANKOPAN** |
| 20               Plaintiffs, | ) |
| 21          vs. | ) Hearing Date:     TBD |
| | ) |
| 22  ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company, | ) File Date:  6/20/2016 |
| 23 | ) Pre-Trial Conference: 1/17/2020 |
| | ) Trial Date:   2/18/2020 |
| 24               Defendant. | ) |

25  ///

26  ///

27  ///

28  ///

Freeman Mathis & Gary, LLP
Attorneys at Law

**<u>Written Proffer of Expert Opinions of ASIC's Law of War Expert Expert</u>**

**<u>Ingrid Detter de Frankopan</u>**

Plaintiffs allege that ASIC breached the implied covenant of good faith and fair dealing in failing to properly investigate Plaintiffs' *Dig* claim and in denying coverage of Plaintiffs' *Dig* claim under the Policy. The claim was denied by ASIC under the war exclusions of the Policy. Dr. Ingrid Detter de Frankopan was engaged by ASIC to evaluate Plaintiffs' claims regarding the validity of the application of the war exclusions and to rebut the opinions set forth by Mr. Ross, Dr. Koh, and Mr. Levitt, Plaintiffs' expert witnesses, who offered opinions on the validity of the application of the war exclusions. Dr. de Frankopan prepared an Expert Report. The de Frankopan Expert Report was incorporated by reference in ASIC's Expert Witness Disclosure as Exhibit B and by ASIC's Rebuttal Expert Witness Disclosure. [ASIC Expert Witness Disclosure, p. 4; ASIC Rebuttal Expert Disclosure, p. 5].

Dr. de Frankopan's opinions are set forth in the Disclosure and are provided in this Proffer. Dr. de Frankopan was deposed by Plaintiffs but was not asked about each opinion set forth in her report. Moreover, ASIC reserved its questions of Dr. de Frankopan until the time of trial.

ASIC now files this Proffer of the opinions of Dr. de Frankopan as follows:

A.  **Opinion and Citation to Expert Witness Disclosure:** The summer 2014 conflict between Israel and Palestine constituted a war as that term is commonly used and as the term is understood within her area of expertise and study. [ASIC Expert Witness Disclosure, p. 4; ASIC Rebuttal Expert Witness Disclosure, p. 4]. As part of this opinion, Dr. de Frankopan will testify that, based on the duration and intensity of the fighting, the number of casualties, and other specifics of the conflict, the conflict was a war; that Palestine is a quasi-state and Hamas is a semi-sovereign, but even if they are not, this does not mean that the 2014 conflict was not a war; that, regardless of the designation of the

Freeman Mathis
& Gary, LLP
Attorneys at Law

participants, the 2014 conflict constituted a war; and that the fact that the United States has designated Hamas as a terrorist organization does not alter the fact that the 2014 conflict was a war.  [ASIC Expert Witness Disclosure, p. 4; ASIC Rebuttal Expert Disclosure, pp. 4-5].

1. **Relevance of Opinion:**  Dr. de Frankopan's opinion regarding the validity of the application of the war exclusions, as noted above, supports the reasonableness of the basis for the claim's denial and directly rebuts the opinions of Mr. Ross, Dr. Koh, and Mr. Levitt.

2. **Bases for Opinion:**  Dr. de Frankopan's opinion is based on her background as a barrister at law in England and Wales and as a professor of international law.  For over thirty years, Dr. de Frankopan has specialized in the law of war and armed conflict and related fields.  Her comprehensive work *The Law of War* is now in its third edition. She has also published substantial articles on topics relating to armed conflict and 14 other books on various central topics of international law, including matters concerning sovereignty, independence and statehood, and intervention. Dr. de Frankopan's qualifications and experience are further detailed on pages 1 and 2 of her Expert Report.

   a. The 50-Day War in 2014 was fought by Israel and Hamas.  The conflict is also known as "The Gaza War" or as "Operation Protective Edge" (or Operation Cliff). On 12 June three Israeli teenagers were kidnapped. When these young people were found murdered on 24 June, there was outrage in Israel: there was evidence that it was two Hamas members who had killed the teenagers.

   b. The exact chronology in the 50-Day War is not clear--as often in military conflict when one side claims to have acted

