# EXHIBIT E



THE OHIO STATE UNIVERSITY

MORITZ COLLEGE OF LAW

Michael E. Moritz College of Law

Drinko Hall
55 West 12th Avenue
Columbus, OH 43210-1391

614-292-2631 Phone
614-292-2035 Fax

moritzlaw.osu.edu

April 14, 2017

Michael Keeley, Esq.
Strasburger & Price, LLP
901 Main Street, Suite 6000
Dallas TX 75202

I am John Quigley. I wrote a report dated March 17, 2017, in *Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*, Case No. 2:16-cv-04435-PA-MRW. I have subsequently been provided with three other reports written for this case by individuals identified as experts on behalf of Universal Cable Production LLS and Northern Entertainment Productions LLC. I fully incorporate my original report in its entirety as rebuttal to the reports of these individuals, Timothy Levitt, Harold Koh and Dennis Ross. Additionally, in my opinion, certain of these reports raise issues and draw inaccurate conclusions regarding those issues. Accordingly, the rebuttal herein is to four points made in these reports. By submitting this rebuttal to these specific issues, it should not be construed that I am agreeing to accept the remainder of the opinions set forth by Levitt, Koh and Ross. I, in fact, do not, and my original report should be construed as a rebuttal to their reports. However, it is my opinion that the issues addressed herein required separate treatment.

The materials that I have considered for this rebuttal are referenced in the text of this document.

*Professor Koh: targeting of civilians*

Professor Koh argues that the 2014 Gaza-Israel hostilities did not constitute a war because the targeting by Hamas was directed at civilian, rather than military, objectives. This argument is faulty on two grounds. First, Hamas did target the Israel Defense Force. Professor Koh refers to mortar and rocket firings by Hamas. He does not distinguish between the two. While rockets cannot be targeted with precision, mortars can. Hamas fired mortars at IDF positions. The UN Commission of Inquiry made this factual finding in its 2015 report, at paragraph 91. The inquiry team wrote:

91.    Mortar fire by the Palestinian armed groups appears to have often been aimed at specific targets and is more precise than the rockets in the armed groups' arsenal. In numerous cases mortars fired by Palestinian armed groups targeted IDF forces. While some of these attacks were directed at IDF troops inside Gaza, a number of mortar attacks were directed at IDF positions and troop concentrations inside Israel in the vicinity of the Gaza Strip. For instance, on 16 July 2014 IDF assembly zones close to the Erez crossing were targeted, resulting in the

Quigley Rebuttal
Page **2** of 4

death of a civilian who was distributing food to soldiers. The IDF acknowledges that approximately 10 IDF soldiers were killed along the Green Line seemingly in Israel, in the course of a number of attacks during which mortars appear to have been fired at IDF forces.

Second, if one side in a war targets civilians, that fact does not negate the character of the conflict as a war. The United Nations Security Council has characterized military situations as involving war and as implicating the law of war when the targets have been civilian. Thus, in its Resolution 445 of March 8, 1979, the Security Council condemned Southern Rhodesia for "armed invasion" and "aggression" against Angola, Mozambique, and Zambia, while reciting that the targets were "refugees and civilian populations" [Resolution 445]. The information that formed the factual premise for this resolution was that Southern Rhodesia was attacking camps housing refugees from Southern Rhodesia [UN Security Council meeting 2119, March 2, 1979].

Later the same year, the Security Council condemned Southern Rhodesia for "acts of aggression" against Zambia, after reciting that the purpose of the military action was to destroy the "economic infrastructure" of Zambia [Resolution 455, November 23, 1979].

The fact that an army targets predominantly civilians, or even entirely civilians, does not mean that it is not engaging in war.

*Professor Koh: character of warring party*

Professor Koh argues that a conflict qualifies as a war only if one has a state on each side. He says that "Hamas is not recognized under international law as the legitimate government of a recognized nation-State" [Koh: paragraph 14] Professor Koh's position is faulty on both factual and legal grounds. First, Hamas is an element of the government of Palestine, which is accepted as a state by the international community. Second, status as the government of a state is not a required element before a conflict constitutes a war.

Professor Koh argues [paragraph 8] that an act qualifies as an act of war only if
(a) the act has been committed by an agent of a *recognized foreign state*;
(b) that has been recognized as a *legitimate foreign government* by the community of nations (including the United States of America); and,
(c) as part of an established *governmental chain of command* originating in a recognized foreign leader.

This argument is refuted by Professor Koh himself. Professor Koh recently wrote an article titled *The Emerging Law of 21ˢᵗ Century War* [66 Emory Law Journal 487 (2017)]. In this article, albeit bearing "war" in the title, Professor Koh uses the term now commonly used in international instruments, namely, "armed conflict" to describe the situations that fall under the term "war" as he uses it in his title. In this article, Professor Koh says that one can have an "armed conflict between a nation-state and a transnational terrorist network like Al Qaeda" [66 Emory Law Journal at 493]. There Professor Koh cites the US Supreme Court, in support of his characterization: "In *Hamdan v. Rumsfeld*, the Justices of the Supreme Court in 2006 apparently concluded that we [the United States] have engaged in just this kind of non-international armed conflict since 9/11." Here Professor Koh acknowledges both that one can have an armed conflict, i.e., a war, with a non-state actor (Al Qaeda), and that the fact that the non-state actor is deemed to be terrorist does not negate the characterization of "armed conflict."

