MARC J. SHRAKE (SBN 219331)
mshrake@fmglaw.com
WAYNE H. HAMMACK (SBN 202709)
whammack@fmglaw.com
FREEMAN MATHIS & GARY, LLP
550 South Hope Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 615-7019
Facsimile: (213) 615-7000

CHRISTOPHER W. MARTIN *(Pro Hac Vice)*
martin@mdjwlaw.com
MELINDA R. BURKE *(Pro Hac Vice)*
burke@mdjwlaw.com
MARTIN, DISIERE, JEFFERSON
& WISDOM LLP
9111 Cypress Waters Blvd., Suite 250
Dallas, Texas 75019
Telephone: (214) 420-5500
Facsimile: (214) 420-5501

Attorneys for Defendant
Atlantic Specialty Insurance Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,<br><br>Defendant. | CASE NO. 2:16-cv-04435-PA-MRW<br>[*Hon. Percy Anderson; Ctrm. 9A*]<br><br>**DECLARATION OF MARC J. SHRAKE IN SUPPORT OF ATLANTIC SPECIALTY'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 2**<br><br>Hearing Date:  February 10, 2020<br>Time:  1:30 PM<br>Pretrial Conference:  January 17, 2020<br>Time:  1:30 PM<br>Place:  Courtroom 9A<br>Judge:  Honorable Percy Anderson<br>Trial Date:  February 18, 2020 |

I, Marc J. Shrake, declare as follows:

1. I am an attorney authorized to practice before all California courts and before this Court and am a partner with the law firm of Freeman Mathis & Gary, LLP, attorneys for Defendant Atlantic Specialty Insurance Company.

2. I have personal knowledge of the matters set forth in this Declaration, and if called upon to testify to them, could and would do so.

3. I make this Declaration in conjunction with, and in support of, Atlantic Specialty's Opposition to Motion in Limine No. 2.

4. Attached to this Declaration as Exhibit 1 are true and correct copies of excerpts of the deposition of Andrea Garber, given on April 14, 2017, in the captioned case.

5. Attached to this Declaration as Exhibit 2 are true and correct copies of excerpts of the deposition of Pamela Johnson, given on May 8, 2017, in the captioned case.

6. Attached to this Declaration as Exhibit 3 are true and correct copies of excerpts of the deposition of Susan Weiss, given on April 18, 2017, in the captioned case.

I declare under penalty of perjury of the laws of the United States of America and the laws of the State of California that the foregoing is true and correct and that this declaration is executed this 13th day of January 2020 at Los Angeles, California.

DATED: January 13, 2019

MARC J. SHRAKE

By: */s/ Marc J. Shrake*
    Marc J. Shrake

**EXHIBIT 1**

1    OneBeacon's coverage determination; is that correct?
2        A    Yes.
3        Q    And this was directed to you, right?
4        A    To me and to Susan.
5        Q    The letter is directed to you, though?
6        A    Yes, it is.
7        Q    And I take it you read it at the time you
8    received it.
9        A    Yes.
10       Q    And if you will turn to page 3 of the
11   letter for me.
12            MS. COYOCA:  Any page 3.
13            MR. KEELEY:  Page 3 of the actual letter,
14   Bates label number 378 at the bottom right-hand
15   corner.
16            THE WITNESS:  Okay.
17   BY MR. KEELEY:
18       Q    And that section of the letter sets forth
19   various of the war exclusions.
20            Do you see that?
21       A    I do.
22       Q    Do you recognize that from the policy?
23       A    Yes.
24       Q    So did you understand that Ms. Johnson was
25   explaining to you that these exclusions were a basis

