KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
CHELSEA V. SAMUELS (315257)
csamuels@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,<br><br>Plaintiffs,<br>v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | Case No.: 2:16-cv-4435-PA-MRW<br><br>The Honorable Percy Anderson<br>Dept. 9A<br><br>**DECLARATION OF BARBARA-ANN ("BJ") MARKUS-CAFFREY IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE OR EXCLUDE PORTIONS OF MS. RUSNAK'S DAMAGES OPINIONS**<br><br>Current Hr'g Date: Monday, Feb. 24, 2020<br>Requested Date: Monday, Feb. 10, 2020<br>Time: 1:30 p.m.<br>Place: Courtroom 9A<br>Trial Date: February 18, 2020 |

I, Barbara-Ann ("BJ") Markus-Caffrey, do hereby declare and state as follows:

1. During the time periods relevant to this case, I have been the Vice President of Production and Finance at NBCUniversal Media LLC ("NBCUniversal), where I have been employed for over fifteen years. Plaintiffs Universal Cable Productions LLC and Northern Entertainment Productions LLC ("Plaintiffs") are indirect subsidiaries of NBCUniversal.

2. I submit this declaration in support of Plaintiffs' Motion to Strike or Exclude Portions of Ms. Rusnak's Damages Opinions. I have reviewed the portions of the Expert Report of Defendant's damages expert Shannon Taylor Rusnak, dated January 17, 2020, that are relevant to the discussion below. I have personal knowledge of the matters set forth in this declaration, and if called upon as a witness I could and would testify competently to them.

3. During my entire career at NBCUniversal, I have worked in the area of television finance. I was first hired as a Production Controller and worked my way up before being promoted to Vice President of Production Finance approximately eight years ago. My job duties entail overseeing the financial aspects of television production.

4. I was the production finance executive assigned to the *Dig* project. That means I was responsible for overseeing every aspect of the finances on *Dig*. All of the core financial documentation related to the *Dig* production—including locked budgets, cost reports, and similar documentation—would have been presented to me for my review, analysis, and approval.

5. Ms. Rusnak calculates Plaintiffs' "Potential extra expenses" on episodes 2-6 "based upon a comparison" of (1) "actual expenditures for the episodes in question for locations in Israel, Croatia and New Mexico" to (2) the budgeted expenditures for the same episodes in Israel." Rusnak Report at 4.

6. For purposes of this declaration, I will refer to Part 1 of Ms. Rusnak's comparison—the "actual expenditures for the episodes in question for locations in

Israel, Croatia and New Mexico"—as the "As Is" world. (Ms. Rusnak refers to this in parts of her report as the "actual scenario"). I will refer to Part 2 of Ms. Rusnak's "comparison"—the "budgeted expenditures for the same episodes in Israel"—as the "But For" world. Ms. Rusnak herself refers to this part of her comparison as the "'but for' scenario" or the "'But For' or budgeted costs for episodes 2 through 6 . . . ." *See, e.g.*, Rusnak Report at 6, 8.

7. Ms. Rusnak based her conception of the "But For" world on Plaintiffs' "Locked Pattern Budget established for Israeli production," because she contended "it is reasonable to consider the budgeted amount[s]" reflected in such a budget as "a valid projection of the 'But For' scenario." Rusnak Report at 9-10 ¶ 5. A proper conception of the "But For" world is a thought experiment in which one assumes—contrary to what happened in the "As Is" world—that Plaintiffs would have continued filming all episodes of *Dig* in Israel rather than relocating to New Mexico and Croatia. This would include not only the pilot and episodes 2-6, but also episodes 7-10 which were later ordered by the network, as I explain below. Episodes 7-10 had not yet been ordered by the network when the Locked Pattern Budget was created on June 8, 2014, and thus the Locked Pattern Budget was limited to the Pilot and episodes 2-6.

8. Ms. Rusnak acknowledges what she calls Plaintiffs' "potential extra expenses of $6,899,094 related to the production of episodes 2 through 6."[1] Ms. Rusnak claims to have arrived at this figure by (1) taking Plaintiffs' "actual costs" of filming episodes 2-6 of $24,606,584[2] and (2) subtracting what she calls the "'But For' or budgeted costs' of episodes 2 through 6 in the amount of $17,707,490" based upon the Locked Pattern budget. Rusnak Report at 9. I include a visualization below:

---

[1] I disagree that Ms. Rusnak correctly calculated this figure, but assume it as true for purposes of this declaration.

[2] I similarly disagree that Ms. Rusnak correctly calculated this figure, but assume it as true for purposes of this declaration.

