# EXHIBIT 1

Policy Number: MP00163-04
Renewal of Number: MP00163-03



**MOTION PICTURE/TELEVISION PRODUCERS PORTFOLIO DECLARATIONS**

OneBeacon℠
INSURANCE
Atlantic Specialty Insurance Company
150 Royall Street
Canton, MA 02021-1030

| Item 1. Named Insured and Mailing Address | Agent Name and Address |
|---|---|
| NBCUniversal Media, LLC.<br>30 Rockefeller Plaza, 2nd Floor<br>New York, NY 10112 | Aon/Albert G Ruben Insurance Services, Inc<br>1533 Ventura Blvd., Suite 1200<br>Sherman Oaks, CA 91403<br>NYFTZ: 2-14160 |

Item 2. Policy Period   From: **01-01-2014**   To: **06-30-2015**
At 12:01AM Standard Time at the Mailing Address Shown Above

Item 3. Insured Production(s): 2012 Television Production(s)

Item 4. Estimated Period of Principal Photography:
   Start Date:            Completion Date:            Print Date:

| Item 5. Coverage | | Limit of Liability Each Loss | Deductible Each Loss | Trailing Deductible Each Loss |
|---|---|---|---|---|
| Section I | Cast | $ 50,000,000 | $ 50,000 | $ 50,000 |
| Section II | Negative Film - Faulty Stock | $ 50,000,000<br>$ 50,000,000 | $ Nil<br>$ 50,000 | $ Nil<br>$ 25,000 |
| Section III | Extra Expense | $ 10,000,000 | $ 50,000 | $ 25,000 |
| Section IV | Property | $ 10,000,000 | $ 5,000 | $ 5,000 |
| Section V | Third Party Property Damage | $ 10,000,000 | $ 10,000 | $ 5,000 |

Item 6.  The policy is subject to a Self Insured Retention: $3,100,000 Aggregate
   (Includes Paid Losses and Adjustment Expenses)
   Scripted TV Productions                                  $ 1,650,000
   Comcast In House Production                              $ 161,007
   Flat Charge, Strip Shows, Specials and
   Webisodes requiring property coverage only  $ 40,000
   Policy Premium (see Rating Schedule)         $ 1,851,007
   Taxes, Surcharges & Fees                            $
   **Total Premium**                                         **$ 1,851,007  Deposit Premium**

Item 7. Form(s) and Endorsement(s) made a part of the certificate at time of issue:

EBI MP DEC 100 (08-06)                    **Exhibit 1**                    Page 1 of 1

Williams - 2-1-17

ATL003073

Item 8. Insurance is provided against those perils and for those coverages under those sections for which a specific amount or limit of liability is shown in schedules incorporated herein, subject to all terms of the policy and all forms and endorsements made a part hereof.

Countersigned:
Date: _____   By: _____
                                              Authorized Representative

THIS POLICY TOGETHER WITH THE POLICY CONDITIONS, COVERAGE PARTS AND FORMS
AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY

ATL003074



# EXECUTION OF OFFICERS' SIGNATURES

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

*[signature]*
Secretary

*[signature]*
President

G 10779 09 01

Page 1 of 1

ARCHIVE

ATL003075

**THIS ENDORSEMENT CLARIFIES THE POLICY. PLEASE READ IT CAREFULLY**

ADJ. NO.

| NAMED INSURED<br>NBCUniversal Media LLC, | DATE<br>01/01/2014 | POLICY NUMBER<br>MP00163-04 |
|---|---|---|

| IF THIS ENDORSEMENT IS LISTED IN THE POLICY DECLARATIONS, IT IS IN EFFECT FROM THE TIME COVERAGE UNDER THIS POLICY COMMENCES. OTHERWISE, THE EFFECTIVE DATE OF THIS ENDORSEMENT IS AS SHOWN ABOVE AT THE SAME TIME OR HOUR OF THE DAY AS THE POLICY BECAME EFFECTIVE. | COUNTERSIGNED BY:<br><br>_____<br>AUTHORIZED REPRESENTATIVE |
|---|---|

THIS ENDORSEMENT IS USED AS AN OVERFLOW FOR FIELDS ON THE DECLARATIONS PAGE NOT LARGE ENOUGH FOR THE NECESSARY INFORMATION AND TO LIST OPTIONAL COVERAGES.

