UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,<br><br>             Plaintiffs,<br>  v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br>             Defendant. | Case No.: 2:16-cv-4435-PA-MRW<br><br>Honorable Percy Anderson<br>Dept. 9A<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE OR EXCLUDE PORTIONS OF MS. RUSNAK'S DAMAGES OPINIONS** |

7093923v1/015825

The Court having read and considered Plaintiffs' Motion to Strike or Exclude Portions of Ms. Rusnak's Damages Opinions, and good cause appearing therefor, GRANTS Plaintiffs' Motion and makes the following Order:

Ms. Rusnak's opinion that Plaintiffs' "[p]otential extra expenses of $6,899,094 related to the production of episodes 2 through 6" should be "reduc[ed] for New Mexico amortization costs which should have been allocated to episodes 7 through 10 in the amount of $1,814,922" is stricken and excluded. Ms. Rusnak will not be permitted to testify to this opinion or the bases therefore at trial for several reasons.

*First*, Mr. Shapiro, Defendant's former damages expert, opined that there could be a "possible reduction" for "the prep and wrap expenses incurred in episodes 2 through 6 that may have benefited the producing of episodes 7 through 10" but did not opine definitively that such a deduction "should" be taken and did not quantify any such deduction. Defendant may not use Ms. Rusnak's report as an opportunity to "strengthen its trial position with a new and better expert." *Fidelity Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 308 F.R.D. 649, 653 (S.D. Cal. 2015).

*Second*, the Policy itself, on its face, does not permit such an offset, either in its definition of "loss" or "insurable production cost." To the contrary, a "loss" is defined as "such loss . . . as you sustain by reason of such extra expense you necessarily incur as a result of" the insurable event. The "amount of your loss will be determined based on . . . [a]ll necessary 'Insurable Production Cost' you incur to complete the 'Insured Production' that exceeds the amount of 'Insurable Production Cost' you would have incurred if the covered cause of the loss had not been incurred." So long as an Insurable Production Cost was necessarily incurred to complete filming episodes 2-6, nothing in the Policy would permit an offset simply because such expenditures also benefited future episodes.

*Third*, according to NBCUniversal's Vice President of Production and Finance, who has fifteen years of experience, re-constituting the amortization schedule simply because new episodes are subsequently ordered is against television production industry

1

1  custom and practice and Plaintiffs' ordinary business practice. Ms. Rusnak does not
2  offer any basis for her contrary opinion that certain "New Mexico amortization
3  costs…should have been allocated to episodes 7 through 10," which were ordered
4  subsequent to the relocation. Nothing in Ms. Rusnak's Curriculum Vitae or Proffer
5  suggests that she has any necessary expertise or experience in the television production
6  industry or television production finance to opine on industry custom for amortization
7  when new episodes are ordered. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)
8  ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court
9  to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the
10 expert. A court may conclude that there is simply too great an analytical gap between
11 the data and the opinion proffered.").

*Fourth*, it appears that Ms. Rusnak accounted for this amortization deduction solely with respect to the "as is" world and not a hypothetical "but for" world in which Plaintiffs would have continued filming all episodes—including episodes 7-10—in Israel. This omission appears to have artificially narrowed the difference between Ms. Rusnak's calculation of Plaintiffs' "as is" and "but for" expenditures, and thus the measure of Plaintiffs' potential extra expenses. This failure to properly conceive of and account for important elements of the "but for" world renders Ms. Rusnak's methodology unreliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See, e.g.*, *In re Libor-Based Financial Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 560 (2018) (holding where an expert's methodology "fail[s] to take into account" the "relevant aspects of the but-for world," such a "methodology cannot be fairly said to calculate 'damages'").

In addition, Ms. Rusnak's deduction of $1,637,756 based on Plaintiffs' tax credits is also stricken. Ms. Rusnak will not be permitted to opine that any deduction based on tax credits should be taken. Any such deduction is barred by the Policy's definition of "Insurable Production Cost" as well as California law. *See DePalma v. Westland Software House*, 225 Cal. App. 3d 1534, 1536 (1990) (holding "evidence of tax benefits

which a plaintiff may have received" should not "be considered in determining compensatory damages for the defendant's breach of [a] contract").

      Finally, Ms. Rusnak offers several new opinions that Mr. Wunderlich's calculations were overstated by specific amounts based on Plaintiffs' expenditures in Israel. *See, e.g.*, Rusnak Report at 5-8. These are improper new opinions and are stricken. Mr. Shapiro testified that (1) he did not believe Plaintiffs had incurred any expenses on episodes 2-6 in Israel and (2) his sole basis for believing certain of Mr. Wunderlich's calculations were overstated was the "sheer magnitude" of the difference between Mr. Wunderlich's opinion that extra expenses totaled $7.1 million and Mr. Shapiro's opinion that the cap on Plaintiffs' extra expenses was approximately $3.9 million (a proposition with which Ms. Rusnak disagrees).

      IT IS SO ORDERED.

DATED: _____

                                      Honorable Percy Anderson
                                      United States District Judge