MARC J. SHRAKE (SBN 219331)
mshrake@fmglaw.com
FREEMAN MATHIS & GARY, LLP
550 South Hope Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 615-7019
Facsimile: (213) 615-7000

CHRISTOPHER W. MARTIN *(Pro Hac Vice)*
martin@mdjwlaw.com
MELINDA R. BURKE *(Pro Hac Vice)*
burke@mdjwlaw.com
WILLIAM E. McMICHAEL *(Pro Hac Vice)*
mcmichael@mdiwlaw.com
MARTIN, DISIERE, JEFFERSON
& WISDOM LLP
9111 Cypress Waters Blvd., Suite 250
Dallas, Texas 75019
Telephone: (214) 420-5500
Facsimile: (214) 420-5501

Attorneys for Defendant
Atlantic Specialty Insurance Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC, a Delaware limited liability company, and NORTHERN ENTERTAINMENT PRODUCTIONS LLC, a Delaware limited liability company,<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY, a New York insurance company,<br><br>　　　　　　Defendant. | CASE NO. 2:16-cv-4435-PA-MRW<br><br>**ATLANTIC SPECIALTY'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE OR EXCLUDE PORTIONS OF MS. RUSNAK'S DAMAGES OPINIONS**<br><br>**DECLARATION OF MARC J. SHRAKE**<br><br>Hearing Date:  February 10, 2020<br>Time:  1:30 p.m.<br>Place: Courtroom 9A<br>Judge:  Honorable Percy Anderson<br>Trial:  February 18, 2020 |

Freeman Mathis
& Gary, LLP
Attorneys at Law

1

# TABLE OF CONTENTS

2  INTRODUCTION: ...................................................................................................5

3  ARGUMENT AND AUTHORITIES..........................................................................6

4      I.    Ms. Rusnak's amortization opinions are substantially
           similar to Mr. Shapiro's. ...................................................................6

5

6      II.    Ms. Rusnak's "amortization" opinion properly applies the
           policy's definition of "loss." .............................................................10

7      III.   Plaintiffs' industry custom and practice argument is
           irrelevant............................................................................................13

8

9      IV.   Ms. Rusnak is qualified to opine regarding Plaintiffs'
           expense. ..............................................................................................14

10     V.    Plaintiffs' incorrect attack on Ms. Rusnak's methodology is
           not a proper basis to strike Ms. Rusnak's opinion. .............................16

11

12     VI.   Plaintiff's argument that tax credits and rebates cannot be
           considered by the jury is wrong. .........................................................18

13     VII.  Mr. Shapiro and Ms. Rusnak each opine that Mr.
           Wunderlick's extra-expense calculation included

14           duplicative and inflated expenses. ......................................................20

15  CONCLUSION.........................................................................................................22

16

17

18

19

20

21

22

23

24

25

26

27

28

Freeman Mathis
& Gary, LLP
Attorneys at Law

1

## **<u>TABLE OF AUTHORITIES</u>**

2

## **<u>Cases</u>**

3    *Anheuser-Busch, Inc. v. Starley* 28 Cal.2d 347 (1946) ...........................17

4    *Atlas Flooring, LLC v. Porcelanite S.A. DE C.V.*, 425 Fed. Appx. 629,
       632 (9th Cir. 2011) ................................................................................9

5

6    *Danzig v. Grynberg*, 161 Cal.App.3d 1128, 1139-40 (1984)................................17

7    *DePalma v. Westland Software House*, 225 Cal.App.3d 1534 (1990)....................17

8    *Drummond v. Temmerman, Desmarais & Phillips, LLP*, No. H030601,
       2009 WL 1611281, at *11 (Cal. Ct. App. June 10, 2009) .....................17, 18

9    *Fujifilm Corp. v. Motorola Mobility LLC*, 2014 WL 8094582, at *2
       (N.D. Cal. Nov. 19, 2014) ......................................................................6

10

11    *In re Northrop Grumman Corp. ERISA Litig.*, 2016 WL 6826171, at *4
       (C.D. Cal. Apr. 7, 2016) ...................................................................6, 8, 20

12    *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir.
       1992)..........................................................................................13

13

14    *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) ............................14

15    *Lincoln Nat. Life Ins. v. Transamerica Fin. Life Ins. Co.*, 2010 WL
       3892860, at *4 (N.D. Ind. Sept. 30, 2010) ....................................................20

16    *Powers v. Powers*, 714 S.W.2d 384, 389 (Tex. App.—Corpus Christi-
       Edinburg 1986, no writ) ..................................................................17

17

18    *Primiano v. Cook*, 598 F.3d 558, 563-64 (9th Cir. 2010) ..............................15, 16

19    *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 626 (9th Cir.
       1996)..........................................................................................11, 12

20    *Sumotext Corp. v. Zoove, Inc.*, 2020 WL 264701, at *6 (N.D. Cal. Jan.
       17, 2020)....................................................................................14

21

22    *U.S. ex rel. Agate Steel, Inc. v. Jaynes Corp.*, 2015 WL 1546717, at *2
       (D. Nev. Apr. 6, 2015).....................................................................6, 7, 8

23    *U.S. v. Hankey*,
       203 F.3d 1160 (9th Cir. 2000)..........................................................13

24

## **<u>Statutes</u>**

25

Gen. Ca. Code § 3300................................................................................17

26

## **<u>Other Authorities</u>**

27

Am. Heritage Dict. of the English Language, 301 (1969)........................11

28    Webster's Ninth New Collegiate Dictionary, 294 (1989) ........................11

**<u>Rules</u>**

Fed. R. Civ. P. 26e(1)(A) ............................................................................................. 9

Fed. R. Evid. 702 ....................................................................................................... 16

Freeman Mathis
& Gary, LLP
Attorneys at Law

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE OR EXCLUDE
PORTIONS OF MS. RUSNAK'S DAMAGES OPINIONS

**INTRODUCTION:**

Atlantic Specialty Insurance Company (the "Defendant" or "ASIC") previously designated Mr. Jay Shapiro as its damages expert.  Mr. Shapiro timely produced his expert report and Universal Cable Productions, LLC and Northern Entertainment Productions, LLC (the "Plaintiffs") deposed him.  *See* Exhs. 1 and 2.  Unfortunately, Mr. Shapiro died after the close of discovery in this matter.

