**EXHIBIT 6**

Page 1

C O N F I D E N T I A L
IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION
------------------------------------------

UNIVERSAL CABLE PRODUCTIONS, LLC,
a Delaware limited liability company,
and NORTHERN ENTERTAINMENT
PRODUCTIONS, LLC, a Delaware limited
liability company,

                              Plaintiffs,

          -against-               Case No.
                                     2:16-cv-
ATLANTIC SPECIALTY INSURANCE       4435-PA-MRW
COMPANY, a New York insurance
company,

                              Defendant.

------------------------------------------
            C O N F I D E N T I A L
               May 31, 2017
 Videotaped deposition of WANDA PHILLIPS



Reported by:
Joseph R. Danyo

Job No. 123996

Page 2

May 31, 2017
10:06 a.m.

Videotaped deposition of WANDA PHILLIPS, taken by Plaintiffs, pursuant to Agreement and Subpoena, held at Two World Financial Center, New York, New York, before Joseph R. Danyo, a Shorthand Reporter and Notary Public within and for the State of New York.

Page 3

APPEARANCES:

MITCHELL SILBERBERG & KNUPP
Attorneys for Plaintiffs
  11377 West Olympic Boulevard
  Los Angeles, California 90064
By:  LUCIA COYOCA, ESQ.

STRASBURGER & PRICE
Attorneys for Defendant
  901 Main Street
  Dallas, Texas 75202

By:  MICHAEL KEELEY, ESQ.

Also Present:
  TIMOTHY CARTER,
    Mitchell Silberberg & Knupp LLP,
    Summer Associate
  CARLOS LOPEZ,
    Videographer

~oOo~

Page 4

THE VIDEOGRAPHER: This is the start of media label number 1 in the video-recorded deposition of Wanda Phillips in the matter of Universal Cable Productions, LLC, et al. versus Atlantic Specialty Insurance Company. This deposition is being head at Two World Financial Center, New York, New York, on May 31, 2017 at approximately 10:06 a.m. My name is Carlos Lopez. I am the legal video specialist from TSG Reporting. The court reporter is Joe Danyo in association with TSG Reporting, Inc.
    Will counsel please introduce themselves for the record.
    MS. COYOCA: Good morning, Lucia Coyoca, Mitchell Silberberg & Knupp, on behalf of plaintiffs Universal Cable Productions and Northern Entertainment Productions, and I am accompanied today by Timothy Carter, who is a law student and a summer associate at our firm.
    MR. KEELEY: Good morning. Michael Keeley, Strasburger & Price, on behalf of

Page 5

defendant Atlantic Specialty Insurance Company.
    THE VIDEOGRAPHER: Would the court reporter please swear in the witness.
W A N D A  P H I L L I P S, having been first duly sworn by Joseph R. Danyo, a Notary Public, was examined and testified as follows:
EXAMINATION BY MS. COYOCA:
    Q. Good morning, Ms. Phillips.
    A. Good morning.
    Q. As I indicated, my name is Lucia Coyoca, and I represent the plaintiffs in this matter. Could you please state your full name and address for the record.
    A. My name is Wanda Lide Phillips. My address is 56 Locust Street, Jersey City, New Jersey, 07305.
    Q. Ms. Phillips, have you had your deposition taken before today?
    A. No.
    Q. Are you represented by counsel here today?
    A. Yes.
    Q. Is that Mr. Keeley?
    A. That's correct.

Page 274

1   Thank you very much.                               07:13
2       MR. KEELEY:  We will take a short
3   break.  I am going to have a few
4   questions, Ms. Phillips.
5       THE VIDEOGRAPHER:  The time is 7:14
6   p.m.  We are off the record.                        07:13
7       (Recess taken from 7:14 p.m. to 7:23
8   p.m.)
9       THE VIDEOGRAPHER:  The time is 7:23
10  p.m.  We are back on the record.
11  EXAMINATION BY MR. KEELEY:                          07:23
12  Q.  Ms. Phillips, are you okay?
13  A.  Yes.
14  Q.  Been a very long day.
15  A.  Yes.
16  Q.  I'm sorry, but I have got a few                 07:23
17  questions for you, but I will do my best to make
18  them short and get you out of here as quickly as
19  we can.  Okay?
20      Earlier today Ms. Coyoca asked you
21  the following question:  In calculating the loss,  07:23
22  is the amount of any tax credit that the
23  production company might receive or does receive,
24  does that go into the equation at all in
25  calculating loss under the policy?  Do you

Page 275

1   remember her asking you that question?              07:23
2   A.  I recall.
3   Q.  Okay.  I want to make sure I
4   understood or understand your answer, so could
5   you please explain to me how tax credits that NBC
6   might receive in connection with a production      07:23
7   would figure into a loss that it might incur?
8       MS. COYOCA:  Objection.  Assumes
9   facts not in evidence.  Vague and
10  ambiguous.  Calls for a legal conclusion.
11      You can answer.  Excuse me.                     07:24
12  A.  So in a production budget, there are
13  several line items, and so you insure, for the
14  most part the production company will insure,
15  they can insure two parts.  They can insure the
16  day-to-day cost, the production costs, insurable   07:24
17  production cost.  They can also insure items such
18  as story, scenario, script, tax credits, and all
19  of those things they would lose in the event of
20  an abandonment.
21      So if we have a budget, I will just             07:24
22  use $20 million as an example, and they are
23  receiving a 10 percent tax credit, that comes off
24  the budget pretty much so they don't spend that
25  money.  It is a credit to the production company.

Page 276

1   Q.  Okay.  So let me ask you this.  Tell            07:24
2   me what your understanding would be in a
3   situation such as the claim here where NBC has
4   claimed a loss because it left production in
5   Israel and moved to Croatia and New Mexico.  In
6   calculating its loss, what effect would the fact    07:25
7   that NBC received tax credits for filming in New
8   Mexico have on the calculation of its loss?
9       MS. COYOCA:  Objection.  Potentially
10  calls for a legal conclusion.  Vague and
11  ambiguous.  Assumes facts not in evidence.          07:25
12  A.  So New Mexico is where they went
13  after the first filming where they actually
14  incurred the loss?
15  Q.  Yes.  That is one of the locations.
16  They went to New Mexico and to Croatia.             07:25
17  A.  So an example would be, if it cost
18  them $5 million to move to New Mexico but they
19  received a million dollars of that in tax
20  credits, then they have actually only lost
21  $4 million.                                         07:26
22  Q.  Okay.  So, if the extra expense that
23  an insured such as NBC incurs in moving is
24  5 million, but they receive a $1 million tax
25  credit, then the loss they would be entitled to

Page 277

1   collect under the policy would be $4 million?      07:26
2       MS. COYOCA:  Same objections as to
3   the prior question.
4   Q.  Is that correct?
5   A.  $4 million would be the amount that
6   they actually lost.                                 07:26
7   Q.  Okay.  Ms. Coyoca asked you a
8   question earlier about whether you agreed that
9   NBC and Atlantic had pretty much finalized
10  negotiations concerning the general terms and
11  conditions section of the policy prior to the      07:27
12  policy being bound.  Do you recall that?
13  A.  I just want to make sure I am clear.
14  So the policy was bound 1/1/2010.
15  Q.  Okay.
16  A.  The question was, was there still               07:27
17  negotiations to the policy wording after the
18  policy incepted?
19  Q.  Correct.
20  A.  Yes, there was.
21  Q.  Okay.  Do you recall for how long              07:27
22  there were negotiations concerning the terms of
23  the policy after 1/1/14?
24  A.  There was quite a bit of still back
25  and forth and cleaning up for quite a bit.