1
2
3
4
5
6
7
8
9
10
11

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNIVERSAL CABLE
PRODUCTIONS LLC, a Delaware
limited liability company, and
NORTHERN ENTERTAINMENT
PRODUCTIONS LLC, a Delaware
limited liability company,

        Plaintiffs,

    v.

ATLANTIC SPECIALTY
INSURANCE COMPANY, a New
York insurance company,

        Defendant.

CASE NO. 2:16-cv-4435-PA-MRW

**SECOND REVISED [PROPOSED]
FINAL PRETRIAL CONFERENCE
ORDER**

Trial Date: February 18, 2020

015825\7126273.v1

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

1.   PARTIES ............................................................................................. 1

2.   JURISDICTION AND VENUE ............................................................ 5

3.   LENGTH OF TRIAL .......................................................................... 6

4.   JURY TRIAL ...................................................................................... 6

5.   ADMITTED FACTS ........................................................................... 6

6.   STIPULATED BUT NOT ADMITTED FACTS ............................... 7

7.   CLAIMS AND DEFENSES PRESENTED AT TRIAL .................... 12

8.   ISSUES REMAINING FOR TRIAL ................................................ 40

9.   DISCOVERY ..................................................................................... 42

10.  DISCLOSURES ................................................................................. 42

11.  WITNESS LISTS .............................................................................. 46

12.  EXPERT WITNESSES ...................................................................... 46

13.  MOTIONS .......................................................................................... 47

14.  BIFURCATION ................................................................................. 48

1   Following pretrial proceedings, pursuant to F.R.Civ.P. 16, L.R. 16, the

2   Court's standing 2017 Civil Trial Scheduling Order Part III.A.1, and the Court's

3   Order filed September 15, 2016 (Dkt. 28) Part 7, IT IS ORDERED AS FOLLOWS:

4   **1.      PARTIES**

5   The parties are:

6                  a.      Plaintiffs Universal Cable Productions LLC and Northern

7                          Entertainment Productions LLC ("Plaintiffs").

8                  b.      Defendant Atlantic Specialty Insurance Company

9                          ("Defendant").

10   Each of these parties has been served and has appeared.  There are no other

11   parties named in the pleadings and not identified in the preceding paragraph.

12   **PLEADINGS WHICH RAISE THE ISSUES**

13   The pleadings which raise the issues are:

14                  a.      Plaintiffs' First Amended Complaint for (1) Breach of Insurance

15                          Contract; and (2) Breach of Implied Covenant of Good Faith

16                          and Fair Dealing (Dkt. No. 10); and

17                  b.      Defendant's Original Answer to Plaintiffs' First Amended

18                          Complaint (Dkt. No. 14).

19   **EACH CLAIM, COUNTERCLAIM, OR DEFENSE THAT HAS BEEN**

20   **DISMISSED OR ABANDONED**

21   Certain rulings have been made by this Court and by the Ninth Circuit which

22   have narrowed the claims and defenses that remain to be tried before a judgment

23   can be entered from which an appeal may be taken.  The Ninth Circuit Court of

24   Appeals "h[e]ld that [Defendant] breached its contract when it denied coverage by

25   defining Hamas' conduct as 'war' and 'warlike action by a military force.'  We . . .

26   direct the entry of summary judgment in favor of [Plaintiffs] on the first and second

27   war exclusions."  On remand, this Court found in its Order filed  November 30,

28   2019 (Dkt. No. 157) "that War Exclusions 3 and 4 do not apply to preclude

1

coverage . . . ."  In the same Order, this Court also found "that the issues of damages and Atlantic's bad faith are ready for trial . . . ."

As a result of these rulings, the trial of the remaining issues will not involve the following affirmative defenses in Defendants' Answer to First Amended Complaint (Dkt. 14):

1.      Second Affirmative Defense (Exclusion 1)

2.      Third Affirmative Defense (Exclusion 2)

3.      Fourth Affirmative Defense (Exclusion 3)

4.      Fifth Affirmative Defense (Exclusion 4)

5.      Seventh Affirmative Defense (Other Insurance)

6.      Eighth Affirmative Defense (Warranty C)

7.      Ninth Affirmative Defense (Fortuity Doctrine)

8.      Tenth Affirmative Defense (Uninsurable Claim)

9.      Eleventh Affirmative Defense (Exclusion 8, Section III -- Extra Expense)

10.     Twelfth Affirmative Defense (Exclusion 9, Section III -- Extra Expense)

11.     Thirteenth Affirmative Defense (Exclusion 10, Section III -- Extra Expense)

Defendant reserves all rights on appeal.

Defendant intends to present evidence and argument concerning the reasonableness of its belief, at the time it made its claim decision, that War Exclusions 1, 2, 3, and 4 applied to Plaintiffs' insurance claim.[1] Plaintiffs disagree that Defendant is entitled to defend against bad faith based on its alleged belief

---

[1] These exclusions are quoted in Defendant's Second, Third, Fourth, and Fifth Affirmative Defenses. It is Plaintiffs' position that those Affirmative Defenses to coverage do not remain to be tried; however, Defendant intends to rely on its belief about those exclusions in connection with its defense to bad faith at trial.

2

about Exclusions 3 and 4, which Plaintiffs contend Defendant did not rely upon as a basis for denying coverage in its denial letter.

For purposes of Plaintiffs' extracontractual and damages claims that remain to be tried, Defendant also intends to assert the following:

1.     First Affirmative Defense (Failure to State a Claim)

2.     Sixth Affirmative Defense (Failure to Mitigate)

3.     Fourteenth Affirmative Defense (Exclusion 17, Section III – Extra Expense)

4..    Fifteenth Affirmative Defense (Violation of Constitution)

Plaintiffs disagree that Defendant is entitled to present the Sixth Affirmative Defense (Failure to Mitigate) or the Fourteenth Affirmative Defense (Exclusion 17) at trial. By failing to raise these affirmative defenses to liability in response to Plaintiffs' motion for partial summary judgment on liability, Defendant abandoned those affirmative defenses. *See, e.g.*, *See, e.g.*, *Kaffaga v. Steinbeck*, 2017 WL 5989039, at *1 (C.D. Cal. Aug. 25, 2017) ("Affirmative defenses not raised in opposition to a motion for partial summary judgment as to liability are deemed waived.") (citing *United Mine Workers of America 1974 Pension v. Pittson Co.*, 984 F.2d 469, 478 (D.C. Cir. 1993)); *Duarte Nursery, Inc. v. United States Army Corps of Engineers*, 2017 WL 3453206, at *3 (E.D. Cal. Aug. 11, 2017) (same).

> ***Defendant's position:*** *The remaining issues to be tried revolve largely around the objective reasonableness of Defendant's reasons for denying coverage for Plaintiffs' Extra Expense claim in 2014. These affirmative defenses and the evidence to support them are relevant and highly material to the issues that remain to be tried.*
>
> *Defendant has not waived any of its affirmative defenses and contends issues of fact for trial remain regarding all of them.*

3

1

2         *Neither this Court's initial order nor the Ninth Circuit's appellate*

3         *order directly addressed the applicability of War Exclusion 3 or*

4         *War Exclusion 4. "Insurrection," "rebellion" and "revolution"*

5         *are by definition different than "war" and, because the Ninth*

6         *Circuit holding is law of the case, then the Ninth Circuit's*

7         *interpretation of the dual sovereignty requirements necessary to*

8         *constitute a "war" directly implicate what actually happened in*

9         *Israel in 2014 – an "insurrection, rebellion and revolution," and*

10         *the "action taken by a governmental authority [Israel] in*

11         *hindering or defending against any of these." Because Exclusion*

12         *3 deals with conditions other than "war," The Court has rejected*

13         *Defendant's request to try these issues to the factfinder.*

14

15         *Although the Court has rejected Defendant's request to allow the*

16         *factfinder to consider War Exclusion 3 as a factual coverage*

17         *matter, Defendant contends it has to defend the bad faith*

18         *allegations against it based on its state of mind when adjusting this*

