1   KALPANA SRINIVASAN (237460)
    ksrinivasan@susmangodfrey.com
2   AMANDA K. BONN (270891)
    abonn@susmangodfrey.com
3   CATRIONA LAVERY (310546)
    clavery@susmangodfrey.com
4   CHELSEA SAMUELS (315257)
    csamuels@susmangodfrey.com
5   SUSMAN GODFREY L.L.P.
    1900 Avenue of the Stars, Suite 1400
6   Los Angeles, CA 90067-6029
    Tel: (310) 789-3100
7   Fax: (310) 789-3150

8   JACOB W. BUCHDAHL (*pro hac vice*)
    jbuchdahl@susmangodfrey.com
9   SUSMAN GODFREY L.L.P.
    1301 Avenue of the Americas, 32nd Floor
10  New York, NY 10019-6023
    Tel: (212) 336-8330
11  Fax: (212) 336-8340

12  *Attorneys for Plaintiffs*

13                  UNITED STATES DISTRICT COURT

14                  CENTRAL DISTRICT OF CALIFORNIA

15                        WESTERN DIVISION

16

17

| | |
|---|---|
| 18  UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,  Plaintiffs,  v.  ATLANTIC SPECIALTY INSURANCE COMPANY,  Defendant. | Case No.: 2:16-cv-4435-PA-MRW  The Honorable Percy Anderson Dept. 9A  **REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE OR EXCLUDE PORTIONS OF MS. RUSNAK'S DAMAGES OPINIONS**  Date: Monday, Feb. 10, 2020 Time: 1:30 p.m. Place: Courtroom 9A Trial Date: February 18, 2020 |

27

28

7126309v1/015825

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................... 1

II.    ARGUMENT ......................................................................................... 1

       A.     Ms. Rusnak's Amortization Deduction Opinion Should Be Excluded ........... 1

              1.     The Policy Does Not Permit Reducing "Necessary" Costs
                     Because they Are "Also Necessary" for Future Episodes. ................... 1

              2.     Ms. Rusnak Has No Other Basis For Her Opinion that
                     Plaintiffs' "Necessary" Costs Should Be Reduced by $1.8
                     Million. ................................................................................... 2

              3.     Ms. Rusnak's Inconsistent Treatment of Episodes 7-10 in the
                     "As Is" and "But For" Worlds Renders Her Methodology
                     Unreliable. ............................................................................. 4

              4.     Finally, Defendant Offers No Justification for Failing to
                     Quantify the Amortization Opinion in Mr. Shapiro's Report. ............. 6

       B.     Ms. Rusnak's Tax Credit Deduction Opinion Should Be Excluded ............... 7

              1.     California Law Does Not Permit the Tax Deduction. ........................ 7

              2.     The Policy Does Not Permit the Tax Deduction. ............................ 9

       C.     Ms. Rusnak's Amortization Deduction Opinion Should Be Excluded ........ 12

III.   CONCLUSION ................................................................................... 12

7126309v1/015825

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*DePalma v. Westland Software House*,
 225 Cal. App. 3d 1534 (1990) ................................................................. 7, 8, 9

*Drummond v. Temmerman, Desmarais & Phillips, LLP*,
 2009 WL 1611281 (Cal. Ct. App. June 10, 2009) ................................... 8, 9

*In re Libor-Based Financial Instruments Antitrust Litig.*,
 299 F. Supp. 3d 430 (2018) ......................................................................... 6

*Unilab Corp. v. Angeles-IPA*,
 244 Cal. App. 4th 622 (2016) ...................................................................... 9

**Other Authorities**

California Rule of Court 8.1115(a) ................................................................... 8

Fed. R. Civ. P. 26 ............................................................................................. 3

7126309v1/015825

1   **I.    INTRODUCTION**

2   By Ms. Rusnak's own calculation, it cost Plaintiffs approximately $6.9 million more

3   to film episodes 2-6 of *Dig* than Plaintiffs budgeted. That number is incredibly close to

4   what Plaintiffs themselves calculate their damages to be. Ms. Rusnak does not dispute that

5   the forced relocation out of Israel and to New Mexico and Croatia is what caused Plaintiffs

6   to spend approximately $6.9 million over budget.

