# EXHIBIT 1

KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
CHELSEA SAMUELS (315257)
csamuels@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,<br><br>             Plaintiffs,<br><br>   v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br>             Defendant. | Case No.: 2:16-cv-4435-PA-MRW<br><br>The Honorable Percy Anderson<br>Dept. 9A<br><br>**PLAINTIFFS' REBUTTAL EXPERT DESIGNATION OF PHILIP W. KLINE**<br><br>Trial Date: February 18, 2020 |

015825\7129016

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, Universal Cable Productions LLC and Northern Entertainment Productions LLC, ("Universal or Plaintiffs") hereby designate and disclose **Philip W. Kline** as a rebuttal expert witness.

> Philip W. Kline
> Ankura Consulting Group
> 215 E. Washington St.
> Ann Arbor, MI 48104
> (734) 369-3574
> Philip.Kline@ankura.com

Plaintiffs designate Mr. Kline as an expert witness anticipated to testify in rebuttal to the opinions of Shannon Rusnak expressed in her expert report of January 17, 2020 ("Rusnak Report") concerning the incremental costs incurred by Plaintiffs due to the postponement and ultimate relocation of the production of *Dig* from Israel to New Mexico and Croatia.

Mr. Kline's rebuttal expert report reflecting a complete statements of all opinions he will express and the basis and reasons for them is attached hereto as Exhibit A. Mr. Kline's CV is attached to his rebuttal report as Appendix A. Fed. R. Civ. P. 26(a)(2)(B)(i).

Mr. Kline's rebuttal report, the accompanying schedules, and Appendix B to his report set forth the facts or data considered by Mr. Kline in forming his opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii).

The schedules attached to Mr. Kline's rebuttal report reflect exhibits that may be used to summarize or support his opinions. Fed. R. Civ. P. 26(a)(2)(B)(iii).

Mr. Kline's report and Appendix A to his report set forth his qualifications, including a list of all publications authored in the previous 10 years and a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition. Fed. R. Civ. P. 26(a)(2)(B)(iv)-(v).

Mr. Kline's report includes a statement of the compensation to be paid for the study and testimony in the case. Mr. Kline is a Managing Director at Ankura

Consulting Group ("Ankura").  Ankura is being compensated for Mr. Kline's time at the rate of $475 per hour. Ankura is being compensated for the work of other Ankura consultants at hourly rates less than $475 per hour. No part of Mr. Kline or Ankura's compensation depends on the outcome of this litigation. Fed. R. Civ. P. 26(a)(2)(B)(vi).

Plaintiffs hereby reserve the right to supplement, amend, or modify this Rebuttal Expert Witness Designation, including based on the expert witnesses identified by Defendant and their opinions, based on further information or documents which become available to Plaintiffs that reveal the need for additional expert witnesses to be identified, based on the outcome of potential law and motion proceedings, or as circumstances of the case may otherwise make appropriate.

Plaintiffs also reserve the right not to call any expert witness identified above, and to call in their case expert witnesses identified by Defendant who have been deposed. Plaintiffs also reserve the right to call any expert witnesses, whether or not designated, for purposes of impeaching the testimony of any expert witness offered by Defendant. Further, Plaintiffs reserve the right to call any lay witness as to any matter on which said lay witness may be qualified to give opinion testimony.

DATED:  February 7, 2020        SUSMAN GODFREY L.L.P.

                                            */s/ Amanda Bonn*
                                            KALPANA SRINIVASAN (237460)
                                            ksrinivasan@susmangodfrey.com
                                            AMANDA K. BONN (270891)
                                            abonn@susmangodfrey.com
                                            CATRIONA LAVERY (310546)
                                            clavery@susmangodfrey.com
                                            CHELSEA SAMUELS (315257)
                                            csamuels@susmangodfrey.com
                                            SUSMAN GODFREY L.L.P.
                                            1900 Avenue of the Stars, Suite 1400
                                            Los Angeles, CA 90067-6029

1
2

Tel: (310) 789-3100
Fax: (310) 789-3150

3
4
5
6
7

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

8
9

*Attorneys for Plaintiffs*

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>CERTIFICATE OF SERVICE</u>

2      I certify that on February 7, 2020, I served via email a copy of the foregoing

3  document on counsel of record for Defendant.

4                                        By: <u>*/s/ Amanda K. Bonn*</u>
                                              Amanda K. Bonn
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

015825\7129016

# Exhibit A

IN THE UNITED STATES DISTRICT COURT

CENTRAL DIVISION OF CALIFORNIA

WESTERN DIVISION


CASE NO: 12:16-cv-04435-PA-MRW

---

**UNIVERSAL CABLE PRODUCTIONS LLC and**

**NORTHERN ENTERTAINMENT PRODUCTIONS LLC**

**V.**

**ATLANTIC SPECIALTY INSURANCE COMPANY**

---


**REBUTTAL EXPERT REPORT OF PHILIP W. KLINE**


February 7, 2020


CONFIDENTIAL

**TABLE OF CONTENTS**

1. Qualifications ..................................................................................................................... 1

2. Assignment and Information Considered ........................................................................... 1

3. Executive Summary ........................................................................................................... 2

4. Background of Dispute ...................................................................................................... 4

5. Ms. Rusnak's Criticisms of Plaintiffs' Methodology ....................................................... 5

6. Ms. Rusnak's Incremental Cost Opinion .......................................................................... 6

  6.1. Inconsistent Treatment of Amortizable Costs Incurred in Israel .............................. 6

  6.2. Inconsistent Re-Amortization of "As Is" Expenses ................................................... 7

7. Signature .......................................................................................................................... 14

## 1. QUALIFICATIONS

1.    I am a Managing Director at Ankura Consulting Group, where my practice focuses on intellectual property (IP) valuation, litigation consulting, IP strategy, and transactional services.  I am a Certified Public Accountant (CPA) licensed in the state of Illinois.  During my career, I have assisted in the quantification of damages resulting from numerous causes of action, including patent infringement, copyright infringement, trademark infringement, theft of trade secrets, unfair competition, unjust enrichment, breach of contract, and false advertising.

2.    I have held a variety of leadership positions in industry organizations.  I was the American Bar Association (ABA), Intellectual Property Law (IPL) Section's liaison to the Licensing Executive Society's Intellectual Property Valuation and Standards Committee.  I am a past chair of the ABA, IPL Section's Monetization and Valuation of IP Committee and the past chair of the ABA, IPL Section's Economics of the Profession Committee.  I am a past member of the Certified Licensing Professional (CLP) Standards, Admissions, and Recertification Committee and the CLP Exam Development Committee.

3.    In addition to being a CPA, I have been named one of the World's Leading IP Strategists by Intangible Asset Management. I am also a Certified Licensing Professional (CLP) – a designation started by the Licensing Executive Society.  I hold a B.A. from The University of Southern California in Economics and International Relations, Magna Cum Laude.  I have also written several articles and have given presentations related to my profession.  My curriculum vitae is attached as Appendix A.

4.    Ankura is being compensated for my time at $475 per hour.  Ankura is being compensated for the work of other Ankura consultants at hourly rates less than $475 per hour.  No part of my compensation, or that of Ankura, depends on the outcome of this litigation.

## 2. ASSIGNMENT AND INFORMATION CONSIDERED

5.    I have been retained by Susman Godfrey LLP ("Counsel") on behalf of Universal Cable Productions, LLC and Northern Entertainment Productions, LLC (collectively "Plaintiffs") to review and, where I deem appropriate, respond to the opinions of Ms. Rusnak expressed in her expert report of January 17, 2020 ("Rusnak Report") concerning the incremental costs incurred by Plaintiffs due to the decision to move the production of *Dig* – a television show – from Israel to New Mexico and Croatia, which resulted from concern about certain terrorist acts in Israel.

6.    The sources I relied upon to develop my opinions in this matter are disclosed in the body of this Expert Report, the accompanying schedules, and Appendix B.  These sources include:

- The expert report of Ms. Shannon Rusnak;

- The Declaration of Ms. Barbara-Ann ("BJ") Marcus-Caffrey in Support of Plaintiffs' Motion to Strike or Exclude Portions of Ms. Rusnak's Damages Opinions;

- The deposition of Ms. Shannon Rusnak;

- The deposition of Ms. Barbara-Ann Markus-Caffrey; and

- Financial records produced by Plaintiffs.

1

7.    My consideration of such information is consistent with the practice of my peers that work as valuation and damages experts in commercial litigation.

