KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
CHELSEA SAMUELS (315257)
csamuels@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CABLE PRODUCTIONS LLC and NORTHERN ENTERTAINMENT PRODUCTIONS LLC,<br><br>   Plaintiffs,<br><br>v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>   Defendant. | Case No.: 2:16-cv-4435-PA-MRW<br>The Honorable Percy Anderson<br>Dept. 9A<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE EXPERT PHILIP KLINE'S OPINION**<br><br>Noticed Hearing Date: February 10, 2020<br>Trial Date: February 18, 2020 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ...................................................................................................3

III. ARGUMENT .........................................................................................................5

    A. Ms. Rusnak Offered New Opinions on Accounting Issues Related to Amortization. ................................................................................................5

    B. Mr. Kline's Report Rebuts Ms. Rusnak's Newly-Disclosed Amortization Opinions. ................................................................................7

    C. Mr. Kline's Report Was Timely Disclosed. ................................................9

    D. Plaintiffs' Service of Mr. Kline's Rebuttal Report Was Substantially Justified and Striking It Would Be Unfairly Prejudicial. ...........................11

IV. CONCLUSION ....................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Rules**

Fed. R. Civ. P. 26 ................................................................................................. 4, 6, 7, 11

I.  **INTRODUCTION**

Plaintiffs respectfully request that (1) Defendant's Motion to Strike Plaintiffs' Expert Philip Kline's Opinion be denied and (2) Plaintiffs be permitted to designate Mr. Kline as a rebuttal expert on Atlantic's newly disclosed "amortization" opinions if Defendant is permitted to introduce those opinions at trial. The amortization opinions and methodology are the subject of Plaintiffs' pending Motion to Strike or Exclude Portions of Ms. Rusnak's Damages Opinions.  Dkt. 244.  In the event the Court grants Plaintiffs' Motion to Strike, Plaintiffs will not seek to present Mr. Kline's opinions at trial and Defendant's motion will be moot.

Plaintiffs are mindful of the Court's comments at the February 10, 2020 hearing and seek to clarify that Mr. Kline is solely offered to address a new theory identified by Atlantic after the Court permitted substitution of Defendant's prior damages expert. Plaintiffs have tried to accommodate Atlantic's predicament of needing to replace both its damages and industry expert. But Atlantic took advantage of that situation by on January 17, 2020, calculating an entirely new deduction for its damages model based on accounting principles advanced by its new expert.  Plaintiffs sought to rebut those new deductions through its own use of an accounting expert.  The Court raised questions at the hearing as to why Plaintiffs' existing expert did not rebut this new opinion.

In these circumstances, that would be unfair. Atlantic has criticized Plaintiffs' expert Mr. Wunderlich for not being a Certified Public Accountant ("CPA"). Dkt. 203 at 7.  Yet on the eve of trial, Atlantic has introduced a new "Amortization Deduction Opinion" based on accounting principles from a CPA. Atlantic wants to be able to offer these new opinions while at the same time handicapping Plaintiffs from providing a rebuttal from an accounting expert. Plaintiffs could not have expected to select an expert to rebut this unknown opinion sooner.

Anticipating that Ms. Rusnak's report would require further rebuttal, Atlantic's motion to substitute its new damages expert proposed that (1) Plaintiffs should be permitted to rebut Ms. Rusnak's opinions without limitation and (2) any such rebuttal would be due

seven days after Ms. Rusnak's deposition. Defendant's motion stated:

> ASIC brings this motion asking for leave to designate its new damages expert and to amend the Court's scheduling order to allow Plaintiffs time to depose the new expert and time to rebut, including any supplemental damages expert rebuttal report Plaintiffs wish to produce.

Dkt. 160 at 4. Defendant's proposed order stated that Plaintiffs could "submit an expert report in rebuttal to Ms. Rusnak's report, and that report shall be provided no later than seven days after the completion of the deposition of Ms. Rusnak." Dkt. 160-2 at 2.  While this Court did not enter Atlantic's order as written, it is instructive that Atlantic was expecting that such a rebuttal would be forthcoming (and knew Ms. Rusnak's opinion would expand the prior opinions of Mr. Shapiro).

Ms. Rusnak's January 17, 2020, report disclosed new amortization opinions. Plaintiffs deposed Ms. Rusnak on February 5, 2020. The same day, Plaintiffs informed Defendant that they would be offering a rebuttal expert to Ms. Rusnak in connection with revisions to the draft Pre-Trial Conference Order. On Friday, February 7, 2020, Plaintiffs served Mr. Kline's rebuttal report.

