# EXHIBIT 1

**From:** Johnson, Pamela A.
**To:** Susan Weiss; Andrea Garber (andrea.garber@nbcuni.com) (andrea.garber@nbcuni.com)
**Cc:** Gutterman, Daniel S.
**Subject:** NBC - DIG - coverage determination letter
**Date:** Monday, July 28, 2014 10:50:40 AM
**Attachments:** NBC - DIG - coverage determination.pdf

---

Andrea and Susan,

Attached is our coverage determination describing in detail why the exclusion for war or warlike actions precludes coverage for the extra expense associated with NBCU's decision to move its production of DIG out of Israel to another country. After you have reviewed it, if you want to discuss the matter further, I am more than happy to do so.

Best,

**Pamela A. Johnson, Esq.** Assistant Vice President | OneBeacon Entertainment
tel: 952.852.2455 | PamelaJohnson@onebeacon.com
onebeaconentertainment.com

Confidentiality notice:

The information contained in this email message including attachments is confidential and is intended only for the use of the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, you are hereby notified that any use, unauthorized dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please delete immediately or if any problems occur with transmission, please notify me immediately by telephone.

Thank you.





A Member of OneBeacon Insurance Group

Pamela A. Johnson
Assistant Vice President
One Beacon Entertainment
601 Carlson Parkway, Suite 600
Minnetonka, MN 55305

July 28, 2014

**VIA EMAIL: Andrea.Garber@nbcuni.com**

Andrea Garber
NBC Universal Media
30 Rockefeller Plaza, 2nd Floor
New York, NY 10112

| RE: | **Claim Number:** | **OBI 66746** |
|---|---|---|
| | **Insured:** | **NBC Universal Media, LLC** |
| | **Policy Number:** | **MP00163-04** |
| | **Date of Loss:** | **July 10, 2014** |
| | **Type of Loss:** | **Extra Expense** |
| | **Underwriting Co.:** | **Atlantic Specialty Insurance Company** |

Dear Andrea:

This letter is to memorialize the information I provided to you in our telephone conversations last week. As I explained, we have evaluated NBCU's decision to move its production of the television series *DIG* from Israel to the United States or another country due to the imminent peril created by the escalated conflict between Israel and Hamas. We have concluded that the extra expense associated with the move is not covered under policy number MP00163-04 because of the exclusion for war and warlike actions. Our decision is based on information gathered about the situation in Israel, case law, treatises and consultation with counsel. A more detailed explanation of our decision is provided below:

**BACKGROUND FACTS**

On Thursday, July 10th, 2014, NBCU contacted Peter Williams, the President of OneBeacon Entertainment (OBE) and orally submitted a claim for extra expenses associated with a production delay caused by the heightened violence in that country. At the time, the production was shooting in Tel Aviv and Jerusalem. On Tuesday, July 7th, Hamas began firing rockets into those cities, which had not been the target of rocket attacks since 2012. Claiming that its personnel were in "imminent peril," the producers advised that they would push production by one week. This decision was based on reports from personnel in Tel Aviv and an email to the production dated July 10, 2014, from Stephen Smith, the head of NBCU security for Europe, stating:

> This is to advise you that the security environment in Israel currently prohibits NBCU Security from being able to guarantee the safety and security of our employees, production partners and associated crew and talent.
>
> NBCU Security have monitored and evaluated the events in Israel, Gaza and the West Bank, since inception and analyzed information from multiple sources. All current intelligence and activity in country points to events still being in escalation phase without a predictable or realistic timeframe for a reduction in hostilities. We have looked at the magnitude and range, of current rocket attacks (which appear to target locations to be used in forthcoming filming), the escalation of civil disorder and potential for a further increase in hostilities including a ground campaign and acts of terrorism within Israel, all of which mean there is no short term and realistic likelihood for positive changes to the security landscape.
>
> As the situation is unlikely to change, this raises significant concern over the level of risk facing our crew and talent, and the liability over duty of care to which NBCUniversal would be exposed. There are no current security controls that would allow NBCU Security to guarantee the safety and security of our personnel planning to arrive or currently based in Israel without the prospect of serious injury or loss of life. Personnel based in country in relation to this production should make arrangements to leave.

