# EXHIBIT 3

| Deposition Designation | Objection & Response |
|---|---|
| Defendant's Designation of Teresa Gooley Wolf | Plaintiffs object to Defendants' designations as follows. Where line numbers are not included with a page number, plaintiffs object to all designated testimony on the page cited. |
| **Defendant currently intends to submit the following testimony to be played on videotape or a computer. However, its trial preparation continues and it reserves the right to either read the testimony or present the witness live.** | |
| Page 6 19 EXAMINATION 20 BY MS. COYOCA: 21 Q. Good morning, Ms. Gooley. Could you please 22 state your full name and address for the 23 record. 24 A. Sure. It's Theresa Anne, A-N-N-E, Gooley | Plaintiff's Objections: No objection – Page 6:19-24. Defendant's Response: |
| Page 9 9 Could you please describe your 10 educational background starting from college 11 moving forward? 12 A. I graduated from the University of Minnesota, 13 Minneapolis, from the Carlson School of 14 Management with a finance degree, and then I 15 worked for a year, and then I went to law 16 school at Drake Law School in Iowa and 17 graduated in 1994. And then I -- let's see, 18 I'm trying -- yup, that's -- that is it. 19 Q. When did you receive your undergraduate 20 degree? 21 A. Nineteen ninety. 22 Q. And you indicated you worked for a year in 23 between undergrad and law school; is that 24 correct? 25 A. That's correct. | Plaintiff's Objections: No objection – Page 9:9-25. Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| **Page 10**<br><br>1 Q. Where did you work?<br>2 A. I worked at Medtronic.<br>3 Q. Doing what?<br>4 A. More accounting-related things.<br>5 Q. Do you have any degrees beyond your JD from<br>6 Drake Law School?<br>7 A. No.<br>8 Q. No LLMs or anything like that?<br>9 A. No.<br>10 Q. Do you have any kind of certificates or<br>11 specializations in any particular legal area?<br>12 A. No.<br>13 Q. Have you attended any continuing legal<br>14 education that specifically focused on<br>15 insurance?<br>16 A. Yes.<br>17 Q. Can you please describe for me the nature of<br>18 such continuing legal education just<br>19 generally?<br>20 A. I've attended Tort Trial Insurance, they have<br>21 different events and I've attended those,<br>22 they focus primarily on first-party fidelity<br>23 coverage. I've, you know, just attended CLEs<br>24 here and there that may have addressed, like,<br>25 directors and officers insurance, | Plaintiff's Objections:<br>No objection – Page 10:1-25.<br><br>Defendant's Response: |
| **Page 11**<br><br>1 employment-related insurance, coverage<br>2 insurance in general.<br>3 Q. Okay. With respect to continuing legal<br>4 education, have you taken any seminars or any<br>5 kind of courses with respect to best<br>6 practices in terms of claims handling?<br>7 A. We -- at OneBeacon they did -- they had -- we<br>8 had training for different states, so I know<br>9 that I did some in California and -- but like<br>10 best practices just consistent with what the | Plaintiff's Objections:<br>No objection – Page 11:1-10.<br><br>Defendant's Response: |
| **Page 14**<br><br>12 Q. And can you please describe your employment<br>13 background just generally from graduation<br>14 from law school forward?<br>15 A. So after I graduated from law school, I<br>16 clerked for the District Court here in<br>17 Minneapolis for former Judge Sean Rice, and<br>18 then former Judge Kathleen Blatz, and I also | Plaintiff's Objections:<br>No objection – Page 14:12-25.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 19 did a rotation with -- she's a current judge,<br>20 Lancaster, Joan Lancaster, Joan Ericksen<br>21 Lancaster, it might be Joan Ericksen now.<br>22 Then I worked at the Department of<br>23 Commerce, the Minnesota Department of<br>24 Commerce for, I want to say, maybe nine<br>25 months, maybe a year, and then came over to | |
| Page 15 | |
| 1 Meagher & Geer, and worked at Meagher & Geer<br>2 until I went over to what was St. Paul<br>3 Companies, and that would have been in about<br>4 2001.<br>5 And at some point, I think it was<br>6 2004, 2005, St. Paul and Travelers merged,<br>7 and so I worked for what is now Travelers<br>8 through two thousand -- November 2010, and<br>9 then went to OneBeacon in two thousand --<br>10 November 2010, and left OneBeacon in December<br>11 2015. I worked -- and I started at Travelers<br>12 again in -- excuse me, June of 2016 and am<br>13 currently at Travelers.<br>14 Q. Okay. And the work that you did for the<br>15 Minnesota Department of Commerce for<br>16 approximately nine months to one year, what<br>17 did you do while you were there?<br>18 A. I worked in the division that -- that worked<br>19 with the underground storage tanks and<br>20 environmental cleanup of -- of, you know,<br>21 underground storage-related tanks.<br>22 Q. And you worked as a lawyer?<br>23 A. Yes.<br>24 Q. Your work for St. Paul Travelers the first<br>25 time that you worked for them, what did you | Plaintiff's Objections:<br>No objection – Page 15:1-25.<br><br>Defendant's Response: |
| Page 16 | |
| 1 do for St. Paul Travelers?<br>2 A. I was a claim handler.<br>3 Q. Did you have any particular area of industry<br>4 focus?<br>5 A. When I initially started, I handled directors<br>6 and officers, errors and omissions,<br>7 employment and fidelity-related matters, and<br>8 that was for about the first five years. And<br>9 then thereafter I was the managing director<br>10 for financial institutions, so focused on<br>11 claims that our financial institution<br>12 insureds had, so it could be anything from a<br>13 community bank to a U.S. Bank to a former<br>14 Lehman Brothers.<br>15 Q. And what was your last position when you left<br>16 Travelers? | Plaintiff's Objections:<br>No objection – 16:1-20; 16:23-25.<br><br>Defendant's Response:<br>Objection deleted. |

4

| Deposition Designation | Objection & Response |
|---|---|
| 17 A. Managing director.<br>18 Q. Okay. I believe you indicated you joined<br>19 OneBeacon entertainment in November of 2010;<br>20 is that correct?<br><br>23 THE WITNESS: Yeah, I went -- yes,<br>24 I went to OneBeacon in November 2010.<br>25 MS. COYOCA: Okay.<br><br>Page 17<br><br>1 BY MS. COYOCA:<br>2 Q. And what was your position when you were<br>3 first hired at OneBeacon?<br>4 A. Again in claims. I was the vice-president of<br>5 claims, so initially I oversaw the -- the<br>6 financial institution group and what --<br>7 what -- what is called the government risk<br>8 group and then the energy group.<br>9 Q. And how long did you handle that position<br>10 overseeing the financial institution group,<br>11 the government group and the energy group?<br>12 A. The government group I -- I've -- my whole<br>13 tenure at -- at OneBeacon I -- I oversaw.<br>14 Energy I oversaw -- OneBeacon ultimately<br>15 moved out of the -- out of energy, and so I<br>16 oversaw that up through the time that they<br>17 moved out of the energy in -- I'm trying to<br>18 think. I can't remember the exact date. I<br>19 want to say it probably was sometime in 2013,<br>20 but I don't remember the exact date.<br>21 Q. What about the financial institutions group?<br>22 A. So the financial institutions group, I<br>23 oversaw that group probably for about four<br>24 years, and then it transitioned over to<br>25 somebody else within OneBeacon.<br><br>Page 18<br><br>1 Q. And when you say you oversaw the financial<br>2 institution group or the energy group,<br>3 et cetera, what do you mean by the words<br>4 "oversaw"?<br>5 A. Each of -- each of those divisions within<br>6 OneBeacon had a claim manager and so I<br>7 oversaw that claim manager.<br>8 Q. What position, if -- if there were any<br>9 different positions other than a<br>10 vice-president of claims, did you hold while<br>11 you were employed by OneBeacon?<br>12 A. I think my position at all times was<br>13 vice-president of claims. I think -- strike<br>14 that. My -- it is -- my position at all | <br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 17:1-25.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 18:1-25.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 15 times was vice-president of claims. The<br>16 groups that I oversaw changed during the<br>17 course of my tenure at OneBeacon.<br>18 Q. Other than the three groups that you've<br>19 already mentioned, what other groups did you<br>20 oversee?<br>21 A. I oversaw the technology group, and the<br>22 accident and health group, and the<br>23 entertainment group. I just want to make<br>24 sure I'm not missing one. And the<br>25 environmental group or excess and surplus. | |
| Page 19<br><br>1 Q. Did you oversee more than one claims manager<br>2 when you were overseeing the technology<br>3 group?<br>4 A. Yes.<br>5 Q. How many?<br>6 A. About five or six | Plaintiff's Objections:<br>No objection – Page 19:1-6.<br><br>Defendant's Response: |
| Page 20<br><br>18 Q. Okay. Focusing on the entertainment group --<br>19 A. Perfect.<br>20 Q. -- what was the -- who did you oversee at the<br>21 entertainment group?<br>22 A. Pamela Johnson.<br>23 Q. Okay. What was Pamela Johnson?<br>24 A. She was the -- the claim manager, I'm not<br>25 sure if that was the exact title, but the | Plaintiff's Objections:<br>No objection – Page 20:18-25.<br><br>Defendant's Response: |
| Page 21<br><br>1 claim manager of the entertainment group.<br>2 Q. Was there more than one claims manager for<br>3 the entertainment group while you were<br>4 overseeing it?<br>5 A. She was the head claim person. At some point<br>6 just before I left, we had another individual<br>7 come in and was a claim manager, but not<br>8 parallel -- it wouldn't have been a parallel<br>9 position to Pamela Johnson.<br>10 Q. When you say not a parallel position, what do<br>11 you mean?<br>12 A. Pamela -- Pamela oversaw the -- the whole<br>13 entertainment group and then reported up to<br>14 me. Her oversight included all the<br>15 individual claim handlers that handled the<br>16 entertainment claims and then loosely the<br>17 other groups that handled other -- that<br>18 handled other entertainment claims.<br>19 After Pamela's departure we had -- | Plaintiff's Objections:<br>No objection – Page 21:1-25.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 20 we hired a claim manager but he did not -- he<br>21 didn't have the experience Pamela did, so he<br>22 wasn't brought in at the level Pamela was.<br>23 Q. And Pamela Johnson, when she was the claims<br>24 manager, you indicated that there were<br>25 various claims handlers that reported to her;<br><br><br>Page 22<br><br>1 is that correct?<br>2 A. That's correct.<br>3 Q. How many?<br>4 A. I think about five or six.<br>5 Q. And how long did you oversee the<br>6 entertainment group, from what period of time<br>7 until the end?<br>8 A. I oversaw it through December of 2015. When<br>9 I started -- let's see, Pamela came in 2012.<br>10 I think I started probably in 2013.<br><br>22 Q. And who were the five or six claims handlers,<br>23 if you can recall, that Pamela oversaw in the<br>24 entertainment group?<br>25 A. Danny Gutterman, Lucy, and I apologize I<br><br>Page 23<br><br>1 can't remember Lucy's last name right now,<br>2 Elyse Reinke, Ryan, and I believe her name is<br>3 Christine, she sits out in Boston, and then<br>4 at one point also Jill, and I can't remember<br>5 Jill's last name either, sorry.<br>6 Q. Are any of these individuals that you just<br>7 identified, are any of them lawyers?<br>8 A. No, no.<br><br>19 Q. As the VP and over -- of claims and<br>20 overseeing, let's just focus on the<br>21 entertainment group, what did your<br>22 responsibilities entail?<br>23 A. I worked directly with Pamela. To the extent<br>24 I had questions about any claims or she had<br>25 questions, that would be something we talked<br><br>Page 24<br><br>1 about. We would talk generally about what<br>2 was going on within entertainment, you know,<br>3 what we were seeing based on claim -- claim<br>4 volume, types of claims. My oversight would<br>5 include staffing, you know, appropriate | Plaintiff's Objections:<br>No objection – Page 22:1-10, 22-25.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 23:1-8, 19-25.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – 24:1-12; 24:15-25. |