Freeman Mathis
& Gary, LLP
Attorneys at Law

1  in response, and self-defense, to attacks of the other side.
2  Both sides often claim to be the victimized target.

c.  What is undisputed is that Hamas had engaged in military acts for several weeks, or months, before June 2014. As early as January 2014, the United States and the United Kingdom issued travel warnings to visitors to Israel.  But during the first week of July 2014, when Operation Protective Edge was launched, until 26 August 2014 the attacks by Hamas, and the response by Israel intensified to amount to full scale war.

d.  There were numerous reports about the war scenes, and virtually all reports referred to the conflict as a war.  Please see Footnote 7 to Dr. de Frankopan's Expert Report.

e.  Thus, although the tensions between Israel and Hamas had gone on for some time, the tragic event of the murdered Israeli teenagers and the subsequent military responses by both sides caused Israel to launch a forceful military operation on 8 July 2014 in the Hamas Ruled Gaza Strip. In response Hamas started new rocket attacks, targeting Israeli cities and infrastructure, resulting in seven weeks of Israeli operations. The military activities of both sides amounted to full scale war, resulting in the death of thousands of people, the vast majority of them Gazans.

f.  It is this conflict that became known, by all authorities, as the 50-Day War or the Gaza War.

g.  Some say the war should be called the 51-Day War alleging that Israel had started its attacks on 7 July: "It's a 51-day war, not a 50-day war as the corporate media repeatedly say. 50

Freeman Mathis
& Gary, LLP
Attorneys at Law

WRITTEN PROFFER OF EXPERT OPINION OF ASIC LAW OF WAR EXPERT DR. INGRID DETTER DE FRANKOPAN
16294657.1  11775-83955

days means the war started on 8 July, when Hamas' military wing fired rockets into southern Israel, not on 7 July, when Israel commenced an air strike. The difference of a day is the difference between portraying Hamas as the aggressor and Israel as acting in self-defense or acknowledging that Israel was the aggressor and Hamas acting in self-defense." Please see Footnote 8 to Dr. de Frankopan's Expert Report.

h.    The Israeli air campaign went on until 17 July when Hamas widened its attack by intruding through tunnels and Israel then engaged ground forces to counterattack. Israeli ground forces withdrew on 5 August but Hamas air attacks and Israeli air response continued until 26 August when Hamas accepted a ceasefire.

i.    The prolonged and intense fighting between Hamas and Israel from June - August 2014 constituted a "war" or "war like activities" and involved the use of weapons of war, as understood in common language.  This was certainly a full scale "war."

j.    The type of fighting in this conflict, that lasted for 50 (or 51) days, was both intense and sustained and showed all the essential elements to qualify this as a war situation. There was shelling and use of heavy weapons on both sides. There were air-force attacks by Israel countered by heavy artillery and rockets launched by Hamas. Israel deployed ground forces and Hamas counterattacked through tunnels from the Gaza strip.

k.    On both sides in the conflict, battles were fought by

WRITTEN PROFFER OF EXPERT OPINION OF ASIC LAW OF WAR EXPERT DR. INGRID DETTER DE FRANKOPAN

16294657.1   11775-83955

**Freeman Mathis & Gary, LLP**
Attorneys at Law

uniformed soldiers, answering to hierarchical commands as in traditional war situations.

l.  Casualties were considerable on both sides, and in this respect as well,  the  conditions of required level of intensity and length of sustained attacks  were  fulfilled  for the conflict to be classified as a "war," rather than be considered to constitute mere sporadic attacks or incursions.

m.  The 50 Day armed conflict between Hamas and Israel in July-August 2014 amounted to a "war."

n.  The term "war" should indeed be applied in the "normal" sense of the word.  That is how a "normal person" would understand the term and the relevant situation.

o.  An accepted definition of "war" that surpasses the de minimis threshold of occasional or sporadic armed attacks is: "'War is... a sustained struggle by armed force of a certain intensity between groups of a certain size, consisting of individuals who are armed, who wear distinctive insignia and who are subjected to military discipline under responsible command." Please see Footnote 10 to Dr. de Frankopan's Expert Report.