In a 2014 article, Professor Koh explicitly used the term "war" to refer to the conflict with Al Qaeda in Afghanistan. He said, "The President [Obama] cogently summarized why we should

Quigley Rebuttal
Page 3 of 4

reject indefinite war in favor of an 'exit strategy' to bring this protracted conflict with Al Qaeda, like all wars, to an end.  Last October, I argued that despite public skepticism, without fanfare, President Obama has made slow but steady progress toward achieving three key elements of his effort to end the Forever War: (1) disengaging from Afghanistan; . . ." [Harold Koh, Ending the Forever War: One Year After President Obama's NDU Speech, *Just Security*, May 23, 2014]

The Professor Koh who wrote the 2014 *Just Security* article and the 2017 *Emory Law Journal* article was correct. The Professor Koh who wrote the opposite in his Report was not.

Numerous wars have been waged against an opponent that was not "recognized." Professor Koh makes the suggestion that one has a "war" only if the actor has been recognized by the "community of nations" that that this must include the United States of America. Such an absurd suggestion would mean that a government is not legitimate if recognized by every state in the world except the United States. But that absurdity aside, Professor Koh's statement that an act of war can be committed only by recognized government is incorrect. The Security Council resolutions cited above condemning Southern Rhodesia were aimed at an entity that governed Southern Rhodesia, having declared itself independent of Great Britain, but that had not achieved international recognition. The resolutions in fact called the perpetrator an "illegal regime" [Resolution 445, preamble paragraph 5] and an "illegal minority regime" [Resolution 455, preamble paragraph 3]. The fact that Southern Rhodesia was unrecognized did not prevent the Security Council for condemning it for "acts of aggression" and "armed invasion."

When war broke out in Korea in 1950, the Security Council adopted resolutions in which it recited that the government in the south of Korea was the only legitimate government in that country, yet said that a "breach of the peace" had occurred, precipitated by "forces from North Korea." [Resolution 82, June 25, 1950; Resolution 84; July 7, 1950] Here the initiation of war was attributed to a non-recognized entity.

The war in Vietnam was not the subject of Security Council resolutions, but the United States considered that that war was initiated by the entity that controlled the northern part of Vietnam. [US Department of State, Aggression from the North–The Record of North Vietnam's Campaign to Conquer South Vietnam (1965)] This was an entity the United States did not recognize. [US Department of State, Office of the Historian, A Guide to the United States' History of Recognition, Diplomatic, and Consular Relations, by Country, since 1776: Vietnam, accessible on Department of State website]

It is clear from international practice, as accepted by Professor Koh in his writings, that one can have a "war" despite the fact that one party is not recognized, and even if that party qualifies as "terrorist."

*Professor Koh: terrorism or war*

Professor Koh argues [paragraph 10] that a state may respond by military means to a terrorist act and that the 2014 Gaza-Israel conflict was of this type rather than a war [paragraph 14].He brings into his analysis the kidnapping by Hamas of three Israelis in the days preceding the onset of hostilities as an indication of the terrorist character of Hamas' activities. Whatever occurred in regard to this kidnapping is of no relevance to a characterization of the hostilities that ensued. If that kidnapping in some fashion was a precipitating event, the fact that it can be characterized as terrorism sheds no light on the character of the 2014 hostilities as a whole.

Quigley Rebuttal
Page 4 of 4

Moreover, as indicated above. Professor Koh acknowledged in his 2017 article that one can have an "armed conflict between a nation-state and a transnational terrorist network like Al Qaeda" [Harold Koh, *The Emerging Law of 21ˢᵗ Century War*, 66 Emory Law Journal at 493]. He attempts to distinguish the 2014 Gaza-Israel conflict by saying that "the nature of Hamas' acts were terrorist acts that fell outside the scope of the norms of warfare" [paragraph 14]. By so saying, Professor Koh is apparently suggesting that the actions of Hamas were not governed by the laws of war. In fact, however, the UN Commission of Inquiry concluded that Hamas' actions were governed by the law of war. Hamas' actions may have violated the norms of warfare, but it is that body of law that they violated.

*Dennis Ross: ceasefire as an indication of war*

In his paragraph 21, Dennis Ross relates that the United States endeavored through intermediaries to broker a "ceasefire" while the hostilities were in progress. Mr. Ross here unwittingly acknowledged that the hostilities constituted a war. Merriam-Webster defines "ceasefire" as "an agreement to stop fighting a war." One does not have a "ceasefire" in the context of a terrorist attack. When the attacks of September 11, 2001 in the United States finished, no one spoke of a "ceasefire" with the perpetrators. A ceasefire is an action that stops, whether temporarily or permanently, a war.

In the same paragraph, Mr. Ross refers to the fact that Israel offered terms for a "cessation of hostilities." That term is similar to "ceasefire." The Encyclopedia Britannica describes the term "cessation of hostilities" as one that applies "in law of war."

John Quigley