Page 337

1  for Atlantic to deny coverage for NBC's claim?
2           MS. COYOCA:  Objection; calls for
3  speculation.
4           THE WITNESS:  It was my understanding that
5  this was the reason she was denying the claim, yes.
6  BY MR. KEELEY:
7      Q    The exclusions that are set forth there on
8  page 3 of the letter.
9      A    Yes.
10     Q    Now, what did you do after you received
11 that letter?
12     A    I don't recall what I did immediately
13 after receiving this letter.
14     Q    What is the first thing you can recall
15 happening in connection with the claim after
16 receiving that letter?
17          MS. COYOCA:  Before you respond, to the
18 extent that your response deals with any
19 communications where any lawyers were present, then
20 I urge you to not reveal any attorney-client
21 privileged communications or tell me if there were
22 lawyers involved so we can assert the privilege.
23          THE WITNESS:  My recollection is that I
24 would have forwarded this to Tania.
25

# EXHIBIT 2

Page 222

1  previously was marked as Exhibit 12 during a    15:13:23
2  prior deposition. For the record, this is an    15:13:27
3  e-mail chain that is -- bears Bates labels      15:13:39
4  ATL 11001 through 1105.                         15:13:43
5       Ms. Johnson, I just want to ask you        15:13:50
6  a question about the top e-mail. Do you         15:13:52
7  recognize this e-mail?                          15:13:58
8  A. I do.                                        15:13:59
9  Q. What is it?                                  15:14:00
10 A. It's an e-mail to Peter Williams and         15:14:01
11 Danny Gutterman.                                15:14:04
12 Q. Did you send it?                             15:14:05
13 A. It appears I did.                            15:14:07
14 Q. And what is the content of the e-mail?       15:14:08
15 A. It says, "Here is an exclusion listed under  15:14:12
16 the general conditions of the policy.           15:14:15
17 Exclusions applicable to all sections of this   15:14:17
18 policy. This policy does not insure against     15:14:20
19 loss or damage caused directly or indirectly    15:14:24
20 by war, including undeclared or civil war or    15:14:27
21 warlike action by a military force, including   15:14:31
22 action in hindering or defending against an     15:14:35
23 actual or expected attack by any government,    15:14:38
24 sovereign or any other authority using          15:14:43
25 military personnel or other agents, or          15:14:43

Page 223

1  insurrection, rebellion, revolution, usurped    15:14:47
2  power or action taken by a governmental         15:14:47
3  authority in hindering or defending against     15:14:50
4  any of these. Such loss or damage is            15:14:54
5  excluded regardless of any other cause or       15:14:56
6  event that contributes concurrently or in any   15:14:59
7  sequence to the loss, any weapon of war         15:15:02
8  including atomic fission or radioactive         15:15:05
9  force, whether in a time of peace or war."      15:15:08
10 Q. And I believe you inserted an extra word in  15:15:11
11 number 2 in the record, but I will just ask     15:15:15
12 you this: Is this what you understand the       15:15:22
13 war exclusion to be that are contained in the   15:15:23
14 NBCUniversal policy?                            15:15:28
15 A. There's more that comes after number 4. I    15:15:29
16 think it's 4 through 8. These are the           15:15:31
17 particular ones I was looking at at that        15:15:33
18 time.                                           15:15:35
19 Q. Okay. And do you recall what the fifth       15:15:35
20 exclusion is?                                   15:15:37
21 A. I don't.                                     15:15:37
22 Q. Do you have any recollection that it relates 15:15:38
23 to loss that may be suffered as a result of     15:15:40
24 radioactive or atomic fission from any other    15:15:43
25 cause?                                          15:15:49