3



9. Ms. Rusnak then contends that Plaintiffs' "potential extra expenses of $6,899,094" should be "reduced . . . by the amortized New Mexico expenses which should have been allocated to episodes 7 through 10." *Id.* I call this opinion Ms. Rusnak's "Amortization Deduction Opinion" for simplicity and address that opinion in this declaration. This deduction was made by reducing certain amortized costs from Plaintiffs' actual spending in the "As Is" World.

10. Ms. Rusnak's Amortization Deduction Opinion appears to be based on the following contention in her Report:

> I further reduced the extra expenses by the amortized New Mexico expenses which should have been allocated to episodes 7 through 10. As noted above, there were no Prep or Wrap expenses allocated episodes 7 through 10 and very limited Amort/All Series expenses were allocated to these episodes. As

    noted on Schedule 3, episode 2 through 6 amortized cost for New Mexico totaled $1,046,691 per episode; whereas, amortized costs for episode 7 through 10 totaled only $229,977 per episode. By redistributing all the costs evenly across episodes 2 through 10, I arrive at an amount of $683,707 per episode, or $3,418,534 for episodes 2 through 6. The $3,418,534 amount resulted in a $1,814,922 overstatement and reduction to the extra expenses.[3]

Rusnak Report at 9 ¶ 7.

  11. I disagree with this contention for multiple reasons. I do not endeavor to set forth all of my disagreements with Ms. Rusnak's Amortization Deduction Opinion in this declaration. Instead, I focus principally on two issues.

  12. *First*, the network ordered episodes 7-10 (also called the "Back Four episodes") after Plaintiffs had already relocated to New Mexico and Croatia and begun incurring Prep, Wrap, and Amort/All Series expenses on episodes 2-6. Plaintiffs had thus already created the amortization schedule for Prep, Wrap, and Amort/All Series expenses based on the then-ordered episodes 2-6, thereby amortizing such expenses across five episodes (episodes 2-6). It would be contrary to Plaintiffs' ordinary business practices and the film and television industry customs and practices with which I am familiar to retroactively reconstitute the amortization schedule to amortize such expenses across nine episodes (episodes 2-10) simply because the network later decided to pick up the "Back Four" episodes. Instead, Plaintiffs' ordinary business practices—which are consistent with the custom and practice in the television industry—is to (1) create a separate amortization schedule for any such newly-added episodes, accounting for any going-forward expenses attributable to such episodes, and (2) leave any previous amortization schedules as-is. That is what Plaintiffs did with respect to the *Dig* production.

---

[3] Once again, I disagree that Ms. Rusnak correctly calculated this figure, but assume it as true for purposes of this declaration.

5

13. *Second*, even assuming for the sake of argument that a network's decision to pick up new episodes would justify re-creating the amortization schedule that had been previously created to amortize Prep, Wrap, and All Series/Amort expenses across all episodes, Ms. Rusnak appears to have improperly accounted for such amortization only in the "As Is" world and not in the hypothetical "But For" world.

14. By improperly making an Amortization Deduction only in the "As Is" world but failing to do so in the "But For" world Ms. Rusnak artificially narrowed the difference between her calculation of Plaintiffs' "actual spend" on episodes 2-6 and "budgeted spend" on episodes 2-6—and therefore her calculation of Plaintiffs' potential extra expense claim. I provide a visualization of the effect of Ms. Rusnak's Amortization Deduction below:



15. I disagree with Ms. Rusnak's one-sided Amortization Deduction in the "As Is" world only. Ms. Rusnak offers no explanation why making an Amortization Deduction in the "As Is" world—while declining to account for any similar deduction in the "But For" world—is an appropriate methodological choice. I disagree that any such deduction is appropriate.

16. If one were engaging in a thought experiment as to what Plaintiffs would have done in a "But For" world where Hamas' conduct did not force Plaintiffs to relocate, one must also assume and account for the fact that the network would have ordered episodes 7-10, which would have filmed in Israel.

17. Plaintiffs' Locked Pattern Budget—which Ms. Rusnak uses as a proxy for the "But For" world—did not account for episodes 7-10 because they had not yet been ordered. Therefore, even if one were to believe it appropriate to reconstitute the amortization schedule to run across episodes 2-10 rather than 2-6,[4] one must similarly reconstitute the "Locked Pattern Budget" so that its amortization schedule would run across episodes 2-10 rather than 2-6.[5]

18. In Schedule 1 of her report, Ms. Rusnak relies upon the June 8, 2014, *Dig* Locked Pattern Budget bearing the Bates number UCP014836-39 as a "valid projection in the 'But For' scenario." Rusnak Report at 9-10 & Schedule 1. A true and correct copy of relevant excerpts from that document is attached hereto as Exhibit A.