MPTV Producers Portfolio Declarations – MP DEC 100 (08-06)
Signature Page – G 10779 09 01
Schedule of Forms – ILU 003 (0589)
Common Policy Conditions – IL 00 17 11 98
Motion Picture Television Portfolio General Conditions  NS 100 01 10

DICE Production General Conditions  DI 200 (06 10)

Rating Schedule and Self Insure Retention  SIR 100 0110

Cast Coverage – Section I  NS 101 0110

Broad Form Disgrace Coverage  NS 109 0105

Negative Film & Faulty Stock – Section II  NS 102 0110

Extra Expense – Section III  NS 103 0110

Animal Extra Expense  NS 106 0110

Property – Section IV  NS 104 0110

Property Animal Coverage  NS 110 0110

Third Party Property Damage – Section V  MP 204 (01-05)

Strip Show Coverage Extension  NS 108 0105

Hurricane, Tornado & Country Exclusion  NS 107 0105

Cap on Losses from Certified Acts of Terrorism  IL 09 50 11 02

Exclusion of Certain Computer Related Losses – IL 09 35 07 02

New York Changes – Cancellation and Non Renewal – IL 02 68 01 11

New York Changes - Fraud – IL 01 83 08

ILU 003 (0589)

ATL003076

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.
2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.
3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

ATL003077

MOTION PICTURE PORTFOLIO

# MOTION PICTURE TELEVISION PORTFOLIO
# GENERAL CONDITIONS

Throughout this policy the words **you** and **your** refer to the Named Insured shown in the Declarations. The words **we, us** and **our** refer to the Company providing this insurance.

## I. GENERAL CONDITIONS

### A. NAMED INSURED
Named insured shall mean the first named insured as per the Declarations and any majority owned or managed subsidiaries thereof, their respective parent and affiliated companies and or any financially controlled or managed organization(s) and or any production company or other entity formed or contracted by the named insured or an other organization, entity or person(s) which the named insured has agreed to insure contractually.

Named insured includes your "employees", but only within the scope of their employment by you or while performing duties related to the conduct of your business.

### B. TERRITORY
This Policy applies anywhere in the world.

### C. MISREPRENTATION AND FRAUD
This Policy is void if you knowingly concealed or misrepresented any material fact or circumstance concerning this insurance, or in the case of any fraud or false swearing by you, whether before or after a loss. If you make any false or fraudulent claim as to the amount or otherwise, this Policy is void as to that specific claim, and we have the right to terminate this Policy at that time, and any subsequent claims by you are forfeited. The term "you:" as used in this paragraph applies to your Risk Management Department.

### D. ASSIGNMENT
This Policy may not be assigned without our written consent.

### E. ACTION AGAINST US
No action against us may be brought unless you have complied with all of the material provisions of this Policy and the action is started within two (2) years after the date on which the loss occurred.

Nothing in this Policy gives any person or organization any right to join us as a co-defendant in any action against you to determine your liability.

### F. ACCESS TO RECORDS AND EXAMINATION UNDER OATH
We or our representatives may examine and audit your books and records as they relate to this policy at any time during the policy period or while a claim is pending.

If requested, you must permit us to question you and, so far as within your power, all other interested persons under oath, at such times as may be reasonably required, about any matter relating to this insurance or a claim.

No such examination under oath or examination of books or documents, nor any other act by us or any of our employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which we might otherwise have with respect to any loss or claim, but all such examinations and acts shall be deemed to have been made or done without prejudice to our liability.

### G. OTHER INSURANCE
If at the time of loss or damage, any other valid insurance is available which would apply to the loss or damage in the absence of this policy, the insurance provided by this policy will be primary to any other policy held by you, but excess with respect to any policy or coverage held or provided by any other party, unless otherwise agreed by you.

This policy does not apply to any production that has been declared by you under similar insurance provided by any other insurer.

### H. SUBROGATION
If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. This insurance will not be prejudiced if you have waived your right of recovery from any party or parties in a lease for premises or rental agreement

NS 100 0110                                                                                                          Page 1 of 7

for property. We will honor any written contractual waiver of subrogation obligation agreed to by you prior to a loss.

**I. DUTIES IN THE EVENT OF LOSS OR DAMAGE**

In the case of loss or damage to which this insurance may apply, you must see that the following duties are performed:

(1) Police Notification – Notify the police if you believe that a law may have been broken.
(2) Minimize Loss or Damage – Take all reasonable steps to protect the property from further damage and minimize the loss. Keep a record of your expenses in doing so for consideration in the settlement of the claim. This will not increase the limit of insurance.
(3) Notice of Loss or Damage
   (a) Report to us or our authorized representative as soon as practicable any loss or damage which may become a claim under this policy and provide to us a description of how, when and where the loss or damage occurred.
(4) Proof of Loss – File with us, or our authorized representative, a detailed proof of loss signed and sworn to by you setting forth to the best of your knowledge and belief the facts of the loss and the amount thereof. You must do this within one hundred eighty (180) days as requested by us or required by law after discovery of the loss or damage.
(5) Cooperation
   (a) Except at your own cost, make no voluntary payments, assume no obligations, and incur no expenses without our consent, except in settlement of a covered claim where the amount of the claim is not disputed or under the policy deductible.
   (b) Permit us to inspect the property and records supporting the loss or damage. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.
   (c) Immediately send us copies of any demands, summonses or legal papers received in connection with the claim or suit.
   (d) Cooperate with us in the investigation or settlement of the claim.