ASIC moved for leave to substitute Ms. Shannon Rusnak for Mr. Shapiro, and advised Plaintiffs and the Court that Ms. Rusnak's methodologies and opinions were anticipated to be substantially similar to Mr. Shapiro's.  Dkt. No. 160-1 at ¶ 9.  The Court granted ASIC leave to substitute Ms. Shannon Rusnak for Mr. Shapiro as ASIC's damages expert, and ASIC served Plaintiffs with Ms. Rusnak's report that same day.  *See* Exh. 3.  The report confirmed that ASIC's anticipation was correct— the methodology used by Ms. Rusnak to arrive at her opinions is substantially similar to Mr. Shapiro's methodology.  *See* Exh. 3.  Regardless, Plaintiffs now request that the Court strike or exclude portions of Ms. Rusnak's opinions on grounds that:

(1)    Ms. Rusnak's "amortization opinion" differs from Mr. Shapiro's;

(2)    Ms. Rusnak's opinions, allegedly, fail to properly construe the policy's definition of "loss" and "insurable production cost";

(3)    Ms. Rusnak's opinions are, allegedly, contrary to Plaintiffs' ordinary business practices and custom;

(4)    Ms. Rusnak's opinions are, allegedly, unreliable because she relied on Plaintiffs' own "Locked Pattern Budget" to determine the expenses Plaintiffs would have incurred but for their decision to relocate shooting;

(5)    Ms. Rusnak's opinions are, allegedly, unreliable because she accounted for tax credit and rebates Plaintiffs obtained due

1              to their decision to relocate production of DIG to Croatia and

2              New Mexico; and

3       (6)    Certain of Ms. Rusnak's opinions critiquing Plaintiffs'

4              expert's inflated calculations of extra expense damages

5              allegedly do not comport with Mr. Shapiro's opinions on the

6              same subject.

7   *See* Motion to Strike.

8         Plaintiffs' arguments are wrong, and raise no proper basis to strike, exclude, or

9   otherwise limit Ms. Rusnak's opinions or testimony.  The motion should be denied.

10                          **ARGUMENT AND AUTHORITIES**

11   **I.    Ms. Rusnak's amortization opinions are substantially similar to Mr.**

12       **Shapiro's.**

13         As ASIC noted in its reply to Plaintiffs' response to its motion for leave to

14   designate Ms. Rusnak, ASIC agrees that the methodology used by Ms. Rusnak to

15   derive her opinions should be substantially similar to the methodology used by Mr.

16   Shapiro.  *In re Northrop Grumman Corp. ERISA Litig.*, 2016 WL 6826171, at *4 (C.D.

17   Cal. Apr. 7, 2016).  ("to minimize the risk of prejudice to Defendants, the Court will

18   limit Witz's testimony to the subject matter covered in Kampner's report . . . In other

19   words, Witz's opinions must be "substantial[ly] similar" to Kampner's opinions for

20   the Court to allow his testimony."); *see also, e.g., Fujifilm Corp. v. Motorola Mobility*

21   *LLC*, 2014 WL 8094582, at *2 (N.D. Cal. Nov. 19, 2014) (limiting substituted expert's

22   opinions to subject matter of prior expert's report to alleviate prejudice to opposing

23   party); *U.S. ex rel. Agate Steel, Inc. v. Jaynes Corp.*, 2015 WL 1546717, at *2 (D. Nev.

24   Apr. 6, 2015) ("the new expert report may not provide an opinion that is contrary to or

25   inconsistent with Mr. Hafeez's opinion. While the opinions need not be identical, it is

26   reasonable to limit the new expert to findings that are substantially similar to those

27   presented by Mr. Hafeez.").   Ms. Rusnak's opinions satisfy that requirement.

28   *Compare* Exh. 1 *with* Exh. 3.

Freeman Mathis
& Gary, LLP
Attorneys at Law

Indeed, comparison of Ms. Rusnak's "amortization" opinions to Mr. Shapiro's demonstrates that the experts' opinions are substantially similar. It is undisputed, and indisputable, that both Mr. Shapiro and Ms. Rusnak opine that Plaintiffs cannot properly account for costs for episodes 7 through 10 by attributing costs incurred for those episodes to episodes 2 through 6.  *See* Exhs. 1 and 3.  Moreover, both Mr. Shapiro and Ms. Rusnak opined that where costs were incurred during the filming of episodes two through six, where such costs benefitted episodes seven through ten, such costs must be amortized across episodes two through ten.  *See id.*  Such opinions are clearly set out in both the expert reports and Mr. Shapiro's deposition.