19         *claim and its belief of the reasonableness of its reliance on War*

20         *Exclusions 1, 2, 3 and 4 in denying this claim.*

21

22         *Defendant also contends the fact that two Courts, with ample time*

23         *and opportunity to consider the complex coverage issues, reached*

24         *different conclusions regarding War Exclusions 1 and 2 make it*

25         *certain as a matter of law that Defendant's position was at least*

26         *reasonable and a judgment as a matter of law in favor of*

27         *Defendant finding it did not breach the duty of good faith would be*

28         *proper. The Court has rejected this contention.*

4

> *The Court has rejected Defendant's request in the parties' Joint Submission of remaining issues of fact and law to re-urge its motion for summary judgment as to the duty of good faith and regarding the applicability of War Exclusions 3 or 4.  The Court denied Defendant's request and entered its Order filed November 30, 2019 (Dkt. 157) that War Exclusions 3 and 4 did not preclude coverage.*
>
> *The Court has rejected Defendant's position that there are issues of fact that preclude summary judgment under the law of the case as stated in the decision by the Ninth Circuit regarding  War Exclusions 3 and 4.  The Court has also rejected Defendant's request to try to the factfinder the factual coverage issues regarding War Exclusions 3 and 4 as, Defendant contends, is allowed by the holding of the Ninth Circuit.*
>
> *The Court has also rejected Defendant's request for judgment as a matter of law regarding Plaintiffs' claim it breached the duty of good faith based on Defendant's contention that, as a matter of law, Defendant was reasonable in its reliance on War Exclusions 1, 2, 3, and 4 in denying Plaintiffs' claim and also that a bona fide controversy existed regarding the legal meaning of these exclusions.*

## 2.    <u>JURISDICTION AND VENUE</u>

Federal jurisdiction and venue are invoked upon the grounds of diversity jurisdiction under 28 U.S.C. §§ 1332(a) and (c). Complete diversity exists because Plaintiffs are limited liability companies that are citizens of Delaware and

015825\7126273.v1

Pennsylvania by virtue of the citizenship of the entities in their chains of
membership, and Defendant is a citizen of New York and Minnesota. The amount-
in-controversy exceeds the sum of $75,000, exclusive of interest and costs. This is a
judicial district in which a substantial part of the events and omissions giving rise to
the claim occurred.  The facts requisite to federal jurisdiction and venue are
admitted.

**3.**     **LENGTH OF TRIAL**

The parties' estimates of the length of trial depend in part on the Court's
rulings on motions in *limine* and jury instructions.

    a.     Plaintiffs estimate trial will take 20 hours total (10 hours per
           side).

    b.     Defendant estimates trial will take 35-40 hours, but considerably
           less time to the extent the Court grants Defendant's Motion in
           Limine No. 1 Regarding Untimely Disclosure of Expert and
           Document Production.

**4.**     **JURY TRIAL**

The trial is to be a jury trial.

A timely demand for a jury trial has been made.

Under the Court's minute order filed January 31, 2020 (Dkt. 251), the parties
hereby lodge a Revised Pretrial Conference Order and Revised Disptued Jury
Instruction regarding Judicial Notice.

**5.**     **ADMITTED FACTS**

The following facts are admitted and require no proof:  None.

6

## 6.    **STIPULATED BUT NOT ADMITTED FACTS**

**Plaintiffs' Position:** Defendant stipulated to numerous facts in the first Pre-Trial Conference Order. Defendant then attempted to withdraw from certain of those stipulations in the parties' revised Pre-Trial Conference Order. Yet again, Defendant now attempts to withdraw from even more of those stipulations in this amended Pre-Trial Conference Order.

Stipulations entered into that are embodied in the pretrial order are binding at trial. *Malhiot v. S. Cal. Retail Clerks Union*, 735 F.2d 1133, 1137 (9th Cir. 1984). Stipulations entered in a pretrial order may be modified "only to prevent manifest injustice." *Id.* "In determining what constitutes manifest injustice, courts may consider (1) the effect of the stipulation on the party seeking to withdraw the stipulation; (2) the effect on the other parties to the litigation; (3) the occurrence of intervening events since the parties agreed to the stipulation; and (4) whether the evidence contrary to the [stipulation] is substantial." *Morrison v. Sangpo*, 2008 WL 4449585, at *3-4 (N.D. Cal. 2008) (citing *Waggoner v. Dallaire*, 767 F.2d 589, 593 (9th Cir. 1985)).

Defendant cannot meet this standard. All of the stipulations Defendant agreed to in the first Pre-Trial Conference Order were based on (1) findings of the Ninth Circuit on appeal, (2) findings of this Court in its November 30, 2019 Order, or (3) undisputed facts in connection with the parties' summary judgment briefing. Plaintiffs therefore request that the Court treat all of the stipulations in the first Pre-Trial Conference Order as binding.

**Defendant's Position:**

Plaintiffs cite to *Malhiot* to challenge Defendant's attempt to narrow the relevant facts for the Court.  However, *Malhoit* does not address the parties' attempts to revise language in a pre-trial order pursuant to a Court's instruction. Rather, it addresses how signed final pre-trial conference orders may only be amended pursuant to Rule 16(e).  *Malhiot v. So. Cal. Retail Clerk's Union*, 735

7

F.2d 1133, 1137 (9th Cir. 1984) (citing Fed. R. Civ. P. 16(e)).  Such is not the case here, as the Court has encouraged the parties to continue to amend and revise the language of proposed pre-trial conference orders.  Defendant has done so in good faith, and, indeed, does so here.

Subject to all parties' reservation of all rights, including appellate rights, the following facts are stipulated to be true for the sole purpose of the issues remaining to be tried, but this stipulation shall be without prejudice to any objection as to admissibility and without prejudice to any party's rights on appeal.

1. Defendant Atlantic Specialty Insurance Company ("Defendant") is a OneBeacon Insurance Group company, which operates Atlantic Specialty Insurance Company and various OneBeacon entities.

2. Defendant issued its first of five production policies to NBCUniversal Media, LLC ("NBCUniversal") effective as of January 1, 2010.

3. Universal Cable Productions LLC ("UCP") and Northern Entertainment Productions LLC ("NEP") (collectively "Plaintiffs") are named insureds under the Policy.

4. The January 1, 2010 Policy was renewed from year to year, until issuance of the policy at issue here, Motion Picture/Television Producers Portfolio Policy No. MP00163-04 ("Policy").

5. The Policy had an eighteen month policy period, from January 1, 2014, to June 30, 2015.

6. "Imminent peril" is defined in the Policy as "certain, immediate and impending danger of such probability and severity to person or property that it would be unreasonable or unconscionable to ignore."

7. The Policy excludes from coverage losses caused by:

015825\7126273.v1

        1.     War, including undeclared or civil war; or

        2.     Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any sovereign, sovereign, or other authority using military personnel or other agents; . . . .

        3.     Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

        4.     Any weapon of war including atomic fission or radioactive force, whether in time of peace or war.

8.     Each Universal television show is added as an "Insured Production" on an individual basis.

9.     On December 11, 2013, Aon submitted an application to Defendant for *Dig* to be added to the Policy as an Insured Production.

10.     For the period from January 1, 2014, to June 30, 2015, Defendant issued a television production insurance policy to Plaintiffs ("Policy").

11.     Plaintiffs made a claim for Extra Expense losses under the Policy.

12.     The Insuring Agreement of the "Policy" applies to Plaintiffs' Extra Expense claim.

13.     No exclusion in the Policy, including but not limited to War Exclusions 1, 2, 3, and 4, applies to bar coverage for Plaintiffs'

9

1            Extra Expense claim under the insurance contract.

2    14.    Plaintiffs' Extra Expense claim is covered under the Policy.

3    15.    Defendant has been found liable for breaching the Policy by

4            denying coverage for Plaintiffs' Extra Expense claim based on

5            Exclsuions 1, 2, 3, and 4 of the Policy.

6    16.    The Policy defines "loss" as follows:

7            **IX.   DEFINITION OF LOSS**

8            The amount of your loss will be determined based on:

9            1.    All necessary "Insurable Production Cost" you

10                incur to complete the "Insured Production" that

11                exceeds the amount of "Insurable Production Cost"

12                you would have incurred if the covered cause of

13                loss had not occurred.

14            2.    All other necessary expenses that reduce the

15                amount of loss otherwise payable.

16            3.    Your loss will not include loss of earnings of profit.

17            4.    If you abandon an "Insured Production" that has

18                been made substantially valueless solely because

19                one of more coverage causes of loss reasonably,

20                practically and necessarily prevents you from

21                completing the "Insured Production", irrespective

22                of any completion or delivery date requirements for

23                the "Insured Production", we will pay as loss the

24                total "Insurable Production Cost" you have incurred

25                for the "Insured Production".

26    17.    The Policy defines "Insurable Production Cost" and "Insured

27            Production" as follows:

28            **II.   SPECIAL CONDITIONS**

10

**A.    DEFINITIONS**

                                            *    *    *

4.    "Insurable Production Cost" includes:  all
costs, including overhead and interest on
loans chargeable directly to an "Insured
Production" or series of productions.
Insurable Production Cost also includes any
amount of overhead only when declared at
the time you declare an "Insured Production"
or series of productions.  The following costs
shall not be included in "Insurable
Production Cost":

(a)    Royalties Term Deals for Executive
Producer(s), Package Fee & Publicity,
residuals, premiums paid for this
insurance, and personal property taxes;

(b)    Story, scenario, music rights, and
sound rights, except with respect to
television series, specials and pilots;
and

(c)    "Continuity", except when a period of
suspension due to covered loss or
damage exceeds ninety (90) days.