7   Instead, Ms. Rusnak contends that Plaintiffs should not be paid the full amount of

8   those potential extra expenses under the Policy because (1) some of those expenses were

9   for "semi-variable" or "fixed type of expense[s]" like building sets that also benefited

10   Plaintiffs when they filmed additional episodes in the future and (2) Plaintiffs received

11   more favorable tax credits than they would have if they had remained in Israel. Bonn Reply

12   Decl. Ex. 1 (Rusnak Dep.) at 22:19. Neither of these deductions is permitted by the Policy

13   or supported by a reliable methodology that comports with the law.

14   **II.    ARGUMENT**

15   **A.    Ms. Rusnak's Amortization Deduction Opinion Should Be Excluded.**

16   Ms. Rusnak's "amortization deduction" opinion is an unreliable methodology—

17   without foundation in the Policy itself, industry practice, or any accounting rules—which

18   improperly conceives of the "but-for" world.

19   **1.    The Policy Does Not Permit Reducing "Necessary" Costs Because they Are "Also Necessary" for Future Episodes.**

20   The Policy provides the "amount of [Plaintiffs'] loss will be determined based on":

22   1.    All necessary 'Insurable Production Cost' you incur to complete
23          the 'Insured Production' that exceeds the amount of 'Insurable
          Production Cost' you would have incurred if the covered cause
          of loss had not occurred.

24   Bonn Decl. Ex. 1 (Policy) at ATL003106. Neither Defendant nor Ms. Rusnak disputes that

25   ***all*** of Plaintiffs' amortizable expenses incurred in New Mexico and which Plaintiffs

26   allocated to episodes 2-6 were actually "necessary" to complete production of those

27   episodes. Ms. Rusnak admitted as much in her deposition yesterday:

28   Q.    [Y]ou don't dispute, do you, that the prep, wrap, and all series
          expenses that plaintiffs incurred in New Mexico and that

plaintiffs' bookkeeping allocated to episodes two through six were actually necessary in order for plaintiffs to complete filming of episodes two through six?

A.   *I don't know the answer to that with respect to the all-series expenses. With respect to the prep and wrap, I would say yes, they were necessary for episodes two through six* . . . .

Bonn Reply Decl. Ex. 1 (Rusnak Dep.) at 38:25-39:9 (emphasis added).

Instead, Ms. Rusnak opines that approximately $1.8 million of those expenses should be deducted from Plaintiffs' claim because they were "***also necessary***" to produce episodes 7-10.[1] But nothing in the Policy allows Defendant to avoid paying for "necessary" Insurable Production Cost simply because Plaintiffs might ***also*** benefit from those expenditures in the future as well. To the contrary, as Plaintiffs' opening brief pointed out, the definition of "Insurable Production Cost" only permits deductions for (1) the specifically-enumerated items in subsections 4(a)-(c) or (2) items "specifically stated not to be 'Insurable Production Costs' in an endorsement to this Policy." Ex. 1 (Policy) at ATL003081-82. Defendant's brief simply ignores this Policy language altogether.

**2.    Ms. Rusnak Has No Other Basis For Her Opinion that Plaintiffs' "Necessary" Costs Should Be Reduced by $1.8 Million.**

Other than the Policy's definition of "Loss"—which, as shown above, supports Plaintiffs' position—Ms. Rusnak offered no other reliable basis for her opinion that Plaintiffs' "necessary" expenses incurred to complete episodes 2-6 "should" be reduced because they supposedly saved Plaintiffs $1.8 million in filming future episodes 7-10.

Neither Defendant nor Ms. Rusnak disputes that her approach to retroactively "re-allocating" amortizable expenses when future episodes are ordered is inconsistent with Plaintiffs' ordinary business practice and the custom in the television production industry, as set forth in the declaration of Ms. Markus-Caffrey. *See* Markus-Caffrey Decl. ¶ 12.

Defendant contends that Ms. Markus-Caffrey's declaration is a late-disclosed expert opinion. Not so. *First*, Ms. Markus-Caffrey is a fact witness with personal knowledge of Plaintiffs' ordinary business practices, customary television production finance practices,

---

[1] Bonn Reply Decl. Ex. 1 (Rusnak Dep.) at 38:11-39:12 ("I'm opining that those expenses were also necessary to film seven through 10").