## 3.   EXECUTIVE SUMMARY

8.    Ms. Rusnak has offered various criticisms of the methodology employed by Plaintiffs in quantifying incremental costs.  I understand that Ms. Markus-Caffrey identified specific expenses from the complete cost data for *Dig* ("Full Cost Bible") that were incurred as a result of moving the production from Israel to New Mexico/Croatia ("Insurance Cost Bible").[1]  While I have not been asked to confirm the results of her methodology, the methodology itself is reliable.  Furthermore, many of the criticisms that Ms. Rusnak has advanced of the methodology appear misplaced.

9.    Ms. Rusnak has attempted to determine the incremental costs incurred by Plaintiffs by deducting the Locked Pattern Budget for the production in Israel from the actual expenses incurred.  Specifically, she has performed the following steps:[2]

- Started with the actual costs to produce episodes 2 through 6 in New Mexico and Croatia as reported in the Production Recap Report of $21,351,171.

- Allocated a portion (5/6.5) of the amortizable costs incurred in Israel to the actual costs incurred in New Mexico and Croatia.  A denominator of 6.5 was used in the allocation to reflect the fact that the Pilot episode, which was filmed in Israel, was 90 minutes, while episodes 2-6 were each 60 minutes.  This increased the actual costs by $3,255,413 to $24,606,584.

- Re-amortized the amortizable costs incurred in New Mexico, that were originally amortized over episodes 2-6, over the full nine episodes shot in New Mexico.  This reduced "actual" costs associated with episodes 2-6 by $1,814,922 to $22,791,662.

- Deducted the $17,707,490 from the Locked Pattern Budget from the production in Israel, resulting in $5,084,172 in incremental costs.

- Deducted $1,637,756 in incremental tax credits/rebates to arrive at net incremental costs of $3,446,417.

10.    The following figure illustrates Ms. Rusnak's methodology:

---

[1]    Discussion with Ms. Markus-Caffrey.
[2]    Rusnak Report, pp. 8-9.

**Figure 1**
**Ms. Rusnak's Calculation of Incremental Costs[3]**



11.   Ms. Rusnak's incremental cost analysis is flawed for at least the following reasons:

- In the "as is" scenario, Ms. Rusnak allocates (5/6.5) of the amortizable costs incurred in Israel to episodes 2-6 while, in the "but for" scenario, she relies upon the Locked Pattern Budget, which allocated (5/6) of the amortizable expenses to episodes 2-6.[4]  It would be potentially defensible to use either the (5/6.5) or the (5/6) amortization consistently, but using one in the "as is" and another in the "but for" is indefensible.  Consistently adopting (5/6) or (5/6.5) would increase Ms. Rusnak's estimate of incremental costs by $217,284 or $362,603, respectively.[5]  As Ms. Rusnak has endorsed the (5/6.5) allocation, for simplicity of presentation, I have used it throughout my exemplary calculations below.

- In the "as is" scenario, Ms. Rusnak re-amortizes the amortizable costs for episodes 2-6 over episodes 2-10. She justifies this re-amortization based primarily upon what appears to be her own interpretation of "the policy language."[6]  However, the policy language allows for recovery of all costs "necessarily incurred as a result of the interruption."[7]  Ms. Rusnak does not dispute that at least all of the Prep and Wrap costs that she re-amortizes were "necessarily incurred as a result of the interruption." [8]  As such, this re-amortization is unnecessary.  Had Ms. Rusnak not performed the re-

---

3   Schedule 4.1 and Rusnak Report, Schedule 1.
4   Rusnak Report, p. 8 and Schedule 1.
5   Schedules 2.1 and 2.2.
6   Deposition of Ms. Rusnak, February 5, 2020, pp. 32-33.
7   ATL003073 - 127 at 103.
8   Deposition of Ms. Rusnak, February 5, 2020, pp. 38-39.

amortization, her measurement of incremental costs would have increased by $1,814,922.[9]

- Furthermore, even if one were to accept Ms. Rusnak's re-amortization of the "as is" scenario, she performed no equivalent re-amortization in the "but for" scenario. Correcting this inconsistency produces an increase to Ms. Rusnak's incremental cost of either $1,634,723 or $1,906,257, depending on whether the measurement is limited to episodes 2-6 or extended over the entire nine episodes.[10]

12.   Correcting for these inconsistencies produces the following results prior to the application of any incremental tax credits/rebates:

**Figure 2**
**Summary of Adjusted Rusnak Incremental Costs Prior to Application of Incremental Tax Credit/Rebates[11]**

| | Including Episodes 2 - 6 Amortization Cost: As Amortized | Including Episodes 2 - 6 Amortization Cost: Re-Amortized | Including Episodes 2 - 10 Amortization Cost: Re-Amortized |
|---|---|---|---|
| Rusnak Incremental Costs - Excluding Tax Incentives | $5,084,173 | $5,084,173 | $5,084,173 |
| Add: Adjustment for Consistent Amortization of Isreali Pilot Episode | $362,603 | $362,603 | $362,603 |
| Add: Adjustment for Treatment of Amortization | $1,814,922 | $1,634,723 | $1,906,257 |
| Adjusted Rusnak Incremental Costs | $7,261,698 | $7,081,500 | $7,353,033 |

13.   I note that these adjustments to Ms. Rusnak's methodology result in incremental costs that are generally consistent with those Ms. Markus-Caffrey calculated in the Insurance Cost Bible.[12]

## 4.   BACKGROUND OF DISPUTE

14.   I understand that Plaintiffs Universal Cable Productions LLC and Northern Entertainment Productions LLC are television production companies and are both subsidiaries of NBCUniversal Media,[13] a world leading media and entertainment company.[14]

15.   I understand that defendant Atlantic Specialty Insurance Company ("Atlantic") is an insurance company.[15] I understand that the Plaintiffs entered into a contract with Atlantic to insure the production of *Dig*.[16] Under that policy, Plaintiffs were entitled to recover certain costs necessitated by certain covered events, including terrorism.[17] The contract characterizes the recoverable costs as follows:

"*The amount of your loss will be determined based on:*

---

[9]   Rusnak Report, Summary.
[10]   Schedule 3.1.
[11]   Schedule 1.1.
[12]   Deposition of Barbara-Ann Markus-Caffrey, May 23, 2017, p. 54.
[13]   First Amended Complaint, p. 4.
[14]   www.nbcuniversal.com/who-we-are.
[15]   https://www.onebeaconentertainment.com/entertainment/pages/disclosures/underwriting-companies.page.
[16]   First Amended Complaint, p. 2.
[17]   ATL003073 - 127 at 106.

> *1. All necessary "Insurable Production Cost" you incur to complete the "Insured Production" that exceeds the amount of "Insurable Production Cost" you would have incurred if the covered cause of loss had not occurred;*
>
> *2. All other necessary expenses that reduce the amount of loss otherwise payable..."[18]*

16. I understand that production of the pilot episode of *Dig* began in Israel on or around June 1, 2014 and was completed on or around June 26, 2014.[19] Following completion of the production of the pilot, filming was put on hold during pre-production and preparation for episodes 2-6, with production of these remaining five episodes set to begin on July 20, 2014.[20] During this time, the security situation in Israel deteriorated as several Hamas terrorist attacks occurred. This resulted in production of episodes two through six in Israel to become postponed and ultimately moved from Israel to locations in New Mexico and Croatia.[21] The filming of episodes 2-6 started on or about October 2, 2014 and ran through November 12, 2014.[22] I understand that the production was extended by four ("back four") episodes which were filmed on or around November 17, 2014 through December 10, 2014.[23]

17. I understand that as a result of the forced production relocation, Plaintiffs submitted an insurance claim to Atlantic to cover the additional costs. I further understand that this litigation is a result of Atlantic's denial of the claim.[24]

## 5. MS. RUSNAK'S CRITICISMS OF PLAINTIFFS' METHODOLOGY

18. I understand that Plaintiffs' damages claim in this matter is consistent with the original Insurance Cost Bible created by Ms. Markus-Caffrey on behalf of Plaintiffs. I understand that she created the Insurance Cost Bible by reviewing the costs in the Full Cost Bible and selecting those that she believed to have been incremental.[25] As a gating matter, this methodology is fundamentally sound and, where the data is available, may be a more reliable method than using a high-level comparison – such as that performed by Ms. Rusnak – to determine incremental costs.