Defendant filed its Motion on February 10, 2020 before a hearing on motions in *limine* without any conference. Following that hearing, Plaintiffs reached out to Defendant to meet-and-confer and offered to make Mr. Kline available for deposition this week. Defendant refused to alter its position, to take Mr. Kline's deposition, or to schedule its Motion for a hearing date in advance of trial.

As described more fully below, it was not Plaintiffs' intention to violate the Court's wishes or gain any unfair tactical advantage by serving Mr. Kline's report. Plaintiffs' sole intention in serving Mr. Kline's report was to rebut Ms. Rusnak's newly-disclosed amortization opinions given that Mr. Kline, like Ms. Rusnak, is a CPA. Should Ms. Rusnak's amortization opinions be excluded, Plaintiffs will not call Mr. Kline as a witness at trial. However, Plaintiffs respectfully submit that if Defendant is permitted to introduce those new opinions, it would be unfair to prevent Plaintiffs from rebutting them with Mr.

Kline's expert testimony.

## II. BACKGROUND

On December 11, 2019, Defendant learned that its former damages expert, Jay Shapiro, had died on or about July 6, 2017. Dkt. 160 at 5-6. Defendant moved for leave to amend the Court's scheduling order to substitute a new damages expert. Dkt. 160. In so moving, Defendant stated that Plaintiffs would be allowed to rebut its new report. *Id.* at 2-3, 4 (stating that Plaintiffs would be allowed to rebut Ms. Rusnak's report, including through "any supplemental damages expert rebuttal report Plaintiffs wish to produce").

Plaintiffs opposed Defendant's motion, arguing that a new expert opinion beyond simply adopting Mr. Shapiro's prior opinions so close to trial would be prejudicial and would improperly allow Defendant to strengthen its position through a "re-do" of Mr. Shapiro's work. Dkt. 162 at 5-6. Plaintiffs identified significant problems with Mr. Shapiro's analysis, including that he had overlooked over $4 million in costs that Plaintiffs incurred in Israel prior to relocation. Dkt. 162 at 7-8.

On January 17, 2020, the parties filed their motions in *limine*. Defendant moved to exclude the opinions of Dr. Robert Wunderlich, Plaintiffs' damages expert, arguing in part that he is not a CPA. Dkt. 203 at 7. On the same day during the Pretrial Conference, the Court granted Defendant's motion to substitute Ms. Rusnak as a new damages expert. Dkt. 233.

Later that day, Defendant served Ms. Rusnak's expert report. Ms. Rusnak's report effectively conceded the error Plaintiffs identified in Mr. Shapiro's analysis regarding omitted expenses in Israel. *See* Dkt. 244-1 at 1-2. Ms. Rusnak arrived at a number for Plaintiffs' maximum potential extra expenses of $6,899,094 –nearly $3 million higher than what Mr. Shapiro had calculated. *See id.* Ms. Rusnak reached this opinion, in part, by (1) recognizing that Plaintiffs had, in fact, spent over $4.2 million in Israel but (2) amortizing only a portion of that amount to episodes 2-6 (while allocating a greater per-episode share to the Pilot because it was a 90-minute episode rather than 60 minutes). Ms. Rusnak then asserted a new method for reducing Plaintiffs' claimed extra expenses by $1,814,922 –

what Plaintiffs have referred to as her new Amortization Deduction Opinion. *See id.* at 2. Defendant has contended that Ms. Rusnak's Amortization Deduction Opinion is based on some purported "accounting principles" in addition to the Policy language. Dkt. 252 at 13.

Plaintiffs moved to strike Ms. Rusnak's opinions on January 27, 2020, Dkt. 244, and deposed her on February 5, 2020, Dkt. 256-2. That evening, Plaintiffs sent Defendant a redlined Second Revised Pretrial Conference Order, stating: "Only the witnesses identified on the lists will be permitted to testify . . . with the exception that Plaintiffs are disclosing a rebuttal damages expert to rebut Defendant's new damages expert, Ms. Rusnak, on Friday, February 7, 2020." *See* Dkt. 255-1 at 46; *id.* (listing "Plaintiffs' expert witnesses" and disclosing "[r]ebuttal damages expert to Shanon Rusnak (to be disclosed this Friday)" as distinct from "Robert Wunderlich, Ph.D.").