On Monday, July 14th, NBCU finalized its decision to push the production for one week and you communicated its decision to OBE in a telephone call with me, Danny Gutterman and NBC's broker, Susan Weiss. In that conversation, you also mentioned that if the hostilities did not deescalate, there was a chance that NBCU would decide to move the production to another country or back to the United States. We asked to be kept informed and we scheduled another call for Friday, July 18th.

In the meantime, the hostilities between Israel and Hamas worsened. On Tuesday, July 15th, Hamas refused to agree to a cease-fire suggested by Egypt. In response, Israeli President Netanyahu gave the military authorization to use "full force" against militants in Gaza stating, "Hamas chose to continue fighting and will pay the price for that decision. . . . When there is no cease-fire, our answer is fire."

According to the Washington Post, citing Israeli news reports, "by early Wednesday morning, Israel had struck at least 25 targets inside Gaza, including the home of a senior Hamas leader, Mahmoud Al Zahar. Hamas militants fired at least 13 rockets into southern Israel, seven of which were intercepted by Israel's Iron Dome air defense system." Israel then called up an additional 18,000 reservists and announced plans for a ground attack on Gaza. Israel dropped leaflets into Gaza warning the population to evacuate. On Thursday, Israel began a ground invasion into Gaza, including the use of tanks and gunboats.

On Thursday afternoon, we had another telephone conversation which included Danny Gutterman and Susan Weiss. In this conversation, you informed us that NBCU had decided to move the production due to the ongoing hostilities which were creating dangerous conditions in Tel Aviv and Jerusalem. I informed you that we were seriously considering whether the exclusion for war and warlike actions would preclude coverage for the claim. Peter Williams had informed Susan Weiss the night before that we were evaluating whether the exclusion would apply to the situation in Israel. You and Susan Weiss both protested, asserting that the situation in Israel did not constitute a war because Hamas was a terrorist organization, not a governmental authority and that there had been no formal declaration of war. I informed you that we were still considering the matter and we would get back to you on Monday, July 21st with our final decision. At that time, I informed you that our final decision was to exclude the claim based on the exclusion, but as a courtesy, we would cover the expenses related to the initial push in production.

**PERTINENT POLICY PROVISIONS**

OneBeacon, through Atlantic Specialty Insurance Company, issued policy no. MP00163-04 to NBCUniversal Media, LLC, effective from January 1, 2014, to June 30, 2015. That policy contains extra expense coverage, which includes the following pertinent provisions:

> **I. INSURING AGREEMENT**
>
> We agree to pay to you such loss (as defined in Paragraph VII) not including loss of earnings or profit, as you sustain by reason of such extra expense you necessarily incur as a result of the interruption, postponement, cancellation, relocation, curtailment or abandonment of an Insured Production due to the following:
>
> 1. The loss must be a direct result of an unexpected, sudden or accidental occurrence entirely beyond your control to include:
>
> * * *
>
> g) Imminent peril, defined as certain, immediate and impending danger of such probability and severity to person or property that it would be unreasonable or unconscionable to ignore.
>
> h) Any expenses incurred to avoid a loss imminent peril are covered to the extent that they serve to avoid a loss otherwise covered.
>
> 2. Except as provided above, this extension does not negate the applicability of the basic terms and conditions of:

a) The Extra Expense Coverage in the event that an imminent peril results in damage to or destruction of property or facilities payable under this policy . . .

The policy's General Conditions contain the following exclusion applicable to all sections of the policy:

> This policy does not insure against loss or damage caused directly or indirectly by:
>
> 1. War, including undeclared or civil war; or
>
> 2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
>
> 3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> 4. Any weapon of war including atomic fission or radioactive force, whether in time of peace or war;
>
> * * *
>
> 8. Any uninsured event occurring before, concurrently with or after the happening of an insured event, which directly or indirectly causes or in any way contributes to cause or increase a loss under this policy; but only with respect to that portion of any such loss caused by or contributed to by the uninsured event, unless the uninsured event would not have been a factor had such insured event never occurred.