| Deposition Designation | Objection & Response |
|---|---|
| 6 staffing, monitoring volume, assisting with<br>7 broker relationships, things like that.<br>8 Q. When an entertainment claim would come in,<br>9 would you receive notice of it?<br>10 A. No.<br>11 Q. When did you receive notice, if ever, that an<br>12 entertainment claim had been asserted?<br><br>15 THE WITNESS: At OneBeacon, with<br>16 the entertainment, the claims, it depended on<br>17 when they came in in terms of the time<br>18 period, but generally the claims were<br>19 supposed to be reported up through our<br>20 central reporting and that's when the claims<br>21 were set up.<br>22 Pamela Johnson would assign the<br>23 claims. There may be occasions where Lucy<br>24 would or Lucy would get a claim and then<br>25 she'd direct it to be set up. I would find | Defendant's Response:<br>Objection deleted. |
| Page 25 | |
| 1 out about particular claims if Pamela was<br>2 gone or if Pamela let me know about the<br>3 particular claim.<br>4 BY MS. COYOCA:<br>5 Q. But as a matter of routine course, you did<br>6 not necessarily receive notice of each<br>7 entertainment claim that was filed with<br>8 OneBeacon; is that correct?<br>9 A. That's correct. | Plaintiff's Objections:<br>No objection – Page 25:1-9.<br><br>Defendant's Response: |
| Page 38 | |
| 23 Q. In terms of overseeing Ms. Johnson's<br>24 management of entertainment-related claims,<br>25 what specifically were your duties? | Plaintiff's Objections:<br>No objection – Page 38:23-25.<br><br>Defendant's Response: |
| Page 39 | |
| 1 A. Again, I worked with Pamela on any<br>2 particularly large claims, any particular<br>3 claims that had significant coverage issues,<br>4 and then worked with her on staffing issues,<br>5 you know, reviewed claims, claim loads,<br>6 things of that nature.<br>7 Q. When you say you worked with her on large<br>8 claims, what specifically did that entail?<br>9 A. Well, if she had -- if we had any particular<br>10 large claims, she would flag -- flag them up<br>11 to me and we would generally have a<br>12 conversation about the particular claims, and<br>13 depending on the nature of the claim, may | Plaintiff's Objections:<br>No objection – Page 39:1-25.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 14 have several conversations.<br>15 Q. Did you review the work that Ms. Johnson had<br>16 done in investigating claims?<br>17 A. Generally, no.<br>18 Q. Would you -- when discussing particular<br>19 claims with Ms. Johnson, would you question<br>20 her with respect to the steps that she had<br>21 taken to investigate a claim?<br>22 A. I -- I may question her to make sure that I<br>23 understood what we had done and what her<br>24 conclusions were and, you know, what she<br>25 based those conclusions on.<br><br>Page 40<br><br>1 Q. Were there any occasions that you can recall<br>2 where you would direct Ms. Johnson to go back<br>3 and do additional work in investigating a<br>4 claim?<br>5 A. No.<br>6 Q. While you were overseeing Ms. Johnson's work,<br>7 did you provide any type of guidance with<br>8 respect to the steps that should be<br>9 undertaken when investigating a claim?<br>10 A. Generally, no. Pamela is an expert in the<br>11 area. To the extent we have a discussion and<br>12 we think of something that we would want to<br>13 probe further, we'd go forward with that, but<br>14 I trusted Pamela's judgment.<br>15 Q. You indicated that Ms. Johnson was an expert<br>16 in the area; is that correct?<br>17 A. Yes.<br>18 Q. What did you base that conclusion on?<br>19 A. She has significant experience handling<br>20 entertainment claims. She also was a trial<br>21 lawyer, has significant trial experience.<br>22 She's very bright, very articulate, and she<br>23 knows a lot of the players in the industry.<br>24 Q. And when you say, "She knows a lot of players<br>25 in the industry," what industry are you<br><br>Page 41<br><br>1 referring to?<br>2 A. Entertainment<br><br>Page 44<br><br>1 entertainment industry?<br>2 A. I'm not aware, no. | <br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 40:1-25.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 41:1-2.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 3 Q. Okay. I'd like to show you a document, 4 Ms. Gooley, that has previously been 5 identified as an exhibit to Danny Gutterman's 6 deposition. So I'm going to go ahead and 7 give you that. (Hands document.) 8 And for the record, this document is 9 titled, "General Claims Practices," and it's 10 labeled Bates control numbers ATL000735 11 through 743. Could you please take a moment 12 to familiarize yourself with this document? 13 A. Yes. 14 Q. Please let me know when you're ready for 15 questions. 16 A. Okay. (Reviews document.) I'm done 17 reviewing the document. 18 Q. Thank you. Are you familiar with this 19 document? 20 A. Yes. 21 Q. What is it? 22 A. It's called the General Claims Practices. 23 Q. Were you familiar with it before you just 24 read through it? 25 A. Yes, I've seen it before. | Plaintiff's Objections: No objection – Page 44:1-25. Defendant's Response: |
| Page 45 | |
| 1 Q. When did you see it? 2 A. When I was at OneBeacon. 3 Q. Was it the General Claims Practice -- 4 practices that were in effect at the time 5 that you were working for OneBeacon? 6 A. Yes, it was. | Plaintiff's Objections: No objection – Page 45:1-6. Defendant's Response: |
| Page 68 | |
| 12 BY MS. COYOCA: 13 Q. Ms. Gooley, was it necessary for you to be 14 informed as to every claim that Ms. Johnson 15 was going to deny before the denial was 16 conveyed to the client? | Plaintiff's Objections: No objection – 68:12-16; 68:19-25. |
| 19 THE WITNESS: No, she -- she had 20 the authority to deny a claim. 21 BY MS. COYOCA: 22 Q. Were there particular parameters pursuant to 23 which Ms. Johnson was required to report to 24 you before she denied a claim? 25 A. We never had any express parameters. We had | Defendant's Response: Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 69<br><br>1 worked together long enough, you just know<br>2 when you need to flag something up and talk<br>3 about it and when you -- you know, you can go<br>4 forward, so...<br>5 Q. When Ms. Johnson came to you to discuss a<br>6 claim and the fact that her recommendation<br>7 was going to be to deny the claim, did you<br>8 have any process that you would go through<br>9 with her in order to review the<br>10 determination?<br><br><br>13 THE WITNESS: If Pamela and I were<br>14 talking about a denial, I would always want<br>15 to see the policy first and then I'd -- you<br>16 know, and then we'd have a discussion about<br>17 the facts of the claim and everything that<br>18 she knew and, you know, she'd outline why she<br>19 felt there was or was not coverage, and then<br>20 I'd ask any questions that I may have and,<br>21 you know, it really depended on the nature of<br>22 the claim, how many -- how many questions I<br>23 may or may not have had.<br>24 BY MS. COYOCA:<br>25 Q. Were there ever circumstances pursuant to | Plaintiff's Objections:<br>No objection – 69:1-10;<br>69:13-25.<br><br><br>Defendant's Response:<br>Objection deleted. |
| Page 70<br><br>1 which you would send Ms. Johnson back in<br>2 order to obtain additional facts or further<br>3 investigate the claim?<br>4 A. I can't recall any, no.<br>5 Q. You indicated that she'd outline the -- why<br>6 she felt there was or was not coverage. Did<br>7 you require that Ms. Johnson provide the<br>8 reasons why she felt there was or was not<br>9 coverage in writing?<br><br>11 THE WITNESS: No, not necessarily.<br>12 Again, you know, we'd have a conversation and<br>13 I'd want -- you know, we'd talk about the<br>14 facts, I'd want to look at the policy, we'd<br>15 talk through the coverage issues, whether<br>16 there was or was not coverage, and it may be<br>17 at the end of the day when the letter -- when<br>18 we're ready to issue a letter I may want to<br>19 look at it. But, generally, that was not<br>20 common practice. | Plaintiff's Objections:<br>No objection – 70:1-9;<br>70:11-20.<br><br><br>Defendant's Response:<br>Objection deleted. |
| Page 93 | Plaintiff's Objections:<br>No objection – Page 93:10- |