p.  Traditionally one distinguishes between inter-State wars and civil wars. Naturally, civil wars will have one side that is a non-State--the insurgents or the rebels--and one side that is the "State." We need only think of the American Civil War, an internal conflict fought in the United States from 1861 to 1865. The Union faced secessionists in eleven Southern states. The Union won the war, which remains the bloodiest

WRITTEN PROFFER OF EXPERT OPINION OF ASIC LAW OF WAR EXPERT DR. INGRID DETTER DE FRANKOPAN

16294657.1   11775-83955

Freeman Mathis
& Gary, LLP
Attorneys at Law

in US history. No one would question whether this was a "war."

q.   Nor would any question whether the American War of Independence, sometimes called the American Revolutionary War (1775- 1783), an armed conflict between the United Kingdom and thirteen of its North American colonies, was a "war."

r.   In the aftermath of the Second World War, it became clear that there were other "wars" than those fought between States or those that could be classified as civil wars. In her first edition of *Law of War*, Dr. de Frankopan noted in 1988 that some wars were fought with non-States. Please see Footnote 11 to Dr. de Frankopan's Expert Report.  Later, an influx of books agreed and noted that the "old type" of war was no longer prevalent. Please see Footnote 12 to Dr. de Frankopan's Expert Report.  A number of academic schemes were established to study the "new type" of war in contemporary society. They all accept that armed conflicts between a State and a non-State may qualify as "war."

s.   Among these schemes, "The Changing Character of War Programme (CCW)" is a highly prestigious project at Oxford University, devoted to the interdisciplinary study of war and armed conflict. The title itself indicates that "war" is not necessarily understood nowadays as it was traditionally to mean inter-State wars or possibly civil wars of some scale, but also wars between States and non-States as well as wars between two or more non-States. The Leverhulme Trust invited Universities in the United

16294657.1   11775-83955

Freeman Mathis
& Gary, LLP
Attorneys at Law

Kingdom in 2003 to compete for a five-year research grant to study "The Changing Character of War." Oxford University won this competition and the Program is now in its 15th year. It is a policy-relevant research program based in Pembroke College, University of Oxford, enjoying global influence and international partnerships. CCW has a Working Group that analyzes changing attitudes to "war." The group is interdisciplinary in outlook and open to diverse theories and methodologies of the study of armed conflict, civil war, and related issues, such as peace building and post-war reconstruction.

t.     The Correlates of War Project (COW) is another ongoing Project on War Studies. This is conducted at the University of Michigan and is a project that seeks to facilitate the collection, dissemination, and use of accurate and reliable quantitative data on wars and armed conflict in international relations. Key principles of the project include a commitment to standard scientific principles of replication, data reliability, documentation, review, and the transparency of data collection procedures.

u.     Under the auspices of COW, important studies have been published on the degree of violence threshold above which an armed conflict is to be classified as a "war." The Correlates of War Project started with an attempt to define war in terms of types of violence. Not only is war impossible without violence but the taking of human life is the primary and dominant characteristic of war. Please see Footnote 15 to Dr. de Frankopan's Expert Report. The

Freeman Mathis
& Gary, LLP
Attorneys at Law

WRITTEN PROFFER OF EXPERT OPINION OF ASIC LAW OF WAR EXPERT DR. INGRID DETTER DE FRANKOPAN

16294657.1   11775-83955

definition of war hinges in the COW opinion on two primary criteria: the threshold of battle-related fatalities of troops in combat and the status of the war participants.  Thus, to constitute a "war," there must have occurred 1,000 battle-related deaths or more in a calendar year to show that the level of hostilities differentiates war from other types of conflict.  Please see Footnote 16 to Dr. de Frankopan's Expert Report.

v.  As for the intensity of the armed conflict between Hamas and Israel in  July August 2014, NBC reported as early on 1 August 2014, more than three weeks before the end of the conflict,                          that,                          "The death toll now surpasses the about 1,400 Palestinians killed during the Gaza war of 2008-2009."  Please see Footnote 17 to Dr. de Frankopan's Expert Report.  The ultimate death toll was around 2,200 on the Palestinian side; 73 Israelis were also killed.  Please see Footnote 18 to Dr. de Frankopan's Expert Report.

w.  The conflict between Israel and Hamas has been consistently referred to as a "war" in newspapers, press reports, televised programs and in reports by States.