Page 224

1  A. As I said, I don't recall.                   15:15:49
2  Q. You sent this e-mail at what appears to be   15:15:52
3  12:51 GMT; is that correct?                     15:15:56
4  A. I have no idea when I sent it.               15:16:01
5  Q. Okay. Did you send the e-mail before the     15:16:03
6  conference call that took place that            15:16:07
7  afternoon with Mr. Williams and                 15:16:09
8  Mr. Gutterman?                                  15:16:10
9  A. I think I probably did, yes.                 15:16:12
10 Q. Does that refresh your recollection that you 15:16:13
11 believe that -- that you believe that you had   15:16:15
12 identified the war exclusion to Mr. Gutterman   15:16:26
13 prior to the conference call taking place?      15:16:29
14 A. Well, I certainly had talked to him about the 15:16:36
15 general conditions of the policy, so my guess  15:16:39
16 is that, yes, I talked to him about the war     15:16:42
17 exclusion.                                      15:16:44
18 Q. Did you consider the potential applicability 15:17:03
19 of Exclusion 5 at any point while you were     15:17:06
20 analyzing the Dig claim?                        15:17:11
21 A. I don't know what Exclusion 5 says. If you'd 15:17:13
22 like to give me the policy so that I can        15:17:16
23 refresh my recollection, I should be able to    15:17:19
24 give you a better answer then.                  15:17:21
25 Q. You indicated that there are eight parts to  15:17:22

Page 225

1  the exclusion; is that correct?                 15:17:25
2  A. To the best of my recollection, yes.         15:17:26
3  Q. Did you look at or review or assess the      15:17:27
4  potential applicability of the other four       15:17:30
5  conclusions separate and apart from the ones    15:17:32
6  that are listed in Exhibit 12?                  15:17:34
7  A. I'm sure I looked at the entire exclusion.   15:17:36
8  Q. Did you consider the potential applicability 15:17:39
9  of them?                                        15:17:42
10 A. I -- if you want to show me what they say, I 15:17:43
11 can tell you whether or not I looked at them.   15:17:45
12 I would assume that, yes, I tried to            15:17:48
13 determine whether or not any of them applied,   15:17:49
14 so it's possible that I -- that I made a        15:17:54
15 determination that they did or did not apply.   15:17:57
16 The fact that I've only listed these four       15:18:00
17 here does not mean that I hadn't made any       15:18:03
18 kind of other analysis.                         15:18:06
19 Q. Ultimately, when the claim was denied, did   15:18:06
20 you identify all four of these exclusions as    15:18:09
21 being directly applicable to the claim?         15:18:12
22 A. I did, and I think I also identified         15:18:14
23 Number 8.                                       15:18:16
24      THE VIDEOGRAPHER: We have about            15:18:19
25 ten minutes left on the tape.                   15:18:20

Page 294

```
 1       within the first two, I didn't feel the need      17:16:21
 2       to explain every single one of them.              17:16:23
 3   Q.  Was Atlantic denying the claim on the basis       17:16:27
 4       of any exclusions other than war or warlike       17:16:31
 5       action?                                           17:16:36
 6   A.  Well, I refer to four different -- five           17:16:36
 7       different aspects of the war exclusion, "War,     17:16:39
 8       including undeclared war or civil war or          17:16:50
 9       warlike action by a military force including      17:16:53
10       action in hindering or defending against an       17:16:53
11       actual or unexpected attack by any                17:16:56
12       government, sovereign or other authority          17:16:59
13       using military personnel or other agents or       17:17:01
14       insurrection, rebellion, revolution, usurped      17:17:05
15       power or action taken by the governmental         17:17:09
16       authority in hindering or defending against       17:17:12
17       any of these.  Such loss or damage is             17:17:15
18       excluded regardless of any other cause or         17:17:16
19       event that contributes concurrently in any        17:17:18
20       sequence to the loss."                            17:17:20
21            Number 4, "Any weapon of war                 17:17:22
22       including atomic fission or radioactive           17:17:24
23       force, whether in time or peace of war."  And     17:17:28
24       then there's an ellipses and you drop down to     17:17:32
25       8, "Any uninsured event occurring before          17:17:35
```