19. The Dig Locked Pattern Budget indicates that Plaintiffs budgeted $3,541,498 per episode. *See* Ex. A at 2. Ms. Rusnak appears to have multiplied that per-episode pattern budget by five to reach her conclusion that the budgeted cost of

---

[4] For the reasons discussed above, I do not believe it is appropriate to do so.

[5] As discussed above, reconstituting amortization budgets in such circumstances is inconsistent with Plaintiffs' ordinary business practices and the custom and practice in the entertainment industry. However, for purposes of this declaration, I am accepting as a given Ms. Rusnak's apparent contention that Plaintiffs should have done so.

7

episodes 2-6 (*i.e.*, five episodes) was $17,707,490. *See* Rusnak Report at 8 ¶ 5 & Schedule 1.

20. The per-episode pattern budget of $3,541,498 included $942,768 of "Amort" or amortized expenses per episode. *See* Ex. A at 2 (stating "Account # 940" for "Amort" was $942,768). The total "Amort" budget for the Pilot and episodes 2-6 was $5,656,610. The combined amortized expenses across solely episodes 2-6 and excluding the pilot was budgeted to be $4,713,840—or $942,768 multiplied by five.

21. If Ms. Rusnak were correct that the decision to pick up an additional "Back Four" episodes 7-10 would have required reconstituting the amortization schedule and "redistributing all the [amortized] costs evenly" across all episodes, one would need to assume that the same recreation of the amortization schedule would have occurred in the "But For" world in which filming on episodes 7-10 continued in Israel as well.

22. Taking the $5,656,610 in budgeted "Amort" expenses for the pilot and episodes 2-6 and "redistributing" them "evenly" across all episodes in the "But For" world would yield a per-episode "Amort" of $565,661. Multiplying that number by four shows that $2,262,644 in budgeted "Amort" expenses that had initially been allocated to episodes 2-6 would have been re-allocated to the "Back Four" episodes 7-10 in the "But For" world when the amortization schedule was reconstituted using Ms. Rusnak's methodology.

23. Even if one were merely to re-amortize the $4,713,840 in budgeted "Amort" expenses for episodes 2-6 evenly across episodes 2-10—as opposed to the $5,656,610 total budgeted amort that also included the pilot—that would yield a budgeted per-episode "Amort" of $523,760 for episodes 2-10.[6] Multiplying that number by four shows that $2,095,040 in budgeted "Amort" expenses that had initially been allocated to episodes 2-6 would have been re-allocated to the "Back

---

[6] This is an even more favorable approach to Defendant.

Four" episodes 7-10 in the "But For" world when the amortization schedule was reconstituted using Ms. Rusnak's methodology.

24. In this scenario, the "'But For' or budgeted costs of episodes 2 through 6"—which Ms. Rusnak calculated to be $17,707,490—would be reduced by $2,095,040. That would mean the proper conception of the "But For" world— assuming Ms. Rusnak's improper Amortization Deduction Opinion—is that the budgeted costs of episodes 2-6 would have been $15,612,450 rather than $17,707,490. I provide a visualization of this computation below:



25. As shown above, had Ms. Rusnak made an Amortization Deduction in both the "As Is" world and the "But For" worlds, both Plaintiffs' "actual spend" and "budgeted spend" would have downshifted, but the difference between the two would have increased to $7,169,212.00 (compared to the difference of $6,899,094 that Ms. Rusnak calculated prior to any Amortization Deduction).

26. By improperly making an Amortization Deduction only in the "As Is" world—but failing to do so in the "But For" world—Ms. Rusnak was able to contend that re-amortizing across episodes 7-10 would have reduced Plaintiffs' potential extra expenses. By contrast, had Ms. Rusnak included an Amortization Deduction in both the "As Is" world and the "But For" worlds, her measure of Plaintiffs' potential extra expenses would have increased, as shown below:

| Ms. Rusnak's "As-Is" World Amortization Deduction | | | |
|---|---|---|---|
|  | "Actual Spend" | "Budgeted Spend" | Difference |
| **Episodes 2-6** | $24,606,584.00 | $17,707,490.00 | $6,899,094.00 |
| **Amort Deduction** | ($1,814,922.00) | N/A |  |
| **Total** | $22,791,662.00 | $17,707,490.00 | **$5,084,172.00** |
| **"As Is" World and "But For" World Amortization Deduction** | | | |
|  | "Actual Spend" | "Budgeted Spend" | Difference |
| **Episodes 2-6** | $24,606,584.00 | $17,707,490.00 | $6,899,094.00 |
| **Amort Deduction** | ($1,814,922.00) | ($2,095,040.00) |  |
| **Total** | $22,791,662.00 | $15,612,450.00 | **$7,169,212.00** |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of January, 2020, in Los Angeles, California.

*Barbara-Ann Markus-Caffrey*
Barbara-Ann Markus-Caffrey