**J. LOSS PAYMENT**

(1) Loss or damage covered by this policy will be payable to you or your loss payee. We agree that any holder of a Certificate of Insurance in which such holder is evidenced as a Loss Payee issued by us or on our behalf will be considered a Loss Payee subject to your legal liability.
(2) We will not pay you more than your financial interest in the covered property.
(3) If two or more of this policy's coverage apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.
(4) We will pay you for covered loss or damage within thirty (30) days after we received and accept a satisfactory sworn proof of loss as we have required, or as required by law; if you have complied with all the terms of this policy and:
   (a) We have reached agreement with you on the amount of loss; or
   (b) A final judgment has been entered; or
   (c) An appraisal award has been made.
(5) We may adjust losses directly with the owners of lost or damaged property, it other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the covered property.
(6) We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

We will not be liable for any part of a loss that has been paid or made good by others.

**K. LIMITS, DEDUCTIBLE and TERMS OF COVERAGE**

(1) When a deductible applies, the terms of this insurance, including those with respect to your duties in the event of loss or damage, apply irrespective of the application of the deductible amount.
(2) We may pay any part or all of a deductible amount to effect settlement of any claim and, upon notification of the action taken; you shall promptly reimburse us for such part of the deductible amount as has been paid by us.
(3) The Limits of Liability as stated herein apply per occurrence.
(4) The Term of Coverage will apply as stated herein to each Insured Production declared hereunder.

**L. PREMIUM**

(1) The first Named Insured shown in the Declarations:
   (a) Is responsible for the payment of all premiums; and
   (b) Will be the payee for any return premiums we pay.
(2) We will compute all premiums for this policy in accordance with the rating schedule(s) attached to and made a part of this policy.
(3) The premium shown in this policy is a deposit premium only unless specifically stated otherwise. At the end of the policy period we will compute the earned premium by applying the rates set forth in the rating schedule(s) to the final "Insurable Production Cost". However, the earned premium will not

ATL003079

be less than the minimum policy premium stated on the rating schedule(s), regardless of the term of coverage.

If the earned premium is greater then the deposit premium, we will send a bill to the first Named Insured that shows the amount due and when it is payable. If the earned premium is less than the deposit premium, we will return the excess to the first Named Insured.

The first Named Insured must keep records of the "Insurable Production Costs" and other information we need for premium computation, and send us copies at such times as we may request.

### M. CANCELLATION

(1) The first Named Insured shown in the Declarations may cancel this policy by returning it to us or our authorized representative, stating in writing the future date it is to be cancelled. The policy period will end on that date.

(2) We may cancel this policy by written notice to the first Named Insured at least:
   (a) Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or
   (b) One hundred and twenty (120) days before the effective date of cancellation if we cancel for any other reason.

(3) We will mail or deliver our notice to the first Named Insured's last mailing address known ot us.

(4) Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

(5) If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. In the event of policy cancellation, the policy premium will be adjusted to reflect audited, actual insurable production costs from policy inception date to cancellation date. Pro-rata refund will apply to all flat charges. The cancellation will be effective even if we have not made or offered a refund.

(6) If notice is mailed, proof of mailing will be sufficient proof of notice.

### N. ABANDONMENT

There can be no abandonment of any property to us without our written consent.

### O. STOP LOSS DATE

If as a result of delay in completing the original shooting schedule of an insured production you incur a loss in order to honor the termination date contained in a performance contract between you and any other person and/or their respective loan out company, such loss (hereinafter referred to as a stop date loss) would not be covered by the provisions of this policy, but this policy will, nonetheless, participate in a stop date loss to the extent that the need to incur such loss is directly related to a loss insured under the terms of this policy. The extent of our participation in a stop date loss will be governed by the proper consideration of the following factors:

(1) If the need to incur the stop date loss is solely and directly the result of an insured loss, the stop date loss will be recoverable in full.

(2) If the need to incur the stop date loss arises in part by reason of an insured loss and also arises in part by reason of an uninsured occurrence so that it can reasonably be said that each contributed to the incidence of the stop date loss, then the extent that each so contributed will be determined and an apportionment of the stop date loss will be made.