In his report, Mr. Shapiro states:

> It is my opinion that it is improper to include as 'extra expenses' all prep and wrap expenses incurred in New Mexico and Croatia. Some of those prep expenses and wrap expenses, outlined in the PER [Plaintiffs' Expert Report], may have provided economic benefits to the final four episodes (#7-#10) and are therefore not properly considered as part of this claim.  Any amounts incurred for prep and wrap on episodes 2 through 6 that were beneficial and saved money on episodes 7 through 10 provided a benefit to Plaintiffs that reduced their overall cost of filming episodes 7 through 10.[1]  This benefit to Plaintiffs reduces the overall loss as a result of the relocation.  It is therefore not appropriate to include *all* prep and wrap expenses for episodes 2 through 6 as "extra expenses," since Plaintiffs may have recouped some of these expenses in the form of reduced expenses or cost efficiencies on episodes 7 through 10.

---

[1] The overall cost for producing episodes 7 through 10 is approximately $570,000 (13%) per episode less than the overall cost for producing episodes 2 through 6 . . . No explanation was available for this significant cost reduction [footnote in original].

Freeman Mathis
& Gary, LLP
Attorneys at Law

1  Exh. 1 at 7.

2       In his deposition, Mr. Shapiro was asked to expand upon and explain this

3  opinion:

4       Q.   What do you mean by that statement?

5       A.   Well, I notice by looking at the documents that 7 through 10,

6            the total episode costs were 13 percent lower than 2 through

7            6. And I thought one of the reasons might be that something

8            in total costs as presented in the Wunderlich report, which

9            he estimates to be extra expense, might, in fact, have

10           benefited those subsequent shows.

11      Q.   So if I understand you correctly, is it your position that the

12           prep and wrap expenses, in your view, should have been

13           amortized over the 2 through 10 episodes?

14      A.   If, in fact, they relate to the other episodes. Except, you

15           know, I don't have that kind of information. I meant it just as

16           an observation.

17  Exh. 2 at 120.

18      So, it was Mr. Shapiro's opinion that expenses incurred during the filming of

19  episodes 2 through 6 that benefited episodes seven through 10 must be amortized

20  across episodes two through ten rather than simply accounted for as expense for the

21  episodes in which the expense was incurred. *Id.*

22      That is precisely Ms. Rusnak's opinion as well.  In her report she states:

23      7.   I further reduced the extra expenses by the amortized New

24           Mexico expenses which should have been allocated to

25           episodes 7 through 10.  As noted above, there were no Prep

26           or Wrap expenses allocated episodes 7 through ten and very

27           limited Amort/All Series expenses were allocated to these

28           episodes.   As noted on Schedule 3, episode 2 through 6

Freeman Mathis
& Gary, LLP
Attorneys at Law

-8-

amortized costs for New Mexico totaled $1,046,691 per episode; whereas, amortized costs for episode 7 through 10 totaled only $229,977 per episode. By redistributing all the costs evenly across episodes 2 through 10, I arrive at an amount of $638,707 per episode, or $3,418,534 for episodes 2 through 6. The $3,418,534 amount resulted in an $1,814,922 overstatement and reduction to the extra expenses.

Exh. 3 at 9.

These opinions are substantially similar, which is what is required. *See In re Northrop Grumman*, 2016 WL 6826171, at *4 (substitute expert's opinions should be "substantially similar," but need not be identical, to prior expert's opinions); *see also Fujifilm Corp.*, 2014 WL 8094582, at *2 (same); *Jaynes Corp.*, 2015 WL 1546717, at *2 (same).

While ignoring that it was Mr. Shapiro's opinion—just like it is Ms. Rusnak's—that costs incurred during the production of episodes 2 through 6 that benefit the production of episodes 7 through 10 must be amortized over episodes 2 through 10, Plaintiffs contend that Mr. Shapiro's and Ms. Rusnak's opinions are not substantially similar because Mr. Shapiro was unable to reduce his opinion to a final dollar amount. *See* Motion at 9. However, that argument ignores that the reason Mr. Shapiro was unable to calculate a precise figure. In his report, Mr. Shapiro noted that "My analysis is based on documents, data, and information available to me as of the date of my report. I may update my analysis as appropriate, should additional information become available . . . ." Exh. 1 at 4. In his deposition he noted that he was unable to calculate the amount of expenses that should be amortized across episodes 2 through 10 because he "did not have the kind of information" necessary to calculate that number and, therefore, could only offer his opinion "as an observation." Exh. 2 at 119.

So, while Mr. Shapiro stated that he did not have the information available to

Freeman Mathis
& Gary, LLP
Attorneys at Law

1   him in April 2017 to calculate the amount of costs that should be amortized across all

2   nine episodes;[2] Ms. Rusnak identified the information needed and made the

3   calculation. *Compare* Exh. 1 *with* Exh. 3.  The Ninth Circuit instructs that an expert

4   may testify regarding updated damage calculations where the expert is aware of more

5   current information that allows the expert to update the expert's damage calculations.

6   *Atlas Flooring, LLC v. Porcelanite S.A. DE C.V.*, 425 Fed. Appx. 629, 632 (9th Cir.

7   2011) ("contrary to Porcelanite's argument, the district court did not abuse its

8   discretion when it allowed Mr. Preber to testify about his updated damage calculations.

9   Mr. Preber did not issue a new report. Rather, he updated his report (using the same

10  methodology) based on more current information reflecting ongoing damages."); *see*

11  *also* Fed. R. Civ. P. 26e(1)(A).  Both Mr. Shapiro and Ms. Rusnak recognized that

12  Plaintiffs are attempting to transfer or "front load" expenses for episodes 7 to 10 onto

13  the production expenses of episodes 2 to 6. *See* Exhs. 1 and 3.  The jury is entitled to

14  consider evidence on this issue, and Plaintiffs' argument that Ms. Rusnak's

15  "amortization" opinion constitutes a new, substantially different opinion is, quite

16  simply, wrong.