(d)    Any other costs specifically stated not
to be "Insurable Production Costs" in
an endorsement to this policy.

Nevertheless, you have the option to include
these excluded costs at the time you declare

11

an "Insured Production" or series of productions.  In that case, such costs will be included in the "Insurable Production Cost", and

The amount of any loss or damage paid under this Policy.

5.   "Insured Production" means a production or series of productions that has been declared to us.

**7.   CLAIMS AND DEFENSES PRESENTED AT TRIAL**

On November 30, 2019, the Court entered an order (Dkt. No. 157) ruling that Defendant's denial of insurance coverage for Plaintiffs' Extra Expense claim is not supported by any of the four "war risk" policy exclusions on which Defendant relies:

1.   War, including undeclared or civil war;

2.   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents.

3.   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

4.   Any weapon of war including atomic fission or radioactive force, whether in time of peace or war.

The Court set the case for trial on two issues:  (1) damages and (2) breach of the implied covenant of good faith and fair dealing.

12

015825\7126273.v1

On cross-motions for summary judgment, the Court initially, by order dated October 6, 2017 (Dkt. No. 128), entered judgment in favor of Defendant, holding that (1) War Exclusion 1 and War Exclusion 2 barred coverage for Plaintiffs' Extra Expense claim, and (2) Defendant did not breach the implied obligation of good faith and fair dealing as a matter of law.  The Court did not initially rule on the applicability of War Exclusion 3 or War Exclusion 4.

On appeal by Plaintiffs, the Ninth Circuit Court of Appeals reversed, "hold[ing] that Atlantic breached its contract when it denied coverage by defining Hamas' conduct as 'war' and 'warlike action by a military force.'" *Universal Cable Prods., LLC v. Atlantic Specialty Ins. Co.*, 929 F.3d 1143, 1162 (9th Cir. 2019) The Ninth Circuit therefore (1) "reverse[d] . . . entry of summary judgment in favor of Atlantic on the first and second war exclusions,"; (2) "direct[ed] the entry of summary judgment in favor of Universal on the first and second war exclusions; (3) "remand[ed] for the district court to address" exclusion 3 "in the first instance"; and (4) "vacat[ed] the grant of summary judgment on Universal's bad faith claim and remand[ed] for proceedings consistent with this opinion." *Id.*

This Court then entered an order (Dkt. No. 157) denying the parties' joint request for further briefing, finding that War Exclusion 3 and War Exclusion 4 do not bar coverage for Plaintiffs' Extra Expense claim, and setting the case for trial on February 18, 2020, on the issues of damages and bad faith.

**Plaintiffs' Claims:**

(a)     Plaintiffs plan to pursue the following claims against Defendant:

Claim 1:  Plaintiffs seek damages for Defendant's breach of the insurance contract ("Policy") with Plaintiffs as found by the Court.

Claim 2:  Plaintiffs claim Defendant breached the implied covenant of good faith and fair dealing in failing to properly investigate Plaintiffs'

13

*Dig* claim and in denying coverage of Plaintiffs' *Dig* claim under the Policy, and seek compensatory and punitive damages.

(b)     The elements required to establish Plaintiffs' claims are:

<u>Claim 1</u>:  The elements required to establish breach of a duty to pay a covered loss under an insurance policy are:

(i)     That Plaintiffs suffered a loss, all or part of which was covered under an insurance policy with Defendant;

(ii)    that Defendant was notified of the loss as required by the policy; and

(iii)   the amount of the covered loss that Defendant failed to pay.

*See* CACI 2300 Breach of Contractual Duty to Pay a Covered Claim— Essential Factual Elements.

Plaintiffs' position is that in light of the Court's order, only element (iii) remains to be tried.

The Policy defines "loss" as follows:

**IX.     DEFINITION OF LOSS**

The amount of your loss will be determined based on:

1.     All necessary "Insurable Production Cost" you incur to complete the "Insured Production" that exceeds the amount of "Insurable Production Cost" you would have incurred if the covered cause of loss had not occurred.

2.     All other necessary expenses that reduce the

14

1    amount of loss otherwise payable.

2    3.    Your loss will not include loss of earnings of profit.

3    4.    If you abandon an "Insured Production" that has

4    been made substantially valueless solely because

5    one of more coverage causes of loss reasonably,

6    practically and necessarily prevents you from

7    completing the "Insured Production", irrespective

8    of any completion or delivery date requirements for

9    the "Insured Production", we will pay as loss the

10   total "Insurable Production Cost" you have incurred

11   for the "Insured Production".

12

13   The Policy defines "Insurable Production Cost" as follows:

14   **II.    SPECIAL CONDITIONS**

15   **A.    DEFINITIONS**

16   *    *    *

17   4.    "Insurable Production Cost" includes:  all costs,

18   including overhead and interest on loans chargeable

19   directly to an "Insured Production" or series of

20   productions.  Insurable Production Cost also

21   includes any amount of overhead only when

22   declared at the time you declare an "Insured

23   Production" or series of productions.  The

24   following costs shall not be included in "Insurable

25   Production Cost":

26   (a)    Royalties Term Deals for Executive

27   Producer(s), Package Fee & Publicity,

28   residuals, premiums paid for this insurance,

15

and personal property taxes;

(b)    Story, scenario, music rights, and sound rights, except with respect to television series, specials and pilots; and

(c)    "Continuity", except when a period of suspension due to covered loss or damage exceeds ninety (90) days.

(d)    Any other costs specifically stated not to be "Insurable Production Costs" in an endorsement to this policy.

Nevertheless, you have the option to include these excluded costs at the time you declare an "Insured Production" or series of productions.  In that case, such costs will be included in the "Insurable Production Cost", and

The amount of any loss or damage paid under this Policy.

5.    "Insured Production" means a production or series of productions that has been declared to us.

Claim 2:  Plaintiffs claim that Defendant breached the implied covenant of good faith and fair dealing ("bad faith"). Plaintiffs may establish bad faith by establishing either that (1) Defendant breached the obligation of good faith and fair dealing by failing to pay benefits due under the insurance policy ("Theory 1") or (2) Defendant acted unreasonably by failing to conduct a proper investigation of Plaintiffs' claim ("Theory 2").  Under either theory, Plaintiffs claim that

16

Defendant acted with malice, oppression, or fraud giving rise to punitive damages.

Under <u>Theory 1</u>, Plaintiffs must prove all of the following:

    (i)      That Plaintiffs suffered a loss covered under an insurance policy with Defendant;

    (ii)     That Defendant was notified of the loss;

    (iii)    That Defendant unreasonably failed to pay Policy benefits;

    (iv)    That Plaintiffs were harmed;

    (v)     That Defendant's failure to pay Policy benefits was a substantial factor in causing Plaintiffs' harm; and

    (vi)    The amount of damages caused by Defendant.

To act or fail to act "unreasonably" means that the insurer had no proper cause for its conduct.  In determining whether Defendant acted unreasonably, the jury should consider only the information that Defendant knew or reasonably should have known at the time when it failed to pay Policy benefits.

*See* CACI 2331 Breach of the Implied Obligation of Good Faith and Fair Dealing—Failure or Delay in Payment (First Party)—Essential Factual Elements; CACI 2350 Damages for Bad Faith;

Under <u>Theory 2</u>, Plaintiffs must prove all of the following:

    (i)      That Plaintiffs suffered a loss under an insurance policy issued by Defendant;

    (ii)     That Plaintiffs properly presented a claim to Defendant to be compensated for the loss;

17

(iii)     That Defendant failed to conduct a full, fair, prompt, and thorough investigation of all of the bases of Plaintiffs' claim;

(iv)     That Plaintiffs were harmed;

(v)      That Defendant's failure to properly investigate the claim was a substantial factor in causing Plaintiffs' harm; and

(vi)     The amount of damages caused by Defendant.

When investigating Plaintiffs' claim, Defendant had a duty to diligently search for an consider evidence that supported coverage of the claimed loss.

*See* CACI 2331 Breach of the Implied Obligation of Good Faith and Fair Dealing—Failure or Delay in Payment (First Party)—Essential Factual Elements; CACI 2350 Damages for Bad Faith.