7126309v1/015825

and extra expenses incurred in connection with the *Dig* production for which she was the senior finance executive. *Second*, even if Ms. Markus-Caffrey's declaration could be read as disclosing an expert opinion, it is timely and properly disclosed in response to Defendant's new report from Ms. Rusnak. *See* Fed. R. Civ. P. 26(a)(2)(C) (fact witnesses who also offer expert opinions need only disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify" rather than an expert report); Fed. R. Civ. P. 26(a)(2)(D) (such disclosure is timely if "intended solely to contradict or rebut evidence on the same subject matter identified by another party" and made "within 30 days after the other party's disclosure").

Defendant suggests that some sort of unnamed "accounting principles" support Ms. Rusnak's approach, Opp. at 13, but Ms. Rusnak testified otherwise:

> Q.    Is there any accounting rule or accounting principle that serves as the basis for your opinion that the amortizable New Mexico expenses in part should have been allocated to episodes seven through 10?
>
> A.    Well, it's effectively the policy language –
>
> Q.    So –
>
> A.    -- that dictates the calculation.
>
> *        *        *
>
> Q.    Any other basis besides the policy language?
>
> A.    Well, it's inherently the policy language and, you know, the matching of the expenses to the appropriate event.

Bonn Reply Decl. Ex. 1 (Rusnak Dep.) at 32:10-33:12. Ms. Rusnak's opinion that Plaintiffs' "necessary" Insurable Production Cost "should" be re-allocated to future episodes 7-10 and then deducted is nothing more than her *ipse dixit*—unsupported by the Policy language, television industry custom and practice, or any accounting principles.

///

///

///

3

### 3.   Ms. Rusnak's Inconsistent Treatment of Episodes 7-10 in the "As Is" and "But For" Worlds Renders Her Methodology Unreliable.

The only other supposed basis Ms. Rusnak offers to support her opinion that $1.8 million in amortizable expenses "should" be deducted is her say-so that otherwise "there would have been a windfall" as the "insured would have been able to produce episodes seven through 10 without incurring any prep or wrap or a significant amount of all-series costs." *Id.* (Rusnak Dep.) at 100:4-15. But this say-so merely reflects Ms. Rusnak's failure to reliably conceive of and account for the relevant "but-for" world.

As Plaintiffs' motion and Ms. Markus-Caffrey's declaration pointed out, one must assume that Plaintiffs would have filmed future episodes 7-10 in **both** (1) the "as-is" world in which Plaintiffs relocated to New Mexico and Croatia **and** (2) the hypothetical "but-for" world in which they continued filming in Israel.

Yet Ms. Rusnak conceded in her deposition that whether and where episodes 7-10 would have filmed in the "but-for" world "***didn't factor into the calculations as I presented it***." Bonn Reply Decl. Ex. 1 (Rusnak Dep.) at 43:7-15. Indeed, Ms. Rusnak considered "the locked-pattern budget" for filming in Israel "to be a proxy" for "what plaintiffs would have spent in a but for world where they continued filming in Israel," but that budget "was created at a time when plaintiffs anticipated filming only a pilot and episodes two through six . . . ." *Id.* at 24:17-25, 45:1-5. But Ms. Rusnak now agrees that the "but-for" world is one in which episodes 7-10 also would have filmed in Israel:

> Q.   In your conception of a hypothetical but-for world where the covered cause of the loss had not occurred, would plaintiffs have still filmed episodes seven through 10?
>
> A.   ***I would assume so.***
>
> Q.   In your conception of a hypothetical but-for world where the covered cause of the loss had not occurred, where would plaintiffs have filmed episodes seven through 10?
>
> A.   ***I would think it would make the most sense that they would continue filming in Israel.***

*Id.* at 45:6-10, 18-23.