19. Ms. Rusnak has criticized the results of Plaintiff's methodology because the costs incurred for a given account in New Mexico were frequently higher than those incurred for the same account in Israel. For instance, Ms. Rusnak addresses the quantification of incremental New Mexico Prep costs as follows:

> *Wunderlich has claimed 100% of the New Mexico Prep account 1085 expenses in the amount of $1,477,588 as being duplicative of $921,795 in Israeli Prep account 1095 expenses allocated to episodes 2 through 6. As noted, Wunderlich's amount of extra expense is 160% of the original Israeli amount. Actual costs in Israeli Prep account 1095 were $213,624 under budget due at least in part to the early termination of filming in Israel, which further inflates Wunderlich's overstatement of extra expenses.[26]*

---

[18] ATL003073 - 127 at 106.
[19] Rusnak Report, p. 2.
[20] Rusnak Report, p. 2.
[21] Rusnak Report, p. 2.
[22] Rusnak Report, p. 2.
[23] Rusnak Report, p. 2.
[24] First Amended Complaint, pp. 2-4.
[25] Discussion with Ms. Markus-Caffrey.
[26] Rusnak Report, p. 5.

20.   Ms. Rusnak's criticism is misplaced.  The fact that the incremental cost is greater than the original
cost is expected.  I understand from Ms. Markus-Caffrey that producing TV shows in the U.S. is
generally more expensive than in Israel.[27]  In any event, based upon my review of the contract
language, there is no requirement that an incremental cost be lower than, or equal to, the equivalent
"but for" cost for it to be reimbursable.[28]

21.   Ms. Rusnak goes on to claim repeatedly that the Plaintiffs have performed inadequate due diligence
concerning the actual expenses incurred in Israel:

> *Wunderlich made no effort to determine what Prep (or Wrap) expenses had been
> incurred in Israel or whether all anticipated expenses had been incurred in Israel
> for Prep (or Wrap) had the production been completed there.* [29]

22.   This concern expressed by Ms. Rusnak appears to be overstated.  Ms. Markus-Caffrey testified in
deposition that largely all the Prep for episodes 2-6 had already occurred in Israel:

> *Q    Okay. Okay. But do you know whether all the prep had been done in Israel for Episodes
> 2 through 6 when the production was moved out of Israel?*
>
> *A.    Yes. My recollection is we completed all of the prep except for one week.[30]*

23.   I would further note that it is not necessary that a cost have been incurred in Israel for it to be a
reimbursable incremental cost.  As I understand the contract language, all that would be necessary is
that it would not have been incurred but for the insured event.[31]

## 6.  MS. RUSNAK'S INCREMENTAL COST OPINION

24.   As outlined above, Ms. Rusnak's analysis of incremental costs is premised on a comparison of actual
"as is" costs to budgeted "but for" costs.  I have identified the following primary errors with her
methodology:

- Ms. Rusnak inconsistently allocated amortizable costs between the Pilot and
episodes 2-6 in her "as is" and "but for" scenarios.

- Ms. Rusnak inappropriately and inconsistently re-amortized the amortizable
costs for episodes 2-6 over episodes 2-10.

25.   I address each of these in greater detail below.

## 6.1.  Inconsistent Treatment of Amortizable Costs Incurred in Israel

26.   Ms. Rusnak has amortized actual amortizable costs incurred in Israel based upon episode length,
which allocates 50% more cost to the Pilot due to it being a 90 minute episode versus the remaining
episodes which were 60 minutes.[32]  While this amortization methodology could conceptually be
appropriate, Ms. Rusnak did not address the fact that the Locked Pattern Budget—which Ms. Rusnak
used as a "proxy" for what Plaintiffs would have spent in a hypothetical "but-for" world in which

---

[27]   Discussion with Ms. Markus-Caffrey.
[28]   ATL003073 - 127 at 106.
[29]   Rusnak Report, p. 5.
[30]   Deposition of Barbara-Ann Markus-Caffrey, May 23, 2017, pp. 58-59.
[31]   ATL003073 - 127 at 106.
[32]   Rusnak Report, p. 8 and Schedule 1.

filming continued in Israel—amortized such costs evenly across the episodes.[33]  In deposition, Ms. Rusnak conceded that, whichever amortization methodology was used, it should be done consistently between the "as is" and "but for" scenarios:

> Q.   But your view is that whatever the amortizable approach is whether you weight the pilot 1.5 X or you weight all of the episodes equally, that same approach to weighting should be taken in looking both at amortizing the actual costs and in considering the but-for world; is that correct?
>
> A.   That makes sense, yes. [34]

27.   Ms. Rusnak could have addressed this inconsistency either by amortizing the "as is" expenses on the same basis as the Locked Pattern Budget – equally between the first six episodes – or adjusting the amortization in the Locked Pattern Budget to reflect a 50% higher allocation to the Pilot.  Either methodology would increase the incremental cost.  If both scenarios are amortized evenly, the incremental cost increases by $271,284.[35]  If both scenarios are amortized with more weight placed on the Pilot, the incremental cost increases by $362,603.[36]  In deposition, Ms. Rusnak stated that she believed it was appropriate to allocated more weight to the Pilot.[37]  Consistent with Ms. Rusnak's testimony that the 1.5X weighting for the Pilot is the correct approach, I have used the $362,603 in the rest of my exemplary analyses.  After adjusting for consistent amortization of the Pilot episode, Ms. Rusnak's incremental costs would be as follows:

**Figure 3**
**Adjusted Ms. Rusnak Incremental Costs – Consistent Amortization of the Pilot Episode[38]**

|  | Total |
| --- | --- |
| Rusnak Incremental Costs - Excluding Tax Incentives | $5,084,173 |
| Add: Adjustment for Consistent Amortization of Isreali Pilot Episode | $362,603 |
| Adjusted Rusnak Incremental Costs | $5,446,776 |

## 6.2.  Inconsistent Re-Amortization of "As Is" Expenses

28.   In the ordinary course of business, the Plaintiffs amortized those costs necessary for the completion of episodes 2-6 over those episodes and, when the production was extended, did not recalculate their amortization tables to reflect the extension.  From the perspective of cost accounting, this method of addressing the amortizable costs seems reasonable and appropriate. As such, the costs amortized to the back four episodes are only those additional costs necessary to make those episodes.  This amortization is shown in the following Figure:

---

[33]   UCP014836 - 881 at 878.
[34]   Deposition of Ms. Rusnak, February 5, 2020, p. 25.
[35]   Schedule 2.2.
[36]   Schedule 2.1.
[37]   Deposition of Ms. Rusnak, February 5, 2020, pp. 23-24.
[38]   Schedule 1.1.

**Figure 4**
**Ordinary Course of Business Amortization[39]**



29.    Ms. Rusnak artificially reduced her measurement of incremental costs by, in the "as is" but not the "but for" scenario, shifting amortizable costs originally amortized over episodes 2-6 to episodes 7-10.  Ms. Rusnak's revised amortization for the "as is" scenario is shown below: [40]

**Figure 5**
**Ms. Rusnak's Re-Amortization of "As Is" Costs[41]**



---

[39]  Schedule 6.1.
[40]  I note that while GAAP does allow for the writing-down of fixed assets that have been amortized over too long a period, it generally does not allow for the "writing-up" or "revaluing" of fixed assets that have been amortized over less than their useful life, which is what is suggested by Ms. Rusnak's re-amortization.
[41]  Schedule 6.2.

30.   Ms. Rusnak alleges that she made this adjustment based upon the policy language and the matching principle:

> Q.   Is there any accounting rule or accounting principle that serves as the basis for your opinion that the amortizable New Mexico expenses in part should have been allocated to episodes seven through 10?
>
> A.   Well, it's effectively the policy language --
>
> Q.   So –
>
> A.   -- that dictates the calculation.
>
> Q.   So when you say that there were amortizable New Mexico expenses which should have been allocated to episodes seven through 10, the basis for your opinion is the policy language; is that fair?
>
> A.   Yes.
>
> Q.   Any other basis besides the policy language?
>
> A.   Well, it's inherently the policy language and, you know, the matching of the expenses to the appropriate event.[42]

31.   Neither of these reasons is compelling.  The policy language states that Plaintiffs are entitled to recover "such extra expenses you necessarily incur as a result of the interruption."[43]  I understand from Ms. Markus-Caffrey that all of the costs originally amortized over episodes 2-6 were necessary to complete those episodes.  Significantly, Ms. Rusnak appears to concede that at least the Prep and Wrap costs originally allocated to episodes 2-6 were necessary to complete them—and does not offer a basis for disputing that the same is true for the All Series expenses:

> Q.   Let me just come back to my question which is a little bit different. I'm not really asking about also necessary, I just want to start from the baseline. You don't dispute, do you, that the prep, wrap and all series expenses that plaintiffs incurred in New Mexico and that plaintiffs' bookkeeping allocated to episodes two through six were actually necessary in order for plaintiffs to complete filming of episodes two through six?
>
> A.   I don't know the answer to that with respect to the all-series expenses. With respect to the prep and wrap, I would say yes, they were necessary for episodes two through six, but they were also necessary for seven through 10. Seven through 10 would not have been able to have been filmed without prep and wrap expenses. [44]

32.   As such, there is simply no basis in the claim language to alter the treatment of these expenses.

33.   Ms. Rusnak's alternative reason for re-amortizing the expenses from episodes 2-6 is the "matching of the expenses to the appropriate event."[45]  If the intention of Ms. Rusnak's analysis were to calculate the fully burdened cost of individual episodes, she may be correct that a re-amortization of costs

---

[42]   Deposition of Ms. Rusnak, February 5, 2020, pp. 32-33.
[43]   ATL003073 - 127 at 103.
[44]   Deposition of Ms. Rusnak, February 5, 2020, pp. 38-39.
[45]   Deposition of Ms. Rusnak, February 5, 2020, p. 33.

originally amortized to episodes 2-6 would be appropriate.  However, that is not the relevant inquiry.
The relevant inquiry is whether a given cost to complete the Insured Production was made necessary
by the move of production from Israel to New Mexico and Croatia.  The full costs necessary to
complete episodes 2-6 are therefore relevant even if they also may have benefitted episodes 7-10.