On Friday, February 7, 2020, Plaintiffs served the disclosure and rebuttal report of Mr. Kline. Plaintiffs intend to offer Mr. Kline solely for the purpose of rebutting Ms. Rusnak's opinions related to amortization and the impact that such amortization opinions have on damages. Plaintiffs served Mr. Kline's rebuttal report (1) two days after Ms. Rusnak's deposition (as opposed to seven days after, as Defendant's own motion to substitute suggested) and (2) one week before the 30-day deadline for rebuttal reports set by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(a)(2)(D)(ii).

Defendant's filed its Motion to Strike at on Monday, February 10, 2020, with a noticed hearing time of 1:30 p.m. PST the same day (the same time the parties had another scheduled hearing on various motions *in limine*).

Following the hearing, at the Court's direction, Plaintiffs contacted Defendant to attempt to meet-and-confer on this issue. Plaintiffs offered to make Mr. Kline available for deposition this week. In addition, Plaintiffs proposed filing a stipulation requesting that the motion be heard this Friday, February 14, 2020. Defendant's counsel indicated that they were not available on Friday and declined to take Mr. Kline's deposition this week.

///

///

III. **ARGUMENT**

A. **Ms. Rusnak Offered New Opinions on Accounting Issues Related to Amortization.**

Plaintiffs respectfully request the ability to designate a new rebuttal expert because Ms. Rusnak offered new opinions regarding amortization that were disclosed to Plaintiffs for the first time on January 17, 2020.

Defendant's previous expert Mr. Shapiro erroneously believed that Plaintiffs had not incurred any costs in Israel whatsoever. Dkt. 244-7 (Shapiro Dep.) at 62:16-24. Mr. Shapiro also opined as follows:

> My calculations show that Plaintiffs have maximum damages in connection with the Relocation of $2,357,875. This amount does not take into account other possible reductions that are appropriate, such as, for example, (1) *the prep and wrap expenses incurred in episodes 2 through 6 that may have benefited the producing of episodes 7 through 10*, (2) production quality improvements that could have been made to each episode, and (3) legal costs associated with the move (UCP004503 references legal expenses for war claims).

Dkt. 244-6 (Shapiro Report) at 9 (emphasis added). Mr. Shapiro's report offered no methodology for quantifying the so-called "benefit" that was provided to "episodes 7 through 10," nor did he calculate any potential reduction in damages based on this opinion.

During Mr. Shapiro's deposition, Plaintiffs asked Mr. Shapiro about this opinion. Mr. Shapiro characterized it as nothing more than an offhand "observation" without any support:

> Q. What do you mean by that statement?
>
> A. Well, I notice by looking at the documents that 7 through 10, the total episode costs were 13 percent lower than 2 through 6. And I thought one of the reasons might be that something in total costs as presented in the Wunderlich report, which he estimates to be extra expense, might, in fact, have benefited those subsequent shows.
>
> Q. So if I understand you correctly, is it your position that the prep and wrap expenses, in your view, should have been amortized over the 2

5

|   |   |   |
|---|---|---|
| 1 |   | through 10 episodes? |
| 2 | A. | *If, in fact, they relate to the other episodes. Except, you know, I don't have that kind of information. I meant it just as an observation. I have no details other than that.* |

Dkt. 244-7 (Shapiro Dep.) at 121:18-25 (emphasis added).

Neither Mr. Shapiro's report nor his deposition testimony disclosed any methodology he would use to account for this "benefit," nor did they quantify how much any such undisclosed methodology would reduce his estimate of Plaintiffs' damages.

On January 17, 2020, Defendant served the expert report of Ms. Rusnak. Ms. Rusnak's report offered new opinions regarding amortization that were absent from Mr. Shapiro's report and which Plaintiffs could not have anticipated.

*First*, Ms. Rusnak recognized that Plaintiffs spent $4,232,037 in Israel (whereas Mr. Shapiro believed there had been no such costs incurred). Dkt. 221-1 (Rusnak Report) at 8. However, Ms. Rusnak opined that those costs should be amortized across the pilot and episodes 2-6 such that (1) the pilot is weighted 1.5x compared to episodes 2-6, which are weighted at 1x and (2) those amounts amortized to the pilot should be deducted from Plaintiffs' damages. *Id.* (stating that the costs should be "allocated between 6.5 episodes (the pilot, a 90-minute episode, and five 60-minute episodes)"). *Id.* Based on this methodology, Ms. Rusnak contends that the "Amortized Israeli costs" that "would apply to episodes 2 through 6 had the production not relocated" totaled $3,255,413.