The policy contains coverage for Certified Acts of Terrorism. The term "certified act of terrorism" is defined as follows:

> An act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:
>
> **1.** The act resulted in aggregate losses in excess of $5 million; and

> 2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. . . .

**ANALYSIS**

***Imminent Peril***

Based on Mr. Smith's email to the production and what we know about the present conflict, we believe that the extra expenses that will be incurred to move the production out of Israel will be due to imminent peril. Rockets launched toward areas where filming is taking place would no doubt reasonably constitute a "certain, immediate and impending danger of such probability and severity to person or property that it would be unreasonable or unconscionable to ignore." With hostilities increasing, there remains a certain, immediate and impending danger. The question now is not whether the loss falls within the insuring clause but whether the war exclusion or the terrorism coverage applies.

***Terrorism Coverage***

The terrorism coverage should not apply because, under its terms, the act must be part of an effort to coerce or influence the United States population or government. The acts being carried out in Israel are part of a long-term dispute between Hamas and Israel. The focus is not the United States or its policy. Moreover, the U.S. Secretary of the Treasury has not certified the events as acts of terrorism. Thus, we do not believe the terrorism coverage would apply.

***War Exclusion***

The key question is whether the hostilities causing the imminent peril will be considered to be a war, or warlike action by a military force. Case law and other treatises indicate that this would be the likely finding. Therefore, the war exclusion should apply.

***War***

Subparagraph 1 of the war exclusion states that no coverage is provided for loss or damage caused directly or indirectly by "war, including undeclared . . . war." Statutes defining "war" in various contexts, and cases that have interpreted war exclusions in insurance policies, provide assistance in determining whether the loss presented here was caused by war.

In *Wilkinson v. Equitable Life Assurance Soc.*, 2 Misc. 2d 249 (N.Y. Mun. Ct. 1956), considered whether the Korean conflict in the 1950s was a war even though it was not a declared war:

> We must take the view that words are to be taken in their plain, ordinary, popular sense and that they are to be considered as they would be understood by the average man. "Contracts of insurance are to be construed according to the sense and meaning of the

> terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense." [Citation.]
>
> The likelihood of death by external, violent and accidental means is immeasurably increased by military service in time of war. . . . Our courts have held it to be entirely proper for an insurer to limit its liability in situations involving war risks. [Citation.]
>
> While it is true that there was no formal declaration of war by Congress, there can be no doubt that the United States was engaged in a war in Korea as an actual fact.

*Id.*, at 251. The court cited a 1951 Attorney General opinion finding that "[t]he magnitude and actuality of the conflict in Korea, its pervading effect upon the national security and interest, together with the demands created thereby upon the nation as a whole are too apparent to need recounting. . . . They require the conclusion that the Korean hostilities constitute a war for the purpose of determining eligibility under Military Law, Section 210, for the assistance intended thereby for war veterans disabled by blindness." *Id.* at 251-252.

Appleman on Insurance discusses exclusions for war, including the meaning of war and similar terms. "War is 'a course of hostility' between 'states or state-like entities.' To constitute a de facto state, a group must have 'significant attributes of sovereignty' and the application of this exclusion is fact-specific."

Black's Law Dictionary defines a "war" as a "[h]ostile conflict by means of armed forces, carried on between nations, states, or rulers, or sometimes between parties within the same nation or state." 8th ed. at 1614. A leading dictionary of international law defines an "act of war" as a "use of force or other action by one state against another [which t]he state acted against recognizes . . . as an act of war, either by use of retaliatory force or a declaration of war." James R. Fox, Dictionary of International and Comparative Law, 3d ed. (2003). Another dictionary defines an "act of war" as "a measure of force which one party, using military instruments of power, implements against another party in an international armed conflict." The Handbook of Humanitarian Law in Armed Conflicts, 49 (Dieter Fleck, ed., 1995).