| Deposition Designation | Objection & Response |
|---|---|
| 10 MS. COYOCA: I actually want to<br>11 move on to a new exhibit number, and I<br>12 believe we're on Exhibit 31. So Exhibit 31<br>13 will be an e-mail chain, and it's labeled<br>14 Bates control ATL001571 through 1572.<br>15 (Whereupon, Exhibit 31 was<br>16 marked for identification.)<br>17 THE WITNESS: (Reviews document.)<br>18 I've finished looking at it.<br>19 MS. COYOCA: Okay.<br>20 BY MS. COYOCA:<br>21 Q. Actually, before you -- I ask you about this<br>22 document, when is the first time you heard<br>23 about the Dig claim?<br>24 A. I think that -- I'm trying to remember if<br>25 it -- I think it was the day after Aon<br><br>Page 94<br><br>1 provided OneBeacon with formal notice of the<br>2 claim.<br>3 Q. And how did you hear about it?<br>4 A. From Pamela.<br>5 Q. Did she call you, send you an e-mail, ask for<br>6 a meeting?<br>7 A. I think -- I think this might have been how<br>8 she let me know about it.<br>9 Q. Okay. And by, "This," you mean Exhibit 31,<br>10 the e-mail exchange?<br>11 A. Yes.<br>12 Q. Okay. So do you recall any conversations or<br>13 communications with Ms. Johnson prior to<br>14 receipt of the e-mail exchange that's<br>15 contained in Exhibit 31?<br>16 A. I don't recall any conversations before this<br>17 e-mail, no.<br><br>Page 103<br><br>1 Q. At any point in time that you were involved<br>2 with the claim, did you gain an understanding<br>3 of what it exactly is that Mr. Gutterman was<br>4 doing?<br>5 A. I know that he was looking at different<br>6 outside, you know, articles, things like<br>7 that. But my primary correspondence --<br>8 communication -- my communication was with<br>9 Pamela.<br>10 Q. Did you have any conversations with<br>11 Ms. Johnson about the work that Mr. Gutterman<br>12 was doing?<br>13 A. I -- I don't recall.<br>14 Q. Did you have any conversations with her | 25.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 94:1-17.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 103:1-25.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 15 specifically about the outside sources, the<br>16 articles that Mr. Gutterman was consulting<br>17 with?<br>18 A. No.<br>19 Q. Did you provide any direction to Ms. Johnson<br>20 in terms of the use of Mr. Gutterman as a<br>21 resource to locate sources of information?<br>22 A. No, I did not.<br>23 Q. Directing your attention to the first e-mail<br>24 in the chain of Exhibit 31, which is the<br>25 July 16 e-mail from Pamela Johnson to<br><br>Page 104<br><br>1 Theresa Gooley, "Active War Exclusion, Are<br>2 you available for a short call," it indicates<br>3 that it was sent at 1:44 p.m. Do you see the<br>4 e-mail?<br>5 A. I do.<br>6 Q. Do you recall receiving the e-mail?<br>7 A. I do now. I mean, I wouldn't have remembered<br>8 an e-mail that long ago, but...<br>9 Q. Do you have any reason to believe that you<br>10 didn't receive it at or about the time it<br>11 indicates it was sent?<br>12 A. No.<br>13 Q. In the e-mail Ms. Johnson makes reference to<br>14 the fact that, "An imminent peril claim has<br>15 been made by NBC stemming from a production<br>16 that was shut down due to the rocket fire<br>17 into Tel Aviv and Jerusalem." Do you see<br>18 that?<br>19 A. I do.<br>20 Q. First of all, at that point in time did you<br>21 know what an imminent peril claim was?<br>22 A. I had heard of it, yes.<br>23 Q. What was your understanding of what an<br>24 imminent peril claim was?<br>25 A. Just that there was some immediate danger.<br><br>Page 105<br><br>1 Q. And what was your understanding as to what<br>2 the coverage would be?<br>3 A. I'd have to see the policy.<br>4 Q. There's a reference in the e-mail in the<br>5 second to the last line to the, "Israeli<br>6 Hamas conflict." Do you see that?<br>7 A. I do.<br>8 Q. At or about this time frame in July 2014,<br>9 what was your understanding of what Hamas was<br>10 or is?<br>11 A. It's an organization or a -- in the<br>12 Middle East in the Gaza Strip. | <br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 104:1-25.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 105:1-25.<br><br>Defendant's Response: |