x.  The Israeli Government repeatedly referred to the escalation of the armed conflict with Hamas as a "war."  Please see Footnote 19 to Dr. de Frankopan's Expert Report.  The newspapers in Israel consistently referred to the conflict as a "war."  Please see Footnote 20 to Dr. de Frankopan's Expert Report.

y.  News reports in other countries also referred to the conflict

WRITTEN PROFFER OF EXPERT OPINION OF ASIC LAW OF WAR EXPERT DR. INGRID DETTER DE FRANKOPAN

16294657.1   11775-83955

Freeman Mathis
& Gary, LLP
Attorneys at Law

as a "war." For example, the Financial Times, among numerous other newspapers, referred to the conflict as a "war." Please see Footnote 21 to Dr. de Frankopan's Expert Report. CNN reported that the State Comptroller's Report criticized "Prime Minister Benjamin Netanyahu's government, claiming it had no strategic goals when the 50-day war started in early July 2014." Please see Footnote 22 to Dr. de Frankopan's Expert Report. NBC reported on 20 July 2014 that "Benjamin Netanyahu says Israel's War in Gaza will be prolonged" and on 30 July 2014 that "Britain warns that support for Israel waned in the wake of the Gaza war." Please see Footnotes 23 and 24 to Dr. de Frankopan's Expert Report. Under the headline "Gaza War," NBC reported on 21 August 2014 that Hamas had admitted killing the Israeli teenagers, and under a similar headline of the "Gaza War" on 7 December 2014, NBC announced that "Israel Opens Eight New Investigations into Military Operations." Please see Footnotes 25 and 26 to Dr. de Frankopan's Expert Report.

z.  The Report of the UN Human Rights Council in 2015 also suggested that Israel and Palestinians "may be guilty of war-crimes." Please see Footnote 27 to Dr. de Frankopan's Expert Report. For anyone to have committed a "war crime," there must have been a "war."

aa.  NBC announced on 27 August 2014 that "Gaza Cease-Fire Holds between Hamas and Israel After 50-Day War." Please see Footnote 28 to Dr. de Frankopan's Expert Report   In this context, it should be stressed that even to

WRITTEN PROFFER OF EXPERT OPINION OF ASIC LAW OF WAR EXPERT DR. INGRID DETTER DE FRANKOPAN

16294657.1   11775-83955

Freeman Mathis
& Gary, LLP
Attorneys at Law

speak of a "cease-fire," there would have to be a "war." One does not speak of "ceasefires" in the case of occasional incursions or mere incidental attacks.

bb.   Under the strict definition of "war," Palestine is a quasi-State and Hamas is a sovereign or semi-sovereign.

    i.   The parties that engage in war do not have to be "recognized" as States or even as "belligerents" by their enemy. Nor does "war" have to be declared. Please see Footnote 29 to Dr. de Frankopan's Expert Report. A "country," a "nation" or a "group," and even a "terrorist organization" can be a belligerent in spite of non-recognition. Please see Footnote 30 to Dr. de Frankopan's Expert Report. In fact, the overwhelming number of "wars" and "armed conflicts" in modern international society are waged precisely between a State, or a group of States, and a terrorist organization.

    ii.   Nevertheless, Palestine is, at the very least, a quasi-State. Hamas is de facto governing the Gaza strip where it has installed a "Government;" Hamas has various "Ministries" that include administration over areas such as health and education. Earlier disputes with Fatah, led by Arafat, concerned the competition to finally take over power in larger areas. But, during 2014 and since, it is Hamas that alone governs the entire Gaza Strip. In that sense, Hamas is also a "State-like" figure and a "semi-sovereign."

    iii.   The United Nations Human Rights Commission noted

WRITTEN PROFFER OF EXPERT OPINION OF ASIC LAW OF WAR EXPERT DR. INGRID DETTER DE FRANKOPAN

16294657.1   11775-83955

Freeman Mathis
& Gary, LLP
Attorneys at Law

in its Report in 2015 that there are some non-State actors that exercise government-like functions and control over a territory. This, said the Report, is the case with Hamas that is "governing" the Gaza Strip. The Commission reminded such "government-like" bodies that they are obliged to respect human rights norms when their conduct affects the human rights of the individuals under their control. Please see Footnote 31 to Dr. de Frankopan's Expert Report.