Page 295

```
 1       concurrently or with or happening after -- or     17:17:37
 2       after the happening of an insured event which     17:17:42
 3       directly or indirectly causes or in any way       17:17:44
 4       contributes to the cause or increase of loss      17:17:48
 5       under this policy but only with respect to        17:17:51
 6       that portion of any such loss caused by or        17:17:52
 7       contributed to by the uninsured event unless      17:17:56
 8       the uninsured event would not have been a         17:18:00
 9       factor had the insured event never occurred.      17:18:03
10   Q.  Does it say had such insured event ever           17:18:06
11       occurred?                                         17:18:10
12   A.  Yes, sorry.                                       17:18:10
13   Q.  Okay.  Can you please point to me where in        17:18:11
14       the letter the discussion of application of       17:18:15
15       subpart 3 for insurrection rebellion              17:18:20
16       revolution usurp power et cetera where that       17:18:24
17       is specifically discussed?                        17:18:28
18   A.  I didn't discuss it specifically.                 17:18:29
19   Q.  Can you please point to me where in the           17:18:31
20       letter the subpart 4 any weapon of war            17:18:33
21       including atomic fission or radio active          17:18:36
22       force where that is discussed?                    17:18:39
23   A.  I did not discuss it.                             17:18:41
24   Q.  Is it your position that notwithstanding the      17:18:42
25       fact that there is no discussion of those sub     17:18:47
```

Page 296

```
 1       parts that you were in fact intending to          17:18:49
 2       convey that the coverage was being denied on      17:18:51
 3       the basis of application of subparts 3 and 4?     17:18:54
 4   A.  That it could be.                                 17:18:59
 5   Q.  Okay.  I'm not asking if it could be I'm          17:19:00
 6       asking were you?                                  17:19:03
 7   A.  Well, so when you look at -- at the war           17:19:03
 8       exclusion so it could be war or in the            17:19:10
 9       alternative if it's not war are if it's a war     17:19:13
10       like action it's covered or in the                17:19:17
11       alternative if you don't think it's a war         17:19:19
12       like action it could still be an insurrection     17:19:21
13       which is when one -- one -- part of the           17:19:24
14       population rises up against the country, so       17:19:27
15       in fact if you are saying Gaza is actually        17:19:31
16       part of Israel and is not separate and apart      17:19:34
17       as part of -- part of Palestine, then that        17:19:36
18       could be an insurrection and certainly that       17:19:42
19       there are weapons of war that what was used       17:19:44
20       were weapons of war.                              17:19:47
21   Q.  Ms. Johnson my question to you is were you,      17:19:49
22       on behalf of Atlantic, denying the claim on       17:19:54
23       the basis of inter alia subpart 3?                17:19:58
24   A.  I was putting them on notice that any one of      17:20:04
25       those exclusions could apply to the               17:20:07
```

Page 297

```
 1       situation.                                        17:20:09
 2   Q.  Did you feel in writing this coverage             17:20:09
 3       determination letter that if you felt that        17:20:11
 4       subpart 3 applied as to insurrection              17:20:13
 5       rebellion that you needed to discuss it in        17:20:16
 6       the letter itself?                                17:20:20
 7   A.  Not necessarily.                                  17:20:21
 8   Q.  Were you on behalf of Atlantic denying the        17:20:22
 9       claim on the basis of subpart 4 any weapon of     17:20:28
10       war including atomic fission or radio active     17:20:33
11       force?                                            17:20:36
12   A.  Well it's an exclusion -- portion of the          17:20:36
13       exclusion that could apply because there were     17:20:39
14       weapons of war that were used.                    17:20:42
15   Q.  Were you on behalf of Atlantic denying the        17:20:44
16       claim on the basis of inter alia subpart 4?       17:20:46
17   A.  That was one of the basis we looked at yes.       17:20:52
18   Q.  Were you actually denying the claim separate      17:20:54
19       and apart from whether you looked at it were      17:20:57
20       you conveying a digs had been made to deny        17:21:00
21       the claim on the basis of subpart 4?              17:21:03
22   A.  That's why it's included in the policy            17:21:06
23       language.                                         17:21:08
24   Q.  Did you feel you had any obligation to convey     17:21:08
25       some discussion of an analysis of the             17:21:11
```