(3) If the need to incur the stop date loss is in no way connected with an insured loss, no part of the stop date loss will be recoverable.

(4) Coverage afforded by this paragraph is subject to the proviso that the performance contract term was sufficiently longer than your original scheduled time for completion of the insured production so as to allow a reasonable margin of safety to cover possible delays in completing the insured production. It is agreed that ten (10) consecutive days is a reasonable margin of safety for features and three (3) consecutive days is a reasonable margin of safety for all other productions.

### P. APPRAISAL

If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal. Each party will select a competent, independent appraiser and notify the other of the appraiser's identity within twenty (20) days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within fifteen (15) days, you or we can ask a judge of a court of record in the state of your residence to select an umpire. The appraisers will then submit a written report of an agreement to us and the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable period of time, they will submit their difference to the umpire. Written agreement signed by any two of these three will set the amount of the loss. The party selecting that appraiser will pay each appraiser. Other expenses of the appraisers and the compensation of the umpire will be paid equally by you and us.

### Q. POLICY CHANGES

No changes may be made to this policy except by mutual agreement in writing.

### R. CONFORMITY TO STATE LAW

When any policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply, unless the provision of this policy is broader.

### S. DUE DILIGENCE

You shall use due diligence and do and concur in doing all things reasonably practicable to avoid or diminish any loss or any circumstance likely to give rise to a loss or claim insured under this policy. This

ATL003080

policy extends to indemnify you for any additional expenses necessarily incurred by you to avoid or diminish such loss or claim, subject to any deductible provisions of this policy. This indemnification will not increase the limit of insurance, and we will not pay more for any loss than the amount that would have been payable had you not incurred the additional expenses.

### T. INADVERTENT ERRORS

You will not be prejudiced by any unintentional or inadvertent omission, error or incorrect description of the property, persons, animals or exposures insured hereunder.

### U. INSPECTIONS OF SURVEYS

(1) We have the right to:
    (a) Make inspections and surveys at any time;
    (b) Give you reports on the conditions we find; and
    (c) Recommend changes.

(2) We are not obligated to make any inspections, surveys, reports, or recommendations, and any such actions we do undertake related only to insurability and the premiums to be charged. We do not make safety recommendations. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
    (a) Are safe or healthful; or
    (b) Comply with laws, regulations, codes or standards.

(3) Paragraphs (1) and (2) of this Condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

### V. RECOVERIES

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

To the extent recovery is made from such other insurance, the deductible and/or the SIR under this policy will be reduced by such recovery. In no event will the deductible/SIR under this policy be greater than that shown in this policy. If recovery from such other insurance is greater than the deductible/SIR in this policy, then the deductible/SIR under this policy will apply.

To the extent there is a recovery from other insurance when the loss exceeds the Deductible or SIR, we will share the recovery and costs proportionally.

### W. INSURANCE NOT TO BENEFIT OTHERS

No person or organization, other than you, having custody of the property and to be paid for services shall benefit from this insurance. This restriction does not apply to a person or organization, other than a common carrier, which is working or providing services on your behalf.

### X. PROPERTY OF OTHERS

In the event of loss or damage to property of others (insured hereunder) held by you for which a claim is made. We have the right to adjust such loss or damage with the owner or owners of such property. Receipt of payment by such owner or owners satisfaction of any claim by you for which such payment has been made. If legal proceedings are taken to enforce a claim against you as respects any such loss or damage, we shall, at our expense, conduct and control the defense of such legal proceeding on your behalf of and in your name. No action of ours in such regard will increase our liability under this policy.

### Y. EXCHANGE RATE

The rate of exchange applied to a loss shall be the rate as paid by you to purchase the foreign funds to pay a claim.

We reserve the right, for claims that we settle directly with third parties to this policy, to adjust the claims at the prevailing exchange rate or the exchange rate used to actually purchase the foreign funds to pay a covered claim.

## II. SPECIAL CONDITIONS

### A. DEFINITIONS

1. "Continuity" means costs incurred to match or maintain the Environment of the "Insured Production" during "Principle Photography". The Environment includes weather, climate, natural lighting or seasonal changes in which you are filming the "Insured Production".

2. "Earthquake" means:
    (a) Any earth movement, such as an earthquake, landslide, mine subsidence, or earth sinking, rising or shifting; and
    (b) Volcanic eruption, meaning the eruption, explosion or effusion of a volcano;

Provided that all earth movements or volcanic eruptions that occur within any seventy-two (72) hour period will constitute a single earth movement or volcanic eruption.