17  **II.    Ms. Rusnak's "amortization" opinion properly applies the policy's**

18  **definition of "loss."**

19          Plaintiffs next contend that Ms. Rusnak's opinion regarding the proper

20  amortization of costs should be struck because, they say, Ms. Rusnak's "Amortization

21  Deduction is not permitted by the Policy." Motion at 9.  Again, Plaintiffs are wrong.

22          The policy provides:

23              I.      INSURING AGREEMENT

24                  We agree to pay to you such loss (as defined in Paragraph

25

26  _____

27  [2] Records indicate that Mr. Shapiro had the same information available to Ms. Rusnak; ASIC surmises that due to the a lack of clarity in Plaintiffs' financial records

28  and other documents that Mr. Shapiro did not appreciate that he had the data from which he could render a calculation applying the methodology set forth in his report.

Freeman Mathis
& Gary, LLP
Attorneys at Law

VII) not including loss of earnings or profit, as you sustain by reason of such extra expense you necessarily incur as a result of the interruption, postponement, cancellation, relocation, curtailment or abandonment of an Insured Production due to the following:

1.  The loss must be a direct result of an unexpected , sudden or accidental occurrence entirely beyond your control to include: . . .

   g)  Imminent peril, defined as certain, immediate and impending danger of such probability and severity to persons or property that it would be unreasonable or unconscionable to ignore.

*See* Dkt. 244-4 at ATL003103.

"Loss" is defined in the Policy as:

   IX.  DEFINITION OF LOSS

   The amount of your loss will be determined based on:

   1.  All necessary "Insurable Production Cost" you incur to complete the "Insured Production" that exceeds the amount of "Insurable Production Code" you would have incurred if the covered cause of loss had not occurred.

   2.  All other necessary expenses that reduce the amount of loss otherwise payable.

   3.  Your loss will not include loss of earnings of profit . . . .

*See* Dkt. 244-4 at ATL003106.

The term "Insurable Production Cost" as defined in the Policy includes:

Freeman Mathis
& Gary, LLP
Attorneys at Law

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE OR EXCLUDE
PORTIONS OF MS. RUSNAK'S DAMAGES OPINIONS

All *costs*, including overhead and interest on loans chargeable directly to an "Insured Production" or series of productions. Insurable Production Cost also includes any amount of other overhead only when declared at the time you declare an "Insured Production" or series of productions. The following costs shall not be included in "Insurable Production Cost":

(a)   Royalties Term Deals for Executive Producer(s), Package Fee & Publicity, residuals, premiums paid for this insurance, and personal property taxes;

(b)   Story, scenario, music rights, and sound rights, except with respect to television series, specials and pilots; and

(c)   "Continuity", except when a period of suspension due to covered loss or damages exceeds ninety (90) days.

(d)   Any other costs specifically stated not to be "Insurable Production Costs" in an endorsement to this policy.

*See* Dkt. 244-4 at ATL003081-82 (emphasis added).

Accordingly, to determine the amount of damages, the jury must determine the amount of "costs" attributable to Plaintiffs' decision to relocate the production of DIG from Israel to Croatia and New Mexico.   The policy does not define the term "costs" so that term must be construed according to its plain, ordinary meaning.  *Stanford Ranch, Inc. v. Maryland Cas. Co*., 89 F.3d 618, 626 (9th Cir. 1996) ("The rules regarding interpretation of insurance contracts in California are well settled. The words of the policy are to be interpreted according to their ordinary meaning, i.e., according to the plain meaning which a layperson would ordinarily attach to them. If the meaning a layperson would ascribe to the contract language is not ambiguous, there is no place for interpretation and the court must simply apply that meaning.") (internal citations and quotations omitted).

According to its plain meaning, a "cost" is "1. An amount paid or required in

Freeman Mathis
& Gary, LLP
Attorneys at Law

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE OR EXCLUDE
PORTIONS OF MS. RUSNAK'S DAMAGES OPINIONS

payment for a purchase. 2. A loss or penalty : detriment." Am. Heritage Dict. of the English Language, 301 (1969); *see also* Webster's Ninth New Collegiate Dictionary, 294 (1989) (defining "cost" to mean: "1 a: the amount or equivalent paid or charged for something : price b : the outlay or expenditure (as of effort or sacrifice) made to achieve an object 2 : loss or penalty incurred in gaining something.").

Plaintiffs do not dispute that there were "no Prep or Wrap expenses allocated episodes 7 through 10 and very limited Amort/All Series expenses were allocated to these episodes." Exh. 3 at 9. Plaintiffs also do not dispute that the Prep, Wrap, and All Series expenses identified by Ms. Rusnak incurred in the production of episodes 2 to 6 benefited the production of episodes 7 through 10 and constitute costs to product those episodes. *See* Motion to Strike at 10-11. Pursuant to the plain meaning of the term "costs," as well as the accounting principles identified by Ms. Rusnak in her opinion, it is not proper to allocate all Prep and Wrap costs, as well as the substantial majority of Amort/All Series costs, solely to episodes 2 through 6, when those costs were incurred to produce episodes 2 through 10. Exh. 3 at 9. Ms. Rusnak's opinion properly construes the policy, and Plaintiffs' argument to the contrary is meritless.

## III.   Plaintiffs' industry custom and practice argument is irrelevant.

Plaintiffs further contend that Ms. Rusnak's opinion is improper because "television production industry custom and practice do not permit this offset [amortization of costs amongst all episodes to which the costs apply]." Motion to Strike at 12. However, the issue in this lawsuit is whether Plaintiffs "loss" or "insured production cost" is covered by ASIC's policy, not how Plaintiffs' internal accounting, or even the television industry as a whole, would account for costs.