**_Defendant's Position:_**  *The jury should also be instructed that an insurance company is privileged to pursue its own economic interests and to assert in a permissible way its legal rights and communicate its legal position in good faith even if doing so will cause emotional distress.  An insurer denying or delaying benefits due to the existence of a genuine dispute with its insured about the existence of coverage liability or the amount of the coverage claim is not liable in bad faith even though it might be liable for breach of contract.  The genuine dispute doctrine does not diminish an insurer's obligation to investigate, process and evaluate the insured's claim thoroughly and fairly.  A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds.  To be privileged, the assertion of legal*

1     *rights must be limited to circumstances in which the person has a*

2     *good faith belief in the existence of the right asserted and the*

3     *assertion must be done in a permissible, non-outrageous manner.*

4     *Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713 (2007).*

5

6     *This instruction is necessary to properly and completely instruct*

7     *the jury regarding California law on the elements of Breach of the*

8     *Implied Obligation of Good Faith and Fair Dealing.*

9

10    ***Plaintiffs' Position:***  *(1) this instruction is an improper deviation*

11    *from the CACI pattern instructions and (2) the genuine dispute*

12    *doctrine is an affirmative defense and not a required element of*

13    *Plaintiff's claim.*

14

15

16    Plaintiffs seek attorney's fees as damages (*i.e.*, *Brandt* fees).  To

17    recover attorney's fees, Plaintiffs must prove that because of

18    Defendant's breach of the obligation of good faith and fair dealing it

19    was reasonably necessary for Plaintiffs to hire an attorney to recover

20    the policy benefits.  Plaintiffs may recover attorney's fees it incurred

21    to obtain policy benefits, but not attorney's fees it incurred for other

22    purposes.

23    *See* CACI 2350.

24

25    Plaintiffs also seek punitive damages.  To prove that Defendant's

26    conduct justifies an award of punitive damages, Plaintiffs must prove

27    that Defendant engaged in that conduct with malice, oppression, or

28

19

fraud. To do this, Plaintiffs must prove one of the following by clear and convincing evidence:

(i)     That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Defendant, who acted on behalf of Defendant; or

(ii)    That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Defendant; or

(iii)   That one or more officers, directors, or managing agents of Defendant knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Defendant acted with intent to cause injury or that Defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that Defendant's conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing disregard of their rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

015825\7126273.v1

1    "Fraud" means that Defendant intentionally misrepresented or

2    concealed a material fact and did so intending to harm Plaintiffs.

3

4    An employee is a "managing agent" if he or she exercises substantial

5    independent authority and judgment in his or her corporate

6    decisionmaking such that his or her decisions ultimately determine

7    corporate policy.

8    *See* CACI 3945 Punitive Damages—Entity Defendant—Trial Not

9    Bifurcated.

10

11    (c)    In brief, the key evidence Plaintiffs rely on for each of the claims is:

12

13    Claim 1 (Breach of Insurance Contract): Elements (i) ("That Plaintiff

14    suffered a loss, all or part of which was covered under an insurance

15    policy with Defendant") and (ii) ("that Defendant was notified of the

16    loss as required by the policy") have already been decided in

17    Plaintiffs' favor by the Ninth Circuit and this Court and are therefore

18    law of the case, requiring no further proof at trial.

19

20    For element (iii) ("the amount of the covered loss that Defendant failed

21    to pay"), Plaintiffs will rely on (1) the testimony of their damages

22    expert Robert W. Wunderlich, Ph.D.; (2) the testimony of either Randi

23    Richmond or BJ Markus (Plaintiffs' employees with knowledge of

24    Plaintiffs' extra expenses); and (3) documents reflecting their covered

25    losses including the Full Cost Bible for the *Dig* production, potentially

26    invoices or other ledgers evidencing such costs, and the Policy

27    language regarding the "Insuring Agreement" for "Extra Expense," the

28    definition of "Loss," and the definition of "Insurable Production Cost.

21

1    Plaintiffs may also rely on deposition testimony from Defendant's

2    former damages expert, Jay Shapiro.

3

4    Claim 2 (Breach of Implied Covenant of Good Faith and Fair

5    Dealing):  With respect to Theory 1 of bad faith, element (i) ("That

6    Plaintiffs suffered a loss covered under an insurance policy with

7    Defendant") and element (ii) ("That Defendant was notified of the

8    loss) have been decided in Plaintiffs' favor by the Ninth Circuit and

9    this Court, those decisions are law of the case, and these elements

10   require no further proof at trial.

11

12   Similarly, with respect to Theory 2 of bad faith, element (i) ("That

13   Plaintiffs suffered a loss under an insurance Policy issued by

14   Defendant") and (ii) ("That Plaintiffs properly presented a claim to

15   Defendant to be compensated for the loss") have been decided in

16   Plaintiffs' favor by the Ninth Circuit and this Court, those decisions

17   are law of the case, and these elements require no further proof at trial.

18

19   To prove the remaining elements of their claim that Defendant

20   breached the implied covenant of good faith and fair dealing and did

21   so with malice, oppression, or fraud, Plaintiffs intend to rely primarily

22   on the following evidence: (1) the testimony of Plaintiffs' insurance

23   industry expert Ty Sagalow; (2) the testimony of Defendant's

24   employees (current or former) with knowledge of the Policy and the

25   handling of the *Dig* claim, including Teresa Gooley, Daniel

26   Gutterman, Pamela Johnson, Peter Williams, and Dennis Crosby; (3)

27   the testimony of either Randi Richmond or BJ Markus (Plaintiffs'

28   employees with knowledge of the *Dig* claim); (4) the testimony of

015825\7126273.v1

Susan Weiss, Plaintiffs' insurance broker with knowledge of the
Policy and the *Dig* claim.

Plaintiffs also intend to rely on documentary evidence regarding
Defendant's handling of the *Dig* claim including (1) documents
showing a terrorism exclusion was deleted from the draft Policy and
that Defendant knowingly decided not to add a terrorism exclusion or
charge extra premiums when adding *Dig* to the Policy; (2) e-mails
regarding Defendant's handling of the *Dig* claim; (3) Defendant's
claim file for the *Dig* claim; (4) Defendant's policies and manuals
regarding claims handling; and (5) Defendant's letters explaining the
bases for its denial of coverage of the *Dig* claim.

Plaintiffs also intend to request that the Court take judicial notice of
the factual and legal conclusions reflected in the Ninth Circuit's
decision and this Court's subsequent November 30, 2019 order, which
make clear (1) the meaning of the "War Exclusions" and (2) the
reasons why none of the War Exclusions applies (including, but not
limited to, the fact that the special meaning of such Exclusions
governs, that Exclusions 1 and 2 require actions by a sovereign, and
that Hamas is not a sovereign). *See Universal Cable Prods., LLC v.
Atlantic Specialty Ins. Co.*, 929 F.3d 1143 (9th Cir. 2019), Dkt. 157
(Nov. 30, 2019 Order).

To prove their damages resulting from Defendant's bad faith, Plaintiffs
intend to rely on the testimony of (1) Plaintiffs' damages expert Robert
W. Wunderlich, Ph.D.; (2) the testimony of Randi Richmond and BJ
Markus (Plaintiffs' employees); and (3) Plaintiffs' former counsel

1  Lucia Coyoca regarding Plaintiffs' attorneys' fees and costs. Plaintiffs

2  also intend to rely on documents evidencing Plaintiffs' attorneys' fees

3  and costs, including redacted invoices and fee agreement(s).

4

5  Plaintiffs also intend to rely on the following additional evidence

6  demonstrating that Defendant's conduct justifies an award of punitive

7  damages: (1) evidence regarding Defendant's pattern or practice of

8  denying valid claims in bad faith, including the decision in *OneBeacon*

9  *Ins. Co. v. T Wade Welch & Assocs.*, 841 F.3d 669 (5th Cir. 2016); (2)

10  evidence regarding Defendant's financial condition, including annual

11  reports; (3) evidence regarding Defendant's financial motive for

12  denying the *Dig* claim, including documents produced by Defendant

13  showing that it exited this line of insurance underwriting because it

14  was unprofitable and because "Profitability is the Goal!"

15

16  Plaintiffs reserve the right to present additional evidence included on

17  their exhibit list, deposition designations, and witness lists, to rebut

18  any evidence presented by Defendant or based on the outcome of the

19  Court's rulings on motions in limine or any other pre-trial matter.

20

21  **Defendant**:

22  (a)  Defendant plans to put on evidence of the following affirmative

23  defenses in order to (1) demonstrate the objective reasonableness of its

24  decision to deny coverage for Plaintiffs' Extra Expense claim, and (2)

25  to show that Plaintiffs' damages claim is unsupported and excessive:

26

27  1.  **Failure to Mitigate**

28  General Condition I(2) of the Policy provides that the insureds

24

are required to: Minimize Loss or Damage – Take all reasonable steps to protect the property from further damage and minimize the loss. Keep a record of your expenses in doing so for consideration in the settlement of the claim. This will not increase the limit of insurance.  To the extent Plaintiffs failed to take all reasonable steps to minimize their loss, or to keep a record of their expenses in doing so, their claims are barred from coverage by General Condition I(2) of the Policy, and by the common law.