7126309v1/015825

Ms. Rusnak contends that she made her amortization deduction in the "as-is" world to avoid giving Plaintiffs a "windfall." *Id.* at 100:12. In fact, due to Ms. Rusnak's failure to consider episodes 7-10 in the "but-for" world, the opposite is true. In the "hypothetical" but-for world in which the insured event did not occur, ***Plaintiffs*** would have been the beneficiaries of any future savings on episodes 7-10 resulting from their previous expenditures on episodes 2-6. For instance, if Plaintiffs built a set required to film episodes 2-6 in Israel, they would have been able to use the same set in the future on episodes 7-10 or any other future episode if needed and retain any resulting savings for themselves.

In the "as-is" world, Plaintiffs were damaged (for instance) because they had to build items like sets twice or three times—once in Israel and yet again in New Mexico and/or Croatia. Yet rather than permitting Plaintiffs to be the full beneficiaries of those expenses to the extent they offered savings on future episodes—as Plaintiffs would have been in a hypothetical "but-for" world—Ms. Rusnak instead opines that ***Atlantic*** should retain $1.8 million in such benefits for itself at Plaintiffs' expense. In other words, the "windfall" under this one-sided approach goes to Atlantic, not Plaintiffs.

Neither Defendant nor Ms. Rusnak disputes that she failed to (1) account for Plaintiffs' filming of episodes 7-10 in the "but-for" world or (2) make a similar "re-allocation" of amortizable expenses evenly across episodes 2-10 (as opposed to 2-6). Nor do they offer any explanation why it is a reliable methodology, consistent with *Daubert*, to treat amortization differently in the "as-is" and "but-for" worlds. To the contrary, Ms. Rusnak admitted that whatever approach is taken with respect to amortization must be undertaken consistently in both the "as-is" and "but-for" worlds:

> Q.   But your view is that whatever the amortizable approach is whether you weight the pilot 1.5X or you weight all of the episodes equally, that same approach to weighting should be taken in looking both at amortizing the actual costs and in considering the but-for world; is that correct?
>
> A.   ***That makes sense, yes***.

*Id.* at 25:6-13. Defendant argues that this issue merely goes to the "weight" of Ms. Rusnak's opinions rather than their admissibility, but that is not the case.

5

Courts carrying out their "gatekeeper" function under *Daubert* recognize that an expert's methodological approach to accounting for the "but-for world" must "be constructed in a reasonable way such that a reasonable approximation of damages may be made." *In re Libor-Based Financial Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 560 (2018). By contrast, an "oversimplification that fails to consider important aspects of the but-for world" is an unreliable "methodology" for calculating damages and warrants exclusion. *Id.* (granting motion to exclude expert's damages opinion for "failing to take into account not only the applicable legal standard . . . but also other relevant aspects of the but-for world"). That is precisely the case here. Ms. Rusnak re-amortized expenses across episodes 2-10 in the "as-is" world, while only considering episodes 2-6 in the "but-for" world. Ms. Rusnak admits that the same method for amortization must be used in both the "as-is" and "but-for" worlds and yet she failed to do so. Because her methodology fails to account for "relevant aspects of the but-for" world, it unreliable and inadmissible. *Id.*

### 4. Finally, Defendant Offers No Justification for Failing to Quantify the Amortization Opinion in Mr. Shapiro's Report.

Finally, Ms. Rusnak's improper amortization deduction should be excluded because there is no justification for Defendant's failure to include that opinion in Mr. Shapiro's report. Mr. Shapiro spotted what he called a "potential" deduction based on re-allocating certain expenses to episodes 2-10. Mr. Shapiro testified that he offered this "just as an observation" and that he had not actually quantified any reduction in Plaintiffs' damages. Bonn Decl. Ex. 2 at 120:24. Ms. Rusnak concedes this point:

> Q.    But [Mr. Shapiro] did not actually calculate or make the $1.8 million deduction that you did; is that correct?
>
> A.    That's correct.

Bonn Reply Decl. Ex. 1 (Rusnak Dep.) at 21:7-10. Why didn't Mr. Shapiro calculate the deduction at the time of his report and by the deadline? Defendant offers no explanation for that whatsoever. Plaintiffs are prejudiced by having to spend precious time in the critical weeks before trial attempting to digest and rebut this newly-disclosed opinion at the last minute—when Defendant could and should have disclosed any such opinion two years ago.