34.   Consider a set that was built in Israel and then had to be rebuilt in New Mexico.  The full cost of
recreating that set in New Mexico is incremental regardless of whether that set is used for one-episode
or 50 – but for the need to move to New Mexico, the cost to rebuild that set would not have been
incurred.  As such, the most straight-forward way to apply Ms. Rusnak's methodology would be to
compare the actual costs in episodes 2-6 with the Locked Pattern Budget for episodes 2-6, without
re-amortization.  This would increase Ms. Rusnak's calculation of incremental costs by $1,814,922.[46]

35.   Ms. Rusnak contends that this methodology is inappropriate because it would have resulted in a
windfall for Plaintiffs:

> Q.   *What are the accounting principles on which you based your opinion that the New
> Mexico amortizable expenses should have been allocated evenly across episodes two
> through 10?*
>
> A.   *It's the accounting foundation in years of analyzing extra expenses and the fact that those
> expenses benefited all of the episodes. Without allocating to those episodes, there would
> have been a windfall. Effectively, the insured would have been able to produce episodes
> seven through 10 without incurring any prep or wrap or a significant amount of all-
> series costs.[47]*

36.   However, under Ms. Rusnak's construct, costs that were incremental when filming started on
episodes 2-6 in New Mexico and Croatia would have ceased to be incremental when the production
was extended to episodes 7-10 resulting in a windfall to Atlantic.

37.   Furthermore, even if one were to accept Ms. Rusnak's opinion that the "as is" costs must be re-
amortized, her analysis is fatally flawed because she did not re-amortize the "but for" costs.  Ms.
Rusnak's analysis therefore assumes that the extension of production to episodes 7-10 only occurs in
the "as is" scenario, which could only make sense if one were to assume that the extension of the
production to episodes 7-10 resulted in some manner from the relocation of filming to New Mexico
and Croatia.  To my knowledge there is no basis for such an assumption and, in deposition, Ms.
Rusnak testified that she believes that in the "but for" scenario episodes 7-10 would have been filmed
in Israel:

> Q.   *In your conception of a hypothetical but-for world where the covered cause of the loss
> had not occurred, where would plaintiffs have filmed episodes seven through 10?*
>
> A.   *I would think it would make the most sense that they would continue filming in Israel.[48]*

38.   As such, any cost benefit to the Plaintiffs attributable to shooting episodes 7-10 should not reduce
incremental costs as it is not itself incremental – i.e., it would have occurred in both the "as is" and
"but for" scenarios.

---

[46]   Rusnak Report, p. 9 and Schedule 3.
[47]   Deposition of Ms. Rusnak, February 5, 2020, p. 100.
[48]   Deposition of Ms. Rusnak, February 5, 2020, p. 45.

CONFIDENTIAL

39.   If one wished to use the re-amortized "as is" costs, it would also be necessary to re-amortize the but-for costs to reflect the non-incremental nature of filming episodes 7-10.   As such, it may be appropriate to determine the additional "but for" costs associated with episodes 7-10, which did not appear in the Locked Pattern Budget. [49]   To do so, one could use the "as is" ratio of amortizable cost for episodes 7-10 versus episodes 2-6, approximately 18%, as a proxy for that same "but for" ratio.[50] This assumption would produce the following "but for" amortization, if done in a manner consistent with the Plaintiffs ordinary practice:

**Figure 6**
**Locked Pattern Budget Amortized Costs with Estimated "But For" Back Four Costs[51]**



40.   If these expenses were re-amortized consistent with Ms. Rusnak's treatment of "as is" expenses, it would produce the following distribution of expenses:

---

[49]   I note that Ms. Markus-Caffrey provided a similar "but for" re-amortization calculation in which she did not project any additional amortizable costs associated with episodes 7-10 in the "but for" scenario.   Ms. Markus-Caffrey's calculation accurately illustrates the error with Ms. Rusnak's methodology.   See the Declaration of Ms. Barbara-Ann ("BJ") Marcus-Caffrey in Support of Plaintiffs' Motion to Strike or Exclude Portions of Ms. Rusnak's Damages Opinions, pp. 6-10.
[50]   Schedule 3.6.
[51]   Schedule 6.3.

**Figure 7**
**Locked Pattern Budget Amortized Costs with Estimated "But For" Back Four Costs**
**Re-Amortized Consistent with Ms. Rusnak's "As Is" Scenario[52]**



41.   If the difference is measured between the re-amortized "as is" and "but for" scenarios over just episodes 2-6, this methodology would increase Ms. Rusnak's incremental costs by $1,634,723.[53]

42.   However, this adjustment does not fully address the flaw in Ms. Rusnak's methodology.   By amortizing incremental costs to episodes 7-10, but only considering episodes 2-6, she has artificially excluded incremental costs from her analysis.   Ms. Rusnak recognizes that episodes 7-10 were insured and that it would be appropriate to calculate the difference between the "as is" and "but for" scenarios over episodes 2-10:

> *Q.   And so when we're talking about all necessary insurable production cost you incur to complete the insured production, that means insurable production costs that were necessary to complete filming episodes two through six; is that correct?*
>
> *A.   Well, yeah -- well, in terms of -- yes, in terms of the necessary insurable production costs to complete the insured production, so in the end -- I'm not an insurance expert, but in the end, there was an addendum added and seven through 10 was added to the policy. I could have made the calculation two through 10 but it wouldn't have been as clean and there would have been a fair amount of adjustments.*
>
> *And seven through 10, because there was no relocation attributable to those episodes, the cost would have been -- the but-for cost would have been equal to the actual with the exception of the adjustments for this -- for these amortization expenses.[54]*

---

[52]   Schedule 6.4.
[53]   Schedule 3.1.
[54]   Deposition of Ms. Rusnak, February 5, 2020, pp. 36-37.

43. Had Ms. Rusnak considered the re-amortized costs over all nine episodes shot outside of Israel, her incremental costs would have increased by $1,906,257.[55]

44. The following figure shows the cumulative impact of the adjustments described above. I note that the results are all generally consistent with those Ms. Markus-Caffrey quantified in the Insurance Cost Bible.[56]

**Figure 8**
**Summary of Adjusted Rusnak Incremental Costs Prior to Application of Incremental Tax Credit/Rebates[57]**

|  | Including Episodes 2 - 6 Amortization Cost: As Amortized | Including Episodes 2 - 6 Amortization Cost: Re-Amortized | Including Episodes 2 - 10 Amortization Cost: Re-Amortized |
|---|---|---|---|
| Rusnak Incremental Costs - Excluding Tax Incentives | $5,084,173 | $5,084,173 | $5,084,173 |
| Add: Adjustment for Consistent Amortization of Isreali Pilot Episode | $362,603 | $362,603 | $362,603 |
| Add: Adjustment for Treatment of Amortization | $1,814,922 | $1,634,723 | $1,906,257 |
| Adjusted Rusnak Incremental Costs | $7,261,698 | $7,081,500 | $7,353,033 |

45. I note that, in her deposition, Ms. Rusnak provided a "scratch" calculation showing a potential re-amortization of the "but for" scenario using the budgeted New Mexico amortizable costs for episodes 2-10 as the "but for" amortizable costs for episodes 2-10 in Israel.[58] This is despite her recognition that the costs for episodes 2-6 were higher in New Mexico than the Locked Pattern Budget for Israel.[59] As a result, Ms. Rusnak's "scratch" analysis assumes that all the cost savings that the Plaintiffs would have experienced by filming episodes 2-6 in Israel would have been lost due to the filming of episodes 7-10 in Israel. In reality, Plaintiffs almost certainly would have experienced additional cost savings from shooting episodes 7-10 in Israel. The unreasonableness of Ms. Rusnak's methodology is demonstrated by its results. Ms. Rusnak has concluded that the additional amortizable costs in Israel would have been $1,637,962[60] for episodes 7-10 while the actual additional expenses related to those episodes was only $919,905.[61] This conclusion is unreasonable given that costs in New Mexico and Croatia were generally higher than those in Israel.