*Second*, Ms. Rusnak offered the Amortization Deduction Opinion addressed in Plaintiffs' Motion to Strike. *See* Dkt. No. 244-1. Ms. Rusnak offered a methodology by which she proposed reducing Plaintiffs' "amortized New Mexico expenses." *Id.* at 7-8. This method included (1) combining Plaintiffs' amortized expenses for episodes 2-6 and episodes 7-10, (2) "redistributing all the costs evenly across episodes 2 through 10," and (3) deducting the amount that she re-allocated to episodes 7-10. *Id.* Ms. Rusnak made no similar deduction in the "but-for" world based on Plaintiffs' budget for Israel, which Ms. Rusnak used as a "proxy" for what Plaintiffs would have spent if filming had continued in

Israel. Ms. Rusnak opined that her re-amortization methodology would reduce Plaintiffs' damages by $1,814,922. *Id.*

Neither of these opinions was disclosed in Mr. Shapiro's report and Plaintiffs could not have identified the need to rebut them until they received Ms. Rusnak's report on January 17, 2020. With respect to the former opinion, Mr. Shapiro simply failed to acknowledge that any money had been spent in Israel toward episodes 2-6. Plaintiffs could not have anticipated that Defendant would argue, instead, that (1) over $4.2 million had been spent but (2) only approximately $3.2 million of that should be counted toward the claim based on an amortization methodology that weights the pilot episode 1.5X and the remaining episodes 1X. With respect to Ms. Rusnak's latter opinion, Mr. Shapiro merely offered an offhand "observation" that certain spending may have "benefited" episodes 7-10, without offering (1) any methodology for how Mr. Shapiro would "re-amortize" any such expenses or (2) any quantification of how any such methodology would affect Plaintiffs' damages. Ms. Rusnak, by contrast, offered for the first time (1) a new methodology and (2) a quantification of how that methodology would affect Plaintiffs' damages claim.

### B. Mr. Kline's Report Rebuts Ms. Rusnak's Newly-Disclosed Amortization Opinions.

After receiving Ms. Rusnak's report, Plaintiffs retained an expert—Philip Kline, a CPA—to examine her amortization methods from an accounting perspective. Mr. Kline's report is focused on criticizing Ms. Rusnak's flawed methodology for the amortization analysis she asserts should reduce Plaintiffs' claim. Indeed, Mr. Kline identifies two "primary errors with her methodology," the analysis of which occupies the majority of Mr. Kline's report. *See* Dkt. 258-1, Kline Report at 6-13 (emphasis added).

*First*, Mr. Kline criticized Ms. Rusnak's "inconsistent treatment of amortizable costs incurred in Israel." *Id.* at 6. Ms. Rusnak "has amortized actual amortizable costs incurred in Israel based upon episode length, which allocates 50% more cost to the Pilot due to it being a 90 minute episode versus the remaining episodes which were 60 minutes." *Id.*

7

However, Ms. Rusnak "did not address the fact that the Locked Pattern Budget—which Ms. Rusnak used as a 'proxy' for what Plaintiffs would have spent in a hypothetical 'but-for world in which filming continued in Israel—amortized such costs evenly across the episodes." *Id.* at 6-7. The inconsistent treatment of amortization for Israeli costs between the "as-is" and "but-for" worlds artificially reduced Ms. Rusnak's measure of damage by $271,284 ("if both scenarios are amortized evenly") or $362,603 ("if both scenarios are amortized with more weight placed on the Pilot").

*Second*, Mr. Kline criticized Ms. Rusnak's "inconsistent re-amortization of 'as is' expenses" from an accounting perspective. *Id.* at 7. As an initial matter, Mr. Kline noted that Plaintiffs' method of amortization, which it uses in the ordinary course of business, is "reasonable and appropriate" from "*the perspective of cost accounting . . . .*" *Id.* at 7 (emphasis added). By contrast, Ms. Rusnak's alternative opinion that such costs should be "re-amortized" when new episodes are subsequently ordered is inconsistent with Generally Accepted Accounting Principles: "I note that while GAAP does allow for the writing-down of fixed assets that have been amortized over too long a period, it generally does not allow for the 'writing up' or 'revaluing' of fixed assets that have been amortized over less than their useful life, which is what is suggested by Ms. Rusnak's re-amortization." *Id.* at 8 n.40. Nor can Ms. Rusnak's opinion be supported by the Policy language or the "matching principle"—an accounting principle that Defendant purports to cite as justification for Ms. Rusnak's opinion. While Ms. Rusnak's approach might make sense if the purpose of the inquiry "were to calculate the fully burdened cost of individual episodes," the relevant inquiry is instead "whether a given cost to complete the Insured Production was made necessary by the move of production from Israel to New Mexico and Croatia." *Id.* at 9-10.