Hamas has become the government of the Gaza Strip. Hamas has a military wing, the Qassam Brigades, as well as a force of police, security and intelligence personnel[1] Our understanding is that it is Hamas's military wing that has carried out the attacks on Israel that led to NBCU's claim. "Hamas directs the Gaza government and security forces through a self-appointed cabinet of Hamas ministers . . ."[2]

Thus, although Gaza or Palestine is not a recognized nation, at least by most of the world, it does have some indicia of sovereignty. It governs territory and it is this territory from which the attacks on Israel have come. Hamas has a stated goal of destroying Israel and is using

[1] Zanotti, *Hamas: Background and Issues for Congress* (Congressional Research Service 2010).

[2] *Id.*, at p. 19.

weapons in its quest. Although the rockets are being fired into civilian areas, which may violate established norms of warfare and armed conflict under international law, this is not a situation where a single civilian, or group of civilians, is the target. This conflict involves sophisticated military weapons fired from one territory into another country, Israel. We believe that the only reasonable interpretation of what is occurring, and that has led to NBCU's action, is war or warlike action.

We note that NBCU affiliate company, MSNBC, has referred to the conflict as a war for the past several days. This should be considered in taking into account the insured's reasonable expectations.

***Warlike Action By A Military Force***

Even if what occurred, and is occurring, would not be found to be a war, it is nevertheless a "warlike action." However, if this is the case, to be excluded under Subparagraph 2 of the exclusion, the warlike action must be by a "military force." There is no question that one side of the conflict, the Israeli side, is a military force of a sovereign nation. But if it is necessary that the military force must be the one firing rockets at the areas where the filming was occurring, we must determine whether Hamas is a military force. As to this question, we believe that Hamas is a military force of a government, the government of Gaza. Even though many, including Israel and the United States, consider Hamas to be a terrorist group, it is the government of a territory that is involved in the conflict. Hamas operates a military command in the Gaza Strip, a territory it has controlled since 2007.[3] It operates its military force through self-appointed ministers. *Id.*, at p. 19. In light of the governmental structure within Gaza, the Hamas military in Gaza fits the definition of a military force. The current structure represents a considerable evolution from the Hamas that carried out the isolated terrorist attacks in the 1990's and the first few years of the 21st century.

Thus, the only reasonable interpretation of the situation that led to NBCU's decision to postpone the *Dig* production and its ultimate decision to move the production from Israel is that the imminent peril that led to these decisions was caused by war, or warlike action by a military force. As a result, we believe the war exclusion applies to this claim

**CONCLUSION**

NBCU is a valued and respected client of OBE and we regret that we cannot be of more assistance in this situation. Although we cannot cover the extra expense associated with the production's move to another country to complete production, based on our long relationship with NBC, we are willing to cover the expenses associated with the initial postponement as a courtesy. Please submit the initial budget, the costs associated with the removal of personnel from Israel and an itemization of any payment made to personnel that NBCU was contractually obligated to pay from the date the decision was made to postpone production until July 17th, the date we informed you that the war exclusion would likely apply to this claim.

Pursuant to California Code of Regulations, you have the right to request a review of this matter by the California Department of Insurance. You may contact the Department at telephone number 1-800- 927-

---

[3] Zanotti, *Hamas: Background and Issues for Congress* (Congressional Research Service 2010).

4357, or you may write to the Department of Insurance, Claims Services Bureau, 300 S. Spring Street, Los Angeles, California 90013.

If you have any further questions, please don't hesitate to contact me.

Sincerely,

ATLANTIC SPECIALTY INSURANCE COMPANY

By:__________/s/________________________

Pamela A. Johnson
Assistant Vice President
OneBeacon Entertainment

cc: Susan Weiss (via email)
Senior Vice President
Aon/Albert G. Ruben Insurance Services, Inc.
15303 Ventura Blvd., Suite 1200
Sherman Oaks, CA 91403-5817