13

| Deposition Designation | Objection & Response |
|---|---|
| 13 Q. And, again, just focusing back on July 16, 14 did you know anything further about Hamas 15 other than it was an organization in the 16 Middle East in Gaza Strip? 17 A. I mean, you know, just general things that 18 you hear in the news, et cetera. 19 Q. Right. That's what I'm trying to get at. 20 What was your general understanding based on 21 news sources of what Hamas is? 22 A. Well, just what I said, it's in the 23 Middle East, I mean... 24 Q. Okay. Did you -- did you know what kind of 25 activities Hamas engaged in? | |
| Page 106 | |
| 3 THE WITNESS: They -- I mean, 4 yeah, generally, they engage in quite a few 5 different activities. 6 BY MS. COYOCA: 7 Q. What activities were you aware of as of July 8 2014 that Hamas engaged in? 9 A. Just, you know, the bombing and the conflict 10 back and forth within Israel. 11 Q. And what was your understanding as to what 12 the conflict was with Israel? 13 A. At that time? 14 Q. Uh-huh. 15 A. Well, I think there's a whole number -- a 16 whole number of issues as to what the 17 conflict is, I guess. But, you know, at that 18 time I just -- I understood that, you know, 19 they were -- they were launching missiles 20 back and forth at each other. 21 Q. Okay. So it was your understanding that the 22 conflict involved Hamas and Israel launching 23 missiles back and forth at each other; is 24 that correct? 25 A. That's part of it. I mean, this is just an | Plaintiff's Objections: No objection – 106:3-25. Defendant's Response: Objection deleted. |
| Page 107 | |
| 1 initial e-mail, so I wanted to have a 2 conversation with Pamela. 3 Q. I completely understand, but -- 4 A. Yeah. 5 Q. -- I'm just asking for your -- your baseline 6 level of knowledge prior to getting into the 7 claim, I want -- I'd like to know what -- 8 gain your understanding of Hamas is and what 9 the conflict was about, so that's the reason 10 for the questions. | Plaintiff's Objections: No objection – Page 107:1-25. Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 11 The -- the -- I'd like to focus on<br>12 the missiles going back and forth. Was it<br>13 your understanding that Israel was launching<br>14 missiles at Hamas in Gaza?<br>15 A. That's my understanding, yes.<br>16 Q. What was your understanding as to the reasons<br>17 why there was the conflict?<br>18 A. You mean generally why there's a conflict<br>19 between the two or the express reasons at<br>20 this time?<br>21 Q. Generally.<br>22 A. Generally? I -- I mean, there's a whole host<br>23 of reasons. I mean, it goes back to, you<br>24 know, thousands of years ago. But first and<br>25 foremost, it's over the -- over the land, | |
| Page 108 | |
| 1 over...<br>2 Q. And what land would that be?<br>3 A. Well, it's Israel.<br>4 Q. And this is not meant to be a history test, I<br>5 really just would like to understand your<br>6 base level of knowledge prior to getting into<br>7 the investigation of the land. What -- what<br>8 was the -- of the claim.<br>9 When you say there was a conflict<br>10 over the land and a conflict over the land of<br>11 Israel, what was that conflict?<br>12 A. Well, again, you know, there's -- there's --<br>13 they're fighting back and forth, there's<br>14 Gaza, there's the west bank, I mean, there --<br>15 and that's my understanding of what was going<br>16 on.<br>17 Q. And you consider Gaza to be separate, you<br>18 knew that it was separate from the West<br>19 Bank --<br><br>21 BY MS. COYOCA:<br>22 Q. -- at the time in July 2014 when this claim<br>23 first surfaced; is that right? | Plaintiff's Objections:<br>No objection – 108:1-19;<br>108:21-23.<br><br>Defendant's Response:<br>Objection deleted. |
| Page 109 | |
| 2 THE WITNESS: Yes. I mean, the<br>3 West Bank is up in this part of Israel,<br>4 (indicating), and the Gaza Strip is down --<br>5 down in the lower part, (indicating), so...<br>6 MS. COYOCA: Okay. And let the<br>7 record reflect that the witness was using her<br>8 hands to distinguish that there were two<br>9 different areas where the two land groups | Plaintiff's Objections:<br>No objection – 109:2-25.<br><br>Defendant's Response:<br>Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 10 were located. | |
| 11 BY MS. COYOCA: | |
| 12 Q. Is that right? | |
| 13 A. That's correct. | |
| 14 Q. Okay. Now, as to the -- as to your | |
| 15 understanding of the reason why this | |
| 16 particular July 2014 conflict came into | |
| 17 existence, what was your understanding as to | |
| 18 that? | |
| 19 A. At this time? | |
| 20 Q. Uh-huh. | |
| 21 A. At this time I -- I had just -- Pamela had | |
| 22 just let me know, so I -- I needed to talk to | |
| 23 her. I didn't have any particular | |
| 24 understanding at that time. | |
| 25 Q. Got it. You responded the next day on | |
| | |
| Page 110 | |
| | |
| 1 July 17; is that correct? | |
| 2 A. Yes. | Plaintiff's Objections: |
| 3 Q. Between your written response, the e-mail | No objection – Page 110:1- |
| 4 response on July 17, and the time Ms. Johnson | 25. |
| 5 sent the e-mail on July 16, did you have any | |
| 6 communications with her about the Dig claim? | Defendant's Response: |
| 7 A. My guess is that we did. | |
| 8 Q. Your guess. Do you specifically recall | |
| 9 having communications with her about it? | |
| 10 A. I know that we talked about it. | |
| 11 Q. So it's your belief that prior to the time | |
| 12 that you sent the July 17 e-mail, you had a | |
| 13 conversation with Ms. Johnson about the Dig | |
| 14 claim; is that correct? | |
| 15 A. I -- I would -- yes, that would be my belief | |
| 16 based on -- based on the type of claim that | |
| 17 she's talking about, yes. | |
| 18 Q. Okay. And do you recall specifically having | |
| 19 the conversation? | |
| 20 A. I -- I can't recall specifically, no. | |
| 21 Q. But it's your best estimate that, because of | |
| 22 the nature of the claim, you think it's | |
| 23 likely that you did have such a conversation? | |
| 24 A. Yes. | |
| 25 Q. Do you recall meeting with her or did you | |
| | |
| Page 111 | |
| | |
| 1 have a conversation by telephone, if you | |
| 2 recall? | |
| 3 A. Again, I don't recall. Most likely, it was a | Plaintiff's Objections: |
| 4 telephone call. | No objection – Page 111:1- |
| 5 Q. And what did Ms. Johnson tell you about the | 25. |
| 6 claim during that call? | |

| Deposition Designation | Objection & Response |
|---|---|
| 7 A. Again, we would have discussed kind of<br>8 the -- the facts surrounding the initial --<br>9 when the initial notice came in. We would<br>10 have talked about what she understood today.<br>11 We would have talked about anything that --<br>12 any additional information that she had<br>13 gathered since the initial notice, things<br>14 like that, that would have been typical.<br>15 Q. Okay. What do you recall specifically as to<br>16 the facts surrounding the claim when the<br>17 initial notice came in that she told you?<br>18 A. I mean, the initial notice, I think the --<br>19 was whether or not NBC was deciding whether<br>20 or not they were going to continue filming in<br>21 Israel.<br>22 Q. Anything else?<br>23 A. Well, they were -- the decision -- or they<br>24 were -- they were considering whether or not<br>25 to continue filming based on what was going<br><br>Page 112<br><br>1 on between Hamas and Israel.<br>2 Q. Did she tell you specifically any facts about<br>3 what was going on in -- in Israel at the<br>4 time?<br>5 A. I'm sure that she did.<br>6 Q. Do you recall any of the specifics as to what<br>7 she told you?<br>8 A. I mean, I'm sure that she -- that she would<br>9 have mentioned just the rocket fire, she<br>10 would have mentioned just the -- you know,<br>11 the ground troops, the bombings, you know,<br>12 the -- what was going on that made, you know,<br>13 the area unsafe, what Israel was doing, what<br>14 Hamas was doing.<br>15 Q. So during this initial phone conference or<br>16 conversation, you believe that Ms. --<br>17 Ms. Johnson talked about ground troops?<br>18 A. I said that we probably would have talked<br>19 about what was going on. So, again, I don't<br>20 have the express recollection of exactly what<br>21 she told me two years ago, but...<br>22 Q. Okay. Did this conversation, to the best of<br>23 your recollection, did it take place on<br>24 the -- on the 16th when you first received<br>25 the e-mail at about 1:44 p.m.?<br><br>Page 113<br><br>1 A. My guess is it either would have taken place<br>2 that evening or early the next morning.<br>3 Q. And, again, focusing specifically on<br>4 ground -- the question of ground troops, do | Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 112:1-<br>25.<br><br>Defendant's Response: |