iv.   Moreover, Hamas has indicated that, in governing the Gaza Strip, it is "determined… to promote the rule of law, the respect for the judiciary, the separation of powers, the respect for human rights, the equality among citizens; to fight all forms of discrimination; to protect public liberties, including the freedom of the press and opinion." Please see Footnote 32 to Dr. de Frankopan's Expert Report.

v.    Hamas has also confirmed its commitment to "respect…public liberties; to strengthen the establishment of democracy; to protect human rights…and its respect for international law and international humanitarian law insofar as they conform with our character, customs and original traditions." Please see Footnote 33 to Dr. de Frankopan's Expert Report.

vi.   There is no reason why Hamas, as a "terrorist organization," cannot be a belligerent and take part as a side in full scale war.

WRITTEN PROFFER OF EXPERT OPINION OF ASIC LAW OF WAR EXPERT DR. INGRID DETTER DE FRANKOPAN
16294657.1   11775-83955

Freeman Mathis & Gary, LLP
Attorneys at Law

vii.     According to the authoritative Uppsala Conflict Data Program (UCDP), a nonState conflict is defined as "War" as defined according to the intensity level of the conflict. Please see Footnote 34 to Dr. de Frankopan's Expert Report.  The survey of UCDP states thus that the relevant intensity level is set according to the number of deaths inflicted by the conflict regardless of whether the conflicting entities are states.  Please see Footnote 35 to Dr. de Frankopan's Expert Report.  The survey states:

Intensity level

(state-based)

The intensity variable denotes what level of fighting a state-based conflict or dyad reaches in each specific calendar year. The variable has two categories:

Minor: At least 25 but less than 1000 battle-related in one calendar year.

War: At least 1000 battle-related deaths in one calendar year.

Please see Footnote 36 to Dr. de Frankopan's Expert Report.

viii.    The Gaza conflict of July-August 2014 thus comes easily under the definition of "war" according to a chart published by UCDP, showing more than 2000 deaths caused by the conflict.  Please see Footnote 37 to Dr. de Frankopan's Expert Report.   The 50-Day Gaza War showed violence exceeding what had been seen for 30 years.  Please see Footnote 38 to Dr. de

WRITTEN PROFFER OF EXPERT OPINION OF ASIC LAW OF WAR EXPERT DR. INGRID DETTER DE FRANKOPAN

16294657.1   11775-83955

Freeman Mathis & Gary, LLP
Attorneys at Law

Frankopan's Expert Report.

ix.   Commentators have stated that: "'The Israel-Palestine conflict reached the highest level of intensity since the early 1980s as a result of 'Operation Protective Edge' launched in July 2014. Attempts at negotiations broke down in April and after the kidnapping and murder of three Israeli youths in June, violence escalated to levels not seen in more than 30 years. Individuals connected to Hamas were suspected of the murders, but the group officially denied involvement. Israel launched aerial bombings with the expressed goal of stopping Hamas missile fire, but also conducted a ground incursion, trying to destroy the tunnel system that Hamas used to attack Israeli targets. In late August, after two months of almost daily attacks, a ceasefire was agreed to through Egyptian efforts."

x.   To the extent Palestine needs to be a quasi-state to be an entity capable of engaging in war, it meets this definition. Additionally, Hamas may be considered as a semi-sovereign in so far as it has taken control and is effectively administering the Gaza Strip.

xi.   Hamas is de facto controlling this territory. According to the Uppsala Conflict Data Program (UCDP), a "government" in war situations is defined as follows: 'Government

(state-based, non-state, one-sided)

The party controlling the capital of the State.