# EXHIBIT 3

Page 199

1  discussed during that call?
2     A   No.
3     Q   Did they give you any time frame for when
4  they would get you a written coverage letter?
5     A   I believe they did, but I couldn't say for
6  sure.
7     Q   In your view, was it important that that
8  coverage letter be received as soon as possible?
9     A   Yes.
10    Q   Why?
11    A   Because the client needs to know where the
12  carrier stands with this claim.
13    Q   Do you -- in your view, did Atlantic reach
14  its coverage decision within a reasonable period of
15  time?
16        MS. COYOCA:  Objection.  Calls for a legal
17  conclusion, improper opinion testimony, speculation,
18  vague and ambiguous.
19        MR. LANDIS:  I join.
20        THE WITNESS:  I would need to have -- I
21  would need to have my memory refreshed as to exactly
22  when the claim was submitted and when they gave
23  their formal reply.
24  BY MR. KEELEY:
25    Q   So you submitted the claim in writing on

Page 201

1 the war exclusion might apply, but you acknowledged
2 that she did not tell you for certain that they were
3 denying the claim on the basis of the war exclusion.
4 　　　　So are you changing your testimony?
5 　　A　No.
6 　　Q　Okay. So she did not inform you that
7 Atlantic was denying the claim on Thursday,
8 July 17th, correct?
9 　　　　MS. COYOCA: Objection. Misstates the
10 witness's testimony, argumentative.
11 　　　　MR. LANDIS: I join in that.
12 　　　　THE WITNESS: It was implied that they
13 were.
14 BY MR. KEELEY:
15 　　Q　It was implied because she told you that
16 they might apply the war exclusion.
17 　　　　So, from that, you concluded that they
18 would apply the war exclusion?
19 　　A　Yes.
20 　　Q　Okay.
21 　　　　So you felt -- so my -- my question,
22 though, is not the time period in which they got you
23 the letter.
24 　　　　But my question is: Do you think they took
25 too long from the time you submitted the claim in

Page 202

1  writing on Tuesday the 15th to the time they advised
2  you orally in that telephone conversation on the
3  22nd that they were denying the claim?
4          MS. COYOCA: Objection. Calls for a legal
5  conclusion, opinion testimony from a lay witness,
6  vague and ambiguous, speculation, relevance.
7          MR. LANDIS: I join.
8          THE WITNESS: I think a claim such as this
9  requires immediate notification. And I -- if they
10 already knew they were going down that path of
11 declining the claim due to the war exclusion, I
12 would have thought it might have come sooner.
13 BY MR. KEELEY:
14    Q   Did you express to them in the beginning
15 that there was some urgency in getting a coverage
16 decision?
17    A   Yes.
18    Q   When did you express that? Was that on the
19 original call?
20    A   That was probably expressed to them on
21 numerous occasions.
22    Q   Did you express that to Peter Williams on
23 Friday the 11th?
24    A   No.
25    Q   Did you express it to Danny Gutterman and

Page 203

1  Pamela Johnson on Tuesday, July 15th, when you first
2  spoke with them?
3         MS. COYOCA: Objection. Assumes facts not
4  in evidence.
5         THE WITNESS: I don't recall.
6  BY MR. KEELEY:
7     Q   So you may not have told them there was
8  urgency from the beginning?
9     A   Yes, I would have.
10    Q   So your best recollection today is from the
11 beginning, you informed Ms. Johnson and
12 Mr. Gutterman that there was some urgency in
13 reaching a claims decision?
14    A   Yes.
15    Q   And you made it clear to them that you
16 needed Atlantic to make a decision as soon as
17 possible so that NBC would know their view on
18 coverage?
19    A   Yes.
20         (Exhibit 65 was marked for
21         identification by the court reporter
22         and is attached hereto.)
23         MR. LANDIS: Mike, can we take a break?
24         MR. KEELEY: Yes.
25         THE VIDEOGRAPHER: We are off the record at