3. "Flood" means, flood waters, surface water, waves, tide or tidal water, overflow or rupture of a dam, levy, dike or other surface containment structure, storm surge, the rising, overflowing or breaking of boundaries of natural or manmade bodies of water, or the spray from any of the foregoing, all whether driven by wind or not.

4. "Insurable Production Cost" includes: all costs, including overhead and interest on loans chargeable directly to an "Insured Production" or series of productions. Insurable Production Cost also includes any amount of other overhead only when declared at the time you declare an "Insured Production" or series of productions. The fol-

lowing costs shall not be included in "Insurable Production Cost":
   (a) Royalties Term Deals for Executive Producer(s), Package Fee & Publicity, residuals, premiums paid for this insurance, and personal property taxes;
   (b) Story, scenario, music rights, and sound rights, except with respect to television series, specials and pilots; and
   (c) "Continuity", except when a period of suspension due to covered loss or damage exceeds ninety (90) days.
   (d) Any other costs specifically stated not to be "Insurable Production Costs" in an endorsement to this policy.

Nevertheless, you have the option to include these excluded costs at the time you declare an "Insured Production" or series of productions. In that case, such costs will be included in the "Insurable Production Cost", and
The amount of any loss or damage paid under this policy.

5. "Insured Production" means a production or series of productions that has been declared to us.
6. "Mobile Equipment" means any of the following types of land vehicles, including any attached machinery or equipment:
   (a) Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
   (b) Vehicles that travel on crawler treads;
   (c) Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted equipment, or maintained primarily for purposes other than the transportation of persons or cargo. However, "Mobile Equipment" does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.
7. "Principal Photography" means the continuous period of time from the start date to the completion date you actually require to photograph or tape an "Insured Production", including any necessary wrap time or reshoots.
8. "Employee" includes a leased, temporary or volunteer worker leased to you under a written agreement perform duties related to the conduct of your business.
9. "Suit" means a civil proceeding in which damages to which this insurance applies are alleged.

## B. ABANDONMENT OF INSURED PRODUCTION
Should a covered loss result in an abandonment during the term of coverage under this section of the policy, we have the right to require that you surrender all owned or licensed rights, title(s), and interest(s) in all documents, underlying works, copyrights and all related material of the insured production, except as relates to any sequel, prequel, and their attendant merchandise. We will reimburse you for the cost you incurred for the rights.

## C. REPORTING REQUIREMENTS
You must declare to us on a declaration and information form acceptable to us, the particulars of each and every production or series of productions undertaken by you during the term of this policy. If Cast Insurance is to be provided you will report to us each Covered Person to be insured prior to the completion of "principal photography".

## D. HIATUS COVERAGE
1. With respect to episodic television, coverage is continuous from the pilot through season one, and between seasons for each television series declared to this policy, hereinafter referred to as Hiatus Coverage, subject to all other terms and conditions of this policy.
2. Hiatus Coverage as defined in this policy shall mean the period of time from the end of coverage for the pilot or an episodic television series until the commencement of pre-production, for the series following the pilot or subsequent season.
Cast coverage will be provided during the hiatus period and will mirror the coverage that was provided during the previous season for all declared productions. Cast coverage will remain as such during the term of declaration of the new season, until a new cast examination has been received, for a period of 30 days from declaring an artist for the new season. If a covered person who requires a medical examination becomes physically disabled or ill resulting in a claim, and such illness either occurs prior to their new medical examination, and results from a condition that would not have routinely been discovered during such examination or by a review of the case history of that person, then this section shall cover such claim, subject to terms and conditions in the policy language.
3. The limits of liability, deductibles and terms that were in effect for the preceding pilot or season will apply during the hiatus period.
4. Hiatus Coverage applies solely to Cast Coverage, Property and Third Party Property Damage.
5. Hiatus Coverage will cease:
   a) On the effective date of cancellation when this policy is cancelled or non-renewed by you or us;
   b) On commencement of pre-production for the series following the pilot or subsequent season of a television series;
   c) 180-days after the start of Hiatus; or
   d) At such time as the pilot or television series is not picked up or renewed by the network, whichever occurs first.

## E. DELIVERY DATE EXPEDITING COSTS

ATL003082

With respect to all productions insured hereunder, subject to all other terms and conditions, the definition of loss with respect to Cast Coverage, Negative Film, Faulty Stock and Extra Expense is extended to include the necessary production extra expenses you necessarily incur to meet an air date or delivery date of an insured production subject to a sub limit of liability of $1,000,000.