As noted above, the damages issue in this matter concerns the costs incurred due to Plaintiffs' decision to relocate the filming of DIG from Israel to Croatia and New Mexico. *See* Dkt. 244-4 at ATL003081-82. To constitute covered damages, those expenses must constitute an "Insurable Production Cost" under ASIC's policy. *See id.* Plaintiffs internal accounting practices are simply not relevant to this issue. *Id.*

Freeman Mathis
& Gary, LLP
Attorneys at Law

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE OR EXCLUDE
PORTIONS OF MS. RUSNAK'S DAMAGES OPINIONS

In addition, this argument is waived and should not be considered.  On January 19, 2017, the Court entered a scheduling order with a motion deadline of May 22, 2017.  *See* Dkt No. 34.  On April 25, 2017, ASIC timely served Mr. Shapiro's expert report on Plaintiffs.  Exh. 1.  Amongst other things, Mr. Shapiro opined that Plaintiffs damages claim should be proportionally reduced to take account of the costs benefiting episodes seven through ten incurred during the production of episodes two through six.  Exh. 1 at 7.  Plaintiffs did not move the Court to exclude Mr. Shapiro's opinion on the basis that Mr. Shapiro's opinion was not consistent with television production industry custom and practice by the Court's motion deadline.  Plaintiffs cannot now, more than two and a half years later, move to strike Ms. Rusnak's substituted opinion on a basis that was waived as to Mr. Shapiro.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (noting where scheduling order bars further motions after cutoff date, a district court may deny late filed motion solely on that ground).[3]

## IV.    Ms. Rusnak is qualified to opine regarding Plaintiffs' expense.

Plaintiffs also contend that the Court should strike Ms. Rusnak's opinions because, they say, she is not qualified to offer them.  While the Court certainly has a duty to ensure that expert witnesses have the appropriate qualifications, knowledge, skill, experience, training, or education on the subject matter to assist the jury in deciding the disputed issues of fact, *U.S. v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); Plaintiffs argument that Ms. Rusnak is not qualified to assist the jury is completely without basis.

As Plaintiffs are well aware, Ms. Rusnak has "been providing forensic accounting services for over 35 years" and has "performed thousands of assignments involving measurement of damages, including costs stemming from breach of

---

[3] In addition, ASIC objects to Ms. Barbara-Ann Markus-Caffrey's affidavit on grounds that she was not timely disclosed as an expert qualified to offer the opinions set forth in her affidavit at Dkt. 244-2.

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE OR EXCLUDE
PORTIONS OF MS. RUSNAK'S DAMAGES OPINIONS

Freeman Mathis
& Gary, LLP
Attorneys at Law

contract." Exh. 3 at 1. Her CV, attached to her expert report, provides that she has "for over 30 years, Shannon Rusnak has been retained in hundreds of engagements involving the evaluation and quantification of economic damages including lost profits, ***extra expenses***, personal injury, product liability, professional liability, product recall and contamination, extortion, fidelity and financial condition analyses." Exh. 4 at Internal Exh. 1 (emphasis added). Her CV also notes that she is a Certified Public Accountant, a Certified Fraud Examiner, and a Master Analyst in Financial Forensics. Exh. 4 at Internal Exh. 1. Her experience includes a "wide variety of industries both domestic and international including oil and gas, petrochemical, ammonia plants, refineries, power generation, transportation, marine, shipbuilding, computer chips, medical centers, hotel & resort properties, food distribution, restaurants, newspaper production, printing companies, lumber, cement, terminal/storage facilities, biodiesel plants and other manufacturing, retail and service industries." Exh. 3 at Internal Exh. 1. Indeed, Plaintiffs cite no authority, and do not otherwise argue, that anything about accounting in the television production industry differs from the accounting and evaluation principles Ms. Rusnak applies everyday as a certified public accountant and Master Analyst in Financial Forensics. *See* Motion at 12-13. Ms. Rusnak is qualified by education and vast experience to provide the jury with her opinion regarding the extra expense Plaintiffs incurred in their decision to relocate the production of DIG. *See* Exh. 3.

Further, while Plaintiffs contend that Ms. Rusnak relies on mere ipse dixit to support her opinion, review of her report demonstrates this allegation is simply wrong. Ipse dixit is "an assertion made but not proved." *Sumotext Corp. v. Zoove, Inc.*, 2020 WL 264701, at *6 (N.D. Cal. Jan. 17, 2020). "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Ms. Rusnak, however, has not relied on mere ipse dixit to render her opinions. *See* Exh. 3.

Freeman Mathis
& Gary, LLP
Attorneys at Law

In her report, Ms. Rusnak explains that "the amortized New Mexico expenses . . . should have been allocated to episodes 7 through 10" because "there were no Prep or Wrap expenses allocated episodes 7 through 10 and very limited Amort/All Series expenses were allocated to these episodes." Exh. 3 at 9. Rather than rely merely on her own ipse dixit, Ms. Rusnak explained the factual basis for her accounting, that episodes 7 through 10 benefited from Prep, Wrap, and Amort/All Series expenses to which no or very little expense was allocated pursuant to Plaintiffs' internal accounting. *Id.* On that basis, Ms. Rusnak concluded it was proper to "redistribute[e] all the costs evenly across episodes 2 through 6." *Id.* That is not an ipse dixit opinion; rather it is based on a reasoned approach to the data and Plaintiffs' claimed expenses, under which, in Ms. Rusnak's opinion, Plaintiffs are attempting to improperly account for the expenses incurred to produce DIG. *See* Exh. 3.