2.     **Violation of Constitution**

Plaintiffs' claim for exemplary and punitive damages violates the Constitution of the United States of America and the applicable State Constitution or Constitutions.

3.     **Policy Exclusion 1, General Conditions**

Exclusion 1 of the General Conditions section of the Policy provides that "the Policy does not insure against loss or damage caused directly or indirectly by: . . . 1. War, including undeclared or civil war; . . . ."

Defendant contends that Plaintiffs' claims are barred by Exclusion 1 of the General Conditions section of the Policy. The Ninth Circuit Court of Appeals has determined this Exclusion does not preclude coverage.  However, Defendant relied on this exclusion as it was part of its coverage investigation, analysis, and decision.  Defendant's reliance on Exclusion 1 and the courts' handling of this exclusion goes to

25

1      Defendant's state of mind when denying coverage and the

2      reasonableness of Defendant's conduct under Plaintiffs' bad

3      faith claim.

4

5      This exclusion is relevant to Defendant's defense to the bad

6      faith claim to demonstrate Defendant's state of mind and the

7      reasonableness of its decision in denying coverage.

8

9          **4.      Policy Exclusion 2, General Conditions**

10     Exclusion 2 of the General Conditions section of the Policy

11     provides that the "Policy does not insure against loss or damage

12     caused directly or indirectly by: . . . 2. Warlike action by a

13     military force, including action in hindering or defending against

14     an actual or expected attack, by any government, sovereign or

15     other authority using military personnel or other agents."

16

17     Defendant contends that Plaintiffs' claims are barred by

18     Exclusion 2 of the General Conditions.  The Ninth Circuit Court

19     of Appeals has determined this Exclusion does not preclude

20     coverage.  However, Defendant relied on this exclusion as it was

21     part of its coverage investigation, analysis, and decision.

22     Defendant's reliance on Exclusion 2 and the courts' handling of

23     this exclusion goes to Defendant's state of mind when denying

24     coverage and the reasonableness of Defendant's conduct under

25     Plaintiffs' bad faith claim.

26

27     This exclusion is relevant to Defendant's defense to the bad

28     faith claim to demonstrate Defendant's state of mind and the

1    reasonableness of its decision in denying coverage.

2

3    **5.     Policy Exclusion 3, General Conditions**

4    Exclusion 3 of the General Conditions section of the Policy

5    provides that the "Policy does not insure against loss or damage

6    caused directly or indirectly by: . . . 3. Insurrection, rebellion,

7    revolution, usurped power, or action taken by governmental

8    authority in hindering or defending against any of these. Such

9    loss or damage is excluded regardless of any other cause or

10   event that contributes concurrently or in any sequence to the

11   loss."

12

13   Plaintiffs' claims are barred by Exclusion 3 of the General

14   Conditions section of the Policy.  This Court has determined this

15   Exclusion does not preclude coverage.  However, Defendant

16   relied on it as it was part of its coverage investigation, analysis,

17   and decision and contends there are disputed issues of fact to be

18   resolved by the jury.  Defendant relied on this exclusion as it

19   was part of its coverage investigation, analysis, and decision.

20   Defendant's reliance on Exclusion 3 and the courts' handling of

21   this exclusion goes to Defendant's state of mind when denying

22   coverage and the reasonableness of Defendant's conduct under

23   Plaintiffs' bad faith claim.

24

25   This exclusion is relevant to Defendant's defense to the bad

26   faith claim to demonstrate Defendant's state of mind and the

27   reasonableness of its decision in denying coverage.

28

27

1         **6.**      **Policy Exclusion 4, General Conditions**

2         Exclusion 4 of the General Conditions section of the Policy

3 provides that the "Policy does not insure against loss or damage

4 caused directly or indirectly by: . . . 4. Any weapon of war

5 including atomic fission or radioactive force, whether in time of

6 peace or war.

7

8         Defendant contends that Plaintiffs' claims are barred by

9 Exclusion 4 of the General Conditions section of the Policy.

10 This Court has determined this Exclusion does not preclude

11 coverage.

12

13         However, Defendant relied on it as it was part of its coverage

14 investigation, analysis, and decision and contends there are

15 disputed fact issues regarding Policy Exclusion 4 that must be

16 resolved by a jury.

17

18         Defendant relied on this exclusion as it was part of its coverage

19 investigation, analysis, and decision.  Defendant's reliance on

20 Exclusion 4 and the courts' handling of this exclusion goes to

21 Defendant's state of mind when denying coverage and the

22 reasonableness of Defendant's conduct under Plaintiffs' bad

23 faith claim.

24

25         This exclusion is relevant to Defendant's defense to the bad

26 faith claim to demonstrate Defendant's state of mind and the

27 reasonableness of its decision in denying coverage.

28

015825\7126273.v1

1    ***Plaintiffs contend*** *that Defendant is not entitled to try its*

2    *affirmative defenses of failure to mitigate or policy exclusions to*

3    *the jury because (1) the Court has already granted summary*

4    *judgment for Plaintiffs on liability, concluding that Defendant*

5    *breached the Policy in denying Plaintiffs' covered claim; and (2)*

6    *the Court explicitly concluded that Exclusions 1-4 did not apply.*

7    *Universal Cable Prods., LLC v. Atlantic Specialty Ins. Co., 929*

8    *F.3d 1143 (9th Cir. 2019), Dkt. 157 (Nov. 30, 2019 Order). This*

9    *Court's findings at summary judgment are law of the case and*

10   *Defendant is not entitled to re-litigate its defenses to the jury. To*

11   *the extent that Defendant failed to raise affirmative defenses to*

12   *liability at summary judgment (such as failure to mitigate), any*

13   *such defense has been abandoned and also may not be tried to the*

14   *jury. See, e.g., Kaffaga v. Steinbeck, 2017 WL 5989039, at \*1*

15   *(C.D. Cal. Aug. 25, 2017) ("Affirmative defenses not raised in*

16   *opposition to a motion for partial summary judgment as to liability*

17   *are deemed waived.") (citing United Mine Workers of America*

18   *1974 Pension v. Pittson Co., 984 F.2d 469, 478 (D.C. Cir.*

19   *1993)); Duarte Nursery, Inc. v. United States Army Corps of*

20   *Engineers, 2017 WL 3453206, at \*3 (E.D. Cal. Aug. 11, 2017)*

21   *(same).*

22

23   ***Defendant's position:*** *The remaining issues to be tried revolve*

24   *largely around the objective reasonableness of Defendant's*

25   *reasons for denying coverage for Plaintiffs' Extra Expense claim*

26   *in 2014. These affirmative defenses and the evidence to support*

27   *them are relevant and highly material to the issues that remain to*

28   *be tried.*

1

2    *Defendant has not waived any of its affirmative defenses and*

3    *contends issues of fact for trial remain regarding all of them.*

4

5    *Neither this Court's initial order nor the Ninth Circuit's appellate*

6    *order directly addressed the applicability of War Exclusion 3 or*

7    *War Exclusion 4.  "Insurrection," "rebellion" and "revolution"*

8    *are by definition different than "war" and, because the Ninth*

9    *Circuit holding is law of the case, then the Ninth Circuit's*

10   *interpretation of the dual sovereignty requirements necessary to*

11   *constitute a "war" directly implicate what actually happened in*

12   *Israel in 2014 – an "insurrection, rebellion and revolution," and*

13   *the "action taken by a governmental authority [Israel] in*

14   *hindering or defending against any of these."  Because Exclusion*

15   *3 deals with conditions other than "war," The Court has rejected*

16   *Defendant's request to try these issues to the factfinder.*

17

18   *Although the Court has rejected Defendant's request to allow the*

19   *factfinder to consider War Exclusion 3 as a factual coverage*

20   *matter, Defendant contends it has to defend the bad faith*

21   *allegations against it based on its state of mind when adjusting this*

22   *claim and its belief of the reasonableness of its reliance on War*

23   *Exclusions 1, 2, 3 and 4 in denying this claim.*

24

25   *Defendant also contends the fact that two Courts, with ample time*

26   *and opportunity to consider the complex coverage issues, reached*

27   *different conclusions regarding War Exclusions 1 and 2 make it*

28   *certain as a matter of law that Defendant's position was at least*

30

1    *reasonable and a judgment as a matter of law in favor of*
2    *Defendant finding it did not breach the duty of good faith would be*
3    *proper. The Court has rejected this contention.*