Remarkably, Defendant contends that *Plaintiffs* somehow (1) "waived" any argument against such a hypothetical deduction by not submitting a rebuttal expert report to Mr. Shapiro's offhand and unquantified "observation" that such a "possible reduction" might be appropriate and (2) are precluded from offering any rebuttal to Ms. Rusnak's opinion now. Bonn Decl. Ex. 2 at 9; Bonn Decl. Ex. 3 at 121:24. There was little need to submit an expert rebuttal to Mr. Shapiro's "observation" which he did not actually quantify as resulting in a reduction to Plaintiffs' damages. Yet now, on the eve of trial, Defendant has produced a new opinion converting this "observation" into a methodology for calculating a $1.8 million reduction to Plaintiffs' damages. The notion that Defendant may submit a new opinion quantifying a material reduction to damages on the eve of trial—but that it is Plaintiffs who are somehow tardy in rebutting it—is utterly baseless.

Ms. Rusnak's amortization deduction opinion should be excluded.

## B.   Ms. Rusnak's Tax Credit Deduction Opinion Should Be Excluded.

In addition, Ms. Rusnak's opinion that Plaintiffs' losses should be offset by virtue of tax credits they received is not supported by California law or the Policy itself.

### 1.   California Law Does Not Permit the Tax Deduction.

*First*, Defendant attempts to minimize the holding of *DePalma v. Westland Software House*, 225 Cal. App. 3d 1534, 1537 (1990). In that case, the appellant sought to argue that the respondent "had received investment *tax credits*"—in addition to depreciation allowances—"for the purchase of the computer system at issue." *Id.* (emphasis added). The appellant argued that "if received, such tax benefits should be considered as an offset to any compensatory damage award to which the respondent might be entitled thus lowering appellant's liability." The Court of Appeal disagreed as a matter of law, holding that "tax consequences should not be considered as offsets for defendants *in breach of contract actions*"—not merely in actions where Defendant's breach caused the loss and the resulting tax savings. *Id.* at 1540 (emphasis added).

The court in *DePalma* justified its broad holding because "[t]here is a deterrent value against breaching a contract if contracting parties know they must compensate the other

party in full, without being able to subtract any tax benefits the other party might receive."

*Id.* at 1545. The same rationale applies with equal force here—there is a deterrent value against insurance companies breaching their policies if they know they must pay the full amount of a covered claim, without being able to subtract any tax benefits the insured might receive. The court in *DePalma* explained:

> [T]ax benefits should be received by only those for whom the government intended them. In the present case, if respondent received an investment ***tax credit for purchasing the computer system***, it was because the government was encouraging the purchase of such systems by conferring credits. For this court to rule such a subsidy should now in effect be ***taken away from respondent and credited to appellant*** would be at odds with the purpose of the credit; it would also be tantamount to awarding appellant government funding to subsidize his breach of contract. Since this court does not believe taxpayers should subsidize those who have not fulfilled their contractual obligations, we find little merit in appellant's theory.

*Id.* at 1545-46 (emphasis added).

But that is precisely what Defendant advocates here—taking away a tax credit or subsidy offered by the State of New Mexico to attract Plaintiffs to film there and instead awarding it to Defendant, an insurance company that has been found to have breached its contractual obligations to Plaintiffs. The California Court of Appeal made clear in *DePalma* that such a result is contrary to California law: "[A]s the United States Supreme Court . . . stated: 'it is more appropriate to give the defrauded party the benefit even of windfalls than to let the fraudulent party keep them. Similarly, in actions for breach of contract, this court favors parties who honor their promises, not those who breach them." *Id.* at 1546 (citations omitted).

*Second*, Defendant cites *Drummond v. Temmerman, Desmarais & Phillips, LLP*, 2009 WL 1611281, at *1 (Cal. Ct. App. June 10, 2009).[2] That case fails to undermine *DePalma*'s application here. In *Drummond*, the plaintiffs argued "their former attorney" took "too large a fee in connection with certain probate litigation in which he represented

---

[2] This case is unpublished. Under California Rule of Court 8.1115(a), it should not be cited or relied upon. Plaintiffs do not rely upon this case—instead, they briefly address it because the Court inquired about it during the last hearing and Defendant cited it in their brief.