---

[55] Schedule 3.1.
[56] Deposition of Barbara-Ann Markus-Caffrey, May 23, 2017, p. 54.
[57] Schedule 1.1.
[58] Deposition of Ms. Rusnak, February 5, 2020, Exhibit 3.
[59] Rusnak Report, Schedule 1.
[60] Schedule 5.1.
[61] Schedule 3.6.

CONFIDENTIAL

**7.  SIGNATURE**

The contents of this report represent my opinions to a reasonable degree of professional certainty.

Respectfully,

Philip W. Kline
February 7, 2020

# Appendix A



# PHILIP W. KLINE
## CURRICULUM VITAE

February 2020

Philip W. Kline is a Managing Director at Ankura Consulting Group, where his practice focuses on intellectual property (IP) valuation, litigation consulting, IP strategy, and transactional services.

Mr. Kline has extensive experience in IP valuation and monetization, including assisting clients in negotiating IP licenses.  He has represented a broad range of clients, including charitable foundations, small companies, and multi-national corporations.  Mr. Kline has valued IP in a variety of contexts, including damages quantification, bankruptcy, tax planning, and tax disputes. Mr. Kline has assisted in the quantification of damages resulting from numerous causes of action, including patent infringement, copyright infringement, trademark infringement, theft of trade secret, unfair competition, unjust enrichment, breach of contract, and false advertising.

Mr. Kline's experience also spans a variety of industries.  He has worked extensively in the wireless telecommunications space, assisting both licensors and licensees in assessing whether proposed royalty rates for standard essential patents are fair, reasonable, and non-discriminatory. He has also worked on engagements pertaining to medical devices, consumer electronics, industrial networking, and transportation.

Mr. Kline has held a variety of leadership positions in industry organizations.  He was the American Bar Association (ABA), Intellectual Property Law (IPL) Section's liaison to the Licensing Executive Society's Intellectual Property Valuation and Standards Committee.  He is a past chair of both the ABA, IPL Section's Monetization and Valuation of IP Committee and the ABA, IPL Section's Economics of the Profession Committee.  Mr. Kline is a past member of the Certified Licensing Professional (CLP) Standards, Admissions, and Recertification Committee and the CLP Exam Development Committee.

Mr. Kline has been named one of the *World's Leading IP Strategists* by Intangible Asset Management. He is a Certified Public Accountant (CPA) licensed in the state of Illinois and Certified Licensing Professional (CLP) – a designation started by the Licensing Executive Society.  Mr. Kline holds a B.A. from The University of Southern California in Economics and International Relations, *Magna Cum Laude*.



| | |
|---|---|
| **PROFESSIONAL EXPERIENCE** | Managing Director, Ankura Consulting Group, Dec. 2019 – Present |
| | Managing Director, 284 Partners, Jul. 2014 – Dec. 2019 |
| | Director, 284 Partners, Jan. 2012 – Jun. 2014 |
| | Associate, 284 Partners, Feb. 2011 – Dec. 2011 |
| | Associate, Ocean Tomo, Jan. 2009 – Dec. 2010 |
| | Analyst, Ocean Tomo, Feb. 2007 – Dec. 2008 |

**SELECT CAUSE OF ACTION EXPERIENCE**

- Unfair Competition
- Unjust Enrichment
- Breach of Contract
- Copyright Infringement
- False Advertising
- Legal Malpractice
- Patent Infringement
- Patent Licensing Support
- Patent Transfer Pricing
- Patent Valuation
- Trademark Infringement
- Trademark Transfer Pricing
- Trade Secret Misappropriation
- Licensing Advisory

**SELECT PRODUCT AND INDUSTRY EXPERIENCE**

- Angioplasty Catheters
- Business Intelligence Software
- Commercial Packaging
- Consumer Products
- Data Optimization
- Digital Cameras
- Footwear
- Hospital Equipment
- Industrial Manufacturing
- Mobile Devices
- Retail Taxonomies
- Semiconductor Design
- Semiconductor Manufacturing
- Software Licensing
- Sports Equipment
- Standard Essential Patents
- Video Game Consoles
- 2D Barcodes

**EXPERT TESTIMONY**

*Union Apparel Group LTD v. Thomas Lam, et al. v. Jenny Chen*
Index No. 653867/2016
Primary Action: Breach of Contract
Industry: Apparel
Venue: Supreme Court of the State of New York, County of New York



| | |
|---|---|
| **EXPERT ENGAGEMENTS** | *Fleet Engineers, Inc. v. Mudguard Technologies, LLC*<br>Case No. 1:12-cv-01143<br>Primary Action: Patent Infringement<br>Industry: Shipping/Transportation<br>Venue: United States District Court, Western District of Michigan<br><br>*Rain Corporation v. Parry et al.*<br>Case No. 1:13-cv-03331<br>Primary Action: Copyright Infringement, Breach of Contract, Unfair Competition<br>Industry: Theater<br>Venue: United States District Court, Southern District of New York |
| **SELECT OTHER LITIGATION CONSULTING EXPERIENCE** | *Federal Trade Commission v. Qualcomm Incorporated*<br>Case No. 5:17-cv-00220<br>Primary Action: FRAND Licensing<br>Industry: Telecommunications<br>Venue: United States District Court, Northern District of California<br><br>*In Re: Qualcomm Antitrust Litigation*<br>Case No. 5:17-cv-0773<br>Industry: Telecommunications<br>Primary Action: FRAND Licensing<br>Venue: United States District Court, Northern District of California<br><br>*Huawei Technologies Co., Ltd., et al. v. Samsung Electronics Co., Ltd., et al.*<br>Case No. 3:16-cv-02787<br>Primary Action: FRAND Licensing<br>Industry: Telecommunications<br>Venue: United States District Court, Northern District of California<br><br>*Evolved Wireless, LLC v. ZTE Corporation et al.*<br>Case No. 1:15-cv-00546-SLR-SRF<br>Primary Action: Patent Infringement<br>Industry: Telecommunications<br>Venue: United States District Court, District Court of Delaware<br><br>*In the Matter of: Certain Memory Modules and Components Thereof, and Products Containing the Same – SK hynix, Inc.*<br>Investigation No.: 337-TA-1023<br>Primary Action: FRAND Licensing<br>Industry: Semiconductor<br>Venue: United States International Trade Commission |



*Unwired Planet International Ltd., et al. v. Huawei Technologies Co. Ltd., et al.*
Claim No. HP-2014-000005
Primary Action: FRAND Licensing
Industry: Telecommunications
Venue: High Court of Justice of England and Wales, Chancery Division, Patents
Court

*Confidential Arbitration on behalf of Huawei Technologies Co. Ltd.*
Case No.: 01-14-0002-2610
Primary Action: N/A
Industry: Telecommunications
Venue: International Center for Dispute Resolution

*Confidential Arbitration on behalf of Nokia Corporation*
Case No.: 19602/AGF
Primary Action: N/A
Industry: Telecommunications
Venue: International Chamber of Commerce, International Court of Arbitration

*Numatics, Inc. v. Balluff, Inc. and H.H. Barnum Company*
Case No. 2:13-cv-11049-DML-MKM
Primary Action: Patent Infringement
Industry: Industrial Automation
Venue: United States District Court, Eastern District of Michigan

*In the Matter of: Certain Wireless Devices with 3G and/or 4G Capabilities and
Components Thereof – Client ZTE Corporation*
Investigation No.: 337-TA-868
Primary Action: FRAND Licensing
Industry: Telecommunications
Venue: United States International Trade Commission

*NeoMedia, Inc. v. Scanbuy, Inc.*
Case No.: 13 117 01730 12
Primary Action: Breach of Contract
Industry: Consumer Electronics
Venue: American Arbitration Association, New York

*In Re: Eastman Kodak Company et al.*
Case No.: 1:12-cv-10204
Primary Action: Bankruptcy
Industry: Digital Imaging
Venue: United States Bankruptcy Court, Southern District of New York



*Ethicon Endo-Surgery, Inc., et al. v. Covidien Inc., et al.*
Case No.: 1:11-cv-00871
Primary Action: Patent Infringement
Industry: Medical Devices
Venue: United States District Court, Southern District of Ohio

*Schütz Container Systems, Inc. v. Mauser Corp. and NCG, LLC*
Case No.: 1:09-cv-03609
Primary Action: Trademark Infringement
Industry: Shipping Containers
Venue: United States District Court, Northern District of Georgia