*Third*, Mr. Kline opined "even if one were to accept Ms. Rusnak's opinion that the 'as is' costs must be re-amortized, her analysis is fatally flawed because she did not re-amortize the 'but-for' costs." *Id.* at 10. Mr. Kline rebutted Ms. Rusnak's "re-amortization" approach with an alternative methodology in which one would (1) "use the 'as is' ratio of amortizable cost for episodes 7-10 versus episodes 2-6, approximately 18% as a proxy for

8

that same 'but for' ratio" and (2) using that assumption, also "re-amortize" the amortizable costs that would have been incurred in Israel in a "but-for" scenario. *Id.* at 10-11. Mr. Kline opined that this approach would have "increase[d] Ms. Rusnak's incremental costs by $1,643,723." Moreover, had "Ms. Rusnak considered the re-amortized costs over all nine episodes shot outside of Israel, her incremental costs would have increased by $1,906,257."

Mr. Kline summarized the effect that correcting these amortization errors would have had on Ms. Rusnak's damages opinion (even accepting her tax credit deduction, for the sake of argument), *id.* at 13:

**Figure 8**
**Summary of Adjusted Rusnak Incremental Costs Prior to Application of Incremental Tax Credit/Rebates**[57]

| | Including Episodes 2 - 6 Amortization Cost: As Amortized | Including Episodes 2 - 6 Amortization Cost: Re-Amortized | Including Episodes 2 - 10 Amortization Cost: Re-Amortized |
|---|---|---|---|
| Rusnak Incremental Costs - Excluding Tax Incentives | $5,084,173 | $5,084,173 | $5,084,173 |
| Add: Adjustment for Consistent Amortization of Isreali Pilot Episode | $362,603 | $362,603 | $362,603 |
| Add: Adjustment for Treatment of Amortization | $1,814,922 | $1,634,723 | $1,906,257 |
| Adjusted Rusnak Incremental Costs | $7,261,698 | $7,081,500 | $7,353,033 |

Plaintiffs only seek to offer Mr. Kline's testimony if their Motion to Strike, Dkt. 244, is denied and Defendant is allowed to present Ms. Rusnak's Amortization Deduction Opinion method and analysis to the jury.[1] Plaintiffs will not offer his testimony in their case in chief. As such, Mr. Kline is a quintessential rebuttal expert.

C.      **Mr. Kline's Report Was Timely Disclosed.**

Plaintiffs understood that they would be permitted to rebut any opinion of Defendant's new expert should that opinion exceed the bound of Mr. Shapiro's prior report.

Nothing in Defendant's motion indicated that Plaintiffs should be limited to having Dr. Wunderlich rebut Ms. Rusnak's opinions. Ms. Rusnak's newly-disclosed opinions related to amortization, an accounting concept, and Defendant itself criticized Dr.

---

[1] Mr. Kline's report does not rebut Ms. Rusnak's tax-related opinions and Plaintiffs will not offer testimony from Mr. Kline on tax-related issues.

9

Wunderlich for not being a CPA. Mr. Kline, a CPA, offers opinions that (1) show that Plaintiffs' ordinary approach to amortization is reasonable from a "cost accounting" perspective; (2) Ms. Rusnak's approach to "re-amortizing" costs is inconsistent with Generally Accepted Accounting Principles and the matching principle Ms. Rusnak cited; and (3) calculate the effect on damages that results from correcting Ms. Rusnak's improper amortization approach.

Defendant's proposed order granting the motion provided that Plaintiffs could "submit an expert report in rebuttal to Ms. Rusnak's report, and that report shall be provided no later than seven days after the completion of the deposition of Ms. Rusnak." Dkt. 160-2 at 2. Plaintiffs deposed Ms. Rusnak on February 5, 2020. Plaintiffs served the designation and report of Mr. Kline two days later, on February 7, 2020.