17

| Deposition Designation | Objection & Response |
|---|---|
| 5 you have a specific recollection that<br>6 Ms. Johnson spoke to you about ground troops<br>7 at the time that you had that first telephone<br>8 call?<br>9 A. Not on the first -- I mean, I'm just -- no,<br>10 specifically, I can't remember exactly what.<br>11 Q. What did she tell you -- I understand it may<br>12 not have been on the first conversation, but<br>13 what did she tell you about ground troops?<br>14 A. Again, I mean, when we would have had our<br>15 conversations over the course of the claim,<br>16 she would have told me everything that she<br>17 had gained, all the information she gathered<br>18 based on her investigation.<br>19 Q. Right. I'm focusing, though, specifically on<br>20 ground troops. What did Ms. Johnson tell<br>21 you, if anything, about ground troops?<br>22 A. I would -- that -- that Israel is putting<br>23 together ground troops and calling, you know,<br>24 together their military arm.<br>25 Q. And when's the first time that you can | Plaintiff's Objections:<br>No objection – Page 113:1-25.<br><br>Defendant's Response: |
| Page 114<br><br>1 recollect that Ms. Johnson spoke with you<br>2 about ground troops?<br>3 A. Again, it would have been sometime during the<br>4 course of our conversations.<br>5 Q. But you don't know whether or not it was at<br>6 this very initial stage when you first<br>7 received notice about the claim on July 16 or<br>8 at some later point --<br>9 A. I don't.<br>10 Q. -- is that right?<br>11 A. That's correct. | Plaintiff's Objections:<br>No objection – Page 114:1-11.<br><br>Defendant's Response: |
| Page 116<br><br>23 Q. And -- and do you recall, as you sit here<br>24 today, any of the specific things that she<br>25 told you that were going on? | Plaintiff's Objections:<br>No objection – Page 116:23-25.<br><br>Defendant's Response: |
| Page 117<br><br>1 A. Again, like I said, she would have mentioned<br>2 all the different things that were going on<br>3 in terms of military weapons, you know,<br>4 tanks, ground troops, airplanes, missiles,<br>5 things of that nature.<br>6 Q. Anything else aside from military weapons,<br>7 tanks, ground troops, airplanes, missiles, | Plaintiff's Objections:<br>No objection – Page 117:1-15.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 8 things of that nature, anything else?<br>9 A. We would have talked about the policy, of<br>10 course. We would have talked about anything<br>11 that she had further gleaned -- further<br>12 understood from NBC. We would have again<br>13 talked about what -- again, the conclusion,<br>14 what -- what she had found, what research she<br>15 had done, what she had looked at.<br><br>Page 118<br><br>5 right now.<br>6 Q. Okay. Now, you indicated that you believe<br>7 that she told you about all the resources<br>8 that she had looked at; is that correct?<br>9 A. That's correct.<br>10 Q. What resources did she tell you she had<br>11 looked at?<br>12 A. My understanding is that she looked at news<br>13 clippings, news articles, resources available<br>14 online and -- and -- yeah, those were things<br>15 that she looked at.<br>16 Q. News clippings, articles and online articles;<br>17 is that right?<br>18 A. Online broadcasts as well, broadcasts, and<br>19 then I think she tried also to get<br>20 multitude -- kind of multiple different<br>21 sources as well.<br>22 Q. What are the other multiple different<br>23 resources?<br>24 A. Well, I think we wanted to look at what, you<br>25 know, CBS, NBC, CNN, to the extent, you know,<br><br><br>Page 119<br><br>1 the BBC, things like that.<br>2 Q. So just so I understand, Ms. Johnson told you<br>3 that she was looking at, she, Ms. Johnson,<br>4 was looking at these various news sources,<br>5 CBS, NBC, CNN, to see what they were saying<br>6 about the conflict?<br>7 A. She said she was doing -- yeah, doing<br>8 significant research, yes.<br>9 Q. Did she tell you that she was doing the<br>10 research or that Danny Gutterman was doing<br>11 the research?<br>12 A. I don't think she distinguished for me, no.<br>13 Q. Did Ms. Johnson provide you with copies of<br>14 any of the news clippings or articles that<br>15 she had indicated she was looking at<br>16 reviewing? | <br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 118:5-25.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 119:1-17.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 17 A. I don't recall. | |
| <u>Page 126</u> | |
| 9 Q. Do you generally recall that you discussed<br>10 the war exclusions with Ms. Johnson in the<br>11 context of the Dig claim?<br>12 A. Yes.<br>13 Q. Generally, what do you recall?<br>14 A. I think we would have discussed what she --<br>15 you know, what research she had done, what --<br>16 you know, what she -- what she had received<br>17 from NBC, we would have looked at the policy,<br>18 and given those facts we would have, you<br>19 know, discussed whether or not we thought<br>20 there was coverage based on the -- the war,<br>21 warlike exclusions in the policy.<br>22 Q. Do you believe any of those discussions in<br>23 the context of what research had been done,<br>24 what she had received from NBC, her look at<br>25 the policy, had any of that occurred at the | Plaintiff's Objections:<br>No objection – Page 126:9-25.<br><br>Defendant's Response: |
| <u>Page 127</u> | |
| 1 time you initially spoke to her on the 16th<br>2 or 17th?<br>3 A. We probably would have had initial<br>4 conversations. I don't know how far along<br>5 she would have -- I mean, she -- how much<br>6 information she would have put together by<br>7 that point.<br>8 Q. What, if anything, do you recall in terms of<br>9 the specifics as to what Ms. Johnson had for<br>10 you with respect to the claim the first time<br>11 you talked?<br>12 A. Again, I -- I can't recall the express<br>13 conversation. All I can remember is over the<br>14 course of the -- you know, over the course of<br>15 the life of the claim what we would have --<br>16 what we talked about.<br>17 Q. Were you at all surprised by Ms. Johnson's<br>18 invocation of the potential applicability of<br>19 the war exclusion coming so shortly after the<br>20 claim having been tendered?<br>21 A. I don't know that I would say I was<br>22 necessarily surprised. I think that -- I<br>23 think that you always look at the coverages,<br>24 and given the nature of -- you know, given<br>25 the nature of what was going on at that time, | Plaintiff's Objections:<br>No objection – Page 127:1-25.<br><br>Defendant's Response: |
| <u>Page 128</u> | Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 1 that necessarily would have been an issue<br>2 that we would have considered.<br>3 Q. After you received -- or did you eventually<br>4 look at the policy in the context of this<br>5 claim?<br>6 A. Yes.<br>7 Q. Okay. And the policy has previously been<br>8 marked as Exhibit 1 at the Peter Williams<br>9 deposition. Can you take a look at the<br>10 policy?<br>11 A. You want me to look at the entire policy?<br>12 Q. No, I just want to -- want you to assure<br>13 yourself that this is indeed the policy that<br>14 you reviewed in the context of the Dig claim.<br>15 A. (Reviews document.) Yes, this would have<br>16 been the policy.<br>17 Q. Okay. It's for the policy period from<br>18 January 1, 2014, through June 30, 2015?<br>19 A. Correct.<br>20 Q. Okay. I want to direct your attention to<br>21 page ATL003083. When you -- when you<br>22 indicate that you discussed the war exclusion<br>23 or the war exclusions with Ms. Johnson, are<br>24 you referring to the exclusions that are set<br>25 forth in section 3, exclusions applicable to | No objection – Page 128:1-25.<br><br>Defendant's Response: |
| Page 129<br><br>1 all sections of this policy?<br>2 A. That -- that would be my recollection, but I<br>3 would like to just look through the policy<br>4 quickly. (Reviews document.)<br>5 Yes, that's -- I think that's<br>6 correct.<br>7 Q. All right. I want to -- I want to talk about<br>8 section 3-1 on page 3083, "War, Including<br>9 Undeclared or Civil War." Do you see that<br>10 exclusion?<br>11 A. Yes. Yes, I do.<br>12 Q. Did you have conversations with Ms. Johnson<br>13 about the potential applicability of<br>14 exclusion 3 -- section 3.1?<br>15 A. Yes.<br>16 Q. What were your discussions?<br>17 A. Again, to the best of my recollection, our<br>18 discussions would have been based on what<br>19 information she had, what was going on<br>20 between Hamas and Israel and all the -- you<br>21 know, all the facts surrounding the -- what<br>22 was -- in July and early June -- or mid June,<br>23 and whether or not we believed that amounted<br>24 to war, including undeclared or civil war.<br>25 So we would have talked about exclusion 1 and | Plaintiff's Objections:<br>No objection – Page 129:1-6.<br>402, 403, MIL 2 (Dkt 209) – Page 129:6-25.<br>Exclusions 3 and 4 not relevant.<br><br>Defendant's Response:<br><u>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge.</u> |