Comment:

WRITTEN PROFFER OF EXPERT OPINION OF ASIC LAW OF WAR EXPERT DR. INGRID DETTER DE FRANKOPAN

16294657.1   11775-83955

Freeman Mathis
& Gary, LLP
Attorneys at Law

The UCDP is concerned with who is controlling power in practice (de facto). We are not concerned with who is the rightful holder of the power (de jure). UCDP uses control of the capital as an indicator of the de facto government. This is not the same as saying that we are interested in whether the current government is a functional government. The government may control the capital and very little else but we still treat that party as the government. Almost by definition, if an armed conflict is occurring in a country, the government is not likely to be fully functional. The definition of 'government' was changed some years back from a definition including the concept of 'central government' to ' ... controlling the capital of the state.' The reason was that the previous wording was not consistent with the rest of the definition and instead of finding the "perfect" formulation; we simply changed the operationalisation itself. The definition of government as 'who controls the capital' is completely based on empirical patterns rather than theory. What we in fact do when we identify the government is that we try to identify the central government by simply looking at the parties' own statements about each other, and only then do we check if they also control the capital.' Please see Footnote 39 to Dr. de Frankopan's Expert Report.

xii.    On that score, the belligerent Hamas must be

WRITTEN PROFFER OF EXPERT OPINION OF ASIC LAW OF WAR EXPERT DR. INGRID DETTER DE FRANKOPAN

16294657.1   11775-83955

Freeman Mathis
& Gary, LLP
Attorneys at Law

considered to be the "government" of Gaza as it has control of the capital, or the largest city in the Gaza Strip, normally referred to as Gaza City or simply "Gaza."

xiii.   In the UCDP a "State" is defined as follows:

'State

(state-based, non-state and one-sided)

A State is either an internationally recognised sovereign government controlling a specified territory, or an internationally unrecognised government controlling a specified territory whose sovereignty is not disputed by another internationally recognised sovereign government previously controlling the same territory.

Comment:

Basically coincides with the list of UN member States, with the addition of a few non-members such as Taiwan. These are States both de jure and de facto. If we are dealing with a non- recognised entity or a de facto State, it can meet the criteria of a State as defined here, if no other State claims that territory - given that the other State once used to control the entity.'

Please see Footnote 40 to Dr. de Frankopan's Expert Report.

xiv.    It is clear that Israel no longer actually "claims" the Gaza Strip. On 12 September 2005, the Israeli cabinet formally declared an end to Israel's military occupation of the territory. This unilateral

-16-

Freeman Mathis
& Gary, LLP
Attorneys at Law

disengagement could probably justify the further qualification of Hamas as a quasi-State under the UCDP criteria as this entity now has full territorial control of the Gaza territory as this is no longer officially disputed by Israel, albeit there are issues about settlements.

cc.   "War" does not have to be between States.

i.   The overarching definition of war is: sustained combat, involving organized armed forces, resulting in a minimum of 1,000 battle-related fatalities (later specified as 1,000 battle-related fatalities within a 12 month period).

ii.   In terms of the second criterion, the status of the war participants, wars had to have participants on both sides that had organizations able to conduct combat (armed forces).

iii.   Over the last 40 years, the world has gradually entered into a state where the wars are undeclared, the battlefields can be anywhere, the uniforms are optional, and the combatants as well as the targets are often "civilian."  Please see Footnote 41 to Dr. de Frankopan's Expert Report.  This so called 4th generation warfare is precisely characterized by a violent non-State actor (VNSA) fighting a State.  Please see Footnote 42 to Dr. de Frankopan's Expert Report.

iv.   It is significant that few question the ability of non-States to engage in a "war."  Such confrontations have

Freeman Mathis
& Gary, LLP
Attorneys at Law

-17-

been called "asymmetric" conflicts in view of the difference in strength and military ability and sheer disparity of power.  Please see Footnote 43 to Dr. de Frankopan's Expert Report.  A war waged by a group which is not a State, against the traditional war waging machinery of the State, is possibly, by nature, an "unequal" or an "asymmetric" war.   Please see Footnote 44 to Dr. de Frankopan's Expert Report.

v.    It is abundantly clear in practice that parties to war do not have to be States. Nor does a war have to be declared; this practice was abandoned long ago. Please see Footnote 45 to Dr. de Frankopan's Expert Report.

vi.    Nor do the parties that engage in war have to be "recognized" as States or even as "belligerents" by their enemy. A "country," a "nation" or a "group," and even a "terrorist organization" can be a belligerent in spite of non-recognition.  Please see Footnote 46 to Dr. de Frankopan's Expert Report.  In fact, the overwhelming number of "wars" and "armed conflicts" in modern international society are waged precisely between a State, or a group of States, and a terrorist organization.