### F. PRINTS AND ADVERTISING COSTS

With respect to all productions insured hereunder, subject to all other terms and conditions, the definition of loss with respect to Cast Coverage, Negative Film, Faulty Stock and Extra Expense is extended to include the costs incurred for prints and advertising as have been rendered entirely valueless, solely in the event of an abandonment of an insured production, subject to a sub limit of liability of $1,000,000

### G. PUBLIC RELATIONS COSTS

With respect to all productions insured hereunder, subject to all other terms and conditions, the definition of loss with respect to "Disgrace" and or "Violent Death" under Cast Insurance is extended to include the costs to hire a third party public relations firm, law firm or crisis management firm for the specific purpose to minimize potential harm to you arising from a situation or occurrence involving the Disgrace or Violent Death of an insured cast member, subject to a sub-limit of liability of $250,000.

### H. DEDUCTIBLES, ANNUAL AGGREGATE DEDUCTIBLE and TRAILING DEDUCTIBLES

Coverage afforded under this policy is provided subject to the following terms and conditions:

A. Deductibles

1. You will incur the deductibles as stated in the policy on all covered loss before a loss accrues to the Annual Aggregate Deductible or we pay a loss:

2. The total of the adjusted claim amounts and adjusting expenses that exceed the deductible(s) will accrue to the Annual Aggregate Deductible.

B. Annual Aggregate Deductible

The annual aggregate self insured retention is $3,100,000

For "Insured Production(s)" declared to us during the policy term an Annual Aggregate Deductible for the policy term of $3,100,000 applies subject to the following:

1. All adjusted claim amounts approved by us that you incur over the deductible amounts stated herein will accrue to the Annual Aggregate Deductible;
2. At such time as the Annual Aggregate Deductible(s) has been exhausted, the deductible shown on the Declarations Page or within the policy will change to the Trailing Deductible(s) stated herein for each adjusted claim and for all subsequently adjusted claims for that "Insured Production" or annual period of declared productions.

C. Trailing Deductible(s)

After the Annual Aggregate Deductible has been exhausted, you will incur a Trailing Deductible(s) in the amounts stated below as Deductibles for each adjusted claim and we will pay all covered claims in excess of the Trailing Deductible including any and all related adjusting expense(s):

**TRAILING DEDUCTIBLES**

| COVERAGE | TRAILING DEDUCTIBLE |
|---|---|
| Cast | $50,000 |
| Negative | NIL |
| Faulty | $25,000 |
| Extra Expense | $25,000 |
| Property | $5,000 |
| Third Party Property Damage | $5,000 |
| ALL OTHER EXTENSIONS | $50,000 |

### I. CLAIMS ADMINISTRATION

All claims must be reported to:

Entertainment Brokers International /OneBeacon
Insurance Company Claims Department
1100 Glendon Ave. Suite 900
Los Angeles, CA 90024
Phone: 781-332-8480
marevalo@onebeacon.com

### III. EXCLUSIONS APPLICABLE TO ALL SECTIONS OF THIS POLICY

This policy does not insure against loss or damage caused directly or indirectly by:

1. War, including undeclared or civil war; or
2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
4. Any weapon of war including atomic fission or radioactive force, whether in time of peace or war;

NS 100 0110

ATL003083

5. Nuclear reaction or radiation, or radioactive contamination from any other cause. But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the direct loss or damage caused by that fire if the fire would be covered under this policy.
6. Risks of contraband or illegal transportation of trade.
7. Violation of any Law or Statute, or any actual dishonest, fraudulent, criminal or malicious act committed by you, your employees, including any judicial injunction or action for injunctive relief.
8. Any uninsured event occurring before, concurrently with or after the happening of an insured event, which directly or indirectly causes or in any way contributes to cause or increase a loss under this policy; but only with respect to that portion of any such loss caused by or contributed to by the uninsured event, unless the uninsured event would not have been a factor had such insured event never occurred.

**MOTION PICTURE PORTFOLIO**

# SECTION III – EXTRA EXPENSE

Throughout this policy the words **you** and **your** refer to the Named Insured shown in the Declarations. The words **we**, **us** and **our** refer to the Company providing this insurance.