## V. Plaintiffs' incorrect attack on Ms. Rusnak's methodology is not a proper basis to strike Ms. Rusnak's opinion.

Plaintiffs also contend that the court should strike Ms. Rusnak's "amortization deduction" opinion because, they say, Ms. Rusnak "improperly accounted for such a deduction only in the 'as is' world and not in the 'but for' world. Plaintiffs' argument betrays a misunderstanding of the accounting principles forming the basis of Ms. Rusnak's opinion, and provides no basis to strike Ms. Rusnak's opinion. Moreover, even assuming for the sake of argument that Plaintiffs' position were correct—which it is not—Plaintiffs' attack on Ms. Rusnak's methodology goes to the weight the jury would be entitled to give Ms. Rusnak's opinion, it is not a basis to strike the opinion. *See Primiano v. Cook*, 598 F.3d 558, 563-64 (9th Cir. 2010).

*Ms. Rusnak properly accounted for Plaintiffs' extra expenses.*

Plaintiffs contend that Ms. Rusnak's opinion is wrong because, they say, "Ms. Rusnak artificially narrowed her calculation of Plaintiffs' extra expenses from $6,899094 to $5,084,172 by (1) reducing her calculation of the actual amounts spend on episodes 2-6 while (2) leaving the budgeted amounts for those episodes

Freeman Mathis
& Gary, LLP
Attorneys at Law

untouched[.]" Motion at 13.  However, that is a proper accounting based upon the accounting principles identified in Ms. Rusnak's opinion.

As noted above, the issue under the policy is what extra expenses were caused by Plaintiffs' decision to relocate the filming of DIG from Israel to Croatia and New Mexico.  To do so, the jury must necessarily determine whether costs incurred by Plaintiffs are applicable to the filming of episodes 2-6 or whether such costs are applicable to episodes 2-6 as well as episodes 7-10.  *See* Exh. 3.  In her report, Ms. Rusnak identified three categories of expense that should have been amortized over episodes 2-10 rather than solely over episodes 2-6.  Exh. 3.  Plaintiffs now contend that certain other categories of expense should also be amortized over episodes 2-10, but Plaintiffs are adjusting the "but for" budget by dollars that were never contemplated in the budget to begin with and there is no evidence supporting Plaintiffs' argument.  *See* Exh. 1 to Plaintiffs' Motion to Strike.  Accordingly, Plaintiffs argument is meritless and provides no basis to strike Ms. Rusnak's opinion.

Moreover, even assuming for the sake of argument that Plaintiffs' amortization argument demonstrated additional expenses exist that should be amortized over episodes 7-10—which it does not—Plaintiffs' argument goes to the weight the jury is entitled to give Ms. Rusnak's opinion, not its admissibility.  *Primiano*, 598 F.3d at 563–64.  Federal Rule of Evidence 702 controls the admissibility of Ms. Rusnak's opinion. That rule establishes several requirements for admissibility: (1) the evidence has to "assist the trier of fact" either "to understand the evidence" or "to determine a fact in issue"; (2) the witness has to be sufficiently qualified to render the opinion:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles

1    and methods, and (3) the witness has applied the principles and

2    methods reliably to the facts of the case

3  Fed. R. Evid. 702; *Primiano*, 598 F.3d 558, 563–64.

4          The Ninth Circuit instructs that when an expert meets the threshold established

5  by Rule 702, the expert may testify, and the jury is entitled to decide how much weight

6  to give that testimony. *Id.* Clearly, there exists a disputed issue of fact regarding the

7  amount of extra expense caused by Plaintiffs' decision to relocate the production of

8  DIG from Israel to Croatia and New Mexico. Moreover, for the reasons noted above,

9  Ms. Rusnak is qualified to opine regarding the amount of such expense following her

10 review of the Plaintiffs' financial records and other documents. Exh. 3. Plaintiffs'

11 attack on the methodology supporting Ms. Rusnak's opinion simply provides no

12 proper basis to strike her opinion or otherwise limit her testimony. *Primiano*, 598 F.3d

13 at 563–64.

14 **VI.    Plaintiff's argument that tax credits and rebates cannot be considered by**

15 **the jury is wrong.**

16         Plaintiffs continue to misapply California law to argue that the Court should

17 strike Rusnak's opinions vis-à-vis tax credits Plaintiffs received. As noted in ASIC's

18 Response to Plaintiffs' Motion in Limine No. 4, evidence of tax credits should be

19 excluded only if Plaintiffs received the tax credits as a result of ASIC's alleged breach

20 of contract. *See* Gen. Ca. Code § 3300; *DePalma v. Westland Software House*, 225

21 Cal.App.3d 1534 (1990) (*citing Powers v. Powers*, 714 S.W.2d 384, 389 (Tex. App.—

22 Corpus Christi-Edinburg 1986, no writ) ("We are unaware of any principle or authority

23 which would allow an offset to the party who has breached a contract for a 'tax

24 savings' the non-breaching party 'realized' as a result of the breach") (emphasis

25 added)); *Anheuser-Busch, Inc. v. Starley* 28 Cal.2d 347 (1946); *Danzig v. Grynberg*,

26 161 Cal.App.3d 1128, 1139-40 (1984) (tax benefits received from investment

27 irrelevant in restitution for fraud); *see also Drummond v. Temmerman, Desmarais &*

28 *Phillips, LLP*, No. H030601, 2009 WL 1611281, at *11 (Cal. Ct. App. June 10, 2009)

Freeman Mathis & Gary, LLP
Attorneys at Law

(holding that district court properly admitted evidence of tax credits).   However, Plaintiffs did not incur relocation costs because of ASIC. Rather, Plaintiffs re-located production because of an armed conflict in Israel. *See* Dkt. 10 – Plaintiff's First Amended Complaint.