4

5    *The Court has rejected Defendant's request in the parties' Joint*
6    *Submission of remaining issues of fact and law to re-urge its*
7    *motion for summary judgment as to the duty of good faith and*
8    *regarding the applicability of War Exclusions 3 or 4. The Court*
9    *denied Defendant's request and entered its Order filed November*
10   *30, 2019 (Dkt. 157) that War Exclusions 3 and 4 did not preclude*
11   *coverage.*

12

13   *The Court has rejected Defendant's position that there are issues*
14   *of fact that preclude summary judgment under the law of the case*
15   *as stated in the decision by the Ninth Circuit regarding  War*
16   *Exclusions 3 and 4. The Court has also rejected Defendant's*
17   *request to try to the factfinder the factual coverage issues*
18   *regarding War Exclusions 3 and 4 as, Defendant contends, is*
19   *allowed by the holding of the Ninth Circuit.*

20

21   *The Court has also rejected Defendant's request for judgment as a*
22   *matter of law regarding Plaintiffs' claim it breached the duty of*
23   *good faith based on Defendant's contention that, as a matter of*
24   *law, Defendant was reasonable in its reliance on War Exclusions*
25   *1, 2, 3, and 4 in denying Plaintiffs' claim and also that a bona fide*
26   *controversy existed regarding the legal meaning of these*
27   *exclusions.*

28

(b)     The elements required to establish Defendant's counterclaims and affirmative defenses are:

1.     **<u>Failure to Mitigate</u>**

If Defendant breached the contract and the breach caused harm, Plaintiffs are not entitled to recover damages for harm that Defendant proves Plaintiffs could have avoided with reasonable efforts or expenditures. Plaintiffs were also required to keep a record of their expenses. The jury should consider the reasonableness of Plaintiffs' efforts considering the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk of hardship.

If Plaintiffs made reasonable efforts to avoid harm, then the jury award should include reasonable amounts that it spent for this purpose.
*See* CACI 358.

2.     **<u>Violation of Constitution</u>**

To establish this defense, Defendant must prove that Plaintiffs' claim for punitive damages exceeds the amount allowed under either the Constitution of the United States or the Constitution of the Constitution of the State of California. To succeed, Defendant must prove that either the Constitution of the United States or the Constitution of the State of California impose limits on the amount of punitive damages Plaintiffs may recover, and that Plaintiffs' claim for punitive damages exceeds those limits.
*See* CACI 2303.

015825\7126273.v1

**3.** **Policy Exclusion 1, General Conditions (War Exclusion 1)**
**Policy Exclusion 2, General Conditions (War Exclusion 2)**
**Policy Exclusion 3, General Conditions (War Exclusion 3)**
**Policy Exclusion 4, General Conditions (War Exclusion 4)**

In every insurance policy there is an implied obligation of good faith and fair dealing that neither the insurance company nor the insured will do anything to injure the right of the other party to receive the benefits of the agreement.  To fulfill its implied obligation of good faith and fair dealing, an insurance company must give at least as much consideration to the interests of the insured as it gives to its own interests.  To breach the implied obligation of good faith and fair dealing, an insurance company must unreasonably act or fail to act in a manner that deprives the insured of the benefits of the policy. To act unreasonably is not a mere failure to exercise reasonable care. It means that the insurer must act or fail to act without proper cause. However, it is not necessary for the insurer to intend to deprive the insured of the benefits of the policy.  An insurance company is privileged to pursue its own economic interests and to assert in a permissible way its legal rights and communicate its legal position in good faith even if doing so will cause emotional distress.  An insurer denying or delaying benefits due to the existence of a genuine dispute with its insured about the existence of coverage liability or the amount of the coverage claim is not liable in bad faith even though it might be liable for breach of contract.  The genuine dispute doctrine does not diminish an insurer's obligation to investigate, process and

015825\7126273.v1

1    evaluate the insured's claim thoroughly and fairly.  A genuine

2    dispute exists only where the insurer's position is maintained in

3    good faith and on reasonable grounds. To be privileged, the

4    assertion of legal rights must be limited to circumstances in

5    which the person has a good faith belief in the existence of the

6    right asserted and the assertion must be done in a permissible,

7    non-outrageous manner.

8    *See* CACI 2330; Wilson v. 21st Century Ins. Co., 42 Cal. 4th

9    713 (2007).

10

11   **Plaintiffs contend** *that Defendant is not entitled to try its*

12   *affirmative defenses of failure to mitigate or policy exclusions to the*

13   *jury because (1) the Court has already granted summary judgment*

14   *for Plaintiffs on liability, concluding that Defendant breached the*

15   *Policy in denying Plaintiffs' covered claim; and (2) the Court*

16   *explicitly concluded that Exclusions 1-4 did not apply. Universal*

17   *Cable Prods., LLC v. Atlantic Specialty Ins. Co., 929 F.3d 1143*

18   *(9th Cir. 2019), Dkt. 157 (Nov. 30, 2019 Order). This Court's*

19   *findings at summary judgment are law of the case and Defendant is*

20   *not entitled to re-litigate its defenses to the jury. To the extent that*

21   *Defendant failed to raise affirmative defenses to liability at*

22   *summary judgment (such as failure to mitigate), any such defense*

23   *has been abandoned and also may not be tried to the jury. See,*

24   *e.g., Kaffaga v. Steinbeck, 2017 WL 5989039, at *1 (C.D. Cal. Aug.*

25   *25, 2017) ("Affirmative defenses not raised in opposition to a*

26   *motion for partial summary judgment as to liability are deemed*

27   *waived.") (citing United Mine Workers of America 1974 Pension v.*

28   *Pittson Co., 984 F.2d 469, 478 (D.C. Cir. 1993)); Duarte Nursery,*

34

1     *Inc. v. United States Army Corps of Engineers, 2017 WL 3453206,*

2     *at \*3 (E.D. Cal. Aug. 11, 2017) (same).*

3

4     **_Defendant's position:_**  *The remaining issues to be tried revolve*

5     *largely around the objective reasonableness of Defendant's reasons*

6     *for denying coverage for Plaintiffs' Extra Expense claim in 2014.*

7     *These affirmative defenses and the evidence to support them are*

8     *relevant and highly material to the issues to be tried.*

9

10    *Defendant has not waived any of its affirmative defenses and*

11    *contends issues of fact for trial remain regarding all of them.*

12

13    *Neither this Court's initial order nor the Ninth Circuit's appellate*

14    *order directly addressed the applicability of War Exclusion 3 or*

15    *War Exclusion 4.  "Insurrection," "rebellion" and "revolution"*

16    *are by definition different than "war" and, because the Ninth*

17    *Circuit holding is law of the case, then the Ninth Circuit's*

18    *interpretation of the dual sovereignty requirements necessary to*

19    *constitute a "war" directly implicate what actually happened in*

20    *Israel in 2014 – an "insurrection, rebellion and revolution," and*

21    *the "action taken by a governmental authority [Israel] in*

22    *hindering or defending against any of these."  Because Exclusion*

23    *3 deals with conditions other than "war," The Court has rejected*

24    *Defendant's request to try these issues to the factfinder.*

25

26    *Although the Court has rejected Defendant's request to allow the*

27    *factfinder to consider War Exclusion 3 as a factual coverage*

28    *matter, Defendant contends it has to defend the bad faith*

35

1    *allegations against it based on its state of mind when adjusting this*

2    *claim and its belief of the reasonableness of its reliance on War*

3    *Exclusions 1, 2, 3 and 4 in denying this claim.*

4

5    *Defendant also contends the fact that two Courts, with ample time*

6    *and opportunity to consider the complex coverage issues, reached*

7    *different conclusions regarding War Exclusions 1 and 2 make it*

8    *certain as a matter of law that Defendant's position was at least*

9    *reasonable and a judgment as a matter of law in favor of*

10   *Defendant finding it did not breach the duty of good faith would be*

11   *proper.  The Court has rejected this contention.*

12

13   *The Court has rejected Defendant's request in the parties' Joint*

14   *Submission of remaining issues of fact and law to re-urge its*

15   *motion for summary judgment as to the duty of good faith and*

16   *regarding the applicability of War Exclusions 3 or 4.  The Court*

17   *denied Defendant's request and entered its Order filed November*

18   *30, 2019 (Dkt. 157) that War Exclusions 3 and 4 did not preclude*

19   *coverage.*

20

21   *The Court has rejected Defendant's position that there are issues*

22   *of fact that preclude summary judgment under the law of the case*

23   *as stated in the decision by the Ninth Circuit regarding  War*

24   *Exclusions 3 and 4.  The Court has also rejected Defendant's*

25   *request to try to the factfinder the factual coverage issues*

26   *regarding War Exclusions 3 and 4 as, Defendant contends, is*

27   *allowed by the holding of the Ninth Circuit.*

28

*The Court has also rejected Defendant's request for judgment as a
matter of law regarding Plaintiffs' claim it breached the duty of
good faith based on Defendant's contention that, as a matter of
law, Defendant was reasonable in its reliance on War Exclusions
1, 2, 3, and 4 in denying Plaintiffs' claim and also that a bona fide
controversy existed regarding the legal meaning of these
exclusions.*

(c)     In brief, the key evidence Defendant relies on for each counterclaim
and affirmative is:

> **1.     Failure to Mitigate**
>
> Damage analysis of  now-deceased expert Jay Shapiro and/or its
> new expert, Shannon Rusnak, if the Court allows designation.
> Much of the damage claimed is improperly characterized as an
> extra expense attributable to the move out of Israel.  Evidence of
> failure to mitigate will also come from Plaintiffs' witnesses,
> including BJ Markus who purportedly allocated expenses
> between shooting locations.