8

them." The contingency fee agreement provided "the fee would be 'a percentage of the net amount recovered for Client,'" meaning "the net amount of property recovered by settlement, judgment, or arbitration, after deducting the amount of expenses incurred in connection with prosecution of the action . . . . ." *Id.*

The plaintiffs argued that the "net amount recovered" did not actually mean the "net amount of property recovered by settlement, judgment, or arbitration," but rather was "the sum actually distributed to plaintiffs, and thus required the deduction of taxes before Desmarais's fee was calculated . . . ." The Court of Appeal disagreed, holding there was no evidence that a fee agreement providing a "contingent fee calculated on 'net amount recovered' in a will contest necessarily contemplates the deduction of estate taxes before the fee is determined." *Id.* For the reasons set forth below, the same is true here—nothing in the Policy suggests that "Insurable Production Cost" is net of tax credits.[3] Thus, if anything, *Drummond* only confirms that it would not be appropriate to deduct tax credits under the Policy's definition of "Insurable Production Cost."

### 2.    The Policy Does Not Permit the Tax Deduction.

Ms. Rusnak's tax credit deduction is also barred by the Policy itself.  "Insurable Production Cost" under the Policy includes "all costs" except those (1) enumerated in sub-paragraphs 4(a)-(c) or (2) "specifically stated not to be 'Insurable Production Costs' in an endorsement to this policy." Bonn Decl. Ex. 1 (Policy) at ATL003081-82. Permitting an offset based on tax credits would render sub-paragraphs 4(a)-(c)—and the requirement in sub-paragraph 4(d) that any additional offset be "specifically stated in an endorsement"—a nullity. *See, e.g.*, *Unilab Corp. v. Angeles-IPA*, 244 Cal. App. 4th 622, 637-38 (2016).

---

[3] To be sure, the court in *Drummond* also rejected the plaintiffs' separate argument that *DePalma* had some relevance to the case. *Id.* at *11. But it did so as part of an extended discussion of the plaintiffs' blatantly inadequate briefing and appendix which violated multiple court rules and made a series of incoherent arguments. In that context, the court noted that "plaintiffs offer no cogent argument to support the application of that [*DePalma*] rule here" and instead "merely cite several cases without explaining their supposed significance." *Id.* The court observed that plaintiffs "have simply cited the case, filed a record, and left it for us to divine how the former might apply to the latter," and "decline[d] the implied invitation" to do so. *Id.*

9

Defendant contends that parol evidence demonstrates that "Plaintiffs included tax credits as a component of insurable production costs." Opp. at 19. But Defendant's cited evidence shows precisely the *opposite* is true. Defendant cites *Dig* application to the Policy, implying that it shows Plaintiffs subtracted "various tax credits" from Insurable Production Cost. *Id.* Wrong. Instead, it shows that the "Total Insurable Production Cost" of $25,000,000 included "all costs" and the "Total Net Insurable Cost" reduced that number to $20,000,000 by deducting only "script & writers fees; residual and royalty payments"— *i.e.*, the offsets in subparagraphs 4(a)-(c):



Shrake Decl. Ex. 2 at 192.

Defendant then cites an e-mail (depicted below) to suggest that this *Dig* application was based on a "mathematical calculation[] wherein Plaintiffs determine the gross cost of production, but then subtract various tax credits to determine the net production cost." Opp. at 19. Wrong, once again. This e-mail confirms that Plaintiffs' calculated the "Gross" budget for *Dig* to be $25,130,331 *before* deducting for "IS Tax Cr" (Israeli tax credits) and "CN Tax Cr" (Canadian tax credits).

///

///

10

From: John Gaskin [mailto:gaskin.john@gmail.com]
Sent: Tuesday, March 11, 2014 10:24 AM
To: Mark Winemaker ; Ryan Greig
Cc: Richmond, Randi (NBCUniversal); Markus, BJ (NBCUniversal)
Subject: DIG - Budgets as at 03-11-2014

Here are the Dig budgets as of 03-11-2014.