*Conceptus, Inc. v. Hologic, Inc.*
Case No.: 3:09-cv-02280
Primary Action: Patent Infringement
Industry: Medical Devices
Venue: United States District Court, Northern District of California

*Alfred E. Mann Foundation for Scientific Research v. Cochlear Corporation et al.*
Case No.: 2:07-cv-08108
Primary Action: Patent Infringement
Industry: Medical Devices
Venue: United States District Court, Central District of California

*Advanced Micro Devices, Inc. et al. v. Samsung Electronics Co. Ltd. et al.*
Case No.: 3:08-cv-00986
Primary Action: Patent Infringement
Industry: Semiconductor
Venue: United States District Court, Northern District of California

*Ethicon Endo-Surgery, Inc. v. Crescendo Technologies, et al.*
Case No.: 1:07-cv-01016
Primary Action: Trade Secret Misappropriation, Breach of Contract
Industry: Medical Devices
Venue: United States District Court, Southern District of Ohio

*Hochstein et al. v. Microsoft Corporation et al.*
Case No.: 2:04-cv-73071
Primary Action: Patent Infringement
Industry: Consumer Electronics
Venue: United States District Court, Eastern District of Michigan



*PalTalk Holdings, Inc. v. Microsoft Corporation*
Case No.: 2:06-cv-00367
Primary Action: Patent Infringement
Industry: Consumer Electronics
Venue: United States District Court, Eastern District of Texas

*Boston Scientific Corporation et al. v. Johnson & Johnson et al.*
Case No.: 3:02-cv-00790
Primary Action: Patent Infringement
Industry: Medical Devices
Venue: United States District Court, Northern District of California

**EDUCATION / LICENSES / PROFESSIONAL ASSOCIATIONS**

B.A., Economics, International Relations, The University of Southern California, *Magna Cum Laude*

Certified Public Accountant, State of Illinois, License No. 065.049423

Certified Licensing Professional, Licensing Executives Society, Certificate No. 2256

Named as one of World's 1000 Leading Patent Professionals by Intangible Asset Management in 2019

Named as one of World's 300 Leading IP Strategists by Intangible Asset Management in 2017 through 2019

American Bar Association, Intellectual Property Law Section, Chairman of the Monetization and Valuation of IP Committee, September 2017 – August 2019

American Bar Association, Intellectual Property Law Section, Liaison to the Licensing Executive Society's Intellectual Property Valuation and Standards Committee, June 2016 – August 2019

Certified Licensing Professional, Standards, Admissions, and Recertification Committee Member, January 2017 – December 2017

American Bar Association, Intellectual Property Law Section, Continuing Legal Education Board, Webinar Chair – Specialty (Damages Expert), September 2016 – August 2017



American Bar Association, Intellectual Property Law Section, Past Chairman of the Economics of the Profession Committee, September 2014 – August 2016

American Bar Association, Intellectual Property Law Section, Past Vice-Chairman of the Economics of the Profession Committee, September 2012 – August 2014

Certified Licensing Professional, Past Exam Development Committee Member, January 2014 – December 2015

| | |
|---|---|
| **PUBLICATIONS / PRESENTATIONS** | *"IP Financing 360º: Market and Legal Dynamics,"* ABA Business Law Section, Annual Meeting CLE Presentation, September 2018 |

*"IP Valuation & Portfolio Management: Nuts & Bolts,"* ABA IPL CLE Webinar, June 2018

*"The Fundamentals of Intellectual Property Valuation,"* LES RTP Chapter Presentation, October 2017

*"Assessing the Value of Intellectual Property in Rapidly Changing Markets and Law,"* AIPLA Webinar, August 2017

*"IP Portfolio Management: Maximizing the Value while Minimizing the Cost"*, American Bar Association, Continuing Legal Education Webinar, January 2017

*"An Up Close Look into the Proposed Updates of the Antitrust Guidelines for Licensing of Intellectual Property,"* American Bar Association, Continuing Legal Education Webinar, October 2016

*"Nortek v. Energy Lab: District Court Guidance on the Entire Market Value Rule"*, <u>LES Insights</u>, August 2016, co-authored with Ryan Penkowski

*"ACI v. Google: District Court Guidance on Smallest Salable Unit and Revenue from Inter-related Product Offerings,"* <u>LES Insights</u>, July 2016, co-authored with Ryan Penkowski

*"Oracle America, Inc. v. Google, Inc.: Profit Apportionment Post Uniloc,"* <u>LES Insights</u>, August 2011, co-authored with Christopher Schulte

*"Convolve, Inc. v. Dell, Inc., et al.: Profit Apportionment Post Uniloc,"* <u>LES Insights</u>, July 2011, co-authored with Christopher Schulte



**CONTACT**          Philip W. Kline
                     Ankura Consulting Group
                     215 E. Washington St.
                     Ann Arbor, MI 48104

                     (734) 369-3574 Direct
                     (213) 926-1602 Cell
                     Philip.kline@ankura.com

# Appendix B

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*
**DOCUMENT INDEX - BATED DOCUMENTS**
**CONFIDENTIAL**

| Documents | |
|---|---|
| **Beginning Bates** | **Ending Bates** |
| AONNBCU001748 | AONNBCU001750 |
| ATL000453 | ATL000455 |
| ATL002211 | ATL002211 |
| ATL002231 | ATL002233 |
| ATL002439 | ATL002444 |
| ATL003073 | ATL003127 |
| UCP001480 | UCP001481 |
| UCP004503 | UCP004504 |
| UCP004505 | UCP004512 |
| UCP004513 | UCP004520 |
| UCP004521 | UCP004529 |
| UCP004530 | UCP004537 |
| UCP004797 | UCP004797 |
| UCP006123 | UCP006123 |
| UCP014836 | UCP014881 |
| UCP018222 | UCP018222 |
| UCP018223 | UCP018223 |
| UCP018224 | UCP018224 |
| UCP018225 | UCP018225 |
| UCP018226 | UCP018227 |
| UCP018244 | UCP019008 |
| UCP019009 | UCP019333 |
| UCP036901 | UCP036901 |

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*
**DOCUMENT INDEX - PLEADINGS, DEPOSITIONS, EXPERT REPORTS, AND PUBLIC DOCUMENTS**
**CONFIDENTIAL**

---

### Pleadings

Declaration of Barbara-Ann ("BJ") Markus-Caffrey in Support of Plaintiffs' Motion to Strike or Exclude Portions of Ms. Rusnak's Damages Opinions and Exhibits, January 27, 2020
Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Strike or Exclude Portions of Ms. Rusnak's Damages Opinions, January 27, 2020
Plaintiffs' Opposition to Defendant's Motion for Leave to Amend Court's Scheduling Order to Allow Substitution of Expert Witness, December 30, 2019
First Amended Complaint for: Breach of Insurance Contract; and Breach of Implied Covenant of Good Faith and Fair Dealing, July 7, 2016

### Depositions

Deposition of Barbara-Ann Markus-Caffrey, May 23, 2017
Deposition of Jay J. Shapiro, May 23, 2017
Deposition of Robert Wunderlich, Ph.D, May 15, 2017
Deposition of Shannon Rusnak, February 5, 2020
Deposition of Shannon Rusnak, February 5, 2020 - Exhibit 3

### Expert Reports

Expert Report of Robert Wunderlich, March 17, 2017
Supplemental Expert Report of Robert Wunderlich, May 11, 2017
Expert Report of Jay Shapiro, April 25, 2017
Expert Report of Shannon Rusnak, January 17, 2020

### Public Documents

www.nbcuniversal.com/who-we-are
https://www.onebeaconentertainment.com/Entertainment/pages/disclosures/underwriting-companies.page

# Appendix C

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*
**SUMMARY OF RUSNAK ADJUSTED INCREMENTAL COSTS PRIOR TO APPLICATION OF INCREMENTAL TAX CREDITS/REBATES**
Schedule 1.1
**CONFIDENTIAL**

| | Including Episodes 2 - 6 Amortization Cost: As Amortized (3) | Including Episodes 2 - 6 Amortization Cost: Re-Amortized (4) | Including Episodes 2 - 10 Amortization Cost: Re-Amortized (4) |
|---|---|---|---|
| Rusnak Incremental Expenses (1) | $3,446,417 | $3,446,417 | $3,446,417 |
| Add: Israeli Tax Incentives (1) | $1,637,756 | $1,637,756 | $1,637,756 |
| Rusnak Incremental Expenses - Excluding Tax Incentives | $5,084,173 | $5,084,173 | $5,084,173 |
| Add: Adjustment for Consistent Amortization of Israel Pilot Episode (2) | $362,603 | $362,603 | $362,603 |
| Add: Adjustment for Treatment of Amortization Costs | $1,814,922 | $1,634,723 | $1,906,257 |
| Total Rusnak Adjusted Incremental Costs Prior to Application of Incremental Tax Credits/Rebates | $7,261,698 | $7,081,500 | $7,353,033 |

**Notes:**
(1) Expert Report of Shannon Rusnak, January 17, 2020, Summary.
(2) Schedule 2.2.
(3) Expert Report of Shannon Rusnak, January 17, 2020, Schedule 3.
(4) Schedule 3.1.