Plaintiffs worked diligently to provide the report. Mr. Kline did not agree to provide a rebuttal report until Monday, February 3, 2020.[2] Plaintiffs did not receive a first draft of Mr. Kline's rebuttal report until Tuesday, February 4, 2020. The very next day on February 5, 2020—the same day Plaintiffs deposed Ms. Rusnak—Plaintiffs informed Defendant that they intended to serve a new rebuttal expert report.

There is nothing in Defendant's Motion to Substitute Ms. Rusnak, its proposed order granting that motion, the Court's order granting Defendant's motion, or the Federal Rules of Civil Procedure that should operate to (1) prevent Plaintiffs from fully rebutting Ms. Rusnak's newly-disclosed opinions related to amortization, including with an accounting expert or (2) limit Plaintiffs to rebutting such newly-disclosed opinions on amortization through Dr. Wunderlich. Plaintiffs' service of Mr. Kline's report was timely—Plaintiffs served his report well in advance of the deadline Defendant itself proposed and the deadline set by the Federal Rules of Civil Procedure.

///

///

---

[2] Plaintiffs retained Mr. Kline on Thursday, January 30, 2020, and Mr. Kline began reviewing Ms. Rusnak's report on Friday, January 31, 2020.

### D. Plaintiffs' Service of Mr. Kline's Rebuttal Report Was Substantially Justified and Striking It Would Be Unfairly Prejudicial.

Defendant should not be permitted to reveal a brand new amortization methodology and calculations reducing damages substantially on the eve of trial without allowing Plaintiffs the opportunity to rebut them. Preventing Plaintiffs from effectively rebutting Ms. Rusnak's amortization opinions with a rebuttal expert—specifically, a rebuttal expert who, like Ms. Rusnak, is a CPA—would be unfairly prejudicial. *Cf.* Fed. R. Civ. P. 26, advisory committee notes ("[E]ffective rebuttal requires advance knowledge of the line of testimony of the other side.").

Plaintiffs are substantially justified in providing a rebuttal report on the amortization issue from Mr. Kline rather than Dr. Wunderlich. Mr. Kline's rebuttal opinions are based, in significant part, on accounting principles—that Plaintiffs' ordinary approach to amortization is "reasonable and appropriate" from "a cost accounting perspective," that Ms. Rusnak's specific methodology is inconsistent with Generally Accepted Accounting Principles, that Ms. Rusnak's methodology cannot be justified by the "matching principle," and that appropriately adjusting Ms. Rusnak's methodology would increase damages substantially (even if one were to assume the tax credit deduction for the sake of argument).

On the same day Defendant served Ms. Rusnak's report, it also moved to exclude the opinions of Dr. Wunderlich, arguing in part that he is not a CPA. Dkt. 203 at 7. It would be unfair to permit Defendant to submit a new expert opinion concerning amortization—based on what Defendant calls "accounting principles"—on the eve of trial, while preventing Plaintiffs from rebutting that opinion with an accounting expert of their choice. Defendant apparently believes it should be permitted to inject a new accounting methodology into the trial at the eleventh hour and then criticize Plaintiffs for not having an CPA of their own to rebut that opinion. Plaintiffs could not have anticipated the need to retain such an expert when Mr. Shapiro had not offered any expert opinions, methodology, or calculations based on the "amortization" issues in Ms. Rusnak's report.

///

## IV. CONCLUSION

Should the Court grant Plaintiffs' pending Motion to Strike Ms. Rusnak's new opinion, the issue of Mr. Kline's report will be moot. However, should the Court permit Ms. Rusnak to testify about her amortization opinions at trial, Plaintiffs respectfully request that (1) the Court deny Defendant's Motion and (2) permit Plaintiffs to designate Mr. Kline as a rebuttal expert witness for the sole purpose of rebutting Ms. Rusnak's amortization opinions and methodology. Plaintiffs also request a properly-noticed hearing on Defendant's motion.

DATED: February 12, 2020

SUSMAN GODFREY L.L.P.

*By: /s/ Amanda K. Bonn*
KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
AMANDA K. BONN (270891)
abonn@susmangodfrey.com
CATRIONA LAVERY (310546)
clavery@susmangodfrey.com
CHELSEA SAMUELS (315257)
csamuels@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

JACOB W. BUCHDAHL (*pro hac vice*)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340

*Attorneys for Plaintiffs*