| Deposition Designation | Objection & Response |
|---|---|
| **Page 130** | |
| 1 along with the exclusion 2, 3 and 4 as well.<br>2 Not 4, not the atomic fission, so...<br>3 Q. So as to exclusion 4, you did not discuss it<br>4 and you did not -- is that correct?<br>5 A. I think we -- I mean, we would have looked at<br>6 it, "Any weapon of war including atomic<br>7 fission" -- or excuse me, we did. I was<br>8 looking at the, "Atomic fission or<br>9 radioactive force," so I apologize, I<br>10 misspoke.<br>11 Q. I want to -- I want to go through this a<br>12 little more slowly.<br>13 With respect to exclusion 1, "War,<br>14 Including Undeclared or Civil War," you<br>15 reviewed that exclusion with Ms. Johnson; is<br>16 that correct?<br>17 A. That's correct.<br>18 Q. And did you -- you conclude personally that<br>19 exclusion 1 applied to the Dig claim?<br>20 A. Yes, I believe it does.<br>21 Q. And did you make the decision that the claim<br>22 should be denied on the basis of exclusion 1?<br>23 A. We made the decision that the claim should be<br>24 denied based on the exclusions, that was one<br>25 of them. | Plaintiff's Objections:<br>402, 403, MIL 2 (Dkt 209)<br>– Page 130:1-10.<br>Exclusions 3 and 4 not<br>relevant.<br>No objection – Page<br>130:11-25.<br><br>Defendant's Response:<br><u>The witness' understanding<br>and development of facts<br>bearing on claim decision<br>relevant to reasonableness<br>of claim decision. The<br>probative value of this<br>testimony is not<br>substantially outweighed by<br>its prejudicial effect, it will<br>not confuse the jury, waste<br>time, and is not<br>unnecessarily cumulative.<br>The witness has only<br>testified to facts within the<br>scope of her personal<br>knowledge.</u> |
| **Page 131** | |
| 1 Q. Okay. When you say, "We," who is we?<br>2 A. Pamela and I.<br>3 Q. Anyone else?<br>4 A. Ultimately, Sean signed off on it as well.<br>5 Q. And by Sean do you mean Sean Duffy?<br>6 A. Yes. Excuse me. Yes.<br>7 Q. And did you involve Mr. Duffy in the review<br>8 of the claim?<br>9 A. No.<br>10 Q. Were you the one who brought it to his<br>11 attention?<br>12 A. Yes.<br>13 Q. When you say that he was also involved in the<br>14 decision, what was his involvement?<br>15 A. I -- I simply flagged it for him and he had<br>16 an opportunity to agree or disagree.<br>17 Q. Now, in terms of deciding whether or not<br>18 exclusion 1 -- I'm just going to call them 1,<br>19 2, 3, 4 as they're set forth on page 3083.<br>20 In terms of exclusion 1 and making the<br>21 decision that it applied, did you look at<br>22 whether or not Hamas was a sovereign entity? | Plaintiff's Objections:<br>No objection – Page 131:1-<br>25.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 23 A. Pamela looked at -- at Hamas and what -- how<br>24 Hamas was considered, in what -- in terms of,<br>25 you know, it being part of the government,<br><br>Page 132<br><br>1 governing the Gaza Strip, the activities it<br>2 was involved in, including, you know,<br>3 providing social services, having its own<br>4 military, political office, things of that<br>5 nature.<br>6 Q. But my question to you is, specifically, did<br>7 you come to a conclusion that Hamas was a<br>8 sovereign entity?<br>9 A. Hamas governs Gaza.<br>10 Q. Okay. But I'm asking you for the -- the<br>11 label, if you -- if you put one on it, did<br>12 you conclude that Hamas was a sovereign<br>13 entity?<br>14 A. We didn't put a sovereign label on it.<br>15 Q. Did you conclude that it was a<br>16 quasi-sovereign entity?<br>17 A. We concluded that it was an entity that<br>18 governed Gaza.<br>19 Q. Was it your understanding that Hamas needed<br>20 to govern Gaza in order for the war exclusion<br>21 to apply?<br>22 A. No.<br><br><br>25 BY MS. COYOCA:<br><br>Page 133<br><br>1 Q. Why was that not necessary, in your view?<br>2 A. Well, because I think when you think about<br>3 war, war is between -- I mean, the war is<br>4 between entities, it doesn't have to be<br>5 between Greece and France, it can be -- like<br>6 in this case, we had Gaza -- we had the<br>7 Gaza Strip and we had the action going on<br>8 between Hamas and Israel.<br>9 Q. But in your view, is it sufficient to invoke<br>10 the war exclusion if there is a course of<br>11 hostilities between a sovereign government<br>12 and some other entity that has some<br>13 authority?<br>14 A. It depends on the facts.<br>15 Q. Okay. What is it about Hamas that, in your<br>16 view, made it sufficient to conclude that it<br>17 had sufficient control or governmental<br>18 authority that it was appropriate to invoke<br>19 the war exclusion? | Plaintiff's Objections:<br>No objection – 132:1-22,<br>25.<br><br><br>Defendant's Response:<br>Objection deleted.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – 133:1-19;<br>133:23-25.<br><br><br><br>Defendant's Response:<br>Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 23 THE WITNESS: Again, I mentioned<br>24 Hamas having its own, you know, holding<br>25 political office, having different branches | |
| Page 134 | |
| 1 that are consistent with the government, but<br>2 then you couple that with what was going on,<br>3 that invokes the war exclusion, the missiles<br>4 being exchanged between Israel and Hamas, the<br>5 ground fighting, you know, the war planes,<br>6 all those things, that is war.<br>7 BY MS. COYOCA:<br>8 Q. Do you believe that in order for a course of<br>9 hostilities to be characterized as war, that<br>10 it is necessary for both entities to be a<br>11 sovereign government?<br><br>14 THE WITNESS: I don't believe it<br>15 is necessary.<br>16 BY MS. COYOCA:<br>17 Q. Do you believe that it is necessary in order<br>18 for the war exclusion, prong 1, to be<br>19 invoked, that it is necessary for the<br>20 activities, the hostile activities between<br>21 the two forces, that they occur between a<br>22 sovereign and a quasi-sovereign government?<br><br>25 THE WITNESS: Again, it could be a | Plaintiff's Objections:<br>No objection – 134:1-11;<br>134:14-22; 134:25.<br><br>Defendant's Response:<br>Objections deleted. |
| Page 135 | |
| 1 quasi -- a sovereign or a quasi-sovereign.<br>2 But it's -- again, we're talking about war,<br>3 what the actions are between the two parties.<br>4 MS. COYOCA: Right. I'm asking<br>5 you, though, a different question.<br>6 BY MS. COYOCA:<br>7 Q. What I'm asking you is, in your view, in<br>8 order to find that this exclusion, the term<br>9 war has been met, is it necessary that those<br>10 hostilities that you referenced, do they have<br>11 to occur between a sovereign government and<br>12 another sovereign government or a sovereign | Plaintiff's Objections:<br>No objection – 135:1-14;<br>135:17; 135:20-25.<br><br>Includes objection –<br>135:18-19.<br><br>Defendant's Response:<br>Objections deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 13 government and a quasi-sovereign government?<br>14 A. No.<br><br>17 THE WITNESS: No.<br>18 MS. SCOTT REED: -- legal<br>19 conclusion.<br>20 BY MS. COYOCA:<br>21 Q. Now, you indicated that part of your<br>22 conclusion that it was appropriate to invoke<br>23 the war exclusions was the type and nature of<br>24 the hostilities that were occurring, the<br>25 missiles, the war planes, the ground troops;<br><br>Page 136<br><br>1 is that correct?<br>2 A. That's correct --<br><br>5 THE WITNESS: -- that is a<br>6 consideration.<br>7 MS. SCOTT REED: Misstates the<br>8 full character of her prior testimony.<br>9 BY MS. COYOCA:<br>10 Q. Where did you learn the information or how<br>11 did you learn the information that war planes<br>12 were involved?<br>13 A. From Pamela.<br>14 Q. How did you learn that missiles were<br>15 involved?<br>16 A. That would probably be from Pamela and also<br>17 just from the news.<br>18 Q. Any other source aside from Pamela?<br>19 A. Pamela or the news.<br>20 Q. In -- in approving the decision to deny the<br>21 war exclusion or not raising an objection to<br>22 it being invoked, were you relying on your<br>23 personal viewing of news reports?<br>24 A. I relied on Pamela's research and also my<br>25 understanding and my own personal viewing of<br><br>Page 137<br><br>1 different news.<br>2 Q. And what news reports did you review?<br>3 A. I mean, every -- A, I watch the general local<br>4 news. I specifically remember watching the<br>5 NBC clip on what was going on in -- in Israel<br>6 and how it referred to it as war. And then,<br>7 you know, discussions with Pamela, of course.<br><br>Page 147 | Plaintiff's Objections:<br>No objection – 136:1-2;<br>136:5-6; 136:9-25.<br><br>Includes objection – 136:7-8<br><br>Defendant's Response:<br>Objections deleted.<br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 137:1-7.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 8 Q. Going to the second prong of the war<br>9 exclusions, number 2, the one that begins,<br>10 "Warlike action by a military force," do<br>11 you -- do you see that exclusion?<br>12 A. Yes.<br>13 Q. Did you have specific discussions with<br>14 Ms. Johnson about prong 2?<br>15 A. I -- I'm sure that we did, yes.<br>16 Q. What did you discuss?<br>17 A. We would have discussed what the -- you know,<br>18 what the investigation, what we had found out<br>19 through our factual investigation and<br>20 whether, you know, the fact that what was<br>21 going on between Hamas and Israel and --<br>22 including the -- again, the -- you know, the<br>23 hostility, the ground crews, the missiles,<br>24 airplanes, things of that nature, whethe | Plaintiff's Objections:<br>No objection – Page 147:8-24.<br><br>Defendant's Response: |
| Page 148 | |
| 1 military force.<br>2 Q. In -- in reviewing, in your mind, the factual<br>3 investigation that occurred, do you<br>4 differentiate between the events that were --<br>5 that were part of the investigation for the<br>6 first prong of the exclusion versus events<br>7 that occurred to investigate the second prong<br>8 of the war claim -- excuse me, the war<br>9 exclusion?<br>10 A. I think we looking at all the -- excuse me --<br>11 all the events and took all of the<br>12 information in totality and then look at the<br>13 application of the exclusions.<br>14 Q. Okay. When you indicated previously that<br>15 Ms. Johnson looked at news reports, was she<br>16 looking at those news reports in order to<br>17 inform her decision about the potential<br>18 applicability of prong 2, as well as prong 1?<br><br>21 THE WITNESS: When Pamela was<br>22 looking at the news reports throughout the<br>23 time period in doing her research, she wanted<br>24 to get a better understanding of what the<br>25 claim was. And based on that information, | Plaintiff's Objections:<br>No objection – 148:1-18;<br>148:21-25.<br><br>Defendant's Response:<br>Objection deleted. |
| Page 149 | Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| 1 then we looked at the policy and the<br>2 exclusions, which would include these<br>3 exclusions.<br><br>12 Q. Did you discuss with Ms. Johnson -- I<br>13 understand you can't recall specifics of time<br>14 frame of discussions, but did you discuss<br>15 with Ms. Johnson at any time that OneBeacon<br>16 was considering the Dig claim, whether there<br>17 was a difference between prongs 1 and<br>18 prongs 2 of the war exclusions?<br>19 A. I'm sure that we did discuss it, because they<br>20 are different.<br><br>Page 150<br><br>14 Q. If you can't recall the specifics then, if<br>15 you think you discussed it, then, yes, please<br>16 tell me what you think you discussed as to<br>17 those differences.<br>18 A. When you look at the second prong, it's,<br>19 "Warlike action by military force, including<br>20 action in hindering or defending against<br>21 actual or suspected attacks by a government,<br>22 sovereign or other authority using military<br>23 personnel or other agents."<br>24 Warlike action by a military force.<br>25 What was going on in Israel between Hamas and<br><br>Page 151<br><br>1 Israel was warlike action. Hamas is a<br>2 military force, Israel has a military force.<br>3 At a minimum, it's an other -- Hamas is an,<br>4 "Other authority using military personnel or<br>5 agents."<br>6 Q. Did you discuss -- when you say you think you<br>7 discussed it, do you think that you discussed<br>8 the fact that exclusion 2 was broader than<br>9 exclusion 1, narrower, the exact same in<br>10 scope?<br>11 A. It's -- it's a different -- it's not the --<br>12 it's not the exact same exclusion, it's<br>13 warlike action by a military force. That<br>14 would suggest to me that it has even broader<br>15 implication.<br><br>Page 152<br><br>14 Q. Did OneBeacon end up concluding that prong 4<br>15 applied?<br>16 A. I think, yeah, prong -- excuse me, prong 4 | No objection – Page 149:1-3, 12-20.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 150:14-25.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 151:1-15.<br><br>Defendant's Response:<br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>402, 403, MIL 2 (Dkt 209)– Page 152:14-20. Exclusion 4 not relevant. See MIL 2.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 17 would apply, any weapon of war, whether in<br>18 time of peace or war. I mean, I think we --<br>19 I think missiles, ground troops, war planes,<br>20 those are weapons of war. | <u>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge.</u> "MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. |
| <u>Page 154</u><br><br>3  Q.  Before you approved the denial of the claim,<br>4       what did you do to assure yourself that all<br>5       facts -- all factual investigation that<br>6       needed to be done had been done?<br><br>10            THE WITNESS:  When Pamela and I<br>11       decided to go forward with the denial, I --<br>12       we -- you know, I looked at everything that<br>13       had been done, I talked to -- or I talked to<br>14       Pamela, we talked about what had been done,<br>15       we talked about what the conclusions were,<br>16       and I think, yes, a thorough investigation<br>17       was completed by Pamela.<br>18   BY MS. COYOCA:<br><br>19 Q. Did you ask to see any of the research or<br>20 analysis that she had been -- that she had<br>21 done in coming to her conclusions?<br>22 A. I know that I -- I -- I saw the NBC clip, so<br>23 I imagine that she provided that to me. I<br>24 know that I saw some of the other<br>25 information, but today I can't tell you what | Plaintiff's Objections:<br>602, 701 – 154:3-6; 154:10-25. Witness does not know what research or analysis Johnson performed; witness lacks personal knowledge. Improper opinion re whether investigation was "thorough".<br><br><br>Defendant's Response:<br><u>The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. Witness</u> |