vii.    A compelling proof that non-States are nowadays engaged in full scale war, often with a State or with a group of States, are the War Crimes Tribunals in The Hague: special tribunals have been set up precisely to convict soldiers  fighting  for a State or  for a non-

WRITTEN PROFFER OF EXPERT OPINION OF ASIC LAW OF WAR EXPERT DR. INGRID DETTER DE FRANKOPAN

16294657.1   11775-83955

Freeman Mathis
& Gary, LLP
Attorneys at Law

State body for war crimes if their acts violate the Law of War. The United Nations has established special international criminal tribunals to prosecute those responsible for atrocities during times of war and genocide. These may be members of State armed forces or of freedom fighters, members of liberation movements, members of groups who wish to establish their own State, or secede from another State, insurgents, rebels or terrorists.

viii.   There is thus now an International Criminal Court for war crimes in former Yugoslavia (ICTY), a Special Court for Sierra Leone, a Special Tribunal for Cambodia, an International Tribunal for Rwanda, and even a general International Criminal Court. All these Tribunals have the competence to try individuals and members of forces of States and members of non-State armies for violations of the Law of War. In the case law of these Tribunals there is ample evidence that non-State armies can be belligerents and take part in full-scale wars.

ix.   It is also abundantly clear in practice that war may be waged with a non-State, even with a terrorist organization. That non-State entity may also make a declaration of war, even if there is no such obligation on States anymore.

x.   Furthermore, States are restrained from waging war by the rules of the United Nations unless they act in clear self-defense. But a terrorist organization is

16294657.1  11775-83955

Freeman Mathis & Gary, LLP
Attorneys at Law

already a law breaker, so they are not held back by the UN Charter prohibition to wage war.

xi. Thus, it was actually the terrorists who declared war on the "West." Even before 9/11, in 1996, Osama bin Laden "declared war" on the United States, by issuing a formal declaration that was reiterated in a 1998 statement ordering all Muslims to pursue the indiscriminate killing of American civilians and military personnel. Please see Footnotes 47 and 48 to Dr. de Frankopan's Expert Report.

xii. The terrorist organization Al-Qaeda sought to claim that this action was in response to the fact that the United States, and others, had declared war "on Allah" and on the Muslims. Please see Footnote 49 to Dr. de Frankopan's Expert Report.

xiii. In fact, the vast majority of contemporary wars have, on one side, a non-State.

xiv. Therefore, regardless of how anyone seeks to classify Hamas, the hostilities between Hamas and Israel in July-August 2014 did constitute a war.

dd. The fact that Hamas is listed as a terrorist organization does not disqualify this organization to take part in a war.

i. The fact that an entity is a "terrorist organization" does not necessarily mean that all its acts are "terrorist acts." A terrorist organization can also engage in a war and in war-like hostilities.

ii. It is absurd to claim that, by 2014, terrorists cannot wage war. Today, ISIS in Syria is certainly listed by

Freeman Mathis
& Gary, LLP
Attorneys at Law

-20-

most countries as a "terrorist organization." Who denies today that ISIS is involved in a "war" in Syria? Similarly, even if Hamas is listed as a "terrorist organization" by the US State Department, this does not preclude such an organization from taking part in a war.

iii.   Some of the activities of Hamas may be limited to occasional or sporadic acts of terrorism. But if Hamas engages in prolonged and intense hostilities, this will certainly amount to a "war" in the accepted sense of the word. It is imperative to use the term "war" in a sense in which a normal person understands this concept: when rockets are launched by Hamas, Israel responds with their air strikes and a ground invasion, and there are hostilities causing more than 2000 deaths within 50 days, that is, to the average bystander and to experts in the field on such matters, a war.

3. **Statements Relied Upon:**

1. None.

4. **Documents Relied Upon:**

a. See Exhibit A for a complete list of documents relied upon by Dr. de Frankopan, which are also set forth in the de Frankopan Report.