**I. INSURING AGREEMENT**

We agree to pay to you such loss (as defined in Paragraph VII) not including loss of earnings or profit, as you sustain by reason of such extra expense you necessarily incur as a result of the interruption, postponement, cancellation, relocation, curtailment or abandonment of an Insured Production due to the following:

1. The loss must be a direct result of an unexpected, sudden or accidental occurrence entirely beyond your control to include:
    a) Confiscation and/or detainment of equipment, material or personal property by order of any government or civil authority;
    b) Shipping or transit delays or cancellation of necessary and required equipment, material or personal property used or to be used in the Insured Production caused by adverse weather conditions;
    c) Interruption or loss of utilities (electrical, steam, gas or any other power source) required to continue or complete an insured production;
    d) Strikes by any party, union, guild or labor group for which you are not a signatory or directly involved in negotiations or is not a major entertainment union or guild;
    e) Verifiable breakdown, short circuit, electrical injury, disturbance or malfunction to Covered Personal Property or vehicles. Subject to props; created, constructed, designed or maintained by you must be tested and verified to be in working order under the conditions you will be using them.
    f) Interruption, postponement or cancellation of an insured production as a direct result of the action of a civil authority that revokes your permission to use or prohibits access to property or facilities used or to be used in connection with an Insured Production.
    g) Imminent peril, defined as certain, immediate and impending danger of such probability and severity to persons or property that it would be unreasonable or unconscionable to ignore.
    h) Any expenses incurred to avoid a loss resulting from imminent peril are covered to the extent that they serve to avoid a loss otherwise covered.
2. Except as provided above, this extension does not negate the applicability of the basic terms and conditions of:
    a) The Extra Expense Coverage in the event that an imminent peril results in damage to or destruction of property or facilities payable under this policy; or
    b) The Cast Coverage in the event that an imminent peril results in death, injury or sickness of a covered person, in which case a separate claim will result from the consequential loss as described above.
3. All unexpected, sudden or accidental crisis accident seriously injuring or killing a cast or crew member on the production site that necessarily forces you to stop the filming of the Insured Production, the following elements must have occurred:
    a) The crisis resulted in a life-threatening physical injury or accidental death to a cast or crew member of the insured production;
    b) The crisis occurs at the filming location of the Insured Production (meaning a location where cast or crew is assembled to shoot any scheduled work);

NS 103 0110

Page 1 of 4

ATL003103

c) The crisis was witnessed by cast or crew members of the Insured Production or is a forced closure by a civil authority;

d) The crisis necessarily results in the immediate suspension of the production of the Insured Production.

## II. LIMITS OF INSURANCE

The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the Declarations for Extra Expense coverage, except the following:

1. Strike is subject to a $1,000,000 any one occurrence;
2. Confiscation is subject to a $1,000,000 any one occurrence;
3. Shipping & Transit Coverage is subject to a $1,000,000 any one occurrence;
4. Vehicle mechanical break down is subject to a $1,000,000 sublimit any one occurrence;

## III. DEDUCTIBLE

We will not pay for loss in any one occurrence until the amount of the adjusted loss before applying the applicable limits of insurance exceeds the deductible amount shown in the Declarations for Extra Expense Coverage. We will then pay the amount of the adjusted loss in excess of the deductible, up to the applicable limit of insurance.

## IV. TERM OF COVERAGE

Term of Coverage, as used in this Coverage, means the period beginning one hundred eighty (180) days before the date shown in the Declarations as the start of "Principal Photography" or the start date of principal photography which ever occurs first , and continuing until the earliest of the following dates:

(1) The date of delivery required under the completion guarantee agreement with the distributor(s);

(2) The date your completion guarantor is released from further obligations to you;

(3) Eighteen (18) months after completion of "Principal Photography";

(4) The date on which a protection print or duplicate tape has been completed and physically removed from the premises where the original negative or tape is located;

(5) The date your interest in the property ceases; or

(6) The date on which cancellation or termination of coverage under this policy for the "Insured Production" becomes effective.

The expiration date of this policy will be extended, if necessary, until the earliest of these dates. We may charge additional premium for this extension.

## V. WARRANTIES

You warrant that:

A. All necessary arrangements and contractual agreements for the Insured Production, including, but not limited to, permits, visa(s) and licenses, have been obtained and/or executed by you, prior to any "loss" covered hereunder.

B. You have disclosed to us any arrangements, contractual conditions, physical conditions or other facts that could affect the Insured Production.

C. Prior to the inception of coverage hereunder, you warrant having no knowledge of any matter, fact or circumstance, actual or threatened, that increases or could increase the possibility of a "loss" under this Policy.

Failure to fulfill any warranty above will release us from all obligations under this Policy, to the extent that a "loss" is suffered or increased by that failure.

## VI. PROPERTY NOT COVERED

Covered Property does not include Negative film, video tape, tapes, animation cells, transparencies, positives, sound tracks, art work, software, programs or any other form of media.