Indeed, Plaintiffs' own evidence shows that they negotiated tax credits with Canada and Israel to reduce overhead costs for DIG's production prior to the events giving rise to Plaintiffs' claims. Plaintiffs' also admit they received additional reductions to overhead costs when Croatia and New Mexico paid tax credits to relocate production. Ignoring these credits would ignore the amount of insurable production costs associated with relocation. Plaintiffs cannot use insurance to receive a windfall.

Additionally, the Policy does not preclude testimony regarding these tax credits. The Policy explicitly provides that the amount of an covered loss is determined "based on…[a]ll necessary 'Insurable Production Cost' you incur to complete the 'Insured Production' that exceeds the amount of the 'Insurable Production Cost' you would have incurred if the covered cause of the loss had not been incurred." *See* Dkt. 244-4 at ATL003106. The Policy defines "Insurable Production Cost" to include "overhead" (i.e. taxes). It follows that, if the Policy includes taxes as a component of "insurable production cost," it includes tax credits therein as well.  *See id.*

Plaintiffs plainly understood this because Plaintiffs included tax credits as a component of insurable production costs. When Plaintiffs applied to insure "DIG, Season 1," Plaintiffs provided ASIC with information to underwrite the production. See Exh. 5 to Deposition of Jay Shapiro, Exh. 8 to Deposition of Andrea Garber (AONNBCU0001748-50); *see also* Deposition of Andrea Garber at p.140, ¶¶ 7 – 15.

Subsequent production and email communications among Plaintiffs' employees clarify the mathematical calculations wherein Plaintiffs determine the gross cost of production, but then subtract various tax credits to determine the net production cost. *See, e.g.*, Exh. 6 to Deposition of Jay Shapiro, UCP004971 (subtracting "IS Tax Cr" (i.e. Israel Tax Credit) and "CN Tax Cr" (i.e. Canada Tax Credit) from estimated gross

Freeman Mathis & Gary, LLP
Attorneys at Law

1    insurable costs).

2        Furthermore, both Plaintiffs' witness, Barbara Ann Markus-Caffrey, Vice

3    President of Production Finance, and ASIC's witness, Wanda Phillips, testified that

4    tax credits were included both when estimating costs of production and when

5    calculating final costs of production. *See* Deposition of Barbara Ann Markus-Caffrey

6    at p.81, ¶¶ 13-17; p.82, ¶¶ 1-5; p.83, ¶ 4 – p.84, ¶ 4; p.86, ¶¶ 2 – 8, 12 – 17; p.101, ¶

7    11 – p.102, ¶ 13; p.104, ¶¶ 2 – 25; Corporate Representative Deposition of Barbara

8    Ann Markus-Caffrey at p.14, ¶ 25; p.15, ¶¶ 4 – 16, p.16 ¶ 4 – p.18, ¶ 8 (all objections

9    omitted); Deposition of Wanda Phillips, p.274, ¶ 20 – p.276, ¶ 6 (objections omitted).

10       As such, Plaintiffs' motion ignores the plain fact that Plaintiffs did not incur

11   certain overhead costs as a result of receiving these tax credits. If Plaintiffs prevail on

12   excluding Rusnak's opinions on this topic, then they will present evidence and

13   testimony to the jury of costs that Plaintiffs did not incur. Therefore, their damages

14   evidence will go uncontroverted even though Plaintiffs received these tax credits for

15   reasons unrelated to ASIC's alleged breach of contract or duty of good faith.

16   Plaintiffs' argument that Ms. Rusnak improperly reduced the extra expenses incurred

17   by Plaintiffs by accounting for additional tax credits and rebate savings enjoyed by

18   Plaintiffs as a result of the relocation of the DIG filming is wrong.  Their motion to

19   exclude these portions of Ms. Rusnak's opinion from testimony should be denied.

20   **VII.   Mr. Shapiro and Ms. Rusnak each opine that Mr. Wunderlich's extra-**

21   **expense calculation included duplicative and inflated expenses.**

22       Finally, Plaintiffs contend that various critiques Ms. Rusnak makes of Mr.

23   Robert Wunderlich's extra expense calculation constitute "new opinions" and should

24   be struck.  However, these opinions are substantially similar to ASIC's deceased

25   expert's, Mr. Jay Shapiro's, opinions and are proper under the Court's order granting

26   leave to substitute Ms. Rusnak for Mr. Shapiro.  Each expert's opinion is that Mr.

27   Wunderlich's calculation of Plaintiffs' extra expenses are improperly inflated.

28   Compare Exh. 1 with Exh. 3.

**Freeman Mathis
& Gary, LLP**
Attorneys at Law

For example, in his report, Mr. Shapiro expressed his opinion that:

> It appears that Plaintiff's Claim, which purports to represent extra expenses incurred, may **not** include sufficient extractions from the total amount of expenses incurred to reach the number of "extra expenses" that would not have been incurred had the production of "Dig" stayed in Israel.  That results in a damages calculation that is too high.

Exh. 1 at 5.

Mr. Shapiro expanded on this in his deposition:

> Q. . . . why don't you tell me: What are you trying to convey in the paragraph that begins, "It appears the plaintiffs' claim"?
>
> A.   Well, I realize that my maximum number is materially different than plaintiffs' claim. So I'm making a reference here that it appears that the extra expenses in that claim and the technique used which had these extractions -- maybe that sufficient extractions from the total amount were not made because the remaining amount is just too high.