> **2.     Violation of Constitution**
>
> "The constitutionality of the [punitive damages] award presents
> a question of law." *Williams v. ConAgra Poultry Co.* (8th Cir.
> 2004) 378 F.3d 790, 796.  In other words, the constitutionality
> about the amount of the punitive damages awarded is a question
> for this Court to resolve as a matter of law, and not a question
> for the jury.

37

An award of punitive damages would violate the Due Process Clause of the Fifth and Fourteenth Amendments and the prohibition against the imposition of excessive fines contained in the Eighth Amendment to the United States Constitution and the corresponding provisions of the California Constitution.

**3.   Policy Exclusion 1, General Conditions (War Exclusion 1)**
**Policy Exclusion 2, General Conditions (War Exclusion 2)**
**Policy Exclusion 3, General Conditions (War Exclusion 3)**
<u>**Policy Exclusion 4, General Conditions (War Exclusion 4)**</u>

The Court has ruled these exclusions are not applicable; however, evidence of why Defendant believed in July 2014 they were applicable will be offered through the testimony of its representatives, including Pamela Johnson, Teresa Gooley, Daniel Gutterman, and Aaron Stone (30(b)(6) witness) who evaluated the facts and applicability of the exclusion, including the documents and information Defendant relied on, including without limitation information received from Plaintiffs, their representatives, and security personnel regarding the conflict and hostilities, as testified to in their depositions and as set forth in Defendant's interrogatory response and summary judgment motion setting forth in detail its investigation.

Pamela Johnson, the Defendant's employee who made the final decision to deny the Plaintiffs' claim studied multiple sources and performed research to gain an understanding of the nature of the conflict in the region. Johnson reviewed news reports from print sources including the Washington Post and the New York

38

1   Times, news media sources including reports from NBC,

2   MSNBC, and the BBC. Johnson also reviewed case law from

3   various Federal Circuit Courts of Appeals and the Supreme

4   Court which discussed the definition of "war" and previous

5   applications of the war exclusion. Johnson provided many of

6   these sources to other Defendant employees who were also

7   reviewing the Plaintiffs' claim.

8

9   Teresa Gooley, the Vice President of Claims at Defendant who

10   supervised Johnson, reviewed the investigation performed by

11   Johnson and she also relied on reports in the media to

12   understand the nature of the conflict in the region. Gooley

13   discussed the application of the war exclusions with Johnson

14   before a final decision was made regarding the Plaintiffs' claim.

15   Gooley specifically recalls watching news reports from NBC

16   and MSNBC and relying on this information when she discussed

17   the final coverage decision with Johnson.

18

19   Daniel Gutterman was a claim handler at Defendant and worked

20   directly with Johnson to determine if the war exclusions applied

21   to the Plaintiffs' claim. Gutterman frequently sent the

22   information he was researching to Johnson for her review to aid

23   in the handling of the claim. Gutterman also relied on his prior

24   experience with the entertainment industry to aid in his research

25   of the claim and the research he analysis he provided to

26   Johnson.

27

28   Aaron Stone, a Vice President of Defendant, testified as

39

Defendant's 30 (b)(6) representative regarding multiple topics,
including Defendant's claim investigation, analysis, and
decision.  He has an understanding of the terms of the war
exclusion included in the Plaintiffs' policy and relied on his
understanding of the industry and the practices of Defendant to
confirm that the war exclusion applied.

Defendant will also rely on experts Peter Evans and expert
Shannon Rusnak.

The Court has rejected Defendant's requests to rely on experts
Professor Quigley, Dr. Detter de Frankopan, and Frank
Lowenstein to support Defendant's contention that the
circumstances in Israel at the time Plaintiffs stopped production
of *Dig* in Israel fall within the terms of one or more War
Exclusions in the Policy, including that this was an
"insurrection" as that term is used in the Policy.

## 8.     ISSUES REMAINING FOR TRIAL

In view of the admitted facts and the elements required to establish the
claims, the following issues remain to be tried:

**Claim 1 (Breach of Insurance Contract):**

1.     The amount of the covered loss that Defendant failed to pay
(Claim 1);

2.     Whether the covered loss was a liquidated claim, meaning
certain or capable of being made certain by calculation, such
that prejudgment interest is mandatory;

3.     If not mandatory, whether discretionary prejudgment interest is

40

1    warranted; and

2    4.    The amount of prejudgment interest.

3

4    **Claim 2 (Breach of Implied Covenant of Good Faith and Fair Dealing):**

5    Theory 1 (Failure to Pay Policy Benefits):

6    1.    Whether Defendant unreasonably failed to pay Policy benefits;

7    2.    Whether Plaintiffs were harmed;

8    3.    Whether Defendant's allegedly unreasonable failure to pay

9    Policy benefits was a substantial factor in causing Plaintiffs'

10    harm, if any; and

11    4.    The amount of Plaintiffs' damages (including attorneys' fees

12    and costs to prove breach of the Policy, and prejudgment

13    interest)

14    Theory 2 (Failure to Properly Investigate Claim):

15    1.    Whether Defendant failed to conduct a full, fair, prompt, and

16    thorough investigation of all of the bases of Plaintiffs' claim;

17    2.    Whether Plaintiffs were harmed;

18    3.    Whether Defendant's alleged failure to properly investigate the

19    claim was a substantial factor in causing Plaintiffs' harm, if any;

20    and

21    4.    The amount of Plaintiffs' damages (including attorneys' fees

22    and costs to prove breach of the Policy, and prejudgment

23    interest)

24    **Punitive Damages**

25    1.    Whether Defendant engaged in the conduct above with malice,

26    oppression or fraud;

27    2.    Whether any conduct constituting malice, oppression, or fraud

28    was committed by, authorized by, or adopted and approved after

41

1    the fact by one or more officers, directors, or managing agents

2    of Defendant, who acted on behalf of Defendant; and

3         3.    The amount of punitive damages.

4

5    Defendant reserves all rights on appeal.

6  **9.    DISCOVERY**

7         All discovery is complete, except for the following. Defendant recently

8  served a report for Ms. Shannon Rusnak, a damages expert. Plaintiffs intend to

9  serve a rebuttal report this Friday. In addition, Defendant recently was permitted to

10 designate expert Peter Evans to replace Anthony Clark, who passed away suddenly

11 last month.  Mr. Evans will produce a report.  Plaintiffs will review the report and

12 reserve the right to (a) object to the report, (2) depose Mr. Evans, and (3) rebut Mr.

13 Evans's report.

14

15 **10.    DISCLOSURES**

16        Except for Defendant's caveat below,  all disclosures under F.R.Civ.P.

17 26(a)(3) have been made.

18        Defendant contends in its Motion in Limine No. 1 that certain information,

19 documents, and other material should be excluded at trial based on Plaintiffs'

20 alleged failure to comply with the discovery rules.  Plaintiffs dispute this position

21 and have opposed Motion in Limine No. 1.

22        The Second Revised Joint Exhibit List of the parties has been filed under

23 separate cover as required by L.R. 16-6.1. Unless all parties agree that an exhibit

24 shall be withdrawn, all exhibits will be admitted without objection at trial, except

25 those exhibits listed below in the chart below. The objections and grounds therefor

26 are reflected in the Pre-Trial Exhibit Stipulation, which is being filed today.