An overview looks like this:

|  |  |  |  |
|---|---|---|---|
|  |  | Pilot | 7,594,906.00 |
| Pattern | 3,507,085.00 |  |  |
|  | x 5 |  | 17,535,425.00 |
|  | Gross |  | 25,130,331.00 |
|  | IS Tax Cr |  | - 3,100,000.00 |
|  | CN Tax Cr |  | - 350,000.00 |
|  | Reduce 1 day IS,for Snow Shoot | - | 95,000.00 |
|  | Rough "Net" Estimate |  | 21,680,331.00 |
|  |  |  |  |
|  | Amort |  | 5,512,962.00 |
|  | Snow Shoot (In Pilot) |  | 1,502,177.00 |

Shrake Decl. Ex. 2 at 193. This gross budget of $25,130,331—before accounting for any tax credits—corresponds to the $25,000,000 "Total Insurable Production Cost" on Plaintiffs' *Dig* Policy application. The *Dig* Policy application further makes clear that Plaintiffs did not then deduct tax credits to arrive at the "Net Insurable Production Cost"—instead, they only deducted "script & writers fees; residual and royalty payments." Shrake Decl Ex. 2 at 192.

Defendant then tellingly characterizes Ms. Markus-Caffrey's and Wanda Phillips' deposition testimony as supposedly stating that "tax credits were included both when estimating costs of production and when calculating final costs of production" in connection with the Policy. Opp. at 20. Not surprisingly, the deposition testimony says no such thing. Ms. Markus-Caffrey disagreed with Defendant's counsel's suggestion that a "tax credit" would "lower the overall budgeted amount," answering clearly: "No."  Shrake Decl. Ex. 4 (Markus-Caffrey Dep.) at 104. When asked "why not," she explained "The budget's the budget." *Id.* Similarly, Defendant cites its own re-direct examination of its employee Wanda Phillips—who admitted during cross-examination by Plaintiffs' counsel that she did not "believe tax credit was part of" the "NBC Universal policy." Reply Bonn Decl. Ex. 2 (Phillips Dep.) at 76:25-78:20. But once again, Ms. Phillips' testimony on re-direct confirmed Plaintiffs' position:

Q.     [S]o could you please explain to me how tax credits that NBC might receive in connection with a production would figure into a loss that it might incur?

A.     So in a production budget, there are several line items, and so you insure, for the most part the production company will insure, they can insure two parts. They can insure the day-to-day cost, the production costs, insurable production cost. ***They can also insure items such as story, scenario, script, tax credits, and all of those things they would lose in the event of an abandonment***….

Shrake Decl. Ex. 6 at 275:3-20 (emphasis added). Ms. Phillips referenced a hypothetical Policy insuring "items such as story, scenario, script, tax credits." But of the items in that list, only "[s]tory" and "scenario"—and not "tax credits"—are permitted offsets against "Insurable Production Cost" based on the actual language in Plaintiffs' Policy. Bonn Decl. Ex. 1 (Policy) at ATL003081-82 (Paragraph 4(c)).

Neither California law nor the plain language of the Policy itself permits Plaintiffs' necessary "Insurable Production Cost" or losses to be offset by virtue of any tax credits they received. Ms. Rusnak's opinion to the contrary must be excluded.

## C.     Ms. Rusnak's Amortization Deduction Opinion Should Be Excluded.

Finally, Ms. Rusnak's new opinions critiquing Mr. Wunderlich's calculations as being "inflated" by virtue of certain Israeli expenditures must be excluded. Defendant does not contest that these are new opinions. Nor could it do so, as Mr. Shapiro admittedly ***overlooked*** the fact that Plaintiffs incurred ***any*** expenses in Israel. Opp. at 21. Once again, Defendant offers no justification why Mr. Shapiro could not have offered the specific opinions Ms. Rusnak does with respect to particular aspects of Mr. Wunderlich's calculations—other than the obvious reason that Mr. Shapiro simply did not realize anything had been spent in Israel.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and exclude Ms. Rusnak's damages opinions concerning (1) an amortization deduction; (2) a tax credit deduction; and (3) critiques of specific calculations by Mr. Wunderlich that were not disclosed by Mr. Shapiro.

7126309v1/015825

DATED:  February 6, 2020

SUSMAN GODFREY L.L.P.

/s/ Amanda K. Bonn
KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
CHELSEA SAMUELS (315257)
csamuels@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

13

7126309v1/015825