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*
**ADJUSTMENT FOR CONSISTENT AMORTIZATION OF ISRAEL PILOT EPISODE: TOTAL ISRAEL PATTERN BUDGET AMORTIZATION COST - AMORTIZED OVER 6.5 & 6 EPISODES**
Schedule 2.1
**CONFIDENTIAL**

| | Budget Amortized Over 6 Episodes | Budget Amortized Over 6.5 Episodes | Adjustment |
|---|---|---|---|
| Total Israel Pattern Budget Amortization Cost | $5,656,610 | $5,656,610 | N/A |
| Number of Episodes Amortized Over | 6.0 | 6.5 | N/A |
| Israel Pattern Budget Amortization Cost per Episode | $942,768 | $870,248 | $72,521 |
| Number of Episodes 2 - 6 | 5.0 | 5.0 | N/A |
| Total Israel Pattern Budget Amortization Cost Episodes 2 - 6 | $4,713,842 | $4,351,238 | $362,603 |

**Note:**
UCP018414-464 at 462, UCP019118-163 at 160, and UCP019164-202 at 164.

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*

**ADJUSTMENT FOR CONSISTENT AMORTIZATION OF ISRAEL PILOT EPISODE: TOTAL ACTUAL ISRAEL AMORTIZATION COST - AMORTIZED OVER 6.5 & 6 EPISODES**

Schedule 2.2

**CONFIDENTIAL**

| | Cost Amortized Over 6 Episodes | Cost Amortized Over 6.5 Episodes | Adjustment |
|---|---|---|---|
| Israel Amortization Cost | | | |
| Prep 1095 | $1,198,334 | $1,198,334 | - |
| Amort 1096 | $2,422,169 | $2,422,169 | - |
| Hiatus 1097 | $259,006 | $259,006 | - |
| Wrap 1098 | $352,528 | $352,528 | - |
| Total Israel Amortization Cost | $4,232,037 | $4,232,037 | - |
| Number of Episodes to Amortize Over | 6.0 | 6.5 | N/A |
| Israel Amortization Cost Per Episode | $705,340 | $651,083 | $54,257 |
| Number of Episodes 2 - 6 | 5.0 | 5.0 | N/A |
| Total Israel Amortization Cost Episodes 2 - 6 | 3,526,698 | 3,255,413 | $271,284 |

**Note:**
UCP006123.

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*
**TOTAL ADJUSTMENT FOR TREATMENT OF AMORTIZATION COSTS: ADJUSTMENT TO RUSNAK INCREMENTAL COSTS**
Schedule 3.1
**CONFIDENTIAL**

| | Including Episodes 2 - 6 Amortization Cost: Re-Amortized | Including Episodes 2 - 10 Amortization Cost: Re-Amortized |
|---|---|---|
| New Mexico Actual Amortization Cost - Excluding Other Shooting Units (1) | $3,418,534 | $6,153,361 |
| Total Israel Amortization Cost Budget (2) | $3,079,117 | $5,542,410 |
| Total Incremental Cost of New Mexico Episodes | $339,417 | $610,951 |
| Less: Incremental Amortization Cost - Rusnak Opinion (3) | ($1,295,306) | ($1,295,306) |
| Adjustment to Rusnak Incremental Costs | $1,634,723 | $1,906,257 |

**Notes:**
(1) Schedule 3.3.
(2) Schedule 3.4.
(3) Schedule 3.2.

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*
**ADJUSTMENT FOR TREATMENT OF AMORTIZATION COSTS: INCREMENTAL AMORTIZATION COST - RUSNAK OPINION**
Schedule 3.2
**CONFIDENTIAL**

|  | Total |
|---|---|
| Re-Amortization of New Mexico Amortization Cost - Amount Amortized to Episodes 2 - 6 (1) | $3,418,534 |
| Total Israel Episodes 2 - 6 Amortization Cost Budget (2) | $4,713,840 |
| Incremental Amortization Cost - Rusnak Opinion | ($1,295,306) |

**Notes:**
(1) Schedule 3.3.
(2) Schedule 3.5.

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*
**ADJUSTMENT FOR TREATMENT OF AMORTIZATION COSTS: RE-AMORTIZATION OF NEW MEXICO AMORTIZATION COST - AMOUNT AMORTIZED TO EPISODES 2 - 6**
Schedule 3.3
**CONFIDENTIAL**

|  | Total |
|---|---|
| New Mexico Episodes 2 - 10 Amortization Cost | |
| Prep 1085 (1) | $1,477,588 |
| Amort 1086 (2) | $6,089,190 |
| Less: Amort 1086 - Other Shooting Units (2) | $3,265,242 |
| Wrap 1088 (3) | $931,920 |
| Amort 1091 (4) | $5,934,826 |
| Less: Amort 1091 - Other Shooting Units (4) | $5,014,921 |
| Total New Mexico Episodes 2 - 10 Amortization Cost | $6,153,361 |
| | |
| Number of Episodes 2-10 | 9.0 |
| | |
| New Mexico Per Episode Amortization Cost - Episodes 2 - 10 | $683,707 |
| | |
| Number of Episodes 2 - 6 | 5.0 |
| | |
| Re-Amortization of New Mexico Amortization Cost - Amount Amortized to Episodes 2 - 6 | $3,418,534 |

**Notes:**
(1) UCP004521-529 at 521.
(2) UCP004505-512 at 505.  Consistent with Ms. Rusnak's methodology, I have deducted amortization costs from "Other Shooting Units."
   See Expert Report of Shannon Rusnak, January 17, 2020, Schedule 3.
(3) UCP004530-537 at 530.
(4) UCP004513-520 at 513.  Consistent with Ms. Rusnak's methodology, I have deducted amortization costs from "Other Shooting Units."
   See Expert Report of Shannon Rusnak, January 17, 2020, Schedule 3.

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*
**ADJUSTMENT FOR TREATMENT OF AMORTIZATION COSTS: RE-AMORTIZATION OF PROJECTED ISRAEL AMORTIZATION COST - AMOUNT AMORTIZED TO EPISODES 2 - 6**
Schedule 3.4
**CONFIDENTIAL**

|  | Total |
|---|---|
| Total Israel Episodes 2 - 6 Amortization Cost Budget | $4,713,840 |
| Projected Additional Episodes 7 - 10 Amortization Cost if Episodes 7 - 10 were Filmed in Israel | $828,570 |
| Total Projected Israel Episodes 2 - 10 Amortization Cost Budget | $5,542,410 |
| Number of Episodes 2 - 10 | 9.0 |
| Israel Amortization Cost Budget Per Episode - Episodes 2 - 10 | $615,823 |
| Number of Episodes 2 - 6 | 5.0 |
| Re-Amortization of Projected Israel Amortization Cost - Amount Amortized to Episodes 2 - 6 | $3,079,117 |

**Note:**
Schedule 3.5.

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*
**ADJUSTMENT FOR TREATMENT OF AMORTIZATION COSTS: PROJECTED ADDITIONAL EPISODES 7 - 10 AMORTIZATION COST IF EPISODES 7 - 10 WERE FILMED IN ISRAEL**
Schedule 3.5
**CONFIDENTIAL**

|  | Total |
|---|---|
| Israel Episodes 2 - 6 Amortization Cost Budget Per Episode (1) | $942,768 |
| Number of Episodes 2 - 6 | 5.0 |
| Total Israel Episodes 2 - 6 Amortization Cost Budget | $4,713,840 |
| New Mexico Episodes 7 - 10 Amortization Cost as Percentage of Episodes 2 - 6 Amortization Cost (2) | 17.58% |
| Projected Additional Episodes 7 - 10 Amortization Cost if Episodes 7 - 10 were Filmed in Israel | $828,570 |

**Notes:**
(1) UCP014836-881 at 837.
(2) Schedule 3.6.

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*

**ADJUSTMENT FOR TREATMENT OF AMORTIZATION COSTS: NEW MEXICO EPISODES 7 - 10 AMORTIZATION COST AS PERCENTAGE OF EPISODES 2 - 6 AMORTIZATION COST**