| Deposition Designation | Objection & Response |
|---|---|
| | testifying as to personal knowledge or their rationally based perceptions of the information known to them; is not opinion testimony. |
| | Objection deleted. |
| Page 155<br><br>1 I saw expressly.<br>2 Q. When you indicate you saw other information,<br>3 did you see other news reports?<br>4 A. It would have been news reports or articles<br>5 or things of that nature. | Plaintiff's Objections: 602, 701 – Page 155. Witness does not know what research or analysis Johnson performed; witness lacks personal knowledge. Improper opinion re whether investigation was "thorough".<br><br>Defendant's Response: The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. "MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. Witness testifying as to personal knowledge or their rationally based perceptions; is not opinion testimony.<br><br>Plaintiff's Objections: |

| Deposition Designation | Objection & Response |
|---|---|
| Page 158 | No objection – 158:21-23. |
| 21 Q. How early in the process, if at all, did you 22 involve Mr. Duffy in the -- in the claim 23 review? | Defendant's Response: Objection deleted. |
| | Plaintiff's Objections: No objection – 159:2-17. |
| Page 159 | Defendant's Response: Objection deleted. |
| 2 THE WITNESS: Sean didn't do the 3 claim review. I just flagged him about the 4 claim so he knew about it and its existence, 5 and then I flagged him when we were at a 6 position where we were going to decline 7 coverage. 8 BY MS. COYOCA: 9 Q. When you say you flagged him, what do you 10 mean by that? 11 A. I just let him know. 12 Q. Why were you letting him know? 13 A. Because NBC is a big client, because there is 14 a possibility that NBC would call Sean or an 15 agent of NBC, and because, generally, as a 16 practice, if there's a bigger claim I like to 17 let Sean know. | |
| Page 162 | Plaintiff's Objections: 802 – 162:3-5; 162:9-21. |
| 3 Q. When did Ms. Johnson tell you that she had 4 made a decision to deny the Dig claim based 5 on the war exclusion? | Defendant's Response: 801; 807. |
| 9 THE WITNESS: Pamela didn't tell 10 me she decided to deny the claim, we talked 11 about what her investigation was, what her 12 conclusions were, and then we made a decision 13 whether or not to deny the claim. 14 BY MS. COYOCA: 15 Q. So the decision was made jointly? 16 A. She recommended it and I approved it. 17 Q. When did Ms. Johnson first recommend to you 18 that the claim should be denied? 19 A. It would have been sometime in late July, 20 around the 22nd, I think, sometime in that 21 range. | Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| Page 166<br><br>1 Q. Now, you indicated that you reviewed the<br>2 coverage opinion letter before it went out;<br>3 is that right?<br>4 A. I reviewed the letter drafted by Pamela?<br>5 Q. Yes.<br>6 A. Yes, I reviewed that before it went out.<br>7 Q. Did you have any changes that you wanted made<br>8 to the letter?<br>9 A. I think I had one minor change that was<br>10 non-substantive. | Plaintiff's Objections:<br>No objection – Page 166:1-10.<br><br>Defendant's Response: |
| Page 168<br><br>16 Q. Okay. Now, as of July 28, was the insured,<br>17 NBC Universal, had they already been told<br>18 that the claim was going to be denied on the<br>19 basis of the war exclusion?<br>20 A. Yes, that's my understanding.<br>21 Q. And how did you -- how did you learn that the<br>22 exclusion that Ms. Johnson was going to tell<br>23 NBC Universal that the exclusion had been<br>24 denied on the basis of the -- let's start all<br>25 over again. | Plaintiff's Objections:<br>No objection – Page 168:16-25.<br><br>Defendant's Response: |
| Page 169<br><br>1 How did you learn that Ms. Johnson<br>2 had told NBC Universal that the Dig claim was<br>3 going to be denied on the basis of the war<br>4 exclusion?<br>5 A. I -- Pamela would have told me that she was<br>6 going to reach out to NBC and Aon and let<br>7 them know that our position was that the<br>8 exclusion precluded coverage. | Plaintiff's Objections:<br>No objection – Page 169:1-8.<br><br>Defendant's Response: |
| Page 177<br><br>6 Q. Did you flag the claim for Mr. Duffy because<br>7 you considered the coverage call to be a<br>8 close one?<br><br>11 THE WITNESS: No, that's not why I<br>12 flagged it for Sean.<br>13 BY MS. COYOCA:<br>14 Q. Did you believe that the coverage call to be<br>15 made on this claim, did you think it was a<br>16 close one? | Plaintiff's Objections:<br>No objection – 177:6-8;<br>177:11-25.<br><br>Defendant's Response:<br>Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 17 A. No, I didn't.<br>18 Q. You thought it was a hundred percent clear<br>19 that the war exclusion applied?<br>20 A. I don't think anything is a hundred percent,<br>21 but given the facts, yes, I think the war<br>22 exclusions apply and preclude coverage.<br>23 Q. How confident were you in the correctness of<br>24 the decision based on a percentage, was it<br>25 95 percent, 85 percent?<br><br>Page 178<br><br> THE WITNESS: On -- from<br>5 OneBeacon's perspective and my perspective as<br>6 well, we don't deny a claim unless we believe<br>7 it's not covered. So when I say a hundred<br>8 percent, there's always a chance someone can<br>9 disagree, but it's 99 percent that we don't<br>10 deny a claim unless we believe it's not<br>11 covered. We don't enter that decision<br>12 lightly.<br>13 BY MS. COYOCA:<br>14 Q. Were you concerned at all in terms of the<br>15 short time frame that -- in which the<br>16 analysis, the investigation, the review of<br>17 information and the legal analysis that was<br>18 performed, the short time frame in which it<br>19 was done?<br><br>22 THE WITNESS: My -- we can -- we<br>23 moved as quickly as we could on this<br>24 particular claim. I know that NBC wanted an<br>25 answer right away. Aon had pushed OneBeacon<br><br>Page 179<br><br>1 very hard to get an answer as soon as<br>2 possible and so that's why there's this --<br>3 why everything was turned around. We did it<br>4 to accommodate the insured, but we did do a<br>5 thorough investigation.<br><br>Page 220<br><br>18 The fourth paragraph is applicable,<br>19 but based on the analysis of the application<br>20 of war, including undeclared or civil war and<br>21 warlike actions by a military force, that<br>22 would include the use of any weapon of war. | <br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – 178:4-19; 178:22-25.<br><br>Defendant's Response:<br>Objections deleted.<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 179:1-5.<br><br>Defendant's Response:<br><br><br>Plaintiff's Objections:<br>402, 403, MIL 2 (Dkt 209)– Page 220:18-22. Exclusion 4 not relevant.  See MIL 2.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| | The witness' understanding and development of facts bearing on claim decision relevant to reasonableness of claim decision. The probative value of this testimony is not substantially outweighed by its prejudicial effect, it will not confuse the jury, waste time, and is not unnecessarily cumulative. The witness has only testified to facts within the scope of her personal knowledge. "MIL" not clear objection; ASIC's understanding and development of facts is relevant to reasonableness of claim decision, defense of "bad faith" allegation and damages sought. |
| Page 221<br><br>14 BY MS. COYOCA:<br>15 Q. I want to show you a document that's already<br>16 previously been marked as Exhibit 19 to the<br>17 Gutterman deposition. Please let me know<br>18 when you're ready for questions.<br>19 A. Okay. Thank you. I'll read through it.<br>20 Q. Thanks.<br>21 A. (Reviews document.)<br>22 Q. Are you ready for questions?<br>23 A. Yes.<br>24 Q. Have you seen this letter before?<br>25 A. Yes. | Plaintiff's Objections:<br>No objection – Page 221:14-25.<br><br>Defendant's Response: |
| Page 222<br><br>1 Q. When did you see it?<br>2 A. I would have seen it after Pamela received<br>3 it.<br>4 Q. Did you ever discuss it with Pamela?<br>5 A. I'm sure that we did discuss it, yes.<br>6 Q. Do you recall any of your discussions about<br>7 the letter?<br>8 A. I don't specifically recall the discussions.<br>9 Q. Do you have any general recollections of your<br>10 discussions?<br>11 A. My general recollection would be we would | Plaintiff's Objections:<br>No objection – 222:1-23.<br><br>Defendant's Response:<br>Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 12 have -- we would have gone through the<br>13 arguments and that Pamela would have pulled<br>14 the cases and read the case law and looked at<br>15 the arguments raised in the letter.<br>16 Q. With respect to the second paragraph of the<br>17 letter, talking about OneBeacon's willingness<br>18 to cover expenses associated with the initial<br>19 one-week postponement; do you see that?<br>20 A. I do.<br>21 Q. Were you aware that OneBeacon had agreed to<br>22 cover the first one week push cost -- or<br>23 postponement costs? | |
| Page 223<br><br>1 misstates the record.<br>2 THE WITNESS: I -- I knew that<br>3 OneBeacon had agreed to offer 3 to 350 for<br>4 the first -- first week.<br>5 BY MS. COYOCA:<br>6 Q. How did you become aware of that?<br>7 A. Pamela would have told me.<br>8 Q. What did she tell you about that?<br>9 A. I just recall when it initially came in, it<br>10 came in as a postponement claim and that --<br>11 that initially, you know, to the extent that<br>12 NBC only postponed it for a week estimate and<br>13 then began -- or resumed filming, estimated<br>14 losses associated with that were between 3<br>15 and 350.<br>16 Q. And what did she tell you with regard to<br>17 OneBeacon's willingness to cover 300 to<br>18 350,000 of those costs?<br><br>22 THE WITNESS: Again, I -- I think<br>23 that it was initially based on the<br>24 understanding that it was a postponement<br>25 claim, that it would only be a one-week | Plaintiff's Objections:<br>Includes attorney objection<br>– 223:1<br><br>No objection – 223:2-18;<br>223:22-25.<br><br>Defendant's Response:<br>Objections deleted. |
| Page 224<br><br>1 postponement of shooting, and then thereafter<br>2 when it became clear, I think OneBeacon<br>3 simply wanted to make a concession to NBC and<br>4 continue to offer the 3 to 350 for the claim.<br>5 BY MS. COYOCA:<br>6 Q. Specifically, did Ms. Johnson tell you how<br>7 OneBeacon's willingness to pay 3 to 350 for<br>8 the initial one-week postponement, how that | Plaintiff's Objections:<br>No objection – 224:1-9;<br>224:13-15.<br><br>Defendant's Response:<br>Objections deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 9 was ever conveyed to the client?<br><br>13 THE WITNESS: I -- I don't<br>14 remember or recall how that was conveyed to<br>15 NBC. | |
| <u>Page 225</u><br><br>2 Q. Was it your understanding that Ms. Johnson<br>3 had indicated to NBC Universal and Aon that<br>4 OneBeacon would cover 300 to 350,000 of the<br>5 initial one-week postponement costs?<br><br>9 THE WITNESS: I understand that<br>10 Pamela offered to -- to cover 300 to 350 for<br>11 the initial week postponement.<br>12 BY MS. COYOCA:<br>13 Q. When was that offer conveyed?<br>14 A. I don't remember.<br>15 Q. Why was --<br>16 MS. SCOTT REED: Are you -- are<br>17 you referring to something to answer the<br>18 question?<br>19 THE WITNESS: Yes. Sorry. I -- I<br>20 said I don't remember. I just -- I don't --<br>21 I'm just referring to the letter that -- that<br>22 Pamela sent out dated July 28th and the<br>23 conclusion. She states, "Although we cannot<br>24 cover the extra expense associated with the<br>25 production move to another country to | Plaintiff's Objections:<br>No objection – 225:2-5; 225:9-15; 225:19-25.<br><br>Includes attorney objection – 225:16-18.<br><br>Defendant's Response:<br>Objections deleted. |
| <u>Page 226</u><br><br>1 complete the production, based on our long<br>2 relationship with NBC, we're willing to cover<br>3 the expenses associated with the initial<br>4 postponement as a courtesy," and then she<br>5 references a budget and the costs associated<br>6 with the initial postponement.<br>7 BY MS. COYOCA:<br>8 Q. Is it your understanding that this was the<br>9 first time that there was ever any indication<br>10 by OneBeacon that it would cover the initial<br>11 one-week postponement costs?<br>12 A. I think that it -- there was an indication<br>13 before that, but I don't have a -- a specific<br>14 recollection as to when.<br>15 Q. And do you know who provided that indication<br>16 to Aon or NBC Universal? | Plaintiff's Objections:<br>No objection – 226:1-20; 226:25.<br><br>Defendant's Response:<br>Objection deleted. |