B.   **Opinion and Citation to Expert Witness Disclosure:** The summer 2014 conflict between Israel and Palestine constituted war-like activities and involved the use of weapons of war as those terms are commonly used and as the terms are understood within her area of expertise and study. [ASIC Expert Witness Disclosure, p. 4; ASIC Rebuttal Expert

Freeman Mathis & Gary, LLP
Attorneys at Law

Witness Disclosure, p. 4]. As part of this opinion, Dr. de Frankopan will testify that, based on the duration and intensity of the fighting, the number of casualties, and other specifics of the conflict, the conflict was a war-like; that, regardless of the designation of the participants, the 2014 conflict constituted a war-like action and involved weapons of war; and that the fact that the United States has designated Hamas as a terrorist organization does not alter the fact that the 2014 conflict constituted war-like actions and used weapons of war. [ASIC Expert Witness Disclosure, p. 4; ASIC Rebuttal Expert Witness Disclosure, pp. 4-5].

1.  **Relevance of Opinion:** Dr. de Frankopan's opinion regarding the validity of the application of the war exclusions, as noted above, supports the reasonableness of the basis for the claim's denial and directly rebuts the opinions of Mr. Ross, Dr. Koh, and Mr. Levitt

2.  **Bases for Opinion:** Dr. de Frankopan's opinion is based on her background as a barrister at law in England and Wales and as a professor of international law. For over thirty years, Dr. de Frankopan has specialized in the law of war and armed conflict and related fields. Her comprehensive work *The Law of War* is now in its third edition. She has also published substantial articles on topics relating to armed conflict and 14 other books on various central topics of international law, including matters concerning sovereignty, independence and statehood, and intervention. Dr. de Frankopan's qualifications and experience are further detailed on pages 1 and 2 of her Expert Report.

    a.  Please refer to the bases for opinion A, noted in section A(2)(a-dd).

    b.  If a situation cannot be qualified as "war," it may be classified as "war-like" activities, for which the threshold is

16294657.1  11775-83955

Freeman Mathis
& Gary, LLP
Attorneys at Law

1    lower.

2    c.    If the exchange of hostilities during the 50 Day armed

3          conflict did not involve a war, it at the very least involved

4          war-like action, weaponry of war, war-like methods and

5          resulted in considerable casualties.

6    d.    By any standards, should it be disputed that this was

7          a "war," there is no question that it certainly involved "war-

8          like" hostilities by two military forces, bearing in mind the

9          type of heavy weapons used as well as rockets, anti-aircraft

10         guns, grenades, and mines. The use of this weaponry

11         certainly constituted the use of weapons of war.

12   3. **Statements Relied Upon:**

13   a.    None.

14   4. **Documents Relied Upon:**

15   a.    See Exhibit A for a complete list of documents relied

16         upon by Dr de Frankopan, which are also set forth in

17         the de Frankopan Report.

18   **Dr. de Frankopan's curriculum vitae is submitted with this proffer as Exhibit**

19   **"B."**

20   **Dr. de Frankopan's Expert Report is submitted with this proffer as Exhibit**

21   **"C."**

22   **Dr. de Frankopan's Amended Exhibit No. 2 is submitted with this proffer as**

23   **Exhibit "D."**

24   **ASIC's Expert Witness Disclosure is submitted with this proffer as Exhibit "E."**

25   **ASIC's Rebuttal Expert Witness Disclosure is submitted with this proffer as**

26   **Exhibit "F."**

27   **Copies of non-electronic documents are being obtained.**

28   ///

Freeman Mathis
& Gary, LLP
Attorneys at Law

WRITTEN PROFFER OF EXPERT OPINION OF ASIC LAW OF WAR EXPERT DR. INGRID DETTER DE FRANKOPAN

16294657.1   11775-83955

1

DATED:  January 23, 2020          By:  /s/ Christopher W. Martin

2

3

MARC J. SHRAKE
FREEMAN MATHIS & GARY, LLP

4

-and-

5

CHRISTOPHER W. MARTIN *(Pro Hac Vice)*
MELINDA R. BURKE *(Pro Hac Vice)*

6

WILLIAM E. McMICHAEL *(Pro Hac Vice)*
MARTIN, DISIERE, JEFFERSON

7

& WISDOM LLP

8

Attorneys for Defendant ATLANTIC
SPECIALTY INSURANCE COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Freeman Mathis
& Gary, LLP
Attorneys at Law

WRITTEN PROFFER OF EXPERT OPINION OF ASIC LAW OF WAR EXPERT DR. INGRID DETTER DE FRANKOPAN

16294657.1   11775-83955