## VII. EXCLUSIONS

This coverage does not cover "loss" caused by, resulting from, or arising out of:

1. The failure of any person(s) in connection with the Insured Production to commence, continue or complete their respective duties or performances for any reason; or

2. Any financial cause of "loss', including but not limited to:

    a) Any deficient or inadequate response, support or withdrawal of support, including insufficient attendance or interest prior to attendance;

    b) Withdrawal of funds, inadequate or insufficient finances, however caused;

ATL003104

c) Any financial failure of any venture, company, entity or person;

d) Any failure to maintain adequate receipts, sales or profits, including any failure to provide bond(s) or financial security;

e) Any variation in the rate of exchange, including devaluation, rate of interest or stability of any currency;

f) Any financial default, insolvency, debt or failure to pay necessary expense to any person, firm or corporation;

3. Any actual adverse weather at the location of any insured production except:

   a) The action of a civil authority that prevents access to, exit from (ingress or egress) or closes down the location and or facilities due to conditions that threaten the safety of cast, crew or property, an imminent peril; or

   b) Physical damage to property, facilities, or locations necessary to the insured production.

4. Your failure or inability to complete or obtain any contractual agreements, permits or licenses of any kind;

5. Your failure or inability to properly comply with, or the violation of any requirement or any procedure necessary for the issuance and continuance of any permit or authorization; or your failure to properly process or complete any applications or required documents.

6. The refusal or revocation of any permit or authorization due to a violation of any existing civil or criminal law or codes.

7. Any governmental body or civil authority preventing the commencement or completion of an Insured Production due to a breach of the terms of the permit or any civil or criminal violation by you.

8. Any concern or fear of an occurrence which may affect the commencement of the continuation of the Insured Production, except the action of a civil authority that prevents access to, exit from (ingress or egress) or closes down the location and or facilities due to conditions that threaten the safety of case, crew or property;

9. An imminent peril or physical damage to property, facilities, or locations necessary to the insured production.

10. Any concern or belief that the commencement or continuation of Insured Production is inappropriate.

11. Breach of contract by any party whether their contractual relationship be with you or otherwise where such loss is consequent upon or contributed to by any cause within your control or any other such party which includes the failure of any individual or entity contracted, hired or employed to willingly perform the duties for which that person or entity has been hired with respect to the Insured Production.

12. Wear and tear; any quality in the property that causes it to damage or destroy itself; hidden or latent defect; gradual deterioration; depreciation; mechanical breakdown or electrical breakdown; insects; vermin, or rodents; corrosion, rust, dampness, cold or heat. This exclusion does not apply to Verifiable breakdown, short circuit, electrical injury, disturbance or malfunction to Covered Personal Property or vehicles. Subject to props; created, constructed, designed or maintained by you must be tested and verified to be in working order under the conditions you will be using them.

13. Processing or work upon the property. But if processing or work upon the property results in fire or explosion, this exclusion does not apply to direct loss or damage caused by that fire or explosion, if the fire or explosion would be covered under this Coverage.

14. Unexplained or mysterious disappearance or shortage found upon taking of inventory.

15. Rain, ice, sleet, snow or hail, whether driven by wind or not, to property stored in the open. This exclusion does not apply to property that was built or designed to be stored in the open.

16. Intentional acts committed by you or at your direction.
    This exclusion does not apply to damage, destruction or threat thereof to software or computer media by an external person or an internal employee breaching your authority and safeguards to protect such software or computer media.

17. Loss of use (including loss of use of animals), loss of market, interruption of business, or any other consequential loss.

18. Any other loss that may be covered by some other section of this policy.

19. Any weather condition that is a photographic weather condition;
20. The quality or content of the "Insured Production".
21. Strike by any organization for which you are a signatory or negotiate with or is a major entertainment union or guild;
22. Strike by an union or guild that was occurring prior to the commencement of "principle photography" of an "Insured Production"
23. Watercraft exclusion amended to cover vessels valued under $750,001 No exclusion or restriction will be applied for watercraft used as part of a set and moored to a pier, dock, wharf of similar fixed structure.

## IX. DEFINITION OF LOSS

The amount of your loss will be determined based on:

1. All necessary "Insurable Production Cost" you incur to complete the "Insured Production" that exceeds the amount of "Insurable Production Cost" you would have incurred if the covered cause of loss had not occurred;
2. All other necessary expenses that reduce the amount of loss otherwise payable.
3. Your loss will not include loss of earnings of profit.
4. If you abandon an "Insured Production" that has been made substantially valueless solely because one or more covered causes of loss reasonably, practically and necessarily prevents you from completing the "Insured Production", irrespective of any completion or delivery date requirements for the "Insured Production", we will pay as loss the total "Insurable Production Cost" you have incurred for the "Insured Production".