Exh. 2 at 99-100.

Ms. Rusnak agrees with Mr. Shapiro's opinion, and has opined, as Plaintiffs note:

- "Actual costs in Israeli Prep account 1095 were $213,624 under budget due at least in part to the early termination of filming in Israel which further inflates Wunderlich's overstatement of extra expenses." Exh. 3 at 5.

- "Actual costs of $352,528 in Israeli Wrap account 1098 were $113,307 under budget due at least in part to early termination of filming in Israel, which further inflates Wunderlich's overstatement of extra expenses." Exh. 3 at 5.

Freeman Mathis & Gary, LLP
Attorneys at Law

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE OR EXCLUDE
PORTIONS OF MS. RUSNAK'S DAMAGES OPINIONS

- "Actual costs in Israeli Amort/All Series account 1096 were $938,179 under budget due at least in part to early termination of filming in Israel, which further inflates Wunderlich's overstatement of extra expenses." Exh. 3 at 6.
- Mr. Wunderlich's "net claimed expenses" are "inflated" based upon various computations. Exh. 3 at 5-6

These opinions are substantially similar to Mr. Shapiro's. Both conclude that Mr. Wunderlich's calculation of Plaintiffs' extra expenses are "too high" or "inflated." *Compare* Exh. 2 at 100-101 *with* Exh. 3 at 5-6. While the opinions are not identical, there is no requirement that they be so. *See In re Northrop Grumman Corp.*, 2016 WL 6826171, at *4; *Lincoln Nat. Life Ins. v. Transamerica Fin. Life Ins. Co.*, 2010 WL 3892860, at *4 (N.D. Ind. Sept. 30, 2010) (permitting substitute expert "to review all of the evidence, conduct his own independent analysis, and express his opinion in his own words" so long as opinions are limited to the same subject matter as the prior expert's opinions without substantial change). Accordingly, Ms. Rusnak is entitled to express her own opinions based upon her own review of the evidence. *Id.* Mr. Rusnak and Mr. Shapiro expressed substantially similar opinions, and Plaintiffs' argument that certain of Ms. Rusnak's opinions should be struck because they were not specifically expressed does not support the relief requested. *Id.*

## CONCLUSION

For the reasons noted above, Ms. Shannon Rusnak's opinions, expressed in her report of January 17, 2019 are substantially similar to ASIC's deceased expert Mr. Jay Shapiro. Plaintiffs' arguments that Ms. Rusnak's opinions should be struck and that testimony regarding her opinions should be excluded are meritless, and the motion to strike should be denied.

Freeman Mathis
& Gary, LLP
Attorneys at Law

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  February 4, 2020        MARC J. SHRAKE
                                FREEMAN MATHIS & GARY, LLP

                                        -and-

                                CHRISTOPHER W. MARTIN (*Pro Hac Vice*)
                                MELINDA R. BURKE (*Pro Hac Vice*)
                                WILLIAM E. McMICHAEL (*Pro Hac Vice*)
                                MARTIN, DISIERE, JEFFERSON
                                & WISDOM LLP

                                By:     */s/ Christopher W. Martin*
                                Attorneys for Defendant ATLANTIC
                                SPECIALTY INSURANCE COMPANY

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE OR EXCLUDE
PORTIONS OF MS. RUSNAK'S DAMAGES OPINIONS

# DECLARATION OF MARC J. SHRAKE

I, Marc J. Shrake, declare as follows:

1.      I am an attorney authorized to practice before all California courts and before this Court and am a partner with the law firm of Freeman Mathis & Gary, LLP, attorneys for Defendant Atlantic Specialty Insurance Company.

2.      I have personal knowledge of the matters set forth in this Declaration, and if called upon to testify to them, could and would do so.

3.      I make this Declaration in conjunction with, and in support of, Atlantic Specialty's Opposition to Plaintiffs' Motion to Strike or Exclude Portions of Ms. Rusnak's Damages Opinions.

4.      Attached as Exhibit 1 is a true and correct copy of the Expert Report of Jay Shapiro produced in this case.

5.      Attached as Exhibit 2 is a true and correct copy of the transcript of the Deposition of Jay J. Shapiro given in this case and true and correct copies of Exhibits 5 and 6 to that deposition.

5.      Attached as Exhibit 3 is a true and correct copy of the Expert Report produced by Shannon Rusnak in this case.

6.      Attached as Exhibit 4 are true and correct copies of excerpts from the written transcript of the Videotaped Deposition of Barbara-Ann Markus-Caffrey given in this case.

7.      Attached as Exhibit 5 are true and correct copies of excerpts from the written transcript of the Videotaped Deposition of Barbara-Ann Markus-Caffrey Pursuant to Federal Rule 30(b)(6) given in this case.

Freeman Mathis
& Gary, LLP
Attorneys at Law

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE OR EXCLUDE
PORTIONS OF MS. RUSNAK'S DAMAGES OPINIONS

8.    Attached as Exhibit 6 are true and correct copies of excerpts from the written transcript of the Videotaped Deposition of Wanda Phillips given in this case.

I declare under penalty of perjury of the laws of the United States of America and the laws of the State of California that the foregoing is true and correct and that this declaration is executed this 4th day of February 2020 at Los Angeles, California.

DATED:  February 4, 2019              MARC J. SHRAKE


                                      By:    /s/ Marc J. Shrake
                                             Marc J. Shrake

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE OR EXCLUDE
PORTIONS OF MS. RUSNAK'S DAMAGES OPINIONS

Freeman Mathis
& Gary, LLP
Attorneys at Law