27

28

015825\7126273.v1

| Plaintiffs Object to the Following of Defendant's Exhibits: | Defendant Objects to the Following of Plaintiffs' Exhibits: |
|---|---|
| DX 9-14 | PX CROSBY 2 |
| DX 18-22 | PX STONE 12 |
| DX 34-37 | PX STONE 14 |
| DX 44-55 | PX STONE 15 |
| DX 57-59 | PX DUFFY 5 |
| DX 61 | PX DUFFY 9 |
| DX 63-67 | PX RIDGERS 408-409 |
| DX 70-72 | PX RIDGERS 413-416 |
| DX7 75-76 | PX PHILLIPS 422-424 |
| DX78 | PX PHILLIPS 428 |
| DX 80-81 | PX 511-513 |
| DX83 | PX 531 |
| DX 85-87 | PX 534 |
| DX90-93 | PX 610-611 |
| DX96 | PX 613-615 |
| DX101 | PX 617-621 |
| DX109-110 | PX 656-666 |
| DX114-117 | PX 669 |
| DX119 | PX 725-726 |
| DX121 | PX 774-777 |
| DX131-165 | PX 804-808 |
| DX167-171 | PX 810 |
| DX174 | |
| DX176 | |

43

| | |
|---|---|
| DX179 | |
| DX181 | |
| DX196 | |
| DX198-201 | |
| DX203 | |
| DX205-206 | |
| DX224-225 | |
| DX228-229 | |
| DX231-232 | |
| DX236-237 | |
| DX246 | |
| DX259 | |
| DX264-265 | |
| DX269-271 | |
| DX274 | |
| DX277-279 | |
| DX281-282 | |
| DX286-287 | |
| DX292-293 | |
| DX295 | |
| DX297 | |
| DX299-301 | |
| DX303 | |
| DX310-312 | |
| DX314-315 | |
| DX317-318 | |
| DX320-321 | |

44

| | |
|---|---|
| DX339 | |
| DX358 | |
| DX364 | |
| DX366 | |
| DX368-369 | |
| DX371 | |
| DX374-383 | |
| DX386 | |
| DX390 | |
| DX392 | |
| DX411-413 | |
| DX419-430 | |
| DX432-436 | |
| DX441-442 | |
| DX457 | |
| DX461-469 | |
| DX475-479 | |
| DX483-486 | |
| DX488 | |
| DX518 | |
| DX524-525 | |
| DX537-541 | |
| DX551 | |
| DX560-561 | |
| DX565-568 | |
| DX1034-1036 | |
| DX1392 | |

45

| | |
|---|---|
| DX1396-1397 | |
| DX1400-1401 | |
| DX1403 | |
| DX1411-1413 | |
| DX1416-1418 | |
| DX1426-1431 | |
| DX1437-1442 | |
| DX1450 | |

## 11.   WITNESS LISTS

The parties' Second Revised Joint Witness List has been filed with the Court.

Only the witnesses identified on the lists will be permitted to testify (other than solely for impeachment, with the exception that Plaintiffs are disclosing a rebuttal damages expert to rebut Defendant's new damages expert, Ms. Rusnak, on Friday, February 7, 2020.

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7.  For this purpose, the depositions reflected in the chart of designations shall be lodged with the Clerk as required by L.R. 32-1.

Plaintiffs' and Defendant's objections to the presentation of testimony by deposition, are reflected in the deposition designation chart required by this Court, which have been filed in accordance with the Court's orders.

## 12.   EXPERT WITNESSES

**Plaintiffs' expert witnesses:**

Ty Sagalow

Robert Wunderlich, Ph.D.

Rebuttal damages expert to Shanon Rusnak (to be disclosed this Friday).

46

1

2      **Defendant's expert witnesses:**

3      Peter Evans

4      Shannon Rusnak

5      Professor John B. Quigley (designated to preserve error and for offer of

6      proof)

7      Dr. Ingrid Detter de Frankopan  (designated to preserve error and for offer of

8      proof)

9      Frank Lowenstein (designated to preserve error and for offer of proof)

10

11   **13.   <u>MOTIONS</u>**

12      The following law and motion matters and motions in limine, and no others,

13   are pending or contemplated:

14      1.      **Plaintiffs' Motions:**

15             a.      <u>Plaintiffs' Motion to Strike or Exclude Portions of Ms. Rusnak's</u>

16                     <u>Damages Opinions (Dkt. 244)</u>:  Plaintiffs filed a motion to strike

17                     portions of the new damages opinions offered by Defendant's

18                     substitute damages expert Ms. Rusnak.  Defendant has opposed

19                     this motion (Dkt. 252)

20             b.      Plaintiffs reserve the right to file a motion regarding

21                     Defendant's expert Peter Evans, who was named as substitute

22                     for Anthony Clark.

23             c.      <u>MIL No. 1:</u> Plaintiffs' Motion in Limine to Bar Evidence and

24                     Argument about the Court's First Summary Judgment Order.

25             d.      <u>MIL No. 2:</u> Plaintiffs' Motion in Limine to Preclude Defendant

26                     from Contradicting Its Denial-of-Coverage Letter.

27             e.      <u>MIL No. 3:</u> Plaintiffs' Motion in Limine to Bar Evidence or

28                     Argument that Defendant's Denial Was Reasonable Because of

47

Israel's Conduct Directed Toward Gaza.

      f.     <u>MIL No. 4</u>: Plaintiffs' Motion to Bar Evidence or Argument that Plaintiffs' Damages May Be Offset by Tax Credits.

    **2.**    **Defendant's Motions:** Defendant filed the following Motions in Limine:

      a.     <u>MIL No. 1</u>:  Defendant's Motion in Limine Regarding Untimely Disclosure of Expert and Document Production.

      b.     <u>MIL No. 2</u>:  Defendant's Motion in Limine Regarding Extrinsic Information.

      c.     <u>MIL No. 3</u>:  Defendant's Motion in Limine Regarding Other Claims/Lawsuits and Claim Authority Levels.

      d.     <u>MIL No. 4</u>:  Defendant's Motion in Limine Regarding Robert Wunderlich.

      e.     <u>MIL No. 5</u>:  Defendant's Motion in Limine Regarding Sanction Against Expert Jay Shapiro.

**14.**    <u>**BIFURCATION**</u>

None.

    The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede all pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated: _____, 2020

_____
UNITED STATES DISTRICT JUDGE

48

015825\7126273.v1

1

2    Approved as to form and content.

3

4    DATED:  February 6, 2020                    SUSMAN GODFREY L.L.P.

5                                                */s/ Kalpana Srinivasan*
                                                 KALPANA SRINIVASAN (237460)
6                                                ksrinivasan@susmangodfrey.com
                                                 AMANDA K. BONN (270891)
7                                                abonn@susmangodfrey.com
                                                 CATRIONA LAVERY (310546)
8                                                clavery@susmangodfrey.com
                                                 SUSMAN GODFREY L.L.P.
9                                                1900 Avenue of the Stars, Suite 1400
                                                 Los Angeles, CA 90067-6029
10                                               Tel: (310) 789-3100
                                                 Fax: (310) 789-3150

11                                               JACOB W. BUCHDAHL
12                                               (*pro hac vice*)
                                                 jbuchdahl@susmangodfrey.com
13                                               SUSMAN GODFREY L.L.P.
                                                 1301 Avenue of the Americas
14                                               32nd Floor
                                                 New York, NY 10019-6023
15                                               Tel: (212) 336-8330
                                                 Fax: (212) 336-8340

16                                               *Attorneys for Plaintiffs*

17                                               */s/ Christopher W. Martin*
18                                               MARC J. SHRAKE
                                                 FREEMAN MATHIS & GARY, LLP
19                                               550 South Hope Street, Suite 2200
                                                 Los Angeles, CA 90071-2631
20                                               Tel: (213) 615-7039
                                                 -and-
21                                               CHRISTOPHER W. MARTIN
                                                 (*pro hac vice*)
22                                               MELINDA R. BURKE (*pro hac vice*)
                                                 MARTIN DISIERE JEFFERSON
23                                               AND WISDOM LLP
                                                 9111 Cypress Waters Boulevard
24                                               Suite 250
                                                 Dallas, TX 75019
25                                               Tel: (214) 420-5500
                                                 Fax: (214) 420-5501
26                                               burke@mdjwlaw.com

27                                               *Attorneys for Defendant*

28

49

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Attestation Regarding Signatures**

I, Kalpana Srinivasan, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

*/s/ Kalpana Srinivasan*
Kalpana Srinivasan

## **CERTIFICATE OF SERVICE**

I certify that on February 6, 2020, I filed the foregoing with the Clerk of the United States District Court for the Central District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ Kalpana Srinivasan*
Kalpana Srinivasan

50

015825\7126273.v1