Schedule 3.6

**CONFIDENTIAL**

| | Total |
|---|---|
| **New Mexico / Croatia Episodes 7 - 10 Amortization Cost** | |
| Amort 1091 (1) | $5,934,826 |
| Less: Other Shooting Units Amortization Cost (1) | $5,014,921 |
| Total New Mexico Episodes 7 - 10 Amortization Cost | $919,905 |
| | |
| **New Mexico / Croatia Episodes 2 - 6 Amortization Cost** | |
| Prep 1085 (2) | $1,477,588 |
| Amort 1086 (3) | $6,089,190 |
| Wrap 1088 (4) | $931,920 |
| Less: Other Shooting Units Amortization Cost (3) | $3,265,242 |
| Total New Mexico Episodes 2 - 6 Amortization Cost | $5,233,456 |
| | |
| New Mexico Episodes 7 - 10 Amortization Cost as Percentage of Episodes 2 - 6 Amortization Cost | 17.58% |

**Notes:**
(1) UCP004513-520 at 513.  Consistent with Ms. Rusnak's methodology, I have deducted amortization costs from "Other Shooting Units."
 See Expert Report of Shannon Rusnak, January 17, 2020, Schedule 3.
(2) UCP004521-529 at 521.
(3) UCP004505-512 at 505.  Consistent with Ms. Rusnak's methodology, I have deducted amortization costs from "Other Shooting Units."
 See Expert Report of Shannon Rusnak, January 17, 2020, Schedule 3.
(4) UCP004530-537 at 530.

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*

**RUSNAK CALCULATION OF "AS IS" BUDGET**

Schedule 4.1

**CONFIDENTIAL**

|  | Total |
|---|---|
| Rusnak "As Is" Total Actual Cost (1) | $21,351,171 |
| Rusnak Israel Amortization Cost (1) | $4,232,037 |
| Rusnak Israel  Amortization Per Episode Cost (1) | $651,083 |
| Israel Pilot Amortization Adjustment - Pilot Episode Allocation (1) | 1.5 |
| Less: Israel Pilot Amortization Adjustment | $976,625 |
| Less: Rusnak Back Four Re-Amortization (2) | $1,814,922 |
| Rusnak "As Is" Budget | $22,791,662 |

**Notes:**
(1) Expert Report of Shannon Rusnak, January 17, 2020, Schedule 1.
(2) Expert Report of Shannon Rusnak, January 17, 2020, Schedule 3.

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*
**RUSNAK IMPLIED "BUT FOR" AMORTIZATION COSTS IF EPISODES 7 - 10 WERE FILMED IN ISRAEL**
Schedule 5.1
**CONFIDENTIAL**

| | Total |
|---|---|
| Rusnak "But For" Israel Amortization Cost - Episodes 2 - 10 | $6,317,947 |
| Rusnak "But For" Amortization Cost - Episodes 2 - 6 | $4,679,985 |
| Rusnak "But For" Amortization Cost - Episodes 7 - 10 | $1,637,962 |

**Note:**
Deposition of Shannon Rusnak, February 5, 2020, Exhibit 3.

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*
**ORDINARY COURSE OF BUSINESS AMORTIZATION**
Schedule 6.1
**CONFIDENTIAL**

| | Episodes 2 - 6 (2) | Episodes 7 - 10 (3) | Total |
|---|---|---|---|
| Total Amortization Cost (1) | $5,233,456 | $919,905 | $6,153,361 |
| Number of Episodes Amortized Over | 5 | 4 | 9 |
| Episode 2 Allocation | $1,046,691 | - | $1,046,691 |
| Episode 3 Allocation | $1,046,691 | - | $1,046,691 |
| Episode 4 Allocation | $1,046,691 | - | $1,046,691 |
| Episode 5 Allocation | $1,046,691 | - | $1,046,691 |
| Episode 6 Allocation | $1,046,691 | - | $1,046,691 |
| Episode 7 Allocation | - | $229,976 | $229,976 |
| Episode 8 Allocation | - | $229,976 | $229,976 |
| Episode 9 Allocation | - | $229,976 | $229,976 |
| Episode 10 Allocation | - | $229,976 | $229,976 |

**Notes:**
(1) Schedule 3.6.
(2) Episodes 2 - 6 amortization cost allocated evenly over episodes 2 - 6.
(3) Episodes 7 - 10 amortization cost allocated evenly over episodes 7 - 10.

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*

**RUSNAK'S RE-AMORTIZATION OF "AS IS" COSTS**

Schedule 6.2

**CONFIDENTIAL**

| | Episodes 2 - 6 (2) | Episodes 7 - 10 (3) | Total |
|---|---|---|---|
| Total Amortization Cost (1) | $5,233,456 | $919,905 | $6,153,361 |
| Number of Episodes Amortized Over | N/A | 4 | 9 |
| Episode 2 Allocation | $683,707 | - | $683,707 |
| Episode 3 Allocation | $683,707 | - | $683,707 |
| Episode 4 Allocation | $683,707 | - | $683,707 |
| Episode 5 Allocation | $683,707 | - | $683,707 |
| Episode 6 Allocation | $683,707 | - | $683,707 |
| Episode 7 Allocation | $453,731 | $229,976 | $683,707 |
| Episode 8 Allocation | $453,731 | $229,976 | $683,707 |
| Episode 9 Allocation | $453,731 | $229,976 | $683,707 |
| Episode 10 Allocation | $453,731 | $229,976 | $683,707 |

**Notes:**

(1) Schedule 3.6.

(2) Episodes 2 - 6 amortization cost allocation calculated as [Total Amortization Cost Allocation] - [Episode 7 - 10 Amortization Cost Allocation].

(3) Episodes 7 - 10 amortization cost allocated evenly over episodes 7 - 10.

(4) Total amortization cost allocated evenly over episodes 2 - 10.

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*
**LOCKED PATTERN BUDGET AMORTIZED COSTS WITH ESTIMATED "BUT FOR" BACK FOUR COSTS**
Schedule 6.3
**CONFIDENTIAL**

| | Episodes 2 - 6 (2) | Episodes 7 - 10 (3) | Total |
|---|---|---|---|
| Total Amortization Cost (1) | $4,713,840 | $828,570 | $5,542,410 |
| Number of Episodes Amortized Over | 5 | 4 | 9 |
| Episode 2 Allocation | $942,768 | - | $942,768 |
| Episode 3 Allocation | $942,768 | - | $942,768 |
| Episode 4 Allocation | $942,768 | - | $942,768 |
| Episode 5 Allocation | $942,768 | - | $942,768 |
| Episode 6 Allocation | $942,768 | - | $942,768 |
| Episode 7 Allocation | - | $207,143 | $207,143 |
| Episode 8 Allocation | - | $207,143 | $207,143 |
| Episode 9 Allocation | - | $207,143 | $207,143 |
| Episode 10 Allocation | - | $207,143 | $207,143 |

**Notes:**
(1) Schedule 3.5.
(2) Episodes 2 - 6 amortization cost allocated evenly over episodes 2 - 6.
(3) Episodes 7 - 10 amortization cost allocated evenly over episodes 7 - 10.

*Universal Cable Productions LLC and Northern Entertainment Productions LLC v. Atlantic Specialty Insurance Company*

**LOCKED PATTERN BUDGET AMORTIZED COSTS WITH ESTIMATED "BUT FOR" BACK FOUR COSTS RE-AMORTIZED CONSISTENT WITH MS. RUSNAK'S "AS IS" SCENARIO**

Schedule 6.4

**CONFIDENTIAL**

| | Episodes 2 - 6 (2) | Episodes 7 - 10 (3) | Total (4) |
|---|---|---|---|
| Total Amortization Cost (1) | $4,713,840 | $828,570 | $5,542,410 |
| Number of Episodes Amortized Over | N/A | 4 | 9 |
| Episode 2 Allocation | $615,823 | - | $615,823 |
| Episode 3 Allocation | $615,823 | - | $615,823 |
| Episode 4 Allocation | $615,823 | - | $615,823 |
| Episode 5 Allocation | $615,823 | - | $615,823 |
| Episode 6 Allocation | $615,823 | - | $615,823 |
| Episode 7 Allocation | $408,681 | $207,143 | $615,823 |
| Episode 8 Allocation | $408,681 | $207,143 | $615,823 |
| Episode 9 Allocation | $408,681 | $207,143 | $615,823 |
| Episode 10 Allocation | $408,681 | $207,143 | $615,823 |

**Notes:**

(1) Schedule 3.5.

(2) Episodes 2 - 6 amortization cost allocation calculated as [Total Amortization Cost Allocation] - [Episode 7 - 10 Amortization Cost Allocation].

(3) Episodes 7 - 10 amortization cost allocated evenly over episodes 7 - 10.

(4) Total amortization cost allocated evenly over episodes 2 - 10.