| Deposition Designation | Objection & Response |
|---|---|
| 17 A. I don't.<br>18 Q. On what basis did OneBeacon decide that it<br>19 was willing to pay the one-week initial<br>20 postponement costs?<br>25 THE WITNESS: Again, I'm just | |
| Page 227<br><br>1 going to -- I -- I don't know the earlier<br>2 conversations, but as detailed in the<br>3 July 28th letter, Pamela indicates that based<br>4 on our long relationship, we're willing to<br>5 cover the expenses associated -- associated,<br>6 excuse me, with the initial postponement as a<br>7 courtesy. So at least as of July 28th, that<br>8 was the basis, as a courtesy given the<br>9 existing relationship with NBC.<br>10 BY MS. COYOCA:<br>11 Q. Are you aware of any other grounds as to why<br>12 OneBeacon was willing to pay the initial --<br>13 or to cover, to cover the expenses associated<br>14 with the initial postponement?<br>18 THE WITNESS: Again, I think<br>19 when -- when the claim initially claim to<br>20 Peter it -- he thought it would be simply a<br>21 postponement for a week and then reconvene or<br>22 resume the filming. And based on that, it's<br>23 my understanding we thought potentially 3 to<br>24 350 would be the expenses incurred by NBC to<br>25 postpone the production. | Plaintiff's Objections:<br>No objection – 227:1-14;<br>227:18-25.<br><br><br>Defendant's Response:<br>Objection deleted. |
| Page 228<br><br>1 BY MS. COYOCA:<br>2 Q. Was it OneBeacon's position that the initial<br>3 postponement costs of 300 to 350, whatever<br>4 the original estimate was, that those were a<br>5 covered expense under extra -- under the<br>6 extra expense coverage of the policy?<br>7 A. I think initially when the claim first came<br>8 in, it appeared that it might be based on the<br>9 postponement. But then, clearly, by<br>10 July 28th when the letter was issued,<br>11 OneBeacon took the position that those<br>12 weren't covered, but again, as a courtesy<br>13 would -- would provide NBC with reimbursement<br>14 for those expenses it incurred during that<br>15 first week.<br>16 Q. What do you base your understanding that<br>17 initially when the claim first came in it<br>18 appeared that it might be based on the<br>19 postponement? What do you -- what do you<br>20 base your understanding of that statement?<br>21 A. My understanding is that when it initially | Plaintiff's Objections:<br>No objection – Page 228:1-<br>25.<br><br>Defendant's Response: |

| Deposition Designation | Objection & Response |
|---|---|
| 22 came in, that's how -- that's how it was<br>23 described by NBC.<br>24 Q. I'm actually directing your attention to the<br>25 statement that -- that it appeared the claim<br><br>Page 229<br><br>1 might be covered based on the postponement.<br>4 Do you -- do you want to go back and<br>5 read her answer --<br>6 MS. COYOCA: Yeah.<br>7 MS. SCOTT REED: -- so she knows<br>8 what you're saying?<br>9 BY MS. COYOCA:<br>10 Q. You indicated previously that I asked you was<br>11 it OneBeacon's position that the initial<br>12 postponement costs of 300 to 350, whatever<br>13 the original estimate was that those were a<br>14 covered expense under extra -- under the<br>15 extra expense coverage of the policy. And<br>16 you indicated, "I think initially when the<br>17 first came" -- "when the claim first came in,<br>18 it appeared that it might be based on the<br>19 postponement, but then clearly by July 28th<br>20 when the letter was issued, OneBeacon took<br>21 the position that those weren't covered, but<br>22 again as a courtesy would -- would provide<br>23 NBC with reimbursement for those expenses it<br>24 incurred during that first week."<br>25 And my question to you is: As that<br>TSG Reporting - Worldwide 877-702-9580<br>59 (Pages 230 to 233)<br><br>Page 230<br><br>1 first portion of your response when you say,<br>2 "I think initially when the claim first claim<br>3 in, it appeared that it might be based on the<br>4 postponement," what did you base that<br>5 statement on?<br>6 A. I -- I'm looking back at the letter, but I<br>7 also -- my recollection was that, again, it<br>8 was a moving -- kind of a moving target, and<br>9 NBC postponed it and wanted to see how -- how<br>10 the -- how it went forward between Israel and<br>11 Hamas before making -- you know, and then<br>12 ultimately decided that for the safety of NBC<br>13 they needed to pull out of -- pull out of<br>14 Israel. | Plaintiff's Objections:<br>No objection – 229:1;<br>229:9-25.<br><br>Includes attorney objection<br>– 229:4-8.<br><br>Defendant's Response:<br>Objection deleted.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Plaintiff's Objections:<br>No objection – Page 230:1-<br>14.<br><br>Defendant's Response: |